**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 1:18-CV-68 |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) |
| Defendants, | ) ) |
| KARLA PEREZ, *et al.*, | ) ) |
| Defendant-Intervenors, and | ) ) ) |
| STATE OF NEW JERSEY, | ) ) |
| Proposed Defendant-Intervenor. | ) ) |

**PROPOSED SCHEDULING ORDER FOR
PROPOSED DEFENDANT-INTERVENOR STATE OF NEW JERSEY**

On May 15, 2018, the Court ordered the parties to "submit an agreed scheduling order as to" Plaintiffs' motion for a Preliminary Injunction by May 25, 2018. The Court further ordered that if the parties could not agree to a briefing schedule, each party was to submit its own proposed scheduling order by May 25. The Court then set a scheduling conference for May 30, 2018, in Brownsville, Texas.

On May 21, 2018, the State of New Jersey filed a Motion to Intervene in this action, setting forth how "the State's interests would be seriously harmed if this Court enjoined Deferred Action for Childhood Arrivals ("DACA")." Dkt. 42 at 1. In compliance with this Court's May 15 order, proposed Defendant-Intervenor State of New Jersey hereby submits a Proposed

1

Scheduling Order as Exhibit 1. In the alternative, New Jersey respectfully requests that this Court treat this proposed order as an amicus filing.[1]

| Discovery commences | May 31, 2018 |
| --- | --- |
| Discovery concludes | August 13, 2018 |
| Deadline for Defendants and Defendant-Intervenors to file Rule 12 motions and responses to Plaintiffs' Motion for Preliminary Injunction | September 10, 2018 |
| Deadline for any amicus curiae to file a brief supporting or opposing any party's brief on Rule 12 motions or Plaintiffs' Motion for Preliminary Injunction | September 17, 2018 |
| Deadline for Plaintiffs to file a reply in support of their Motion for Preliminary Injunction and responses to Defendants and Defendant-Intervenors' Rule 12 motions | October 1, 2018 |
| Deadline for Defendants and Defendant-Intervenors to file replies in support of their Rule 12 motions | October 11, 2018 |

New Jersey submits that this proposed schedule is reasonable and just under the circumstances because: (a) the issues presented in the motion for preliminary injunction are complex and require discovery and thorough briefing; (b) there is no basis for a truncated briefing schedule; and (c) New Jersey should be permitted to participate fully in this case.

***First,*** the parties should be afforded adequate time to address the complex issues raised in Plaintiff States' 356-paragraph Complaint and 49-page motion for preliminary injunction.

"A plaintiff seeking a preliminary injunction must establish [i] that he is likely to succeed on the merits, [ii] that he is likely to suffer irreparable harm in the absence of preliminary relief, [iii] that the balance of equities tips in his favor, and [iv] that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). "Perhaps the single most important

---

[1] On May 21, 2018, Plaintiff States filed a motion requesting that Defendants and Defendant-Intervenors be required to file their responses to the motion for preliminary injunction on May 25, 2018, Plaintiff States be required to file their Reply on May 29, 2018, and the Court conduct a hearing on the motion for preliminary injunction on May 30, 2018. Nonetheless, New Jersey communicated via email with counsel for Plaintiff States and Defendants regarding the schedule proposed above on May 24, 2018. Counsel for Plaintiff States responded that Plaintiff States do not agree with the proposed schedule. Counsel for Defendants did not respond.

prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Texas v. United States*, 86 F. Supp. 3d 591, 674 (S.D. Tex. 2015).

New Jersey will contest each of these factors, and several will require discovery. For example, in order to determine whether Plaintiff States are likely to succeed on the merits of their claim that the "Executive Branch … rubber-stamp[s] applications that meet the DACA criteria" and has unlawfully granted certain DACA recipients "lawful-permanent-resident status" and "citizenship," Dkt. 5 at 2-3, New Jersey will seek to conduct discovery into how DACA operates, how U.S. Citizenship and Immigration Services ("USCIS") adjudicators review, grant, reject, and deny DACA applications, and the circumstances under which any recipients have received lawful permanent resident status or citizenship.

Similarly, New Jersey will seek discovery in order to determine how Plaintiff States will be irreparably harmed during the pendency of this litigation through "the healthcare, law enforcement, and education costs imposed by aliens who would not remain in the country but for DACA," and "injury to citizens … in attempting to secure employment," Dkt. 5 at 41, when Plaintiff States have never claimed such injury from DACA in the past, and DACA has been in place in since June 15, 2012.

Plaintiff States imply that discovery and thorough briefing are unnecessary here because the Fifth Circuit DAPA decision is "controlling authority" that resolves the issues raised in this case. Dkt. 46 at 3. That is incorrect. The Fifth Circuit's DAPA decision held that Plaintiffs had demonstrated a likelihood of success on the merits of their procedural and substantive Administrative Procedure Act ("APA") claims in part because DAPA did not comport with the Immigration and Nationality Act's "intricate process for illegal aliens to derive a lawful

3

immigration classification from their children's immigration status." *Texas v. United States*, 809 F.3d 134, 179 (5th Cir. 2015). That rationale does not apply to DACA. And the Fifth Circuit was careful to acknowledge that "DACA and DAPA are not identical." *Id.* at 174.

Tellingly, no court has ever held DACA unlawful, including those that considered the question after the Fifth Circuit's DAPA decision. *See Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 975 (9th Cir. 2017) (declining to rule on constitutionality of DACA); *Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) (affirming dismissal for failure to state a claim of county sheriff's action challenging DACA); *Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015) (affirming dismissal for lack of standing of Mississippi's challenge to DACA). And two recent decisions from district courts in New York and California enjoining implementation of the DACA rescission, which also had full opportunity to consider the Fifth Circuit's decision, "are premised on the legal conclusion that DACA is lawful." *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 284 F. Supp. 3d 758, 767 (D. Md. 2018) (summarizing the holdings of *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec*., 279 F.Supp.3d 1011 (N.D. Cal. 2018), and *Batalla Vidal v. Nielsen*, 279 F.Supp.3d 401 (E.D.N.Y. 2018)).

Moreover, even if this Court were to find that it had already adjudicated the likelihood of success of Plaintiff States' DACA challenge in the context of the DAPA lawsuit, which it did not, that would not suffice for purposes of a preliminary injunction, as Plaintiff States would still have to show irreparable harm, that the balance of the equities tips in their favor, and that an injunction is in the public interest. Those factors could not be more different in this case than they were in the DAPA litigation.

As to irreparable injury, a delay in seeking a preliminary injunction "weighs heavily against a finding of irreparable injury." *Rimkus Consulting Group, Inc. v. Cammarata*, 255

F.R.D. 417, 438 (S.D. Tex. 2008). Whereas Plaintiff States filed the DAPA lawsuit within days after the DAPA Memo issued, and months before DAPA was to go into effect, here Plaintiff States waited almost six years after DACA had been in full force and effect to challenge it. And the allegedly irreparable injuries that Plaintiffs claim they will suffer in this case, *i.e.*, "the healthcare, law enforcement, and education costs imposed by aliens who would not remain in the country but for DACA," and "injury to citizens … in attempting to secure employment," Dkt. 5 at 41, are what this Court found "the type of possible remote future injury that will not support a preliminary injunction" in the DAPA litigation. *Texas v. United States*, 86 F. Supp. 3d at 672.

As to the balance of hardship to the parties and the public interest factors, this Court previously held that any injunction of DAPA would cause no harm because "[t]he situation is not such that individuals are currently considered 'legally present' and an injunction would remove that benefit." *Id.* at 674. Instead, "[p]reliminarily enjoining DAPA's implementation would … merely preserve the status quo that has always existed." *Id.* The precise opposite is true here. If this Court grants Plaintiff States' requested relief and even temporarily "enjoin[s] Defendants from issuing or renewing DACA permits," Dkt. 1 ¶ 16, DACA grantees whose deferred action expires will lose their work authorization and be subject to deportation. This would seriously harm the actual lives of the hundreds of thousands of DACA recipients in this country, and the millions of U.S. citizens those recipients impact each day. New Jersey, which is home to 17,400 active DACA grantees, will itself be irreparably harmed, as an estimated 23 New Jersey DACA grantees watch their permits expire each day.

None of these issues has already been decided. Because of the complexity and immense importance of the legal issues raised in Plaintiffs' motion for preliminary injunction, this Court

5

should set an orderly briefing schedule that allows the parties to conduct necessary discovery and fully brief and present their arguments.

*Second*, there is no basis for an expedited schedule here—as this Court appears to have recognized by directing counsel to submit a proposed briefing schedule, rather than brief the motion according to the expedited schedule set forth in the local rules.[2]

Plaintiff States assert they need a final ruling prior to July 23, 2018, the date on which they claim DACA will "com[e] back into full force and effect." Dkt. 46 at 1. That is wrong for two reasons. First, in *NAACP v. Trump*, No. 1:17-cv-1907, 2018 WL 1920079 (D.D.C. Apr. 24, 2018), the court vacated DACA's rescission in full, but stayed its order for 90 days to allow the Department of Homeland Security ("DHS") time to "reissue a memorandum rescinding DACA, this time providing a fuller explanation for the determination that the program lacks statutory and constitutional authority." *Id.* at *25. Only if DHS "fail[s] to issue such a memorandum within 90 days" will "the Rescission Memo … be vacated in its entirety and the original DACA program will be restored in full." *Id.* Therefore, July 23, 2018, may come and go without DACA being restored in full.

Second, even if DACA is ultimately "restored in full" on July 23, the operative word in that phrase is "*restored*." DACA went into full force and effect on June 15, 2012, nearly *six years ago*, and stayed that way until September 5, 2017, when Defendants stopped adjudicating new DACA applications. When Plaintiff States challenged DAPA in 2014, they assiduously

---

[2] Plaintiff States argue that pursuant to the local rules, any opposition to the Preliminary Injunction should have been filed on May 23, 2018, or at the latest May 25, 2018. Dkt. 46 at 3. But had the Court believed the local rules mandated that any opposition be filed on May 23, 2018, or even May 25, 2018, it would not have asked the parties to either agree to a scheduling order or submit their own proposed scheduling orders on May 25, and it would not have scheduled a Scheduling Conference for May 30. Simply put, there would have been nothing to schedule on that day, as the opposition would have already been due.

avoided challenging DACA, despite a clear opportunity to do so. It was not until May 1, 2018, *2,145 days after the DACA Memo issued*, that Plaintiffs filed this lawsuit. Plaintiff States cannot now claim that they need expedited review of something they waited so many years to challenge. Plaintiff States' July 23 deadline is thus entirely manufactured and provides no basis to rush these proceedings.

*Finally*, this Court should set a briefing schedule to permit New Jersey a complete opportunity to participate in this action. For all of the reasons stated in the Amended Memorandum of Law in Support of New Jersey's Motion to Intervene, Dkt. 42, adjudication here without New Jersey's participation would not be a full and fair adjudication on the merits.

For all of these reasons, this Court should so order the proposed scheduling order attached as Exhibit 1.

Dated:  May 25, 2018

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
By:   */s/Rachel Wainer Apter*
Assistant Attorney General
Attorney-in-Charge
Admission by Pro Hac Vice
Kenneth S. Levine
Deputy Attorney General
Admission by Pro Hac Vice
Paul H. Juzdan
Deputy Attorney General
Admission by Pro Hac Vice
Richard J. Hughes Justice Complex
25 Market Street, 8th Floor
Trenton, New Jersey 08625-0116
Phone: (609) 376-2702
Fax: (609) 777-4015
Rachel.Apter@njoag.gov

*Attorneys for Proposed Defendant-Intervenor State of New Jersey*

## **CERTIFICATE OF SERVICE**

I certify that on May 25, 2018, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Rachel Wainer Apter
Rachel Wainer Apter