# EXHIBIT 3

Jeffrey M. Davidson (Bar No. 248620)
Alan Bersin (Bar No. 63874)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: jdavidson@cov.com,
abersin@cov.com

Lanny A. Breuer
Mark H. Lynch
Alexander A. Berengaut
Megan A. Crowley
Ashley Anguas Nyquist
Ivano M. Ventresca
(*pro hac vice* applications forthcoming)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: +1 (202) 662-6291
E-mail: lbreuer@cov.com, mlynch@cov.com,
aberengaut@cov.com, mcrowley@cov.com,
anyquist@cov.com, iventresca@cov.com

Charles F. Robinson (Bar No. 113197)
Margaret Wu (Bar No. 184167)
Julia Friedlander (Bar No. 165767)
Sonya Sanchez (Bar No. 247541)
Norman Hamill (Bar No. 154272)
Harpreet Chahal (Bar No. 233268)
Michael Troncoso (Bar No. 221180)
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200
Telephone: + 1 (510) 987-9800
Facsimile: + 1 (510) 987-9757
Email: charles.robinson@ucop.edu

Attorneys for Plaintiffs
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA and JANET NAPOLITANO,
in her official capacity as President of the
University of California

[*Additional Counsel Listed on Next Page*]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, *in her official capacity as President of the University of California*,<br><br>  Plaintiffs,<br><br>  v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, *in her official capacity as Acting Secretary of the Department of Homeland Security*,<br><br>  Defendants. | Civil Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**ADDITIONAL COUNSEL OF RECORD**

Mónica Ramírez Almadani (Bar No. 234893)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + (424) 332-4749
Email: mralmadani@cov.com

Erika Douglas (Bar No. 314531)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061-1418
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: edouglas@cov.com

Attorneys for Plaintiffs THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California

Plaintiffs The Regents of the University of California ("UC" or "the University"), on its own behalf and on behalf of all students currently enrolled at the University, and Janet Napolitano, in her official capacity as President of the University of California (together "Plaintiffs"), bring this action for declaratory and injunctive relief against the Department of Homeland Security ("DHS") and Acting Secretary of Homeland Security, Elaine Duke (together, "Defendants"), and allege as follows:

## INTRODUCTION

1. This lawsuit, brought under the Due Process Clause of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, challenges Defendants' unlawful decision to rescind the Deferred Action for Childhood Arrivals ("DACA") program, which protected from deportation nearly 800,000 individuals brought to this country as children, known as Dreamers. Under DACA, the Dreamers, who came to the United States through no choice of their own, who have clean records, and who have lived continuously in the United States since 2007, were permitted to live, work, and study in this country without fear of deportation. The United States, and the University, have benefited enormously from the presence of the Dreamers, accomplished young men and women who are our students, and colleagues, and neighbors. They are Americans, a fact that Defendants' precipitous decision cannot change.

2. As a result of Defendants' actions, the Dreamers face expulsion from the only country that they call home, based on nothing more than unreasoned executive whim. The University faces the loss of vital members of its community, students and employees. It is hard to imagine a decision less reasoned, more damaging, or undertaken with less care. As explained below, Defendants' capricious rescission of the DACA program violates both the procedural and substantive requirements of the APA, as well as the Due Process Clause of the Fifth Amendment. Accordingly, Defendants' unconstitutional, unjust, and unlawful action must be set aside.

3. On June 15, 2012, former Secretary of Homeland Security Janet Napolitano announced that individuals who arrived in the United States as children and met certain criteria, and who otherwise satisfied DHS's exercise of discretion, could apply for deferred action for two-year periods, subject to renewal. *See* Memorandum from Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Servs. et al., Exercising Prosecutorial Discretion

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

With Respect to Individuals Who Came to the United States as Children (June 15, 2012) ("DACA Memorandum"). DACA allowed these individuals to live, study, and work in the United States without fear that they could be arrested and deported at any time. Because of the program, DACA recipients were able to pursue opportunities in higher education, to more readily obtain driver's licenses and access lines of credit, to obtain jobs and access to certain Social Security and Medicare benefits, and to contribute to their communities and American society in countless ways.

4. The University directly benefited from the DACA program, in its capacities as educator and employer. UC has approximately 4,000 undocumented students, a substantial number of whom are DACA recipients. Many of its staff members are also DACA recipients. These individuals make important contributions to University life, expanding the intellectual vitality of the school, filling crucial roles as medical residents, research assistants, and student government leaders, and increasing the diversity of the community.

5. Over the past five years, DACA recipients have structured their lives—and the University has made significant investments—on the government's express assurances that if they self-identified, registered with federal law enforcement agencies, and passed an extensive background investigation, they would be shielded from deportation and allowed to work in the United States for renewable two-year periods. Yet despite the substantial and well-founded reliance that these individuals and the University placed in the continuation of the DACA program, on September 5, 2017, Defendants suddenly and unilaterally rescinded it. *See* Ex. A, Memorandum on Rescission Of Deferred Action For Childhood Arrivals (Sept. 5, 2017) (hereinafter the "Rescission").

6. The Rescission, which renders DACA recipients once more subject to deportation, has profound consequences for the University and its students. As a result of Defendants' actions, DACA recipients face the loss of their livelihood, education, and country. The University and all of its students will lose the contributions of valued colleagues and employees. The University also will lose intellectual capital and productivity, as DACA recipients are deprived of the work authorizations needed to serve in the professional roles in which both they and the University have so heavily invested.

7. In the Rescission, Defendants offered no reasoned basis for their cancellation of DACA, instead merely pointing to the purported illegality of another program known as Deferred Action for

1  Parents of Americans and Lawful Permanent Residents ("DAPA"), and stating that in light of the Fifth
2  Circuit's conclusion that DAPA is unlawful, "it is clear that [DACA] should be terminated." As
3  explained below, rescinding DACA on this specious basis was procedurally and substantively invalid
4  under the APA and violated the Due Process Clause of the Fifth Amendment.

   8. Agency action is invalid under the APA if it is "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law," or if it is taken "without observance of procedure
required by law." 5 U.S.C. § 706(2). To survive judicial review under the APA, an agency must
"articulate a satisfactory explanation for its action including a 'rational connection between the facts
found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.
Co.*, 463 U.S. 29, 43 (1983). In determining whether an agency has complied with this requirement, a
court must conduct a "thorough, probing, in-depth review" of the agency's reasoning and a "searching
and careful" inquiry into the factual underpinnings of the agency's decision. *Citizens to Preserve
Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16 (1971). Here, in multiple respects, Defendants failed
to "articulate a satisfactory explanation" for their action that would enable a court to conclude that the
decision was "the product of reasoned decisionmaking." *State Farm*, 463 U.S. at 52.

   9. As an initial matter, Defendants' reliance on the purported illegality of DAPA is an
entirely insufficient basis on which to terminate DACA. DAPA is a separate program from DACA.
The two programs were governed by different sets of rules, applied to different individuals, and
conferred different benefits. Therefore, the alleged illegality of DAPA does not justify the rescission of
DACA, and Defendants' failure to recognize the many differences between the programs renders their
decision unreasonable.

   10. Because the Rescission is based on an incorrect legal premise—the purported illegality of
DACA—it cannot survive judicial review under the APA. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S.
497, 532 (2007) (holding that action was unlawful under the APA because agency based its decision on
incorrect legal conclusion); *Safe Air For Everyone v. EPA*, 488 F.3d 1088, 1101 (9th Cir. 2007)
("Because that flawed premise is fundamental to EPA's determination . . . EPA's outcome on those
statutory interpretation questions is arbitrary, capricious, or otherwise not in accordance with law.").

3
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

11. Despite Defendants' conclusory assertion that DACA "has the same legal and constitutional defects" as DAPA, no court has held that DACA is unlawful. Instead, DHS has previously concluded that programs like DACA are a lawful exercise of the Executive Branch's broad statutory authority to administer and enforce the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq*. *See* Brief for Petitioners, *United States v. Texas*, 2016 WL 836758 (2016) (No. 15-674). Similarly, the Department of Justice's Office of Legal Counsel ("OLC")—whose legal advice is binding on the Executive Branch—provided a thoughtful and nuanced analysis of DAPA in 2014, concluding that DAPA, as well as DACA, was a lawful exercise of the Executive Branch's prosecutorial discretion. Dep't of Homeland Sec.'s Auth. to Prioritize Removal of Certain Aliens Unlawfully Present in the United States & to Defer Removal of Others, 2014 WL 10788677 (O.L.C. Nov. 19, 2014).

12. The Rescission fails to acknowledge—let alone explain—the government's departure from its own prior interpretations of the law. Indeed, DHS vigorously defended the legality of DAPA in the Supreme Court less than two years ago. *See* Brief for Petitioners, *supra*. Yet in making the unfounded assertion that DACA is illegal for the same reasons that DAPA is illegal, Defendants neither addressed the compelling arguments set forth in DHS's own brief before the Supreme Court and in OLC's 2014 Opinion, nor offered a reasonable explanation for why their current view of the law is superior to the view they and OLC previously espoused. Those failures, standing alone, are enough to render their decision unlawful under the APA.

13. Defendants compound the irrationality of their decision by failing to acknowledge the profound reliance interests implicated by DACA and the hundreds of thousands of individuals, employers, and universities who will be substantially harmed by the termination of the program. The Supreme Court has emphasized that the presence of serious reliance interests requires an agency to proffer a "more substantial justification" than otherwise would be required when the agency changes course. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015); *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009). Here, Defendants entirely failed to comply with that directive.

14. Defendants did not analyze the actual costs and benefits of allowing DACA recipients to live and work in this country, nor did they acknowledge the manifold benefits that have resulted from the program or the harm that institutions like the University—as well as its students—would suffer as a

4
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

result of the Rescission. By failing to consider these factors and the interests at stake, Defendants have failed to satisfy the APA's requirement of reasoned decision-making.

15. The Rescission also should be set aside because it is procedurally invalid. By prohibiting DHS from granting advance parole or renewing recipients' DACA status after October 5, 2017, the Rescission circumscribes DHS's discretion and therefore constitutes a substantive rule. *See W.C. v. Bowen*, 807 F.2d 1502, 1505 (9th Cir. 1987), *opinion amended on denial of reh'g*, 819 F.2d 237 (9th Cir. 1987) ("Rules which substantially limit an agency's discretion are generally substantive rules."). Additionally, in contrast to the case-by-case assessment of individual applicants provided under DACA, the Rescission is a categorical rule, which applies to all DACA recipients. This too underscores the substantive nature of the Rescission, which is subject to the full range of the APA's rulemaking requirements, including the notice-and-comment requirement of 5 U.S.C. § 553. *See Paulsen v. Daniels*, 413 F.3d 999, 1003-04 (9th Cir. 2005) (holding that Bureau of Prisons "plainly violated the APA" by promulgating a rule that barred category of prisoners from relief without notice). Defendants' failure to abide by these mandatory procedural requirements renders their action unlawful.

16. Finally, in rescinding DACA, Defendants violated the Due Process Clause of the United States Constitution by failing to provide the University with any process before depriving it of the value of the public resources it invested in DACA recipients, and the benefits flowing from DACA recipients' contributions to the University. More fundamentally, they failed to provide DACA recipients with any process before depriving them of their work authorizations and DACA status, and the benefits that flow from that status.

## THE PARTIES

17. Plaintiff The Regents of the University of California is a California public corporation, authorized and empowered to administer a public trust known as the University of California, pursuant to Article IX, Section 9, subdivisions (a) and (f) of the California Constitution. Its principal place of business is in Oakland, Alameda County, California. The University brings this complaint on behalf of itself and on behalf of all students currently enrolled at the University. Approximately 4,000 undocumented students are enrolled at the University, a substantial number of whom are DACA recipients. Some of these recipients are also employed by the University.

18. Plaintiff Janet Napolitano is a resident of California. She brings this complaint in her official capacity as President of the University of California.

19. Defendant DHS is a federal cabinet agency responsible for implementing and enforcing the Immigration and Nationality Act ("INA"). DHS is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 551(1). DHS, as well as its component agencies U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE"), have responsibility for, among other things, administering and enforcing the nation's immigration laws and policies, including the DACA program.

20. Defendant Elaine Duke is the Acting Secretary of DHS and, in the absence of a Secretary, is the senior official of DHS. She is sued in her official capacity. Acting Secretary Duke issued the Rescission on September 5, 2017.

## JURISDICTION

21. This action arises under the Due Process Clause of the Fifth Amendment, U.S. Const. amend. V; and the APA, 5 U.S.C. § 550 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361, and 2201–2202.

22. There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court. Plaintiffs have no adequate remedy at law.

## VENUE

23. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(e), because this is a civil action in which Defendants are an agency, or officers of an agency, of the United States, because a substantial part of the events or omissions giving rise to this action occurred in the District, and, further, because Plaintiffs reside in this District and no real property is involved in the action.

## INTRADISTRICT ASSIGNMENT

24. Pursuant to Local Rule 3-2(c), intradistrict assignment is proper in San Francisco or Oakland because a substantial part of the events or omissions which give rise to the claim occurred in the County of Alameda.

# BACKGROUND

## A. The DACA Program

25. On June 15, 2012, the Secretary of Homeland Security Janet Napolitano announced that individuals who arrived in the United States as children and met certain criteria could apply for deferred action for two-year periods, subject to renewal. *See* DACA Memorandum. In establishing the program, the Secretary elected to extend deferred action to "certain young people who were brought to this country as children and know only this country as home." *Id.* The Secretary emphasized that federal immigration laws are "not designed . . . to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways." *Id.* This program is known as Deferred Action for Childhood Arrivals ("DACA").

26. Individuals were eligible for the program if they (1) came to the United States when they were under the age of sixteen; (2) continuously resided in the United States since June 15, 2007, and were present in the United States on June 15, 2012, and on the date they requested DACA; (3) were currently in school, had graduated from high school, had obtained a general education development certificate, or were an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; (4) had not been convicted of a felony, a significant misdemeanor, or three or more other misdemeanors, and otherwise did not pose a threat to national security or public safety; (5) did not have lawful immigration status on June 15, 2012; and (6) were under the age of 31 as of June 15, 2012. *See id.*; *see also* Ex. B, U.S. Citizenship & Immigration Servs.: Consideration of Deferred Action for Childhood Arrivals Process (Aug. 26, 2017) (hereinafter "USCIS FAQs"). Individuals who met these criteria were then eligible for an exercise of prosecutorial discretion, following an individualized review of their applications. *See* DACA Memorandum.

27. When they applied for admission to the program, DACA recipients were required to disclose sensitive, personal information to Defendants, including their lack of lawful immigration status as of June 15, 2012, their date of initial entry into the United States, their country of birth, their current and previous mailing addresses, and other contact information. *See* USCIS Form I-821D; USCIS Form I-821D Instructions.

7
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

28. Continuing their longstanding practice with respect to deferred-action applications, Defendants repeatedly promised DACA applicants that the information they submitted as part of their applications would not be used for civil immigration enforcement purposes against DACA applicants or their families. *See* USCIS FAQs; Form I-821D Instructions. Because only individuals who might be subject to removal proceedings would apply for DACA, this promise was necessary for individuals to submit applications without fear that the Executive Branch was using DACA as a way to find and remove undocumented immigrants.

29. Individuals who received deferred action under DACA were not subject to removal for a period of two years, subject to renewal. *See* DACA Memorandum.

30. DACA recipients also were eligible for work authorizations that allowed them to work legally in the United States, pursuant to a long-standing federal regulation. *See id.*; 8 C.F.R. § 274a.12(c)(14) (providing that "an alien who has been granted deferred action" may obtain work authorization upon demonstrating economic necessity); USCIS FAQs ("Under existing regulations, an individual whose case has been deferred is eligible to receive employment authorization for the period of deferred action, provided he or she can demonstrate 'an economic necessity for employment.'"). An individual's work authorization expires at the same time as his or her DACA status and could be renewed upon a renewal of DACA status.

31. Individuals with DACA status were "not considered to be unlawfully present during the period in which deferred action [was] in effect." USCIS FAQs.

32. Since the program was first introduced in 2012, nearly 800,000 individuals received DACA status. This includes an estimated 242,339 residents of the State of California. *See* Number of I-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake, Biometrics and Case Status: 2012-2017 (Mar. 31, 2017); Carolyn Jones, California Colleges Undaunted by Trump's Decision to Phase out DACA, EDSOURCE (Sept. 1, 2017), https://edsource.org/2017/california-colleges-undaunted-by-trumps-threat-to-end-daca/586746.

### B. The Many Benefits of DACA

33. As noted above, DACA recipients have contributed in innumerable ways to the intellectual and social fabric of the University.

8
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

34. As an institution whose core mission is serving the interests of the State of California, the University seeks "to achieve diversity among its student bodies and among its employees." *See* Academic Senate of the Univ. of Cal., *Regents Policy 4400: Policy of University of California Diversity Statement*, UNIV. OF CAL.: BOARD OF REGENTS, http://regents.universityofcalifornia.edu/governance/policies/4400.html. The University recognizes the importance of diversity to its academic mission, as it allows "students and faculty [to] learn to interact effectively with each other, preparing them to participate in an increasingly complex and pluralistic society." *Id.* The educational experience of all University students is fuller and more enriching when ideas are "born and nurtured in a diverse community." *Id.* DACA students at the University are an integral part of that community. Their talent, perspectives, and experiences are invaluable contributions to University life.

35. DACA recipients also make significant contributions to University life in their role as employees. They work at UC campuses and in UC medical centers as teaching assistants, research assistants, post-docs, and health care providers. DACA recipients often possess valuable foreign language skills. By allowing DACA recipients to work lawfully, DACA moved recipients out of the informal economy, increasing the pool of talent from which UC could fill positions at the University.

36. Additional DACA recipients who are enrolled as students support themselves and cover a portion of their tuition through their part-time work for the University. For many of these students, DACA work authorization plays a significant role in their ability to attend UC and continue each year with their chosen program of study.

37. The University has invested considerable resources in recruiting and retaining these individuals—as students and employees. It has made scarce enrollment space available to these students on the basis of their individual achievements. It also has invested substantial time, financial aid, research dollars, housing benefits, and other resources in them on the expectation that these students will complete their course of study and become productive members of the communities in which the University operates, and other communities throughout the nation. The University has significant interests in retaining this wealth of talent and in continuing to enjoy the many benefits of their participation in University life.

38. Furthermore, by allowing recipients to receive deferred action and obtain work authorization, DACA opened myriad opportunities to them. As noted above, DACA recipients became eligible for federal work authorization, which significantly improved their opportunities for employment and higher paying jobs. Under the program, DACA recipients received social security numbers and therefore were able to access credit more easily. DACA also enabled recipients to obtain driver's licenses in a number of states where they otherwise could not. It also protected these individuals' right to travel freely by making them eligible to receive "advance parole," which allowed them to travel abroad temporarily for humanitarian, educational, or employment purposes, and to return to the United States lawfully. *See* 8 C.F.R. § 212.5(f); USCIS FAQs.

### C. *Defendants Unlawfully Rescind DACA*

39. As recently as February 20, 2017, Defendants had reaffirmed the administration's commitment to DACA, *see* Memorandum from John Kelly, Sec'y of Homeland Security, Enforcement of the Immigration Laws to Serve the National Interest, at 2 (Feb. 20 2017), and up until September 5, 2017, Defendants had continued to approve DACA requests and renewals. Despite President Trump's claim that DACA recipients "shouldn't be very worried" and that the Administration would treat DACA recipients "with great heart," on September 5, 2017, Defendants announced that they were rescinding the program. *See* Transcript: ABC News anchor David Muir interviews President Trump, ABC NEWS (Jan. 25, 2017) http://abcnews.go.com/Politics/transcript-abc-news-anchor-david-muir-interviews-president/story?id=45047602; *see also* Madeline Conway, Trump Tells Dreamers To "Rest Easy," Politico.com (Apr. 21, 2017), http://www.politico.com/story/2017/04/21/trump-dreamers-rest-easy-immigration-237463.

40. Defendants announced their decision on the same day as a "deadline" imposed by ten states that threatened to sue the Trump administration if DACA were not rescinded. *See* Letter from Gov. Abbott to U.S. Att'y General Sessions (June 29, 2017). The Rescission expressly states that this threat—rather than any reasoned evaluation of the legality and merits of the program—provoked the decision to terminate DACA.

41. Prior to DHS's issuance of the Rescission, Attorney General Jeff Sessions held a press conference in which he asserted that "[o]ur collective wisdom is that the policy is vulnerable to the same

10
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

legal and constitutional challenges that the courts recognized with respect to the DAPA program." *See* Ex. C, Attorney General Sessions Delivers Remarks On DACA (Sept. 5, 2017), https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-daca ("Press Conference"). Similarly, a September 4, 2017 letter from the Attorney General to Acting Secretary of DHS Duke reiterated that DACA "was effectuated . . . without proper statutory authority" and "was an unconstitutional exercise of authority by the Executive Branch." *See* Ex. D, Letter from Att'y General Sessions to Acting Sec'y of DHS Duke (Sept. 4, 2017). The Attorney General also noted the potential of litigation from several states and that DACA was "likely" to be enjoined in that yet-to-be-filed litigation.

42. In addition, in his press conference Attorney General Sessions alleged, without offering any evidence, that DACA had "denied jobs to hundreds of thousands of Americans by allowing those same jobs to go to illegal aliens." He also made the specious claim that DACA "contributed to a surge of unaccompanied minors on the southern border that yielded terrible humanitarian consequences." *See* Press Conference. That claim is facially false. DACA by its terms applies only to individuals resident in the United States since June 15, 2007—five years before the program began.

43. After the press conference, Acting Secretary of Homeland Security Duke, purporting to act "[i]n the exercise of [her] authority in establishing national immigration policies and priorities," formally rescinded the DACA Memorandum. The Rescission states that "it is clear" that DACA "should be terminated" in light of the Fifth Circuit's ruling in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), regarding DAPA, the Supreme Court's non-precedential affirmance of that ruling by an equally divided court, and the Attorney General's September 4 letter.

44. The President, however, does not appear to share the views of DHS or his Attorney General regarding the legality of DACA. In direct contradiction to Defendants' and Attorney General Sessions' position that the prior administration had exceeded the authority of the Executive Branch in establishing DACA, *see* Ex. A and Press Conference, the President tweeted on the night of the Rescission, "Congress now has 6 months to legalize DACA (something the Obama Administration was unable to do). If they can't, I will revisit this issue!" *See* Donald J. Trump (@realDonaldTrump), Twitter (Sep. 5, 2017, 8:38 PM), https://twitter.com/realDonaldTrump/status/905228667336499200.

45. Although the Rescission concludes that DACA is unlawful, it does not immediately revoke any individual's DACA status or work authorization. Instead, it instructs that "the Department will provide a limited window in which it will adjudicate certain requests for DACA and associated applications." Specifically, the Rescission explains that DHS will adjudicate pending DACA requests and associated work authorization applications that already had been accepted by the agency as of September 5, 2017, but will reject new requests and applications filed after September 5, 2017. It further states that DHS will adjudicate pending renewal requests and applications from current DACA recipients, as well as renewal requests and applications from current DACA recipients for grants of deferred action that expire between September 5, 2017, and March 5, 2018, and that are accepted by the agency as of October 5, 2017. Any renewal requests filed after October 5, 2017, or any renewal requests for benefits that expire after March 5, 2018, will be rejected. DHS will not terminate the current grants of deferred action to DACA recipients, but instead will allow individuals' DACA status to expire. DHS will not approve any new applications for advance parole and will administratively close all pending applications for advance parole. *See* Ex. A at 4-5.

46. Defendants' decision to rescind the program will have immense and devastating effects on the University and all of its students. As a result of the termination of the program, the University and its students will lose the vital contributions that DACA recipients have made as students and employees. *See Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir. 2017) ("[S]chools have been permitted to assert the rights of their students."). The civic life of the school will be diminished, the exchange of ideas will be reduced, teaching and research will be impaired, and diversity will be more difficult to achieve. The University and its students benefit from cohesive family units, robust civic participation, and the strength of social and educational communities. The Rescission damages each of these interests, in California and nationwide.

47. Moreover, UC students and employees have friends or family members who are DACA recipients, and the University will have to expend resources to address the detrimental effects that the rescission of DACA will have on these individuals' lives. The University also will lose the resources it has spent educating students who ultimately do not graduate.

12
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

48. As a result of the Rescission, DACA students will be unable to plan for the future, apply for and obtain internships and certain financial aid and scholarships, study abroad, or work to pay their tuition and other expenses. Students subject to these hardships may choose to withdraw from UC altogether.

49. DACA recipients also will be at risk of removal. Indeed, in a set of "Talking Points" released the same day of the Rescission, DHS "urge[d] DACA recipients to use the time remaining on their work authorizations to prepare for and arrange their departure from the United States." *See* Talking Points—DACA Rescission. Removal will self-evidently result in the loss of employment, education, and relationships with others in the United States.

**FIRST CLAIM FOR RELIEF**
**Agency Action That Is Arbitrary and Capricious,**
**An Abuse of Discretion, and Otherwise Not In Accordance with Law**
**in Violation of 5 U.S.C. § 706(2)(A)**

50. The above paragraphs are incorporated herein by reference.

51. DHS is an agency subject to the requirements of the APA. 5 U.S.C. § 701(b)(1).

52. Under 5 U.S.C. § 706(2), courts shall hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law.

53. The Rescission constitutes final agency action that is reviewable by this Court.

54. The Rescission and actions taken by Defendants to rescind DACA are arbitrary and capricious, an abuse of discretion, and not in accordance with law because, among other things, Defendants failed to articulate a reasonable explanation for their actions. In assessing Defendants' actions under the arbitrary-and-capricious standard, a court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (citation omitted). Here, Defendants have not considered the relevant factors in deciding to revoke DACA. They also have failed to consider important aspects of the issue, including the arguments previously set forth by OLC and DHS as to why DACA is lawful.

55. Defendants also disregarded the serious reliance interests engendered by the DACA program. Where, as here, significant reliance interests are at stake, Defendants must, in addition to demonstrating that "there are good reasons" for the new policy, offer "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox*, 556 U.S. at 515. Defendants here have utterly failed in these obligations.

56. The Rescission and actions taken by Defendants to rescind DACA are arbitrary and capricious, an abuse of discretion, and not in accordance with law because, among other things, they are based on the legally incorrect premise that DACA is unlawful.

57. The Rescission and actions taken by Defendants to rescind DACA are arbitrary and capricious, an abuse of discretion, and not in accordance with law because, among other things, they are contrary to the constitutional protections of the Fifth Amendment.

58. The University and its students were harmed and continue to be harmed by these unlawful acts.

### SECOND CLAIM FOR RELIEF
**Agency Action Without Observance of Procedure Required by Law in Violation of 5 U.S.C. § 706(2)(D)**

59. The above paragraphs are incorporated herein by reference.

60. The APA requires administrative agencies to follow notice-and-comment rulemaking procedures to promulgate substantive rules. *See* 5 U.S.C. § 553. The APA defines "rule" broadly to include:

> the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages . . . .

5 U.S.C. § 551(4).

61. The Rescission constitutes a substantive rule subject to APA's notice-and-comment requirements.

62. The Rescission constitutes a substantive rule because it affirmatively circumscribes DHS's statutory authority in providing deferred action and prohibits DHS from renewing recipients' DACA status after October 5, 2017.

63. The Rescission constitutes a substantive rule because it includes a ban on current DACA recipients with work authorizations travelling on advance parole.

64. The Rescission constitutes a substantive rule because it is a categorical rule, which applies to all DACA recipients.

65. In issuing the Rescission and rescinding DACA, Defendants impermissibly announced a new rule without undertaking notice-and-comment rulemaking.

66. The University and its students were harmed and continue to be harmed by these unlawful acts.

### THIRD CLAIM FOR RELIEF
### Violation of Procedural Due Process
### Under the Fifth Amendment

67. The above paragraphs are incorporated herein by reference.

68. Under the Fifth Amendment to the Constitution, no person may be deprived of life, liberty, or property without due process of law.

69. The University has constitutionally-protected interests in the multiple educational benefits that flow from a diverse student body. Thousands of DACA students have earned prized places as undergraduate and graduate students at the University of California through their record of high—even extraordinary—personal achievement in high school and college. In reliance on DACA, the University has chosen to make scarce enrollment space available to these students and to invest in them substantial time, financial aid, research dollars, housing benefits, and other resources, on the expectation that these students will complete their course of study and become productive members of the communities in which the University operates, and other communities throughout the nation. If these students leave the University before completing their education, UC will lose the benefits it derives from their contributions, as well as the value of the time and money it invested in these students with the expectation that they would be allowed to graduate and apply their talents in the United States job market.

70. UC students who are DACA recipients also have constitutionally-protected interests in their DACA status and the benefits that come from that status, including the ability to work, to pursue

opportunities in higher education, to more readily obtain driver's licenses and access lines of credit, to obtain jobs, and to access certain Social Security and Medicare benefits.

71. The Rescission and actions taken by Defendants to rescind DACA unlawfully deprive the University and its students of these and other constitutionally-protected interests without due process of law. Such deprivation occurred with no notice or opportunity to be heard.

72. Defendants therefore have violated the Fifth Amendment to the United States Constitution.

73. The University and its students were harmed and continue to be harmed by these unlawful acts.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Vacate and set aside the Rescission and any other action taken by Defendants to rescind DACA;

B. Declare that the Rescission and actions taken by Defendants to rescind DACA are void and without legal force or effect;

C. Declare that the Rescission and actions taken by Defendants to rescind DACA are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and without observance of procedure required by law in violation of 5 U.S.C. §§ 702-706;

D. Declare that the Rescission and actions taken by Defendants to rescind DACA are in violation of the Constitution and contrary to the laws of the United States;

E. Preliminarily and permanently enjoin and restrain Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing the Rescission and from taking any other action to rescind DACA that is not in compliance with applicable law;

F. Grant such further relief as this Court deems just and proper.

16
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DATED: September 8, 2017

COVINGTON & BURLING LLP

By: /s/ Jeffrey M. Davidson

Jeffrey M. Davidson (Bar No. 248620)
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: jdavidson@cov.com

Attorneys for Plaintiffs THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF