# EXHIBIT 14

No. 17-1003

# In the Supreme Court of the United States

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, ET AL., PETITIONERS

*v.*

REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI BEFORE
JUDGMENT TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

**BRIEF FOR THE STATES OF TEXAS, ALABAMA,
ARIZONA, ARKANSAS, FLORIDA, KANSAS,
LOUISIANA, NEBRASKA, SOUTH CAROLINA,
SOUTH DAKOTA, AND WEST VIRGINIA,
GOVERNOR PHIL BRYANT OF THE STATE OF
MISSISSIPPI, AND PAUL R. LEPAGE, GOVERNOR
OF MAINE, AS AMICI CURIAE IN SUPPORT OF
PETITIONERS**

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant
  Attorney General

SCOTT A. KELLER
Solicitor General
  *Counsel of Record*

J. CAMPBELL BARKER
Deputy Solicitor General

ARI CUENIN
JOHN C. SULLIVAN
Assistant Solicitors General

OFFICE OF THE
  ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
scott.keller@oag.texas.gov
(512) 936-1700

## QUESTIONS PRESENTED

1.   Whether the Acting Secretary's decision to wind down the DACA policy is judicially reviewable.

2.   Whether the Acting Secretary's decision to wind down the DACA policy is lawful.

## TABLE OF CONTENTS

Page

Interest of amici curiae ........................................................ 1

Summary of argument ......................................................... 3

Argument ............................................................................. 6

I.  DACA's wind-down satisfies Administrative
    Procedure Act review (second question
    presented). ................................................................... 6

    A.  The district court misunderstood APA
        review. .................................................................... 6

    B.  Texas's threatened litigation against DACA
        raised compelling legal arguments rooted in
        precedent, providing a non-arbitrary basis
        for the Executive to wind down DACA. ............. 9

    C.  DACA is unlawful. ................................................ 15

        1.  DACA is substantively unlawful. ................ 15

        2.  DACA is procedurally unlawful, as
            confirmed by plaintiffs' own pleadings ....... 16

II. The district court was correct that the DACA-
    wind-down memorandum is reviewable agency
    action (first question presented). .............................. 23

III. The decision below warrants certiorari before
     judgment. ................................................................... 26

Conclusion ........................................................................ 27

(III)

IV

## TABLE OF AUTHORITIES

Cases:

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011) ...................................................... 8

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014).................................... 24

*Arizona v. United States*,
   567 U.S. 387 (2012) .................................................... 13

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) .................................................... 17

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l*
   *Park Serv.*, 112 F.3d 1283 (5th Cir. 1997).............. 26

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ...................................................... 8

*Freytag v. Comm'r*,
   501 U.S. 868 (1991) ...................................................... 8

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ........................................ 23, 24, 25

*Mach Mining, LLC v. EEOC*,
   135 S. Ct. 1645 (2015) ............................................... 23

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ...................................................... 7

*McLouth Steel Prods. Corp. v. Thomas*,
   838 F.2d 1317 (D.C. Cir. 1988) ................................ 17

*Morton v. Ruiz*,
   415 U.S. 199 (1974) .............................................. 17, 22

*Prof'ls & Patients for Customized Care v.*
   *Shalala*, 56 F.3d 592 (5th Cir. 1995)....................... 17

*Safe Air for Everyone v. U.S. EPA*,
   488 F.3d 1088 (9th Cir. 2007)..................................... 8

V

*Syncor Int'l Corp. v. Shalala,*
127 F.3d 90 (D.C. Cir. 1997) .................................... 17

*Texas v. United States,* 809 F.3d 134 (5th Cir.
2015), *aff'd sub nom. by an equally divided
court, United States v. Texas,* 136 S. Ct. 2271
(2016) (per curiam) .......................................... *passim*

*In re United States,*
138 S. Ct. 371 (2017) .................................................. 2

Constitutional provision, statutes, and rules:

U.S. Const. art. II § 3 ............................................ 3, 6, 8, 19

Administrative Procedure Act:

5 U.S.C. § 551(4) .................................................. 16

5 U.S.C. § 701(a)(2) .............................................. 23

5 U.S.C. § 706(2)(A) ........................................... 4, 15

8 U.S.C. § 1611(b)(2)-(3) ................................. 19, 21

8 U.S.C. § 1621(d) ........................................... 19, 21

28 U.S.C. § 2401(a) ............................................. 26

8 C.F.R. § 1.3(a)(4)(vi) ....................................... 25

45 C.F.R. § 152.2(4)(vi) ...................................... 25

Sup. Ct. R. 37 ...................................................... 1

VI

Miscellaneous:

*AG Paxton Leads 10-State Coalition Urging*
   *Trump Administration to Phase Out*
   *Unlawful Obama-Era DACA Program*,
   http://www.texasattorneygeneral.gov/news/
   releases/ag-paxton-leads-10-state-coalition-
   urging-trump-administration-to-phase-out
   (June 29, 2017) ............................................................. 9

Administrative Record, *Regents of Univ. of Cal. v.*
   *U.S. Dep't of Homeland Sec.*, No. 3:17-cv-
   05211 (N.D. Cal. Oct. 6, 2017), ECF No. 64-1 ............ 2

Josh Blackman, *The Constitutionality of DAPA*
   *Part I*, 103 Geo. L.J. Online 96 (2015) ...................... 16

Br. for the State Respondents, *United States v.*
   *Texas*, 136 S. Ct. 2271 (2016), 2016 WL
   1213267 ........................................................................ 12

Br. for the States of Texas et al., *Brewer v. Ariz.*
   *Dream Act Coalition* (May 1, 2017) (U.S. No.
   16-1180), https://perma.cc/4SYG-3EX7 ......... 12, 13, 26

Br. for the United States as Amicus Curiae in
   Opp. to Reh'g En Banc at 16, *Ariz. Dream Act*
   *Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014)
   (No. 13-16248), ECF No. 75 ...................................... 24

3d Am. Complaint, *Batalla Vidal v. Nielsen*, No.
   1:16-cv-4756 (E.D.N.Y. Dec. 11, 2017), ECF
   No. 113 ......................................................................... 21

Complaint, *California v. Dep't of Homeland Sec.*,
   No. 3:17-cv-5235 (N.D. Cal. Sept. 11, 2017),
   ECF No. 1 .................................................................... 20

Complaint, *Garcia v. United States*, No. 3:17-cv-
   5380 (N.D. Cal. Sept. 18, 2017), ECF No. 1 .............. 20

VII

Complaint, *NAACP v. Trump*, No. 1:17-cv-1907
  (D.D.C. Sept. 18, 2017), ECF. No. 1............................21

Complaint, *New York v. Trump*, No. 1:17-cv-5228
  (E.D.N.Y. Sept. 6, 2017), ECF. No. 1 ..................21, 22

Complaint, *Regents of Univ. of Cal. v. U.S. Dep't
  of Homeland Sec.*, No. 3:17-cv-5211 (N.D. Cal.
  Sept. 8, 2017), ECF No. 1 ......................................17, 18

Complaint, *Trs. of Princeton Univ. v. United
  States*, No. 1:17-cv-2325 (D.D.C. Nov. 3, 2017),
  ECF No. 1 ..................................................................21

H.R. Rep. No. 99-682(I) (1986), *reprinted in* 1986
  U.S.C.C.A.N.................................................................14

Oral Arg. Recording, *Texas v. United States*, 787
  F.3d 733 (5th Cir. 2015) (No. 15-40238) ....................12

Pls.' Stip. of Voluntary Dismissal, *Texas v. United
  States*, No. 1:14-cv-00254 (S.D. Tex. Sept. 12,
  2017), ECF No. 473........................................................2

## INTEREST OF AMICI CURIAE

Amici curiae are the States of Texas, Alabama, Arizona, Arkansas, Florida, Kansas, Louisiana, Nebraska, South Carolina, South Dakota, and West Virginia, Phil Bryant, Governor of Mississippi, and Paul R. LePage, Governor of Maine.[1]

Plaintiffs' goal in these lawsuits is to force the federal Executive Branch into retaining a "deferred action" program (DACA) that does much more than simply exercise enforcement discretion by deferring deportation proceedings. DACA affirmatively confers "lawful presence" status and work-authorization eligibility on over half a million aliens. DACA is thus materially identical to two programs (Expanded DACA and DAPA) that were invalidated by the Fifth Circuit in a ruling affirmed by an equally divided vote of this Court. *See Texas v. United States*, 809 F.3d 134, 172, 184-86 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (per curiam).

Texas led the group of States successfully challenging Expanded DACA and DAPA. Texas then led the group of States notifying the federal government that they would challenge DACA on the same grounds if

---

[1] No counsel for any party authored this brief, in whole or in part. No person or entity other than amici contributed monetarily to its preparation or submission. The parties received timely notice of filing, and consents are on file with the Court. *See* Sup. Ct. R. 37.

(1)

2

DACA was not wound down. A.R. 238-40.[2] And it was because of the Executive's September 2017 DACA-wind-down memorandum that Texas and other States agreed to dismiss their pending lawsuit. Pls.' Stip. of Voluntary Dismissal at 1, *Texas v. United States*, No. 1:14-cv-00254 (S.D. Tex. Sept. 12, 2017), ECF No. 473.

---

[2] A.R. cites the Administrative Record, filed as Notice of Filing Administrative Record, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211 (N.D. Cal. Oct. 6, 2017), ECF No. 64-1.

3

## SUMMARY OF ARGUMENT

This Court's review of the second question presented is needed now to settle a pressing separation-of-powers dispute: whether the federal Executive Branch can unilaterally grant lawful-presence status and work-authorization eligibility to over half a million aliens otherwise unlawfully present and lacking work authorization. The Court already granted review on this question in *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam) (affirming the Fifth Circuit's decision by an equally divided vote).

This separation-of-powers question continues to be of national importance. It will control several pending lawsuits arguing that the Executive may not wind down the prior presidential administration's controversial DACA program, which was created by executive order. This litigation is already occasioning unwarranted and intrusive discovery requests. *See In re United States*, 138 S. Ct. 371 (2017) (granting mandamus blocking unwarranted discovery in the cases below). And the injunction below impairs the core objective of the challenged memorandum—to obviate further litigation on DACA's legality. Indeed, if the injunction is maintained through June 2018, amici States will be forced to consider filing a lawsuit challenging the original 2012 memorandum creating DACA.

Furthermore, this Court's review of whether DACA validly exercises unilateral executive power is also presented and warranted in Arizona's pending certiorari petition in *Brewer v. Arizona Dream Act Coalition*, No. 16-1180. There, multiple amici States have urged the Court to grant review, and the Court has called for the

4

views of the U.S. Solicitor General. The Court therefore may wish to consider both the instant certiorari petition and the *Brewer* petition at the same time.

The Executive has now decided to wind down DACA after a new administration reexamined the legal issues and concluded that DACA would likely be held unlawful. A.R. 254-55. That decision easily clears Administrative Procedure Act review. Nobody argues that anything in the Immigration and Nationality Act (INA) or any other federal law *requires* DACA. So one cannot maintain, as the district court held, that the challenged action of cancelling DACA is itself "not in accordance with law." 5 U.S.C. § 706(2)(A). The APA would be unrecognizable and would violate the Take Care Clause as applied if, as the district court believed, one judge's subsequent views on a debated legal question forecloses the Executive from acting to rescind a controversial policy that is not required by any law and that the Executive finds unconstitutional.

Nor does the Executive act arbitrarily or capriciously by rescinding a prior administration's policy that is not required by law and is subject to a credible legal challenge. If a legal challenge presents a good-faith basis for questioning a prior administration's legal judgment for a policy originally justified as an exercise of discretion, then withdrawing the challenged policy cannot possibly be "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). That principle applies here. At a minimum, there is room for reasonable disagreement on the legality of DACA. That is shown by the success of the challenges brought by Texas and other States to Expanded DACA and DAPA. After this divided Court affirmed the Fifth Circuit's decision agreeing with those chal-

5

lenges, Texas then explained, in publicly available documents, how DACA is unlawful on the same grounds.

In all events, DACA is unlawful for the same reasons that Expanded DACA and DAPA were held unlawful in the previous *Texas* litigation. *See* 809 F.3d at 172, 184-86. In fact, plaintiffs' own pleadings here confirm that DACA was unlawful to begin with because it altered substantive rights yet was issued without the required APA notice-and-comment procedure. The Executive cannot be ordered to maintain such an unlawful program. Thus, even on plaintiffs' view of notice-and-comment requirements, the district court's injunction forcing the Executive Branch to continue with DACA cannot be justified.

The district court was, however, correct that the Executive Branch's decision to wind down DACA is reviewable under the APA. Because the creation of DACA is reviewable agency action—not mere prosecutorial-discretion inaction—cancelling that benefits-granting program is likewise more than mere inaction. In each case, the Executive took action that provides a focus for judicial review. Thus, the Court should reject plaintiffs' APA challenge on the merits—but not on reviewability grounds.

The Court should grant the petition for certiorari before judgment and reverse the district court's order enjoining the Executive from implementing its decision to wind down DACA.

6

**ARGUMENT**

I. **DACA's Wind-down Satisfies Administrative Procedure Act Review (Second Question Presented).**

A. **The district court misunderstood APA review.**

The district court concluded that "[t]he agency action was 'not in accordance with law' because it was based on the flawed legal premise that the agency lacked authority to implement DACA." Pet. App. 42a; *see also* Pet. App. 62a (concluding that acting on the Executive's changed view of its authority to create DACA was "arbitrary, capricious, and an abuse of discretion").

But a single judge's subsequent views on a debated legal question about a prior, unilateral executive action does not foreclose the Executive from rescinding that action in favor of an undisputedly lawful policy. The district court cited no authority supporting that view of the APA, which would violate the Executive's Take Care Clause responsibilities.

1. One initial point should be indisputable: Rescinding "deferred action"—however one may define that phrase—is not itself contrary to law. No provision of federal law *requires* DACA. The district court identified nothing in the INA that prohibits the Executive from deciding not to issue or renew deferred-action status. Even the Obama Administration's defense of DACA, Expanded DACA, and DAPA emphasized that their benefits could be *rescinded at any time*. *See, e.g.*, A.R. 16 (Office of Legal Counsel memorandum).

Of course, Texas maintained that these programs were still unlawful. But even the Obama Administration

7

agreed that *not* granting deferred action is not contrary to law. Hence, the district court erred in stating that "[t]he agency action" under review is itself "not in accordance with law." Pet. App. 42a.

2. Rather than reviewing whether the actual agency action under review accords with law, the district court undertook a different analysis. It reasoned that an agency action, even if itself not contrary to law, can be invalidated if the agency's action was prompted by a legal view with which a judge later disagrees, but which is the subject of reasonable debate and is the basis of a substantial dispute that the agency's lawful policy avoids. *See* Pet. App. 42a-43a. The district court failed to cite any decision supporting that remarkable conception of APA review.

*Massachusetts v. EPA*, 549 U.S. 497 (2007), provides no support for the district court's view of APA review. *Cf.* Pet. App. 42a. Unlike in *Massachusetts*, no one takes the position that federal law *requires* the agency to have or maintain the policy at issue here (DACA). Pet. 32; *see Massachusetts*, 549 U.S. at 533 (holding that the agency "refused to comply" with a "statutory command"). Moreover, in *Massachusetts*, the statutory text was "unambiguous" and "clear" as to the agency's duty. 549 U.S. at 528, 531. In contrast, DHS certainly did not have "unambiguous" statutory authority to create DACA. *See, e.g.*, Pet. 27, 28. At a minimum, that question is subject to reasonable debate. *See infra* Part I.B.

The Ninth Circuit case cited by the district court also is not on point. *See* Pet. App. 42a. There, the Ninth Circuit simply reviewed state law where the *permissibility* of the agency action under review was justified

8

based on a certain conclusion of state law. *Safe Air for Everyone v. U.S. EPA*, 488 F.3d 1088, 1091 (9th Cir. 2007). The agency there was not avoiding challenges to the legality of past policies by taking an undisputedly lawful approach going forward.

The existence of credible questions about agency authority to take prior unilateral action that is undisputedly not *required* by law allows the agency to avoid litigation about that prior action by rescinding it. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agency need not meet higher standard for rescinding an existing rule than is required to adopt the rule in the first place). The district court failed to cite any decision applying the APA's "not in accordance with law" standard to block such agency action.

Applying the APA in that manner would intrude on the President's independent Article II obligation to ensure "that the Laws be faithfully executed." U.S. Const. art. II § 3; *see Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011) ("The legislative and executive departments of the Federal Government, no less than the judicial department, have a duty to defend the Constitution."); *Freytag v. Comm'r*, 501 U.S. 868, 906 (1991) (Scalia, J., concurring) (noting the President's power of constitutional review in making enforcement decisions). When the Executive determines that a prior unilateral executive action is unconstitutional and discontinues it, judicial review under the APA should be limited to whether the law affirmatively requires the prior action to be maintained. And here, nothing in the INA or other federal law requires a program like DACA.

9

## B. Texas's threatened litigation against DACA raised compelling legal arguments rooted in precedent, providing a non-arbitrary basis for the Executive to wind down DACA.

1.   An agency does not act arbitrarily or contrary to law by rescinding a prior policy of dubious validity that is challenged in litigation, when no law affirmatively mandates the continued existence of that prior policy. This is especially true here where the Executive tried to justify that prior policy as merely an exercise of executive discretion. A non-arbitrary basis for the Executive Branch's decision to wind down DACA is manifest: The State of Texas made clear, in a publicly available letter, that it would sue to challenge DACA if the Executive Branch did not wind it down.

On June 29, 2017, the Texas Attorney General, nine other State Attorneys General, and one Governor sent a letter to the federal Executive Branch proposing a DACA wind-down as a way to end the States' existing *Texas* litigation challenging the Executive's ability to unilaterally confer lawful presence and work authorization. That letter is in the administrative record. A.R. 238-40.

On the same day that the Texas Attorney General sent the letter, he issued a press release that made the letter public.[3] It explained:

---

[3] *AG Paxton Leads 10-State Coalition Urging Trump Administration to Phase Out Unlawful Obama-Era DACA Program*, https://www.texasattorneygeneral.gov/news/releases/ag-paxton-leads-10-state-coalition-urging-trump-administration-to-phase-out (June 29, 2017).

10

In a letter sent today to the U.S. Attorney General, Texas Attorney General Ken Paxton, nine other state attorneys general and the governor of Idaho urged the Trump Administration to phase out the unlawful Obama-era Deferred Action for Childhood Arrival (DACA) program, which confers lawful presence and work permits for nearly one million unlawfully present aliens in the U.S.

. . . .

Attorney General Paxton and the coalition promised to voluntarily dismiss their lawsuit challenging unlawful deferred-action programs currently pending in district court if the Trump Administration agrees by September 5 to rescind DACA and not renew or issue any new DACA permits in the future.

The letter itself made crystal clear why DACA was unlawful:

As you know, this November 20, 2014 memorandum creating DAPA and Expanded DACA would have granted eligibility for lawful presence and work authorization to over four million unlawfully present aliens. Courts blocked DAPA and Expanded DACA from going into effect, holding that the Executive Branch does not have the unilateral power to confer lawful presence and work authorization on unlawfully present aliens simply because the Executive chooses not to remove them. Rather, "[i]n specific and detailed provisions, the [Immigration and Nationality Act] expressly and

11

carefully provides legal designations allowing defined classes of aliens to be lawfully present." *Texas v. United States*, 809 F.3d 134, 179 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (per curiam). "Entirely absent from those specific classes is the group of 4.3 million illegal aliens who would be eligible for lawful presence under DAPA." *Id.* Likewise, "[t]he INA also specifies classes of aliens eligible and ineligible for work authorization . . . with no mention of the class of persons whom DAPA would make eligible for work authorization." *Id.* at 180-81. Thus, "DAPA is not authorized by statute," *id.* at 184, and "DAPA is foreclosed by Congress's careful plan," *id.* at 186.

For these same reasons that DAPA and Expanded DACA's unilateral Executive Branch conferral of eligibility for lawful presence and work authorization was unlawful, the original June 15, 2012 DACA memorandum is also unlawful. The original 2012 DACA program covers over one million otherwise unlawfully present aliens. *Id.* at 147. And just like DAPA, DACA unilaterally confers eligibility for work authorization, *id.*, and lawful presence without any statutory authorization from Congress.

A.R. 238-39.

This letter thus (1) threatened litigation over DACA and (2) gave a substantive explanation providing legal arguments, based on precedent, as to why DACA was unlawful. Even if this letter were the *only* cited reason for the Executive's challenged action here, it would

12

provide a non-arbitrary, non-capricious, and perfectly valid basis for the federal Executive Branch's decision to wind down DACA.

2. Texas has consistently, clearly, and publicly explained for years how DACA is unlawful. The June 2017 letter's explanation of DACA's illegality was based on Texas's victory, leading a 26-State coalition, in challenging the materially identical Expanded DACA and DAPA programs. *See, e.g.*, *Texas*, 809 F.3d at 174 n.139 ("DACA is an apt comparator to DAPA."). In that litigation, as early as April 2015, counsel of record told the Fifth Circuit that DACA was required to go through APA notice-and-comment procedure. Oral Arg. at 1:16:01-10, *Texas v. United States*, 787 F.3d 733 (5th Cir. 2015) (No. 15-40238), http://www.ca5.uscourts.gov /OralArgRecordings/15/15-40238_4-17-2015.mp3 (stay proceedings).

Even more recently, Texas filed a brief for a 13-State coalition urging the Court to grant certiorari in *Brewer v. Arizona Dream Act Coalition*, No. 16-1180. *See* Br. for the States of Texas et al., *Brewer*, *supra* (May 1, 2017) ("Texas *Brewer* Br."), https://perma.cc/ 4SYG-3EX7. Those amici States explicitly maintained that DACA was unlawful—based on the same substantive and procedural arguments successfully made by the 26-State coalition in the *Texas* litigation regarding Expanded DACA and DAPA. *See* Br. for the State Respondents at 44-70, *United States v. Texas*, 136 S. Ct. 2271 (2016) (No. 15-674), 2016 WL 1213267 ("Texas DAPA Br.").

The *Brewer* amici States pointed out that DACA is unlawful because "Deferred action under DACA is much more than just a decision not to pursue removal of

13

the alien." Texas *Brewer* Br. at 3. First, the Executive deems deferred action under DACA to confer "lawful presence." *Id.* Conferring that legal status is more than mere inaction. As the States highlighted, Congress used the status of "lawful presence" (or "unlawful presence") as the predicate for numerous consequences, such as removability, *id.* at 9; a 3-year or 10-year reentry bar, *id.* at 10-11; eligibility for "advance parole," *id.* at 11; and eligibility for numerous federal benefits, *id.* at 12-13. Those consequences turn on the "lawful presence" status conferred unilaterally by the Executive under DACA (and DAPA).

Yet, rather than leaving it to the Executive to determine when aliens may be lawfully present in the country, Congress delineated over 40 classes of lawfully present aliens and created other specific, statutorily-defined avenues for aliens to obtain lawful presence— none of which apply here. *Id.* at 8-9. Congress's exercise of that power reflects that policies pertaining to aliens' right to remain in this country are "entrusted exclusively to Congress," not the Executive. *Id.* at 7 (quoting *Arizona v. United States*, 567 U.S. 387, 409 (2012)). As the States explained:

> The Executive has no power to unilaterally "create immigration classifications" that authorize aliens' presence in this country because "the INA expressly and carefully provides legal designations allowing defined classes of aliens to be lawfully present," *Texas*, 809 F.3d at 179. DACA violates the INA just like the materially identical DAPA program.

*Id.* (citation omitted).

14

Similarly, the States explained that DACA violated statutes governing which aliens are authorized to work in this country:

> [W]hen Congress wanted to provide work-authorization eligibility to four narrow classes of deferred-action recipients, it did so by statute. Otherwise, the 1986 IRCA "prohibit[s] the employment of aliens who are unauthorized to work in the United States because they either *entered the country illegally*, or are in an immigration status which does not permit employment." H.R. Rep. No. 99-682(I), at 46, 51-52 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5650, 5655-56 (emphasis added).

*Id.* at 15-16 (footnote omitted). And the States surveyed various historical practices, explaining how they could not support DACA's unilateral conferral of lawful presence and work authorization. *Id.* at 18-20.

At the very least, this substantial analysis created good-faith, legitimate grounds to doubt that DACA was lawful. That conclusion made it entirely proper for the Executive to conclude that "it is likely that potentially imminent litigation would yield similar results with respect to DACA" as with respect to Expanded DACA and DAPA, which had already been enjoined. A.R. 254.

Even the district court below conceded that Expanded DACA modified the original DACA program in only three "minor ways." Pet. App. 14a. Yet the district court's conclusion that "the DAPA litigation [in the Fifth Circuit] was not a death knell for DACA," Pet. App. 54a, ignored that the Fifth Circuit affirmed the injunction of, not just DAPA, but also of Expanded

15

DACA. *See Texas*, 809 F.3d at 147 n.11 (Fifth Circuit's notation that its opinion uses "DAPA" to include Expanded DACA). Thus, the unrebutted consequence of the district court's own observation—that Expanded DACA is substantially identical to DACA—is that the Fifth Circuit's basis for affirming the injunction of the former applies to both programs.

The Executive's decision to wind down DACA rested on an entirely non-arbitrary judgment about the likely fate of DACA in litigation. Avoiding litigation by rescinding a prior executive policy that is not required by law cannot be blocked as agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### C.  DACA is unlawful.

In all events, DACA is unlawful in the first place. The scant grounds on which the district court relied to conclude that DACA is lawful do not withstand scrutiny.

### 1.  DACA is substantively unlawful.

As explained above, DACA is substantively unlawful for the same reasons that the Fifth Circuit held Expanded DACA and DAPA unlawful. *See supra* Part I.B. The district court's claim of purported differences that can save DACA is mistaken. Pet. App. 50a-54a.

First, the district court relied on the fact that DACA applies to a smaller number of aliens than DAPA. Pet. App. 54a. But DAPA and DACA's unlawfulness turns on those programs unilaterally conferring lawful presence and access to work authorization—not on their comparative size. *Texas*, 809 F.3d at 178-86. Moreover, even were it relevant, DACA and DAPA

16

both far exceed the size of any prior deferred-action program. *See* Texas DAPA Br. 53-59.

The district court also observed that Congress has provided a (demanding) path to lawful presence for some aliens covered by DAPA, while not providing any path at all for the aliens covered by DACA. Pet. App. 54a. But that only undermines the district court's position. It means that DACA has even fewer arguments to support it than did DAPA. *See* Josh Blackman, *The Constitutionality of DAPA Part I: Congressional Acquiescence to Deferred Action*, 103 Geo. L.J. Online 96, 116 (2015). Whereas past instances of deferred action had been defended on the ground that they were stop-gap measures to ultimate lawful status theoretically obtainable under existing law, *see Texas*, 809 F.3d at 184-85 & n.197, the district court's own findings show that DACA cannot possibly be defended on that basis. DACA clearly flouts Congress's detailed scheme for conferring lawful presence.

### 2. DACA is procedurally unlawful, as confirmed by plaintiffs' own pleadings.

Plaintiffs' own pleadings in this litigation confirm that DACA is also procedurally unlawful (even assuming *arguendo* executive power to create it) because DACA was a substantive rule that had to go through APA notice-and-comment procedure.

Nobody has disputed that DACA is a "rule" for APA purposes. 5 U.S.C. § 551(4). Accordingly, DACA had to be issued through notice-and-comment procedure if it was a substantive rule rather than a mere "'general statement[] of policy.'" *Texas*, 809 F.3d at 171 (alteration in original). The key distinction between pol-

17

icy statements and substantive rules is that policy statements cannot be "binding." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979); *accord Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) ("We thus have said that policy statements are binding on neither the public . . . nor the agency."); *see* Texas DAPA Br. at 61-62.

A rule is binding if it creates or modifies "rights and obligations." *E.g.*, *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995), *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1320 (D.C. Cir. 1988). In *Morton v. Ruiz*, 415 U.S. 199 (1974), this Court held that a vastly more modest rule concerning benefits eligibility "affect[ed] individual rights and obligations" and therefore had to be treated as a substantive rule. *Id.* at 232. The same is true of DACA, under plaintiffs' own pleadings.

a.   This case involves orders entered in five consolidated actions and, therefore, multiple plaintiffs. *See* Pet. App. 19a. The University of California plaintiffs here contend that the DACA-wind-down memorandum "constitutes a substantive rule subject to APA's notice-and-comment requirements." Complaint at 14, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-5211 (N.D. Cal. Sept. 8, 2017), ECF No. 1.

But that could be true only if the creation of DACA was itself a substantive rule—one "affecting individual rights and obligations." *Ruiz*, 415 U.S. at 232. After all, if DACA were not a substantive rule that changed the rights of recipients, then winding down this program also could not be a substantive rule changing rights. Plaintiffs, however, allege that DACA is just such a

18

substantive rule. First, plaintiffs admit that DACA pur-
ports to unilaterally confer lawful presence:

> Individuals with DACA status were "not con-
> sidered to be unlawfully present during the pe-
> riod in which deferred action [was] in effect."
> USCIS FAQs.

Complaint at 8, *Regents of Univ. of Cal.*, No. 3:17-cv-
5211, ECF No. 1. And plaintiffs admit that aliens with
DACA status would not have been able—but for
DACA—to lawfully "obtain jobs and access to certain
Social Security and Medicare benefits." *Id.* at 2. The
necessary implication of those pleadings is that DACA
was unlawful the entire time, as it issued without re-
quired APA notice-and-comment procedure.

Plaintiffs point to no requirement that the govern-
ment must use notice-and-comment procedure to re-
scind a policy whose issuance needed but did not receive
that procedure. If the APA somehow required the fed-
eral Executive Branch to continue enforcing an unlaw-
ful policy while notice-and-comment procedure was
used for the first time to rescind the policy, then the
APA would be unconstitutional as applied to that unlaw-
ful policy.

b.  The State of California plaintiffs here likewise
essentially plead that DACA's attributes meet the test
for a substantive rule requiring APA notice-and-
comment procedure. For instance, these plaintiffs plead
that "DACA Provides Numerous Benefits," which are
described in detail:

19

82. DACA grantees are provided with numerous *benefits*. Most importantly, they are granted the *right* not to be arrested or detained based solely on their immigration status during the designated period of their deferred action.

83. DACA grantees are granted eligibility to receive *employment authorization*.

84. DACA also opened the door to *allow travel* for DACA grantees. For example, DACA grantees were allowed to briefly depart the U.S. and legally return under certain circumstances, such as to visit an ailing relative, attend funeral services for a family member, seek medical treatment, or further educational or employment purposes. Travel for vacation is not permitted.

85. Unlike other undocumented immigrants, DACA grantees are not disqualified on the basis of their immigration status from receiving certain public benefits. These include *federal Social Security, retirement, and disability benefits. See* 8 U.S.C. §§ 1611(b)(2)-(3), 1621(d). As a result, and in reliance on DHS's oft-stated position that DACA and similar programs are a lawful exercise of the agency's authority, Plaintiff States have structured some schemes around DACA which allow, for example, applicants to demonstrate eligibility for state programs by producing documentation that they have been approved under DACA. The rescission of DACA undermines such regulatory frameworks.

20

86. DACA grantees are able to secure equal access to other *benefits* and opportunities on which Americans depend, including opening bank accounts, obtaining credit cards, starting businesses, purchasing homes and cars, and conducting other aspects of daily life that are otherwise often unavailable for undocumented immigrants.

Complaint at 17-18, *California v. Dep't of Homeland Sec.*, No. 3:17-cv-5235 (N.D. Cal. Sept. 11, 2017), ECF No. 1 (emphases added; citations omitted). The *Garcia* plaintiffs here admit the same thing. Complaint at 9 ¶ 27, *Garcia v. United States*, No. 3:17-cv-5380 (N.D. Cal. Sept. 18, 2017), ECF No. 1 ("DACA *confers* numerous important *benefits* on those who apply for and are granted DACA status.") (emphases added).

Furthermore, the *California* plaintiffs state that the APA does not allow policies to remain in effect when they are "predicated on an incorrect legal premise." Complaint at 22 ¶ 106, *California*, No. 3:17-cv-5235, ECF No. 1. In other words, these plaintiffs agree that the APA does not allow *ultra vires* actions. Since DACA is *ultra vires* action even on plaintiffs' view—because it issued without notice-and-comment procedure—plaintiffs cannot obtain the relief they seek of DACA's continued operation.

21

c.   In addition to the five challenges pending in the Northern District of California, at least four other pending lawsuits challenge the DACA-wind-down memorandum. Complaint, *Trs. of Princeton Univ. v. United States*, No. 1:17-cv-2325 (D.D.C. Nov. 3, 2017), ECF No. 1; Complaint, *NAACP v. Trump*, No. 1:17-cv-1907 (D.D.C. Sept. 18, 2017), ECF No. 1; 3d Am. Complaint, *Batalla Vidal v. Nielsen*, No. 1:16-cv-4756 (E.D.N.Y. Dec. 11, 2017), ECF No. 113; Complaint, *New York v. Trump*, No. 1:17-cv-5228 (E.D.N.Y. Sept. 6, 2017), ECF. No. 1. Plaintiffs in those cases similarly have pleaded, in substance, that DACA was unlawful from the outset because it confers substantive rights yet was issued without notice-and-comment procedure.

Plaintiffs in the *New York* lawsuit plead that DACA affirmatively confers benefits—that is, that DACA alters substantive rights:

> [¶] 218. DACA *confers* numerous *benefits* on DACA grantees. Notably, DACA grantees are *granted the right* not to be arrested or detained based solely on their immigration status during the time period their deferred action is in effect.
>
> . . . .
>
> [¶] 220. DACA grantees are eligible to receive certain *public benefits*. These include *Social Security, retirement, and disability benefits*, and, in certain states, benefits such as driver's licenses or unemployment insurance. *See* 8 U.S.C. §§ 1611(b)(2)-(3), 1621(d). In the State of Washington, DACA holders also are eligible for certain state financial aid programs

22

> and state-funded food assistance. In the State
> of New York, DACA holders are eligible for
> teaching and nursing licenses.

Complaint at 41, *New York*, No. 1:17-cv-5228, ECF No. 1 (emphases added; citations omitted).

Accordingly, these plaintiffs essentially admit that DACA needed to go through APA notice-and-comment procedure because it was a substantive rule modifying rights:

> [¶] 289. In implementing the DHS Memorandum, federal agencies have changed the *substantive criteria* by which individual DACA grantees *work, live, attend school, obtain credit, and travel* in the United States. Federal agencies did not follow the procedures required by the APA before taking action impacting these *substantive rights*.

*Id.* at 54.

If DACA's rescission "affect[ed] individual rights and obligations," *Ruiz*, 415 U.S. at 232, as these plaintiffs agree, then DACA's creation did so too and was thus unlawful all along. DACA therefore cannot be enforced now, so plaintiffs cannot obtain the relief they seek.

23

## II. The District Court Was Correct that the DACA-Wind-down Memorandum Is Reviewable Agency Action (First Question Presented).

On the first question presented, the district court was right that the Executive's decisions to create and, later, to wind down DACA are reviewable agency actions under the APA. Amici States disagree with the Executive's unreviewability argument under 5 U.S.C. § 701(a)(2). *See* Pet. 16-24. This is essentially the same unreviewability argument that the Executive raised, and lost, in the *Texas* litigation. *See Texas*, 809 F.3d at 163-70; Texas DAPA Br. at 38-44.

The APA contains a limited exception barring judicial review when an agency decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This exception is "very narrow." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). There is a "strong presumption favoring judicial review of administrative action." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015) (quotation marks omitted).

Unreviewability under *Heckler* applies only to "an agency's refusal to take . . . action," such as "an agency's decision not to take enforcement action." 470 U.S. at 831, 832. *Heckler* thus held that a plaintiff could not use the APA to force the Food and Drug Administration to take enforcement actions related to lethal-injection drugs. *Id.* at 827. In contrast, "when an agency *does* act," the "action itself provides a focus for judicial review" and "can be reviewed to determine whether the agency exceeded its statutory powers." *Id.* at 832.

24

Here, the Executive did not violate the law in acting to wind down DACA. *See supra* Part I.A. Plaintiffs' underlying claims are therefore meritless.

But the district court was correct that the Executive's memorandum winding down DACA is reviewable under the APA. The Executive here essentially re-raises the same unreviewability argument that it made and lost in the *Texas* litigation regarding Expanded DACA and DAPA. Namely, the Executive asserts that these programs are merely prosecutorial discretion, unreviewable under *Heckler*. *See, e.g.*, Pet. 17 (characterizing DACA as a mere "policy of civil non-enforcement" committed to the Executive's discretion).

That argument is incorrect, as the Fifth Circuit held when addressing it in *Texas*. 809 F.3d at 169 (holding that Expanded DACA and DAPA do not qualify for the "committed to agency discretion by law" exception to reviewability). DACA is not merely an exercise of prosecutorial discretion. DACA creates a massive bureaucracy to grant applicants a host of benefits—including lawful presence, related benefits eligibility, and work authorization. *See id.* at 184 ("The INA flatly does not permit the [Executive to deem] aliens as lawfully present and thereby make them newly eligible for a host of federal and state benefits.").

The Executive's certiorari petition elsewhere admits that DACA "confer[s] on [aliens] affirmative benefits (including work authorization)." Pet. 12. Likewise, the Executive previously acknowledged that DACA "deferred action status" is a "lawful status." Br. for the United States as Amicus Curiae in Opp. to Reh'g En Banc at 16, *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) (No. 13-16248), ECF No. 75. And

25

the Executive's own benefits regulations establish a "deferred action status." 8 C.F.R. § 1.3(a)(4)(vi); 45 C.F.R. § 152.2(4)(vi).

Creating a program conferring a legal status with numerous benefits and work authorization is affirmative governmental action and does not qualify for the narrow *Heckler* reviewability exception, as the Fifth Circuit correctly held. As counsel for the Executive conceded in district court in *Texas* with respect to DAPA, such a program "'works in a way that's different than . . . prosecutorial discretion' because it grants inducements 'for people to come out and identify themselves.'" Texas DAPA Br. 39 (quoting government counsel's statement reproduced at page 716 of the joint appendix there).

The Executive does not dispute that reviewability here rises or falls on the same basis as the reviewability of the memoranda creating DACA and DAPA. *See* Pet. 17 ("Like the decision to *adopt* a policy of selective non-enforcement, the decision to *retain* such a policy [is unreviewable]."). Because the directive creating DACA is reviewable, so is the directive rescinding it. In both cases, the Executive's memorandum creating or rescinding the program provides a "focus for judicial review." *Heckler*, 470 U.S. at 832.

Amici explain their position on this reviewability question because it matters to APA jurisprudence more broadly. The district court should not be reversed on the basis that the DACA-wind-down memorandum is unreviewable under the APA (first question presented). Rather, the district court should be reversed because the DACA-wind-down memorandum is not arbitrary,

26

capricious, or otherwise contrary to law (second question presented).

### III. The Decision Below Warrants Certiorari Before Judgment.

The Court should grant certiorari before judgment. Without this Court's prompt intervention, the district court's injunction could last for over a year—frustrating the very purpose of the Executive's decision to promptly terminate disputes about the legality of a controversial past policy.

Indeed, if the litigation challenging the DACA-wind-down memorandum persists through June of this year, Texas will be forced to consider whether to file suit challenging the June 15, 2012 memorandum *creating* DACA and its continued implementation. Texas will be forced to consider bringing that challenge by June 15, 2018, in order to avoid issues about possible application of the six-year statute of limitations in 28 U.S.C. § 2401(a). *See Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997). That will only further multiply the present burdens to the courts from the existing litigation and could result in an injunction abruptly ending DACA, rather than winding it down as directed by the Executive in the memorandum challenged here.

Review of DACA's legality is also presented and warranted in Arizona's pending certiorari petition in *Brewer v. Arizona Dream Act Coalition*, No. 16-1180, which is ripe for the Court's review. *See* Texas *Brewer* Br. at 1-26. Accordingly, the Court may wish to consider both the instant certiorari petition and the *Brewer* petition at the same time.

27

## CONCLUSION

The petition for a writ of certiorari before judgment should be granted.

Respectfully submitted.

STEVE MARSHALL
Attorney General of
   Alabama

MARK BRNOVICH
Attorney General of
   Arizona

LESLIE RUTLEDGE
Attorney General of
   Arkansas

PAMELA JO BONDI
Attorney General of
   Florida

DEREK SCHMIDT
Attorney General of
   Kansas

JEFF LANDRY
Attorney General of
   Louisiana

BRENT DAVIS
Chief Counsel to the
   Governor of Maine

KEN PAXTON
Attorney General of
   Texas

JEFFREY C. MATEER
First Assistant
   Attorney General

SCOTT A. KELLER
Solicitor General
   *Counsel of Record*

J. CAMPBELL BARKER
Deputy Solicitor General

ARI CUENIN
JOHN C. SULLIVAN
Assistant Solicitors General

OFFICE OF THE
   ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
scott.keller@oag.texas.gov
(512) 936-1700

28

PHIL BRYANT
Governor of
   Mississippi

DOUG PETERSON
Attorney General of
   Nebraska

ALAN WILSON
Attorney General of
   South Carolina

MARTY J. JACKLEY
Attorney General of
   South Dakota

PATRICK MORRISEY
Attorney General of
   West Virginia

JANUARY 2018