# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS,
### BROWNSVILLE DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) Case No. 1:18-cv-0068-ASH |
| Defendants, | ) |
| KARLA PEREZ, *et al.*, | ) |
| Defendants-Intervenors, | ) |
| and | ) |
| STATE OF NEW JERSEY, | ) |
| Movant. | ) |

**Memorandum of Law of Congressmen Steve King, Andy Biggs, Louie Gohmert, Paul A. Gosar, Thomas Massie, and Ralph Norman as *Amici Curiae* in Support of Plaintiffs' Motion for a Preliminary Injunction**

Christopher J. Hajec
Director of Litigation
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
D.C. Bar No. 464777 (admitted *pro hac vice*)
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Andrew L. Schlafly
   Attorney in Charge
New Jersey Bar No. 04066-2003
Southern District of Texas No. NJ04066
939 Old Chester Rd.
Far Hills, NJ 07931
Phone: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

*Counsel for Amici Curiae*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................. ii

Introduction .............................................................................................................1

Standard of Review .................................................................................................2

I.  This Court has jurisdiction over the States' claims. ........................................2

    A.  The States have standing. ..........................................................................2

    B.  DACA is reviewable agency action. ..........................................................3

II.  The States are likely to prevail on the merits. ...............................................5

    A.  DACA's promulgation violated the APA ....................................................5

    B.  DACA is invalid under federal immigration law. ......................................7

        1.  DACA short-circuits mandatory removal proceedings. .......................7

        2.  DACA is an invalid form of deferred action. ......................................8

        3.  8 U.S.C. §1324a(h)(3) does not authorize DACA. ............................10

        4.  8 U.S.C. §1103(a)(3) does not authorize DACA. .............................11

        5.  6 U.S.C. §202(5) does not authorize DACA. ....................................12

        6.  Prior deferral actions do not establish legislative-ratification. ........13

    C.  DACA violates the Executive's obligations under the Take Care Clause. ...................14

III.  The remaining *Winter* criteria favor the States. ..........................................15

    A.  The States are likely to suffer irreparable harm without preliminary relief. ........................................................................................................15

    B.  The balance of equities tips in the States' favor. .....................................16

        1.  Vis-à-vis the federal defendants, the equities favor the States. .......16

        2.  Vis-à-vis the defendants-intervenors, the equities favor the States .......16

    C.  An injunction is in the public interest. .....................................................19

Conclusion .............................................................................................................20

## **TABLE OF AUTHORITIES**

### **CASES**

*Alexander v. Cockrell*,
   294 F.3d 626 (5th Cir. 2002)..............................................................................17

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ............................................................................... 16-17

*Am. Elec. Power Co. v. Connecticut*,
   564 U.S. 410 (2011) ..........................................................................................20

*Anderson v. Davila*,
   125 F.3d 148 (3d Cir. 1997)..............................................................................16

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   133 S.Ct. 2247 (2013) .......................................................................................11

*Arizona v. United States*,
   567 U.S. 387 (2012) ..........................................................................................10

*Avoyelles Sportsmen's League, Inc. v. Marsh*,
   715 F.2d 897 (5th Cir. 1983)........................................................................5, 7

*Bond v. United States*,
   564 U.S. 211 (2011) ............................................................................................3

*Cate v. Oldham*,
   707 F.2d 1176 (11th Cir. 1983)........................................................................16

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ............................................................................................15

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ........................................................................................5-6

*City of Los Angeles v. Adams*,
   556 F.2d 40 (D.C. Cir. 1977) ............................................................................8

*Cohens v. Virginia*,
   19 U.S. (6 Wheat.) 264 (1821) .......................................................................4-5

*Colorado River Water Conserv. Dist. v. United States*,
   424 U.S. 800 (1976) ............................................................................................5

*Corley v. United States*,
   556 U.S. 303 (2009) ............................................................................................3

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................................3

*Dickinson v. Zurko*,
   527 U.S. 150 (1999) ............................................................................................4

*Elrod v. Burns*,
   427 U.S. 347 (1976) .................................................................................... 15-16

*Fed'l Crop. Ins. Corp. v. Merrill*,
    332 U.S. 380 (1947) ..................................................................................18

*Ferguson v. FDIC*,
    164 F.3d 894 (5th Cir. 1999)....................................................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ..................................................................................17

*Guevara v. Holder*,
    649 F.3d 1086 (9th Cir. 2011)..................................................................10

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ....................................................................................4

*Hollingsworth v. Perry*,
    133 S.Ct. 2652 (2013) ..............................................................................17

*Hyder v. Keisler*,
    506 F.3d 388 (5th Cir. 2007)....................................................................20

*In re Campbell*,
    750 F.3d 523 (5th Cir. 2014)....................................................................19

*INS v. St. Cyr*,
    533 U. S. 289 (2001) ............................................................................18-19

*Int'l Union v. Brock*,
    477 U.S. 274 (1986) ....................................................................................4

*Judulang v. Holder*,
    565 U.S. 42 (2011) ..............................................................................13, 18

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ..............................................................................2, 17

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) ....................................................................................4

*League of Women Voters of the United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) .....................................................................19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................2-3

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ....................................................................................4

*Lutwak v. United States*,
    344 U.S. 604 (1953) ....................................................................................9

*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987)....................................................................6

*Manhattan Gen. Equip. Co. v. Commissioner*,
    297 U.S. 129 (1936) ....................................................................................7

*Massachusetts v. EPA*,
    549 U.S 497 (2007) ............................................................................................8

*McLouth Steel Products Corp. v. Thomas*,
    838 F.2d 1317 (D.C. Cir. 1988) ......................................................................7

*Medellin v. Texas*,
    552 U.S. 491 (2008) ........................................................................................13

*Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise*,
    501 U.S. 252 (1991) ..........................................................................................3

*Mistretta v. United States*,
    488 U.S. 361 (1989) .....................................................................................3, 11

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ........................................................................................16

*Morton v. Ruiz*,
    415 U.S. 199 (1974) ..........................................................................................6

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*,
    463 U.S. 29 (1983) ..................................................................................... 18-20

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
    416 U.S. 267 (1974) ........................................................................................18

*North Am. Coal Corp. v. Director, Office of Workers' Compensation Programs, U.S.
    Dept. of Labor*, 854 F.2d 386 (10th Cir. 1988) ..............................................7

*Office of Personnel Mgmt. v. Richmond*,
    496 U.S. 414 (1990) .................................................................................. 17-18

*Pa. v. Mimms*,
    434 U.S. 106 (1977) ........................................................................................14

*Perez v. Mortg. Bankers Ass'n*,
    135 S.Ct. 1199 (2015) .....................................................................................20

*Regents of the Univ. of Cal. v. United States, Dep't of Homeland Sec.*,
    279 F.Supp.3d 1011 (N.D. Cal. 2018) ............................................. 1, 17, 19-20

*Shell Offshore Inc. v. Babbitt*,
    238 F.3d 622 (5th Cir. 2001) ............................................................................5

*Smiley v. Citibank (S.D.), N.A*,
    517 U.S. 735 (1996) ........................................................................................18

*State of Ohio Dep't of Human Serv. v. U.S. Dept. of Health & Human Serv., Health Care
    Financing Admin.*, 862 F.2d 1228 (6th Cir. 1988) .........................................7

*Succar v. Ashcroft*,
    394 F.3d 8 (1st Cir. 2005) .................................................................................8

*Sunbeam Prods., Inc. v. West Bend Co.*,
    123 F.3d 246 (5th Cir. 1997), *abrogated on other grounds by*
    *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) .....................19

*Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*,
    467 U.S. 883 (1984) ...........................................................................................11

*Taylor v. Resolution Trust Corp.*,
    56 F.3d 1497 (D.C. Cir. 1995) .........................................................................16

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
    135 S.Ct. 2507 (2015) .......................................................................................13

*Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*,
    201 F.3d 551 (5th Cir. 2001)...............................................................................5

*Texas v. United States*,
    86 F.Supp.3d 591 (S.D. Tex. 2015), *aff'd* 809 F.3d 134 (5th Cir.),
    *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016)...........................1, 9, 10

*Texas v. United States*,
    809 F.3d 134 (5th Cir.), *aff'd by an equally divided Court*,
    136 S.Ct. 2271 (2016)...........................................................................1, 5, 10, 19

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) .................................................................................... 14-15

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) ...................................................................................16, 20

*United States ex rel. King v. Solvay S.A.*,
    304 F.R.D. 507 (S.D. Tex. 2015) ....................................................................18

*United States v. Munoz-Flores*,
    495 U.S. 385 (1990) .............................................................................................3

*United States v. Pennsylvania Industrial Chemical Corp.*,
    411 U.S. 655 (1973) .................................................................................... 18-19

*United States v. Picciotto*,
    875 F.2d 345 (D.C. Cir. 1989) ...........................................................................6

*United States v. Texas*,
    136 S.Ct. 906 (2016) .........................................................................................14

*United States v. Windsor*,
    570 U.S. 744 (2013) .............................................................................................2

*Util. Air Regulatory Group v. EPA*,
    134 S.Ct. 2427 (2014) .......................................................................................14

*Warth v. Seldin*,
    422 U.S. 490 (1975) .........................................................................................16

*Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*,
    443 U.S. 658 (1979) .........................................................................................14

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) .........................................................................................11

*Winter v. Natural Resources Defense Council, Inc.,*
 555 U.S. 7 (2008) .................................................................................. 2, 15-16, 19

*Woodall v. Commissioner,*
 964 F.2d 361 (5th Cir. 1992) ................................................................................ 9

*Youngstown Sheet & Tube Co. v. Sawyer,*
 343 U.S. 579 (1952) ...................................................................................... 13, 15

## STATUTES

U.S. Const. art. II, §3 ....................................................................................... 1, 14, 19

U.S. Const. art. III ................................................................................................. 2-3

Administrative Procedure Act,
 5 U.S.C. §§551-706 ..................................................................... 1, 4-7, 17, 19-20

5 U.S.C. §553(b) ...................................................................................................... 15

5 U.S.C. §553(c) ...................................................................................................... 15

5 U.S.C. §559 ............................................................................................................ 4

5 U.S.C. §702 ............................................................................................................ 4

5 U.S.C. §706(2)(B) ............................................................................................... 4, 7

5 U.S.C. §706(2)(C) ............................................................................................... 4, 7

5 U.S.C. §706(2)(D) ............................................................................................... 4, 7

6 U.S.C. §202(5) ..................................................................................................... 12

Immigration and Naturalization Act,
 8 U.S.C. §§1101-1537 ............................................... 1, 4-5, 7, 9-10, 12, 14, 19

8 U.S.C. §1103(a)(3) ........................................................................................... 11-12

8 U.S.C. §1158(d)(5) ............................................................................................... 12

8 U.S.C. §1182(n) ................................................................................................... 11

8 U.S.C. §1184(g) ................................................................................................... 11

8 U.S.C. §1188 ....................................................................................................... 11

8 U.S.C. §1225(a)(1) ................................................................................................ 8

8 U.S.C. §1225(a)(3) ................................................................................................ 8

8 U.S.C. §1225(b)(2)(A) ........................................................................................... 8

8 U.S.C. §1228(a)(3) ............................................................................................... 12

8 U.S.C. §1229a .................................................................................................... 8, 12

8 U.S.C. §1324a(h)(3) .......................................................................................... 10-12

## RULES AND REGULATIONS

8 C.F.R. §274a.12(a)(1)-(16) .................................................................................... 6

8 C.F.R. §274a.12(c)(14) .................................................................................................6

Memorandum from Jeh Charles Johnson, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are Parents of U.S. Citizens or Permanent Residents* (Nov. 20, 2014) ................................................................. 8-9

Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012) ...............6, 9, 18

## LEGISLATIVE HISTORY

H.R. REP. NO. 104-725, at 383 (1996) ..................................................................9, 13

## OTHER AUTHORITIES

Michael X. Marinelli, *INS Enforcement of the Immigration Reform and Control Act of 1986: Employer Sanctions During the Citation Period*, 37 CATH. U. L.R. 829\ (1988) ......................................................... 9-10

WILLIAM SHAKESPEARE, MACBETH ..........................................................20

## **INTRODUCTION**

In this follow-on to *Texas v. United States*, 86 F.Supp.3d 591 (S.D. Tex. 2015), *aff'd* 809 F.3d 134 (5th Cir.), *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016) ("*Texas*"), several *Texas* state plaintiffs (collectively, the "States") sue the United States and officers of Immigration and Customs Enforcement ("ICE"), the Department of Homeland Security ("DHS"), and related federal agencies to overturn the Deferred Action for Childhood Arrivals program ("DACA"), adopted under the prior administration. *Texas* concerned both a DACA expansion and the related Deferred Action for Parents of Americans program ("DAPA"). Suing under the Administrative Procedure Act, 5 U.S.C. §§551-706 ("APA"), the Immigration and Naturalization Act, 8 U.S.C. §§1101-1537 ("INA"), and the Constitution's Take Care Clause, U.S. CONST. art. II, §3, the States allege that — as with DAPA and the DACA expansion in *Texas* — DACA's promulgation violated the APA, the INA, and the Take Care Clause both substantively and procedurally.

Acting on the *Texas* plaintiffs' stated intent to seek to expand *Texas* to enjoin DACA and on DACA's obvious invalidity under *Texas*, *see* Pls.' Mot. for Prelim. Inj. Exh. 4 (App. 14) (ECF #006), DHS rescinded DACA on September 5, 2017, with a six-month wind-down period to allow time for Congress to enact legislation, if it wished, to protect DACA recipients lawfully. *See id.* Exhs. 5-6 (App. 18, 27) (ECF #006). After Congress did not enact any such legislation in that interval, various plaintiffs sued essentially the same federal defendants to enjoin DACA's rescission. *See*, *e.g.*, *Regents of the Univ. of Cal. v. United States, Dep't of Homeland Sec.*, 279 F.Supp.3d 1011, 1031 (N.D. Cal. 2018); *NAACP v. Trump*, 2018 U.S. Dist. LEXIS 68589 (Apr. 24, 2018). The States filed this action on May 1, 2018, and moved for preliminary relief on May 2, 2018. Several individuals intervened as defendants, and New Jersey has moved to intervene. As set forth in the accompanying motion, *amici curiae* ("*Amici*") — listed in the Addendum — are Members of Congress, who as such have compelling interests in the issues raised here.

1

## STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

## I.   THIS COURT HAS JURISDICTION OVER THE STATES' CLAIMS.

Having already determined that the States asserted a justiciable claim against DAPA, courts in this Circuit should find that this action is justiciable under Circuit precedent. While agreeing with the States' showing on justiciability, *Amici* supplement that showing in several respects.

### A.   The States have standing.

Standing requires an "injury in fact," which is (1) an actual or imminent invasion of a constitutionally cognizable interest, (2) which is causally connected to the challenged conduct, and (3) which likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). In addition, standing doctrine also includes prudential elements, including the need for those seeking to assert absent third parties' rights to have their own Article III standing and a close relationship with the absent third parties. *Kowalski v. Tesmer*, 543 U.S. 125, 128-30 (2004). Although the plaintiff States have standing, it unclear why the intervenors have standing. *See* Section III.B.2, *infra*. Even if the intervenors lack standing, however, there remains an Article III case or controversy between the States and the federal defendants, given that other courts have enjoined the federal defendants' rescission of DACA. *See United States v. Windsor*, 570 U.S. 744, 755-63 (2013) (finding constitutional and prudential standing where Executive declined to defend federal law, but continued to enforce it through to final judgment). Regardless of whether the intervenors have standing, this Court has an Article III case or controversy.

Significantly, this litigation alleges procedural violations, *see* Section II.A, *infra*, which

lower the bar for Article III standing. "The history of liberty has largely been the history of observance of procedural safeguards," *Corley v. United States*, 556 U.S. 303, 321 (2009) (interior quotation marks omitted), and "'procedural rights' are special," *Defenders of Wildlife*, 504 U.S. at 572 n.7 (interior quotation marks omitted). For procedural injuries, Article III's redressability and immediacy requirements apply to the *present procedural violation* (which may someday injure a concrete interest) rather than to the concrete future injury. *Defenders of Wildlife*, 504 U.S. at 571-72 & n.7; *cf. DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 & n.5 (2006) ("once a litigant has standing to request invalidation of a particular [agency] action, [it] may do so by identifying all grounds on which the agency may have failed to comply with its statutory mandate"). Procedural-rights standing thus undercuts any claim that the States lack a sufficiently immediate injury.

The Constitution's separation of powers is not a mere technicality — it is an indispensable bulwark against executive tyranny. The Founders regarded the Constitution's "separation of governmental powers into three coordinate Branches [as] *essential* to the preservation of liberty." *Mistretta v. United States*, 488 U.S. 361, 380 (1989) (emphasis added). By decentralizing power among the three branches (and between the House and the Senate within the legislative branch), the Founders intended separation of powers to protect liberty. *United States v. Munoz-Flores*, 495 U.S. 385, 394-96 (1990); *Bond v. United States*, 564 U.S. 211, 222 (2011). Indeed, the "aim of [the separation of powers] is to protect … the whole people from improvident laws," *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise*, 501 U.S. 252, 271 (1991), not merely to protect the respective branches' institutional prerogatives. Provided that parties who seek to assert separation-of-powers injuries have otherwise justiciable claims, *Bond*, 564 U.S. at 225, they may assert the procedural injuries from separation-of-powers violations.

### B.   DACA is reviewable agency action.

Although the federal defendants or the intervenors may claim that DACA is unreviewable,

the APA provides review of the States' substantive and procedural claims. *See* 5 U.S.C. §706(2)(B)-(D). Specifically, claims of unreviewable enforcement discretion under *Heckler v. Chaney*, 470 U.S. 821 (1985), would be misplaced here for several reasons.

First, the enforcement discretion that *Heckler* insulates from review is agency *inaction* on a particular enforcement matter, not final agency action in the issuance of a specific rule. Where agencies indeed act, "applying some particular measure across the board … it can of course be challenged under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990). Second, DACA is not simply a decision to focus the available enforcement resources; it is a rule that provides benefits to a class of DACA beneficiaries and so remains reviewable as a rule.

Finally, *Amici* respectfully submit that it is commonplace to require considering *applications* of federal standards in specialized forums while allowing APA review of the systemic lawfulness of the federal standards in federal court. *Int'l Union v. Brock*, 477 U.S. 274, 285 (1986). Moreover, any claims of narrow judicial review are belied both by the availability of judicial review under the circumstances here before and after the APA's enactment and by the INA's lack of an express repeal of that review. Specifically, even before the APA's enactment in 1946, judicial review was available in equity suits against federal officers: "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949). And while the APA did not override any pre-APA statute that *expressly or impliedly* denied review, 5 U.S.C. §702, post-APA statutes must deny review *expressly*. 5 U.S.C. §559; *Dickinson v. Zurko*, 527 U.S. 150, 154-55 (1999). Consequently, as *post-APA* statutes, for the INA and its amendments to preclude APA review, they would need to do so *expressly*, but they do not.

As Chief Justice Marshall put it, "[w]e no more right to decline the exercise of jurisdiction

which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). Indeed, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). *Amici* respectfully submit that this Court is obligated to provide judicial review here.

## II.     THE STATES ARE LIKELY TO PREVAIL ON THE MERITS.

Given the *Texas* holdings with respect to DAPA, this Court need not tarry long on the question whether the States are likely to prevail on the merits. Nonetheless, as demonstrated in the next three subsections, DACA is unsupportable under the APA, the INA, and the Constitution.

### A.     DACA's promulgation violated the APA.

Even if DACA were *substantively* consistent with immigration law, its promulgation nonetheless would violate the APA notice-and-comment requirements. The APA exemptions for policy statements and interpretive rules do not apply when agency action narrows the discretion otherwise available to agency staff. *Texas*, 809 F.3d at 172-73; *Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551, 556 (5th Cir. 2001). Nor are these exemptions available when an agency promulgates the regulatory basis on which to confer benefits. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (defining a "substantive rule — or a legislative-type rule — as one affecting individual rights and obligations") (interior quotation marks omitted); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 908 (5th Cir. 1983) ("Legislative rules ... grant rights, impose obligations, or produce other significant effects on private interests") (interior quotation marks omitted, alteration in original); *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 629 (5th Cir. 2001). Just as this Court held with regard to DAPA, DACA fails these tests.

First, as the States argue, DACA is binding in its practical effect, Pls.' Memo. at 33-34 (ECF #005); *Texas*, 809 F.3d at 172-73, which no one can credibly dispute. The memorandum establishing DACA directs ICE agents to "exercise prosecutorial discretion, on an individual

basis," to grant deferred action for two years, subject to renewal, to aliens who meet the criteria set forth in the memorandum, for the purpose of "preventing low priority individuals from being placed into removal proceedings or removed from the United States," and to accept work authorization applications from those granted deferred action. Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* 2, 3 (June 15, 2012) ("Napolitano Memo.," Pls.' Mot. for Prelim. Inj. Exh. 1 (App. 3-4) (ECF #006)). It is difficult to see how any agent so charged would feel free *not* to grant deferred action in any given case, especially since the only purpose the agents are supposed to be fulfilling in implementing the memorandum is to prevent the removal of those meeting the criteria. *Compare Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1017 (9th Cir. 1987) (finding discretion where officials were permitted to grant deferred action based on "appealing humanitarian factors"). Thus, although couched in terms of agents' discretion, the memorandum actually *removes* that discretion. Indeed, the form of words chosen verges on the comical; to order agents to "exercise their discretion" *only in a particular way*, as the DACA memorandum does, is to deny them the very discretion the order presupposes.

Second, DACA plainly *affects* individual rights under *Chrysler*. Before issuing procedures and substantive policies that it would then be "incumbent" on the government to follow, *Morton v. Ruiz*, 415 U.S. 199, 235 (1974), the prior administration needed to conduct a rulemaking. For example, employment authorization is a benefit that is "granted" to beneficiary aliens, 8 C.F.R. §274a.12(c)(14), under sixteen specific circumstances, 8 C.F.R. §274a.12(a)(1)-(16), none of which apply to the across-the-board DACA program. *Cf. United States v. Picciotto*, 875 F.2d 345, 346-49 (D.C. Cir. 1989) (agency cannot add new, specific, across-the-board conditions under general, case-by-case authority to consider changes). Under the foregoing APA criteria, DACA

qualifies as a legislative rule, which agencies cannot issue by memoranda, policy, or interpretation.

Third, while the intervenors likely will raise public-policy rationales for DACA, those rationales should have no bearing on this Court's obligation to "hold unlawful and set aside agency action … found to be … without observance of procedure required by law." 5 U.S.C. §706(2)(D). The need for agencies to consider public comment is precisely why the APA requires notice and comment: to allow the affected public to voice concerns *before* the agency promulgates the rule.

A procedurally infirm rule is a nullity and void *ab initio*, *Avoyelles Sportsmen's League*, 715 F.2d 897, 909-10; *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1322-23 (D.C. Cir. 1988); *State of Ohio Dep't of Human Serv. v. U.S. Dept. of Health & Human Serv., Health Care Financing Admin.*, 862 F.2d 1228, 1237 (6th Cir. 1988); *North Am. Coal Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 854 F.2d 386, 388 (10th Cir. 1988), even where that rule would have been substantively valid if promulgated via notice-and-comment rulemaking. Accordingly, DACA's procedural infirmities alone render it null and void.

### B.    DACA is invalid under federal immigration law.

DACA also violates the INA on both substantive and procedural grounds, and either sort of violation renders DACA a nullity. *See* 5 U.S.C. §706(2)(B)-(C); *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134 (1936) (holding that a "regulation [that] … operates to create a rule out of harmony with the statute, is a mere nullity" because an agency's "power … to prescribe rules and regulations … is not the power to make law" but rather "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute"). Moreover, neither the federal defendants nor the intervenors can plausibly claim that Congress ratified DACA.

### 1.    DACA short-circuits mandatory removal proceedings.

Procedurally, through DACA, DHS purports to channel aliens into deferred action under prosecutorial discretion, without initiating the statutorily mandated removal proceeding.

Specifically, under 8 U.S.C. §1225(a)(1), "an alien present in the United States who has not been admitted … shall be deemed for purposes of this chapter an applicant for admission." That designation triggers 8 U.S.C. §1225(a)(3), which requires that all applicants for admission "shall be inspected by immigration officers," which triggers 8 U.S.C. §1225(b)(2)(A)'s mandate that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a [removal] proceeding under section 1229a of this title." 8 U.S.C. §1225(b)(2)(A) (emphasis added). "Congress did not place the decision as to which applicants for admission are placed in removal proceedings into the discretion of the Attorney General, but created mandatory criteria." *Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir. 2005). "[W]hile the President has broad authority in foreign affairs, that authority does not extend to the refusal to execute domestic laws." *Massachusetts v. EPA*, 549 U.S 497, 534 (2007). In essence, DACA jumps illegal aliens to a favorable possible result of the removal process, without any of the statutorily required process that must precede that outcome.

### 2.      DACA is an invalid form of deferred action.

Even if some form of deferred action lawfully could apply to some DACA beneficiaries, DACA would remain an invalid form of deferred action. While an agency faced with limited resources necessarily has discretion to implement congressional mandates as best it can, the power to set priorities for action does not authorize ignoring all statutory mandates: "the agency administering the statute is required to effectuate the original statutory scheme *as much as possible*, within the limits of the added constraint." *City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C. Cir. 1977) (emphasis added). DACA, however, did not "effectuate the original statutory scheme as much as possible" within the limits set by the lack of funds.

Indeed, DACA was not created because of lack of resources. The aliens protected by it were already rarely removed. Memorandum from Jeh Charles Johnson, *Exercising Prosecutorial*

*Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are Parents of U.S. Citizens or Permanent Residents* 3 (Nov. 20, 2014) (explaining that DACA applies to individuals who "are extremely unlikely to be deported given [the] Department's limited enforcement resources") (Pls.' Mot. for Prelim. Inj. Exh. 2 (App. 8) (ECF #006)).[1] Rather, DACA reflects a policy judgment that these aliens should be free to live and work here without fear of deportation. Far from "effectuat[ing] the original statutory scheme as much as possible," DACA is at odds with the INA and congressional intent.

Not only has Congress repeatedly rejected a legislative version of DACA, it has found that "immigration law enforcement is as high a priority as other aspects of Federal law enforcement, and illegal aliens do not have the right to remain in the United States undetected and unapprehended." H.R. REP. NO. 104-725, at 383 (1996). Congress also passed laws designed to reduce the incentives for illegal entry, and to incentivize self-deportation where enforcement is lacking. *Texas*, 86 F.Supp.3d at 634-35; Michael X. Marinelli, *INS Enforcement of the Immigration Reform and Control Act of 1986: Employer Sanctions During the Citation Period*, 37 CATH. U. L.R. 829, 833-34 (1988) ("Marinelli") ("Congress postulated that unauthorized aliens currently in the United States would be encouraged to depart") (*citing* H.R. REP. NO. 99-682, at 46 (1986)). Far from *implementing* the INA, DACA seeks to *soften* its treatment of DACA beneficiaries.

Moreover, DACA is not limited to deferred action; DACA also grants work authorization to its beneficiaries. Napolitano Memo, at 3. The INA cannot be credibly read to delegate to DHS

---

[1]     This statement is scarcely consistent with Secretary Napolitano's bald assertion that "additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead appropriately focused on people who meet our enforcement priorities." Napolitano Memo, at 1. Admissions against interest are admissible evidence, but self-serving statements are not. *Compare Lutwak v. United States*, 344 U.S. 604, 617-18 (1953) ("admissions … are admissible … under a standard exception to the hearsay rule applicable to the statements of a party") *with Woodall v. Commissioner*, 964 F.2d 361, 364-65 (5th Cir. 1992).

the unrestricted power to grant work authorization to removable aliens, even "low-priority" ones. Congress, in making it illegal for illegal aliens to work here, wished to discourage illegal entry and to encourage removable aliens to remove themselves, even if enforcement by removal is underfunded and slow to reach low-priority cases. *See Arizona v. United States*, 567 U.S. 387, 404 (2012) ("Congress enacted IRCA as a comprehensive framework for combating the employment of illegal aliens") (citations and interior quotation marks omitted); *Texas*, 86 F.Supp.3d at 634-35 (arguing that DAPA would disincentivize illegal aliens from self-deporting); Marinelli, at 833-34. DACA thus exceeds the authority that the INA delegates to DHS.

### 3.    8 U.S.C. §1324a(h)(3) does not authorize DACA.

Although the prior administration relied on 8 U.S.C. 1324a(h)(3) as authorizing DACA, that subsection provides no substantive authority. Indeed, the subsection is merely a definition: "As used in this section, the term "unauthorized alien" means, with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this Act or by the Attorney General." 8 U.S.C. 1324a(h)(3). As the Fifth Circuit held, this provision is an "exceedingly unlikely" grant of power from Congress to authorize work, because that provision addresses *unlawful* employment of aliens. *Texas*, 809 F.3d at 182-83. Indeed, as the Ninth Circuit has held, "[8 U.S.C. §1324a] merely allows an employer to legally hire an alien (whether admitted or not) while his application [for adjustment of status] is pending." *Guevara v. Holder*, 649 F.3d 1086, 1095 (9th Cir. 2011). As explained below, this provision does not delegate any authority, and it would violate the constitutional nondelegation doctrine if it did.

First, this pre-1996 definition may imply that the Attorney General has — or once *had* — authority to authorize the employment of certain aliens, but the definition does not *itself* delegate any authority. Furthermore, assuming *arguendo* that §1324a(h)(3) permitted DHS to give work

authorization to DACA beneficiaries, that could only be because §1324a(h)(3) allowed DHS to authorize work for *any class* of alien that DHS choses: the provision contains no limiting language. It is simply unreasonable to suppose that Congress, without any clear statement that it was doing so, granted DHS the unrestricted power to overthrow Congress's own grants of work protection to American workers. *See*, *e.g.*, 8 U.S.C. §§1182(n), 1184(g), 1188 (protecting American workers from competition from aliens); *Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*, 467 U.S. 883, 893 (1984) ("[a] primary purpose in restricting immigration is to preserve jobs for American workers"). If Congress intended to grant the Executive Branch such vast discretion, it would have done so clearly, not through "vague terms or ancillary provisions — it does not, one might say, hide elephants in mouse holes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Finally, if this definition itself delegated *carte blanche* authority to authorize employment, it would violate the nondelegation doctrine, which requires "an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Mistretta*, 488 U.S. at 372. Under the constitutional avoidance doctrine, this Court could avoid nondelegation issue by reading the statutory definition *not* to delegate any authority. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S.Ct. 2247, 2258-59 (2013). Either way, DACA would be unlawful.

### 4.   8 U.S.C. §1103(a)(3) does not authorize DACA.

The prior administration claimed that 8 U.S.C. §1103(a)(3) authorizes DACA, but that subsection is not that broad. Certainly, it does not authorize providing DACA's benefits without first complying with the INA's other requirements, such as commencing removal proceedings.

Under §1103(a)(3), "[the Secretary] … shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. §1103(a)(3). That provision clearly fails to authorize DACA, which is not "necessary for

carrying out" any part of the INA. In any event, only if DHS's authority to "deem[]" that an action is so "necessary" were unlimited and unreviewable could this provision grant authority for DACA, but in that case, §1103(a)(3) would grant DHS a limitless authority over how it carries out its duties, making meaningless the numerous other INA provisions that detail how DHS is to carry out its duties. *See*, *e.g.*, 8 U.S.C. §§1158(d)(5) (providing requirements for asylum procedure), 1228(a)(3) (providing that expedited proceedings "shall be" initiated for aliens incarcerated for aggravated felonies), 1229a (providing procedural requirements for removal proceedings). As with §1324a(h)(3), claiming that §1103(a)(3) authorizes DACA would create a nondelegation problem and thus should be rejected under the doctrine of constitutional avoidance.

### 5.    6 U.S.C. §202(5) does not authorize DACA.

The prior administration also relied on 6 U.S.C. §202(5) as authorizing DACA, but it too fails to provide the broad authority that DACA would require. Under §202(5), "[t]he Secretary … shall be responsible for … [e]stablishing national immigration enforcement policies and priorities." 6 U.S.C. §202(5). That grant of authority cannot authorize DACA. Section §202(5)'s authorization to set "priorities" does not authorize DACA, which goes far beyond setting enforcement priorities (*e.g.*, by providing work authorization). Indeed, as the government itself *admitted*, DACA beneficiaries were already extremely low priorities for removal. *See* note 1, *supra*, and accompanying text. Thus, §202(5) could only authorize DACA based on an open-ended authorization to DHS to establish enforcement "policies." But if this language were as open-ended as that, it would allow DHS to establish a policy, for example, of removing only removable aliens who were violent felons, or only those who had been in the country less than two months, or only those who lacked a high-school education — and it would be patently unreasonable to suppose that Congress intended DHS to have authority to set policies so at odds with the INA.

### 6. Prior deferral actions do not establish legislative-ratification.

Neither the federal defendants nor the intervenors can claim that Congress ratified DACA's deferred-action policies. Those potential claims are simply not borne out in the historical record of the INA's enactment and amendments, agency actions, or appellate decisions, much less the INA's text. Accordingly, this Court should reject any claim to legislative ratification.

At the outset, such a claim based on an agency's consistent interpretation would be "a slender reed to support a significant government policy" because "[a]rbitrary agency action becomes no less so by simple dint of repetition." *Judulang v. Holder*, 565 U.S. 42, 61 (2011). Nor have there been "unanimous holdings of the Courts of Appeals" for Congress to have accepted and ratified, as in *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S.Ct. 2507, 2520 (2015). Standing alone, of course, prior instances of Executive misconduct cannot "be regarded as even a precedent, much less an authority for the present [misconduct]." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 649 (1952). Something more is plainly required.

That something more should be "a systematic, unbroken, executive practice, long pursued to the knowledge of the Congress and never before questioned," which "can raise a presumption that the [action] had been [taken] in pursuance of its consent." *Medellin v. Texas*, 552 U.S. 491, 531 (2008) (interior question marks omitted, alterations in *Medellin*). Here, INA's history is considerably "broken" by Congress's later action to clamp down on illegal aliens: "illegal aliens do not have the right to remain in the United States undetected and unapprehended." H.R. REP. NO. 104-725, at 383. The history is also not as systematic as a congressional-ratification argument requires. While Congress has occasionally amended legislation to address humanitarian issues addressed in the first instance administratively, it is critical that that did *not* happen here. Quite the contrary: DACA's legislative analogue has consistently failed in Congress for more than a decade.

Another issue is scope: assuming that anyone would challenge a minor program in the first

place, a reviewing court might hold that truly *de minimis* deviations do not matter, *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 687 & n.29 (1979); *Pa. v. Mimms*, 434 U.S. 106, 111 (1977), perhaps because "*[d]e minimis non curat lex* … is part of the established background of legal principles against which all enactments are adopted." *Util. Air Regulatory Group v. EPA*, 134 S.Ct. 2427, 2435 n.1 (2014) (interior quotation marks omitted). But, of course, DACA is not *de minimis* in any way.

On balance, the claim that Congress ratified deferred-action plans like DACA is simply not plausible. Instead, this Court should simply follow the INA's plain text to glean what Congress intended. As shown in Sections II.B.1-II.B.5, *supra*, and by the States at length, Pls.' Memo. at 21-32 (ECF #005), Congress did not authorize DACA.

### C.    DACA violates the Executive's obligations under the Take Care Clause.

In granting review in *Texas*, the Supreme Court ordered briefing on "[w]hether [DAPA] violates the Take Care Clause of the Constitution." *United States v. Texas*, 136 S.Ct. 906 (2016). If this Court considers the Take Care Clause, this Court should rule against DACA either under the Clause itself or under the INA on constitutional-avoidance grounds.

Concededly, the take-care issue goes further than the substantive INA violations discussed, *supra*. Though, at some level, any substantively or even procedurally *ultra vires* action represents a failure faithfully to execute the laws, U.S. CONST. art. II, §3, it requires more to violate the Take Care Clause — a failure even to "take Care that the Laws be faithfully executed." *Id.* That failure, however, is amply present here. Indeed, the prior administration itself candidly acknowledged the unlawfulness of DACA numerous times before issuing DACA for political reasons when Congress did not enact the legislation that the prior administration sought. A court issuing an equitable remedy in these circumstances could find that the Executive willfully failed to take care, then tailor the remedy to account for that willfulness. *Cf. Thomas v. Union Carbide Agric. Prods. Co.*, 473

14

U.S. 568, 592 (1985) (distinguishing between faithful arbitrators and "arbitrators who abuse or exceed their powers or willfully misconstrue their mandate under the governing law"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991) (upholding sanctions for willful violations of court orders). Our Constitution requires presidents to see to it that the laws that Congress has passed are faithfully executed, U.S. CONST. art. II, §3, and courts must hold presidents to that standard.

Under separation-of-powers principles, Congress makes the laws, the Executive enforces the laws faithfully, and the judiciary interprets the laws. Those principles require this Court to reject DACA: "men have discovered no technique for long preserving free government except that the Executive be under the law, and that the law be made by parliamentary deliberations. … Such institutions may be destined to pass away. But it is the duty of the Court to be last, not first, to give them up." *Youngstown*, 343 U.S. at 655. Justice Jackson put *Youngstown* within a "judicial tradition" beginning with Chief Justice Coke's admonishing his sovereign that "[the King] is under God and the Law" when "King James took offense at the independence of his judges," which the King deemed treasonous. 343 U.S. at 655 n.27 (interior quotation marks omitted). Following Coke and Jackson, this Court must reject DACA's overreach here.

## III.     THE REMAINING *WINTER* CRITERIA FAVOR THE STATES.

In addition to being likely to prevail on the merits, the States meet the other *Winter* factors.

### A.     <u>The States are likely to suffer irreparable harm without preliminary relief.</u>

Applied here, the second *Winter* criterion asks whether the States would suffer irreparable harm absent preliminary relief. In addition to the unrecoverable economic injuries, Pls.' Memo. at 40-42 (ECF #005), this litigation makes clear that the States have perspectives on DACA, which they have a right to express in notice-and-comment rulemaking. 5 U.S.C. §553(b)-(c). DACA's continuing in effect would irreparably deny that right. Although *Elrod v. Burns*, 427 U.S. 347, 373 (1976), involved freedom of association, its holding that "loss of First Amendment freedoms, for

even minimal periods of time, unquestionably constitutes irreparable injury," *id.*, also applies to the First Amendment right of petition. *Anderson v. Davila*, 125 F.3d 148, 162 (3d Cir. 1997); *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983). If this Court wanted a harm more pressing than economic injury, continued denial of the notice-and-comment process would provide that harm.

### B.   The balance of equities tips in the States' favor.

The third *Winter* criterion balances the equities of granting or denying a preliminary injunction for the parties before the Court. In this litigation, this Court thus must balance the States' equities against the equities not only of the federal defendants but also of the state, organizational, and individual defendants-intervenors. Given the federal defendants' rescission of DACA, the first task is easier than the second, but the balancing tips decidedly in the States' favor in both cases.

#### 1.   Vis-à-vis the federal defendants, the equities favor the States.

Having rescinded DACA, the federal defendants have appropriately abandoned any claim to an equitable entitlement to continue DACA or to balance it against the States' harms.

#### 2.   Vis-à-vis the defendants-intervenors, the equities favor the States.

With respect to the defendants-intervenors, Circuit law likewise makes it difficult — if not impossible — to assert a judicially cognizable interest that a preliminary injunction would invade. While irreparable-harm and standing overlap, *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995), a party must show *more* to establish a cognizable equitable harm. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-50, 162 (2010). With DACA, the intervenors cannot establish a judicially cognizable *right*, much less a sufficiently weighty *harm*.

Mere agency officers cannot create rights: "*Congress* may create a statutory right … the alleged deprivation of which can confer standing," *Warth v. Seldin,* 422 U.S. 490, 514 (1975) (emphasis added), but agencies cannot. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n.18 (1979). As Justice Scalia colorfully explained, "Agencies may play the sorcerer's apprentice but

16

not the sorcerer himself." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). If the prior administration had wanted to create rights, it needed either to work with Congress to enact new legislation or, at least, to act using the APA rulemaking authority that Congress has delegated for agencies to create regulatory rights in furtherance of statutory rights created by Congress. Having taken neither of these two routes, DACA did not create any rights or interests that are cognizable in federal court. Indeed, procedurally invalid rules are void *ab initio*, *see* Section II.A, *supra*, which means "having no effect, as though it had never been passed." *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002). With DACA, there is no there there.

As for the state and any institutional defendants-intervenors, they "lack[] a judicially cognizable interest in the prosecution *or nonprosecution* of another," which "applies no less to prosecution for civil [matters] … than to prosecution for criminal [matters]." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 204 (2000) (emphasis added, interior quotation marks omitted). Similarly, it is a "fundamental restriction on [judicial] authority" that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties," *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2663 (2013) (interior quotation marks omitted); *Kowalski*, 543 U.S. at 128-30. Thus, third-party institutional and state intervenors would lack a judicially cognizable interest.

As for the individual defendants-intervenors, even the courts that find it impermissible to rescind DACA admit that DACA represents an "expectation of (though not a right to) continued deferred action." *Regents*, 279 F.Supp.3d at 1031. That is simply not enough: obviously, something that is "not a right" is also not a judicially cognizable right. Similarly, reliance by DACA beneficiaries is also not enough. Reliance is no basis to estop the federal government. *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 419-20 (1990) ("equitable estoppel will not lie

against the Government"). Misplaced reliance on the administration that issued DACA cannot estop the federal government: "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed'l Crop. Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Ferguson v. FDIC*, 164 F.3d 894, 898 (5th Cir. 1999); *United States ex rel. King v. Solvay S.A.*, 304 F.R.D. 507, 511-12 (S.D. Tex. 2015). Insofar as DACA beneficiaries feel misled, it was the prior administration that misled them. Under *Merrill* and its progeny, having been misled does not provide any rights to redress.

To the extent that it were relevant that DACA beneficiaries relied on DACA's continuing, that reliance would be unreasonable. A prime feature of deferred action is that, as an exercise of discretion, it can be ended at any time. *See* Napolitano Memo, at 3 ("[t]his memorandum confers no substantive right, immigration status or pathway to citizenship"). Although courts sometimes consider the regulated community's reliance when evaluating whether an agency used "reasoned decisionmaking" to change a regulation under the *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29 (1983) ("*MVMA*"), line of cases, the reliance must be "legitimate," *Smiley v. Citibank (S.D.), N.A*, 517 U.S. 735, 742 (1996), or "reasonable," *Judulang*, 565 U.S. at 48, such as when "*new* liability is sought to be imposed on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements." *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 295 (1974) (emphasis added); *accord United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 670-75 (1973) (allowing reliance on agency guidance allowed as defense in prosecution for past actions) ("*PICCO*"); *cf. INS v. St. Cyr*, 533 U. S. 289, 321-24 (2001) (keeping discretionary waivers of deportation available to deportable aliens who pleaded guilty to crimes prior to repeal of the legislative basis for that relief).

Consequently, the *PICCO* industrial discharger and the *St. Cyr* convicted alien could reasonably rely on the status quo at the time of the discharge and guilty plea. But presumably not even they would dream of claiming — or have the temerity to claim — that the same reliance would apply to new discharges or new guilty pleas. Similarly, DACA's rescission did not retroactively *undo* any existing DACA relief already granted — it simply declined to continue a discretionary program. No reliance interest under the *MVMA* line of cases precludes DACA's rescission.

Indeed, to argue that DACA beneficiaries' reliance on continuing DACA estops the government's rescinding DACA necessarily *admits* that DACA bound agency discretion. But in that case, DACA would require an APA rulemaking, *Texas*, 809 F.3d at 172-73, the lack of which would make DACA null and void *ab initio*. *See* Section II.A, *supra*. Thus, the very act of arguing reliance makes that reliance unreasonable.

### C.    An injunction is in the public interest.

The final *Winter* criterion is the public interest, which collapses into the merits with a strong likelihood of prevailing on the merits. *In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014); *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997) ("public interest calculus is subsumed within the merits"), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)). Moreover, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (*quoting Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Here, the APA, the INA, and the Take Care Clause define the public interest, which leaves no room for intervenors' policy arguments.

Non-lawyers may consider a decision by this Court to enjoin enforcement of DACA as promulgated by the prior administration circa 2012-2014 to be inconsistent with the recent decisions enjoining DACA's rescission by the current administration in 2018. *See, e.g., Regents*,

279 F.Supp.3d at 1031; *NAACP*, 2018 U.S. Dist. LEXIS 68589. In fact, however, challenging DACA's rescission was always a poisoned chalice for DACA proponents, prefiguring DACA's demise here. WILLIAM SHAKESPEARE, MACBETH, act 1, sc. 7. If DACA's rescission required notice-and-comment rulemaking, DACA itself required notice-and-comment rulemaking. By contrast, if DACA were a mere enforcement policy exempt from notice-and-comment rulemaking, the Executive Branch could revoke it at any time, without judicially mandated procedures. *Perez v. Mortg. Bankers Ass'n*, 135 S.Ct. 1199, 1207 (2015) (federal courts lack authority to impose extra-APA requirements on agencies that alter interpretive rules). In other words, if DACA's rescission is unsupportable, DACA itself is unsupportable. If DACA's rescission is supportable, DACA has been rescinded. Either way, DACA is a nullity.[2]

When intervenors complain about unfairness, they are complaining to the wrong branch of government. Even if "the result … sanctions injustice … the argument is made in the wrong forum" because judges "are not at liberty to legislate." *Touche Ross*, 442 U.S. at 579. Only Congress has the authority to fashion relief here, and Congress has not done so. *Amici* respectfully submit that this Court has no choice here but to enjoin DACA and, ultimately, to find it void *ab initio*.

## <u>CONCLUSION</u>

This Court should grant the States' motion for a preliminary injunction.

---

[2]     In the California case, Judge Alsup found rescission unlawful in part because DACA was lawful, but he did so based primarily on reading this Circuit's *Texas* litigation through the prism of Ninth Circuit precedent. *Regents*, 279 F.Supp.3d at 1038-39. Obviously, Ninth Circuit precedent "is not binding precedent in this circuit," *Hyder v. Keisler*, 506 F.3d 388, 393 (5th Cir. 2007), and in  any event his decision is not precedential even in California: "federal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court." *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011). Moreover, he extended the *MVMA* reasoned-decisionmaking rationale to the rescission of what purports to be a discretionary policy, which did not undergo notice and comment. Neither the Supreme Court nor the Fifth Circuit has extended *MVMA* and its progeny that far.

Dated: June 7, 2018                          Respectfully submitted,

                                             /s/ Andrew L. Schlafly
                                             _____

Christopher J. Hajec                         Andrew L. Schlafly
Director of Litigation                          Attorney in Charge
Immigration Reform Law Institute             New Jersey Bar No. 04066-2003
25 Massachusetts Avenue, NW, Suite 335       Southern District of Texas No. NJ04066
Washington, DC 20001                         939 Old Chester Rd.
Tel: 202-232-5590                            Far Hills, NJ 07931
Fax: 202-464-3590                            Phone: (908) 719-8608
Email: chajec@irli.org                       Fax: (908) 934-9207
                                             Email: aschlafly@aol.com
Lawrence J. Joseph
D.C. Bar No. 464777 (admitted *pro hac vice*)   *Counsel for Amici Curiae*
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) Case No. 1:18-cv-0068-ASH |
| Defendants, | ) |
| KARLA PEREZ, *et al.*, | ) |
| Defendants-Intervenors, | ) |
| and | ) |
| STATE OF NEW JERSEY, | ) |
| Movant. | ) |

**ADDENDUM TO MEMORANDUM OF LAW OF CONGRESSMEN STEVE KING,
ANDY BIGGS, LOUIE GOHMERT, PAUL A. GOSAR, THOMAS MASSIE, AND
RALPH NORMAN AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

Christopher J. Hajec
Director of Litigation
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
D.C. Bar No. 464777 (admitted *pro hac vice*)
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Andrew L. Schlafly
 Attorney in Charge
New Jersey Bar No. 04066-2003
Southern District of Texas No. NJ04066
939 Old Chester Rd.
Far Hills, NJ 07931
Phone: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

*Counsel for Amici Curiae*

## <u>ADDENDUM</u>

The following Members of the One Hundred Fifteenth Congress have joined the accompanying *amici curiae* brief:

1.    Congressman Steve King, Representative of Iowa's 4th Congressional District;

2.    Congressman Andy Biggs, Representative of Arizona's 5th Congressional District;

3.    Congressman Louie Gohmert, Representative of Texas' 1st Congressional District;

4.    Congressman Paul A. Gosar, D.D.S, Representative of Arizona's 4th Congressional District;

5.    Congressman Thomas Massie, Representative of Kentucky's 4th Congressional District; and

6.    Congressman Ralph Norman, Representative of South Carolina's 5th Congressional District.