# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KIRSTJEN M. NIELSEN, *et al.*,<br><br>Defendants. | Case No. 18-cv-00068 |

## FEDERAL DEFENDANTS' APPENDIX OF UNREPORTED AUTHORITIES

| Exhibit Tab | Authority | Page |
|:---:|:---:|:---:|
| 1 | Letter from Attorney General Sessions to Acting Secretary of Homeland Security Duke | 1 |
| 2 | Stipulation of Dismissal, *Texas v. United States*, No. 14-cv-254 (S.D. Tex. Sept. 12, 2017), ECF No. 473 | 3 |
| 3 | USCIS.gov, Deferred Action for Childhood Arrivals: Response to January 2018 Preliminary Injunction (Jan. 13, 2018) | 10 |
| 4 | U.S. Pet. for a Writ of Cert. Before J., *DHS v. Regents of Univ. of Cal.*, 17-1003 (U.S. Jan. 18, 2018) | 13 |
| 5 | Order, *Batalla Vidal v. Nielsen*, No. 16-cv-4756 (E.D.N.Y. Apr. 30, 2018), ECF No. 269 | 55 |
| 6 | Am. Order, *Casa de Maryland v. Department of Homeland Security*, No. 17-cv-2942-RWT (D. Md. Mar. 15, 2018), ECF No. 49 | 63 |
| 7 | Order, *Diaz v. Department of Homeland Security*, No. 17-cv-24555-UU (S.D. Fl.), ECF No. 11 | 66 |
| 8 | Order, *Diaz v. Department of Homeland Security*, No. 17-cv-24555-UU (S.D. Fl.), ECF No. 20 | 68 |
| 9 | Order, *Park v. Sessions*, No. 17-cv-1332-AJT (E.D.Va.), ECF No. 11 | 72 |

# EXHIBIT 1



**Office of the Attorney General**
**Washington, D. C. 20530**

Dear Acting Secretary Duke,

I write to advise that the Department of Homeland Security (DHS) should rescind the June 15, 2012, DHS Memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children," as well as any related memoranda or guidance. This policy, known as "Deferred Action for Childhood Arrivals" (DACA), allows certain individuals who are without lawful status in the United States to request and receive a renewable, two-year presumptive reprieve from removal, and other benefits such as work authorization and participation in the Social Security program.

DACA was effectuated by the previous administration through executive action, without proper statutory authority and with no established end-date, after Congress' repeated rejection of proposed legislation that would have accomplished a similar result. Such an open-ended circumvention of immigration laws was an unconstitutional exercise of authority by the Executive Branch. The related Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA) policy was enjoined on a nationwide basis in a decision affirmed by the Fifth Circuit on the basis of multiple legal grounds and then by the Supreme Court by an equally divided vote. *See Texas v. United States*, 86 F. Supp. 3d 591, 669-70 (S.D. Tex.), *aff'd*, 809 F.3d 134, 171-86 (5th Cir. 2015), *aff'd by equally divided Court*, 136 S. Ct. 2271 (2016). Then-Secretary of Homeland Security John Kelly rescinded the DAPA policy in June. Because the DACA policy has the same legal and constitutional defects that the courts recognized as to DAPA, it is likely that potentially imminent litigation would yield similar results with respect to DACA.

In light of the costs and burdens that will be imposed on DHS associated with rescinding this policy, DHS should consider an orderly and efficient wind-down process.

As Attorney General of the United States, I have a duty to defend the Constitution and to faithfully execute the laws passed by Congress. Proper enforcement of our immigration laws is, as President Trump consistently said, critical to the national interest and to the restoration of the rule of law in our country. The Department of Justice stands ready to assist and to continue to support DHS in these important efforts.

Sincerely,

Jefferson B. Sessions III

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS ET AL. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Civil Action No. 1:14-cv-254 |
| | § | |
| UNITED STATES OF AMERICA ET AL. | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFFS' STIPULATION OF VOLUNTARY DISMISSAL**

On June 15, 2017, the U.S. Department of Homeland Security released a memorandum entitled *Rescission of November 20, 2014 Memorandum Providing for Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA").* On September 5, 2017, the Department released a memorandum entitled *Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children."* Given these memoranda rescinding the DAPA program and phasing out the DACA and Expanded DACA programs, Plaintiffs file this stipulation of voluntary dismissal. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (allowing plaintiffs to dismiss an action, without court order, by filing a stipulation of dismissal signed by all parties who have appeared).[1]

---

[1] The Court's September 8, 2017 order deems Intervenors' proposed answer (Dkt. No. 91-2) to have been filed as an answer, Dkt. No. 471 at 3-4, and deems other filings to be the "equivalent of an answer," *id.* at 2. The instant stipulation of dismissal under Rule 41(a)(1)(A)(ii), unlike a notice of dismissal under Rule 41(a)(1)(A)(i), is not foreclosed by the filing of an answer and requires only the signature of all parties who have appeared.

This stipulation of dismissal is signed by counsel for all parties who have appeared—Plaintiffs, Defendants, and Intervenors.[2] Dismissal of this action is therefore automatic upon the filing of this stipulation, and no further order is needed to consider this case closed. *See Yesh Music v. Lakewood Church*, 727 F.3d 356, 362 (5th Cir. 2013) ("Stipulated dismissals under Rule 41(a)(1)(A)(ii) . . . require no judicial action or approval and are effective automatically upon filing."). The Court's Order of Temporary Injunction (Dkt. No. 144) is necessarily dissolved by this dismissal. *See Francis v. Johnson*, 129 F.3d 610 (5th Cir. 1997) (unpublished) (per curiam) (citing 11A Charles Alan Wright et al., Federal Practice & Procedure § 2947 at 126 n.19 (2d ed. 1995)); *Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994); *see also De Leon v. Marcos*, 659 F.3d 1276, 1283 (10th Cir. 2011) ("A stipulation of dismissal . . . is self-executing and immediately strips the district court of jurisdiction over the merits.").

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(B), this dismissal is without prejudice because Plaintiffs have not previously dismissed any federal- or state-court action based on or including the same claim.

---

[2] *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 194 (5th Cir. 1980) (noting that a stipulation of dismissal, like other filings, may be "signed by the attorneys for" the parties); United States District Court, Southern District of Texas, Administrative Procedures for Electronic Filing in Civil and Criminal Cases, at 8(C)(1) (Jan. 1, 2007; amended July 18, 2013) (allowing "[a] Filing User who electronically files any document requiring the signature of another individual" to "submit an imaged document containing all the necessary signatures inserted by hand").

Dated: September 12, 2017       Respectfully submitted.

KEN PAXTON
*Attorney General of Texas*

JEFFREY C. MATEER
*First Assistant Attorney General*

BRANTLEY STARR
*Deputy First Assistant Attorney General*

s/ Angela V. Colmenero
ANGELA V. COLMENERO
*Assistant Attorney General*
Attorney-in-Charge
TX Bar No. 24048399
Southern District ID No. 1002881

ADAM N. BITTER
*Assistant Attorney General*
TX Bar No. 24085070
Southern District ID No. 2167538

ERIC A. HUDSON
ADAM ARTHUR BIGGS
*Assistant Attorneys General*

Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1700

**COUNSEL FOR PLAINTIFFS**

CHAD A. READLER
Acting Assistant Attorney General

JENNIFER D. RICKETTS
Branch Director, Federal Programs Branch
Attorney-in-Charge (VA Bar No. 29281)

JOHN R. TYLER
Assistant Branch Director


JULIE S. SALTMAN (D.C. Bar No. 975015)
DANIEL HALAINEN
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel.: (202) 532-4252
Fax: (202) 616-8470
Julie.Saltman@usdoj.gov

ABRAN MARTINEZ
Acting United States Attorney

DANIEL DAVID HU
Assistant United States Attorney
Deputy Chief, Civil Division

**COUNSEL FOR DEFENDANTS**

MEXICAN AMERICAN LEGAL DEFENSE AND
EDUCATIONAL FUND

_Nina Perales_

Nina Perales (Tex. Bar No. 24005046;
Southern District of Tex. Bar No. 21127)
Attorney-in-Charge
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382

O'MELVENY & MYERS LLP
Adam P. KohSweeney (Cal. Bar No. 229983)*
Gabriel Markoff (Cal. Bar. No. 291656)*
2 Embarcadero Center 28th Floor
San Francisco, CA 94111-3823
Phone: (415) 984-8700
Facsimile: (415) 984-8701

*Admitted pro hac vice.

**COUNSEL FOR INTERVENORS JANE
DOE #1, JANE DOE #2, AND JANE DOE
#3**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of September, 2017, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service.

s/ Angela V. Colmenero
ANGELA V. COLMENERO
Assistant Attorney General

# EXHIBIT 3



**U.S. Citizenship and
Immigration Services**

# Deferred Action for Childhood Arrivals: Response to January 2018 Preliminary Injunction

Versión en español

**Feb. 14, 2018, Update:** USCIS is not accepting requests from individuals who have never before been granted deferred action under DACA. Due to federal court orders on Jan. 9, 2018 and Feb. 13, 2018, USCIS has resumed accepting requests to renew a grant of deferred action under DACA. The scope of the Feb. 13 preliminary injunction issued in the Eastern District of New York is the same as the Jan. 9 preliminary injunction issued in the Northern District of California. Unless otherwise provided in this guidance, the DACA policy will be operated on the terms in place before it was rescinded on Sept. 5, 2017, until further notice.

Individuals who were previously granted deferred action under DACA may request renewal by filing Form I-821D (PDF), Form I-765 (PDF), and Form I-765 Worksheet (PDF), with the appropriate fee or approved fee exemption request, at the USCIS designated filing location, and in accordance with the instructions to the Form I-821D (PDF) and Form I-765 (PDF). USCIS is not accepting requests from individuals who have never before been granted deferred action under DACA. USCIS will not accept or approve advance parole requests from DACA recipients.

If you previously received DACA and your DACA expired on or after Sept. 5, 2016, you may still file your DACA request as a renewal request. Please list the date your prior DACA ended in the appropriate box on Part 1 of the Form I-821D.

If you previously received DACA and your DACA expired before Sept. 5, 2016, or your most recent DACA grant was previously terminated, you cannot request DACA as a renewal (because renewal requests typically must be submitted within one year of the expiration date of your last period of deferred action approved under DACA), but you may nonetheless file a new initial DACA request in accordance with the Form I-821D and Form I-765 instructions. To assist USCIS with reviewing your DACA request for acceptance, if you are filing a new initial DACA request because your DACA expired before Sept. 5, 2016, or because it was terminated at any time, please list the date your prior DACA expired or was terminated on Part 1 of the Form I-821D, if available.

Deferred action is a discretionary determination to defer a removal action of an individual as an act of prosecutorial discretion. Further, deferred action under DACA does not confer legal status upon an individual and may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion. DACA requests will be adjudicated under the guidelines set forth in the
June 15, 2012 DACA memo (PDF).

**Who Can File for Renewal of DACA**

**How to Renew**

**USCIS 2018 DACA Preliminary Injunction FAQs**

Last Reviewed/Updated: 02/22/2018

# EXHIBIT 4

No.

# In the Supreme Court of the United States

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
ET AL., PETITIONERS

*v.*

REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
BEFORE JUDGMENT TO THE UNITED STATES
COURT OF APPEALS FOR THE NINTH CIRCUIT*

**PETITION FOR A WRIT OF CERTIORARI
BEFORE JUDGMENT**

NOEL J. FRANCISCO
*Solicitor General
    Counsel of Record*
CHAD A. READLER
*Acting Assistant Attorney
    General*
JEFFREY B. WALL
*Deputy Solicitor General*
HASHIM M. MOOPPAN
*Deputy Assistant Attorney
    General*
JONATHAN Y. ELLIS
*Assistant to the Solicitor
    General*
MARK B. STERN
ABBY C. WRIGHT
THOMAS PULHAM
*Attorneys*

*Department of Justice
Washington, D.C. 20530-0001
SupremeCtBriefs@usdoj.gov
(202) 514-2217*

## QUESTIONS PRESENTED

This dispute concerns the policy of immigration enforcement discretion known as Deferred Action for Childhood Arrivals (DACA).  In 2016, this Court affirmed, by an equally divided Court, a decision of the Fifth Circuit holding that two related Department of Homeland Security (DHS) enforcement policies, including an expansion of the DACA policy, were likely unlawful and should be enjoined.  See *United States* v. *Texas*, 136 S. Ct. 2271 (per curiam).  In September 2017, the former Acting Secretary of Homeland Security determined that the original DACA policy would likely be struck down by the courts on the same grounds and that the policy was unlawful.  Accordingly, she instituted an orderly wind-down of the DACA policy.

The district court here concluded that respondents are likely to succeed in proving that the Acting Secretary's decision to rescind the DACA policy was arbitrary and capricious, and it enjoined DHS from rescinding it on a nationwide basis while this litigation proceeds.  The questions presented are as follows:

1. Whether the Acting Secretary's decision to wind down the DACA policy is judicially reviewable.

2. Whether the Acting Secretary's decision to wind down the DACA policy is lawful.

(I)

## PARTIES TO THE PROCEEDING

Petitioners are the United States Department of Homeland Security; Donald J. Trump, President of the United States; Kirstjen M. Nielsen, Secretary of Homeland Security; Jefferson B. Sessions III, Attorney General of the United States; and the United States of America.

Respondents are the Regents of the University of California; Janet Napolitano, President of the University of California; the State of California; the State of Maine; the State of Maryland; the State of Minnesota; the City of San Jose; Dulce Garcia; Miriam Gonzalez Avila; Saul Jimenez Suarez; Viridiana Chabolla Mendoza; Norma Ramirez; Jirayut Latthivongskorn; the County of Santa Clara; and Service Employees International Union Local 521.

(II)

### TABLE OF CONTENTS

Page

Opinions below ..................................................................... 1
Jurisdiction........................................................................... 2
Statutory provisions involved ............................................. 2
Statement ............................................................................. 2
Reasons for granting the petition ..................................... 12
   I.    The decision below is in need of immediate review.... 13
   II.   The decision below is wrong ........................................ 15
        A.  The Rescission Memo is not reviewable .............. 16
        B.  The Rescission Memo is lawful.............................. 24
           1.   The rescission was reasonable in light of
                the Fifth Circuit's decision and the
                impending litigation.......................................... 24
           2.   The rescission was reasonable in light of
                the Acting Secretary's determination that
                DACA is unlawful .............................................. 31
Conclusion .......................................................................... 33
Appendix A — District court order (Jan. 9, 2018)................. 1a
Appendix B — District court notice of appeal
               (Jan. 16, 2018) ........................................... 71a
Appendix C — District court order granting in part
               defendants' motion to dismiss under
               FRCP 12(b)(6) (Jan. 12, 2018)................. 76a
Appendix D — Memorandum on Exercising
               Prosecutorial Discretion with Respect
               to Individuals Who Came to the United
               States as Children (June 15, 2012) .......... 95a
Appendix E — Memorandum on Exercising
               Prosecutorial Discretion with Respect
               to Individuals Who Came to the United
               States as Children and with Respect to
               Certain Individuals Who Are the
               Parents of U.S. Citizens or Permanent
               Residents (Nov. 20, 2014) ...................... 100a

(III)

IV

Table of Contents—Continued:                                    Page

Appendix F  —  Memorandum on Rescission of Deferred
                       Action for Childhood Arrivals
                       (Sept. 5, 2017)............................................ 109a
Appendix G  —  Statutory provisions................................... 118a

## TABLE OF AUTHORITIES

Cases:

*Abbott Laboratories* v. *Gardner*, 387 U.S. 136 (1967)........ 29

*Arizona* v. *United States*, 567 U.S. 387 (2012) ........... 2, 3, 18

*Botezatu* v. *INS*, 195 F.3d 311 (7th Cir. 1999),
    cert. denied, 531 U.S. 811 (2000) ...................................... 22

*Bowman Transp., Inc.* v. *Arkansas-Best Freight
    Sys., Inc.*, 419 U.S. 281 (1974) ..................................... 24, 25

*Dames & Moore* v. *Regan*, 453 U.S. 654 (1981)................. 14

*Elgin* v. *Department of Treasury*, 567 U.S. 1 (2012)......... 23

*FCC* v. *Fox Television Stations, Inc.*, 556 U.S. 502
    (2009).................................................................................... 24

*Green* v. *Napolitano*, 627 F.3d 1341 (10th Cir. 2010) ........ 23

*Heckler* v. *Chaney*, 470 U.S. 821 (1985)...................... *passim*

*I.C.C.* v. *Brotherhood of Locomotive Eng'rs*,
    482 U.S. 270 (1987)......................................16, 18, 19, 20, 21

*Lewis* v. *Casey*, 518 U.S. 343 (1996)...................................... 33

*Lincoln* v. *Vigil*, 508 U.S. 182 (1993) ....................... 16, 19, 20

*Madsen* v. *Women's Health Ctr., Inc.*, 512 U.S. 753
    (1994).................................................................................... 33

*Massachusetts* v. *EPA*, 549 U.S. 497 (2007) ................. 31, 32

*Mistretta* v. *United States*, 488 U.S. 361 (1989)................. 15

*Motor Vehicles Mfrs. Ass'n* v. *State Farm Mut.
    Auto. Ins. Co.*, 463 U.S. 29 (1983)........................... 24, 29, 31

*Reno* v. *American-Arab Anti-Discrimination
    Comm.*, 525 U.S. 471 (1999) ..........................3, 18, 21, 22, 24

V

Cases—Continued:                                                      Page

 *Texas* v. *United States*:

  86 F. Supp. 3d 591 (S.D. Tex.), aff'd, 809 F.3d 134
  (5th Cir. 2015), aff'd, 136 S. Ct. 2271 (2016) .............. 5

  809 F.3d 134 (5th Cir. 2015), aff'd, 136 S. Ct. 2271
  (2016) ............................................... 5, 26, 27, 28, 29, 32

 *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200
 (1994) ..................................................................... 23

 *United States* v. *Armstrong*, 517 U.S. 456 (1996) ............. 17

 *United States* v. *Nixon*, 418 U.S. 683 (1974)...................... 14

 *United States* v. *Texas*, 136 S. Ct. 2271 (2016) .................... 5

 *Vasquez* v. *Aviles*, 639 Fed. Appx. 898 (3d Cir. 2016)........ 22

 *Wayte* v. *United States*, 470 U.S. 598 (1985) ..................... 19

 *Youngstown Sheet & Tube Co.* v. *Sawyer*,
 343 U.S. 579 (1952)............................................... 14

Constitution, statutes, and rules:

 U.S. Const. Amend. V (Due Process Clause) .................... 11

 Administrative Procedure Act, 5 U.S.C. 551 *et seq.*........... 14

  5 U.S.C. 701(a)(2)............................8, 15, 16, 18, 20, 118a

  5 U.S.C. 706(2)(A).................................................. 24, 119a

 Clean Air Act, 42 U.S.C. 7401 *et seq.* ................................... 32

  42 U.S.C. 7521(a)(1)..................................................... 32

 Federal Food, Drug, and Cosmetic Act,
 21 U.S.C. 301 *et seq.*............................................... 19

  21 U.S.C. 352(f)............................................... 19

 Immigration and Nationality Act,
 8 U.S.C. 1101 *et seq.*............................................... 2

  8 U.S.C. 1103(a)(1)......................................... 2, 26

  8 U.S.C. 1158(b)(1)(A)......................................... 3

  8 U.S.C. 1182(a) (2012 & Supp. IV 2016) ........................ 3

  8 U.S.C. 1182(d)(5)(A) ....................................... 3

VI

Statutes and rules—Continued:                                    Page

    8 U.S.C. 1182(h) ................................................................. 23

    8 U.S.C. 1182(i) .................................................................. 23

    8 U.S.C. 1227(a) .................................................................. 3

    8 U.S.C. 1229b ................................................................ 3, 23

    8 U.S.C. 1229c .................................................................... 23

    8 U.S.C. 1252 ................................................. 16, 21, 120a

    8 U.S.C. 1252(a)(1) ..................................... 22, 120a

    8 U.S.C. 1252(a)(2)(B) ........................... 23, 121a

    8 U.S.C. 1252(a)(2)(B)(i) ...................... 23, 122a

    8 U.S.C. 1252(a)(2)(D) ........................... 23, 122a

    8 U.S.C. 1252(b)(9) ................................... 22, 129a

    8 U.S.C. 1252(g) ............................. 8, 21, 22, 23, 134a

    8 U.S.C. 1255 ...................................................................... 23

  Railway Labor Act, 45 U.S.C. 151 *et seq.* ........................... 21

  Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.* ................. 7

  6 U.S.C. 202(5) .............................................. 3, 18, 26, 30, 32

  28 U.S.C. 1254 ...................................................................... 13

  28 U.S.C. 1254(1) ................................................................. 13

  28 U.S.C. 1292(a)(1) ............................................................ 11

  28 U.S.C. 1292(b) ...................................................... 11, 12, 13

  28 U.S.C. 2101(e) ................................................................. 13

  Fed. R. App. P. 5(a) ............................................................ 12

  Fed. R. Civ. P.:

    Rule 12(b)(1) ........................................................ 7, 8, 12

    Rule 12(b)(6) ...................................................... 7, 11, 12

  Sup. Ct. R. 11 ....................................................................... 14

Miscellaneous:

  The White House, *Remarks by the President on
    Immigration* (June 15, 2012), https://go.usa.gov/
    xnZFY ................................................................................ 30

VII

Miscellaneous—Continued:                                    Page

Stephen M. Shapiro et al., *Supreme Court Practice*
(10th ed. 2013) ............................................................. 13, 14

U.S. Citizenship & Immigration Servs., Deferred
Action for Childhood Arrivals:  Response to Janu-
ary 2018 Preliminary Injunction (Jan. 13, 2018),
https://www.uscis.gov/humanitarian/deferred-
action-childhood-arrivals-response-january-2018-
preliminary-injunction. ...................................................... 10

# In the Supreme Court of the United States

———————

No.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
ET AL., PETITIONERS

*v.*

REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.

———————

*ON PETITION FOR A WRIT OF CERTIORARI
BEFORE JUDGMENT TO THE UNITED STATES
COURT OF APPEALS FOR THE NINTH CIRCUIT*

———————

**PETITION FOR A WRIT OF CERTIORARI
BEFORE JUDGMENT**

———————

The Solicitor General, on behalf of the United States
Department of Homeland Security and other federal
parties, respectfully petitions for a writ of certiorari be-
fore judgment to the United States Court of Appeals for
the Ninth Circuit.

**OPINIONS BELOW**

The order of the district court granting respondents'
motion for a preliminary injunction and denying the
government's motion to dismiss under Federal Rule of
Civil Procedure 12(b)(1) (App., *infra*, 1a-70a) is not yet
published in the Federal Supplement but is available at
2018 WL 339144.  A separate order of the district court
granting in part, and denying in part, the government's
motion to dismiss under Federal Rule of Civil Proce-
dure 12(b)(6) (App., *infra*, 76a-94a) is not yet published

(1)

2

in the Federal Supplement but is available at 2018 WL 401177.

## JURISDICTION

On January 9, 2018, the district court denied the government's Rule 12(b)(1) motion, entered a preliminary injunction, and certified its Rule 12(b)(1) decision for interlocutory appeal.  On January 12, 2018, the district court granted in part and denied in part the government's Rule 12(b)(6) motion and certified several of its rulings for interlocutory appeal.  The government filed a notice of appeal of the order granting a preliminary injunction on January 16, 2018 (App., *infra*, 71a-75a).  The same day, the government filed a petition for permission to appeal both the January 9 and January 12 orders that the district court had certified for interlocutory appeal.  The court of appeals' jurisdiction over the appeal of the preliminary injunction rests on 28 U.S.C. 1292(a)(1).  The court of appeals' jurisdiction over the appeal of the certified rulings would rest on 28 U.S.C. 1292(b).  The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1) and 28 U.S.C. 2101(e).

## STATUTORY PROVISIONS INVOLVED

Pertinent statutory provisions are set forth in the appendix to this petition.  App., *infra*, 118a-134a.

## STATEMENT

1. a. The Immigration and Nationality Act (INA), 8 U.S.C. 1101 *et seq.*, charges the Secretary of Homeland Security "with the administration and enforcement" of the Act.  8 U.S.C. 1103(a)(1).  Individual aliens are subject to removal if, *inter alia*, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona* v. *United States*, 567 U.S. 387, 396 (2012); see

3

8 U.S.C. 1182(a) (2012 & Supp. IV 2016); see also 8 U.S.C. 1227(a).  As a practical matter, however, the federal government cannot remove every removable alien, and a "principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396.

For any alien subject to removal, Department of Homeland Security (DHS) officials must first "decide whether it makes sense to pursue removal at all." *Arizona*, 567 U.S. at 396.  After removal proceedings begin, government officials may decide to grant discretionary relief, such as asylum, parole, or cancellation of removal.  See 8 U.S.C. 1158(b)(1)(A), 1182(d)(5)(A), 1229b.  And, "[a]t each stage" of the process, "the Executive has discretion to abandon the endeavor." *Reno* v. *American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (*AADC*). In making these decisions, like other agencies exercising enforcement discretion, DHS must engage in "a complicated balancing of a number of factors which are peculiarly within its expertise." *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985).  Recognizing the need for such balancing, Congress has provided that the "Secretary [of Homeland Security] shall be responsible for  * * * [e]stablishing national immigration enforcement policies and priorities."  6 U.S.C. 202(5).

b. In 2012, DHS announced the policy known as Deferred Action for Childhood Arrivals (DACA).  See App., *infra*, 95a-99a (June 15, 2012 memorandum).  Deferred action is a practice in which the Secretary exercises discretion, "for humanitarian reasons or simply for [her] own convenience," to notify an alien of her decision to forbear from seeking his removal for a designated period. *AADC*, 525 U.S. at 484.  A grant of deferred action does not confer lawful immigration status

4

or provide any defense to removal.  DHS retains discretion to revoke deferred action unilaterally, and the alien remains removable at any time.

DACA made deferred action available to "certain young people who were brought to this country as children."  App., *infra*, 95a.  Under the original DACA policy, following successful completion of a background check and other review, an alien would receive deferred action for a period of two years, subject to renewal.  *Id.* at 97a-98a.  The DACA policy made clear that it "confer[red] no substantive right, immigration status or pathway to citizenship," because "[o]nly the Congress, acting through its legislative authority, can confer these rights."  *Id.* at 99a.

In 2014, DHS created a new policy referred to as Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA).  See App., *infra*, 100a-108a.  Through a process expressly designed to be "similar to DACA," DAPA made deferred action available for certain individuals who had a child who was a U.S. citizen or lawful permanent resident.  *Id.* at 105a.  At the same time, DHS also expanded DACA by extending the deferred-action period from two to three years and by loosening the age and residency criteria.  *Id.* at 104a-105a.

c.  Soon thereafter, Texas and 25 other States brought suit in the Southern District of Texas to enjoin DAPA and the expansion of DACA.  The district court issued a nationwide preliminary injunction, finding a likelihood of success on the claim that the DAPA and expanded DACA memorandum was a "'substantive' rule that should have undergone the notice-and-comment rule making procedure" required by the Administrative Procedure Act (APA), 5 U.S.C. 551 *et seq.*

5

*Texas* v. *United States*, 86 F. Supp. 3d 591, 671 (2015); see *id.* at 607, 647, 665-678.

The Fifth Circuit affirmed the preliminary injunction, holding that the DAPA and expanded DACA policies likely violated both the APA and the INA. *Texas* v. *United States*, 809 F.3d 134, 146, 170-186 (2015). The court of appeals concluded that plaintiffs had "established a substantial likelihood of success on the merits of their procedural claim" that DAPA and expanded DACA were invalidly promulgated without notice and comment. *Id.* at 178. The court also concluded, "as an alternate and additional ground," that the policies were substantively contrary to law. *Ibid.* The court observed that the INA contains an "intricate system of immigration classifications and employment eligibility," and "flatly does not permit the reclassification of millions of illegal aliens as lawfully present" and eligible for "federal and state benefits, including work authorization." *Id.* at 184. And it noted that Congress had repeatedly declined to enact legislation "closely resembl[ing] DACA and DAPA." *Id.* at 185.

After briefing and argument, this Court affirmed the Fifth Circuit's judgment by an equally divided Court, *United States* v. *Texas*, 136 S. Ct. 2271, 2272 (2016) (per curiam), leaving in place the nationwide injunction against DAPA and the expansion of DACA.

d. In June 2017, Texas and other plaintiff States in the *Texas* case announced their intention to amend their complaint to challenge the original DACA policy. App., *infra*, 17a. They asserted that "[f]or the same reasons that DAPA and Expanded DACA's unilateral Executive Branch conferral of eligibility for lawful presence and work authorization was unlawful, the original June 15,

6

2012 DACA memorandum is also unlawful." D. Ct. Doc. 64-1, at 239.

On September 5, 2017, rather than engage in litigation in which DACA would be challenged on essentially the same grounds that succeeded in *Texas* before the same court, DHS decided to wind down the original DACA policy in an orderly fashion. See App., *infra*, 109a-117a (Rescission Memo). In the Rescission Memo, the Acting Secretary of Homeland Security explained that, "[t]aking into consideration the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation," as well as advice from the Attorney General that the original DACA policy was unlawful and that the "potentially imminent" challenge to DACA would "likely * * * yield similar results" to the *Texas* litigation, "it is clear that the June 15, 2012 DACA program should be terminated." *Id*. at 114a-115a. The Acting Secretary accordingly announced that, "[i]n the exercise of [her] authority in establishing national immigration policies and priorities," the June 15, 2012 memorandum was "rescind[ed]." *Id.* at 115a.

In light of the "complexities associated with winding down the program," however, the Rescission Memo explained that DHS would "provide a limited window in which it w[ould] adjudicate certain requests for DACA." App., *infra*, 115a. Specifically, DHS would "adjudicate— on an individual, case-by-case basis—properly filed pending DACA renewal requests * * * from current beneficiaries that have been accepted by the Department as of the date of this memorandum, and from current beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017." *Id.* at 115a-116a. The Rescission Memo further

7

provided that the government "[w]ill not terminate the grants of previously issued deferred action * * * solely based on the directives in this memorandum" for the remaining two-year periods. *Id.* at 116a.

2. Shortly after the Acting Secretary's decision, respondents brought these five related suits in the Northern District of California challenging the rescission of DACA. App., *infra*, 19a-21a. Collectively, they allege that the termination of DACA is unlawful because it violates the APA's requirement for notice-and-comment rulemaking; is arbitrary and capricious; violates the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.*; denies respondents equal protection and due process; and permits the government to use information obtained through DACA in a manner inconsistent with principles of equitable estoppel. See App., *infra*, 21a-22a. Similar challenges have been brought in district courts in New York, Maryland, Virginia, Florida, and the District of Columbia.

In November 2017, the government filed a motion to dismiss all five suits under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).[1] At the threshold, the govern-

---

[1] The government filed the administrative record in October 2017. Litigation ensued in which respondents sought and obtained orders from the district court directing a vast expansion of the administration record, in addition to immediate discovery. See, *e.g.*, D. Ct. Doc. 79 (Oct. 17, 2017). The government sought review of those orders in a petition for a writ of mandamus in the court of appeals, which the Ninth Circuit denied. See 875 F.3d 1200 (2017). After granting a stay of the district court's orders, see 138 S. Ct. 371 (2017), this Court granted the government's petition for a writ of certiorari, vacated the Ninth Circuit's judgment, and remanded for further proceedings. See 138 S. Ct. 443 (2017). On remand, the district court stayed its orders requiring expansion of the administrative record and authorizing

8

ment argued that respondents' claims are not reviewable because the Acting Secretary's decision to rescind DACA is committed to agency discretion by law, see 5 U.S.C. 701(a)(2); and because judicial review of the denial of deferred action, if available at all, is barred under the INA prior to the issuance of a final removal order, see 8 U.S.C. 1252(g). The government further argued that respondents' substantive APA claims fail because the Acting Secretary rationally explained her decision to wind down the discretionary DACA policy given the imminent risk of a nationwide injunction and her reasonable conclusion that the policy is unlawful. Finally, the government argued that respondents' other claims are without merit because the rescission of DACA is exempt from notice-and-comment requirements; does not violate principles of equal protection or due process; and does not change the policies governing the use of aliens' personal information at all.

Respondents opposed the government's motion to dismiss and filed a motion for a preliminary injunction, seeking to prevent the government from rescinding the DACA policy.

3. On January 9, 2018, the district court denied the motion to dismiss to the extent it was based on Rule 12(b)(1), and entered a preliminary injunction requiring the government to "maintain the DACA program on a nationwide basis." App., *infra*, 66a; see *id.* at 1a-70a.

---

discovery "pending further order." See D. Ct. Doc. 225 (Dec. 21, 2017). The court recently announced its view that "the order to complete the administrative record should be re-issued" and certified for interlocutory appeal. D. Ct. Doc. 240, at 1 (Jan. 12, 2018). It has directed the parties to brief by January 19 "whether some narrowing of the order is necessary or appropriate" before the order is re-issued and "the extent to which * * * discovery should resume." *Id.* at 1-2.

9

The district court first ruled that the Acting Secretary's rescission of DACA was not committed to agency discretion by law. The court acknowledged that an agency's decisions "not to prosecute or initiate enforcement actions are generally not reviewable as they are 'committed to an agency's absolute discretion.'" App., *infra*, 27a (quoting *Chaney*, 470 U.S. at 831). But it concluded that the rescission of DACA was different because it involved a "broad enforcement polic[y]" rather than an "'individual enforcement decision'"; it rescinded a policy of enforcement discretion, instead of announcing a new one; and the "main" rationale for rescinding the prior policy was its "supposed illegality," which the court concluded it was authorized to decide. *Id.* at 28a-30a (citation omitted). The court also concluded that the INA did not preclude review because "plaintiffs do not challenge any particular removal but, rather, challenge the abrupt end to a nationwide deferred-action and work-authorization program." *Id.* at 30a-31a.

The district court then ruled that respondents were entitled to a preliminary injunction, concluding that they had demonstrated a likelihood of success on claims that the rescission of DACA was arbitrary and capricious. App., *infra*, 41a-62a. The court acknowledged that "a new administration is entitled to replace old policies with new policies so long as they comply with the law," *id.* at 2a, and the court did not dispute that DACA was a discretionary non-enforcement policy that was neither mandated nor specifically authorized by statute. The court nonetheless concluded that respondents were likely to succeed on their claims both because "the agency's decision to rescind DACA was based on a flawed legal premise" and because the government's

10

"supposed 'litigation risk' rationale" was an invalid "post hoc rationalization" and, "in any event, arbitrary and capricious." *Id.* at 42a.

Finding that respondents had satisfied the remaining equitable requirements for an injunction, see App., *infra*, 62a-66a, the district court ordered the government, "pending final judgment" or other order, "to maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017." *Id.* at 66a. The court specifically directed that the government must "allow[] DACA enrollees to renew their enrollments." *Ibid.*[2] The court also required DHS to post "reasonable public notice that it will resume receiving DACA renewal applications" and to provide "summary reports to the Court (and counsel)" every three months about "its actions on all DACA-related applications." *Id.* at 67a.[3]

---

[2]  The district court identified certain "exceptions" to its injunction. The court specified "(1) that new applications from applicants who have never before received deferred action need not be processed; (2) that the advance parole feature need not be continued for the time being for anyone; and (3) that defendants may take administrative steps to make sure fair discretion is exercised on an individualized basis for each renewal application." App., *infra*, 66a-67a. The court also specified that "[n]othing in [its] order" would prohibit DHS from "remov[ing] any individual, including any DACA enrollee, who it determines poses a risk to national security or public safety, or otherwise deserves, in its judgment, to be removed." *Id.* at 67a.

[3]  Consistent with the district court's order, DHS has issued guidance announcing that it has "resumed accepting requests to renew a grant of deferred action under DACA." U.S. Citizenship & Immigration Servs., Deferred Action for Childhood Arrivals: Response to January 2018 Preliminary Injunction (Jan. 13, 2018), https://www.uscis.gov/humanitarian/deferred-action-childhood-arrivals-response-january-2018-preliminary-injunction.

11

The district court certified its order for interlocutory appeal under 28 U.S.C. 1292(b), to the extent it denied the "questions interposed by the government in its motion to dismiss under [Rule] 12(b)(1)." App., *infra*, 70a.

4. On January 12, 2018, the district court issued a further order granting in part and denying in part the government's motion to dismiss to the extent it was based on Rule 12(b)(6). App., *infra*, 76a-94a. The court declined to dismiss respondents' substantive APA claims "[f]or the same reasons" stated in its January 9 order. *Id.* at 77a. The court also declined to dismiss respondents' claims that the rescission of DACA violated principles of equal protection based on race, *id.* at 88a-92a, and that DHS had violated the Due Process Clause by allegedly "chang[ing] its policy" on the use of personal information "provided by DACA recipients," *id.* at 84a-86a. The court dismissed respondents' remaining claims, including with respect to procedural notice-and-comment, the Regulatory Flexibility Act, procedural due process, equitable estoppel, and equal protection based on a fundamental right to a job. *Id.* at 77a-84a, 86a-88a, 92a. The court certified various of its holdings—including those adverse to the government— for interlocutory appeal pursuant to 28 U.S.C. 1292(b). See *id.* at 94a.

5. The government filed timely notices of appeal of the district court's January 9 preliminary-injunction order in each of the five suits. App., *infra*, 71a-75a; cf. 28 U.S.C. 1292(a)(1). The appeals have been consolidated and docketed as No. 18-15068, and remain pending before the court of appeals. The government also has filed a timely petition for permission to appeal from the district court's January 9 and January 12 orders granting in part and denying in part the government's

12

motion to dismiss under Rule 12(b)(1) and (b)(6); that petition has been docketed as No. 18-80004. See 28 U.S.C. 1292(b); Fed. R. App. P. 5(a).

## REASONS FOR GRANTING THE PETITION

This Court's immediate review is warranted. The district court has entered a nationwide injunction that requires DHS to keep in place a policy of non-enforcement that no one contends is required by federal law and that DHS has determined is, in fact, unlawful and should be discontinued. The district court's unprecedented order requires the government to sanction indefinitely *an ongoing violation of federal law* being committed by nearly 700,000 aliens—and, indeed, to confer on them affirmative benefits (including work authorization)— pursuant to the DACA policy. That policy is materially indistinguishable from the DAPA and expanded DACA policies that the Fifth Circuit held were contrary to federal immigration law in a decision that four Justices of this Court voted to affirm. Without this Court's immediate intervention, the court's injunction will persist at least for months while an appeal is resolved and, if the court of appeals does not reverse the injunction, it could continue for *more than a year* given the Court's calendar.

To be sure, some of these harms could be avoided by a stay of the district court's order. But a primary purpose of the Acting Secretary's orderly wind-down of the DACA policy was to *avoid* the disruptive effects on all parties of abrupt shifts in the enforcement of the Nation's immigration laws. Inviting more changes before final resolution of this litigation would not further that interest. Moreover, a stay would not address the institutional injury suffered by the United States of being embroiled in protracted litigation over an agency decision that falls squarely within DHS's broad discretion

13

over federal immigration policy and that is not even judicially reviewable.  A stay also would not address the risk that the onerous discovery and administrative-record orders that already justified this Court's intervention will be reinstated and create the need for additional rounds of interlocutory appellate review.  Accordingly, the government respectfully submits that the most suitable and efficient way to vindicate the law in these unique circumstances is to grant certiorari before judgment and resolve the dispute this Term.

## I.  THE DECISION BELOW IS IN NEED OF IMMEDIATE REVIEW

Congress has vested this Court with jurisdiction to review "[c]ases in the courts of appeals  * * *  [b]y writ of certiorari  * * *  *before or* after rendition of judgment or decree."  28 U.S.C. 1254(1) (emphasis added).  "An application  * * *  for a writ of certiorari to review a case before judgment has been rendered in the court of appeals may be made at any time before judgment." 28 U.S.C. 2101(e).[4]  This Court will grant certiorari before judgment "only upon a showing that the case is of such imperative public importance as to justify devia-

---

[4] By virtue of the government's notice of appeal, the district court's preliminary-injunction order is already "in the court[] of appeals" within the meaning of 28 U.S.C. 1254 and 2101(e).  See Stephen M. Shapiro et al., *Supreme Court Practice* § 2.4, at 85-86 (10th ed. 2013).  Accordingly, this petition is focused on the validity of that order.  If the court of appeals grants the government's pending petition for interlocutory appeal, however, both the January 9 and January 12 orders will be "in the court[] of appeals" in their entirety, 28 U.S.C. 1254; see 28 U.S.C. 1292(b), and could therefore be reviewed by this Court.

14

tion from normal appellate practice and to require immediate determination in this Court." Sup. Ct. R. 11. This case satisfies that standard.

An immediate grant of certiorari is necessary in order to obtain an appropriately prompt resolution of this important dispute. Absent certiorari before judgment, it is likely that even expedited proceedings in the Ninth Circuit would entail many months of delay, during which time the district-court injunction would require the government to retain in place a discretionary policy that sanctions the ongoing violation of federal law by more than half a million people. Even if the losing party were to seek certiorari immediately following the Ninth Circuit's decision, this Court would not be able to review the decision in the ordinary course until next Term at the earliest.

From the start of these suits, all parties involved have agreed that time is of the essence. Respondents, the government, and the district court alike all have repeatedly asserted that a speedy resolution is critical.[5] This Court has granted certiorari before judgment in order to promptly resolve other time-sensitive disputes, and it should follow the same course here. See, e.g., *Dames & Moore* v. *Regan*, 453 U.S. 654, 668 (1981); *United States* v. *Nixon*, 418 U.S. 683, 686-687 (1974); *Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U.S. 579, 584 (1952); cf. Stephen M. Shapiro et al., *Supreme Court Practice* § 4.20, at 287-288 (10th ed. 2013) (collecting

---

[5]  See, *e.g.*, D. Ct. Doc. 87, at 1 (Oct. 23, 2017) (district-court response to mandamus petition) (declaring that "[t]ime is of the essence"); 17-801 Regents Br. in Opp. 30 (emphasizing "the time-sensitive nature of this case"); 9/21/2017 Tr. 18 (statement of government counsel) ("We think your suggestion to get to final judgment quickly makes a lot of sense in this case.").

15

cases where "[t]he public interest in a speedy determination" warranted certiorari before judgment).

Challenges to the rescission of the DACA policy are currently pending before courts in the Second, Fourth, Ninth, Eleventh, and District of Columbia Circuits, and the plaintiffs in nearly all of them are seeking similar nationwide injunctions.  There can be no reasonable question that, as in *Texas*, this Court's review will be warranted.  The Court is already familiar with the relevant issues in light of its consideration of the *Texas* case.  Additional burdensome discovery, vast expansions of the administrative record, and privilege disputes would only burden the courts and parties without bringing any additional clarity to those issues.  And given that the Fifth Circuit's decision in *Texas* held DAPA and the DACA expansion unlawful, and (as explained below) that court's reasoning applies to DACA as well, only this Court can resolve the conflict in the lower courts and provide much-needed clarity to the government and DACA recipients alike.  See *Mistretta* v. *United States*, 488 U.S. 361, 371 (1989) (granting certiorari before judgment where constitutionality of sentencing guidelines presented question of "'imperative public importance'" and had resulted in "disarray among the Federal District Courts") (citation omitted).

## II. THE DECISION BELOW IS WRONG

Review is further warranted because the decision below is incorrect.  The Acting Secretary's decision to rescind DACA—which is simply a policy of enforcement discretion—is a classic determination that is "committed to agency discretion by law," 5 U.S.C. 701(a)(2), and therefore unreviewable under the APA.  Even if DHS's prospective denial of deferred action were reviewable, the individual respondents could not obtain such review

16

unless and until a final order of removal were entered against them.  See 8 U.S.C. 1252.  And even if it were reviewable now under the APA, the decision to rescind the DACA policy was not arbitrary and capricious.  The Acting Secretary opted to wind down DACA after reasonably concluding that the policy was likely to be struck down by courts and indeed was unlawful.

### A. The Rescission Memo Is Not Reviewable

1. a. The APA precludes review of agency actions that are "committed to agency discretion by law." 5 U.S.C. 701(a)(2).  "Over the years," this Court has interpreted that provision to apply to various types of agency decisions that "traditionally" have been regarded as unsuitable for judicial review.  *Lincoln* v. *Vigil*, 508 U.S. 182, 191 (1993).  Section 701(a)(2) precludes review, for example, of an agency's decision not to institute enforcement actions, *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985); an agency's refusal to reconsider a prior decision based on an alleged "material error," *I.C.C.* v. *Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987); and an agency's allocation of funds from a lump-sum appropriation, *Lincoln*, 508 U.S. at 192.  Such exercises of discretion, the Court has explained, often require "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise."  *Chaney*, 470 U.S. at 831.

With respect to an agency's enforcement discretion in particular, an agency may "not only assess whether a violation has occurred," but "whether agency resources are best spent on this violation or another"; whether enforcement in a particular scenario "best fits the agency's overall policies"; and whether the agency "has enough resources to undertake the action at all." *Chaney*, 470 U.S. at 831.  In addition, the Court has

17

noted that when an agency declines to enforce, it "generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Id.* at 832.   In this way and others, agency enforcement discretion "shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch." *Ibid.*

b. The Acting Secretary's decision to discontinue an existing policy of enforcement discretion falls well within the types of agency decisions that traditionally have been understood as "committed to agency discretion." Like the decision to *adopt* a policy of selective non-enforcement, the decision whether to *retain* such a policy can "involve[] a complicated balancing" of factors that are "peculiarly within the expertise" of the agency, including determining how the agency's resources are best spent and how the non-enforcement policy fits with the agency's overall policies.   *Chaney*, 470 U.S. at 831. Likewise, a decision to abandon an existing non-enforcement policy will not, in itself, bring to bear the agency's coercive power over any individual.   Indeed, an agency's decision to reverse a prior policy of civil non-enforcement is akin to changes in policy as to criminal prosecutorial discretion, which regularly occur within the U.S. Department of Justice both within and between presidential administrations, and which have never been considered amenable to judicial review.   See *United States* v. *Armstrong*, 517 U.S. 456, 464 (1996) ("[T]he decision *whether or not* to prosecute, and what charge to file or bring before a grand jury, generally

18

rests entirely in [the prosecutor's] discretion.") (emphasis added) (citation omitted).

This presumption of nonreviewability applies with particular force when it comes to immigration. On top of the general concerns implicated in any enforcement decision, in the immigration context a decision not to enforce tolerates not merely past misconduct but a "continuing violation of United States law." *Reno* v. *American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). In addition, the "dynamic nature of relations with other countries requires the Executive Branch to ensure that [immigration] enforcement policies are consistent with this Nation's foreign policy." *Arizona* v. *United States*, 567 U.S. 387, 396-397 (2012). Given these realities, the "broad discretion exercised by immigration officials" has become a "principal feature of the removal system." *Id.* at 396. In the absence of a statutory directive establishing "substantive priorities" or "otherwise circumscribing" the agency's discretion, *Chaney*, 470 U.S. at 833, the Court has found it "impossib[le]" to "devis[e] an adequate standard of review for such agency action," *Brotherhood of Locomotive Eng'rs*, 482 U.S. at 282. Respondents have not identified any such statutory directive here. To the contrary, Congress has specifically empowered the Secretary of Homeland Security to "[e]stablish[] national immigration enforcement policies and priorities." 6 U.S.C. 202(5). The revocation of an existing policy establishing such enforcement policies and priorities is therefore a decision that is "committed to agency discretion by law," 5 U.S.C. 701(a)(2), and not subject to arbitrary-and-capricious review.

19

c. The district court's reasons for rejecting that conclusion are both flatly inconsistent with this Court's precedents and unpersuasive on their own terms.

First, the district court reasoned that the rescission of the DACA policy was reviewable because it addressed "broad enforcement policies," instead of an individual enforcement decision. App., *infra*, 28a. That is irrelevant. Agency decisions about how its "resources are best spent" or how certain enforcement activity "best fits the agency's overall policies," *Chaney*, 470 U.S. at 831, are at least as susceptible to implementation through broad guidance as through case-by-case enforcement decisions. See, *e.g.*, *Wayte* v. *United States*, 470 U.S. 598, 601-603 (1985). Conversely, individual enforcement decisions are regularly informed by interpretations of the agency's substantive statute to determine "whether a violation has occurred." *Ibid.*; see *Brotherhood of Locomotive Eng'rs*, 482 U.S. at 283 ("[A] common reason for failure to prosecute an alleged criminal violation is the prosecutor's belief (sometimes publicly stated) that the law will not sustain a conviction.").

The non-enforcement decision in *Chaney* was not an individualized decision by the Food and Drug Administration (FDA) to forgo enforcement of the Federal Food, Drug, and Cosmetic Act (FDCA) against a particular alleged violator. Rather, the FDA concluded that, as a matter of the agency's discretion, it would *categorically* not enforce the FDCA's misbranding prohibition, 21 U.S.C. 352(f), against the use of certain drugs for capital punishment when those drugs had been approved by the FDA only for other medical purposes. 470 U.S. at 824-825. And, in *Lincoln*, the Indian Health Service's unreviewable decision reallocated funds from an entire regional treatment program in the Southwest

20

to other nationwide Service programs, not from an individual's treatment plan. 508 U.S. at 184, 188. The question for purposes of Section 701(a)(2) is whether the agency's decision is inherently discretionary in nature, not the number of people to whom it applies.

Second, the district court reasoned that the rescission of the DACA policy was reviewable because, rather than adopting a policy of non-enforcement, it rescinded one. App., *infra*, 29a-30a. The DACA policy, the court determined, had "become an important program for DACA recipients and their families" and others, *ibid.*, and "[a]n agency action to terminate [an existing policy] bears no resemblance to an agency decision not to regulate something never before regulated." *Id.* at 30a. That is not so. As explained above, a decision whether to retain an enforcement policy implicates all of the same considerations about agency priorities and resources that inform the decision to adopt such a policy in the first instance. In *Lincoln*, for example, the Indian Health Service had operated its regional service for seven years, providing important medical treatment to disabled Indian children on which the recipients had undoubtedly come to rely. See 508 U.S. at 185-188. But notwithstanding that reliance, because nothing in the relevant statutes constrained the Service's discretion, this Court held that the Service's decision to discontinue the program was "committed to agency discretion by law." The same is true here.

Third, the district court concluded that the Acting Secretary's decision was reviewable because it was based in substantial part on her view of the legality of the original DACA policy. App., *infra*, 30a. In the court's view, "[t]he main, if not exclusive, rationale for

21

ending DACA was its supposed illegality," and "determining illegality is a quintessential role of the courts." *Ibid.* As the court itself recognized, however, that reasoning cannot suffice: "[A] presumptively unreviewable agency action does not become reviewable simply because 'the agency gives a reviewable reason for otherwise unreviewable action.'" *Id.* at 30a n.7 (quoting *Brotherhood of Locomotive Eng'rs*, 482 U.S. at 283). Thus, in *Brotherhood of Locomotive Engineers*, the ICC's decision not to reconsider a prior decision was unreviewable, even though the agency based that denial on an interpretation of its legal obligations under the Railway Labor Act, 45 U.S.C. 151 *et seq.* 482 U.S. at 276, 283. And in *Chaney*, the FDA's decision not to enforce the misbranding prohibition did not become reviewable even though it was based, in part, on the agency's understanding of its authority to initiate such proceedings. 470 U.S. at 824.

2. At a minimum, Congress has foreclosed district courts from adjudicating collateral attacks on the Acting Secretary's discretionary enforcement decisions and policies in the manner pursued by respondents here.

a. Under 8 U.S.C. 1252, judicial review of DHS enforcement decisions is generally available, if at all, only through the review procedures of removal orders set forth in that section. In particular, Section 1252(g) states that "[e]xcept as provided in this section * * * no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this subchapter." In *AADC*, this Court explained that Section 1252(g) is "de-

22

signed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." 525 U.S. at 485.

The Acting Secretary's rescission of the DACA policy is such a "'no deferred action' decision[]," *AADC*, 525 U.S. at 485, and is an ingredient in the agency's "commence[ment] [of] proceedings" against aliens who are unlawfully in the country, 8 U.S.C. 1252(g). Thus, to the extent the rescission of the DACA policy is reviewable at all, it is reviewable only as otherwise "provided in [Section 1252]," *ibid.*—that is, through "[j]udicial review of a final order of removal," 8 U.S.C. 1252(a)(1). See, *e.g.*, *Vasquez* v. *Aviles*, 639 Fed. Appx. 898, 901 (3d Cir. 2016) (concluding that, under Section 1252(g), "[t]he District Court therefore lacked jurisdiction to consider [plaintiff's] challenge to his denial of DACA relief"); *Botezatu* v. *INS*, 195 F.3d 311, 314 (7th Cir. 1999) ("Review of refusal to grant deferred action is * * * excluded from the jurisdiction of the district court."), cert. denied, 531 U.S. 811 (2000). That conclusion is also reflected in 8 U.S.C. 1252(b)(9), which channels into the review of final removal orders all questions of fact or law arising from any action taken to remove an alien from the United States. See *AADC*, 525 U.S. at 483 (characterizing Section 1252(b)(9) as an "unmistakable 'zipper' clause").[6]

---

[6] Even in instances where the statutory text less clearly precludes review, this Court has held that, where it is fairly discernible that Congress intends a particular review scheme to be exclusive, a plaintiff is not permitted to circumvent that exclusive scheme by filing a preemptive district-court action, but must instead present its

23

The conclusion that Congress intended to foreclose collateral review of the Acting Secretary's prospective rescission of a discretionary deferred-action policy is consistent with Congress's treatment of other kinds of discretionary DHS actions.  For example, in 8 U.S.C. 1252(a)(2)(B), Congress provided that "no court shall have jurisdiction to review" judgments regarding the grant or denial of specified forms of discretionary relief—including cancellation of removal, voluntary departure, certain waivers of inadmissibility, and adjustment of status.  See 8 U.S.C. 1252(a)(2)(B)(i) (citing 8 U.S.C. 1182(h), 1182(i), 1229b, 1229c, 1255).  Congress provided a limited exception to that jurisdictional bar for "review of constitutional claims or questions of law," 8 U.S.C. 1252(a)(2)(D), but it mandated that any such review occur only "upon a petition for review [of a final order of removal] filed with an appropriate court of appeals in accordance with this section," *ibid.*  See, *e.g.*, *Green* v. *Napolitano*, 627 F.3d 1341, 1347 (10th Cir. 2010).

b. The district court concluded that Section 1252(g) does not apply because respondents challenged "the across-the-board cancellation of a nationwide program," and did so "prior to the commencement of any removal proceedings" against respondents. App., *infra*, 31a-32a.  But none of that matters.  The denial of deferred action is a step toward the commencement of removal proceedings against an alien.  Respondents cannot escape the INA's careful scheme for such proceedings simply by filing suit before the agency has officially initiated an enforcement proceeding against them.  See *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200, 207-208

---

claims or defenses through the review scheme established by Congress.  See *Elgin* v. *Department of Treasury*, 567 U.S. 1, 8-10 (2012); *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200, 207-209 (1994).

24

(1994).  Respondents' claims, "if they are reviewable at all," must be litigated in removal proceedings, not through "separate rounds of judicial intervention" in federal district court.  *AADC*, 525 U.S. at 485.

### B. The Rescission Memo Is Lawful

Even if the Acting Secretary's decision is reviewable under the APA, it is plainly valid.  Under the APA, the Acting Secretary's decision must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. 706(2)(A).  That standard of review is "narrow," *Motor Vehicles Mfrs. Ass'n* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and requires only that the "agency 'examine the relevant data and articulate a satisfactory explanation for its action,'" *FCC* v. *Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citation omitted).  "[A] court is not to substitute its judgment for that of the agency," *State Farm*, 463 U.S. at 43, and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc.* v. *Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).  The Acting Secretary's decision to begin an orderly wind-down of a policy of enforcement discretion that indisputably was not required by law—based on her grave concerns about the legality of that policy, and her knowledge that an impending lawsuit likely would have brought the policy to an immediate and disruptive end—easily passes that test.

### 1. The rescission was reasonable in light of the Fifth Circuit's decision and the impending litigation

The Acting Secretary reasonably rested her decision on her assessment of the risks presented by maintain-

25

ing a policy (original DACA) that was materially indistinguishable to ones (expanded DACA and DAPA) that had been struck down by the Fifth Circuit in a decision affirmed by this Court—and she did so in the face of the threat by Texas and other States to challenge DACA on the same grounds. That rationale alone provides a permissible reason for initiating an orderly wind-down of the policy.

a. The district court improperly rejected this rationale as a "post hoc rationalization[]" for the Acting Secretary's decision. App., *infra*, 55a. In the court's view, "[t]he Attorney General's letter and the Acting Secretary's memorandum can only be reasonably read as stating DACA was illegal and that, *given that DACA must, therefore, be ended,* the best course was 'an orderly and efficient wind-down process,' rather than a potentially harsh shutdown in the Fifth Circuit." *Id.* at 56a. But that is plainly not the only rationale that "may reasonably be discerned" from the Rescission Memo. *Bowman*, 419 U.S. at 286. In that memorandum, the Acting Secretary recounted in significant detail the litigation surrounding the DAPA and expanded DACA policies. See App., *infra*, 111a-114a. The memorandum noted that the agency's prior June 2017 decision to discontinue DAPA and expanded DACA was made after "considering the [government's] likelihood of success on the merits of th[at] ongoing litigation." *Id.* at 114a. It described the subsequent letter from Texas and other States to the Attorney General notifying him of those States' intention to amend the existing lawsuit to challenge the original DACA policy. *Ibid.* It quoted the Attorney General's statement that "it is likely that potentially imminent litigation would yield similar results with respect to DACA." *Ibid.* And it stated that, in light

26

of the foregoing, and "[i]n the exercise of [her] authority in establishing national immigration policies and priorities," the Acting Secretary had decided that the DACA policy "should" be terminated and wound down in "an efficient and orderly fashion." *Id.* at 115a; cf. 6 U.S.C. 202(5). A reasonable reading of the Rescission Memo is that the Acting Secretary's decision was informed by the risk that the government was not "likel[y]" to "succe[ed]" on the merits of the "imminent litigation." App., *infra*, 114a.

The district court also posited that litigation risk could not have been a rationale for the Acting Secretary's decision because, "once the Attorney General had determined that DACA was illegal, the Acting Secretary had to accept his ruling as 'controlling.'" App., *infra*, 56a (citing 8 U.S.C. 1103(a)(1)). But even if the Acting Secretary were bound by the Attorney General's legal determination as to DACA's unlawfulness, that is not inconsistent with the Acting Secretary's assertion of an additional, independent litigation-risk rationale for winding down the policy.

b. The Acting Secretary's rationale was eminently reasonable. In *Texas* v. *United States*, the Fifth Circuit concluded that DAPA and expanded DACA were unlawful on both procedural and substantive grounds. 809 F.3d at 178 (2015); see *id.* at 147 n.11 (including the "DACA expansions" within the opinion's references to "DAPA"). The entirety of the Fifth Circuit's reasoning applies equally to the original DACA policy. With respect to procedure, the Fifth Circuit concluded that the memorandum expanding DACA and creating DAPA was not exempt from notice and comment as a statement of policy because of how the *original DACA policy* had been implemented. See *id.* at 171-178. The court found that,

27

"[a]lthough the DAPA Memo facially purports to confer discretion," in fact it would operate as a binding statement of eligibility for deferred action because that is how the original DACA policy had been implemented. *Id*. at 171; see *id*. at 174 n.139.

As a matter of substance, the Fifth Circuit held that DAPA and expanded DACA were contrary to the INA because (1) "[i]n specific and detailed provisions," the INA already "confers eligibility for 'discretionary relief,'" including "narrow classes of aliens eligible for deferred action," 809 F.3d at 179 (citation omitted); (2) the INA's otherwise "broad grants of authority" could not reasonably be construed to assign to the Secretary the authority to create additional categories of aliens of "vast 'economic and political significance,'" *id*. at 182-183 (citations omitted); (3) DAPA and expanded DACA were inconsistent with historical deferred-action policies because they were not undertaken on a "country-specific basis * * * in response to war, civil unrest, or natural disasters" nor served as a "bridge[] from one legal status to another," *id*. at 184 (citation omitted); and (4) "Congress ha[d] repeatedly declined to enact the Development, Relief, and Education for Alien Minors Act ('DREAM Act'), features of which closely resemble DACA and DAPA." *Id*. at 185 (footnote omitted). Every one of those factors also applies to the original DACA policy.

c. The district court here nevertheless faulted the Acting Secretary for failing to address perceived distinctions between DACA and the DAPA and expanded DACA policies. App., *infra*, 57a-58a; see *id*. at 51a-54a. It is true enough that the Fifth Circuit noted that "any extrapolation from DACA [to DAPA] must be done carefully." *Texas*, 809 F.3d at 173. The differences it

28

noted, however, were reasons why DAPA might be law-
ful even if DACA were not, rather than the other way
around.  See *id.* at 174 (noting that the "DAPA Memo
contain[ed] additional discretionary criteria").  And, in
any event, the Fifth Circuit went on to affirm, "under
any standard of review," the district court's comparison
of the policies.  *Id.* at 174 n.139.

The district court suggested that DAPA might have
been more vulnerable to challenge because "Congress
had already established a pathway to lawful presence for
alien parents of citizens," while "no such analogue" exists
for DACA recipients.  App., *infra*, 54a.  That reasoning
is entirely backward.  If Congress's creation of pathways
to lawful presence is relevant at all, then the fact that
Congress has done so only for DAPA recipients—and not
DACA recipients—surely must render DACA *more* in-
consistent with the INA.  In any event, the basis of the
Fifth Circuit's *Texas* decision was not the existence of a
particular statutory pathway to lawful presence, but the
"specific and intricate provisions" of the INA as a whole
addressing discretionary relief.  809 F.3d at 186.  Those
provisions no more include DACA recipients than those
of DAPA.  As confirmation of that fact, the Fifth Circuit
also affirmed the injunction with respect to expanded
DACA—which differed from the original DACA policy
only in the length of the deferred-action period and in its
modified age and duration-of-residence requirements.

The district court also reasoned that DACA might be
distinguishable from DAPA because 689,800 aliens are
recipients of DACA, whereas 4.3 million aliens poten-
tially qualified for DAPA.  App., *infra*, 54a.  But what-
ever the ultimate number of individuals that might be
affected, there can be no debate that DACA is, like
DAPA and expanded DACA, a policy of "vast 'economic

29

and political significance,'" to which the Fifth Circuit's reasoning would apply. *Texas*, 809 F.3d at 183 (citations omitted). By contrast, the type of historical deferred-action practices that the Fifth Circuit suggested might be permissible were much more "limited in time and extent, affecting only a few thousand aliens for months or, at most, a few years." *Id.* at 185 n.197. The Acting Secretary did not act arbitrarily in failing to credit a distinction between DACA and DAPA that the Fifth Circuit had expressly rejected.

Finally, the district court erred in suggesting that, whether or not the original DACA policy was unlawful as it had been implemented, it could have been fixed "by simply insisting on exercise of discretion" in individual cases. App., *infra*, 54a. The Fifth Circuit relied on the lack of individual discretion only for its conclusion that the DAPA Memorandum was *procedurally* unlawful, not substantively so. Thus, even if the Acting Secretary could have altered the DACA policy sufficiently to overcome that concern, there is no indication that it would have changed the Fifth Circuit's substantive conclusion— at least unless the change were so drastic as to return to a practice of "single, ad hoc grants of deferred action made on a genuinely case-by-case basis," *Texas*, 809 F.3d at 186 n.202, which is precisely what the rescission of the DACA policy achieves.[7]

---

[7] Nor did the Acting Secretary "fail[] to consider an important aspect of the problem," *State Farm*, 463 U.S. at 43, by not discussing the possibility of defending DACA on the basis of laches. App., *infra*, 57a. That doctrine may provide a defense in an APA action against the government where a plaintiff's unreasonable delay in bringing suit prejudiced the government. See *Abbott Laboratories* v. *Gardner*, 387 U.S. 136, 155 (1967). The district court did not explain what prejudice the government might have established from Texas's failure to bring suit earlier.

30

d. The district court also ruled that the Acting Secretary's decision was arbitrary and capricious because she "should have—but did not—weigh DACA's programmatic objectives as well as the reliance interests of DACA recipients." App., *infra*, 58a. By its own terms, however, DACA made deferred action available for only two-year periods, which could "be terminated at any time at the agency's discretion." *Id.* at 102a. When he announced DACA in 2012, President Obama explained that it was a "temporary stopgap measure," not a "permanent fix." The White House, *Remarks by the President on Immigration* (June 15, 2012), https://go.usa.gov/xnZFY. And he urged Congress to act "because these kids deserve to plan their lives in more than two-year increments." *Ibid.* Even assuming DACA was lawful, a discretionary policy that can be revoked at any time cannot create legally cognizable reliance interests —and certainly not beyond the stated duration (generally two years) of deferred-action grants. Nothing in the INA prevents the Secretary of Homeland Security from changing her "national immigration enforcement policies and priorities." 6 U.S.C. 202(5).[8]

---

[8] In any event, the Acting Secretary's decision was respectful of the interests of existing DACA recipients. Based on her reasonable evaluation of the litigation risk posed by the imminent lawsuit against the DACA policy, the choice she faced was between a gradual, orderly, and administrative wind-down of the policy, and the risk of an immediate, disruptive, and court-imposed one. Her decision to phase out the policy over a two-and-a-half-year period, permitting a period of additional renewals and permitting renewed and existing grants of deferred action to expire by their terms was, by far, the more humane choice.

31

### 2. The rescission was reasonable in light of the Acting Secretary's determination that DACA is unlawful

The Acting Secretary's decision is independently supported by her reasonable conclusion, informed by the Attorney General's advice, that indefinitely continuing the DACA policy would itself have been unlawful. As detailed above, the Fifth Circuit had already concluded that the DAPA and expanded DACA policies were procedurally and substantively invalid in a decision that four Justices of this Court voted to affirm. See pp. 26-27, *supra*. The Attorney General expressed his agreement with the conclusion reached by the Fifth Circuit in a decision that applies equally to the original DACA policy. See App., *infra*, 114a (concluding that the DACA policy was "effectuated * * * without proper statutory authority and with no established end-date, after Congress' repeated rejection of proposed legislation that would have accomplished a similar result"). It cannot be that the Acting Secretary's decision to rescind DACA on the basis of the Fifth Circuit's decision, this Court's equally divided affirmance, and the Attorney General's opinion was the type of "clear error of judgment," *State Farm*, 463 U.S. at 43 (citation omitted), that would make it arbitrary and capricious under the APA.

The district court concluded that the Acting Secretary could not rely on an assessment of DACA's legality unless it was correct as a matter of law. See App., *infra*, 42a ("When agency action is based on a flawed legal premise, it may be set aside as 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (citing *Massachusetts* v. *EPA*, 549 U.S. 497, 532 (2007)). Relying on the Secretary's broad discretion in

32

"[e]stablishing national immigration enforcement policies and priorities," 6 U.S.C. 202(5), and DHS's "long and recognized practice" of granting deferred action (along with work authorization and other benefits) on a programmatic basis, the court concluded that, in its view, DACA was lawful. App., *infra*, 45a; see *id.* at 42a-48a. But the Fifth Circuit rejected those precise considerations when offered in support of the DAPA and expanded DACA policies. See *Texas*, 809 F.3d at 183.

More fundamentally, the district court was wrong to conclude that the Acting Secretary's discretionary decision to end a particular enforcement policy of doubtful legality must automatically be set aside if a court subsequently decides that the policy was lawful. App., *infra*, 42a. The court relied on this Court's decision in *Massachusetts* v. *EPA*, *supra*, for that proposition. But in that case a provision of the Clean Air Act spoke directly to the agency decision at issue, and *required* EPA to regulate any air pollutant which the agency concluded endangered public health or welfare. See 42 U.S.C. 7521(a)(1) (mandating that the EPA Administrator "shall" prescribe standards). The agency had "refused to comply with this clear statutory command" in part because it misunderstood its authority. 549 U.S. at 533. By contrast here, no one contends that the INA requires DHS to continue the DACA policy of deferred action. Rather, the DACA policy was created as a matter of the Acting Secretary's broad discretion to set enforcement priorities. After careful review, she determined to rescind that discretionary policy, and nothing in either the APA or INA demands setting aside her lawful determination.[9]

---

[9] The district court also erred in enjoining the rescission of DACA on a "nationwide basis." App., *infra*, 66a. As the government has

33

## CONCLUSION

The petition for a writ of certiorari before judgment should be granted.

Respectfully submitted.

> Noel J. Francisco
> *Solicitor General*
> Chad A. Readler
> *Acting Assistant Attorney*
> *General*
> Jeffrey B. Wall
> *Deputy Solicitor General*
> Hashim M. Mooppan
> *Deputy Assistant Attorney*
> *General*
> Jonathan Y. Ellis
> *Assistant to the Solicitor*
> *General*
> Mark B. Stern
> Abby C. Wright
> Thomas Pulham
> *Attorneys*

January 2018

---

explained in its pending petition for a writ of certiorari in *Trump* v. *Hawaii*, No. 17-965 (filed Jan. 5, 2018), both constitutional and equitable principles require that injunctive relief be limited to a plaintiff's own cognizable injuries.  See *Lewis* v. *Casey*, 518 U.S. 343, 357 (1996); *Madsen* v. *Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).  The district court's injunction contravenes that settled rule by sweeping far more broadly than redressing the harms of the specific respondents in this case.

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

MARTÍN JONATHAN BATALLA VIDAL et al.,

                           Plaintiffs,

        -against-

KIRSTJEN M. NIELSEN, Secretary, Department of
Homeland Security, et al.,

                           Defendants.
-------------------------------------------------------------------------X

**ORDER**

**16-CV-4756 (NGG) (JO)**

STATE OF NEW YORK et al.,

                           Plaintiffs,

        -against-

DONALD TRUMP, President of the United States, et al.,

                           Defendants.
-------------------------------------------------------------------------X

**ORDER**

**17-CV-5228 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Defendants move to certify for interlocutory appeal the court's March 29, 2018

Memorandum and Order (the "March 29 M&O"), which granted in part and denied in part

Defendants' motions to dismiss the above-captioned suits for failure to state a claim.  (Mar. 29

M&O (Dkt. 260);[1] Defs. Mot. for Leave to Appeal ("Defs. Mot.") (Dkt. 264); Defs. Mem. in

Supp. of Mot. ("Defs. Mem.") (Dkt. 264-1).)  Plaintiffs in <u>Batalla Vidal v. Nielsen</u> oppose this

motion; Plaintiffs in <u>New York v. Trump</u> take no position on it.  (Pls. Resp. in Opp'n to Defs.

---

[1] Except as otherwise noted, all record citations refer to the docket in <u>Batalla Vidal v. Nielsen</u>, No. 16-CV-4756
(E.D.N.Y.).

1

Mot. ("BV Pls. Opp'n") (Dkt. 265); Defs. Ltr. Re: Defs. Mot. (Dkt. 266).) For the reasons that follow, the motion is GRANTED.

As the court previously explained when certifying its November 9, 2017, Memorandum and Order for interlocutory appeal (see Jan. 8, 2018, Mem. & Order (Dkt. 233)), a district court may certify a non-final order in civil case for interlocutory appeal, so long as the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . and immediate appeal from the order may materially advance the termination of the litigation." 28 U.S.C. § 1292(b). If the court identifies one "controlling question of law as to which there is substantial ground for difference of opinion," it may certify the entire order for appeal. City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 391-92 (2d Cir. 2008).

The court agrees with Defendants that the March 29 M&O presents a controlling question of law as to whether Plaintiffs may use the President's campaign-trail statements to show that the rescission of the Deferred Action for Childhood Arrivals ("DACA") program was substantially motivated by racial animus. (See Defs. Mem. at 4.) Plaintiffs' equal-protection claims rely heavily on allegations that, while on the campaign trail, now-President Trump made derogatory statements about Latinos in general and Mexican immigrants in particular. (See Mar. 29 M&O at 17.) The court concluded that it could consider these statements in deciding whether Plaintiffs had stated plausible equal-protection claims. (Id. at 16-21.) If, however, the court were required to disregard these pre-Inauguration statements, it would likely (although not certainly) dismiss Plaintiffs' equal-protection claims, as Plaintiffs have not alleged that the President made comparably inflammatory and offensive statements about Latinos and especially Mexicans and Mexican-Americans after taking office. Dismissal of these claims would also substantially narrow the scope of discovery that Plaintiffs seek. (Cf. Defs. Mem. at 9.) Accordingly, reversal

2

of the court's conclusion that it could consider campaign-trail statements in assessing the viability of Plaintiffs' equal-protection claims would "significantly affect the conduct of the[se] action[s]," which is all that is required for this issue to be "controlling" for purposes of § 1292(b). SEC v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000); see Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc., 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."); Chem. Bank v. Slaner (In re The Duplan Corp.), 591 F.2d 139, 148 n.11 (2d Cir. 1978).

The court also agrees with Defendants that "there is substantial ground for difference of opinion" on this issue. An order furnishes "substantial ground for difference of opinion" when it presents issues that are "difficult and of first impression." Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990). The question of whether presidential campaign-trail statements may be used to show that official action was tainted by forbidden motives is one that has divided courts in the last year and a half and that has not been squarely addressed by the Second Circuit. District courts have split over whether the President's campaign-trail statements support the plausible inference that the rescission of the DACA program was motivated by unlawful discriminatory animus. Compare Mar. 29 M&O at 16-21 (yes), and Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec., — F. Supp. 3d —, 2018 WL 401177, at *6-7 (N.D. Cal. 2018) (yes), with CASA de Maryland v. U.S. Dep't of Homeland Sec., 284 F. Supp. 3d 758, 774-75 (D. Md. 2018) (no).

Similarly, in litigation over the Administration's "travel ban," in its various incarnations, several courts have considered the President's campaign-trail statements (such as his call "for a

3

total and complete shutdown of Muslims entering the United States")[2] in deciding whether the travel ban may have violated the Establishment Clause of the First Amendment to the U.S. Constitution. See, e.g., Int'l Refugee Assistance Proj. v. Trump, 857 F.3d 554, 594 (4th Cir. 2017) (en banc) ("IRAP I"), vacated as moot, 138 S. Ct. 353 (2017); Int'l Refugee Assistance Proj. v. Trump, 265 F. Supp. 3d 570, 617 (D. Md. 2017), aff'd, Int'l Refugee Assistance Proj. v. Trump, 883 F.3d 233 (4th Cir. 2018) (en banc) ("IRAP II"), pet. for cert. filed, No. 17-1194 (U.S. Feb. 23, 2018); Hawai'i v. Trump, 245 F. Supp. 3d 1227, 1235-36 (D. Haw.), aff'd in part, vacated in part, and remanded, 859 F.3d 741 (9th Cir. 2017), vacated and remanded, 138 S. Ct. 377; Int'l Refugee Assistance Proj. v. Trump, 241 F. Supp. 3d 539, 547, 557-61 (D. Md. 2017), aff'd in relevant part and vacated in part, IRAP I, 857 F.3d at 554; Aziz v. Trump, 234 F. Supp. 3d 724, 734-35 (E.D. Va. 2017); cf. IRAP II, 883 F.3d at 266 (declining to consider pre-Inauguration statements in light of post-Inauguration evidence that the travel ban was motivated by impermissible anti-religious purpose).

Other judges have argued, however, that courts cannot or should not consider pre-Inauguration statements as evidence of the true motives behind official action. See IRAP II, 883 F.3d at 373-74 (Niemeyer, J., dissenting); Washington v. Trump, 858 F.3d 1168, 1173-74 (9th Cir. 2017) (Kozinski, J., dissenting from the denial of reconsid. en banc). Indeed, the Government has staked out such a position before the Supreme Court, arguing that "campaign statements are made by a private citizen before he takes the oath of office and before, under the Opinions Clause of the Constitution, [he] receives the advice of his cabinet, and that those are constitutionally significant acts that mark the fundamental transformation from being a private

---

[2] Donald J. Trump for President, Press Release, Donald J. Trump Statement on Preventing Muslim Immigration (Dec. 7, 2015). This statement, which appears to have been deleted from the campaign website, is cached at https://web.archive.org/web/20151207230751/https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration.

citizen to the embodiment of the [E]xecutive [B]ranch." Tr. of Oral Argument 27:24-29:3, Trump v. Hawaii, No. 17-965 (U.S. argued Apr. 25, 2018); see also Br. of the United States at 66-67, Trump v. Hawaii, No. 17-965 (U.S. filed Feb. 21, 2018). That the court finds these arguments ultimately unpersuasive (see M&O at 19) does not mean that there is not substantial ground for disagreement on this issue.

Third, the court agrees with Defendants that resolution of this issue would materially advance the ultimate termination of this litigation. As noted above, excluding the President's campaign statements from consideration would likely result in the dismissal of Plaintiffs' equal-protection claims and the concomitant narrowing of discovery. See Credit Bancorp, 103 F. Supp. 2d at 227 (noting that the questions of whether there is a controlling issue of law and whether certification would materially advance the ultimate termination of the litigation are "closely connected" in practice); Zygmuntowicz v. Hosp. Investments, Inc., 828 F. Supp. 346, 353 (E.D. Pa. 1993) (stating that the ultimate termination of litigation is materially advanced if interlocutory appeal would, among other things, "eliminate issues thus making discovery much easier and less costly"). Additionally, appeals from this court's orders denying Defendants' motion to dismiss for lack of subject-matter jurisdiction (Mem. & Order (Dkt. 104)) and granting Plaintiffs' motions for a preliminary injunction (Am. Mem. & Order (Dkt. 255)) are already pending before the Second Circuit, and the issues decided in the preliminary injunction order overlap in part with those decided in the order certified here. See Vidal v. Nielsen, No. 18-485 (2d Cir. filed Feb. 20, 2018) (preliminary injunction); New York v. Trump, No. 18-488 (2d Cir. filed Feb. 20, 2018) (same); Nielsen v. Vidal, No. 18-122 (2d Cir. filed Jan. 16, 2018) (Rule 12(b)(1) motion); Trump v. New York, No. 18-123 (2d Cir. filed Jan. 16, 2018) (same). Allowing Defendants to present all these issues simultaneously on appeal to the Second Circuit

5

thus may serve the interests of judicial economy and facilitate the expeditious resolution of this litigation.

The <u>Batalla Vidal</u> Plaintiffs contend that the court should not certify the March 29 M&O for interlocutory appeal because the legal issue identified by Defendants is not "controlling" and because resolution of that issue would not materially advance this litigation's termination. (See BV Pls. Opp'n.) In their view, even if the Second Circuit were to decide that this court should not consider the President's campaign-trail statements when assessing Plaintiffs' equal-protection claims, Plaintiffs could simply replead their complaints to rely exclusively on post-Inauguration statements and other factual allegations supporting the conclusion that the DACA rescission was the product of improper discriminatory animus. (<u>Id.</u> at 2-6.) In support of these arguments, the <u>Batalla Vidal</u> Plaintiffs rely heavily on <u>Gottesman v. General Motors Corp.</u>, 268 F.3d 194 (2d Cir. 1959), in which the Second Circuit stated that "[i]t would seem axiomatic that appeals challenging pre-trial rulings upholding pleadings against demurrer could not be effective in bringing nearer the termination of litigation," as such a ruling on appeal could "only stimulate the parties to more and greater pre-trial sparring . . . apart from the merits" and, at best, "lead to a remand for repleading, with possibilities of further interlocutory appeals thereafter." <u>Id.</u> at 196.

The court does not read <u>Gottesman</u> to stand for the proposition that district courts should not certify orders denying motions to dismiss for failure to state a claim. To the contrary, district courts routinely certify, and the Second Circuit routinely accepts, appeals from such orders under § 1292(b). <u>See, e.g.</u>, <u>Joseph v. Athanasopolulos</u>, 648 F.3d 58, 61 (2d Cir. 2011); <u>Bensman v. Whitman</u>, 523 F.3d 119, 123 (2d Cir. 2008); <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 456 F. Supp. 2d 457, 467-68 (S.D.N.Y. 2006), <u>aff'd in part and rev'd in part</u>, 621 F.3d 111 (2d Cir. 2010), <u>aff'd</u>, 569 U.S. 108 (2013). It is true that an order denying a motion to dismiss does not

6

necessarily warrant § 1292(b) certification. For example, an order denying a motion to dismiss on the grounds that the factual allegations in a complaint are insufficient, under well-established law, to state a claim ordinarily would not present a controlling question of law the resolution of which would materially advance the termination of the litigation. Where, however, the grounds for dismissing pleadings can be restated as a broader legal question that is likely to be dispositive of the case at hand, certification of an interlocutory appeal may be appropriate. See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 7 F. Supp. 2d 294, 296-97 (S.D.N.Y. 1998).

Finally, at the risk of stating the obvious, the court notes that these are not ordinary cases. Plaintiffs challenge a major change of nationwide immigration policy by the Executive Branch. In so doing, they claim that this change was substantially motivated by the President's alleged discriminatory bias. In these circumstances, the court has little difficulty concluding that its March 29 M&O not only "satisfies [the § 1292(b)] criteria," but also "'involves a new legal question [and] is of special consequence.'" Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106-07 (2009)). Accordingly, the court does "not hesitate to certify an interlocutory appeal." Id. (internal quotation marks and citation omitted).

For the reasons stated above, Defendants' motion to certify the court's March 29 M&O for interlocutory appeal (Dkt. 264 in No. 16-CV-4756; Dkt. 217 in No. 17-CV-5228) is granted.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      April **3o**, 2018

NICHOLAS G. GARAUFIS
United States District Judge

7

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CASA DE MARYLAND,** *et al.* | * | |
| *Plaintiffs* | * | |
| v. | * | Civil No. RWT-17-2942 |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.* | * | |
| | * | |
| *Defendants* | *** | |

<u>**AMENDED ORDER**</u>

It is, for the reasons stated in the March 5, 2018 Memorandum Opinion [ECF No. 42] and today's accompanying Memorandum, this 15th day of March, 2018, by the United States District Court for the District of Maryland,

**ORDERED**, that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [ECF No. 27] is hereby **GRANTED-IN-PART** and **DENIED-IN-PART**; and it is further

**ORDERED**, that Summary Judgment is hereby **GRANTED** in favor of Plaintiffs only with regard to their estoppel claim as it pertains to DACA's information-sharing policy; and it is further

**ORDERED**, that the Department of Homeland Security ("DHS") and U.S. Citizenship and Immigration Services ("USCIS") are **ENJOINED** to comply with the policy, first announced in 2012 (and as set forth in the response to archived USCIS DACA FAQ No. 19 and the Form I-821D instructions and policies referenced therein) (collectively, the "Policy") restricting the use or sharing of information provided by DACA requestors; except that (1) the language in the Policy specifying that it "may be modified, superseded, or rescinded at any time

without notice" is hereby **ENJOINED** pending further order of this Court or relief on appeal;

and (2) any requests for deviation from this Order **SHALL BE SUBMITTED** on a case-by-case

basis to this Court for **IN-CAMERA REVIEW**; and it is further

      **ORDERED**, that Summary Judgment is hereby **GRANTED** in favor of Defendants with

regard to all other claims; and it is further

      **ORDERED**, that the Court **ADJUDGES AND DECLARES** that the DACA Rescission

Memo is valid and constitutional in all respects; and it is further

      **ORDERED**, that the Clerk of this Court is hereby directed to **CLOSE** this case.


                                         /s/
                                 ROGER W. TITUS
                        UNITED STATES DISTRICT JUDGE

2

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24555-CV-UNGARO/O'SULLIVAN

DIEGO DIAZ,

      Plaintiff,

v.

DEPARTMENT OF HOMELAND
SECURITY; and KIRSTJEN
NIELSEN in her official capacity as
Secretary of Homeland Security,

      Defendants.

_____/

## ORDER

THIS MATTER came before the Court on the Plaintiff's Motion for Temporary

Restraining Order and/or Preliminary Injunction (DE# 4, 12/19/17). Having reviewed the

applicable filings and the law and having held a status hearing on December 20, 2017, it is

ORDERED AND ADJUDGED that the plaintiff's request for a temporary restraining

order is **DENIED**. The plaintiff has failed to file an affidavit or a verified complaint as

required by Fed. R. Civ. P. 65(b)(1). It is further

ORDERED AND ADJUDGED that the government shall file a response to the

plaintiff's request for a preliminary injunction by **Friday, January 26, 2018**. The plaintiff may

file a reply no later than **Monday, February 12, 2018**. If the plaintiff wishes to have an

evidentiary hearing on the instant motion, the plaintiff shall file a notice with the Court at the

time of filing his reply brief.

DONE AND ORDERED, in Chambers, at Miami, Florida this **20th** day of

December, 2017.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Ungaro
All counsel of record

67

# EXHIBIT 8

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:17-cv-24555-UU

DIEGO DIAZ,

      Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY,
*et al.*,

      Defendants.

_____/

## <u>ORDER ON MOTION TO STAY CASE</u>

THIS CAUSE is before the Court upon the parties' Joint Motion to Stay All Proceedings and to Amend Briefing Schedule, D.E. 19, filed January 23, 2018.

THE COURT has reviewed the pertinent portions of the record and is otherwise fully advised in the premises. Plaintiff filed this action on December 17, 2017, challenging the September 5, 2017 decision to wind down the Deferred Action for Childhood Arrivals ("DACA") policy on Fifth Amendment, Administrative Procedure Act, and Regulatory Flexibility Act grounds, among others. D.E. 1. On December 19, 2017, Plaintiff moved for a temporary restraining order and preliminary injunction to enjoin the Defendant from rescinding DACA pending adjudication on the merits. D.E. 4. The temporary restraining order was denied for failure to file an affidavit as required by Federal Rule of Civil Procedure 65, but the Defendant was ordered to respond to Plaintiff's request for a preliminary injunction by Friday, January 26, 2018. D.E. 11.

In response, the Parties filed the instant Motion seeking a stay of all proceedings in this matter based on a nationwide injunction on the termination of DACA issued in a case with parallel legal theories by the United States District Court for the Northern District of California.

*Regents of Univ. of Cal. v. DHS*, No. 17-5211-WHA, 2018 WL 339144, at *27-28 (N.D. Cal. Jan. 9, 2018). While Defendants are appealing the decision, they "do not seek a stay of the order pending appeal." D.E. 19 ¶ 7. The Parties also note that as a result of this decision, the United States Citizenship and Immigration Service has resumed accepting DACA renewal requests and issued public guidance on the renewal process. *Id.* Lastly, the Parties contend that ongoing legislative discussion may make the current proceedings moot or narrow the issues involved in the current legislation. *Id.* ¶ 8.

While the decision of a court in another circuit is not binding on this court, it is persuasive authority. Further, the law is well settled that federal district courts have the inherent power to stay proceedings in one suit until a decision is rendered in another. See *Landis v. North Am. Co*., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Gov't. of the Virgin Islands v. Neadle*, 861 F.Supp. 1054 (M.D.Fla. 1994) Given: (1) that this case is "one of twelve such cases pending in district courts across the country…." *Id.* ¶ 1; (2) that Plaintiff's DACA protections terminate on June 25, 2019, *Id.* ¶ 2; (3) that there is ongoing legislative discussion regarding DACA and its future; and (4) and that the *Regents* order provides a preliminary injunction of the type sought here, which the Parties agree creates "no significant urgency or time-sensitivity to resolution of the *Diaz* matter," so long as it remains in effect, *Id.* ¶ 10, the Court will grant the Motion to stay, until the *Regents* preliminary injunction is lifted or new legislation requires reconsideration of the case. Accordingly it is

ORDERED AND ADJUDGED that the Motion, D.E. 19, is GRANTED as follows:

(1) This case is HEREBY STAYED until the preliminary injunction ordered in *Regents of Univ. of Cal. v. DHS*, No. 17-5211-WHA, 2018 WL 339144, at *27-28 (N.D. Cal. Jan. 9, 2018) is lifted or until appeal or new legislation requires reconsideration of the case;

(2) Defendants SHALL promptly notify the Court and the Plaintiff if the *Regents* preliminary injunction is lifted and the Parties SHALL move to reopen the case, if necessary;

(3) The Parties SHALL file status updates every thirty (30) days from the date of this order or immediately upon a modification of the *Regents* order or the lifting of the stay;

(4) The Clerk of Court SHALL administratively close this case. All future hearings are CANCELLED and given that relief has effectively been granted by the United States District Court for the Northern District of California, all pending motions are DENIED WITHOUT PREJUDICE to be refiled, if necessary.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of January, 2018.

UNITED STATES DISTRICT JUDGE

copies provided: counsel of record

# EXHIBIT 9

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| NURIMARO PARK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:17cv1332 |
| | ) | |
| JEFFERSON B. SESSIONS III, | ) | |
| Attorney General of the United | ) | |
| States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT STIPULATION OF DISMISSAL

Pursuant to Federal Rule of Civil Procedure 41(a), all parties to the above-captioned action hereby jointly stipulate to the dismissal of this action, with all parties to bear their own costs and attorneys' fees.

///

///

So ordered
3/1/18

_____
Anthony J. Trenga
United States District Judge

Respectfully submitted,

TRACY DOHERTY-McCORMICK
Acting United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Director, Federal Programs Branch

    /s/                                                                        /s/

SIMON SANDOVAL-MOSHENBERG                     DENNIS C. BARGHAAN, JR.
Legal Aid Justice Center                                  Deputy Chief, Civil Division
6066 Leesburg Pike, Suite 520                        Assistant U.S. Attorney
Falls Church, Virginia 22041                         2100 Jamieson Avenue
Telephone: (703) 720-5605                           Alexandria, Virginia 22314
Fax: (703) 778-3454                                     Telephone: (703) 299-3891
Email: simon@justice4all.org                      Fax:     (703) 299-3983
                                                           Email: dennis.barghaan@usdoj.gov

ATTORNEYS FOR PLAINTIFFS                      BRAD P. ROSENBERG
                                                             Senior Trial Counsel
Date: March 1, 2018                                     KATE BAILEY
                                                             Trial Attorney
                                                             United States Department of Justice
                                                             Civil Division, Federal Programs Branch

                                                   ATTORNEYS FOR DEFENDANTS

                                                   Date: March 1, 2018