IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:18-CV-68 |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| KARLA PEREZ, *et al.*, | ) |
| | ) |
| Defendant-Intervenors, | ) |
| and | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| Proposed Defendant-Intervenor. | ) |
| | ) |

**PROPOSED DEFENDANT-INTERVENOR STATE OF NEW JERSEY'S
REPLY IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE**

In its Motion to Intervene, Proposed Defendant-Intervenor State of New Jersey demonstrated that it should be permitted to intervene as of right because its application is timely, it has a substantial interest in the subject matter of this litigation, its interests would be seriously impaired by Plaintiffs' requested relief, and neither the individual DACA grantee Defendant-Intervenors nor the United States can adequately represent New Jersey's proprietary, sovereign, and quasi-sovereign interests in this case. Plaintiffs do not dispute the first three requirements, and thus concede that New Jersey's motion to intervene is timely, New Jersey has a substantial interest in the subject matter of this case, and that interest could be seriously impaired if intervention is denied. *See* Dkt. 60 at 2 (disputing only the fourth element). Plaintiffs also do not dispute that New Jersey's interests cannot be adequately represented by the United States, which

1


has now explained that it "agrees with the State of Texas and other Plaintiffs that the policy known as Deferred Action for Childhood Arrivals (DACA) is unlawful." Dkt. 71 at 1. Thus, without any intervening defendants, this case would lack an "'honest and actual antagonistic assertion of rights' to be adjudicated—a safeguard essential to the integrity of the judicial process." *United States v. Johnson*, 319 U.S. 302, 305 (1943) (quoting *Chicago & G. T. R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)).

Yet Plaintiffs assert that New Jersey's Motion to Intervene should be denied because New Jersey's proprietary, sovereign and quasi-sovereign interests in this litigation will be adequately represented by the individual DACA grantees who have already been granted leave to intervene. Dkt. 60 at 1-2. And the United States spends one page asserting that New Jersey does not have a "concrete, personalized, and legally protectable" interest at all. Dkt. 61 at 5-6. Both oppositions only highlight why New Jersey should be permitted to intervene as of right, or, in the alternative, should be granted permission to intervene in this case.

I. **NEW JERSEY IS ENTITLED TO INTERVENE AS OF RIGHT.**

Neither the Plaintiffs nor the Federal Defendants challenge the Fifth Circuit's repeated holding that under either Rule 24(a) or (b), "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994)); *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 270 (5th Cir. 1977) ("With little strain on the court's time and no prejudice to the litigants, the controversy can be stilled and justice completely done if the appellants are granted permission to intervene." (internal quotation marks omitted)). They do not question that Rule 24 is "liberally construed" in favor of intervention, *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014), and "doubts [are] resolved in favor of the

proposed intervenor," *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009). And they do not disagree that intervention as of right "must be measured by a practical rather than a technical yardstick." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc). With those principles in mind, New Jersey's motion to intervene is especially easily resolved.

### A. New Jersey Has a Substantial Interest in the Subject Matter of this Litigation.

The Federal Defendants spend one page arguing that New Jersey has no interest in the subject matter of this litigation because "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government" on behalf of its citizens. Dkt. 61 at 5. But the Federal Defendants do not explain how, even if that were true, it would be relevant here. As an initial matter, "an interest is sufficient" for purposes of a motion to intervene even if the intervenor "would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659. And here, New Jersey has not brought any action against the Federal Government—it has moved to intervene as a defendant in a lawsuit naming the Federal Government as a defendant. The Federal Defendants also do not explain the relevance of their assertion that "[t]he unavoidable reality that the enforcement of the immigration laws will inevitably have some derivative effects on a State or its residents does not give it carte blanche to join in litigation to challenge those enforcement decisions." Dkt. 61 at 6. First, that statement is entirely unsupported. And second, New Jersey does not seek to join this litigation in order to challenge any enforcement decision—it seeks to join this litigation in order to defend an enforcement decision that the Federal Government made in 2012.

More importantly, the Federal Defendants completely ignore New Jersey's explanation that terminating DACA would harm New Jersey's proprietary interests in protecting state agencies that employ DACA grantees; maintaining strong public colleges and universities, where

3

DACA students are vital members of the student community, valued employees and pay significant sums in tuition; and protecting its state treasury, which stands to lose an estimated $18.7 million per year in taxes if DACA is terminated. Dkt 42 at 9-13. The Federal Defendants also ignore New Jersey's sovereign interest in enforcing its criminal laws, which would be harmed if DACA is terminated because former DACA grantees will be less likely to report crimes they witness or engage with the police to protect public safety. Dkt. 42 at 16. This more than suffices to demonstrate that New Jersey has a substantial interest in the subject matter of this litigation—an inquiry that "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657. Plaintiff States correctly do not contend otherwise.

> **B.    Individual DACA Grantees Cannot Adequately Represent New Jersey's Proprietary, Sovereign or Quasi-Sovereign Interests.**

Unlike the Federal Defendants, Plaintiff States rely solely on their contention that New Jersey's proprietary, sovereign and quasi-sovereign interests can be adequately represented in this case by individual DACA grantees who share none of those interests. That is both legally and factually incorrect.

Neither Plaintiff States nor the Federal Defendants contest that, to satisfy Rule 24, New Jersey must show only that "representation of [it's] interest '*may be*' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added). In *Trbovich*, the Supreme Court held that a union member had the right to intervene in an action brought by the Secretary of Labor because there was "sufficient doubt about the adequacy of representation," where the Secretary was charged with representing the union member against his union, the union member and the Secretary shared an interest in assuring "free and democratic union elections," but the union

4

member "may have a valid complaint about the performance of [the Secretary as] 'his lawyer.'" *Id.* at 538-39.

Here, New Jersey and the individual DACA grantees do not have the same interests at stake—in fact, there is no overlap between the protectable interests at all. The individual DACA recipients have an interest in (1) "receiving deferred action … so that they may legally remain in the United States"; (2) "the employment opportunities" that are available to them with deferred action; and (3) "directing the upbringing of their United States-citizen children." Dkt. 14 at 11-12 (internal quotation marks omitted). New Jersey shares none of those interests. Instead, New Jersey has a propriety interest in protecting state agencies that employ DACA grantees; maintaining strong public colleges and universities, where DACA students are vital members of the student community, valued employees, and pay significant sums in tuition; and protecting its state treasury, which stands to lose millions in tax revenue and spend additional sums in health care costs if DACA is terminated. Dkt 42. at 9-13. New Jersey also has a sovereign interest in enforcing its criminal laws and protecting its residents from forced separation and financial instability. Dkt. 42 at 16.

The Plaintiff States and Federal Defendants claim that even despite these very different interests, New Jersey cannot overcome the "presumption of adequacy" because it shares the same "ultimate objective" as the individual DACA grantees—"defend DACA and oppose any halt to the program." Dkt. 60 at 3; *see also* Dkt. 61 at 4. That is incorrect. Even if the proposed intervenor and a party "agree[] on the merits of the substantive issues to be litigated … an applicant for intervention … has only a minimal burden as to inadequate representation. All he needs to show is that representation by the existing parties *may* be inadequate." *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002) (emphasis added). It is

enough to meet the applicant's burden "[t]hat the [applicant's] interests and [a party's interests] *may diverge in the future,* even though, at this moment, they appear to share common ground." *Id.* (emphasis added). As the Fifth Circuit held in *Brumfield*, "the state has many interests in this case" not shared by the purported private intervenors; "[w]e cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires." 749 F.3d at 346.

Moreover, in this case the interests of the individual DACA grantees and New Jersey are different in ways that will almost certainly lead to a divergence of legal positions in the future. Because this case was filed less than six weeks ago, New Jersey is not required to show that it already has taken legal positions contrary to those taken by the individual DACA grantees—in fact, neither New Jersey nor the individual DACA grantees have yet briefed any of the relevant legal questions. But the individual DACA grantees represented by MALDEF can be expected to make some of the same arguments that the individual DAPA-eligible intervenors represented by MALDEF made against Texas and the other Plaintiff States in the DAPA suit. Many of those legal positions are directly adverse to New Jersey's interests. In the DAPA litigation, the MALDEF Defendant-Intervenors expressly "adopt[ed] and incorporate[d] in full" the United States' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction. Dkt. 91-1, Ex. 1, [Proposed] Defendant–Intervenors' Joinder in Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction and Supplemental Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction at 1 ("Proposed Defendant-Intervenors' Joinder"), *Texas v. United States*, No. 1:14-cv-254 (S.D. Tex. Jan. 14, 2015). That brief, in turn, argued that Plaintiff States had no "cognizable interest in the Federal Government's exercise of prosecutorial discretion under the

INA." Dkt. 38, Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction at 15, *Texas v. United States*, No. 1:14-cv-254 (S.D. Tex. Dec. 24, 2014).

The United States (and the MALDEF Defendant-Intervenors, in turn) gave several reasons for that assertion. First, an "allegation[] of harm to the state fisc" is not an injury to the State itself but to taxpayers, and the "diminution of [a State's] tax revenues," or "increases in [State] expenditures" do not constitute a "legally cognizable 'injury to state proprietary interests.'" *Id.* at 23. Second, States "cannot pursue litigation against the Federal Government on the basis of injuries to their citizens." *Id.* The MALDEF Defendant-Intervenors expressly "adopt[ed] and incorporate[d]" these arguments "in full." *See supra*, Proposed Defendant-Intervenors' Joinder at 1.

The MALDEF individual DACA grantees will likely make similar arguments in this case. Both are directly adverse to New Jersey's interests. As earlier noted (at 3-5), New Jersey expressly relies on allegations of harm to the state fisc and a diminution of the State's tax revenues as "concrete, personalized, and legally protectable" interests that would be harmed in this case. Dkt. 42 at 13. It also relies on additional health care costs that would be imposed on the State if DACA were terminated, causing current DACA grantees to lose access to employer-sponsored health insurance and to rely more heavily on state-funded care, including the Medical Emergency Payment Program for Aliens. *Id.* at 13-14. New Jersey also relies on its sovereign interest in protecting the health of its residents and protecting families that live in the State from

coerced separation and financial instability as a legally protectable interest that would be impaired if DACA were terminated. *Id.* at 14-16.[1]

These types of adverse legal positions are more than sufficient to overcome any presumption of adequate representation that could apply and to show that the individual DACA grantees *may be* inadequate to represent New Jersey's interests in this suit. *See Texas*, 805 F.3d at 663 (holding that three potential DAPA grantees were entitled to intervene as of right in the DAPA litigation even where they shared the same ultimate objective with the Federal Defendants at the time—"to uphold DAPA"—because "the Jane Does specify the particular ways in which their interests diverge from the Government's"); *see also Brumfield*, 749 F.3d at 345-46 (holding that a group of parents was entitled to intervene as of right in a lawsuit brought by the United States against the State of Louisiana seeking to prevent the State from issuing school vouchers that purportedly violated a federal desegregation order even where the parents had the "same ultimate objective" as the State of Louisiana—to defend the school voucher program—because the parents had distinct legal positions from the State).[2]

This case is different from those in which adequate representation has been found. In those other cases, the proposed intervenor not only shared the same overall objective as an

---

[1] At the Scheduling Conference on May 30, 2018, counsel for New Jersey mistakenly stated that New Jersey is "not relying on *parens patriae* standing." Tr. of Scheduling Conference Hearing Before the Honorable Andrew S. Hanen, May 30, 2018, at 13:20-23. She should have stated that New Jersey is not relying *solely* on *parens patriae* standing, or clarified that standing is not required in order to find a legally protectable interest for purposes of this motion to intervene.
[2] That both New Jersey and the individual DACA grantees seek the same relief in this case (that the complaint be dismissed with prejudice), *see* Dkt. 61 at 4, and proposed the same briefing schedule, *see* Dkt. 60 at 9, says nothing about whether the individual DACA grantees can adequately represent New Jersey's interests. New Jersey's motion to intervene shares almost nothing with the motion to intervene filed by the individual DACA grantees (compare Dkt. 42 with Dkt. 19), the two briefed the proposed briefing schedule very differently (compare Dkt. 48 with Dkt. 50), and both the Plaintiffs and the Federal Defendants neglect to mention that the individual DACA grantees filed a motion to dismiss that New Jersey did not join. Dkt. 52.

existing party in the suit, but also shared overlapping interests, or a sovereign was already charged with representing the interests of the proposed intervenor. Thus, for example, in *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280–81 (5th Cir. 1996), the proposed intervenor was a nonprofit organization whose interests were already represented by the Attorney General of Mississippi, which the court noted represented the rights "of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors." And in *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 168 n. 9 (5th Cir. 1993), the Rutherford Institute of Texas Foundation sought to intervene as a defendant to defend the interests of a group of schoolchildren in participating in prayer in school, but the Fifth Circuit held that the Institute was adequately represented by the school district, which had a "mutuality of interests in the litigation" in that it also sought to defend the right of its students and coaches to engage in prayer.

Here, New Jersey does not share the same legally protectable interests as individual DACA grantees, and individual DACA grantees are not charged with protecting the interests of a sovereign state with which they will at times be adverse. In fact, New Jersey has found no case in this circuit in which a sovereign state was denied intervention as of right based on a finding that its interests would be adequately represented by a group of private individuals. New Jersey should be granted intervention as of right.

## II. NEW JERSEY'S INTERVENTION WILL NOT UNDULY BURDEN THE PARTIES OR PROCEEDINGS.

In support of its assertion that New Jersey should not be granted permissive intervention, Plaintiff States claim that "New Jersey would add nothing to this case except undue burden on the other parties and potential delay." Dkt. 60 at 8. To the contrary, New Jersey has not and will not delay any deadlines or proceedings in this matter. New Jersey is currently operating under

the same schedule as the Plaintiffs, the Federal Defendants, and Defendant-Intervenors, and will continue to do so going forward. That Texas will "be forced to spend time and resources addressing New Jersey's" witnesses, Dkt. 60 at 8, is not a reason to deny intervention. It is the precise opposite. This Court should grant New Jersey's motion to intervene so that it can fully consider all of the relevant interests at play when ruling on Plaintiffs' motion for a preliminary injunction—especially when considering the balance of the equities and public interest factors—and when adjudicating the merits of this case.

## CONCLUSION

For the reasons stated above and in its Amended Memorandum of Law in Support of its Motion to Intervene (Dkt. 42), this Court should grant New Jersey's Motion to Intervene.

Dated: June 8, 2018

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: */s/Rachel Wainer Apter*
Assistant Attorney General
Attorney-in-Charge
(admitted pro hac vice)
Richard J. Hughes Justice Complex
25 Market Street, 8th Floor
Trenton, New Jersey 08625-0116
Phone: (609) 376-2702
Fax: (609) 777-4015
Rachel.Apter@njoag.gov

Jeremy Hollander, Assistant Attorney General
(pro hac vice application pending)
Kenneth S. Levine, Deputy Attorney General
(admitted pro hac vice)
Paul H. Juzdan, Deputy Attorney General
(admitted pro hac vice)

*Attorneys for Proposed Defendant-Intervenor State of New Jersey*

## **CERTIFICATE OF SERVICE**

I certify that on June 11, 2018, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                         */s/Rachel Wainer Apter*
                                         Rachel Wainer Apter