# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, *et al.*, <br><br> Defendants. | No. 17-cv-1907 (JDB) |
| THE TRUSTEES OF PRINCETON UNIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. | No. 17-cv-2325 (JDB) |

## **NOTICE**

On April 24, 2018, this Court vacated and remanded a 2017 memorandum from Acting Secretary of Homeland Security Elaine Duke rescinding the Deferred Action for Childhood Arrivals (DACA) policy. *See* Order, ECF No. 69; Mem. Op., ECF No. 70. The Court stayed its vacatur order for 90 days, however, to give the Department of Homeland Security an opportunity to provide an additional explanation for the rescission of DACA.

In response to that order, on June 22, 2018, Secretary Nielsen issued a memorandum providing such explanation. *See* Memorandum of Secretary Kirjsten M. Nielsen (attached hereto as Exhibit A). As explained in the attached memorandum, Secretary Nielsen concurred with, and

declined to disturb, the Duke memorandum's rescission of the DACA policy. The Nielsen memorandum further explains that the DACA rescission is supported by several independent and sufficient reasons: the DACA policy was contrary to law, there are serious doubts about DACA's legality (whether or not it is ultimately illegal), and there are enforcement policy reasons not to continue such a deferred action policy.

Defendants intend to confer with Plaintiffs to discuss the parties' positions on further proceedings in this case, after which the parties will file the joint status report required by the Court's April 24, 2018 Order.

Dated: June 22, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director

JOHN R. TYLER
Assistant Branch Director

/s/   Kathryn C. Davis
KATHRYN C. DAVIS (DC Bar No. 985055)
RACHAEL WESTMORELAND
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 616-8298
Fax: (202) 616-8470
Email: Kathryn.C.Davis@usdoj.gov

*Counsel for Defendants*

*Secretary*
U.S. Department of Homeland Security
Washington, DC 20528



# Homeland Security

June 22, 2018

## MEMORANDUM FROM SECRETARY KIRSTJEN M. NIELSEN

On September 5, 2017, Acting Secretary of Homeland Security Elaine C. Duke issued a memorandum (the "Duke memorandum") rescinding the enforcement policy known as Deferred Action for Childhood Arrivals (DACA). Acting Secretary Duke concluded that, "[t]aking into consideration the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation [over the enforcement policy known as Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA)], and the September 4, 2017 letter from the Attorney General [concerning DACA], it is clear that the June 15, 2012 DACA program should be terminated." Accordingly, "in the exercise of [her] authority in establishing national immigration policies and priorities," she "rescind[ed] the June 15, 2012 memorandum," subject to certain exceptions.

On April 24, 2018, the U.S. District Court for the District of Columbia held that the Duke memorandum was subject to judicial review under the Administrative Procedure Act and that it provided insufficient justification for rescinding the DACA policy. The court vacated the Duke memorandum and remanded to the Department of Homeland Security (DHS). The court issued a 90-day stay of vacatur, however, to afford DHS an opportunity to provide further explanation for rescinding the DACA policy.

Because the D.C. district court has requested further explanation, I am providing such explanation here. Having considered the Duke memorandum and Acting Secretary Duke's accompanying statement, the administrative record for the Duke memorandum that was produced in litigation, and the judicial opinions reviewing the Duke memorandum, I decline to disturb the Duke memorandum's rescission of the DACA policy, and it is my understanding that the Department of Justice will continue to seek appellate review of preliminary injunctions that restrict DHS from implementing the Duke memorandum and rescinding the DACA policy. This explanation reflects my understanding of the Duke memorandum and why the decision to rescind the DACA policy was, and remains, sound.

The Secretary of Homeland Security is vested with authority over "the administration and enforcement" of the immigration laws, 8 U.S.C. § 1103(a)(1), including the discretion to "[e]stablish[ ] national immigration enforcement policies and priorities," 6 U.S.C. § 202(5). The DACA policy of deferred action was cast as an exercise of enforcement discretion to forbear from removing a certain class of aliens who are subject to removal under law. DHS also had concluded that under pre-existing statutory and regulatory provisions a grant of deferred action would trigger certain collateral benefits for such aliens, such as eligibility for employment authorization. In considering how DHS's discretion to establish enforcement policies and priorities should be exercised, the DACA policy properly was—and should be—rescinded, for several separate and independently sufficient reasons.

First, as the Attorney General concluded, the DACA policy was contrary to law. The Fifth Circuit ruled that DAPA should be enjoined on a nationwide basis on the ground, among other things, that it likely was contrary to the statutory scheme of the Immigration and Nationality Act (INA). As the Fifth Circuit held, "the INA does not grant the Secretary discretion to grant deferred action and lawful presence on a class-wide basis to 4.3 million otherwise removable aliens." *Texas v. United States*, 809 F.3d 134, 186 n.202 (5th Cir. 2015). An equally divided Supreme Court affirmed that decision. In light of those decisions and other factors, Secretary Kelly rescinded the DAPA policy in June 2017. Any arguable distinctions between the DAPA and DACA policies are not sufficiently material to convince me that the DACA policy is lawful.

The memorandum announcing the DAPA policy both expanded the DACA policy by loosening the age and residency criteria and adopted a similar deferred action policy for parents of U.S. citizens and lawful permanent residents. The Fifth Circuit's rejection of DAPA and expanded DACA did not turn on whether the covered aliens had a pathway to lawful status (which not all of them had). Rather, it turned on the incompatibility of such a major non-enforcement policy with the INA's comprehensive scheme. The Attorney General concluded that the DACA policy has the same statutory defects that the Fifth Circuit identified with DAPA—a determination and ruling by the Attorney General that, in any event, I am bound by pursuant to 8 U.S.C. § 1103(a)(1).

Second, regardless of whether the DACA policy is ultimately illegal, it was appropriately rescinded by DHS because there are, at a minimum, serious doubts about its legality. A central aspect of the exercise of a discretionary enforcement policy is a judgment concerning whether DHS has sufficient confidence in the legality of such policy. Like Acting Secretary Duke, I lack sufficient confidence in the DACA policy's legality to continue this non-enforcement policy, whether the courts would ultimately uphold it or not.

There are sound reasons for a law enforcement agency to avoid discretionary policies that are legally questionable. Those reasons include the risk that such policies may undermine public confidence in and reliance on the agency and the rule of law, and the threat of burdensome litigation that distracts from the agency's work. The fact that some courts have recently held or suggested that the DACA policy is legal does not change my view that the DACA policy's legality is too questionable to warrant continuing the policy, especially in light of the Attorney General's contrary determination and ruling about the DACA policy and the contrary implication of the decisions of the Fifth Circuit Court of Appeals and the Supreme Court invalidating the DAPA policy.

Third, regardless of whether these concerns about the DACA policy render it illegal or legally questionable, there are sound reasons of enforcement policy to rescind the DACA policy. To start, DHS should enforce the policies reflected in the laws adopted by Congress and should not adopt public policies of non-enforcement of those laws for broad classes and categories of aliens under the guise of prosecutorial discretion—particularly a class that Congress has repeatedly considered but declined to protect. Even if a policy such as DACA could be implemented lawfully through the exercise of prosecutorial discretion, it would necessarily lack the permanence and detail of statutory law. DACA recipients continue to be illegally present, unless and until Congress gives them permanent status.

2

Accordingly, I agree with Acting Secretary Duke and the Attorney General that if a policy concerning the ability of this class of aliens to remain in the United States is to be adopted, it should be enacted legislatively.

In addition, DHS should only exercise its prosecutorial discretion not to enforce the immigration laws on a truly individualized, case-by-case basis. While the DACA policy on its face did allow for individual considerations, a categorical deferred-action policy, at the very least, tilts the scales significantly and has the practical effect of inhibiting assessments of whether deferred action is appropriate in a particular case. Without the DACA policy, DHS may consider deferred action on a case-by-case basis, consistent with the INA. Moreover, considering the fact that tens of thousands of minor aliens have illegally crossed or been smuggled across our border in recent years and then have been released into the country owing to loopholes in our laws—and that pattern continues to occur at unacceptably high levels to the detriment of the immigration system—it is critically important for DHS to project a message that leaves no doubt regarding the clear, consistent, and transparent enforcement of the immigration laws against all classes and categories of aliens. All of those considerations lead me to conclude that Acting Secretary Duke's decision to rescind the DACA policy was, and remains, sound as a matter of both legal judgment and enforcement policy discretion.

I do not come to these conclusions lightly. I am keenly aware that DACA recipients have availed themselves of the policy in continuing their presence in this country and pursuing their lives. Nevertheless, in considering DHS enforcement policy, I do not believe that the asserted reliance interests outweigh the questionable legality of the DACA policy and the other reasons for ending the policy discussed above. That is especially so because issues of reliance would best be considered by Congress, which can assess and weigh a range of options. In contrast, the DACA policy was announced as a temporary stopgap measure, not a permanent fix; it was expressly limited to two-year renewal periods, it expressly conferred no substantive rights, and it was revocable at any time. In my judgment, neither any individual's reliance on the expected continuation of the DACA policy nor the sympathetic circumstances of DACA recipients as a class overcomes the legal and institutional concerns with sanctioning the continued presence of hundreds of thousands of aliens who are illegally present in violation of the laws passed by Congress, a status that the DACA non-enforcement policy did not change. And in all events, the rescission of the DACA policy does not preclude the exercise of deferred action in individual cases if circumstances warrant.

For these reasons, in setting DHS enforcement policies and priorities, I concur with and decline to disturb Acting Secretary Duke's decision to rescind the DACA policy.

Kirstjen M. Nielsen
Secretary

3