# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

STATE OF TEXAS, *et al.*,

               Plaintiffs,

     v.

KIRSTJEN M. NIELSEN, *et al.*,

               Defendants,

*and*

KARLA PEREZ, *et al.*,

               Defendant-Intervenors.

Case No. 18-cv-00068

# FEDERAL DEFENDANTS' MOTION TO
# <u>QUASH DEPOSITION NOTICES AND SUBPOENAS</u>

## STATEMENT OF THE ISSUE

Whether Defendant-Intervenors have established good cause to justify early and expedited discovery in the form of the depositions of Sarah Saldaña, former Director of U.S. Immigration and Customs Enforcement ("ICE"), as a lay witness, proffered expert witnesses Stephen H. Legomsky, former Chief Counsel of U.S. Citizenship and Immigration Services ("USCIS"), and Gil Kerlikowske, former Commissioner of U.S. Customs and Border Protection ("CBP"), and the proposed 30(b)(6) depositions of a designated representative of USCIS's employee union, the National Citizenship and Immigration Services Council ("NCISC"), and a designated employee of USCIS.[1][2]

## SUMMARY OF THE ARGUMENT

The Court should deny Defendant-Intervenors' fourth discovery motion seeking to depose current and former federal government officials. Defendant-Intervenors fail to demonstrate good cause to conduct these depositions that are not necessary to respond to Plaintiffs' motion for preliminary injunction, risk the disclosure of privileged information from high level law enforcement and attorney officials, and duplicate information already available or to be produced to Defendant-Intervenors.

## ARGUMENT

Defendant-Intervenors have failed to establish good cause to justify early and expedited discovery in the form of the depositions of Sarah Saldaña, former Director of U.S. Immigration

---

[1] Federal Defendants do not object to Defendant-Intervenors' proposed use of deposition transcripts from Donald Neufeld, the current associate director of Service Center Operations for USCIS, and the prior declarations or deposition transcripts from other federal employees Michael Hoefer, James McCament, and James D. Nealon.

[2] Defendant-Intervenors' fourth discovery motion makes no mention of the proposed 30(b)(6) deposition of a USCIS employee, which was sent to undersigned counsel on June 14, 2018, three days before Defendant-Intervenors filed this motion.

and Customs Enforcement ("ICE"), as a lay witness, proffered expert witnesses Stephen H. Legomsky, former Chief Counsel of USCIS and Gil Kerlikowske, former Commissioner of CBP, and the proposed 30(b)(6) depositions of a designated representative of USCIS's employee union, NCISC, and a designated employee of USCIS.

Notably, in this fourth discovery motion, Defendant-Intervenors again fail to address their burden to seek early and expedited discovery, which should be required given this Court's Order prohibiting discovery of Federal Defendants without leave of Court. Dkt. No. 53. Defendant-Intervenors have done nothing to distinguish their current discovery requests regarding Plaintiffs' preliminary injunction motion from full-blown discovery, and they inexplicably argue without citation that they "need not meet the good cause standard under Rule 26 where the Court has ordered that the parties apply to it for scheduled early discovery of Federal Defendants." Dkt. No. 91 at 9. Instead, this Court's requirement that the parties obtain permission from the Court to conduct discovery at this stage of the case comports with Fed. R. Civ. P. 30(a)(2)(A)(iii), which states "[a] party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the party seeks to take the deposition before the time specified in Rule 26(d). . . ." A party seeking expedited discovery has the burden of showing good cause to justify such order. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011), *citing Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Factors include, *inter alia*: (1) the harm alleged by the moving party; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the requested information; (4) the purpose of the expedited discovery request; and (5) the burden on the party asked to comply with the requests. *See*, *e.g*., *Combat Zone Corp. v. John/Jane Does*

*1-2*, No. 2:12-CV-00509, 2012 WL 6684711, at *1 (E.D. Tex. Dec. 21, 2012); *St. Louis Grp., Inc.*, 275 F.R.D. at 240 (citations omitted).[3]

Defendant-Intervenors have done nothing to explain how the discovery they seek is specific or related to their opposition to Plaintiffs' motion for preliminary injunction. *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("[t]he Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing). Where the issues presently before the Court on Plaintiffs' motion for preliminary injunction are Plaintiffs' standing and their likelihood of success establishing that the DACA policy was unlawful, the proffered testimony of Saldaña, Legomsky, and Kerlikowske is not reasonably tailored to the specific issues to be addressing the preliminary injunction motion.

- Ms. Saldaña's testimony would merely provide background regarding the policy motivations for DACA. Dkt. No. 91. at 3 ("Ms. Saldaña will testify how, in order to fulfill its mission with limited resources, DHS prioritizes the investigation and removal of, among others, non-citizens who post a danger to national security or public a risk to public safety; recent illegal entrants; and non-citizens who are fugitives or otherwise obstruct immigration controls, the role of DACA within this prioritization, and the impact of DACA on ICE activities.").

---

[3] Federal Defendants do not rely on the Department of Homeland Security's *Touhy* regulations in support of this opposition, although the protections provided by those regulations should guide this Court in issuing a limiting order regarding the scope of deposition testimony if it permits any of the requested depositions to go forward. Additionally, Federal Defendants note that 18 U.S.C. § 207 may also bar the testimony of Mr. Legomsky if he is not properly designated as an expert. Even if he is designated as an expert, Federal Defendants argue that same lack of good cause to warrant his deposition under early and expedited discovery applies to a court order waiving the section 207 prohibition.

- Mr. Kerlikowske's testimony would similarly relate to a broad discussion of the policy motivations for DACA rather than the specific issues now before the Court. *Id.* at 4-5 ("Mr. Kerlikowske will provide his expert opinion that DACA allows CBP to more efficiently identify non-citizens who are not a priority for removal and allows individual CBP agents to better concentrate their limited enforcement efforts on those individuals who do pose a threat to national security, border security and public safety. Mr. Kerlikowske will further testify that DACA improves national security, border security and public safety by providing front line law enforcement personnel with documentation from vetted individuals who do not pose a threat to public safety or border security and allowing agents to return more quickly to duties that have a higher priority.").[4]

- Mr. Legomsky's testimony would only relate to background regarding USCIS's mission and resource constraints, Defendant-Intervenors have also failed to show how his testimony relates to Plaintiffs' motion for preliminary injunction. *Id.* at 4 ("Mr. Legomsky will testify regarding the mission of USCIS to adjudicate applications for visas, deferred action, employment authorization documents, adjustment of status and citizenship as well as the circumstances under which USCIS register, vets and grants employment authorization to individuals present in the U.S. without authorization. Mr. Legomsky will further testify how, in order to fulfill its mission with limited resources, DHS prioritizes the investigation and removal of non-citizens, the role of DACA within this prioritization, and how USCIS implemented DACA in furtherance of DHS's mission and priorities.").[5]

Accordingly, the Court should deny Defendant-Intervenors' motion with regard to Ms. Saldaña and Kerlikowske because their testimony is not reasonably tailored to the specific issues to be addressed in Plaintiffs' motion for preliminary injunction.

Additionally, given the lack of specificity of the proposed testimony of Saldaña, Legomsky, and Kerlikowske, it is unnecessary and unduly burdensome for Federal Defendants to have to defend against potential testimony, all or part of which may be privileged, may reveal

---

[4] Federal Defendants also fail to see how Mr. Kerlikowske's testimony regarding these broad policies would qualify as expert testimony under Fed. R. Evid. 702.

[5] Federal Defendants have similar concerns regarding Mr. Legomsky's proposed qualification as an expert under Fed. R. Evid. 702. Notably, opinions on the law do not require an expert. *See. e.g., Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("[e]ach courtroom comes equipped with a 'legal expert,' called a judge . . . ."); *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999).

classified information or records compiled for law enforcement purposes, or may compromise an ongoing law enforcement investigation. These concerns are particularly relevant where Defendant-Intervenors report that Ms. Saldaña and Mr. Legomsky will testify regarding enforcement prioritization, Dkt. No. 91 at 3-4, and Mr. Kerlikowske will testify regarding that purported impact of DACA on national security, border security, and public safety. *Id.* at 5. The potential for such testimony to call for the disclosure of information that falls within the deliberative process or law enforcement privileges is not warranted at this time. The testimony of Mr. Legomsky also presents the larger issue of when the testimony of an agency's former chief counsel would <u>not</u> be subject to work product or attorney-client privileges. *See*, *e.g.*, *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) ("[w]ork product protects 'mental processes of the attorney. . .") (citations omitted); *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999) (affirming finding that disclosure of attorney mental impressions and opinions would contravene public policy); *Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) ("Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances").

Finally, Defendant-Intervenors fail to demonstrate that the testimony they seek through these depositions is unavailable via other means. *St. Louis Grp., Inc.*, 275 F.R.D. at 240; *Muhammad v. Ness*, 47 F.3d 427, 1995 WL 71394, *2 (5th Cir. 1995), citing Fed. R. Civ. P. 26(b)(2) ("A district court may limit discovery if the information sought is duplicative, unreasonably cumulative, or when the burden of discovery outweighs the likely benefit of the information sought."). Indeed, even if the Court finds that testimony regarding the background of the DACA policy is sufficiently tied to Plaintiffs' motion for preliminary injunction, Defendant-Intervenors do not identify why this background is not available from the sixty other exhibits on

which they intend to rely – which include the prior depositions and testimony of federal government employees, and a statement of Mr. Legomsky to the U.S. Congress, to which Federal Defendants do not object. *See* Exhibit A, Defendant-Intervenors' Exhibit List. Defendant-Intervenors' proposed 30(b)(6) depositions present this same problem. The proposed 30(b)(6) deposition of a representative from the NCISC, USCIS's union, seeks information regarding the criteria for consideration of DACA requests and USCIS management practices. Dkt. No. 91 at 6. However, the Court already ordered Federal Defendants to respond to Plaintiffs' third discovery request for broad information and documents regarding the DACA process, and Defendant-Intervenors deposed former NCISC president Mr. Palinkas on June 19, 2018, and questioned him regarding USCIS management practices.[6] Additionally, Defendant-Intervenors' proposed 30(b)(6) deposition of a USCIS official, *see* Exhibit B, closely mirrors the interrogatory and production requests already ordered by the Court, and for which responsive testimony is available in the prior declarations and testimony identified by Defendant-Intervenors. It would be unduly burdensome to require Federal Defendants to respond to Defendant-Intervenors' broad discovery requests while simultaneously preparing a government official for a 30(b)(6) deposition that seeks the same information. *See*, *e.g.*, Fed. R. Civ. P. 26(b)(2).

Federal Defendants have again conferred with Defendant-Intervenors in an effort to limit the scope of this opposition; however, Defendant-Intervenors have indicated they will not withdraw any of their proposed witnesses, who Plaintiffs still intend to depose.

---

[6] Additionally, it would be inappropriate to serve Defendants with a 30(b)(6) deposition notice directed to the NCISC, over which Defendants have no control or custody.

**CONCLUSION**

The Court should deny Defendant-Intervenors' fourth motion for discovery.

Dated: June 22, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division
BRETT A. SHUMATE
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

/s/ *Jeffrey S. Robins*
JEFFREY S. ROBINS
Attorney-in-Charge
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington, DC 20044
Telephone: (202) 616-1246
Facsimile: (202) 305-7000

Attorneys for Federal Defendants          jeffrey.robins@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on June 22, 2018, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jeffrey S. Robins*
JEFFREY S. ROBINS

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant- | § | |
| Intervenors. | § | |

**<u>DEFENDANT INTERVENORS' EXHIBIT LIST</u>**

Pursuant to the parties' Agreement Regarding Discovery on Plaintiff States' Motion for Preliminary Injunction Discovery, dated June 6, 2018, Defendant Intervenors Karla Perez, *et al.* hereby disclose their list of exhibits for post-discovery briefing. Defendant Intervenors also incorporate by reference the exhibit lists disclosed by the State of New Jersey, the Federal Defendants, and the Plaintiff States. Pursuant to the parties' agreement, Defendant Intervenors' list does not include documents received during the discovery period for the preliminary injunction or the documents already attached to either Plaintiff States' motion for preliminary injunction or their complaint. Defendant Intervenors reserve the right to amend or supplement this list as needed.

| NO. | DESCRIPTION | OFFR | OBJ | DATE | |
|-----|-------------|------|-----|------|------|
| | | | | ADMIT | N/ADM |
| 1 | USCIS Letter to Hon. Charles E. Grassley, Chairman, Committee on the Judiciary, April 17, 2015 | | | | |
| 2 | USCIS Letter to Hon. Charles E. Grassley, Chairman, Committee on the Judiciary, June 29, 2016 | | | | |
| 3 | DACA Terminations Related to Criminal and Gang Activity by Fiscal Year | | | | |
| 4 | The Washington Post Article, September 7, 2017, "Did Obama allow a 'back   door' to citizenship through DACA? | | | | |
| 5 | Mem. from Jeh Charles Johnson, Secretary, USDHS, to Thomas Winkowski *re: Policies for the Apprehension, Detention and Removal of Undocumented  Immigrants*, Nov. 20, 2014 | | | | |
| 6 | Mem. from John Morton, Director, USDHS, to All ICE Employees *re: Civil Immigration Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens*, March 2, 2011 | | | | |
| 7 | Mem. from John Morton, Director, USDHS, to All Field Directors, All Special Agents in Charge, All Chief Counsel *re Prosecutorial Discretion Consistent with Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens*, June 17, 2011 | | | | |
| 8 | Written Testimony of Stephen H. Legomsky, Jan. 28-28, 2015 | | | | |
| 9 | Fiscal Year 2016 Report to Congress, USCIS Advance Parole Documents, January. 6, 2017 | | | | |
| 10 | USDHS, National Standard Operating Procedures (SOP) Deferred Action for Childhood Arrivals (DACA) Form I-8221D and Form I-765, Apr. 4, 2013 | | | | |
| 11 | Decl. of Donald W. Neufeld, Jan. 30, 2015 | | | | |
| 12 | Decl. of Michael Hoefer, Jan. 30, 2015 | | | | |
| 13 | Mem. from Doris Meissner, Immigration and Naturalization Service  Commissioner to Regional Directors, *Exercising Prosecutorial Discretion 1*, Nov. 17, 2000 | | | | |
| 14 | Sam Bernsen, Immigration and Naturalization Service General Counsel, | | | | |

| NO. | DESCRIPTION | OFFR | OBJ | DATE | |
|---|---|---|---|---|---|
| | | | | ADMIT | N/ADM |
| | Legal Opinion Regarding Service Exercise of Prosecutorial Discretion 1, July 15, 1976 | | | | |
| 15 | Decl. of Shoba Sivaprasad Wadhia, Dec. 15, 2017 | | | | |
| 16 | USCIS Form I-821D, Consideration of Deferred Action for Childhood Arrivals, Jan. 9, 2017 | | | | |
| 17 | USCIS, Deferred Action for Childhood Arrivals (DACA) Toolkit: Resources for Community Partners | | | | |
| 18 | Mem. From Office of Programs to Regional Directors, District Directors, Officers-in-Charge, Service Center Directors, *re Supplemental Guidance on Battered Alien Self-Petitioning Process and Related Issues*, May 6, 1997 | | | | |
| 19 | American Immigration Council, Executive Grants on Temporary Immigration Relief, 1956-Present, Oct. 2014 | | | | |
| 20 | No. 14-10049, *Crane v. Johnson*, Brief of the Federal Appellees/Cross-Appellants | | | | |
| 21 | No. 15-674, *United States v. Texas*, Brief of Former Federal Immigration and Homeland Security Officials as Amici Curiae in Support of The United States | | | | |
| 22 | Letter from Office of the Attorney General, State of CA to President Trump, July 21, 2017 | | | | |
| 23 | USCIS, Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by FY, Quarter, Intake, Biometrics and Case Status FY 2012-2017, (March 31) | | | | |
| 24 | FOIA Response by DHS to Shoba Sivaprased Wadhia, March 4, 2013 | | | | |
| 25 | USCIS, Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by FY, Quarter, Intake, Biometrics and Case Status FY 2012-2018, (March 31, 2018) | | | | |
| 26 | Decl. of Jorge A. Aguilar, Oct. 25, 2017 | | | | |
| 27 | Decl. of David R. Anderson, Oct. 23, 2017 | | | | |
| 28 | Decl. of Ron Anderson, Oct. 25, 2017 | | | | |
| 29 | Decl. of Dr. Clarence Braddock III, Oct. 25, | | | | |

3

| NO. | DESCRIPTION | OFFR | OBJ | DATE | |
|---|---|---|---|---|---|
| | | | | ADMIT | N/ADM |
| | 2017 | | | | |
| 30 | Decl. of Shawn Brick, Oct. 23, 2017 | | | | |
| 31 | Decl. of Sara H. Cody, M.D., Oct. 26, 2017 | | | | |
| 32 | Decl. of Alan Essig, Meg Wiehe and Misha Hill, Oct. 26, 2017 | | | | |
| 33 | Decl. of Lisa M. Gonzales, Oct. 26, 2017 | | | | |
| 34 | Decl. of Jens Hainmueller and Duncan Lawrance, Oct. 23, 2017 | | | | |
| 35 | Decl. of Ralph J. Hexter, Oct. 24, 2017 | | | | |
| 36 | Decl. of Dr. Robin Holmes-Sullivan, Oct. 24, 2017 | | | | |
| 37 | Decl. of Catherine Lucey, Oct. 27, 2017 | | | | |
| 38 | Decl. of Dr. James L. Madara, MD | | | | |
| 39 | Decl. of Kevin M. Maxwell, Ph.D., Oct. 26, 2017 | | | | |
| 40 | Decl. of Anne McLeod, Oct. 24, 2017 | | | | |
| 41 | Decl. of Nick Melvoin, Oct. 29, 2017 | | | | |
| 42 | Decl. of Fernando S. Mendoza, Oct. 29, 2017 | | | | |
| 43 | Decl. of Robert Menicocci, Oct. 27, 2017 | | | | |
| 44 | Decl. of Eloy Ortiz Oakley, Oct. 26, 2017 | | | | |
| 45 | Decl. of Deirdre O'Brien, Sept. 21, 2017 | | | | |
| 46 | Decl. of Brian Rosenberg, Oct. 23, 2017 | | | | |
| 47 | Decl. of Thomas S. Sayles, Sept. 21, 2017 | | | | |
| 48 | Decl. of Jonathan Schwartz, Oct. 30, 2017 | | | | |
| 49 | Decl. of Marcelo M. Suarez-Orozco, Oct. 27, 2017 | | | | |
| 50 | Decl. of Geoffrey H. Young, PhD, Oct. 26, 2017 | | | | |
| 51 | Decl. of Brad Wells, Oct. 31, 2017 | | | | |
| 52 | Pew Research Center, "As Growth Stalls,Unauthorized Immigrant Population Becomes More Settled, Sept. 3, 2014 | | | | |
| 53 | Mem. From Stuart Anderson, USDJ, INS, to Johnny Williams *re Deferred Action for Aliens with bona fide Applications for T Nonimmigrant Status,* May 8, 2002 | | | | |
| 54 | Mem. From William Yates, USDHS to Director, Vermont Service Center, *re Centralization of Interim Relief for U Nonimmigrant Status Applicants*, Oct. 8, 2003 | | | | |
| 55 | USCIS Press Release "USCIS Announces Interim Relief for Foreign Students | | | | |

4

| NO. | DESCRIPTION | OFFR | OBJ | DATE | |
|---|---|---|---|---|---|
| | | | | ADMIT | N/ADM |
| | Adversely Impacted by Hurricane Katrina", November 25, 2005 | | | | |
| 56 | Mem. From Donald Neufeld, USCIS, to Field Leadership *re Guidance Regarding Surviving Spouses of Deceased U.S. Citizens and their Children*, Sept. 4, 2009 | | | | |
| 57 | Mem. From Donald Neufeld, USCIS, to Executive Leadership *re Additional Guidance Regarding Surviving Spouses of Deceased U.S. Citizens and Their Children (REVISED)*, December 2, 2009 | | | | |
| 58 | Open Letter from Leaders of American Industry, October 30, 2017 | | | | |
| 59 | Videotaped Deposition of James McCament, Oct. 17, 2017 | | | | |
| 60 | Videotaped Deposition of James D. Nealon Oct. 13, 2017 | | | | |

Dated: June 15, 2018

Respectfully submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Celina Moreno (Tex. Bar No. 24074754)
(SD of Tex. Bar No. 2867694)
Jack Salmon (Tex. Bar No. 24068914)
(SD of Texas Bar No. 1130532)
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
Ernest I. Herrera (Tex. Bar No. 24094718);
(SD of Tex. Bar No. 2462211)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382
Email: nperales@maldef.org

Denise Hulett
Mexican American Legal Defense and
Educational Fund

1512 14th Street
Sacramento, CA  95814
Phone: (916) 444-3031
Email: dhulett@maldef.org
(Admitted pro hac vice)

Priscilla Orta
Mexican American Legal Defense and
Educational Fund
11 East Adams, Suite 700
Chicago, IL  60603
Tel: (312) 427-0701
Email: porta@maldef.org
(Admitted pro hac vice)

**GARCÍA & GARCÍA,**
**ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
 (SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant Intervenors


<u>**CERTIFICATE OF SERVICE**</u>


  I, the undersigned, hereby certify that, on the 15th day of June, 2018, I served a copy of this document by electronic mail to all counsel of record.



        */s/ Nina Perales*_____
        Nina Perales

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant- | § | |
| Intervenors. | § | |

**DEFENDANT-INTERVENORS' NOTICE OF DEPOSITION UPON ORAL
EXAMINATION OF RULE 30(B)(6) WITNESS**

TO:    Defendant United States of America, by and through Jeffrey S. Robins, Attorney in Charge, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, District Court Section, P.O. Box 868, Washington, D.C. 20044, (Jeffrey.Robins@usdoj.gov).

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant-Intervenors Karla Perez, *et al.*, by and through their undersigned counsel, give notice that they will take the deposition, by oral examination and before a certified court reporter, of Defendant United States of America, specifically the Department of Homeland Security ("DHS") which is an agency of Defendant United States of America.

Defendant United States of America has a duty under Rule 30(b)(6) to designate one or more employees, or other persons who consent to testify on its behalf, and such person(s) shall

1

testify as to the matters known or reasonably available to DHS, on the topics specified in the attached Schedule A.

The deposition shall take place on June __, 2018 at __ AM/PM, at the offices of the Mexican American Legal Defense and Educational Fund, which are located at 110 Broadway, Ste. 300, San Antonio, Texas 78208, until complete.

Said deposition, answers, and documentation obtained during the same may be read and used as evidence in the above-captioned case in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Dated: June __, 2018

Respectfully submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**

By: */s/ Celina Moreno*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Celina Moreno (Tex. Bar No. 24074754)
(SD of Tex. Bar No. 2867694)
Jack Salmon (Tex. Bar No. 24068914)
(SD of Texas Bar No. 1130532)
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382
Email: nperales@maldef.org

**GARCÍA & GARCÍA,**
**ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
 (SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899

2

Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned counsel, hereby certify that a true and correct copy of this notice was

sent on June _, 2018, via Certified Mail, Return Receipt Requested and electronic mail to:

Jeffrey S. Robins
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, D.C. 20044
Jeffrey.Robins@usdoj.gov

Todd L. Disher
Texas Attorney General's Office
Special Counsel for Civil Litigation
P.O. Box 12548
Austin, TX 78711-2548
Todd.Disher@oag.texas.gov

Office of the General Counsel,
U.S. Department of Homeland Security
245 Murray Lane, SW Mail Stop 0485
Washington, DC 20528-0485
ogc@hq.dhs.gov

                                                    */s/ Celina Moreno*
                                                    Celina Moreno

## SCHEDULE A

Pursuant to Rule 30(b)(6), Defendant-Intervenors Karla Perez, *et al.* set forth below the

following subject matter areas for the deposition of Defendant United States of America:

1. Any and all information related to guidelines followed by DHS, and any of its subsidiary agencies, departments, agents, and employees, to evaluate, process, and adjudicate Deferred Action for Childhood Arrivals ("DACA") applications, including, but not limited to: (1) internal agency documents, memoranda, and communications that set forth any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications; (2) training materials provided to agents or employees related to DACA evaluations and adjudications; and (3) changes following January 20, 2017 in any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications.

2. Any and all information related to the process by which DHS, and any of its subsidiary agencies, departments, agents, and employees, evaluates, processes, and adjudicates DACA applications, including but not limited to: (1) under what circumstances a DACA application is rejected, denied, or approved; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of DACA applications; (3) the procedure(s) employed by agents and employees who work in the evaluation and adjudication of DACA applications; and (4) changes in the process for evaluating, processing, and adjudicating DACA applications following January 20, 2017.

3. Any and all information related to which offices within USCIS evaluates and adjudicates DACA applications.

4. Any and all information regarding the number of DACA applications adjudicated at each of the five service centers within the USCIS Service Center Operations Directorate (SCOPS) each year for the period of June 2012 to June 2018.

5. Any and all information related to the number of initial and renewal DACA applications received by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018 and, from among those numbers: (1) the number of applications rejected by the Department from each Plaintiff state for each month during the period of June 2012 to June 2018; (2) the number of applications accepted by the Department from each Plaintiff state for each month during the period of June 2012 to June 2018; (3) the number of applications approved by the Department from each Plaintiff state for each month during the period of June 2012 to June 2018; (4) the number of applications denied by the Department from each Plaintiff state for each month during the period of June 2012 to June 2018; and (5) documents or other evidentiary material created by or for, or in the possession of, DHS or any of its subsidiary agencies or departments regarding the above.

6. Any and all information related to the process by which DHS, and any of its subsidiary agencies, departments, agents, and employees, evaluates and adjudicates applications or

4

requests for deferred action, other than DACA, including but not limited to: (1) under what circumstances an application or request is rejected, denied, accepted or granted; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of deferred action applications or requests; (3) and the procedure(s) employed by agents and employees to adjudicate deferred action applications or requests; and (4) any changes in the process or criteria used by DHS agents and employees to adjudicate applications or requests for deferred action other than DACA since January 20, 2017.

7. Any and all information relating to how DHS or any of its subsidiary agencies or departments tracks information about DACA applications.

8. Any and all information related to the USCIS processing time of accepted and approved DACA applications, including but not limited to: (1) the amount of time that elapses between the date USCIS accepts an application and the time the application is approved; (2) the amount of time that elapses between the date USCIS approves an application and the date an applicant receives an employment authorization document, if granted; and (3) any changes in the processing time described above since January 20, 2017.

9. Any and all information related to the number of initial and renewal DACA applications USCIS has accepted and denied from each Plaintiff State for each month during the period of June 2012 to June 2018, and from among those numbers: (1) the number of DACA applications denied at least in part because the applicant was a suspected gang member; (2) the number of DACA applications denied at least in part because the applicant posed a threat to national security or public safety; and (3) the number of DACA applications denied after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

10. Any and all information related to the number of initial and renewal DACA applications USCIS has accepted and subsequently issued Requests for Evidence ("RFEs") from each Plaintiff State for each month during the period of June 2012 to June 2018, and from among those numbers: (1) the number of RFEs related to whether the applicant was under the age of 31 as of June 15, 2012; (2) the number of RFEs related to whether the applicant came to the United States before reaching his or her 16th birthday; (3) the number of RFEs related to whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application; (4) the number of RFEs related to whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action; (5) the number of RFEs related to whether the applicant had no lawful status on June 15, 2012; (6) the number of RFEs related to whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; (7) the number of RFEs related to whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

11. Any and all information regarding the number of approved, initial DACA applications submitted by individuals who indicated on their I-821D, in response to Part 3. Question 4., that their immigration status on June 15, 2012 was "Status Expired" or "Parole Expired," and who answered in the affirmative in response to Part 3. Question 5.a. ("Were you EVER issued an Arrival-Departure Record"), for each Plaintiff State for each month during the period of June 2012 to June 2018.

12. Any and all information regarding the number of DACA recipients who adjusted their status to lawful permanent resident, for each Plaintiff State for each month during the period of June 2012 to June 2018, and among that number: (1) the number of DACA recipients who adjusted under 8 U.S.C. 1255(i); and (2) the number of DACA recipients who adjusted under 8 U.S.C. 1255(a).