UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


| | | |
|---|---|---|
| STATE OF TEXAS, ET AL, | ) | CASE NO:  1:18-CV-00068 |
| | ) | |
| Plaintiffs, | ) | CIVIL |
| | ) | |
| vs. | ) | Brownsville, Texas |
| | ) | |
| UNITED STATES OF AMERICA, ET AL, | ) | Thursday, June 28, 2018 |
| | ) | |
| | ) | (2:02 p.m. to 2:23 p.m.) |
| Defendants. | ) | |


TELEPHONE CONFERENCE

BEFORE THE HONORABLE ANDREW S. HANEN,
UNITED STATES DISTRICT JUDGE



APPEARANCES:                    (See page 2)


Clerk:                    Cristina Sustaeta

Court Recorder [ECRO]:    Juanita Tabares

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988









Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

APPEARANCES FOR:


Plaintiffs:              TODD L. DISHER, ESQ.
                         Office of the Attorney General of TX
                         209 W. 14th St., 8th Floor
                         Austin, TX 78701


Defendants:              AARON GOLDSMITH, ESQ.
                         U.S. Department of Justice
                         Office of Immigration Litigation
                         P.O. Box 868
                         Washington, DC 20044


Intervenor Defendants:   NINA PERALES, ESQ.
                         MALDEF
                         110 Broadway, Suite 300
                         San Antonio, TX 78205


                         RACHEL WAINER APTER, ESQ.
                         New Jersey Ofc. of Attorney General
                         25 Market St., 8th Floor
                         Trenton, NJ 08625

3

1          **Brownsville, Texas; Thursday, June 28, 2018; 2:02 p.m.**

2                          **(Call to Order)**

3               **THE COURT:**  This is Judge Hanen.  Who do I have on

4     the line for the Plaintiffs?

5               **MR. DISHER:**  Good afternoon, Your Honor.  Todd Disher

6     with the Texas Attorney General's Office.

7               **THE COURT:**  And for the United States?

8               **MR. GOLDSMITH:**  Your Honor, Aaron Goldsmith on behalf

9     of the United States.

10              **THE COURT:**  And for the DACA Recipient Intervenors?

11              **MS. PERALES:**  Good afternoon, Your Honor.  Nina

12    Perales for the Perez Defendant Intervenors.

13              **THE COURT:**  All right.  And for the great State of

14    New Jersey, who do we have?

15              **MS. APTER:**  Rachel Wainer Apter.

16              **THE COURT:**  All right.  And we're on the record in

17    18-CV-68.  I apologize.  I hope the sound quality is working

18    for everybody.  We're doing this from like four different

19    locations, so.

20              **MR. DISHER:**  I can hear you just fine, Your Honor.

21              **THE COURT:**  Good.  We've got several things going on.

22    But let's -- Mr. Disher, let me start with you and tell me, you

23    know, what issue you have you think I need to address.

24              **MR. DISHER:**  I don't know if we have a pending motion

25    that necessarily needs to be addressed today, Your Honor.  The

4

1   only thing that we have on file that we have asked for the

2   Court for relief is in regard to 30 declarations from other

3   court proceedings from sworn witnesses that have been included

4   on the individual DACA Recipient Intervenors' witness list --

5   excuse me, exhibit list, even though those witnesses were not

6   identified either on their witness list or their expert

7   disclosures.

8          We understand that the individual DACA Recipient

9   Intervenors have filed a cross motion regarding one portion of

10  our exhibit.

11         **THE COURT:**  They have.  I have that in front of me.

12         **MR. DISHER:**  Okay.  So, yes, Your Honor, we have

13  asked the Court to exclude the portions or the exhibits on the

14  exhibit list from the individual DACA Recipient Intervenors

15  from witnesses who are providing sworn testimony who were not

16  on the witness list for the expert disclosures.  That is the

17  only thing that we have pending in front of the Court today.

18         **THE COURT:**  All right.

19         **MS. PERALES:**  (Indisc.).  I'm sorry.

20         **THE COURT:**  Go ahead.  Go ahead, Ms. Perales.

21         **MS. PERALES:**  This is Nina Perales.  I think that

22  perhaps the most urgent pending matter relates to a pending

23  motion by Defendant Intervenors, the DACA Recipients, for leave

24  of court to have federal witnesses who are former federal

25  employees or current federal employees testify in the case.  We

**EXCEPTIONAL REPORTING SERVICES, INC**

5

1    have had depositions set.  We have one set for tomorrow in

2    (indisc.).  Today we had to postpone the deposition that was

3    set in Boston with Mr. (indisc.) because we do need leave of

4    course for these witnesses to testify.

5            THE COURT:  All right.  Mr. Goldsmith, your Motion

6    For Pro Hoc Vice is granted.  Do you want to weigh in?

7            MR. GOLDSMITH:  Yes, Your Honor.  Our chief primary

8    concerns about the request for leave, one, with respect to

9    Mr. (indisc.), who is the former chief counsel of USCIS.  Our

10   concerns are there's not good cause to allow his deposition

11   given that under a Fifth Circuit case law, the depositions of

12   the attorneys for parties is generally disfavored.  We cited a

13   particular case when the (indisc.) addressed this.  It also

14   states that he in the situations were (indisc.) depositions

15   even where the attorney-client privilege is not reciprocated.

16   There's still concerns with taking (indisc.) opinion of the

17   attorney, and we don't think it's appropriate.  This is, I

18   think, the legal opinions are Mr. (indisc.) that he was the

19   chief counsel and provided legal representation and advice with

20   respect to (indisc.).

21           THE COURT:  Okay.

22           MS. PERALES:  Your Honor, if I might respond --

23           THE COURT:  Go ahead.

24           MS. PERALES:  -- for the Perez Defendant Intervenors.

25   We have had some folks testify who worked for the federal

EXCEPTIONAL REPORTING SERVICES, INC

6

1  government, and the United States has been there.  We've been

2  able to avoid any problems at all with privileged or law

3  enforcement material.  Mr. (indisc.) is not going to testify

4  regarding his opinion of the legality of DACA, but his

5  testimony is criminal to shed light on central factors in the

6  case which is the degree of discretion exercised by DHS

7  officers when they're receiving DACA applications.

8          THE COURT:  How do we know that?

9          MS. PERALES:  Well, because he was there when DACA

10  was put together and he's familiar with the guidelines and how

11  they are implemented.  He is able to help us respond to some of

12  the reliability and credibility issues related to the

13  Plaintiffs' witness, Mr. (indisc.).  And it's critically

14  important that we be able to respond to that through the

15  testimony of Mr. (indisc.) as well as others.

16          MR. DISHER:  And, Your Honor, this is Todd Disher.

17  If I may briefly be heard, we join the Department of Justice in

18  their opposition to this for a lot of different grounds.  We

19  know that the Court has ordered the Defendants to respond to a

20  pretty extensive set of interrogatories that really should get

21  down to the heart of the issue about the numerical

22  classification of DACA applications that get approved or denied

23  or rejected.  And so we think that to the extent there is any

24  remaining questions of whether discretion was exercised under

25  DACA, which we don't think that there was and this argument is

7

1   pretty well-established in (indisc.) any remaining questions

2   that should be answered by the Defendant's response to the

3   interrogatories that, Your Honor, we'll begin to respond on the

4   last phone call we had.

5           **THE COURT:**  All right.  Here's what I'm going to do

6   on that.  I'm going to deny the set of issues pending those

7   answers.  And, Ms. Perales, when you see those answers, if

8   there's still a question, file a motion with the Court.  It

9   doesn't have to be a long motion, but what it does have to say

10  is why can he help.  And the only reason -- I mean I don't know

11  his job and I don't know what all he did and so -- but I don't

12  want his opinion of what he's been told, number one.  And,

13  obviously, he can't reveal privileged attorney-client

14  information.

15          So setting all (indisc.) aside, does he really have

16  anything to offer?  Now he may or may not, I don't know.  But

17  why don't you wait and see the interrogatory answers -- because

18  I remember some of those subparts are pretty detailed -- and

19  then let's revisit this.  But I'm denying it now without

20  prejudice to you bringing it back.

21          **MS. PERALES:**  Thank you, Your Honor.

22          **THE COURT:**  All right.

23          **MS. PERALES:**  We do have a --

24          **THE COURT:**  Who else -- there were at least people

25  there; weren't there?  Or was he the only one?

8

1       Mr. Goldsmith, are you there?

2           **MR. GOLDSMITH:**  Yes.  Yes, Your Honor.  There were

3  two other individuals and a 30(b)(6) witness.  We really should

4  put the 30(b)(6) because we believe that if you look at the

5  categories they're seeking and they're very duplicative of

6  what's in either the interrogatories or the request for

7  production of documents.

8           **THE COURT:**  All right.  My ruling on that is the same

9  that I just made.  Ms. Perales, you come back and tell me why

10 you need a 30(b)(6) motion -- or witness, I'm sorry --

11          **MS. PERALES:**  Okay.

12          **THE COURT:**  -- once you've seen the interrogatory

13 answers.

14          **MS. PERALES:**  And I just want to clarify, we have the

15 request for two 30(b)(6) depositions.  One is of the agency and

16 one is of the union that Mr. (indisc.) has already testified in

17 this case on behalf of.  And it's unclear to me whether the

18 United States is opposing the 30(b)(6) deposition of the union

19 -- of a designated representation of the union in response to

20 issues specifically raised in Mr. (indisc.) declaration.

21          **THE COURT:**  Mr. Goldsmith.

22          **MR. GOLDSMITH:**  Yes, Aaron Goldsmith.  First of all,

23 we don't represent the union, and we can't act and compel them

24 to appear on the deposition.  I'd say that upfront.  And then,

25 second, there's already been the deposition of the former

9

1   president, Mr. (indisc.), and we're not sure what added value

2   there is of having a 30(b)(6) deposition of the union that

3   would require a federal employee to appear.

4          THE COURT:  Okay.  Well, I'm not ruling on this one

5   at all until we, you know -- because no one has really properly

6   been served it sounds like to me.

7          MS. PERALES:  Well, Your Honor, we're happy to serve

8   a third-party subpoena on the union, but we will require leave

9   of court for that person to testify unless we have an agreement

10  from everybody that the person is testifying as, you know, with

11  the agreement.  We just want to make sure we don't run afoul of

12  any of their prohibitions on the testimony of federal

13  employees.  That's (indisc.), Your Honor.

14         THE COURT:  Okay.  Well, I'm giving you leave to

15  subpoena.

16         MS. PERALES:  Okay.  Thank you.

17         THE COURT:  And then we'd come back if there's an

18  issue on it.  I mean there may not be anybody that knows more

19  from the union than the person you've already deposed.

20         MR. DISHER:  Your Honor, this is Todd Disher, if I

21  can briefly add a couple of things here.  First of all, our

22  witness, Mr. (indisc.), while he was the president of the

23  national Union at the time of the (indisc.), he testified based

24  on his experiences and what he heard and learned from these

25  different union members.  So he didn't necessarily testify in

10

1    his capacity as former union president.  It was really his

2    capacity as a fact witness based on the information that he may

3    have learned while he was union president.

4              And then the second thing to raise as well is, of

5    course, tomorrow is the end of discovery, so any deposition or

6    any subpoena that gets issued now would have to fall outside of

7    the discovery period (indisc.).

8              **THE COURT:**  Well, let me -- that brings me to

9    Ms. Apter's motion.

10             **MS. APTER:**  That's correct, Your Honor.

11             **THE COURT:**  Ms. Apter, I have a motion from you to

12   extend things?

13             **MS. APTER:**  Correct, Your Honor.  We filed a motion

14   requesting a very brief extension in this case because in the

15   DC district court, the former July 23rd deadline when the stay

16   was going to expire, but the date has now been indefinitely

17   extended and there will be additional briefing in the DC

18   district court that goes at least until July 27th.

19             And, as you have heard, there are a series of issues

20   that are not yet resolved in this case.  And so we requested a

21   very short additional 14 days of the briefing schedule and, in

22   theory, for any discovery that still needs to be completed.  It

23   would then be completed in that time.

24             **THE COURT:**  Okay.

25             **MS. APTER:**  Not to reopen, I'm sorry.  We were not

11

1   seeking to reopen any discovery that has already closed, so.

2           **THE COURT:**  Right.  Does anybody have an objection to

3   that?

4           **MR. DISHER:**  Your Honor, this is Todd Disher.  We do

5   have an objection to that.  The parties have been working very

6   diligently and cooperating together to get the necessary

7   discovery done in the court-ordered 30-day window that we've

8   had to do so.  And we have been able to depose every single

9   witness who is listed on any party's witness list as well as

10  each individual expert that has been designated subject to the

11  two expert -- federal expert witnesses designated by the

12  individual DACA Recipient Intervenors.

13          So we do not think that any additional time is

14  necessary.  We think that the parties have been working well

15  together and have accomplished their goal.  And then the only

16  remaining discovery issues out there are the Defendant's

17  respond to the interrogatories which are due, I believe, next

18  Thursday well in advance of the final deadline to do any

19  additional briefing and well in advance of the hearing date.

20          And then if there's any lingering depositions that

21  need to happen of the federal employees, we are confident that

22  the parties can work together to make those happen before the

23  final round of briefing as well.  So we do not know why we need

24  an additional 14 days to brief legal issues that the parties

25  will have had over two months to brief.  So we do oppose any

12

1   additional extension to the briefing schedule or the hearing

2   date because we do think that all parties have had a fair

3   opportunity to seek discovery and all parties should be ready

4   to brief these largely legal issues to Your Honor and have a

5   hearing on July 17th, the current scheduled date.

6          THE COURT:  All right.  Here's what I'm going to do.

7   I'm going to grant Ms. Apter's motion in large part because I

8   just told Ms. Perales she has to wait to see the interrogatory

9   answers.  And so I don't think it's fair to her to have me say

10  she's got to wait and then tell her, oh, by the way, if you can

11  wait, it's too late to do anything about it.  So I'm granting

12  the motion.  I'm adopting the dates she has in the motion,

13  which would be a discovery cutoff of July 13th, post-discovery

14  briefing July 21st, and responses by July 27th.  And I'm moving

15  the hearing to August 8th.

16         MR. GOLDSMITH:  I'm sorry, Your Honor.  What's on

17  July 21st?  I'm sorry.

18         THE COURT:  It's post-discovery briefing.

19         MR. GOLDSMITH:  Okay.

20         THE COURT:  Okay.  Now, you know what, you can't get

21  anything without something being -- a burden being placed on

22  you.  So I'm adding to your list of things that the Court's

23  interested in.  Number one, I want to know the effect of

24  Secretary Nielson's June 22nd memo because, obviously, what

25  raises the (indisc.) is does it moot this case.  And then I

13

1   want to know the impact, if any, on Trump vs. Hawaii.  So in

2   your briefing notes, keep in mind that I'm interested in those

3   two things.

4           MR. GOLDSMITH:  Understood, Your Honor.  In addition

5   to all the other ones that I've given you earlier.

6           THE COURT:  All right.

7           MS. PERALES:  Your Honor?

8           THE COURT:   I'm sorry that I did not -- go ahead,

9   Ms. Perales.

10          MS. PERALES:  This is Nina Perales.  Before you send

11  us away, the United States didn't mention that we would also

12  move for leave to allow the testimony of Mr. (indisc.).  He was

13  set for deposition today, but we postponed him (indisc.) to

14  July 3rd.  We'd like to be able to move forward with his

15  deposition and be able to depose his declaration testimony.

16          THE COURT:  Any objection to that?

17          MR. GOLDSMITH:  Yes, Your Honor.  Although we don't

18  have the same objection that we have with respect to

19  Mr. (indisc.) because he is not an attorney, we still don't

20  think it's appropriate because it's simply if there's no good

21  cause for allowing testimony as to background and the purpose

22  behind his background.  To the extent he would testify as to

23  internal deliberations, we think that would be (indisc.).  So

24  there really is no reason to allow his deposition in this

25  matter.

14

1          **THE COURT:**  Ms. Perales, what is he going to testify

2     to that's in contest here?

3          **MS. PERALES:**  Well, he's going to testify about the

4     exercise in (indisc.) control of discretion which is at the

5     center of the case and how the different pieces of DHS exercise

6     that control of discretion (indisc.).

7          **THE COURT:**  Okay.  So you think he knows -- and,

8     again, it may be relevant.  I don't know.  But to the extent he

9     does, then I'm going to allow his deposition to go forward.

10          **MS. PERALES:**  Thank you, Your Honor.

11          **MR. DISHER:**  And then, Your Honor, this is Todd

12     Disher with Texas.  The last piece before we get off the line

13     here is tomorrow is the scheduled deposition for Sarah Salvonya

14     (phonetic).  She was the director of ICE from about 2014 until

15     2017.  She was -- her testimony and deposition were originally

16     opposed by the Department of Justice, but we have set her

17     deposition for tomorrow.  So I just want to give you clarity

18     that that is allowed to go forward pursuant to the Court's

19     instruction.

20          **THE COURT:**  Mr. Goldsmith.

21          **MR. GOLDSMITH:**  Well, we would oppose for similar

22     reasons.  We understand for good cause (indisc.) allowing

23     discovery under 26(d)1), but that discovery should be limited,

24     should be narrowly tailored.  Again, to the extent there's

25     testimony as to why DACA was created in the first place, that

15

1   doesn't -- that is not narrowly tailored to the issues in the

2   preliminary injunction.  And we think that's well outside the

3   scope of the limited discovery that should be ordered by the

4   Court in the context of the expedited discovery.

5            THE COURT:  Mr. Disher, what --

6            MS. PERALES:  And Your Honor?

7            THE COURT:  -- well, whoever's --

8            MS. PERALES:  We are also inclined, Your Honor, this

9   is Nina Perales.  (Indisc.).  We, as I mentioned before, have

10  done an excellent job of avoiding any issues of privilege.

11  Obviously, the question (indisc.) probably might narrow your

12  question with respect to Perez who did defend in her deposition

13  that we think that we can avoid any probable disclosure that

14  DOJ might be worried about.

15            THE COURT:  All right.  I'm going to allow this

16  deposition to go forward, too.  But the last two we talked

17  about, you know -- let me -- I've said this before, but let me

18  say it again.  I don't think there's any issue of the reasons

19  or any purpose of the reasons of why DACA was created.  I mean

20  I think, quite frankly, y'all could agree and stipulate to that

21  and we wouldn't need any testimony.  I mean because it's not

22  really a controlling issue unless you guys convince me

23  otherwise as to why it was created.

24            Now the discretion part, I'm going to allow

25  Ms. Perales to ask -- to, you know, inquire into.  But, again,

EXCEPTIONAL REPORTING SERVICES, INC

16

1   you know, we've got to go on, you know, personal knowledge here

2   and the things that we have any personal knowledge of this.

3          So I'll leave it at that --

4          **MS. PERALES:**  Thank you, Your Honor.

5          **THE COURT:**  -- that I'm going to allow the deposition

6   to go forward.

7          **MR. GOLDSMITH:**  Understood, Your Honor.  And then the

8   very last thing, Mr. (indisc.) has been designated as an expert

9   by the Defendant Intervenors.  And so I just want to be sure

10  that we receive, of course, the required expert material before

11  his deposition goes forward on July 3rd.

12         **MS. PERALES:**  We can get that today.  We'll get that

13  out today.

14         **THE COURT:**  Okay.  Good.  Excellent.  All right.  I

15  appreciate y'all working together on this.  I'll try to be

16  available.  I just wasn't available yesterday.  I apologize

17  about that.  But, you know, we'll get this resolved.  And to

18  the extent that --

19         **MS. PERALES:**  Thank you, Your Honor.

20         **THE COURT:**  -- to the extent y'all can reserve it

21  without me, I'm just giving you a commercial (indisc.).

22         **MR. GOLDSMITH:**  Understood, Your Honor.

23         **MS. PERALES:**  Thank you.

24         **THE COURT:**  All right.  Thank you, ya'll.

25         **MR. GOLDSMITH:**  Thank you.

**EXCEPTIONAL REPORTING SERVICES, INC**

17

1          MS. PERALES:   Thank you.

2          THE COURT:   Bye.

3          MS. PERALES:   Bye bye.

4      (Proceedings adjourned at 2:23 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    June 29, 2018

        Signed                                                Dated


*TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC