IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | § |
| Plaintiffs, | § |
| v. | § Case No. 1:18-CV-68 |
| UNITED STATES OF AMERICA, *et al.*, | § |
| Defendants, | § |
| and | § |
| KARLA PEREZ, *et al.*, | § |
| Defendant-Intervenors, | § |
| and | § |
| STATE OF NEW JERSEY, | § |
| Defendant-Intervenor. | § |

**DEFENDANT INTERVENORS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS WITH PREJUDICE
FOR LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

                                                                                              **Page**

I.     STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ................... 1

II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................. 2

III.   SUMMARY OF ARGUMENT ....................................................................................... 6

IV.   DISCUSSION ................................................................................................................... 8

         A.     Plaintiffs' Suit Must Be Dismissed Due to the Absence of an Actual Controversy Between Plaintiffs and the Federal Defendants ................................ 8

         B.     An Order from This Court Could Not Remedy Plaintiffs' Claimed Injuries ...................................................................................................................... 10

V.    CONCLUSION............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
  567 U.S. 387 (2012) ................................................................................................2

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ............................................................................................9, 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................7

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................................6

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*,
  17 F. Supp. 3d 599 (S.D. Tex. 2014) ......................................................................6

*Golden v. Zwickler*,
  394 U.S. 103 (1969) ................................................................................................8

*Kirkland v. N.Y. State Dep't of Corr. Servs.*,
  No. 82 CIV. 0295, 1988 WL 108485 (S.D.N.Y. Oct. 12, 1988) .............................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................7, 10

*McGinley v. Houston*,
  Civil Action 03-0563-WS-M, 2003 U.S. Dist. LEXIS 14947 (S.D. Ala. Aug.
  27, 2003) ...............................................................................................................11

*Moore v. Charlotte-Mecklenburg Bd. of Ed.*,
  402 U.S. 47 (1971) (*per curiam*) ...........................................................................8

*Muskrat v. United States*,
  219 U.S. 346 (1911) ................................................................................................8

*NAACP v. Trump*,
  298 F. Supp. 3d 209 (D.D.C. 2018) ..............................................................5, 7, 11

*Poe v. Ullman*,
  367 U.S. 497 (1961) ................................................................................................8

*Raines v. Byrd*,
  521 U.S. 811 (1997) ................................................................................................7

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
   279 F. Supp. 3d 1011 (N.D. Cal. 2018) ................................................................. 2, 5, 7, 11

*Regents of Univ. of Cal.. v. U.S. Dep't of Homeland Sec.*,
   No. 3:17-cv-05211 (N.D. Cal. Nov. 22, 2017), ECF No. 204 ..................................................... 4

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ............................................................................................................. 2

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ......................................................................................... 3, 4, 11

*Texas v. United States*,
   86 F. Supp. 3d 591 (S.D. Tex. 2015) ................................................................................ 11, 12

*Trs. of Princeton Univ. v. United States*,
   No. 1:17-cv-02325 (D.D.C. Nov. 22, 2017), ECF No. 8 ........................................................... 4

*Trump v. Hawaii*,
   No. 17-965 (June 26, 2018), slip op ........................................................................................ 7

*U.S. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   No. 17-1003 (U.S. Jan. 18, 2018) ............................................................................................ 4

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*,
   330 U.S. 75 (1947) ................................................................................................................ 10

*United States v. Johnson*,
   319 U.S. 302 (1943) ................................................................................................................ 9

*United States v. Texas*,
   136 S. Ct. 2271 (2016) ............................................................................................................ 3

**Statutes**

6 U.S.C. § 202(5) ........................................................................................................................ 2

8 U.S.C. § 1103(a)(1) .................................................................................................................. 2

8 U.S.C. § 1227(d)(2) .................................................................................................................. 2

**Other Authorities**

Defs.' Memo. in Opp'n to Pls.' Mot. for Provisional Relief at 27, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211 (N.D. Cal. Nov. 22, 2017), ECF No. 204 .................................................................................................. 4

Defs.' Mem. Supp. Mot. to Dismiss or Summ. J. at 20, *Trs. of Princeton Univ., et al. v. United States*, No. 1:17-cv-02325 (D.D.C. Nov. 22, 2017), ECF No. 8 ......................... 4

Letter from Jefferson B. Sessions III, Attorney General, to Elaine Duke, Acting
    Sec'y of Homeland Security of the U.S. (Sept. 4, 2017) ............................................4

Memorandum from Elaine C. Duke, Acting Sec'y of the Dep't of Homeland
    Security, to James W. McCamet, Acting Director of U.S. Citizenship and
    Immigration Services, et al., *Rescission of the June 15, 2012 Memorandum
    Entitled "Exercising Prosecutorial Discretion with Respect to Individuals
    Who Came to the United States as Children"* (Sept. 5, 2017)......................................4

Memorandum from Janet Napolitano, Sec'y of Homeland Security, to David V.
    Aguilar, Acting Commissioner, U.S. Customs and Border Protection, et al.,
    *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to
    the United States as Children* (June 15, 2012) ...........................................................3

Memorandum from Jeh Charles Johnson, Sec'y of Homeland Security, to Leon
    Rodriguez, Director of U.S. Citizenship and Immigration Services, et al.,
    *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to
    the United States as Children and with Respect to Certain Individuals Who
    Are the Parents of U.S. Citizens or Permanent Residents* (Nov. 20, 2014)................3

Memorandum from Kirstjen M. Nielsen, Sec'y of the Dep't of Homeland Security
    (June 22, 2018)............................................................................................................5

Pet. for a Writ of Cert. Before J. at 31, *U.S. Dep't of Homeland Sec. v. Regents of
    the Univ. of Cal.*, No. 17-1003 (U.S. Jan. 18, 2018)...................................................4

U.S. Dep't of Homeland Security, 2016 Yearbook of Immigration Statistics:
    Table 39 (2016)............................................................................................................2

U.S. Dep't of Homeland Security, Estimates of the Unauthorized Immigrant
    Population Residing in the United States: January 2014 (2014) ...............................2

## I. STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

Defendant Intervenors submit this memorandum of law in support of their Motion to Dismiss with Prejudice for Lack of Subject Matter Jurisdiction. As more fully set forth below, the Court should dismiss this action with prejudice due to the absence of a justiciable controversy under Article III.

As an initial matter, there is no adversity between the Plaintiff States and Federal Defendants on the central question Plaintiffs ask the Court to adjudicate—the lawfulness of the Secretary of Homeland Security's June 15, 2012 memorandum regarding Deferred Action for Childhoods Arrivals ("DACA"). Indeed, the Federal Defendants' Response to Plaintiffs' Motion for Preliminary Injunction states explicitly that "Plaintiffs and Federal Defendants agree—DACA is unlawful." ECF No. 71 at 13. Accordingly, Plaintiffs' action fails to present a live case or controversy for this Court to adjudicate. Because an actual controversy between the parties is essential to this Court's power to act, the absence of a live case or controversy leaves the Court with no option but to dismiss the suit.

The absence of a genuine case or controversy highlights another flaw that is fatal to the Court's jurisdiction—the Court's inability to remedy Plaintiffs' purported injuries. Plaintiffs assert that they are injured by the Federal Defendants' continued deferral of action on certain immigrants consistent with DACA, which Plaintiffs contend was unlawfully adopted. But the Federal Defendants have already commenced the wind-down of DACA on the ground that it was unlawfully adopted. Their present continuation of DACA is due to court orders issued in other litigation. Because this Court lacks authority to relieve the Federal Defendants from their obligation to comply with those court orders, it cannot afford Plaintiffs relief on their claims.

## II.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Congress charged the Secretary of Homeland Security with the administration and enforcement of immigration laws. 8 U.S.C. § 1103(a)(1). Recognizing that the immigration statutes it enacted vest the Executive Branch with broad enforcement discretion, Congress directed the Secretary to establish "national immigration enforcement policies and priorities." 6 U.S.C. § 202(5). Congress appropriates only enough funds to remove approximately 450,000 immigrants each year, U.S. Dep't of Homeland Security, *see* 2016 Yearbook of Immigration Statistics: Table 39 (2016), although the estimated number of immigrants subject to removal is approximately 12 million, U.S. Dep't of Homeland Security, Estimates of the Unauthorized Immigrant Population Residing in the United States: January 2014 (2014). As a consequence, the Executive Branch must necessarily exercise prosecutorial discretion in the immigration context to prioritize which immigrants will be removed and as to what classes of non-citizens there will be "deferred action" with respect to removal. The Supreme Court has recognized that "[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona v. United States,* 567 U.S. 387, 396 (2012). More specifically, the Court has noted that "deferred action" is a "regular practice . . . of exercising . . . [that] discretion," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999), and Congress has codified its existence, *see* 8 U.S.C. § 1227(d)(2) (distinguishing "deferred action" from an "administrative stay of removal"). For decades, the Executive Branch has implemented deferred action and other forms of prosecutorial discretion both for individual non-citizens and for various classes of non-citizens. *See Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1019-22 (N.D. Cal. 2018) (describing programs since 1975).

In 2012, the Secretary of Homeland Security issued a memorandum, known as DACA, providing guidelines for grants of deferred action to non-citizens brought to the United States as

children who meet certain guidelines, including having continuously resided in the United States since June 15, 2007.  Memorandum from Janet Napolitano, Sec'y of Homeland Security, to David V. Aguilar, Acting Commissioner, U.S. Customs and Border Protection, et al., *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012).  The DACA memo provided guidance to all three branches of DHS—Immigrations and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS)—in exercising their enforcement discretion.

In 2014, the Department of Homeland Security announced a distinct policy regarding its exercise of enforcement discretion, referred to as "DAPA," which expanded the population of young people covered by DACA and provided additional guidance for grants of deferred action for parents of American citizens or lawful permanent residents.  Memorandum from Jeh Charles Johnson, Sec'y of Homeland Security, to Leon Rodriguez, Director of U.S. Citizenship and Immigration Services, et al., *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents* (Nov. 20, 2014).  Starting on December 3, 2014, a number of states—including certain Plaintiffs in the instant action—brought suit to challenge the legality of DAPA.  The Court of Appeals for the Fifth Circuit ultimately affirmed a ruling by this Court that the Secretary of Homeland Security's adoption of DAPA exceeded her authority.  *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015).  The Supreme Court granted review, but an evenly divided Court was unable to reach the merits of the government's appeal.  *United States v. Texas*, 136 S. Ct. 2271 (2016) (mem.).  Significantly, though, Plaintiffs and the other states challenging DAPA *did not* contest the legality of the original version of DACA implemented in 2012 as part of the DAPA litigation.  Moreover, the Fifth Circuit noted that

"DACA and DAPA are not identical," including because the smaller, younger population eligible for discretionary relief under DACA were less likely to have backgrounds that would warrant discretionary denial of deferred action. *Texas*, 809 F.3d at 174.

On September 4, 2017, Attorney General Jefferson B. Sessions III sent a letter summarizing his view that DACA was unlawful. Letter from Jefferson B. Sessions III, Attorney General, to Elaine Duke, Acting Sec'y of Homeland Security of the U.S. (Sept. 4, 2017). The next day, the Secretary of the Department of Homeland Security, accepting the conclusion of the Attorney General, ordered the wind-down of DACA. Memorandum from Elaine C. Duke, Acting Sec'y of the Dep't of Homeland Security, to James W. McCament, Acting Director of U.S. Citizenship and Immigration Services, et al., *Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"* (Sept. 5, 2017). The United States has reiterated the view of the Attorney General and Secretary of DHS on numerous occasions.[1] Shortly after DHS announced its intention to wind-down DACA, numerous plaintiffs, including individuals whose removal had been deferred pursuant to DACA, challenged the Attorney General and DHS's determination in several courts around the country. On January 8, 2018, the United States District Court for the Northern District of California issued a preliminary injunction against the Department of Homeland Security and its Secretary under which the defendants were "ORDERED AND

---

[1] *See, e.g.*, Defs.' Memo. in Opp'n to Pls.' Mot. for Provisional Relief at 27, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211 (N.D. Cal. Nov. 22, 2017), ECF No. 204 (defending "the Attorney General's view that DACA was unlawful"); Pet. for a Writ of Cert. Before J. at 31, *U.S. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, No. 17-1003 (U.S. Jan. 18, 2018) ("The Acting Secretary's decision is independently supported by her reasonable conclusion, informed by the Attorney General's advice, that indefinitely continuing the DACA policy would itself have been unlawful."); Defs.' Mem. Supp. Mot. to Dismiss or Summ. J. at 20, *Trs. of Princeton Univ. v. United States*, No. 1:17-cv-02325 (D.D.C. Nov. 22, 2017), ECF No. 8 (referencing "[t]he Attorney General's determination that DACA was unconstitutional").

ENJOINED, pending final judgment herein or other order, to maintain DACA on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017, including allowing DACA enrollees to renew their enrollments," subject to certain exceptions. *Regents of Univ. of Cal.*, 279 F. Supp. 3d at 1048. On April 24, the United States District Court for the District of Columbia issued a preliminary injunction (which it stayed for 90 days) that vacates the Department of Homeland Security's September 5 memorandum rescinding DACA, which will thus require the Department to accept new applications for deferred action under DACA. *NAACP v. Trump*, 298 F. Supp. 3d 209, 249 (D.D.C. 2018). On June 22, 2018, in response to the District of Columbia order, the Department of Homeland Security issued a memorandum reiterating the decision to wind-down DACA, in an effort to persuade the court to revise the April 24 Order and allow the Department of Homeland Security to rescind DACA because "the DACA policy was contrary to law." Memorandum from Kirstjen M. Nielsen, Sec'y of the Dep't of Homeland Security (June 22, 2018).

On May 1, 2018—nearly six years after the DACA memorandum was originally issued, almost eight months after DHS's memorandum directing the wind-down of DACA, and only after numerous judicial orders compelled DHS to maintain DACA in place—Plaintiffs filed the instant action. Plaintiffs ask the Court to issue an order compelling the Federal Defendants to do what the Federal Defendants have already indicated they wish to do (and would do absent other courts' orders), which is to rescind DACA.

Rather than resisting Plaintiffs' claims, the Federal Defendants have effectively joined Plaintiffs' suit. Indeed, the Federal Defendants have: agreed with Plaintiffs' effort to expedite issuance of a preliminary injunction against the Federal Defendants, ECF No. 49; opposed the Defendant Intervenors' Motion to Dismiss Without Prejudice, or in the Alternative, to Transfer

-5-

or Stay Proceedings at the proceedings held before this Court on May 30, 2018; opposed intervention by the State of New Jersey in support of DACA, ECF No. 61; filed a response to Plaintiffs' Motion for a Preliminary Injunction signaling that they agree that DACA is unconstitutional, ECF No. 71; and opposed multiple discovery requests made by Defendant Intervenors, ECF Nos. 85, 87.  For all practical purposes, the Federal Defendants have worked with Plaintiffs to obtain an order directing the Federal Defendants to do what they already wish to do but are enjoined from doing by other courts.

### III.   SUMMARY OF ARGUMENT

The Court should dismiss this case without reaching the merits of Plaintiffs' motion for preliminary injunction because

This case does not present an actual case or controversy within the meaning of Article III of the Constitution because Plaintiffs and the Federal Defendants are, in fact, aligned.  Plaintiffs and the Federal Defendants agree that DACA is unlawful, and both sets of parties desire the rescission of the guidance, as evidenced by Plaintiffs' filing of this suit, the Federal Defendants' adoption of steps to wind down the guidance, and the Federal Defendants' litigation statement that "Plaintiffs and Federal Defendants agree—DACA is unlawful."  ECF No. 71 at 13.  On that basis alone, this case should be dismissed.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006) (citation omitted) (alteration omitted).

Moreover, Plaintiffs lack Article III standing.  This presents a fundamental bar to Plaintiffs' claims, and accordingly "before the Court confronts the motion for preliminary injunction, the Court must decide the threshold standing challenge."  *Galveston Open Gov't*

*Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 602 (S.D. Tex. 2014) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998)).

Plaintiffs cannot establish the "essential and unchanging requirements" of standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which require a showing of injury that is (1) "concrete, particularized, and actual or imminent;" (2) "fairly traceable to the challenged action;" and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). The standing inquiry is "especially rigorous" where, as here, a plaintiff asks a federal court to rule that "an action taken by one of the other two branches of the Federal Government was unconstitutional," due to the "overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). This is of particular concern in the immigration context, as "'it is not the judicial role in cases of this sort to probe and test the justifications' of immigration policies." *Trump v. Hawaii*, No. 17-965 (June 26, 2018), slip op. at 31 (quoting *Fiallo v. Bell*, 430 U.S. 787, 799 (1977)).

Most glaringly, Plaintiffs cannot satisfy the redressability requirement.[2] The obstacle to achieving the end that Plaintiffs desire is not the Federal Defendants' opposition or refusal, but a set of orders issued by other courts to prohibit the Federal Defendants from taking the actions that both they and Plaintiffs seek. *See Regents of Univ. of Cal.*, 279 F. Supp. 3d at 1048 (granting preliminary injunction against the wind-down of DACA); *NAACP*, 298 F. Supp. 3d at 249 (vacating the decision to rescind DACA). Because this Court cannot relieve the Federal

---

[2] In the present motion, Defendant Intervenors urge only those pure legal arguments that require dismissal for lack of a justiciable controversy on the face of Plaintiffs' Complaint and other judicially cognizable facts, such as the Federal Defendants' filings declining to defend DACA. Defendant Intervenors reserve the right to raise at a later point in time other challenges to Plaintiffs' standing based on the facts as developed through discovery.

Defendants of their obligations to comply with the orders of those courts, a favorable ruling by this Court cannot redress Plaintiffs' alleged injuries.

## IV. DISCUSSION

### A. Plaintiffs' Suit Must Be Dismissed Due to the Absence of an Actual Controversy Between Plaintiffs and the Federal Defendants

Plaintiffs and the Federal Defendants "desire precisely the same result"; "[t]here is, therefore, no case or controversy within the meaning of Art. III of the Constitution." *Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47, 47-48 (1971) (*per curiam*) (citation omitted). Accordingly, a ruling on the merits in this case would contravene the constitutional requirement that federal courts adjudicate only "concrete legal issues, presented in actual cases, not abstractions." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (internal quotation marks and citations omitted). The Constitution requires that courts decide only "cases or controversies arising between opposing parties," and forbids the judiciary from giving advisory "opinions in the nature of advice concerning legislative action," which is a "function never conferred upon it by the Constitution." *Muskrat v. United States*, 219 U.S. 346, 362 (1911).

This case presents no "honest and actual antagonistic assertion of rights" between the Plaintiffs and the Federal Defendants, and thus there is no subject matter jurisdiction under Article III. *Poe v. Ullman*, 367 U.S. 497, 505 (1961) (internal quotation marks and citation omitted). Plaintiffs and the Federal Defendants take the same position regarding DACA—that it was unlawfully adopted—and desire the same result—that it be rescinded. The Federal Defendants rescinded DACA at least in part based on their view that it was unlawful, *see* ECF No. 1, ex. 7, at 3-4, and had frequently repeated that position in proceedings before federal courts in California, the District of Columbia, Maryland, and New York, well before Plaintiffs filed this lawsuit. *See supra* note 1. Indeed, after Plaintiffs filed the instant case seeking a declaration that

-8-

DACA is unlawful, Defendants expressly and unequivocally reaffirmed that "Plaintiffs and Federal Defendants agree—DACA is unlawful." ECF No. 71 at 13.  In short, it is clear that there is no substantive disagreement between the parties.  This matter is therefore a "friendly or feigned proceeding[]" where this Court lacks authority to act.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997).  The fact that Defendant Intervenors are participating in the litigation "does not create sufficient adversity to provide jurisdiction.  [Instead, t]hey have properly called the court's attention to the lack of subject matter jurisdiction."  *Kirkland v. N.Y. State Dep't of Corr. Servs.*, No. 82 CIV. 0295, 1988 WL 108485, at *3 (S.D.N.Y. Oct. 12, 1988).

Plaintiffs and the Federal Defendants' conduct confirms that there is no genuine case or controversy here.  Plaintiffs have received support from the supposedly adverse Federal Defendants at every stage in this matter.  For example, Defendants acquiesced to Plaintiffs' insistence on an expedited discovery schedule to buttress Plaintiffs' motion for a preliminary injunction to invalidate DACA.  *See* ECF No. 36 at 5 (certificate of conference).  Similarly, both Plaintiffs and Defendants opposed Defendant Intervenors' motion to dismiss under the first-to-file rule.  *See* ECF No. 51 at 3 (certificate of conference).  And, while Defendants have supported Plaintiff States' claims, they opposed the right of the State of New Jersey to intervene to oppose the Plaintiff States' claims.  *See* ECF No. 61 at 2.  In "the absence of a genuine adversary issue between the parties" and where "one of the parties has dominated the conduct of the suit," as the Plaintiffs have here, the court should "dismiss the suit as collusive."  *See United States v. Johnson*, 319 U.S. 302, 304-05 (1943).

Plaintiffs' Complaint facially concedes the collusive nature of the present litigation.  The Complaint includes extensive discussion of litigation before other district courts in which the Federal Defendants have defended the same position advocated by Plaintiffs here, including their

current position that the Executive Branch lacked the authority to promulgate DACA in the first place. ECF No. 1 at 45-50. The Federal Defendants' opposition to Defendant Intervenors' motion to dismiss under the first-to-file rule further confirms that the Federal Defendants *effectively invite* the Court to "issue[] an injunction ordering Federal Defendants to end the DACA policy," which will then create an opportunity for the Federal Defendants to "seek stays of all the DACA injunctions," including the ones that prevent the Federal Defendants from ending DACA, as they desire to do. ECF No. 71 at 17, 18. These statements make clear that Plaintiffs and Defendants are *aligned* in their effort to use this proceeding to launch a collateral attack on injunctions already entered against Defendants by sister courts. A putative plaintiff and putative defendant who are in substantive agreement cannot collaborate to obtain from one court an order that purports to relieve the putative defendant of its obligation to comply with another court's injunction with which both parties disagree. Ultimately, as discussed below, a ruling by this Court would do little to resolve this situation. It does, however, risk improperly politicizing the courts by making them "the organ of political theories," to opine on "ill-defined controversies over constitutional issues" that might serve the political ends of litigants. *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 90-91 (1947). The Court should not allow itself to be made a part of that ruse.

## B. An Order from This Court Could Not Remedy Plaintiffs' Claimed Injuries

In contrast to Plaintiffs' earlier litigation challenging DAPA, Plaintiffs cannot in this case satisfy the requirement for standing to show that "the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation omitted). As a consequence of the new alliance between Plaintiffs and the Federal Defendants, this Court cannot fashion any remedy for Plaintiffs' grievances, because—unlike with DAPA in the prior action—*the Federal Defendants have already indicated their intent to end DACA. See supra*. Thus, any order from this Court

declaring DACA unlawful would not cause Defendants to end it any more quickly than Defendants would in the absence of such a ruling. Indeed, the only obstacle stopping Defendants from achieving the result desired by both Defendants and Plaintiffs are orders issued by other courts. *See NAACP*, 298 F. Supp. 3d at 249; *Regents of Univ. of Cal.*, 279 F. Supp. 3d at 1048. And, a party subject to a court order cannot avoid that order by collaboratively litigating with a sympathetic party to obtain an order from a different court countermanding the order of the first court. *See Arizonans for Official English*, 520 U.S. at 71 (noting the courts "lack of authority to act in friendly or feigned proceedings"); *McGinley v. Houston*, Civil Action 03-0563-WS-M, 2003 U.S. Dist. LEXIS 14947, at *2 (S.D. Ala. Aug. 27, 2003) (holding that "the orderly administration of justice and the respect for the rule of law demand that . . . [courts] not exercise jurisdiction" over "a 'horizontal appeal' from one district judge to another judge of the same rank"). Because the Federal Defendants are now fully aligned with Plaintiffs' legal view—and because of the existence of a nationwide injunction issued by a sister court—any remedy issued by this Court would not afford Plaintiffs the relief they seek.

This is a fundamental distinction between the instant action and Plaintiffs' earlier litigation challenging DAPA, and accordingly the earlier Fifth Circuit and district court opinions finding standing do not control. Previously, the Fifth Circuit found the redressability requirement satisfied because "[e]njoining DAPA based on the procedural APA claim could prompt DHS to reconsider the program . . . . and enjoining DAPA based on the substantive APA claim would prevent Texas's injury altogether." *Texas*, 809 F.3d at 161. Now, Plaintiffs no longer need an injunction to prompt Defendants to reconsider DACA, given that Defendants have already publicly announced their intention to end the initiative. Furthermore, even following any favorable ruling by this Court, an order issued by another court would continue to

-11-

stand between Plaintiffs and their desired outcome, and so it is no longer true that "enjoining the implementation of [DACA] would unquestionably redress Plaintiffs' alleged harm." *See Texas v. United States*, 86 F. Supp. 3d 591, 624 (S.D. Tex. 2015).

## V. CONCLUSION

For the foregoing reasons, Defendant Intervenors respectfully request that the Court dismiss this action with prejudice.

Dated: July 5, 2018                                    Respectfully Submitted

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046); (SD of Tex. Bar No. 21127)
Attorney-in-Charge
Celina Moreno (Tex. Bar No. 24074754)
(SD of Tex. Bar No. 2867694)
Jack Salmon (Tex. Bar No. 24068914)
(SD of Texas Bar No. 1130532)
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
Ernest I. Herrera (Tex. Bar No. 24094718); (SD of Tex. Bar No. 2462211)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org

Denise Hulett
Mexican American Legal Defense and Educational Fund
1512 14th Street
Sacramento, CA 95814
Phone: (916) 444-3031
Email: dhulett@maldef.org
(Admitted pro hac vice)

Priscilla Orta
Mexican American Legal Defense and
Educational Fund
11 East Adams, Suite 700
Chicago, IL  60603
Tel: (312) 427-0701
Email: porta@maldef.org
(Admitted pro hac vice)

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
(pro hac vice application pending)

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that, on the 5th day of June, 2018, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

        */s/ Nina Perales*
        Nina Perales