# Exhibit C

```
                                                                          1
                         UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

BATALIA VIDAL,                    :      16-CV-4756

          Plaintiff,              :

             v.                   :      United States Courthouse
                                         Brooklyn, New York
DIRECTOR KATHY A. BARAN,          :
                                  :      September 22, 2106
          Defendant.                     3:15 o'clock p.m.
                                  :

- - - - - - - - - - - - - - - X

                 TRANSCRIPT OF CONFERENCE
                 BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
                 SENIOR UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:                       MICHAEL J. WISHNIE, ESQ.
                                         KAREN C. TUMLIN, ESQ.
                                         AMY S. TAYLOR, ESQ.


For the Defendant:                       ADAM KIRSCHNER
                                         SCOTT DUNN
                                         Assistant U.S. Attorneys



Court Reporter:                          Anthony M. Mancuso
                                         225 Cadman Plaza East
                                         Brooklyn, New York 11201
                                         (718) 613-2419


Proceedings recorded by mechanical stenography, transcript
produced by CAT.
```

ANTHONY M. MANCUSO,  CSR  OFFICIAL COURT REPORTER

2

1        (Case called; both sides ready.)
2        MR. WISHNIE:  Good afternoon, your Honor.  Michael
3  Wishnie, Jerome N. Frank Legal Services Organization, for the
4  plaintiff.
5        THE COURT:  Nice to meet you, professor.
6        MR. WISHNIE:  With me today is Willem Bloom, a law
7  student intern, who will be handling the hearing.
8        MS. TAYLOR:  Amy Taylor, Make The Road New York, for
9  plaintiff.
10       MS. TUMLIN:  Karen Tumlin, National Immigration Law
11  Center, for plaintiff.
12       MR. KIRSCHNER:  Adam Kirschner with the Department
13  of Justice and with me I think you might know.
14       MR. DUNN:  Scott Dunn from the U.S. Attorney's
15  Office.
16       THE COURT:  Yes, Mr. Dunn and I have done a lot of
17  business over the years.  Nice to see you all.
18       And you are Mr. Bloom?
19       MR. BLOOM:  Willem Bloom.
20       THE COURT:  You are a student where.
21       MR. BLOOM:  In The Jerome Frank Legal Services
22  Organization.
23       THE COURT:  What year are you in at Yale?
24       MR. BLOOM:  Third year.
25       THE COURT:  You are not going to Kirkland & Ellis,

1   are you?
2             MR. BLOOM:  No, your Honor.
3             THE COURT:  It's a great law firm.  Let me say that.
4             So, tell me why are you here after my colleague down
5   in the Southern District of Texas, that erudite jurist, has
6   issued nationwide preliminary injunction and you want me to
7   carve out what you might call the Second Circuit exception to
8   that, if you will?
9             MR. BLOOM:  I would like to note to Mr. Vidal is
10  with us in the courtroom.
11            THE COURT:  How old is he?
12            MR. BLOOM:  25.
13            THE COURT:  He fits in under either of these two
14  programs.
15            MR. BLOOM:  He was eligible for originally DACA,
16  Deferred Action for Childhood Arrivals, and received his
17  employment.  It was one of the programs that the president's
18  policies allowed undocumented youth to apply for lawful
19  present status and employment authorization under it.
20            THE COURT:  Just speak very slowly because, as I
21  said before, I've been a lawyer for 41 years and, you know, I
22  want to be able to understand everything.
23            MR. BLOOM:  Of course, your Honor.
24            What gives Mr. Batalia Vidal the right to be in
25  front of you is that he had his employment authorization, a

1  three year employment authorization that he was granted by the
2  government revoked in violation of the Administrative
3  Procedure Act.  The revocation was not in accordance with law
4  and it was contrary to established regulatory agency
5  procedures.  The only reason given by government for the
6  revocation of his three year employment authorization was the
7  injunction in United States v. Texas.
8              THE COURT:  No.  It was not an injunction.  It was a
9  preliminary injunction.
10             MR. BLOOM:  Yes, your Honor.  Excuse me.  A
11 preliminary injunction.
12             THE COURT:  Without a hearing.
13             MR. BLOOM:  Yes, to which Mr. Vidal was not a party
14 and to which the court did not have jurisdiction to reach
15 Mr. Vidal here in New York.  Under the principles of the
16 Martin v. Wilks he has every right to come into your court and
17 seek relief under the Administrative Procedure Act.
18             THE COURT:  That's why you feel you can be here and
19 that the preliminary injunctive relief that was granted in the
20 Southern District of Texas and affirmed by the Fifth Circuit
21 would not reach his situation here in New York?  Is that it?
22             MR. BLOOM:  Yes.
23             THE COURT:  So, the case involves one person.  He's
24 your only client.
25             MR. BLOOM:  Well, your Honor, we would like to alert

1  you.  We informed opposing counsel yesterday, Make The Road
2  New York will be joining as an organizational plaintiff.
3            MS. TAYLOR:  Make The Road New York.
4            THE COURT:  What does make the road New York do?
5            MS. TAYLOR:  We are a membership-based organization,
6  we have nineteen thousand dues paying members in New York
7  State and we advocate for immigrant and working class families
8  in New York on a whole range of policy issues, including
9  immigrant rights.  We have many members like Martin who have
10 DACA who are eligible for expanded DACA and DAPA and we are
11 here both representing Martin as his lawyer and ready to
12 become an organizational plaintiff.  We have a legal
13 department.  We provide legal services to DACA.
14           THE COURT:  Let me give you fair warning.  Have you
15 heard of the Disability Advocates case regarding
16 representational litigation?  I know about it.  It was my case
17 and the Second Circuit said that Disability Advocates, after I
18 ruled in the case, after a long bench trial and a 212 page
19 decision, drafted in large measure by a graduate of the Yale
20 Law School, a wonderful law clerk that I had, that the Second
21 Circuit ruled that representational standing was not
22 permitted.  There was no Article III standing.
23           So if you want to get involved in this case
24 organizationally, I just warn you that representative status
25 may not be sufficient to meet your Article III standing

6

1  obligations and so just be very careful.

2  There is a plaintiff here, but you may not -- and
3  I'm not sure, you do the research -- be able to appear as a
4  party.  You may have to have individuals who intervene in the
5  case, if that's your plan to intervene.  So let's not cross
6  that unpleasant situation that I had the last time, when in
7  the end the outcome was a positive outcome because the case
8  was settled and now I'm managing the settlement.  But just be
9  careful.

10  MS. TAYLOR:  Thank you, your Honor.  We have
11  researched the issue in-depth and we feel confident that we
12  have standing both organizationally and associational standing
13  and I can explain more if you are interested or another time.

14  THE COURT:  We're not debating that right now.  I'm
15  just mentioning this to you because I don't want to cross that
16  bridge ever again.  You are not going to ask me whether I
17  agreed with the Second Circuit but it is the Second Circuit
18  after all.  Speaking of the Second Circuit, what's my
19  government's position?

20  MR. KIRSCHNER:  Well, your Honor, I would want to
21  first mention that we disagree with the nationwide injunction.
22  That's why we vehemently and strenuously asserted opposition
23  to it in the Southern District of Texas.  In fact, we moved to
24  stay the preliminary injunction proceedings explicitly
25  discussed the nationwide scope of the injunction.  We then

7

1   appealed that to the Fifth Circuit, both the stay decision and
2   under the underlying preliminary injunction, and,
3   unfortunately, we lost.
4           THE COURT: Both of those decisions were two to one.
5   It was split panel in both cases?
6           MR. KIRSCHNER: Yes, your Honor.
7           THE COURT: Did you ask for an en banc on any of
8   that.
9           MR. KIRSCHNER: On the underlying injunction we went
10  to the supreme court and we had a four/four divided court
11  affirming the Fifth Circuit and pending before the supreme
12  court is our petition rehearing that has not been decided
13  upon.
14          THE COURT: It's still the same eight justices.
15          MR. KIRSCHNER: Our rehearing petition is a petition
16  for there to be a rehearing when there is a ninth justice and
17  that's pending currently before the supreme court.
18          THE COURT: There's no certainty when that will be
19  either.
20          MR. KIRSCHNER: I mean we could all speculate. I
21  don't want to be here to speculate.
22          THE COURT: Exactly. I understand. I'm glad you
23  brought me up to date.
24          MR. KIRSCHNER: The problem is plaintiff is trying
25  to put us in an untenable position. We are subject to an

8

1  injunction right now.  And there's no way for us, based on
2  plaintiff's complaint, to be subject to the injunction that we
3  are subject to in the Southern District of Texas and the
4  injunction that they are asking this court to issue.  These
5  are completely conflicting injunctions and that we are left in
6  the untenable position to be left with conflicting
7  injunctions.
8           THE COURT:  I understand that.
9           MR. KIRSCHNER:  So our position will be to ask the
10 court to dismiss this case.  The parties have agreed that
11 there's no factual development necessary.  Plaintiff has
12 brought this case as an APA action.  My experience with APA
13 actions, the plaintiff goes first to explain why it's
14 arbitrary and capricious.  Normally we would have moved to
15 dismiss.  We have now reached a proposed briefing schedule
16 where we submitted that for the parties to cross move on
17 dispositive motions for your consideration.
18          THE COURT:  Is it the government's position that an
19 injunction, preliminary injunction, in the Southern District
20 of Texas affirmed by the Fifth Circuit, affirmed by an equally
21 guided supreme court, which has no precedential value as a
22 supreme court decision, all right, the way I learned about
23 federal court -- that was a long time ago -- but I don't think
24 that changed.  That somehow a court sitting in Brooklyn New
25 York, in the Second Circuit, must give full faith and credit

9

1 to a decision of the Fifth Circuit which may be erroneous?

2 MR. KIRSCHNER: Well, your Honor, the problem is
3 that it was the nationwide scope of the injunction. It's not
4 the fact that there's an injunction in the Southern District
5 of Texas. It is that the Southern District of Texas and the
6 Fifth Circuit explicitly addressed this issue that plaintiff
7 is bringing before you and explicitly ruled as a nationwide
8 injunction.

9 THE COURT: How does Judge Garaufis issue a
10 nationwide injunction if someone comes to him with a claim
11 that affects the rights of people in California who have not
12 been before the court, when there's been no hearing. There
13 was no hearing in Texas. He did it all in three weeks on
14 papers and that was it. Why should a judge in California --
15 let's keep Texas out of this for a minute -- why should a
16 judge in California in the Ninth Circuit be constrained in
17 adjudicating the individual rights of a resident of let's say
18 the Northern District of California because Judge Garaufis in
19 the Eastern District of New York decided to impose some
20 gargantuan preliminary injunction? That doesn't sound like
21 justice to me.

22 MR. KIRSCHNER: Your Honor, a couple of responses.
23 First, I just want to state for the record that there was a
24 hearing on the preliminary injunction proceeding in the
25 Southern District of Texas.

1   THE COURT: Oh, really.
2   MR. KIRSCHNER: Oral argument.
3   THE COURT: That's not a hearing. That's oral
4   argument. There's a difference. A hearing is people get on
5   the witness stand and they testify. Oral argument is lawyers
6   talk and you know how valuable lawyers talking is.
7   MR. KIRSCHNER: Understood. I just wanted to note
8   that.
9   THE COURT: It's not a hearing. In the parlance of
10  this court, that's not a hearing. That's an oral argument.
11  It's what you are doing, in effect, here preliminarily. Go
12  ahead. I understand your point.
13  MR. KIRSCHNER: But, your Honor, the issue is the
14  United States was a party in the Southern District of Texas.
15  The United States is a party here. Mr. Vidal was not a party.
16  In fact, one thing I want to correct for the record,
17  plaintiff just stated that deferred action confers lawful
18  present status. We vehemently disagree with that
19  characterization. We stated so in the supreme court. There
20  is no lawful status provided by DACA that this is a deferral
21  of removal that allows one to have work authorization.
22  THE COURT: I've read DACA. I've read DAPA. I read
23  them both. I understand what the scope of those policies is.
24  I've read them both. So I understand your point. So,
25  whatever was said by counsel, I understand your point.

1 MR. KIRSCHNER: To answer your question about
2 California residents, the answer is that the United States
3 would be the defendant. The United States is the same party
4 in that situation that you have described just as it is the
5 same party here. And a case that's very instructive is a
6 Fourth Circuit case called Feller v. Brock and in that case
7 the Department of Labor was under an injunction in the
8 District of Columbia and there was a conflicting injunction
9 issued in a District Court in West Virginia and the Fourth
10 Circuit said that principles of equity would be that the
11 Department of Labor could not be subject to this conflicting
12 injunction and overturned the injunction that was in West
13 Virginia.
14 One of the things that occurred that is very
15 instructive is that the plaintiff in the District of Columbia
16 brought contempt proceedings against the Department of Labor
17 for complying with the District Court in West Virginia,
18 because the department of labor was in an impossible situation
19 in that case of both complying with the District of Columbia
20 and the District Court in West Virginia and that's the problem
21 here.
22 THE COURT: I understand. I know you have a
23 problem. Understood. But then, again, I have a problem which
24 is the rights of this individual, all right, and whoever else
25 comes along. So I understand that and maybe perhaps I'll

12

1  decide whatever I decide.  Someone will take it up to the
2  Second Circuit and guess what?  There might be a circuit split
3  or the circuit will say they agree with the Fifth Circuit or
4  we should give full faith and credit and comity, whatever you
5  want to call it, to the actions of the Fifth Circuit in order
6  to avoid placing the government in an untenable position.
7         By that time there will be a new president and there
8  will be a new Congress and it may be an issue in the political
9  branches and we may not have anything to do here.  I have no
10 idea.  But right now the question is the plaintiff has brought
11 this problem to me and, as sympathetic as I am to the
12 government's predicament, the plaintiff has brought the issue
13 to the court and I should be dealing with the issue if I can.
14 Maybe I can't, and we're going to find out if I should.
15 That's all.
16        So I understand your problem.  I sympathize with
17 your problem, but I do not sympathize with the idea that I am
18 hamstrung in dealing with an issue involving individual rights
19 and including the right to go make a living and have a life as
20 an immigrant in the United States.  So I don't know what's
21 going on out there to Texas on the border but I know what's
22 going on in New York.  And I'm very concerned about it and I
23 have absolutely no intention of simply marching behind in the
24 parade that's going on out there in Texas, if this person has
25 rights here.

1   So just bear that in mind.

2   So, now, having said all that, I have this
3   extraordinary letter from Mr. Kirschner about a briefing
4   schedule. So you all agree to this briefing schedule?

5   MR. BLOOM: Yes, your Honor?

6   THE COURT: I don't agree to it. It's too long.
7   How long will it take to do this brief? I know it's part of
8   an educational program. October 6. You could do it by
9   October 6.

10  MR. WISHNIE: Yes, your Honor. And we'll file the
11  amended complaint before then. So it would be a motion on the
12  amended complaint.

13  THE COURT: There you go. And you want November 16.
14  Strangely November 16 is after November 8. So we're not doing
15  this on November 16.

16  MR. KIRSCHNER: Your Honor, I do want to say one
17  thing. Normally we would have 60 days to respond to the
18  complaint.

19  THE COURT: I don't care.

20  MR. KIRSCHNER: We would have the 60 days, and it
21  would not be until the end of October. I do want to note that
22  we would normally have opposed plaintiff moving for early
23  summary judgment to give us an opportunity to move to dismiss
24  and that we had agreed to this schedule in an effort to
25  consolidate the briefing and to make it more streamlined for

1  the court. Otherwise, there would have been three briefs for
2  plaintiff's summary judgment, three briefs for our motion to
3  dismiss. It would have been elongated. When we were working
4  on the schedule I have a personal conflict toward the end of
5  October that we were trying to take into account and we are
6  trying to take into account their final schedules and holidays
7  and that's how we came to this agreement. It took into
8  account all equities for both sides.
9        THE COURT: Mr. Dunn knows about my view of
10 counsel's issues and schedules. Do you remember we had a
11 scheduling issue together?
12       MR. DUNN: Very well, your Honor.
13       THE COURT: He got it done. He worked all night.
14 He got it done. I was very impressed.
15       MR. KIRSCHNER: The other thing I will say about
16 this case, this is a case that, obviously, these issues are of
17 great importance and as much as I would say it's just me, your
18 Honor, it involves a lot of coordination within the
19 department, coordination with our client.
20       THE COURT: I understand. I have worked for the
21 federal government in the executive branch and there is a lot
22 of coordination with these kinds of submissions and you do
23 have problems that are not of you're making. I appreciate
24 that. But November 16 is a lot of time. So all I'm saying is
25 that why don't we cut that back a week. I want to get it done

ANTHONY M. MANCUSO, CSR OFFICIAL COURT REPORTER

1  this year is what I am saying, without creating major
2  difficulties for you, sir.  Why don't we make it November 10.
3         MR. KIRSCHNER:  Thank you, your Honor.
4         THE COURT:  And then you can get this done -- a
5  response by November 30?
6         MR. WISHNIE:  Yes, your Honor.
7         THE COURT:  And you have a plaintiff's motion.  We
8  have consolidated opposition by November 10.  Then you had
9  December 6 for the opposition and I have November 30 for the
10 opposition.  What's the fourth item, January?
11        MR. KIRSCHNER:  That's our reply for our dispositive
12 motion.
13        MR. WISHNIE:  That second brief, your Honor, will be
14 both the government's opposition to plaintiff's motion and
15 their opening brief on their motion.  The fourth brief is the
16 last shortest brief and is a reply exclusively on the
17 government's motion.
18        THE COURT:  I got it.
19        December 28 for the defendant's reply to the
20 plaintiff's opposition to defendant's motion.
21        MR. KIRSCHNER:  Your Honor, because it would be a
22 motion to dismiss, it would be in lieu of an answer.  Because
23 of the scheduling, just being where it is, just to formally
24 stay the answer.
25        THE COURT:  Your motion is granted.  I'm going to

16

1  stay the answer to the proposed, expected, anticipated amended
2  complaint until 30 days after the decision of the court on
3  motions in the case.
4           MR. KIRSCHNER:  One other matter, your Honor, is
5  because of this briefing schedule we would have anticipated
6  filing a premotion letter before we filed our motion.  We
7  would asked to be excused from doing a premotion letter.
8           THE COURT:  Absolutely.  You are here.  The purpose
9  of that, that rule, is to alert attorneys that they should
10 come to court and explain why they think a motion is
11 necessary.  I'm really addressing this to the students.  There
12 are times when a party will want to make a motion to dismiss
13 when the case can't be decided on a 12(b) motion and we really
14 need to have some amount of discovery.  It might be a limited
15 discovery, but some discovery is necessary.  And so rather
16 than have a motion made that cannot be granted, it's better to
17 share that problem with the parties and send them to a
18 Magistrate Judge for some discovery and then permit some
19 motion practice after the discovery.  So that's really why I
20 have that rule.
21          And then there are times when the parties come in
22 and the defense explains why one of the claims doesn't have
23 any validity and the plaintiff will say I'm going to withdraw
24 the claim.  So we've narrowed the case in that way.  So that's
25 why a pre-motion conference for me at least is a very valuable

17

1 process.
2 MR. KIRSCHNER: Understood.
3 THE COURT: I just wanted to point that out.
4 So, the plaintiff is still here on the two-year
5 permit, right?
6 MR. KIRSCHNER: Yes.
7 THE COURT: His rights, he's not in any danger of
8 losing his current status between now and January, correct?
9 MR. KIRSCHNER: Correct. And he currently has
10 employment authorization as cited in the complaint and also
11 it's subject to renewal, too.
12 THE COURT: What does he have to do, pay another
13 fee?
14 MR. KIRSCHNER: Another application process, which
15 includes a fee.
16 THE COURT: Is that what it costs Texas to process a
17 driver's license? That was rhetorical. Say hi to my friends
18 at the justice department. Say hi to my friends at Yale.
19 So, is there anything else from the plaintiff and
20 proposed intervenor? If you wish to intervene, I wish you
21 would do it right away so that the government knows who you
22 are and what your claims are.
23 When are you going to file your amended complaint?
24 MR. BLOOM: We should be able to do it by the end of
25 next week.

18

1  THE COURT: In terms of intervention when would that
2  be?
3  MR. WISHNIE: We meant to do the same thing, just to
4  join an additional plaintiff in the amended complaint.
5  THE COURT: So it will be done through the amended
6  complaint?
7  MR. WISHNIE: Yes, your Honor.
8  THE COURT: You understand that?
9  MR. KIRSCHNER: Yes.
10  THE COURT: You're okay with that?
11  MR. KIRSCHNER: We'll see.
12  THE COURT: You'll address everything at the same
13  time?
14  MR. KIRSCHNER: Yes.
15  THE COURT: Anything else from anybody on this side?
16  MR. WISHNIE: In terms of scheduling, I don't know
17  if you would intend to hold oral argument on the motion or if
18  so you would want to wait and see the papers and decide then.
19  THE COURT: I think I would like to wait and see the
20  papers. If you want a date, let me give you a date in
21  January.
22  MR. WISHNIE: That would be great. Thank you, your
23  Honor:
24  THE COURT: Wednesday, January 25 at two p.m. for
25  oral argument on the motions. Nice to meet you all. OooOoo0