**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, ) <br> Plaintiffs, ) <br> v. ) <br> UNITED STATES OF AMERICA, *et al.*, ) <br> Defendants, ) <br> KARLA PEREZ, *et al.*, ) <br> Defendants-Intervenors. ) | Case No. 1:18-cv-0068-ASH |

**MEMORANDUM OF LAW OF CONGRESSMEN STEVE KING, ANDY BIGGS,
AND PAUL A. GOSAR AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANTS-INTERVENORS' MOTION TO DISMISS**

Christopher J. Hajec
Director of Litigation
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
D.C. Bar No. 464777 (admitted *pro hac vice*)
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Andrew L. Schlafly
*Attorney in Charge*
New Jersey Bar No. 04066-2003
Southern District of Texas No. NJ04066
939 Old Chester Rd.
Far Hills, NJ 07931
Phone: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

*Counsel for Amici Curiae*

## **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... ii

Introduction ........................................................................................................................1

Standard of Review ...........................................................................................................2

Summary of Argument ......................................................................................................2

I.   There are no jurisdictional or prudential barriers to resolving this dispute. ............................3

    A.   The States have the same standing here that they had in *Texas*. .......................................4

    B.   This Court has jurisdiction to determine its jurisdiction, notwithstanding that the defendants-intervenors lack standing. ....................................5

    C.   Only the *jurisdictional* aspects of defendants-intervenors' motion may be germane to the States' motion for a preliminary injunction. ..............................7

    D.   A "friendly" or "collusive" federal-State relationship would not pose a *jurisdictional* bar to this litigation. ....................................8

    E.   Dismissal on jurisdictional grounds would not be dismissal with prejudice. ....................................10

II.  Other courts' injunctions against DACA's *rescission* cannot bar relief against DACA's *promulgation*. ....................................10

    A.   Whether DACA's promulgation was procedurally and substantively unlawful is a different question from whether DACA's rescission was unlawful. ....................................10

    B.   Defendants-intervenors misconstrue the Article III nexus between this litigation and cases such as *Regents*. ....................................12

    C.   This litigation is neither a "collateral attack" on nor a "horizontal appeal" from extra-circuit challenges to DACA's rescission. ....................................14

    D.   The States' general pleading would allow *vacatur* relief, even if their Complaint requests only declaratory relief against DACA. ..............................15

    E.   A preliminary injunction is insufficiently final to deny this Court of an Article III case or controversy. ....................................17

Conclusion ........................................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Air Transp. Ass'n of Can. v. FAA,*
254 F.3d 271 (D.C. Cir. 2001) ........................................................................16

*Alexander v. Cockrell,*
294 F.3d 626 (5th Cir. 2002) ..........................................................................16

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ..........................................................................................6

*Allen v. Wright,*
468 U.S. 737 (1984) ......................................................................................4, 12

*Am. Elec. Power Co. v. Connecticut,*
564 U.S. 410 (2011) .................................................................................... 11-12

*Am. Mining Congress v. Mine Safety & Health Admin.,*
995 F.2d 1106 (D.C. Cir. 1993) .......................................................................6

*American Bioscience, Inc. v. Thompson,*
269 F.3d 1077 (D.C. Cir. 2001) .....................................................................15

*Ariz. Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) ................................................................... 11-12

*Arizona Dream Act Coal. v. Brewer,*
855 F.3d 957 (9th Cir. 2017) .................................................................... 11-12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................................2

*Avoyelles Sportsmen's League, Inc. v. Marsh,*
715 F.2d 897 (5th Cir. 1983) ..........................................................................16

*Baker v. Carr,*
369 U.S. 186 (1962) ...................................................................................... 9-10

*Bd. of Miss. Levee Comm'rs v. EPA,*
674 F.3d 409 (5th Cir. 2012) .......................................................................2, 4

*Bemis Brothers Bag Co. v. United States,*
289 U.S. 28 (1933) ...........................................................................................16

*Cadle Co. v. Whataburger of Alice,*
174 F.3d 599 (5th Cir. 1999) ..........................................................................14

*Cedars-Sinai Med. Ctr. v. Shalala,*
125 F.3d 765 (9th Cir. 1997) ..........................................................................14

*Chem. Mfrs. Ass'n v. NRDC,*
470 U.S. 116 (1985) .........................................................................................13

*Chicago & G.T. Ry. Co. v. Wellman,*
143 U.S. 339 (1892) ...........................................................................................9

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................................7

*DeCanas v. Bica*,
  424 U.S. 351 (1976) ..............................................................................................1

*FEC v. Akins*,
  524 U.S. 11 (1998) ................................................................................................5

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) ..............................................................................................3

*Garcia v. LG Elecs. USA Inc.*,
  No. B-11-61, 2011 U.S. Dist. LEXIS 67165 (S.D. Tex. June 23, 2011) ............17

*General Elec. Co. v. EPA*,
  290 F.3d 377 (D.C. Cir. 2002) ............................................................................6

*Green v. Mansour*,
  474 U.S. 64 (1985) ..............................................................................................12

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  634 F.3d 787 (5th Cir. 2011) ................................................................................2

*Hitt v. City of Pasadena*,
  561 F.2d 606 (5th Cir. 1977) ..............................................................................10

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) .......................................................................................8, 10

*Holt Civic Club v. Tuscaloosa*,
  439 U.S. 60 (1978) ..............................................................................................16

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
  143 F.3d 1006 (5th Cir. 1998) ..............................................................................2

*Hyder v. Keisler*,
  506 F.3d 388 (5th Cir. 2007) ..............................................................................12

*In re Blast Energy Servs., Inc.*,
  593 F.3d 418 (5th Cir. 2010) ..............................................................................13

*In re GWI PCS 1, Inc.*,
  230 F.3d 788 (5th Cir. 2000) ..............................................................................11

*In re Scruggs*,
  392 F.3d 124 (5th Cir. 2004) ..............................................................................13

*Kamen v. Kemper Fin. Servs.*,
  500 U.S. 90 (1991) ...........................................................................................2, 6

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ......................................................................................14-15

*Lane v. Inman*,
  509 F.2d 184 (5th Cir. 1975) ..............................................................................12

*LeMaire v. Louisiana*,
  480 F.3d 383 (5th Cir. 2007)................................................................................7

*Lockhart v. Leeds*,
  195 U.S. 427 (1904)........................................................................................16

*Loving v. United States*,
  517 U.S. 748 (1996)..........................................................................................1

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................4-6

*Maher v. Roe*,
  432 U.S. 464 (1977)........................................................................................13

*Mobil Oil Corp. v. Dep't of Energy*,
  610 F.2d 796 (Temp. Emer. Ct. App. 1979) ......................................................16

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*,
  463 U.S. 29 (1983)..........................................................................................14

*NAACP v. Trump*,
  2018 U.S. Dist. LEXIS 68589 (Apr. 24, 2018) ...................................................3

*Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*,
  725 F.2d 761 (D.C. Cir. 1984) ........................................................................11

*New York City Transit Authority v. Beazer*,
  440 U.S. 568 (1979)..........................................................................................8

*Omolo v. Gonzales*,
  452 F.3d 404 (5th Cir. 2006)..........................................................................5-6

*Organized Vill. of Kake v. United States Dep't of Agric.*,
  795 F.3d 956 (9th Cir. 2015)............................................................................11

*Raines v. Byrd*,
  521 U.S. 811 (1997)........................................................................................4-5

*Regents of the Univ. of Cal. v. United States, Dep't of Homeland Sec.*,
  279 F.Supp.3d 1011 (N.D. Cal. 2018) ...............................3, 6, 9-15, 17

*Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*,
  32 F.3d 205 (5th Cir. 1994)................................................................................2

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997)............................................................................14

*Schweiker v. Gray Panthers*,
  453 U.S. 34 (1981)..........................................................................................13

*Shell Offshore Inc. v. Babbitt*,
  238 F.3d 622 (5th Cir. 2001)..............................................................................6

*Sierra Club v. Glickman*,
  156 F.3d 606 (5th Cir. 1998)..............................................................................5

*State of Ohio Dep't of Human Serv. v. U.S. Dep't. of Health & Human Serv.,*
   *Health Care Financing Admin.*, 862 F.2d 1228 (6th Cir. 1988)..........................................16

*Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.,*
   201 F.3d 551 (5th Cir. 2001).........................................................................................6

*Texas v. United States*, 86 F.Supp.3d 591 (S.D. Tex. 2015),
   *aff'd* 809 F.3d 134 (5th Cir.),
   *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016)............................................1

*Texas v. United States*, 809 F.3d 134 (5th Cir.),
   *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016)................................ 1, 4, 6, 11-12

*Touche Ross & Co. v. Redington,*
   442 U.S. 560 (1979)......................................................................................................6

*Town of Chester v. Laroe Estates, Inc.,*
   137 S.Ct. 1645 (2017)...................................................................................................7

*United States Steel Corp. v. United States Envtl. Prot. Agency,*
   595 F.2d 207 (5th Cir. 1979).......................................................................................16

*United States v. Johnson,*
   632 F.3d 912 (5th Cir. 2011).........................................................................................4

*United States v. Mendoza,*
   464 U.S. 154 (1984).....................................................................................................12

*United States v. Picciotto,*
   875 F.2d 345 (1989).....................................................................................................16

*United States v. Windsor,*
   570 U.S. 744 (2013)....................................................................................................8-9

*United States v. Wyatt,*
   680 F.2d 1080 (5th Cir. 1982).....................................................................................16

*Univ. of Texas v. Camenisch,*
   451 U.S. 390 (1981).....................................................................................................17

*Warth v. Seldin,*
   422 U.S. 490 (1975).......................................................................................................2

## STATUTES

U.S. CONST. art. I, §1 ...........................................................................................................1

U.S. CONST. art. I, §8, cl. 4 ..................................................................................................1

U.S. CONST. art. II, §3..........................................................................................................1

U.S. CONST. art. III .........................................................................1-2, 4, 6-10, 12-13, 17

1 U.S.C. §7...........................................................................................................................8

Administrative Procedure Act,
   5 U.S.C. §§551-706.................................................................................. 1, 5, 13-15, 17

5 U.S.C. §706(2)(D)................................................................................................15

All Writs Act,
    28 U.S.C. §1651(a).........................................................................................15, 17

## **RULES AND REGULATIONS**

FED. R. CIV. P. 12(b)(1) ...........................................................................................2

FED. R. CIV. P. 12(b)(6) ...........................................................................................2

FED. R. CIV. P. 54(c) ......................................................................................... 16-17

## INTRODUCTION

Following *Texas v. United States*, 86 F.Supp.3d 591 (S.D. Tex. 2015), *aff'd* 809 F.3d 134 (5th Cir.), *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016) ("*Texas*"), several *Texas* state plaintiffs[1] (collectively, the "States") sue the United States and relevant immigration officials to overturn the program known as Deferred Action for Childhood Arrivals ("DACA"), adopted by the prior administration between 2012 and 2014 and rescinded by the current administration in 2017. As in *Texas*, the States challenge DACA under the notice-and-comment rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. §§551-706 ("APA"), substantive immigration law, and the Constitution's Take Care Clause, U.S. CONST. art. II, §3. Both a group of DACA beneficiaries represented by the Mexican-American Education & Legal Defense Fund ("MALDEF") and the State of New Jersey have intervened as defendants, and the former have moved to dismiss on issues related to Article III standing (ECF #118).

As set forth in more detail in the accompanying motion for leave to file, *amici curiae* Congressman Steve King, Representative of Iowa's 4th Congressional District, Congressman Andy Biggs, Representative of Arizona's 5th Congressional District, and Congressman Paul A. Gosar, D.D.S, Representative of Arizona's 4th Congressional District (collectively, "*Amici*") are Members of the One Hundred Fifteenth Congress, the branch of government that the Constitution vests not only with plenary power over the field of immigration, U.S. CONST. art. I, §8, cl. 4; *DeCanas v. Bica,* 424 U.S. 351, 354 (1976), but also with the authority to make law. U.S. CONST. art. I, §1; *Loving v. United States,* 517 U.S. 748, 771 (1996). By purporting to make substantive immigration law without complying with the APA's procedural rulemaking process delegated to

---

[1]     Plaintiffs are Alabama, Arkansas, Louisiana, Kansas, Nebraska, South Carolina, Texas, West Virginia, and the Governors of Mississippi and Maine.

executive agencies, the federal defendants' predecessors in the prior administration violated the separation of powers principle that underlies our government. *Amici* respectfully ask this Court to deny the motion to dismiss and proceed to the merits.

## STANDARD OF REVIEW

The motion to dismiss raises not only jurisdictional issues of constitutional standing under Article III but also related prudential-standing issues. Article III standing is jurisdictional under Rule 12(b)(1), while prudential and statutory standing fall under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Courts resolve the two types of issues differently. Significantly, prudential standing is waivable, *Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417-18 (5th Cir. 2012), while jurisdictional issues such as Article III standing cannot be waived, *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 207 (5th Cir. 1994), and can be raised even by an *amicus curiae*. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 97 n.4 (1991). Courts should dismiss under Rule 12(b)(1) "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief," *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998), "accept[ing] as true all material allegations of the complaint, and … constru[ing] the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). To survive a Rule 12(b)(6) motion, complaints must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (interior quotation marks omitted).

## SUMMARY OF ARGUMENT

Defendants-intervenors seek to make two primary arguments under the Article III standing inquiry: (1) the positions of the federal defendants and state plaintiffs align — that is, they want the same things — and therefore do not present an Article III case or controversy, MALDEF Memo. at 8-10; and (2) the injunctions in extra-circuit litigation challenging DACA's rescission

require the federal defendants to continue DACA, *see, e.g.*, *Regents of the Univ. of Cal. v. United States, Dep't of Homeland Sec.*, 279 F.Supp.3d 1011, 1031 (N.D. Cal. 2018); *NAACP v. Trump*, 2018 U.S. Dist. LEXIS 68589 (Apr. 24, 2018), and thus prevent this Court from redressing the States' injuries. MALDEF Memo. at 10-12. Neither argument gives a sufficient basis to dismiss the States' claims.

First, dismissal of so-called "friendly" or "collusive" suits is typically prudential rather than jurisdictional, and, in any event, this litigation presents the conditions for neither prudential nor jurisdictional dismissal. *See* Section I.D, *infra*. Indeed, jurisdictionally, the States have the same standing here that they had in *Texas*, bolstered by their allegations of procedural injuries, which lower the constitutional threshold for redressability and immediacy. *See* Section I.A, *infra*. Indeed, it is defendants-intervenors who lack standing because DACA could not create rights without notice-and-comment rulemaking, and defendants-intervenors lack standing to seek any relief not sought by the party they support. *See* Section I.B, *infra*.

Second, extra-circuit challenges to the government's *rescission* of a rule in 2017 are distinct from this challenge to the government's *promulgation* of that rule in 2012-2014, and favorable results for defendants-intervenors in those extra-circuit cases will not aid defendants-intervenors here. *See* Section II.A, *infra*. Moreover, the extra-circuit decisions at issue are merely preliminary injunctions that have not finally decided the merits of those cases, making them even less relevant to the ultimate merits here. *See* Section II.E, *infra*.

## I.   THERE ARE NO JURISDICTIONAL OR PRUDENTIAL BARRIERS TO RESOLVING THIS DISPUTE.

Federal courts have the obligation to assure themselves of their jurisdiction before they resolve a case's merits. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Indeed, both jurisdictional and prudential limits are proper issues for federal courts to consider:

> "All of the doctrines that cluster about Article III — not only standing but mootness, ripeness, political question, and the like — relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government."

*Allen v. Wright*, 468 U.S. 737, 750 (1984) (*quoting Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-1179 (D.C. Cir. 1983) (Bork, J., concurring)). That said, parties can waive non-jurisdictional issues, *Miss. Levee Comm'rs*, 674 F.3d at 417-18, and the party asserting those issues must have its own standing to raise them. *See* Sections I.A-I.B, *infra*. These limitations make it critical to analyze the standing not only of the plaintiff States but also of the defendants-intervenors, as well as the jurisdictional versus prudential nature of defendants-intervenors' arguments.

### A.   <u>The States have the same standing here that they had in *Texas*.</u>

An Article III injury in fact requires (1) an actual or imminent invasion of a constitutionally cognizable interest that is not only concrete and particularized, but also actual or imminent, (2) causally connected to the challenged conduct, and (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As an initial matter, leaving temporarily aside the issues that defendants-intervenors raise – namely the allegedly collusive nature of this litigation and the claimed redressability problem caused by allegedly inconsistent injunctive relief from other courts – the States here would have standing for the same reasons they had it in *Texas*, 809 F.3d at 150-62. Indeed, the States' standing is bolstered vis-à-vis the immediacy and redressability requirements because the States assert procedural injuries, which lowers the thresholds for those constitutional inquiries. *Defenders of Wildlife*, 504 U.S. at 571-72 & n.7; *United States v. Johnson*, 632 F.3d 912, 921 (5th Cir. 2011). Defendants-intervenors rely on *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997), to impose an "especially rigorous" standing analysis, MALDEF Memo. at 7, but by its terms *Raines*, 521 U.S. at 819-20, applies only to

*constitutional* issues. Contrary to *Raines*, procedural-rights cases *relax* the standing analysis for statutory issues such as compliance with APA notice-and-comment requirements.

For procedural-rights redressability, all the States must show is that vacating DACA and remanding the issue to Congress for legislation or to the federal defendants for an actual rulemaking would give the States a chance to protect their interests:

> although a procedural rights plaintiff is not held to the normal standards for [redressability], in the sense that the plaintiff need not show that the procedural remedy that he is requesting will in fact redress his injury, the plaintiff must nonetheless show that there is a possibility that the procedural remedy will redress his injury. In order to make this showing, the plaintiff must show that "the procedures in question are designed to protect some threatened concrete interest of [its] that is the ultimate basis of [its] standing."

*Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir. 1998) (*quoting Defenders of Wildlife*, 504 U.S. at 573 n.8) (alterations in *Sierra Club*). Given that the federal defendants have *rescinded* DACA and that Congress did not enact DACA-like legislation, either during the rescission's six-month wind-down period or afterward, it is impossible to deny "there is a *possibility* that the procedural remedy will redress his injury." *Id.* (emphasis added). Indeed, the instant situation is what golfers call a "gimme," *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996), where even a mulligan (that is, *vacatur* and remand for a "do-over") would suffice:

> If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case — even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason.

*FEC v. Akins*, 524 U.S. 11, 25 (1998). *Amici* respectfully submit that the States have procedural standing to challenge DACA's initial promulgation.

**B.    This Court has jurisdiction to determine its jurisdiction, notwithstanding that the defendants-intervenors lack standing.**

Courts necessarily have jurisdiction to determine whether they have jurisdiction: "we

always have jurisdiction to determine our jurisdiction." *Omolo v. Gonzales*, 452 F.3d 404, 407 (5th Cir. 2006). Thus, for any truly *jurisdictional* issues that defendants-intervenors raise, this Court must resolve those issues. Even an *amicus curiae* can raise jurisdictional issues, *Kamen*, 500 U.S. at 97 n.4, and MALDEF's clients are full-fledged intervenors. This Court therefore has jurisdiction to decide their jurisdictional arguments.

The defect with defendants-intervenors' motion lies in its merely prudential issues, which defendants-intervenors lack standing to raise. As indicated, for standing, parties must assert a judicially cognizable right or "legally protected interest," *Defenders of Wildlife*, 504 U.S. at 560, and defendants-intervenors premise their rights on DACA. To the extent that DACA created rights, however, DACA would have needed to undergo notice-and-comment rulemaking, *Texas*, 809 F.3d at 171; *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 629 (5th Cir. 2001); *Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993), even assuming *arguendo* that agencies could create rights.[2] Similarly, if cases such as *Regents* were correct that DACA's promulgation so bound the agency as to preclude DACA's rescission, DACA needed to undergo notice-and-comment rulemaking (but did not) before binding agency discretion. *Texas*, 809 F.3d at 172-73; *Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551, 556 (5th Cir. 2001); *General Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002). Either way, since DACA did not undergo otherwise-required notice-and-comment rulemaking, DACA is a nullity and void *ab initio*, see Section II.D, *infra* (collecting cases), and as such clearly cannot provide cognizable rights to support defendants-intervenors' standing.

Without their own Article III standing, defendants-intervenors cannot seek relief beyond

---

[2]     Agencies cannot create rights, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n.18 (1979); *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001), which is an independent rationale for rejecting any suggestion that DACA created rights.

the relief that the federal defendants seek. In essence, the same Article III limits that apply to plaintiffs and defendants also apply to intervenors, so intervenors must have standing to seek relief beyond the relief requested by the party supported by the intervenor:

> The same principle applies to intervenors of right. Although the context is different, the rule is the same: For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.

*Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017). Here, defendants-intervenors support the federal defendants, who have not sought dismissal on the prudential grounds asserted in defendants-intervenors' motion. *Amici* respectfully submit that defendants-intervenors are not entitled to a ruling on anything other than *purely jurisdictional* arguments against this litigation.

### C.   Only the *jurisdictional* aspects of defendants-intervenors' motion may be germane to the States' motion for a preliminary injunction.

Insofar as defendants-intervenors raise issues of jurisdiction such as standing, their arguments could apply to the Court's jurisdiction to issue a preliminary injunction, *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (holding that standing is required to obtain a preliminary injunction), but defendants-intervenors' motion to dismiss cannot inject merely prudential issues into the briefing of the motion for a preliminary injunction. Instead, failure to brief non-jurisdictional arguments in opposition to the motion for a preliminary injunction waives those arguments for that motion. *LeMaire v. Louisiana*, 480 F.3d 383, 387 (5th Cir. 2007). As explained elsewhere, defendants-intervenors' arguments are mostly prudential — not jurisdictional — and thus, in the main, defendants-intervenors would waive these arguments for purposes of preliminary relief if defendants-intervenors failed to raise them.

### D.   A "friendly" or "collusive" federal-State relationship would not pose a _jurisdictional_ bar to this litigation.

Defendants-intervenors assert that the States are too aligned with the federal defendants to present an Article III case or controversy, thus requiring this action's dismissal on jurisdictional grounds. MALDEF Memo. at 8-10. If there were no barrier to the parties' implementing their agreed-upon position outside a court, one could perhaps argue that no Article III case or controversy exists, but "friendly" or "collusive" suits are more typically dismissed as a prudential matter. _New York City Transit Authority v. Beazer,_ 440 U.S. 568, 582 n.22 (1979). None of the rationales for such dismissals exists here on either jurisdictional or prudential grounds.

First, as evidenced by the federal litigation over same-sex marriage under the Defense of Marriage Act, 1 U.S.C. §7 ("DOMA"), and California's Proposition 8, government defendants actively can take a plaintiff's side, without the Supreme Court's requiring the case's dismissal as a friendly suit. _See United States v. Windsor_, 570 U.S. 744, 755-63 (2013); _Hollingsworth v. Perry_, 570 U.S. 693, 707-09 (2013). In _Windsor_, the federal governmental defendants agreed to abide by DOMA until a court invalidated DOMA, but also appealed the lower courts' rulings against DOMA, even though the federal governmental defendants supported the plaintiff's position. By contrast, in _Hollingsworth_, the state governmental defendants did not appeal the district court's ruling against Proposition 8, and the Supreme Court held that the defendants-intervenors lacked standing to defend California's marriage laws. In both cases, however, the defendants actively briefed the case with the plaintiffs, without any dismissal for want of adversity.

Second, as demonstrated by _Windsor_, the Article III issue is not how the parties align in their legal views, but rather whether a sufficient case or controversy exists between them:

> The decision of the Executive not to defend the constitutionality of [DOMA] in court while continuing to deny refunds and to assess deficiencies does introduce a complication. Even though the Executive's current position was announced before the District

8

> Court entered its judgment, the Government's agreement with Windsor's position would not have deprived the District Court of jurisdiction to entertain and resolve the refund suit; for her injury (failure to obtain a refund allegedly required by law) was concrete, persisting, and unredressed. The Government's position — agreeing with Windsor's legal contention but refusing to give it effect — meant that there was a justiciable controversy between the parties, despite what the claimant would find to be an inconsistency in that stance.

*Windsor*, 570 U.S. at 756. Similarly here, the federal defendants operate DACA under the *Regents* injunction and thus continue to inflict "concrete, persisting, and unredressed" injuries on the States sufficient to retain an Article III case or controversy.

Third, reflexive dismissal whenever government defendants concur with a plaintiff's legal theory would eliminate or at least drastically curtail the right to redress of the most blatantly illegal actions (namely, laws that even the government will not defend). True collusion requires an end run around the legislative or regulatory process: "It never was the thought that, by means of a friendly suit, a party beaten in the legislature could transfer to the courts an inquiry as to the constitutionality of the legislative act." *Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 344-45 (1892). Instead, "an honest and actual antagonistic assertion of rights by one individual against another" serves as a prudential prerequisite for "the ultimate and supreme function of courts" to "determine whether [an] act be constitutional or not." *Id*. Here, DACA-like relief was unable to acquire a legislative majority, either before DACA's promulgation or after its rescission. Indeed, DACA itself is the end run around Congress, and nothing in the prudential-dismissal line of cases compels this Court to dismiss the States' meritorious challenge to DACA.

Fourth, and finally, participation by groups such as MALDEF ironically *reduces* the need for courts to consider dismissal as a prudential matter. Although defendants-intervenors lack a judicially cognizable right in DACA because of DACA's procedural invalidity, they nonetheless "allege[] such a personal stake in the outcome of the controversy as to assure that concrete

adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Zealous advocacy by defendants-intervenors cannot impart standing on the advocates, *Hollingsworth*, 570 U.S. at 707, but it can lessen the need for this Court to consider *prudential* dismissal. If there are any good arguments for DACA, this Court can be sure defendants-intervenors and the *amici* supporting them will raise those arguments. For this reason, any apparent plaintiff-defendant alignment here poses little risk of this Court's reaching an incorrect result.

### E.   Dismissal on jurisdictional grounds would not be dismissal with prejudice.

Defendants-intervenors cast their motion as one to dismiss for lack of standing under Article III, but request dismissal with prejudice. MALDEF Memo. at 12. Dismissals for lack of standing do not reach the merits, and thus are without prejudice. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). As indicated, however, most of the issues that the motion to dismiss raises are prudential, not jurisdictional.

## II.   OTHER COURTS' INJUNCTIONS AGAINST DACA'S *RESCISSION* CANNOT BAR RELIEF AGAINST DACA'S *PROMULGATION*.

As with the allegedly collusive nature of this litigation, the injunctive relief granted in *Regents* and related cases nationwide poses no barrier to this litigation's proceeding and certainly no basis for dismissal, with or without prejudice. Simply put, nothing in *Regents* or other DACA-rescission challenges prevents the States' quite distinct challenge to DACA's initial promulgation.

### A.   Whether DACA's promulgation was procedurally and substantively unlawful is a different question from whether DACA's rescission was unlawful.

Nothing about *Regents* and similar cases prevents the obvious result here under *Texas* that DACA is procedurally and substantively invalid, as the States argue. DACA was promulgated in 2012 through 2014 and rescinded in 2017. *Regents*-styled cases target the 2017 action, and this

case targets the 2012-2014 actions. Those challenges are inherently different. While the substantive merits might overlap in part, the procedural questions are wholly independent.

Procedurally, an action that succeeds in voiding a rescission or amendment reinstates the prior rule, *Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 725 F.2d 761, 772 (D.C. Cir. 1984) ("*NRDC v. EPA*"); *Organized Vill. of Kake v. United States Dep't of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015); *cf. In re GWI PCS 1, Inc.*, 230 F.3d 788, 796 n.14 (5th Cir. 2000) ("[r]escission unwinds the transaction and restores the status quo ante"). But that does nothing to protect the underlying rule from procedural or substantive challenges. Indeed, as the D.C. Circuit recognized in *NRDC v. EPA*, judicially revoking an agency's rescission sometimes "casts a cloud over the very regulations it implicitly reinstates" because the rationale for vacating the agency's revocation also affects the underlying rule, 725 F.2d at 772. Such a cloud would be cast by any judgment that revokes the federal defendants' rescission of DACA. Specifically, plaintiffs' prevailing in *Regents* and similar cases would make clear that DACA was procedurally invalid on the day that the federal defendants' predecessors promulgated DACA. If DACA either created judicially cognizable rights that support a federal court's enjoining DACA's repeal or so bound the federal defendants that they could not repeal DACA at will, then DACA required notice-and-comment rulemaking. *Texas*, 809 F.3d at 171. Because no rulemaking occurred, DACA is procedurally invalid.

Substantively, *Regents* found DACA beneficiaries likely to prevail on DACA's lawfulness, but did so under Ninth Circuit precedent in the *Arizona DREAM Act Coalition* litigation. *Regents*, 279 F.Supp.3d at 1038-39 (*citing Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1059, 1062 (9th Cir. 2014) and *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 968 (9th Cir. 2017)). Even if the *Regents* plaintiffs' likelihood of prevailing ripened into a holding to the same effect, neither a district court nor extra-circuit authority can bind this Court. *Am. Elec. Power Co. v. Connecticut*,

564 U.S. 410, 428 (2011) (district court decisions not binding on other courts); *Hyder v. Keisler*, 506 F.3d 388, 393 (5th Cir. 2007) (Ninth Circuit decisions not binding on Fifth Circuit courts). By dividing federal courts into circuits, our legal system provides the Supreme Court "the benefit [of] permitting several courts of appeals to explore a difficult question before [the Supreme] Court grants certiorari." *United States v. Mendoza*, 464 U.S. 154, 160 (1984). Indeed, the Ninth Circuit has taken a broader view of the extent to which prosecutorial discretion can extend into benefits such as lawful presence and work authorization than the Fifth Circuit took in *Texas*. *Compare Brewer I*, 757 F.3d at 1059, 1062 *and Brewer II*, 855 F.3d at 968 *with Texas*, 809 F.3d at 167. For all these reasons, neither *Regents* nor even the Ninth Circuit's resolution can foreclose this Court's and this Circuit's independent conclusions on DACA's lawfulness.

**B.    Defendants-intervenors misconstrue the Article III nexus between this litigation and cases such as *Regents*.**

As indicated, the jurisdictional theories arising from Article III's case-or-controversy requirements are interrelated, *Allen*, 468 U.S. at 750, but defendants-intervenors misconstrue the Article III nexus between *Regents* and this litigation. While the result in *Regents* and similar cases around the country could undermine the Article III issue here, that result would not aid defendants-intervenors. Similarly, the result here could undermine the Article III issue presented in *Regents* and similar cases, which also would not aid defendants-intervenors.

If the *Regents* plaintiffs (and all other similarly situated plaintiffs) *lose* their challenges to DACA's rescission — thus allowing DACA's rescission to take effect — that could well moot this litigation: this Court cannot vacate a rescinded policy or rule. *Green v. Mansour*, 474 U.S. 64, 68-69 (1985) (amendments to challenge law mooted injunctive relief); *cf. Lane v. Inman*, 509 F.2d 184, 185 (5th Cir. 1975) ("the ordinance was rescinded," which "mooted the claim for declaratory and injunctive relief"). Mootness following rescission is simply a variation on the common theme

that when a "court is unable to grant any remedy for [a party], its opinion would be merely advisory and it must dismiss the [case] as moot." *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 423 (5th Cir. 2010). Thus, unhelpfully for defendants-intervenors, a *Regents* loss would undermine the Article III basis for this suit, but a *Regents* victory would not.

Conversely, if the States prevailed here in vacating DACA or rendering it void *ab initio*, there no longer would be anything for the *Regents* plaintiffs (and all other similarly situated plaintiffs) to litigate: those courts cannot enjoin the rescission of a policy that has been judicially vacated or rendered void *ab initio*. *In re Scruggs*, 392 F.3d 124, 129-30 (5th Cir. 2004) (court cannot grant relief concerning something that has ceased to exist). The only way that the *Regents* case or controversy would survive a States' victory here would be if the non-prevailing federal defendants "desire[] to reinstate the invalidated regulation." *Maher v. Roe*, 432 U.S. 464, 468 n.4 (1977); *Chem. Mfrs. Ass'n v. NRDC*, 470 U.S. 116, 136 n.2 (1985). That seems unlikely here, however, given that the federal defendants rescinded DACA *before* the States sued. *Schweiker v. Gray Panthers*, 453 U.S. 34, 42 n.12 (1981) (disregarding rule change that "reflects no independent judgment of the Secretary" in assessing suggestion of mootness caused by agency action to implement the result in third-party litigation). Here, the federal defendants have independently concluded that DACA is legally untenable under this Circuit's precedents.

In sum, if the *Regents*-style plaintiffs finally *lose*, that could undermine the Article III case or controversy here. And if the States *prevail* here, that would undermine the Article III case or controversy in DACA-rescission cases like *Regents*. But neither the pendency of *Regents* nor the preliminary injunction — or even a permanent injunction — provide any Article III barrier to this suit because nothing prevents both the *Regents* plaintiffs and the States from each prevailing. It remains possible that both DACA's rescission and DACA's promulgation violated the APA.

### C.   This litigation is neither a "collateral attack" on nor a "horizontal appeal" from extra-circuit challenges to DACA's rescission.

Defendants-intervenors also complain that this litigation represents an impermissible "horizontal appeal" of and "collateral attack" on the relief obtained in *Regents*. MALDEF Memo. at 11. Once again, however, defendants-intervenors miss the point that the cases are about different subjects. Even if *Regents*-style plaintiffs ultimately prevailed and invalidated DACA's rescission, that would not preclude the state plaintiffs here from invalidating DACA's promulgation. Promulgation and rescission were two separate administrative actions, and they may suffer independent fates. Similarly, defendants-intervenors claim that this litigation violates the "first-to-file rule." MALDEF Memo. at 9-10. "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999). As just indicated, however, this litigation concerns DACA's *initial promulgation*, which is distinct from DACA's *subsequent rescission*.

The discretionary "first-to-file" rule applies to "litigation by different parties to many-sided transactions," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and is grounded on judicial economy and comity between coordinate courts. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). *Regents* asks primarily whether DACA's rescission was arbitrary under the *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29 (1983) line of cases, whereas this case asks whether DACA's initial promulgation violated the APA. Those are two different things and certainly not facets of a single "many-sided transaction." *See*, *e.g.*, *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) ("the requirement of identity of the issues is not met, and the first-to-file rule is inapplicable" where hospitals challenged the promulgation of a rule in an APA suit filed

subsequently to an action filed to enforce that same rule). Because this litigation and the extra-circuit litigation over DACA's rescission concern different agency actions and were brought by entirely different plaintiffs, they are insufficiently related for purposes of the first-to-file rule.[3]

> **D.     The States' general pleading would allow _vacatur_ relief, even if their Complaint requests only declaratory relief against DACA.**

To the extent that _Amici's_ response to defendants-intervenors' arguments depends on the equitable relief of _vacatur_, as distinct from merely declaratory relief, it may appear relevant that the States' Complaint seeks only declaratory relief vis-à-vis DACA in its specific pleadings. _See_ First Am. Compl. at 73 (ECF #104). For four reasons, the declaratory-only nature of the _specifically_ requested relief is no barrier to _vacatur_.

First, the APA's judicial-review provisions impose a duty on this Court to vacate DACA upon finding it procedurally invalid: "The reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … without observance of procedure required by law." 5 U.S.C. §706(2)(D). Accordingly, "[i]f an appellant … prevails on its APA claim, it is entitled to relief under that statute, which normally will be a vacatur of the agency's order." _American Bioscience, Inc. v. Thompson_, 269 F.3d 1077, 1084 (D.C. Cir. 2001). Similarly, the All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. §1651(a), and thus authorizes this Court to vacate DACA even if the States do not request _vacatur_.

Second, even a declaration that DACA's promulgation violated notice-and-comment requirements would mean that DACA was void _ab initio_. Specifically, under the APA, a

---

[3]     Given that the first-to-file analysis is an equitable one, _Kerotest Mfg._, 342 U.S. at, 183, and not a rigid rule, this Court could find that the States are not the interlopers here. The States intended to amend the original _Texas_ complaint to seek _vacatur_ of DACA when the government agreed to repeal DACA, prompting the States to dismiss _Texas_. The _Regents_-style cases came after all that.

procedurally infirm rule is a nullity and void *ab initio*, *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 909-10 (5th Cir. 1983) ("null"); *United States Steel Corp. v. United States Envtl. Prot. Agency*, 595 F.2d 207, 210 (5th Cir. 1979) (agency action "set aside"); *United States v. Picciotto*, 875 F.2d 345, 345-46 (1989) ("null and void"); *State of Ohio Dep't of Human Serv. v. U.S. Dept. of Health & Human Serv., Health Care Financing Admin.*, 862 F.2d 1228, 1237 (6th Cir. 1988) ("void"); *Mobil Oil Corp. v. Dep't of Energy*, 610 F.2d 796, 804 (Temp. Emer. Ct. App. 1979) ("null and void"),[4] which means "having no effect, as though it had never been passed." *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002); *see also Air Transp. Ass'n of Can. v. FAA*, 254 F.3d 271, 277 (D.C. Cir. 2001) ("to 'vacate' means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside") (interior quotation marks and alterations omitted). Thus, the States' requested declaratory relief provides essentially the same relief as *vacatur* by operation of law.

Third, the complaint's "general pleading" seeks "[a]ny and all other relief to which Plaintiff States may be entitled," First Am. Compl. at 73 (ECF #104), which easily includes *vacatur*: "The rule is now general that at a trial upon the merits the suitor shall have the relief appropriate to the facts that he has pleaded, whether he has prayed for it or not." *Bemis Brothers Bag Co. v. United States,* 289 U.S. 28, 34 (1933); *Lockhart v. Leeds,* 195 U.S. 427, 436-37 (1904). Thus, "a federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one." *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 65 (1978); *accord* FED. R. CIV. P. 54(c) ("final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

---

[4]    *See United States v. Wyatt*, 680 F.2d 1080, 1083-85 (5th Cir. 1982) (describing the Temporary Emergency Court of Appeals).

Fourth, and finally, in the event that this Court were inclined to dismiss for the sole reason that the States complaint failed to plead specifically for *vacatur*, dismissal should be with leave to amend: "dismissal for failure to meet the federal pleading requirement is usually with leave to amend to attempt to cure the pleading deficiency." *Garcia v. LG Elecs. USA Inc.*, No. B-11-61, 2011 U.S. Dist. LEXIS 67165, at *9 (S.D. Tex. June 23, 2011) (quotation marks and alterations omitted) (Hanen, J.). Especially where the States' general pleading, the APA, Rule 54(c), and the All Writs Act contemplate or at least allow *vacatur* as an additional remedy, this Court should not dismiss this action simply because the States did not expressly plead for *vacatur*.

E.   **A preliminary injunction is insufficiently final to deny this Court of an Article III case or controversy.**

Even assuming *arguendo* that this Court considered itself bound by *Regents* or other extra-circuit challenges to DACA's rescission, the preliminary injunction to continue DACA in *Regents* would not justify the relief that defendants-intervenors request (namely, dismissal *with prejudice*) or even the lesser relief of dismissal *without prejudice*. It is simply premature to guess how *Regents* and other similar extra-circuit cases will resolve. It remains entirely possible that *Regents* will be dismissed before this Court reaches a final judgment. And, for now, *Regents* has found only a mere *likelihood* of DACA plaintiffs' prevailing on the merits, which is not the same as *prevailing* on the merits. *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). Consequently, if this Court considers the results of *Regents* and related cases relevant, the proper course would be to allow this litigation to proceed, and eventually follow the same appellate course that *Regents* now is following, with the U.S. Supreme Court able to resolve any inconsistent holdings or judgments.

## CONCLUSION

This Court should deny defendants-intervenors' motion to dismiss.

17

Dated: July 20, 2018

Respectfully submitted,

/s/ Andrew L. Schlafly
_____

Christopher J. Hajec
Director of Litigation
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
D.C. Bar No. 464777 (admitted *pro hac vice*)
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Andrew L. Schlafly
*Attorney in Charge*
New Jersey Bar No. 04066-2003
Southern District of Texas No. NJ04066
939 Old Chester Rd.
Far Hills, NJ 07931
Phone: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

*Counsel for Amici Curiae*