# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:18-CV-68 |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| KARLA PEREZ, *et al.*, | ) |
| | ) |
| Defendant-Intervenors, | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| Defendant-Intervenor. | ) |

### DEFENDANT-INTEVENOR STATE OF NEW JERSEY'S RESPONSE TO THE PEREZ DEFENDANT-INTERVENORS' MOTION TO DISMISS WITH PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant-Intervenor State of New Jersey submits this response to the Perez Defendant-Intervenors' Motion to Dismiss with Prejudice for Lack of Subject Matter Jurisdiction (Dkt. 118). New Jersey respectfully submits that the Motion to Dismiss should be granted for all the reasons stated by the Perez Defendant-Intervenors in their Memorandum of Law (Dkt. 118-1), which New Jersey hereby joins in full, and for the additional reasons stated herein.

### ARGUMENT

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" or "controversies." U.S. Const. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-

court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Article III "requires a conflict between at least two genuinely adverse parties." *Kirkland v. New York State Dep't of Correctional Servs.*, No. 82 Civ. 0295 (TPG), 1988 WL 108485, at *3 (S.D.N.Y. Oct. 12, 1988). If all parties to a lawsuit desire the same result, no case or controversy exists, and the court should dismiss for lack of subject matter jurisdiction. *See Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47, 47-48 (1971); *see also Kirkland*, 1988 WL 108485, at *3 ("The Court must dismiss a case where the cooperation of the plaintiff and the defendant might adversely affect the rights of outsiders if the question of law is decided in the manner that both of the parties desire.").

**A. The Plaintiffs' Real Dispute Is With The Non-Parties That Have Challenged The DACA Rescission And The Courts That Have Enjoined It, Not With The Federal Defendants.**

As the Perez Defendant-Intervenors' Motion to Dismiss makes clear, there is no controversy between the Plaintiffs and Federal Defendants in this case "on the central question Plaintiffs ask the Court to adjudicate—the lawfulness of the Secretary of Homeland Security's June 15, 2012 memorandum regarding Deferred Action for Childhoods Arrivals ("DACA")." Dkt. 118-1 at 1; *see also* Dkt. 71 at 1 ("The United States agrees with the State of Texas and other Plaintiffs that the policy known as Deferred Action for Childhood Arrivals (DACA) is unlawful."). The State of New Jersey therefore hereby joins the Perez Defendant-Intervenors' Motion to Dismiss in full, and adopts the arguments set forth in their Memorandum of Law, Dkt. 118-1.

The Amended Complaint reveals that the Plaintiffs' actual disagreement is with the plaintiffs that successfully sought to enjoin the Federal Defendants' efforts to rescind DACA in September 2017, and the federal courts in California and the District of Columbia that agreed

2

with those plaintiffs. Dkt. 104, ¶¶ 6-7.[1] The Amended Complaint describes how Plaintiffs dismissed their prior litigation against the Federal Defendants only when "the Executive Branch issued a memorandum rescinding DACA by directing that DACA permits would not be issued or renewed starting March 5, 2018," presumably because they were satisfied with the actions Federal Defendants had taken. *Id.* at ¶ 5. But Plaintiffs then complain that "DACA is still in force and will remain in force for the indefinite future" because courts in California and the District of Columbia have issued injunctions preventing its rescission. *Id.* at ¶¶ 6, 7, 200-208; *see also* Dkt. 71 at 2 ("Despite the Attorney General's conclusion that DACA is unlawful and DHS's efforts to end DACA on an orderly timeline, district courts in California and New York entered preliminary injunctions *ordering Federal Defendants to continue (most of) the DACA policy on a nationwide basis.*" (emphasis added)).

Thus, the Amended Complaint makes clear that if the Federal Defendants' September 2017 efforts to rescind DACA had been successful—either because plaintiffs had not challenged the rescission or because the courts considering those challenges had rejected them—then Plaintiffs would have no reason to sue. Therefore, the plaintiffs that challenged the September 2017 rescission and the courts that agreed with them are the third parties with whom the Plaintiffs have an actual dispute—not the Federal Defendants, with whom they fundamentally agree.

But litigating "against" an aligned party in order to undermine the rights of absent third parties is not a legitimate function of a declaratory judgment action. This principle is old and revered. In *Lord v. Veazie*, 49 U.S. 251 (1850), the plaintiff conveyed stock to the defendant, with a covenant that the stockholders had the right to use the waters of the Penobscot River for

---

[1] It is unclear why the Amended Complaint leaves out the nationwide injunction issued by the Eastern District of New York in *Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018).

the purpose of navigation. The parties asked the court to decide whether the covenant was valid, despite a claim by non-parties to the exclusive right to navigate the river. The Supreme Court found that there was no real dispute between the parties who sought the judgment and that they had brought it with the intent of affecting the interests of absent third parties. The Court held:

> [A]ny attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court . . . The objection in the case before us is, not that the proceedings were amicable, but that there is no real conflict of interest between them; that the plaintiff and defendant have the same interest, and that interests adverse and in conflict with the interest of third persons, whose rights would be seriously affected if the question of law was decided in the manner that both of the parties to this suit desire it to be . . .

49 U.S. at 255.

In *Cleveland v. Chamberlain*, 66 U.S. 419 (1861), the Court held that the principles of *Lord* apply with equal force when the suit is brought with a proper purpose, but the interests of the plaintiff and defendant become aligned during the proceeding. In *Cleveland*, after judgment for the plaintiff, the defendant purchased the plaintiff's interest. Third parties, who were investors in a railroad company that would have been affected by reversal of the judgment below, filed affidavits urging that Chamberlain was conducting the appeal in order to impact the third parties' rights. The Supreme Court agreed and dismissed the appeal:

> There is no material difference between this case and that of *Lord v. Veazie* . . . It is plain that this is no adversary proceeding, no controversy between the appellant and the nominal appellee. It differs from the case just cited in this alone, that there both parties colluded to get up an agreed case for the opinion of this court; here, Chamberlain becomes the sole party in interests on both sides, makes up a record, and has a case made to suit himself, in order that he may obtain an opinion of this court, affecting the rights and interests of persons not parties to the pretended controversy.

66 U.S. at 425-26.

More than one hundred years later, the Supreme Court continues to hold that there is a lack of federal subject matter jurisdiction in "friendly or feigned proceedings." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997); *see also Charles A. Wright and Arthur R. Miller,* 13 Federal Practice and Procedure § 3530 (3rd ed. 2004) (describing as "fundamental" the "rule against suits brought by cooperating interests for the purpose of affecting the interests of nonparties").

New Jersey does not suggest that the Plaintiffs and the Federal Defendants are intentionally colluding or acting in bad faith. But application of the principles of *Lord* and *Cleveland* does not depend on the motives of the aligned parties. A declaratory judgment action simply may not proceed in order to resolve a dispute against a third party, whatever the aligned parties' motives. Therefore, this Court should dismiss this action for lack of case or controversy.

B. **There Is No Causal Connection Between The Plaintiffs' Alleged Injury And The Federal Defendants' Alleged Conduct.**

Plaintiffs' Amended Complaint should be dismissed for lack of case or controversy for another related reason: the injury that Plaintiffs claim is not causally related to the conduct of the Federal Defendants. "[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

Here, Plaintiffs seek a declaration from this Court that DACA is unlawful and seek to stop the Federal Defendants "from issuing or renewing DACA permits in the future." Dkt. 104, ¶ 16. The Federal Defendants also believe that DACA is unlawful and desire to stop issuing or renewing DACA permits. *See* Dkt. 71 at 2. But the Federal Defendants are not the obstacle to the relief that Plaintiffs seek. Instead, it is the plaintiffs that challenged the September 2017

rescission and the courts that agreed with them—all third parties not before this Court—that are standing in the way of the relief *that both Plaintiffs and the Federal Defendants* seek.

Where, as here, the Federal Defendants have no causal connection to the Plaintiffs' alleged harm and lack the power to provide the relief Plaintiffs seek, there is "not an actual controversy between real parties" and the case thus "lack[s] 'the "exigent adversity" which is an essential condition precedent to federal court adjudication.'" *Robinson v. Kimbrough*, 558 F.2d 773, 774 (5th Cir. 1977) (en banc) (per curiam) (quoting *Gras v. Stevens*, 415 F. Supp. 1148, 1150 (S.D.N.Y. 1976) (three-judge court) (Friendly, J.)).

In *Robinson*, for instance, the plaintiffs sued county jury commissioners, alleging that a state law that allowed for the exclusion of housewives with children under the age of 14 from the jury systematically excluded black people and women from the jury list. The Fifth Circuit dismissed, reasoning that because the defendant county jury commissioners "have no function or duty with respect to" the challenged law, there was no case or controversy. *Id*. "There being no defendants in the case who have any duty, power or authority with respect to the challenged provision of § 59-112(b), the claim that it is unconstitutional, facially or as applied, was not an actual controversy between real parties." *Id*. Similarly, in *Simon,* 426 U.S. at 41-42, the Supreme Court dismissed for lack of case or controversy where plaintiff brought claims against treasury officials for tax policies of nonprofit hospitals, because "injury at the hands of a hospital is insufficient by itself to establish a case or controversy in the context of this suit, for no hospital is a defendant."

As in *Robinson* and *Simon*, here too the Federal Defendants have no power or authority to provide the remedy that Plaintiffs seek. The Federal Defendants have tried—and failed—to stop "issuing or renewing DACA permits in the future." Dkt. 104 ¶ 16. They simply have no power or

authority to do so because of two nationwide injunctions forcing them to continue adjudicating renewal applications. Because the Federal Defendants did not cause the harms that Plaintiffs allege, and because the Federal Defendants cannot provide the requested relief, this case lacks the necessary case or controversy and must be dismissed.

This does not leave Plaintiffs without a remedy. If Plaintiffs believed that any nationwide injunction forcing the Federal Defendants to continue adjudicating DACA renewal applications would cause them harm, they could have moved to intervene in any of the six lawsuits across the country that sought that relief. They can still do so now. What they cannot do is choose to sit out those lawsuits, and then seek to collaterally challenge the orders of those courts in this Court, against a party with whom they are fundamentally aligned.

Finally, Plaintiffs are wrong in asserting that "the existence of an injunction issued by the Northern District of California regarding the Executive's September 2017 DACA wind-down memorandum has no effect on this Court's injunctive powers in this lawsuit" because "[t]here is no pending claim against the 2012 DACA program in the Northern District of California lawsuit." Dkt. 5 at 49 (emphasis added). Whether there are *overlapping claims* in the two lawsuits is neither here nor there, because the *relief Plaintiffs seek* in this suit would directly conflict with the relief already ordered by two other district courts. In other words, it does not matter that the other lawsuits concern the Federal Defendants' 2017 rescission and this lawsuit concerns whether DACA was legal at the time of its inception in 2012. What matters, for case or controversy purposes, is whether the Federal Defendants currently have the power to stop processing DACA applications. Because of the absent plaintiffs and the courts that agreed with them, they currently do not.

## CONCLUSION

For the reasons stated above and in the Motion to Dismiss with Prejudice for Lack of Subject Matter Jurisdiction filed by the Perez Defendant-Intervenors (Dkt. 118), which New Jersey hereby joins in full, this Court should dismiss the Amended Complaint.

Dated: July 20, 2018          GURBIR S. GREWAL
         ATTORNEY GENERAL OF NEW JERSEY

By:    */s/Rachel Wainer Apter*
      Assistant Attorney General
      Attorney-in-Charge
      (admitted pro hac vice)
      Richard J. Hughes Justice Complex
      25 Market Street, 8th Floor
      Trenton, New Jersey 08625-0116
      Phone: (609) 376-2702
      Fax: (609) 777-4015
      Rachel.Apter@njoag.gov

      Jeremy Hollander, Assistant Attorney General
      (admitted pro hac vice)
      Kenneth S. Levine, Deputy Attorney General
      (admitted pro hac vice)
      Brian DeVito, Deputy Attorney General
      (admitted pro hac vice)
      Katherine Gregory, Deputy Attorney General
      (admitted pro hac vice)
      Nicholas Dolinsky, Deputy Attorney General
      (admitted pro hac vice)

      Office of the Attorney General
      124 Halsey Street, 5th Floor
      Newark, NJ 07101

      *Attorneys for Defendant-Intervenor*
      *State of New Jersey*

## **CERTIFICATE OF SERVICE**

I certify that this document (and appendix hereto) were electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

*/s/ Rachel Wainer Apter*
Rachel Wainer Apter

Appendix:

Copy of *Kirkland v. New York State Dep't of Correctional Servs.*, No. 82 Civ. 0295 (TPG), 1988 WL 108485 (S.D.N.Y. Oct. 12, 1988)

**Kirkland v. New York State Dept. of Correctional Services, Not Reported in F.Supp. (1988)**
48 Empl. Prac. Dec. P 38,631

1988 WL 108485
United States District Court, S.D. New York.

Edward L. KIRKLAND, et al., Plaintiffs,
v.
The NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, et al., Defendants.

No. 82 CIV. 0295 (TPG).
|
Oct. 12, 1988.

*OPINION*

GRIESA, District Judge.

**\*1** Plaintiffs Edward Kirkland et. al., a class of black corrections employees, originally brought this action in 1982 against the New York State Civil Service Commission and the Department of Correctional Services. Plaintiffs claimed that the 1981 Correction Lieutenant examination administered by Civil Service was racially discriminatory. The parties reached a settlement involving a consent decree, which was approved by this court on November 9, 1982.

In January 1988 a joint motion was made by plaintiffs and defendants for an order approving a particular method of "zone" or "bandwidth" scoring. If approved, defendants propose to apply zone scoring to the results of the 1987 Correction Lieutenant examination. Both plaintiffs and defendants agree that zone scoring would be permissible under the terms of the settlement and is the most desirable method of scoring. However, a group of correction employees who took the 1987 exam have intervened. They move to dismiss the joint motion for lack of subject matter jurisdiction on the ground that it presents no case or controversy to this court. They propose to challenge the scoring method under state law in a state court. However, the interveners assert that, if the federal court exercises jurisdiction over the joint motion, they wish to contest approval of the scoring system on the merits.

The interveners' motion to dismiss the joint motion for lack of subject matter jurisdiction is granted.

*Facts*

The 1982 settlement provided, among other things, for a particular method of scoring for the *1981* examination. The settlement did not specify a scoring method for future examinations. Future selection procedures were simply to avoid "adverse impact" on minority candidates.

The next Correction Lieutenant examination was held in 1987. After the examination was administered, the Civil Service, in conjunction with plaintiffs' expert psychologist, decided to use the zone method of scoring. Essentially, this method considers all scores within a given range to be equivalent, *e.g.,* if scores 90–100 are designated as the top "band," a 99 and a 91 would be ranked equally.

In July 1987 the Appellate Division of the New York Supreme Court decided an unrelated case dealing with zone scoring. *McGowan v. Burstein,* 130 A.D.2d 123, 518 N.Y.S.2d 247 (3d Dept.1987). The court held that this method *presumptively* violates New York's constitutional requirement that promotional exams be based on merit and fitness. The Appellate Division upheld an injunction prohibiting the State from using zone scoring unless authorized to do so by prior court order. This injunction was so broad as to cover the proposed use of zone scoring by the State in the present case.

On January 5, 1988, while review of the *McGowan* decision was pending in the New York Court of Appeals, plaintiffs and defendants in the present case filed the motion now before this court, seeking an order approving application of the zone scoring method to the 1987 Correction Lieutenant examination. The parties claimed that such a motion was appropriate because of the injunction in *McGowan.*

**\*2** On February 22, 1988 a group of white employees who took the 1987 Correction Lieutenant examination filed a motion in the present case seeking to intervene as of right for the purpose of moving to dismiss the joint motion for lack of subject matter jurisdiction or, in the alternative, contesting the approval of the scoring method on the merits. All parties consented to the application to

**Kirkland v. New York State Dept. of Correctional Services, Not Reported in F.Supp. (1988)**
48 Empl. Prac. Dec. P 38,631

intervene, which was subsequently granted on April 12, 1988.

In a decision filed June 2, 1988 the New York Court of Appeals reversed the Appellate Division in *McGowan* and held that zone scoring is not presumptively unconstitutional. The court ruled that the validity of the particular application of the zone method must be ruled upon where challenged, but that there is no presumption of invalidity. *McGowan v. Burstein,* 71 N.Y.2d 729, 530 N.Y.S.2d 64. The injunction entered below was vacated.

Despite the vacating of the injunction in *McGowan,* plaintiffs and defendants in the *Kirkland* case persist in their joint motion.

*The Present Motion*

The interveners claim this court has no subject matter jurisdiction because the joint motion of plaintiffs and defendants presents no case or controversy. This claim is based on the fact that plaintiffs and defendants are in full agreement about the validity of their scoring method and are jointly seeking the *same ruling* from the court. Additionally they claim that plaintiffs have no standing and their claims are now moot since these plaintiffs have all been offered positions as Correction Lieutenants.

If the joint motion is dismissed for lack of jurisdiction, interveners state that they will challenge the zone scoring in a New York State court, under New York State constitutional law, in the event defendants actually apply the zone scoring method.

Plaintiffs and defendants claim that there is in fact a justiciable controversy. Plaintiffs argue that the court's jurisdiction over the original case covers the joint motion since they are seeking to enforce the prior consent decree. Moreover, plaintiffs claim to have standing to enforce provisions of the settlement which they bargained for and received.

Plaintiffs and defendants claim that a controversy arises from defendants' reluctance to proceed with zone scoring without court approval. Originally they claimed that the *McGowan* injunction forced defendants to take a position adverse to plaintiffs and to decline to apply zone scoring. Although the injunction has been vacated, defendants state that they are still reluctant to use zone scoring due to the uncertainty over New York law. Allegedly, a future action in State court might produce a ruling in conflict with the 1982 settlement in this case. They further claim that the interveners' opposition creates a justiciable controversy if one did not otherwise exist.

*Discussion*

The federal judicial power is limited to actual cases or controversies. U.S. Const. art III, § 2. This requires a conflict between at least two genuinely adverse parties.

*3 When both parties affirmatively desire the same result, no justiciable case is presented. *Moore v. Charlotte– Mecklenburg Board of Education,* 402 U.S. 47 (1971); Wright, Miller & Cooper, 13 *Federal Practice and Procedure* § 3530 at 317 (1984). The court must dismiss a case where the cooperation of the plaintiff and the defendant might adversely affect the rights of outsiders if the question of law is decided in the manner that both of the parties desire. *Lord v. Veazie,* 49 U.S. 251 (1850).

Parties may be sufficiently adverse while taking the same position on the proper outcome, if they are legally required to adopt contrary positions absent a judicial determination. *INS v. Chadha.,* 462 U.S. 919 (1983). In *Chadha,* the INS agreed with Chadha that it was unconstitutional for the House of Representatives to veto its suspension of his deportation. However, INS was "adverse" to Chadha because in the absence of a ruling by the Supreme Court, the INS would be forced to comply with the veto and deport him.

In the present case, plaintiffs and defendants desire precisely the same result: an order by this court approving the application of zone scoring to the 1987 Correction Lieutenant examination.

There is no external constraint here forcing the parties to adopt adverse positions, as there was in *Chadha.* Defendants' claim that the lower court injunction in

**Kirkland v. New York State Dept. of Correctional Services, Not Reported in F.Supp. (1988)**
48 Empl. Prac. Dec. P 38,631

*McGowan* required them to adopt a contrary position to plaintiffs is now moot, since that injunction has been vacated. While the validity of zone scoring may still be an open question, defendants are legally free to apply any scoring method which they believe complies both with New York law and with the consent decree in this case. If a lawsuit is brought to challenge the scoring method, then that would present a justiciable controversy. Indeed, interveners have indicated that they will bring such an action. However, since the issues to be raised are primarily, if not exclusively, under state law, interveners have quite properly indicated that they will sue in a state court.

There is no inherent necessity for this court to approve zone scoring as part of the administration or enforcement of the 1982 consent decree. That decree does not require the use of zone scoring. Any scoring method which avoids adverse racial impact complies with the decree.

The issue which provoked plaintiffs' and defendants' application to the court is whether or not zoning scoring comports with New York's constitutional requirement that examinations be based on merit and fitness. But plaintiffs and defendants are not adverse in any way on this issue. This issue will only be ripe for decision if and when zone scoring is actually instituted by the State and a genuinely adverse party with standing challenges it in an appropriate forum.

In sum, jurisdiction over the 1982 action does not provide jurisdiction over the present motion.

The presence of the *interveners* in this action does not create sufficient adversity to provide jurisdiction. They have properly called the court's attention to the lack of subject matter jurisdiction in respect to the motion as brought by plaintiffs and defendants. If defendants do in fact apply the zone scoring method, interveners properly propose to challenge the zone scoring in New York state court, if that method is in fact applied by defendants. Then there will be questions arising under New York law that will be ripe for adjudication.

**\*4** Brief mention should be made of the interveners' claim that plaintiffs lack standing to raise any issue regarding application of zone scoring to the 1987 examination because plaintiffs and the members of plaintiff class have succeeded in achieving the purpose of their litigation—*i.e.*, obtaining offers of the position of Correction Lieutenant as a result of the 1981 examination. Plaintiffs respond that the consent decree which they obtained contained provisions not only about the procedures regarding the 1981 test but certain general provisions about future selection procedures, and plaintiffs have standing to raise questions about such procedures.

This standing issue, as the parties present it, has not been adequately briefed and the court does not decide it. There is no necessity to do so in view of the court's ruling on the lack of a justiciable controversy.

There is no case or controversy before the court. The motion of the interveners to dismiss the joint motion for lack of subject matter jurisdiction is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1988 WL 108485, 48 Empl. Prac. Dec. P 38,631

End of Document
© 2018 Thomson Reuters. No claim to original U.S. Government Works.