# Appendix of Other Authorities

| Tab | Other Authorities | Page(s) |
|-----|-------------------|---------|
| A. | Better Business Bureau, Find Legal Assistance for DACA, but Watch Out for Fraudsters (Sept. 7, 2017), https://www.bbb.org/council/news-events/bbb-warnings/2017/09/find-legal-assistance-for-daca-but-watch-out-for-fraudsters/. | 1 |
| B. | Donald J. Trump (@RealDonaldTrump), Twitter (Sept. 14, 2017, 3:28 AM), https://twitter.com/realdonaldtrump/status/908276308265795585?lang=en | 2 |
| C. | *Find Legal Services*, USCIS, https://www.uscis.gov/avoid-scams/find-legal-services (last visited July 18, 2018) | 3 |
| D. | *Frequently Asked Questions*, USCIS, https://www.uscis.gov/archive/frequently-asked-questions (last visited July 19, 2018) | 5 |
| E. | Memorandum from Elaine C. Duke, Acting Sec'y, U.S. Dep't of Homeland Sec., to James W. McCament, Acting Dir., USCIS, et al., https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca | 21 |
| F. | Memorandum from Janet Napolitano, Sec'y of Homeland Sec., U.S. Dep't of Homeland Sec., to David V. Aguilar, Acting Comm'r, U.S. Customs and Border Prot., et al. (June 15, 2012), https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf | 24 |
| G. | *Undocumented immigrants line up for relief from deportation*, CNN.com (Aug. 17, 2012), http://www.cnn.com/2012/08/15/us/immigration-deferred-deportation/index.html | 27 |



**Better Business Bureau**®Charities/Don...

Business Login    Consumer Login    ●    Madison Square, NY, USA    

Find    x     Near    Madison Square, NY    USA   x    **Search**

Home / News & Events / Find Legal Assistance for DACA, But Watch Out for Fraudsters

# Find Legal Assistance for DACA, But Watch Out for Fraudsters

**En Español**

  

**September 07, 2017**

The Better Business Bureau is concerned about fraudsters taking advantage of confusion over the latest news on DACA (Deferred Action for Childhood Arrivals). While BBB cannot provide legal advice on any matters, we urge consumers to avoid potential DACA and other immigration scams by pro-actively seeking competent legal assistance rather than responding to unsolicited appeals.


Photo: CreayFork/Shutterstock.com



BBB® WARNING!

Click to View Infographic

BBB urges consumers to:

- Be wary of email, social media messages, phone calls, or other unsolicited sales pitches for legal services, especially if they use scare tactics to frighten you into action.
- Don't provide confidential information over the phone or via email.
- Never pay for blank government forms. Government forms are free, although you may have to pay a fee when you submit them.
- Be cautious when researching immigration information online. Some scammers set up websites that look like government websites. Look for a .gov domain.
- Don't let anyone keep your original documents (birth certificate, passport, etc.). Scammers may charge you to get them back.
- Never sign a document you don't understand, or sign any form that has not been completely filled out.
- Keep a copy of every form you submit, as well as every letter you receive from a government agency.
- Don't wire money to anyone you don't know. Once you send it, you cannot get it back. Government agencies usually ask for funds by check or money order, or by a secure transaction on a government (.gov) website.

**Suggested Resources** (*this list will be updated periodically*)

The American Bar Association, a BBB Accredited Business, offers two services that may be useful:

A searchable database of local bar associations, which can be great sources of information about competent legal advice

Find Legal Help, which offers ways to connect with free or affordable lawyers

The U.S. Department of Justice maintains a list of pro bono legal aid providers, organized by geography on a clickable map.

Probono.net, a BBB Accredited Charity, is a pro bono (free) legal organization, and has immigration resources available.

The Legal Services Corporation is an independent nonprofit established by Congress to provide financial support for civil legal aid to low-income Americans. Its LawHelp service has loads of information and a consumer referral service. The entire website is also available in Spanish.

---



**For Consumers**
File a Complaint
BBB Scam Tracker
File an Auto Warranty Complaint

**For Businesses**
Become Accredited
BBB EU Privacy Shield

**About BBB**
BBB Directory
Give.org
BBB Institute for Marketplace Trust
BBB Programs
Council of Better Business Bureaus
Contact
Apply for BBB Accreditation





Official Website of the Department of Homeland Security

Tai nguyen da ngon ngu

**U.S. Citizenship and Immigration Services**

Search our Site

Need Help? Ask Emma

Español | About USCIS | Contact Us

| FORMS | NEWS | CITIZENSHIP | GREEN CARD | TOOLS | LEGAL RESOURCES |

Home > Avoid Scams > Find Legal Services

Share This Page | Print

**Avoid Scams**

Become an Authorized Provider

Common Scams

Resource Center

Find Legal Services

Form Filing Tips

Report Immigration Scams

**I Am A ...**
- Petitioner/Applicant
- Community Organization
- Legal Service Provider

# Find Legal Services

Versión en español

▼ Need help with your USCIS forms?

U.S. Citizenship and Immigration Services provides free resources to help guide you through the application, petition or request process. You can visit our site to download free forms and instructions, get case status updates, or schedule an appointment online to have your questions answered at a local field office.

You can file USCIS forms yourself, but many people choose to have help. Someone who is not an authorized immigration service provider is only allowed to:

- Read you the form;
- Translate, either verbally or in writing, information from your native language to English or English to your native language; and
- Write down information that you provide to complete the form.

Anyone is allowed to give you this type of limited help, and may charge for it. This person should only charge you a small fee and should not claim to have special knowledge of immigration law and procedure.

If you are not sure what immigration benefit to apply for, or which USCIS forms to submit, then you need immigration legal advice from an authorized service provider. Only authorized immigration service providers can help you beyond basic preparation or translation of forms.

▸ Who are authorized immigration service providers?
▸ Accredited Representatives
▸ Attorneys
▸ How can I find authorized immigration service providers online?
▸ What if I live outside of the United States?
▸ Can a person who is not an attorney or accredited representative help me?
▸ Bringing a "reputable individual" to a meeting with USCIS
▸ Law students and law graduates


Need Help?

Last Reviewed/Updated: 11/29/2016

**Resources**

Avoid Scams Government Partners
- Immigration and Customs Enforcement
- Department of Justice
- Federal Trade Commission

Non-USCIS Links
- American Bar Association - Fight Notario Fraud
- AILA Stop Notario Fraud
- Australian Government - Department of Immigration and Citizenship
- Better Business Bureau
- CLINIC Recognition and Accreditation Toolkit
- Citizenship and Immigration Canada
- National Association of Attorneys General
- National District Attorneys Association
- National Notary Association
- U.S. Department of State

Related USCIS Links
- Find Help in Your Community

**Was this page helpful?**

◉ Yes   ○ No

Submit

**U.S. Citizenship and Immigration Services**

   

| TOPICS | VERIFICATION | POLICIES | GOVERNMENT |
|--------|-------------|----------|------------|
| A-Z Index | E-Verify | Accessibility | U.S. Department of Homeland Security |
| Adoption | I-9 Central | Accuracy and Translation | U.S. Customs & Border Protection |
| Appeals | myE-Verify | Disclaimer | U.S. Immigration & Customs Enforcement |
| Archive | SAVE | Adobe Reader | |
| Avoid Scams | | Civil Rights and Liberties | |
| Citizenship | | No FEAR Act | |

Citizenship
Citizenship Resource Center
Executive Actions on Immigration
Family
File Online
Forms
Glossary
Green Card
History and Genealogy
Humanitarian
Military
myUSCIS
Outreach
Site Map
USCIS Videos
Visit the U.S.
Working in the U.S.

No FEAR Act
Plug-ins
Privacy and Legal Disclaimers
Social Media Policy
USCIS Freedom of Information
Act and Privacy Act
Website Policies

Customs Enforcement
U.S. Department of State
Passports
Visa Bulletin
White House
DHS Office of Inspector
General
USA.gov

**USCIS Contact Center**
800-375-5283
**For people who are deaf, hard of hearing or have a speech disability:**
**TTY 800-767-1833**

004



🇺🇸 Official Website of the Department of Homeland Security

多種語言資源 ⊕

**U.S. Citizenship and Immigration Services**

Search our Site

Español | About USCIS | Contact Us

Need Help? Ask Emma

| FORMS | NEWS | CITIZENSHIP | GREEN CARD | TOOLS | LEGAL RESOURCES |

Home > Archive > Archive DACA > Frequently Asked Questions

Share This Page   Print

**Archive**

Archive Blog

Archive Citizenship ▼

Archive DACA

Archive Forms Updates

Archive Green Card

Archive Laws ▼

Archive News ▼

Archive Offices

Archive Outreach

Archive Reports ▼

Archive Testimonies and Speeches

- Chinese (PDF, 2.79 MB)
- Korean (PDF, 2.86 MB)
- Tagalog (PDF, 2.53 MB)
- Vietnamese (PDF, 2.60 MB)

**Archived Content**

This page contains information that is no longer current but remains on our site for reference purposes.

## Frequently Asked Questions

**Important information about DACA requests:** Due to federal court orders, USCIS has resumed accepting requests to renew a grant of deferred action under DACA. USCIS is not accepting requests from individuals who have never before been granted deferred action under DACA. Until further notice, and unless otherwise provided in this guidance, the DACA policy will be operated on the terms in place before it was rescinded on Sept. 5, 2017. For more information, visit Deferred Action for Childhood Arrivals: Response to January 2018 Preliminary Injunction.

*DHS FAQs*

DACA ProcessWhat is Deferred Action for Childhood Arrivals?General Information for All Requestors

- **Background Checks**
- **After USCIS Makes a Decision**

Initial Requests for DACA
Renewal of DACA
Travel
Criminal Convictions
Miscellaneous

**I. General Information for All Requestors**

**A. What is Deferred Action for Childhood Arrivals?**

As the Department of Homeland Security (DHS) continues to focus its enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety, DHS will exercise prosecutorial discretion as appropriate to ensure that enforcement resources are not expended on low priority cases, such as individuals who came to the United States as children and meet other key guidelines. Individuals who demonstrate that they meet the guidelines below may request consideration of deferred action for childhood arrivals (DACA) for a period of two years, subject to renewal for a period of two years, and may be eligible for employment authorization.

You may request consideration of DACA if you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Had no lawful status on June 15, 2012, meaning that:

   - You never had a lawful immigration status on or before June 15, 2012, or
   - Any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired as of June 15, 2012;

6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and
7. Have not been convicted of a felony, a significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

**Individuals can call U.S. Citizenship and Immigration Services (USCIS) at 800-375-5283 with questions or to request more information on DACA.** Those with pending requests can also use a number of online self-help tools which include the ability to check case status and processing times, change your address, and send an inquiry about a case pending longer than posted processing times or non-delivery of a card or document.

005

**Q1: What is deferred action?**
A1: Deferred action is a discretionary determination to defer a removal action of an

- You never had a lawful immigration status on or before June 15, 2012, or
- Any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired as of June 15, 2012;

6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and

7. Have not been convicted of a felony, a significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

**Individuals can call U.S. Citizenship and Immigration Services (USCIS) at 800-375-5283 with questions or to request more information on DACA.** Those with pending requests can also use a number of online self-help tools which include the ability to check case status and processing times, change your address, and send an inquiry about a case pending longer than posted processing times or non-delivery of a card or document.

**Q1: What is deferred action?**
A1: Deferred action is a discretionary determination to defer a removal action of an individual as an act of prosecutorial discretion. For purposes of future inadmissibility based upon **unlawful presence**, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect. An individual who has received deferred action is authorized by DHS to be present in the United States, and is therefore considered by DHS to be lawfully present during the period deferred action is in effect. However, deferred action does not confer **lawful status** upon an individual, nor does it excuse any previous or subsequent periods of unlawful presence.

Under existing regulations, an individual whose case has been deferred is eligible to receive employment authorization for the period of deferred action, provided he or she can demonstrate "an economic necessity for employment." DHS can terminate or renew deferred action at any time, at the agency's discretion.

**Q2: What is DACA?**
A2: On June 15, 2012, the Secretary of Homeland Security announced that certain people who came to the United States as children and meet several key guidelines may request consideration of deferred action for a period of two years, subject to renewal, and would then be eligible for work authorization.

Individuals who can demonstrate through verifiable documentation that they meet these guidelines will be considered for deferred action. Determinations will be made on a case-by-case basis under the DACA guidelines.

**Q3: Is there any difference between "deferred action" and DACA under this process?**
A3: DACA is one form of deferred action. The relief an individual receives under DACA is identical for immigration purposes to the relief obtained by any person who receives deferred action as an act of prosecutorial discretion.

**Q4: If my removal is deferred under the consideration of DACA, am I eligible for employment authorization?**
A4: Yes. Under existing regulations, if your case is deferred, you may obtain employment authorization from USCIS provided you can demonstrate an economic necessity for employment.

**Q5: If my case is deferred, am I in lawful status for the period of deferral?**
A5: No. Although action on your case has been deferred and you do not accrue unlawful presence (for admissibility purposes) during the period of deferred action, deferred action does not confer any lawful status.

The fact that you are not accruing unlawful presence does not change whether you are in lawful status while you remain in the United States. However, although deferred action does not confer a lawful immigration status, your period of stay is authorized by the Department of Homeland Security while your deferred action is in effect and, for admissibility purposes, you are considered to be lawfully present in the United States during that time. **Individuals granted deferred action are not precluded by federal law from establishing domicile in the U.S.**

Apart from the immigration laws, "lawful presence," "lawful status" and similar terms are used in various other federal and state laws. For information on how those laws affect individuals who receive a favorable exercise of prosecutorial discretion under DACA, please contact the appropriate federal, state or local authorities.

**Q6: Can I renew my period of deferred action and employment authorization under DACA?**
A6: Yes. You may request consideration for a renewal of your DACA. Your request for a renewal will be considered on a case-by-case basis. If USCIS renews its exercise of discretion under DACA for your case, you will receive deferred action for another two years, and if you demonstrate an economic necessity for employment, you may receive employment authorization throughout that period.

Return to top.

**B. DACA Process**

**Q7: How do I request consideration of DACA?**
A7: To request consideration of DACA (either as an initial request or to request a renewal), you must submit Form I-821D, Consideration of Deferred Action for

Childhood Arrivals to USCIS. Please visit uscis.gov/i-821d before you begin the process to make sure you are using the most current version of the form available. This form must be completed, properly signed and accompanied by a Form I-765, Application for Employment Authorization, and a Form I-765WS, Worksheet (PDF, 240 KB), establishing your economic need for employment. If you fail to submit a completed Form I-765 (along with the accompanying filing fees for more information), USCIS will not consider your request for deferred action. Please read the form instructions to ensure that you answer the appropriate questions (determined by whether you are submitting an initial or renewal request) and that you submit all the required documentation to support your initial request.

You must file your request for consideration of DACA at the USCIS Lockbox. You can find the mailing address and instructions at www.uscis.gov/i-821d. As of June 5, 2014, requestors must use the new version of the form.  After your Form I-821D, Form I-765, and Form I-765 Worksheet have been received, USCIS will review them for completeness, including submission of the required fee, initial evidence and supporting documents (for initial filings).

If it is determined that the request is complete, USCIS will send you a receipt notice. USCIS will then send you an appointment notice to visit an Application Support Center (ASC) for biometric services, if an appointment is required. Please make sure you read and follow the directions in the notice. Failure to attend your biometrics appointment may delay processing of your request for consideration of deferred action, or may result in a denial of your request. You may also choose to receive an email and/or text message notifying you that your form has been accepted by completing a Form G-1145, E-Notification of Application/Petition Acceptance.

Each request for consideration of DACA will be reviewed on an individual, case-by-case basis. USCIS may request more information or evidence from you, or request that you appear at a USCIS office. USCIS will notify you of its determination in writing.

**Note:** All individuals who believe they meet the guidelines, including those in removal proceedings, with a final removal order, or with a voluntary departure order (and not in immigration detention), may affirmatively request consideration of DACA from USCIS through this process. Individuals who are currently in immigration detention and believe they meet the guidelines may not request consideration of deferred action from USCIS but may identify themselves to their deportation officer or Jail Liaison. You may also contact the ICE Field Office Director. For more information visit ICE's website at www.ice.gov/daca.

**Q8: Can I obtain a fee waiver or fee exemption for this process?**
A8: There are no fee waivers available for employment authorization applications connected to DACA. There are very limited fee exemptions available. Requests for fee exemptions must be filed and favorably adjudicated before an individual files his/her request for consideration of DACA without a fee. In order to be considered for a fee exemption, you must submit a letter and supporting documentation to USCIS demonstrating that you meet one of the following conditions:

- You are under 18 years of age, have an income that is less than 150 percent of the U.S. poverty level, and are in foster care or otherwise lacking any parental or other familial support; or
- You are under 18 years of age and homeless; or
- You cannot care for yourself because you suffer from a serious, chronic disability and your income is less than 150 percent of the U.S. poverty level; or,
- You have, at the time of the request, accumulated **$10,000** or more in debt in the past 12 months as a result of unreimbursed medical expenses for yourself or an immediate family member, and your income is less than 150 percent of the U.S. poverty level.

You can find additional information on our Fee Exemption Guidance Web page. Your request must be submitted and decided before you submit a request for consideration of DACA without a fee. In order to be considered for a fee exemption, you must provide documentary evidence to demonstrate that you meet any of the above conditions at the time that you make the request. For evidence, USCIS will:

- Accept affidavits from community-based or religious organizations to establish a requestor's homelessness or lack of parental or other familial financial support.
- Accept copies of tax returns, bank statement, pay stubs, or other reliable evidence of income level. Evidence can also include an affidavit from the applicant or a responsible third party attesting that the applicant does not file tax returns, has no bank accounts, and/or has no income to prove income level.
- Accept copies of medical records, insurance records, bank statements, or other reliable evidence of unreimbursed medical expenses of at least $**10,000**.

through encounters with CBP or ICE?
A11: No. If you are not in removal proceedings but believe that you meet the guidelines, you should submit your DACA request to USCIS under the process outlined below.

**Q12: Can I request consideration of DACA from USCIS if I am in immigration detention under the custody of ICE?**
A12: No. If you are currently in immigration detention, you may not request consideration of DACA from USCIS. If you think you meet the guidelines of this process, you should identify yourself to your deportation officer or Jail Liaison. You may also contact the ICE Field Office Director. For more information, visit ICE's website at www.ice.gov/daca.

**Q13: If I am about to be removed by ICE and believe that I meet the guidelines for consideration of DACA, what steps should I take to seek review of my case before removal?**
A13: If you believe you can demonstrate that you meet the guidelines and are about to be removed, you should immediately contact the Law Enforcement Support Center's

hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q14: What should I do if I meet the guidelines of this process and have been issued an ICE detainer following an arrest by a state or local law enforcement officer?**
A14: If you meet the guidelines and have been served a detainer, you should immediately contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q15: If I accepted an offer of administrative closure under the case-by-case review process or my case was terminated as part of the case-by-case review process, can I be considered for deferred action under this process?**
A15: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you have accepted an offer of administrative closure or termination under the case-by-case review process.

**Q16: If I declined an offer of administrative closure under the case-by-case review process, can I be considered for deferred action under this process?**
A16: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you declined an offer of administrative closure under the case-by-case review process.

**Q17: If my case was reviewed as part of the case-by-case review process but I was not offered administrative closure, can I be considered for deferred action under this process?**
A17: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you were not offered administrative closure following review of your case as part of the case-by-case review process.

**Q18: Can I request consideration of DACA under this process if I am currently in a nonimmigrant status (e.g. F-1, E-2, H-4) or have Temporary Protected Status (TPS)?**

(staffed 24 hours a day, 7 days a week).

**Q15: If I accepted an offer of administrative closure under the case-by-case review process or my case was terminated as part of the case-by-case review process, can I be considered for deferred action under this process?**
A15: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you have accepted an offer of administrative closure or termination under the case-by-case review process.

**Q16: If I declined an offer of administrative closure under the case-by-case review process, can I be considered for deferred action under this process?**
A16: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you declined an offer of administrative closure under the case-by-case review process.

**Q17: If my case was reviewed as part of the case-by-case review process but I was not offered administrative closure, can I be considered for deferred action under this process?**
A17: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you were not offered administrative closure following review of your case as part of the case-by-case review process.

**Q18: Can I request consideration of DACA under this process if I am currently in a nonimmigrant status (e.g. F-1, E-2, H-4) or have Temporary Protected Status (TPS)?**
A18: No. You can only request consideration of DACA under this process if you currently have no immigration status and were not in any lawful status on June 15, 2012.

**Q19: Will the information I share in my request for consideration of DACA be used for immigration enforcement purposes?**
A19: Information provided in this request is protected from disclosure to ICE and CBP for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance (www.uscis.gov/NTA). Individuals whose cases are deferred pursuant to DACA will not be referred to ICE. The information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of DACA, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense. The above information sharing policy covers family members and guardians, in addition to the requestor. This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

**Q20: If my case is referred to ICE for immigration enforcement purposes or if I receive an NTA, will information related to my family members and guardians also be referred to ICE for immigration enforcement purposes?**
A20: If your case is referred to ICE for purposes of immigration enforcement or you receive an NTA, information related to your family members or guardians that is contained in your request will not be referred to ICE for purposes of immigration enforcement against family members or guardians. However, that information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of DACA, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense.

This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

**Q21: Will USCIS verify documents or statements that I provide in support of a request for DACA?**

Request for Emails

A21: USCIS has the authority to verify documents, facts, and statements that are provided in support of requests for DACA. USCIS may contact education institutions, other government agencies, employers, or other entities in order to verify information.

*Return to top.*

**C. Background Checks**

**Q22: Will USCIS conduct a background check when reviewing my request for consideration of DACA?**
A22: Yes. You must undergo biographic and biometric background checks before USCIS will consider your DACA request.

**Q23: What do background checks involve?**
A23: Background checks involve checking biographic and biometric information provided by the individuals against a variety of databases maintained by DHS and other federal government agencies.

**Q24: What steps will USCIS and ICE take if I engage in fraud through the new process?**
A24: If you knowingly make a misrepresentation, or knowingly fail to disclose facts, in an effort to obtain DACA or work authorization through this process, you will be treated as an immigration enforcement priority to the fullest extent permitted by law, and be subject to criminal prosecution and/or removal from the United States.

*Return to top.*

**D. After USCIS Makes a Decision**

**Q25: Can I appeal USCIS' determination?**
A25: No. You cannot file a motion to reopen or reconsider, and cannot appeal the decision if USCIS denies your request for consideration of DACA.

You may request a review of your I-821D denial by contacting the USCIS Contact Center at 800-375-5283. For people who are deaf, hard of hearing or have a speech disability: TTY 800-767-1833.

at 1-800-375-5283 to have a service request created if you believe that you actually did meet all of the DACA guidelines and you believe that your request was denied because USCIS:

- Denied the request based on abandonment, when you actually responded to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) within the prescribed time;
- Mailed the RFE or NOID to the wrong address although you had changed your address online at **www.uscis.gov** or with a customer service representative on the phone and submitted a Form AR-11, Change of Address, before USCIS issued the RFE or NOID.
    - To ensure the address is updated on a pending case as quickly as possible, we recommend that customers submit a change of address request at **www.uscis.gov/addresschange**. Please note that only an online change of address or a Form AR-11 submission will satisfy the legal requirements for notifying the agency of an address change. Therefore, if you called a customer service representative to change your address, please be sure you have also submitted your address change online or with a Form AR-11.
- Denied the request on the grounds that you did not come to the United States prior to your 16th birthday, but the evidence submitted at the time of filing shows that you did arrive before reaching that age.
- Denied the request on the grounds that you were under age 15 at the time of filing but not in removal proceedings, while the evidence submitted at the time of filing show that you indeed were in removal proceedings when the request was filed;
- Denied the request on the grounds that you were 31 or older as of June 15, 2012, but the evidence submitted at the time of filing shows that you were under the age of 31 as of June 15, 2012;
- Denied the request on the grounds that you had lawful status on June 15, 2012, but the evidence submitted at the time of filing shows that you indeed were in an unlawful immigration status on that date;
- Denied the request on the grounds that you were not physically present in the United States on June 15, 2012, and up through the date of filing, but the evidence submitted at the time of filing shows that you were, in fact, present;
- Denied the request due to your failure to appear at a USCIS Application Support Center (ASC) to have your biometrics collected, when you in fact either did appear at a USCIS ASC to have this done or requested prior to the scheduled date of your biometrics appointment to have the appointment rescheduled; or
- Denied the request because you did not pay the filing fees for Form I-765, Application for Employment Authorization, when you actually did pay these fees

If you believe your request was denied due to any of these administrative errors, you may contact our USCIS Contact Center at 800-375-5283. For people who are deaf, hard of hearing or have a speech disability: TTY 800-767-1833. Customer service officers are available Monday – Friday from 8 a.m. – 6 p.m. in each U.S. time zone.

**Q26: If USCIS does not exercise deferred action in my case, will I be placed in removal proceedings?**
A26: If you have submitted a request for consideration of DACA and USCIS decides not to defer action in your case, USCIS will apply its policy guidance governing the referral of cases to ICE and the issuance of Notices to Appear (NTA). If your case does not involve a criminal offense, fraud, or a threat to national security or public safety, your

case will not be referred to ICE for purposes of removal proceedings except where DHS determines there are exceptional circumstances. For more detailed information on the applicable NTA policy, visit www.uscis.gov/NTA. If after a review of the totality of circumstances USCIS determines to defer action in your case, USCIS will likewise exercise its discretion and will not issue you an NTA.

**Q27: Can my deferred action under the DACA process be terminated before it expires?**

A27: Yes.

~~DACA (OLD) certificate; or are an honorably discharged veteran of the Coast Guard or~~ Armed Forces of the United States; and

7. Have not been convicted of a felony, significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

These guidelines must be met for consideration of DACA. U.S. Citizenship and Immigration Services (USCIS) retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met.

**Q29: How old must I be in order to be considered for deferred action under this process?**
A29:

- If you have never been in removal proceedings, or your proceedings have been terminated before your request for consideration of DACA, you must be at least 15 years of age or older at the time of filing and meet the other guidelines.

- If you are in removal proceedings, have a final removal order, or have a voluntary departure order, and are not in immigration detention, you can request consideration of DACA even if you are under the age of 15 at the time of filing and meet the other guidelines.

- In all instances, you must have been under the age of 31 as of June 15, 2012, to be considered for DACA.

**Q30: I first came to the United States before I turned 16 years old and have been continuously residing in the United States since at least June 15, 2007. Before I turned 16 years old, however, I left the United States for some period of time before returning and beginning my current period of continuous residence. May I be considered for deferred action under this process?**
A30: Yes, but only if you established residence in the United States during the period before you turned 16 years old, as evidenced, for example, by records showing you attended school or worked in the United States during that time, or that you lived in the United States for multiple years during that time. In addition to establishing that you initially resided in the United States before you turned 16 years old, you must also have maintained continuous residence in the United States from June 15, 2007, until the present time to be considered for deferred action under this process.

**Q31: To prove my continuous residence in the United States since June 15, 2007, must I provide evidence documenting my presence for every day, or every month, of that period?**
A31: To meet the continuous residence guideline, you must submit documentation that shows you have been living in the United States from June 15, 2007, up until the time of your request. You should provide documentation to account for as much of the period as reasonably possible, but there is no requirement that every day or month of that period be specifically accounted for through direct evidence.

It is helpful to USCIS if you can submit evidence of your residence during at least each year of the period. USCIS will review the documentation in its totality to determine whether it is more likely than not that you were continuously residing in the United States for the period since June 15, 2007. Gaps in the documentation as to certain periods may raise doubts as to your continued residence if, for example, the gaps are lengthy or the record otherwise indicates that you may have been outside the United States for a period of time that was not brief, casual or innocent.

If gaps in your documentation raise questions, USCIS may issue a Request for Evidence to allow you to submit additional documentation that supports your claimed continuous residence.

Affidavits may be submitted to explain a gap in the documentation demonstrating that you meet the five-year continuous residence requirement. If you submit affidavits related to the continuous residence requirement, you must submit two or more affidavits, sworn to or affirmed by people other than yourself who have direct personal knowledge of the events and circumstances during the period as to which there is a gap in the documentation. Affidavits may only be used to explain gaps in your continuous residence; they cannot be used as evidence that you meet the entire five-year continuous residence requirement.

**Q32: Does "currently in school" refer to the date on which the request for consideration of deferred action is filed?**
A32: To be considered "currently in school" under the guidelines, you must be enrolled in school on the date you submit a request for consideration of deferred action under this process.

**Q33: Who is considered to be "currently in school" under the guidelines?**
A33: To be considered "currently in school" under the guidelines, you must be enrolled in:

- a public, private, or charter elementary school, junior high or middle school, high school, secondary school, alternative program, or homeschool program that meets state requirements;

- an education, literacy, or career training program (including vocational training)

that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; or

- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other state-authorized exam (e.g., HiSet or TASC) in the United States.

Such education, literacy, career training programs (including vocational training), or education programs assisting students in obtaining a regular high school diploma or its recognized equivalent under state law, or in passing a GED exam or other state-authorized exam in the United States, include, but are not limited to, programs funded, in whole or in part, by federal, state, county or municipal grants or administered by non-profit organizations. Programs funded by other sources may qualify if they are programs of demonstrated effectiveness.

In assessing whether such programs not funded in whole or in part by federal, state, county or municipal grants or administered by non-profit organizations are of demonstrated effectiveness, USCIS will consider the duration of the program's existence; the program's track record in assisting students in obtaining a regular high school diploma or its recognized equivalent, in passing a GED or other state-authorized exam (e.g., HiSet or TASC), or in placing students in postsecondary education, job training, or employment; and other indicators of the program's overall quality. For individuals seeking to demonstrate that they are "currently in school" through enrollment in such a program, the burden is on the requestor to show the program's demonstrated effectiveness.

**Q34: How do I establish that I am currently in school?**

A34: Documentation sufficient for you to demonstrate that you are currently in school may include, but is not limited to:

- evidence that you are enrolled in a public, private, or charter elementary school, junior high or middle school, high school or secondary school; alternative program, or homeschool program that meets state requirements; or
- evidence that you are enrolled in an education, literacy, or career training program (including vocational training) that:
  - has a purpose of improving literacy, mathematics, or English, or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; and
  - is funded, in whole or in part, by federal, state, county or municipal grants or is administered by non-profit organizations, or if funded by other sources, is a program of demonstrated effectiveness; or
- evidence that you are enrolled in an education program assisting students in obtaining a high school equivalency diploma or certificate recognized under state law (such as by passing a GED exam or other such state-authorized exam [for example, HiSet or TASC]), and that the program is funded in whole or in part by federal, state, county or municipal grants or is administered by non-profit organizations or if funded by other sources, is of demonstrated effectiveness.

Such evidence of enrollment may include: acceptance letters, school registration cards, letters from a school or program, transcripts, report cards, or progress reports which may show the name of the school or program, date of enrollment, and current educational or grade level, if relevant.

**Q35: What documentation may be sufficient to demonstrate that I have**
- evidence that you are enrolled in an education, literacy, or career training program (including vocational training) that:
  - has a purpose of improving literacy, mathematics, or English, or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; and
  - is funded, in whole or in part, by federal, state, county or municipal grants or is administered by non-profit organizations, or if funded by other sources, is a program of demonstrated effectiveness; or
- evidence that you are enrolled in an education program assisting students in obtaining a high school equivalency diploma or certificate recognized under state law (such as by passing a GED exam or other such state-authorized exam [for example, HiSet or TASC]), and that the program is funded in whole or in part by federal, state, county or municipal grants or is administered by non-profit organizations or if funded by other sources, is of demonstrated effectiveness.

Such evidence of enrollment may include: acceptance letters, school registration cards, letters from a school or program, transcripts, report cards, or progress reports which may show the name of the school or program, date of enrollment, and current educational or grade level, if relevant.

**Q35: What documentation may be sufficient to demonstrate that I have graduated from high school?**
A35: Documentation sufficient for you to demonstrate that you have graduated from high school may include, but is not limited to, a high school diploma from a public or private high school or secondary school, a certificate of completion, a certificate of attendance, or an alternate award from a public or private high school or secondary school, or a recognized equivalent of a high school diploma under state law, or a GED certificate or certificate from passing another such state authorized exam (e.g., HiSet or TASC) in the United States.

011

**Q36: What documentation may be sufficient to demonstrate that I have obtained a GED certificate or certificate from passing another such state authorized exam (e.g., HiSet or TASC)?**

A36: Documentation may include, but is not limited to, evidence that you have passed a GED exam, or other state-authorized exam (e.g., HiSet or TASC), and, as a result, have received the recognized equivalent of a regular high school diploma under state law.

**Q37: If I am enrolled in a literacy or career training program, can I meet the guidelines?**

A37: Yes, in certain circumstances. You may meet the guidelines if you are enrolled in an education, literacy, or career training program that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement. Such programs include, but are not limited to, programs funded, in whole or in part, by federal, state, county or municipal grants or administered by non-profit organizations, or if funded by other sources, are programs of demonstrated effectiveness.

**Q38: If I am enrolled in an English as a Second Language (ESL) program, can I meet the guidelines?**

A38: Yes, in certain circumstances. Enrollment in an ESL program may be used to meet the guidelines if the ESL program is funded in whole or in part by federal, state, county or municipal grants, or administered by non-profit organizations, or if funded by other sources is a  program of demonstrated effectiveness. You must submit direct documentary evidence that the program is funded in whole or part by federal, state, county or municipal grants, administered by a non-profit organization, or of demonstrated effectiveness.

**Q39: Will USCIS consider evidence other than that listed in Chart #1 to show that I have met the education guidelines?**

A39: No. Evidence not listed in Chart #1 will not be accepted to establish that you are currently in school, have graduated or obtained a certificate of completion from high school, or have obtained a GED or passed another state-authorized exam (e.g., HiSet or TASC). You must submit any of the documentary evidence listed in Chart #1 to show that you meet the education guidelines.

**Q40: Will USCIS consider evidence other than that listed in Chart #1 to show that I have met certain initial guidelines?**

A40: Evidence other than those documents listed in Chart #1 may be used to establish the following guidelines and factual showings if available documentary evidence is insufficient or lacking and shows that:

- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You satisfy the continuous residence requirement, as long as you present direct evidence of your continued residence in the United States for a portion of the required period and the circumstantial evidence is used only to fill in gaps in the length of continuous residence demonstrated by the direct evidence; and
- Any travel outside the United States during the period of required continuous presence was brief, casual, and innocent.

However, USCIS will not accept evidence other than the documents listed in Chart #1 as proof of any of the following guidelines to demonstrate that you:

- Were under the age of 31 on June 15, 2012; and
- Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a GED certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

For example, even if you do not have documentary proof of your presence in the United States on June 15, 2012, you may still be able to satisfy the guideline. You may do so by submitting credible documentary evidence that you were present in the United States shortly before and shortly after June 15, 2012, which, under the facts presented, may give rise to an inference of your presence on June 15, 2012 as well. However, evidence other than that listed in Chart #1 will not be accepted to establish that you have graduated high school. You must submit the designated documentary evidence to satisfy that you meet this guideline.

Chart #1 provides examples of documentation you may submit to demonstrate you meet the initial guidelines for consideration of deferred action under this process. Please see the instructions of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for additional details of acceptable documentation.

| Chart #1 Examples of Documents to Submit to Demonstrate You Meet the Guidelines | |
| --- | --- |
| Proof of identity | <ul><li>Passport or national identity document from your country of origin</li><li>Birth certificate with photo identification</li><li>School or military ID with photo</li><li>Any U.S. government immigration or other document bearing your name and photo</li></ul> |
| Proof you came to U.S. before your 16th birthday | <ul><li>Passport with admission stamp</li><li>Form I-94/I-95/I-94W</li><li>School records from the U.S. schools you have attended</li></ul> |

| | |
|---|---|
| | • Any Immigration and Naturalization Service or DHS document stating your date of entry (Form I-862, Notice to Appear)<br>• Travel records<br>• Hospital or medical records<br>• Rent receipts or utility bills<br>• Employment records (pay stubs, W-2 Forms, etc.)<br>• Official records from a religious entity confirming participation in a religious ceremony<br>• Copies of money order receipts for money sent in or out of the country<br>• Birth certificates of children born in the U.S.<br>• Dated bank transactions<br>• Automobile license receipts or registration<br>• Deeds, mortgages, rental agreement contracts<br>• Tax receipts, insurance policies |
| Proof of immigration status | • Form I-94/I-95/I-94W with authorized stay expiration date<br>• Final order of exclusion, deportation, or removal issued as of June 15, 2012<br>• A charging document placing you into removal proceedings |
| Proof of presence in U.S. on June 15, 2012 | • Rent receipts or utility bills<br>• Employment records (pay stubs, W-2 Forms, etc.)<br>• School records (letters, report cards, etc.)<br>• Military records (Form DD-214 or NGB Form 22)<br>• Official records from a religious entity confirming participation in a religious ceremony<br>• Copies of money order receipts for money sent in or out of the country |
| Proof you continuously | the United States |
| Proof you are an honorably discharged veteran of the U.S. Armed Forces or the U.S. Coast Guard | • Form DD-214, Certificate of Release or Discharge from Active Duty<br>• NGB Form 22, National Guard Report of Separation and Record of Service<br>• Military personnel records<br>• Military health records |

**Q41: May I file affidavits as proof that I meet the initial guidelines for consideration of DACA?**
A41: Affidavits generally will not be sufficient on their own to demonstrate that you meet the guidelines for USCIS to consider you for DACA. However, affidavits may be used to support meeting the following guidelines only if the documentary evidence available to you is insufficient or lacking:

- Demonstrating that you meet the five year continuous residence requirement; and
- Establishing that departures during the required period of continuous residence were brief, casual and innocent.

If you submit affidavits related to the above criteria, you must submit two or more affidavits, sworn to or affirmed by people other than yourself, who have direct personal knowledge of the events and circumstances. Should USCIS determine that the affidavits are insufficient to overcome the unavailability or the lack of documentary evidence with respect to either of these guidelines, it will issue a Request for Evidence, indicating that further evidence must be submitted to demonstrate that you meet these guidelines.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- You are currently in school, have graduated or obtained a certificate of completion or other alternate award from high school, have obtained a high school equivalency diploma or certificate (such as by passing the GED exam or other state-authorized exam [for example, HiSet or TASC]), or are an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You were under the age of 31 on June 15, 2012; and
- Your criminal history, if applicable.

If the only evidence you submit to demonstrate you meet any of the above guidelines

If you submit affidavits related to the above criteria, you must submit two or more affidavits, sworn to or affirmed by people other than yourself, who have direct personal knowledge of the events and circumstances. Should USCIS determine that the affidavits are insufficient to overcome the unavailability or the lack of

013

documentary evidence with respect to either of these guidelines, it will issue a Request for Evidence, indicating that further evidence must be submitted to demonstrate that you meet these guidelines.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- You are currently in school, have graduated or obtained a certificate of completion or other alternate award from high school, have obtained a high school equivalency diploma or certificate (such as by passing the GED exam or other state-authorized exam [for example, HiSet or TASC]), or are an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You were under the age of 31 on June 15, 2012; and
- Your criminal history, if applicable.

If the only evidence you submit to demonstrate you meet any of the above guidelines guideline alone, if you were admitted for "duration of status" or for a period of time that extended past June 14, 2012 but "aged out" of your dependent nonimmigrant status, on or before June 15, 2012, (meaning you turned 21 years old on or before June 15, 2012), you may be considered for deferred action under this process.

**Q45: I was admitted for "duration of status" but my status in SEVIS is listed as terminated on or before June 15, 2012. May I be considered for deferred action under this process?**

A45: Yes. For the purposes of satisfying the ""had no lawful status on June 15, 2012," guideline alone, if your status as of June 15, 2012, is listed as "terminated" in SEVIS, you may be considered for deferred action under this process.

**Q46: I am a Canadian citizen who was inspected by CBP but was not issued an I-94 at the time of admission. May I be considered for deferred action under this process?**

A46: In general, a Canadian citizen who was admitted as a visitor for business or pleasure and not issued an I-94, Arrival/Departure Record, (also known as a "non-controlled" Canadian nonimmigrant) is lawfully admitted for a period of six months. For that reason, unless there is evidence, including verifiable evidence provided by the individual, that he or she was specifically advised that his or her admission would be for a different length of time, the Department of Homeland Security (DHS) will consider for DACA purposes only, that the alien was lawfully admitted for a period of six months.  Therefore, if DHS is able to verify from its records that your last non-guideline alone, if you were admitted for "duration of status" or for a period of time that extended past June 14, 2012 but "aged out" of your dependent nonimmigrant status, on or before June 15, 2012, (meaning you turned 21 years old on or before June 15, 2012), you may be considered for deferred action under this process.

**Q45: I was admitted for "duration of status" but my status in SEVIS is listed as terminated on or before June 15, 2012. May I be considered for deferred action under this process?**

A45: Yes. For the purposes of satisfying the ""had no lawful status on June 15, 2012," guideline alone, if your status as of June 15, 2012, is listed as "terminated" in SEVIS, you may be considered for deferred action under this process.

**Q46: I am a Canadian citizen who was inspected by CBP but was not issued an I-94 at the time of admission. May I be considered for deferred action under this process?**

A46: In general, a Canadian citizen who was admitted as a visitor for business or pleasure and not issued an I-94, Arrival/Departure Record, (also known as a "non-controlled" Canadian nonimmigrant) is lawfully admitted for a period of six months. For that reason, unless there is evidence, including verifiable evidence provided by the individual, that he or she was specifically advised that his or her admission would be for a different length of time, the Department of Homeland Security (DHS) will consider for DACA purposes only, that the alien was lawfully admitted for a period of six months.  Therefore, if DHS is able to verify from its records that your last non-controlled entry occurred on or before Dec. 14, 2011, DHS will consider your nonimmigrant visitor status to have expired as of June 15, 2012 and you may be considered for deferred action under this process.

**Q47: I used my Border Crossing Card (BCC) to obtain admission to the United States and was not issued an I-94 at the time of admission. May I be considered for deferred action under this process?**

A47: Because the limitations on entry for a BCC holder vary based on location of admission and travel, DHS will assume that the BCC holder who was not provided an I-94 was admitted for the longest period legally possible—30 days—unless the individual can demonstrate, through verifiable evidence, that he or she was specifically advised that his or her admission would be for a different length of time. Accordingly, if DHS is able to verify from its records that your last admission was using a BCC, you were not issued an I-94 at the time of admission, and it occurred on or before May 14, 2012, DHS will consider your nonimmigrant visitor status to have expired as of June 15, 2012, and you may be considered for deferred action under this process.

**Q48: Do I accrue unlawful presence if I have a pending initial request for consideration of DACA?**

A48: You will continue to accrue unlawful presence while the request for consideration of DACA is pending unless you are under 18 years of age at the time of the request. If you are under 18 years of age at the time you submit your request, you will not accrue unlawful presence while the request is pending, even if you turn 18 while your request is pending with USCIS. If action on your case is deferred, you will not accrue unlawful presence during the period of deferred action. However, having action deferred on

014

your case will not excuse previously accrued unlawful presence.

Return to top.

### III. Renewal of DACA

**Q49: When should I file my renewal request with U.S. Citizenship and Immigration Services (USCIS)?**

A49: USCIS strongly encourages you to submit your Deferred Action for Childhood Arrivals (DACA) renewal request between 150 days and 120 days before the expiration date located on your current Form I-797 DACA approval notice and Employment Authorization Document (EAD). Filing during this window will minimize the possibility that your current period of DACA will expire before you receive a decision on your renewal request.

USCIS' current goal is to process DACA renewal requests within 120 days. You may submit an inquiry about the status of your renewal request after it has been pending more than 105 days. To submit an inquiry online, please visit egov.uscis.gov/e-request.

- **Please Note:** Factors that may affect the timely processing of your DACA renewal request include, but are not limited to:
  - Failure to appear at an Application Support Center (ASC) for a scheduled biometrics appointment to obtain fingerprints and photographs. No-shows or rescheduling appointments will require additional processing time.
  - Issues of national security, criminality or public safety discovered during the background check process that require further vetting.
  - Issues of travel abroad that need additional evidence/clarification.
  - Name/date of birth discrepancies that may require additional evidence/clarification.
  - The renewal submission was incomplete or contained evidence that suggests a requestor may not satisfy the DACA renewal guidelines and USCIS must send a request for additional evidence or explanation

**Q50: Can I file a renewal request outside the recommended filing period of 150 days to 120 days before my current DACA expires?**

A50: USCIS strongly encourages you to file your renewal request within the recommended 150-120 day filing period to minimize the possibility that your current period of DACA will expire before you receive a decision on your renewal request. Requests received earlier than 150 days in advance will be accepted; however, this could result in an overlap between your current DACA and your renewal. This means your renewal period may extend for less than a full two years from the date that your current DACA period expires..

If you file after the recommended filing period (meaning less than 120 days before your current period of DACA expires), there is an increased possibility that your current period of DACA and employment authorization will expire before you receive a decision on your renewal request. If you file after your most recent DACA period expired, but within one year of its expiration, you may submit a request to renew your DACA. If you are filing beyond one year after your most recent period of DACA expired, you may still request DACA by submitting a new initial request.

**Q51: How will USCIS evaluate my request for renewal of DACA:**
A51: You may be considered for renewal of DACA if you met the guidelines for consideration of Initial DACA (see above) AND you:

- Did not depart the United States on or after Aug. 15, 2012, without advance parole;
- Have continuously resided in the United States since you submitted your most recent request for DACA that was approved up to the present time; and
- Have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and do not otherwise pose a threat to national security or public safety.

These guidelines must be met for consideration of DACA renewal. USCIS retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met.

**Q52 Do I accrue unlawful presence if I am seeking renewal and my previous period of DACA expires before I receive a renewal of deferred action under DACA? Similarly, what would happen to my work authorization?**

A52: Yes, if your previous period of DACA expires before you receive a renewal of deferred action under DACA, you will accrue unlawful presence for any time between the periods of deferred action unless you are under 18 years of age at the time you submit your renewal request.

Similarly, if your previous period of DACA expires before you receive a renewal of deferred action under DACA, you will not be authorized to work in the United States regardless of your age at time of filing until and unless you receive a new employment authorization document from USCIS.

**Q53. Do I need to provide additional documents when I request renewal of deferred action under DACA?**

A53.  No, unless you have *new* documents pertaining to removal proceedings or criminal history that you have not already submitted to USCIS in a previously approved DACA request. USCIS, however, reserves the authority to request at its discretion additional documents, information or statements relating to a DACA renewal request determination.

CAUTION: If you knowingly and willfully provide materially false information on Form

I-821D, you will be committing a federal felony punishable by a fine, or imprisonment up to five years, or both, under 18 U.S.C. Section 1001. In addition, individuals may be placed into removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

**Q54. If I am no longer in school, can I still request to renew my DACA?**
A54. Yes. Neither Form I-821D nor the instructions ask renewal requestors for information about continued school enrollment or graduation. The instructions for renewal requests specify that you may be considered for DACA renewal if you met the guidelines for consideration of initial DACA, including the educational guidelines and:

1. Did not depart the United States on or after August 15, 2012, without advance parole;

2. Have continuously resided in the United States, up to the present time, since you submitted your most recent request for DACA that was approved; and

3. Have not been convicted of a felony, a significant misdemeanor or three or more misdemeanors, and are not a threat to national security or public safety.

**Q55. If I initially received DACA and was under the age of 31 on June 15, 2012, but have since become 31 or older, can I still request a DACA renewal?**
A55. Yes. You may request consideration for a renewal of DACA as long as you were under the age of 31 as of June 15, 2012.

## IV. Travel

**Q56: May I travel outside of the United States before I submit an initial Deferred Action for Childhood Arrivals (DACA) request or while my initial DACA request remains pending with the Department of Homeland Security (DHS)?**
A56: Any unauthorized travel outside of the United States on or after Aug. 15, 2012, will interrupt your continuous residence and you will not be considered for deferred action under this process. Any travel outside of the United States that occurred on or after June 15, 2007, but before Aug. 15, 2012, will be assessed by U.S. Citizenship and Immigration Services (USCIS) to determine whether the travel qualifies as brief, casual and innocent. (See Chart #2.)

CAUTION: You should be aware that if you have been ordered deported or removed, and you then leave the United States, your departure will likely result in your being considered deported or removed, with potentially serious future immigration consequences.

**Q57: If my case is deferred under DACA, will I be able to travel outside of the United States?**
A57: Not automatically. If USCIS has decided to defer action in your case and you want to travel outside the United States, you must apply for advance parole by filing a Form I-131, Application for Travel Document and paying the applicable fee ($575). USCIS will determine whether your purpose for international travel is justifiable based on the circumstances you describe in your request. Generally, USCIS will only grant advance parole if your travel abroad will be in furtherance of:

- humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;

- educational purposes, such as semester-abroad programs and academic research, or;

- employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

Travel for vacation is not a valid basis for advance parole.

You may not apply for advance parole unless and until USCIS defers action in your case under the consideration of DACA. You cannot apply for advance parole at the same time as you submit your request for consideration of DACA. All advance parole requests will be considered on a case-by-case basis.

If USCIS has deferred action in your case under the DACA process after you have been ordered deported or removed, you may still request advance parole if you meet the guidelines for advance parole described above.

CAUTION: However, for those individuals who have been ordered deported or

2. The absence was not because of an order of exclusion, deportation or removal;

3. The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before you were placed in exclusion, deportation or removal proceedings; and

4. The purpose of the absence and/or your actions while outside the United States were not contrary to law.

Once USCIS has approved your request for DACA, you may file Form I-131, Application for Travel Document, to request advance parole to travel outside the United States.

CAUTION: If you travel outside the United States on or after Aug. 15, 2012, without first receiving advance parole, your departure automatically terminates your deferred action under DACA.

**Travel Guidelines (Chart #2)**

| Travel Dates | Type of Travel | Does It Affect Continuous Residence |
|---|---|---|
| On or after | Brief, casual and | No |

| | | |
|---|---|---|
| June 15, 2007, but before Aug. 15, 2012 | innocent | |
| | For an extended time<br><br>Because of an order of exclusion, deportation, voluntary departure, or removal<br><br>To participate in criminal activity | Yes |
| On or after Aug. 15, 2012, and before you have requested deferred action | Any | Yes. You cannot apply for advance parole unless and until DHS has determined whether to defer action in your case and you cannot travel until you receive advance parole.<br><br>In addition, if you have previously been ordered deported and removed and you depart the United States without taking additional steps to address your removal proceedings, your departure will likely result in your being considered deported or removed, with potentially serious future immigration consequences. |
| On or after Aug. 15, 2012, and after you have requested deferred action | Any | |
| On or after Aug. 15, 2012 and after receiving DACA | Any | It depends. If you travel after receiving advance parole, the travel will not interrupt your continuous residence. However, if you travel *without* receiving advance parole, the travel *will* interrupt your continuous residence. |

**Q59: May I file a request for advance parole concurrently with my DACA package?**

A59: Concurrent filing of advance parole is not an option at this time. DHS is, however, reviewing its policy on concurrent filing of advance parole with a DACA request. In addition, DHS is also reviewing eligibility criteria for advance parole. If any changes to this policy are made, USCIS will update this FAQ and inform the public accordingly.

Return to top.

**V. Criminal Convictions**

**Q60: If I have a conviction for a felony offense, a significant misdemeanor offense, or multiple misdemeanors, can I receive an exercise of prosecutorial discretion under this new process?**
A60: No. If you have been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, you will not be considered for Deferred Action for Childhood Arrivals (DACA) except where the Department of Homeland Security (DHS) determines there are exceptional circumstances.

| | | |
|---|---|---|
| | | |

**Q59: May I file a request for advance parole concurrently with my DACA package?**

A59: Concurrent filing of advance parole is not an option at this time. DHS is, however, reviewing its policy on concurrent filing of advance parole with a DACA request. In addition, DHS is also reviewing eligibility criteria for advance parole. If any changes to this policy are made, USCIS will update this FAQ and inform the public accordingly.

Return to top.

**V. Criminal Convictions**

**Q60: If I have a conviction for a felony offense, a significant misdemeanor offense, or multiple misdemeanors, can I receive an exercise of prosecutorial discretion under this new process?**
A60: No. If you have been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, you will not be considered for Deferred Action for Childhood Arrivals (DACA) except where the

be considered for Deferred Action for Childhood Arrivals (DACA), except where the Department of Homeland Security (DHS) determines there are exceptional circumstances.

necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less.

**Q63: What offenses constitute a non-significant misdemeanor?**
A63: For purposes of this process, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less. The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE.

Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less.

**Q63: What offenses constitute a non-significant misdemeanor?**
A63: For purposes of this process, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less. The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE.

Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the **laws be considered felonies or misdemeanors for purpose of this process?**
A66: No. Immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action under this process.

**Q67: Will DHS consider my expunged or juvenile conviction as an offense making me unable to receive an exercise of prosecutorial discretion?**
A67: Expunged convictions and juvenile convictions will not automatically disqualify you. Your request will be assessed on a case-by-case basis to determine whether, under the particular circumstances, a favorable exercise of prosecutorial discretion is warranted. If you were a juvenile, but tried and convicted as an adult, you will be treated as an adult for purposes of the DACA process.

Return to top.

## VI. Miscellaneous

**Q68: Does deferred action provide me with a path to permanent resident status or citizenship?**
A68: No. Deferred action is a form of prosecutorial discretion that does not confer lawful permanent resident status or a path to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.

**Q69: Can I be considered for deferred action even if I do not meet the guidelines laws be considered felonies or misdemeanors for purpose of this process?**
A66: No. Immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action under this process.

**Q67: Will DHS consider my expunged or juvenile conviction as an offense making me unable to receive an exercise of prosecutorial discretion?**
A67: Expunged convictions and juvenile convictions will not automatically disqualify you. Your request will be assessed on a case-by-case basis to determine whether, under the particular circumstances, a favorable exercise of prosecutorial discretion is warranted. If you were a juvenile, but tried and convicted as an adult, you will be treated as an adult for purposes of the DACA process.

Return to top.

## VI. Miscellaneous

**Q68: Does deferred action provide me with a path to permanent resident status or citizenship?**

A68: No. Deferred action is a form of prosecutorial discretion that does not confer lawful permanent resident status or a path to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.

**Q69: Can I be considered for deferred action even if I do not meet the guidelines**
consistent process for considering requests for DACA.

**Q73: Will USCIS personnel responsible for reviewing requests for DACA receive special training?**
A73: Yes. USCIS personnel responsible for considering requests for consideration of DACA have received special training.

**Q74: Must attorneys and accredited representatives who provide pro bono services to deferred action requestors at group assistance events file a Form G-28 with USCIS?**

A74: Under 8 C.F.R. §§ 292.3 and 1003.102, practitioners are required to file a Notice of Entry of Appearance as Attorney or Accredited Representative when they engage in practice in immigration matters before DHS, either in person or through the preparation or filing of any brief, application, petition, or other document. Under these rules, a practitioner who consistently violates the requirement to file a Form G-28 may be subject to disciplinary sanctions; however on Feb. 28, 2011, USCIS issued a statement indicating that it does not intend to initiate disciplinary proceedings against practitioners (attorneys and accredited representatives) based solely on the failure to submit a Notice of Entry of Appearance as Attorney or Accredited Representative (Form G-28) in relation to pro bono services provided at group assistance events. DHS is in the process of issuing a final rule at which time this matter will be reevaluated.

**Q75: When must an individual sign a Form I-821D as a preparer?**
A75: Anytime someone other than the requestor prepares or helps fill out the Form
consistent process for considering requests for DACA.

**Q73: Will USCIS personnel responsible for reviewing requests for DACA receive special training?**
A73: Yes. USCIS personnel responsible for considering requests for consideration of DACA have received special training.

**Q74: Must attorneys and accredited representatives who provide pro bono services to deferred action requestors at group assistance events file a Form G-28 with USCIS?**

A74: Under 8 C.F.R. §§ 292.3 and 1003.102, practitioners are required to file a Notice of Entry of Appearance as Attorney or Accredited Representative when they engage in practice in immigration matters before DHS, either in person or through the preparation or filing of any brief, application, petition, or other document. Under these rules, a practitioner who consistently violates the requirement to file a Form G-28 may be subject to disciplinary sanctions; however on Feb. 28, 2011, USCIS issued a statement indicating that it does not intend to initiate disciplinary proceedings against practitioners (attorneys and accredited representatives) based solely on the failure to submit a Notice of Entry of Appearance as Attorney or Accredited Representative (Form G-28) in relation to pro bono services provided at group assistance events. DHS is in the process of issuing a final rule at which time this matter will be reevaluated.

**Q75: When must an individual sign a Form I-821D as a preparer?**
A75: Anytime someone other than the requestor prepares or helps fill out the Form

USCIS has used parole authority in a variety of situations in the CNMI to address particular humanitarian needs on a case-by-case basis since Nov. 28, 2009. If you live in the CNMI and believe that you meet the guidelines for consideration of deferred action under this process, except that your entry and/or residence to the CNMI took place entirely or in part before Nov. 28, 2009, USCIS is willing to consider your situation on a case-by-case basis for a grant of parole. If this situation applies to you, you should make an appointment through INFOPASS with the USCIS ASC in Saipan to discuss your case with an immigration officer.

**Q78: Someone told me if I pay them a fee, they can expedite my DACA request. Is this true?**
A78: No. There is no expedited processing for deferred action. Dishonest practitioners may promise to provide you with faster services if you pay them a fee. These people are trying to scam you and take your money. Visit our Avoid Scams page to learn how you can protect yourself from immigration scams.

Make sure you seek information about requests for consideration of DACA from official government sources such as USCIS or the DHS. If you are seeking legal advice, visit our Find Legal Services page to learn how to choose a licensed attorney or accredited representative.

**Q79: Am I required to register with the Selective Service?**

A79:  Most male persons residing in the U.S., who are ages 18 through 25, are required

USCIS has used parole authority in a variety of situations in the CNMI to address particular humanitarian needs on a case-by-case basis since Nov. 28, 2009. If you live in the CNMI and believe that you meet the guidelines for consideration of deferred action under this process, except that your entry and/or residence to the CNMI took place entirely or in part before Nov. 28, 2009, USCIS is willing to consider your situation on a case-by-case basis for a grant of parole. If this situation applies to you, you should make an appointment through INFOPASS with the USCIS ASC in Saipan to discuss your case with an immigration officer.

**Q78: Someone told me if I pay them a fee, they can expedite my DACA request. Is this true?**
A78: No. There is no expedited processing for deferred action. Dishonest practitioners may promise to provide you with faster services if you pay them a fee. These people are trying to scam you and take your money. Visit our Avoid Scams page to learn how you can protect yourself from immigration scams.

Make sure you seek information about requests for consideration of DACA from official government sources such as USCIS or the DHS. If you are seeking legal advice, visit our Find Legal Services page to learn how to choose a licensed attorney or accredited representative.

**Q79: Am I required to register with the Selective Service?**

A79:  Most male persons residing in the U.S., who are ages 18 through 25, are required please read IER's factsheet in English (PDF) or Spanish (PDF).

For additional resources and information about workers' rights, visit www.justice.gov/crt/worker-information.

Return to top.

Last Reviewed/Updated: 03/08/2018

Was this page helpful?

◉ Yes  ○ No

Submit

please read IER's factsheet in English (PDF) or Spanish (PDF).

For additional resources and information about workers' rights, visit www.justice.gov/crt/worker-information.

Return to top.

Last Reviewed/Updated: 03/08/2018

Was this page helpful?

◉ Yes  ○ No

Submit

Glossary
Green Card
History and Genealogy
Humanitarian
Military
myUSCIS
Outreach
Site Map
USCIS Videos
Visit the U.S.
Working in the U.S.

Website Policies

General
USA.gov

**USCIS Contact Center**

800-375-5283

**For people who are deaf, hard of hearing or have a speech disability:**

TTY 800-767-1833

020



## Archived Content

In an effort to keep DHS.gov current, the archive contains outdated information that may not reflect current policy or programs.

# Memorandum on Rescission Of Deferred Action For Childhood Arrivals (DACA)



**Release Date:** September 5, 2017

**MEMORANDUM FOR:**

James W. McCament
Acting Director
U.S. Citizenship and Immigration Services

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement

Kevin K. McAleenan
Acting Commissioner
U.S. Customs and Border Protection

Joseph B. Maher
Acting General Counsel

Ambassador James D. Nealon
Assistant Secretary, International Engagement

Julie M. Kirchner
Citizenship and Immigration Services Ombudsman

**FROM:**

Elaine C. Duke
Acting Secretary

**SUBJECT:**

**Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"**

This memorandum rescinds the June 15, 2012 memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children," which established the program known as Deferred Action for Childhood Arrivals ("DACA"). For the reasons and in the manner outlined below, Department of Homeland Security personnel shall take all appropriate actions to execute a wind-down of the program, consistent with the parameters established in this memorandum.

## Background

The Department of Homeland Security established DACA through the issuance of a memorandum on June 15, 2012. The program purported to use deferred action—an act of prosecutorial discretion meant to be applied only on an individualized case-by-case basis—to confer certain benefits to illegal aliens that Congress had not otherwise acted to provide by law.[1] Specifically, DACA provided certain illegal aliens who entered the United States before the age of sixteen a period of deferred action and eligibility to request employment authorization.

021

On November 20, 2014, the Department issued a new memorandum, expanding the parameters of DACA and creating a new policy called Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA"). Among other things—such as the expansion of the coverage criteria under the 2012 DACA policy to encompass aliens with a wider range of ages and arrival dates, and lengthening the period of deferred action and work authorization from two years to three—the November 20, 2014 memorandum directed USCIS "to establish a process, similar to DACA, for exercising prosecutorial discretion through the use of deferred action, on a case-by-case basis," to certain aliens who have "a son or daughter who is a U.S. citizen or lawful permanent resident."

Prior to the implementation of DAPA, twenty-six states—led by Texas—challenged the policies announced in the November 20, 2014 memorandum in the U.S. District Court for the Southern District of Texas. In an order issued on February 16, 2015, the district court preliminarily enjoined the policies nationwide.[2] The district court held that the plaintiff states were likely to succeed on their claim that the DAPA program did not comply with relevant authorities.

The United States Court of Appeals for the Fifth Circuit affirmed, holding that Texas and the other states had demonstrated a substantial likelihood of success on the merits and satisfied the other requirements for a preliminary injunction.[3] The Fifth Circuit concluded that the Department's DAPA policy conflicted with the discretion authorized by Congress. In considering the DAPA program, the court noted that the Immigration and Nationality Act "flatly does not permit the reclassification of millions of illegal aliens as lawfully present and thereby make them newly eligible for a host of federal and state benefits, including work authorization." According to the court, "DAPA is foreclosed by Congress's careful plan; the program is 'manifestly contrary to the statute' and therefore was properly enjoined."

Although the original DACA policy was not challenged in the lawsuit, both the district and appellate court decisions relied on factual findings about the implementation of the 2012 DACA memorandum. The Fifth Circuit agreed with the lower court that DACA decisions were not truly discretionary,[4] and that DAPA and expanded DACA would be substantially similar in execution. Both the district court and the Fifth Circuit concluded that implementation of the program did not comply with the Administrative Procedure Act because the Department did not implement it through notice-and-comment rulemaking.

The Supreme Court affirmed the Fifth Circuit's ruling by equally divided vote (4-4).[5] The evenly divided ruling resulted in the Fifth Circuit order being affirmed. The preliminary injunction therefore remains in place today. In October 2016, the Supreme Court denied a request from DHS to rehear the case upon the appointment of a new Justice. After the 2016 election, both parties agreed to a stay in litigation to allow the new administration to review these issues.

On January 25, 2017, President Trump issued Executive Order No. 13,768, "Enhancing Public Safety in the Interior of the United States." In that Order, the President directed federal agencies to "[e]nsure the faithful execution of the immigration laws . . . against all removable aliens," and established new immigration enforcement priorities. On February 20, 2017, then Secretary of Homeland Security John F. Kelly issued an implementing memorandum, stating "the Department no longer will exempt classes or categories of removable aliens from potential enforcement," except as provided in the Department's June 15, 2012 memorandum establishing DACA,[6] and the November 20, 2014 memorandum establishing DAPA and expanding DACA.[7]

On June 15, 2017, after consulting with the Attorney General, and considering the likelihood of success on the merits of the ongoing litigation, then Secretary John F. Kelly issued a memorandum rescinding DAPA and the expansion of DACA—but temporarily left in place the June 15, 2012 memorandum that initially created the DACA program.

Then, on June 29, 2017, Texas, along with several other states, sent a letter to Attorney General Sessions asserting that the original 2012 DACA memorandum is unlawful for the same reasons stated in the Fifth Circuit and district court opinions regarding DAPA and expanded DACA. The letter notes that if DHS does not rescind the DACA memo by September 5, 2017, the States will seek to amend the DAPA lawsuit to include a challenge to DACA.

The Attorney General sent a letter to the Department on September 4, 2017, articulating his legal determination that DACA "was effectuated by the previous administration through executive action, without proper statutory authority and with no established end-date, after Congress' repeated rejection of proposed legislation that would have accomplished a similar result. Such an open-ended circumvention of immigration laws was an unconstitutional exercise of authority by the Executive Branch." The letter further stated that because DACA "has the same legal and constitutional defects that the courts recognized as to DAPA, it is likely that potentially imminent litigation would yield similar results with respect to DACA." Nevertheless, in light of the administrative complexities associated with ending the program, he recommended that the Department wind it down in an efficient and orderly fashion, and his office has reviewed the terms on which our Department will do so.

## Rescission of the June 15, 2012 DACA Memorandum

Taking into consideration the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated. In the exercise of my authority in establishing national immigration policies and priorities, except for the purposes explicitly identified below, I hereby rescind the June 15, 2012 memorandum.

Recognizing the complexities associated with winding down the program, the Department will provide a limited window in which it will adjudicate certain requests for DACA and associated applications meeting certain parameters specified below. Accordingly, effective immediately, the Department:

- Will adjudicate—on an individual, case-by-case basis—properly filed pending DACA initial requests and associated applications for Employment Authorization Documents that have been accepted by the Department as of the date of this memorandum.
- Will reject all DACA initial requests and associated applications for Employment Authorization Documents filed after the date of this memorandum.
- Will adjudicate—on an individual, case by case basis—properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents from current beneficiaries that have been accepted by the Department as of the date of this memorandum, and from current beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017.
- Will reject all DACA renewal requests and associated applications for Employment Authorization Documents filed outside of the parameters specified above.
- Will not terminate the grants of previously issued deferred action or revoke Employment Authorization Documents solely based on the directives in this memorandum for the remaining duration of their validity periods.
- Will not approve any new Form I-131 applications for advance parole under standards associated with the DACA program, although it will generally honor the stated validity period for previously approved applications for advance parole. Notwithstanding the continued validity of advance parole approvals previously granted, CBP will—of course—retain the authority it has always had and exercised in determining the admissibility of any person presenting at the border and the eligibility of such persons for parole. Further, USCIS will—of course—retain the authority to revoke or terminate an advance parole document at any time.
- Will administratively close all pending Form I-131 applications for advance parole filed under standards associated with the DACA program, and will refund all associated fees.
- Will continue to exercise its discretionary authority to terminate or deny deferred action at any time when immigration officials determine termination or denial of deferred action is appropriate.

This document is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigation prerogatives of DHS.

---

[1] Significantly, while the DACA denial notice indicates the decision to deny is made in the unreviewable discretion of USCIS, USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion.

[2] *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015).

[3] *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015).

[4] *Id.*

[5] *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam).

[6] Memorandum from Janet Napolitano, Secretary, DHS to David Aguilar, Acting Comm'r, CBP, et al., "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (June 15, 2012).

[7] Memorandum from Jeh Johnson, Secretary, DHS, to Leon Rodriguez, Dir., USCIS, et al., "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Whose Parents are U.S. Citizens or Permanent Residents" (Nov. 20, 2014).

Topics:  Border Security, Deferred Action

Keywords:  DACA, Deferred Action for Childhood Arrivals

Last Published Date: September 5, 2017



Homeland
Security

| Topics | Get Involved | How Do I? | | News | About DHS | Site Links |

DHS Components   Accountability   Privacy   FOIA   No Fear Act   Accessibility   Plain Writing   Plug-ins   Inspector General   The White House   USA.gov

023



*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

June 15, 2012

MEMORANDUM FOR:     David V. Aguilar
Acting Commissioner, U.S. Customs and Border Protection

Alejandro Mayorkas
Director, U.S. Citizenship and Immigration Services

John Morton
Director, U.S. Immigration and Customs Enforcement

FROM:     Janet Napolitano
Secretary of Homeland Security

SUBJECT:     Exercising Prosecutorial Discretion with Respect to Individuals
Who Came to the United States as Children

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the Department of Homeland Security (DHS) should enforce the Nation's immigration laws against certain young people who were brought to this country as children and know only this country as home. As a general matter, these individuals lacked the intent to violate the law and our ongoing review of pending removal cases is already offering administrative closure to many of them. However, additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead appropriately focused on people who meet our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for a least five years preceding the date of this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1.  With respect to individuals who are encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2.  With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3.  With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the

2

above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.

- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here.

Janet Napolitano

# Undocumented immigrants line up for relief from deportation

**By the CNN Wire Staff**

🕑 Updated 10:40 AM ET, Fri August 17, 2012

 



Immigrants' high hopes on Obama policy 02:01

### More from CNN



Domino's wants to open thousands of stores

Amy Powell fired as president of Paramount Television

## Story highlights

**NEW:** Arizona's governor orders state agencies to bar benefits to program recipients

Thousands line up at legal help centers to fill up applications

The program gives those who arrived in U.S. as undocumented children the right to work

It does not "provide lawful status" or a path to citizenship, authorities say

Long lines formed at help centers and lawyers' office across America Wednesday as thousands of young, undocumented immigrants began applying for relief from deportation.

They took advantage of one of the biggest immigration policy changes in years. An executive order by President Barack Obama allows those who entered the country illegally as children to remain and work without fear of deportation for at least two years.

A crowd formed at Chicago's Navy Pier Wednesday to get help from immigration lawyers and fill out forms.

"I was able to learn the customs and traditions, and I am used to living the life here," Nayeli Manzano, 16, told CNN affiliate WLS-TV.

She arrived in the United States as a child from Mexico and said she is very much American.

Faces of hope: Lining up for two more years in the U.S.

"I feel I am a citizen," she said. "The only thing that is stopping me is a little piece of paper."



**Related Video:** Undocumented youth clash with governor 02:14

Tuesday, at a Latino community center in New York, Maria, a young Chilean, leaped from her seat.

"I've found the form!" she screamed.

She was with a number of other undocumented immigrants meeting there to get legal advice in anticipation of the release of the form, which authorities surprisingly posted a day before they had said they would.

027

The form, titled Consideration of Deferred Action for
Childhood Arrivals," was dated August 15, 2012, and
bore the expiration date of February 28, 2013.

Maria started filling it out immediately, telling a reporter
she was too afraid to divulge her last name or details of
her childhood trek to the United States, but would feel
differently once the form had been processed and her
status ensured.

Alejandro Mayorkas, the director of U.S. Citizenship and
Immigration Services, said applicants who have not
committed major crimes can apply without fear of
deportation.

The forms were made available two months after
Homeland Security Secretary Janet Napolitano said
that people who arrived in the United States as children
may request consideration of deferred action for a
period of two years subject to renewal, and upon
approval would be eligible for work authorization.

As many as 1.7 million youths may qualify for the
program, according to the Pew Hispanic Center, a
project of the Pew Research Center.

Dubbed Consideration of Deferred Action for Childhood
Arrivals, the deferral program was created in June
under an executive order signed by President Barack
Obama.

However, there is no guarantee of its future if Obama is
not re-elected. Republican Mitt Romney would then
have the power to revoke the order.



**Related Video:** 'DREAM Act kid" seeks
better future 02:12



**Related Video:** College junior applies for
legal status 02:24



**Related Video:** FAIR pres: Obama rewrote
immigration law 02:22

The program also does not guarantee public benefits to
successful applicants. That allowed Arizona Gov. Jan Brewer to issue an executive order
Wednesday directing state agencies to deny benefits -- including driver's licenses -- to deferred
action recipients.

"The program does not provide for any additional public benefit to unlawfully present aliens
beyond the delayed enforcement of United States immigration laws and the possible provision of
employment authorization," the executive order states.

It says granting public benefits to deferred action recipients would have "significant and lasting
impacts" on Arizona's budget, health care system and other taxpayer-funded benefits.

Brewer's order drew immediate criticism from supporters of immigration reform and the DREAM
Act, which would offer temporary legal status to young illegal immigrants who have graduated
high school and want to attend college or join the military. Eventually, they could obtain
permanent residency or citizenship.

"Gov. Brewer is directly attacking children and immigrant youth, who with no fault of their own,
were brought to the United States," said the Arizona DREAM Act Coalition.

The group organized a march to the State Capitol on Wednesday, carrying a large banner
reading "DREAM Act Now."

When he signed the deferred action order, Obama said the changes would make immigration
policy "more fair, more efficient and more just."

Undocumented students in their own words

**News & buzz**

 22 of the best places to visit
in the US

 Donald Trump and Vladimir
Putin morph into the same
person in...

The shift on the politically voluminous on immigration policy elicited praise from Latino leaders while Republicans reacted with outrage, saying the move amounts to amnesty -- a negative buzzword among conservatives -- and usurps congressional authority.

"This is not amnesty," Obama said. "This is not immunity. This is not a path to citizenship. It's not a permanent fix. This is a temporary stopgap measure."

Mayorkas reiterated Tuesday that deferred action does not provide lawful status or a shortcut to permanent residency or citizenship.

A $465 application fee will fund the administrative costs of the program, including a biometric check and the issuance of a secure work-authorization document, he said.

Each request will be examined for possible fraud, he added.

Ana Ramirez said her parents brought her and her sister, Juana, to the United States without any documentation many years ago when they were just toddlers. They were filling out the paperwork for the deferred action program in suburban Atlanta.



Ana and Juana Ramirez were brought to the U.S. by their parents without documentation when they were toddlers.

I didn't have a choice to come here," Juana Ramirez said.

Lawyer Charles Kuck said the young immigrants just want a chance at life without fear of deportation.

"They are getting two things out of this program: one, a promise they won't be deported for two years and, two, a work permit," Kuck said. "In exchange, the federal government is getting a million or more kids coming forward, give their biographical information and that of their whole family and give their pictures."

He urged anyone applying to do so with the help of a lawyer.

"The government has said quite clearly: There will be no appeals. There will be no motions to reopen," he said. "You get one bite at this apple."

In announcing the program, Obama noted that children of illegal immigrants "study in our schools, play in our neighborhoods, befriend our kids, pledge allegiance to our flag. It makes no sense to expel talented young people who are, for all intents and purposes, Americans."

The president declared that the policy change is "the right thing to do."

Under the new policy, people 30 and younger who arrived in the United States before the age of 16, pose no criminal or security threat, and were successful students or served in the military, can get a two-year deferral from deportation and apply for work permits.

Participants must prove they have been living in the country continuously for at least five years.

The change is part of a department effort to target resources at illegal immigrants who pose a greater threat, such as criminals and those trying to enter the country now, Napolitano said.

The move addresses a concern of the Latino community and includes some of the provisions of the DREAM Act, which failed to win enough Republican support to gain congressional approval. The name is an acronym for Development, Relief, and Education for Alien Minors.

Obama has been criticized by Latino leaders for an overall increase in deportations of undocumented immigrants in recent years. Last year, U.S. Immigration and Customs Enforcement removed 396,906 illegal immigrants, the largest number in the agency's history.

Obama and Napolitano have called for Congress to pass the DREAM Act, which would put into law similar steps for children of illegal immigrants to continue living and working in the country.

Republicans who blocked Democratic efforts to change immigration laws have condemned the move, with some calling it an improper maneuver to skirt congressional opposition.

Paid Content   by Outbrain



029

Rep. Steve King of Iowa, a GOP foe of Democratic proposals on immigration, threatened in June to sue to stop Obama "from implementing his unconstitutional and unlawful policy."

Republican Sen. Lindsey Graham of South Carolina has called the decision "a classic Barack Obama move of choosing politics over leadership," while House Judiciary Committee Chairman Lamar Smith, R-Texas, has called the change a "decision to grant amnesty to potentially millions of illegal immigrants."

Others predicted the move will tighten an already poor job market for young Americans.

However, Democratic Sen. Dick Durbin of Illinois, who sponsored the DREAM Act, said it "will give these young immigrants their chance to come out of the shadows and be part of the only country they've ever called home."

Presumed GOP presidential candidate Mitt Romney said in June that the issue needs more substantive action than an executive order, which can be replaced by a subsequent president.

As president, Romney said, he would seek to provide "certainty and clarity for people who come into this country through no fault of their own by virtue of the actions of their parents."

Latinos make up the fastest-growing immigrant population in the country, and the Latino vote is considered a crucial bloc for the November presidential election.

A spokeswoman for a major Latino group, the National Council of La Raza, hailed the administration's move.

"In light of the congressional inaction on immigration reform, this is the right step for the administration to take at this time," NCLR spokeswoman Laura Vazquez said in June.

Five things to know about the big change in immigration policy



New York: Gov't May Pay Off Your Mortgage If You Qualify
*Harp Benefits*



How This Expert-Designed App Can Teach You Spanish in Just 3 Weeks
*Babbel*



I tested a Casper mattress to help with my chronic back pain
*HelloGiggles*

**Recommended From CNN**



People hospitalized after Missouri tourist boat incident
*U.S.*



A bus rider tells a woman in a head scarf 'ICE should...'
*U.S.*



Noncitizens in San Francisco can register to vote...
*U.S.*



Mysterious sarcophagus opened in...
*World*

**PAID CONTENT**

  SmartFeed ▷



You could save $668 on car insurance when you switch
Sponsored: Progressive



One Thing All Liars Have in Common, Brace Yourself
Sponsored: TruthFinder



[Gallery] Inconsiderate Neighbor Blocks Woman's Driveway Until 'Tough' Man Teaches Him A...
Sponsored: Scribol



4 Worst Blood Pressure Meds
Sponsored: vibranthealthnetwork.com



Child Reported Missing Is Found In Crawl Space 2 Years Later
Sponsored: Absolutehistory



