UNITED STATES DISTRICT COURT

FOR SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants,<br><br>KARLA PEREZ, *et al.*,<br><br>    Defendants-Intervenors,<br><br>and<br><br>STATE OF NEW JERSEY,<br><br>    Defendant-Intervenor. | Case No. 1:18-CV-68 (ASH) |

**Unopposed Motion of *Amici Curiae* the New Jersey Hospital Association and Individual Health Care Professionals for Leave to File a Brief *Amici Curiae* in Opposition to Plaintiffs' Motion for a Preliminary Injunction**

    Pursuant to Federal Rule of Civil Procedure 7 and Local Rule 7 of the United States District Court for the Southern District of Texas, *Amici Curiae* the New Jersey Hospital Association and individual health care professionals, Drs. Meika Neblett, Sherif Latef, Carol Mendez, Carmelo Milazzo, and Abbie Jacobs, hereby move for leave to file a Brief *Amici Curiae* in opposition to Plaintiffs' motion for a preliminary injunction. Plaintiffs, Federal Defendants, Defendant-Intervenors Karla Perez, *et al.*, and Defendant-Intervenor State of New Jersey consent to this motion. *Amici* certify that the proposed brief filed with this motion was not written in whole or in part by counsel for any party and that no counsel, party, or person has made a

monetary contribution to the preparation and submission of the brief. For the reasons set forth below, this Court should grant *Amici's* motion.

### 1. Interest of the Movants

Movant, the New Jersey Hospital Association ("NJHA"), is New Jersey's oldest and largest non-profit trade association dedicated to hospitals, health systems, and their patients. The association is devoted to maintaining the quality, accessibility, and affordability of health care services in New Jersey and has more than 400 members across the entire health care continuum, including all 71 of the State's acute care hospitals. NJHA regularly participates in proceedings before Congress, the New Jersey Legislature, and federal and state agencies, as well as the Courts in order to provide expertise and input regarding health care services, health care delivery and payment, patient safety, and other critical health care issues

In particular, NJHA has participated as *amicus curiae* in a number of federal and state cases. Most recently, the association served as *amicus* in *American Hospital Association v. Azar*, arguing against a U.S. Department of Health and Human Services regulation that reduced reimbursements to hospitals for outpatient drugs under a federal government program. *See* Brief of 35 State and Regional Hospital Associations as *Amici Curiae* in Support of Plaintiffs-Appellants in *American Hospital Association v. Azar*, 2018 WL 3431746 (No. 18-5004), 2018 WL 1029002. In *Brugaletta v. Garcia*, 2017 N.J. LEXIS 1497, NJHA submitted an *amicus* brief that addressed the confidentiality of hospital self-critical assessments under the New Jersey Patient Safety Act. In *Bellevue Hospital Center v. Leavitt*, NJHA filed an *amicus* brief supporting revised Medicare reimbursement classifications promulgated by the Secretary of the Department of Health and Human Services. *See* Brief On Behalf of New Jersey Hospital Association As Amicus Curiae In Support of Appellee for Affirmance of Metropolitan Statistical

Area ("MSA") Ruling, *Bellevue Hospital Center v. Leavitt*, 443 F.3d 163 (2d Cir. 2006) (No. 05-1539), 2005 WL 6089737. And in *New Jersey Ass'n of Health Care Facilities, Inc. v. Gibbs*, NJHA submitted an *amicus* brief addressing, *inter alia*, the proper balance between quality of care and cost control in the context of nursing home facilities. *See* Brief for Amici Curiae, American Association of Homes for the Aging, American Health Care Association, Catholic Health Association of the United States and New Jersey Hospital Association, *New Jersey Ass'n of Health Care Facilities, Inc. v. Gibbs*, No. 92-5623, 1993 WL 13121335.

In seeking to participate as *amicus* here, NJHA notes that hospitals in the state of New Jersey, unlike virtually every other type of health care service provider, are statutorily prohibited from refusing necessary service to any patient regardless of that patient's ability to pay, insurance coverage, or immigration status. If Deferred Action for Childhood Arrivals ("DACA") recipients lose their employer-sponsored or other insurance coverage, member hospitals will therefore feel the impact of increasing charity care obligations. Loss of DACA status may also result in individuals deciding to delay or forego appropriate and timely health care services—a threat to public health. Therefore, NJHA has a particular interest in this case because enjoining DACA will impair access to health care, which, in turn, will increase public and private costs of providing care for former DACA recipients who can no longer afford it.

This brief is also filed on behalf of the following Movants, in their capacities as individual health care professionals:

- **Meika Neblett, MD, MS.** Dr. Neblett graduated from Howard University College of Medicine and completed her residency at Brooklyn Hospital Center. She is a board certified physician in emergency medicine. Dr. Neblett currently serves as Chief Medical Officer and Chief Quality Officer at CarePoint Health—Hoboken University Medical

3

Center, as well as Medical Director of the CarePoint Rape Crisis program. In addition, Dr. Neblett has worked as an Associate Professor and Attending Physician at Mount Sinai Hospital in New York and as Director of Urgent Care, Director of the Physician Assistant Program, and Chair of Disaster Planning Committee at Mount Sinai Queens. She is a Director and board member of Amazing Grace Children's Foundation, which supports the health care needs of women and children in Ghana. Dr. Neblett has appeared as a medical correspondent on NBC's Nightly News to discuss the flu epidemic, Meningitis outbreaks, and Ebola preparedness.

- **Sherif Latef, MD.** Dr. Latef graduated from Cairo University School of Medicine and completed his residency in Internal Medicine at Saint Vincent Catholic Medical Center. He is board certified in Internal Medicine, Pulmonary and Critical Care. Dr. Latef currently serves as an Intensivist, a doctor who provides special care for critically ill patients, at Christ Hospital, Hoboken University Medical Center, North Shore-Long Island Jewish Health System, and Saint Michael's Medical Center, as well as an Attending Physician at Lenox Hill Hospital. In addition to his medical responsibilities, Dr. Latef teachers medical residents and students and engages in research on an array of topics, including rapidly progressive empyema in healthy young patients and percutaneous tracheostomies.

- **Carol Mendez, MD.** Dr. Mendez graduated from Rutgers' Robert Wood Johnson Medical School and completed her residency in Family and Social Medicine at Albert Einstein College of Medicine/Montefiore Medical Center. She is a board-certified physician at CarePoint Health—Hoboken University Medical Center, where she serves as Medical Director of the Neighborhood Health Center and Assistant Director of the

Maternal Child Health Fellowship.  Dr. Mendez has conducted research on the "Family Planning Attitudes of Medically Underserved Latinas" and has presented on topics such as the "Global Health and Migrating Populations."  She is the recipient of Rutgers University's Emily Hickman Award for Contribution to World Understanding and Hazel Frank Gluck Award for Commitment to Public Service.

- **Carmelo Milazzo, MD.**  Dr. Milazzo received his medical degree from Universitá di Catania in Italy and completed his residency at St. Joseph Hospital and Medical Center.  He is a board-certified physician and serves as an Attending Physician in Internal Medicine at Christ Hospital, CarePoint Health—Hoboken University Medical Center, Jersey City Medical Center, and Palisade Medical Center.  Dr. Milazzo also serves as Director Castle Hill Rehabilitation in Union City, NJ and as a Physician Advisor at the Hackensack University Medical Center.  In addition to his medical work, Dr. Milazzo is a Clinical Assistant Professor of Medicine at both University of Medicine and Dentistry of New Jersey and Touro College.

- **Abbie Jacobs, MD**.  Dr. Jacobs graduated from Mount Sinai Medical School and completed her residency in Urban Family Practice at Bronx-Lebanon Hospital.  She is a board-certified physician at St. Mary Hospital, where she is an Attending Physician and Director of the Family Practice Residency Program.  In addition to her medical work, Dr. Jacobs is a Clinical Assistant Professor at University of Medicine and Dentistry of New Jersey.  She has served as a Medical Director at the Hoboken Department of Health.

In line with their practical experience serving patients, as well as their experience conducting and reviewing medical research, the above-listed physicians have a strong interest in ensuring that the Court properly weighs the harmful public health effects of enjoining DACA.  Beyond the fact

5

that many of them are immigrants and parents themselves, these health care professionals recognize and directly observe the adverse health effects that immigration policies have on immigrant families who live in fear of deportation. Based on their own personal and professional experiences, and their close study of the public health consequences associated with terminating DACA, the individual health care professionals have a special interest in the issues presented by this case. *See Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 129 (3d Cir. 2002) (Alito, C.J.) (granting a motion for leave to file an *amici* brief on behalf of five physicians).

2. **The Parties Consent to NJHA and the Individual Health Care Professionals'** *Amici* **Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction.**

Counsel for Plaintiffs, Federal Defendants, Defendant-Intervenors Karla Perez, *et al.*, and Defendant-Intervenor State of New Jersey have consented to the filing of this proposed *amici* brief.

3. **Reasons Supporting NJHA and the Individual Health Care Professionals' Motion**

*Amici's* participation in this case is desirable because it provides a unique perspective not offered by the parties and because the proffered information will be useful to the Court in deciding this matter and is provided in a timely manner. First, *Amici*, as a result of their collective experiences and special vantage point within America's health care system, will assist the Court in understanding the public health ramifications of enjoining DACA. *See, e.g.*, *Protect our Land & Rights Def. Fund v. Enbridge Energy, Ltd. P'ship,* No. 12-14161, 2012 WL 5288135, at *1 (E.D. Mich. Oct. 25, 2012); *see also Neonatology Assocs., P.A.,* 293 F.3d at 132 ("Even when a party is very well represented, an *amicus* may provide important assistance to the court. 'Some amicus briefs collect background or factual references that merit judicial notice. Some friends of the court are entities with particular expertise not possessed by any party to the case. Others argue points deemed too far-reaching for emphasis by a party intent on winning a

particular case. Still others explain the impact a potential holding might have on an industry or other group.'" (quoting Luther T. Munford, *When Does the Curiae Need An Amicus?,* 1 J. App. Prac. & Process 279 (1999))); *Commonwealth of the N. Mariana Islands v. United States,* No. 08-1572, 2009 WL 596986, at *1 (D.D.C. Mar. 6, 2009) ("The filing of an *amicus* brief should be permitted if it will assist the judge 'by presenting ideas, arguments, theories, insights, facts or data that are not to be found in the parties' briefs.'" (quoting *Voices for Choices v. Illinois Bell Telephone Co.,* 339 F.3d 542, 545 (7th Cir. 2003)).

*Amici's* proposed brief presents data, surveys, and studies from the nation's leading institutions that establish that DACA has significant, multigenerational effects on the health and psychological well-being of more than 819,000 DACA-recipients and their children.  The social science demonstrates that DACA recipients are significantly less likely to experience various forms of psychological distress, and more likely to utilize health care resources and to enroll their children in vital social and health programs, than are immigrants who are ineligible for DACA.  The research also establishes that DACA has profound, multigenerational health consequences: for example, an interdisciplinary team from Stanford University, Oregon Health and Science University, the Stanford School of Medicine, and Northwestern University found "that mothers' eligibility for DACA protection led to a significant improvement in their children's mental health," providing "causal evidence supporting the theory that parental unauthorized immigration status has important intergenerational effects on the well-being and development of children in immigrant families."  Jens Hainmueller, PhD, *et al.*, *Protecting unauthorized immigrant mothers improves their children's mental health*, 357 Science 1041, 1043 (2017) (citing sources).  Based on this expanding body of data, surveys, and studies, cited in their brief, *Amici* show that a preliminary injunction should not be granted in this case because

enjoining DACA is a threat to the public health of hundreds of thousands of individuals and their families.

Second, the issues addressed in *Amici's* proposed brief are useful to the Court because they bear upon the factors that the Court must weigh in deciding Plaintiffs' motion for a preliminary injunction. Specifically, the public health consequences described by *Amici* should fundamentally alter the Court's preliminary injunction inquiry, particularly as it relates to the elements of irreparable harm, balancing of the equities, and the public interest. Moreover, this information is being timely filed on July 21, 2018, as ordered by the Court. *See* 6/28/2018 Minute Entry. As a result, *Amici's* motion to participate should be granted.

For the reasons set forth above, *Amici* respectfully submit that their proposed brief "can help the court beyond the help that the lawyers for the parties are able to provide," *Ryan v. Commodity Futures Trading Comm'n,* 125 F.3d 1062, 1064 (7th Cir. 1997) (citing *Miller-Wohl Co. v. Commissioner of Labor & Industry,* 694 F.2d 203 (9th Cir. 1982) (per curiam)), provides information critical to the matter to be decided by the Court, and is timely. The motion for leave to file the Brief *Amici Curiae* submitted herewith should therefore be granted.

## CONCLUSION

Movants the New Jersey Hospital Association and Individual Health Care Professionals respectfully request this Court grant its Motion for Leave to File a Brief *Amici Curiae* in Opposition to Plaintiffs' Motion for a Preliminary Injunction.

Dated: July 21, 2018

                                        By: /s/ Lawrence S. Lustberg
                                              Gibbons P.C.
                                              One Gateway Center
                                              Newark, NJ 07102-5310
                                              (973) 596-4500

## CERTIFICATE OF SERVICE

I certify that on July 21, 2018, I electronically filed this document, together with attachments thereto, with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for all parties.

By: /s/ Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500