# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*, | |
| Plaintiffs, | |
| v. | No. 17-cv-1907 (JDB) |
| DONALD TRUMP, *et al.*, | |
| Defendants. | |
| THE TRUSTEES OF PRINCETON UNIVERSITY, *et al.*, | |
| Plaintiffs, | |
| v. | No. 17-cv-2325 (JDB) |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MOTION TO REVISE THE COURT'S APRIL 24, 2018 ORDER**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    I.   THE COURT'S APRIL 24 ORDER AND OPINION ....................................... 2

    II.  SECRETARY NIELSEN'S JUNE 22, 2018 MEMORANDUM. .................................. 4

ARGUMENT ................................................................................................................. 5

    I.   THE NIELSEN MEMO'S FURTHER EXPLANATION OF DACA'S
        QUESTIONABLE LEGALITY CONFIRMS THAT THE RESCISSION
        IS NEITHER JUDICIALLY REVIEWABLE NOR ARBITRARY AND
        CAPRICIOUS. ..................................................................................................... 5

        A.   Secretary Nielsen's explanation of DACA's questionable legality
              confirms that the DACA rescission is not judicially reviewable. ........................... 5

        B.   Secretary Nielsen's explanation of DACA's questionable legality
              confirms that the DACA rescission is not arbitrary and capricious..................... 10

    II.  THE NIELSEN MEMO'S ADDITIONAL DISCUSSION OF
        ENFORCEMENT-POLICY CONCERNS IS AN INDEPENDENT
        REASON WHY THE RESCISSION IS NEITHER JUDICIALLY
        REVIEWABLE NOR ARBITRARY AND CAPRICIOUS......................................... 14

        A.   Secretary Nielsen's additional discussion of enforcement policy confirms
              that the rescission of DACA is not judicially reviewable...................................... 14

        B.   Secretary Nielsen's additional discussion of enforcement policy confirms
              that the rescission of DACA is not arbitrary and capricious. ............................... 15

    III. SECRETARY NIELSEN ADEQUATELY CONSIDERED ANY RELIANCE
         INTERESTS. ....................................................................................................... 17

    IV. THE COURT SHOULD DISMISS THE CONSTITUTIONAL CLAIMS................... 18

CONCLUSION............................................................................................................. 19

## **TABLE OF AUTHORITIES**

**CASES**

*Alpharma, Inc. v. Leavitt*,
  460 F.3d 1 (D.C. Cir. 2006) .................................................................................. 14

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................................. 10

*Crowley Caribbean Transport, Inc. v. Peña*,
  37 F.3d 671 (D.C. Cir. 1994) ......................................................................... *passim*

*Encino Motorcars, LLC v. Navarro*,
  136 S. Ct. 2117 (2016) ....................................................................................... 3, 18

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ............................................................................................. 18

*Grant Med. Ctr. v. Hargan*,
  875 F.3d 701 (D.C. Cir. 2017) ............................................................................. 10

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ..................................................................................... *passim*

*ICC v. Bhd. of Locomotive Eng'rs ("BLE")*,
  482 U.S. 270 (1987) ............................................................................................... 7

*Int'l Union, UAW of Am. v. Brock*,
  783 F.2d 237 (D.C. Cir. 1986) ............................................................................ 8, 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................................................... 12, 18

*NAACP v. Trump*,
  298 F. Supp. 3d 209 (D.D.C. 2018) ............................................................... *passim*

*OSG Bulk Ships, Inc. v. United States*,
  132 F.3d 808 (D.C. Cir. 1998) ............................................................................ 3, 8

*Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*,
  525 U.S. 471 (1999) ............................................................................................. 10

*Ricci v. DeStefano*,
  557 U.S. 557 (2009) ............................................................................................. 10

*Syracuse Peace Council v. FCC*,
   867 F.2d 654 (D.C. Cir. 1989) ............................................................................... 15

*Texas v. United States*,
   No. 1:18-cv-00068 (S.D. Tex. 2018) .................................................................... 12

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ......................................................................... *passim*

**STATUTES**

5 U.S.C. § 701(a)(2) ................................................................................................. 3, 6

6 U.S.C. § 202(5) ....................................................................................................... 17

8 U.S.C. § 1103(a)(1) ........................................................................................... 16, 17

# INTRODUCTION

On April 24, 2018, this Court set aside then-Acting Secretary of Homeland Security Elaine Duke's September 5, 2017 memorandum ("Duke Memo") rescinding the Deferred Action for Childhood Arrivals ("DACA") policy. The Court, however, stayed its vacatur order for 90 days to give the Department of Homeland Security ("DHS") the opportunity to provide additional explanation of the basis for DACA's rescission. Because Secretary of Homeland Security Kirstjen Nielsen has now issued a memorandum ("Nielsen Memo"), providing that explanation, this Court should revise its Order to reject Plaintiffs' challenges to DHS's rescission of the DACA policy.

To start, the rescission rests not only on a conclusion that DACA is unlawful *per se*, but also on a determination that there are at least sufficient questions concerning DACA's legality to warrant ending the policy as an independent matter of enforcement discretion. The Nielsen Memo elaborates on that latter rationale by explaining that whether or not DACA is actually unlawful, its status as an Executive Branch policy of doubtful legality independently warrants its rescission. That further explanation confirms that the rescission is both judicially unreviewable (by clarifying that DHS's concerns over DACA's dubious legality are independent of a pure legal determination) and far from arbitrary and capricious (by providing a reasonable—and correct—explanation of why DACA is materially indistinguishable from the Deferred Action for Parents of Americans ("DAPA") policy under the Fifth Circuit's decision in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), which was affirmed by an equally divided Supreme Court).

In any event, the Nielsen Memo provides an additional, independent justification for the rescission based solely on enforcement-policy concerns that have no connection to assessments of DACA's legality—namely, that any decision concerning the ability of this class of aliens to remain in the country should come from Congress. And the Secretary further addressed whether any

reliance interests justify continuing DACA, notwithstanding legal and policy concerns. Again, this confirms that the rescission both is judicially unreviewable (by clarifying that DHS had a pure enforcement-policy reason for the rescission) and not arbitrary and capricious (by providing a reasonable explanation concerning DHS's enforcement policies).

Because DACA's rescission is neither judicially reviewable nor arbitrary and capricious, the Court should now decide Plaintiffs' remaining constitutional claims. As Defendants previously explained, Plaintiffs have failed to state equal-protection and due-process claims. The Court should therefore dismiss these cases or, in the alternative, grant summary judgment to Defendants.

## BACKGROUND

## I.  THE COURT'S APRIL 24 ORDER AND OPINION

The Court's April 24 Order, *inter alia*, granted judgment for Plaintiffs on their substantive Administrative Procedure Act ("APA") claim and denied Defendants' motion to dismiss that claim on reviewability grounds. *See* Order at 1, ECF No. 69. The Court vacated and remanded the Acting Secretary's decision to rescind DACA but, as noted above, stayed its order to allow the agency to offer additional explanation for that decision. *NAACP v. Trump*, 298 F. Supp. 3d 209, 216 (D.D.C. 2018) ("Op."). In light of the relief granted, the Court deferred its decision on Defendants' motion to dismiss Plaintiffs' remaining constitutional claims. *See* Order at 1.[1]

In a separate opinion, the Court explained that the Acting Secretary's decision to rescind the DACA policy was not presumptively unreviewable under *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985), because it was predicated on a legal determination that DACA exceeded the scope of DHS's enforcement authority. Op. at 233 (holding that *Crowley Caribbean Transport, Inc. v.*

---

[1] The Court resolved all other claims, dismissing the procedural APA claim, substantive-due-process claim as to information-sharing, and Regulatory Flexibility Act claim. Op. at 249.

*Peña*, 37 F.3d 671 (D.C. Cir. 1994), and *OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808 (D.C. Cir. 1998), recognize an exception to *Chaney*, allowing courts to review an enforcement decision resting on a general legal determination).  And the Court further found that the Acting Secretary's reliance on the history of the *Texas* litigation and the potential risk that a likely adverse ruling in that case would pose to the continuation of DACA "was too closely bound up with [the agency's] evaluation of DACA's legality to trigger *Chaney*[]."  *Id.* at 234.  Applying "the *Crowley/OSG* exemption," the Court held that § 701(a)(2) did not bar APA review.  *Id.* at 235.

The Court further ruled that the Acting Secretary's decision to rescind the DACA policy was inadequately explained and thus arbitrary and capricious.  The Court held that the Acting Secretary failed to give a sufficient justification of her legal judgment that DACA was unlawful, which it held was not remedied by reference to the Attorney General's letter or what it believed was the "inapposite" statutory analysis in the Fifth Circuit's *Texas* decision.  *See* Op. at 238–39.  It likewise faulted the Acting Secretary for failing to consider a 2014 Office of Legal Counsel ("OLC") opinion analyzing DHS's authority to implement proposed class-wide deferred action policies.  *Id.* at 240 n.23.  And the Court held that the explanation was "doubly insufficient" for failing to acknowledge "how heavily DACA beneficiaries had come to rely on the expectation that they would be able to renew their DACA benefits."  *Id.* at 240 (relying on *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016)).  Determining that DACA's rescission could not be sustained on the grounds given by the agency, and that the Acting Secretary had not stated "that DACA's rescission reflected a change in [DHS's] immigration enforcement priorities," the Court set aside the decision as arbitrary and capricious, "even if the agency could have validly rescinded DACA as an exercise of its enforcement discretion."  *Id.* at 237–38.

## II.  SECRETARY NIELSEN'S JUNE 22, 2018 MEMORANDUM

In response to the Court's Order, Secretary Nielsen issued a memorandum on June 22,
2018, providing further explanation for the rescission of DACA.  *See* Nielsen Memo, ECF No. 71-
1.  Secretary Nielsen's Memo declines to disturb Acting Secretary Duke's Memo and concurs with
the rescission of the DACA policy for several independently sufficient reasons.  *Id.* at 2–3.  In
particular, the Secretary confirms that, although she agrees that DACA is unlawful, the rescission
is not predicated solely on that legal determination.  *Id.* at 2.  The Nielsen Memo explains that,
whether or not DACA is in fact unlawful, "there are, at a minimum, serious doubts about [the
policy's] legality" that warrant its discontinuation.  *Id.*  As the Secretary explains, "[a] central
aspect of the exercise of a discretionary policy is a judgment" that the agency has "sufficient
confidence in the legality of such policy."  *Id.*  And Secretary Nielsen confirms that she, like Acting
Secretary Duke, lacks the necessary confidence in the DACA policy's legality.  *Id.*

The Nielsen Memo also offers other enforcement-policy reasons wholly independent of
DACA's legality that support the policy's rescission, including the Secretary's view (1) that any
policy concerning the ability of broad classes and categories of aliens to remain in the United
States should be adopted, if at all, through the enactment of legislation; (2) that DHS should only
exercise its prosecutorial discretion not to enforce the immigration laws on a truly individualized,
case-by-case basis—authority that the Secretary explains is still available after DACA's rescission;
and (3) that it is "critically important" for DHS to project a clear message regarding its policies
and priorities for the enforcement of the immigration laws.  *Id.* at 2–3.

The Secretary also explains why the asserted reliance interests of DACA recipients do not
lead to a different result.  In particular, the Nielsen Memo confirms that the Secretary considered,
in assessing DHS's enforcement policy, the fact that DACA recipients have availed themselves of

that policy to remain in this country and to pursue their lives. *Id.* at 3. On balance, however, the Secretary concluded that neither any individual's claimed reliance on the expected continuation of DACA nor the sympathetic circumstances of DACA recipients as a class outweigh "the legal and institutional concerns" with continuing the policy. *Id.* This is especially true because deferred action remains available "in individual cases if circumstances warrant," and because Congress is best able to provide DACA recipients with a permanent legislative solution instead of a "temporary stopgap measure," which the DACA policy was always intended to be. *Id.* Accordingly, the Nielsen Memo further illustrates that the rescission of DACA "was, and remains, sound as a matter of both legal judgment and enforcement policy discretion." *Id.*

## ARGUMENT

## I. THE NIELSEN MEMO'S FURTHER EXPLANATION OF DACA'S QUESTIONABLE LEGALITY CONFIRMS THAT THE RESCISSION IS NEITHER JUDICIALLY REVIEWABLE NOR ARBITRARY AND CAPRICIOUS.

This Court correctly held that the Duke Memo relied not only on a determination that DACA is illegal *per se*, but on the "additional reason" that the policy at least presents a significant litigation risk in light of the *Texas* decisions invalidating DAPA. Op. at 234. Although it found that additional reason reviewable and inadequately reasoned, the Secretary now provides further explanation for why she, "[l]ike Acting Secretary Duke, . . . lack[s] sufficient confidence in the DACA policy's legality to continue this non-enforcement policy, whether the courts would ultimately uphold it or not." Nielsen Memo at 2. That independent enforcement-discretion rationale confirms that the rescission is neither judicially reviewable nor arbitrary and capricious.

### A. Secretary Nielsen's explanation of DACA's questionable legality confirms that the DACA rescission is not judicially reviewable.

**1.** As this Court recognized, as a general matter, an agency's "discretionary enforcement policies" are "presumptively unreviewable" under 5 U.S.C. § 701(a)(2). Op. at 231. The Nielsen

Memo confirms that the rescission of DACA qualifies as such a policy. As the Secretary explains, "regardless of whether the DACA policy is ultimately illegal, it was appropriately rescinded by DHS because there are, at a minimum, serious doubts about its legality." Nielsen Memo at 2. In particular, "[t]here are sound reasons for a law enforcement agency to avoid discretionary policies that are legally questionable," including "the risk that such policies may undermine public confidence in and reliance on the agency and the rule of law," not to mention "the threat of burdensome litigation." *Id.* That is precisely the type of agency decision-making concerning enforcement that *Chaney* sought to insulate from judicial review. *Cf. Chaney*, 470 U.S. at 824 (discussing agency's "conclu[sion] that FDA jurisdiction in the area was generally unclear").

**2.** Accordingly, regardless of whether *Crowley* creates an exception to *Chaney* for enforcement policies that rest "solely on [an agency's] view of what the law requires," Op. at 232 (citing *Crowley*, 37 F.3d at 676–77), the Nielsen Memo clarifies that this is not such a case. Again, Secretary Nielsen explains that she, "[l]ike Acting Secretary Duke, . . . lack[s] sufficient confidence in the DACA policy's legality to continue this non-enforcement policy, whether the courts would ultimately uphold it or not." Nielsen Memo at 2.

Although this Court concluded that Acting Secretary Duke's litigation risk analysis "was too closely bound up" with her conclusion that DACA was in fact illegal, it did so out of concern that an agency could circumvent this Court's understanding of *Crowley* "simply by pointing to one case where one court tentatively agreed with the agency on a similar legal issue." Op. at 234. Secretary Nielsen's analysis of DACA's dubious legality, however, is predicated not only on "the threat of burdensome litigation," but also on the "sound reasons for a law enforcement agency to avoid discretionary policies that are legally questionable," such as "undermin[ing] public confidence in and reliance on the agency and the rule of law." Nielsen Memo at 2. That analysis

cannot be meaningfully distinguished from other "bona fide discretionary reasons" that this Court found acceptable, such as an agency's fear that "negative publicity . . . would undermine the policy's effectiveness." Op. at 233. Nor is there any risk that DHS is trying to "insulate from judicial review a[] legal interpretation," *id.*, given Secretary Nielsen's unambiguous pronouncement that the rescission was appropriate in light of the serious questions about DACA's legality "regardless of whether the DACA policy is ultimately illegal," Nielsen Memo at 2. Thus, however this Court reads *Crowley*, it should not interpret that case to allow judicial review of a law enforcement agency's decision that it should refrain from maintaining a purely discretionary enforcement policy—the legality of which is itself subject to serious doubt.

**3.** Secretary Nielsen's further explanation of DACA's questionable legality also underscores why *Crowley* does not permit judicial review of an enforcement decision simply because that decision rests on a legal rationale. The scope of the agency's legal analysis when exercising its enforcement discretion does not alter the basic proposition that the fact that "[an] agency gives a 'reviewable' *reason* for otherwise unreviewable action" does not mean that "the *action* becomes reviewable," *ICC* v. *Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987) ("*BLE*") (emphases added)—an enforcement decision itself is reviewable only if the agency exceeds legal constraints imposed on its discretion, *Chaney*, 470 U.S. at 832. By contrast, the scope of the agency's legal analysis when exercising its enforcement discretion within the constraints imposed by law is relevant to the entirely distinct question that *Crowley* addressed—namely, the circumstances in which an agency's legal rationale is reviewable on its own terms as an interpretive rule even though it is embedded in an enforcement decision that itself remains unreviewable.

In particular, *Crowley* did not turn on a difference between general enforcement policies and single-shot non-enforcement decisions with respect to whether the *enforcement decisions*

*themselves* are reviewable.  Instead, the holding of the case rested on the distinction that general enforcement policies may be "more likely" to contain embedded "direct interpretations of the commands of the substantive statute" that can be reviewed on their own terms as interpretive rules (separate from the underlying and unreviewable enforcement decision).  *Crowley*, 37 F.3d at 677.  After all, the plaintiff in *Crowley* did not even challenge the underlying enforcement *decision* to deny the third party's request for a waiver; rather, it sued the agency to challenge the *rationale* supporting that enforcement decision.  *Id.* at 675.[2]

This critical distinction between the non-reviewability of an *enforcement decision*, and the potential reviewability of the *supporting rationale* on its own terms is well illustrated by *Int'l Union, UAW of Am. v. Brock*, 783 F.2d 237 (D.C. Cir. 1986).  In that case, the Department of Labor denied a union's request to take enforcement action against a corporation for failing to report certain activities.  *Id.* at 241–42.  In doing so, the agency explained that it "was now interpreting the statute as no longer requiring reporting of two of the activities involved in the case."  *Id.* at 242–43 (emphasis omitted).  When the union challenged the Department's action, the D.C. Circuit explained that "there is no review available from the agency's specific nonenforcement decision . . . or its overall pattern of decisions not to pursue enforcement action in these areas."  *Id.* at 245; *see also id.* ("If the Union had challenged only the Department's decision not to take enforcement action against [certain entities], *or even against this entire genus of practices*, our task would be completed."  (emphasis added)).  The Court went on to hold, however, that "when a legal challenge

---

[2] Similarly, *OSG* involved a challenge not to an agency enforcement decision, but to the agency's "interpretation of section 506" of the Merchant Marine Act of 1936.  *OSG*, 132 F.3d at 811.  In an effort to avoid judicial review, the private intervenors—but not the agency—attempted to "characterize" this interpretive rule "as a challenge to [the agency's] decision not to enforce . . . section 506 . . . in certain instances," but the Court dismissed that argument under *Crowley* and reviewed that interpretive rule.  *Id.* at 812.

focuses on an announcement of a substantive statutory interpretation," judicial review of that interpretation was available. *Id.* Although *Crowley* later narrowed *Brock* with respect to the circumstances in which a legal rationale could be "carved out" for review from an unreviewable enforcement decision, *Crowley* did not and could not disturb the holding of *Brock* (and *BLE*) that the existence of a reviewable legal rationale cannot be used as a "hook" to review the otherwise-unreviewable enforcement decision itself. *Crowley*, 37 F.3d at 675–77.

Thus, even if a general legal rationale in the Duke or Nielsen Memos could be carved out for review on its own terms, that would not justify reviewing the enforcement decision to rescind DACA itself. In any event, there is no reviewable interpretive rule here. There is no question in this case as to the substantive scope of the Immigration and Nationality Act ("INA"), and DHS's decision to rescind DACA did not directly interpret the INA's provisions governing the primary conduct of aliens or other parties (*e.g.*, which crimes render an alien removable). All agree that nothing in the INA or its regulations requires that deferred action be granted to DACA recipients, and Plaintiffs' challenge does not "focus[] on an announcement of a substantive statutory interpretation" that they independently want a court to review. *Brock*, 783 F.2d at 245. At most, DHS's decision interprets the scope of its own enforcement discretion, and thus rests on enforcement discretion all the way down. *See id.* at 246 ("There are real and cognizable practical differences distinguishing an agency's announcement of how it will exercise its discretion, from an agency's announcement of what a citizen's duties are under a statute. . . ."). And because there is no argument that DHS *exceeded* the scope of its enforcement discretion in rescinding DACA— as opposed to interpreted its enforcement discretion unduly narrowly—the enforcement decision to rescind DACA based on its questionable legality is not judicially reviewable under *Chaney* and its progeny, including both *BLE* and *Crowley*.

**4.**  Finally, judicial review of the DACA rescission is particularly inappropriate precisely because the rescission was an exercise of the wide discretion DHS enjoys in enforcing the immigration laws.  As this Court acknowledged, "immigration policies are generally so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."  Op. at 233 (citation omitted).  Indeed, the concerns raised by challenges to the Executive's enforcement discretion "are greatly magnified in the deportation context."  *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 490 (1999); *see also Arizona v. United States*, 567 U.S. 387, 396–97 (2012).  Judicial supervision of immigration enforcement discretion would permit and prolong ongoing violations of the INA in a way that the Supreme Court has disapproved.  *AADC*, 525 U.S. at 490.  Accordingly, the decision to rescind the DACA policy (like the FDA's decision in *Chaney*) is not reviewable.

**B.**  **Secretary Nielsen's explanation of DACA's questionable legality confirms that the DACA rescission is not arbitrary and capricious.**

**1.**  Even if the rescission were reviewable, the Secretary's explanation that this action was appropriate given "serious doubts about [DACA's] legality" withstands arbitrary-and-capricious review.  Nielsen Memo at 2.  A law enforcement agency cannot be deemed irrational for avoiding enforcement policies of questionable legality.  *See Grant Med. Ctr. v. Hargan*, 875 F.3d 701 (D.C. Cir. 2017) (agency reasonably acquiesced to adverse out-of-circuit decision, even though not required to do so), *reh'g denied en banc* (Mar. 7, 2018); *cf. Ricci v. DeStefano*, 557 U.S. 557 (2009) (even race-conscious employment decisions may be lawful if motivated by a desire to avoid Title VII liability).  As the Secretary explains, adhering to such policies in the face of such doubts "may undermine public confidence in and reliance on the agency and the rule of law" as well as risk "burdensome litigation."  Nielsen Memo at 2.  Holding this reasoning unlawful would effectively punish an agency head for taking a more cautious approach to the limits of her authority than her

predecessors.

Plaintiffs cannot fairly maintain that these concerns over DACA's legality are arbitrary and capricious. As Secretary Nielsen explains, the Fifth Circuit "ruled that DAPA should be enjoined on a nationwide basis on the ground, among other things, that it likely was contrary to the statutory scheme" of the INA, noting that court's conclusion that "the INA does not grant the Secretary discretion to grant deferred action and lawful presence on a class-wide basis to 4.3 million otherwise removable aliens." *Id.* (quoting *Texas*, 809 F.3d at 186). That decision, she in turn notes, had been "affirmed" by an "equally divided Supreme Court." *Id.* And "[a]ny arguable distinctions between the DAPA and DACA policies" were not "sufficiently material" to resolve her doubts over DACA's legality. *Id.* As she explains, the DHS memorandum challenged in *Texas* not only adopted DAPA but "expanded the DACA policy by loosening the age and residency criteria." *Id.* In her view, "[t]he Fifth Circuit's rejection of DAPA and expanded DACA did not turn on whether the covered aliens had a pathway to lawful status" elsewhere in the INA "(which not all of them had)," but "on the incompatibility of such a major non-enforcement policy with the INA's comprehensive scheme." *Id.*

Given this background, Secretary Nielsen reasonably concluded that "the DACA policy's legality is too questionable to warrant continuing the policy, especially in light of the Attorney General's contrary determination and ruling about the DACA policy and the contrary implication of the decisions of the Fifth Circuit . . . and the Supreme Court invalidating the DAPA policy," notwithstanding "[t]he fact that some courts have recently held or suggested that the DACA policy is legal." *Id.* Even if this Court firmly believes that DACA was lawful, it cannot dismiss this careful explanation of why the policy should be rescinded in light of its questionable legality as a "clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*

*Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  Indeed, 10 States have recently challenged DACA as unlawful in new litigation in the Southern District of Texas, which only confirms the legitimacy of these concerns.  *See* Pls.' Compl., *Texas v. United States*, Case No. 1:18-cv-00068 (S.D. Tex. filed May 1, 2018), ECF No. 1.

**2.**  Nor do this Court's objections to Acting Secretary Duke's analysis carry over to the Nielsen Memo.  *First*, although this Court faulted Acting Secretary Duke for failing to cite any specific "statutory provision with which DACA was in conflict," Op. at 238, Secretary Nielsen explains that the incompatibility with the INA of a sweeping, categorical non-enforcement policy like DACA does not stem from any one particular statutory provision, but rather the "INA's comprehensive scheme" as a whole.  Nielsen Memo at 2.  More to the point, that was the Fifth Circuit's conclusion in the *Texas* litigation, with respect to not just DAPA, but also expanded DACA—that is, the very same DHS policy that is at issue in this lawsuit (with only a handful of minor changes, none of which Plaintiffs have ever suggested have any legal significance).  *See Texas*, 809 F.3d at 179, 186.  Given this Court's acknowledgement that DAPA is "a similar deferred-action program" to DACA, Op. at 239, it was eminently reasonable for DHS to conclude that DACA was of sufficiently questionable legality on the same rationale.

*Second*, this Court suggested that Acting Secretary Duke's reliance on the *Texas* opinions was "incongruous," *id.*, because the Fifth Circuit noted the fact, in one part of its opinion, that, unlike DACA recipients, *some* DAPA recipients (*i.e.*, the parents of U.S. citizen children) already had a path to lawful status in the INA, *Texas*, 809 F.3d at 179–80.  But as the Fifth Circuit noted in the same discussion, *other* DAPA recipients (*i.e.*, the parents of lawful permanent residents) had no such pathway—just like DACA recipients, *id.*, which means this rationale could not have been the dispositive one.  Secretary Nielsen therefore correctly recognizes that "[t]he Fifth Circuit's

rejection of DAPA and expanded DACA did not turn on whether the covered aliens had a pathway to lawful status." Nielsen Memo at 2. Instead, the better reading of the Fifth Circuit's opinion—or, at the very least, a reading that is not arbitrary and capricious to rely on as the basis of serious concerns about legality—is the one referenced in the Attorney General's letter to the Acting Secretary, *see* Sessions Letter (AR 251), ECF No. 60, and stated explicitly by Secretary Nielsen: the Fifth Circuit's decision "turned on the incompatibility of such a major non-enforcement policy with the INA's comprehensive scheme." Nielsen Memo at 2. And that rationale applies equally to original DACA as it did to DAPA and expanded DACA. *See id.*

*Third*, this Court also took issue with Acting Secretary Duke's perceived "failure to even consider OLC's thorough analysis" regarding the legality of DACA. Op. at 240 n.23.[3] Although neither the Duke Memo nor the Nielsen Memo contains an explicit discussion of the relevant 2014 memorandum from the Department of Justice's Office of Legal Counsel ("OLC Memo"), that does not render DHS's explanation arbitrary and capricious. In light of DHS's explanation that DACA was rescinded based on the serious doubts as to its legality regardless of whether it would ultimately be upheld as lawful, the OLC Memo has little significance, especially given that its analysis as to DAPA was later rejected by the Fifth Circuit (in a decision affirmed by an equally divided Supreme Court) as well as by the Attorney General—the very sources upon which DHS expressly relied to show that DACA's legality was sufficiently questionable as to warrant rescission as a matter of enforcement discretion.

---

[3] Respectfully, the Acting Secretary did "consider" the OLC Memo, which was included in the Administrative Record "actually considered by [her] in connection with her September 5, 2017 decision to rescind" the DACA policy. Certified Index of Administrative R., ECF No. 8-3 at 3; OLC Memo (AR 4-36). Secretary Nielsen likewise "considered . . . the administrative record for the Duke memorandum that was produced in litigation." Nielsen Memo at 1.

## II. THE NIELSEN MEMO'S ADDITIONAL DISCUSSION OF ENFORCEMENT-POLICY CONCERNS IS AN INDEPENDENT REASON WHY THE RESCISSION IS NEITHER JUDICIALLY REVIEWABLE NOR ARBITRARY AND CAPRICIOUS.

Wholly apart from concerns about DACA's legality, Secretary Nielsen also offers a "separate and independently sufficient" rationale based purely on enforcement policy. Nielsen Memo at 1. As she explains, "regardless of whether [her] concerns about the DACA policy render it illegal or legally questionable," she "agree[s] with Acting Secretary Duke and the Attorney General that if a policy concerning the ability of this class of aliens to remain in the United States is to be adopted, it should be enacted legislatively." *Id.* at 2–3. That rationale alone renders the rescission neither reviewable nor arbitrary and capricious. *See Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (when a court "remand[s] for further explanation, it is incumbent upon the court to consider that explanation when it arrives").

### A. Secretary Nielsen's additional discussion of enforcement policy confirms that the rescission of DACA is not judicially reviewable.

As this Court noted, *Chaney*'s presumption of unreviewability applies when an agency gives both a "legal reason" and an independent "discretionary reason," which was the situation in *Chaney* itself. Op. at 233; *see also id.* at 227 (discussing *Chaney*). The Nielsen Memo does just that. As it explains, wholly apart from the Secretary's assessment that DACA was at least of questionable legality, she also concluded that "there are sound reasons of enforcement policy to rescind the DACA policy"—namely, that "a[ny] policy concerning the ability of this class of aliens to remain in the United States . . . should be enacted legislatively" and, relatedly, that "DHS should only exercise its prosecutorial discretion not to enforce the immigration laws on a truly individualized, case-by-case basis." Nielsen Memo at 2–3.

That analysis is indistinguishable from the FDA's enforcement-policy rationale at issue in

*Chaney*. *See Chaney*, 470 U.S. at 824 (concluding that even if FDA had jurisdiction, it "should not be exercised to interfere with this particular aspect of state criminal justice systems"). In both instances, the agency's analysis of enforcement-policy considerations "involve[d] a complicated balancing of a number of factors which are peculiarly within its expertise" and not amenable to judicial review. *Id.* at 831. Here, for instance, courts have no meaningful standard to second-guess Secretary Nielsen's conclusions that "DHS . . . should not adopt public policies of non-enforcement of [immigration] laws for broad classes and categories of aliens" given that they lacked both the benefits of legislative enactments and the individualized inquiry appropriate for prosecutorial discretion. Nielsen Memo at 2–3. In short, when "considering how DHS's discretion to establish enforcement policies and priorities should be exercised," *id.* at 1, DHS "is far better equipped than the courts to deal with the many variables involved," *Chaney*, 470 U.S. at 831-32.

### B. Secretary's Nielsen's additional discussion of enforcement policy confirms that the rescission of DACA is not arbitrary and capricious.

In all events, the Nielsen Memo's discussion of enforcement-policy considerations confirms that the rescission of DACA survives arbitrary-and-capricious review. Because Secretary Nielsen makes clear that each rationale is "separate and independently sufficient," Nielsen Memo at 1, the Court may sustain the agency's action as long as any one of DHS's justifications is reasonable, Op. at 237 (citing *Syracuse Peace Council v. FCC*, 867 F.2d 654, 657 (D.C. Cir. 1989)). Secretary Nielsen's enforcement-policy rationale easily satisfies that test.

Although the policy questions of how to optimally enforce (or not enforce) the immigration laws may be complex, it is the Secretary to whom Congress and the President have entrusted the "the administration and enforcement" of our immigration laws. 8 U.S.C. § 1103(a)(1). All of the enforcement-policy considerations reflected in the Nielsen Memo are matters for her to decide in the exercise of her policy judgment. It cannot be arbitrary and capricious for a law enforcement

agency to decide to end a discretionary non-enforcement policy on the grounds that (1) "DHS should enforce the policies reflected in the laws adopted by Congress and should not adopt public polices of non-enforcement of those laws for broad classes and categories of aliens under the guise of prosecutorial discretion—particularly a class that Congress has repeatedly considered but declined to protect"; (2) "DHS should only exercise its prosecutorial discretion not to enforce the immigration laws on a truly individualized, case-by-case basis" in order to avoid "tilt[ing] the scales significantly and . . . inhibiting assessments of whether deferred action is appropriate in a particular case"; and (3) "it is critically important for DHS to project a message that leaves no doubt regarding the clear, consistent, and transparent enforcement of the immigration laws against all classes and categories of aliens," especially given "that tens of thousands of minor aliens have illegally crossed or been smuggled across our border in recent years," in a "pattern" that "continues to occur at unacceptably high levels." Nielsen Memo at 2–3. While Plaintiffs may disagree with these assessments, they cannot be dismissed as unreasonable ones.

The APA simply does not bar a law enforcement agency from deciding to aggressively enforce the laws as written, unless and until they are amended through the legislative process— while still leaving room for "the exercise of deferred action in individual cases if circumstances warrant." *Id.* at 3. Accordingly, even if DHS were wrong about DACA's lawfulness (or its questionable legality), the enforcement policy rationales in the Nielsen Memo would *still* be sufficient, as an exercise of the Secretary's authority over "the administration and enforcement" of the immigration laws, 8 U.S.C. § 1103(a)(1), and to "[e]stablish[] national immigration enforcement policies and priorities," 6 U.S.C. § 202(5).

## III. SECRETARY NIELSEN ADEQUATELY CONSIDERED ANY RELIANCE INTERESTS.

In ruling that the Duke Memo violated the APA, this Court faulted DHS's alleged "fail[ure] to even acknowledge how heavily DACA beneficiaries had come to rely on the expectation that they would be able to renew their DACA benefits." Op. at 240. Defendants respectfully maintain that DHS was not obligated to consider any reliance interests under these circumstances, but in any event, Secretary Nielsen addresses whether any claimed reliance justified the continuation of the DACA policy.

As the Secretary explains, she is "keenly aware that DACA recipients have availed themselves of the policy in continuing their presence in this country and pursuing their lives." Nielsen Memo at 3. "Nevertheless," she concluded that "in considering DHS enforcement policy" she "d[id] not believe that the asserted reliance interests outweigh the questionable legality of the DACA policy" and the discretionary enforcement policy considerations "discussed above." *Id.* Instead, the Secretary determined that "issues of reliance would best be considered by Congress, which can assess and weigh a range of options." *Id.* She further notes that "the DACA policy was announced as a temporary stopgap measure, not a permanent fix; it was expressly limited to two-year renewal periods, it expressly conferred no substantive rights, and it was revocable at any time." *Id.* Ultimately, for these reasons, "[i]n [her] judgment, neither any individual's reliance on the expected continuation of the DACA policy nor the sympathetic circumstances of DACA recipients as a class overcomes the legal and institutional concerns with sanctioning the continued presence of hundreds of thousands of aliens who are illegally present in violation of the laws passed by Congress." *Id.* Finally, she relies on the important fact that "the rescission of the DACA policy does not preclude the exercise of deferred action in individual cases if circumstances warrant." *Id.*

Even assuming reliance interests must be explicitly considered before winding down a

discretionary enforcement policy that expressly conferred no substantive rights, this explanation is more than sufficient. And even on the Court's view of *Encino*, the Secretary has explicitly satisfied any such requirement. Without conceding that any such reliance on a policy like DACA was justified, the Nielsen Memo *does* "acknowledge" that, notwithstanding the fact that the policy was intended to serve only as a "temporary stopgap measure," *id.* at 3, some "DACA beneficiaries had come to rely on the expectation that they would be able to renew their DACA benefits." Op. at 240. Accordingly, Plaintiffs cannot argue that "the agency . . . gave almost no reasons at all," *Encino*, 136 S. Ct. at 2127, for its decision to act in contravention of any such reliance interests. And to the extent the DACA policy had "engendered serious reliance interests" despite its temporary nature, those interests were "taken into account," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (citation omitted), by the Nielsen Memo, even if the ultimate conclusion was that they were outweighed by countervailing interests. Secretary Nielsen did "not come to these conclusions lightly," Nielsen Memo at 3, and it cannot be said that she "entirely failed to consider" any "important aspect of the problem," *State Farm*, 463 U.S. at 43. That is enough under the APA, because nothing in the APA or the INA requires DHS to strike the balance differently in deciding whether to retain a purely discretionary non-enforcement policy.

## IV.    THE COURT SHOULD DISMISS THE CONSTITUTIONAL CLAIMS.

Because the Nielsen Memo confirms that the rescission is neither judicially reviewable nor arbitrary and capricious, the Court should now decide Plaintiffs' remaining constitutional challenges. And as Defendants previously explained, Plaintiffs' claims that the rescission of DACA violated equal protection or procedural due process fail as a matter of law and thus should be dismissed. *See* Defs.' Mot. to Dismiss Or, In the Alternative, for Summ. J. at 37-41, ECF No. 8-1; Defs.' Reply In Support of Defs.' Mot. to Dismiss Or, In the Alternative, for Summ. J. & Opp'n to Pls.' Mot. for Summ. J. and/or Prelim. Inj. at 32-36, ECF No. 56.

## CONCLUSION

For the foregoing reasons, the Court should revise its April 24 Order to leave in place DHS's September 5, 2017 decision to rescind the DACA policy; dismiss or grant judgment to Defendants on the substantive APA claim; and dismiss the remaining constitutional claims.[4]

Dated: July 11, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director

JOHN R. TYLER
Assistant Branch Director

/s/   *Kathryn C. Davis*
KATHRYN C. DAVIS (DC Bar No. 985055)
STEPHEN M. PEZZI (DC Bar No. 995500)
RACHAEL WESTMORELAND
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 616-8298
Fax: (202) 616-8470
Email: Kathryn.C.Davis@usdoj.gov

*Counsel for Defendants*

---

[4] If this Court nevertheless determines that the decision to rescind DACA should remain vacated, Defendants anticipate that they will require a further continuation of the stay of the vacatur order beyond the Court's decision, to consider seeking a stay pending appeal or to give DHS time to appropriately prepare its operations for the orderly receipt and adjudication of initial DACA requests from individuals who have never before been granted deferred action under DACA and applications for DACA-based advance parole, which DHS has generally not accepted since September 5, 2017. Defendants will promptly file a formal request with the Court if necessary.