# Exhibit 24

# Transcript of the Testimony of

# Barbara Hines

## Date:

June 26, 2018

## Case:

STATE OF TEXAS vs UNITED STATES OF AMERICA

Barbara Hines                                           June 26, 2018

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3  STATE OF TEXAS, et al.,    )
                               )
 4          Plaintiffs,        )
                               )
 5  vs.                        )    CASE NO. 1:18:cv-00068
                               )
 6  UNITED STATES OF AMERICA,  )
    ET AL.,                    )
 7                             )
            Defendants,        )
 8                             )
    and                        )
 9                             )
    KARLA PEREZ, et al.,       )
10                             )
        Defendant-Intervenors.)
11  _____

12              ORAL VIDEOTAPED DEPOSITION

13                    BARBARA HINES

14                    JUNE 26, 2018

15     ORAL VIDEOTAPED DEPOSITION OF BARBARA HINES,

16  produced as a witness at the instance of the PLAINTIFF

17  STATES and duly sworn, was taken in the above-styled and

18  numbered cause on the 26th day of June, 2018, from

19  10:04 a.m. to 12:41 p.m., before Dana Richardson,

20  Certified Shorthand Reporter in and for the State of

21  Texas, reported by computerized stenotype machine at the

22  Office of the Attorney General, 300 West 15th Street,

23  Austin, Texas 78701, pursuant to the Federal Rules of

24  Civil Procedure and the provisions stated on the record

25  or attached hereto.
```

```
 1                     APPEARANCES

 2  FOR PLAINTIFF STATES:

 3      Mr. Todd Lawrence Disher and
        Mr. Trent Peroyea
 4      OFFICE OF THE ATTORNEY GENERAL
        SPECIAL COUNSEL FOR CIVIL LITIGATION
 5      P.O. Box 12548
        Austin, Texas 78711-2548
 6      Telephone: (512) 463-2100
        Fax:       (512) 936-0545
 7      E-mail: todd.disher@oag.texas.gov

 8  FOR DEFENDANT UNITED STATES OF AMERICA:

 9      Mr. Daniel Hu - (via telephone)
        U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
10      OFFICE OF IMMIGRATION LITIGATION
        DISTRICT COURT SECTION
11      P.O. Box 868
        Washington, D.c. 20044
12      Telephone: (202) 616-1246
        E-mail: jeffrey.robins@usdoj.gov
13
    FOR DEFENDANT INTERVENORS:
14
        Ms. Nina Perales
15      MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
        110 Broadway, Suite 300
16      San Antonio, Texas 78205
        Telephone: (210) 224-5476
17      Fax:       (210) 224-5382
        E-mail: nperales@maldef.org
18
    ALSO PRESENT:
19
        Mr. Austin Kreitz, Summer Associate
20

21

22

23

24

25
```

```
 1  that begins, "A DACA recipient does not need..."?
 2      A.   Yes.
 3      Q.   Okay.  So I just want to ask you about the last
 4  sentence of that paragraph, which reads, "Thus a DACA
 5  recipient who travels on advance parole and later
 6  marries a US citizen can apply for her green card
 7  through adjustment status as immediate relative."
 8           Do you agree with that sentence?
 9      A.   Yes.
10      Q.   All right.  Okay.  Let's turn back to your
11  declaration.  Paragraphs 29, 30, and 31.  That talks
12  about the 245I portion?
13      A.   It does.
14      Q.   Okay.  Do you know how many DACA recipients
15  would be eligible for 245I status?
16           MS. PERALES:  Objection, form.
17      A.   I don't have that statistics at hand, but there
18  are many people eligible for 245I.
19      Q.   (BY MR. DISHER) Okay.  Can you give me an
20  estimate about how many?
21      A.   I cannot.
22      Q.   Can you give me an estimate about the overlap
23  between people who are eligible for 245I and the people
24  who are eligible for DACA status?
25           MS. PERALES:  Objection, form.
```

```
 1    A.   An explanation?
 2    Q.   (BY MR. DISHER)  No, no, no.  An estimate about
 3 the overlap of those two potentially qualifying
 4 populations?
 5    A.   I -- I can tell you that there are many people,
 6 many Mexicans who are eligible for 245I because the
 7 backlog and the quotas in the Mexican system, but I
 8 cannot give you number.
 9    Q.   Okay.
10    A.   In the Mexican quota system, I mean.
11    Q.   What about just generally 245I across the
12 board?  Can you give me an estimate about how many
13 people were to qualify for 245I?
14    A.   I cannot.
15    Q.   Okay.  So you see in Paragraph 32, the second
16 sentence begins, "According to DHS statistics" --
17    A.   Yes.
18    Q.   -- "between 2013 and 2015, 4,833 DACA
19 recipients adjusted their status to lawful permanent
20 residents after obtaining advance parole."
21              Can you explain that to me?  What does the
22 4,833 number represent?
23    A.   The 4,833 represents the statistic on page 8 of
24 Exhibit 5.
25    Q.   Table 4A?
```

1    A.   Yes.  One thing that it does not show is how
2  many of those DACA applicants actually needed advance
3  parole to adjust their status because it's pointed out
4  on little i, on the executive's status, that some
5  recipients of deferred action under DACA may be eligible
6  to file for adjustment of status independent of the
7  grant of advance parole.
8    Q.   Okay.  So of the 4,833, do you know what
9  percentage of that could -- that population could have
10 filed for adjustment of status without first obtaining
11 advance parole?
12   A.   I do not.
13   Q.   Okay.  And do you know what percentage of that
14 4,833 number could not have filed for adjustment of
15 status without advance parole?
16   A.   I do not.
17   Q.   Do you have any opinion about whether that
18 4,833 number includes some percentage of DACA recipients
19 who could not have applied for adjustment of status
20 without advance parole?
21   A.   It includes people who could not and people who
22 could have --
23   Q.   Okay.
24   A.   -- applied with or without advance -- advance
25 parole.

```
 1                   Do you see that?
 2       A.   Yes, I do.
 3       Q.   Okay.  Just explain to me what -- what does
 4  that mean?
 5       A.   Unlawful presence is a provision in the
 6  immigration law.  It's a ground of inadmissibility and
 7  it is calculated by time you've spent in the United
 8  States in unlawful presence.  The term "unlawful
 9  presence" appears in Section 212(a)(9).
10       Q.   Okay.  Does deferred action toll the running of
11  the unlawful presence clock?
12       A.   Yes, it does.
13       Q.   All right.  And does DACA specifically toll the
14  presence of the unlawful -- excuse me.  Let me -- I
15  miss- -- misspoke there.
16                   Does DACA specifically toll the running of
17  the unlawful presence clock?
18       A.   No.
19       Q.   Okay.  And why not?
20       A.   Because it's the deferred action that tolls it.
21       Q.   Okay.  But DACA is a type of deferred action,
22  right?
23       A.   Yes.
24       Q.   So if somebody is granted DACA, then the period
25  of time that that person has DACA does not count towards
```

```
 1  that person's unlawful presence?
 2      A.   Yes.
 3      Q.   Okay.  So, then, the next section is titled,
 4  "Leaving the US if DACA is canceled"?
 5      A.   Yes.
 6      Q.   Okay.  What methodology did you use to form the
 7  opinions expressed in this section?
 8      A.   That is based on my expertise and my years of
 9  working with the DACA population, with -- with, I guess,
10  documents that I've read in order to teach, but
11  primarily from working with this population.
12      Q.   Okay.  The second -- third sentence says,
13  "Almost none of the them considered or made the decision
14  to leave the United States."
15              Do you see that?
16      A.   Yes, I do.
17      Q.   All right.  And what is that sentence based on?
18      A.   That's based on the fact that I have worked
19  with the population before they had DACA and they did
20  not -- and the -- the people that I counseled that were
21  undocumented, subsequently DACA, none of them were
22  making plans to leave the United States.
23      Q.   Okay.  And about how big of a group of people
24  is that?
25      A.   Is what?
```

```
 1  STATE OF TEXAS
    COUNTY OF HARRIS
 2                      REPORTER'S CERTIFICATE

 3      I, Dana Richardson, a Certified Shorthand Reporter

 4  in and for the State of Texas, do certify that this

 5  deposition transcript is a true record of the testimony

 6  given by the witness named herein, after said witness

 7  was duly sworn by me.  The witness was requested to

 8  review the deposition.

 9      I further certify that I am neither attorney or

10  counsel for, related to, nor employed by any parties to

11  the action in which this testimony is taken and,

12  further, that I am not a relative or employee of any

13  counsel employed by the parties hereto or financially

14  interested in the action.

15      I further certify that the amount of time used by
    each party at the deposition is as follows:
16
            Mr. Todd Lawrence Disher - 02:09
17          Mr. Daniel Hu - 00:01

18      SUBSCRIBED AND SWORN TO under my hand and seal of
    office on this the 27th day of June, 2018.
19
              [signature: Dana Richardson]
20  _____

21            Dana Richardson, RPR, TX CSR 5386
              Expiration:  12/31/19
22            Kim Tindall & Associates, LLC, Firm No. 631
              16414 San Pedro, Suite 900
23            San Antonio, Texas 78232
              Phone (210) 697-3400
24            Fax (210) 697-3408

25
```