**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| Defendant-Intervenor. | § | |

**APPENDIX IN SUPPORT OF DEFENDANT-INTERVENORS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# Volume 7

# Exhibits 144 - 160

# DEF-INTERV.

# EX. 144

Case 1:18-cv-00068  Document 225-6  Filed on 07/21/18 in TXSD  Page 3 of 525

STATE OF TEXAS, ET AL. vs. UNITED STATES OF AMERICA, ET AL.
Roberto G. Gonzales, Ph.D. on 06/27/2018

1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF TEXAS

3                  BROWNSVILLE DIVISION

4    STATE OF TEXAS, et al.,

5         Plaintiffs,

6    vs.                    CASE NO. 1:18-cv-00068

7    UNITED STATES OF AMERICA, et al.,

8         Defendants,

9      and

10   KARLA PEREZ, et al.,

11        Defendant-Intervenors.

12   ------------------------------x

13

14                  DEPOSITION OF

15             ROBERTO G. GONZALES, PH.D.

16             Wednesday, June 27, 2018

17                    1:04 p.m.

18              Regus Business Center

19               101 Federal Street

20           Boston, Massachusetts 02110

21

22              Laurie K. Langer, RPR

23

24

25

**For Depo Excerpts**

**Transcripts**

 Jul 03, 2018 Gonzales, Roberto G., Ph.D. 06-27-2018_AMICUS

**Page:** 121

1    A.  Yes.
2        **Q.   And they -- and then you get into the impact of**
3    **DACA; is that fair?**
4    A.  Yes.   Yes.
5        **Q.   You talk about wanting to find out the most**
6    **significant benefits to those individuals of receiving**
7    **DACA; is that right?**
8    A.  That's correct.
9        **Q.   And whether DACA has changed their relationship**
10   **with family members or friends; is that right?**
11   A.  Yeah.   That's correct.
12       **Q.   So you were examining social benefits; is that**
13   **right?**
14   A.  Yeah.
15       **Q.   And then also financial or employment benefits as**
16   **well; is that right?**
17   A.  Sure.   That's correct.   So social benefits could
18   be with DACA, say, for example, respondents were more
19   likely to disclose status or participate in activities
20   and that opened up a world of social context to them.
21       **Q.   In looking down here, question 25, it looks like**
22   **you did ask about travel outside of the country --**
23   A.  Oh, yeah.
24       **Q.   -- since receiving DACA; is that right?**
25   A.  Yeah.

STATE OF TEXAS, ET AL. vs. UNITED STATES OF AMERICA, ET AL.
Roberto G. Gonzales, Ph.D. on 06/27/2018                    Page 166

```
 1   COMMONWEALTH OF MASSACHUSETTS)

 2   SUFFOLK, ss.                    )

 3

 4

 5        I, Laurie Langer, Professional Reporter and
     Notary Public in and for the Commonwealth of
 6   Massachusetts do hereby certify that there came before
     me on the 27th day of June, 2018, at 1:04 o'clock p.m.
 7   the person hereinbefore named, Roberto Gonzales, who was
     by me duly sworn to testify to the truth and nothing but
 8   the truth of his knowledge touching and concerning the
     matters in controversy in this cause; that he was
 9   thereupon examined upon his oath, and his examination
     reduced to typewriting under my direction; and that the
10   deposition is a true record of the testimony given by
     the witness.

11

12        I further certify that I am neither attorney or
13   counsel for, nor related to or employed by, any of the
     parties to the action in which this deposition is taken,
14   and further that I am not a relative or employee of any
     attorney or counsel employed by the parties hereto or
15   financially interested in the action.

16        In witness whereof, I have hereunto set my hand
17   and seal this 29th day of June, 2018.

18

19

20                    NOTARY PUBLIC
                      Commission Expires
21                    7/27/23

22

23

24

25
```

# DEF-INTERV.

# EX. 145

```
 1            IN THE UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF TEXAS

 3                    BROWNSVILLE DIVISION

 4

 5   STATE OF TEXAS,                    )

 6          Plaintiffs,                 ) Case No.

 7          vs.                         ) 1:18-cv-00068

 8   UNITED STATES OF AMERICA, et al., )

 9          Defendants,                 )

10          and                         )

11   KARLA PEREZ, et al.,               )

12             Defendant-Intervenors. )

13   ----------------------------------------------

14                  ORAL DEPOSITION OF

15                    RAY PERRYMAN

16              Wednesday, June 27, 2018

17   ----------------------------------------------

18          Oral deposition of RAY PERRYMAN, produced as

19   a witness at the instance of the Plaintiff States, and

20   duly sworn, was taken in the above-styled and numbered

21   cause on the 27th day of June, 2018, from 2:00 p.m. to

22   4:44 p.m., before Deborah L. Endler, Notary Public in

23   and for the State of Texas, reported by stenographic

24   means, at the offices of the Attorney General, 300

25   West 15th Street, 11th Floor, Austin, Texas 78701,
```

**For Depo Excerpts**

**Transcripts**

📄 Jun 27, 2018 Perryman, Ray (6_27_2018)

**Page:** 89
1  the Affordable Care Act.
2      A.    What page are we on?
3      **Q.    Starting on page 21 and really 22 and 23.**
4      A.    The discussion of Dr. Deere's?
5      **Q.    Yes, sir.**
6      A.    Okay, sure.
7      **Q.    Starting in paragraph 57 you talk about an**
8  **analysis you did of Dr. Deere's claims?**
9      A.    Yes, sir.
10     **Q.    And that analysis relied in part on Kaiser**
11 **data; right?**
12     A.    I believe I used that in some of these
13 studies, yes, sir.
14     **Q.    I think I have a copy.**
15         **(Deposition Exhibit 10 was marked.)**
16     **Q.    Show you Exhibit 10.   This is the Kaiser**
17 **data cited in footnote 68; right?**
18     A.    Yes, sir.
19     **Q.    So you used these numbers or rather you**
20 **used this study to determine the number of employers**
21 **who did not offer health benefits; right?**
22     A.    Correct, yes, sir.
23     **Q.    Your analysis in paragraph 57 and 58 and 59**
24 **relies on using the number of employers who did not**
25 **provide health insurance; right?**

**Page:** 90
1      A.    Correct, yes, sir.
2      **Q.    Did you do anything to distinguish between**
3  **employers that do not provide health insurance verse**
4  **employers who may provide some health insurance, but**
5  **not enough to avoid the ACA penalty provision?**
6      A.    I did not.   Large employers, I'm on the
7  board of very large insurance company, I can't think
8  of a single plan that we write that wouldn't meet the
9  minimum ACA guidelines.
10     **Q.    Do you know if this study that I have**
11 **marked as Exhibit 10, do you know if the Kaiser study**
12 **I've marked as Exhibit 10 does anything to distinguish**
13 **between employers who don't provide any health**
14 **insurance verse employers that may provide some but**
15 **not enough to avoid the penalty?**
16     A.    It's been a couple weeks since I looked
17 through the detail.   I don't recall if it does or not.
18 Again, I'm not aware of a policy of any large firm has
19 available that wouldn't at least meet the minimum
20 standards.   But I could be wrong.
21     **Q.    So let me ask a more specific question.   In**

22 **Exhibit 10 the data from the Kaiser Family Foundation,**
23 **the firms -- Well, let me ask you more pointedly.**
24     **So of the firms with 50 to 99 employees --**
25     A.    Yes, sir.

Jun 27, 2018 Perryman, Ray (6_27_2018)

**Page:** 94
1     **Q.    Okay.   Explain it to me.**
2     A.    That's the maximum it could possibly be
3 with a whole lot of other assumptions involved.   If
4 you keep going, you see why that's very, very
5 unlikely.   That's the upper bound of what it might be.
6     **Q.    The $13 million is the upper bound of what**
7 **firms may have been charged if they hired U.S.**
8 **citizens or other lawfully present workers as opposed**
9 **to hiring DACA workers?**
10     A.    I'm not even sure may have been charged is
11 appropriate.   It's the maximum amount of penalty that
12 could have been assessed if all the other conditions
13 in Dr. Deere's hypothetical were present, which by
14 definition one of them can't be, but and I go on to
15 explain the rest of that there.   So I'm not sure how
16 else to describe it.
17     **Q.    Let me try it this way.   So all of the**
18 **firms in Texas, if they hired all of the DACA**
19 **recipients who you have estimated are working, would**
20 **have saved $13.2 million by avoiding the Affordable**
21 **Care Act penalty?**
22     A.    No, sir.
23     **Q.    Try one more time.**
24     A.    Let me try again.   Okay.   And at the risk
25 of jumping ahead of you, I don't mean to do that, that

**Page:** 95
1 would be the penalty if every time this situation
2 occurred you had only one job available and you had a
3 DACA recipient and a non-DACA recipient sitting there,
4 all other things were equal, experience,
5 qualifications, all that, in one sense everything
6 can't be equal because DACA takes away certain
7 opportunities that make a DACA recipient automatically
8 less attractive than an American citizen.
9     For example, the uncertainty of their
10 status maybe if you are going to invest in training
11 someone, or particularly promoting someone and move
12 them up your corporate ladder, you would like to have
13 someone who you know can stick around.   So that
14 condition couldn't hold.
15     But assuming even that one held, everyone
16 in the situation and the IRS was vigorously enforcing
17 this rule against all employers and all employers were
18 completely aware of it the moment they are making that
19 hiring decision, and there weren't any other factors
20 involved, then it would take all of that to get you to

21  the $13 million.
22      Q.      Okay.
23      A.      In reality it's very unlikely there is any
24  penalty whatsoever.
25      Q.      Okay.

```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     BROWNSVILLE DIVISION

 3
      STATE OF TEXAS,                    )
 4         Plaintiffs,                   ) Case No.
           vs.                           ) 1:18-cv-00068
 5    UNITED STATES OF AMERICA, et al., )
           Defendants,                   )
 6             and                       )
      KARLA PEREZ, et al.,               )
 7          Defendant-Intervenors. )

 8                 REPORTER'S CERTIFICATION
                   DEPOSITION OF RAY PERRYMAN
 9                     June 27, 2018

10              I, Deborah Endler, Shorthand Reporter in and

11    for the State of Texas, do hereby certify that the

12    foregoing deposition is a full, true and correct

13    transcript:

14              That the foregoing deposition of RAY

15    PERRYMAN, the Witness, hereinbefore named was at the

16    time named, taken by me in stenograph on June 27,

17    2018, the said Witness having been by me first duly

18    cautioned and sworn to tell the truth, the whole truth

19    and nothing but the truth and the same were thereafter

20    reduced to typewriting by me or under my direction.

21              ( ) That by agreement of counsel, a reading

22    condensed copy of the deposition transcript along with

23    the full-sized original Changes and Signature Sheet

24    has been sent to _____ on

25    _____ for review and signature within 30 days
```

Ray Perryman

June 27, 2018
Page 111

```
 1  and if any corrections returned are attached hereto.

 2          ( ) That the Witness shall have thirty (30)

 3  days for review and signature of the original

 4  transcript and if any corrections returned are

 5  attached hereto.

 6          ( ) That the signed transcript ( ) was ( )

 7  was not received from the Witness within 30 days.

 8          That the amount of time used by each party at

 9  the deposition is as follows:

10          Mr. Disher - 2 hours, 44 minutes

11          That before the completion of the deposition,

12  the Deponent, andor the Plaintiff/Defendant _____ did

13  _____ did not request to review the transcript.

14          I further certify that I am neither counsel

15  for, related to, nor employed by any of the parties or

16  attorneys in this action in which this proceeding was

17  taken, and further that I am not financially or

18  otherwise interested in the outcome of the action.

19          WITNESS MY HAND, this the 28th day of June,

20  2018.

21          _____

22          DEBORAH L. ENDLER, Reporter
            EXPIRATION DATE:
23          Firm Registration No. 631
            Kim Tindall & Associates, LLC
24          16414 San Pedro, Suite 900
            San Antonio, Texas 78232
25          Phone 210-697-3400
```

# DEF-INTERV.

# EX. 146

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

```
STATE OF TEXAS, et al.,         )
        Plaintiffs,             )
                                )
VS.                             )
                                )
UNITED STATES OF AMERICA, et al.,)  Case No. 1:18-CV-68
        Defendants,             )
                                )
and                             )
                                )
KARLA PEREZ, et al.,            )
                                )
        Defendant-Intervenors.  )
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF

DONALD R. DEERE, Ph.D.

JUNE 28, 2018

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF DONALD R. DEERE, Ph.D., produced
as a witness at the instance of the
Defendant-Intervenors, and duly sworn, was taken in the
above-styled and numbered cause on the 28th of June,
2018, from 10:15 a.m. to 12:45 p.m., before Kathleen
Casey Collins, CSR, in and for the State of Texas,
reported by machine shorthand, at the Office of the
Attorney General, 301 West Fifteenth Street, Seventh
Floor, Austin, Travis County, Texas, pursuant to the
Federal Rules of Civil Procedure and the provisions
stated on the record or attached hereto.

**For Depo Excerpts**

**Transcripts**

 Jun 29, 2018 Deere, Donald

**Page:** 4
1               DONALD R. DEERE, Ph.D.,
2 having being first duly sworn, testified as follows:
3               EXAMINATION
4 BY MR. HERRERA:
5     Q.    Good morning.   My name is Ernest Herrera.   I'm
6 representing the defendant-intervenors today for the
7 Karla Perez and other defendant-intervenors.
8               Can you state your name for the record.
9     A.   Donald Riche Deere, Jr.   And Riche is
10 R-i-c-h-e.
11     Q.    And do you go by Dr. Deere?
12     A.   I have a Ph.D. so...
13     Q.    Have you -- we're going to go over a few
14 rules, just some -- some basic things that are standard
15 to any deposition, but I believe you have had your
16 deposition taken before.
17     A.   Yes.
18     Q.    Just as a reminder then, for the court
19 reporter's sake, we're going to have one person speak at
20 a time.   I know it's natural for us to try to speak over
21 each other.   So I'll try to not speak over you when
22 you're speaking and let you finish your answer.
23               Could we have audible answers, so a yes
24 or a no, rather than a nodding of the head or shaking of
25 the head?

 Jun 29, 2018 Deere, Donald

**Annotation Issues:**   For Depo Excerpts

**Page:** 8
1 lawyers would then use to provide legal advice to their
2 clients.
3     Q.    What -- what did your focus -- what did your
4 research focus on when you were at Texas A&M?
5     A.   Primary labor economics.   You can see the list
6 of publications on the -- on the vita that are pretty
7 much -- not all of them, but most of them have something
8 to the with aspects of -- of the labor market.
9     Q.    Have you ever conducted research regarding the
10 effects of immigration on the labor market?
11     A.   No, I have not done that.
12     Q.    Have you ever written any articles regarding
13 the effects of immigration on the labor market?
14     A.   No.
15     Q.    Have you ever conducted research regarding the
16 effects of immigration on wages?
17     A.   No.

18      Q.    Have you ever written any article, even if it
19  was an op-ed or anything like that, regarding the
20  effects of immigration on wages?
21      A.    I don't think so, no.
22      Q.    Have you ever conducted research regarding the
23  interaction between immigration and public benefits?
24      A.    Well, other than what I've done in my
25  declaration with regard to the ACA, I would say no.

📄 Jun 29, 2018 Deere, Donald

**Page: 9**

1       Q.    Have ever -- have you ever written any
2   articles regarding the interaction between immigration
3   and public benefits, so as opposed to research?
4       A.    I'm sorry.   Would you --
5       Q.    Sure.
6       A.    -- repeat.
7       Q.    No problem.
8       A.    I'm trying to distinguish that question from
9   the prior question.
10      Q.    The prior question, unless I misspoke, it
11  was -- I was asking about research.
12            But have you ever written anything
13  published, even if it was in a newspaper or a magazine,
14  regarding the interaction between immigration and public
15  benefits?
16      A.    And I would say the only thing I've written
17  about that would be the declaration that brings us here
18  today.
19      Q.    Well, we have that out today as exhibit --
20  Exhibit 1; and if we can go to the first page of this
21  exhibit, it says here in the body of this text,
22  "Plaintiff States disclose the following experts in
23  accordance with the Court's scheduling order," and your
24  name is listed here.
25            Do you understand that the parties

📄 Jun 29, 2018 Deere, Donald

**Page: 13**

1       Q.    When you worked with Unicon Research
2   Corporation, was any of your research focused on
3   healthcare?
4       A.    Unicon was a grant- and contract-supported
5   entity that -- so most of the money came from various
6   federal agencies.   There was some support for data
7   collection, data that had to do with healthcare, and so
8   I believe the health and retirement survey.   But our
9   role was facilitating data access.
10            There's also the National Long-Term Care
11  Survey, which I don't know if you want to call that
12  healthcare or not.   But that was another thing we were

13 working on.
14          We were facilitating data access, and so
15 it's -- anyway, so I would say yes, in those -- at least
16 those two dimensions.
17    **Q.    So looking at -- again at your declaration, I**
18 **want to hand you, keeping this in mind, another**
19 **document.**
20          **(Exhibit No. 2 marked)**
21    **Q.    I'm handing you what has been marked as**
22 **Exhibit 2, and do you recognize this document?**
23    **A.    Other than the first page, yes.**
24    **Q.    And is this the first declaration that you**
25 **prepared for this case?**

**Page:** 14
1    **A.    Yes.**
2    **Q.    When did you prepare your first declaration?**
3    **A.    Well, it -- I would say April 27th, 2018, and**
4 **obviously some days before that.   I didn't write it all**
5 **in one day.**
6    **Q.    Sure.   When did you prepare your supplemental**
7 **declaration?**
8    **A.    June 14th, 2018, and some of the days leading**
9 **up to that.**
10    Q.    Why did you prepare your supplemental
11 declaration?
12          MR. DISHER:   And I'll just instruct the
13 witness you can answer to the extent you can without
14 disclosing conversations you may have had with counsel
15 for this case.   Go ahead and answer.
16    A.    Well, I -- I thought a little more about the
17 issue of immigration and its impact on the labor market
18 and DACA recipients specifically and impact on the
19 market, because the initial declaration was focused
20 primarily, if not solely, on the interaction of DACA and
21 the ACA; and really the -- there are broader aspects to
22 the implications for the labor market of the DACA
23 recipients and their labor supply or their work status,
24 and that -- so I wanted to expand the declaration and
25 cover what is really sort of the broader aspects of the

Jun 29, 2018 Deere, Donald

**Page:** 17
1 something but --
2    **Q.    Sure.**
3    A.    -- the documents are there.
4    **Q.    And I may have -- well, let's go into some**
5 **other questions and maybe we -- we can come back to**
6 **that -- that issue.**
7          **Would you say that the opinions in your**
8 **supplemental declaration replace your original**
9 **declaration, which is at Exhibit 2?**
10          MR. DISHER:   Objection, vague.
11    **Q.    Or, rather -- yes, Exhibit 2.**

12          MR. DISHER:   Objection, vague.
13     A.   Yes.   I would say the supplemental declaration
14 is -- states my opinions.   Well, I mean, let me add to
15 that, which is I have -- since filing and submitting
16 this declaration, I have seen declarations from opposing
17 experts; and if asked, I may or may not have opinions
18 about what they say, what they say about what I said.
19 So, you know, that's obviously not in my declaration
20 but...
21     Q.   Understood.   Thank you.
22               Looking at your supplemental declaration
23 again, Exhibit 1, let's go to Page 3 of the declaration
24 and look at Paragraph 7.
25               When you say that as a result of the DHS

**Page: 18**
 1 Memorandum, the number of immigrants who are not
 2 lawfully present with an EAD has expanded nationwide -
 3 and EAD stands for Employment Authorization Document -
 4 are you referring to DACA recipients?
 5     A.   I think I am, yes.
 6     Q.   And is it fair to say that the only EAD
 7 holders whom you address in your declaration are DACA
 8 recipients?
 9     A.   Yes, because, I mean, that's -- to me
10 that's -- because the DHS Memorandum is specifically
11 about actions taken or not to be taken with regard to
12 that particular population, the DACA-eligible
13 population; and then if they -- if those individuals
14 apply, then they're going to get -- and are approved,
15 they will get an EAD.   And so that's the group I'm
16 talking about, yes, which would be -- as I understand
17 it, it is not the eligible ones but the ones who
18 actually have an EAD is the population that's counted in
19 the Footnote 2 information.
20     Q.   Sure.   Well, so it would be fair to say
21 that -- or it would be fair to just refer to DACA
22 recipients while we're talking today.   Would that be
23 okay?
24     A.   Well, when we're talking --
25     Q.   Unless we say --

Jun 29, 2018 Deere, Donald

**Page: 19**
 1     A.   Yeah.   I mean, when we're talking about the
 2 immigrants or the impact of the DHS Memorandum, yes, I'm
 3 speaking of DACA recipients; and it may also be relevant
 4 to talk about DACA-eligible, who have not yet applied
 5 but who could.   So let's just keep that open.   But --
 6 but those -- yeah, it's the DACA population, eligible
 7 and/or actual recipients.
 8     Q.   And in that same paragraph when you say,
 9 "premium subsidies provided by the ACA," are you
10 referring there to the advance premium tax credits?

11    A.    That's my understanding, yes.
12        Q.    Okay.   So for the sake of simplicity, during
13   the deposition, unless we say otherwise, we will keep
14   referring to the advance premium tax credit as a premium
15   subsidy.   Is that fair?
16        A.   I think so.   I do know that there's another
17   category that I can't quite remember the name of.   It's
18   another aspect of the subsidy that individuals can
19   receive who are receiving a premium subsidy; and as best
20   I can tell, to get whatever that is -- and I'm sorry I
21   can't remember.   It's a subset of the APTC - advance
22   premium tax credit - population but -- so, you know,
23   unless my understanding is wrong, then, yeah, I think
24   it's fair for us to refer to the premium tax credits as
25   the ACA subsidy like you said.

Jun 29, 2018 Deere, Donald

**Page:** 28
1   But, again, there are clearly smaller employers, however
2   defined, to which this does not apply.   I agree with
3   that.   To which the ACA penalty interaction part of my
4   declaration does not apply.
5        Q.   Okay.   Well, let's look back at your
6   declaration and look at -- so this is going back to
7   Exhibit 1, and look at Paragraph 7.   You say that
8   individuals with an EAD are not eligible for premium
9   subsidies.   Right?
10        A.   Yes.
11        Q.    Isn't it true that you assume that firms have
12   perfect knowledge or complete information regarding the
13   laws and regulations associated with the Affordable Care
14   Act penalty?
15            MR. DISHER:   Objection, vague.
16        A.   I wouldn't say complete and perfect
17   information, no.
18        Q.    Did you do any analysis of when businesses
19   have knowledge of how the employer mandate or employer
20   penalty will apply?
21        A.    No.
22        Q.    Did you consult any studies or surveys that
23   would discuss a firm's knowledge or possession of
24   information regarding the ACA employer penalty?
25        A.    No.

**Page:** 30
1   research regarding a firm's knowledge of information
2   regarding the employer penalty, then how do you know how
3   that factor -- how that factors into your scenario?
4            MR. DISHER:   Objection, mischaracterizes
5   testimony.
6        A.    Well, I mean, certainly employers are aware of

 7  the ACA.   You're talking about the largest employers
 8  here that are presumably the most sophisticated and have
 9  the most resources and have the most at stake if they
10  screw up with regard to employment law.   So there's an
11  incentive for employers to understand the law.
12                 So I -- you know, I don't know that --
13  I'm certainly not assuming they have perfect knowledge.
14  I think it's sort of silly to assume they're completely
15  unaware of any aspects of the ACA whatsoever.   So maybe
16  it's somewhere in the middle.
17         Q.    Okay.   And when you say -- would it be fair to
18  say that you assumed for the purposes of your report
19  that employers are aware of the fact that employees with
20  EAD are not eligible for premium subsidies?
21                 MR. DISHER:  Objection, vague.
22         A.    Well, they're at least differentially
23  eligible, less likely to get.   Yeah, that would be a --
24  a part of it.
25         Q.    Okay.   Would it be fair to say that you

📄 Jun 29, 2018 Deere, Donald

**Page:** 33
 1  criteria, meaning that they're less likely to get the --
 2  the premium subsidy?
 3         A.    I don't know that it matters why they view
 4  them as -- as less expensive.   It matters that they view
 5  them as less expensive because of the ACA, whether it's
 6  they would get a -- they would be less likely to claim
 7  the credit or they would be less likely to be eligible
 8  for the credit or whatever.   It really doesn't matter.
 9  What matters is that the employer -- you've got two
10  choices, "A" and "B," and they're otherwise the same
11  except "A" costs more because of the ACA.   I'm going
12  to choose "B."   That's what is assumed in that
13  scenario.
14         Q.    Okay.   So you're saying that -- that they --
15  that otherwise they would be the same.   So you're
16  controlling in this scenario for other cost factors such
17  as training.   Right?
18                 MR. DISHER:  Objection, vague.
19         A.    Well, as I said, it's sort of all other things
20  equal is the -- is the theoretical point that the
21  example is talking about, yes.
22         Q.    Okay.   And all other things being equal would
23  include something like training costs?
24         A.    Yes.
25         Q.    Okay.   Would it be fair -- would it be correct

**Page:** 34
 1  to say that you assume that employers are aware that a
 2  job applicant has an EAD authorizing employment before
 3  making the hiring decision?
 4                 MR. DISHER:  Objection, asked and
 5  answered.   Objection, vague.

6       A.   Well, I don't know immigration employment law.
7  But I know that you've got to have I-9 information, and
8  I would think that the EAD would be shown at the I-9
9  stage.   Now, whether that's post offer or not, I'm not
10  completely sure.
11          Q.   Okay.
12          A.   But, again, the assumption here -- as I said,
13  the key assumption is that the employer views the DACA
14  recipient as cheaper, other things equal.   And if other
15  things aren't equal, maybe training is a little bit more
16  expensive for the DACA recipient, but maybe the subsidy
17  more than offsets that so...
18                    But the discussion in the supplement --
19  supplemental declaration is other things equal, the
20  employer views the DACA recipient, who he knows the DACA
21  recipient is more expensive because of the ACA relative
22  to the lawfully present individual, who they apparently
23  know is lawfully present, and that's the comparison.
24          Q.   Sure.   And I get the -- I get the point of
25  the -- of the comparison and what -- what your analysis

Jun 29, 2018 Deere, Donald

**Page:** 36
1          Q.   Okay.   Let's look at Page 9 of Exhibit 4 --
2  or, rather, Exhibit 3, and so that's the Page 9 that's
3  at the top right.
4                    In the first full paragraph there that
5  begins with "Employee demographics," there is a numbered
6  list before which the article says, "Certain kinds of
7  employees will not trigger the penalty, including," and
8  then so there's that list.
9                    So "Certain kinds of employees will not
10  trigger the penalty, including, No. 1, highly
11  compensated employees (i.e., those earning at least
12  400 percent of the applicable federal poverty level),
13  who are not eligible for subsidies in any event."
14                    Do you agree with that?
15          MR. DISHER:   Objection to the extent it
16  calls for a legal conclusion.
17          A.   I mean, my understanding is that individuals
18  between 104 percent -- 100 percent and 400 percent of
19  the poverty level are the ones that are eligible.   Below
20  100 I think would be No. 3, Medicaid.   And above 400
21  would be No. 1, highly compensated.   So that is my
22  understanding, yes.
23          Q.   Okay.   And do you agree that employees covered
24  by a policy owned by a parent or a spouse will not
25  trigger the penalty?

**Page:** 37
1                    MR. DISHER:   Same objection.
2          A.   If that's part of the law, I agree.
3          Q.   And do you agree that employees eligible for
4  Medicaid coverage, which are not eligible for the

5  subsidized policies, would not trigger the penalty?
6            MR. DISHER:    Same objection.
7      A.    Same answer.  I said that already.  Yes.
8      Q.    And slightly -- slightly different.  Would you
9  agree that employees eligible for Medicare coverage
10 would not trigger the penalty?
11           MR. DISHER:   Objection, calls for a legal
12 conclusion.
13     A.    And my answer is if that's what the law says,
14 I'll agree.
15     Q.    And would you agree that those who choose to
16 be uninsured do not trigger the -- the penalty?
17           MR. DISHER:   Same objection.
18     A.    I agree with whatever the law says.
19     Q.    Did you attempt to make any calculation of
20 U.S. citizens or other lawful residents in the
21 United States who currently match at least one of the
22 criteria that we just went over from Page 9 of
23 Exhibit 3?
24     A.    No.
25     Q.    Conversely, you don't know how many U.S.

**Page:** 38
1  citizens in the U.S. would meet none of the criteria in
2  that list on Page 9.  Right?
3      A.    No.
4      Q.    Therefore, isn't it true that you don't know
5  how many U.S. citizens in the U.S. there are who would
6  trigger the penalty?
7      A.    I'm not sure what "would trigger the penalty"
8  means.  But I do know that, you know, there's -- in the
9  reference somewhere, 8.7 million are the number who
10 actually receive premium tax credits.  So it's at least
11 that many.
12     Q.    Okay.  Well, let's -- before we go -- before
13 we look at that figure, you -- it's true that you don't
14 know how many U.S. citizens or other lawful residents in
15 the United States there are who would trigger -- trigger
16 the penalty based on this list of criteria on Page 9?
17           MR. DISHER:   Objection, vague.
18     A.    I do not.
19     Q.    Did you conduct any analysis of employer
20 awareness of eligibility of employees for premium
21 subsidies?
22     A.    No.
23     Q.    And based on your answer earlier about the
24 I-9, is it correct to say you did not research whether
25 an individual presents I-9 documentation before or after

**Page:** 39
1  hiring?
2            MR. DISHER:   Objection, vague.
3      A.    I -- I don't know how that works.  I'm not
4  sure what the law is there so...
5      Q.    Okay.  So you didn't --
6      A.    I didn't -- I'm sorry.  What was your --

 7       Q.    Sure.
 8       A.    I did not do any research to answer that
 9  question either.
10       Q.    Okay.   Well, let's look at -- and you brought
11  up a figure a second ago.   Let's look back at your
12  declaration on Page 3.   So that's Exhibit 1, Page 3.
13             In the footnote of Page 3 of your
14  declaration, is that the 8.7 million number you were
15  referring to?
16       A.    In Footnote 4 on Page 3 of Exhibit 1, yes.
17       Q.    Okay.   And the footnote belongs to a
18  paragraph, Paragraph 8, which says that the resulting
19  estimates from a -- from the CBO study that you cite,
20  the resulting estimates are that 64,000,000 -- let's go
21  back and read the whole paragraph.
22             "The Congressional Budget Office and the
23  Joint Committee On Taxation in March 2012 estimated the
24  impact of the ACA on nonelderly workers and their
25  families who were projected to receive employment-based

**Page: 40**
 1  coverage in 2016 in the absence of the ACA.   The
 2  resulting estimates are that 64 million of these
 3  individuals will be eligible for subsidies in the
 4  exchanges under the ACA."
 5             So that 64,000,000 number belongs to a
 6  projection from March of 2012.   Right?
 7       A.    Yes.
 8             (Exhibit No. 4 marked)
 9       Q.    Okay.   I'm going to hand you what's been
10  marked as Exhibit 4, and have you seen this document
11  before?   And you can take a second to look it over.
12       A.    I think so.   As I note, there's the CSR part
13  at the top of Page 3.   So that was the thing I was
14  trying to remember a while ago.
15       Q.    Sure.   The date of the document is June 12,
16  2017.   Right?
17       A.    Yes.
18       Q.    And it's from the Centers for Medicare and
19  Medicaid Services.   Right?
20       A.    Yes.
21       Q.    Okay.   And it says, "2017 Effectuated
22  Enrollment Snapshot."   Right?
23       A.    Yes.
24       Q.    Okay.   So in -- let's go to the second page of
25  this exhibit.   And if we look at this table that starts

Jun 29, 2018 Deere, Donald

**Page: 43**
 1       A.    I do not give an estimate of the number.   That
 2  is correct.
 3       Q.    Okay.   It is true that you do not consider the
 4  income levels of DACA recipients.   Correct?
 5             MR. DISHER:   Objection, vague.
 6       A.    I -- there's nothing in my declaration that

7 makes reference to the income levels of DACA recipients.
8 That's true.
9       Q.    Do you plan to -- well, we'll come back.
10              You don't know how many DACA recipients
11 have received bachelor degrees.    Right?
12      A.    I do not.
13      Q.    You don't know how many DACA recipients have
14 received doctorate-level degrees.    Right?
15      A.    I do not.
16      Q.    You don't know how many DACA recipients have
17 received law degrees.    Right?
18      A.    I do not.
19      Q.    And got forbid, we -- we don't need anymore
20 lawyers.
21              But did you examine any factors relating
22 to the earning potential of DACA recipients for your
23 analysis?
24              MR. DISHER:   Objection, vague.
25      A.    Other than the illustrative calculations about

**Page:** 44

1 what happens at various pay levels for the two examples
2 I illustrate.   Now, I make no reference to earnings
3 levels.
4       Q.    And that would be -- and, also, that would
5 include no analysis of what a DACA recipient who earns
6 an advanced degree might make in the future.    Correct?
7       A.    I did not look at that, no.
8       Q.    Okay.   Now, keeping in mind your scenario
9 again of Worker A versus Worker B or a U.S. citizen or
10 lawfully present worker versus a DACA recipient, as you
11 describe it, if a DACA recipient earns a certain income
12 level, then wouldn't the U.S. citizen counterpart
13 applicant in your scenario also be making that income
14 level?
15              MR. DISHER:   Objection, vague.
16      Q.    Or -- and I'll phrase it differently.
17              Going to your scenario again, if a DACA
18 recipient is being considered for earning a certain
19 income level in that -- in that job application, then
20 wouldn't the U.S. citizen counterpart job applicant in
21 your scenario also be offered that same income level?
22              MR. DISHER:   Same objection.
23      A.    Well, let me -- let me answer it this way:   I
24 think what you're saying if -- in my scenario here, I've
25 got a DACA recipient and a lawfully present individual

**Page:** 45

1 equally productive.   So, yeah, I would agree they have
2 the same earning potential.   But, obviously, if the DACA
3 recipient is offered the job and the lawfully present
4 person is not offered the job, they're not going to earn
5 that income from that employer.
6       Q.    So would it be fair to say that one assumption
7 you're making for this scenario is that when considering
8 the comparative costs, the employer is thinking that he

9   or she is going to offer the DACA recipient and the U.S.
10  citizen the same income or wage if they are hired?
11       A.   I don't know that it speaks to that, but I
12  would say that's a fair assumption.
13       Q.   That's an assumption you make because you said
14  all things are equal in the process.   Right?
15       A.   Well, as I said, I agree they have equal
16  earning potential, and there's a job that's been offered
17  to which they both applied.   They're equally qualified.
18  You would expect that whichever one is hired, the offer
19  would be the same.
20       Q.   When you said that all other things are equal,
21  were you also assuming that the DACA recipient and the
22  U.S. citizen were of the same ethnicity or race?
23            MR. DISHER:   Objection, vague.
24       A.   I do not assume that.   That doesn't bear on
25  productivity.   So, no, I'm not assuming that.

📄 Jun 29, 2018 Deere, Donald

**Page:** 47
1       Q.   Okay.   So you're -- all other things being
2   equal is just about productivity?
3       A.   It's the things that are relevant to the job
4   for which the persons have applied.
5       Q.   But there are -- there are instances where
6   employers discriminate on the basis of race.   Right?
7            MR. DISHER:   Hold on.   Objection, vague.
8   Objection, calls for speculation.   Objection, outside
9   the scope of his testimony.
10       A.   I don't agree with that.
11       Q.   You won't agree that -- so employment
12  discrimination never happens?
13            MR. DISHER:   Hold on.   Objection, vague.
14  Objection, outside the scope of his testimony.
15       A.   That wasn't what I was asked to look at here.
16  That's got seemingly to me nothing to do with this.
17       Q.   But it could happen --
18       A.   Could a -- could a -- could an Hispanic
19  employer favor a Hispanic worker who is a DACA
20  recipient, maybe.   I mean, you know, discrimination is a
21  two-way street.   Right?
22       Q.   Sure.
23            But in this situation, you're not
24  considering those possibilities, right, for your
25  scenario?

**Page:** 48
1       A.   Well, by you using --
2            MR. DISHER:   Objection, asked and
3   answered.
4       A.   By you using the phrase "discrimination," that
5   would suggest factors not relevant to the position at
6   hand; and as I said, what I'm assuming are equal is
7   characteristics and factors of productivity that are
8   relevant to the job for which they've applied and not

9  anything that's not relevant for the job to which
10  they've applied.
11        Q.    Okay.   So when you say, "relevant to the job
12  for which they've applied," you're talking about
13  productivity and qualifications for the job or --
14              MR. DISHER:   Objection --
15        Q.    -- or what is -- what is included in that?
16              MR. DISHER:   Objection, asked and
17  answered.
18        A.    It depends on the job.
19        Q.    So you're assuming for the purposes -- let's
20  make it simpler.   You're assuming, for the purposes of
21  this scenario, that the employer is not considering race
22  or ethnicity.   Right?
23              MR. DISHER:   Objection, asked and
24  answered.
25        A.    I have said what the employer is considering.

📄 Jun 29, 2018 Deere, Donald

**Page:** 49
1  Those factors relevant to the position for which they've
2  applied, period.
3        Q.    Do employers always stick to factors which are
4  relevant to the job?
5              MR. DISHER:   Objection, calls for
6  speculation.   Objection, outside the scope of his
7  testimony.
8        A.    I don't know.
9        Q.    You did no analysis of how ethnic or racial
10  discrimination could factor into an employer's
11  decision-making when considering a U.S. citizen versus a
12  DACA recipient.   Right?
13              MR. DISHER:   Objection -- go ahead and
14  answer the question.
15              Objection, calls for an assumption.
16  There we go.   Thank you.   Go right ahead.
17        A.    I did not consider race, ethnicity, gender, or
18  any other characteristic irrelevant to the position for
19  which people have applied in this -- in my analysis.
20        Q.    Going back -- okay.   So a little -- a second
21  ago -- a few minutes ago, we got a little sidetracked.
22  We were talking about income or -- or possible earnings.
23              So if -- if a -- so going back to your
24  scenario again, if a DACA recipient is being considered
25  for a job that will make a certain level of income, then

📄 Jun 29, 2018 Deere, Donald

**Page:** 50
1  in your scenario the U.S. citizen counterpart is being
2  considered for that same wage or income.   Right?
3        A.    Yes.
4        Q.    Okay.   And if the U.S. citizen applicant is
5  being considered for an income level or a wage that

6  makes that applicant ineligible for the subsidy, then
7  the employer would not choose the DACA recipient
8  applicant -- or, rather, then the employer would not
9  choose the U.S. citizen applicant because of fear of
10  incurring the ACA penalty.   Right?
11             MR. DISHER:   Objection, vague.
12     A.   I think you said that backwards.
13     Q.   Okay.   I think I did.
14     A.   So my answer is no, I disagree.
15     Q.   Okay.   Okay.   Fair enough.
16             Okay.   So if the U.S. citizen counterpart
17  applicant is being considered for a certain wage and
18  that makes that applicant ineligible for the subsidy,
19  then the employer would not choose the DACA recipient
20  applicant over the U.S. citizen applicant because of
21  fear of incurring the ACA penalty.   Right?
22     A.   That makes sense.   I mean, again, yeah.
23  Income over 400 -- so $150,000-a-year job, the ACA
24  penalty is not going to be a deciding factor.   I would
25  agree with that.

**Page:** 51
1     Q.   Okay.   And because you did not consider the
2  income levels or income earning potential of DACA
3  recipients, you have no way of knowing how many U.S.
4  citizen applicants in your scenario would lose out on
5  job opportunities to DACA recipient applicants, do you?
6             MR. DISHER:   Objection, vague.
7     A.   I don't know the number.   I was not asked to
8  provide the number.
9     Q.   All right.   Let's look at -- let's go back to
10  your declaration and look at the paragraph that we
11  were -- we looked at kind of earlier on today,
12  Paragraph 23, which is on Page 7 of your supplemental
13  declaration.   So you've already reviewed this and we
14  went over it a little bit, and so keep this in mind.
15  I'm going to show you something else.
16             (Exhibit No. 5 marked)
17     Q.   So I'm handing you what is marked as
18  Exhibit 5.   And when you're discussing the issue in your
19  declaration -- the issue of the interaction of the DHS
20  Memorandum and the ACA on the labor market, you cite at
21  some point to this article, right, that article that is
22  Exhibit 5?
23     A.   Well, not exactly.   This article appears to be
24  the working-paper version of what was eventually
25  published.   They were the same name.   But I suspect it's

**Page:** 52
1  very similar.
2     Q.   Okay.   All right.   We'll look at it with that
3  caveat.   You cite in -- in paragraph -- rather, in
4  Footnote 15, which belongs to Paragraph 23, you -- you
5  cite to the article for which we have the -- the
6  working-paper version here.   Right?
7     A.   I believe so, yes.

 8      Q.    Okay.   And the sentence that the footnote is
 9  attached to in the paragraph is "Although the
10  theoretical implication that, other things being equal,
11  immigration reduces the wages of native workers with the
12  same skills is clear, there is no consensus in the
13  economic literature on the magnitude of this effect."
14          So I have a few questions on that.   You
15  say that the theoretical implication is clear.   Right?
16      A.   I do.
17      Q.    Okay.   Do you believe that there is an actual
18  implication there?
19          MR. DISHER:   Objection, vague.
20      A.    Yes.
21      Q.    Okay.   Let's look at -- in the working paper,
22  which is the -- the working-paper version of the labor
23  demand article to which you cite, let's look at Page 2
24  of that.
25          In the second paragraph, in the second

**Page:** 53
 1  sentence of that paragraph, it says, "The measured
 2  impact of immigration on the wage of native workers
 3  fluctuates widely from study to study (and sometimes
 4  even within the same study), but seems to cluster around
 5  zero."
 6          Do you agree with that assessment?
 7      A.   It's -- it's George's sentence.   So I don't
 8  disagree or agree.   It's in the paper.
 9      Q.    Okay.   Let's look at Page 3 -- actually, I
10  think we're going to move on from this one but -- let's
11  look at something else.
12          (Exhibit No. 6 marked)
13      Q.    I'm handing you what has been marked as
14  Exhibit 6.
15          MR. HERRERA:   See, Todd, this is where we
16  get the nice paper.
17          MR. DISHER:   I love it.
18          MR. HERRERA:   I think I might have
19  another one.
20          MR. DISHER:   It's so nice I barely want
21  to write on it.
22          MS. PERALES:   We put Dr. Deere's stuff on
23  the nice paper.
24          MR. HERRERA:   Yeah.
25      Q.   All right.   Do you recognize this exhibit?

**Page:** 54
 1      A.    Yes.
 2      Q.    Okay.   What is it?
 3      A.    It's an article entitled "Inequality,
 4  Incentives, and Opportunity" that I wrote with
 5  Finis Welch that appeared in the -- well, I think -- I
 6  don't know.   Is this a journal or a book?   I can't --
 7      Q.    I think it might be from a book.   Let me see.
 8      A.    Yeah.   I'm trying to remember.   Or a
 9  special -- it says "Social Philosophy & Policy" -- no.

10  That's the copyright.   Well, here.   Wait a minute.
11      Q.    It's not super recent but --
12      A.    It was in the journal Social Philosophy &
13  Policy, Volume 19, No. 1, winter of 2002; and also in
14  a -- I guess a book entitled "Should Differences in
15  Income and Wealth Matter?" edited by E.F. Paul, F.D. --
16  it's on my vita so...
17      Q.    Okay.   So it appeared as a book chapter.
18  Right?
19      A.    A reprint basically --
20      Q.    Okay.
21      A.    -- of it, the article and of some book, yeah.
22      Q.    Okay.
23      A.    We only roll once.
24      Q.    Okay.   Do you recall what this was about, this
25  article or chapter?

**Page: 55**
1       A.    Generally.   I mean, inequality, incentives,
2  and opportunity.
3       Q.    And let's see here.   Would it be fair to say
4  that you're examining potential causes of wage
5  inequality growth in this paper?
6       A.    Say that again.   Sorry.
7       Q.    Would it be -- would it be fair to say that in
8  this paper you are addressing changes in wage inequality
9  among workers in the United States?
10      A.    The paper speaks for itself.   I -- I haven't
11  looked at this in quite some time.
12      Q.    Fair enough.
13              Let's look at -- the first sentence here
14  says that measured inequality has increased tremendously
15  between the 1960s and 1990s, not only in the
16  United States but throughout the majority of industrial
17  nations.   Then it says, "Wages among people of the same
18  race and gender have become less equal."
19              Would you still stand by that?
20      A.    Yes.
21      Q.    Okay.   That assessment.
22      A.    Well, for the -- of the time period it speaks.
23  I'm not recanting anything there, no.
24      Q.    Okay.   And this is from 2000 -- or it was
25  reprinted in 2002, and so the analysis was around 2001

Jun 29, 2018 Deere, Donald

**Page: 57**
1       Q.    The second sentence that starts with "With
2  equality."
3       A.    And what's your question now?   Sorry.
4       Q.    When you say -- in that sentence, do you
5  recall which differences in individual -- or, rather,
6  which factors over which individuals have no control you
7  were discussing?
8              MR. DISHER:   Same objection.
9       A.    No.

10      Q.    Well, let's go to Page 88 here.   The paragraph
11  that begins on Page 88 with "in comparing" says, "In
12  comparing different economic" -- "economy-wide outcomes,
13  economists distinguish two forms of change that can be
14  viewed as beneficial.   The more stringent is the sort of
15  change where no one loses and at least one gains; such
16  change is called Pareto optimal.   The less stringent is
17  the sort of change where there are winners and losers,
18  but the gains to the winners are sufficient to
19  compensate the losers and leave something over.   This
20  latter form of change is acceptable under the
21  compensation principle, which only asks whether, with
22  redistribution, the more stringent form of optimality
23  could be realized in principle, regardless of whether
24  compensation in fact occurs."
25                   Do you -- do you recall these concepts?

**Page:** 58
1                   MR. DISHER:   Objection, vague.
2       A.    I mean, I agree I was the coauthor of this
3  paper, so there.
4       Q.    Okay.   So what is the -- what is the
5  compensation principle?
6       A.    Well, it -- I think it sort of says it fairly
7  clear here that you -- Pareto optimal is a change where
8  no one is worse off and at least someone is better off.
9  The compensation principle says, all right, as it says
10  here, there's winners and losers, but the gains to the
11  winners are sufficient to compensate the losers and
12  leave something over.   So, you know, it's the monetary
13  value of the gains to the winners exceed the monetary
14  losses or the value of -- the monetary value of the
15  losses to those who lose out.
16      Q.    Okay.
17      A.    And the compensation principle is saying,
18  well, if you take the compensation principle, you would
19  be willing to say that's an improvement.
20      Q.    Okay.   So you would use this to, say, look at
21  different economic phenomena and then examine how the --
22  how different parties or groups or people are affected?
23      A.    Well, this is sort of well-developed concepts
24  in what's called welfare economics when, you know,
25  there's an evaluation of a change and whether it's good

**Page:** 59
1  or bad and/or to what degree it is good or bad and who
2  gains and who loses and how much --
3       Q.    Okay.
4       A.    -- and so that's what it's used for.
5       Q.    Okay.   In -- if you go a few sentences down,
6  there's a parenthetical here and it says, "Immigration
7  may reduce the wages of native" -- "of the native
8  workers with abilities most similar to those of the
9  immigrants, but overall national product will increase."
10                   Do you agree that that's possible --
11      A.    Yes.

12      Q.   -- in the United States?   Okay.
13              Do you agree that that's actually
14 happening in the United States?
15              MR. DISHER:   Objection, outside the scope
16 of his testimony.
17      A.   I have not done an analysis to is it happening
18 right now, but I certainly agree that, as it states
19 here, it's possible.
20      Q.   Okay.   What would be -- what would be
21 something from an increase in overall national product
22 that might benefit native workers?
23              MR. DISHER:   Objection, vague.
24 Objection, outside the scope of his testimony.
25      A.   Well, let me give a real simple example.

Jun 29, 2018 Deere, Donald

**Page:** 64
1 equal.   Other" -- "Although the theoretical implication
2 that, other things being equal, immigration reduces the
3 wages of native workers..."
4              So did you do any analysis of whether
5 that theoretical implication has any bearing on the
6 current reality in the United States?
7              MR. DISHER:   Objection, vague.
8      A.   To the extent that economic theory is useful
9 in predicting what happens, it does have bearing on
10 what's happening.
11      Q.   Okay.   But for -- for this declaration, you
12 didn't do any calculations about the degree to which
13 wages would be reduced because of immigration?
14      A.   I did not make a calculation about the
15 magnitude, no.   I would -- that's why I cited the papers
16 by Borjas and Card because, you know, they talk about
17 theirs and many other studies that try to assess the
18 implications of immigration on native wages for -- to
19 get -- you know, to say -- to get an estimate of
20 magnitudes.
21      Q.   Okay.   And you say -- but Borjas says that the
22 impact of immigration on the wages of native workers
23 seems to cluster around zero.   Right?
24              MR. DISHER:   Objection, misstates the
25 document.

Jun 29, 2018 Deere, Donald

**Page:** 66
1 been difficult to find very large effects on wages; and
2 that's, I believe, an accurate assessment of what the
3 literature says.
4              MS. PERALES:   If I can take a second off
5 the record.
6              MR. DISHER:   Yeah.
7              (DISCUSSION OFF THE RECORD)
8              MR. HERRERA:   Back on.   Bear with me for

9 one minute.
10     Q.   (BY MR. HERRERA) Would you -- you don't know
11 how many jobs will be denied to United States citizens
12 because of the scenario that you describe in your
13 declaration, do you?
14           MR. DISHER:   Objection, vague.
15     A.   Well, it's not just "will be."   I suppose it's
16 "has been" -- "have been."   But I do not know the
17 number, no.
18     Q.   Okay.   Would it be correct to say that under
19 the compensation principle, Texas overall could be
20 better off as a result of the work authorization of DACA
21 recipients?
22           MR. DISHER:   Objection, vague.
23 Objection, outside the scope of his testimony.
24     A.   Possible -- well, Texas overall, but I don't
25 understand what "Texas overall better off" means.   What

Jun 29, 2018 Deere, Donald

**Page:** 68
1 opportunities.   Right?
2     A.   Well, sure, they have other opportunities; but
3 it may -- in general, those opportunities are inferior
4 to the one that they lost out on by the fact that it
5 wasn't their first choice.
6     Q.   Let's go to Paragraph 25 of your declaration.
7 You say in the second sentence on that paragraph -- in
8 that paragraph, "The interplay between the DHS
9 Memorandum and the ACA makes some U.S. citizens more
10 expensive to hire than equally productive immigrants who
11 are not lawfully present."
12           You cannot say how many U.S. citizens are
13 more expensive to hire, can you?
14     A.   Well, I don't know that number.
15     Q.   Because you made a number of assumptions, the
16 ones we've already discussed, can you calculate the
17 actual cost of equally productive U.S. citizens and DACA
18 recipients in the situation you described?
19           MR. DISHER:   Objection, misstates the
20 testimony.   Objection, vague.
21     A.   I don't understand that question.
22     Q.   Okay.   So you -- you made a number of
23 assumptions including -- or you held a number of things
24 equal, right, in your scenario?
25     A.   Okay.

Jun 29, 2018 Deere, Donald

**Page:** 69
1     Q.   However, in many instances, job applicants are
2 not equal in that regard or in that many regards.
3 Right?
4           MR. DISHER:   Objection, vague.
5     A.   Not all job applicants are going to be

6  identical.   That's correct.
7      **Q.    Okay.   So you don't always know the actual**
8  **cost difference between a U.S. citizen worker and a DACA**
9  **recipient applying for the same job.   Right?**
10             MR. DISHER:   Objection, vague.
11      A.    Well, the 3400 -- whatever, $3400-plus
12  shared-responsibility payment, you know that.   So --
13      **Q.    Right.**
14      A.    -- I'm not sure what your question is.
15      **Q.    You said that you examined the declarations of**
16  **other experts in this case.   Right?**
17      A.    Yes.
18      **Q.    Okay.   Which ones did you examine?**
19      A.    Dr. Ray Perryman and doctor -- I think it's
20  Leighton Ku, K-u.
21             MR. HERRERA:   Can we take a break now?
22             MR. DISHER:   Sure.
23                (RECESS TAKEN)
24             MR. HERRERA:   Okay.   Back on the record.
25      ==Q.    (BY MR. HERRERA) Dr. Deere, did you do any==

**Page: 70**
1  ==analysis of whether firms with 50 or more employees==
2  ==offer health insurance to all of their workers?==
3             ==MR. DISHER:   Objection, vague.==
4      ==A.    No, I did not.==
5             MR. HERRERA:   The intervenors pass the
6  witness.
7                 EXAMINATION
8  BY MS. GREGORY:
9      **Q.    Good afternoon.   My name is Katherine Gregory.**
10  **I'm a Deputy Attorney General with the New Jersey Office**
11  **of Attorney General, and I'm representing the**
12  **defendant-intervenor the State of New Jersey in this**
13  **case.**
14                 I just have a few more questions for you.
15  **I'll try to keep it brief; and I'm going to try not to**
16  **touch on any areas that we've already hit, but I can't**
17  **make any promises.**
18                 Just talking about your two declarations
19  **generally, did you review any research or documentation**
20  **in addition to the specific citations in your**
21  **declaration?   So was there anything not cited that you**
22  **reviewed in preparing those declarations?**
23      A.    There's some other papers that are probably
24  generally cited by either Borjas or Card that I did
25  cite, more of that -- more of that immigration

**Page: 72**
1      A.    I think I looked at the Long -- it's you
2  know, a brief writeup of his that's cited by, I think,
3  Perryman and Ku.   They talk -- you know, that's where
4  the 91 percent employed number comes from.   You know,
5  it's got a little bit of info about who the DACA
6  recipients are.   I looked at that.
7      **Q.    Did you perform any research in preparing**

     8   **these declarations relating to Texas businesses?**
     9              MR. DISHER:   Objection, vague.
    10        A.   I looked at what the current labor force
    11   numbers are for Texas, which would be generally employed
    12   by Texas businesses; but otherwise, no.
    13        **Q.   Did you talk to any hiring managers or human**
    14   **resource representatives in preparing these**
    15   **declarations?**
    16        **A.   No.**
    17        **Q.    Do you know how many Texas employers have 50**
    18   **or more full-time employees?**
    19        A.   No.
    20        **Q.    Do you know how many DACA recipients are**
    21   **employed in companies with 50 or more full-time**
    22   **employees?**
    23        A.   No.
    24        **Q.    Are all Texas residents, DACA recipients or**
    25   **citizens required to purchase health insurance?**

**Page: 72**
     1        A.   I think I looked at the Long -- it's, you
     2   know, a brief writeup of his that's cited by, I think,
     3   Perryman and Ku.   They talk -- you know, that's where
     4   the 91 percent employed number comes from.   You know,
     5   it's got a little bit of info about who the DACA
     6   recipients are.   I looked at that.
     7        **Q.    Did you perform any research in preparing**
     8   **these declarations relating to Texas businesses?**
     9              MR. DISHER:   Objection, vague.
    10        A.   I looked at what the current labor force
    11   numbers are for Texas, which would be generally employed
    12   by Texas businesses; but otherwise, no.
    13        **Q.   Did you talk to any hiring managers or human**
    14   **resource representatives in preparing these**
    15   **declarations?**
    16        **A.   No.**
    17        **Q.    Do you know how many Texas employers have 50**
    18   **or more full-time employees?**
    19        **A.   No.**
    20        **Q.    Do you know how many DACA recipients are**
    21   **employed in companies with 50 or more full-time**
    22   **employees?**
    23        **A.   No.**
    24        **Q.    Are all Texas residents, DACA recipients or**
    25   **citizens required to purchase health insurance?**

Jun 29, 2018 Deere, Donald

**Page: 73**
     1              MR. DISHER:   Objection to the extent it
     2   calls for a legal conclusion.
     3        A.   Well, you know, I thought the answer to the
     4   question was sort of yes in light of the ACA, but then I
     5   think something recently was -- the individual mandate

6 was rescinded.   I'm not -- I'm not sure I know how to
7 answer that question.   I kind of would have said yes,
8 but now I'm saying maybe it's no.
9        **Q.    That's fine.   Do you know how many Texas**
10 **residents are exempt from the coverage requirements of**
11 **the ACA?**
12              **MR. DISHER:   Same objection.**
13        **A.    No.**
14              MS. GREGORY:   Do you have a copy of the
15 supplemental declaration I could look at?
16              MS. PERALES:   Uh-huh.   Is that Deere 2 or
17 Deere 1?
18              MR. DISHER:   Deere 1.
19              MS. GREGORY:   It's right there.   I'm
20 sorry.
21              MS. PERALES:   I'll give it to you.   I'll
22 give it to you.
23              MS. GREGORY:   I promise I won't --
24              MS. PERALES:   Don't worry.
25        **Q.    (BY MS. GREGORY) Okay.   If you could pull out**

📄 Jun 29, 2018 Deere, Donald

**Page:** 78
1 best worker they can.   So I'm not sure how to answer
2 that.
3        **Q.    Okay.   So would salary history be a relevant**
4 **aspect to an employer?**
5        **A.    The salary history of the two individuals who**
6 **applied?**
7        **Q.    Yes.**
8        **A.    It might well be; but as you may know, in some**
9 **jurisdictions it's illegal for the employers to ask**
10 **about that now.**
11        **Q.    Is it illegal in Texas?**
12        **A.    No.**
13        **Q.    What about salary requirements of the two**
14 **individuals?   Would that be a relevant aspect?**
15        **A.    It could be, and it is legal to ask about that**
16 **as far as I know.**
17        **Q.    Okay.   How many employers in Texas base hiring**
18 **decisions entirely on costs associated with the ACA?**
19        **A.    I don't know.**
20        **Q.    Are those careers for which it's difficult for**
21 **employers to find U.S. citizens willing to undertake**
22 **that labor?**
23        **A.    I don't know.**
24        **Q.    Are there costs associated with replacing**
25 **employees who leave a business?**

**Page:** 79
1              **MR. DISHER:   Objection, calls for**
2 **speculation.**
3        **A.    Generally, there would be.**
4        **Q.    And what kind of costs would be entailed --**

5  **when an employee leaves a position, what kind of costs**
6  **does that entail?**
7      A.    Well, there's the disruption of the employer's
8  business at that point.    It depends on, you know, what
9  that person is doing and how many other people can do
10  that job.    There's a potential loss of output or sales.
11  There's the cost of recruiting and finding another
12  person to take that job.
13      **Q.    Potentially lost productivity?**
14      A.    Well, when the person leaves, they obviously
15  are no longer productive.    I don't know that it would
16  reduce anyone else's productivity.    It could, I suppose,
17  if you're -- again, the football team.    If the
18  quarterback quits and there's no quarterback, yeah, the
19  whole team might be a little less productive than it was
20  before.
21      **Q.    Okay.    Time spent interviewing new applicants,**
22  **would that be a cost to the business?**
23      A.    Yes.
24      **Q.    Okay.**
25      A.    Well, I mean, look, you may have an on -- if

**Page:** 80
1  it's a big enough business, an ongoing application
2  process, and that could a pretty small cost.    But I
3  still think it's probably not zero.    But if it's a
4  unique enough position, it could be a substantial cost
5  to undertake finding a new person.
6      **Q.    So it's fair to say that if 112,000, roughly,**
7  **work-eligible DACA recipients suddenly had to be**
8  **replaced in Texas, Texas businesses would incur some of**
9  **the those costs?**
10              MR. DISHER:    Objection, outside the scope
11  of his testimony?
12      A.    One would think, yes.
13      Q.    Is it a certainty that an employer will fill
14  every open position?
15      A.    No.    They --
16      Q.    Is it possible that -- I'm sorry.    Continue.
17      A.    They may not get a suitable candidate.    They
18  may get -- the budget approval may be rescinded because
19  of changes in market conditions.    There's a lot of
20  reasons that positions don't get filled.
21      **Q.    Is it possible that some employers would**
22  **choose to leave a position unfilled rather than pay**
23  **associated ACA costs?**
24      A.    Say that again.
25              MR. DISHER:    Calls for speculation.

**Page:** 81
1      **Q.    Is it possible that some employers would leave**
2  **a position unfilled rather than pay the costs associated**
3  **with the ACA for hiring a U.S. citizen?**
4      A.    I think so.    I think it's possible, yes.
5      Q.    Is it possible that employers would leave a
6  position unfilled if it would -- or positions unfilled

7  if it would bring them under the 50-employee threshold
8  for ACA penalties?
9      A.   I suspect yes, or at the margin at least.
10     Q.   If businesses did choose to replace employees
11 who are DACA recipients with U.S. citizens, all else
12 being equal, all other things equal, as in your
13 declarations, wouldn't that cost businesses more money?
14                MR. DISHER:  I'm sorry.   Can you say that
15 again?
16                MS. GREGORY:  Sure.
17     Q.   So in the hypotheticals in your declarations
18 you say "other things equal," assuming two applicants
19 are the same.
20                There is a cost associated with the ACA
21 regarding the penalties.   Correct?
22     A.   Yeah.
23     Q.   Okay.   So if the DACA employee suddenly
24 disappeared and there was an open position that the
25 employer decided to fill with a U.S. citizen, is it fair

📄 Jun 29, 2018 Deere, Donald

**Page:** 83
1      Q.   Okay.   Would some employers choose to hire
2  fewer people if wages go up?
3      A.   They could.
4      Q.   Would some employers eliminate positions
5  rather than pay more people more money if wages go up?
6      A.   Sure.  It's possible, yes.
7      Q.   Looking beyond the ACA penalties, are there
8  costs for businesses to hire DACA recipients over
9  citizens that you're aware of?
10                MR. DISHER:  I'm sorry.   Can you say that
11 one more time?
12                MS. GREGORY:  Sure.
13     Q.   Are you aware of any costs that businesses
14 have to pay when they choose to hire a DACA recipient
15 over a U.S. citizens?
16     A.   Other than the ACA, no.
17     Q.   What if an employer has offered to pay an
18 employee's legal expenses associated with their DACA
19 status?
20                MR. DISHER:  Objection, calls for
21 speculation.
22     A.   Then the employer would pay that money.   I
23 don't --
24     Q.   Okay.   Are you aware that companies such as
25 Microsoft and Apple have offered to pay legal expenses

**Page:** 84
1  of employees related to their DACA status?
2      A.   I am now.
3      Q.   So that would be an expense that a company
4  would choose to pay for a DACA recipient that they would
5  not have to pay for a U.S. citizen.   Correct?
6      A.   The U.S. citizen would not have DACA-related

7    expenses.   So no, there would be no expenses to pay.   I
8    agree with that.
9          Q.   In Paragraph 17 of your declaration on Page 6,
10   your supplemental declaration, you say that an employer
11   subject to the ACA penalties described above that is
12   operating to minimize its expected cost of operations
13   will hire applicant B instead of applicant A.
14                 Did I read that correctly?
15   A.   Yes.
16         Q.    Okay.   How many businesses in Texas operate
17   strictly to minimize their expected costs of operation?
18   A.    Well, I would strict -- I'm not going -- the
19   word "strictly" is -- I'm not sure why you had that
20   there.
21                 I would think that companies strive to
22   minimize cost of the output level they produce.   They
23   strive to maximize profit.   So a necessary condition for
24   maximizing profit is to minimize the cost of producing
25   whatever level of output you produce.

Jun 29, 2018 Deere, Donald

**Page:** 85

1          Q.    If DACA is enjoined in July of 2018, how many
2    U.S. citizens will be hired by Texas businesses?
3          A.    Well, I don't know what "enjoined" would mean,
4    first of all.   Does that mean that those individuals
5    would no longer be able to work?   But let's assume the
6    answer is yes.   It's equivalent to what I said a minute
7    ago about if all 680,000 just disappeared.   I would
8    assume that there would be some hiring to replace them.
9    I do not know the number.   I have not been asked to
10   calculate that.
11         Q.    If DACA were enjoined in July of 2018 and
12   hundreds of thousands of DACA recipients suddenly lost
13   the ability to work, how would Texas businesses be
14   affected?
15                 MR. DISHER:   Objection, vague.
16   Objection, outside the scope of his testimony.
17   A.   Some of them would have to -- would be without
18   some employees that they previously had and would have
19   to go from there, either hiring other employees or
20   making other adjustments.
21         Q.   What kinds of other adjustments?
22                 MR. DISHER:   Same objection.
23   A.   Cutting back on the output they produce or the
24   level of service they provide.   It depends -- it depends
25   on what industry they're in.

```
 1                    BROWNSVILLE DIVISION

 2  STATE OF TEXAS, et al.,              )

          Plaintiffs,                    )

 3                                       )

    VS.                                  )

 4                                       )

    UNITED STATES OF AMERICA, et al.,)  Case No. 1:18-CV-68

 5        Defendants,                    )

                                         )

 6  and                                  )

                                         )

 7  KARLA PEREZ, et al.,                 )

                                         )

 8        Defendant-Intervenors.  )

 9

                   REPORTER'S CERTIFICATE

10        DEPOSITION OF DONALD R. DEERE, Ph.D.

                    JUNE 28, 2018

11

12      I, Kathleen Casey Collins, Certified Shorthand

13  Reporter in and for the State of Texas, hereby certify

14  to the following:

15      That the witness, DONALD R. DEERE, Ph.D., was duly

16  sworn by the officer and that the transcript of the oral

17  deposition is a true record of the testimony given by

18  the witness;

19      That the deposition transcript was submitted on

20  _____, ____, to the witness or to the attorney for

21  the witness for examination, signature and return to me

22  by _____, _____;

23      That pursuant to information given to the

24  deposition officer at the time said testimony was

25  taken, the following includes counsel for all parties
```

```
 1   of record:
 2        Mr. Todd L. Disher, Attorney for the Plaintiffs
          Mr. Ernest Herrera and Ms. Nina Perales, Attorneys
 3            for Defendant-Intervenors
          Mr. Daniel David Hu, Attorney for Defendants
 4        Ms. Katherine Gregory, Attorney for New Jersey
              Office of Attorney General
 5
 6        I further certify that I am neither counsel for,
 7   related to, nor employed by any of the parties or
 8   attorneys in the action in which this proceeding was
 9   taken, and further that I am not financially or
10   otherwise interested in the outcome of the action.
11        Certified to by me this _____ day of June,
12   2018.
13   _____
          KATHLEEN CASEY COLLINS
14        Texas CSR NO. 2018
          Certificate Expires 12/31/18
15        Ken Owen & Associates
          Firm Certificate No. 115
16        801 West Avenue
          Austin, Texas  78701
17        (512) 472-0880
18
19
20
21
22
23
24
25
```

# DEF-INTERV.

# EX. 147

Amanda Brownson                                                    June 28, 2018

```
 1               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                      BROWNSVILLE DIVISION

 3   STATE OF TEXAS, et al     )
                               )
 4                             )
     VS.                       )   C.A. NO. 1:18-CV-00068
 5                             )
                               )
 6   UNITED STATES OF AMERICA,)
     et al                     )
 7                             )
                               )
 8   VS.                       )
                               )
 9                             )
     KARLA PEREZ, et al        )
10

11      *************************************************
                ORAL DEPOSITION OF AMANDA BROWNSON
12                     JUNE 28, 2018
        *************************************************
13

14   ANSWERS AND DEPOSITION OF AMANDA BROWNSON, a witness

15   called by Plaintiff, taken before Janalyn Elkins,

16   Certified Shorthand Reporter for the State of Texas, on

17   the 28th day of June, 2018, between the hours of 10:00

18   a.m. and 12:47 p.m., in the offices of Attorney General

19   for the State of Texas, 209 W. 14th Street, Suite 700,

20   Austin, Texas, pursuant to the agreement of counsel for

21   the respective parties as hereinafter set forth.

22

23

24

25
```

**For Depo Excerpts**

**Transcripts**

📄 Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 8
1 **Q.**      **And you never did that with your time with TEA?**
2 A.      I don't recall whether I ever did that or not.
3 **Q.**      **Would you agree that the State of Texas incurs**
4 **the cost to educate students no matter their immigration**
5 **status?**
6 A.      I would.
7 **Q.**      **So let's lay a few ground rules out for the**
8 **deposition today.   Okay?**
9           **Have you ever been deposed before?**
10 A.      No.
11 **Q.**      **And do you realize that your testimony is under**
12 **oath?**
13 A.      I do.
14 **Q.**      **And that this carries the same penalties of**
15 **perjury as if you were testifying at trial?**
16 A.      I do.
17 **Q.**      **And I'm going to ask you today to only give**
18 **verbal answers, no head nod, uh-huhs, or huh-uhs.   Make**
19 **sure you make a clear statement for the record.   Okay?**
20 A.      Okay.
21 **Q.**      **And I'm going to let you finish your answer,**
22 **just make sure you let me finish my question, even if**
23 **you think you know what my question is asking.   Just**
24 **make sure you let me finish before you answer.   Okay?**
25 A.      Okay.

📄 Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 36
1 A.      You did.
2 **Q.**      **And then you go on to say that those assumptions**
3 **are inappropriate for a number of reasons, correct?**
4 A.      Correct.
5 **Q.**      **So you don't talk about the number that he**
6 **calculates for the $8,110, correct --**
7 A.      Correct.
8 **Q.**      **-- in your declaration?**
9 A.      Correct.
10 **Q.**      **Do you have a -- if we take out the -- the**
11 **assumption that you say he makes by calculating**
12 **100 percent ADA and we put in your 93 percent that you**
13 **calculated, do you still have a problem with the**
14 **calculation that Mr. Lopez has for estimated funding**
15 **entitlement?**
16 A.      Yes, I do, because I -- because I think
17 entitlement means a calculated amount of funding that a
18 particular child generates under the Foundation School
19 Program; and he is averaging -- the way he did that

20 calculation, in addition to the -- what I think the ADA
21 mistake, he also simply sums tax collections, sums state
22 aid, and divides by an attendance count.   Tax
23 collections are not an entitlement, so I object to that.
24 **Q.       But would you still say that a portion of that**
25 **cost in the calculation he makes is borne by the state?**

Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 62

1 **Q.       And how do you know that UACs do not have a**
2 **connection to DACA?**
3 A.      I read --
4          MS. MORENO:   Objection, vague.
5          THE WITNESS:   -- I read the DACA guidelines that
6 were shared with Mr. Lopez at his declaration; and, to
7 me, the logic seemed to be that UACs and DACA students
8 would be largely, if not totally, separate groups of
9 student.
10 BY MR. PEROYEA:
11 **Q.       I want to read -- let's go to Paragraph 12 of**
12 **your declaration where you say, (Reading:)   Furthermore,**
13 **bilingual education funding seems to have little to no**
14 **connection to DACA recipients.**
15          **Correct?**
16 A.      Correct.
17 **Q.       And you state that based upon your**
18 **interpretation of the guidelines of DACA?**
19 A.      Correct.
20 **Q.       Are you an expert in the field of immigration**
21 **law?**
22 A.      I'm not.
23 **Q.       Can you explain the difference between an**
24 **unaccompanied child and a DACA recipient?**
25          MS. MORENO:   Objection, vague.

Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 68

1 A.      Correct.
2 **Q.       And how familiar are you with the USCIS**
3 **guidelines as a whole?**
4          MS. MORENO:   Objection, vague.
5          THE WITNESS:   I am familiar with the document
6 that Mr. Lopez reviewed at his declaration as it
7 pertains to DACA.
8 BY MR. PEROYEA:
9 **Q.       So you didn't read anything else about the USCIS**
10 **guidelines as it pertains to immigration?**
11 A.      No.
12 **Q.       And in your declaration you state that bilingual**
13 **education seems to have little to no connection to DACA**
14 **recipients, correct?**
15 A.      Correct.
16 **Q.       What is your basis for that opinion?**

17  A.       As I reviewed the guidelines, two things seem to
18  cut against the student likely participating in an ESL
19  or bilingual education program.   One was that the person
20  would need to be 15 years old, and the other was that
21  the person would need to have been in the U.S. since
22  2007.   And so, that -- my experience with bilingual
23  education suggest that students become less likely to
24  receive -- to participate in those special language
25  learning programs, 1, as they get older; and, 2, as

**Page:** 69
 1  they've been in the country longer.   So it seemed to me
 2  unlikely that these students would be certainly not
 3  100 percent in bilingual education and, in fact,
 4  unlikely to participate.
 5  Q.       Sure.   But it's possible that a DACA recipient
 6  could receive bilingual education, correct?
 7          MS. MORENO:   Objection, calls for speculation.
 8          THE WITNESS:   I don't exclude it from the realm
 9  of possibility.
10  BY MR. PEROYEA:
11  Q.       Did you do any study to make that determination?
12  A.       When I wrote my declaration, I had just been in
13  Mr. Lopez's deposition; and he said that participation
14  in special language programs was not available on the
15  TEA website, and I thought that was right.   Last night I
16  found that it was, so I went back and reviewed that just
17  to confirm my presumption that students are less likely
18  to be enrolled in those programs as they progress
19  through the grades; and it did, in fact, turn out to be
20  true.
21  Q.       Have you ever talked to a DACA recipient who
22  told you -- or have you ever talked to a DACA recipient
23  before?
24          MS. MORENO:   Objection, calls for speculation.
25          THE WITNESS:   Not that I'm aware of.

📄 Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 79
 1  Q.       So would you agree, based upon your time at TEA,
 2  that (Reading:)   The cost of adding additional students
 3  to the system falls entirely on the state as local
 4  property taxes do not change and the funding gap between
 5  the increased entitlement that the new students create
 6  and the local share must be filled entirely with state
 7  dollars?
 8  A.       Can you read that again?
 9  Q.       Sure.
10          Would you agree, based upon your time at TEA,
11  that (Reading:)   The costs of adding additional students
12  to the system therefore falls entirely on the state as
13  local property taxes do not change and the funding gap
14  between the increased entitlement that the new students
15  create and the local share must be filled entirely with

16 **state dollars?**
17 A.        I think it's a little bit incomplete for two
18 reasons.   First, local share is determined based on
19 estimate of property wealth and the application of a tax
20 rate for that property wealth is not determined based on
21 tax collections, which can be different from the state's
22 determination -- in fact, always are different from the
23 state's determination of local share; but also because
24 you're presuming all other things are equal, and that --
25 and all other things never are equal.   So, as students

**Page:** 80
1 are added to the system, it is true, in fact, that
2 property values change and tax collections change.
3          I think that statement is sort of justification
4 for a shorthand algebra that works its way through the
5 FSP calculations but doesn't reflect the reality of
6 what's happening in Texas over time as the state grows,
7 the property tax base grows, and local districts, in
8 fact, are picking up the costs of increased enrollment.
9 **Q.        Would you say that your view on what you just**
10 **explained is held by the majority of people in your**
11 **field?**
12          MS. MORENO:   Objection, calls for speculation.
13          THE WITNESS:   I would say that the majority of
14 people in my field would recognize both that what you
15 read was a shorthand way of explaining the algebra
16 behind an estimate and an oversimplification of the real
17 dynamics of the operation of the public school system in
18 the Texas economy.
19 BY MR. PEROYEA:
20 **Q.        But would you agree with the fact that there's**
21 **not a consensus as to whether the burden of adding**
22 **additional students falls on state aid or local taxes?**
23          MS. MORENO:   Objection, vague.   Objection, calls
24 for speculation.
25          THE WITNESS:   I think because the statement you

Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 84
1 2019 count was estimated based on the increase from
2 2018.   It is likely that TEA also overestimated the
3 count for the ADA in 2019.
4          Did I read that correctly?
5 A.       You did.
6 **Q.        Can you say that with complete certainty?**
7 A.       That it is likely that TEA overestimated the
8 count of ADA in 2019?   I can say with certainty that it
9 is likely to me.
10 **Q.        How did you come up with your determination that**
11 **it was likely overestimated?**
12 A.        The way TEA estimates when it does pupil
13 projections before each legislative session, it looks at
14 historical attendance counts and then presumes continued
15 growth rates based on those counts.   And so, if it is

16 the case that the 2018 count was overestimated, when you
17 would project 2019, you should project it off a lower
18 2018 count.
19      So they -- they take 2017, grow it by a
20 percentage to get to 2018, and then grow that by an
21 additional percentage to get to 2019.   And so, I think
22 you have probably a doubly inflated count.   The
23 percentage may be slowing down.   There appears to be
24 some evidence that the percentage growth is slowing
25 down, and we should be applying that to a lower base.

Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 85
1 **Q.      So when you're calculating that number for next**
2 **year, you're only -- you're only using the calculation**
3 **for attendance from the prior year?   You're not looking**
4 **at the estimated attendance for -- or the actual**
5 **attendance of years prior as well?**
6 A.      You look at a trend, but it's been trending down
7 for more than just one year.   So when you add this year
8 into the trend, that will further reduce it.
9 **Q.      And so in Table 2 of your declaration, it shows**
10 **enrollment growth over the last five years, correct?**
11 A.      Correct.
12 **Q.      And the table shows enrollment growth spanning**
13 **from a number of 40,555 to 80,140?**
14 A.      Correct.
15 **Q.      The last year of 2017 to 2018 in Table 2 is**
16 **40,555, correct?**
17 A.      Correct.
18 **Q.      And in your declaration you believe that the**
19 **estimated enrollment has been overestimated based upon**
20 **that specific number of 40,555 actual enrollment?**
21 A.      Correct.   And, actually, also based upon the
22 2016 to 2017 change is also less than 70,000, as is the
23 2015 to 2016 change.   So we haven't been at 70,000 for
24 the last three years.   We've been below that, and it's
25 getting less and less.   But that's part of what I base

**Page:** 86
1 that on.
2 **Q.      Is there a reason why you didn't include**
3 **prior -- years before 2013 to 2014?**
4 A.      We don't usually look that far back when we do
5 pupil projections.
6 **Q.      And would you also acknowledge that there will**
7 **be, in fact, an estimated enrollment growth for the**
8 **following year, for 2019?**
9 A.      Growth beyond what they estimated or growth
10 beyond actual 2018?
11 **Q.      Actual growth beyond 2018, not the estimate but**
12 **that there will be, in fact, additional enrollment for**
13 **2019.**
14 A.      My presumption is that that 2019 enrollment will

15 be higher than 2018 enrollment, but we don't have that
16 count yet.
17 **Q.       So if we go to Paragraph 18 of your declaration,**
18 **do you see the first sentence where it says "the**
19 **estimate of the deficit"?**
20 A.       Yes.
21 **Q.       (Reading:)   The estimate of the deficit,**
22 **143.4 million, and the Foundation School Program in**
23 **Paragraph 7 does not appear to take into account the**
24 **anticipated settle-up process.**
25 **         Did I read that correctly?**

📄 Jun 28, 2018 Brownson, Amanda (6_28_2018)

**Page:** 92
 1 BY MR. PEROYEA:
 2 **Q.       But specifically as it pertains to each**
 3 **individual student that is enrolled in Texas public**
 4 **schools, Ms. Fisher calculated a number per student that**
 5 **would be attributed as a cost to the state.   Do you**
 6 **disagree with her calculating that number itself?**
 7        MS. MORENO:   Again, objection, vague; and calls
 8 for speculation.
 9        THE WITNESS:   So what I disagree with is the
10 presumption that other things in the system don't change
11 as student enrollment changes; and I think the
12 historical data in Texas proved me right:   As student
13 enrollment has grown in Texas, in fact, it has been the
14 case in recent years that state aid has shrunk and it
15 is, in fact, the case that local districts appear to be
16 largely bearing the cost of that increase.
17 BY MR. PEROYEA:
18 **Q.       Right.   But the state is still bearing a**
19 **percentage of that cost, correct?**
20 A.       The state bears a share of the Foundation School
21 Program cost.
22 **Q.       Okay.   Let's go back to your declaration.   So**
23 **let's look at Table 1, which will be on Page 8.**
24 A.       Okay.
25 **Q.       And let's look at 2018-2019 ADA --**

```
1        I, AMANDA BROWNSON, have read the foregoing
         deposition and hereby affix my signature that same is
2        true and correct, except as noted above.
3    Amanda Brownson
                                  AMANDA BROWNSON
4

5        THE STATE OF TEXAS    )
                               )
6        COUNTY OF Travis      )

7            Before me, Laura Buchanan on this day
8        personally appeared AMANDA BROWNSON, known to me (or
         proved to me under oath or through
9        (description of identity card or other document) to be
         the person whose name is subscribed to the foregoing
10       instrument and acknowledged to me that they executed the
         same for the purposes and consideration therein
11       expressed.

12           Given under my hand and seal of office this 16th
         day of July, 2018.
13

14
                              NOTARY PUBLIC IN AND FOR
15                            THE STATE OF TEXAS

16                            LAURA A. BUCHANAN
                              Notary Public, State of Texas
17                            Comm. Expires 10-04-2021
                              Notary ID 123984233
18
                              Laura A. Buchanan
19

20

21

22

23

24

25
```

Amanda Brownson

June 28, 2018
Page 96

1                    CHANGES AND SIGNATURE

2    RE:   STATE OF TEXAS VS. UNITED STATES O AMERICA

3

4       PAGE      LINE       CHANGE                    REASON    The calculation involves
5        21        9      wealth for students should    dividing property wealth by
                          be wealth per student         a count of students
6
7        24        1      school bias reform should     mis-typed
                          be school finance reform
8
9        27        24     Property law should be        recapture applies to
                          property wealthy              property-wealthy districts
10
11       40        1      accountability rate should    Proper term
                          be accountability rating
12
13       60        9      writing down funding should   proper term
                          be drawing down Funding
14
15       67        9      founding should be funding    Spelling error
16
17       79        20     for that property wealth should   more clear
                          be to that property wealth
18
19       79        20     New sentence. Insert "It" before   this is new and idea
                          is not determined based on...      sentence and idea
20
21
22
23
24
25

```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3    STATE OF TEXAS, et al      )
                                 )
 4                               )
      VS.                        )   C.A. NO. 1:18-CV-00068
 5                               )
                                 )
 6    UNITED STATES OF AMERICA,)
      et al                      )
 7                               )
                                 )
 8    VS.                        )
                                 )
 9                               )
      KARLA PEREZ, et al         )

10

11         ******************************************
           CERTIFICATE FROM THE ORAL DEPOSITION OF
12                      AMANDA BROWNSON
                        JUNE 28, 2018
13         ******************************************

14              I, Janalyn Elkins, a Certified Shorthand

15    Reporter in and for the State of Texas, do hereby

16    certify that the foregoing deposition is a full, true

17    and correct transcript;

18    That the foregoing deposition of AMANDA BROWNSON, the

19    Witness, hereinbefore named was at the time named, taken

20    by me in stenograph on June 28, 2018, the said Witness

21    having been by me first duly cautioned and sworn to tell

22    the truth, the whole truth, and nothing but the truth,

23    and the same were thereafter reduced to typewriting by

24    me or under my direction.  The charge for the completed

25    deposition is $_____ due from Plaintiff
```

1  () That pursuant to the Federal Rules of Civil

2  Procedure, the Witness shall have 30 days after being

3  notified by certified mail, return receipt requested, by

4  the deposition officer that the original deposition

5  transcript is available in her office for review and

6  signature by the Witness and if any corrections made are

7  attached hereto;

8  () That by agreement of counsel, a reading condensed

9  copy of the deposition transcript along with the

10  full-size original changes and Signature Sheet has been

11  sent to_____ on_____ for review and

12  signature within 30 days and if any corrections returned

13  are attached hereto;

14  () That by agreement of counsel, the deposition officer

15  is instructed to release the original deposition

16  transcript to_____ on_____, for review and

17  signature, and the deposition officer is thereafter

18  released of any further responsibility with regard to

19  the original.

20  () That the Witness shall have thirty (30) days for

21  review and signature of the original transcript and if

22  any corrections returned are attached hereto.

23  () That the signed transcript () was () was not received

24  from the Witness within 30 days.

25  () That the examination and signature of the Witness is

1    waived by the Witness and the parties;

2    That the amount of time used by each party at the

3    deposition is as follows:

4              MR. TRENT PEROYEA (2:14)

5    I further certify that I am neither counsel for, related

6    to, nor employed by any of the parties in the action in

7    which this proceeding was taken, and further that I am

8    not financially or otherwise interested in the outcome

9    of the action.

10             WITNESS MY HAND, this the_____ day

11   of_____, A.D., 2018.

12

13

14   _____
     JANALYN ELKINS
15   Cert. No. 3631
     Expires Dec. 31, 2018
16   16414 San Pedro, Suite 900
     San Antonio, Texas  78232
17   Firm Registration 631

18

19

20

21

22

23

24

25

# DEF-INTERV.

# EX. 148

Case 1:18-cv-00068   Document 225-6   Filed on 07/21/18 in TXSD   Page 55 of 525

STATE OF TEXAS, ET AL. vs. UNITED STATES OF AMERICA, ET AL.
R. Gil Kerlikowske on 07/03/2018

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF TEXAS

 3                   BROWNSVILLE DIVISION

 4

 5   STATE OF TEXAS, et al.,        )
                                    )
 6        Plaintiffs,               )
                                    )
 7   vs.                            )
                                    )
 8   UNITED STATES OF AMERICA, et   )
                                    )
 9   al.,                           )
                                    )
10        Defendants.               )
                                    )
11   and                            )
                                    )
12   KARLA PEREZ, et al.            )
                                    )
13        Defendant-Intervenors.    )

14

15                   DEPOSITION OF

16             R. GIL KERLIKOWSKE

17             Wednesday, July 3, 2018

18             10:01 a.m. - 1:56 p.m.

19

20             Regus Business Center

21             101 Federal Street

22         Boston, Massachusetts 02110

23

24

25   BY:  Dawn Mack-Boaden, RPR
```

**Deposition Excerpts**

**Transcripts**

📄 Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 37
1       United States illegally.
2   BY MR. BITTER:
3       **Q.    With respect to CBP agents' responsibility**
4   **for securing the borders, are there guidelines or**
5   **directives that govern the agents' work?**
6       A.    There would be training materials that
7   would be provided to them both for their initial
8   training and then for updated -- updated training
9   that occurs as a result of changes in law, policies,
10  etc.
11      **Q.    CBP has a travel component to its mission**
12  **as well; is that right?**
13      A.    Yes.
14      **Q.    What are some of the functions that CBP**
15  **undertakes with respect to that component?**
16      A.    So at those ports of entry, about
17  1.1 million people enter the United States per day,
18  and it would be the Customs and Border Protection
19  officers, whether a foreign mission through
20  preclearance or at those ports of entry, to review
21  the documentation, to review the visa, to ensure
22  that the person coming into the United States was
23  purporting to be who he or she says she is, and that
24  they can lawfully enter the United States.
25      **Q.    We'll talk some about CBP discretion as we**

**Page:** 38
1   **go on today; but as a general matter as to each of**
2   **the missions that you mentioned for CBP, is it fair**
3   **to say that CBP agents have discretion in the**
4   **actions that they take?**
5       A.    It's fair to say that.
6       **Q.    And that discretion is an important**
7   **component of a CBP agent's job; is that right?**
8       A.    Discretion is an important component.
9           And you're also referring to Border Patrol
10  agents or --
11      **Q.    Yes.**
12      A.    Okay.
13      **Q.    And thank you for clarifying.   That's the**
14  **same for Border Patrol agents, that they exercise**
15  **discretion in their actions as well; is that right?**
16      A.    It is.
17      **Q.    And that's important to a position of a**
18  **Border Patrol agent; is that right?**
19      A.    Yes, it is.
20      **Q.    You indicate in your declaration that CBP**

21 **is one of three departments within DHS that has**
22 **responsibility over the administration and**
23 **enforcement of the nation's immigration laws.   Is**
24 **that right?**
25      A.   Right.

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 51

1      Q.   And in making those decisions, they also
2 may be guided by guidelines or directives that they
3 receive; is that fair?
4      A.   They would be.   There's literally hundreds
5 of supervisors, and you don't want them making a
6 wide range of decisions.   You want at least some
7 parameters, but also keep in mind -- and I want to
8 refer back to the context of workload at the time.
9      Q.   Let's drill down now on the point about
10 releasing someone on an order of supervision or
11 releasing them to NGO's.
12          First of all, just for the record, what is
13 an NGO?
14      A.   Nongovernmental organization.
15      Q.   What are the circumstances in which CBP
16 would exercise discretion in deciding to release
17 someone on an order of supervision or to an NGO?
18      A.   It would be based upon is there room or is
19 there a location where – where they can be detained
20 longer? Border.
21      Patrol stations are really only designed to
22 hold someone for a very short period of time, you
23 know, hopefully usually less than 24 hours.   And ICE
24 would maintain the detention facilities whether
25 through – on their own or through contracts, and

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 56

1 checkpoints to either wave someone through; have
2 someone pull over and maybe some very cursory
3 questions asked; or have someone pull over, and
4 maybe as a result of those questions, continue
5 further review, including search of the vehicle.
6      Q.   And at those internal checkpoints, it
7 sounds like the agents are making determinations on
8 their own without having to get approval from a
9 supervisor in certain circumstances; is that right?
10      A.   That is correct.
11      Q.   And they're making -- strike that.
12          The agents are making those decisions based
13 on their exercise of discretion; is that right?

14      A.    That's correct.
15      Q.    **Based on their individualized assessment of**
16 **what a particular individual presents to them; is**
17 **that right?**
18      A.    Yes.   Based upon the behavior.   At many of
19 the checkpoints, there are people in vehicles that
20 are residents or -- or have businesses in the area.
21 The agent oftentimes then become familiar with them,
22 and so they're going to use their discretion.
23              MR. LOPEZ:   We've been going for about
24         an hour.   Can we take a five-minute break?
25              MR. BITTER:   Let's take a break right

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 57
1      now.
2         (Break from 11:03 to 11:09 a.m. was
3         taken in the proceedings.)
4         ***************************************
5              MR. BITTER:   Let's go back on the
6         record.
7 BY MR. BITTER:
8      Q.    Mr. Kerlikowske, before we broke, we were
9 talking about the efforts of CBP at internal
10 checkpoints in the United States; is that right?
11      A.    Yes.
12      Q.    **And you'd agree that agents at internal**
13 **checkpoints exercise discretion on a case-by-case**
14 **basis when people come to them; is that right?**
15      A.    Yes.
16      Q.    **And fair to say that that individualized**
17 **review is critical to the functioning of an internal**
18 **checkpoint; is that right?**
19      A.    Yes.
20      Q.    **It's also just inherent to that position of**
21 **the agent; is that right?**
22      A.    Yes.
23      Q.    **Are there factors that guide the agent in**
24 **deciding what to do when a person approaches them at**
25 **a checkpoint?**

**Page:** 58
1      A.    There are factors based upon behavior and
2 information and perhaps intelligence sources, but I
3 am not familiar with the specificity of those.
4 Also, of course, their experience.
5      Q.    And are officers trained on the type of
6 factors to take into account in those -- in those
7 encounters?
8      A.    I believe they are.
9      Q.    And just focusing on the internal
10 checkpoints for now, officers are acting on their
11 own, at least initially, in deciding how to handle a
12 person that comes to the checkpoint; is that right?

13    A.    They do.
14        Q.    And are there circumstances in which that
15  officer would bring in supervisory assistance?
16        A.    I'm sure there are, especially if an
17  apprehension or a rescue is made, if there's injury,
18  if there's a complaint being leveed, supervisors
19  would be involved in those.
20        Q.    Are you aware one way or another, though,
21  on the extent of circumstances when a supervisor has
22  to be involved?
23        A.    I'm not.
24        Q.    And just going back and focusing more on a
25  border crossing, the agents that are set up on the

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 62
1  released?
2        A.    I don't know.
3        Q.    And we talked a little bit about the extent
4  to which supervisors may exercise discretion after
5  the apprehension and after the biometrics; is that
6  right?
7        A.    Yes.
8        Q.    That type of discretion is being exercised
9  on a case-by-case basis; is that fair?
10        A.    It would be exercised based upon the
11  communication with ICE, based upon the other factors
12  that the supervisors would note.
13            So, again, it's less of a case-by-case and
14  more under parameters or guidelines.
15        Q.    I see.   Those -- those decisions that are
16  made in terms of releasing somebody may -- may be
17  different for one individual that they encountered
18  than a different individual; is that fair?
19        A.    I would say that that's not fair.   I would
20  say that the supervisors are given additional
21  authority and responsibility that the guidelines
22  apply more to groups; and, again, in the context of
23  time, resources, etc.
24        Q.    In Paragraph 9, you also talk about CBP
25  officers and agents regularly exercising discretion

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 65
1        A.    Yes.
2        Q.    Are there guidelines for agents exercising
3  their discretion on deciding who to encounter?
4        A.    I believe that quite a bit of this would be
5  dealt with at their initial training at the Border
6  Patrol Academy.
7        Q.    What kind of training do they receive at
8  least with respect to --
9        A.    You know --

10      Q.    -- who to encounter?
11      A.    I'm not familiar with the entire
12   curriculum.   But you're essentially taking someone
13   from the very beginning in a law enforcement career,
14   quite often.
15              And so it's all of the agent's safety and
16   procedures, rules.   There's quite a bit of law that
17   is provided by the attorneys from the Office of
18   General Counsel.   So a wide range of information and
19   activities in the academy.
20      Q.    And even with the guidelines and the
21   training, is it fair to say that officers still
22   retain discretion on the ground in deciding who they
23   encounter when it's outside the border?
24      A.    It is fair.
25      Q.    And those acts of discretion that they're

**Page:** 66
1   undertaking are being done on an individualized
2   basis depending on what a particular person presents
3   to them; is that fair?
4      A.    It's fair, with the caveat that, again,
5   information, guidance within parameters so that one
6   agent isn't making a totally arbitrary or different
7   decision in McAllen than one would be making in
8   Laredo.
9      Q.    So the guidelines guide them in some of
10   their decision making; is that fair?
11      A.    Yes.
12      Q.    And they still have some flexibility within
13   those guidelines to decide how to act when they
14   encounter somebody; is that right?
15      A.    Yes.
16      Q.    And we had talked a little bit before with
17   respect to checkpoints and the border; but just
18   focusing on encountering individuals, are officers
19   acting entirely on their own or are there
20   circumstances where they have to bring in
21   supervisory assistance?
22              MR. LOPEZ:   Objection; vague.
23              THE WITNESS:   Making those stops, again,
24        outside -- outside the border, they have
25        wide -- wide discretion, given their

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 72
1   Exhibit 1, you talked about the benefits from your
2   perspective of deferred action for CBP immigration
3   enforcement efforts; is that right?
4      A.    Yes.
5      Q.    You say that DACA allows CBP to more
6   efficiently identify individuals who are not a
7   priority for removal.   Is that right?
8      A.    Yes.

9    **Q.    And how, from your perspective, does DACA**
10   **do that?**
11       A.    So, essentially, given my experience at CBP
12   and my law enforcement experience, that people that
13   you have stopped and questioned, if you can
14   positively or if you can identify them through
15   documentation of some kind and if you can reduce, as
16   a result of your work, the risk or potential harm
17   that that person may pose to public safety, then
18   that would be helpful, given the vast workload that
19   you have.
20       **Q.    And what is the basis for that opinion?**
21       A.    So given that long experience that if
22   someone is in -- DACA eligible and is able to
23   articulate that information and hopefully has some
24   type of identification and maybe even further
25   additional information as to whether or not they are

**Page:** 73
1    within that, then that would be helpful in an agent
2    making a decision that this person is who he or she
3    says she is and that this person would be less of a
4    risk, given the amount of work that they do.
5        **Q.    It sounds like your opinion is based upon**
6    **your -- your law enforcement experience, including**
7    **your experience at CBP; is that right?**
8        A.    That's correct.
9        **Q.    Is your opinion based on anything else**
10   **beyond that?**
11       A.    No.
12       **Q.    What specifically in your past experience**
13   **have you seen in terms of programs or approaches**
14   **that allow you to efficiently identify individuals**
15   **who are not high priority targets?**
16       A.    Well, the fact that the Border Patrol
17   agents, as they gain experience in particular, and
18   oftentimes even a newer agent is paired with an
19   experienced agent, they become -- and especially
20   since all agents are fluent in Spanish -- they have
21   become incredibly and are incredibly good at
22   questioning people.
23              In the past, especially during the large
24   waves of people coming from Mexico, people would be
25   turned around and released incredibly quickly, even

**Page:** 78
1    placed in a more hazardous situation.
2              And also recognizing that the police
3    department had vastly more resources than the local
4    ICE office.
5        **Q.    Do you recall any instances from your time**
6    **in Seattle when police officers would encounter**
7    **somebody in the city and they could determine that**
8    **the Federal Government had made some determination**
9    **about that individual being a low priority?**
10       A.    I don't.

11     **Q.     Do you ever recall any interaction between**
12 **the city of Seattle and USCIS with respect to**
13 **immigrants in the United States?**
14     A.    I don't.
15     **Q.     What, from your perspective, is it about**
16 **DACA that allows CBP to more efficiently identify**
17 **individuals who are not a priority for removal?**
18               MR. LOPEZ:   Objection; asked and
19          answered.
20               THE WITNESS:   The parts of DACA, you
21          know, that -- that would occur, I think,
22          during the -- during the questioning by the
23          Border Patrol agent, you know, would be the
24          fact that this person you've identified has
25          lived or resided in the United States for,

**Page: 79**
1          more than likely, a significant number of
2          years given the criteria, and that you
3          can -- you would also be able to check
4          whether or not they had an outstanding
5          arrest warrant through the various data
6          systems.
7               If all of those things kind of fell into
8          line, you could categorize that person as
9          being not -- not no risk, but certainly less
10          of a risk.
11 BY MR. BITTER:
12     **Q.     Is it helpful from CBP's perspective that**
13 **DACA recipients would have provided biometrics?**
14     A.    Biometrics for identification are always
15 helpful in any circumstance.
16     **Q.     So it makes CBP's job more efficient if an**
17 **individual is photographed and fingerprints have**
18 **been taken?**
19     A.    If you can have that positive
20 identification -- and that would certainly apply
21 generally to law enforcement -- you know, the more
22 proofs of identity that you have, you know, the more
23 secure you feel, the more confidence you have that
24 that person is who they say they are.
25     **Q.     Those would be helpful to a CBP agent or**

**Page: 80**
1 **officer; is that fair?**
2     A.    It would be.
3     Q.     And that's true for anyone, not just a DACA
4 recipient; is that right?
5               MR. LOPEZ:   Objection; vague.
6               THE WITNESS:   The more -- the more
7          confidence you have and the forms of
8          identification, you know, the -- that's
9          helpful.
10 BY MR. BITTER:
11     Q.     Is that opinion limited to DACA recipients
12 or any individuals with whom there would be

13 **identified information for officers to see?**
14    A.   I would say it's a -- it is broadly
15 interpreted that that level of confidence is
16 helpful.
17    **Q.    From your position at CBP, would you**
18 **support requiring everyone in the U.S. to be**
19 **fingerprinted?**
20    A.   I think that's a hypothetical that probably
21 was far outside my pay grade.
22    **Q.    Fair enough.   With respect to DACA and the**
23 **provision of DACA status, there's no dispute that**
24 **CBP is not making the initial determination about a**
25 **DACA recipient being a low priority for removal; is**

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 84
1    **Q.    In Paragraph 14 of your declaration, you**
2 **indicate that when a DACA recipient is able to**
3 **provide documentation or a work authorization**
4 **document, a CBP agent can more efficiently verify**
5 **the identity of the individual as well as the**
6 **authenticity of the documentation provided.   Is that**
7 **right?**
8    A.   Yeah; that would be a higher level of
9 confidence that you would have if that documentation
10 was present.
11    **Q.    It seems like what's critical to your**
12 **opinion there is the fact that the individual would**
13 **be able to provide some documentation to the CBP**
14 **agent on the ground; is that fair?**
15    A.   I'd say it's more fair to say that that
16 would be in the -- in a best case scenario; but it
17 doesn't mean that somebody in the process of DACA
18 would have -- that doesn't have those could not
19 convince the agent that they are in that process.
20    **Q.    And you may have -- you may have just led**
21 **to my next question, which is it's fair to say that**
22 **in some instances, a CBP officer may choose to**
23 **conduct further inquiry even if the person presents**
24 **themselves as receiving DACA; is that right?**
25    A.   They could, certainly.

Jul 13, 2018 Kerlikowske, R. Gil   07-03-2018_AMICUS

**Page:** 87
1    A.   There was a time I knew that term, but it
2 is escaping me.
3    **Q.    You indicate in your declaration that DACA**
4 **allows individual agents to better concentrate their**
5 **limited enforcement efforts on those individuals who**
6 **do pose a threat to national security for security**
7 **and public safety; is that right?**

8      A.    Yes.
9      **Q.    How does DACA do that, from your**
10 **perspective?**
11           MR. LOPEZ:   Objection; asked and
12           answered.
13           THE WITNESS:   And so if a -- if the
14           person is able to provide that level of
15           proof to the agent, that they are DACA
16           eligible, that they're in the DACA process,
17           etc., and there's no further information in
18           that triage, they would be less of -- less
19           of a risk and less of a threat than perhaps
20           where the agent or agents would spend time
21           with others.
22 BY MR. BITTER:
23      **Q.    So it sounds like this is an extension of**
24 **your other opinion, which is that DACA allows for**
25 **agents to efficiently identify individuals, and the**

**Page:** 88
1 **result of that is they can focus their efforts on**
2 **higher priority targets; is that right?**
3      A.    That's correct.
4      **Q.    In terms of the impact of DACA on allowing**
5 **agents to concentrate their enforcement efforts, how**
6 **do you come to that opinion?**
7      A.    I would come to the opinion from the years
8 of experience in law enforcement that confidence in
9 the identification of an individual and the
10 responses to questions that help you reduce their --
11 the level of risk or threat that they pose either to
12 the individual law enforcement person or -- or to
13 the community, that those types of things are
14 helpful given the vast number of people that you're
15 going to be dealing with.
16      **Q.    You pointed there to your background**
17 **experience; is that fair?**
18      A.    Yes.
19      **Q.    Both at CBP and before CBP; is that right?**
20      A.    Yes.
21      **Q.    Anything else beyond those experiences that**
22 **lead you to your conclusions about the impact of**
23 **DACA on being able to concentrate enforcement**
24 **efforts?**
25      A.    No.

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Page _____   Line _____   Reason for change:

Case: State of Texas, et al. vs. United States of America, et al.

Witness: Gil Kerlikowske

Gil Kerlikowske

************************

STATE OF _Mussachusetts_

COUNTY OF _Dukes_

Subscribed and sworn to before me this _16_ day of _July_____, 20 _18_

_Rebecca Tattersall_
Notary Public

My Commission Expires: _6/27/2019_

(Seal)

REBECCA J. TATTERSALL
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
June 27, 2019

1                    C E R T I F I C A T E

2

3    COMMONWEALTH OF MASSACHUSETTS
     Norfolk, SS.
4

5
             I, DAWN MACK-BOADEN, RPR, and a Notary
6    Public duly qualified in and for the Commonwealth of
     Massachusetts, do hereby certify that:
7
             R. GIL KERLIKOWSKE, the witness whose
8    testimony is hereinbefore set forth, was duly sworn
     by me, and that such testimony is a true and correct
9    transcription of my original stenographic notes
     taken in the forgoing matter, to the best of my
10   knowledge, skill and ability.

11           I further certify that I am neither
     attorney or counsel for, nor related to or employed
12   by any of the parties to the action in which this
     deposition is taken; and furthermore, that I am not
13   a relative or employee of any attorney or counsel
     employed by the parties thereto or financially
14   interested in the action.

15           IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my Notarial seal this 6th day of
16   July, 2018.

17                    _Dawn Mack-Boaden_

18
                     Dawn Mack-Boaden, RPR
19                   Notary Public

20

21   My Commission Expires:  August 21, 2020

22

23   THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES
     NOT APPLY TO ANY REPRODUCTION AND/OR DISTRIBUTION OF
24   THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT
     CONTROL AND/OR SUPERVISION OF THE CERTIFYING COURT
25   REPORTER.

# DEF-INTERV.

# EX. 149

1            UNITED STATES DISTRICT COURT
                      FOR THE
2            SOUTHERN DISTRICT OF TEXAS

3   STATE OF TEXAS, et al.      :
    Plaintiff                   :
4                               :
    vs.                         :   C.A. NO. 1:18-cv-00068
5                               :
    UNITED STATES OF AMERICA,   :
6   et al.                      :
    Defendant                   :

7

8

9

10              ORAL DEPOSITION OF
                 SARAH R. SALDANA
11               JUNE 29, 2018
                 VOLUME 1 OF 1
12

13

14

15          ORAL DEPOSITION OF SARAH R. SALDANA,

16   produced as a witness at the instance of the Plaintiffs,

17   and duly sworn, was taken in the above-styled and

18   numbered cause on June 29, 2018, from 9:01 to

19   11:34 a.m., before Vonda P. Treat, CSR No. 2584, in and

20   for the State of Texas, reported by machine shorthand,

21   at the offices of the Texas Attorney General, 1412 Main

22   Street, Suite 810, Dallas, Texas, pursuant to the

23   Federal Rules of Civil Procedure and the provisions as

24   stated on the record or attached hereto.

25

**For Depo Excerpts**

**Transcripts**

📄 Jun 29, 2018 Saldana, Sarah (6_29_2018)

**Page:** 49
1     A.     When you say potentially, I'm not sure I
2  understand.   Can you try to restate that question?
3        **Q.     Yeah.**
4                    **Are immigration benefits provided by the**
5  **receiving country pull factors?**
6                    MS. MORENO:   Objection, vague.
7     A.    In general, they could be.
8      **Q.    How so?**
9     A.    Because you get an immigration benefit.
10       **Q.    Okay.   What about DACA specifically?   In your**
11  **opinion, is DACA a pull factor for immigration?**
12      A.    My opinion, no.
13      **Q.    Why not?**
14      A.    Because DACA requires someone to come out of
15  the shadows and declare themselves, so to speak; and
16  someone who is coming into the country illegally
17  generally doesn't want to do that.   That's why they're
18  coming into the country illegally; they don't want to
19  come out of the shadows.
20                   And I'll also tell you that we had the
21  Department of Homeland Security -- we met weekly with
22  the secretary; and we had briefings pretty often on
23  push-and-pull factors of people coming into the country,
24  why migration patterns were there the way they were.
25  And I never once heard anything about DACA being a

**Page:** 50
1  push-or-pull factor --
2      **Q.    Okay.   All right.**
3      A.    -- from people who know better about those
4  patterns and statistics.
5      **Q.    Sure.**
6                    **Okay.   So what I understand is that part**
7  **of ICE's mission, while you were director, is to -- or**
8  **was to remove certain people who are here unlawfully.**
9     A.    Yes.
10      **Q.    But ICE, of course, couldn't remove everybody**
11  **who was here unlawfully.   Right?**
12     A.    That's right.
13      **Q.    So what happened to the people who were here**
14  **unlawfully that ICE could not remove?**
15                   MS. MORENO:   Objection, vague.   Objection,
16  calls for speculation.
17     A.    What happened to the people?
18      **Q.    Where did they go?**
19                   MS. MORENO:   Same objection.
20     A.    Heck if I know.   I mean, I'm sorry.   I'm not
21  trying to be too flip.

22      Q.    Yeah, yeah, yeah.   No.   And I think that's a
23  fair answer.
24              But it's also fair to say that the people
25  who are here unlawfully that do not get removed, they

Jun 29, 2018 Saldana, Sarah (6_29_2018)

**Page:** 68
1  Women being subjected to violence, for example.   There's
2  specific deferred action for them.   So could that person
3  meet both criteria, and so they -- they could use that
4  as opposed to DACA?   That's possible.   But, you know,
5  I'd have to speculate to say specifically whether that's
6  happened.
7      **Q.    Do you know of any deferred-action programs**
8  **that grant deferred action without allowing that**
9  **individual to seek work authorization?**
10      A.    Specific cases, no; but in theory, it can
11  happen.
12      **Q.    So somebody theoretically can be granted**
13  **deferred action without the ability to get work**
14  **authorization.**
15      A.    Yes.
16      **Q.    Okay.**
17      A.    Even within DACA.
18      **Q.    Okay.   Do you know whether that has ever**
19  **happened to somebody who has received DACA?**
20      A.    I don't know the numbers or whether that's
21  happened or not.
22      **Q.    Okay.   Paragraph 18 is talking about some of**
23  **the law enforcement efficiencies.**
24      A.    Yes.
25      **Q.    And one thing you mention is fingerprinting.**

**Page:** 69
1      A.    Yes.
2      **Q.    And so, in your mind, because DACA recipients**
3  **have to get fingerprinted, that can lead to more law**
4  **enforcement efficiency.**
5      A.    Yes.
6      **Q.    How so?**
7      A.    Because now you've created a record; and when
8  you encounter them later, you immediately have that
9  information.   And through the fingerprinting, you have
10  their identification; you have their criminal history.
11  And if they hadn't had that, they'd still be in the
12  shadows.   We might not necessarily know they exist.
13      **Q.    Okay.   So fingerprinting leads to law**
14  **enforcement efficiency.**
15      A.    Yes.
16      **Q.    Would you be in favor of requiring every single**
17  **individual in the country to be fingerprinted?**
18      A.    Citizens?   Aliens?
19      **Q.    Yes, everybody.**
20      A.    I love fingerprints.

21    **Q.   Okay.   So is that a yes?**
22    A.   Well, it's kind of a crazy idea --
23    **Q.   Sure.**
24    A.   -- because we don't have the money to do that,
25   or I'm not even sure how we could go about it.

📄 Jun 29, 2018 Saldana, Sarah (6_29_2018)


**Page:** 71
1    **Q.   Right.**
2    A.   And I know that at least on a few occasions
3   that has happened.   I can't give you numbers.
4    **Q.   Sure.   Fair enough.**
5         **If we look at Paragraph 19, the second**
6   **sentence talks about documentary proof.   Do you know**
7   **whether DACA requires DACA recipients to keep**
8   **documentary proof on his or her person?**
9    A.   I'm sorry.   CIS would better be able to answer
10   that question.   I don't know.
11    **Q.   But the point you're making here is that if the**
12   **DACA recipient did have documentary proof on his or her**
13   **person, that, again, would lead to law enforcement**
14   **efficiency.**
15    A.   Yes.   We can go on to the next case.
16    **Q.   What do you mean?**
17    A.   Well, if they have proof that they have
18   deferred action against them for a period of time, I can
19   go on to another case rather than try to enforce
20   something against them.
21    **Q.   Perfect.   I understand.   Thank you.   I thought**
22   **you were asking me to go on to the next case.**
23         MS. MORENO:   I understood what you were
24   thinking.
25    **Q.   I think there will be a next case after this**

📄 Jun 29, 2018 Saldana, Sarah (6_29_2018)


**Page:** 75
1   particular starting with "DACA further enhances."   Do
2   you see that?
3    A.   Are we still on Paragraph 20?
4    **Q.   21.**
5    A.   I'm sorry.   Further enhances, yes.
6    **Q.   So it reads:   DACA further enhances the**
7   **willingness of undocumented crime victims and witnesses**
8   **to come forward and cooperate with their local law**
9   **enforcement agencies.   Did I read that right?**
10    A.   Yes.
11    **Q.   Okay.   What is your basis for that statement?**
12    A.   My experience being around our investigators
13   and enforcement agents in recounting this to me while I
14   was ICE director, but my personal experience as a
15   prosecutor and a United States Attorney, as a prosecutor

16 in particular, because I saw many instances of
17 undocumented victims -- undocumented crime victims being
18 very reluctant to even talk to us.   Perhaps they might
19 meet with us, and we would try to not scare them away;
20 but some of them just really did not want to come
21 forward.
22              So I have personal experience in having
23 witnessed this.   This is a big problem, particularly in
24 human trafficking cases, which I did a lot of.   You
25 know, it's just tough.

📄 Jun 29, 2018 Saldana, Sarah (6_29_2018)

**Page: 77**
1        Q.   Okay.   And other than that one individual, you
2 can't think of anybody else.
3        A.   No.   No, not off the top of my head right now.
4        Q.   Okay.   If we look at Paragraph 22 --
5        A.   Yes.
6        Q.   -- the second sentence says:   An injunction
7 also undermines the effectiveness of community policing
8 in various jurisdictions.
9        A.   Yes.
10        Q.   Which jurisdictions are you referring to?
11        A.   Well, from my personal knowledge, the 100
12 counties in the Northern District of Texas.   And from
13 being recounted to me -- I can't tell you specifically.
14 I know it would be California, New York, Illinois.   But
15 other states, also, that I can't tell you right now
16 under oath specifically that I recall, that I have
17 been -- it's been recounted to me by agents and local
18 law enforcement officials that they have -- they would
19 have difficulty in getting people to step up if it
20 weren't for that protection.
21        Q.   Okay.   So when you mentioned the Northern
22 District of Texas, that's from your time as an AUSA
23 prosecutor.
24        A.   And as the U.S. Attorney.
25        Q.   And as the U.S. Attorney.   Okay.

**Page: 78**
1              And then the reports you received while
2 you were the director of ICE, about how many people gave
3 you that -- that report?
4        A.   I -- I -- I would --
5        Q.   Just an estimate.
6        A.   Gosh.   I went to 60 cities in this country, and
7 very often this came up.   Gosh, you want me to pull a
8 number out of the air?   I really can't remember
9 exactly.   It would have been many.
10        Q.   Okay.
11        A.   So . . .
12        Q.   Can't --
13        A.   I can't.   It's not over 100.   It's not over
14 100.   Probably over 50 and somewhere in between.

15      **Q.    Okay.   Can you think of any person in**
16 **particular who told you that?**
17      A.    No, I can't.   If you gave me a little time and
18 my records, I could probably recall; but not right now.
19      **Q.    I already asked you this, but you never worked**
20 **for USCIS.**
21      A.    No.
22      **Q.    So some of these questions may go quickly.**
23      A.    Okay.
24      **Q.    Have you personally ever adjudicated an**
25 **application for DACA?**

Sarah Saldana                                              June 29, 2018
                                                              Page 99

```
 1   of record:
           FOR THE PLAINTIFFS:  Mr. Todd Lawrence Disher;
 2         FOR THE DEFENDANT:  Mr. Aaron Goldsmith;
           FOR THE DEFENDANT INTERVENORS:  Ms. Celina Moreno;
 3         FOR THE STATE OF NEW JERSEY DEFENDANT INTERVENOR:
     Mr. Brian DeVito;
 4             That a copy of this certificate was served on

 5   all parties shown herein.

 6             I further certify that I am neither counsel

 7   for, related to, nor employed by any of the parties or

 8   attorneys in the action in which this proceeding was

 9   taken, and further that I am not financially or

10   otherwise interested in the outcome of the action.

11             Certified to by me on this _____ day of

12   _____ 2018.         Vonda P. Treat

13

14                          _____
                            Vonda P. Treat, CSR No. 2584
15                          Expiration Date:  12-31-18
                            Firm Registration No. 631
16                          Kim Tindall & Associates, LLC
                            16414 San Pedro, Suite 900
17                          San Antonio, Texas  78232
                            Phone 210-697-3400
18                          Fax 210-697-3408

19

20

21

22

23

24

25
```

# DEF-INTERV. EX. 150

# PENDING

# DEF-INTERV. EX. 151

# PENDING

# DEF-INTERV.

# EX. 152



**United States Government Accountability Office**

## Testimony

### Before the Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, U.S. Senate

For Release on Delivery
Expected at 10 a.m. ET
Thursday, April 26, 2018

# UNACCOMPANIED CHILDREN

# DHS and HHS Have Taken Steps to Improve Transfers and Monitoring of Care, but Actions Still Needed

Statement of Kathryn A. Larin, Director
Education, Workforce, and Income Security



Highlights of GAO-18-506T, a testimony before the Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, U.S. Senate

**April 26, 2018**

# UNACCOMPANIED CHILDREN

## DHS and HHS Have Taken Steps to Improve Transfers and Monitoring of Care, but Actions Still Needed

## Why GAO Did This Study

ORR is responsible for coordinating and implementing the care and placement of unaccompanied children—that is, children who enter the United States with no lawful immigration status. The number of these children taken into custody by DHS and placed in ORR's care rose from about 6,600 in fiscal year 2011 to nearly 57,500 in fiscal year 2014, many coming from Central America. Though declining somewhat, the number has remained well above historical levels. In fiscal year 2017, DHS referred 40,810 such children to ORR.

This testimony discusses efforts by DHS and HHS to improve the placement and care of unaccompanied children in four key areas: (1) the process by which unaccompanied children are transferred from DHS to ORR custody; (2) how ORR monitors the care of unaccompanied children in its custody; (3) how ORR identifies and screens sponsors before children are transferred to their care; and (4) what is known about services these children receive after they leave ORR custody.

This testimony is based primarily on the findings from two prior GAO reports: a 2015 report on actions needed to ensure unaccompanied children receive required care in DHS custody; and a 2016 report on further actions HHS could take to monitor their care. This testimony also includes updated information on the progress agencies have made in implementing GAO's recommendations, and more recent statistics from publicly available sources.

View GAO-18-506T. For more information, contact Kathryn A. Larin at (202) 512-7215 or larink@gao.gov.

## What GAO Found

The Department of Homeland Security (DHS) and Department of Health and Human Services (HHS) have agreed to establish a joint collaborative process for the referral and placement of unaccompanied children, but the process has not yet been implemented. In 2015, GAO reported that the interagency process for referring unaccompanied children from DHS to HHS's Office of Refugee Resettlement (ORR) shelters was inefficient and vulnerable to error, and that each agency's role and responsibilities were unclear. GAO recommended that DHS and HHS jointly develop and implement an interagency process with clearly defined roles and responsibilities, as well as procedures to disseminate placement decisions, for all agencies involved. In February 2018, HHS officials told GAO that the agency was reviewing a draft of the DHS-HHS joint concept of operations.

ORR has reported taking steps to improve monitoring of grantees that provided services to unaccompanied children. In 2016, GAO reported that ORR relied on grantees to document and annually report on the care they provide for unaccompanied children, such as housing and educational, medical, and therapeutic services, but documents were often missing and ORR was not able to complete all of its planned visits. GAO recommended that ORR review its monitoring program to ensure that onsite visits are conducted in a timely manner, that case files are systematically reviewed, and that grantees properly document the services they provide. Since 2016, ORR has reported that its grantee monitoring has improved, with more timely completion of on-site monitoring of all its grantees.

ORR relies on grantees to identify and screen sponsors before placing children with them. In 2016, GAO reported that most unaccompanied children from certain Central American countries were released to a parent or other relative, in accordance with ORR policy (see figure).

**Sponsors' Relationship to Unaccompanied Children from El Salvador, Guatemala, and Honduras (Released from Custody from January 7, 2014, through April 17, 2015)**



Source: GAO analysis of Office of Refugee Resettlement data.  |  GAO-18-506T

Note: Percentages do not sum to 100 due to rounding.

In 2016, GAO reported that limited information was available on the services provided to children after they leave ORR care, and recommended that HHS develop processes to ensure its post-release activities provide reliable and useful summary data. Subsequent data from ORR indicate that the percentage of children receiving these services has increased, from about 10 percent in fiscal year 2014, to about 32 percent in fiscal year 2017. Also, in August 2017, ORR officials said that new case reporting requirements had been added to ORR's policy guide; however, further steps are needed to ensure the systematic collection of these data to provide useful information on post-release services across agencies, as GAO recommended.

Chairman Portman, Ranking Member Carper, and Members of the Subcommittee:

Thank you for the opportunity to discuss efforts by the Department of Homeland Security (DHS) and the Department of Health and Human Services (HHS) to improve the process of placing and providing care for unaccompanied children—that is, children who enter the United States with no lawful immigration status.[1] The number of unaccompanied children apprehended by DHS officials and subsequently placed in the care of HHS's Office of Refugee Resettlement (ORR) increased from nearly 6,600 in fiscal year 2011 to nearly 57,500 in fiscal year 2014. In particular, the number of unaccompanied children from three countries—El Salvador, Guatemala, and Honduras—increased dramatically over this time.[2] While the number of children DHS placed in ORR's care declined through much of fiscal year 2015, it subsequently began increasing again and has remained well above historical levels. More recent data from the U.S. Border Patrol suggest that DHS apprehended nearly 60,000 unaccompanied children at the southwest border in fiscal year 2016 and more than 41,000 in fiscal year 2017.[3] Also, according to ORR data, DHS referred 40,810 unaccompanied children to ORR in fiscal year 2017,[4] and in the first 6 months of fiscal year 2018, DHS apprehended nearly 22,000 unaccompanied children.

---

[1]In this statement, we refer to unaccompanied alien children as unaccompanied children because this is the term used by the Department of Health and Human Services (HHS). The term "unaccompanied alien child" refers to a child who (1) has no lawful immigration status in the United States, (2) has not attained 18 years of age, and (3) has no parent or legal guardian in the United States or no parent or legal guardian in the United States available to provide care and physical custody. 6 U.S.C. § 279(g)(2). Children traveling with related adults other than a parent or legal guardian—such as a grandparent or sibling—are still deemed unaccompanied. While these children may have parents or guardians already in the United States, if the parent or guardian is unable to provide immediate care, the child is considered unaccompanied.

[2]For information on the causes of migration of unaccompanied children from these three countries, see GAO, *Central America: Information on Migration of Unaccompanied Children from El Salvador, Guatemala, and Honduras*, GAO-15-362 (Washington, D.C.: Feb. 27, 2015). For a review of U.S. efforts to address the causes of migration, see GAO, *Unaccompanied Alien Children: Improved Evaluation Efforts Could Enhance Agency Programs to Reduce Migration from Central America*, GAO-16-163T (Washington, D.C.: Oct. 21, 2015).

[3]Data publicly available from U.S. Customs and Border Protection at: https://www.cbp.gov/newsroom/stats/usbp-sw-border-apprehensions-fy2017.

[4]Data publicly available from the Office of Refugee Resettlement at: https://www.acf.hhs.gov/orr/about/ucs/facts-and-data.

My statement today will focus on efforts made by DHS and HHS to improve the placement and care of unaccompanied children in four key areas: (1) the process by which unaccompanied children are transferred from DHS to ORR custody; (2) how ORR monitors the care of unaccompanied children in its custody; (3) how ORR identifies and screens sponsors before children are transferred to their care; and (4) what is known about services and the status of removal proceedings for children after they leave ORR custody. My statement is based primarily on the findings from two prior GAO reports: a 2015 report on actions needed to ensure unaccompanied children receive required care in DHS custody;[5] and a 2016 report on further actions HHS could take to monitor their care.[6] For detailed descriptions of the methodologies used, see our prior reports. Additionally, we obtained and analyzed information and documentation on actions DHS and HHS have taken to address our recommendations in these prior two reports. The work upon which this statement is based was conducted in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provided a reasonable basis for our findings and conclusions based on our audit objectives.

## Background

Under the Homeland Security Act of 2002, responsibility for the apprehension, temporary detention, transfer, and repatriation of unaccompanied children is delegated to DHS;[7] and responsibility for coordinating and implementing the care and placement of unaccompanied children is delegated HHS's Office of Refugee Resettlement (ORR).[8] U.S. Customs and Border Protection's U.S. Border Patrol and Office of Field Operations (OFO), as well as U.S. Immigration and Customs Enforcement (ICE), apprehend, process, temporarily detain,

---

[5]GAO, *Unaccompanied Alien Children: Actions Needed to Ensure Children Receive Required Care in DHS Custody*, GAO-15-521 (Washington, D.C.: July 14, 2015)

[6]GAO, *Unaccompanied Children: HHS Can Take Further Actions to Monitor Their Care*, GAO-16-180 (Washington, D.C.: February 5, 2016)

[7]Pub. L. No. 107-296, tit. IV, subtit. D, § 441, 116 Stat. 2135, 2192 (codified at 6 U.S.C. § 251). Repatriation is defined as returning unaccompanied children to their country of nationality or last habitual residence.

[8]Pub. L. No. 107-296, tit. IV, subtit. D, § 462, 116 Stat. 2135, 2202 (codified at 6 U.S.C. § 279).

and care for unaccompanied children who enter the United States with no lawful immigration status.[9] ICE's Office of Enforcement and Removal Operations is generally responsible for transferring unaccompanied children, as appropriate, to ORR, or repatriating them to their countries of nationality or last habitual residence. Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (Trafficking Victims Protection Reauthorization Act), unaccompanied children in the custody of any federal department or agency, including DHS, must be transferred to ORR within 72 hours after determining that they are unaccompanied children, except in exceptional circumstances.[10]

ORR has cooperative agreements with residential care providers to house and care for unaccompanied children while they are in ORR custody. The aim is to provide housing and care in the least restrictive environment commensurate with the children's safety and emotional and physical needs. In addition, these residential care providers, referred to here as grantees, are also responsible for identifying and assessing the suitability of potential sponsors—generally a parent or other relative in the country—who can care for the child after they leave ORR custody.[11] To do this, grantees collect information from potential sponsors and run various background checks. In cases in which there are questions about the ability of the sponsor to meet the child's needs and provide a safe environment, and for children included in specified categories under the Trafficking Victims Protection Reauthorization Act, a home study is also conducted. In certain circumstances ORR may also arrange for post-release services for the child.

Release to a sponsor does not grant unaccompanied children legal immigration status. Children are scheduled for removal proceedings in

---

[9]Border Patrol apprehends unaccompanied children at U.S. borders between ports of entry, and OFO encounters these children at ports of entry. ICE apprehends unaccompanied children within the United States at locations other than borders or ports of entry. According to U.S. Customs and Border Protection officials, OFO encounters unaccompanied children instead of apprehending them because the children have not technically entered the United States at ports of entry until OFO officers have processed them. However, for the purposes of this statement, we use the term "apprehend" to include actions taken by all DHS entities responsible for unaccompanied children—Border Patrol, OFO, and ICE.

[10]8 U.S.C § 1232(b)(3).

[11]Qualified sponsors are adults who are suitable to provide for the child's physical and mental well-being and have not engaged in any activity that would indicate a potential risk to the child.

immigration courts to determine whether they will be ordered removed from the United States or granted immigration relief. There are several types of immigration relief that may be available to these children, for example, asylum or Special Immigrant Juvenile status.[12]

## A Joint Collaborative Process for the Referral and Placement of Unaccompanied Children Has Not Yet Been Implemented

In response to a recommendation in our 2015 report, DHS and HHS have agreed to establish a joint collaborative process for the referral and transfer of unaccompanied children from DHS to ORR shelters, but the process has not yet been implemented. It will be important to ensure that, once implemented, this process has clearly defined roles and responsibilities for each agency, as we recommended.

In 2015, we reported that the interagency process to refer unaccompanied children from DHS to ORR shelters was inefficient and vulnerable to error.[13] For example, as of April 2015, DHS and ORR relied on e-mail communication and manual data entry to coordinate the transfer of unaccompanied children to shelters because each agency used its own data system and these systems did not automatically communicate information with one another. These modes of communication made the referral and placement process vulnerable to error and possible delay in the transfer of these children from DHS to ORR. Each DHS component also submitted shelter requests to ORR in a different way. We reported that the roles and responsibilities of DHS components were not consistent during the referral and placement process, and DHS points of contact for ORR varied across Border Patrol sectors and ICE and OFO areas of operation. Further, we noted that the inefficiencies in the placement process for unaccompanied children had

---

[12]Asylum may be granted to people who have suffered past persecution or have a well-founded fear they will suffer future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1)(B). In addition, eligible unaccompanied children may petition for Special Immigrant Juvenile status, which is designed to help foreign children who have been abused, abandoned, or neglected obtain a green card. To be eligible, a state court must decide that a child is a dependent of the court or legally place the child with a state agency, a private agency, or a private person; that it is not in the best interests of the child to return to his or her home country; and that the child cannot be reunited with a parent due to abuse, neglect, abandonment, or a similar basis found under state law. 8 U.S.C. § 1101(a)(27)(J), 8 C.F.R. § 204.11. Unaccompanied children also may be eligible for other types of immigration relief. For example, "T nonimmigrant status" allows victims of severe forms of human trafficking to remain in the United States to assist in an investigation or prosecution of such cases.

[13]GAO-15-521.

been a long-standing challenge for DHS and ORR. Therefore, we recommended that DHS and HHS jointly develop and implement a documented interagency process with clearly defined roles and responsibilities, as well as procedures to disseminate placement decisions, for all agencies involved in referring and placing unaccompanied children in ORR shelters.

The agencies agreed with this recommendation and in response, DHS and HHS finalized a memorandum of agreement (MOA) in February 2016. The MOA provides a framework for coordinating each agency's responsibilities and establishing procedures, shared goals, and interagency cooperation with respect to unaccompanied children. The MOA states that DHS and HHS agree to establish a joint concept of operations. According to the MOA, this joint concept is to include, among other things, standard protocols for consistent interagency cooperation on the care, processing, and transport of these children during both steady state operations, as well as in the event the number of unaccompanied children exceeds standard capabilities and existing resources. In February 2018, HHS officials told us that the agency is reviewing a draft of the DHS-HHS joint concept of operations. To fully address our recommendation, DHS and HHS will need to ensure that this joint concept, once finalized and implemented, includes a documented interagency process with clearly defined roles and responsibilities, as well as procedures to disseminate placement decisions, as we recommended.

# ORR Reports Taking Steps to Improve Monitoring of Grantees' Provision of Services

In response to a recommendation in our 2016 report, ORR reported taking steps to improve monitoring of its grantees, including reviewing its monitoring protocols and ensuring all grantees were monitored over a 2-year period. These steps should increase the timeliness, completeness, and consistency of ORR's monitoring; however, ORR needs to ensure that its updated processes and protocols are fully implemented and in use.

In 2016, we reported that ORR relies on grantees to provide care for unaccompanied children, such as housing and educational, medical, and therapeutic services, and to document in children's case files the services they provide.[14] Grantees are required to provide these services and to

---

[14]For a more detailed discussion of the care and services provided to children by grantees, see our 2016 report, GAO-16-180.

document that they did so. However, in our 2016 report, we found that documents—such as legal presentation acknowledgment forms,[15] records of group counseling sessions, or clinical progress notes—were often missing from the 27 randomly selected case files we reviewed. In addition, we identified several cases in which forms that were present in the files were not signed or dated. We found that although ORR used its web-based data system to track some information about the services children received, and grantees reported on the services they provided in their annual reports, the documents contained in case files were the primary source of information about the services provided to individual children. We concluded that without including all of the documents in case files, it was difficult for ORR to verify that required services were actually provided in accordance with ORR policy and cooperative agreements.

In our 2016 report, we noted that ORR's most comprehensive monitoring of grantees occurred during on-site visits, but that onsite visits to facilities were inconsistent. Prior to fiscal year 2014, project officers were supposed to conduct on-site monitoring of facilities at least once a year. However, we found in our review of agency data that many facilities had not received a monitoring visit for several years. For example, ORR had not visited 15 facilities for as many as 7 years. In 2014, ORR revised its on-site monitoring program to ensure better coverage of grantees and implemented a biennial on-site monitoring schedule. Nevertheless, ORR did not meet its goal to visit all of its facilities by the end of fiscal year 2015, citing lack of resources. In our 2016 report, we concluded that without consistently monitoring its grantees, ORR cannot know whether they were complying with their agreements and that children were receiving needed services. We recommended that the Secretary of HHS direct ORR to review its monitoring program to ensure that onsite visits are conducted in a timely manner, case files are systematically reviewed as part of or separate from onsite visits, and that grantees properly document the services they provide to children. HHS concurred with this recommendation and stated that it had created a new monitoring initiative workgroup to examine opportunities for further improvement.

Since our 2016 report, ORR has reported achieving more timely and complete monitoring. In May 2017, ORR issued a summary of its fiscal year 2016 monitoring showing that monitoring of all of its 88 grantees was

---

[15]Our 2016 report noted that ORR contracted with nonprofit organizations to provide Know Your Rights presentations, which provided basic legal information to children. See GAO-16-180.

completed over the 2-year period of fiscal years 2015 and 2016. As a result of this monitoring, the agency reported issuing 786 corrective actions, almost all of which were closed within 90 days.[16] The most common corrective actions were related to incomplete case file documentation and inconsistent implementation of some of ORR policies and procedures, according to ORR. Subsequently, for the 2-year period of fiscal years 2017 and 2018, ORR reported that as of April 2018, it had completed monitoring of 65 grantees and planned to complete monitoring of all of its remaining 39 grantees by the end of the fiscal year.[17]

In addition, ORR has reported that it is taking steps to ensure its monitoring processes and protocols are more systematic and uniform. During 2016, ORR announced a new Monitoring Initiative with the goal of establishing a comprehensive system of monitoring for all ORR-funded programs; HHS reported that it had conducted three trainings for ORR Project Officers and was in the process of adding two to three additional Project Officer positions to the unaccompanied children program. In April 2018, HHS reported that ORR was in the process of reviewing and revising its monitoring tools, and planned to have final versions of these tools completed by the end of fiscal year 2018. Once ORR completes its review of its monitoring tools and fully implements its revised protocols, these steps, along with its more timely monitoring, should help ensure an improved monitoring program.

## ORR Relies on Grantees to Identify and Screen Sponsors for Unaccompanied Children

In 2016, we reported that ORR grantees that provide day-to-day care of unaccompanied children are responsible for identifying and screening sponsors prior to releasing children to them. During children's initial intake process, case managers ask them about potential sponsors with whom they hope to reunite. Within 24 hours of identifying potential sponsors, case managers are required to send them a Family Reunification Application to complete. The application includes questions about the sponsor and other people living in the sponsor's home, including whether anyone in the household has a contagious disease or criminal history. Additionally, the application asks for information about who will care for

---

[16]ORR reported that as of May 1, 2017, all corrective actions resulting from its fiscal year 2016 monitoring were closed.

[17]According to HHS officials, the number of grantees fluctuates throughout the fiscal year. As of April 2018, ORR reported funding 102 grantees.

the child if the sponsor is required to leave the United States or becomes unable to provide care.[18]

Grantees also ask potential sponsors to provide documents to establish their identity and relationship to the child, and they conduct background checks. The types of background checks conducted depend on the sponsor's relationship to the child (see table 1). In certain circumstances prescribed by the Trafficking Victims Protection Reauthorization Act or ORR policy, a home study must also be conducted before the child is released to the sponsor.[19] Additionally, other household members are also subjected to background checks in certain situations, such as when a documented risk to the safety of the unaccompanied child is identified, the child is especially vulnerable, and/or the case is being referred for a mandatory home study.

---

[18]ORR does not require that a sponsor be a citizen or lawful permanent resident of the United States.

[19]The Trafficking Victims Protection Reauthorization Act requires that before placing a child with a sponsor, HHS must first determine whether a home study is necessary. The Act requires a home study be conducted for: a child who is a victim of a severe form of trafficking; a special needs child with a disability; a child who has been a victim of physical or sexual abuse that has significantly harmed or threatened the child's health or welfare; or a child whose proposed sponsor clearly presents a risk of abuse, maltreatment, exploitation, or trafficking to the child based on all available objective evidence. 8 U.S.C. § 1232(c)(3)(B). ORR policy also requires a home study before releasing a child to a non-relative sponsor who is seeking to sponsor multiple children, or who has previously sponsored a child and is seeking to sponsor additional children.

**Table 1: Required Background Checks Conducted by Office of Refugee Resettlement (ORR) Grantees, by Sponsor Category, as of February 2016**

| | Public records check | National (FBI) criminal history check based on digital fingerprinting[a] | Immigration status check conducted through the Central Index System (CIS) | Child abuse and neglect check[b] |
|---|---|---|---|---|
| **Category 1:** **Parent or legal guardian** | ● | ◖ | ◖ | ◖ |
| **Category 2:** **Close relative** | ● | ● | ● | ◖ |
| **Category 3:** **Distant relative or unrelated adult** | ● | ● | ● | ● |
| **Category 4:** **No potential sponsor** | (These instances are rare, but when they occur, children remain in ORR facilities or are placed in ORR's long-term foster care.) | | | |

Legend: A full-circle indicates that the background check is required in all cases. A half-circle indicates that the background check is only required in cases in which there is a documented risk to the safety of the unaccompanied child, the child is especially vulnerable, and/or the case is being referred for a mandatory home study.

Source: ORR Policy Guide. | GAO-18-506T

Note: There are other potential checks that might occur, such as state criminal history repository and/or local police checks.

[a]The FBI identification index name/descriptor check may be used *in lieu* of fingerprint background checks in the case of unidentifiable fingerprints or in extenuating circumstances if: the sponsor/household member has submitted fingerprints, release paperwork and decision making is otherwise complete, there are no concerns about the sponsor and the sponsor does not require a home study, and there is a delay in receiving the prints results. ORR approval is required.

[b]Child abuse and neglect checks are obtained on a state-by-state basis to determine whether a potential sponsor has a record of child abuse or neglect in any of the localities in which they have resided over the previous 5 years.

In our 2016 report, we found that between January 7, 2014, and April 17, 2015, nearly 52,000 children from El Salvador, Guatemala, or Honduras were released to sponsors by ORR. Of these children, nearly 60 percent were released to a parent. Fewer than 9 percent of these children were released to a non-familial sponsor, such as a family friend, and less than 1 percent of these children were released to a sponsor with whom their family had no previous connection (see table 2). Historically, most of these unaccompanied children have been adolescents 14 to 17 years of age, but about a quarter of the children from these three countries in 2014 and early 2015 were younger.

**Table 2: Sponsors' Relationship to Unaccompanied Children from El Salvador, Guatemala, and Honduras (Released from Office of Refugee Resettlement Custody from January 7, 2014, through April 17, 2015)**

| Relationship | Number | Percent |
|---|---|---|
| **Parent** | **31,079** | **60%** |
| **Other relative** | **16,416** | **32%** |
|     Aunt/uncle | 6,925 | 13% |
|     Sibling | 6,251 | 12% |
|     First cousin | 1,221 | 2% |
|     Grandparent | 739 | 1% |
|     Other relative | 1,280 | 3% |
| **Family friend** | **4,185** | **8%** |
| **Unrelated sponsor** | **161** | **<1%** |
| **Total** | **51,841** | **100%** |

Source: GAO analysis of Office of Refugee Resettlement data. | GAO-18-506T

Note: Percentages do not sum to 100 due to rounding.

## ORR Reports Creating New Data Collection Guidance on Post-Release Services

In response to a recommendation in our 2016 report, ORR reported taking various steps to collect additional information on the services provided to unaccompanied children after they are released from ORR custody. We welcome this progress, but continue to believe that further steps are needed to fully address our recommendation.

In 2016, we reported that limited information was available about post-release services provided to children and their sponsors. Post-release services include such things as guidance to the sponsor to ensure the safest environment possible for the child; assistance accessing legal, medical, mental health, and educational services for the child; and information on initiating steps to establish guardianship, if necessary. The Trafficking Victims Protection Reauthorization Act requires ORR to provide post-release services to children if a home study was conducted,

and authorizes ORR to provide these services to some additional children.[20]

Our 2016 report noted that ORR was in a position to compile the data it collects on post-release services, and to share the data internally and externally with other federal and state agencies to help them better understand the circumstances these children face when they are released to their sponsors. ORR was already collecting some information from its post-release grantees on services provided to children after they left ORR custody, and its newly instituted well-being calls and National Call Center would allow it to collect additional information about these children. However, at the time, ORR did not have processes in place to ensure that all of these data were reliable, systematically collected, and compiled in summary form to provide useful information about this population for its use and for other government agencies, such as state child welfare services.[21] As a result, in our 2016 report, we recommended that the Secretary of HHS direct ORR to develop a process to ensure all information collected through its existing post-release efforts are reliable and systematically collected, so that the information could be compiled in summary form to provide useful information to other entities internally and externally. HHS concurred and stated that ORR would implement an approved data collection process that would provide more systematic and standardized information on post-release services and that it would make this information available to other entities internally and externally.

At the time of our 2016 study, a relatively small percentage of unaccompanied children who had left ORR custody were receiving post-release services. Officials said ORR's responsibility typically ended after it transferred custody of children to their sponsors. We found that slightly less than 10 percent of unaccompanied children received post-release services in fiscal year 2014, including those for whom a home study was

---

[20]8 U.S.C. § 1232(c)(3)(B). The statute uses the term "follow-up services," which we refer to as "post-release services" In this statement. ORR officials noted that this statutory mandate to provide post-release services to children for whom home studies were conducted implies responsibility to check on the well-being of these children after their release from ORR custody. According to ORR officials, the agency is generally not required by law to track or monitor the well-being of all children once they are released to sponsors. These services can also include providing information about or referrals to resources available in the community. Post-release services are limited in nature and typically last a relatively short time.

[21]Federal internal control standards require that an agency have relevant, reliable, and timely information to enable it to carry out its responsibilities. See GAO-14-704G.

conducted.[22] However, the percentage of unaccompanied youth receiving post-release services has increased in recent years. According to publicly available ORR data, approximately 31 percent of unaccompanied youth received such services in fiscal year 2015, 20 percent in fiscal year 2016, and 32 percent in fiscal year 2017.

In addition, during 2015, ORR had taken steps to expand eligibility criteria for post-release services. According to ORR officials, these changes included making all children released to a non-relative or distant relative eligible for such services. ORR also began operating a National Call Center help-line in May 2015. Children who contacted ORR's National Call Center within 180 days of release and who reported experiencing (or being at risk of experiencing) a placement disruption, also became eligible for post-release services, according to ORR officials. Additionally, our 2016 report noted that in August 2015, ORR had instituted a new policy requiring grantee facility staff to place follow-up calls, referred to as Safety and Well Being follow-up calls, to all children and their sponsors 30 days after the children are placed to determine whether they were still living with their sponsors, enrolled in or attending school, and aware of upcoming removal proceedings, and to ensure that they were safe. ORR's policy required grantees to attempt to contact the sponsor and child at least three times.

In August 2017, ORR told us that the agency had created new guidance on case reporting, records management, retention, and information-sharing requirements for post-release service provider, and that it had collected data on Safety and Well Being follow-up calls that had been made to children and their sponsors. For example, ORR told us that during the first quarter of fiscal year 2016, its grantees reached 87 percent of unaccompanied children and 90 percent of sponsors by phone within 30 to 37 days after the child's release from ORR care. In the second quarter of fiscal year 2016, these figures were 80 percent and 88 percent, respectively. ORR also said that the agency had developed a plan for collecting and analyzing National Call Center data. However, as of April 2018, ORR officials noted that case management functionality had not yet been built into ORR's web-based portal. Further, ORR officials told us that the agency planned to create uniform data collection reporting forms for grantees providing post-release services, but as of

---

[22]According to ORR data, in fiscal year 2014, home studies were conducted in approximately 2 percent of all cases in which a child was released.

April 2018, it had not developed these forms. ORR's steps represent progress towards systematically collecting information that can be used internally and shared, as appropriate, with external agencies; however, to ensure our recommendation is fully addressed, ORR will need to complete its data collection and reporting efforts.

With respect to unaccompanied children's immigration proceedings, we reported in 2016 that several different outcomes are possible, and that the outcomes for many children had not yet been determined. An unaccompanied child who is in removal proceedings can apply for various types of lawful immigration status with DHS's U.S. Citizenship and Immigration Services (USCIS), including asylum and Special Immigration Juvenile status. Alternatively, an unaccompanied child who has not sought, or has not been granted, certain immigration benefits within the jurisdiction of USCIS, may still have various forms of relief available to him or her during immigration proceedings. For example, an immigration judge may order the child removed from the United States, close the case administratively, terminate the case, allow the child to voluntary depart the United States, or grant the child relief or protection from removal. Moreover, a judge's initial decision does not necessarily indicate the end of the removal proceedings. For example, cases that are administratively closed can be reopened, new charges may be filed in cases that are terminated, and children may appeal a removal order. In addition, in cases involving a child who receives a removal order *in absentia*, and a motion to reopen the child's case has been properly filed, the child is granted a stay of removal pending a decision on the motion by the immigration judge. In our 2016 report, we found that according to ICE data on final removal orders from fiscal year 2010 through August 15, 2015, ICE removed 10,766 unaccompanied children, and about 63 percent of these children (6,751) were from El Salvador, Guatemala, or Honduras.

Chairman Portman, Ranking Member Carper, and Members of the Subcommittee, this concludes my prepared remarks. I would be happy to answer any questions that you may have.

## GAO Contacts and Staff Acknowledgments

For further information regarding this testimony, please contact Kathryn A. Larin at (202) 512-7215 or larink@gao.gov. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this statement.

Individuals who made key contributions to this testimony include Margie K. Shields (Assistant Director), David Barish (Analyst-in-Charge), James Bennett, Kathryn Bernet, Ramona Burton, Rebecca Gambler, Theresa Lo, Jean McSween, James Rebbe, Almeta Spencer, Kate van Gelder, and James Whitcomb.

This is a work of the U.S. government and is not subject to copyright protection in the United States. The published product may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.

| GAO's Mission | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
|---|---|
| Obtaining Copies of GAO Reports and Testimony | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's website (https://www.gao.gov). Each weekday afternoon, GAO posts on its website newly released reports, testimony, and correspondence. To have GAO e-mail you a list of newly posted products, go to https://www.gao.gov and select "E-mail Updates." |
| Order by Phone | The price of each GAO publication reflects GAO's actual cost of production and distribution and depends on the number of pages in the publication and whether the publication is printed in color or black and white. Pricing and ordering information is posted on GAO's website, https://www.gao.gov/ordering.htm. Place orders by calling (202) 512-6000, toll free (866) 801-7077, or TDD (202) 512-2537. Orders may be paid for using American Express, Discover Card, MasterCard, Visa, check, or money order. Call for additional information. |
| Connect with GAO | Connect with GAO on Facebook, Flickr, Twitter, and YouTube. Subscribe to our RSS Feeds or E-mail Updates. Listen to our Podcasts. Visit GAO on the web at https://www.gao.gov. |
| To Report Fraud, Waste, and Abuse in Federal Programs | Contact: Website: https://www.gao.gov/fraudnet/fraudnet.htm Automated answering system: (800) 424-5454 or (202) 512-7470 |
| Congressional Relations | Orice Williams Brown, Managing Director, WilliamsO@gao.gov, (202) 512-4400, U.S. Government Accountability Office, 441 G Street NW, Room 7125, Washington, DC 20548 |
| Public Affairs | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800 U.S. Government Accountability Office, 441 G Street NW, Room 7149 Washington, DC 20548 |
| Strategic Planning and External Liaison | James-Christian Blockwood, Managing Director, spel@gao.gov, (202) 512-4707 U.S. Government Accountability Office, 441 G Street NW, Room 7814, Washington, DC 20548 |



Please Print on Recycled Paper.

# DEF-INTERV.

# EX. 153



**National Standard Operating Procedures (SOP)**

# Deferred Action for Childhood Arrivals (DACA)
## (Form I-821D and Form I-765)

Prepared by: Service Center Operations Directorate

**August 28, 2013**
**Version 2.0**

DEF - 00006850

## 1.0 REVISION HISTORY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Revision History | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Version | V02 | | Date Released | 8/28/2013 | Changes Made By | SCOPS |

| Reason for SOP Update | | | |
|---|---|---|---|

| | Reason | Chapter/Section | Page No(s). |
|---|---|---|---|
| 1 | New Guidance | Chapter 5, Incoming Files | 25 |
| 2 | New Guidance | Chapter 5, Homebound Biometrics Capturing | 27 |
| 3 | New Guidance | Chapter 8, CITRIX/EOIR I-485 | 47 |
| 4 | New Guidance | Chapter 8, Duplicate Filings | 48 |
| 5 | New Guidance | Chapter 8, Graduated from School | 69 |
| 6 | New Guidance | Chapter 8, Economic Necessity | 72 |
| 7 | New Subtitle | Chapter 8, Issues of Criminality | 82 |
| 8 | New Guidance | Chapter 8, Issues of Criminality | 82 |
| 9 | New Subtitle | Chapter 8, DACA Requestors in Immigration Detention at the Time of Filing Form I-821D | 90-91 |
| 10 | New Guidance | Chapter 8, DACA Requestors in Immigration Detention after Filing Form I-821D | 91-92 |
| 11 | New Guidance | Chapter 8, Social Security Number | 94 |
| 12 | New Guidance | Chapter 8, Denials – Supervisory Review | 110 |
| 13 | New Subtitle | Chapter 14, Removal Deferred Under DACA – Requestor did not Satisfy the Guidelines | 136 |
| 14 | New Guidance | Chapter 14, Enforcement Priority – DACA Not Automatically Terminated | 138 |
| 15 | New Guidance | Chapter 14, System Updates | 138 |

Note: SOP revisions listed are reflected in blue font.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Version August 28, 2013     2

Confidential

DEF - 00006851

# Table of Contents

| Chapter | Page # |
|---|---|
| 1: Definitions and Applicability to DACA | 6-15 |
| 2: Introduction | 16-20 |
| 3: Summary of the Overall Process Flow for DACA Filings | 20-22 |
| 4: Lockbox Intake | 23-24 |
| 5: Service Center Intake | 25-32 |
| 6: Background and Security Checks | 33-41 |
| 7: DACA Overview | 42-44 |
| 8: Adjudication of the DACA Request | |
|    A.  Procedural Overview | 45-48 |
|    B.  System Searches | 49 |
|    C.  Determining if Guidelines are Met | 50-71 |
|    D.  Economic Necessity | 72 |
|    E.  Removal Proceedings | 73-78 |
|    F.  Fingerprints and RAP Sheets | 79-81 |
|    G.  Evaluating Issues of Criminality, Public Safety, and National Security | 82-97 |
|       • Court Dispositions | 86-88 |
|       • Arrests and Convictions | 89 |
|       • Public Safety Concerns | 90 |
|       • National Security Concerns | 90 |
|       • Immigration Detention | 90-92 |
|       • Handling Procedures | 93-97 |
|    H.  Adjudicating Form I-821D, Part 3, Criminal, National Security and Public Safety Information | 98-100 |
|    I.  Fraud Review and Fraud Referrals | 101-104 |
| 9: Decisions | |
|    A.  Request for Evidence | 105 |
|    B.  Notice of Intent to Deny | 106 |
|    C.  Approvals | 107-108 |
|    D.  Denials | 109-113 |
|       • Supervisory Review | 110 |
| 10: Post Denial Process | 114 |
| 11: Returned Mail | 115 |

*Continued on next page*

# Table of Contents

| Chapter | Page # |
|---|---|
| 12: Employment Authorization | |
|     A. General Information | 116-117 |
|     B. Adjudication | 118-123 |
|     C. Replacement Cards | 124 |
| 13: Customer Service - Use of Service Request Management Tool (SRMT) to Respond to Requests to Review Certain Denials | 125-135 |
| 14: DACA Termination | 136-138 |
| 15: Processing Form I-131, Application for Travel Document, for Individuals With Approved Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA) | 139-142 |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

Version August 28, 2013    4

Confidential                                                        DEF - 00006853

# **Appendices**

**Appendix A:** June 15, 2012, Secretary of Homeland Security memorandum entitled, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children.

**Appendix B**: November 7, 2011, memorandum entitled, Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens.

**Appendix C**: Overview of the Background Check Process

**Appendix D**: DACA RFE Call Ups

**Appendix E**: Notice of Intent to Deny Call-Ups

**Appendix F**: DACA Denial Template

**Appendix G**: SRMT Responses

**Appendix H**: SRMT Denial Template

**Appendix I**: Notice of Intent to Terminate Deferred Action for Childhood Arrivals and Termination Notice

**Appendix J**: Notice of Intent to Deny Review Policy

**Appendix K**: DACA Denial Call-Ups

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                        DEF - 00006854

# Chapter 1: Definitions and Applicability to DACA

| | |
|---|---|
| **Absconder** | An alien who failed to surrender to DHS for removal after receiving a final order of deportation, exclusion, or removal. |
| **Aggravated Felon** | Any alien who has been convicted of a criminal offense within the definition of 101(a)(43) of the Immigration and Nationality Act (Act). |
| **Alias** | An additional name (e.g., nickname, maiden name, or married name) or an assumed name. |
| **Ancillary Application** | Applications for travel, employment authorization, or applications that do not convey an immigrant or nonimmigrant status, and are filed in connection with a primary or an underlying application or petition. |
| **ASC** | Application Support Center. The ASCs, which are located throughout the United States and its outlying territories, facilitate the capture of fingerprints and biometric data. |
| **BCU** | Background Check Unit. A work unit located at each of the Service Centers and the National Benefits Center. The BCU is responsible for reviewing and resolving [ LE ] hits and other criminal, national security, and public safety concerns in accordance with Agency policy. |
| **BCU DACA Team** | A specialized team within the BCU that specifically reviews and adjudicates issues of criminality arising from DACA requests. The team may consist of Immigration Services Officers, as well as officers assigned to CARRP, NTA issuance, and Triage duties, and the analysts who support them. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006855

# Definitions and Applicability to DACA, Continued

**Brief, Casual, and Innocent Absence**

A brief, casual, and innocent absence from the United States before August 15, 2012 will not interrupt continuous residence for purposes of DACA. An absence will be considered brief, casual, and innocent, if:

> (1) The absence was short and reasonably calculated to accomplish the purpose of the absence;
>
> (2) The absence was not the result of an order of exclusion, deportation, or removal;
>
> (3) The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
>
> (4) The purpose of the absence from the United States or actions while outside of the United States were not contrary to law.

This definition of a brief, casual, and innocent absence has its basis in case law and was codified into the regulations for the Temporary Protected Status (TPS) program. Elements of this definition of brief, casual, and innocent will be used for individuals requesting DACA. See 8 C.F.R. §244.1. See also "Continuous Residence" below for additional circumstances that will not break continuous residence.

**CFDO**

The Center Fraud Detection Operations (CFDO) is the Fraud Detection and National Security (FDNS) organization within Service Centers. The CFDO is comprised of FDNS officers under the direction of an FDNS supervisor who reports directly to the CFDO Assistant Center Director (ACD). While most CFDO work occurs in an office environment, some Service Centers conduct administrative investigations in support of FDNS's field operations.

**CLAIMS (C3)**

Computer - Linked Application Information Management System Version 3. A case management application system to track and process the adjudication of applications, petitions, and other requests for immigration benefits and services.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**    7

Confidential                                                                 DEF - 00006856

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Continuous Residence** | The DACA requestor is to reside in the United States for the entire period specified in the guidelines for DACA to be considered. An alien shall not be considered to have failed to maintain continuous residence in the United States by reason of a brief, casual, and innocent absence as defined within this section. |
| **CARRP** | Controlled Application Review and Resolution Program. This program outlines the process to identify, record, and adjudicate applications/petitions/requests where a National Security concern is identified. |
| **DACA** | Deferred Action for Childhood Arrivals |
| **Deferred Action** | Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. Deferred action does not confer any lawful status. |
| **DNR** | Does Not Relate. A determination by USCIS personnel of whether a security check result relates to a DACA requestor. |
| **Egregious Public Safety (EPS) Concern** | Any case where routine systems and background checks indicate that an individual is under investigation for, has been arrested for (without disposition), or has been convicted of, a specified crime, including but not limited to, murder, rape, sexual abuse of a minor, trafficking in firearms or explosives, or other crimes listed in the November 7, 2011, memorandum entitled Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**    8

Confidential

DEF - 00006857

# Definitions and Applicability to DACA, Continued

**Evidence**

**Affidavits**

Affidavits generally will not be sufficient on their own to demonstrate that a requestor meets the DACA guidelines. However, affidavits may be used to support the following guidelines when primary and secondary evidence are unavailable:

- A gap in the documentation demonstrating that the requestor meets the five year continuous residence requirement; and
- A shortcoming in documentation with respect to the brief, casual and innocent departures during the five years of required continuous presence.

Two or more affidavits, sworn to or affirmed by people other than the requestor, who have direct personal knowledge of the events and circumstances, can be submitted. If the affidavits are not sufficient to establish that the guideline is met, issue an RFE using RFE DACA 302 call up in Appendix D.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- The requestor is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general education development certificate, or is an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- The requestor was physically present in the United States on June 15, 2012;
- The requestor came to the United States before reaching his/her 16th birthday;
- The requestor was under the age of 31 on June 15, 2012; and
- The requestor's criminal history, if applicable.

Weigh the assertions in the affidavit in light of the totality of all the evidence presented. When evaluating what weight to give an affidavit, take the following into consideration:

- An affidavit needs to be signed and dated;
- The identity of the affiant needs to be readily ascertainable from the information in the affidavit;
- The affidavit should state the relationship between the affiant and the DACA requestor and contain facts that are relevant to the guideline the requestor seeks to meet;
- The affidavit should state the basis of the affiant's knowledge and exhibit first-hand knowledge of the fact asserted.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

Confidential

DEF - 00006858

# Definitions and Applicability to DACA, Continued

**Evidence**
(Continued)

### Preponderance of the Evidence

A DACA requestor is to establish by a preponderance of the evidence that he/she meets the guidelines for the exercise of prosecutorial discretion in the form of deferred action. Under this standard, the requestor must demonstrate that it is more likely than not that he or she meets those guidelines. The preponderance of the evidence standard is a lower standard of proof than both the "clear and convincing evidence" standard and the "beyond a reasonable doubt" standard applicable to criminal cases.

### Primary Evidence

Primary evidence is evidence which, on its face, proves a fact. In the DACA context, an example of primary evidence that could be submitted to satisfy the age guideline would be a birth certificate. An example of primary evidence that could be submitted to satisfy all or part of the continuous residence guideline would be rental agreements or school records in the DACA requestor's name.

### Secondary Evidence

Secondary evidence must lead the officer to conclude that it is more likely than not (in other words, probable) that the fact sought to be proven is true. For example, if an individual is unable to obtain a copy of his birth certificate to establish his date of birth, baptismal records issued by a church showing that an individual was born at a certain time would be acceptable secondary evidence of the birth for purposes of satisfying the DACA age guideline. Similarly, to satisfy the continuous residence guideline under DACA, rental agreements in the name of the DACA requestor's parent could be acceptable secondary evidence demonstrating periods of the requestor's residence in the United States, if corroborating evidence in the file (for example, school or medical records) points to the DACA requestor's residence at that address.

### Sufficiency of the Evidence

The sufficiency of all evidence is judged according to its relevance, consistency, and credibility.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                         DEF - 00006859

# Definitions and Applicability to DACA, Continued

**Evidence**
(Continued)

## Totality of the Evidence

For DACA, the totality of the documentary evidence should be reviewed to determine whether the facts needed to establish a specific guideline have been demonstrated. In many instances, an adjudicator may be satisfied based upon the review of all the documentary evidence, that it is more likely than not that a specific guideline has been meet even if the record does not contain one specific document that, in fact, satisfies the guideline. For example, if a DACA requestor is unable to submit a specific document evidencing his/her presence in the United States on June 15, 2012, he/she may be able to satisfy this guideline by submitting various forms of credible documentation evidencing that he/she was present in the United States shortly before and shortly after June 15, 2012 from which the officer could infer, based on the totality of the evidence, that the individual was present in the United States on June 15, 2012. (Note: evidence upon which one may infer that a fact has been demonstrated is also known as "circumstantial evidence," a term that appears in many DACA public information documents).

Officers must see documentary evidence (either primary or secondary) in order to determine if the following guidelines have been met:
- Requestor was under the age of 31 on June 15, 2012; and
- Requestor is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States

Officers may not infer from other sources that either of these two guidelines have been met.

Officers should look to the totality of the evidence (meaning that facts can be inferred from one or more sources) to determine if the following guidelines have been met:
- The requestor was physically present in the United States on June 15, 2012;
- The requestor came to the United States before reaching his/her 16th birthday;
- The requestor satisfies the continuous residence requirement, (as long as he or she presented clear documentation of continuous residence in the United States for a portion of the required five-year period and any other evidence submitted supports a finding that the requestor was actually residing in the U.S. during the period for which he has not provided clear documentary evidence of such residence); and
- Any travel outside the United States during the five years of required continuous presence was brief, casual, and innocent.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 11

Confidential

DEF - 00006860

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Evidence** (Continued) | For the remaining guidelines, i.e., the requestor was in unlawful status on June 15, 2012, has no disqualifying criminal convictions, and does not otherwise pose a threat to public safety or national security, the information presented by the DACA requestor on his/her Form I-821D in combination with background and security checks, routine systems checks, supporting evidence submitted by the requestor, and any other information on file, may establish that these guidelines have been met. |
| **Front End Check** | Security and systems checks performed upon the receipt of an application or petition or other requests to screen for national security, EPS, fraud, or other criminal concerns. |
| **HQ FDNS** | Headquarters Office of the Fraud Detection and National Security Directorate of USCIS. |
| **Hit** | A record returned by a security or background check system in response to a query that may relate to the subject being queried. |
| **Interpol** | International Criminal Police Organization, the world's largest international police organization. This organization facilitates cross-border police cooperation and supports and assists all organizations, authorities, and services whose mission is to prevent or combat international crime. |
| **JTTF** | Joint Terrorism Task Force. The JTTF is run by the Federal Bureau of Investigation (FBI). The JTTF is comprised of small groups of highly trained, locally based members from U.S. law enforcement and intelligence agencies. JTTF is responsible for all domestic and international terrorism matters. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

Confidential DEF - 00006861

# Definitions and Applicability to DACA, Continued

**KST**

Known or Suspected Terrorist. LE



**National Security (NS) Concern**

An NS Concern exists when an individual or organization has been determined to have an articulable link to prior, current, or planned involvement in, or association with, an activity, individual, or organization described in §§ 212(a)(3)(A), (B), or (F), or 237(a)(4)(A) or (B) of the Act. This determination requires that the case be handled according to the CARRP policy outlined in the memorandum issued on April 11, 2008.

**NCIC**

The National Crime Information Center (NCIC) is a database maintained by the FBI. NCIC includes the Interstate Identification Index (NCIC III) that allows authorized users to access criminal history information. Access to NCIC III is limited to FDNS personnel only. FDNS personnel may only access NCIC III when an individual has been determined to have, or is likely to have, a link to a current or planned criminal activity and the case is referred to FDNS for further investigation with the appropriate law enforcement agency, when a reasonable suspicion of fraud is identified that may be referred to ICE for criminal investigation or when an individual has been determined to be involved in current or planned terrorist activity. Prior to accessing NCIC III information, USCIS personnel who are TECS users must first complete the NCIC Certification Course.

**NCTC**

National Counterterrorism Center. In August 2004, the President established NCTC, a multi-agency organization, to serve as the primary organization for the U.S. Government for integrating and analyzing all intelligence pertaining to terrorism and counterterrorism (CT) and to conduct strategic operational planning by integrating all instruments of national power.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

## Definitions and Applicability to DACA, Continued

| **No Match** | This annotation is used on the Record of IBIS Query (ROIQ) if a TECS query results in no TECS hit. |
|---|---|
| **Non-KST** | A Non-KST NS concern includes all other NS concerns, regardless of the source, including but not limited to: associates of KSTs, unindicted coconspirators, terrorist organization members, persons involved with providing material support to terrorists or terrorist organizations, and agents of foreign governments. |
| **Primary Name and DOB** | The name and date of birth provided by an applicant, petitioner, or requestor as his/her given name and date of birth. This is generally listed in the first part of the application/petition/request. |
| **Relates** | This annotation is used on the ROIQ if a TECS query results in a hit that closely corresponds to the subject queried. |
| **Resolution** | A determination of the effect or relevance of the available information on the eligibility of the applicant, requestor, petitioner, beneficiary, or derivative for the benefit or request sought. |
| **ROIQ** | Record of IBIS Query. This form is used to record the search criteria queried and the results of those queries. The ROIQ was revised on March 5, 2013 to include checkbox "R" for requestors. |
| **SNAP** | Scheduling and Notification of Applicants For Processing. An automated system that schedules appointments for individuals to submit biometric information to ASCs. |
| **Secretary's Memorandum** | The June 15, 2012, memorandum entitled, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children, issued by the Secretary of Homeland Security. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential                                                    DEF - 00006863

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Security Check** | A specific check or a combination of checks required for each application, petition, or request conducted in accordance with Agency policy. |
| **System Match** | A record returned by TECS in response to a query, the subject of which may or may not relate to the subject being queried. This is the same as a TECS Hit. |
| **TECS** | TECS is formerly known as the Treasury Enforcement Communications System/Interagency Border Inspection System. TECS is an automated enforcement and inspection lookout system that combines information from multiple agencies, databases, and system interfaces to compile data relating to national security risks, public safety issues, current or past targets of investigations, and other law enforcement concerns. The system is maintained by U.S. Customs and Border Protection. |
| **VGTOF** | Violent Gang and Terrorist Organization File. The VGTOF file has been designed to provide identifying information about violent criminal gangs and terrorist organizations and members of those gangs and organizations to law enforcement personnel. This information serves to warn law enforcement officers of the potential danger posed by violent individuals and to promote the exchange of information about these organizations and members to facilitate criminal investigations. USCIS has access to VGTOF through NCIC. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

Confidential

DEF - 00006864

# Chapter 2: Introduction

**Purpose**          This SOP describes the procedures Service Centers are to follow when
                     adjudicating DACA requests. This SOP includes the procedures for
                     processing Form I-821D, Consideration of Deferred Action for Childhood
                     Arrivals, and Form I-765, Application for Employment Authorization. It also
                     describes the procedures for adjudicating advance parole requests for
                     individuals whose removal has been deferred under DACA and who need to
                     travel outside of the United States for educational, employment, or
                     humanitarian purposes.

**References**       **For DACA:** Memorandum issued June 15, 2012, <u>Exercising Prosecutorial</u>
                     <u>Discretion with Respect to Individuals Who Came to the United States as</u>
                     <u>Children</u>, by Secretary of Homeland Security Janet Napolitano to U.S.
                     Customs and Border Protection; U.S. Citizenship and Immigration Services;
                     and Immigration and Customs Enforcement. <u>See</u> Appendix A for a copy of
                     the Secretary's memorandum.

                     **For Employment Authorization:** 8 C.F.R. § 274a.12(c)(14) is the legal
                     authority for employment authorization based on a grant of deferred action.
                     The (c)(33) code will be used to distinguish EAD grants under DACA from
                     EAD grants under other forms of deferred action. <u>See</u> also the Secretary's
                     memorandum, which provides that USCIS shall accept applications to
                     determine whether individuals whose removal has been deferred under
                     DACA qualify for work authorization during the period of deferred action.

**Fraud Cases**      All officers are required to review cases for the possibility of fraud. All
                     officers should review the case based on the standard fraud referral protocols
                     and the additional guidance provided in Chapter 8, Section K of this SOP.

**Applicability**    This SOP is applicable to all Service Center personnel performing
                     adjudicative and clerical functions or review of those functions. Personnel
                     outside of Service Centers performing duties related to DACA processing will
                     be similarly bound by the provisions of this SOP.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                    DEF - 00006865

# Introduction, Continued

**Conflict Resolution**

Any provision of the Act or 8 C.F.R. found by Headquarters Service Center Operations Directorate (SCOPS) to be in conflict with this SOP will take precedence over the SOP; any individual who identifies such an apparent conflict will report the matter immediately to the DACA SISO POC, who will in turn report the conflict to SCOPS.

If any apparent conflict is noted between this SOP and policy or guidance documents, the matter should be reported to SCOPS through the supervisory chain of command.

**Revisions**

SCOPS will issue numbered revisions to this SOP. No other document will be considered a valid modification.

*Version Control*
All personnel who maintain a hard copy of the SOP will ensure that it is the latest version. An electronic copy of the latest version will be posted per local procedures. The training unit will archive all prior electronic versions of this SOP.

**Additional Resources**

For additional resources on DACA, please see a supervisor or training coordinator for DACA training presentations and modules.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006866

## Introduction, Continued

**DACA Overview**

On June 15, 2012, the Secretary of Homeland Security issued a memorandum entitled, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children. In this memorandum, the Secretary provides guidelines for exercising prosecutorial discretion on a case -by-case basis to defer removal action of individuals who were brought to the United States as children. By issuing this memorandum, the Secretary recognized that, as a general matter, these individuals lacked the requisite intent to violate the law when they entered the United States as children. Therefore, the Secretary determined that additional measures are necessary to ensure that enforcement resources are not expended on these low priority cases, but rather, on those who meet DHS's enforcement priorities.

**Childhood Arrival**

For purposes of considering an individual for DACA under the Secretary's memorandum, an individual may be favorably considered for DACA if he/she:

1. Entered without inspection before June 15, 2012, or his or her lawful immigration status expired as of June 15, 2012. For DACA purposes, the phrase "in unlawful status as of June 15, 2012" means that he/she never had a lawful immigration status on or before June 15, 2012, or any lawful status or parole that he/she obtained prior to June 15, 2012 had expired before June 15, 2012;
2. Was under the age of 31 as of June 15, 2012;
3. Came to the United States prior to reaching his/her 16th birthday;
4. Has continuously resided in the United States since June 15, 2007, up to the date of filing;
5. Was present in the United States on June 15, 2012, and at the time of making his/her request for consideration of deferred action with USCIS;
6. Is currently in school at the time of filing, has graduated or obtained a certificate of completion from a U.S. high school, has obtained a GED certificate or other equivalent State authorized exam in the United States, or is an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces; and
7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006867

# **Introduction,** Continued

| | |
|---|---|
| **DACA Requests Filed with USCIS** | USCIS will process all DACA requests, regardless of whether the individual is in removal proceedings (unless the individual is in immigration detention under the custody of ICE) or subject to a final order of removal. Depending on when the order was issued, this could be an order of deportation, exclusion or removal. A complete DACA package consists of concurrently filed Forms I-821D, Consideration of Deferred Action for Childhood Arrivals and I-765, Application for Employment Authorization, with the worksheet, Form I-765WS. Forms I-821D and I-765 must be filed concurrently. DACA requests will be adjudicated by all four Service Centers. |
| **DACA Requestors in Immigration Detention** | USCIS lacks the authority to consider requests from individuals who are in immigration detention under the custody of ICE at the time of filing Form I-821D and remain in immigration detention as of the date Form I-821D is adjudicated. Since the Lockbox is currently unable to reject these cases, the Center may receive a Form I-821D when the requestor was in immigration detention under the custody of ICE at the time of filing. Whenever this occurs, the Center should follow the procedures in Chapter 8, Section G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 19

Confidential

DEF - 00006868

## Introduction, Continued

**Lockbox**

All DACA requests are filed, with applicable fees, and with the appropriate USCIS Lockbox. DACA filings mistakenly mailed to a Service Center will be forwarded to the appropriate Lockbox for processing. Requests received at a Lockbox Facility will be electronically scanned into OnBase (the Lockbox intake system) and all pertinent fields will be populated in CLAIMS 3 (C3) into the Form I-821 screen, but with a new category "3" as the basis for requesting DACA. While Forms I-821for TPS, and I-821D for DACA are very similar, when Form I-821 appears in CLAIMS with category "3" (to denote that it is actually an I-821D for DACA), only those fields pertaining to the DACA request will be active.



The file containing the Form I-821D and Form I-765 will be forwarded to the appropriate Service Center for adjudication, based on the agreed upon routing logic between Service Centers and Lockbox.

The Lockbox will screen DACA requests to determine whether they have been filed correctly with USCIS.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006869

# Chapter 3: Summary of Overall Process Flow For DACA Filings

**Introduction**

This section summarizes the general process flow for an initial DACA request, from intake at the Lockbox, to the point of a final decision.

**Process Flow**

Step 1:
Intake occurs at the Lockbox per the agreed upon Lockbox/SCOPS business rules.

Step 2:
Service Center Records performs the A-number look-up and validation process.

Step 3:
Data is populated into C3 via the Lockbox-Service Center interface.

Step 4:
Lockbox creates and ships A-Files/T-Files to the appropriate Service Center based on the agreed upon routing.

Step 5:
Service Centers receive the files and perform file intake functions.

Step 6:
ASC appointments are scheduled via SNAP by the Service Center pursuant to local procedures.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006870

# Summary of Overall Process Flow For DACA Filings, Continued

**Process Flow**
**(Continued)**

Step 7:
In parallel to the SNAP scheduling process, background and security checks are initiated via TECS.

Step 8:
The Service Center must look for the following to determine the next steps:

- Whether the DACA requestor appeared at the ASC for biometrics capture and whether the FBI returned the fingerprint results (fingerprint results are required only for those 14 years and older); and
- Whether TECS and/or the FBI fingerprint results returned derogatory information impacting the exercise of discretion for DACA.

Step 9:
The Service Center will take adjudicative action.

Step 10:
The process flow splits off here, depending on the results from the FBI, the TECS check, on whether an adjudication hold should be placed on the request. A DACA request will be routed based on these results, as laid out in the chart below:

| If the TECS check has... | The I-821D and I-765... |
|---|---|
| No hit | are routed to an officer for adjudication. |
| A hit | is routed to adjudications from BCU with the annotation Does Not Relate (DNR); or |
| | is routed to BCU for confirmation and vetting of the related hit. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

# Chapter 4: Lockbox Intake

**Rejection Criteria**

The Lockbox will use the following rejection criteria for DACA filings:

Rejection of Form I-821D:

- Missing Signature on either Form I-821D or Form I-765;
- Missing or wrong fee for Form I-765 (Expecting $465 total, which includes the biometrics fee, unless the individual fits within certain fee exemptions established for DACA requestors and an exemption has been previously approved);
- Missing Required Fields – needed for ingestion to C3:
  - Family Name
  - Address: or
  - Date of Birth:
- Form I-821D received without Form I-765;
- Filed from a foreign address;
- Form I-131 for advance parole received with Form I-821D (If the Form I-131 is filed with a separate check, only the Form I-131 will be rejected and the Form I-821D and Form I-765 will be accepted);
- The requestor was 31 years or older on June 15, 2012;
- The requestor is under 15 at time of filing and does not indicate that he/she is in removal proceedings in Question 3.b. of Form I-821D.

Rejection of Form I-765 (based on DACA grant):

- Missing or wrong fee (Expecting $465 total, including the biometrics fee, unless the individual fits within certain fee exemptions established for DACA requestors and an exemption has been previously approved); or
- Missing Signature.

*The "stand-alone" Form I-765s filed by those whose removal has been deferred under DACA by ICE will be processed at the National Benefit Center. Prior to the decision that USCIS will process all DACA requests to include those in removal proceedings, ICE did defer removal for some DACA requestors.*

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006872

# Lockbox Intake, Continued

**A#
Validation/
Assignment**

The Lockbox will perform the following:

- A# validation is triggered by the Form I-821D;
- If the requestor provides an A# that matches the Central Index System (CIS) based upon the same name and date of birth, the A# is retained and cloned to the Form I-765;
- If the A# provided by the requestor is incorrect, the transaction goes to the queue for research. If the correct A# is found in USCIS systems, it is inserted into the Form I-821D record and cloned to the Form I-765. If no A# is found in USCIS systems, then an A# is assigned to Form I-821D and cloned to the Form I-765;
- If there is no A# on the Form I-821D, the transaction goes to the queue for research. If the correct A# is found, it will be inserted into the Form I-821D record and cloned to the Form I-765. If no A# is found in USCIS records (manual search), then the A# is assigned to Form I-821D and cloned to the Form I-765.

Research is completed by Service Center staff remotely accessing the Lockbox intake system. DACA requests with a missing or invalid A# are routed to USCIS to review. USCIS may correct the A# or assign a new A#.

**Record of
Proceeding
(ROP)**

The Lockbox will assemble the DACA files in the following order:

| Records Side | Non-Records Side |
|---|---|
| Valid Form G-28 | Form G-28 (not-valid) face down |
| Form I-821D | Property Envelope (facing backward and upside down) |
| Form I-765WS | |
| Form G-1145 | |
| Attorney's Letter (if applicable) | |
| Passport | |
| Birth Certificate | |
| Form I-94 | |
| Other Supporting Documentation (e.g., school transcripts and relating envelope) | |
| Form I-765 (2 requestor's photos will be placed in a ziplock bag and stapled to the Form I-765) | |
| Address Side of Envelope | |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006873

# Chapter 5: Service Center Intake

**Incoming Files**

The contractor will perform the following actions:

- Open the boxes from the Lockbox;
- Date stamp and check the manifest against the files in the boxes;
- Separate A-file and T-files;
- Perform "new add" for the receipt files, A-files, and T-files, as well as consolidate Forms I-821D and I-765 into the A-file/T-file in the National File Tracking System (NFTS);
- T-files – locate the A-file(s) using the NFTS inquiry screen and if the A-file(s) are located outside the Service Center, initiate the A-file request;
- EOIR I-485 Receipt files – do not request an EOIR I-485 receipt file;
- A-files – Perform "new add the A-file" into the Central Index System (CIS); and
- Deliver DACA files to work distribution. Responsible Party Codes (RPCs) are used to track the location of files at the Service Center. An NFTS barcode is placed on each shelf, box, or drawer in which DACA files are stored.

The Service Center will perform the following actions:

- Perform a Quality Assurance review on a random sample of incoming DACA files. ROP order, proper acceptance, and correct matching data on the form compared with the CLAIMS record, will all be reviewed. Any errors will be recorded and reported back to the Lockbox service provider for process improvement steps. Corrections will be made at the Service Center.
- Initiate an automated **LE** check of the DACA requestor's name(s) and date(s) of birth; and
- Review and resolve any identified hit (performed by BCU officers).

<u>See</u> Chapter 6 for more detailed information relating to background checks.

**Biometric Capture**

The Service Center will perform the following actions:

- Compile **daily bulk scheduling** requests and send them to the ASC for SNAP scheduling; and
- Fill officer work orders, as biometric and fingerprint results post for DACA requestors.

*Continued next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006874

## **Service Center Intake**, Continued

**Biometric Rescheduling**

All reschedule requests will go through the centralized rescheduling facility. The centers will be notified via a spreadsheet from the centralized rescheduling facility upon rescheduling of an original ASC appointment.

The requestor can reschedule multiple times within 87 days of the initial ASC appointment date. If the requestor fails to appear at the ASC within the 87 days, the DACA request will be denied for abandonment.

If the requestor asks for an appointment beyond 30 days into the future, the centralized rescheduling facility will send a scanned request to the Service Center for processing. The rescheduled ASC appointment date is not to exceed the 87-day window.

**Biometric No Shows**

If a requestor is originally scheduled for an ASC appointment and does not appear, the center should issue RFE DACA 130. The RFE should include other deficiencies identified during the review of the request. A written response to the RFE is not required, provided that the requestor goes to the rescheduled ASC appointment and no other evidence is requested.

The centers will be notified via a spreadsheet from the centralized rescheduling facility upon rescheduling of an original ASC appointment. The center will then hold the case for the new appointment, and if the requestor fails to appear again, or if the requestor fails to reschedule a second appointment within 87 days based on that RFE, the case will be denied for abandonment.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Service Center Intake, Continued

| | |
|---|---|
| **Homebound Biometrics Capturing** | The ASC appointment notice directs the requestor to call the National Customer Service Center (NCSC) telephone line if they are unable to attend their biometrics appointment due to medical limitations. When contacted, the NCSC representative will ask the requestor to provide information found on his or her appointment notice. The requestor will also be asked questions about his or her request for special accommodations. If evidence is required to support the special accommodations request, the NCSC representative will explain to the requestor how to submit evidence. The NCSC will contact the designated POC at the ASC regarding the request. If the POC determines the requestor qualifies for special accommodations, the POC will then obtain information about the requestor's situation and make arrangements for the requestor's biometrics capturing. |
| | When a requestor contacts the Centers directly for information about special accommodations, the Centers should issue DACA Call up 150C from Appendix D to inform him or her about how to request special accommodations. |
| **Officer Work Orders** | The contractor will perform the following actions:<br>• In accordance with local procedures, screen prints may be provided to officers to reduce the need to search systems at the point of adjudication; and<br>• Adjudication ready DACA files will be delivered to officers. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

## Service Center Intake, Continued

**Non-Sufficient Funds (NSF)**

*Background*

This section addresses the procedures to be used for completing the non-sufficient funds (NSF) cases. The NSF cases are identified by the Burlington Finance Center (BFC) and are listed in the NSF "New Bill Report" in the Federal Finance Management Service (FFMS) system.

For DACA, Forms I-821D and I-765 must be filed concurrently. There is no fee for Form I-821D. The $380 fee is required for Form I-765. The $85 biometrics fee is also required. Lockbox will be looking for $465, either in one check or in two checks. The I-765 fee and the biometrics fee will be bundled in C3 and listed as one fee -- $465. If the DACA requestor does not remit $465, Lockbox will reject the entire filing. Even when the proper fee has been remitted, it is possible that payment may be returned due to NSF. The NSF can occur in a combination of scenarios: the fees are paid in one check and the entire check is returned as NSF; or the fee is paid in two checks and either or both checks are returned as NSF. Failure of either fee or both fees to clear the bank, or being made good within the 14 calendar days allowed, will result in denial of Form I-821D and rejection of Form I-765. See Chapter 9 for more information on the denial.

*Retrieving the New Bill Listing Report in FFMS*

Fee payments in the form of personal checks, cashier checks, or money orders are submitted along with a DACA request. When a discrepancy is found in a payment, such as stale, dated, or without sufficient funds, etc., the bank will notify the Burlington Finance Center (BFC) in Vermont. These non-payment checks or money orders are referred to as bounced checks. The BFC will compile all the bounced checks and enter the data into the FFMS system, create an invoice number for each bounced check case, and place them on the bounced check "New Bill Report." The Service Center Records Divisions, on a daily basis, access this data via the FFMS website to download a bounced check "New Bill Report."

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006877

# Service Center Intake, Continued

**Non-Sufficient Funds (NSF)** (continued)

*Invoicing the Payee*

Along with listing the case in FFMS, the BFC will also mail an invoice to the payee of the fee, requesting that the new payment be sent to them and that a $30 NSF charge also be paid. The $30 NSF charge is assessed on <u>each</u> bounced check.

*Notifying the DACA Requestor*

The Service Center will mail an informational notice on the I-797C to the DACA requestor regarding the specific NSF payment. In this case, the DACA requestor will receive the NSF notice, regardless of whether they are the payee or not. In this manner, both the payee and the DACA requestor receive notification if they are different parties.

*Placing Case in Hold Status*

To reflect the hold status of the case, the action codes will be recorded in C3, are as follows:

 CHECK BOUNCED, CASE NOT YET COMPLETED and CHECK DEFICIENCY NOTICE 1 SENT

Place file on a hold shelf.

*Completion procedure when case is paid*

The bounced check paid cases are identified by Burlington Finance Center and are listed in the bounced check "Paid Activity Report" in the FFMS system. The Service Center Records Divisions access this data daily via the FFMS website to download the bounced check Paid Activity Report.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006878

## **Service Center Intake**, Continued

**Non-Sufficient**
**Funds (NSF)**
(continued)

*System Update Steps*

The CLAIMS GUI I-765 record will be accessed. The new paid date from
the Paid Activity Report will become the new Received Date in the record.

The remittance screen will be updated with the action code:
`LE` FEE COLLLECTED ELSEWHERE

A modified receipt notice will be printed and mailed reflecting the new
Received Date. The action code recording this is: `LE` MODIFIED
RECEIPT NOTICE 1 SENT

The hold status will be removed from the record. The action code recording
this is: `LE` BOUNCED CHECK CORRECTED ON CASE NOT YET
COMPLETED

The case is now ready to proceed again through the pre-adjudication process.
Schedule the biometrics appointment in SNAP and place the file on the
biometrics hold shelf.

*Mailing the Receipt notice*

The receipt notice states:
"This is to notify you that we have received full payment for the above
referenced application or petition and processing has resumed. Your filing
date has been adjusted to reflect the receipt of payment. We will notify you
separately of our decision on the application or petition."

*Completion procedure when case remains unpaid*

Unless fee exempt, the DACA requestor has 14 calendar days from the
invoice date to submit proper payment by credit card, money order or
cashier's check to the BFC. The proper payment is $465 -- $380 for the Form
I-765 and $85 for the biometrics fee. If the $465 was paid in two checks,
either check exceeding the 14 calendar days allowed to correct NSF status
will result in rejection of Form I-765.

- Pull the files that have been staged on the bounced check hold shelf for
  over 14 days and verify the case in the CLAIMS system and determine
  the bounced check "paid" status in FFMS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

## Service Center Intake, Continued

**Non-Sufficient Funds (NSF)** (continued)

The FFMS "Status" box indicates "OPEN"

The "Open" status means the BFC has not received the bounced check payment in full from the debtor. After the 14-day hold on the bounced check hold shelf, a C3/GUI application/petition shall be pulled from the hold shelf for review. If it has been over 14 days past due and the case status shows "Open" in FFMS and there is no indication of a "Change of the Due Date" made by the BFC in the in the Customer Log (RM043) screen, reject the Form I-765 as "untimely paid."

Recording the Rejection

The case is accessed in C3 and the action code recorded is: **LE** BOUNCED CHECK NOT CORRECTED, REJECTED

Form I-765 form will be closed by the Records Analyst in this manner:
In the "Action Block" of the application, stamp in red or black ink **"REJECTED Bounced Check."**

A memorandum is printed from a template in MS Word recording the following data:

- Today's Date
- Form Type
- A# (if available)
- Receipt #
- Date Rejected
- Invoice #
- Amount
- Debtor's Name (Optional)

Place this memo on the top of the right side of the DACA A-file.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006880

## Service Center Intake, Continued

**Non-Sufficient Funds (NSF)** (continued)

*Mailing the Rejection*

A rejection notice printed on I-797 is generated from C3 and mailed to the requestor. It reads:

We previously notified you that the payment for the filing fee in the above case was returned. The Burlington Finance Center did not receive payment within 14 days of the invoice.

Your application or petition has been rejected as improperly filed. Any previously assigned priority or processing date is no longer applicable. A new application or petition must be filed, and a new fee is required, if you wish to pursue the benefit. Personal Checks will not be accepted.

*Disposition of the I-821D*

After processing the rejection for Form I-765 due to the NSF, on **the same day**, route the A-file to a DACA Supervisory Immigration Services Officer for issuance of a denial for the Form I-821D.

The denial should be issued per the instructions in Chapter 9 of this SOP.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**Version August 28, 2013** 32

Confidential

DEF - 00006881

# Chapter 6: Background and Security Checks

**Introduction**

Background and security checks will be conducted for all DACA requests. As part of the background check, USCIS requires that specific security checks or a combination of checks are completed for Forms I-821D and I-765. The background checks refer to the analysis of the results of the security checks or any other identified concern relating to national security or public safety and the actions required to resolve the concern. The resolution must be conducted in accordance with current NaBISCOP and CARRP policies.

Fraud related concerns that arise during the course of background and security checks should be addressed according to the March 2011 SOP, 2008 ICE/USCIS MOA and Chapter 8, Section K of this SOP. Fraud related issues will be referred to CFDO.

The following specific background and security checks apply to DACA requestors:

- 
- **LE** (requestors aged 14 and older).

**Responsibility**

All DACA requestors with national security issues, **LE** hits, or other criminality concerns will be processed by the BCU DACA team per the following guidance:

- **National Security:** All **LE** with national security issues will be resolved through the established CARRP process. All cases with National Security concerns will be resolved and adjudicated by the CARRP officer attached to the BCU DACA Team.

- 



- 

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential  DEF - 00006882

## Background and Security Checks, Continued

**Responsibility**
(continued)



**System Updates for DACA File Movement Into and Out of BCU**

For reporting purposes, DACA file movement into and out of the BCU will require the following updates in C3:

- "Sent to Background Check Unit (BCU) for Resolution" **LE** when sending a DACA request to the BCU; and
- "Received from Background Check Unit (BCU) with Resolution" **LE** when receiving a DACA request from the BCU for final processing.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                    DEF - 00006883

# Background and Security Checks, Continued

**Overview of Background Check Process**
Appendix C illustrates a high level overview of the background check process once potentially derogatory information has been identified as a result of the security checks, or from other sources.



### A. Procedures for confirming a match

USCIS personnel must:

- Determine if the subject of the derogatory information relates to the requestor; and
- Compare the information from the security check or other source to the biographic, biometric information, and physical descriptors about the individual.

USCIS personnel may use any combination of available identifiers, to assist in the determination. While USCIS officers primarily rely on best judgment and experience in determining whether the information relates to the individual, USCIS personnel should consult with a supervisor if there is any uncertainty as to whether the information relates to the DACA requestor. If there continues to be any uncertainty about the match, supervisors may work through their chain of command and with HQ, if necessary.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   35

Confidential

DEF - 00006884

# Background and Security Checks, Continued

| | |
|---|---|
| **Overview of Background Check Process** (continued) | **B. Triage Information** |

**B. Triage Information**

1. *Conclusive Match*

   Once it is determined that the information relates to the individual, USCIS personnel must determine if the results fall into the following categories, which require special processing:

   - National Security;
   - EPS or other criminal cases; or
   - Articulated immigration Fraud.

   Criminal hits, which involve a violation of U.S., state, or local criminal law, but do not rise to the level of an EPS concern, as defined in the November 7, 2011, NTA memorandum, impact each case differently and should be considered during the adjudication process to determine if such activity is germane to the request for consideration of deferred action for childhood arrivals. Criminal activity occurring outside of the United States (including foreign convictions) that may be revealed during routine background checks or which the requestor may have disclosed on the deferred action request, factor into the evaluation of whether the requestor poses a public safety concern, under the totality of the circumstances.

2. *Inconclusive Match*

   When USCIS officers are unable to confirm the match after exhausting available electronic systems searches and other resources, personnel must consult their chain of command to determine the appropriate follow-up action. In some instances, **LE** an RFE to confirm the match, or other appropriate action may be required. USCIS personnel must then document the hit, include a statement in the Resolution Memorandum or other memoranda, as required, explaining the inconclusive nature of the match determination, the actions taken to resolve the hit, and refer the case to the appropriate unit or field office to confirm the match. If USCIS personnel are still unable to confirm the match, refer the case through the chain of command.

**C. Resolve Concern**

Resolution may require a variety of activities to be completed by the BCU which include, but are not limited to: **LE**

**LE**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator

**Version August 28, 2013**  36

# Background and Security Checks, Continued

**Overview of Background Check Process** (continued)

Deconfliction is the coordination between USCIS and another governmental agency or record owner to ensure that planned adjudicative activities (e.g., interview, request for evidence, site visit, decision to grant or deny, issue an NTA, and the timing of such) do not compromise or impede an ongoing investigation or other record owner interest.

**D. Document the Resolution**

Each hit requires documentation by the BCU DACA Team member of any resolution. Review the specific information for each background and security check for more information on documenting the resolution.

**E. Adjudication**

Once the NS/EPS/other criminal concern has been resolved, the BCU DACA ISO should proceed with adjudication.

**TECS**

USCIS will conduct TECS batch queries on the primary names and DOBs on all DACA requests within 15 calendar days of initial receipt. The objective of the batch query is to query a large number of records at the same time and confirm the existence or non-existence of information that relates to the search criteria entered. Currently, USCIS has access to all wants, warrants, and lookouts listed in TECS and certain files within the NCIC (National Crime Information Center) database through TECS.

In addition, USCIS has access to other types of records, referred to as "hot files." The following records are "hot files":

- Wants/Warrants;
- Foreign Fugitives;
- Missing Persons;
- Registered Sex Offenders;
- Deported Felons;
- Supervised Release;
- Protection Orders;
- Terrorist Organization Members; and
- Violent Gang Members.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006886

# Background and Security Checks, Continued

**TECS**
**(continued)**

Officers must determine whether the result of a security check relates to the subject or does not relate (DNR). Officers review and resolve security checks and complete the background checks. For **LE** procedures, search criteria and best practices, refer to the current NaBISCOP policy.



The following items, if present, must be reviewed in the DACA A-file for name and DOB combinations and aliases, and require a TECS query:

- Form I-821D;
- Form I-765;
- All supporting documents; and
- Any other documents in the A-file relating to the DACA request including, but not limited to the following:
  - Passports;
  - Visas;
  - Border Crossing Cards (BCC);
  - Forms I-94;
  - Birth Certificates;
  - Marriage Certificates;
  - Divorce Decrees;
  - Diplomas/Academic Transcripts;
  - Student Identification Cards;
  - Military Identification Cards;
  - Driver's Licenses;
  - Social Security Cards; or
  - Business/Membership Cards.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006887

## **Background and Security Checks,** Continued

**Types of Results from TECS Queries**



*Continued on next page*

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006888

## Background and Security Checks, Continued

**Resolution Memorandum**

The resolution memorandum is the formal documentation of the reconciliation of a related hit. This is a mandatory action that must be completed before rendering a final adjudicative decision. Before completing the adjudication, the officer should ensure that each resolution memorandum completely resolves the hit. For a related hit, a separate resolution memorandum must be completed for each subject with a related hit and each file containing a related hit. For procedures and formats for the resolution of related hits, refer to the current NaBISCOP policy.

**FBI Fingerprint Check**

The FBI Fingerprint Check provides summary information of an individual's administrative or criminal record within the United States. The FBI Fingerprint Check is conducted through the Integrated Automated Fingerprint Identification System (IAFIS). The IAFIS is a national fingerprint and criminal history system maintained by the FBI's Criminal Justice Information System (CJIS) Division. State, local, and Federal law enforcement agencies submit fingerprints and corresponding administrative or criminal history information to IAFIS. Participation by state and local agencies is not mandatory, so the FBI Fingerprint check does not contain records from every jurisdiction. The information contained in the record is obtained using prior fingerprint submissions to the FBI related to arrests and, in some instances, Federal employment, naturalization, or military service.



Issues of criminality arising from an IDENT, IDENT handling procedures, and adjudication of the case based on the IDENT, are addressed more fully in Chapter 8, Section G of this SOP.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator

Confidential                                                   DEF - 00006889

## Background and Security Checks, Continued

**FBI Fingerprint Check Procedures**

All individuals filing a DACA request will be scheduled for biometrics capture (photo, fingerprints, and signature) at an ASC regardless of whether biometrics were captured for the requestor from a previous filing with USCIS within the last 15 months. DACA requestors under the age of 14 will have the press print captured instead of full fingerprints.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES):
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

Confidential DEF - 00006890

# Chapter 7: DACA Overview

**Filing**

All individuals requesting DACA must file their request individually and satisfy the DACA guidelines in their own right; USCIS will not consider deferring removal action of an individual under DACA based on their familial relationship to someone who has received DACA. There is no derivative DACA.

**Commonwealth of the Northern Mariana Islands (CNMI) Not Eligible**

The CNMI is part of the United States and is not excluded from this process. However, because of the specific guidelines for DACA, individuals who have been residents of the CNMI are in most cases unlikely to qualify for the program because they must, among other things, have come to the United States before their 16th birthday and have resided continuously in the United States since June 15, 2007.

Under the Consolidated Natural Resources Act of 2008, the CNMI became part of the United States for purposes of immigration law only on November 28, 2009. Therefore, entry into, or residence in, the CNMI before that date is not entry into, or residence in, the United States for purposes of DACA.

USCIS has used parole authority in a variety of situation in the CNMI to address particular humanitarian needs on a case-by-case basis since November 28, 2009. If an individual lives in the CNMI and believes that he or she meets the guidelines for DACA except that his or her entry and/or residence to the CNMI took place entirely or in part before November 28, 2009, USCIS will consider the situation on a case-by-case basis for a grant of parole. Individuals who believe this situation applies to them are instructed to make an appointment through INFOPASS with the USCIS Application Support Center in Saipan to discuss their case with an immigration officer.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 42

Confidential DEF - 00006891

## DACA Overview, Continued

| | |
|---|---|
| **Initial DACA Package** | A complete DACA package must include the following items: |

1. Form **I-821D**, Consideration of Deferred Action for Childhood Arrivals, properly filed with proper signature.
2. Form **I-765**, Application for Employment Authorization with **I-765 WS**, properly filed with proper signature, the base filing fee, and the biometric services fee.   The fees for Form I-765, and the biometric services fee are not eligible for fee waiver consideration.*
3. Evidence of identity to include date of birth, which would establish compliance with the  upper and lower age limits.
4. Evidence of entry prior to the requestor's 16th birthday.
5. Evidence of continuous residence since June 15, 2007, up to the date of filing.
6. Evidence of unlawful status on June 15, 2012, if admitted or paroled.
7. Evidence of presence in the United States on June 15, 2012.
8. Evidence that any absences from the United States during the required period of continuous residence were brief, casual, and innocent absences.
9. Evidence that the requestor is currently in school at the time of filing, graduated or obtained a certificate of completion from a U.S. high school, public or private college, or university or community college, obtained a general educational certificate (GED) or other equivalent State-authorized exam in the United States, or is an honorably discharged veteran of the Coast Guard or U.S. Armed Forces.

*If the requestor has been determined exempt from the fee. The DACA package must be accompanied by the exemption approval letter from USCIS Headquarters.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   43

Confidential

## DACA Overview, Continued

| | |
|---|---|
| **DACA Guidelines** | An individual meeting the following guidelines may be favorably considered for DACA if, under the totality of the circumstances, he/she: |

1. Entered without inspection before June 15, 2012, or his or her lawful immigration status expired as of June 15, 2012. For DACA purposes, the phrase "in unlawful status as of June 15, 2012" means that he/she never had a lawful immigration status on or before June 15, 2012, or any lawful status or parole that he/she obtained prior to June 15, 2012 had expired before June 15, 2012;

2. Was under the age of 31 as of June 15, 2012 (Born after June 15, 1981 so was not age 31 or older on June 15, 2012);

3. Came to the United States prior to reaching his/her 16th birthday;

4. Has continuously resided in the United States since June 15, 2007, up to the date of filing;

5. Was present in the United States on June 15, 2012, and at the time of making his/her request for consideration of deferred action with USCIS;

6. Is currently in school at the time of filing, has graduated or obtained a certificate of completion from a U.S. high school, has obtained a GED certificate or other equivalent State authorized exam in the United States, or is an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces; and

7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

 DEF - 00006893

# Chapter 8: Adjudication of The DACA Request

## A. Procedural Overview

**Evaluating the Evidence**

When evaluating the evidence submitted in support of a request for DACA consideration, refer to the discussion of the different types of evidence, the weight to be given to such evidence, and the standards of proof, all of which are discussed in Chapter 1.

**Request for Evidence (RFE) versus Notice of Intent to Deny (NOID)**

Officers will **NOT** deny a DACA request solely because the DACA requestor failed to submit sufficient evidence with the request (unless there is sufficient evidence in our records to support a denial). As a matter of policy, officers will issue an RFE or a Notice of Intent to Deny (NOID).

If additional evidence is needed, issue an RFE whenever possible.

When an RFE is issued, the response time given shall be 87 days. A list of DACA RFE call-ups and the actual templates can be found in Appendix D.

When a NOID is issued, the response time given shall be 33 days.

**Unobtainable A-files**

After requesting an A-file from the FCO, there may be occasions when there is no response or the file cannot be released (e.g., pending interview, etc.). After three unsuccessful attempts to obtain the file from a field office via CIS or from ICE, adjudicate the DACA filing from the T-file.

If the A-file is with ICE, the center should send three requests via CIS using standard procedures. However, if the A-file is not received from ICE within the 30 days allowed after the initial request, the center's Records Section should also send a manifest containing a list of the A-files requested from ICE to the designated ICE e-mail box, which has been created specifically for the DACA workload. The center's Records Section has this e-mail box and will designate a primary and an alternate Point of Contact who will send the manifest.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                    DEF - 00006894

**A-File Requests from USCIS Field/Asylum Office**

Centers may release an A-file to a USCIS Field Office or Asylum Office without SCOPS approval whenever the A-file request is based upon adjudication of a pending of a pending Form I-589, Form I-485 (or motion to reopen/reconsider I-485), or Form N-600 located within the requesting office unless the requestor's case contains novel, complex, or sensitive information (i.e., national security concern, currently in detention, etc.).

In these instances, Centers are instructed to notify SCOPS of the novel, complex, or sensitive information within the case and wait for approval to release the A-file.

Whenever the A-file is released to a USCIS Field Office or Asylum Office, Centers will hold adjudication of a Form I-821D and I-765 and send the A-file with the DACA forms pending. Prior to release, Centers should coordinate with their Records Division to identify a POC within the requesting office to inform the POC that the A-file must be returned as soon as final adjudication is rendered so that appropriate action can be taken on the DACA forms.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**Version August 28, 2013**    46

Confidential

**CITRIX/ EOIR
I-485**

Eligible individuals in removal proceedings can apply for various immigration benefits. In order to file their applications with the Immigration Court, these individuals must file a copy of the Form I-485 with the corresponding fee with the Texas Service Center. These forms look like regular filings; however the EOIR I-485 appears in CLAIMS with an "X" in the current status field as shown in the Image A below. The Texas Service Center will issue a receipt notice to the applicant and retain the copy of the form for a period of six months. Centers should not attempt to request this copy. Once an EOIR I-485 has been identified, Centers should check the Central Index System (CIS) to verify if the Immigration Judge rendered a decision. See Image B. If Lawful Permanent Status was not granted, a pending Form I-821D should be adjudicated on its merits even if the case remains open in CITRIX. If status was granted, Centers will deny the case using DACA 501 from Appendix K.

Image A.



Image B.



**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**Version August 28, 2013** 47

Confidential

DEF - 00006896

**Duplicate Filings**

If the first request was approved before the second request was filed, please send a Request for Adjudicative Guidance to the HQSCOPSDACA mailbox.

If the first request was denied before the second request was filed, consider the second request on its merits.

If the first request was still pending when the second request was filed, the ISO should review both requests and supporting documentation. If it is the same requestor and there are no articulable elements of fraud, then the ISO should take the following action:

a) If after reviewing both requests, only one request is approvable and there is no derogatory information in the other request that would otherwise disqualify the requestor:

 1. Approve the request that is approvable.

 2. Deny the other request using the denial template entitled "USCIS Already Deferred Action."

b) If after reviewing both requests, both requests are approvable:

 1. Approve the request that was received first.

 2. Deny the other request using the denial template entitled "USCIS Already Deferred Action."

c) If after reviewing both requests, neither request is approvable:

 1. Take action on each case as separate requests based on the merits of each case (i.e., RFE if insufficient evidence, NOID if clearly does not meet guidelines, etc.).

 2. If one or both requests become approvable after the RFE/NOID response is received, follow the guidance listed in a) or b) above for those scenarios.

 3. If neither request becomes approvable, deny both requests using the appropriate checkbox or paragraph within Appendix F or Appendix K.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 48

Confidential

Case 1:18-cv-00068  Document 225-6  Filed on 07/21/18 in TXSD  Page 147 of 525

# C. Determining if Guidelines are Met

| | |
|---|---|
| **Introduction** | Individuals may be considered for DACA upon showing that they meet the prescribed guidelines by a preponderance of the evidence. The evidentiary standards are discussed in Chapter 1. If additional information is needed for DACA consideration, issue an RFE. Appendix D has a list of DACA RFE call ups. |
| **Identity** | Acceptable evidence may consist of, but is not limited to: |

**Identity**

Acceptable evidence may consist of, but is not limited to:
- A passport,
- A birth certificate accompanied by some type of photo identification,
- Any national identity document from the requestor's country of origin bearing the requestor's photo and/or fingerprint;
- Any U.S.-government immigration or other document bearing the requestor's name and photograph (e.g., Employment Authorization Documents (EADs), expired visas, driver's licenses, non-driver cards);
- Any school-issued form of identification with photo;
- Military identification document with photo
- State-issued Photo ID showing date of birth; or
- Any document that the requestor believes is relevant.

The Matricular Consular or other form of consular identification issued by a consulate or embassy in the United States will be accepted as proof of identity.

Expired documents are acceptable.

If identity is not established, then issue RFE DACA 100 call up from Appendix D.

**Age at Time of Filing**

If the DACA requestor is not in removal proceedings, does not have a final removal order, or does not have voluntary departure, he/she is to be age 15 or older to file the DACA request. To determine the requestor's age at the time of filing, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.

If the DACA requestor is in removal proceedings (including cases that have been administratively closed), which includes having an order of voluntary departure after proceedings were initiated or a final order, he/she may be under age 15 at the time of filing the DACA request.

Regardless of whether the DACA requestor is in removal proceedings or not, he/she was born after June 15, 1981 and meets the remaining guidelines in the Secretary's memorandum.

navigation

*Continued on next page*

**Version August 28, 2013**    50

boilerplate

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006899

## C. Determining if Guidelines are Met, Continued

**Arrived in the United States Prior to 16th Birthday**

The Secretary's memorandum states as one of the guidelines to be met before an individual is considered for DACA is that he/she arrived in the United States prior to reaching his/her 16th birthday. To determine the date of arrival, review the response to Part 1, questions 13 through 17 of Form I-821D for the date and place of initial entry into the United States and status at entry. In addition, review question 6 in Part 1 and the requestor's birth certificate or other acceptable evidence establishing the requestor's date of birth.

If the requestor indicates a status in response to question 15 of Form I-821D, but does not provide the I-94# or a copy of the I-94 or any other document, such as a copy of his/her passport showing the date of initial entry, perform a systems check (SQ94/Arrival Departure Information System (ADIS)) to validate the date of entry, if needed.

If the requestor entered "no status" in response to question 15 of Form I-821D, or if the requestor indicates that he/she arrived with a status or was paroled into the United States, but this cannot be validated through a systems check, review the totality of the evidence submitted to establish whether the individual entered before age 16.

If the totality of the evidence does not establish that the requestor arrived in the United States before his/her 16th birthday, issue RFE DACA 103 call up from Appendix D for evidence of the date of arrival.

**Present in the United States on June 15, 2012**

The Secretary's memorandum states as one of the guidelines to be met before an individual may be considered for DACA that the individual was present in the United States on June 15, 2012. To determine if the requestor was present in the United States on June 15, 2012, review the responses to Part 1 regarding the date of entry, status at entry and date authorized stay expired, and the responses to the questions in Part 2 regarding all absences from the United States since June 15, 2007. Review the totality of the evidence submitted. The evidentiary standards are discussed in Chapter 1. If the requestor arrived before June 15, 2007, and there is no indication of any departure and the evidence submitted establishing his/her presence in the United States on June 15, 2012 is credible, then this guideline has been met.

If a given document does not specifically refer to June 15, 2012, review the dates on all the documentation submitted in its totality to establish presence in the United States on that date.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   51

Confidential                                    DEF - 00006900

# C. Determining if Guidelines are Met, Continued

**Present in the United States on June 15, 2012 (continued)**

The following are examples of acceptable evidence to establish presence in the United States on June 15, 2012. This list of examples is not exhaustive.

| Evidence | Acceptable Documentation |
|---|---|
| Employment Records | • Pay stubs;<br>• W-2 Forms;<br>• Federal, State, or local income tax returns; or<br>• Letters from employer(s) or, if the DACA requestor has been self-employed, letters from banks, and other firms with whom he/she has done business.<br><br>In all of these documents, the employee's name and the name of the requestor's employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.<br><br>Such letters must include: **(1)** the requestor's address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** a brief summary of the requestor's duties with the company. |
| Receipts, Bills, Letters | • Rent receipts;<br>• Utility bills (gas, electric, telephone, etc.) bearing the requestor's name (or family name if residing at same address) and address; or<br>• Receipts or letters from companies showing the dates during which the requestor received service. |
| School Records | Transcripts, letters, report cards, etc., from the school(s) that the requestor attended in the United States showing the name of school(s) and the period(s) of school attendance. |
| Medical Records | Hospital or medical records showing medical treatment or hospitalization of the requestor. Such records should show the name of the medical facility or physician, as well as the date(s) of the treatment or hospitalization. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

    DEF - 00006901

## C. Determining if Guidelines are Met, Continued

**Present in the United States on June 15, 2012** (continued)

| Evidence | Acceptable Documentation |
|---|---|
| Memberships | • Official records from a religious entity in the United States confirming the requestor's membership or attendance at the entity, attendance at entity events, or participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.). <br> • Documentation showing membership in community organizations (e.g. Scouts). |
| Military Records | Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records). |
| Additional Documents | Additional documents to support the requestor's claim may include: <br> • Money order receipts for money sent in or out of the country; <br> • Passport entries; <br> • Birth certificates of children born in the United States; <br> • Dated bank transactions; <br> • Correspondence between the DACA requestor and other persons or organizations; <br> • U.S. Social Security card; <br> • Selective Service card; <br> • Automobile license receipts, title, vehicle registration, etc.; <br> • Deeds, mortgages, contracts to which the DACA requestor has been a party; <br> • Tax receipts; <br> • Insurance policies, receipts, or postmarked letters; and/or <br> • Any other relevant document. |

If the totality of the evidence does not establish that the requestor was present in the United States on June 15, 2012, issue RFE DACA 105 call up from Appendix D for additional evidence.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential DEF - 00006902

## C. Determining if Guidelines are Met, Continued

**Unlawful Immigration Status on June 15, 2012**

To be considered for DACA, the requestor is to demonstrate that he/she was in an unlawful status on June 15, 2012. For DACA purposes, the phrase "in unlawful status" means that the requestor never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that he/she obtained prior to June 15, 2012, had expired before June 15, 2012.

To determine whether the requestor was in an unlawful status on June 15, 2012, review the responses to Part 1 of Form I-821D regarding date of entry, status at entry, and any date that authorized stay or parole expired, if such authorized stay or parole existed. If the requestor was admitted for duration of status or for a period of time that extended past June 14, 2012, but violated his/her immigration status (e.g., by engaging in unauthorized employment, failing to report to his/her employer, or failing to pursue a full course of study) before June 15, 2012, USCIS will not consider his/her case for DACA unless the Executive Office for Immigration Review terminated his/her status by issuing a final order of removal against him/her before June 15, 2012.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006903

# D. Determining if Guidelines are Met, Continued

Examples of documents that may show the requestor's immigration status on June 15, 2012 include, but are not limited to the following:

- I-94/I-95/I-94W Arrival/Departure Record showing the date the requestor's authorized stay expired;
- If the requestor has a final order of exclusion, deportation, or removal issued on or before June 15, 2012, a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing the requestor into deportation, exclusion, or removal proceedings;
- Any other document that is relevant to show that the requestor lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

If needed, officers should conduct a systems check (i.e., to determine if a record exists) for the DACA requestor that will help in establishing his/her unlawful status on June 15, 2012.

If the evidence submitted does not establish that the requestor was in an unlawful status on June 15, 2012, issue RFE DACA 104 call up from Appendix D for additional evidence.
An individual who had Temporary Protected Status (TPS) on June 15, 2012, will not be considered for deferred action for childhood arrivals.

**Not Age 31 or Older on June 15, 2012**

The Secretary's memorandum provides that one of the guidelines to be met before an individual is considered for DACA is that the individual was not age 31 or older on June 15, 2012. In other words, the DACA requestor was born after June 15, 1981. To determine whether the requestor was born after June 15, 1981, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.

If there is no evidence establishing the requestor's date of birth, issue DACA RFE 140 call up from Appendix D.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential DEF - 00006904

## C. Determining if Guidelines are Met, Continued

**Continuous Residence (CR)**

The individual requesting DACA is to submit evidence that he/she has resided continuously in the United States since June 15, 2007, or earlier, and up to the present time. Present time means the date of filing.

If the answers to any of the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D are blank or if page 3 of the form is missing and no documentation was submitted, or the documentation submitted does not reasonably show when the requestor arrived and that the requestor meets the continuous residence (CR) guideline, issue an RFE. Include a copy of the original Form I-821D (if page 3 is missing, also include a blank page 3) with the RFE asking the requestor to provide the missing answers and to provide documentation that may establish CR.

The following are examples of acceptable evidence of (CR). This list of examples is not exhaustive.

| Evidence | Acceptable Documentation |
|---|---|
| Employment Records | • Pay stubs;<br>• W-2 Forms;<br>• Federal, State, or local income tax returns; or<br>• Letters from employer(s) or, if the DACA requestor has been self-employed, letters from banks, and other firms with whom he/she has done business.<br><br>In all of these documents, the employee's name and the name of the requestor's employer or other interested organization is to appear on the form or letter, as well as relevant dates. Letters from employers are to be signed by the employer and are to include the employer's contact information.<br><br>• Such letters are to include: **(1)** the requestor's address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; **(4)** and a brief summary of the requestor's duties with the company |
| Receipts, Bills, Letters | • Rent receipts;<br>• Utility bills (gas, electric, telephone, etc.) bearing the requestor's name (or family name if residing at same address) and address; or<br>• Receipts or letters from companies showing the dates during which the requestor received service. |

*Continued on next page*

## C. Determining if Guidelines are Met, Continued

| | Evidence | Acceptable Documentation |
|---|---|---|
| **Continuous Residence (CR)** (continued) | School Records | • Transcripts, letters, report cards, etc., from the school(s) that the requestor attended in the United States showing the name(s) of the school(s) and periods of school attendance. |
| | Medical Records | Hospital or medical records showing medical treatment or hospitalization of the requestor. Such records are to show the name of the medical facility or physician, as well as the date(s) of the treatment or hospitalization. |
| | Memberships | • Official records from a religious entity in the United States confirming the requestor's membership or attendance in the entity, attendance at entity events, or participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).<br>• Documentation showing membership in community organizations (e.g. Scouts). |
| | Military Records | Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records). |
| | Additional Documents | Additional documents to support the requestor's claim may include:<br>• Money order receipts for money sent in or out of the country;<br>• Passport entries;<br>• Birth certificates of children born in the United States;<br>• Dated bank transactions;<br>• Correspondence between the DACA requestor and other persons or organizations;<br>• U.S. Social Security card;<br>• Selective Service card;<br>• Automobile license receipts, title, vehicle registration, etc.;<br>• Deeds, mortgages, contracts to which the DACA requestor has been a party;<br>• Tax receipts;<br>• Insurance policies, receipts, or postmarked letters; and/or<br>• Any other relevant document. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential   DEF - 00006906

# C. Determining if Guidelines are Met, Continued

**Brief, Casual and Innocent (BCI) Absence on CR**

A brief, casual, and innocent absence from the United States will not interrupt the DACA requestor's continuous residence. A departure made before August 15, 2012, will not be disqualifying if the departure was "brief, casual, and innocent." Travel occurring after August 15, 2012, will not be considered brief, casual, and innocent, unless removal has been deferred under DACA and advance parole have been granted.

If the requestor indicated in Part 2 of the Form I-821D that he/she has been absent before August 15, 2012, review the reason for the absence and any evidence submitted to show that it was brief, casual, and innocent.

Examples of evidence establishing that an absence was brief, casual, and innocent and therefore did not interrupt the requestor's continuous residence include, but are not limited to:

- Plane or other transportation tickets or itinerary showing the travel dates;
- Passport entries;
- Hotel receipts showing the dates the requestor was abroad;
- Evidence of the purpose of the travel (e.g., the requestor attended a wedding or funeral);
- Copy of any advance parole documents; or
- Any other relevant/probative evidence that could support a brief, casual, and innocent absence, as that term is defined in the definitions section of this SOP.

**Note that a departure made while under an order of voluntary departure or deportation, exclusion, or removal is not brief, casual, and innocent.**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential DEF - 00006907

# C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| **Effect of Travel Outside of the United States After August 15, 2012** | • Travel outside the United States after August 15, 2012 and before the DACA request is filed:<br>  ○ The departure interrupts a requestor's continuous residence in the United States. The requestor cannot meet the continuous residence guideline for DACA and removal action should not be deferred.<br>• Travel outside the United States while the DACA request is pending:<br>  ○ The departure shall be deemed an abandonment of the DACA request; therefore, the request will be denied for abandonment.<br>• Travel outside the United States after removal action has been deferred under DACA, but without advance parole:<br>  ○ Deferred action under DACA is terminated automatically. |
| **CR/BCI Not Met** | If CR is not met, issue the following RFE DACA 101 call up from Appendix D.<br><br>If no documentation is submitted to show that a departure was brief, casual, and innocent, or the documentation is not sufficient, issue the following RFE DACA 102 call up from Appendix D.<br><br>If routine systems checks, documentation submitted with the DACA request, or evidence in the A-file indicate that a departure was made while under an order of voluntary departure or deportation, exclusion, or removal, issue a Notice of Intent to Deny (NOID) with the opportunity for the requestor to rebut the derogatory information. See Appendix E for NOID Template. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   59

Confidential                                          DEF - 00006908

# C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| **Education** | To meet the educational guideline for DACA consideration, a DACA requestor may show that he/she is currently in school, has graduated or obtained a certificate of completion from a U.S. high school or has a recognized equivalent of a high school diploma under State law, public or private college, or university or community college, or has obtained a General Educational Development (GED) certificate or equivalent State-authorized exam in the United States. Note that evidence of enrollment in on-line courses is acceptable. When reviewing such evidence, the completeness, credibility, relevance, and sufficiency are germane and take precedence over the electronic medium over which the education was received.

Each component of this guideline is discussed in more detail below. |
| **Currently In School** | To be considered "currently in school," a requestor is to be enrolled, at the time of filing, in:
- a public or private elementary school, junior high or middle school, high school, or secondary school;
- an education, literacy, or career training program (including vocational training or an English as a Second Language (ESL) course) that is designed to lead to placement in post-secondary education, job training, or employment;
- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under State law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other equivalent State-authorized exam; or
- a public or private college or university or a community college;

For ease of reading, education, literacy, and career training programs will be referenced collectively as "alternative educational programs." When the DACA requestor seeks to meet the "currently in school" component of the educational guideline based on enrollment in an alternative educational program, the requestor's current enrollment in that program is to be in preparation for the requestor's anticipated subsequent placement in post-secondary education, job training, or employment (new employment or advancement within existing employment). Evidence of such subsequent placement is not required. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential            DEF - 00006909

Case 1:18-cv-00068  Document 225-6  Filed on 07/21/18 in TXSD  Page 158 of 525

## C. Determining if Guidelines are Met, Continued

**Currently In**
**School**
(continued)

A DACA requestor who is enrolled in a personal enrichment class (such as arts and crafts) or who is enrolled in a recreational class (such as canoeing) is not in an alternative educational program and thus not considered to be "currently in school" for DACA purposes.

In determining whether enrollment in an alternative educational program meets the "currently in school" component of the educational guideline for DACA consideration, first, review the documentary evidence provided to see whether the alternative educational program is an education, literacy, or career training program (including vocational training and ESL) and whether it is publicly funded in whole or in part (State, Federal, county, or municipal funds.) If it is an alternative educational program and it receives public funding, no further evaluation is required. As long as the information is provided by the school/program, it is not necessary to RFE for copies of the actual funding documents. If this information is not provided, the RFE should request the information, but not require copies of the actual funding documents. If it is a literacy program that is run by a non-profit entity, no further evaluation is required with respect to the first part of the analysis. If, however, it is an alternative educational program that does not receive any public funding and it is not a non-profit literacy program, then officers are also to assess whether the program is of demonstrated effectiveness and are to look for such evidence, as described in more detail below.

Some of the ways a DACA requestor can meet the "currently in school" component of the educational guideline for DACA consideration and the different types of evidence that can be submitted, depending on the type of program in which he/she is enrolled, are discussed separately below. The examples and types of evidence listed here are illustrative, and not exhaustive.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                                  DEF - 00006910

| **Public or Private Elementary, Junior High/Middle School, or High School/Secondary School** | **Currently in School**<br>**Public or Private Elementary, Junior High/Middle School, or High School/Secondary School**<br>Evidence of enrollment in a public or private elementary, junior high/middle school, or high school/secondary school may include, but are not limited to, copies of: |
|---|---|

- **Accepted for Enrollment:** Evidence of acceptance for enrollment may include, but is not limited to:
  - o An acceptance letter on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance letter is to include the name and address of the school, the requestor's grade level, and the date that the classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
  - o A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability, would also be acceptable evidence of enrollment;
  - o A copy of the current tuition bill;
  - o A current class schedule containing the student's name, the list of courses, and the day and time of each class; or
  - o Any other relevant evidence.

- **Already Attending Classes:** For DACA requestors already enrolled and attending classes, evidence may include, but is not limited to, current school registration cards, current transcripts, report cards, and progress reports. The document(s) presented are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level. A current IEP showing the student's progress to date would also be acceptable evidence that the DACA requestor has been accepted for enrollment and is attending classes.

A claim of homeschooling is not necessarily an indicator of fraud; however, because homeschool programs and their requirements vary widely from state to state, refer the case to CFDO for further research and evaluation. Even if the file contains documents including transcripts, a diploma or a certificate of completion as a result of homeschooling, the case must be referred to CFDO for further research and evaluation prior to final adjudication. CFDO referrals on "homeschooling" are only mandatory prior to adjudication if the homeschooling is the basis for meeting the education guideline; if not, then the case can be processed normally and is then referred to the CFDO after final adjudication for tracking purposes.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 62

Confidential

DEF - 00006911

# C. Determining if Guidelines are Met, Continued

**Public or Private College or University, or Community College**

**Currently in School**
**Public or Private College or University, or Community College**
Evidence of enrollment in a public or private college or university or a community college may include, but is not limited to, copies of:

- **Accepted for Enrollment:** Evidence of acceptance for enrollment may include, but is not limited to:
    - o An acceptance package or other related material on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance package or other related material is to include the name and address of the school, the requestor's grade level or class year, and the date or term when the classes are scheduled to commence, and is to be accompanied by evidence that the student has registered for class. In addition, the acceptance package or other related material is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
    - o A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability, would also be acceptable evidence of enrollment;
    - o A copy of the student's current tuition bill;
    - o The student's current class schedule containing the list of courses, and the day and time of each class; or
    - o Any other relevant evidence.

- **Already Attending Classes:** For DACA requestors already enrolled and attending classes, evidence may include, but is not limited to, current school registration cards, current transcripts, report cards, and progress reports. The submitted document(s) are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level or class year. A current IEP showing the student's progress to date would also be acceptable evidence that the DACA requestor has been accepted for enrollment and is attending classes.

It is not necessary to RFE for a copy of the high school diploma or GED, unless there are articulable reasons to question the evidence of acceptance and enrollment or attendance in a public or private college or university, or community college.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   63

Confidential

DEF - 00006912

# C. Determining if Guidelines are Met, Continued

**General
Education
Development
(GED)**

### Currently in School
### GED
If a DACA requestor claims that he/she is enrolled in a course of study to
pass a GED exam or other equivalent State-authorized exam, the DACA
request is to include a letter or other documentation from an authorized
representative of the program, that includes information such as:

- The requestor's name and date of enrollment;
- The duration of the program and expected completion date;
- Whether the course of study is for a GED exam or other equivalent
  State-authorized exam;
- The program's source of public funding (Federal, State, county, or
  municipal), if any; and
- The program's authorized representative's contact information.

If the GED/Equivalency program is <u>not</u> publicly funded in whole or in part,
documentation from the program should is also to provide information about
the program's demonstrated effectiveness Such information could include,
but is not limited to, information relating to:

- The duration of the program's existence;
- The program's track record in assisting students in obtaining a
  GED, or a recognized equivalent certificate;
- Receipt of awards or special achievement or recognition that
  indicate the program's overall quality; and/or
- Any other information indicating the program's overall quality.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

DEF - 00006913

# C. Determining if Guidelines are Met, Continued

**Educational or Career Training Program (Including Vocational Training)**

## Currently in School
## Educational or Career Training Program (Including Vocational Training)

The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in an educational or career training program (including vocational training) may include, but is not limited to:

- **Accepted for Enrollment:** An acceptance letter on school letterhead from the school registrar/authorized school representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance letter is to include the name and address of the program, a brief description of the program, the duration of the program, and state the date the classes are scheduled to commence, and is to be accompanied by evidence that the student has registered for the program. Evidence of the requestor's acceptance for enrollment may also include a copy of his/her current year registration (intake form/enrollment form), or any other relevant documentation. The DACA request is also to be supported by evidence of the school or program's public funding or its demonstrated effectiveness, as described below.

- **Already Attending Classes:**
  - Current attendance records, transcripts, report cards, test reports, progress reports showing the name of the school, the name of the requestor, the time period or semester covered by the document, and, if relevant, the current educational or grade level;
  - A letter from the school registrar/authorized school representative, with contact information, providing information related to the program's public funding or its demonstrated excellence:

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 65

Confidential

DEF - 00006914

# C. Determining if Guidelines are Met, Continued

**Educational or Career Training Program (Including Vocational Training)** (continued)

**Public Funding:** If the educational or career training program is publicly funded in whole, or in part, the above-referenced letter from the school registrar/authorized school representative is to provide basic details about the funding, such as the source(s) of the funding; or,

**Demonstrated Effectiveness:** If the educational or career training program is not publicly funded in whole, or in part, the school registrar/authorized school representative is to provide information about the program's demonstrated effectiveness, with supporting documentation, if available. Such information could include, but is not limited to: information relating to:

> ➤ The duration of the program's existence;
> ➤ The program's track record in placing students in employment, job training, or post-secondary education; Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
> ➤ Any other information indicating the program's overall quality.

**Literacy Training**

### Currently in School

The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in a literacy program is to include, but is not limited to:

- A letter from the literacy program administrator or authorized representative providing information such as:
  - ○ The requestor's name;
  - ○ The date of the requestor's enrollment;
  - ○ The duration of the literacy program and the expected completion date;
  - ○ The program administrator or authorized representative's contact information;
  - ○ Information about the literacy program's non-profit status, if applicable, and evidence of such status:
    - ▪ Evidence of the literacy program's non-profit status is to include a copy of a valid letter from the Internal Revenue Service confirming exemption from taxation under section 501(c)(3) of the Internal Revenue Service Code of 1986, as amended, or equivalent section of prior code; or
- If the literacy program is not administered by a non-profit organization, information related to the literacy program's source of public funding or its demonstrated effectiveness:

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006915

# C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| **Literacy Training** (continued) | ○ **Public Funding:** If the literacy program is publicly funded in whole, or in part, the letter from the literacy program administrator or authorized representative is to provide basic details about the funding, such as the source(s) of the funding. ; or |
| | ○ **Demonstrated Effectiveness:** If the literacy program is <u>not</u> publicly funded in whole or in part, or <u>not</u> administered by a non-profit entity, the literacy program administrator or authorized representative is to provide information about the program's demonstrated effectiveness. Such information could include, but is not limited to: |
| | ▪ The duration of the program's existence; |
| | ▪ The program's track record in placing students in employment, job training, or post-secondary education; |
| | ▪ Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or |
| | ▪ Any other information indicating the program's overall quality. |

It should be noted that many literacy programs may not track statistics on placement rates following completion of the program. Therefore, the lack of such data, standing alone, does not diminish the literacy program's record. Evaluate all of the information and evidence provided in its totality for credibility and sufficiency.

A claim of enrollment in a literacy class run by a for-profit entity that does not receive any public funding is not necessarily an indicator of fraud; however, a vast number of literacy programs are offered for free or at a minimal cost. Therefore, if the literacy program is a **for-profit** entity and does <u>not</u> receive any public funds, refer the case to CFDO for further research and evaluation.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

 DEF - 00006916

# C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| English as a Second Language (ESL) | **Currently in School**<br>**English as a Second Language (ESL)**<br>The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in an ESL class is to include, but is not limited to: |

- A letter from the ESL program administrator or authorized representative providing information such as:
  - ○ The requestor's name;
  - ○ The date of the requestor's enrollment;
  - ○ The duration of the ESL program and the expected completion date;
  - ○ The program administrator or authorized representative's contact information;
  - ○ Information/documentation related to the ESL program's public funding or its demonstrated effectiveness:
    - **Public Funding:** If the ESL program is publicly funded in whole, or in part, the letter from the ESL program administrator or authorized representative is also to provide specific details about the funding, such as the source(s) of the funding;
    - **Non-Profit Status:** If the ESL program non-profit status, the ESL program administrator or authorized representative is to provide evidence that the ESL program has non-profit status; or
    - **Demonstrated Effectiveness:** If the ESL program is not publicly funded in whole or in part, the ESL program administrator or authorized representative is to provide information about the program's demonstrated effectiveness. Such information could include, but is not limited to:
      - The duration of the program's existence;
      - ➢ The program's track record in placing students in post-secondary education, job training, or employment; Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
      - ➢ Any other information indicating the program's overall quality.

It should be noted that many ESL programs may not track statistics on placement rates following completion of the program. Therefore, the lack of such data, standing alone, does not diminish the school's record. Evaluate all of the information and evidence provided in its totality for credibility and sufficiency.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential DEF - 00006917

## C. Determining if Guidelines are Met, Continued

**School Breaks and Medical Leave**

At the time of filing, it is possible that school may not be in session due to a holiday or a semester (or quarter or trimester) break. A break may occur during a course, for example spring break, or it may occur between semesters, for example summer break. If a DACA request is filed between semesters, the requestor is considered to be currently in school if he/she is enrolled for the next semester and submits evidence of such enrollment. Note that a requestor on temporary medical leave from school is considered to be currently in school. Evidence of the medical leave and the expected return date to school are to be provided.

**Graduated From School**

A DACA requestor can also meet the educational guideline if he/she has graduated from school. To meet the "graduated from school" component of the educational guideline, the DACA requestor may show that he/she has graduated or obtained a certificate of completion from a U.S. high school or has a recognized equivalent of a high school diploma under State law, public or private college or university or community college, or has obtained a GED certificate or other equivalent State-authorized exam in the United States. For the purpose of considering an initial DACA request, the phrase "graduated from school" does not include graduation from an education, literacy or career training program (including vocational training or an ESL course). Evidence of graduation may include verifiable copies of:

- A diploma;
- A recognized equivalent of high school diploma under State law;
- Transcripts showing the date of graduation;
- A GED Certificate
  - Documentation sufficient to demonstrate that the DACA requestor obtained a GED includes, but is not limited to, evidence the he/she passed a GED exam, or other comparable State-authorized exam, and, as a result, he/she received the recognized equivalent of a regular high school diploma under State law;
- A certificate of completion or certificate of attendance from a U.S. high school;

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   69

**Graduated**
**From**
**School**
*(continued)*

- An alternate award from a public or private high school or secondary school.

A claim of homeschooling is not necessarily an indicator of fraud; however, because homeschool programs and their requirements vary widely from state to state, refer the case to CFDO for further research and evaluation. Even if the file contains documents including transcripts, a diploma or a certificate of completion as a result of homeschooling, the case must be referred to CFDO for further research and evaluation prior to final adjudication. CFDO referrals on "homeschooling" are only mandatory prior to adjudication if the homeschooling is the basis for meeting the education guideline; if not, then the case can be processed normally and is then referred to the CFDO after final adjudication for tracking purposes.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**    70

Confidential

DEF - 00006919

**Military Service**   The Secretary's memorandum states that, in lieu of being currently in school, or having graduated from school (including a GED), the requestor may be an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces. This may include reservists who were honorably discharged.

Examples of acceptable evidence include, but is not limited to the following:
- Form DD-214, Certificate of Release or Discharge from Active Duty;
- NGB Form 22, National Guard Report of Separation and Record of Service;
- Military personnel records;
- Military health records; or
- Any other relevant document.

If the requestor indicated in question 24 of Part 1 that he/she was a member of the U.S. Armed Forces or Coast Guard, but did not submit evidence of an honorable discharge and does not otherwise meet the educational guidelines, issue RFE DACA 107 call up from Appendix D.

The Form DD-214 and NGB Form 22 both contain a section, "Character of Service" listing the type of discharge a service member obtained. The main types of discharges include the following:
    (1) Honorable:
    (2) General (Under Honorable Conditions);
    (3) Under Other Than Honorable Conditions;
    (4) Bad Conduct;
    (5) Dishonorable; or
    (6) Uncharacterized.

For purposes of DACA, if Character of Service is Honorable or General (Under Honorable Conditions) the requestor has satisfied the military service guideline.

Currently serving in the U.S. Coast Guard or U.S. Armed Forces does not qualify.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006920

## D. Economic Necessity

**Reviewing Economic Necessity**

An EAD based on a grant of deferred action requires a showing of economic necessity. To facilitate this economic necessity review, a separate worksheet was created, Form I-765WS. To streamline adjudication of the DACA request and the I-765, officers will review the I-765WS during the adjudication of Form I-821D. During file set-up, the I-765WS will be put in ROP order immediately behind the Form I-821D.

If Form I-765WS is completely blank or is missing, issue an RFE on the I-765 (not the Form I-821D) using DACA 180 call up from Appendix D, but only if the requestor does not include evidence that a fee exemption was granted. The fee exemption will be indicated in C3 as "Fee Waiver Granted." If an officer issues an RFE on the I-765, he/she should proceed with adjudication of the I-821D. When the response to the I-765 RFE is received and the I-765 is approved, the expiration date of the EAD should not exceed the end date of the deferred removal under DACA.

If the requestor does not respond to the I-765 RFE, the I-765 should be denied for abandonment; however, the Form I-821D can be approved for DACA if the guidelines have been met. When denying the Form I-765 for abandonment, officers should use the DACA Form I-765 Abandonment Denial template.

If the requestor's response to the I-765 RFE does not include the Form I-765WS, a completed I-765WS, or the signature on the I-765, officers should use the DACA Form I-765 Denial Based on the Record template.

If/when Form I-765WS has been completed, review the information provided regarding current income, assets, and expenses to determine whether economic necessity has been established. The requestor may, but need not, include supporting documents with Form I-765WS.

There is a general presumption that DACA requestors will need to work given their undocumented circumstances and the fact that they are not generally anticipated to have independent means. Absent evidence of sufficient independent financial resources, the Form I-765WS is sufficient to establish economic need, without any further economic analysis.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 72

Confidential

DEF - 00006921

# E. Removal Proceedings

**Removal Proceedings**

Individuals in removal proceedings may file a DACA request, even if they are under age 15, as long as they were born after June 15, 1981. As explained more fully below, removal proceedings commence with the filing of Form I-862, Notice to Appear, with the Immigration Court and terminate in one of several ways. See 8 C.F.R. §245.1(c)(8)

If a DACA requestor has been or is currently in deportation, exclusion, or removal proceedings, he/she may have another A-file, which should have been discovered by the officer during the initial review of the I-821D and/or Record of Arrest and Prosecution (RAP) sheet (if any). Please see the "A-File" section.

There are several ways to determine if the DACA requestor:
- Was or is in proceedings;
- What the outcome of the proceeding was; and
- If he/she was previously removed.



See the charts below for an overview of the electronic systems to check.

**LE**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 73

DEF - 00006922

## Removal Proceedings, Continued

**Removal Proceedings** (continued)



**Effects of Deportation or Removal Proceedings**

The existence of deportation, exclusion, or removal proceedings may have an effect on the exercise of prosecutorial discretion for DACA. If the DACA requestor is in proceedings, the A-file is likely with the ICE office. Before a DACA request may be adjudicated by the Center, the Center should make every attempt to obtain all A-File(s).

**Determining Whether an Individual is in Removal Proceedings**

Deportation, exclusion, and removal proceedings begin with the filing of the charging document with the Immigration Court. Currently, the charging document used is Form I-862, Notice to Appear. Over the years, proceedings commenced in other ways, including:

1. With the issuance of Form I-221, Order to Show Cause and Notice of Hearing, prior to June 20, 1991;
2. With the filing of Form I-221, Order to Show Cause and Notice of Hearing, issued on or after June 20, 1991, with the immigration court;
3. With the issuance of Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, prior to April 1, 1997; and
4. With the issuance and service of Form I-860, Notice and Order of Expedited Removal.

It is possible for an individual to have voluntary departure and be in removal proceedings. See Voluntary Departure section below for more information.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013    74

Confidential                              DEF - 00006923

## E. Removal Proceedings, Continued

**Determining Removal Proceedings have been Terminated**

Deportation, exclusion, or removal proceedings terminate when one of the following occurs:

1. The individual leaves the United States under an outstanding order of deportation, exclusion, or removal;
2. The individual is found not to be inadmissible or deportable from the United States;
3. The individual leaves the United States before the expiration of his/her voluntary departure, which was granted in connection with an alternate order of deportation or removal;
4. The charging document is canceled (Form I-122, I-221, I-860, or I-862);
5. The immigration judge or the Board of Immigration Appeals terminates the proceedings; or
6. A Federal court grants a petition for review or an action for habeas corpus.

See 8 C.F.R. §245.1(c)(8)

**Voluntary Departure**

An individual with voluntary departure may or may not be in removal proceedings. Voluntary departure may be issued before the commencement of proceedings, during proceedings, or at the conclusion of proceedings. When voluntary departure is issued during or at the conclusion of proceedings, it is normally issued as an alternate order of voluntary departure/removal or deportation. An alternate order of voluntary departure converts automatically to an order of removal/deportation when the individual does not leave the United States voluntarily by the specified date.

**Administratively Closed**

Administratively closed proceedings means that proceedings have commenced, but the parties subsequently agreed to remove the matter from the immigration court's docket. Administratively closed does not mean terminated, and thus the individual remains in proceedings. Either party may file a motion to place the case on the court's active docket at any time.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential DEF - 00006924

## E. Removal Proceedings, Continued

Use the chart below to assist in determining if a DACA requestor is in removal proceedings:



**Note:** The guideline that the individual is under age 31 on June 15, 2012 applies to all DACA requestors regardless of whether they are in deportation, exclusion, or removal proceedings. If the individual was age 31 or older on June 15, 2012, issue a NOID.

| | |
|---|---|
| **Individuals With Final Removal Orders (FRO)** | An individual with an unexecuted final removal order is still in removal proceedings. See 8 C.F.R. § 245.1(c)(8). Although the final removal order may have been issued before, on, or after June 15, 2012, the volume of individuals that could be considered for DACA with a post-June 15th final removal order should be small, because ICE began applying the DACA guidelines upon publication of the Secretary's memorandum. Final removal orders issued after June 15, 2012 should be reviewed carefully to examine the underlying grounds for removal.<br><br>If the requestor is the subject of an FRO, then determine the requestor's age on June 15, 2012. Review the answer provided to question #9 in Part 1 of Form I-821D and review the requestor's birth certificate or other acceptable secondary evidence submitted to show the date of birth. If the evidence submitted does not show that the requestor satisfies the upper age limit, issue RFE DACA 140 call up from Appendix D. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   76

Confidential

DEF - 00006925

# E. Removal Proceedings, Continued

**Subject to the Reinstatement of a Prior Removal Order**

When an individual reenters the United States illegally after having been removed or after leaving voluntarily under an order of removal, the individual is subject to reinstatement of the prior removal order from its original date. See INA § 241 (a)(5).

An individual who is subject to reinstatement of their prior removal order under the provisions of § 241 (a)(5) of the Act may file a DACA request; however, the removal **and** the illegal reentry must have occurred before June 15, 2007. This is because a DACA requestor must have resided continuously in the United States for at least five years before June 15, 2012, the date of Secretary's memorandum. Additionally, a removal is not deemed to be a brief, casual, and innocent departure and, therefore, it interrupts the period of continuous residence.

**Underlying Removal Ground Adversely Impacts Prosecutorial Discretion**

If the DACA requestor indicates in Question #3.a. in Part 1 of Form I-821D that he/she has been in removal proceedings, and/or routine systems, background, and fingerprint checks indicate that the requestor is in removal proceedings, proceed as follows:
- Review the underlying removal charges; and
- Review the derogatory information obtained through routine checks.

Do not rely solely on the grounds listed in the charging document and/or EARM, as not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.

**Underlying Removal Ground Does Not Adversely Impact Prosecutorial Discretion**

If a DACA requestor has been placed in proceedings on a ground that does not adversely impact the exercise of prosecutorial discretion, review the results of all routine systems, background, and fingerprint checks. If those routine checks did not reveal any additional derogatory information that impacts the exercise of prosecutorial discretion, the case may proceed for adjudication.

Do not rely solely on the grounds listed in the charging document and/or EARM, as not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential    DEF - 00006926

# E. Removal Proceedings, Continued

**Removal During Continuous Residence Period**

A departure from the United States pursuant to an order of deportation, exclusion, or removal that occurred during the required continuous residence period is not "brief, casual, and innocent." Therefore any absence caused by such a departure meaningfully interrupts such continuous residence. This also includes a departure made "voluntarily," for example, the individual leaves the United States on his/her own volition while under an order of deportation, exclusion, or removal.

In these instances, issue a NOID.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013    78

Confidential

DEF - 00006927

# F. Fingerprints and RAP Sheets

**Fingerprint Requirements**

Fingerprints (ten print) are required for every DACA requestor 14 years of age and older to determine if they have a criminal history. Submissions of prior fingerprint results will not be accepted.

**FBI Fingerprint Response**

At the time of adjudication, the file should contain a [                  LE                  ]



A definitive response from the FBI regarding fingerprint clearances is required before any DACA request for an individual 14 years of age and older may be approved.

Fingerprint results for the requestor obtained as a result of a previous filing with USCIS within the last 15 months are not valid for DACA purposes. Each DACA requestor must obtain a new fingerprint check upon the filing of a DACA request. Officers should utilize FD-258 to verify that the fingerprint check was completed for the DACA request.

**Performing an FBI Query**

The fingerprint clearance should be complete before the case is sent for adjudication. If there is no fingerprint result printout in the file, officers must perform a query of FBI Fingerprint Tracking in CLAIMS Mainframe and also check SNAP to see if the requestor has been scheduled for an appointment at an ASC.

**LE**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006928

# F. Fingerprints and RAP Sheets, Continued

**Introduction**    There are four possible results of a fingerprint query:



This section instructs officers on how to proceed based on the fingerprint results.



*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006929

## F. Fingerprints and RAP Sheets, Continued



| A-numbers Found on the RAP Sheet | If any other A-numbers are found on the RAP sheet, the files must be requested, reviewed, and consolidated prior to any final action. |
|---|---|

**Updated RAP Sheets**    Although biometrics will not be cloned from other filings, if the requestor has a criminal history **LE** the file, request updated **LE** sheets through the **LE** **LE**

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**Version August 28, 2013**    81

Confidential      DEF - 00006930

# G. Evaluating Issues of Criminality, Public Safety, and National Security

**Issues of Criminality**

The Secretary's memorandum provides as one of the guidelines that should be met before an individual is considered for DACA that the individual not have been convicted of a felony offense, a significant misdemeanor offense, three or more non-significant misdemeanor offenses, or otherwise pose a threat to national security or public safety. If the evidence establishes that an individual has a conviction for one of the above or may be a national security or public safety threat, USCIS will deny the request for deferred action, unless exceptional circumstances are found. The requestor must specifically ask to be evaluated under this exception and must fully document the exceptional circumstances.

The decision whether to defer action in a particular case is individualized and discretionary, taking into account the nature and severity of the underlying criminal, national security, or public safety concerns. By their very nature, felonies, significant misdemeanors, a history of other misdemeanors, and activities compromising national security and public safety are particularly serious and carry considerable weight in the totality of the circumstances analysis. As a result, it would take a truly exceptional circumstance to overcome the underlying criminal, national security, and public safety grounds that would otherwise result in not considering an individual for DACA, which would be rare. Deferring removal under DACA shall not be considered under this very limited exception without concurrence from HQSCOPS. The Service Center Director must have appropriate visibility before sending the case with exceptional circumstances to HQSCOPS. The Center must copy the Service Center Director on the email when sending it to HQSCOPS for review.

**Felony**

A felony is a federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential          DEF - 00006931

# G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued

| Misdemeanors | **Significant Misdemeanor:** |
|---|---|
| | For DACA only, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria: |
| | 1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or, |
| | 2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. |
| | The sentence must involve time to be served in custody, and therefore does not include a suspended sentence. The time to be served in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). Notwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence or presence of a criminal history, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 83

Confidential

**Misdemeanors**
(continued)

## Non-Significant Misdemeanor:

For DACA only, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and
2. Is one for which the individual was sentenced to time in custody of 90 days or less.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE. Notwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006933

Case 1:18-cv-00068  Document 225-6  Filed on 07/21/18 in TXSD  Page 182 of 525

# G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued

| **Misdemeanors** (continued) | **Multiple Misdemeanors:** |
|---|---|
| | Absent exceptional circumstances, a person is not eligible for consideration of DACA if he/she has been convicted of three or more non-significant misdemeanors that did not occur on the same day and did not arise out of the same act, omission, or scheme of misconduct.<br><br>When evaluating a request for consideration for deferred action for childhood arrivals, a minor traffic offense, such as driving without a license, will not be considered a misdemeanor that counts towards the "three or more non-significant misdemeanors." However, the requestor's entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, he/she warrants an exercise of prosecutorial discretion. |

**State Law Immigration Offenses**

Immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action pursuant to this process.

**Foreign Convictions**

When evaluating a request for consideration of deferred action for childhood arrival, a foreign conviction, standing alone, will generally not be treated as a disqualifying felony or misdemeanor. Such convictions, however, may be considered when addressing whether the person poses a threat to public safety and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted. Cases involving foreign convictions should be elevated for supervisory review.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                        DEF - 00006934

# Court Dispositions

**Requesting Certified Court Dispositions**

Using RFE DACA 151 call up from Appendix D, request a certified court disposition a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure if prohibited under state law.

If the requestor is unable to provide such records because the case was expunged or sealed, RFE DACA 151 informs the requestor that he or she must provide information about his or her arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. It is not necessary for the officer to issue an RFE if he/she is able to readily obtain the dispositions on line.

**Free Online Court Dispositions**

There are many online sites that can be searched and the disposition printed for a file copy. These sites are open to the public; therefore, USCIS can gain the final disposition without doing an RFE or ITD if all the charges in question are found, or if enough evidence can be gathered to deny without the remaining charges.

The AAO has upheld prior decisions made using these court dispositions, even though these dispositions are not "certified" by the court, since the information is made available to the public.

**Reading Court Dispositions**

Court dispositions take as many different forms as there are courts in the United States. There is no way to give specific instructions on how to read such dispositions. Usually the state criminal statutes cite is used to indicate which charge the applicant was actually convicted of. Adjudicators should consult with their supervisor if they have any questions about how to read a court disposition.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 86

Confidential

DEF - 00006935

**Convictions**

Pursuant to INA § 101(a)(48)(A), a conviction is a formal judgment of guilt entered by a court or, if adjudication of guilt has been withheld, where:

1) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; and

2) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Nolo contendere means the individual is unwilling to contend. This subjects the individual to some form of punishment, penalty, or restraint as if he/she was found guilty.

An adjudication of juvenile delinquency is not a conviction.

**Formal Adjudication of Guilt Withheld**

Court orders in criminal proceedings sometimes include, as part of the disposition, terms such as: Continued without a finding (CWOF); adjudication withheld; deferred adjudication, etc. Different jurisdictions use different terminology.

Where there is no formal adjudication of guilt, officers must determine whether:

1. A judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; AND

2. the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty, such as jail, a fine, parole, probation, community service, etc.

The officer must dissect the law, the statute, court order, and conviction, and put all the pieces together to determine whether these requirements for a conviction are met in the absence of a formal adjudication of guilt.

**Imposition of Costs as Punishment**

Imposition of costs (such as fines, court costs, etc.) in a criminal case constitutes a form of punishment, and therefore satisfies the second prong of the conviction definition.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                                              DEF - 00006936

## **Court Dispositions,** Continued

| | |
|---|---|
| **Deferred Prosecution** | Deferred prosecution or pretrial diversion programs that do not require the defendant to plead guilty or nolo contendere or require the court to make any finding of guilt do not constitute a conviction for immigration purposes. |
| **Dismissals, Dropped, Set Aside** | In many cases, the charges may be dropped or set aside in exchange for the DACA requestor agreeing to attend various self-help courses and programs, or if the person who filed the complaint against him/her fails to appear or chooses to drop the case.<br><br>These are not considered convictions for immigration purposes. |
| **Nolle Prosequi** | A decision of "nolle prosequi" is a Latin legal term for "declined to prosecute".<br><br>This is not considered a conviction for immigration purposes. |
| **Convictions on Appeal** | A conviction is effective for immigration purposes, including DACA, while it is on direct appeal. See Plane v. Holder, 652 F.3d 991 (9th Cir. 2011), rehearing en banc denied, 2012 WL 1994862 (2012). If the conviction is ultimately reversed on appeal, the DACA requestor is free to file a new request for DACA if otherwise eligible. |
| **Expunged or Vacated Convictions** | For DACA purposes only, expunged convictions will not be treated as disqualifying felonies or misdemeanors. Expunged convictions, however, will be assessed on a case-by-case basis to determine whether the person poses a threat to public safety and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted. Cases involving expunged convictions should be elevated for supervisory review.<br><br>Sealed and expunged records will be evaluated according to the nature and severity of the criminal offense. |
| **STET** | The entry of "STET" in a criminal case simply means that the state (Maryland and West Virginia) will NOT proceed against an accused on that indictment at that time. As long as the STET order is still in place and the individual is in compliance, the STET is not a conviction for immigration purposes.<br><br>NOTE: Carefully review the file for J&Cs, orders, etc., to determine if a subsequent decision on the offense has been made. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006937

# Arrests and Convictions

**Criminal Arrests**

When a DACA requestor's RAP sheet indicates an arrest, it is necessary to determine whether the DACA requestor has been convicted of the crime.

The only way to know if the DACA requestor has been convicted of the charge for which he/she was arrested is to obtain the certified court disposition. Occasionally the disposition of the arrest is shown on the RAP sheet. **However, in all cases, the officer must review the court disposition. This may be done by obtaining the disposition online or by issuing an RFE.**

**Juvenile Delinquency**

Juvenile delinquency will not automatically disqualify a DACA requestor. Such criminal history will be evaluated on a case-by-case basis to determine whether, under the particular circumstances, discretion is warranted to defer removal under DACA.

If a requestor was a juvenile, but tried and convicted as an adult he/she will be treated as an adult for purposes of the DACA process. Individuals must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state law.

Sealed and expunged records will be evaluated according to the nature and severity of the criminal offense.

**Pardons**

A full and unconditional pardon by the President of the United States or by the Governor of a U.S. State eliminates a conviction for purposes of DACA.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 89

Confidential

DEF - 00006938

# Public Safety Concerns

**Evaluating Public Safety Concerns**

The scope of criminal offenses deemed to be EPS are described in the November 7, 2011, NTA memorandum and the accompanying MOA between USCIS and ICE.

A DACA requestor's criminal record may give rise to significant public safety concerns even where there is not a disposition of conviction. Therefore, when the disposition is pending, it is not necessary to hold the case. For example, an individual with multiple DUI arrests, but no convictions, could pose a significant public safety concern. Similarly, an individual arrested for multiple assaults or other violent crimes could be deemed a public safety risk even if he/she was never convicted for those crimes. Arrests and/or convictions that took place outside of the United States are also significant unfavorable factors in evaluating public safety concerns, under the totality of the circumstances.

# National Security Concerns

**Evaluating National Security Concerns**

A case posing national security concerns is handled through the CARRP process according to existing protocols.

# DACA Requestors in Immigration Detention

**DACA Requestors in Immigration Detention at the Time of Filing Form I-821D**

USCIS lacks the authority to consider requests from individuals who are in immigration detention under the custody of ICE at the time of filing Form I-821D and remain in immigration detention as of the date Form I-821D is adjudicated. If upon receipt of Form I-821D, a review of DHS electronic systems or information received from ICE identifies the requestor as detained, the Center should follow the below procedures.

The BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.

1. If ICE indicates that it does not intend to physically release the requestor within 30 days, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and
*Continued on next page*

Confidential

DEF - 00006939

you remain in immigration detention as of the date of this notice."
USCIS will notify ICE once the denial notice is issued.

2. If ICE indicates that the requestor is an ICE enforcement priority but
ICE intends on physically releasing the requestor, USCIS will deny
the DACA request using the checkbox within Appendix F (Denial
Template) that states "…exercising prosecutorial discretion in your
case would not be consistent with the Department of Homeland
Security's enforcement priorities." USCIS will notify ICE once the
denial notice is issued

3. If ICE indicates that the case is not an ICE enforcement priority and
ICE intends to physically release the requestor, the case will be
adjudicated on its merits. **A review of DHS electronic systems must
be performed to ensure the requestor is physically released before
the case is adjudicated on its merits.**

If the BCU disagrees with ICE's determination of whether or not the requestor
is an enforcement priority, the BCU should ask local counsel for assistance in
contacting local ICE counsel to discuss the reasons why USCIS disagrees
with ICE's determination. The Service Center's local counsel can seek
assistance from USCIS Headquarters' Office of the Chief Counsel to contact
ICE, if necessary.

**DACA Requestors in Immigration Detention after Filing Form I-821D**

If DHS electronic systems or information received from ICE identifies the
requestor as having been placed in immigration detention after filing his/her
Form I-821D, the Center should follow the below procedures.

The BCU will contact local ICE operations having jurisdiction over the
requestor to determine if the requestor is an ICE enforcement priority or if
ICE intends on administratively closing the proceedings and/or physically
releasing the requestor within 30 days.

1. If ICE indicates that the requestor is an ICE enforcement priority but
ICE intends on physically releasing the requestor, USCIS will deny
the DACA request using the checkbox within Appendix F (Denial
Template) that states "…exercising prosecutorial discretion in your
case would not be consistent with the Department of Homeland
Security's enforcement priorities." USCIS will notify ICE once the
denial notice is issued

2. If ICE indicates that the case is not an ICE enforcement priority and
ICE intends to physically release the requestor, the case will be
adjudicated on its merits. A review of DHS electronic systems must be
performed to ensure the requestor is physically released before the
case is adjudicated on its merits.

If the BCU disagrees with ICE's determination of whether or not the requestor
is an enforcement priority, the BCU should ask local counsel for assistance in
contacting local ICE counsel to discuss the reasons why USCIS disagrees

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

with ICE's determination. The Service Center's local counsel can seek
assistance from USCIS Headquarters' Office of the Chief Counsel to contact
ICE, if necessary.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

# Handling Procedures

**General**

The evaluation of criminal issues with respect to a DACA request is done after BCU vetting of the TECS check and the FD 258 fingerprint results from the FBI. If the up-front TECS check reveals a hit, the DACA request goes to BCU/Triage. If the hit relates, BCU triage routes the DACA request to the BCU. BCU documents the TECS hit and the resolution in the ROIQ. While the DACA request is undergoing the up-front TECS check, the DACA requestor is placed in the scheduling queue for an ASC appointment to have his/her biometrics captured. If the FD 258 fingerprint results return an **LE**, the BCU reviews the results to determine whether they are germane to the DACA request and the exercise of prosecutorial discretion. The officer may issue an RFE at any point along the way, if necessary to establish whether the issues of criminality relate to a misdemeanor, a significant misdemeanor, a felony, or whether the criminal issues pose a public safety threat. When a DACA request is denied, the denial shall be issued using the standard denial template, which provides a list of checkboxes. The standard denial template is found at Appendix F. Select the box or boxes that apply. For guidance on when to seek supervisory review of a denial involving issues of criminality, see Chapter 9, Section D.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                                                    DEF - 00006942

| | |
|---|---|
| **Social Security Number** | If there is evidence that the requestor, in order to gain employment for himself or herself, used someone else's social security number with knowledge that the social security number belonged to someone else and without that person's consent, the requestor should receive a Notice of Intent to Deny. **Unless a complete file review demonstrates that all of the 4 points below have been met, the ISO shall adjudicate the DACA request based upon the merits of the case.**

**What this means:** Service Centers should not consider evidence of a social security number (SSN) within a DACA filing as derogatory information unless such evidence within the file meets all the elements listed below.

The requestor should receive a Notice of Intent to Deny (NOID), if upon review of the A-file there is evidence contained within the file that demonstrates all of the following:
- The requestor used a SSN that did not belong to the requestor, and
- The requestor used the SSN in order to gain employment, and
- The requestor knew the SSN belonged to someone else (as opposed to thinking it was a fake SSN), and
- The requestor did not have the person's consent to use the SSN.

Evidence in the file to support issuing such a NOID includes:
- An admission by the requestor as to all four points above and/or
- A statement from the SSN holder that s/he did not consent to the requestor's use of his/her SSN.

DACA filings that contain BCU or FDNS findings:
- In light of this guidance, if a statement of findings (SOF) is not supported or confirmed by evidence submitted by the requestor, the case will be adjudicated on its merits.

ISOs may rely on the evidence contained in the A-file at the time of adjudication to determine whether the requestor used a SSN in the manner noted above. ISOs should consult with their supervisors if they believe additional information or research is needed prior to adjudication. If the requestor's response to the NOID does not rebut the evidence contained therein, a final denial should be issued. |
| **Categorization** | If the BCU determines that the case presents issues of criminality, processing of the DACA request must be categorized as either EPS or non-EPS, as defined in the November 7, 2011 NTA memorandum. |

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   94

Confidential

**Non-EPS Cases**

A DACA request posing issues of criminality that are based on **LE** non-EPS, as per the NTA policy memorandum, is handled by the BCU DACA Team as follows:

- The BCU DACA Team will adjudicate Form I-821D, taking into account all issues of criminality.
- If the case is approvable, the BCU DACA Team will approve the I-821D for DACA and adjudicate the I-765 for employment authorization.
- If an approval is not warranted, a denial for Form I-821D and Form I-765 will be issued, pending supervisory review.
- After the decisions have been rendered on Forms I-821D and I-765, the A-file shall be routed to the NRC.

In non-EPS cases where the requestor has been arrested for a potentially disqualifying criminal offense, but the court disposition is currently unavailable because the criminal proceedings are pending, the BCU DACA Team will issue RFE DACA 151 call up from Appendix D. The BCU DACA Team will withhold adjudication until the requestor submits the court disposition or receives SCOPS authorization to deny the case absent the court disposition. The BCU DACA Team will initially provide 87 days for the requestor to respond, but may issue a second RFE DACA 151 call up if the requestor fails to provide the final court disposition within 87 days because the criminal proceedings have not concluded.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006944

## **Handling Procedures,** Continued

**EPS Cases**     A DACA request presenting issues of criminality that are deemed to be EPS, as per the NTA policy memorandum, is handled by the BCU DACA Team. The BCU DACA Team shall refer the case to ICE prior to adjudicating the case, even if USCIS can deny the DACA request on its merits. The BCU DACA Team will refer the DACA request to ICE using the RTI process. The BCU DACA Team will suspend adjudication of the DACA request for 60 days, or until ICE provides notification of its action on the case, whichever is earlier.

- **ICE Takes No Action or Does Not Respond:** If ICE does not accept the referral request or otherwise provide any notification of its action within 60 days of the RTI:
  - The BCU DACA Team will adjudicate Form I-821D, taking into account all issues of criminality, and in particular, the issues presenting an EPS concern.
  - If the disposition of the criminal charges against the DACA requestor is **pending**, the BCU DACA Team will deny the DACA request on public safety grounds, because the underlying issues of criminality are deemed to pose an EPS concern, pursuant to the November 7, 2011 NTA memorandum. The BCU DACA Team will also deny Form I-765, requesting employment authorization.
  - If the disposition of the criminal charges against the DACA requestor are **final**, the BCU DACA Team will deny Form I-821D based on the issues of criminality and the conviction. The BCU DACA Team will also deny Form I-765, requesting employment authorization.
  - Upon denial, the BCU DACA Team shall refer the DACA request to ERO, in accordance with the agreed upon method, and update FDNS-DS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**     96

# Handling Procedures, Continued

**EPS Cases**
(continued)

- **ICE Accepts the Referral:** If ICE accepts the case, the BCU DACA Team will follow the standard protocols outlined in the November 7, 2011 NTA memorandum.

**Note:** Requests involving issues of criminality that normally would not meet the guidelines for consideration of deferred action will be denied, unless the requestor is claiming that consideration is warranted due to exceptional circumstances and fully documents such claim. Removal shall not be deferred under DACA pursuant to this very limited exception without concurrence from HQSCOPS. In these instances the case shall come to HQSCOPS from the Service Center Director, through the appropriate chain of command.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential DEF - 00006946

## H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information

**Introduction**

When adjudicating Part 3 of Form I-821D, it is necessary to ensure that clear information and evidence are present to make a final determination. Refer to Chapter 6 for Background and Security Checks and Chapter 8, Section H, for evaluating and handling criminality, public safety, and national security issues.

**Questions 1 and 2: Arrested for, charged with, or convicted of a felony or misdemeanor, or significant misdemeanor in the United States (includes drug offenses and driving under the influence of drugs or alcohol)**

**OR**

**arrested for, charged with, or convicted of a crime in any country other than the United States**

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), LE **LE** etc., | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s) LE **LE** etc., | The derogatory information clearly shows that the requestor does not meet the DACA guidelines, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File(s), LE **LE** etc., | The derogatory information is unclear, | |
| There is derogatory information in the A-File(s) LE **LE** etc., | There are clear charges or clear derogatory information, but no clear judgment or conviction, | |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear, and the requestor did not provide any additional information or documentation, | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential    DEF - 00006947

# H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information, Continued

**Questions 3 and 5: Security and Related Issues – Engaging in Terrorist Activities; or Engaging in Ordering, Inciting, Assisting, or Otherwise Participating in Genocide, Human Trafficking, and Other Violent Crimes Involving the persecution of Others**

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), **LE**, **LE** etc., | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s), **LE**, **LE** etc., | The derogatory information clearly shows that the requestor did or may have engaged in terrorist activities or human rights violations, | Put the case through the CARRP process per standard protocols. |
| There is derogatory information in the A-File(s), **LE**, **LE** etc., | The derogatory information is unclear, | **LE** |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Put the case through the CARRP process per standard protocols. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006948

# H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information, Continued

**Question 4:**
**Current and**
**Past Gang**
**Membership**

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), IDENT, TECS, EARM, etc., | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s), LE LE etc., | The derogatory information clearly shows that the requestor is or may be a gang member, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File(s), LE LE etc., | The derogatory information is unclear, | |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013** 100

DEF - 00006949

# I. Fraud Review and Fraud Referrals

**Immigration Fraud**

In the normal course of adjudication, officers should be aware of fraud indicators. Fraud related concerns that arise during the course of background and security checks should be addressed according to the March 2011 Fraud Detection SOP and the 2008 ICE/USCIS Investigation of Immigration Benefit Fraud MOA.

Fraud encompasses any material representation or omission, accompanied by an intent to deceive. Establishing the elements of fraud is at the core of the work performed during a fraud investigation. In the immigration context, fraud is a willful misrepresentation of a material fact. An omission of a material fact can also constitute a willful misrepresentation, rising to the level of fraud. When reviewing an immigration request, a finding of fraud is generally supported by the presence of the following three elements.

- There must have been a **misrepresentation** or concealment of a fact;
- The misrepresentation or concealment must have been **willful**; and
- The fact must be **material**. See Kungys v. U.S., 485 U.S. 759 (1988) which indicates that a fact is considered material if it had a tendency to influence the decision for the application or petition or shut off a relevant line of inquiry.

A finding of fraud is also supported when the immigration filing contains fraudulent documents that are germane.

The Fraud Detection and National Security (FDNS) Directorate administratively investigates allegations of immigration benefit fraud and produces a Statement of Findings (SOF) that adjudicators use to render their decisions. Most fraud investigations are conducted under the authority of § 212(a)(6)(C)(i) of the Act. In the DACA context, the SOF will document all fraud findings and underlying issues impacting the favorable exercise of prosecutorial discretion.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006950

## I. Fraud Review and Fraud Referrals, Continued

**Immigration**
**Fraud**
(continued)

Individuals requesting DACA are not subject to the 212 inadmissibility grounds, because they are neither applying for a visa nor seeking admission to the United States. They are, instead, seeking the administrative exercise of prosecutorial discretion. Nevertheless, the presence of confirmed or suspected fraud issues are germane in deciding whether the DACA requestor merits the exercise of prosecutorial discretion. As a result, when an individual is found to have committed fraud in connection with a DACA request, the DACA request is denied not because the individual is inadmissible due to fraud, but rather, because the fraud negates the exercise of prosecutorial discretion to defer removal. Denials based on confirmed fraud findings will be supported by a properly documented SOF generated by CFDO. FDNS-DS must be updated to show that the DACA request was actually denied for confirmed fraud. The officer must provide information on the final outcome of a DACA request (e.g., approved, denied, NTA) to the BCU/CFDO so they may update FDNS-DS, accordingly.

When adjudicating Forms I-821D and I-765 for DACA, officers will complete a fraud referral sheet when there are articulable elements of fraud found within the filing. When articulable fraud indicators exist, the officer should refer the filing with a fraud referral sheet prior to taking any adjudication action even if there are other issues which negate the exercise of prosecutorial discretion to defer removal.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES):
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006951

## I. Fraud Review and Fraud Referrals, Continued

**Immigration
Fraud**
(continued)



If the CFDO is to resolve the articulated fraud after exhausting all reasonable
efforts and resources, the CFDO may refer the cases to appropriate field
office for interview, if an interview may resolve outstanding concerns.

The findings of the administrative or criminal investigation will be recorded
in FDNS-DS and reported in an SOF and placed in the A-file to enable
officers to make accurate and informed decisions on the DACA requests.

The CFDO will adhere to the Fraud Detection Standard Operating Procedures
for referring fraud cases filed under the DACA program to ICE.

DACA cases denied due to a confirmed finding of fraud shall be updated in
C3 as "Denial Notice with a Finding of Fraud Ordered" [EC] for tracking
purposes. In addition, DACA cases denied due to a confirmed finding of
fraud shall be referred for NTA issuance in accordance with the NTA
memorandum dated November 7, 2011. The appropriate NTA charge will be
determined on a case-by-case basis in consultation with local counsel.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 103

Confidential

DEF - 00006952

# I. Fraud Review and Fraud Referrals, Continued

**System Updates for DACA File Movement Into and Out of CFDO**

For reporting purposes, DACA file movement into and out of the CFDO will require the following updates in C3:

- "Sent to the Fraud Detection Unit (FDU) for Analysis" **LE** when sending a DACA request to the CFDO; and
- "Return from Fraud Detection Unit (FDU) with Results" **LE** when receiving a DACA request from CFDO for final processing.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

DEF - 00006953

# Chapter 9: Decisions

## A. Requests for Evidence

**Request for Evidence (RFE)**

For DACA requests, when requesting additional evidence, an RFE will be used. A NOID will rarely be used. Appendix D has a list of DACA RFE call ups to be used when processing a DACA request.

Follow the steps below to process an RFE.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |



FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006954

# B. Notice of Intent to Deny

**Notice of Intent to Deny (NOID)**

Follow the steps below to process a NOID:

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |



**Notice of Intent to Deny (NOID) –Local Counsel and HQ SCOPS Review**

See Appendix J for current Notice of Intent to Deny review policy.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006955

# C. Approvals

**Approvals:**
**CLAIMS**
**Verification**

Follow the steps below to verify information in C3 prior to processing an approval.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Check the fee payment information for Form I-765. See Chapter 5 regarding NSF processing and handling procedures. |
| 10 | LE |



*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006956

# C. Approvals, Continued

**Approval Processing for Initial I-821D**

Follow the steps below to process an approval for a DACA request.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 |  |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Put in ROP order and place a pink coversheet on the left-hand side of the file. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006957

# D. Denials –

**Denials –**
**After RFE or**
**NOID**

In general, the officer shall issue a denial whenever the requestor's response to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) is insufficient to establish eligibility. There may be exceptions when a NOID or second RFE is appropriate after an initial RFE.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006958

**Denials –**
**Supervisory**
**Review**

When the denial involves one of the grounds listed below, obtain supervisory review before issuing the denial when the requestor:

- Has a conviction for any crime committed before reaching age 18, and was tried as an adult; or
- Has been convicted of a "significant misdemeanor;" or
- Has no criminal convictions and outwardly appears to meet the guidelines in the Secretary's June 15, 2012 memorandum; however, based on other derogatory information obtained through routine systems and background/security checks, there are credible reasons to believe that the requestor poses a threat to national security or public safety. If the requestor poses a threat to national security, the officer should refer the proposed denial for supervisory review after the case has been processed through the CARRP process; or
- Has one or more departures which he/she claims were "brief, casual, and innocent" and therefore are not disruptive of the continuous residence requirement; or
- Has not met the educational guideline; or
- Is in immigration detention at the time of filing Form I-821D and remains in immigration detention; or
- Cannot receive prosecutorial discretion because it is not consistent with the Department of Homeland Security's enforcement priorities.

If the convictions and/or arrests occurred before the requestor filed the Form I-821D and the requestor did not disclose this derogatory information, include the withholding of the material fact(s) as one of the reasons for not exercising prosecutorial discretion in the case.

When a DACA request is denied, the denial shall be issued using the Appendix F. In instances where an individual is unable to establish he or she warrants a favorable exercise of prosecutorial discretion under this process, and no other checkbox applies except "You have not established that you warrant a favorable exercise of prosecutorial discretion," supervisors must refer the case to HQSCOPS through the normal chain of command.

Before routing the A-file to a supervisor, the officer should place a supervisory hold on the case in C3. After the supervisor concurs with the issuance of a denial, the officer shall check the appropriate box on the denial template and process the cases in the system for denial. See Appendix F for the DACA Denial Template. If the supervisor determines that the case should be approved, process for approval and document the file as appropriate.

In novel, complex, or sensitive cases, or cases that require a paragraph denial that are not included in Appendix K, supervisors will refer the case to HQSCOPS, through the normal chain of command.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006959

# D. Denials, Continued

**Denial**
(continued)

When the denial falls under one of the categories that requires supervisory review, ensure that concurrence has been obtained before processing the DACA request for denial.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | Prepare and send the denial. |
| 9 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 10 | Process Form I-765 for denial. See Chapter 12. |



*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006960

# D. Denials, Continued

**Abandonment Denial Letters**

Abandonment denials do not require supervisory review. Abandonment denials are initiated on Form I-821D in the following:

- The requestor fails to respond to an RFE or NOID;
- The requestor fails to appear at an ASC for biometrics collection within the specified time frame, after failure to respond to an RFE. Refer to Chapter 5 of this SOP.

**Abandonment Denials**

After **ALL** A-files have been retrieved when processing an I-821D (unless adjudicating in a T-file if unable to obtain the A-file), follow the steps below to process an abandonment denial.

| Step | Action |
|------|--------|
| 1 | Ensure that no other addresses exist: |
|   | 1. Review the file for any correspondence received; |
|   | 2. Review the returned envelope for any changes from the post office; |
|   | 3. Check C3, National Claims, and AR11 for an alternate address or an address change; |
|   | 4. Check the systems to see if a more recent DACA request was submitted with updated address; and |
|   | 5. Check Forms I-821D and I-765 to ensure that there is no different address provided between the two forms. |
| 2 | |
| 3 | |
| 4 | |
| 5 | **LE** |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

Confidential

DEF - 00006961

# D. Denials, Continued

**Abandonment Denials**
(continued)

| Step | Action |
|------|--------|
| 6 | |
| 7 | **LE** |
| 8 | |
| 9 | Prepare and send the denial. |
| 10 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 11 | Process the Form I-765 for denial. See Chapter 12. |

**NOTE:** If the RFE/NOID was not stamped as a "No Response," the officer should write it on the document. A "No Response" will **ALWAYS** remain on top of the application for proper ROP and the officer will place the denial/withdrawal letter on top of the "No Response."

**Denial for NSF**

When Form I-765 has been "rejected" for NSF, for the $380 I-765 fee and/or the $85 biometrics fee, Form I-821D shall be denied as the DACA filing did not include a concurrently filed I-765 and I-821D. The officer shall select the appropriate denial box on the denial template and update C3 to reflect the denial. After processing the case for denial and updating the system, hold the A-file for 45 days and then forward to the NRC, if a request to review is not received through SRMT.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 113

Confidential

DEF - 00006962

# Chapter 10: Post Denial Process

**Determining Appropriate Action After Denial**

1. Review the grounds for denial.

2. If the denial grounds do not involve criminal, national security, or public safety issues, hold the A-file for 45 days and then forward to the NRC, if a request to review is not received through SRMT.

3. If the denial involves criminal, national security, or public safety issues, refer to the November 7, 2011, memorandum entitled, Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens. Confirmed fraud denials also warrant NTA issuance. See Appendix B.

4. The NTA unit will determine whether NTA issuance is appropriate under the NTA memorandum referenced above.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006963

# Chapter 11: Returned Mail

**Check for Address Changes**

When notices are returned as undeliverable, the officer should:

1. Review the file for any correspondence received;
2. Review the returned envelope for any changes from the post office, Check C3, National Claims, and AR11 for an alternate address or an address change;
3. Check the systems to see if a more recent DACA request was submitted with an updated address; and
4. Check both Form I-821D and the I-765 to ensure that there is no different address provided between the two forms.

**RFE, NOID, Intent to Terminate**

When an RFE, NOID, or Intent to Terminate is returned to the Service Center as undeliverable, follow all procedures above to locate a new address and re-mail the RFE, NOIT or Intent to Terminate after updating C3.

If there is no other address to use and the response time indicated has not passed, the file should be placed on hold in accordance with local procedures for the remainder of the response time.

| If there is no other address found and the response time has passed on the... | Then... |
| --- | --- |
| RFE | Deny as an abandonment denial. |
| NOID (with NO criminal content), | Deny for cause. |
| Intent to Terminate, | Terminate DACA. |

**Denial Notice**

When a denial is returned to the Service Center as undeliverable, follow all procedures above to locate a new address and re-mail the denial.

| If there is no new address and the 45 days... | Then... |
| --- | --- |
| Have **NOT** passed, | Hold file |
| Have passed, | Send to the NRC if no further communication is received. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

Confidential

DEF - 00006964

# Chapter 12: Employment Authorization

## A. General Information

| | |
|---|---|
| **(c)(33) Eligibility Category** | The eligibility category for employment authorization based on a grant of deferred action is 8 C.F.R. § 274a.12(c)(14). To distinguish DACA-related EADs from other deferred action EADs, the (c)(33) code will be used. |
| **Evidentiary Requirements** | For a (c)(33) EAD, the individual must be approved for DACA.

The information needed to assess economic necessity is collected on the Form I-765WS. This worksheet should have been reviewed during the adjudication of Form I-821D.

Before proceeding with the adjudication of the Form I-765, review C3 to ensure that there is no outstanding RFE, as the RFE would have been issued during the adjudication of Form I-821D. |
| **Validity Period of (c)(33) EAD** | The "valid from" date is the date of approval and the "valid to" date is 2 years minus one day from the date of approval or to the end date of the deferred removal date under DACA, whichever is earlier. |
| **8 C.F.R. § 274a.13(d) – 90 Day Time Period to Issue an EAD** | Pursuant to 8 C.F.R. § 274.12(c)(14), the EAD is predicated on a grant of deferred action. Since Forms I-821D and I-765 are filed concurrently for DACA, Form I-821D will be adjudicated first. If Form I-821D is approved, then Form I-765 would be approved under the (c)(33) code to distinguish the DACA related EADs from other deferred action EADs. Since approval of the Form I-821D is a prerequisite, and since the EAD is based upon a grant of DACA, the 90-day EAD clock begins after Form I-821D is approved for DACA. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

## A. General Information, Continued

**Reasons for Filing**

The DACA requestor should indicate one of the following reasons for filing:

- Permission to accept employment: The initial request for employment authorization under an eligibility category; or
- Replacement (of lost or stolen employment authorization document): A request to replace a lost, stolen, mutilated, or incorrect EAD.

If neither of these boxes is checked, verify the Form I-821D approval in C3 to ensure that removal has been deferred under DACA and then check the Form I-765 history in C3 to see if a prior EAD has been issued under the (c)(33) eligibility category. If yes, process the Form I-765 EAD as a replacement. If no, process the Form I-765 EAD as an initial EAD. If a prior replacement EAD under the (c)(33) eligibility category has been issued, refer the case to CFDO.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006966

# B. Adjudication

**Verification of Forms I-821D and I-765**

Access C3 and follow the steps below to verify the information:

| Step | Action |
|------|--------|
| 1 | Verify that the requestor has a pending or an approved initial I-821D on file.  (If no, see the denial section for processing instructions.) |
| 3 | • Check the signatures on Form I-765.<br>• Verify that the biometrics are present. |

**Biometrics**

Officers must check the [     LE     ] to determine if the requestor's biometrics (photograph, fingerprints, signature) have been received. [ LE ]
[                    LE                    ]

| If ... | Then ... |
|--------|----------|
| **LE** | the biometrics have been received. |
| | the biometric(s) have been waived. |
| | then the data was not captured and a card will not print. |

If the requestor is a child less than 14 years of age, there should be a **Waiver (W)** for fingerprint and signature.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006967

# B. Adjudication, Continued

**Approvals**
All corrections made to the information contained on Form I-765 must be made on the face of the application in **red**.

**Application Annotations**
When approving Form I-765, follow the steps below for proper annotation of the form:

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| |  |
| 3 | |
| 4 | |
| 5 | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006968

# B. Adjudication, Continued

**CLAIMS Updating for Approvals**     Follow the steps below to update C3 for I-765 approval.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | **LE** |
| 6 | |
| 7 | |
| 8 | |
| 9 | Place a pink coversheet on the left-hand side of the file. |
| 10 | In the alternative, the approval may be updated using I-765 Express per existing protocols. |

**NOTE:** If you go back into the approval screen to view the data before exiting the form after approving, then you must press the "save" button again to retain the approval. If the information is not saved, then a card will not be generated.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006969

# B. Adjudication, Continued

**Notice of Intent**  Officers will prepare the intent to deny letter, annotate the worksheet, and
**to Deny (NOID)**  update CLAIMS as follows:

| Step | Action |
|------|--------|
| 1 | |
| 2 | **LE** |
| 3 | |
| 4 | |
| 5 | |
| 6 | Prepare and send the NOID. <br><br>**NOTE:** Make certain all letters are spell checked and previewed prior to sending. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006970

# B. Adjudication, Continued

**Denials**  Follow the steps below when denying a case.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 |  |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| | **NOTE:** The date on the denial stamp should be date of adjudication. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006971

# B. Adjudication, Continued

**Denials**
(continued)

| Step | Action |
|------|--------|
| 10 | For cases NOT going to the NTA team:<br><br>• The denial for the Form I-765 is included in the DACA Denial Template. _See_ Appendix F.<br>• Place a pink coversheet on the left-hand side of the file over the denial letter.<br><br>**NOTE:** When denying only the Form I-765 for abandonment, an officer should use the DACA Form I-765 Abandonment Denial. |
| 11 | Charge out the file using local procedure. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**Version August 28, 2013** 123

Confidential
DEF - 00006972

# C. Replacement Cards

**Evidence Required**

The following evidence is required for replacement cards:
- Biometrics from the applicant's most recent ASC visit.
- Original signature. All applicants age 14 and over must sign their own application. The contractor can obtain the signature from Form I-765 and waive the fingerprint when scanning and producing an EAD.
- Current card issued with validity dates that have NOT expired.
- Valid fingerprints are not required in order to issue a replacement EAD.

**Validity Dates**

When issuing a replacement card the validity period should mirror the dates authorized under the previous card.

**Biometrics**

Upon receipt, the contractor will clone from biometrics from the applicant's most recent ASC visit.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006973

# Chapter 13: Use of Service Request Management Tool (SRMT) to

**Introduction**   USCIS will accept SRMTs from DACA denials based on a claim that the denial is incorrect <u>and</u> the denial is based on an <u>administrative error</u>. Specifically, USCIS will accept SRMTs where the requestor believes that USCIS incorrectly denied his/her DACA request for one or more of the reasons listed in this chapter of the DACA SOP.

**History Action Codes (HAC)**   When responding to a request to review a denied DACA request, C3 must be updated with the appropriate History Action Code (HAC) created to track the specific action taken and to denote that the SRMT involved a denied DACA request. The following HACs will be used:



**Templates**   When providing an interim response to review a denied DACA request, standard response templates must be used for the interim response and when the denial is affirmed. When the denied DACA request is approved on Service Motion, the standard approval notice will be generated from C3. Appendix G contains the following templates:

- DACA SRMT call-ups for interim SRMT responses.
- DACA SRMT call-ups to respond that the denial was correct and is affirmed.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**

Confidential

DEF - 00006974

# Use of SRMT to Respond to Request to Review Certain Denials

**Administrative Errors related to Material Facts**

Follow the steps below when an SRMT is filed due to a **claimed administrative error** related to:

- The denial of the DACA request on the grounds that the requestor did not come to the United States prior to reaching his/her 16th birthday, but the evidence submitted at the time of filing shows that the requestor did, in fact, arrive before the required age; or
- The denial of the DACA request on the grounds that the requestor was under age 15 at the time of filing, but not in removal proceedings, but the evidence submitted at the time of filing and/or systems checks show that the requestor was, in fact, in removal proceedings when the DACA request was filed; or
- The denial of the DACA request on the grounds that the requestor was not under the age of 31 on June 15, 2012, but the evidence submitted at the time of filing shows that the requestor did not exceed the upper age limit on June 15, 2012; or
- The denial of the DACA request on the grounds that the requestor was not in an unlawful immigration status on June 15, 2012, but the evidence submitted at the time of filing shows that the requestor was, in fact, in a lawful status on June 15, 2012; or
- The denial of the DACA request on the grounds that the requestor was not physically present in the United States on June 15, 2012, up through the date of filing, but the evidence submitted at the time of filing establishes that the requestor was, in fact, present.

| Step | Action |
|---|---|
| 1 | Request the file. |
| 2 | Respond to the SRMT with an interim response. |
| 3 | Update C3 (with HAC code) **LE** |
| 4 | **LE** |
| 5 | Route the file to the reviewing ISO. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006975

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Administrative Errors Related to Material Facts** (continued)

| Step | Action |
|------|--------|
| 6 | The ISO will review the claimed administrative error. |

| If the denial... | Then... |
|------------------|---------|
| Was correct, | • The ISO will route the filing to the SISO for concurrence.<br>• The SISO will concur or not concur and route back to the ISO for appropriate systems updating.<br>• If SISO concurs, the ISO updates C3 with HAC code *SRMT DACA Denial Affirmed* and respond to the DACA requestor using the appropriate DACA SRMT call-up found in Appendix G.<br>• If SISO does not concur, follow the instructions below (Was Not Correct). |
| Was not correct, | • The SISO routes the filing to the ISO for review.<br>• The ISO approves Forms I-821D and I-765.<br>• The ISO updates C3 with the HAC code **LE** **LE** for each form to show that the case to show that the case was approved on Service Motion. |
| Was not correct, but other reasons for denial still exist, | • The ISO will route the filing to the SISO for concurrence.<br>• If the SISO concurs, the ISO will re-deny the case.<br>• The ISO updates C3 with the HAC code **LE** DACA Denial Affirmed for each form.<br>• The ISO produces a new denial using the **LE** denial template found in Appendix H. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Version August 28, 2013   127

Confidential

## Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's biometrics collection.

| Step | Action |
|------|--------|
| 1 | Review the electronic systems to see whether the requestor had his/her biometrics taken. Request the A-file (if needed). |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC codes **LE** **LE** for both forms. |
| 4 | Send an interim **LE** response using **LE** |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Version August 28, 2013  128

DEF - 00006977

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC (continued)**

| If the requestor... | Then... | |
|---|---|---|
| Did not have his/her biometrics taken, | The reviewing officer should check:<br>• Returned Mail<br>• Address Changes<br>• Rescheduling Requests<br>• The BPU ASC Reschedule Spreadsheet | |

| If you... | Then... |
|---|---|
| Locate returned mail, an address change, or a rescheduling request, | • Initiate ASC appointment rescheduling.<br>• After the biometrics results are received, adjudicate the case.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC **LE** **LE** **LE** for each form.<br>• If denied, issue a denial using the **LE** denial template.<br>• Update C3 with HAC **LE** Denial Affirmed for each form. |
| Do not locate any returned mail, address change, or rescheduling request, | • Respond to the SRMT that the denial stands, using the SRMT denial template. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006978

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC (continued)**

| If the requestor… | Then… |
|---|---|
| Did have his/her biometrics taken, | • The ISO will adjudicate Forms I-821D and I-765.<br>• If Form I-821D is approved, ISO approves Form I-765.<br>• ISO updates C3 with HAC **LE** **LE** for each form.<br>• If denied, ISO issues a denial using the **LE** T denial template.<br>• ISO updates C3 with HAC **LE** for each form. |

**Requestor requested that His/Her Biometrics Appointment at a USCIS ASC be Rescheduled Prior to the Scheduled Date**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the request to reschedule the ASC appointment.

| Step | Action |
|---|---|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC code **LE** DACA Reopened on Service Motion for both forms. |
| 4 | Send an interim **LE** response using **LE** |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)...

Confidential DEF - 00006979

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor requested that His/Her Biometrics Appointment at a USCIS ASC be Rescheduled Prior to the Scheduled Date** (continued)

| Step | Action |
|---|---|
| 5 | Review the filing and SRMT to determine if a request was received to reschedule the ASC Appointment. |

| If the requestor... | Then... |
|---|---|
| Requested to have his/her biometrics appointment rescheduled, prior to the scheduled date. | • The ISO will schedule a new ASC appointment and route the A-file to the appropriate holding shelf to await the biometrics results.<br>• Adjudicate the case after the biometrics results are received.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC LE Approved on Service Motion for each form.<br>• If denied, issue a denial using the LE denial template.<br>• Update C3 with HAC LE LE |
| Did not request to have his/her biometrics appointment rescheduled, prior to the scheduled date. | • Respond to the SRMT that the denial stands, using the SRMT denial template. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006980

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor Paid the Filing and Biometric fees for the I-765**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to Non-Sufficient Funds.

Review the electronic systems to see whether the requestor paid the associated fees with the filing.

| Step | Action |
|------|--------|
| 1 | Records Division reviews electronic systems to determine if the fee was paid timely and properly (if necessary, Request the A-file) |
| 2 | Reopen Forms I-821D and I-765 on Service motion. |
| 3 | Update C3 with HAC code ⎡ **LE** ⎤ ⎣ **LE** ⎦ for both forms. |
| 4 | Send an interim ⎡ **LE** ⎤ response using ⎡ **LE** ⎤ |

| If the Records Division determines... | Then... |
|---------------------------------------|---------|
| The appropriate fees were not paid, | • Respond to the SRMT that the denial stands, using the SRMT denial template. |
| The appropriate fees were paid, | • The ISO obtains the file and schedules a new ASC appointment and routes the A-file to the appropriate holding shelf to await the biometrics results.<br>• Adjudicate the case after the biometrics results are received.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code ⎡ **LE** ⎤ ⎣ **LE** ⎦ for each form.<br>• If denied, issue a denial using the ⎡ **LE** ⎤ denial template.<br>• Update C3 with HAC code ⎡ **LE** ⎤ ⎣ **LE** ⎦ for each form. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006981

## Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Denied the Request for DACA Based on Abandonment and the Requestor Claims He/She did Respond to a RFE Within the Prescribed Time**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's response to a RFE.

| Step | Action |
|------|--------|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service motion. |
| 3 | Update C3 with HAC code **LE**    **LE**   for both forms. |
| 4 | Send an interim **LE** response using **LE** |
| 5 | Review A-file and local systems to determine if a response to the RFE was received before the due date. |

|  | If the requestor… | Then… |
|--|-------------------|-------|
|  | Responded to the RFE within the prescribed time, | • Route the filing to the reviewing officer.<br>• Adjudicate based on the evidence submitted initially and the RFE response.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code **LE**    **LE** for each form.<br>• If denied, issue a denial using the **LE** denial template.<br>• Route to SISO for denial concurrence<br>• Update C3 with HAC code **LE**    **LE** for each form. |
|  | Did not respond within the required time, or no response was received. | • Respond to the SRMT that the denial stands, using the SRMT denial template. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

 DEF - 00006982

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Mailed the RFE to the Wrong Address and the Requestor Submitted a COA Prior to the RFE Issuance**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's change of address.

| Step | Action |
|------|--------|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC code **LE** **LE** for both forms. |
| 4 | Send an interim **LE** response using **LE** |
| 5 | Verify the requestor's address. |

| If the requestor... | Then... |
|---------------------|---------|
| Filed a change of address, prior to the issuance of an RFE. | • Re-issue the RFE with a new 87-day response time to the correct address and route the A-file to the RFE hold shelf.<br>• After the RFE response is received, adjudicate Forms I-821D and I-765 based on the evidence submitted initially and the RFE response.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code **LE** **LE** for each form.<br>• If denied, issue a denial using the **LE** denial template.<br>• Update C3 with HAC code **LE** **LE** for each form. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006983

## Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Mailed the RFE to the Wrong address and the Requestor Submitted a COA Prior to the RFE Issuance** (continued)

| If the requestor... | Then... | |
|---|---|---|
| Did not file a COA prior to the issuance of an RFE. | Review that the RFE was sent to the correct address. | |
| | **If the RFE was sent to,** | **Then,** |
| | The correct address. | • Respond to the SRMT stating that the denial stands, using the SRMT denial template. |
| | An incorrect address. | • Route the filing to the SISO.<br>• The ISO shall re-issue the RFE with a new 87-day response time to the correct address and route the A-file to the RFE hold shelf.<br>• After the RFE response is received, adjudicate Forms I-821D and I-765 based on the evidence submitted initially and the RFE response.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code **LE** **LE** for each form.<br>• If denied, issue a denial using the SRMT denial template.<br>• Update C3 with HAC code **LE** **LE** for each form. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006984

# Chapter 14: DACA Termination

**Removal Deferred Under DACA - Requestor did not Satisfy the Guidelines**

If it comes to the attention of an officer that removal was deferred under DACA in error, the officer should reopen the case on Service motion and issue a Notice of Intent to Terminate, unless there are criminal, national security, or public safety concerns (see below). The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice, prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice.

**Fraud**

If it comes to the attention of an officer that an individual committed fraud in seeking deferral of removal under DACA, the officer should reopen the case on Service motion and issue a Notice of Intent to Terminate. The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice.

The decision to issue a Notice of Intent to Terminate based on fraud should be supported by a fully documented SOF and any other relevant documents/information. The terminated DACA case must also be appropriately recorded in FDNS-DS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006985

## DACA Termination, Continued

**Criminal,
National
Security, or
Public Safety
Issues**

If disqualifying criminal offenses or public safety concerns, which are deemed to be EPS, arise after removal has been deferred under DACA, the officer should forward the case to the BCU DACA Team who, in turn, will refer the case to ICE and follow the handling procedures outlined in the November 7, 2011 NTA memorandum for EPS cases. If ICE accepts the case, the issuance of the NTA will result in the termination of DACA. Upon the filing of the NTA with EOIR, the individual's employment authorization terminates automatically.

If ICE does not accept the case or if the disqualifying criminal offense is non-EPS per the November 7, 2011 NTA memorandum, the BCU DACA Team should reopen the case on Service motion and issue a Notice of Intent to Terminate. The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice. Consequently, the Class of Admission (COA) code in CIS should be changed to DAT (Deferred Action Terminated) for employment verification purposes. Additionally, the BCU DACA Team should forward the individual's name to ERO.

If national security concerns arise after removal has been deferred under DACA, the case should go through the CARRP process, per established CARRP protocols.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

DEF - 00006986

# DACA Termination, Continued

| | |
|---|---|
| **Enforcement Priority – DACA Not Automatically Terminated** | If after consulting with ICE, USCIS determines that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with the Department of Homeland Security's enforcement priorities, and ICE does not plan to issue an NTA,the officer should refer the case to HQSCOPS, though the normal chain of command, to determine whether or not a NOIT is appropriate.  If it is determined that the case warrants final termination, the officer will issue DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated] from the Appendix I. |
| **System Updates** | The following new  HACs must be used as appropriate when updating a Notice of  Intent to Terminate DACA and a DACA Termination Notice in C3: |



After terminating DACA, the Class of Admission (COA) code in CIS should be changed to DAT (Deferred Action Terminated) for employment verification purposes.

See Appendix I for Notice of Intent to Terminate and Termination Notice.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006987

# Chapter 15: Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA)

**Introduction**

Parole is the authorization to allow an otherwise inadmissible person to physically proceed into the United States under certain safeguards and controls. Parole is not an admission. The legal authority for parole is found in § 212(d)(5)(A) of the Act. Under this statutory authority, DHS may, as a matter of discretion, parole an individual into the United States under prescribed conditions. Parole is granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Advance parole is generally granted prior to the individual's departure from the United States. Form I-512L evidencing such a grant is generally the document accepted by a transportation company to allow individuals travelling without a visa to return to the United States.

**Prescribed Conditions for Advance Parole**

In accordance with the discretionary authority provided in § 212(d)(5)(A) of the Act, USCIS will determine whether a DACA recipient's purpose for international travel is justifiable based on the circumstances he or she describes in his or her request. Generally, USCIS will only grant advance parole if the applicant's travel abroad will be in furtherance of:

- humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;

- educational purposes, such as semester-abroad programs and academic research, or;

- employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

Travel for vacation is not a valid basis for advance parole.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   139

Confidential

DEF - 00006988

**Advance Parole Requested for Humanitarian Purposes**

For humanitarian purposes the applicant must show that the travel is for the purpose of:

- Obtaining medical treatment;
- Attending funeral services for a family member; or
- Visiting an ailing relative.

Evidence to demonstrate this purpose includes, but is not limited to:

- A letter from the applicant's physician explaining the nature of his or her medical condition, the specific medical treatment to be sought outside of the United States, and a brief explanation why travel outside the U.S. is medically necessary; or

- Documentation of a family member's serious illness or death.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**Version August 28, 2013** 140

Confidential

DEF - 00006989

# Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Continued

**Advance Parole Requested for Educational Purposes**

For educational purposes the applicant must show that the travel will be undertaken for educational pursuits.

- Examples include semester abroad programs or travel necessary to conduct academic research.
- Travel during an academic year unrelated to academics (e.g., a vacation) is insufficient to qualify as an educational purpose.
- Evidence to demonstrate this purpose includes, but is not limited to:

  - A letter from a school employee acting in an official capacity describing the purpose of the travel and explaining why travel is required or beneficial; or

  - A document showing enrollment in an educational program requiring travel.

**Advance Parole Requested for Employment Purposes**

For employment purposes the applicant must show that the travel relates to fulfilling job requirements.

- These purposes will also include the pursuit of a position in the United States with a foreign employer.
- Examples include an overseas assignment, an interview, a conference, training, or a meeting with overseas clients.
- Evidence to demonstrate employment purposes includes, but is not limited to:

  - A letter from the applicant's employer or conference host describing the need for travel; or

  - A document showing a specific employment need, such as a conference program, that also shows the applicant's participation.

**Expedites**

As a general matter of course, expedite requests will not be granted, because USCIS will make every effort to process the advance parole request quickly; however, in a dire emergency, and if properly documented, if an individual were to appear at a local office and the local office were to deem the need for an expedite to be compelling such that an expedite would be warranted, the local office has the option of processing the advance parole or working through established POCs at the Service Center under normal protocols.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

## Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Continued

| | |
|---|---|
| **Filing Location** | A DACA recipient seeking advance parole files Form I-131 with the USICS Lockbox Facility according to the instruction on the form. The Lockbox Facility will forward the application to the appropriate Service Center according to the agreed upon routing. |

| | |
|---|---|
| **DACA Recipients in Removal Proceedings** | Individuals in removal proceedings, including those with a final removal order, may seek advance parole if the request meets the guidelines for advance parole consideration under DACA. Notwithstanding the advance parole, a departure made while under a final order of removal (including a voluntary departure that converted automatically to a final removal order) renders that individual inadmissible under § 212(a)(9)(A) of the Act. |

**Processing Steps**

**Step 1:** Determine whether the applicant is in removal proceedings and/or has a final removal order.

**Step 2:** Captured digital photos from the recent ASC visit should be used in creating the travel document within the I-512L program.

**Step 3:** Review the results of the initial **LE** checks.
- If there is no **LE** hit, or the **LE** shows the hit does not relate (DNR), or the hit has already been resolved, go to step 4.
- If there is an unresolved **LE** hit, follow the instructions in the NaBISCOP.

**Step 4:** Adjudicate the I-131.
- If the criteria have been met, issue the advance parole valid for the duration of the event, as documented in the advance parole application. For multiple events, issue the advance parole valid for the duration of all the documented events, not to exceed the duration of the deferral of removal under DACA.
- Update the I-131 in C3 for approval and issuance of an I-512L Advance Parole Document.
- If the criteria have not been met, issue a denial and update C3.

Update RFEs, approvals and denials in C3 using current procedures.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 142

Confidential                                    DEF - 00006991



June 15, 2012

*Secretary*
U.S. Department of Homeland Security
Washington, DC 20528

# Homeland Security

MEMORANDUM FOR:         David V. Aguilar
                        Acting Commissioner, U.S. Customs and Border Protection

                        Alejandro Mayorkas
                        Director, U.S. Citizenship and Immigration Services

FROM:                   Janet Napolitano
                        Secretary of Homeland Security

SUBJECT:                Exercising Prosecutorial Discretion with Respect to Individuals
                        Who Came to the United States as Children

FROM: SUBJECT:
John Morton
Director, U.S. Immigration and Customs Enforcement

DEF - 00002601

Janet Napolitano
Secretary of Homeland Security

Exercising Prosecutorial Discretion with Respect to Individuals
Who Came to the United States as Children

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the Department of Homeland Security (DHS) should enforce the Nation's immigration laws against certain young people who were brought to this country as children and know only this country as home. As a general matter, these individuals lacked the intent to violate the law and our ongoing review of pending removal cases is already offering administrative closure to many of them. However, additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead appropriately focused on people who meet our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for a least five years preceding the date of this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs

DEF - 00002602

Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum

.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the

DEF - 00002603

framework of the existing law. I have done so here.

Janet Napolitano

DEF - 00002604

# **Appendix B**



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship
and Immigration
Services**

**November 7, 2011** **PM-602-0050**

## Policy Memorandum

SUBJECT: Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens

### Purpose

This Policy Memorandum (PM) establishes new USCIS guidelines for referring cases and issuing Notices to Appear (NTAs) in a manner that promotes the sound use of the resources of the Department of Homeland Security and the Department of Justice to enhance national security, public safety, and the integrity of the immigration system. This PM supersedes Policy Memorandum No. 110, *Disposition of Cases Involving Removable Aliens*, dated July 11, 2006.

### Scope

This PM applies to and is binding on all USCIS employees unless otherwise specifically provided in this PM.

### Authority

Immigration and Nationality Act (INA) sections 101(a)(43), 103(a), 239, 240 and 318; Title 8, Code of Federal Regulations (8 CFR) parts/sections 2.1, 103, 204, 207.9, 208, 216.3(a), 216.6(a)(5), 236.14(c), and 239; Adjudicator's Field Manual Chapter 10.11(a).

### Background

U.S. Citizenship and Immigration Services (USCIS) has authority, under the immigration laws, *see, e.g.,* INA §§ 103(a), 239; 8 CFR §§ 2.1, 239.1, to issue Form I-862, Notice to Appear, to initiate removal proceedings.[1] U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs and Border Protection (CBP) also have authority to issue NTAs. Accordingly, USCIS must ensure that its issuance of NTAs fits within and supports the Government's overall removal priorities, while also ensuring that its NTA policies promote national security and the integrity of the nation's immigration system.

To those ends, this PM identifies the circumstances under which USCIS will issue an NTA, or will refer the case to ICE for NTA issuance, in order to effectively handle cases that involve public safety threats, criminals, and aliens engaged in fraud.

---

[1] *Delegation by the Secretary of the Department of Homeland Security to the Bureau of Citizenship and Immigration Services,* Delegation Number 0150.1; Paragraph 2(N). However, international District Directors and officers are not authorized to issue NTAs.

www.uscis.gov

Confidential

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 2

## Policy

I. <u>National Security Cases</u>

This PM does not affect the handling of cases involving national security concerns.[2]
Guidance from the Fraud Detection and National Security Directorate (FDNS)[3] will continue
to govern the definition of these cases and the procedures for resolution and NTA issuance.

II. <u>NTA Issuance Required by Statute or Regulation</u>

USCIS will issue an NTA in the following circumstances:[4]

A. Termination of Conditional Permanent Resident Status and Denials of Form I-751,
   Petition to Remove the Conditions of Residence (8 CFR 216.3, 216.4, 216.5)[5]
B. Denials of Form I-829, Petition by Entrepreneur to Remove Conditions (8 CFR 216.6)
C. Termination of refugee status by the District Director (8 CFR 207.9)
D. Denials of NACARA 202 and HRIFA adjustments
   1. NACARA 202 adjustment denials (8 CFR 245.13(m));
   2. HRIFA adjustment denials (8 CFR 245.15(r)(2)(i)).
E. Asylum[6], NACARA 203, and Credible Fear cases:[7]
   1. Asylum referrals (8 CFR 208.14(c)(1));
   2. Termination of asylum or termination of withholding of removal or deportation
      (8 CFR 208.24(e));[8]
   3. Positive credible fear findings (8 CFR 208.30(f));
   4. NACARA 203 cases where suspension of deportation or cancellation of removal
      is not granted, and the applicant does not have asylum status, or lawful immigrant
      or non-immigrant status (8 CFR 240.70(d)).

This PM does not apply to, or change, NTA or notification procedures for Temporary
Protected Status cases.[9]  Further, Form I-360, Petition for Amerasian, Widow(er), or Special
Immigrant, processed under the Violence Against Women Act (VAWA), should continue to

---

[2] National Security Cases include cases involving Terrorist Related Grounds of Inadmissibility (TRIG) pursuant to
sections 212(a)(3)(B) and 212(a)(3)(F) of the INA.
[3] See, e.g., *Policy for Vetting and Adjudicating Cases with National Security Concerns* (April 11, 2008).
[4] If any Form I-751 or I-829 cases are also Egregious Public Safety cases, they will be referred to ICE in accordance
with Section IV.A.1 of this PM.
[5] See the October 9, 2009 internal memo, *Adjudication of Form I-751, Petition to Remove Conditions on Residence
Where the CPR Has a Final Order of Removal, Is in Removal Proceedings, or Has Filed an Unexcused Untimely
Petition or Multiple Petitions.*  See also the April 3, 2009 memo, *I-751 Filed Prior to Termination of Marriage.*
[6] USCIS may issue an NTA when an asylum applicant withdraws his or her asylum application.
[7] This memo does not apply to the Asylum Division's issuance of Form I-863, Notice of Referral to Immigration
Judge, to certain stowaways, crewmembers, and VWP individuals who are requesting asylum or withholding of
removal; reasonable fear screenings and negative credible fear screenings.
[8] See also section 208(c)(3) of the INA describing removal when asylum is terminated.
[9] See the September 12, 2003 internal memo, *Service Center Issuance of Notice to Appear (Form I-862).*

DEF - 00002606

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 3

be processed under existing protocols.  If the VAWA applicant's Form I-485 is denied, this
memorandum is applicable in terms of NTA issuance.[10]

III. Fraud Cases with a Statement of Findings Substantiating Fraud

To protect the integrity of the immigration system and address fraud, USCIS will issue NTAs
when a Statement of Findings (SOF) substantiating fraud is part of the record.[11]  An NTA
will be issued upon final adjudicative action on the petition and/or application or other
appropriate eligibility determination.[12]  NTAs will be issued even if the petition and/or
application is denied for a ground other than fraud, such as lack of prosecution or
abandonment, is terminated based on a withdrawal by the petitioner/applicant, or where an
approval is revoked, so long as an SOF substantiating fraud is in the record.

The NTA should include the charge of fraud or misrepresentation, if possible.  The
appropriate charge(s) will be determined on a case-by-case basis.  Consultation with local
USCIS counsel to determine the appropriate charge(s) is recommended.

IV. Cases to be Referred to ICE for a Decision on NTA Issuance

A. Criminal Cases:  Criminal aliens are a top immigration enforcement priority for the
government.  The following guidance recognizes the prioritization and requires USCIS to
refer criminals to ICE for action or issue an NTA in accordance with this PM.

1. Egregious Public Safety (EPS) Cases

USCIS will refer all EPS cases, including cases with pending N-400s, to ICE
prior to adjudicating the case even if USCIS can deny the petition and/or
application on its merits.  An EPS case is defined by USCIS and ICE as a case
where information indicates the alien is under investigation for, has been arrested
for (without disposition), or has been convicted of, any of the following:
a. Murder, rape, or sexual abuse of a minor as defined in
section 101(a)(43)(A) of the INA.
b. Illicit trafficking in firearms or destructive devices as defined in
section 101(a)(43)(C) of the INA.
c. Offenses relating to explosive materials or firearms as defined in
section 101(a)(43)(E) of the INA.

---

[10] When making determinations, employees must keep in mind USCIS's obligations under 8 USC § 1367, which
prohibits the release of any information, outside of DHS, relating to aliens who are seeking or have been approved
for immigration benefit(s) under the provisions for battered spouses, children, and parents in the Violence Against
Women Act.
[11] Alternatively, ICE will determine whether to issue the NTA if a criminal investigation is conducted, fraud is
found, and the investigation results in criminal prosecution.
[12] This includes, but is not limited to, aliens that were granted asylum status by USCIS, adjusted to Lawful
Permanent Resident status, presented fraud indicators, were subject to the Post Adjustment Eligibility Review
(PAER) process in an Asylum Office, and met the PAER criteria for NTA issuance.

DEF - 00002607

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 4

    d. Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.

    e. An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.

    f. An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.

    g. An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.

    h. An offense relating to alien smuggling as described in section 101(a)(43)(N) of the INA

    i. Human Rights Violators, known or suspected street gang members, or Interpol hits.

    j. Re-entry after an order of exclusion, deportation or removal subsequent to conviction for a felony where a Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

All EPS cases must be referred to ICE using the procedures outlined below. The case will be referred as soon as it is identified. ICE will have an opportunity to decide if, when, and how to issue an NTA and/or detain the alien. USCIS will not issue an NTA in these cases if ICE declines to issue an NTA. If some other basis unrelated to the EPS concern becomes apparent during the course of adjudication, an NTA may be issued in accordance with this memo.

Referral Process

This referral process is utilized in order to give ICE the opportunity to determine the appropriate course of action before USCIS adjudicates the case. A decision to issue an NTA may directly affect the processing of the pending petition and/or application. Upon issuing the Referral to Immigration and Customs Enforcement (RTI), USCIS will suspend adjudication for 60 days, or until ICE provides notification of its action on the case, whichever is earlier.

In response to the RTI –

1. ICE may issue an NTA. ICE's issuance of an NTA allows USCIS to proceed with adjudication (unless jurisdiction transfers to EOIR or the pending application is an N-400), taking into account the basis for the NTA.

2. If ICE does not issue an NTA or otherwise provide notification of its action on the case within 60 days of the RTI, USCIS may resume its adjudication of the case, taking into account the referral grounds.

Confidential

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 5

    a. If the case is approvable, USCIS will consult with ICE prior to adjudication.

    b. Once adjudicated, regardless of the decision, USCIS will notify ICE of the result by sending a copy of the original RTI to ICE with a cover memorandum advising of the outcome of the case.

EPS cases referred to ICE prior to adjudication should be called up and reviewed no later than 60 days after referral.  Normally, the case should be adjudicated by USCIS.  However, USCIS retains discretion to place the case on hold for more than 60 days if ICE requests additional time to conduct an investigation.[13]

<u>Office-Specific Processes</u>

1. Cases to be adjudicated by Service Centers and the National Benefits Center.  Adjudication will be suspended and the case will immediately be sent to the appropriate Service Center Background Check Unit (BCU).  The BCU will refer the case to the ICE Benefit Fraud Unit (BFU) via an RTI.  A hard copy of the RTI will be placed in the A-file and/or receipt file.  The BCU will retain the file unless ICE requests it or the 60 days expire.

2. Cases to be adjudicated by Field Offices.  The Immigration Services Officer (ISO) will suspend adjudication and the case will immediately be referred to the local ICE Special Agent in Charge (SAC) via an RTI.  A hard copy of the RTI will be placed in the A-file and/or receipt file.  A copy of the RTI must also be sent to the ICE BFU.  USCIS will retain the file unless ICE requests the file for their review.

An RTI should include any relevant attachments that USCIS has at the time, such as a copy of the RAP sheet and a copy of the petition and/or application.

2. Non-Egregious Public Safety Criminal Cases

If it appears that the alien is inadmissible or removable for a criminal offense not included on the EPS list, USCIS will complete the adjudication and then refer the case to ICE. This section applies to N-400 cases if the N-400 has been denied on good moral character (GMC) grounds based on the criminal offense.[14]  ICE will decide if, and how, it will institute removal proceedings and whether or not it will detain the alien.  USCIS will not issue an NTA if ICE declines to issue an NTA.

---

[13]  Pursuant to 8 CFR 274a.13(d), USCIS must complete processing of an Employment Authorization Document (EAD) within 90 days or issue an interim EAD card valid up to 240 days.  Officers should be mindful of this regulatory timeframe when cases with a pending Form I-765, Application for Employment Authorization, are referred to ICE.
[14]  See Section V of this memo addressing N-400 cases.

DEF - 00002609

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 6

If some other basis unrelated to the criminal offense becomes apparent upon
return of the case to USCIS, an NTA may be issued in accordance with this
memo.

Referral Process

The referral process is used to allow ICE to make a determination whether to
issue an NTA, based on the totality of circumstances and its priorities.  ICE will
determine the appropriate grounds for removal if an NTA is issued.

Once adjudication is complete, USCIS will send an RTI to ICE.  USCIS will
concurrently transmit a copy of the RTI to ICE Headquarters (HQ) Enforcement
and Removal Operations (ERO) Criminal Alien Division for statistical monitoring
purposes.  If there is any confusion or uncertainty about classifying a case as
egregious versus non-egregious, the USCIS ISO should refer the matter as an EPS
case using the process described above.

The accompanying A-file will be referred to ICE with the RTI, if the file is in the
possession of the referring USCIS office or center.  If the file is not at the
referring USCIS office or center, the RTI should include any relevant attachments
that USCIS has, such as a copy of the RAP sheet and a copy of the petition and/or
application. Where USCIS obtained certified conviction records through normal
processing of the case, USCIS will include the records with the RTI, but it will
not hold the RTI on a completed case solely to obtain disposition records.  Instead
ICE will decide whether, and how, it will obtain such records as part of its
decision to issue an NTA.

Office-Specific Processes

1. Cases adjudicated by Service Centers and the National Benefits Center.
   Once adjudication is completed, if the alien is removable on a criminal
   charge, regardless of the reason for the denial, the file will be referred to
   the BCU. The BCU will refer the case, along with the A-file and/or receipt
   file, to the appropriate ERO Field Office Director (FOD) via an RTI.

2. Cases adjudicated by Field Offices.  Once adjudication is completed, if the
   alien is removable on a criminal charge, regardless of the reason for the
   denial, USCIS will prepare an RTI and refer the case, along with the
   A-file and/or receipt file, to the local ERO FOD.

B. National Security Entry Exit Registration System (NSEERS) Violator Cases

USCIS will refer all cases in which an application is denied based on an NSEERS
violation to ICE for possible NTA issuance.

DEF - 00002610

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 7

V.  Cases Involving Form N-400, Application for Naturalization

The following guidance applies to the issuance of NTAs in cases in which applicants for naturalization are removable.  There are two primary situations in which NTAs may be issued in connection with a filed Form N-400.  If the N-400 case involves fraud (documented in the SOF) the procedures found in this section must be followed, rather than the procedures found in Section III (Fraud Cases with a Statement of Findings Substantiating Fraud).  However, the below guidance does not apply to EPS cases.  EPS cases must be referred in accordance with Section IV.A.1 (Egregious Public Safety Cases) of this memo.  Additionally, the below guidance does not apply to non-EPS criminal cases when the N-400 can be denied on GMC grounds based on the criminal act.  These cases must be denied and referred in accordance with Section IV.A.2 (Non-Egregious Public Safety Criminal Cases).

A.  The first situation occurs when the applicant may be eligible to naturalize but is also deportable under section 237 of the INA.  Examples include applicants convicted of aggravated felonies prior to November 29, 1990, or applicants convicted of deportable offenses after obtaining Lawful Permanent Resident (LPR) status that do not fall within the GMC period.  The ISO should:

1.  Make a written recommendation on the issuance of an NTA through a review of the totality of the circumstances to include factors such as: severity of crime, time since crime committed, other criminal conduct, reformation, immigration history including method of entry, length of presence in the U.S., and prior immigration violations, and contributions to society to include the pursuit of education and military service.[15]

2.  Once the ISO has made a recommendation on whether or not to issue an NTA, the case should be forwarded to the N-400 NTA Review Panel (Review Panel), along with the written recommendation.  A Review Panel must be formed in each Field Office and include a local Supervisory Immigration Services Officer (SISO), a local USCIS Office of Chief Counsel attorney, and a district representative.  An attorney from ICE's local Office of Chief Counsel will be invited to participate and will have an advisory role on the panel.  The Review Panel will make the final determination on NTA issuance.  If consensus cannot be reached by the Review Panel, the case will be elevated to the District Director, through the district representative, for a final decision.

3.  If the Review Panel decides to issue an NTA, place the N-400 on hold until removal proceedings have concluded.  Once proceedings have concluded, or if the Review Panel declines to issue an NTA, adjudicate the case appropriately.

---

[15] Additional factors to be taken under consideration can be found in the June 17, 2011 ICE memo, *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens.*

DEF - 00002611

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 8

B. The second situation occurs when it is determined that the applicant was inadmissible at the time of adjustment or admission to the United States, thus deportable under section 237 of the INA and not eligible for naturalization under section 318 of the INA.[16]  The ISO should:

1. Make a written recommendation on the issuance of an NTA through a review of the totality of the circumstances to include factors such as: willfulness of actions, fraud factors, length of LPR status, criminal history, and officer error at time of adjustment.

2. Once the ISO has made a recommendation on the issuance of the NTA, the case should be forwarded to the Review Panel (see Section V.A.2), along with the written recommendation.  The Review Panel will make the final determination on NTA issuance.  If consensus cannot be reached by the Review Panel, the case will be elevated to the District Director, through the district representative, for a final decision.

3. If the Review Panel decides to issue an NTA, place the N-400 on hold until removal proceedings have concluded.  Once removal proceedings have concluded, adjudicate the case appropriately.  If the Review Panel declines to issue an NTA, deny the case under section 318 of the INA.

VI.   Other Cases

A. An alien may request NTA issuance to renew an application for adjustment or in certain cases with a denied N-400.  The request must be made in writing.[17]

B. An asylum applicant issued an NTA may request NTA issuance for family members not included on the asylum application as dependents for family unification purposes.  The request must be made in writing.[18]

VII.   Exceptions

Exceptions to the guidance in this PM require concurrence from Regional or Center Directors, who will consult with ICE before issuing an NTA.

---

[16] In the Third Circuit *only* (Pennsylvania, New Jersey, Delaware, and the U.S. Virgin Islands), based on the holding in *Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009), if the alien has been an LPR for at least five years, the alien cannot be placed in removal proceedings for fraud or willful misrepresentation of a material fact at time of adjustment, if USCIS could have learned of the fraud or misrepresentation through reasonable diligence before the five year rescission period expired.  Please consult with USCIS counsel if there are questions regarding the applicability of this precedent.
[17] USCIS retains discretion to deny a request.  USCIS should consider ICE actions and determinations when making an NTA issuance decision under this section.
[18] USCIS retains discretion to deny a request.

DEF - 00002612

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 9

VIII. Coordination with ICE

> According to the June 2011 ICE memo regarding the exercise of prosecutorial discretion
> consistent with priorities,[19] USCIS will receive notice before an ICE attorney exercises
> prosecutorial discretion and dismisses, suspends, or closes a case.  The local N-400 NTA
> Review Panel will work with ICE to come to a resolution if USCIS does not agree with
> ICE's use of prosecutorial discretion in a particular case.  If concurrence cannot be reached,
> the case should be elevated to the USCIS Office of Chief Counsel in headquarters.

**Implementation**
Each field office must form an N-400 NTA Review Panel and create a process to complete RTIs
and refer EPS and non-EPS criminal cases to ICE.  A written list enumerating the members of
the Review Panel and a document outlining the process of referral must be sent to the appropriate
district office within 30 days of the issuance of this memorandum.

**Use**
This PM is intended solely for the guidance of USCIS personnel in the performance of their
official duties.  It is not intended to, does not, and may not be relied upon to create any right or
benefit, substantive or procedural, enforceable at law, or by any individual or other party in
removal proceedings, in litigation with the United States, or in any other form or manner.

**Contact Information**
Questions or suggestions regarding this PM should be addressed through appropriate channels to
the Field Operations Directorate, Service Center Operations Directorate, or the Refugee,
Asylum, and International Operations Directorate.

---

[19] *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency
for the Apprehension, Detention, and Removal of Aliens*, signed June 17, 2011.

DEF - 00002613

# <u>Appendix C</u>

## Overview of the Background Check Process



# Appendix D

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS RFE CALL-UPS

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed **[Text]** and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply. Text only highlighted in **YELLOW** and not bracketed is directive in nature and should not be printed in the letter being sent but should be deleted. Please mix call-ups into a single RFE as needed.

NOTE: Please add call-ups **DACA 300 – FOREIGN LANGUAGE DOCUMENT MUST BE ACCOMPANIED BY AN ENGLISH TRANSLATION** and **DACA 301 – YOU MAY SUBMIT PHOTOCOPIES** to any other call-ups below as needed.

### DACA 100 – IDENTITY

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to prove your identity is insufficient (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- Passport;
- Birth certificate accompanied by photo identification:
- Any national identity documents from your country of origin bearing your photo and/or fingerprint;
- Any U.S.-government immigration or other document bearing your name and photograph (e.g., Employment Authorization Documents (EADs), expired visas, driver's licenses, non-driver cards, etc.);
- Any school-issued form of identification with photo;
- Military identification document with photo; or
- Any other document that you believe is relevant.

### DACA 101 – CONTINUOUS RESIDENCE

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you have continuously resided in the United States during the 5-year period immediately before June 15, 2012 and up to the time of filing is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

a. Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business);

   **NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

   Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

DEF - 00004044

b. Rent receipts, utility bills (gas, electric, phone, etc.), receipts or letters from companies showing the dates during which you received service;

c. School records (transcripts, letters, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and periods of school attendance;

d. Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

e. Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;

f. Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.);

g. Money order receipts for money sent into or out of the country; passport entries; birth certificates of children born in the United States; dated bank transactions; correspondence between you and another person or organization; U.S. Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

h. Any other relevant document.

(ISO: Add the appropriate language below to the RFE if any of the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D are blank **OR** if page 3 of the Form I-821D is missing.)

In addition, you did not answer question(s) (ISO should list the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D that were not answered) in Part 2, Arrival/Residence Information, of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to answer these question(s) on the enclosed copy of your original Form I-821D.

Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D with the RFE)

**OR**

In addition, you did not submit page three (3) with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to complete the enclosed page three (3) of the form.

Also enclosed is a copy of your original Form I-821D. Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D and a blank page 3 of the form with the RFE)

**DACA 102 - BRIEF, CASUAL, AND INNOCENT ABSENCE**

To be considered for deferred action as a childhood arrival, you must have continuously resided in the United States during the 5 years period immediately before June 15, 2012 and up to the date you filed your request for deferred action. A brief, casual, and innocent absence from the United States will not interrupt your continuous residence.

An absence will be considered brief, casual, and innocent, if:

    (1) The absence was short and reasonably calculated to accomplish the purpose of the absence;

    (2) The absence was not the result of an order of exclusion, deportation, or removal;

    (3) The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and

    (4) The purpose of the absence from the United States or actions while outside of the United States were not contrary to law.

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for each departure you made from the United States since June 15, 2007 to show that each departure you made from the United States since June 15, 2012 were brief, casual, and innocent is insufficient. (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- Plane or other transportation tickets or itinerary showing the travel dates;
- Passport entries;
- Hotel receipts showing the dates you were abroad;
- Evidence of the purpose of the travel (e.g., you attended a wedding or funeral);
- Advance parole document; or
- Any other evidence that could support a brief, casual, and innocent absence.

**DACA 103 – ARRIVED IN THE UNITED STATES BEFORE AGE 16**

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you came to the United States prior to your 16th birthday is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- Passport with an admission stamp indicating when you entered the United States;
- I-94/I-95/I-94W Arrival/Departure Record;
- Any INS or DHS document stating your date of entry (e.g., Form I-862, Notice to Appear);
- Travel records, such as transportation tickets showing your dates of travel to the United States;
- School records (transcripts, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and the periods of school attendance;
- Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;
- Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.); or
- Any other document that you believe is relevant.

DEF - 00004046

**DACA 104 –IN UNLAWFUL STATUS AS OF JUNE 15, 2012**

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were in unlawful status as of June 15, 2012 is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- I-94/I-95/I-94W Arrival/Departure Record showing the date your authorized stay expired;
- If you have a final order of exclusion, deportation, or removal issued on or before June 15, 2012, submit a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing you into removal proceedings;
- Any other document that you believe is relevant to show that you lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

**DACA 105 – PROOF OF PRESENCE IN THE UNITED STATES ON JUNE 15, 2012**

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were present in the United States on June 15, 2012 is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

a. Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business).

   **NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

   Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

b. Rent receipts, utility bills (gas, electric, phone, etc.), receipts or letters from companies showing the dates during which you received service.

c. School records (transcripts, letters, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and periods of school attendance.

d. Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records).

e. Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization.

f. Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).

g. Money order receipts for money sent into or out of the country; passport entries; birth certificates of children born in the United States; dated bank transactions; correspondence between you and another person or organization; U.S. Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

h. Any other relevant document.

DEF - 00004047

**DACA 106 – CURRENTLY ENROLLED IN SCHOOL**

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, showing that you have been accepted for enrollment or are already attending classes in one of the following is insufficient:

- A public or private elementary, junior high/middle school or high school/secondary school;
- A public or private college or university, or community college;
- A course of study to pass a General Education Development (GED) Certificate exam or other State-authorized exam;
- An educational or career training program (including vocational training);
- Literacy training; or
- An English as a Second Language (ESL) program.

(ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the documents provided by the requestor are incomplete (i.e. no identifying information) or illegible, the ISO should note this in the RFE. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly)

You may still submit evidence, which may include the following: (ISO should delete any of the following that were already provided by the requestor.

- **A public or private elementary, junior high/middle school or high school/secondary school;**
  Such evidence may include, but is not limited to:
  - If accepted for enrollment, but classes have not yet commenced:
    - An acceptance letter on school letterhead from the school's authorized representative. Such acceptance letter is to include the name and address of the school, your grade level, and the date that classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
    - A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, if you have a disability;
    - A current class schedule containing the student's name, the list of courses, and the day and time of each class; or
    - Any other relevant evidence.
  - If already enrolled – Current school registration cards; current transcripts; report cards; progress reports showing the name of the school, the time period or semester covered by the document, and the current grade; or a current IEP showing your process to date.
- **A public or private college or university, or community college;**
  Such evidence may include, but is not limited to:
  - If accepted for enrollment, but classes have not yet commenced:
    - An acceptance package or related material on school letterhead from the school's authorized representative. Such acceptance package or related material is to include the name and address of the school, your grade level or class year, and the date or term when classes are scheduled to commence. In addition, the acceptance package or related material is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
    - A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, if you have a disability;
    - A copy of your current tuition bill;
    - A current class schedule containing your name, the list of courses, and the day and time of each class; or
    - Any other relevant evidence.

DEF - 00004048

- If already enrolled – Current school registration cards; current transcripts; report cards; progress reports showing the name of the school, the time period or semester covered by the document, and the current grade or class year; or a current IEP showing your process to date.

- **A course of study to pass a General Education Development (GED) Certificate exam or other equivalent State-authorized exam;**

  Such evidence is to include a letter from the authorized representative of the program that includes information such as:
  - Your name and date of enrollment;
  - The duration of the program and expected completion date;
  - Whether the course of study is for a regular high school diploma or recognized equivalent under State law or a GED exam or other equivalent State-authorized exam;
  - The program's source and amount of funding; and
  - The program's authorized representative's contact information.

- **An educational or career training program (including vocational training);**

  Such evidence may include, but is not limited to:
  - If accepted for enrollment, but classes have not yet commenced:
    - An acceptance letter on school letterhead from the school registrar/authorized school representative. Such acceptance letter is to include the name and address of the program, a brief description of the program, the duration of the program, and state when the classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for the program;
    - A copy of your current year registration (intake form/enrollment form); or
    - Any other relevant documentation.
  - If already attending classes– Current transcripts, report cards, or progress reports showing the name of the school, the time period or semester covered by the document, and if relevant, the current educational or grade level.

- **Literacy training; or**

  Such evidence is to include a letter from the literary program administrator or authorized representative providing information such as:
  - Your name;
  - The date of your enrollment;
  - The duration of the literacy program and the expected completion date; and
  - The program administrator or authorized representative's contact information.

- **An English as a Second Language (ESL) program.**

  Such evidence is to include a letter from the ESL program administrator or authorized representative. This letter is to include the following:
  - Your name;
  - The date of your enrollment;
  - The duration of the ESL program and the expected completion date;
  - The program administrator or authorized representative's contact information.

## DACA 106A – EVIDENCE OF ACCEPTANCE BUT NO EVIDENCE OF REGISTERING FOR CLASSES:

You have provided an acceptance letter or other related material indicating that you have been accepted at [ISO should list the name of the private elementary/junior high/middle school/high school/secondary school or public or private college/university/community college]. However, you did not include evidence that you have enrolled in that school. Therefore, you are requested to submit such evidence which is to include, but is not limited to paid tuition bills or evidence that you have registered for class at that school.

## DACA 106B – LITERACY PROGRAM'S NON-PROFIT STATUS

If the literacy program in which you are enrolled has non-profit status, please provide evidence of such status. Evidence of the literacy program's non-profit status is to include a copy of a valid letter from the Internal Revenue Service confirming exemption from taxation under section 501(c)(3) of the Internal Revenue Service Code of 1986, as amended, or equivalent section of prior code.

DEF - 00004049

**DACA 106C –PUBLIC FUNDING (GED; Educational or Career Training Program (Including Vocational Training); ESL)**

If the [ISO should insert GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; or English as a Second Language] in which you are enrolled is funded in whole or in part by public funds (Federal, State, county or municipal), you are requested to submit a letter from the [ISO should insert GED program administrator/authorized representative; school registrar/authorized school representative if requestor is enrolled in Career Training Program (Including Vocational Training); literacy program administrator/authorized representative; or ESL program administrator/authorized representative] providing basic details about the funding, such as the source(s) of the funding.

**DACA 106D – PUBLIC FUNDING – (Literacy Program)**

If the literacy program in which you are enrolled is not funded in whole or in part by public funds (Federal, State, county, or municipal) or not administered by a non-profit entity you are requested to submit a letter from the program administrator or authorized representative providing basic details about the funding, such as the amount and the source(s) of the funding.

**DACA 106E – DEMONSTRATED EFFECTIVENESS (GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; ESL)**

(ISO SHOULD SELECT THE CORRECT RFE PARAGRAPH BELOW DEPENDING UPON THE PROGRAM IN WHICH THE REQUESTOR IS ENROLLED)

Your record shows that the **GED/Equivalency program,** in which you are enrolled, is not publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information from the GED program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in assisting students in obtaining a regular high school diploma, GED, or a recognized equivalent certificate, or passing a GED or recognized equivalent exam;
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

Your record shows that the **educational or career training program (including vocational training), in** which you are enrolled, is not publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information, with supporting documentation, if available, from the school registrar/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in placing students in employment, job training, or post-secondary education; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

Your record shows that the **literacy program** in which you are enrolled, is not publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information from the literary program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in placing students in post-secondary education, job training programs, or employment; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

DEF - 00004050

Your record shows that the **English as a Second Language (ESL)** program in which you are enrolled is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information from the ESL program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The length of the program's existence;
- The program's track record in assisting students in obtaining placement in postsecondary schools, job training programs, or employment; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

## DACA 106F– GRADUATED FROM SCHOOL

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you graduated from school is insufficient (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the documents provided by the requestor are incomplete (i.e. no identifying information) or illegible, the ISO should note this in the RFE. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- A diploma;
- Transcripts showing the date of graduation; or
- A GED certificate, certificate of completion, certificate of attendance, or alternate award from a public or private high school or secondary school.

Documentation sufficient to demonstrate that you obtained a GED includes, but is not limited to, evidence you passed a GED exam, or other comparable State-authorized exam, and, as a result, you received the recognized equivalent of a regular high school diploma under State law.

## DACA 107G – MEDICAL LEAVE

You indicate in your filing that you are currently on medical leave from school. Therefore, you are requested to submit evidence of your medical leave and indicate the date you expect to return to school. Evidence of your medical leave may include, but is not limited to, an explanation from a medical doctor on official letterhead stating the diagnosis and prognosis, and how long your treatment is expected to last.

## DACA 107 - MILITARY

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- Form DD-214, Certificate of Release or Discharge from Active Duty;
- NGB Form 22, National Guard Report of Separation and Record of Service;
- Military personnel records; or
- Military health records.

## DACA 108- REMOVAL PROCEEDINGS

Submit documents that you have been issued an order of exclusion, deportation or removal. Such documentation could include copies of:

- Any removal, deportation, or exclusion order issued by an Immigration Judge;
- Final decision from the Board of Immigration Appeals (BIA); or
- Final decision from a U.S. Court of Appeals in your case.

DEF - 00004051

## APPLICATION SUPPORT CENTER (ASC) RELATED

### DACA 130 – SCHEDULE ASC APPOINTMENT

Your request cannot be processed until you have appeared at an Application Support Center (ASC) for the collection of a digital photograph, signature, and fingerprint(s). Our records indicate that you have not yet appeared at an ASC for this purpose. Please schedule an appointment at the ASC nearest you by calling the USCIS National Customer Service Center at 1-800-375-5283 (TTY 1-800-767-1833). You also can find the location of the ASC nearest you on the USCIS web site at www.USCIS.gov.

Once you have scheduled an appointment, or if you have a scheduled appointment, please return this notice to the address below with the appointment information.

Date of Appointment: _____

Location of Appointment: _____

### DACA 131– RESCHEDULE ASC APPOINTMENT (TECHNICAL DIFFICULTIES)

On [**DATE**], USCIS asked you to schedule an appointment at an Application Support Center (ASC) for the collection of a digital photograph, signature and fingerprint(s). In response to that request, you indicated that you already appeared at an ASC as required. However, due to technical problems, your previously-acquired biometrics from the ASC cannot be used.

USCIS will mail a separate notice to you containing information for a new appointment for biometrics capture at the ASC nearest you and listing identity documents that you must bring with you to your ASC appointment. Once you receive that notice, additional information regarding the location of the ASC can be found on the USCIS web site at www.USCIS.gov. Please bring this notice with you to your appointment.

Once you have provided your biometrics to the ASC, respond to this request with evidence of your attendance of the ASC appointment. Such evidence typically consists of a copy of your appointment notice, bearing a stamp from the ASC technician. Along with the evidence of your appointment, please include all other evidence requested in this notice.

We sincerely regret any inconvenience this has caused you.

## NAME, DATE OF BIRTH DISCREPANCY

### DACA 140 – DATE OF BIRTH DISCREPANCY

USCIS records indicate that you were born on [**DATE**]. You indicated on your request for consideration of deferred action for childhood arrivals that you were born on [**DATE**]. Submit documentary evidence to establish your true date of birth. Such evidence may include your birth certificate and/or passport. If you submit a copy of your birth certificate, you must submit copies of the front and back (if there is information on the back).

### DACA 142 – NAME CHANGE/DISCREPANCY

USCIS records and/or evidence you submitted indicate that your name is [**NAME**]. You indicated on your request for consideration of deferred action for childhood arrivals that your name is [**NAME**]. Submit documentary evidence to establish your true name. Such evidence may include a birth certificate, adoption records, marriage certificate, passport, or government documentation showing that you have officially changed your name.

### DACA143 – SUBMIT EVIDENCE OF NAME CHANGE

Submit proof of your name change. Such proof would normally be a marriage certificate, termination of marriage (divorce or annulment decree), adoption decree, or court order.

DEF - 00004052

## FINGERPRINTING / CRIMINALITY

### DACA 150 – 2 UNCLASSIFIABLE PRINTS – SUBMIT LOCAL POLICE CLEARANCES

To date, you have been fingerprinted twice and USCIS has been unable to get a required clearance for you because both sets of fingerprints were rejected as unclassifiable by the Federal Bureau of Investigation. Instead of a fingerprint clearance, you must submit a local police clearance certificate for each jurisdiction (city, town, county, or municipality) in which you have lived for six months or more within the past five years.

**Please note**: The police clearance certificate(s) must be researched by name and date of birth. You must supply the law enforcement agency with all aliases you have used, including maiden name, if applicable. Fingerprint cards are not acceptable evidence of a police clearance certificate.

If any record indicates that you have been arrested, you must provide documentation of each of the following:

a.  The final disposition (your sentence, probation, dismissal, etc.) of **every** charge against you. The charge and disposition must be specifically identified (not merely numeric citations or codes).

b.  If you were convicted of **any** charge, you must also provide evidence showing whether the charge for which you were convicted was classified as a **felony or misdemeanor**. You may submit a copy of the pertinent statute, sentencing guidelines, and/or statement from the court clerk or police department for this purpose.

Along with the above information, you must also answer the following questions. You should respond on this notice and sign your name where it asks for your signature. If more space is needed, you may respond to the following questions on separate sheet(s) of paper. Please sign every separate sheet of paper.

1)  Have you ever been arrested or detained by a law enforcement officer? If yes, please explain.

   Answer: _____

   _____

2)  Have you had your fingerprints taken for any reason by a law enforcement officer for a criminal offense? If yes, please explain.

   Answer: _____

   _____

3)  Have you been issued a ticket or been taken into custody by a law enforcement officer? If yes, please explain.

   Answer: _____

   _____

4)  Have you ever been ordered by a court to: pay a fine; serve a probationary sentence; perform community service; make restitution; or have your wages garnished (e.g., for failure to make child support payments)? If yes, please explain.

   Answer: _____

   _____

DEF - 00004053

5) Have you ever received an expungement, parole, pardon, or successfully completed a diversion or rehabilitation program? If yes, please explain.

Answer: _____

_____

I certify, under penalties of perjury under the laws of the United States of America, that the foregoing is true and correct. Furthermore, I authorize the release from my records that USCIS needs to determine my eligibility for deferred action of childhood arrivals.

Signature of Requestor: _____

## DACA 151– SUBMIT JUDGMENT AND CONVICTION DOCUMENTS

A criminal history check has been conducted based upon the fingerprints you provided at the Application Support Center. Your criminal history check has revealed that you were arrested on [**DATE**], in [**JURISDICTION**] and charged with [**CHARGES**].
**(WHERE APPROPRIATE, SERVICE CENTER MAY ALSO NEED TO INCLUDE THE NAME UNDER WHICH THE ARREST TOOK PLACE IF DIFFERENT FROM NAME BEING USED BY REQUESTOR ON FORM I-821D. IF THERE ARE MULTIPLE CHARGES, YOU MAY BULLET EACH CHARGE.)**

You must provide certified judgment and conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above. The certified judgment and conviction documents must address the following:

a. The final disposition (e.g., your sentence, probation, dismissal, etc.) of every charge against you. The charge and disposition must be specifically identified (not just numeric citations or codes).

b. If you were convicted, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony, misdemeanor or other type of offense. Please submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

# I-821D PART 3 INCOMPLETE

## DACA 155 – FORM I-821D INCOMPLETE

You did not answer question(s) (ISO should list the question numbers in Part 3 of the Form I-821D that the requestor did not answer) in Part 3 of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to answer these question(s) on the enclosed copy of your original Form I-821D.

As stated in the instructions on Part 3 of the Form I-821D, if any of the questions apply to you, please describe the circumstances and include a full explanation in Part 7 of the Form I-821D. Re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D with the RFE)

DEF - 00004054

## I-821D PART 3, CRIMINAL, NATIONAL SECURITY
## AND PUBLIC SAFETY INFORMATION
## AFFIRMATIVE RESPONSES
## POSSIBLE INELIGIBILITY ISSUES

**DACA 160 – ANSWERED "YES" to QUESTION 1 AND 2 IN PART 3 –DOCUMENTS NEEDED AND EXPLANATION**

On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question(s) in Part 3, Criminal, National Security and Public Safety Information: **DELETE THOSE THAT DON'T APPLY**

> **1. Have you been arrested for, charged with, or convicted of a felony or misdemeanor in the United States?**

> **2. Have you been arrested for, charged with, or convicted of any crime in any country other than the United States?**

You did not provide a full explanation in Part 7 of your Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D. Therefore, please provide a full explanation describing the circumstances. **DELETE IF AN EXPLANATION WAS PROVIDED**

You must provide certified judgment and conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above. The certified judgment and conviction documents must address the following:

> a. The final disposition (e.g., your sentence, probation, dismissal, etc.) of every charge against you. The charge and disposition must be specifically identified (not just numeric citations or codes).

> b. If you were convicted, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony, misdemeanor, or some other type of offense. You may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

**DACA 161 – ANSWERED "YES" TO QUESTION 3 IN PART 3 – SUBMIT EXPLANATION**

On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question in Part 3, Criminal, National Security and Public Safety Information:

> **3. Have you ever engaged in or do you continue to engage in or plan to engage in terrorist activities?**

You did not provide a full explanation in Part 7 of your Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D.

Please provide a full and complete explanation of the terrorist activities you have ever engaged in, continue to engage in, or plan to engage in. Your explanation should include:

> Whether other people were engaged in terrorist activities with you;
> The names of the other people with whom you engaged in terrorists activities;
> The role you played in terrorist activities;
> The role that others played in terrorist activities;
> Whether you planned or actually carried out the terrorist activities;
> Whether you engaged in, continued to engage, or planned to engage in terrorist activities in the United States or abroad; and
> Describe the type of terrorist activities you engaged in, continue to engage in, or plan to engage in.

DEF - 00004055

**DACA 162 – ANSWERED "YES" TO QUESTION 4 IN PART 3 – SUBMIT EXPLANATION**
On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question in Part 3, Criminal, National Security and Public Safety Information:

> **4. Are you now or have you ever been a member of a gang?**

You did not provide a full explanation in Part 7 of the Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D.

Please provide a full and complete explanation of your gang membership, including:

> When you joined the gang(s);
> How long you were a member of the gang(s);
> The name of the gang(s); and
> The criminal activities you participated in with the gang(s).

**DACA163 – ANSWERED "YES" TO QUESTIONS 5a. 5b, 5c, AND 5d IN PART 3– SUBMIT EXPLANATION**
On your Request for Deferred Action for Childhood Arrivals (Form I-821D) you checked "Yes" to the following question(s) in Part 3, Criminal, National Security and Public Safety Information: **DELETE THOSE THAT DON'T APPLY**

> **5. Have you EVER engaged in, ordered, incited, assisted, or otherwise participated in any of the following:**
> **a. acts involving torture, genocide, or human trafficking?**
> **b. killing any person?**
> **c. severely injuring a person?**
> **d. any kind of sexual contact or relations with any person who was being forced or threatened?**

You did not provide a full explanation in Part 7 of the Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D.

Please provide a full and complete explanation describing your participation in activities involving torture, genocide, human trafficking, killing any person, severely injuring any person, or any sexual contact or relations with any person who was being forced or threatened.

# I-821D PART 3, CRIMINAL, NATIONAL SECURITY AND PUBLIC SAFETY INFORMATION

**DACA 170– ANSWERED "NO" TO QUESTIONS 1 AND 2 IN PART 3– USCIS FOUND CLEAR CHARGES OR OTHER DEROGATORY INFORMATION, SUBMIT JUDGMENT AND CONVICTION DOCUMENTS**
A background check has been conducted based upon the fingerprints you provided at the Application Support Center.  Your background check revealed that you were arrested on [**DATE**], in [**JURISDICTION**] and charged with [**CHARGES**].
**(WHERE APPROPRIATE, YOU MAY ALSO NEED TO INCLUDE THE NAME UNDER WHICH THE ARREST TOOK PLACE IF DIFFERENT FROM NAME BEING USED BY THE REQUESTOR ON FORM I-821D.  IF THERE ARE MULTIPLE CHARGES, YOU MAY BULLET EACH CHARGE.)**

You must provide certified judgment and/or conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above.  The certified judgment and conviction documents must address the following:

> a.   The final disposition (your sentence, probation, dismissal, etc.) of every charge against you.
>       The charge and disposition must be specifically identified (not just numeric citations or codes).

DEF - 00004056

b. If you were convicted, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony or misdemeanor. You may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

## DACA 171– ANSWERED "NO" TO QUESTIONS 1 AND 2 IN PART 3 - CRIMINAL ACTIVITY UNCLEAR TO USCIS, SUBMIT JUDGMENT AND CONVICTION DOCUMENTS

Based on a review of your case, it appears that you have some type of criminal record/interaction with law enforcement authorities. It appears that on [**DATE**] the following occurred:

[**PROVIDE EXPLANATION OF FINDINGS, TO INCLUDE NAME OF POLICE DEPT. IF APPLICABLE, CHARGES IF APPLICABLE, ETC. NOTE:**      LE
          LE

**(WHERE APPROPRIATE, YOU MAY ALSO NEED TO INCLUDE THE NAME UNDER WHICH THE ARREST TOOK PLACE IF DIFFERENT FROM NAME BEING USED BY THE REQUESTOR ON FORM I-821D. IF THERE ARE MULTIPLE INTERACTIONS, YOU MAY BULLET EACH INTERACTION.)**

Submit a statement explaining the results of this interaction with law enforcement authorities. You must provide certified judgment and conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above. The certified judgment and conviction documents must address the following:

a. The final disposition (your sentence, probation, dismissal, etc.) of every charge against you. The charge and disposition must be specifically identified (not just numeric citations or codes).

b. If you were convicted of any charge, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony or misdemeanor. You may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

## DACA 172– ANSWERED "NO" TO QUESTIONS 3, 4, 5a. 5b, 5c, AND 5d IN PART 3 – USCIS DISCOVERED UNCLEAR INFORMATION, SUBMIT EXPLANATION

Based on a review of your case, the following was discovered: **DELETE THOSE THAT DON'T APPLY**

**3. you engaged in or do you continue to engage or plan to engage in terrorist activities?**

**4. you are now or have been a member of gang?**

**5. you engaged in, ordered, incited, assisted, or otherwise participated in any of the following:**
**a. acts involving torture, genocide, or human trafficking?**
**b. killing any person?**
**c. severely injuring a person?**
**d. any kind of sexual contact or relations with any person who was being forced or threatened?**

[**PROVIDE EXPLANATION OF FINDINGS. THIS CAN INCLUDE WHERE THE INFORMATION WAS FOUND IF IT IS KNOWLEDGE THAT CAN BE SHARED WITH THE REQUESTOR. NOTE: DO NOT INFORM THE REQUESTOR WHERE THE INFORMATION CAME FROM SYSTEMS THAT ARE NOT OUR RECORDS (EX. IBIS).**]

DEF - 00004057

Therefore, you must submit a statement explaining and/or refuting the information/circumstances found in USCIS records. Please note that if you refute the above information, and USCIS later receives information that the above does relate to you, USCIS may terminate deferred action and you may be barred from other immigration benefits.

## FORM I-765

### DACA 180 – FAILURE TO SUBMIT OR COMPLETE FORM I-765WS
USCIS is unable to complete your Form I-765, Application for Employment Authorization because you failed to submit or complete the Form I-765WS. Please complete the worksheet and return it to the address provided within the specified time.

### DACA 190 – SUBMIT PASSPORT PHOTOS
Please submit **two (2)** passport-style **color** photo(s) of [**NAME**] taken within 30 days of the date of this notice, which conform(s) to the specifications below. Using a pencil or felt pen, lightly print name (and Alien Registration Number, if known) on the back of each photograph.

Please do not staple through any part of the photo(s). Enclose the photo(s) in a plastic or paper envelope and staple the envelope to this notice when returning it to this office.

Passport-style photos must be 2 inches by 2 inches:
- Frame subject with full face, front view, eyes open.
- Make sure photo presents full head from top of hair to bottom of chin; height of head should measure 1 inch to 1 3/8 inch (25 mm to 35 mm).
- Center head within frame.
- Make sure eye level is between 1 1/8 inch and 1 3/8 inch (28 mm and 35 mm) from bottom of photo.
- Photograph subject against a plain white or off-white background.
- Position subject and lighting so that there are no distracting shadows on the face or background.
- Encourage subject to have a natural expression.
- Include headpieces if worn daily for religious purposes; they should not obscure or cast shadows on the eyes or any other part of the face.

For more information on photo requirements, please see the Department of State website at: http://www.travel.state.gov/passport/pptphotos/index.html, or contact the USCIS National Customer Service Center at 1-800-375-5283.

## FORM 131

### DACA 200 – PROOF OF DACA
To be considered for advance parole you must submit evidence to establish that you have been granted deferred action for childhood arrivals. Submit a copy of the approval notice issued by USCIS for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.

### DACA 201 – PROOF OF EDUCATIONAL NEED
In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individuals granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes. You claim that you need to travel abroad for education purposes. Examples of travel abroad for education purposes include study abroad programs, school-sponsored trips abroad, or travel necessary to conduct academic research.

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for education purposes is insufficient. (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support

DEF - 00004058

his/her need to travel abroad for educational purposes, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- A letter from the educational institution, or from an employee of the institution acting in his or her official capacity, describing the purpose of the travel, or documentation showing enrollment in a specific program or class coupled with documentary evidence showing that you will benefit from, or are required to travel for the specific program or class; or

**NOTE**: Travel during an academic year unrelated to academics (i.e., a vacation) is insufficient to qualify as an educational purpose.

(ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events)

## DACA 202 – PROOF OF HUMANITARIAN NEED

In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individuals granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes.  You claim that you need to travel abroad for humanitarian reasons.  Examples of travel abroad for humanitarian reasons include medical reasons, to visit a family member, or to attend funeral services for a family member.

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for humanitarian purposes is insufficient. (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support his/her need to travel abroad for humanitarian, modify RFE call up accordingly).  You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- An explanation from a medical doctor on official letterhead stating the diagnosis and prognosis, and how long the treatment is expected to last;
- Information on the reasons why you cannot obtain treatment in the United States;
- An explanation from a medical doctor on official letterhead stating the diagnosis and prognosis of the family member's condition; or
- A death certificate or newspaper obituary of the family member or other document evidencing the death of the family member.

(ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events)

## DACA 203 – PROOF OF EMPLOYMENT NEED

In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individual granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes. You claim that you need to travel abroad for employment purposes.  Examples of travel abroad for employment purposes include: pursuit of a position in the United States with a foreign employer;
an overseas assignment, interview, conference, or training; a meeting with overseas clients or others with whom you interact professionally; or a trip to cultivate business or sales overseas  or any other overseas trip taken in furtherance of the applicant's professional responsibilities.

DEF - 00004059

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for employment purposes is insufficient.  (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support his/her need to travel abroad for employment purposes, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- A letter on official letterhead from your employer describing the need for your travel; or
- A document showing a specific employment need, such as a conference program, that also shows your participation.

(ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events)

## **ASSORTED OTHERS**

### **DACA 300 – FOREIGN LANGUAGE DOCUMENT MUST BE ACCOMPANIED BY AN ENGLISH TRANSLATION**

If you submit a document in any language other than English, it must be **completely** translated word-for-word.  The translator must certify that the translation is accurate and that he or she is competent to translate.  Note:  You must submit the requested foreign language document along with the translation.

### **DACA 301– YOU MAY SUBMIT PHOTOCOPIES**

You may submit either the original documents or legible photocopies of the originals, including copies of the front and back of each document.  If you choose to submit original documents, they will not be returned to you. [**NOT FOR USE WHEN USCIS IS REQUESTING ORIGINAL DOCUMENTS**.]

### **DACA 302– AFFIDAVITS**

Affidavits can support two of the DACA guidelines:
- Brief, casual, and innocent departures during the five years of required continuous presence in the United States: and
- Any minor gap in the five year continuous residence requirement.

In support of your DACA request, you submitted affidavits, but you did not indicate that:
- primary and secondary evidence cannot be obtained; and
- what effort you undertook to obtain that evidence.

Therefore, you are requested to provide the following:
- A written statement from the appropriate issuing authority attesting to the fact that no record exists or can be located, or that the record sought was part of some segment of records which were lost or destroyed; or
- Evidence (such as an affidavit) "that repeated good faith attempts were made to obtain the required document or record."

DEF - 00004060

**DACA 303 – SIGNATURE ON FORM I-821D**

As stated in the Form I-821D instructions, each request must be properly signed. Part 4 of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals is not properly signed because (ISO should indicate why the form was incorrectly signed. For example, the preparer signed Part 4 instead of Part 5 of the form or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 4) Therefore, your original Form I-821D is enclosed so that you can sign and date Part 4, 2.a. and 2.b. of your Form I-821D. Please note that a photocopy of a signed request or a typewritten name in place of a signature is not acceptable. Please attach your properly signed Form I-821D to this Request for Evidence and return to the address listed on this notice.

(Include a copy of the requestor's Form I-821D with the RFE)

**DACA 304 – Form I-821D Missing Page(s)**

You did not submit page (ISO should list the missing page number(s)) with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to complete the enclosed page (ISO should list the missing page number(s)) of the form.

Also enclosed is a copy of your original Form I-821D. Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D and the blank missing page(s) of the form with the RFE)

## ACKNOWLEDGEMENT OF WITHDRAWAL

**DACA Acknowledgement of Withdrawal**

On [DATE] you filed a request for deferred action under the Secretary of Homeland Security's June 15, 2012, directive concerning Deferred Action for Childhood Arrivals. The complete DACA package included Form I-821D, Consideration of Deferred Action for Childhood Arrivals, a Form I-765, Application for Employment Authorization, and a Form I-765WS, Form I-765 Worksheet, together with the required filing fee ("DACA Package").

On [DATE], you withdrew your DACA Package. This withdrawal applies equally to the Form I-821D, the Form I-765, and the Form I-765WS.

USCIS hereby acknowledges your withdrawal of your DACA Package. Your withdrawal terminates each separate request that is part of your DACA Package. USCIS will not take any further action on your Form I-821D or the related Form I-765. The filing fee is not refundable.

This acknowledgement of your withdrawal of your DACA Package is not a "decision" that is subject to administrative appeal or to the filing of a motion to reopen/reconsider. However, if you later believe you are eligible and wish to request Consideration of Deferred Action for Childhood Arrivals, you may file a new Form I-821D concurrently with a new Form I-765 and Form I-765WS, with a new fee.

DEF - 00004061

# Appendix E

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS
# NOIDs

NOTE 1: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

NOTE 2: Each NOID call-up is labeled as follows:

- INITIAL DACA ONLY or;
- RENEWAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the NOID call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

## DACA 400A -NOTICE OF INTENT TO DENY – DEPARTURE NOT BCI – UNDER VOLUNTARY DEPARTURE OR FINAL EXCLUSION, DEPORTATION, OR REMOVAL ORDER (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007. A brief, casual, and innocent departure from the United States does not meaningfully disrupt the period of continuous residence. A departure is deemed to be brief, casual, and innocent if it occurred before August 15, 2012 and:

(1) It was short and reasonably calculated to accomplish the purpose of the absence;
(2) It was not the result of an order of exclusion, deportation, or removal;
(3) It was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
(4) Its purpose or the actions taken while outside of the United States were not contrary to law.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date; this date should be before 8/15/2012]*. It also appears that, at the time of your departure,
*[INSERT WHICHEVER IS APPROPRIATE: you departed under an order of voluntary departure; you departed under an administrative grant of voluntary departure prior to the commencement of removal proceedings; your departure was the result of an order of exclusion, deportation, or removal (including an order of voluntary departure that converted automatically to a*

Page 1  5/27/2015

DEF - 00004948

*final order of exclusion, deportation or removal; your departure was not short and reasonably calculated to accomplish the purpose of the absence; your departure was for a purpose or the actions taken while outside of the United States were contrary to law ).]* Because such a departure is not brief, casual, or innocent, you have not established that you have resided continuously in the United States since at least June 15, 2007.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

### DACA 400B -NOTICE OF INTENT TO DENY – DISQUALIFYING INTERNATIONAL TRAVEL ON OR AFTER 8/15/2012 AND BEFORE USCIS HAS MADE A DACA DETERMINATION (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007. Continuous residence is disrupted if you travelled outside the United States on or after August 15, 2012 and before USCIS has determined whether to defer action in your case.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12].* Because your departure occurred on or after August 15, 2012, but before USCIS had determined whether to defer action in your case, you have not established that you may be considered for deferred action under this process.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

### DACA 400C -NOTICE OF INTENT TO DENY – DISQUALIFYING INTERNATIONAL TRAVEL ON OR AFTER 8/15/2012 WITHOUT ADVANCE PAROLE AND BEFORE USCIS HAS MADE A DACA RENEWAL DETERMINATION (RENEWAL DACA ONLY)

USCIS has reviewed your renewal request for consideration of deferred action for childhood arrivals.

In order to be considered for a renewal of deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since the date you submitted your most recent, *approved* request for DACA until the date of filing your Renewal request. Continuous residence is disrupted if you travelled outside the United States on or after August 15, 2012 without advance parole.

According to the information provided with your renewal request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12].* Your departure occurred on or after August 15, 2012. USCIS

Page 2  5/27/2015

DEF - 00004949

records do not show that you were issued advance parole for the period of time you were outside the United States. [*ISO should list what evidence was submitted or provide the dates in which travel was not covered under the approved advance parole, and briefly state why the evidence is insufficient.*] Therefore, you have not established that you may be considered for a renewal of deferred action under this process.

Accordingly, USCIS intends to deny your request for consideration of a renewal of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your renewal request for consideration of deferred action for childhood arrivals.

## DACA 401 NOTICE OF INTENT TO DENY – DRIVING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

Driving under the influence of alcohol or drugs constitutes a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

Page 3   5/27/2015

## DACA 402 NOTICE OF INTENT TO DENY – DOMESTIC VIOLENCE (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

An offense of domestic violence constitutes a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 403 NOTICE OF INTENT TO DENY – BURGLARY (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

Page 4   5/27/2015

DEF - 00004951

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

Burglary constitutes a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,
- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 404 NOTICE OF INTENT TO DENY –NO ENTRY BEFORE 16 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you came to the United States before reaching your 16th birthday.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially entered the United States when you were [*insert age*] years old. On [*insert date Form I-821D received*], you submitted Form I-821D, Consideration of Deferred Action for Childhood Arrivals. You indicated on your Form I-821D that you were born on [*insert date of birth*], and that your initial entry into the United States was on [*insert date of entry*]. Your date of birth is supported by your [*identify the document (e.g. birth certificate, passport, etc.) that establishes the requestor's DOB*], and you did not submit evidence that you entered the United States before reaching the age of 16.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to

Confidential

DEF - 00004952

submit additional information, evidence, or arguments overcoming the grounds for the intended
denial. Failure to respond to this notice of intent to deny will result in the denial of your request for
consideration of deferred action for childhood arrivals.

## DACA 405 NOTICE OF INTENT TO DENY –STUDENT IN LAWFUL STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you
were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals,
the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful
immigration status on or before June 15, 2012, or any lawful immigration status or parole that you
obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and based on information obtained during
routine systems checks, your current F-1 nonimmigrant status is active in Student & Exchange Visitor
Information System (SEVIS). *[Identify other facts e.g., Employment Authorization Card validity
date]*. Based on these facts, USCIS has determined that you were not in an unlawful status on June
15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood
arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to
submit additional information, evidence, or arguments overcoming the grounds for the intended
denial. Failure to respond to this notice of intent to deny will result in the denial of your request for
consideration of deferred action for childhood arrivals.

## DACA 406 NOTICE OF INTENT TO DENY –ARRIVED AFTER JUNE 15, 2007 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you
have continuously resided in the United States since June 15, 2007.

According to the information you provided with your request, and/or based on information obtained
during routine systems checks, it appears that you initially arrived in the United States on or about
*[insert date of initial entry]*.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood
arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to
submit additional information, evidence, or arguments overcoming the grounds for the intended
denial. Failure to respond to this notice of intent to deny will result in the denial of your request for
consideration of deferred action for childhood arrivals.

Page 6  5/27/2015

 DEF - 00004953

## DACA 407 NOTICE OF INTENT TO DENY – NOT IN SCHOOL (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

On your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, you indicated that you are currently in school. However, according to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you are not currently enrolled in school. [*Insert specific information; e.g., official transcripts showing enrollment status as "Removed for Lack of Attendance" or school enrollment history listing requestor as a "No Show".*]

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 408 NOTICE OF INTENT TO DENY – NONIMMIGRANT STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you entered the United States on [*Date*] as [*insert nonimmigrant classification. For example,* "an E-2 Nonimmigrant Treaty Investor or as the spouse or child of a Nonimmigrant Treaty Investor"]. It appears that your lawful immigration status [*insert "is" or "was" depending if still in status*] valid until [*Date*], and therefore had not expired before June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

Confidential

DEF - 00004954

**DACA 409 NOTICE OF INTENT TO DENY – TEMPORARY PROTECTED STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you had Temporary Protected Status (TPS) on June 15, 2012. USCIS has no record that your status as a TPS beneficiary was withdrawn or terminated before June 15, 2012, therefore it appears you were not in unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 410 NOTICE OF INTENT TO DENY – MULTIPLE MISDEMEANORS (BOTH INITIAL AND RENEWAL DACA)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.
According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have multiple criminal convictions.

The court dispositions that you submitted indicate that you were convicted on:

- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]

You have been convicted of three or more non-significant misdemeanors. For the purposes of the DACA process, a "non-significant misdemeanor" is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

- Is one for which the individual was sentenced to time in custody of 90 days or less.

Page 8   5/27/2015

Confidential

DEF - 00004955

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 411 NOTICE OF INTENT TO DENY – FELONY CONVICTION (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

[*Explain why the offense is a felony under federal law. For example,* "Possession of drug paraphernalia is classified as a Class 6 felony under Arizona law, with a maximum term of imprisonment of 1.5 years. *See* A.R.S. §§ 13-702(D), 13-3415."]

For the purposes of the DACA process, a felony is a federal, state, or local criminal offense for which the maximum term of imprisonment authorized is for a period of more than one year. See www.uscis.gov/childhoodarrivals. Therefore, the offense is a felony for purposes of deferred action for childhood arrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

Page 9  5/27/2015

DEF - 00004956

## DACA 412 NOTICE OF INTENT TO DENY – JUVENILE DELINQUENCY (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you warrant the favorable exercise of prosecutorial discretion.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a record of juvenile delinquency.

The record indicates that you committed the following offense(s) as a minor.

• On [*date offense committed*], at the age of [*age at time of offense*] you committed [*charge*], in violation of [*statute*]. Your case was adjudicated as a juvenile delinquency at [*juvenile court, city/state*].

While a finding of juvenile delinquency is not considered a criminal conviction for purposes of deferred action, given the seriousness of your offense, USCIS has determined that you do not merit a favorable exercise of discretion. Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 413 NOTICE OF INTENT TO DENY – SIGNIFICANT MISDEMEANOR (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have [a criminal conviction/multiple criminal convictions].

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

Your conviction(s) for [*Insert crime*] constitute(s) a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five

Page 10   5/27/2015

days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,
- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 414 NOTICE OF INTENT TO DENY – SUSPECTED FRAUD IN MEETING THE DACA GUIDELINES (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, among other guidelines, you must also demonstrate that you **[INSERT WHICHEVER IS APPROPRIATE FROM THE LIST BELOW; MORE THAN ONE GUIDELINE MAY BE INSERTED]**

*(1) were under the age of 31 as of June 15, 2012;*
*(2) came to the United States before reaching your 16th birthday;*
*(3) have been residing continuously in the United States since June 15, 2007, up to the present time.;*
*(4) were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;*
*(5) are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;*

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you **[INSERT ALL APPROPRIATE GUIDELINES FROM THE LIST BELOW]** is insufficient.

*(1) were under the age of 31 as of June 15, 2012;*
*(2) came to the United States and established residence before reaching your 16th birthday;*
*(3) have been residing continuously in the United States during the 5-year period immediately before June 15, 2012, and up to the time of filing;*
*(4) were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;*

Page 11   5/27/2015

DEF - 00004958

*(5)  Select one of the following:*
- *are currently in school;*
- *have graduated or obtained a certificate of completion from high school;*
- *have obtained a General Educational Development (GED) certificate;*
- *are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States*

USCIS finds that the evidence you provided to demonstrate **[INSERT ALL APPROPRIATE CRITERIA FROM THE LIST BELOW]** is not credible.

*(1)  that you were under the age of 31 as of June 15, 2012;*
*(2)  that you came to the United States and established residence before reaching your 16th birthday;*
*(3)  continuous residency for the year(s) XXXX*
*(4)  that you were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;*
*(5)  Select one of the following:*
- *that you are currently in school;*
- *that you have graduated or obtained a certificate of completion from high school;*
- *that you have obtained a General Educational Development (GED) certificate;*
- *that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States*

*[ISO should insert the appropriate facts of the case to include the documentation in question, any irregularities discovered, and finally how this information was vetted and determined to be factually inaccurate or lacking in credibility (e.g. USCIS contacted the company/owner of the document to verify the correct information, etc.)]*

Therefore, USCIS finds that the record lacks sufficient evidence to demonstrate
**[INSERT WHICHEVER GUIDELINE(S) IS/ARE APPROPRIATE FROM THE LIST BELOW]**

*(1)  that you were under the age of 31 as of June 15, 2012.;*
*(2)  that you came to the United States before reaching your 16th birthday.;*
*(3)  your presence in the United States during the year(s) XXXX;*
*(4)  that you were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;*
*(5)  Select one of the following:*
- *that you are currently in school;*
- *that you have graduated or obtained a certificate of completion from high school;*
- *that you have obtained a General Educational Development (GED) certificate;*
- *that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States*

You may still submit evidence to address these irregularities and to establish that the **[INSERT DOCUMENTATION IN QUESTION** *(e.g. utility bill, rent receipt, diploma, etc.* is/are *)]* legitimate.

Confidential

DEF - 00004959

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You have thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

In addition, USCIS reminds you that it is a violation of federal law (18 U.S.C. sec. 1001) if you knowingly and willingly submit materially false information in support of your request for DACA, and you may be fined, imprisoned up to five years, or both. In addition, you may be placed in removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

Page 13   5/27/2015

DEF - 00004960

# **APPENDIX F**

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS DENIAL CALL-UPS

NOTE: Each denial call-up is labeled as follows:

- INITIAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the denial call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

### **DACA 500 -NOTICE OF DENIAL –AGE (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

At the time of filing your request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

### **DACA 502 -NOTICE OF DENIAL – ENTRY AT 16 (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you came to the United States before you turned sixteen (16) years old and established residence at that time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Page 1   12/1/2014

DEF - 00004978

**DACA 503 -NOTICE OF DENIAL – UNDER 31 ON JUNE 15, 2012 (INITIAL DACA)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were under age 31 on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**DACA 504 -NOTICE OF DENIAL – CONTINUOUS RESIDENCE (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you have continuously resided in the Unites States since June 15, 2007, until the date of filing your request.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**DACA 505 -NOTICE OF DENIAL – BCI (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

During your period of residence in the United States, you had one or more absences that did not qualify as "brief, casual, and innocent."

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

DEF - 00004979

## DACA 506 -NOTICE OF DENIAL – PHYSICAL PRESENCE ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were present in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 507 -NOTICE OF DENIAL – NO LAWFUL IMMIGRATION STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were in an unlawful immigration status in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 508 -NOTICE OF DENIAL –EDUCATIONAL GUIDELINE (INITIAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that, at the time of filing your request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an

Confidential

DEF - 00004980

act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 509 -NOTICE OF DENIAL – FELONY OR SIGNIFICANT MISDEMEANOR (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have been convicted of a felony or a significant misdemeanor.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 510 -NOTICE OF DENIAL – THREE OR MORE MISDEMEANORS (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have been convicted of three or more misdemeanors.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 511 -NOTICE OF DENIAL – DISCRETIONARY (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you warrant a favorable exercise of prosecutorial discretion.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an

Confidential

DEF - 00004981

act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 512 -NOTICE OF DENIAL – NON-PAYMENT OF FEES (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 513 -NOTICE OF DENIAL – NO SHOW (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 514 -NOTICE OF DENIAL – NO RESPONSE TO RFE OR NOID (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

Page 5  12/1/2014

DEF - 00004982

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 515 -NOTICE OF DENIAL – ABANDONMENT (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 516 -NOTICE OF DENIAL – DISQUALIFYING INTERNATIONAL TRAVEL – TRAVEL WITHOUT ADVANCE PAROLE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You departed the United States on or after August 15, 2012 without advance parole.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 517 -NOTICE OF DENIAL – DISQUALIFYING INTERNATIONAL TRAVEL – REMAINED OUTSIDE OF THE US BEYOND THE VALIDITY PERIOD OF ADVANCE PAROLE DOCUMENT (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

Page 6   12/1/2014

DEF - 00004983

USCIS records show you remained outside of the United States beyond the validity period of your advance parole document.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 518 -NOTICE OF DENIAL – CONTINUOUS RESIDENCE SINCE THE MOST RECENT DACA REQUEST (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you have continuously resided in the United States since you submitted your most recent request for DACA that was approved.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 519 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR - AGE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. At the time of filing your initial/most recent request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

DEF - 00004984

## DACA 520 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – ENTRY AT 16 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.   You did not establish that you came to the United States before you turned sixteen (16) years old and established residence at that time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 521 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – UNDER 31 ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.   You did not establish that you were under age 31 on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 522 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – CONTINUOUS RESIDENCE SINCE JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.   You did not establish that you continuously resided in the United States since June 15, 2007, until the date of filing your initial/most recent request.

Confidential

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 523 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR –BCI (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. During your period of residence in the United States, you had one or more absences before August 15, 2012 that did not qualify as "brief, casual, and innocent."

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 524 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – PHYSICAL PRESENCE ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were present in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

DEF - 00004986

## DACA 525 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – NO LAWFUL IMMIGRATION STATUS ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 526 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – EDUCATIONAL GUIDELINE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that, at the time of filing your initial request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

DEF - 00004987

## DACA 527 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – FELONY OR SIGNIFICANT MISDEMEANOR (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012. You had been convicted of a felony or a significant misdemeanor.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 528 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – THREE OR MORE MISDEMEANORS (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You had been convicted of three or more misdemeanors.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 529 -NOTICE OF DENIAL – REQUESTOR IS DECEASED (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated the Form I-821D, Consideration of Deferred Action for Childhood Arrivals, filed by [*insert name*] ("the requestor") on [*insert date*].

On [*insert date*], USCIS received notification that the requestor is now deceased. Please accept our deepest sympathies for your loss.

Confidential

DEF - 00004988

USCIS is hereby denying the requestor's Form I-821D. Accordingly, the requestor's Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 530 -NOTICE OF DENIAL – ACQUIRED LAWFUL STATUS AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that Form [*insert USCIS form number and title*] that [Select the appropriate phrase: you filed / was filed on your behalf] was approved on [*insert date*]. Your status as [*insert status acquired after 6/16/2012*] is valid since [*insert period of validity*].

In view of the fact that you are currently in a lawful immigration status, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 531 - NOTICE OF DENIAL – ACQUIRED PAROLE AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that the [*insert name of Office/DHS Component*] approved your request for parole on [*insert date*]. Your parole authorization is valid through [*insert period of validity*].

In view of the fact that your parole request was approved, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

DEF - 00004989

### DACA 532 -NOTICE OF DENIAL – ICE ALREADY DEFERRED ACTION (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date ICE deferred action*], U.S. Immigration and Customs Enforcement (ICE) deferred action in your case as a childhood arrival until [*insert date deferred action expires*].  ICE notified you that action was deferred on your case and instructed you to request employment authorization from USCIS.  On [*insert date I-821D filed*], you submitted Form I-821D to USCIS, together with Form I-765, Application for Employment Authorization.

It was not necessary for you to file Form I-821D with USCIS because ICE has already deferred action on your case.  Therefore, USCIS has denied your Form I-821D.  The denial of your Form I-821D does not affect the determination that ICE made on your case.

If granted, you will receive your Employment Authorization Document separately by mail.

### DACA 533 –NOTICE OF DENIAL - USCIS ALREADY DEFERRED ACTION UNDER DACA (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX).  On [*insert date*], USCIS determined that you meet the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*].  USCIS notified you that action was deferred on your case and mailed to you an Employment Authorization Document valid until [*insert date*].

On [*insert filing date for pending case*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX).  The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

### DACA 534 -NOTICE OF DENIAL – INSUFFICIENT RFE RESPONSE FOR CRIMINAL RECORDS (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that you have been arrested or detained by law enforcement officials.  On [*insert date RFE issued*], USCIS sent you a notice requesting you to submit certified court dispositions for all of your arrests, including an arrest(s) specifically identified on the request.  In response to the request

Page 13   12/1/2014

for evidence, you submitted [*indicate what was submitted*].  However, the response was insufficient because [*indicate why it was insufficient. For example: "the document was not certified by the court"*].

USCIS was unable to conduct a sufficient background check on you because you did not provide the requested certified court dispositions.  Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 535 -NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION UNDER ANOTHER (NON-DACA) PROGRAM, FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date*], you submitted a [*insert USCIS form number and title*] (Receipt number XXXXX) to USCIS for deferred action under another non-DACA program [*insert the program name, ex. VAWA*].  On [*insert date*], USCIS approved your [*insert USCIS form number*].  On [*insert notice date*], USCIS notified you that action was deferred on your case under [*insert the program name, ex. VAWA*] until [*insert date deferred action expires*].

On [*insert date*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case.

## DACA 536 -NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION (SEEKING REPLACEMENT EAD) (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX).  On [*insert date*], USCIS determined that you met the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*]. USCIS also notified you that action was deferred on your case and mailed to you an Employment Authorization Document (EAD) valid until [*insert date*].

On [*insert filing date for pending case*], you submitted another Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  You indicated on the

Confidential

DEF - 00004991

instant Form I-765 that you are seeking to replace a lost Employment Authorization Document. It was not necessary to file a new Form I-821D. You only needed to file the Form I-765.

In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your newly submitted Form I-821D (Receipt number XXXXX). The denial of the instant Form I-821D does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

If your Form I-765 (Receipt number XXXXX) is granted, you will receive your replacement Employment Authorization Document separately by mail.

## DACA 537 -NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (INITIAL DACA ONLY)

On [*insert date*] you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit Form I-765WS [*insert other requested evidence if applicable*] in support of your Form I-765.

Title 8, Code of Federal Regulations (8 C.F.R.), Section 103.2(b)(13), states in part:

> If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, . . . .

As of the date of this notice, there is no record that you submitted the requested Form I-765WS. Accordingly, your application for employment authorization is denied as abandoned pursuant to 8 C.F.R § 103.2(b)(13). Please note that this decision will not affect the approval of your Form I-821D.

A denial due to abandonment may not be appealed. However, there are limited motion rights. In accordance with 8 C.F.R. § 103.5, you may, if you wish, file a motion to reopen an application or petition denied due to abandonment with evidence that the decision was in error because:

- The requested evidence was not material to the issue of eligibility;
- The required initial evidence was submitted with the application or petition, or the request for initial evidence or additional information or appearance was complied with during the allotted period; or
- The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

Confidential

DEF - 00004992

A motion to reopen must be filed on Form I-290B, Notice of Appeal or Motion, with the appropriate fee within 33 days from the date of this decision. For more information about filing motions, fees, forms, and filing locations, please visit the USCIS website at www.uscis.gov.

## DACA 538 -NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (BOTH INITIAL AND RENEWAL DACA)

On [*insert I-821D filing date*], you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date I-821D was approved*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date the I-765 RFE was sent*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit [*insert Form I-765WS and/or list other requested evidence*] in support of your Form I-765.

USCIS received your response to the request on [*insert date the RFE response was received*]. Your response did not include [*insert the missing evidence, e.g. Form I-765WS, signature on the I-765, completed I-765WS*] as we requested.

Title 8, Code of Federal Regulations, Section 274a.12(c)(14) provides the basis for granting employment authorization to individuals whose removal from the United States has been deferred:

> An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment

SELECT A PARAGRAPH (A) OR (B) BELOW, AS APPLICABLE:

A.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765WS:

Because you failed to provide [*insert the missing evidence; e.g., Form I-765WS; completed I-765WS*]**,** you have not established an economic necessity for employment. Accordingly, your application for employment authorization is denied. Please note that this decision will not affect the approval of your Form I-821D.

[*Proceed to the closing paragraph.*]

### *OR*

B.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765:

Because your I-765 was not properly signed, you have failed to comply with 8 C.F.R. 103.2(a)(2) and your application is hereby denied. Please note that this decision will not affect the approval of your Form I-821D.

Page 16   12/1/2014

[*CLOSING PARAGRAPH*]

This denial may not be appealed. However, you may file a motion to reopen or reconsider the decision. Your motion to reopen or reconsider must be filed on Form I-290B, Notice of Appeal or Motion within 30 days of the date of this notice (33 days if this notice is received by mail). You must mail your Form I-290B, along with the appropriate filing fee and other documentation in support of the motion, to the correct address. Do not mail your completed Form I-290B directly to this Service Center.

To obtain the filing locations, the required filing fee amount, and more information about the Form I-290B filing requirements, please refer to the USCIS website at **http://www.uscis.gov/forms**. You may also contact the National Customer Service Center (NCSC) at 800-375-5283.

This decision does not prevent you from filing a new application in the future.

### DACA 539 -NOTICE OF DENIAL – THE REQUESTOR WAS IN IMMIGRATION DETENTION AT THE TIME OF FILING FORM I-821D AND REMAINS IN IMMIGRATION DETENTION (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

DEF - 00004994

## DACA 540 -NOTICE OF DENIAL – SIGNATURE ON FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS records indicate that:

On [*insert date*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization, (Receipt number XXXXX).  As stated in the Form I-821D instructions, each request must be properly signed.  Part [*insert the corresponding part: Part 4 (old Form I-821D) or Part 5 (current Form I-821D*] is not properly signed (*indicate why the form was incorrectly signed.  For example, the preparer signed Part 4 /5 instead of Part 5/6 or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 4/5*).

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) sent you a Request for Evidence (RFE) because your original Form I-821D was not properly signed. USCIS enclosed a copy of your original Form I-821D so that you could sign and date [*insert the corresponding part: Part 4.2.a. and 2.b./ Part 5.2.a. and 2.b.*] of your Form I-821D.

As of the date of this notice, there is no record that you submitted the requested signed and dated Form I-821D.  In view of this fact, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter.  Accordingly, your Form I-765 has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 541 - NOTICE OF DENIAL – LPR STATUS ON JUNE 15, 2012

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

[*Summarize the requestor's immigration history, including how and when the requestor obtained LPR status and that such status had not changed as of 6/15/2012*].

Accordingly, you have not established that you were in an unlawful immigration status in the United States on June 15, 2012. Therefore, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

[*If the requestor is still in LPR status, please add:* If you are not in possession of your Form I-551, Permanent Resident Card, you may consider filing Form I-90, Application to Replace Permanent Resident Card, to obtain a new card. For information about obtaining a Form I-90, visit the USCIS website at www.uscis.gov or call toll-free (800) 870-3676 to request the form by mail.]

Confidential

DEF - 00004995

# Appendix G

**SRMT Call Ups Pertaining to Denied Form I-821D,
Consideration of Deferred Action for Childhood Arrivals**

**Administrative Errors**

1. **Denial of Form I-821D on the grounds that the requestor did not come to the United States prior to reaching his/her 16th birthday.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

2. **Denial of Form I-821D on the grounds that the requestor was under the age of 15 at the time of filing, but not in removal proceedings.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

DEF - 00002617

3.  **Denial of Form I-821D on the grounds that the requestor was not under the age of 31 on June 15, 2012.**

    *Final response if denial was correct:*
    Use SRMT Denial Template

    *Final response if denial was incorrect:*
    Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

    We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

4.  **Denial of Form I-821D on the grounds that the requestor was not in an unlawful immigration status as of June 15, 2012.**

    *Final response if denial was correct:*
    Use SRMT Denial Template

    *Final response if denial was incorrect:*
    Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

    We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

5.  **Denial of Form I-821D on the grounds that the requestor was not physically present in the United States on June 15, 2012.**

    *Final response if denial was correct:*
    Use SRMT Denial Template

    *Final response if denial was incorrect:*
    Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

    We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment is approved, you will receive an Employment Authorization Document.

DEF - 00002618

6. **Denial of Form I-821D on the grounds that the requestor did not appear to have biometrics collected at a USCIS ASC**

*SRMT DACA 1 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to appear for the collection of biometrics at an Application Support Center. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

7. **Denial of Form I-821D on the grounds that the requestor did not request to have his/her biometrics appointment at a USCIS ASC rescheduled prior to the scheduled date**

*SRMT DACA 2 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to appear for the collection of biometrics at an Application Support Center nor did you request to have your biometrics appointment rescheduled prior to the date you were scheduled to appear. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records. Your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment have resumed processing. Once adjudication is complete, you will receive a decision.

DEF - 00002619

8. **Denial of Form I-821D on the grounds that the requestor failed to pay the filing and biometric fees for the Form I-765**

*SRMT DACA 3 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to pay the fee for your concurrently filed Form I-765, Application for Employment Authorization, and/or your biometrics fee because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time. We have reopened your case on a service motion and will review your file.  You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

9. **Denial of Form I-821D due to abandonment and the requestor claims he/she did respond to RFE within the prescribed time**

*SRMT DACA 4 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to respond to a Request for Evidence within the time prescribed.   We reopened your case on a service motion and will review your file.  You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

10. **Denial of Form I-821D due to abandonment – USCIS mailed the RFE to the wrong address and the requestor submitted a change of address prior to the issuance of RFE**.

*SRMT DACA 5 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to respond to a Request for Evidence (RFE) within the time prescribed. In your request to review the denial of your Form I-821D, you indicated that the RFE was mailed to the wrong address and you had submitted a Change of Address prior to the RFE issuance.  We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

DEF - 00002621

# Appendix H

## SRMT Denial Template

We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and the accompanying Form I-765, Application for Employment Authorization.  Your request was based on your belief that the denial involved one or more of the administrative errors, as indicated below:

☐ You claimed that your DACA request was denied on the grounds that you did not come to the United States prior to reaching your 16th birthday and that the evidence you submitted at the time of filing shows that you did, in fact, arrive before the required age.

☐ You claimed that your DACA request was denied on the grounds that you were under the age of 15 at the time of filing, but not in removal proceedings, or did not have a final removal order or a voluntary departure order, and that the evidence submitted at the time of filing shows that you were, in fact, in removal proceedings or had a final removal order or a voluntary departure order.

☐ You claimed that your DACA request was denied on the grounds that you were over the age of 31 on June 15, 2012 and that the evidence you submitted at the time of filing shows that you were, in fact, under age 31 on June 15, 2012.

☐ You claimed that your DACA request was denied on the grounds that you were in a lawful immigration status as of June 15, 2012, and that the evidence you submitted at the time of filing shows that you were, in fact, in an unlawful status on June 15, 2012.

☐ You claimed that your DACA request was denied on the grounds that you were not physically present in the United States on June 15, 2012, up through the date of filing, and that the evidence you submitted at the time of filing establishes that you were, in fact, present.

☐ You claimed that your DACA request was denied because you did not appear for biometrics collection at an Application Support Center, but you did appear.

☐ You claimed that your DACA request was denied because you did not appear for biometrics collection at an Application Support Center, but you asked for the appointment to be rescheduled before the originally scheduled date.

☐ You claimed that your DACA request was denied because you did not pay the required fees, but you have evidence that you paid (including evidence that you remitted payment to rectify any Nonsufficient Funds notice on the initial payment).

☐ You claimed that your DACA request was denied because you did not respond to a request for evidence (RFE) within the prescribed time (includes a request to submit additional evidence or appear at an ASC for biometrics collection following a prior failure to appear) and that you did, in fact respond timely.

☐ You claimed that your DACA request was denied because USCIS mailed the RFE to the wrong address even though you filed a change of address request before the RFE was issued.

Upon review of your request, the evidence in the file at the time of filing, and upon performing all relevant records and systems checks, it has been determined that your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and the accompanying Form I-765, Application for Employment Authorization, were properly denied and that the denial did not involve an administrative error.

DEF - 00002622

# Appendix I

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

### DACA 600 – Notice of Intent to Terminate

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States. A review of your records reveals that [ISO should thoroughly explain why the removal was deferred under DACA in error or that it has come to the attention of USCIS that the individual committed fraud in seeking deferral of removal under DACA. If the decision to issue a Notice of Intent to Terminate is based on fraud, it should be supported by a fully documented SOF and any other relevant documents/information.]

Based on the information outlined above, USCIS is notifying you of its intent to terminate your deferred action for childhood arrivals. A final decision to terminate your deferred action for childhood arrivals will not be made for 33 days. During that time, you may submit any evidence that you feel will overcome the grounds for termination. If your response is not received within the allotted time or if your response to this notice does not overcome the grounds for termination, USCIS will terminate your deferred action for childhood arrivals. If your deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of your deferred action will be terminated for cause.

### DACA 601 – Termination Notice [After NOIT]

On [Date], you were notified that it was the intent of USCIS to terminate your deferred action for childhood arrivals. In response to the Intent to Terminate, you [ISO should summarize the individual's response to the Intent to Terminate or indicate that the individual did not respond within the allotted time].

Your response does not overcome the grounds for termination. [If the individual's response does not overcome the reason for the termination as outlined in the Notice of Intent to Terminate, the ISO should explain why]. Therefore, your deferred action for childhood arrivals is terminated as of the date of this notice. In addition, your employment authorization is terminated for cause as of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately. Continued use of your EAD after authorization for employment has been terminated is considered fraudulent use of your EAD. Such fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

> [Insert Service Center Address]

Confidential

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 602 – Notice of Action [NTA Issuance]

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

On [Date NTA served on alien], [U.S. Citizenship & Immigration Services (USCIS)/Immigration & Customs Enforcement (ICE)] issued you a Notice to Appear (NTA).

USCIS is notifying you that your deferred action as a childhood arrival and your employment authorization terminated automatically as of the date your NTA was issued. You must return your Employment Authorization Document (EAD) to USCIS immediately. Continued use of your EAD after authorization for employment has been terminated is considered fraudulent use of your EAD. Such fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

[Insert Service Center
Address]

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this notice of action may not be filed on behalf of the requestor.

## DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated]

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

After consulting with U.S. Immigration & Customs Enforcement, USCIS has determined that exercising prosecutorial discretion in your case is not consistent with the Department of Homeland Security's enforcement priorities. Therefore, your deferred action for childhood arrivals is terminated as of the date of this notice. In addition, your employment authorization is terminated for cause as of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately. Continued use of your EAD after authorization for employment has been terminated is considered fraudulent use of your EAD. Such fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

Confidential

[Insert Service Center
Address]

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## **DACA 604 – Notice of Action [Travel outside U.S. without Advance Parole]**

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

DHS records show on [Date the DACA recipient departed the U.S.] you departed the United States without advance parole. Travel outside the United States without first receiving advance parole results in automatic termination of deferred action.

USCIS is notifying you that your deferred action as a childhood arrival and your employment authorization terminated automatically as of the date of your departure from the United States. You must return your Employment Authorization Document (EAD) to USCIS immediately. Continued use of your EAD after authorization for employment has been terminated is considered fraudulent use of your EAD. Such fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

[Insert Service Center
Address]

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this notice of action may not be filed on behalf of the requestor.

Page 3  6/2/2014

Confidential

# APPENDIX J

## NOTICE OF INTENT TO DENY POLICY

1. NOIDs for the following guideline must be sent to HQSCOPSDACA for SPB review, but no longer require local counsel review:
   - Under 31 on 6/15/12

2. Local OCC Legal Review: NOIDS for the following guidelines must be sent to HQSCOPSDACA for SPB review, but no longer require local counsel review **unless** the Center encounters a novel, complex, or sensitive case:
   - CR Since 06/15/2007
   - Physically Present on 6/15/2012
   - Out of Status as of 06/15/2012

3. NOIDs for the following guidelines require local counsel review *prior* to being sent to HQSCOPSDACA for SPB review:
   - Education
   - Criminal, Public Safety & National Security
   - Fraud Concerns
   - All other NOIDs not categorized in Appendix J

4. NOIDs issued on the following templates *do not require* local counsel or SPB review prior to issuance. The SPB will institute a random sampling of casework as a quality assurance measure in the near future on the following templates:
   - Appendix E (NOID Templates) Published 4/4/2013
   - *Appendix E when combined with language in Appendix D (RFE Templates) Published 4/4/2013

   **\*Note:** When an Appendix E NOID is combined with language in Appendix D and it creates a complicated NOID decision, Centers should issue the NOID decision without the Appendix D language. Once the response to the NOID is received and if the reason for the intended denial is overcome, Centers may issue an RFE with the Appendix D call-ups to establish the requestor's eligibility.

Confidential

DEF - 00001637

# APPENDIX K

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS DENIAL CALL-UPS

NOTE: Each denial call-up is labeled as follows:

- INITIAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the denial call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

## DACA 500 -NOTICE OF DENIAL – REQUESTOR IS DECEASED (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated the Form I-821D, Consideration of Deferred Action for Childhood Arrivals, filed by [*insert name*] ("the requestor") on [*insert date*].

On [*insert date*], USCIS received notification that the requestor is now deceased. Please accept our deepest sympathies for your loss.

USCIS is hereby denying the requestor's Form I-821D. Accordingly, the requestor's Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 501A -NOTICE OF DENIAL – ACQUIRED LAWFUL STATUS AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that Form [*insert USCIS form number and title*] that [you filed / was filed on your behalf] was approved on [insert date]. Your status as [*insert status acquired after 6/16/2012*] is valid since [*insert period of validity*].

In view of the fact that you are currently in a lawful immigration status, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Page 1  11/10/2014

DEF - 00001425

## DACA 501B - NOTICE OF DENIAL – ACQUIRED PAROLE AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that the [*insert name of Office/DHS Component*] approved your request for parole on [*insert date*]. Your parole authorization is valid through [*insert period of validity*].

In view of the fact that your parole request was approved, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 502A -NOTICE OF DENIAL – ICE ALREADY DEFERRED ACTION (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date ICE deferred action*], U.S. Immigration and Customs Enforcement (ICE) deferred action in your case as a childhood arrival until [*insert date deferred action expires*]. ICE notified you that action was deferred on your case and instructed you to request employment authorization from USCIS. On [*insert date I-821D filed*], you submitted Form I-821D to USCIS, together with Form I-765, Application for Employment Authorization.

It was not necessary for you to file Form I-821D with USCIS because ICE has already deferred action on your case. Therefore, USCIS has denied your Form I-821D. The denial of your Form I-821D does not affect the determination that ICE made on your case.

If granted, you will receive your Employment Authorization Document separately by mail.

## DACA 502B – NOTICE OF DENIAL - USCIS ALREADY DEFERRED ACTION UNDER DACA (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment

Confidential

DEF - 00001426

Authorization (Receipt number XXXXX).  On [*insert date*], USCIS determined that you meet the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*].  USCIS notified you that action was deferred on your case and mailed to you an Employment Authorization Document valid until [*insert date*].

On [*insert filing date for pending case*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX).  The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

## DACA 503 -NOTICE OF DENIAL – INSUFFICIENT RFE RESPONSE FOR CRIMINAL RECORDS (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821, Consideration of Deferred Action for Childhood Arrivals.  Based on a review of your case, it appears that the following occurred:

The record reveals that you have been arrested or detained by law enforcement officials.  On [*insert date RFE issued*], USCIS sent you a notice requesting you to submit certified court dispositions for all of your arrests, including an arrest(s) specifically identified on the request.  In response to the request for evidence, you submitted [*indicate what was submitted*].  However, the response was insufficient because [*indicate why it was insufficient. For example: "the document was not certified by the court"*].

USCIS was unable to conduct a sufficient background check on you because you did not provide the requested certified court dispositions.  Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 504 NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION  UNDER ANOTHER (NON-DACA) PROGRAM, FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.  Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date*], you submitted a [*insert USCIS form number and title*] (Receipt number XXXXX) to USCIS for deferred action under another non-DACA program [*insert the program name, ex. VAWA*].  On [*insert date*], USCIS approved your [*insert USCIS form number*].  On [*insert notice date*], USCIS notified you that action was deferred on your case under [insert the program name, ex. VAWA] until [insert date deferred action expires].

On [*insert date*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX)

Page 3   11/10/2014

and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case.

## DACA 505 NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION (SEEKING REPLACEMENT EAD) (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX). On [*insert date*], USCIS determined that you met the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*]. USCIS also notified you that action was deferred on your case and mailed to you an Employment Authorization Document (EAD) valid until [*insert date*].

On [*insert filing date for pending case*], you submitted another Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX). You indicated on the instant Form I-765 that you are seeking to replace a lost Employment Authorization Document. It was not necessary to file a new Form I-821D. You only needed to file the Form I-765.

In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your newly submitted Form I-821D (Receipt number XXXXX). The denial of the instant Form I-821D does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

If your Form I-765 (Receipt number XXXXX) is granted, you will receive your replacement Employment Authorization Document separately by mail.

## DACA 506 NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (INITIAL DACA ONLY)

On [*insert date*] you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit Form I-765WS [*insert other requested evidence if applicable*] in support of your Form I-765.

Title 8, Code of Federal Regulations (8 C.F.R.), Section 103.2(b)(13), states in part:

> If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, . . . .

Page 4   11/10/2014

DEF - 00001428

As of the date of this notice, there is no record that you submitted the requested Form I-765WS. Accordingly, your application for employment authorization is denied as abandoned pursuant to 8 C.F.R § 103.2(b)(13). Please note that this decision will not affect the approval of your Form I-821D.

A denial due to abandonment may not be appealed. However, there are limited motion rights. In accordance with 8 C.F.R. § 103.5, you may, if you wish, file a motion to reopen an application or petition denied due to abandonment with evidence that the decision was in error because:

- The requested evidence was not material to the issue of eligibility;
- The required initial evidence was submitted with the application or petition, or the request for initial evidence or additional information or appearance was complied with during the allotted period; or
- The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

A motion to reopen must be filed on Form I-290B, Notice of Appeal or Motion, with the appropriate fee within 33 days from the date of this decision. For more information about filing motions, fees, forms, and filing locations, please visit the USCIS website at www.uscis.gov.

## DACA 507 NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (BOTH INITIAL AND RENEWAL DACA)

On [*insert I-821D filing date*], you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date I-821D was approved*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date the I-765 RFE was sent*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit [*insert Form I-765WS and/or list other requested evidence*] in support of your Form I-765.

USCIS received your response to the request on [*insert date the RFE response was received*]. Your response did not include [*insert the missing evidence, e.g. Form I-765WS, signature on the I-765, completed I-765WS*] as we requested.

Title 8, Code of Federal Regulations, Section 274a.12(c)(14) provides the basis for granting employment authorization to individuals whose removal from the United States has been deferred:

> An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment

Confidential

DEF - 00001429

SELECT A PARAGRAPH (A) OR (B) BELOW, AS APPLICABLE:

A.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765WS:

Because you failed to provide [*insert the missing evidence; e.g., Form I-765WS; completed I-765WS*]**,** you have not established an economic necessity for employment. Accordingly, your application for employment authorization is denied. Please note that this decision will not affect the approval of your Form I-821D.

[*Proceed to the closing paragraph.*]

### *OR*

B.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765:

Because your I-765 was not properly signed, you have failed to comply with 8 CFR 103.2(a)(2) and your application is hereby denied. Please note that this decision will not affect the approval of your Form I-821D.

[*CLOSING PARAGRAPH*]

This denial may not be appealed. However, you may file a motion to reopen or reconsider the decision. Your motion to reopen or reconsider must be filed on Form I-290B, Notice of Appeal or Motion within 30 days of the date of this notice (33 days if this notice is received by mail). You must mail your Form I-290B, along with the appropriate filing fee and other documentation in support of the motion, to the correct address. Do not mail your completed Form I-290B directly to this Service Center.

To obtain the filing locations, the required filing fee amount, and more information about the Form I-290B filing requirements, please refer to the USCIS website at **http://www.uscis.gov/forms**. You may also contact the National Customer Service Center (NCSC) at 800-375-5283.

This decision does not prevent you from filing a new application in the future.

DACA 508 – NOTICE OF DENIAL – SIGNATURE ON FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS records indicate that:

On [*insert date*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization, (Receipt number XXXXX). As stated in the Form I-821D instructions, each request must be properly signed. Part [*insert the corresponding part: Part 4 (old Form I-821D) or Part 5 (current Form I-821D)*] is not properly signed (*indicate why the form was incorrectly signed. For example, the preparer signed Part 4/5 instead of Part 5/6 or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 4/5*).

Confidential                    DEF - 00001430

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) sent you a Request for Evidence (RFE) because your original Form I-821D was not properly signed. USCIS enclosed a copy of your original Form I-821D so that you could sign and date [*insert the corresponding part: Part 4.2.a. and 2.b./ Part 5.2.a. and 2.b.*] of your Form I-821D.

As of the date of this notice, there is no record that you submitted the requested signed and dated Form I-821D. In view of this fact, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765 has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

DEF - 00001431

## NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION FOR
## CHILDHOOD ARRIVALS, FORM I-821D (RENEWAL REQUEST)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. For the reason(s) indicated below, USCIS has, in its unreviewable discretion, determined that it will not renew deferred action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

☐ You departed the United States on or after August 15, 2012 without advance parole.

☐ USCIS records show you remained outside of the United States beyond the validity period of your advance parole document.

☐ You have not established that you have continuously resided in the United States since you submitted your most recent request for DACA that was approved.

☐ You have been convicted of a felony or a significant misdemeanor.

☐ You have been convicted of three or more misdemeanors.

☐ You have not established that you warrant a favorable exercise of prosecutorial discretion.

☐ You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

☐ USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

☐ You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

☐ USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

☐ In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. [Select appropriate checkbox]

  ☐ At the time of filing your initial/most recent request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

  ☐ You did not establish that you came to the United States before you turned sixteen (16) years old and established residence at that time.

  ☐ You did not establish that you were under age 31 on June 15, 2012.

  ☐ You did not establish that you continuously resided in the United States since June 15, 2007, until the date of filing your initial/most recent request.

  ☐ During your period of residence in the United States, you had one or more absences before August 15, 2012 that did not qualify as "brief, casual, and innocent."

7/22/2014

DEF - 00001641

You did not establish that you were present in the United States on June 15, 2012.

☐   You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012.

☐   You did not establish that, at the time of filing your initial request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

☐   You had been convicted of a felony or a significant misdemeanor.

☐   You had been convicted of three or more misdemeanors.

7/22/2014

Confidential

DEF - 00001642

# DEF-INTERV.

# EX. 154

# Frequently Asked Questions

### *FAQs updated September 14, 2012*

Over the past three years, this Administration has undertaken an unprecedented effort to transform the immigration enforcement system into one that focuses on public safety, border security and the integrity of the immigration system. As the Department of Homeland Security (DHS) continues to focus its enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety, including individuals convicted of crimes with particular emphasis on violent criminals, felons, and repeat offenders, DHS will exercise prosecutorial discretion as appropriate to ensure that enforcement resources are not expended on low priority cases, such as individuals who came to the United States as children and meet other key guidelines. Individuals who demonstrate that they meet the guidelines below may request consideration of deferred action for childhood arrivals for a period of two years, subject to renewal, and may be eligible for employment authorization.

You may request consideration of deferred action for childhood arrivals if you:

1. Were under the age of 31 as of June 15, 2012;

2. Came to the United States before reaching your 16th birthday;

3. Have continuously resided in the United States since June 15, 2007, up to the present time;

4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;

5. Entered without inspection before June 15, 2012, or your lawful immigration status expired as of June 15, 2012;

6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and

7. Have not been convicted of a felony, significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety. Individuals can call USCIS at 1-800-375-5283 with questions or to request more information on the deferred action for childhood arrivals process or visit www.uscis.gov.

## About Deferred Action for Childhood Arrivals

### Q1: What is deferred action?
A1: Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. Deferred action does not confer lawful

 DEF - 00001769

# Frequently Asked Questions

status upon an individual. In addition, although an individual whose case is deferred will not be considered to be accruing unlawful presence in the United States during the period deferred action is in effect, deferred action does not excuse individuals of any previous or subsequent periods of unlawful presence. Under existing regulations, an individual whose case has been deferred is eligible to receive employment authorization for the period of deferred action, provided he or she can demonstrate "an economic necessity for employment." DHS can terminate or renew deferred action at any time at the agency's discretion.

## Q2: What is deferred action for childhood arrivals?
A2: On June 15, 2012, the Secretary of Homeland Security announced that certain people who came to the United States as children and meet several key guidelines may request consideration of deferred action for a period of two years, subject to renewal, and would then be eligible for work authorization. Individuals who can demonstrate through verifiable documentation that they meet these guidelines will be considered for deferred action. Determinations will be made on a case-by-case basis under the guidelines set forth in the Secretary of Homeland Security's memorandum.

## Q3: If my removal is deferred pursuant to the consideration of deferred action for childhood arrivals process, am I eligible for employment authorization?
A3: Yes. Pursuant to existing regulations, if your case is deferred, you may obtain employment authorization from USCIS provided you can demonstrate an economic necessity for employment.

## Q4: Does this process apply to me if I am currently in removal proceedings, have a final removal order, or have a voluntary departure order?
A4: This process is open to any individual who can demonstrate he or she meets the guidelines for consideration, including those who have never been in removal proceedings as well as those in removal proceedings, with a final order, or with a voluntary departure order (as long as they are not in immigration detention). If you are not in immigration detention and want to affirmatively request consideration of deferred action for childhood arrivals, you must submit your request to USCIS – not ICE – pursuant to the procedures outlined below. If you are currently in immigration detention and believe you meet the guidelines you should not request consideration of deferred action from USCIS but should identify yourself to your detention officer or contact the ICE Office of the Public Advocate through the Office's hotline at 1-888-351-4024 (staffed 9 a.m. – 5 p.m., Monday – Friday) or by email at EROPublicAdvocate@ice.dhs.gov.

## Q5: Do I accrue unlawful presence if I have a pending request for consideration of deferred action for childhood arrivals?
A5: You will continue to accrue unlawful presence while the request for consideration of deferred action for childhood arrivals is pending, unless you are under 18 years old at the time of the request. If you are under 18 years old at the time you submit your request but turn 18 while your request is pending with USCIS, you will not accrue unlawful presence while the request is pending. If your case is deferred, you will not

# Frequently Asked Questions

accrue unlawful presence during the period of deferred action. Having action deferred on your case will not excuse previously accrued unlawful presence.

**Q6: If my case is deferred, am I in lawful status for the period of deferral?**
A6: No. Although action on your case has been deferred and you do not accrue unlawful presence during the period of deferred action, deferred action does not confer any lawful status.

There is a significant difference between "unlawful presence" and "unlawful status." Unlawful presence refers to a period an individual is present in the United States (1) without being admitted or paroled or (2) after the expiration of a period of stay authorized by the Department of Homeland Security (such as after the period of stay authorized by a visa has expired). Unlawful presence is relevant only with respect to determining whether the inadmissibility bars for unlawful presence, set forth in the Immigration and Nationality Act at Section 212(a)(9), apply to an individual if he or she departs the United States and subsequently seeks to re-enter. (These unlawful presence bars are commonly known as the 3- and 10-Year Bars.)

The fact that you are not accruing unlawful presence does not change whether you are in lawful status while you remain in the United States. Because you lack lawful status at the time DHS defers action in your case, you remain subject to all legal restrictions and prohibitions on individuals in unlawful status.

**Q7: Does deferred action provide me with a path to permanent residence status or citizenship?**
A7: No. Deferred action is a form of prosecutorial discretion that does not confer lawful permanent resident status or a path to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.

**Q8: If my case is deferred, will I be eligible for premium tax credits and reduced cost sharing through Affordable Insurance Exchanges starting in 2014?**
A8: No. The Departments of Health and Human Services and the Treasury intend to conform the relevant regulations to the extent necessary to exempt individuals with deferred action for childhood arrivals from eligibility for premium tax credits and reduced cost sharing. This is consistent with the policy under S. 3992, the Development, Relief, and Education for Alien Minors (DREAM) Act of 2010.

**Q9: Can I be considered for deferred action even if I do not meet the guidelines to be considered for deferred action for childhood arrivals?**
A9:This process is only for individuals who meet the specific guidelines announced by the Secretary of Homeland Security. Other individuals may, on a case-by-case basis, request deferred action from USCIS or ICE in certain circumstances, consistent with longstanding practice.

**Q10: Will the information I share in my request for consideration of deferred action for childhood arrivals be used for immigration enforcement purposes?**

 DEF - 00001771

# Frequently Asked Questions

A10: Information provided in this request is protected from disclosure to U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs and Border Protection (CBP) for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice To Appear or a referral to U.S. Immigration and Customs Enforcement under the criteria set forth in USCIS's Notice to Appear guidance (www.uscis.gov/NTA). Individuals whose cases are deferred pursuant to the consideration of deferred action for childhood arrivals process will not be referred to ICE. The information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of deferred action for childhood arrivals request, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense. The above information sharing policy covers family members and guardians, in addition to the requestor.

This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

### Q11: If my case is referred to ICE for immigration enforcement purposes or if I receive an NTA, will information related to my family members and guardians also be referred to ICE for immigration enforcement purposes?

A11: If your case is referred to ICE for purposes of immigration enforcement or you receive an NTA, information related to your family members or guardians that is contained in your request will not be referred to ICE for purposes of immigration enforcement against family members or guardians. However, that information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of the deferred action for childhood arrivals request, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense.

This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

### Q12: Does this Administration remain committed to comprehensive immigration reform?

A12: Yes. The Administration has consistently pressed for passage of comprehensive immigration reform, including the DREAM Act, because the President believes these steps are critical to building a 21st century immigration system that meets our nation's economic and security needs.

### Q13: Is passage of the DREAM Act still necessary in light of the new process?

A13: Yes. The Secretary of Homeland Security's June 15th memorandum allowing certain people to request consideration for deferred action is the most recent in a series

DEF - 00001772

# Frequently Asked Questions

of steps that DHS has taken to focus its enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety. Deferred action does not provide lawful status or a pathway to citizenship. As the President has stated, individuals who would qualify for the DREAM Act deserve certainty about their status. Only the Congress, acting through its legislative authority, can confer the certainty that comes with a pathway to permanent lawful status.

**Q14: Can I request consideration of deferred action for childhood arrivals under this process if I am currently in a nonimmigrant status (e.g. F-1, E-2, H-4) or have Temporary Protected Status (TPS)?**
A14: No. You can only request consideration of deferred action for childhood arrivals under this process if you currently have no immigration status and were not in any lawful status on June 15, 2012.

# Guidelines for Requesting Consideration of Deferred Action For Childhood Arrivals

### Q1: What guidelines must I meet to be considered for deferred action for childhood arrivals?
A1: Pursuant to the Secretary of Homeland Security's June 15, 2012 memorandum, in order to be considered for deferred action for childhood arrivals, you must submit evidence, including support documents, showing that you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Entered without inspection before June 15, 2012, or your lawful immigration status expired as of June 15, 2012;
6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Education Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and;
7. Have not been convicted of a felony, significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

These guidelines must be met for consideration of deferred action for childhood arrivals. USCIS retains the ultimate discretion on whether deferred action is appropriate in any given case.

# Frequently Asked Questions

## Q2: How old must I be in order to be considered for deferred action under this process?

A2:

- If you have never been in removal proceedings, or your proceedings have been terminated before your request for consideration of deferred action for childhood arrivals, you must be at least 15 years of age or older at the time of filing and meet the other guidelines.

- If you are in removal proceedings, have a final removal order, or have a voluntary departure order, and are not in immigration detention, you can request consideration of deferred action for childhood arrivals even if you are under the age of 15 at the time of filing and meet the other guidelines.

- In all instances, you cannot be the age of 31 or older as of June 15, 2012, to be considered for deferred action for childhood arrivals.

### Education

### Q1: Does "currently in school" refer to the date on which the request for consideration of deferred action is filed?

A1: To be considered "currently in school" under the guidelines, you must be enrolled in school on the date you submit a request for consideration of deferred action under this process.

### Q2: Who is considered to be "currently in school" under the guidelines?

A2: To be considered "currently in school" under the guidelines, you must be enrolled in:

- a public or private elementary school, junior high or middle school, high school, or secondary school;

- an education, literacy, or career training program (including vocational training) that is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; or

- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a General Educational Development (GED) exam or other equivalent state-authorized exam.

Such education, literacy, or career training programs include, but are not limited to, programs funded, in whole or in part, by federal or state grants. Programs funded by other sources may qualify if they are administered by providers of demonstrated effectiveness, such as institutions of higher education, including community colleges, and certain community-based organizations.

 DEF - 00001774

# Frequently Asked Questions

In assessing whether such an education, literacy or career training program not funded in whole or in part by federal or state grants is of demonstrated effectiveness, USCIS will consider the duration of the program's existence; the program's track record in assisting students in obtaining a regular high school diploma or its recognized equivalent, in passing a GED or other state-authorized exam, or in placing students in postsecondary education, job training, or employment; and other indicators of the program's overall quality. For individuals seeking to demonstrate that they are "currently in school" through enrollment in such a program, the burden is on the requestor to show the program's demonstrated effectiveness.

## Q3: How do I establish that I am currently in school?
A3: Documentation sufficient for you to demonstrate that you are currently in school may include, but is not limited to:

- evidence that you are enrolled in a public or private elementary school, junior high or middle school, high school or secondary school; or
- evidence that you are enrolled in an education, literacy, or career training program (including vocational training) that is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement, and that the program is funded in whole or in part by federal or state grants or is of demonstrated effectiveness; or
- evidence that you are enrolled in an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under State law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a General Educational Development (GED) exam or other such state-authorized exam, and that the program is funded in whole or in part by federal or state grants or is of demonstrated effectiveness.

Such evidence of enrollment may include: acceptance letters, school registration cards, letters from school or program, transcripts, report cards, or progress reports showing the name of the school or program, date of enrollment, and current educational or grade level, if relevant.

## Q4: What documentation may be sufficient to demonstrate that I have graduated from high school?
A4: Documentation sufficient for you to demonstrate that you have graduated from high school may include, but is not limited to, a high school diploma from a public or private high school or secondary school, or a recognized equivalent of a high school diploma under state law, including a General Education Development (GED) certificate, certificate of completion, a certificate of attendance, or an alternate award from a public or private high school or secondary school.

## Q5: What documentation may be sufficient to demonstrate that I have obtained a General Education Development (GED)?
A5: Documentation sufficient for you to demonstrate that you have obtained a GED may include, but is not limited to, evidence that you have passed a GED exam, or other

DEF - 00001775

# Frequently Asked Questions

comparable state-authorized exam, and, as a result, you have received the recognized equivalent of a regular high school diploma under state law.

## Q6: If I am enrolled in a literacy or career training program, can I meet the guidelines?

A6: Yes, in certain circumstances. You may meet the guidelines if you are enrolled in an education, literacy, or career training program that is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement. Such programs include, but are not limited to, programs funded by federal or state grants, or administered by providers of demonstrated effectiveness.

## Q7: If I am enrolled in English as a Second Language (ESL) program, can I meet the guidelines?

A7: Yes, in certain circumstances. You may meet the guidelines only if you are enrolled in an ESL program as a prerequisite for your placement in postsecondary education, job training, or employment and where you are working toward such placement. You must submit direct documentary evidence that your participation in the ESL program is connected to your placement in postsecondary education, job training or employment and that the program is one of demonstrated effectiveness.

## Q8: Will USCIS consider circumstantial evidence that I have met the education guidelines?

A8: No. Circumstantial evidence will not be accepted to establish that you are currently in school, have graduated or obtained a certificate of completion from high school, or have obtained a general education development certificate. You must submit direct documentary evidence to satisfy that you meet the education guidelines.

## Q9: If I am currently in school and USCIS defers action in my case, what will I have to demonstrate if I request that USCIS renew the deferral after two years?

A9: If you are in school at the time of your request and your case is deferred by USCIS, in order to have your request for an extension considered, you must show at the time of the request for renewal either (1) that you have graduated from the school in which you were enrolled and, if that school was elementary school or junior high or middle school, you have made substantial, measurable progress toward graduating from high school, or, (2) you have made substantial, measurable progress toward graduating from the school in which you are enrolled.

If you are currently in an education program that assists students either in obtaining a high school diploma or its recognized equivalent under state law, or in passing a GED exam or other equivalent state-authorized exam, and your case is deferred by USCIS, in order to have your request for an extension considered, you must show at the time of the request for renewal that you have obtained a high school diploma or its recognized equivalent or that you have passed a GED or other equivalent state-authorized exam.

If you are currently enrolled in an education, literacy, or career training program (including vocational training) that is designed to lead to placement in postsecondary

# Frequently Asked Questions

education, job training, or employment, and your case is deferred by USCIS, in order to have your request for an extension considered, you must show at the time of the request for renewal that you are enrolled in postsecondary education, that you have obtained the employment for which you were trained, or that you have made substantial, measurable progress toward completing the program.

Specific details on the renewal process will be made available at a later date.

**Travel**

### Q1: Do brief departures from the United States interrupt the continuous residence requirement?

A1: A brief, casual, and innocent absence from the United States will not interrupt your continuous residence. If you were absent from the United States for any period of time, your absence will be considered brief, casual, and innocent, if it was before August 15, 2012, and:

1. The absence was short and reasonably calculated to accomplish the purpose for the absence;

2. The absence was not because of an order of exclusion, deportation, or removal;

3. The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before you were placed in exclusion, deportation, or removal proceedings; and

4. The purpose of the absence and/or your actions while outside the United States were not contrary to law.

### *New* - Q2: May I travel outside of the United States before USCIS has determined whether to defer action in my case?

A2: No. After August 15, 2012, if you travel outside of the United States, you will not be considered for deferred action under this process. If USCIS defers action in your case, you will be permitted to travel outside of the United States only if you apply for and receive advance parole from USCIS.

Any travel outside of the United States that occurred before August 15, 2012, will be assessed by USCIS to determine whether the travel qualifies as brief, casual and innocent (see below).

**Note:** If you have been ordered deported or removed, and you then leave the United States, your departure may result in your being considered deported or removed, with potentially serious future immigration consequences.

DEF - 00001777

# Frequently Asked Questions

*Travel Guidelines*

| Travel Dates | Type of Travel | Does it Affect Continuous Residence |
|---|---|---|
| Before August 15, 2012 | • brief<br>• casual<br>• innocent | No |
| | • For an extended time<br>• Because of an order of exclusion, deportation, or removal<br>• To participate in criminal activity | Yes |
| After August 15, 2012, and before you have requested deferred action | • Any | Yes.<br><br>Yes. You cannot travel while your request is under review. |
| After August 15, 2012, and after you have requested deferred action | • Any | You cannot apply for advance parole unless and until DHS has determined whether to defer action in your case. |

**New - Q3: If my case is deferred pursuant to the consideration of deferred action for childhood arrivals process, will I be able to travel outside of the United States?**
A3: Not automatically. If USCIS has decided to defer action in your case and you want to travel outside the United States, you must apply for advance parole by filing a Form I-131, Application for Travel Document and paying the applicable fee ($360). USCIS will determine whether your purpose for international travel is justifiable based on the circumstances you describe in your request. Generally, USCIS will only grant advance parole if you are traveling for humanitarian purposes, educational purposes, or employment purposes. You may not apply for advance parole unless and until USCIS defers action in your case pursuant to the consideration of deferred action for childhood arrivals process. You cannot apply for advance parole at the same time as you submit

DEF - 00001778

# Frequently Asked Questions

your request for consideration of deferred action for childhood arrivals. All advance parole requests will be considered on a case-by-case basis.

If USCIS has deferred action in your case under the deferred action for childhood arrivals process after you have been ordered deported or removed, you may still request advance parole if you meet the guidelines for advance parole described above. However, once you have received advance parole, and before you actually leave the United States, you should seek to reopen your case before the Executive Office for Immigration Review (EOIR) and obtain administrative closure or termination of your removal proceeding. Even after you have asked EOIR to reopen your case, you should not leave the United States until after EOIR has granted your request. If you depart after being ordered deported or removed, and your removal proceeding has not been reopened and administratively closed or terminated, your departure may result in your being considered deported or removed, with potentially serious future immigration consequences. If you have any questions about this process, you may call the ICE Office of the Public Advocate through the Office's hotline at 1-888-351-4024 (staffed 9 a.m. – 5 p.m., Monday – Friday) or by email at EROPublicAdvocate@ice.dhs.gov.

## National Security and Public Safety

### Q1: If I have a conviction for a felony offense, a significant misdemeanor offense, or multiple misdemeanors, can I receive an exercise of prosecutorial discretion under this new process?

A1: No. If you have been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, you will not be considered for deferred action under the new process except where DHS determines there are exceptional circumstances.

### Q2: What offenses qualify as a felony?

A2: A felony is a federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year.

### Q3: What offenses constitute a significant misdemeanor?

A3: For the purposes of this process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

# Frequently Asked Questions

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less.

**Q4: What offenses constitute a non-significant misdemeanor?**
A4: For purposes of this process, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less. The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE.

Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion.

**Q5: If I have a minor traffic offense, such as driving without a license, will it be considered a non-significant misdemeanor that counts towards the "three or more non-significant misdemeanors" making me unable to receive consideration for an exercise of prosecutorial discretion under this new process?**
A5: A minor traffic offense will not be considered a misdemeanor for purposes of this process. However, your entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, you warrant an exercise of prosecutorial discretion.

It is important to emphasize that driving under the influence is a significant misdemeanor regardless of the sentence imposed.

DEF - 00001780

# Frequently Asked Questions

**Q6: Will offenses criminalized as felonies or misdemeanors by state immigration laws be considered felonies or misdemeanors for purpose of this process?**
A6: No.  Immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action pursuant to this process.

**Q7: Will DHS consider my expunged or juvenile conviction as an offense making me unable to receive an exercise of prosecutorial discretion?**
A7: Expunged convictions and juvenile convictions will not automatically disqualify you. Your request will be assessed on a case-by-case basis to determine whether, under the particular circumstances, a favorable exercise of prosecutorial discretion is warranted. If you were a juvenile, but tried and convicted as an adult, you will be treated as an adult for purposes of the deferred action for childhood arrivals process.

**Q8: What qualifies as a national security or public safety threat?**
A8: If the background check or other information uncovered during the review of your request for deferred action indicates that your presence in the United States threatens public safety or national security, you will not be able to receive consideration for an exercise of prosecutorial discretion except where DHS determines there are exceptional circumstances. Indicators that you pose such a threat include, but are not limited to, gang membership, participation in criminal activities, or participation in activities that threaten the United States.

**Q9: If I am not in removal proceedings but believe I meet the guidelines for an exercise of deferred action under this process, should I seek to place myself into removal proceedings through encounters with CBP or ICE?**
A9: No. If you are not in removal proceedings but believe that you meet the guidelines you should submit your request for consideration of deferred action for childhood arrivals to USCIS under the process outlined below.

# Filing Process

**Q1: How do I request consideration of deferred action for childhood arrivals?**
A1:To request consideration of deferred action for childhood arrivals from USCIS, you must submit Form I-821D, Consideration of Deferred Action for Childhood Arrivals to USCIS. This form must be completed, properly signed and accompanied by a Form I-765, Application for Employment Authorization, and a Form I-765WS, Worksheet, establishing your economic need for employment. If you fail to submit a completed Form I-765 (along with the accompanying filing fees for that form, totaling $465), USCIS will not consider your request for deferred action. Please read the form instructions to ensure that you submit all the required documentation to support your request.

You must file your request for consideration of deferred action for childhood arrivals at the USCIS Lockbox. You can find the mailing address and instructions on www.uscis.gov/i-821d. After your Form I-821D, Form I-765, and Form I-765 Worksheet

DEF - 00001781

# Frequently Asked Questions

have been received, USCIS will review them for completeness, including submission of the required fee, initial evidence and supporting documents. If it is determined that the request is complete, USCIS will send you a receipt notice. USCIS will then send you an appointment notice to visit an Application Support Center (ASC) for biometric services. Please make sure you read and follow the directions in the notice. Failure to attend your biometrics appointment may delay processing of your request for consideration of deferred action, or may result in a denial of your request. You may also choose to receive an email and/or text message notifying you that your form has been accepted by completing a Form G-1145, E-Notification of Application/Petition Acceptance.

Each request for consideration of deferred action for childhood arrivals will be reviewed on an individual, case-by-case basis. USCIS may request more information or evidence from you, or request that you appear at a USCIS office. USCIS will notify you of its determination in writing.

**Note:** All individuals who believe they meet the guidelines, including those in removal proceedings, with a final removal order, or with a voluntary departure order (and not in immigration detention), may affirmatively request consideration of deferred action for childhood arrivals from USCIS through this process. Individuals who are currently in immigration detention and believe they meet the guidelines may not request consideration of deferred action from USCIS but may identify themselves to their detention officer or to the ICE Office of the Public Advocate through the Office's hotline at 1-888-351-4024 (staffed 9 a.m. – 5 p.m., Monday – Friday) or by email at EROPublicAdvocate@ice.dhs.gov.

### Q2: Will USCIS conduct a background check when reviewing my request for consideration of deferred action for childhood arrivals?
A2: Yes. You must undergo biographic and biometric background checks before USCIS will consider whether to exercise prosecutorial discretion under the consideration of deferred action for childhood arrivals process. If you have been convicted of any felony, a significant misdemeanor offense, three or more misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, or otherwise pose a threat to national security or public safety, you will not be considered for deferred action for childhood arrivals except where DHS determines there are exceptional circumstances.

### Q3: What do background checks involve?
A3: Background checks involve checking biographic and biometric information provided by the individuals against a variety of databases maintained by DHS and other federal government agencies.

### Q4: Can I obtain a fee waiver or fee exemption for this process?
A4: There are no fee waivers available for employment authorization applications connected to the deferred action for childhood arrivals process. There are very limited fee exemptions available. Requests for fee exemptions must be filed and favorably adjudicated before an individual files his/her request for consideration of deferred action

# Frequently Asked Questions

for childhood arrivals without a fee. In order to be considered for a fee exemption, you must submit a letter and supporting documentation to USCIS demonstrating that you meet one of the following conditions:

- You are under 18 years of age, homeless, in foster care or under 18 years of age and otherwise lacking any parental or other familial support, and your income is less than 150% of the U.S. poverty level.
- You cannot care for yourself because you suffer from a serious, chronic disability and your income is less than 150% of the U.S. poverty level.
- You have, at the time of the request, accumulated $25,000 or more in debt in the past 12 months as a result of unreimbursed medical expenses for yourself or an immediate family member, and your income is less than 150% of the U.S. poverty level.

Additional information on how to make your request for a fee exemption is available on www.uscis.gov/childhoodarrivals. Your request must be submitted and decided before you submit a request for consideration of deferred action for childhood arrivals without a fee. In order to be considered for a fee exemption, you must provide documentary evidence to demonstrate that you meet any of the above conditions at the time that you make the request. For evidence, USCIS will:

- Accept affidavits from community-based or religious organizations to establish a requestor's homelessness or lack of parental or other familial financial support.
- Accept copies of tax returns, banks statement, pay stubs, or other reliable evidence of income level. Evidence can also include an affidavit from the applicant or a responsible third party attesting that the applicant does not file tax returns, has no bank accounts, and/or has no income to prove income level.
- Accept copies of medical records, insurance records, bank statements, or other reliable evidence of unreimbursed medical expenses of at least $25,000.
- Address factual questions through requests for evidence (RFEs).

**Q5: Will there be supervisory review of decisions by USCIS under this process?**
A5: Yes. USCIS will implement a supervisory review process in all four Service Centers to ensure a consistent process for considering requests for deferred action for childhood arrivals. USCIS will require officers to elevate for supervisory review those cases that involve certain factors.

**Q6: Will USCIS personnel responsible for reviewing requests for an exercise of prosecutorial discretion under this process receive special training?**
A6: Yes. USCIS personnel responsible for considering requests for consideration of deferred action for childhood arrivals will receive special training.

***New - Q7. Must attorneys and accredited representatives who provide pro bono services to deferred action requestors at group assistance events file a Form G-***

                    DEF - 00001783

# Frequently Asked Questions

**28 with USCIS?**
A7. An attorney or accredited representative who provides pro bono assistance to an individual in a workshop setting and who intends to represent the individual after the workshop must file a Form G-28.  An attorney or accredited representative who provides pro bono assistance to an individual in a workshop setting, but who does not intend to represent the individual after the workshop, should assess the extent of the relationship with the individual and the nature and type of the assistance provided.  On that basis, the attorney or accredited representative should determine whether to file a Form G-28.  If a Form G-28 is not filed, the attorney or accredited representative should determine whether it would be appropriate under the circumstances to provide the individual and USCIS with a letter noting the limited extent of the representation.

### New - Q8. When must an individual sign a Form I-821D as a preparer?
A8. If someone other than the requestor prepares or helps fill out the Form I-821D, that individual must complete Part 5 of the Form.

### New - Q9. How should I fill out question nine (9) on the Form I-765, Application for Employment Authorization?
A9. When you are filing a Form I-765 as part of a Deferred Action Childhood Arrivals request, question nine (9) is asking you to list those Social Security numbers that were officially issued to you by the Social Security Administration.

# Decisions and Renewals

### Q1: Can I appeal USCIS's determination?
A1: No. You cannot file a motion to reopen or reconsider, and cannot appeal the decision if USCIS denies your request for consideration of deferred action for childhood arrivals. USCIS will not review its discretionary determinations. You may request a review using the Service Request Management Tool (SRMT) process if you met all of the process guidelines and you believe that your request was denied due to one of the following errors:

- USCIS denied the request for consideration of deferred action for childhood arrivals based on abandonment and you claim that you did respond to a Request for Evidence within the prescribed time; or

- USCIS mailed the Request for Evidence to the wrong address, even though you had submitted a Form AR-11, Change of Address, or changed your address online at www.uscis.gov before the issuance of the Request for Evidence.

### Q2: If USCIS does not exercise deferred action in my case, will I be placed in removal proceedings?
A2: If you have submitted a request for consideration of deferred action for childhood arrivals and USCIS decides not to defer action in your case, USCIS will apply its policy guidance governing the referral of cases to U.S. Immigration and Customs Enforcement (ICE) and the issuance of Notices to Appear (NTA). If your case does not involve a criminal offense, fraud, or a threat to national security or public safety, your case will not

# Frequently Asked Questions

be referred to ICE for purposes of removal proceedings except where DHS determines there are exceptional circumstances. For more detailed information on the applicable NTA policy visit www.uscis.gov/NTA. If after a review of the totality of circumstances USCIS determines to defer action in your case, USCIS will likewise exercise its discretion and will not issue you a Notice to Appear.

### Q3: Can I extend the period of deferred action in my case?

A3: Yes. Unless terminated, individuals whose case is deferred pursuant to the consideration of deferred action for childhood arrivals process will not be placed into removal proceedings or removed from the United States for a period of two years. You may request consideration for an extension of that period of deferred action. As long as you were not above the age of 30 on June 15, 2012, you may request a renewal after turning 31. Your request for an extension will be considered on a case-by-case basis.

### Q4: If my period of deferred action is extended, will I need to re-apply for an extension of my employment authorization?

A4: Yes. If USCIS decides to defer action for additional periods beyond the initial two years, you must also have requested an extension of your employment authorization.

# Evidence

The following chart provides examples of documentation you may submit to demonstrate you meet the guidelines for consideration of deferred action under this process. Please see the instructions of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for additional details of acceptable documentation.

| Examples of Documents to Submit to Demonstrate you Meet the Guidelines | |
|---|---|
| Proof of identity | • Passport or national identity document from your country of origin |
| | • Birth certificate with photo identification |
| | • School or military ID with photo |
| | • Any U.S. government immigration or other document bearing your name and photo |
| Proof you came to U.S. before your 16th birthday | • Passport with admission stamp |
| | • Form I-94/I-95/I-94W |
| | • School records from the U.S. schools you have attended |
| | • Any Immigration and Naturalization Service or DHS document stating your date of entry (Form I- |

DEF - 00001785

# Frequently Asked Questions

| Examples of Documents to Submit to Demonstrate you Meet the Guidelines | |
|---|---|
| | 862, Notice to Appear) |
| | • Travel records |
| | • Hospital or medical records |
| Proof of immigration status | • Form I-94/I-95/I-94W with authorized stay expiration date |
| | • Final order of exclusion, deportation, or removal issued as of June 15, 2012 |
| | • A charging document placing you into removal proceedings |
| Proof of Presence in U.S. on June 15, 2012<br><br>Proof you continuously resided in U.S. since June 15, 2007 | • Rent receipts or utility bills |
| | • Employment records (pay stubs, W-2 Forms, etc.) |
| | • School records (letters, report cards, etc.) |
| | • Military records (Form DD-214 or NGB Form 22) |
| | • Official records from a religious entity confirming participation in a religious ceremony |
| | • Copies of money order receipts for money sent in or out of the country |
| | • Passport entries |
| | • Birth certificates of children born in the U.S. |
| | • Dated bank transactions |
| | • Social Security card |
| | • Automobile license receipts or registration |
| | • Deeds, mortgages, rental agreement contracts |
| | • Tax receipts, insurance policies |
| Proof of your student status at the time of requesting consideration of deferred action for childhood arrivals | • School records (transcripts, report cards, etc.) from the school that you are currently attending in the United States showing the name(s) of the school(s) and periods of school attendance and the current educational or grade level |
| | • U.S. high school diploma or certificate of completion |
| | • U.S. GED certificate |

DEF - 00001786

# Frequently Asked Questions

| Examples of Documents to Submit to Demonstrate you Meet the Guidelines | |
| --- | --- |
| Proof you are an honorably discharged veteran of the U.S. Armed Forces or the U.S. Coast Guard | • Form DD-214, Certificate of Release or Discharge from Active Duty<br>• NGB Form 22, National Guard Report of Separation and Record of Service<br>• Military personnel records<br>• Military health records |

### Q1: May I file affidavits as proof that I meet the guidelines for consideration of deferred action for childhood arrivals?

A1: Affidavits generally will not be sufficient on their own to demonstrate that you meet the guidelines for USCIS to consider you for deferred action for childhood arrivals. However, affidavits may be used to support meeting the following guidelines only if the documentary evidence available to you is insufficient or lacking:

- A gap in the documentation demonstrating that you meet the five year continuous residence requirement; and
- A shortcoming in documentation with respect to the brief, casual and innocent departures during the five years of required continuous presence.

If you submit affidavits related to the above criteria, you must submit two or more affidavits, sworn to or affirmed by people other than yourself, who have direct personal knowledge of the events and circumstances. Should USCIS determine that the affidavits are insufficient to overcome the unavailability or the lack of documentary evidence with respect to either of these guidelines, it will issue a Request for Evidence, indicating that further evidence must be submitted to demonstrate that you meet these guidelines.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- You are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development certificate, or are an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You were under the age of 31 on June 15, 2012; and
- Your criminal history, if applicable.

If the only evidence you submit to demonstrate you meet any of the above guidelines is an affidavit, USCIS will issue a Request for Evidence, indicating that you have not

DEF - 00001787

# Frequently Asked Questions

demonstrated that you meet these guidelines and that you must do so in order to demonstrate that you meet that guideline.

## Q2: Will USCIS consider circumstantial evidence that I have met certain guidelines?

A2: Circumstantial evidence may be used to establish the following guidelines and factual showings if available documentary evidence is insufficient or lacking and shows that:

- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You satisfy the five year continuous residence requirement, as long as you present direct evidence of your continued residence in the United States for a portion of the required five-year period and the circumstantial evidence is used only to fill in gaps in the length of continuous residence demonstrated by the direct evidence; and
- Any travel outside the United States during the five years of required continuous presence was brief, casual, and innocent.

However, USCIS will not accept circumstantial evidence as proof of any of the following guidelines to demonstrate that you:

- Were under the age of 31 on June 15, 2012; and
- Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Education Development (GED) certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

For example, if you do not have documentary proof of your presence in the United States on June 15, 2012, you may nevertheless be able to satisfy the guideline circumstantially by submitting credible documentary evidence that you were present in the United States shortly before and shortly after June 15, 2012, which under the facts presented may give rise to an inference of your presence on June 15, 2012 as well. However, circumstantial evidence will not be accepted to establish that you have graduated high school. You must submit direct documentary evidence to satisfy that you meet this guideline.

## *New - Q3. To prove my continuous residence in the United States since June 15, 2007, must I provide evidence documenting my presence for every day, or every month, of that period?*

A3. To meet the continuous residence guideline, you must submit documentation that shows you have been living in the United States from June 15, 2007 up until the time of your request. You should provide documentation to account for as much of the period as reasonably possible, but there is no requirement that every day or month of that period be specifically accounted for through direct evidence. It is helpful to USCIS if

 DEF - 00001788

# Frequently Asked Questions

you can submit evidence of your residence during at least each year of the period. USCIS will review the documentation in its totality to determine whether it is more likely than not that you were continuously residing in the United States for the period since June 15, 2007. Gaps in the documentation as to certain periods may raise doubts as to your continued residence if, for example, the gaps are lengthy or the record otherwise indicates that you may have been outside the United States for a period of time that was not brief, casual or innocent. If gaps in your documentation raise questions , USCIS may issue a request for evidence to allow you to submit additional documentation that supports your claimed continuous residence.

Affidavits may be submitted to explain a gap in the documentation demonstrating that you meet the five year continuous residence requirement. If you submit affidavits related to the continuous residence requirement, you must submit two or more affidavits, sworn to or affirmed by people other than yourself, who have direct personal knowledge of the events and circumstances during the period as to which there is a gap in the documentation. Affidavits may only be used to explain gaps in your continuous residence; they cannot be used as evidence that you meet the entire five year continuous residence requirement.

**New - Q4. If I provide my employee with information regarding his or her employment to support a request for consideration of deferred action for childhood arrivals, will that information be used for immigration enforcement purposes against me and/or my company?**
A4. You may, as you determine appropriate, provide individuals requesting deferred action for childhood arrivals with documentation which verifies their employment. This information will not be shared with ICE for civil immigration enforcement purposes pursuant to INA section 274A unless there is evidence of egregious violations of criminal statutes or widespread abuses.

## Cases in Other Immigration Processes

**Q1: Will I be considered to be in unlawful status if I had an application for asylum or cancellation of removal pending before either USCIS or the Executive Office for Immigration Review (EOIR) on June 15, 2012?**
A1: Yes. If you had an application for asylum or cancellation of removal, or similar relief, pending before either USCIS or EOIR as of June 15, 2012, but had no lawful status, you may request consideration of deferred action for childhood arrivals.

**Q2: Can I request consideration of deferred action for childhood arrivals from USCIS if I am in immigration detention under the custody of ICE?**
A2: No. If you are currently in immigration detention, you may not request consideration of deferred action for childhood arrivals from USCIS. If you think you may meet the guidelines of this process, you should identify yourself to your detention officer or contact the ICE Office of the Public Advocate so that ICE may review your case. The ICE Office of the Public Advocate can be reached through the Office's hotline at 1-888-

DEF - 00001789

# Frequently Asked Questions

351-4024 (staffed 9 a.m. – 5 p.m., Monday – Friday) or by email at EROPublicAdvocate@ice.dhs.gov

**Q3: If I am about to be removed by ICE and believe that I meet the guidelines for consideration of deferred action for childhood arrivals, what steps should I take to seek review of your case before removal?**
A3: If you believe you can demonstrate that you meet the guidelines and are about to be removed, you should immediately contact either the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week) or the ICE Office of the Public Advocate through the Office's hotline at 1-888-351-4024 (staffed 9 a.m. – 5 p.m., Monday – Friday) or by email at EROPublicAdvocate@ice.dhs.gov.

**Q4: If individuals meet the guidelines for consideration of deferred action for childhood arrivals and are encountered by Customs and Border Protection (CBP) or ICE, will they be placed into removal proceedings?**
A4: This policy is intended to allow CBP and ICE to focus on priority cases. Pursuant to the direction of the Secretary of Homeland Security, if an individual meets the guidelines of this process, CBP or ICE should exercise their discretion on a case-by-case basis to prevent qualifying individuals from being apprehended, placed into removal proceedings, or removed. If individuals believe that, in light of this policy, they should not have been placed into removal proceedings, contact either the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week) or the ICE Office of the Public Advocate through the Office's hotline at 1-888-351-4024 (staffed 9 a.m. – 5 p.m., Monday – Friday) or by email at EROPublicAdvocate@ice.dhs.gov.

**Q5: If I accepted an offer of administrative closure under the case-by-case review process or my case was terminated as part of the case-by-case review process, can I be considered for deferred action under this process?**
A5: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of deferred action for childhood arrivals even if you have accepted an offer of administrative closure or termination under the case-by-case review process. If you are in removal proceedings and have already been identified as meeting the guidelines and warranting discretion as part of ICE's case-by-case review, ICE already has offered you deferred action for a period of two years, subject to renewal.

**Q6: If I declined an offer of administrative closure under the case-by-case review process, can I be considered for deferred action under this process?**
A6: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of deferred action for childhood arrivals from USCIS even if you declined an offer of administrative closure under the case-by-case review process.

DEF - 00001790

# Frequently Asked Questions

**Q7: If my case was reviewed as part of the case-by-case review process but I was not offered administrative closure, can I be considered for deferred action under this process?**
A7: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of deferred action for childhood arrivals from USCIS even if you were not offered administrative closure following review of you case as part of the case-by-case review process.

**Q8: How will ICE and USCIS handle cases involving individuals who do not satisfy the guidelines of this process but believe they may warrant an exercise of prosecutorial discretion under the June 2011 Prosecutorial Discretion Memoranda?**
A8: If USCIS determines that you do not satisfy the guidelines or otherwise determines you do not warrant an exercise of prosecutorial discretion, then it will decline to defer action in your case. If you are currently in removal proceedings, have a final order, or have a voluntary departure order, you may then request ICE consider whether to exercise prosecutorial discretion under the ICE June 2011 Prosecutorial Discretion Memoranda through any of the established channels at ICE, including through a request to the ICE Office of the Public Advocate or to the local Field Office Director. USCIS will not consider requests for review under the ICE June 2011 Prosecutorial Discretion Memoranda.

**Q9: What should I do if I meet the guidelines of this process and have been issued an ICE detainer following an arrest by a state or local law enforcement officer?**
A9: If you meet the guidelines and have been served a detainer, you should immediately contact either the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week) or the ICE Office of the Public Advocate either through the Office's hotline at 1-888-351-4024 (staffed 9 a.m. – 5 p.m., Monday – Friday) or by email at EROPublicAdvocate@ice.dhs.gov.

# Avoiding Scams and Preventing Fraud

**Q1: Someone told me if I pay them a fee, they can expedite my deferred action for childhood arrivals request, is this true?**
A1: No. There is no expedited processing for deferred action. Dishonest practitioners may promise to provide you with faster services if you pay them a fee. These people are trying to scam you and take your money. Visit our Avoid Scams page to learn how you can protect yourself from immigration scams.

Make sure you seek information about requests for consideration of deferred action for childhood arrivals from official government sources such as USCIS or the Department of Homeland Security. If you are seeking legal advice, visit our Find Legal Services page to learn how to choose a licensed attorney or accredited representative.

DEF - 00001791

# Frequently Asked Questions

**Q2: What steps will USCIS and ICE take if I engage in fraud through the new process?**

A2: If you knowingly make a misrepresentation, or knowingly fail to disclose facts, in an effort to have your case deferred or obtain work authorization through this new process, you will be treated as an immigration enforcement priority to the fullest extent permitted by law, and be subject to criminal prosecution and/or removal from the United States.

DEF - 00001792

# DEF-INTERV.

# EX. 155

# Internal DACA FAQs

## I.    Advance Parole

## Q1.

| Title | Visiting Relatives |
|---|---|
| Question | Can a request for Advance Parole be approved based solely on wanting to visit a family member? |
| Answer | Requests for Advance Parole based solely on wanting to visit a family member *without some other extenuating circumstance* such as illness or for a funeral is not a valid reason to approve the application. In such cases, please take the following action:<br>If no RFE has been issued, please do so;<br>If you have already issued an RFE and the response does not include evidence that the applicant meets one of the criteria for the DACA Advance Parole (i.e. business/employment, education or humanitarian), then deny the application. |
| Associated Form | I-131 |
| DACA Category | Advance Parole |
| Sub-Category | Humanitarian |

## Q2.

| Title | I-131 Filed While I-821D Still Pending |
|---|---|
| Question | How should we process Form I-131 filed by a DACA requestor before a decision has been made on the I-821D? |
| Answer | Any Form I-131 filed based on a pending DACA request should be placed on hold until a decision is made on Form I-821D. Once a decision is made on Form I-821D, proceed as follows:<br><br>If Form I-821D is denied:<br><br>• Hold the I-131 until further guidance is provided from SCOPS.<br>If Form I-821D is approved: |

DEF - 00003633

|  | • You may issue an RFE, if necessary, using the cleared I-131 RFE template posted on the DACA ECN site.<br>• If you wish to approve, review the evidence of record to ensure the request for advance parole will be in furtherance of:<br>    o humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;<br>    o educational purposes, such as semester-abroad programs and academic research; or<br>    o employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.<br>• If you wish to deny, send a copy of the draft denial notice to SCOPS ANTZ Branch Chief Donna Kane and copy Angela Lyons. You should hold adjudication on Form I-131 until Donna Kane and/or Angela Lyons responds. |
|---|---|
| Associated Form | I-131 |
| DACA Category | Advance Parole |
| Sub-Category | I-131 |

## II.   Employment Authorization

## Q1.

| Title | Biometrics Services Fee for Replacement EAD |
|---|---|
| Question | Is the biometrics services fee required for a DACA recipient who is only seeking to replace a lost/stolen EAD? |
| Answer | Yes, the biometrics services fee is always required for an I-765 that is based on category (c)(33), regardless of the validity of a previous biometrics check or whether biometrics will be cloned. |
| Associated Form | I-765 |
| DACA Category | Employment Authorization |
| Sub-Category | Biometrics |

DEF - 00003634

## Q2.

| | |
|---|---|
| Title | Biometrics Services Fee for Replacement EAD |
| Question | Is the biometrics services fee required for a DACA recipient who is only seeking to replace a lost/stolen EAD? |
| Answer | Yes, the biometrics services fee is always required for an I-765 that is based on category (c)(33), regardless of the validity of a previous biometrics check or whether biometrics will be cloned. |
| Associated Form | I-765 |
| DACA Category | Employment Authorization |
| Sub-Category | Biometrics |
| Attachments | |

## III.   Fraud

| | |
|---|---|
| Title | Fake or Altered Diploma |
| Question | What should we do when we suspect that a diploma is fake or altered? |
| Answer | If you suspect that a diploma is fake or altered, please refer the case to the CFDO for investigation. As always, you should state the reason you believe the diploma is not valid, such as:<br><br>• The diploma has no identifying traits such as, no state, city, signatures, etc.;<br>• Copy marks;<br>• Diploma is not consistent with other evidence in the file (i.e. individual provided evidence from another state when they indicated that they were attending the school from which they received the diploma); and/or<br>• Recognized diploma mill.<br><br>SCOPS continues to coordinate with FDNS on this matter and will provide the Front Office's policy decision on this matter as soon as it is available. |
| Associated Form | |
| DACA Category | Fraud |
| Sub-Category | Education |

DEF - 00003635

## IV.    Guidelines

## a)  Continuous Residence

## Q1.

| Title | Missing Addresses on Part 2 of Form I-821D |
|---|---|
| Question | What should we do when the address section on the I-821D is incomplete, but the evidence submitted shows where the requestor was residing during those years? |
| Answer | The centers should RFE for missing addresses on the form if CR is not established based on the totality of evidence. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Continuous Residence |

## Q2.

| Title | Not "on or about" 6/15/2007, but "since" 6/15/2007 |
|---|---|
| Question | Do DACA requestors need to provide evidence of continuous residence "on or about" 6/15/2007? |
| Answer | No. Although the 6/15/2007 and 6/15/2012 dates are "bookends" for the Continuous Residence guideline, the date-specific Physical Presence guideline only applies to 6/15/2012. This means that an officer can determine on a case-by-case basis that the DACA requestor meets the Continuous Residence guideline based on the totality of evidence presented even if the DACA requestor does not submit evidence of residence on or about 6/15/2007.

If there is a gap of evidence for a significant period of time at the beginning of the Continuous Residence period, then the officer should determine whether residence since 6/15/2007 can be inferred based on the totality of evidence presented in that case. If not, then an RFE is appropriate, but the officer should be careful not to ask for evidence of residence "on or about" 6/15/2007 because this implies a physical presence guideline that does not exist. It is better to specify in the RFE the gap in the evidence received and then to ask more broadly for additional evidence of continuous residence since 6/15/2007. |

DEF - 00003636

| | |
|---|---|
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Continuous Residence |

## Q3.

| | |
|---|---|
| Title | Disqualifying International Travel on or After 8/15/12 |
| Question | Does international travel on or after August 15, 2012 and before USCIS has determined whether to defer action under the DACA process disrupt continuous residence? |
| Answer | Yes. Continuous residence is disrupted if a DACA requestor travelled outside the United States on or after August 15, 2012 and before USCIS determined to defer action. Additionally, a DACA requestor cannot apply for advance parole unless and until USCIS has made a determination to defer action in his or her case.<br><br>If routine systems checks, documentation submitted with the DACA request, or evidence in the A-file indicate that a departure was made on or after August 15, 2012, but before USCIS had determined whether to defer action on a case, issue a Notice of Intent to Deny (NOID) with the opportunity for the requestor to rebut the derogatory information. See **Appendix E** for NOID Template. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Continuous Residence |

## Q4.

| | |
|---|---|
| Title | Irrefutable evidence that a requestor left the U.S. after 8/15/12 with a pending Form I-821D |
| Question | How should the centers process a pending DACA case where there is irrefutable evidence that a requestor left the U.S. after 8/15/12 under an order of voluntary departure or deportation, exclusion, or removal, and the departure was witnessed by a DHS official? |
| Answer | If routine systems checks, documentation submitted with the DACA request, or evidence in the A-file indicate that a departure was made while under an order of voluntary departure or deportation, exclusion, or removal, and **DHS (e.g., ICE) in fact removed the requestor or a DHS officer witnessed the voluntary departure of the requestor**, the centers should issue a straight denial using the existing |

DEF - 00003637

| | |
|---|---|
| | checkbox from Appendix F: You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Continuous Residence |

# b) Criminality

## Q1.

| | |
|---|---|
| Title | Felony/Misdemeanor Definition and "Wobbler" Offenses |
| Question | If a court disposition specifically indicates that a conviction is for a "misdemeanor" or "felony" offense, do we still need to look at the maximum possible sentence in the State's criminal code to determine whether it is a misdemeanor or felony conviction for DACA purposes? |
| Answer | Yes, it is necessary to look at the statute to determine whether the offense is a misdemeanor or felony conviction for DACA purposes even if the court disposition uses the term "misdemeanor" or "felony" in the disposition. This is because federal law defines these terms based on the length of the maximum possible sentence, whereas individual States may define these terms based on other criteria.  In addition, some States may have a "Wobbler" provision, which allows the charge to be filed as either a "felony" or "misdemeanor" according to that State's definition of these terms. So a "misdemeanor" conviction under State law can still be a felony conviction for DACA purposes (e.g. California Penal Code 273.5). |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Criminality Issues |
| Attachments | |

DEF - 00003638

## Q.2

| Title | Pending Criminal Proceedings |
|---|---|
| Question | What should we do when criminal proceedings are still pending for a potentially disqualifying criminal offense? |
| Answer | For EPS cases, follow the guidance in the SOP (Chapter 8, Section G, Handling Procedures, EPS Cases). |
| | For Non-EPS cases where the requestor has been arrested for a potentially disqualifying criminal offense, but the court disposition is currently unavailable because the criminal proceedings are still pending, the BCU DACA Team will issue an RFE (DACA 151 Call Up). The BCU DACA Team will withhold adjudication until the requestor submits the court disposition <u>or</u> receives authorization from SCOPS to deny the case absent the court disposition. The BCU DACA Team will initially provide 87 days for the requestor to respond, but may issue a second RFE (DACA 151 Call Up) if the requestor fails to provide the final court disposition within 87 days because the criminal proceedings have not concluded. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Criminality Issues |

## Q3.

| Title | Offenses of Driving After Consuming Alcohol |
|---|---|
| Question | Is an offense of driving after consuming alcohol always considered a significant misdemeanor for DACA purposes? |
| Answer | No; a criminal offense of driving after consuming alcohol is only a significant misdemeanor for DACA purposes if it is a misdemeanor as defined by federal law (i.e. maximum term of imprisonment authorized is more than 5 days but less than 1 year), and the statute requires, for a finding of guilt, that either: |
| | The person was intoxicated, impaired or under the influence; or |
| | The person has a certain level of blood alcohol concentration (BAC), other than a |

DEF - 00003639

negligible amount that can be measured (such as .01%).

Examples of alcohol-related driving offenses that are <u>not</u> significant misdemeanors for DACA purposes include, but are not limited to:

Wisconsin offense for Operating While Under the Influence (§346.63(1)(a)) – not a significant misdemeanor because it carries no prison sentence and therefore does not meet the definition of a misdemeanor under federal law.

California offense for Reckless Driving Involving Alcohol (§23103.5) – not a significant misdemeanor because it requires neither a particular BAC level nor intoxication/impairment. Instead, the statute defines the offense as driving where alcohol is involved.

If a DACA requestor has been convicted of an offense of driving after consuming alcohol, but it is not considered a significant misdemeanor for DACA purposes, follow the guidance in Chapter 8, Section G of the DACA SOP – although the conviction alone is not automatically disqualifying, consider the entire record, including all issues of criminality, when determining whether prosecutorial discretion should be exercised.

Please consult with your local counsel if you are unsure whether an alcohol-related driving offense is considered a significant misdemeanor for DACA purposes.

| | |
|---|---|
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Criminality Issues |

# Q4.

| | |
|---|---|
| Title | Known or Suspected Gang Membership |
| Question | How should we handle DACA requests when there is a record that the requestor is a known or suspected criminal street gang member? |
| Answer | The BCU DACA Team should handle any DACA requests when the record indicates that the requestor was, is or may be a member of a criminal street gang. Supervisors should only refer novel, complex, or sensitive cases to HQSCOPS, through the normal chain of command. The Centers should <u>not</u> approve a DACA request filed by a known or suspected gang member without approval from HQSCOPS. |

DEF - 00003640

USCIS's Notice to Appear (NTA) guidance includes "known or suspected street gang members" in its definition of an Egregious Public Safety (EPS) case. Therefore, if there is reason to believe the DACA requestor is a known or suspected gang member because the record indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving gang activities (e.g., a TECS record indicating the alien is a gang member or a suspected gang member as shown in the **images A and B**), the DACA BCU Team should follow the handling procedures for EPS cases described in Chapter 8, Section G, of the DACA SOP.

<u>ICE Priority</u>

If, in response to the referral to ICE (RTI), ICE issues an NTA or otherwise indicates that the DACA requestor is an enforcement priority, the DACA BCU Team should deny the I-821D using the checkbox in Appendix F that indicates "you have not established that you warrant a favorable exercise of prosecutorial discretion."

<u>Known Gang Member</u>

For a known street gang member, if an RTI is not required, as stated in the National Background Identity and Security Checks Operating Procedures (NaBISCOP), or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team should deny the I-821D as a matter of discretion and notify ICE of the decision.

<u>Suspected Gang Member</u>

For a suspected street gang member, if an RTI is not required, as stated in the NaBISCOP, or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team must refer the case for an interview to determine whether or not the requestor is, in fact, a gang member. Please contact HQSCOPS before referring the case for an interview in order to obtain the Field Office POC. If, after the interview, it is inconclusive whether the requestor is a gang member (e.g., based on the preponderance of the evidence the person is a street gang member), the DACA BCU Team should deny the I-821D as a matter of discretion because the person has not met the burden of showing he or she is 'more likely than not' not a street gang member and therefore does not pose a threat to public safety. The DACA BCU team must notify ICE of the decision.

| | |
|---|---|
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Criminality Issues |

DEF - 00003641

## Q5.

| | |
|---|---|
| Title | Juvenile Delinquency |
| Question | Can we issue a NOID or discretionary denial on public safety grounds if the criminal offense was adjudicated as a juvenile delinquency? |
| Answer | An offense adjudicated as a juvenile delinquency is not automatically disqualifying for DACA purposes. Therefore, the ISO should evaluate the criminal history on a case-by-case basis to determine whether, under the particular circumstances, discretion is warranted to defer removal under DACA.<br><br>If the requestor has not demonstrated that favorable discretion is warranted, then the ISO should prepare a NOID using the template titled **Juvenile Delinquency.** The ISO should obtain supervisory review AND clearance from local counsel before issuing a NOID using this call up. Centers are no longer required to elevate juvenile delinquency cases to SCOPS attention unless they encounter a novel, complex or sensitive case. If the response to the NOID is insufficient to overcome the grounds of the intended denial, the ISO should deny the DACA request using the following checkbox in Appendix F: "You have not established that you warrant a favorable exercise of prosecutorial discretion." |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Criminality Issues |

## c) Discretion

| | |
|---|---|
| Title | Potential inadmissibility grounds |
| Question | Does a potential inadmissibility ground affect the decision on a DACA request? |
| Answer | DACA requestors do _not_ need to establish admissibility in order for USCIS to defer action under DACA. Therefore, if the record contains any derogatory information, the officer does _not_ need to determine whether a ground of inadmissibility applies before making a decision on the DACA request. Rather, the officer should only consider the derogatory information as it relates to the DACA guidelines and to |

DEF - 00003642

| | |
|---|---|
| | determine whether favorable discretion is warranted.

Please raise case-specific questions to SCOPS through your appropriate chain of command if it is not clear whether certain derogatory information is disqualifying for DACA purposes. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Discretion |

## d)    Education

## Q1.

| | |
|---|---|
| Title | Graduation from University/College |
| Question | What should we do when the requestor submits a university diploma, but did not submit evidence that the requestor graduated from high school? |
| Answer | Graduation from a public or private college, university or community college is sufficient to meet the educational guideline. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Education |

## Q2.

| | |
|---|---|
| Title | In School vs. Graduated From School |
| Question | Is there is a difference between USCIS' interpretation of the term "school" in the phrases "currently in school" and "graduated from school" for the purpose of meeting the educational guideline? |
| Answer | Yes, USCIS interprets the term "school" more broadly in the phrase "currently in school" than in the phrase "graduated from school." See Slide 67 of the DACA Workshop Presentation, posted on the DACA ECN site under *Training Materials*.

SCOPS previously clarified during a Roundtable discussion and through an Internal FAQ that a requestor may demonstrate that he/she "graduated from school" by submitting evidence of graduation from a college, university or community |

|  | college. This language has been included in the current version of the DACA SOP. For the purpose of considering an initial DACA request, the phrase "graduated from school" does <u>not</u> include graduation from an education, literacy or career training program (including vocational training or an ESL course).<br><br>Initial DACA requestors may be considered "currently in school" if they are currently enrolled in an education, literacy or career training program designed to lead to placement in post-secondary education, job training, or employment, but the requestor is not considered to have "graduated from school" based solely on having completed an education, literacy or career training program. |
|---|---|
| Associated Form |  |
| DACA Category | Guidelines |
| Sub-Category | Education |

## Q3.

| Title | In School at the Time of Filing, but not at the Time of Adjudication |
|---|---|
| Question | Should USCIS deny cases where requestors were enrolled in school at the time of filing but are not in school at the time of adjudication? |
| Answer | No. In accordance with the DACA FAQs and the Form I-821D Instructions, enrollment at the time of filing is sufficient to meet the educational guideline. |
| Associated Form |  |
| DACA Category | Guidelines |
| Sub-Category | Education |
| Attachments |  |

## e. Identity

| Title | Full Legal Name |
|---|---|

DEF - 00003644

| | |
|---|---|
| Question | Which name should USCIS place on official documents (e.g. EAD, approval notice, etc.) when the name listed on the I-821D/I-765 does not match the name listed on the requestor's official identity documents? |
| Answer | According to AFM Ch. 51.4, USCIS will only use an individual's full legal name on any official documents issued by USCIS. In some cases, it may be necessary to issue an RFE to clarify the requestor's full legal name. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Identity |

# f. Under 16 at Entry

| | |
|---|---|
| Title | Absent From U.S. on 16th Birthday |
| Question | Can a DACA requestor meet the "Under 16 at Entry" guideline if the requestor entered the U.S. before turning age 16 but was not present in the U.S. on his/her 16th birthday? |
| Answer | **Interim Operational Guidance:**<br><br>This guidance addresses the following fact situation: The DACA requestor entered the United States before turning age 16 but was not present in the United States on his or her 16th birthday. If all the other DACA guidelines are met (including continuous residence since June 15, 2007), the question is whether the person "established residence" in the United States before turning age 16. If the requestor demonstrated by a preponderance of the evidence that, before turning 16, he or she (a) attended an educational institution in the United States for any length of time; or (b) was employed in the United States for any length of time; or (c) was physically present in the United States for a consecutive period of at least 24 months, then residence before age 16 has been established.<br><br>If the requestor does not satisfy (a), (b) or (c) with evidence provided with the initial filing, then take the following action:<br><br>1. Issue a RFE using DACA 103B Call Up (located on the DACA ECN site under *SOP and Templates*) to request evidence that the requestor established residence before turning age 16.<br><br>2. Once a response is received, determine whether the requestor has satisfied (a), (b) or (c).<br><br>3. If the requestor satisfies (a), (b) or (c), then the requestor has demonstrated that he or she meets the guideline.<br><br>4. If the requestor does not satisfy (a), (b) or (c), consider the totality of the circumstances to evaluate whether he or she nonetheless established residence in the United States before age 16, including any evidence of |

| | |
|---|---|
| | the requestor's pre-age-16 ties to the community such as participating in neighborhood, religious, or other community activities. In novel, complex, or sensitive cases, supervisors will refer the case to HQSCOPS, through the normal chain of command. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Under 16 at Entry |

## g. Unlawful Immigration Status

## Q1.

| | |
|---|---|
| Title | Deferred Enforced Departure (DED) |
| Question | Is a DACA requestor disqualified from satisfying the "unlawful immigration status as of 6/15/2012" guideline if he/she is a beneficiary of Deferred Enforced Departure (DED)? |
| Answer | No; DED is not considered lawful immigration status for DACA purposes. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Unlawful Immigration Status |

## Q2.

| | |
|---|---|
| Title | Age outs within the DACA Context |
| Question | Can a DACA requestor satisfy the "Unlawful Immigration Status on June 15, 2012" guideline if he or she was admitted for "duration of status" or for a period of time that extended past June 14, 2012 but technically "aged out" of their dependent nonimmigrant status on June 15, 2012? |
| Answer | For the purposes of satisfying the DACA "Unlawful Immigration Status on June 15, 2012" guideline (meaning the person needed to be out of status on June 15, 2012), persons who were admitted for "duration of status" or for a period of time that extended past June 14, 2012 but technically "aged out" of their dependent nonimmigrant status, before June 15, 2012, will be considered persons whose lawful immigration status had expired as of |

DEF - 00003646

|  | June 15, 2012. |
| --- | --- |
| Associated Form |  |
| DACA Category | Guidelines |
| Sub-Category | Unlawful Immigration Status |

## Q3.

| Title | Status Terminated in SEVIS within the DACA Context |
| --- | --- |
| Question | Can a DACA requestor satisfy the "Unlawful Immigration Status on June 15, 2012" guideline if his or her status is listed as "terminated" in SEVIS? |
| Answer | Yes, assuming the requestor satisfies all other DACA guidelines, if his or her status on or before June 15, 2012 is listed as "terminated" in SEVIS and he or she did not otherwise have legal status, DHS will consider his or her lawful immigration status to have expired as of June 15, 2012 for DACA purposes. |
| Associated Form |  |
| DACA Category | Guidelines |
| Sub-Category | Unlawful Immigration Status |

## Q4.

| Title | Canadians who entered as "non-controlled" aliens within the DACA Context |
| --- | --- |
| Question | Can a DACA requestor satisfy the "Unlawful Immigration Status on June 15, 2012" guideline if he or she entered as a "non-controlled" alien at the border? |
| Answer | For DACA purposes only, a Canadian citizen who was admitted as a visitor for business or pleasure and not issued an I-94, Arrival/Departure Record, (also known as a "non-controlled" Canadian nonimmigrant) will be deemed to have been lawfully admitted for a period of six months unless the individual can demonstrate, through verifiable evidence, that he or she was specifically advised that his or her admission would be for a different length of time. Accordingly, if DHS is able to verify from its records that his |

DEF - 00003647

| | |
|---|---|
| | or her last non-controlled entry occurred on or before December 14, 2011, DHS will consider his or her nonimmigrant visitor status to have expired as of June 15, 2012 and he or she may be considered for deferred action under this process. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Unlawful Immigration Status |

## Q5.

| | |
|---|---|
| Title | Border Crossing Cards Admissions within the DACA Context |
| Question | Can a DACA requestor satisfy the "Unlawful Immigration Status on June 15, 2012" guideline if he or she was admitted with a border crossing card (BCC)? |
| Answer | For DACA purposes only, a BCC holder who satisfies all other DACA guidelines, and who is admitted as a visitor and is not issued an I-94, Arrival/Departure Record, will be deemed to have been lawfully admitted for a period of thirty days unless the individual can demonstrate, through verifiable evidence, that he or she was specifically advised that his or her admission would be for a different length of time. Accordingly, if DHS is able to verify from its records that his or her last admission using a BCC occurred on or before May 15, 2012, DHS will consider his or her nonimmigrant visitor status to have expired as of June 15, 2012 and he or she may be considered for deferred action under this process. |
| Associated Form | |
| DACA Category | Guidelines |
| Sub-Category | Unlawful Immigration Status |

## V.    Other

## a) Another USCIS Form Pending/Approved

DEF - 00003648

## Q1.

| | |
|---|---|
| Title | Acquired Lawful Immigration Status After 6/15/2012 |
| Question | If a DACA requestor was not in lawful immigration status on June 15, 2012 but acquired lawful immigration status after June 15, 2012, can USCIS defer action under DACA if the requestor appears to meet all of the other DACA guidelines? |
| Answer | The "Unlawful Immigration Status" guideline only addresses immigration status on June 15, 2012. However, USCIS has determined that we will not defer action under DACA for an individual who is currently in lawful immigration status. Therefore, if a DACA requestor acquired lawful immigration status after June 15, 2012 and remains in lawful immigration status at the time of adjudication of the DACA request, we will not defer action under DACA as a matter of discretion. SCOPS added a denial template to the DACA ECN site for this purpose under SOP and Templates. |
| Associated Form | |
| DACA Category | Other |
| Sub-Category | Another USCIS Form Pending/Approved |
| Attachments | |

## Q2.

| | |
|---|---|
| Title | A-file Requests from USCIS Field/Asylum Offices (Pending I-589/I-485/N-600) |
| Question | Can we transfer an A-file containing a pending DACA request to another USCIS office for adjudication of a pending I-589, I-485 or N-600? |
| Answer | Effective 3/12/2013, Centers may release an A-file to a USCIS Field or Asylum Office without SCOPS approval whenever the A-file request is based upon adjudication of a pending Form I-589, Form I-485 (or motion to reopen/reconsider I-485), or Form N-600 located within the requesting office **unless** the requestor's case contains novel, complex, or sensitive information (i.e. national security concern, currently in detention, etc.). In these instances, Centers are instructed to notify SCOPS of the novel, complex, or sensitive information within the case and wait for approval to release the A-file. The Center will hold adjudication of the Forms I-821D and I-765 and send the A-file with the DACA forms pending. Prior to release, the Center should coordinate with its Records Division to identify a POC within the requesting office so the POC can be informed that the A-file must be returned as soon as final adjudication is rendered so appropriate action can be taken on the DACA forms.

Once the A-file is returned to the Center, the Center should take the following action: (1) if the USCIS Field/Asylum Office approves the pending application/petition, the Center should deny the I-821D/I-765 using the template entitled "Acquired Lawful Status After 6 15 2012 Denial OCC cleared 1 28 13." URL to template: http://ecn.uscis.dhs.gov/team/scops/HQSCOPS/StatFam/DACA/SOP/Acquired%20Lawful%20Status%20Af |

DEF - 00003649

ter%206%2015%202012%20Denial%20OCC%20cleared%201%2028%2013.pdf; otherwise, (2) if the USCIS Field/Asylum Office denies the pending application/petition, the Center should adjudicate the DACA forms based upon current procedures and practices.

Please let the SCOPS know if you have any questions by emailing HQSCOPSDACA@uscis.dhs.gov or by raising questions/concerns during the bi-weekly DACA Teleconference.

| | |
|---|---|
| Associated Form | |
| DACA Category | Other |
| Sub-Category | Another USCIS Form Pending/Approved |

## Q3.

| | |
|---|---|
| Title | DACA Requestors with Pending VAWA, T and U Applications |
| Question | How should a Center process Form I-821D when the requestor has a pending VAWA, T and U Application? |
| Answer | The TSC, NSC, & CSC must transfer all DACA packages (Form I-821D/Form I-765/Form I-765WS) with pending VAWA, T & U applications to the VSC for adjudication. |

    1.  TSC, NSC, CSC Contractor receives a T-File with Form I-821D enclosed.
    2.  TSC, NSC, CSC Contractor searches CIS and reviews individual's CIS 9101 Screen.
    3.  Whenever code 384 is reflected within the COA field of the 9101 Screen, TSC, NSC, CSC Contractor sends an e-mail to the VSC's VAWA customer service duty desk email account DutyDesk.VAWA@uscis.dhs.gov to verify whether or not there is a pending VAWA, T, U application/petition.
    4.  If there is pending VAWA T, U application/petition, the T-File will be relocated to the VSC for processing.
    5.  The VSC will request biometric transfer for relocated DACA package.

Note: A-File should already be located at the VSC for purposes of T-File/A-File consolidation. Also, there is no legal requirement for USCIS to utilize the safe address process for DACA filings.

| | |
|---|---|
| Associated Form | |

DEF - 00003650

| DACA Category | Other |
|---|---|
| Sub-Category | Another USCIS Form Pending/Approved |
| Attachments | |

## Q4.

| Title | How to Handle a Pending I-821D with a Related "CITRIX" / EOIR I-485. |
|---|---|
| Question | How should a Center process a pending Form I-821D when a requestor has a related "CITRIX" / EOIR I-485, Application to Register Permanent Residence or Adjust Status? |

**Answer**

Eligible individuals in removal proceedings can apply for various immigration benefits. In order to file their applications with the Immigration Court, these individuals must file a copy of the Form I-485 with the corresponding fee with the Texas Service Center. These forms look like regular filings; however the **EOIR I-485** appears in **CLAIMS** with an "**X**" in the current status field as shown in the **Image A** below. The Texas Service Center will issue a receipt notice to the applicant and retain the copy of the form for a period of six months. **Centers should not attempt to request this copy. Once an EOIR I-485 has been identified, Centers should check the Central Index System (CIS) to verify if the Immigration Judge rendered a decision.** See **Image B**. **If Lawful Permanent Status was not granted, a pending Form I-821D should be adjudicated on its merits even if the case remains open in CITRIX.**

**Image A.**



DEF - 00003651

**Image B.**



| Associated Form | I-485 |
| --- | --- |
| DACA Category | Other |
| Sub-Category | Another USCIS Form Pending/Approved |

## Q5.

| Title | Acquired Deferred Action Pursuant to Other Programs |
| --- | --- |
| Question | How should centers process Form I-821D when the DACA requestor has acquired deferred action pursuant to other programs? |
| Answer | Deferred action does not confer lawful status; however, for future inadmissibility based upon unlawful presence, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect. Deferred action for childhood arrivals is one form of deferred action. The relief an individual receives pursuant to the deferred action for DACA is identical for immigration purposes to the relief obtained by any person who receives deferred action as an act of prosecutorial discretion.

Individuals who receive deferred action through other programs may be eligible for DACA. However, if at the time of the adjudication of the DACA request, the requestor already has an unexpired deferred action, USCIS will deny their DACA |

DEF - 00003652

| | |
|---|---|
| | request. USCIS also wants to prevent issuing two employment authorization documents to the same individual.<br><br>Centers shall use the Form I-821D Denial - USCIS Already Deferred Action Pursuant to Other Programs template the for the purpose of denying these cases. |
| Associated Form | |
| DACA Category | Other |
| Sub-Category | Another USCIS Form Pending/Approved |

## b) DACA Validity Period

| | |
|---|---|
| Title | Start Date of the DACA Renewal Validity Period |
| Question | What is the start date of the DACA renewal validity period? |
| Answer | Validity dates for Renewals will begin the date of the adjudication. However, final adjudication should not occur more than 60 days prior to the expiration of the previous DACA validity period. |
| Associated Form | I-765 |
| DACA Category | Other |
| Sub-Category | DACA Validity Period |

## c) I-290B

## Q1.

| | |
|---|---|
| Title | How to process a Form I-290B, Notice of Appeal or Motion, based on a denial of a Form I-821D. |
| Question | Should the Service Centers reject a Form I-290B, Notice of Appeal or Motion, based on a denial of a Form I-821D? |

DEF - 00003653

| Answer | Under review. |
|---|---|
| Associated Form | I-290B |
| DACA Category | Other |
| Sub-Category | I-290B |

## Q2.

| Title | How to process a Form I-290B, Notice to Appeal or Motion, based on a denial of a Form I-765. |
|---|---|
| Question | Should the Service Centers process a motion based on a Form I-765 that was denied for abandonment in accordance with regulations? |
| Answer | Yes, the Service Center should process the form in accordance with regulations. |
| Associated Form | I-290B |
| DACA Category | Other |
| Sub-Category | I-290B |

## d) I-824

| Title | I-824 with Fee to Request a Duplicate I-821D Approval Notice |
|---|---|
| Question | Are DACA recipients required to file Form I-824, Application for Action on an Approved Application or Petition, with fee to request a duplicate Form I-821D approval notice? |
| Answer | Yes, DACA recipients must file Form I-824 with fee *any time* they want to request a duplicate notice. The duplicate notice for Form I-821D may be system generated or manually produced with the same verbiage as CLAIMS 3. The information on the duplicate approval notice must be the exact language as reflected on the original Form I-797, Notice of Action. Form I-824 cannot be filed to request a copy of the of an approval notice if a DACA request has been denied, |

DEF - 00003654

| | terminated, or withdrawn. |
|---|---|
| Associated Form | |
| DACA Category | Other |
| Sub-Category | I-824 |

## e) Other

## Q1.

| Title | Duplicate Filings |
|---|---|
| Question | How should we proceed when an individual files more than one DACA request? |
| Answer | If the first request was approved before the second request was filed, deny the other request using the DACA 502B call-up entitled "USCIS Already Deferred Action," from Appendix K.<br><br>If the first request was denied before the second request was filed, consider the second request on its merits.<br><br>If the first request was still pending when the second request was filed, the ISO should review both requests and supporting documentation. If it is the same requestor and there are no articulable elements of fraud, then the ISO should take the following action:<br><br>f after reviewing both requests, only one request is approvable and there is no derogatory information in the other request that would otherwise disqualify the requestor:<br><br>Approve the request that is approvable.<br>Deny the other request using the DACA 502B call-up entitled "USCIS Already Deferred Action."<br><br>f after reviewing both requests, both requests are approvable:<br>Approve the request that was received first.<br>Deny the other request using the DACA 502B call-up entitled "USCIS Already Deferred Action."<br><br>f after reviewing both requests, neither request is approvable:<br>Take action on each case as separate requests based on the merits of each case (i.e., RFE if insufficient evidence, NOID if clearly does not meet guidelines, etc.).<br><br>f one or both requests become approvable after the RFE/NOID response is received, follow the guidance listed in a) or b) above for those scenarios.<br><br>f neither request becomes approvable, deny both requests using the appropriate checkbox or paragraph within Appendix F or Appendix K. |
| Associated Form | |

DEF - 00003655

| DACA Category | Other |
| --- | --- |
| Sub-Category | Other |

## Q2.

| Title | Preparing a SCOPS File/Information Request Worksheet |
| --- | --- |
| Question | How should centers prepare a SCOPS DACA FILE / INFORMATION REQUEST WORKSHEET for HQ review? |
| Answer | When an LEA requests DACA information, the BCU DACA Team should: |
| | Ask the LEA the questions that are on the Worksheet. |
| | Complete the Worksheet based on LEA's answers. |
| | Vet the answers. It is particularly important for the LEA to state unambiguously whether the action is an enforcement priority. |
| | Ask if a copy of the A-file would be acceptable if the LEA requests the A-file. This is in the event that USCIS is unable to provide the original in a timely manner. |
| | Review the DACA request and identify any derogatory information. Inform SCOPS whether the case is deniable when forwarding the Worksheet. |
| | Centers should email all worksheets to the HQSCOPSDACA mailbox with the following subject line: |
| | DACA Info Request/LLLXXXX/A#### |
| | where: |
| | LLL is the first three letters of the I-821D receipt number; |
| | XXXX is the last 4 numbers of the I-821D receipt number; and |
| | #### is the last 4 numbers of the DACA requestor's A-number. |
| Associated Form | |
| DACA Category | Other |
| Sub-Category | Other |

DEF - 00003656

## VI.    Removal Proceedings

## Q1.

| VII.    Title | ICE Already Deferred Action Under DACA |
| --- | --- |
| Question | What should we do when ICE defers action under DACA but the DACA recipient files a complete DACA packet instead of simply requesting employment authorization? |
| Answer | When ICE defers action under DACA, sometimes the DACA recipient files the complete DACA packet instead of simply requesting an EAD. In such cases, you should be able to verify in EARM that ICE deferred action under DACA. If ICE already deferred action under DACA, the I-821D should be denied using the DACA 502 call-up in Appendix K, and the I-765 should be adjudicated based on the decision made by ICE. |
| Associated Form | |
| DACA Category | Removal Proceedings |
| Sub-Category | Other |
| Attachments | |

## Q2.

| Title | Immigration Detention After Filing Form I-821D |
| --- | --- |
| Question | How should we process a DACA request when the requestor was placed in immigration detention <u>after</u> filing Form I-821D? |
| Answer | If DHS electronic systems or information received from ICE identifies the requestor as having been placed in immigration detention after filing his/her Form I-821D, the Center should follow the below procedures.<br><br>The BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.<br><br>1.  If ICE indicates that the requestor is an ICE enforcement priority, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "you have not established that you warrant a favorable exercise of prosecutorial discretion." USCIS will notify ICE once the denial notice is issued<br>2.  If ICE indicates that the case is not an ICE enforcement priority and ICE |

DEF - 00003657

| | |
|---|---|
| | intends to physically release the requestor, the case will be adjudicated on its merits. A review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.<br><br>If the BCU disagrees with ICE's determination of whether or not the requestor is an enforcement priority, the BCU should ask the Service Center's local counsel for assistance in contacting local ICE counsel to discuss the reasons why USCIS disagrees with ICE's determination. The Service Center's local counsel can seek assistance from USCIS Headquarters' Office of the Chief Counsel to contact ICE, if necessary. |
| Associated Form | |
| DACA Category | Removal Proceedings |
| Sub-Category | Other |

DEF - 00003658

# DEF-INTERV.

# EX. 156

# United States Citizenship and Immigration Services



## STANDARD OPERATING PROCEDURES FOR HANDLING
## DEFERRED ACTION REQUESTS AT USCIS FIELD OFFICES

United States Citizenship and Immigration Services
111 Massachusetts Avenue, NW, Second Floor
Washington, DC  20529-2030

Version 1.0
3/7/2012

# Table of Contents

**Introduction** ...............................................................................................................3

    I.    General Information.................................................................................3

    II.    Request for Deferred Action ...................................................................3

    III.    Field Office Intake ...................................................................................4

    IV.    Field Office Review..................................................................................5

    V.    Security Checks .......................................................................................5

    VI.    Recommendation and Determination .....................................................5

    VII.    Employment Authorization.....................................................................6

    VIII.    Data Collection .......................................................................................6

    IX.    Termination of Deferred Action .............................................................7

# Appendices

Appendix A: Approval Notice Template.................................................................8

Appendix B: Non-Approval Notice Template.......................................................10

Appendix C: Non-Approval Notice Template (Requestor in Removal Proceedings)..................12

| Introduction | This Standard Operating Procedure (SOP) applies to all requests for deferred action (initial and renewal) handled at USCIS Field Offices. This SOP is not intended to supersede any existing policy or guidance related to deferred action handled at USCIS Service Centers (Violence Against Women Act (VAWA); A-3, G-5, T and U nonimmigrant visa related deferred action). |
|---|---|
| **I. General Information** | Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. A USCIS Field Office Director (FOD) may, in his or her discretion, recommend deferral of removal, but the recommendation must also be reviewed and recommended by the USCIS District Director (DD). Deferred action requests received and recommended by a DD directly do not require review and recommendation by the FOD. The final determination to defer action rests solely with the USCIS Regional Director (RD). Deferred action: <ul><li>is an exercise of prosecutorial discretion *not* an application for a benefit</li><li>does not confer any immigration status upon an alien</li><li>if granted, stops accrual of unlawful presence, as defined in section 212(a)(9) of the Immigration and Nationality Act (INA)</li><li>does not eliminate any periods of unlawful presence accrued prior to approval of or after the effective date that deferred action is terminated</li><li>does not alter the status of any alien who is present in the United States without being inspected and admitted or the status of any other alien statutorily ineligible to adjust</li></ul> |
| **II. Request for Deferred Action** | **Formal Request by Individual and/or Legal Representative** <br> A request for deferred action can be made in writing and signed by the requestor.[1] No fee is required for a deferred action request. The requestor or his or her legal representative may either make an INFOPASS appointment to present the request, or submit the request by mail to the USCIS field office having jurisdiction over the requestor's place of residence. To support a deferred action request, the requestor may provide: <ul><li>An explanation as to why he or she is seeking deferred action including any supporting documentation (e.g., medical information, evidence of community and familial ties and equities, conditions in the requestor's country of origin, etc.)</li><li>Proof of identity and nationality, including a birth certificate, a passport and/or Identification Card, driver's license, notarized affidavit(s), school or medical records, etc.</li><li>Any document the requestor used to lawfully enter the United States including, but not limited to, Form I-94, Arrival/Departure Record, a passport with visa and/or admission stamp, and any other documents issued by other components of DHS or legacy INS</li><li>Form G-325A Biographic Information</li><li>A requestor who has legal representation must submit a properly completed Form G-28, Notice of Entry as Attorney or Accredited Representative</li></ul> Prior to accepting a request, if a requestor reveals that they are in removal |

---

[1] For purposes of this SOP "requestor" means the actual person who seeks deferral of any removal action against him/her, not an attorney or representative making the request on their behalf. The requestor may be making the request for his/her entire family unit.

| | |
|---|---|
| | proceedings, direct them to U.S. Immigration and Customs Enforcement (ICE) for submission of the deferred action request.<br><br>**Requests Initiated by USCIS**<br>An Immigration Services Officer (ISO), Supervisory ISO (SISO), FOD, or DD, may encounter cases during his or her normal course of business that they feel warrant deferred action. Cases encountered by the FOD or DD that they feel warrant deferred action will follow the procedures provided in this SOP. Cases encountered by an ISO/SISO that they believe merit deferred action:<br>• Must have all of the file searches and security checks completed (No referral will be made for fingerprints until after the FOD concurs with the ISO/SISO)<br>• Must be presented by the ISO/SISO to the FOD for his or her recommendation (the FOD may require a memo from ISO/SISO with justification);<br>**Then**,<br>• If the FOD makes a favorable recommendation, follow the procedures provided in this SOP<br>• If the FOD does not concur with the ISO/SISO recommendation, the FOD will annotate the A/T-file with a brief description of the reason for not favorably recommending deferred action, then forward to the DD for review. If the DD concurs with the FOD not to recommend deferred action, the file does not need to go to the RD. If, however, the DD feels that deferred action is warranted, follow the procedures provided in this SOP. |
| **III. Field Office Intake** | Upon receiving the deferred action request and supporting document(s), the USCIS field office will:<br><br>1. Verify that the requestor resides in the jurisdiction of the field office.<br>2. Search for and request any A/T-files associated with the requestor and any family member(s) included in the request.<br>3. If no existing A-file was located after a thorough search of the Computer Linked Application Information Management System version 3 (CLAIMS3), Central Index System (CIS) and the National File Tracking System (NFTS), create a new A-file.<br>4. Create a T-file for temporary storage of the deferred action request and supporting documents if an A-file exists but has not yet been received, is lost, or is digitized.<br>5. Initiate TECS checks for requestor and any family member(s) included in the request who are 14 years of age or older.<br>6. Schedule the requestor and any included family member(s) who are 14 years of age or older for fingerprints as appropriate.*<br>7. Notify the USCIS Regional Office of the receipt of the deferred action request (see section VIII "Data Collection").<br>8. Record into the Enterprise Performance Analysis System (ePAS) "Inventory" for statistical purposes (see section VIII "Data Collection").<br><br>*If fingerprints are expired or were not previously captured, schedule for an appointment at the Application Support Center (ASC) for a 10-print biometrics capture (Code 1).  No fee will be charged for the capture of such biometrics. As appropriate, the capture of biometrics may be waived pursuant to the ASC SOP.<br><br>*A-File not Received or Lost*<br>After two weeks from the initial A-file(s) request, if the requested A-file(s) is/are |

Confidential

|  | not received, the field office should notify its local records supervisor to seek express shipment of the A-file(s) from the other File Control Office (FCO). Where a related A-file has been determined to exist, no action on the request shall be made until all of the permanent A-file(s) has/have been obtained and reviewed. Where an A-file cannot be found and has been officially recorded as lost, the FOD will make a notation in the recommendation that the file is lost and proceed with the recommendation. Create a substitute file in accordance with Chapter II-05 of the Records Operations Handbook (ROH).<br><br>**_Digitized A-file_**<br>If the A-file has been digitized, the file will be reviewed in Enterprise Document Management System (EDMS). The recommendation and action on the request will be made as if the office had the physical file. The deferred action request and any documents relating to the request will remain in the T-file. Upon completion of the request, the local field office will send the T-file to the Records Digitization Facility (RDF), for interfiling of material, in accordance with <u>Digitization Customer Guide</u>. |
| **IV. Field Office Review** | Upon receipt of all A/T-files associated with the requestor and any included family member(s), the field office will ensure that NFTS and CIS are updated to show receipt of the file(s) and will consolidate all files per the ROH. Field office review of the deferred action request will include, but not be limited to:<br>• A review of the request, supporting documents, and contents of all file(s) to check for other forms of available relief<br>• A search of CIS, NFTS, CLAIMS3 to ensure that all other files have been located and to see if the requestor has submitted any applications<br>• A review of any additional files or applications located in the above search<br>• The completion of security checks and resolution of any issues as provided in the "Security Checks" section of this SOP<br>• A determination of whether the requestor has ever been in deportation, removal or exclusion proceedings, to determine how such proceedings will impact the request<br>• An interview if deemed necessary by the field office<br><br>After the deferred action request is accepted by the field office and if it is determined that removal proceedings are pending against the requestor or included family member(s), follow the instructions in section VI for "Deferred Action Not Granted". |
| **V.  Security Checks** | The following must be done before a recommendation for deferred action can be completed:<br>1. Initiate TECS and fingerprint checks for requestor and any included family member(s) aged 14 or older as soon as possible if not previously initiated or the checks have expired.<br>2. Review the FBI fingerprint check and TECS query results and resolve any fingerprint IDENTs or positive TECS hits per the National Background Identity and Security Checks Operating Procedure (NaBISCOP).<br>3. Document that the above checks were done and any necessary resolutions have been completed in accordance with the NaBISCOP.<br>4. Any hits related to national security concerns must be processed in accordance with the Controlled Application Review and Resolution Program (CARRP).<br>5. Follow existing procedures for addressing any warrant of arrest, outstanding orders of removal or deportation issues the requestor may have. |

Confidential

DEF - 00000011

| | |
|---|---|
| | 6.   Any criminal and/or national security related issues will be included in the FOD recommendation memo. |
| **VI. Recommendation and Determination** | Field offices will make every effort to ensure that deferred action requests are completed within 90 days. The request along with any supporting documents will remain in the A-file, or T-file if the A-file is lost or digitized, and be routed as follows:<br><br>1.   The FOD will prepare a memo with a case summary and recommendation. If recommending grant, the memo will also include a recommended duration of deferred action not to exceed (2) two years. A completed Form G-312, Deferred Action Case Summary, (Attachment 1) will also be submitted with the memo. If deferred action is recommended, the FOD will sign and date the appropriate section at the bottom of Form G-312. If not recommended, the FOD will strike out "Recommended" and write "Not Recommended" then sign and date. The case will then be sent to the DD.<br>2.   The DD will then review the FOD recommendation, the deferred action request, and A/T-file to make his or her recommendation. If deferred action is recommended, the DD will sign and date the appropriate section at the bottom of Form G-312. If not recommended, the DD will strike out "Recommended" and write "Not Recommended" then sign and date. The DD may attach a separate sheet of paper or memo to Form G-312 if he or she has any additional comments. The A-file with Form G-312 and all attachments will then be sent to the RD.<br>3.   The RD will review and make the final determination. If deferred action is granted, they will then sign and date the appropriate section at the bottom of Form G-312 and notate the duration of the deferred action (1 year, 2 years, etc., not to exceed 2 years). If not granted, the RD will strike out "Granted" and write "Not Granted" then sign and date. The RD will notify the DD and the FOD of the final determination, update the deferred action spreadsheet, and return the file to the appropriate field office. The Form G-312 containing the final determination and any attachments will remain in the A-file or T-file.<br><br>*Deferred Action Granted:*<br>1.   Update ePAS for statistical count (see "Data Collection").<br>2.   Provide the requestor and any included family member(s) with a grant notice (Appendix A).<br>3.   Deferred action is not an admission, however for tracking purposes; update the CIS Class of Admission (COA) code to reflect Deferred Action Status (DAS).<br><br>*Deferred Action Not Granted:*<br>1.   Update ePAS for statistical count (see "Data Collection").<br>2.   Provide the requestor and any included family member(s) with a non-grant notice (if the requestor or included family member(s) is/are currently in removal proceedings, use the template in Appendix C. The template in Appendix B will be used for all others).<br>3.   The field office will review and determine whether issuance of a Notice to Appear (NTA) is appropriate. (See most current NTA Policy.)<br><br>There is no appeal to a request that is not granted, but the requestor can submit additional evidence to request reconsideration of the determination or a new request for deferred action can be submitted. |

Confidential

| | |
|---|---|
| **VII. Employment Authorization** | Persons granted deferred action may apply for an Employment Authorization Document (EAD) under Title 8 Code of Federal Regulations (8 CFR) section 274a.12(c)(14). To apply, they must file Form I-765, Application for Work Authorization, in accordance with the form instructions. |
| **VIII. Data Collection** | Deferred action requests and final determination information will be reported in both ePAS and on the regional deferred action spreadsheet:<br><br>*ePAS Reporting*<br>The "USCIS ePAS Administrative Manual for Data Entry (version 1.0), July 15, 2011," provides guidance for USCIS employees on activity and time reporting in ePAS. In accordance with this manual the counts and time for deferred action will be captured as follows:<br><br>• Upon initial receipt of any deferred action request, the field office will capture the receipt via the "Inventory" section of ePAS<br>• A deferred action determination is not an adjudication; however, the field office will use the "Adjudication" section to capture the final determination information. Any officer or clerical hours spent on review and/or processing of deferred action requests will also be captured in this section<br>• The "Transfer In" and "Transfer Out" portion will not be used when forwarded to the DD and RD. It is only for use when transfers to other field offices are necessary due to jurisdictional changes<br><br>*Deferred Action Spreadsheet Reporting*<br>Field offices will notify the regional office POC when receiving deferred action requests. The regional office POC will update all pertinent data fields on the deferred action spreadsheet when a case is received and granted, not granted, or terminated. The deferred action spreadsheet will be posted to the ECN website, available for the regional offices to make their monthly updates under their specific tab. The National Benefits Center (NBC) will collect the data monthly and create a master rollup report by region. |
| **IX.  Termination of Deferred Action** | If the RD determines that deferred action is no longer warranted, he or she will terminate the deferred action and notify the FOD and DD of the termination. There is no appeal of the decision to terminate deferred action. Upon termination the field office will:<br>• Retrieve the A-file<br>• Notify the individual, in writing, of the termination of the deferred action. This notice will also include information regarding the termination of any advance parole document obtained under the condition of deferred action<br>• Notify the individual, in writing, of the revocation of any EAD obtained under the condition of deferred action in accordance with 8 CFR 274a.14(b)<br>• Place a copy of the above notifications in the A-file<br>• Update the COA code in CIS to reflect Deferred Action Terminated (DAT). As noted previously deferred action is not an admission, however for tracking purposes CIS will be updated.<br>• Notify the NBC once the final EAD revocation is completed, via the NBCFIELD mailbox.  Attach a copy of the termination and revocation notices to the email.<br>• Review current NTA Policy to determine whether issuance of a NTA is appropriate. |

Confidential

| | Once the NBC receives notification from a field office of an EAD revocation, they will update CLAIMS 3 to reflect that the EAD has been revoked. |
|---|---|

# **Appendix A:**

# **Grant Notice Template**

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
[Office Address]



**U.S. Citizenship
and Immigration
Services**

**DATE**

**NAME
STEET
CITY, STATE ZIP**

Re: Name; A#

Dear **NAME**:

This is to advise you that effective **[date]** you have been granted deferred action for a period of (**fill in date, not to exceed two years**). The action will expire on **[fill in date, not to exceed two years]**.

Deferred action is an exercise of prosecutorial discretion by U.S. Citizenship and Immigration Services (USCIS) not to pursue the removal of an individual from the United States. A grant of deferred action by USCIS does not confer or alter any immigration status and does not affect any period of prior unlawful presence. A grant of deferred action does not convey or imply eligibility for any waivers of inadmissibility that may exist, regardless of whether or not that inadmissibility is known to the U.S. Department of Homeland Security (DHS) at the time of the request for deferred action. Likewise, deferred action cannot be used to establish eligibility for any immigration benefit that requires maintenance of lawful status. Periods of time in deferred action do, however, qualify as periods of stay authorized by the Secretary of DHS for purposes of section 212(a)(9)(B) and (C) of the Immigration and Nationality Act.

As a person granted deferred action, you are eligible to apply for employment authorization if you can establish an economic necessity for employment. If you wish to apply, please submit Form I-765, Application for Employment Authorization. The form and filing instructions can be found on the USCIS website at www.uscis.gov. A copy of this letter and the required fee must accompany the I-765 at the time of application.

You may request continuation of deferred action by submitting a request to your local USCIS office. To avoid accruing unlawful presence we recommend that you submit your request ninety (90) days prior to the expiration of any currently authorized period of deferred action. The request should include current evidence to support deferred action continuation.

Please note, you are required to notify USCIS if you change your address. To report your change of address you must submit Form AR-11, Alien's Change of Address Card. This form and filing instructions can be found on the USCIS website mentioned above. There is no fee associated with this form.

If you leave the United States, this grant of deferred action will be automatically terminated. A criminal conviction may also result in the termination of deferred action.

Sincerely,
**NAME**
**District Director**

STANDARD OPERATING PROCEDURES FOR HANDLING DEFERRED ACTION REQUESTS AT USCIS FIELD OFFICES

9

# Appendix B:

# Non-Grant Notice Template

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
[Office Address]



**U.S. Citizenship
and Immigration
Services**

DATE

NAME
STEET
CITY, STATE ZIP

Re: Name; A#

Dear NAME:

Thank you for your request for deferred action, an exercise of prosecutorial discretion by USCIS. We have carefully considered your request and we are not able to extend deferred action to you at this time.

Denial of a request for deferred action does not necessarily mean that USCIS intends affirmatively to pursue your removal.

[If applicable also include: USCIS will forward your approved I-130 petition to the National Visa Center for consular processing. or if your pending I-130 petition is approved, USCIS will forward it to the National Visa Center for consular processing.]

If you require additional assistance, forms or filing instructions, we invite you to visit our website at www.uscis.gov or contact USCIS National Customer Service Center at 1-800-375-5283.

This determination may not be appealed. However, if your circumstances change in a way that you believe materially affects the merits of your request for deferred action, you may bring those circumstances to our attention in a new request.

Sincerely,


NAME
District Director

Confidential                                     DEF - 00000017

# Appendix C:

# Non-Grant Notice Template (Requestor in Removal Proceedings)

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
[Office Address]



**U.S. Citizenship and Immigration Services**

DATE

NAME
STEET
CITY, STATE ZIP

Re: Name; A#

Dear NAME:

Thank you for your request for deferred action, an exercise of prosecutorial discretion by USCIS. We have carefully considered your request and we are not able to extend deferred action to you at this time.

Our records show that you are currently in immigration removal proceedings, therefore please direct your request for deferred action to U.S. Immigration and Customs Enforcement (ICE).

[If applicable also include: USCIS will forward your approved I-130 petition to the National Visa Center for consular processing. or if your pending I-130 petition is approved, USCIS will forward it to the National Visa Center for consular processing.]

If you require additional assistance, forms or filing instructions, we invite you to visit our website at www.uscis.gov or contact USCIS National Customer Service Center at 1-800-375-5283.

This determination may not be appealed. However, if your circumstances change in a way that you believe materially affects the merits of your request for deferred action, you may bring those circumstances to our attention in a new request.

Sincerely,

NAME
District Director

Confidential

# DEF-INTERV.

# EX. 157

*Philadelphia Field Office*

**U.S. Department of Homeland Security**
30 North 41st Street
Philadelphia, PA 19104



**U.S. Citizenship
and Immigration
Services**

# Interoffice Memorandum

To:    File

From:  Evangelia A. Klapakis
       Field Office Director
       Philadelphia Field Office

Date:  June 28, 2018

Re:    Request for Deferred Action

File Number:            _____
Name:                   _____
Date of Birth:          _____
Country of Birth:       _____
Date of Request:        _____
Principal Alien:        _____
Riding Family Members:  _____
Date of Entry:          _____
Manner of Entry:        _____

Adverse Factors Effecting Inadmissibility, Removability, or a Favorable Exercise of Discretion:

Details of Requested Hardship:

Country Conditions Effecting Hardship:

Recommendation:
Recommended – ☐        Not Recommended – ☐

Duration Recommended:   _____

www.uscis.gov

Request for Deferred Action
Page 2 of 2
Attachment (1)

DEF - 00000073

# DEF-INTERV.

# EX. 158

**From:** Lewis, Theodore R <█████████@uscis.dhs.gov>
**Sent:** Friday, June 19, 2015 12:58 PM
**To:** Bagsic, Edgardo L <█████████uscis.dhs.gov>; Bronola, Christine <█████████@uscis.dhs.gov>; Carlson, Deborah M <█████████@uscis.dhs.gov>; Chavez, Jackie L <█████████uscis.dhs.gov>; Chhouy, Saobora <█████████@uscis.dhs.gov>; Choi, James W <█████████@uscis.dhs.gov>; Crowe, Torrey A <█████████@uscis.dhs.gov>; Curtis, Rana <█████████@uscis.dhs.gov>; Doan, Julie N <█████████@uscis.dhs.gov>; Fletcher, Gregory L <█████████@uscis.dhs.gov>; Ganuz, Brian Y <█████████@uscis.dhs.gov>; Han, Myung H <█████████@uscis.dhs.gov>; Hansen, Timothy K <█████████@uscis.dhs.gov>; Hoang, Amanda <█████████@uscis.dhs.gov>; Huynh, Helen <█████████@uscis.dhs.gov>; Ifemembi, Ogechi O <█████████@uscis.dhs.gov>; Jachin, Katherine P <█████████@uscis.dhs.gov>; Kim, Kyong Y <█████████@uscis.dhs.gov>; Kim, Soomin M <█████████@uscis.dhs.gov>; Lesher, Grace B <█████████@uscis.dhs.gov>; McClellan, James M <█████████@uscis.dhs.gov>; Mikalson, John B <█████████@uscis.dhs.gov>; Moselina, Nolasco M (Noli) <█████████@uscis.dhs.gov>; Murphy, Damiana Q <█████████@uscis.dhs.gov>; Nelson, Steven K <█████████@uscis.dhs.gov>; Nguyen, Hao A <█████████@uscis.dhs.gov>; Nguyen, Khanh K (Connie) <█████████@uscis.dhs.gov>; Nguyen, Thuc H <█████████@uscis.dhs.gov>; Nguyen, Trinnie C <█████████@uscis.dhs.gov>; Nguyen, Van T <█████████@uscis.dhs.gov>; Pascual, Marjorie L <█████████@uscis.dhs.gov>; Pham, Cindy P <█████████@uscis.dhs.gov>; Pham, Vincent <█████████@uscis.dhs.gov>; Phan, Cat Tuong T <█████████@uscis.dhs.gov>; Rili, Ana L <█████████@uscis.dhs.gov>; Rogers, Kathryne J <█████████@uscis.dhs.gov>; Ruiz, Jorge A <█████████@uscis.dhs.gov>; Salmons, Nelsy A <█████████@uscis.dhs.gov>; Sanchez, Diana C <█████████@uscis.dhs.gov>; Villalobos, Vanessa <█████████@uscis.dhs.gov>; Vu, Toan K <█████████@uscis.dhs.gov>; Wong, Suong T <█████████@uscis.dhs.gov>; Wright, Laura F <█████████@uscis.dhs.gov>
**Subject:** FW: ICE deferred action

FYI. With our increased volume of DACA work, you may run across a situation where it appears that Deferred Action was granted a DACA Requestor by ICE in some sort of action other than a DACA situation. Normally, an indicator of this will be that the EAD Card issued in conjunction with that action will have a C14 COA. If you run into this situation, the subsequent DACA filing is considered a Renewal and should be sent to NSC for adjudication. In this situation, the Requestors almost always do not get it right, and mark "Initial Filing" on the DACA form. They just don't know. But, the correct adjudicative action is to send the case to NSC as a renewal. Thank you Joe for passing on the information.

Ted

**From:** Kim, Kyong Y
**Sent:** Thursday, June 18, 2015 2:17 PM
**To:** Lewis, Theodore R
**Subject:** ICE deferred action

http://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-process/filing-

DEF - 00005021

tips-deferred-action-childhood-arrivals

## Part 1. Information About You *(For Initial and Renewal Requests)*

Part 1. Information about you (For Initial and Renewal Requests). If you are currently in immigration detention and believe you meet the guidelines, you may identify yourself to your deportation officer or Jail Liaison but you may not request consideration of deferred action from USCIS. You may also contact the U.S. Immigration and Customs Enforcement (ICE) Field Office Director. For more information visit ICE's website at http://www.ice.gov/. If you are in the custody of the Office of Refugee Resettlement and you think you may meet the guidelines of this process, you may contact ICE through the local ICE Office of the Chief Counsel with jurisdiction over your case.

Item Numbers 1.- 2. *Type of Request.* If you are submitting an Initial Request, select Item Number 1. If you are submitting a Renewal Request, select Item Number 2, and provide the expiration date of your most recent period of deferred action under DACA. This is also the date that your Employment Authorization Document (EAD) expires. If ICE initially deferred action in your case and you are seeking a renewal, select Item Number 2, provide the expiration date of your most recent period of deferred action under DACA, and respond to all subsequent questions on the form.

*Kyong "Joe" Kim*
Immigration Services Officer, WS14014, SZ 014
DHS | USCIS | CSC | Security & Fraud Branch | SFB-1 (BCU)
Phone: 949-389-████

DEF - 00005022

# DEF-INTERV.

# EX. 159



# I-360 SOP

**Prepared by:  Center Training Unit**
**Vermont Service Center**

**April 16, 2018**

DEF - 00004132

# Table of Contents

Overview .................................................................................................................... 3
    General .............................................................................................................. 3
    Form I-360 Overview ......................................................................................... 5
    Section 384 ......................................................................................................... 9
    Safe Address ..................................................................................................... 14
    Prima Facie Determination (PFD) .................................................................... 16
    Filing Requirements ......................................................................................... 18
Abuser's Status ........................................................................................................ 19
    Overview & Evidence ....................................................................................... 19
    USC/LPR Loss of Status or Death ................................................................... 21
    LPR Naturalizes ............................................................................................... 22
Qualifying Relationship ........................................................................................... 23
    Spouse .............................................................................................................. 23
    Spouse: INA 204(c) and 204(g) ........................................................................ 27
    Child ................................................................................................................ 30
    Parent .............................................................................................................. 35
    Good Faith Marriage ........................................................................................ 39
    Shared Residence ............................................................................................. 40
    Battery / Extreme Cruelty ................................................................................ 41
    Good Moral Character ...................................................................................... 43
General Processing Information ................................................................................ 52
    Derivatives ....................................................................................................... 52
    Deferred Action ................................................................................................ 53
    Open & Administratively Closed Removal Proceedings .................................... 54
    Classifications .................................................................................................. 55
Processing ............................................................................................................... 56
    Record of Proceeding (ROP) ............................................................................ 56
    Approvals ......................................................................................................... 58
    Request for Evidence (RFE) ............................................................................. 65
    Notice of Intent to Deny (NOID) ...................................................................... 67
    Denials ............................................................................................................. 68
    Withdrawals ..................................................................................................... 69
    Revocations ...................................................................................................... 70
    Pending I-485 in A-File ................................................................................... 75
    Modernized TECS / "Just in Time" Checks for Pending I-485 in A-file ............. 82
    Pending I-601 in A-File .................................................................................... 84
Appendices .............................................................................................................. 85
    Appendix 1: Commonly Used Decisions ........................................................... 85
    Appendix 2: Routing Worksheet Examples ....................................................... 90
    Appendix 3: Previous Revisions ..................................................................... 102

Confidential

DEF - 00004133

# Overview

## General

| | |
|---|---|
| **Purpose** | This SOP describes procedures for the adjudication and processing of Form I-360 Petition for Amerasian, Widow(er) or Special Immigrant filed under the provisions of the Violence Against Women Act (VAWA) at the Vermont Service Center (VSC). |
| **Disclaimer** | This SOP is not intended to be, and should not be taken as an authoritative statement of the rules of decision for  Petition for Amerasian, Widow (er) or Special Immigrant (Form I-360).  This SOP is only a guide for the consistent processing of Form I-360.  U.S. Citizenship and Immigration Services (USCIS) bases the actual decision in a particular case on the record for that case, the Immigration and Nationality Act, regulations, precedent administrative and judicial decisions, and general statements of USCIS policy.  Thus, nothing in this SOP creates any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person. |
| **Applicability/ Scope** | This SOP applies to all VSC employees performing adjudicative functions relating to the I-360 Petition for Amerasian, Widow(er) or Special Immigrant. |
| **Conflict Resolution** | Any provision of the Immigration and Nationality Act (INA) or 8 CFR conflicts with this SOP will take precedence over the SOP.  If you identify a conflict, report the matter immediately to your supervisor or to any supervisor.<br><br>If any conflict is noted between this SOP and policy or guidance documents issued by Headquarters, Service Center Operations (HQSCOPS), the matter through the supervisory chain for resolution.  This SOP supersedes all prior SOPs for the I-360 petition. |

*Continued on next page*

## General, Continued

**Revisions**

***Identifying Revisions***
Revisions to processes identified throughout this SOP should be submitted:
- Electronically to the VSC Center Training Unit (CTU) by knowledge management (KM) requests;
- With appropriate supporting documents; and
- Through Division Subject Matter Experts (SMEs) and Training Points of Contact (POCs).

The electronic version of this SOP will be revised to reflect process changes as they are identified.

***Posting Revisions***
- The most recent revisions made to this SOP are highlighted in yellow throughout the document.
- Revisions are summarized in a numbered list at the end of this document.
- Revisions prior to those listed in this document are stored in VSC CTU archives.
- All personnel who maintain a printed copy of this document will post the revisions upon receipt.

# Form I-360 Overview

| | |
|---|---|
| **Basic Eligibility Requirements (Spouse)** | Self-petitioning spouses must demonstrate the following basic eligibility requirements:<br>• Has a qualifying relationship as the spouse, intended spouse, or former spouse of a citizen or lawful permanent resident of the United States;<br>• Is eligible for immigrant classification under section 201(b)(2)(A)(i) or section 203(a)(2)(A) of the INA;<br>• Is living in the United States ; or, if living abroad, the citizen or lawful permanent resident is an employee of the United States government or a member of the uniformed services ( as defined in section 101(a) of Title 10, United States Code); or the citizen or lawful permanent resident subjected the self-petitioner or the self-petitioner's child to battery or extreme cruelty in the United States;<br>• Has resided with the citizen or lawful permanent resident;<br>• Has been battered by or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident during the qualifying relationship; or is the parent of a child who has been battered by, or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident during the qualifying relationship;<br>• Is a person of good moral character; and<br>• Entered into the qualifying relationship in good faith. |
| **Basic Eligibility Requirements (Child)** | Basic eligibility requirements for a self-petitioning child:<br>• Has a qualifying relationship as the child of a citizen or lawful permanent resident;<br>• Is eligible for immigrant classification under section 201(b)(2)(A)(i) or section 203(a)(2)(A) of the INA;<br>• Has resided with the citizen or lawful permanent resident during the qualifying relationship; or is the parent of a child who has been battered by, or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident during the qualifying relationship, and while residing with the citizen or lawful permanent resident; and<br>• Is a person of good moral character. |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004136

# Form I-360 Overview, Continued

**Credible Evidence**

All relevant and credible evidence will be considered in the adjudication of Form I-360. The self-petitioner may, but is not required to demonstrate that preferred primary or secondary evidence is unavailable. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of USCIS.

The "any credible evidence" standard speaks to the scope of evidence that will be considered in the adjudication. It does not change the self-petitioners burden to establish eligibility for the benefit sought by a preponderance of the evidence.

A self-petition may not be denied for failure to submit particular evidence. (See Paul Virtue memo, Oct. 16, 1998, page 7). It may only be denied on evidentiary grounds if the evidence that was submitted is not credible or otherwise fails to establish eligibility by a preponderance of the evidence.

Approvals may be based solely or partially on credible testimony from the petitioner if that evidence is relevant and of sufficient weight to satisfy the self-petitioner's burden of proof.

Electronic records, A-files or other USCIS records will be used to confirm status or obtain other evidentiary requirements. Self-petitioners must provide sufficient evidence to establish eligibility for approval.

*Continued on next page*

Confidential

## Form I-360 Overview, Continued

**T-File Adjudication**

VSC will make every attempt to obtain all A-files assigned to the self-petitioner prior to making a final decision on Form I-360. After three failed requests to obtain an A-file, the ISO may follow the instructions in the ISO File Maintenance Procedures SOP prior to issuing a final decision unless the A-file is unavailable because it is in litigation, pending investigation or under docket control.

The ISO will know that a case is in litigation, pending investigation or under docket control by checking the "FILE LOCATED IND" in National Systems (screen 9504). Those situations are signaled as follows:
- "L" (Litigation)
- "P" (Pending Investigation)
- "D" (under docket control)

If you have attempted to request an A file by other means and receive 2 failed attempts or the A file that is in Litigation (L), Pending Investigation (P), or under Docket Control (D) please send an email to vsc.vawat.ua.file.request@uscis.dhs.gov.

This email option is for the 3rd request. The officer cannot adjudicate until the 3rd request has been made and they place the memo that shows three requests have been made in the file for their supervisor to sign off.

The body of the letter must contain the following:

- The A number of the file being requested
- The name of the office and location of the file
- Last and first name of the individual listed in the file that is being requested
- DOB and COB of the individual listed in the file that is being requested
- Reason for the request (i.e. received file as an expedite or 2 failed attempts have been made.

**NOTE**: In instances that do not have L/P/D in the File Located Indicator in National System but that the ISO believes an A-file is necessary to render a final decision, the ISO shall contact his/her SISO with the A# and FCO. The SISO will make attempts to obtain the A-file or direct the ISO on how to proceed.

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004138

## Form I-360 Overview, Continued

**T-File Adjudication**, continued

Follow the table below to determine which action to take when requesting files:

| If the A, T, or receipt file is located ... | Then request the file by... |
|---|---|
| At the NRC, | Using the G-100 request located in CenterServe. |
| On the Waiting List, | Contacting the I-918 Waitlist file request email account: I918waitlistfilerquest@uscis.dhs.gov. |
| Within the VSC, | Using RAILS or by contacting the VSC File Pull Request email account: VSCFilePullRequest@uscis.dhs.gov. |
| At the Iron Mountain Staging Facility, | Contacting the file request email account: SCOSSVSCG100ESSEX@uscis.dhs.gov. |

**IMPORTANT:** Anytime you request a file you must provide the A, T, and/or receipt number and the reason for your request. When contacting email accounts, include your name, NFTS or RAILS code, and you cube.

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004139

# Section 384

| | |
|---|---|
| **General** | Section 384 of the Illegal Immigration and Immigrant Responsibility Act of 1996 (IIRIRA), codified at 8 U.S.C. Section 1367, prohibits the usage of information provided by the alleged abuser in making an adverse determination.  This prohibition also extends to use of information provided by certain other members of the alleged abuser's family.

Additionally, disclosure of information regarding the self-petitioner to anyone other than a sworn officer or employee of the Department of Homeland Security is prohibited unless certain specific exceptions apply.

All files subject to these provisions will have a Section 384 warning sheet placed on the top of the record side. |
| **Disclosure of Information** | Information about the I-360 or self-petitioner may not be disclosed to anyone other than an accredited representative with a G-28 on file for that particular filing.  Exceptions to this restriction on information disclosure include:

• To law enforcement for legitimate law enforcement purposes at the discretion of USCIS;
• For judicial review in a manner that protects the confidentiality of the information; and
• In such a manner as census information may be disclosed by the secretary of commerce under 13 USC 8.
• Specific procedures have been put in place for making and memorializing disclosures of such protected information.  Before making any disclosure of such information outside of DHS, consult your supervisor and/or counsel as appropriate. |
| **Penalty** | Violation of this provision of Section 384 shall be subject to appropriate disciplinary action and subject to a civil money penalty of nor more than $5,000 for each violation, pursuant to 8 USC 1367(a)(2). |

*Continued on next page*

9

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004140

## **Section 384**, Continued

**Prohibited Information Sources**

Use of any information solely provided by the following parties cannot be used in making an adverse determination on an I-360 filing:

- A spouse or parent who has battered the self-petitioner or subjected the self-petitioner to extreme cruelty;
- A member of the spouse/parent's family residing in the same household as the self-petitioner or who subjected the self-petitioner to extreme cruelty when the spouse/parent of the self-petitioner acquiesced in such battery/extreme cruelty;
- A spouse or parent who subjected the self-petitioner's child to battery or extreme cruelty;
- A member of the spouse's/parent's family residing in the same household who has battered the self-petitioner's child or subjected that child to extreme cruelty when the spouse/parent consented or acquiesced.
- If USCIS is able to verify such information from independent sources through available government systems, the information from the independent sources or systems may be used in making an adverse determination.

**Source Determination**

The adjudicator must determine how USCIS came into possession of the evidence in the file.

If there is indication that the evidence was sent to USCIS by the alleged abuser but is not in the form of a squeal letter, the adjudicator must first determine if the evidence is from a credible and relevant source. Next, the adjudicator must determine whether the evidence would lead to an adverse decision for the self-petitioner. If the adjudicator determines that the information appears relevant to the adjudication and would result in an adverse decision for the self-petitioner, the adjudicator will refer the case to his/her supervisor for consultation.

USCIS can either attempt to verify the information through available systems and file review or receive its own independent copy of the adverse information using USCIS resources. This should be done to insure that the information was not altered while in the possession of the alleged abuser.

*Continued on next page*

10

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004141

# Section 384, Continued

**Information from Public Sources**

If the file contains information from a public source, such as a court or other law enforcement entity, the information can be used in the adjudication.  Such evidence includes but is not limited to the following:

- Protection orders against the self-petitioner;
- Police reports made involving the self-petitioner;
- Court transcripts and findings regarding the self-petitioner or self-petitioner's claims.

If it is determined that the evidence is complete and unaltered, the evidence may be used.  Be certain that the source behind the creation of the documentation is not the alleged abuser.

**EXAMPLE 1:**  A protection order obtained by the alleged abuser against the self-petitioner; such evidence is prohibited from usage in making an adverse determination as it is based on the claims of the alleged abuser.

**EXAMPLE 2:**  Documentation in the record includes transcripts of a divorce proceeding in which the USC/LPR spouse obtained a divorce based on fraud.  The adjudicator must determine what evidence the court used in order to base the finding that the self-petitioner committed fraud when entering into the marriage.  If the self-petitioner was represented in the divorce proceedings, the finding by the court may be used in the course of adjudicating the I-360.

**Information Generated from Non-Public Sources**

If the file contains evidence issued by a non-public source (example: medical records), the adjudicator must first determine who provided the information for the file.

If it was sent by the alleged abuser or member of the alleged abuser's family (as cited above) the adjudicator is prohibited from using the information to make an adverse determination on the I-360.

If adverse information is received that is neither from a public source nor from the alleged abuser (or alleged abuser's family), the adjudicator must make a credibility and relevance determination on the evidence.  If the adjudicator finds that the evidence would have a negative impact on the adjudication, the evidence must be discussed with supervision prior to issuing any notices to the self-petitioner based on that evidence.

**EXAMPLE:**  A copy of an insurance policy for the self-petitioner showing a different address during the time he/she claimed to be residing with the alleged abuser is contained in the file.

*Continued on next page*

## Section 384, Continued

**Acknowledging Information in the File**

If the file contains information that, if used, would result in an adverse determination but the use of that information is prohibited by section 384, the adjudicator must place an acknowledgement of the information in the file.

The ISO will generate the Adverse Information Memo and detail what specific information was reviewed and why usage of the information was prohibited by section 384 (ex: information provided by the alleged abuser). The memo is placed on the non-record side of the file.

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

12

DEF - 00004143

# Section 384, Continued

**Discovery of an Apparent Violation**

Any ISO who discovers an apparent violation of section 384 (either disclosure of information or use of prohibited information) must bring the violation to the attention of their supervisor and document the findings in detail in the form of a memo.

Refer to the table below for the stages of the reporting process.

| Stage | Description |
|---|---|
| Supervisory Notification | The ISO making the notification must place a copy of the notification email on the non-record side of the file and deliver the file to his or her supervisor. |
| Management Notification | The SISO will notify the Section Chief via an email and the ACD who oversees the unit. The email is to include details related to the specific filing and all relevant information about the violation. |
| OSI Reporting | The SISO will report matter to the Office of Security and Integrity (OSI) via the on line reporting system: http://osi.uscis.dhs.gov/forms/complaint/ComplaintForm.html <br><br> Prior to submitting the online report, the SISO will print a copy for the file and place it on the right side of the folder. <br><br> **REMINDER**: No PII should be included in the reporting of your incident, and the matter may require sending encrypted attachments via WinZip to encrypt and password-protect the documents. |
| Significant Incident Reporting (SIR) Creation | The Supervisor will forward the initial email to the I-360 Section Chief, ACD who oversees the unit, the Chief of Staff, Local Security Officer at the Essex location and St. Albans location. <br> The subject line of the email will always be labeled as "SIR" despite the fact the report is going to OSI. <br><br> **NOTE:** If you have any other matter requiring the submission of a Serious Incident Report (SIR) see the SIR Reporting under the VSC Quick Reference Documents on the VSC ECN. |

Confidential                                                    DEF - 00004144

# Safe Address

**Introduction**   Every effort must be made to ensure that notices or other correspondence are sent in a confidential manner to an address where an abuser will not have access to them.

Incoming I-360 self-petitions are screened for safe addresses by Humanitarian-VAWA officers prior to data entry.  Once identified, the safe address will be indicated on the prescreening worksheet, and will be used in both the petitioner and beneficiary sections in CLAIMS 3.

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004145

## Safe Address, Continued

**Determining a Safe Address**

**The address of an attorney or representative listed on a G-28 will always be used as the self-petitioner's safe address.** Follow the steps below to determine a safe address when no G-28 has been filed:

| Step | Action |
|---|---|
| 1 | Review the addresses given in Part 1 and Part 3 of the I-360. |

| If the addresses are… | Then… |
|---|---|
| Different, | It is generally safe to use the address in Part 1. |
| The same, or if no address is given in Part 1, | Proceed to Step 2. |

| Step | Action |
|---|---|
| 2 | Review Part 7, Section B to determine when and where the self-petitioner last resided with his/her abusive spouse, parent or USC son or daughter. |

| If the address in Part 7 is… | Then… |
|---|---|
| Different from the address in Part 3, | It is generally safe to use the address in Part 3. |
| The same as the address in Part 3, and the self-petitioner last resided with the abuser more than 60 days before filing, | It is generally safe to use the address in Part 3. |
| The same as the address in Part 3, and the self-petitioner resided with the abuser within 60 days before filing, | Seek an alternate address. Proceed to Step 3. |

| Step | Action |
|---|---|
| 3 | Review Part 10 of the I-360. |

| If… | Then… |
|---|---|
| Someone other than the self-petitioner is listed as the preparer, | Use his or her address if known. |
| A preparer is listed, but no address is indicated in Part 10, | • Review the file.<br>• The preparer may have included a cover letter or other correspondence that includes his or her address.  His/her return address may also appear on the envelope that was used to submit the petition. |
| No alternate address is available, | Use the address in Part 1 or Part 3. |

**Contacting an Accredited Representative**

An ISO may contact the representative indicated on the Safe Address worksheet only if that representative has a Form G-28 on file associated with the Form I-360.

15

Confidential

# Prima Facie Determination (PFD)

**General**

In the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Congress mandated that only "qualified aliens," as defined by statute, were eligible for public assistance. Section 501 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") amended the definition of "qualified alien" under 8 USC 1641 C to include battered aliens, including certain aliens who file or have approved self-petitions. The statute affords benefits to those aliens who file a petition which establishes a prima facie eligibility.

**Qualifying for PDF**

To qualify for Prima Facie Determination (PFD), the petitioner must merely address each of the eligibility requirements.  Evidence to prove eligibility is not required in order to qualify for the PFD.

**Granting Initial PFD**

Incoming I-360 self-petitions are reviewed by Humanitarian-VAWA officers for PFD prior to data entry. After data entry, files are sent to the VAWA AST staff.  PFD notices are sent out before the cases are staged for adjudication.

A prima facie determination may also be made by the adjudicating officer at any time, based on a full review of the record, including evidence not available when the initial PFD review was done.

Follow the steps below to grant an initial PFD, when no other action is to be taken:

| Step | Action |
|------|--------|
| 1 | Check "J3 (Initial PFD)" on the worksheet. |
| 2 | If derivatives are listed on the petition, check "J3a (Derivative PFD)," and enter each derivative's name and date of birth. Proof of the relationship is not required. |
| 3 | Indicate appropriate routing (e.g. return to officer, shelf, etc). |
| 4 | RAILS to VAWA AST: AI0028. |
| 5 | Place the file in the crate labeled "PFD Extensions." |

*Continued on next page*

# Prima Facie Determination (PFD), Continued

**PFD Extension**     Follow the steps below when an officer notices that PFD was previously made, and that the PFD term has expired, or will expire in less than two weeks, and no other immediate action can be taken on the case:

| Step | Action |
|---|---|
| 1 | Review the case to determine that PFD is still appropriate. An extension of PFD is not appropriate if final action has been taken on the I-360. |
| 2 | Attach a VAWA worksheet to the file and order the J4 letter. A buckslip may also be used, addressed to VAWA AST, requesting that PFD be extended. |
| 3 | Instruct as to the disposition of the file (e.g. return to officer, to shelf, etc). |
| 4 | RAILS to VAWA AST:  AI0028. |
| 5 | Place the file in the crate labeled "PFD Extensions." |

Confidential

DEF - 00004148

# Filing Requirements

**Self-Petitioner Filing from Inside the United States**

If the self-petitioner files the Form I-360 from within the United States, all eligibility requirements can be met regardless of whether the underlying events occurred inside or outside the United States.

If the self-petitioner resides outside the United States at the time of filing the I-360, the self-petitioner must meet other criteria cited.  See *Self-Petitioner filing from Abroad* below.

**NOTE:**  The regulations at 8 CFR 204.2(c)(1)(v) state:  "Residence – A self-petition will not be approved if the self-petitioner is not residing in the United States when the self-petition is filed."  This regulation was superseded by VAWA 2000, which removed the residency in the United States requirement.

**Self-Petitioner Filing from Abroad**

If the self-petitioner is not residing in the United States at the time the I-360 is filed, he/she must demonstrate the following:
- That his/her spouse is employed by the U.S. government; or
- That his/her spouse is a member of the U.S. uniformed services; or
- That the claimed battery/extreme cruelty in the marriage occurred in the United States.

**REFERENCE:**  Form I-360 and Filing Instructions

# Abuser's Status

## Overview & Evidence

| | |
|---|---|
| **General** | Self-petitioners must demonstrate that they have a qualifying relationship with a U.S. citizen or Lawful Permanent Resident (LPR).  Allowances are made for death or loss of status by the U.S. citizen or LPR abuser. |

**Evidence for USC**

Evidence to demonstrate the citizenship of the alleged abuser may include but is not limited to the following:

- A birth certificate (or legible photocopy) issued by a civil authority that shows the U.S. citizens abuser's birth in the United States;
- A photocopy of a valid United States passport issued initially for a full five year period to the U.S. citizen abuser who was under the age of 18 at the time of issuance;
- A statement executed by a U.S. consular officer certifying the abuserto be a U.S. citizen and the bearer of a currently valid United States passport;
- The U.S. citizens abuser's Certificate of Naturalization or Certificate of Citizenship (signed by both the individual and the Commissioner); Department of State Form FS-240, Report of Birth Abroad of a citizen of the United States, relating to the U.S. citizen abuser.
- The U.S. citizen abuser's A-number with naturalization information verified in CIS.
- Credible evidence (may include proof an I-130 filed by the U.S. citizen abuser that was approved for an immediate relative category or information on a marriage license).

**Evidence for LPR**

Evidence that the self-petitioner's abuser has or had status as a lawful permanent resident is as follows:
- Copy of the individual's I-551 card;
- Copy of the admission pages of the individual's passport showing his/her name and status;
- LPR abuser's A-number with verification of status in CIS;
- Any credible evidence to establish LPR status.

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

# Overview & Evidencee, Continued

**Evidence for U.S. National**

The self-petitioning spouse or child of a U.S. National is eligible for classification.  Case law dictates that an individual who holds only U.S. National status is accorded at least the same rights as that of an LPR. Therefore, self-petitioning spouses of an individual who holds only U.S. National status shall be treated as a self-petitioning spouse of an LPR.

The self-petitioner must establish all requirements that the self-petitioning spouse or child of an LPR must demonstrate.

**REFERENCE:**
- Matter of B--, 6 I&N Dec. 555(BIA 1955)
- Matter of Ah San, 15 I&N Dec. 315 (BIA 1975)

**Evidence of the USC Daughter's or Son's Status**

Evidence of the U.S. citizen daughter's or son's status may include but is not limited to:
- A birth certificate  (or legible photocopy) issued by a civil authority that shows the U.S. citizen's birth in the United States;
- A photocopy of a valid U.S. passport issued initially for a full ten-year period to the U.S. citizen;
- A photocopy of an expired U.S. passport issued initially for a full five year period to the U.S. citizen who was under the age of 18 at the time of issuance;
- A statement executed by a U.S. consular officer certifying the daughter or son to be a U.S. citizen and the bearer of a currently valid  U.S. passport;
- The U.S. citizen's Certificate of Naturalization or Certificate of Citizenship (signed by both the individual and the Commissioner);
- Department of State Form FS-240, Report of Birth Abroad of a Citizen of the United States, relating to the U.S. citizen;
- The U.S. citizen's A-number with naturalization information verified in CIS; and/or
- Credible evidence (may include proof an I-130 filed by the U.S. citizen that was approved for an immediate relative category or information on a marriage license).

Confidential

DEF - 00004151

# USC/LPR Loss of Status or Death

**USC/LPR Loses Status or Dies**

The USC or LPR may have lost or renounced his or her status, or died prior to or after the filing of the I-360.  In some instances, this  will not affect the self-petitioner's eligibility.

Refer to the table below to determine whether the self-petitioner qualifies after his or her USC abuser loses status or dies.

| If the U.S. Citizen  or LPR abuser… | And the abuser is… | Then the self- petitioner… |
| --- | --- | --- |
| Loses/renounces citizenship or loses LPR status within 2 years immediately preceding the filing of the  petition , | A USC or LPR, | Remains eligible for classification sought only if there is a connection between the loss of status and an act of domestic violence. |
| Dies within the 2 years immediately preceding the filing of the petition, | A USC, | Remains eligible for classification sought. |
| Dies within the 2 years immediately preceding the filing of the petition, | An LPR, | Is not eligible for consideration for the classification sought. |
| Loses/renounces citizenship or is denaturalized, or loses LPR status AFTER the petition is filed, | A USC or LPR, | Remains eligible for classification sought. **NOTE:**  This pertains to self-petitioning spouses and children. |
| Dies AFTER the petition is filed, | A USC, | Remains eligible for the classification sought. |
| Dies AFTER the petition is filed, | An LPR, | Remains eligible for the classification sought only if the self-petitioner meets the requirements of INA 204(l). |

21

Confidential

# LPR Naturalizes

**LPR Naturalizes**

If the LPR naturalizes after the filing of the I-360 (regardless of whether the I-360 is still pending at the time of the naturalization), the self-petitioner will be reclassified as the self-petitioning spouse, child or parent of a U.S. citizen.  A new petition does not need to be filed.

22

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004153

# Qualifying Relationship

## Spouse

| | |
|---|---|
| **General** | Self-petitioners must demonstrate that they have a qualifying relationship with the USC or LPR abuser. Qualifying marriages include certain terminated marriages and certain instances of unwitting bigamy. Allowances are made for divorce within a prescribed period and for intended spouses. As appropriate, and with guidance from the ISO3 and/or SISO, officers may consult the <u>I-130 SOP</u> for more detailed guidance regarding qualifying relationships. |
| **Evidence of Legal Marriage** | Evidence of the instant marriage includes:<br><br>• Civilly-issued marriage certificate;<br>• Divorce certificate showing the instant marriage was dissolved;<br>• Common law marriage announcements/certificates; or<br>• Credible evidence of marriage (may include affidavits and photos demonstrating a common law marriage if no certificate or announcement is available in states where common law marriage can be contracted). |
| **Marriage by Proxy** | In order to be recognized under immigration law, a proxy marriage must have been consummated subsequent to the marriage.<br><br>Evidence to indicate that a proxy marriage was consummated may include:<br>• A child's birth certificate<br>• Passport or airline tickets showing that the self-petitioner and spouse were in the same place at the same time<br>• Evidence of residence together |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

## Spouse, Continued

**Evidence of Termination of Prior Marriages**

The self-petitioner must demonstrate that all of his/her previous marriages were legally terminated prior to the inception of the instant marriage. Evidence that the self-petitioner's previous marriage(s) was/were legally terminated include:

- Final divorce decrees;
- Annulments; or
- Death certificates.

The self-petitioner is not required to provide evidence to demonstrate that the spouse's previous marriage(s) was/were legally terminated. The validity of foreign divorces raises complex questions, particularly when determining if subsequent marriages following foreign divorces are valid for immigration purposes. When addressing these situations, officers may consult the I-130 SOP as well as their ISO 3 and SISO as appropriate.

*Continued on next page*

Confidential

DEF - 00004155

# **Spouse**, Continued

| | |
|---|---|
| **Retroactive Divorces** | A marriage generally is void if the self-petitioner was previously married and the prior marriage has not been terminated.  An exception may apply if the new marriage took place in a state that recognizes retroactive divorces.

In states recognizing retroactive divorces, the new marriage becomes valid when the prior marriage is terminated, if the parties live together as husband and wife and represent themselves as being married.  You must research the laws of each individual jurisdiction to determine if retroactive provisions apply.

If a U.S. court decrees a foreign marriage was invalid from its inception, but the marriage was legal according to the laws of the issuing nation, the invalidity will <u>not</u> be given retroactive effect for immigration purposes. |
| **Termination of Qualifying Marriage** | A self-petition may be based on a terminated marriage if the following criteria are met:

- Termination occurs during the two years immediately preceding the filing of the self-petition; and
- There is a connection between battery/extreme cruelty and the termination.

**NOTE**:  Evidence of connection is established if the self-petitioner satisfies the battery/extreme cruelty criterion.

Evidence of termination includes: final divorce certificate, annulment certificate.

**IMPORTANT:**  According to section 204(l) of the INA, death of an LPR spouse after filing will **not** result in a denial, provided the other requirements of section 204(l) of the INA are met. |

*Continued on next page*

Confidential

DEF - 00004156

# **Spouse**, Continued

**Intended Spouse/ Bigamy**

Some bigamous marriages may still qualify for classification.  If the spouse did not legally terminate a prior marriage before entering into a marriage with the self-petitioner, the definition of intended spouse may apply.  To qualify for this provision, the following criteria must be met:

- self-petitioner believed he/she had legally married the abusive spouse;
- a marriage ceremony was actually performed;
- self-petitioner otherwise meets any applicable requirements under the INA to establish the existence and bona fides of a marriage; and
- bigamy must be on the part of the alleged abuser only. Self-petitioners must still provide evidence to show termination of any and all of his/her previous marriages prior to the relationship for which the self-petition is filed.
- The "intended spouse" provision does **not** apply to self-petitioners who knowingly entered into polygamous marriages as subsequent spouse.

**Evidence:**  Primary evidence to establish the intent of the self-petitioner to enter into a legally valid marriage shall be a marriage certificate issued by a civil authority.

**NOTE:**  Common law marriages cannot benefit from this provision as it requires that a ceremony actually took place. There is no actual ceremony during the enactment of a common law marriage.

**Remarriage of the Self-Petitioner**

The self-petitioner may remarry after the I-360 is approved without detriment to the approval.  Remarriage prior to approval makes the self-petitioner ineligible to receive an approval.

| If remarriage occurs... | Then ... |
|---|---|
| AFTER approval of the I-360, | Remarriage does not impact eligibility. |
| BEFORE approval of the I-360, | <ul><li>The self-petitioner is statutorily ineligible.  Deny the petition.</li><li>If the remarriage is not discovered until after the approval, revoke the case.</li></ul> |

26

Confidential

DEF - 00004157

# Spouse: INA 204(c) and 204(g)

**General**

Self-petitioning spouse must meet the definition of spouse under 201(b) or 203(a) of the Immigration and Nationality Act (INA). The provisions of sections 204(c) and 204(g) of the INA apply to the adjudication of Form I-360.

**Section 204(g)**

Section 204(g) of the INA (restrictions on marriage entered while in removal proceedings) applies to Form I-360. If the instant marriage was entered into after the self-petitioner was placed in removal proceedings and those removal proceedings have not been terminated, the self-petitioner must:

Request a bona fide marriage exemption and present either:
- Clear and convincing evidence the marriage was not entered into in order to circumvent immigration law; or
- Evidence that the self-petitioner resided outside the United States for two years beginning after the date of marriage.

In cases subject to section 204(g) of the INA, the burden of proof is clear and convincing for the bona fide marriage determination only. A preponderance of credible evidence is still sufficient for all other criteria. Note that there could be cases where the self-petitioner establishes by a preponderance of the evidence that he or she entered into the marriage in good faith, but does not meet the higher "clear and convincing evidence" standard required for the bona fide marriage exemption. With concurrence from a SISO and/or ISO3, the I-130 SOP section on 204(g) may be consulted for additional information.

Refer to the Approvals section of this SOP for required annotations related to 204(g).

*Continued on next page*

# Spouse: INA 204(c) and 204(g), Continued

| | |
|---|---|
| **Section 204(c)** | Section 204(c) of the INA (fraudulent marriage prohibition) applies to Form I-360.  If the self-petitioner has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a USC/LPR, by reason of a marriage that has been determined to have been entered for the purpose of evading immigration laws; or it has been determined that the self-petitioner has attempted or conspired to enter into a marriage for the purpose of evading immigration laws, the I-360 shall be denied.  USCIS does **not** have discretionary authority to waive the bar to approval found in 204(c). |

*Continued on next page*

Confidential

DEF - 00004159

## Spouse: INA 204(c) and 204(g), Continued

**Section 204(c) NOIDs and Denials**

A 204(c) denial must detail the "substantial and probative evidence" in the record that shows the self-petitioner was previously involved in marriage fraud. Evidence of the fraud must be contained in the self-petitioner's A-file. Prior to denial, you must issue a NOID describing this evidence so the self-petitioner has an opportunity to rebut it and show that the prior marriage was not entered into for the purpose of evading immigration law.

**NOTE:** A NOID asking for evidence to overcome the 204(c) bar should be sent only if the record contains substantial and probative evidence indicating the prior marriage was entered into for the purpose of evading immigration law.

**Circumstances that constitute "substantial and probative evidence" of prior marriage fraud:**
- Prior IJ finding of deportability/removability based on marriage fraud
- Federal marriage fraud conviction
- BIA affirmance of prior marriage fraud finding in deportation/removal proceedings or visa petition proceedings
- Association with an established fraud ring or fraud pattern
- The A file contains specific evidence of fraud such as:
  – An admission by the petitioner, beneficiary, or former spouse that they colluded to evade the immigration laws
  – Evidence the petitioner or prior spouse was paid or offered something to marry the beneficiary

**Circumstances that, standing alone, are not enough to constitute "substantial and probative evidence" of prior marriage fraud:**
- Prior INS/USCIS marriage fraud finding which has not been affirmed by the BIA
- Prior withdrawal/abandoned petition
- Prior withdrawal in which a sworn statement was not taken
- Failure to appear for a scheduled interview
- Inability to answer basic questions
- Inconsistent testimony and/or lack of documentation demonstrating the bona fides of the marriage but not rising to the level of fraud

**NOTE:** While one of these circumstances will not generally be sufficient for the BIA to uphold a 204(c) denial, the BIA may uphold a denial if more than one of these circumstances exists.

A denial based on 204(c) must be based on the adjudicator's new, independent assessment of the totality of the evidence in the record. It is **not** sufficient to rely upon a prior agency determination of fraud, by itself, to establish ineligibility under 204(c).

Confidential

# Child

| | |
|---|---|
| **General** | Self-petitioning children must demonstrate they qualify as a child of a USC or LPR eligible for immigrant classification under section 201(b) or 203(a) of the INA.  Section 101(b) of the INA generally defines a "child" as an unmarried person under 21 years of age.

Generally, self-petitioning children must be less than 21 years of age at the time of filing.  Exceptions exist for those who are over 21 but under 25 years of age, if that individual can demonstrate a connection between the delay in filing prior to age 21 and the claimed battery/extreme cruelty. |
| **Step Relationship Evidence** | If a self-petitioner is claiming eligibility as a step-child, he/she must provide the following evidence to demonstrate the relationship:

Evidence of marriage of alien's parent and step parent:
– civilly issued marriage certificate;
– common law marriage announcements/certificates;
– termination of prior marriages of  the biological parents' previous marriage(s).

AND

Evidence of relationship between the self-petitioning child and the alien parent in the form of a birth certificate of self-petitioner showing biological (alien) parent's name.

**NOTE:**  Step relationship must be contracted before self-petitioning child reached 18 years of age.  The marriage between the self-petitioner's biological parent and step-parent must still be valid at the time of filing, except as discussed below. |
| **Termination of Alien's Biological Parent's Prior to Marriage(s)** | All marriages of the alien child's biological parent, prior to the marriage to the abusive parent, must be legally terminated if a marriage is necessary to establish the step relationship between the self-petitioning child and the abusive parent.

Termination of the alien parent's prior marriages must occur prior to the marriage to the abusive parent being contracted.

Evidence of legal termination of the biological parent's prior marriage(s) includes: final divorce decrees, annulments, death certificates. |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

# **Child**, Continued

| | |
|---|---|
| **Termination of Biological Parent and Abusive Step-parent Marriage** | If the self-petitioning child is related to the abuser through a step relationship and the marriage that created the relationship has been terminated through  divorce, the relationship may still be considered eligible for classification only if there is evidence in the record demonstrating an ongoing, bona fide relationship with the alleged abuser at the time the I-360 was filed. |
| | If there is no evidence of an ongoing relationship with the alleged abuser in the file, you must write a Request for Evidence requesting proof of an ongoing, bona fide relationship. |
| | **IMPORTANT:**  Pursuant to section 204(l) of the INA, the death of an LPR parent after filing will **not** result in a denial, provided the other requirements of section 204(l) of the INA are met. |
| **Intended Spouse/Bigamy** | If the marriage that created the step relationship is not legally valid due to bigamy on the part of the abusive parent, the child is not eligible.  The INA does not contain provisions extending the intended spouse eligibility to self-petitioning children. |

*Continued on next page*

Confidential

# Child, Continued

**Relationship Requirements for Biological Child of an Abusive Parent**

Evidence to demonstrate a biological relationship to the abusive parent includes but is not limited to:

Civilly-registered birth certificate showing:
- Child's name;
- Date of birth;
- Names of both parents; and
- Date of birth registration.

Credible evidence of parentage includes but is not limited to:
- Court decree of paternity or custody/child support orders;
- A baptismal certificate (or other religious document) with the seal of the church, showing the date and place of birth and of baptism (or similar religious ceremony) and parents' names;
- Early school records (preferably from the first school) showing the date of admission to the school, the child's date and place of birth, and the name(s) of the parent(s);
- Medical records, such as the hospital birth record that names the parent(s) and the child;
- Census Record: a state or federal census record showing the name and place of birth, and date of birth or age of each person listed;
- Results of a Specific Blood Group Antigen test conducted on the child and on the child's father and mother.

**NOTE:** In some rare instances the self-petitioning child may claim a biological relationship to a USC parent. This typically happens when the USC obtained status through naturalization after the alien child was born and the alien child did not derive status at the time of that naturalization.

*Continued on next page*

Confidential

DEF - 00004163

# **Child**, Continued

| | |
|---|---|
| **Establishing Parent-Child Relationship with Biological Father** | You must determine if a child was born in wedlock, legitimated or has a bona fide relationship with the abusive parent only when the abusive parent is the <u>biological father</u> of the self-petitioning child.<br><br>**REFERENCES:**<br><u>I-130 SOP</u> (ECN)<br>Family Division ECN Page: <u>Legitimation Chart</u> |

*Continued on next page*

| | |
|---|---|
| **Evidence of Relationship** | **Born in Wedlock**:  Proof of marriage between biological parents.<br>Evidence includes but is not limited to:<br><br>• Civilly-issued marriage certificate;<br>• Divorce certificate showing the relevant marriage was dissolved;<br>• Common law marriage announcements/certificates conforming to legal requirements of location;<br>• Credible evidence of marriage between biological parents.<br><br>**Legitimated:**  Generally, legitimation occurs through the law governing the place of residence of parent or child.  See I-130 SOP<br><br>**Not Legitimated**:  Self-petitioner must establish a bona fide father/child relationship. |

| | |
|---|---|
| **Relationship Created Through Adoption** | Self-petitioning children who claim eligibility based on an adoptive relationship must provide evidence of the following:<br><br>• Evidence of adoptive relationship  (legal adoption decree);<br>• Evidence of abusive parent's custody; and<br>• Evidence of shared residence with the abusive parent.<br><br>Other considerations:  Child must be under 18 at the time of adoption.  Be aware of step/adoption scenarios.<br><br>**REFERENCE:**  <u>I-130 SOP</u> (ECN)<br><br>**NOTE:**  PM-602-0089.1 eliminated the requirement that an adopted child who has been abused by the adoptive parent or household family member submit evidence that he or she has been in the custody of and resided with, the adoptive parent for at least two years.  Only evidence of a valid adoption and that the adoptive child and adoptive parent resided together for some period of time is required. |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004164

## Child, Continued

**Self-Petitioning Child Over 21 at Filing**

Generally, a self-petitioning child must file the I-360 prior to reaching age 21; however, exceptions are available to those who were over 21 years of age but under 25 years of age on the day the petition is properly filed.

To be eligible for classification after age 21 but before age 25, the self-petitioning child must demonstrate a link between the late filing (after alien reached 21 years of age) and the battery/extreme cruelty perpetrated by the abusive parent. The self-petitioner must also demonstrate that he/she would have qualified for classification on the day before he/she attained 21 years of age.

**NOTE:** All final decisions for cases falling into this category must receive supervisory sign off prior to the approval, denial or revocation being issued.

**Section 204(c)**

Section 204(c) of the INA (fraudulent marriage prohibition) applies to Form I-360. If the self-petitioner has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a USC/LPR, by reason of a marriage that has been determined to have been entered for the purpose of evading immigration laws; or it has been determined that the self-petitioner has attempted or conspired to enter into a marriage for the purpose of evading immigration laws, the I-360 shall be denied.

USCIS must present substantial and probative evidence of the prior fraud. Evidence of the fraud must be contained in the self-petitioner's A-file. The self-petitioner will be granted the opportunity to rebut the finding of fraud. Refer to the "Spouse" section of this SOP for more information on Section 204(c).

Confidential

DEF - 00004165

# Parent

| | |
|---|---|
| **General** | Self-petitioning parents must demonstrate that they have a qualifying relationship with a U.S. citizen daughter or son. The abusive daughter or son must be 21 years of age or older at the time the petition is filed. |

**Evidence of Biological Relationship**

Evidence to demonstrate a biological relationship to the U.S. citizen includes but is not limited to:

- Civilly-registered birth certificate showing:
  - child's name;
  - date of birth;
  - names of both parents; and
  - date of birth registration.

Credible evidence of parentage includes but is not limited to:

- Court decree of paternity or custody/child support orders;
- A baptismal certificate (or other religious document) with the seal of the church, showing the date and place of birth and of baptism (or similar religious ceremony) and parents' names;
- Early school records (preferably from the first school) showing the date of admission to the school, the child's date and place of birth, and the name(s) of the parent(s);
- Medical records, such as the hospital birth record that names the parent(s) and the child;
- Census Record: a state or federal census record showing the name and place of birth, and date of birth or age of each person listed;
- Results of a Specific Blood Group Antigen test conducted on the child and on the child's father and mother.

**Establishing Parent/Child Relationship with Biological Father**

You must determine if a child was born in wedlock, legitimated or has a bona fide relationship with the abusive parent only when the abusive parent is the biological father of the self-petitioning child.

**REFERENCES:**
I-130 SOP (ECN)
Family Division ECN Page: Legitimation Chart

*Continued on next page*

*I-360 SOP / Last Revised: April 16, 2018*

Confidential

## **Parent**, Continued

| | |
|---|---|
| **Evidence of Legitimation** | **Born in wedlock**: Proof of marriage between biological parents. Evidence includes but is not limited to:<br><br>• Civilly-issued marriage certificate;<br>• Divorce certificate showing the relevant marriage was dissolved;<br>• Common law marriage announcements/certificates conforming to legal requirements of location;<br>• Credible evidence of marriage between biological parents.<br><br>**Legitimated:** Generally, legitimation occurs through the law governing the place of residence of parent or child. For more information, see <u>I-130 SOP</u>.<br><br>**Not Legitimated:** Self-petitioner must establish a bona fide father/child relationship. |
| **Evidence of Step Relationship** | If a self-petitioner is claiming eligibility as a step relationship to the abusive U.S. citizen daughter or son, he/she must provide the following evidence to demonstrate the relationship:<br><br>• Evidence of a legal marriage between the self-petitioner and the biological parent of the abusive U.S. citizen daughter/son. The marriage must have commenced prior to the abusive U.S. citizen daughter/son attaining 18 years of age:<br>    — Civilly-issued marriage certificate;<br>    — Common law marriage announcements/certificates;<br>    — Termination of all prior marriages of the biological parent (if applicable); and<br>    — Termination of all prior marriages of the self-petitioner.<br><br><u>AND</u><br><br>• Evidence of relationship between the U.S. citizen daughter/son and the biological parent in the form of a birth certificate showing the biological parent's name.<br><br>**NOTE:** The marriage between the self-petitioner and the abusive U.S. citizen daughter's/son's biological parent must still be valid at the time of filing, or the self-petitioner must demonstrate an ongoing relationship with the U.S. citizen daughter/son after the termination of the marriage to the U.S. citizen daughter/son's biological parent. |

*Continued on next page*

Confidential

DEF - 00004167

# Parent, Continued

| | |
|---|---|
| **Termination of Qualifying Step Relationship** | If a self-petitioner is claiming eligibility as a step relationship to the abusive U.S. citizen daughter or son, he/she must provide the following evidence to demonstrate the relationship: |

- Evidence of a legal marriage between the self-petitioner and the biological parent of the abusive U.S. citizen daughter/son. The marriage must have commenced prior to the abusive U.S. citizen daughter/son attaining 18 years of age:
  - Civilly-issued marriage certificate;
  - Common law marriage announcements/certificates;
  - Termination of all prior marriages of the biological parent (if applicable);
  - Termination of all prior marriages of the self-petitioner.

  AND

- Evidence of relationship between the U.S. citizen daughter/son and the biological parent in the form of a birth certificate showing the biological parent's name.

**NOTE:** The marriage between the self-petitioner and the abusive U.S. citizen daughter's/son's biological parent must still be valid at the time of filing, or the self-petitioner must demonstrate an ongoing relationship with the U.S. citizen daughter/son after the termination of the marriage to the U.S. citizen daughter/son's biological parent.

| | |
|---|---|
| **Relationship Created Through Adoption** | The self-petitioning parents who claim eligibility based on an adoptive relationship, must provide evidence of the following evidence: |

- Legal adoption decree;
- Evidence of self-petitioning parent's custody of the U.S. citizen daughter/son; and
- Evidence of shared residence between the self-petitioner and the U.S. citizen daughter/son.

Other considerations: Child must be under 18 at the time of adoption. Be aware of step/adoption scenarios.

*Continued on next page*

Confidential

DEF - 00004168

## **Parent**, Continued

| | |
|---|---|
| **Section 204(c)** | Section 204(c) of the INA (fraudulent marriage prohibition) applies to Form I-360.  If the self-petitioner has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a USC/LPR, by reason of a marriage that has been determined to have been entered for the purpose of evading immigration laws; or it has been determined that the self-petitioner has attempted or conspired to enter into a marriage for the purpose of evading immigration laws, the I-360 shall be denied. |
| | USCIS must present substantial and probative evidence of the prior fraud. Evidence of the fraud must be contained in the self-petitioner's A-file. The self-petitioner will be granted the opportunity to rebut the finding of fraud.  See "Spouse" section of this SOP for additional information regarding 204(c). |

# Good Faith Marriage

**General**

The self-petitioner must demonstrate that he/she entered into the qualifying marriage in good faith, with the intent to establish a life together.

**Evidence**

Evidence of good faith marriage includes, but is not limited to:

- Proof one spouse has been listed as the other spouse's beneficiary on insurance policies, with proof of payment of premiums and maintenance of policy after purchase;
- Joint property leases;
- Joint income tax forms, with proof of filing;
- Joint accounts (bank, utilities, credit cards),with proof of regular, joint use;
- Testimony or other evidence regarding courtship, wedding ceremony, shared residence and experience;
- Birth certificates of children born to the couple showing both parents' names;
- Police, medical, or court documents providing information about the relationship;
- Affidavits of persons with personal knowledge of the relationship;
- Any credible evidence that demonstrates the self-petitioner's intentions for entering into the marriage.

# Shared Residence

**General**

The self-petitioner must have resided with the abuser during the claimed qualifying relationship. The definition of residence for the I-360 is found at section 101(a)(33) of the INA. It states that residence means:

> *Place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent.*

**Evidence**

Evidence of residence with the abuser includes, but is not limited to:

- Joint leases, mortgages or rental agreements, listing the abuser and the self-petitioner as occupants;
- Insurance policies, banking and other financial records listing a common address for the self-petitioner and abuser;
- Utility invoices listing a common address for the self-petitioner and abuser;
- Bank statements, tax records and financial documents listing a common address for the abuser and self-petitioner; and/or
- Affidavits of friends and family who can verify that the self-petitioner and abuser resided together during the qualifying relationship.

For a self-petitioning child, evidence may also include medical records or a statement from the self-petitioning child's physician.

There is no specific length of time for the shared residence requirement, but the shared residence must have been the "principal, actual dwelling place in fact" of both parties.

Residence with the abuser must have occurred at some point during the qualifying relationship.

| For self-petitioning… | The residence must have been shared… |
|---|---|
| Spouses, | During the marriage. |
| Parents, | After the abusive son or daughter turned 21 years of age. |
| Children, | While the self-petitioner was under 21 years of age.<br><br>**NOTE:** Shared residence also includes any period of visitation. |

Shared residence with the abuser does not need to be (nor have been) in the United States. *See Filing Requirements.*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004171

# Battery / Extreme Cruelty

**General**

Being battered and/or subject to extreme cruelty includes but is not limited to: being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence.

There is no "level" of abuse. The self-petitioner must provide a preponderance of credible evidence that battery or extreme cruelty did occur in the marriage.

**REFERENCE:** Power & Control Wheels

**Battery Examples**

Acts of battery include but are not limited to:
- Assault- slapping, punching, kicking, biting, pulling hair or forceful physical contact of any kind;
- Rape, molestation, incest (if victim is a minor), forced prostitution;
- Kidnapping, unlawful restraining or forceful detention;
- Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially appear violent but that are part of an overall pattern of violence.

**Extreme Cruelty Examples**

Acts of extreme cruelty include but are not limited to:
- Isolation;
- Humiliation;
- Degradation, use of guilt, minimizing or blaming;
- economic control/abuse;
- Coercion;
- Threatening to commit violent act toward the self-petitioner (or self-petitioner's children);
- Acts intended to create a fearful, compliant or submissive attitude by the self-petitioner, including threats related to the self-petitioner's immigration status.

**Third Party Acts**

Third party acts may be considered as qualifying battery/extreme cruelty by the abuser if:
- The acts are directed against the self-petitioner (or self-petitioner's children); and
- The abuser willfully condoned or participated in or incited the acts.

*Continued on next page*

## **Battery / Extreme Cruelty**, Continued

**Evidence of Battery/ Extreme Cruelty**

Evidence of battery/extreme cruelty may include but is not limited to:
- Reports and affidavits from police, judges and other court officials;
- Reports and affidavits from medical personnel, school officials and clergy;
- Reports and affidavits from social workers or other social service agency personnel;
- Protection orders or proof of other legal steps taken to end the abuse;
- Documentation to show the petitioner sought safe-haven in a family violence shelter or similar place;
- Photographs of injuries;
- Documentary proof of non-qualifying abuse to establish a pattern of abuse.

**Other Abuse Requirements**

Battery/extreme cruelty must have been committed by the USC or LPR (or, under certain circumstances, by a third party, as discussed above).

The battery/extreme cruelty must have been committed against the self-petitioner or, for self-petitioning spouses, against self-petitioner's children. For self-petitioning children or parents, the battery/extreme cruelty must have been committed against the self-petitioner.

The battery/extreme cruelty must have taken place during the qualifying relationship.

| For self-petitioning… | The battery/extreme cruelty must have taken place.. |
|---|---|
| Spouses, | During the marriage. |
| Parents, | After the abusive son or daughter turned 21 years of age. |
| Children, | While the self-petitioner was under 21 years of age. |

# Good Moral Character

**General**

Affirmative evidence of good moral character is required for the three-year period immediately preceding the filing of the petition.

Though section 204 of the INA provides no required statutory time period for a VAWA self-petitioner to establish good moral character, regulations at 8 CFR 204.2(c)(2)(v) describe evidence covering the three-year period immediately preceding the filing of the petition. USCIS interprets this regulations as establishing that affirmative evidence of good moral character must be submitted addressing this three-year period.

Officers must consider all evidence in the record, including evidence of the self-petitioner's character both before and during the three-year period, in determining whether a self-petitiong has established that he or she is a person of good moral character.

**NOTE:** Affirmative evidence of good moral character is required for all self-petitioning children age 14 and older.

*Continued on next page*

# Good Moral Character, Continued

**Restrictions in Section 101(f) of the INA**

Good moral character is defined at section 101(f) of the INA.  It states that no person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was:

- A habitual drunkard; or
- A member of one or more classes of persons, whether in admissible or not, described in:
  - INA 212(a)(2)(A): Convicted of certain crimes; or
  - INA 212(a)(2)(B): Multiple criminal convictions; or
  - INA 212(a)(2)(C): Controlled substance trafficker
  - Exception made for single offense of simple possession of 30 grams or less of marijuana; or
  - INA 212(a)(2)(D): Prostitution and commercialized vice; or
  - INA 212(a)(6)(E):  Alien smugglers; or
  - INA 212(a)(10)(A): Practicing polygamists; or
- One whose income is derived principally from illegal gambling activities; or
- One who has been convicted of two or more gambling offenses committed during such a period; or
- One who has given false testimony for the purpose of obtaining any benefits under the INA; or
- One who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of 180 days or more, regardless of whether the offense, or offenses, for which he has been convicted were committed within or without such period; or
- one who at any time as been convicted of an aggravated felony.  See *INA 101(a)(43).*
- One who at any time has engaged in conduct described in section 212(a)(3)(E) (relating to assistance in Nazi persecutions, participation in genocide, or commission of acts of torture or extrajudicial kills) or section 212(a)(2)(G) (relating to severe violations of religious freedom).

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004175

## Good Moral Character, Continued

**"Catch-all" Provision in Section 101(f) of the INA**

The fact that a person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not a person of good moral character. This provision within INA section 101(f) means that USCIS has the discretion to determine that individuals lack good moral character for reasons not described in INA section 101(f).

**Evidence**

Affirmative evidence of GMC is required. Primary evidence of the self-petitioner's good moral character is the self-petitioner's affidavit attesting to his or her criminal history and moral character.

The affidavit may be accompanied by criminal background checks or police clearances issued by the appropriate local, county or state criminal justice authority. Such evidence may include but is not limited to:

- Searches can be based on a name and date of birth search or on fingerprints;
- If search is by name only, self-petitioner should supply clearances under all aliases (including maiden name if applicable) and dates of birth;
- Period for clearances should cover at least the three years preceding filing of the self-petition;
- Clearances should be provided for each place the self-petitioner has resided for at least six months during the three years preceding the filing of the self-petition.
- If the petitioner resided abroad for at least six months during the three years preceding the filing of the self-petition, foreign police clearances may be submitted – see *Foreign Affairs Manual (FAM)* for availability of foreign clearances.
- Electronic systems checks may also be used. Example: NON-IDENT that is less than 15-months old at the time of filing. (Refresh prints if necessary.)
- Individuals with criminal records are required to submit a certified, final disposition for all charges and arrests.

**NOTE:** Petitions may not be denied for failure to submit criminal background checks or police clearances if the self-petitioner has submitted an affidavit attesting that he or she has never been arrested. A self-petitioner may include an explanation for why a criminal background check or police clearance is not available, but is not required to.

A "No Hit" in TECS manifest system or "Does Not Relate" resolution from Background Checks Unit is **not** sufficient to demonstrate good moral character.

*Continued on next page*

Confidential                    DEF - 00004176

## Good Moral Character, Continued

**Evidence,**
continued

Self-petitioners should be given adequate notice via an RFE of any additional evidence that is required to meet the GMC requirement.  If the self-petitioner does not submit sufficient evidence to establish GMC, the self-petition should be denied due to failure of the self-petitioner to meet his/her burden of proof and **not** the basis of failure to submit any particular piece of evidence.  See 1998 Virtue Memo mentioned earlier in this SOP.

*Continued on next page*

46

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004177

# Good Moral Character, Continued

| | |
|---|---|
| **Section 101(f)(8)-(9) Permanent Bars to GMC** | If evidence in the record that, at any time on or after November 29, 1990, the self-petitioner was convicted of an aggravated felony as defined in INA 101(a)(43), the I-360 must be denied for lack of good moral character, pursuant to INA 101(f)(8).

If evidence in the record reveals that, at any time, the self-petitioner engaged in conduct described at INA 212(a)(3)(E) (relating to Nazi persecution, participation in genocide, or commission of acts of torture or extrajudicial killings) or 212(a)(2)(G) (relating to severe violations of religious freedom), the I-360 must be denied for lack of good moral character pursuant to INA section 101(f)(9). |
| **Section 101(f)(1)-(7) Violations Occurring within 3 years prior to filing** | If evidence in the record reveals an act, conviction, or series of acts or conviction(s) that occurred within the three-year period immediately preceding the filing of the I-360 or while the I-360 is pending, the self-petitioner will be held to the restrictions set forth in section 101(f)(1)-(7).

However, under INA 204(a)(1)(C), an act or conviction under INA 101(f)(1)-(7) does not bar a finding of good moral character if the act or conviction (1) is waivable with respect to the self-petitioner's inadmissibility under INA 212(a) or deportability under INA section 237(a); and (2) was connected to the battery/extreme cruelty underlying the I-360.

If no waiver is available and/or the act was not connected to the battery/extreme cruelty, the I-360 will be denied for lack of good moral character, pursuant to the relevant subsection in INA 101(f)(1)-(7).

*See* William R. Yates memo *Determinations of Good Moral Character in VAWA-Based Self-Petitions* dated Jan. 19, 2005. |

*Continued on next page*

47

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004178

# Good Moral Character, Continued

**Section 101(f)(1)-(7) Violations Occurring More Than 3 Years Before Filing**

If evidence in the record reveals an act, conviction, or series of acts or conviction(s) that fall within INA 101(f)(1)-(7) but occurred outside the three-year period immediately preceding the filing of the I-360, you must make an individualized, discretionary determination as to whether the self-petitioner has established he/she is a person of good moral character. You must consider all of the evidence of record, including all positive and adverse factors, to determine whether under the standards of the average citizen of the community, the self-petitioner has established that he or she is a person of good moral character.

Particularly relevant considerations include, but are not limited to:
- The severity of the act/conviction;
- Whether the act/conviction is part of a pattern of bad acts or demonstrates a proclivity toward unlawful behavior over a period of time; and
- Whether the self-petitioner has demonstrated rehabilitation

If you determine that a finding of good moral character is not warranted, the I-360 should be denied under the "catch-all" provision of INA 101(f), which requires a full discretionary analysis.

If you believe that a finding of good moral character is warranted, the case must be referred to supervision with a recommendation as to why the self-petitioner has established good moral character despite the INA 101(f)(1)-(7) violation(s) that occurred more than three years before filing the I-360.

**EXAMPLES:**
1. The self-petitioner was twice convicted of shoplifting 10 years prior to filing but has no additional infractions since that time. The self-petitioner could be considered to have re-established good moral character.
2. The self-petitioner was arrested four times in four years, the last arrest coming slightly more than 3 years prior to the filing of the I-360. This self-petitioner may not be considered to be a person of good moral character based on the pattern of habitual, criminal behavior.

The more serious the past misconduct, the longer the period of good conduct must be in order to meet the burden of establishing good moral character. Matter of P-, 8 I&N Dec. 167 (R.C. 1958); Matter of DeLucia, 11 I&N Dec. 565 (BIA 1966), aff'd DeLucia v. INS, 370 F.2d 305 (7th Cir. 1966), cert. denied, 386 U.S. 912 (1967). Matter of Sanchez-Linn, 20 I&N Dec. 362 (BIA 1991).

*Continued on next page*

48

Confidential

# Good Moral Character, Continued

**False Claim to U.S. Citizenship or Unlawful Voting**

If evidence in the record reveals that, at any time, the self-petitioner made a false statement or claim to U.S. citizenship, or registered to vote or voted in an election restricted to U.S. citizens, you must consider all of the evidence of record, including all positive and adverse factors, to determine whether under the standards of the average citizen of the community, the self-petitioner has established that he or she is a person of good moral character.

The "catch-all" provision of INA 101(f) states that a denial on good moral character grounds may not be based solely on a false statement or claim to U.S. citizenship, or a related voting violation, if all of the following criteria are met:

- Each of the self-petitioner's parents is or was a U.S. citizen;
- The self-petitioner permanently resided in the U.S. prior to turning 16 years old; and
- The self-petitioner reasonably believed that she was a U.S. citizen at the time she made the false statement or claim of U.S. citizenship, or registered to vote or voted in an election restricted to U.S. citizens.

If you determine that a finding of good moral character is not warranted based on a false claim to U.S. citizenship or unlawful voting, the I-360 should be denied under the "catch-all" provision of INA 101(f) and 8 CFR 204.2(c)(1)(vii), which requires a full discretionary analysis.

*Continued on next page*

49

Confidential

# Good Moral Character, Continued

**Acts Not Barred by section 101(f)**

If a self-petitioner's file contains evidence of behavior occurring at any time before or after filing that is not barred by the restrictions in section 101(f) but that is contrary to the standards of the average citizen in the community, you must consider all of the evidence of record, including all positive and adverse factors, to determine whether under the standards of the average citizen of the community, the self-petitioner has established that he or she is a person of good moral character.  See 8 CFR 204.2(c)(1)(vii).

The regulations specify that unless there are extenuating circumstances, a self-petitioner will nto be found to have established good moral character if she willfully failed or refused to support dependents, or committed unlawful acts that adversely reflect upon her moral character, or was convicted or imprisoned for such acts.

Other particularly relevant considerations include, but are not limited to:
- The severity of the act/conviction;
- Whether the act/conviction is part of a pattern or bad acts or demonstrates a proclivity toward unlawful behavior over a period of time; and
- Whether the self-petitioner has demonstrated rehabilitation.

If you determine that a finding of good moral character is not warranted, based on a case-specific analysis of acts not barred under section 101(f) but that are contrary to the standards of the average citizen in the community, the I-360 should be denied under the "catch-all" provision of INA 101(f) and 8 CFR 204.2(c)(1)(vii), which requires a full discretionary analysis.

If you believe that a finding of good moral character is warranted, the case must be referred to supervision with a recommendation as to why the self-petitioner has established good moral character despite the bad acts/convictions or other adverse evidence in the record.

*Continued on next page*

Confidential                                    DEF - 00004181

## Good Moral Character, Continued

| | |
|---|---|
| **Ongoing GMC Requirement** | Self-petitioners are required to maintain good moral character through the time of adjustment. Any violations of section 101(f) of the INA occurring after the approval of the I-360 can be considered for revocation of the approval. |
| **Adverse Impact on Other Eligibility Criteria** | Acts that do not prompt a negative finding on good moral character may still impact other eligibility criteria. For example, if a self-petitioner demonstrates a pattern of fraud and misrepresentation (though not grounds for a denial under 101(f)), that individual's credibility may be diminished sufficiently that other eligibility criteria are negatively impacted. It is within your discretion to make this determination. |

51

Confidential                                                   DEF - 00004182

# General Processing Information

## Derivatives

| | |
|---|---|
| **General** | Certain family members of the self-petitioner can be recognized as derivatives of an approved I-360.  Being a derivative allows that individual to request deferred action and work authorization as well as apply for adjustment of status when the priority date of the I-360 is current. |
| **Eligibility** | A self-petitioning spouse may seek derivative status for his/her children who are under 21 years of age and unmarried at the time the I-360 is filed.<br><br>The child of a self-petitioning child may be considered for derivative status.<br><br>**NOTE**:  An alien parent of a self-petitioning child is not eligible for consideration as a derivative. |
| **Evidence** | Evidence required for derivative status is as follows:<br><br>● Evidence the individual met the definition of child at the time the I-360 was filed.<br><br>**NOTE:**  Self-petitioning child cannot be married at the time the I-360 is approved. |
| **Processing** | Annotate the I-360 routing worksheet by checking the block for the J2 letter.  List the names and dates of birth for each derivative being included on the notice. |
| **TECS** | TECS checks are not required for derivatives of the I-360. However, if the derivatives listed on the I-360 filed individual I-485s, TECS is required under the derivative's A-file number. |
| **Multiple Pending I-360s in One File** | Sometimes you will find multiple pending I-360s within one A-file. Work each of these cases to completion separately.<br>● Send out an RFE/NOID for each if needed.<br>● Approve both or deny both. |

Confidential

# Deferred Action

**General**   Deferred action is an administrative act that gives lower priority for removal to certain cases.  Individuals granted deferred action are eligible for work authorization.

**Requirements**   In order to be eligible for deferred action, the self-petitioner must:

1. Have an approved I-360;
2. Be physically present in the U.S.; and
3. Not hold lawful permanent resident status.

**IMPORTANT:**  If the self-petitioner is currently a conditional resident, he or she is considered to hold lawful permanent resident status.  You must bring the file to your SISO or ISO3 to continue processing.

**Eligibility**   PCQS-EOIR data must be reviewed to determine if a self-petitioner is eligible for deferred action.

Refer to the table below to determine if the self-petitioner is eligible for DAS, and the correct routing of the file.

| If PCQS-EOIR Status of Proceedings indicates... | Then... | Routing |
|---|---|---|
| No data  in PCQS-EOIR, or "Final Disp" indicates:<br>• TERMINATED, or<br>• RELIEF GRANTED | • Self-Petitioner is not in proceedings, and<br>• Is eligible for DAS. | • Grant deferred action.<br>• See Appendix 2: Routing Worksheet Examples for proper annotations and routing for this scenario. |
| Hearing date has not passed **OR** "Final Disp "indicates:<br>• Final Removal Order (FRO)<br>• Not Removed (NOT R/O)<br>• Administrative Final Removal Order (ADM FRO),<br>• Voluntary Departure Order (VDO), or<br>• Any other data in PCQS-EOIR | • Self-Petitioner's eligibility for deferred action is uncertain. | • Do not grant deferred action.<br>• Send to AST for processing the I-360 approval.<br>• See Appendix 2: Routing Worksheet Examples for proper annotations and routing for this scenario. |

I-360 SOP / Last Revised: April 16, 2018

Confidential   DEF - 00004184

# Open & Administratively Closed Removal Proceedings

**General**

In certain instances, removal proceedings against a self-petitioner will be administratively closed to allow for the filing of an I-360 or to delay a final decision on the removal proceedings until the I-360 is adjudicated to completion.

**Responsibilities**

You are responsible for identifying instances when the alien's removal proceedings were administratively closed pending a decision on the I-360.

**Processing for Administratively Closed Proceedings**

If the I-360 filed by an alien who has had removal proceedings administratively closed to allow the filing of the I-360 is ultimately denied, it is your responsibility to route the file back to the ICE office having jurisdiction over the removal proceedings.

You will annotate the worksheet to have the file relocated to the office that administratively closed the proceedings.

If an appeal is filed, you must adjudicate/route the appeal in accordance with the Motions and Appeals SOP. If the denial is ultimately upheld by the AAO, you will route the file to ICE after VSC reviews the AAOs findings.

**Process for Open Proceedings**

It is your responsibility to route the file back to the ICE office having jurisdiction over the open removal proceedings after a final decision is made on the I-360.

Annotate the worksheet to have the file relocated to the office that administratively closed the proceedings.

If an appeal is filed, you must adjudicate/route the appeal in accordance with the Motions and Appeals SOP. If the denial is ultimately upheld by the AAO, you will route the file to ICE after VSC reviews the AAO's findings.

If the filing is approved, you will route the file to the office having jurisdiction over the proceedings after the approval notice and any required CIS updating is complete.

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004185

# Classifications

**General**   Self-petitioning spouses and children of a USC receive an immediate relative classification.  Self-petitioning spouses and children of an LPR receive a preference classification.

**Classifications**

| Self-petitioner is…. | Abuser is… | Classification is… |
|---|---|---|
| Spouse | USC | IB-1 |
| Spouse | LPR | B-21 |
| Spouse | LPR (Cuban Adjustment Act) | BX1 |
| Child | USC | IB-2 |
| Child | LPR | B-22 |
| Child | LPR (Cuban Adjustment Act) | BX2 |
| Spouse | U.S. National | B-21 |
| Child | U.S. National | B-22 |
| Son or daughter (filed after 21 but before 25 years of age) | USC | IB2 |
| Son or daughter (filed after 21 but before 25 years of age) | LPR | B22 |
| Parent | USC | IB-5 |

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004186

# Processing

## Record of Proceeding (ROP)

---

**ROP I-360 filed as a Standalone Petition**

You are responsible for the correct arrangement of the file when a final action is taken. When present in the same file as the I-360, documents must be placed in the following order, from the top down.

- Pink Record of Proceeding Cover Sheet (*if applicable – for denials*)
- 384 IIRIRA Warning Sheet
- I-360 pre-screening / safe address worksheet
- Form G-28 associated with the I-360 (*if applicable*)
- Denial Notice/Abandonment Denial Notice (*if applicable*)
- No Response RFE/NOID (*if applicable*) **This is also where you would place your RFE/NOID that you have just issued while waiting for a response**
- PFD notice(s)/PFD denial notice
- I-360 petition
- Supporting documents initially submitted with the I-360 petition. The specific order of the initial material is to be determined by the adjudicating officer.
- (*If applicable*) RFE/ NOID and documents submitted with response to the RFE/NOID. If multiple notices were sent, they should be placed in chronological order. **If the response to the RFE/NOID comes in without a copy of the RFE/NOID please take the copy from front of file and place it with the response.  If the copy of the RFE/NOID is attached with the response you can shred the initially issued RFE/NOID at front of file.**
- Other documents previously in the file.

---

*Continued on next page*

*I-360 SOP / Last Revised: April 16, 2018*

Confidential

## **Record of Proceeding (ROP)**, Continued

**ROP I-360
Filed
Concurrently
with I-485**

When an I-485 is present in the same file as the I-360, documents must be placed in the following order, from the top down.

- Pink Record of Proceeding Cover Sheet (*if applicable – for denials*)
- 384 IIRIRA Warning Sheet
- I-360/I-485 pre-screening / safe address worksheet (if applicable)
- Form G-28 associated with the I-485 (*if applicable*)
- Denial Notice/Abandondment Denial Notice (*if applicable)*
- Pending I-485, with its supporting documents
- Form G-28 associated with the I-360
- Denial Notice/Abandonment Denial Notice (if applicable)
- No Response RFE/NOID (*if applicable) \*\**This is also where you would place your RFE/NOID that you have just issued while waiting for a response\*\**
- PFD notice(s)/PFD denial notice
- I-360 petition
- Supporting documents initially submitted with the I-360 petition. The specific order of the initial material is to be determined by the adjudicating officer.
- (*If applicable*) RFE/ NOID and documents submitted with response to the RFE/NOID. If multiple notices were sent, they should be placed in chronological order. \*\*If the response to the RFE/NOID comes in without a copy of the RFE/NOID, take the copy from front of file and place it with the response.  If the copy of the RFE/NOID is attached with the response you can shred the initially issued RFE/NOID at front of file.\*\*
- Other documents previously in the file.

I-360 SOP / Last Revised: April 16, 2018

Confidential

# Approvals

**Introduction**  For the vast majority of these cases, post-adjudication processing is completed in the United States.  Approved petitions should not be sent abroad for processing unless this has been specifically requested by the petitioner.  Where applicable, specific instructions for overseas processing are included in each of the sections below.

**Preliminary Steps**  Follow the steps below when preparing to approve a case.

| Step | Action |
|------|--------|
| 1 | Complete the requirements checklist.  It should be found on the non-record side of the file and should remain there. |
| 2 | If the file contains a Statement of Findings (SOF) from CFDO, review carefully and determine whether the evidence submitted overcomes the derogatory information in the SOP.  Refer to the ***Approvals with SOF*** section below. |
| 3 | Determine whether there are qualified derivatives. |
| 4 | Note whether a visa is currently available for the petitioner.  Visas are always available to the spouse and child(ren) of U.S. citizens as they are Immediate Relative classifications.  To determine visa availability for the spouse and child(ren) of lawful permanent residents (second-preference classifications), refer to the Family Based, Chart B – Dates for Filing Family-Sponsored Visa Applications of the current <u>DOS Visa Bulletin</u> found on the VSC ECN at:  Adjudications Units>Adjudications References>Visa Bulletin>Link to DOS for the VISA Bulletin. |
| 5 | Note whether the petitioner is currently in proceedings, or if the file contains a pending I-485. |
| 6 | Determine if DAS can be granted.  Refer to the chart below:<br><br>| If self-petitioner is in proceedings and/or an LPR … | Then he or she is… |<br>| Yes | Not eligible for DAS. |<br>| No | Eligible for DAS. | |
| 7 | Arrange the Record of Proceeding (ROP).  Refer to the <u>Records of Proceedings (ROP)</u> section of this SOP. |
| 8 | Perform TECS checks in accordance with current standard procedures.  Include any locally pending I-485 if applicable.<br><br>IMPORTANT:  Before taking a final action on your case, update the History Action Code (HAC) in CLAIMS 3 when you send or receive a file being referred to the BCU for resolution.  Refer to the HAC Process for Referrals section of the *VSC TECS SOP for Adjudications.* |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

58

# Approvals, Continued

**Approval with SOF**

Refer to the table below if your filing includes an SOF.

| If you have a fraud found SOF… | Then … |
|---|---|
| Based on an I-360, | • Bring the filing to your SISO.<br>• You, your SISO, a CFDO Supervisory Immigration Officer (SIO), and Section Chiefs (if appropriate) will determine if the case is approvable.<br><br><table><tr><th>If the filing…</th><th>Then…</th></tr><tr><td>Can be approved,</td><td>Complete an <u>SOF Reviewed Memo</u>, placing it on the non-record side.</td></tr><tr><td>Will be denied,</td><td>No memo is needed. Refer to the *Denials* section of this SOP.</td></tr></table> |
| Based on any other underlying petition/application), | • Bring to the filing to the CFDO help desk.<br>• If the help desk makes the determination that no additional investigation is needed, CFDO will document it by placing a memo into the file. |
|  | • |

**NOTE:** If you find an inconclusive SOF, or any other adverse information, you may complete a <u>VAWA Adverse Memo</u>, placing it on the non-record side.  See *Acknowledging Information in the File*.

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

# Approvals, Continued

**Annotations on Petition**

Follow the steps below to annotate the I-360 petition for approvals.

| Step | Action |
|------|--------|
| 1 | Check "A-file Reviewed" if appropriate. |
| 2 | If the file contains a pending I-485, check "I-485 Filed Concurrently." |
| 3 | Enter the appropriate classification code as indicated below:<table><tr><td>Spouse of a U.S. citizen</td><td>IB1</td></tr><tr><td>Child of a U.S. citizen</td><td>IB2</td></tr><tr><td>Spouse of a Lawful Permanent Resident</td><td>B21</td></tr><tr><td>Child of a Lawful Permanent Resident</td><td>B22</td></tr><tr><td>Parent of a U.S. citizen Son/Daughter</td><td>IB5</td></tr></table> |
| 4 | Determine whether post-adjudication processing is to occur in the U.S. or abroad.<table><tr><td>**If …**</td><td>**Then …**</td></tr><tr><td>The petitioner will adjust status within the U.S.,</td><td>Enter "245" in the Consulate block.</td></tr><tr><td>The petitioner has requested processing abroad,</td><td>Leave the Consulate block empty.</td></tr></table> |
| 5 | Write in the appropriate priority date in the priority date field. |
| 6 | Write '204(g) cleared' in the remarks section if the evidence met the clear and convincing standard related to 204(g). |
| 7 | Write 'over 21, under 25' in the remarks section if the self-petitioner demonstrated that 'the abuse was at least one central reason for the filing delay" permissible under INA section 204(a)(1)(D)(v). |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

60

# Approvals, Continued

**Update CLAIMS 3**

Follow the steps below to update CLAIMS 3 for approvals.

| Step | Action |
|---|---|
| 1 | Review all previously entered data. Ensure that correct information appears in both Part 1 and Part 3, as well as the G-28 screen, if applicable. Ensure the address information in each of these sections is current. Also ensure the classification shown in Part 2 matches the classification you are approving. |
| 2 | From the main data screen, press [F10]. |
| 3 | • Select "Approve the Case."<br>• Select "Approve – order notice." |
| 4 | Select the appropriate approval phrase as indicated below:<br><br>

| Scenario | Approval Phrase in CLAIMS 3 |
|---|---|
| No I-485 pending; visa available | Indicated would adjust status; appears eligible now |
| No I-485 vending; visa not available | Adjust status; not eligible now; not barred |
| I-485 pending | Will be notified separately on pending I-485 |
| Visa processing abroad | Requested send to consulate – sent to NVC |

<br>**NOTE:** There are no circumstances where a VAWA petition should be updated as "Indicated would Adjust Status; clearly ineligible." |
| 5 | • Enter the correct Classification.<br>• Enter the correct Priority date.<br>• Leave the Consulate field blank. |
| 6 | "Send to Clerical" should always indicate "Y." Approval notices for this case type are not to be batch printed. |
| 7 | Press [F4] to confirm, and press the Escape key to back out. |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004192

## **Approvals**, Continued

| Prepare Worksheet | Follow the steps below to prepare the I-360 VAWA worksheet for approvals. |
|---|---|

| Step | Action |
|---|---|
| 1 | Check "1st approval notice." |
| 2 | Refer to the appropriate approval phrase as indicated below. |

| Scenario | Approval Phrase on Worksheet |
|---|---|
| No I-485 pending; visa available | Eligible |
| No I-485 pending; visa not available | Not eligible |
| I-485 pending | I-485 pending |
| Visa processing abroad | NVC |

| Step | Action |
|---|---|
| 3 | Deterine if the Self-Petitioner is eliegible for Deferred Action Status (DAS). |

| If self-petitioner is in proceedings and/or an LPR … | Then he or she is… |
|---|---|
| Yes | Not eligible for DAS. |
| No | ● Eligible for DAS.<br>● Check box labeled "J1A: Initial (Petitioner)."<br>● Check box labeled "Update CIS: COA as DAS." |

| Step | Action |
|---|---|
| 4 | Determine if there are qualified relatives.* |

| If there are … | Then… |
|---|---|
| Qualified Derivatives, | ● Check box labeled "J2: Derivatives."<br>● Enter each derivative's name and date of birth. |
| No qualified derivatives, | ● Draw a line through "J2: Derivatives."<br>● If derivatives were listed on the petition, write a brief note on the worksheet indicating why they do not qualify. |

**\*NOTE:** Qualified derivatives are children of the self-petitioner who are not U.S. citizens or lawful permanent residents, were under the age of 21, and unmarried at the time that the I-360 was filed. They do not need to be present in the United States.

*Continued on next page*

Confidential

# **Approvals**, Continued

**Prepare
Worksheet**,
continued

| Step | Action | |
|---|---|---|
| 4 | Indicate appropriate routing. | |
| | **If…** | **Then …** |
| | An I-485 is pending at VSC, | Check "Relocate To" and "MSC." |
| | An I-485 is pending at another office, | • Determine the petitioner's current residence;<br>• Check "Relocate To" and "Local Office." Enter the 3-letter designation for the district office with jurisdiction over the petitioner's residence.<br>• Prepare a buckslip for the district office's 245 section. Indicate that an I-485 is pending at that district, and note the date it was filed.  Also indicate that the I-360 has been approved, and note the classification used. Place the buckslip under the blue VAWA worksheet;<br>• Change the I-485 address to the designated safe address. |
| | The petitioner is currently in proceedings, | • Check "Relocate To" and "Local Office" and enter the 3-letter designation for the district office having jurisdiction over the petitioner's proceedings. |
| | The petitioner has requested consular processing, | • Remove only the original Safe Address worksheet, G-28, and I-360 petition from the file;<br>• Prepare a photocopy of the Safe Address worksheet, G-28, and I-360 petition and place the copies in the relating A-file.  Be sure to label the copy as such;<br>• Attach the I-360 VAWA worksheet and a yellow Section 384 Warning Sheet to the original Safe Address worksheet, G-28, and I-360 petition. Under "Approval phrase," indicate "NVC";<br>• Request AST place the original I-797 approval notice with the original petition and other documents going to the NVC and place a copy of the approval notice in the A-file with the copy of the petition on the record side;<br>• In the routing section, check "other" and indicate "National Visa Center"; forward <u>original</u> petition to NVC;<br>• Have the petition deconsolidated in RAILS;<br>• Route the A-file containing a copy of the petition and approval notice to Records. |
| | None of the above apply, | Check "Records." |
| 5 | Indicate consolidation if required. | |
| 6 | Number steps for clarity. | |

*Continued on next page*

63

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004194

# Approvals, Continued

**CLAIMS 3 Data Needs Updating Prior to Approval Being Released**

Follow the steps below to update CLAIMS 3 data before the approval notices are sent by AST.

| Step | Action |
|------|--------|
| 1 | Review the record to determine whether the requested amendment is appropriate. |
| 2 | TECS checks are not required for amended notices, unless a name or date of birth has been changed. |
| 3 | Annotate the petition with revised data as appropriate. |
| 4 | Approve the case again in CLAIMS 3.<br>• Enter the appropriate approval phrase, classification and priority date.<br>• CLAIMS 3 history will show DATA CHANGED IN RECORD.<br>• No production count is taken for an amended approval. |

64

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004195

# Request for Evidence (RFE)

**Introduction**

When requesting evidence, a distinction is made between initial evidence and additional evidence. The distinction relates to the nature of the evidence requested, not to the number of requests that have been made.

Initial evidence is evidence which is required by regulation or by the instructions on the form.

Additional evidence is evidence which may not be specifically listed as required in the regulations or in the instructions to the form, but is required to establish eligibility for the benefit sought.

Refer to the current guidelines established by the VAWA program supervisors to determine the appropriate time to allow for a response to a RFE. Because initial evidence requirements for VAWA filings are non-specific, most requests will be for additional evidence. Due to the fact that victims may not have ready access to some documents, the maximum response time allowed by regulations will generally be granted.  No matter the selection, initial or additional, the officer will be allotted 87 days for a response.

**Prepare the RFE and Worksheet**

Prepare and issue the RFE in ECHO.  Place copy of the RFE in the record according to the ROP section of this SOP.

See Appendix 2: Routing Worksheet Examples for proper worksheet annotation for this scenario.

*Continued on next page*

# Request for Evidence (RFE), Continued

**Update CLAIMS 3**

Follow the steps below to update CLAIMS 3 when requesting evidence.

| Step | Action |
|------|--------|
| 1 | Review all previously entered data.  Ensure that correct information appears in both the petitioner's and the beneficiary's sections, as well as the G-28 section, if applicable. |
| 2 | From the main data screen, press [F10]. |
| 3 | • Select "Case Review." <br> • Select "Place in Suspense." <br> • Select "Order Initial Evidence Request Notice," "Order Additional Evidence Request Notice," or "Order Initial & Additional Evidence Request Notice."  The time allotted for a response will be 87 days no matter which selection is chosen. |
| 4 | Answer "Yes" to confirm Change Case Status. |
| 5 | Press [Esc] to back out. |

**Prepare the Worksheet**

Follow the steps below to prepare the I-360 VAWA worksheet for RFEs.

| Step | Action |
|------|--------|
| 1 | Check off FCU/FMU. |
| 2 | Check I-360 RFE Hold Shelf (87 Days). |
| 3 | Number the steps for clarity. |

Refer to Appendix 2:  Routing Worksheet Examples for proper worksheet annotation for this scenario.

# Notice of Intent to Deny (NOID)

| | |
|---|---|
| **When to Issue a NOID** | When determining whether or not to issue a NOID, these events and scenarios below are permissible for issuance of a NOID. |

- 204(c);
- Convictions that would merit a denial under INA 101(f) subsections
- I-360 filed subsequent to a previous I-360 denial with no new evidence submitted;
- LPR spouse lost status within two years from the filing date (if there is no connection between the loss of status and an act of domestic violence);
- Secondary evidence suggests that a qualifying relationship does not exist,
- RAP Sheet or police clearance(s) render the self-petitioner (SP) ineligible pursuant to INA 101(f) subsections; or
- The SP's personal statement, affidavit, or supporting evidence appear to make him/her statutorily ineligible in regards to one of the seven eligibility requirements (except for abuse, battery/extreme cruelty, and good faith marriage).

**Update CLAIMS 3**

Follow the steps below to update CLAIMS 3 for Intents to Deny.

| Step | Action |
|---|---|
| 1 | Review all previously entered data. Ensure that correct information appears in both the petitioner's and the beneficiary's sections, as well as the G-28 section, if applicable. |
| 2 | From the main data screen, press [F10]. |
| 3 | Select "Case Review."<br>Select "Place in Suspense."<br>Select "Intent to Deny notice ordered." |
| 4 | Answer "Yes" to confirm Change Case Status. |
| 5 | Press the Escape key to back out. |

**Prepare the NOID & Worksheet**

Prepare the NOID in ECHO, selecting the appropriate paragraphs to address the issues of your case. (Refer to the ECHO User Guide for additional information).

Refer to Appendix 2: <u>Routing Worksheet Examples</u> for proper worksheet annotation for this scenario.

Confidential

# Denials

**Preliminary Steps**

Follow the steps below when preparing to deny a case.

| Step | Action |
|------|--------|
| 1 | Arrange the Record of Proceeding. Refer to the ROP section of this SOP. |
| 2 | Note whether the petitioner is currently in proceedings, or if the file contains a pending I-485. |
| 3 | Perform TECS checks in accordance with current standard procedures. Include any locally pending I-485s if applicable.<br><br>IMPORTANT:  Before taking a final action on your case, update the History Action Code (HAC) in CLAIMS 3 when you send or receive a file being referred to the BCU for resolution.  Refer to the HAC Process for Referrals section of the *VSC TECS SOP for Adjudications*. |

**Annotate the Petition**

Apply your denial stamp and add your signature.

**Prepare the Letter**

Prepare the appropriate standard letter in ECHO.  Refer to the ECHO User Guide for additional information.

**Update CLAIMS 3 & Prepare the Worksheet**

Follow the steps below to update CLAIMS 3 for denials.

| Step | Action |
|------|--------|
| 1 | Review all previously entered data. Ensure that correct information appears in both the petitioner's and the beneficiary's sections, as well as the G-28 section, if applicable. |
| 2 | From the main data screen, press [F10]. |
| 3 | Select "Deny the Case."<br>Select "Order Denial notice." |
| 4 | Answer "Yes" to confirm Change Case Status.  The case will automatically be placed in suspense, preventing further action. |
| 5 | To release the case from suspense:<br>Press [Alt] and [F8].<br>Enter your security codes in the appropriate fields.<br>Press [F4] and choose "Confirm Action." |
| 6 | Press [Esc] to back out. |

Prepare the I-360 VAWA worksheet for denials.  Refer to *Appendix 2: Routing Worksheet Examples* for proper worksheet annotation for this scenario.

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004199

# Withdrawals

| | |
|---|---|
| **Caution** | Review every request for withdrawal carefully to determine its validity, and to ensure that the acknowledgement notice will go to a safe address. |
| **ROP** | Place the request for withdrawal immediately under the G-28, and above any PFD notices. If there are is an outstanding request for evidence or notice of intent, place it directly beneath the withdrawal request. |
| **TECS** | Perform TECS checks in accordance with current standard procedures. |
| **Update CLAIMS 3** | Follow the steps below to update CLAIMS 3 for withdrawals. |

| Step | Action |
|---|---|
| 1 | Review all previously entered data. Ensure that correct information appears in both the petitioner's and the beneficiary's sections, as well as the G-28 section, if applicable. |
| 2 | From the main data screen, press [F10]. |
| 3 | Select "Deny the Case." |
| 4 | Select "Order Withdrawal Acknowledgement Notice." |
| 5 | Answer "Yes" to confirm Change Case Status. |
| 6 | Press the Escape key to back out. |

| | |
|---|---|
| **Prepare the Letter** | Prepare the appropriate standard letter in ECHO.  Refer to the ECHO User Guide for additional information. |
| **Worksheet** | Complete routing section as appropriate (see Appendix 2: Routing Worksheet Examples). |
| **Annotations on the Petition** | Affix withdrawal sticker in the action block. |

69

Confidential

# Revocations

**Introduction**

USCIS policy regarding revocation of VAWA-based self-petitions was outlined in a memorandum for Regional Directors from Johnny N. Williams, Executive Associate Commissioner, Office of Field Operations, dated August 5, 2002.

The sole authority to revoke an approved I-360 VAWA self-petition lies with the Vermont Service Center. When any other office encounters an approved I-360 and has reason to believe that it should be reviewed for possible revocation, it should be sent via a local supervisor to the Vermont Service Center, along with a memorandum of explanation. The memorandum should fully explain the adverse information, and specify how it was obtained.

Before a petition may be revoked, the petitioner must be given an opportunity to submit evidence to overcome the grounds for revocation.

**Initial Review**

Review should generally be conducted by the officer who approved the case. There must be good and sufficient cause to warrant a revocation. In addition, in accordance with Section 384 IIRIRA, any adverse information received from the abuser, or from the abuser's family, must be corroborated by reliable independent evidence.

*Continued on next page*

70

*I-360 SOP / Last Revised: April 16, 2018*

DEF - 00004201

# **Revocations**, Continued

**Evidence Not Sufficient to Warrant Revocation**

If the evidence presented is not sufficient to warrant revocation or if it is not corroborated by reliable independent evidence, then no action will be taken on the petition, and CLAIMS 3 will not be updated.  However, a memo reaffirming the original approval must be sent via a local supervisor to the office that requested the review.  Follow the steps below.

| Step | Action |
|------|--------|
| 1 | <ul><li>In ECHO, prepare the J40 standard letter.</li><li>The officer should acknowledge the specific adverse information that has been brought to our attention, and explain why it does not warrant revocation.</li><li>If the request for review was sent via a supervisor, delete the first paragraph of the letter.</li><li>If the request for review was not sent via a supervisor, make a copy of the <u>Johnny Williams memo</u> to be included with your response.</li></ul> |
| 2 | Print 2 copies of the letter, and sign them both. |
| 3 | Attach 1 copy to the front of the file. |
| 4 | Place the second copy inside the file, on the non-record side.  Include a copy of the <u>Johnny Williams memo</u>, if appropriate. |
| 5 | Forward the file to a VAWA supervisor for sign-off. |
| 6 | Forward the file to the office that requested the review. |

*Continued on next page*

Confidential

# Revocations, Continued

**Notice of Intent to Revoke (ITR)**

A Notice of Intent to Revoke (NOIR or ITR) will be issued when independent evidence is discovered that appears to be sufficiently adverse to warrant revocation. Follow the steps below to process a Notice of Intent to Revoke.

| Step | Action |
|------|--------|
| 1 | • In ECHO, prepare the Intent to Revoke letter (J41): <br> • Describe each relevant ground for possible revocation. <br> • Offer suggestions as to the types of evidence to submit to overcome each ground. <br> • If appropriate, prepare sanitized copies of documents that form the basis of the possible revocation, to be sent to the petitioner along with the ITR letter. |
| 2 | Update the I-360 in CLAIMS 3: <br> • Select "CASE REVIEW" <br> • Select "PLACE IN SUSPENSE" <br> • Select "INTENT TO REVOKE NOTICE ORDERED" |
| 3 | On the petition, cover up the approval stamp using white removable correction tape. |
| 4 | Indicate "Intent" and "33 days" on the worksheet. |

*Continued on next page*

Confidential

## Revocations, Continued

**Reaffirm Approval after Notice of ITR**

If the petitioner overcomes the grounds for revocation, then follow the steps below to process a reaffirmation.

| Step | Action |
|------|--------|
| 1 | Perform TECS checks in accordance with standard procedures. |
| 2 | In ECHO, prepare the VAWA reaffirmation letter (J42). |
| 3 | Update the I-360 in CLAIMS 3: Select "APPROVE THE CASE" Select "REAFFIRM APPROVAL AFTER DOS RETURN – ORDER NOTICE"<br><br>**IMPORTANT:** a batch notice will be printed which contains incorrect text. Immediately after updating CLAIMS 3, contact the USCIS Service Desk and request that they pull this notice. |
| 4 | On the petition, uncover the original approval stamp.  Do not change the approval date.  If you are unable to uncover the original stamp, re-stamp the petition using the original approval date. |
| 5 | Indicate the order number on the worksheet. Add instructions for appropriate routing of the file after AST processing. In most cases, the file will be returned to the party that requested the review. |
| 6 | Send the file to AST for processing. |

*Continued on next page*

*I-360 SOP / Last Revised: April 16, 2018*

Confidential

# Revocations, Continued

**Revocation**  If the petitioner is unable to overcome the grounds for revocation, follow
the steps below to revoke the petition.

| Step | Action |
|------|--------|
| 1 | Perform TECS checks in accordance with standard procedures. |
| 2 | Prepare the VAWA revocation letter (J43). |
| 3 | Update the I-360 in CLAIMS 3:<br>Select "DENY THE CASE."<br>Select "ORDER REVOCATION NOTICE." |
| 4 | On the petition, uncover the original approval stamp. Write "Revoked on" and the date above the approval stamp in the Action Block. |
| 5 | Indicate the order number on the worksheet. Add instructions for appropriate routing of the file after AST processing. In most cases, the file will be returned to the party that requested the review.<br><br>**NOTE**:  If deferred action and/or employment authorization was previously granted based on the approved I-360, take appropriate steps to terminate. |
| 6 | Send the file to AST for processing. |

*I-360 SOP / Last Revised: April 16, 2018*

Confidential

DEF - 00004205

# Pending I-485 in A-File

| | |
|---|---|
| **General** | When a visa is immediately available based on the self-petitioner's classification and priority date, he or she may file an Application to Register Permanent Residence or Adjust Status (Form I-485) concurrently with, or subsequent to, his or her I-360 petition.

During the safe address process ISO(1)s screen the I-485s for visa availability.

In general, the final action taken on the I-360 determines the action to be taken on the I-485. |
| **Cuban Adjustment Act (CAA) I-485s** | All files that contain a pending I-485 where the applicant check box 'f' under Part 2, Application Type, should be referred to one of the I-485 POCs. These applicants are filing under Section 1 of the Cuban Adjustment Act and the I-485s must be reviewed to determine if the VSC has jurisdiction to adjudicate the form. |
| **Pending I-485s for Derivatives** | If I-485s have been filed by derivative children, they may be riding with the principal's A-file. Action taken on the derivative(s) application will mirror the action taken on the principal's application. Each derivative A-file will need a valid TECS result. If there are derivative I-485s, officers are responsible for including a valid TECS result for each derivative over the age of 14.

Any variations in the processing are noted below in each scenario. |
| **Removal Proceedings or Final Order of Removal in General** | If the self-petitioner is in removal proceedings or has a final order of removal, the pending I-485 will **ALWAYS** be relocated to the office that has jurisdiction over the removal. This is the office listed in EOIR or EARM. This applies if the I-360 has been approved or denied.

**NOTE**: The VSC can work I-485s based on T or U status if the applicant is in proceedings. This is addressed later in this section.

See the following sections for further information:
- Self-Petitioner in Proceedings or has Final Order of Removal;
- Self-Petitioner in Proceedings or has Final Order of Removal, I-360 Approved; or
- Self-Petitioner in Proceedings or has Final Order of Removal, I-360 Denied. |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

## Pending I-485 in A-File, Continued

**File Contains an I-918/I-918A**

If the A-file also contains an approved or pending I-918/I-918A, I-360 can be worked to completion.  After completion of I-360, route file to a SISO or ISO(3) for adjudication of pending applications/petitions.  Do not take final action on I-485.

See the following sections for further information:
- Self-Petitioner in Proceedings or has Final Order of Removal;
- Self-Petitioner in Proceedings or has Final Order of Removal, I-360 Approved; or
- Self-Petitioner in Proceedings or has Final Order of Removal, I-360 Denied.

*Continued on next page*

76

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004207

# Pending I-485 in A-File, Continued

**I-360 Approved, Visa Available – EAC and MSC I-485s**

After approving an I-360 with a pending Form I-485, you must indicate where the A-file is to be sent.

Follow the steps below to relocate the Form I-485.

| Step | Action |
|------|--------|
| 1 | Determine if the alien is in immigration proceedings or has a final order of removal. |

| If ... | Then ... |
|--------|----------|
| The alien is in immigration proceedings or has a final order of removal, | Complete the I-360 VAWA Worksheet.<br>• Check "Relocate to:" in the Routing/Sign-off section of the I-360 VAWA Worksheet,<br>• Write in the character designator for the field office where the file will be transferred.<br>• Complete the "I-360 based I-485 Relocation Memo" and attach it to the outside of the file.<br>• Relocate out the Form I-485 in CLAIMS 3.<br>– Enter the receipt number in CLAIMS 3.<br>– Select Options.<br>– Select Case Movement – Relocate Out/SC Transfer to Local Office for Field Review.<br>– Enter MSC with the location.<br><br>**NOTE**:  Per Records Management Division/SCOPS directive, all pending applications relocated from a Service Center to a field office for adjudication are to be electronically relocated out to the MSC in CLAIMS 3.<br><br>**IMPORTANT**:  The file will be physically sent to the office that has jurisdiction over the immigration proceedings. |
| The alien is not in immigration proceedings and has no final order of removal, | Check "Relocate to:" in the Routing/Sign-off section of the I-360 VAWA Worksheet.<br><br>**IMPORTANT**:  Do not update CLAIMS 3.  The update will be completed by FMU before shipping the file to the MSC. |

| Step | Action |
|------|--------|
| 2 | Send the file to AST. |

*Continued on next page*

77

# Pending I-485 in A-File, Continued

**I-360 Approved, Visa Available, I-485 no Receipted in CLAIMS 3**

If the record contains an I-485 that was received at a District Office and was not data entered/barcoded, follow the steps below to relocate the I-485 to the appropriate District Office.

| Step | Action |
|------|--------|
| 1 | Check "FMU Relocate to" and indicate appropriate District Office. |
| 2 | Complete Adjustment of Status Relocation Memorandum to the District Office and:<br>• Indicate that the VAWA I-360 has been approved and the file contains a pending I-485;<br>• Include information relating to derivatives, if applicable; and<br>• Place under the blue I-360 VAWA worksheet. |
| 3 | Send the file to AST. |

**I-360 Approved, Visa Not Available**

If an I-360 was approved and the self-petitioner was the spouse or child of a lawful permanent resident (B21 or B22), the visa bulletin should be consulted to ensure that a visa is immediately available based on the priority date and country of birth.  If you believe that a visa is not available and that the I-485 was accepted in error, verify visa availability with a SISO, or ISO(3).

If a visa is not available, the application will be denied using the I485V2 letter.  Before denying the application, ensure that the file does not contain an alternative basis for adjustment of status.

**NOTE:**  If the I-485 indicates it is being filed under Part 2f- husband, wife, or minor unmarried child of a Cuban described in Part 2e –**Do not Deny** even if it appears that a visa is not available. The I-485 must be relocated to the MSC for adjudication at a local field office.

Using the I485V2 letter follow steps provided below for processing the denial and routing the file.

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

78

DEF - 00004209

## Pending I-485 in A-File, Continued

**I-360 Denied**

When an I-360 is denied the I-485 will be denied in most instances.  The exception is when the record contains an underlying petition (either an I-130 or I-140) that is either pending or approved, or if the self-petitioner is in removal proceedings or has a final order of removal.  Refer to the relevant section of the SOP for this scenario.

Follow the chart below to prepare the denial notice, update CLAIMS 3 and prepare the I-360 VAWA worksheet for denial of the I-485.

| If… | Then… |
|---|---|
| I-485 has an EAC receipt number | • Prepare the SCO-1612-1095 Concurrently filed I-360 Denied, no other pending petitions I485V1 (SCO-1612-1097 Derivative denial – Principal's application was denied I485V3 for derivative)  in ECHO.<br>• Stamp I-485 with denial stamp.<br>• Update I-485 as denied in CLAIMS 3.<br>• Send denial letter from ECHO. |
| I-485 has an MSC receipt number, no other basis for adjustment of status | • Check I-485 in CLAIMS 3.  If receipt number does not exist, email "RelocateRequests, CLAIMS" and request that the receipt number be relocated into CLAIMS 3.<br>• Prepare the SCO-1612-1095 Concurrently filed I-360 Denied, no other pending petitions I485V1 (SCO-1612-1097 Derivative denial – Principal's application was denied I485V3 for derivative) letter in ECHO.<br>• Stamp I-485 with denial stamp.<br>• Update I-485 as denied in CLAIMS 3.<br>• Send denial letter from ECHO. |
| I-485 has an MSC receipt number or was received at a District Office and the file contains other basis for adjustment of status | • Check "FMU Relocate to:" and indicate appropriate District Office.<br>• Prepare Complete Adjustment of Status Relocation Memorandum to District Office and indicate that VAWA I-360 has been denied and file contains a pending I-485 based on other petition in file. |

**Self-Petitioner in Proceedings or has Final Order of Removal**

If the self-petitioner is in removal proceedings or has a final order of removal, the pending I-485 will **ALWAYS** be relocated to the office listed in EOIR or EARM that has jurisdiction over the removal.

This applies if the I-360 has been approved or denied.  If the file also contains a pending I-918, it should be routed to the I-918 help desk.  If the file contains an approved I-918, route the file to an I-485 POC.

*Continued on next page*

Confidential

DEF - 00004210

# Pending I-485 in A-File, Continued

**Self- Petitioner in Proceedings or has Final Order of Removal, I-360 Approved**

If the I-360 has been approved, AST will prepare the transfer memo and relocate the I-485 in CLAIMS 3 at the same time that the approval notice is prepared and sent.

If there are any pending I-485s for derivative children, ensure that the files include a valid TECS result for each derivative over the age of 14.

| If the I-360 has been approved and the I-485… | Then… |
|---|---|
| has an EAC or MSC receipt number, | • Fill in all necessary information for approval.<br>• Complete an "I-360 based I-485 Relocation Memo" and attach to the non-record side of the file.<br>• Check "Relocate to:" and write in the 3-letter code corresponding to the office with jurisdiction over the proceedings in the Routing/Sign-Off section of the I-360 Worksheet.<br>• Route to AST for preparation of notices. |
| was received at a District Office and does not have a bar coded receipt number, | • Fill in all necessary information for approval.<br>• Check "FMU Relocate to:" and indicate the 3-letter office code on I-360 worksheet.<br>• Prepare a buckslip to the District Office and indicate that the VAWA I-360 has been approved and the file contains a pending I-485. Include information relating to derivatives if applicable.<br>• Route to AST for preparation of the approval notice. |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

## Pending I-485 in A-File, Continued

**Self- Petitioner in Proceedings or has Final Order of Removal, I-360 Denied**

If the I-360 has been denied, you will be responsible for relocating the I-485 to the appropriate office.

If there are any pending I-485s for derivative children, ensure that the files include a valid TECS result for each derivative over the age of 14.

Follow the steps below to relocate a form I-485.

| Step | Action |
|------|--------|
| 1 | Prepare and send the denial in ECHO. |
| 2 | Prepare the "I-485 Case Relocation Memo" found in ADJ Worksheets in the I-485 folder. |
| 3 | Check the box for "Applicant is in Proceedings." |
| 4 | Attach the worksheet to the front of the A-file (include any derivatives). |
| 5 | Determine if the I-485 has been receipted at the VSC and has an EAC receipt number. |

| If…. | Then… |
|-------|-------|
| I-360 has been denied and the I-485 has an EAC receipt number, | • Check "Relocate to:" and in the Routing/Sign-off section of the I-360 Worksheet, write in the character designator for the field office where the file will be transferred.<br>• Use "Options" tab located on top tool bar to update CLAIMS 3 as "SC Transfer to Local Office for Field Review."<br><br>**NOTE**: "Relocated from SC for Field Review or Investigation" will appear in the C3 history screen after using this update. |
| I-485 has an MSC receipt number or was received at a District Office and does not have a bar coded receipt number, | Continue to Step 6. |

| Step | Action |
|------|--------|
| 6 | Place file(s) on the I-485 Relocate Shelf in FCU. |

# Modernized TECS / "Just in Time" Checks for Pending I-485 in A-file

**General**

You must complete a check of Modernized TECS for all I-485 applicants who are over the age of 14 at the time of adjudication before a final decision is made on an application.

Modernized TECS checks are valid one business day.  If final adjudication of an I-485 application takes place after one business day, you must recheck Modernized TECS before a final action can be made.

**IMPORTANT**:  You must ensure that the application is stamped and updated in CLAIMS 3 within one business day of the Modernized TECS search and TECS resolution/ROIT.

**Completing a Modernized TECS / Just in Time (JIT) Check**

You must conduct a TECS check of the name and DOB of the applicant provided on the application prior to granting or denying the application for adjustment of status.

Follow the steps in the *VSC TECS SOP for Adjudications* to complete the Modernized TECS / JIT check.

**Modernized TECS Outcome Definitions**

The Modernized TECS check will produce a "No Results Found" or a "Hit," containing information regarding a subject who may or may not be the applicant on the Form I-485.

Follow the steps in the *VSC TECS SOP for Adjudications* to determine the action to be taken for each result.  If the result is a "Hit" that relates to the applicant, follow the steps outlined in the section titled *Modernized TECS Processing: Anything other than "No Results Found" and Relates.*

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004213

# Modernized TECS / "Just in Time" Checks for Pending I-485 in A-file, Continued

**Modernized TECS Processing: Anything other than "No Results Found" and Relates**

Follow the steps below if the information in the "Hit" relate to the I-485 applicant or if or you are unable to determine if it relates,

| Step | Action |
|------|--------|
| 1 | • Refer the case to BCU, sending an email message to: VSC, TECS Referral with the subject line of "I485 JIT Hit."<br>• Include the A number, Last Name, First Name (as listed on the application) and DOB.<br><br>**NOTE**: The BCU generally does not work these submissions as a priority, unless you indicate on Skype for Business that you are available to receive JIT resolutions. This can be done by updating your status in the "What's happening today?" text box of Skype for Business and entering the time and date that you are available to receive JIT resolutions. |
| 2 | Update CLAIMS 3 as indicated in the *VSC TECS SOP for Adjudications*. |
| 3 | After BCU notifies you that the case has been resolved, update CLAIMS 3 as indicated in the *VSC TECS SOP for Adjudications*. |
| 4 | Complete the final adjudicative action within one business day of the Modernized TECS check. |

**NOTE:** You should wait to resolve TECS hits until you run Modernized TECS. If either or both are related hits, you can send an email to BCU to resolve both hits simultaneously.

**IMPORTANT:** If more than one business day has elapsed since the Modernized TECS check or BCU resolution, you must repeat the Modernized TECS check process from the beginning. Discuss referring the case to BCU for expedited resolution with your SISO.

# Pending I-601 in A-File

**I-485 Being Relocated**   If the file contains a pending I-485 that is being relocated in CLAIMS 3, you should also relocate the I-601 in CLAIMS 3.  Relocate I-601 in CLAIMS 3.  Indicate on relocation memo in "Comments/Other" field that file also contains a pending I-601 Waiver.

**I-485 Being Denied**   Complete denial.  Route to ISO(3) POC with a buckslip indicating that I-601 needs to be denied.

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004215

# Appendices

## Appendix 1: Commonly Used Decisions

---

**Matter of Laureano, 19 I&N Dec.1 (BIA 1983)**

1. A marriage entered into for the primary purpose of circumventing the immigration laws, commonly referred to as a fraudulent or sham marriage, is not recognized for the purpose of obtaining immigration benefits.

2. In determining whether a marriage is fraudulent for immigration purposes, the conduct of the parties after the marriage is relevant as to their intent at the time of marriage; evidence to establish intent may take many forms, including, but not limited to, proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts, and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences.

3. Where a visa petition has once been withdrawn based on an admission by a party that the marriage was solely entered into to bestow an immigration benefit, any subsequently filed visa petition involving the same petitioner and beneficiary must include at the time of filing: (1) an explanation of the prior withdrawal and (2) evidence supporting the bona fides of the parties' relationship.

The petitioner bears a heavy burden to establish the bona fides of the marital relationship in the case of a prior visa petition withdrawal and an admission of a fraudulent marriage, and, absent the submission of the previously related materials at the time of filing, a district director can reasonably deny the petitioner based on the admission made in conjunction with the prior withdrawal.

---

**Matter of M-, 7 I&N Dec. 21 (BIA 1956)**

Deportability – Section 241 (a) (1), Immigration and Nationality Act – Engaged in prostitution.

Prostitution committed under duress will not support a charge of deportability under section 241 (a) (1) of the Immigration and Nationality Act.

---

**Matter of Ho, 19 I&N Dec. 582 (BIA 1956)**

It is incumbent upon the petitioner to resolve any inconsistencies in the record by independent objective evidence. Any attempt to explain or reconcile such inconsistencies will not suffice unless the petitioner submits competent objective evidence pointing to where the truth lies.

---

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004216

## Appendix 1: Commonly Used Decisions, Continued

| | |
|---|---|
| **Matter of Phillis, 15 I&N Dec. 285 (BIA 1975)** | The U.S. citizen petitioner seeks to accord immediate relative status under section 201(b) of the Immigration and Nationality Act, as amended, to the beneficiary as his spouse. |
| | In view of evidence of record reflecting that the parties have never lived together in a husband and wife relationship; that petitioner has never listed beneficiary as his wife on any document nor contributed to her support; that there are contradictions in petitioner's statement regarding the living arrangements of the parties, as well as inconsistencies between the statements of petitioner and the beneficiary with reference to their living arrangements and the date petitioner learned of beneficiary's immigration status; and the fact that at the time of the interview with beneficiary she was in the process of filing a divorce, it may reasonably be inferred that the parties entered into the marriage for the purpose of obtaining immigration benefits, and the evidence submitted by petitioner, principally in the form of testimony denying fraud, is insufficient to overcome the inference of fraud. Accordingly, the visa petition is denied for failure of petitioner to sustain his burden of submitting evidence to establish that this was a valid marriage from its inception. |
| **Matter of McKee, 17 I&N Dec. 332 (BIA 1980)** | 1. A fraudulent or sham marriage that is entered into for the primary purpose of circumventing the immigration laws does not enable an alien spouse to obtain immigration benefits. |
| | 2. Where the parties enter into a valid marriage, and there is nothing to show that they have since obtained a legal separation or dissolution of that marriage, a visa petition filed on behalf of the alien spouse should not be denied solely because the parties are not residing together. |
| | 3. Although the separation of spouses in and of itself is not a valid basis for denial of a visa petition based upon a determination that the marriage is not viable, a separation is a relevant factor in determining the parties' intent at the time of their marriage, i.e., whether the marriage is a sham. |
| **Matter of Isber, 20 I&N Dec. 676 (BIA 1993)** | Section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (1988), does not preclude approval of a second marital visa petition filed by a petitioner on behalf of the same beneficiary. |

*Continued on next page*

86

Confidential

## Appendix 1: Commonly Used Decisions, Continued

**Matter of Roberts, Int. Dec 3148 (BIA 1991)**

1. An application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. & 1182(c) (1988), who is an aggravated felon is not required to meet a heightened discretionary test beyond the requirements set forth in *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988), and *Matter of Edwards*, 20 I&N Dec. 191 (BIA 1990).

2. A sole conviction for the felony sale of a controlled substance is sufficient to support a determination that the respondent is a drug trafficker within the meaning of section 101(a)(43) of the INA, 8 U.S.C. & 1101(a)(43) (1988).

3. The immigration judge, in exercising his discretion to grant section 212(c) relief, may not consider evidence on a theory of entrapment after the introduction of the respondent's conviction record because such theory directly relates to the issue of the respondent's ultimate guilt or innocence.

**Pablo v. INS, 72 F. 3rd 110, 113 (9th Cir. 1995)**

Case involved an LPR who, 10 years after attaining LPR status, was ordered deported as an alien convicted of two or more crimes of moral turpitude not arising out of a single transaction. The charge was based on Pablo's convictions for lewd and lascivious acts upon a child under the age of 14 and for child molesting. Both convictions were entered upon guilty pleas. IJ denied a waiver of deportation noting that the convictions outweighed all other favorable factors in this case.

**Lutwak et al. v. UNITED STATES, 244 U.S. 604 (1953)**

Petitioners were found guilty of conspiracy to defraud U.S. by obtaining illegal entry as spouses of honorably discharged veterans (under the "War Brides Act"). Based on the conspiracy and fraud, they were ordered deported.

There is an abundance of evidence in this record of a conspiracy to contract spurious, phony marriages for the purposes of deceiving the immigration authorities and thereby perpetrating a fraud upon the United States, and of a conspiracy to commit other offenses against the United States. The marriage ceremonies were considered to be part of the conspiracy to defraud the United States and to commit offenses against the United States.

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004218

## Appendix 1: Commonly Used Decisions, Continued

| | |
|---|---|
| **Gouveia v. INS, 980 F.2d 814 (1st Cir. 1992)** | Case involved an LPR, who 12 years after attaining LPR status, was charged with, and pleaded guilty to, two counts of rape of a child under sixteen, two counts of indecent assault and battery of a child under 14, and one count of indecent assault and battery of a child over fourteen. This misconduct, which involved petitioner's stepdaughters, occurred over a three-year span. Following his guilty plea, petitioner was sentenced to a fifteen- year prison term. He was paroled after serving nineteen months and this decision was rendered while he was on probation. |
| | The IJ in these proceedings found the petitioner was not deportable – the BIA reversed, concluding that the IJ had acted extra-judicially when he found that the petitioner had not raped his stepdaughters. The BIA held that the IJ had improperly substituted his own judgment for that of the criminal court. The BIA reversed the IJ and found the petitioner deportable and denied discretionary relief under 212(c). The BIA decision was based on the petitioner's prolonged pattern of molestation (calling it a crime of "the utmost gravity") and on the petitioner's denial of the rapes (the BIA holding that the petitioner could not be rehabilitated unless he'd taken the "necessary first step" of taking responsibility for his actions). The First Circuit upheld the BIA. |
| **Matter of Tawfik, 20 I&N Dec. 166 (BIA 1990)** | In making a determination that a beneficiary's prior marriage comes within the purview of section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (1988), as a marriage entered into for the purpose of evading the immigration laws, the district director should not give conclusive effect to determinations made in prior proceedings, but, rather, should reach an independent conclusion based on the evidence of record, although any relevant evidence may be relied upon, including evidence having its origin in prior Service proceedings involving the beneficiary or in court proceedings involving the prior marriage. |
| | A decision to revoke approval of a visa petition because the beneficiary entered into a prior marriage for the primary purpose of obtaining immigration benefits can only be sustained if there is substantial and probative evidence in the alien's file to the effect that the prior marriage was entered into for such purpose, and, where the district director concluded that there was evidence in the record from which it could "reasonably be inferred" that a marriage had been entered into for the primary purpose of obtaining immigration benefits, the substantial and probative evidence, requisite to the revocation of a subsequently approved visa petition, was not presented. |

*Continued on next page*

88

Confidential                                                                                     DEF - 00004219

# Appendix 1: **Commonly Used Decisions**, Continued

| | |
|---|---|
| **Bark v. INS,**<br>**5411 F.2d 1200**<br>**(9th Cir. 1975)** | The IJ and BIA found the petitioner deportable based on "sham marriage". The IJ based determination on the fact that the petitioner and his wife were separated. The 9th Circuit remanded for further evidentiary proceedings, holding that the IJ erred by reaching conclusion solely on the couple's separation. |

The petitioner's marriage was a sham as the bride and groom did not intend to establish a life together at the time they were married. The concept of establishing a life as marital partners contains no federal dictate about the kind of life that the partners may choose to lead. Any attempt to regulate their life styles, such as prescribing the amount of time they must spend together, or designating the manner in which either partner elects to spend his or her time, in the guise of specifying the requirements of a bona fide marriage would raise serious constitutional questions. Aliens cannot be required to have more conventional or more successful marriages than citizens.

Conduct of the parties after marriage is relevant only to the extent that it bears upon their subjective state of mind at the time they were married. (Lutwak v. United States (1953)). Evidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows. But evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was entered.

The administrative record discloses that the IJ and the BIA did not focus their attention on the key issue: Did the petitioner and his wife intend to establish a life together at the time of their marriage? The decision was reversed and remanded.

Confidential

# Appendix 2: Routing Worksheet Examples

**Approval: Not
in Proceedings,
Visa Available**

# I-360 VAWA WORKSHEET

*Attach Barcode Here*

ISO #: ▨

DATE: ▨

## AST

☐ Order#
☐ Saved in MSWord or ECHO under EAC# or A#          ☐ Enclosure(s) _____
*(Circle One)*                                        _____

## APPROVALS

☒ 1ˢᵗ Approval Notice            ❷   *Approval phrase:*
☐ Amended Approval Notice            ☒ Eligible
☐ Duplicate Approval Notice          ☐ Not Eligible
                                     ☐ I-485 Pending
                                     ☐ NVC

| *Eligible for Deferred Action Status (DAS)?* | ☐ 22: Derivatives listed on I-360: |
| --- | --- |
| Is Self-Petitioner in Proceedings and/or an LPR? | *List Derivatives (unmarried and under age 21)* |
| ☐ If yes, Not Eligible for DAS | *Name:*                *DOB:* |
| ☒ If no, Eligible for DAS | |
| *If granting DAS, check J1A: Initial (Petitioner) box below* | |
| ☒ J1A: Initial (Petitioner) | |

## ROUTING / SIGN-OFF

☐ Other: _____     ☐ AAO: _____
         _____           *SISO/Counsel Sign-off*
❶        _____     ☐ SISO sign-off:
☒ VAWA Sort Area                          ☐ Denial
   ☒ Update CIS: COA as DAS               ☐ 2ⁿᵈ RFE / NOID
   ☐ Update CIS: COA as _____            ☐ NTA
                                                    _____
                                                    *SISO Sign-off*
                                    ❸  ☐ I-360 Denial: 60-day hold shelf
☐ FCU/FMU                               ☒ Records
   ☐ I360 RFE Hold Shelf ($7 Days)      ☐ Relocate to:
   ☐ I360 NOID Hold Shelf (33 Days)        ☐ MSC
                                           ☐ Local Office _____
☐ Consolidate or Deconsolidate *(Circle One):*  ☐ Other: _____
         _____ and _____

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

Revised: 9/25/17

*Continued on next page*

90

Confidential          DEF - 00004221

## Appendix 2: Routing Worksheet Examples, Continued

**Approval: Not
in Proceedings,
Visa Not
Available**

# I-360 VAWA WORKSHEET

*Attach Barcode Here*

**ISO #:**

**DATE:**

**AST**
- ☐ Order=
- ☐ Saved in MSWord or ECHO under EAC# or A#     ☐ Enclosure's) _____
  (Circle One)     _____

**APPROVALS**
- ☐ 1ˢᵗ Approval Notice     *Approval phase:*
- ☐ Amended Approval Notice     ☐ Eligible
- ☐ Duplicate Approval Notice     ☒ Not Eligible
     ☐ I-485 Pending
     ☐ NVC

*Eligible for Deferred Action Status (DAS)?*     *List Derivatives (unmarried and under age 21):*
Is Self-Petitioner in Proceedings and/or an LPR?     ☐ If J2: Derivatives listed on I-360:
☒ If yes, Not Eligible for DAS     *Name:*     *DOB:*
☒ If no, Eligible for DAS
*If granting DAS: check RA: Initial (Petitioner) box below*
☒ RA: Initial (Petitioner)

**ROUTING / SIGN-OFF**
- ☐ Other: _____     ☐ AAO:
     _____
     _____     *SISO/Counsel Sign-off*
     ☐ SISO sign-off:
     ☐ Denial
① VAWA Sort Area     ☐ 2ᴺᴰ RFE / NOID
     ☐ Update CIS: COA as DAS     ☐ NTA
     ☐ Update CIS: COA as _____     *SISO Sign-off*

- ☐ FCU/FMU     ☐ I-360 Denial: 60-day hold shelf
     ☐ I360 RFE Hold Shelf (87 Days)     ☒ Records
     ☐ I360 NOID Hold Shelf (33 Days)     ☐ Relocate to:
     ☐ MSC
- ☐ Consolidate or Deconsolidate (Circle One):     ☐ Local Office _____
  _____ and _____     ☐ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and where Refer to SOP*

*Continued on next page*

91

I-360 SOP / Last Revised: April 16, 2018

Confidential     DEF - 00004222

## Appendix 2: Routing Worksheet Examples, Continued

**Approval: Not in Proceedings, I-485 Pending**

# I-360 VAWA WORKSHEET

*Attach Barcode Here*

**ISO #:**

**DATE:**

### AST

- ☐ Order#
- ☐ Saved in MS Word or ECHO under EAC# or A# *(Circle One)*
- ☐ Enclosure(s) _____

### APPROVALS

- ☐ 1st Approval Notice ❷
- ☐ Amended Approval Notice
- ☐ Duplicate Approval Notice

*Approval phrase:*
- ☐ Eligible
- ☐ Not Eligible
- ☒ I-485 Pending
- ☐ NVC

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and/or an LPR?
- ☐ If yes, Not Eligible for DAS
- ☒ If no, Eligible for DAS
*If granting DAS, check J1A: Initial (Petitioner) box below*
- ☒ J1A: Initial (Petitioner)

*List Derivatives (unmarried and under age 21)*
- ☐ J2: Derivatives listed on I-360:
   Name:　　　　　　　DOB:
   _____
   _____
   _____
   _____

### ROUTING / SIGN-OFF

- ☐ Other: _____
   _____
❹
   _____
- ☒ VAWA Sort Area
   - ☒ Update CIS: COA as DAS
   - ☐ Update CIS: COA as _____

- ☐ FCU/FMU
   - ☐ I360 RFE Hold Shelf (87 Days) ❸
   - ☐ I360 NOID Hold Shelf (33 Days)
- ☐ Consolidate or Deconsolidate (Circle One): _____ and _____

- ☐ AAO: _____
   _____
   *SISO Counsel Sign-off*
- ☐ SISO sign-off:
   - ☐ Denial
   - ☐ 2nd RFE / NOID
   - ☐ NTA
   _____
   *SISO Sign-off*
- ☐ I-360 Denial: 60-day hold shelf
- ☐ Records
- ☐ Relocate to:
   - ☐ MSC
   - ☐ Local Office _____
   - ☐ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

Revised: 9/25/17

_____

*Continued on next page*

92

Confidential　　　　　　DEF - 00004223

## Appendix 2: Routing Worksheet Examples, Continued

**Approval: In Proceedings, Visa Available**

# I-360 VAWA WORKSHEET

*Attach Barcode Here*

ISO #: �_____

DATE: �_____

| AST |
|---|
| ☐ Order# _____ |
| ☐ Saved in MSWord or ECHO under EAC# or A#   ☐: Enclosure(s) _____ |
| *(Circle One)* _____ |

### APPROVALS

☒ 1st Approval Notice a   ❶   *Approval phrase*
☐ Amended Approval Notice          ☒ Eligible
☐ Duplicate Approval Notice          ☐ Not Eligible
                                     ☐ I-485 Pending
                                     ☐ NVC

| *Eligible for Deferred Action Status (DAS)?* | *List Derivatives (unmarried and under age 21)* |
|---|---|
| Is Self-Petitioner in Proceedings and/or an LPR? | ☐ J2: Derivatives listed on I-360: |
| ☒ If yes, Not Eligible for DAS | *Name:* *DOB* |
| ☐ If no, Eligible for DAS | _____ |
| *If granting DAS: check J1A: Initial (Petitioner) box below* | _____ |
| ☒ J1A: Initial (Petitioner) | _____ |

### ROUTING / SIGN-OFF

☐ Other: _____
_____
_____
_____

☐ VAWA Sort Area
    ☐ Update CIS: COA as DAS
    ☐ Update CIS: COA as _____

☐ FCU/FMU
    ☐ I360 RFE Hold Shelf (87 Days)
    ☐ I360 NOID Hold Shelf (33 Days)

☐ Consolidate or Deconsolidate (Circle One):
_____ and _____

☐: AAO: _____
         *SISO Counsel Sign-off*

☐ SISO sign-off:
    ☐ Denial
    ☐ 2nd RFE / NOID
    ☐ NTA
         *SISO Sign-off*

☐ I-360 Denial: 60-day hold shelf

☐ Records
☐ Relocate to:
    ☐ MSC
    ☐ Local Office _____   | Write 3-letter code of office with jurisdiction in EOIR |
    ☐ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and assist. Refer to SOP*

Revised: 9/28/17

*Continued on next page*

93

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004224

# Appendix 2: Routing Worksheet Examples, Continued

**Approval: In Proceedings, Visa Not Available**

## I-360 VAWA WORKSHEET

*Attach Barcode Here*

ISO #: _____

DATE: _____

**AST**

- ☐ Order#
- ☐ Saved in MSWord or ECHO under EAC# or A# *(Circle One)*
- ☐ Enclosure(s) _____

**APPROVALS**

- ☒ 1st Approval Notice a
- ☐ Amended Approval Notice
- ☐ Duplicate Approval Notice

*Approval please:*
- ☒ Eligible
- ☐ Not Eligible
- ☐ I-485 Pending
- ☐ NVC

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and/or an LPR?
- ☒ If yes, Not Eligible for DAS
- ☐ If no, Eligible for DAS

*If granting DAS, check S1A: Initial (Petitioner) box below*
- ☐ S1A: Initial (Petitioner)

*List Derivatives (unmarried and under age 21)*
- ☒ J2: Derivatives listed on I-360:

Name: _____ DOB: _____
_____
_____
_____

**ROUTING / SIGN-OFF**

- ☐ Other: _____
  _____
  _____
  _____

- ☐ VAWA Sort Area
  - ☐ Update CIS: COA as DAS
  - ☐ Update CIS: COA as _____

- ☐ FCU/FMU
  - ☐ I360 RFE Hold Shelf (87 Days)
  - ☐ I360 NOID Hold Shelf (33 Days)

- ☐ Consolidate or Deconsolidate (Circle One):
  _____ and _____

- ☐ AAO: _____
  *SISO Cannot Sign-off*

- ☐ SISO sign-off:
  - ☐ Denial
  - ☒ 2nd RFE / NOID
  - ☐ NTA

  _____
  *SISO Sign-off*

- ☐ I-360 Denial: 60-day hold shelf

- ☐ Records

- ☐ Relocate to:
  - ☐ MSC
  - ☐ Local Office _____
  - ☐ Other: _____

  [Write 3-letter code of office with jurisdiction in EOIR]

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

Revised: 9/25/17

*Continued on next page*

94

I-360 SOP / Last Revised: April 16, 2018

# Appendix 2: Routing Worksheet Examples, Continued

**Approval: In Proceedings, I-485 Pending**

## I-360 VAWA WORKSHEET

*Attach Barcode Here*

ISO #: ▨

DATE: ▨

### AST

- ☐ Order#: _____
- ☐ Saved in MS Word or ECHO under EAC# or A# (Circle One)
- ☐ Enclosure(s) _____ _____

### APPROVALS

- ☒ 1st Approval Notice a
- ☐ Amended Approval Notice
- ☐ Duplicate Approval Notice

*Approval phase:*
- ☐ Eligible
- ☒ Not Eligible
- ☐ I-485 Pending
- ☐ NVC

---

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and/or an LPR?
- ☒ If yes, Not Eligible for DAS
- ☐ If no, Eligible for DAS

*If granting DAS, check J1A: Initial (Petitioner) box below*
- ☐ J1A: Initial (Petitioner)

*List Derivatives (unmarried and under age 21):*
- ☐ J2: Derivatives listed on I-360:
  *Name:*                    *DOB:*
  _____
  _____
  _____
  _____

### ROUTING / SIGN-OFF

- ☐ Other: _____
  _____
  _____

- ☐ VAWA Sort Area
  - ☐ Update CIS: COA as DAS
  - ☐ Update CIS: COA as _____

- ☐ FCU/FMU
  - ☐ I360 RFE Hold Shelf (87 Days)
  - ☐ I360 NOID Hold Shelf (33 Days)

- ☐ Consolidate or Deconsolidate (Circle One): _____ and _____

- ☐ AAO:
  _____
  *SISO Counsel Sign-off*

- ☐ SISO sign-off:
  - ☐ Denial
  - ☐ 2nd RFE / NOID
  - ☐ NTA
  _____
  *SISO Sign-off*

- ☐ I-360 Denial: 60-day hold shelf

- ☐ Records

- ☐ Relocate to:
  - ☐ MSC
  - ☐ Local Office _____    Write 3-letter code of office with jurisdiction in ROIR
  - ☐ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and others, refer to SOP*

Revised: 9/25/17

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004226

# Appendix 2: Routing Worksheet Examples, Continued

**Approval:**
**Overseas**
**Processing**

## I-360 VAWA WORKSHEET

*Attach Barcode Here*

ISO #: ▨

DATE: ▨

### AST

☐ Order#
☐ Saved in MSWord or ECHO under **EAC#** or **A#**
*(Circle One)*

☐ Enclosure(s) _____

### APPROVALS

☐ 1st Approval Notice a
☐ Amended Approval Notice
☐ Duplicate Approval Notice

*Approval phrase:*
☐ Eligible
☐ Not Eligible
☐ I-485 Pending
☐ NVC

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and/or an LPR?
☐ If yes, Not Eligible for DAS
☐ If no, Eligible for DAS – Outside U.S. No DAS

*If granting DAS, check J1A: Initial (Petitioner) box below*
☐ J1A: Initial (Petitioner)

*List Derivatives (unmarried and under 21):*
☐ J2: Derivatives listed on I-360:
  *Name:* _____ *DOB:* _____
  _____
  _____
  _____

### ROUTING / SIGN-OFF

☐ Other:  AST:  Please  place  original  I-797
approval  notice  with  original  petition  and  other
documents to go to NVC, and place copies of the
I-797,  the  petition,  and  other  documents  on  the
records side of the A-file.

☐ VAWA Sort Area
  ☐ Update CIS.  COA as DAS
  ☐ Update CIS:  COA as _____

☐ FCU/FMU
  ☐ I360 RFE Hold Shelf (87 Days)
  ☐ I360 NOID Hold Shelf (33 Days)

☐ Consolidate or Deconsolidate (Circle One):
  _____ I-360 Receipt #_and  A # _____

☐ AAO:
  *SISO/Counsel Sign-off*

☐ SISO sign-off:
  ☐ Denial
  ☐ 2nd RFE / NOID
  ☐ NTA
  *SISO Sign-off*

☐ I-360 Denial:  60-day hold shelf

☐ Records – A File

☐ Relocate to:  *I-360 Original Copy*
  ☐ MSC
  ☐ Local Office
  ☐ Other: _____NVC_____

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

*Revised: 9/25/17*

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004227

## Appendix 2: Routing Worksheet Examples, Continued

RFE

# I-360 VAWA WORKSHEET

*Attach Barcode Here*

ISO #: ▓

DATE: ▓

**AST**

- ☐ Order#
- ☐ Saved in MS Word or ECHO under EAC# or A#
  (*Circle One*)
- ☐ Enclosure(s) _____
  _____

**APPROVALS**

- ☐ 1st Approval Notice a
- ☐ Amended Approval Notice
- ☐ Duplicate Approval Notice

*Approval phase:*
- ☐ Eligible
- ☐ Not Eligible
- ☐ I-485 Pending
- ☐ NVC

---

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and/or an LPR?
- ☐ If yes, Not Eligible for DAS
- ☐ If no, Eligible for DAS

*If granting DAS, check J1A: Initial (Petitioner) box below*
- ☐ J1A: Initial (Petitioner)

*List Derivatives (unmarried and under age 21)*
- ☐ J2: Derivatives listed on I-360:

| *Name:* | *DOB:* |
|---------|--------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**ROUTING / SIGN-OFF**

- ☐ Other: _____
  _____
  _____

- ☐ VAWA Sort Area
  - ☐ Update CIS: COA as DAS
  - ☐ Update CIS: COA as _____

- FCU/FMU
  - ☐ I360 RFE Hold Shelf (87 Days)
  - ☐ I360 NOID Hold Shelf (33 Days)

- ☐ Consolidate or Deconsolidate (Circle One):
  _____ and _____

- ☐ AAO:
  _____
  *SISO/Counsel Sign-off*

- ☐ SISO sign-off:
  - ☐ Denial
  - ☐ 2nd RFE / NOID
  - ☐ NTA
  _____
  *SISO Sign-off*

- ☐ I-360 Denial: 60-day hold shelf
- ☐ Records
- ☐ Relocate to:
  - ☐ MSC
  - ☐ Local Office _____
  - ☐ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

Revised: 9/25/17

---

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004228

## Appendix 2: Routing Worksheet Examples, Continued

**Intent to Deny**

# I-360 VAWA WORKSHEET

*Attach Barcode Here*

ISO #: ▢

DATE: ▢

### AST

▢ Order# _____
▢ Saved in MS Word or ECHO under EAC# or A#
*(Circle One)*

▢ Enclosure(s)_____
_____

### APPROVALS

▢ 1st Approval Notice a
▢ Amended Approval Notice
▢ Duplicate Approval Notice

*Approval please:*
▢ Eligible
▢ Not Eligible
▢ I-485 Pending
▢ NVC

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and/or an LPR?
▢ If yes, Not Eligible for DAS
▢ If no, Eligible for DAS
*If granting DAS, check J1A: Initial (Petitioner) box below*
▢ J1A: Initial (Petitioner)

*List Derivatives (unmarried and under age 21):*
▢ J2: Derivatives listed on I-360:
Name:                          DOB:
_____
_____
_____
_____

### ROUTING / SIGN-OFF

▢ Other. _____
_____
_____

▢ VAWA Sort Area
  ▢ Update CIS: COA as DAS
  ▢ Update CIS: COA as _____

▢ FCU/FMU
  ▢ I360 RFE Hold Shelf (87 Days)
  ▢ I360 NOID Hold Shelf (33 Days)

▢ Consolidate or Deconsolidate (Circle One):
_____ and _____

▢ AAO.
_____
*SISO/Counsel Sign-off*

▢ SISO sign-off:
  Only if required by SISO
  ▢ Denial
  ▢ 2nd RFE / NOID
  ▢ NTA

  S.I.S.O. Sign Here only if Required
  *SISO sign-off*

▢ I-360 Denial: 60-day hold shelf

▢ Records

▢ Relocate to:
  ▢ MSC
  ▢ Local Office _____
  ▢ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

Revised: 9/25/17

*Continued on next page*

98

I-360 SOP / Last Revised: April 16, 2018

## Appendix 2: Routing Worksheet Examples, Continued

**Denial: Not in
Proceedings**

# I-360 VAWA WORKSHEET

ISO #: ▒▒▒

*Attach Barcode Here*

DATE: ▒▒▒

**AST**

☐ Order# _____
☐ Saved in MSWord or ECHO under EAC# or A#     ☐ Enclosure(s) _____
   *(Circle One)*                                              _____

**APPROVALS**

☐ 1ˢᵗ Approval Notice a              *Approval phase:*
☐ Amended Approval Notice           ☐ Eligible
☐ Duplicate Approval Notice         ☐ Not Eligible
                                    ☐ I-485 Pending
                                    ☐ NVC

| *Eligible for Deferred Action Status (DAS)?* | *List Derivatives (unmarried and under age 21)* |
|---|---|
| Is Self-Petitioner in Proceedings and/or an LPR? | ☐ J2: Derivatives listed on I-360: |
| ☐ If yes, Not Eligible for DAS | *Name:*                    *DOB:* |
| ☐ If no, Eligible for DAS | _____ |
| *If granting DAS, check J1A: Initial (Petitioner) box below* | _____ |
| ☐ J1A: Initial (Petitioner) | _____ |
| | _____ |

**ROUTING / SIGN-OFF**

☐ Other: _____        ☐ AAO: _____
         _____                    *SISO Counsel Sign-off*
         _____        ☒ SISO sign-off.      Only if required by SISO
    ❸                               ☐ Denial
   ▓ VAWA Sort Area           ❶   ☐ 2ⁿᵈ RFE / NOID
      ☐ Update CIS: COA as DAS      ☐ NTA
      ☒ Update CIS: COA as _____
                                        *SISO Signature, when it Required*
       Write last COA listed in CIS              *SISO Sign-off*

☐ FCU/FMU                    ❷  ☐ I-360 Denial: 60-day hold shelf
      ☐ I360 RFE Hold Shelf (87 Days)  ❹  ☐ Records
      ☐ I-360 NOID Hold Shelf (33 Days)     ☐ Relocate to:
                                                ☐ MSC
   ☐ Consolidate or Deconsolidate (Circle One):  ☐ Local Office _____
   _____ and _____          ☐ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

*Revised: 9/25/17*

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

# Appendix 2: Routing Worksheet Examples, Continued

**Denial: In
Proceedings**

## I-360 VAWA WORKSHEET

*Attach Barcode Here*

**ISO #:**

**DATE:**

### AST

- ☐ Order#
- ☐ Saved in MS Word or ECHO under EAC# or A# *(Circle One)*
- ☐ Enclosure(s) _____

### APPROVALS

- ☐ 1st Approval Notice a
- ☐ Amended Approval Notice
- ☐ Duplicate Approval Notice

*Approval please:*
- ☐ Eligible
- ☐ Not Eligible
- ☐ I-485 Pending
- ☐ NVC

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and-or an LPR?
- ☐ If yes, Not Eligible for DAS
- ☐ If no, Eligible for DAS

*If granting DAS, check J1A: Initial (Petitioner) box below*
- ☐ J1A: Initial (Petitioner)

☐ J2: Derivatives listed on I-360:

*List Derivatives (unmarried and under age 21)*

*Name:* _____  *DOB:* _____
_____
_____
_____
_____

### ROUTING / SIGN-OFF

- ☐ Other: _____
  _____
  _____
  _____

**③** ☐ VAWA Sort Area
  - ☐ Update CIS: COA as DAS
  - ☐ Update CIS: COA as _____

*Write last COA listed in CIS*

- ☐ FCU-FMU
  - ☐ I360 RFE Hold Shelf (87 Days)
  - ☐ I360 NOID Hold Shelf (33 Days)

- ☐ Consolidate or Deconsolidate *(Circle One)*:
  _____ and _____

- ☐ AAO:

☐ SISO sign-off:

*SISO Please Sign-off*

*Only if required by SISO*

- ☐ Denial
- ☐ 2nd RFE / NOID
- ☐ NTA

*SISO Sign. Must Here, if Required*
*SISO Sign-off*

**②** ☐ I-360 Denial: 60-day hold shelf

- ☐ Records
- ☐ Relocate to:
  - ☐ MSC
  - ☐ Local Office
  - ☐ Other: _____

*Write 3-letter code of office with jurisdiction in EOIR*

*NOTE: SISO sign-off is required for Denial, NOID and others. Refer to SOP*

*Revised: 9/25/17*

*Continued on next page*

100

I-360 SOP / Last Revised: April 16, 2018

DEF - 00004231

# Appendix 2: Routing Worksheet Examples, Continued

**Withdrawal**

## I-360 VAWA WORKSHEET

*Attach Barcode Here*

**ISO #:** ▢

**DATE:** ▢

### AST

- ▢ Order#
- ▢ Saved in MS Word or ECHO under EAC# or A#
  *(Circle One)*

- ▢ Enclosure(s) _____
  _____

### APPROVALS

- ▢ 1st Approval Notice a
- ▢ Amended Approval Notice
- ▢ Duplicate Approval Notice

*Approval please:*
- ▢ Eligible
- ▢ Not Eligible
- ▢ I-485 Pending
- ▢ NVC

*Eligible for Deferred Action Status (DAS)?*
Is Self-Petitioner in Proceedings and/or an LPR?
- ▢ If yes, Not Eligible for DAS
- ▢ If no, Eligible for DAS

*If granting DAS, check J1A: Initial (Petitioner) box below*
- ▢ J1A: Initial (Petitioner)

*List Derivatives (unmarried and under age 21)*
- ▢ J2: Derivatives listed on I-360:
  Name:                          DOB:
  _____
  _____
  _____
  _____

### ROUTING / SIGN-OFF

- ▢ Other: _____
  _____
  _____
  _____

**①**

- ▢ VAWA Sort Area
  - ▢ Update CIS: COA as DAS
  - ▢ Update CIS: COA as _____

  Write last COA listed in CIS

- ▢ FCU/FMU
  - ▢ 1360 RFE Hold Shelf (87 Days)
  - ▢ 1360 NOID Hold Shelf (33 Days)

- ▢ Consolidate or Deconsolidate (Circle One):
  _____ and _____

- ▢ AAO:
  _____
  *SISO/Counsel Sign-off*

- ▢ SISO sign-off:
  - ▢ Denial
  - ▢ 2nd RFE / NOID
  - ▢ NTA
  _____
  *SISO Sign-off*

- ▢ I-360 Denial: 60-day hold shelf

**②** ▢ Records

- ▢ Relocate to:
  - ▢ MSC
  - ▢ Local Office _____
  - ▢ Other: _____

*NOTE: SISO sign-off is required for: Denial, NOID and others. Refer to SOP*

*Revised: 9/25/17*

I-360 SOP / Last Revised: April 16, 2018

Confidential

DEF - 00004232

# Appendix 3: Previous Revisions

**Revisions**          The revisions below represent changes that were made to this document.

| Revision # | Date | Subject | KM # |
|---|---|---|---|
| 45 | 9/28/15 | Added section related to Cuban Adjustment Act (CAA) I-485s. | 3036 |
| 46 | 1/1/2016 | Clarified Shared residence requirement. | 3247 |
| 47 | 1/26/16 | Added language to clarify 'residence' at the time of filing. | 3313 + 3314 |
| 48 | 2/12/16 | Plain Language Edits. | 3324 |
| 49 | 5/13/16 | Updated classifications in classification chart for when self petitioner is a son or daughter. | 3581 |
| 50 | 7/1/16 | Added instruction for when there are multiple I-360s pending in one A-file. | 3697 |
| -- | -- | Added reference to Appendix 2: Routing worksheet examples. | 3697 |
| -- | -- | Added example of how to complete the 360 VAWA Worksheet when it is a withdrawal. | 3697 |
| 51 | 8/9/16 | Deleted instructions to remove the 384 IIRIRA Warning Sheet for all denials. | 3797 |
| 52 | 8/25/16 | Updated reference to ISO File Maintenance Procedures SOP when working with T-Files. | 3835 |
| -- | -- | Added note to Evidence of GMC related to Non-Ident results. | 3835 |
| -- | -- | Added notes regarding RFEing for termination of abusive marriages for a self-petitioning child. | 3835 |
| -- | -- | Clarified reference to the Family Based Visa Bulletin under Processing: Approvals. | 3835 |
| -- | -- | Removed "Send to Clerical" instructions for Processing: Approvals. | 3835 |
| -- | -- | Clarified worksheet annotations in step 2 of Preparing Worksheet for processing approvals. | 3835 |
| 53 | 12/9/16 | Updated year of Paul Virtue letter from 1996 to 1998. | 110 |

*Continued on next page*

Confidential

## **Appendix 3: Previous Revisions,** Continued

**Revisions,**
continued

| 54 | 6/7/17 | Reorganized information in Eligibility section so that SOP is not based on relationship with duplicated information throughout, but by eligibility criteria. Retitled section: *Eligibility Requirements*. | 322 |
|---|---|---|---|
| -- | -- | Changed 'Clerical' to 'AST' throughout. | 322 |
| -- | -- | Moved *Section 384* from Processing Section to Overview section. | 322 |
| -- | -- | Added hyperlinks to pertinent reference material throughout. | 322 |
| -- | -- | Added information about preparing a withdrawal letter in CG. | 374 |
| 55 | 9/29/17 | Added note about 'any credible evidence standard' to Credible Evidence section. | 497 |
| -- | -- | Added note to Paul Virtue Memo, indicating I-360s may only be denied if evidence was not credible or fails to establish eligibility by preponderance standard. | 497 |
| -- | -- | Added notes to Section 384 section clarifying general requirements and disclosure information. | 497 |
| -- | -- | Added note about prohibited information sources as they related to 384 protections. | 497 |
| -- | -- | Added note regarding self-petitioners filing from within the United States and meeting eligibility requirements. | 497 |
| -- | -- | Added "Death" to Section titled "USC/LPR Loss of Status or Death". | 497 |
| -- | -- | Added processing instructions for when USC or LPR dies. | 497 |
| -- | -- | Updated Qualifying Relationship: Spouse section with references and hyperlinks to the I-130 SOP. | 497 |
| -- | -- | Added note to clarify validity of foreign divorces. | 497 |
| -- | -- | Added note about terminated marriages. | 497 |
| -- | -- | Clarified that the "intended spouse" provision does not apply to those who knowingly entered into polygamous marriages. | 497 |
| -- | -- | Added note about 204(g) and preponderance of the evidence, referencing resources and the I-130 SOP. | 497 |
| -- | -- | Clarified that USCIS does not have discretionary authority to wavier 204(c). | 497 |
| -- | -- | Added detail to 204(c) guidance. | 497 |
| -- | -- | Provided INA references to General Child section. | 497 |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

Confidential

# Appendix 3: Previous Revisions, Continued

**Revisions,**
continued

| 55, cont. | 9/29/17, cont. | Updated section "Termination of Abusive Marriage" to "Termination of Between Biological Parent and Abusive Step-parent Marriage" | 497 |
|---|---|---|---|
| -- | -- | Changed terms 'legitimate, legitimated and illegitimate' to 'born in wedlock and born out of wedlock'. | 497 |
| -- | -- | Revised General introduction to Good faith marriage. | 498 |
| -- | -- | Updated listing of evidence to establish good faith marriage. | 498 |
| -- | -- | Updated listing of evidence to establish residence. | 498 |
| -- | -- | Added clarification to example of extreme cruelty. | 498 |
| -- | -- | Clarified third party acts of extreme cruelty. | 498 |
| -- | -- | Clarified Other Abuse Requirements, providing a chart to help determine when the extreme cruelty must have taken place. | 498 |
| -- | -- | Updated general introduction to GMC. | 498 |
| -- | -- | Clarified the 'catch-all' provision in 101(f). | 498 |
| -- | -- | Revised section on 101(f)(1)-(9) Bars to GMC. | 498 |
| -- | -- | Clarified acts that are not barred by 101(f). | 498 |
| -- | -- | Updated entire section on false claims to U.S. Citizenship and Unlawful Voting. | 498 |
| -- | -- | Changed EOIR to PCQS in determining Deferred Action. | 498 |
| -- | -- | Updated ROP | 501 |
| -- | -- | Removed routing worksheet example for routing an RFE with the GMC attachment as the GMC attachment has been eliminated. | 503 |
| -- | -- | Added a 7th step to Petition annotations for approvals, related to age of self-petitioner if there was a central reason for a filing delay. | 511 |
| 56 | 10/6/17 | Updated I-360 and I-485 Relocate Out instructions in Claims 3. | 522 |

*Continued on next page*

I-360 SOP / Last Revised: April 16, 2018

## Appendix 3: Previous Revisions, Continued

**Revisions,**
continued

| 56 | 11/3/17 | Updated PCQS to PCQS-EOIR, under Deferred Action, updated EOIR screen indications and routing instructions. | 538 |
|---|---|---|---|
| -- | -- | Added Reciprocity by Country (FAM) link to Approvals section. | 538 |
| -- | -- | Updated Step 6 of the preliminary steps for approvals, removing the reference to the DAS Screening Guide and inserting an If/Then table. | 538 |
| -- | -- | Updated GUI to CLAIMS 3. | 538 |
| -- | -- | Updated Approval Worksheet Instructions. | 538 |
| -- | -- | Deleted the "Standard Routing" portion of the Approvals section as this information has been incorporated into other parts of the SOP. | 538 |
| -- | -- | Replaced Instructions in Approvals, Withdrawal, Denial and RFE for letter creation and Routing Worksheet examples to reference ECHO instead of CG and to reference the routing worksheet examples. | 538 |
| -- | -- | Updated Routing Worksheet examples with new updates worksheet. | 538 |
| 57 | 11/16/17 | Updated Form I-360 worksheet example for Approval; Not in Proceedings, Visa Not Available. | 584 |
| -- | -- | Inserted new Approvals with SOF section. | 604, 605 |
| 58 | 11/29/17 | Minor typographical errors corrected; clarification of instruction for drafting NOIDs in ECHO. | 570 |
| -- | -- | Added If/Then chart for Approval with SOF. | 571 |
| 59 | 12/8/17 | Corrected error on routing worksheet example for Approval, Not in Proceedings, Visa Available in Appendix 2. | 640 |
| 60 | 1/17/18 | Updated Step 4 of how to prepare the I-360 VAWA worksheet for approvals where the petitioner has requested consular processing.  Edited the I-360 VAWA worksheet for Approvals:  Overseas Processing in Appendix 2. | 672 |
| 61 | 3/20/18 | Added IB5 for Parent of a U.S. citizen Son/Daughter to classification code chart for approval annotations. | 837 |

*Continued on next page*

Confidential

DEF - 00004236

# Appendix 3: Previous Revisions, Continued

**Revisions,**
continued

| 61 | 3/20/18 | For CLAIMS 3 RFE updates, the time allotted for response will be 87 days for either Initial or Additional Evidence selections.  Edited steps to prepare the I-360 VAWA worksheet for RFEs and hyperlinked Appendix 2: Routing Worksheet Example.  Deleted outdated PFD, NOID routing information, and steps for routing with I-485 pending at VSC.  Revised steps for creating J40 and J42 letter in ECHO for Revocations and NOIRs.  Added hyperlink to Johnny Williams memo for revocations.  Replaced CG references with ECHO and NFTS references with RAILS. | 838 |
|----|---------|-----|-----|
| -- | -- | Updated link to DOS Visa Bulletin. | 872 |
| -- | -- | Added reminder to update HAC in CLAIMS 3 when files are referred to BCU for TECS resolution for preliminary steps at both the approval and denial stages. | 874 |
| 62 | 3/23/18 | Replaced SQ11 check process with ModTECS JIT check process information. | 877 |
| 63 | 4/16/18 | Removed TECS information duplicated in the VSC TECS SOP for Adjudications. | 957 |
| 64 | 4/16/18 | Modified instructions for requesting files. | 961 |

# DEF-INTERV.

# EX. 160



# I-765 (c)(14) Employment Authorization:  Wait-Listed I-918

## *Form I-765 Training*

**Vermont Service Center**

**Humanitarian Division**

# General Reminders



- Silence cell phones

- Ground rules

- Use computers to access relevant training console material

- Record time under Group Activities/Production Training/Production Trainee

- Ask questions

# **Topics Covered**



- Section 384

- Overview of  I-765 (c)(14) for Wait-Listed I-918 & I-918A

- I-765 eligibility requirements

- Updating

# Introduction



How will you encounter an I-765 with (c)(14) eligibility?

- It may be bundled with an I-918 or I-918A in an A-file.
- It may be in a stand-alone receipt file.

What is the purpose of the I-765 (c)(14)?

- It provides an Employment Authorization Document (EAD): Evidence of the privilege of lawful employment in the United States.

Who is eligible for it?

- Those placed in deferred action.
- U visa wait-listed principals or derivatives may receive the EAD.

# Introduction, *continued*



What is the regulatory basis for an I-765 (c)(14) EAD?

- [8 CFR 274a.12(c)(14)](#)

# **Safe Address**



- Always use G-28 address, if an acceptable G-28 has been filed.
  - G-28 not properly filed?  Treat representative as the preparer.
- No G-28?
  - Use preparer's address, if one is provided.
- No G-28 or preparer?
  - Use the self-petitioner's mailing or home address.
- Ensure that CLAIMS 3 indicates the appropriate safe address.
- Address changes must be annotated on the safe address sheet (date and ISO ID#) and properly updated in CLAIMS 3.

# Background



- Why do we wait-list U applicants?

  - [8 CFR 214.14](d)(2) instructs it.

- There are 10,000 U-1 visas each fiscal year.

- More than 10,000 Form I-918s are receipted each fiscal year.

  - Those I-918s that are approvable but for which no visas are available are placed on the U visa waiting list.

  - An approvable I-918A for a derivative may also be wait-listed if the principal's I-918 is on the wait list.

# **Background,** *continued*



All petitioners and derivatives on the wait list are given deferred action if they are in the United States.

Even those who are in immigration proceedings are given deferred action.



# General Guidelines



Under 8 CFR § 274a.12(c), certain classes of aliens are allowed to apply for work authorization.

- (14) includes:

  - An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment;

- It is the deferred action that establishes eligibility for an EAD under section 8 CFR § 274a.12(c)(14).

# General Guidelines, *continued*



Applicants must have deferred action to be eligible for a (c)(14)-based EAD:



# Initial Review



1. Verify the A-number, name and DOB are correct in CLAIMS 3 and match the data in CIS.
   - Legal name conventions apply.
     - If name and/or DOB differ from a passport or legal identity document, find out why.
2. Verify type of card requested:
   - Initial, replacement, or renewal?
3. Check for photo and signature in CLAIMS 3.
   - If none present, need to scan it and add it to CLAIMS 3.
   - Under age 14?  No signature required.
4. File must contain a copy of the wait list notice with DAS, or
   - Verify in USCIS systems that the notice was issued; OR…

# CLAIMS 3 Updates for Wait-Listed I-918 s and I-918As



Check the I-918 or I-918A history in CLAIMS for the update "Waitlist Notice Ordered with DAS."

| Scenario | Letter | CLAIMS 3 Update |
|---|---|---|
| I-918 in the U.S. | SCO-1608-0874 | Waitlist Notice Ordered with DAS |
| I-918A in the U.S. | SCO-1608-0876 | Waitlist Notice Ordered with DAS |
| I-918 outside the U.S. | SCO-1608-0873 | Waitlist Notice Ordered |
| I-918A outside the U.S. | SCO-1608-0875 | Waitlist Notice Ordered |
| I-192 | N/A | Pre Adjudicate Under Review |

# Initial Review



- Make sure the underlying petition is currently on the waitlist.

- Pending I-918 & I-918A?

  - Send I-765 to ride
    with A-file.

- Is this I-918A receipt
    (c)(14) eligible?



# Initial Review, *continued*



If an RFE or ITD was issued on the underlying petition after the wait list update in CLAIMS 3, determine if the case has a final decision before issuing an EAD.

Be cautious of derivatives whose names/A-numbers were not inserted on wait list notices.

Check for other (c)(14)-based EADs.

- If you see a valid (c)(14)-based EAD, do not issue a second one in the same category.

    - A current EAD based on a different eligibility category is fine.

        o But not (a)(19) or (a)(20):  That means there is a final decision on the underlying case.

# Systems Needed



- PCQS/CIS (9106)

- CLAIMS 3

> Do the names and date of birth match?
> Are there other A-files?

- TECS:  Must have current results.

 If there is a "hit" must have TECS Resolution Memo prior to final adjudication.

- CPMS

# **Physical Presence**



**If wait listed but <u>no DAS</u>:**

- Look for Subsequent Entry – Must have evidence of physical presence in the United States.

- How would you establish this?

  - Passport or personal statement

An individual must be present in the United States for EAD eligibility under (c)(14).

# RFE and Denial Processing



- Possible reasons for RFE:

  - Evidence of subsequent entry, missing photo, cannot find evidence of wait listed I-918/I-918A, name discrepancies.

- Verify safe addresses in CLAIMS 3 prior to issuing any correspondence.

- Notices are drafted and issued in ECHO.

  - Make sure to use the correct safe address.

- Update CLAIMS 3 with the appropriate notice order.

- Route the file to FCU shelves for RFE/NOID while waiting for response.

# Category Conversions



- Never change the I-918 from (a)(19), and do not approve an I-918 in CLAIMS 3 as a (c)(14).

- If there is an unnecessary I-765 submitted as (a)(19), check for a second I-765 requesting (c)(14).
  - If no second I-765 requesting (c)(14), the I-765 requesting (a)(19) may be converted to a (c)(14) and approved at the time of wait listing.

- An I-765 with a derivative asking for (a)(20) may be converted to (c)(14) at time of wait listing, *if it will result in a grant.*

- Do not convert the I-765 category unless the conversion results in an approved I-765.
  - Do not convert at time of receipt.

# (c)(14) Adjudication



- TECS:  Must be completed prior to final decision in accordance with the current TECS guidelines and SOP.
  - Ensure that the name as it appears on the application is included.
  - Must include all aliases.
- If all criteria met, stamp the I-765 approved.
  - Approve EAD for two years minus one day.
  - Use the date you make the decision.  DO NOT backdate the EAD.
    - EXCEPTION:  Replacement card should have the same dates as the original EAD.
- If eligibility criteria are not all met, RFE or issue ITD before denying.

# (c)(14) Adjudication



- Update decisions in CLAIMS 3.

- Prepare worksheet.

- Route file to VAWA FCU to update CIS with DAS (if necessary), or

- Route file to Records after approval OR following denial.



- REMEMBER:  I-765s have motion rights, but they may not be appealed.

# **Stop Card Production**



- Refer to the CLAIMS 3 Updating Guide
- Located in MSWord>VSC Tab>Add'l Resources>ADJ SOPS> SOPs>General>CLAIMS 3 Updating Guide

# Routing Sheet





Receipt barcode sticker

RAILS code and date

Mark box(es) for each action required and mark sequence for AST action

Mark box(es) for each action required and mark sequence for AST action

After the file is complete, mark this box and route to Records

# **Important Reminders**



- RFE Rule:  Safe address

- Replacement Cards:  If the prior card had not expired, a replacement (c)(14) should have the same validity dates as the prior card.

  - Otherwise, do not backdate an EAD.

- Naming conventions apply.

- Wait-listed (c)(14) applicants:  Make sure they are in the U.S.

- CLAIMS 3 Updating Guide

# Questions?



