**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| Defendant-Intervenor. | § | |

**APPENDIX IN SUPPORT OF DEFENDANT-INTERVENORS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# Volume 12

# Exhibits 244 - 250

# DEF-INTERV.

# EX. 244

**From:** Lewis, Theodore R < ████████ @uscis.dhs.gov>
**Sent:** Monday, September 15, 2014 6:08 PM
**To:** Carlson, Deborah M < ████████ @uscis.dhs.gov>; Chhouy, Saobora
< ████████ @uscis.dhs.gov>; Hoballah, Jamal A
< ████████ @uscis.dhs.gov>; Kim, Kyong Y < ████████ @uscis.dhs.gov>;
Lesher, Grace B < ████████ @uscis.dhs.gov>; Lok, Muoi M
< ████████ @uscis.dhs.gov>; Namath, Robert E < ████████ @uscis.dhs.gov>;
Nelson, Steven K < ████████ @uscis.dhs.gov>; Nguyen, Van T
< ████████ @uscis.dhs.gov>; Pham, Vincent < ████████ @uscis.dhs.gov>;
Rogers, Kathryne J < ████████ @uscis.dhs.gov>; Villalobos, Vanessa
< ████████ @uscis.dhs.gov>; Wong, Suong T < ████████ @uscis.dhs.gov>
**Subject:** FW: Domestic Violence for DACA Purposes

Read below. I sought clarification from Mary Burford on convictions that DO NOT have a component of legal statute that *specifically* annotates Domestic Violence, but *does* have components of Domestic Violence in corollary paperwork such as arrest records, original charges, probation where the convicted Requestor has to participate in Anti- Domestic violence courses etc. So, in cases like that, we can charge them with a Significant Misdemeanor vice just a simple misdemeanor. However, in this type of case I think you should bring it to me or Van Nguyen for review prior to doing the denial.

Regards,

Ted

**From:** Burford, Mary H
**Sent:** Monday, September 15, 2014 2:56 PM
**To:** Lewis, Theodore R
**Cc:** Rogers, Kathryne J; Fisher, Sheila C
**Subject:** RE: Domestic Violence for DACA Purposes

Hi Ted,

Your instincts are good, and I would share your concerns in *other* contexts. However, DACA is very different from our typical adjudications. The advice below is very much in line with what I told the class today when we were reviewing conviction docs for disorderly conduct in Arizona. The elements of the statute were divisible – could be domestic violence or any number of other offenses. The conviction record, however, contained quite a few references to domestic violence, including a DV box that was checked on the police report and a requirement that the defendant participate in a domestic violence prevent program.

In other contexts, we would not necessarily "go behind the conviction" to consider the underlying facts of the case and would instead take our information from the statute under which the alien was convicted. Additionally, establishing removability for domestic violence under 237(a)(2)(E)(i) requires a finding that the offense constitutes a "crime of violence" under 18 USC 16, which is not a requirement for DACA.

In this instance, the agency has specifically designated certain categories of offenses as "significant" misdemeanors for DACA purposes, and domestic violence tops the list. If we have evidence in front of us that an alien has been convicted of that type of offense, and the conviction records support such a conclusion (as outlined in the guidance below), then we should be on solid ground denying DACA on that basis.

Please let me know if you still have questions, and we can arrange a quick meeting to discuss further. Thanks!

Mary

DEF - 00005007

Mary H. Burford
Associate Counsel – Service Center Law Division
Office of the Chief Counsel
USCIS California Service Center
Phone: 949.389.███
Fax: 949.389.███
Email: ███████@uscis.dhs.gov

*This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message. Thank you.*

**From:** Lewis, Theodore R
**Sent:** Monday, September 15, 2014 2:10 PM
**To:** Burford, Mary H
**Cc:** Rogers, Kathryne J
**Subject:** FW: Domestic Violence for DACA Purposes
**Importance:** High

Mary,

Please read the proposed guidance below. I am uneasy with counting a misdemeanor conviction for some sort of violent act as a crime of domestic violence when the conviction does not contain the legal components of domestic violence. I think that puts us on legally slippery ground. Thoughts?

**From:** Posvar, Sarah C
**Sent:** Monday, March 24, 2014 3:10 PM
**To:** Whitney, Ronald W
**Cc:** Welling, Peter B (Pete); Jacobson, Neil M; Martinez, Christian
**Subject:** Domestic Violence for DACA Purposes

Mr. Whitney,

My officers in the DACA BCU section often run into questions regarding offenses that aren't specifically domestic violence cases, but involve some type of DV issue. To alleviate questions, I would like to send out the below Q and A. Christian Martinez, suggested I vet this email through you. Please let me know if you have any thoughts on this. Thanks.

1. **Q: Does a conviction for ~~an offense~~ a misdemeanor that is not specifically a crime of domestic violence, but involves domestic violence constitute a significant misdemeanor?**

   A: Yes. ~~Per Ron Whitney at OCC,~~ We are treating any misdemeanor where the underlying ~~anything that~~ facts involve ~~"relates to"~~ domestic violence as a significant misdemeanor for DACA purposes even if the conviction would not normally support a 237(a)(2)(E)(i) charge.

   Please note the below NSC guidance/policy:

   - The offense ***must*** first meet the definition of a misdemeanor (punishable by 6-365 days incarceration) in order to be considered a significant misdemeanor.
   - A familial/domestic relationship must be involved.
     - This should be evident in the court documentation. DO NOT dig for information on who the victim was and if the victim had a familial/domestic relationship with the perpetrator for every assault/battery type charge.
       - This does not relieve you of your responsibility to obtain all of the required documentation. It simply means that we will leave the investigating to the law

DEF - 00005008

> enforcement agency handling the arrest and the court officers handling the prosecution. If there is no mention of domestic violence or familial relationships in the evidence, do not go looking for it.
>
> o On the flip side, if a DACA requestor is convicted of an offense that is not specifically a domestic violence charge, but includes violence and the victim is known (through court records and/or other documentation) to have a familial/domestic relationship with the perpetrator, it may meet the definition of a significant misdemeanor.

- Establishing domestic violence as a significant misdemeanor for DACA is significantly easier than establishing deportability under 237(a)(2)(E)(i) - Domestic Violence. If you are familiar with this deportability charge, please remember the same standards do not apply to establishing a conviction for an offense involving domestic violence is a significant misdemeanor.

**Sarah Posvar**
Section Chief
DACA/BCU
Nebraska Service Center/Rm 217
402-219-█████

        DEF - 00005009

# DEF-INTERV.

# EX. 245

NOTE: MOST RECENT UPDATES ARE HIGHLIGHTED BY RED FONT

# DACA BCU FAQs

## Contents

1.  Q: What do I do if I have a DACA renewal that I believe needs to be an initial filing?................5

2.  Q: Does time served pre-trial count as time in custody for a significant misdemeanor?............6

SECTION A.  ROUTING CASES WITHIN DACA BCU.....................................................................................6

1.  Q:  What Egregious Public Safety (EPS)/public safety crimes should be referred to the RTI (referral to ICE) team?.....................................................................................................................6

2.  Q:  How do I refer a case to the RTI team? ......................................................................................7

3.  Q: My requestor did not show up for his/her ASC appointment. What should I do? .................7

SECTION B: JUVENILES ..................................................................................................................................8

1.  Q:  Do juvenile convictions affect DACA? .......................................................................................8

2.  Q:  Is a "minor" the same as a "juvenile"?......................................................................................9

3.  Q: What do I need to remember about juveniles? .........................................................................9

4.  Q: If the Rap Sheet indicates that I have a juvenile delinquency, do I need to RFE?...................9

5.  Q:  If I have court documents telling me what the charge was and that they were charged as a juvenile, but do not know the sentence received, do I need to RFE for *final* dispositions?................9

SECTION C: TECS ISSUES/RESOLUTIONS MEMOS ................................................................................. 10

1.  Q: When do I use the Checkbox IDENT memo? ........................................................................ 10

2.  Q: Is there an example of how to write an ␣LE␣ memo?........................................................... 11

3.  Q: Does the "Resolution Memorandum completed" box on the ROIT need to be annotated when we do an IDENT memo? ...................................................................................................... 11

5.  Q: Do the dates on an IDENT memo need to be spelled out?.................................................. 11

6.  Q: Can I use another Center's TECS Resolution Memo? If so, what steps do I need to take? .... 11

7.  Q: What forms do I need to review for aliases? ........................................................................ 12

8.  Q: Am I required to complete TECS queries prior to referring a case to CFDO?........................ 12

9.  Q: I found a second A-file for my DACA case and it needs to be referred for a TECS resolution, should I request and consolidate (if appropriate) prior to referring?................................................ 12

10. Q: There is already a TECS/NCIC Resolution Memo in the file, but it is expired. Can I still use it?  12

Confidential

11. Q: A TECS record I am reviewing for resolution indicates the subject was denied a hologram. What does this mean? ................................................................................................................. 13

SECTION D: SYSTEMS/UPDATING.......................................................................................................... 13

1. Q: As an officer in DACA BCU am I required to make any additional CLAIMS updates? ........... 13

2. Q: I forgot to make the CLAIMS update "Received from BCU with Resolution" before I denied the case, what do I do? ................................................................................................................. 13

3. Q: How do I access the BCU Webpage? ....................................................................................... 14

4. Q: What G22 lines do DACA BCU officers use? ........................................................................... 14

5. Q: How do I review the FBI RAP Sheet in CPMS (Customer Profile Management System)?...... 15

6. Q: How does the FBI RAP Sheet in CPMS (Customer Profile Management System) compare with what I see in BBSS? ........................................................................................................................ 15

7. Q: I need to have fingerprints refreshed for my case (>15 mos old, new arrest, etc.). How should I proceed?.................................................................................................................................. 15

8. Q: What are the steps for manually adjudicating (approvals) in ELIS? ....................................... 15

9. Q: What do I do if I have a DACA renewal that I believe needs to be an initial filing?............... 16

10. Q: I lost my access to the Consular Consolidated Database (CCD). How do I get my access reinstated?......................................................................................................................................... 17

SECTION E: JUDGEMENTS AND CONVICTIONS/DISPOSITIONS .............................................................. 18

9. Q: When are we required to RFE for court dispositions? Do we need to RFE for every arrest or just the ones that do not have dispositions? When can we trust the RAP sheet?............................ 18

10. Q: What do I do if I do not receive final court dispositions that I asked for in an RFE?......... 19

11. Q: If a Requestor is charged with a felony, but the charge was dismissed, does it affect DACA? 19

12. Q: What if a charge is vacated or expunged?........................................................................... 19

13. Q: Can a requestor who received Deferred Prosecution or Pre-Trial Diversion be considered for DACA? ........................................................................................................................................... 20

14. Q: How should Centers process a case where the requestor has entered into a deferred prosecution, pretrial diversion or rehabilitative program, and completion of such program will remain pending for more than 6 months from the time a Center receives the related court documents? .......................................................................................................................................... 20

15. Q: How does a suspended sentence affect the requestor's ability to meet the criminality guideline? ............................................................................................................................................ 22

16. Q: Is there a requirement that court documents be certified? ............................................... 22

17. Q: What do I need to know about minor traffic offenses?...................................................... 22

Confidential

DEF - 00006142

18.    Q: How do I know if an alcohol/drug related driving offense qualifies as a significant misdemeanor?.................................................................................................................................... 23

19.    Q: Does a conviction for a misdemeanor that is not specifically a crime of domestic violence, but involves domestic violence constitute a significant misdemeanor?........................................... 23

20.    Q: What is the policy on Domestic Violence for DACA Renewals?  Is it any different than on initials? ................................................................................................................................................ 24

21.    Q: If a requestor answers "yes" to criminality question #1 and does not provide further explanation, but does submit traffic violation information, do I still need to send an RFE for further clarification? .................................................................................................................................... 24

22.    Q: Is probation the same as diversion?.................................................................................. 25

23.    Q: Does time served pre-trial count as time in custody for a significant misdemeanor? ....... 25

24.    Q: What is a "Wobbler" criminal statute and should they be treated as felonies or misdemeanors for DACA purposes?.................................................................................................... 25

25.    Q: The RAP sheet I am reviewing indicates *"The FBI number and State ID number in your request are not the same individual according to our files. No criminal history will be disseminated"*. 26

SECTION F:  Adjudicating the Request....................................................................................... 26

1.    Q: What do I do if a requestor is in ICE custody? ....................................................................... 26

2.    Q: What do I do if a requestor is in State custody, with an ICE detainer in place or ICE has taken some sort of action against the requestor who is not currently in ICE detention?........................... 28

3.    Q: What is the proper ROP order of the right side of the file?.................................................... 30

4.    Q: Can a requestor ask for "exceptional circumstances" for any DACA guideline other than criminality? .................................................................................................................................... 30

5.    Q: What is the current guidance on "exceptional circumstances" requests? ............................ 31

6.    Q: When do I send a NOID vs. RFE for criminality issues? .......................................................... 31

7.    Q: If I don't get a response to a NOID, do I deny or abandon it? ................................................ 31

8.    Q: If I have a strong indication the Requestor was found guilty of a charge that will affect DACA, but also have a diploma mill school that needs to go to CFDO, do I go out for the criminality (send RFE or NOID) or do I just send the file to CFDO pre-adjudication? ........................................... 31

9.    Q: Am I still required to request permission from SCOPS before sending an RTI?.................... 31

10.    Q: What do I do if I receive a motion on a renewal?............................................................. 32

11.    Q: If requestor legally has two last names, but was only given one name on their initial?... 32

12.    Q: What do I do if they have two last names on their initial I821, but only one last name on their initial I765?................................................................................................................................ 32

Confidential

NOTE: MOST RECENT UPDATES ARE HIGHLIGHTED BY RED FONT

13. Q: How do I send an RFE with attachments? .......................................................................... 32

14. The DACA request I am reviewing does not contain any evidence or the form. How can I get the evidence loaded in ELIS? ............................................................................................................ 32

15. Q: What are the steps for manually adjudicating (approvals) in ELIS? ................................... 33

16. Q: How do I resolve instances where the requestor is homebound*, has 2 unclassifiable fingerprint results, or has received a fingerprint waiver from the ASC? .......................................... 34

SECTION G: Travel Concerns ......................................................................................................... 35

1. Q: I need to RFE for travel.  What do I do? ............................................................................... 35

2. Q: Information is received that requestor accidentally traveled/crossed the border/made a wrong turn, do we have to send a RAG? .......................................................................................... 35

3. Q: Requestor has a deportation order, as well as Advanced Parole, and left on the Advanced Parole.  Is this departure disqualifying? ........................................................................................... 35

4. Q: Who is the POC for Travel Process: ..................................................................................... 35

SECTION H:  Miscellaneous ........................................................................................................... 36

1. Q: What if I find an LHM (Letterhead Memorandum) in the file? .............................................. 36

2. Q: I need to do a CFF. Can I do this electronically? ................................................................. 37

Confidential

DEF - 00006144

NOTE: MOST RECENT UPDATES ARE HIGHLIGHTED BY RED FONT

New/Updated FAQs

1. **Q: What do I do if I have a DACA renewal that I believe needs to be an initial filing?**

   A: There are two definite instances when a DACA request should be changed from a **DACA Renewal** request to a **DACA Initial** request:

   1. The requestor's most recent DACA expired on or before 09/04/2016.
      a. Check both Benefit Card Details and Pending and Prior Cases Filed to determine when the last DACA expired.
   2. The requestor's previous DACA was terminated (by NTA or otherwise), and no subsequent DACA request has been approved.

      NOTE: If you see a newly filed DACA renewal where DACA was previously terminated on or after 01/20/2017 and the case was subsequently reapproved, please send the new IOE to Sean, Sara, and Jenni and wait for further guidance. These are likely related to the Inland Empire class action lawsuit.

   **ISO Guidance:**

   When you identify a case that meets one of the above scenarios, send an e-mail to your SISO and/or ISO3. In the e-mail, include the IOE and an explanation as to why you believe the case needs to be converted to an initial request.

   **SISO/Senior Guidance:**

   Review case to ensure it meets the above criteria.

   **In ELIS:**

   1. Assign case to self
   2. Proceed to adjudication
   3. Assign case to self
   4. Reset Packet Benefit Types
      a. Update application reason:
         i. I-821D – DACA – Initial
         ii. I-765 – Application for EAD – Initial



   5. Reset Packet Benefit Types
   6. Check to see if case is now assigned to CSC

**5 | DACA BCU FAQs – revised 05/09/2018**

Confidential

DEF - 00006145

**Account Number:** 8397⊙
  **Assigned To:** Not Assigned
  **Service Center:** (WSC) CALIFORNIA SERVICE CENTER

2. **Q: Does time served pre-trial count as time in custody for a significant misdemeanor?**

   A. Yes. Credit for time served pre-trial counts as time in custody.

   Please keep in mind that the the second half of the significant misdemeanor definition requires that the individual have been "*sentenced* to time in custody of more than 90 days." This would mean the first step in the process is to look at the actual sentence, then to look at how much time was served on that sentence. Credit for time served only counts up to the amount of the sentence imposed. For example, if a sentence is for 180 days imprisonment with 100 days suspended, it is not a significant misdemeanor based on the sentence. However, if a sentence is for 180 days imprisonment with 100 days suspended, but the person also received credit for 15 days served pre-trial, then it is a significant misdemeanor because they were *sentenced* to more than 90 days and *actually served* more than 90 days.

# SECTION A.  ROUTING CASES WITHIN DACA BCU

1. **Q: What Egregious Public Safety (EPS)/public safety crimes should be referred to the RTI (referral to ICE) team?**

   A. An EPS case is defined by USCIS and ICE as a case where information indicates the alien is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:
   a. Murder, rape, or sexual abuse of a minor as defined in section 101(a)(43)(A) of the INA.
   b. Illicit trafficking in firearms or destructive devices as defined in section 101(a)(43)(C) of the INA.
   c. Offenses relating to explosive materials or firearms as defined in section 101(a)(43)(E) of the INA.
   d. Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.
   e. An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.
   f. An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.
   g. An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.

**6 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006146

    h.  An offense relating to alien smuggling as described in section 101(a)(43)(N) of the INA

    i.  Human Rights Violators, known or suspected street gang members, or Interpol hits.

    j.  Re-entry after an order of exclusion, deportation or removal subsequent to conviction or a felony where a Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

FOR DACA ONLY: Known or suspected Drug Trafficking Organization (DTO) and Drug Cartel members/associates.

**2. Q: How do I refer a case to the RTI team?**

A. See the National Security and Egregious Public Safety Referrals on the DACA BCU Reference page.

**3. Q: My requestor did not show up for his/her ASC appointment. What should I do?**

A. We are no longer asking you automatically request/schedule a 2nd ASC biometric Appointment within ELIS (there are issues with some cases not having this button and we are trying to keep things as streamlined as possible). What we would like you to do is if you have current FP results (within 15 months) and you have all the evidence you need to complete your case, you should;

    a.  Review your case as you normally would.

    b.  Create your Ident/TECS memo(s) and complete your referral.

From there ELIS should recognize that the requestor needs to be re-scheduled for a 2nd ASC biometric appointment and send it through that process automatically. However, if you need to send an RFE for evidence to work your case, you should;

    1. Schedule an ASC appointment through ELIS. Click here for instructions on scheduling through ELIS. (If you do not have the button to schedule an ASC appointment for a case, see your SISO or senior.)

    2.  Create your RFE for dispos, or whatever else you are requesting and include the ASC appointment standard (indicating that they will receive a separate notice for the appointment) in your RFE.

\*\*Also, one other thing that should be noted is that ELIS may display 'no-show' under the biometric 'Appointments' for up to 10 days after the ASC appointment date for the results to update and for the no-show indicator to change. Please let cases sit in your queue for up to 10 days after the ASC biometric appointment to make sure we handle each case appropriately, using the instructions above.

**7 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006147

## SECTION B: JUVENILES

### 1. Q: Do juvenile convictions affect DACA?

A. In all *correctness*, the term "juvenile conviction" is inaccurate. A charge that is adjudicated in juvenile court may lead to an adjudication of juvenile delinquency -- but not a conviction. This is why juvenile charges do not meet the definition of a criminal conviction for DACA.

HOWEVER: Although juvenile charges may not meet the definition of a criminal conviction for DACA, the juvenile criminal record may indicate significant public safety concerns. When evaluating public safety concerns, consider the totality of the requestor's circumstances.

**To be evaluated for public safety concerns the charges still must have a finding of delinquency/ guilt (AKA a conviction).**

When evaluating a requestor's juvenile criminality, it is imperative that you determine if the charge(s) was (were) adjudicated in juvenile or adult court.

- Charges adjudicated in juvenile court should be evaluated for possible egregious public safety concerns (including offenses of a sexual nature) implications. These cases go to the EPS team to process.
- There are instances where a requestor may have been charged as a juvenile in adult court. Charges adjudicated in adult court should be evaluated for the severity of any convictions as well as possible public safety implications. (Colorado is an example of where this might occur).
- If you have juvenile charges that, by DACA guidelines, would allow the requestor to qualify for DACA, but where the nature of the crimes do not seem to be "in the spirit of DACA", we may exercise our *discretion* and send the Juvenile Delinquency NOID. The NOID states that "while a finding of juvenile delinquency is not considered a criminal conviction for purposes of DACA, given the seriousness of your offense, USCIS has determined that you do not merit a favorable exercise of discretion". Habitual offenders, escalating charges, etc could fall under this umbrelllA.

**Please remember:** A finding of delinquency/guilt (AKA a conviction) is **required** to use this NOID; simply being charged with a serious crime is not sufficient. Please ask your supervisor if you are unsure.
  - If after you send the Juvenile Delinquency NOID, you don't receive a response, you will abandon the I-821D and deny the I-765 for cause. If you *do* receive a response to the NOID, and you still feel like the denial should stand, use the DACA 511 template denial from Appendix - "You have not

Confidential

DEF - 00006148

established that you warrant a favorable exercise of prosecutorial discretion".

NOTE: Centers are no longer required to elevate juvenile delinquency cases to SCOPS attention unless they encounter a novel, complex or sensitive case. As indicated in the revised FAQ below, these cases must still be reviewed by a supervisor and any associated NOID must receive clearance from local counsel for legal sufficiency.

2. **Q: Is a "minor" the same as a "juvenile"?**

   A. The terms "minor" and "juvenile" are sometimes used interchangeably to refer to a youthful offender. However, the term "minor" does not always indicate a youthful offender. Consider alcohol offenses and the legal drinking age:

   - A 14 or 15 year old arrested/cited for a minor in possession charge would be both a minor and a juvenile.
   - A 19 or 20 year old arrested/cited for a minor in possession charge would be a minor in terms of the legal drinking age, but would not be a juvenile.

3. **Q: What do I need to remember about juveniles?**

   A.
   - Remember first and foremost - juvenile charges generally do not affect DACA.
   - Juvenile is not the same as "minor".
   - Pay attention to the court where the charges were processed.
   - The age of the Requestor really can't be used as a determining factor.
   - When does a juvenile delinquency matter?
     - ○ Findings of guilt/delinquency of public safety, sexual, or EPS crimes.
     - ○ Escalating charges (first time charged with petty theft, second time charged with grand theft, third time burglary, etc., etc.)
     - ○ Repeat offenders (vs. one time conviction where it appears they "learned their lesson").

4. **Q: If the Rap Sheet indicates that I have a juvenile delinquency, do I need to RFE?**

   A. No. If you can tell from the RAP sheet that the requestor was treated as a juvenile, you do not need to RFE for additional information.

5. **Q: If I have court documents telling me what the charge was and that they were charged as a juvenile, but do not know the sentence received, do I need to RFE for *final* dispositions?**

   A. No. For juvenile issues, you really only need to know the charge itself (to determine if it is a public safety issue) and that it was processed as a juvenile. However, if there are public safety

Confidential                                    DEF - 00006149

concerns, you must RFE for final dispositions to determine if there is a finding of delinquency/guilt. In all cases, you must have more than just the Rap Sheet indicating it's a juvenile offense.

## SECTION C: TECS ISSUES/RESOLUTIONS MEMOS

### 1. Q: When do I use the Checkbox  LE  memo?

A. The Checkbox  LE  memo is used when the requestor's criminality consists of crimes that do not affect DACA (dismissed, previously resolved and no new criminality, juvenile offenses, convictions that do not meet the definition of a misdemeanor, municipal ordinances/violations, or minor traffic and/or immigration violations). It is not necessary to list out all of the details and the date(s) of the convictions, because they do not affect DACA.

The Checkbox memo is not intended to be used *all* the time; in other words, you don't have to try to *make* your case fit the checkbox memo. If you feel like it doesn't fit one of the checkboxes, or if you feel like the next person holding the file needs more of an explanation regarding how you came to the conclusion that the charges do not affect DACA, please use the normal IDENT memo and write the details out.

Update: It has been a local DACA practice to include memo's to make future adjudications and any review of our decisions easier to decipher. However, we believe that there are some  LE  hits that can be resolved without requiring a resolution. Until now, we have been using the following checkbox memo for some of the less complex hits. From this point on, the highlighted types of hits no longer require you to complete a checkbox memo. You may simply complete the referral.

( )  The arrest(s)/conviction(s) were dismissed/not prosecuted/found not guilty/acquitted and do not affect the consideration for Deferred Action.

( )  The arrest(s)/conviction(s) were juvenile offenses and do not affect the consideration for Deferred Action.

( )  The arrest(s)/conviction(s) do not meet the definition of a misdemeanor and do not affect consideration for Deferred Action.

( )  The arrest(s)/conviction(s) are minor traffic violations and/or immigration violations and do not affect consideration for Deferred Action.

( )  The arrest(s) do not affect consideration for Deferred Action, even if convicted; disposition(s) were not requested.

( )  All criminality issues occurred prior to the initial DACA or first renewal grant and do not affect consideration for this DACA renewal.

( )  No  LE  or criminality issues were found in reviewing this DACA request.

( )  The conviction(s) resulted in fewer than three non-significant misdemeanors and do not affect consideration for Deferred Action.

XXXshort desc of crime, i.e. TheftXXX, maximum possible sentence XXXi.e. 180 daysXXX, time in custodyXXXi.e. 30 daysXXX.

Confidential                                    DEF - 00006150

XXXshort desc of crime, i.e. TheftXXX, maximum possible sentence XXXi.e. 180 daysXXX, time in custodyXXXi.e. 30 daysXXX.

You always have the option to write a resolution. If you have to look up statutes or any other checks, then a resolution is still required.

2. **Q: Is there an example of how to write an IDENT memo?**

   A. Yes.

   - Your **LE** memo should explain the *whole story* of the criminality; ideally, you should list: **1)** the name of charge(s) and the statute(s), **2)** the date of the charge(s), **3)** the disposition(s) and date(s) of disposition(s), and finally **4)** whether or not the charge(s) will affect DACA.
   - Your IDENT memo should not speak to the adjudication of the DACA request (i.e. If and when an RFE was sent, whether the case will be approved or denied, etc.)
   - The checkbox **LE** memo is only recommended when charges and dispositions are clear. Complex criminality should be addressed in a regular **LE** memo, rather than the checkbox **LE** memo. In other words, if you as the resolution officer had to connect the dots to come to your conclusion, an explanation would likely help the next person reading the file.
   - Here is a link to several examples of IDENT memos of various styles, but all have the pertinent information and clearly state if and why the charges affect DACA - file://                                                      .pdf.

3. **Q: Does the "Resolution Memorandum completed" box on the ROIT need to be annotated when we do an LE memo?**

   A. (PAPER FILES ONLY) NaBISCOP only requires that "*Resolution Memorandum completed*" box on the ROIT be checked for TECS Resolution Memos. It is not a requirement for **LE** memos.

4. **Q: How should criminal charges be written on an LE memo?**

   A. The charges should be written out, should avoid acronyms or abbreviations, and should be easy to understand by the average reader.

5. **Q: Do the dates on an LE memo need to be spelled out?**

   A. There is no requirement that the dates be spelled out, however, dates should be formatted consistently throughout the memo.

6. **Q: Can I use another Center's TECS Resolution Memo? If so, what steps do I need to take?**

**11 | DACA BCU FAQs – revised 05/09/2018**

A. (PAPER FILES ONLY)Yes, if there are no new records/information. Please ensure you do the following:

- Refresh the memo if no longer valid (over 180 days old)
- Place in the proper ROP order (in other words, you probably will need to move the memo up in the file)
- Annotate the DACA receipt #s on the ROIT

**7. Q: What forms do I need to review for aliases?**

A. You should review everything in the file and run any aliases not specifically exempted by NaBISCOP.

**8. Q: Am I required to complete TECS queries prior to referring a case to CFDO?**

A. Yes, but only on the primary name and DOB on the Form I-821D. A TECS Resolution memo should also be completed if appropriate.

**9. Q: I found a second A-file for my DACA case and it needs to be referred for a TECS resolution, should I request and consolidate (if appropriate) prior to referring?**

A. Yes

**10. Q: There is already a TECS/NCIC Resolution Memo in the file, but it is expired. Can I still use it?**

A. (PAPER FILES ONLY) Yes, as long as there is no new information.

Anytime a TECS/NCIC Resolution Memo expires (i.e., is older than 180 days), re-query all name and DOB combinations referenced on the TECS/NCIC Resolution Memo and ROIT. If no new or additional information is found in TECS/NCIC, you can "refresh" the memo by making the following annotations:

- Cross-out (line through) the previous date of the TECS/NCIC Resolution Memo.
- Write "No New Information Found."
- Annotate your initials and NFTS code (e.g., EX0000).
- Annotate the new date of the TECS/NCIC query.

This will extend or renew the original TECS/NCIC Resolution Memo for an additional 180 days.

NOTES:

- **All National Security cases with an expired memo must still be forwarded immediately to BCU for resolution.**
- **To refresh a Batch Resolution, annotate option 2 in the box below the resolution language (if appropriate).**

**12 | DACA BCU FAQs – revised 05/09/2018**

**11. Q: A TECS record I am reviewing for resolution indicates the subject was denied a hologram. What does this mean?**



## SECTION D: SYSTEMS/UPDATING

**1. Q: As an officer in DACA BCU am I required to make any additional CLAIMS updates?**

A. (PAPER FILES ONLY)

Yes. You must update the case to show that the criminality/TECS issues were resolved prior to adjudication.

Case Review > Lift Suspense > Received from BCU w/Res.

**2. Q: I forgot to make the CLAIMS update "Received from BCU with Resolution" before I denied the case, what do I do?**

A. (PAPER FILES ONLY)

Click Adjudicate, click OK to the pop up box, then proceed to Case Review, Lift Suspense, Received from BCU w/Res.

*IF you denied the case in error* and meant to approve or send an RFE/NOID:

Click on "Remove Hold" in the top menu bar.

Confidential

DEF - 00006153



- Click on NO.  You will then be prompted to enter your Level 1 Supervisor Override password.  (Note: "confirmed" means you agree with the last action taken on the case; "remanded" means you disagree with the last action).



3. **Q: How do I access the BCU Webpage?**

   A. There are two ways to access the webpage initially of from a computer that does not have the page saved as a favorite.

   **1)** J Drive
       a.   Go to J drive
       b.   Select TECS/NCIC Folder
       c.   Select Background Check Unit Folder
       d.   Select BCU Reference Page Folder
       e.   Select BCU Reference Page (at bottom)
   **2)** Center Apps
       a.   Select USL BCU and NTA Program
       b.   Click Add-Ins
       c.   Click Web Info

   - Saving to Favorites
       - Open site, then click on STAR with PLUS sign

   - Any problems accessing the webpage or J Drive should be directed to your supervisor.

4. **Q: What G22 lines do DACA BCU officers use?**

   A. Please check with your SISO for specific G22 information based on your current assignments.

Confidential

DEF - 00006154

5. **Q: How do I review the FBI RAP Sheet in CPMS (Customer Profile Management System)?**

A. CPMS Web Version is a new application that will be replacing BBSS (Benefits Biometric Support System) sometime in November, 2015. CPMS will provide access to the same data you have been seeing in BBSS. Click here for instructions to view the FBI RAP Sheet in CPMS.

6. **Q: How does the FBI RAP Sheet in CPMS (Customer Profile Management System) compare with what I see in BBSS?**

A. The FBI RAP sheet will look slightly different in CPMS. However, the information is the same as what you see in BBSS (Benefits Biometric Support System). Click here to see a comparison of the FBI RAP sheets in CPMS vs BBSS.

7. **Q: I need to have fingerprints refreshed for my case (>15 mos old, new arrest, etc.). How should I proceed?**

A: There is a new resubmit function in CPMS. For now, if you have a case that you believe needs fingerprints resubmitted, please contact your supervisor. This guidance may change in the future once we are confident everything is working properly.

8. **Q: What are the steps for manually adjudicating (approvals) in ELIS?**

   **A:** The steps for manual adjudication of an approval are now as follows:

   1. Check 9101 for VAWA indicators (flashing warning banner, COA is 384, U, or T, etc.) and EARM flag
      a. If EARM flag is present, check EARM
      b. If VAWA indicators are present you will **not** complete manual adjudication, but will complete the referral and let ELIS take care of the VAWA checks/referral

   2. Check the Benefit Card Details to make sure the previous card is expired or within 150 days of expiration.

   3. Check the DACA Criminality Questions tab to see if they indicated any criminality.

   4. Check the Biometric tab for current bios.

   5. Review all documents in the Evidence and RFE tab. You must click the 'View Packet Evidence' button to retrieve all the submitted evidence. Please remember to check for additional names and DOBs.

   6. Check Pending and Prior Cases Filed tab to check for name/DOB variations/discrepancies, verify that case is a DACA renewal , look for an I-131 being filed, and to verify that the previous filings were not terminated or denied.

**15 | DACA BCU FAQs – revised 05/09/2018**

7. If you are ready for approval, click on the 'Proceed to Adjudication' button.

8. Reassign case to yourself.

9. Check the Flags tab. Resolve all flags.

10. Make sure everything in Risk and Fraud has been reviewed

11. Complete resolution the resolution memo (if required) is linked.

12. Clear referral.

13. Click on the Render Decision tab.

14. Click 'Mark all for Approval'. If the button is not present, this means the 765 separated from the 821. Reassign the 765 back to yourself. The Mark for Approval button should now be available to you.

15. Select 'Approval' in the 821D section. The 765 section should self-populate. Verify the validity period is for two years.

16. Click on 'Save' in the Verify EAD for 765 section.

17. Click on 'Finalize Decision'.

Per the ELIS POCs, these steps must be strictly followed or you will receive an error message when trying to complete adjudication.

9. **Q: What do I do if I have a DACA renewal that I believe needs to be an initial filing?**

A: There are two definite instances when a DACA request should be changed from a **DACA Renewal** request to a **DACA Initial** request:

1. The requestor's most recent DACA validity period expired on or before 09/04/2016.
   a. Check both Benefit Card Details and Pending and Prior Cases Filed to determine when the last DACA expired.
2. The requestor's previous DACA was terminated (by NTA or otherwise), and no subsequent DACA request has been approved.

NOTE: If you see a newly filed DACA renewal where DACA was previously terminated on or after 01/20/2017 and the case was subsequently reapproved, please send the new IOE to Sean, Sara, and Jenni and wait for further guidance. These are likely related to the Inland Empire class action lawsuit.

**16 | DACA BCU FAQs – revised 05/09/2018**

NOTE: MOST RECENT UPDATES ARE HIGHLIGHTED BY RED FONT

**ISO Guidance**:

When you identify a case that meets one of the above scenarios, send an e-mail to your SISO and/or ISO3. In the e-mail, include the IOE and an explanation as to why you believe the case needs to be converted to an initial request.

**SISO/Senior Guidance:**

Review case to ensure it meets the above criteria.

**In ELIS**:

3. Assign case to self
4. Proceed to adjudication
5. Assign case to self
6. Reset Packet Benefit Types
    a. Update application reason:
        i. I-821D – DACA – Initial
        ii. I-765 – Application for EAD – Initial



7. Reset Packet Benefit Types
8. Check to see if case is now assigned to CSC



10. **Q: I lost my access to the Consular Consolidated Database (CCD). How do I get my access reinstated?**

    A: These are the latest instructions for having your CCD account reinstated.  This replaces the G-1217 process.

    1. Go to MyIT via Chrome

    2. Pick Systems Access Request/Online Forms

    3. Pick Business Systems Access

    4. Fill out your information

**17 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006157

5. Under Systems, select CCD

6. At the top, select Choose Options

7. Under CCD Selections, select <u>Reinstate</u>  (or <u>NEW</u> for new access)

8. For location, select <u>DHS/USCIS/NSC</u>

9. At the top, select Checkout

# SECTION E: JUDGEMENTS AND CONVICTIONS/DISPOSITIONS

**9.  Q: When are we required to RFE for court dispositions? Do we need to RFE for every arrest or just the ones that do not have dispositions? When can we trust the RAP sheet?**

A. Generally, we need more than just the RAP sheet to resolve issues of criminality. This is especially true when it appears we may have to deny a DACA request for criminality. However, the policy on using RAP sheets to resolve certain criminality issues was updated in early April 2014. Please note that at this time, we can only use the RAP sheet to resolve criminal issues if it is favorable to the DACA requestor (i.e. the criminality issue will not be a reason for denial).

Expanded guidance on the Rap Sheet changes and when dispositions are/are not required:

➢ **You still <u>always</u> need to know the maximum sentence of the charge(s).**

➢ **If you are unable to determine the maximum sentence because you do not have a statute, can't determine the degree or severity of the charge, etc., you will have to RFE for the court documents because you have to know the maximum sentence.**

1. If the RAP sheet indicates the final disposition of the charge(s) then we can use the information on the RAP sheet and don't need to RFE for court documents.
   • IMPORTANT NOTE: If you encounter a significant misdemeanor on the Rap Sheet, which shows a conviction, but do not have any court documents in the file or online – you should **RFE** rather than NOID.  With any potential denial situation, know that you should have dispositions in the file if you are going to deny on criminality grounds.

**18 | DACA BCU FAQs – revised 05/09/2018**

2. If the crime(s) listed on the RAP sheet is **not** disqualifying for DACA, then we don't need the final disposition documentation (i.e. not 3 misdemeanors, not a significant misdemeanor, not a felony).
    - Crimes that do not meet the definition of a misdemeanor for DACA fit here; in other words, crimes that do not have a maximum possible sentence of at least 6 days jail time. (For example: A Class C Misdemeanor in Texas – has no jail time possible and therefore can't meet the definition of a misdemeanor).

3. If the crime(s) listed on the RAP sheet could not meet the definition of a significant misdemeanor based on time in custody because the maximum sentence is less than 91 days, then we don't need the final disposition documentation. This guidance would not apply to the six significant misdemeanor categories defined in the DACA SOP.
    - Crimes that can never be a significant misdemeanor based on their maximum sentence fit here; in other words, crimes that only have a maximum sentence of UP TO 90 days. (For example: A violation in New York – carries a maximum sentence of 15 days and therefore can't ever be considered a significant misdemeanor based on time in custody).

If you have questions, please see your supervisor or a DACA BCU Senior.

### 10. Q: What do I do if I do not receive final court dispositions that I asked for in an RFE?

A. Compose an IDENT memo using ECHO paragraph "IDENT Final dispositions not received". Deny the case using the denial in the ECHO correspondence drop down list entitled "I-821D DACA Notice of Denial (Insuff. RFE Response to Criminal Rec)".

### 11. Q: If a Requestor is charged with a felony, but the charge was dismissed, does it affect DACA?

A. NO. If the charge is dismissed, it is dismissed... and does not affect DACA.

There are situations where a finding of delinquency/guilt is entered prior to a dismissal, and there are situations where one is not. Public Safety concerns really should only be considered where there was once a finding of delinquency/guilt. If you feel that you have public safety concerns with the charges at hand, please consult your supervisor and/or Legal.

### 12. Q: What if a charge is vacated or expunged?

A. For DACA purposes, expunged convictions will not be treated as disqualifying felonies or misdemeanors. However, vacated or expunged convictions will be considered when evaluating public safety concerns.

**19 | DACA BCU FAQs – revised 05/09/2018**

NOTE: MOST RECENT UPDATES ARE HIGHLIGHTED BY RED FONT

13. **Q: Can a requestor who received Deferred Prosecution or Pre-Trial Diversion be considered for DACA?**

A. It depends on the state in which the charges occurred. The key to deciding if you have a conviction is whether or not the state requires finding of guilt to be entered into the Deferred Prosecution, Pre-Trial Diversion, or Rehabilitative-Type Program. If a finding of guilt is not required, then the charges will not be treated as disqualifying misdemeanors or felonies for DACA purposes. Refer to the "Conviction Info" section under the state where the requestor was prosecuted on the DACA BCU Reference Page.

14. **Q: How should Centers process a case where the requestor has entered into a deferred prosecution, pretrial diversion or rehabilitative program, and completion of such program will remain pending for more than 6 months from the time a Center receives the related court documents?**

A. In September 2014, SCOPs issued new guidance on pending court cases and pending diversion programs & deferred adjudication/prosecution programs that require a guilty plea. It's important to note that all of these will be case by case, so you need to go through the vetting process to determine the proper action on your file. Our general rule of thumb is that we will issue two RFEs, and then if the court case/diversion program is still pending, we will deny using "You do not warrant a favorable exercise of prosecutorial discretion"; however, please discuss any special situations with your supervisor as not all cases will fit the mold.

IMPORTANT NOTES:

- For pending diversion programs or deferred adjudication/prosecution or deferred sentence situations, the requestor must have plead guilty or accepted responsibility in order to hold the case. You must research the particular program in a particular state to determine this. Make sure you read the terms of the program closely, and consult Legal or your supervisor or senior if you are unsure if a guilty plea was required. If a guilty plea is not required, you do not have a conviction and there would be no reason to hold the case.
- Another important note is the difference between a rehabilitative program vs regular probation. If the diversion program is not rehabilitative in nature, it is considered a conviction for DACA purposes and there is no need to wait for completion of the program. Remember, plain probation equals a conviction, so the case can be denied immediately using the felony, significant misdemeanor, or three misdemeanors denials.
- Always refer to the Deferred Adjudication Diversion flowchart on the DACA BCU webpage Deferred Adjudication Diversion Flow Chart.

PROCESS:

1. Issue an initial RFE for final J&C. If the response shows the case is pending or that the requestor has entered a rehabilitative program, determine if the

Confidential

DEF - 00006160

requestor provided information about the next court date or date the program will be completed. Next go through the vetting process:

I.  If the next court date/date of completion is within six months, send the file to the Disposition Hold (with supervisor or senior sign off) with a call-up date shortly after the next court date/date of scheduled completion. At that time send a second RFE (with supervisor sign off).

II. If the next court date/date of completion is *further than six months out*, you can now deny the case using the "You do not warrant a favorable exercise of prosecutorial discretion" denial. There is no need to send a second RFE in this situation.

III. If the next court date/date of completion is not provided, attempt to find the case online. If you can't find the case online, send the file to the Disposition Hold (with supervisor or senior sign off) with a call-up date six months from the present time. At that time send a second RFE (with supervisor sign off).

Other items to consider:

- What was the date of the arrest? Was it really recent and unlikely to be finalized or completed yet? We want to do the most customer-service friendly action, which would be to hold the case for up to six months before sending the second RFE to allow sufficient time for the requestor to provide what we are asking for.
- Once two RFEs have been sent, we won't continue to send additional RFEs if the case is still pending, even if the next court date is within six months. The rule is two RFEs, then deny.

2. Deny using the "You do not warrant a favorable exercise of prosecutorial discretion" denial.

Criminality Memo - When denying for a pending case or pending diversion program, we have added two paragraphs to the Criminality memo in ECHO (IDENT RES 019 and IDENT RES 020) that simply say the pending case/diversion is disqualifying *today*, however, if the case doesn't result in a conviction or is dismissed after completion of the program, it may not affect consideration of a subsequent DACA request.

Use the link below for the DACA Interal FAQ Pending Criminal Proceedings Guidance: DACA Internal FAQ Criminality Issues

**Please note: The guidance above also applies to cases in which court proceedings have been repeatedly continued to a future date or have been continued indefinitely.**

**21 | DACA BCU FAQs – revised 05/09/2018**

                                    DEF - 00006161

Centers are no longer required to elevate these cases to SCOPS attention unless they encounter a novel, complex or sensitive case.

15. **Q: How does a suspended sentence affect the requestor's ability to meet the criminality guideline?**

A. Convictions where an individual is sentence to jail time, but all or part of the sentence is suspended, will still count as a conviction; however, the time suspended will not count towards the 90 + days for a significant misdemeanor.

16. **Q: Is there a requirement that court documents be certified?**

A. Although the DACA SOP and the RFE standard both call for certified court documents, at the present time court documents are not required to be certified for cases filed prior to July 11, 2013.

Those requestors who filed for DACA on/after July 11, 2013 will be required to submit certified court docs.

17. **Q: What do I need to know about minor traffic offenses?**

A. In DACA BCU, we don't have a "list", so to speak, of violations that qualify as minor traffic only. We use our discretion and common sense:

- As a general rule, if the crime is not related to driving under the influence (drugs or alcohol) or death, the crime will be treated as a minor traffic violation.
- A minor traffic violation will not be considered a misdemeanor to constitute one of the "three single misdemeanors" for a denial, per the DACA SOP, page 83.
- Additionally, since a minor traffic violation is not considered to be a misdemeanor, it therefore cannot be a *significant* misdemeanor, regardless of how much time they were sentenced to serve.
- Beginning 05/10/2018 – when a traffic offense is classified as a felony, it is not a "minor" traffic offense. Based on the instructions in the DACA FAQ and Form 821D regarding traffic violations, such charges may not always be readily available to an officer unless the requestor submits the court dispositions or the RAP sheet reflects the felony charge/conviction. However if such information is available for review because the RAP sheet reveals the charge is for a felony or the requestor submitted court dispositions when they filed the request showing the charge is a felony, the charge should be treated as a potential felony conviction.

The NSC will not be required to go back and reopen previously approved cases; however, going forward, if a case has any elements of a traffic felony conviction it should be raised to local counsel or elevated to SCOPS for adjudicative guidance as needed.

As this is a change in the way the NSC has viewed the policy regarding minor traffic

**22 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006162

violations, please see your SISO or Senior with any cases you believe may fall under this guidance.



DACA Motor Vehicle
Felony.msg

18. **Q: How do I know if an alcohol/drug related driving offense qualifies as a significant misdemeanor?**

A. A criminal offense of driving after consuming alcohol is only a significant misdemeanor for DACA purposes if it is a misdemeanor as defined by federal law (i.e. maximum term of imprisonment authorized is more than 5 days but less than 1 year), and the statute requires, for a finding of guilt, that either:

4. The person was intoxicated, impaired or under the influence; **or**

5. The person has a certain level of blood alcohol concentration (BAC), other than a negligible amount that can be measured (such as .01%).

Please also review the DACA BCU Reference Page for additional information relating to alcohol related driving offenses by state.

19. **Q: Does a conviction for a misdemeanor that is not specifically a crime of domestic violence, but involves domestic violence constitute a significant misdemeanor?**

A. Yes. We are treating any misdemeanor where the underlying facts involve domestic violence as a significant misdemeanor for DACA purposes even if the conviction would not normally support a 237(a)(2)(E)(i) charge.

Please note the below NSC guidance/policy:

- The offense *must* first meet the definition of a misdemeanor (punishable by 6-365 days incarceration) in order to be considered a significant misdemeanor.
- A familial/domestic relationship must be involved.
  - This should be evident in the court documentation. DO NOT dig for information on who the victim was and if the victim had a familial/domestic relationship with the perpetrator for every assault/battery type charge.
    - This does not relieve you of your responsibility to obtain all of the required documentation. It simply means that we will leave the investigating to the law enforcement agency handling the arrest and the court officers handling the prosecution. If there is no mention of domestic violence or familial relationships in the evidence, do not go looking for it.

**23 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006163

- o On the flip side, if a DACA requestor is convicted of an offense that is not specifically a domestic violence charge, but includes violence and the victim is known (through court records and/or other documentation) to have a familial/domestic relationship with the perpetrator, it may meet the definition of a significant misdemeanor.
- Establishing domestic violence as a significant misdemeanor for DACA is significantly easier than establishing deportability under 237(a)(2)(E)(i) - Domestic Violence. If you are familiar with this deportability charge, please remember the same standards do not apply to establishing a conviction for an offense involving domestic violence is a significant misdemeanor.

## 20. Q: What is the policy on Domestic Violence for DACA Renewals? Is it any different than on initials?

A. The policy is the same for renewals as initials, but you will have to pay attention to the date of the crime, and when the initial was adjudicated. Remember that Domestic Violence (DV) guidance changed in March 2014 from saying that anything plead down from a domestic violence charge was not considered a Significant Misdemeanor (Domestic Violence) for DACA, to saying ALL charges related to a domestic violence incident or situations where the facts of case involve domestic violence are now considered a Significant Misdemeanor (Domestic Violence) for DACA, regardless of being plead down or dismissed. Often you need to read the police report, court sentencing, etc and look for things like being sentenced to take Domestic Violence classes, or Domestic Violence checkboxes on the police report, etc. When working renewals, if you see that an initial was approved prior to the guidance change (in other words the DV incident occurred before March 2014 and the initial was approved before March 17, 2014) then the renewal should also approvable. If the initial was approved after March 17, 2014, you may want to question the DV incident to be sure it was properly adjudicated.

**For example:** Charged with Assault-Domestic Violence, but charge was plead down and requestor was convicted of Disorderly Conduct. For DACA requests adjudicated before March 17, 2014 this was not a significant misdemeanor (DV), but DACA requests adjudicated after March 17, 2014, this IS a significant misdemeanor (DV). When it comes to the renewal, the renewal of the DACA request adjudicated before March 17, 2014 will be approvable *barring other (new) criminality*, but the renewal of the DACA request adjudicated after March 17, 2014 should be denied.

## 21. Q: If a requestor answers "yes" to criminality question #1 and does not provide further explanation, but does submit traffic violation information, do I still need to send an RFE for further clarification?

**24 | DACA BCU FAQs – revised 05/09/2018**

 DEF - 00006164

A. No. From March 25, 2014 forward, if the requestor answers "yes" to criminality question #1 and doesn't provide an explanation, but does include traffic information – that is explanation enough. We won't require an additional RFE for clarification.

Additionally, for renewals requestors are told not to submit documentation unless it is new documentation so if a requestor marks "yes", but explains the criminality was previously disclosed or submits old documents, you do not need to RFE. Additionally, officers should use their best judgment in reviewing the renewal and determining whether an RFE is necessary.

**22. Q: Is probation the same as diversion?**

A. No. Probation is a final sentence. It is a restraint on liberty and generally is not considered to be "rehabilitative". Diversion on the other hand, is not a final sentence, and is considered to be a "rehabilitative program" that often requires the requestor to complete various classes, alcohol or drug abuse evaluation, meetings, etc. for their crime. Diversion programs may or may not require the requestor to enter a guilty plea in order to get into the program, depending on the state. Refer to the "Conviction Info" section under the state where the requestor was prosecuted on the DACA BCU Reference Page.

23. **Q: Does time served pre-trial count as time in custody for a significant misdemeanor?**

A. Yes. Credit for time served pre-trial counts as time in custody.

Please keep in mind that the second half of the significant misdemeanor definition requires that the individual have been "*sentenced* to time in custody of more than 90 days." This would mean the first step in the process is to look at the actual sentence, then to look at how much time was served on that sentence. Credit for time served only counts up to the amount of the sentence imposed. For example, if a sentence is for 180 days imprisonment with 100 days suspended, it is not a significant misdemeanor based on the sentence. However, if a sentence is for 180 days imprisonment with 100 days suspended, but the person also received credit for 15 days served pre-trial, then it is a significant misdemeanor because they were *sentenced* to more than 90 days and *actually served* more than 90 days.

**24. Q: What is a "Wobbler" criminal statute and should they be treated as felonies or misdemeanors for DACA purposes?**

Some states may have a "Wobbler" provision, which allows a criminal charge to be filed as either a "felony" or "misdemeanor" under state law. These provisions allow the same elements to be charged as a more or less serious crime before any adjudication of guilt is made. Which charge is selected then determines the possible range of sentences available. In some cases the decision of how to charge is made by the prosecutor, in others it is made by the court. Wobblers do not simply have a range of possible punishment; they effectively create two crimes, one of which is a felony and the other is a misdemeanor under state law.

**25 | DACA BCU FAQs – revised 05/09/2018**

When a requestor has been convicted of a Wobbler, the adjudicator must first determine whether the crime was treated as a felony or as a misdemeanor. After the nature of the charge has been determined, the adjudicator must then look at the maximum possible sentence that could have been given *under the charging provision selected* by the prosecutor or the court. If the possible sentence could have been incarceration for more than 5 days but no more than one year, then it is a misdemeanor for DACA purposes, regardless of the time actually served. If the possible sentence could have been more than one year of incarceration, then it is a felony, regardless of the time actually served. This is the same analysis used for generally determining whether a state crime is a federal misdemeanor or felony, but Wobblers require a preliminary step of determining which "level" of crime was actually charged.

25. **Q: The RAP sheet I am reviewing indicates "*The FBI number and State ID number in your request are not the same individual according to our files. No criminal history will be disseminated*".**



**How should I handle this scenario?**

**A:** Resubmit the fingerprints via CPMS and if the RAP sheet still has the same message, RFE for police clearances.

## SECTION F: Adjudicating the Request

1. **Q: What do I do if a requestor is in <u>ICE</u> custody?**

   A. You may be able to deny the DACA request if the requestor is in ICE custody. For help determining if someone is in ICE custody, please visit the following site:

**26 | DACA BCU FAQs – revised 05/09/2018**

https://locator.ice.gov/odls/homePage.do

Deny the DACA request using the below denial –

"USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice."

**For Requestors in ICE custody after filing DACA, and still in detention at the time of adjudication:**

- Per the SCOPS internal FAQs, the DACA BCU will contact local ICE operations having jurisdiction over the requestor to determine the same two questions:
  - ○ Does ICE object to the approval of the DACA request? If so, on what basis?
  - ○ Does ICE intend to administratively close the proceedings or physically release the requestor within 30 days?

| Does ICE consider the requestor to be an enforcement priority? | Does ICE intend to admin close the proceedings and/or physically release the requestor within 30 days? | Action |
|---|---|---|
| Yes | No | Deny the DACA request using the below denial –<br><br>You have not established that you warrant a favorable exercise of prosecutorial discretion. |
| No | Yes | Adjudicate the case on its merits. **The requestor's physical release must be verified via DHS electronic systems before the case is adjudicated.** |

- ➢ Sometimes it's difficult to find out how and who to contact with ICE. You can sometimes find the agent in EARM, or your supervisor may be able to call the facility listed on the ICE locator page https://locator.ice.gov/odls/homePage.do and ask for the agent who is overseeing the case. If you are unsure, please ask your supervisor or a senior.

  - If we can deny a case due to the requestor being in ICE custody:

**27 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006167

- ○ It is not necessary to resolve the requestor's criminality issues (in other words, no RFE or NOID is necessary; we do not need to go out for dispositions, etc.).
- ○ It is not necessary to check for the regular DACA guidelines (such as CR, physical presence, education, etc.).
- ○ All you really need to do is complete your TECS/NCIC requirements
- ○ Compose your IDENT memo and denial letters.
  - ○ Compose an IDENT memo in ECHO using paragraph "In Custody".

- **IMPORTANT NOTE:** The process for requestors in **State or Local custody** is not the same as this process for requestors in **ICE** custody. If a requestor is in state or local custody at the time of adjudication you must send a RAG, as it is still being reviewed by HQ:

2. **Q: What do I do if a requestor is in State custody, with an ICE detainer in place or ICE has taken some sort of action against the requestor who is not currently in ICE detention?**

A. If DHS electronic systems or information received from ICE identifies the requestor as having been placed in immigration detention or ICE has taken action against a DACA requestor, by issuing a detainer against the requestor, placing him/her under an order of supervision, or placing him/her in an ankle bracelet monitoring system, after filing his/her Form I-821D, etc., the Center should follow the below procedures.

The DACA BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.

1. **Enforcement Priority** - If ICE indicates that the requestor is an ICE enforcement priority regardless if ICE intends on physically releasing the requestor, ICE issues a detainer against him or her, places him or her under an order of supervision, or places him/her in an ankle bracelet monitoring system, USCIS will deny the DACA request using the DACA 511 call up from Appendix F. USCIS will notify ICE once the denial notice is issued.

2. **Not an Enforcement Priority** - If ICE indicates that the case is not an ICE enforcement priority; the case will be adjudicated on its merits. If detained, a review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.

If the DACA BCU disagrees with ICE's determination of whether or not the requestor is an enforcement priority, the DACA BCU should ask local counsel for assistance in contacting local

**28 | DACA BCU FAQs – revised 05/09/2018**

ICE counsel to discuss the reasons why USCIS disagrees with ICE's determination. The Service Center's local counsel can seek assistance from USCIS Headquarters' Office of the Chief Counsel to contact ICE, if necessary.

NOTES ON ICE ACTIONS:

❖ The underlying basis for this internal FAQ is whether or not ICE considers the individual to be an enforcement priority. This guidance would also apply to a case where ICE has taken some sort of action, for example placed a detainer on a subject, prior to the DACA request being filed as long as the condition still exists at time of adjudication. For example, if ICE has issued a detainer, and the detainer remains in place at the time of adjudication, it is more than likely that the individual is still considered to be an enforcement priority. Officers must confirm that the requestor remains an enforcement priority prior to taking final action on the DACA request.

❖ When contacting ICE, you need ask if the DACA requestor is considered an ICE enforcement priority. Also, request any documentation that ICE has of the derogatory information that led them to this determination (this documentation is not necessarily required if they do not provide it, but is helpful). You may choose to contact ICE via telephone or e-mail. The information you obtain from ICE should be summarized in your resolution memo.

❖ DETERMINING AN ICE CONTACT:

   o If a requestor is truly an ICE enforcement priority, ICE will usually contact USCIS to relay this information. In this instance, you will simply work with the Agent/Officer who made the initial contact.

   o If ICE has taken action against a requestor there should be an encounter in EARM. The primary agent should be listed under the Encounter Details. If you cannot determine the appropriate contact from the information listed, you may e-mail Jeff Jones to obtain the Primary Agent's full name.



**29 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006169

o    If an agent cannot be identified in EARM you can use one of the ICE contact lists below:

ERO Directory

ERO Field Phone List

ICE Insight - Phone List

ICE.GOV - Contacts

3.   **Q:  What is the proper ROP order of the right side of the file?**

A. (PAPER ONLY) Below is the proper ROP order for the right side of the file:

Regular TECS/ **LE**

- T-file Adjudication Memo (if applicable)
- **LE** Memo
- **TECS Memo**
- **ROIT**
- **FOUO/LES Coversheet (if there are TECS/NCIC records)**
- TECS/NCIC printouts
- RAP sheet
- CIS
- FD-258
- All other documentation

The 3 items in **bold** are the only QA requirements.  The rest of the information is simply a suggestion.

Batch Packets:

- Adjudication Alert (keep or shred)
- TECS Resolution Memo
- Adjudicator's ROIT
- Pre-populated ROIT from the TECS batch packet
- Other documents (i.e. screen prints, CIS correction sheets, correspondence, SRMT printouts, etc.)

4.   **Q: Can a requestor ask for "exceptional circumstances" for any DACA guideline other than criminality?**

**30 | DACA BCU FAQs – revised 05/09/2018**

A. No. The "exceptional circumstances" rule was created solely for criminality issues, and it would take a truly exceptional circumstance to overcome these issues. If consideration of exceptional circumstances is requested, you should follow the current guidance for such cases.

**5. Q: What is the current guidance on "exceptional circumstances" requests?**

A. As of 10/09/2013 requests for adjudicative guidance do not have to be referred to SCOPS for every case involving exceptional circumstance requests. Below is the most recent guidance:

- When exceptional circumstances are requested for cases involving criminality, the Service Centers need only to request concurrence from HQ (via a request for adjudicative guidance) prior to denying the request if the case involves national security, public safety, or novel, complex, or sensitive issues.
- A NOID or RFE must be issued when exceptional circumstances are requested. A new template is not necessary. Centers can continue using the criminality NOID/RFE templates.
- Service Centers need to request concurrence from SCOPS (via a request for adjudicative guidance) if they believe the exceptional circumstances are compelling.
- The term "exceptional circumstances" does not have to be used to request exceptional circumstances. Other similar language can be used (i.e. compelling circumstances, extenuating circumstances, etc.).

6. **Q: When do I send a NOID vs. RFE for criminality issues?**

A. If you have more than just the RAP sheet showing a conviction, you will send a NOID. Otherwise, you will send an RFE. In other words, if the requestor provides court documents with the DACA filing that show a guilty plea, or if you are able to find the dispositions online you will send a NOID.

7. **Q: If I don't get a response to a NOID, do I deny or abandon it?**

A. You should issue an abandonment denial.

8. **Q: If I have a strong indication the Requestor was found guilty of a charge that will affect DACA, but also have a diploma mill school that needs to go to CFDO, do I go out for the criminality (send RFE or NOID) or do I just send the file to CFDO pre-adjudication?**

A. (INITIAL DACA ONLY) Only for disqualifying criminality issues where you believe you have a conviction...you will proceed with an RFE or NOID prior to sending to CFDO. This is because if we can deny the case based on criminality, we'd rather do that than send it to sit on a hold shelf pending.

9. **Q: Am I still required to request permission from SCOPS before sending an RTI?**

A. No. As of 10/09/2013, Service Centers do not need to request permission from SCOPS prior to sending RTI unless the case involves novel, complex, or sensitive issues.

**31 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006171

- If ICE requests the file after an RTI is sent the Centers should continue to request permission to send the file from SCOPS through the current process.

**10. Q: What do I do if I receive a motion on a renewal?**

**A.** The same guidance applies to renewals as it does with initials. There are no motion rights on DACA I-821s; the only possible motion scenario would be if the I-821 was approved, but the I-765 was denied. In those cases, we will reopen the I-765 and process accordingly. Most of the time, you will find that the I-821 is denied. These motions will be refunded to the Requestor. You should give the motion to your supervisor, to send to the Section Chief to process the refund.

**11. Q: If requestor legally has two last names, but was only given one name on their initial?**

**A.** The answer is, it depends on the evidence. Generally, we mirror the name on the initial, unless you have documentation supporting a name change. For example, initial has one last name, you have documentation (passport, birth cert, etc.) that shows two last names, **THEN** you can substantiate changing from one name to two names. Furthermore, if they provide a name change document different from their initial, you will change the name based on the legal documentation.

**12. Q: What do I do if they have two last names on their initial I821, but only one last name on their initial I765?**

**A.** You should give them two last names.

**13. Q: How do I send an RFE with attachments?**

A: Follow the Mailing RFEs with Attachments instructions.

**14. The DACA request I am reviewing does not contain any evidence or the form. How can I get the evidence loaded in ELIS?**

A: For cases where evidence is missing in ELIS, we will now be sending a weekly email to the lockbox notifying them of cases where the evidence failed to upload. This issue is generally caused by a communications issue between the lockbox system and ELIS. By directly dealing with the lockbox, we hope the process for getting the evidence uploaded into ELIS is more efficient . Kara has created an ECN page which will allow you to place receipt numbers of cases missing evidence. The page will be used by both DACA and DACA BCU. The list will be cleared at the time an email is sent to the lockbox. You can access the Missing Evidence ECN page through the following link:

http:/
.aspx

**32 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006172

**15. Q: What are the steps for manually adjudicating (approvals) in ELIS?**

**A:** The steps for manual adjudication of an approval are now as follows:

1. Check 9101 for VAWA indicators (flashing warning banner, COA is 384, U, or T, etc.) and EARM flag
   a. If EARM flag is present, check EARM
   b. If VAWA indicators are present you will **not** complete manual adjudication, but will complete the referral and let ELIS take care of the VAWA checks/referral

2. Check the Benefit Card Details to make sure the previous card is expired or within 150 days of expiration.

3. Check the DACA Criminality Questions tab to see if they indicated any criminality.

4. Check the Biometric tab for current bios.

5. Review all documents in the Evidence and RFE tab. You must click the 'View Packet Evidence' button to retrieve all the submitted evidence. Please remember to check for additional names and DOBs.

6. Check Pending and Prior Cases Filed tab to check for name/DOB variations/discrepancies, verify that case is a DACA renewal, look for an I-131 being filed, and to verify that the previous filings were not terminated or denied.

7. If you are ready for approval, click on the 'Proceed to Adjudication' button.

8. Reassign case to yourself.

9. Check the Flags tab. Resolve all flags.

10. Make sure everything in Risk and Fraud has been reviewed

11. Complete resolution the resolution memo (if required) is linked.

12. Clear referral.

13. Click on the Render Decision tab.

14. Click 'Mark all for Approval'. If the button is not present, this means the 765 separated from the 821. Reassign the 765 back to yourself. The Mark for Approval button should now be available to you.

**33 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006173

15. Select 'Approval' in the 821D section. The 765 section should self-populate. Verify the validity period is for two years.

16. Click on 'Save' in the Verify EAD for 765 section.

17. Click on 'Finalize Decision'.

Per the ELIS POCs, these steps must be strictly followed or you will receive an error message when trying to complete adjudication.

16. **Q: How do I resolve instances where the requestor is homebound\*, has 2 unclassifiable fingerprint results, or has received a fingerprint waiver from the ASC?**

   A: There are different scenarios you could encounter, so these are case by case. Common scenarios are as follows:

   If you have an Unclassifiable fingerprint result(s) on a case, but the most current fingerprint results are either Non-IDENT or IDENT, you can use those results and process your case accordingly. You will most likely also need to clear an Unclassifiable Fingerprint FLAG under the Flags tab in these instances.

   If you have two unclassifiable fingerprint results and no valid results since, and the requestor did not submit recent police clearance letters for each jurisdiction (city, town, county, or municipality) in which they have lived for six months or more within the past five years: Send RFE DACA 150A – 2 UNCLASSIFIABLE PRINTS – SUBMIT LOCAL POLICE CLEARANCES (BOTH INITIAL AND RENEWAL DACA). Be sure to first check the evidence for police clearances, as they may have included them with the evidence submitted with the current request.

   If you do not have any fingerprint results and/or any bios and you have information regarding incapacitation or homebound related issues: Send RFE DACA 150C – SPECIAL ACCOMMODATIONS (BOTH INTIAL AND RENEWAL DACA)

   If information in the file/case indicates the ASC waived the fingerprint requirement (generally found under the Evidence and RFE section or the Notices and Snapshots section in ELIS), but the requestor did not submit *recent (since the last DACA request was approved)* police clearance letters for each jurisdiction (city, town, county, or municipality) in which you have lived for six months or more within the past five years: Send RFE DACA 150B - FINGERPRINT WAIVER. Be sure to first check the evidence for police clearances, as they may have included them with the evidence submitted with the current request.

   \* Someone is homebound when he/she is physically unable to attend his/her ASC appointment due to medical limitations. The requestor must provide evidence of the limitation. Any such request should be reviewed with your supervisor. Any questions, contact Megan Rudd or another DACA BCU Supervisor

**34 | DACA BCU FAQs – revised 05/09/2018**

# SECTION G: Travel Concerns

1.  **Q: When do I need to check ADIS or SQ94?**

    **A.** You only need to check ADIS if you are completing a manual adjudication and the case has one or more of the following indicators.

    a.  Requestor indicates they have traveled on the DACA request or submits evidence showing travel
    b.  A Form I-131 was filed by the requestor
    c.  EARM flag is present and travel is indicated in EARM
    d.  There is a flag for travel in ELIS
    e.  There is some other indicator that the requestor may have travelled

1.  **Q: I need to RFE for travel. What do I do?**

    **A.** There is currently only a NOID for travel (DACA NOID 400C). You should send the NOID.

2.  **Q: Information is received that requestor accidentally traveled/crossed the border/made a wrong turn, do we have to send a RAG?**

    **A.** We reached out to the travel team and they agreed to help us with the weird travel scenarios like this one. If you encounter something like this, please send an email to **ISO 3 Joel Johnson** and include the A/T#, Name and DOB, and a brief description of the facts. He will do the ATS-P check and let you know if a NOID is needed, and if any special NOID language is necessary, hewill tell you whether or not a RAG will be required.

3.  **Q: Requestor has a deportation order, as well as Advanced Parole, and left on the Advanced Parole. Is this departure disqualifying?**

    **A.** No. If the departure was during the Advanced Parole approved travel window, the departure/travel is covered.

4.  **Q: Who is the POC for Travel Process:**

    **A.** Because we only see travel issues on a limited basis, we can reach out to **ISO3 Joel Johnson** and he will help us with the weird travel scenarios (like "I made a wrong turn and ended up in Mexico"). However, we should do all of our vetting before contacting Joel. MOST travel issues can be resolved through ADIS or PCQS. So here is the process we'd prefer you follow on travel, as of September 2015:

    a.  When you see a travel flag search the systems (ADIS, EARM, National Claims) for travel.
        I.   If you have **ONLY** a travel flag, but they didn't tell you they traveled; if you do not find any travel in your system checks, you can clear it.

    II.   If they marked "Yes", but you can't find any evidence of travel, you will send a NOID.

    III.  If they do not answer (blank) the travel question, and you do not find any evidence of travel, you can clear it.

    IV.  If they marked "Yes" and you find travel, you then should search for valid advanced parole.

1. **If you are unable to find a Form I-131, A NEW STEP:  when the A-file is at NRC -- you can send an email to the NRCINFO, NRC and ask them to search the A-file for an I-512 Advance Parole that was approved at a District Office, since National Claims won't show you this.  If they come back with a copy of the I-512 Advance Parole and the dates of the parole cover the travel date, you can clear the travel.  If they do not have an I-512 Advance Parole, you will send a NOID.**

b. Last resort, you can email **ISO3 Joel Johnson** with any other weird travel scenarios you aren't sure about, or ask him to check ATS-P to corroborate requestors' stories about travel, etc.

5. **Q: It appears that more than one individual is connected to an ADIS record. How do I correct the record?**

   A: Follow the ADIS Deconsolidation Request instructions.

## SECTION H:  Miscellaneous

1. **Q:  What if I find an LHM (Letterhead Memorandum) in the file?**

   A.  LHMs are tied to name checks, which are not required for DACA.  Generally the file will contain an I-485 or other status granting form, which triggered the LHM.  You do not need to do anything to *resolve* an LHM for DACA purposes, but you should *read* it for pertinent information that could be of benefit to the DACA filing.

Confidential

DEF - 00006176

2. **Q: I need to do a CFF. Can I do this electronically?**

A: Yes – if the error is related to an issue associated with an RFE response uploaded in ELIS or an AR-11. Specific steps to follow in these instances are below:

1. Open Snagit or the Snipping tool to capture an image of the error;
2. Open the Center Applications folder and then open/complete the "Customer Feedback Form" and save it to your L: drive.
3. Create an email addressed to #NSC CPAU, with a "cc" to your supervisor.
4. Attach the completed CFF and image of the error and then send the email.
Additionally, the NSC Records section is currently reviewing two different system types in pursuit of bringing a fully electronic CFF system to the NSC.

**37 | DACA BCU FAQs – revised 05/09/2018**

DEF - 00006177

# DEF-INTERV.

# EX. 246

FOR OFFICIAL USE ONLY (FOUO)

# NSC DACA BCU EPS/RTI Processing Guide

## Table of Contents

Introduction: ............................................................................................................................................. 3

  Purpose: ................................................................................................................................................ 3

  Background: .......................................................................................................................................... 3

  Definition of EPS: ................................................................................................................................. 4

  Authority: ............................................................................................................................................. 5

The Referral: ............................................................................................................................................. 5

The RTI: ..................................................................................................................................................... 6

  EPS Issues Requiring RTI: ..................................................................................................................... 6

    Notes on Aggravated Felonies and EPS: .......................................................................................... 7

    Exceptions to the EPS-RTI criteria: .................................................................................................. 7

  DACA BCU Officer Responsibilities: ..................................................................................................... 8

    1.    Review ...................................................................................................................................... 8

    2.    Creation of RTI in ECHO: ......................................................................................................... 9

    3.    Initial FDNS-DS Entry: ........................................................................................................... 10

    4.    The Resolution Memo: .......................................................................................................... 13

    5. Final FDNS-DS Entry: ............................................................................................................... 14

Special Processing: ................................................................................................................................. 14

  Request for Adjudicative Guidance (RAG) ......................................................................................... 14

  Abeyance Requests: ........................................................................................................................... 15

  ICE Enforcement Priorities: ............................................................................................................... 16

  ICE Takes Action Against a DACA Requestor after Filing DACA Request and at Time of Adjudication:
  .......................................................................................................................................................... 16

  ICE Detention: .................................................................................................................................... 18

    DACA Requestor in ICE Detention at Time of Filing and Time of Adjudication: .............................. 18

  Gangs: ................................................................................................................................................. 19

    ICE Action: ...................................................................................................................................... 19

Updated: 07/31/2017 – Updates in red

Known Gang Members: ................................................................................................................. 19

Suspected Gang Members: ......................................................................................................... 20

Known Gang Affiliates/Associates: ............................................................................................. 20

Other Gang Affiliates/Associates: ............................................................................................... 23

Drug Cartels/DTO: ...................................................................................................................... 24

Pending EPS Charges/Active Warrants: ........................................................................................... 25

Convicted of Felony that is a Public Safety Concern: ...................................................................... 25

Juvenile Adjudications: .................................................................................................................... 26

DACA Renewals: ............................................................................................................................... 26

Notes on processing EPS DACA renewals: ................................................................................... 26

DACA Terminations: .............................................................................. **Error! Bookmark not defined.**

Additional Resources: ........................................................................................................................... 28

Links: ................................................................................................................................................. 28

DACA EPS Memo (RES 035) ......................................................................................................... 28

EPS Review Sheet ......................................................................................................................... 28

Field Office Locator ...................................................................................................................... 28

DACA Interview – Suspected Gang Member ................................................................................. 28

Relocate Memo – Suspected Gang Member ................................................................................ 28

Relocate Routing Sheet – Suspected Gang Member .................................................................... 28

ICE Insight - Legal Tools ................................................................................................................ 29

ICE Detainee Locator System ....................................................................................................... 29

ERO Directory ............................................................................................................................... 29

ERO Field Phone List ..................................................................................................................... 29

ICE Insight - Phone List ................................................................................................................. 29

RTI Team Contacts ........................................................................................................................ 29

J:\apps\MSWORD\ADJ\DACA BCU\EPS Team  - Contains RTI Spreadsheet, contact list, processing guide, etc. ........................................................................................................................................ 29

Gang/EPS Crimes Resources .............................................................................................................. 29

ROP Order: ........................................................................................................................................ 30

Regular DACA POCs: .......................................................................................................................... 30

Flow Charts: ....................................................................................................................................... 30

EPS Crimes Flow Chart .................................................................................................................. 30

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006181

FOR OFFICIAL USE ONLY (FOUO)

Gang Flow Chart .............................................................................................................................. 31

# Introduction:

## Purpose:

The purpose of this document is to provide an explanation of the procedure for referring DACA requestors who present egregious public safety concerns (EPS) to ICE for investigation and possible issuance of a Notice to Appear (NTA).

## Background:

In June 2006, USCIS and ICE signed a Memorandum of Agreement (MOA) regarding the issuance of NTAs to aliens encountered during USCIS adjudications.

Policy Memorandum No. 110 (PM110), entitled "Disposition of Cases Involving Removable Aliens," signed by Michael Aytes, Associate Director, Domestic Operations, on 7/11/06 and effective 10/1/06, provides guidance for implementing the MOA.

> The MOA and PM110 do *not* apply to national security cases; TPS cases; Asylum Division cases (including asylum applications, NACARA 203 relief applications, and credible/reasonable fear screenings); or Form I-360 processed under VAWA.

On 10/2/06, NSC was informed that FDNS and SCOPS had finalized an agreement to transfer the responsibility for resolving all ⌐ **LE** ⌐ (as listed in the 3/1/06 national IBIS SOP) from the Service Centers' Fraud Detection Units to the new "Background Check Units" (staffed by Exams personnel from the former IBIS Triage Units).

**LE**

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006182

FOR OFFICIAL USE ONLY (FOUO)

In addition to normal "resolution memo" responsibilities, the BCU was to inherit all NSR (National Security Record) and RTI (Referral to ICE for Investigation) duties (both IBIS-related and "non-IBIS" cases where **LE** re identified by materials in the case file or RAP sheet review).

On November 7, 2011, Policy Memorandum 602-0050, *Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens*, was issued. PM 602-0050 supersedes PM 110 and identifies the circumstances under which USCIS will issue an NTA, or will refer the case to ICE for NTA issuance, in order to effectively handle cases that involve public safety threats, criminals, and aliens engaged in fraud.

On June 15, 2012, the Secretary of the Department of Homeland Security announced the Deferred Action for Childhood Arrivals (DACA) program. The Standard Operating Procedure (SOP) for DACA dictates that any DACA request presenting issues that are deemed to meet the definition of an EPS case shall be handled in accordance with the November 7, 2011, NTA memorandum.

On July 28, 2014, ICE issued the Memorandum, "Transition of Probation and Parole Enforcement Responsibilities from Homeland Security Investigations to Enforcement and Removal Operations". This Memorandum finalized the transfer of EPS referrals from HSI to ERO and the reassignment of the enforcement responsibilities for the identification, arrest, prosecution, and removal of criminal aliens on probation or parole.

On May 22, 2015, FDNS issued an Operational Guidance (Operational Guidance Regarding Procedures for Referring Egregious Public Safety Concerns). This Operational Guidance establishes updated USCIS guidelines for referring EPS cases to ICE-ERO and does not affect established referral processes for non-EPS cases or fraud cases.

## Definition of EPS:

Any case where routine systems and background checks indicate that an individual is under investigation for, has been arrested for (without disposition), or has been convicted of, a specified crime, including but not limited to, murder, rape, sexual abuse of a minor, trafficking in firearms or explosives, or other crimes listed in the November 7, 2011, memorandum entitled Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens.

Updated: 07/31/2017 – Updates in red

4 | P a g e

DEF - 00006183

FOR OFFICIAL USE ONLY (FOUO)

## Authority:

**The Secretary's Memo** - Memorandum issued June 15, 2012, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children, by Secretary of Homeland Security Janet Napolitano to U.S. Customs and Border Protection; U.S. Citizenship and Immigration Services; and Immigration and Customs Enforcement.

### DACA SOP

**November 7, 2011 NTA Memo (PM 602-0050)** - *Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens.*

## The Referral:

ISOs in the DACA and DACA BCU product line are instructed to refer any and all possible EPS cases to the RTI team for review. The ISOs should refer these cases to TR0500 using the DACA BCU routing sheet.

The RTI team members triage all EPS referrals on rotation. Each referral is reviewed to determine if it meets EPS processing criteria (outlined below). If the referral meets EPS processing criteria, the file should be placed on the appropriate shelf. Initial DACA files should be placed in date order by month and year of filing. The file should be audited in NFTS to corresponding TR code indicated on the shelf (i.e. TR0501). Renewal DACA files should be placed in TR0501.

**EPS DACA RENEWALS ONLY:** Ensure each case in GUI Case History has the HAC **"TECS Adjudication Hold"**. If this HAC is not in GUI, please update the case with this HAC. This should prevent the case from being automatically approved via the SAP. MOST cases will already have the "Sent to BCU for Resolution" HAC because it is added by the clerical team when a batch packet is identified as a "pull" by Megan Rudd's batch resolution team.

If the file does not meet EPS processing criteria:

- If referral was from DACA BCU Officer – return to officer's DACA BCU SISO with EPS Review Sheet.

Updated: 07/31/2017 – Updates in red

Confidential                    DEF - 00006184

FOR OFFICIAL USE ONLY (FOUO)

- If referral was from DACA Officer – give file to DACA BCU RTI Team's SISO with EPS Review Sheet.

## The RTI:

## EPS Issues Requiring RTI:

The term "Egregious Public Safety" is not defined in the INA. Per the USCIS-ICE MOA, an EPS case includes information that the alien (not a U.S. citizen petitioner) is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:

- ✓ Murder, rape, or sexual abuse of a minor as defined in 101(a)(43)(A) of the INA
- ✓ Illicit trafficking in firearms or destructive devices as defined in 101(a)(43)(C) of the INA
- ✓ Offenses relating to explosive materials or firearms as defined in 101(a)(43)(E) of the INA
- ✓ Crimes of violence for which the term of imprisonment imposed is at least one year as defined in 101(a)(43)(F) of the INA
- ✓ Offenses relating to the demand for or receipt of ransom as defined in 101(a)(43)(H) of the INA
- ✓ Offenses relating to child pornography as defined in 101(a)(43)(I) of the INA
- ✓ Offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in 101(a)(43)(K)(iii) of the INA
- ✓ Offenses relating to alien smuggling as described in 101(a)(43)(N) of the INA
- ✓ Human rights violators, known or suspected street gang members, or Interpol hits
- ✓ Re-entry after an order of exclusion, deportation, or removal subsequent to conviction for a felony where a Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved

EPS cases MUST be referred to ICE BFU via an RTI before USCIS adjudication is completed.

EPS cases referred to ICE are suspended for a minimum of 60 days. These cases should be called up and reviewed no later than 90 days after referral. Normally, the case should be adjudicated by USCIS.

Updated: 07/31/2017 – Updates in red

6 | P a g e

FOR OFFICIAL USE ONLY (FOUO)

However, USCIS retains discretion to place the case on hold for more than 60 days if ICE requests additional time to conduct an investigation.

**Notes on Aggravated Felonies and EPS:**

Section 101(a)(43) of the Immigration and Nationality Act provided the definition of aggravated felony. The aggravated felonies referenced above are the crimes that ICE and USCIS have agreed will be considered egregious public safety.

Note: Attempt or conspiracy to commit any of the aggravated felonies above should also be considered EPS crimes.

NSC Local Counsel has provided the below documents in order to aid in determining whether a crime meets the definition of any of the aggravated felonies that are considered EPS.

Aggravated Felony – General Info

Aggravated Felony Statutes – This document contains the wording of all of the relevant statutes reference in the aggravated felony definitions for EPS crimes.

Aggravated Felony Case Law – This document provides relevant case law for the aggravated felonies that are also considered EPS.

Additionally, many ICE offices have produced what is known as the "ICE Charts" which can be extremely helpful in determining if a particular crime meets the definition of an aggravated felony in a particular state. Find these charts listed by state here - ICE Insight - Legal Tools.

**Exceptions to the EPS-RTI criteria:**

The following *exceptions* to EPS case RTI criteria will *always* apply (**referral to ICE is *not* required**):

- ✓ Subject was arrested but the charges were dropped, the subject was acquitted, or the subject was ultimately convicted for a non-EPS offense (after the EPS arrest/charge).

Updated: 07/31/2017 – Updates in red

Confidential
DEF - 00006186

FOR OFFICIAL USE ONLY (FOUO)

- ✓ Subject was removed/excluded and there is no reason to believe he/she has reentered the United States
- ✓ Subject was granted relief (e.g., a waiver) or proceedings were terminated by an Immigration Judge and no new qualifying crimes (which satisfy RTI criteria) have been reported since relief was granted/ proceedings were terminated
- ✓ Subject has a pending case with Executive Office for Immigration Review (EOIR)
- ✓ Subject is currently in custody with an ICE detainer
- ✓ Subject is currently under an Immigration Order of Supervision (OSUP)
- ✓ The creation of a RTI would not be necessary if ICE is the record owner to the derogatory information. This would also include "known or suspected street gang members". ICE has indicated that if they are the lead agency on the investigation for the suspected gang member, a RTI is not required because they (ICE) already have an active case on the person. However, if another agency has the lead on the suspected gang member, an RTI is recommended so the information is provided to ICE.
- ✓ Cases involving aliens outside the United States should not be referred to ICE as ICE will not have any action to take on the individual.
- ✓ Cases where ICE is aware of the individual through one of the above means, was not aware of information obtained by NSC DACA BCU, but was informally made aware through the vetting/deconfliction process.

## DACA BCU Officer Responsibilities:

1. **Review**

   Conduct a review of the case for derogatory information, to determine if the DACA filing requires an RTI. Review of the subject's RAP sheet, TECS records, EARM, state statutes, court websites, ICE charts, etc. should provide the information necessary to make a decision of whether or not to refer the DACA filing to ICE.

   - RTI Required – proceed to step 2.
   - RTI Exception – complete EPS Resolution Memo and proceed with adjudication, including any required special processing.
   - Referral does not meet EPS criteria –

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006187

FOR OFFICIAL USE ONLY (FOUO)

- o   If referral was from DACA BCU Officer – return to officer's DACA BCU SISO with EPS Review Sheet.
- o   If referral was from DACA Officer – give file to DACA BCU RTI Team's SISO with EPS Review Sheet.

- **REMEMBER: TECS Record HITS –** Prior to Approval on both Initials and Renewals, concurrence must be obtained from BCU DACA Supervisor, Designated SME, or BCU Section Chief.

- Time spent working on EPS cases is recorded on your G-22 as:

  **BCU DACA PS 821D**

  **BCU DACA PS 765**

  *Terminations Officers:  **BCU DACA Terminations**

  *Renewal Officers working in ELIS:**

| Form | Line Number |
|------|-------------|
| BCU ELIS DACA EPS 821D | 218E |
| BCU ELIS DACA EPS 765 | 218G |

## 2.  Creation of RTI in ECHO:

1. In ECHO, wand the receipt number.
2. Select the correct correspondence type – NSC Referral To ICE Memo.
3. Click "Continue".
4. Click "COMPOSE."
5. Replace all the placeholders with the information called for – TECS/NCIC Number, FBI#, SID#, Place of Birth, Gender, and FDNS-DS Case #.
6. Delete any EPS qualifiers that do not relate to your case as well as the
   "**XXXDeleteWhatIsNotNeededBelowXXX".**
7. Follow prompts within the body of the letter. Ensure no "XXX"s are left in the memo.
8. Click "BUILD."
   a. Optionally perform spell check.
9. Review the letter.
   a. If changes are needed, click "RE-DRAFT" and make changes, then return to step 7.
   b. If everything appears correct, click "FINALIZE."
   c. Click "OK."

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006188

FOR OFFICIAL USE ONLY (FOUO)

          d. If the system asks whether you want to send a copy to the requestor and attorney, click "Cancel."

10. Print a copy of the letter for the file.
          a. Click the printer icon in the upper-left corner of the Adobe field.
          b. Click "Print."

11. Save a copy of the letter to your L: drive.
          a. Click the save (floppy disk) icon in the upper-left corner of the Adobe field.
             i. Name file – LAST NAME, First Name – FDNS-DS Case #
                1. Example:  JENKINS, Jennifer – 1-123456789

12. Click "MARK SENT."

- The RTI should include any relevant attachments that USCIS has at the time, such as a copy of the RAP sheet, arrest disposition, and a copy of the application.

- If certified conviction records are available in the file, include those records, but do not delay an RTI to obtain them.

## 3. Initial FDNS-DS Entry:

Hint: Periodically hit "control S" to save information as you enter information in FDNS-DS so your progress will be saved if the system goes down.

1. Search people for your subject.
2. Search forms for your subject's form.
3. If your subject and form are not in the system, add the form (if your subject is in the system, go to step 8) :
          a. Click "new"
          b. Scan receipt number – some information will pre-populate
          c. Tab to date filed and enter the date the Form I-821D was filed.
4. Click on the form hyperlink (blue receipt #) to link your subject and form.
5. After you've clicked on the form link, click on "Beneficiary/Applicant" in the sub-section.
6. Under CISCOR Person Detail, highlight your subject, then click "import person". The subject's information will populate under Beneficiary/applicant, but additional information needs to be added:
          a. Enter aliases. Current policy is to only enter the aliases derived from NN11 or NN16
          b. Tab to "Middle" and enter the subject's middle name if there is one.
          c. Tab to NCIC Numbers and add NCIC number (if applicable)
          d. Tab to Country of Citizenship Fand add the information
          e. Tab to Country of Residence and enter information – usually US
          f. Tab to TECS Numbers and enter TECS numbers (if applicable)
          g. Tab to SID# - this is the state ID number that you will find on the RAP sheet. Enter it here
          h. Tab to FBI# - this is also found on the RAP sheet. Enter it here.
          i. TAB to FIN# - this can be found in EARM, ADIS, or occasionally on CIA 9101

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006189

FOR OFFICIAL USE ONLY (FOUO)

7. Click "Import Address".
8. Create your case
   a. Click on "Cases"
   b. Click on "my cases"
   c. Click on "new"
   d. Write down the new case number that generates.
   e. Enter the bene using the naming convention:
      Bene(space)(dash)(space)First name LAST NAME
      Example: Bene – John SMITH
      Note: When you enter the first name, only the first letter is capitalized. When you enter
      the last name, all letters are capitalized.
   f. Ensure "Source" is always BCU-NSC.
   g. Status should be "open" for EPS cases.
   h. "Sub-Status" should be "Forwarded to ERO".
   i. Tab over to "case type". This will be "Public safety EPS".
   j. Tab over to "Location". This should always be NSC-ADJ-BCU.
   k. Tab over to "SAC Office". You will enter the location that the case is being forwarded to
      here. (TIP: Use the ICE-ERO Field Office Link www.ice.gov/contact/ero)
   l. In the subsection where it says "synopsis", enter a brief description of reason for
      referral. Be sure to indicate that it is a DACA case.
         • Synopsis Examples:
            ○ DACA – Known Gang Member
            ○ DACA – Suspected Gang Member
            ○ DACA – EPS Conviction
9. If your case involves an ELIS receipt beginning with IOE, see the imbedded instructions below.



FDNS-DS Form and
Subject Entry for IOEs

If working a paper file click on the hyperlink for the case you just created in order to link the
form and person to the case.
   a. In the subsection, click on "forms".
   b. Click on "add forms".
   c. When the form select applet pops up, click "query".
   d. Wand in receipt number
   e. Click "add" on the bottom right corner. The form is now linked to the case.
10. Link the subject to the case.
   a. Under the subsection, click on "subjects". Then click on "new".
   b. Search for the subject by typing in the last name, the click "go".
   c. When the subject appears, click "add" in the bottom right corner. The subject is now
      linked to the case.
11. Add the RTI Information in FDNS-DS.
   a. In the subsections, click "RTI". Click "new".
   b. Under "to" select ICE-ERO-EPS for the EPS case.
   c. Under "Leads/Action Items" select the appropriate RTI LOV (When sending to ERO for
      EPS the following value MUST be chosen)
      **LOVs:**

Updated: 07/31/2017 – Updates in red

DEF - 00006190

FOR OFFICIAL USE ONLY (FOUO)

| Alert Code | Description |
|---|---|
| | |



d. Update the synopsis. Indicate to the fullest extent possible the exact offense and disposition or sentence (Hint: You may want to copy and paste directly from the RTI).

e. Narrative Summary, Requested Action, Attachments – In these sections of the RTI sub-tab, include as much detailed, relevant information as possible as it relates to each specific case. This may include attaching any judgment and conviction documents.

f. Attach RTI memo to the case.
   - Click "attachments" in the subsection. Click "new".
   - Browse for your saved memo and attach it.

Update the RTI Month spreadsheet with the following information:
   a. FDNS-DS case#
   b. Date case submitted in DS
   c. Your Name
   d. In the Status drop down menu, select "Pending". Once you receive a response to your RTI, you will need to update the status to "Accepted" or "Declined" or "No Response" and save your changes.

FDNS-DS will be swept on the 1st and 15th of each month. Each RTI will then be submitted to the ICE National Criminal and Targeting Center (NCATC) for review. ICE will take one of the following actions within 60 days of submission:

   a. Accept the referral

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006191

FOR OFFICIAL USE ONLY (FOUO)

    b.  Decline the referral

    c.  Not respond

**Retain the file for 90 days, unless it is requested by ICE –** Attach a completed <u>RTI MFR routing sheet</u>. Audit file to XE0840 NFTS Code and place in your out box.

### 4.  The Resolution Memo:

Every EPS case requires a resolution memo whether an RTI was required or not. The DACA BCU resolution memos are created using ECHO.

**Complete the Resolution Memo:**

13. In ECHO, wand the receipt number.

14. Click "NEW LETTER>>>"

15. Select the correct correspondence type.

    a.  If there are also TECS hits that need to be resolved, choose "NSC TECS MEMO."

    b.  Otherwise, choose "NSC DACA IDENT/Criminality MEMO"

16. Choose the appropriate standards, including "DACA EPS Memo" (<u>RES 035</u>).

17. Click "COMPOSE."

18. Replace all the placeholders with the information called for.

19. Click "BUILD."

    a.  Optionally perform spell check.

20. Review the letter.

    a.  If changes are needed, click "RE-DRAFT" and make changes, then return to step 7.

    b.  If everything appears correct, click "FINALIZE."

    c.  Click "OK."

    d.  If the system asks whether you want to send a copy to the requestor and attorney, click "Cancel."

21. Print a copy of the letter for the file.

    a.  Click the printer icon in the upper-left corner of the Adobe field.

    b.  Click "Print."

22. Click "MARK SENT."

Need help with verbiage or just some inspiration – <u>Click here for EPS Memo Examples</u>.

| IF | THEN |
|---|---|
| ICE does not respond within 60 days, | 1. Resume adjudication, taking into account the basis for the RTI.<br>2. If approvable – consult with ICE prior to approval.<br>3. Update RTI by Month spreadsheet by changing the "Status" column to "No Response".<br>4. Update FDNS-DS. |

Updated: 07/31/2017 – Updates in red

Confidential

FOR OFFICIAL USE ONLY (FOUO)

| ICE declines the RTI, | 1. Resume adjudication, taking into account the basis for the RTI. <br> 2. Update <u>RTI by Month</u> spreadsheet by changing the "Status" column to "Declined". <br> 3. <u>Update FDNS-DS.</u> |
|---|---|
| ICE accepts case, | 1. Deconflict prior to adjudication and provide assistance to ICE where appropriate. <br> 2. Update <u>RTI by Month</u> spreadsheet by changing the "Status" column to "Accepted". <br> 3. <u>Update FDNS-DS.</u> |

**5. Final FDNS-DS Entry:**

**After a response from ICE is received:**

a. Select the case within FDNS-DS.
  a. Select it from the list of your cases.
    i. Click the "Cases" tab.
    ii. Click "My Cases."
    iii. Click the correct blue case name from the list.
  b. Alternatively, you can find it through a query of the database. Which queries will return the desired results will depend on how completely and accurately the information was entered into the database.
b. Add information to the narrative in the "Synopsis" block. Suggested language:
  a. If accepted: "The referral was accepted."
  b. If declined: "The referral was declined."
c. Change the Sub-Status to "Accepted SCA" or "Declined ICE ERO."
d. Close case – EPS cases should be closed as soon as ERO/NCATC disposition is received.
  a. If closing because ICE did not respond within 60 days, change Sub-Status "CIS Adjud Action". Send an e-mail with the FDNS-DS case number to your supervisor so the case information can be forwarded to Janie Brown-Harris.
  b. If closing because declined by ICE change sub-status to "declined by ICE ERO".
  c. If closing because accepted change sub-status to "accepted – lead sent".
e. Save the record in FDNS-DS (Ctrl+S or Edit > Save Record).

# Special Processing:

## Request for Adjudicative Guidance (RAG):

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006193

FOR OFFICIAL USE ONLY (FOUO)

A new ECN process for the submission of DACA Requests for Adjudicative Guidance (RAGs) is in effect as of 09/14/2015. With this new process, RAG submissions to the HQSCOPSDACA mailbox are no longer required. Submit all future RAGs to SCOPS via the link below:

http://███████████████████████████████████████████████

██████████████████████aspx

By selecting the "Add New Item" icon, a RAG template will populate for you to insert all of the relevant case information.  Please attach any court documents, arrests or investigative reports, or law enforcement documents that will give a more complete picture of the circumstances.  After you enter the case information, you should select the button at the bottom of the screen to route the RAG to the NSC BCU DACA Supervisor group through the standard work flow. An email notice should be sent via Outlook notifying the supervisor group once a new RAG has been sent for their review or returned with decision/edits.

RAGs concerning **ongoing/active investigations** should always include answers to the following:

- Does ICE consider the requestor to be an enforcement priority and/or a public safety concern?
- Does ICE have any objection to the approval of the DACA request?

NOTE:  Executive Summaries will still be composed in ECHO and attached to an email to your supervisor and ISO3 for review and submission to HQSCOPSDACA.

## Abeyance Requests:

If ICE or another law enforcement agency formally requests that a DACA request be held in abeyance due to an ongoing investigation, the DACA BCU officer handling the case may place the case in abeyance for 180 days or until the investigation is completed, whichever comes sooner.

Use the Disposition Hold routing sheet to send the file to the Mini File Room. The call-up date should be the date agreed upon with ICE or other law enforcement agency – not to exceed 180 days.

When the case returns upon call-up, contact the requesting party to deconflict. If additional time is requested, send the request to HQ SCOPS through your supervisor for concurrence. The approving party changes based on the length of time abeyance is requested.

**Notes on Abeyance Requests:**

- The authority for holding a case in abeyance comes from the October 2013 guidance "The Withholding of Adjudication (Abeyance) Regulation contained at 8 CFR § 103.2 (b)(18).

Updated: 07/31/2017 – Updates in red

Confidential

FOR OFFICIAL USE ONLY (FOUO)

- A formal abeyance request must be in writing. This could include a faxed request on agency letterhead or via an e-mail from an agency account.

## ICE Enforcement Priorities:

### ICE Takes Action Against a DACA Requestor after Filing DACA Request and at Time of Adjudication:

If DHS electronic systems or information received from ICE identifies the requestor as having been placed in immigration detention or ICE has taken action against a DACA requestor, by issuing a detainer against the requestor, placing him/her under an order of supervision, or placing him/her in an ankle bracelet monitoring system, after filing his/her Form I-821D, etc., the Center should follow the below procedures.

The DACA BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.

1. **Enforcement Priority** - If ICE indicates that the requestor is an ICE enforcement priority regardless if ICE intends on physically releasing the requestor, ICE issues a detainer against him or her, places him or her under an order of supervision, or places him/her in an ankle bracelet monitoring system, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "…exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities." USCIS will notify ICE once the denial notice is issued.

2. **Not an Enforcement Priority** - If ICE indicates that the case is not an ICE enforcement priority; the case will be adjudicated on its merits. If detained, a review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.

If the BCU disagrees with ICE's determination of whether or not the requestor is an enforcement priority, the BCU should ask local counsel for assistance in contacting local ICE counsel to discuss the

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006195

FOR OFFICIAL USE ONLY (FOUO)

reasons why USCIS disagrees with ICE's determination. The Service Center's local counsel can seek assistance from USCIS Headquarters' Office of the Chief Counsel to contact ICE, if necessary.

NOTES ON ICE ACTIONS:

❖ The underlying basis for this internal FAQ is whether or not ICE considers the individual to be an enforcement priority. This guidance would also apply to a case where ICE has taken some sort of action, for example placed a detainer on a subject, prior to the DACA request being filed as long as the condition still exists at time of adjudication. For example, if ICE has issues a detainer, and the detainer remains in place at the time of adjudication, it is more than likely that the individual is still considered to be an enforcement priority. Officers must confirm that the requestor remains an enforcement priority prior to taking final action on the DACA request.

❖ When contacting ICE, you need ask if the DACA requestor is considered an ICE enforcement priority. Also, request any documentation that ICE has of the derogatory information that led them to this determination (this documentation is not necessarily required if they do not provide it, but is helpful). You may choose to contact ICE via telephone or e-mail. The information you obtain from ICE should be summarized in your resolution memo. Click here for an example of an EPS memo for this scenario.

❖ DETERMINING AN ICE CONTACT:

   o If a requestor is truly an ICE enforcement priority, ICE will usually contact USCIS to relay this information. In this instance, you will simply work with the Agent/Officer who made the initial contact.

   o If ICE has taken action against a requestor there should be an encounter in EARM. The primary agent should be listed under the Encounter Details. If you cannot determine the appropriate contact from the information listed, you may e-mail Jeff Jones to obtain the Primary Agent's full name.



   o If an agent cannot be identified in EARM you can use one of the ICE contact lists below: ERO Directory

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006196

FOR OFFICIAL USE ONLY (FOUO)

ERO Field Phone List

ICE Insight - Phone List

ICE.GOV - Contacts

RTI Team Contacts

## ICE Detention:

### DACA Requestor in ICE Detention at Time of Filing and Time of Adjudication:

USCIS lacks the authority to consider requests from individuals who are in immigration detention under the custody of ICE at the time of filing Form I-821D and remain in immigration detention as of the date Form I-821D is adjudicated. If upon receipt of Form I-821D, a review of DHS electronic systems or information received from ICE identifies the requestor as detained, the Center should follow the below procedures.

The BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.

1. **Requestor Will not be Released** - If ICE indicates that it does not intend to physically release the requestor within 30 days, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice." USCIS will notify ICE once the denial notice is issued.

2. **Enforcement Priority** - If ICE indicates that the requestor is an ICE enforcement priority but ICE intends on physically releasing the requestor, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "…exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities." USCIS will notify ICE once the denial notice is issued

18 | P a g e

Updated: 07/31/2017 – Updates in red

DEF - 00006197

FOR OFFICIAL USE ONLY (FOUO)

3. **Not an Enforcement Priority** - If ICE indicates that the <u>case is not an ICE enforcement priority</u> and ICE intends to physically release the requestor, the case will be adjudicated on its merits**. A review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.**

**Verify detention status here - <u>https://locator.ice.gov/odls/homePage.do</u>**

## Gangs:

The BCU DACA Team should handle any DACA requests when the record indicates that the requestor was, is, or may be a member of a criminal street gang.

USCIS's Notice to Appear (NTA) guidance includes "known or suspected street gang members" in its definition of an Egregious Public Safety (EPS) case.  Therefore, if there is reason to believe the DACA requestor is a known or suspected gang member because the record indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving gang activities  (e.g., a ⌐ **LE** ⌐ record indicating the alien is a gang member or a suspected gang member as shown in the **images A and B**), the DACA BCU Team should follow the handling procedures for EPS cases described in Chapter 8, Section G, of the DACA SOP.

### ICE Action:

If, in response to the referral to ICE (RTI), ICE issues an NTA or otherwise indicates that the DACA requestor is an enforcement priority, the DACA BCU Team should deny the I-821D using the checkbox in Appendix F that indicates "you have not established that you warrant a favorable exercise of prosecutorial discretion."

### Known Gang Members:

For a known street gang member, if an RTI is not required, as stated in the National Background Identity and Security Checks Operating Procedures (NaBISCOP), or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team should deny the I-821D as a matter of discretion and notify ICE of the decision.

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006198

FOR OFFICIAL USE ONLY (FOUO)

## Suspected Gang Members:

Officers assigned to DACA EPS/RTI casework have some autonomy in making the discretionary decision as to whether or not a DACA requestor is a suspected gang member. If an officer receives a referral for suspected gang membership that he/she does not feel rises to the level of a suspected gang member, the officer should discuss the case with his/her supervisor.

For a suspected street gang member, if an RTI is not required, as stated in the NaBISCOP, or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team must refer the case for an interview to determine whether or not the requestor is, in fact, a gang member.  If, after the interview, it is inconclusive whether the requestor is a gang member (e.g., there is a 50/50 chance the person is a street gang member), the DACA BCU Team should deny the I-821D as a matter of discretion because the person has not met the burden of showing he or she is 'more likely than not' not a street gang member and therefore does not pose a threat to public safety. The DACA BCU team must notify ICE of the decision.

The Centers should not approve a DACA request filed by a known or suspected gang member without approval from HQSCOPS.

## Known Gang Affiliates/Associates:

If a DACA requestor is known gang affiliate/associate the case should be treated as a suspected gang member.

Examples of cases that may fall in this category:

- DACA requestor has admitted to USCIS or a law enforcement agency that they associate with a criminal street gang or its members.
- DACA requestor has been identified as an affiliate/associate of a particular gang and there is some indication the requestor has participated in gang activities (i.e. tagging, arrested with known gang members, etc.).
- DACA requestor has gang type tattoos or other strong indicators that may lead the DACA BCU officer to believe the DACA requestor is an affiliate/associate of a criminal street gang in a manner other than casual or passive association.

## Interview Guidance:

Updated: 07/31/2017 – Updates in red

Confidential
DEF - 00006199

FOR OFFICIAL USE ONLY (FOUO)

1) Use either of the options below to determine the correct field office:
   - Field Office Locator
   - GUI:
     1) Go into the main adjudication screen in GUI, and press the F7 key (you can also select the "Options" tab at the top of the screen to get to the same menu).
     2) Select SC Transfer to Local Field Office for Review from the options listed.
     3) A box with the local field office code will pop up. Hit cancel to back out of the screen (we don't want to have that HAC go through).

2) Send an email with the following information to SISO Sara Shafii-Stier:
   - A-Number
   - I-821D Receipt Number
   - Name & location of Field Office POC
   - Region
   - Reason for Interview Referral

3) Send a separate email to your field office POC using the designated template. SCOPS has provided a document library for the field office (CHAP: Consolidated Handbook Adjudication Procedures - Chapter 9 DACA – Part B: DACA Interview Guidance) with the necessary attachments hyperlinked. There will be a minimum of four POCs in your e-mail – at least one from the Field Office, at least one Regional POC, and the two HQ FOD POCs. You will now copy in these additional POCs:
   - **The designated regional POCs (Regional and Field Office) AND**
   - **HQ FOD DACA POCs for visibility, listed below:**
     - **Mary Flores:** ▮▮▮▮▮ **@uscis.dhs.gov**
     - **Fred Dimichele:** ▮▮▮▮▮ **@uscis.dhs.gov**
     - **FOD Special Adjudications (SA) -** ▮▮▮▮▮ **@uscis.dhs.gov**

4) Relocate the A-file using the DACA Gang Relocate Memo located in ECHO:



| I-821 D Groups • Req | Select Correspondence Type • Req |
|---|---|
| DACA ▼ | DACA Gang Relocate Memo ▼ |

Or, Update ELIS with the referral.

- **In BCU Review**. BCU Officers may also create a Field Office Referral while the Packet is "In BCU Review". After dispositioning any Hit(s), an officer may select **Referrals** and refer to a Field Office.

- The Referrals modal will appear and the Officer should select **Add New Referral** from the menu selection and **Complete Referrals** button.

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006200

FOR OFFICIAL USE ONLY (FOUO)



- Upon selecting the refer Case button, the Officer will select **Field Office**, the **Referral Reason**, and the **Field Office Location** where the Packet should be referred to and check the Return Case After Referral Completed box:

Referral Completion/Add New Referral Confirmation                    ✕



Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006201

FOR OFFICIAL USE ONLY (FOUO)

5) When the file returns from the field with the interview results, please send an email to SISO Sara Shafii-Stier so that she has the information for reporting purposes. Please discuss the results with your supervisor before final adjudication.

6) The Service Centers will issue an RFE or NOID, if required, and make final determinations on whether to defer action under the DACA process once the interview has been completed and the case (i.e., A file or T file) has been returned to the service center that referred the case for interview.

- If after interview, you feel the requestor has met his/her burden and warrants favorable consideration, you must complete an Executive Summary and receive prior approval from SCOPS. There is now an Executive Summary template in ECHO.

  Executive Summary – Example

- Save your Executive Summary as AA with the last four digits of the 821D receipt number (ex. AA1234). Send your completed Executive Summary to your supervisor and senior officer Jenni Jenkins. Hold the case until a response is received from HQ SCOPS.

7) If the requestor does not appear for a scheduled interview or re-schedule the interview, upon return of the file from the field office the DACA Request may be denied as abandoned.


**Other Gang Affiliates/Associates:**


The DACA BCU Team should handle any DACA requests when there is a reason to believe that the requestor has been associated or affiliated with a criminal street gang member.

If there is reason to believe the DACA requestor has been associated or affiliated with a criminal street gang member, but where there is insufficient evidence to deny the request based on the requestor's actual gang membership, the DACA BCU Team should vet the case thoroughly, but an RTI is not required unless the DACA BCU Team learns that the requestor is under investigation for, or has been arrested for, gang activities, or if an RTI is appropriate for another reason. If the DACA BCU Team determines that there are no EPS concerns and there is no evidence showing that the requestor has supported or assisted with the criminal activities of a criminal street gang member(s), the DACA BCU Team may consider the request on its merits, taking into account any derogatory information when determining whether favorable discretion is warranted. If the DACA BCU Team determines that there are EPS concerns, the DACA BCU Team should follow the handling procedures for EPS cases described in Chapter 8, Section G of the DACA SOP.

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006202

FOR OFFICIAL USE ONLY (FOUO)

Examples of cases that may fall in this category:

- DACA requestor lives in a neighborhood/situation where some affiliation/association with gang members may be unavoidable, but there is no evidence of any participation or identification with a criminal street gang.
- DACA requestor's family member(s) are members of a criminal street gang, but there is no indication the DACA requestor participates/identifies with the gang.
- DACA requestor was arrested or identified at a party where known gang members were present, but there is no indication the requestor actively participates or identifies with the gang.

If you have any questions as to whether or not a particular case falls into this category, please see your supervisor or DACA BCU senior.

### Drug Cartels/DTO:

The DACA BCU Team should handle any DACA requests when the record indicates that the requestor was, is or may be a member of a drug cartel or drug trafficking organization (DTO). Supervisors must refer the following cases to HQSCOPS through the normal chain of command:

- All DACA requests filed by a known or suspected drug cartel or DTO member the Center seeks to approve; and
- Any novel, complex, or sensitive DACA requests filed by a known or suspected drug cartel or DTO member the Center seeks to deny.

Therefore, if there is reason to believe the DACA requestor is a known or suspected drug cartel or DTO member because the record (e.g., a TECS record, as shown in the image below) indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving activities that suggest the alien is a drug cartel or DTO member or a suspected drug cartel or DTO member, the DACA BCU Team should de-conflict further with the record owner. If it is determined that the alien is a drug cartel or DTO member or a suspected drug cartel or DTO member, then the BCU will deny the request as a matter of discretion using the discretionary checkbox, "You have not established that you warrant a favorable exercise of prosecutorial discretion," and refer the case to ICE.

When contacting record owners with current investigations:

- Please ask the record owner if they have any objection to the approval OR denial of the DACA request.
  - Some of our contacts who are currently investigating suspects for potential involvement in DTOs have indicated they do not want DACA requests denied because it may tip off the suspect and therefore impede the active investigation.  If you come across this scenario, please send a RAG to HQSCOPS asking for permission to approve the DACA request.

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006203

FOR OFFICIAL USE ONLY (FOUO)

- o Explain to the record owner they may request termination of the approved DACA at any time if their investigation leads them to believe the DACA requestor is a public safety concern/enforcement priority or if the requestor is being criminally charged.

- o Confirm whether or not ICE considers the requestor to be an enforcement priority or a public safety concern.

A formal RTI is not required for these cases as drug cartels or DTOs are not defined as EPS under PM 602-0050 (11/7/11 NTA memo). Your deconfliction with the record owner will suffice as notification to ICE.

## Pending EPS Charges/Active Warrants:

ICE Takes No Action or Does Not Respond (or the case meets an RTI exception):

If the disposition of the criminal charges against the DACA requestor is pending, the DACA BCU Team will deny the DACA request on public safety grounds, because the underlying issues of criminality are deemed to pose an EPS concern, pursuant to the November 7, 2011 NTA memorandum. The BCU DACA Team will also deny Form I-765, requesting employment authorization.

Active Warrants for EPS crimes are handled the same as pending EPS charges.

Any questions regarding pending EPS charges or an Active Warrant should be discussed with your supervisor.

## Convicted of Felony that is a Public Safety Concern:

ICE Takes No Action or Does Not Respond (or the case meets an RTI exception):

If there is irrefutable evidence a DACA requestor was convicted of a felony that poses a threat to public safety, as described on pages 3 & 4 of the 11/7/2011 NTA Memorandum, the DACA BCU Team will deny the case without issuance of a RFE or NOID.

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006204

FOR OFFICIAL USE ONLY (FOUO)

## Juvenile Adjudications:

ICE Takes No Action or Does Not Respond (or the case meets an RTI exception):

Prepare a NOID using the template titled Juvenile Delinquency. The ISO should obtain supervisory review AND clearance from local counsel before issuing a NOID using this call-up. Centers are no longer required to elevate juvenile delinquency cases to SCOPS attention unless they encounter a novel, complex or sensitive case. If the response to the NOID is insufficient to overcome the grounds of the intended denial, the ISO should deny the DACA request using the following checkbox in Appendix F: "You have not established that you warrant a favorable exercise of prosecutorial discretion."

## DACA Renewals:

EPS processing for DACA renewals is essentially the same as it is for DACA initials with a few nuances.

### Notes on processing paper EPS DACA renewals:

Screen Prints (paper files): Screen prints are not a normal part of a DACA renewal packet. There most likely will not be any screen prints in the file when it comes to you. There may be a TECS Batch Packet which will contain screen prints. You may need to print your own.

- Required Prints – 9101, 9202 (if applicable), FD258
- Other – print any screens that you feel may assist your adjudication.
    - Examples: EOIR, FBI RAP sheet, EARM, BBSS, etc.

**A-files:** You are only required to obtain the A-file prior to adjudication if you believe it will assist with processing the case. No T-file Adjudication Memo is required for cases worked out of a T-file.

**Denials:** If a case will be denied due to EPS and/or criminality concerns you will process the case as normal, except you do not need to address any other guidelines (i.e. CR, education, travel, etc.). Send the A and T-files (unconsolidated) to your supervisor.

- HAC Code Updates for GUI cases:
    - If a TECS resolution was required – update with the "Received from Background Check Unit (BCU) with Res" HAC
    - If the file was referred for criminality/IDENT only, you do not need to complete a HAC update other than the denial update.

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006205

FOR OFFICIAL USE ONLY (FOUO)

**Travel Issues (Approval Only)**:  Should be addressed through the streamline process (upfront checks). However, if you notice one of the travel indicators noted below, please attempt to resolve the travel issue by checking ADIS, SQ94, etc.

- Case identified by the Automated Targeting System (ATS)
    - HAC Code Update in Claims:
    - Additional File Review by Tien HA
    - Case Profile Hold Placed
- Form I-821D – requestor indicates travel in Part 2 (No HAC in Claims)

**EPS/Criminality Cleared**: If after vetting, you determine there are no EPS concerns and/or criminality is not disqualifying for DACA:

1. Create EPS/Criminality resolution memo in ECHO.

    - You should have documentation of your vetting/deconfliction already in the file. Therefore, your resolution memo should be brief and simply indicate that the EPS/criminality concerns were vetted and will not affect further consideration of the DACA request. This is significantly different from your memos for initial DACA requests. Because your GUI HAC code updates are essentially the resolution memo for renewal cases, the same level of detail is not necessary.

2. In GUI, update both the I-821D and I-765 with the appropriate History Action Code(s) (HAC).

    - ➤ **Criminality LE Resolution** - Adjudication>Case Review>Lift Suspense>Investigative/Agency Checks received

    - ➤ **TECS Resolution** – Adjudication>Case Review>Lift Suspense>Received from Background Check Unit (BCU) with Res

    - ➤ **Criminality LE and TECS Resolution** – Enter both of the above HAC codes.

3. Update GUI with approval for both the I-821D and I-765.

4. Stamp and make any updates to the forms.

5. Send file to HN0000

**TERMINATIONS AFTER DENIAL or ABANDONMENT:**

If DACA Renewal Request will be denied for EPS concerns, please refer the initial DACA filing, if unexpired, for termination to the NSC DACA BCU Terminations mailbox NSC DACA BCU Terminations. Please attach your EPS resolution memo to the email. DACA BCU will begin terminating any initial where

27 | P a g e

Updated: 07/31/2017 – Updates in red

DEF - 00006206

FOR OFFICIAL USE ONLY (FOUO)

the renewal is being denied for criminality, unless the grant will expire within 33 days (length of the NOIT). The EPS team will pursue termination regardless of the time left on the initial grant.

Provide the following:

- A-number
- Receipt number
- A brief description of the EPS concern.
- The date the initial DACA expires

You will receive a response providing further instruction.

If you are assigned to work EPS terminations, see the NSC DACA Terminations Guide for processing instructions.

## Additional Resources:

### Links:

**DACA EPS Memo (RES 035)**

**NSC DACA Terminations**

**EPS Review Sheet**

**Field Office Locator**

**DACA Interview Home Page (SCOPS)**

**CHAP DACA Interview Guidance**

**DACA Interview – Suspected Gang Member**

**Relocate Memo – Suspected Gang Member**

**Relocate Routing Sheet – Suspected Gang Member**

**Field Offices DACA POC**

**Regional Offices DACA POC**

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006207

FOR OFFICIAL USE ONLY (FOUO)

**ICE Insight - Legal Tools**

**ICE Detainee Locator System**

**ERO Directory**

**ERO Field Phone List**

**ICE Insight - Phone List**


**RISSNET - MOCIC Sign-in Help Doc**

**RTI Team Contacts**

**J:\apps\MSWORD\ADJ\DACA BCU\EPS Team**  - Contains RTI Spreadsheet, contact list, processing guide, etc.

**National Sex Offender Registry**


## Gang/EPS Crimes Resources


CalGang Policy/Procedure
http://oag.ca.gov/sites/all/files/agweb/pdfs/calgang/policy_procedure.pdf

Delaware.gov – Gangs: Identification and Awareness
http://kids.delaware.gov/pdfs/yrs_gangawareness.pdf

National Gang Intelligence Center – CA Hispanic Gang 2010 Tattoo Handbook
http://cryptocomb.org/2011%20tattoo%20handbook%20for%20police.pdf

New Jersey Gang Awareness Guide
http://www.nj.gov/oag/gang-signs-bro.pdf

New York – Sex Offender Registration information (law and flowchart at this link)
http://www.criminaljustice.ny.gov/SomsSUBDirectory/search_index.jsp

New York Gang Awareness (Nassau County)
http://www.susanamacdonald.com/Microsoft%20PowerPoint%20-
%20Gang%20Awareness%20PowerPoint%20Presentation.pdf

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006208

FOR OFFICIAL USE ONLY (FOUO)

## ROP Order (paper files):

Relocate Memo (if applicable)
DACA Interview Guidance (if applicable)
**TECS/ LE EPS Memo**
**ROIT**
**LES COVERSHEET**
TECS/NCIC/RAP/EARM (DEROGATORY INFO)
VETTING DOCUMENTATION (CALL SHEETS, EMAILS, TXGANG, STATUTES, ETC)
ALL OTHER DOCUMENTATION
**\*Bold are required.**

## Flow Charts:

**Regular DACA POCs:**
- Biometric No-Shows: Brenda Staveness
- Travel issues – Joel Johnson
- Unexpired advance parole – Kate Hoti
- VAWA – Kate Hoti

Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006209

FOR OFFICIAL USE ONLY (FOUO)

# EPS Crimes Flow Chart



Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006210

FOR OFFICIAL USE ONLY (FOUO)

# **Gang Flow Chart**



Updated: 07/31/2017 – Updates in red

Confidential

DEF - 00006211

# DEF-INTERV.

# EX. 247



U.S. Citizenship and Immigration Services

# DACA Refresher Training – Evaluating Issues of Criminality, Public Safety, and National Security

**SCOPS-HQ, March 2015**

Confidential

# Objective

At the end of this workshop, Immigration Service Officers (ISO) will understand how to properly evaluate DACA cases which present National Security (NS), Egregious Public Safety (EPS), and criminality issues.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

2

DEF - 00006650

# Key Elements

▪Review related DACA guidelines;

▪Understand the background check and case vetting process;

▪Adjudicate a DACA case with NS, EPS or criminality concerns;

▪Resolve and de-conflict TECS records, FBI fingerprint IDENTS and derogatory information in coordination with federal, state and local law enforcement agencies (LEAs);



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

3

# Key Elements (continued)

▪Know when to consult with a supervisor or senior adjudication officer;

▪Know when and how to refer cases to CFDO or BCU; and

▪Know when and how to refer cases for HQSCOPS review via the Request for Adjudicative Guidance (RAG) process.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

4

DEF - 00006652

# DACA CASES



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

5

DEF - 00006653

# Example TECS Record #1

**LE**


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

6

# Resolution

MEMORANDUM FOR ▮▮▮▮▮▮▮▮
FROM:

SUBJECT: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1. ☐ Hit indicates grounds of inadmissibility; however, a waiver of inadmissibility has been approved.
2. ☐ May require Notice to Appear (NTA). Admissibility concerns identified.
3. ☐ It has been determined that the IBIS hit did not relate to this individual.
4. ☒ Appears to relate.
5. ☐ Other:
6. Summary of findings: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

7

DEF - 00006655

# Example TECS Record #2

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

8

Confidential

DEF - 00006656

# Resolution

The attached file was forwarded to BCU for review as the record indicates that the subject is a possible egregious public safety concern. Based on the reasons indicated below, the ▮▮▮▮ BCU can take no further action on this case. The file is being returned to adjudications. Case should be adjudicated on its own merit.

## Adam Walsh Issue

☐ The subject does qualify as an Adam Walsh Sex Offender.
☐ It is unknown at this time if the subject qualifies as an Adam Walsh Sex Offender.
   (RFE for court dispositions to determine whether the subject is an Adam Walsh Sex Offender.)
☒ The subject does not qualify as an Adam Walsh Sex Offender. (Ok to adjudicate on merits.)
☒ Adam Walsh Act does not apply to this form type. (Ok to adjudicate on merits.).

## EPS Referral

The case does not require EPS referral to the ICE Benefit Fraud Unit as per Policy Memorandum #110 due to the following:

☐ The subject is a USC.
☐ The subject was legally admitted/adjusted/natz'd after the incident.
☒ The subject is currently in removal proceedings.
☐ The subject has been granted relief by an IJ in removal proceedings.
☐ The subject is currently under an Order of Supervision.
☐ The subject has been deported/removed and there is no evidence of re-entry
☐ The subject's arrest/conviction does not qualify as EPS.
☐ The subject was previously referred to an ICE-BFU and action was declined.
☐ Other:

Follow divisional policies for adjudicative decision. Inadmissibility concerns should be addressed prior to visa issuance, adjustment of status, change of status, or extension of stay. Communication with owner of record not needed.



U.S. Citizenship
and Immigration
Services

9

FOUO – Law Enforcement Sensitive

DEF - 00006657

# Intake and Workflow



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

10

Confidential

DEF - 00006658



Confidential

DEF - 00006659

# Background and Security Checks



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

12

# DACA BCU Team

- For DACA cases, a specialized adjudication team within the BCU has been established to process and adjudicate all DACA requests that present issues of criminality.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

13

# Mandatory Background & Security Checks

Background and security checks will be conducted for all DACA requests.

The mandatory background and security checks to be performed on DACA cases are:

- TECS queries; and
- FBI fingerprint checks.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

14

Confidential

DEF - 00006662

# Systems Checks – Fingerprints

- FBI Fingerprint Check – provides summary information of a U.S. administrative or criminal record

- Possible results from FBI system:

  - 
  -
  -
  -



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

15

DEF - 00006663

# Biometrics Collection

- The Application Support Center (ASC) captures a requestor's biometrics

- All requestors must be scheduled for biometrics capture at an ASC

- Requestors younger than age 14 will have press print captured

- Requestors 14 and older will require 10-prints



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

16

DEF - 00006664

# National Security and Criminal Hits

All DACA requestors with national security issues, **LE** **LE** TECS hits, or other criminality concerns will be processed by the BCU DACA Team per guidance from the DACA SOP:



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

17

# National Security

- **National Security:** All TECS hits with national security issues will be resolved according to the abbreviated CARRP Handling for DACA Cases with National Security Concern process.  <u>All cases with National Security concerns will be resolved and adjudicated by the CARRP ISO attached to the BCU DACA Team.</u>



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

18

Confidential

DEF - 00006666

# LE    TECS Hits

# LE


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

19

DEF - 00006667

# Other TECS Hits

**Other TECS Hits:**  During the BCU triage of TECS, if the DACA requestor has a hit other than a national security or top four concern, such as agricultural violations, visa overstays, absconders, <u>the BCU DACA Team will resolve the hit and forward the case for adjudication.</u>


U.S. Citizenship
and Immigration
Services

20

FOUO – Law Enforcement Sensitive

DEF - 00006668

# Immigration Fraud

- **Immigration Fraud:**  All TECS hits indicating confirmed past immigration fraud shall be referred to the Center Fraud Detection Operations via a Fraud Referral Sheet in accordance with FDNS Fraud SOP.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

21

DEF - 00006669



DEF - 00006670

# **LE** Results (continued)

# **LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

23

DEF - 00006671

# System Updates For DACA File Movement Into and Out of BCU

For reporting purposes, DACA file movement into and out of the BCU must have the following updates in C3:

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

24



DEF - 00006673

# TECS Queries



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

26

DEF - 00006674

# TECS Queries

- Service Centers conduct batch TECS queries on primary name and DOB within 15 days of initial receipt
- ISOs must conduct a separate query for each name and DOB (alias) combination
  - Some files may contain multiple names and/or DOBs
  - TECS query results are valid for 180 calendar days



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

27

DEF - 00006675

# TECS Queries (continued)

The following items, if present, must be reviewed in the DACA file for name and DOB combinations and aliases, and require a TECS query:

- Form I-821D;
- Form I-765;
- All supporting documents; and



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

28

Confidential

DEF - 00006676

# TECS Queries (continued)

Any other documents in the file relating to the DACA request including, but not limited to the following:

- Passports;
- Visas;
- Border Crossing Cards (BCC);
- Forms I-94;
- Birth Certificates;
- Marriage Certificates;
- Divorce Decrees;
- Business/Membership Cards



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

29

# TECS Queries (continued)

- Tax Documents
- Diplomas/Academic Transcripts;
- Student Identification Cards;
- Military Identification Cards;
- Driver's Licenses;
- Social Security Cards;
- ◦IdHS (formerly known as RAP Sheet) from the FBI Fingerprint Check; and
- ◦IdHS (formerly known as RAP Sheet) from  **LE**


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

30

DEF - 00006678

# TECS Queries (continued)

- The following are possible system results when conducting a Subject Query:

- NO MATCH FOUND – The system did not locate any records to match the query criteria. The screen shows "No Match Found" at the bottom left.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

31

DEF - 00006679

# TECS Queries (continued)

- TECS RECORD – The system located one possible match to the subject queried. The screen shows the TECS record relating to the possible match.

- HIT LIST – The system located more than one possible match to the subject queried. The screen shows a list of possible records. To view each individual record **LE**

**LE**

Confidential                    DEF - 00006680

# TECS Resolutions


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

33

DEF - 00006681

# TECS Resolution

All TECS Hits are routed to the BCU for confirmation and vetting of the hit.

- If the hit relates to the DACA requestor, the BCU DACA Team will determine whether the concern involves national security, a **LE** hit, criminal/EPS concerns, or articulated immigration fraud, and whether it requires referral for special processing. All other TECS hits will be resolved and returned to DACA adjudications.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

34

DEF - 00006682

# TECS Resolution (continued)

Procedures for confirming a match:

- Determine if the subject of the derogatory information relates to the requestor; and

- Compare the information from the security check or other source to the biographic, biometric information, and physical descriptors about the individual.

- Contact the record owner for confirmation and to determine if the requestor is an ICE enforcement priority.

- If the BCU needs assistance contacting the record owner, an RFA should be submitted to HQ FDNS.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

35

DEF - 00006683

# TECS Resolution (continued)

- DACA BCU Team members should consult with a supervisor if there is any uncertainty as to whether the information relates to the DACA requestor. If there continues to be any uncertainty about the match, supervisors may work through their chain of command with HQ SCOPS via the RAG process.

- In s                    **LE**                    an RFE to confirm the match, or other appropriate actions may be required.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

36

Confidential

# TECS Resolution (continued)

- For inconclusive matches, the BCU must document the hit, include a statement in the Resolution Memorandum or other memoranda, as required, explaining the inconclusive nature of the match determination, the actions taken to resolve the hit, and refer the case to the appropriate unit or field office to confirm the match. If USCIS personnel are still unable to confirm the match, refer the case through chain of command to HQSCOPS.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

37

DEF - 00006685

# TECS Resolution (continued)

Resolving the hit may require a variety of activities to be completed by the BCU.  These may include but are not limited to:

- systems research (internal, external, open source),
- contact with other DHS components or third agencies,
- interview,
- **LE**
- referral to ICE (RTI) by FDNS or the BCU,
- deconfliction, and/or
- adjudicative action, such as an RFE (NOT approval)


U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

38

Confidential

DEF - 00006686

# TECS Resolution (continued)

Deconfliction is the coordination between USCIS and another governmental agency or record owner to ensure that planned adjudicative activities (e.g., interview, request for evidence, site visit, decision to grant or deny, issue an NTA,  and the timing of such) do not compromise or impede an ongoing investigation or other record owner interest.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

39

DEF - 00006687

# TECS Resolution (continued)

Once it is determined that the information relates to the individual, determine if the results fall into the following categories, which require special processing:

- National Security;
- EPS or other criminal cases; or
- Articulated immigration fraud.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

40

# TECS Resolution (continued)

Criminal hits, which involve a violation of U.S., state, or local criminal law, but do not rise to the level of an EPS concern, as defined in the November 7, 2011, NTA memorandum, impact each case differently and should be considered during the adjudication process to determine if such activity is germane to the request for DACA.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

41

DEF - 00006689

# TECS Resolution (continued)

Criminal activity occurring outside of the United States (including foreign convictions) that may be revealed during routine background checks or which the requestor may have disclosed on the DACA request, factor into the evaluation of whether the requestor poses a public safety concern, under the totality of the circumstances.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

42

DEF - 00006690

# TECS Resolution (continued)

- The resolution memorandum is the formal documentation of the reconciliation of a related hit.

- This is a mandatory action that must be completed before rendering a final adjudicative decision.

- Before completing the adjudication, the ISO should ensure that each resolution memorandum completely resolves the hit.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

43

DEF - 00006691

# TECS Resolution (continued)

- For a related hit, a separate resolution memorandum must be completed for each subject with a related hit and each file containing a related hit.

- For procedures and formats for the resolution of related hits, refer to the current NaBISCOP policy.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

44

DEF - 00006692

# TECS Resolution (continued)

A. Document the Resolution

Each hit requires documentation by the BCU DACA Team member of any resolution. Review the specific information for each background and security check for more information on documenting the resolution.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

45

DEF - 00006693

# TECS Resolution (continued)

B. Adjudication

Once the TECS hit has been resolved and the case will be denied, the BCU DACA ISO may complete adjudication of the case.

Once the TECS hit has been resolved and the case will be approved, the BCU DACA ISO must obtain concurrence from a BCU Supervisor and a BCU Section Chief, prior to approval.

Exception: If the TECS hit is determined to be a DNR it does not need to go through the concurrence process.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

46

Confidential

# FBI Fingerprint and RAP Sheets



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

47

Confidential

DEF - 00006695

# Fingerprints

The FBI Fingerprint Check provides summary information of an individual's administrative or criminal record within the United States. The FBI Fingerprint Check is conducted through the Integrated Automated Fingerprint Identification System (IAFIS). The IAFIS is a national fingerprint and criminal history system maintained by the FBI's Criminal Justice Information System (CJIS) Division. State, local, and Federal law enforcement agencies submit fingerprints and corresponding administrative or criminal history information to IAFIS.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

48

# Fingerprints (continued)

Participation by state and local agencies is not mandatory, so the FBI Fingerprint check does not contain records from every jurisdiction. The information contained in the record is obtained using prior fingerprint submissions to the FBI related to arrests and, in some instances, Federal employment, naturalization, or military service.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

49

# Fingerprints (continued)

<u>Validity of Fingerprint Results</u>

Fingerprint results are valid for 15 months from the date the FBI processed the fingerprints; prior fingerprint results will not be accepted.

ISOs should review FD-258 information to verify that the fingerprint check was completed specifically for the DACA request.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

50

DEF - 00006698

# Fingerprint Results

The fingerprint result should be returned from the FBI before the case is sent for adjudication. However, if there is no fingerprint result printout in the file and there is no indication of a fingerprint result in the electronic systems, the ISO is responsible for checking FD-258 and the National Appointment Scheduling System (NASS) to see if the requestor has been scheduled for an appointment at an ASC.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

51

DEF - 00006699

# Fingerprint Results (continued)

There are four possible results of a fingerprint query:

**LE**


U.S. Citizenship and Immigration Services

52

FOUO – Law Enforcement Sensitive

DEF - 00006700

# Fingerprints Results (continued)

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

53

# RAP Sheets

If the requestor has a criminal history with an **LE** result, and there are already Record of Arrests and Prosecutions (RAP) sheets in the file, request updated RAP sheets through the Fingerprint Refresh Resubmission Process.


U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

54

DEF - 00006702

# RAP Sheets (continued)

<u>A-number/Alias Information on the RAP Sheet</u>

If any other A-numbers are found on the RAP sheet, the other A-files must be requested, reviewed, and consolidated prior to any final action. If the RAP sheet indicates any aliases or alternate dates of birth, the ISO must conduct required background and systems checks on all additional name/DOB combinations.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

55

Confidential

DEF - 00006703

# RAP Sheets (continued)

The ASC captures fingerprints for individuals required to undergo a full biometrics capture. The fingerprints are transmitted daily to the FBI's database. This query submits fingerprints, without any names associated with the prints. These results are loaded into FD-258.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

56

Confidential

# RAP Sheet: Accuracy and Completeness Concerns

Since participation by state and local agencies is not mandatory, the FBI Fingerprint check does not contain records from every jurisdiction. Therefore, **LE** does not mean that the individual has no administrative or criminal history.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

57

DEF - 00006705

# RAP Sheet: Accuracy and Completeness Concerns (continued)

If a criminal hit comes up in another system or the individual has provided testimony, a sworn statement, or other evidence of criminal activity that does not appear in the fingerprint results or RAP sheets, USCIS personnel should follow the DACA SOP to determine what additional steps are needed to address the derogatory information.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

58

DEF - 00006706

# RAP Sheet: Accuracy and Completeness Concerns (continued)

For example:

- If the requestor answers "yes" to the criminality questions on Form I-821D but there is no evidence of this criminality in the filing or in the electronic systems, ISOs should issue an RFE.

- If the requestor submits court dispositions related to criminality, ISOs should adjudicate according to the DACA criminality guidelines.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

59

Confidential

DEF - 00006707

# Known or Suspected Gang Members



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

60

Confidential

DEF - 00006708

# Known or Suspected Gang Members

- The BCU DACA Team handles <u>all</u> DACA requests when the record indicates that the requestor was, is or may be a member of a gang.

- Known or suspected gang membership may be found in a record that indicates that the individual is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving gang activities.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

61

DEF - 00006709

# Known or Suspected Gang Members (continued)

- It is important to note that different entities will use varying verbiage to indicate gang-related activities. Read the information carefully to determine the concern.



**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

62

Confidential

DEF - 00006710

# Known Gang Members

- The Centers may deny DACA requests where the record or information obtained from federal, state or local LEA reflects that the requestor is a known gang member. There is no need to refer these cases to HQSCOPS.

- Supervisors should refer novel, complex, or sensitive cases to HQSCOPS via the RAG process, through the normal chain of command.

- The Centers should <u>not</u> approve a DACA request filed by a known gang member without approval from HQSCOPS.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

63

# Known Gang Members (continued)

## Example TECS record

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

64

DEF - 00006712

# Known Gang Members (continued)

- USCIS's Notice to Appear (NTA) guidance includes "known or suspected gang members" in its definition of an EPS case.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

65

DEF - 00006713

# Known Gang Members (continued)

- If there is reason to believe the DACA requestor is a known gang member because the record indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving gang activities, the DACA BCU Team should follow the handling procedures for EPS cases described in Chapter 8, Section G, of the DACA SOP.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

66

DEF - 00006714

# Known Gang Members (continued)

- Please note: Not all EPS cases require an RTI as per NaBISCOP, however, cases where the record reflects an EPS concern must be resolved prior to a final determination. Cases with outstanding EPS concerns do not merit a favorable exercise of discretion under the DACA process.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

67

Confidential

# Known Gang Members (continued)

## Known Gang Member

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

68

# Known Gang Members (continued)

## ICE Enforcement Priority

# **LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

69

Confidential

DEF - 00006717

# Suspected Gang Members

- All DACA requests where the record reflects suspected gang membership must be referred to a local USCIS Field Office for an interview.

- The BCU Team must contact the appropriate Field Office POC through established channels to facilitate the interview process.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

70

DEF - 00006718

# Suspected Gang Members (continued)

- If, after the interview, the requestor has not established by preponderance of the evidence that he or she is not a gang member, the DACA BCU Team should deny the I-821D as a matter of discretion.

  - The requestor has not met the burden of showing he or she does not pose a threat to public safety.

  - There is no need to refer these cases to HQSCOPS prior to denial.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

71

DEF - 00006719

# Suspected Gang Members (continued)

- If it is determined that the requestor is not a suspected gang member and the center believes that deferred action is appropriate, then the BCU must refer the case to HQSCOPS via the RAG process prior to a final determination.

- Supervisors should refer novel, complex, or sensitive cases to HQSCOPS via the RAG process, through the normal chain of command.

- The Centers must <u>not</u> approve a DACA request filed by a suspected gang member without approval from HQSCOPS.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

72

DEF - 00006720

# Suspected Gang Members (continued)

Example TECS record




U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

73

# Suspected Gang Members (continued)

- USCIS's Notice to Appear (NTA) guidance includes "known or suspected gang members" in its definition of an EPS case.

- If there is reason to believe the DACA requestor is a suspected gang member because the record indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving gang activities, the DACA BCU Team should follow the handling procedures for EPS cases described in Chapter 8, Section G, of the DACA SOP.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

74

DEF - 00006722

# Suspected Gang Members (continued)

- Please note: Not all EPS cases require an RTI as per NaBISCOP, however, cases where the record reflects an EPS concern must be resolved prior to a final determination. Cases with outstanding EPS concerns do not merit a favorable exercise of discretion under the DACA process.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

75

DEF - 00006723

# Suspected Gang Members (continued)

## ICE Enforcement Priority

- If, in response to the RTI, ICE issues an NTA or otherwise indicates that the DACA requestor is an enforcement priority, the DACA BCU Team should deny the I-821D using call up **DACA 511 - DISCRETIONARY** from the Appendix F.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

76

DEF - 00006724

# Suspected Gang Members (continued)

For a suspected gang member, if an RTI is not required, as stated in the NaBISCOP, or if one is required and ICE does not issue an NTA or otherwise notify USCIS of any action that it has taken in the case within 60 days, the DACA BCU Team must refer the case for an interview to determine whether or not the requestor is, in fact, a gang member.

The DACA BCU team must notify ICE of the decision.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

77

DEF - 00006725

# Associations/Affiliations with Gang Members



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

78

DEF - 00006726

# Associations/Affiliations with Gang Members

The DACA BCU Team handles <u>all</u> DACA requests when there is a reason to believe that the requestor has been associated or affiliated with a gang member.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

79

Confidential

DEF - 00006727

# Associations/Affiliations with Gang Members (continued)

If there is reason to believe the DACA requestor has been associated or affiliated with a gang member, but where there is insufficient evidence to deny the request based on the requestor's actual gang membership, the DACA BCU Team should vet the case thoroughly, including contacting the record owner for deconfliction.

An RTI is not required unless the requestor is under investigation for, or has been arrested for, gang activities, or if an RTI is appropriate for another reason.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

80

# Associations/Affiliations with Gang Members (continued)

After deconfliction and vetting, if the DACA BCU Team determines that there are no EPS concerns and there is no evidence showing that the requestor has supported or assisted with the criminal activities of a gang member(s), the DACA BCU Team may consider the request on its merits, taking into account any derogatory information when determining whether favorable discretion is warranted.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

81

DEF - 00006729

# Associations/Affiliations with Gang Members (continued)

- After deconfliction and vetting, if the DACA BCU Team determines that there are EPS concerns, the DACA BCU Team must refer the case for an interview per established procedures.

- If, after receiving the interview results, the DACA BCU team determines that deferred action is not appropriate due to the EPS concern, the case should be denied as a matter of discretion. These cases do not need to be referred to HQSCOPS before denying the request.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

82

DEF - 00006730

# Associations/Affiliations with Gang Members (continued)

- If, after receiving the interview results, the DACA BCU Team determines there are no longer any outstanding EPS concerns and the center believes deferred action is appropriate, the case must be referred to HQSCOPS via the RAG process before a final determination is made.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

83

Confidential

DEF - 00006731

# Known or Suspected Drug Cartel Members



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

84

# Known or Suspected Drug Cartel Members (continued)

The BCU DACA Team handles <u>all</u> DACA requests when the record indicates that the requestor <u>was, is or may</u> be a member of a drug cartel.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

85

DEF - 00006733

# Known or Suspected Drug Cartel Members (continued)

Supervisors must refer the following cases to HQSCOPS via the RAG process, through the normal chain of command:

- All DACA requests filed by a known or suspected drug cartel member the Center seeks to approve;

- Any novel, complex, or sensitive DACA requests filed by a known or suspected drug cartel member the Center seeks to deny.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

86

DEF - 00006734

# Known or Suspected Drug Cartel Members (continued)

- If there is reason to believe the DACA requestor is a known or suspected drug cartel member because the record indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving activities that suggest the alien is a drug cartel member or a suspected drug cartel member, the DACA BCU Team should de-conflict further with the record owner.

- All materials related to the deconfliction, including the resolution memo should be included on the non-record side of the file.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

87

DEF - 00006735

# Known or Suspected Drug Cartel Members (continued)

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

88

DEF - 00006736

# Known or Suspected Drug Cartel Members (continued)

If it is determined that the alien is not a known or suspected drug cartel member and the center believes that deferred action is appropriate, then the BCU must refer the case to HQSCOPS via the RAG process prior to a final determination.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

89

# Known or Suspected Drug Cartel Members (continued)

Example TECS record:

**LE**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

90

Confidential

DEF - 00006738

# RTI





U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

91

DEF - 00006739

# RTI

- On 11/07/2011, Policy Memorandum 602-0050, *Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens*, was issued.  PM 602-0050 supersedes PM 110 and identifies the circumstances under which USCIS will issue an NTA, or will refer the case to ICE for NTA issuance, in order to effectively handle cases that involve public safety threats, criminals, and aliens engaged in fraud.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

92

DEF - 00006740

# RTI (continued)

- On 06/15/2012, the Secretary of the Department of Homeland Security announced the Deferred Action for Childhood Arrivals (DACA) program. The Standard Operating Procedure (SOP) for DACA dictates that any DACA request presenting issues that are deemed to meet the definition of an EPS case shall be handled in accordance with the November 7, 2011, NTA memorandum.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

93

DEF - 00006741

# RTI (continued)

- On July 28, 2014, ICE issued the Memorandum, "*Transition of Probation and Parole Enforcement Responsibilities from Homeland Security Investigations to Enforcement and Removal Operations".* This Memorandum finalized the transfer of EPS referrals from HSI to ERO and the reassignment of the enforcement responsibilities for the identification, arrest, prosecution, and removal of criminal aliens on probation or parole.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

94

# EPS Issues Requiring RTI

- The term "Egregious Public Safety" is not defined in the INA.  Per the USCIS-ICE MOA, an EPS case includes information that the alien (not a U.S. citizen petitioner) is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:

  - Murder, rape, or sexual abuse of a minor as defined in 101(a)(43)(A) of the INA

  - Illicit trafficking in firearms or destructive devices as defined in 101(a)(43)(C) of the INA



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

95

Confidential

DEF - 00006743

# EPS Issues Requiring RTI (continued)

- Offenses relating to explosive materials or firearms as defined in 101(a)(43)(E) of the INA

- Crimes of violence for which the term of imprisonment imposed is at least one year as defined in 101(a)(43)(F) of the INA



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

96

DEF - 00006744

# EPS Issues Requiring RTI (continued)

- Offenses relating to the demand for or receipt of ransom as defined in 101(a)(43)(H) of the INA
- Offenses relating to child pornography as defined in 101(a)(43)(I) of the INA
- Offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in 101(a)(43)(K)(iii) of the INA



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

97

Confidential

DEF - 00006745

# EPS Issues Requiring RTI (continued)

- Offenses relating to alien smuggling as described in 101(a)(43)(N) of the INA

- Human rights violators, known or suspected gang members, or Interpol hits

- Re-entry after an order of exclusion, deportation, or removal subsequent to conviction for a *felony* where a Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has *not* been approved



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

98

Confidential

DEF - 00006746

# EPS Issues Requiring RTI (continued)

- Deconfliction and vetting must still occur regardless of the RTI process required.

- EPS cases MUST be referred to ICE via an RTI before USCIS completes a final adjudication.

- EPS cases referred to ICE are placed on hold for a minimum of 60 days.  These cases should be reviewed no later than 60 days after referral.  USCIS retains discretion to place the case on hold for more than 60 days if ICE requests additional time to conduct an investigation.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

99

DEF - 00006747

# EPS Issues Requiring RTI (continued)

- If ICE accepts the RTI, the DACA request must be denied on discretion as a deferral of removal is not consistent with DHS' enforcement priorities.
- If ICE does not accept the RTI, the case must be denied due to unresolved EPS concerns.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

100

Confidential

DEF - 00006748

# Exceptions to EPS case RTI Criteria

- Although deconfliction and vetting must occur in all cases, Referral to ICE is not required when:

  - Subject was arrested but the charges were *dropped*, the subject was *acquitted*, or the subject was ultimately convicted for a *non*-EPS offense (*after* the EPS arrest/charge).

  - Subject was removed/excluded and there is no reason to believe he/she has *reentered* the United States



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

101

# Exceptions to EPS case RTI Criteria (continued)

- Subject was granted *relief* (e.g., a waiver) or proceedings were *terminated* by an Immigration Judge and no *new* qualifying crimes (which satisfy RTI criteria) have been reported since relief was granted/ proceedings were terminated

- Subject has a pending case with Executive Office for Immigration Review (EOIR)



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

102

Confidential

DEF - 00006750

# Exceptions to EPS case RTI Criteria (continued)

- Subject is currently in custody with an ICE detainer
- Subject is currently under an Immigration Order of Supervision (OSUP)



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

103

Confidential                                                        DEF - 00006751

# Exceptions to EPS case RTI Criteria (continued)

- ICE is the TECS record owner to the derogatory information. This would also include "known or suspected gang members." If ICE has indicated that if they are the lead agency on the investigation for the suspected gang member, a RTI is not required because they (ICE) already have an active case on the person.

- However, if another agency has the lead on the suspected gang member, an RTI is required so the information is provided to ICE.


U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

104

# Exceptions to EPS case RTI Criteria (continued)

- Cases involving aliens outside the United States should not be referred to ICE

- Cases where ICE is aware of the individual through one of the above means, but was not aware of information provided by the DACA BCU during the deconfliction and vetting process.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

105

DEF - 00006753

# Exceptions to EPS case RTI Criteria (continued)

- For the above RTI exceptions, the DACA request must be denied on discretion as a deferral of removal is not consistent with DHS' enforcement priorities.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

106

DEF - 00006754

# Juvenile Adjudications

The juvenile record must be considered, regardless of the requestor's age at the time of filing, in determining whether a favorable exercise of discretion is warranted.


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

107

Confidential

DEF - 00006755

# Juvenile Adjudications (continued)



**LE**


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

108

DEF - 00006756

# Juvenile Adjudications (continued)

**LE**


U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

109

# Juvenile Adjudications (continued)

Centers are no longer required to elevate denials of cases involving juvenile delinquency to SCOPS attention except when the service centers encounter a novel, complex or sensitive case.

- Novel, complex or sensitive cases must be elevated to SCOPS attention via the RAG process.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

110

Confidential

DEF - 00006758

# Juvenile Adjudications (continued)

Examples of cases that would fall under this scenario include, but are not limited to the following:

- Cases where there is no conviction, but the charges raise significant public safety concerns
- Cases where the record is sealed, but the record indicates there are public safety concerns that may warrant an interview
- High-profile cases



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

111

DEF - 00006759

# Criminality Issues



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

112

Confidential

# Criminal Issues Specific to DACA

IMPORTANT NOTE:

DACA is a discretionary program and does not necessarily require a conviction for the adjudicator to consider the underlying factors of the criminal activity when determining whether or not favorable discretion is warranted.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

113

DEF - 00006761

# Criminal Issues Specific to DACA (continued)

An individual may not be considered for DACA if he or she has been <u>convicted</u> of:

- A felony offense;
- A significant misdemeanor offense;
- Three or more other misdemeanors; or



U.S. Citizenship
and Immigration
Services

Confidential                                                                    DEF - 00006762

# Criminal Issues Specific to DACA (continued)

- Poses a threat to national security or public safety;

    UNLESS, Headquarters determines there are exceptional circumstances.

**The determination that exceptional circumstances exist for deferral of removal under DACA will be made only at the HQ level via the RAG process and in extremely rare cases.**



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

115

Confidential

DEF - 00006763

# Felony

- A felony is a federal, state or local criminal offense for which the maximum term of imprisonment authorized is for a period of more than one year.

- A requestor convicted of <u>one felony</u> does not to meet the guidelines for DACA consideration, unless USCIS determines there are exceptional circumstances.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

116

Confidential

DEF - 00006764

# Significant Misdemeanor

A significant misdemeanor is a misdemeanor that involves:

- Domestic violence;
- Sexual abuse or exploitation;
- Burglary;
- Unlawful possession or use of a firearm;
- Drug distribution or trafficking;
- Driving under the influence of alcohol or drugs;



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

117

DEF - 00006765

# Significant Misdemeanor (continued)

OR

- Any crime for which the individual was sentenced to time in custody of more than 90 days.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

118

DEF - 00006766

# Significant Misdemeanor (continued)

- Sentence must involve time to be served in custody, and does not include suspended sentence.

- Time in custody does not include period in ICE custody that may follow completion of criminal sentence.

- A requestor convicted of <u>one significant misdemeanor</u> does not meet the guidelines for DACA consideration, unless USCIS determines there are exceptional circumstances.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

119

Confidential

# Misdemeanor

- Any federal state or local criminal offense, if:

- maximum term of imprisonment authorized is for a period of more than 5 days but not more than one year,

- regardless of whether the jurisdiction in which the offense is committed classifies the offense as a misdemeanor.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

120

DEF - 00006768

# Misdemeanor (continued)

- A minor traffic offense, such as driving without a license, will not be considered a misdemeanor for the purposes of DACA.

- State law immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors.

    - Distinguish from federal immigration offenses.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

121

# Multiple Misdemeanors

- The requestor does not meet the guidelines for DACA consideration if convicted of three or more non-significant misdemeanors, unless USCIS determines there are exceptional circumstances.

- Misdemeanors occurring on the same day <u>or</u> arising out of the same act, omission, or scheme of misconduct, will only be <u>counted as one</u> misdemeanor for these purposes.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

122

DEF - 00006770

# Felony/Misdemeanor Definition

- If a court disposition specifically indicates that a conviction is for a "misdemeanor" or "felony" offense, ISOs must look at the statute to determine whether the offense is a misdemeanor or felony conviction for DACA purposes even if the court disposition uses the term "misdemeanor" or "felony" in the disposition.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

123

Confidential

DEF - 00006771

# Felony/Misdemeanor Definition and (continued)

- Federal law defines these terms based on the length of the maximum possible sentence, whereas individual States may define these terms based on other criteria.

- So a "misdemeanor" conviction under State law can still be a felony conviction for DACA purposes (e.g. California Penal Code 273.5 – conviction provides for 2, 3, or 4 years in prison or up to 1 year in county jail).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

124

DEF - 00006772

# "Wobbler Offenses"

- Some States may have a "Wobbler" provision, which allows the charge to be filed as either a "felony" or "misdemeanor" according to that State's definition of these terms.

- These provisions allow the same elements to be charged as a more or less serious crime before any adjudication of guilt is made. Which charge is selected then determines the possible range of sentences available. In some cases the decision of how to charge is made by the prosecutor, in others it is made by the court. Wobblers do not simply have a range of possible punishment; they effectively create two crimes, one of which is a felony and the other is a misdemeanor under state law.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

125

DEF - 00006773

# "Wobbler Offenses" (continued)

When a requestor has been convicted of a Wobbler, the adjudicator must first determine whether the crime was treated as a felony or as a misdemeanor.

After the nature of the charge has been determined, the adjudicator must then look at the maximum possible sentence that could have been given *under the charging provision selected* by the prosecutor or the court.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

126

DEF - 00006774

# "Wobbler Offenses" (continued)

- If the possible sentence could have been incarceration for more than 5 days but no more than one year, then it is a misdemeanor for DACA purposes, regardless of the time actually served.

- If the possible sentence could have been more than one year of incarceration, then it is a felony, regardless of the time actually served.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

127

# "Wobbler Offenses" (continued)

This is the same analysis used for generally determining whether a state crime is a federal misdemeanor or felony, but Wobblers require a preliminary step of determining which "level" of crime was actually charged.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

128

Confidential

DEF - 00006776

# Foreign Convictions

- Will generally not be treated as a disqualifying felony or misdemeanor.

- May be relevant to public safety concerns and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

129

DEF - 00006777

# Foreign Convictions (continued)

- Cases involving foreign convictions must be elevated for supervisory review.

- These cases are also considered novel and complex and should be referred to HQSCOPS via the RAG process prior to a final determination.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

130

# Determining Factors for EPS Concerns

The scope of criminal offenses deemed to be EPS concerns are described in the November 11, 2011 NTA memorandum and the accompanying MOA between USCIS and ICE.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

131

DEF - 00006779

# Determining Factors for EPS Concerns (continued)

The nature and severity of the underlying crime or in the case of multiple crimes, the totality of the crimes, are weighed heavily and are significant unfavorable factors in evaluating public safety concerns, regardless of the disposition of the crime(s).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

132

Confidential

DEF - 00006780

# Determining Factors for EPS Concerns (continued)

- For example, an individual with multiple arrests with no convictions could pose significant public safety concerns.

- Similarly, an individual arrested for multiple assaults or other violent crimes could be deemed a public safety risk.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

133

Confidential                                    DEF - 00006781

# Convictions

Defined in INA § 101(a)(48)(A) as:

- A formal judgment of guilt entered by a court, *or*

- If adjudication of guilt has been withheld, where:

  - a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; *and*

  - the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

134

Confidential

DEF - 00006782

# Formal Judgment of Guilt by Court

- The entry of guilt can be found on the record of conviction itself

- If the alien pled guilty, then there will be an indication of the plea and the court's finding of guilt



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

135

# Formal Judgment of Guilt by Court (continued)

- If the alien went to trial, then the conviction record should indicate that the defendant was found guilty by judge or jury

- Court records vary from jurisdiction to jurisdiction, but ISOs should look for plea, finding, entry or similar words relating to guilt or a no contest (*nolo contendere*) plea



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

136

# Formal Judgment of Guilt by Court (continued)

- Indication that entry of judgment of guilt was *not* made include words such as "withheld" or "deferred"



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

137

DEF - 00006785

# No Entry of Judgment of Guilt

- Sometimes called Continued without a Finding (CWOF); adjudication withheld; deferred adjudication, etc. Different jurisdictions use different terminology.

- If adjudication has been withheld, then to constitute a conviction, there must be 2 prongs satisfied:

    (1) Verdict, Plea or finding of guilt *and*

    (2) Punishment or restraint on liberty



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

138

Confidential                                                    DEF - 00006786

# Conviction - Pleas

If there is no formal judgment of guilt, then for the court's action to constitute a conviction:

- The defendant must plead guilty or the court must make a finding of guilt.

- A "*nolo contendere*" or "no contest" plea is still a guilty plea for immigration purposes.

- Therefore, a "deferred prosecution" or pre-trial diversion program that does not require the defendant to plead guilty or require the court to make any finding of guilt cannot constitute a conviction.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

139

DEF - 00006787

# Conviction - Punishment, Penalty, Restraint on Liberty

- Imposition of costs in a criminal case constitutes a form of punishment for INA § 101(a)(48)(A) definition of conviction. *Matter of Cabrera*, 24 I&N Dec. 459 (BIA 2008).

- Punishment might be fines.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

140

DEF - 00006788

# Conviction - Punishment, Penalty, Restraint on Liberty (continued)

- Probation, community supervision etc., is a restraint on liberty.

- Where the only consequence of a criminal judgment is a suspended non-incarceratory sanction, however, it may not constitute a conviction for immigration purposes. *Retuta v. Holder,* 591 F.3d 1181 (9th Cir. 2010) (a suspended fine was not a punishment or penalty sufficient to be a conviction).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

141

DEF - 00006789

# Examples of Possible Valid Convictions under the INA

- <u>Pleas</u>.  An Alford plea, no contest plea and nolo contendere plea all satisfy the "finding of guilt" requirement for a conviction.  *See Abimbola v. Ashcroft,* 378 F.3d 173 (2d Cir. 2004)(Alford plea is a guilty plea and therefore may form the basis of a conviction).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

142

DEF - 00006790

# Examples of Possible Valid Convictions under the INA (continued)

- <u>Deferred Adjudication</u>.  Both the Board and the federal courts have held that a deferred adjudication is a conviction for immigration purposes where it involves an admission of guilt and limitations on the defendant's liberty.  *See Matter of Punu,* 22 I&N Dec. 224 (BIA 1998) (Texas deferred adjudication is a conviction).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

143

DEF - 00006791

# Examples (Continued)

- One court has held that a Massachusetts conviction, in which the defendant admitted to facts sufficient for a finding of guilt, with a continuation without a finding (CWOF), and with the imposition of a restitution order, is a conviction under the INA. *De Vega v. Gonzales*, 503 F.3d 45 (1st Cir. 2007).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

144

DEF - 00006792

# Examples (Continued)

- A "guilty filed" disposition under Massachusetts law satisfies the finding of guilt requirement and may constitute a conviction under the INA. *Griffiths v. INS*, 243 F.3d 45 (1st Cir. 2001).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

145

Confidential

DEF - 00006793

# Examples (Continued)

- <u>Court Martial</u>.  A judgment of guilt that has been entered by a general court-martial of the United States Armed Forces qualifies as a conviction. *Matter of Rivera Valencia*, 24 I&N Dec. 484 (BIA 2008).

- <u>Probation Before Judgment</u>.  A court's grant of probation before judgment generally constitutes a conviction under the INA.  *See generally*, *Yanez-Popp v. INS,* 998 F.2d 231 (4th Cir. 1993).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

146

# Examples (Continued)

- <u>Guilty Pleas Held in Abeyance</u>.  A guilty plea held in abeyance may satisfy the statutory definition of conviction. *U.S. v. Zamudio,* 314 F.3d 517 (10th Cir. 2002).



U.S. Citizenship
and Immigration
Services

Confidential

DEF - 00006795

# No Conviction

- New York's Pretrial Diversion Agreement (PDA) is generally not considered a conviction because guilt has not been established by trial, plea or admission; nor have sufficient facts been admitted to support a finding of guilt. *Iqbal v. Bryson,* 604 F.Supp.2d 822 (E.D.Va. 2009).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

148

DEF - 00006796

# No Conviction (continued)

- Review the actual diversionary agreement to see whether there was any type of admission or finding of guilt in the written agreement.  Generally there will not be, but there are some states where admission of guilt is required for entry into the program (fairly rare to find these).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

149

Confidential

# Convictions - Appeals

A conviction is effective for immigration purposes, including DACA, while it is on direct appeal.

- *See Plane v. Holder,* 652 F.3d 991 (9th Cir. 2011), rehearing en banc denied, 2012 WL 1994862 (2012).

- If the conviction is ultimately reversed on appeal, the DACA requestor is free to file a new request for DACA, with fee, if otherwise meets the guidelines and merits a favorable exercise of discretion.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

150

DEF - 00006798

# Vacated / Expunged Convictions

Generally speaking, convictions may be vacated for one of two reasons

- A conviction may be vacated due to a procedural or substantive defect in the conviction itself

- A conviction may be vacated /expunged to provide post-conviction relief, such as a rehabilitative provision that removes the stigma of a conviction or an expungement for youth offenders or first-time offenders.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

151

DEF - 00006799

# Vacated / Expunged Convictions (continued)

- FOR PURPOSES OF DACA ONLY, these expunged or vacated convictions will NOT be treated as disqualifying felonies or misdemeanors.

- Case-by-case assessment must occur to determine whether the person poses a threat to public safety and whether the exercise of prosecutorial discretion is warranted.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

152

DEF - 00006800

# Vacated / Expunged Convictions (continued)

- These cases should be elevated for supervisory review

- Novel and complex cases should be referred to HQSCOPS via the RAG process prior to a final determination.


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

153

DEF - 00006801

# Juveniles

- Juvenile delinquency adjudication is not a conviction. *Matter of Devison*, 22 I&N Dec. 1362 (BIA 2001).

- A conviction for immigration purposes includes conviction of an alien under age 18 who was charged as an adult.

- Juvenile delinquency may impact public safety issues when considering a request under DACA

- May also be considered in determining whether the exercise of prosecutorial discretion is warranted.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

154

DEF - 00006802

# Juveniles (continued)

- An offense adjudicated as a juvenile delinquency is not automatically disqualifying for DACA purposes. Therefore, the ISO must evaluate the criminal history on a case-by-case basis to determine whether, under the particular circumstances, discretion is warranted to defer removal under DACA.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

155

DEF - 00006803

# Juveniles (continued)

- If the requestor has not demonstrated that favorable discretion is warranted, then the ISO should prepare a NOID using the template titled **Juvenile Delinquency.** The ISO should obtain supervisory review AND clearance from local counsel before issuing a NOID using this call up.

- If local counsel cites factors that support *not* issuing the NOID, the case must be referred to HQSCOPS through the RAG process for resolution.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

156

DEF - 00006804

# Juveniles (continued)

- Centers are no longer required to elevate juvenile delinquency cases to HQ SCOPS attention unless they encounter a novel, complex or sensitive case.

- If the response to the NOID is insufficient to overcome the grounds of the intended denial, the ISO should deny the DACA request using call up **DACA 511 – DISCRETIONARY** from the Appendix F.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

157

DEF - 00006805

# Pardons

- A full and final unconditional U.S. pardon by the President or by the Governor of a state can erase a conviction for immigration purposes. *See Matter of Nolan,* 19 I&N Dec. 539 (BIA 1988).

- Underlying offense may impact public safety issues when considering a request under DACA

- May be considered in determining whether the exercise of prosecutorial discretion is warranted.

- A limited pardon will not erase conviction for immigration purposes.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

158

# Pending Criminal Proceedings

If criminal proceedings are still pending for a potentially disqualifying criminal offense:

- For EPS cases, follow the guidance in the SOP (Chapter 8, Section G, Handling Procedures, EPS Cases).



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

159

DEF - 00006807

# Pending Criminal Proceedings (continued)

- For Non-EPS cases where the requestor has been arrested for a potentially disqualifying criminal offense, but the court disposition is currently unavailable because the criminal proceedings are still pending, the BCU DACA Team will issue an RFE (DACA 151 Call Up). The BCU DACA Team will withhold adjudication until the requestor submits the court disposition <u>or</u> receives authorization from SCOPS to deny the case absent the court disposition.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

160

DEF - 00006808

# Pending Criminal Proceedings (continued)

- The BCU DACA Team will initially provide 87 days for the requestor to respond, but may issue a second RFE (DACA 151 Call Up) if the requestor fails to provide the final court disposition within 87 days because the criminal proceedings have not concluded.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

161

# Pending Criminal Proceedings Deferred Prosecution, Pre-Trial Diversion or Rehabilitative Programs

- Deferred prosecution, pretrial diversion or rehabilitative programs that do not require the defendant to plead guilty or nolo contendere or require the court to make any finding of guilt do not constitute a conviction for immigration purposes. However, for DACA purposes, certain pending criminal charges may raise public safety concerns which should be factored into whether or not a requestor merits a favorable exercise of prosecutorial discretion.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

162

DEF - 00006810

# Deferred Prosecution, Pre-Trial Diversion or Rehabilitative Programs (continued)

- 1) If a requestor's court case indicates criminal charges will remain pending for <u>more than 6 months</u> from the date a Center receives the related court documents (e.g., in the initial filing or in response to an RFE), please follow the guidance outlined below:

  - a) Each request should be evaluated on a case-by-case basis, taking into account the totality of the evidence to determine whether the requestor warrants a favorable exercise of prosecutorial discretion.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

163

DEF - 00006811

# Deferred Prosecution, Pre-Trial Diversion or Rehabilitative Programs (continued)

- b) The criminal charges specific to each case should be thoroughly reviewed to determine whether they raise a public safety concern. Additionally, ISOs should determine whether a potential conviction of the charge(s) within the file would constitute a felony, significant misdemeanor, or three or more other misdemeanors as this may also impact whether prosecutorial discretion is warranted.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

164

DEF - 00006812

# Deferred Prosecution, Pre-Trial Diversion or Rehabilitative Programs (continued)

- c) A recommended decision on the DACA request should be forwarded for supervisory approval and clearance from local counsel before a final determination is made.

- d) All denials of Form I-821D for cases that fall under the scenario described above should be processed using call up **DACA 511 - DISCRETIONARY** from the Appendix F.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

165

DEF - 00006813

# Pending Criminal Proceedings Deferred Prosecution, Pre-Trial Diversion or Rehabilitative Programs (continued)

- 2) Alternately, if a requestor's court case indicates the pending criminal charges will be resolved <u>within 6 months</u> from the date a Center receives the related court documents (e.g., in the initial filing or in response to an RFE), Centers should withhold adjudication of the DACA request to await the outcome of the court proceedings and follow the guidance outlined below:



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

166

DEF - 00006814

# Pending Criminal Proceedings Deferred Prosecution, Pre-Trial Diversion or Rehabilitative Programs (continued)

- a) If the requestor successfully complies with the court order and the charges are subsequently dropped, the case should be adjudicated on its merits taking into account the totality of the evidence.

- b) If the requestor fails to comply with the court order, resulting in a disqualifying conviction for DACA purposes, the case should be processed accordingly.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

167

Confidential

DEF - 00006815

# Pending Criminal Proceedings Deferred Prosecution, Pre-Trial Diversion or Rehabilitative Programs (continued)

- The guidance above also applies to cases in which court proceedings have been repeatedly continued to a future date or have been continued indefinitely.

- Centers are no longer required to elevate these cases to HQSCOPS attention unless they encounter a novel, complex or sensitive case.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

168

DEF - 00006816

# Time in Custody

Credit for time actually served pre-trial counts as time in custody where the credit is against an imposed sentence of confinement (as opposed to a credit to reduce a period of noncustodial probation or to reduce a fine). Where the credit for pre-sentence confinement is more than the actual days served, look to the actual days served for determining time in custody.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

169

DEF - 00006817

# Crimes Involving Domestic Violence

ISOs should treat any misdemeanor offense where the underlying facts involve domestic violence as a significant misdemeanor for DACA purposes.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

170

DEF - 00006818

# Offenses of Driving After Consuming Alcohol

A criminal offense of driving after consuming alcohol is only a significant misdemeanor for DACA purposes if it is a misdemeanor as defined by federal law (i.e. maximum term of imprisonment authorized is more than 5 days but less than 1 year), and the statute requires, for a finding of guilt, that either:



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

171

DEF - 00006819

# Offenses of Driving After Consuming Alcohol (continued)

- 1. The person was intoxicated, impaired or under the influence; or

- 2. The person has a certain level of blood alcohol concentration (BAC), other than a negligible amount that can be measured (such as .01%).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

172

DEF - 00006820

# Offenses of Driving After Consuming Alcohol (continued)

- Examples of alcohol-related driving offenses that are <u>not</u> significant misdemeanors for DACA purposes include, but are not limited to:

  - · Wisconsin offense for Operating While Under the Influence (§346.63(1)(a)) – not a significant misdemeanor because it carries no prison sentence and therefore does not meet the definition of a misdemeanor under federal law.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

173

DEF - 00006821

# Offenses of Driving After Consuming Alcohol (continued)

- California offense for Reckless Driving Involving Alcohol (§23103.5) – not a significant misdemeanor because it requires neither a particular BAC level nor intoxication/impairment. Instead, the statute defines the offense as driving where alcohol is involved.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

174

DEF - 00006822

# Offenses of Driving After Consuming Alcohol (continued)

- If a DACA requestor has been convicted of an offense of driving after consuming alcohol, but it is not considered a significant misdemeanor for DACA purposes, follow the guidance in Chapter 8, Section G of the DACA SOP – although the conviction alone is not automatically disqualifying, consider the entire record, including all issues of criminality, when determining whether prosecutorial discretion should be exercised.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

175

DEF - 00006823

# Exceptional Circumstances

- The requestor must specifically ask for the exception and must fully document the exceptional circumstances.

- Criminal history and activities compromising national security and public safety carry considerable weight in the totality of the circumstances analysis.

- Requires truly exceptional circumstance to overcome.

- <u>The determination that exceptional circumstances exist for deferral of removal under DACA will be made only at the HQ level via the RAG process and in extremely rare cases.</u>



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

176

Confidential

DEF - 00006824

# Handling Criminality, National Security or Public Safety Concerns

The evaluation of criminal issues with respect to a DACA request is done after BCU vetting of the TECS check and the FD 258 fingerprint results from the FBI. If the up-front TECS check reveals a hit, the DACA request goes to BCU/Triage.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

177

DEF - 00006825

# DACA Termination



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

178

Confidential

# DACA Termination – General Ineligibility

DHS can terminate deferred action at any time, at the agency's discretion.

## If removal under DACA was improperly deferred

- Reopen the case on Service Motion and issue a Notice of Intent to Terminate (NOIT).

- The DACA requestor has 33 days to respond to the NOIT and provide a brief or statement contesting the grounds cited in the intent to terminate.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

179

# DACA Termination – General Ineligibility (continued)

- If the adverse grounds are not overcome, or no response is received to the NOIT, the ISO should prepare a termination letter and seek supervisory review of the draft termination letter prior to issuance.

- ISOs must ensure C3 is updated using the appropriate HACs.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

180

# DACA Termination – Fraud or Misrepresentation

- If an ISO subsequently learns that a DACA requestor committed fraud related to seeking the DACA request, the ISO should reopen the case on Service Motion and issue a NOIT indicating the fraud/ misrepresentation.

- The decision to issue a NOIT based on fraud should be supported by a fully documented Statement of Findings (SOF) and any other relevant documents/information.

- The requestor is allowed 33 days to respond to the NOIT.


U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

181

DEF - 00006829

# DACA Termination – Fraud or Misrepresentation (continued)

- If the adverse grounds are not overcome, or no response is received to the NOIT, the ISO should prepare a termination letter and seek supervisory review of the draft termination letter prior to issuance.

- The terminated DACA case must be recorded in FDNS-DS.

- ISOs must ensure C3 is updated using the appropriate HACs.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

182

DEF - 00006830

# DACA Termination – Automatic Termination

- If an NTA is issued by ICE or CBP, deferred action under DACA terminates automatically as of the date the NTA was issued.

- Travel outside the United States after receiving DACA without first receiving advance parole, automatically terminates deferred action under DACA.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

183

DEF - 00006831

# DACA Termination – Not Automatic Termination

- DACA and employment authorization will be terminated if it comes to the attention of DHS that the DACA Recipient committed a disqualifying criminal offense, or otherwise poses a threat to national security or public safety.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

184

DEF - 00006832

# DACA Termination – Not Automatic Termination (continued)

- If after consulting with ICE, USCIS determines that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with DHS' enforcement priorities, and ICE does not plan to issue an NTA, the ISO should refer the case to HQSCOPS via the RAG process, though the normal chain of command, to determine whether or not a NOIT is appropriate.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

185

DEF - 00006833

# DACA Termination – Not Automatic Termination (continued)

- If it is determined that the case warrants final termination, the ISO will issue call up DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated] from the Appendix I.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

186

DEF - 00006834

# About this Presentation

Author:  Service Center Operations

Date of last revision:  April, 2015

This presentation is valid only as of the date of the last revision.

This presentation contains no sensitive Personally Identifiable Information (PII).



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

187

DEF - 00006835

# Disclaimer

This presentation is intended solely to provide training and guidance to USCIS personnel in performing their duties relative to the adjudication of immigration benefits. It is not intended to, does not, and may not be relied upon to create or confer any right(s) or benefit(s), substantive or procedural, enforceable at law by any individual or other party in benefit applications before USCIS, in removal proceedings, in litigation with the United States, or in any other form or manner. This presentation does not have the force of law, or of a DHS directive.



U.S. Citizenship
and Immigration
Services

FOUO – Law Enforcement Sensitive

188

# Dissemination

This presentation may not be reproduced or further disseminated without the express written consent of Service Center Operations.

Please contact Service Center Operations for additional information.



U.S. Citizenship and Immigration Services

FOUO – Law Enforcement Sensitive

189

DEF - 00006837

# DEF-INTERV.

# EX. 248

| | |
|---|---|
| **From:** | Tran, Linhdieu A <████████████@uscis.dhs.gov> |
| **Sent:** | Thursday, May 7, 2013 5:06 PM |
| **To:** | Bui, Van Khanh H <████████████@uscis.dhs.gov> |
| **Cc:** | Van-Wagenen, Lowell F <████████████@uscis.dhs.gov>; McGuire, Regina A <████████████uscis.dhs.gov>; Smith, Andrea G <████████████@uscis.dhs.gov>; Onuk, Semra K <████████████@uscis.dhs.gov> |
| **Subject:** | FW: DACA requestors in removal proceedings |
| **Attach:** | RE_ DACA immigration arrests.msg |

**From:** Nguyen, Carolyn Q
**Sent:** Tuesday, February 05, 2013 4:45 PM
**To:** Walter, Matthew R; Van-Wagenen, Lowell F; Aquino, Kevin R; Perovano, Brian A; Aquino, Leo A; Chi, Gloria; Dewitty-Davis, Janine L; Ecle, Lynette C; Escolano, Henry; Felix, Raquel J; Gutierrez, Maylene R; Lee, Christine J; Rangaswamy, Jay; Tailor, Anisa M; Tran, Linhdieu A
**Subject:** FW: DACA requestors in removal proceedings

Hi,

Thanks, Matt, for writing this up!

Just to clarify – Matt asked me if a person under removal proceedings can file for DACA. The answer to that question is yes. Please refer to the below excerpt from the SOP.

I cautioned, however, that if an individual was placed under removal proceedings because of criminal issues, then those cases would be adjudicated by BCU. I mentioned EOIR as an avenue (besides the fingerprint result) to determine if a person was placed under proceedings because of his criminal reasons.

My response was not intended to supersede the attached guidance. For now, SCOPS wants all arrests, including the immigration violations, to be adjudicated by BCU.

Please let me know if we need to discuss. Thanks.

### E. Removal Proceedings

| | |
|---|---|
| Removal Proceedings | Individuals in removal proceedings may file a DACA request, even if they are under age 15, as long as they were not born after June 15, 1981. As explained more fully below, removal proceedings commence with the filing of Form I-862, Notice to Appear, with the Immigration Court and terminate in one of several ways. See 8 C.F.R. §245.1(c)(8)

If a DACA requestor has been or is currently in deportation, exclusion, or removal proceedings, he/she may have another A-file, which should have been discovered by the officer during the initial review of the I-821D and/or Record of Arrest and Prosecution (RAP) sheet (if any). Please see the "A-File" section.

There are several ways to determine if the DACA requestor:
- Was or is in proceedings;
- What the outcome of the proceeding was; and
- If he/she was previously removed.

Systems checks include CIS and EARM. CIS checks, when required, can be helpful in determining the Class of Admission (CoA), the requestor's status, and file location, among other useful information. |

**From:** Walter, Matthew R
**Sent:** Tuesday, February 05, 2013 3:48 PM
**To:** Chi, Gloria; Dewitty-Davis, Janine L; Ecle, Lynette C; Escolano, Henry; Felix, Raquel J; Gutierrez, Maylene R; Lee, Christine J; Rangaswamy, Jay; Tailor, Anisa M; Tran, Linhdieu A; Aquino, Kevin R; Perovano, Brian A; Van-Wagenen, Lowell F
**Subject:** DACA requestors in removal proceedings

Good afternoon,

Officers might be seeing more cases where the DACA requestor is currently in removal proceedings or was in removal proceedings in

DEF - 00000715

the past.

Carolyn said that officers should check the EOIR screen in CIS (PF11) to verify the specific INA charges that were issued for the NTA. As long as the charges do not relate to any criminality issues and the requestor is not currently detained, then the officer can review the case without sending to BCU. Criminality issues are usually listed as INA § 237 deportability grounds, and officers can review EARM/ADIS to verify whether the requestor is detained. I don't think we are seeing many, if any, detained requestors.

In this example below, the charge is 212(a)(6)(A)(i) – an alien present in the U.S. without being admitted or paroled. This isn't a criminal charge so the officer can review without sending to BCU. If the charge were 237(C) for a firearm offense, for example, then the officer would refer the case to BCU.



DEF - 00000716

# DEF-INTERV.

# EX. 249

Title    Known or Suspected Drug Cartel Membership

Question **How should we handle DACA requests when there is a record that the requestor is a known or suspected drug cartel member?**

Answer   The BCU DACA Team should handle any DACA requests when the record indicates that the requestor was, is or may be a member of a drug cartel. Supervisors must refer the following cases to HQSCOPS through the normal chain of command:

- All DACA requests filed by a known or suspected drug cartel member the Center seeks to approve; and
- Any novel, complex, or sensitive DACA requests filed by a known or suspected drug cartel member the Center seeks to deny.

Therefore, if there is reason to believe the DACA requestor is a known or suspected drug cartel member because the record (e.g., a TECS record, as shown in the image below) indicates that the DACA requestor is under investigation for, or has been arrested for (without disposition), or has been convicted of a crime involving activities that suggest the alien is a drug cartel member or a suspected drug cartel member, the DACA BCU Team should de-conflict further with the record owner. If it is determined that the alien is a drug cartel member or a suspected drug cartel member, then the BCU will deny the request as a matter of discretion using the discretionary checkbox, "*You have not established that you warrant a favorable exercise of prosecutorial discretion,*" and refer the case to ICE.



DEF - 00000896

# DEF-INTERV.

# EX. 250

| From: | Dunning, Pacentia M <​ ​@uscis.dhs.gov> |
|---|---|
| Sent: | Tuesday, January 9, 2018 4:11 PM |
| To: | Van-Wagenen, Lowell F <​ ​@uscis.dhs.gov>; Wang, Jerry <​ ​@uscis.dhs.gov>; Gapuz, Brian Y <​ ​@uscis.dhs.gov> |
| Subject: | FW: SCOPS' guidance on issuing courtesy DACA termination notices and NOAs |

FYI...

Thank you,

*Pacentia M. Dunning*

**From:** Sun, Catherina C
**Sent:** Tuesday, January 09, 2018 1:01 PM
**To:** Dunning, Pacentia M; Gooselaw, Kurt G; Nguyen, Van T; Felix, Raquel J; Garcia, Raul; Johnstone, Belinda; Rafiee-Tari, Solmaz; Simon, Karl J; Smith, Andrea G
**Subject:** SCOPS' guidance on issuing courtesy DACA termination notices and NOAs

For your awareness.

Thank you,

Catherina

**From:** King, Alexander R
**Sent:** Tuesday, January 09, 2018 8:26 AM
**To:** Vingua, Joanne M; Lewis, Theodore R; Sun, Catherina C
**Cc:** Robinson, Brandon M; Umoru, Victoria E; Garon, Michielle S
**Subject:** FW: DACA Termination ( 6 108) - FOR REVIEW - NTA - only traffic conviction and a pending Poss Marijuana

HI CSC,

Please see the below regarding the issuance of the courtesy DACA termination notice when ICE/CBP issues an NTA on a DACA recipient who still meets the threshold DACA guidelines. The NSC is seeing the majority of these cases, but I understand that the CSC may receive these as well, so I wanted to keep you all in the loop.

Please let us know if you have any questions.

Thanks,
Alex

**From:** Shafii-Stier, Sara A
**Sent:** Tuesday, January 09, 2018 11:18 AM
**To:** King, Alexander R; DeBoer, Allan S; Posvar, Sarah C; Wagener, Carol M; Jenkins, Jennifer L; Jacobson, Neil M; Smith, Kevin T
**Cc:** Garon, Michielle S; Robinson, Brandon M; Umoru, Victoria E
**Subject:** RE: DACA Termination ( 6 108) - FOR REVIEW - NTA - only traffic conviction and a pending Poss Marijuana

Good morning, Alex -

┌─────────────────────────────┐
│             DP              │ Going forward, we will use PCQS to verify that the NTA has been filed with the court prior to issuing the Notice of Action. We also
└─────────────────────────────┘
appreciate that you are ┌──── DP ────┐.

Thanks for your continued support,
Sara

Sent with Good (www.good.com)

**From:** King, Alexander R
**Sent:** Tuesday, January 09, 2018 9:34:51 AM
**To:** Shafii-Stier, Sara A; DeBoer, Allan S; Posvar, Sarah C; Wagener, Carol M; Jenkins, Jennifer L; Jacobson, Neil M; Smith, Kevin T
**Cc:** Garon, Michielle S; Robinson, Brandon M; Umoru, Victoria E
**Subject:** RE: DACA Termination ( 6 108) - FOR REVIEW - NTA - only traffic conviction and a pending Poss Marijuana

HI NSC,

┌─────────────────────────────────────────────────────────────┐
│                            DP                               │
└─────────────────────────────────────────────────────────────┘
┌─────────────────────────────────────────────────────────────┐
│                            DP                               │
└─────────────────────────────────────────────────────────────┘
┌───┐ As you know 8 C.F.R. 274a.14(a)(1)(ii) provides that employment authorization once deportation proceedings are instituted. Therefore, while we continue to explore this issue, WATS requests
│ DP│ that the NSC resume issuing the courtesy automatic termination notice regardless of the underlying reason for issuance of the NTA.
└───┘

However, since 274a.14(a)(1)(ii) provides for automatic termination of employment authorization once removal proceedings are instituted (i.e. NTA filed with court) ┌──── DP ────┐

┌─────────────────────────────────────────────────────────────┐
│                        DP                        │
│                                                             │
│                                                             │
│                            DP                               │
│                                                             │
│                                                             │
└─────────────────────────────────────────────────────────────┘

Confidential

# DP

Please let us know if you have any questions in the interim.

Thanks,
Alex

**From:** Shafii-Stier, Sara A
**Sent:** Monday, January 08, 2018 12:37 PM
**To:** HQSCOPSDACA
**Cc:** Robinson, Brandon M; Umoru, Victoria E; Garon, Michielle S; DeBoer, Allan S; Posvar, Sarah C; Wagener, Carol M; Jenkins, Jennifer L
**Subject:** FW: DACA Termination (███████████████ 6 108) - FOR REVIEW - NTA - only traffic conviction and a pending Poss Marijuana
**Importance:** High

Good morning,

IOE████9514 - Approved 9/19/2017
A████6108 ████████████

NSC would like to provide visibility on another NTA which was issued by ICE based upon a conviction for a minor traffic offense and a pending misdemeanor charge for Possession of Marijuana Less than 1 oz., which carries a maximum possible sentence of up to 12 months jail. The requestor has been in ICE custody since October. NSC will refrain from issuing the NOA or updating ELIS until we receive further guidance. Below is the original request from ACC Yoon, and attached you will find the I-862 and I-213.

Thank you,

Sara A. Shafii-Stier | Supervisory Immigration Services Officer
USCIS Nebraska Service Center | DACA Background Check Unit | RM 151A | TR0959
☎: (402) 219████ | Cell: 402-429████ ✉: ████████@uscis.dhs.gov

**From:** Yoon, Connie [mailto:Connie.Yoon@ice.dhs.gov]
**Sent:** Monday, January 08, 2018 7:35 AM
**To:** NSC DACA BCU Terminations
**Subject:** DACA Termination ████████████████ 6 108)
**Importance:** High

Good morning,

I'm writing to request a notice of termination in this case. DACA was granted on 09/19/2017, valid until 09/18/2019. He was arrested for Possession of Marijuana and a traffic offense on 10/20/2017, which is currently pending. An NTA was issued in his case on 10/24/2017 (see attached).

He is currently detained by ICE-ERO at the Stewart Detention Center in Lumpkin, GA.

If you need any additional information, please don't hesitate to contact me.

Thank you in advance for your assistance.

**Connie K. Yoon**
*Assistant Chief Counsel*
Department of Homeland Security
U.S. Immigration & Customs Enforcement
Office of the Chief Counsel- Atlanta
Stewart Detention Center
146 CCA Road
P.O. Box 248
Lumpkin, Georgia 31815
Direct: (229) 838-████
Fax: (229) 838████
████████@ice.dhs.gov

This communication and any attachments may contain confidential and/or sensitive attorney/client privileged information or attorney work product and/or law enforcement sensitive information. It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient. Please notify the sender if this email has been misdirected and immediately destroy all originals and copies. Furthermore do not print, copy, re-transmit, disseminate, or otherwise use this information. Any disclosure of this communication or its attachments must be approved by the Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 USC §§ 552(b)(5), (b)(7).

DEF - 00001106