**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:18-CV-68 |
| UNITED STATES OF AMERICA, et al., | Honorable Andrew Hanen |
| *Defendants*; | |
| KARLA PEREZ, et al., | |
| *Intervenors-Defendants* | |

**PROPOSED AMICI'S APPENDIX OF AUTHORITIES**

**Statutes**

Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, tit. II, § 203(a), 111 Stat. 2193 (1997) ........................................................................1

Pub. L. No. 105-139, 111 Stat. 2644 (1997)........................................................11

Pub. L. No. 106-386, 114 Stat. 1464 (2000)........................................................13

REAL ID Act of 2005, Pub. L. No. 109-13, div. B, 119 Stat. 231 .......................34

The Violent Crime Control and Law Enforcement Act of 1994, Tit. IV, Pub. L. 103-322 (1994)...................................................................................................................39

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 238, 122 Stat. 5044.................................................................43

**Regulations**

8 C.F.R. § 214.11 .................................................................................................46

8 C.F.R. § 214.14 .................................................................................................59

8 C.F.R. § 274a.12(c)(14) ....................................................................................69

**Other Authorities**

i

Battered Women Immigrant Protection Act: Hearings on H.R. 3083 Before the Subcomm. on Immigration and Claims of the H. Comm. on the Judiciary, 106th Cong. (July 20, 2000) ...................................................................................................77

Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status, 81 Fed. Reg. 92266 (Dec. 19, 2016)...................................86

H.R. Rep. No. 104-828 (1996)...............................................................................88

Memorandum for Johnny N. Williams, Executive Associate Commissioner, Office of Field Operations, from Stuart Anderson, INS, Re: Deferred Action for Aliens with Bona Fide Applications for T Nonimmigrant Status at 1 (May 8, 2002)........................91

Memorandum for Michael A. Pearson, Executive Associate Commissioner, INS, from Michael D. Cronin, Acting Executive Associate Commissioner, INS, Re: Victims of Trafficking and Violence Protection Act of 2000 (VTVPA) Policy Memorandum #2— "T" and "U" Nonimmigrant Visas (Aug. 30, 2001) ...........................................93

Memorandum for the Director, Vermont Service Center, INS, from William R. Yates, USCIS, Re: Centralization of Interim Relief for U Nonimmigrant Status Applicants (Oct. 8, 2003)....................................................................................................99

Memorandum from Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Servs., Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children (June 15, 2012)................................................................................................106

New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014 (Sept. 17, 2007).........................................................109

New Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status, 67 Fed. Reg. 4784 (Jan. 31, 2002)............................139

Paul W. Virtue, Supplemental Guidance on Battered Alien Self-petitioning Process and Related Issues Memorandum, U.S. Dep't of Justice, Immigration and Naturalization Service (May 6, 1997)..........................................................................................142

Petition to Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant; Self-Petitioning for Certain Battered or Abused Spouses and Children, 61 Fed. Reg. 13062 (Mar 26, 1996).......................................................149

111 STAT. 2160          PUBLIC LAW 105–100—NOV. 19, 1997

Public Law 105–100
105th Congress

## An Act

Nov. 19, 1997
[H.R. 2607]

Making appropriations for the government of the District of Columbia and other activities chargeable in whole or in part against the revenues of said District for the fiscal year ending September 30, 1998, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the District of Columbia for the fiscal year ending September 30, 1998, and for other purposes, namely:

District of
Columbia
Appropriations
Act, 1998.

### TITLE I—FISCAL YEAR 1998 APPROPRIATIONS

### FEDERAL FUNDS

#### FEDERAL PAYMENT FOR MANAGEMENT REFORM

For payment to the District of Columbia, as authorized by section 11103(c) of the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law 105–33, $8,000,000, to remain available until September 30, 1999, which shall be deposited into an escrow account of the District of Columbia Financial Responsibility and Management Assistance Authority and shall be disbursed from such escrow account pursuant to the instructions of the Authority only for a program of management reform pursuant to sections 11101–11106 of the District of Columbia Management Reform Act of 1997, Public Law 105–33.

#### FEDERAL CONTRIBUTION TO THE OPERATIONS OF THE NATION'S CAPITAL

For a Federal contribution to the District of Columbia toward the costs of the operation of the government of the District of Columbia, $190,000,000, which shall be deposited into an escrow account held by the District of Columbia Financial Responsibility and Management Assistance Authority, which shall allocate the funds to the Mayor at such intervals and in accordance with such terms and conditions as it considers appropriate to implement the financial plan for the year: *Provided,* That these funds may be used by the District of Columbia for the costs of advances to the District government as authorized by section 11402 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law 105–33: *Provided further,* That not less than $30,000,000 shall be used by the District of Columbia to repay the accumulated general fund deficit.



AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

PUBLIC LAW 105–100—NOV. 19, 1997          111 STAT. 2193

equal to 75 percent of the amount of the annual payment for each public charter school determined by using the formula established pursuant to section 2401(b) to a bank designated by such school.

"(ii) REDUCTION IN CASE OF NEW SCHOOL.—In the case of a public charter school that has received a payment under subsection (b) in the fiscal year immediately preceding the fiscal year in which a transfer under clause (i) is made, the amount transferred to the school under clause (i) shall be reduced by an amount equal to 75 percent of the amount of the payment under subsection (b).".

(2) FINAL PAYMENT.—Section 2403(a)(2)(B) of the District of Columbia School Reform Act (Public Law 104–134; 110 Stat. 1321–139; D.C. Code 31–2853.43(a)(2)(B)) is amended—

(A) in clause (i)—

(i) by inserting "IN GENERAL.—" before "Except"; and

(ii) by striking "clause (ii)," and inserting "clauses (ii) and (iii),";

(B) in clause (ii), by inserting "ADJUSTMENT FOR ENROLLMENT.—" before "Not later than March 15, 1997,"; and

(C) by adding at the end the following:

"(iii) REDUCTION IN CASE OF NEW SCHOOL.—In the case of a public charter school that has received a payment under subsection (b) in the fiscal year immediately preceding the fiscal year in which a transfer under clause (i) is made, the amount transferred to the school under clause (i) shall be reduced by an amount equal to 25 percent of the amount of the payment under subsection (b).".

This title may be cited as the "District of Columbia Appropriations Act, 1998".

## TITLE II—CLARIFICATION OF ELIGIBILITY FOR RELIEF FROM REMOVAL AND DEPORTATION FOR CERTAIN ALIENS

SEC. 201. SHORT TITLE.—This title may be cited as the "Nicaraguan Adjustment and Central American Relief Act".

SEC. 202. ADJUSTMENT OF STATUS OF CERTAIN NICARAGUANS AND CUBANS. (a) ADJUSTMENT OF STATUS.—

(1) IN GENERAL.—Notwithstanding section 245(c) of the Immigration and Nationality Act, the status of any alien described in subsection (b) shall be adjusted by the Attorney General to that of an alien lawfully admitted for permanent residence, if the alien—

(A) applies for such adjustment before April 1, 2000; and

(B) is otherwise eligible to receive an immigrant visa and is otherwise admissible to the United States for permanent residence, except in determining such admissibility the grounds for inadmissibility specified in paragraphs (4), (5), (6)(A), and (7)(A) of section 212(a) of the Immigration and Nationality Act shall not apply.

(2) RELATIONSHIP OF APPLICATION TO CERTAIN ORDERS.—An alien present in the United States who has been ordered

Nicaraguan Adjustment and Central American Relief Act.
8 USC 1101 note.
8 USC 1255 note.

111 STAT. 2194        PUBLIC LAW 105–100—NOV. 19, 1997

excluded, deported, removed, or ordered to depart voluntarily from the United States under any provision of the Immigration and Nationality Act may, notwithstanding such order, apply for adjustment of status under paragraph (1). Such an alien may not be required, as a condition of submitting or granting such application, to file a separate motion to reopen, reconsider, or vacate such order. If the Attorney General grants the application, the Attorney General shall cancel the order. If the Attorney General renders a final administrative decision to deny the application, the order shall be effective and enforceable to the same extent as if the application had not been made.

(b) ALIENS ELIGIBLE FOR ADJUSTMENT OF STATUS.—

(1) IN GENERAL.—The benefits provided by subsection (a) shall apply to any alien who is a national of Nicaragua or Cuba and who has been physically present in the United States for a continuous period, beginning not later than December 1, 1995, and ending not earlier than the date the application for adjustment under such subsection is filed, except an alien shall not be considered to have failed to maintain continuous physical presence by reason of an absence, or absences, from the United States for any periods in the aggregate not exceeding 180 days.

(2) PROOF OF COMMENCEMENT OF CONTINUOUS PRESENCE.— For purposes of establishing that the period of continuous physical presence referred to in paragraph (1) commenced not later than December 1, 1995, an alien—

(A) shall demonstrate that the alien, prior to December 1, 1995—

(i) applied to the Attorney General for asylum;

(ii) was issued an order to show cause under section 242 or 242B of the Immigration and Nationality Act (as in effect prior to April 1, 1997);

(iii) was placed in exclusion proceedings under section 236 of such Act (as so in effect);

(iv) applied for adjustment of status under section 245 of such Act;

(v) applied to the Attorney General for employment authorization;

(vi) performed service, or engaged in a trade or business, within the United States which is evidenced by records maintained by the Commissioner of Social Security; or

(vii) applied for any other benefit under the Immigration and Nationality Act by means of an application establishing the alien's presence in the United States prior to December 1, 1995; or

(B) shall make such other demonstration of physical presence as the Attorney General may provide for by regulation.

(c) STAY OF REMOVAL; WORK AUTHORIZATION.—

(1) IN GENERAL.—The Attorney General shall provide by regulation for an alien subject to a final order of deportation or removal to seek a stay of such order based on the filing of an application under subsection (a).

(2) DURING CERTAIN PROCEEDINGS.—Notwithstanding any provision of the Immigration and Nationality Act, the Attorney General shall not order any alien to be removed from the

United States, if the alien is in exclusion, deportation, or removal proceedings under any provision of such Act and has applied for adjustment of status under subsection (a), except where the Attorney General has rendered a final administrative determination to deny the application.

(3) WORK AUTHORIZATION.—The Attorney General may authorize an alien who has applied for adjustment of status under subsection (a) to engage in employment in the United States during the pendency of such application and may provide the alien with an "employment authorized" endorsement or other appropriate document signifying authorization of employment, except that if such application is pending for a period exceeding 180 days, and has not been denied, the Attorney General shall authorize such employment.

(d) ADJUSTMENT OF STATUS FOR SPOUSES AND CHILDREN.—

(1) IN GENERAL.—Notwithstanding section 245(c) of the Immigration and Nationality Act, the status of an alien shall be adjusted by the Attorney General to that of an alien lawfully admitted for permanent residence, if—

(A) the alien is a national of Nicaragua or Cuba;

(B) the alien is the spouse, child, or unmarried son or daughter, of an alien whose status is adjusted to that of an alien lawfully admitted for permanent residence under subsection (a), except that in the case of such an unmarried son or daughter, the son or daughter shall be required to establish that they have been physically present in the United States for a continuous period, beginning not later than December 1, 1995, and ending not earlier than the date the application for adjustment under this subsection is filed;

(C) the alien applies for such adjustment and is physically present in the United States on the date the application is filed;

(D) the alien is otherwise eligible to receive an immigrant visa and is otherwise admissible to the United States for permanent residence, except in determining such admissibility the grounds for exclusion specified in paragraphs (4), (5), (6)(A), and (7)(A) of section 212(a) of the Immigration and Nationality Act shall not apply; and

(E) applies for such adjustment before April 1, 2000.

(2) PROOF OF CONTINUOUS PRESENCE.—For purposes of establishing the period of continuous physical presence referred to in paragraph (1)(B), an alien—

(A) shall demonstrate that such period commenced not later than December 1, 1995, in a manner consistent with subsection (b)(2); and

(B) shall not be considered to have failed to maintain continuous physical presence by reason of an absence, or absences, from the United States for any period in the aggregate not exceeding 180 days.

(e) AVAILABILITY OF ADMINISTRATIVE REVIEW.—The Attorney General shall provide to applicants for adjustment of status under subsection (a) the same right to, and procedures for, administrative review as are provided to—

(1) applicants for adjustment of status under section 245 of the Immigration and Nationality Act; or

(2) aliens subject to removal proceedings under section 240 of such Act.

(f) LIMITATION ON JUDICIAL REVIEW.—A determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court.

(g) NO OFFSET IN NUMBER OF VISAS AVAILABLE.—When an alien is granted the status of having been lawfully admitted for permanent residence pursuant to this section, the Secretary of State shall not be required to reduce the number of immigrant visas authorized to be issued under any provision of the Immigration and Nationality Act.

(h) APPLICATION OF IMMIGRATION AND NATIONALITY ACT PROVISIONS.—Except as otherwise specifically provided in this section, the definitions contained in the Immigration and Nationality Act shall apply in the administration of this section. Nothing contained in this section shall be held to repeal, amend, alter, modify, affect, or restrict the powers, duties, functions, or authority of the Attorney General in the administration and enforcement of such Act or any other law relating to immigration, nationality, or naturalization. The fact that an alien may be eligible to be granted the status of having been lawfully admitted for permanent residence under this section shall not preclude the alien from seeking such status under any other provision of law for which the alien may be eligible.

SEC. 203. MODIFICATION OF CERTAIN TRANSITION RULES. (a) TRANSITIONAL RULES WITH REGARD TO SUSPENSION OF DEPORTATION.—

8 USC 1101 note.

(1) IN GENERAL.—Section 309(c)(5) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; division C; 110 Stat. 3009–627) is amended to read as follows:

"(5) TRANSITIONAL RULES WITH REGARD TO SUSPENSION OF DEPORTATION.—

"(A) IN GENERAL.—Subject to subparagraphs (B) and (C), paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause (including those referred to in section 242B(a)(1) of the Immigration and Nationality Act, as in effect before the title III–A effective date), issued before, on, or after the date of the enactment of this Act.

"(B) EXCEPTION FOR CERTAIN ORDERS.—In any case in which the Attorney General elects to terminate and reinitiate proceedings in accordance with paragraph (3) of this subsection, paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act shall not apply to an order to show cause issued before April 1, 1997.

"(C) SPECIAL RULE FOR CERTAIN ALIENS GRANTED TEMPORARY PROTECTION FROM DEPORTATION.—

"(i) IN GENERAL.—For purposes of calculating the period of continuous physical presence under section 244(a) of the Immigration and Nationality Act (as in effect before the title III–A effective date) or section 240A of such Act (as in effect after the title III–A effective date), subparagraph (A) and paragraphs (1) and (2) of section 240A(d) of the Immigration and

Nationality Act shall not apply in the case of an alien, regardless of whether the alien is in exclusion or deportation proceedings before the title III–A effective date, who has not been convicted at any time of an aggravated felony (as defined in section 101(a) of the Immigration and Nationality Act) and—

"(I) was not apprehended after December 19, 1990, at the time of entry, and is—

"(aa) a Salvadoran national who first entered the United States on or before September 19, 1990, and who registered for benefits pursuant to the settlement agreement in American Baptist Churches, et al. v. Thornburgh (ABC), 760 F. Supp. 796 (N.D. Cal. 1991) on or before October 31, 1991, or applied for temporary protected status on or before October 31, 1991; or

"(bb) a Guatemalan national who first entered the United States on or before October 1, 1990, and who registered for benefits pursuant to such settlement agreement on or before December 31, 1991;

"(II) is a Guatemalan or Salvadoran national who filed an application for asylum with the Immigration and Naturalization Service on or before April 1, 1990;

"(III) is the spouse or child (as defined in section 101(b)(1) of the Immigration and Nationality Act) of an individual, at the time a decision is rendered to suspend the deportation, or cancel the removal, of such individual, if the individual has been determined to be described in this clause (excluding this subclause and subclause (IV));

"(IV) is the unmarried son or daughter of an alien parent, at the time a decision is rendered to suspend the deportation, or cancel the removal, of such alien parent, if—

"(aa) the alien parent has been determined to be described in this clause (excluding this subclause and subclause (III)); and

"(bb) in the case of a son or daughter who is 21 years of age or older at the time such decision is rendered, the son or daughter entered the United States on or before October 1, 1990; or

"(V) is an alien who entered the United States on or before December 31, 1990, who filed an application for asylum on or before December 31, 1991, and who, at the time of filing such application, was a national of the Soviet Union, Russia, any republic of the former Soviet Union, Latvia, Estonia, Lithuania, Poland, Czechoslovakia, Romania, Hungary, Bulgaria, Albania, East Germany, Yugoslavia, or any state of the former Yugoslavia.

"(ii) LIMITATION ON JUDICIAL REVIEW.—A determination by the Attorney General as to whether an alien satisfies the requirements of this clause (i) is

111 STAT. 2198    PUBLIC LAW 105–100—NOV. 19, 1997

final and shall not be subject to review by any court. Nothing in the preceding sentence shall be construed as limiting the application of section 242(a)(2)(B) of the Immigration and Nationality Act (as in effect after the title III–A effective date) to other eligibility determinations pertaining to discretionary relief under this Act.".

(2) CONFORMING AMENDMENT.—Subsection (c) of section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; division C; 110 Stat. 3009–625) is amended by striking the subsection designation and the subsection heading and inserting the following:

8 USC 1101 note.

"(c) TRANSITION FOR CERTAIN ALIENS.—".

(b) SPECIAL RULE FOR CANCELLATION OF REMOVAL.—Section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; 110 Stat. 3009–625) is amended by adding at the end the following:

8 USC 1101 note.

"(f) SPECIAL RULE FOR CANCELLATION OF REMOVAL.—

"(1) IN GENERAL.—Subject to the provisions of the Immigration and Nationality Act (as in effect after the title III–A effective date), other than subsections (b)(1), (d)(1), and (e) of section 240A of such Act (but including section 242(a)(2)(B) of such Act), the Attorney General may, under section 240A of such Act, cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States, if the alien applies for such relief, the alien is described in subsection (c)(5)(C)(i) of this section, and—

"(A) the alien—

"(i) is not inadmissible or deportable under paragraph (2) or (3) of section 212(a) or paragraph (2), (3), or (4) of section 237(a) of the Immigration and Nationality Act and is not an alien described in section 241(b)(3)(B)(i) of such Act;

"(ii) has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application;

"(iii) has been a person of good moral character during such period; and

"(iv) establishes that removal would result in extreme hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; or

"(B) the alien—

"(i) is inadmissible or deportable under section 212(a)(2), 237(a)(2) (other than 237(a)(2)(A)(iii)), or 237(a)(3) of the Immigration and Nationality Act;

"(ii) is not an alien described in section 241(b)(3)(B)(i) or 101(a)(43) of such Act;

"(iii) has been physically present in the United States for a continuous period of not less than 10 years immediately following the commission of an act, or the assumption of a status, constituting a ground for removal;

"(iv) has been a person of good moral character during such period; and

"(v) establishes that removal would result in exceptional and extremely unusual hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

"(2) TREATMENT OF CERTAIN BREAKS IN PRESENCE.—Section 240A(d)(2) shall apply for purposes of calculating any period of continuous physical presence under this subsection, except that the reference to subsection (b)(1) in such section shall be considered to be a reference to paragraph (1) of this section.". *Applicability.*

(c) MOTIONS TO REOPEN DEPORTATION OR REMOVAL PROCEEDINGS.—Section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; 110 Stat. 3009–625), as amended by subsection (b), is further amended by adding at the end the following: *8 USC 1101 note.*

"(g) MOTIONS TO REOPEN DEPORTATION OR REMOVAL PROCEEDINGS.—Notwithstanding any limitation imposed by law on motions to reopen removal or deportation proceedings (except limitations premised on an alien's conviction of an aggravated felony (as defined in section 101(a) of the Immigration and Nationality Act)), any alien who has become eligible for cancellation of removal or suspension of deportation as a result of the amendments made by section 203 of the Nicaraguan Adjustment and Central American Relief Act may file one motion to reopen removal or deportation proceedings to apply for cancellation of removal or suspension of deportation. The Attorney General shall designate a specific time period in which all such motions to reopen are required to be filed. The period shall begin not later than 60 days after the date of the enactment of the Nicaraguan Adjustment and Central American Relief Act and shall extend for a period not to exceed 240 days.".

(d) TEMPORARY REDUCTION IN DIVERSITY VISAS.— *8 USC 1151 note.*

(1) Beginning in fiscal year 1999, subject to paragraph (2), the number of visas available for a fiscal year under section 201(e) of the Immigration and Nationality Act shall be reduced by 5,000 from the number of visas available under that section for such fiscal year.

(2) In no case shall the reduction under paragraph (1) for a fiscal year exceed the amount by which—

(A) one-half of the total number of individuals described in subclauses (I), (II), (III), and (IV) of section 309(c)(5)(C) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 who have adjusted their status to that of aliens lawfully admitted for permanent residence under the Nicaraguan Adjustment and Central American Relief Act as of the end of the previous fiscal year exceeds—

(B) the total of the reductions in available visas under this subsection for all previous fiscal years.

(e) TEMPORARY REDUCTION IN OTHER WORKERS' VISAS.— *8 USC 1153 note.*

(1) Beginning in the fiscal year following the fiscal year in which a visa has been made available under section 203(b)(3)(A)(iii) of the Immigration and Nationality Act for all aliens who are the beneficiary of a petition approved under section 204 of such Act as of the date of the enactment of this Act for classification under section 203(b)(3)(A)(iii) of such Act, subject to paragraph (2), visas available under section 203(b)(3)(A)(iii) of that Act shall be reduced by 5,000 from

111 STAT. 2200          PUBLIC LAW 105–100—NOV. 19, 1997

the number of visas otherwise available under that section for such fiscal year.

(2) In no case shall the reduction under paragraph (1) for a fiscal year exceed the amount by which—

(A) the number computed under subsection (d)(2)(A), exceeds—

(B) the total of the reductions in available visas under this subsection for all previous fiscal years.

8 USC 1101 note.     (f) EFFECTIVE DATE.—The amendments made by this section to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 shall take effect as if included in the enactment of such Act.

SEC. 204. LIMITATION ON CANCELLATIONS OF REMOVAL AND SUSPENSIONS OF DEPORTATION. (a) ANNUAL LIMITATION.—Section 240A(e) of the Immigration and Nationality Act (8 U.S.C. 1229b(e)) is amended to read as follows:

"(e) ANNUAL LIMITATION.—

"(1) AGGREGATE LIMITATION.—Subject to paragraphs (2) and (3), the Attorney General may not cancel the removal and adjust the status under this section, nor suspend the deportation and adjust the status under section 244(a) (as in effect before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996), of a total of more than 4,000 aliens in any fiscal year. The previous sentence shall apply regardless of when an alien applied for such cancellation and adjustment, or such suspension and adjustment, and whether such an alien had previously applied for suspension
Applicability.     of deportation under such section 244(a). The numerical limitation under this paragraph shall apply to the aggregate number of decisions in any fiscal year to cancel the removal (and adjust the status) of an alien, or suspend the deportation (and adjust the status) under this section or such section 244(a).

"(2) FISCAL YEAR 1997.—For fiscal year 1997, paragraph (1) shall only apply to decisions to cancel the removal of an alien, or suspend the deportation of an alien, made after April 1, 1997. Notwithstanding any other provision of law, the Attorney General may cancel the removal or suspend the deportation, in addition to the normal allotment for fiscal year 1998, of a number of aliens equal to 4,000 less the number of such cancellations of removal and suspensions of deportation granted in fiscal year 1997 after April 1, 1997.

"(3) EXCEPTION FOR CERTAIN ALIENS.—Paragraph (1) shall not apply to the following:

"(A) Aliens described in section 309(c)(5)(C)(i) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (as amended by the Nicaraguan Adjustment and Central American Relief Act).

"(B) Aliens in deportation proceedings prior to April 1, 1997, who applied for suspension of deportation under section 244(a)(3) (as in effect before the date of the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).".

PUBLIC LAW 105–100—NOV. 19, 1997      111 STAT. 2201

(b) CANCELLATION OF REMOVAL AND ADJUSTMENT OF STATUS FOR CERTAIN NONPERMANENT RESIDENTS.—Section 240A(b) of the Immigration and Nationality Act (8 U.S.C. 1229b(b)) is amended in each of paragraphs (1) and (2) by striking "may cancel removal in the case of an alien" and inserting "may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien".

(c) RECORDATION OF DATE.—Section 240A(b)(3) of the Immigration and Nationality Act (8 U.S.C. 1229b(b)(3)) is amended to read as follows:

"(3) RECORDATION OF DATE.—With respect to aliens who the Attorney General adjusts to the status of an alien lawfully admitted for permanent residence under paragraph (1) or (2), the Attorney General shall record the alien's lawful admission for permanent residence as of the date of the Attorney General's cancellation of removal under paragraph (1) or (2).".

(d) APRIL 1 EFFECTIVE DATE FOR AGGREGATE LIMITATION.—Section 309(c)(7) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; division C; 110 Stat. 3009–627) is amended to read as follows:

8 USC 1101 note.

"(7) LIMITATION ON SUSPENSION OF DEPORTATION.—After April 1, 1997, the Attorney General may not suspend the deportation and adjust the status under section 244 of the Immigration and Nationality Act (as in effect before the title III–A effective date) of any alien in any fiscal year, except in accordance with section 240A(e) of such Act. The previous sentence shall apply regardless of when an alien applied for such suspension and adjustment.".

(e) EFFECTIVE DATE.—The amendments made by this section shall take effect as if included in the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; 110 Stat. 3009–546).

8 USC 1229b note.

Approved November 19, 1997.

LEGISLATIVE HISTORY—H.R. 2607 (S. 1156):

HOUSE REPORTS: No. 105–298 (Comm. on Appropriations).
SENATE REPORTS: No. 105–75, accompanying S. 1156 (Comm. on Appropriations).
CONGRESSIONAL RECORD, Vol. 143 (1997):
    Oct. 9, considered and passed House.
    Nov. 9, considered and passed Senate, amended.
    Nov. 12, House concurred in certain Senate amendments, with amendments; disagreed to another amendment.
    Nov. 13, Senate concurred in House amendments; receded from its amendment.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 33 (1997):
    Nov. 19, Presidential statement.

111 STAT. 2644        PUBLIC LAW 105–139—DEC. 2, 1997

Public Law 105–139
105th Congress

## An Act

<table>
<tr><td>Dec. 2, 1997<br>[S. 1565]</td><td>To make technical corrections to the Nicaraguan Adjustment and Central American Relief Act.</td></tr>
</table>

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. TECHNICAL CORRECTIONS TO NICARAGUAN ADJUSTMENT AND CENTRAL AMERICAN RELIEF ACT.**

*Ante,* p. 2193.

(a) ADJUSTMENT OF STATUS.—Section 202(a)(1) of the Nicaraguan Adjustment and Central American Relief Act is amended—

(1) in the matter preceding subparagraph (A), by striking "Notwithstanding section 245(c) of the Immigration and Nationality Act, the" and inserting "The"; and

(2) in subparagraph (B)—

(A) by striking "is otherwise eligible to receive an immigrant visa and"; and

(B) by striking "(6)(A), and (7)(A)" and inserting "(6)(A), (7)(A), and (9)(B)".

(b) ADJUSTMENT OF STATUS FOR SPOUSES AND CHILDREN.—Section 202(d)(1) of the Nicaraguan Adjustment and Central American Relief Act is amended—

(1) in the matter preceding subparagraph (A), by striking "Notwithstanding section 245(c) of the Immigration and Nationality Act, the" and inserting "The"; and

(2) in subparagraph (D)—

(A) by striking "is otherwise eligible to receive an immigrant visa and";

(B) by striking "exclusion" and inserting "inadmissibility"; and

(C) by striking "(6)(A), and (7)(A)" and inserting "(6)(A), (7)(A), and (9)(B)".

(c) TRANSITIONAL RULES WITH REGARD TO SUSPENSION OF DEPORTATION.—Section 309(c)(5)(C) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as added by section 203(a)(1) of the Nicaraguan Adjustment and Central American Relief Act is amended (1) in clause (i), in the matter preceding subclause (I), by inserting "of this paragraph" after "subparagraph (A)"; (2) in clause (ii), by striking "this clause (i)" and inserting "clause (i)".

*Ante,* p. 2196.

(d) TEMPORARY REDUCTION IN DIVERSITY VISAS.—Section 203(d) of the Nicaraguan Adjustment and Central American Relief Act is amended—

(1) in paragraph (1) by inserting "otherwise" before "available under that section"; and

(2) in paragraph (2)(A)—

PUBLIC LAW 105–139—DEC. 2, 1997          111 STAT. 2645

(A) by striking "309(c)(5)(C)" and inserting "309(c)(5)(C)(i)"; and

(B) by striking "year exceeds—" and inserting "year; exceeds".

(e) TEMPORARY REDUCTION IN OTHER WORKERS' VISAS.—Section 203(e)(2)(A) of the Nicaraguan Adjustment and Central American Relief Act is amended by striking "(d)(2)(A), exceeds—" and inserting "(d)(2)(A); exceeds".

(f) EFFECTIVE DATE.—The amendments made by this section—          8 USC 1101 note.

(1) shall take effect upon the enactment of the Nicaraguan Adjustment and Central American Relief Act (as contained in the District of Columbia Appropriations Act, 1998); and

(2) shall be effective as if included in the enactment of such Act.

Approved December 2, 1997.

---

LEGISLATIVE HISTORY—S. 1565:

CONGRESSIONAL RECORD, Vol. 143 (1997):
Nov. 13, considered and passed Senate and House.

○

PUBLIC LAW 106–386—OCT. 28, 2000

# VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT OF 2000

114 STAT. 1518        PUBLIC LAW 106–386—OCT. 28, 2000

# TITLE V—BATTERED IMMIGRANT WOMEN

Battered Immigrant Women Protection Act of 2000.
8 USC 1101 note.

**SEC. 1501. SHORT TITLE.**

This title may be cited as the "Battered Immigrant Women Protection Act of 2000".

8 USC 1101 note.

**SEC. 1502. FINDINGS AND PURPOSES.**

(a) FINDINGS.—Congress finds that—

(1) the goal of the immigration protections for battered immigrants included in the Violence Against Women Act of 1994 was to remove immigration laws as a barrier that kept battered immigrant women and children locked in abusive relationships;

(2) providing battered immigrant women and children who were experiencing domestic violence at home with protection against deportation allows them to obtain protection orders against their abusers and frees them to cooperate with law enforcement and prosecutors in criminal cases brought against their abusers and the abusers of their children without fearing that the abuser will retaliate by withdrawing or threatening withdrawal of access to an immigration benefit under the abuser's control; and

(3) there are several groups of battered immigrant women and children who do not have access to the immigration protections of the Violence Against Women Act of 1994 which means that their abusers are virtually immune from prosecution because their victims can be deported as a result of action by their abusers and the Immigration and Naturalization Service cannot offer them protection no matter how compelling their case under existing law.

(b) PURPOSES.—The purposes of this title are—

(1) to remove barriers to criminal prosecutions of persons who commit acts of battery or extreme cruelty against immigrant women and children; and

(2) to offer protection against domestic violence occurring in family and intimate relationships that are covered in State and tribal protection orders, domestic violence, and family law statutes.

**SEC. 1503. IMPROVED ACCESS TO IMMIGRATION PROTECTIONS OF THE VIOLENCE AGAINST WOMEN ACT OF 1994 FOR BATTERED IMMIGRANT WOMEN.**

(a) INTENDED SPOUSE DEFINED.—Section 101(a) of the Immigration and Nationality Act (8 U.S.C. 1101(a)) is amended by adding at the end the following:

"(50) The term 'intended spouse' means any alien who meets the criteria set forth in section 204(a)(1)(A)(iii)(II)(aa)(BB), 204(a)(1)(B)(ii)(II)(aa)(BB), or 240A(b)(2)(A)(i)(III).".

(b) IMMEDIATE RELATIVE STATUS FOR SELF-PETITIONERS MARRIED TO U.S. CITIZENS.—

(1) SELF-PETITIONING SPOUSES.—

(A) BATTERY OR CRUELTY TO ALIEN OR ALIEN'S CHILD.—Section 204(a)(1)(A)(iii) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(A)(iii)) is amended to read as follows:

"(iii)(I) An alien who is described in subclause (II) may file a petition with the Attorney General under this clause for classification of the alien (and any child of the alien) if the alien demonstrates to the Attorney General that—

"(aa) the marriage or the intent to marry the United States citizen was entered into in good faith by the alien; and

"(bb) during the marriage or relationship intended by the alien to be legally a marriage, the alien or a child of the alien has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse or intended spouse.

"(II) For purposes of subclause (I), an alien described in this subclause is an alien—

"(aa)(AA) who is the spouse of a citizen of the United States;

"(BB) who believed that he or she had married a citizen of the United States and with whom a marriage ceremony was actually performed and who otherwise meets any applicable requirements under this Act to establish the existence of and bona fides of a marriage, but whose marriage is not legitimate solely because of the bigamy of such citizen of the United States; or

"(CC) who was a bona fide spouse of a United States citizen within the past 2 years and—

"(aaa) whose spouse died within the past 2 years;

"(bbb) whose spouse lost or renounced citizenship status within the past 2 years related to an incident of domestic violence; or

"(ccc) who demonstrates a connection between the legal termination of the marriage within the past 2 years and battering or extreme cruelty by the United States citizen spouse;

"(bb) who is a person of good moral character;

"(cc) who is eligible to be classified as an immediate relative under section 201(b)(2)(A)(i) or who would have been so classified but for the bigamy of the citizen of the United States that the alien intended to marry; and

"(dd) who has resided with the alien's spouse or intended spouse.".

(2) SELF-PETITIONING CHILDREN.—Section 204(a)(1)(A)(iv) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(A)(iv)) is amended to read as follows:

"(iv) An alien who is the child of a citizen of the United States, or who was a child of a United States citizen parent who within the past 2 years lost or renounced citizenship status related to an incident of domestic violence, and who is a person of good moral character, who is eligible to be classified as an immediate relative under section 201(b)(2)(A)(i), and who resides, or has resided in the past, with the citizen parent may file a petition with the Attorney General under this subparagraph for classification of the alien (and any child of the alien) under such section if the alien demonstrates to the Attorney General that the alien has been battered by or has been the subject of extreme cruelty perpetrated by the alien's citizen parent. For purposes of this clause, residence includes any period of visitation.".

(3) FILING OF PETITIONS.—Section 204(a)(1)(A) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(A)) is amended by adding at the end the following:

"(v) An alien who—
"(I) is the spouse, intended spouse, or child living abroad of a citizen who—
"(aa) is an employee of the United States Government;
"(bb) is a member of the uniformed services (as defined in section 101(a) of title 10, United States Code); or
"(cc) has subjected the alien or the alien's child to battery or extreme cruelty in the United States; and
"(II) is eligible to file a petition under clause (iii) or (iv), shall file such petition with the Attorney General under the procedures that apply to self-petitioners under clause (iii) or (iv), as applicable.".

(c) SECOND PREFERENCE IMMIGRATION STATUS FOR SELF-PETITIONERS MARRIED TO LAWFUL PERMANENT RESIDENTS.—

(1) SELF-PETITIONING SPOUSES.—Section 204(a)(1)(B)(ii) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(B)(ii)) is amended to read as follows:

"(ii)(I) An alien who is described in subclause (II) may file a petition with the Attorney General under this clause for classification of the alien (and any child of the alien) if such a child has not been classified under clause (iii) of section 203(a)(2)(A) and if the alien demonstrates to the Attorney General that—
"(aa) the marriage or the intent to marry the lawful permanent resident was entered into in good faith by the alien; and
"(bb) during the marriage or relationship intended by the alien to be legally a marriage, the alien or a child of the alien has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse or intended spouse.
"(II) For purposes of subclause (I), an alien described in this paragraph is an alien—
"(aa)(AA) who is the spouse of a lawful permanent resident of the United States; or
"(BB) who believed that he or she had married a lawful permanent resident of the United States and with whom a marriage ceremony was actually performed and who otherwise meets any applicable requirements under this Act to establish the existence of and bona fides of a marriage, but whose marriage is not legitimate solely because of the bigamy of such lawful permanent resident of the United States; or
"(CC) who was a bona fide spouse of a lawful permanent resident within the past 2 years and—
"(aaa) whose spouse lost status within the past 2 years due to an incident of domestic violence; or
"(bbb) who demonstrates a connection between the legal termination of the marriage within the past 2 years and battering or extreme cruelty by the lawful permanent resident spouse;
"(bb) who is a person of good moral character;
"(cc) who is eligible to be classified as a spouse of an alien lawfully admitted for permanent residence under section 203(a)(2)(A) or who would have been so classified but for the bigamy of the lawful permanent resident of the United States that the alien intended to marry; and
"(dd) who has resided with the alien's spouse or intended spouse.".

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1521

(2) SELF-PETITIONING CHILDREN.—Section 204(a)(1)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(B)(iii)) is amended to read as follows:

"(iii) An alien who is the child of an alien lawfully admitted for permanent residence, or who was the child of a lawful permanent resident who within the past 2 years lost lawful permanent resident status due to an incident of domestic violence, and who is a person of good moral character, who is eligible for classification under section 203(a)(2)(A), and who resides, or has resided in the past, with the alien's permanent resident alien parent may file a petition with the Attorney General under this subparagraph for classification of the alien (and any child of the alien) under such section if the alien demonstrates to the Attorney General that the alien has been battered by or has been the subject of extreme cruelty perpetrated by the alien's permanent resident parent.".

(3) FILING OF PETITIONS.—Section 204(a)(1)(B) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(B)) is amended by adding at the end the following:

"(iv) An alien who—

"(I) is the spouse, intended spouse, or child living abroad of a lawful permanent resident who—

"(aa) is an employee of the United States Government;

"(bb) is a member of the uniformed services (as defined in section 101(a) of title 10, United States Code); or

"(cc) has subjected the alien or the alien's child to battery or extreme cruelty in the United States; and

"(II) is eligible to file a petition under clause (ii) or (iii), shall file such petition with the Attorney General under the procedures that apply to self-petitioners under clause (ii) or (iii), as applicable.".

(d) GOOD MORAL CHARACTER DETERMINATIONS FOR SELF-PETITIONERS AND TREATMENT OF CHILD SELF-PETITIONERS AND PETITIONS INCLUDING DERIVATIVE CHILDREN ATTAINING 21 YEARS OF AGE.—Section 204(a)(1) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)) is amended—

(1) by redesignating subparagraphs (C) through (H) as subparagraphs (E) through (J), respectively;

(2) by inserting after subparagraph (B) the following:

"(C) Notwithstanding section 101(f), an act or conviction that is waivable with respect to the petitioner for purposes of a determination of the petitioner's admissibility under section 212(a) or deportability under section 237(a) shall not bar the Attorney General from finding the petitioner to be of good moral character under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) if the Attorney General finds that the act or conviction was connected to the alien's having been battered or subjected to extreme cruelty.

"(D)(i)(I) Any child who attains 21 years of age who has filed a petition under clause (iv) of section 204(a)(1)(A) that was filed or approved before the date on which the child attained 21 years of age shall be considered (if the child has not been admitted or approved for lawful permanent residence by the date the child attained 21 years of age) a petitioner for preference status under paragraph (1), (2), or (3) of section 203(a), whichever paragraph is applicable, with the same priority date assigned to the self-petition filed under clause (iv) of section 204(a)(1)(A). No new petition shall be required to be filed.

"(II) Any individual described in subclause (I) is eligible for deferred action and work authorization.

"(III) Any derivative child who attains 21 years of age who is included in a petition described in clause (ii) that was filed or approved before the date on which the child attained 21 years of age shall be considered (if the child has not been admitted or approved for lawful permanent residence by the date the child attained 21 years of age) a petitioner for preference status under paragraph (1), (2), or (3) of section 203(a), whichever paragraph is applicable, with the same priority date as that assigned to the petitioner in any petition described in clause (ii). No new petition shall be required to be filed.

"(IV) Any individual described in subclause (III) and any derivative child of a petition described in clause (ii) is eligible for deferred action and work authorization.

"(ii) The petition referred to in clause (i)(III) is a petition filed by an alien under subparagraph (A)(iii), (A)(iv), (B)(ii) or (B)(iii) in which the child is included as a derivative beneficiary."; and

(3) in subparagraph (J) (as so redesignated), by inserting "or in making determinations under subparagraphs (C) and (D)," after "subparagraph (B),".

(e) ACCESS TO NATURALIZATION FOR DIVORCED VICTIMS OF ABUSE.—Section 319(a) of the Immigration and Nationality Act (8 U.S.C. 1430(a)) is amended—

(1) by inserting ", or any person who obtained status as a lawful permanent resident by reason of his or her status as a spouse or child of a United States citizen who battered him or her or subjected him or her to extreme cruelty," after "United States" the first place such term appears; and

(2) by inserting "(except in the case of a person who has been battered or subjected to extreme cruelty by a United States citizen spouse or parent)" after "has been living in marital union with the citizen spouse".

## SEC. 1504. IMPROVED ACCESS TO CANCELLATION OF REMOVAL AND SUSPENSION OF DEPORTATION UNDER THE VIOLENCE AGAINST WOMEN ACT OF 1994.

(a) CANCELLATION OF REMOVAL AND ADJUSTMENT OF STATUS FOR CERTAIN NONPERMANENT RESIDENTS.—Section 240A(b)(2) of the Immigration and Nationality Act (8 U.S.C. 1229b(b)(2)) is amended to read as follows:

"(2) SPECIAL RULE FOR BATTERED SPOUSE OR CHILD.—

"(A) AUTHORITY.—The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien demonstrates that—

"(i)(I) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a United States citizen (or is the parent of a child of a United States citizen and the child has been battered or subjected to extreme cruelty by such citizen parent);

"(II) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a lawful permanent resident (or is the parent of a

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1523

child of an alien who is or was a lawful permanent resident and the child has been battered or subjected to extreme cruelty by such permanent resident parent); or

"(III) the alien has been battered or subjected to extreme cruelty by a United States citizen or lawful permanent resident whom the alien intended to marry, but whose marriage is not legitimate because of that United States citizen's or lawful permanent resident's bigamy;

"(ii) the alien has been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of such application, and the issuance of a charging document for removal proceedings shall not toll the 3-year period of continuous physical presence in the United States;

"(iii) the alien has been a person of good moral character during such period, subject to the provisions of subparagraph (C);

"(iv) the alien is not inadmissible under paragraph (2) or (3) of section 212(a), is not deportable under paragraphs (1)(G) or (2) through (4) of section 237(a) (except in a case described in section 237(a)(7) where the Attorney General exercises discretion to grant a waiver), and has not been convicted of an aggravated felony; and

"(v) the removal would result in extreme hardship to the alien, the alien's child, or the alien's parent.

"(B) PHYSICAL PRESENCE.—Notwithstanding subsection (d)(2), for purposes of subparagraph (A)(i)(II) or for purposes of section 244(a)(3) (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996), an alien shall not be considered to have failed to maintain continuous physical presence by reason of an absence if the alien demonstrates a connection between the absence and the battering or extreme cruelty perpetrated against the alien. No absence or portion of an absence connected to the battering or extreme cruelty shall count toward the 90-day or 180-day limits established in subsection (d)(2). If any absence or aggregate absences exceed 180 days, the absences or portions of the absences will not be considered to break the period of continuous presence. Any such period of time excluded from the 180-day limit shall be excluded in computing the time during which the alien has been physically present for purposes of the 3-year requirement set forth in section 240A(b)(2)(B) and section 244(a)(3) (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).

"(C) GOOD MORAL CHARACTER.—Notwithstanding section 101(f), an act or conviction that does not bar the Attorney General from granting relief under this paragraph by reason of subparagraph (A)(iv) shall not bar the Attorney General from finding the alien to be of good moral character under subparagraph (A)(i)(III) or section 244(a)(3) (as in effect before the title III–A effective date in section 309

19

114 STAT. 1524          PUBLIC LAW 106–386—OCT. 28, 2000

of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996), if the Attorney General finds that the act or conviction was connected to the alien's having been battered or subjected to extreme cruelty and determines that a waiver is otherwise warranted.

"(D) CREDIBLE EVIDENCE CONSIDERED.—In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.".

(b) CHILDREN OF BATTERED ALIENS AND PARENTS OF BATTERED ALIEN CHILDREN.—Section 240A(b) of the Immigration and Nationality Act (8 U.S.C. 1229b(b)) is amended by adding at the end the following:

"(4) CHILDREN OF BATTERED ALIENS AND PARENTS OF BATTERED ALIEN CHILDREN.—

"(A) IN GENERAL.—The Attorney General shall grant parole under section 212(d)(5) to any alien who is a—

"(i) child of an alien granted relief under section 240A(b)(2) or 244(a)(3) (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996); or

"(ii) parent of a child alien granted relief under section 240A(b)(2) or 244(a)(3) (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).

"(B) DURATION OF PAROLE.—The grant of parole shall extend from the time of the grant of relief under section 240A(b)(2) or section 244(a)(3) (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996) to the time the application for adjustment of status filed by aliens covered under this paragraph has been finally adjudicated. Applications for adjustment of status filed by aliens covered under this paragraph shall be treated as if they were applications filed under section 204(a)(1) (A)(iii), (A)(iv), (B)(ii), or (B)(iii) for purposes of section 245 (a) and (c). Failure by the alien granted relief under section 240A(b)(2) or section 244(a)(3) (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996) to exercise due diligence in filing a visa petition on behalf of an alien described in clause (i) or (ii) may result in revocation of parole.".

8 USC 1229b note.

(c) EFFECTIVE DATE.—Any individual who becomes eligible for relief by reason of the enactment of the amendments made by subsections (a) and (b), shall be eligible to file a motion to reopen pursuant to section 240(c)(6)(C)(iv). The amendments made by subsections (a) and (b) shall take effect as if included in the enactment of section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; 110 Stat. 587). Such portions of the amendments made by subsection (b) that relate to section 244(a)(3) (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1525

Immigrant Responsibility Act of 1996) shall take effect as if included in subtitle G of title IV of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322; 108 Stat. 1953 et seq.).

**SEC. 1505. OFFERING EQUAL ACCESS TO IMMIGRATION PROTECTIONS OF THE VIOLENCE AGAINST WOMEN ACT OF 1994 FOR ALL QUALIFIED BATTERED IMMIGRANT SELF-PETI-TIONERS.**

(a) BATTERED IMMIGRANT WAIVER.—Section 212(a)(9)(C)(ii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(9)(C)(ii)) is amended by adding at the end the following: "The Attorney General in the Attorney General's discretion may waive the provisions of section 212(a)(9)(C)(i) in the case of an alien to whom the Attorney General has granted classification under clause (iii), (iv), or (v) of section 204(a)(1)(A), or classification under clause (ii), (iii), or (iv) of section 204(a)(1)(B), in any case in which there is a connection between—

"(1) the alien's having been battered or subjected to extreme cruelty; and

"(2) the alien's—

"(A) removal;

"(B) departure from the United States;

"(C) reentry or reentries into the United States; or

"(D) attempted reentry into the United States.".

(b) DOMESTIC VIOLENCE VICTIM WAIVER.—

(1) WAIVER FOR VICTIMS OF DOMESTIC VIOLENCE.—Section 237(a) of the Immigration and Nationality Act (8 U.S.C. 1227(a)) is amended by inserting at the end the following:

"(7) WAIVER FOR VICTIMS OF DOMESTIC VIOLENCE.—

"(A) IN GENERAL.—The Attorney General is not limited by the criminal court record and may waive the application of paragraph (2)(E)(i) (with respect to crimes of domestic violence and crimes of stalking) and (ii) in the case of an alien who has been battered or subjected to extreme cruelty and who is not and was not the primary perpetrator of violence in the relationship—

"(i) upon a determination that—

"(I) the alien was acting is self-defense;

"(II) the alien was found to have violated a protection order intended to protect the alien; or

"(III) the alien committed, was arrested for, was convicted of, or pled guilty to committing a crime—

"(aa) that did not result in serious bodily injury; and

"(bb) where there was a connection between the crime and the alien's having been battered or subjected to extreme cruelty.

"(B) CREDIBLE EVIDENCE CONSIDERED.—In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.".

(2) CONFORMING AMENDMENT.—Section 240A(b)(1)(C) of the Immigration and Nationality Act (8 U.S.C. 1229b(b)(1)(C)) is

amended by inserting "(except in a case described in section 237(a)(7) where the Attorney General exercises discretion to grant a waiver)" after "237(a)(3)".

(c) MISREPRESENTATION WAIVERS FOR BATTERED SPOUSES OF UNITED STATES CITIZENS AND LAWFUL PERMANENT RESIDENTS.—

(1) WAIVER OF INADMISSIBILITY.—Section 212(i)(1) of the Immigration and Nationality Act (8 U.S.C. 1182(i)(1)) is amended by inserting before the period at the end the following: "or, in the case of an alien granted classification under clause (iii) or (iv) of section 204(a)(1)(A) or clause (ii) or (iii) of section 204(a)(1)(B), the alien demonstrates extreme hardship to the alien or the alien's United States citizen, lawful permanent resident, or qualified alien parent or child".

(2) WAIVER OF DEPORTABILITY.—Section 237(a)(1)(H) of the Immigration and Nationality Act (8 U.S.C. 1227(a)(1)(H)) is amended—

(A) in clause (i), by inserting "(I)" after "(i)";

(B) by redesignating clause (ii) as subclause (II); and

(C) by adding after clause (i) the following:

"(ii) is an alien who qualifies for classification under clause (iii) or (iv) of section 204(a)(1)(A) or clause (ii) or (iii) of section 204(a)(1)(B).".

(d) BATTERED IMMIGRANT WAIVER.—Section 212(g)(1) of the Immigration and Nationality Act (8 U.S.C. 1182(g)(1)) is amended—

(1) in subparagraph (A), by striking "or" at the end;

(2) in subparagraph (B), by adding "or" at the end; and

(3) by inserting after subparagraph (B) the following:

"(C) qualifies for classification under clause (iii) or (iv) of section 204(a)(1)(A) or classification under clause (ii) or (iii) of section 204(a)(1)(B);".

(e) WAIVERS FOR VAWA ELIGIBLE BATTERED IMMIGRANTS.— Section 212(h)(1) of the Immigration and Nationality Act (8 U.S.C. 1182(h)(1)) is amended—

(1) in subparagraph (B), by striking "and" and inserting "or"; and

(2) by adding at the end the following:

"(C) the alien qualifies for classification under clause (iii) or (iv) of section 204(a)(1)(A) or classification under clause (ii) or (iii) of section 204(a)(1)(B); and".

(f) PUBLIC CHARGE.—Section 212 of the Immigration and Nationality Act (8 U.S.C. 1182) is amended by adding at the end the following:

"(p) In determining whether an alien described in subsection (a)(4)(C)(i) is inadmissible under subsection (a)(4) or ineligible to receive an immigrant visa or otherwise to adjust to the status of permanent resident by reason of subsection (a)(4), the consular officer or the Attorney General shall not consider any benefits the alien may have received that were authorized under section 501 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1641(c)).".

Deadline.

(g) REPORT.—Not later than 6 months after the date of the enactment of this Act, the Attorney General shall submit a report to the Committees on the Judiciary of the Senate and the House of Representatives covering, with respect to fiscal year 1997 and each fiscal year thereafter—

(1) the policy and procedures of the Immigration and Naturalization Service under which an alien who has been battered

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1527

or subjected to extreme cruelty who is eligible for suspension of deportation or cancellation of removal can request to be placed, and be placed, in deportation or removal proceedings so that such alien may apply for suspension of deportation or cancellation of removal;

(2) the number of requests filed at each district office under this policy;

(3) the number of these requests granted reported separately for each district; and

(4) the average length of time at each Immigration and Naturalization office between the date that an alien who has been subject to battering or extreme cruelty eligible for suspension of deportation or cancellation of removal requests to be placed in deportation or removal proceedings and the date that the immigrant appears before an immigration judge to file an application for suspension of deportation or cancellation of removal.

### SEC. 1506. RESTORING IMMIGRATION PROTECTIONS UNDER THE VIOLENCE AGAINST WOMEN ACT OF 1994.

(a) REMOVING BARRIERS TO ADJUSTMENT OF STATUS FOR VICTIMS OF DOMESTIC VIOLENCE.—

(1) IMMIGRATION AMENDMENTS.—Section 245 of the Immigration and Nationality Act (8 U.S.C. 1255) is amended—

(A) in subsection (a), by inserting "or the status of any other alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 204(a)(1) or" after "into the United States."; and

(B) in subsection (c), by striking "Subsection (a) shall not be applicable to" and inserting the following: "Other than an alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (A)(v), (A)(vi), (B)(ii), (B)(iii), or (B)(iv) of section 204(a)(1), subsection (a) shall not be applicable to".

(2) EFFECTIVE DATE.—The amendments made by paragraph (1) shall apply to applications for adjustment of status pending on or made on or after January 14, 1998.

8 USC 1255 note.

(b) REMOVING BARRIERS TO CANCELLATION OF REMOVAL AND SUSPENSION OF DEPORTATION FOR VICTIMS OF DOMESTIC VIOLENCE.—

(1) NOT TREATING SERVICE OF NOTICE AS TERMINATING CONTINUOUS PERIOD.—Section 240A(d)(1) of the Immigration and Nationality Act (8 U.S.C. 1229b(d)(1)) is amended by striking "when the alien is served a notice to appear under section 239(a) or" and inserting "(A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2), when the alien is served a notice to appear under section 239(a), or (B)".

(2) EFFECTIVE DATE.—The amendment made by paragraph (1) shall take effect as if included in the enactment of section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (Public Law 104–208; 110 Stat. 587).

8 USC 1229b note.

(3) MODIFICATION OF CERTAIN TRANSITION RULES FOR BATTERED SPOUSE OR CHILD.—Section 309(c)(5)(C) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note) is amended—

114 STAT. 1528          PUBLIC LAW 106–386—OCT. 28, 2000

(A) by striking the subparagraph heading and inserting the following:

"(C) SPECIAL RULE FOR CERTAIN ALIENS GRANTED TEMPORARY PROTECTION FROM DEPORTATION AND FOR BATTERED SPOUSES AND CHILDREN.—"; and

(B) in clause (i)—

(i) in subclause (IV), by striking "or" at the end;

(ii) in subclause (V), by striking the period at the end and inserting "; or"; and

(iii) by adding at the end the following:

"(VI) is an alien who was issued an order to show cause or was in deportation proceedings before April 1, 1997, and who applied for suspension of deportation under section 244(a)(3) of the Immigration and Nationality Act (as in effect before the date of the enactment of this Act).".

8 USC 1101 note.

(4) EFFECTIVE DATE.—The amendments made by paragraph (3) shall take effect as if included in the enactment of section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note).

(c) ELIMINATING TIME LIMITATIONS ON MOTIONS TO REOPEN REMOVAL AND DEPORTATION PROCEEDINGS FOR VICTIMS OF DOMESTIC VIOLENCE.—

(1) REMOVAL PROCEEDINGS.—

(A) IN GENERAL.—Section 240(c)(6)(C) of the Immigration and Nationality Act (8 U.S.C. 1229a(c)(6)(C)) is amended by adding at the end the following:

"(iv) SPECIAL RULE FOR BATTERED SPOUSES AND CHILDREN.—The deadline specified in subsection (b)(5)(C) for filing a motion to reopen does not apply—

"(I) if the basis for the motion is to apply for relief under clause (iii) or (iv) of section 204(a)(1)(A), clause (ii) or (iii) of section 204(a)(1)(B), or section 240A(b)(2);

"(II) if the motion is accompanied by a cancellation of removal application to be filed with the Attorney General or by a copy of the self-petition that has been or will be filed with the Immigration and Naturalization Service upon the granting of the motion to reopen; and

"(III) if the motion to reopen is filed within 1 year of the entry of the final order of removal, except that the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child.".

8 USC 1229a note.

(B) EFFECTIVE DATE.—The amendment made by subparagraph (A) shall take effect as if included in the enactment of section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1229–1229c).

8 USC 1229a note.

(2) DEPORTATION PROCEEDINGS.—

(A) IN GENERAL.—Notwithstanding any limitation imposed by law on motions to reopen or rescind deportation proceedings under the Immigration and Nationality Act (as in effect before the title III–A effective date in section

309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note)), there is no time limit on the filing of a motion to reopen such proceedings, and the deadline specified in section 242B(c)(3) of the Immigration and Nationality Act (as so in effect) (8 U.S.C. 1252b(c)(3)) does not apply—

(i) if the basis of the motion is to apply for relief under clause (iii) or (iv) of section 204(a)(1)(A) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(A)), clause (ii) or (iii) of section 204(a)(1)(B) of such Act (8 U.S.C. 1154(a)(1)(B)), or section 244(a)(3) of such Act (as so in effect) (8 U.S.C. 1254(a)(3)); and

(ii) if the motion is accompanied by a suspension of deportation application to be filed with the Attorney General or by a copy of the self-petition that will be filed with the Immigration and Naturalization Service upon the granting of the motion to reopen.

(B) APPLICABILITY.—Subparagraph (A) shall apply to motions filed by aliens who—

(i) are, or were, in deportation proceedings under the Immigration and Nationality Act (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note)); and

(ii) have become eligible to apply for relief under clause (iii) or (iv) of section 204(a)(1)(A) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(A)), clause (ii) or (iii) of section 204(a)(1)(B) of such Act (8 U.S.C. 1154(a)(1)(B)), or section 244(a)(3) of such Act (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note)) as a result of the amendments made by—

(I) subtitle G of title IV of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322; 108 Stat. 1953 et seq.); or

(II) this title.

## SEC. 1507. REMEDYING PROBLEMS WITH IMPLEMENTATION OF THE IMMIGRATION PROVISIONS OF THE VIOLENCE AGAINST WOMEN ACT OF 1994.

(a) EFFECT OF CHANGES IN ABUSERS' CITIZENSHIP STATUS ON SELF-PETITION.—

(1) RECLASSIFICATION.—Section 204(a)(1)(A) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(A)) (as amended by section 1503(b)(3) of this title) is amended by adding at the end the following:

"(vi) For the purposes of any petition filed under clause (iii) or (iv), the denaturalization, loss or renunciation of citizenship, death of the abuser, divorce, or changes to the abuser's citizenship status after filing of the petition shall not adversely affect the approval of the petition, and for approved petitions shall not preclude the classification of the eligible self-petitioning spouse or child as an immediate relative or affect the alien's ability to adjust status under subsections (a) and (c) of section 245 or obtain status as a lawful permanent resident based on the approved self-petition under such clauses.".

(2) LOSS OF STATUS.—Section 204(a)(1)(B) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)(B)) (as amended by section 1503(c)(3) of this title) is amended by adding at the end the following:

"(v)(I) For the purposes of any petition filed or approved under clause (ii) or (iii), divorce, or the loss of lawful permanent resident status by a spouse or parent after the filing of a petition under that clause shall not adversely affect approval of the petition, and, for an approved petition, shall not affect the alien's ability to adjust status under subsections (a) and (c) of section 245 or obtain status as a lawful permanent resident based on an approved self-petition under clause (ii) or (iii).

"(II) Upon the lawful permanent resident spouse or parent becoming or establishing the existence of United States citizenship through naturalization, acquisition of citizenship, or other means, any petition filed with the Immigration and Naturalization Service and pending or approved under clause (ii) or (iii) on behalf of an alien who has been battered or subjected to extreme cruelty shall be deemed reclassified as a petition filed under subparagraph (A) even if the acquisition of citizenship occurs after divorce or termination of parental rights.".

8 USC 1151.

(3) DEFINITION OF IMMEDIATE RELATIVES.—Section 201(b)(2)(A)(i) of the Immigration and Nationality Act (8 U.S.C. 1154(b)(2)(A)(i)) is amended by adding at the end the following: "For purposes of this clause, an alien who has filed a petition under clause (iii) or (iv) of section 204(a)(1)(A) of this Act remains an immediate relative in the event that the United States citizen spouse or parent loses United States citizenship on account of the abuse.".

(b) ALLOWING REMARRIAGE OF BATTERED IMMIGRANTS.—Section 204(h) of the Immigration and Nationality Act (8 U.S.C. 1154(h)) is amended by adding at the end the following: "Remarriage of an alien whose petition was approved under section 204(a)(1)(B)(ii) or 204(a)(1)(A)(iii) or marriage of an alien described in clause (iv) or (vi) of section 204(a)(1)(A) or in section 204(a)(1)(B)(iii) shall not be the basis for revocation of a petition approval under section 205.".

### SEC. 1508. TECHNICAL CORRECTION TO QUALIFIED ALIEN DEFINITION FOR BATTERED IMMIGRANTS.

Section 431(c)(1)(B)(iii) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (8 U.S.C. 1641(c)(1)(B)(iii)) is amended to read as follows:

"(iii) suspension of deportation under section 244(a)(3) of the Immigration and Nationality Act (as in effect before the title III–A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).".

### SEC. 1509. ACCESS TO CUBAN ADJUSTMENT ACT FOR BATTERED IMMIGRANT SPOUSES AND CHILDREN.

(a) IN GENERAL.—The last sentence of the first section of Public Law 89–732 (November 2, 1966; 8 U.S.C. 1255 note) is amended by striking the period at the end and inserting the following: ", except that such spouse or child who has been battered or subjected to extreme cruelty may adjust to permanent resident status under this Act without demonstrating that he or she is residing with the Cuban spouse or parent in the United States. In acting on

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1531

applications under this section with respect to spouses or children who have been battered or subjected to extreme cruelty, the Attorney General shall apply the provisions of section 204(a)(1)(H).".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall be effective as if included in subtitle G of title IV of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322; 108 Stat. 1953 et seq.).

8 USC 1255 note.

### SEC. 1510. ACCESS TO THE NICARAGUAN ADJUSTMENT AND CENTRAL AMERICAN RELIEF ACT FOR BATTERED SPOUSES AND CHILDREN.

(a) ADJUSTMENT OF STATUS OF CERTAIN NICARAGUAN AND CUBAN BATTERED SPOUSES.—Section 202(d) of the Nicaraguan Adjustment and Central American Relief Act (8 U.S.C. 1255 note; Public Law 105–100, as amended) is amended—

(1) in paragraph (1), by striking subparagraph (B) and inserting the following:

"(B) the alien—

"(i) is the spouse, child, or unmarried son or daughter of an alien whose status is adjusted to that of an alien lawfully admitted for permanent residence under subsection (a), except that in the case of such an unmarried son or daughter, the son or daughter shall be required to establish that the son or daughter has been physically present in the United States for a continuous period beginning not later than December 1, 1995, and ending not earlier than the date on which the application for adjustment under this subsection is filed; or

"(ii) was, at the time at which an alien filed for adjustment under subsection (a), the spouse or child of an alien whose status is adjusted to that of an alien lawfully admitted for permanent residence under subsection (a), and the spouse, child, or child of the spouse has been battered or subjected to extreme cruelty by the alien that filed for adjustment under subsection (a);"; and

(2) by adding at the end the following:

"(3) PROCEDURE.—In acting on an application under this section with respect to a spouse or child who has been battered or subjected to extreme cruelty, the Attorney General shall apply section 204(a)(1)(H).".

(b) CANCELLATION OF REMOVAL AND SUSPENSION OF DEPORTATION TRANSITION RULES FOR CERTAIN BATTERED SPOUSES.—Section 309(c)(5)(C) of the Illegal Immigration and Reform and Immigrant Responsibility Act of 1996 (division C of Public Law 104–208; 8 U.S.C. 1101 note) (as amended by section 1506(b)(3) of this title) is amended—

(1) in clause (i)—

(A) by striking the period at the end of subclause (VI) (as added by section 1506(b)(3) of this title) and inserting "; or"; and

(B) by adding at the end the following:

"(VII)(aa) was the spouse or child of an alien described in subclause (I), (II), or (V)—

"(AA) at the time at which a decision is rendered to suspend the deportation or cancel the removal of the alien;

"(BB) at the time at which the alien filed an application for suspension of deportation or cancellation of removal; or

"(CC) at the time at which the alien registered for benefits under the settlement agreement in American Baptist Churches, et. al. v. Thornburgh (ABC), applied for temporary protected status, or applied for asylum; and

"(bb) the spouse, child, or child of the spouse has been battered or subjected to extreme cruelty by the alien described in subclause (I), (II), or (V)."; and

(2) by adding at the end the following:

"(iii) CONSIDERATION OF PETITIONS.—In acting on a petition filed under subclause (VII) of clause (i) the provisions set forth in section 204(a)(1)(H) shall apply.

"(iv) RESIDENCE WITH SPOUSE OR PARENT NOT REQUIRED.—For purposes of the application of clause (i)(VII), a spouse or child shall not be required to demonstrate that he or she is residing with the spouse or parent in the United States.".

8 USC 1101 note.     (c) EFFECTIVE DATE.—The amendments made by subsections (a) and (b) shall be effective as if included in the Nicaraguan Adjustment and Central American Relief Act (8 U.S.C. 1255 note; Public Law 105–100, as amended).

8 USC 1255 note.     **SEC. 1511. ACCESS TO THE HAITIAN REFUGEE FAIRNESS ACT OF 1998 FOR BATTERED SPOUSES AND CHILDREN.**

(a) IN GENERAL.—Section 902(d)(1)(B) of the Haitian Refugee Immigration Fairness Act of 1998 (division A of section 101(h) of Public Law 105–277; 112 Stat. 2681–538) is amended to read as follows:

"(B)(i) the alien is the spouse, child, or unmarried son or daughter of an alien whose status is adjusted to that of an alien lawfully admitted for permanent residence under subsection (a), except that, in the case of such an unmarried son or daughter, the son or daughter shall be required to establish that the son or daughter has been physically present in the United States for a continuous period beginning not later than December 1, 1995, and ending not earlier than the date on which the application for such adjustment is filed;

"(ii) at the time of filing of the application for adjustment under subsection (a), the alien is the spouse or child of an alien whose status is adjusted to that of an alien lawfully admitted for permanent residence under subsection (a) and the spouse, child, or child of the spouse has been battered or subjected to extreme cruelty by the individual described in subsection (a); and

"(iii) in acting on applications under this section with respect to spouses or children who have been battered or subjected to extreme cruelty, the Attorney General shall apply the provisions of section 204(a)(1)(H).".

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1533

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall be effective as if included in the Haitian Refugee Immigration Fairness Act of 1998 (division A of section 101(h) of Public Law 105–277; 112 Stat. 2681–538).

## SEC. 1512. ACCESS TO SERVICES AND LEGAL REPRESENTATION FOR BATTERED IMMIGRANTS.

(a) LAW ENFORCEMENT AND PROSECUTION GRANTS.—Section 2001(b) of part T of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796gg(b)) (as amended by section 1209(c) of this division) is amended by adding at the end the following:

"(11) providing assistance to victims of domestic violence and sexual assault in immigration matters.".

(b) GRANTS TO ENCOURAGE ARRESTS.—Section 2101(b)(5) of part U of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796hh(b)(5)) is amended by inserting before the period the following: ", including strengthening assistance to such victims in immigration matters".

(c) RURAL DOMESTIC VIOLENCE AND CHILD ABUSE ENFORCEMENT GRANTS.—Section 40295(a)(2) of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322; 108 Stat. 1953; 42 U.S.C. 13971(a)(2)) is amended to read as follows:

"(2) to provide treatment, counseling, and assistance to victims of domestic violence and child abuse, including in immigration matters; and".

(d) CAMPUS DOMESTIC VIOLENCE GRANTS.—Section 826(b)(5) of the Higher Education Amendments of 1998 (Public Law 105–244; 20 U.S.C. 1152) is amended by inserting before the period at the end the following: ", including assistance to victims in immigration matters".

## SEC. 1513. PROTECTION FOR CERTAIN CRIME VICTIMS INCLUDING VICTIMS OF CRIMES AGAINST WOMEN.

(a) FINDINGS AND PURPOSE.—          8 USC 1101 note.

(1) FINDINGS.—Congress makes the following findings:

(A) Immigrant women and children are often targeted to be victims of crimes committed against them in the United States, including rape, torture, kidnaping, trafficking, incest, domestic violence, sexual assault, female genital mutilation, forced prostitution, involuntary servitude, being held hostage or being criminally restrained.

(B) All women and children who are victims of these crimes committed against them in the United States must be able to report these crimes to law enforcement and fully participate in the investigation of the crimes committed against them and the prosecution of the perpetrators of such crimes.

(2) PURPOSE.—

(A) The purpose of this section is to create a new nonimmigrant visa classification that will strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes described in section 101(a)(15)(U)(iii) of the Immigration and Nationality Act committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States. This visa will encourage

law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens.

(B) Creating a new nonimmigrant visa classification will facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused aliens who are not in lawful immigration status. It also gives law enforcement officials a means to regularize the status of cooperating individuals during investigations or prosecutions. Providing temporary legal status to aliens who have been severely victimized by criminal activity also comports with the humanitarian interests of the United States.

(C) Finally, this section gives the Attorney General discretion to convert the status of such nonimmigrants to that of permanent residents when doing so is justified on humanitarian grounds, for family unity, or is otherwise in the public interest.

(b) ESTABLISHMENT OF HUMANITARIAN/MATERIAL WITNESS NON-IMMIGRANT CLASSIFICATION.—Section 101(a)(15) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)) (as amended by section 107 of this Act) is amended—

(1) by striking "or" at the end of subparagraph (S);

(2) by striking the period at the end of subparagraph (T) and inserting "; or"; and

(3) by adding at the end the following new subparagraph:

"(U)(i) subject to section 214(o), an alien who files a petition for status under this subparagraph, if the Attorney General determines that—

"(I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);

"(II) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning criminal activity described in clause (iii);

"(III) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and

"(IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States;

"(ii) if the Attorney General considers it necessary to avoid extreme hardship to the spouse, the child, or, in the case of an alien child, the parent of the alien described in clause (i), the Attorney General may also grant status under this paragraph based upon certification of a government official listed in clause (i)(III) that an investigation or prosecution would be harmed without the

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1535

assistance of the spouse, the child, or, in the case of an alien child, the parent of the alien; and

"(iii) the criminal activity referred to in this clause is that involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law: rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes.".

(c) CONDITIONS FOR ADMISSION AND DUTIES OF THE ATTORNEY GENERAL.—Section 214 of such Act (8 U.S.C. 1184) (as amended by section 107 of this Act) is amended by adding at the end the following new subsection:

"(o) REQUIREMENTS APPLICABLE TO SECTION 101(a)(15)(U) VISAS.—

"(1) PETITIONING PROCEDURES FOR SECTION 101(a)(15)(U) VISAS.—The petition filed by an alien under section 101(a)(15)(U)(i) shall contain a certification from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority investigating criminal activity described in section 101(a)(15)(U)(iii). This certification may also be provided by an official of the Service whose ability to provide such certification is not limited to information concerning immigration violations. This certification shall state that the alien "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of criminal activity described in section 101(a)(15)(U)(iii).

"(2) NUMERICAL LIMITATIONS.—

"(A) The number of aliens who may be issued visas or otherwise provided status as nonimmigrants under section 101(a)(15)(U) in any fiscal year shall not exceed 10,000.

"(B) The numerical limitations in subparagraph (A) shall only apply to principal aliens described in section 101(a)(15)(U)(i), and not to spouses, children, or, in the case of alien children, the alien parents of such children.

"(3) DUTIES OF THE ATTORNEY GENERAL WITH RESPECT TO 'U' VISA NONIMMIGRANTS.—With respect to nonimmigrant aliens described in subsection (a)(15)(U)—

"(A) the Attorney General and other government officials, where appropriate, shall provide those aliens with referrals to nongovernmental organizations to advise the aliens regarding their options while in the United States and the resources available to them; and

"(B) the Attorney General shall, during the period those aliens are in lawful temporary resident status under that subsection, provide the aliens with employment authorization.

"(4) CREDIBLE EVIDENCE CONSIDERED.—In acting on any petition filed under this subsection, the consular officer or the Attorney General, as appropriate, shall consider any credible evidence relevant to the petition.

114 STAT. 1536          PUBLIC LAW 106–386—OCT. 28, 2000

"(5) NONEXCLUSIVE RELIEF.—Nothing in this subsection limits the ability of aliens who qualify for status under section 101(a)(15)(U) to seek any other immigration benefit or status for which the alien may be eligible.".

8 USC 1367.

(d) PROHIBITION ON ADVERSE DETERMINATIONS OF ADMISSIBILITY OR DEPORTABILITY.—Section 384(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 is amended—

(1) by striking "or" at the end of paragraph (1)(C);

(2) by striking the comma at the end of paragraph (1)(D) and inserting ", or"; and

(3) by inserting after paragraph (1)(D) the following new subparagraph:

"(E) in the case of an alien applying for status under section 101(a)(15)(U) of the Immigration and Nationality Act, the perpetrator of the substantial physical or mental abuse and the criminal activity,"; and

(4) in paragraph (2), by inserting "section 101(a)(15)(U)," after "section 216(c)(4)(C),".

(e) WAIVER OF GROUNDS OF INELIGIBILITY FOR ADMISSION.—Section 212(d) of the Immigration and Nationality Act (8 U.S.C. 1182(d)) is amended by adding at the end the following new paragraph:

"(13) The Attorney General shall determine whether a ground of inadmissibility exists with respect to a nonimmigrant described in section 101(a)(15)(U). The Attorney General, in the Attorney General's discretion, may waive the application of subsection (a) (other than paragraph (3)(E)) in the case of a nonimmigrant described in section 101(a)(15)(U), if the Attorney General considers it to be in the public or national interest to do so.".

(f) ADJUSTMENT TO PERMANENT RESIDENT STATUS.—Section 245 of such Act (8 U.S.C. 1255) is amended by adding at the end the following new subsection:

"(l)(1) The Attorney General may adjust the status of an alien admitted into the United States (or otherwise provided nonimmigrant status) under section 101(a)(15)(U) to that of an alien lawfully admitted for permanent residence if the alien is not described in section 212(a)(3)(E), unless the Attorney General determines based on affirmative evidence that the alien unreasonably refused to provide assistance in a criminal investigation or prosecution, if—

"(A) the alien has been physically present in the United States for a continuous period of at least 3 years since the date of admission as a nonimmigrant under clause (i) or (ii) of section 101(a)(15)(U); and

"(B) in the opinion of the Attorney General, the alien's continued presence in the United States is justified on humanitarian grounds, to ensure family unity, or is otherwise in the public interest.

"(2) An alien shall be considered to have failed to maintain continuous physical presence in the United States under paragraph (1)(A) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days unless the absence is in order to assist in the investigation or prosecution or unless an official involved in the investigation or prosecution certifies that the absence was otherwise justified.

PUBLIC LAW 106–386—OCT. 28, 2000          114 STAT. 1537

"(3) Upon approval of adjustment of status under paragraph (1) of an alien described in section 101(a)(15)(U)(i) the Attorney General may adjust the status of or issue an immigrant visa to a spouse, a child, or, in the case of an alien child, a parent who did not receive a nonimmigrant visa under section 101(a)(15)(U)(ii) if the Attorney General considers the grant of such status or visa necessary to avoid extreme hardship.

"(4) Upon the approval of adjustment of status under paragraph (1) or (3), the Attorney General shall record the alien's lawful admission for permanent residence as of the date of such approval.".

# TITLE VI—MISCELLANEOUS

**SEC. 1601. NOTICE REQUIREMENTS FOR SEXUALLY VIOLENT OFFENDERS.**

(a) SHORT TITLE.—This section may be cited as the "Campus Sex Crimes Prevention Act".

(b) NOTICE WITH RESPECT TO INSTITUTIONS OF HIGHER EDUCATION.—

(1) IN GENERAL.—Section 170101 of the Violent Crime Control and Law Enforcement Act of 1994 (42 U.S.C. 14071) is amended by adding at the end the following:

"(j) NOTICE OF ENROLLMENT AT OR EMPLOYMENT BY INSTITUTIONS OF HIGHER EDUCATION.—

"(1) NOTICE BY OFFENDERS.—

"(A) IN GENERAL.—In addition to any other requirements of this section, any person who is required to register in a State shall provide notice as required under State law—

"(i) of each institution of higher education in that State at which the person is employed, carries on a vocation, or is a student; and

"(ii) of each change in enrollment or employment status of such person at an institution of higher education in that State.

"(B) CHANGE IN STATUS.—A change in status under subparagraph (A)(ii) shall be reported by the person in the manner provided by State law. State procedures shall ensure that the updated information is promptly made available to a law enforcement agency having jurisdiction where such institution is located and entered into the appropriate State records or data system.

"(2) STATE REPORTING.—State procedures shall ensure that the registration information collected under paragraph (1)—

"(A) is promptly made available to a law enforcement agency having jurisdiction where such institution is located; and

"(B) entered into the appropriate State records or data system.

"(3) REQUEST.—Nothing in this subsection shall require an educational institution to request such information from any State.".

(2) EFFECTIVE DATE.—The amendment made by this subsection shall take effect 2 years after the date of the enactment of this Act.

(c) DISCLOSURES BY INSTITUTIONS OF HIGHER EDUCATION.—

Campus Sex Crimes Prevention Act. 20 USC 1001 note.

42 USC 14071 note.

PUBLIC LAW 109–13—MAY 11, 2005          119 STAT. 231

Public Law 109–13
109th Congress

An Act

Making Emergency Supplemental Appropriations for Defense, the Global War on Terror, and Tsunami Relief, for the fiscal year ending September 30, 2005, and for other purposes.

May 11, 2005
[H.R. 1268]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005".

Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005.

**SEC. 2. TABLE OF CONTENTS.**

The table of contents for this Act is as follows:

Sec. 1. Short title.
Sec. 2. Table of contents.
Sec. 3. References.

DIVISION A—EMERGENCY SUPPLEMENTAL APPROPRIATIONS FOR DEFENSE, THE GLOBAL WAR ON TERROR, AND TSUNAMI RELIEF, 2005

Title I—Defense Related Appropriations
Title II—International Programs and Assistance for Reconstruction and the War on Terror
Title III—Domestic Appropriations for the War on Terror
Title IV—Indian Ocean Tsunami Relief
Title V—Other Emergency Appropriations
Title VI—General Provisions and Technical Corrections

DIVISION B—REAL ID ACT OF 2005

**SEC. 3. REFERENCES.**

Except as expressly provided otherwise, any reference to "this Act" contained in any division of this Act shall be treated as referring only to the provisions of that division.

# DIVISION A—EMERGENCY SUPPLEMENTAL APPROPRIATIONS ACT FOR DEFENSE, THE GLOBAL WAR ON TERROR, AND TSUNAMI RELIEF, 2005

Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005.

That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the fiscal year ending September 30, 2005, and for other purposes, namely:

(1) DRIVER'S LICENSE.—The term "driver's license" means a motor vehicle operator's license, as defined in section 30301 of title 49, United States Code.

(2) IDENTIFICATION CARD.—The term "identification card" means a personal identification card, as defined in section 1028(d) of title 18, United States Code, issued by a State.

(3) OFFICIAL PURPOSE.—The term "official purpose" includes but is not limited to accessing Federal facilities, boarding federally regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary shall determine.

(4) SECRETARY.—The term "Secretary" means the Secretary of Homeland Security.

(5) STATE.—The term "State" means a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, the Trust Territory of the Pacific Islands, and any other territory or possession of the United States.

49 USC 30301 note.

**SEC. 202. MINIMUM DOCUMENT REQUIREMENTS AND ISSUANCE STANDARDS FOR FEDERAL RECOGNITION.**

(a) MINIMUM STANDARDS FOR FEDERAL USE.—

Effective date.

(1) IN GENERAL.—Beginning 3 years after the date of the enactment of this division, a Federal agency may not accept, for any official purpose, a driver's license or identification card issued by a State to any person unless the State is meeting the requirements of this section.

(2) STATE CERTIFICATIONS.—The Secretary shall determine whether a State is meeting the requirements of this section based on certifications made by the State to the Secretary. Such certifications shall be made at such times and in such manner as the Secretary, in consultation with the Secretary of Transportation, may prescribe by regulation.

(b) MINIMUM DOCUMENT REQUIREMENTS.—To meet the requirements of this section, a State shall include, at a minimum, the following information and features on each driver's license and identification card issued to a person by the State:

(1) The person's full legal name.

(2) The person's date of birth.

(3) The person's gender.

(4) The person's driver's license or identification card number.

(5) A digital photograph of the person.

(6) The person's address of principle residence.

(7) The person's signature.

(8) Physical security features designed to prevent tampering, counterfeiting, or duplication of the document for fraudulent purposes.

(9) A common machine-readable technology, with defined minimum data elements.

(c) MINIMUM ISSUANCE STANDARDS.—

(1) IN GENERAL.—To meet the requirements of this section, a State shall require, at a minimum, presentation and verification of the following information before issuing a driver's license or identification card to a person:

PUBLIC LAW 109–13—MAY 11, 2005          119 STAT. 313

(A) A photo identity document, except that a non-photo identity document is acceptable if it includes both the person's full legal name and date of birth.

(B) Documentation showing the person's date of birth.

(C) Proof of the person's social security account number or verification that the person is not eligible for a social security account number.

(D) Documentation showing the person's name and address of principal residence.

(2) SPECIAL REQUIREMENTS.—

(A) IN GENERAL.—To meet the requirements of this section, a State shall comply with the minimum standards of this paragraph.

(B) EVIDENCE OF LAWFUL STATUS.—A State shall require, before issuing a driver's license or identification card to a person, valid documentary evidence that the person—

(i) is a citizen or national of the United States;

(ii) is an alien lawfully admitted for permanent or temporary residence in the United States;

(iii) has conditional permanent resident status in the United States;

(iv) has an approved application for asylum in the United States or has entered into the United States in refugee status;

(v) has a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States;

(vi) has a pending application for asylum in the United States;

(vii) has a pending or approved application for temporary protected status in the United States;

(viii) has approved deferred action status; or

(ix) has a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States.

(C) TEMPORARY DRIVERS' LICENSES AND IDENTIFICATION CARDS.—

(i) IN GENERAL.—If a person presents evidence under any of clauses (v) through (ix) of subparagraph (B), the State may only issue a temporary driver's license or temporary identification card to the person.

(ii) EXPIRATION DATE.—A temporary driver's license or temporary identification card issued pursuant to this subparagraph shall be valid only during the period of time of the applicant's authorized stay in the United States or, if there is no definite end to the period of authorized stay, a period of one year.

(iii) DISPLAY OF EXPIRATION DATE.—A temporary driver's license or temporary identification card issued pursuant to this subparagraph shall clearly indicate that it is temporary and shall state the date on which it expires.

(iv) RENEWAL.—A temporary driver's license or temporary identification card issued pursuant to this subparagraph may be renewed only upon presentation

119 STAT. 314          PUBLIC LAW 109–13—MAY 11, 2005

of valid documentary evidence that the status by which the applicant qualified for the temporary driver's license or temporary identification card has been extended by the Secretary of Homeland Security.

(3) VERIFICATION OF DOCUMENTS.—To meet the requirements of this section, a State shall implement the following procedures:

(A) Before issuing a driver's license or identification card to a person, the State shall verify, with the issuing agency, the issuance, validity, and completeness of each document required to be presented by the person under paragraph (1) or (2).

(B) The State shall not accept any foreign document, other than an official passport, to satisfy a requirement of paragraph (1) or (2).

Deadline.
Memorandum.

(C) Not later than September 11, 2005, the State shall enter into a memorandum of understanding with the Secretary of Homeland Security to routinely utilize the automated system known as Systematic Alien Verification for Entitlements, as provided for by section 404 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (110 Stat. 3009–664), to verify the legal presence status of a person, other than a United States citizen, applying for a driver's license or identification card.

(d) OTHER REQUIREMENTS.—To meet the requirements of this section, a State shall adopt the following practices in the issuance of drivers' licenses and identification cards:

(1) Employ technology to capture digital images of identity source documents so that the images can be retained in electronic storage in a transferable format.

(2) Retain paper copies of source documents for a minimum of 7 years or images of source documents presented for a minimum of 10 years.

(3) Subject each person applying for a driver's license or identification card to mandatory facial image capture.

(4) Establish an effective procedure to confirm or verify a renewing applicant's information.

(5) Confirm with the Social Security Administration a social security account number presented by a person using the full social security account number. In the event that a social security account number is already registered to or associated with another person to which any State has issued a driver's license or identification card, the State shall resolve the discrepancy and take appropriate action.

(6) Refuse to issue a driver's license or identification card to a person holding a driver's license issued by another State without confirmation that the person is terminating or has terminated the driver's license.

(7) Ensure the physical security of locations where drivers' licenses and identification cards are produced and the security of document materials and papers from which drivers' licenses and identification cards are produced.

(8) Subject all persons authorized to manufacture or produce drivers' licenses and identification cards to appropriate security clearance requirements.

PUBLIC LAW 109–13—MAY 11, 2005         119 STAT. 315

(9) Establish fraudulent document recognition training programs for appropriate employees engaged in the issuance of drivers' licenses and identification cards.

(10) Limit the period of validity of all driver's licenses and identification cards that are not temporary to a period that does not exceed 8 years.

(11) In any case in which the State issues a driver's license or identification card that does not satisfy the requirements of this section, ensure that such license or identification card—

(A) clearly states on its face that it may not be accepted by any Federal agency for federal identification or any other official purpose; and

(B) uses a unique design or color indicator to alert Federal agency and other law enforcement personnel that it may not be accepted for any such purpose.

(12) Provide electronic access to all other States to information contained in the motor vehicle database of the State.

(13) Maintain a State motor vehicle database that contains, at a minimum—

(A) all data fields printed on drivers' licenses and identification cards issued by the State; and

(B) motor vehicle drivers' histories, including motor vehicle violations, suspensions, and points on licenses.

## SEC. 203. TRAFFICKING IN AUTHENTICATION FEATURES FOR USE IN FALSE IDENTIFICATION DOCUMENTS.

49 USC 30301 note.

(a) CRIMINAL PENALTY.—Section 1028(a)(8) of title 18, United States Code, is amended by striking "false authentication features" and inserting "false or actual authentication features".

(b) USE OF FALSE DRIVER'S LICENSE AT AIRPORTS.—

(1) IN GENERAL.—The Secretary shall enter, into the appropriate aviation security screening database, appropriate information regarding any person convicted of using a false driver's license at an airport (as such term is defined in section 40102 of title 49, United States Code).

(2) FALSE DEFINED.—In this subsection, the term "false" has the same meaning such term has under section 1028(d) of title 18, United States Code.

## SEC. 204. GRANTS TO STATES.

49 USC 30301 note.

(a) IN GENERAL.—The Secretary may make grants to a State to assist the State in conforming to the minimum standards set forth in this title.

(b) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated to the Secretary for each of the fiscal years 2005 through 2009 such sums as may be necessary to carry out this title.

## SEC. 205. AUTHORITY.

49 USC 30301 note.

(a) PARTICIPATION OF SECRETARY OF TRANSPORTATION AND STATES.—All authority to issue regulations, set standards, and issue grants under this title shall be carried out by the Secretary, in consultation with the Secretary of Transportation and the States.

(b) EXTENSIONS OF DEADLINES.—The Secretary may grant to a State an extension of time to meet the requirements of section 202(a)(1) if the State provides adequate justification for noncompliance.

H. R. 3355

# One Hundred Third Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Tuesday,*
*the twenty-fifth day of January, one thousand nine hundred and ninety-four*

## An Act

To control and prevent crime.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Violent Crime Control and Law Enforcement Act of 1994".

**SEC. 2. TABLE OF CONTENTS.**

The following is the table of contents for this Act:

Sec. 1. Short title.
Sec. 2. Table of contents.

### TITLE I—PUBLIC SAFETY AND POLICING

Sec. 10001. Short title.
Sec. 10002. Purposes.
Sec. 10003. Community policing; "Cops on the Beat".

### TITLE II—PRISONS

Subtitle A—Violent Offender Incarceration and Truth in Sentencing Incentive Grants

Sec. 20101. Grants for correctional facilities.
Sec. 20102. Truth in sentencing incentive grants.
Sec. 20103. Violent offender incarceration grants.
Sec. 20104. Matching requirement.
Sec. 20105. Rules and regulations.
Sec. 20106. Technical assistance and training.
Sec. 20107. Evaluation.
Sec. 20108. Definitions.
Sec. 20109. Authorization of appropriations.

Subtitle B—Punishment for Young Offenders

Sec. 20201. Certain punishment for young offenders.

Subtitle C—Alien Incarceration

Sec. 20301. Incarceration of undocumented criminal aliens.

Subtitle D—Miscellaneous Provisions

Sec. 20401. Prisoner's place of imprisonment.
Sec. 20402. Prison impact assessments.
Sec. 20403. Sentences to account for costs to the Government of imprisonment, release, and probation.
Sec. 20404. Application to prisoners to which prior law applies.
Sec. 20405. Crediting of "good time".
Sec. 20406. Task force on prison construction standardization and techniques.
Sec. 20407. Efficiency in law enforcement and corrections.
Sec. 20408. Amendments to the Department of Education Organization Act and the National Literacy Act of 1991.
Sec. 20409. Appropriate remedies for prison overcrowding.
Sec. 20410. Congressional approval of any expansion at Lorton and congressional hearings on future needs.

H. R. 3355—158

(1) the term "national crime information databases" refers to the National Crime Information Center and its incorporated criminal history databases, including the Interstate Identification Index; and

(2) the term "protection order" includes an injunction or any other order issued for the purpose of preventing violent or threatening acts or harassment against, or contact or communication with or physical proximity to, another person, including temporary and final orders issued by civil or criminal courts (other than support or child custody orders) whether obtained by filing an independent action or as a pendente lite order in another proceeding so long as any civil order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection.

# Subtitle G—Protections for Battered Immigrant Women and Children

### SEC. 40701. ALIEN PETITIONING RIGHTS FOR IMMEDIATE RELATIVE OR SECOND PREFERENCE STATUS.

(a) IN GENERAL.—Section 204(a)(1) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(1)) is amended—

(1) in subparagraph (A)—

(A) by inserting "(i)" after "(A)",

(B) by redesignating the second sentence as clause (ii), and

(C) by adding at the end the following new clauses:

"(iii) An alien who is the spouse of a citizen of the United States, who is a person of good moral character, who is eligible to be classified as an immediate relative under section 201(b)(2)(A)(i), and who has resided in the United States with the alien's spouse may file a petition with the Attorney General under this subparagraph for classification of the alien (and any child of the alien if such a child has not been classified under clause (iv) under such section if the alien demonstrates to the Attorney General that—

"(I) the alien is residing in the United States, the marriage between the alien and the spouse was entered into in good faith by the alien, and during the marriage the alien or a child of the alien has been battered by or has been the subject of extreme cruelty perpetrated by the alien's spouse; and

"(II) the alien is a person whose deportation, in the opinion of the Attorney General, would result in extreme hardship to the alien or a child of the alien.

"(iv) An alien who is the child of a citizen of the United States, who is a person of good moral character, who is eligible to be classified as an immediate relative under section 201(b)(2)(A)(i), and who has resided in the United States with the citizen parent may file a petition with the Attorney General under this subparagraph for classification of the alien under such section if the alien demonstrates to the Attorney General that—

"(I) the alien is residing in the United States and during the period of residence with the citizen parent the alien has been battered by or has been the subject of extreme cruelty perpetrated by the alien's citizen parent; and

H. R. 3355—159

"(II) the alien is a person whose deportation, in the opinion of the Attorney General, would result in extreme hardship to the alien.";

(2) in subparagraph (B)—

(A) by inserting "(i)" after "(B)"; and

(B) by adding at the end the following new clauses:

"(ii) An alien who is the spouse of an alien lawfully admitted for permanent residence, who is a person of good moral character, who is eligible for classification under section 203(a)(2)(A), and who has resided in the United States with the alien's legal permanent resident spouse may file a petition with the Attorney General under this subparagraph for classification of the alien (and any child of the alien if such a child has not been classified under clause (iii)) under such section if the alien demonstrates to the Attorney General that the conditions described in subclauses (I) and (II) of subparagraph (A)(iii) are met with respect to the alien.

"(iii) An alien who is the child of an alien lawfully admitted for permanent residence, who is a person of good moral character, who is eligible for classification under section 203(a)(2)(A), and who has resided in the United States with the alien's permanent resident alien parent may file a petition with the Attorney General under this subparagraph for classification of the alien under such section if the alien demonstrates to the Attorney General that—

"(I) the alien is residing in the United States and during the period of residence with the permanent resident parent the alien has been battered by or has been the subject of extreme cruelty perpetrated by the alien's permanent resident parent; and

"(II) the alien is a person whose deportation, in the opinion of the Attorney General, would result in extreme hardship to the alien."; and

(3) by adding at the end the following new subparagraph:

"(H) In acting on petitions filed under clause (iii) or (iv) of subparagraph (A) or clause (ii) or (iii) of subparagraph (B), the Attorney General shall consider any credible evidence relevant to the petition. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.".

(b) CONFORMING AMENDMENTS.—(1) Section 204(a)(2) of the Immigration and Nationality Act (8 U.S.C. 1154(a)(2)) is amended—

(A) in subparagraph (A) by striking "filed by an alien who," and inserting "for the classification of the spouse of an alien if the alien,"; and

(B) in subparagraph (B) by striking "by an alien whose prior marriage" and inserting "for the classification of the spouse of an alien if the prior marriage of the alien".

(2) Section 201(b)(2)(A)(i) of the Immigration and Nationality Act (8 U.S.C. 1151(b)(2)(A)(i)) is amended by striking "204(a)(1)(A)" and inserting "204(a)(1)(A)(ii)".

(c) SURVIVAL RIGHTS TO PETITION.—Section 204 of the Immigration and Nationality Act (8 U.S.C. 1154) is amended by adding at the end the following new subsection:

"(h) The legal termination of a marriage may not be the sole basis for revocation under section 205 of a petition filed under subsection (a)(1)(A)(iii) or a petition filed under subsection (a)(1)(B)(ii) pursuant to conditions described in subsection (a)(1)(A)(iii)(I).".

H. R. 3355—160

(d) EFFECTIVE DATE.—The amendments made by this section shall take effect January 1, 1995.

## SEC. 40702. USE OF CREDIBLE EVIDENCE IN SPOUSAL WAIVER APPLICATIONS.

(a) IN GENERAL.—Section 216(c)(4) of the Immigration and Nationality Act (8 U.S.C. 1186a(c)(4)) is amended by inserting after the second sentence the following: "In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect on the date of enactment of this Act and shall apply to applications made before, on, or after such date.

## SEC. 40703. SUSPENSION OF DEPORTATION.

(a) BATTERED SPOUSE OR CHILD.—Section 244(a) of the Immigration and Nationality Act (8 U.S.C. 1254(a)) is amended—

(1) by striking "or" at the end of paragraph (1);

(2) by striking the period at the end of paragraph (2) and inserting "; or"; and

(3) by inserting after paragraph (2) the following:

"(3) is deportable under any law of the United States except section 241(a)(1)(G) and the provisions specified in paragraph (2); has been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of such application; has been battered or subjected to extreme cruelty in the United States by a spouse or parent who is a United States citizen or lawful permanent resident (or is the parent of a child of a United States citizen or lawful permanent resident and the child has been battered or subjected to extreme cruelty in the United States by such citizen or permanent resident parent); and proves that during all of such time in the United States the alien was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or the alien's parent or child.".

(b) CONSIDERATION OF EVIDENCE.—Section 244 of the Immigration and Nationality Act (8 U.S.C. 1254) is amended by adding at the end the following new subsection:

"(g) In acting on applications under subsection (a)(3), the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.".

# TITLE V—DRUG COURTS

## SEC. 50001. DRUG COURTS.

(a) IN GENERAL.—Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3711 et seq.), as amended by section 40231(a), is amended—

(1) by redesignating part V as part W;

(2) by redesignating section 2201 as section 2301; and

(3) by inserting after part U the following new part:

42

PUBLIC LAW 110–457—DEC. 23, 2008

WILLIAM WILBERFORCE TRAFFICKING
VICTIMS PROTECTION REAUTHORIZATION
ACT OF 2008

122 STAT. 5084          PUBLIC LAW 110–457—DEC. 23, 2008

96 of title 18, United States Code, in cases involving human trafficking, sex trafficking, or prostitution offenses.

(D) Activities or actions, in fiscal years 2008 and 2009, by Federal departments and agencies to enforce the offenses set forth in the Act of August 15, 1935 (49 Stat. 651; D.C. Code 22–2701 et seq.) (relating to prostitution and pandering), including information regarding the number of prosecutions, the number of convictions, and an identification of multiple-defendant cases and the results thereof.

(2) STUDIES.—Subject to availability of appropriations, the head of the National Institute of Justice shall conduct—

(A) a comprehensive study to examine the use of Internet-based businesses and services by criminal actors in the sex industry, and to disseminate best practices for investigation and prosecution of trafficking and prostitution offenses involving the Internet; and

(B) a comprehensive study to examine the application of State human trafficking statutes, including such statutes based on the model law developed by the Department of Justice, cases prosecuted thereunder, and the impact, if any, on enforcement of other State criminal statutes.

Deadline.
Reports.

(3) STUDIES PREVIOUSLY REQUIRED BY LAW.—Not later than 90 days after the date of the enactment of this Act, the Attorney General shall report to the Committee on Foreign Affairs and the Committee on the Judiciary of the House of Representatives and the Committee on Foreign Relations and the Committee on the Judiciary of the Senate on the status of the studies required by paragraph (B)(i) and (ii) of section 201(a)(1) of the Trafficking Victims Protection Reauthorization Act of 2005 (42 U.S.C. 14044(a)(1)) and indicate the projected date when such studies will be completed.

**SEC. 238. PROCESSING OF CERTAIN VISAS.**

(a) REPORT.—Not later than 180 days after the date of the enactment of this Act, the Secretary of Homeland Security shall submit to the Committee on Foreign Affairs and the Committee on the Judiciary of the House of Representatives and the Committee on Foreign Relations and the Committee on the Judiciary of the Senate a report on the operations of the specially-trained Violence Against Women Act Unit at the Citizenship and Immigration Service's Vermont Service Center.

(b) ELEMENTS.—The report required by subsection (a) shall include the following elements:

(1) Detailed information about the funds expended to support the work of the Violence Against Women Act Unit at the Vermont Service Center.

(2) A description of training for adjudicators, victim witness liaison officers, managers, and others working in the Violence Against Women Act Unit, including general training and training on confidentiality issues.

(3) Measures taken to ensure the retention of specially-trained staff within the Violence Against Women Act Unit.

(4) Measures taken to ensure the creation and retention of a core of supervisory staff within the Violence Against Women Act Unit and the Vermont Service Center with responsibility over resource allocation, policy, program development,

PUBLIC LAW 110–457—DEC. 23, 2008          122 STAT. 5085

training and other substantive or operational issues affecting the Unit, who have historical knowledge and experience with the Trafficking Victims Protection Act of 2000, the Violence Against Women Act of 1994, Violence Against Women Act of 1994 confidentiality, and the specialized policies and procedures of the Department of Homeland Security and its predecessor agencies in such cases.

(5) Measures taken to ensure routine consultation between the Violence Against Women Act Unit, U.S. Citizenship and Immigration Services Headquarters, and the Office of Policy and Strategy during the development of any Department of Homeland Security regulations or policies that impact Violence Against Women Act of 1994 confidentiality-protected victims and their derivative family members.

(6) Information on any circumstances in which victim-based immigration applications have been adjudicated by entities other than the Violence Against Women Act Unit at the Vermont Service Center, including reasons for such action and what steps, if any, were taken to ensure that such applications were handled by trained personnel and what steps were taken to comply with the confidentiality provisions of the Violence Against Women Act of 1994.

(7) Information on the time in which it takes to adjudicate victim-based immigration applications, including the issuance of visas, work authorization and deferred action in a timely manner consistent with the safe and competent processing of such applications, and steps taken to improve in this area.

**SEC. 239. TEMPORARY INCREASE IN FEE FOR CERTAIN CONSULAR SERVICES.**

8 USC 1351 note.

(a) INCREASE IN FEE.—Notwithstanding any other provision of law, not later than October 1, 2009, the Secretary of State shall increase by $1 the fee or surcharge assessed under section 140(a) of the Foreign Relations Authorization Act, Fiscal Years 1994 and 1995 (Public Law 103–236; 8 U.S.C. 1351 note) for processing machine-readable nonimmigrant visas and machine-readable combined border crossing identification cards and nonimmigrant visas.

Deadline.

(b) DEPOSIT OF AMOUNTS.—Notwithstanding section 140(a)(2) of the Foreign Relations Authorization Act, Fiscal Years 1994 and 1995 (Public Law 103–236; 8 U.S.C. 1351 note), the additional amount collected pursuant the fee increase under subsection (a) shall be deposited in the Treasury.

(c) DURATION OF INCREASE.—The fee increase authorized under subsection (a) shall terminate on the date that is 3 years after the first date on which such increased fee is collected.

Termination date.

# TITLE III—AUTHORIZATIONS OF APPROPRIATIONS

**SEC. 301. TRAFFICKING VICTIMS PROTECTION ACT OF 2000.**

Section 113 of the Trafficking Victims Protection Act of 2000, as amended by section 213(a)(2), is amended—

22 USC 7110.

(1) in subsection (a)—
(A) in the first sentence—
(i) by striking "section 104, and"; and

**Department of Homeland Security**                                       **§ 214.11**

(ii) Failed to apply for a replacement Form I–94.

(d) *What rights do habitual residents have?* Habitual residents have the right to enter, reside, study, and work in the United States, its territories or possessions, in nonimmigrant status without regard to the requirements of sections 212(a)(5)(A) and 212(a)(7)(A) and (B) of the Act.

(e) *What are the limitations on the rights of habitual residents?* (1) A habitual resident who is not a dependent is subject to removal if he or she:

(i) Is not and has not been self-supporting for a period exceeding 60 consecutive days for reasons other than a lawful strike or other labor dispute involving work stoppage; or

(ii) Has received unauthorized public benefits by fraud or willful misrepresentation; or

(iii) Is subject to removal pursuant to section 237 of the Act, or any other provision of the Act.

(2) Any dependent is removable from a territory or possession of the United States if:

(i) The principal habitual resident who financially supports him or her and with whom he or she resides, becomes subject to removal unless the dependent establishes that he or she has become a dependent of another habitual resident or becomes self-supporting; or

(ii) The dependent, as an individual, receives unauthorized public benefits by fraud or willful misrepresentation; or

(iii) The dependent, as an individual, is subject to removal pursuant to section 237 of the Act, or any other provision of the Act.

[65 FR 56465, Sept. 19, 2000, as amended at 74 FR 55738, Oct. 28, 2009]

**§§ 214.8–214.10    [Reserved]**

**§ 214.11    Alien victims of severe forms of trafficking in persons.**

(a) *Definitions.* The Service shall apply the following definitions as provided in sections 103 and 107(e) of the Trafficking Victims Protection Act (TVPA) with due regard for the definitions and application of these terms in 28 CFR part 1100 and the provisions of chapter 77 of title 18, United States Code:

*Bona fide application* means an application for T–1 nonimmigrant status as to which, after initial review, the Service has determined that there appears to be no instance of fraud in the application, the application is complete, properly filed, contains an LEA endorsement or credible secondary evidence, includes completed fingerprint and background checks, and presents *prima facie* evidence to show eligibility for T nonimmigrant status, including admissibility.

*Child* means a person described as such in section 101(b)(1) of the Act.

*Coercion* means threats of serious harm to or physical restraint against any person; any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or the abuse or threatened abuse of the legal process.

*Commercial sex act* means any sex act on account of which anything of value is given to or received by any person.

*Debt bondage* means the status or condition of a debtor arising from a pledge by the debtor of his or her personal services or of those of a person under his or her control as a security for debt, if the value of those services as reasonably assessed is not applied toward the liquidation of the debt or the length and nature of those services are not respectively limited and defined.

*Immediate family member* means the spouse or a child of a victim of a severe form of trafficking in persons, and, in the case of a victim of a severe form of trafficking in persons who is under 21 years of age, a parent of the victim.

*Involuntary servitude* means a condition of servitude induced by means of any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or the abuse or threatened abuse of legal process. Accordingly, involuntary servitude includes ''a condition of servitude in which the victim is forced to work for the defendant by the use or threat of

403

physical restraint or physical injury, or by the use or threat of coercion through law or the legal process. This definition encompasses those cases in which the defendant holds the victim in servitude by placing the victim in fear of such physical restraint or injury or legal coercion.'' (*United States* v. *Kozminski*, 487 U.S. 931, 952 (1988)).

*Law Enforcement Agency* (LEA) means any Federal law enforcement agency that has the responsibility and authority for the detection, investigation, or prosecution of severe forms of trafficking in persons. LEAs include the following components of the Department of Justice: the United States Attorneys' Offices, the Civil Rights and Criminal Divisions, the Federal Bureau of Investigation (FBI), the Immigration and Naturalization Service (Service), and the United States Marshals Service. The Diplomatic Security Service, Department of State, also is an LEA.

*Law Enforcement Agency (LEA) endorsement* means Supplement B, *Declaration of Law Enforcement Officer for Victim of Trafficking in Persons* of Form I–914, *Application for T Nonimmigrant Status*.

*Peonage* means a status or condition of involuntary servitude based upon real or alleged indebtedness.

*Reasonable request for assistance* means a reasonable request made by a law enforcement officer or prosecutor to a victim of a severe form of trafficking in persons to assist law enforcement authorities in the investigation or prosecution of the acts of trafficking in persons. The ''reasonableness'' of the request depends on the totality of the circumstances taking into account general law enforcement and prosecutorial practices, the nature of the victimization, and the specific circumstances of the victim, including fear, severe traumatization (both mental and physical), and the age and maturity of young victims.

*Severe forms of trafficking in persons* means sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

*Sex trafficking* means the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act.

*TVPA* means the Trafficking Victims Protection Act of 2000, Division A of the VTVPA, Pub. L. 106–386.

*United States* means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, the United States Virgin Islands, and the Commonwealth of the Northern Mariana Islands.

*Victim of a severe form of trafficking in persons* means an alien who is or has been subject to a severe form of trafficking in persons, as defined in section 103 of the VTVPA and in this section.

*VTVPA* means the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106–386.

(b) *Eligibility.* Under section 101(a)(15)(T)(i) of the Act, and subject to section 214(n) of the Act, the Service may classify an alien, if otherwise admissible, as a T–1 nonimmigrant if the alien demonstrates that he or she:

(1) Is or has been a victim of a severe form of trafficking in persons;

(2) Is physically present in the United States, American Samoa, or at a port-of-entry thereto, on account of such trafficking in persons;

(3) Either:

(i) Has complied with any reasonable request for assistance in the investigation or prosecution of acts of such trafficking in persons, or

(ii) Is less than 15 years of age; and

(4) Would suffer extreme hardship involving unusual and severe harm upon removal, as described in paragraph (i) of this section.

(c) *Aliens ineligible for T nonimmigrant status.* No alien, otherwise admissible, shall be eligible to receive a T nonimmigrant status under section 101(a)(15)(T) of the Act if there is substantial reason to believe that the alien has committed an act of a severe form of trafficking in persons.

(d) *Application procedures for T status*—(1) *Filing an application.* An applicant seeking T nonimmigrant status shall submit, by mail, a complete application package containing Form I–

404

**Department of Homeland Security**                    **§ 214.11**

914, *Application for T Nonimmigrant Status*, along with all necessary supporting documentation, to the Service.

(2) *Contents of the application package.* In addition to Form I–914, an application package must include the following:

(i) The proper fee for Form I–914 as provided in § 103.7(b)(1) of this chapter, or an application for a fee waiver as provided in § 103.7(c) of this chapter;

(ii) Three current photographs;

(iii) The fingerprint fee as provided in § 103.7(b)(1) of this chapter;

(iv) Evidence demonstrating that the applicant is a victim of a severe form of trafficking in persons as set forth in paragraph (f) of this section;

(v) Evidence that the alien is physically present in the United States on account of a severe form of trafficking in persons as set forth in paragraph (g) of this section;

(vi) Evidence that the applicant has complied with any reasonable request for assistance in the investigation or prosecution of acts of severe forms of trafficking in persons, as set forth in paragraph (h) of this section, or has not attained 15 years of age; and

(vii) Evidence that the applicant would suffer extreme hardship involving unusual and severe harm if he or she were removed from the United States, as set forth in paragraph (i) of this section.

(3) *Evidentiary standards.* The applicant may submit any credible evidence relevant to the essential elements of the T nonimmigrant status. Original documents or copies may be submitted as set forth in § 103.2(b)(4) and (b)(5) of this chapter. Any document containing text in a foreign language shall be submitted in accordance with § 103.2(b)(3) of this chapter.

(4) *Filing deadline in cases in which victimization occurred prior to October 28, 2000.* Victims of a severe form of trafficking in persons whose victimization occurred prior to October 28, 2000 must file a completed application within one (1) year of January 31, 2002 in order to be eligible to receive T–1 nonimmigrant status. If the victimization occurred prior to October 28, 2000, an alien who was a child at the time he or she was a victim of a severe form of trafficking in persons must file a T sta-

tus application within one (1) year of his or her 21st birthday, or one (1) year of January 31, 2002, whichever is later. For purposes of determining the filing deadline, an act of severe form of trafficking in persons will be deemed to have occurred on the last day in which an act constituting an element of a severe form of trafficking in persons, as defined in paragraph (a) of this section, occurred. If the applicant misses the deadline, he or she must show that exceptional circumstances prevented him or her from filing in a timely manner. Exceptional circumstances may include severe trauma, either psychological or physical, that prevented the victim from applying within the allotted time.

(5) *Fingerprint procedure.* All applicants for T nonimmigrant status must be fingerprinted for the purpose of conducting a criminal background check in accordance with the process and procedures described in § 103.2(e) of this chapter. After submitting an application with fee to the Service, the applicant will be notified of the proper time and location to appear for fingerprinting.

(6) *Personal interview.* After the filing of an application for T nonimmigrant status, the Service may require an applicant to participate in a personal interview. The necessity of an interview is to be determined solely by the Service. All interviews will be conducted in person at a Service-designated location. Every effort will be made to schedule the interview in a location convenient to the applicant.

(7) *Failure to appear for an interview or failure to follow fingerprinting requirements.* (i) Failure to appear for a scheduled interview without prior authorization or to comply with fingerprint processing requirements may result in the denial of the application.

(ii) Failure to appear shall be excused if the notice of the interview or fingerprint appointment was not mailed to the applicant's current address and such address had been provided to the Service unless the Service determines that the applicant received reasonable notice of the appointment. The applicant must notify the Service of any change of address in accordance with § 265.1 of this chapter prior to the date

405

on which the notice of the interview or fingerprint appointment was mailed to the applicant.

(iii) Failure to appear at the interview or fingerprint appointment may be excused, at the discretion of the Service, if the applicant promptly contacts the Service and demonstrates that such failure to appear was the result of exceptional circumstances.

(8) *Aliens in pending immigration proceedings.* Individuals who believe they are victims of severe forms of trafficking in persons and who are in pending immigration proceedings must inform the Service if they intend to apply for T nonimmigrant status under this section. With the concurrence of Service counsel, a victim of a severe form of trafficking in persons in proceedings before an immigration judge or the Board of Immigration Appeals (Board) may request that the proceedings be administratively closed (or that a motion to reopen or motion to reconsider be indefinitely continued) in order to allow the alien to pursue an application for T nonimmigrant status with the Service. If the alien appears eligible for T nonimmigrant status, the immigration judge or the Board, whichever has jurisdiction, may grant such a request to administratively close the proceeding or continue a motion to reopen or motion to reconsider indefinitely. In the event the Service finds an alien ineligible for T–1 nonimmigrant status, the Service may recommence proceedings that have been administratively closed by filing a motion to re-calendar with the immigration court or a motion to reinstate with the Board. If the alien is in Service custody pending the completion of immigration proceedings, the Service may continue to detain the alien until a decision has been rendered on the application. An alien who is in custody and requests bond or a bond redetermination will be governed by the provisions of part 236 of this chapter.

(9) *T applicants with final orders of exclusion, deportation or removal.* An alien who is the subject of a final order is not precluded from filing an application for T–1 nonimmigrant status directly with the Service. The filing of an application for T nonimmigrant status has no effect on the Service's execution of a final order, although the alien may file a request for stay of removal pursuant to § 241.6(a) of this chapter. However, if the Service subsequently determines, under the procedures of this section, that the application is *bona fide,* the Service will automatically stay execution of the final order of deportation, exclusion, or removal, and the stay will remain in effect until a final decision is made on the T–1 application. The time during which such a stay is in effect shall not be counted in determining the reasonableness of the duration of the alien's continued detention under the standards of § 241.4 of this chapter. If the T–1 application is denied, the stay of the final order is deemed lifted as of the date of such denial, without regard to whether the alien appeals the decision. If the Service grants an application for T nonimmigrant status, the final order shall be deemed canceled by operation of law as of the date of the approval.

(e) *Dissemination of information.* In appropriate cases, and in accordance with Department of Justice policies, the Service shall make information from applications for T–1 nonimmigrant status available to other Law Enforcement Agencies (LEAs) with the authority to detect, investigate, or prosecute severe forms of trafficking in persons. The Service shall coordinate with the appropriate Department of Justice component responsible for prosecution in all cases where there is a current or impending prosecution of any defendants who may be charged with severe forms of trafficking in persons crimes in connection with the victimization of the applicant to ensure that the Department of Justice component responsible for prosecution has access to all witness statements provided by the applicant in connection with the application for T–1 nonimmigrant status, and any other documents needed to facilitate investigation or prosecution of such severe forms of trafficking in persons offenses.

(f) *Evidence demonstrating that the applicant is a victim of a severe form of trafficking in persons.* The applicant must submit evidence that fully establishes eligibility for each element of the T nonimmigrant status to the satisfaction of the Attorney General. First, an

**Department of Homeland Security** §214.11

alien must demonstrate that he or she is a victim of a severe form of trafficking in persons. The applicant may satisfy this requirement either by submitting an LEA endorsement, by demonstrating that the Service previously has arranged for the alien's continued presence under 28 CFR 1100.35, or by submitting sufficient credible secondary evidence, describing the nature and scope of any force, fraud, or coercion used against the victim (this showing is not necessary if the person induced to perform a commercial sex act is under the age of 18). An application must contain a statement by the applicant describing the facts of his or her victimization. In determining whether an applicant is a victim of a severe form of trafficking in persons, the Service will consider all credible and relevant evidence.

(1) *Law Enforcement Agency endorsement.* An LEA endorsement is not required. However, if provided, it must be submitted by an appropriate law enforcement official on Supplement B, *Declaration of Law Enforcement Officer for Victim of Trafficking in Persons*, of Form I–914. The LEA endorsement must be filled out completely in accordance with the instructions contained on the form and must attach the results of any name or database inquiry performed. In order to provide persuasive evidence, the LEA endorsement must contain a description of the victimization upon which the application is based (including the dates the severe forms of trafficking in persons and victimization occurred), and be signed by a supervising official responsible for the investigation or prosecution of severe forms of trafficking in persons. The LEA endorsement must address whether the victim had been recruited, harbored, transported, provided, or obtained specifically for either labor or services, or for the purposes of a commercial sex act. The traffickers must have used force, fraud, or coercion to make the victim engage in the intended labor or services, or (for those 18 or older) the intended commercial sex act. The situations involving labor or services must rise to the level of involuntary servitude, peonage, debt bondage, or slavery. The decision of whether or not to complete an LEA endorsement for an applicant shall be at the discretion of the LEA.

(2) *Primary evidence of victim status.* The Service will consider an LEA endorsement as primary evidence that the applicant has been the victim of a severe form of trafficking in persons provided that the details contained in the endorsement meet the definition of a severe form of trafficking in persons under this section. In the alternative, documentation from the Service granting the applicant continued presence in accordance with 28 CFR 1100.35 will be considered as primary evidence that the applicant has been the victim of a severe form of trafficking in persons, unless the Service has revoked the continued presence based on a determination that the applicant is not a victim of a severe form of trafficking in persons.

(3) *Secondary evidence of victim status; Affidavits.* Credible secondary evidence and affidavits may be submitted to explain the nonexistence or unavailability of the primary evidence and to otherwise establish the requirement that the applicant be a victim of a severe form of trafficking in persons. The secondary evidence must include an original statement by the applicant indicating that he or she is a victim of a severe form of trafficking in persons; credible evidence of victimization and cooperation, describing what the alien has done to report the crime to an LEA; and a statement indicating whether similar records for the time and place of the crime are available. The statement or evidence should demonstrate that good faith attempts were made to obtain the LEA endorsement, including what efforts the applicant undertook to accomplish these attempts. Applicants are encouraged to provide and document all credible evidence, because there is no guarantee that a particular piece of evidence will result in a finding that the applicant was a victim of a severe form of trafficking in persons. If the applicant does not submit an LEA endorsement, the Service will proceed with the adjudication based on the secondary evidence and affidavits submitted. A non-exhaustive list of secondary evidence includes trial transcripts, court documents, police reports, news articles,

407

and copies of reimbursement forms for travel to and from court. In addition, applicants may also submit their own affidavit and the affidavits of other witnesses. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Service.

(4) *Obtaining an LEA endorsement.* A victim of a severe form of trafficking in persons who does not have an LEA endorsement should contact the LEA to which the alien has provided assistance to request an endorsement. If the applicant has not had contact with an LEA regarding the acts of severe forms of trafficking in persons, the applicant should promptly contact the nearest Service or Federal Bureau of Investigation (FBI) field office or U.S. Attorneys' Office to file a complaint, assist in the investigation or prosecution of acts of severe forms of trafficking in persons, and request an LEA endorsement. If the applicant was recently liberated from the trafficking in persons situation, the applicant should ask the LEA for an endorsement. Alternatively, the applicant may contact the Department of Justice, Civil Rights Division, Trafficking in Persons and Worker Exploitation Task Force complaint hotline at 1–888–428–7581 to file a complaint and be referred to an LEA.

(g) *Physical presence on account of trafficking in persons.* The applicant must establish that he or she is physically present in the United States, American Samoa, or at a port-of-entry thereto on account of such trafficking, and that he or she is a victim of a severe form of trafficking in persons that forms the basis for the application. Specifically, the physical presence requirement reaches an alien who: is present because he or she is being subjected to a severe form of trafficking in persons; was recently liberated from a severe form of trafficking in persons; or was subject to severe forms of trafficking in persons at some point in the past and whose continuing presence in the United States is directly related to the original trafficking in persons.

(1) *In general.* The evidence and statements included with the application must state the date and place (if known) and the manner and purpose (if known) for which the applicant entered

the United States, American Samoa, or a port-of-entry thereto, and demonstrate that the applicant is present now on account of the applicant's victimization as described in paragraph (f) of this section and section 101(a)(15)(T)(i)(I) of the Act.

(2) *Opportunity to depart.* If the alien has escaped the traffickers before law enforcement became involved in the matter, he or she must show that he or she did not have a clear chance to leave the United States in the interim. The Service will consider whether an applicant had a clear chance to leave in light of the individual applicant's circumstances. Information relevant to this determination may include, but is not limited to, circumstances attributable to the trafficking in persons situation, such as trauma, injury, lack of resources, or travel documents that have been seized by the traffickers. This determination may reach both those who entered the United States lawfully and those who entered without being admitted or paroled. The Service will consider all evidence presented to determine the physical presence requirement, including asking the alien to answer questions on Form I–914, about when he or she escaped from the trafficker, what activities he or she has undertaken since that time, including the steps he or she may have taken to deal with the consequences of having been trafficked, and the applicant's ability to leave the United States.

(3) *Departure from the United States.* An alien who has voluntarily left (or has been removed from) the United States at any time after the act of a severe form of trafficking in persons shall be deemed not to be present in the United States as a result of such trafficking in persons unless the alien's reentry into the United States was the result of the continued victimization of the alien or a new incident of a severe form of trafficking in persons described in section 101(a)(15)(T)(i)(I) of the Act.

(h) *Compliance with reasonable requests from a law enforcement agency for assistance in the investigation or prosecution.* Except as provided in paragraph (h)(3) of this section, the applicant must submit evidence that fully establishes that he or she has complied with any reasonable request for assistance in the

408

**Department of Homeland Security** §214.11

investigation or prosecution of acts of severe forms of trafficking in persons. As provided in paragraph (h)(3) of this section, if the victim of a severe form of trafficking in persons is under age 15, he or she is not required to comply with any reasonable request for assistance in order to be eligible for T nonimmigrant status, but may cooperate at his or her discretion.

(1) *Primary evidence of compliance with law enforcement requests.* An LEA endorsement describing the assistance provided by the applicant is not required evidence. However, if an LEA endorsement is provided as set forth in paragraph (f)(1) of this section, it will be considered primary evidence that the applicant has complied with any reasonable request in the investigation or prosecution of the severe form of trafficking in persons of which the applicant was a victim. If the Service has reason to believe that the applicant has not complied with any reasonable request for assistance by the endorsing LEA or other LEAs, the Service will contact the LEA and both the Service and the LEA will take all practical steps to reach a resolution acceptable to both agencies. The Service may, at its discretion, interview the alien regarding the evidence for and against the compliance, and allow the alien to submit additional evidence of such compliance. If the Service determines that the alien has not complied with any reasonable request for assistance, then the application will be denied, and any approved application based on the LEA endorsement will be revoked pursuant to this section.

(2) *Secondary evidence of compliance with law enforcement requests; Affidavits.* Credible secondary evidence and affidavits may be submitted to show the nonexistence or unavailability of the primary evidence and to otherwise establish the requirement that the applicant comply with any reasonable request for assistance in the investigation or prosecution of that severe form of trafficking in persons. The secondary evidence must include an original statement by the applicant that indicates the reason the LEA endorsement does not exist or is unavailable, and whether similar records documenting any assistance provided by the applicant are

available. The statement or evidence must show that an LEA that has responsibility and authority for the detection, investigation, or prosecution of severe forms of trafficking in persons has information about such trafficking in persons, that the victim has complied with any reasonable request for assistance in the investigation or prosecution of such acts of trafficking, and, if the victim did not report the crime at the time, why the crime was not previously reported. The statement or evidence should demonstrate that good faith attempts were made to obtain the LEA endorsement, including what efforts the applicant undertook to accomplish these attempts. In addition, applicants may also submit their own affidavit and the affidavits of other witnesses. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Service. Applicants are encouraged to describe and document all applicable factors, since there is no guarantee that a particular reason will result in a finding that the applicant has complied with reasonable requests. An applicant who never has had contact with an LEA regarding the acts of severe forms of trafficking in persons will not be eligible for T–1 nonimmigrant status.

(3) *Exception for applicants under the age of 15.* Applicants under the age of 15 are not required to demonstrate compliance with the requirement of any reasonable request for assistance in the investigation and prosecution of acts of severe forms of trafficking in persons. Applicants under the age of 15 must provide evidence of their age. Primary evidence that a victim of a severe form of trafficking in persons has not yet reached the age of 15 would be an official copy of the alien's birth certificate, a passport, or a certified medical opinion. Secondary evidence regarding the age of the applicant also may be submitted in accordance with §103.2(b)(2)(i) of this chapter. An applicant under the age of 15 still must provide evidence demonstrating that he or she satisfies the other necessary requirements, including that he or she is the victim of a severe form of trafficking in persons and faces extreme hardship involving unusual and severe

409

harm if removed from the United States.

(i) *Evidence of extreme hardship involving unusual and severe harm upon removal.* To be eligible for T–1 nonimmigrant status under section 101(a)(15)(T)(i) of the Act, an applicant must demonstrate that removal from the United States would subject the applicant to extreme hardship involving unusual and severe harm.

(1) *Standard.* Extreme hardship involving unusual and severe harm is a higher standard than that of extreme hardship as described in § 240.58 of this chapter. A finding of extreme hardship involving unusual and severe harm may not be based upon current or future economic detriment, or the lack of, or disruption to, social or economic opportunities. Factors that may be considered in evaluating whether removal would result in extreme hardship involving unusual and severe harm should take into account both traditional extreme hardship factors and those factors associated with having been a victim of a severe form of trafficking in persons. These factors include, but are not limited to, the following:

(i) The age and personal circumstances of the applicant;

(ii) Serious physical or mental illness of the applicant that necessitates medical or psychological attention not reasonably available in the foreign country;

(iii) The nature and extent of the physical and psychological consequences of severe forms of trafficking in persons;

(iv) The impact of the loss of access to the United States courts and the criminal justice system for purposes relating to the incident of severe forms of trafficking in persons or other crimes perpetrated against the applicant, including criminal and civil redress for acts of trafficking in persons, criminal prosecution, restitution, and protection;

(v) The reasonable expectation that the existence of laws, social practices, or customs in the foreign country to which the applicant would be returned would penalize the applicant severely for having been the victim of a severe form of trafficking in persons;

(vi) The likelihood of re-victimization and the need, ability, or willingness of foreign authorities to protect the applicant;

(vii) The likelihood that the trafficker in persons or others acting on behalf of the trafficker in the foreign country would severely harm the applicant; and

(viii) The likelihood that the applicant's individual safety would be seriously threatened by the existence of civil unrest or armed conflict as demonstrated by the designation of Temporary Protected Status, under section 244 of the Act, or the granting of other relevant protections.

(2) *Evidence.* An applicant is encouraged to describe and document all factors that may be relevant to his or her case, since there is no guarantee that a particular reason or reasons will result in a finding that removal would cause extreme hardship involving unusual and severe harm to the applicant. Hardship to persons other than the alien victim of a severe form of trafficking in persons cannot be considered in determining whether an applicant would suffer extreme hardship involving unusual and severe harm.

(3) *Evaluation.* The Service will evaluate on a case-by-case basis, after a review of the evidence, whether the applicant has demonstrated extreme hardship involving unusual or severe harm. The Service will consider all credible evidence submitted regarding the nature and scope of the hardship should the applicant be removed from the United States, including evidence of hardship arising from circumstances surrounding the victimization as described in section 101(a)(15)(T)(i)(I) of the Act and any other circumstances. In appropriate cases, the Service may consider evidence from relevant country condition reports and any other public or private sources of information. The determination that extreme hardship involving unusual or severe harm to the alien exists is to be made solely by the Service.

(j) *Waiver of grounds of inadmissibility.* An application for a waiver of inadmissibility under section 212(d)(13) or section 212(d)(3) of the Act must be filed in accordance with § 212.16 of this chapter,

**Department of Homeland Security** §214.11

and submitted to the Service with the completed application package.

(k) *Bona fide application for T–1 nonimmigrant status*—(1) *Criteria.* Once an application is submitted to the Service, the Service will conduct an initial review to determine if the application is a *bona fide* application for T nonimmigrant status. An application shall be determined to be *bona fide* if, after initial review, it is properly filed, there appears to be no instance of fraud in the application, the application is complete (including the LEA endorsement or other secondary evidence), the application presents *prima facie* evidence of each element to show eligibility for T–1 nonimmigrant status, and the Service has completed the necessary fingerprinting and criminal background checks. If an alien is inadmissible under section 212(a) of the Act, the application will not be deemed to be *bona fide* unless the only grounds of inadmissibility are those under the circumstances described in section 212(d)(13) of the Act, or unless the Service has granted a waiver of inadmissibility on any other grounds. All waivers are discretionary and require a request for a waiver. Under section 212(d)(13), an application can be *bona fide* before the waiver is granted. This is not the case under other grounds of inadmissibility.

(2) *Determination by USCIS.* An application for T–1 status under this section will not be treated as a bona fide application until USCIS has provided the notice described in paragraph (k)(3) of this section. In the event that an application is incomplete or if the application is complete but does not present sufficient evidence to establish prima facie eligibility for each required element of T nonimmigrant status, USCIS will follow the procedures provided in 8 CFR 103.2(b) for requesting additional evidence, issuing a notice of intent to deny, or adjudicating the case on the merits.

(3) *Notice to alien.* Once an application is determined to be a *bona fide* application for a T–1 nonimmigrant status, the Service will provide written confirmation to the applicant.

(4) *Stay of final order of exclusion, deportation, or removal.* A determination by the Service that an application for T–1 nonimmigrant status is *bona fide* automatically stays the execution of any final order of exclusion, deportation, or removal. This stay shall remain in effect until there is a final decision on the T application. The filing of an application for T nonimmigrant status does not stay the execution of a final order unless the Service has determined that the application is *bona fide.* Neither an immigration judge nor the Board of Immigration Appeals (Board) has jurisdiction to adjudicate an application for a stay of execution, deportation, or removal order, on the basis of the filing of an application for T nonimmigrant status.

(l) *Review and decision on applications*—(1) *De novo review.* The Service shall conduct a de novo review of all evidence submitted and is not bound by its previous factual determinations as to any essential elements of the T nonimmigrant status application. Evidence previously submitted for this and other immigration benefits or relief may be used by the Service in evaluating the eligibility of an applicant for T nonimmigrant status. However, the Service will not be bound by its previous factual determinations as to any essential elements of the T classification. The Service will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence.

(2) *Burden of proof.* At all stages of the processing of an application for any benefits under T nonimmigrant status, the burden shall be on the applicant to present to the Service evidence that fully establishes eligibility for the desired benefit.

(3) *Decision.* After completing its review of the application, the Service shall issue a written decision granting or denying the application. If the Service determines that the applicant has met the requirements for T–1 nonimmigrant status, the Service shall grant the application, subject to the annual limitation as provided in paragraph (m) of this section. Along with the approval, the Service will include a list of nongovernmental organizations to which the applicant can refer regarding the alien's options while in the United States and resources available to the alien.

411

(4) *Work authorization.* When the Service grants an application for T–1 nonimmigrant status, the Service will provide the alien with an Employment Authorization Document incident to that status, which shall extend concurrently with the duration of the alien's T–1 nonimmigrant status.

(m) *Annual cap.* In accordance with section 214(n)(2) of the Act, the total number of principal aliens issued T–1 nonimmigrant status may not exceed 5,000 in any fiscal year.

(1) *Issuance of T–1 nonimmigrant status.* Once the cap is reached in any fiscal year, the Service will continue to review and consider applications in the order they are received. The Service will determine if the applicants are eligible for T–1 nonimmigrant status, but will not issue T–1 nonimmigrant status at that time. The revocation of an alien's T–1 status will have no effect on the annual cap.

(2) *Waiting list.* All eligible applicants who, due solely to the cap, are not granted T–1 nonimmigrant status shall be placed on a waiting list and will receive notice of such placement. While on the waiting list, the applicant shall maintain his or her current means to prevent removal (deferred action, parole, or stay of removal) and any employment authorization, subject to any limits imposed on that authorization. Priority on the waiting list is determined by the date the application was properly filed, with the oldest applications receiving the highest priority. As new classifications become available in subsequent years, the Service will issue them to applicants on the waiting list, in the order in which the applications were properly filed, providing the applicant remains admissible. The Service may require new fingerprint and criminal history checks before issuing an approval. After T–1 nonimmigrant status has been issued to qualifying applicants on the waiting list, any remaining T–1 nonimmigrant numbers will be issued to new qualifying applicants in the order that the applications were properly filed.

(n) [Reserved]

(o) *Admission of the T–1 applicant's immediate family members*—(1) *Eligibility.* Subject to section 214(n) of the Act, an alien who has applied for or been granted T–1 nonimmigrant status may apply for admission of an immediate family member, who is otherwise admissible to the United States, in a T–2 (spouse) or T–3 (child) derivative status (and, in the case of a T–1 principal applicant who is a child, a T–4 (parent) derivative status), if accompanying or following to join the principal alien. The applicant must submit evidence sufficient to demonstrate that:

(i) The alien for whom T–2, T–3, or T–4 status is being sought is an immediate family member of a T–1 nonimmigrant, as defined in paragraph (a) of this section, and is otherwise eligible for that status; and

(ii) The immediate family member or the T–1 principal would suffer extreme hardship, as described in paragraph (o)(5) of this section, if the immediate family member was not allowed to accompany or follow to join the principal T–1 nonimmigrant.

(2) *Filing procedures.* A T–1 principal may apply for T–2, T–3, or T–4 nonimmigrant status for an immediate family member by submitting Form I–914 and all necessary documentation by mail, including Supplement A, to the Service. The application for derivative T nonimmigrant status for eligible family members can be filed on the same application as the T–1 application, or in a separate application filed at a subsequent time.

(3) *Contents of the application package for an immediate family member.* In addition to Form I–914, an application for T–2, T–3, or T–4 nonimmigrant status must include the following:

(i) The proper fee for Form I–914 as provided in §103.7(b)(1) of this chapter, or an application for a fee waiver as provided in §103.7(c) of this chapter;

(ii) Three current photographs;

(iii) The fingerprint fee as provided in §103.2(e) of this chapter for each immediate family member;

(iv) Evidence demonstrating the relationship of an immediate family member, as provided in paragraph (o)(4) of this section; and

(v) Evidence demonstrating extreme hardship as provided in paragraph (o)(5) of this section.

(4) *Relationship.* The relationship must exist at the time the application for the T–1 nonimmigrant status was

412

**Department of Homeland Security**                                   **§ 214.11**

filed, and must continue to exist at the time of the application for T–2, T–3, or T–4 status and at the time of the immediate family member's subsequent admission to the United States. If the T–1 principal alien proves that he or she became the parent of a child after the T–1 nonimmigrant status was filed, the child shall be eligible to accompany or follow to join the T–1 principal.

(5) *Evidence demonstrating extreme hardship for immediate family members.* The application must demonstrate that each alien for whom T–2, T–3, or T–4 status is being sought, or the principal T–1 applicant, would suffer extreme hardship if the immediate family member was not admitted to the United States or was removed from the United States (if already present). When the immediate family members are following to join the principal, the extreme hardship must be substantially different than the hardship generally experienced by other residents of their country of origin who are not victims of a severe form of trafficking in persons. The Service will consider all credible evidence of extreme hardship to the T–1 recipient or the individual immediate family members. The determination of the extreme hardship claim will be evaluated on a case-by-case basis, in accordance with the factors outlined in § 240.58 of this chapter. Applicants are encouraged to raise and document all applicable factors, since there is no guarantee that a particular reason or reasons will result in a finding of extreme hardship if the applicant is not allowed to enter or remain in the United States. In addition to these factors, other factors that may be considered in evaluating extreme hardship include, but are not limited to, the following:

(i) The need to provide financial support to the principal alien;

(ii) The need for family support for a principal alien; or

(iii) The risk of serious harm, particularly bodily harm, to an immediate family member from the perpetrators of the severe forms of trafficking in persons.

(6) *Fingerprinting; interviews.* The provisions for fingerprinting and interviews in paragraphs (c)(5) through (c)(7)

of this section also are applicable to applications for immediate family members.

(7) *Admissibility.* If an alien is inadmissible, an application for a waiver of inadmissibility under section 212(d)(13) or section 212(d)(3) of the Act must be filed in accordance with § 212.16 of this chapter, and submitted to the Service with the completed application package.

(8) *Review and decision.* After reviewing the application under the standards of paragraph (l) of this section, the Service shall issue a written decision granting or denying the application for T–2, T–3, or T–4 status.

(9) *Derivative grants.* Individuals who are granted T–2, T–3, or T–4 nonimmigrant status are not subject to an annual cap. Applications for T–2, T–3, or T–4 nonimmigrant status will not be granted until a T–1 status has been issued to the related principal alien.

(10) *Employment authorization.* An alien granted T–2, T–3, or T–4 nonimmigrant status may apply for employment authorization by filing Form I–765, *Application for Employment Authorization,* with the appropriate fee or an application for fee waiver, in accordance with the instructions on, or attached to, that form. For derivatives in the United States, the Form I–765 may be filed concurrently with the filing of the application for T–2, T–3, or T–4 status or at any time thereafter. If the application for employment authorization is approved, the T–2, T–3, or T–4 alien will be granted employment authorization pursuant to § 274a.12(c)(25) of this chapter. Employment authorization will last for the length of the duration of the T–1 nonimmigrant status.

(11) *Aliens outside the United States.* When the Service approves an application for a qualifying immediate family member who is outside the United States, the Service will notify the T–1 principal alien of such approval on Form I–797, *Notice of Action.* Form I–914, Supplement A, *Supplemental Application for Immediate Family Members of T–1 Recipient,* must be forwarded to the Department of State for delivery to the American Embassy or Consulate having jurisdiction over the area in which

413

the T–1 recipient's qualifying immediate family member is located. The supplemental form may be used by a consular officer in determining the alien's eligibility for a T–2, T–3, or T–4 visa, as appropriate.

(p) *Duration of T nonimmigrant status.*

(1) *In general.* An approved T nonimmigrant status shall expire after 4 years from the date of approval. The status may be extended if a Federal, State, or local law enforcement official, prosecutor, judge, or other authority investigating or prosecuting activity relating to human trafficking certifies that the presence of the alien in the United States is necessary to assist in the investigation or prosecution of such activity. At the time an alien is approved for T nonimmigrant status or receives an extension, USCIS shall notify the alien when his or her nonimmigrant status will expire. The applicant shall immediately notify USCIS of any changes in the applicant's circumstances that may affect eligibility under section 101(a)(15)(T)(i) of the Act and this section.

(2) *Information pertaining to adjustment of status.* USCIS will notify an alien granted T nonimmigrant status of the requirement to timely apply for adjustment of status, and that the failure to apply for adjustment of status in accordance with 8 CFR 245.23 will result in termination of the alien's T nonimmigrant status at the end of the 4-year period unless that status is extended in accordance with paragraph (p)(1) of this section. Aliens who properly apply for adjustment of status to that of a person admitted to permanent residence in accordance with 8 CFR 245.23 shall remain eligible for adjustment of status.

(q) *De novo review.* The Service shall conduct a *de novo* review of all evidence submitted at all stages in the adjudication of an application for T nonimmigrant status. Evidence previously submitted for this and other immigration benefits or relief may be used by the Service in evaluating the eligibility of an applicant for T nonimmigrant status. However, the Service will not be bound by its previous factual determinations as to any essential elements of the T classification. The Service will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence.

(r) *Denial of application.* Upon denial of any T application, the Service shall notify the applicant, any LEA providing an LEA endorsement, and the Department of Health and Human Service's Office of Refugee Resettlement in writing of the decision and the reasons for the denial in accordance with § 103.3 of this chapter. Upon denial of an application for T nonimmigrant status, any benefits derived as a result of having filed a *bona fide* application will automatically be revoked when the denial becomes final. If an applicant chooses to appeal the denial pursuant to the provisions of § 103.3 of this chapter, the denial will not become final until the appeal is adjudicated.

(s) *Revocation of approved T nonimmigrant status.* The alien shall immediately notify the Service of any changes in the terms and conditions of an alien's circumstances that may affect eligibility under section 101(a)(15)(T) of the Act and this section.

(1) *Grounds for notice of intent to revoke.* The Service shall send to the T nonimmigrant a notice of intent to revoke the status in relevant part if it is determined that:

(i) The T nonimmigrant violated the requirements of section 101(a)(15)(T) of the Act or this section;

(ii) The approval of the application violated this section or involved error in preparation procedure or adjudication that affects the outcome;

(iii) In the case of a T–2 spouse, the alien's divorce from the T–1 principal alien has become final;

(iv) In the case of a T–1 principal alien, an LEA with jurisdiction to detect or investigate the acts of severe forms of trafficking in persons by which the alien was victimized notifies the Service that the alien has unreasonably refused to cooperate with the investigation or prosecution of the trafficking in persons and provides the Service with a detailed explanation of its assertions in writing; or

(v) The LEA providing the LEA endorsement withdraws its endorsement or disavows the statements made therein and notifies the Service with a

414

**Department of Homeland Security**                                    **§ 214.12**

detailed explanation of its assertions in writing.

(2) *Notice of intent to revoke and consideration of evidence.* A district director may revoke the approval of a T nonimmigrant status at any time, even after the validity of the status has expired. The notice of intent to revoke shall be in writing and shall contain a detailed statement of the grounds for the revocation and the time period allowed for the T nonimmigrant's rebuttal. The alien may submit evidence in rebuttal within 30 days of the date of the notice. The director shall consider all relevant evidence presented in deciding whether to revoke approval of the T nonimmigrant status. The determination of what is relevant evidence and the weight to be given to that evidence shall be within the sole discretion of the director.

(3) *Revocation of T nonimmigrant status.* If, upon reconsideration, the approval previously granted is revoked, the director shall provide the alien with a written notification of the decision that explains the specific reasons for the revocation. The director also shall notify the LEA that supplied an endorsement to the alien, any consular officer having jurisdiction over the applicant, and HHS's Office of Refugee Resettlement.

(4) *Appeal of a revocation of approval.* The alien may appeal the decision to revoke the approval within 15 days after the service of notice of the revocation. All appeals of a revocation of approval will be processed and adjudicated in accordance with § 103.3 of this chapter.

(5) *Effect of revocation of T–1 status.* In the event that a principal alien's T–1 nonimmigrant status is revoked, all T nonimmigrant status holders deriving status from the revoked status automatically shall have that status revoked. In the case where a T–2, T–3, or T–4 application is still awaiting adjudication, it shall be denied. The revocation of an alien's T–1 status will have no effect on the annual cap as described in paragraph (m) of this section.

(t) *Removal proceedings without revocation.* Nothing in this section shall prohibit the Service from instituting removal proceedings under section 240 of the Act for conduct committed after admission, or for conduct or a condition that was not disclosed to the Service prior to the granting of nonimmigrant status under section 101(a)(15)(T) of the Act, including the misrepresentation of material facts in the applicant's application for T nonimmigrant status.

(u) [Reserved]

(v) *Service officer referral.* Any Service officer who receives a request from an alien seeking protection as a victim of a severe form of trafficking in persons or seeking information regarding T nonimmigrant status shall follow the procedures for protecting and providing services to victims of severe forms of trafficking outlined in 28 CFR 1100.31. Aliens believed to be victims of a severe form of trafficking in persons shall be referred to the local Service office with responsibility for investigations relating to victims of severe forms of trafficking in persons for a consultation within 7 days. The local Service office may, in turn, refer the victim to another LEA with responsibility for investigating or prosecuting severe forms of trafficking in persons. If the alien has a credible claim to victimization, he or she will be given the opportunity to submit an application for T status pursuant to section 101(a)(15)(T) of the Act and any other benefit or protection for which he or she may be eligible. An alien determined not to have a credible claim to being a victim of a severe form of trafficking in persons and who is subject to removal will be removed in accordance with Service policy.

[67 FR 4795, Jan. 31, 2002, as amended at 72 FR 19107, Apr. 17, 2007; 73 FR 55558, Dec. 12, 2008; 74 FR 55738, Oct. 28, 2009]

**§ 214.12  Preliminary enrollment of schools in the Student and Exchange Visitor Information System (SEVIS).**

(a) Private elementary and private secondary schools, public high schools, post-secondary schools, language schools, and vocational schools are eligible for preliminary enrollment in Student and Exchange Visitor Information System (SEVIS), beginning on or after July 1, 2002, but only if the school is accredited by an accrediting agency

415

failure to present a paper receipt of fee payment.

(4) *Third-party payments.* DHS will accept payment of the required fee for an alien from an approved school or a designated exchange visitor program sponsor, or from another source, in accordance with procedures approved by DHS.

(h) *Failure to pay the fee.* The failure to pay the required fee is grounds for denial of F, M, or J nonimmigrant status or status-related benefits. Payment of the fee does not preserve the lawful status of any F, J, or M nonimmigrant that has violated his or her status in some other manner.

(1) For purposes of reinstatement to F or M status, failure to pay the required fee will be considered a ''willful violation'' under 8 CFR 214.2(f)(16) or (m)(16), unless DHS determines that there are sufficient extenuating circumstances (as determined at the discretion of the Student and Exchange Visitor Program).

(2) For purposes of reinstatement to valid J program status, failure to pay the required fee will not be considered a ''minor or technical infraction'' under 22 CFR 62.45.

[69 FR 39825, July 1, 2004; 69 FR 41388, July 9, 2004, as amended at 73 FR 55704, Sept. 26, 2008]

## § 214.14 Alien victims of certain qualifying criminal activity.

(a) *Definitions.* As used in this section, the term:

(1) *BIWPA* means Battered Immigrant Women Protection Act of 2000 of the Victims of Trafficking and Violence Protection Act of 2000, div. B, Violence Against Women Act of 2000, tit. V, Pub. L. 106–386, 114 Stat. 1464, (2000), *amended by* Violence Against Women and Department of Justice Reauthorization Act of 2005, tit. VIII, Pub. L. 109–162, 119 Stat. 2960 (2006), *amended by* Violence Against Women and Department of Justice Reauthorization Act—Technical Corrections, Pub. L. 109–271, 120 Stat. 750 (2006).

(2) *Certifying agency* means a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority, that has responsibility for the investigation or prosecution of a qualifying crime or criminal activity. This definition includes agencies that have

criminal investigative jurisdiction in their respective areas of expertise, including, but not limited to, child protective services, the Equal Employment Opportunity Commission, and the Department of Labor.

(3) *Certifying official* means:

(i) The head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency; or

(ii) A Federal, State, or local judge.

(4) *Indian Country* is defined as:

(i) All land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation;

(ii) All dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state; and

(iii) All Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through such allotments.

(5) *Investigation or prosecution* refers to the detection or investigation of a qualifying crime or criminal activity, as well as to the prosecution, conviction, or sentencing of the perpetrator of the qualifying crime or criminal activity.

(6) *Military Installation* means any facility, base, camp, post, encampment, station, yard, center, port, aircraft, vehicle, or vessel under the jurisdiction of the Department of Defense, including any leased facility, or any other location under military control.

(7) *Next friend* means a person who appears in a lawsuit to act for the benefit of an alien under the age of 16 or incapacitated or incompetent, who has suffered substantial physical or mental abuse as a result of being a victim of qualifying criminal activity. The next friend is not a party to the legal proceeding and is not appointed as a guardian.

(8) *Physical or mental abuse* means injury or harm to the victim's physical person, or harm to or impairment of

426

**Department of Homeland Security** §214.14

the emotional or psychological soundness of the victim.

(9) *Qualifying crime or qualifying criminal activity* includes one or more of the following or any similar activities in violation of Federal, State or local criminal law of the United States: Rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes. The term ''any similar activity'' refers to criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities.

(10) *Qualifying family member* means, in the case of an alien victim 21 years of age or older who is eligible for U nonimmigrant status as described in section 101(a)(15)(U) of the Act, 8 U.S.C. 1101(a)(15)(U), the spouse or child(ren) of such alien; and, in the case of an alien victim under the age of 21 who is eligible for U nonimmigrant status as described in section 101(a)(15)(U) of the Act, *qualifying family member* means the spouse, child(ren), parents, or unmarried siblings under the age of 18 of such an alien.

(11) *Territories and Possessions of the United States* means American Samoa, Swains Island, Bajo Nuevo (the Petrel Islands), Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Atoll, Navassa Island, Palmyra Atoll, Serranilla Bank, and Wake Atoll.

(12) *U nonimmigrant status certification* means Form I–918, Supplement B, ''U Nonimmigrant Status Certification,'' which confirms that the petitioner has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim.

(13) *U interim relief* refers to the interim benefits that were provided by USCIS to petitioners for U nonimmigrant status, who requested such benefits and who were deemed prima facie eligible for U nonimmigrant status prior to the publication of the implementing regulations.

(14) *Victim of qualifying criminal activity* generally means an alien who has suffered direct and proximate harm as a result of the commission of qualifying criminal activity.

(i) The alien spouse, children under 21 years of age and, if the direct victim is under 21 years of age, parents and unmarried siblings under 18 years of age, will be considered victims of qualifying criminal activity where the direct victim is deceased due to murder or manslaughter, or is incompetent or incapacitated, and therefore unable to provide information concerning the criminal activity or be helpful in the investigation or prosecution of the criminal activity. For purposes of determining eligibility under this definition, USCIS will consider the age of the victim at the time the qualifying criminal activity occurred.

(ii) A petitioner may be considered a victim of witness tampering, obstruction of justice, or perjury, including any attempt, solicitation, or conspiracy to commit one or more of those offenses, if:

(A) The petitioner has been directly and proximately harmed by the perpetrator of the witness tampering, obstruction of justice, or perjury; and

(B) There are reasonable grounds to conclude that the perpetrator committed the witness tampering, obstruction of justice, or perjury offense, at least in principal part, as a means:

(*1*) To avoid or frustrate efforts to investigate, arrest, prosecute, or otherwise bring to justice the perpetrator for other criminal activity; or

(*2*) To further the perpetrator's abuse or exploitation of or undue control over the petitioner through manipulation of the legal system.

(iii) A person who is culpable for the qualifying criminal activity being investigated or prosecuted is excluded from being recognized as a victim of qualifying criminal activity.

(b) *Eligibility*. An alien is eligible for U–1 nonimmigrant status if he or she

427

demonstrates all of the following in accordance with paragraph (c) of this section:

(1) The alien has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity. Whether abuse is substantial is based on a number of factors, including but not limited to: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim, including aggravation of pre-existing conditions. No single factor is a prerequisite to establish that the abuse suffered was substantial. Also, the existence of one or more of the factors automatically does not create a presumption that the abuse suffered was substantial. A series of acts taken together may be considered to constitute substantial physical or mental abuse even where no single act alone rises to that level;

(2) The alien possesses credible and reliable information establishing that he or she has knowledge of the details concerning the qualifying criminal activity upon which his or her petition is based. The alien must possess specific facts regarding the criminal activity leading a certifying official to determine that the petitioner has, is, or is likely to provide assistance to the investigation or prosecution of the qualifying criminal activity. In the event that the alien has not yet reached 16 years of age on the date on which an act constituting an element of the qualifying criminal activity first occurred, a parent, guardian or next friend of the alien may possess the information regarding a qualifying crime. In addition, if the alien is incapacitated or incompetent, a parent, guardian, or next friend may possess the information regarding the qualifying crime;

(3) The alien has been helpful, is being helpful, or is likely to be helpful to a certifying agency in the investigation or prosecution of the qualifying criminal activity upon which his or her petition is based, and since the initiation of cooperation, has not refused or

failed to provide information and assistance reasonably requested. In the event that the alien has not yet reached 16 years of age on the date on which an act constituting an element of the qualifying criminal activity first occurred, a parent, guardian or next friend of the alien may provide the required assistance. In addition, if the petitioner is incapacitated or incompetent and, therefore, unable to be helpful in the investigation or prosecution of the qualifying criminal activity, a parent, guardian, or next friend may provide the required assistance; and

(4) The qualifying criminal activity occurred in the United States (including Indian country and U.S. military installations) or in the territories or possessions of the United States, or violated a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. federal court.

(c) *Application procedures for U nonimmigrant status*—(1) *Filing a petition.* USCIS has sole jurisdiction over all petitions for U nonimmigrant status. An alien seeking U–1 nonimmigrant status must submit, by mail, Form I–918, "Petition for U Nonimmigrant Status," applicable biometric fee (or request for a fee waiver as provided in 8 CFR 103.7(c)), and initial evidence to USCIS in accordance with this paragraph and the instructions to Form I–918. A petitioner who received interim relief is not required to submit initial evidence with Form I–918 if he or she wishes to rely on the law enforcement certification and other evidence that was submitted with the request for interim relief.

(i) *Petitioners in pending immigration proceedings.* An alien who is in removal proceedings under section 240 of the Act, 8 U.S.C. 1229a, or in exclusion or deportation proceedings initiated under former sections 236 or 242 of the Act, 8 U.S.C. 1226 and 1252 (as in effect prior to April 1, 1997), and who would like to apply for U nonimmigrant status must file a Form I–918 directly with USCIS. U.S. Immigration and Customs Enforcement (ICE) counsel may agree, as a matter of discretion, to file, at the request of the alien petitioner, a joint

**Department of Homeland Security**                    **§ 214.14**

motion to terminate proceedings without prejudice with the immigration judge or Board of Immigration Appeals, whichever is appropriate, while a petition for U nonimmigrant status is being adjudicated by USCIS.

(ii) *Petitioners with final orders of removal, deportation, or exclusion.* An alien who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U–1 nonimmigrant status directly with USCIS. The filing of a petition for U–1 nonimmigrant status has no effect on ICE's authority to execute a final order, although the alien may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6(a). If the alien is in detention pending execution of the final order, the time during which a stay is in effect will extend the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about the petitioner's removal.

(2) *Initial evidence.* Form I–918 must include the following initial evidence:

(i) Form I–918, Supplement B, "U Nonimmigrant Status Certification," signed by a certifying official within the six months immediately preceding the filing of Form I–918. The certification must state that: the person signing the certificate is the head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency, or is a Federal, State, or local judge; the agency is a Federal, State, or local law enforcement agency, or prosecutor, judge or other authority, that has responsibility for the detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity; the applicant has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting; the petitioner possesses information concerning the qualifying criminal activity of which he or she has been a victim; the petitioner has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity; and the qualifying criminal activity violated U.S. law, or occurred in the United States, its territories, its possessions, Indian country, or at military installations abroad.

(ii) Any additional evidence that the petitioner wants USCIS to consider to establish that: the petitioner is a victim of qualifying criminal activity; the petitioner has suffered substantial physical or mental abuse as a result of being a victim of qualifying criminal activity; the petitioner (or, in the case of a child under the age of 16 or petitioner who is incompetent or incapacitated, a parent, guardian or next friend of the petitioner) possesses information establishing that he or she has knowledge of the details concerning the qualifying criminal activity of which he or she was a victim and upon which his or her application is based; the petitioner (or, in the case of a child under the age of 16 or petitioner who is incompetent or incapacitated, a parent, guardian or next friend of the petitioner) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement agency, prosecutor, or authority, or Federal or State judge, investigating or prosecuting the criminal activity of which the petitioner is a victim; or the criminal activity is qualifying and occurred in the United States (including Indian country and U.S. military installations) or in the territories or possessions of the United States, or violates a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. federal court;

(iii) A signed statement by the petitioner describing the facts of the victimization. The statement also may include information supporting any of the eligibility requirements set out in paragraph (b) of this section. When the petitioner is under the age of 16, incapacitated, or incompetent, a parent, guardian, or next friend may submit a statement on behalf of the petitioner; and

(iv) If the petitioner is inadmissible, Form I–192, "Application for Advance Permission to Enter as Non-Immigrant," in accordance with 8 CFR 212.17.

429

(3) *Biometric capture.* All petitioners for U–1 nonimmigrant status must submit to biometric capture and pay a biometric capture fee. USCIS will notify the petitioner of the proper time and location to appear for biometric capture after the petitioner files Form I–918.

(4) *Evidentiary standards and burden of proof.* The burden shall be on the petitioner to demonstrate eligibility for U–1 nonimmigrant status. The petitioner may submit any credible evidence relating to his or her Form I-918 for consideration by USCIS. USCIS shall conduct a de novo review of all evidence submitted in connection with Form I–918 and may investigate any aspect of the petition. Evidence previously submitted for this or other immigration benefit or relief may be used by USCIS in evaluating the eligibility of a petitioner for U–1 nonimmigrant status. However, USCIS will not be bound by its previous factual determinations. USCIS will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence, including Form I–918, Supplement B, "U Nonimmigrant Status Certification."

(5) *Decision.* After completing its de novo review of the petition and evidence, USCIS will issue a written decision approving or denying Form I–918 and notify the petitioner of this decision. USCIS will include in a decision approving Form I–918 a list of nongovernmental organizations to which the petitioner can refer regarding his or her options while in the United States and available resources.

(i) *Approval of Form I–918, generally.* If USCIS determines that the petitioner has met the requirements for U–1 nonimmigrant status, USCIS will approve Form I–918. For a petitioner who is within the United States, USCIS also will concurrently grant U–1 nonimmigrant status, subject to the annual limitation as provided in paragraph (d) of this section. For a petitioner who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of Form I–918. A petitioner who is subject to an order of exclusion, deportation, or re-

moval issued by an immigration judge or the Board may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23.

(A) *Notice of Approval of Form I–918 for U–1 petitioners within the United States.* After USCIS approves Form I–918 for an alien who filed his or her petition from within the United States, USCIS will notify the alien of such approval on Form I–797, "Notice of Action," and include Form I–94 (see § 1.4), "Arrival-Departure Record," indicating U–1 nonimmigrant status.

(B) *Notice of Approval of Form I–918 for U–1 petitioners outside the United States.* After USCIS approves Form I–918 for an alien who filed his or her petition from outside the United States, USCIS will notify the alien of such approval on Form I–797, "Notice of Action," and will forward notice to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the alien is located, or, for a visa exempt alien, to the appropriate port of entry.

(ii) *Denial of Form I–918.* USCIS will provide written notification to the petitioner of the reasons for the denial. The petitioner may appeal a denial of Form I–918 to the Administrative Appeals Office (AAO) in accordance with the provisions of 8 CFR 103.3. For petitioners who appeal a denial of their Form I–918 to the AAO, the denial will not be deemed administratively final until the AAO issues a decision affirming the denial. Upon USCIS' final denial of a petition for a petitioner who was in removal proceedings that were terminated pursuant to 8 CFR 214.14(c)(1)(i), DHS may file a new Notice to Appear (see section 239 of the Act, 8 U.S.C. 1229) to place the individual in proceedings again. For petitioners who are subject to an order of removal, deportation, or exclusion and whose order has been stayed, USCIS' denial of the petition will result in the stay being lifted automatically as of the date the denial becomes administratively final.

430

**Department of Homeland Security**　　　　　　　**§ 214.14**

(6) *Petitioners granted U interim relief.* Petitioners who were granted U interim relief as defined in paragraph (a)(13) of this section and whose Form I-918 is approved will be accorded U-1 nonimmigrant status as of the date that a request for U interim relief was initially approved.

(7) *Employment authorization.* An alien granted U-1 nonimmigrant status is employment authorized incident to status. USCIS automatically will issue an initial Employment Authorization Document (EAD) to such aliens who are in the United States. For principal aliens who applied from outside the United States, the initial EAD will not be issued until the petitioner has been admitted to the United States in U nonimmigrant status. After admission, the alien may receive an initial EAD, upon request and submission of a copy of his or her Form I-94, "Arrival-Departure Record," to the USCIS office having jurisdiction over the adjudication of petitions for U nonimmigrant status. No additional fee is required. An alien granted U-1 nonimmigrant status seeking to renew his or her expiring EAD or replace an EAD that was lost, stolen, or destroyed, must file Form I-765 in accordance with the instructions to the form.

(d) *Annual cap on U-1 nonimmigrant status*—(1) *General.* In accordance with section 214(p)(2) of the Act, 8 U.S.C. 1184(p)(2), the total number of aliens who may be issued a U-1 nonimmigrant visa or granted U-1 nonimmigrant status may not exceed 10,000 in any fiscal year.

(2) *Waiting list.* All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority. In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status. After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed. USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

(3) *Unlawful presence.* During the time a petitioner for U nonimmigrant status who was granted deferred action or parole is on the waiting list, no accrual of unlawful presence under section 212(a)(9)(B) of the INA, 8 U.S.C. 1182(a)(9)(B), will result. However, a petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS.

(e) *Restrictions on use and disclosure of information relating to petitioners for U nonimmigrant classification*—(1) *General.* The use or disclosure (other than to a sworn officer or employee of DHS, the Department of Justice, the Department of State, or a bureau or agency of any of those departments, for legitimate department, bureau, or agency purposes) of any information relating to the beneficiary of a pending or approved petition for U nonimmigrant status is prohibited unless the disclosure is made:

(i) By the Secretary of Homeland Security, at his discretion, in the same manner and circumstances as census information may be disclosed by the Secretary of Commerce under 13 U.S.C. 8;

(ii) By the Secretary of Homeland Security, at his discretion, to law enforcement officials to be used solely for a legitimate law enforcement purpose;

(iii) In conjunction with judicial review of a determination in a manner that protects the confidentiality of such information;

(iv) After adult petitioners for U nonimmigrant status or U nonimmigrant status holders have provided written consent to waive the restrictions prohibiting the release of information;

(v) To Federal, State, and local public and private agencies providing benefits, to be used solely in making determinations of eligibility for benefits pursuant to 8 U.S.C. 1641(c);

431

(vi) After a petition for U nonimmigrant status has been denied in a final decision;

(vii) To the chairmen and ranking members of the Committee on the Judiciary of the Senate or the Committee on the Judiciary of the House of Representatives, for the exercise of congressional oversight authority, provided the disclosure relates to information about a closed case and is made in a manner that protects the confidentiality of the information and omits personally identifying information (including locational information about individuals);

(viii) With prior written consent from the petitioner or derivative family members, to nonprofit, nongovernmental victims' service providers for the sole purpose of assisting the victim in obtaining victim services from programs with expertise working with immigrant victims; or

(ix) To federal prosecutors to comply with constitutional obligations to provide statements by witnesses and certain other documents to defendants in pending federal criminal proceedings.

(2) Agencies receiving information under this section, whether governmental or non-governmental, are bound by the confidentiality provisions and other restrictions set out in 8 U.S.C. 1367.

(3) Officials of the Department of Homeland Security are prohibited from making adverse determinations of admissibility or deportability based on information obtained solely from the perpetrator of substantial physical or mental abuse and the criminal activity.

(f) *Admission of qualifying family members*—(1) *Eligibility.* An alien who has petitioned for or has been granted U–1 nonimmigrant status (*i.e.,* principal alien) may petition for the admission of a qualifying family member in a U–2 (spouse), U–3 (child), U–4 (parent of a U–1 alien who is a child under 21 years of age), or U–5 (unmarried sibling under the age of 18) derivative status, if accompanying or following to join such principal alien. A qualifying family member who committed the qualifying criminal activity in a family violence or trafficking context which established the principal alien's eligibility

for U nonimmigrant status shall not be granted U–2, U–3, U–4, or U–5 nonimmigrant status. To be eligible for U–2, U–3, U–4, or U–5 nonimmigrant status, it must be demonstrated that:

(i) The alien for whom U–2, U–3, U–4, or U–5 status is being sought is a qualifying family member, as defined in paragraph (a)(10) of this section; and

(ii) The qualifying family member is admissible to the United States.

(2) *Filing procedures.* A petitioner for U–1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting a Form I–918, Supplement A, "Petition for Qualifying Family Member of U–1 Recipient," for each family member either at the same time the petition for U–1 nonimmigrant status is filed, or at a later date. An alien who has been granted U–1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting Form I–918, Supplement A for each family member. All Forms I–918, Supplement A must be accompanied by initial evidence and the required fees specified in the instructions to the form. Forms I–918, Supplement A that are not filed at the same time as Form I–918 but are filed at a later date must be accompanied by a copy of the Form I–918 that was filed by the principal petitioner or a copy of his or her Form I–94 demonstrating proof of U–1 nonimmigrant status, as applicable.

(i) Qualifying family members in pending immigration proceedings. The principal alien of a qualifying family member who is in removal proceedings under section 240 of the Act, 8 U.S.C. 1229a, or in exclusion or deportation proceedings initiated under former sections 236 or 242 of the Act, 8 U.S.C. 1226 and 1252 (as in effect prior to April 1, 1997), and who is seeking U nonimmigrant status, must file a Form I–918, Supplement A directly with USCIS. ICE counsel may agree to file, at the request of the qualifying family member, a joint motion to terminate proceedings without prejudice with the immigration judge or Board of Immigration Appeals, whichever is appropriate, while the petition for U nonimmigrant status is being adjudicated by USCIS.

432

**Department of Homeland Security**                              **§ 214.14**

(ii) Qualifying family members with final orders of removal, deportation, or exclusion. An alien who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U–2, U–3, U–4, or U–5 nonimmigrant status directly with USCIS. The filing of a petition for U–2, U–3, U–4, or U–5 nonimmigrant status has no effect on ICE's authority to execute a final order, although the alien may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6(a). If the alien is in detention pending execution of the final order, the time during which a stay is in effect will extend the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about the alien's removal.

(3) *Initial evidence.* Form I–918, Supplement A, must include the following initial evidence:

(i) Evidence demonstrating the relationship of a qualifying family member, as provided in paragraph (f)(4) of this section;

(ii) If the qualifying family member is inadmissible, Form I–192, ''Application for Advance Permission to Enter as a Non-Immigrant,'' in accordance with 8 CFR 212.17.

(4) *Relationship.* Except as set forth in paragraphs (f)(4)(i) and (ii) of this section, the relationship between the U–1 principal alien and the qualifying family member must exist at the time Form I–918 was filed, and the relationship must continue to exist at the time Form I–918, Supplement A is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States.

(i) If the U–1 principal alien proves that he or she has become the parent of a child after Form I–918 was filed, the child shall be eligible to accompany or follow to join the U–1 principal alien.

(ii) If the principal alien was under 21 years of age at the time he or she filed Form I–918, and filed Form I–918, Supplement A for an unmarried sibling under the age of 18, USCIS will continue to consider such sibling as a qualifying family member for purposes of U nonimmigrant status even if the principal alien is no longer under 21 years of age at the time of adjudication, and even if the sibling is no longer under 18 years of age at the time of adjudication.

(5) *Biometric capture and evidentiary standards.* The provisions for biometric capture and evidentiary standards in paragraphs (c)(3) and (c)(4) of this section also are applicable to petitions for qualifying family members.

(6) *Decision.* USCIS will issue a written decision approving or denying Form I–918, Supplement A and send notice of this decision to the U–1 principal petitioner. USCIS will include in a decision approving Form I–918 a list of nongovernmental organizations to which the qualifying family member can refer regarding his or her options while in the United States and available resources. For a qualifying family member who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of Form I–918, Supplement A. A qualifying family member who is subject to an order of exclusion, deportation, or removal issued by an immigration judge or the Board may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23.

(i) *Approvals for qualifying family members within the United States.* When USCIS approves a Form I–918, Supplement A for a qualifying family member who is within the United States, it will concurrently grant that alien U–2, U–3, U–4, or U–5 nonimmigrant status. USCIS will notify the principal of such approval on Form I–797, ''Notice of Action,'' with Form I–94, ''Arrival-Departure Record,'' indicating U–2, U–3, U–4, or U–5 nonimmigrant status. Aliens who were previously granted U interim relief as defined in paragraph (a)(13) of this section will be accorded U nonimmigrant status as of the date that the request for U interim relief was approved. Aliens who are granted U–2, U–3, U–4, or U–5 nonimmigrant status are not subject to an annual numerical limit. USCIS may not approve Form I–

433

918, Supplement A unless it has approved the principal alien's Form I–918.

(ii) *Approvals for qualifying family members outside the United States.* When USCIS approves Form I–918, Supplement A for a qualifying family member who is outside the United States, USCIS will notify the principal alien of such approval on Form I–797. USCIS will forward the approved Form I–918, Supplement A to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the qualifying family member is located, or, for a visa exempt alien, to the appropriate port of entry.

(iii) *Denial of the Form I–918, Supplement A.* In accordance with 8 CFR 103.3(a)(1), USCIS will provide written notification of the reasons for the denial. The principal alien may appeal the denial of Form I–918, Supplement A to the Administrative Appeals Office in accordance with the provisions of 8 CFR 103.3. Upon USCIS' final denial of Form I–918, Supplement A for a qualifying family member who was in removal proceedings that were terminated pursuant to 8 CFR 214.14(f)(2)(i), DHS may file a new Notice to Appear (see section 239 of the INA, 8 U.S.C. 1229) to place the individual in proceedings again. For qualifying family members who are subject to an order of removal, deportation, or exclusion and whose order has been stayed, USCIS' denial of the petition will result in the stay being lifted automatically as of the date the denial becomes administratively final.

(7) *Employment authorization.* An alien granted U–2, U–3, U–4, or U–5 nonimmigrant status is employment authorized incident to status. To obtain an Employment Authorization Document (EAD), such alien must file Form I–765, "Application for Employment Authorization," with the appropriate fee or a request for a fee waiver, in accordance with the instructions to the form. For qualifying family members within the United States, the Form I–765 may be filed concurrently with Form I–918, Supplement A, or at any time thereafter. For qualifying family members who are outside the United States, Form I–765 only may be filed

after admission to the United States in U nonimmigrant status.

(g) *Duration of U nonimmigrant status*—(1) *In general.* U nonimmigrant status may be approved for a period not to exceed 4 years in the aggregate. A qualifying family member granted U–2, U–3, U–4, and U–5 nonimmigrant status will be approved for an initial period that does not exceed the expiration date of the initial period approved for the principal alien.

(2) *Extension of status.* (i) Where a U nonimmigrant's approved period of stay on Form I–94 is less than 4 years, he or she may file Form I–539, "Application to Extend/Change Nonimmigrant Status," to request an extension of U nonimmigrant status for an aggregate period not to exceed 4 years. USCIS may approve an extension of status for a qualifying family member beyond the date when the U–1 nonimmigrant's status expires when the qualifying family member is unable to enter the United States timely due to delays in consular processing, and an extension of status is necessary to ensure that the qualifying family member is able to attain at least 3 years in nonimmigrant status for purposes of adjusting status under section 245(m) of the Act, 8 U.S.C. 1255.

(ii) Extensions of U nonimmigrant status beyond the 4-year period are available upon attestation by the certifying official that the alien's presence in the United States continues to be necessary to assist in the investigation or prosecution of qualifying criminal activity. In order to obtain an extension of U nonimmigrant status based upon such an attestation, the alien must file Form I–539 and a newly executed Form I–918, Supplement B in accordance with the instructions to Form I–539.

(h) *Revocation of approved petitions for U nonimmigrant status*—(1) *Automatic revocation.* An approved petition for U–1 nonimmigrant status will be revoked automatically if, pursuant to 8 CFR 214.14(d)(1), the beneficiary of the approved petition notifies the USCIS office that approved the petition that he or she will not apply for admission to the United States and, therefore, the petition will not be used.

434

**Department of Homeland Security** §214.15

(2) *Revocation on notice.* (i) USCIS may revoke an approved petition for U nonimmigrant status following a notice of intent to revoke. USCIS may revoke an approved petition for U nonimmigrant status based on one or more of the following reasons:

(A) The certifying official withdraws the U nonimmigrant status certification referred to in 8 CFR 214.14(c)(2)(i) or disavows the contents in writing;

(B) Approval of the petition was in error;

(C) Where there was fraud in the petition;

(D) In the case of a U–2, U–3, U–4, or U–5 nonimmigrant, the relationship to the principal petitioner has terminated; or

(E) In the case of a U–2, U–3, U–4, or U–5 nonimmigrant, the principal U–1's nonimmigrant status is revoked.

(ii) The notice of intent to revoke must be in writing and contain a statement of the grounds for the revocation and the time period allowed for the U nonimmigrant's rebuttal. The alien may submit evidence in rebuttal within 30 days of the date of the notice. USCIS shall consider all relevant evidence presented in deciding whether to revoke the approved petition for U nonimmigrant status. The determination of what is relevant evidence and the weight to be given to that evidence will be within the sole discretion of USCIS. If USCIS revokes approval of a petition and thereby terminates U nonimmigrant status, USCIS will provide the alien with a written notice of revocation that explains the specific reasons for the revocation.

(3) *Appeal of a revocation of approval.* A revocation on notice may be appealed to the Administrative Appeals Office in accordance with 8 CFR 103.3 within 30 days after the date of the notice of revocation. Automatic revocations may not be appealed.

(4) *Effects of revocation of approval.* Revocation of a principal alien's approved Form I–918 will result in termination of status for the principal alien, as well as in the denial of any pending Form I–918, Supplement A filed for qualifying family members seeking U–2, U–3, U–4, or U–5 nonimmigrant status. Revocation of a qualifying family member's approved Form I–918, Supplement A will result in termination of status for the qualifying family member. Revocation of an approved Form I–918 or Form I–918, Supplement A also revokes any waiver of inadmissibility granted in conjunction with such petition.

(i) *Removal proceedings.* Nothing in this section prohibits USCIS from instituting removal proceedings under section 240 of the Act, 8 U.S.C. 1229(a), for conduct committed after admission, for conduct or a condition that was not disclosed to USCIS prior to the granting of U nonimmigrant status, for misrepresentations of material facts in Form I–918 or Form I–918, Supplement A and supporting documentation, or after revocation of U nonimmigrant status.

[72 FR 53036, Sept. 17, 2007, as amended at 72 FR 54813, Sept. 27, 2007; 74 FR 55738, Oct. 28, 2009; 78 FR 18472, Mar. 27, 2013]

§214.15 Certain spouses and children of lawful permanent residents.

(a) *Aliens abroad.* Under section 101(a)(15)(v) of the Act, certain eligible spouses and children of lawful permanent residents may apply for a V nonimmigrant visa at a consular office abroad and be admitted to the United States in V–1 (spouse), V–2 (child), or V–3 (dependent child of the spouse or child who is accompanying or following to join the principal beneficiary) nonimmigrant status to await the approval of:

(1) A relative visa petition;

(2) The availability of an immigrant visa number; or

(3) Lawful permanent resident (LPR) status through adjustment of status or an immigrant visa.

(b) *Aliens already in the United States.* Eligible aliens already in the United States may apply to the Service to obtain V nonimmigrant status for the same purpose. Aliens in the United States in V nonimmigrant status are entitled to reside in the United States as V nonimmigrants and obtain employment authorization.

(c) *Eligibility.* Subject to section 214(o) of the Act, an alien who is the beneficiary (including a child of the principal alien, if eligible to receive a visa under section 203(d) of the Act) of

435

(v) The history of previous violations of the employer.

(3) Where an order is issued with respect to a respondent composed of distinct, physically separate subdivisions which do their own hiring, or their own recruiting or referring for a fee for employment (without reference to the practices of, and under the control of, or common control with another subdivision) the subdivision shall be considered a separate person or entity.

(c) *Enjoining pattern or practice violations.* If the Attorney General has reasonable cause to believe that a person or entity is engaged in a pattern or practice of employment, recruitment or referral in violation of section 274A(a)(1)(A) or (2) of the Act, the Attorney General may bring civil action in the appropriate United States District Court requesting relief, including a permanent or temporary injunction, restraining order, or other order against the person or entity, as the Attorney General deems necessary.

[52 FR 16221, May 1, 1987, as amended at 55 FR 25935, June 25, 1990; 56 FR 41786, Aug. 23, 1991; 64 FR 47101, Aug. 30, 1999; 73 FR 10136, Feb. 26, 2008]

### § 274a.11   [Reserved]

## Subpart B—Employment Authorization

### § 274a.12  Classes of aliens authorized to accept employment.

(a) *Aliens authorized employment incident to status.* Pursuant to the statutory or regulatory reference cited, the following classes of aliens are authorized to be employed in the United States without restrictions as to location or type of employment as a condition of their admission or subsequent change to one of the indicated classes. Any alien who is within a class of aliens described in paragraphs (a)(3), (a)(4), (a)(6)–(a)(8), (a)(10)–(a)(15), or (a)(20) of this section, and who seeks to be employed in the United States, must apply to U.S. Citizenship and Immigration Services (USCIS) for a document evidencing such employment authorization. USCIS may, in its discretion, determine the validity period assigned to any document issued evidencing an alien's authorization to work in the United States.

(1) An alien who is a lawful permanent resident (with or without conditions pursuant to section 216 of the Act), as evidenced by Form I–551 issued by the Service. An expiration date on the Form I–551 reflects only that the card must be renewed, not that the bearer's work authorization has expired;

(2) An alien admitted to the United States as a lawful temporary resident pursuant to sections 245A or 210 of the Act, as evidenced by an employment authorization document issued by the Service;

(3) An alien admitted to the United States as a refugee pursuant to section 207 of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(4) An alien paroled into the United States as a refugee for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(5) An alien granted asylum under section 208 of the Act for the period of time in that status, as evidenced by an employment authorization document, issued by USCIS to the alien. An expiration date on the employment authorization document issued by USCIS reflects only that the document must be renewed, and not that the bearer's work authorization has expired. Evidence of employment authorization shall be granted in increments not exceeding 5 years for the period of time the alien remains in that status.

(6) An alien admitted to the United States as a nonimmigrant fiancé or fiancée pursuant to section 101(a)(15)(K)(i) of the Act, or an alien admitted as a child of such alien, for the period of admission in that status, as evidenced by an employment authorization document issued by the Service;

(7) An alien admitted as a parent (N–8) or dependent child (N–9) of an alien granted permanent residence under section 101(a)(27)(I) of the Act, as evidenced by an employment authorization document issued by the Service;

(8) An alien admitted to the United States as a nonimmigrant pursuant to

690

**Department of Homeland Security**  **§ 274a.12**

the Compact of Free Association between the United States and of the Federated States of Micronesia, the Republic of the Marshall Islands, or the Republic of Palau;

(9) Any alien admitted as a nonimmigrant spouse pursuant to section 101(a)(15)(K)(ii) of the Act, or an alien admitted as a child of such alien, for the period of admission in that status, as evidenced by an employment authorization document, with an expiration date issued by the Service;

(10) An alien granted withholding of deportation or removal for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(11) An alien whose enforced departure from the United States has been deferred in accordance with a directive from the President of the United States to the Secretary. Employment is authorized for the period of time and under the conditions established by the Secretary pursuant to the Presidential directive;

(12) An alien granted Temporary Protected Status under section 244 of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(13) An alien granted voluntary departure by the Attorney General under the Family Unity Program established by section 301 of the Immigration Act of 1990, as evidenced by an employment authorization document issued by the Service;

(14) An alien granted Family Unity benefits under section 1504 of the Legal Immigrant Family Equity (LIFE) Act Amendments, Public Law 106–554, and the provisions of 8 CFR part 245a, Subpart C of this chapter, as evidenced by an employment authorization document issued by the Service;

(15) Any alien in V nonimmigrant status as defined in section 101(a)(15)(V) of the Act and 8 CFR 214.15.

(16) An alien authorized to be admitted to or remain in the United States as a nonimmigrant alien victim of a severe form of trafficking in persons under section 101(a)(15)(T)(i) of the Act. Employment authorization granted under this paragraph shall expire upon the expiration of the underlying T–1 nonimmigrant status granted by the Service;

(17)–(18) [Reserved]

(19) Any alien in U–1 nonimmigrant status, pursuant to 8 CFR 214.14, for the period of time in that status, as evidenced by an employment authorization document issued by USCIS to the alien.

(20) Any alien in U–2, U–3, U–4, or U–5 nonimmigrant status, pursuant to 8 CFR 214.14, for the period of time in that status, as evidenced by an employment authorization document issued by USCIS to the alien.

(b) *Aliens authorized for employment with a specific employer incident to status.* The following classes of nonimmigrant aliens are authorized to be employed in the United States by the specific employer and subject to the restrictions described in the section(s) of this chapter indicated as a condition of their admission in, or subsequent change to, such classification. An alien in one of these classes is not issued an employment authorization document by the Service:

(1) A foreign government official (A–1 or A–2), pursuant to §214.2(a) of this chapter. An alien in this status may be employed only by the foreign government entity;

(2) An employee of a foreign government official (A–3), pursuant to §214.2(a) of this chapter. An alien in this status may be employed only by the foreign government official;

(3) A foreign government official in transit (C–2 or C–3), pursuant to §214.2(c) of this chapter. An alien in this status may be employed only by the foreign government entity;

(4) [Reserved]

(5) A nonimmigrant treaty trader (E–1) or treaty investor (E–2), pursuant to §214.2(e) of this chapter. An alien in this status may be employed only by the treaty-qualifying company through which the alien attained the status. Employment authorization does not extend to the dependents of the principal treaty trader or treaty investor (also designated ''E–1'' or ''E–2''), other than those specified in paragraph (c)(2) of this section;

(6) A nonimmigrant (F–1) student who is in valid nonimmigrant student

691

status and pursuant to 8 CFR 214.2(f) is seeking:

(i) On-campus employment for not more than twenty hours per week when school is in session or full-time employment when school is not in session if the student intends and is eligible to register for the next term or session. Part-time on-campus employment is authorized by the school and no specific endorsement by a school official or Service officer is necessary;

(ii) [Reserved]

(iii) Curricular practical training (internships, cooperative training programs, or work-study programs which are part of an established curriculum) after having been enrolled full-time in a Service approved institution for one full academic year. Curricular practical training (part-time or full-time) is authorized by the Designated School Official on the student's Form I–20. No Service endorsement is necessary.

(iv) An employment authorization document under paragraph (c)(3)(i)(C) of this section based on a 17-month STEM Optional Practical Training extension, and whose timely filed employment authorization request is pending and employment authorization issued under paragraph (c)(3)(i)(B) of this section has expired. Employment is authorized beginning on the expiration date of the authorization issued under paragraph (c)(3)(i)(B) of this section and ending on the date of USCIS' written decision on the current employment authorization request, but not to exceed 180 days; or

(v) Pursuant to 8 CFR 214.2(h) is seeking H–1B nonimmigrant status and whose duration of status and employment authorization have been extended pursuant to 8 CFR 214.2(f)(5)(vi).

(7) A representative of an international organization (G–1, G–2, G–3, or G–4), pursuant to §214.2(g) of this chapter. An alien in this status may be employed only by the foreign government entity or the international organization;

(8) A personal employee of an official or representative of an international organization (G–5), pursuant to §214.2(g) of this chapter. An alien in this status may be employed only by the official or representative of the international organization;

(9) A temporary worker or trainee (H–1, H–2A, H–2B, or H–3), pursuant to §214.2(h) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained. In the case of a professional H–2B athlete who is traded from one organization to another organization, employment authorization for the player will automatically continue for a period of 30 days after acquisition by the new organization, within which time the new organization is expected to file a new Form I–129 to petition for H–2B classification. If a new Form I–129 is not filed within 30 days, employment authorization will cease. If a new Form I–129 is filed within 30 days, the professional athlete's employment authorization will continue until the petition is adjudicated. If the new petition is denied, employment authorization will cease;

(10) An information media representative (I), pursuant to §214.2(i) of this chapter. An alien in this status may be employed only for the sponsoring foreign news agency or bureau. Employment authorization does not extend to the dependents of an information media representative (also designated "I");

(11) An exchange visitor (J–1), pursuant to §214.2(j) of this chapter and 22 CFR part 62. An alien in this status may be employed only by the exchange visitor program sponsor or appropriate designee and within the guidelines of the program approved by the Department of State as set forth in the Form DS–2019, Certificate of Eligibility, issued by the program sponsor;

(12) An intra-company transferee (L–1), pursuant to §214.2(l) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(13) An alien having extraordinary ability in the sciences, arts, education, business, or athletics (O–1), and an accompanying alien (O–2), pursuant to §214.2(o) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained. In the case of a professional O–1 athlete who is traded from one organization to another organization, employment authorization

692

**Department of Homeland Security** §274a.12

for the player will automatically continue for a period of 30 days after the acquisition by the new organization, within which time the new organization is expected to file a new Form I–129 petition for O nonimmigrant classification. If a new Form I–129 is not filed within 30 days, employment authorization will cease. If a new Form I–129 is filed within 30 days, the professional athlete's employment authorization will continue until the petition is adjudicated. If the new petition is denied, employment authorization will cease.

(14) An athlete, artist, or entertainer (P–1, P–2, or P–3), pursuant to §214.2(p) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained. In the case of a professional P–1 athlete who is traded from one organization to another organization, employment authorization for the player will automatically continue for a period of 30 days after the acquisition by the new organization, within which time the new organization is expected to file a new Form I–129 for P–1 nonimmigrant classification. If a new Form I–129 is not filed within 30 days, employment authorization will cease. If a new Form I–129 is filed within 30 days, the professional athlete's employment authorization will continue until the petition is adjudicated. If the new petition is denied, employment authorization will cease;

(15) An international cultural exchange visitor (Q–1), according to §214.2(q)(1) of this chapter. An alien may only be employed by the petitioner through whom the status was obtained;

(16) An alien having a religious occupation, pursuant to §214.2(r) of this chapter. An alien in this status may be employed only by the religious organization through whom the status was obtained;

(17) Officers and personnel of the armed services of nations of the North Atlantic Treaty Organization, and representatives, officials, and staff employees of NATO (NATO–1, NATO–2, NATO–3, NATO–4, NATO–5 and NATO–6), pursuant to §214.2(o) of this chapter. An alien in this status may be employed only by NATO;

(18) An attendant, servant or personal employee (NATO–7) of an alien admitted as a NATO–1, NATO–2, NATO–3, NATO–4, NATO–5, or NATO–6, pursuant to §214.2(o) of this chapter. An alien admitted under this classification may be employed only by the NATO alien through whom the status was obtained;

(19) A nonimmigrant pursuant to section 214(e) of the Act. An alien in this status must be engaged in business activities at a professional level in accordance with the provisions of Chapter 16 of the North American Free Trade Agreement (NAFTA);

(20) A nonimmigrant alien within the class of aliens described in paragraphs (b)(2), (b)(5), (b)(8), (b)(9), (b)(10), (b)(11), (b)(12), (b)(13), (b)(14), (b)(16), and (b)(19) of this section whose status has expired but who has filed a timely application for an extension of such stay pursuant to §§214.2 or 214.6 of this chapter. These aliens are authorized to continue employment with the same employer for a period not to exceed 240 days beginning on the date of the expiration of the authorized period of stay. Such authorization shall be subject to any conditions and limitations noted on the initial authorization. However, if the district director or service center director adjudicates the application prior to the expiration of this 240 day period and denies the application for extension of stay, the employment authorization under this paragraph shall automatically terminate upon notification of the denial decision;

(21) A nonimmigrant alien within the class of aliens described in 8 CFR 214.2(h)(1)(ii)(C) who filed an application for an extension of stay pursuant to 8 CFR 214.2 during his or her period of admission. Such alien is authorized to be employed by a new employer that has filed an H–2A petition naming the alien as a beneficiary and requesting an extension of stay for the alien for a period not to exceed 120 days beginning from the "Received Date" on Form I–797 (Notice of Action) acknowledging receipt of the petition requesting an extension of stay, provided that the employer has enrolled in and is a participant in good standing in the E-Verify program, as determined by

693

USCIS in its discretion. Such authorization will be subject to any conditions and limitations noted on the initial authorization, except as to the employer and place of employment. However, if the District Director or Service Center director adjudicates the application prior to the expiration of this 120-day period and denies the application for extension of stay, the employment authorization under this paragraph (b)(21) shall automatically terminate upon 15 days after the date of the denial decision. The employment authorization shall also terminate automatically if the employer fails to remain a participant in good standing in the E-Verify program, as determined by USCIS in its discretion;

(22) An alien in E–2 CNMI Investor nonimmigrant status pursuant to 8 CFR 214.2(e)(23). An alien in this status may be employed only by the qualifying company through which the alien attained the status. An alien in E–2 CNMI Investor nonimmigrant status may be employed only in the Commonwealth of the Northern Mariana Islands for a qualifying entity. An alien who attained E–2 CNMI Investor nonimmigrant status based upon a Foreign Retiree Investment Certificate or Certification is not employment-authorized. Employment authorization does not extend to the dependents of the principal investor (also designated E–2 CNMI Investor nonimmigrants) other than those specified in paragraph (c)(12) of this section;

(23) A Commonwealth of the Northern Mariana Islands transitional worker (CW–1) pursuant to 8 CFR 214.2(w). An alien in this status may be employed only in the CNMI during the transition period, and only by the petitioner through whom the status was obtained, or as otherwise authorized by 8 CFR 214.2(w). An alien who is lawfully present in the CNMI (as defined by 8 CFR 214.2(w)(1)(v)) on or before November 27, 2011, is authorized to be employed in the CNMI, and is so employed in the CNMI by an employer properly filing an application under 8 CFR 214.2(w)(14)(ii) on or before such date for a grant of CW–1 status to its employee in the CNMI for the purpose of the alien continuing the employment, is authorized to continue such employ-

ment on or after November 27, 2011, until a decision is made on the application; or

(24) An alien who is authorized to be employed in the Commonwealth of the Northern Mariana Islands for a period of up to 2 years following the transition program effective date, under section 6(e)(2) of Public Law 94–241, as added by section 702(a) of Public Law 110–229. Such alien is only authorized to continue in the same employment that he or she had on the transition program effective date as defined in 8 CFR 1.1 until the earlier of the date that is 2 years after the transition program effective date or the date of expiration of the alien's employment authorization, unless the alien had unrestricted employment authorization or was otherwise authorized as of the transition program effective date to change employers, in which case the alien may have such employment privileges as were authorized as of the transition program effective date for up to 2 years.

(c) *Aliens who must apply for employment authorization.* An alien within a class of aliens described in this section must apply for work authorization. If authorized, such an alien may accept employment subject to any restrictions stated in the regulations or cited on the employment authorization document. USCIS, in its discretion, may establish a specific validity period for an employment authorization document, which may include any period when an administrative appeal or judicial review of an application or petition is pending.

(1) An alien spouse or unmarried dependent child; son or daughter of a foreign government official (A–1 or A–2) pursuant to 8 CFR 214.2(a)(2) and who presents an endorsement from an authorized representative of the Department of State;

(2) An alien spouse or unmarried dependent son or daughter of an alien employee of the Coordination Council for North American Affairs (E–1) pursuant to § 214.2(e) of this chapter;

(3) A nonimmigrant (F–1) student who:

(i)(A) Is seeking pre-completion practical training pursuant to 8 CFR 214.2(f)(10)(ii)(A)(*1*)–(*2*);

694

**Department of Homeland Security**                    **§ 274a.12**

(B) Is seeking authorization to engage in post-completion Optional Practical Training (OPT) pursuant to 8 CFR 214.2(f)(10)(ii)(A)(3); or

(C) Is seeking a 17-month STEM OPT extension pursuant to 8 CFR 214.2(f)(10)(ii)(C);

(ii) Has been offered employment under the sponsorship of an international organization within the meaning of the International Organization Immunities Act (59 Stat. 669) and who presents a written certification from the international organization that the proposed employment is within the scope of the organization's sponsorship. The F–1 student must also present a Form I–20 ID or SEVIS Form I–20 with employment page completed by DSO certifying eligibility for employment; or

(iii) Is seeking employment because of severe economic hardship pursuant to 8 CFR 214.2(f)(9)(ii)(C) and has filed the Form I–20 ID and Form I–538 (for non-SEVIS schools), or SEVIS Form I–20 with employment page completed by the DSO certifying eligibility, and any other supporting materials such as affidavits which further detail the unforeseen economic circumstances that require the student to seek employment authorization.

(4) An alien spouse or unmarried dependent child; son or daughter of a foreign government official (G–1, G–3 or G–4) pursuant to 8 CFR 214.2(g) and who presents an endorsement from an authorized representative of the Department of State;

(5) An alien spouse or minor child of an exchange visitor (J–2) pursuant to § 214.2(j) of this chapter;

(6) A nonimmigrant (M–1) student seeking employment for practical training pursuant to 8 CFR 214.2(m) following completion of studies. The alien may be employed only in an occupation or vocation directly related to his or her course of study as recommended by the endorsement of the designated school official on the I–20 ID;

(7) A dependent of an alien classified as NATO–1 through NATO–7 pursuant to § 214.2(n) of this chapter;

(8) An alien who has filed a complete application for asylum or withholding of deportation or removal pursuant to 8 CFR part 208, whose application:

(i) Has not been decided, and who is eligible to apply for employment authorization under § 208.7 of this chapter because the 150-day period set forth in that section has expired. Employment authorization may be granted according to the provisions of § 208.7 of this chapter in increments to be determined by the Commissioner and shall expire on a specified date; or

(ii) Has been recommended for approval, but who has not yet received a grant of asylum or withholding or deportation or removal;

(9) An alien who has filed an application for adjustment of status to lawful permanent resident pursuant to part 245 of this chapter. For purposes of section 245(c)(8) of the Act, an alien will not be deemed to be an "unauthorized alien" as defined in section 274A(h)(3) of the Act while his or her properly filed Form I–485 application is pending final adjudication, if the alien has otherwise obtained permission from the Service pursuant to 8 CFR 274a.12 to engage in employment, or if the alien had been granted employment authorization prior to the filing of the adjustment application and such authorization does not expire during the pendency of the adjustment application. Upon meeting these conditions, the adjustment applicant need not file an application for employment authorization to continue employment during the period described in the preceding sentence;

(10) An alien who has filed an application for suspension of deportation under section 244 of the Act (as it existed prior to April 1, 1997), cancellation of removal pursuant to section 240A of the Act, or special rule cancellation of removal under section 309(f)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, enacted as Pub. L. 104–208 (110 Stat. 3009–625) (as amended by the Nicaraguan Adjustment and Central American Relief Act (NACARA)), title II of Pub. L. 105–100 (111 Stat. 2160, 2193) and whose properly filed application has been accepted by the Service or EOIR.

(11) An alien paroled into the United States temporarily for emergency reasons or reasons deemed strictly in the

695

public interest pursuant to § 212.5 of this chapter;

(12) An alien spouse of a long-term investor in the Commonwealth of the Northern Mariana Islands (E–2 CNMI Investor) other than an E–2 CNMI investor who obtained such status based upon a Foreign Retiree Investment Certificate, pursuant to 8 CFR 214.2(e)(23). An alien spouse of an E–2 CNMI Investor is eligible for employment in the CNMI only;

(13) [Reserved]

(14) An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment;

(15) [Reserved]

(16) Any alien who has filed an application for creation of record of lawful admission for permanent residence pursuant to part 249 of this chapter;

(17) A nonimmigrant visitor for business (B–1) who:

(i) Is a personal or domestic servant who is accompanying or following to join an employer who seeks admission into, or is already in, the United States as a nonimmigrant defined under sections 101(a)(15) (B), (E), (F), (H), (I), (J), (L) or section 214(e) of the Act. The personal or domestic servant shall have a residence abroad which he or she has no intention of abandoning and shall demonstrate at least one year's experience as a personal or domestic servant. The nonimmigrant's employer shall demonstrate that the employer/employee relationship has existed for at least one year prior to the employer's admission to the United States; or, if the employer/employee relationship existed for less than one year, that the employer has regularly employed (either year-round or seasonally) personal or domestic servants over a period of several years preceding the employer's admission to the United States;

(ii) Is a domestic servant of a United States citizen accompanying or following to join his or her United States citizen employer who has a permanent home or is stationed in a foreign country, and who is visiting temporarily in the United States. The employer/employee relationship shall have existed

prior to the commencement of the employer's visit to the United States; or

(iii) Is an employee of a foreign airline engaged in international transportation of passengers freight, whose position with the foreign airline would otherwise entitle the employee to classification under section 101(a)(15)(E)(i) of the Immigration and Nationality Act, and who is precluded from such classification solely because the employee is not a national of the country of the airline's nationality or because there is no treaty of commerce and navigation in effect between the United States and the country of the airline's nationality.

(18) An alien against whom a final order of deportation or removal exists and who is released on an order of supervision under the authority contained in section 241(a)(3) of the Act may be granted employment authorization in the discretion of the district director only if the alien cannot be removed due to the refusal of all countries designated by the alien or under section 241 of the Act to receive the alien, or because the removal of the alien is otherwise impracticable or contrary to the public interest. Additional factors which may be considered by the district director in adjudicating the application for employment authorization include, but are not limited to, the following:

(i) The existence of economic necessity to be employed;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support; and

(iii) The anticipated length of time before the alien can be removed from the United States.

(19) An alien applying for Temporary Protected Status pursuant to section 244 of the Act shall apply for employment authorization only in accordance with the procedures set forth in part 244 of this chapter.

(20) Any alien who has filed a completed legalization application pursuant to section 210 of the Act (and part 210 of this chapter).

(21) A principal nonimmigrant witness or informant in S classification, and qualified dependent family members.

696

**Department of Homeland Security**  §274a.13

(22) Any alien who has filed a completed legalization application pursuant to section 245A of the Act (and part 245a of this chapter). Employment authorization shall be granted in increments not exceeding 1 year during the period the application is pending (including any period when an administrative appeal is pending) and shall expire on a specified date.

(23) [Reserved]

(24) An alien who has filed an application for adjustment pursuant to section 1104 of the LIFE Act, Public Law 106–553, and the provisions of 8 CFR part 245a, Subpart B of this chapter.

(25) An immediate family member of a T–1 victim of a severe form of trafficking in persons designated as a T–2, T–3 or T–4 nonimmigrant pursuant to §214.11 of this chapter. Aliens in this status shall only be authorized to work for the duration of their T nonimmigrant status.

(d) An alien lawfully enlisted in one of the Armed Forces, or whose enlistment the Secretary with jurisdiction over such Armed Force has determined would be vital to the national interest under 10 U.S.C. 504(b)(2), is authorized to be employed by that Armed Force in military service, if such employment is not otherwise authorized under this section and the immigration laws. An alien described in this section is not issued an employment authorization document.

(e) *Basic criteria to establish economic necessity.* Title 45—Public Welfare, Poverty Guidelines, 45 CFR 1060.2 should be used as the basic criteria to establish eligibility for employment authorization when the alien's economic necessity is identified as a factor. The alien shall submit an application for employment authorization listing his or her assets, income, and expenses as evidence of his or her economic need to work. Permission to work granted on the basis of the alien's application for employment authorization may be revoked under §274a.14 of this chapter upon a showing that the information contained in the statement was not true and correct.

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting §274a.12, see the List of CFR Sections Affected, which appears in the Finding Aids section in the printed volume and at *www.fdsys.gov*.

**§274a.13  Application for employment authorization.**

(a) *Application.* Aliens authorized to be employed under sections 274a.12(a)(3), (4), (6) through (8), (a)(10) through (15), and (a)(20) must file an application in order to obtain documentation evidencing this fact.

(1) Aliens who may apply for employment authorization under 8 CFR 274a.12(c), except for those who may apply under 8 CFR 274a.12(c)(8), must apply on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions. The approval of applications filed under 8 CFR 274a.12(c), except for 8 CFR 274a.12(c)(8), are within the discretion of USCIS. Where economic necessity has been identified as a factor, the alien must provide information regarding his or her assets, income, and expenses.

(2) An initial employment authorization request for asylum applicants under 8 CFR 274a.12(c)(8) must be filed on the form designated by USCIS in accordance with the form instructions. The applicant also must submit a copy of the underlying application for asylum or withholding of deportation, together with evidence that the application has been filed in accordance with 8 CFR 208.3 and 208.4. An application for an initial employment authorization or for a renewal of employment authorization filed in relation to a pending claim for asylum shall be adjudicated in accordance with 8 CFR 208.7. An application for renewal or replacement of employment authorization submitted in relation to a pending claim for asylum, as provided in 8 CFR 208.7, must be filed, with fee or application for waiver of such fee.

(b) *Approval of application.* If the application is granted, the alien shall be notified of the decision and issued an employment authorization document valid for a specific period and subject to any terms and conditions as noted.

(c) *Denial of application.* If the application is denied, the applicant shall be notified in writing of the decision and the reasons for the denial. There shall

697

SPEAKERS        CONTENTS        INSERTS     Tables

Page 1       TOP OF DOC

66–253

2000
*BATTERED IMMIGRANT WOMEN PROTECTION ACT OF 1999*

HEARING

BEFORE THE

SUBCOMMITTEE ON
IMMIGRATION AND CLAIMS

OF THE
COMMITTEE ON THE JUDICIARY
HOUSE OF REPRESENTATIVES

ONE HUNDRED SIXTH CONGRESS

SECOND SESSION

ON
H.R. 3083

JULY 20, 2000

Page 2       PREV PAGE       TOP OF DOC

Serial No. 116

Printed for the use of the Committee on the Judiciary

For sale by the U.S. Government Printing Office
Superintendent of Documents, Congressional Sales Office, Washington, DC 20402

COMMITTEE ON THE JUDICIARY
HENRY J. HYDE, Illinois, *Chairman*
F. JAMES SENSENBRENNER, Jr., Wisconsin
BILL McCOLLUM, Florida
GEORGE W. GEKAS, Pennsylvania
HOWARD COBLE, North Carolina
LAMAR S. SMITH, Texas
ELTON GALLEGLY, California
CHARLES T. CANADY, Florida
BOB GOODLATTE, Virginia
STEVE CHABOT, Ohio
BOB BARR, Georgia
WILLIAM L. JENKINS, Tennessee
ASA HUTCHINSON, Arkansas
EDWARD A. PEASE, Indiana

Under your bill, that individual would be allowed to self-petition and stay in the United States, even though it had been 15 years since the incident and she had been in the country illegally for 15 years? Is that the case? I can ask the INS the question.

Page 90　　PREV PAGE　　TOP OF DOC

Ms. **SCHAKOWSKY.** If she were still married to him, then it would be. If they had been divorced or separated long ago? Then the answer is no, that spouse would not. She has 2 years from the time of the divorce, death or deportation to make that claim.

Mr. **SMITH.** Okay. And I have some other technical questions, I will wait and ask the INS.

Ms. **SCHAKOWSKY.** And I wanted to just end with my commitment, Mr. Chairman, to work with all members of this committee, and particularly with you in the hopes that we can come to a resolution that would expand the opportunities for victims.

Mr. **SMITH.** I know you heard my suggestions in my opening statement. If you will take a look at those maybe we can all sit down and visit about that. Thank you, and thank you for your testimony.

We will go to our second panel and welcome Barbara Strack, Acting Executive Associate Commissioner for Policy and Planning, Immigration and Naturalization Service.

Ms. Strack, if you will proceed when you are ready.

STATEMENT OF BARBARA STRACK, ACTING EXECUTIVE ASSOCIATE COMMISSIONER FOR POLICY AND PLANNING, IMMIGRATION AND NATURALIZATION SERVICE

Ms. **STRACK.** Thank you. Good morning Mr. Chairman and members of the subcommittee. Thank you for inviting the Immigration and Naturalization Service to appear to comment on H.R. 3083, the Battered Immigrant Women Protection Act of 1999. My name is Barbara Strack, and I am the acting executive associate commissioner for the Office of Policy and Planning at INS.

Page 91　　PREV PAGE　　TOP OF DOC

I would like to summarize my written statement and request that it be submitted for the record. Let me begin by addressing the impact that the immigration provisions of the Violence Against Women Act, commonly known as VAWA, have had. It has helped thousands of immigrant spouses and children of U.S. citizens and lawful permanent residents who are victims of domestic violence. We know that fear of deportation or removal means that abused family members are less likely to report domestic violence or to leave an abusive household because an abusive spouse or parent has a powerful weapon by controlling the immigration process. VAWA allows qualified individuals to self-petition and allows those who self-petition to keep an earlier priority date if there has already been a petition filed by the batterer.

Since the publication of the interim regulation in March 1996, INS has received more than 11,000 applications for self-petitions and has approved over 6,500.

This number does not include children of self-petitioners who derive immigration status through a parent's self-petition. While the majority of the applications have been from women, the service has also approved self-petitions filed by men and by children.

The success of this program in providing vital immigration relief to battered immigrants is due, in large part, to the centralization of the process at our Vermont Service Center. These applications receive special handling from the mailroom and data entry through the adjudications process. They are assigned to the VAWA unit in

78

Vermont, which is a special team consisting of special adjudicators who have received extensive training to ensure that they understand the dynamics of domestic violence. The Service has worked closely with many organizations that provide assistance to victims of domestic violence, and their expertise has been invaluable in establishing a program that is truly working to help victims of domestic violence find safety and independence.

Page 92      PREV PAGE      TOP OF DOC

While the current law and regulations have been extremely effective, our experience in implementing VAWA has revealed gaps in the law that we believe are unintended but that prevent many battered immigrants with approved self-petitions from completing the process and becoming lawful permanent residents.

I am here today to express INS support for specific provisions of H.R. 3083 that would eliminate these gaps. The INS believes that such improvements to VAWA are consistent with its purpose of giving battered aliens the same immigration opportunity as similarly-situated aliens who have not been battered.

One of the most important issues is how the sunset of section 245(i) limits the ability of battered immigrants to become lawful permanent residents. Specifically, many self-petitioners whose petitions have been approved find themselves either statutorily ineligible for adjustment of status in the United States, or forced to leave the country to obtain an immigrant visa after having accrued lengthy periods of "unlawful presence" in the United States. Many of them will be ineligible for readmission for 3 or 10 years. These battered immigrants also risk exposing themselves to the very hardship and danger documented in the self-petition. Section 3 of the bill would improve this situation by ensuring that battered immigrants with approved self-petitions could remain in the United States to seek adjustment of status.

Another gap is that the current immigration law establishes waivers of certain grounds of inadmissibility only for spouses or children who benefit from a relative petition filed by a U.S. citizen or LPR spouse. These waivers are not available to most self-petitioning battered immigrants. INS supports those portions of section 5 of the bill that would create a more flexible humanitarian waiver that would be helpful to many self petitioning immigrants.

Page 93      PREV PAGE      TOP OF DOC

I highlighted several sections of H.R. 3083 that we consider very helpful. I would also like to draw the subcommittee's attention to certain parts of the bill that concern us. I would stress that we are still reviewing the bill and may have additional comments at a later date.

First, we are concerned that H.R. 3083 proposes to change current eligibility requirements by making this relief available to individuals who live outside the United States and have never resided in the United States with the abusive spouse or parent.

Another provision of the bill that deserves careful scrutiny is section 7. This section would amend the INA to permit individuals who enter the United States with a nonimmigrant fiance visa to apply for benefits that are currently reserved for the battered spouse or child of a U.S. citizen or lawful permanent resident. A fiance visa is temporary, valid for only 90 days. A person who fails to enter into marriage during this period should be treated like other temporary nonimmigrants and should not stay in the United States indefinitely.

We address several other concerns we have with the bill in my written statement.

Finally, INS would like to reiterate the administration's support for establishing a new nonimmigrant visa category, the T-visa, which will facilitate enforcement of trafficking laws while protecting the victims of such offenses.

In closing, let me emphasize INS's support for the underlying goals of H.R. 3083 and for many provisions of

the bill. We would welcome the opportunity to work further with the sponsors and with the subcommittee on this important legislation. That concludes my testimony. Once again, thank you and I would be happy to answer your questions.

Page 94          PREV PAGE          TOP OF DOC

Mr. **SMITH.** Thank you.

[The prepared statement of Ms. Strack follows:]

PREPARED STATEMENT OF BARBARA STRACK, ACTING EXECUTIVE ASSOCIATE COMMISSIONER FOR POLICY AND PLANNING, IMMIGRATION AND NATURALIZATION SERVICE

Mr. Chairman and Members of the Subcommittee, thank you for inviting the Immigration and Naturalization Service to appear before you to comment on HR 3083, the Battered Immigrant Women Protection Act of 1999. My name is Barbara Strack, and I am the Acting Executive Associate Commissioner for the Office of Policy and Planning at the Immigration and Naturalization Service (INS).

Let me begin by describing the impact that the immigration provisions of the Violence Against Women Act of 1994—commonly known as have had. It has helped thousands of spouses and children of U.S. citizens and lawful permanent residents (LPR) who are victims of domestic violence but who are not themselves U.S. citizens or LPRs. We know that fear of deportation or removal from the United States means abused family members are less likely to report domestic violence or to leave an abusive household. An abusive spouse or parent has a powerful weapon by controlling the immigration application process. This can be misused in many ways: threatening to report a family member to the INS, making false promises to file a petition some time in the future, withdrawing a petition that has already been filed, withholding important documentation, or refusing to appear for the scheduled interview with INS. VAWA allows qualified individuals to self-petition and—under the INS interim rule—allows those who self-petition to keep the earlier priority date if there has already been a petition filed by the batterer on the victim's behalf. This takes away one of the tools that a batterer could otherwise use to control the victim of abuse.

Page 95          PREV PAGE          TOP OF DOC

Since the publication of the interim regulation in March 1996, INS has received more than 11,000 self-petitions, and has approved over 6,500. This number does not include the children of self-petitioners who derive immigration status through a parent's self-petition. While the majority of the applicants are women, the Service has also approved self-petitions filed by battered men and children.

The success of this program in providing vital immigration relief to battered immigrants is due in large part to the centralization of the adjudication process at the Vermont Service Center in St. Albans, Vermont. The centralization of this process at the Vermont Service Center is particularly appropriate for this type of small volume, complex adjudication. At the Service Center we have established a streamlined procedure for careful and sensitive processing of these self-petitions. Realizing the urgent need and unique circumstances of these individuals, the applications receive special handling from the mailroom and data entry to the adjudication process. For example, they are pre-screened to ensure that the Service uses a safe address for any correspondence with the self-petitioner.

The self-petitions are then assigned to the VAWA unit. This is a special team consisting of experienced adjudicators who have received extensive training to ensure they understand the dynamics of domestic violence and its impact on issues such as whether victims report these crimes to the police or victims' need for access to public benefits to escape the abuse. Most importantly, the training focuses on how batterers use their authority over victims' immigration status to control victims and prevent them from seeking assistance from the criminal justice system. The Service has worked closely with many of the organizations that provide assistance

nationwide to victims of domestic violence. Their expertise has been invaluable in establishing a program that is truly working to help victims of domestic violence find safety and independence.

Page 96        PREV PAGE        TOP OF DOC

While the current law and regulations have been extremely effective, our experience in implementing VAWA over several years has revealed the existence of gaps in VAWA that we believe are unintended, but that prevent many battered immigrants with approved self-petitions from completing the process by applying for adjustment of status or an immigrant visa. I am here today to express INS support for specific provisions of HR 3083 which would eliminate those gaps, ensuring that qualified battered immigrants are able to complete the immigration process that leads to lawful permanent residence. The INS believes that such improvements to VAWA are consistent with its purpose of giving battered aliens the same immigration opportunities as similarly situated aliens who have not been battered.

One of the most important issues is how the sunset of Section 245(i) of the Immigration and Nationality Act (INA) limits the ability of battered immigrants to become lawful permanent residents. Specifically, many self-petitioners whose petitions have been approved find themselves either statutorily ineligible for adjustment of status in the United States, or forced to leave the country to obtain an immigrant visa after having accrued lengthy periods of "unlawful presence" in the U.S. Because of that time accrued in unlawful status, many of them will be ineligible for admission for three or ten years, under one of the provisions added to the INA by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. These battered immigrants also risk exposing themselves to the very hardship and danger documented in the self-petition. Section 3 of HR 3083 would improve this situation by ensuring that battered immigrants with approved self- petitions could remain in the United States to seek adjustment of status.

Another gap is that current immigration law establishes waivers of certain grounds of inadmissibility only for spouses or children who benefit from a relative petition filed by a U.S. citizen or LPR spouse. These waivers are not available to most self-petitioning battered immigrants, either because the spousal relationship no longer exists, or because a substantial connection cannot be established between the battery and the entry into the United States. INS supports those portions of Section 5 of HR 3083 because it grants a more flexible waiver based on humanitarian considerations that address the special circumstances of a self- petitioning battered immigrant.

Page 97        PREV PAGE        TOP OF DOC

HR 3083 is a wide-ranging bill that expands immigration benefits and alters the application of the INA in significant ways, and I've highlighted several sections that we consider very helpful. INS would also like to draw the Subcommittee's attention to certain parts of the bill that concern us. I should stress that we are continuing to review the bill and may have additional comments at a later date. We look forward to working with you in this regard.

We are concerned that HR 3083 proposes to change the current eligibility requirements by making this relief available to individuals who live outside the United States or have never resided in the United States with the abusive spouse or parent, by eliminating the requirement that the self-petitioner be *physically present in the United States* at the time of filing, or have *resided in the United States* with the abusive spouse. Although INS does consider spouses or children of U.S. citizens or LPRs who are serving in the military or work on behalf of the United States Government outside the U.S. to be in the United States for the purpose of filing a self-petition, legislation clarifying this eligibility would be helpful.

Another significant proposed change in HR 3083 that deserves careful scrutiny is Section 7. This section would amend the INA to permit individuals who enter the United States with a non-immigrant visa as a fiance to be eligible to apply for benefits that are currently reserved for the battered spouse or child of a U.S. citizen or LPR. A fiance(e) visa is temporary, valid only for 90 days. A person who fails to enter into marriage with the

U.S. citizen after entering the United States on a short-term nonimmigrant fiance(e) visa should be treated just like any other nonimmigrant when the rationale for temporary admission no longer applies and should not stay in the United States indefinitely.

Page 98        PREV PAGE        TOP OF DOC

Additionally, the INS recommends striking Section 7(e), Access to Naturalization for Divorced Victims of Abuse. Under current law, most immigrants must wait 5 years to naturalize, but spouses in intact marriages to United States citizens are eligible for citizenship after only 3 years. Section 7(e) would allow *self-petitioners* to naturalize after 3 years instead of the usual 5, but would leave the usual 5-year rule in place for abused spouses who leave their abusive relationship *after* obtaining LPR status, giving self-petitioners more favorable treatment than these other abused immigrant spouses.

Finally, INS wants to reiterate the Administration's support for establishing a new, non-immigrant visa category (T-visa) which will facilitate enforcement of trafficking laws while protecting the victims of such offenses.

I want to reiterate INS' support for the underlying goals of HR 3083 and for many provisions of the bill. We would welcome the opportunity to work with the sponsors of HR 3083 and with the Subcommittee to craft meaningful legislation that fills in the unintended gaps of VAWA and helps immigrants who are victims of domestic violence.

This concludes my testimony before the Subcommittee. Once again, thank you for the opportunity to share the views of the Immigration and Naturalization Service on this important bill. I would be happy to answer your questions.

Mr. **SMITH.** I have a few questions and as you just heard, we have a vote, and this is not an expected vote. It is not the vote I thought we would have at 11:30, so what we will do is break and return for half an hour before we have another vote.

Page 99        PREV PAGE        TOP OF DOC

The first question is what is your view, and you just mentioned it a while ago, of removing the 90-day time limit to file motions to reopen? Do you think that is one of the concerns you have about the bill or not?

Ms. **STRACK.** The Department of Justice has not taken a position on that, and that is something we would like to look at further. In general, having some finality is helpful to us. However, we would be willing to look at this special population to examine whether there are some special circumstances that would warrant an exception in these cases.

Mr. **SMITH.** So no position or you have concerns about it? We were told one thing last week, and I am wondering if you are going to contradict what we were told last week.

Ms. **STRACK.** I think it is fair to say that the Department of Justice has some concerns.

Mr. **SMITH.** Okay. And I will leave it up to you all to work out that arrangement. This is a question that goes to the heart of a lot of what we are trying to do today. In the 1996 bill, we had waivers of inadmissibility for battered aliens. That was an attempt to recognize the problem, and to at least take some initial steps to try to rectify it. Yet this administration still has not issued regulations in that 3 1/2 year period since we allowed for those waivers.

What good reason do we have for the administration not issuing regulations to help these battered spouses?

Page 100        PREV PAGE        TOP OF DOC

Ms. **STRACK.** Well, we have issued regulations with respect to battered immigrants. There is an——

Mr. **SMITH.** But not in respect to the waivers of inadmissibility from the 1996 act for battered spouses.

Ms. **STRACK.** That is correct. That is part of a larger regulation, 212(a), which is not——

Mr. **SMITH.** If the administration cares about battered immigrant spouses, why have they not issued regulations in 3 1/2 years?

Ms. **STRACK.** We do care about battered immigrant spouses. Those regulations are part of a larger regulation, and it is the difficulty of covering so many issues in a single regulation that has delayed the issuance of the regulations. But if I could address what we have learned during this period of time through looking at the 11,000 applications we have, we now know things about this population that we did not know before. And we can look at some of these things on the face of it, and see that there are some problems with applying the law as it exist.

Mr. **SMITH.** Okay. Let me go on. How many battered aliens have actually been removed to your knowledge? Been deported?

Ms. **STRACK.** The information I believe that we provided to you in the letter, and if you will give me a moment, I can find that—we do not have statistics on having removed aliens who were recipients of approved self-petitions.

Page 101        PREV PAGE        TOP OF DOC

Mr. **SMITH.** To your knowledge, none have been deported so far?

Ms. **STRACK.** None to my knowledge.

[A more detailed answer was submitted after the hearing and follows.]

Clarification of response to Mr. Smith's question regarding deportation of "battered aliens"

The Chairman asked how many "battered aliens" have been removed by INS, but Stack responded in terms of *approved self-petitioners*. The information below clarifies this exchange.

No battered alien who has filed a self petition (Form I–360) and those whose application has bee approved by INS has been deported. Approved self-petitioners are placed in deferred action status, which reflects INS's decision not to pursue removal proceedings against them. However, INS does not have statistic reflecting whether other battered aliens—*i.e.*, those who are not eligible for relief under VAWA or who are eligible but have not applied—may have been deported.

## Table 1

Mr. **SMITH.** Ms. Jackson Lee.

Ms. **JACKSON LEE.** Thank you very much, and thank you for your testimony this morning. Let me quickly go—you mentioned, I believe, in your INS statement or your statement regarding the INS, that the INS has approved more than 6,500 VAWA petitions since that publication of interim regulations in March of 1996. What have you done over the last 3 years?

Page 102        PREV PAGE        TOP OF DOC

Ms. **STRACK.** The 11,000 is the cumulative total since that date. It is 11,000 filings and 6,500 cumulative approvals to date.

Ms. **JACKSON LEE.** So how many in the last 3 years, which would take us back to 1997?

Ms. **STRACK.** The individual annual totals for 1997, 1998, 1999, and year to date, 2000, the filings are 11,756, and the approvals are 6,576.

Ms. **JACKSON LEE.** I will get that back from you in writing if you can break that down by year, and specifically the last 3 years.

[The information referred to follows:]

66253a.eps

Ms. **JACKSON LEE.** Let me ask, what do you do to identify fraudulent applications?

Ms. **STRACK.** There are three major schemes, three major mechanisms through which we identify fraudulent applications. The first is looking at the application itself for internal consistency. And that sometimes will contain evidence that is inconsistent, which may be an indicator of fraud. The other thing that we have learned, there are a surprising number of these cases where, in fact, a family preference petition had previously been filed for the same person who is now a self-petitioner. We are finding that in many instances, the self-petition is not the applicant's first effort to contact the Immigration Service. That again gives us a basis for comparison and looking back and trying to identify if there is any fraud in the case.

Page 103        PREV PAGE        TOP OF DOC

The third way that we approach fraud is really by having a small, dedicated unit at the Vermont Service Center. These are highly trained people. They review a number of cases. They are available to speak with one another and compare notes on cases, and this allows them to identify duplicate use of documents—patterns, essentially—that could indicate fraud. That would enable them to either request additional information or, in some instances, to refer the case to a district office for further investigation.

Ms. **JACKSON LEE.** Thank you. I will explore further with you in writing. Thank you very much.

Mr. **SMITH.** Thank you.

Mr. Conyers?

Mr. **CONYERS.** Thank you very much for your testimony. I want to say that you are a breath of fresh air from the kind of INS people that have come over here to testify before. I mean, INS needs more attention than almost any other part of the Department of Justice, except for prisons and corrections. And so I am excited and encouraged by your testimony that we can work something out.

Now, the main question hanging over the Schakowsky bill is simply this: Is this going to open the door for everybody to make excuses that my spouse battered me and beat me up and so now I want to become a citizen? That is the main problem here.

Page 104        PREV PAGE        TOP OF DOC

84

How can you allay the nervous nellies in the Congress that might be worried about such a prospect?

Ms. **STRACK.** To some extent, I think in terms of what is the scope of the problem of domestic violence, some of the other witnesses who are coming later may be better equipped than the Immigration Service to tell you what the rest of the problem is. What I can talk about is the cases that we have seen so far, 6,500 that we have approved. These are approved self-petitions, which means that we have found it is a valid marriage. We have found that the person has good moral character, a finding of battery or extreme cruelty and a finding that there would be extreme hardship if the person was removed. But this is a two-step process, and that is just the first step, having an approved petition.

The next step is being able to apply for adjustment of status which means actually getting your green card. What we have seen, looking at the kinds of people so far in those approved cases, we think there are many obstacles that will prevent them from being able to get their green card in step 2, and those are the issues that I highlighted here today, things that will keep those people with approved self-petitions from actually perfecting the process and actually getting their green card at the end of the road.

Mr. **CONYERS.** So you do not see the floodgates opening up, so to speak?

Ms. **STRACK.** We have no reason to think that they would.

Mr. **CONYERS.** Well, I want to thank you very much. And I thank you, Mr. Chairman.

Page 105        PREV PAGE        TOP OF DOC

Mr. **SMITH.** Thank you, Mr. Conyers.

Thank you, Ms. Strack, for your testimony. We will stand in recess for about 15 minutes, and then we will begin with the third panel when we return.

[Recess.]

Mr. **SMITH.** The Subcommittee on Immigration and Claims will reconvene, and let me introduce our witnesses in this third and last panel. They are Dwayne "Duke" Austin, former INS Senior Spokesman; Jacqueline Rishty, staff attorney, Catholic Charities; Leslye Orloff, director, Immigrant Women Program, NOW Legal Defense and Education Fund; and Maria Ortiz, Shelter for Abused Women; and Bree Buchanan, director of public policy, Texas Council on Family Violence.

We welcome you all and we will begin with Mr. Austin.

STATEMENT OF DWAYNE "DUKE" AUSTIN, FORMER INS SENIOR SPOKESMAN

Mr. **AUSTIN.** Thank you, Mr. Chairman and other members of the committee who are not present, for inviting me here and giving me this opportunity to testify on this important piece of legislation.

Any professional public affairs practitioner would tell you that it is unwise, if not foolhardy, to come in here and testify against a bill entitled Protection of Battered Women. However, the bill is unnecessary. As you have already stated, there are numerous avenues of relief for battered women in the Immigration and Nationality Act, not the least of which is the 1996 act, which you mentioned regulations have still not be published yet.

Page 106        PREV PAGE        TOP OF DOC

Many of the provisions of the legislation do not address the core issue of abuse, but only grant benefits to an alien who may have been abused in the distant past.

85

**92266** **Federal Register** / Vol. 81, No. 243 / Monday, December 19, 2016 / Rules and Regulations

## DEPARTMENT OF HOMELAND SECURITY

**8 CFR Parts 212, 214, 245, and 274a**

**[CIS No. 2507–11; DHS Docket No. USCIS–2011–0010]**

**RIN 1615–AA59**

**Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status**

**AGENCY:** U.S. Citizenship and Immigration Services, Department of Homeland Security.

**ACTION:** Interim rule with request for comments.

**SUMMARY:** The Department of Homeland Security (DHS) is amending its regulations governing the requirements and procedures for victims of human trafficking seeking T nonimmigrant status. The Secretary of Homeland Security (Secretary) may grant T nonimmigrant status (commonly known as a "T visa") to aliens who are or were victims of severe forms of trafficking in persons, who are physically present in the United States on account of such trafficking, who have complied (unless under 18 years of age or unable to cooperate due to trauma) with any reasonable request by a Federal, State, or local law enforcement agency (LEA) for assistance in an investigation or prosecution of acts of trafficking in persons or the investigation of other crimes involving trafficking, and who would suffer extreme hardship involving unusual and severe harm if removed from the United States. In this interim rule, DHS is amending its regulations to conform with legislation enacted after the initial rule was published in 2002: the Trafficking Victims Protection Reauthorization Act of 2003 (TVPRA 2003), the Violence Against Women and Department of Justice Reauthorization Act of 2005 (VAWA 2005), the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA 2008), and Titles VIII and XII of the Violence Against Women Reauthorization Act of 2013 (VAWA 2013).

DHS is also streamlining procedures, responding to public comments on the 2002 interim final rule, and providing guidance for the statutory requirements for T nonimmigrants. The intent is to make sure the T nonimmigrant status regulations are up to date and reflect USCIS adjudicative experience, as well as the input provided by stakeholders.

**DATES:** *Effective date.* This rule is effective January 18, 2017.

*Comment date.* Written comments must be submitted on or before February 17, 2017. Comments on the form, form instructions, and information collection revisions in this interim rule must be submitted on or before January 18, 2017.

**ADDRESSES:** You may submit comments, identified by DHS Docket No. USCIS–2011–0010, by *one* of the following methods:

• *Federal eRulemaking Portal: http://www.regulations.gov.* Follow the instructions for submitting comments.

• *Email:* You may submit comments directly to U.S. Citizenship and Immigration Services (USCIS) by email at *USCISFRComment@uscis.dhs.gov.* Include DHS Docket No. USCIS–2011–0010 in the subject line of the message.

• *Mail:* Samantha Deshommes, Chief, Regulatory Coordination Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue NW., Washington, DC 20529–2140. To ensure proper handling, please reference DHS Docket No. USCIS–2011–0010 on your correspondence. This mailing address may be used for paper, disk, or CD–ROM submissions.

• *Hand Delivery/Courier:* Samantha Deshommes, Chief, Regulatory Coordination Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue NW., Washington, DC 20529–2140. Contact Telephone Number (202) 272–8377.

**FOR FURTHER INFORMATION CONTACT:** Elizabeth Dallam, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue NW., Washington, DC 20529–2099, telephone (202) 272–8377 (this is not a toll-free number).

**SUPPLEMENTARY INFORMATION:** This supplementary information section is organized as follows:

I. Public Participation
II. Executive Summary
　A. Purpose of the Regulatory Action
　1. Need for the Regulatory Action and How the Action Will Meet That Need
　2. Statement of Legal Authority for the Regulatory Action
　B. Summary of the Major Provisions of the Rule
　1. Statutory Changes
　2. Discretionary Changes
　C. Costs and Benefits
III. Background and Legislative Authority
IV. Eligibility and Application Requirements, Procedures, and Changes in This Rule
　A. Eligibility Requirements for T Nonimmigrant Classification
　1. Victim of a Severe Form of Trafficking in Persons
　a. Definition of "Involuntary Servitude"
　b. Performing Labor, Services, or Commercial Sex Is Not Necessary
　c. Evidence of Victimization
　2. Physical Presence on Account of Trafficking in Persons
　a. LEA Returns a Victim to the United States
　b. Victim Who Has Been Trafficked Abroad Is Allowed Entry Into the United States
　c. Removal of the "Opportunity To Depart" Requirement
　d. Evidence of Physical Presence on Account of Trafficking in Persons
　3. Compliance With Any Reasonable Request
　a. Totality of Circumstances Test To Determine the "Reasonableness" of LEA Requests
　b. "Comparably-Situated Crime Victims" Standard
　c. Proper Standard is the Reasonableness of the LEA Request
　d. Minors Exempt From Compliance With Any Reasonable Request
　e. Evidence of Compliance With Any Reasonable Request
　f. Trauma Exception
　4. Extreme Hardship Involving Unusual and Severe Harm Upon Removal
　B. Application Requirements
　1. Filing the Application
　a. Filing Deadline
　b. Form-Related Changes
　c. Proof Required for Family Members of a Minor Applicant
　d. Referral to Law Enforcement and Department of Health and Human Services
　2. Initial Evidence
　3. Bona Fide Determinations
　4. Derivative Family Members
　a. Definitions
　b. Eligibility of Certain Family Members
　5. Age-Out Protection of Eligible Family Members
　a. Age-Out Protection for Child Principal To Apply for Eligible Family Members
　b. Age-Out Protection for Unmarried Sibling Derivative of Child Principal
　c. Age-Out Protection for Child Derivative
　d. Marriage of Eligible Family Members
　e. Evidence for Eligible Family Members
　C. Adjudication and Post-Adjudication
　1. Prohibitions on Use of Information
　a. Applicability of Confidentiality Provisions
　b. Disclosure Required in Relation to Criminal Prosecution
　c. Use of Information on the T Nonimmigrant Status Application
　2. Waivers of Grounds of Inadmissibility
　a. Waiver Authority for T Nonimmigrants
　b. Criminal Grounds of Inadmissibility
　c. Waivers Relating to Adjustment of Status
　d. Waivers of Inadmissibility Grounds Related to the Trafficking Victimization
　e. Requesting a Waiver
　3. Decisions
　4. Benefits
　5. Duration of Status
　6. Extension of Status
　a. Extension of Status for Law Enforcement Need
　b. Extension of Status for Exceptional Circumstances

**Federal Register** / Vol. 81, No. 243 / Monday, December 19, 2016 / Rules and Regulations **92279**

## 2. Initial Evidence

All applicants for immigration benefits generally must submit all required initial evidence, and supporting documentation, with an application completed according to form instructions. 8 CFR 103.2(a). DHS is amending what constitutes acceptable initial evidence that must accompany the application for T nonimmigrant status. *See* new 8 CFR 214.11(d)(2). DHS will allow the following initial evidence:

• A signed statement in the applicant's own words describing the victimization and cooperation with any LEA reasonable request for assistance or applicable exemptions from cooperation with such an LEA request, and any other eligibility requirements;

• Evidence that the applicant is or has been a victim of a severe form of trafficking in persons;

• Evidence that the applicant meets the physical presence requirement;

• Evidence of any one of the following:

■ The applicant has complied with any reasonable request for assistance in a Federal, State, or local investigation or prosecution of crime where acts of trafficking are at least one central reason for the commission of that crime;

■ The applicant is under 18 years of age; or

○ The applicant is unable to cooperate with a reasonable request due to physical or psychological trauma;

• Evidence that the applicant would suffer extreme hardship involving unusual and severe harm if removed from the United States; and

• If the applicant is inadmissible, an Application for Advance Permission to Enter as Nonimmigrant, Form I–192, and supporting evidence to explain the inadmissibility.

As discussed above, DHS is removing the provisions requiring USCIS to weigh evidence as primary or secondary, and will accept any credible evidence to demonstrate each eligibility requirement for T nonimmigrant status. *See* new 8 CFR 214.11(d)(2)(ii). USCIS will determine the credibility and weight of evidence at its sole discretion. *See* new 8 CFR 214.11(d)(5). As is the case in all other immigration benefits, the applicant bears the burden of establishing eligibility. *Id.*

## 3. Bona Fide Determinations

Current regulations provide for USCIS to conduct an initial review of each T nonimmigrant status application package to determine if the application is a bona fide application. An application will be determined to be

bona fide if the application is complete and ready for adjudication. Among other requirements, the application must include biometrics, background checks, and prima facie evidence for each eligibility requirement. *See* 8 CFR 214.11(k). In conjunction with this pre-adjudication bona fide determination review, USCIS may grant the applicant deferred action when the application for T nonimmigrant status is bona fide, which allows the applicant to request employment authorization. *See* Memorandum from Stuart Anderson, Executive Associate Commissioner, Office of Policy and Planning, INS, Deferred Action for Aliens with Bona Fide Applications for T Nonimmigrant Status (May 8, 2002).[10]

One commenter recommended that USCIS make a bona fide determination and grant deferred action within 90 days of the receipt of the application.

Since 2002, USCIS has received fewer applications for T nonimmigrant status than were expected. USCIS generally adjudicates the merits of T nonimmigrant applications as quickly as it can make a bona fide determination. Nevertheless, in the event of processing backlogs, DHS recognizes that a bona fide determination may offer a victim of trafficking some protection for immigration status purposes, employment authorization, and the availability of public benefits through HHS.

In reference to a 90-day deadline, USCIS cannot guarantee a bona fide determination within 90 days in every case because the bona fide determination is dependent on the unique circumstances of each case, and the completion of biometric and background checks. Typically, these checks will be completed within 90 days, but occasionally the checks will take longer than 90 days. The completion of biometric and background checks depends on several factors, such as the schedule of the applicant, the workload of the Federal Bureau of Investigation (FBI) and other factors over which USCIS does not have control. DHS will retain the current regulatory process for bona fide determinations and make no additional changes at this time. *See* new 8 CFR 214.11(e).

This commenter also asked USCIS to notify HHS of a bona fide determination so that HHS can facilitate federal public benefits available to trafficking victims, as well as amend the bona fide determination notice to include

information about the federal benefits. USCIS currently notifies HHS upon approval of an application or a bona fide determination. As discussed elsewhere in this preamble, DHS will also notify HHS in accordance with TVPRA 2008 section 212(a)(2), 22 U.S.C. 7105(b)(1)(G). *See* new 8 CFR 214.11(d)(1)(iii).

## 4. Derivative Family Members

An applicant may be permitted to apply for certain family members to receive derivative T nonimmigrant status. In this rule, DHS is making the following changes and clarifications:

• Defining terms used to refer to victims and their family members to provide clarity. New 8 CFR 214.11(a).

• Adding new derivative categories since publication of the 2002 interim rule. New 8 CFR 214.11(k)(1).

DHS will discuss each in turn.

### a. Definitions

DHS is defining ''principal T nonimmigrant,'' ''eligible family member'' and ''derivative T nonimmigrant'' to clarify these terms used throughout the regulations. New 8 CFR 214.11(a). Principal T nonimmigrant means the victim of trafficking who has been granted T–1 nonimmigrant status. *Id.* DHS uses the term ''victim'' to refer to aliens who were subject to a severe form of trafficking in persons, and who may be eligible to apply for T–1 nonimmigrant status. *Id.* Eligible family member means someone who has the relationship to a principal applicant required for derivative T nonimmigrant status. *Id.* Derivative T nonimmigrant refers to an eligible family member in the United States who has been granted T–2, T–3, T–4, T–5, or T–6 nonimmigrant derivative status or an eligible family member who has been admitted to the United States as a T–2, T–3, T–4, T–5, or T–6 nonimmigrant. *Id.*

### b. Eligibility of Certain Family Members

The law governing T nonimmigrant status was changed in 2003 to allow a principal alien under 21 years of age to apply for admission of his or her parents and unmarried siblings under 18 years of age. *See* TVPRA 2003 section 4(b)(1)(B) and (b)(2), INA section 101(a)(15)(T)(ii)(I), 8 U.S.C. 1101(a)(15)(T)(ii)(I). In 2008, the law was amended to allow any principal, regardless of age, to apply for derivative T nonimmigrant status for parents or unmarried siblings under 18 years of age if the family member faces a present danger of retaliation as a result of the principal's escape from the severe form of trafficking in persons or cooperation

---

[10] Available for review in the rulemaking docket for this rule (DHS Docket No. USCIS–2011–0010) at *http://www.regulations.gov.*

104TH CONGRESS  }  HOUSE OF REPRESENTATIVES  {  REPORT
2d Session  }  {  104–828

## ILLEGAL IMMIGRATION REFORM AND IMMIGRANT RESPONSIBILITY ACT OF 1996

SEPTEMBER 24, 1996.—Ordered to be printed

Mr. HYDE, from the committee of conference,
submitted the following

## CONFERENCE REPORT

[To accompany H.R. 2202]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H.R. 2202) to amend the Immigration and Nationality Act to improve deterrence of illegal immigration to the United States by increasing border patrol and investigative personnel, by increasing penalties for alien smuggling and for document fraud, by reforming exclusion and deportation law and procedures, by improving the verification system for the eligibility for employment, and through other measures, to reform the legal immigration system and facilitate legal entries into the United States, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the House recede from its disagreement to the amendment of the Senate and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the Senate amendment, insert the following:

*SECTION 1. SHORT TITLE; AMENDMENTS TO IMMIGRATION AND NATIONALITY ACT; APPLICATION OF DEFINITIONS OF SUCH ACT; TABLE OF CONTENTS; SEVERABILITY.*

*(a) SHORT TITLE.—This Act may be cited as the "Illegal Immigration Reform and Immigrant Responsibility Act of 1996".*

*(b) AMENDMENTS TO IMMIGRATION AND NATIONALITY ACT.—Except as otherwise specifically provided—*

*(1) whenever in this Act an amendment or repeal is expressed as the amendment or repeal of a section or other provision, the reference shall be considered to be made to that section or provision in the Immigration and Nationality Act; and*

27–298

213

be a conclusive determination of the alien's removability from the U.S.

Section 240(e) defines as "exceptional circumstances" the serious illness of the alien or the serious illness or death of the spouse, parent, or child of the alien, and other exceptional circumstances that are not less compelling. The subsection defines "removable" to mean in the case of an alien who has not been admitted, that the alien is inadmissible under section 212, and in the case of an alien who has been admitted, that the alien is deportable under redesignated section 237.

New section 240A establishes revised rules for the type of relief that is currently available to excludable and deportable aliens under section 212(c) and 244 (a)–(d). Senate amendment section 150 recedes to these House provisions, with modifications.

Section 240A(a) provides that the Attorney General may cancel removal in the case of an alien lawfully admitted for permanent residence for not less than 5 years, if the alien has resided in the United States continuously for 7 years since being lawfully admitted in any status and has not been convicted of an aggravated felony. This provision is intended to replace and modify the form of relief now granted under section 212(c) of the INA.

Section 240A(b)(1) provides that the Attorney General may cancel removal in the case of an alien who (1) has been physically present in the United States for a continuous period of at least 10 years immediately preceding the date of applying for such relief, (2) has been a person of good moral character, (3) has at no time been convicted of an offense that would render the alien inadmissible under section 212(a)(2)(A) or deportable under redesignated sections 237(a)(2) or 237(a) (3), and (4) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence.

Section 240A(b)(1) replaces the relief now available under INA section 244(a) ("suspension of deportation"), but limits the categories of illegal aliens eligible for such relief and the circumstances under which it may be granted. The managers have deliberately changed the required showing of hardship from "extreme hardship" to "exceptional and extremely unusual hardship" to emphasize that the alien must provide evidence of harm to his spouse, parent, or child substantially beyond that which ordinarily would be expected to result from the alien's deportation. The "extreme hardship" standard has been weakened by recent administrative decisions holding that forced removal of an alien who has become "acclimated" to the United States would constitute a hardship sufficient to support a grant of suspension of deportation. See Matter of O–J–O–, Int. Dec. 3280 (BIA 1996). Such a ruling would be inconsistent with the standard set forth in new section 240A(b)(1). Similarly, a showing that an alien's United States citizen child would fare less well in the alien's country of nationality than in the United States does not establish "exceptional" or "extremely unusual" hardship and thus would not support a grant of relief under this provision. Our immigration law and policy clearly provide that an alien parent may not derive immigration benefits through his or her child who is a United States citizen. The availability in truly

214

exceptional cases of relief under section 240A(b)(1) must not undermine this or other fundamental immigration enforcement policies.

Section 240A(b)(2) restates the provisions in current section 244(a)(3), enacted in section 40703(a)(3) of the Violent Crime Control and Law Enforcement Act of 1994. It provides that the Attorney General may cancel removal if the inadmissible or deportable alien has been subjected to extreme cruelty in the United States by a spouse or parent who is a United States citizen or lawful permanent resident; has been physically present in the United States for a continuous period of at least 3 years; has been a person of good moral character during such period; is not deportable or inadmissible on grounds related to criminal activity, national security, or marriage fraud; and establishes that removal would result in extreme hardship.

Section 240A(b)(3) states that the Attorney General may adjust to the status of an alien lawfully admitted for permanent residence an alien who meets the requirements for cancellation of removal under section 240A(b) (1) or (2). The number of such adjustments shall not exceed 4,000 in any fiscal year.

Section 240A(c) provides that the following categories of aliens shall not be eligible for cancellation of removal under subsections (a) and (b)(1): an alien who entered as a crewman after June 30, 1964; an alien who was admitted as a nonimmigrant exchange alien under 101(a)(15)(J) in order to receive graduate medical education; an alien who otherwise was admitted as a nonimmigrant exchange alien under section 101(a)(15)(J), is subject to the two-year foreign residence requirement of section 212(e), and has not fulfilled that requirement or received a waiver; an alien who is inadmissible under section 212(a)(3) or deportable under redesignated section 237(a)(4) (national security and related grounds); an alien who is a persecutor as described in new section 241(b)(3)(B)(i); or an alien who has previously been granted relief under this section, or under INA sections 212(c) or 244(a) before the effective date of this Act.

Section 240A(d) provides that the period of continuous residence or physical presence ends when an alien is served a notice to appear under section 239(a) (for the commencement of removal proceedings under section 240), or when the alien is convicted of an offense that renders the alien deportable from the United States, whichever is earliest. A period of continuous physical presence under section 240A(b) is broken if the alien has departed from the United States for any period of 90 days, or for any periods in the aggregate exceeding 180 days. The continuous physical presence requirement does not apply to an alien who has served 24 months in active-duty status in the United States armed forces, was in the United States at the time of enlistment or induction, and was honorably discharged.

Section 240A(e) limits the granting of cancellation of removal and suspension of deportation under current section 244 to not more than an aggregate total of 4,000 aliens per fiscal year. This limitation shall apply regardless of when the alien applied for such relief.

New section 240B establishes new conditions for the granting of voluntary departure, currently governed by section 242(b) and



**U.S. Department of Justice**
Immigration and Naturalization Service

HQADN 70/6.2

*Office of the Executive Associate Commissioner*

*425 I Street NW*
*Washington, DC 20536*

May 8, 2002

MEMORANDUM FOR JOHNNY N. WILLIAMS
                    EXECUTIVE ASSOCIATE COMMISSIONER
                    OFFICE OF FIELD OPERATIONS

FROM:       Stuart Anderson /s/
            Executive Associate Commissioner
            Office of Policy and Planning

SUBJECT:    Deferred Action for Aliens with Bona Fide Applications for
            <u>T Nonimmigrant Status</u>

   This memorandum outlines changes in Immigration and Naturalization Service (INS)
procedures for deferred action determinations on behalf of victims of severe forms of trafficking
whose applications for T nonimmigrant status have been determined to be bona fide but are still
awaiting final adjudication by the Vermont Service Center (VSC).  It should be read as a
supplement to guidance issued by the Office of Programs on December 19, 2000, and
September 7, 2001, and to a memorandum dated August 30, 2001, that instructed INS offices to
utilize deferred action as one means to provide possible victims the opportunity to avail
themselves of the provisions of the Victims of Trafficking and Violence Protection Act of 2000,
including applying for T or U nonimmigrant status.[1]

   Effective the date of this memorandum, the VSC is responsible for assessing deferred action
for all applicants whose applications have been determined to be bona fide.  The duration of the
initial deferred action assessment shall be at the discretion of the Service Center Director but
shall not exceed 12 months.  The initial assessment may be for less than 12 months if the director
determines an application would be adjudicated within that time.  Deferred action <u>will not</u> be
considered or assessed for a T nonimmigrant status applicant if he or she is currently in

---

[1] This memorandum does not, however, alter the guidance outlined in those memoranda regarding the interim
procedures to be followed while the regulations implementing the U nonimmigrant status are being promulgated.
Aliens who are identified as possibly eligible for U nonimmigrant status should not be removed from the United
States until they have had the opportunity to apply for such status.  Existing authority and mechanisms such as
parole, deferred action, and stays of removal should be used to achieve this objective.

Memorandum for Johnny N. Williams                                      Page 2
Subject: Deferred Action for Aliens with Bona Fide Applications
          for T Nonimmigrant Status

removal proceedings unless the case has been administratively closed by the Immigration Judge
or the Board of Immigration Appeals.  For purposes of this memorandum, removal proceedings
are defined as the period between the filing of the Notice to Appear with the Immigration Judge
and the issuance of the final decision.

    If a deferred action determination is made, the VSC will notify the alien to submit Form
I-765, Application for Employment Authorization.  Applications for employment authorization
based on an assessment of deferred action at the VSC must be filed with the VSC.  After the
initial deferred action decision and issuance of a one-year Employment Authorization Document,
the VSC will hold these files and review each subsequent request for employment authorization
and deferred action upon receipt of each application.  Requests for extensions of employment
authorization and deferred action will be reviewed and granted in increments of twelve months.

    Field Offices (and other Service Centers) may continue to receive inquiries from T applicants
regarding determinations of deferred action.  These may be initial requests or requests for an
extension of deferred action.  These requests should be mailed to: **USINS-Vermont Service
Center, ATTN: Keith Canney, Box 1000, 75 Lower Weldon St., St. Albans, VT 05479-0001.**

    If you have any questions regarding this memorandum or other T nonimmigrant status issues,
please contact Laura Dawkins, Office of Adjudications at (202) 514-4754.



**U.S. Department of Justice**
Immigration and Naturalization Service

HQINV 50/1

*425 I Street NW*
*Washington, DC 20536*

AUG 3 0 2001

MEMORANDUM FOR MICHAEL A. PEARSON
EXECUTIVE ASSOCIATE COMMISSIONER
OFFICE OF FIELD OPERATIONS

FROM:        Michael D. Cronin
             Acting Executive Associate Commissioner
             Office of Programs

SUBJECT:     Victims of Trafficking and Violence Protection Act of 2000 (VTVPA) Policy
             <u>Memorandum #2  –  "T" and "U" Nonimmigrant Visas</u>

       The following instructions provide interim guidance to INS relating to the Victims of
Trafficking and Violence Protection Act of 2000 (VTVPA) Pub. L. No. 106-386, 114 Stat 1464,
(October 28, 2000).  This memorandum establishes interim procedures to be followed while the
regulations implementing the T and U visa status are being promulgated by INS. <u>The guidance in
this memorandum is effective immediately</u>, and will remain in effect until regulations on T and
U visa status are in place. This guidance supercedes or augments any previous national or local
guidance on T and U visas.

## BACKGROUND
The VTVPA reflects the United States Government's strong stance against trafficking and its
intent to vigorously pursue the prosecution of traffickers and the protection of victims.  It
provides access to social services and benefits for some victims, creates stronger criminal
penalties and enhanced sentencing for traffickers, and creates a new nonimmigrant classification
for victims of severe forms of trafficking ("T Visa" or "T").[1]  The VTVPA also reauthorizes and
amends the Violence Against Women Act (VAWA) and adds a second new nonimmigrant
classification for victims of other specific crimes ("U Visa" or "U"). [2]

---

[1] The statutory purposes of the Trafficking Victims Protection division of the VTVPA "are to combat trafficking in
persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure
just and effective punishment of traffickers, and to protect their victims." VTVPA§102(a)
[2] The "U Visa" related statutory purpose includes the intent "to create a new nonimmigrant visa classification that
will strengthen the ability of law enforcement agencies to detect, investigate and prosecute cases of domestic
violence, sexual assault, trafficking of aliens and other crimes...committed against aliens, while offering protection
to victims of such offenses in keeping with the humanitarian interests of the United States..."
VTVPA§1513(a)(2)(A)

Memorandum to Michael A. Pearson
Re: VTVPA Policy Memorandum #2 – "T" and "U" Nonimmigrant Visas                    Page 2

## DEFINITIONS
Following are several definitions critical to the understanding of this guidance.

**Severe Forms of Trafficking in Persons** as defined by VTVPA §103(8). The term "severe forms of trafficking in persons" means-

(A)   sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or

(B)   the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

**Certain Criminal Activity for "U Visa" Purposes** as defined by VTVPA §1513 (b)(3) refers to one or more of the following or any similar activity in violation of Federal, State, or local criminal law: rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes.

**Possible Victim** is any alien who may be eligible for benefits under the "T" or "U" visa categories.

## GENERAL GUIDANCE
The VTVPA creates two new nonimmigrant classifications. These two classifications provide an immigration mechanism for cooperating victims to remain temporarily in the United States to assist in investigations and prosecutions and provide humanitarian protection to victims. The "T" classification is available to victims of severe forms of trafficking and their families and is limited to 5,000 principal aliens per year. The "U" classification is available to victims of certain criminal activity (see Definitions) and their families and is limited to 10,000 principals per year.

The "T" and "U" provisions of the VTVPA went into effect upon enactment, but regulations for implementation and for the processing of applications have not yet been finalized. In the interim, aliens who are identified as possible victims in the above categories **should not be removed from the United States until they have had the opportunity to avail themselves of the provisions of the VTVPA.** Existing authority and mechanisms such as parole, deferred action, and stays of removal will be used to achieve this objective, including continued presence for victims of severe forms of trafficking, as described in interim policy guidelines for continued presence and in the regulations implementing Section 107 (c) of the VTVPA.

2

Memorandum to Michael A. Pearson
Re: VTVPA Policy Memorandum #2 – "T" and "U" Nonimmigrant Visas                    Page 3

## IDENTIFICATION OF POSSIBLE VICTIMS

In the absence of governing regulations, Service personnel should ensure broad interpretation of the guidance to ensure an alien is not removed from the United States if it appears that they fit into one of these victim categories. This guidance is an interim measure aimed only at identifying possible victims who may be eligible for relief under the new nonimmigrant classifications.

Service personnel may encounter possible victims in a variety of circumstances, such as at a Port of Entry (POE), between POEs, in detention, in adjudication processes, in Immigration Court, and/or in the course of investigative activities. At times, Service personnel will be the first point of contact with the possible victim; at other times contact may be established through a prosecutor's office, through a local or federal law enforcement agency, or through an attorney. Regardless of the manner of encounter, if the individual is identified as a possible victim, Service personnel should take the necessary steps to ensure that the individual is not prematurely removed. Circumstances will vary from case to case, and INS personnel should keep in mind that it is better to err on the side of caution than to remove a possible victim to a country where he or she may be harmed by the trafficker or abuser, or by their associates.

**Possible "T" Victims:** The VTVPA specifies that four conditions must be satisfied to classify an alien as a principal "T" nonimmigrant.

1. The alien is or has been a victim of a severe form of trafficking in persons; and

2. The alien is physically present in the United States, American Samoa, or the Commonwealth of the Northern Mariana Islands, or at a POE, on account of such trafficking; and

3. The alien has complied with any reasonable request for assistance in the investigation or prosecution of acts of trafficking - or - the alien is under the age of 15; and

4. The alien would suffer extreme hardship involving unusual and severe harm upon removal.

Additionally, to avoid extreme hardship, the Attorney General may provide "T" nonimmigrant status to the spouses, children, and, in the case of those under age 21, the parents of "T" nonimmigrants.

**Possible "U" Victims:** The VTVPA specifies that four conditions must be satisfied to classify an alien as a principal "U" nonimmigrant:

1. The alien has suffered substantial physical or mental abuse as a result of having been a victim of the certain criminal activity (see Definitions); and

3

Memorandum to Michael A. Pearson
Re: VTVPA Policy Memorandum #2 – "T" and "U" Nonimmigrant Visas

Page 4

2.  The alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning that certain criminal activity described in Definitions;

3.  The alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official; to a Federal, State, or local prosecutor; to a Federal or State judge, to the Service; or to other Federal, State, or local authorities investigating or prosecuting one of the certain criminal activities described in Definitions; and

4.  The criminal activity described violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States.

Additionally, to avoid extreme hardship, the Attorney General may provide "U" nonimmigrant status to the spouses, children, and, in the case of a child under the age of 16, the parents of "U" nonimmigrants. This would require certification by a government official that an investigation or prosecution would be harmed without the assistance of the spouse, the child, or in the case of an alien child, the parent of the alien. It should be noted that trafficking victims might also be eligible for "U" nonimmigrant classification.

## WORK AUTHORIZATION

Service personnel are instructed to use existing authority and mechanisms to prevent removal of possible "T" and "U" victims. These mechanisms include parole, deferred action, continuances, and stays of removal. Individuals who are identified as possible "T" or "U" victims may be granted work authorization pursuant to existing authority and utilizing existing application procedures. For instance, potential applicants that are paroled may be granted work authorization pursuant to 8 C.F.R. §274a.12(c)(11); potential applicants that are placed on deferred action may be granted work authorization pursuant to 8 C.F.R. §274a.12(c)(14); and potential applicants that are granted a stay of removal may be granted work authorization in accordance with the provisions of 8 C.F.R. §274a.12(c)(18). Governing regulations concerning continued presence for victims and other information related to this topic are also contained in the Department of Justice and Department of State interim rule published in the Federal Register on July 24, 2001 concerning the Protection and Assistance for Victims of Trafficking.

## JUVENILES

Each District has a juvenile coordinator who should be contacted regarding juvenile victims.

## RECORD KEEPING

It is imperative that documentation is maintained on possible victims. As such, information about the possible victim including all pertinent information surrounding the possible victim's circumstances must be maintained in the alien's A-file. If no A-file exists for the individual, one should be created. The use of standard sworn statements and/or applicable question and answer

4

Memorandum to Michael A. Pearson                                    Page 5
Re: VTVPA Policy Memorandum #2 – "T" and "U" Nonimmigrant Visas

forms must be maintained for the record. As evidence of contact with the possible victim, the INS investigator and/or officer will include any necessary notes and memorandum for the record.

## CONTINUED PRESENCE

Aliens who are victims of severe forms of trafficking and are potential witnesses may be eligible for a "T" nonimmigrant classification and shall be processed in accordance with the guidance contained in the policy memorandum dated August 20, 2001, entitled Interim Guidance #1 – Continued Presence. Governing regulations concerning continued presence are also contained in the Department of Justice and Department of State interim rule published in the Federal Register on July 24, 2001 concerning the Protection and Assistance for Victims of Trafficking, as 28 CFR Part 1100.35.

## LEGAL PROCEEDINGS

No alien identified as a possible victim eligible for "T" or "U" nonimmigrant classification should be removed from the United States until they have had the opportunity to avail themselves of the provisions of the VTVPA. When a possible "T" or "U" victim is encountered during the course of proceedings, the District Counsel's office should contact the District Victim-Witness Coordinator so that appropriate action can be taken in accordance with the instructions in this memo. The District Counsel's office has the discretion to seek a continuance of the proceedings or to request administrative closure or termination.

## FEDERAL OBLIGATIONS TO VICTIMS

Some of the provisions included in the VTVPA replicate INS responsibilities that are currently included in 42 U.S.C. 10606-10607 (the Victim's Rights and Restitution Act) and the *Attorney General Guidelines for Victim and Witness Assistance, 2000 edition*. This includes the referral of victims of Federal crime to medical care and assistance and the provision of reasonable protection. Victims who fall into the statutory definition of victim found in the *Attorney General Guidelines for Victim and Witness Assistance* must be afforded all the rights contained in that directive.[3] Service personnel should continue to involve the District and Sector Victim-Witness Coordinators in referring these victims for services.

This guidance is to be followed until such time as the alien's status has been confirmed, and, where the alien is an actual or possible material witness, the alien has had an opportunity to be considered for a "T" or a "U" nonimmigrant classification, as appropriate.

---

[3] For purposes of the Attorney General Guidelines for Victim and Witness Assistance, the term "victim" means a person that has suffered direct physical, emotional, or pecuniary harm as the result of a (federal) crime, including ....in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, another person or persons as listed in 42 U.S.C. 10607. The Attorney General designated District Directors and Chief Patrol Agents of the office having primary responsibility for conducting a Federal investigation as the responsible officials to identify victims of Federal crime.

5

Memorandum to Michael A. Pearson                                    Page 6
Re: VTVPA Policy Memorandum #2 – "T" and "U" Nonimmigrant Visas

The principles set forth in this memorandum, and internal office procedures adopted hereto, are intended solely to guide INS personnel in performing their duties.  They are not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

**U.S. Department of Homeland Security**
Citizenship and Immigration Services

---

Office of Associate Director of Operations

*425 I Street NW*
*Washington, DC 20536*

**OCT** **8** 2003

MEMORANDUM FOR  DIRECTOR, VERMONT SERVICE CENTER

FROM:                        William R. Yates
                                  Associate Director of Operations

SUBJECT:                  Centralization of Interim Relief For
                                  U Nonimmigrant Status Applicants

**Background**

On October 28, 2000, Congress passed the Victims of Trafficking and Violence Protection Act (VTVPA), Pub. L. 106-386.[1]  The VTVPA created the U nonimmigrant status, a new nonimmigrant classification for victims of specific crimes. This nonimmigrant status was created to strengthen the ability of law enforcement agencies to detect, investigate and prosecute cases of domestic violence, sexual assault, trafficking of persons and other criminal activity of which aliens are victims, while offering protection to victims of such offenses.  It provides an immigration mechanism for cooperating victims to remain temporarily in the United States to assist in investigations and/or prosecutions.  It is available to victims of certain criminal activity and their families, and is limited to 10,000 principals per year.

Regulations implementing this new nonimmigrant status are currently in the clearance process.  In an effort to provide interim relief for this vulnerable population, the Office of Programs issued interim guidance in August 2001, which directed that no one who appeared to be eligible to apply for U nonimmigrant status be removed from the United States until he/she has had the opportunity to avail him/herself of the provisions of the VTVPA.  It further instructed field offices to use existing mechanisms (parole, deferred action, and stays of removal) to achieve this objective.

---

[1] The sections of the VTVPA pertaining to U nonimmigrant status are codified at sections 101(a)(15)(U), 214(o), and 245(l) of the Immigration and Nationality Act (INA).

Memorandum for Director, Vermont Service Center                    Page 2
Subject: Centralization of Interim Relief For U Nonimmigrant Status Applicants

Since this guidance was issued, it has become apparent that until the regulations implementing the U nonimmigrant status are published, a more unified, centralized approach is needed in the interim relief process. Many field offices have been unsure how to proceed in granting interim relief, which has resulted in inconsistent treatment of potential U nonimmigrant status applicants. It is for these reasons that the U nonimmigrant status interim relief process will be centralized at the Vermont Service Center (VSC) effective immediately.

## Centralization of Interim Relief Process

The VSC will serve as the "clearinghouse" for early-filed applications and will have jurisdiction to assess deferred action in early-filed U nonimmigrant status cases. Upon receipt of a request for interim relief, the VSC will consider the facts of each case and determine if deferred action is appropriate. Each decision should be considered individually, based on all the facts present. Upon authorizing deferred action, the center director will advise the alien, by letter, of the action taken and advise him or her of eligibility to request employment authorization. The center director will include a copy of a G-312 in the alien's A file and maintain that file for docket control.

Deferred action shall not be assessed in those cases where the applicant is clearly ineligible for U nonimmigrant status or is an aggravated felon, and those cases should be referred to the Bureau of Immigration and Customs Enforcement (ICE) for possible issuance of a Notice to Appear. If the VSC determines that the case is not suitable for deferred action, the alien should be notified of that decision by letter.

By their nature, U nonimmigrant status cases generally possess factors that warrant consideration for deferred action. In some cases, however, there may be factors present that would militate against deferred action; cases should therefore receive individual scrutiny. The VSC should maintain records of all assessments of deferred action for statistical and tracking purposes. In addition, a process for periodic review of the deferred action decisions made by the VSC is planned. Upon publication of the regulations implementing the U nonimmigrant status, the VSC will send a letter informing early filers to submit an application on the proper form, and monitor the early-filed list to determine whether those assessed deferred action have applied. The VSC will terminate deferred action and refer those who fail to apply within the timeframe established by the regulation to ICE for possible issuance of a Notice to Appear, or for removal.

## Eligibility to apply for U nonimmigrant status

Before determining whether to grant a form of interim relief, VSC personnel must first determine whether the alien adequately demonstrates that he/she may possibly be eligible to apply for U nonimmigrant status when regulations are issued. This would be demonstrated by the submission of *prima facie* evidence of each eligibility requirement. In other words, the alien must produce sufficient evidence to render reasonable a conclusion that the alien may be eligible for U nonimmigrant status when regulations are issued implementing that status. This is not a

Memorandum for Director, Vermont Service Center                          Page 3
Subject: Centralization of Interim Relief For U Nonimmigrant Status Applicants

determination that an alien is or is not eligible to apply, or an adjudication of the claim itself.  It
is a conclusion reached by examining the documents accompanying the request for interim relief
based upon perceived eligibility.

The four basic eligibility requirements that an alien must satisfy in order to be classified as a
principal U nonimmigrant are set out in the VTVPA.  Therefore, in order to be eligible to apply
for interim relief, an alien must present evidence demonstrating that:

1.   He/she has suffered substantial physical or mental abuse as a result of having
     been a victim of certain criminal activity;

2.   He/she (or in the case of an alien child under the age of 16, the parent,
     guardian, or next friend of the alien) possesses information concerning that criminal
     activity;

3.   He/she (or in the case of an alien child under the age of 16, the parent, guardian, or next
     friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a
     Federal, State, or local law enforcement official; to a Federal, State, or local prosecutor;
     to a Federal or State judge; to the INS;  or to other Federal, State, or local authorities
     investigating or prosecuting the criminal activity; and

4.   The criminal activity described violated the laws of the United States or occurred in the
     United States (including in Indian country and military installations) or the territories
     and possessions of the United States.

The criminal activity referred to above is listed at INA § 101(a)(15)(U)(iii).  It is that
involving one or more of the following or any similar activity in violation of Federal, State, or
local criminal law:  rape; torture; trafficking; incest; domestic violence; sexual assault; abusive
sexual contact; prostitution; sexual exploitation female genital mutilation; being held hostage;
peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint;
false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness
tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any
of the above mentioned crimes.

When considering whether an alien has presented sufficient evidence demonstrating he/she
may be eligible to apply for U nonimmigrant status and thus eligible to request a form of interim
relief, VSC personnel must examine each of the U nonimmigrant status eligibility requirements,
taking into consideration the guidance below.

Law enforcement certification

The possible U nonimmigrant status applicant does not have to be identified to the VSC
through a law enforcement official.  However, any request for interim relief from a possible U

Memorandum for Director, Vermont Service Center                                    Page 4
Subject: Centralization of Interim Relief For U Nonimmigrant Status Applicants

nonimmigrant status applicant <u>must</u> be accompanied by some form of certification from a law enforcement official attesting to the fact that the alien has been, is likely to be, or is being helpful in the investigation or prosecution of criminal activity designated in the VTVPA. There currently is no official DHS-created law enforcement certification form. Therefore, the law enforcement official certification may be in the form of a letter, or a form created by a non-governmental organization or an applicant's attorney or representative, and should:

- State that the person was a victim of one or more of the crimes listed in the statute;
- Identify the crime(s); and
- Verify the victim is, has been, or is likely to be helpful to the prosecution or investigation of the criminal activity.

Whatever form the certification takes, it must in all cases be signed by the law enforcement official investigating or prosecuting the criminal activity. The certification submitted must have been signed within six months immediately preceding the submission of the request for interim relief. In addition, the VTVPA does not require the U nonimmigrant status applicant to assist in both the investigation and prosecution of the criminal activity; the assistance offered by the possible U nonimmigrant status applicant may be in either the investigation or the prosecution, or both.

It is important to note that the law enforcement certification does not have to come from a Federal law enforcement official. Section 214(o)(1) of the INA identifies from whom a certification may be accepted. The certification may come from a Federal, State or local law enforcement official, prosecutor, judge or other Federal, State, or local authority investigating the criminal activity. Further development of the range of criminal activity involved and the types of certifying government officials will occur in the rulemaking process. At this point, VSC personnel should keep in mind that circumstances will vary from case to case, and it is better to err on the side of caution than to remove a possible U nonimmigrant status applicant.

Time element

The fact that the criminal activity occurred a number of years prior to the current request or that the case in which the applicant is the victim is closed is not a determinative factor at this stage. The statute contemplates that a person may be eligible for U nonimmigrant status as a result of having been a victim of a crime that occurred at some point in the past. Until there are regulations interpreting this statutory requirement, VSC personnel should not deny interim relief based on the fact that the criminal activity at issue occurred prior to the enactment date of the VTVPA.

Level of harm

The VTVPA does not specifically reserve U nonimmigrant status solely for individuals who have suffered the most harm. As with any form of immigration benefit with a harm component, there are some applicants who present cases with more harm than others. Whether the level of harm meets the statutory requirement of substantial physical or mental abuse will be a question

Memorandum for Director, Vermont Service Center                          Page 5
Subject: Centralization of Interim Relief For U Nonimmigrant Status Applicants

Bureau of Citizenship and Immigration Services (CIS) officers adjudicating the U nonimmigrant status application will decide in accordance with the regulations once they are promulgated. Therefore, for interim relief purposes, "substantial physical or mental abuse" should be broadly interpreted. Similarly, the fact that the criminal activity involved in the case was classified as a misdemeanor as opposed to a felony should not be a factor in determining eligibility for interim relief.

## Eligibility for Interim Relief

Once an individual is determined to have submitted *prima facie* evidence of his/her eligibility for U nonimmigrant status, VSC personnel must then decide whether to exercise discretion and assess deferred action. Absent adverse factors, deferred action will be assessed following established CIS guidelines. Officers should note that if the alien is in removal proceedings or has a final removal order, the VSC does not have jurisdiction to assess deferred action. The applicant shall be notified in writing if his/her submission does not establish a *prima facie* case or if deferred action cannot be assessed due to lack of jurisdiction.

It is important to note that deferred action does not confer any immigration status upon an alien. Since deferred action is not an immigration status, no alien has the right to deferred action. Deferred action does not preclude the CIS from commencing removal proceedings at any time against an alien.

## Employment Authorization

Although deferred action is not an immigration status, an alien may be granted work authorization based on deferred action in his or her case pursuant to 8 C.F.R. 274a.12(c)(14). If the alien is placed in deferred action, the VSC will notify the alien that he or she may submit an I-765, Application for Employment Authorization. After the initial deferred action decision and issuance of a one-year employment authorization document, the VSC will hold these files and review the deferred action decision upon each application for extension of work authorization.

## Derivative U Nonimmigrant Status Applicants

To avoid extreme hardship, the VTVPA authorizes CIS to provide U nonimmigrant status to the spouses, children, and, in the case of a child under the age of 16, the parents of U nonimmigrants. This would require certification by a government official that an investigation or prosecution would be harmed without the assistance of the spouse, child, or in the case of an alien child, the parent of the alien.

Family members who may be eligible to receive derivative U nonimmigrant status and who are present in the United States should not be removed, and shall be eligible for interim relief. The eligible family member(s) must demonstrate extreme hardship if removed from the United States and must also submit a certification of a government official that an investigation or prosecution would be harmed without the spouse, child, or parent of the principal. This certification must comply with the guidelines outlined in this memo.

Memorandum for Director, Vermont Service Center                    Page 6
Subject: Centralization of Interim Relief For U Nonimmigrant Status Applicants

## Reporting Requirements

Deferred action is a resource utilization tool.  Therefore, the VSC should maintain statistics on deferred action cases to ensure that it is being used appropriately.  These statistics are to be maintained on a current basis so that data can be readily extracted upon request.

Statistics should be maintained in the following categories:

- number of requests in deferred action category at the beginning of the fiscal year;

- number of  requests for which deferred action is assessed;

- number of requests for which deferred action is denied;

- number of requests removed from deferred action category;

- number of deferred action requests pending at the end of the fiscal year.

## Periodic Review

The VSC adjudicators assigned to the early-filed U applications should conduct interim reviews to determine whether deferred action cases should be continued or the alien removed from the deferred action category.  Reviews must determine if there is any change in the circumstances of the case.  Results of the review and a recommendation to continue or terminate deferred action would be reported to the center director via memorandum.  The center director should endorse the memorandum with his or her decision and return it for inclusion in the alien's file.

## Termination of Deferred Action

During the course of the periodic review, or at any other time if the VSC determines that circumstances of the case no longer warrant deferred action, the VSC should recommend termination.  Termination may occur for conduct that occurs after the issuance of interim relief (i.e. conviction of a violent crime), for conduct or a condition not disclosed prior to issuance of interim relief, or based on affirmative evidence that the alien unreasonably refused to provide assistance in a criminal investigation or prosecution.  The VSC should notify the alien of the decision to terminate by letter.  Such a determination is not appealable.  Upon termination of deferred action, any relating employment authorization will be revoked in accordance with the standard revocation procedures set out in 8 CFR § 274a.14(b).

## Record Keeping And Confidentiality

It is imperative that documentation be maintained on all U nonimmigrant status applicants.  As such, information about the possible applicant, including all pertinent information surrounding the applicant's circumstances, must be maintained in the alien's A-file.  If

Memorandum for Director, Vermont Service Center                              Page 7
Subject: Centralization of Interim Relief For U Nonimmigrant Status Applicants

no A-file exists for the individual, one should be created.

Officers should keep in mind that section 384 of the Illegal Immigration Reform and
Immigrant Responsibility Act of 1996 (IIRIRA)[3] is applicable to all U nonimmigrant status
cases. Section 384 prohibits employees from making an adverse determination of admissibility
or deportability of an alien using information provided solely by:

1) a spouse or parent who has battered the alien or subjected the alien to extreme
   cruelty;
2) a member of the spouse's or parent's family residing in the same household as the
   alien who has battered the alien or subjected the alien to extreme cruelty when the
   spouse or parent consented to or acquiesced in such battery or cruelty;
3) a spouse or parent who has battered the alien's child or subjected the alien's child to
   extreme cruelty (without the active participation of the alien in the battery or
   extreme cruelty);
4) a member of the spouse's or parent's family residing in the same household as the
   alien who has battered the alien's child or subjected the alien's child to extreme
   cruelty when the spouse or parent consented to or acquiesced in such battery or
   cruelty and the alien did not actively participate in such battery or cruelty; or
5) **in the case of an alien applying for status under section 101(a)(15)(U) of the
   INA, the perpetrator of the substantial physical or mental abuse and the
   criminal activity.**[4]

Section 384 of IIRIRA also prohibits employees from permitting the use by or disclosure to
anyone (other than a sworn officer or employee of the Department of Homeland Security (DHS),
or bureau or agency thereof, for legitimate DHS, bureau, or agency purposes) of any information
that relates to an alien who has applied for U nonimmigrant status.[5] Anyone who willfully uses,
publishes, or permits such information to be disclosed in violation of IIRIRA § 384 will face
disciplinary action and be subject to a civil money penalty of up to $5,000 for each such
violation.[6]

When the VSC creates or encounters an A file of an applicant for interim relief based upon
eligibility for U nonimmigrant status, the contents of the A file should be placed behind a
colored cover sheet that sets out the disclosure parameters and penalties so that the materials are
handled with appropriate care.

If you have questions regarding this memorandum or other U nonimmigrant status related
issues, please contact Laura Dawkins, Office of Program and Regulation Development, by
electronic mail.

---

[3] Codified at 8 U.S.C. § 1367.
[4] As amended by VTVPA § 1513(d). For limited exceptions to this prohibition *see* IIRIRA § 384(b).
[5] *See* IIRIRA § 384(a)(2) as amended by VTVPA § 1513 (d).
[6] *Id.*

*Secretary*



**U.S. Department of Homeland Security**
Washington, DC 20528

## Homeland Security

June 15, 2012

MEMORANDUM FOR:    David V. Aguilar
                   Acting Commissioner, U.S. Customs and Border Protection

                   Alejandro Mayorkas
                   Director, U.S. Citizenship and Immigration Services

                   John Morton
                   Director, U.S. Immigration and Customs Enforcement

FROM:              Janet Napolitano
                   Secretary of Homeland Security

SUBJECT:           Exercising Prosecutorial Discretion with Respect to Individuals
                   Who Came to the United States as Children

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the
Department of Homeland Security (DHS) should enforce the Nation's immigration laws against
certain young people who were brought to this country as children and know only this country as
home. As a general matter, these individuals lacked the intent to violate the law and our ongoing
review of pending removal cases is already offering administrative closure to many of them.
However, additional measures are necessary to ensure that our enforcement resources are not
expended on these low priority cases but are instead appropriately focused on people who meet
our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of
prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for a least five years preceding the date of
  this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education
  development certificate, or is an honorably discharged veteran of the Coast Guard or
  Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple
  misdemeanor offenses, or otherwise poses a threat to national security or public safety;
  and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the

above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.

- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here.

Janet Napolitano



**Monday,
September 17, 2007**

Part IV

# Department of Homeland Security

**8 CFR Parts 103, 212, et al.**
**New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status; Interim Rule**

**53014** **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

## DEPARTMENT OF HOMELAND SECURITY

**8 CFR Parts 103, 212, 214, 248, 274a and 299**

[CIS No. 2170–05; DHS Docket No. USCIS–2006–0069]

**RIN 1615–AA67**

## New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status

**AGENCY:** U.S. Citizenship and Immigration Services, DHS.

**ACTION:** Interim rule with request for comments.

**SUMMARY:** This interim rule amends Department of Homeland Security regulations to establish the requirements and procedures for aliens seeking U nonimmigrant status. The U nonimmigrant classification is available to alien victims of certain criminal activity who assist government officials in investigating or prosecuting such criminal activity. The purpose of the U nonimmigrant classification is to strengthen the ability of law enforcement agencies to investigate and prosecute such crimes as domestic violence, sexual assault, and trafficking in persons, while offering protection to alien crime victims in keeping with the humanitarian interests of the United States.

This interim rule outlines the eligibility and application requirements for the U nonimmigrant classification and the benefits and limitations relating to those granted U nonimmigrant status. This interim rule also amends existing regulations to include U nonimmigrants among the nonimmigrant status holders able to seek a waiver of documentary requirements to gain admission to the United States, and to permit nonimmigrants to change status to that of a U nonimmigrant where applicable. This rule also establishes a filing fee for U nonimmigrant petitions.

Aliens who have been granted interim relief from USCIS are encouraged to file for U nonimmigrant status within 180 days of the effective date of this interim rule. USCIS will no longer issue interim relief upon the effective date of this rule; however, if the alien has properly filed a petition for U nonimmigrant status, but USCIS has not yet adjudicated that petition, interim relief will be extended until USCIS completes its adjudication of the petition.

**DATES:** *Effective date.* This rule is effective October 17, 2007.

*Comment date.* Written comments must be submitted on or before November 16, 2007.

**ADDRESSES:** You may submit comments, identified by DHS Docket No. USCIS–2006–0069 by one of the following methods:

• *Federal eRulemaking Portal: http://www.regulations.gov.* Follow the instructions for submitting comments.

• *Mail:* Chief, Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529. To ensure proper handling, please reference DHS Docket No. USCIS–2006–0069 on your correspondence. This mailing address may also be used for paper, disk, or CD–ROM submissions.

• *Hand Delivery/Courier:* Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529. Contact Telephone Number (202) 272–8377.

**FOR FURTHER INFORMATION CONTACT:** Laura Dawkins, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529, telephone: (202) 272–8350.

**SUPPLEMENTARY INFORMATION:** This supplemental information section is organized as follows:

I. Public Participation
II. Background and Legislative Authority
III. Analysis of Requirements and Procedures Under This Interim Rule
  A. Eligibility Requirements for U Nonimmigrant Status
  1. Victims of Qualifying Criminal Activity Who Have Suffered Physical or Mental Abuse
  2. Possession of Information Concerning the Qualifying Criminal Activity
  3. Helping Law Enforcement in the Investigation or Prosecution of Criminal Activity
  4. Criminal Activity That Violated U.S. Law or Occurred in the United States
  B. Application Process
  1. Filing the Petition to Request U Nonimmigrant Status
  2. Initial Evidence
  3. Derivative Family Members
  4. Designations
  C. Adjudication and Post-Adjudication
  1. Credible Evidence
  2. Prohibitions on Disclosure of Information
  3. Annual Numerical Limitation on Grants of U Nonimmigrant Status
  4. Decision on Petitions
  5. Benefits for U Nonimmigrants
  6. Travel Outside the United States
  7. Revocation of U Nonimmigrant Status
  8. Removal Proceedings
  D. Filing and Biometric Services Fees
IV. Regulatory Requirements
  A. Administrative Procedure Act
  B. Regulatory Flexibility Act
  C. Unfunded Mandates Reform Act of 1995
  D. Small Business Regulatory Enforcement Fairness Act of 1996
  E. Executive Order 12866 (Regulatory Planning and Review)
  F. Executive Order 13132 (Federalism)
  G. Executive Order 12988 (Civil Justice Reform)
  H. Family Assessment
  I. Paperwork Reduction Act

## I. Public Participation

Interested persons are invited to participate in this rulemaking by submitting written data, views, or arguments on all aspects of this interim rule. U.S. Citizenship and Immigration Services (USCIS) also invites comments that relate to the economic, environmental, or federalism effects that might result from this interim rule. Comments that will provide the most assistance to USCIS in developing these procedures will reference a specific portion of the interim rule, explain the reason for any recommended change, and include data, information, or authority that support such recommended change.

*Instructions:* All submissions received must include the agency name and DHS Docket No. USCIS–2006–0069. All comments received will be posted without change to *http://www.regulations.gov,* including any personal information provided.

*Docket:* For access to the docket to read background documents or comments received go to *http://www.regulations.gov.* Submitted comments may also be inspected at the Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529.

## II. Background and Legislative Authority

Congress created the U nonimmigrant classification in the Battered Immigrant Women Protection Act of 2000 (BIWPA). *See* Victims of Trafficking and Violence Protection Act of 2000, div. B, Violence Against Women Act of 2000, tit. V, Battered Immigrant Women Protection Act of 2000, Pub. L. 106–386, sec. 1513, 114 Stat. 1464, 1533–37 (2000), *amended by* Violence Against Women and Department of Justice Reauthorization Act of 2005 (VAWA 2005), tit. VIII, Pub. L. 109–162, 119 Stat. 2960 (2006), *amended by* Violence Against Women and Department of Justice Reauthorization Act—Technical Corrections, Pub. L. 109–271, 120 Stat. 750 (2006). Alien victims may not have legal status and, therefore may be reluctant to help in the investigation or prosecution of criminal activity for fear of removal from the United States. In

passing this legislation, Congress intended to strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic violence, sexual assault, trafficking of aliens and other crimes while offering protection to victims of such crimes. See BIWPA, sec. 1513(a)(2)(A). Congress also sought to encourage law enforcement officials to better serve immigrant crime victims. *Id.*

The U nonimmigrant classification was established under section 1513(b) of the BIWPA. Notwithstanding the title of the legislation, the U nonimmigrant classification is available to qualified victims of crimes, without regard to gender. The U nonimmigrant classification provides temporary immigration benefits to certain victims of criminal activity who: (1) Have suffered substantial mental or physical abuse as a result of having been a victim of criminal activity; (2) have information regarding the criminal activity; and (3) assist government officials in the investigation and prosecution of such criminal activity. USCIS can only grant U nonimmigrants status to 10,000 principal aliens in each fiscal year. *See* INA sec. 214(p)(2), 8 U.S.C. 1184 (p)(2). (Note: this number does not include persons eligible for U nonimmigrant derivative status—e.g. spouses, children, or parents of applicants—as discussed in Section III. C. of this rule below).

Aliens granted U nonimmigrant status can remain in the United States for a period of up to four years, with possible extensions upon certification of need by certain government officials. INA sec. 214(p)(6), 8 U.S.C. 1184(p)(6). Section 1513(f) of the BIWPA provides DHS with discretion to convert the temporary U nonimmigrant status to permanent resident status if (1) the alien has been physically present in the United States for a continuous period of at least three years since the date of admission as a U nonimmigrant; and (2) DHS determines that the ''alien's continued presence in the United States is justified on humanitarian grounds, to ensure the family unity, or is otherwise in the public interest.''

To qualify for the U nonimmigrant classification:

• The alien must have suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity;

• The alien must be in possession of information about the criminal activity of which he or she has been a victim;

• The alien must be of assistance to a Federal, State, or local law enforcement official or prosecutor, a Federal or State judge, the Department of Homeland Security (DHS), or other

Federal, State, or local authority investigating or prosecuting criminal activity; and

• The criminal activity must have violated U.S. law or occurred in the United States (including Indian country and military installations) or the territories and possessions of the United States.

INA sec. 101(a)(15)(U)(i), 8 U.S.C. 1101(a)(15)(U)(i). Qualifying criminal activity is defined by statute to be ''activity involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law: Rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes[.]'' Id.,(iii). The list of qualifying crimes represents the myriad types of behavior that can constitute domestic violence, sexual abuse, or trafficking, or are crimes of which vulnerable immigrants are often targeted as victims.

U nonimmigrant status can also extend to certain family members of the alien victim. If the alien victim is under 21 years of age, the victim's spouse, children, unmarried siblings under 18 years of age, and the victim's parents may qualify for U nonimmigrant status. INA sec. 101(a)(15)(U)(ii)(I), 8 U.S.C. 1101(a)(15)(U)(ii)(I). If the alien victim is 21 years of age or older, his or her spouse and children may also qualify for U nonimmigrant status. INA sec. 101(a)(15)(U)(ii)(II), 8 U.S.C. 1101(a)(15)(U)(ii)(II).

Aliens applying for U nonimmigrant status must provide a certification from a Federal, State or Local law enforcement official demonstrating that the applicant ''has been helpful, is being helpful, or is likely to be helpful'' in the investigation or prosecution of the qualifying criminal activity. INA sec. 214(o), 8 U.S.C. 1184(o). The BIWPA further directs DHS to provide aliens who are eligible for U nonimmigrant status with referrals to nongovernmental organizations (NGOs) to advise the aliens regarding their options in the United States. Id. Further, USCIS is required to provide U nonimmigrants with employment authorization. Id.

Section 1513(e) of the BIWPA amended section 212(d) of the INA, 8

U.S.C. 1182(d), to provide for a waiver of inadmissibility if the Secretary of Homeland Security determines that such a waiver is in the public or national interest.[1] Finally, the BIWPA added a new paragraph (1)(E) to 8 U.S.C. 1367(a) to prohibit adverse determinations of admissibility or deportability and disclosure of information pertaining to an alien seeking U nonimmigrant status, except in certain circumstances. BIWPA sec. 1513(d) (amending section 384(a) of the Illegal Immigration and Immigrant Reform Act (IIRIRA), div. C of the Omnibus Appropriations Act of 1996, Pub. L. 104–208, 110 Stat. 3009 (1996)).

Following passage of the BIWPA in October 2000, USCIS implemented procedures to ensure that those aliens who appeared to be eligible for U nonimmigrant status under the BIWPA would not be removed from the United States until they had an opportunity to apply for such status. See *e.g.*, Memorandum from Michael D. Cronin, Acting Executive Associate Commissioner, Office of Field Operations, Immigration and Naturalization Service (Aug. 30, 2001); Memorandum from William R. Yates, Associate Director of Operations, USCIS, Centralization of Interim Relief for U Nonimmigrant Status Applicants (Oct. 8, 2003) (*http://www.uscis.gov/ graphics/services/tempbenefits/ antitraf.htm*); Memorandum from William R. Yates, Associate Director of Operations, USCIS, Assessment of Deferred Action in Requests for Interim Relief from U Nonimmigrant Status Eligible Aliens in Removal Proceedings (May 6, 2004) (*http://www.uscis.gov/ graphics/services/tempbenefits/ antitraf.htm*).[2] Alien victims who may be eligible for U nonimmigrant status were given the opportunity to ask USCIS for interim relief pending the promulgation of implementing regulations. Family members seeking to derive immigration benefits from such aliens were accorded the same treatment. Interim relief provides alien victims with parole, stays of removal, or assessed deferred action, as well as an opportunity to apply for employment authorization.[3]

---

[1] Unless waived, a ground of inadmissibility can preclude an alien from receiving nonimmigrant status. 8 CFR 214.1(a)(3). Section 212(a) of the INA, 8 U.S.C. 1182(a), contains a list of the grounds of inadmissibility.

[2] Copies of these documents are accessible on the public docket for this rulemaking at *www.regulations.gov*, Docket Number USCIS–2006– 0069.

[3] Parole is permission given by DHS that allows an alien to physically enter the United States temporarily for urgent humanitarian reasons or
Continued

**53016** **Federal Register**/Vol. 72, No. 179/Monday, September 17, 2007/Rules and Regulations

## III. Analysis of Requirements and Procedures Under This Interim Rule

To implement the BIWPA and its creation of the U nonimmigrant classification, this interim rule outlines the eligibility and application requirements for the U nonimmigrant classification and the benefits and limitations relating to those granted U nonimmigrant status. Specifically, this interim rule provides definitions of relevant terms contained in the BIWPA and establishes procedures and standards for adjudicating petitions for U nonimmigrant status. It also describes the filing procedures and adjudication standards for applications for the waiver of inadmissibility created by the BIWPA that is available to those seeking U nonimmigrant status. New 8 CFR 212.17. The rule amends 8 CFR 212.1 to include U nonimmigrant status recipients among the nonimmigrant status holders able to seek a waiver of documentary requirements to gain admission to the United States. This rule also amends 8 CFR 248.2 to permit nonimmigrants to change status to that of a U nonimmigrant; 8 CFR 274a.12(a) to add U nonimmigrant status recipients to the list of aliens authorized to accept employment; 8 CFR 274a.13(a) to require an application to be filed for certain U nonimmigrants seeking evidence of employment authorization; 8 CFR 299.1 to prescribe the petition form for U nonimmigrant status; and 8 CFR 103.7 to prescribe the filing fee for U nonimmigrant petitions.

As discussed below, USCIS encourages petitioners and accompanying or following to join family members who have been granted interim relief to file Form I–918 within 180 days of the effective date of this rule. After the effective date of this rule, the interim relief process will no longer be in effect, and USCIS will not consider initial requests for interim relief. After the 180-day time period, USCIS will reevaluate previous grants of deferred action, parole, and stays of removal and terminate such interim relief for those aliens who fail to file

Form I–918 within the 180-day time period. However, if the alien has properly filed a Form I–918, but USCIS has not yet adjudicated that petition, interim relief will be extended until USCIS completes its adjudication of Form I–918.

### A. Eligibility Requirements for U Nonimmigrant Status

There are four statutory eligibility requirements for U nonimmigrant status, the alien (1) Has suffered physical or mental abuse as a result of having been a victim of certain criminal activity; (2) possesses information concerning such criminal activity; (3) has been helpful, is being helpful or is likely to be helpful in the investigation or prosecution of the crime; and (4) the criminal activity violated the laws of the United States or occurred in the United States. This section of the **SUPPLEMENTARY INFORMATION** describes each statutory eligibility requirement for U nonimmigrant status and this rule's implementation of each requirement.

### 1. Victims of Qualifying Criminal Activity Who Have Suffered Physical or Mental Abuse

The first eligibility requirement for U nonimmigrant status is that the alien must have suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity. INA sec. 101(a)(15)(U)(i)(I), 8 U.S.C. 1101(a)(15)(U)(i)(I). This interim rule defines the following terms that relate to this eligibility requirement: Victims of qualifying criminal activity, physical or mental abuse, and qualifying crime or qualifying criminal activity. New 8 CFR 214.14(a). These definitions are discussed below.

### a. Victims of Qualifying Criminal Activity

The meaning of "victim of qualifying criminal activity" is provided by new 8 CFR 214.14(a)(14). Within this definition, the rule provides for indirect victims of the criminal activities in the case of deceased victims of murder and manslaughter and victims of violent criminal activity who are incapacitated or incompetent. See new 8 CFR 214.14(a)(14)(i). The definition also clarifies how victims of witness tampering, obstruction of justice, and perjury can constitute victims of qualifying criminal activity. See new 8 CFR 214.14(a)(14)(ii). This interim rule also excludes alien victims who are themselves culpable of criminal activity from the definition of victim, subject to certain exceptions. See 8 CFR 214.14(a)(14)(iii).

### (i) Direct Victims

This rule generally defines "victim of qualifying criminal activity" as an alien who is directly and proximately harmed by qualifying criminal activity. 8 CFR 214.14(a)(14). To formulate the general definition, USCIS drew from established definitions of "victim." Federal statutory provisions consistently define "victim" as one who has suffered direct harm or who is directly and proximately harmed as a result of the commission of a crime. See e.g., 42 U.S.C. 10603(c) (relating to terrorism); 18 U.S.C. 3663(a)(2) (relating to restitution); 18 U.S.C. 3771(e) (relating to crime victim rights); Fed. R. Crim. P. 32(a)(2) (defining victim for sentencing purposes); see also United States v. Terry, 142 F.3d 702, 710–11 (4th Cir. 1998) (reviewing the possible definitions of "victim"). The Department of Justice's (DOJ's) Attorney General Guidelines for Victim and Witness Assistance (AG Guidelines) adopts a similar definition of the term "victim." See Attorney General Guidelines for Victim and Witness Assistance at 9 (May 2005) (http://www.ojp.usdoj.gov/ovc/publications/welcome.html). The AG Guidelines serve to guide federal investigative, prosecutorial, and correctional agencies in the treatment of crime victims and, therefore, were viewed by USCIS as an informative resource in the development of this rule's definition of victim.[4]

The AG Guidelines also state that individuals whose injuries arise only indirectly from an offense are not generally entitled to rights or services as victims. AG Guidelines at 10. The AG Guidelines, however, provide DOJ personnel discretion to treat as victims bystanders who suffer unusually direct injuries as victims. USCIS does not anticipate approving a significant number of applications from bystanders, but will exercise its discretion on a case-by-case basis to treat bystanders as victims where that bystander suffers an unusually direct injury as a result of a qualifying crime. An example of an unusually direct injury suffered by a bystander would be a pregnant

---

significant public benefit; the entry is not deemed to be an admission to the United States. INA 212(d)(5)(A), 8 U.S.C. 1182(d)(5)(A); 8 CFR 212.5. A stay of deportation or removal is an administrative decision to stop temporarily the deportation or removal of an alien who has been ordered deported or removed from the United States. See 8 CFR 241.6; 8 CFR 1241.6. Deferred action is an exercise of prosecutorial discretion that defers the removal of the alien based on the alien's case being made a lower priority for removal. Immigration and Customs Enforcement, Department of Homeland Security, Detention and Deportation Officer's Field Manual, ch. 20.8 (2005). Deferred action does not confer any immigration status upon an alien.

[4] The AG Guidelines, and some of the aforementioned statutes, also include pecuniary crimes within the scope of qualifying activities. The BIWPA, however, limits the qualification requirements to aliens who suffer substantial physical or mental abuse and did not expressly reference pecuniary crimes. Therefore, pecuniary crimes are not included as qualifying criminal activities for U nonimmigrant status. In addition, the AG Guidelines include business entities in the definition of "victim." USCIS, however, only grants non-immigrant status to individuals, not to business entities and therefore limits the definition of "victim" under this rule to persons.

bystander who witnesses a violent crime and becomes so frightened or distraught at what occurs that she suffers a miscarriage.

(ii) Indirect Victims

USCIS believes that the U nonimmigrant classification contemplates encompassing certain indirect victims in addition to direct victims. This is because the list of qualifying criminal activity at section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), includes the crimes of murder and manslaughter, the direct targets of which are deceased. The list also includes witness tampering, obstruction of justice, and perjury, which are not crimes against a person. Therefore, this rule extends the definition of victim beyond the direct victim of qualifying criminal activity in certain circumstances. *See* new 8 CFR 214.14(a)(14)(i) & (ii).

The AG Guidelines also cover those persons who are not direct victims of a crime where the direct victim is deceased as a result of the qualifying crime (e.g. murder or manslaughter), incompetent or incapacitated, or under the age of 18. AG Guidelines, at 9. In these situations, the direct victim is not available or sufficiently able to help in an investigation or prosecution of the criminal activity. *Id.* The AG Guidelines list such indirect victims to be a spouse, legal guardian, parent, child, sibling, another family member, or another person designated by the court. *Id.* Under the AG Guidelines, however, only the first available person on the list is eligible to be considered a victim. *Id.* For instance, the parent of a murder victim is only considered a victim if his or her child is unmarried. The spouse, as the first person on the list, would be deemed the victim.

Drawing from the AG Guidelines in conjunction with the U classification statutory provision describing qualifying family members (section 101(a)(15)(U)(ii) of the INA, 8 U.S.C. 1101(a)(15)(U)(ii)), this rule extends the victim definition to the following list of indirect victims in the case of murder, manslaughter, or incompetent or incapacitated victims: Spouses; children under 21 years of age;[5] and, if the direct victim is or was under 21 years of age, parents and unmarried siblings under 18 years of age. *See* new 8 CFR 214.14(a)(14)(i). This rule does not extend the victim definition beyond these family members since the U nonimmigrant classification does not apply to other individuals. Unlike the

AG Guidelines, the rule does not restrict the victim definition only to the first available person on the list of indirect victims. USCIS has determined that such a restrictive definition of victim would not adequately serve the purpose behind the U nonimmigrant classification. Family members of murder, manslaughter, incompetent, or incapacitated victims frequently have valuable information regarding the criminal activity that would not otherwise be available to law enforcement officials because the direct victim is deceased, incapacitated, or incompetent. By extending the victim definition to include certain family members of deceased, incapacitated, or incompetent victims, the rule encourages these family members to fully participate in the investigation or prosecution. Extending immigration benefits only to the first available person on the AG Guidelines list could separate families and lead to anomalous results. For example, in the case of a mother who is murdered and leaves behind her husband and young children, extending benefits only to the husband, as the first person on the list, could leave minor children without U nonimmigrant status protection.

USCIS notes, however, that while family members on the list of indirect victims under this rule may apply for U nonimmigrant status in their own right as principal petitioners, there is no requirement that they do so. For example, in the scenario described above of a mother who is murdered and leaves behind a husband and minor children, the husband and minor children could each apply as principal petitioners. In the alternative, the husband could file as a principal petitioner and the children could be included as family members on his petition, as will be discussed later in this Supplementary Information. Likewise, the children potentially could be principal petitioners and their father (the husband of the deceased), could be included as a family member on one of the children's petitions. Family members who are recognized as indirect victims and, therefore, eligible to apply for U nonimmigrant status as principal petitioners must meet all of the eligibility requirements that the direct victim would have had to meet in order to be accorded U nonimmigrant status.

In the case of witness tampering, obstruction of justice, or perjury, the interpretive challenge for USCIS was to determine whom the BIWPA was meant to protect, given that these criminal activities are not targeted against a person. USCIS looked to the purpose of the BIWPA—to encourage cooperation

with criminal investigations and protect vulnerable victims (BIWPA sec. 1502)— and to the federal definitions of the term "victim." As discussed above, in order to be classified as a victim under Federal law, an individual must suffer direct and proximate harm. Therefore, USCIS considered which categories of people would suffer direct and proximate harm from witness tampering, obstruction of justice, and perjury. USCIS identified one such category as individuals who are harmed when a perpetrator commits one of the three crimes in order to avoid or frustrate the efforts of law enforcement authorities. USCIS identified another such category as individuals who are harmed when the perpetrator uses the legal system to exploit or impose control over them.

Accordingly, this rule provides that a victim of witness tampering, obstruction of justice, or perjury is an alien who has been directly and proximately harmed by the perpetrator of one of these three crimes, where there are reasonable grounds to conclude that the perpetrator principally committed the offense as a means: (1) To avoid or frustrate efforts to investigate, arrest, prosecute, or otherwise bring him or her to justice for other criminal activity; or (2) to further his or her abuse or exploitation of or undue control over the alien through manipulation of the legal system. New 8 CFR 214.14(a)(14)(ii). In developing this definition, USCIS considered whether or not the criminal activity of witness tampering, obstruction of justice, or perjury must have been committed in relation to one of the other qualifying crimes listed in the statute. However, the text of section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), listing qualifying criminal activity explicitly states that the criminal activity must involve "one or more" of the 27 categories of crimes listed. USCIS reads the phrase "one or more" to mean that each of the crimes listed thereafter may qualify independently. Therefore, this rule does not require such a nexus.

(iii) Culpability of the Victim

This rule excludes a person who is culpable for the qualifying criminal activity being investigated or prosecuted from being deemed a victim. *See* new 8 CFR 214.14(a)(14)(iii). Although the statutory provision at section 101(a)(15)(U)(i) of the INA, 8 U.S.C. 1101(a)(15)(U)(i), describing who qualifies as a U nonimmigrant neither explicitly covers nor explicitly excludes culpable persons, USCIS believes that this exclusion is warranted.

---

[5] Qualifying children also must be unmarried. See INA sec. 101(b), 8 U.S.C. 1101(b).

**53018** **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

This exclusion does not apply to an alien who committed a crime other than the one under investigation or prosecution, even if the crimes are related. For instance, an alien who agrees to be smuggled into the United States, but is then held in involuntary servitude may still be deemed to be a victim of involuntary servitude even though he or she also may be culpable in the smuggling crime and for illegally entering the United States. USCIS has concluded that, while it is reasonable to exclude culpable individuals from being defined as a victim, it is not reasonable to exclude individuals simply based on any criminal activity in which they may have at one time engaged. USCIS notes that this approach of distinguishing between those who are culpable for the qualifying crime and those who are culpable for other crimes is supported by the AG Guidelines. *See* AG Guidelines, at 10.

b. Physical or Mental Abuse

This rule defines physical or mental abuse to mean injury or harm to the victim's physical person, or harm to or impairment of the emotional or psychological soundness of the victim. New 8 CFR 214.14(a)(8). In considering how to define the term physical or mental abuse, USCIS examined existing regulations that use similar terms. In particular, USCIS looked to regulations promulgated following the enactment of VAWA 1994 that allow battered spouses and children of U.S. citizens and lawful permanent residents to seek immigration status. *See* 8 CFR 204.2(c), 216.5(e)(3). These regulations use the terms "battery" and "extreme cruelty" to refer to any act or threatened act of violence that results in physical or mental injury. *See* 8 CFR 204.2(c)(2)(vi); 8 CFR 216.5(e)(3)(i). Battery and extreme cruelty are terms that the regulations use interchangeably with the term "abuse." *See* 8 CFR 204.2(c)(1)(vi); (2)(iv); 216.5(e)(3)(i); and 216.5(e)(3)(iii).

The term, "physical or mental abuse," encompasses a wide range of physical or mental harm. Section 101(a)(15)(U)(i)(I) of the INA, 8 U.S.C. 1101(a)(15)(U)(i)(I), which establishes this as a requirement, qualifies "physical or mental abuse" with the term, "substantial." The statutory provision does not make clear, however, whether the standard of "substantial" physical or mental abuse is intended to address the severity of the injury suffered by the victim, or the severity of the abuse inflicted by the perpetrator. USCIS has concluded that it is reasonable to consider both. Rather than define what constitutes abuse that is "substantial," however, USCIS believes that a better approach would be

to make case-by-case determinations, using factors as guidelines.

This rule lists a number of factors USCIS will consider when determining whether the physical or mental abuse at issue qualifies as substantial. New 8 CFR 214.14(b)(1). These factors are: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim. Through these factors, USCIS will be able to evaluate the kind and degree of harm suffered by the individual applicant based upon that applicant's individual experience. No single factor is a prerequisite to establish that the abuse suffered was substantial. Also, the existence of one or more of the factors does not automatically create a presumption that the abuse suffered was substantial.

USCIS recognizes the possibility that some victims will have a pre-existing physical or mental injury or condition at the time of the abuse. In evaluating whether the harm is substantial, this rule requires USCIS to consider the extent to which any pre-existing conditions were aggravated. *Id.* Some abuse may involve a series of acts or occur repeatedly over a period of time. USCIS will consider the abuse in its totality to determine whether the abuse is substantial. A series of acts taken together may be considered to constitute substantial physical or mental abuse even where no single act alone rises to that level. *Id.*

c. Qualifying Criminal Activity

The statutory list of qualifying criminal activity in section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), is not a list of specific statutory violations, but instead a list of general categories of criminal activity. It is also a non-exclusive list. Any similar activity to the activities listed may be a qualifying criminal activity. This interim rule adopts the statutory list of criminal activity and further defines what constitutes "any similar activity." *See* new 8 CFR 214.14(a)(9). The rule provides that for a criminal activity to be deemed similar to one specified on the statutory list, the similarities must be substantial. USCIS bases this definition on the fact that the statutory list of criminal activity is not composed of specific statutory violations. Instead, the criminal activity listed is stated in broad terms. The rule's definition of "any similar activity" takes into account the wide

variety of state criminal statutes in which criminal activity may be named differently than criminal activity found on the statutory list, while the nature and elements of both criminal activities are comparable. In addition, qualifying criminal activity may occur during the commission of non-qualifying criminal activity. For varying reasons, the perpetrator may not be charged or prosecuted for the qualifying criminal activity, but instead, for the non-qualifying criminal activity. For example, in the course of investigating Federal embezzlement and fraud charges, the investigators discover that the perpetrator is also abusing his wife and children, but because there are no applicable Federal domestic violence laws, he is charged only with non-qualifying Federal embezzlement and fraud crimes.

2. Possession of Information Concerning the Qualifying Criminal Activity

In passing the BIWPA, Congress wanted to encourage aliens who are victims of criminal activity to report the criminal activity to law enforcement and fully participate in the investigation and prosecution of the perpetrators of such criminal activity. BIWPA sec. 1513(a)(1)(B). The second eligibility requirement for U nonimmigrant status is that the alien must possess information about the qualifying criminal activity of which he or she is a victim. INA sec. 101(a)(15)(U)(i)(II), 8 U.S.C. 1101(a)(15)(U)(i)(II). This rule adopts this statutory requirement at new 8 CFR 214.14(b)(2). Possessing information about a crime of which the alien is not a direct or indirect victim would not satisfy this requirement and, therefore, is not included in the rule.

USCIS will consider an alien victim to possess information concerning qualifying criminal activity of which he or she was a victim if he or she has knowledge of the details (i.e., specific facts) concerning the criminal activity that would assist in the investigation or prosecution of the criminal activity. *See* new 8 CFR 214.14(b)(2). The findings that Congress expressed in sections 1513(a)(1) and (2) of the BIWPA make clear that the intent behind the creation of U nonimmigrant status was to facilitate the investigation and prosecution of criminal activity of which immigrants are targets while providing protection for victims of such criminal activity. USCIS believes that, to give effect to congressional intent, the information that the alien must possess must be related to the crime of which he or she is a victim. If not, the stated purpose of the statute is thwarted. Possession of information concerning

**Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations **53019**

the criminal activity necessarily means that the alien must have knowledge of it.

When the alien victim is under 16 years of age, the statute does not require him or her to possess information regarding the qualifying criminal activity. Rather, the parent, guardian, or next friend of the alien victim may possess that information if the alien victim does not. INA sec. 101(a)(15)(U)(i)(II), 8 U.S.C. 1101(a)(15)(U)(i)(II). This rule reiterates this exception at new 8 CFR 214.14(b)(2). This provision specifies that the age of the alien victim on the day on which an act constituting an element of the qualifying criminal activity first occurred is the applicable age to consider for purposes of establishing whether the exception is triggered. The purpose of the exception is to allow for alternative mechanisms for possessing information when a child is at an age where he or she may be too young to adequately understand and relay traumatic and sensitive information. As such, USCIS believes that the date on which the qualifying criminal activity began is the appropriate date for triggering this exception.

The rule also permits a parent, guardian, or next friend to provide information when the alien victim is incapacitated or incompetent. New 8 CFR 214.14(b)(2). Permitting certain family members or guardians to act in lieu of incapacitated or incompetent victims is supported by the AG Guidelines, at 9.

This rule also defines the term "next friend." New 8 CFR 214.14(a)(7). An individual will qualify as a next friend under this rule if he or she appears in a lawsuit to act for the benefit of an alien who is under the age of 16 or who is incapacitated or incompetent. *See Whitmore* v. *Arkansas*, 495 U.S. 149, 163–4 (1990) (describing next friend as someone dedicated to the best interests of the individual who cannot appear on his or her own behalf because of inaccessibility, mental incompetence, or other disability). The next friend is not a party to the legal proceeding and is not appointed as a guardian.

### 3. Helping Law Enforcement in the Investigation or Prosecution of Criminal Activity

The third eligibility requirement for U nonimmigrant status is that the alien victim of qualifying criminal activity (or, in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been, is being, or is likely to be helpful to a government official or authority in the

investigation or prosecution of the qualifying criminal activity. INA sec. 101(a)(15)(U)(i)(III), 8 U.S.C. 1101(a)(15)(U)(i)(III). This requirement is set forth in new 8 CFR 214.14(b)(3), which further provides that the alien victim cannot refuse or fail to provide reasonably requested information and assistance in order to remain eligible for U nonimmigrant status. The rule also provides for alien victims who are incompetent or incapacitated. Additionally, this rule provides that the official or authority receiving the assistance be a "certifying agency," as defined in new 8 CFR 214.14(a)(2).

#### a. Helpfulness

USCIS interprets "helpful" to mean assisting law enforcement authorities in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim. USCIS is excluding from eligibility those alien victims who, after initiating cooperation, refuse to provide continuing assistance when reasonably requested. New 8 CFR 214.14(b)(3). USCIS believes that the statute imposes an ongoing responsibility on the alien victim to provide assistance, assuming there is an ongoing need for the applicant's assistance. USCIS bases this interpretation on the plain text of the statutory provision that sets forth this requirement. *See* INA sec. 101(a)(15)(U)(i)(III), 8 U.S.C. 1101(a)(15)(U)(i)(III). The requirement was written with several verb tenses, recognizing that an alien may apply for U nonimmigrant status at different stages of the investigation or prosecution. By allowing an individual to petition for U nonimmigrant status upon a showing that he or she may be helpful at some point in the future, USCIS believes that Congress intended for individuals to be eligible for U nonimmigrant status at the very early stages of an investigation. This suggests an ongoing responsibility to cooperate with the certifying official while in U nonimmigrant status. If the alien victim only reports the crime and is unwilling to provide information concerning the criminal activity to allow an investigation to move forward, or refuses to continue to provide assistance to an investigation or prosecution, the purpose of the BIWPA is not furthered. *See* BIWPA sec. 1513(a)(2).

In addition, in order to qualify for permanent resident status on the basis of the U nonimmigrant classification, the alien must not have unreasonably refused to provide assistance in a criminal investigation or prosecution. INA sec. 245(m)(1), 8 U.S.C. 1255(m)(1). This requirement further suggests an

ongoing responsibility to cooperate with the certifying official while in U nonimmigrant status.

An exception to the helpfulness requirement applies to alien victims who are under 16 years of age. Such alien victims can satisfy the helpfulness requirement if their parent, guardian, or next friend provides the required assistance. INA sec. 101(a)(15)(U)(i)(III), 8 U.S.C. 1101(a)(15)(U)(i)(III). This exception is the same exception applicable to the previous requirement that the alien victim possess information regarding the criminal activity. *See* new 8 CFR 214.14(b)(2). This rule reiterates the exception with respect to the helpfulness requirement at new 8 CFR 214.14(b)(3). The provision specifies that the age of the victim on the day on which an act constituting an element of the qualifying criminal activity first occurred is the applicable age to consider for purposes of establishing whether the exception is triggered. New 8 CFR 214.14(b)(3). It also extends the exception to individuals who are incapacitated or incompetent and allows a parent, guardian, or next friend to be helpful in those instances. *Id.*

#### b. Certifying Agency

This rule requires that the assistance in the investigation or prosecution of qualifying criminal activity be provided to a "certifying agency." As discussed later in this Supplementary Information, an alien victim must include a certification from such agency in support of his or her request for U nonimmigrant status. INA sec. 214(p)(1), 8 U.S.C. 1184(p)(1).

A "certifying agency" is one of the government officials and entities identified in the statute that is investigating or prosecuting qualifying criminal activity. INA sec. 101(a)(15)(U)(i)(III), 8 U.S.C. 1101(a)(15)(U)(i)(III). The rule defines a "certifying agency" as a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority, that has responsibility for the investigation or prosecution of the qualifying criminal activities designated in the BIWPA. New 8 CFR 214.14(a)(2). This includes traditional law enforcement branches within the criminal justice system. However, USCIS also recognizes that other agencies, such as child protective services, the Equal Employment Opportunity Commission, and the Department of Labor, have criminal investigative jurisdiction in their respective areas of expertise. The rule specifies these agencies. *See id.*

**53020** **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

The rule provides that the term "investigation or prosecution," used in the statute and throughout the rule, includes the detection or investigation of a qualifying crime or criminal activity, as well as the prosecution, conviction, or sentencing of the perpetrator of such crime or criminal activity. New 8 CFR 214.14(a)(5). Referring to the AG Guidelines, USCIS is defining the term to include the detection of qualifying criminal activity because the detection of criminal activity is within the scope of a law enforcement officer's investigative duties. AG Guidelines, at 22–23. Also referring to the AG Guidelines, USCIS is defining the term to include the conviction and sentencing of the perpetrator because these extend from the prosecution. *Id.* at 26–27. Moreover, such inclusion is necessary to give effect to section 214(p)(1) of the INA, 8 U.S.C. 1184(p)(1), which permits judges to sign certifications on behalf of U nonimmigrant status applications. INA sec. 214(p)(1), 8 U.S.C. 1184(p)(1). Judges neither investigate crimes nor prosecute perpetrators. Therefore, USCIS believes that the term "investigation or prosecution" should be interpreted broadly as in the AG Guidelines.

4. Criminal Activity That Violated U.S. Law or Occurred in the United States

The fourth requirement for U nonimmigrant classification is that the qualifying criminal activity violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States. INA 101(a)(15)(U)(i)(IV), 8 U.S.C. 1101(a)(15)(U)(i)(IV). This requirement is adopted in new 8 CFR 214.14(b)(4).

The term United States is defined in section 101(a)(38) of the INA, 8 U.S.C. 1101(a)(38), to mean the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the U.S. Virgin Islands. The BIWPA does not define the term "Indian country," but for purposes of this rule, USCIS is adopting the definition contained in 18 U.S.C. 1151. Under this rule, "Indian country" means all land within the limits of any Indian reservation under the jurisdiction of the United States, all dependent Indian communities within the borders of the United States, and all Indian allotments. New 8 CFR 214.14(a)(4). Although 18 U.S.C. 1151 is a criminal jurisdiction statute, tribal and federal courts have applied this statutory definition to both criminal and civil matters. *See California* v. *Cabazon*

*Band of Mission Indians,* 480 U.S. 202, 208 n.5 (1996).

Similarly, the term "military installation" is not defined in the BIWPA. This rule defines that term as meaning any facility, base, camp, post, encampment, station, yard, center, port, aircraft, vehicle, or vessel under the jurisdiction of the Department of Defense, or any location under military control, including any leased facility. New 8 CFR 214.14(a)(6). To develop this definition, USCIS looked to other statutory definitions of the term. *See, e.g.*, 10 U.S.C. 2687(e) (defining the term in the context of base closures and realignments); 10 U.S.C. 2801(c)(2) (relating to military construction). A review of the federal case law reveals that this is a nebulous concept with no absolute definition. *United States* v. *Buske*, 2 M.J. 465, 467 (A.C.M.R. 1975). In order to realize the purpose of the U nonimmigrant classification, to facilitate criminal investigations and prosecutions, USCIS interpreted the term broadly to encompass a wide range of military locations.

New 8 CFR 212.14(a)(11) defines the term "territories and possessions of the United States" to mean American Samoa, Swains Island, Bajo Nuevo (the Petrel Islands), Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Atoll, Navassa Island, Northern Mariana Islands, Palmyra Atoll, Serranilla Bank, and Wake Atoll. This definition is based on current information that the Department of Interior provided to USCIS. Although Guam, Puerto Rico, and the U.S. Virgin Islands are also considered territories or possessions of the United States, USCIS has not included them in this regulatory definition because they are already incorporated into the INA definition of United States. *See* INA sec. 101(a)(38), 8 U.S.C. 1101(a)(38).

Section 101(a)(15)(U)(i)(IV) of the INA, 8 U.S.C. 1101(a)(15)(U)(i)(IV), requires that the criminal activity either violated the laws of the United States or occurred in the United States. USCIS does not believe that this distinction is based on which laws are violated—U.S. laws or foreign laws—because elsewhere in the statute, qualifying criminal activity is defined as criminal activity that is "in violation of Federal, State, or local criminal law." *See* INA sec. 101(a)(15)(U)(iii), 8 U.S.C. 1101(a)(15)(U)(iii). Instead, USCIS believes that the distinction refers to where the violation occurred, whether inside or outside the United States. Accordingly, USCIS interprets the phrase, "occurred in the United States," to mean qualifying criminal activity that occurred in the United States that is in

violation of U.S. law. USCIS interprets the phrase, "violated the laws of the United States," as referring to criminal activity that occurred outside the United States that is in violation of U.S. law.

This rule provides that criminal activity that has occurred outside the United States, but that fits within a type of criminal activity listed in section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), will constitute a qualifying criminal activity if it violates a federal statute that specifically provides for extraterritorial jurisdiction. *See* new 8 CFR 214.14(b)(4). Such criminal activity will have "violated the laws of the United States." Congress has enacted a variety of statutes governing criminal activity occurring outside the territorial limits of the United States. These statutes establish extraterritorial and federal, criminal jurisdiction. Statutes establishing extraterritorial jurisdiction generally require some nexus between the criminal activity and U.S. interests. For example, pursuant to 18 U.S.C. 2423(c), the United States has jurisdiction to investigate and prosecute cases involving U.S. citizens or nationals who engage in illicit sexual conduct outside the United States, such as sexually abusing a minor. *See also* 18 U.S.C. 32 (destruction of an aircraft); 15 U.S.C. 1 (extraterritorial application of the Sherman Act governing antitrust laws).

This rule does not require that the prosecution actually occur, since the statute only requires an alien victim to be helpful in the investigation or the prosecution of the criminal activity. *See* INA sections 101(a)(15)(U)(i)(III) & 214(p)(1), 8 U.S.C. 1101(a)15(u)(i)(III) and 1184(p)(1). Prosecution may be impossible due to a number of factors, such as an inability to extradite the defendant.

*B. Application Process*

By statute, the petition for U nonimmigrant status must be filed by the alien victim and contain a certification of helpfulness from a certifying agency. *See* INA sec. 214(p)(1), 8 U.S.C. 1184(p)(1). Based upon these statutory requirements, this rule designates the form that petitioners must use to request U nonimmigrant status and describes the evidence that must accompany the form, including the certification of helpfulness. The rule also sets forth filing requirements and procedures. This section of the **SUPPLEMENTARY INFORMATION** discusses these requirements, as well as eligibility and filing requirements for those qualifying family members of the alien victim who also are seeking U nonimmigrant status.

1. Filing the Petition To Request U Nonimmigrant Status

This interim rule designates Form I–918, "Petition for U Nonimmigrant Status," as the form an alien victim must use to request U nonimmigrant status. *See* New 8 CFR 214.14(c)(1), This provision also requires petitioners to follow the instructions to Form I–918 for proper completion and accompany Form I–918 with initial evidence and the correct fee(s).[6] Form I–918 requests information regarding the applicant's eligibility for U nonimmigrant status and admissibility to the United States. Jurisdiction over all petitions for U nonimmigrant status rests with USCIS. The instructions to Form I–918 specify where petitioners must file (by mail) their application package. At present, USCIS has centralized the adjudication process for Forms I–918 at its Vermont Service Center. This centralization will allow adjudicators to develop expertise in handling U nonimmigrant petitions and provide for uniformity in the adjudication of these petitions.

The rule addresses several special considerations that may affect certain petitioners seeking to file Form I–918: Filing petitions from outside the United States; the effect of a petition on interim relief; petitioners subject to grounds of inadmissibility; petitioners in removal proceedings or subject to a final order of exclusion, deportation, or removal; changing nonimmigrant classifications; and the effect of a petition on other immigration benefits. These considerations are discussed below.

a. Alien Victims of Qualifying Criminal Activity Filing Form I–918 From Outside the United States

This interim rule does not require petitioners to file Form I–918 from within the United States. USCIS has determined that the statutory framework for U nonimmigrant status permits alien victims of qualifying criminal activity to apply for U nonimmigrant status classification from either inside or outside the United States. For example, the statute does not require petitioners to be physically present in the United States to qualify for U nonimmigrant status. By contrast, other nonimmigrant classifications, such as the T nonimmigrant classification (INA sec. 101(a)(15)(T), 8 U.S.C. 1101(a)(15)(T)), explicitly require an alien's physical presence in the United States as a condition of eligibility. Moreover, under section 101(a)(15)(U)(i)(IV) of the INA, 8 U.S.C. 1101(a)(15)(U)(i)(IV), qualifying

criminal activity may occur outside the territorial jurisdiction of the United States under certain circumstances. USCIS recognizes that for qualifying criminal activity that occurred outside the United States, the investigation may take place either outside or inside the United States. The alien victim may be needed in the United States to assist the certifying agency in its investigation or subsequent prosecution of the criminal activity. Allowing alien victims to submit petitions from outside the United States provides the certifying agency with the necessary flexibility to further the investigation or prosecution.

To apply from outside the United States, petitioners must submit a complete application package for U nonimmigrant status to the USCIS location specified in the form instructions.

b. Petitioners With Interim Relief From Removal

This rule does not impose a deadline for submission of U nonimmigrant status petitions. However, USCIS encourages petitioners and accompanying or following to join family members who were granted interim relief to file Form I–918 within 180 days of the effective date of this rule. After the effective date of this rule, the interim relief process will no longer be in effect, and USCIS will not consider initial requests for interim relief. After the 180-day time period following the effective date of the rule, USCIS will reevaluate previous grants of deferred action, parole, and stays of removal and terminate such interim relief for those aliens who fail to file Form I–918 within the 180-day time period. However, if the alien has properly filed a Form I–918, but USCIS has not yet adjudicated that petition, interim relief will be extended until USCIS completes its adjudication of Form I–918. USCIS believes that 180 days provides an interim relief recipient a sufficient period of time within which to file and perfect a U nonimmigrant petition, taking into account the time it may take for individuals to learn of this rule and put together a complete package requesting U nonimmigrant status.

c. Petitioners Who Are Inadmissible

To be eligible for U nonimmigrant status, the alien requesting status must be admissible to the United States. 8 CFR 214.14(a)(3)(i); *see also* INA sec. 214(a)(1), 8 U.S.C. 1184(a)(1). Therefore, those who are inadmissible to the United States, or who become inadmissible for conduct that occurs while their petition for U nonimmigrant

status is pending, will not be eligible for U nonimmigrant status unless the ground of inadmissibility is waived by USCIS. See INA sec. 212(a), 8 U.S.C. 1182(a) (grounds of inadmissibility). USCIS has general authority to waive many grounds of inadmissibility for nonimmigrants and may prescribe conditions on their temporary admission to the United States. See INA sec. 212(d)(3)(B), 8 U.S.C. 1182(d)(3)(B).

In addition, the BIWPA created a waiver specific to U nonimmigrant status. Under this waiver, the Secretary of Homeland Security has the discretion to waive any ground of inadmissibility with respect to applicants for U nonimmigrant status, except the ground applicable to participants in Nazi persecutions, genocide, acts of torture, or extrajudicial killings. INA sec. 212(d)(14), 8 U.S.C. 1182(d)(14). However, the Secretary of Homeland Security first must determine that such a waiver would be in the public or national interest. *Id.*

It is important to note that the determination that a waiver would be in the public or national interest and the decision to grant a waiver are made at the discretion of the Secretary. In the immigrant context, the Board of Immigration Appeals has held that, in assessing whether an applicant has met the burden that a waiver is warranted in the exercise of discretion, the adjudicator must balance adverse factors evidencing inadmissibility as a lawful permanent resident with the social and humane considerations presented to determine if the grant of the waiver appears to be in the best interests of the United States. *Matter of Mendez-Moralez,* 21 I&N Dec. 296 (BIA 1996). More recently, in the context of a case involving a waiver of a criminal ground of inadmissibility under section 209(c) of the Act, the Attorney General determined that favorable discretion should not be exercised for waivers under section 212(h) of the Act involving violent or dangerous crimes, except in extraordinary circumstances. *Matter of Jean,* 23 I&N Dec. 373 (A.G. 2002).

In view of these considerations, this rule provides a general rule that DHS will only exercise favorable discretion in U nonimmigrant status cases in which a waiver for violent or dangerous crimes or the security and related grounds under section 212(a)(3) of the Act is requested, in extraordinary circumstances. Moreover, depending on the nature and severity of the underlying offense/s to be waived, the Secretary retains the discretion to determine that the mere existence of

---

[6] A fee waiver is available for the Form I–918 filing fee. Fee waivers are governed by 8 CFR 103.7(c).

**53022** **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

extraordinary circumstances is insufficient.

Additionally, this rule provides that the Secretary will not exercise discretion under section 212(d)(3) of the Act, 8 U.S.C. 1182(d)(3), to waive the ground of inadmissibility under section 212(a)(3)(E) applicable to participants in Nazi persecutions, genocide, acts of torture, or extrajudicial killings. New 8 CFR 212.17(b). Because Congress determined not to make a waiver available for this ground of inadmissibility in the waiver provision created for U nonimmigrant applicants at section 212(d)(14) of the Act, DHS has determined that it would not be logical to allow these applicants to be eligible for a waiver of this ground of inadmissibility under section 212(d)(3) of the Act.

To apply for a waiver of inadmissibility, a petitioner must file Form I–192, "Application for Advance Permission to Enter as Nonimmigrant," with USCIS. New 8 CFR 212.17(a); new 8 CFR 214.14(c)(2)(iv). USCIS will evaluate the application to determine whether it is in the public or national interest to exercise discretion to waive the applicable ground(s) of inadmissibility. New 8 CFR 212.17(b)(1). As with inadmissibility waiver applications for other nonimmigrant classifications, there is no appeal of a decision to deny Form I–192. New 212.17(b)(2); *see also* 8 CFR 212.4(a)(1). This rule also provides that an applicant whose waiver application is denied is not prevented from re-filing a request for a waiver. New 8 CFR 212.17(b)(2). This is to allow those petitioners whose Forms I–918 and concurrently filed Forms I–192 are denied an opportunity to have a subsequently filed Form I–192 considered in the context of other immigration benefits.

USCIS has determined that implicit in its discretionary authority to grant a waiver is the authority to determine the conditions under which a waiver is granted, including revocation of previously granted waiver. Therefore, this interim rule establishes USCIS' authority to revoke its approval of a waiver of inadmissibility that was previously granted. The decision to revoke a waiver is not appealable. New 8 CFR 212.17(c).

**d. Petitioners Who Are in Removal, Deportation, or Exclusion Proceedings or Who Are Subject to a Final Order of Removal, Deportation, or Exclusion**

Aliens who are in removal proceedings under section 240 of the INA, 8 U.S.C. 1229a, or in deportation or exclusion proceedings under former

sections 242 and 236 of the INA, 8 U.S.C. 1252, 1226 (as in effect before April 1, 1997), or who are the subject of a final order of removal, deportation, or exclusion, may be eligible for U nonimmigrant status.[7] Because jurisdiction over U petitions rests solely with USCIS, aliens who are in removal proceedings or who are subject to a final removal order nevertheless must file their petition for U nonimmigrant status directly with USCIS. Filing a petition for U nonimmigrant status will not affect the proceedings or the order. However, in instances in which the U nonimmigrant status petitioner or a derivative family member of the petitioner listed on the Form I–918 is in removal, deportation, or exclusion proceedings before the Immigration Court or has a matter pending before the Board of Immigration Appeals (Board),[8] this rule provides that the alien may seek the agreement of DHS' Bureau of Immigration and Customs Enforcement (ICE)[9] to file a joint motion to terminate the proceedings without prejudice while a petition for U nonimmigrant status is being adjudicated by USCIS.[10] New 8 CFR 214.14(c)(1)(i) and (f)(2)(i). The

---

[7] An order of deportation is an order issued prior to April 1, 1997, in deportation proceedings, to an alien physically present in the United States requiring the alien to leave the United States. See INA sec. 242B, 8 U.S.C. 1252b (1996) *repealed by* IIRIRA, Pub. L. 104–208, div. C., sec. 308(b)(6), 110 Stat. 3009, 3615 (effective April 1, 1997). An order of exclusion is an order issued prior to April 1, 1997, in exclusion proceedings, that refuses the admission to the United States of an alien who is physically outside the United States (or who is treated as being so). *See generally* INA sec. 236, 8 U.S.C. 1226 (1996) (amended by IIRIRA sec. 303(a), 110 Stat. at 3585). Since April 1, 1997, there has been one unified removal process for persons formerly subject to deportation and exclusion proceedings; this process may result in the issuance of a removal order by either DHS or an immigration judge. INA sec. 240(a)(3), 8 U.S.C. 1229a(a)(3) (added by IIRIRA sections 304(a)(3) & 309(d)(2), 110 Stat. at 3587–3589, 3627). During proceedings, DHS or an immigration judge makes a determination regarding whether an alien is removable from the United States. INA sec. 240(c)(1), 8 U.S.C. 1229a(c)(1). If such a determination is made, a removal order is issued ordering the alien to leave the United States. INA sec. 240(c)(5), 8 U.S.C. 1229a(c)(5). The alien must leave the United States on his or her own, or will be returned to his or her country of origin (or in some cases to a third country that agrees to accept that person) by the United States. See INA sections 240B & 241, 8 U.S.C. 1229c & 1231.

[8] The Immigration Court and Board of Immigration Appeals are within the Department of Justice's Executive Office for Immigration Review. *See* 8 CFR 1003.0(a).

[9] ICE counsel are authorized to represent DHS in Immigration Court and before the Board. *See* 6 U.S.C. 252(c); DHS Delegation No. 7030.2, para. 2(C).

[10] While this rule specifically addresses joint motions to terminate, it does not preclude the parties from requesting a continuance of the proceeding.

joint motion to terminate must be filed with the Immigration Court or the Board, whichever has jurisdiction. *Id.* The agreement to pursue termination of the pending proceedings lies within the sole prosecutorial discretion of ICE. DHS is including a specific provision on motions to terminate in this rule to identify a mechanism that conserves prosecutorial resources with respect to a class of aliens who are providing assistance in investigating and prosecuting criminal activity.

This rule further provides that if proceedings are terminated, and USCIS subsequently denies the petition for U nonimmigrant status, DHS may file a new Notice to Appear[11] to place the individual into proceedings again. New 8 CFR 214.14(c)(5)(ii) and (f)(6)(iii).

With respect to petitioners who are the subject of an administrative final order, this rule provides that they are not precluded from filing a petition for U nonimmigrant status directly with USCIS. New 8 CFR 214.14(c)(1)(ii) and (f)(2)(ii). However, the filing of a petition for U nonimmigrant status has no effect on ICE's authority to execute a final order. Therefore, those aliens subject to a final order of removal, deportation, or exclusion who are physically present in the United States should apply separately for a discretionary stay of removal if they wish to remain in the United States while their petition is pending with USCIS. To do so, such aliens must file Form I–246, "Application for Stay of Removal," as provided in 8 CFR 241.6(a) and 8 CFR 1241.6(a). For those petitioners who are subject to a final order of removal and are detained in ICE's custody while USCIS adjudicates their petition, rules of detention still apply. Under the post-order detention rules, an alien who has been subject to post-order detention for more than six months (dating from the beginning of the removal period as described in INA § 241(a)(1)) may request release from detention. See 8 CFR 241.13. If, after six months of post-order detention, the alien can provide "good reason to believe there is no significant likelihood of removal * * * in the reasonably foreseeable future," the alien, with certain exceptions, will be released on an order of supervision. 8 CFR 241.13(a); see *Zadvydas* v. *Davis*, 533 U.S. 678, 701 (2001); Clark v. Martinez, 543 U.S. 371, 386 (2005). However, under this rule, the time during which a stay of removal is in effect will extend

---

[11] Removal proceedings are initiated when an alien is provided notice of proceedings through the service of a Notice to Appear. The contents of the Notice to Appear are prescribed in section 239(a)(1) of the Act.

the period of detention reasonably necessary to bring about the petitioner's eventual removal. New 8 CFR 214.14(c)(1)(ii) and (f)(2)(ii). As the petitioner has, of his or her own choosing, requested that his or her removal be stayed, the reasonably necessary period for removal justifiably is extended. ICE will have a full and fair period to effect removal if USCIS denies the petition. See 8 CFR 241.4.

If USCIS grants the petition for U nonimmigrant status, an order of exclusion, deportation, or removal issued by the Secretary will be canceled by operation of law as of the date of the grant. New 8 CFR 214.14(c)(5)(i) & (f)(6). However, if USCIS subsequently revokes approval of the petition, DHS may place the petitioner in removal proceedings. In cases where an order of exclusion, deportation, or removal was issued by an immigration judge or the Board, the alien may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23. *Id.*

### e. Aliens Seeking Change of Nonimmigrant Classification

Aliens who currently are in a nonimmigrant status may seek to change their classification to the U nonimmigrant classification. Section 248 of the INA, 8 U.S.C. 1258, and implementing regulations at 8 CFR 248 govern change of nonimmigrant classification. These provisions permit nonimmigrants to change status to another nonimmigrant classification, unless they fall within certain nonimmigrant classifications. INA sec. 248(a)(1)–(4), 8 U.S.C. 1258(a)(1)–(4); 8 CFR 248.2. For example, aliens classified under sections 101(a)(15)(C), (D), (K), or (S) of the INA, 8 U.S.C. 1101(a)(15)(C), (D), (K), or (S), as well as certain aliens classified under section 101(a)(15)(J) of the INA, 8 U.S.C. 1101(a)(15)(J), may not change nonimmigrant status. VAWA 2005 amended section 248 of the INA, 8 U.S.C. 1258, so that even aliens within the excepted classifications may seek a change of nonimmigrant status if the status sought is U nonimmigrant status. INA sec. 248(b), 8 U.S.C. 1258(b). This rule adopts this statutory amendment in revised 8 CFR 248.2(b) and makes structural modifications to 8 CFR 248.2 to accommodate the revisions. The rule also clarifies that the procedures for applying for U nonimmigrant status, even when changing nonimmigrant

status, are contained in new 8 CFR 214. Revised 8 CFR 248.1(a).

### f. Aliens Seeking Other Immigration Benefits

Aliens seeking U nonimmigrant status are free to seek any other immigration benefit or status for which they are eligible. INA sec. 214(p)(5), 8 U.S.C. 1184(p)(5). Therefore, nothing in this rule limits a qualified petitioner from applying for U nonimmigrant status as well as other immigration benefits, including immigrant status. However, USCIS will only grant one nonimmigrant or immigrant status at a time. Where multiple applications or petitions are filed and pending at the same time, USCIS will grant the status for the application or petition that is approved first. USCIS will deny any remaining petitions or applications for status.

### 2. Initial Evidence

This rule requires petitioners filing Form I–918 to accompany the petition with supporting documentation, or "initial evidence," in order for USCIS to consider the request for U nonimmigrant status complete. New 8 CFR 214.14(c)(1). If all required initial evidence is not submitted with the petition or does not demonstrate eligibility, USCIS, in its discretion, may deny the application for lack of initial evidence or for ineligibility, or request that the missing or insufficient initial evidence be submitted within a specified period of time as determined by USCIS. 8 CFR 103.2(b)(8)(ii). This rule provides the following list of required initial evidence:

• Form I–918, Supplement B, "U Nonimmigrant Status Certification," properly and timely executed;

• Any additional evidence the petitioner wants USCIS to consider to establish further that:

—The petitioner is a victim of qualifying activity;

—The petitioner has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity;

—The petitioner possesses information concerning the qualifying criminal activity of which he or she was a victim;

—The petitioner has been, is being, or is likely to be helpful to a certifying agency;

—The criminal activity is qualifying and occurred in the United States, including in Indian country and military installations, or the territories and possessions of the United States, or violated a U.S. federal law that provides for extraterritorial

jurisdiction to prosecute the offense in a U.S. Federal court;

• A statement by the petitioner describing the facts of the victimization; and

• If the petitioner is inadmissible, Form I–192, "Application for Advance Permission to Enter as Non-Immigrant." New 8 CFR 214.14(c)(2).

### a. U Nonimmigrant Status Certification

This rule designates Form I–918, Supplement B, "U Nonimmigrant Status Certification," as the form that petitioners must obtain from a certifying official of a certifying agency. New 8 CFR 214.14(c)(2)(i). Form I–918, Supplement B must be prepared by the certifying agency conducting an investigation or prosecution of the qualifying criminal activity in accordance with the instructions to the form, and must have been signed by the certifying official within the six months immediately preceding the submission of Form I–918. *Id.* USCIS is setting a six-month requirement to seek a balance between encouraging the filing of petitions and preventing the submission of stale certifications. USCIS believes that this requirement provides petitioners enough time to prepare the necessary paperwork for the petition package, while also precluding the situation where petitioners delay filing the package until some time after the certification is signed, and they cease to be helpful to the certifying agency. If a petitioner requested and received interim relief prior to the effective date of this rule, USCIS will consider the evidence submitted to meet the certification requirements for interim relief purposes in lieu of Form I–918, Supplement B. New 8 CFR 214.14(c)(1).

This rule defines "certifying official" as the head of the certifying agency or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency, or a Federal, State, or local judge. New 8 CFR 214.14(a)(3). USCIS believes that this definition is reasonable and necessary to ensure the reliability of certifications. It also should encourage certifying agencies to develop internal policies and procedures so that certifications are properly vetted.

Under this rule, the certifying official must affirm the following in the certification: (1) That the person signing the certificate is the head of the certifying agency or person(s) in a supervisory role who has been specifically designated with the authority to issue U nonimmigrant

status certifications on behalf of that agency, or a Federal, State, or local judge; (2) that the agency is a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority that has responsibility for the detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity; (3) that the petitioner has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting; (4) that the petitioner possesses information concerning the qualifying criminal activity of which he or she has been a victim; (5) that the petitioner has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity; and (6) that the qualifying criminal activity violated U.S. law, or occurred in the United States, its territories and possessions, Indian country, or at military installations abroad. New 8 CFR 214.14(c)(2)(i). The certification also should provide relevant, specific details about the nature of the crime being investigated or prosecuted and describe, in detail, the petitioner's helpfulness to the case.

USCIS developed the requirements for Form I–918, Supplement B based upon the eligibility requirements petitioners must meet and the purposes for which the certification will be used. USCIS determined that since the certifying agency is the primary point of contact between the petitioner and the criminal justice system, the certifying agency is in the best position to verify certain factual information. In addition, USCIS does not believe that petitioners are in the best position to know the specific violation of U.S. law the certifying agency is investigating or prosecuting, or what specific statute provides the extraterritorial jurisdiction to investigate or prosecute criminal activity that occurred outside the United States. Therefore, USCIS determined that information regarding the eligibility requirements should be addressed by the certifying agency on Form I–918, Supplement B. USCIS will use Form I–918, Supplement B in the course of adjudicating whether the eligibility requirements have been met.

b. Additional Evidence To Satisfy the Eligibility Requirements

While USCIS will give a properly executed certification on Form I–918, Supplement B, significant weight, USCIS will not consider such certification to be conclusory evidence that the petitioner has met the eligibility requirements. USCIS believes that it is in the best position to determine whether a petitioner meets the eligibility requirements as established and defined in this rule. In addition to Form I–918, Supplement B, this interim rule permits the petitioner to provide any additional evidence that is relevant and credible to help demonstrate that the petitioner meets each of the eligibility requirements. New 8 CFR 214.14(c)(2)(ii) and (iii). For petitioners with interim relief, USCIS will consider evidence previously submitted with the request for interim relief as part of the petition package. Petitioners with interim relief may file additional evidence with Form I–918 to supplement this previously submitted evidence. New 8 CFR 214.14(c)(1).

Evidence to further establish that petitioner is a victim of qualifying criminal activity may include: trial transcripts, court documents, news articles, police reports, orders of protection, and affidavits of other witnesses, such as medical personnel.

Evidence to further establish the nature of the abuse suffered may include such documentation as reports and affidavits from police, judges, other court officials, medical personnel, school officials, clergy, social workers, and other social service agency personnel. Petitioners who have obtained an order of protection against the perpetrator or taken other legal steps to protect themselves against the perpetrator should submit copies of the relating legal documents. A combination of documents such as a photograph of the visibly injured applicant supported by affidavits of individuals who have personal knowledge of the facts regarding the criminal activity may be relevant as well.

Evidence to further establish that the petitioner possesses information about the qualifying criminal activity may include documents establishing that he or she has knowledge of the details of the criminal activity. Examples of relevant evidence include: reports and affidavits from police, judges, and other court officials. In cases where the petitioner is a child under the age of 16, or is incapacitated or incompetent, this requirement can be satisfied by the parent, guardian, or next friend submitting the necessary evidence on behalf of the petitioner. Such person must provide evidence of his or her qualifying relationship to the petitioner and evidence establishing the age, incapacity, or incompetence of the petitioner. Examples of such evidence include: birth certificates, court documents demonstrating recognition of an individual as the petitioner's next friend, medical records, or reports of licensed medical professionals demonstrating the incapacity or incompetence of the applicant.

Evidence to further establish that the petitioner has provided the necessary assistance in the investigation or prosecution of qualifying criminal activity may include such documentation as: Trial transcripts, court documents, police reports, news articles, copies of reimbursement forms for travel to and from court, and affidavits of other witnesses or officials. If USCIS has reason to believe that there is a question about the petitioner's helpfulness to, or continuing cooperation with, the investigation or prosecution, USCIS may contact the certifying official for further explanation. In cases where the petitioner is a child under the age of 16 or is incapacitated or incompetent, this requirement can be satisfied by the parent, guardian, or next friend submitting the necessary evidence on behalf of the petitioner. Such person must provide evidence of their qualifying relationship to the petitioner and evidence that the petitioner is a child under the age of 16, incapacitated, or incompetent. Evidence that was submitted to satisfy the possession of information requirement will satisfy this requirement and need not be submitted twice.

Examples of evidence to further establish that the criminal activity is qualifying and violated U.S. law or occurred in the United States include: A copy of the statutory provision(s) showing the elements of the offense or factual information about the crime demonstrating that it is similar to the list of qualifying criminal activity contained in section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii). If the criminal activity occurred outside the United States, the additional evidence submitted may include a copy of the statutory provision(s) providing for the extraterritorial jurisdiction and documentation showing that the criminal activity violated federal law and is prosecutable in a federal court.

c. Statement by the Petitioner

In support of Form I–918, this rule requires the petitioner to submit a separate statement describing the facts of his or her victimization. 8 CFR 214.14(c)(2)(iii). USCIS is requiring that the petitioner submit a statement because USCIS believes that it is important to learn about the facts of the victimization from the petitioner in his or her own words. This statement should include the following information: The nature of the criminal activity, when the criminal activity occurred, who was responsible, the

**Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations **53025**

events surrounding the criminal activity, how the criminal activity came to be investigated or prosecuted, and what substantial physical and/or mental abuse was suffered as a result of having been the victim of the criminal activity. The statement also may include information supporting any of the other eligibility requirements.

When the petitioner is under the age of 16, incapacitated, or incompetent, a parent, guardian, or next friend must submit a statement in lieu of the petitioner that contains as much information surrounding the criminal activity and physical and/or mental abuse as possible.

### d. Petitioners Who Are Inadmissible

As stated earlier in this Supplementary Information, this rule requires petitioners seeking a waiver of inadmissibility to file Form I–192, "Application for Advance Permission to Enter as Nonimmigrant." New 8 CFR 212.17(a). USCIS has listed the Form I–192 in this rule as initial evidence which must be filed concurrently with Form I–918, along with a separate filing fee. New 8 CFR 214.14(c)(2)(iv). Form I–192 is an established form to waive grounds of inadmissibility for aliens seeking immigration benefits. *See, e.g.,* 8 CFR 212.4 (general authority for waivers in nonimmigrant cases); 8 CFR 212.16 (providing for use of Form I–192 in T nonimmigrant status cases).

### 3. Derivative Family Members

Section 101(a)(15)(U)(ii) of the INA, 8 U.S.C. 1101(a)(15)(U)(ii), permits certain family members accompanying or following to join the alien victim to obtain U nonimmigrant status, regardless of whether or not they are in the United States or overseas. USCIS refers to such family members as derivatives, and the alien victim as the principal. Which family members are considered "qualifying" depends on the age of the principal. If the principal is under 21 years of age, qualifying family members include the principal's spouse, children, unmarried siblings under 18 years of age (on the filing date of the principal's petition), and parents. INA sec. 101(a)(15)(U)(ii)(I), 8 U.S.C. 1101(a)(15)(U)(ii)(I). If the principal is 21 years of age or older, qualifying family members include the spouse and children of the principal. INA sec. 101(a)(15)(U)(ii)(II), 8 U.S.C. 1101(a)(15)(U)(ii)(II). This rule provides the eligibility requirements and petition procedures for qualifying family members seeking derivative status. *See* new 8 CFR 214.14(f).

### a. Eligibility

New 8 CFR 214.14(f)(1) sets forth two eligibility requirements for derivative U nonimmigrant status. First, the alien must be a qualifying family member. New 8 CFR 214.14(f)(1)(i). Second, the alien must be admissible to the United States. New 8 CFR 214.14(f)(1)(ii); *see also* INA sec. 214(a)(1), 8 U.S.C. 1184(a)(1); 8 CFR 214.1(a)(3)(i).

Generally, in order to be considered a qualifying family member, the relationship between the principal petitioner and the family member must exist at the time Form I–918 was filed. New 8 CFR 214.14(f)(4). The relationship must continue to exist at the time the petition for derivative status is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States. *Id.* Otherwise, the family member would not meet section 101(a)(15)(U)(ii) of the INA, 8 U.S.C. 1101(a)(15)(U)(ii), describing who qualifies as a family member.

Note that parents are only considered qualifying family members if the principal is under 21 years of age and a "child." New 8 CFR 214.14(f)(1). Although the statutory language at section 101(a)(15)(U)(ii), 8 U.S.C. 1101(a)(15)(U)(ii), naming parents as qualifying family members does not specify that the principal must be a child under the age of 21 for the parents to qualify, USCIS believes that this qualification is required by section 101(b)(2) of the INA, 8 U.S.C. 1101(b)(2). This provision defines the term, "child," as an unmarried person under 21 years of age. INA sections 101(b)(1), 8 U.S.C. 1101(b)(1).

A special rule applies to unmarried siblings under age 18 of petitioners who are under 21 years of age. For such siblings, the statute provides that the siblings' age on the date that Form I–918 is filed is controlling. INA sec. 101(a)(15)(U)(ii)(I), 8 U.S.C. 1101(a)(15)(U)(ii)(I). Therefore, in new 8 CFR 214.14(f)(4)(ii), if the principal petitioner was under 21 years of age, and requested U nonimmigrant status for an unmarried sibling under the age of 18 at the time Form I–918 was filed, USCIS will continue to consider such sibling as a qualifying family member for purposes of U nonimmigrant status at the time of adjudication even if circumstances change. This rule also provides that children born to the principal petitioner after Form I–918 has been filed will be eligible for derivative U nonimmigrant status. New 8 CFR 214.14(f)(4)(i).

This rule excludes certain qualifying family members from eligibility. Section 204(a)(1)(L) of the INA, 8 U.S.C. 1154(a)(1)(L), prohibits an alien victim from petitioning for derivative U nonimmigrant status on behalf of a qualifying family member who committed battery or extreme cruelty or trafficking against the alien victim which established his or her eligibility for U nonimmigrant status. The rule incorporates this prohibition at new 8 CFR 214.14(f)(1). USCIS has interpreted the prohibition as applying to qualifying family members who committed qualifying criminal activity in a family violence or trafficking context. In making this determination, USCIS considered the plain text of section 204(a)(1)(L) of the INA, 8 U.S.C. 1154(a)(1)(L), and found it to be unclear regarding its intended application. In addition to trafficking, the statute lists battery and extreme cruelty as disqualifying activity even though those terms are not listed as qualifying criminal activity in section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), and are not included in the standard of harm necessary to establish eligibility for U nonimmigrant status. However, when the terms battery or extreme cruelty are used in other contexts in the INA, they are used to refer to harm occurring as a result of domestic violence or child abuse. *See* INA sections 204(a)(1)(A) & (B), 216(c)(4)(C), 240A(b)(2), 8 U.S.C. 1154(a)(1)(A) & (B), 1186(c)(4)(C), 1229b. USCIS believes it is reasonable to conclude that by using these terms, Congress intended to prohibit approval of petitions for U nonimmigrant status where the petition is based on qualifying criminal activity for which the qualifying family member is responsible that occurred in a family violence or trafficking context.

### b. Filing Procedures

This rule requires that a principal petitioner for U nonimmigrant status or a principal alien who has been granted U nonimmigrant status must petition for derivative status on behalf of qualifying family members by submitting a Form I–918, Supplement A, "Petition for Qualifying Family Member of U–1 Recipient," for each qualifying family member. New 8 CFR 214.14(f)(2). Principal petitioners can file Form I–918, Supplement A either at the same time or after filing his or her Form I–918. *Id.* Principal aliens who have already received U nonimmigrant status may file Form I–918, Supplement A at any time while maintaining U nonimmigrant status. *Id.* This provides principals with maximum flexibility to request derivative status for qualifying family members.

121

This rule further requires that Form I–918, Supplement A must be accompanied by supporting evidence ("initial evidence") and the fees required by the instructions to the form. *Id.* If the principal petitioner files Form I–918, Supplement A while his or her Form I–918 is pending adjudication with USCIS, the principal petitioner must accompany Form I–918, Supplement A with a copy of his or her Form I–918. *Id.* If the principal already has been granted U nonimmigrant status, then he or she must accompany Form I–918, Supplement A with a copy of the Form I–94 he or she received when the Form I–918 was approved. *Id.* This will be considered evidence of the principal's U nonimmigrant status. Requiring evidence of the principal's pending petition or status will enable USCIS to match up the derivative petition with the principal's petition.

New 8 CFR 214.14(f)(3) sets forth the initial evidence that must accompany each Form I–918, Supplement A: (1) Evidence of the family member's qualifying relationship with the principal; and (2) if the alien is inadmissible under section 212(a) of the INA, 8 U.S.C. 1182(a), Form I–192, with fee. Such initial evidence corresponds to the two eligibility requirements for derivative U nonimmigrant status.

4. Designations

This rule amends 8 CFR 214.1(a)(1) to codify the derivative subclassifications established by section 101(a)(15)(U) of the INA, 8 U.S.C. 1101(a)(15)(U). *See* new 8 CFR 214.1(a)(1)(ix). In addition, the rule provides for the following designations for qualifying family members of the principal applicant (U–1): Spouse (U–2), child (U–3), the child's parents (U–4), and siblings (U–5). New 8 CFR 214.14(f)(1). This rule likewise adds these designations to current 8 CFR 214.1(a)(2), to add to the list of designations assigned to all other nonimmigrant classifications. These designations are a matter of administrative convenience, providing a shorthand notation for identifying the principal petitioner and each derivative based upon the relationship to the principal.

*C. Adjudication and Post-Adjudication*

The statutory provisions establishing U nonimmigrant status contain a number of parameters guiding the adjudication of U nonimmigrant petitions. Specifically, in determining whether to grant U nonimmigrant status, the statute requires that the adjudicator consider any credible evidence relevant to the petition. *See* INA sec. 214(p)(4), 8 U.S.C. 1184(p)(4). In addition, the

statute protects information relating to applicants for U nonimmigrant status from disclosure. 8 U.S.C. 1367(a)(2). Moreover, the statute precludes adjudicators from making adverse determinations on inadmissibility or deportability with respect to petitions for U nonimmigrant status based on information provided by the perpetrator of abuse and criminal activity. 8 U.S.C. 1367(a)(1)(E). The number of grants of U nonimmigrant status that may be made in a fiscal year is limited by an annual cap of 10,000. INA sec. 214(p)(2), 8 U.S.C. 1184(p)(2).

In this section of the **SUPPLEMENTARY INFORMATION**, these parameters are discussed, as well as the steps that follow a decision to grant or deny a petition for U nonimmigrant status.

1. Credible Evidence

This rule adopts the statutory requirement that any credible evidence relevant to the petition must be considered in the adjudication of petitions for U nonimmigrant status. New 8 CFR 214.14(c)(4) & (f)(5). As in the case of all other immigration benefits, the burden of establishing eligibility for U nonimmigrant status rests with the petitioner. *Id.* USCIS will consider all evidence de novo and will not be bound by any of its prior determinations made during the course of adjudicating an application for interim relief on any essential element of U nonimmigrant status. *Id.* A grant of interim relief means only that the alien presented *prima facie* evidence that he or she was eligible for U nonimmigrant status and does not constitute a binding determination that any given eligibility requirement had been proven. In adjudicating Form I–918, USCIS will review all evidence submitted in conjunction with the interim relief application along with any additional evidence submitted by the petitioner in conjunction with his or her Form I–918, including the certification, Form I–918, Supplement B.

This rule also provides that USCIS may review documentation submitted by the alien in conjunction with any other applications he or she has made for immigration benefits in the past. *Id.* This will enable USCIS to review the petition for U nonimmigrant status in the context of the petitioner's past immigration history and verify that statements made in his or her petition are consistent with information he or she provided to USCIS in the past. In addition, this rule provides that USCIS may investigate any aspect of the petition. *Id.* This means that if, during its adjudication of Form I–918, USCIS has reason to believe that there is a

question about the petitioner's helpfulness to, or continuing cooperation with, the investigation or prosecution, or any other aspect of the petition, USCIS may contact the certifying official for further explanation. USCIS then will be able to verify the veracity of the contents of the petition and safeguard the integrity of the U nonimmigrant status program.

2. Prohibitions on Disclosure of Information

Information concerning U nonimmigrant petitioners is protected against disclosure in two ways. *See* 8 U.S.C. 1367. First, adverse determinations of admissibility or deportability cannot be made based on information obtained solely from the perpetrator of substantial physical or mental abuse and the criminal activity. 8 U.S.C. 1367(a)(1)(E). Second, the disclosure of information relating to the beneficiary of a pending or approved petition for U nonimmigrant status is prohibited except in certain circumstances. 8 U.S.C. 1367(a)(2). The statute allows information to be released to a sworn officer or employee of DHS, the Department of Justice, the Department of State, or a bureau or agency of either of those Departments, for legitimate Department, bureau, or agency purposes. *Id.*

There are eight specific exemptions from the general nondisclosure rule:

(1) At the discretion of the Secretary of Homeland Security or Attorney General, officials may disclose information in the same manner and circumstances as census information may be disclosed by the Secretary of Commerce under 13 U.S.C. 8.

(2) At the discretion of the Secretary of Homeland Security or Attorney General, officials may provide for the disclosure of information to law enforcement officials to be used solely for a legitimate law enforcement purpose.

(3) In connection with judicial review of a determination, information may be disclosed in a manner that protects the confidentiality of such information.

(4) Information may be disclosed if all the crime victims in the case are adults, and they have waived the general restrictions on disclosure of information provided by 8 U.S.C. 1367(a)(2).

(5) Information may be disclosed to Federal, State, and local public and private agencies providing benefits, to be used solely to make determinations of eligibility for benefits pursuant to 8 U.S.C. 1641(c).

(6) Information may be disclosed after a petition for U nonimmigrant status has been finally denied.

**Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations **53027**

(7) Information may be disclosed on closed cases to the chairmen and ranking members of the Committee on the Judiciary of the Senate, or the Committee on the Judiciary of the House of Representatives, for the exercise of congressional oversight authority, provided the disclosure is made in a manner that protects the confidentiality of the information and omits personally identifying information (including locational information about individuals).

(8) With prior written consent from the principal petitioner or derivative family member, information may be disclosed to nonprofit, nongovernmental victims' service providers for the sole purpose of assisting the victim in obtaining victim services from programs with expertise working with immigrant victims. 8 U.S.C. 1367(b). Appropriate disciplinary action must be taken and a monetary penalty of up to $5,000 may be imposed on anyone who willfully uses, publishes, or permits information to be disclosed in violation of the nondisclosure provisions. 8 U.S.C. 1367(c). This rule incorporates the prohibitions and restrictions on information relating to U nonimmigrant petitions into new 8 CFR 214.14(e).

Within the bounds of the statutory prohibitions and restrictions against disclosure of information relating to a U nonimmigrant petitioner, USCIS may provide information taken from the petition about any Federal, State or local crimes to investigative agencies that have a reason to know based on a legitimate law enforcement purpose. Possible agencies or bureaus to which information may be disclosed include: The Federal Bureau of Investigation (FBI); the U.S. Attorney's Office or the Civil Rights or Criminal Divisions of the Department of Justice; or U.S. Immigration and Customs Enforcement (ICE). As part of the adjudication process, USCIS also may contact the certifying agency for the purpose of assessing whether the petitioner is, has been, or is likely to be helpful to the investigation or prosecution of the qualifying criminal activity. Because the certifying agency has submitted a certification on behalf of the petitioner and, therefore, has already been informed about the fact of the petition as well as the facts upon which the petition is based, USCIS has determined that contacting the certifying agency would not violate the statutory prohibitions and restrictions against disclosure. USCIS recognizes the sensitive nature of application information and takes seriously its

obligation to protect confidentiality. USCIS will make any disclosure to an investigative agency in a manner that provides the maximum confidentiality under the circumstances.

In addition to disclosures to investigative agencies, DHS may have an obligation to provide portions of petitions for U nonimmigrant status to federal prosecutors for disclosure to defendants in pending criminal proceedings. This obligation stems from constitutional requirements that pertain to the government's duty to disclose information, including exculpatory evidence or impeachment material, to defendants. See U.S. Const. amend. V & VI; Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154 (1972). Accordingly, this rule incorporates this requirement at new 8 CFR 214.14(e)(1)(ix).

### 3. Annual Numerical Limitation on Grants of U Nonimmigrant Status

Before USCIS may grant U nonimmigrant status, it must consider the statutory cap on the number of aliens who may receive a grant of status each fiscal year. See INA sec. 214(p)(2), 8 U.S.C.1184(p)(2). No more than 10,000 principal aliens may be granted U nonimmigrant status in a given fiscal year (October 1 through September 30). INA sec. 214(p)(2)(A), 8 U.S.C. 1184(p)(2)(A). This numerical limitation does not apply to spouses, children, parents, and unmarried siblings who are accompanying or following to join the principal alien victim. INA sec. 214(p)(2)(B), 8 U.S.C. 1184(p)(2)(B).

USCIS anticipates that within the first few fiscal years after publication of this regulation, it will receive petitions for U nonimmigrant status from more than 10,000 principal aliens. USCIS is cognizant of the fact that law enforcement agencies and prosecutors need a stable mechanism through which to regularize the status of victims and witnesses, but is equally cognizant of the fact that Congress saw fit to limit the number of aliens who may be granted U nonimmigrant status in any given fiscal year. USCIS has determined that to balance the statutorily imposed numerical cap against the dual goals of enhancing law enforcement's ability to investigate and prosecute criminal activity and providing protection to alien victims of crime, it will create a waiting list should the cap be reached in a given fiscal year before all petitions are adjudicated. USCIS's goal is to respect the intent of the numerical limitation imposed by Congress while still allowing the legislation to achieve maximum efficacy. USCIS believes that this rule's waiting list methodology will

provide a stable mechanism through which victims cooperating with law enforcement agencies can regularize their immigration status.

Under this rule, once the numerical limit has been reached in a particular fiscal year, all pending and subsequently submitted petitions will continue to be reviewed in the normal process to determine eligibility. See new 8 CFR 214.14(d)(2). USCIS will deny petitions that are not approvable. Eligible petitioners who are not granted U–1 nonimmigrant status due solely to the numerical limits will be notified by USCIS that they have been placed on a waiting list. Id. Each fiscal year, as new numbers for U–1 nonimmigrant status become available, USCIS will grant U nonimmigrant status to petitioners on the waiting list. Id. Petitioners on the waiting list will be given priority based on the date the petition is properly filed. Id. Petitioners on the waiting list must continue to meet the eligibility requirements for U nonimmigrant status and be admissible at the time status is granted. Id. After USCIS has granted U nonimmigrant status to petitioners on the waiting list, USCIS will continue to grant petitions, up to the annual limit, to new petitioners in the order in which each petition was properly filed. Id.

This rule also provides that, USCIS will give petitioners on the waiting list deferred action or parole until the start of the next fiscal year. Id. Those petitioners will be eligible to apply for employment authorization. Id. The rule further provides that petitioners on the waiting list will not accrue unlawful presence under section 212(a)(9)(B) of the INA, 8 U.S.C. 1182(a)(9)(B). New 8 CFR 214.14(d)(3). However, at its discretion, USCIS may remove a petitioner from the waiting list and terminate deferred action or parole. Id. For example, USCIS may terminate deferred action or parole if the petitioner is convicted of a crime that renders him or her removable. USCIS also may terminate deferred action or parole if it becomes aware that a petitioner has failed to disclose a criminal conviction or has misrepresented a material fact in his or her petition.

### 4. Decisions on Petitions

USCIS will issue decisions granting or denying U nonimmigrant petitions in writing. New 8 CFR 214.14(c)(5) (principal petitioners); new 8 CFR 214.14(f)(6) (derivative family members). If USCIS denies a petition, it will also provide reasons for the denial in writing. New 8 CFR 214.14(c)(5)(ii); new 8 CFR 214.14(f)(6)(iii). In any case in which USCIS denies a petition for U

**53028** **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

nonimmigrant status, the petitioner may appeal to USCIS's Administrative Appeals Office (AAO) under established procedures outlined in 8 CFR 103.3. *Id.*

a. Granting U Nonimmigrant Status

If USCIS finds that the petitioner has satisfied the requirements for U nonimmigrant status, it will grant U nonimmigrant status to the petitioner and derivative family members, unless the annual numerical limit applicable to principal petitioners has been reached. New 8 CFR 214.14(c)(5)(i); new 8 CFR 214.14(f)(6). If a number is available for the principal petitioner, USCIS will send a notice of approval on Form I–797, "Notice of Action," to the principal petitioner or, if the principal petitioner is overseas, to the Department of State for forwarding to the appropriate U.S. Embassy or Consulate or to the appropriate port of entry (visa exempt alien). New 8 CFR 214.14(c)(5)(i)(A) and (B). USCIS also will send to the principal petitioner a notice of approval on Form I–797 for derivative family members for whom USCIS has approved Form I–918, Supplement A. New 8 CFR 214.14(f)(6)(i) and (ii). If a number is not available, USCIS will notify the petitioner that, in accordance with new 8 CFR 214.14(d)(2), he or she has been placed on the waiting list, given deferred action or parole, and may request employment authorization. USCIS will also grant deferred action or parole to derivative family members with an opportunity to request employment authorization. New 8 CFR 214.14(d)(2).

For those principal petitioners and derivative family members who are within the United States, a Form I–94, "Arrival-Departure Record," indicating U nonimmigrant status will be attached to the approval notice and will constitute evidence that the petitioner has been granted U nonimmigrant status. New 8 CFR 214.14(c)(5)(i)(A); new 8 CFR 214.14(f)(6)(i). For those principal petitioners or qualifying family members who are outside the United States, USCIS will follow the standard procedures for issuing grants as applied to other nonimmigrant categories. USCIS will forward the notice of approval to the Department of State for delivery to the U.S. Embassy or Consulate designated on the petition, which should be the U.S. Embassy or Consulate having jurisdiction over the area in which the alien is located, or to the appropriate port of entry for a visa exempt alien. New 8 CFR 214.14(c)(5)(i)(B); new 8 CFR

214.14(f)(6)(ii).[12] The principal petitioner and any derivative family members should file for a U nonimmigrant visa with the designated U.S. Embassy or Consulate or port of entry. If granted, the visa can be used to travel to the United States for admission as a U nonimmigrant.

This rule provides that principal petitioners and derivative family members who were granted interim relief and whose petition for U nonimmigrant status is approved will be accorded U nonimmigrant status as of the date that the request for U interim relief was approved. New 8 CFR 214.14(c)(6); new 8 CFR 214.14(f)(6)(ib). USCIS has determined that according status as of the date that interim relief was approved is appropriate so that the time a petitioner spent with interim relief will count towards the three years of continuous physical presence in U nonimmigrant status required before the petitioner may adjust status to that of a lawful permanent resident under section 245(m) of the INA, 8 U.S.C. 1255(m). Memorandum from Michael Aytes, Acting Associate Director, Domestic Operations, USCIS, Applications for U Nonimmigrant Status (Jan. 6, 2006). In fact, the House Report for VAWA 2005 indicates that members of Congress expect this result. *See* H.R. Rep. No. 109–233, at 114 (2005); *see also* 151 Cong. Rec. E2605, E2608 (statement of Representative John Conyers). Therefore, under this rule, recipients of U nonimmigrant status will be eligible to submit an application to adjust status three years after the date that interim relief was accorded, rather than having to wait until three years after the date on which USCIS approves their petition for U nonimmigrant status.

b. Duration of U Nonimmigrant Status

Section 214(p)(6) of the INA, 8 U.S.C. 1184(p)(6), provides that the duration of U nonimmigrant status cannot exceed four years. Extensions are permitted upon certification from a certifying agency that the alien's presence in the United States is required to assist in the investigation or prosecution of qualifying criminal activity. This rule incorporates this provision in new 8 CFR 214.14(g).

New 8 CFR 214.14(g)(1) provides that U nonimmigrant status for both principals (U–1) and derivative family members (U–2, U–3, U–4, and U–5) may be approved for a period not to exceed

an aggregate of four years. Because derivative status is based on the principal's status, derivative status initially will be approved for a period that does not exceed the period initially approved for the principal. New 8 CFR 214.14(g)(1). Just as with all other nonimmigrant classifications, the U nonimmigrant's Form I–94 issued to evidence status will indicate the approved period of stay. For petitioners who were previously accorded interim relief, USCIS necessarily will indicate on Form I–94 an approved period of stay that is less than four years. Therefore, for example, USCIS will issue a petitioner, who was accorded interim relief two years ago, a Form I–94 reflecting an approved period of stay for up to another two years upon the grant of U nonimmigrant status.

This rule further provides that U nonimmigrants can apply for an extension of status in two circumstances. A U nonimmigrant may apply for an extension of status where his or her status was granted for an approved period of stay of less than four years in the aggregate. New 8 CFR 214.14(g)(2)(i). This may be the case, for example, where a U nonimmigrant is outside the United States and experiences delays in consular processing. Because the petition for U nonimmigrant status is granted for a specified four-year period, which runs from the date of approval by USCIS, delays in entering the United States would mean that the alien would not be admitted to the United States in U nonimmigrant status until after a portion of the four-year period stated in the approved petition has already run.

The rule specifically addresses the situation where an overseas derivative family member receives an approved period of stay that expires on the same date as the principal's, but that is less than four years because the derivative was unable to enter the United States in a timely fashion due to delays in consular processing. Under this rule, such derivative may apply for an extension of status even though the principal cannot since the principal's period of stay was already approved for a four-year period. New 8 CFR 214.14(g)(2)(i). Necessarily, an approved period of stay based upon such extension of status application will exceed the date on which the principal's approved period of stay expired. The reason for this provision is so that the derivative is able to attain at least three years in U nonimmigrant status. Such period of time in U nonimmigrant status is necessary before the alien may apply to adjust status to that of a lawful permanent resident pursuant to section

---

[12] A visa exempt alien is an alien for whom a valid, unexpired passport is not required for admission to the United States. INA sec. 212(d)(4)(B), 8 U.S.C. 1182(d)(4)(B); 8 CFR 212.1(i).

245(m) of the INA, 8 U.S.C. 1255(m). To permit extensions of status for derivatives in this rule, USCIS considered the text of section 214(p)(6) of the INA, 8 U.S.C. 1184(p)(6). This statutory provision applies the four-year limit for U nonimmigrant status to all U nonimmigrants equally, and not just to principal petitioners. In addition, it does not include a requirement that the derivative's period of stay run concurrently with the principal's period of stay.

To apply for an extension of U nonimmigrant status under new 8 CFR 214.14(g)(2)(i), this rule provides that the U nonimmigrant must file Form I–539, "Application to Extend/Change Nonimmigrant Status," in accordance with the instructions to the form. USCIS requires this application of most nonimmigrants seeking to extend or change their nonimmigrant status. USCIS cannot grant an extension to exceed an aggregate period of four years in U nonimmigrant status. *Id.*

If the aggregate period of four years in U nonimmigrant status has been reached, a U nonimmigrant nevertheless may apply for an extension of status beyond such period if the certifying official attests that the alien's presence in the United States continues to be necessary to assist in the investigation or prosecution of the qualifying criminal activity. New 8 CFR 214.14(g)(2)(ii). Therefore, in order to obtain an extension of U nonimmigrant status on this basis, the U nonimmigrant must file Form I–539 in accordance with the instructions to the form and a newly executed Form I–918, Supplement B. *Id.*

### 5. Benefits for U Nonimmigrants

Section 214(p)(3) of the INA, 8 U.S.C. 1184(p)(3), directs the Secretary of Homeland Security to provide those granted U nonimmigrant status certain benefits along with their status. The Secretary of Homeland Security and other government officials, where appropriate, must provide U nonimmigrants referrals to nongovernmental organizations which can advise such nonimmigrants of their options while in the United States and the resources available to them. INA sec. 214(p)(3)(A), 8 U.S.C. 1184(p)(3)(A). In addition, the Secretary of Homeland Security must provide employment authorization to U nonimmigrants. INA sec. 214(p)(3)(B), 8 U.S.C. 1184(p)(3)(B). This rule implements these requirements in new 8 CFR 214.14(c)(5), (c)(7), (f)(6), and (f)(7), 8 CFR 274a.12(a)(19) and (20), and 8 CFR 274a.13(a).

### a. Referrals to Nongovernmental Organizations

New 8 CFR 214.14(c)(5) and (f)(6) adopt the requirement in section 214(p)(3)(A), 8 U.S.C. 1184(p)(3)(A), that, where appropriate, USCIS provide U nonimmigrants referrals to nongovernmental organizations. USCIS has determined that it is appropriate to provide such referrals to all U nonimmigrants, including principals and derivatives alike, because, as crime victims or family members of crime victims, they may be in need of additional assistance and information. Accordingly, new 8 CFR 214.14(c)(5) and (f)(6) require USCIS to include in the notice approving the U nonimmigrant petition a list of nongovernmental organizations. The nongovernmental organizations that will be included on the list are those that can provide information and advice regarding the U nonimmigrant's options while in the United States, including information regarding options for long-term immigration relief. Such organizations can also provide the principal with necessary resource tools.

### b. Employment Authorization

This rule provides for automatic employment authorization upon a grant of U nonimmigrant status, implementing the requirement at section 214(p)(3)(B) of the INA, 8 U.S.C. 1184(p)(3)(B), that the Secretary of Homeland Security confer employment authorization on aliens granted U nonimmigrant status. Under new 8 CFR 214.14(c)(7) and 8 CFR 214.14(f)(7), principal aliens and derivative family members granted U nonimmigrant status are employment authorized incident to their U nonimmigrant status. This is also reflected in new 8 CFR 274a.12(a)(19) and (20), where the rule adds these two new categories of aliens to the existing list of aliens who are employment authorized incident to status. Automatically conferring employment authorization obviates the need for the ministerial step of affirmatively granting employment authorization during the adjudication of each petition.

### c. Evidence of Employment Authorization

In addition to conferring employment authorization automatically on U nonimmigrants, this rule also provides for the issuance of evidence of employment authorization, an Employment Authorization Document (EAD). To do so, this rule amends 8 CFR 274a.12(a) and 274a.13(a), which govern employment authorization

documentation for all classes of aliens. This rule also includes more specific provisions regarding employment authorization documentation for U nonimmigrants in new 8 CFR 214.14(c)(7) and 214.14(f)(7).

The EAD can serve as evidence of both employment authorization and identity. 8 CFR 274a.2(b)(1)(v)(A)(4). Aliens seeking new employment or maintaining current employment can present their EAD to employers verifying employment authorization and identity pursuant to the requirements of section 274A(b) of the INA, 8 U.S.C. 1324a(b), and 8 CFR 274a.2.

For principal aliens seeking their first EAD based upon U nonimmigrant status, USCIS will use the information contained in Form I–918 to automatically generate an EAD, such that a separate request for an EAD is not necessary. *See* new 8 CFR 214.14(c)(7). USCIS has designed the Form I–918 so that it serves the dual purpose of requesting U nonimmigrant status and employment authorization to streamline the application process. Therefore, principal aliens will not have to file additional paperwork to obtain an initial EAD.

For principal aliens applying for U nonimmigrant status from outside the United States, this rule provides that the initial EAD will not be produced until the alien has been admitted to the United States in U–1 nonimmigrant status. *Id.* To receive an EAD, the alien must make a request to USCIS for an EAD accompanied by a copy of his or her Form I–94, "Arrival-Departure Record," proving the alien's admission to the United States in U–1 nonimmigrant status. *Id.* No forms or filing fees are required. *Id.* Form I–94 should be submitted to the office having jurisdiction over petitions for U nonimmigrant status as indicated on the instructions to Form I–918.

Derivative family members seeking an EAD must make their EAD request on a form separate from Form I–918, Supplement A requesting U nonimmigrant status. To request an EAD, derivative family members must file Form I–765, "Application for Employment Authorization," with the appropriate filing fee (or a request for a fee waiver) stated in the instructions to the form. New 8 CFR 214.14(f)(7); revised 8 CFR 274a.13(a). USCIS could not design Form I–918, Supplement A to serve as a dual purpose form for derivative family members because the form is filed by the principal alien on behalf of, rather than directly by, derivative family members.

For derivative family members who are within the United States, Form I–

**53030** Federal Register / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

765 may be filed concurrently with Form I–918, Supplement A, or it may be filed at a later time. New 8 CFR 214.14(f)(7). For derivative family members who are outside the United States, Form I–765 must be filed with the office having jurisdiction over petitions for U nonimmigrant status, as specified in the instructions to the Form I–765, after their admission to the United States in U nonimmigrant status. *Id.* They should include a copy of their approval notice for U nonimmigrant classification, a copy of their passport, and a copy of their Form I–94. This supporting documentation is necessary to verify identity and confirm the alien's physical presence in the United States and U nonimmigrant status.

Whether automatically generated or generated based on Form I–765, USCIS will issue the initial EAD on Forms I–766 or I–688B, valid for no longer than the approved period of stay in U nonimmigrant status. U nonimmigrants whose EADs will expire earlier may request a renewal EAD. Renewal requests must be made on Form I–765 in accordance with form instructions and with the appropriate fee or request for a fee waiver.

This rule also makes conforming amendments to 8 CFR parts 274a.12 and 274a.13. New 8 CFR 274a.12(a)(19) provides that principal nonimmigrants in U–1 status are employment authorized incident to status and do not need to apply to USCIS for a document evidencing this employment authorization. New 8 CFR 274a.12(a)(20) and revised 8 CFR 274a.13(a) provide that derivative family members in U–2, U–3, U–4, and U–5 nonimmigrant status are employment authorized incident to status, but must apply to USCIS for employment authorization documentation.

This rule also makes technical corrections to 8 CFR parts 274a.12 and 274a.13(a) to eliminate certain errors. The corrections clarify: (1) That asylees described in 8 CFR 274a.12(a)(5) and T nonimmigrants described in 8 CFR 274a.12(a)(16) do not need to apply to USCIS in order to receive a document evidencing their employment authorization incident to status; and (2) that aliens granted Family Unity benefits under the LIFE Act described in 8 CFR 274a.12(a)(14) and V nonimmigrants described in 8 CFR 274a.12(a)(15) must apply to USCIS in order to receive a document evidencing such employment authorization. This rule also reserves 8 CFR 274a.12(a)(17) and (18) for future use.

### 6. Travel Outside the United States

Aliens with U nonimmigrant status may travel outside the United States. However, in order to return to the United States, such aliens must obtain a U nonimmigrant visa for re-entry to the United States unless they are visa exempt. 8 CFR 212.1. They also should keep in mind that if they accrued more than 180 days of "unlawful presence" prior to obtaining U nonimmigrant status, they may be found inadmissible upon their return to the United States. *See* INA sec. 212(a)(9)(B), 8 U.S.C. 1182(a)(9)(B). Any alien other than a lawful permanent resident who was unlawfully present in the United States between 180 days and one year and departs the United States is barred from readmission to the United States for three years from the date of departure. INA sec. 212(a)(9)(B)(i)(I), 8 U.S.C. 1182(a)(9)(B)(i)(I). If the alien was unlawfully present for more than one year, he or she is barred from seeking readmission for a period of 10 years from the date of departure. INA sec. 212(a)(9)(B)(i)(II), 8 U.S.C. 1182(a)(9)(B)(i)(II). An alien is deemed to be unlawfully present in the United States if he or she remains in the United States after the expiration of an authorized period of stay or is present in the United States without being admitted or paroled. INA sec. 212(a)(9)(B)(ii), 8 U.S.C. 1182(a)(9)(B)(ii). U nonimmigrant aliens subject to the unlawful presence ground of inadmissibility may request a waiver of inadmissibility on Form I–192, as discussed earlier in this Supplementary Information, prior to or upon their return to the United States.

For nonimmigrants seeking admission to the United States, a valid, unexpired passport is required in addition to a valid visa, unless an exemption applies. *See* INA sec. 212(a)(7)(B), 8 U.S.C. 1182(a)(7)(B); 8 CFR 212.1. In unforeseen emergency situations, these requirements may be waived for certain categories of nonimmigrants. INA sec. 212(d)(4)(A), 8 U.S.C. 1182(d)(4)(A); 8 CFR 212.1(g). This rule extends eligibility to apply for this waiver to U nonimmigrants and petitioners for U nonimmigrant status. USCIS believes that such an extension is necessary because U nonimmigrants or petitioners for U nonimmigrant status, as crime victims, may be faced with threats to their lives or safety which may make them unable to timely obtain a visa or passport.

Accordingly, this rule amends 8 CFR 212.1(g) to add U–1, U–2, U–3, U–4, and U–5 nonimmigrants and those seeking such status to the list of nonimmigrants who may seek a waiver of the visa and passport requirements for unforeseen emergencies. *See* revised 8 CFR 212.1(g). This waiver may apply to a U nonimmigrant who needs to travel outside the United States but, due to an unforeseen emergency, is unable to obtain a passport from his or her country of citizenship or nationality or a visa from a U.S. Embassy or Consulate in order to re-enter the United States. This waiver also may apply to a petitioner for U nonimmigrant status who is outside the United States, but who needs to enter the United States due to an unforeseen emergency after Form I–918 is adjudicated but before he or she has received a visa from a U.S. embassy or consular office or obtained a passport from his or her country of citizenship or nationality. For example, USCIS anticipates that this waiver could be needed where government officials from the alien victim's home country are implicated in the criminal activity, and, as a result, the petitioner is unable to obtain a passport or safely travel to the U.S. Embassy or Consulate to obtain a visa. A waiver may also be needed where the perpetrator is not in custody, has made threats against the petitioner, and the petitioner needs to enter the United States immediately to ensure his or her safety.

As under the current regulatory provision, this rule maintains that all eligible nonimmigrants must request a waiver on Form I–193, "Application for Waiver of Passport and/or Visa." Revised 8 CFR 212.1(g). New 8 CFR 212.1(p) authorizes the director of the office having jurisdiction over the adjudication of Form I–918 to adjudicate the waiver application.

This rule makes a technical correction to current 8 CFR 212.1(g) by deleting the reference to "Deputy Commissioner." This position no longer exists after DHS took over the functions of the former Immigration and Naturalization Service in March of 2003. See 6 U.S.C. 291(a).

### 7. Revocation of U Nonimmigrant Status

This rule establishes USCIS's authority to revoke its approval of Form I–918 and Form I–918, Supplement A, and any waivers of inadmissibility that were granted in conjunction with the petition. New 8 CFR 214.14(h). Revocation authority flows from section 214(a)(1) of the INA, 8 U.S.C. 1184(a)(1). This provision authorizes the Secretary of Homeland Security to prescribe, by regulation, the time and conditions of admission of any nonimmigrant. Implicit in this authority is the authority to prescribe the conditions under which nonimmigrant status may be revoked. Revocation of an approved U

**Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations   **53031**

nonimmigrant status petition necessarily results in the termination of U nonimmigrant status. New 8 CFR 214.14(h)(4).

The rule establishes two forms of revocation: Automatic and by notice. Automatic revocation applies where a principal alien with an approved U nonimmigrant petition who applied from outside the United States notifies USCIS that he or she will not use the approved petition to enter the United States. New 8 CFR 214.14(h)(1).

Revocation by notice is at the discretion of USCIS. *See* new 8 CFR 214.14(h)(2). This rule establishes the following bases for revocations by notice: (1) Where the certifying official withdraws the U nonimmigrant status certification upon which the principal U nonimmigrant's petition was based or disavows the contents of the certification in writing; (2) where approval of the petition was in error; (3) where there was fraud in the petition; (4) where a derivative's relationship to the principal has terminated; and (5) where the principal's approved petition for U–1 nonimmigrant status is revoked. *Id.* USCIS has determined that revocation of a petition by notice in cases where the certification is withdrawn is appropriate because when that occurs, the principal no longer meets the requirements for U nonimmigrant status as described by section 101(a)(15)(U) of the INA, 8 U.S.C. 1101(a)(15)(U), and therefore, is no longer maintaining status. A nonimmigrant who fails to maintain nonimmigrant status is removable from the United States under section 237(a)(1)(C)(i) of the INA, 8 U.S.C. 1227(a)(1)(C)(i). USCIS has determined that revocation of a petition by notice in cases of fraud or error is appropriate because both bases indicate that the petitioner may have obtained a benefit for which he or she was not eligible. USCIS has also determined that revocation of a derivative petition where the relationship to the principal has terminated or where the principal's U–1 nonimmigrant status has been revoked is appropriate because, as a general matter, a derivative's status is dependent upon the principal's status. This rule classifies these bases for revocation as discretionary rather than automatic because USCIS recognizes that there may be instances in which revocation of the derivative petition is not warranted. For example, revocation of the derivative petition may not be warranted where the derivative is providing valuable assistance to the certifying agency in the investigation or prosecution of criminal activity. Providing such assistance is an eligibility requirement for U nonimmigrants, including derivatives, seeking to adjust status to that of a lawful permanent resident. *See* INA sec. 245(m), 8 U.S.C. 1255(m).

At new 8 CFR 214.14(h)(2)(ii), this rule provides that the notice of intent to revoke must be in writing and contain a statement of the grounds for the revocation. This provision also states that the alien may submit evidence in rebuttal within 30 days of the date of the notice, which is the standard amount of time given for rebutting a notice of intent to revoke. *See, e.g.,* 8 CFR 214.2(h)(11)(iii)(B); 8 CFR 214.11(s)(2). The rule mandates that USCIS must consider all relevant evidence presented in deciding whether to revoke the approval of the petition. The rule provides that just as with the initial adjudication of Form I–918, the determination of what is relevant evidence and the weight to be given to that evidence will be within the sole discretion of USCIS. If USCIS revokes approval of a petition and thereby terminates U nonimmigrant status, USCIS will provide the alien with a written notice of revocation that explains the specific reasons for the revocation. New 8 CFR 214.14(h)(2)(ii).

For revocations by notice, this rule permits appeals to USCIS's AAO. New 8 CFR 214.14(h)(3). The rule requires appeals to be submitted within 30 days of the date of the notice of revocation. USCIS believes this is a reasonable amount of time for the petitioner to appeal the decision and is in keeping with the desire to promote administrative efficiency and finality in adjudications. In addition, a timeframe of 30 days to file an appeal is a standard period for filing an appeal. *See, e.g.,* 8 CFR 103.3(a)(2)(i); 8 CFR 214.2(h)(12)(ii). Appeals are not permitted for automatic revocations. New 8 CFR 214.14(h)(3). Once the certifying agency has withdrawn the certification, the alien ceases to be statutorily eligible for U nonimmigrant status, and there is no basis for an appeal.

Once USCIS revokes a principal alien's approved petition for U nonimmigrant status, USCIS will also deny any pending U nonimmigrant petitions for qualifying family members. New 8 CFR 214.14(h)(4). Without an approved petition for U nonimmigrant status for the principal, there is no statutory basis for granting U–2, U–3, U–4, or U–5 derivative status.

This rule provides that revocation of a previously approved petition will have no effect on the annual cap. New 8 CFR 214.14(h)(4). Therefore, once a U nonimmigrant status is granted to a principal alien, the number will be deemed to have been used and cannot be used again. In developing this rule, USCIS considered providing for re-use of the number. However, USCIS determined that not only would it be infeasible to track such numbers, USCIS does not believe it has the statutory authority to recapture the numbers after the end of each fiscal year.

## 8. Removal Proceedings

This rule provides for another means for terminating U nonimmigrant status. New 8 CFR 214.14(i) states that USCIS may exercise its existing authority to institute removal proceedings under section 239 of the INA, 8 U.S.C. 1229, for conduct committed after admission, for conduct or a condition that was not disclosed to USCIS prior to the granting of U nonimmigrant status, for misrepresentations of material facts in the Form I–918, Form I–918, Supplement A, or supporting documentation, or after revocation of U nonimmigrant status. Each of these circumstances may give rise to a ground of removability under section 237(a) of the INA, 8 U.S.C. 1227(a).

## D. Filing and Biometric Services Fees

USCIS has determined that no fee will be charged for filing Form I–918 or for derivative U nonimmigrant status for qualifying family members. See 72 FR 29851, at 29865. Petitioners must, however, submit the established fee for biometric services for each person ages 14 through 79 inclusive with each U nonimmigrant status petition. New 8 CFR 214.14(c)(2)(iv). USCIS recognizes that many petitioners for U nonimmigrant status may be unable to pay the biometric services fee. Petitioners who are financially unable to pay the biometric services fee may submit an application for a fee waiver, as outlined in 8 CFR 103.7(c). The granting of a fee waiver will be at the sole discretion of USCIS. See 72 FR 29851, at 29865. Further guidance on fee waivers can be found on USCIS's Web site at *http://www.uscis.gov/ graphics/formsfee/forms/index.htm.*

This program involves the personal well-being of a few applicants and petitioners, and the decision to waive the petition fee reflects the humanitarian purposes of the authorizing statutes. This blanket fee exemption is because it is consistent with the legislative intent to assist persons in these circumstances. Also, anecdotal evidence indicates that applicants under these programs are generally deserving of a fee waiver. Thus, USCIS determined that these programs would likely result in such a

high number of waiver requests that adjudication of those requests would overtake the adjudication of the benefit requests themselves.

## IV. Regulatory Requirements

### A. Administrative Procedure Act

USCIS has determined that delaying this rule to allow public comment would be impracticable and contrary to the public interest; thus, this rule is being published as an interim final rule and is effective 30 days after publication. Nonetheless, USCIS invites comments and will address comments in the final rule.

USCIS finds a compelling public need for rapid implementation of this rule justifying the exception allowed by the Administrative Procedure Act (APA) to the requirements for soliciting public comment before a rule shall take effect. 5 U.S.C. 553(b)(3)(B). This exception should be used by agencies in cases, such as this, where delay could result in serious harm. See, *Jifry* v. *Fed. Aviation Admin.,* 370 F.3d 1174 (D.C. Cir. 2004) (finding the exception excuses notice and comment where delay could result in serious harm). Congress created the new U classification to curtail criminal activity, protect victims of crimes committed against them in the United States, and encourage victims to fully participate in the investigation of the crimes and the prosecution of the perpetrators. See BIWPA sec. 1513(a)(2). Many immigrant crime victims fear coming forward to assist law enforcement until this rule is effective. Thus, continued delay of this rule further exposes victims of these crimes to danger, and leaves their legal status in an indeterminate state. Moreover, the delay prevents law enforcement agencies from receiving the benefits of the BIWPA and continues to expose the U.S. to security risks and other effects of human trafficking. Therefore, delay in the implementation of these regulations would be contrary to the public interest.

Further, USCIS finds that the good cause exception is warranted by the statutorily imposed deadline and the complicated nature of this rule. Agencies may bypass public comment when a statutorily imposed deadline is combined with a complicated statutory or regulatory scheme and there is either evidence that the agency has been diligent in its efforts to comply with the statutory deadline or a compelling need for rapid implementation of the regulation. *See Methodist Hosp. of Sacramento* v. *Shalala,* 38 F.3d 1225 (D.C. Cir. 1994) (5 month statutory deadline and complex regulatory framework constituted good cause for

exception); *Petry* v. *Block,* 737 F.2d 1193, 1201 (D.C. Cir. 1984) (agency's good cause argument was justifiable "in light of extremely limited timeframe given by Congress in relation to amount of work required to produce rule."). Section 828 of the Violence Against Women and Department of Justice Reauthorization Act of 2005 (Pub. L. 109–162, January 5, 2006) requires DHS to publish regulations required by that Act within 180 days after enactment (i.e., July 4, 2006). Unfortunately, the statutory and regulatory framework of U.S. immigration laws is exceedingly complex. *See Zadvydas* v. *Davis,* 533 U.S. 678 (2001). Plus, these regulations have required input and coordination with law enforcement agencies affected by this rule to balance its humanitarian goals and law enforcement interests.

Accordingly, DHS finds that good cause exists under 5 U.S.C. 553(b) to make this interim rule effective 30 days following publication in the **Federal Register**, before closure of the 60-day public comment period. DHS nevertheless invites written comments on this interim rule, and will consider any timely comments in preparing a final rule.

DHS notes that in compliance with the Paperwork Reduction Act, USCIS published notices in the **Federal Register** requesting public comment on Form I–918, "Petition for U Nonimmigrant Status," Supplement A, "Petition for Qualifying Family Member of U–1 Recipient," and Supplement B, "U Nonimmigrant Status Certification." *See* 70 FR 72460 (Dec. 5, 2005) (60-day notice); 71 FR 32117 (June 2, 2006) (30-day notice). The instructions to these forms include descriptions of the eligibility and evidentiary requirements for obtaining U nonimmigrant status. USCIS received 55 comments in response to the 60-day notice. The comments addressed the comprehension, readability, and burden estimate of the form, as well as the substance of the form instructions. The substantive comments primarily focused on seven general areas: (1) Changes required by intervening legislation; (2) the certification process; (3) instructions for interim relief recipients; (4) filing deadlines; (5) fees; (6) the admissibility requirement; and (7) the evidence standard. In response to these comments, USCIS revised the forms for the 30-day notice and incorporated the comments, as appropriate, into this interim rule. USCIS received no comments in response to the 30-day notice.

To review the forms, a summary of the public comments, and USCIS' response to the comments, contact the

Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529, *rfs.regs@dhs.gov* (e-mail).

### B. Regulatory Flexibility Act

The Regulatory Flexibility Act (RFA) (5 U.S.C. 605(b)), as amended by the Small Business Regulatory Enforcement and Fairness Act of 1996 (SBREFA), requires an agency to prepare and make available to the public a regulatory flexibility analysis that describes the effect of the rule on small entities (i.e., small businesses, small organizations, and small governmental jurisdictions). RFA analysis is not required when a rule is exempt from notice and comment rulemaking under 5 U.S.C. 553(b). USCIS has determined that this rule is exempt from notice and comment rulemaking pursuant to 5 U.S.C. 553(b)(B). Further, this regulation directly regulates individuals, not small entities as that term is defined under the RFA. Therefore, an RFA analysis is not required for this rule.

### C. Unfunded Mandates Reform Act of 1995

This rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100 million or more in one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

### D. Small Business Regulatory Enforcement Fairness Act of 1996

This rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Act of 1996. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

### E. Executive Order 12866 (Regulatory Planning and Review)

This rule is considered by USCIS to be a significant regulatory action under Executive Order 12866, section 3(f), Regulatory Planning and Review. Accordingly, this regulation has been submitted to the Office of Management and Budget for review.

This rule establishes the requirements and procedures for aliens seeking nonimmigrant status under the U classification. The U nonimmigrant classification is available to alien victims of certain criminal activity who assist government officials in investigating or prosecuting that criminal activity, and provides temporary immigration benefits (nonimmigrant status and employment authorization), potentially leading to permanent resident status. This rule requires and establishes an application process for U nonimmigrant status and employment authorization, designating Form I–918 as the form that petitioners must use to request U nonimmigrant status. This rule also imposes petition requirements and processing fees.

1. Costs to Petitioners

USCIS estimates the total annual cost of this interim rule to be $6,182,000. This cost includes the biometric services fee that the petitioner must pay to USCIS, the opportunity cost of time needed to submit the required forms, the opportunity cost of time required for a visit to an Application Support Center, and the cost of traveling to an Application Support Center. Below, these costs are described in more detail.

This rule requires any individual seeking U nonimmigrant status to pay the prescribed biometric services fee. This fee is currently $80 per person. *See* 72 FR 29851.

USCIS estimates that it will receive 12,000 Forms I–918 and 24,000 Forms I–918, Supplement A each fiscal year. Therefore, USCIS estimates that this rule will cost petitioners $960,000 (12,000 × $80 biometric services charge) in fees for Forms I–918, and $1,920,000 (24,000 × $80 biometric services charge) in fees for Forms I–918, Supplement A. The total cost of this rule to petitioners will be $2,880,000 in biometric services fees each fiscal year.

Additionally, USCIS estimates that each Form I–918 petitioner will spend 5 hours complying with this rule. USCIS estimates that each petitioner will spend 75 minutes reading the Form I–918 instructions. It will take 75 minutes to complete the form and 150 minutes to assemble and submit the form, for a total of 300 minutes of each petitioner's time. USCIS estimates that petitioners also submitting Form I–918, Supplement A will spend 1 hour and 30 minutes complying with this rule. USCIS estimates that each petitioner will spend 30 minutes reading the instructions to Form I–918, Supplement A, 30 minutes to complete the form, and 30 minutes to assemble and submit the form.

Petitioners and qualifying family members will also be required to travel to the nearest USCIS Application Support Center (ASC) to provide biometrics information. While travel times and distances will vary, USCIS estimates the average round-trip to an ASC will be 20 miles, and that the average time for that trip will be an hour. It will take an average of one hour for a petitioner or qualifying family member to wait for service, and to have his or her biometrics collected. Total time for each individual to comply with this requirement is two hours.

As previously discussed, USCIS expects to receive a total of 36,000 forms (12,000 Forms I–918 and 24,000 Forms I–918, Supplement A) annually. However, USCIS does not know how many of these forms will be filed by adults on behalf of children. Consequently, it is difficult for USCIS to estimate the opportunity cost of time for the 36,000 petitioners and qualifying family members with precision. For the purpose of this economic analysis, USCIS will assume that all petitioners and qualifying family members are adults and use an opportunity cost of time based on national wage rates. Specifically, USCIS is using the mean national hourly wage rate from the Bureau of Labor Statistics (BLS) for 2003 as a proxy for the opportunity cost of an individual's time. BLS estimates for "All Occupations" the mean hourly wage was $17.75 in 2003. Using this BLS wage data, USCIS estimates the total cost for petitioner time spent is $1,491,000 (12,000 persons × 7.0 hours × $17.75) for Form I–918 petitioners, and $1,491,000 (24,000 persons × 3.5 hours × $17.75) for Form I–918, Supplement A petitioners and qualifying family members.

Additionally, there is the cost of travel. USCIS anticipates that most petitioners will drive privately-owned vehicles to the ASCs. The General Services Administration (GSA) establishes a reimbursement rate that is used when privately owned vehicles are used by federal employees while on official travel. We consider this GSA reimbursement rate to be a reasonable proxy for the cost of driving to an ASC. This reimbursement rate fluctuates over time; however, as of January 1, 2006, GSA calculates the cost of operating a privately-owned vehicle as 44.5 cents a mile. Therefore, USCIS calculates the transportation costs as $320,400 (36,000 persons × 44.5 cents per mile × 20 miles).

In summary, USCIS estimates the total cost of the program would be $2,880,000 in biometric services fees, $2,982,000 million in time and $320,400 in

transportation costs. The total cost of compliance to this rule each fiscal year by 36,000 persons is $6,182,000 ($2,880,000 + $2,982,000 million + $320,400).

2. Treatment of Petitions That Exceed the Statutory Cap

The number of petitions for U–1 nonimmigrant status that USCIS may grant is limited to 10,000 in any fiscal year (October 1 through September 30). INA sec. 214(p)(2), 8 U.S.C. 1184(p)(2). USCIS anticipates receiving 12,000 petitions each fiscal year. Therefore, the potential exists that the number of approvable petitions per fiscal year will exceed the numerical limit (i.e., cap). USCIS has identified the following four alternatives, the first being chosen for this rule:

1. USCIS would adjudicate petitions on a first in, first out basis. Petitions received after the limit has been reached would be reviewed to determine whether or not they are approvable but for the numerical cap. Approvable petitions that are reviewed after the numerical cap has been reached would be placed on a waiting list and written notice would be sent to the petitioner. Priority on the waiting list would be based upon the date on which the petition is filed. USCIS would provide petitioners on the waiting list with interim relief until the start of the next fiscal year in the form of deferred action, parole, or a stay of removal. At the beginning of the next fiscal year, petitions on the waiting list would be granted first. Advantages to this alternative include: assisting law enforcement agencies by allowing the alien victim to remain in the United States to assist in the investigation or prosecution of criminal activity while waiting for new numbers to become available; improving customer service by allowing victims to remain in the United States, giving them an opportunity to access victims services to which they may be entitled; and providing employment authorization to alien victims so they will have a lawful means through which to support themselves and their families. Disadvantages include additional administrative and case management costs to USCIS due to the need to maintain a waiting list during the fiscal year and to adjudicate interim relief. In addition, those applying for U nonimmigrant status from outside the United States may be disadvantaged because they will not be able to enter the United States while waiting for a new number to become available.

2. USCIS would adjudicate petitions on a first in, first out basis, establishing

**53034**   **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

a waiting list for petitions that are pending or received after the numerical cap has been reached. Priority on the waiting list would be based upon the date on which the petition was filed. USCIS would not provide interim relief to petitioners whose petitions are placed on the waiting list. This means that petitioners who are not in status would be accruing unlawful presence and would be removable. At the beginning of the next fiscal year, petitions on the waiting list would be adjudicated first. The primary advantage of this alternative is that it eliminates the need for petitioners to file a new petition each year and keeps petitions in process. Disadvantages of this alternative include: little assurance that the alien victim will not be removed from the United States; law enforcement has no assurance that the alien victim will be present in the United States to assist in the investigation or prosecution of criminal activity; without permission to remain in the U.S., the alien victim may be deprived of victims services to which they may be entitled. This approach would also result in additional administrative and case management costs by creating the need to maintain a waiting list during the fiscal year and could create a perpetual waiting list/backlog.

3. USCIS would adjudicate petitions on a first in, first out basis. However, new filings would be reviewed to identify particularly compelling cases for adjudication. New filings would be rejected once the numerical cap is reached. No official waiting list would be established; however, interim relief until the start of the next fiscal year would be provided for some compelling cases. If a case was not particularly compelling, the filing would be denied or rejected. The advantage to this approach is that it would provide a mechanism to ensure that certain alien victims needed for the investigation or prosecution of criminal activity would be able to remain in the United States. Disadvantages include: difficulty in establishing balanced standards regarding who will receive interim relief; depriving alien victims not given interim relief of victims' services to which they may be entitled; and depriving law enforcement of assistance of victims not given interim relief. An additional disadvantage would be that petitioners would have to pay the filing fee in order for USCIS to review the petition to determine whether it was particularly compelling and merited interim relief. A large percentage of the petitions would likely be denied or rejected which would result in financial losses to the petitioners.

4. USCIS would adjudicate petitions on a first in, first out basis. However, new filings would be rejected once the numerical cap is reached. No waiting list would be established, nor would interim relief be granted. Advantages to this approach include no additional administrative or case management costs since it would allow rejection once the cap is reached, and equal treatment for those applying from outside the United States. Disadvantages include: depriving law enforcement of cooperating alien victims for those whose petitions are rejected; depriving rejected petitioners access to victims services to which they may be entitled; disadvantaging those who are unable to file early in the fiscal year; and potentially impeding case processing efficiency by causing adjudication to occur in waves (i.e., busy during the beginning of the fiscal year and then slow once the cap is reached). USCIS chose the first alternative for this rule because USCIS believes that it best meets the goals of the BIWPA by both ensuring the protection of alien victims and minimizing the risk of disruptions to criminal investigations and prosecutions.

USCIS solicits comments on these alternatives, as well as other proposals for managing the numerical limitation on grants of U nonimmigrant status.

*F. Executive Order 13132 (Federalism)*

This rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

*G. Executive Order 12988 (Civil Justice Reform)*

This rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

*H. Family Assessment*

I have reviewed this regulation and have determined that it may affect family well-being as that term is defined in section 654 of the Treasury General Appropriations Act, 1999, Public Law 105–277, Div. A. Accordingly, I have assessed this action in accordance with the criteria specified by section 654(c)(1). This regulation will enhance family well-being by encouraging vulnerable individuals who have been victims of certain criminal activity, or in some cases, whose family members have been victims of certain criminal activity, to report the criminal activity, and by providing critical assistance and benefits. Additionally, this regulation allows qualifying family members to obtain U nonimmigrant status once the principal petitioner has received status.

*I. Paperwork Reduction Act*

This rule establishes application requirements and procedures for aliens to receive U nonimmigrant status, defined in section 101(a)(15)(U) of the INA, 8 U.S.C. 1101(a)(15)(U). Some of the information collection requirements contained in this rule have been cleared by the Office of Management and Budget (OMB) under the provisions of the Paperwork Reduction Act. Clearance numbers for these collections are contained in 8 CFR 299.5, Display Control Numbers, and are noted herein. Form I–192, ''Application for Advance Permission to Enter as Nonimmigrant,'' OMB Control Number 1615–0017; Form I–193, ''Application for Waiver of Passport and/or Visa,'' OMB Control Number 1653–0004; Form I–539, ''Application to Extend/Change Nonimmigrant Status,'' OMB Control Number 1615–0003; Form I–765, ''Application for Employment Authorization,'' OMB Control Number 1615–0040.

In addition, this rule requires that an alien submit a completed Form I–918, ''Petition for U Nonimmigrant Status,'' and supporting documentation to apply for U nonimmigrant status. This Form I–918 and supporting documentation is considered a new information collection under the Paperwork Reduction Act. OMB has approved this new information collection in accordance with the Paperwork Reduction Act of 1995 and assigned it OMB Control Number 1615–0104.

**List of Subjects**

*8 CFR Part 103*

Administrative practice and procedure, Authority delegations (Government agencies), Fees, Forms, Freedom of information, Privacy, Reporting and recordkeeping requirements, Surety bonds.

*8 CFR Part 212*

Administrative practice and procedure, Aliens, Immigration, Passports and visas, Reporting and recordkeeping requirements.

8 CFR Part 214

Administrative practice and procedure, Aliens, Cultural exchange programs, Employment, Foreign officials, Health professions, Reporting and recordkeeping requirements, Students, victims.

*8 CFR Part 248*

Aliens, Reporting and recordkeeping requirements.

*8 CFR Part 274a*

Administrative practice and procedure, Aliens, Employment, Penalties, Aliens, Employment, Reporting and recordkeeping requirements.

*8 CFR Part 299*

Immigration, Reporting and recordkeeping requirements.

■ Accordingly, chapter I of title 8 of the Code of Federal Regulations is amended as follows:

## PART 103—POWERS AND DUTIES; AVAILABILITY OF RECORDS

■ 1. The authority citation for part 103 continues to read as follows:

**Authority:** 5 U.S.C. 552, 552a; 8 U.S.C. 1101, 1103, 1304, 1356; 31 U.S.C. 9701; Public Law 107–296, 116 Stat. 2335 (6 U.S.C. 1 *et seq.*); E.O. 12356, 47 FR 14874, 15557, 3 CFR, 1982 Comp., p. 166; 8 CFR part 2.

■ 2. Section 103.7(b)(1) is amended by adding, in proper alpha/numeric sequence, a new ''Form I–918'' and ''Form I–918, Supplement A'' to read as follows:

### § 103.7  Fees.

\*    \*    \*    \*    \*

(b) \*  \*  \*

(1) \*  \*  \*

Form I–918. For filing a petition to classify an alien as a nonimmigrant under section 101(a)(15)(U)(i) of the Act, 8 U.S.C. 1101(a)(15)(U)(i)—$270. For filing a petition to classify an alien as a nonimmigrant under section 101(a)(15)(U)(ii) of the Act, 8 U.S.C. 1101(a)(15)(U)(ii), on Form I–918, Supplement A concurrently with Form I–918—$120 per family member, up to a maximum amount of $540.

Form I–918, Supplement A. For filing a petition to classify an alien as a nonimmigrant under section 101(a)(15)(U)(ii) separately from Form I–918—$120.

\*    \*    \*    \*    \*

## PART 212—DOCUMENTARY REQUIREMENTS: NONIMMIGRANTS; WAIVERS; ADMISSION OF CERTAIN INADMISSABLE ALIENS; PAROLE

■ 3. The authority citation for part 212 continues to read as follows:

**Authority:** 8 U.S.C. 1101 and note, 1102, 1103, 1182 and note, 1184, 1187, 1223, 1225, 1226, 1227.

■ 4. Section 212.1 is amended by revising paragraph (g) and adding a new paragraph (p) to read as follows:

### § 212.1  Documentary requirements for nonimmigrants.

\*    \*    \*    \*    \*

(g) *Unforeseen emergency.* A nonimmigrant seeking admission to the United States must present an unexpired visa and passport valid for the amount of time set forth in section 212(a)(7)(B) of the Act, 8 U.S.C. 1182(a)(7), or a valid biometric border crossing card, issued by the DOS on Form DSP–150, at the time of application for admission, unless the nonimmigrant satisfies the requirements described in one or more of the paragraphs (a) through (f) or (i), (o), or (p) of this section. Upon a nonimmigrant's application on Form I–193, ''Application for Waiver of Passport and/or Visa,'' a district director may, in the exercise of his or her discretion, on a case-by-case basis, waive the documentary requirements, if satisfied that the nonimmigrant cannot present the required documents because of an unforeseen emergency. The district director may at any time revoke a waiver previously authorized pursuant to this paragraph and notify the nonimmigrant in writing to that effect.

\*    \*    \*    \*    \*

(p) *Alien in U–1 through U–5 classification.* Individuals seeking U–1 through U–5 nonimmigrant status may avail themselves of the provisions of paragraph (g) of this section, except that the authority to waive documentary requirements resides with the director of the USCIS office having jurisdiction over the adjudication of Form I–918, ''Petition for U Nonimmigrant Status.''

■ 5. Section 212.17 is added, to read as follows:

### § 212.17  Applications for the exercise of discretion relating to U nonimmigrant status.

(a) *Filing the waiver application.* An alien applying for a waiver of inadmissibility under section 212(d)(3)(B) or (d)(14) of the Act (waivers of inadmissibility), 8 U.S.C. 1182(d)(3)(B) or (d)(14), in connection with a petition for U nonimmigrant status being filed pursuant to 8 CFR

214.14, must submit Form I–192, ''Application for Advance Permission to Enter as Non-Immigrant,'' in accordance with the form instructions, along with Form I–918, ''Petition for U Nonimmigrant Status,'' or Form I–918, Supplement A, ''Petition for Qualifying Family Member of U–1 Recipient.'' An alien in U nonimmigrant status who is seeking a waiver of section 212(a)(9)(B) of the Act, 8 U.S.C. 1182(a)(9)(B) (unlawful presence ground of inadmissibility triggered by departure from the United States), must file Form I–192 prior to his or her application for re-entry to the United States in accordance with the form instructions.

(b) *Treatment of waiver application.* (1) USCIS, in its discretion, may grant Form I–192 based on section 212(d)(14) of the Act, 8 U.S.C. 1182(d)(14), if it determines that it is in the public or national interest to exercise discretion to waive the applicable ground(s) of inadmissibility. USCIS may not waive a ground of inadmissibility based upon section 212(a)(3)(E) of the Act, 8 U.S.C. 1182(a)(3)(E). USCIS, in its discretion, may grant Form I–192 based on section 212(d)(3) of the Act, 8 U.S.C. 1182(d)(3), except where the ground of inadmissibility arises under sections 212(a)(3)(A)(i)(I), (3)(A)(ii), (3)(A)(iii), (3)(C), or (3)(E) of the Act, 8 U.S.C. 1182(a)(3)(A)(i)(I), (3)(A)(ii), (3)(A)(iii), (3)(C), or (3)(E).

(2) In the case of applicants inadmissible on criminal or related grounds, in exercising its discretion USCIS will consider the number and severity of the offenses of which the applicant has been convicted. In cases involving violent or dangerous crimes or inadmissibility based on the security and related grounds in section 212(a)(3) of the Act, USCIS will only exercise favorable discretion in extraordinary circumstances.

(3) There is no appeal of a decision to deny a waiver. However, nothing in this paragraph is intended to prevent an applicant from re-filing a request for a waiver of ground of inadmissibility in appropriate cases.

(c) *Revocation.* The Secretary of Homeland Security, at any time, may revoke a waiver previously authorized under section 212(d) of the Act, 8 U.S.C. 118(d). Under no circumstances will the alien or any party acting on his or her behalf have a right to appeal from a decision to revoke a waiver.

## PART 214—NONIMMIGRANT CLASSES

■ 6. The authority citation for part 214 is revised to read as follows:

**Authority:** 8 U.S.C. 1101, 1102, 1103, 1182, 1184, 1186a, 1187, 1221, 1281, 1282, 1301–

**53036**   **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

1305 and 1372; section 643, Pub. L. 104–208, 110 Stat. 3009–708; Pub. L. 106–386, 114 Stat. 1477–1480; section 141 of the Compacts of Free Association with the Federated States of Micronesia and the Republic of the Marshall Islands, and with the Government of Palau, 48 U.S.C. 1901 note, and 1931 note, respectively; 8 CFR part 2.

■ 7. Section 214.1 is amended by:
■ a. Adding a new paragraph (a)(1)(ix); and by
■ b. Adding classification designations in proper numeric/alphabetical sequence in the table in paragraph (a)(2).

The additions read as follows:

### § 214.1   Requirements for admission, extension, and maintenance of status.

(a) * * *

(1) * * *

(ix) Section 101(a)(15)(U)(ii) is divided into (U)(ii), (U)(iii), (U)(iv), and (U)(v) for the spouse, child, parent, and siblings, respectively, of a nonimmigrant classified under section 101(a)(15)(U)(i); and

(2) * * *

| Section | Designation |
|---|---|
| 101(a)(15)(U)(i) .......... | U–1. |
| 101(a)(15)(U)(ii) ......... | U–2, U–3, U–4, U–5. |

\*      \*      \*      \*      \*

■ 8. A new § 214.14 is added to read as follows:

### § 214.14   Alien victims of certain qualifying criminal activity.

(a) *Definitions.* As used in this section, the term:

(1) *BIWPA* means Battered Immigrant Women Protection Act of 2000 of the Victims of Trafficking and Violence Protection Act of 2000, div. B, Violence Against Women Act of 2000, tit. V, Pub. L. 106–386, 114 Stat. 1464, (2000), *amended by* Violence Against Women and Department of Justice Reauthorization Act of 2005, tit. VIII, Pub. L. 109–162, 119 Stat. 2960 (2006), *amended by* Violence Against Women and Department of Justice Reauthorization Act—Technical Corrections, Pub. L. 109–271, 120 Stat. 750 (2006).

(2) *Certifying agency* means a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority, that has responsibility for the investigation or prosecution of a qualifying crime or criminal activity. This definition includes agencies that have criminal investigative jurisdiction in their respective areas of expertise, including, but not limited to, child protective services, the Equal Employment Opportunity Commission, and the Department of Labor.

(3) *Certifying official* means:

(i) The head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency; or

(ii) A Federal, State, or local judge.

(4) *Indian Country* is defined as:

(i) All land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation;

(ii) All dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state; and

(iii) All Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through such allotments.

(5) *Investigation or prosecution* refers to the detection or investigation of a qualifying crime or criminal activity, as well as to the prosecution, conviction, or sentencing of the perpetrator of the qualifying crime or criminal activity.

(6) *Military Installation* means any facility, base, camp, post, encampment, station, yard, center, port, aircraft, vehicle, or vessel under the jurisdiction of the Department of Defense, including any leased facility, or any other location under military control.

(7) *Next friend* means a person who appears in a lawsuit to act for the benefit of an alien under the age of 16 or incapacitated or incompetent, who has suffered substantial physical or mental abuse as a result of being a victim of qualifying criminal activity. The next friend is not a party to the legal proceeding and is not appointed as a guardian.

(8) *Physical or mental abuse* means injury or harm to the victim's physical person, or harm to or impairment of the emotional or psychological soundness of the victim.

(9) *Qualifying crime or qualifying criminal activity* includes one or more of the following or any similar activities in violation of Federal, State or local criminal law of the United States: Rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter;

murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes. The term "any similar activity" refers to criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities.

(10) *Qualifying family member* means, in the case of an alien victim 21 years of age or older who is eligible for U nonimmigrant status as described in section 101(a)(15)(U) of the Act, 8 U.S.C. 1101(a)(15)(U), the spouse or child(ren) of such alien; and, in the case of an alien victim under the age of 21 who is eligible for U nonimmigrant status as described in section 101(a)(15)(U) of the Act, *qualifying family member* means the spouse, child(ren), parents, or unmarried siblings under the age of 18 of such an alien.

(11) *Territories and Possessions of the United States* means American Samoa, Swains Island, Bajo Nuevo (the Petrel Islands), Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Atoll, Navassa Island, Northern Mariana Islands, Palmyra Atoll, Serranilla Bank, and Wake Atoll.

(12) *U nonimmigrant status certification* means Form I–918, Supplement B, "U Nonimmigrant Status Certification," which confirms that the petitioner has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim.

(13) *U interim relief* refers to the interim benefits that were provided by USCIS to petitioners for U nonimmigrant status, who requested such benefits and who were deemed prima facie eligible for U nonimmigrant status prior to the publication of the implementing regulations.

(14) *Victim of qualifying criminal activity* generally means an alien who has suffered direct and proximate harm as a result of the commission of qualifying criminal activity.

(i) The alien spouse, children under 21 years of age and, if the direct victim is under 21 years of age, parents and unmarried siblings under 18 years of age, will be considered victims of qualifying criminal activity where the direct victim is deceased due to murder or manslaughter, or is incompetent or incapacitated, and therefore unable to provide information concerning the criminal activity or be helpful in the investigation or prosecution of the criminal activity. For purposes of determining eligibility under this definition, USCIS will consider the age

**Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations      **53037**

of the victim at the time the qualifying criminal activity occurred.

(ii) A petitioner may be considered a victim of witness tampering, obstruction of justice, or perjury, including any attempt, solicitation, or conspiracy to commit one or more of those offenses, if:

(A) The petitioner has been directly and proximately harmed by the perpetrator of the witness tampering, obstruction of justice, or perjury; and

(B) There are reasonable grounds to conclude that the perpetrator committed the witness tampering, obstruction of justice, or perjury offense, at least in principal part, as a means:

(*1*) To avoid or frustrate efforts to investigate, arrest, prosecute, or otherwise bring to justice the perpetrator for other criminal activity; or

(*2*) To further the perpetrator's abuse or exploitation of or undue control over the petitioner through manipulation of the legal system.

(iii) A person who is culpable for the qualifying criminal activity being investigated or prosecuted is excluded from being recognized as a victim of qualifying criminal activity.

(b) *Eligibility.* An alien is eligible for U–1 nonimmigrant status if he or she demonstrates all of the following in accordance with paragraph (c) of this section:

(1) The alien has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity. Whether abuse is substantial is based on a number of factors, including but not limited to: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim, including aggravation of pre-existing conditions. No single factor is a prerequisite to establish that the abuse suffered was substantial. Also, the existence of one or more of the factors automatically does not create a presumption that the abuse suffered was substantial. A series of acts taken together may be considered to constitute substantial physical or mental abuse even where no single act alone rises to that level;

(2) The alien possesses credible and reliable information establishing that he or she has knowledge of the details concerning the qualifying criminal activity upon which his or her petition is based. The alien must possess specific facts regarding the criminal activity

leading a certifying official to determine that the petitioner has, is, or is likely to provide assistance to the investigation or prosecution of the qualifying criminal activity. In the event that the alien has not yet reached 16 years of age on the date on which an act constituting an element of the qualifying criminal activity first occurred, a parent, guardian or next friend of the alien may possess the information regarding a qualifying crime. In addition, if the alien is incapacitated or incompetent, a parent, guardian, or next friend may possess the information regarding the qualifying crime;

(3) The alien has been helpful, is being helpful, or is likely to be helpful to a certifying agency in the investigation or prosecution of the qualifying criminal activity upon which his or her petition is based, and since the initiation of cooperation, has not refused or failed to provide information and assistance reasonably requested. In the event that the alien has not yet reached 16 years of age on the date on which an act constituting an element of the qualifying criminal activity first occurred, a parent, guardian or next friend of the alien may provide the required assistance. In addition, if the petitioner is incapacitated or incompetent and, therefore, unable to be helpful in the investigation or prosecution of the qualifying criminal activity, a parent, guardian, or next friend may provide the required assistance; and

(4) The qualifying criminal activity occurred in the United States (including Indian country and U.S. military installations) or in the territories or possessions of the United States, or violated a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. federal court.

(c) *Application procedures for U nonimmigrant status*—(1) *Filing a petition.* USCIS has sole jurisdiction over all petitions for U nonimmigrant status. An alien seeking U–1 nonimmigrant status must submit, by mail, Form I–918, "Petition for U Nonimmigrant Status," applicable fees (or request for a fee waiver as provided in 8 CFR 103.7(c)), and initial evidence to USCIS in accordance with this paragraph and the instructions to Form I–918. A petitioner who received interim relief is not required to submit initial evidence with Form I–918 if he or she wishes to rely on the law enforcement certification and other evidence that was submitted with the request for interim relief.

(i) *Petitioners in pending immigration proceedings.* An alien who is in removal

proceedings under section 240 of the Act, 8 U.S.C. 1229a, or in exclusion or deportation proceedings initiated under former sections 236 or 242 of the Act, 8 U.S.C. 1226 and 1252 (as in effect prior to April 1, 1997), and who would like to apply for U nonimmigrant status must file a Form I–918 directly with USCIS. U.S. Immigration and Customs Enforcement (ICE) counsel may agree, as a matter of discretion, to file, at the request of the alien petitioner, a joint motion to terminate proceedings without prejudice with the immigration judge or Board of Immigration Appeals, whichever is appropriate, while a petition for U nonimmigrant status is being adjudicated by USCIS.

(ii) *Petitioners with final orders of removal, deportation, or exclusion.* An alien who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U–1 nonimmigrant status directly with USCIS. The filing of a petition for U–1 nonimmigrant status has no effect on ICE's authority to execute a final order, although the alien may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6(a). If the alien is in detention pending execution of the final order, the time during which a stay is in effect will extend the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about the petitioner's removal.

(2) *Initial evidence.* Form I–918 must include the following initial evidence:

(i) Form I–918, Supplement B, "U Nonimmigrant Status Certification," signed by a certifying official within the six months immediately preceding the filing of Form I–918. The certification must state that: the person signing the certificate is the head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency, or is a Federal, State, or local judge; the agency is a Federal, State, or local law enforcement agency, or prosecutor, judge or other authority, that has responsibility for the detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity; the applicant has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting; the petitioner possesses information concerning the qualifying criminal activity of which he or she has been a victim; the petitioner has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity; and the qualifying criminal activity violated

**53038**   **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

U.S. law, or occurred in the United States, its territories, its possessions, Indian country, or at military installations abroad.

(ii) Any additional evidence that the petitioner wants USCIS to consider to establish that: the petitioner is a victim of qualifying criminal activity; the petitioner has suffered substantial physical or mental abuse as a result of being a victim of qualifying criminal activity; the petitioner (or, in the case of a child under the age of 16 or petitioner who is incompetent or incapacitated, a parent, guardian or next friend of the petitioner) possesses information establishing that he or she has knowledge of the details concerning the qualifying criminal activity of which he or she was a victim and upon which his or her application is based; the petitioner (or, in the case of a child under the age of 16 or petitioner who is incompetent or incapacitated, a parent, guardian or next friend of the petitioner) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement agency, prosecutor, or authority, or Federal or State judge, investigating or prosecuting the criminal activity of which the petitioner is a victim; or the criminal activity is qualifying and occurred in the United States (including Indian country and U.S. military installations) or in the territories or possessions of the United States, or violates a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. federal court;

(iii) A signed statement by the petitioner describing the facts of the victimization. The statement also may include information supporting any of the eligibility requirements set out in paragraph (b) of this section. When the petitioner is under the age of 16, incapacitated, or incompetent, a parent, guardian, or next friend may submit a statement on behalf of the petitioner; and

(iv) If the petitioner is inadmissible, Form I–192, "Application for Advance Permission to Enter as Non-Immigrant," in accordance with 8 CFR 212.17.

(3) *Biometric capture.* All petitioners for U–1 nonimmigrant status must submit to biometric capture and pay a biometric capture fee. USCIS will notify the petitioner of the proper time and location to appear for biometric capture after the petitioner files Form I–918.

(4) *Evidentiary standards and burden of proof.* The burden shall be on the petitioner to demonstrate eligibility for U–1 nonimmigrant status. The petitioner may submit any credible evidence relating to his or her Form I–918 for consideration by USCIS. USCIS

shall conduct a de novo review of all evidence submitted in connection with Form I–918 and may investigate any aspect of the petition. Evidence previously submitted for this or other immigration benefit or relief may be used by USCIS in evaluating the eligibility of a petitioner for U–1 nonimmigrant status. However, USCIS will not be bound by its previous factual determinations. USCIS will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence, including Form I–918, Supplement B, "U Nonimmigrant Status Certification."

(5) *Decision.* After completing its de novo review of the petition and evidence, USCIS will issue a written decision approving or denying Form I–918 and notify the petitioner of this decision. USCIS will include in a decision approving Form I–918 a list of nongovernmental organizations to which the petitioner can refer regarding his or her options while in the United States and available resources.

(i) *Approval of Form I–918, generally.* If USCIS determines that the petitioner has met the requirements for U–1 nonimmigrant status, USCIS will approve Form I–918. For a petitioner who is within the United States, USCIS also will concurrently grant U–1 nonimmigrant status, subject to the annual limitation as provided in paragraph (d) of this section. For a petitioner who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of Form I–918. A petitioner who is subject to an order of exclusion, deportation, or removal issued by an immigration judge or the Board may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23.

(A) *Notice of Approval of Form I–918 for U–1 petitioners within the United States.* After USCIS approves Form I–918 for an alien who filed his or her petition from within the United States, USCIS will notify the alien of such approval on Form I–797, "Notice of Action," and include Form I–94, "Arrival-Departure Record," indicating U–1 nonimmigrant status.

(B) *Notice of Approval of Form I–918 for U–1 petitioners outside the United States.* After USCIS approves Form I–918 for an alien who filed his or her petition from outside the United States,

USCIS will notify the alien of such approval on Form I–797, "Notice of Action," and will forward notice to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the alien is located, or, for a visa exempt alien, to the appropriate port of entry.

(ii) *Denial of Form I–918.* USCIS will provide written notification to the petitioner of the reasons for the denial. The petitioner may appeal a denial of Form I–918 to the Administrative Appeals Office (AAO) in accordance with the provisions of 8 CFR 103.3. For petitioners who appeal a denial of their Form I–918 to the AAO, the denial will not be deemed administratively final until the AAO issues a decision affirming the denial. Upon USCIS' final denial of a petition for a petitioner who was in removal proceedings that were terminated pursuant to 8 CFR 214.14(c)(1)(i), DHS may file a new Notice to Appear (see section 239 of the Act, 8 U.S.C. 1229) to place the individual in proceedings again. For petitioners who are subject to an order of removal, deportation, or exclusion and whose order has been stayed, USCIS' denial of the petition will result in the stay being lifted automatically as of the date the denial becomes administratively final.

(6) *Petitioners granted U interim relief.* Petitioners who were granted U interim relief as defined in paragraph (a)(13) of this section and whose Form I–918 is approved will be accorded U–1 nonimmigrant status as of the date that a request for U interim relief was initially approved.

(7) *Employment authorization.* An alien granted U–1 nonimmigrant status is employment authorized incident to status. USCIS automatically will issue an initial Employment Authorization Document (EAD) to such aliens who are in the United States. For principal aliens who applied from outside the United States, the initial EAD will not be issued until the petitioner has been admitted to the United States in U nonimmigrant status. After admission, the alien may receive an initial EAD, upon request and submission of a copy of his or her Form I–94, "Arrival-Departure Record," to the USCIS office having jurisdiction over the adjudication of petitions for U nonimmigrant status. No additional fee is required. An alien granted U–1 nonimmigrant status seeking to renew his or her expiring EAD or replace an EAD that was lost, stolen, or destroyed, must file Form I–765 in accordance with the instructions to the form.

(d) *Annual cap on U–1 nonimmigrant status*—(1) *General.* In accordance with

134

section 214(p)(2) of the Act, 8 U.S.C. 1184(p)(2), the total number of aliens who may be issued a U–1 nonimmigrant visa or granted U–1 nonimmigrant status may not exceed 10,000 in any fiscal year.

(2) *Waiting list.* All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority. In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status. After U–1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U–1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed. USCIS will grant deferred action or parole to U–1 petitioners and qualifying family members while the U–1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

(3) *Unlawful presence.* During the time a petitioner for U nonimmigrant status who was granted deferred action or parole is on the waiting list, no accrual of unlawful presence under section 212(a)(9)(B) of the INA, 8 U.S.C. 1182(a)(9)(B), will result. However, a petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS.

(e) *Restrictions on use and disclosure of information relating to petitioners for U nonimmigrant classification*—(1) *General.* The use or disclosure (other than to a sworn officer or employee of DHS, the Department of Justice, the Department of State, or a bureau or agency of any of those departments, for legitimate department, bureau, or agency purposes) of any information relating to the beneficiary of a pending or approved petition for U nonimmigrant status is prohibited unless the disclosure is made:

(i) By the Secretary of Homeland Security, at his discretion, in the same manner and circumstances as census information may be disclosed by the Secretary of Commerce under 13 U.S.C. 8;

(ii) By the Secretary of Homeland Security, at his discretion, to law enforcement officials to be used solely for a legitimate law enforcement purpose;

(iii) In conjunction with judicial review of a determination in a manner that protects the confidentiality of such information;

(iv) After adult petitioners for U nonimmigrant status or U nonimmigrant status holders have provided written consent to waive the restrictions prohibiting the release of information;

(v) To Federal, State, and local public and private agencies providing benefits, to be used solely in making determinations of eligibility for benefits pursuant to 8 U.S.C. 1641(c);

(vi) After a petition for U nonimmigrant status has been denied in a final decision;

(vii) To the chairmen and ranking members of the Committee on the Judiciary of the Senate or the Committee on the Judiciary of the House of Representatives, for the exercise of congressional oversight authority, provided the disclosure relates to information about a closed case and is made in a manner that protects the confidentiality of the information and omits personally identifying information (including locational information about individuals);

(viii) With prior written consent from the petitioner or derivative family members, to nonprofit, nongovernmental victims' service providers for the sole purpose of assisting the victim in obtaining victim services from programs with expertise working with immigrant victims; or

(ix) To federal prosecutors to comply with constitutional obligations to provide statements by witnesses and certain other documents to defendants in pending federal criminal proceedings.

(2) Agencies receiving information under this section, whether governmental or non-governmental, are bound by the confidentiality provisions and other restrictions set out in 8 U.S.C. 1367.

(3) Officials of the Department of Homeland Security are prohibited from making adverse determinations of admissibility or deportability based on information obtained solely from the perpetrator of substantial physical or mental abuse and the criminal activity.

(f) *Admission of qualifying family members*—(1) *Eligibility.* An alien who has petitioned for or has been granted U–1 nonimmigrant status (*i.e.*, principal alien) may petition for the admission of a qualifying family member in a U–2 (spouse), U–3 (child), U–4 (parent of a U–1 alien who is a child under 21 years of age), or U–5 (unmarried sibling under the age of 18) derivative status, if accompanying or following to join such principal alien. A qualifying family member who committed the qualifying criminal activity in a family violence or trafficking context which established the principal alien's eligibility for U nonimmigrant status shall not be granted U–2, U–3, U–4, or U–5 nonimmigrant status. To be eligible for U–2, U–3, U–4, or U–5 nonimmigrant status, it must be demonstrated that:

(i) The alien for whom U–2, U–3, U–4, or U–5 status is being sought is a qualifying family member, as defined in paragraph (a)(10) of this section; and

(ii) The qualifying family member is admissible to the United States.

(2) *Filing procedures.* A petitioner for U–1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting a Form I–918, Supplement A, "Petition for Qualifying Family Member of U–1 Recipient," for each family member either at the same time the petition for U–1 nonimmigrant status is filed, or at a later date. An alien who has been granted U–1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting Form I–918, Supplement A for each family member. All Forms I–918, Supplement A must be accompanied by initial evidence and the required fees specified in the instructions to the form. Forms I–918, Supplement A that are not filed at the same time as Form I–918 but are filed at a later date must be accompanied by a copy of the Form I–918 that was filed by the principal petitioner or a copy of his or her Form I–94 demonstrating proof of U–1 nonimmigrant status, as applicable.

(i) Qualifying family members in pending immigration proceedings. The principal alien of a qualifying family member who is in removal proceedings under section 240 of the Act, 8 U.S.C. 1229a, or in exclusion or deportation proceedings initiated under former sections 236 or 242 of the Act, 8 U.S.C. 1226 and 1252 (as in effect prior to April 1, 1997), and who is seeking U nonimmigrant status, must file a Form I–918, Supplement A directly with USCIS. ICE counsel may agree to file, at the request of the qualifying family member, a joint motion to terminate proceedings without prejudice with the immigration judge or Board of Immigration Appeals, whichever is appropriate, while the petition for U nonimmigrant status is being adjudicated by USCIS.

(ii) Qualifying family members with final orders of removal, deportation, or exclusion. An alien who is the subject

of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U–2, U–3, U–4, or U–5 nonimmigrant status directly with USCIS. The filing of a petition for U–2, U–3, U–4, or U–5 nonimmigrant status has no effect on ICE's authority to execute a final order, although the alien may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6(a). If the alien is in detention pending execution of the final order, the time during which a stay is in effect will extend the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about the alien's removal.

(3) *Initial evidence.* Form I–918, Supplement A, must include the following initial evidence:

(i) Evidence demonstrating the relationship of a qualifying family member, as provided in paragraph (f)(4) of this section;

(ii) If the qualifying family member is inadmissible, Form I–192, ''Application for Advance Permission to Enter as a Non-Immigrant,'' in accordance with 8 CFR 212.17.

(4) *Relationship.* Except as set forth in paragraphs (f)(4)(i) and (ii) of this section, the relationship between the U–1 principal alien and the qualifying family member must exist at the time Form I–918 was filed, and the relationship must continue to exist at the time Form I–918, Supplement A is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States.

(i) If the U–1 principal alien proves that he or she has become the parent of a child after Form I–918 was filed, the child shall be eligible to accompany or follow to join the U–1 principal alien.

(ii) If the principal alien was under 21 years of age at the time he or she filed Form I–918, and filed Form I–918, Supplement A for an unmarried sibling under the age of 18, USCIS will continue to consider such sibling as a qualifying family member for purposes of U nonimmigrant status even if the principal alien is no longer under 21 years of age at the time of adjudication, and even if the sibling is no longer under 18 years of age at the time of adjudication.

(5) *Biometric capture and evidentiary standards.* The provisions for biometric capture and evidentiary standards in paragraphs (c)(3) and (c)(4) of this section also are applicable to petitions for qualifying family members.

(6) *Decision.* USCIS will issue a written decision approving or denying Form I–918, Supplement A and send notice of this decision to the U–1 principal petitioner. USCIS will include

in a decision approving Form I–918 a list of nongovernmental organizations to which the qualifying family member can refer regarding his or her options while in the United States and available resources. For a qualifying family member who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of Form I–918, Supplement A. A qualifying family member who is subject to an order of exclusion, deportation, or removal issued by an immigration judge or the Board may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23.

(i) *Approvals for qualifying family members within the United States.* When USCIS approves a Form I–918, Supplement A for a qualifying family member who is within the United States, it will concurrently grant that alien U–2, U–3, U–4, or U–5 nonimmigrant status. USCIS will notify the principal of such approval on Form I–797, ''Notice of Action,'' with Form I–94, ''Arrival-Departure Record,'' indicating U–2, U–3, U–4, or U–5 nonimmigrant status. Aliens who were previously granted U interim relief as defined in paragraph (a)(13) of this section will be accorded U nonimmigrant status as of the date that the request for U interim relief was approved. Aliens who are granted U–2, U–3, U–4, or U–5 nonimmigrant status are not subject to an annual numerical limit. USCIS may not approve Form I–918, Supplement A unless it has approved the principal alien's Form I–918.

(ii) *Approvals for qualifying family members outside the United States.* When USCIS approves Form I–918, Supplement A for a qualifying family member who is outside the United States, USCIS will notify the principal alien of such approval on Form I–797. USCIS will forward the approved Form I–918, Supplement A to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the qualifying family member is located, or, for a visa exempt alien, to the appropriate port of entry.

(iii) *Denial of the Form I–918, Supplement A.* In accordance with 8 CFR 103.3(a)(1), USCIS will provide written notification of the reasons for the denial. The principal alien may

appeal the denial of Form I–918, Supplement A to the Administrative Appeals Office in accordance with the provisions of 8 CFR 103.3. Upon USCIS' final denial of Form I–918, Supplement A for a qualifying family member who was in removal proceedings that were terminated pursuant to 8 CFR 214.14(f)(2)(i), DHS may file a new Notice to Appear (see section 239 of the INA, 8 U.S.C. 1229) to place the individual in proceedings again. For qualifying family members who are subject to an order of removal, deportation, or exclusion and whose order has been stayed, USCIS' denial of the petition will result in the stay being lifted automatically as of the date the denial becomes administratively final.

(7) *Employment authorization.* An alien granted U–2, U–3, U–4, or U–5 nonimmigrant status is employment authorized incident to status. To obtain an Employment Authorization Document (EAD), such alien must file Form I–765, ''Application for Employment Authorization,'' with the appropriate fee or a request for a fee waiver, in accordance with the instructions to the form. For qualifying family members within the United States, the Form I–765 may be filed concurrently with Form I–918, Supplement A, or at any time thereafter. For qualifying family members who are outside the United States, Form I–765 only may be filed after admission to the United States in U nonimmigrant status.

(g) *Duration of U nonimmigrant status*—(1) *In general.* U nonimmigrant status may be approved for a period not to exceed 4 years in the aggregate. A qualifying family member granted U–2, U–3, U–4, and U–5 nonimmigrant status will be approved for an initial period that does not exceed the expiration date of the initial period approved for the principal alien.

(2) *Extension of status.* (i) Where a U nonimmigrant's approved period of stay on Form I–94 is less than 4 years, he or she may file Form I–539, ''Application to Extend/Change Nonimmigrant Status,'' to request an extension of U nonimmigrant status for an aggregate period not to exceed 4 years. USCIS may approve an extension of status for a qualifying family member beyond the date when the U–1 nonimmigrant's status expires when the qualifying family member is unable to enter the United States timely due to delays in consular processing, and an extension of status is necessary to ensure that the qualifying family member is able to attain at least 3 years in nonimmigrant status for purposes of adjusting status under section 245(m) of the Act, 8 U.S.C. 1255.

(ii) Extensions of U nonimmigrant status beyond the 4-year period are available upon attestation by the certifying official that the alien's presence in the United States continues to be necessary to assist in the investigation or prosecution of qualifying criminal activity. In order to obtain an extension of U nonimmigrant status based upon such an attestation, the alien must file Form I–539 and a newly executed Form I–918, Supplement B in accordance with the instructions to Form I–539.

(h) *Revocation of approved petitions for U nonimmigrant status*—(1) *Automatic revocation.* An approved petition for U–1 nonimmigrant status will be revoked automatically if, pursuant to 8 CFR 214.14(d)(1), the beneficiary of the approved petition notifies the USCIS office that approved the petition that he or she will not apply for admission to the United States and, therefore, the petition will not be used.

(2) *Revocation on notice.* (i) USCIS may revoke an approved petition for U nonimmigrant status following a notice of intent to revoke. USCIS may revoke an approved petition for U nonimmigrant status based on one or more of the following reasons:

(A) The certifying official withdraws the U nonimmigrant status certification referred to in 8 CFR 214.14(c)(2)(i) or disavows the contents in writing;

(B) Approval of the petition was in error;

(C) Where there was fraud in the petition;

(D) In the case of a U–2, U–3, U–4, or U–5 nonimmigrant, the relationship to the principal petitioner has terminated; or

(E) In the case of a U–2, U–3, U–4, or U–5 nonimmigrant, the principal U–1's nonimmigrant status is revoked.

(ii) The notice of intent to revoke must be in writing and contain a statement of the grounds for the revocation and the time period allowed for the U nonimmigrant's rebuttal. The alien may submit evidence in rebuttal within 30 days of the date of the notice. USCIS shall consider all relevant evidence presented in deciding whether to revoke the approved petition for U nonimmigrant status. The determination of what is relevant evidence and the weight to be given to that evidence will be within the sole discretion of USCIS. If USCIS revokes approval of a petition and thereby terminates U nonimmigrant status, USCIS will provide the alien with a written notice of revocation that explains the specific reasons for the revocation.

(3) *Appeal of a revocation of approval.* A revocation on notice may be

appealed to the Administrative Appeals Office in accordance with 8 CFR 103.3 within 30 days after the date of the notice of revocation. Automatic revocations may not be appealed.

(4) *Effects of revocation of approval.* Revocation of a principal alien's approved Form I–918 will result in termination of status for the principal alien, as well as in the denial of any pending Form I–918, Supplement A filed for qualifying family members seeking U–2, U–3, U–4, or U–5 nonimmigrant status. Revocation of a qualifying family member's approved Form I–918, Supplement A will result in termination of status for the qualifying family member. Revocation of an approved Form I–918 or Form I–918, Supplement A also revokes any waiver of inadmissibility granted in conjunction with such petition.

(i) *Removal proceedings.* Nothing in this section prohibits USCIS from instituting removal proceedings under section 240 of the Act, 8 U.S.C. 1229(a), for conduct committed after admission, for conduct or a condition that was not disclosed to USCIS prior to the granting of U nonimmigrant status, for misrepresentations of material facts in Form I–918 or Form I–918, Supplement A and supporting documentation, or after revocation of U nonimmigrant status.

## PART 248—CHANGE OF NONIMMIGRANT CLASSIFICATION

■ 9. The authority citation for section 248 continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1103, 1184, 1258; 8 CFR part 2.

■ 10. Section 248.1 is amended by revising paragraph (a) to read as follows:

### § 248.1   Eligibility.

(a) *General.* Except for those classes enumerated in § 248.2, any alien lawfully admitted to the United States as a nonimmigrant, including an alien who acquired such status pursuant to section 247 of the Act, 8 U.S.C. 1257, who is continuing to maintain his or her nonimmigrant status, may apply to have his or her nonimmigrant classification changed to any nonimmigrant classification other than that of a spouse or fianc(e), or the child of such alien, under section 101(a)(15)(K) of the Act, 8 U.S.C. 1101(a)(15)(K), or as an alien in transit under section 101(a)(15)(C) of the Act, 8 U.S.C. 1101(a)(15)(C). An alien defined by section 101(a)(15)(V), or 101(a)(15)(U) of the Act, 8 U.S.C. 1101(a)(15)(V) or 8 U.S.C. 1101(a)(15)(U), may be accorded nonimmigrant status in the United States by following the procedures set

forth respectively in § 214.15(f) or § 214.14 of this chapter.

* * * * *

■ 11. Section 248.2 is amended by:
■ a. Revising the introductory text;
■ b. Redesignating the revised introductory text through paragraph (f) as paragraphs (a) introductory text through (a)(6); and by
■ c. Adding a new paragraph (b) to read as follows:

### § 248.2   Ineligibile Classes.

(a) Except as described in paragraph (b) of this section, the following categories of aliens are not eligible to change their nonimmigrant status under section 248 of the Act, 8 U.S.C. 1258:

* * * * *

(b) The prohibition against a change of nonimmigrant status for the categories of aliens described in paragraphs (a)(1) through (6) of this section is inapplicable to aliens applying for a change of nonimmigrant status to that of a nonimmigrant under section 101(a)(15)(U) of the Act, 8 U.S.C. 1101(a)(15)(U).

## PART 274a—CONTROL OF EMPLOYMENT OF ALIENS

■ 12. The authority citation for section 274a continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1103, 1324a; 8 CFR part 2.

■ 13. Section 274a.12 is amended by:
■ a. Revising paragraph (a) introductory text;
■ b. Amending paragraph (a)(14) by removing the word ''or'' at the end of the paragraph;
■ c. Removing the period at the end of paragraph (a)(16) and inserting a semicolon in its place;
■ d. Adding and reserving paragraphs (a)(17) and (18); and by
■ e. Adding new paragraphs (a)(19) and (20).

The revision and additions read as follows:

### § 274a.12   Classes of aliens authorized to accept employment.

(a) *Aliens authorized employment incident to status.* Pursuant to the statutory or regulatory reference cited, the following classes of aliens are authorized to be employed in the United States without restrictions as to location or type of employment as a condition of their admission or subsequent change to one of the indicated classes. Any alien who is within a class of aliens described in paragraphs (a)(3), (a)(4), (a)(6)–(a)(8), (a)(10)–(a)(15), or (a)(20) of this section, and who seeks to be employed in the United States, must apply to U.S.

**53042**  **Federal Register** / Vol. 72, No. 179 / Monday, September 17, 2007 / Rules and Regulations

Citizenship and Immigration Services (USCIS) for a document evidencing such employment authorization. USCIS may, in its discretion, determine the validity period assigned to any document issued evidencing an alien's authorization to work in the United States.

*    *    *    *    *

(17) [Reserved]

(18) [Reserved]

(19) Any alien in U–1 nonimmigrant status, pursuant to 8 CFR 214.14, for the period of time in that status, as evidenced by an employment authorization document issued by USCIS to the alien.

(20) Any alien in U–2, U–3, U–4, or U–5 nonimmigrant status, pursuant to 8 CFR 214.14, for the period of time in that status, as evidenced by an employment authorization document issued by USCIS to the alien.

*    *    *    *    *

■ 14. Section 274a.13 is amended by revising paragraph (a) introductory text to read as follows:

**§ 274a.13   Application for employment authorization.**

(a) *General.* Aliens authorized to be employed under section 274a.12(a)(3), (a)(4), (a)(6)–(8), (a)(10)–(15), and (a)(20) must file an Application for Employment Authorization (Form I–

765) in order to obtain documentation evidencing this fact.

*    *    *    *    *

**PART 299—IMMIGRATION FORMS**

■ 15. The authority citation for part 299 continues to read as follows:

**Authority:** 8 U.S.C. 1101 and note, 1103; 8 CFR part 2.

■ 16. Section 299.1 is amended in the table by adding the entries for Forms ''I–918,'' ''I–918 Supplement A,'' and ''I–918 Supplement B'' in the proper alpha/numeric sequence.

**§ 299.1   Prescribed forms.**

*    *    *    *    *

| Form No. | Edition date | Title |
|---|---|---|
| * | * | * |
| I–918 ................................................... | 8/15/07 | Petition for U Nonimmigrant Status. |
| I–918 Supplement A ........................... | 8/15/07 | Petition for Qualifying Family Member of U–1 Recipient. |
| I–918 Supplement B ........................... | 8/15/07 | U Nonimmigrant Status Certification. |
| * | * | * |

■ 17. Section 299.5 is amended in the table by adding the entries for Forms ''I–918,'' ''I–918 Supplement A,'' and ''I–918 Supplement B'' in the proper alpha/numeric sequence.

**§ 299.5   Display of control numbers.**

*    *    *    *    *

| Form No. | Form title | Currently assigned OMB control No. |
|---|---|---|
| * | * | * |
| I–918 ................................................... | Petition for U Nonimmigrant Status .................................... | 1615–0104 |
| I–918 Supplement A ........................... | Petition for Qualifying Family Member of U–1 Recipient ...................... | 1615–0104 |
| I–918 Supplement B ........................... | U Nonimmigrant Status Certification ................................... | 1615–0104 |
| * | * | * |

Dated: September 4, 2007.

**Michael Chertoff,**

*Secretary.*

[FR Doc. E7–17807 Filed 9–14–07; 8:45 am]

**BILLING CODE 4410–10–P**



**Thursday,**
**January 31, 2002**

**Part II**

# Department of Justice

**Immigration and Naturalization Service**

**8 CFR Part 103, et al.**
**New Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status; Final Rule**

**4784**      **Federal Register** / Vol. 67, No. 21 / Thursday, January 31, 2002 / Rules and Regulations

## DEPARTMENT OF JUSTICE

### Immigration and Naturalization Service

### 8 CFR Parts 103, 212, 214, 274a and 299

### INS No. 2132–01; AG Order No. 2554–2002

### RIN 1115–AG19

### New Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status

**AGENCY:** Immigration and Naturalization Service, Department of Justice.

**ACTION:** Interim rule with request for comments.

**SUMMARY:** This rule is intended to assist all concerned Federal officials, including, but not limited to, officials of the Immigration and Naturalization Service (Service), and eligible applicants, in implementing provisions of section 107(e) of the Trafficking Victims Protection Act of 2000 (TVPA). The T nonimmigrant status is available to eligible victims of severe forms of trafficking in persons who have complied with any reasonable request for assistance in the investigation or prosecution of acts of trafficking in persons, and who can demonstrate that they would suffer extreme hardship involving unusual and severe harm if they were removed from the United States. This rule addresses: the essential elements that must be demonstrated for classification as a T nonimmigrant alien; the procedures to be followed by applicants to apply for T nonimmigrant status; and evidentiary guidance to assist in the application process. The Service will promulgate separate regulations concerning the process for adjusting from T nonimmigrant status to lawful permanent resident status.

**DATES:** *Effective date*: This interim rule is effective March 4, 2002.

*Comment date*: Written comments must be submitted on or before April 1, 2002.

**ADDRESSES:** Please submit written comments to the Immigration and Naturalization Service, Policy Directive and Instructions Branch, Attention: TVPA Implementation Team, 425 I Street, NW., Room 4034, Washington, DC 20536 by mail or email your comments to the VTVPA Implementation Team at *insregs@usdoj.gov*. When submitting comments electronically, please include "INS No. 2132–01" in the subject box.

To ensure proper handling, please reference INS No. 2132–01 on your correspondence or e-mail. Comments

will be available for public inspection at the above address by calling (202) 514–3048 to arrange for an appointment.

**FOR FURTHER INFORMATION CONTACT:** Anne Veysey, Office of Programs, Immigration and Naturalization Service, 425 I Street, NW., Room 1000, Washington, DC 20536, telephone: (202) 514–3479.

**SUPPLEMENTARY INFORMATION:**

### Background and Legislative Authority

The Victims of Trafficking and Violence Protection Act of 2000 (VTVPA), Pub. L. 106–386, was signed into law on October 28, 2000. The VTVPA is divided into three sections: Division A, the Trafficking Victims Protection Act (TVPA); Division B, the Violence Against Women Act of 2000 (VAWA); and Division C, Miscellaneous Provisions. In passing this legislation, Congress intended to create a broad range of tools necessary for the Federal government to address the particular concerns associated with the problem of trafficking in persons.

In the TVPA, Congress found that "(a)t least 700,000 persons annually, primarily women and children, are trafficked within or across international borders. Approximately 50,000 women and children are trafficked into the United States each year." Section 102(b)(1), TVPA. Congress further found that "(t)raffickers often transport victims from their home communities to unfamiliar destinations, including foreign countries away from family and friends, religious institutions, and other sources of protection and support(.)" *Id.* at section 102(b)(5). In trafficking in persons situations, perpetrators often target individuals who are likely to be particularly vulnerable and unfamiliar with their surroundings. Congress's intentions in passing the TVPA were to further the humanitarian interests of the United States and to strengthen the ability of government officials to investigate and prosecute trafficking in persons crimes by providing temporary immigration benefits to victims.

In the TVPA, Congress provided a variety of means to combat trafficking in persons by ensuring just and effective punishment of traffickers and by protecting the victims of trafficking in persons. These means include providing immigration benefits to eligible aliens who have been victims of severe forms of trafficking in persons and, in the case of persons aged 15 and older, who comply with any reasonable request to assist law enforcement agencies in the investigation and prosecution of their traffickers. The TVPA addresses the effect of severe forms of trafficking in

persons on victims, including many who may not have legal status and are reluctant to cooperate.

In order to develop a comprehensive Federal approach to identifying victims of severe forms of trafficking in persons, to provide them with benefits and services, and to enhance the Department of Justice's ability to prosecute traffickers and prevent trafficking in persons in the first place, the Service conducted a series of stakeholders' meetings with representatives from key Federal agencies; national, state, and local law enforcement associations; non-profit, community-based victim rights organizations; and other groups. Suggestions from these stakeholders were used in the drafting of this regulation. Additionally, the Department established an internal working group to oversee implementation of the new law.

In a variety of ways, the Department has attempted to protect potential victims of severe forms of trafficking in persons by encouraging witnesses to cooperate in the investigation and prosecution of traffickers. Through vigorous investigation and prosecution of severe forms of trafficking in persons, the Department hopes to dismantle trafficking in persons rings and dramatically reduce the number of trafficking victims.

The U.S. Government has already taken a number of actions to implement section 107 of the TVPA. A key initial response under the TVPA was to improve the ability of law enforcement agencies to identify victims of severe forms of trafficking in persons and to provide appropriate information and assistance to them pursuant to section 107(c) of the TVPA. The Attorney General and the Secretary of State already have issued regulations implementing the requirements for assistance to victims of severe forms of trafficking in persons under section 107(c). See 66 FR 38514 (July 24, 2001) (codified at 28 CFR part 1100).

Section 107(c) permits the Service, in cooperation with other law enforcement agencies, to arrange for the "continued presence" of aliens who have been the victims of severe forms of trafficking in persons and are potential witnesses to that trafficking, so that they will be available to assist with the investigation and prosecution of the traffickers. As provided in 28 CFR 1100.35, the Service will arrange for "continued presence" of such victims, at the request of appropriate law enforcement agencies, during the time that their presence in the United States is needed for law enforcement purposes. In most of those cases, the Service (whether through

**4790**     **Federal Register** / Vol. 67, No. 21 / Thursday, January 31, 2002 / Rules and Regulations

processing. As part of the forthcoming final rulemaking, the Service will consider whether any systemic issues have arisen regarding the timeliness of background checks related to the administration of this program, and consider whether any improvements need to be made by the Service to ensure timely determinations of whether an applicant has submitted a *bona fide* application.

*What Are the Stages Involved With the Application Process for T Nonimmigrant Status?*

There are several stages involved in the T nonimmigrant status application process: (1) The submission of an application for T–1 nonimmigrant status (which may be accompanied by applications for derivative T nonimmigrant status for immediate family members); (2) the Service's determination of whether an application for T nonimmigrant status is *bona fide*; and (3) the adjudication of the application for T nonimmigrant status. The Service will approve an application for T–1 nonimmigrant status when room is available under the cap for each fiscal year, or place the alien on the waiting list (which will be carried over to subsequent years) for the grant of a T–1 nonimmigrant status application if the cap has been reached. The cap is not affected by applications for derivative T nonimmigrant status.

*Submission of an application for T–1 nonimmigrant status.* In the first stage of the process, the alien submits an application for T–1 nonimmigrant status. At this stage, the victim of a severe form of trafficking in persons provides evidence sufficient to demonstrate each required element necessary for the Service to issue T–1 nonimmigrant status.

A complete application includes Form I–914, *Application for the T Nonimmigrant Status*; three identical color photographs; applicable fees or applications for fee waivers; and all evidence to fully support his or her claims to the four eligibility elements. An application also may include Supplement A, *Supplemental Application of Immediate Family Members for T–1 Recipient*, and Supplement B, *Declaration of a Law Enforcement Officer for Victim of Trafficking in Persons* of Form I–914, *Application for T Nonimmigrant Status*, and Form I–192, *Application for Advance Permission to Enter as Nonimmigrant*, for a waiver of a ground of inadmissibility, if necessary.

An Employment Authorization Document will be generated from the I–914 information. The applicant does not

need to file Form I–765, *Application for Employment Authorization*, with the application package.

*Determination of a bona fide application for T nonimmigrant status.* The Service will review the submitted information to ensure that the application is complete and ready for adjudication, which includes that the fingerprinting and criminal background checks are completed and that the submitted information presents *prima facie* evidence for each eligibility requirement. This determination of whether there is *prima facie* evidence will be made for T–1 applications, according to the eligibility standards for that status. If the application is sufficient, the application will be determined to be a *bona fide* application for T–1 nonimmigrant status. However, if the alien is inadmissible, the Service will not consider the application to be *bona fide* unless the ground of inadmissibility is one under the circumstances described in section 212(d)(13) of the INA, as added by section 107(e) of the TVPA, or unless the Service already has granted a waiver of inadmissibility with respect to any other ground. All waivers are discretionary and require a request for a waiver. Under section 212(d)(13), however, an application can be *bona fide* before the waiver is granted. This is not the case under other grounds of inadmissibility.

The Service will not consider an application that is incomplete to be *bona fide* until the applicant submits the necessary additional evidence to establish *prima facie* eligibility for each required element of the T–1 nonimmigrant status. The Service will notify the applicant regarding the additional evidence that needs to be submitted in those circumstances, as provided in 8 CFR 103.2(b)(8).

Once an application is determined to be a *bona fide* application for T nonimmigrant status, the Service will provide written confirmation to the applicant. The Service will use various means to prevent the removal of individuals who have filed *bona fide* applications, such as deferred action, parole, and stay of removal, until the Service issues a final decision on the application. (Some victims of a severe form of trafficking in persons, however, already may have been granted "continued presence" as provided in section 107(c) of the TVPA and the regulation implementing it. See 66 FR 38514 (July 24, 2001) (codified at 28 CFR 1100.35).) Individuals granted deferred action, parole, or stay of removal may be granted employment authorization by filing Form I–765,

*Application for Employment Authorization*, in accordance with Service policies and procedures.

Once an application for T–1 nonimmigrant status is determined to be *bona fide* by the Service, an applicant age 18 or older may apply to HHS to be certified to receive certain benefits and services to the same extent as refugees, as provided in section 107(b) of the TVPA. In order for the victim of a severe form of trafficking in persons to be eligible, HHS must certify him or her to receive such benefits and services, unless the victim is under the age of 18. The Service notes that victims under age 18 do not need to be certified, nor do they need to submit a *bona fide* application for T nonimmigrant status, in order to receive such benefits and services. To be considered a victim and therefore eligible for these benefits and services, those under 18 must be determined to have been subjected to a severe form of trafficking in persons. The Service also notes that individuals who have received "continued presence" under section 107(c) of the TVPA may apply to HHS to be certified.

*Adjudication of applications for T nonimmigrant status.* The Service has centralized the adjudication process at its Vermont Service Center. This centralization will allow adjudicators to develop expertise in handling these cases and provide for uniformity in the adjudication of these applications. If the Service finds that the alien has satisfied the requirements for T nonimmigrant status, it will either grant T nonimmigrant status or (in the case of T–1 applicants who are subject to the annual cap) place the alien on a waiting list, as discussed below.

In any case in which the Service denies an application for T nonimmigrant status, the applicant can appeal to the Administrative Appeals Office (AAO) under procedures outlined in 8 CFR 103.3.

*Approval of T–1 nonimmigrant status or placement on the waiting list for the grant of T–1 nonimmigrant status.* If the Service determines that there are sufficient grounds to grant T–1 nonimmigrant status, the Service will send a notice of approval to the applicant only if a T–1 nonimmigrant status number is available. When the Service grants an application for T–1 status, it will simultaneously grant employment authorization (if not already obtained).

In the event a number is not available, the Service will send the applicant a notice of placement on the waiting list.

# Memorandum



| Subject | | Date |
|---|---|---|
| Supplemental Guidance on Battered Alien<br>Self-Petitioning Process and Related Issues | | MAY – 6 1997 |

| To | From |
|---|---|
| Regional Directors<br>District Directors<br>Officers-in-Charge<br>Service Center Directors | Office of Programs |

This memorandum outlines changes in the handling of I-360 self-petitions for immigrant status filed by battered spouses and children of U.S. citizens and permanent residents aliens and addresses related issues. It should be read as a supplement to the guidance issued by the Office of Programs on April 16, 1996.

## Background

The issue of domestic violence and its potential impact on spouses and children who would normally be entitled to immigration benefits under the I-130 petitioning process was first addressed by Congress in the Violence Against Women Act ("VAWA") which was enacted as part of the Violent Crime Control Act of 1994 ("Crime Bill"). The VAWA contains provisions to limit the ability of an abusive U.S. citizen ("USC") or lawful permanent resident ("LPR") to utilize the spouse' or child's immigration status in order to perpetuate the abuse. The Service published an interim rule on March 26, 1996 (59 FR 13061-13079) establishing the procedures for qualified abused spouses and children to self-petition for immigrant classification using the Form I-360. This rule was accompanied by extensive field instructions in the Office of Programs' memorandum of April 16, 1996.

In the autumn of 1996, Congress enacted various new provisions relating to battered aliens, in both the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA" or "the welfare law") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA" or "the immigration bill"). <u>None of these new provisions directly affect the legal standards applicable to adjudication of I-360 applications.</u> The new provisions do, however, provide additional benefits and protections for battered aliens, and have created the need for INS to restructure how we handle this category of very sensitive cases. This memorandum outlines those changes, and instructs field offices on the handling of pending cases and new cases received.

142

Guidance on Battered Alien Issues
Page 2

## Centralization at the Vermont Service Center

On April 7, 1997, the Service published a notice in the Federal Register at 16607-08 establishing the Vermont Service Center as the direct mail filing location for all Forms I-360 filed by self-petitioning battered spouses and children (Attachment A). This centralization was necessitated by the new welfare provisions which make certain battered aliens -- including self-petitioners and others -- eligible for public benefits. In addition to adjudicating I-360 self-petitions, the Vermont Service Center will serve as a central "clearinghouse" for inquiries from federal, state and local benefit-granting agencies regarding pending or recently-adjudicated cases, as discussed in more detail in the Verification section, below. Finally, as an alien may be eligible for public benefits not only upon the approval of the relevant immigrant status, but also upon having filed a petition which makes a prima facie case for such status, the Vermont Service Center will also begin making prima facie determinations pursuant to an interim rule expected to be published in the Federal Register prior to June 1, 1997.

While these are sensitive cases which require special handling, the move to centralized filing is expected to have only minimal impact on caseloads in the district offices. Since the beginning of the fiscal year, according to G-22 statistics, fewer than 500 cases have been filed Servicewide. Centralization allows the Service to have a small corps of officers well-versed in the complexity and sensitivity of VAWA adjudications, and will also allow for better monitoring of the caseload and any fraud trends.

Although the direct mail notice allows self-petitioners to continue to file locally until May 7, INS field offices and the other service centers are encouraged to forward to the Vermont Service Center those I-360s for which review/adjudication has not been initiated. All I-360 self-petitions received on or after May 7 shall be forwarded to the Vermont Service Center, but the 30 day transition period requires that no office refuse to receive an I-360 submitted before June 6, 1997. Immediate relatives, who were previously able to file concurrent I-360 self-petitions and I-485 adjustment applications, should be advised to retain their I-485s pending the Vermont Service Center's adjudication of the I-360 self-petition. The battered alien I-360s are to be mailed to:

> INS Vermont Service Center
> Attn: Family Services Product Line (VAWA)
> 75 Lower Weldon Street
> St. Albans, VT  05479-0001

As inquiries from benefit-granting agencies can be expected in many cases, offices are encouraged to expedite handling of all pending cases which they do not forward to the Vermont Service Center. Nothing in this move to centralize direct mail filing changes the ability of the Vermont Service Center to transfer I-360s to district offices when an interview or investigation of suspected fraud is merited.

Guidance on Battered Alien Issues
Page 3

## Deferred Action and Employment Authorization

In the April 16 memorandum, INS offices were encouraged to utilize voluntary departure and deferred action in order to provide approved VAWA self-petitioners with employment authorization pending the availability of a visa number.  Since that time, in IIRIRA, Congress has limited grants of voluntary departure to no more than 120 days, and INS regulations no longer allow for work authorization during any period of voluntary departure.

Starting June 1, when the Vermont Service Center approves a VAWA self-petition, it will then also assess, on a case-by-case basis, whether to place the alien in deferred action status pursuant to new deferred action guidelines in the Interim Enforcement Procedures (a forthcoming document which will be available on the 96Act bulletin board, as well as in printed versions).  By their nature, VAWA cases generally possess factors that warrant consideration for deferred action.  In an unusual case, there may be factors present that would militate against deferred action;  cases should therefore receive individual scrutiny.  Although the Vermont Service Center is not required to obtain Regional Director approval for deferred action, it will report all grants of deferred action to the Eastern Regional Office for statistical and tracking purposes.  In addition, a process for periodic review of the deferred action decisions made by the Vermont Service Center is planned.

If the alien is placed in deferred action, the Vermont Service Center will notify the alien that he or she may submit an I-765, Application for Employment Authorization.   After the initial deferred action decision and issuance of a one-year employment authorization document, the Vermont Service Center will hold these files and review the deferred action decision upon each application for extension of work authorization.  When the Vermont Service Center is notified by the National Visa Center or by an INS district office that the alien is seeking a visa abroad or has filed an adjustment application, the Vermont Service Center will forward the file to the appropriate office.

In cases where the I-360 was approved prior to April 1, many aliens may have current grants of voluntary departure.  Upon expiration of voluntary departure, and for other cases adjudicated before June 1, district offices are strongly encouraged to utilize deferred action to provide work authorization pending the availability of a visa.  As described in more detail below, battered aliens are now eligible for certain public benefits, which are often necessary for the victim to be able to leave the abusive situation.  To deny such aliens work authorization when they are able to obtain public assistance is counter to the spirit of welfare reform.   Moreover, for many individuals, the ability to work is necessary in order to save the funds necessary to pay for the adjustment application and the penalty fee.  As it has already been determined that these aliens face extreme hardship if returned to the home country and as removal of battered aliens is not an INS priority, the exercise of discretion to place these cases in deferred action status will almost always be appropriate.

Guidance on Battered Alien Issues
Page 4

## Non-Disclosure Provisions and Other Limitations in IIRIRA § 384

Section 384 of IIRIRA strictly prohibits the release of any information relating to a VAWA self-petitioner, and also precludes any INS officer from making an adverse determination of admissibility or deportability based solely on information furnished by an abusive relative. Any violation of this section can subject an INS officer to disciplinary action and a fine of up to $5,000. This provision is discussed in more detail in IIRIRA Implementation Memo #96act.036 (Attachment B).

## Verification of Status for Benefit-Granting Agencies

Section 501 of IIRIRA amends the welfare law to provide that certain battered aliens are "qualified aliens" for purposes of eligibility for some public benefits. This includes not only those aliens who can self-petition for immigrant status under the VAWA provisions, but also other aliens who have been abused by a member of their household. In cases other than VAWA self-petitioning cases, it is the benefit-granting agency, not the INS, which will assess the claims of abuse. Benefit providers, however, will request that INS verify the alien's status or the fact that a petition is pending on behalf of the alien. Detailed procedures for verification of these and other categories of qualified aliens under welfare law are being provided to benefit-granting agencies by the Department of Justice in a document entitled "Interim Guidance on Verification," which is expected to be published in the Federal Register later this month. An INS field directive designed for immigration status verifiers will be issued in conjunction with publication of the Interim Guidance on Verification.

Although some verification inquiries relating to battered aliens will be handled through the normal status verification channels, many of the inquiries will fall outside the type of inquiries which status verifiers typically handle. For example, because of the dynamics of abusive relationships, the abuse victim will not always have access to approval notices or other documentation relating to their cases. Moreover, because aliens can be eligible for public benefits upon filing a petition which makes a prima facie case for status, benefit providers will sometimes be seeking information on pending cases, including a determination as to whether the petition makes a prima facie case for eligibility for the status sought.

The Vermont Service Center will serve as the "clearinghouse" for these unusual types of inquiries, which will be submitted by fax using an inquiry format patterned on the sample at Attachment C. It is anticipated that the Vermont Service Center will be able to handle the vast majority of inquiries, which should pertain to cases pending there or in one of the other service centers. For those inquiries which pertain to cases pending in district offices or sub-offices, the Vermont Service Center will forward the inquiries by fax to the attention of a designated Service

Guidance on Battered Alien Issues
Page 5

Center liaison officer in each district or sub-office.   Each district and sub-office should complete
the liaison designation form at Attachment D and fax to Lisa Batey at 202/514-9262 prior to May
20 (the list of designees will be shared with INS regional offices and all four Service Centers).
The designated liaison should ensure that a response is provided to the requesting agency, with a
copy to the Vermont Service Center, within five working days.   Information on pending or
completed cases should not be given over the telephone, but rather should be sent via facsimile.

As you will note, the sample inquiry format includes a limited waiver of the non-disclosure
provisions of IIRIRA § 384.   At present, such a waiver is necessary before INS can provide any
information relating to a VAWA self-petitioner, even to another governmental entity for purposes
of determining eligibility for public benefits.  Because of IIRIRA § 642, no waiver is necessary in
other categories of cases, such as where the alien seeking benefits is the beneficiary of a spousal
I-130 petition, but has suffered abuse at the hands of another household member.   If there is any
doubt as to whether a waiver is required, the officer should seek guidance from his or her district
counsel.  If there are waiver questions which cannot be resolved locally, please contact Lisa Batey
of the Headquarters Office of Programs, at 202/514-9089.

### Providing Information on Filing of I-360 Self-Petitions

Some battered aliens who are eligible to self-petition have chosen not to do so, instead
relying upon the I-130 petition filed by their abuser.    This not only allows the abuser to continue
to control the spouse's or child's immigration status by withdrawing the petition, but also places a
battered spouse at risk should the abuser subsequently obtain a divorce before the spouse is able
to adjust status.  For these and other reasons, such as easier determinations as to welfare eligibility
and employment authorization, an immigration officer who deals with a battered alien should
inform that alien about the process for self-petitioning, despite the fact that an I-130 petition is
still pending on his or her behalf.  The Interim Guidance on Verification similarly urges benefit
agency caseworkers to give such aliens the number for the INS Forms Line [1-800-870-3676] and
for the National Domestic Violence Hotline [1-800-799-7233] for assistance in preparing self-
petitions.

### Making Prima Facie Determinations

As noted above, Section 501 of IIRIRA includes in the definition of "qualified alien" for
public benefit purposes those aliens who have filed a self-petition, or are the beneficiary of a
spousal or parental petition, which sets forth a prima facie case for immigrant status under a
variety of provisions.  Specifically, those with approved petitions or pending petitions which make
a prima facie case for status under any of the following Immigration and Nationality Act ("INA")
provisions are included:

Guidance on Battered Alien Issues
Page 6

- ◆ spouse or child of a USC under 204(a)(1)(A)(i)

- ◆ spouse, child or unmarried son or daughter of an LPR under 204(a)(1)(B)(i)

- ◆ widow(er) of a USC under 204(a)(1)(A)(ii)

- ◆ self-petitioning battered spouse or child of a USC or LPR under 204(a)(1)(A)(iii)-(iv) or 204(a)(1)(B)(ii)-(iii)

In all but the latter category, battery or abuse will not be part of the INS adjudication, but rather will be assessed by the benefit-granting agency pursuant to the Interim Guidance on Verification.

In the case of self-petitioning battered spouses and children, the Vermont Service Center will begin making prima facie determinations no later than June 1, 1997, following publication of an interim rule in the Federal Register. If the self-petition and accompanying documentation are adequate, the self-petitioner will receive a decision or a Notice of Prima Facie Determination ("NPFD") within three weeks of filing. The approval notice or NPFD may be presented to benefit granting agencies as evidence of the applicant's status as a "qualified alien". The NPFD will be valid for 150 days, to allow time for the submission of any supplemental evidence and for adjudication of the self-petition.

In those cases which are not handled by the Vermont Service Center, benefit-granting agencies will be expecting decisions or prima facie determinations within a similar three-week time frame. As the non-VAWA cases are simpler adjudications based purely on family relationship, there are no plans to define what would constitute a prima facie case. Instead, when a benefit-granting agency inquires about a pending case, INS offices should expedite the adjudication of the case in order to minimize the time during which the alien is unable to receive public assistance for which he or she may be eligible.

**<u>Aliens Seeking Issuance of Notices to Appear</u>**

An individual may also be eligible for public benefits if he or she makes a prima facie case for cancellation of removal as a battered spouse or child under INA § 240A(b)(2). INS district offices shall promptly issue a Notice to Appear to any alien who makes a credible request to be placed in proceedings in order to raise a claim for cancellation of removal under section 240A(b)(2). District offices may want to do a search of the CLAIMS system to determine if a self-petition was filed and denied. It is important to note, however, that some individuals who are ineligible for status pursuant to the self-petitioning provisions will be eligible for cancellation (e.g., where the marriage has been terminated). Once proceedings have been initiated, the alien can contact the immigration court to seek a determination that he or she has demonstrated a prima facie case for cancellation of removal.

Guidance on Battered Alien Issues
Page 7

### Other District Office Issues

While centralizing I-360 adjudications was motivated in part by the goal of having a small corps of officers well-trained in domestic violence issues, district adjudications officers will still interact with self-petitioners during the adjustment process.   The nature of domestic violence and the sensitivity needed in dealing with victims are topics to which few INS officers will have had exposure.   District offices are strongly encouraged to identify two or more officers (depending upon the size of the district) to handle all adjustments following from I-360 approvals.  The designated officers should have the experience, discretion and communications skills to be able to balance sensitivity in dealing with true victims with vigilance against fraud, and would ideally also serve as the designated Service Center liaison officer described at pages 4-5, above.

Recognizing the need for more training on complex and subtle domestic violence issues, Headquarters is looking into opportunities to provide informational materials and perhaps training sessions.  In addition, a number of reputable non-profit organizations throughout the country provide training for personnel who work with domestic violence victims, and are willing to share their expertise with INS offices.  Last year, for example, training for San Francisco adjudicators was provided by representatives of the Family Violence Prevention Fund.  The training was well-received by district personnel, and was given at no cost to the district.  Managers interested in obtaining materials or in fostering contacts with local organizations which work with victims of domestic violence should contact either of the persons named below for information about organizations active in their area.

*     *     *     *     *

The Office of Field Operations concurs with this memorandum.  Addressees are strongly encouraged to distribute copies of this memorandum widely, particularly to adjudications and investigations officers.  Questions about this policy or about the interim rule published in the Federal Register may be directed to Lisa Batey, Headquarters Office of Programs, 202/514-9089, or Karen FitzGerald, Headquarters Benefits Division, at 202/305-4904.

Paul W. Virtue
for   Acting Executive Associate Commissioner

Marketing Order Administration Branch within two days of receipt of the exempt lot, that such lot has been received and will be utilized in the exempt outlet.

(c) It is the responsibility of the importer to notify the Marketing Order Administration Branch of any lot of exempt commodity rejected by a receiver, shipped to an alternative exempt receiver, exported, or otherwise disposed of. In such cases, a second ''Importer's Exempt Commodity Form'' must be filed by the importer providing sufficient information to determine ultimate disposition of the exempt lot and such disposition shall be so certified by the final receiver.

(d) All FV–6 forms and other correspondence regarding entry of 8e commodities must be mailed to the Marketing Order Administration Branch, USDA, AMS, P.O. Box 96456, room 2523–S, Washington, D.C. 20090–6456, telephone (202) 720–4607. FV–6 forms submitted by fax must be followed by a mailed, original copy of the FV–6. Fax transmissions may be sent to the MOAB at (202) 720–5698.

Dated: February 23, 1996.

Sharon Bomer Lauritsen,

*Deputy Director, Fruit and Vegetable Division.*

[FR Doc. 96–7192 Filed 3–25–96; 8:45 am]

BILLING CODE 3410–02–P

---

## 7 CFR Part 1280

[No. LS–96–002]

### Sheep Promotion, Research, and Information Program

**AGENCY:** Agricultural Marketing Service, USDA.

**ACTION:** Notice of Referendum Results

**SUMMARY:** The Agricultural Marketing Service (AMS) is announcing that sheep producers, sheep feeders, and importers of sheep and sheep products voting in a national referendum on February 6, 1996, have approved the Sheep and Wool Promotion, Research, Education, and Information Order (Order).

**FOR FURTHER INFORMATION CONTACT:** Ralph L. Tapp, Chief, Marketing Programs Branch, Livestock and Seed Division, AMS, USDA, Room 2606–S; P.O. Box 96456; Washington, D.C. 20090–6456.

**SUPPLEMENTARY INFORMATION:** Pursuant to the Sheep Promotion, Research, and Information Act of 1994, 7 U.S.C. 7101 *et seq.* (Act), the Department of Agriculture conducted a referendum on February 6, 1996, among eligible sheep producers, sheep feeders, and importers of sheep and sheep products to

determine if an Order would become effective.

Of the 19,801 valid ballots cast, 10,707 (54.1 percent) favored and 9,094 (45.9 percent) opposed the implementation of the Order. Additionally, of those persons who cast valid ballots in the referendum, those who favored the Order account for 40 percent of the total production voted, and those opposed account for 60 percent of the total production voted. The Order could have been approved by either a majority of the producers, feeders, and importers voting in the referendum or by those voting in the referendum who accounted for at least two-thirds of the production represented.

Therefore, based on the referendum results, the Secretary of Agriculture has determined that the required majority of eligible producers, feeders, and importers who voted absentee or in person in the February 6, 1996, national referendum voted to implement the Order. As a result, a promotion, research, education, and information program will be funded by a mandatory assessment on domestic sheep producers, lamb feeders, and exporters of live sheep and greasy wool of 1 cent per pound on live sheep sold and 2 cents per pound on greasy wool sold. Importers will be assessed (1) 1 cent per pound on live sheep; (2) the equivalent of 1 cent per pound of live sheep for sheep products; and (3) 2 cents per pound of degreased wool or the equivalent of degreased wool for wool and wool products. Imported raw wool will be exempt from assessments. Each person who processes or causes to be processed sheep or sheep products of that person's own production and markets the processed products, will be assessed the equivalent of 1 cent per pound of live sheep sold or 2 cents per pound of greasy wool sold. All assessments may be adjusted in accordance with applicable provisions of the Act. The date when assessments will begin will be announced at a later date.

Dated: March 20, 1996.

Lon Hatamiya,

*Administrator.*

[FR Doc. 96–7191 Filed 3–25–96; 8:45 am]

BILLING CODE 3410–02–P

---

## DEPARTMENT OF JUSTICE

### Immigration and Naturalization Service

### 8 CFR Parts 103, 204, 205 and 216

[INS No. 1705–95]

RIN 1115–AE04

### Petition to Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant; Self-Petitioning for Certain Battered or Abused Spouses and Children

**AGENCY:** Immigration and Naturalization Service, Justice.

**ACTION:** Interim rule with request for comments.

---

**SUMMARY:** This interim rule amends the Immigration and Naturalization Service (''the Service'') regulations to allow a spouse or child to seek immigrant classification if he or she has been battered by, or subjected to extreme cruelty committed by, the citizen or lawful permanent resident spouse or parent. It also permits a spouse to seek classification if his or her child has been battered by, or subjected to extreme cruelty committed by, the citizen or lawful permanent resident spouse. A qualified spouse or child who is living in the United States but is not a permanent resident may use the procedures established by this rule to self-petition for immigrant classification. The self-petition may be filed without the abuser's knowledge or consent, and may include the children of a self-petitioning spouse. A person who is granted immigrant classification under this provision may become eligible for lawful permanent resident status. A lawful permanent resident of the United States has legal permission to live and work in this country, and may later qualify for U.S. citizenship through naturalization.

**DATES:** This interim rule is effective March 26, 1996. Written comments must be received on or before May 28, 1996.

**ADDRESSES:** Please submit written comments, in triplicate, to the Director, Policy Directives and Instructions Branch, Immigration and Naturalization Service, 425 I Street NW., Room 5307, Washington, DC 20536, Attn: Public Comment Clerk. To ensure proper handling, please reference the INS number 1705–95 on your correspondence. Comments are available for public inspection at this location by calling (202) 514–3048 to arrange an appointment.

**FOR FURTHER INFORMATION CONTACT:**

Rita A. Arthur, Senior Adjudications Officer, Adjudications Division, Immigration and Naturalization Service, 425 I Street NW., Room 3214, Washington, DC 20536, telephone (202) 514–5014.

**SUPPLEMENTARY INFORMATION:**

Background

The Immigration and Nationality Act ("the Act") allows certain relatives of a citizen or lawful permanent resident of the United States to be classified for immigration. These relatives are not automatically entitled to immigrate; the Service must approve a visa petition filed by the citizen or lawful permanent resident for the family member, and the relative must qualify for immigrant visa issuance abroad or adjustment of status in the United States.

Citizens and lawful permanent residents may choose whether and when to petition for a relative. Most citizens and lawful permanent residents seek permission to bring their family members to the United States as soon as possible. They file for all their qualified relatives, except family members who do not want to live in the United States and those with whom they do not care to be reunited.

Some abusive citizens or lawful permanent residents, however, misuse their control over the petitioning process. Instead of helping close family members to legally immigrate, they use this discretionary power to perpetuate domestic abuse of their spouses and minor children who have been living with them in the United States. Abusers generally refuse to file relative petitions for their closest family members because they find it easier to control relatives who do not have lawful immigration status. These family members are less likely to report the abuse or leave the abusive environment because they fear deportation or believe that only citizens and authorized immigrants can obtain legal and social services. An abuser may also coerce family members' compliance in other areas by threatening deportation or by promising to file a relative petition in the future.

Crime Bill

The plight of these domestic abuse victims, who are unable to leave the United States for financial, social, cultural, or other reasons, was addressed by the Violent Crime Control and Law Enforcement Act of 1994 ("the Crime Bill"), Public Law 103–322, dated September 13, 1994. Title IV of the Crime Bill, The Violence Against Women Act of 1994 ("the VAWA"), contains several provisions that limit

the ability of an abusive citizen or lawful permanent resident to use the immigration laws to further violence against a spouse or child in the United States. Although the title of this portion of the Crime Bill reflects the fact that many abuse victims are women, abused spouses and children of either sex may benefit from these provisions. Section 40701 of the Crime Bill allows a qualified spouse or child to self-petition for immigrant classification based on the relationship to the abusive citizen or lawful permanent resident of the United States, without the abuser's participation or consent. This section also permits an eligible abused spouse to include his or her children in the petition, if the children have not petitioned separately. Section 40702 of the Crime Bill, which will be the subject of a separate rulemaking, provides guidelines for the acceptance and evaluation of credible evidence of abuse submitted with certain requests for removal of conditions on residency under section 216 of the Act. Section 40703 of the Crime Bill, which will also be addressed separately, allows certain abused spouses and children who have been continuously physically present in the United States for the past 3 years to apply for suspension of deportation.

Basic Self-Petitioning Eligibility Requirements

A spouse who is self-petitioning under section 40701 of the Crime Bill must show that he or she: (1) is the spouse of a citizen or lawful permanent resident of the United States; (2) is eligible for immigrant classification under section 201(b)(2)(A)(i) or 203(a)(2)(A) of the Act based on that relationship; (3) is residing in the United States; (4) has resided in the United States with the citizen or lawful permanent resident spouse; (5) has been battered by, or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident during the marriage; or is the parent of a child who has been battered by, or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident during the marriage; (6) is a person of good moral character; (7) is a person whose deportation would result in extreme hardship to himself, herself, or his or her child; and (8) entered into the marriage to the citizen or lawful permanent resident in good faith.

A child who is self-petitioning under section 40701 of the Crime Bill must show that he or she: (1) is the child of a citizen or lawful permanent resident of the United States; (2) is eligible for immigrant classification under section

201(b)(2)(A)(i) or 203(a)(2)(A) of the Act based on that relationship; (3) is residing in the United States; (4) has resided in the United States with the citizen or lawful permanent resident parent; (5) has been battered by, or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident parent while residing with that parent; (6) is a person of good moral character; and (7) is a person whose deportation would result in extreme hardship to himself or herself.

Spouse of a Citizen or Lawful Permanent Resident

The Crime Bill's changes to section 204(a)(1) of the Act, which allow a self-petition to be filed, describe the spousal relationship between the self-petitioner and the abuser in the present tense. They characterize a self-petitioning spouse as a person who is the spouse of a citizen or lawful permanent resident of the United States, and include no provisions for filing a self-petition based on a former spousal relationship. This rule, therefore, requires the self-petitioning spouse to be legally married to the abuser when the petition is filed. It specifies that a spousal self-petition must be denied if the petitioner's marriage to the abuser legally ended by annulment, death, or divorce before that time. The rule also stipulates that the abuser be a citizen or lawful permanent resident of the United States when the self-petition is filed.

Although it does not allow a self-petition to be filed based on a former spousal relationship, section 40701 of the Crime Bill directs the Service not to revoke the approval of a self-petition solely because the marriage has legally ended. This statutory provision protects the self-petitioner against an abuser's attempt to regain control over the petitioning process through legal termination of the marriage. It also allows a qualified self-petitioner to make decisions concerning the abusive relationship without regard to immigration considerations. This rule reflects the legislative provision safeguarding the self-petitioner's control over the immigration classification process.

While section 40701 of the Crime Bill requires the marriage to be legally valid at the time of filing and specifies that its termination after approval will not be the sole basis for revocation, it does not address the effect of a legal termination occurring between the filing and the approval of the self-petition. In the absence of explicit legislative guidelines, the Service has determined that protections for spouses whose self-

petitions have been approved should be extended to cover the entire period after the self-petition is filed. This rule, therefore, allows an otherwise approvable self-petition to be granted despite the legal termination of the marriage through annulment, divorce, or death while the self-petition was pending before the Service. It provides that the legal termination of the marriage after the self-petition has been properly filed with the Service will have not effect on the Service's decision concerning the self-petition.

The rule further provides, however, that a pending spousal self-petition will be denied or an approved spousal self-petition will be revoked if the self-petitioner chooses to remarry before becoming a lawful permanent resident. By remarrying, the self-petitioner has established a new spousal relationship and has shown that he or she no longer needs the protections of section 40701 of the Crime Bill to equalize the balance of power in the relationship with the abuser. If the new husband or wife is a citizen or lawful permanent resident of the United States, he or she may file for the former self-petitioner's classification as an immigrant. The self-petitioner also would not be precluded from filing a self-petition based on the new family relationship if the new spouse is an abusive citizen or lawful permanent resident of the United States. A self-petition filed on the basis of a new marriage will be assigned a priority date based on the date it was properly filed with the Service or based on the date a visa petition filed by the current abusive spouse was properly filed with the Service. This rule does not allow a priority date to be transferred from a self-petition or visa petition based on a prior marriage.

It also provides that changes in the abuser's citizenship or lawful permanent resident status will not affect the validity of an approved self-petition. This provision eliminates the possibility that an abuser could recapture control over the immigration classification process by changing his or her own immigration status. An approved self-petition will not be revoked solely because the abuser subsequently abandons lawful permanent resident status, renounces United States Citizenship, is deported, or otherwise changes immigration status. Similarly, a self-petition approved on the basis of a relationship to a lawful permanent resident will not be automatically upgraded to a petition for immediate relative classification if the abuser becomes a naturalized citizen of the United States. A spouse would not be precluded from filing a new self-petition

for classification as an immediate relative after the abuser naturalizes, provided he or she continues to meet the self-petitioning requirements.

This rule requires a self-petitioning spouse to provide documentary evidence of his or her legal relationship to the abuser and evidence of the abuser's immigration or citizenship status. Self-petitioners are encouraged to submit primary evidence whenever possible, although the Service will consider any relevant credible evidence. The Service's regulations at 8 CFR 204.1 and 204.2 provide detailed information concerning primary and secondary supporting documentation of a spousal relationship to a citizen or lawful permanent resident.

Primary evidence of a marital relationship is a marriage certificate issued by civil authorities and proof of the termination of all prior marriages, if any, of both the self-petitioner and the abuser. Primary evidence of the abuser's U.S. citizenship or lawful permanent residence is: (1) a birth certificate issued by a civil authority establishing the abuser's birth in the United States; (2) the abuser's unexpired full-validity United States passports; (3) a statement issued by a U.S. consular officer certifying the abuser to be a U.S. citizen and the bearer of a currently valid U.S. passport; (4) the abuser's Certificate of Naturalization or Certificate of Citizenship; (5) a Department of State Form FS–240, Report of Birth Abroad of a Citizen of the United States, relating to the abuser; or (6) the abuser's Form I–151 or Form I–551 Alien Registration Receipt Card, or other proof given by the Service as evidence of lawful permanent residence.

If primary or secondary evidence of an abuser's immigration or citizenship status is not available, this rule provides that the Service will attempt to electronically verify the abuser's status from information contained in Service computerized records. Other Service records may also be reviewed at the discretion of the adjudicating officer. If the Service is unable to identify a record as relating to the abuser or the record does not establish the abuser's immigration or citizenship status, the self-petition will be adjudicated based on the information submitted by the self-petitioner.

## Child of a Citizen or Lawful Permanent Resident

Section 40701 of the Crime Bill describes a self-petitioning child as a person who is the child of a citizen or lawful permanent resident of the United States. By again characterizing the relationship between the self-petitioner

and the abuser in the present tense, these amendments to the Act clearly show that the required relationship must exist when the petition is filed.

The term ''child'' is defined in section 101(b)(1) of the Act as including certain children born in or out of wedlock, and certain legitimated, adopted, and stepchildren. This definition also requires a child to be unmarried and less than 21 years of age. The rule, therefore, requires a self-petitioning child to be unmarried, less than 21 years of age, and to otherwise qualify as the abuser's ''child'' when the self-petition is filed and when it is approved. It also requires the self-petitioning child's abusive parent to be a U.S. citizen or lawful permanent resident when the self-petition is filed and when it is approved.

This rule specifies that an approved self-petition for a child of a United States citizen, however, will be automatically converted to an approved petition for classification as the unmarried or married adult son or daughter of a United States citizen when the self-petitioner reaches 21 years of age or marries. Similarly, an approved self-petition for a child of a lawful permanent resident of the United States will be automatically converted to an approved petition for classification as the unmarried adult son or daughter of a lawful permanent resident when the unmarried self-petitioner reaches 21 years of age. The approval of a self-petition for the child of an abusive lawful permanent resident must be automatically revoked, however, when the son or daughter marries. There is no immigration category for a married son or daughter of a lawful permanent resident. An automatically converted self-petition will retain the self-petition's original priority date.

Under the provisions of this rule, a self-petitioning child must be the child of the abusive citizen or lawful permanent resident but need not be the child of a self-petitioning spouse. A self-petition may be approved although the child's other parent is unable or unwilling to self-petition. The rule also does not require the self-petitioning child to be in the abuser's legal custody. Termination of the abuser's parental rights or a change in legal custody does not alter the self-petitioning relationship, provided the self-petitioner meets the definition of ''child'' contained in section 101(b)(1) of the Act when the self-petition is approved, or met that definition at the time of approval.

As discussed previously under ''Spouse of a citizen or lawful permand resident,'' changes in the

abuser's citizenship or lawful permanent resident status will not affect the validity of an approved self-petition. This regulatory provision eliminates the possibility that an abuser could recapture control over the abused child's immigration classification by changing his or her own immigration status. An approved self-petition for a child will not be revoked solely because the abuser subsequently abandons lawful permanent resident status, renounces United States citizenship, is deported, or otherwise changes immigration status. Similarly, a self-petition approved on the basis of a parent-child relationship to a lawful permanent resident will not be automatically upgraded to a petition for immediate relative classification if the abuser becomes a naturalized citizen of the United States. The abused child would not be precluded from filing a new self-petition for classification as an immediate relative after the abuser naturalizes, provided the child continues to meet the self-petitioning requirements.

This rule requires a self-petitioning child to provide documentary evidence of his or her relationship to the abuser and evidence of the abuser's immigration or citizenship status. Self-petitioners are encouraged to submit primary evidence whenever possible, although the Service will consider any relevant credible evidence. The Service's regulations at 8 CFR 204.1 and 204.2 provide detailed information concerning primary or secondary supporting documentation of a parent-child relationship to a citizen or lawful permanent resident.

Primary evidence of the relationship between: (1) a child and an abusive biological mother is the child's birth certificate issued by civil authorities; (2) a child born in wedlock and an abusive biological father is the child's birth certificate issued by civil authorities, the marriage certificate of the child's parents, and evidence of legal termination of all prior marriages, if any; (3) a legitimated child and an abusive biological father is the child's birth certificate issued by civil authorities, and evidence of the child's legitimation; (4) a child born out of wedlock and an abusive biological father is the child's birth certificate issued by civil authorities showing the father's name, and evidence that a bona fide parent-child relationship has been established between the child and the parent; (5) a stepchild and a stepparent is the child's birth certificate issued by civil authorities, the marriage certificate of the child's parent and the stepparent showing marriage before the stepchild reached 18 years of age, and evidence of legal termination of all prior marriages of either parent, if any; (6) an adopted child and an abusive adoptive parent is an adoption decree showing that the adoption took place before the child reached 16 years of age, and evidence that the child has been residing with and in the legal custody of the abusive adoptive parent for at least 2 years.

Primary evidence of the abuser's U.S. citizenship or lawful permanent residence is: (1) a birth certificate issued by a civil authority establishing the abuser's birth in the United States; (2) the abuser's unexpired full-validity United States passport; (3) a statement issued by a U.S. consular officer certifying the abuser to be a U.S. citizen and the bearer of a currently valid U.S. passport; (4) the abuser's Certificate of Naturalization or Certificate of Citizenship; (5) a Department of State Form FS–240, Report of Birth Abroad of a Citizen of the United States, relating to the abuser; and (6) the abuser's Form I–151 or Form I–551 Alien Registration Receipt Card, or other proof given by the Service as evidence of lawful permanent residence.

If primary or secondary evidence of an abuser's immigration or citizenship status is not available, this rule provides that the Service will attempt to electronically verify the abuser's status from information contained in Service computerized records. Other Service records may also be reviewed at the discretion of the adjudicating officer. If the Service is unable to identify a record as relating to the abuser or the record does not establish the abuser's immigration or citizenship status, the self-petition will be adjudicated based on the information submitted by the self-petitioner.

Eligible for Immigrant Classification

Section 40701 of the Crime Bill requires a self-petitioning spouse or child to be eligible for classification as an immediate relative under section 201(b)(2)(A)(i) of the Act or for preference classification under section 203(a)(2)(A) of the Act. Eligibility as an immediate relative or for preference classification requires more than a mere showing of a legal relationship to a citizen or lawful permanent resident of the United States; other conditions must also be met. Section 40701 of the Crime Bill amended the Act to ensure that self-petitioners would be subject to certain provisions of the Immigration Marriage Fraud Amendments of 1986 (IMFA), Public Law 99–639, November 10, 1986, which were enacted by Congress to detect and deter immigration-related marriage fraud. This rule reflects these statutory requirements.

A petition must be denied under the provisions of section 204(c) of the Act if there is substantial and probative evidence that the self-petitioner has ever attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The self-petitioner does not need to have received a benefit through the attempt or conspiracy. He or she also need not have been convicted of, or even prosecuted for, the attempt or conspiracy. Evidence of the attempt or conspiracy, however, must be contained in the self-petitioner's immigration file.

Section 204(g) of the Act may also apply to a self-petition. It prohibits the approval of a self-petition if the marriage creating the relationship to the citizen or permanent resident took place while the self-petitioner was in deportation, exclusion, or related proceedings, unless the self-petitioner provides clear and convincing evidence that the marriage was not entered into for the purpose of obtaining immigration benefits. This limitation will not apply if the self-petitioner has lived outside the United States for at least 2 years after the marriage. The ''clear and convincing'' standard places a heavier burden on the petitioner than the ''preponderance of evidence'' criteria generally applicable to visa petitions and self-petitions. Although there may be no proof that the marriage was fraudulent, a self-petition subject to this restriction must be denied if the petitioner does not provide ''clear and convincing'' evidence that the marriage was entered into in good faith.

The provisions of section 204(a)(2) of the Act, which were amended by section 40701(b) of the Crime Bill to encompass certain self-petitions, may also preclude the approval of a self-petition. A self-petition must be denied if the lawful permanent resident abuser acquired permanent residence within the past 5 years based on a marriage to a citizen or lawful permanent resident, unless the petition is supported by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading any provision of the immigration laws. This restriction will not apply if the earlier marriage ended because of the death of the spouse. As explained in the previous paragraph, the ''clear and convincing'' standard imposes a heavier burden of proof on the self-petitioner. Although there may be no proof that the marriage was fraudulent, a self-petition subject to this restriction must be denied if the petitioner does not provide ''clear and

convincing'' evidence that the earlier marriage was bona fide.

Before determining that a self-petition must be denied under section 204(c), 204(g), or 204(a)(2) of the Act, the Service will allow a self-petitioner the opportunity to provide additional evidence or arguments concerning the case. A denial under section 204(g) or 204(a)(2) of the Act is without prejudice to the filing of a new self-petition when the spouse or child is able to comply with these requirements.

The Service has previously determined that a variety of evidence may be used to establish a good-faith marriage, and a self-petitioner should submit the best evidence available. Evidence of good faith at the time of marriage may include, but is not limited to, proof that one spouse has been listed as the other's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence and experiences. *Matter of Laureano,* 19 I&N Dec. 1 (BIA 1983). Other types of readily available evidence might include the birth certificates of children born to the relationship; police, medical, or court documents providing information about the relationship; and affidavits of persons with personal knowledge of the relationship. Self-petitioners who submit affidavits are encouraged to submit affidavits from more than one person. Other types of evidence may also be submitted; the Service will consider any relevant credible evidence.

**Residence in the United States and Residence With the Abuser**

Section 40701 of the Crime Bill requires the self-petitioner to be residing in the United States and to have resided in the United States with the abuser. A self-petition will not be approved if the self-petitioner is not living in the United States or has never lived with the abuser in the United States. Under the provisions of this rule, however, the self-petitioner is not required to be residing with the abuser when the petition is filed. The rule also does not limit the time that may have elapsed since the self-petitioner last resided with the abuser.

''Residence'' is defined in section 101(a)(33) of the Act as a person's general place of abode. It is also described as a person's principal, actual dwelling place in fact, without regard to intent. A self-petitioner cannot meet the residency requirements by merely visiting the United States or visiting the abuser's home in the United States while continuing to maintain a general place of abode or principal dwelling place elsewhere. This rule, however, does not require the self-petitioner to have lived in the United States or with the abuser in the United States for any specific length of time. It also does not mandate continuous physical presence in the United States. A qualified self-petitioner may have moved to the United States only recently, made any number of trips abroad, or resided with the abuser in the United States for only a short time.

Evidence of residency with the abuser in the United States may take many forms. Employment records, utility receipts, school records, hospital or medical records, birth certificates of children born to the spouses in the United States, deeds, mortgages, rental records, insurance policies, or similar documents have been accepted as evidence of residency. This rule allows the submission of one or more documents showing the self-petitioner and the abuser residing together. It also allows the submission of two or more documents that, when considered together, establish that the self-petitioner and the abuser were residing at the same location concurrently. A self-petitioner may also submit affidavits to establish residency with the abuser. Self-petitioners who file affidavits are encouraged to provide the affidavits of more than one person. Other types of evidence may also be submitted; the Service will consider any relevant credible evidence.

**Battery or Extreme Cruelty**

Section 40701 of the Crime Bill requires a self-petitioning spouse to have been battered by, or been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident spouse; or to be the parent of a child who was battered by, or who was the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident during the marriage. It requires a self-petitioning child to have been battered by, or to have been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident parent while the child was residing with that parent. This rule reflects the statutory requirements by specifying that only certain types of abuse will qualify a spouse or child to self-petition. ''Qualifying abuse'' under this rule is abuse that meets the criteria of section 40701 of the Crime Bill concerning when, by whom, to whom, and to what degree the domestic abuse occurred.

The qualifying abuse must have taken place during the statutorily specified time. A spousal self-petitioner must show that the abuse took place during the marriage to the abuser. A self-petitioning child must show that he or she was abused while residing with the abuser. Battery or extreme cruelty that happened at other times is not qualifying abuse. There is no limit on the time that may have elapsed since the last incident of qualifying abuse occurred.

The qualifying abuse also must have been committed by the abusive citizen or lawful permanent resident spouse or parent. Battery or extreme cruelty by any other person is not qualifying abuse, unless it can be shown that the citizen or lawful permanent resident willfully condoned or participated in the abusive act(s).

Only abuse perpetrated against the self-petitioning spouse, the self-petitioning child, or the self-petitioning spouse's child will be considered qualifying. Acts ostensibly aimed at some other person or thing may be considered qualifying only if it can be established that these acts were deliberately used to perpetrate extreme cruelty against the self-petitioner or the self-petitioning spouse's child. Battery or extreme cruelty committed solely against a third party and in no way directed at or used against the spouse or child is not qualifying abuse.

The qualifying abuse also must have been sufficiently aggravated to have reached the level of battery or extreme cruelty. Service regulations at 8 CFR 216.5(e)(3)(i) currently define the phrase ''was battered by or was the subject of extreme cruelty.'' This definition was initially developed to facilitate the filing and adjudication of requests to waive certain requirements for removal of conditions on residency. These waivers are based on the applicant's claim of battery or extreme cruelty perpetrated by the citizen or lawful permanent resident spouse or parent. Since the regulatory definition has proven to be flexible and sufficiently broad to encompass all types of domestic battery and extreme cruelty, this rule adopts an identical definition for evaluating claims of battering or extreme cruelty under section 40701 of the Crime Bill. The definition reads as follows:

For the purpose of this chapter, the phrase ''was battered by or was the subject of extreme cruelty'' includes, but is not limited to, being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence.

13066   Federal Register / Vol. 61, No. 59 / Tuesday, March 26, 1996 / Rules and Regulations

The acts mentioned in this definition—rape, molestation, incest if the victim is a minor, and forced prostitution—will be regarded by the Service as acts of violence whenever they occur. Many other abusive actions, however, may also be qualifying acts of violence under this rule. Acts that, in and of themselves, may not initially appear violent may be part of an overall pattern of violence. It is not possible to cite all perpetrations that could be acts of violence under certain circumstances. The Service does not wish to mislead a potentially qualified self-petitioner by establishing a partial list that may be subject to misinterpretation. This rule, therefore, does not itemize abusive acts other than those few particularly egregious examples mentioned in the definition of the phrase ''was battered by or was the subject of extreme cruelty.''

This rule requires a self-petitioner to provide evidence of qualifying abuse. If the self-petition is based on a claim that the self-petitioning spouse's child was battered or subjected to extreme cruelty committed by the citizen or lawful permanent resident spouse, this rule requires the self-petition to be accompanied by evidence of the abuse and evidence of the relationship between the self-petitioner and the abused child. Available relevant evidence will vary, and self-petitioners are encouraged to provide the best available evidence of qualifying abuse. A self-petitioner is not precluded from submitting documentary proof of non-qualifying abuse with the self-petition; however, that evidence can only be used to establish a pattern of abuse and violence and to bolster claims that qualifying abuse also occurred.

The rule provides that evidence of abuse may include, but is not limited to, reports and affidavits from police, judges and other court officials, medical personnel, school officials, clergy, social workers, and other social service agency personnel. Persons who have obtained an order of protection against the abuser or taken other legal steps to end the abuse are strongly encouraged to submit copies of the relating legal documents. Evidence that the abuse victim sought safe-haven in a battered women's shelter or similar refuge may be relevant, as may a combination of documents such as a photograph of the visibly injured self-petitioner supported by affidavits. This rule also provides that other forms of credible evidence will be accepted, although the Service will determine whether documents appear credible and the weight to be given to them.

Self-petitioners who can provide only affidavits are encouraged to submit the affidavits of more than one person. The Service is not precluded from deciding, however, that the self-petitioner's unsupported affidavit is credible and that it provides relevant evidence of sufficient weight to meet the self-petitioner's burden of proof.

Good Moral Character

Section 40701 of the Crime Bill requires all self-petitioners to be persons of good moral character, but does not specify the period for which good moral character must be established. This rule requires self-petitioning spouses and self-petitioning children who are 14 years of age or older to provide evidence showing that they have been persons of good moral character for the 3 years immediately preceding the date the self-petition is filed. It does not preclude the Service from choosing to examine the self-petitioner's conduct and acts prior to that period, however, if there is reason to believe that the self-petitioner may not have been a person of good moral character in the past. The rule provides that self-petitioning children who are less than 14 years of age are not required to submit evidence of good moral character when filing the self-petition. A self-petitioner who is less than 14 years of age will be presumed to be a person of good moral character. This presumption does not preclude the Service from requesting evidence of good moral character, however, if there is reason to believe that the self-petitioning child may lack good moral character. The rule provides that a self-petition filed by a person of any age may be denied or revoked if evidence establishing that the person lacks good moral character is contained in the Service file.

It also provides that the Service will evaluate claims of good moral character on a case-by-case basis, taking into account the provisions of section 101(f) of the Act and the standards of the average citizen in the community. Section 101(f) of the Act lists the classes of persons who cannot be found to be persons of good moral character, and specifies that persons not within any of those classes may also be found to be lacking good moral character. The Service cannot find a person to be of good moral character under section 101(f) if he or she: (1) is or was a habitual drunkard; (2) is or was engaged in prostitution during the past 10 years as described in section 212(a)(2)(D) of the Act; (3) is or was involved in the smuggling of a person or persons into the United States as described in section 212(a)(6)(E) of the Act; (4) is or was a practicing polygamist; (5) has been convicted or admits committing acts

that constitute a crime involving moral turpitude other than a purely political offense, except for certain petty offenses or offenses committed while the person was less than 18 years of age as described in section 212(a)(2)(A)(ii) of the Act; (6) has committed two or more offenses for which the applicant was convicted and the aggregate sentence actually imposed was 5 years or more, provided that, if an offense was committed outside the United States, it was not a purely political offense; (7) has violated laws relating to a controlled substance, except for simple possession of 30 grams or less of marijuana; (8) earns his or her income principally from illegal gambling activities or has been convicted of two or more gambling offenses; (9) has given false testimony for the purpose of obtaining immigration benefits; (10) has been confined as a result of conviction to a penal institution for an aggregate period of 180 days or more; or (11) has been convicted of an aggravated felony.

The Service must conclude that a person who has been convicted of an offense falling within section 101(f) of the Act lacks good moral character. The Service may only look to the judicial records to determine whether the person has been convicted of the crime, and may not look behind the conviction to reach an independent determination concerning guilt or innocence. *Pablo v. INS,* 72 F.3d 110, 113 (9th Cir. 1995); *Gouveia v. INS,* 980 F.2d 814, 817 (1st Cir. 1992); and *Matter of Roberts,* Int. Dec. 3148 (BIA 1991).

Extenuating circumstances may be taken into account, however, if the person has not been convicted of the offense in a court of law but admits to the commission of an act or acts that could show a lack of good moral character. The Board of Immigration Appeals (BIA) has ruled that a person who admitted to having engaged in prostitution under duress but had no prostitution convictions was not excludable as a prostitute under section 212(a)(12) of the Act (currently section 212(a)(2)(D) of the Act) because she was involuntarily reduced to such a state of mind that she was actually prevented from exercising free will through the use of wrongful, oppressive threats, or unlawful means. *Matter of M–,* 7 I&N Dec. 251 (BIA 1956). A person who was subjected to abuse in the form of forced prostitution or who can establish that he or she was forced to engage in other behavior that could render the person excludable, therefore, would not be precluded from being found to be a person of good moral character if the person has not been convicted for the

154

commission of the offense or offenses in a court of law.

This rule also provides that a person will be found to lack good moral character, unless he or she establishes extenuating circumstances, if he or she: (1) willfully failed or refused to support dependents; or (2) committed unlawful acts that adversely reflect upon his or her moral character, or was convicted or imprisoned for such acts, although the acts do not require an automatic finding of lack of good moral character.

Under this rule, primary evidence of good moral character is the self-petitioner's affidavit. The affidavit should be accompanied by a local police clearance or a state-issued criminal background check from each locality or state in the United States in which the self-petitioner resided for six or more months during the 3-year period immediately preceding the filing of the self-petition. Self-petitioners who lived outside the United States during this time should submit a police clearance, criminal background check, or similar report issued by the appropriate authority in each foreign country in which he or she resided for six or more months during the 3-year period immediately preceding the filing of the self-petition. If police clearances, criminal background checks, or similar reports are not available for some or all locations, the self-petitioner may include an explanation and submit other evidence with his or her affidavit. The Service will consider other credible evidence of good moral character, such as affidavits from responsible persons who can knowledgeably attest to the self-petitioner's good moral character.

The Service of the Department of State will conduct additional record checks before issuing an immigrant visa or granting a self-petitioner's application for adjustment of status. If the results of these record checks disclose that the self-petitioner is no longer a person of good moral character or that he or she has not been a person of good moral character in the past, a pending self-petition will be denied or the approval of a self-petition will be revoked.

## Extreme Hardship

Section 40701 of the Crime Bill also requires a self-petitioning spouse to show that his or her deportation would cause extreme hardship to himself, herself, or his or her child. It similarly requires a self-petitioning child to show that his or her deportation would cause extreme hardship to himself or herself. The self-petitioner has the burden of proof; a self-petition must be denied if the petitioner does not show that his or

here deportation would cause extreme hardship. Hardship to persons other than the self-petitioner or the child of a self-petitioning spouse, such as extended family members, cannot be the basis for a self-petition under this rule.

The phrase "extreme hardship" is not defined in the Act, and sections 40701 and 40703 of the Crime Bill provide no additional guidelines for the interpretation of this requirement. The phrase "extreme hardship" has acquired a settled judicial and administrative meaning, however, largely in the context of suspension of deportation cases under section 244 of the Act.

It has been found that the personal deprivation contemplated in a situation characterized by "extreme hardship" within the meaning of section 244 of the Act is not a definable term of fixed and inflexible content or meaning; it necessarily depends upon the facts and circumstances peculiar to each case. *Matter of Hwang,* 10 I&N Dec. 448 (BIA 1964). The hardship requirement encompasses more than the mere economic deprivation that might result from an alien's deportation for the United States. *Davidson* v. *INS,* 558 F.2d 1361 (9th Cir. 1977); and *Matter of Sipus,* 14 I&N Dec. 229 (BIA 1972). It has also been found that the loss of a job and the concomitant financial loss incurred is not synonymous with extreme hardship. *Lee* v. *INS,* 550 F.2d 554 (9th Cir. 1977). Similarly, readjustment to life in the native country after having spent a number of years in the United States is not the type of hardship that has been characterized as extreme, since most aliens who have spent time abroad suffer this kind of hardship. *Matter of Uy,* 11 I&N Dec. 159 (BIA 1965).

"Extreme hardship" must be evaluated on a case-by-case basis after a review of all the circumstances in the case. This rule, therefore, does not include a list of "factors" that would automatically establish an applicant's claim to extreme hardship. Each self-petitioner is encouraged to cite and document all the reasons that he or she believes that deportation would cause extreme hardship.

Some precedent suspension of deportation cases have discussed the reasons why a particular applicant was found to have established that his or her deportation would cause extreme hardship. These reasons include the: (1) age of the person; (2) age and number of the person's children and their ability to speak the native language and adjust to life in another country; (3) serious illness of the person or his or her child which necessitates medical attention not adequately available in the foreign

country; (4) person's inability to obtain adequate employment in the foreign country; (5) person's and the person's child's length of residence in the United States; (6) existence of other family members who will be legally residing in the United States; (7) irreparable harm that may arise as a result of disruption of education opportunities; and (8) adverse psychological impact of deportation.

In some self-petitioning cases, the circumstances surrounding domestic abuse and the consequences of the abuse may cause the extreme hardship. These self-petitioners may wish to cite and provide evidence relating to some or all of the following areas, in addition to any other basis for believing that deportation would cause extreme hardship: (1) the nature and extent of the physical and psychological consequences of the battering or extreme cruelty; (2) the impact of the loss of access to the U.S. courts and criminal justice system (including, not limited to, the ability to obtain and enforce: orders of protection; criminal investigations and prosecutions; and family law proceedings or court orders regarding child support, maintenance, child custody and visitation); (3) the self-petitioner's and/or the self-petitioner's child's need for social, medical, mental health, or other supportive services which would not be available or reasonably accessible in the foreign country; (4) the existence of laws, social practices, or customs in the foreign country that would penalize or ostracize the self-petitioner or the self-petitioner's child for having been the victim of abuse, for leaving the abusive situation, or for actions taken to stop the abuse; (5) the abuser's ability to travel to the foreign country and the ability and willingness of foreign authorities to protect the self-petitioner and/or the self-petitioner's child from future abuse; and (6) the likelihood that the abuser's family, friends, or others acting on behalf of the abuser in the foreign country would physically or psychologically harm the self-petitioner and/or the self-petitioner's child.

The Service will develop and provide further interpretive guidance concerning the extreme hardship determination in self-petitioning cases to the Service officers who will adjudicate these self-petitions. This guidance is expected to be in the form of implementing directives, training courses, the field handbook currently under development by the Service, and other policy and procedural directives.

## Good Faith Marriage

Section 40701 of the Crime Bill requires a self-petitioning spouse to show that he or she entered into the marriage to the abusive citizen or lawful permanent resident in good faith. This rule provides, therefore, that a self-petition cannot be approved if the self-petitioner married the abuser solely to obtain immigration benefits. A self-petitioning spouse who is not subject to the limitations imposed by IMFA need only provide a "preponderance" of evidence showing that he or she married in good faith. Persons who are subject to the IMFA restrictions may be required to meet a heavier burden of proof to establish that a marriage was entered into in good faith, as discussed previously in the section entitled "Eligibility for Immigrant Classification."

The Act does not define a "good-faith" marriage or provide guidelines for evaluating the bona fides of a marriage; however, persons applying for immigration benefits based on a marriage are generally required to establish that they entered into the marriage in good faith, and a significant body of case law has developed concerning the interpretation of this requirement. It has long been held that a marriage that is entered into for the primary purpose of circumventing the immigration laws, referred to as a fraudulent or sham marriage, cannot be recognized as enabling a spouse to obtain immigration benefits. *Lutwak* v. *United States*, 344 U.S. 604 (1953) and *Matter of Phillis*, 15 I&N Dec. 385 (BIA 1975). A spousal petition will not be denied, however, solely because the spouses are not living together and the marriage is no longer viable. *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980). The key factor in determining whether a person entered into a marriage in good faith is whether he or she intended to establish a life together with the spouse at the time of the marriage. The person's conduct after marriage is relevant only to the extent that it bears upon his or her subjective state of mind at the time of the marriage. Separation from the other spouse, even shortly after the marriage took place, does not prove, by itself, that a marriage was not entered into in good faith. *Bark* v. *INS*, 511 F.2d 1200 (9th Cir. 1975).

This rule allows the submission of a variety of evidence to show a good-faith marriage. The self-petitioner should submit the best evidence available. Evidence of good faith at the time of marriage may include, but is not limited to, proof that one spouse has been listed as the other's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence and experiences. *Matter of Laureano, supra*. Other types of readily available evidence might include the birth certificates of children born to the abuser and the spouse; police, medical, or court documents providing information about the relationship; and affidavits of persons with personal knowledge of the relationship.

## Derivative Child Included in the Self-Petition

Section 40701 of the Crime Bill allows any child of a self-petitioning spouse to be derivatively included in the self-petition, if the child has not been classified as an immigrant based on his or her own self-petition. This rule allows a derivative child who has been included in a parent's petition to later file a self-petition, provided the child meets the self-petitioning requirements. It also allows a child who has been classified as an immigrant based on a petition filed by the abuser or another relative to be derivatively included in a parent's self-petition; including the child in the self-petition will not affect the validity of the petition submitted by the abuser or another relative.

No separate petition is necessary for derivative classification, and the child is not required to have been the victim of abuse. The derivative child also does not need to have lived in the United States or to otherwise satisfy the criteria for filing a self-petition. He or she, however, must meet the requirements for immigrant visa issuance abroad or adjustment of status in the United States. An eligible child, including a child born after the self-petition was approved, may be added to a self-petitioning spouse's petition when the self-petitioner applies for an immigrant visa abroad or adjustment of status in the United States. A new petition will not be required.

This rule further specifies that a derivative child need not be the child of the abuser, but must qualify as the self-petitioning spouse's child under the definition of "child" contained in section 101(b)(1) of the Act. The statutory definition includes certain children born in or out of wedlock, and certain legitimated, adopted, and stepchildren. It also requires a child to be unmarried and less than 21 years old. This rule requires a derivative child to continue to be a "child" until he or she becomes a lawful permanent resident based on the derivative classification. A derivative son or daughter who is married or more than 21 years old will not be issued an immigrant visa or granted adjustment of status as a derivative child.

Since derivative status is based solely on the relationship to the principal self-petitioner, the rule also provides that the derivative child can be granted lawful permanent residence only if the child is accompanying or following-to-join the self-petitioner. No derivative benefit can be granted if the principal self-petitioner does not become a lawful permanent resident.

This rule does not require the submission of documentary evidence of the derivative relationship with the self-petition. Such documents must be submitted, however, when the child applies for an immigrant visa abroad or adjustment of status to that of a lawful permanent resident of the United States based on the derivative relationship. Primary evidence of a parent-child relationship has been previously discussed under "Child of a Citizen or Lawful Permanent Resident." The Service's regulations at 8 CFR 204.1 and 204.2 provide additional information concerning primary or secondary supporting documentation of a parent-child relationship. Other types of evidence not specifically discussed in this rule or the Service regulations may also be submitted; the Service will consider any relevant credible evidence.

## Evidence in General

In accordance with the provisions of section 40701 of the Crime Bill, this rule provides that the Service will consider all credible evidence submitted with the application before reaching a decision. It also states that the Service will determine what evidence is credible and what weight to give to this evidence.

Generally, more weight will be given to primary evidence and evidence provided in court documents, medical reports, police reports, and other official documents. Self-petitioners, therefore, are strongly encouraged to submit this type of evidence whenever possible. Self-petitioners who submit affidavits are urged, but not required, to provide affidavits from more than one person. Other forms of documentary evidence may also be submitted, including evidence that has not been discussed in this rule or identified in the Service regulations.

The Service's regulations at 8 CFR 103.2 and 204.1(f) provide detailed information about the requirements applicable to supporting documentation. An ordinary legible photocopy of any supporting document may be submitted with a petition, although the Service reserves the right to require presentation of the original

document. An original document requested by the Service will be returned to the petitioner when it is no longer needed. Original documents submitted by the petitioner but not requested by the Service will remain a part of the record. Each foreign language document must be accompanied by an English translation that has been certified by a competent translator.

Proper Filing and Priority Dates

This rule requires self-petitioners to complete Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant. As directed in 8 CFR 103.2(a)(2), the person filing the self-petition must sign the Form I-360. A parent or guardian, however, may sign the petition for a child who is less than 14 years of age. Any self-petitioner may be represented by an attorney or accredited representative as described in 8 CFR 103.2(a)(3), if he or she so chooses.

Each self-petition must be accompanied by the fee required by 8 CFR 103.7(b)(1). A self-petitioner who is unable to pay the prescribed fee may request a fee waiver under the provisions of 8 CFR 103.7(c). The self-petition should also be accompanied by the documentary evidence specified in this rule.

Under the provisions of this rule, a self-petition filed concurrently with a Form I-485, Application to Register Permanent Residence or Adjust Status, may be filed at the office having jurisdiction over the adjustment of status application. Other self-petitions should be filed at the INS Service Center having jurisdiction over the self-petitioner's place of residence as described in the instructions to Form I-360. Since section 40701 of the Crime Bill requires all self-petitioners to be residing in the United States when the self-petition is filed, a self-petition cannot be filed at a United States consulate or embassy abroad. A self-petition also cannot be filed at a Service office overseas. Consular officials and Service officers overseas have not been delegated the authority to approve a self-petition.

In accordance with standard procedures, a self-petition received in a Service office will be stamped to show the time and date of actual receipt. It will be regarded as properly filed on that date, provided it is properly signed and executed, the required fee is attached or a fee waiver is granted, and it otherwise complies with the provisions of 8 CFR 103.2. This rule provides that the priority date will be the date the self-petition is properly filed. A self-petitioner who has been the

beneficiary of a visa petition filed by the abuser to accord the self-petitioner immigrant classification as his or her spouse or child, however, will be allowed to transfer the visa petition priority date to the self-petition. The earlier priority date may be assigned without regard to the current validity of the visa petition. The burden of proof to establish the filing of the visa petition lies with the self-petitioner, although the Service will attempt to verify a claimed filing through a search of the Service's computerized records or other records deemed appropriate by the adjudicating officer.

Decision

If the preliminary decision on a properly filed self-petition is adverse to the self-petitioner, the self-petitioner will be provided with written notice of this fact and offered an opportunity to present additional information or arguments before a final decision is rendered. If the preliminary decision is based on derogatory information of which the self-petitioner is unaware, the self-petitioner will also be offered an opportunity to rebut the derogatory information in accordance with the provisions of 8 CFR 103.2(b)(16).

Each self-petitioner will be sent a written notice of the final decision on his or her self-petition. If the petition is denied, he or she will be informed in writing of the basis for the denial and of the right to appeal. This rule allows an adverse decision on a self-petition to be appealed to the Associate Commissioner for Examinations in accordance with the provisions of 8 CFR 103.3.

Eligibility for Immigrant Visa Issuance or Adjustment of Status

Approval of a self-petition does not guarantee immediate eligibility for immigrant visa issuance or adjustment of status to that of a lawful permanent resident of the United States. The beneficiary of an approved self-petition must meet several additional requirements before he or she will be found eligible for lawful permanent residence in the United States.

Neither the Act nor this rule limits the overall number of self-petitions that may be accepted and approved by the Service. Some persons who are the beneficiaries of approved self-petitions, however, will be forced to delay filing their applications for immigrant visa issuance or adjustment of status because sections 201 and 202 of the Act place certain limits on the number of qualified persons who may be granted lawful permanent residence during any single year. Self-petitioners who are subject to

these limitations are encouraged to file the self-petition and establish the earliest possible priority date, since the available immigrant visa numbers are allocated to qualified immigrant visa applicants and qualified adjustment of status applicants strictly in priority date order.

Under the provisions of the Crime Bill, any self-petitioner who qualifies for immigrant classification as the spouse or child of an abusive citizen of the Untied States is regarded as an immediate relative of a U.S. citizen under section 201(b) of the Act and is not subject to direct numerical limitations. A qualified derivative child of a self-petitioning spouse of an abusive citizen of the United States is also considered to be an immediate relative under section 201(b) of the Act and is also exempted from these limitations. These self-petitioners may apply for immigrant visa issuance abroad or adjustment of status to that of a lawful permanent resident of the United States without regard to numerical limitations.

A self-petitioner who is the spouse or child of an abusive permanent resident of the United States, however, is subject to immigrant visa number limitations, as are the qualified derivative children of spouses of abusive permanent residents. These self-petitioners and their derivative children are not eligible to apply for immigrant visa issuance or adjustment of status until their immigrant visa numbers have become immediately available. Visa numbers for these self-petitioners and their derivative children are considered immediately available only when the Department of State Bureau of Consular Affairs Visa Office Bulletin shows the priority date for the applicant's country of birth under the family-sponsored 2A second preference classification as ''current'' or lists a date that is earlier than the self-petitioner's priority date.

In addition to meeting requirements concerning visa number availability, a self-petitioner who is applying for an immigrant visa at a U.S. consulate or embassy abroad must prove that he or she is not included in any of the classes of persons who, by law, cannot be admitted to the United States, or that any basis for inadmissibility has been waived. A person seeking immigrant visa issuance abroad may also be subject to the provisions of section 212(o) of the Act. This provision requires a person who was not in lawful nonimmigrant status on the day he or she last left the United States to remain outside the country for at least 90 days before obtaining an immigrant visa. An immigrant may lawfully travel to the

13070   Federal Register / Vol. 61, No. 59 / Tuesday, March 26, 1996 / Rules and Regulations

United States immediately after the visa is issued. A qualified immigrant visa holder becomes a lawful permanent resident upon admission to the United States.

A self-petitioner who is seeking immigrant visa issuance abroad will be contacted by the Department of State's National Visa Center (NVC) when that office has received the approved self-petition from the Service and an immigrant visa number is available. Immigrant visa applicants should follow the instructions provided by NVC and the U.S. consulate or embassy processing their requests. Persons wishing further information about immigrant visa issuance abroad should contact the Department of State or a United States embassy or consulate abroad.

The Act also allows certain persons who are physically present in the United States to adjust status to that of a lawful permanent resident of the United States. Like immigrant visa applicants, adjustment of status applicants must prove that they are eligible for immigrant classification. Each applicant must also be exempt from immigrant visa number limitations or show that an immigrant visa number is immediately available for him or her. An applicant must further prove that he or she is not included in any of the classes of persons who, by law, cannot be admitted to the United States, or that any basis for inadmissibility has been waived. Persons seeking adjustment of status must also meet the applicable requirements of section 245 of the Act. A qualified adjustment applicant becomes a lawful permanent resident upon approval of the adjustment of status application.

Section 40701 of the Crime Bill does not provide adjustment of status benefits. Self-petitioners, however, may benefit from certain other provisions of the Act. One such provision is a recently enacted law that temporarily allows many previously ineligible persons to seek adjustment of status in the United States. This law, section 506(b) of the Department of Commerce, Justice, State, the Judiciary and Related Agencies Appropriations Act, 1995, Public Law 103-317, was enacted August 26, 1994. It lifts certain restrictions on adjustment of status under section 245 of the Act on applications granted before October 1, 1997. Persons seeking the adjustment of status benefits of Public Law 103-317 may be subject to a financial penalty, since the law requires most persons seeking adjustment of status under this provision to pay an additional sum in excess of the standard adjustment of

status filing fee. Additional information concerning adjustment of status under Public Law 103-317 may be obtained by requesting Supplement A to Form I-485 from a local Service office.

Certain restrictions on adjustment of status have not been waived by section 40701 of the Crime Bill and cannot be waived under Public Law 103-317. These restrictions include those imposed by section 245(d) of the Act, which prohibit the adjustment of status of a person who is a conditional resident under section 216 or 216A of the Act. The adjustment of status of a person last admitted to the United States as a K-1 fiance(e) is also barred, unless the person is seeking adjustment as a result of the marriage to the United States citizen who filed the fiance(e) petition. Section 245(d) of the Act similarly prohibits the adjustment of status of a person who was last admitted as the K-2 child of a fiance(e) parent, unless the person is seeking adjustment as a result of his or her parent's marriage to the citizen who filed the fiance(e) petition. A self-petitioner who last entered in K-1 or K-2 nonimmigrant status would be subject to these restrictions, as would his or her derivative children who last entered in K-2 nonimmigrant status, unless the abuser is also the citizen who had filed the fiance(e) petition. The statutory language of section 245(d) of the Act does not preclude a conditional resident, a person who last entered the United States with a fiance(e) visa, or a person who last entered the country as a dependent child of a fiance(e) from filing a self-petition and seeking immigrant visa issuance abroad.

An application for adjustment of status may be filed concurrently with the self-petition, if the self-petitioner is exempt from immigrant visa number limitations or if an immigrant visa number would be immediately available if the self-petition was approved. Other self-petitioners who wish to adjust status in the United States may file the self-petition separately and submit the adjustment of status application when their immigrant visa numbers become available. Self-petitioners who would like more information about the requirements for adjustment of status in the United States may request Form I-485 from the service office serving their local area.

Conditions on Residency Under Section 216 of the Act

Section 216 of the Act was enacted as part of IMFA to detect and deter immigration-related marriage fraud. It imposes conditions on the lawful permanent resident status of certain

persons who obtain residency through marriage. A spouse or child may be subject to these restrictions if he or she becomes a lawful permanent resident based on a relationship created by a marriage entered into less than 2 years before residency is granted. The conditions on residency under section 216 of the Act may be removed only upon fulfillment of certain requirements. A conditional resident who does not file a joint petition with the citizen or permanent resident spouse during the 90 days prior to the second anniversary of the date residency was granted may have residency status terminated. Section 216 of the Act also provides three waivers of the joint petitioning requirement. One waiver exempts a conditional resident from filing a joint petition if he or she has been battered by, or subjected to extreme cruelty committed by, the citizen or lawful permanent resident; or if his or her child has been battered by, or subjected to extreme cruelty committed by, the citizen or lawful permanent resident. The Service has determined that no useful purpose would be served by imposing the conditional residency requirements of section 216 of the Act on any self-petitioner; all self-petitioners would necessarily be eligible for waivers of the joint petitioning requirement. This rule provides, therefore, that the conditional residence requirements of section 216 of the Act will not apply to a person who obtains lawful permanent resident status based on an approved self-petition, regardless of the date of the marriage.

Employment Authorization

Section 40701 of the Crime Bill does not direct the Service to provide employment authorization based solely on the filing or approval of a self-petition. A self-petitioner, however, may be eligible to apply for employment authorization under the existing provisions of 8 CFR 274a.12. Qualified applicants who wish to request employment authorization should complete and file Form I-765, Application for Employment Authorization, according to the instructions provided with the form. A self-petitioner who substantiates that he or she is unable to pay the Form I-765 application fee may be granted a fee waiver in accordance with the provisions of 8 CFR 103.7(c).

Many self-petitioners will qualify for employment authorization under 8 CFR 274a.12(c)(9). This provision allows a person who has properly filed an adjustment of status application under section 245 of the Act to request

employment authorization while the adjustment application is pending before the Service.

Most other self-petitioners will be eligible to request voluntary departure prior to or after a deportation hearing for the reasons set forth in 8 CFR 242.5(a)(2) (v), (vi), or (viii), and may qualify for employment authorization based on the grant of voluntary departure. Voluntary departure may be granted under 8 CFR 242.5(a)(2)(v) to a person who lost his or her nonimmigrant student or exchange visitor status (F–1, F–2, J–1, or J–2 nonimmigrant classification) solely because a private bill had been introduced in his or her behalf. It may be granted under 8 CFR 242.5(a)(2)(vi) to a person who is admissible to the United States as an immigrant, and: (1) who is an immediate relative of a U.S. citizen; or (2) is otherwise exempt from the numerical limitation on immigrant visa issuance; or (3) has a priority date for an immigrant visa not more than 60 days later than the date shown in the latest Visa Office Bulletin and has applied for an immigrant visa at a United States Consulate which has accepted jurisdiction over the case; or (4) who is the beneficiary of an employment-based petition with a priority date earlier than August 9, 1978, and who meets certain other requirements outlined in 8 CFR 242.5(a)(2)(vi) (D) or (E). Also, voluntary departure may be granted under 8 CFR 242.5(a)(2)(viii) to a person in whose case the district director has determined there are compelling factors warranting a grant of voluntary departure. A person who has been granted voluntary departure for the reasons set forth in 8 CFR 242.5(a)(2) (v), (vi), or (viii) may be granted permission under 8 CFR 274a.12(c)(12) to be employed for the period of time prior to the date set for voluntary departure, if the person shows an economic need to work. Extensions of voluntary departure and employment authorization may also be requested. Requests for voluntary departure under 8 CFR 242.5(a)(2)(v), (vi), or (viii) may be made to the local Service office having jurisdiction over the applicant's place of residence. There is no application form or fee for requesting voluntary departure for these reasons, although a person requesting employment authorization on the basis of the voluntary departure grant will be required to file Form I–765 and to pay the Form I–765 application fee or to establish eligibility for a fee waiver.

A person who has been placed in deferred action status, an act of administrative convenience to the Government that assigns a lower priority to the alien's removal from the United States, may also request employment authorization under 8 CFR 274a.12(c)(14) if the person shows an economic need to work. There is no application process or fee for placement in deferred action status, although a person requesting employment authorization on the basis of deferred action placement will be required to file Form I–765 and to pay the Form I–765 application fee or to establish eligibility for a fee waiver.

Furthermore, a self-petitioner would not be precluded from requesting the employment authorization benefits of any other provision of 8 CFR 274a.12 under which he or she may qualify.

Other Regulatory Changes

In addition to making regulatory changes necessary to implement the provisions of section 40701 of the Crime Bill, this rule makes necessary grammatical and format changes to ensure consistency and clarity. It also makes technical changes by: (1) amending 8 CFR 103.1(f)(3)(iii) to update regulatory and statutory references; (2) amending 8 CFR 103.1(f)(3)(iii) to eliminate provisions concerning the appeal of a denial of a petition for a Replenishment Agricultural Worker (RAW) under part 210a of the Act, since that program expired at the end of fiscal year 1993 without allowing any such petitions to be filed; (3) revising the headings of 8 CFR 204.1 and 8 CFR 204.2 to more accurately reflect the contents of the sections; (4) correcting a typographical error by replacing "Form I–30" with "Form I–130" in 8 CFR 204.1(a); (5) removing 8 CFR 204.2(d), which discussed a program created by section 112 of the Immigration Act of 1990 to provide additional visa numbers to spouses and children of legalized aliens that ended September 30, 1994; and (6) amending 8 CFR 205.1 to reflect the requirements of 8 CFR 103.2(a)(7)(ii), which provides an automatic revocation of an approved petition when the remitter fails to pay the filing fee and associated service charge after the check or other financial instrument used to pay the filing fee is returned as not payable.

Family Well-Being

This regulation will enhance family well-being by allowing qualified family members of citizens and lawful permanent residents to self-petition for immigrant classification if they are living in this country. These family members were formerly precluded from obtaining this benefit because the abuser refused to file the necessary relative visa petition.

The Service's implementation of this rule as an interim rule, with provision for post-promulgation public comment, is based on the "good cause" exceptions found at 5 U.S.C. 553 (b)(3)(B) and (d)(3). *Methodist Hospital of Sacramento, et al.,* v. *Shalala,* 38 F.3d 1225 (D.C. Cir. 1994). The reasons and necessity for immediate implementation of this interim rule are as follows: The changes to the Act made by section 40701 of the Crime Bill became effective on January 1, 1995. Immediate implementation of this rule will allow a qualified spouse or child of an abusive citizen or lawful permanent resident to immediately self-petition for immigrant classification. Prompt implementation will also allow a spouse or child who is filing based on the relationship to an abusive lawful permanent resident of the United States to establish a more favorable place on the immigrant visa number waiting list. Qualified self-petitioners are all residing in this country and are persons of good moral character. They have been prevented from obtaining immigrant classification in the past solely because their abusive spouse or parent withdrew or refused to file the necessary immigrant visa petition for them.

Regulatory Flexibility Act

The Commissioner of the Immigration and Naturalization Service, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this regulation and, by approving it, certifies that the rule will not have a significant economic impact on a substantial number of small entities because of the following factors. By permitting certain spouses and children to self-petition for immigrant classification, the rule will allow some individuals residing in the United States to be classified as immigrants based on the relationship to an abusive citizen or lawful permanent resident spouse or child. It will not affect small entities.

Executive Order 12866

This rule is not considered by the Department of Justice, Immigration and Naturalization Service to be a "significant regulatory action" under Executive Order 12866, section 3(f), Regulatory Planning and Review, and the Office of Management and Budget has waived its review process under section 6(a)(3)(A).

Executive Order 12612

The regulations adopted herein will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and

13072   Federal Register / Vol. 61, No. 59 / Tuesday, March 26, 1996 / Rules and Regulations

responsibilities among the various levels of government. Therefore, in accordance with Executive Order 12612, it is determined that this rule does not have sufficient Federalism implications to warrant the preparation of a Federalism Assessment.

*Paperwork Reduction Act*

The information collection requirements contained in this rule have been cleared by the Office of Management and Budget under the provisions of the Paperwork Reduction Act.

List of Subjects

*8 CFR Part 103*

Administrative practice and procedure, Authority delegations (Government agencies), Fees, Forms, Freedom of information, Privacy, Reporting and recordkeeping requirements, Surety bonds.

*8 CFR Part 204*

Administrative practice and procedures, Aliens, Employment, Immigration, Petitions.

*8 CFR Part 205*

Administrative practice and procedures, Aliens, Immigration, Petitions.

*8 CFR Part 216*

Administrative practice and procedures, Aliens, Nonimmigrants, Passports and visas.

Accordingly, chapter I of title 8 of the Code of Federal Regulations is amended as follows:

## PART 103—POWERS AND DUTIES OF SERVICE OFFICERS; AVAILABILITY OF SERVICE RECORDS

1. The authority citation for part 103 continues to read as follows:

Authority: 5 U.S.C. 552, 552a; 8 U.S.C. 1101, 1103, 1201, 1252 note, 1252b, 1304, 1356; 31 U.S.C. 9701; E.O. 12356, 47 FR 1487, 15557, 3 CFR, 1982 Comp., p. 166; 8 CFR part 2.

### § 103.1   [Amended]

2. Section 103.1 is amended by:
a. Revising the reference in paragraph (f)(3)(iii)(C) to ''§ 245.2 (a)(4) and (e) of this chapter'' to read ''section 103 of the Act of October 28, 1977'';

b. Revising the reference in paragraph (f)(3)(iii)(K) to ''§ 223.1 of this chapter'' to read ''8 CFR part 223'';

c. Revising the reference in paragraph (f)(3)(iii)(L) to ''§ 223a.4 of this chapter'' to read ''8 CFR part 223'';

d. Revising the reference in paragraph (f)(3)(iii)(X) to ''§ 204.1(b) of this chapter'' to read ''8 CFR 204.3'';

e. Revising the reference in paragraph (f)(3)(iii)(Y) to ''§ 204.1(b)(3) of this chapter'' to read ''8 CFR 204.3'';

f. Revising the reference in paragraph (f)(3)(iii)(FF) to ''as permanent resident under § 245.6 of this chapter'' to read ''of certain Cuban and Haitian nationals under section 202 of the Immigration Reform and Control Act of 1986''; and

g. Removing paragraph (f)(3)(iii)(GG).

3. Section 103.1 is amended by adding a new paragraph (f)(3)(iii)(GG), to read as follows:

### § 103.1   Delegations of authority.

*   *   *   *   *

(f) *   *   *
(3) *   *   *
(iii) *   *   *
(GG) A self-petition filed by a spouse or child based on the relationship to an abusive citizen or lawful permanent resident of the United States for classification under section 201(b)(2)(A)(i) of the Act or section 203(a)(2)(A) of the Act;

*   *   *   *   *

4. Section 103.2 is amended by adding a new paragraph (b)(2)(iii), to read as follows:

### § 103.2   Applications, petitions, and other documents.

*   *   *   *   *

(b) *   *   *
(2) *   *   *
(iii) *Evidence provided with a self-petition filed by a spouse or child of abusive citizen or resident.* The Service will consider any credible evidence relevant to a self-petition filed by a qualified spouse or child of an abusive citizen or lawful permanent resident under section 204(a)(1)(A)(iii), 204(a)(1)(A)(iv), 204(a)(1)(B)(ii), or 204(a)(1)(B)(iii) of the Act. The self-petitioner may, but is not required to, demonstrate that preferred primary or secondary evidence is unavailable. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Service.

*   *   *   *   *

5. Section 103.2 is amended by revising the heading of paragraph (b)(17) and by adding three new sentences at the end of paragraph (b)(17), to read as follows:

### § 103.2   Applications, petitions, and other documents.

*   *   *   *   *

(b) *   *   *
(17) *Verifying claimed citizenship or permanent resident status.* *   *   * If a self-petitioner filing under section 204(a)(1)(A)(iii), 204(a)(1)(A)(iv), 204(a)(1)(B)(ii), or 204(a)(1)(B)(iii) of the

Act is unable to present primary or secondary evidence of the abuser's status, the Service will attempt to electronically verify the abuser's citizenship or immigration status from information contained in Service computerized records. Other Service records may also be reviewed at the discretion of the adjudicating officer. If the Service is unable to identify a record as relating to the abuser, or the record does not establish the abuser's immigration or citizenship status, the self-petition will be adjudicated based on the information submitted by the self-petitioner.

*   *   *   *   *

## PART 204—IMMIGRANT PETITIONS

6. The authority citation for part 204 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1151, 1153, 1154, 1182, 1186a, 1255; 8 CFR part 2.

7. Section 204.1 is amended by revising the section heading, and by revising paragraph (a), to read as follows:

### § 204.1   General information about immediate relative and family-sponsored petitions.

(a) *Types of petitions.* Petitions may be filed for an alien's classification as an immediate relative under section 201(b) of the Act or as a preference immigrant under section 203(a) of the Act based on a qualifying relationship to a citizen or lawful permanent resident of the United States, as follows:

(1) A citizen or lawful permanent resident of the United States petitioning under section 204(a)(1)(A)(i) or 204(a)(1)(B)(i) of the Act for a qualifying relative's classification as an immediate relative under section 201(b) of the Act or as a preference immigrant under section 203(a) of the Act must file a Form I–130, Petition for Alien Relative. These petitions are described in § 204.2;

(2) A widow or widower of a United States citizen self-petitioning under section 204(a)(1)(A)(ii) of the Act as an immediate relative under section 201(b) of the Act must file a Form I–360, Petition for Amerasian, Widow, or Special Immigrant. These petitions are described in § 204.2;

(3) A spouse or child of an abusive citizen or lawful permanent resident of the United States self-petitioning under section 204(a)(1)(A)(iii), 204(a)(1)(A)(iv), 204(a)(1)(B)(ii), or 204(a)(1)(B)(iii) of the Act for classification as an immediate relative under section 201(b) of the Act or as a preference immigrant under section 203(a) of the Act must file a Form I–360, Petition for Amerasian,