**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| Defendant-Intervenor. | § | |

**DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO**
**DISMISS WITH PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION**

**STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT**

The questions presented are:

(1)  Whether this case fails to present an Article III controversy because Plaintiffs and the Federal Defendants are aligned and only injunctive orders issued by other courts prevent the Federal Defendants from taking the action both they and Plaintiffs seek;

(2)  Whether Plaintiffs fail the redressability requirement for standing because any ruling by this Court cannot relieve the Federal Defendants of their obligations to comply with the orders of sister courts, which is the only source of Plaintiffs' purported injuries; and

(3)  Whether the participation of Defendant-Intervenors, New Jersey, and *amici*, none of which has authority for adopting or implementing Deferred Action for Childhood Arrivals ("DACA"), cures the fundamental lack of adversity in this case.

**SUMMARY OF THE ARGUMENT**

Plaintiffs and the Federal Defendants argue, in essence, that the orders of other courts against the Federal Defendants create a live controversy that can be adjudicated by this Court. This Court should reject that suggestion.  Plaintiffs and the Federal Defendants' reliance on *INS v. Chadha*, 462 U.S. 919 (1983), and *United States v. Windsor*, 570 U.S. 744 (2013), is misplaced.  In both cases, the Executive was taking action directly against the plaintiffs, which caused the plaintiffs direct and actual harm that would terminate if the Executive were ordered to cease the acts in question.  Here, the Executive is not taking any action directly against the Plaintiff States.  Nor even is it *choosing* to engage in the conduct that, Plaintiffs contend, causes them harm in very indirect fashion.  Rather, the Executive is *compelled* to take those acts by various court orders.  The Court cannot order the Executive to cease complying with other

courts' orders as they relate to third parties.  Thus, for the same reason there is no adversity sufficient to supply jurisdiction, neither is Plaintiffs' complained-of injury redressable by this Court.  Even if the lack of adversity is characterized as a "prudential" concern, here that prudential concern compels dismissal.  Neither Defendant-Intervenors, who are merely a handful of DACA beneficiaries, nor New Jersey has any authority over the existence or non-existence of the DACA guidance, and their presence cannot cure the lack of adversity between Plaintiffs and the Federal Defendants.

**ARGUMENT**

## I.   THIS CASE DOES NOT PRESENT AN ARTICLE III CASE OR CONTROVERSY

Plaintiffs' action does not present a live case or controversy within the meaning of Article III of the Constitution.  Parties may not, where "there is no real and substantial controversy between those who appear as adverse parties to the suit," seek "to obtain the opinion of the court upon a question of law . . . for [their] own interest or [their] own purposes."  *Lord v. Veazie*, 49 U.S. 251, 255 (1850).  While Plaintiffs assert that there continues to be a controversy because "Plaintiff States seek an end to DACA, and Defendants are continuing to implement DACA," that summary omits the critical fact that "Defendants are continuing to implement DACA" only because they are compelled to do so by other courts' injunctions.  Dkt. 188 at 6.  The Federal Defendants, by contrast, forthrightly acknowledge that they "continue to maintain the allegedly injurious DACA policy . . . *only because of preliminary injunctions issued by other courts requiring that result*."  Dkt. 194 at 2 (emphasis added).  In other words, as the Federal Defendants expressly acknowledge, and Plaintiffs must implicitly concede, their assertion of an actual controversy between them is based exclusively on "preliminary injunctions issued by other courts" against the Federal Defendants.  The putative "actual controversy," in other words,

is that Plaintiffs and Federal Defendants jointly wish this Court to countermand those other courts' orders, even though those other orders have no direct impact on the Federal Defendants' actions toward the Plaintiffs.  Neither party identifies *any* case holding that a party who has lost litigation in one court can join with a friendly entity who is not directly implicated by that order to ask another court to issue a contrary ruling, purporting to relieve the losing party of its obligations in the first litigation.  Because there is no "honest and actual antagonistic assertion of rights" between the Plaintiffs and the Federal Defendants, *Poe v. Ullman*, 367 U.S. 497, 505 (1961), there is no justiciable controversy for this Court to adjudicate.

Plaintiffs and Federal Defendants rely heavily on *Chadha* and *Windsor* for their assertion that jurisdiction is proper, but those cases are readily distinguishable.  In both cases, the Executive had made an affirmative decision to enforce the legislative acts (though it disagreed with those acts), and was taking direct adverse action against the individual in question.  *See Chadha*, 462 U.S. at 939 ("[T]he INS's agreement with Chadha's position does not alter the fact that the INS would have deported Chadha absent the Court of Appeals' judgment."); *Windsor*, 570 U.S. at 756, 758 (noting that, despite "agreeing with Windsor's legal contention," the Executive was "refus[ing] to pay" her the refund she would be due).  Not so here.  The Executive is not taking any direct action against Texas.  Moreover, the Federal Defendants have made an affirmative decision to *cease* application of DACA; their continued implementation of the guidance is "only because of preliminary injunctions issued by other courts requiring that result." Dkt. 194 at 2.  Stated another way, in both *Chadha* and *Windsor*, the court was asked to exercise jurisdiction over the legislative act that the Executive was continuing to implement and to declare it unconstitutional, in order "to protect individual rights," *Windsor*, 570 U.S. at 757 (quoting *Warth v. Sedlin*, 422 U.S. 490, 500 (1975)).  Reviewing the constitutionality of those

legislative acts was unquestionably within the courts' jurisdiction. And in both cases, such an order would afford immediate relief from the harmful act the government was otherwise taking directly against the plaintiff. Here, by contrast, the Executive is not taking any action directly against Plaintiffs, but is merely implementing another court's injunction as to third parties who are current recipients of DACA. This Court *does not* have jurisdiction to review those orders of its sister District Courts.

## II.    A RULING BY THIS COURT COULD NOT REDRESS PLAINTIFFS' ALLEGED INJURY

For related reasons, Plaintiffs' suit fails to satisfy Article III because it does not present a dispute that would be redressable by a favorable ruling of the Court. Again, the distinctions between this case and those of *Chadha* and *Windsor* are telling. In *Chadha*, the plaintiff's claim was redressable because, "[i]f the veto provision violates the Constitution, and is severable, the deportation order against Chadha [would] be cancelled." 462 U.S. at 936. Similarly, in *Windsor*, "Windsor suffered a redressable injury when she was required to pay estate taxes from which, in her view, she was exempt but for the alleged invalidity of § 3 of [the Defense of Marriage Act ("DOMA")]." 570 U.S. at 755-56. Only a favorable judicial ruling would result in the Executive "paying Windsor the refund to which she was entitled" if DOMA was unconstitutional. *Id.* at 758. In both cases, the Court had the power to review and declare unconstitutional the legislative acts in question and thereby grant the requested relief and cure the concrete injury—*i.e.*, prevent Chadha's deportation and require refund of Windsor's estate taxes. Here, by contrast, Plaintiffs present only generalized grievances, *see* Dkt. 224 at 33 (citing *Gill v. Whitford*, 138 S. Ct. 1916, 1930-31 (2018)), and this Court is unable to redress Plaintiffs' alleged injury.

Specifically, this Court cannot issue any order that would redress Plaintiffs' alleged injury, as no order by this Court could relieve the Federal Defendants of their obligations to third parties under the earlier orders issued by sister courts.   Contrary to Plaintiffs' attempt to distinguish the DACA preservation cases, those courts have already issued binding orders requiring Federal Defendants "to maintain the DACA program on a nationwide basis," *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018), which is precisely what Plaintiffs ask this Court to tell Federal Defendants to cease doing, by requesting that the Court "enjoin" Federal Defendants "from implementing the 2012 memorandum that created DACA."  Dkt. 5 at 15.

Based on long-standing principles of comity, as well as the first-filed doctrine, this Court should decline to grant an injunction directly conflicting with those of its sister courts.  *See W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985) ("The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs") (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180 (1952)); *see also Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ("Where different outcomes would place the defendant under inconsistent legal duties, the case for the second court's not going into conflict with the first is particularly strong.").   Indeed, the Court cannot enjoin the Federal Defendants from complying with the injunction of another sister court.  Simply put, courts should "not exercise jurisdiction" over "a 'horizontal appeal' from one district judge to another judge of the same rank." *See, e.g.*, *McGinley v. Houston*, Civil Action 03-0563-WS-M, 2003 U.S. Dist. LEXIS 14947, at *2 (S.D. Ala. Aug. 27, 2003).  Accordingly, this Court has no

power to remove the sole obstacle preventing Plaintiffs and Federal Defendants from achieving their desired aim, and is thus unable to redress Plaintiffs' alleged injuries.

Federal Defendants' reliance on *Chafin v. Chafin*, 568 U.S. 165 (2013), is also misplaced. *See* Dkt. 194 at 2, 4.  In *Chafin*, the Supreme Court rejected the relevance of an assertion that the Court lacked a justiciable controversy because the prevailing party below had left the United States.  568 U.S. at 174-75.  The Court noted that "[t]he U.S. courts continue[d] to have personal jurisdiction over Ms. Chafin, may command her to take action even outside the United States, and may back up any such command with sanctions." *Id.*  In other words, *Chafin* stands for the proposition that a case is not moot even if "[e]nforcement of the order may be uncertain if [the party] chooses to defy it." *Id.* at 175.  Here, by contrast, the lack of redressability is not because the Federal Defendants may "choose[] to defy" the Court's order.  Rather, the Federal Defendants "continue to maintain the allegedly injurious DACA policy . . . *only because of preliminary injunctions issued by other courts requiring that result*," Dkt. 194 at 2 (emphasis added), yet this Court cannot absolve them of their obligations to comply with those preliminary injunctions.  Because this Court cannot issue relief that would remedy Plaintiffs' purported injuries, Plaintiffs' suit fails to satisfy the requirements of Article III.

## III. THE PRESENCE OF DEFENDANT-INTERVENORS AND POTENTIAL *AMICI* DO NOT CURE PRUDENTIAL STANDING CONCERNS

"Even [assuming] Article III permits the exercise of federal jurisdiction, prudential considerations demand that the Court insist upon '[a] concrete adverseness'" that is absent here. *Windsor*, 570 U.S. at 760 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The presence of Defendant-Intervenors, New Jersey, and *amici* does not cure the prudential concerns arising from the alignment of Federal Defendants with Plaintiffs.  Plaintiffs mistakenly characterize *Chadha* and *Windsor* as standing for the sweeping generalization that "[w]here intervenors and *amici* are

prepared to defend the legality of government action, all prudential concerns are satisfied, even when the principal parties agree that the government action is unlawful." Dkt. 188 at 8; *see also* Dkt. 194 at 3-4 (Federal Defendants asserting same). Not so. The intervention of the House of Representatives in *Chadha* and the Bipartisan Legal Advisory Group of the House ("BLAG") in *Windsor* meant that the genuinely adverse party, whose authority the plaintiffs challenged, was participating in the litigation to defend its prerogatives. To be analogous, this case would require the participation of the district court judges who have issued the injunctions of which the Federal Defendants ask this Court to relieve them.

In both *Chadha* and *Windsor*, it was clear that the third parties present in the litigation were actively defending the constitutionality *of their own actions*. Specifically, while the nominal defendant in *Chadha* was the INS, Congress intervened in the litigation to defend the constitutionality of the one-House veto. 462 U.S. at 929. The Supreme Court found that Congress's intervention was directly relevant to the question whether there was a case or controversy as a prudential matter, as "Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional." *Id.* at 940. Similarly, in *Windsor*, the case involved a dispute over the federal Defense of Marriage Act, and BLAG intervened in order to defend the constitutionality of DOMA, a statute passed by Congress. As the "proper party to defend the validity of a statute," *id.*, BLAG was well-suited to intervene and cure prudential standing concerns, and the Supreme Court accordingly found that "BLAG's sharp adversarial presentation of the issues satisfies the prudential concerns that *otherwise might counsel against hearing an appeal from a decision with which the principal parties agree.*" *Windsor*, 570 U.S. at 761 (emphasis added).

Here, by contrast, neither Defendant-Intervenors, New Jersey, nor any *amici* are the authority behind DACA or its continued application, and none intervene in this case to defend their own authority in adopting DACA. Defendant-Intervenors, for example, are merely a handful of the many thousands of individual beneficiaries of DACA. The Defendant-Intervenors did not adopt DACA, nor even were they parties to the other district court litigations that produced the injunctions that prevent the Federal Defendants from rescinding DACA. As noted in Defendant-Intervenors' motion, Dkt. 118 at 17, and ignored by Plaintiffs, the fact that Defendant-Intervenors (unlike the House or BLAG in *Chadha* and *Windsor*) are participating in this action "does not create sufficient adversity to provide jurisdiction." Instead, "[t]hey have properly called the court's attention to the lack of subject matter jurisdiction" due to the lack of adversity between the principal parties. *Kirkland v. N.Y. State Dep't of Corr. Servs.*, No. 82 CIV. 0295, 1988 WL 108485, at \*3 (S.D.N.Y. Oct. 12, 1988).

## CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss this case for lack of subject matter jurisdiction.

Dated: July 30, 2018                                    Respectfully Submitted

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Celina Moreno (Tex. Bar No. 24074754)
(SD of Tex. Bar No. 2867694)
Jack Salmon (Tex. Bar No. 24068914)
(SD of Texas Bar No. 1130532)
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)

-8-

Ernest I. Herrera (Tex. Bar No. 24094718);
(SD of Tex. Bar No. 2462211)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org

Denise Hulett
Mexican American Legal Defense and
Educational Fund
1512 14th Street
Sacramento, CA 95814
Phone: (916) 444-3031
Email: dhulett@maldef.org
(Admitted pro hac vice)

Priscila Orta
Mexican American Legal Defense and
Educational Fund
11 East Adams, Suite 700
Chicago, IL 60603
Tel: (312) 427-0701
Email: porta@maldef.org
(Admitted pro hac vice)

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-
Driemeier@ropesgray.com
(pro hac vice application pending)

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

-9-

Attorneys for Defendant-Intervenors

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on the 30th day of July, 2018, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/          Nina          Perale*s

Nina Perales