# Exhibit 48

# Deferred Action for Childhood Arrivals (DACA)
## General Training Workshop Reference Guide
August 2014

Objectives and Key Elements

At the end of this workshop, officers will understand deferred action and how to apply the Secretary's discretionary authority in the specific context of DACA. Officers will:

- Understand what DACA is;
- Understand the basic authority for deferred action in general;
- Understand the Secretary's specific guidelines for DACA;
- Learn to evaluate and weigh the evidence submitted for DACA consideration;
- Learn how to resolve potential inconsistencies;
- Know when to consult with their supervisor; and
- Know when to refer cases to CFDO for additional research.

Key Resources

Officers will have a number of key resources at their disposal. These include:

- The Secretary's memorandum;
- The National DACA SOP; and
- The AFM.

Officers should work through their supervisory chain of command to elevate complex issues. HQ will also be a resource for vetting complex issues.

Table of Contents

| | |
|---|---|
| 2 | Module I:  DACA Overview |
| 4 | Module II:  Initial Intake, File Preparation, and Workflow |
| 7 | Module III:  Required Forms and Fees |
| 8 | Module IV:  DACA Guidelines and Adjudicating the Request |
| 23 | Module V:  Weighing the Evidence and Standard of Proof |
| 25 | Module VI:  Removal Proceedings |
| 28 | Module VII:  Background & Security Checks |
| 32 | Module VIII:  Issues of Criminality and Public Safety |
| 46 | Module IX:  Fraud and Misrepresentation |
| 50 | Module X:  RFE and Plain Language Basics |
| 53 | Module XI:  Decision Systems Processing |
| 62 | Module XII:  Responding to Requests to Review Certain Denials |
| 63 | Module XIII:  DACA Termination |
| 64 | Module XIV:  Employment Authorization Request |
| 66 | Module XV:  Processing Form I-131, Application for Travel Document |

App. 1546
DEF - 00004650

**I. DACA Overview**

<u>Module Objectives</u>

The objective of this section is to provide a basic understanding of:
- The authority for exercising prosecutorial discretion;
- The authority and intent behind DACA;
- DACA terms;
- How DACA will be implemented; and
- Challenges.

<u>6 - Authority for Deferred Action</u>

Under INA 103, the Secretary has the authority to administer the immigration laws.
- Includes the authority for the Secretary to exercise her discretion in deciding when and how to remove individuals from the United States.

There are no specific deferred action provisions in the statute or the regulations.
- Deferred action is not a benefit and does not *confer* any status.
- Deferred action does not *lead* to any status.
- Deferred action simply means that action to remove someone is deferred and that the decision to pursue removal may be revisited at some point in the future.

<u>7 - Authority and Intent for DACA</u>

DACA is <u>D</u>eferred <u>A</u>ction for <u>C</u>hildhood <u>A</u>rrivals

On June 15, 2012, the Secretary issued a memo to CBP, USCIS, and ICE, describing the guidelines for exercising prosecutorial discretion in cases involving certain young people who arrived in the United States as children.

The intent behind the Secretary's memorandum is to prioritize resources on high priority removal cases. There is a basic recognition that individuals brought to the United States as young children lacked the intent to violate the law.

<u>8 - DACA Terms</u>

Since deferred action is not a benefit, different terms are used for DACA.
Instead of:
- *Application*, use **request**.
- *Applicant*, use **requestor (or DACA requestor)**.
- *Approve* or *grant*, use **defer removal, defer action under DACA**, etc.
- *Must*, *should*, or *shall*, use **is to be**.

Confidential

App. 1547
DEF - 00004651

9,10,11 - DACA Implementation

Deferred action requests under standard protocols (i.e., non-DACA) do not require a form or fee. For DACA, USCIS:
- Is conducting extensive stakeholder outreach;
- Has created a DACA video, a DACA website, and has published a series of FAQs; and
- Created a new Form I-821D, Deferred Action for Childhood Arrivals.

Form I-821D allows USCIS to:
- Collect the information and documents needed to determine whether the Secretary's DACA guidelines have been met;
- Track the intake and workflow of DACA requests;
- Perform background and security checks on DACA requests;
- Request additional information when needed;
- Enter the adjudicative actions in the system;
- Track the status of the DACA request and respond to customer inquiries;
- Track statistics; and
- Position the Agency for potential renewal in 2 years.

The Secretary's memorandum allows DACA requestors to obtain work authorization based on economic necessity.
- Existing regulations are at 8 CFR 274a.12(c)(14) – based on a grant of deferred action.
- The (c)(33) code will be used to distinguish DACA-related EADs.

DACA requestors are required to concurrently file Form I-765, Application for Employment Authorization, with the new I-765WS, together with their Form I-821D. This allows USCIS to:
- Streamline the process by adjudicating the EAD request concurrently with the DACA request; and
- Collect biometrics at Application Support Centers (ASCs).

The Lockbox will reject Form I-821D if it is not filed concurrently with Form I-765.

Confidential

<u>12,13 - DACA Challenges</u>

Since deferred action is not a benefit, it does not fit squarely within the regulations.
- This makes DACA requests different from benefit applications that officers are accustomed to adjudicating.

Although the regulations are useful resources, the guiding principles derive from the overarching discretionary authority to defer someone's removal and the Secretary's DACA guidelines.

DACA requestors arrived in the United States as children.
- Depending on their age, they may or may not have documentation of their own.
- Officers may see documents from the DACA requestor's parents, for example, rent receipts or utility bills.
- One piece of evidence might satisfy more than one guideline. For example, school transcripts can also show residence, age, and arrival before age 16.
- Because some DACA requestors may have been working under assumed names, name discrepancies, standing alone, will not necessarily be a fraud indicator.
- Look at the documents in their totality to see how they add up.
- If necessary, issue an RFE to resolve discrepancies.
- If the DACA requestor's attempts to explain the discrepancies still don't add up, officers can refer the case to CFDO for further research.

Confidential

Deferred Action for Childhood Arrivals

## II. Initial Intake, File Preparation, and Workflow

Module Objectives

Officers will gain a basic understanding of:
- Lockbox intake
- Overall process flow; and
- Case preparation.



17 - Case Preparation and Workflow

Step 1:
Intake occurs at the Lockbox per the agreed upon Lockbox/SCOPS business rules.
Step 2:
Service Center Records performs the A-number look-up and validation process.
Step 3:
Data is populated into C3 via the Lockbox-Service Center interface.
Step 4:
Lockbox creates and ships A-Files/T-Files to the appropriate Service Center based on the agreed upon routing.
Step 5:
Service Centers receive the files and perform file intake functions.

Confidential

App. 1550

DEF - 00004654

<u>18,19 - Case Preparation and Workflow (Continued)</u>

<u>Step 6:</u>
ASC appointments are scheduled via SNAP by the Service Center pursuant to local procedures.
<u>Step 7:</u>
In parallel to the SNAP scheduling process, background and security checks are initiated via TECS.
<u>Step 8:</u>
The Service Center must look for the following to determine the next steps:
- Whether the DACA requestor appeared at the ASC for biometrics capture and whether the FBI returned the fingerprint results (fingerprint results are required only for those 14 years and older); and
- Whether TECS and/or the FBI fingerprint results returned derogatory information impacting the exercise of discretion for DACA.

<u>Step 9:</u>
The Service Center will take adjudicative action.
<u>Step 10:</u>
The process flow splits off here, depending on the results from the FBI and the TECS check, on whether a supervisory hold should be placed on the request.


<u>20 - How Form I-821D Will be Displayed in C3</u>

For DACA requests, all pertinent fields will be populated in CLAIMS 3 (C3) into the Form I-821 screen, but with a new category "3" to show it is actually a DACA request, not TPS.

While Forms I-821for TPS, and I-821D for DACA are very similar, when Form I-821 appears in CLAIMS with category "3" (to denote that it is actually an I-821D for DACA), only those fields pertaining to the DACA request will be active.


<u>21 - A View of Form I-821D in C3</u>

Confidential

App. 1551
DEF - 00004655

## III. Required Forms and Fees

Module Objective

The objective of this section is to provide a basic understanding of:
- The Forms required to file a DACA request.

24,25,26 - The DACA Request

Each DACA request must include:
- Form I-821D, *Consideration of Deferred Action for Childhood Arrivals*;
  - There is no fee for Form I-821D.
- Form I-765, *Application for Employment Authorization* with I-765 WS;
- Basic I-765 filing fee and the biometrics services fee; and
  - Total fee of $465 (or proof of fee exemption approval).
  - Fee exemption will appear as fee waived in C3.
- Documentary evidence to meet the DACA guidelines.

There is no derivative DACA.
- Requestors must file requests individually.
- Requestors must meet the DACA guidelines in their own right.

Form I-821D is a discrete form for DACA designed to address each guideline and should not be confused with Form I-821 used for TPS.

Some data elements that are not germane to DACA are not on the I-821D. For example:
- Nationality;
- Inadmissibility; and

Confidential

App. 1552
DEF - 00004656

Deferred Action for Childhood Arrivals

- Information about relatives.

A new worksheet, Form I-765WS, has been created to capture the information needed to determine economic necessity for the EAD.

Form I-765WS asks the requestor to provide basic information about his/her current income, annual expenses, and total value of assets.

## IV. DACA Guidelines and Adjudicating the Request

Module Objectives
The objective of this section is to provide a basic understanding of:
- The basic DACA guidelines.
- The discretionary nature of deferred action;
- Examples of evidence that a requestor may submit to show he/she meets the DACA guidelines; and,
- The effect of criminality, egregious public safety and national security concerns.

29,30,31 - Basic DACA Guidelines

An individual meeting the following guidelines may be favorably considered for DACA if, under the totality of the circumstances, he/she:
- Was in unlawful status as of June 15, 2012;
- Is at least 15 years of age on the date of filing;
  - If in removal proceedings, can be under 15.
- Arrived in the United States prior to reaching his/her 16th birthday;
- Has continuously resided in the United States since June 15, 2007, up to the time the request for consideration of deferred action for childhood arrivals is submitted;
- Was present in the United States on June 15, 2012;
- Is currently in school, graduated from high school, obtained a general educational certificate (GED), is currently enrolled in an accredited GED program, or is an honorably discharged veteran of the Coast Guard or U.S. Armed Forces;
- Was born after June 15, 1981 (i.e., was not age 31 or older on June 15, 2012);
- Has not been convicted of a felony offense, a significant misdemeanor offense, or three or more non-significant misdemeanor offenses; and
- Does not otherwise pose a threat to national security or public safety.

Confidential

App. 1553
DEF - 00004657

Deferred Action for Childhood Arrivals

Deferred action is discretionary. In setting the guidelines, the Secretary has determined how this discretion is to be applied for individuals who arrived in the United States as children.
Although discretion to defer removal is applied on a case-by-case basis, according to the facts and circumstances of a particular case, discretion should be applied consistently.

- Absent unusual or extenuating circumstances, similar fact patterns should yield similar results.
- To facilitate consistent review and adjudication, a series of RFE and NOID templates have been developed and must be used. They are included in the SOP appendices.
- A standard denial template in checkbox format will be used by officers.

Interim Review

Fact Pattern: The requestor indicated that he is 14½ years old and entered the United States without inspection in 2007. Questions:

- Considering the requestor's age, date of entry, and immigration status, can he satisfy the guidelines for DACA?
- Is additional information needed?

33,34 - Applying the DACA Guidelines – Identity

Each DACA requestor is to establish his/her identity
Examples of acceptable evidence include:

- Passport;
- Birth certificate, accompanied by some form of photo identification;
- National ID document from the requestor's country of origin bearing the requestor's photo and/or fingerprint;
  - Includes a Matricular consular document issued by the consulate or embassy in the United States.
- U.S. Government immigration or other document bearing the requestor's name and photo;
- School-issued ID with photo;
- Military ID with photo; or
- Any other relevant document.

Any aliases, name discrepancies, or date of birth discrepancies identified while reviewing the evidence require a TECS query.
While these types of discrepancies may come up while reviewing identity, they could also come up while reviewing other guidelines.

Confidential

App. 1554
DEF - 00004658

Deferred Action for Childhood Arrivals

Requestors may submit employment records to satisfy other guidelines. During the review process, you may find that a requestor worked under an assumed name. This type of discrepancy, in and of itself, would not result in declining to defer removal under DACA.


35 - Applying the DACA Guidelines -- Age at Time of Filing

To determine the requestor's age at the time of filing, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.
- The requestor's date of birth will be on several documents, and possibly in our systems.
- Officers should be mindful and run the required TECS queries.
- Age is a fundamental guideline. Officers should work closely with their supervisor and with CFDO to reconcile discrepancies.


36 - Applying the DACA Guidelines -- Age at Time of Filing (Continued)

**Requestors NOT in Removal Proceedings**
- The DACA requestor is to be age 15 or older at the time.

**Requestors IN Removal Proceedings**
- A DACA requestor in removal proceedings may be under age 15 at the time of filing the DACA request.
- In removal proceedings includes:
  - Administratively closed cases;
  - Having an order of voluntary departure after proceedings were initiated (which can be an alternate order of VD/removal); or
  - A final removal order.
- The requestor should be noting this on the Form I-821D.
- The requestor should already have an A-file, with documents relating to the removal proceedings.
- Systems checks should also indicate that the requestor is in removal proceedings.


37 - Applying the DACA Guidelines -- Age on June 15, 2012

The DACA requestor is to establish that he/she was not age 31 or older on June 15, 2012.
- In other words, the DACA requestor was born after June 15, 1981.

To determine whether the requestor was born after June 15, 1981, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.

Confidential

App. 1555
DEF - 00004659

38 - Applying the DACA Guidelines -- Unlawful Status as of June 15, 2012

Unlawful status means:
- Lawful immigration status expired as of June 15, 2012;
- The requestor EWI'd before June 15, 2012; or
- If paroled into the United States, the requestor's parole expired as of June 15, 2012 and the requestor did not obtain an extension or any other lawful status by that date.

Review Part 1 of I-821D for date of entry and status at entry.
- If needed, conduct a systems check to help in establishing the requestor's immigration status on June 15, 2012.

39 - Applying the DACA Guidelines -- Unlawful Status as of June 15, 2012 (Continued)

Examples of documents that may show the requestor's immigration status on June 15, 2012 include, but are not limited to the following:
- I-94/I-95/I-94W Arrival/Departure Record showing the date the requestor's authorized stay expired;
- If the requestor has a final order of exclusion, deportation, or removal issued on or before June 15, 2012, a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing the requestor into deportation, exclusion, or removal proceedings;
- Any other document that is relevant to show that the requestor lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

Interim Review

Fact Pattern:
The requestor was born on December 12, 1989, and states that he entered the United States in December 2005 on a B-2 Visitors Visa. He lost his I-94 and submitted a photocopy of the photo page of his passport.

Questions for discussion:
- Can the requestor be considered for DACA?
- Is additional information needed?

Confidential

41 - Applying the DACA Guidelines -- Arrived Before Age 16

The DACA requestor is to establish that he/she arrived in the United States before his/her 16th birthday.
- To determine the date of arrival, review the response to Part 1, questions 13 through 17 of Form I-821D for the date of initial entry into the United States.
- In addition, review question 6 in Part 1 and the requestor's birth certificate or other acceptable evidence establishing the requestor's date of birth.
- The answers to these 2 questions on Form I-821D, combined with evidence of the requestor's date of birth, will establish this guideline.

42,43 - Applying the DACA Guidelines -- Continuous Residence (CR)

The DACA requestor is to submit evidence that he/she has resided continuously in the United States since June 15, 2007, or earlier, and up to the present time.
- Present time means the date of filing the DACA request.

A DACA requestor can establish continuous residence even if he/she had a brief absence from the United States.
- The absence must be brief, casual, and innocent and have occurred before August 15, 2012.
- Travel occurring after August 15, 2012, will not be considered brief, casual, and innocent, unless removal has been deferred under DACA and advance parole has been granted.

Examples of evidence establishing that an absence was brief, casual, and innocent and therefore did not interrupt the requestor's continuous residence include, but are not limited to:
- Plane or other transportation tickets or itinerary showing the travel dates;
- Passport entries;
- Hotel receipts showing the dates the requestor was abroad;
- Evidence of the purpose of the travel (e.g., the requestor attended a wedding or funeral);
- Copy of any advance parole documents; or
- Any other relevant/probative evidence that could support a brief, casual, and innocent absence.

Note that a departure made while under an order of voluntary departure or deportation, exclusion, or removal is not brief, casual, and innocent.

44 - Effect of Travel Outside the U.S. After 8/15/12

Travel outside the United States after August 15, 2012 and before the DACA request is filed:
- The departure interrupts CR; CR not met.

FOUO – Law Enforcement Sensitive                                                                        - 12 -

Confidential

Deferred Action for Childhood Arrivals

Travel outside the United States while the DACA request is pending:
- The requestor abandons the DACA request; deny for abandonment.

Travel outside the United States after removal has been deferred, but without advance parole:
- Deferred action under DACA is terminated automatically.

### 45 - Applying the DACA Guidelines -- Present in the U.S. on 6/15/12

The DACA requestor is to establish that he/she was present in the United States on June 15, 2012.
- To determine if the requestor was present in the United States on June 15, 2012, review the responses to Part1 regarding the date of entry, status at entry, and date the authorized stay expired; and
- The responses to the questions in Part 2 regarding all absences from the United States since June 15, 2007.
- The responses to these 2 questions, together with the evidence submitted, will show that this guideline is met.

Review the totality of the evidence submitted. If a given document does not specifically refer to June 15, 2012, review the dates on all the documentation submitted in its totality. If the requestor arrived before June 15, 2007, and there is no indication of any departure and continuous presence is well documented, then this guideline has been met.

### 46 - Examples of Acceptable Evidence for CR and Presence in U.S. on 6/15/12

Confidential

App. 1558
DEF - 00004662

Deferred Action for Childhood Arrivals

| Evidence | Acceptable Documentation |
|---|---|
| Employment Records | • Pay stubs;<br>• W-2 Forms;<br>• Certification of the filing of Federal, State, or local income tax returns; or<br>• Letters from employer(s) or, if the DACA requestor has been self-employed, letters from banks, and other firms with whom he/she has done business.<br><br>In all of these documents, the employee's name and the name of the requestor's employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.<br><br>Such letters must include: (1) the requestor's address(es) at the time of employment; (2) the exact period(s) of employment; (3) period(s) of layoff; and (4) a brief summary of the requestor's duties with the company. |
| Receipts, Bills, Letters | • Rent receipts;<br>• Utility bills (gas, electric, telephone, etc.) bearing the requestor's name (or family name if residing at same address) and address; or<br>• Receipts or letters from companies showing the dates during which the requestor received service. |
| School Records | Transcripts, letters, report cards, etc., from the school(s) that the requestor attended in the United States showing the name of school(s) and the period(s) of school attendance. |
| Medical Records | Hospital or medical records showing medical treatment or hospitalization of the requestor. Such records should show the name of the medical facility or physician, as well as the date(s) of the treatment or hospitalization. |

47 - Evidence of CR and Presence on 6/15/12 (Continued)

Confidential

App. 1559
DEF - 00004663

Deferred Action for Childhood Arrivals

| Evidence | Acceptable Documentation |
|---|---|
| Memberships | • Official records from a religious entity in the United States confirming the requestor's membership or attendance in the entity, attendance at entity events, or participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).<br>• Documentation showing membership in community organizations (e.g. Scouts). |
| Military Records | Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records). |
| Additional Documents | Additional documents to support the requestor's claim may include:<br>• Money order receipts for money sent in or out of the country;<br>• Passport entries;<br>• Birth certificates of children born in the United States;<br>• Dated bank transactions;<br>• Correspondence between the DACA requestor and other persons or organizations;<br>• U.S. Social Security card;<br>• Selective Service card;<br>• Automobile license receipts, title, vehicle registration, etc.;<br>• Deeds, mortgages, contracts to which the DACA requestor has been a party;<br>• Tax receipts;<br>• Insurance policies, receipts, or postmarked letters; and/or<br>• Any other relevant document. |

48,49 - Applying the DACA Guidelines - Education

**App. 1560**
Confidential                                    DEF - 00004664

Deferred Action for Childhood Arrivals

Basic Educational Guidelines

The educational guideline for DACA can be met in a number of different ways. The requestor can show that he/she:

- Is currently in school;
- Has graduated from high school; or
- Has obtained a certificate of completion from high school or a General Educational Development (GED) certificate.

**Homeschooling**

A claim of homeschooling is not, in and of itself, an indicator of fraud; however, because homeschool programs and their requirements vary widely from state to state, refer the case to CFDO for further research and evaluation.

- Even if the file contains evidence including transcripts, diplomas, or certificates of completion received as a result of homeschooling, the case must be referred to CFDO for further research and evaluation, prior to final adjudication.

50-63 - Applying the DACA Guidelines – Education (Continued)

**Currently in School**

The DACA requestor can be enrolled in:

- A public/private elementary school, junior high or middle school, high school, or secondary school;
- An education, literacy, or career training program (including vocational training or an English as a Second Language (ESL) course);
- An education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under State law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other equivalent State-authorized exam; or
- A public or private college or university or a community college.

**School Breaks and Medical Leave**

School Breaks: When the DACA requestor files the DACA request, it is possible that school may not be in session due to a holiday or a semester (or quarter or trimester) break.

- A break may occur during a course, for example spring break, or it may occur between semesters, for example summer break.
- If a DACA request is filed between semesters, the requestor is considered to be currently in school if he/she is enrolled for the next semester and submits evidence of such enrollment.

Medical Leave: Note that a DACA requestor on temporary medical leave from school is considered to be currently in school. Evidence of the medical leave and the expected return date to school are to be provided.

Applying the DACA Guidelines – Education (Continued)

Confidential

Deferred Action for Childhood Arrivals

**Enrollment in Personal Enrichment or Recreational Classes**

A DACA requestor who is enrolled in a personal enrichment class (such as arts and crafts) or who is enrolled in a recreational class (such as canoeing) is not in an alternative educational program and thus not considered to be "currently in school" for DACA purposes.

**Enrollment in On-Line Classes**

Evidence of enrollment in on-line courses is acceptable.
Officers should focus on the school, not the medium.
It is not uncommon for students to be enrolled in online courses.
Officers should focus on the completeness, credibility, relevance, and sufficiency of the evidence to see if it is germane.

**Primary/Middle/Secondary School – Accepted for Enrollment**

Evidence of acceptance for enrollment may include, but is not limited to:

- An acceptance letter on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced.
  - Such acceptance letter is to include the name and address of the school, the requestor's grade level, and the date that the classes are scheduled to commence.
  - Such acceptance letter is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date.
  - If the requestor has been accepted for enrollment at a private school, evidence of enrollment, such as paid tuition receipts, is to be included.
- A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability, would also be acceptable evidence of enrollment;
- A current class schedule containing the student's name, the list of courses, and the day and time of each class; or
- Any other relevant evidence.

Applying the DACA Guidelines – Education (Continued)

Confidential

App. 1562
DEF - 00004666

Deferred Action for Childhood Arrivals

**Primary/Middle/Secondary School – Attending Classes**
DACA requestors already enrolled and attending classes may submit:
- Current school registration cards,
- Current transcripts;
- Report cards; or
- Progress reports.

The document(s) presented are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level.

A current IEP showing the student's progress to date would also be acceptable evidence that the DACA requestor has been accepted for enrollment and is attending classes.

**GED**
To show "currently in school" based on enrollment in a class for a GED or other equivalent State-authorized exam, look for a letter or other document from an authorized representative of the program, that includes information such as:
- The requestor's name and date of enrollment;
- The duration of the program and expected completion date;
- Whether the course of study is for a GED exam or other equivalent State-authorized exam;
- The program's source of public funding (Federal, State, county, or municipal), if any; and
- The program's authorized representative's contact information.

If the GED/Equivalency program is not publicly funded in whole or in part, documentation from the program is also to provide information about its demonstrated effectiveness. Such information could include, but is not limited to:
- The duration of the program's existence;
- The program's track record in assisting students in obtaining a GED, or a recognized equivalent certificate;
- Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
- Any other information indicating the program's overall quality.

Applying the DACA Guidelines – Education (Continued)

Confidential

App. 1563
DEF - 00004667

**Public or Private College or University, or Community College – Accepted for Enrollment**

Evidence of enrollment in a public or private college or university or a community college may include, but is not limited to:

- An acceptance package and related materials on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced.
    - o Such acceptance package is to include the name and address of the school, the requestor's grade level or class year, and the date or term when the classes are scheduled to commence.
    - o Such acceptance package is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date.

Evidence of acceptance for enrollment can also include:

- A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability;
- A copy of the student's current tuition bill;
- the student's current class schedule containing the list of courses, and the day and time of each class; or
- Any other relevant evidence.


**Public or Private College or University, or Community College – Attending Classes:**

For DACA requestors already enrolled and attending classes, evidence may include, but is not limited to:

- Current school registration cards;
- Current transcripts;
- Report cards; or
- Progress reports.

The document(s) presented are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level or class year.

A current IEP showing the student's progress to date would also be acceptable evidence of enrollment and attending classes.

It is not necessary to RFE for a copy of the high school diploma or GED, unless there are articulable reasons to question the evidence of acceptance and enrollment or attendance in a public or private college or university, or community college.


**Alternative Educational Programs**

DACA requestors can show they are currently in school by enrolling in/attending an alternative education program.

Confidential

Deferred Action for Childhood Arrivals

Different guidelines apply, depending on the type of program and whether the program is publicly or privately funded. Public funding can be in whole or in part and can be:

- Federal;
- State;
- County; and/or
- Municipal.

If the program is not publicly funded, it must show its demonstrated effectiveness.

- Doesn't apply to non-profit literacy programs.


64 -Applying the DACA Guidelines – Education (Continued)


**Alternative Educational Programs (Continued)**

| Alternative Educational Programs – Funding/Effectiveness | | | |
|---|---|---|---|
| Type of Program | Non-Profit Status | Public Funding (in whole or in part) | Demonstrated Effectiveness – Required for each program that is not publicly funded. (Does not apply to non-profit literacy programs). |
| ESL | N/A | Letter from the ESL program administrator or authorized representative providing basic details about the source(s) of funding. | The program administrator or authorized representative is to provide information about the program's demonstrated effectiveness. Such information could include, but is not limited to: |
| **Literacy | A copy of the IRS letter confirming tax exempt status under 501(c)(3) | If, not tax exempt, but publicly funded, a letter from the program administrator providing basic details about the source(s) of funding. | <ul><li>The duration of the program's existence;</li><li>The program's track record in placing students in post-secondary education, job training, or employment;</li><li>Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or</li><li>Any other information indicating the program's overall quality.</li></ul> |
| Career Training and Vo-Tech | N/A | Letter from the school registrar or authorized school representative providing basic details about the source(s) of public funding. | **Refer the case to CFDO if enrolled in a literacy program run by a for-profit entity. |


65 - Applying the DACA Guidelines – Education (Continued)

FOUO – Law Enforcement Sensitive

- 20 -

Confidential

App. 1565

DEF - 00004669

Deferred Action for Childhood Arrivals

| Alternative Educational Programs – Evidence of Acceptance for Enrollment or Attending Classes | | |
|---|---|---|
| Enrolled in/Attending Literacy or ESL Program | | |
| ESL | A letter from the program administrator or authorized representative providing information such as: <br>• The requestor's name; <br>• Date of enrollment; <br>• Duration of the ESL program and expected end date; <br>• The program admin/auth. Rep's contact info. | |
| Career Training and Vo-Tech | Accepted for Enrollment | Attending Classes |
| | An acceptance letter on school letterhead from the school registrar/authorized school representative. Letter is to include: name and address of the program, a brief description of the program, the duration of the program, the date classes will begin, with evidence of registration. <br>Evidence of acceptance for enrollment may also include a copy of the current year registration (intake form/enrollment form), or any other relevant documentation. | • Current attendance records <br>• Transcripts <br>• Report cards <br>• Test reports <br>• Progress reports <br>Documents are to show the name of the school, the name of the requestor, the time period or semester covered by the document, and, if relevant, the current educational or grade level. |

<u>66 - Applying the DACA Guidelines – Education (Continued)</u>
<u>Graduated from School</u>
Evidence of "graduated from school" may include copies of:
• A diploma;
• Transcripts showing the date of graduation; or
• A GED Certificate, certificate of completion, certificate of attendance, or alternate award from a public/private high school/secondary school.

Evidence of GED or equivalent certificate includes, but is not limited to:
• Passed a GED exam; or
• Other comparable State-authorized exam resulting in the issuance of a recognized equivalent of a regular high school diploma under State law.

<u>67 - Applying the DACA Educational Guidelines – Recap</u>

**App. 1566**
DEF - 00004670

Confidential



Interim Review

Fact Pattern:
The requestor is 19 years old and indicated that she went to a U.S. high school for 2 years and was then homeschooled. She submitted:

- Copies of high school transcripts showing attendance for her freshman and sophomore years (2007-2009)
- 2 affidavits indicating she was homeschooled until last year
- A receipt indicating enrollment in an ESL course to start next week

Questions for Discussion:
- Did the requestor meet the "education" guideline? Explain.
- Does this case require a referral to CFDO?

69,70 - Applying the DACA Guidelines – Honorable Military Discharge

App. 1567
DEF - 00004671
Confidential

As an alternative to showing that he/she is currently in school or has graduated from school, a DACA requestor can meet the Secretary's guidelines by showing that he/she is an honorably discharged veteran of the U.S. armed forces or U.S. Coast Guard.

Examples of acceptable evidence of honorable military/Coast Guard discharge include:
- Form DD-214, Certificate of Release or Discharge from Active Duty;
- NGB Form 22, National Guard Report of Separation and Record of Service;
- Military personnel records;
- Military health records; or
  - A military health record will indicate branch of service, but not the character of the service member's discharge;
- Any other relevant document.

The Form DD-214 and NGB Form 22 both contain a section, "Character of Service" listing the type of discharge a service member obtained. The main types of discharge include the following:
- Honorable;
- Under Honorable Conditions (General);
- Under Other Than Honorable Conditions;
- Bad Conduct;
- Dishonorable; or
- Uncharacterized.

To meet the military guideline, the "Character of Service" must be Honorable or Under Honorable Conditions (General).

<u>71 - Applying the DACA Guidelines – Issues of Criminality, Public Safety and National Security</u>

Under the Secretary's guidelines, removal will not be deferred under DACA when the requestor:
- Has been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct; or
- Otherwise poses a threat to national security or public safety.

The guidelines and procedures for cases involving criminal, national security, and public safety issues are covered more in depth later in the training.

# V. Weighing the Evidence and Standard of Proof

App. 1568
DEF - 00004672
Confidential

Deferred Action for Childhood Arrivals

<u>Module Objectives</u>
The objective of this section is to provide a basic understanding of:
- Review primary and secondary evidence;
- Understand how to weigh the totality of the primary and secondary evidence when adjudicating a DACA request;
- Apply the preponderance of the evidence standard in the adjudication of DACA requests; and,
- Understand which DACA guidelines can be supported by an affidavit.

<u>74 - Evaluating the Supporting Evidence</u>
The requestor is to show, by a preponderance of the evidence, that he/she meets the guidelines for deferral of removal under DACA.

Evaluate and weigh the sufficiency of all evidence according to its relevancy, consistency, and probative value.

Consider any additional and new facts and/or evidence in response to an RFE or NOID before rendering a final determination.

<u>75 - Standard of Proof: Preponderance of the Evidence</u>
A DACA requestor is to establish by a preponderance of the evidence that he/she meets the guidelines for the exercise of prosecutorial discretion in the form of deferred action. Under this standard, the requestor must demonstrate that it is more likely than not that he or she meets those guidelines.
- The preponderance of the evidence standard is a lower standard of proof than both the "clear and convincing evidence" standard and the "beyond a reasonable doubt" standard applicable to criminal cases.
- More likely than not means probable, in other words, 51% or more.

<u>76 - Primary Evidence</u>
Primary evidence is evidence which, on its face, proves a fact.
- In the DACA context, an example of primary evidence that could be submitted to satisfy the age guideline would be a birth certificate.
- An example of primary evidence that could be submitted to satisfy all or part of the CR guideline would be school records.

<u>77 - Secondary Evidence</u>

FOUO – Law Enforcement Sensitive

Confidential

Deferred Action for Childhood Arrivals

Secondary evidence may be submitted to prove a fact or satisfy a guideline when primary evidence is unavailable. Secondary evidence must lead the officer to conclude that it is more likely than not, in other words, probable, that the fact sought to be proven is true.

**_Examples of acceptable secondary evidence to prove date of birth:_** Baptismal records issued by a church showing that an individual was born at a certain time.

**_Examples of acceptable secondary evidence to meet the CR guideline:_** Rental agreements in the name of the DACA requestor's parent, if corroborating evidence in the file (such as school or medical records) points to the DACA requestor's residence at that address.

### 78,79 - Affidavits

Affidavits generally will not be sufficient on their own to demonstrate that a requestor meets the DACA guidelines. They can be used to support only 2 DACA guidelines when primary and secondary evidence are unavailable:

- A gap in the documentation demonstrating that the requestor meets the five year continuous residence requirement; and
- A shortcoming in documentation with respect to the brief, casual and innocent departures during the required CR period.

Two or more affidavits, sworn to or affirmed by people other than the requestor, who have direct personal knowledge of the events and circumstances, can be submitted in these 2 instances.

Weigh the assertions in the affidavits in light of the totality of all the evidence presented. When evaluating what weight to give an affidavit, take the following into consideration:

- An affidavit needs to be signed and dated;
- The identity of the affiant needs to be readily ascertainable from the information in the affidavit;
- The affidavit should state the relationship between the affiant and the DACA requestor and contain facts that are relevant to the guideline the requestor seeks to meet; and
- The affidavit should state the basis of the affiant's knowledge and exhibit first-hand knowledge of the fact asserted.

### 80 - Weighing the Evidence

The totality of the documentary evidence should be reviewed to determine whether the facts needed to establish a specific guideline have been demonstrated.

- Do not deny outright for lack of evidence or derogatory information
- Issue an RFE when initial or additional evidence is needed, using the standard templates.
  - RFE response time is 87 days (See SOP Appendix D for RFE call-ups and templates)
- Issue NOIDs to provide the requestor with the opportunity to rebut derogatory evidence or when it is clear that the guidelines are not met.
  - NOID response time is 33 days.

### 81 - Totality of the Evidence

App. 1570
DEF - 00004674

Review the totality of the documentary evidence to determine whether the facts needed to establish a specific guideline have been demonstrated.

***When one piece of evidence can satisfy more than 1 DACA guideline:***
- Example: School transcripts can show "currently in school", CR, and presence on 6/15/12, and can also corroborate age.

***When multiple documents viewed together can satisy 1 DACA guideline:***
- Example: A DACA requestor could meet the "present in the U.S. on 6/15/12" guideline by submitting various forms of credible documentation evidencing that he/she was present in the United States shortly before and shortly after June 15, 2012, such as bank statements, phone records, with receipts with identifying information, etc. The officer could infer, based on the totality of the evidence, that the individual meets this guideline.

# VI. Removal Proceedings

App. 1571
DEF - 00004675
Confidential

Module Objectives

The objective of this section is to provide a basic understanding of:

- The effect of removal proceedings;
- The various charging documents used to place an individual in removal proceedings; and,
- How removal grounds can affect the exercise of prosecutorial discretion for DACA.

84 - Effect of Removal Proceedings

**The Importance of Knowing Whether the Requestor is in Removal Proceedings**

There is no minimum age requirement for DACA requestors in removal proceedings. The charging document could show:

- The date and manner of entry; and
- If admitted or paroled, the date the admission or parole expired.

Depending on the nature and severity, the underlying removal ground may adversely impact consideration under DACA.

85,86 - Determining Whether or Not In Removal Proceedings

An individual is not in removal proceedings if:

- He/she was never served with a charging document;
- He/she was granted voluntary departure before the commencement of proceedings and there is no entry in EARM or in other systems;
- Removal proceedings have been terminated; or
- He/she left the U.S. under an outstanding order of deportation, exclusion or removal.

In most cases, the removal history will be in EARM and there will be a related TECS hit for removal proceedings.

An individual is in removal proceedings if:

- A charging document was served on the individual AND filed with the Immigration Court placing him/her in proceedings;
- Voluntary departure was issued after removal proceedings were initiated and he/she has not departed the United States;
- An alternate order of voluntary departure/removal or deportation was issued and he/she did not depart by the specified date;
- The removal proceedings have been administratively closed; or
- There is a final removal order and he/she has not departed the United States.

Removal proceedings should yield a TECS hit. Check the TECS resolution memo and EARM for pertinent information relating to the removal proceedings and the underlying removal charges.

87,88 - Charging Documents

Confidential

Form I-862, Notice to Appear, initiates a removal proceeding under INA 240, and is the most common kind of charging document.

Other currently used charging documents includes:
- Form I-860, Notice and Order of Expedited Removal.

These charging documents were used for "deportation" and "removal" proceedings before IIRIRA:
- Form I-221, Order to Show Cause and Notice of Hearing, issued before June 20, 1991;
- Form I-221, Order to Show Cause and Notice of Hearing, issued on or after June 20, 1991, with the immigration court;
- Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, prior to April 1, 1997;

### 89 - Underlying Removal Ground Impacts DACA

If the DACA requestor indicates in Question #3.a. in Part 1 of Form I-821D that he/she has been in removal proceedings, and/or routine systems, background, and fingerprint checks indicate that the requestor is in removal proceedings, proceed as follows:
- Review the underlying removal charges; and
- Review the derogatory information obtained through routine checks.

### 90 - Underlying Removal Ground Does Not Impact DACA

An individual in proceedings can have his/her removal deferred under DACA if the underlying removal ground does not adversely impact the exercise of discretion.
- Review the results of all routine systems, background, and fingerprint checks.
- If those routine checks do not reveal any additional derogatory information (such as issues of criminality, national security, or public safety), proceed with adjudication.

### 91 - Important Note

Do not rely solely on the grounds listed in the charging document and/or EARM.
- Not all issues may have necessarily been captured in the charging document.
- New issues may have arisen since the charging document was issued.

Review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of discretion for DACA.

### 92 - Reinstatement of the Prior Removal Order

Confidential

Deferred Action for Childhood Arrivals

When an individual reenters the United States illegally after having been removed or after leaving voluntarily under an order of removal, he/she is subject to reinstatement of the prior removal order from its original date. INA 241(a)(5)

To meet the DACA guidelines, the removal AND the subsequent illegal reentry had to occur before June 15, 2007.
- Requestor is to have at least 5 years CR before June 15, 2007 up to the date of filing.
- Removal is not a BCI departure – it interrupts the CR period.


<u>Exercise:</u>
Fact Pattern:
The requestor claims that he is 14 years old and indicates that his proceedings were administratively closed.
Questions for Discussion:
- How would you verify whether or not the requestor is currently in proceedings?
- If the requestor is in proceedings, what impact does it have on his DACA request?


# VII. Background & Security Checks

Confidential

App. 1574
DEF - 00004678

Deferred Action for Childhood Arrivals

Module Objectives
The objective of this section is to provide a basic understanding of:
- Identify mandatory background checks
- Identify if a case needs to be referred to the BCU DACA Team
- Comprehend how to process various background-check elements


96,97 - Background & Security Checks
Background checks refer to the analysis of the results of security checks or any other identified concern relating to national security of public safety and the actions required to resolve the concern.

The routine background and security checks to be performed on DACA are:
- TECS queries; and
- FBI fingerprint checks.

Conduct the resolution in accordance with current NaBISCOP and CARRP policies.

The CARRP process will guide the resolution of all TECS hits with national security issues.
- The BCU will process all non-KST / KST national security concerns.
- The CARRP unit will route cases for supervisory review before the decision is issued.
Cases with issues of criminality should be handled per standard protocols according to whether Egregious Public Safety (EPS) issues are present, as described in the November 7, 2011 NTA memorandum.


98 - Routing and Handling of TECS Hits and LE
For DACA, a specialized adjudication team has been established at each center within the BCU. This team, BCU DACA, will process and adjudicate all DACA requests that have issues of criminality. TECS hit and IDENTs with issues of criminality will be routed directly to the BCU DACA.

When an officer conducts a backend TECS query and the LE returns an issue of criminality that relates, the officer will route the case to the BCU DACA team for further processing.
- If an officer inadvertently receives a DACA request with a criminal TECS hit and/or an LE the officer must route the case to the BCU DACA.

Officers will receive DNRs and non-criminal resolutions from the BCU.

Confidential

99 – BCU FlowChart

Flow chart indicates overview of the background check process once potentially derogatory information has been identified as a result of the security checks or from other sources.



100 - Alias and Date of Birth Search

Confirming a Hit/Match
Post-discovery of potentially derogatory information:
- Determine if the derogatory information "belongs" to the requestor
- Compare the derogatory information to information of the requestor

Uncertain whether the derogatory information belongs to the requestor? – consult with your supervisor

Persistent uncertainty? – supervisors may work through their chain of command and BCU DACA Team

101, 102 - Background & Security Checks (Continued)

Confidential

App. 1576
DEF - 00004680

Deferred Action for Childhood Arrivals

Does the Information Belong to the Requestor?

**Conclusive Match** – determine the appropriate categories:
- National Security
- EPS or other criminal cases
  - Forward to the BCU DACA Team if NS or criminal
- Immigration related or other non criminal

**Inconclusive (TECS/IBIS) Match** –consult your chain of command for appropriate follow-up action
- Process all DNRs
- Process all Immigration related or other non criminal inconclusive matches
- Forward all criminal or NS inconclusive matches to BCU DACA Team

**Resolving the Concern**
- Sample activities of BCU resolution process
  - Contact with other components and/or agencies
  - Referral to ICE
  - Deconfliction
- BCU DACA Team documents findings on each resolution
- BCU DACA Team ISO reviews request following resolution
- All DNR hits identified in the normal adjudicative process will remain in the normal adjudicative workflow
- The BCU DACA Team will review all related hits that will result in a denial due to criminal or NS concerns

<u>103,104 - Systems Checks – TECS</u>
Conduct batch TECS queries on primary name and DOB within 15 days; Conduct a separate query for each name and DOB (alias) combination.  Some files may contain multiple names and/or DOBs.  TECS query results are valid for 180 calendar days.

TECS views include:
- records of wants and warrants
- lookouts from the NCIC (National Crime Information Center)
- USCIS has access to other types of records

Review the following in the A-file for name and DOB combinations and aliases:
- Form I-821D
- Form I-765 and I-765WS
- All supporting documents filed with the I-821D and I-765
Other DACA-related documents in the A-file

<u>105 - Possible Results of TECS Queries:</u>
- **NO MATCH FOUND** – screen displays "No Match Found"
- **TECS RECORD** – system located one possible match
- **HIT LIST** – system located more than one possible match

<u>106 - Types of TECS Hits</u>
**National Security (NS)** – may indicate an NS concern

Confidential

**Egregious Public Safety** – See Nov. 7, 2011 NTA memorandum
**INTERPOL** – Indicates record of international want, warrant, etc.
Examples of other TECS hits include:
- o   Agricultural violations
- o   Visa overstays
- o   Marriage fraud
- o   Absconders

## 107 - Systems Checks – TECS (Continued)
Determine if the result of a security check relates to the requestor
Review and resolve security checks
Complete the background checks
NaBISCOP policy
-  procedures, search criteria, and best practices
- Procedures and formats for resolving hits

## 108 - Systems Checks – Fingerprints
FBI Fingerprint Check – provides summary information of a U.S. administrative or criminal record
ASC captures fingerprints for full biometrics capture
Four results from FBI system:
- 
- **LE**
- 
- 

## 109 - Systems Checks – Biometrics/Prints Collection
All requestors must be scheduled for biometrics capture at an ASC
Requestors younger than age 14 will have press print captured
All other requestors require both biometrics and 10-prints

## 110 - Interim Review
Fact Pattern Number:

On his Form I-821D, a requestor listed his name and date of birth as John Chacon, May 17, 1988. An employer affidavit lists the requestor's first name as Johan with a DOB May 17, 1989.

What additional SQ11 queries must the officer conduct?

# VIII. Issues of Criminality and Public Safety

Confidential

Deferred Action for Childhood Arrivals

Module Objectives

This module is geared more towards the BCU DACA Team, but all officers should be familiar with issues of criminality and case handling. Review fingerprint and RAP sheet handling

- Understand and be able to apply the criminality guidelines relevant to DACA
- Present and understand the criminal definitions to be used in DACA adjudications
- Understand the role of the centralized BCU DACA Team
- Understand when supervisory review is mandatory
- Review Process Handling

113 - Introduction

The Secretary's memorandum identifies the issues of criminality and public safety that would, as a matter of discretion, result in a decision to not defer removal under DACA.

*Criminality*

No conviction for:
- A felony offense;
- A significant misdemeanor; or
- Three or more non-significant misdemeanors.
  - Not occurring on the same day and not arising out of the same act, omission, or scheme of misconduct.

*Public Safety*

Public safety concerns are evaluated under the totality of the circumstances by taking into account the DACA requestor's entire criminal record and any other relevant factors.

114 - Fingerprints and Rap Sheets

At the time of adjudication, the file should contain a screen print of either the FBI Query with the RAP sheet (if applicable) or the C3 based Fingerprint Tracking System to indicate the present status of the fingerprint checks. A definitive fingerprint-clearance response is required before any DACA request for an individual 14 years of age and older may be approved.
- When there is a positive TECS hit and/or an IDENT, these cases will not be routed to the floor, but rather, to the dedicated BCU DACA team.
- Officers should not see these cases.
- If an officer does see such a case, or encounters issues of criminality in the course of adjudication or conducting the back-end TECS check, route the case to the BCU DACA Team.

115,116 - Fingerprints and Rap Sheets (Continued)

Confidential

App. 1579
DEF - 00004683

Deferred Action for Childhood Arrivals

Validity of Print Results

While normally the response is valid for 15 months from the date the FBI processed the fingerprints, for DACA prior fingerprint results will not be accepted. Officers should utilize FD-258 to verify that the fingerprint check was completed specifically for the DACA request.

Although biometrics will not be cloned from other filings, if the requestor has a criminal history with an IDENT result and there are already RAP sheets in the file, request updated RAP sheets through the Fingerprint Refresh Resubmission Process.

**Getting Fingerprint Results**

The fingerprint clearance should be complete before the case is sent for adjudication. However, if there is no fingerprint result printout in the file, the officer is responsible to perform a query of FBI Fingerprint Tracking in CLAIMS Mainframe and to also check SNAP to see if the requestor has been scheduled for an appointment at an ASC.

**A-number/Alias Information on the RAP Sheet**

If any other A-numbers are found on the RAP sheet, the files must be requested, reviewed, and consolidated prior to any final action. If the RAP sheet indicates any aliases or alternate dates of birth, the officer must conduct required background and systems checks on all additional name/DOB combinations.

117 - Understanding Fingerprint Query Results

There are four possible results of a fingerprint query:

- 
- 

<div style="border:1px dashed;text-align:center;font-size:72px;font-weight:bold">LE</div>

- 

- 

118 - Procedures for Unclassifiable FBI Prints

An FBI response might indicate that an individual's fingerprints were unacceptable for fingerprint analysis. After an initial "unacceptable" response, the individual must be reprinted.

If the first fingerprint results are Unclassifiable, check SNAP to see if the requestor appeared for a second ASC appointment.
- If yes, check BBSS for the results.
- If not, schedule a second ASC appointment, using priority code "1" in SNAP to bypass the 60 day waiting period for rescheduling.

119 - Procedures for Unclassifiable FBI Prints (Continued)

Confidential

Deferred Action for Childhood Arrivals

RFE guidance for unclassifiable prints
If the second set of fingerprints are returned as "Unclassifiable", the officer should issue DACA RFE 150 call up from Appendix D for police certificates.

The DACA requestor must provide (1) police clearances for the previous five years from all places of residence, and (2) a statement disclosing any and all criminal history (arrests, charges, etc.), including overseas.

120 - RAP Sheet: Accuracy and Completeness Concerns
Since participation by state and local agencies is not mandatory, the FBI Fingerprint check does not contain records from every jurisdiction. Therefore, <u>LE</u> does not mean that the individual has no administrative or criminal history.

If a criminal hit comes up in another system or the individual has provided testimony, a sworn statement, or other evidence of, criminal activity that does not appear in the fingerprint results or RAP sheets, USCIS personnel should follow specific form SOPs (where applicable) for determining what additional steps are needed to address the derogatory information.

121 - Criminal Issues Specific to DACA
An individual may not be considered for DACA if he or she has been <u>convicted</u> of:
- A felony offense;
- A *significant misdemeanor* offense; or
- *Three or more* other misdemeanors,

**OR**, poses a threat to national security or public safety;
UNLESS, USCIS determines there are *exceptional circumstances*.

**<u>The determination that exceptional circumstances exist for deferral of removal under DACA will be made only at the HQ level and in extremely rare cases.</u>**

What is a Felony?

123 - Felony
A felony is a federal, state or local criminal offense for which the maximum term of imprisonment authorized is for a period of more than one year.
A requestor convicted of <u>one felony</u> will be found not to meet the guidelines for DACA consideration, unless USCIS determines there are exceptional circumstances.

Confidential

App. 1581
DEF - 00004685

What is a Significant Misdemeanor?

125,126 - Significant Misdemeanor
A significant misdemeanor is a misdemeanor that involves:
- Domestic violence
- Sexual abuse or exploitation
- Burglary
- Unlawful possession or use of a firearm
- Drug distribution or trafficking, or
- Driving under the influence of alcohol or drugs;

OR
- for which the individual was sentenced to *time in custody* of more than 90 days.


Sentence must involve time to be served in custody, and *does not include suspended sentence*.
Time in custody does not include period in ICE custody that may follow completion of criminal sentence.
A requestor convicted of one significant misdemeanor will be found not to meet the guidelines for DACA consideration, unless USCIS determines there are exceptional circumstances.


What is a Misdemeanor?

128 - Misdemeanor
Any federal state or local criminal offense, if:
- maximum term of imprisonment authorized is for a period of more than 5 days but not more than one year, regardless of whether the jurisdiction in which the offense is committed classifies the offense as a misdemeanor.


129 - Multiple Misdemeanors
The requestor does not meet the guidelines for DACA consideration if convicted of *three or more non-significant misdemeanors*, unless USCIS determines there are exceptional circumstances.
Misdemeanors occurring *on the same day* or arising out of the same act, omission, or scheme of misconduct, will only be counted as one misdemeanor for these purposes.


130 - Misdemeanors (Continued)
A *minor traffic offense*, such as driving without a license, will not be considered a misdemeanor for purposes of this process.
*State law immigration-related offenses* characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors.
- Distinguish from federal immigration offenses.


131 - Foreign Convictions

Confidential

Deferred Action for Childhood Arrivals

*Will generally not be treated as a disqualifying felony or misdemeanor.*
May be relevant to public safety concerns and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted.
Cases involving foreign convictions should be elevated for supervisory review.


What Constitutes a Conviction?

<u>133 - What Constitutes a Conviction?</u>
Defined in INA § 101(a)(48)(A) as:
- A formal judgment of guilt entered by a court, or
- If adjudication of guilt has been withheld, where:
  - a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; *<u>and</u>*
  - the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.


<u>134 - Formal Judgment of Guilt by Court</u>
The entry of guilt can be found on the record of conviction itself.

If the alien pled guilty, then there will be an indication of the plea and the court's finding of guilt.

If the alien went to trial, then the conviction record should indicate that the defendant was found guilty by judge or jury.

Court records vary from jurisdiction to jurisdiction, but you want to look for plea, finding, entry or similar words relating to guilt or a no contest (*nolo contendere*) plea

Indication that entry of judgment of guilt was not made include words such as "withheld" or "deferred".


<u>135 - No Entry of Judgment of Guilt</u>
Sometimes called Continued without a Finding (CWOF); adjudication withheld; deferred adjudication, etc. Different jurisdictions use different terminology.

If adjudication has been withheld, then to constitute a conviction, there must be 2 prongs satisfied:
      (1) Verdict, Plea or finding of guilt *and*
      (2) Punishment or restraint on liberty

Confidential

**App. 1583**
DEF - 00004687

Deferred Action for Childhood Arrivals

136 - Conviction - Pleas

If there is no formal judgment of guilt, then for the court's action to constitute a conviction:

- The defendant must plead guilty or the court must make a finding of guilt.
- A "nolo contendere" or "no contest" plea is still a guilty plea for immigration purposes.
- Therefore, a "deferred prosecution" or pre-trial diversion program that does not require the defendant to plead guilty or require the court to make any finding of guilt cannot constitute a conviction.

137 - Conviction - Punishment, Penalty, Restraint on Liberty

Imposition of costs in a criminal case constitutes a form of punishment for INA 101(a)(48)(A) definition of conviction. *Matter of Cabrera*, 24 I&N Dec. 459 (BIA 2008).

Punishment might be fines.

Probation, community supervision etc., is a restraint on liberty.

Where the only consequence of a criminal judgment is a suspended non-incarceratory sanction, however, it may not constitute a conviction for immigration purposes. *Retuta v. Holder*, 591 F.3d 1181 (9th Cir. 2010) (a suspended fine was not a punishment or penalty sufficient to be a conviction).

138,139 - Examples of Possible Valid Convictions under the INA

Pleas. An Alford plea, no contest plea and nolo contendere plea all satisfy the "finding of guilt" requirement for a conviction. See *Abimbola v. Ashcroft*, 378 F.3d 173 (2d Cir. 2004)(Alford plea is a guilty plea and therefore may form the basis of a conviction).

Deferred Adjudication. Both the Board and the federal courts have held that a deferred adjudication is a conviction for immigration purposes where it involves an admission of guilt and limitations on the defendant's liberty. See *Matter of Punu*, 22 I&N Dec. 224 (BIA 1998) (Texas deferred adjudication is a conviction).

One court has held that a Massachusetts conviction, in which the defendant admitted to facts sufficient for a finding of guilt, with a continuation without a finding (CWOF), and with the imposition of a restitution order, is a conviction under the INA. *De Vega v. Gonzales*, 503 F.3d 45 (1st Cir. 2007).

A "guilty filed" disposition under Massachusetts law satisfies the finding of guilt requirement and may constitute a conviction under the INA. *Griffiths v. INS*, 243 F.3d 45 (1st Cir. 2001).

Confidential

Deferred Action for Childhood Arrivals

140 - Examples (Continued)

Court Martial. A judgment of guilt that has been entered by a general court-martial of the United States Armed Forces qualifies as a conviction. *Matter of Rivera Valencia*, 24 I&N Dec. 484 (BIA 2008).

Probation Before Judgment. A court's grant of probation before judgment generally constitutes a conviction under the INA. See generally, *Yanez-Popp v. INS*, 998 F.2d 231 (4th Cir. 1993).

Guilty Pleas Held in Abeyance. A guilty plea held in abeyance may satisfy the statutory definition of conviction. *U.S. v. Zamudio*, 314 F.3d 517 (10th Cir. 2002).

141 - Not a Conviction?

New York's Pretrial Diversion Agreement (PDA) is generally not considered a conviction because guilt has not been established by trial, plea or admission; nor have sufficient facts been admitted to support a finding of guilt. *Iqbal v. Bryson*, 604 F.Supp.2d 822 (E.D.Va. 2009).

It's important to look at the actual diversionary agreement to see whether there was any type of admission or finding of guilt in the written agreement. Generally there will not be, but there are some states where admission of guilt is required for entry into the program (fairly rare to find these)

142 - Convictions - Appeals

A conviction is effective for immigration purposes, including DACA, while it is on direct appeal.

- See *Plane v. Holder*, 652 F.3d 991 (9th Cir. 2011), rehearing en banc denied, 2012 WL 1994862 (2012).
- If the conviction is ultimately reversed on appeal, the DACA requestor is free to file a new request for DACA, with fee, if otherwise eligible

143,144 - Vacated / Expunged Convictions

Generally speaking, convictions may be vacated for one of two reasons

- A conviction may be vacated due to a procedural or substantive defect in the conviction itself
- A conviction may be vacated /expunged to provide post-conviction relief, such as a rehabilitative provision that removes the stigma of a conviction or an expungement for youth offenders or first-time offenders.

*FOR PURPOSES OF DACA ONLY, these expunged or vacated convictions will NOT be treated as disqualifying felonies or misdemeanors.*

Case-by-case assessment to determine whether the person poses a threat to public safety and whether the exercise of prosecutorial discretion is warranted.

Elevate for supervisory review.

Confidential

App. 1585
DEF - 00004689

### 145 - Juveniles

Juvenile delinquency adjudication is not a conviction. *Matter of Devison*, 22 I&N Dec. 1362 (BIA 2001).

A conviction for immigration purposes includes conviction of an alien under age 18 who was charged as an adult.

Juvenile delinquency may impact public safety issues when considering a request under DACA.

May also be considered in determining whether the exercise of prosecutorial discretion is warranted.

### 146 - Pardons

A full and final unconditional U.S. pardon by the President or by the Governor of a state can erase a conviction for immigration purposes. See *Matter of Nolan*, 19 I&N Dec. 539 (BIA 1988). Underlying offense may impact public safety issues when considering a request under DACA. May be considered in determining whether the exercise of prosecutorial discretion is warranted. A limited pardon will not erase conviction for immigration purposes.

### 147 - Exceptional Circumstances

The requestor must specifically ask for the exception and must fully document the exceptional circumstances.

Criminal history and activities compromising national security and public safety carry considerable weight in the totality of the circumstances analysis.

Requires truly exceptional circumstance to overcome.

**The determination that exceptional circumstances exist for deferral of removal under DACA will be made only at the HQ level and in extremely rare cases.**

### 148 - Handling Criminality, National Security or Public Safety Concerns

FOUO – Law Enforcement Sensitive

App. 1586
DEF - 00004690

Confidential

The evaluation of criminal issues with respect to a DACA request is done after BCU vetting of the TECS check and the FD 258 fingerprint results from the FBI.

If the up-front TECS check reveals a hit, the DACA request goes to BCU/Triage.

If the hit relates, BCU triage routes the DACA request to the BCU for resolution.

If the FD 258 fingerprint results return an IDENT, the BCU reviews the results to determine whether they are germane to the DACA request and the exercise of prosecutorial discretion. BCU will adjudicate all DACA requests with IDENT.

For guidance on when to seek supervisory review of a denial involving issues of criminality, see Chapter 9, Section D.

### 149 - Handling Criminality, National Security or Public Safety Concerns (Continued)

The evaluation of criminal issues with respect to a DACA request is done after BCU vetting of the TECS check and the FD 258 fingerprint results from the FBI. If the up-front TECS check reveals a hit, the DACA request goes to BCU/Triage.

#### BCU Triage and Resolution Overview

1. If the hit relates, BCU triage routes the DACA request to the BCU;
2. BCU documents the TECS hit and the resolution in the ROIQ. While  the DACA request is undergoing the up-front TECS check, the DACA requestor is placed in the scheduling queue for an ASC appointment to have his/her biometrics captured;
3. If the FD 258 fingerprint results return an IDENT, the BCU reviews the results to determine whether they are germane to the DACA request and the exercise of prosecutorial discretion;
4. BCU handles the case through to completion.

### 150 - Evaluating Cases for EPS Concerns

The scope of criminal offenses deemed to be Egregious Public Safety (EPS) concerns are described in the November 7, 2011 NTA memorandum and the accompanying MOA between USCIS and ICE. The nature and severity of the underlying crime or in the case of multiple crimes, the totality of the crimes, are weighed heavily and are significant unfavorable factors in evaluating public safety concerns, regardless of the disposition of the crime(s).

- For example, an individual with multiple arrests with no convictions could pose significant public safety concerns.
- Similarly, an individual arrested for multiple assaults or other violent crimes could be deemed a public safety risk.

### 151 - Determining When a Case Requires BCU Handling

Confidential

DEF - 00004691

Deferred Action for Childhood Arrivals

For Cases Indicating Criminal Issues
When the requestor answered "No" to criminality questions on the I-821D:

| If... | AND... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), **LE** **LE** | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s), **LE** **LE** | The derogatory information clearly shows that the requestor does not meet the DACA guidelines, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File(s), **LE** **LE** | The derogatory information is unclear, | |
| There is derogatory information in the A-File(s), **LE** **LE** | There are clear charges or clear derogatory information, but no clear judgment or conviction, | |

## 152 - Determining When a Case Requires BCU Handling (Continued)

For Cases Indicating Criminal Issues (cont.) If the requestor answered "Yes" to criminality questions on his/her DACA request then:

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records; | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear, and the requestor did not provide any additional information or documentation; | |

## 153 - Handling DACA Cases with Public Safety Concerns

### Criminal Cases with EPS Concerns
If the BCU determines the case presents issues of criminality, processing of the DACA request must be categorized as either EPS or non-EPS.
- Criminal cases determined to be Non-EPS are handled and adjudicated by the BCU DACA Team.
- Criminal cases determined to be EPS are handled by the BCU DACA Team. The BCU DACA Team shall refer the case to ICE prior to adjudicating the case, even if USCIS can deny the DACA request on its merits. If ICE does not accept the referral, the BCU will adjudicate the case.

## 154 – Handling cases Involving NS Concerns

Confidential

App. 1588
DEF - 00004692

Deferred Action for Childhood Arrivals

## Requirement for CARRP Vetting

Any DACA case posing national security (NS) concern is handled through the CARRP process according to existing protocols.

## Handling NS Cases

If the requestor answered "No" to questions on the I-821D related to issues of violent crimes, terrorism, human rights violations, persecution of others, etc. then:

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the AFile(s), **LE** | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the AFile(s), **LE** | The derogatory information clearly shows that the requestor did or may have engaged in terrorist activities or human rights violations, | Put the case through the CARRP process per standard protocols. |

## 155 - Handling Cases Involving NS Concerns (Continued)

If the requestor answered "Yes" to questions on the I-821D related to NS issues of violent crimes, terrorism, human rights violations, persecution of others, etc. then:

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Put the case through the CARRP process per standard protocols. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

## 156 - Handling Cases Indicating Possible Gang Membership / Activity

Confidential

App. 1589
DEF - 00004693

Deferred Action for Childhood Arrivals

If the requestor did not disclose his/her gang membership and answered "No" to questions on the I-821D to relevant criminality, NS and public safety issues, then:

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), LE | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s) LE LE | The derogatory information clearly shows that the requestor is or may be a gang member, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File(s) LE LE | The derogatory information is unclear, | |

157 - Handling Cases Indicating Possible Gang Membership / Activity (Continued)

If the requestor disclosed issues indicating gang membership on his/her I-821D, then:

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

Exercise:

Fact Pattern Number: ____

The requestor states on his I-821D that he has been arrested and convicted of a crime; however, he does not submit the arrest record and disposition. Also, his fingerprints results are non-IDENT.

What actions are required and by whom in order to resolve the issue of criminality?

159 - When Supervisory Review is Required for Denials Involving Issues of Criminality, Public Safety, or National Security

Denials due to the following issues of criminality require supervisory review:
- Conviction for any crime committed before reaching age 18, and was tried as an adult; or
- Conviction for a "significant misdemeanor;" or
- No criminal convictions and outwardly appears to meet the guidelines in the Secretary's June 15, 2012 memorandum; however, based on other derogatory information obtained through routine systems and background/security checks, there are credible reasons to believe that the requestor poses a threat to national security or public safety. In these instances the officer should refer the proposed denial for supervisory review after the case has been processed through the CARRP process.

**NOTE:** These are not the only denials that require supervisory review. The full list is discussed in the Decisions module.

# IX. Fraud and Misrepresentation

Confidential

Deferred Action for Childhood Arrivals

Module Objectives
Understand how to detect potential fraud in the DACA context and when to refer to CFDO for further research and evaluation.
Identify what work product you can expect from the CFDO.
Describe the purpose of the Intelligence Compass.

162,163 - Fraud Review and Fraud Referrals
In the normal course of adjudication, officers should be aware of potential fraud indicators.

Fraud encompasses any material representation or omission, accompanied by an intent to deceive.

Fraud-related concerns should be addressed according to the March 2011 Fraud Detection SOP and the 2008 ICE/USCIS Investigation of Immigration Benefit Fraud MOA.

In the immigration context, fraud is a willful misrepresentation of a material fact. An omission of a material fact can also constitute a willful misrepresentation, rising to the level of fraud.

When reviewing an immigration request, a finding of fraud is generally supported the by presence of the following three elements.
1. There must have been a misrepresentation or concealment of a fact;
2. The misrepresentation or concealment must have been willful; and
3. The fact must be material.

A finding of fraud is also supported when the immigration filing contains fraudulent documents that are germane.

164,165 - How to Evaluate Inconsistencies
Many DACA requestors were brought to the United States as young children by their parents.
Documents that officers are generally accustomed to seeing may or may not be available.
The absence of a given document does not in and of itself mean that a guideline is not met, nor is it necessarily an indicator of fraud.
DACA requestors have spent a significant portion of their lives in the United States as minors. Thus, the requisite intent normally associated with fraud and willful misrepresentation may not be present.

Applying the concept of the totality of the circumstances, officers should look at the entire record, including the DACA request, the supporting documents, the results of background and security checks, and any information obtained from routine systems checks.
One example of an inconsistency could be the use of different names.
- Officers might see name discrepancies in school or employment records.
- Name discrepancies, standing alone, may not necessarily be a fraud indicator.
- Officers need not issue an RFE for evidence of a legal name change or other evidence, or refer the case to CFDO, if they can reconcile the discrepancy by applying the totality of the circumstances test.

166,167 - Potential Fraud Indicators

FOUO – Law Enforcement Sensitive                                                                                    - 46 -

Confidential

In the DACA context, examples of *potential* fraud indicators could include:

- Suspected fraudulent documents ;
- Multiple I-765s filed under the DACA program;
- Conflicting addresses on residences and schooling;
- The age on the requestor's birth certificate is not consistent with the average age at the time of graduation (for example, the requestor indicated he was born in 1989, but submitted a 1998 HS diploma);
- Homeschooling without any official supporting documentation;
- Known or suspected fraudulent document preparers;
- Known addresses that are being used as drop boxes or known preparers engaged in immigration fraud; or
- Educational documents from diploma mills or unaccredited institutions.
  - No *.edu website
  - Spelling errors

When needed, CFDO can call the State DOE to verify education.

<u>168 - FDNS in the DACA Process</u>

The Fraud Detection and National Security (FDNS) Directorate administratively investigates allegations of immigration benefit fraud and produces a Statement of Findings (SOF) that adjudicators use to render their decisions.

In the DACA context, the SOF will document all fraud findings and underlying issues impacting the favorable exercise of prosecutorial discretion.

When adjudicating Forms I-821D and I-765 for DACA, officers will refer cases to the CFDO via a fraud referral sheet when there are articulable elements of fraud found within the filing.  Officers will refer cases prior to taking any adjudication action even if there are issues which negate the exercise of prosecutorial discretion to defer removal.

<u>169 - The Work Product You Can Expect From the CFDO</u>

Officers can expect a complete SOF documenting the results of the following:

Extensive systems checks
- USCIS systems
- LEA systems
- Other government systems

Electronic records
- Commercial databases
- Public records
- Education systems

Phone calls
- Schools
- State Departments of Education
- Employers

Confidential

### 170 - Limitations of the CFDO
Interviews only in rare circumstances

Schools may not be able to divulge information to the CFDO due to privacy laws – great variation in school documents.
- As a result, the CFDO's inability to obtain any information from the school is <u>not</u> necessarily indicative of fraud.

Always remember, many DACA requestors might have limited documentary evidence.
- Sometimes one document can meet more than one guideline and other times, several documents, viewed together, can meet a single guideline.


### 171 - What Will You Receive from CFDO?
Results of investigation documented in Statement of Findings (SOF)
- Fraud Found, Fraud Not Found, Inconclusive
Fraud Found SOF can be used to issue a Notice to Appear
One piece of the evidence puzzle


### 172 - CFDO Referrals and Responses
The CFDO findings will be recorded in FDNS-DS and reported in an SOF and placed in the A-file to enable officers to make accurate and informed decisions on the DACA requests.

Denials based on a finding of fraud must be recorded in C3.

DACA cases denied due to confirmed fraud shall be referred for NTA issuance in accordance with the NTA memorandum dated November 7, 2011. The appropriate NTA charge will be determined on a case-by-case basis in consultation with local counsel.


### 173 - Inadmissibility Due to Fraud or Misrepresentation
Individuals requesting DACA are <u>not</u> subject to the 212 inadmissibility grounds, because they are neither applying for a visa nor seeking admission to the United States. Instead, they are seeking the exercise of for deferral of removal under DACA.

*If Fraud is found in a DACA request*
The presence of confirmed or suspected fraud issues are germane in deciding whether it is appropriate to defer removal under DACA.
- As a result, when an individual is found to have committed fraud in connection with a DACA request, the DACA request is denied not because the individual is inadmissible due to fraud, but rather, because the fraud negates the exercise of discretion to defer removal.
  - Denials are to be supported by a properly documented SOF
  - NTA issuance in accordance with the NTA memorandum dated November 7, 2011.

Confidential

Deferred Action for Childhood Arrivals

<u>174,175 - The Intelligence Compass</u>
Identifies trends and patterns in immigration, migrant flows, and fraud practices, as well as fraud indicators. It is an additional tool available to officers to assist them in established fraud detection procedures.

Does not in itself establish an element of fraud.  It may assist officers in identifying additional lines of inquiry or identifying cases for further scrutiny or referral to Center Fraud Detection Operations (CFDO) or other FDNS officers.

No information in the Intelligence Compass will be used to determine the adjudication of any immigration benefit.

Will address DACA-related fraud as it surfaces in USCIS and other reporting channels

Is based on information reported by USCIS officers in the field, FDNS-DS information, CFDO and other referrals, other DHS Components, and other government agencies

Will post to ECN with keyword search capability.  Other dissemination methods under consideration, including email


<u>176,177 - The Field Information Report (FIR)</u>
Can be submitted by any USCIS employee to report information he or she believes may have value to FDNS Intelligence Division

The Intelligence Division will analyze FIRs in conjunction with other sources for analysis and possible incorporation into the Intelligence Compass

Gives frontline USCIS officers ability to transmit potential fraud leads to other USCIS officers and managers very quickly

Information reported via the FIR does not need to rise to the level of articulable facts nor does it need to be actionable.

Does not replace existing reporting or referral mechanisms, including FDNS-DS
- Should not be used to report employee misconduct
- Should not be used as substitute for other information and intelligence reports by Intelligence Research Specialists (IRS) or collateral duty intelligence officers
FIR submission is important to the reporting and analysis cycle

Information from the field is integral to situational awareness and analysis efforts even where fraud cannot be confirmed

Confidential

App. 1594
DEF - 00004698

Deferred Action for Childhood Arrivals

### 178 - The Reporting and Analysis Cycle



**FDNS ID**

Intelligence Compass

Information to the Field

**USCIS Adjudicators**

Information to HQ FDNS for Further Analysis

Fact Patterns

When examining documents in the file, you notice that the requestor's photocopied foreign birth certificate lists a birth date of May 3, 1983; her dependent military ID (photocopied) shows a birth date of May 3, 1983; but in the header in the top corner of her high school transcripts you see the numbers 19790503.

An ISO notices that 4 DACA cases today have included medical documentation to prove arrival in United States before age 16. All four cases include bills and documents from Mercy Hospital for the treatment of a broken ankle. Review of the files shows other similarities, but no G-28.

Confidential

**App. 1595**
DEF - 00004699

## X. RFE and Plain Language Basics

Module Objectives
The objective of this section is to:
- Understand plain language basics;
- Introduce the use of the standard DACA RFE templates, which are mandatory; and;
- Understand and apply the elements of the new RFE templates.


182,183 -  Plain Language Basics
USCIS policy directs the use of plain language in RFEs, NOIDs, and other communications with its customers

Use of Plain Language in DACA-related RFEs and NOIDs:
- Shows customer focus
- Communicates more effectively
- Reduces time spent explaining
- Improves compliance
- Reduces ambiguity and complaints
- Reduces the likelihood of SRMTs or possible litigation

A goal of Plain Language is that the intended message is clearly and completely understood the first time an individual reads the document.

To create Plain Language content for DACA communications use:
- Simple words
- Active voice
- "You" in place of "the requestor"
- Short sentences (approx. 20 words or less) and brief paragraphs (7 sentences or less)
- Bulleted lists
- Extra blank spaces on the page for readability.


184 - Word and Phrase Usage

| WORD TO AVOID | SUGGESTED ALTERNATIVES |
| --- | --- |
| allege | state; explain; say; suggest |
| claim | state; explain; say; suggest |
| failed to submit | did not submit |
| ludicrous | not credible |
| preposterous | not credible |
| merely | only; or delete altogether |
| outlandish | not credible |
| poppycock | not credible |
| prove | show; establish |
| ridiculous | not credible |

Confidential

### 185 - Clear and Focused RFEs

A series of RFE templates have been created for DACA and are included in the DACA SOP. These DACA RFE templates will be loaded to all centers' common drive/correspondence generator. Use of these RFE templates is mandatory. Individualized, locally created RFEs shall not be used. When an officer encounters an issue for which there is no RFE template, the officer must work through his/her supervisor to identify the issue for SCOPS so that a template can be created.

- Better requests lead to better RFE responses.
- The DACA RFE templates implement standards from the RFE initiative.

### 186 - RFE Tips

- A key goal for DACA is consistency.
- Use the standard DACA RFE templates only.
- Add appropriate additional language to inform the requestor:
  1. What evidence was already submitted,
  2. Why the previously submitted evidence is deficient, and
  3. What evidence he/she needs to provide.

### 187 - Neutral Tone

ISOs are "triers of the facts." This means that RFEs will have a neutral tone and will be only for the purpose of determining whether the guidelines have been met.

### 188 - Use of Legal Citation

The RFE will use Plain Language. Officers should not insert any citations to statutes, regulations, case law, the AFM, etc.

Confidential

Deferred Action for Childhood Arrivals

# XI: Decision Systems Processing

Module Objectives
The objective of this section is to:
- Provide a basic understanding of the requirements to properly update C3;
- Understand the C3 updates required for BCU and CFDO activity;
- Understand the supervisory review process for denials;
- Understand the categories that require supervisory review; and
- Introduce the mandatory DACA denial template.

191 - Processing Decisions
All actions taken on a DACA request must be reflected on C3, including approval, continuation, denial or a customer service inquiry.
Standard History Action Codes will be used with the exception of SRMT actions.
Denials based on a fraud finding must reflect its designated History Action Code ["EC"].

192 - Processing Decisions BCU and CFDO C3 codes
Cases being transferred to the BCU DACA Team – C3 shall be updated with ["FF5"] Sent to the Background Check Unit (BCU) for resolution.

Cases being returned to Adjudications from the BCU DACA Team or just prior to final adjudications by the BCU DACA Team shall be updated with ["HCC5"] Received from Background Check Unit (BCU) with Resolution

Cases being transferred to the CFDO with a fraud referral shall be updated with ["FF1"] Sent to the Fraud Detection Unit (FDU) for Analysis

Cases being returned to Adjudications from the CFDO shall be updated with ["HCC1"] Returned from Fraud Detection Unit (FDU) with Results.

193 - Processing Decisions – Fraud Indicators
If fraud indicators are present during the case review process, the case shall be forwarded to the CFDO with a completed fraud referral sheet prior to any further adjudicatory actions.

If the case is returned with a finding of fraud, the filing shall be denied with a finding of fraud "EC".

Confidential

App. 1598
DEF - 00004702

Deferred Action for Childhood Arrivals

194 - Processing Decisions – RFE

For DACA requests, when requesting additional evidence, an RFE will be used. A NOID will rarely be used. Appendix D has a list of DACA RFE call ups to be used when processing a DACA request

Follow the steps below to process an RFE:

| Step | Action |
|------|--------|
| 1 | Access "Adjudicate a Case" and wand in the Service Center barcode on Form I-821D. |
| 2 | Press [F10] and select "Case Review". |
| 3 | Select<br>• Place in Suspense.<br>• Order Initial Evidence Request Notice. |
| 4 | Press **LE** until you are asked to exit. |
| 5 | Prepare and send the RFE. |
| 6 | Put a supervisory hold on the Form I-765. |
| 7 | Keep the Form I-821D and I-765 together in the A-file. |
| 8 | Route the A-file to clerical/RFE hold as per local procedures. |

195 - Processing Decisions – NOID

Following a determination to issue a NOID, the Service Center must take the following steps to process the NOID.

| Step | Action |
|------|--------|
| 1 | Access "Adjudicate a Case" and wand in the barcode on Form I-821D. |
| 2 | Press [F10]. |
| 3 | Select:<br>• Case Review.<br>• Place in Suspense.<br>• Intent to Deny Notice Ordered. |
| 4 | Press [ESC] until you are asked to exit. |
| 5 | Prepare and send the NOID. |
| 6 | Put a supervisory hold on the Form I-765. |
| 7 | Keep the Form I-821D and I-765 together in the A-file. |

196 - Processing Decisions – Approvals

Confidential

**App. 1599**
DEF - 00004703

After a decision to approve an initial I-821D, the Service Center must follow the steps below to process an approval for a DACA request.

| Step | Action |
|---|---|
| 1 | Perform TECS checks. |
| 2 | Place your approval stamp and signature in the "Action Block" of the I-821D and note the validity dates directly under the approval stamp. |
| 3 | Access "Adjudicate A Case" and wand in the receipt number of the Form I-821D. |
| 4 | From the I-821D (I-821, with "3" in Part 2) screen: Press [F10] and select "Approve the Case". Then select "Approve - Order Notice" to access the approval screen. |
| 5 | Select the appropriate approval phrase. |
| 6 | Complete the following fields:<br>• The valid from date is the date of approval.<br>• The valid to date is 2 years from date of approval.<br>• Send to Clerical – always change the "Y" to an "N". |
| 7 | Press [F4] to save. You will be asked if you want to change case status. Select "Yes". |
| 8 | Press [ESC] until you are asked to exit. |
| 9 | Put in ROP order and place a pink coversheet on the left-hand side of the file. |

### 197 - Processing Decisions – Denials

A denial template has been created for DACA and is included in the DACA SOP. This DACA denial template will be loaded to all centers' common drive/correspondence generator. Use of this denial template is mandatory. Individualized, locally created denials shall not be used. When an officer encounters an issue for which there is no check box on the denial template, the officer must work through his/her supervisor to identify the issue for SCOPS so that the template can be amended.

### 198 - DACA Denial Template

Confidential



U.S. Department of Homeland Security
P.O. Box 30111-30115
Laguna Niguel, CA 92607-1018

**U.S. Citizenship
and Immigration
Services**

Date:

Addressee's Name
Street Address
City, State Zip

Refer to file no.: I-821D WAC_____ / I-765 WAC_____ / A#_____

**NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD
ARRIVALS, FORM I-821D**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.
For the reason(s) indicated below, USCIS has, in its unreviewable discretion, determined that it will
not defer action in your matter. Accordingly, your Form I-765, Application for Employment
Authorization, has also been denied. Deferred action is a discretionary determination to defer
removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or
motion to reopen/reconsider this decision.

☐ At the time of filing your request, you were under the age of fifteen (15) and were not in
removal proceedings, did not have a final removal order, or did not have a voluntary departure
order.

☐ You have not established that you came to the United States before you turned sixteen (16) years
old and established residence at that time.

☐ You have not established that you were under age 31 on June 15, 2012.

☐ You have not established that you have continuously resided in the United States since June 15,
2007, until the date of filing your request.

☐ During your period of residence in the United States, you had one or more absences that did not
qualify as "brief, casual, and innocent."

☐ You have not established that you were present in the United States on June 15, 2012.

☐ You have not established that you were in an unlawful immigration status in the United States on
June 15, 2012.

☐ You have not established that, at the time of filing your request, you were currently in school,
had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a
general educational development (GED) certificate or other equivalent State-authorized exam in
the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed
Forces of the United States.

www.uscis.gov

Confidential

**App. 1601**
DEF - 00004705

Deferred Action for Childhood Arrivals

WAC_____   I-765 WAC_____   A#_____
Page 2

☐ You have been convicted of a felony or a significant misdemeanor.

☐ You have been convicted of three or more misdemeanors.

☐ You have not established that you warrant a favorable exercise of prosecutorial discretion.

☐ You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

☐ USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

☐ You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

☐ You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending.

☐ USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

Sincerely,

Kathy A. Baran

Kathy A. Baran
Director, California Service Center

cc: Attorney's Name

Confidential

App. 1602
DEF - 00004706

Deferred Action for Childhood Arrivals

199,200,201 - Processing Decisions – Denials (Continued)

Supervisory Review on Denials

Officer <u>must</u> obtain supervisory review before entering the final determination if the denial is based upon:

1. Conviction as an adult for crime committed as a minor;
2. Convicted of a "significant misdemeanor";
3. No criminal convictions, but there are credible reasons to believe the requestor poses a threat to national security or public safety. In these instances the officer should refer the proposed denial for supervisory review after CARRP vetting has been completed;
4. Departures during the CR period do not seem to be "brief, casual, and innocent";
5. Requestor is not "currently in school," but claims that he/she meets the guidelines based on enrollment in a non-academic or vocational class; or
6. The CFDO has issued a statement of findings with confirmed fraud.


"Withholding of the material fact(s)" can be a part of the reasoning for not exercising prosecutorial discretion if the denial is based on convictions and/or arrests that:

1. occurred <u>before</u> the requester filed the Form I-821D, and
2. the requester did <u>not</u> disclose this derogatory information,


If the supervisor determines that the case should be approved, process for approval and document the file as appropriate, with the exception of a fraud finding by the CFDO.

In novel, complex, or sensitive cases, supervisors must refer the case to HQSCOPS through their chain of command.

Confidential

App. 1603
DEF - 00004707

Deferred Action for Childhood Arrivals

<u>202 - Processing Decisions – Denials (Continued)</u>

When the denial falls under one of the categories that requires supervisory review, ensure that concurrence has been obtained <u>before</u> processing the DACA request for denial.

| Step | Action |
|------|--------|
| 1 | Perform TECS checks. |
| 2 | Access "Adjudicate a Case" and wand in the barcode on the I-821D |
| 3 | Press [F10]. |
| 4 | Select:<br>•"Deny the Case".<br>•"Order Denial Notice".<br>•"Yes" to the prompt, "Change Case Status?" |
| 5 | Remove the Supervisor Hold:<br>•Press [ALT] + [F8] at the same time.<br>•Enter User ID and Password.<br>•Press [F4].<br>•Select "Confirm Action". |
| 6 | Press [ESC] until you are asked to exit. |
| 7 | Place your denial stamp and signature in the "Action Block" of the I-821.<br>**NOTE: The date on the denial stamp should be the date of adjudication.** |
| 8 | Prepare and send the denial. |
| 9 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 10 | Process the I-765 for denial. See Chapter 12. |

Confidential

App. 1604
DEF - 00004708

203,204- Processing Decisions - Abandonment Denials

Abandonment denials are initiated on Form I-821D in the following instances:

- Failure to respond to an RFE or NOID;
- Failure to appear at an ASC for biometrics collection within the specified time frame.

Process the I-821D abandonment denial only after all A-files are retrieved.

| Step | Action |
|------|--------|
| 1 | Ensure that no other addresses exist: <br> 1. Review the file for any correspondence received; <br> 2. Review the returned envelope for any changes from the post office; <br> 3. Check C3, National Claims, and AR11 for an alternate address or an address change; <br> 4. Check the systems to see if a more recent DACA request was submitted with updated address; and <br> 5. Check Forms I-821D and I-765 to ensure that there is no different address provided between the two forms. |
| 2 | Perform TECS checks. |
| 3 | Access "Adjudicate a Case". |
| 4 | Press [F10]. |
| 5 | Select: <br> • Deny the Case. <br> • Order "Abandonment Denial Notice," if denial paragraph information pops up, press "ESC" once. <br> • Press F4 to save. <br> • "Yes" to the prompt "Change Case Status?" |
| 6 | Remove the Supervisory Hold at the main screen: <br> • Press [ALT] + [F8] at the same time. <br> • Enter User ID and password. <br> • Press [F4]. <br> • Select "Confirm Action". |
| 7 | Press [ESC] until you are asked to exit. |
| 8 | Place your denial stamp and signature in the "Action Block" of the I-821D. <br> **NOTE:** The date on the denial stamp should be the date of adjudication. |
| 9 | Prepare and send the denial. |
| 10 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 11 | Process the Form I-765 for denial.  See Chapter 12. |

App. 1605 <br> Confidential <br> DEF - 00004709

<u>205 - Processing Decisions - Abandonment Denials (Continued)</u>

NOTE: If the RFE/NOID was not stamped as a "No Response," the officer should write it on the document. A "No Response" will ALWAYS remain on top of the request for proper ROP and the officer will place the denial/withdrawal letter on top of the "No Response."

<u>When notices are returned as undeliverable, the officer should:</u>
- Review the file and systems for any change of address
- Check both Form I-821D and the I-765 to ensure that there is no difference between the provided addresses.

When an RFE, NOID, or NOIT is returned to the Service Center as undeliverable, the officer should update C3, follow all procedures above to locate a new address. If a new address if found, re-mail the I-797, Notice of Action.

<u>206 - Processing Decisions – Denial for NSF</u>
When Form I-765 has been "rejected" for NSF for the $380 I-765 fee and/or the $85 biometrics fee, Form I-821D shall be denied.
After processing the case for denial and updating C3, route the A-file to the NRC.
This should be rare.

<u>207 - Post Denial Process - NTA</u>
After a DACA denial, take the following post-denial processing steps to determine if an NTA or other further action is required.
1. Review the grounds for denial.
2. If the denial grounds do not involve criminal, national security, or public safety issues, hold the A-file for 45 days and then forward to the NRC if a request to review is not received through SRMT.
3. If the denial involves criminal, national security, or public safety issues, refer to the November 7, 2011 NTA memo. Confirmed fraud denials also warrant NTA issuance.
4. The NTA unit will determine whether NTA issuance is appropriate under the NTA memo referenced above.

<u>Exercise</u>
Question:
When is supervisory review required before issuing a denial?

Confidential

App. 1606
DEF - 00004710

### 209,210 - Returned Mail

If a DACA denial is returned to the Service Center as undeliverable, follow all procedures above to locate a new address and re-mail the denial.

| If there is no new address and the 45 days... | Then... |
|---|---|
| Have NOT passed, | Hold file |
| Have passed, | Send to the NRC if no further communication is received |

### If mail is returned as undeliverable and no other address is found:

- If the response time indicated has not yet passed, the file should be placed on hold in accordance with local procedures for the remainder of the response time.

| If there is no other address found and the response time has passed on the... | Then... |
|---|---|
| RFE, | Deny as an abandonment denial. |
| NOID (with NO criminal content), | Deny for cause. |
| Intent to Terminate, | Terminate DACA. |

Confidential

# XII.  Responding to Requests to Review Certain Denials

Module Objectives
The objective of this section is to provide a basic understanding of:
- The denial grounds which may be reviewed through the SRMT process; and,
- Responding to a request for review.


213 - Requests for Review
DACA requestors cannot file a Motion to Reopen or Reconsider and cannot appeal denial of their Form I-821D. However, DACA requestors may request review of certain denials using the Service Request Management Tool (SRMT) process if there is a claim that the denial was incorrect or the denial is based on administrative error. The denial grounds that may be reviewed through the SRMT process include:
- The requestor did not come to the United States prior to reaching his/her 16th birthday;
- The requestor was under the age of 15 at the time of filing, but not in removal proceedings;
- The requestor was not under the age of 31 on June 15, 2012;
- The requestor was not in an unlawful immigration status as of June 15, 2012;
- The requestor was not physically present in the United States on June 15, 2012;
- The requestor did not appear to have biometrics collected at a USCIS ASC;
- The requestor did not request to have his/her biometrics appointment at a USCIS ASC rescheduled prior to the scheduled date;
- The requestor failed to pay the filing and biometric fees for the Form I-765; and
- The requestor failed to respond to an RFE (including claims the USCIS possibly mailed the RFE to the incorrect address).


214 - Responding to Requests to Review
Standard responses, to include some interim responses, have been developed to inform the requestor that his/her denial has been reopened on a service motion and that the denial is correct or incorrect.

In addition, Special History Action Codes (HAC), which have been developed in order to track the requests for review, are to be used when responding to a request to review. See Chapter 13 of the DACA SOP for a list of these codes and their appropriate use.

Confidential

# XIII. DACA Termination

Module Objectives
The objective of this section is to provide a basic understanding of:
- What termination is;
- When it is appropriate to terminate; and,
- The process for termination.

217 - DACA Termination - General Ineligibility
If removal under DACA was improperly deferred
Reopen the case on Service Motion and issue a Notice of Intent to Terminate (NOIT).

The DACA requestor has 33 days to respond to the NOIT and provide a brief or statement contesting the grounds cited in the intent to terminate.

If the adverse grounds are not overcome, or no response is received to the NOIT, the officer should prepare a termination letter and seek supervisory review of the draft termination letter prior to issuance.

Adjudicating officers must ensure C3 is updated using the newly created HACs.

218 - DACA Termination – Fraud or Misrepresentation
If an officer subsequently learns that a DACA requestor committed fraud related to seeking the DACA request, the officer should reopen the case on Service Motion and issue a NOIT indicating the fraud/ misrepresentation.

The decision to issue a NOIT based on fraud should be supported by a fully documented Statement of Findings (SOF) and any other relevant documents/information.
The requestor is allowed 33 days to respond to the NOIT.

If the adverse grounds are not overcome, or no response is received to the NOIT, the officer should prepare a termination letter and seek supervisory review of the draft termination letter prior to issuance.
The terminated DACA case must be recorded in FDNS-DS.
Adjudicating officers must ensure C3 is updated using the newly created HACs.

219 - DACA Termination – Criminal, NS, or Public Safety Issues
If disqualifying criminal offenses or public safety concerns, which are deemed to be EPS, arise after removal has been deferred under DACA, the officer should forward the case to the BCU DACA Team who in turn, will refer the case to ICE and follow the handling procedures outlined in the November 7, 2011 NTA Memorandum for EPS cases.
If ICE does not accept the case or if the disqualifying criminal offense is non-EPS per the November 7, 2011 NTA Memorandum, the BCU DACA Team will process the case for termination and forward the individual's name to ERO.
If national security concerns arise after removal has been deferred under DACA, the case should go through the CARRP process, per established CARRP protocols.

Confidential

## XIV. Employment Authorization Request

Module Objectives
The objective of this section is to provide a basic understanding of:
- The legal authority for employment authorization based on deferral of removal under DACA;
- The forms required for an employment authorization request under DACA;
- How an individual might show economic necessity; and
- Requests for replacement EADs.

222,223 - Employment Authorization under DACA
The Secretary's memorandum provides that individuals whose removal has been deferred under DACA may receive employment authorization.

The eligibility category for employment authorization based on a grant of deferred action is 8 CFR 274.12(c)(14) and requires a showing of economic necessity.

To identify DACA-related EADs, the (c)(33) code will be used.
- DACA requestors have been instructed to note the (c)(33) code on their Form I-765.

The EAD is predicated on deferred action under DACA. Therefore, the 90-day EAD clock on the Form I-765 begins after Form I-821D is approved.

Forms I-821D and I-765, with Form I-765WS must be concurrently filed.

The new Form I-765WS is a worksheet designed to captures the information about the requestor's income, expenses, and assets needed for the economic necessity determination.
- To streamline the adjudication of the employment authorization application, the I-765WS should have been reviewed while adjudicating the Form I-821D.
- To assist officers, at intake, the Lockbox will place the I-765WS in ROP order behind the Form I-821D.

Form I-765 cannot be approved unless Form I-821D has been approved.

224 - Processing
While it is contemplated that the same officer will routinely adjudicate both Forms I-821D and I-765, when that is not the case and you are adjudicating only Form I-765, review C3 to ensure that there is no outstanding RFE and that Form I-821D has been approved.
- The RFE would have been issued on Form I-765 during the adjudication of Form I-821D.
- The RFE on Form I-765 does not preclude adjudication of, and should not routinely delay Form I-821D.

Confidential

DEF - 00004714

Deferred Action for Childhood Arrivals

225,226 - Showing Economic Necessity
An EAD based on deferred removal under DACA requires a showing of economic necessity.

If Form I-765WS has been completed, review the information provided regarding current income, assets, and expenses to determine whether economic necessity has been established. The requestor may, but need not, include supporting documents with Form I-765WS.

There is a general presumption that DACA requestors will need to work given their undocumented circumstances and the fact that they are not generally anticipated to have independent means. Absent evidence of sufficient independent financial resources, the Form I-765WS is sufficient to establish economic need, without any further economic analysis.

If I-765WS is Incomplete or Not Presented
If the Form I-765WS is blank or the form is missing, an officer must issue an RFE on the I-765 (not the Form I-821D).
- EXCEPTION: There is a very limited fee exemption available. If the DACA requestor has been granted a fee exemption, which will display as a fee waiver in C3, ***DO NOT*** RFE for the completed I-765WS.

If an officer issues an RFE on the I-765, he/she should proceed with adjudication of the I-821D.

When the response to the I-765 RFE is received and the I-765 is approved, the expiration date of the EAD should be for 2 years or the end date of the deferred removal under DACA, whichever is earlier.

If the requestor does not respond to the I-765 RFE, the I-765 should be denied for abandonment.

227 - The (c)(33) EAD
If removal is deferred under DACA, action can be taken on the Form I-765. If the Form I-765 is approved, a (c)(33) EAD will be issued with a 2 year validity from the date of the approval, or to the end of the deferred removal under DACA, whichever is earlier.

228 - Replacement EADs

**Evidence Required:**
- Biometrics from the applicant's most recent ASC visit.
- Original signature.
- Current card issued with validity dates that have NOT expired (unless the individual is requesting to replace a lost/stolen EAD).

**Validity Dates:**  When issuing a replacement card, the validity period should mirror the dates authorized under the previous card.
**Biometrics:** Upon receipt, the contractor will clone from biometrics from the applicant's most recent ASC visit.
**Note** – Reminder, NBC will process all stand-alone initial DACA EADs when the (c)(33) is based upon an ICE determination.

Confidential

App. 1611
DEF - 00004715

## XV. Processing Form I-131, Application for Travel Document

Module Objectives
The objective of this section is to provide a basic understanding of:

- The advance parole requirements for individuals whose removal has been deferred under DACA:
- How to apply these requirements; and
- The advance parole processing and validity periods.

231,232 - Advance Parole
Parole is the authorization to allow an otherwise inadmissible person to physically proceed into the United States under certain safeguards and controls. Parole is not an admission.

Parole is granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit.

Advance parole is generally granted prior to the individual's departure from the United States to authorize that person's temporary parole upon his/her return to the United States following a brief absence.

The legal authority for parole is found in INA 212(d)(5)(A).

In accordance with the discretionary authority provided in INA 212(d)(5)(A), grants of advance parole to DACA recipients may be made based on the need to travel abroad for educational, employment, or humanitarian purposes.

These categories are to be construed broadly, but must be supported with evidence demonstrating the need to travel.

233 - Advance Parole - DACA Recipients
A DACA requestor may not concurrently file Form I-131 for advance parole with his/her DACA request.

A DACA recipient may file an advance parole request with a copy of the I-797 notice deferring removal under DACA.

234 - Advance Parole Requested for Educational Purposes
If the DACA recipient is requesting advance parole to travel for educational purposes, the individual must show that the travel will be undertaken for educational pursuits.
Examples include:

- Semester abroad programs; or
- Travel necessary to conduct academic research.

Confidential

### 235 - Advance Parole Requested for Employment Purposes

If the DACA recipient is requesting advance parole to travel for employment purposes, the individual must show that the travel relates to fulfilling job requirements.

These purposes also include the pursuit of a position in the United States with a foreign employer. Examples include:
- Overseas assignments, interview, conference, or training; or
- A meeting with overseas clients.

### 236 - Advanced Parole Requested for Humanitarian Purposes

If the DACA recipient is requesting advance parole to travel for humanitarian purposes, the individual must show the travel is for emergent, compelling, or sympathetic circumstances.
Examples include:
- Travel for medical reasons, to visit an ailing family member, to attend funeral services for a family member or for any other urgent familial purpose.

### 237 - Adjudication

Verify that the individual is a current DACA recipient and that there is no derogatory information that would affect an I-131 grant.

If the advance parole criteria have been met, issue the advance parole valid for the duration of the event, as documented in the advance parole application, not to exceed the duration of the deferral under DACA.
- For multiple events, issue the advance parole valid for the duration of all the documented events, not to exceed the duration of the deferral under DACA.
- Update the I-131 in C3 for approval and issuance of an I-512L Advance Parole Document.
- If the criteria have not been met, issue a denial and update C3.

### 238 - Advance Parole – Expedited Requests

As a general matter, expedite requests will not be granted.

However, in a dire emergency, and if properly documented and verified, if an individual were to appear at a local office, the local office has the option of processing the advance parole or working through established POCs at the Service Center under normal protocols.

### 239 - Impact of Travel Without Advance Parole

Deferred Action is terminated automatically if an individual travels outside the United States without advance parole after removal has been deferred under DACA.

Confidential

Deferred Action for Childhood Arrivals

240 00– Advance Parole for DACA Recipients in Removal Proceedings

Individuals in removal proceedings, including those with final removal orders, may seek advance parole if the request meets the guidelines for advance parole consideration under DACA.

A departure made while under a final order of removal (including a voluntary departure order that converted automatically to a final removal order) renders that individual inadmissible under INA 212(a)(9)(A).

Confidential

App. 1614
DEF - 00004718