# Exhibit 51

# Transcript of the Testimony of

# Kenneth Palinkas

**Date:**

June 19, 2018

**Case:**

STATE OF TEXAS vs UNITED STATES OF AMERICA

Kenneth Palinkas                                                June 19, 2018

```
 1   UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION
 3   - - - - - - - - - - - - - - - - - - - - - - - -x
 4   STATE OF TEXAS, et al,
 5                              Plaintiffs,
 6              -against-
 7   UNITED STATES OF AMERICA, et al,
 8                              Defendants.
 9   - - - - - - - - - - - - - - - - - - - - - - - -x
10   Case No.  1:14-cv-00254
11
12                     26 Federal Plaza
                       New York, New York
13
14                     June 19, 2018
                       1:00 p.m.
15
16            DEPOSITION of STATE OF TEXAS BY THE
17   WITNESS KENNETH PALINKAS, a Plaintiff herein, held
18   at the above place and time pursuant to Subpoena,
19   taken before Ephraim Jacobson, a shorthand
20   reporter and Notary Public within and for the
21   State of New York.
22
23
24
25
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                                210-697-3408

**App. 1626**

Kenneth Palinkas                                                June 19, 2018
                                                                      Page 2

```
 1  APPEARANCES:

 2

 3          ATTORNEY GENERAL KEN PAXTON
            Attorneys for State of Texas
 4          P.O. Box 12548
            Austin, Texas 78711
 5          BY:  ADAM N. BITTER, ESQ.
            Email:  Adam.bitter@oag.texas.gov
 6

 7

 8          UNITED STATES DEPARTMENT OF JUSTICE
            CIVIL DIVISION
            OFFICE OF IMMIGRATION LITIGATION
 9          P.O. Box 868, Ben Franklin Station
            Washington DC 20044
10          BY:  JEFFREY ROBINS, ESQ.
            Email:  Jeffrey.robins@usdoj.gov
11

12

13          MALDEF
            634 South Spring Stret
            Los Angeles, California 90014
14          BY:  NINA PERALES, ESQ.
            Email:  Nperales@maldef.org
15

16

17          STATE OF NEW JERSEY
            Department of Law and Public Safety
            Division of Law
18          124 Halsey Street
            Newark, New Jersey 45029
19          BY:  KENNETH S. LEVINE, ESQ.

20

21

22

23

24

25
```

```
 1                        PALINKAS
 2        A.   No, I did not.
 3             MR. LEVIN:  No further questions.  Thank
 4     you.
 5  EXAMINATION BY
 6  MR. BITTER:
 7        Q.   I have a few questions.  For the record,
 8   Adam Bitter for the Texas Attorney General's
 9   office.  Thank you for being here, Mr. Palinkas.
10   You went through a couple of issues with the other
11   counsel.  I just want to address a few of those
12   with you.  You were asked some questions about the
13   approval rate of DACA applications.  Do you recall
14   that?
15        A.   Yes.
16        Q.   Is that a concern of yours regarding the
17   DACA program?
18        A.   The approval rate, yes, because the
19   concern is that they're not being properly
20   adjudicated.
21        Q.   Was does that approval rate indicate to
22   you?
23        A.   Again, that they're being rubber
24   stamped, which is what I made -- which I stated
25   in -- in both my original and my later statement
```

|   |   |
|---|---|
| 1 | PALINKAS |
| 2 | that I made. |
| 3 | Q.  What is that opinion based on? |
| 4 | A.  The approval rate itself, because it's |
| 5 | still quite high.  It doesn't seem like there's |
| 6 | enough -- whether there's not enough room for |
| 7 | denials for the officers or it's just the rate is |
| 8 | extremely high compared to any other application |
| 9 | that I am aware of in USCIS. |
| 10 | Q.  Are you basing your opinion with respect |
| 11 | to the approval rate on your experience with |
| 12 | USCIS? |
| 13 | A.  Yes, I am. |
| 14 | Q.  How so? |
| 15 | A.  In accordance with any other form that |
| 16 | I'm aware of that I've adjudicated or that I'm |
| 17 | aware of that gets adjudicated.  For instance at |
| 18 | the service centers or at our own field offices, |
| 19 | through discussion with various individuals who |
| 20 | work throughout the country. |
| 21 | Q.  You were asked some earlier about |
| 22 | applications being sent to service centers.  Did |
| 23 | you recall being asked about that? |
| 24 | A.  Yes. |
| 25 | Q.  Is that a concern of yours with respect |

Kenneth Palinkas                                June 19, 2018
                                                    Page 125

```
 1                      PALINKAS
 2   to the DACA application process?
 3        A.   Yes.
 4        Q.   Why is that a concern of yours?
 5        A.   Again, since the DACA application is
 6   based on an illegal entry into the United States,
 7   the children of these people that enter illegally,
 8   once you break the law it kind of -- that red flag
 9   goes up and these people should be closely vetted,
10   more so than somebody who's just applying for a
11   benefit, because they've already committed a
12   crime, and when somebody commits a crime against
13   the United States, certainly that needs to be
14   taken into consideration.  It's not like they just
15   filed an application that they felt they were
16   eligible for.  They broke the law.  They
17   circumvented existing immigration law that's been
18   on the books for years.  That's the concern.
19        Q.   Is it your understand that a
20   application, whether DACA or others, is reviewed
21   differently at a service center versus a field
22   office?
23        A.   Absolutely, because you can get so much
24   more information from doing an in-person interview
25   versus adjudicating paper.
```

Kenneth Palinkas

June 19, 2018
Page 126

```
 1                    PALINKAS
 2      Q.   Are applications that are reviewed in
 3  service centers -- strike that.
 4           Do applications that are reviewed
 5  through service centers include an in-person
 6  interview component?
 7      A.   No.
 8      Q.   How did you have that understanding?
 9      A.   Because a service center does not
10  interview, period.  They never have.
11      Q.   Is the lack of in-person interview a
12  concern of yours?
13      A.   Not for every application, but certainly
14  for a DACA application.
15      Q.   Why is that?
16      A.   Again, as I have stated previously, when
17  somebody breaks the law and then applies for a
18  benefit, I don't think that they should not --
19  they should bypass being interviewed.  I think
20  they need to be more scrutinized in the process.
21      Q.   I want to ask you a question about what
22  has been marked Exhibit C, the earlier
23  Declaration.  If you can go to Paragraph 10 on
24  Exhibit C.  I'll give you a chance to look it
25  over.  I just have a question to you about
```

```
 1                       PALINKAS
 2   information on any kind of considerable basis,
 3   would that be a concern of yours?
 4        A.   Yes, it would.
 5        Q.   Why is that?
 6        A.   Because it -- that leads to the premise
 7   of going back to rubber stamping, where there's
 8   not enough meat and potatoes in that application
 9   and there wasn't enough vetting done where the
10   guidelines that are given by USCIS, the bare bones
11   of following those guidelines were implemented
12   rather than to do a more in-depth analysis of that
13   application.
14        Q.   Just one last set of questions.  In your
15   answers with Ms. Perales, you indicated that you
16   have not adjudicated any DACA applications; is
17   that correct?
18        A.   That's correct.
19        Q.   The opinions that you've offered in this
20   case with respect to DACA, are those based on your
21   experiences as a USCIS officer?
22        A.   They're based on my experiences as a
23   USCIS officer in conjunction with discussions I
24   have had with fellow officers concerning DACA
25   applications.
```

|    |                                                          |
|----|----------------------------------------------------------|
| 1  | PALINKAS                                                 |
| 2  | Q.  Are they based on your role with the                 |
| 3  | unions?                                                  |
| 4  | A.  Yes, they are partially based on my role             |
| 5  | with the unions and as a USCIS officer.                  |
| 6  | Q.  Are those based on your leadership roles             |
| 7  | in the union?                                            |
| 8  | A.  Yes, they are.                                       |
| 9  | MR. BITTER:  I have no further questions                 |
| 10 | for you.                                                 |
| 11 | EXAMINATION BY                                           |
| 12 | MR. ROBINS:                                              |
| 13 | Q.  This is Jeffrey Robins.  I'm going to                |
| 14 | ask you a few followup questions.  Thank you again       |
| 15 | for your time, Mr. Palinkas.                             |
| 16 | Are you an attorney?                                     |
| 17 | A.  No, I'm not.                                         |
| 18 | Q.  As an Immigration Services Officer, are              |
| 19 | you trained in immigration law?                          |
| 20 | A.  Yes, we are.                                         |
| 21 | Q.  Did you earlier testify that you're                  |
| 22 | specifically trained in immigration law related to       |
| 23 | the benefit applications that you're adjudicating?       |
| 24 | A.  Yes, we are.                                         |
| 25 | Q.  That testimony is you currently                      |

Kenneth Palinkas

June 19, 2018
Page 149

1         PALINKAS

2         CERTIFICATE

3    I, Ephraim Jacobson, a shorthand
4 reporter and Notary Public within and for the
5 State of New York do hereby certify:
6         That the witness whose testimony is
7 hereinbefore set forth was duly sworn by me, and
8 the foregoing transcript is a true and accurate
9 record of the testimony given by such witness to
10 the best of my ability.
11         I further certify that I am not related
12 to any of the parties to this action by blood or
13 marriage, and that I am in no way interested in
14 the outcome of this matter.

                                    _____
                                    Ephraim Jacobson