# Exhibit 59

STATE OF TEXAS, ET AL. - vs - UNITED STATES OF AMERICA, ET AL.
Douglas Massey on 06/26/2018

```
 1           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
 2                   BROWNSVILLE DIVISION

 3   STATE OF TEXAS, et al.,      )
                    Plaintiffs,   )
 4       - vs -                   )Case No. 1:18-cv-00068
                                  )
 5   UNITED STATES OF AMERICA,    )
     et al.,                      )
 6                  Defendants,   )
     and                          )
 7                                )
     KARLA PEREZ, et al.,         )
 8        Defendant-Intervenors.  )
                        VOLUME I
 9
                    D E P O S I T I O N
10                        of
                     DOUGLAS MASSEY
11        taken on the 26th day of June, 2018, at 9:58 a.m.
     at the office of Hampton Inn, 4519 Main Street,
12   Manchester, Vermont.

13   _____

14   APPEARANCES:

15        ADAM N. BITTER, ASSISTANT ATTORNEY GENERAL, General
              Litigation Division, P.O. Box 12548, Austin,
16            Texas 78711-2548, on behalf of the Plaintiff
              States.
17            (512) 463-2120
              adam.bitter@oag.texas.gov
18
          DENISE HULETT, ESQUIRE, of the Mexican American
19            Legal Defense and Educational Fund, 110 Broadway,
              Suite 300, San Antonio, Texas 78205, on behalf of
20            the Defendant-Intervenors.
              dhulett@maldef.org
21

22        JAMES WALKER, ESQUIRE, of the Department of Justice,
              Civil Division, Office of Immigrant Litigation,
23            District Court Section, P.O. Box 868, Washington,
              D.C. 20044, on behalf of the Defendants.
24            james.walker3@usdoj.gov

25
```

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

App. 1725

1  A.  We have information on DACA recipients in the
2  Mexican Migration Project but the numbers are really too
3  few to study at this point.
4  Q.  So does your conclusion -- strike that.
5      Is your conclusion in paragraph 18 based on
6  any of the surveys that you've conducted with the MMP
7  with respect to DACA recipients?
8  A.  It's not based on the surveys.  It's based on
9  my knowledge of the population of DACA recipients.
10 Q.  And you talked about this a little bit before,
11 but I want to ask it with respect to this conclusion.
12 Have you interviewed any DACA recipients about their
13 plans if they were to lose DACA status?
14 A.  I have not personally interviewed anyone about
15 their plans what happens if DACA disappears.
16 Q.  And so I just want to examine the basis of
17 your knowledge for the statement about voluntarily
18 returning.  It sounds like you're basing it on your work
19 through the MMP and LAMP surveys; is that right?
20 A.  I have 30 years of work in the field and my
21 knowledge of the DACA population.  It's really a unique
22 population.  There's really no basis to generalize to
23 it.  So if you look at prior studies of return
24 migration, there are people that are completely unlike
25 DACA recipients.  They didn't grow up in the United

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

App. 1726

```
 1   be prepared for life in their countries of origin?
 2        A.   Some may; some may not.  My guess is that
 3   most, the large majority, are poorly prepared.
 4        Q.   And some DACA recipients may speak elementary
 5   household Spanish or even more than that; is that fair?
 6        A.   There's variance.  So some speak better than
 7   others; others speak worse than others.  But on average
 8   I would say the level of fluency is much below
 9   professional levels.  So if they've graduated from
10   college, and many graduated from high school and many
11   have gone to college, they're not -- really not in a
12   position to be able to speak college-level Spanish
13   unless they've taken Spanish classes here as part of an
14   educational process, and most haven't.
15        Q.   Some may have taken --
16        A.   Some may have, right.
17        Q.   I want to ask you about paragraph 19.  I know
18   we touched on this a little bit briefly before, but I
19   want to just dig in a little bit more.  You say in the
20   first sentence "Ultimately, by virtue of applying for
21   DACA, the recipients have signaled their ardent wish to
22   remain in the United States and identify as Americans
23   despite the risks of coming out of the shadows and
24   registering their presence with federal authorities."
25             Did I read that correctly?
```

www.huseby.com                Huseby, Inc. Regional Centers              800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

App. 1727

```
 1       A.   You read that correctly.
 2       Q.   And your opinion about recipients signaling
 3  their ardent wish, it's not based on any personal
 4  research you've conducted into DACA recipients; is that
 5  fair?
 6       A.   That's correct.  I've never done research on
 7  DACA recipients particularly.
 8       Q.   And that signaling on the part of the
 9  recipients may not necessarily be true of all people who
10  have apply for DACA; is that right?
11       A.   Nothing is true of all people.  Any time you
12  make a generalization, it applies on average, not for
13  specific individuals.
14       Q.   And you indicate further to the back of
15  paragraph 19 that "DACA recipients are expressing a
16  clear intent to remain where they grew up and in the
17  only country they really know."
18            Did I read that correctly?
19       A.   You read that correctly.
20       Q.   We talked a little bit before about the DACA
21  criteria, but it's possible, is it not, that a DACA
22  recipient may not have grown up their -- most or all of
23  their lives in the United States?
24       A.   Well, the age 16 is the cutoff, so there's
25  going to be variance around that as well.  And Homeland
```

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

App. 1728

STATE OF TEXAS, ET AL. - vs - UNITED STATES OF AMERICA, ET AL.
Douglas Massey on 06/26/2018 Page 128

```
 1              C E R T I F I C A T E
 2      I, DINEEN SQUILLANTE, Registered Professional
 3   Reporter and Notary Public, do hereby certify that the
 4   foregoing pages, numbered page 4 through page 126,
 5   inclusive, are a true and accurate transcript of my
 6   stenographic notes of the deposition of DOUGLAS MASSEY,
 7   taken before me on June 26, 2018, at 9:58 a.m., for use
 8   in the matter of STATE OF TEXAS, et al., -VS- UNITED
 9   STATES OF AMERICA, et al. and KARLA PEREZ, et al.
10
11
12
13
14
15
16            [Signature: Dineen Squillante]
17   _____
18            DINEEN SQUILLANTE
        Commission Expires 02/10/19
19
20
21
22
23
24
25
```

www.huseby.com           Huseby, Inc. Regional Centers           800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

App. 1729