# Exhibit 62

App. 1748

Transcript of the Testimony of

# Karla Perez

## Date:

June 16, 2018

## Case:

STATE OF TEXAS V. UNITED STATES OF AMERICA

Karla Perez                                          June 16, 2018

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3
    STATE OF TEXAS, ET. AL.          )
 4                                   )
             PLAINTIFFS,             )
 5                                   )
    V.                               )  CASE NO. 1:18-cv-00068
 6                                   )
    UNITED STATES OF AMERICA,        )
 7  ET. AL.,                         )
                                     )
 8           DEFENDANTS,             )
                                     )
 9  AND                              )
                                     )
10  KARLA PEREZ, ET. AL.,            )
                                     )
11        DEFENDANT-INTERVENORS.)

12

13

14

15

16          _____

17          ORAL DEPOSITION OF KARLA PEREZ

18                 June 16, 2018

19          _____

20

21

22

23

24

25
```

**App. 1750**

Karla Perez                                                          June 16, 2018
                                                                          Page 2

1          ORAL DEPOSITION OF KARLA PEREZ, produced as a

2     witness at the instance of the Plaintiffs and duly

3     sworn, was taken in the above-styled and numbered

4     cause on June 16, 2018, from 11:06 a.m. to 1:55 p.m.,

5     before Mia Cieslar, Certified Shorthand Reporter in

6     and for the State of Texas, reported by computerized

7     machine shorthand, at the offices of the Attorney

8     General, Consumer Protection Division, 808 Travis

9     Street, Suite 1520, Houston, Texas, pursuant to the

10    Federal Rules of Civil Procedure and the provisions

11    stated on the record or attached hereto.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Karla Perez                                                    June 16, 2018
                                                                      Page 3

```
 1                         APPEARANCES

 2

     FOR THE PLAINTIFFS:
 3
             Mr. Todd Lawrence Disher
 4           Mr. P. Trent Peroyea
             ATTORNEY GENERAL OF THE STATE OF TEXAS
 5           P.O. Box 12548
             Austin, Texas  78711
 6           Telephone:  (512) 936-2266
             Email:  todd.disher@oag.texas.gov
 7

 8   FOR THE DEFENDANTS UNITED STATES OF AMERICA:

 9           Mr. Rick Kincheloe
             U.S. DEPARTMENT OF JUSTICE
10           1000 Louisiana Street, Suite 2300
             Houston, Texas  77002
11           Telephone:  (713) 567-9422
             Email:  richard.kincheloe@usdoj.gov
12

13   FOR THE DEFENDANTS INTERVENORS:

14           Mr. Brian Devito (appeared via telephonically)
             OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
15           124 Halsey Street, 5th Floor
             Newark, New Jersey  07101
16           Telephone:  (973) 877-1405
             Email:  brian.devito@law.njoag.gov
17

18   FOR THE DEFENDANTS INTERVENORS:

19           Ms. Celina Moreno
             MEXICAN AMERICAN LEGAL DEFENSE AND
20           EDUCATIONAL FUND
             110 Broadway, Suite 300
21           San Antonio, Texas  78205
             Telephone:  (617) 388-3551
22           Email:  cmoreno@maldef.org

23

24

25
```

```
 1    questioning as confidential.

 2                    MR. DISHER:  Okay.

 3                    MR. KINCHELOE:  And let me also mark for

 4    the record.  United States is not part of y'all's

 5    agreement.  We're not opposing it, but United States'

 6    position on whether this is confidential and how it's

 7    treated, it's going to have to be resolved later.

 8                    MR. DISHER:  That's right.  Once MALDEF

 9    moves to get a court order designating this as

10    confidential.

11                    MR. KINCHELOE:  Right.

12                    MR. DISHER:  And to clarify, too.  Your

13    designation of this portion as confidential does not

14    require us to file it under seal or any -- take any

15    additional security measures at this time.  And that,

16    again, is on MALDEF to secure that relief from the

17    Court.

18                    MS. MORENO:  That's fine.

19                    MR. DISHER:  All right.

20       Q.   (BY MR. DISHER) So when you came with your

21    parents in 1995 from Mexico, was that pursuant to any

22    type of visa?

23       A.   No.

24       Q.   Was it an unlawful crossing?

25                    MS. MORENO:  Objection, calls for a
```

Karla Perez                                                    June 16, 2018
                                                                   Page 13

 1   legal conclusion.

 2       Q.   (BY MR. DISHER) You can go ahead and answer

 3   if you can.

 4       A.   What do you mean by unlawful crossing?

 5       Q.   Did you have -- or did your parents have

 6   authorization to come into the US?

 7                 MS. MORENO:   Objection.   Wanted to again

 8   state for the record that we're not talking about

 9   immediate family members.   That is part of our

10   agreement.

11                 MR. DISHER:   I'm not asking about the

12   status of her immediate family members.   I'm just

13   trying to establish the manner of entry in 1995.

14       Q.   (BY MR. DISHER) I understand it wasn't

15   pursuant to a visa.   Was it some other form of lawful

16   entry into the United States?

17                 MS. MORENO:   Objection, calls for a

18   legal conclusion.

19       Q.   (BY MR. DISHER) Again, you can answer if you

20   can.

21       A.   What do you mean by lawful?   Like,

22   authorization?

23       Q.   Right.   Did you -- did your parents have

24   permission to come to the United States?

25       A.   Can you clarify, like, permission from who?

1      Q.   From the United States Federal Government.

2      A.   No.

3      Q.   Okay.  Since 1995 -- well, we'll come back to

4    that.

5                      All right.  If you flip the page.

6                      (Witness complied)

7      Q.   (BY MR. DISHER) And you said that you

8    attended school in Pasadena.  And it looks look you

9    attended high school in Pasadena as well?

10     A.   Yes.

11     Q.   Okay.  Now, what year did you graduate from

12   Pasadena High School?

13     A.   2011.

14     Q.   Okay.  All right.  After Pasadena High

15   School, you went to the University of Houston?

16     A.   Can you clarify by, I guess, the --

17     Q.   Sure.

18     A.   -- timeline and...

19     Q.   So you graduated from Pasadena High School

20   in 2011; is that right?

21     A.   Yes.

22     Q.   Okay.  And then did you go to the University

23   of Houston immediately after that, or did you have a

24   break?

25     A.   I attended the University of Houston after,

1        A.    Yes.

2        Q.    All right.  Then the next paragraph says,

3    There are a lot of obstacles for DACA students.

4               We talked about some of those obstacles,

5    right?

6        A.    Yes.

7        Q.    Okay.  Know that many DACA -- many of the

8    DACA recipients she knew in Texas had not even

9    realized they could participate in the work study

10   program in the past.

11              Is that the -- does that refresh your

12   memory about what this article is about?

13       A.    A work study program in Texas.

14       Q.    Yeah.  Do you --

15       A.    Means to limit that to -- or exclude

16   undocumented students.

17       Q.    Okay.  So what do you know about the work

18   study program in Texas?  Well, let me ask you another

19   question first.

20              Was this effort one of the efforts in

21   the 2017 legislative session that you participated in

22   advocating for or against this particular proposal?

23       A.    Yes.

24       Q.    Okay.  So what do you know about the Texas

25   work study program?

1          A.    I know that it is a state program, not

2     federal which means that DACA recipients who have work

3     authorization could participate in it because it does

4     not -- it's not a federal program.

5          Q.    Okay.  And what were the efforts in 2017

6     related to that work study program?

7          A.    There wasn't a -- an effort to require that

8     students participating in the state work study program

9     would qualify for federal financial aid which means

10    not undocumented students, including those who are

11    DACA recipients.

12         Q.    Okay.  You advocated against that proposal;

13    is that right?

14         A.    Yes.

15         Q.    And why did you advocate against that

16    proposal?

17         A.    It's a state work program, it's not a federal

18    work program.  And it didn't make sense to me.  It --

19    it -- it seemed to me just another opportunity to

20    exclude DACA recipients from a program that they could

21    otherwise participate in because -- for those who have

22    work authorization.  And it also was quite evident to

23    me that the legislature -- the legislator who

24    sponsored this proposal did not understand the nuances

25    of -- of this.

1         Q.    All right.   And just what relation are they

2    to you?

3         A.    Extended family only.

4         Q.    Okay.   Since you came here in 1995, have you

5    left the United States?

6         A.    No.

7         Q.    Been here ever since?

8         A.    Yes.

9         Q.    All right.   Have you ever applied for advance

10   parole?

11        A.    Yes.

12        Q.    When did you apply for advance parole?

13        A.    Early -- late -- late 2016, early 2017.   It

14   was over my school winter break.

15        Q.    Okay.   Did you get advance parole?

16        A.    I was -- my application for advance parole

17   was approved in early March.

18        Q.    Of?

19        A.    Of 2017.

20        Q.    Okay.   And then why did you apply for advance

21   parole?

22        A.    My maternal grandmother has gotten very sick

23   over the years, and I thought that I could have the

24   opportunity to see her during that time.   Yeah.

25        Q.    And is she in Mexico?

```
 1        A.    Yes.

 2        Q.    All right.  Did you go see her?

 3        A.    No.

 4        Q.    Right.  Because you haven't left since '95,

 5   obviously.  And why --

 6        A.    Yes.

 7        Q.    -- why did you not go?

 8        A.    I applied for advance parole, as I mentioned,

 9   later in 2016 or earlier in 2017, and I didn't hear

10   back until March.  And when I received the approval,

11   my schedule just didn't allow it at that time.

12        Q.    Okay.  Will you just describe to me the

13   process of applying for advance parole.

14        A.    Yes.  There's a -- an application for advance

15   parole.  That's a USCIS application.  I completed the

16   application.  I had to provide documentation for why I

17   was requesting advance parole.  That was based on the

18   humanitarian reason of my sick grandmother.  So I

19   provided those documents showing that in my

20   application packet to USCIS, along with a sworn

21   declaration about why I was seeking advance parole.

22        Q.    All right.

23        A.    And I paid a filing fee as well.

24        Q.    Okay.  So you submit the material and pay the

25   filing fee.  Did you have to do anything else?
```

1      A.   I cannot recall if I attended biometrics

2   for -- for that.  I don't know.

3      Q.   Okay.  Other than potentially attending

4   biometrics, can you think of anything else that you

5   did as part of your application process for advance

6   parole?

7      A.   No.

8      Q.   Okay.  Did you talk to immigration service

9   officer about your application for advance parole?

10     A.   I did not.

11     Q.   All right.  Did you receive any type of

12  request for information from USCIS about your

13  application for advance parole?

14     A.   No.

15     Q.   Okay.  Have you ever applied to adjust your

16  immigration status?

17     A.   Yes.

18     Q.   Okay.  And tell me about that.

19     A.   I -- my US citizen husband has petitioned for

20  me.  And at the same time that we filed a family

21  petition, I filed an application for adjustment of

22  status.

23     Q.   Okay.  When did you file that application for

24  adjustment of status?

25     A.   This was last -- last summer, almost about a

```
 1   year ago.
 2        Q.   Summer of 2017?
 3        A.   Yes.
 4        Q.   All right.  What is the status of your
 5   application?
 6        A.   Pending.
 7        Q.   What did you do in order to file the
 8   application?
 9        A.   I completed the several forms that are
10   required for it.  Provided substantial documentation
11   showing, you know, our -- our relationship.  Provided
12   other supporting documentation, paid a lot of filing
13   fees and filed out with USCIS.
14        Q.   Okay.  You filed it about a year ago.  Since
15   filing it, have you had to do anything else?
16        A.   I have attended biometrics.
17        Q.   Okay.  And again, biometrics.  Just a
18   photograph and fingerprinting?
19        A.   Yes.
20        Q.   All right.  Other than attending biometrics,
21   have you done anything else in pursuit of your
22   application for adjustment of status since you filed
23   the initial application about a year ago?
24        A.   No.  Other than kept up with important
25   documents that come in as life goes on.
```

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3
    STATE OF TEXAS, ET. AL.          )
 4                                   )
                PLAINTIFFS,          )
 5                                   )
    V.                               ) CASE NO. 1:18-cv-00068
 6                                   )
    UNITED STATES OF AMERICA,        )
 7  ET. AL.,                         )
                                     )
 8              DEFENDANTS,          )
                                     )
 9  AND                              )
                                     )
10  KARLA PEREZ, ET. AL.,            )
                                     )
11          DEFENDANT-INTERVENORS.)

12

13              REPORTER'S CERTIFICATE

14          ORAL DEPOSITION OF KARLA PEREZ

15                  June 16, 2018

16

17       I, Mia Cieslar, Certified Shorthand Reporter

18  in and for the State of Texas, hereby certify that to

19  the following:

20          That the witness, KARLA PEREZ, was duly sworn

21  by the officer and that the transcript of the oral

22  deposition is a true record of the testimony given by

23  the witness;

24          I further certify that pursuant to FRCP Rule

25  30(f)(1) that the signature of the deponent:
```

**App. 1762**

Karla Perez

June 16, 2018
Page 103

1      __X__ was requested by the deponent or a party

2    before the completion of the deposition and returned

3    within 30 days from date of receipt of the transcript.

4    If returned, the attached Changes and Signature Page

5    contains any changes and the reasons therefor;

6      _____ was not requested by the deponent or a

7    party before the completion of the deposition.

8      I further certify that I am neither attorney

9    nor counsel for, related to, nor employed by any of

10   the parties in the action in which this testimony was

11   taken.

12      Further, I am not a relative or employee of

13   any attorney of record in this cause, nor do I have a

14   financial interest in the action.

15      Subscribed and sworn to on this the _____ day

16   of _____, 20___.

17

18

19   _____
                                     Mia Cieslar, CRC, RDR, CRR
20                                   Texas CSR 5763
                                     Expiration: 12/31/19
21                                   Kim Tindall & Associates, LLC
                                     Firm Registration No. 631
22                                   16414 San Pedro, Suite 900
                                     San Antonio, Texas  78232
23                                   Phone (210) 697-3400
                                     Fax (210) 697-3408

24

25