**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS; | ) |
| | ) |
| STATE OF ALABAMA; | ) |
| | ) |
| STATE OF ARKANSAS; | ) |
| | ) |
| STATE OF KANSAS; | ) |
| | ) |
| STATE OF LOUISIANA; | ) |
| | ) |
| STATE OF NEBRASKA; | ) |
| | ) |
| STATE OF SOUTH CAROLINA; | ) |
| | ) |
| STATE OF WEST VIRGINIA, | ) |
| | ) |
| GOVERNOR PHIL BRYANT, STATE OF MISSISSIPPI; AND | ) |
| | ) |
| GOVERNOR PAUL R. LEPAGE, STATE OF MAINE, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| *vs.* | ) Case No. 1:18-cv-00068 |
| | ) |
| UNITED STATES OF AMERICA, ET AL.; | ) |
| | ) |
| *Defendants,* | ) |
| | ) |
| *And* | ) |
| | ) |
| KARLA PEREZ, ET AL.; | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| *Defendants-Intervenors.* | ) |

**PLAINTIFF STATES' THIRD SUPPLEMENTAL APPENDIX IN**
**SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

| Exhibit | Document | Pages |
|---------|----------|-------|
| 68 | Deposition of Michael Knowles (Aug. 2, 2018) (excerpts) | App. 1837-1852 |

August 4, 2018                                    Respectfully submitted.

STEVE MARSHALL                                   KEN PAXTON
Attorney General of Alabama                      Attorney General of Texas

LESLIE RUTLEDGE                                  JEFFREY C. MATEER
Attorney General of Arkansas                     First Assistant Attorney General

JEFF LANDRY                                       BRANTLEY STARR
Attorney General of Louisiana                    Deputy First Assistant Attorney General

DOUGLAS J. PETERSON                              JAMES E. DAVIS
Attorney General of Nebraska                     Deputy Attorney General for Civil Litigation

ALAN WILSON                                      */s/ Todd Lawrence Disher*
Attorney General of South Carolina               TODD LAWRENCE DISHER
                                                 Attorney-in-Charge
PATRICK MORRISEY                                 Special Counsel for Civil Litigation
Attorney General of West Virginia                Tx. State Bar No. 24081854
                                                 Southern District of Texas No. 2985472
                                                 Tel.: (512) 463-2100; Fax: (512) 936-0545
                                                 todd.disher@oag.texas.gov
                                                 P.O. Box 12548
                                                 Austin, Texas 78711-2548

                                                 ADAM ARTHUR BIGGS
                                                 Special Counsel for Civil Litigation

                                                 ADAM N. BITTER
                                                 Assistant Attorney General

                                                 **COUNSEL FOR PLAINTIFF STATES**

2

## CERTIFICATE OF SERVICE

I certify that on August 4, 2018, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Special Counsel for Civil Litigation

**COUNSEL FOR PLAINTIFF STATES**

# Exhibit 68

```
 1              UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
 2                  BROWNSVILLE DIVISION

 3                   + + + + +

 4    _____
                                     :
 5    IN THE MATTER OF:              :
                                     :
 6    STATE OF TEXAS, ET AL.,        :
                                     :
 7                   Plaintiff,      :
                                     :
 8        v.                         :  Civil Action No.
                                     :  1:18-CV-00068
 9    UNITED STATES OF AMERICA,      :
      ET AL.,                        :
10                   Defendants,     :
                                     :
11    and                           :
                                     :
12    KARLA PEREZ, et al.,           :
                                     :
13                   Defendant-      :
                     Intervenors,    :
14                                   :
      and                           :
15                                   :
      STATE OF NEW JERSEY,           :
16                                   :
                     Defendant-      :
17                   Intervenor.     :
                                     :
18    _____:

19                   Thursday,
                     August 2, 2018
20
                     Washington, D.C.
21

22    DEPOSITION OF:

23                   MICHAEL KNOWLES

24

25
```

**STATE OF TEXAS, ET AL. vs UNITED STATES OF AMERICA, ET AL.**
**Michael Knowles on 08/02/2018**                                    Page 2

```
 1    called for examination by Counsel for the
      Defendant-Intervenors, pursuant to Notice of
 2    Subpoena, in the law offices of Mexican American
      Legal Defense Fund, located at 1016 16th Street,
 3    NW, Washington, D.C., when were present on behalf
      of the respective parties:

 4
      APPEARANCES:
 5
      On Behalf of Mexican American Legal Defense Fund:
 6
      NINA PERALES, ESQ.
 7    1016 16th Street, NW
      Suite 100
 8    Washington, D.C. 20036
      210-845-5147
 9    nperales@maldef.org

10    On Behalf of the State of Texas:

11    ADAM ARTHUR BIGGS, ESQ.
      Special Counsel for Civil Litigation
12    Office of the Attorney General of Texas
      P.O. Box 12548
13    Austin, Texas 78711-2548
      512-936-0750
14    adam.biggs@oag.texas.gov

15

16    On Behalf of the State of New Jersey:

17

18    JEREMY E. HOLLANDER, ESQ.

19    Assistant Attorney General

20    124 Halsey Street

21    P.O. Box 45029

22    Newark, New Jersey 07101-5029

23    973-648-7453

24    jeremy.hollander@law.njoag.gov

25
```

```
 1

 2

 3

 4

 5

 6   APPEARANCES: (cont.)

 7

 8   On Behalf of the United States:

 9

10   JEFFREY WALKER, ESQ.

11   U.S. Department of Justice

12   Trial Attorney

13   Ben Franklin Station

14   P.O. Box 868

15   Washington, D.C. 20044

16   202-532-4468

17   james.walker3@usdoj.gov

18

19   ALSO PRESENT:

20

21   ALEJANDRA AVILA*

22   RAI SHAY LIN

23

24   *Present telephonically

25
```

1        Q       They're not done in Atlanta?

2        A       No.  No, there's no Service Center in

3   Atlanta.  There's a Service Center in Arlington,

4   Virginia, one in Vermont, one in Nebraska, one in

5   Texas, one in California.  And, to the best of my

6   knowledge, they are done primarily in Nebraska,

7   but some at some point have been done in

8   California.

9        Q       Are you aware of any Field Office in

10  Texas that has interviewed a DACA recipient?

11       A       No, I didn't ask.

12       Q       How many Filed Offices are you aware

13  of throughout the entire country that have

14  interviewed DACA recipients?

15       A       Well, I'm only aware of two because

16  those were the calls that I made.  I have not

17  called each and every Field Office to ask.

18       Q       So, it's fair to say, as you sit here

19  today, you're aware of four instances where DACA

20  recipients were interviewed at a Field Center?

21       A       Mm-hmm.

22       Q       That's a yes?

23       A       That is yes, that is yes.

24       Q       Sorry.

25       A       Sorry, I keep giving you a nonverbal

1    nod.  That is yes.

2          Q     Very good.

3                Sorry, and I do the exact same thing,

4    I apologize.

5          A     And, I have to reiterate, I did not do

6    a comprehensive data call.  I mean, this

7    information should be readily available to the

8    parties from the Agency.

9          Q     Let's talk about your personal

10   background.  You're an Asylum Officer?

11         A     I am an Asylum Officer.

12         Q     Have you ever personally processed a

13   DACA application?

14         A     Have what?

15         Q     Have you ever personally processed a

16   DACA application?

17         A     No, I have no reason to.

18         Q     Have you ever adjudicated a DACA

19   application?

20         A     No, I would have no reason to.

21         Q     Okay.  Do you know what the criteria

22   are to qualify for DACA?

23         A     Vaguely.  I mean, based on what I've

24   read in the public information.

25         Q     You mentioned earlier something about

1              We have procedures to terminate a

2    status or revoke a status.

3         Q    So, again, I want to make sure we are

4    clear on this --

5         A    Right.

6         Q    -- as you sit here today you are not

7    aware of a single DACA application that has been

8    denied after meeting initial criteria?

9         A    No, I am not.

10             MS. PERALES:  Objection.  Give me a

11   second here.

12             THE WITNESS:  Okay.

13             MS. PERALES:  Objection, asked and

14   answered.  You are welcome to give the answer.

15   You are welcome to give the complete answer

16   again, but if you are asked the same question

17   twice -- It's the same question.

18             THE WITNESS:  Yes.  No, I mean I am

19   not personally aware of DACA cases.  I mean my

20   awareness is, as I have said, what I have read

21   and my limited conversations with those who do

22   the work.

23             I didn't ask them that question.

24   However, I know as a CIS employee that we have

25   standard procedures to revoke status that has

1    is arguing which point.  I was asked to comment

2    on Mr. Palinkas's statement.

3         Q    Sure.  And, again, these are kind of

4    the questions we have to ask for baseline

5    purposes.

6         A    Sure.

7         Q    It's not a trick question.

8         A    No.

9         Q    All right.  How many DACA applications

10   are you aware of that have been denied through

11   the history of the program?

12        A    I'm sorry?

13        Q    How many DACA applications are you

14   personally aware of being denied?

15        A    I am not personally aware of the DACA

16   program.

17        Q    What is the DACA program's population

18   currently?

19        A    I don't know what you mean.

20        Q    How many people have DACA status?

21        A    I have no idea.

22        Q    How many people have applied for DACA

23   status throughout the history of the program and

24   been denied?

25        A    I have no idea.  And when I say I have

1    no idea I have no personal knowledge other than

2    what I have read in public documents.

3         Q     How many DACA applications have been

4    denied under what is referred to as prosecutorial

5    discretion?

6         A     I don't have that information.

7         Q     Okay.  So when was the first time you

8    were contacted by MALDEF?

9         A     It would have been, like I said,

10   within the last couple of months.  I don't recall

11   the dates.

12        Q     What did you discuss with MALDEF?

13        A     I was asked what I thought about this

14   statement and would I be willing to be deposed.

15        Q     Okay.  Did you discuss the topic, what

16   topics would be discussed during your deposition?

17        A     I was told I would be asked about this

18   statement and I would probably be asked about my

19   personal knowledge, or lack of knowledge, of

20   DACA.

21        Q     What did you tell MALDEF about your

22   lack of personal knowledge?

23        A     Just what I have told you today and

24   what I have told them today.

25        Q     That you really don't know anything

1            MR. BIGGS:  You need to stop for a

2    second?

3            MR. KNOWLES:  Yes, just for a moment.

4            MR. BIGGS:  Let's go back off the

5    record.

6            (Whereupon, the above-entitled matter

7    went off the record at 1:51 p.m. and resumed at

8    1:58 p.m.)

9            MR. BIGGS:  All right, we're almost

10   done.

11           All right, Mr. Knowles, I should have

12   asked this earlier, I think I didn't, but if not,

13   correct me.

14           You have not personally done any DACA

15   processing, but have you ever supervised anybody

16   in your role as a federal employee in approving

17   DACA applications?

18           MR. KNOWLES:  No, I have never

19   supervised anybody in the federal workplace.  I

20   do supervise my union stewards.

21           BY MR. BIGGS:

22      Q    Okay.  So, we left off asking about

23   advanced parole.  Do you know what advanced

24   parole is?

25      A    I have a general understanding of it

1          MR. KNOWLES:  Yes, I --

2          MS. PERALES:  You may answer.

3          MR. KNOWLES:  Yes, I have no personal

4   awareness of that other than what I read in the,

5   you know, public documents and the newspapers.

6          I've heard of DACA -- I've read of

7   DACA applicants adjusting status because they

8   qualify to do so.  But, not because they had

9   DACA.

10         MR. BIGGS:  So, you're aware that some

11  DACA recipients, according to news reports, have

12  indeed successfully adjusted their status, right?

13         MR. KNOWLES:  Yes, I have read that.

14  But I have no personal knowledge of that.

15         BY MR. BIGGS:

16     Q    So, you don't know whether or not DACA

17  played any role in their ability to adjust their

18  status, right?

19     A    I wouldn't have that level of

20  awareness of the program.

21     Q    Why is it important in the immigration

22  processes of the United States to ferret out

23  fraud, in your opinion?  It seems like a dumb

24  question, but just --

25         A    Well, because, if one has committed

1   average length for an in person interview for a

2   DACA application to take?

3          A      I have no idea.

4          Q      And --

5          A      I mean, it would depend on what

6   Service Center was asking the Field Office to ask

7   about.  I didn't ask my contacts how long it took

8   them to interview those individuals.

9          Q      You don't know if any of those

10  individuals they allegedly spoke to were denied,

11  right?

12         A      No, I think the officers who did the

13  interview didn't know because they're not -- they

14  weren't the ones making the decision.

15         Q      And, you mentioned the green card

16  interview process.  Is that longer or shorter

17  than that asylum interview process?

18         A      Oh much shorter.

19         Q      How much shorter?

20         A      I don't know because I don't

21  adjudicate green cards or naturalization.

22                But, you know, we might, in asylum, do

23  two or three interviews in a day.  We're talking

24  about affirmative asylum, not credible fear.

25                And, somebody doing naturalization

 1   Palinkas's statement.

 2        Q    Sure.  So, just to make sure we're

 3   clear, of the 4,000-plus members you spoke to

 4   approximately 6 of them prior to testifying

 5   today?

 6        A    Mm-hmm.

 7        Q    That's a yes?

 8        A    Mm-hmm, yes.

 9             MR. BIGGS:  Pass the witness.

10             MR. HOLLANDER:  I do have a few

11   questions, if you don't mind.

12             MR. KNOWLES:  I would like to say that

13   the individuals that I spoke to were all union

14   representatives of their workplaces.  And,

15   themselves are in regular contact with many other

16   employees.

17             MR. BIGGS:  Sure.  And, I'm sure he'll

18   ask you some questions about that.

19             MS. PERALES:  So you want to re-pass

20   the witness?

21             MR. BIGGS:  Yes, I mean, you can keep

22   it --

23             MR. HOLLANDER:  We would like to take

24   a quick break.

25             (Whereupon, the above-entitled matter

 1  alter the status of an individual in the United

 2  States currently unlawfully?

 3      A    I don't know that professionally but,

 4  from what I have read in public documents, it is

 5  simply a -- the status is a deferred action, I

 6  mean I believe that's actually in the title.

 7            But, they are still considered here

 8  unlawfully.  But, the government has decided to

 9  defer any action.

10      Q    Nothing further.

11      A    And --

12      Q    Oh, go on.

13      A    During the pendency of the deferral,

14  which I believe from what I read publically is a

15  two year period could be renewed, they get a work

16  permit.

17            I don't know what status there is

18  beyond that.

19      Q    Would you agree with me that your

20  understanding of DACA is limited?

21      A    Extremely limited to what is available

22  to the average citizen or, in my case, to an

23  employee of CIS.  You know, we might have

24  employee broadcasts, whatever.  We might have a

25  town hall meeting where, you know, there are

1  general reports on what is happening in different

2  parts of the Agency.

3            But, my knowledge of DACA

4  professionally is zero, such as limited.  I don't

5  do DACA.  Right?  Nor does Mr. Palinkas.

6            MR. BIGGS:  Sure.

7            All right, thank you very much for

8  your time.  I don't have anything further unless

9  y'all have something.

10            MR. KNOWLES:  Okay.

11            MS. PERALES:  Nothing further here.

12            MR. HOLLANDER:  No, New Jersey's

13  finished as well.

14            MS. PERALES:  I should say we reserve

15  our question -- remaining questions for the time

16  of trial.

17            The deposition is concluded.

18            (Whereupon, the above-entitled matter

19  went off the record at 2:50 p.m.)

20

21

22

23

24

25

```
 1    C E R T I F I C A T E

 2    This is to certify that the foregoing transcript

 3    Deposition of: Michael Knowles

 4    In the matter of: State of Texas v USA

 5    Before: US District Court

 6    Date: 08-02-18

 7    Place: Washington, DC

 8    were duly recorded and accurately transcribed

 9    under my direction; further, that said transcript

10    is a true and accurate record of the proceedings;

11    and that I am neither counsel for, related to,

12    nor employed by any of the parties to this action

13    in which this deposition was taken; and further

14    that I am not a relative nor an employee of any

15    of the parties nor counsel employed by the

16    parties, and I am not financially or otherwise

17    interested in the outcome of the action.

18    _____

19    ----------------------

20    Jennifer Bernardi

21    Court Reporter

22

23

24

25
```