# Exhibit 68

STATE OF TEXAS, ET AL. vs UNITED STATES OF AMERICA, ET AL.
Michael Knowles on 08/02/2018

```
 1              UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
 2                   BROWNSVILLE DIVISION

 3                      + + + + +

 4  _____
                                     :
 5  IN THE MATTER OF:                :
                                     :
 6  STATE OF TEXAS, ET AL.,          :
                                     :
 7          Plaintiff,               :
                                     :
 8      v.                           : Civil Action No.
                                     : 1:18-CV-00068
 9  UNITED STATES OF AMERICA,        :
    ET AL.,                          :
10          Defendants,              :
                                     :
11  and                              :
                                     :
12  KARLA PEREZ, et al.,             :
                                     :
13          Defendant-               :
            Intervenors,             :
14                                   :
    and                              :
15                                   :
    STATE OF NEW JERSEY,             :
16                                   :
            Defendant-               :
17          Intervenor.              :
                                     :
18  _____:

19              Thursday,
                August 2, 2018
20
                Washington, D.C.
21

22  DEPOSITION OF:

23              MICHAEL KNOWLES

24

25
```

```
 1   called for examination by Counsel for the
     Defendant-Intervenors, pursuant to Notice of
 2   Subpoena, in the law offices of Mexican American
     Legal Defense Fund, located at 1016 16th Street,
 3   NW, Washington, D.C., when were present on behalf
     of the respective parties:
 4
     APPEARANCES:
 5
     On Behalf of Mexican American Legal Defense Fund:
 6
     NINA PERALES, ESQ.
 7   1016 16th Street, NW
     Suite 100
 8   Washington, D.C. 20036
     210-845-5147
 9   nperales@maldef.org

10   On Behalf of the State of Texas:

11   ADAM ARTHUR BIGGS, ESQ.
     Special Counsel for Civil Litigation
12   Office of the Attorney General of Texas
     P.O. Box 12548
13   Austin, Texas 78711-2548
     512-936-0750
14   adam.biggs@oag.texas.gov

15

16   On Behalf of the State of New Jersey:

17

18   JEREMY E. HOLLANDER, ESQ.

19   Assistant Attorney General

20   124 Halsey Street

21   P.O. Box 45029

22   Newark, New Jersey 07101-5029

23   973-648-7453

24   jeremy.hollander@law.njoag.gov

25
```

```
 1
 2
 3
 4
 5
 6   APPEARANCES: (cont.)
 7
 8   On Behalf of the United States:
 9
10   JEFFREY WALKER, ESQ.
11   U.S. Department of Justice
12   Trial Attorney
13   Ben Franklin Station
14   P.O. Box 868
15   Washington, D.C. 20044
16   202-532-4468
17   james.walker3@usdoj.gov
18
19   ALSO PRESENT:
20
21   ALEJANDRA AVILA*
22   RAI SHAY LIN
23
24   *Present telephonically
25
```

```
 1      Q     They're not done in Atlanta?
 2      A     No.  No, there's no Service Center in
 3  Atlanta.  There's a Service Center in Arlington,
 4  Virginia, one in Vermont, one in Nebraska, one in
 5  Texas, one in California.  And, to the best of my
 6  knowledge, they are done primarily in Nebraska,
 7  but some at some point have been done in
 8  California.
 9      Q     Are you aware of any Field Office in
10  Texas that has interviewed a DACA recipient?
11      A     No, I didn't ask.
12      Q     How many Filed Offices are you aware
13  of throughout the entire country that have
14  interviewed DACA recipients?
15      A     Well, I'm only aware of two because
16  those were the calls that I made.  I have not
17  called each and every Field Office to ask.
18      Q     So, it's fair to say, as you sit here
19  today, you're aware of four instances where DACA
20  recipients were interviewed at a Field Center?
21      A     Mm-hmm.
22      Q     That's a yes?
23      A     That is yes, that is yes.
24      Q     Sorry.
25      A     Sorry, I keep giving you a nonverbal
```

```
 1   nod.  That is yes.
 2        Q    Very good.
 3             Sorry, and I do the exact same thing,
 4   I apologize.
 5        A    And, I have to reiterate, I did not do
 6   a comprehensive data call.  I mean, this
 7   information should be readily available to the
 8   parties from the Agency.
 9        Q    Let's talk about your personal
10   background.  You're an Asylum Officer?
11        A    I am an Asylum Officer.
12        Q    Have you ever personally processed a
13   DACA application?
14        A    Have what?
15        Q    Have you ever personally processed a
16   DACA application?
17        A    No, I have no reason to.
18        Q    Have you ever adjudicated a DACA
19   application?
20        A    No, I would have no reason to.
21        Q    Okay.  Do you know what the criteria
22   are to qualify for DACA?
23        A    Vaguely.  I mean, based on what I've
24   read in the public information.
25        Q    You mentioned earlier something about
```

```
 1              We have procedures to terminate a
 2   status or revoke a status.
 3        Q     So, again, I want to make sure we are
 4   clear on this --
 5        A     Right.
 6        Q     -- as you sit here today you are not
 7   aware of a single DACA application that has been
 8   denied after meeting initial criteria?
 9        A     No, I am not.
10              MS. PERALES:  Objection.  Give me a
11   second here.
12              THE WITNESS:  Okay.
13              MS. PERALES:  Objection, asked and
14   answered.  You are welcome to give the answer.
15   You are welcome to give the complete answer
16   again, but if you are asked the same question
17   twice -- It's the same question.
18              THE WITNESS:  Yes.  No, I mean I am
19   not personally aware of DACA cases.  I mean my
20   awareness is, as I have said, what I have read
21   and my limited conversations with those who do
22   the work.
23              I didn't ask them that question.
24   However, I know as a CIS employee that we have
25   standard procedures to revoke status that has
```

```
 1   is arguing which point.  I was asked to comment
 2   on Mr. Palinkas's statement.
 3        Q    Sure.  And, again, these are kind of
 4   the questions we have to ask for baseline
 5   purposes.
 6        A    Sure.
 7        Q    It's not a trick question.
 8        A    No.
 9        Q    All right.  How many DACA applications
10   are you aware of that have been denied through
11   the history of the program?
12        A    I'm sorry?
13        Q    How many DACA applications are you
14   personally aware of being denied?
15        A    I am not personally aware of the DACA
16   program.
17        Q    What is the DACA program's population
18   currently?
19        A    I don't know what you mean.
20        Q    How many people have DACA status?
21        A    I have no idea.
22        Q    How many people have applied for DACA
23   status throughout the history of the program and
24   been denied?
25        A    I have no idea.  And when I say I have
```

```
 1   no idea I have no personal knowledge other than
 2   what I have read in public documents.
 3        Q    How many DACA applications have been
 4   denied under what is referred to as prosecutorial
 5   discretion?
 6        A    I don't have that information.
 7        Q    Okay.  So when was the first time you
 8   were contacted by MALDEF?
 9        A    It would have been, like I said,
10   within the last couple of months.  I don't recall
11   the dates.
12        Q    What did you discuss with MALDEF?
13        A    I was asked what I thought about this
14   statement and would I be willing to be deposed.
15        Q    Okay.  Did you discuss the topic, what
16   topics would be discussed during your deposition?
17        A    I was told I would be asked about this
18   statement and I would probably be asked about my
19   personal knowledge, or lack of knowledge, of
20   DACA.
21        Q    What did you tell MALDEF about your
22   lack of personal knowledge?
23        A    Just what I have told you today and
24   what I have told them today.
25        Q    That you really don't know anything
```

```
 1              MR. BIGGS:  You need to stop for a
 2   second?
 3              MR. KNOWLES:  Yes, just for a moment.
 4              MR. BIGGS:  Let's go back off the
 5   record.
 6              (Whereupon, the above-entitled matter
 7   went off the record at 1:51 p.m. and resumed at
 8   1:58 p.m.)
 9              MR. BIGGS:  All right, we're almost
10   done.
11              All right, Mr. Knowles, I should have
12   asked this earlier, I think I didn't, but if not,
13   correct me.
14              You have not personally done any DACA
15   processing, but have you ever supervised anybody
16   in your role as a federal employee in approving
17   DACA applications?
18              MR. KNOWLES:  No, I have never
19   supervised anybody in the federal workplace.  I
20   do supervise my union stewards.
21              BY MR. BIGGS:
22       Q      Okay.  So, we left off asking about
23   advanced parole.  Do you know what advanced
24   parole is?
25       A      I have a general understanding of it
```

```
 1            MR. KNOWLES:  Yes, I --
 2            MS. PERALES:  You may answer.
 3            MR. KNOWLES:  Yes, I have no personal
 4   awareness of that other than what I read in the,
 5   you know, public documents and the newspapers.
 6            I've heard of DACA -- I've read of
 7   DACA applicants adjusting status because they
 8   qualify to do so.  But, not because they had
 9   DACA.
10            MR. BIGGS:  So, you're aware that some
11   DACA recipients, according to news reports, have
12   indeed successfully adjusted their status, right?
13            MR. KNOWLES:  Yes, I have read that.
14   But I have no personal knowledge of that.
15            BY MR. BIGGS:
16       Q    So, you don't know whether or not DACA
17   played any role in their ability to adjust their
18   status, right?
19       A    I wouldn't have that level of
20   awareness of the program.
21       Q    Why is it important in the immigration
22   processes of the United States to ferret out
23   fraud, in your opinion?  It seems like a dumb
24   question, but just --
25       A    Well, because, if one has committed
```

```
 1   average length for an in person interview for a
 2   DACA application to take?
 3        A     I have no idea.
 4        Q     And --
 5        A     I mean, it would depend on what
 6   Service Center was asking the Field Office to ask
 7   about.  I didn't ask my contacts how long it took
 8   them to interview those individuals.
 9        Q     You don't know if any of those
10   individuals they allegedly spoke to were denied,
11   right?
12        A     No, I think the officers who did the
13   interview didn't know because they're not -- they
14   weren't the ones making the decision.
15        Q     And, you mentioned the green card
16   interview process.  Is that longer or shorter
17   than that asylum interview process?
18        A     Oh much shorter.
19        Q     How much shorter?
20        A     I don't know because I don't
21   adjudicate green cards or naturalization.
22              But, you know, we might, in asylum, do
23   two or three interviews in a day.  We're talking
24   about affirmative asylum, not credible fear.
25              And, somebody doing naturalization
```

```
 1   Palinkas's statement.
 2        Q    Sure.  So, just to make sure we're
 3   clear, of the 4,000-plus members you spoke to
 4   approximately 6 of them prior to testifying
 5   today?
 6        A    Mm-hmm.
 7        Q    That's a yes?
 8        A    Mm-hmm, yes.
 9             MR. BIGGS:  Pass the witness.
10             MR. HOLLANDER:  I do have a few
11   questions, if you don't mind.
12             MR. KNOWLES:  I would like to say that
13   the individuals that I spoke to were all union
14   representatives of their workplaces.  And,
15   themselves are in regular contact with many other
16   employees.
17             MR. BIGGS:  Sure.  And, I'm sure he'll
18   ask you some questions about that.
19             MS. PERALES:  So you want to re-pass
20   the witness?
21             MR. BIGGS:  Yes, I mean, you can keep
22   it --
23             MR. HOLLANDER:  We would like to take
24   a quick break.
25             (Whereupon, the above-entitled matter
```

```
 1   alter the status of an individual in the United
 2   States currently unlawfully?
 3        A    I don't know that professionally but,
 4   from what I have read in public documents, it is
 5   simply a -- the status is a deferred action, I
 6   mean I believe that's actually in the title.
 7             But, they are still considered here
 8   unlawfully.  But, the government has decided to
 9   defer any action.
10        Q    Nothing further.
11        A    And --
12        Q    Oh, go on.
13        A    During the pendency of the deferral,
14   which I believe from what I read publically is a
15   two year period could be renewed, they get a work
16   permit.
17             I don't know what status there is
18   beyond that.
19        Q    Would you agree with me that your
20   understanding of DACA is limited?
21        A    Extremely limited to what is available
22   to the average citizen or, in my case, to an
23   employee of CIS.  You know, we might have
24   employee broadcasts, whatever.  We might have a
25   town hall meeting where, you know, there are
```

 1  general reports on what is happening in different
 2  parts of the Agency.
 3          But, my knowledge of DACA
 4  professionally is zero, such as limited.  I don't
 5  do DACA.  Right?  Nor does Mr. Palinkas.
 6          MR. BIGGS:  Sure.
 7          All right, thank you very much for
 8  your time.  I don't have anything further unless
 9  y'all have something.
10          MR. KNOWLES:  Okay.
11          MS. PERALES:  Nothing further here.
12          MR. HOLLANDER:  No, New Jersey's
13  finished as well.
14          MS. PERALES:  I should say we reserve
15  our question -- remaining questions for the time
16  of trial.
17          The deposition is concluded.
18          (Whereupon, the above-entitled matter
19  went off the record at 2:50 p.m.)
20
21
22
23
24
25

```
 1   C E R T I F I C A T E
 2   This is to certify that the foregoing transcript
 3   Deposition of: Michael Knowles
 4   In the matter of: State of Texas v USA
 5   Before: US District Court
 6   Date: 08-02-18
 7   Place: Washington, DC
 8   were duly recorded and accurately transcribed
 9   under my direction; further, that said transcript
10   is a true and accurate record of the proceedings;
11   and that I am neither counsel for, related to,
12   nor employed by any of the parties to this action
13   in which this deposition was taken; and further
14   that I am not a relative nor an employee of any
15   of the parties nor counsel employed by the
16   parties, and I am not financially or otherwise
17   interested in the outcome of the action.
18   [signature: Jennifer Bernardi]
19   ----------------------------
20   Jennifer Bernardi
21   Court Reporter
22
23
24
25
```