UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, *et al.*, <br><br> Defendants. | Case No. 18-cv-00068 |

**FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF**

**INTRODUCTION AND SUMMARY**

During the preliminary-injunction hearing on Wednesday, August 8, 2018, the Court requested supplemental briefing on the question whether the Department of Homeland Security (DHS) was required to comply with the notice-and-comment requirements of the Administrative Procedure Act (APA) in issuing the DACA Memo if that Memo actually allowed for the genuine exercise of discretion by agency decisionmakers. *See* Tr. of Oral Arg. at 135-36. Although the Court need not resolve this question or Plaintiffs' procedural APA claim more generally, the answer to this Court's question under Fifth Circuit precedent is "no." Assuming that the DACA Memo genuinely allowed agency decisionmakers to exercise discretion, it was a general statement of policy that itself conferred no substantive rights.

**ARGUMENT**

1.   As the Federal Defendants have explained, this Court need not address whether DACA violated the APA's notice-and-comment requirements. Fed. Defs.' Resp. to Pls.' Mot. for Preliminary Injunction, ECF No. 71 (Fed. Resp.), at 15 n.5. Resolving the procedural APA claim would require a factual determination under Fifth Circuit precedent, *id.* (citing *Texas v. United*

*States*, 809 F.3d 135, 172-175 (5th Cir. 2015)), and Intervenors have attempted to create a factual dispute on this question.[1]  Instead of resolving this factual question, the Court can simply follow Fifth Circuit precedent and hold that DACA is substantively unlawful under the Immigration and Nationality Act because it is materially indistinguishable from the DAPA and expanded DACA policies that were held substantively unlawful in *Texas*.  *Id.*; *see id.* at 13-15.

> 2.   If this Court chooses to address Plaintiffs' procedural APA claim, and if it assumes that the DACA Memo genuinely left agency decisionmakers free to exercise discretion, Fifth Circuit precedent would require the Court to hold that DHS did not violate the APA's notice-and-comment requirements when it issued the DACA Memo.

Under *Texas*, the DACA Memo would be a policy statement exempt from notice-and-comment requirements if it (1) did not "impose any rights or obligations" and (2) "genuinely le[ft] the agency and its decision-makers free to exercise discretion."  809 F.3d at 171 (citation and alteration omitted).  The Fifth Circuit applied this test in *Texas* and concluded that the plaintiffs had established a substantial likelihood that the memorandum establishing DAPA and expanded DACA needed to go through notice and comment because it "would not genuinely leave the agency and its employees free to exercise discretion." *Id.*  That ruling rested on a finding by this Court that although the DACA Memo instructed agency decisionmakers to review requests on a case-by-case basis and exercise discretion, those statements were pretextual.  *Id.* at 171-76.

If this Court assumes, however, that the DACA Memo gave DHS and its employees genuine freedom to exercise discretion in granting deferred action to the aliens at issue, that Memo

---

[1] *See* Defs.-Ints.' Resp. in Opp. to Pls.' Supp. Post-Discovery Br. in Support of Their Mot. for Preliminary Injunction, ECF No. 288, at 20-21; Defs.-Ints.' Opposed Rule 56(d) Mot. to Deny or Defer Consideration of Summ. J., ECF No. 287, at 5-6; Def.-Int. New Jersey's Mem. in Opp. to Pls.' Mot. for Preliminary Injunction, ECF No. 215, at 22-26.

would not have to comply with notice-and-comment requirements under Fifth Circuit precedent. Instead, the DACA Memo would simply be a "policy statement" that "'advise[d] the public prospectively of the manner in which the agency propose[d] to exercise a discretionary power,'" *id.* at 171 & n.123—here, the Secretary's "exercise [of] prosecutorial discretion" by "deferring action" in enforcing the immigration laws against the aliens at issue. DACA Memo at 2; *see also Reno v. American Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (describing "deferred action" as an "exercise in administrative discretion"). As the Fifth Circuit stressed, "a traditional nonenforcement policy would not necessarily be subject to notice and comment just because DAPA must undergo notice-and-comment review." *Texas*, 809 F.3d at 178 n.156.

**3.** Plaintiff States contend that even if the DACA Memo genuinely left DHS and its employees free to exercise discretion in granting or denying deferred action, it would still have to satisfy the APA's notice-and-comment requirements because "DACA modified substantive rights and interests" by "conferr[ing] on recipients lawful presence and eligibility for attendant benefits." Pl. States' Post-Discovery Br. in Support of Their Mot. for Preliminary Injunction, ECF No. 218 (Post-Discovery Br.), at 18. That argument, however, rests on a mistaken premise.

The DACA Memo *never* used the phrase "lawful presence" and, to the contrary, expressly stated that it "confer[red] no substantive right [or] immigration status" on the aliens at issue. DACA Memo at 3. Likewise, the Memo did not *itself* confer any benefits on those aliens. Instead, it merely acknowledged that, "[f]or individuals who are granted deferred action" under DACA, DHS "shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action." *Id.* Critically, that eligibility for work authorization, like the eligibility for other benefits that flowed to DACA recipients, was based on a *pre-existing* regulation that is triggered *whenever* DHS grants deferred action. *See* 8 C.F.R.

3

§ 274a.12(c)(14) ("alien who has been granted deferred action" may obtain work authorization in certain circumstances); *see also, e.g.*, *id.* § 1.3(a)(4)(vi) (alien with "deferred action" is considered "lawfully present" for purposes of applying for Social Security benefits). And that pre-existing regulation went through notice and comment itself. *See, e.g.*, 52 Fed. Reg. 16,216 (1987) (work authorization); *see also, e.g.*, 61 Fed. Reg. 47,039 (1996) (Social Security benefits).[2]

The Fifth Circuit's statement that deferred action "affirmatively confer[s] 'lawful presence' and associated benefits" on "unlawfully present aliens," *Texas*, 809 F.3d at 166, is best understood as shorthand for the fact that "under pre-existing statutory and regulatory provisions a grant of deferred action would trigger certain collateral benefits for such aliens, such as eligibility for employment authorization." Memorandum from Secretary Kirstjen M. Nielsen, ECF No. 100-1, at 4. As the Attorney General explained, DACA "allows" certain unlawfully present aliens "to request and receive … benefits such as work authorization and participation in the Social Security program" (under regulations that went through notice and comment decades ago). Letter from Attorney General Sessions to Acting Secretary of Homeland Security Duke, ECF No. 71-1.

Accordingly, the DACA Memo did not have to undergo notice and comment on the ground that it modified substantive rights or benefits. Were the law otherwise, *any* grant of deferred action—whether categorical or individual—would have to undergo notice and comment on the theory that it would trigger collateral benefits under pre-existing regulations. Conversely, any

---

[2] Notice-and-comment procedures were unnecessary for a DHS policy providing that deferred action tolls the accrual of "unlawful presence" for purposes of potential inadmissibility under 8 U.S.C. § 1182(a)(9)(B), which is triggered only upon the individual's departure from the United States. *See* Memorandum from Johnny N. Williams, Exec. Assoc. Comm'r, Office of Field Operations, to Reg'l Dirs. et al., Unlawful Presence 1 (June 12, 2002). That policy interprets 8 U.S.C. § 1182(a)(9)(B), does not bind any regulated party or court in any way, and merely addresses DHS's internal computation of time. In any event, like the other benefits discussed above, this benefit was not granted by DACA itself, but rather flows from a pre-existing policy for any deferred-action recipient.

4

decision to *terminate* either an individual grant of deferred action or a general deferred-action policy (like DACA's rescission) could equally be mischaracterized as "modif[ying] substantive rights and interests" under Plaintiffs' theory. Post-Discovery Br. at 18. That cannot be the law.

## CONCLUSION

For the reasons given in the government's previous filings, if the Court determines that injunctive relief is warranted notwithstanding the conflicting California and New York injunctions, the Court should limit any such injunction to DACA recipients as to whom Plaintiffs have demonstrated standing, and it should stay the injunction for 14 days so the United States can seek stays of all the DACA injunctions in the respective courts of appeals and the Supreme Court.

Dated: August 13, 2018                                    Respectfully submitted,

CHAD A. READLER                                           /s/ *Jeffrey S. Robins*
Acting Assistant Attorney General                         JEFFREY S. ROBINS
Civil Division                                            Attorney-in-Charge
                                                          Assistant Director
BRETT A. SHUMATE                                          U.S. Department of Justice, Civil Division
Deputy Assistant Attorney General                         Office of Immigration Litigation
                                                          District Court Section
WILLIAM C. PEACHEY                                        P.O. Box 868, Washington, DC 20044
Director, Office of Immigration Litigation                Telephone: (202) 616-1246
District Court Section                                    Facsimile: (202) 305-7000
                                                          jeffrey.robins@usdoj.gov

Attorneys for Federal Defendants