**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS; | ) |
| | ) |
| STATE OF ALABAMA; | ) |
| | ) |
| STATE OF ARKANSAS; | ) |
| | ) |
| STATE OF KANSAS; | ) |
| | ) |
| STATE OF LOUISIANA; | ) |
| | ) |
| STATE OF NEBRASKA; | ) |
| | ) |
| STATE OF SOUTH CAROLINA; | ) |
| | ) |
| STATE OF WEST VIRGINIA, | ) |
| | ) |
| GOVERNOR PHIL BRYANT, STATE OF MISSISSIPPI; AND | ) |
| | ) |
| GOVERNOR PAUL R. LEPAGE, STATE OF MAINE, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| *vs.* | ) Case No. 1:18-cv-00068 |
| | ) |
| UNITED STATES OF AMERICA, ET AL.; | ) |
| | ) |
| *Defendants,* | ) |
| | ) |
| *and* | ) |
| | ) |
| KARLA PEREZ, ET AL.; | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

**PLAINTIFF STATES' SUPPLEMENTAL BRIEF**

The Court asked: "Assume hypothetically I'm accepting the Intervenor's argument that the applications are being given discretion or discretion is being used, can there still be a violation of the procedural APA?" Aug. 8, 2018 Hr'g Tr. 135:21-25.[1]

The answer is yes. DACA granted lawful presence and work authorization—and thus eligibility for a host of other benefits—to hundreds of thousands of unlawfully present aliens who met its broadly applicable stated criteria. Such a sweeping use of Executive power—regardless of its substantive unlawfulness—is subject to the minimal procedural protections afforded by notice-and-comment rulemaking. DACA "affect[s] individual rights and obligations," so it is a "substantive rule" under the APA—and DACA is not subject to one of the narrow exceptions to the notice-and-comment process. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979); 5 U.S.C. § 553. DACA affects individual rights and obligations regardless of whether the Executive exercises discretion in granting DACA only to certain individuals meeting its criteria. *See Morton v. Ruiz*, 415 U.S. 199, 231-37 (1974). So even assuming that some discretion is used, the Executive's failure to use notice-and-comment rulemaking means that DACA is unlawful. *Chrysler*, 441 U.S. at 302.

---

[1] The record here conclusively proves that the Executive does not exercise discretion in administering DACA to exempt it from notice-and-comment rulemaking. Even if Intervenors could point to a handful of discretionary denials, what matters is how DACA is implemented in the vast majority of cases. *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1320-21 (D.C. Cir. 1988) (where model was used to resolve 96 out of 100 applications, it was a substantive rule). The evidence proves that such discretionary denials did not happen, let alone happen at such a rate to exempt DACA from the APA's procedural requirements. *See* Pls.' Post-Disc. Resp. Br. 22-28, ECF No. 282; *see also, e.g.*, Pls.' Mot. for Prelim. Inj. Exh. 5 n.1 (App. 22-23), ECF No. 6.

**1.** There is no dispute that DACA is a "rule" for APA purposes. *See* 5 U.S.C. § 551(4). Accordingly, DACA must undergo notice-and-comment procedures unless Intervenors can demonstrate that it is subject to an exception. *See id.* § 553(b). These exceptions must be read narrowly because the notice-and-comment procedure advances crucial participation, fairness, and accountability values. *E.g., Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1044-45 (D.C. Cir. 1987); *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995). DACA's radical change in the Nation's immigration laws only heightens the procedure's importance in this instance. *See, e.g., Hoctor v. USDA*, 82 F.3d 165, 171 (7th Cir. 1996); *Chamber of Commerce of U.S. v. U.S. Dep't of Labor*, 174 F.3d 206, 212 (D.C. Cir. 1999).

Intervenors argue that DACA is subject to the "general statements of policy" exception (5 U.S.C. § 553(b)(A)) to the APA's notice-and-comment requirement. *See* Def.-Intervenors' Opp'n to Pls.' Mot. for Prelim. Inj. ("MALDEF Br.") 36-40, ECF No. 224; Def.-Intervenor State of N.J.'s Mem. of Law in Opp'n to Pls.' Mot. for Prelim. Inj. ("New Jersey Br.") 20-21, ECF No. 215. But even without considering whether discretion is used, DACA required notice-and-comment rulemaking because it "affect[s] individual rights and obligations." *Chrysler*, 441 U.S. at 302. As the Fifth Circuit held regarding Expanded DACA and DAPA, "'[t]he most important factor' in distinguishing between a substantive rule and a general statement of policy 'concerns the actual legal effect . . . of the agency action in question on regulated entities.'" *Texas v. United States*, 809 F.3d 134, 205 (5th Cir. 2015), *as revised* (Nov. 25, 2015) (quoting *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014)). In

contrast, "a general statement of policy is one that does not impose any rights and obligations." *Prof'ls & Patients*, 56 F.3d at 595 (internal quotes omitted). In *Morton v. Ruiz*, the Supreme Court held that a much narrower rule concerning who would be eligible for certain benefits due to Native Americans "affect[ed] individual rights and obligations" and therefore was a substantive rule. 415 U.S. at 231-37. In other words, a rule that "affect[s] individual rights and obligations" is substantive—even if the agency retains some discretion in deciding who precisely can obtain this change in rights and obligations. *See id.* DACA is essentially an exaggerated version of the fact pattern in *Ruiz*. *Id.* at 234-35. The benefit-eligibility requirements affected individual rights, so they were "a legislative-type rule" subject to notice and comment. *Id.* at 236.

Likewise, DACA makes certain unlawfully present aliens eligible for a variety of valuable rights and benefits. *See* Pls.' Post-Disc. Resp. Br. 6-7; *see also* Pls.' Mot. for Prelim. Inj. 24-27, ECF No. 5. The substantive benefits of DACA are numerous and include at least: (1) negating the charge of removability; (2) employment authorization; (3) travel privileges leading to a pathway to citizenship; (4) Social Security benefits; (5) retirement benefits; (6) disability benefits; and (7) other financial benefits such as opening bank accounts, obtaining credit cards, and purchasing homes. *See* Pls.' Post-Disc. Resp. Br. 20; Pls.' Mot. for Prelim. Inj. 23-27, 34-37. That DACA is necessary to confer lawful presence and work authorization on hundreds of thousands of aliens illustrates that "nothing in the statute, prior regulations, or case law" authorizes DACA—and that means DACA "changed the law." *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 320-21 (D.C. Cir. 2011).

3

Those same considerations led the Fifth Circuit to conclude that Expanded DACA and DAPA is a substantive rule that affects rights and obligations. *See Texas*, 809 F.3d at 176-78. It held that "receipt of DAPA benefits implies a 'stamp of approval' from the government and 'encodes a substantive value judgment,' such that the program cannot be considered procedural." *Id.* at 177 (quoting *Am. Hosp.*, 834 F.2d at 1047). That reasoning applies here.

Not only has the Fifth Circuit effectively declared DACA a substantive rule, but DACA's own supporters have, too. In the *Regents* matter, DACA's supporters expressly argued that the Executive's memo rescinding DACA is "a substantive rule subject to APA's notice-and-comment requirements." Compl. 14 ¶ 61, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211-WHA (N.D. Cal. Sept. 8, 2017), ECF No. 1. And before this Court, Defendant-Intervenors admit that DACA confers lawful presence and certain benefits upon DACA recipients. Proposed Def.-Intervenors' Mem. of Law in Support of Mot. for Leave to Intervene 1-3, ECF No. 14.

In short, the record evidence, the Fifth Circuit's analysis of DAPA, and the DACA supporters' own litigation positions confirm that DACA affects individual rights and obligations. It constitutes a binding substantive rule that cannot be valid absent compliance with the APA's notice-and-comment process. *See Chrysler*, 441 U.S. at 302; *Ruiz,* 415 U.S. at 232. DACA is thus procedurally unlawful, regardless of whether it affords the Executive discretion. *See id.*

**2.**  Intervenors have offered two contrary arguments, both of which have been fully rebutted in Plaintiff States' earlier briefing and are foreclosed by *Texas*. First,

Intervenors claim that DACA does not actually confer substantive rights, citing language in the DACA memo itself. MALDEF Br. 36-40; New Jersey Br. 21-22. But whatever labels the memo may use do not control. *See, e.g.*, *Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 619 (5th Cir. 1994), *modified on other grounds*, No. 93-1377, 1994 WL 484506 (Sept. 7, 1994); *Iowa League of Cities v. EPA*, 711 F.3d 844, 865 (8th Cir. 2013) (agency's label does not control and "pro forma reference to . . . discretion" was "Orwellian Newspeak"). What matters is the actual effect, and DACA confers lawful presence, work authorization, and eligibility for numerous benefits.

Second, Intervenors argue that any benefits DACA recipients receive flow from other rules that did undergo notice-and-comment rulemaking. *See* New Jersey Br. 26-28. But this ignores that it is DACA—and not any other rules—that renders hundreds of thousands of aliens lawfully present and authorized to work in this country. In other words, but for DACA, these individuals would not be lawfully present, authorized to work, or eligible for the numerous benefits that flow from DACA relief. That is precisely what this Court already recognized regarding Expanded DACA and DAPA. *Texas v. United States*, 86 F. Supp. 3d 591, 654 (S.D. Tex. 2015) (mem. op.), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015).

Finally, even if DACA were not *procedurally* unlawful, it remains *substantively* unlawful under the APA and the Take Care Clause. The question of discretionary denials plays no part in deciding the merits of whether DACA violates the Take Care Clause or the APA's substantive requirements. Thus, this Court can resolve this case on either of these violations without considering the issue of discretionary denials.

August 13, 2018

STEVE MARSHALL
Attorney General of Alabama

LESLIE RUTLEDGE
Attorney General of Arkansas

DEREK SCHMIDT
Attorney General of Kansas

JEFF LANDRY
Attorney General of Louisiana

DOUGLAS J. PETERSON
Attorney General of Nebraska

ALAN WILSON
Attorney General of South Carolina

PATRICK MORRISEY
Attorney General of West Virginia

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Attorney-in-Charge
Special Counsel for Civil Litigation
Tx. State Bar No. 24081854
Southern District of Texas No. 2985472
Tel.: (512) 463-2100; Fax: (512) 936-0545
todd.disher@oag.texas.gov
P.O. Box 12548
Austin, Texas 78711-2548

ADAM ARTHUR BIGGS
Special Counsel for Civil Litigation

ADAM N. BITTER
Assistant Attorney General

**COUNSEL FOR PLAINTIFF STATES**

6

## CERTIFICATE OF SERVICE

I certify that on August 13, 2018, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Special Counsel for Civil Litigation

**COUNSEL FOR PLAINTIFF STATES**