# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:18-CV-68 |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| KARLA PEREZ, *et al.*, | ) |
| | ) |
| Defendant-Intervenors, | ) |
| and | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| Defendant-Intervenor. | ) |

## STATE OF NEW JERSEY'S POST-HEARING SUPPLEMENTAL BRIEF

New Jersey submits this brief pursuant to the Court's request for briefing on whether there can be a "violation of the procedural APA" if individual discretion is being exercised on a case-by-case basis in adjudicating DACA applications.[1] The answer is no.

As the Fifth Circuit has explained, "[substantive] rules … grant rights, impose obligations, or produce other significant effects on private interests. They *also* narrowly constrict the discretion of agency officials by largely determining the issue addressed." *Texas v. United States*, 809 F.3d 134, 176, n.145 (5th Cir. 2015) (quoting *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 908 (5th Cir. 1983)) (alteration and omission in original, second emphasis added). As the Fifth Circuit's analysis in *Texas* reveals, if a policy sets forth a framework for how an executive agency will exercise its discretion going forward, but leaves discretion to be exercised in each individual case, it does not grant substantive rights and need not go through notice and comment.

The Fifth Circuit relies on two criteria to distinguish "policy statements," which are exempt from the APA's notice-and-comment rulemaking requirements, from "substantive rules," which are not exempt: "whether the rule (1) 'impose[s] any rights and obligations' and (2) 'genuinely leaves the agency and its decision-makers free to exercise discretion.'" *Texas*, 809 F.3d at 171 (quoting *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir.1995)). The Fifth Circuit recognizes "overlap" between these "prongs" because "'[i]f a statement denies the decisionmaker discretion in the area of its coverages . . . then the statement is binding, and creates rights or obligations.'" *Texas*, 809 F.3d at 171 (quoting *Gen. Elec. Co. v. E.P.A.*, 290 F.3d 377, 382 (D.C. Cir. 2002)).

---

[1] The email chain that counsel for New Jersey provided to the Court at the August 8, 2018 hearing is submitted with this Brief as NJ Appendix, Ex. 71, NJAPP0836- 838.

Conversely, if a policy grants case-by-case discretion to a decisionmaker, it by nature *cannot* create binding legal rights or obligations. The Fifth Circuit thus differentiates between binding rules, on the one hand, which "affect individual rights and obligations and are binding on the courts," and policy pronouncements, on the other hand, which "genuinely leave the agency and its decisionmakers free to exercise discretion." *Texas Savs. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551, 556 (5th Cir. 2000). And in *General Electric*, cited by the Fifth Circuit in *Texas*, the D.C. Circuit asked whether "the agency action … impose[s] any rights and obligations" or instead "genuinely leaves the agency and its decisionmakers free to exercise discretion"—and then focused its entire analysis on whether the agency pronouncement "appear[ed] on its face to be binding, or [wa]s applied by the agency in a way that indicates it is binding." 290 F.3d at 382-85 (internal quotation marks and citations omitted); *see also McLouth Steel Prods. v. Thomas*, 838 F.2d 1317, 1320 (D.C. Cir. 1988) (explaining that in practice "the second criterion may well swallow the first").

This Court has also recognized that the extent to which the agency can exercise discretion in individual cases going forward is the *critical factor* in distinguishing a policy from a rule—holding that "[a]s long as the agency remains free to consider the individual facts in the various cases that arise, then the agency action in question *has not established a binding norm*." *Texas v. United States*, 86 F. Supp. 3d 591, 668-69 (S.D. Tex. 2015) (emphasis added); *see also Ryder Truck Lines, Inc. v. United States*, 716 F.2d 1369, 1377 (11th Cir. 1983) ("[W]hether a particular agency proceeding announces a rule or a general policy statement depends upon whether the agency action establishes 'a binding norm.' *The key inquiry, therefore, is the extent to which the challenged policy leaves the agency free to exercise its discretion to follow or not to follow that general policy in an individual case* …. As long as the agency remains free to consider the

*individual facts in the various cases that arise, then the agency action in question has not established a binding norm*." (internal quotation marks and citations omitted and emphases added)).

This makes sense. A legal right is a substantive entitlement that is *not subject* to absolute agency discretion. For example, welfare benefits are "a matter of statutory entitlement for persons qualified to receive them." *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). This means an individual adjudicator at the Department of Health and Human Services cannot simply choose to exercise his or her discretion to deny welfare benefits to a person statutorily entitled to receive them. In addition, the termination of welfare benefits "involves state action that adjudicates important rights," and thus "procedural due process must be afforded" prior to termination. *Id.* at 262-63.

The Napolitano Memo could not be more different. The Memo is crystal clear that it "confers no substantive right, immigration status or pathway to citizenship." Dkt. 6, Ex. 1 (App. 2-4). No person has any substantive entitlement to obtain deferred action under the Memo, and the Executive retains discretion to revoke a grant of deferred action at any time. *See Texas*, 809 F.3d at 148 (recognizing that "'[l]awful presence' is not an enforceable right to remain in the United States and can be revoked at any time"). Case law backs DHS up on this: the Supreme Court has held that, despite efforts by applicants to sue after being denied deferred action under prior frameworks, federal laws are "designed to give some measure of protection to 'no deferred action' decisions," and Congress sought to limit "judicial constraints upon [this] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Cmte.*, 525 U.S. 471, 485 & n.9 (1999).

As support for its assertion that the Napolitano Memo confers "substantive rights," Plaintiffs argue that "litigants challenging the Executive's 2017 decision to wind down DACA"

admitted "that aliens who received DACA status would not have been able—but for DACA—to lawfully obtain jobs and access to certain Social Security and Medicare benefits." Dkt. 5 at 34 (internal quotation marks omitted); *see also* Dkt. 282 at 19-21.

But this argument suffers from two fatal flaws. First, none of those litigants are parties to this case, and their arguments are not binding on Defendant-Intervenors here. Second, the language quoted by Plaintiffs does not establish that the Napolitano Memo itself confers any substantive rights. Plaintiffs confuse *a substantive right to obtain deferred action* with the *ability of one who has already been granted deferred action* as an exercise of discretion to apply for work authorization or qualify for certain retirement or Medicare benefits. The latter has been the law for years, pursuant to independent, pre-existing regulations that already went through notice and comment rulemaking. As New Jersey has already explained, *see* Dkt. 215 at 14-18, 26-28; Dkt. 286 at 8, those granted deferred action have been able to apply for work authorization since the 1970s, and the policy was codified in formal regulations—both of which went through notice and comment rulemaking—in 1981 and 1987. *See* 46 Fed. Reg. 25,079 at 25,081 (May 5, 1981) (permitting those granted deferred action to apply for work authorization if they could establish "economic need as a pre-requisite") (Dkt. 215-1, Ex. 41 (NJAPP411)); 52 Fed. Reg. 16,216 (May 1, 1987) (permitting those granted deferred action to apply for work authorization if they could "establish[] an economic necessity for employment") (Dkt. 215-1, Ex. 42 (NJAPP416)). Thus, when the Napolitano Memo confirmed that USCIS would "accept applications to determine whether … individuals qualify for work authorization during this period of deferred action," Dkt. 6, Ex. 1 (App. 4), it was stating the obvious—that a separate and longstanding regulation, which had gone through a public comment period decades earlier, set up that process.

The same is true of the other benefits Plaintiffs cite. Since 1996, federal law has provided that "an alien who is lawfully present in the United States as determined by the Attorney

4

General," may receive "any benefit payable under title II of the Social Security Act." 8 U.S.C. § 1611(b)(2). That same year, the INS promulgated regulations clarifying that "for purposes of section 401(b)(2) of Pub. L. 104-193 only, an 'alien who is lawfully present in the United States,'" includes "[a]liens currently in deferred action status." 61 Fed. Reg. 47,039 at 47,041 (Sept. 6, 1996) (Dkt. 215-1, Ex. 44 (NJAPP435)); *see also* 76 Fed. Reg. 53,764 at 53,780 (Aug. 29, 2011) (Dkt. 215-1, Ex. 45 (NJAPP440)). In other words, while a grant of deferred action may implicate "significant" collateral consequences, *Texas*, 809 F.3d at 148, those consequences all flow from other regulations that apply to all deferred action grants and that went through notice and comment rulemaking. That is why, starting in the 1970s, DHS announced a series of deferred action policies, without ever subjecting a single one to notice and comment. The Napolitano Memo is no different.

## CONCLUSION

A finding that DHS exercises discretion in adjudicating DACA applications means the Napolitano Memo comports with the procedural requirements of the APA. Accordingly, and for the reasons stated in its previous briefs, *see* Dkts. 215 and 286, New Jersey respectfully requests that the Court deny Plaintiffs' motion for preliminary injunction.

Dated: August 13, 2018

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:  */s/Rachel Wainer Apter*
Assistant Attorney General
Attorney-in-Charge
(admitted pro hac vice)
Richard J. Hughes Justice Complex
25 Market Street, 8th Floor
Trenton, New Jersey 08625-0116
Phone: (609) 376-2702
Fax: (609) 777-4015
Rachel.Apter@njoag.gov

Jeremy Hollander, Assistant Attorney General
(admitted pro hac vice)
Kenneth S. Levine, Deputy Attorney General
(admitted pro hac vice)
Paul H. Juzdan, Deputy Attorney General
(admitted pro hac vice)
Katherine Gregory, Deputy Attorney General
(admitted pro hac vice)
Nicholas Dolinksy, Deputy Attorney General
(admitted pro hac vice)
Brian DeVito, Deputy Attorney General
(admitted pro hac vice)
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101

*Attorneys for Defendant-Intervenor State of New Jersey*

## **CERTIFICATE OF SERVICE**

I certify that on August 13, 2018, I caused this document (and exhibits hereto) to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          */s/Rachel Wainer Apter*
                                          Rachel Wainer Apter

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:18-CV-68 |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| KARLA PEREZ, *et al.*, | ) |
| | ) |
| Defendant-Intervenors, | ) |
| and | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| Defendant-Intervenor. | ) |

**APPENDIX**

Pursuant to this Court's Civil Procedures, Rule 7, Defendant-Intervenor, State of New Jersey, hereby provides this Court with the following table of contents and copies of the documents and authorities cited in its Post-Hearing Supplement Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction:

| Ex. | Description | Page |
|---|---|---|
| 71. | DEF00007875-76 | NJAPP0836-838 |

Dated: August 13, 2018

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:   */s/Rachel Wainer Apter*
      Assistant Attorney General
      Attorney-in-Charge
      (admitted pro hac vice)

Richard J. Hughes Justice Complex
25 Market Street, 8th Floor
Trenton, New Jersey 08625-0116
Phone: (609) 376-2702
Fax: (609) 777-4015
Rachel.Apter@njoag.gov

Jeremy Hollander, Assistant Attorney General
(admitted pro hac vice)
Kenneth S. Levine, Deputy Attorney General
(admitted pro hac vice)
Paul H. Juzdan, Deputy Attorney General
(admitted pro hac vice)
Brian DeVito, Deputy Attorney General
(admitted pro hac vice)
Katherine Gregory, Deputy Attorney General
(admitted pro hac vice)
Nicholas Dolinsky, Deputy Attorney General
(admitted pro hac vice)
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101

*Attorneys for Defendant-Intervenor State of New Jersey*

# Exhibit 71

NJAPP0836

| | |
|---|---|
| **From:** | Holmes-Okeawolam, Malethea S <████████████████████> |
| **Sent:** | Tuesday, May 8, 2018 10:36 AM |
| **To:** | Robinson, Brandon M <████████@uscis.dhs.gov> |
| **Subject:** | RE: DACA Discretinoary Denials |

Brandon,

TSC has been out of the DACA initial/renewal business for over 2 years now. However, Section Chief Tyronda Lee (BCU) will respond behalf of TSC since her team processed the criminality cases. On the adjudication side, we typical denied cases because they did not meet the guidelines.

Thanks.


### Malethea Holmes-Okeawolam
Associate Center Director | Texas Service Center
**Office**: (214) 962-████ | **Cell**: (214) 236-████

---

**From:** Robinson, Brandon M
**Sent:** Tuesday, May 08, 2018 8:00 AM
**To:** DeBoer, Allan S; Shafii-Stier, Sara A; Jenkins, Jennifer L; Herring, Monte R; Lewis, Theodore R; Nguyen, Van T; Sherman, Lori A; Beyor, Avery G Jr; Nephew, Brad D; Marks, Jaylan A; Holmes-Okeawolam, Malethea S; Lee, Tyronda E; Liu, Jerry
**Cc:** Umoru, Victoria E; Garon, Michielle S
**Subject:** DACA Discretinoary Denials
**Importance:** High

Good morning DACA POCs,

I hope you are all doing well.

We are in need of your assistance in providing information to DOJ regarding discretionary denials. Specifically, has DACA ever been denied based on purely discretionary factors when all the DACA guidelines have been met (to include not being a public safety concern)? DOJ is requesting our responses by noon ET today (5/8). Any information you can share would be greatly appreciated. Apologies for the quick turnaround.

Thanks!
Brandon

**Brandon Robinson**
Acting Branch Chief

Service Center Operations HQ
U.S. Citizenship and Immigration Services
Department of Homeland Security
402.304.████(cell)
████████████@uscis.dhs.gov