**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Case No. 1:18-CV-68 |
| § | |
| UNITED STATES OF AMERICA, *et al.*, § | |
| § | |
| Defendants, § | |
| § | |
| and § | |
| § | |
| KARLA PEREZ, *et al.*, § | |
| § | |
| Defendant-Intervenors, § | |
| § | |
| and § | |
| § | |
| STATE OF NEW JERSEY, § | |
| § | |
| Defendant-Intervenor. § | |

## DEFENDANT-INTERVENORS' POST-HEARING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendant-Intervenors Karla Perez, *et al.* ("Defendant-Intervenors") submit this Post-Hearing Brief in response to the Court's instruction to address the implications of a possible finding of fact that "discretion is being used" in adjudicating applications under Deferred Action for Childhood Arrivals ("DACA").  Dkt. 302 at 135.

## I. A Finding by This Court That DACA Is Applied on a Discretionary Basis Would Defeat Plaintiffs' Procedural APA Claim

Agency policy statements that merely guide the exercise of discretion, and "advise the public prospectively of the manner in which the agency proposes to exercise [said] discretionary power," are exempt from notice-and-comment rulemaking under the Administrative Procedure Act ("APA").  *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979).  As this Court has recognized, "the APA's formal rulemaking procedures do not apply" to mere policy statements.  *Texas v. United States*, 86 F. Supp. 3d 591, 665 (S.D. Tex. 2015); *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (same).  In determining whether a document like the DACA Memorandum is a policy statement, the Fifth Circuit inquires whether a rule "genuinely leaves the agency and its decision-makers free to exercise discretion" and whether, due to no discretion, it effectively "impose[s] any rights and obligations."  *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (internal quotation marks omitted).  There is "overlap in the analysis of those prongs, 'because [i]f a statement denies the decision-maker discretion. . . . the statement is binding, and creates rights or obligations.'" *Id.* (internal quotation omitted).  Accordingly, the key legal determination for both "prongs" is whether a policy like DACA constitutes a substantive rule subject to notice-and-comment rulemaking by, in practice, "constrain[ing] discretion enough to create a binding norm." *See Ass'n of Flight Attendants-CWA v. Huerta*, 785 F.3d 710, 718 (D.C. Cir. 2015).

Here, the record is replete with evidence to support the view that DACA does not constrain agency adjudicators from exercising discretion, but instead guides the exercise of

discretion in granting deferred action—a regular feature of the immigration system.  U.S. Citizenship and Immigration Services employees "bristled at the thought" that anyone would think they "rubber-stamped" DACA requests, and observed instead that, of requests like this, "DACA . . . [was] the one that required the most discretion" to adjudicate.  *See* Def-Int. Ex. 151 at Tr. 24:19-21, 25:24-26:3; *see also id.* at Tr. 23:9-24, 24:9-26:10, 32:11-25, 67:10-68:24.  "[E]ach initial DACA request is individually considered" and, in addition to the criteria in the DACA Memorandum, "other factors that might adversely impact the favorable exercise of discretion" are also assessed.  Dkt. 6 at 586.  Indeed, currently approximately 20% of requests for initial grants of deferred action under the DACA guidelines are denied.  Def-Int. Ex. 276; *see also* Def-Int. Ex. 233 at 1 (testimony that even DACA applicants who meet all listed criteria are judged on "whether or not you would want to live next door to the person"); Def-Int. Ex. 153 at 16 (listing standard operating procedures to assist with the application of discretion); Def.-Int. Ex. 11 ¶ 15 (individuals who meet listed criteria may be refused deferred action at the discretion of the adjudicating officer); *cf.* Def-Int. Ex. 136 at Tr. 41:22-43:5, 53:11-54:12, 60:24-61:10, 62:7-11, 88:13-16, 100:16-19, 106:23-107:20, 114:7-22, 119:23-120:21, 122:22-123:2, 123:7-124:9, 145:4-14 (testimony from Kenneth Palinkas that he has no first hand knowledge or experience with DACA or that DACA applications are "rubber stamped").  If this Court concludes that DACA is applied in a discretionary manner, then it cannot have created binding rights or obligations, and Plaintiffs' procedural APA claim necessarily fails.

The key to this Court's prior holding that Deferred Action for Parents of Americans ("DAPA") was, by contrast, a substantive rule rather than a statement of policy was its factual finding that DAPA adjudicators were unable to exercise case-by-case discretion, and that "discretion [was thus] virtually extinguished."  *Texas*, 86 F. Supp. 3d at 669-70.  Specifically,

this Court explained that "[t]he rule's effect on agency discretion is the primary determinant in characterizing a rule as substantive or nonsubstantive" and that the key in determining whether an action has established a binding norm is whether the action "severely restricts agency discretion." *Id.* at 666 (internal quotation marks omitted). Put another way, "'[a]s long as the agency remains free to consider the individual factors in the various cases that arise, then the agency action in question has not established a binding norm'" and was therefore not required to undergo notice-and-comment rulemaking. *Id.* at 668-69 (quoting *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 596-97 (5th Cir. 1995)).[1] This Court noted that DAPA represented a "substantive change in immigration policy" *because* of its conclusion that DAPA was not "mere advice or guidance" but rather "impose[d] discrete obligations" and "severely restrict[ed] agency discretion." *Id.* at 670-71. If this Court finds, by contrast, that DACA *is* applied in a discretionary manner, then it would not represent the kind of substantive change in policy that requires notice.

DACA did not create substantive rights that would require notice-and-comment rulemaking. By its terms, the DACA Memorandum "confer[ed] no substantive right, immigration status or pathway to citizenship." Dkt. 6 at 5. Instead, it established guidance for granting deferred action, which is itself no more than "an act of administrative convenience to the government which gives some cases lower priority." 8 C.F.R. § 274a.12(c)(14). The Executive may exercise its discretion to grant or revoke deferred action based on "express statutory provisions" or "as the result of implied authority." *Johns v. Dep't of Justice*, 653 F.2d 884, 890 (5th Cir. 1981). "At each stage the Executive has discretion to abandon the" provision of deferred action, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999),

---

[1] Plaintiffs do not dispute that this Court's prior finding that DAPA did not "*genuinely* leave[] the agency and its [employees] free to exercise discretion" was central to the Court's prior ruling. Dkt. 282 at 12 (emphasis in original) (quoting *Texas*, 86 F. Supp. 3d at 670)).

and DACA is extinguished through an issuance of a Notice to Appear, Def-Int. Ex. 153 at 137.

Plaintiffs mistakenly attempt to invoke the rights-granting prong for requiring notice and comment, arguing that "DACA changed the law by unilaterally providing a basis to grant lawful presence and work authorization." Dkt. 5 at 44. But Plaintiffs erroneously conflate two distinct issues: (1) whether DACA itself created a substantive right to deferred action, because, in practice, it left no discretion to adjudicators in individual cases (it did not); and (2) whether, after a DACA requestor has received a discretionary act of deferred action, she is then eligible to apply for work authorization and related social security benefits under independent, pre-existing regulations adopted *through notice-and-comment rulemaking*. As Defendant-Intervenors have noted, the programs in which DACA recipients can participate are provided to *all* recipients of deferred action. *See* Dkt. 224 at 34 n.21. The extension of those opportunities to recipients of deferred action was already subjected to notice-and-comment rulemaking. *Id.* (citing final rules). Because DACA leaves the ultimate grant of deferred action to the discretion of individual adjudicators, a recipient's eligibility for these benefits stems from that individual act of discretion, not issuance of the DACA Memo. Notably, Plaintiffs do not contend that every instance of deferred action for a particular individual requires notice-and-comment rulemaking by virtue of its interaction with independent substantive rules that permit that individual then to apply for work authorization.[2]

Because DACA permits individualized discretion whether to grant an applicant deferred action, DACA does not establish a substantive rule that required notice-and-comment rulemaking, and any benefits for which DACA recipients may be eligible are the product of that

---

[2] Plaintiffs explicitly do "not challenge the Executive's enforcement priorities" or "the Executive's 'discretion to abandon' the 'initiation or prosecution of various stages in the deportation process.'" Dkt. 218 at 53-54 (quoting *Reno*, 525 U.S. at 483). Indeed, Congress has provided DHS with only enough resources to remove a small percentage of the total removable population per year. *See Texas*, 809 F.3d at 188 & n.1 (King, J., dissenting).

act of discretion and independent rules previously subjected to notice and comment.

## II. That DACA Permits the Exercise of Discretion on an Individual Basis Is Also Relevant for Reviewability and Plaintiffs' *Substantive* APA Claim

If DACA is discretionary in practice, it would be no different than other exercises of enforcement discretion that are "presumed immune from judicial review under § 701(a)(2)." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). A finding that DACA is not subject to judicial review is consistent with *Trump v. Hawaii*, which underscored that courts should not "'probe and test the justifications' of immigration policies." 138 S. Ct. 2392, 2419 (2018).[3]

This finding would also vitiate Plaintiffs' *substantive* APA claims. If DACA's implementation permits discretion, then DACA is necessarily a lawful and appropriate exercise of the authority granted to the Secretary by Congress to "[e]stablish[] national immigration enforcement policies and priorities." 6 U.S.C. § 202(5). "A principal feature of the removal system" provided by Congress "is the broad discretion exercised by immigration officials" to determine "whether . . . to pursue removal at all" and whether to grant "discretionary relief allowing [non-citizens] to remain in the country[.]" *Arizona v. United States*, 567 U.S. 387, 396 (2012). Thus, DACA is just another example, among many, of the Executive lawfully exercising its delegated authority to determine "enforcement policies and priorities." 6 U.S.C. § 202(5).

---

[3] Contrary to Plaintiffs' arguments, *Trump* is not distinguishable on the ground that the Immigration and Nationality Act ("INA") conferred discretion on the President to exclude individuals. Dkt. 218 at 29. In *Trump*, as here, challengers asserted that the Executive's exercise of immigration-related discretion violated statutory limitations on that discretion. *Compare Trump*, 138 S. Ct. at 2406 ("Plaintiffs . . . argued that the Proclamation contravenes the provisions in the [INA]"), *with* Dkt. 218 at 29 ("Congress [in the INA] imposed detailed criteria to significantly restrict the Executive's ability to unilaterally allow aliens to be lawfully present in the country."). *Trump* rejected Plaintiffs' statutory arguments, stressing that "'the fact that [Congress] did not adopt [a] readily available and apparent alternative strongly supports' the conclusion" that the INA did "not limit the President's delegated authority," because Congress did not do so explicitly. *See* 138 S. Ct. at 2415 (quoting *Knight v. Comm'r*, 552 U.S. 181, 188 (2008)). Congress has not foreclosed the Executive from acting with respect to DACA recipients either. Its failure to adopt legislative proposals that, unlike DACA, create a path to citizenship does not limit the Executive's "exercise of that discretion," which is presumptively unreviewable. *Id.* at 2419.

-6-

Dated: August 13, 2018                                    Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Celina Moreno (Tex. Bar No. 24074754)
(SD of Tex. Bar No. 2867694)
Jack Salmon (Tex. Bar No. 24068914)
(SD of Texas Bar No. 1130532)
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
Ernest I. Herrera (Tex. Bar No. 24094718);
(SD of Tex. Bar No. 2462211)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org

Denise Hulett
Mexican American Legal Defense and
Educational Fund
1512 14th Street
Sacramento, CA 95814
Phone: (916) 444-3031
Email: dhulett@maldef.org
(Admitted pro hac vice)

Priscila Orta
Mexican American Legal Defense and
Educational Fund
11 East Adams, Suite 700
Chicago, IL 60603
Tel: (312) 427-0701
Email: porta@maldef.org
(Admitted pro hac vice)

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)

-7-

Douglas.Hallward-Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

## CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that, on the 13th day of August, 2018, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nina Perales*

Nina Perales