UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> Defendant-Intervenors. | Case No. 18-cv-00068 |

**FEDERAL DEFENDANTS' NOTICE OF FILING**

Federal Defendants inform the Court that yesterday, in *NAACP v. Trump*, No. 17-cv-1907-JDB (D.D.C.) and *Trustees of Princeton University v. United States*, No. 17-cv-2325-JDB (D.D.C.) at Dkt. No. 82, the defendants moved for a stay pending appeal of that court's order setting aside DACA's rescission. *See* Exhibit 1. Specifically, Federal Defendants moved the court to continue to stay its Orders in whole, or alternatively at least insofar as the court's Orders go beyond the preliminary injunctions in parallel litigation by requiring DHS to begin accepting both initial DACA requests from individuals who have never before been granted deferred action under DACA and also applications for DACA-based advance parole.

1

| | |
|---|---|
| Dated: August 15, 2018 | Respectfully submitted, |
| | CHAD A. READLER<br>Acting Assistant Attorney General<br>Civil Division<br>BRETT A. SHUMATE<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director, Office of Immigration Litigation<br>District Court Section |
| | /s/ *Jeffrey S. Robins*<br>JEFFREY S. ROBINS<br>Attorney-in-Charge<br>Assistant Director<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868, Washington, DC 20044<br>Telephone: (202) 616-1246<br>Facsimile: (202) 305-7000 |
| Attorneys for Federal Defendants | jeffrey.robins@usdoj.gov |

## CERTIFICATE OF SERVICE

I certify that on June 22, 2018, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jeffrey S. Robins*
JEFFREY S. ROBINS

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, *et al.*, <br><br> Defendants. | No. 17-cv-1907 (JDB) |
| THE TRUSTEES OF PRINCETON UNIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. | No. 17-cv-2325 (JDB) |

**DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

Defendants have appealed the Court's April 24, 2018 Order setting aside then-Acting Secretary of Homeland Security Elaine Duke's September 5, 2017 Memorandum ("Duke Memo") rescinding the Deferred Action for Childhood Arrivals ("DACA") policy, as well as the Court's August 3, 2018 Order declining to revise its vacatur order. Having already stayed these Orders twice, the Court should maintain the status quo during the pendency of Defendants' appeal by staying the Orders in whole, or alternatively at least insofar as the Court's Orders go beyond the preliminary injunctions in parallel litigation by requiring the Department of Homeland Security ("DHS") to begin accepting both initial DACA requests from individuals who have never before

been granted deferred action under DACA ("initial DACA requests") and also applications for DACA-based advance parole.

Defendants satisfy each of the factors for a stay pending appeal. First, Defendants present a substantial case on the merits that Acting Secretary Duke's discretionary enforcement decision to rescind DACA is neither judicially reviewable nor arbitrary and capricious, especially in light of Secretary Nielsen's concurrence with and elaboration upon that decision. Although this Court concluded otherwise, a Maryland court concluded that Acting Secretary Duke provided a reasoned explanation for DACA's rescission, and that decision is now on appeal in the Fourth Circuit. Parallel appeals are being considered by the Ninth and Second Circuits.

Second, Defendants will suffer irreparable injury absent a stay because the Court's Orders interfere with the Secretary's exercise of her authority to enforce the immigration laws, by requiring her to affirmatively permit the ongoing violation of federal law by hundreds of thousands of aliens without lawful status under an enforcement policy that is, at a minimum, legally questionable. Indeed, the Court's Orders require DHS to expand the current effect of that policy by expending considerable resources to adjudicate initial DACA requests and DACA-based advance parole applications—aspects of the DACA policy that were wound down by the Duke Memo and not enjoined by any other court. Those substantial efforts would be needless if the Court's Orders are overturned on appeal.

Third, these harms to Defendants far outweigh the nonexistent harm to Plaintiffs from a delay in more fully restoring the DACA policy pending appeal. Plaintiffs' alleged injuries are *already* remedied by preliminary injunctions in California and New York requiring Defendants to continue processing requests to renew DACA, but those courts concluded that a preliminary injunction requiring Defendants to adjudicate initial DACA requests and DACA-based advance

parole applications was not warranted. Nor would a full reinstatement of the DACA policy redress any cognizable injuries asserted by Plaintiffs in this case.

Fourth, the public's interest—which is served through careful and consistent enforcement of the Nation's immigration laws—tips decidedly in favor of a stay. The remedial section of this Court's April 24 Opinion itself acknowledged the disruptive effects on all parties of abrupt shifts in the enforcement of the immigration laws, and implementing the Court's Orders pending final resolution of this litigation would not further that interest.

If the Court denies this motion, Defendants respectfully request an administrative stay of the Orders while Defendants seek relief in the D.C. Circuit and, if necessary, the Supreme Court. In the alternative, Defendants request a limited stay of 30 days from the date of any ultimate order denying a stay so that DHS may appropriately prepare its operations for the orderly receipt and adjudication of initial DACA requests from individuals who have never before been granted deferred action under DACA and DACA-based advance parole applications, which DHS generally has not accepted since September 5, 2017.[1]

## ARGUMENT

**I.     THE COURT SHOULD CONTINUE TO STAY ITS ORDERS PENDING APPEAL.**

A stay pending appeal of the Court's April 24 and August 3 Orders is appropriate because Defendants can show (1) a "substantial case on the merits"; (2) a likelihood that they will be irreparably harmed absent a stay; (3) a diminished prospect that Plaintiffs will be substantially harmed if the Court grants a stay; and (4) a public interest in granting a stay. *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987); *see also United States v. Philip Morris, Inc.*, 314 F.3d 612, 617 (D.C.

---

[1] Defendants also respectfully request the Court's expeditious consideration of this motion and a continuation of the stay until such time as the motion is resolved.

Cir. 2003), *abrogated on other grounds by Mohawk, Inc. v. Carpenter*, 558 U.S. 100 (2009); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). In this Circuit, these factors are not prerequisites to be met, but considerations to be balanced. *See Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, No. 16-cv-01460, 2018 WL 3304627, at *3 (D.D.C. July 5, 2018) ("[T]he district judges in this Circuit continue to adhere to binding precedent and apply the sliding scale approach to determine whether a movant is entitled to an injunction pending resolution of its appeal." (citations omitted)).

"A stay may be granted with either a high probability of success and some injury, or vice versa." *Cuomo v. U. S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam), *as amended* (Sept. 20, 1985). Thus, where a party can show the possibility of irreparable injury in combination with "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation," a stay pending appeal is justified. *Holiday Tours*, 559 F.2d at 844 (quoting with approval *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)); *see also Ctr. for Int'l Envtl. Law v. OSTR*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (granting a stay pending appeal where case presented novel and "admittedly difficult legal question" of first impression (citation omitted)). Those factors weigh in favor of continuing the stay here.

    **A.**    **Defendants Present a Substantial Case on the Merits That DHS's Rescission of the DACA Policy Is Neither Judicially Reviewable Nor Arbitrary and Capricious.**

As confirmed by Secretary Nielsen's June 22, 2018 Memorandum ("Nielsen Memo"), the decision to rescind DACA rests not only on a conclusion that the policy is unlawful *per se*. It also rests on separate determinations that DACA's questionable legality and other enforcement-policy concerns warrant ending the policy as an independent matter of enforcement discretion. *See* Nielsen Memo at 2-3, ECF No. 71-1. The rescission is thus an enforcement decision that is

4

presumptively unreviewable under *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985), and in all events, is far from arbitrary and capricious.

Although the Court's Orders rejected these arguments, it need not agree with Defendants' position in order to conclude that a stay pending appeal is warranted here. *See Holiday Tours*, 559 F.2d at 843 (court "may grant a stay even though its own approach may be contrary to movant's view of the merits"); *id.* at 844 ("[p]rior recourse to the [district court] would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision."); *see also Cigar Ass'n of Am.*, 2018 WL 3304627, at *3. Here, where the case involves "serious" and "difficult" legal questions "warranting plenary review," Defendants satisfy the first prong of the four-part test because they have made a "substantial case on the merits." *Holiday Tours*, 559 F.2d at 844-45; *Cigar Ass'n of Am.*, 2018 WL 3304627, at *3.

Plaintiffs' challenge unquestionably presents "serious legal question[s]," *Holiday Tours*, 559 F.2d at 844, including as to the threshold matter whether the Secretary's discretionary enforcement decision to rescind DACA is even judicially reviewable. As this Court acknowledged, "immigration policies are generally so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *NAACP v. Trump*, 298 F. Supp. 3d 209, 233 (D.D.C. 2018) ("Op.") (citation omitted). Indeed, the concerns raised by challenges to the Executive's enforcement discretion "are greatly magnified in the deportation context," *i.e.*, in determining which removable individuals should nonetheless be permitted to remain in the country. *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 490 (1999); *see also Arizona v. United States*, 567 U.S. 387, 396–97 (2012). This is so because judicial supervision of immigration enforcement discretion would permit and prolong ongoing violations of the Immigration and Nationality Act ("INA") in a way that the Supreme

5

Court has disapproved. *AADC*, 525 U.S. at 490.

Defendants' appeal will present a substantial challenge to the Court's conclusion that *Crowley Caribbean Transport, Inc. v. Peña*, 37 F.3d 671 (D.C. Cir. 1994), recognizes an exception to *Chaney* allowing this Court to review DACA's rescission because it rests, in part, on a legal rationale. *See* Op. at 233. As explained in Defendants' prior briefing, *Crowley* addresses the separate issue of the potential reviewability of an enforcement decision's *supporting rationale* on its own terms, not the non-reviewability of an *enforcement decision* itself. And even if *Crowley* is nonetheless found to be on point here, as this Court ultimately concluded, Defendants' interpretation of *Crowley* "raise[s] a serious legal question." *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 79 (D.D.C. 2007). And indeed, the D.C. Circuit's decision in *Int'l Union, UAW of Am. v. Brock*, 783 F.2d 237 (D.C. Cir. 1986), demonstrates that the Court's decision is, at the very least, susceptible to serious debate. Regardless, Defendants demonstrated that, even assuming the correctness of the Court's reading of *Crowley*, DACA's rescission was not based solely on a legal conclusion but also on independent enforcement policy concerns, as further explained in the Nielsen Memo, which *Chaney* insulates from judicial review. *Cf. Chaney*, 470 U.S. at 824 (discussing agency's "conclu[sion] that FDA jurisdiction in the area was generally unclear").

Likewise, Defendants' appeal will mount a substantial and compelling challenge to the Court's determination that the rescission was arbitrary and capricious. DHS's decision to end a discretionary non-enforcement policy of at least questionable legality based on, for example, an independent judgment that it should not adopt a large-scale non-enforcement policy without legislative imprimatur (even if it *could* do so) is not irrational. *See* Nielsen Memo at 2-3. Indeed, in another legal challenge to the rescission of DACA filed in the District of Maryland, the court

6

agreed with Defendants that, "[r]egardless of the lawfulness of DACA," "DHS made a reasoned decision to rescind DACA based on the Administrative Record." *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, 284 F. Supp. 3d 758, 767-68 (D. Md. 2018), *appeal docketed* No. 18-1522 (4th Cir. May 8, 2018). The fact that district courts reviewing parallel suits have disagreed about whether the rescission of DACA withstands arbitrary-and-capricious review further demonstrates that the "serious" questions presented in this matter at least leave "fair ground for litigation." *Holiday Tours*, 559 F.2d at 844 (citation omitted).

"Fair ground for litigation," *id.*, likewise exists with respect to the Court's conclusion that "the Nielsen Memo offers no clue" as to how she would determine whether an enforcement policy is incompatible "'with the INA's comprehensive scheme.'" Mem. Op. (Aug. 3, 2018) at 21, ECF No. 78 (citation omitted). Respectfully, that objection is better directed to the Fifth Circuit, whose "rejection of [Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA")] and expanded DACA did not turn on whether the covered aliens had a pathway to lawful status (which not all of them had)." Nielsen Memo at 2. Instead, the Fifth Circuit pointed to particular statutory pathways to lawful presence for parents of U.S. citizens merely as *specific evidence* in support of its more *general conclusion* that the "sweeping" and "class-wide" nature of DAPA and expanded DACA—characteristics shared with DACA itself—unlawfully departed from "the INA's specific and intricate provisions" and "Congress's careful plan." *Texas v. United States*, 809 F.3d 134, 186 (5th Cir. 2015); *see* Mem. Op. (Aug. 3, 2018) at 21 n.12 (quoting holding from *Texas* emphasizing that DAPA (and expanded DACA) were incompatible with the INA "*especially where*" those policies conflicted with particular statutory text, *Texas*, 809 F.3d at 184 n.197). Any uncertainty as to whether there is a tenable distinction between DACA and DAPA (and expanded DACA) under the Fifth Circuit's reasoning only underscores why the Secretary's

7

legitimate doubts concerning DACA's legality are not arbitrary and capricious, and why this "serious" legal question warrants "more deliberative investigation," *Holiday Tours*, 559 F.2d at 844.

**B.      Denying A Stay Would Cause Defendants Irreparable Harm**

A stay is also necessary to prevent irreparable harm to Defendants from the full reinstatement of the DACA policy. The Court's Orders oblige DHS to reinstate a policy of non-enforcement that none of the Plaintiffs contend is required by law, that DHS itself has determined should be discontinued, and that both DHS and the Attorney General have determined is unlawful or, at a minimum, legally questionable. In doing so, the Orders prevent the Secretary from exercising her authority, conferred by Congress, to administer and enforce the INA, 8 U.S.C. § 1103(a)(1), and to establish "policies and priorities" for enforcement of the Nation's immigration laws, 6 U.S.C. § 202(5); *see also AADC*, 525 U.S. at 483-84. It was in the exercise of that congressionally-delegated authority that then-Acting Secretary Duke rescinded DACA and that Secretary Nielsen agreed with and declined to disturb that rescission. *See* Duke Memo at 4 (AR 255), ECF No. 60 ("In the exercise of my authority in establishing national immigration policies and priorities, . . . I hereby rescind the [DACA policy]."); *see also* Nielsen Memo at 3. Indeed, by reinstating DACA, the Orders go beyond simply impeding the Secretary's enforcement authority; they require DHS to act affirmatively—by adjudicating DACA requests—to permit the ongoing violation of federal law by hundreds of thousands of aliens without lawful status. When the Government is enjoined from implementing an act of Congress, it suffers irreparable injury. *Cf. Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

These harms are particularly acute with respect to the effect of the Court's decision to

vacate DACA's rescission. As this Court recognized, vacatur of the Duke Memo in its entirety "means, among other things, that the agency will be required to resume accepting initial DACA applications and applications for advanced parole." Op. at 246. Thus, not only do the Court's Orders require DHS to maintain an unlawful, or at least legally dubious, discretionary non-enforcement policy, but they also compel the agency to expand the effect of that policy beyond the current status quo. Not even the current preliminary injunctions entered against Defendants in parallel DACA-rescission cases in the Northern District of California and Eastern District of New York go so far. Although those injunctions require Defendants to maintain the DACA policy on the same pre-rescission terms and conditions for certain individuals—primarily DACA renewal requesters—who currently avail or previously availed themselves of the policy, they expressly do not require DHS to process first-time initial DACA requests and DACA-based advance parole applications. *See, e.g.*, *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018). The fact that the Orders will disrupt the current status quo by requiring the expansion of a non-enforcement policy of doubtful legality weighs strongly in favor of a stay pending appeal.

U.S. Citizenship and Immigration Services ("USCIS") estimates that if the Court's Orders go into effect, it could potentially receive approximately 127,000 initial DACA requests and approximately 33,000 DACA-based advance parole applications through Fiscal Year 2020. *See* Declaration of Tracy Renaud, Acting Deputy Director of USCIS ("Renaud Declaration") at ¶¶ 8, 9, 12 (attached hereto as Ex. 1). USCIS would need to expend substantial resources to properly accept and adjudicate these requests and applications, including hiring 72 temporary staff enabling USCIS's Designated Financial Agent to handle initial processing and the assigning of at least 60 additional full-time employees (either reassigned from their current responsibilities or newly hired)

9

to adjudicate initial DACA requests and related applications. *Id.* ¶¶ 10, 20. The potential volume of these filings and the competing demands on USCIS's resources could not only lead to an immediate backlog in adjudicating DACA requests, but also could negatively affect USCIS's ability to effectively adjudicate the numerous non-DACA-related applications and petitions it receives, as USCIS may need to divert staff and other resources to handle the anticipated influx of initial DACA requests. *See id.* ¶¶ 9, 11; *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 57 (D.D.C. 2009) (finding that diversion of at least some of the military's resources from its core mission to comply with a court order was "harm . . . sufficient to weigh in favor of a stay" pending appeal). The substantial burdens that would be imposed on DHS if it must resume accepting initial DACA requests and DACA-based advance parole applications should not, in fairness, be incurred during the pendency of appeal, especially when balanced against the other factors.

C.  **Plaintiffs Will Not Be Substantially Harmed**

The potential harm of a stay to Plaintiffs, if any, would be very small and would not outweigh the clear and imminent harm to Defendants. The preliminary injunctions entered in other DACA-rescission cases redress the harms alleged by Plaintiffs and the DACA recipients they represent in these cases.[2] Conversely, Plaintiffs do not purport to include or represent individuals who may qualify for DACA but who have never before been granted deferred action under DACA, and such individuals could have no reliance interest in the continuation of DACA in any event.

---

[2] Because the preliminary injunctions in the Northern District of California and the Eastern District of New York are co-extensive, Plaintiffs benefit from their protections so long as one or the other injunction remains in effect. Although Defendants are appealing both injunctions, neither Court of Appeals has yet issued a decision. The appeal pending in the Ninth Circuit is fully briefed, argued, and awaiting decision. *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 18-15068 (9th Cir. 2018). The appeal pending in the Second Circuit is also fully briefed, but the court consolidated that appeal with the appeal of other interlocutory orders certified under 28 U.S.C. § 1292(b), which will not be fully briefed until October. *Vidal v. Nielsen*, No. 18-485 (2d Cir. 2018).

10

Nor did the Court find that Plaintiffs had demonstrated a cognizable injury resulting from the Duke Memo's suspension of DACA-based advance parole. Thus, staying the restoration of these aspects of the DACA policy—which do not redress Plaintiffs' own alleged injuries—cannot constitute substantial harm. *Cf. Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) ("The remedy" sought thus must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

In any event, at bottom, Plaintiffs seek to allow hundreds of thousands of aliens without lawful status to persist indefinitely in an ongoing violation of federal law pursuant to a discretionary non-enforcement policy that is, at a minimum, legally questionable and that no one argues is required by law. The DACA policy was intended from the start to be "temporary," The White House, *Remarks by President Obama on Immigration* (June 15, 2012), https://go.usa.gov/xnZFY; expressly "confer[red] no substantive right, immigration status or pathway to citizenship," DACA Memo at 3 (AR 3); and individual DACA grants could always be terminated at any time in DHS's discretion, DHS DACA FAQ 1, https://www.uscis.gov/archive/frequently-asked-questions. In contrast to the Orders' immediate interference with the Executive's enforcement of federal immigration laws, any delay in restoring such a policy would not constitute a substantial injury to Plaintiffs, *see Philip Morris*, 314 F.3d at 622, that weighs meaningfully against a stay.

### D. The Public's Interest Is Well-Served By Continuing The Stay

The public's interest would also be served by continuing the current stay of the Court's Orders. It is DHS's considered judgment that rescinding DACA best achieves the agency's immigration enforcement policies and priorities. By preventing the Secretary from implementing her considered policy judgment, the Court's Orders not only harm Defendants but also the public at large. *See Nken v. Holder*, 556 U.S. 418, 435-36 (2009) (recognizing the public interest and

11

interest of the federal government may merge). Indeed, the Supreme Court and D.C. Circuit have "recognized that the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (listing Supreme Court cases).

Moreover, in its April 24 Opinion, the Court itself recognized the disruption that would likely result if DHS were to resume implementing the DACA policy in its entirety. *Cf.* Op. at 245-46 (holding that risk of disruption from vacating DACA's rescission weighed in favor of remand without vacatur). Although two courts have already preliminarily enjoined parts of DACA's rescission, unlike this Court's Orders, those injunctions do not apply to initial DACA requests, which DHS accordingly stopped accepting more than 11 months ago pursuant to the Duke Memo. Allowing the vacatur to take effect now—and thereby requiring DHS to accept, process, and grant initial applications after that long gap—would thus constitute an immediate and significant change in DHS's enforcement of the immigration law that may itself be altered again if the D.C. Circuit ultimately reverses this Court's decision in whole or in part, all to the detriment of the public's interest. *Cf. id.* at 245 (holding that vacating DACA's rescission would result in an "interim change" if DHS later provided a sufficient explanation for its decision). As it did before, the Court should continue to avoid the disruptive effects of its decision by staying the Orders.

Accordingly, while Defendants' appeal is pending, this Court should stay its Orders in whole, or at a minimum insofar as they require DHS to begin accepting initial DACA requests and DACA-based advance parole applications. At the very least, it should grant an administrative stay so Defendants can seek relief from higher courts if necessary.

## II. IN THE ALTERNATIVE, DHS REQUIRES A PERIOD OF 30-DAYS TO OPERATIONALLY PREPARE FOR COMPLIANCE.

In the event that the Court declines to stay its Orders pending appeal in whole or in part,

12

the Court should at least continue to stay its Orders for a period of 30 days from the date of any ultimate order denying a stay to allow DHS time to appropriately prepare its operations for the orderly receipt and adjudication of initial DACA requests and DACA-based advance parole applications. DHS has generally not accepted these categories of requests since September 5, 2017.

As explained in the Renaud Declaration, if the Court lifts the stay of its vacatur decision, USCIS must make certain operational changes before it can begin properly accepting and processing initial DACA requests and DACA-based advance parole applications. First, USCIS must modify the IT systems it would use to accept and conduct intake processing of these filings at one of its three Lockbox facilities. Renaud Decl. ¶¶ 17, 18. "USCIS Lockbox facilities are highly automated environments with minimal intervention by Lockbox clerks or USCIS personnel." *Id.* ¶ 15. The personnel who operate the Lockboxes use a "proprietary business rules engine" to assess whether forms submitted to USCIS, like initial DACA requests, should be accepted (and thus forwarded to a USCIS facility for further processing) or rejected (and thus returned to the requester). *Id.* ¶ 16. Currently, the business rules are defined to reject initial DACA requests and DACA-based advance parole applications and to automatically issue rejection notices to the initial DACA requesters. *Id.* ¶¶ 16, 17. Accordingly, USCIS must update the business rules in the proprietary IT systems to be able to accept such filings, a process that typically takes 14 calendar days to fully complete. *Id.* ¶ 18. USCIS must also make certain changes to its case management system, which among other functions, is utilized by USCIS when both initial DACA requests and DACA-based advance parole applications transition from intake processing at the Lockbox facilities to the USCIS Service Centers for further adjudication. *Id.* ¶ 19. Specifically, in order to ensure compliance with the vacatur order, USCIS must modify the automated rules that

13

were originally implemented in the system to ensure compliance with the parameters of the Duke Memo. USCIS anticipates that the modifications to the case management system could be accomplished within the 14 day timeframe needed to update the IT systems used at the Lockbox facilities. *Id.*

Second, in anticipation of the potentially significant increase in initial DACA requests and DACA-based advance parole applications, USCIS projects that it will need to hire and train approximately 72 temporary staff to conduct initial processing—*e.g.*, opening incoming mail, assembling paper files, scanning the paper files into the automated workflow, and shipping accepted and rejected files. *Id.* ¶ 20. The staffing process typically takes approximately four to six weeks to complete. *Id.*

If USCIS were required to start accepting initial DACA requests and DACA-based advance parole applications sooner than the 30-day period USCIS requests, USCIS may suffer two immediate and harmful challenges. *Id.* ¶ 22. First, USCIS may accumulate a "front-log" at the Lockbox facilities, meaning mail is arriving to the Lockbox faster than the clerks can process it into the automated workflow. *Id.* ¶ 23. A front-log may result in slower processing times for *all* form types arriving at the Lockbox, not just initial DACA requests and DACA-based advance parole applications. *Id.* This could include, for example, applications to replace permanent resident cards and applications for naturalization, *id.*, both of which fall under USCIS's jurisdiction to adjudicate by regulation or statute, *id.* Second, because space at Lockbox facilities is very limited, if USCIS were not immediately able to process initial DACA requests and DACA-based advance parole applications, it may need to contract for and provide security at alternative storage facilities until the necessary IT systems' changes and staffing are in place. *Id.* ¶ 24. Physical

14

storage of these paper filings, and in particular the filing fees submitted therewith, also creates a concern from a cash management and internal control perspective. *Id.*

## CONCLUSION

For the foregoing reasons, the Court should continue to stay pending appeal its April 24 and August 3 Orders in whole, or at least insofar as the Court's Orders require DHS to begin accepting initial DACA requests from individuals who have never before been granted deferred action under DACA and DACA-based advance parole applications. Should that request be denied, the Court should issue an administrative stay to allow Defendants to seek relief in the D.C. Circuit and, if necessary, the Supreme Court. In the alternative, the Court should stay its Orders for 30 days from the date of any ultimate order denying a stay so that DHS can operationally prepare to comply with the Court's Orders.[3]

Dated: August 14, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director

JOHN R. TYLER
Assistant Branch Director

/s/ *Kathryn C. Davis*
KATHRYN C. DAVIS (DC Bar No. 985055)
STEPHEN M. PEZZI (DC Bar No. 995500)

---

[3] Counsel for Defendants conferred with counsel for Plaintiffs who indicated that Plaintiffs oppose Defendants' primary request for a stay of the Orders in their entirety. With respect to Defendants' alternative requests for relief, however, including (1) a partial stay of the Orders insofar as they apply to initial DACA requests from first-time requesters and DACA-based advance parole and/or (2) a continuance of the stay for a period of 30 days to allow DHS to operationally prepare for compliance, Plaintiffs take no position at this time and will await review of Defendants' filing.

15

RACHAEL WESTMORELAND
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 616-8298
Fax: (202) 616-8470
Email: Kathryn.C.Davis@usdoj.gov

*Counsel for Defendants*