5056 Meadowcreek Dr.
Dunwoody GA 30338
September 13, 2018

Honorable Judge Andrew S. Hanen
United States District Clerk's Office
United States Courthouse
515 Rusk Street, Room 8613
Houston, TX 77002

1:18-CV-68

United States Courts
Southern District of Texas
FILED
SEP 18 2018
David J. Bradley, Clerk of Court

Honorable Judge Andrew Hanen:

I emailed George Will's Colum (Attached) concerning *Wickard v. Filburn*, 317 U.S. 111 (1942) to State Legislators in 41 states and nine Supreme Court Justices (Via USPS). Following are four of a significant number of affirmative responses that I received:

Guth, Dennis [LEGIS]<Dennis.Guth@legis.iowa.gov>     Sat, Jun 10, 2017 at 1:04 PM

To: Paul Stuber <xystub@gmail.com>

Good article Paul! Makes me more resolute to curb the power of the courts.

Dennis Guth


Nemes, Jason (State Rep.) (LRC)<Jason.Nemes@lrc.ky.gov>     Tue, Jun 6, 2017 at 10:07 PM

To: Paul Stuber <xystub@gmail.com>

Paul,

Thank you for sharing this with me. I had not seen it and enjoyed reading it.

I have long felt that the commerce clause jurisprudence of the Supreme Court over the past 70 years is crazy and must be pulled back in. I hope the current Court takes this opportunity to do just that.

Jason


Robert Spendlove<rspendlove@le.utah.gov>     Mon, Jun 5, 2017 at 11:16 PM

To: Paul Stuber <xystub@gmail.com>

Thanks Paul.

The Supreme Court has been over-extending its reach through its interpretation of the Commerce Clause for too long. Hopefully, we will be able to get more justices on the Court who accurately interpret the clause and cease to expand it beyond its intended purpose.

Best,

Robert

Casey Murdock<Casey.Murdock@okhouse.gov>Mon, Jun 12, 2017 at 9:39 AM

To: Paul Stuber <xystub@gmail.com

Paul,

Thank you for the email. This is scary and the main reason I ran for office. We have to stop this kind of government overreach.

Rep. Casey Murdock

Oklahoma State House District 61

Now fast forward and we a Federal Honorable Judge stating once Executive Order has been issued, it cannot be rescinded by a future President. One does not need to be a lawyer to know this is totally and unequitable an unconstitutional ruling.

Texas Attorney General Ken Paxton in an interview with "Newsmax Now" on May 3 stated, "This was an executive order by President Obama – if you can issue an executive order, I would think, by definition, you can rescind an executive order," Paxton said. "It's happened probably thousands of times in our history.

"For a federal Honorable Judge , or more than one federal Honorable Judge , to step in and say, 'hey, we're taking over this little executive order thing, we're gonna say you can't rescind,' to me it seems ludicrous and certainly outside of the powers granted on these Honorable Judges by the Constitution."

Federal Judges cannot change the US Constriction, they can only make unconstitutional actions legal or constitutional actions illegal. This is becoming an everyday occurrence and is fast destroying the America that I knew. Unless these unconstitutional actions by Federal Honorable Judges are reversed, my four grandchildren will never know the America that I knew.

You have a choice to make:

1.      Continue to make constitutional actions illegal

2       Make unconstitutional actions legal

3       Or, Help restore to the Constitution so that the following generations will know the great America I knew.

I realize the above are my opinions. But, I believe the evidence support my opinions.

*Paul Stuber*

Paul Stuber

Retired Professional Engineer

See Back for Copies to:

Chief Honorable Judge Lee H. Rosenthal
Honorable Judge Micaela Alvarez
Honorable Judge Nancy F. Atlas
Honorable Judge Alfred H. Bennett
Honorable Judge Randy Crane
Honorable Judge Keith P. Ellison
Honorable Judge Marina Garcia Marmolejo
Honorable Judge Vanessa Gilmore
Honorable Judge George C. Hanks, Jr.
Honorable Judge Melinda Harmon
Honorable Judge Ricardo H. Hinojosa
Honorable Judge David Hittner
Honorable Judge Kenneth M. Hoyt
Honorable Judge Lynn N. Hughes
Honorable Judge Janis Graham Jack
Honorable Judge Sim Lake
Honorable Judge Gray H. Miller
Honorable Judge Rolando Olvera
Honorable Judge John D. Rainey
Honorable Judge Nelva Gonzales Ramos
Honorable Judge Fernando Rodriguez, Jr.
Honorable Judge Diana Saldaña
Honorable Judge Hilda G. Tagle
Honorable Judge Ewing Werlein, Jr.

**Magistrate Honorable Judges**

Honorable Judge Juan F. Alanis
Honorable Judge Peter Bray
Honorable Judge Christina Bryan
Honorable Judge Andrew M. Edison
Honorable Judge B. Janice Ellington
Honorable Judge J. Scott Hacker
Honorable Judge Nancy K. Johnson
Honorable Judge Jason B. Libby
Honorable Judge John A. Kazen Honorable Judge Jason B. Libby
Honorable Judge Ronald G. Morgan
Honorable Judge Peter E. Ormsby
Honorable Judge Dena Hanovice Palermo
Honorable Judge Frances H. Stacy
Honorable Judge Diana Song Quiroga
Honorable Judge Ignacio Torteya, III

Senator or Representative <Name>:

Federal Power Creeps Its Way Toward Controlling ... Spiders?

By George Will

A blind spider creeping through America's judicial thicket might be heading to the Supreme Court, which will have to decide if the contentment or even the survival of the Bone Cave Harvestman spider species, which lives only in two central Texas counties, is any of the federal government's business. If it is, what isn't?

The U.S. Fish and Wildlife Service (USFWS), which administers the Endangered Species Act, is blind to the limits of its imperium, which it thinks encompasses telling John Yearwood what he can and cannot do on the ranch that has been in his family since 1871. To stymie the USFWS, Yearwood must surmount, among other things, a precedent involving Roscoe Filburn, the Ohio farmer whose 1942 loss in the Supreme Court mocked the doctrine that the federal government is one of limited, because enumerated, powers.

Filburn was minding what he thought was his business when Washington taught him that the Constitution's Commerce Clause ("Congress shall have power to ... regulate commerce ... among the several states") means that almost everything is the federal government's business. To stabilize prices, the government set production quotas not only for wheat sold into interstate commerce but for wheat consumed on the farm for animal feed. Filburn expressed his dissent by producing 269 bushels in excess of his quota and refusing to pay the fine.

His insubordination reached the Supreme Court, which by then was thoroughly deferential to the New Deal's capacious theory of federal power. The court held that Congress could regulate even Filburn's wheat that never reached interstate commerce, because that wheat "supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market. Home-grown wheat in this sense competes with wheat in commerce."

Seventy-five years on, some recent decisions have brought Commerce Clause jurisprudence closer to the Framers' intention as presented by Chief Justice John Marshall in McCulloch v. Maryland (1819).

The clause requires a "plain" connection, not merely attenuated chains of inferences, between a congressional act and an enumerated power. Furthermore, recent decisions require not only that a federal statute pertain to "activities having a substantial relation to interstate commerce," but also that the statute pass muster under the Necessary and Proper Clause: Congress may "make all laws ... necessary and proper" to executing enumerated powers.

A statute, Justice Clarence Thomas has said, must be "appropriate," bearing an "obvious, simple, and direct relation" to an enumerated power.

1

A lower court has sided with the USFWS against Yearwood, dogmatically postulating that all species are "interdependent." Therefore even the tiniest bit of the ecosystem is presumptively implicated in potentially substantial effects on interstate commerce.

So, Yearwood, who hitherto made his property available cost-free to 4-H, church and military groups for camping, horseback riding and other activities, has stopped this, and even ceased clearing brush to reduce the risk of snakes and fires, lest he be subject to federal prosecution for disturbing, harming or endangering the spiders. Indeed, such is the federal government's unsleeping solicitude for the spiders, it says they must be protected from other bugs, such as fire ants. Reverence for nature evidently requires preventing natural competitions.

Alex Kozinski of the U.S. Court of Appeals for the 9th Circuit has written that modern Commerce Clause decisions make one wonder why it is not called the "Hey, you-can-do-whatever-you-feel-like Clause." So far, the spider story -- the application of the Endangered Species Act to an entirely intrastate species that is neither bought nor sold nor traded in interstate commerce -- demonstrates that federal power, like kudzu, will expand everywhere and into everything until it is stopped.

The Supreme Court can stop it if the spider case gets there. The court can apply its 2005 ruling that congressional regulation of intrastate, noncommercial activity is proper only when the activity is an "essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated."

Furthermore, in 2012, while Chief Justice John Roberts was irritating conservatives as he saved the Affordable Care Act by creatively construing some of its provisions, he simultaneously held that even a necessary exercise of power under the Commerce Clause is not proper if it "would work a substantial expansion of federal authority."

The blind spider might make other courts, and the rest of the government, see the Supreme Court's 1995 ruling that the government may not "convert congressional Commerce Clause authority to a general police power of the sort held only by the states." George Will, May 23, 2017.

Very informative

Paul Stuber

2