**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS, *et al*., | |
| Plaintiffs, | |
| v. | Case No. 18-cv-00068 |
| UNITED STATES OF AMERICA, *et al*., | |
| Defendants, | |
| KARLA PEREZ, *et al*., | |
| Defendant-Intervenors, | |
| and | |
| STATE OF NEW JERSEY, | |
| Defendant-Intervenor. | |

## <u>APPENDIX</u>

Pursuant to this Court's Civil Procedures, Rule 7, Federal Defendants hereby provide the

Court with the following table of contents and copies of the authorities cited in its Response in

Opposition to Defendant-Intervenor New Jersey's Motion to Strike:

| Ex. | Citation | Page |
|---|---|---|
| 1. | *Bradford v. HSBC Mortg. Corp.*, No. 1:09CV1226, 2011 WL 9933767 (E.D. Va. Jan. 21, 2011). | FDAPP001 |
| 2. | *Khepera-Bey v. Santander Consumer USA, Inc.*, No. CIV. WDQ-11-1269, 2012 WL 1965444 (D. Md. May 30, 2012). | FDAPP003 |
| 3. | *Landmark Graphics Corp. v. Seismic Micro Tech., Inc.*, Nos. CIVA H-05-2618, CIVA H-06-1790, Dkt. 114 at 3 (S.D. Tex. Jan. 22, 2007). | FDAPP017 |
| 4. | *Norton–Griffiths v. Wells Fargo Home Mortg.*, No.10-CV-169, 2011 WL 884456 (D. Vt. 2011). | FDAPP020 |
| 5. | *Walker v. Walker*, No. 11-CV-2967, 2011 WL 3757314 (N.D. Ill. Aug. 25, 2011). | FDAPP025 |
| 6. | *Walker-Cook v. Integrated Health Res., LLC*, No. 12-CV-146, 2012 WL 4461159 (D. Haw. Aug. 10, 2012). | FDAPP027 |

| 7. | *Washington v. McCoy*, 12-CV-628, 2013 WL 6504685 (S.D. Ohio Dec. 11, 2013). | FDAPP032 |
| 8. | *Wattie-Bey v. Stephens & Michaels Assocs.*, No. 13-CV-396, 2013 WL 2302117 (M.D. Pa. May 24, 2013). | FDAPP036 |

Dated: November 13, 2018

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

Attorneys for Federal Defendants

Respectfully submitted,

*/s/ Jeffrey S. Robins*
JEFFREY S. ROBINS
Attorney-in-Charge
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington, DC 20044
Telephone: (202) 616-1246
Facsimile: (202) 305-7000
jeffrey.robins@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2018, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Jeffrey S. Robins
JEFFREY S. ROBINS
Attorney-in-Charge
Assistant Director

Attorneys for Federal Defendants

Bradford v. HSBC Mortg. Corp., Not Reported in F.Supp.2d (2011)

Case 1:18-cv-00068 Document 336-1 Filed on 11/13/18 in TXSD Page 4 of 40

2011 WL 9933767

2011 WL 9933767
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Norman BRADFORD, Plaintiff,

v.

HSBC MORTGAGE
CORPORATION, et. al., Defendants.

No. 1:09cv1226.
|
Jan. 21, 2011.

**Attorneys and Law Firms**

Gregory Nicholas Bryl, Law Office of Gregory Nicholas Bryl, Washington, DC, for Plaintiff.

Abby Kelley Moynihan, Antoinette Nichole Moore, McCabe Weisberg & Conway LLC, Laurel, MD, for Defendants.

### *ORDER*

T.S. ELLIS, III, District Judge.

**\*1** The matter is before the Court on plaintiff's *pro se* motions to strike the answers and affirmative defenses, or in the alternative, for judgment on the pleadings, against defendants HSBC Mortgage Corp. ("WSBC"), Professional Foreclosure Corp. ("PFC"), and Mortgage Electronic Registration Systems, Inc. ("MERS"). Each of the defendants filed separate answers and affirmative defenses in this matter in response to plaintiff's verified amended complaint. Plaintiff essentially argues that all of these pleadings are deficient, and therefore should be stricken or entitle plaintiff to judgment on the pleadings, because:

(i) The answers deny allegations that are, in plaintiff's view, beyond dispute;

(ii) The answers fail to deny, and therefore admit, numerous allegations insofar as the responses take any of the following forms: (a) "[defendant] lacks sufficient information to admit or deny the allegations," (b) "[plaintiff's allegations] constitute a legal conclusion, and no response is required," and

(c) plaintiff's allegations refer to a document that "speaks for itself."

(iii) The affirmative defenses [1] are stated only in a boilerplate form that fails to put plaintiff on sufficient notice of the nature of the defenses being asserted; and

[1]    Defendants assert as affirmative defenses, *inter alia,* (i) failure to state a claim, (ii) statute of limitations, (iii) laches, (iv) waiver, (v) estoppel, (vi) failure to mitigate damages, and (vii) unclean hands.

(iv) Defendants' answers otherwise fall short of the requirements of Rules 8 and 11, Fed.R.Civ.P.

Plaintiff's arguments are meritless. Rule 8, Fed.R.Civ.P., makes clear that a party may respond to allegation in one of any number forms depending on the circumstances, subject to the other civil procedure rules. In particular, Rule 8(b)(3) provides that

> A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

As for denials in part, Rule 8(b)(4) specifically allows such denials so long as the party "intends in good faith to deny only part of an allegation," "admit[s] the part that is true[,] and den[ies] the rest." Furthermore, Rule 8(b)(5) allows a party "that lacks knowledge or information sufficient to form a belief about the truth of an allegation" to state as much in the answer, which serves as a denial. Finally, Rule 8(b)(6) indicates that where a "responsive pleading is not required, an allegation is considered denied or avoided."

As these provisions make clear, all of defendants' responses are within the contemplation of Rule 8, Fed.R.Civ.P. Indeed, not only do defendants respond to each allegation—specifically admitting, denying, or stating a basis for failing to admit or to deny each allegation—but each defendant's answer also includes a general denial stating that, to the extent that any allegations are not specifically admitted, they are denied.

2011 WL 9933767

Nothing in the form of these responses violates the Federal Rules of Civil Procedure. And, because defendants have effectively denied the central allegations in plaintiffs complaint, it is clear that plaintiff is not entitled to judgment on the pleadings. *See* Rule 12(c), Fed.R.Civ.P.

**\*2** Plaintiff also suggests the pleadings fall short of Rule 11, but this argument too is meritless. Rule 11 states that an attorney's signature on a pleading signifies the attorney's certification that the pleading meets certain standards of fairness and nonfrivolousness "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Rule 11, Fed.R.Civ.P. Relevant here are two particular representations indicated in Rule 11. First, the attorney's signature certifies that the "defenses[ ] and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* Second, the attorney's signature indicates that "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." *Id.*

Nothing in defendants' answers or affirmative defenses provides a basis to challenge the pleadings under Rule 11. Plaintiff challenges defendant's denials as controverted by the evidence, but as defendants correctly note, the proper time to attack defendant's argument is the summary judgment stage. *See* Rule 56, Fed.R.Civ.P. Plaintiff apparently seeks to learn more about the asserted defenses, but a minimal recital of affirmative defenses is well within the contemplation of the Federal Rules of Civil Procedure. Ultimately, discovery is the appropriate means of probing defendants' denials and defenses.

Accordingly, and for good cause,

It is hereby **ORDERED** that plaintiff's *pro se* motions (Doc. Nos. 61, 62, 63, 64, and 65) are **DENIED.**

The Clerk is directed to send a copy of this Order to all counsel of record.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 9933767

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1965444
Only the Westlaw citation is currently available.
United States District court, D.
Maryland, Northern Division.

Kalliaten Sekhneb KHEPERA–BEY,
formerly known as Khaval Stewart Plaintiff,

v.

SANTANDER CONSUMER
USA, INC., et al., Defendants.

Civil No. WDQ–11–1269.
|
May 30, 2012.

**Attorneys and Law Firms**

Khaval Stewart, Baltimore, MD, pro se.

Jennifer Ann DeRose, Kimberly A. Manuelides, Baltimore, MD, Leslie Paul Machado, LeClair Ryan PC, Washington, DC, Megan S. Benary, LeClair Ryan PC, Alexandria, VA, for Defendants.

MEMORANDUM OPINION

WILLIAM D. QUARLES, JR., District Judge.

*1 KalliAten SekhNeb Khepera–Bey ("Khepera–Bey")[1] sued Santander Consumer USA, Inc. ("Santander") and Renaissance Recovery Solutions, LLC ("Renaissance") for violating the Fair Debt Collection Practices Act[2] ("FDCPA"), and other claims. For the following reasons, Khepera–Bey's motion for leave to file his second amended complaint will be granted in part and denied in part, and his 15 other pending motions[3] will be denied. Renaissance's motion to dismiss will be granted in part.

[1] When he filed his first complaint in this Court, Khepera–Bey was named Khaval Stewart. Khepera–Bey has since notified the Court that on November 16, 2011, he changed his name to Khepera–Bey to reflect his religious beliefs. ECF Nos. 45, 57. The Court will refer to him as "Khepera–Bey."

[2] 15 U.S.C. §§ 1692a, et seq. (2006).

[3] The motions ask the Court to: vacate the Court's order dismissing the original complaint (ECF No. 33), vacate Santander's motion to dismiss the original complaint (ECF No. 36), "evidence" the defendants' fraud or liability (ECF Nos. 37, 38, 39, 61), order a more definite statement (ECF No. 41), order discovery and sanctions for failing to provide discovery (ECF No. 42), clarify the complaint (ECF No. 55), support his motion to vacate the Court's order (ECF No. 56), grant default judgment against the defendants (ECF Nos. 59, 60, 65, 67), and "transfer [his] case to [the Court's] De Jure venue of Law" and adjudicate the action "in accord with the Moor Sundry Act of 1790," (ECF No. 68). The Moors Sundry Act of 1790 was passed by the South Carolina legislature and granted special status to the subjects of the Sultan of Morocco. It recognized Moors as "white" people with jury duty as a privilege. Moors were not to be subjected to The Negro Act governing blacks and slaves. Moors Sundry Act of 1790, *available at* http://en.wikipedia.org/wiki/Moors_Sundry_Act_of_1790, accessed Mar. 23, 2012.

I. Background[4]

[4] For the motion to dismiss, the well-pled allegations in Khepera–Bey's complaint are accepted as true. *See Brockington v. Boykins,* 637 F.3d 503, 505 (4th Cir.2011).

On August 10, 2006, Khepera–Bey bought a 2003 Nissan Pathfinder from Lanham Ford[5] under a retail installment contract ("RIC"), which was assigned to DC Financial Services of America. ECF No. 4–2. The Certificate of Title listed Khaval Stewart, Khepera–Bey's former name, as the registered owner, and "DC Fin. Svcs. Amer. LLC" as the secured party. ECF No. 31 Ex. X1 at 6.

[5] Lanham is in Prince George's County.

Khepera–Bey received a copy of the RIC when he bought the car; it stated that the buyer had received "a true and completely filled in copy of this Retail Installment Contract." ECF No. 37–1 at 12.[6] The seller's signature block of the RIC looks like this:

[6] Khepera–Bey references his copy of the RIC in the Amended Complaint as Exhibit N, but it is attached to a later filing. *See* ECF No. 31 at 17; ECF No. 37–1 at 11–12. On the exihibit, Khepera–Bey wrote that he

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1965444

received the copy from the dealer in April 2011. ECF No. 37–1 at 11–12.

| | |
|---|---|
| X_____ | |
| *Seller Signs* | *By* |
| | _____ |
| | *Title* |

A signature appeared on the *"By"* line, and "Sales Mgr." is faintly apparent on the *"Title"* line on the copy Khepera–Bey received when he bought the car. "Seller Signs" was blank. *Id.* The RIC stated that if Khepera–Bey defaulted the financer could, "without the use of force or other breach of the peace ... enter the premises where the vehicle may be and lawfully repossess (take back) the vehicle." ECF No. 1 Ex. M.

Khepera–Bey made monthly payments to CitiFinancial Auto [7] until late 2010. On August 12, 2010, CitiFinancial sent Khepera–Bey a notice that his "account [was] past due." ECF No. 1 Ex. 3. It noted that CitiFinancial had "attempted to call [him] several times" to collect $390.32 in overdue payments. *Id.* On August 21, 2010, CitiFinancial sent another letter, stating that Khepera–Bey's account was in default. ECF No. 35 Ex. X–33.

---

[7]    CitiFinancial Auto bought the RIC from Chrysler. ECF No. 35 Ex. 4A.

After September 6, 2010, Santander notified Khepera–Bey that it had acquired the RIC. ECF No. 1 lns. 43–44 [8]; ECF No. 4 at 2. On September 25, 2010, Santander called Khepera–Bey at 7:35 AM to collect a payment. ECF No. 1 lns. 78–79. On October 2, 2010, Khepera–Bey sent Santander a letter asking Santander to verify his debt. ECF No. 31 at 9; ECF No. 1 Ex. C. Santander responded with an affidavit listing companies whose debt Santander services, including CifiFinancial Auto Credit Corp, CitiFinancial Auto Corporation, and DaimlerChrysler Services North America LLC, and continued to send Khepera–Bey a monthly bill. *Id.* at lns. 82–86; ECF No. 1 Ex. Y.

---

[8]    Although the Court dismissed Khepera–Bey's original complaint, he continues to refer to portions of it, including most of the facts supporting his claims, in his amended complaints.

After October 4, 2010, Santander sent Khepera–Bey a bill that included an "account summary" and "account status." ECF No. 1 Ex D. As of October 4, 2010, Khepera–Bey's account was 39 days delinquent, and he had not made payments due on August 25, 2010 or September

25, 2010. *Id.* at 1. Khepera–Bey made no payments to Santander until October 10, 2010, when he paid $405.27, one monthly installment. ECF No. 1 at lns. 101–03; ECF No. 4 at 5.

**\*2** Khepera–Bey sent cease and desist letters to Santander on October 27, 2010, ECF No. 1 lns. 144–45, and November 26, 2010, ECF No. 4–1 at 6; ECF No. 1 ln. 167. Santander acknowledged receiving the second letter and promised not to call Khepera–Bey again. ECF No. 1, Ex. J.

On November 15, 2010, Santander sent Khepera–Bey a letter telling him that it intended to repossess his car because Khepera–Bey had missed the September 25 and October 25 payments, and Santander had not received Khepera–Bey's November 25, 2010 payment. ECF No. 1 Ex. G.

Before December 2, 2010, Khepera–Bey filed a complaint with the Maryland Department of Labor, Licensing and Regulation ("DLLR") about Santander's collection practices. ECF No. 1 Ex. K. DLLR asked Santander to provide documentation of the debt. *Id.* Ex. M. On December 20, 2011, Santander provided a copy of the RIC to the DLLR to verify the debt. ECF No. 35–1 at 26–27; ECF No. 1 Ex. M. "Lanham Ford" was written on the "Seller Signs" line. ECF No. 1 Ex. M. DLLR forwarded the copy to Khepera–Bey. *Id.*

On January 7, 2011, at 11:30 PM, Renaissance repossessed Khepera–Bey's car for Santander. *Id.* at lns. 354–60. Khepera–Bey told Renaissance's employee that the debt was disputed. *Id.* at ln. 361. The employee continued the repossession with the permission of police officers Khepera–Bey had called to the scene. *Id.* at lns. 370–79. One police officer or the employee yelled to Khepera–Bey that he "should have paid [his] car payment" in front of his neighbors who had gathered to watch the repossession. [9] *Id.* at lns. 392–95. The repossession and debt are on Khepera–Bey's credit report. *Id.* at lns. 408–09.

---

[9]    In his proposed second amended complaint, Khepera–Bey incorporates his earlier statement that an officer yelled at him, but also alleges that Renaissance's employee shouted the statements. ECF No. 35–1110.3. A "witness statement" attached to the original complaint states the officer and employee made the same statement. ECF No. 1 Ex. 2.

---

2012 WL 1965444

On January 11, 2011, Santander mailed Khepera–Bey a letter dated January 9, 2011, stating that it would sell the car at a private sale in Elkridge, Maryland [10] on or after January 20, 2011, unless he paid his remaining debt and the cost of repossessing the car. ECF No. 1 Ex. P.

[10]  Elkridge is in Howard County, Maryland.

On January 31, 2011, the Maryland Motor Vehicle Administration ("MVA") issued Santander a repossession title in the name of DC Financial. *Id.* at lns. 575–77; ECF No. 35 Ex. X–13. On February 17, 2011, Khepera–Bey recovered his damaged car from Renaissance. ECF No. 1 lns. 513–18. On March 30, 2011, Chrysler Financial Services stated that it did not hold a security interest or right of ownership in Khepera–Bey's car. ECF No. 31 Ex. X1 at 1.

Khepera–Bey alleges that his college grades fell below a D average, he lost sleep and his chance for employment, and gained weight because of Santander's attempts to collect his car payments. ECF No. 1 lns. 674–703.

On May 6, 2011, Khepera–Bey sued Santander and Renaissance alleging that they had violated the FDCPA, 15 U.S.C. §§ 1692–1692p, the Maryland Fair Debt Collection Practices Act, Md.Code. Ann., Commercial Law § 14–202 (West 2010), and had committed fraud, extortion, theft, and Intentional Infliction of Emotional Distress. ECF No. 1.

 **\*3**  Santander moved to dismiss the complaint, and Khepera–Bey moved for leave to file an amended complaint and other relief. ECF Nos. 4, 14–16, 21, 22, 25. On October 6, 2011, the Court allowed Khepera–Bey to amend the complaint but dismissed most of it for failure to state a claim. [11] ECF No. 29.

[11]  The Court also denied Khepera–Bey's motions for summary judgment, to amend the summary judgment motion, and for declaration of bad faith. The Court granted Khepera–Bey's motion for alternative service on Renaissance. ECF No. 29.

On August 23, 2011, the MVA determined that the repossession title had been issued in error because Santander had "failed to adequately exhibit that it had a security interest in the 2003 Nissan and a right to possess the vehicle," and reinstated Khepera–Bey's registration and title as they appeared on August 10, 2006—that is,

listing "DC Fin Svcs" as a lienholder. ECF No. 35 Ex. X–13.

Between October 12, 2011 and March 7, 2011, Khepera–Bey filed 16 motions and "notices" that this Court will construe as motions. *See* Docket. On October 26, 2011, Khepera–Bey moved for leave to file a second amended complaint. ECF No. 35. On December 1, 2011, Renaissance moved to dismiss the first amended complaint for failure to state a claim against it. ECF No. 47. The defendants also moved for an order barring Khepera–Bey from filing further motions. ECF Nos. 40, 63.

II. Analysis

  A. Khepera–Bey's Motions

1. Motion for Special Appearance and Challenge to *Pro Se* Status
Khepera–Bey asked the Court "to grant [him a] Special Appearance in the Honorable Court's proceedings for this matter ... [because he] is not under the jurisdiction of the null and void 14th Amendment." ECF No. 20 at 2. He also objects to application of the term *"pro se"* to him, preferring he be referred to as *in propria persona* (Latin for "in one's own person"). The terms are interchangeable and the docket will not be changed. *See* Black's Law Dictionary (2009); *Bank of Am. Nat'l Ass'n v. Derisme,* No. 10–cv–0900, 2010 WL 3211066, at \*4 n. 5 (D.Conn. Aug.13, 2010).

"[T]he distinction between general and special appearances in federal practice has been abolished." *Davenport v. Ralph N. Peters & Co.,* 386 F.2d 199, 204 (4th Cir.1967). [12] Khepera–Bey's requests will be denied.

[12]  Although the Fourteenth Amendment to the United States Constitution is binding on this Court, *e.g. Richardson v. Branker,* 668 F.3d 128, 136 (4th Cir.2012) (applying Fourteenth Amendment), Khepera–Bey's action does not involve rights under the Fourteenth Amendment. *See* ECF No. 35–1.

2. Motions to Vacate Filing and Court Order
Khepera–Bey moved to vacate the Court's order dismissing his original and amended complaint, and to vacate Santander's motion to dismiss. ECF Nos. 33, 36, 56. His motion to vacate Santander's motion will be

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

construed as an opposition to Santander's motion to dismiss. His motions to vacate the Court's order will be construed as motions for reconsideration.

The Clerk, of the Court told Khepera–Bey that he had to respond to Santander's motion to dismiss by July 9, 2011. ECF No. 7 at 1 (Rule 12/56 letter). The Clerk also told Khepera–Bey that if he "d[id] not file a timely written response, the Court may dismiss the case or enter judgment against [him] without further notice." *Id.* Khepera–Bey filed the motion to vacate Santander's motion on November 2, 2011, almost four months after it was due. ECF No. 36. The response will be denied as untimely. [13]

[13]    Khepera–Bey argued in his motion that Santander's motion to dismiss was filed six days after the answer to his complaint was due. ECF No. 36 at 2. Under Fed.R.Civ.P. 12(a), a defendant must serve an answer or a motion to dismiss within 21 days after the defendant is served with the summons and complaint. The summons lists the "date of service," and the USPS delivery confirmation notice lists the date of receipt, as May 31, 2011. ECF No. 9 at 1–2. A handwritten note states that service was "accepted" on May 25, 2011; it is not clear why or how service was accepted before the date of service and delivery. *Id.* at 1. The motion to dismiss or answer was due on June 21, 2011. *See* Fed.R.Civ.P. 12(a). Santander timely filed its motion on June 21, 2011. ECF No. 4.

 **\*4** In his motion to vacate the Court's order, Khepera–Bey argues that Santander "did not provide any lawful link to the Plaintiff in their ... affidavit." ECF No. 33 at 1. Khepera–Bey's argument—about whether Santander has proof that it is not liable to Khepera–Bey—was not relevant to the Court's decision whether Khepera–Bey had properly alleged the claims in his complaint. [14]

[14]    At this stage in this suit, Khepera–Bey has not "demonstrated by a preponderance of the evidence" that the contract is fraudulent. ECF No. 33 at 5. The Court assumes that, as the complaint claims, Santander completed portions of the complaint that Lanham Ford was meant to complete. *See* ECF No. 1. This does not mean that Khepera–Bey has proven fraud.

As the Court will discuss again when it considers Renaissance's motion to dismiss, below, a motion to dismiss for failure to state a claim tests the legal sufficiency

of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir.2006). The Court assumes that the facts contained in the complaint are true. [15] Santander was not required to address the allegation that the retail installment was fraudulent. *See* ECF No. 33 at 2. Santander challenged the complaint because Khepera–Bey had not alleged the necessary facts to support one element of the FDCPA claim—that Santander was a debt collector, as defined by the statute. An FDCPA claim that does not show that the FDCPA applies to the defendant must be dismissed. In dismissing the complaint and amended complaint the Court has not ignored the allegedly fraudulent contract. ECF No. 33 at 5. [16]

[15]    However, the Court will not accept the legal conclusions in the complaint. When resolving the motion to dismiss, the Court checks whether the complaint includes every required element for each claim.

[16]    Khepera–Bey states that Renaissance was "trying to take on the decision making role reserved for" the Court when it argued that Khepera–Bey's amended complaint mooted his motion to vacate. ECF No. 44 at 9. Renaissance did not try to usurp the Court's role, it merely presented to the Court an argument, an argument it was entitled to make. The Court did not consider that argument because it resolved the motion on other grounds, but Renaissance did nothing wrong by arguing mootness.
The defendants also did not usurp the Court's power to set deadlines. *See id.* The Clerk of the Court enters the deadlines on the docket sheet. The defendants had no role in creating those deadlines.

Khepera–Bey also argues that he is entitled to reconsideration under Fed.R.Evid. 103. ECF No. 56 at 1. Rule 103 applies to preserving a claim of error when the Court admits or excludes evidence from a proceeding. The Court has made no evidentiary rulings. *See* ECF Nos. 28, 29. Whether Santander committed fraud remains to be proven at the appropriate time, not at the motion to dismiss stage. *See Presley,* 464 F.3d at 483.

When the Court considered Khepera–Bey's motion for summary judgment, it did not weigh the evidence by concluding that the parties needed to conduct discovery before it could rule on a motion for summary judgment. ECF No. 28 at 11–12. Khepera–Bey objects to the

2012 WL 1965444

Court's consideration of Santander's affidavit, submitted in opposition to his motion for summary judgment. ECF No. 56 at 1. He argues that the affidavit "does not exist." *Id.* at 2. The affidavit, which was originally submitted without signature, was signed and re-submitted. ECF No. 26–1. It was sufficient to permit Santander to avoid summary judgment at this early stage of the proceedings. *See* Fed.R.Civ.P. 56(d).

Khepera–Bey has not shown that the Court's October 6, 2011 order should be reconsidered. [17] Accordingly, the motion will be denied.

[17]    Motions for reconsideration of an interlocutory order are governed by Rule 54(b), under which "any order or other decision ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). When warranted, the district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 514–15 (4th Cir.2003). Resolution of the motion is "committed to the discretion of the district court," *Id.* at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.,* 704 F.Supp.2d 544, 547 (E.D.Va.2010) (internal citations omitted).

Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed.R.Civ.P. 60(b). Although Rule 60(b) applies only to final judgments, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b). *See Fayetteville Investors v. Commer-cial Builders, Inc.,* 936 F.2d 1462, 1470 (4th Cir.1991); *Mateti v. Activus Fin. ., LLC,* No. DKC–08–0540, 2009 WL 3633339, *4 (D.Md. Oct.27, 2009).* When a request for reconsideration merely asks the court to "change its mind," relief is not authorized. *Pritchard v. Wal–Mart Stores, Inc.,* 3 F. App'x 52, 53 (4th Cir.2001).

3. Motion for More Definite Statement

Khepera–Bey moved for a court order requiring Santander to provide more "definitive statements" than it gave in its answer to the amended complaint. ECF No. 41 at 1.

Under Fed.R.Civ.P. 8(b), an answer to a complaint must "state in short and plain terms its defenses to each claim asserted against it; and admit or deny the allegations asserted against it."

**\*5**  Under Fed.R.Civ.P. 12(e):

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.... If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order. A motion for more definite statement focuses on whether a party has "enough information to frame an adequate answer." *Streeter v. SSOE Sys.,* No. WMN–09–CV–1022, 2009 WL 3211019, at *10 (D.Md. Sept.29, 2009) (citation and internal quotation marks omitted). A motion for a more definite statement challenges the intelligibility or ambiguity of the complaint, not whether the allegations state a claim. [18]

[18]    *Smith v. McGraw,* No. 10–cv–02310–AW, 2011 WL 1599579, at *5 (D.Md. Apr.27, 2011); *Frederick v. Koziol,* 727 F.Supp. 1019, 1020–21 (E.D.Va.1990).

Whether to grant a motion for a more definite statement is "generally left to the district court's discretion." *Hodgson v. Va. Baptist Hosp., Inc.,* 482 F.2d 821, 824 (4th Cir.1973). However, this motion is disfavored because of the liberal pleading standard. *Frederick,* 727 F.Supp. at 1021.

Khepera–Bey's motion fails for two reasons. First, Rule 12(e) applies to "a pleading to which a responsive pleading is allowed." No responsive pleading to an answer is allowed unless the answer includes a counterclaim or the Court orders a reply to the answer. Fed.R.Civ.P. 7(a). Neither circumstance is present here.

Khepera–Bey's motion also fails because Khepera–Bey complains that Santander's use of phrases such as "no response is required" and "the terms speak for themselves" are ambiguous. *See* ECF No. 41 at 2. "No response is required" to legal conclusions in a complaint; a defendant is only required to respond to factual allegations. Santander has denied legal conclusions to the extent they were deemed factual allegations. *See* Fed.R.Civ.P. 8(b); ECF No. 32. That the terms of

2012 WL 1965444

documents attached to the amended complaint "speak for themselves," ECF No. 32 at 1, is an acceptable response—it means that Santander admits that the attachments contain the information that they appear to contain. *See United States v. Cunningham,* No. 08–CV–0709, 2009 WL 3350028, at *5 (E.D.Va. Oct. 15, 2009). Santander's answer satisfied Rule 8(b); accordingly, Khepera–Bey's motion for a more definite statement will be denied.

### 4. Motion for Discovery

Khepera–Bey also seeks discovery of documents from Santander. ECF No. 42. Under Fed.R.Civ.P. 26(d)(1), a "party may not seek discovery from any source before the parties have conferred [and produced a discovery plan]." Khepera–Bey argues that Rule 26(d) (1) does not apply, because he seeks documents that must be disclosed without request under Rule 26(a)(1). ECF No. 52 at 2. However, the parties need not disclose Rule 26(a)(1) information until 14 days after the discovery conference. Fed.R.Civ.P. 26(a) (1)(C). Further, "disclosures need not be made until a scheduling order is entered." Local Rule 104.4 (D.Md.2011). Accordingly, Khepera–Bey's motion is premature and will be denied.

### 5. Motions "Evidencing" Fraud and Forgery

**\*6** Khepera–Bey filed four motions "evidencing" Santander's alleged fraud and the invalidity of the loan contract. ECF Nos. 37–39, 61. The motions include arguments and documents that Khepera–Bey believes support his claims. *See id.* A motion is a "request for a court order." Fed.R.Civ.P. 7(b). It must state the relief it seeks from the court. *Id.* Khepera–Bey's "motions" request that the Court grant them but do not specify the relief he wants. *See* ECF Nos. 37–39, 61. It appears that Khepera–Bey wants the Court to make a factual finding that the retail installment contract was fraudulent, and conclude as a matter of law that the defendants are liable. *See* ECF No. 37 at 4; ECF No. 38 at 14.

To the extent Khepera–Bey seeks a factual determination, he is too early. As the Court noted in its October Memorandum Opinion, the Court will not rule on disputes of material fact, such as the validity of the contract, before the completion of court-ordered discovery. ECF No. 29 at 6–7. After discovery concludes, Khepera–Bey—or the defendants—may move for summary judgment. The motions "evidencing" facts will be denied.

### 6. Motions for Default Judgment

Khepera–Bey filed two motions for default judgment and two motions in support of his motions for default judgment. ECF Nos. 59, 60, 63, 67. He argues that the defendants have failed to defend or appear in the action because some of the defendants' filings are addressed to Kheval Stewart, and Khepera–Bey does not respond to that name, or Khevil Stewart, a misspelling of his former name. *Id.*

Under Fed.R.Civ.P. 55, a district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear. Fed.R.Civ.P. 55(b)(2). [19] The Fourth Circuit strongly prefers that cases be decided on their merits, not by default judgment. *United States v. Schaffer Equip. Co.,* 11 F.3d 450, 453 (4th Cir.1993). [20]

[19]    If it found that the defendants had defaulted, the Court would accept as true the well-pled facts in the plaintiff's complaint, "but [even] a defaulting defendant is not held to admit conclusions of law." *United States v. $3,500.00 in U.S. Currency,* 2008 WL 215807, at *1 (E.D.N.C. Jan.24, 2008) (*citing Ryan v. Homecomings Fin. Net work,* 253 F.3d 778, 780 (4th Cir.2001)). Rather, it remains for the Court to determine whether the unchallenged factual allegations "support a claim and the relief sought." *Id.*

[20]    A plaintiff cannot obtain default judgment without first obtaining an entry of default against the defendant. *Husain v. Casino Control Comm'n,* 265 F. App'x 130, 133 (3d Cir.2008) ("entry of default by the Clerk ... constitutes a general prerequisite for a subsequent default judgment"); *Romero v. Barnett,* No. 09–2371–DKC, 2011 WL 1938147, *2 (D.Md. May 20, 2011).

Further, the defendants' failure to use Khepera–Bey's new name, and minor misspellings are not a failure to defend this lawsuit. The defendants filed responses to Khepera–Bey's complaint and motions, which the Clerk properly docketed, and Khepera–Bey received. [21] Khepera–Bey also argues that he is entitled to default judgment because Santander did not timely answer the complaint. ECF No. 59 at 2–3. As discussed above, that argument lacks merit. [22]

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

21    *Cf. Miller v. Balt. City Bd. of School Comm'rs,* No. 10–2038–WDQ, 2011 WL 2600589, *5 (D.Md. Jun.28, 2011) (a defendant cannot obtain dismissal for improper service only because the process served on him misspelled his name; he received actual notice of the action and maintaining the action would not be prejudicial). Here, Khepera–Bey received the defendants' filings. He will not be prejudiced by minor spelling errors or the use of Khepera–Bey's legal name when he first filed his action.
   Fed.R.Civ.P. 17 is also not helpful for Khepera–Bey, as it applies to prosecution of an action, and Renaissance and Santander are defending this action.

22    As a third ground for granting default judgment against Santander, Khepera–Bey states that "the defendant informed the Court that they have no evidentiary support ... to prove their claims and defenses." ECF No. 59 at 3. Santander has made no such admission. Default judgment does not consider the evidence supporting a claim. *Schaffer Equip. Co., 11 F.3d at 453.*

Khepera–Bey also seeks default judgment against Santander under Fed.R.Civ.P. 37(b)(2)(A)(vi) for its failure to provide discovery material. ECF No. 59 at 2. Rule 37(b) applies when a party fails to comply with a court order compelling discovery. Fed.R.Civ.P. 37(a)(1). Rule 37(c), on which Santander also relies, applies only when a party fails to disclose information it has a duty to provide. As discussed above, discovery has not begun in this case, the Court has issued no orders compelling discovery, and Santander is not yet required to provide Rule 26(a) disclosures to Khepera–Bey. Accordingly, the motion will be denied.

    7. Motion to Transfer to "De Jure Venue of Law"
**\*7**   Khepera–Bey asks the Court to

> transfer his case to [its] De Jure venue of LAW within the ... Court ... and hereby gives Judicial Notice to terminate, prohibit any further adjudication in the ... [action] in any de facto commercial, juridicial venue.

ECF No. 68 at 1 (emphasis omitted). He also states that his complaint "should now be adjudicated in accord with the Moor Sundry Act of 1790 and not under the Black Codes or any artificial persona." *Id.*

The United States District Courts handle all matters of law and equity, in the same venue. *See CIGNA Corp. v. Amara,* —— U.S. ——, ——, 131 S.Ct. 1866, 1878, 179 L.Ed.2d 843 (2011) (noting the merger of law and equity courts). Accordingly, the action is pending in a court of law.

Khepera–Bey asks for adjudication under "the Moor Sundry Act of 1790, and not under the Black Codes." He did not identify what the that act was, but the Moors Sundry Act of 1790 appears to be a South Carolina law granting special immunity from "Black Codes" to South Carolina residents who were subjects of the Sultan of Morocco. 23 The Civil Rights Act of 1964 eliminated discriminatory laws like the "Black Codes." 24 Further, Khepera–Bey has not alleged that he is a subject of the Sultan of Morocco, this action is premised on federal question jurisdiction, and no acts occurred in South Carolina; the statute is irrelevant. 25 The motion will be denied.

23    Presumably because of its age and irrelevance in light of the Civil Rights Act of 1964, very little information about the Act is available. The most informative source, it appears, is Wikipedia. *See Moors Sundry Act of 1790, available at* http://en.wikipedia.org/wiki/Moors_Sundry_ Act_of_1790, accessed Mar. 23, 2012.

24    *McCrary v. Runyon, 515 F.2d 1082, 1093–94 (4th Cir.1975)* (Russell, Field, and Widener, JJ., dissenting in part).

25    To the extent Khepera–Bey relies on the laws of the Moorish Science Temple, those laws are not "recognized by United States federal courts as binding legal authority." *De Bey,* 2012 WL 176586, *4.

**B. Renaissance's Motion to Dismiss and Khepera–Bey's Motion to Amend**

   1. Standards of Review
Under Fed.R.Civ.P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley,* 464 F.3d at 483.

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price–Fleming Int'l Inc.,* 248 F.3d 321, 325–26 (4th Cir.2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764–65 (4th Cir.2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

This requires that the plaintiff do more than "plead[ ] facts that are 'merely consistent with a defendant's liability' "; the facts pled must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

**\*8** Under Fed.R.Civ.P. 15(a), the Plaintiff may amend his complaint more than 21 days after a Fed.R.Civ.P. 12(b) motion only if the opposing party gives written consent, or the Court permits the amendment. The Court will allow amendment when justice requires, and may consider such factors as prejudice to the other parties. *Arthur v. Maersk, Inc.,* 434 F.3d 196, 202–03 (3rd Cir.2006) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Consent will not be given if amendment would be prejudicial to the defendants or futile, or the movant acted in bad faith with dilatory motive. *Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d 597, 603 (4th Cir.2010). The Court will determine futility under the standard of Fed.R.Civ.P. 12(b)(6). *Adorno v. Crowley Towing & Transp. Co.,* 443 F.3d 122, 126 (1st Cir.2006).

2. Dismissal of Meritless Claims

Khepera–Bey requested, and was granted, permission to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915. ECF Nos. 2, 3. Under 28 U.S.C. § 1915(e)(2), the Court "shall dismiss the case at any time if [it] determines that ...

the action ... is frivolous [or] ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii). Accordingly, the motion to amend will be considered in light of the Court's duty to dismiss meritless or frivolous claims. [26]

[26]  The Court's scrutiny does not mean that the permitted amendments necessarily state a claim for which relief may be granted. The Court will not do the work of the parties in arguing closer questions than those dismissed *sua sponte* here.

3. Khepera–Bey's Motion to Amend

Khepera–Bey seeks to file a second amended complaint to add state law claims and, he argues, remove allegations of criminal violations. ECF No. 35 at 3. The second amended complaint is replete with allegations of criminal violations. *See* ECF No. 35–1, Counts 3–14. [27] The criminal allegations do not state a civil claim for which relief may be granted because they do not provide a private cause of action; those amendments will not be allowed.

[27]  The criminal statutes cited, are: 18 U.S.C. §§ 641, 892, 894, 1028, 1341, 1343, 1951, 1952.
Khepera–Bey argues that the second amended complaint raised a claim under 18 U.S.C. § 1964, which authorizes a civil cause of action under the Racketeer Influenced and Corrupt Organizations ("RICO") laws. ECF No. 55 at 1. He correctly notes that a person injured by a violation of 18 U.S.C. § 1962 may sue for damages. *Id.* at 1–2; 18 U.S.C. § 1964(c). However, Khepera–Bey did not rely on 18 U.S.C. § 1964 or § 1962 in his second amended complaint or state a civil RICO claim. *See* ECF No. 35–1.

Several of the statutory Maryland claims are subject to dismissal as well. [28] Many of the statutes on which Khepera–Bey relies do not provide private causes of action. [29] Others do not apply to the facts alleged. [30] Some of the remaining amendments will be permitted, as discussed below.

[28]  The new, non-criminal claims are based on Maryland statutory and common law torts. *See* Counts 1–15. Accordingly, those claims are not within Federal Question jurisdiction. Santander "is incorporated as a citizen of Maryland." ECF No. 35–1 ¶ 2. Accordingly, it is not diverse from Khepera–Bey, also a Maryland resident. Jurisdiction over the Maryland law claims

2012 WL 1965444

thus requires supplemental jurisdiction. The Court has supplemental jurisdiction because the claims "form part of the same case or controversy" as the FDCPA claims. 28 U.S.C. § 1367.

29    Those statutes are: Md.Code, Comm. Law §§ 9–107, 9–303, 9–329; Md.Code, Transp. §§ 13–114(e), 14–108; Md. Dep't of Transp. Regulation 11.15.14.07.

30    Those statutes are: Md.Code, Comm. Law:
- § 5–109(b) (applies when honoring a presentation on a letter of credit would facilitate a fraud by the beneficiary; Khepera–Bey is the beneficiary, he does not allege that Santander would cause Khepera–Bey to commit fraud);
- §§ 5–112 and 5–114 (limit the beneficiary's rights to transfer and assign rights and obligations under a letter of credit); and
- § 12–602 (prohibits a seller or financier from making false representations related to charges, rates, and terms of financing).

### 4. Renaissance's Motion to Dismiss

The Court will consider Renaissance's motion to dismiss as if it were directed at the proposed second amended complaint. [31] As noted above, Khepera–Bey will not be permitted to amend his complaint to add allegations of crimes or inapplicable Maryland laws. Counts 10, 12, 13, and 14 name Renaissance and state—after the criminal and clearly inapplicable claims are removed—FDCPA, Maryland Consumer Debt Collection Act ("MCDCA"), Maryland Consumer Protection Act ("MCPA"), Closed End Credit, and common law causes of action. ECF No. 35–1 at 30–43.

31    *See Baldwin v. LIJ N. Shore Health Sys., 392 F.Supp.2d 479, 481–82 (E.D.N.Y.2005)* (court may treat motions as directed at proposed amended complaints to promote judicial efficiency if fair to the parties); *Levy v. Lerner, 853 F.Supp. 636, 638 (E.D.N.Y.1994).*

### a. FDCPA Claims

Khepera–Bey argued that Santander and Renaissance violated § 1692f(6)(A) and (C) when Santander sent him a notice of intent to repossess, Renaissance repossessed the car, Santander told him it would sell the car unless Khepera–Bey paid his remaining debt and costs, personal property disappeared from the car while it was in Santander's and Renaissance's possession, and Santander

obtained a title to the car. ECF No. 35–1 at 20, 30–31, 37–38, 42, 45–46.

**\*9** To state a claim under the FDCPA, a plaintiff must show that the defendants are debt collectors. *Wilson v. Draper & Goldberg, P.L.L.C.,* 443 F.3d 373, 378 (4th Cir.2006). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce ... in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). It excludes repossession agencies, except for violations of 15 U.S.C. § 1692f(6). [32] *See Wilson,* 443 F.3d at 378. Because Khepera–Bey alleged that Renaissance's only role was as a repossessor, not a debt collector, the FDCPA claims against it will be dismissed, except for the § 1692f(6) claim.

32    Which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" if the debt collector lacks the right or intent to take the property as collateral through an enforceable security interest. 15 U.S.C. § 1692f(6).

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect ... any debt." Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action" to repossess property if (A) there is no present right to possess the property, or (C) the property is exempt by law from repossession.

Khepera–Bey has not alleged that his car was exempt by law from repossession, and the Court has found no authority for that proposition. Subsection (C) does not apply.

The letter of intent to repossess and the repossession are proper bases for § 1692f(6)(A) claims. The other allegations are either components of the repossession—such as endeavoring to gain title in Santander's name—or do not relate to the right to repossess—such as the lost property. However, Khepera–Bey alleged that Santander did not have the right to repossess the car because it had not verified the debt and the underlying contract was invalid. ECF No. 31–1 at 8–9, 11, 13. Accordingly, one § 1692f (6)(A) claim against Renaissance will survive the motion to dismiss. The § 1692f(6)(C) claim will be dismissed.

**b. Maryland Consumer Debt Collection Act Claims**
Khepera–Bey asserts that Renaissance violated the MCDCA, Md.Code, Comm. Law § 14–202. The MCDCA prohibits debt collectors from using threatening or unfair methods "[i]n collecting or attempting to collect an alleged debt." Md.Code, Comm. Law § 14–202; *Spencer v. Henderson–Webb, Inc.,* 81 F.Supp.2d 582, 594 (D.Md.1999). Like the FDCPA, the MCDCA only applies to "collectors"; a collector is "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md.Code, Comm. Law § 14–201(b). A recovery company, which enforces a collector's security interests, is not a debt collector because enforcing a security interest is not collecting a debt, and the recovery company generally does not have an interest in the debt (or the personal property; it is acting on behalf of the collector or creditor). [33]

[33]   There is no authority directly considering whether a repossession agency is a "collector" in Maryland, and the Maryland Code does not define "debt." However, the Commercial Law section of the Maryland Code defines "security interest" as "an interest in personal property ... which secures payment or performance of an obligation." Md.Code, Comm. Law § 1–201(37) (general definitions). Thus, the definition distinguishes the interest in personal property from the obligation to pay. *Id.* Further, a repossessor cannot be said to be attempting to collect a debt when it takes property; it has no right to collect the debt, and has been hired only to physically take, store, or sell the property on behalf of the collector. *See Green v. Ford Motor Credit Co.,* 152 Md.App. 32, 828 A.2d 821, 825 (Md.Ct.Spec.App.2003) (noting that defendant, a collector, "use[s] the services of [a repossessor] for the repossession, storage and sale of cars repossessed by [the defendant]," and thus implying that the repossessor is not a collector).

Accordingly, Khepera–Bey's MCDCA claims against Renaissance will be dismissed.

**c. Maryland Closed End Credit Provisions**
Count 12 alleges that Santander's collection efforts, and Renaissance's repossession, were unlawful. ECF No. 35–1 at 37–39. Khepera–Bey asserts that Renaissance violated Md.Code, Comm. Law § 12–1021, part of the Credit Grantor Closed End Credit provisions ("CLEC"). The CLEC regulates credit grantors. Md.Code, Comm. Law §

12–1018. A credit grantor is an "entity making a loan or other extension of credit." *Id.* § 12–1001(g). [34]

[34]   *See also Epps v. JP Morgan Chase Bank, N.A.,* No. 10–2444, 2012 WL 1134065, *8 (4th Cir. April 5, 2012) ("[T]he CLEC applies to any lender in Maryland.").

**\*10** Khepera–Bey's allegations show that Renaissance was not a credit grantor. Thus, the CLEC does not apply to Renaissance. The CLEC claims against Renaissance will be dismissed.

**d. Retail Installment Sales Act**
Khepera–Bey alleged, in count 12, that Renaissance and Santander violated the Retail Installment Sales Act ("RISA"), Md.Code, Comm. Law § 12–601 *et seq.* ECF No. 35–1 at 38–39. He alleged violations of Md.Code, Comm. Law §§ 12–624(d), –625(a), –626(d), and –630(d). [35] *Id.*

[35]   Section 12–630 lists remedies for violations of the RISA. Md.Code, Comm. Law § 12–630. Renaissance cannot have "violated" it, but Khepera–Bey will not be faulted for noting the statute that delineates his potential remedies.

Section 12–624(d) states that a holder [36] must, within five days of repossessing goods sold under a RIC, send the buyer a written notice that tells the buyer (1) about his right to redeem the goods and how much he needs to pay to do so, (2) about his right to a resale and liability for a deficiency, and (3) the exact location of the collateral and the address where payment or notice should be made. Md.Code, Comm. Law § 12–624(d).

[36]   A holder is an entity entitled to enforce an installment sales agreement against a buyer. Md.Code, Comm. Law § 12–601(l).

Khepera–Bey's allegations make clear that he contends Santander, not Renaissance, violated § 12–624(d). *See* ECF No. 35–1 at 37. Aside from repossessing the car and moving it across county lines, count 12 does not mention Renaissance, but it states that "Santander['s] notice [of intent] to sell" violated Maryland law. *Id.* Accordingly, Khepera–Bey did not allege that Renaissance violated § 12–624(d). To the extent that claim is directed against Renaissance, it will be dismissed. Section 12–625(a) states that the holder must retain the repossessed goods for 15

days after giving the buyer notice of repossession, in the county where goods were sold or repossessed.

Khepera–Bey alleged that he bought the car in Lanham, Maryland—in Prince George's County—Renaissance and Santander repossessed the car in Baltimore, Maryland, and moved it to Elkridge, Maryland—which is in Howard County. ECF No. 35–1 at 37. Accordingly, he has alleged that Santander and Renaissance held the car in the wrong county, in violation of § 12–625(a).

Section 12–626(d) states that the holder must notify the buyer in writing of the time and place of a sale at least 10 days before the sale, if the buyer has requested a public sale. Md.Code Comm. Law § 12–626(d). [37] Khepera–Bey did not ask Renaissance to sell the car; § 12–626 does not apply to the transaction. That claim will be dismissed.

[37]    Subsection (d) is limited by subsection (a), which states that "the holder shall sell any repossessed goods at public auction if the buyer ... [timely] requests sale of the goods in writing." See Md.Code, Comm. Law § 12–626(e)(1) (noting that subsection (e) applies to "[a] public sale held under the provisions of this section [§ 12–626]" and "[a]ny other bona fide public or private sale of goods ... if the buyer ... has not requested a public sale under subsection (a) of this section"; thus implying that the other provisions of "this section" only apply when (a) applies). Accordingly, subsection (d) does not apply when the buyer has not requested a sale.

   e. Maryland Consumer Protection Act Claims
The MCPA prohibits the use of unfair or deceptive trade practices in the sale of goods, extension of credit, and collection of consumer debts, among other things. Md.Code, Comm. Law § 13–303.

Khepera–Bey alleged that Renaissance violated subsections one through four, eight, nine, and eleven. [38] ECF No. 35–1 at 38. He has not alleged that Renaissance engaged in any of the deceptive acts listed in those subsections. See id. His MCPA claim against Renaissance will be dismissed.

[38]    Those subsections state that "Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading ... statement ... which has the capacity ... of deceiving or misleading consumers;
(2) Representation that:
   (i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic ... or quantity which they do not have; [or]
   (ii) A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have; ...
(3) Failure to state a material fact if the failure tends to deceive;
(4) Disparagement of the goods ... of another by a false or misleading representation of a material fact; ...
(8) False statement which concerns the reason for offering or supplying consumer goods, consumer realty, or consumer services at sale or discount prices;
(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
   (i) The promotion or sale of any consumer goods, consumer realty, or consumer service;
   (ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or
   (iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental; tor]
(11) Use of any plan or scheme in soliciting sales or services over the telephone that misrepresents the solicitor's true status or mission.

   d. Common Law Claims
Finally, Khepera–Bey alleged in counts 10 and 12 that Renaissance is liable for slander, trespass, trespass to chattel, and "trespass to personal property with conversion (strict liability)." ECF No. 35–1 at 31, 38–39.

**\*11** To plead a defamation [39] claim, the plaintiff must allege

[39]    Slander is a type of defamation. See Piscatelli v. Van Smith, 424 Md. 294, 317, 35 A.3d 1140, 1153–54 (2012).

(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the

defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm. *Piscatelli v. Van Smith,* 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (internal quotation marks and citations omitted).

A statement is defamatory if it "tends to expose a person to public scorn, hatred, contempt, or ridicule." *Id.* (internal quotation marks and citations omitted). A false statement "is not substantially correct." *Id.* Harm can include emotional distress, but only if "there is a publication of false and defamatory matter from which harm to reputation is presumed"—defamation per se. *Hearst Corp. v. Hughes,* 297 Md. 112, 127, 466 A.2d 486, 493 (1983).

Statements that impute: (1) the commission of a crime, (2) unchastity or immorality, (3) injury to profession, trade, or business, or (4) injury to employment, are defamatory per se. 14 Md. Law Encyc. Libel & Slander §§ 6–13. A statement that the plaintiff cannot pay his debts, or is insolvent, is not defamatory per se unless the plaintiff shows that he is engaged in a business that requires credit. *Ekweani v. Atl. City Emps. Credit Union,* 43 F.3d 1466 (table), 1994 WL 696519, *2 (4th Cir.1994) (applying Georgia law). [40]

[40] Maryland does not appear to have addressed the issue directly, but has implied that it follows this rule. *See, e.g., Gooch v. Md. Mech. Sys., Inc.,* 81 Md.App. 376, 567 A.2d 954, 966 (Md.Ct.Spec.App.1990) ("To say or publish of a merchant anything that imputes insolvency [or] inability to pay his debts" is defamatory per se. (emphasis added)).

Khepera–Bey alleged that: (1) Renaissance's employee accused him, in front of neighbors, of failing to pay his bills; (2) he was not required to pay his car payments because the debt was disputed, the contract was invalid, and Santander had not properly acquired the RIC; and (3) Renaissance willfully ignored evidence that Khepera–

Bey was not required to pay the debt; and (4) he was embarrassed and upset by the statement. ECF No. 35–1 at 32. As a statement imputing inability to pay debts requires proof of monetary, rather than emotional, harm, Khepera–Bey has not stated a claim for defamation. [41]

[41] Nor has Khepera–Bey alleged severe emotional distress as a result of the statement. He alleged that he was "emotionally stressed" and that the loss of his car affected his daily activities, but not that the statement so severely distressed him that "he has been unable to attend to his daily activities or that no person would be expected to endure such a situation," or physical complications, which would be necessary to establish severe emotional distress. *See Figueiredo–Torres v. Nickel,* 321 Md. 642, 655–56, 584 A.2d 69, 76 (1991).

Khepera–Bey has stated a claim for trespass because he alleged that Renaissance's employee voluntarily entered Khepera–Bey's driveway without his consent and stayed without a privilege. *Mitchell v. Balt. Sun Co.,* 164 Md.App. 497, 883 A.2d 1008, 1014 (Md.Ct.Spec.App.2005).

Khepera–Bey's trespass to chattel claim will survive, construed as a conversion claim, as he alleged that Renaissance "exercised ... a control or dominion over[ ] personal property to which [it] ha[d] no right of possession at the time," depriving Khepera–Bey of his right to the car. *Gallardo v. FedEx Kinko's Office & Print Servs., Inc.,* No. 08–0392–JFM. 2008 WL 2143011, *3 (D.Md. May 12, 2008); *Staub v. Staub,* 37 Md.App. 141, 376 A.2d 1129, 1131 (Md.Ct.Spec.App.1977).

There is no tort of "trespass to personal property with conversion (strict liability)" in Maryland. That claim will be dismissed.

### 4. Remaining Claims
The remaining claims are:

| Claim | Against | "Count" |
|---|---|---|
| **FDCPA:** | | |
| 1692c | Santander | II |
| 1692e | Santander | I, II, III, IV, IX, XI, XII, XV |

2012 WL 1965444

| | | |
|---|---|---|
| 1692f(1) | Santander | I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV |
| 1692f(6) | Santander, Renaissance | VI (Santander only), X, XII, XIV, XV |
| 1692g | Santander | I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV |
| 1692j | Santander | I, II, III, IV, V, VI, VII, VIII, IX, XI, XII, XIV, XV |
| MCDCA: Md.Code, Comm. Law § 14–202 | Santander | I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV |
| 18 U.S.C. § 1666 | Santander | IV, V |
| 18 U.S.C. § 1666a | Santander | XI |
| **RISA:** | | |
| §§ 12–605 to 607 | Santander | VIII, XI, XII |
| §§ 12–624 to 630 | Santander, Renaissance | XII |
| CLEC: § 12–1021 | Santander | XII |
| MCPA: §§ 13–301 to 303 | Santander, Renaissance | XII, XV (Santander only) |
| **FCRA:** | | |
| 15 U.S.C. § 1681S–2 | Santander | XI |
| 15 U.S.C. § 1681m | Santander | XI |
| 15 U.S.C. § 1681b | Santander | XI |
| 15 U.S.C. § 1681q | Santander | XI |
| Slander/ Defamation | Santander, Renaissance | X, XI (Santander only) |

| Conversion | Santander, Renaissance | X |
| Trespass | Santander, Renaissance | X, XII |

**C. Progression of the Case**

**\*12** Khepera–Bey's motions have prevented the timely progression of this case. He is instructed that the defendants need not provide him with discovery until the Court sets a discovery schedule.

Khepera–Bey should keep in mind that, if he succeeds on his claim that the RIC was invalid when it was made, he may have to return the car (because he no longer has a purchase contract for it), and pay for the value of using the car for the past seven years (but his total car payments to date may offset that amount). That transaction would not prevent him from recovering statutory or other damages if he succeeds on his FDCPA, FCRA, MCDCA, and common law claims.

**III. Conclusion**

For the reasons stated above, Khepera–Bey's motion to file a second amended complaint will be granted in part and denied in part. His other motions will be denied. Renaissance's motion to dismiss the second amended complaint will be granted in part and denied in part.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1965444

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| LANDMARK GRAPHICS CORP. *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2618 |
| | § | (Consolidated with H-06-1790) |
| SEISMIC MICRO TECHNOLOGY, INC., | § | |
| | § | |
| Defendant. | § | |

_____

| | |
|---|---|
| PARADIGM GEOPHYSICAL | § |
| CORPORATION, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| MAGIC EARTH, INC., *et al.,* | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND OPINION ON LANDMARK'S MOTION TO DISMISS AND STRIKE SEISMIC MICRO-TECHNOLOGY, INC.'S SECOND AFFIRMATIVE DEFENSE AND COUNTERCLAIM

The plaintiffs, Landmark Graphics Corporation and Magic Earth, Inc. (together, "Landmark"), moved under Rule 12(b)(6) to dismiss Seismic Micro-Technology, Inc.'s ("SMT") second affirmative defense and counterclaim for a declaratory judgment that the '570 Patent is unenforceable due to inequitable conduct. Landmark asserted that the defense and counterclaim had to be pleaded with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure and did not meet that standard. Landmark also moved to

1

FDAPP017

strike the allegations of inequitable conduct on the ground that they improperly "impugn[ed] the reputations" of the counterdefendants. (Docket Entry No. 44 at 10).

In response, SMT filed a First Amended Answer, Affirmative Defenses, and Counterclaims and argued that this filing made the motion to dismiss moot and that the amended pleading was sufficiently detailed to overcome any deficiencies under Rule 9(b). SMT also argued that Rule 12(f) did not provide a basis for removing any of the allegations.

Landmark has not reurged its motion to dismiss under Rule 12(b)(6) since SMT filed its First Amended Answer, Affirmative Defenses, and Counterclaims. In an oral hearing, Landmark confirmed that its motion to dismiss under Rule 12(b)(6) is moot. As to the motion to strike, SMT acknowledges that Landmark did not include in its First Amended Answer, Affirmative Defenses, and Counterclaims the "disparaging" allegations that were the subject of the Rule 12(f) motion. SMT nonetheless asserts that it is entitled to a ruling striking the allegations from the superseded original Answer. (Docket Entry No. 49 at 2). SMT responds that "courts do not entertain motions to strike superseded pleadings." (Docket Entry No. 50 at 1).

Rule 12(f) states:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

FDAPP018

FED. R. CIV. P. 12(f). Rule 12(f) motions require a showing of prejudice. *See Boyd's Bit Service, Inc. v. Specialty Rental Tool & Supply, Inc.*, 332 F.Supp.2d 938, 944 (W.D. La. 2004) ("[S]uch motions are disfavored and will usually be denied unless the allegations have no possible relevance to the controversy and may cause prejudice to one of the parties."); *Auto Wax Co., Inc. v. Mothers Polishes Waxes Auto Wax Co.*, 2002 WL 368526, at *5 (N.D. Tex.) ("Conclusory statements about unfair prejudice . . . are not enough to justify its motion to strike; a stronger showing is required under FED. R. CIV. P. 12(f)."); *see generally* 5C Charles Allan Wright Arthur R. Miller, FED. PRACTICE AND PROCEDURE § 1380, at 397 (3d ed. 2004).

SMT correctly points out that the allegations raised in the original answer or counterclaim and subsequently dropped in amended pleadings have been superseded. It is well settled that an amended pleading supersedes the pleading it modifies. *See, e.g.*, 6 Charles A. Wright & Arthur R. Miller, FED. PRACTICE AND PROCEDURE § 1476, at 556 (2d ed.1990). Similarly, any alleged facts made in the original counterclaim and not incorporated in the amended counterclaim have been "amended away." *Hibernia National Bank v. Carner*, 997 F.2d 94, 101 (5th Cir.1993). Granting the motion to strike the allegations in the now-superseded pleading does not provide relief greater than the amendment itself has already provided. The motion to strike, (Docket Entry No. 44), is denied as moot.

SIGNED on January 22, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

3

2011 WL 884456
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

John NORTON–GRIFFITHS,
Marilyn Norton–Griffiths, Plaintiffs,

v.

WELLS FARGO HOME MORTGAGE, Defendant.

No. 5:10–cv–169.
|
March 11, 2011.

**Attorneys and Law Firms**

John Norton–Griffiths, Rutland, VT, pro se.

Marilyn Norton–Griffiths, Rutland, VT, pro se.

Andre D. Bouffard, Esq., Downs Rachlin Martin PLLC,
Burlington, VT, Merritt S. Schnipper, Esq., Downs
Rachlin Martin PLLC, Brattleboro, VT, for Defendant.

## ENTRY ORDER GRANTING DEFENDANT'S RENEWED MOTION TO AMEND AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO AMEND (Docs. 30 & 32)

CHRISTINA REISS, Chief Judge.

**\*1** This matter comes before the court on Defendant's
motion to amend its filings, *nunc pro tunc,* to correct
the name of the corporate defendant in its filings in this
action (Doc. 32), and on Plaintiffs' motion to amend the
Complaint (Doc. 30).

Plaintiffs filed this action, alleging that Defendant
had failed to properly implement Plaintiffs' proposed
modification to the interest rate set forth in Plaintiffs'
residential mortgage, and asserting, among other things,
that Defendant has violated a number of federal laws and
regulations in its dealings with Plaintiffs.

### I. Defendant's Motion to Amend its Filings.
In their initial Complaint, Plaintiffs alleged that Wells
Fargo Home Mortgage, a division of Wells Fargo
Bank, N.A., held their residential mortgage and asserted
claims against that entity. Defendant's original notice of

appearance and corporate disclosure statement, however,
were filed on behalf of Wells Fargo Home Mortgage,
Inc. As Plaintiffs correctly pointed out, Wells Fargo
Home Mortgage, Inc. is not a party in interest to their
residential mortgage and is not a party to this litigation.
After further research, Defendant agreed and, through its
counsel, moved to amend, *nunc pro tunc,* its corporate
disclosure statement and previous self-identification in its
filings. Plaintiffs opposed that motion.

The court subsequently denied Defendant's motion to
amend without prejudice, requiring, as a condition
precedent to the proposed amendment, that Defendant's
counsel file a declaration under oath, identifying the
corporate entity they represent and explaining how
that entity allegedly came to hold Plaintiffs' residential
mortgage. Defendant has filed a declaration that complies
with the court's Order. Plaintiffs nonetheless continue
to oppose Defendant's motion to amend, arguing that
"the Declaration is not in accordance with the Court's
Decision and Order [Document 28] and is, in and of itself,
False, states No Facts which are of the deponent's Own
Knowledge and may prove to be Perjury." (Doc. 34 at 1.)
Plaintiffs ask the court to hold an evidentiary hearing so
that they may examine Defendant's counsel under oath
regarding the Declaration.

Rule 15 of the Federal Rules of Civil Procedure provides
that leave to amend should be "freely give[n] ... when
justice so requires." Fed. R Civ. P. 15(a)(2). "The rule
in this Circuit has been to allow a party to amend its
pleadings in the absence of a showing by the nonmovant
of prejudice or bad faith." *Block v. First Blood Assocs.,*
988 F.2d 344, 350 (2d Cir.1993); *see also State Teachers
Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981)
("Reasons for a proper denial of leave to amend include
undue delay, bad faith, futility of the amendment, and
perhaps most important, the resulting prejudice to the
opposing party."). A court must have "good reason" to
deny leave to amend. *See Kropelnicki v. Siegel,* 290 F.3d
118, 130 (2d Cir.2002).

**\*2** Plaintiffs challenge the Declaration on the grounds
that it does not comport with proper corporate
governance in that Attorney Schnipper allegedly lacks
legal authority to speak on behalf of his client. The
Declaration complies with the court's Order and nothing
more is required. Defendant is entitled to amend its filings
with this court and Plaintiffs are entitled to challenge

those filings, as amended. Defendant's motion for leave to amend *nunc pro tunc* (Doc. 32) is hereby GRANTED.

### II. Plaintiffs' Motion for Leave to Amend the Complaint.

By Opinion and Order dated January 7, 2011, the court granted Defendant's partial motion to dismiss certain claims set forth in Plaintiffs' initial Complaint for failure to state a claim. In particular, the court found that Plaintiffs had failed to plead facts that would support a legal conclusion that Defendant had violated the Truth in Lending Act, 15 U.S.C. §§ 1601–1667 (the "TILA"). In addition, the court concluded that Plaintiffs had failed to set forth a factual basis for their allegations that Defendant had violated 15 U.S.C. §§ 1639(b)(2)(A) and 1639(f) of the Home Ownership Equity Protection Act of 1994 ("HOEPA"). In so ruling, the court granted Plaintiffs leave to amend their Complaint "to assert facts in support of their HOEPA claims as Plaintiffs raised those claims for the first time in their briefs and thus may have not set forth all of the facts upon which their claims are based." (Doc. 26 at 12.)

Plaintiffs' proposed Amended Complaint includes additional facts relevant to their HOEPA claims. Plaintiffs also seek to add claims of alleged violations to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA") and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 ("RESPA").

Defendants oppose Plaintiffs' motion to amend, arguing that: (1) it is untimely; (2) Plaintiffs failed to seek Defendant's consent to their proposed amendments as required by Local Rule 7(a)(7); (3) Plaintiffs' additional facts do not state a claim under HOEPA; (4) there is no private right of action under FCRA; and (5) Plaintiffs' proposed Amended Complaint contains legal arguments and questions that should not be included in a complaint and are impossible to answer.

### A. Plaintiffs' HOEPA Claims.

Plaintiffs identify a number of additional facts in support of their HOEPA claims, including an allegation that Plaintiffs executed a mortgage dated May 13, 1998, to secure a debt in the original amount of $173,448.98, which was paid off in September 1998. Plaintiffs describe this "Mortgage Loan" as a "Home Equity Loan." (Doc. 30–13 at 13.) The points and fees for this transaction

were $7,051.02. Plaintiffs further allege that, in September 1998, they "refinanced" the Home Equity Loan through Norwest Mortgage, Inc., which paid off the May 1998 loan. The refinancing was for $186,000, and the amount of points and fees related to this transaction was $5,633.50. Plaintiffs assert that this, too, is a "Home Equity Loan." (Doc. 30–13 at 13–14.) Plaintiffs received a TILA disclosure with this September 1998 transaction. Based on these facts, Plaintiffs allege that their mortgage loan is not a "residential mortgage transaction," as defined in 15 U.S.C. § 1602(w), but is, instead, a "Home Equity Loan." Accordingly, they argue that their residential mortgage falls within 15 U.S.C. § 1602(aa) that defines all remaining mortgages other than a residential mortgage transaction.

**\*3** Plaintiffs, however, acknowledge that § 1602(aa) imposes two additional requirements for protection under HOEPA which they cannot satisfy: (1) the rate of interest must exceed a yield on certain Treasury securities by more than 10%; or (2) the total points and fees payable at closing must exceed the greater of 8% or $400. Conceding that their Home Equity Loan does not satisfy these requirements, they ask the court to "consider and take its own view on the terms of this statutory definition in 15 USC § 160[2](aa)." (Doc. 30–1 at 4.) As a matter of statutory interpretation, Plaintiffs ask the court to find that it would be absurd to construe HOEPA in a manner that leaves their residential mortgage without some form of truth-in-lending protections.

In light of the plain and unambiguous statutory requirements for HOEPA protection, the court cannot create protections which Congress has declined to enact through the guise of statutory interpretation. *See Montefiore Hosp. & Med. Ctr. v. NLRB,* 621 F.2d 510, 514 (2d Cir.1980) ("[c]onfronted with [a statute] whose language is crystal clear [, a court] cannot disregard the ordinary meaning of plain language[.]"). On the other hand, Plaintiffs may include their additional facts in their proposed Amended Complaint and may argue in favor of an extension of HOEPA-like protections to their particular situation, provided there is a nonfrivolous basis for doing so. *See* Fed.R.Civ.P. 11(b)(2) (every pleading contains a certification to the court that "the claims ... or other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"). Leave to amend to include Plaintiffs' proposed HOEPA claims as currently framed is thus

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

hereby DENIED WITHOUT PREJUDICE. However, leave to amend to include Plaintiffs' additional facts it is hereby GRANTED.

### B. Plaintiffs' RESPA Claim.

"The purpose of RESPA is to address 'certain abusive practices that have developed' in relation to the disclosure of information regarding the 'nature and costs of the [real estate] settlement process.' " *Flagg v. Yonkers Sav. & Loan Ass'n, FA,* 396 F.3d 178, 184 (2d Cir.2005) (quoting 12 U.S.C. § 2601). Plaintiffs' RESPA claim is premised on certain subsections of § 2605, which provide that a consumer may request information concerning his or her mortgage loan from a loan servicer by sending a qualified written request. In turn, the servicer must first acknowledge and then answer the request within twenty and sixty days, respectively. 12 U.S.C. §§ 2605(e)(1)(A) and (e)(2). In their proposed Amended Complaint, Plaintiffs allege that none of Defendant's "supposed 'acknowledgments' " to Plaintiffs' first three qualified communications comply with the requirements of § 2605(e)(1)(A), and that Defendant "never bothered to acknowledge" their remaining communications. (Doc. 30–13 at 24, citing Docs. 30–7, 30–8, 30–9, 30–11, 30–14.)

**\*4** Defendant does not oppose Plaintiffs' motion to amend their Complaint to add the RESPA claim, and Plaintiffs have asserted sufficient facts to support that claim. Provided Plaintiffs comply with those provisions of this Order governing compliance with the Local Rules and the Federal Rules of Civil Procedure, the court GRANTS Plaintiffs leave to amend their Complaint to add the RESPA claim.

### C. Plaintiffs' FCRA Claim.

FCRA "requires consumer reporting agencies 'to follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates.' " *White v. First Am. Registry, Inc.,* 378 F.Supp.2d 419, 420 (S.D.N.Y.2005) (quoting 15 U.S.C. § 1681e(b)). Section 1681s–2(a) imposes a duty on "furnishers of information" to "provide accurate information" to consumer reporting agencies. Plaintiffs allege in their proposed Amended Complaint that Defendant has reported their loan to credit reporting agencies as delinquent since May or June 2010 and, as a consequence, the credit limit on two of their credit cards has been reduced. They further allege that Defendant

has not informed them of the negative reports it has provided the credit reporting agencies. Plaintiffs allege that Defendant reported credit information regarding Plaintiffs that Defendant knows to be false.

Defendant asks the court to deny Plaintiffs leave to amend to file their proposed FCRA claim because FCRA does not provide a consumer with a private right of action against any person who willfully or negligently fails to comply with any requirement imposed by FCRA with respect to that consumer. 15 U.S.C. §§ 1681n(a), § 1681*o*(a). Instead, "[t]he provisions of law described in paragraphs (1) through (3) of subsection [1681s–2](c) of [FCRA] ... shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S .C. § 1681s–2(d). Numerous cases in the Second Circuit support that conclusion. *See, e.g., MacPherson v. JP Morgan Chase Bank, N.A.,* 2010 WL 3081278, at \*4 n. 6 (D.Conn. Aug. 5, 2010) ("[T]here is no private right of action for such a violation [under § 1681s–2](a) ], and individuals aggrieved by a violation based on this provision must rely on state or federal officials to sue on their behalf pursuant to 15 U.S.C. § 1681s(c)."); *White,* 378 F.Supp.2d at 423 ("[S]ubsection [1681s[–2](c) provides that there is no private damage remedy for violation[ ] of Section] 1681s [–2](a) ..., and subsection (d) then provides that only federal and state agencies may seek redress for violations of subsection[ ] (a)...."); *Trikas v. Universal Card Servs. Corp.,* 351 F.Supp.2d 37, 44 (E.D.N.Y.2005) ("First, there is no private right of action under section 1681s–2(a), which requires 'furnishers of information' to provide accurate information to consumer reporting agencies.") (citation omitted); *Kane v. Guaranty Residential Lending, Inc.,* 2005 WL 1153623, at \*4 (E.D.N.Y. May 16, 2005) ("While plaintiffs may not enforce the terms of § 1681s–2(a) through a private cause of action, they can report violations to the Federal Trade Commission, which is authorized to enforce the terms of Subsection[ ](a) under the FCRA.") (citation omitted).

**\*5** Consequently, because Plaintiffs' proposed Amended Complaint does not allege facts that state a claim under FCRA § 1681s–2(a), their proposed amendment is futile and must be DENIED. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002) ("An amendment to a pleading will be futile if a

Norton-Griffiths v. Wells Fargo Home Mortg., Not Reported in F.Supp.2d (2011)

2011 WL 884456

proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

**D. Plaintiffs' Alleged Non–Compliance.**
Defendant asks the court to deny Plaintiffs leave to amend because Plaintiffs have failed to comply with the court's deadline for doing so, failed to seek Defendant's consent, and have filed a thirty-six page proposed Amended Complaint that contains sixteen pages of "Memorandum & Argument" and a "Conclusion" consisting of five pages of questions to be answered in a jury trial which Defendant claims are both improper and impossible to admit or deny.

Although Plaintiffs are self-represented, they have demonstrated that they are familiar with this court's Local Rules and with the Federal Rules of Civil Procedure. In addition, the court's records reveal that Plaintiffs have filed several lawsuits in the District of Vermont and have been parties to others. Accordingly, Plaintiffs are not neophytes in the litigation process. In its January 7, 2011 Opinion and Order, the court directed Plaintiffs to comply with the court's deadline, its Local Rules, and the Federal Rules of Civil Procedure in filing a proposed Amended Complaint.

The court excuses Plaintiffs' one-day delay in complying with the court's deadline of twenty days, finding any delay *de minimus* and excused by Plaintiffs' efforts to comply with the court's deadline through electronic filings that failed for technical reasons.

As to the requirement that Plaintiffs seek Defendant's consent for their proposed amendments as required by Local Rule 7(a)(7), Plaintiffs argue that they were previously granted leave to amend their HOEPA claims, they had already announced their intention to file FCRA and RESPA claims, and that in light of the history between the parties, "Plaintiffs had no doubt they would be wasting their time, on this occasion, by even asking" and "had no wish to subject themselves to further displays of Counsel's incivility and animosity [.]" (Doc. 35 at 3–4.) Noncompliance with this court's Local Rules cannot be excused on the basis of anticipated incivility and the court's previous leave to amend clearly extended only to Plaintiffs' HOEPA claims. Plaintiffs must therefore first seek Defendant's consent to their proposed Amended Complaint before renewing their

request for leave to amend. This requirement is not a meaningless gesture. It allows the parties through the consent process to narrow the scope of any dispute regarding the proposed amendments prior to seeking judicial involvement regarding the same. Of course, it further follows that a defendant may withhold its consent only on a good faith basis.

**\*6** Finally, Defendant asks the court to deny Plaintiffs leave to amend the proposed Amended Complaint in the form in which it has been submitted because it contains legal arguments and questions that cannot be readily answered and which are beyond the scope of pleading authorized by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(d)(1) further states that "[e]ach allegation must be simple, concise, and direct." However, "[n]o technical form is required." *Id.* Plaintiffs' proposed Amended Complaint contains legal arguments and questions that cannot be answered by a "short and plain" admission, denial, or defense as contemplated by Fed.R.Civ.P. 8(b). Although Plaintiffs' proposed Amended Complaint is not deficient as to form, it contains surplusage that is likely to render it difficult to isolate those allegations which are contested from those allegations that are not. Plaintiffs are thus hereby ORDERED to omit from their proposed Amended Complaint any legal arguments and questions. In doing so, Plaintiffs shall not be deemed to have waived their right to present their legal arguments and their questions at a later time.

**III. Conclusion.**
The deadline for Plaintiffs' compliance with this court's January 7, 2011 Opinion and Order is hereby extended until April 4, 2011 so that Plaintiffs may comply with the Local Rules, the Federal Rules of Civil Procedure, and this Entry Order, as a condition precedent to seeking leave to amend their complaint.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 884456

**Norton-Griffiths v. Wells Fargo Home Mortg., Not Reported in F.Supp.2d (2011)**

2011 WL 884456

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 3757314
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Iain WALKER, Petitioner,
v.
Norene Ann WALKER, Respondent.

No. 11 C 2967.
|
Aug. 25, 2011.

**Attorneys and Law Firms**

Kathryn D. Farmer, Joshua G. Miller, Rosenfeld Hafron
Shapiro & Farmer, Chicago, IL, for Petitioner.

Herman Joseph Marino, Herman J. Marino PC, Chicago,
IL, for Respondent.

### *MEMORANDUM OPINION*

SAMUEL DER–YEGHIAYAN, District Judge.

 **\*1** This matter is before the court on Respondent's
motion to strike. For the reasons stated below, the motion
to strike is granted in part and denied in part.

### BACKGROUND

Petitioner and Respondent were allegedly married in
Chicago, Illinois in 1993 and are the parents of three minor
children (Minors). Petitioner is the Minors' father and
Respondent is the Minors' mother. In 1998, the family
allegedly moved to Australia. In June 2010, the family
traveled back to the United States allegedly with the
intent of returning to Australia. Petitioner contends that
Respondent refused to return to Australia and instead
allegedly abducted the Minors and commenced a divorce
action in Chicago, Illinois. Petitioner filed the amended
petition (Amended Petition) in this case pursuant to
the International Child Abduction Remedies Act, 42 U.S.C.
§ 11601 *et seq.,* seeking to have the Minors returned
to Australia. Respondent moves to strike the Amended

Petition and in the alternative to strike the portions that
contain legal conclusions or arguments.

### LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(f),
"[t]he court may strike from a pleading an insufficient
defense or any redundant, immaterial, impertinent, or
scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike
are generally disfavored since they usually "disserve the
interest of judicial economy." *Redwood v. Dobson,* 476
F.3d 462, 471 (7th Cir.2007); *See also Heller Financial,
Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294
(7th Cir.1989) (referring to the "general rule that motions
to strike are disfavored ... because motions to strike
potentially serve only to delay").

### DISCUSSION

Respondent contends that the Amended Petition
is improper because it contains legal conclusions,
arguments, and citations. Respondent argues that she
cannot properly file an answer to the Amended Petition
in accordance with Federal Rule of Civil Procedure
8(b) (Rule 8(b)) without having legal conclusions and
arguments unintentionally deemed to be admitted.
Respondent requests that the Amended Petition be
stricken in its entirety, and requests in the alternative
to have the legal conclusions and arguments stricken
from the Amended Petition. Respondent contends that
Petitioner included legal conclusions, arguments, and
citations in paragraph 9 (Paragraph 9), paragraph 12
(Paragraph 12), and paragraph 14 (Paragraph 14) of the
Amended Petition and in the footnotes in the Amended
Petition. (Reply 2).

While, a plaintiff cannot simply rely on legal conclusions
in pleading his case, and such legal conclusions are
not accepted as true at the motion to dismiss stage, a
plaintiff is not barred from pleading legal conclusions
in an initial pleading. *Ashcroft v. Iqbal,* —— U.S. ——,
——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009);
*Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1147
(7th Cir.2010) (stating that "a plaintiff is required to
plead more than bare legal conclusions to survive a
motion to dismiss" and that a plaintiff must plead "factual
material" and that the principle that allegations are

accepted as true is "inapplicable to legal conclusions). There is no explicit bar in the Federal Rules of Civil Procedure to the inclusion of legal conclusions in an initial pleading, and, in presenting allegations regarding subject matter jurisdiction it is entirely appropriate to state legal conclusions with supporting facts.

**\*2**  Pursuant to Rule 8(b) an opponent must respond to all allegations in a pleading and if legal conclusions included in an initial pleading can be responded to in accordance with Rule 8(b), an opposing party must respond to such allegations. *See, e g.., Pavlik v. FDIC, 2010 WL 3937621, at \*3 (N.D.Ill.2010)* (holding that even legal conclusions must be responded to in an answer); *State Farm Mut. Auto. Ins. Co. v. Riley,* 199 F.R.D. 276, 278 (N.D.Ill.2001) (referring to the "express Rule 8(b) requirement that *all* allegations must be responded to") (emphasis in original). However, a pleading is not the proper document in which to present extensive legal arguments that belong in a legal memorandum. Legal arguments are not appropriate in an initial pleading if they are such that they "cannot be answered by a 'short and plain' admission, denial, or defense as contemplated by Fed.R.Civ.P. 8(b)." *Norton–Griffiths v. Wells Fargo Home Mortg.,* 2011 WL 884456, at \*6 (D.Vt.2011).

In Paragraphs 9 and 12, Petitioner has alleged certain facts and a few legal conclusions to which Respondent should be able to respond in accordance with Rule 8(b). In Paragraph 14 and the footnotes in the Amended Petition, Petitioner has presented extensive legal citations and legal arguments, which are not appropriate for an initial pleading, and which cannot be properly responded to under Rule 8(b). Therefore, the court strikes Paragraph 14 and the footnotes from the Amended Petition.

## CONCLUSION

Based on the foregoing analysis, Respondent's motion to strike Paragraphs 9 and 12 is denied and the motion to strike Paragraph 14 and the footnotes in the Amended Petition is granted. Respondent is given until September 8, 2011 to answer the remaining allegations in the Amended Petition and, in addition, to submit a memorandum, not to exceed 25 pages, in support of her position why the Amended Petition should not be granted. The Petitioner is given until September 15, 2011 to submit a memorandum, not to exceed 25 pages, in support of his position why the Amended Petition should be granted. The next status hearing set for September 29, 2011, remains unchanged.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3757314

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4461159
Only the Westlaw citation is currently available.
United States District Court, D. Hawai'i.

Michelle WALKER–COOK and
Genevieve Marie Walker, Plaintiffs,

v.

INTEGRATED HEALTH
RESOURCES, LLC, et al., Defendants.

Civil No. 12–00146 ACK–RLP.
|
Aug. 10, 2012.

**Attorneys and Law Firms**

Michelle Walker–Cook, Ewa Beach, HI, pro se.

Genevieve Marie Walker Ewa Beach, HI, pro se.

Brett R. Tobin, Corlis J. Chang, Marissa Lei Lin Owens,
Honolulu, HI, for Defendants.

*FINDINGS AND RECOMMENDATIONS
TO GRANT IN PART AND DENY IN PART
PLAINTIFF MICHELLE WALKER–COOK'S
MOTION TO STRIKE DEFENDANTS'
ANSWER AND CITED DEFENSES* [1]

[1]    Within fourteen days after a party is served with
       a copy of the Findings and Recommendation,
       that party may, pursuant to 28 U.S.C. § 636(b)
       (1)(B), file written objections in the United States
       District Court. A party must file any objections
       within the fourteen-day period allowed if that party
       wants to have appellate review of the Findings and
       Recommendation. If no objections are filed, no
       appellate review will be allowed.

RICHARD L. PUGLISI, United States Magistrate
Judge.

**\*1** Before the Court is Plaintiff Michelle Walker–
Cook's Motion to Strike Defendants' Answer and Cited
Defenses, filed on April 26, 2012 ("Motion"). ECF No. 19.
Defendants filed their Opposition on May 10, 2012. ECF
No. 29. On May 22, 2012, the Court granted Plaintiffs'
request to extend the time for Plaintiff Walker–Cook to

file a reply to the Motion. *See* ECF No. 36. Plaintiff
Walker–Cook filed her Reply on August 6, 2012. ECF No.
53. After careful review of the papers filed in this action
and the applicable legal authority, the Court FINDS
AND RECOMMENDS that the district court GRANT
IN PART AND DENY IN PART the Motion.

## BACKGROUND

This action arises from Plaintiff Genevieve Marie Walker's
stay as a resident of the Leeward Integrated Health
Services Nursing Home, now known as Puuwai O
Makaha Nursing Home ("Nursing Home"), starting in
April 2011. Compl. ¶ 30. Plaintiff Walker–Cook held a
power of attorney for Plaintiff Walker, her mother, while
Plaintiff Walker was a resident in the Nursing Home.
*Id.* Plaintiffs allege that Defendants submitted multiple
bills for Plaintiff Walker's stay at the Nursing Home that
contained false excessive charges and that Defendants
received payment for those bills. *Id.* ¶¶ 48–98. Plaintiffs
assert claims against Defendants for violations of the
Racketeer Influenced and Corrupt Organizations Act
("RICO"), fraud, and intentional infliction of emotional
distress. *Id.* ¶¶ 111–166. Defendants timely answered the
Complaint on April 5, 2012. ECF No. 15. Plaintiffs filed
the present Motion on April 26, 2012. ECF No. 19. On
May 10, 2012, Defendants filed a motion to dismiss the
Complaint based on Plaintiffs' alleged failure to comply
with the Local Rules regarding complaints alleging RICO
violations. *See* ECF No. 29. The motion to dismiss is set
for hearing before Senior District Judge Alan C. Kay on
October 1, 2012. ECF No. 30.

## ANALYSIS

Rule 12(f) of the Federal Rules of Civil Procedure
provides that the court "may strike from a pleading
an insufficient defense or any redundant, immaterial,
impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).
A defense is insufficiently pleaded if it fails to give
the plaintiff fair notice of the nature of the defense.
*Wyshak v. City Nat'l Bank,* 607 F.2d 824, 827 (9th
Cir.1979). "Redundant matter is defined as allegations
that constitute a needless repetition of other averments or
are foreign to the issue." *Sliger v. Prospect Mortg., LLC,*
789 F.Supp.2d 1212, 1216 (E.D.Cal.2011) (quotations
and citations omitted). "Immaterial matter is that which

**Walker-Cook v. Integrated Health Resources, LLC, Not Reported in F.Supp.2d (2012)**

2012 WL 4461159

has no essential or important relationship to the claim for relief or the defenses being plead." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) (quotations and citations omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Finally, "[s]candalous matter improperly casts a derogatory light on someone, most typically on a party to the action." *Germaine Music v. Universal Songs of Polygram,* 275 F.Supp.2d 1288, 1300 (D .Nev.2003) (quotations and citations omitted).

**\*2** The purpose of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir.2010) (quoting *Fantasy,* 984 F.2d at 1527). Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Kohler v. Islands Rests., LP,* 280 F.R.D. 560, 563–64 (S.D.Cal.2012) (quoting *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1152 (C.D.Cal.2003)). As a result, "[m]atter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Clark v. State Farm Mut. Auto. Ins. Co.,* 231 F.R.D. 405, 406 (C.D.Cal.2005) (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 217 F.Supp.2d 1028, 1033 (C.D.Cal.2002)).

Plaintiff Walker–Cook moves to strike six portions of Defendants' Answer: (1) Defendants' first defense (Mot. at 18–19); (2) Paragraphs 1, 2, and 3 of Defendants' Answer (Mot. at 17–18, 19); (3) Defendants' third through ninth defenses related to Plaintiffs' RICO claims (Mot. at 17, 18–20); (4) Defendants' thirteenth, fourteenth, and fifteenth defenses related to defamation (Mot. at 5–6); (5) Defendants' "restyling" of the named Defendants in their Answer (Mot. at 13–14); and (6) Defendants' request for attorneys' fees (Mot. at 15). Although

Plaintiff Walker–Cook lists all of Defendants' defenses in her Motion (*see* Mot. at 15), she only makes arguments in support of her request to strike these six specific portions of the Answer. Mot. at 15. The Court addresses each contested portion of the Answer in turn.

**1. Defendants' First Defense**

Plaintiff Walker–Cook asks the Court to strike Defendants' first defense, which states that the Complaint fails to state a claim upon which relief can be granted. *See* Mot. at 18–19. Plaintiff Walker–Cook asserts that this "affirmative defense" is insufficient because it does not meet the standards articulated by the Supreme Court in *Bell Atlantic Corporation v. Twombly,* 550 U .S. 554 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Mot. at 4, 11, 15–16; Reply at 6–7.

As an initial matter, Defendants' first defense is not an affirmative defense. Defendants' first defense expressly states that Plaintiffs' allegations in the Complaint fail to state a claim. "A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S.Cal. Edison Co.,* 302 F.3d 1080, 1088 (9th Cir.2002) (citing *Flav–O–Rich v. Rawson Food Serv., Inc.,* 846 F.2d 1343, 1349 (11th Cir.1988)). Defenses that negate an element of the plaintiffs' prima facie case "are excluded from the definition of affirmative defense in Federal Rule of Civil Procedure 8(c)." *Flav–O–Rich,* 846 F.2d at 1349 (citing *Ford Motor Co. v. Trans. Indem. Co.,* 795 F.2d 538, 546 (6th Cir.1986)).

**\*3** Even assuming that Defendants' first defense is properly characterized as an affirmative defense, courts in this district have declined to extend the pleading standards in *Twombly* and *Iqbal* to affirmative defenses. *See, e.g., Cape Flattery Ltd. v. Titan Maritime LLC,* Civil No. 08–00482 JMS/KSC, 2012 WL 3113168 (D.Haw. July 31, 2012). As the court stated, "the Ninth Circuit has described the pleading standard for affirmative defenses as a 'fair notice' standard, *Wyshak v. City Nat'l Bank,* 607 F.2d 824, 827 (9th Cir.1979), and has continued to apply this standard since *Twombly* and *Iqbal." Id.* at \*10 (citing *Simmons v. Navajo Cnty., Ariz.,* 609 F.3d 1011, 1023 (9th Cir.2010)).

Regardless of how Defendants' first defense is characterized, there is no basis to strike it under Rule 12(f). As noted above, a defense is insufficient if it fails to give the plaintiff fair notice of the nature of the defense. *See Wyshak,* 607 F.2d at 827. Plaintiff Walker–Cook has not demonstrated that Defendants' first defense is insufficient under this standard. Plaintiff Walker–Cook mistakenly states that Rule 12(b) requires an answer presenting this defense to include "a short, concise statement of the grounds on which such defense is

based." *See* Mot. at 18 (purporting to quote Rule 12(b)). However, no such requirement appears in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12. Rather, Rule 8(b) provides that a defendant must "state in short and plain terms its defenses to each claim asserted against it" in its answer. Fed.R.Civ.P. 8(b)(1)(A). Defendants' Answer contains specific responses to the allegations in the Complaint and provides specific defenses to the six counts asserted by Plaintiffs. *See* Answer ¶¶ 67–94, 95–103. The Court will not address the substantive arguments made by the parties regarding the sufficiency of claims alleged in the Complaint. *See* Opp. at 6–7; Reply at 3–6. However, the Court finds that Defendants' first defense is sufficient for purposes of surviving a Rule 12(f) motion to strike. Accordingly, the Court FINDS and RECOMMENDS that the district court DENY Plaintiff Walker-Cook's request to strike Defendants' first defense.

**2. Paragraph 2 of Defendants' Answer**

Second, Plaintiff Walker–Cook asks the Court to strike paragraph two of Defendants' Answer, which responds to paragraphs 1, 2, and 3 of the Complaint. Paragraphs 1, 2, and 3 of the Complaint provide:

1. This is a federal question case. This Court has jurisdiction of the claims herein pursuant to 18 U.S.C.A. § 1964(a), (c), and 28 U .S.C.A. § 1331. This Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 USC § 1367 as these claims are intricately related to Plaintiffs' RICO claim and form part of the same case or controversy.

2. This civil action arises under the laws of the United States. Plaintiffs are alleging violations of their rights under Title IX of the Organized Crime Control Act of 1970, as amended, 18 U.S.C.A. §§ 1961 et seq. ("RICO"), 1962(a),(b),(c) and arising under the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA")

**\*4** 3. Venue is proper in the U.S. District Court for the District of Hawaii pursuant to applicable law including, but not limited to, 18 U.S.C. § 1965(a), (b),(c) and 28 U.S.C. § 1391(b), (c)....

Compl. ¶¶ 1–3. In responding to these paragraphs, Defendants "state that the statutes speak for themselves" and that "these allegations call for legal conclusions to which no response is required." Answer at 3. Plaintiff Walker–Cook argues that "Defendants have or should

have knowledge as to the information necessary to form a belief as to the allegations of Paragraphs 1 and 3" of the Complaint if "Defendants[ ] had simply picked up and read the Plaintiff's [sic] complaint, they would have clearly understood" the nature of the allegations in paragraphs 1, 2, and 3. Mot. at 18.

There is no basis to strike paragraph 2 of the Answer under Rule 12(f). These responses are not redundant, immaterial, impertinent, or scandalous. Taking the Answer as a whole, Defendants have made specific admissions and denials of the allegations in each paragraph in addition to their statements regarding the statutes and legal conclusions alleged by Plaintiffs in paragraph 1, 2, and 3 of the Complaint. In these circumstances, there is no basis to strike paragraph 2 of Defendants' Answer. *See, e.g., Guifu Li v. A Perfect Franchise, Inc.,* No. 5:10–CV–01189–LHK, 2011 WL 2971046, at \*3 (N.D.Cal. July 21, 2011) (denying plaintiffs' motion to strike defendants' answer, which stated that the complaint contained legal conclusions that required no answer, because the defendant also denied specific factual allegations elsewhere in the answer); *Sykes v. Cigna Life Ins. Co.,* No. C 10–01126 CRB, 2010 WL 3324261, at \*3 (N.D.Cal. Aug. 23, 2010) (similarly denying plaintiff's motion to strike defendant's responses in its answer that "the documents speak for themselves" and that denied plaintiff's legal conclusions). The Court FINDS AND RECOMMENDS that the district court DENY Plaintiff Walker–Cook's request to strike paragraph 2 of Defendants' Answer.

**3. Defendants' Third Through Ninth Defenses Related to Plaintiffs' RICO claim**

Plaintiff Walker–Cook requests that the Court strike Defendants' third through ninth "affirmative defenses." Mot. at 17, 18–20. Each of these defenses state that Plaintiffs have failed to sufficiently allege an element of the prima facie case for stating a RICO violation. *See* Answer ¶¶ 95–103. As discussed above, defenses that challenge the prima facie elements of a plaintiffs' claims are not affirmative defenses. *Zivkovic,* 302 F.3d at 1088. Regardless of their characterization, these defenses are not insufficient. Each of these defenses address a particular element of Plaintiffs' RICO claims and state that Plaintiffs have failed to meet that requirement. These defenses provide fair notice to Plaintiffs of the defense asserted. *See Wyshack,* 607 F.2d at 827. Accordingly, the Court FINDS and RECOMMENDS that the district

2012 WL 4461159

court DENY Plaintiff Walker–Cook's request to strike Defendants' third through ninth defenses.

### 4. Defendants' Thirteenth, Fourteenth, and Fifteenth Defenses Related to Defamation

**\*5** Plaintiff Walker–Cook requests that the Court strike Defendants' defenses related to defamation. Mot. at 5–6. Plaintiff Walker–Cook asserts that these defenses are immaterial because "this is not a cause of action that pleads defamation and/or libel and/or slander." Mot. at 6. Although Plaintiffs may not have intended to assert a claim for defamation against Defendants, paragraph 108 of the Complaint contains statements allegedly made by Defendant Barton and asserts that these statements are "actionable as defamation." Compl. ¶ 108. Because Plaintiffs' Complaint contains allegations regarding defamation, Defendants' defenses regarding defamation are not immaterial. Accordingly, the Court FINDS AND RECOMMENDS that the district court DENY Plaintiff Walker–Cook's request to strike Defendants' thirteenth, fourteenth, and fifteenth defenses.

### 5. Defendants' "Restyling" of the Named Defendants

Plaintiff Walker–Cook requests that the Court strike Defendants' "restyling" of the named Defendants in their Answer. Mot. at 13–14. Plaintiffs name eight defendants in their Complaint: Integrated Health Resources, LLC; Leeward Integrated Health Services, Inc.; Ohana Pacific Management Company, Inc.; Puuwai O Makaha Nursing Home; Randall Hata; Therese Campos; Susan Hirao; and Jackie Barton. Compl. at 1–2. In answering the Complaint, Defendants answered on behalf of seven of the named defendants and on behalf of "Leeward Integrated Health Services *sued erroneously herein as* Leeward Integrated Health Services, Inc." Answer at 2. [2]

[2] The Court notes that, contrary to Plaintiffs' assertions, Defendants do not change the caption of this case in their Answer. The caption reflects the same eight defendants named by Plaintiffs in their Complaint. *See* Answer at 1–2. Additionally, no change in the parties' names is reflected on the docket.

In their Opposition, Defendants assert that they identified the proper party by answering on behalf of Leeward Integrated Health Services ("LIHS"). Opp. at 9. Defendants argue that Plaintiffs named "the wrong party" when they sued Leeward Integrated Health

Services, Inc. ("LIHS, Inc.") *Id.* Defendants state that LIHS, Inc. is an unrelated legal entity from another defendant, Integrated Health Resources LLC. Opp. at 8–9. However, Defendants do not explain the relationship, if any, between LIHS, Inc. and LIHS. *See* Opp. at 8–9. Defendants assert that LIHS, Inc. originally built and operated the Nursing

Home, but has not exercised control over the operation of the Nursing Home since 2003, and therefore is not a "proper party" to this litigation. Opp. at 9.

The Court finds that Defendants' unilateral substitution of LIHS for LIHS, Inc. is immaterial and impertinent to the defenses being pleaded and should be stricken from Defendants' Answer. Defendants have improperly attempted to substitute LIHS for a separate, unrelated legal entity. The Court recognizes that it may be appropriate in certain circumstances to answer a complaint on behalf of a defendant "sued erroneously" under another name if the plaintiff misspelled the defendant's name or mistakenly named a closely related entity. However, here there appear to be two separate, unrelated legal entities involved: LIHS and LIHS, Inc. Plaintiffs chose to name LIHS, Inc. in their lawsuit. Although Defendants may disagree with that choice, Plaintiffs are entitled to proceed against the defendants that they choose. If Plaintiffs have named the "wrong party," as Defendants' argue, such issues are properly resolved through an appropriate motion and not through the unilateral substitution of a defendant in the Answer. Allowing Defendants' Answer to proceed on behalf of LIHS sued erroneously as LIHS, Inc. would potentially prejudice Plaintiffs and confuse the issues regarding the proper parties to this litigation. *See Fantasy,* 984 F.2d at 1527–28. The Court FINDS AND RECOMMENDS that the district court GRANT Plaintiff Walker–Cook's request to strike Defendants' Answer to the extent the Answer purports to respond to the Complaint on behalf of "Leeward Integrated Health Services *sued erroneously herein as* Leeward Integrated Health Services, Inc."

### 6. Defendants' request for attorneys' fees

**\*6** Plaintiff Walker–Cook asks the Court to strike Defendants' request for attorneys' fees. Mot. at 15. Defendants' Answer contains a prayer for relief, which includes a request that the court award Defendants their costs, expenses, and attorneys' fee. *See* Answer at 26. Plaintiff Walker–Cook argues that Defendants'

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:18-cv-00068 Document 336-1 Filed on 11/13/18 in TXSD Page 34 of 40
Walker-Cook v. Integrated Health Resources, LLC, Not Reported in F.Supp.2d (2012)

2012 WL 4461159

request for attorneys' fees fails to comply with Rule 8, is a conclusory legal assertion, and lacks factual support. Mot. at 17. Under Rule 12(f), the court's inquiry is limited to whether the statement constitutes either an insufficient defense, or a redundant, immaterial, impertinent, or scandalous matter. Plaintiff Walker–Cook does not explain how the request for attorneys' fees fits into any of these categories. To the extent Plaintiff Walker–Cook is arguing that Defendants are not entitled to attorneys' fees as a matter of law, Rule 12(f) is not the appropriate vehicle. *Whittlestone,* 618 F.3d at 971 ("Rule 12(f) does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law."). The Court FINDS AND RECOMMENDS that the district court DENY Plaintiff Walker–Cook's request to strike Defendants' request for attorneys' fees.

## CONCLUSION

The Court FINDS AND RECOMMENDS that the district court GRANT IN PART AND DENY IN PART Plaintiff Walker–Cook's Motion as follows:

1. DENY Plaintiff Walker–Cook's request to strike Defendants' first defense.

2. DENY Plaintiff Walker–Cook's request to strike paragraph 2 of Defendants' Answer.

3. DENY Plaintiff Walker–Cook's request to strike Defendants' third through ninth defenses.

4. DENY Plaintiff Walker–Cook's request to strike Defendants' thirteenth, fourteenth, and fifteenth defenses.

5. GRANT Plaintiff Walker–Cook's request to strike Defendants' Answer to the extent the Answer purports to respond to the Complaint on behalf of "Leeward Integrated Health Services *sued erroneously herein as* Leeward Integrated Health Services, Inc."

6. DENY Plaintiff Walker–Cook's request to strike Defendants' request for attorneys' fees.

7. GRANT Defendants leave to file an amended answer in conformity with this decision within 20 days of the district court's adoption of this Findings and Recommendation.

IT IS SO FOUND AND RECOMMENDED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4461159

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6504685
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Western Division.

Jimmie L. WASHINGTON, Plaintiff,
v.
C/O John McCOY, Defendant.

No. 1:12–cv–628.
|
Dec. 11, 2013.

**Attorneys and Law Firms**

Jimmie L. Washington, Lucasville, OH, pro se.

Thomas Clarke Miller, Ohio Attorney General's Office, Columbus, OH, for Defendant.

**ORDER AND REPORT AND RECOMMENDATION**

KAREN L. LITKOVITZ, United States Magistrate Judge.

**\*1** Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF) proceeding pro se, brings this prisoner civil rights action under 42 U.S.C. § 1983 against defendant C/O John McCoy (McCoy) alleging McCoy used excessive force against him in violation of his constitutional rights. This matter is before the Court on: (1) plaintiff's motions to strike defendant's answer (Docs.42, 46) and defendant's response in opposition (Doc. 44); (2) plaintiff's motion for a temporary restraining order (Doc. 47); (3) plaintiff's motion to withdraw his motion for a temporary restraining order and motion to strike the withdrawal motion (Docs.49, 50); (4) plaintiff's motions to take deposition upon written questions (Docs.51, 52); (5) plaintiff's motion to transfer (Doc. 53); and (6) plaintiff's motion for an order to show cause. (Doc. 55).

**I. Plaintiff's Motions to Strike (Docs.42, 46)**
Plaintiff moves to strike defendant John McCoy's answer to plaintiff's complaint (Doc. 37) under Federal Rule of Civil Procedure 12(f), asserting that it is scandalous as it fails to admit or deny the complaint's allegations and

is redundant as it is primarily comprised of defendant McCoy's asserted defenses rather than responses to plaintiff's factual allegations. (Doc. 42). Plaintiff further asserts striking the answer is necessary because defendant McCoy failed to timely serve the answer on him. (Doc. 44).

In opposition, defendant McCoy contends that the pleading is not subject to dismissal under Fed.R.Civ.P. 12(f) as there is no legal support for plaintiff's conclusory assertions that it is scandalous and redundant. Further, defendant McCoy notes that striking portions of a pleading is a drastic and disfavored remedy. Defendant thus requests that plaintiff's motions be denied. (Doc. 44).

Rule 12(f) permits courts to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). However, motions to strike are generally disfavored and should be used sparingly and only in cases where the material at issue has "no possible relation to the controversy." *Anderson v. U.S.,* 39 F. App'x 132, 135 (6th Cir.2002) (quoting *Brown v. Williamson Tobacco Corp. v. U.S.,* 201 F.2d 819, 822 (6th Cir.1953)). Nevertheless, it is well-established that district courts have inherent power to control their own docket; this power includes "determining whether to strike documents or portions of documents." *Getachew v. Central Ohio Transit Authority,* No. 2:11–cv–860, 2013 WL 819733, at *2 (S.D.Ohio Mar.5, 2013) (citing *Anthony v. BRT Auto. Sealing Sys.,* 339 F.3d 506, 516 (6th Cir.2003)); *see also In re Prevot,* 59 F.3d 556, 566 (6th Cir.1995).

Plaintiff has provided no support for his contention that defendant McCoy's pleading is either scandalous or redundant as a matter of law. Rather, plaintiff argues that the answer is "scandalous" because "it never directly denies the allegation neither does it give admittance thereby being scandalous." (Doc. 42 at 1). A review of defendant McCoy's pleading demonstrates, contrary to plaintiff's assertion, that defendant McCoy admitted and denied where he was able to based upon his knowledge and information. *See* Doc. 37, ¶¶ 1–4, 6–7, 13, 17. As to the remaining allegations, defendant McCoy answers that he is without sufficient knowledge and information to either admit or deny the allegation or that the allegation contains legal conclusions that do not require a response. *Id.* at ¶¶ 5, 8–12, 14–16. As a review of the answer demonstrates that defendant McCoy responded to plaintiff's allegations as required by Federal Rule of Civil Procedure 8(b), the Court finds that plaintiff's characterization of the pleading

as "scandalous" is without merit and his motion to strike in this regard is denied.

**\*2** Likewise, plaintiff has provided no legal authority or support for his assertion that defendant McCoy's answer is "redundant" because "[i]t set forth defenses to cover all grounds instead of the issue at hand ...." (Doc. 42 at 1). Federal Rule of Civil Procedure 8 provides that a party responding to a pleading must set forth "in short and plain terms its defenses to each claim asserted against it...." Fed.R.Civ.P. 8(b)(1)(A). In light of this requirement, the Court finds that defendant McCoy's pleading appropriately sets forth both general and specific defenses to plaintiff's allegations against him. Plaintiff's motion to strike the pleading as "redundant" is thus denied.

To the extent that plaintiff asserts the pleading should be stricken for untimeliness, his motion is not well-taken. Plaintiff's complaint was served upon defendant McCoy on July 19, 2013. (Doc. 39). Consequently, defendant McCoy's answer was due by August 9, 2013. Fed.R.Civ.P. 12(A)(i). Defendant McCoy filed his answer with the Court on August 8, 2013 (Doc. 37) and plaintiff admits he was served on August 9, 2013. (Doc. 46 at 2). Plaintiff's assertion that the answer was to be filed and served upon him by August 8, 2013, is without any support in the record.

For the above reasons, plaintiff's motions to strike (Docs. 42, 46) are **DENIED**.

### II. Motions Related to Plaintiff's Motion for a Restraining Order (Docs. 47, 49, 50)

Plaintiff filed an "Order for Temporary Restraining Order" which the Court construes as plaintiff's motion for a restraining order, wherein plaintiff requests that the Court enter an order requiring plaintiff's transfer to another institution and that defendant McCoy and other employees at the SOCF be "restrained" from plaintiff. (Doc. 47). Plaintiff subsequently moved to withdraw his motion, representing that he is no longer in fear for his safety from defendant McCoy. (Doc. 49). The following day, plaintiff filed a "Motion to Strike His Motion to Strike Temporary Protection Order and to Proceed with his Request for an Order for Protection Order." (Doc. 50). [1] This motion was accompanied by an affidavit wherein plaintiff represents that unknown SOCF

employees harassed and threatened him. (Doc. 50 at 2). Plaintiff's affidavit includes a request for a transfer to another correctional institution. (*Id.*). Plaintiff's motions for injunctive relief are not well-taken.

---

[1]   While plaintiff's motions are titled "Motion to Strike," the Court construes them as motions to withdraw.

In determining whether to issue an a preliminary injunction or temporary restraining order, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

*Northeast Ohio Coalition for Homeless and Srv. Employees Inter. Union, Local 1199 v. Blackwell,* 467 F.3d 999, 1009 (6th Cir.2006); *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir.2000); *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341, 347 (6th Cir.1998); *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98, 103 n. 3 (6th Cir.1991). The four factors are not prerequisites, but must be balanced as part of a decision to grant or deny injunctive relief. *Blackwell,* 467 F.3d at 1009; *Leary,* 228 F.3d at 736; *Performance Unlimited v. Quester Publishers, Inc.,* 52 F.3d 1373, 1381 (6th Cir.1995).

**\*3** Plaintiff has presented no evidence demonstrating that he has a substantial likelihood of success on the merits of his claim or that he will suffer irreparable harm should his motions be denied. [2] Plaintiff's declarations under 28 U.S.C. § 1746 do not contain facts demonstrating that plaintiff is entitled to a restraining order or transfer from the SOCF. Moreover, plaintiff's motions relate to alleged retaliatory acts which have already occurred. "[A] temporary restraining order is not the proper mechanism for remedying past violations yet to be proven." *Brown v. Voorhies,* No. 1:07cv463, 2009 WL 4331157, at \*1 (S.D.Ohio Nov.30, 2009) (Beckwith J.) (citing *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226 (6th

Cir.1996)). This is precisely the remedy plaintiff seeks —a restraining order to address alleged constitutional violations which have already taken place. As the relief requested is improper given the instant circumstances and as the evidence submitted by plaintiff fails to demonstrate either that he has a substantial likelihood of success based on the merits of his constitutional claim or that he will suffer irreparable harm absent a Court order, plaintiff's motions for restraining orders (Docs.47, 50) should be **DENIED.** Plaintiff's motion to withdraw his motion for a restraining order (Doc. 49) is **DENIED** as moot.

2      The undersigned notes that plaintiff has been put on notice previously as to the necessary showing for obtaining injunctive relief. *See* Doc. 23 at 3–5; Doc. 32 at 2–3.

### III. Plaintiff's Motions to Take Depositions Upon Written Questions (Docs.51, 52)

Plaintiff moves to take the depositions of defendant McCoy and witness Larry Green by written question pursuant to Federal Rule of Civil Procedure 31. (Docs.51, 52). Plaintiff has submitted the questions he seeks to present to defendant McCoy (Doc. 51 at 2–4) and Mr. Green. (Doc. 52 at 2–4). Attached to plaintiff's motion for summary judgment filed on November 21, 2013 (Doc. 54), are the sworn answers by defendant McCoy and witness Green to the questions propounded by plaintiff. Therefore, plaintiff's motions (Docs.51, 52) are **DENIED** as moot.

### IV. Plaintiff's Motion to Transfer (Doc. 53)

Plaintiff moves for a transfer from SOCF to the Ohio State Penitentiary on the ground that an unknown correctional officer at SOCF recently sprayed him with pepper spray while he was behind "2 slammer cell doors." (Doc. 53). Plaintiff's motion to transfer seeks both a court order restraining SOCF employees and a transfer to another correctional facility. Plaintiff has presented no evidence in support of his motion. Accordingly, for the reasons stated above in connection with plaintiff's motion for a restraining order, plaintiff's motion to transfer (Doc. 53) should be **DENIED.**

### V. Plaintiff's Motion for Show Cause Order (Doc. 55)

Plaintiff has filed an "Order to Show Cause for An (sic) Temporary Restraining Order," which is styled as a proposed order and a supporting memorandum,

which the Court will construe a motion for injunctive relief. *See* Doc. 55. Plaintiff seeks entry of an order enjoining defendant and others from harassing and retaliating against plaintiff and from withholding his legal work; plaintiff also seeks transfer to another correctional facility, namely the Ohio State Penitentiary. (*Id.* at 1). Plaintiff argues that a temporary restraining order is appropriate because: (1) there is a strong likelihood that he will be successful at trial in showing a violation of his constitutional rights based on the pleadings and discovery in the instant case; (2) based on his affidavit, there is evidence that plaintiff will suffer irreparable harm absent entry of the order; (3) plaintiff will suffer psychological and physical injury if SOCF officials are not restrained from harassing him; and (4) the public interest is served by entry of the order as the transfer to the Ohio State Penitentiary will not result in a reduction of plaintiff's current security level or status. (Doc. 55 at 4). Plaintiff supports his motion with an affidavit wherein he attests that "C/O Fry" called him a "snitch" and other correctional officers threatened plaintiff for filing the instant lawsuit against defendant McCoy. (*Id.* at 6). Plaintiff further supports his motion with the declaration of fellow SOCF inmate Marc. A. Crockett, who declares that he overheard the above name-calling and threats. (*Id.* at 7).

**\*4** This Court finds that plaintiff has not alleged facts sufficient to warrant an injunction. Plaintiff's requests to enjoin non-party SOCF employees should be denied for several reasons. First, the affidavits filed by plaintiff are insufficient for purposes of granting his request for injunctive relief as both rely on inadmissible hearsay. Second, the claims of threats and harassment by non-parties raised in the motion are unrelated to the excessive use of force claim in the complaint. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 542 (6th Cir.2007) (quoting *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). Plaintiff has requested the Court to enjoin individuals who are not parties to this lawsuit and he seeks relief that is unrelated to the excessive use of force claim in his complaint. *See Atakpu v. Lawson,* No. 1:05–cv–524, 2006 WL 3803193, at \*1–2 (S.D.Ohio Nov. 28, 2006) (Spiegel, J.) (prisoner's motion for injunctive relief for harassment and retaliation denied as unrelated to prisoner's complaint, which alleged

denial of adequate medical care). Plaintiff cannot use his standing in this lawsuit to litigate unrelated claims against non-parties. Plaintiff's assertions do not support the issuance of an injunction in this matter.

For these reasons, plaintiff's motion for a temporary restraining order (Doc. 55) should be **DENIED.**

### VI. Conclusion
For the reasons stated herein, **IT IS RECOMMENDED THAT** plaintiff's motions for temporary restraining orders (Docs.47, 50, 53, 55) should be **DENIED.**

Further, **IT IS ORDERED THAT** plaintiff's motions to strike defendants' answer (Docs.42, 46) are **DENIED;** plaintiff's motion to withdraw his motion for a temporary restraining order (Doc. 49) is **DENIED** as moot; and plaintiff's motions to take depositions upon written questions (Docs.51, 52) are **DENIED** as moot. In the event plaintiff is able to proceed with the depositions upon written questions, plaintiff is **ORDERED** to notify the Court upon submitting his notices of depositions.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6504685

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2302117

2013 WL 2302117
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

David WATTIE–BEY, Plaintiff,
v.
STEPHENS AND MICHAELS
ASSOCIATES, Defendant.

Civil No. 1:13–CV–396.
|
May 24, 2013.

**Attorneys and Law Firms**

David Wattie–Bey, Harrisburg, PA, pro se.

Kenneth A. Wise, Graybill & Wise, P.C., Harrisburg, PA, for Defendant.

*MEMORANDUM ORDER*

MARTIN C. CARLSON, United States Magistrate Judge.

 **\*1** This is a *pro se* consumer protection action, brought by David Wattie–Bey. The plaintiff has filed a motion to strike in this matter, (Doc. 14.), which complains that the defendant's answer contains certain items of surplusage, such as demands for proof of the plaintiff's allegations, a prayer for recovery of attorney's fees by the defendant, and averments that certain statements made by the plaintiff in his complaint are legal conclusions, as to which no response is required. (*Id.*)

At the case management conference held in this matter, the parties addressed this motion, and the defense counsel agreed that the demands for proof set forth in the answer were surplusage. The court also explained to the plaintiff that the answer's averments that certain statements made by the plaintiff in his complaint are legal conclusions, as to which no response is required, is not a disparagement of the complaint but simply an acknowledgment that the legal claims in the complaint do not require a response.

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings and provides, in part, that:

 **(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R.Civ. P. 12(f).

While rulings on motions to strike rest in the sound discretion of the court, *Von Bulow v. Von Bulow,* 657 F.Supp. 1134, 1146 (S.D.N.Y.1987), that discretion is guided by certain basic principles. Because striking a pleading is viewed as a drastic remedy, such motions are viewed with disfavor and are infrequently granted." *Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir.1977) (citing 5 *Wright & Miller, Federal Practice and Procedure. Civil* § 1380 at 783 (1969)). *See also Resolution Trust Corp. v. Gibson,* 829 F.Supp. 1103, 1106 (W.D.Mo.1993); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.37[1] (3d ed.2000)." *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir.2000). In practice, courts should exercise this discretion and strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. *Ruby v. Davis Foods, Inc.,* 269 F.3d 818, 820 (7th Cir.2001).

In this case, upon consideration of the motion to strike, and given the defendant's acknowledgment that the answer's demand for proof is surplusage, the motion will be GRANTED, in part, and these averments will be treated as surplusage, with the understanding that the plaintiff must ultimately prove what is alleged in the complaint. Therefore, for the foregoing reasons, the plaintiff's motion to strike (Doc. 14.), is GRANTED, in part.

 **\*2** So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2302117

**WESTLAW**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.