# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS,
### BROWNSVILLE DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| Defendants, | ) |
| KARLA PEREZ, *et al.*, | ) |
| Defendants-Intervenors. | ) |

Case No. 1:18-cv-0068-ASH

### MEMORANDUM OF LAW OF CONGRESSMEN STEVE KING *ET AL.* AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS-INTERVENORS' MOTION TO DISMISS

Christopher J. Hajec
Director of Litigation
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
D.C. Bar No. 464777 (admitted *pro hac vice*)
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Introduction ....................................................................................................................1

I.   There are no jurisdictional or prudential barriers to resolving this dispute. ............................2

    A.   The States have the same standing here that they had in *Texas*. .......................................3

    B.   The defendants-intervenors lack standing for relief beyond that sought by the federal defendants. ...............................................................4

    C.   The States' general pleading allows *vacatur* relief, even if their Complaint requests only declaratory relief. .................................................7

II.  DACA is unlawful. ...........................................................................................................9

    A.   DACA's promulgation was procedurally invalid. ...........................................................9

    B.   DACA is invalid under federal immigration law. ..........................................................12

    C.   DACA violates the Executive's obligations under the Take Care Clause. ....................16

III. No equitable factors counsel against *vacatur*. ............................................................17

    A.   Summary judgment is appropriate at this time. ............................................................17

    B.   Third-party interests — such as those of the defendants-intervenors — are not cognizable and, as such, should play no role in this Court's equitable reasoning. ...............................................................19

    C.   The actions of other federal courts to defer the effectiveness of DACA's rescission are irrelevant to DACA's *vacatur* as unlawful. .................................21

Conclusion ....................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Air Transp. Ass'n of Can. v. FAA*,
    254 F.3d 271 (D.C. Cir. 2001) ............................................................8

*Alexander v. Cockrell*,
    294 F.3d 626 (5th Cir. 2002) ..............................................................8

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ............................................................................4

*Allen v. Wright*,
    468 U.S. 737 (1984) ............................................................................2

*Am. Mining Congress v. Mine Safety & Health Admin.*,
    995 F.2d 1106 (D.C. Cir. 1993) ..........................................................4

*American Bioscience, Inc. v. Thompson*,
    269 F.3d 1077 (D.C. Cir. 2001) ..........................................................7

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ..............................................................................13

*Arizona v. United States*,
    567 U.S. 387 (2012) ..........................................................................14

*Avoyelles Sportsmen's League, Inc. v. Marsh*,
    715 F.2d 897 (5th Cir. 1983) ...............................................7-8. 10, 11

*Bd. of Miss. Levee Comm'rs v. EPA*,
    674 F.3d 409 (5th Cir. 2012) ..............................................................2

*Bemis Brothers Bag Co. v. United States*,
    289 U.S. 28 (1933) ..............................................................................8

*Cadle Co. v. Whataburger of Alice*,
    174 F.3d 599 (5th Cir. 1999) ............................................................23

*Campaign for Family Farms v. Glickman*,
    200 F.3d 1180 (8th Cir. 2000) ............................................................9

*Cedars-Sinai Med. Ctr. v. Shalala*,
    125 F.3d 765 (9th Cir. 1997) ............................................................23

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ......................................................................16-17

*Chem. Mfrs. Ass'n v. NRDC*,
    470 U.S. 116 (1985) ..........................................................................22

*Chevron U.S.A., Inc. v. NRDC*,
    467 U.S. 837 (1984) ..........................................................................12

*Chicago & G.T. Ry. Co. v. Wellman*,
    143 U.S. 339 (1892) ............................................................................6

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ................................................................. 10-11

*City of Los Angeles v. Adams*,
   556 F.2d 40 (D.C. Cir. 1977) ........................................................14

*DeCanas v. Bica*,
   424 U.S. 351 (1976) ....................................................................2

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .........................................................18

*Diamond v. Charles*,
   476 U.S. 54 (1986) ......................................................................3

*Dresser-Rand Co. v. Virtual Automation, Inc.*,
   361 F.3d 831 (5th Cir. 2004) .........................................................9

*FEC v. Akins*,
   524 U.S. 11 (1998) ......................................................................3

*Fed'l Crop. Ins. Corp. v. Merrill*,
   332 U.S. 380 (1947) ...................................................................19

*Ferguson v. FDIC*,
   164 F.3d 894 (5th Cir. 1999) .......................................................19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ....................................................................4

*FTC v. Morton Salt Co.*,
   334 U.S. 37 (1948) .....................................................................10

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) ....................................................................2

*General Elec. Co. v. EPA*,
   290 F.3d 377 (D.C. Cir. 2002) ......................................................4

*Green v. Mansour*,
   474 U.S. 64 (1985) ....................................................................22

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ...............................................................4-5, 6

*In re Blast Energy Servs., Inc.*,
   593 F.3d 418 (5th Cir. 2010) .......................................................22

*In re GWI PCS 1, Inc.*,
   230 F.3d 788 (5th Cir. 2000) .......................................................21

*In re Scruggs*,
   392 F.3d 124 (5th Cir. 2004) .......................................................22

*INS v. Chadha*,
   462 U.S. 919 (1983) ...................................................................10

*INS v. St. Cyr*,
   533 U. S. 289 (2001) ..................................................................................20

*Judulang v. Holder*,
   565 U.S. 42 (2011) ....................................................................................15

*Kamen v. Kemper Fin. Servs.*,
   500 U.S. 90 (1991) ......................................................................................5

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952) ..................................................................................23

*Lane v. Inman*,
   509 F.2d 184 (5th Cir. 1975) ....................................................................22

*Lockhart v. Leeds*,
   195 U.S. 427 (1904) ................................................................................. 8-9

*Louisiana Pub. Serv. Comm'n v. FCC*,
   476 U.S. 355 (1986) ..................................................................................10

*Loving v. United States*,
   517 U.S. 748 (1996) ....................................................................................2

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................. 3-4

*Lutwak v. United States*,
   344 U.S. 604 (1953) ..................................................................................14

*Mackintosh v. Estate of Marks*,
   225 F.2d 211 (5th Cir. 1955) ......................................................................9

*Maher v. Roe*,
   432 U.S. 464 (1977) ..................................................................................22

*Manhattan Gen. Equip. Co. v. Commissioner*,
   297 U.S. 129 (1936) ..................................................................................12

*Massachusetts v. EPA*,
   549 U.S 497 (2007) ...................................................................................12

*McLouth Steel Products Corp. v. Thomas*,
   838 F.2d 1317 (D.C. Cir. 1988) ................................................................11

*Medelin v. Texas*,
   552 U.S. 491 (2008) ..................................................................................15

*Mercury Motor Express, Inc. v. Brinke*,
   475 F.2d 1086 (5th Cir. 1973) ....................................................................9

*Mid-Continent Cas. Co. v. Bay Rock Operating Co.*,
   614 F.3d 105 (5th Cir. 2010) ....................................................................19

*Mistretta v. United States*,
   488 U.S. 361 (1989) ..................................................................................13

*Mobil Oil Corp. v. Dep't of Energy*,
  610 F.2d 796 (Temp. Emer. Ct. App. 1979) ...................................................................8

*Morton v. Ruiz*,
  415 U.S. 199 (1974) ......................................................................................................11

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................................20, 23

*Mullaney v. Anderson*,
  342 U.S. 415 (1952) ......................................................................................................18

*Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*,
  725 F.2d 761 (D.C. Cir. 1984) ......................................................................................21

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
  416 U.S. 267 (1974) ......................................................................................................20

*North Am. Coal Corp. v. Director, Office of Workers' Compensation Programs,*
  *U.S. Dept. of Labor*, 854 F.2d 386 (10th Cir. 1988) .....................................................11

*Office of Personnel Mgmt. v. Richmond*,
  496 U.S. 414 (1990) ......................................................................................................19

*Organized Vill. of Kake v. United States Dep't of Agric.*,
  795 F.3d 956 (9th Cir. 2015) .........................................................................................21

*Pa. v. Mimms*,
  434 U.S. 106 (1977) ......................................................................................................15

*Regents of the Univ. of Cal. v. United States, Dep't of Homeland Sec.*,
  279 F.Supp.3d 1011 (N.D. Cal.), *aff'd* 908 F.3d 476 (9th Cir. 2018).................... 4, 21-24

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997)..........................................................................................23

*Schweiker v. Gray Panthers*,
  453 U.S. 34 (1981) ................................................................................................... 22-23

*Shell Offshore Inc. v. Babbitt*,
  238 F.3d 622 (5th Cir. 2001)......................................................................................4, 10

*Sierra Club v. Glickman*,
  156 F.3d 606 (5th Cir. 1998)............................................................................................3

*Smiley v. Citibank (S.D.), N.A*,
  517 U.S. 735 (1996) ......................................................................................................20

*State of Ohio Dep't of Human Serv. v. U.S. Dept. of Health & Human Serv., Health*
  *Care Financing Admin.*, 862 F.2d 1228 (6th Cir. 1988).............................................8, 11

*Succar v. Ashcroft*,
  394 F.3d 8 (1st Cir. 2005) ..............................................................................................12

*Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*,
  467 U.S. 883 (1984) ......................................................................................................13

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  135 S.Ct. 2507 (2015) ......................................................................................15

*Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*,
  201 F.3d 551 (5th Cir. 2001).................................................................4, 10, 20

*Texas v. United States*,
  86 F.Supp.3d 591 (S.D. Tex. 2015), *aff'd* 809 F.3d 134 (5th Cir.),
  *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016)..............................1, 15

*Texas v. United States*,
  809 F.3d 134 (5th Cir.), *aff'd by an equally divided Court*,
  136 S.Ct. 2271 (2016) ............................................ 1, 3-4, 10, 18, 20, 22

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985) ..........................................................................................16

*Touche Ross & Co. v. Redington*,
  442 U.S. 560 (1979) ............................................................................................4

*Town of Chester v. Laroe Estates, Inc.*,
  137 S.Ct. 1645 (2017) .........................................................................................5

*United States ex rel. King v. Solvay S.A.*,
  304 F.R.D. 507 (S.D. Tex. 2015) ......................................................................19

*United States Steel Corp. v. United States Envtl. Prot. Agency*,
  595 F.2d 207 (5th Cir. 1979)...............................................................................8

*United States v. CITGO Petroleum Corp.*,
  801 F.3d 477 (5th Cir. 2015)..............................................................................13

*United States v. Johnson*,
  632 F.3d 912 (5th Cir. 2011)...............................................................................3

*United States v. Pennsylvania Industrial Chemical Corp.*,
  411 U.S. 655 (1973)...........................................................................................20

*United States v. Picciotto*,
  875 F.2d 345 (D.C. Cir. 1989) ......................................................................8, 11

*United States v. Texas*,
  136 S.Ct. 906 (2016) .........................................................................................16

*United States v. Windsor*,
  570 U.S. 744 (2013) .........................................................................................5-6

*United States v. Wyatt*,
  680 F.2d 1080 (5th Cir. 1982).............................................................................8

*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981) ............................................................................................9

*Util. Air Regulatory Group v. EPA*,
  573 U.S. 302 (2014) ..........................................................................................15

*Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n,*
  443 U.S. 658 (1979) ...............................................................................15

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ...............................................................................13

*Woodall v. Commissioner,*
  964 F.2d 361 (5th Cir. 1992) ..................................................................14

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) ..........................................................................15, 17

## STATUTES

U.S. CONST. art. I, §1 ...................................................................................2

U.S. CONST. art. I, §8, cl. 4 ..........................................................................2

U.S. CONST. art. II, §3 ......................................................................1, 16, 17

U.S. CONST. art. III ..........................................................2-3, 5, 18, 22-23

Defense of Marriage Act,
  1 U.S.C. §7 ...............................................................................................8

Administrative Procedure Act,
  5 U.S.C. §§551-706 ...........................................................1, 7, 9-11, 23-24

5 U.S.C. §553(b) .........................................................................................10

5 U.S.C. §706(2)(B) ....................................................................................12

5 U.S.C. §706(2)(C) ....................................................................................12

5 U.S.C. §706(2)(D) ................................................................................7, 11

6 U.S.C. §202(5) ..........................................................................................13

Immigration and Naturalization Act,
  8 U.S.C. §§1101-1537 .......................................................1, 9, 12-16

8 U.S.C. §1103(a)(3) ...................................................................................13

8 U.S.C. §1324a(h)(3) .................................................................................13

8 U.S.C. §1182(n) ........................................................................................13

8 U.S.C. §1184(g) ........................................................................................13

8 U.S.C. §1188 .............................................................................................13

All Writs Act,
  28 U.S.C. §1651(a) ...................................................................................7

Proposition 8,
  CAL. CONST. art. I, §7.5 ...........................................................................5

## LEGISLATIVE HISTORY

H.R. REP. NO. 104-725 (1996) ..............................................................12, 16

## <u>RULES AND REGULATIONS</u>

FED. R. CIV. P. 54(c) ...................................................................................... 8-9

FED. R. CIV. P. 56(b) ........................................................................................17

FED. R. CIV. P. 56 Advisory Committee Notes to 2009 Amendments ...........................17

8 C.F.R. §274a.12(a)(1)-(16) ...........................................................................11

8 C.F.R. §274a.12(c)(14) ................................................................................11

Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012) ......................14, 20

Memorandum from Jeh Charles Johnson, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are Parents of U.S. Citizens or Permanent Residents* (Nov. 20, 2014).....14

## <u>OTHER AUTHORITIES</u>

Michael X. Marinelli, *INS Enforcement of the Immigration Reform and Control Act of 1986: Employer Sanctions During the Citation Period*, 37 CATH. U. L.R. 829 (1988) ...................................................................................15

## INTRODUCTION

Following *Texas v. United States*, 86 F.Supp.3d 591 (S.D. Tex. 2015), *aff'd* 809 F.3d 134 (5th Cir.), *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016) ("*Texas*"), several of the same state plaintiffs[1] (collectively, the "States") have sued the United States and relevant immigration officials to overturn the program known as Deferred Action for Childhood Arrivals ("DACA"), adopted by the prior administration between 2012 and 2014 and rescinded by the current administration in 2017. As in *Texas*,[2] the States challenge DACA under the notice-and-comment rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. §§551-706 ("APA"), the Immigration and Naturalization Act, 8 U.S.C. §§1101-1537 ("INA"), and the Constitution's Take Care Clause, U.S. CONST. art. II, §3. The State of New Jersey and a group of DACA beneficiaries represented by the Mexican-American Education & Legal Defense Fund ("MALDEF") intervened as defendants. This Court already has addressed many issues presented by the States' motion for summary judgment when the Court decided the States' motion for a preliminary injunction and the MALDEF intervenors' motion to dismiss (ECF #319, #342). Just as the Court confirmed its jurisdiction to hear the States' claims and found the States likely to prevail, based on *Texas*, the Court should now grant the States' motion for summary judgment and vacate DACA.

As set forth in more detail in the accompanying motion for leave to file, *amici curiae* Congressman Steve King, Representative of Iowa's 4th Congressional District, and Congressman Paul A. Gosar, D.D.S., Representative of Arizona's 4th Congressional District (collectively, "*Amici*") are Members of the One Hundred Sixteenth Congress, the branch of government that the

---

[1]     Plaintiffs are Alabama, Arkansas, Louisiana, Kansas, Nebraska, South Carolina, Texas, West Virginia, and the Governor of Mississippi.

[2]     *Texas* concerned both a DACA expansion and a related program known as Deferred Action for Parents of Americans ("DAPA").

Constitution vests not only with plenary power over the specific field of immigration, U.S. CONST. art. I, §8, cl. 4; *DeCanas v. Bica,* 424 U.S. 351, 354 (1976), but also with the general authority to make law. U.S. CONST. art. I, §1; *Loving v. United States,* 517 U.S. 748, 771 (1996). By purporting to make substantive immigration law without complying with the APA's procedural rulemaking process delegated to executive agencies, the federal defendants' predecessors in the prior administration violated the separation of powers principle that underlies our government. *Amici* respectfully ask this Court to hold DACA unlawful and to vacate it.

## I.    THERE ARE NO JURISDICTIONAL OR PRUDENTIAL BARRIERS TO RESOLVING THIS DISPUTE.

Federal courts have the obligation to assure themselves of their jurisdiction before they resolve a case's merits. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Although this Court already has — correctly — confirmed its jurisdiction to hear the States' claims and rejected the MALDEF intervenors' jurisdictional challenge (ECF #319, #342), *Amici* address jurisdictional issues potentially open after the Court's prior rulings.

Both jurisdictional and prudential limits are proper issues for federal courts to consider:

> "All of the doctrines that cluster about Article III — not only standing but mootness, ripeness, political question, and the like — relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government."

*Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-1179 (D.C. Cir. 1983) (Bork, J., concurring)). That said, parties can waive non-jurisdictional issues, *Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417-18 (5th Cir. 2012), and the party asserting those issues must have its own standing to raise them. *See* Sections I.A-I.B, *infra*. These limitations make it critical to analyze the jurisdictional versus prudential nature of defendants-

intervenors' arguments and the standing not only of the plaintiff States but also of the defendants-intervenors.

### A.   **The States have the same standing here that they had in *Texas*.**

This Court (ECF #319, #342) has already held that the plaintiff States have standing for the same reason that they had standing in *Texas*, 809 F.3d at 150-62. *Amici* agree that *Texas* is dispositive here on the plaintiff States' standing, but question whether the intervenors have standing to seek relief beyond the relief sought by the federal defendants.[3]

On *plaintiffs'* standing, all that *Amici* would add is that the States' procedural injuries bolster their standing because such injuries lower Article III's threshold for immediacy and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571-72 & n.7 (1992); *United States v. Johnson*, 632 F.3d 912, 921 (5th Cir. 2011). For procedural-rights redressability, all the plaintiff States must show is that vacating DACA and remanding the issue to Congress for legislation or to the federal defendants for an actual rulemaking would give the States *a chance* to protect their interests:

> although a procedural rights plaintiff is not held to the normal standards for [redressability], in the sense that the plaintiff need not show that the procedural remedy that he is requesting will in fact redress his injury, the plaintiff must nonetheless show that there is a possibility that the procedural remedy will redress his injury. In order to make this showing, the plaintiff must show that "the procedures in question are designed to protect some threatened concrete interest of [its] that is the ultimate basis of [its] standing."

*Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir. 1998) (quoting *Defenders of Wildlife*, 504 U.S. at 573 n.8) (alterations in *Sierra Club*); *FEC v. Akins*, 524 U.S. 11, 25 (1998). A court order vacating DACA would clearly provide that chance, which suffices for Article III.

---

[3]      The federal defendants obviously have standing to defend federal law. *Diamond v. Charles,* 476 U.S. 54, 62-63 (1986).

**B.**     <u>The defendants-intervenors lack standing for relief beyond that sought by the federal defendants.</u>

By contrast with the plaintiff States and the federal defendants, the defendant-intervenors lack standing to pursue any relief beyond that sought by the federal defendants. Standing requires a judicially cognizable right or "legally protected interest," *Defenders of Wildlife*, 504 U.S. at 560, and defendants-intervenors premise their rights on DACA. To the extent that DACA created rights, however, DACA would have needed to undergo notice-and-comment rulemaking, *Texas*, 809 F.3d at 171; *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 629 (5th Cir. 2001); *Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993), even assuming *arguendo* that agencies could create rights.[4] Similarly, if cases such as *Regents of the Univ. of Cal. v. United States, Dep't of Homeland Sec.*, 279 F.Supp.3d 1011 (N.D. Cal.), *aff'd* 908 F.3d 476 (9th Cir. 2018), were correct that DACA's promulgation so bound the agency as to preclude DACA's rescission, DACA needed to undergo notice-and-comment rulemaking (but did not) before binding agency discretion. *Texas*, 809 F.3d at 172-73; *Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551, 556 (5th Cir. 2001); *General Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002). Either way, since DACA did not undergo otherwise-required notice-and-comment rulemaking, DACA is a nullity and void *ab initio*, see Section I.C, *infra* (collecting cases), and as such clearly cannot provide cognizable rights to support defendants-intervenors' standing.[5]

---

[4]     Agencies cannot create rights, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n.18 (1979); *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001), and their inability to do so is an independent rationale for rejecting any suggestion that DACA created rights.

[5]     As for New Jersey and any institutional defendants-intervenors, they "lack[] a judicially cognizable interest in the prosecution *or nonprosecution* of another," which "applies no less to prosecution for civil [matters] … than to prosecution for criminal [matters]." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 204 (2000) (emphasis added, interior quotation marks omitted). Similarly, it is a "fundamental restriction on [judicial] authority" that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the

The same Article III limits that apply to plaintiffs and defendants also apply to intervenors, so intervenors must have standing to seek relief beyond the relief requested by the party supported by the intervenor:

> The same principle applies to intervenors of right. Although the context is different, the rule is the same: For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.

*Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017). Thus, without their own Article III standing, defendants-intervenors cannot seek relief beyond the relief that the federal defendants seek. Accordingly, *Amici* respectfully submit that defendants-intervenors are not entitled to a ruling on anything other than *purely jurisdictional* arguments against this litigation.[6]

This Court already has rejected the suggestion that the original parties align too closely to present an Article III case or controversy.[7] *See* Memorandum Opinion at 30 ("this case is much

---

legal rights or interests of third parties," *Hollingsworth*, 570 U.S. at 708 (interior quotation marks omitted). Thus, third-party institutional and state defendants-intervenors would lack a judicially cognizable interest.

[6]    In *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 97 n.4 (1991), the Supreme Court recognized courts should consider jurisdictional arguments, even if raised only by an *amicus*.

[7]    Government defendants can actively take a plaintiff's side, without requiring dismissal as a "friendly suit," as evidenced by the federal litigation over same-sex marriage under the Defense of Marriage Act, 1 U.S.C. §7 ("DOMA"), and California's Proposition 8. *See United States v. Windsor*, 570 U.S. 744, 755-63 (2013); *Hollingsworth v. Perry*, 570 U.S. 693, 707-09 (2013). In *Windsor*, the federal governmental defendants agreed to abide by DOMA until a court invalidated DOMA, but also appealed the lower courts' rulings against DOMA, even though the federal governmental defendants supported the plaintiff's position. By contrast, in *Hollingsworth*, the state governmental defendants did not appeal the district court's ruling against Proposition 8, and the Supreme Court held that the defendants-intervenors lacked standing to defend California's marriage laws. In both cases, however, the defendants actively briefed the case with the plaintiffs, without any dismissal for want of adversity.

more adverse than *Windsor*") (ECF #319). There is nothing collusive about the federal defendants'
admitting that DACA is unlawful. Even the prior administration admitted as much: "There are
enough laws on the books by Congress that are very clear in terms of how we have to enforce our
immigration system that for me to simply through executive order ignore those congressional
mandates would not conform with my appropriate role as President." States' Memo. 8 (interior
quotations and emphasis omitted) (quoting Remarks by the President at Univision Town Hall
(Mar. 28, 2011)); *id.* 8-9 (citing various pre-DACA statements by prior administration on
unlawfulness of unilateral executive action in this field). Reflexive dismissal whenever
government defendants concur with a plaintiff's legal theory could impair the right to redress of
the most blatantly illegal actions (namely, laws so bad that even the government will not defend
them). True collusion requires an end run around the legislative or regulatory process.

"It never was the thought that, by means of a friendly suit, a party beaten in the legislature
could transfer to the courts an inquiry as to the constitutionality of the legislative act." *Chicago &
G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 344-45 (1892). Instead, "an honest and actual antagonistic
assertion of rights by one individual against another" serves as a prudential prerequisite for "the
ultimate and supreme function of courts" to "determine whether [an] act be constitutional or not."
*Id*. Here, DACA-like relief was unable to acquire a legislative majority, either before DACA's
promulgation or after its rescission. Indeed, DACA itself is the end run around Congress, and
nothing in the prudential-dismissal line of cases compels this Court to dismiss the States'
meritorious challenge to DACA.

Zealous advocacy by defendants-intervenors cannot — and does not — impart standing on
the advocates, *Hollingsworth*, 570 U.S. at 707, but it can lessen the need for a court to consider
*prudential* dismissal. *Windsor*, 570 U.S. at 759-60. While this Court is undoubtedly both free and

correct to consider prudential barriers to the relief that a party seeks, the defendants-intervenors here lack standing to pursue merely prudential objections.

### C. The States' general pleading allows *vacatur* relief, even if their Complaint requests only declaratory relief.

To the extent that redressability[8] — or any prudential concerns — depends on the equitable relief of *vacatur*, as distinct from merely declaratory relief, it could *appear* relevant that the States' Complaint seeks only declaratory relief in its specific pleadings. *See* First Am. Compl. at 73 (ECF #104). For several reasons, the declaratory-only nature of the *specifically* requested relief is no barrier to *vacatur*.

First, the APA's judicial-review provisions impose a duty on this Court to vacate DACA upon finding it procedurally invalid: "The reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … without observance of procedure required by law." 5 U.S.C. §706(2)(D). Accordingly, "[i]f an appellant … prevails on its APA claim, it is entitled to relief under that statute, which normally will be a vacatur of the agency's order." *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001). Similarly, the All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. §1651(a), and thus authorizes this Court to vacate DACA even if the States do not request *vacatur*.

Second, even a declaration that DACA's promulgation violated notice-and-comment requirements would mean that DACA was void *ab initio*. Specifically, under the APA, a procedurally infirm rule is a nullity and void *ab initio*, *Avoyelles Sportsmen's League, Inc. v.*

---

[8]     For example, if this Court merely declares DACA's promulgation unlawful, but another court permanently enjoins DACA's rescission, this Court's declaratory relief might not redress the plaintiff States' injuries, whereas vacating DACA's promulgation would.

*Marsh*, 715 F.2d 897, 909-10 (5th Cir. 1983) ("null"); *United States Steel Corp. v. United States Envtl. Prot. Agency*, 595 F.2d 207, 210 (5th Cir. 1979) (agency action "set aside"); *United States v. Picciotto*, 875 F.2d 345, 345-46 (D.C. Cir. 1989) ("null and void"); *State of Ohio Dep't of Human Serv. v. U.S. Dept. of Health & Human Serv., Health Care Financing Admin.*, 862 F.2d 1228, 1237 (6th Cir. 1988) ("void"); *Mobil Oil Corp. v. Dep't of Energy*, 610 F.2d 796, 804 (Temp. Emer. Ct. App. 1979) ("null and void"),[9] which means "having no effect, as though it had never been passed." *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002); *see also Air Transp. Ass'n of Can. v. FAA*, 254 F.3d 271, 277 (D.C. Cir. 2001) ("to 'vacate' means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside") (interior quotation marks and alterations omitted). Thus, the States' requested declaratory relief provides essentially the same relief as *vacatur* by operation of law.

Third, the complaint's "general pleading" seeks "[a]ny and all other relief to which Plaintiff States may be entitled," First Am. Compl. 73 (ECF #104), which easily includes *vacatur*: "The rule is now general that at a trial upon the merits the suitor shall have the relief appropriate to the facts that he has pleaded, whether he has prayed for it or not." *Bemis Brothers Bag Co. v. United States,* 289 U.S. 28, 34 (1933); *accord* FED. R. CIV. P. 54(c) ("final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

> There is nothing in the intricacy of equity pleading that prevents the plaintiff from obtaining the relief under the general prayer, to which he may be entitled upon the facts plainly stated in the bill. There is no reason for denying his right to relief, if the plaintiff is otherwise entitled to it, simply because it is asked under the prayer for general

---

[9]   *See United States v. Wyatt*, 680 F.2d 1080, 1083-85 (5th Cir. 1982) (describing the Temporary Emergency Court of Appeals).

> relief and upon a somewhat different theory from that which is
> advanced under one of the special prayers.

*Lockhart v. Leeds*, 195 U.S. 427, 436-37 (1904). Quite simply, "Plaintiffs are entitled to any relief which the facts justify." *Mackintosh v. Estate of Marks*, 225 F.2d 211, 214 (5th Cir. 1955) (citing *Bemis* and *Lockhart* and explaining that "Rule 54(c) … has expanded that idea measurably"). The plaintiff States' hesitancy to request *vacatur* presents no impediment to this Court's power or duty to vacate DACA.

## II.     DACA IS UNLAWFUL.

Given this Court's and this Circuit's prior holdings with respect to DAPA and DACA, this Court need not tarry long on the question of whether the States are likely to prevail on the merits. Indeed, this Court has already found the plaintiff States likely to prevail on the merits (ECF #319), based on *Texas* and the authorities underlying *Texas*. Notwithstanding that preliminary injunctions can present a different issue than summary judgment, *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981) (distinguishing prevailing on the merits from a *likelihood* of prevailing), that distinction vanishes for purely legal issues. *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091 (5th Cir. 1973); *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004); *accord Campaign for Family Farms v. Glickman*, 200 F.3d 1180, 1187 (8th Cir. 2000) (collecting cases). The next three subsections demonstrate that DACA is unsupportable under the APA, the INA, and the Constitution.

### A.     DACA's promulgation was procedurally invalid.

By delegating APA rulemaking authority to agencies, Congress delegated functions that the Constitution vests initially in the Congress. To be procedurally valid under that delegation,

agency rules must fully satisfy either the APA rulemaking requirements or the APA exemptions.[10]

DACA does neither.

Even if DACA were *substantively* consistent with immigration law, its promulgation

nonetheless would violate the APA notice-and-comment requirements. The APA exemptions for

policy statements and interpretive rules do not apply when agency action narrows the discretion

otherwise available to agency staff. *Texas*, 809 F.3d at 172-73; *Texas Sav. & Cmty. Bankers Ass'n*,

201 F.3d at 556; *General Elec.*, 290 F.3d at 380. Nor are these exemptions available when an

agency promulgates the regulatory basis on which to confer benefits. *Chrysler Corp. v. Brown*,

441 U.S. 281, 302 (1979) (defining a "substantive rule — or a legislative-type rule — as one

affecting individual rights and obligations") (interior quotation marks omitted); *Avoyelles*

*Sportsmen's League*, 715 F.2d at 908 ("Legislative rules ... grant rights, impose obligations, or

produce other significant effects on private interests") (interior quotation marks omitted, alteration

in original); *Shell Offshore*, 238 F.3d at 629; *Am. Mining Congress*, 995 F.2d at 1112. Just as this

---

[10]        When an agency fails to follow the procedures ordained by Congress, the resulting rule
violates the core constitutional requirements for making law, which "are *integral* parts of the
constitutional design for the separation of powers." *INS v. Chadha*, 462 U.S. 919, 946 (1983)
(emphasis added). Valid legislative rules must either satisfy bicameralism and presentment
requirements — which "represent[] the Framers' decision that the legislative power of the Federal
government be exercised in accord with a single, finely wrought and exhaustively considered,
procedure," *Chadha*, 462 U.S. at 951 — or they must fully satisfy the limited administrative
exemption that the APA provides. *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) ("the burden
of proving justification or exemption … generally rests on one who claims its benefits").
Specifically, the prior administration purported to rely on the APA exemptions in 5 U.S.C.
§553(b), but it failed to qualify for that exemption. Failure either to follow or to avoid the required
APA procedures renders the resulting agency action both void *ab initio* and unconstitutional.
*Chrysler*, 441 U.S. at 303; *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("an
agency literally has no power to act … unless and until Congress confers power upon it"). In
essence, when an agency fails to follow the procedures ordained by Congress — here, the APA
delegation of rulemaking power — the resulting rule violates the "integral" constitutional
requirements for making law. When acting within the APA requirements, a federal agency *might*
be on solid ground. When acting outside those requirements, however, a federal agency simply
seeks to usurp congressional power.

Court held for DAPA, DACA fails these tests.

Although this Court finds some uncertainty in the level of evidence required to demonstrate that an agency policy impermissibly denies agency staff discretion to operate, *see* Memorandum Opinion at 98-102 (ECF #319), DACA would violate the APA's procedural requirements regardless of how that issue were resolved. DACA plainly *affects* individual rights under *Chrysler*. Before issuing procedures and substantive policies that it would then be "incumbent" on the government to follow, *Morton v. Ruiz*, 415 U.S. 199, 235 (1974), the prior administration needed to conduct a rulemaking. For example, employment authorization is a benefit that is "granted" to beneficiary aliens, 8 C.F.R. §274a.12(c)(14), under sixteen specific circumstances, 8 C.F.R. §274a.12(a)(1)-(16), none of which apply to the across-the-board DACA program. *Cf. Picciotto*, 875 F.2d at 346-49 (agency cannot add new, specific, across-the-board conditions under general, case-by-case authority to consider changes). Under the foregoing APA criteria, DACA qualifies as a legislative rule, which both the Constitution and the APA prohibit agencies from issuing by memoranda, policy, or interpretation.

A procedurally infirm rule is a nullity and void *ab initio*, *Avoyelles Sportsmen's League*, 715 F.2d 897, 909-10; *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1322-23 (D.C. Cir. 1988); *State of Ohio Dep't of Human Serv.*, 862 F.2d at 1237; *North Am. Coal Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 854 F.2d 386, 388 (10th Cir. 1988), even where that rule would have been substantively valid if promulgated via notice-and-comment rulemaking. Because DACA is procedurally infirm, this Court must "hold unlawful and set aside [this] agency action … found to be … without observance of procedure required by law." 5 U.S.C. §706(2)(D). Accordingly, DACA's procedural infirmities alone render it null and void and require its *vacatur*.

### B.   DACA is invalid under federal immigration law.

DACA violates the INA on both substantive and procedural grounds, and either type of violation renders DACA a nullity. *See* 5 U.S.C. §706(2)(B)-(C); *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134 (1936) (holding that a "regulation [that] … operates to create a rule out of harmony with the statute, is a mere nullity" because an agency's "power … to prescribe rules and regulations … is not the power to make law" but rather "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute"). In deciding the plaintiff States' motion for a preliminary injunction, this Court already has held that DACA violates the INA under both steps one and two of *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837 (1984), which is to say that DACA both violates the INA under "traditional tools of statutory construction," *id.* at 843 n.9, and represents an impermissible exercise of any interstitial discretion that the INA provides. *Id.* at 844. *Amici* respectfully submit that the Court's resolution of the INA merits at the preliminary-injunction phase leaves no room for upholding DACA.

Procedurally, through DACA, DHS purports to channel aliens into deferred action under prosecutorial discretion, without initiating the statutorily mandated removal proceeding. *See* Memorandum Opinion at 68-70 (ECF #319). These procedures are mandatory, not discretionary, *Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir. 2005), and even presidents cannot ignore them. H.R. REP. NO. 104-725, at 383 (1996) ("immigration law enforcement is as high a priority as other aspects of Federal law enforcement, and illegal aliens do not have the right to remain in the United States undetected and unapprehended") (Conference Report); *Massachusetts v. EPA*, 549 U.S 497, 534 (2007) (presidents cannot ignore domestic law). DACA seeks to short circuit these mandatory INA procedures, and thus violates the INA.

Substantively, the preliminary-injunction decision rejects the miscellaneous strands of statutory authority with which the prior administration attempted to elevate prosecutorial

discretion *in any given matter* into a rights-granting framework *for all matters*.[11] *See* Memorandum Opinion 71-73 (ECF #319). The central problem with cobbling these innocuous snippets together into DACA is that the asserted executive authority has no stopping point. It would allow DHS administratively to authorize work for *any class* of alien, without regard to the protections that Congress included in the INA. *See, e.g.*, 8 U.S.C. §§1182(n), 1184(g), 1188 (protecting American workers from competition from aliens); *Sure-Tan, Inc. v. Nat'l Labor Relations Bd.*, 467 U.S. 883, 893 (1984) ("[a] primary purpose in restricting immigration is to preserve jobs for American workers"). Congress would not authorize DHS to overturn those concrete statutory protections through "vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Alternatively, if these innocuous snippets did "hide elephants in mouse holes," *id.*, by delegating *carte blanche* authority to DHS, these statutory subsections would violate the nondelegation doctrine, which requires "an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Under the doctrine of constitutional avoidance, this Court could avoid the constitutional nondelegation issue by reading the statute not to delegate the claimed authority. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17-18 (2013); *United States v. CITGO Petroleum Corp.*, 801 F.3d 477, 483 n.6 (5th Cir. 2015). To resolve the merits, the Court need not decide whether these snippets delegate no authority or if they unconstitutionally delegate authority. Either way, they cannot support DACA.

Even if some form of deferred action lawfully could apply to some DACA beneficiaries, DACA would remain an invalid form of deferred action. While an agency faced with limited

---

[11]     These snippets include 8 U.S.C. §§1103(a)(3), 1324a(h)(3) and 6 U.S.C. §202(5). *See* Memorandum Opinion at 70-71 (ECF #319).

resources necessarily has discretion to implement congressional mandates as best it can, the power to set priorities for action does not authorize ignoring all statutory mandates: "the agency administering the statute is required to effectuate the original statutory scheme *as much as possible*, within the limits of the added constraint." *City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C. Cir. 1977) (emphasis added). DACA, however, did not "effectuate the original statutory scheme as much as possible" within the limits set by the lack of funds.[12]

To the contrary, DACA reflects the prior administration's policy judgment that these aliens should be free to live and work in the United States without fear of deportation. Far from "effectuat[ing] the original statutory scheme as much as possible," this policy judgment is at odds with the INA and congressional intent. In making it illegal for illegal aliens to work here, Congress wished to discourage illegal entry and to encourage removable aliens to remove themselves, even if enforcement by removal is underfunded and slow to reach low-priority cases. *See Arizona v. United States*, 567 U.S. 387, 404 (2012) ("Congress enacted IRCA as a comprehensive framework for combating the employment of illegal aliens") (citations and interior quotation marks omitted);

---

[12]   Indeed, DACA was not created because of lack of resources. The aliens protected by it were already rarely removed. Memorandum from Jeh Charles Johnson, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are Parents of U.S. Citizens or Permanent Residents* 3 (Nov. 20, 2014) (explaining that DACA applies to individuals who "are extremely unlikely to be deported given [the] Department's limited enforcement resources") (Pls.' Mot. Summ. J. Ex. 7, (ECF # 358-7)). This statement is scarcely consistent with Secretary Napolitano's bald assertion that "additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead appropriately focused on people who meet our enforcement priorities." Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* 1 (June 15, 2012) (Pls.' Mot. Summ. J. Ex. 1 (ECF # 358-1)). Admissions against interest are admissible evidence, but self-serving statements are not. *Compare Lutwak v. United States*, 344 U.S. 604, 617-18 (1953) ("admissions … are admissible … under a standard exception to the hearsay rule applicable to the statements of a party") *with Woodall v. Commissioner*, 964 F.2d 361, 364-65 (5th Cir. 1992).

*Texas*, 86 F.Supp.3d at 634-35 (arguing that DAPA would disincentivize illegal aliens from self-deporting); Michael X. Marinelli, *INS Enforcement of the Immigration Reform and Control Act of 1986: Employer Sanctions During the Citation Period*, 37 Cath. U. L.R. 829, 833-34 (1988) ("Congress postulated that unauthorized aliens currently in the United States would be encouraged to depart") (citing H.R. Rep. No. 99-682, at 46 (1986)). DACA thus exceeds the authority that the INA delegates to DHS.

Finally, in addition to consistently and expressly rejecting DACA legislation, Congress has not implicitly ratified DACA. *See* Memorandum Opinion 88-90 (ECF #319). Standing alone, prior instances of Executive misconduct cannot "be regarded as even a precedent, much less an authority for the present [misconduct]." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 649 (1952). "Arbitrary agency action becomes no less so by simple dint of repetition." *Judulang v. Holder*, 565 U.S. 42, 61 (2011).[13] There has simply not been the "unanimous holdings of the Courts of Appeals" and subsequent legislation required for Congress to have accepted and ratified DACA. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S.Ct. 2507, 2520 (2015). Ratification requires more: "'a systematic, unbroken, executive practice, long pursued to the knowledge of the Congress and never before questioned'" "can 'raise a presumption that the [action] had been [taken] in pursuance of its consent.'" *Medellin v. Texas*, 552 U.S. 491, 531 (2008) (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981)) (alterations in *Medellin*). For DACA's purposes, the INA's history is considerably "broken" by Congress's later action to clamp

---

[13]     Another issue is scope: assuming that anyone would challenge a minor program in the first place, a reviewing court might hold that truly *de minimis* deviations do not matter, *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 687 & n.29 (1979); *Pa. v. Mimms*, 434 U.S. 106, 111 (1977), perhaps because "*[d]e minimis non curat lex* … is part of the established background of legal principles against which all enactments are adopted." *Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 309 n.1 (2014) (interior quotation marks omitted). But, of course, DACA is not *de minimis* in any way.

down on illegal aliens: "illegal aliens do not have the right to remain in the United States undetected and unapprehended." H.R. REP. NO. 104-725, at 383. On balance, the claim that Congress ratified deferred-action plans like DACA is simply not plausible. Instead, this Court should simply follow the INA's plain text to glean what Congress intended. Congress did not authorize DACA.

### C.    DACA violates the Executive's obligations under the Take Care Clause.

In granting review in the DAPA case, the Supreme Court ordered "the parties … to brief and argue '[w]hether [DAPA] violates the Take Care Clause of the Constitution.'" *United States v. Texas*, 136 S.Ct. 906 (2016). In deciding the plaintiff States' motion for a preliminary injunction, this Court declined to reach the Take Care Clause under the doctrine of constitutional avoidance, as well as the lack of clear guidance from the Supreme Court. Although *Amici* respectfully submit that the Take Care issue is clearer than the Court suggests, they acknowledge that the Court need not resolve the constitutional issue to find DACA unlawful.

The take-care issue goes further than the substantive INA violations discussed, *supra*. Though, at some level, any substantively or even procedurally *ultra vires* action represents a failure faithfully to execute the laws, U.S. CONST. art. II, §3, it requires more to violate the Take Care Clause — a failure even to "take Care that the Laws be faithfully executed." *Id.* That failure, however, is amply present here. Indeed, the prior administration itself candidly acknowledged the unlawfulness of DACA numerous times before issuing DACA for political reasons when Congress did not enact the legislation that the prior administration sought. A court issuing an equitable remedy in these circumstances could find that the Executive willfully failed to take care, then tailor the remedy to account for that willfulness. *Cf. Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 592 (1985) (distinguishing between faithful arbitrators and "arbitrators who abuse or exceed their powers or willfully misconstrue their mandate under the governing law"); *Chambers*

*v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991) (upholding sanctions for willful violations of court orders). Presidents are not free to adopt any policies they want. Instead, the Constitution requires presidents to see to it that the laws that Congress has passed are faithfully executed. U.S. CONST. art. II, §3. Courts must hold presidents to that standard.

Under separation-of-powers principles, it falls to Congress to make the laws, to the Executive to enforce the laws faithfully, and to the judiciary to interpret the laws:

> With all its defects, delays and inconveniences, men have discovered no technique for long preserving free government except that the Executive be under the law, and that the law be made by parliamentary deliberations.
>
> Such institutions may be destined to pass away. But it is the duty of the Court to be last, not first, to give them up.

*Youngstown*, 343 U.S. at 655. Under that division of authority, this Court clearly must reject DACA's overreach here.

## III.   NO EQUITABLE FACTORS COUNSEL AGAINST *VACATUR*.

DACA is substantively and procedurally unlawful and within this Court's jurisdiction — and duty — to vacate. In this section, *Amici* respectfully submit that no other equitable or prudential concerns should cause this Court to avoid *vacatur*.

### A.   <u>Summary judgment is appropriate at this time.</u>

Although the MALDEF defendants-intervenors have moved (ECF #361) to delay their response to the plaintiff States' motion for summary judgment, nothing precludes the Court's acting on summary judgment at this time: "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). As the advisory committee notes make clear, Rule 56 "allows a party to move for summary judgment at any time, even as early as the commencement of the action." *Id.* Advisory Committee Notes to 2009 Amendments. None of the theories or missing information that the MALDEF defendants-intervenors put forth

would provide a basis for deferring a decision on the purely legal issues presented here.

In particular, the Fifth Circuit already has rejected MALDEF's theory of standing offsets as "the type of 'accounting exercise' in which [federal courts] cannot engage." *Texas*, 809 F.3d at 155-56 (quoting *NCAA v. Governor of New Jersey*, 730 F.3d 208, 223 (3d Cir. 2013)); *accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006) ("the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing"). In any event, the claim that tax benefits to some State agencies will offset increased licensing and medical costs — for example, at the Texas Department of Motor Vehicles ("DMV") and Health and Human Services Commission ("HHSC"), respectively — would be irrelevant, even if MALDEF could support it factually.[14] Circuit precedent in Texas already rejects dollar-for-dollar offsets, but those offsets could not nullify the Article III case or controversy even if Circuit precedent did not foreclose the defendants-intervenors' argument. Economic netting would not undercut the States' standing from *administrative burden* (as distinct from out-of-pocket costs), and it would not prevent discrete state agencies such as Texas's DMV or HSSC from pressing *their* economic injuries. Those agencies do not receive the alleged tax boon, even if some other state agency would. To the extent that these discrete agencies constitute necessary parties not subsumed within the nominal State parties, the| agencies could be joined, even on appeal. *Mullaney v. Anderson,* 342 U.S. 415, 416-17 (1952) ("dismiss[ing] the present petition and require[ing] the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration"). In short, Circuit precedent establishes standing, and no further factual development would change that.

---

[14]     *Amici* understand that Texas has no income tax, which undercuts the tax-revenue argument *vis-à-vis* Texas.

**B.      Third-party interests — such as those of the defendants-intervenors — are not cognizable and, as such, should play no role in this Court's equitable reasoning.**

Insofar as the federal defendants have rescinded DACA — in large part because DACA is obviously invalid under the law of this Circuit — *Amici* respectfully submit that the federal defendants have appropriately abandoned any claim to an equitable entitlement to continue DACA. In addition, "arguments not raised before the district court are waived and cannot be raised for the first time on appeal," *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010) (interior quotation marks omitted), so the argument will be conclusively lost to the federal defendants if they do not press it here.

As for the individual defendants-intervenors, reliance by DACA beneficiaries provides no basis to withhold equitable relief. First, reliance cannot estop the federal government, *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 419-20 (1990) ("equitable estoppel will not lie against the Government"), and the federal government has decided to rescind DACA. Second, and more importantly, misplaced reliance on the administration that issued DACA provides no equitable basis to avoid the otherwise-required legal result:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.

*Fed'l Crop. Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Ferguson v. FDIC*, 164 F.3d 894, 898 (5th Cir. 1999); *United States ex rel. King v. Solvay S.A.*, 304 F.R.D. 507, 511-12 (S.D. Tex. 2015). Insofar as DACA beneficiaries feel misled, it was the prior administration that misled them. Under *Merrill* and its progeny, having been misled does not provide any rights to redress.

To the extent that DACA beneficiaries' reliance were relevant, that reliance would be unreasonable. A prime feature of deferred action is that, as an exercise of discretion, it can be

ended at any time. *See* Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* 3 (June 15, 2012) ("[t]his memorandum confers no substantive right, immigration status or pathway to citizenship") (Pls.' Mot. Summ. J. Ex. 1, at 2 (ECF # 358-1)). To be sure, courts sometimes consider the regulated community's reliance when evaluating whether an agency used "reasoned decisionmaking" to change a regulation under the *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29 (1983) ("*MVMA*"), line of cases, but the reliance must be "legitimate," *Smiley v. Citibank (S.D.), N.A*, 517 U.S. 735, 742 (1996), or "reasonable,"[15] *Judulang*, 565 U.S. at 48, such as when "*new* liability is sought to be imposed on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements." *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 295 (1974) (emphasis added); *accord United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 670-75 (1973) (allowing reliance on agency guidance as defense in prosecution for past actions) ("*PICCO*"); *cf. INS v. St. Cyr*, 533 U. S. 289, 321-24 (2001) (keeping discretionary waivers of deportation available to deportable aliens who pleaded guilty to crimes prior to repeal of the legislative basis for that relief). Consequently, the industrial discharger in *PICCO* and the convicted alien in *St. Cyr* could reasonably rely on the status quo at the time of the discharge and guilty plea. But presumably not even they would dream of claiming — or have the temerity to claim — that the same reliance would apply to new discharges or new guilty pleas. Similarly, vacating DACA would not itself

---

[15]      To argue that DACA beneficiaries' reliance on continued DACA relief estops the government's rescission of DACA *admits* that DACA unlawfully bound agency discretion. But in that case, DACA would require notice-and-comment rulemaking, *Texas*, 809 F.3d at 172-73; *Texas Sav. & Cmty. Bankers Ass'n*, 201 F.3d at 556, the lack of which would make DACA null and void *ab initio*. *See* Section I.C, *supra*. Thus, the very act of arguing reliance demonstrates that reliance was unreasonable.

vacate any existing individual relief already granted.

### C. The actions of other federal courts to defer the effectiveness of DACA's rescission are irrelevant to DACA's *vacatur* as unlawful.

As with the allegedly collusive nature of this litigation, the injunctive relief granted in *Regents* and related cases nationwide poses no barrier to vacating DACA. Simply put, nothing in *Regents* or other DACA-rescission challenges prevents the States' quite distinct challenge to DACA's initial promulgation.

DACA was promulgated in 2012 through 2014 and rescinded in 2017. *Regents*-style cases target the 2017 action, and this case targets the 2012-2014 actions. Those challenges are inherently different, as this Court noted. *See* Memorandum Opinion 13-26 (ECF #319). Even leaving aside the most obvious difference — *viz.*, that those courts were not bound by Fifth Circuit precedent — rescission and promulgation present different issues. While the substantive merits might partially overlap, the procedural questions are wholly independent.

Procedurally, an action that succeeds in voiding a rescission or amendment reinstates the prior rule, *Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 725 F.2d 761, 772 (D.C. Cir. 1984) ("*NRDC v. EPA*"); *Organized Vill. of Kake v. United States Dep't of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015); *cf. In re GWI PCS 1, Inc.*, 230 F.3d 788, 796 n.14 (5th Cir. 2000) ("[r]escission unwinds the transaction and restores the status quo ante"). But that does nothing to protect the underlying rule from procedural or substantive challenges. Indeed, as the D.C. Circuit recognized in *NRDC v. EPA*, judicially revoking an agency's rescission sometimes "casts a cloud over the very regulations it implicitly reinstates" because the rationale for vacating the agency's revocation also affects the underlying rule, 725 F.2d at 772. Such a cloud would be cast by any judgment that revokes the federal defendants' rescission of DACA. Specifically, plaintiffs' prevailing in *Regents* and similar cases would make clear that DACA was procedurally invalid on the day that the federal

21

defendants' predecessors promulgated DACA. If DACA either created judicially cognizable rights that support a federal court's enjoining DACA's repeal or so bound the federal defendants that they could not repeal DACA at will, then DACA required notice-and-comment rulemaking. *Texas*, 809 F.3d at 171. Because no rulemaking occurred, DACA is procedurally invalid.

If the *Regents* plaintiffs (and all other similarly situated plaintiffs) *lose* their challenges to DACA's rescission — thus allowing DACA's rescission to take effect — that could well moot this litigation: this Court cannot vacate a rescinded policy or rule. *Green v. Mansour*, 474 U.S. 64, 68-69 (1985) (amendments to challenge law mooted injunctive relief); *cf. Lane v. Inman*, 509 F.2d 184, 185 (5th Cir. 1975) ("the ordinance was rescinded," which "mooted the claim for declaratory and injunctive relief"). Mootness following rescission is simply a variation on the common theme that when a "court is unable to grant any remedy for [a party], its opinion would be merely advisory and it must dismiss the [case] as moot." *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 423 (5th Cir. 2010). Thus, unhelpfully for defendants-intervenors, a *Regents* loss would undermine the Article III basis for this suit, but a *Regents* victory would not.

Conversely, if the States prevailed here in vacating DACA or rendering it void *ab initio*, there no longer would be anything for the *Regents* plaintiffs (and all other similarly situated plaintiffs) to litigate: those courts cannot enjoin the rescission of a policy that has been judicially vacated or rendered void *ab initio*. *In re Scruggs*, 392 F.3d 124, 129-30 (5th Cir. 2004) (court cannot grant relief concerning something that has ceased to exist). The only way that the *Regents* case or controversy would survive a States' victory here would be if the non-prevailing federal defendants "desire[] to reinstate the invalidated regulation." *Maher v. Roe*, 432 U.S. 464, 468 n.4 (1977); *Chem. Mfrs. Ass'n v. NRDC*, 470 U.S. 116, 136 n.2 (1985). That seems unlikely here, however, given that the federal defendants rescinded DACA *before* the States sued. *Schweiker v.*

*Gray Panthers*, 453 U.S. 34, 42 n.12 (1981) (disregarding rule change that "reflects no independent judgment of the Secretary" in assessing suggestion of mootness caused by agency action to implement the result in third-party litigation). Here, the federal defendants have independently concluded that DACA is legally untenable under this Circuit's precedents.

Similarly, this litigation does not violate the first-to-file rule: "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999). As indicated, this litigation concerns DACA's *initial promulgation*, which is distinct from DACA's *subsequent rescission*. The discretionary "first-to-file" rule applies to "litigation by different parties to many-sided transactions," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and is grounded on judicial economy and comity between coordinate courts. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). *Regents*-style cases ask primarily whether DACA's rescission was arbitrary under the *MVMA* line of cases, whereas this case asks whether DACA's initial promulgation violated the APA. Those are two different things and certainly not facets of a single "many-sided transaction." *See*, *e.g.*, *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) ("the requirement of identity of the issues is not met, and the first-to-file rule is inapplicable" where hospitals challenged the promulgation of a rule in an APA suit filed subsequently to an action filed to enforce that same rule). Because this litigation and the extra-circuit litigation over DACA's rescission concern different agency actions and were brought by entirely different plaintiffs, they are insufficiently related for purposes of the first-to-file rule.

In sum, if the *Regents*-style plaintiffs finally *lose*, that could undermine the Article III case or controversy here. And if the States *prevail* here, that would undermine the Article III case or

controversy in DACA-rescission cases such as *Regents*. But neither the pendency of *Regents*-style cases nor the preliminary injunctions issued in them — or even a future pro-DACA permanent injunction — provides any barrier to this suit because nothing prevents the *Regents* plaintiffs and the plaintiff States here from each prevailing. It remains possible that both DACA's rescission and DACA's promulgation violated the APA.

## **CONCLUSION**

This Court should grant the plaintiff States' motion for summary judgment and vacate DACA.

Dated: February 20, 2019                     Respectfully submitted,

                                              /s/ Lawrence J. Joseph
                                             Lawrence J. Joseph
Christopher J. Hajec                         D.C. Bar No. 464777 (admitted *pro hac vice*)
Director of Litigation                       1250 Connecticut Av NW, Ste 700-1A
Immigration Reform Law Institute             Washington, DC 20036
25 Massachusetts Avenue, NW, Suite 335       Tel: 202-669-5135
Washington, DC 20001                         Fax: 202-318-2254
Tel: 202-232-5590                            Email: ljoseph@larryjoseph.com
Fax: 202-464-3590
Email: chajec@irli.org

                                             *Counsel for Amici Curiae*