**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al*., | |
| Plaintiffs, | |
| v. | Case No. 18-cv-00068 |
| UNITED STATES OF AMERICA, *et al*., | |
| Defendants, | |
| KARLA PEREZ, *et al*., | |
| Defendant-Intervenors, | |
| and | |
| STATE OF NEW JERSEY, | |
| Defendant-Intervenor. | |

**FEDERAL DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

    A.  DACA and DAPA................................................................................................ 2

    B.  The Original *Texas v. United States* Litigation.................................................. 3

    C.  The Rescission of DACA .................................................................................... 4

    D.  The DACA-Rescission Litigation........................................................................ 4

    E.  The Current *Texas v. United States* Litigation .................................................. 6

STATEMENT OF THE ISSUES........................................................................................ 6

SUMMARY OF THE ARGUMENT ................................................................................. 7

ARGUMENT ..................................................................................................................... 8

    I.   SUBSTANTIVE APA CLAIM................................................................ 8

    II.   PROCEDURAL APA CLAIM ................................................................ 10

    III.  TAKE CARE CLAUSE CLAIM .............................................................. 12

    IV.  REQUESTED RELIEF ............................................................................ 12

CONCLUSION.................................................................................................................. 16

i

## **TABLE OF AUTHORITIES**

### CASES

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ................................................................. 14

*Alfred L. Snapp & Son v. Puerto Rico,*
    458 U.S. 592 (1982) ................................................................... 8

*Batalla Vidal v. Nielsen,*
    279 F. Supp. 3d 401 (E.D.N.Y. 2018) ............................... 4, 5, 15

*Casa de Maryland v. DHS,*
    284 F. Supp. 3d 758 (D. Md. 2018) ........................................... 5

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................... 7

*Cent. & S. W. Servs., Inc. v. EPA,*
    220 F.3d 683 (5th Cir. 2000) ................................................... 14

*Colby v. J.C. Penney Co.,*
    811 F.2d 1119 (7th Cir. 1987) ................................................. 15

*eBay Inc. v. MercExchange,*
    547 U.S. 388 (2006) ................................................................. 13

*Feller v. Brock,*
    802 F.2d 722 (4th Cir. 1986) ................................................... 15

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ................................................................. 14

*NAACP v. Trump,*
    321 F. Supp. 3d 143 (D.D.C. 2018) ........................................... 5

*Pratt v. Harris Cty.,*
    822 F.3d 174 (5th Cir. 2016) ..................................................... 7

*Regents of Univ. of Cal. v. DHS,*
    279 F. Supp. 3d 1011 (N.D. Cal. 2018) ............................... 5, 15

*Regents of Univ. of Cal. v. DHS,*
    908 F.3d 476 (9th Cir. 2018) ..................................................... 5

*Samuels v. Mackell,*
    401 U.S. 66 (1971) ........................................................................... 13

*Sanchez-Espinoza v. Reagan,*
    770 F.2d 202 (D.C. Cir. 1985) ....................................................... 13

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ................................................... *passim*

*Texas v. United States,*
    328 F. Supp. 3d 662 (S.D. Tex. 2018) ................................... *passim*

*Texas v. United States,*
    86 F. Supp. 3d 591 (S.D. Tex. 2015) ................................................ 8

*Topalian v. Ehrman,*
    954 F.2d 1125 (5th Cir. 1992) .......................................................... 7

*Trembling Prairie Land Co. v. Verspoor,*
    145 F.3d 686 (5th Cir. 1998) ......................................................... 12

*United States v. Texas,*
    136 S. Ct. 2271 (2016) ...................................................................... 3

*United States v. Texas,*
    137 S. Ct. 285 (2016) ........................................................................ 3

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) ......................................................................... 15

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ......................................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................. 13

## STATUTES

5 U.S.C. § 553 ........................................................................................ 6

5 U.S.C. § 702(1) .................................................................................. 14

5 U.S.C. § 703 ...................................................................................... 14

5 U.S.C. § 706(2) .................................................................................. 13

8 U.S.C. § 1182(a)(9)(B) ...................................................................... 11

**REGULATIONS**

8 C.F.R. § 1.3(a)(4)(vi) ............................................................................10

8 C.F.R. § 274a.12(c)(14) ......................................................................... 10

**ADMINISTRATIVE DECISIONS**

Control of Employment of Aliens
  52 Fed. Reg. 16,216 (1987).................................................................11

Definition of the Term Lawfully Present in the United States for Purposes of
Applying for Title II Benefits Under Section 401(b)(2) of Public Law,
  61 Fed. Reg. 47,039 (Sept. 1996)........................................................11

**RULES**

Fed. R. Civ. P. 56 ...................................................................................... 6

**Constitutional Provisions**

U.S. Const. art. II, § 3 .............................................................................. 12

**INTRODUCTION**

The United States agrees with Plaintiffs and this Court that the policy known as Deferred Action for Childhood Arrivals (DACA), like the policy known as Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA), is unlawful, and the United States Department of Homeland Security (DHS) has rescinded the DACA policy.  Given that DACA is contrary to the Immigration and Nationality Act (INA), Plaintiffs are entitled to summary judgment on their substantive claim under the Administrative Procedure Act (APA).  Summary judgment is inappropriate, however, with respect to Plaintiffs' procedural APA claim at this time (as there remain genuine disputes of material fact) and their Take Care Cause claim (as constitutional issues should be avoided when a disposition on statutory grounds is available).

Despite the government's conclusion that DACA is unlawful and its efforts to end DACA on an orderly timeline, district courts in California and New York have entered preliminary injunctions ordering Federal Defendants to continue (most of) the DACA policy on a nationwide basis.  Another district court in Washington, D.C. has entered an order (partially stayed) that would have the effect of vacating the rescission memorandum in its entirety, and could require DHS to accept DACA requests from individuals who have never previously received DACA.  While Federal Defendants are currently obligated to comply with these orders, they are challenging those orders on appeal, going so far as to seek direct review in the Supreme Court, given the public interest in and urgency of the issues in those cases.

Although the United States agrees that DACA is unlawful, here, the erroneous nationwide injunctions issued by district courts in the Eastern District of New York and Northern District of California would conflict with permanent relief—and especially nationwide relief—in this case, subjecting the United States to inconsistent obligations.  This brings into stark relief the problem

1

with nationwide injunctions, which the United States vigorously opposed before the Second and Ninth Circuits and the Supreme Court in part for this very reason.  If this Court nevertheless determines that a permanent injunction (or declaration or vacatur) is warranted here, it should stay such order for a minimum of 14 days so the United States can seek stays of *all* the DACA orders in the respective courts of appeals and the Supreme Court.

## BACKGROUND

### A.    DACA and DAPA

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the policy now known as DACA.  *See* ECF Dkt. 358-1 (DACA Memo).  DACA made deferred action—a temporary postponement of the removal of individuals unlawfully present in the United States—available to "certain young people who were brought to this country as children" in violation of the immigration laws.  DACA Memo at 1.  After completion of a background check, successful requestors would receive deferred action for a period of two years, subject to renewal. *Id*. at 2-3.  The DACA Memo stated that deferred action was an "exercise of prosecutorial discretion," *id*. at 1, and that requests would "be decided on a case by case basis," *id*. at 2.  The Memo thus provided that DACA "confer[red] no substantive right, immigration status or pathway to citizenship.  Only the Congress, acting through its legislative authority, can confer these rights." *Id*. at 3.

In 2014, then-Secretary of Homeland Security Jeh Johnson issued a memorandum expanding DACA and creating a new, similar policy known as DAPA.  *See* ECF Dkt. 358-7 (DAPA Memo).  DAPA made deferred action available to certain unlawfully present aliens who were "parents of U.S. citizens or lawful permanent residents."  DAPA Memo 3.  The DAPA Memo also expanded DACA by adjusting the date-of-entry requirement from June 2007 to January 2010,

removing the age cap, and extending the DACA renewal period from two to three years.  *Id*. at 3-4.

### B.      The Original *Texas v. United States* Litigation

The DAPA Memo—including its expansion of DACA—was challenged in this Court by a coalition of 26 States, including all eight of the Plaintiff States in this action.  Affirming this Court, the Fifth Circuit upheld a nationwide preliminary injunction barring implementation of DAPA and expanded DACA.  *Texas v. United States* (*Texas I*), 809 F.3d 134, 147-48 (5th Cir. 2015).  Like this Court, the Fifth Circuit held that the DAPA Memo failed to comply with the APA's notice-and-comment requirement, but emphasized that "DAPA is much more than a nonenforcement policy," and that "a traditional nonenforcement policy would not necessarily be subject to notice and comment."  *Id*. at 178 n.156.  The Fifth Circuit also held that DAPA was "manifestly contrary" to the INA because DAPA and expanded DACA awarded deferred action "to persons who have never had a legal status and may never receive one."  *Id*. at 184, 186 (footnotes omitted).  That decision was affirmed by an equally divided Supreme Court, 136 S. Ct. 2271 (2016), which later denied the government's request for a rehearing upon confirmation of a ninth Justice, 137 S. Ct. 285 (2016), leaving this Court's preliminary injunction order in place.

Faced with the threat of continued litigation over a policy that had been enjoined by the courts, DHS rescinded the DAPA Memo on June 15, 2017, including its expansion of DACA.  *See* ECF Dkt. 358-9.  On June 29, 2017, Texas and several other States threatened to amend their complaint to challenge the DACA Memo directly, noting that it suffers from the same legal flaws that the courts had identified in expanded DACA and DAPA.  *See* ECF Dkt. 358-10.

### C.      The Rescission of DACA

On September 4, 2017, then-Attorney General Sessions sent a letter to then-Acting Secretary Duke advising her that DACA should be rescinded.  *See* ECF Dkt. 358-11.  In his judgment, DACA was an unlawful "open-ended circumvention of immigration laws" that "likely" would be invalidated in the imminent litigation because it contained the same legal defects that the courts had recognized with respect to the DAPA memorandum.  The next day, the Acting Secretary issued a memorandum directing a wind down of the DACA policy in an orderly fashion.  *See* ECF Dkt. 358-12 (Rescission Memo).  As she explained, "[t]aking into consideration the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated." Rescission Memo at 4.  Invoking her "authority in establishing national immigration policies and priorities," she rescinded the DACA Memo, *id*. at 4, and instructed that deferred action going forward should be provided "only on an individualized[,] case-by-case basis," *id*. at 2.

On September 12, 2017, the parties to the original Texas litigation filed a joint stipulation of dismissal.  *See Texas v. United States* (*Texas II*), 328 F. Supp. 3d 662, 672-673 (S.D. Tex. 2018), citing *Texas I*, ECF Dkt. 473.

### D.      The DACA-Rescission Litigation

In the weeks following the Acting Secretary's decision, 12 lawsuits challenging the Rescission Memo were filed in six federal district courts.  The government has defended these lawsuits vigorously, including by repeatedly seeking relief from the Supreme Court.  In two of the six jurisdictions, however, plaintiffs have succeeded in obtaining nationwide preliminary injunctive relief that significantly restricts DHS's ability to end DACA on the timeline contemplated by the Rescission Memo.  *See Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 437

(E.D.N.Y. 2018); *Regents of Univ. of Cal. v. DHS*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018), *aff'd*, 908 F.3d 476 (9th Cir. 2018).  *See generally Texas II*, 328 F. Supp. 3d at 681-87 (providing lengthier summary of rescission litigation as of August 2018).  In a third jurisdiction, plaintiffs have obtained a vacatur of the Rescission Memo—thus requiring DHS to process initial DACA requests in addition to renewals—but the district court stayed that order in part so as not to require Federal Defendants to accept new initial requests (or applications for advance parole) during the pendency of the appeal.  *NAACP v. Trump*, 321 F. Supp. 3d 143, 150 (D.D.C. 2018).

Federal Defendants promptly appealed each adverse ruling.  The Ninth Circuit held oral argument on May 15, 2018; the Second Circuit on January 25, 2019; and the D.C. Circuit on February 22, 2019.  Nearly six months after oral argument in the Ninth Circuit, the government filed three petitions for a writ of certiorari before judgment in the Supreme Court on November 5, 2018, so that the Court would have an opportunity to consider the validity of DACA's rescission during the current Term.  Three days later, on November 8, 2018, the Ninth Circuit issued a decision affirming the California district court's preliminary injunction (and its partial denial of the government's motion to dismiss), *Regents of Univ. of Cal. v. DHS*, 908 F.3d 476 (9th Cir. 2018), and the government promptly asked the Supreme Court to treat its petition in that case as a petition for certiorari after judgment.  The Supreme Court considered all three petitions on January 11, 2019, but has not acted on them since that time.[1]

---

[1] A fourth district court in Maryland upheld the validity of the Rescission Memo but permanently enjoined DHS from making any changes to its existing policy governing the sharing of information provided by DACA requestors.  *Casa de Maryland v. DHS*, 284 F. Supp. 3d 758 (D. Md. 2018).  Both plaintiffs and Federal Defendants appealed, and the Fourth Circuit held oral argument on December 11, 2018.

### E.       The Current *Texas v. United States* Litigation

Plaintiffs, a group of seven States, filed this action on May 1, 2018.  ECF Dkt. 1.  On June 14, 2018, Plaintiffs amended their complaint to include one additional state and two Governors, ECF Dkt. 104.  The Governor or Maine subsequently withdrew from the litigation.  ECF Dkts. 352, 360.

Plaintiffs argue that the DACA policy is unlawful for three reasons: (1) it violates the Take Care Clause of Article II, Section 3 of the United States Constitution; (2) it was not issued through the APA's notice-and-comment procedures, *see* 5 U.S.C. § 553; and (3) it conflicts with the INA and is therefore substantively unlawful under the APA.  On May 2, 2018, Plaintiffs filed a motion for a preliminary injunction, in which they sought to "enjoin the 2012 memorandum creating DACA" on a nationwide basis.  ECF Dkt. 5.

On August 31, 2018, this Court denied Plaintiffs' motion because of their delay in bringing a challenge to DACA.  *Texas II*, 328 F. Supp. 3d 662.  In doing so, however, the Court held that that the matter presents a case or controversy for purposes of Article III, *id*. at 687-90; that Plaintiffs have sufficient injury to establish standing, *id*. at 690-705; and that Plaintiffs had a likelihood of success on the merits on their substantive and procedural APA claims, *id*. at 712-36.  The Court declined to consider Plaintiffs' Take Care Clause claim based on the doctrine of constitutional avoidance.  *Id*. at 710-12.

### STATEMENT OF THE ISSUES

The question is whether this Court should grant summary judgment to Plaintiffs on their substantive APA, procedural APA, and Take Care Clause claims and declare DACA unlawful, vacate the DACA memo, and permanently enjoin Federal Defendants from issuing or renewing any deferred action under DACA.  Federal Rule of Civil Procedure 56 provides that summary

judgment is appropriate where there is no genuine dispute as to any material fact and Plaintiffs are entitled to judgment as a matter of law.  *See Pratt v. Harris Cty.*, 822 F.3d 174, 180 (5th Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

## SUMMARY OF THE ARGUMENT

This Court has already ruled, as a matter of law, that DACA is substantively unlawful under the APA.  Federal Defendants agree.  DACA is materially indistinguishable from the DAPA and expanded DACA policies that were held substantively unlawful in *Texas*.  Plaintiffs are therefore entitled to summary judgment on their substantive APA claim (as the government recognizes that this Court ruled that Plaintiffs have standing for purposes of its preliminary-injunction order and nothing has changed that would call that holding into question).

By contrast, this Court should not grant Plaintiffs summary judgment on their procedural APA claim.  Under the Fifth Circuit's controlling precedent in *Texas*, resolving this claim would require a factual determination that the DACA Memo did not give DHS and its employees genuine freedom to exercise discretion in granting deferred action.  The Court found that Plaintiffs had not established that material fact at the preliminary-injunction stage, and the record has not materially changed since then.

Nor should this Court grant Plaintiffs summary judgment on their Take Care Clause claim under the doctrine of constitutional avoidance.  Instead, it should simply hold DACA substantively unlawful under the APA to avoid addressing this constitutional issue.

Finally, while Plaintiffs would ordinarily be entitled to their requested declaration, vacatur, and permanent injunction under the Fifth Circuit's controlling precedent in *Texas*, granting such relief in these circumstances would subject the government to inconsistent obligations.  If the Court

7

nevertheless concludes that Plaintiffs' requested relief is appropriate, the Court should stay such relief for a minimum of 14 days so the United States can seek stays of all the DACA orders in the respective courts of appeals and the Supreme Court.

## ARGUMENT

### I. SUBSTANTIVE APA CLAIM

Plaintiffs are entitled to summary judgment on their substantive APA claim because the Court, guided by Fifth Circuit precedent, has already held that "DACA is 'manifestly contrary' to the statutory scheme promulgated by Congress" in the INA. *Texas II*, 328 F. Supp. 3d at 722 (quoting *Texas I*, 809 F.3d at 186). As this Court correctly recognized, with respect to their substantive invalidity under the APA, "DACA and DAPA are basically identical, and there is no legal ground for 'striking DAPA that wouldn't apply to DACA' (and certainly no legal ground for striking Expanded DACA that does not apply to DACA itself)." *Id.* at 743; *see* ECF Dkt. 71, at 13-14 (discussing the critical features shared by all three policies).[2]

Defendant-Intervenors have offered only two distinctions between and DACA and the DAPA and expanded DACA policies, and this Court has correctly rejected both as immaterial. *Texas II*, 328 F. Supp. 3d at 723-25. To start, Defendant-Intervenors have erroneously tried to distinguish DACA from DAPA on the ground that the INA provides alien parents of U.S. citizens

---

[2] Of course, Plaintiffs also must establish standing to obtain summary judgment. Federal Defendants acknowledge, but respectfully disagree with, the Court's earlier ruling that Plaintiffs have standing under the *parens patriae* doctrine and because of increased social-services costs. *Texas II*, 328 F. Supp. 3d at 694-705. "A State does not have standing as *parens patriae* to bring an action against the Federal Government" on behalf of its citizens, *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982), and the "indirect damages" of increased social-services costs were "not caused by" DACA and the "relief requested by Plaintiffs would not redress these damages," *Texas v. United States*, 86 F. Supp. 3d 591, 634 (S.D. Tex. 2015) (rejecting similar standing theory with respect to DAPA and expanded DACA). This brief, however, accepts that this Court ruled that Plaintiffs have standing for purposes of its preliminary-injunction order and nothing has changed that would call that holding into question.

with a pathway to lawful status but does not so provide for aliens who arrived as children.  *See id.* at 723-24.  That is fundamentally wrong for two related reasons.  *First*, it gets matters precisely backwards.  The Fifth Circuit pointed to particular statutory pathways to lawful presence merely as evidence that DAPA had unlawfully departed from "the INA's specific and intricate provisions" and "Congress's careful plan."  *Texas I*, 809 F.3d at 186; *see also id.* at 179-80.  Accordingly, the fact that Congress has provided statutory pathways to lawful status only for certain individuals similarly situated to some DAPA recipients—but not DACA recipients—simply makes the sweeping grant of deferred action in DACA *more* inconsistent with the INA than even DAPA was. *Second*, that conclusion is confirmed by the fact that the Fifth Circuit itself invalidated DAPA and expanded DACA even as to aliens who lacked a pathway to lawful status.  The INA does not provide alien parents of *lawful permanent residents* with a pathway to lawful status, and the Fifth Circuit expressly relied on that fact as a basis to invalidate, not uphold, DAPA's application to parents of LPRs.  *Id.* at 180.  Likewise, the aliens who could have requested expanded DACA did not have a pathway to lawful status, as they also arrived as children and were merely older or had shorter residence in this country than the aliens who can request DACA under the original DACA policy.

Second, Defendant-Intervenors observe that DAPA would have been available to approximately 4.3 million aliens, while DACA has been granted to only around three quarters of a million aliens.  *See* ECF Dkt. 215, at 19.  But that difference cannot be ascribed "legal significance."  *Texas II*, 328 F. Supp. 3d at 724 (emphasis omitted).  At the outset, the right comparator is not the number of aliens granted DACA, but the number qualified to request it: approximately 1.5 million.  *See id.* at 676.  In either case, a non-enforcement policy affecting

700,000 or 1.5 million aliens is plainly a policy of "vast 'economic and political significance'" to which the Fifth Circuit's analysis applies. *Texas I*, 809 F.3d at 183 (citation omitted).

In sum, as then-Attorney General Sessions correctly told DHS, DACA is unlawful because it is an open-ended circumvention of immigration laws that shares the same legal defects that DAPA (and expanded DACA) did. *See* ECF Dkt. 358-11. Accordingly, the Court should grant Plaintiffs summary judgment on their substantive APA claim.

## II.   PROCEDURAL APA CLAIM

Because DACA is substantively unlawful under the INA, this Court need not address whether the DACA Memo violated the APA's notice-and-comment requirements as well. Although this Court previously held that DACA is procedurally unlawful on the theory that it imposes rights and obligations by granting "lawful presence," *Texas II*, 328 F. Supp. 3d at 731-32, Federal Defendants respectfully disagree. The DACA Memo *never* used the phrase "lawful presence" and, to the contrary, expressly stated that it "confer[red] no substantive right [or] immigration status" on the aliens at issue. DACA Memo at 3. Likewise, the Memo did not *itself* confer any benefits on those aliens. Instead, it merely acknowledged that, "[f]or individuals who are granted deferred action" under DACA, DHS "shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action." *Id.* Critically, that eligibility for work authorization, like the eligibility for other benefits that flowed to DACA recipients, was based on a *pre-existing* regulation that is triggered *whenever* DHS grants deferred action. *See* 8 C.F.R. § 274a.12(c)(14) ("alien who has been granted deferred action" may obtain work authorization in certain circumstances); *see also, e.g.*, *id.* § 1.3(a)(4)(vi) (alien with "deferred action" is considered "lawfully present" for purposes of applying for Social Security benefits). And that pre-existing regulation went through notice and comment itself. *See, e.g.*,

52 Fed. Reg. 16,216 (1987) (work authorization); *see also, e.g.*, 61 Fed. Reg. 47,039 (1996) (Social Security benefits).[3]

The Fifth Circuit's statement that deferred action "affirmatively confer[s] 'lawful presence' and associated benefits" on "unlawfully present aliens," *Texas I*, 809 F.3d at 166, is best understood as shorthand for the fact that "under pre-existing statutory and regulatory provisions a grant of deferred action would trigger certain collateral benefits for such aliens, such as eligibility for employment authorization."   ECF Dkt. 100-1, at 4.   As then-Attorney General Sessions explained, DACA "allows" certain unlawfully present aliens "to request and receive . . . benefits such as work authorization and participation in the Social Security program" (under regulations that went through notice and comment decades ago).   ECF Dkt. 71-1.

Accordingly, the DACA Memo did not have to undergo notice and comment on the ground that it created substantive rights or benefits.   Were the law otherwise, *any* grant of deferred action—whether categorical or individual—would have to undergo notice and comment on the theory that it would trigger collateral benefits under pre-existing regulations.   Conversely, any decision to *terminate* either an individual grant of deferred action or a general deferred action policy (like DACA's rescission) could equally be mischaracterized as modifying rights and obligations.   Plaintiffs are therefore not entitled to summary judgment on the theory that DACA imposes rights and obligations.

---

[3] Notice-and-comment procedures were unnecessary for a DHS policy providing that deferred action tolls the accrual of "unlawful presence" for purposes of potential inadmissibility under 8 U.S.C. § 1182(a)(9)(B), which is triggered only upon the individual's departure from the United States.   *See* Memorandum from Johnny N. Williams, Exec. Assoc. Comm'r, Office of Field Operations, to Reg'l Dirs. et al., Unlawful Presence 1 (June 12, 2002).   That policy interprets 8 U.S.C. § 1182(a)(9)(B), does not bind any regulated party or court in any way, and merely addresses DHS's internal computation of time.   In any event, like the other benefits discussed above, this benefit was not granted by DACA itself, but rather flows from a pre-existing policy for any deferred action recipient.

Nor would it be appropriate to rule at this stage that DACA is procedurally unlawful under the Fifth Circuit's precedent in *Texas* on the ground that it did not permit the exercise of discretion by agency decisionmakers. At the preliminary-injunction stage, this Court did "not find the evidence of discretion by the individuals processing DACA applications to be compelling either way." *Texas II*, 328 F. Supp. 3d at 732; *see id* at 732-34. The evidence on this issue has not materially changed since then. Because Plaintiffs have failed to carry their burden of establishing that there is no genuine dispute as to this material fact under *Texas I*, granting summary judgment on their procedural APA claim would be inappropriate.

## III.   TAKE CARE CLAUSE CLAIM

Because DACA is substantively unlawful under the INA, the Court need not address the constitutional question whether DACA violated the President's duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, or whether any private cause of action exists to challenge actions under that Clause. Nor should it. As this Court correctly recognized in declining to resolve Plaintiffs' Take Care Clause claim at the preliminary-injunction stage, "[i]t is a long-standing precept, steeped in the traditions of federal jurisprudence, that courts should avoid ruling on constitutional issues when a matter can be resolved on non-constitutional grounds." *Texas II*, 328 F. Supp. 3d at 710; *see also, e.g.*, *Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686, 689 (5th Cir. 1998) ("Where a party raises both statutory and constitutional arguments in support of a judgment, ordinarily [courts] first address the statutory argument in order to avoid unnecessary resolution of the constitutional issue."). There is no reason for a different approach at this stage.

## IV.   REQUESTED RELIEF

Plaintiffs seek (1) a declaratory judgment that DACA is unlawful, (2) vacatur of the DACA Memo, and (3) a permanent injunction "preventing the Federal Defendants from issuing any new

grant of deferred action status pursuant to the DACA program and any renewal of deferred action status pursuant to DACA."  ECF Dkt. 356.  While Plaintiffs are not entitled to any of these remedies as a matter of right, the equities would ordinarily counsel in favor of such relief here under the Fifth Circuit's precedent in *Texas I*.

To obtain a permanent injunction, Plaintiffs must meet the equitable criteria for a preliminary injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing criteria for a permanent injunction).  The same is true with respect to a "declaratory judgment," as it "is, in a context such as this where federal officers are defendants, the practical equivalent of specific relief such as injunction," and "[s]uch equivalence of effect dictates an equivalence of criteria for issuance."  *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985) (Scalia, J.); *cf. Samuels v. Mackell*, 401 U.S. 66, 70 (1971) (explaining that courts must "decide to grant or withhold declaratory relief on the basis of traditional equitable principles" because "a suit for declaratory judgment [i]s . . . 'essentially an equitable cause of action'").

Nor does the APA compel courts to abandon established equitable principles with respect to vacatur.  A court "do[es] not lightly assume that Congress has intended to depart from established principles" regarding equitable discretion, *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 313 (1982), and the APA's general instruction that unlawful agency action "shall" be "set aside," 5 U.S.C. § 706(2), is insufficient to mandate such a departure.  Indeed, the Supreme Court held that not even a provision directing that an injunction "shall be granted" with respect to a threatened or completed violation of a particular statute was sufficient to displace traditional

principles of equitable discretion, *Hecht Co. v. Bowles*, 321 U.S. 321, 328-30 (1944), and Congress is presumed to have been aware of that holding when it enacted the APA's "shall" be "set aside" language two years later.  In fact, the APA expressly confirms that, absent a special review statute, "[t]he form of proceeding for judicial review" is simply the traditional "form[s] of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction," *id.* § 703, and that the statutory right of review does not affect "the power or duty of the court to . . . deny relief on any . . . appropriate legal or equitable ground," *id.* § 702(1).  The Supreme Court therefore has confirmed that, even in an APA case, "equitable defenses may be interposed." *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967).  Recognizing this principle, courts finding error under the APA sometimes decline to vacate the challenged agency action when doing so would be "disruptive."  *See, e.g.*, *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000).

Under Fifth Circuit precedent established in the related *Texas* litigation, Plaintiffs would ordinarily be entitled to their requested relief where, as here, the United States agrees that DACA is unlawful and should be rescinded.  *See Texas I*, 809 F.3d at 186-87 (holding that the equitable factors justified a preliminary injunction against DAPA and expanded DACA).  Accordingly, this Court previously concluded that Plaintiffs had demonstrated "irreparable injury" and "that they have no other viable legal remedy," *Texas II*, 328 F. Supp. 3d at 740, but ultimately distinguished the Fifth Circuit's decision in *Texas I* on the basis of Plaintiffs' "delay in confronting DACA," *id.* at 742; *see, e.g.*, *id.* at 741 ("Unlike in *Texas I*, the Plaintiff States ask this Court to enjoin a program that has been ongoing for more than six years.").  Federal Defendants respectfully submit that this Court's conclusion that a *preliminary* injunction was inappropriate in light of Plaintiffs' delay does not support the denial of a *permanent* injunction in light of the Fifth Circuit's balancing of the equities in *Texas I*.  Consistent with the fact that "[t]he purpose of a preliminary injunction is

merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), this Court's principal reason for denying preliminary relief was that it would "upset" rather than preserve "the status quo" created by Plaintiffs' decision to refrain from challenging DACA until 2018, *Texas II*, 328 F. Supp. 3d at 742; *see id.* at 741-42. That consideration, however, should not preclude Plaintiffs from *ever* obtaining *any* equitable relief after this Court issues a final decision on the merits, especially with respect to new applicants and new renewals. Any interest the Defendant-Intervenors or the public has in preserving the status quo should not prevent this Court from declaring unlawful, vacating, and enjoining a policy that Plaintiffs, the United States, and this Court agree "contradicts statutory law." *Id.* at 735.

Here, however, district courts in California and New York have issued legally incorrect and overbroad nationwide preliminary injunctions requiring Federal Defendants to continue (most of) DACA nationwide. *Regents*, 279 F. Supp. 3d at 1048; *Batalla Vidal*, 279 F. Supp. 3d at 437. If this Court orders Federal Defendants to end the DACA policy, Federal Defendants will face simultaneous conflicting court orders—which highlights the impropriety of issuing nationwide injunctions as a general matter, which the government continues to oppose both here and in the DACA-rescission litigation.[4] In similar situations, courts have typically held that the appropriate course is for a district court to refrain from issuing a conflicting directive. *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987).

---

[4] Although Federal Defendants acknowledge that the Fifth Circuit affirmed this Court's prior nationwide injunction against DAPA and expanded DACA, *Texas I*, 809 F.3d at 187-88, and that this Court has indicated it would issue a nationwide injunction here, *see Texas II*, 328 F. Supp. 3d at 679-81, Federal Defendants continue to maintain that nationwide injunctions that go beyond redressing any cognizable injuries of Plaintiffs are inappropriate.

Nevertheless, if this Court decides that permanent relief is appropriate, *see Texas II*, 328 F. Supp. 3d at 740 n.110 ("This Court would not hesitate to enter an injunction, even in the face of opposing rulings from sister courts, if compelled by law . . . ."), the Court should stay such an order for a minimum of 14 days so the United States can seek emergency relief in *all* of the DACA cases in the respective courts of appeals and the Supreme Court to resolve its conflicting obligations. A stay would serve the public interest because it would be impossible for the United States to comply with conflicting orders, and a stay would facilitate the orderly resolution of the litigation over the DACA policy.

## CONCLUSION

For the foregoing reasons, if the Court determines that permanent relief is warranted notwithstanding the conflicting injunctions, the Court should stay its order for a minimum of 14 days so the United States can seek stays of all the DACA orders in the respective courts of appeals and the Supreme Court.

Dated: February 25, 2019

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

Attorneys for Federal Defendants

Respectfully submitted,

*/s/ Jeffrey S. Robins*
JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington, DC 20044
Telephone: (202) 616-1246
Facsimile: (202) 305-7000
jeffrey.robins@usdoj.gov

16

**CERTIFICATE OF SERVICE**

I certify that on February 25, 2019, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jeffrey S. Robins*
JEFFREY S. ROBINS