# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, ET AL.; | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| *v.* | ) Case No. 1:18-cv-00068 |
| | ) |
| UNITED STATES OF AMERICA, ET AL.; | ) |
| | ) |
| *Defendants,* | ) |
| | ) |
| *and* | ) |
| | ) |
| KARLA PEREZ, ET AL.; | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| *Defendants-Intervenors.* | ) |
| | ) |

## PLAINTIFF STATES' RESPONSE IN OPPOSITION TO
## DEFENDANT-INTERVENORS' RULE 56(d) MOTION

## INTRODUCTION

Defendant-Intervenors seek to conduct discovery that is not proportional to the needs of the case and will accomplish nothing other than to cause delay and needless expense. This case is ripe for final disposition on the extensive record before the Court. The Court has already ruled that Plaintiff States have standing. *Texas v. United States* (*Texas II*), 328 F. Supp. 3d 662, 690-705 (S.D. Tex. 2018). It has already ruled that this case "unquestionably presents a case or controversy." *Id.* at 687. It has already ruled that there is no difference of legal significance between DACA and the DAPA program that the Fifth Circuit held was unlawful. *Id.* at 723-25. And it has already ruled that DACA is substantively unlawful and procedurally invalid under the Administrative Procedure Act ("APA"). *Id.* at 720, 728-29. As there are no genuine disputes of material fact left to resolve, the Court can dispose of this case without the requested needless discovery.

## SUMMARY OF THE ARGUMENT

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The summary-judgment procedure set forth in Rule 56 is crucial to achieving the goals of efficient dispute resolution and judicial economy. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). "Summary judgment is a marvelous instrument

in expediting the administration of justice." *Bros, Inc. v. W. E. Grace Mfg. Co.*, 261 F.2d 428, 432 (5th Cir. 1958).

Under Rule 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Consistent with the purpose of Rule 56 procedure, parties may move for summary judgment at any point during the litigation "to prevent vexation and delay, improve the machinery of justice, [and] promote the expeditious disposition of cases." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1189 (11th Cir. 2005) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2712 (4th ed. 2008)). Refusing to timely consider early motions for summary judgment causes "much unnecessary discovery and expense." *Cordoba*, 419 F.3d at 1189.

Rule 56(d) provides that a district court may defer consideration on, or deny, summary judgment if the nonmovant shows that, "for *specified reasons*, it cannot present facts *essential* to justify its opposition." Fed. R. Civ. P. 56(d)(1) (emphasis added). To prevail on a Rule 56(d) motion, the movant "must demonstrate 'how additional discovery will create a genuine issue of material fact.'" *Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 200 n.8 (5th Cir. 2017) (quoting *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 445 (5th Cir. 2001)). The movant must rely on more than "vague assertions" to support its request—it "must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will

influence the outcome of the pending summary judgment motion.'" *Prospect Capital Corp. v. Mut. of Omaha Bank*, 819 F.3d 754, 757 (5th Cir. 2016) (quoting *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (per curiam)). Defendant-Intervenors have not satisfied this standard.

## ARGUMENT

**I.    Defendant-Intervenors have not—and cannot—point to additional discovery that will create a genuine issue of material fact.**

None of the eight items on Defendant-Intervenors' list of matters for which they seek additional discovery will influence the outcome of the pending summary judgment motion. Defendant-Intervenors seek to inquire into areas where the Court has already ruled in favor of Plaintiff States and where discovery would not be outcome-determinative in any event. Because there are no genuine disputes of material fact related to the Court's jurisdiction or the merits of Plaintiff States' claims, Defendant-Intervenors' Rule 56(d) motion fails.

*Facts related to Plaintiffs' costs, including border security costs and costs associated with university student work-study programs*

Defendant-Intervenors seek facts related to Plaintiff States' border security and education costs incurred as a result of DACA. For standing purposes, however, Plaintiff States need not prove damages from a single individual as this inquiry appears to assume. *Texas II*, 328 F. Supp. 3d at 702 ("Texas need not plead damages from a particular individual when it pleads and has proof that it is being damaged by the entire program. In the scope of a program the size of DACA, with over 115,000

4

recipients in Texas alone, it is virtually certain that at least some DACA recipients utilize the emergency Medicaid services Texas is required to provide them.").

Moreover, independent of the costs of DACA as reflected in any particular area of public spending, the Court has already found that Plaintiff States have demonstrated multiple bases for their standing to bring suit. The Court determined that Texas established "a quasi-sovereign interest in the economic well-being of its citizens, which *amply* supports Texas's entitlement to special solicitude in the standing analysis." *Id.* at 693 (emphasis added). Plaintiff States showed, for example, that DACA recipients compete with legally present individuals for available jobs, which can result in DACA recipients being hired for jobs for which legally present individuals have applied and otherwise would have been hired. *Id.*; Pls.' Mot. for Summ. J. Ex. 21 (Suppl. Decl. of Donald Deere) at 5 (App. 443), ECF No. 358. ("[T]he addition of some 683,000 work-eligible individuals nationwide, with 112,000 of these in Texas . . . make it more difficult for some U.S. citizens to find employment.").

In addition, the Court held that Texas demonstrated standing on the basis of the costs it incurs providing DACA recipients with healthcare, education, and law enforcement services. It found that Texas proved that it "bears hundreds of millions of dollars in costs providing emergency Medicaid services to illegal aliens." *Texas II*, 328 F. Supp. 3d at 701. And it further noted that Defendant-Intervenors' own evidence proves that DACA increases the States' social services costs. *Id.* at 702 ("Finally, and perhaps most importantly for this topic, Defendant-Intervenors' own witness directly connected the dots for the Plaintiff States.").

Whether Plaintiff States incur the particular education and border security costs that Defendant Intervenors cite is wholly immaterial. The Court "does not need to resolve every factual controversy to make a standing determination." *Texas II*, 328 F. Supp. 3d at 695 n.44. Plaintiff States have shown standing on multiple grounds completely independent from the costs that Defendant-Intervenors seek to discover. Additional discovery on these costs would cause only undue delay and expense, and it is not proportional to the needs of the case.

*Facts related to the scope of injury to Plaintiffs other than Texas*

There is no genuine fact issue related to this inquiry because the scope of the injuries to any State apart from Texas is not dispositive. A single plaintiff with standing satisfies the case-or-controversy requirement of Article III. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). As earlier stated, the Court analyzed at length Texas's standing and found that Texas demonstrated a judicially-cognizable injury for numerous reasons. *Texas II*, 328 F. Supp. 3d at 690-705. Further discovery into the injuries of the other Plaintiff States will only prove unavailing and unnecessary in light of Texas's clearly established standing.

*Facts related to procedures followed by USCIS when evaluating and adjudicating DACA requests*

The undisputed evidence demonstrates that Immigration Service Officers have no genuine discretion in adjudicating DACA applications. "Nothing about [DACA] 'genuinely leaves the agency and its [employees] free to exercise discretion.'" *Texas v.*

6

*United States (Texas I)*, 86 F. Supp. 3d 591, 670 (S.D. Tex. 2015) (internal quotations omitted).

Moreover, Plaintiff States are nevertheless entitled to summary judgment even if the Court does not find discretion absent as a matter of law. In the appeal of *Texas I*, the Fifth Circuit held that DAPA was a substantive rule because it affected rights and obligations not only for the program's would-be recipients, but also for the states and federal government. *Texas v. United States*, 809 F.3d 134, 171-78. This Court correctly found that "DACA has exactly the same effect." *Texas II*, 328 F. Supp. 3d at 731. DACA has granted lawful presence to over 800,000 recipients, with a larger group eligible to apply for the same benefit. DACA recipients have been granted work authorization and access to Social Security, Medicare, advance parole, and an array of other federal and state benefits. Indeed, even (and perhaps especially) DACA recipients have affirmatively acknowledged the actual and substantive benefits that the program has provided them. *Id.* at 731 n.102; Pls.' Mot. for Prelim. Inj. 35-37, ECF No. 5.

DACA has undoubtedly affected the rights of its recipients and imposed obligations on the federal and state governments. *Texas II*, 328 F. Supp. 3d at 731. Indeed, as recognized by the Court, "the evidence that DACA confers rights and imposes obligations is overwhelming." *Id.* at 735. Thus, regardless of discretion, DACA still needed to go through notice-and-comment because it "affect[s] individual rights." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (quoting *Morton v. Ruiz*, 415 U.S. 199, 232 (1974)). Additional discovery into the procedures followed by USCIS

will not change the "overwhelming" evidence—accepted by all parties to this dispute—that DACA conferred individual rights. Accordingly, Defendant-Intervenors' request for additional discovery on this topic is unnecessary and not proportional to the needs of the case.

### *Facts related to Plaintiffs' claims about advance parole*

Defendant-Intervenors recycle this request from their earlier 56(d) motion filed before the Court's preliminary injunction order. ECF No. 287 at 7. Since Defendant-Intervenors first requested a delay for additional discovery into whether DACA recipients were adjusting their immigration status through advance parole, this Court has determined that "DACA's grant of advance parole eligibility allows its recipients to circumvent the INA's statutory requirement." *Texas II*, 328 F. Supp. 3d at 719. According to the director of USCIS, over 20,000 DACA recipients have been approved for advance parole, and approximately 3,000 were granted an adjustment of status. *Id.* (citing USCIS Director Leon Rodriguez's June 29, 2016 letter to Senator Charles Grassley [ECF No. 224-2, Ex. 2]). The use of advance parole to the benefit of DACA is undisputed by the parties. One of Defendant-Intervenors' own declarants co-authored a "veritable roadmap" advising how DACA recipients can use advance parole to avoid statutory barriers that would otherwise prevent them from adjusting their immigration status. *Texas II*, 328 F. Supp. 3d at 719 n.82 (citing *DACA, Advance Parole, and Family Petitions* 5, 8 (2016) [ECF No. 219, Ex. 23]).

Here again, even if there were a fact issue related to advance parole, it would still be immaterial because Plaintiff States have demonstrated numerous other ways

in which DACA has defied Congress's comprehensive statutory system in the field of immigration. As the Court correctly found, DACA also contradicts the INA's provisions concerning lawful presence and the allocation of work authorization. *Texas II*, 328 F. Supp. 3d at 715-18. Thus, whether or not DACA recipients used advance parole to clear a path to citizenship, the record clearly shows that the program contradicts numerous other Congressional provisions as a matter of law. Additional discovery into advance parole is therefore not needed.

> *Facts related to Plaintiffs' labor-market distortion claim, including Plaintiffs' claim that DACA and the Affordable Care ACA ("ACA") incentivize employers to hire DACA recipients*

As earlier stated, DACA has a meaningful impact on labor markets by providing work authorizations to 800,000 individuals, including 112,000 in Texas alone. Proponents of DACA acknowledge that the program benefits them precisely by allowing them to obtain gainful employment that they otherwise would not be legally authorized to accept. And the Court has found that "DACA recipients in turn may compete with legally present individuals for available jobs, which can result in DACA recipients being hired for jobs for which legally present individuals have applied and otherwise would have been hired." *Texas II*, 328 F. Supp. 3d at 693.

The effect of healthcare costs associated with hiring DACA recipients is not necessary to the ultimate disposition of this case. The Court found that the exclusion of DACA recipients from ACA coverage exacerbated—but did not create—the injury to Plaintiff States. It described the ACA as an "element" that makes it more difficult for legal residents of Texas to obtain jobs. *Id*. The root cause of Plaintiff States'

injuries lies in the undisputed fact that DACA grants work authorization in excess of Congressional authorization. Because Defendant-Intervenors cannot controvert that essential fact, their request for additional discovery into the ACA fails.

*Facts related to what remedy, if any, to order*

Remedial questions are by their nature independent from the issue of whether summary judgment should issue "as a matter of law." Fed. R. Civ. P. 56(a). No factual inquiry into potential remedies—which reflect equitable and prudential concerns—is warranted into the legal determination that controls the summary-judgment procedure. This case raises issues of law that can be determined based on the extensive record before the Court. Summary judgment on these questions need not be delayed for discovery related to potential remedies. Plaintiff States have raised the issue of a remedial path forward in their motion for summary judgment, and the Federal Defendants have offered further argument on the appropriate remedy in their response to the summary judgement motion. Likewise, Defendant-Intervenors can present arguments on the proper remedies during the summary judgment briefing. A delay for further discovery into remedial questions is wholly unnecessary for a determination on the merits.

*Facts related to whether Plaintiffs have sufficiently established their standing to bring the lawsuit*

Defendant-Intervenors catch-all request for further discovery into standing ignores the Court's detailed determination that Plaintiff States made a clear showing of standing on multiple grounds. *Texas II*, 328 F. Supp. 3d at 690-705. And not only has this Court, but several district courts in other DACA cases cited by Defendant-

10

Intervenors found that the states or state agencies had standing to protect their work force. *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1033-35 (N.D. Cal. 2018) (finding two states and two cities had standing), *aff'd*, 908 F.3d 476 (9th Cir. 2018); *see also Batalla Vidal v. Nielsen,* 279 F. Supp. 3d 401, 437-38 (E.D.N.Y. 2018) (entering an injunction in favor of sixteen plaintiff states).

To establish standing, Plaintiff States must only show *some* injury. *Texas II*, 328 F. Supp. 3d at 701 (citing *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017)). As the Court has already held, Plaintiff States, with the support of fact and expert witnesses on both sides of the litigation, have clearly shown that their injury is more than the identifiable trifle needed to establish standing. *See Texas II*, 328 F. Supp. 3d at 700-705. The Court has already found that Plaintiff States have standing to challenge DACA, both with the special solicitude due to States in the standing analysis and without. *Id.* at 705 n.51.

The legal bases and facts supporting Plaintiff States' standing have not changed, so the Court's analysis remains true. Plaintiff States have suffered, and will continue to suffer, concrete injuries that are traceable to DACA, and setting DACA aside will redress those injuries. Defendant-Intervenors' vague and unspecific request for more time to engage in discovery over Plaintiff States' clearly-established standing should be rejected.

### *Facts related to whether this Court lacks "case or controversy" subject-matter jurisdiction*

Dispositive of Defendant-Intervenors' eighth and final discovery request, the Court already analyzed at length whether there is jurisdiction over this case and

found that it "*unquestionably* presents a case or controversy." *Id.* at 687 (emphasis added). As the Court explained, the case-or-controversy issue is a legal question controlled by the Supreme Court's decision in *U.S. v. Windsor. Id.* at 687-90 (discussing *United States v. Windsor*, 570 U.S. 744 (2013)). The Court correctly determined that "this case is much more adverse than *Windsor*," where the case-or-controversy requirement was deemed sufficient. *Texas II*, 328 F. Supp. 3d at 690. Because the posture of the parties has not changed since the preliminary injunction stage, further discovery on the case-or-controversy requirement is unnecessary.

## CONCLUSION

The legal issues controlling this case have been extensively litigated dating back to *Texas I*. Moreover, the parties to this lawsuit have already conducted 29 depositions of fact and expert witnesses, exchanged over 12,000 pages of document production, and filed over 300 pages of briefing with more than 7,000 exhibits. And the Court has thoroughly analyzed and ruled on the controlling issues in response to Plaintiff States' motion for preliminary injunction. Defendant-Intervenors' assertion that further discovery is needed is unsupported by the record and unnecessary for a merits determination. DACA is clearly unlawful, as this Court has already held and as the Federal Defendants now concede. Fed. Defs.' Resp. to Pls.' Mot. for Summ. J. 8, ECF No. 366. None of the additional discovery that Defendant-Intervenors seek, or the factual questions that they seek to answer, change the essential fact that Plaintiff States "have clearly shown, as a matter of law, that they are likely to succeed on the merits." *Texas II*, 328 F. Supp. 3d at 736.

13

Plaintiff States respectfully request that the Court deny Defendant-Intervenors' Motion and order a timely response to Plaintiff States' Motion for Summary Judgment.

March 7, 2019

STEVE MARSHALL
Attorney General of Alabama

LESLIE RUTLEDGE
Attorney General of Arkansas

DEREK SCHMIDT
Attorney General of Kansas

JEFF LANDRY
Attorney General of Louisiana

DOUGLAS J. PETERSON
Attorney General of Nebraska

ALAN WILSON
Attorney General of South Carolina

PATRICK MORRISEY
Attorney General of West Virginia

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Attorney-in-Charge
Trial Counsel for Civil Litigation
Tx. State Bar No. 24081854
Southern District of Texas No. 2985472
Tel.: (512) 463-2100; Fax: (512) 936-0545
todd.disher@oag.texas.gov
P.O. Box 12548
Austin, Texas 78711-2548

MICHAEL TOTH
Special Counsel for Civil Litigation

ADAM ARTHUR BIGGS
Assistant Attorney General

**COUNSEL FOR PLAINTIFF STATES**

14

## CERTIFICATE OF SERVICE

I certify that on March 7, 2019, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Trial Counsel for Civil Litigation

**COUNSEL FOR PLAINTIFF STATES**