**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| Defendant-Intervenor. | § | |

**DEFENDANT-INTERVENORS' MOTION TO COMPEL DISCOVERY FROM**
**FEDERAL DEFENDANTS**

## TABLE OF CONTENTS

I.      STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ......................1

II.     SUMMARY OF THE ARGUMENT ...............................................................................1

III.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ...........................3

        A.      At the beginning of this case, the Court ordered Federal Defendants
                to respond to Interrogatories Nos. 9-13 and Request for Production
                No. 7(3) but Federal Defendants did not answer the interrogatories
                or produce responsive documents ...............................................................3

        B.      Federal Defendants served deficient initial disclosures ...........................5

        C.      Federal Defendants continue to refuse to answer Interrogatories
                Nos. 9-13 or produce any paper discovery responsive to
                Request for Production No. 7(3) ...............................................................5

        D.      In a good faith effort to resolve this discovery dispute without
                court intervention, Defendant-Intervenors negotiated in an
                attempt to narrow the scope of the requests, but Federal Defendants
                refuse to provide the narrowed discovery ...................................................6

IV.     LEGAL STANDARD....................................................................................................8

V.      ARGUMENT ................................................................................................................9

        A.      Interrogatories Nos. 9-13 and Request for Production No. 7(3)
                are relevant and proportional to the needs of the case .............................9

                1.      Relevancy....................................................................................9

                2.      Proportionality ...........................................................................10

        B.      Federal Defendants' additional objections are without merit ...................12

        C.      Federal Defendants have failed to produce their initial
                disclosures....................................................................................................13

VI.     CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Chilcutt v. United States*,
   4 F.3d 1313 (5th Cir. 1993) ........................................................................... 8

*Costantino v. City of Atl. City*,
   152 F. Supp. 3d 311 (D.N.J. 2015) ............................................................... 12

*Fagan v. D.C.*,
   136 F.R.D. 5 (D.D.C. 1991) ........................................................................... 11

*Hall v. Louisiana*,
   No. 12-657-BAJ-RLB, 2014 WL 2560579 (M.D. La. June 6, 2014) ............ 13

*Harmon v. Georgia Gulf Lake Charles L.L.C.*,
   476 F. App'x 31 (5th Cir. 2012) .................................................................... 13

*Kurio v. United States*,
   429 F. Supp. 42 (S.D. Tex. 1970) .................................................................... 8

*Lopez v. Don Herring Ltd.*,
   327 F.R.D. 567 (N.D. Tex. 2018) ................................................................... 13

*M.A. Mortenson Co. v. United States*,
   996 F.2d 1177 (Fed. Cir. 1993) ....................................................................... 8

*Magnolia Point Minerals, LLC v. Chesapeake Louisiana, LP*,
   No. 11-CV-0854, 2015 WL 545988 (W.D. La. Feb. 10, 2015) .................... 11

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
   894 F.2d 1482 (5th Cir. 1990) ......................................................................... 8

*Merrill v. Waffle House, Inc.*,
   227 F.R.D. 475 (N.D. Tex. 2005) ..................................................................... 8

*National Lawyers Guild v. Attorney General*,
   94 F.R.D. 600 (S.D.N.Y. 1982) ....................................................................... 8

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964) .......................................................................................... 8

*Scott v. Monsanto Co.*,
   868 F.2d 786 (5th Cir. 1989) ........................................................................... 7

*Simon v. State Farm Lloyds,*
  No. 7:14-CV-251, 2015 WL 12777219 (S.D. Tex. Apr. 9, 2015) ........................................... 13

*Standard Chlorine of Delaware, Inc. v. Sinibaldi,*
  821 F. Supp. 232 (D. Del. 1992) ........................................................................................... 11

*U.S. v. Proctor & Gamble Co.,*
  356 U.S. 677 (1958) ............................................................................................................. 8

**RULES**

Fed. R. Civ. P. 26 ...................................................................................................... *passim*

Fed. R. Civ. P. 33 ............................................................................................................. 13

Fed. R. Civ. P. 37 ...................................................................................................... *passim*

# I.     STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

Defendant-Intervenors Karla Perez, *et al.* ("Defendant-Intervenors") respectfully request that the Court compel Federal Defendants to answer Defendant-Intervenors' discovery requests. Specifically, Defendant-Intervenors seek answers to Interrogatories Nos. 9 through 13 and documents responsive to Defendant-Intervenor's Request for Production No. 7(3).  *See* Dkt. 80-3 at 8-12.  Defendant-Intervenors also respectfully request that the Court order Federal Defendants to amend their initial disclosures.   Pursuant to Federal Rule of Civil Procedure 37, and particularly in light of Plaintiffs' pending Motion for Summary Judgment—which requires the Court to determine whether there exist disputes of material fact—Defendant-Intervenors also request that the Court extend all deadlines in the Rule 16 scheduling order for a period of time equal to the number of days between the filing of the motion and the day Federal Defendants produce the ordered discovery.   Finally, Defendant-Intervenors request that the Court order Federal Defendants to pay reasonable expenses incurred by Defendant-Intervenors in connection with this motion.  *See* Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 37(c)(1)(A).

# II.    SUMMARY OF THE ARGUMENT

Federal Defendants refuse to produce discovery on two issues that Plaintiffs' have placed at the center of their case:  (1) whether the federal government uses discretion in evaluating applications under the Deferred Action for Childhood Arrivals ("DACA") policy and (2) whether DACA confers a pathway to citizenship to DACA recipients.  *See, e.g.*, Dkt. 104 ¶¶ 85, 295-300. Federal Defendants—the only party in this litigation with access to the information Defendant-Intervenors seek—object that Defendant-Intervenors' requests for discovery on these issues are burdensome and not relevant (despite going to the heart of whether Plaintiffs' disputed claims regarding "rubberstamping" and "pathway to citizenship" are, in fact, valid).   Defendant-

Intervenors made good faith efforts to confer with Federal Defendants on these requests, and sought to reach a reasonable compromise position by providing suggestions to narrow the scope of the review and ease the expense on Federal Defendants.  Rather than accepting these offers to compromise, Federal Defendants refuse to produce discovery central to Plaintiffs' claims, and have failed to offer any alternatives or suggestions to address their objections.  Although Defendant-Intervenors sought to resolve this dispute without the involvement of this Court, because the parties have reached an impasse on Interrogatories Nos. 9-13 and Request for production 7(3), Defendant-Intervenors request that the Court compel Federal Defendants to respond to these requests.

Defendant-Intervenors and Federal Defendants also disagree on whether Federal Defendants must provide initial disclosures.  Federal Defendants have argued that they are exempt from providing any discovery, including initial disclosures, because this is an action for review on an administrative record.  *See* Ex. 6 at 1; Fed. R. Civ. P. (a)(1)(B)(i).  Federal Defendants' extreme position that no discovery from the federal government is warranted in this action is wholly without merit.  Indeed, this Court has previously ordered Federal Defendants to respond to Defendant-Intervenors' discovery requests.  *See* Dkt. 97.

Although Federal Defendants eventually served purported "initial disclosures" on Defendant-Intervenors, subject to their general objection that they need not do so, these disclosures are deficient because Federal Defendants failed to identify any government officials or employees likely to have discoverable information and failed to identify relevant documents other than public records.  *See* Ex. 6 at 2.  Defendant-Intervenors therefore respectfully request that Federal Defendants be ordered to amend their initial disclosures.

2

### III.   STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

**A.    At the beginning of this case, the Court ordered Federal Defendants to respond to Interrogatories Nos. 9-13 and Request for Production No. 7(3) but Federal Defendants did not answer the interrogatories or produce responsive documents**

On May 30, 2018, this Court ordered the parties to conduct limited expedited discovery related to Plaintiffs' motion for a preliminary injunction.  *See* Dkt. 53.  The Court ordered that, with the exception of expert discovery, any party that wished to seek discovery from Federal Defendants at the preliminary injunction stage had to seek leave from the Court to do so.  *Id*. at 1.

On June 20, 2018, the Court granted Defendant-Intervenors' application for leave to conduct discovery of the Federal Defendants, and ordered Federal Defendants to respond to some of Defendant-Intervenors' discovery requests, including Interrogatories Nos. 9 through 13 and Request for Production No. 7(3).  *See* Dkt. 97 ¶ 2.[1]  These discovery requests relate to whether USCIS adjudicators use discretion in their evaluation and review of DACA requests, and whether DACA confers a pathway to citizenship.  *See* Dkt. 80-3.[2]

---

[1] Defendant-Intervenors' discovery requests can be found at Dkt. 80; Dkt. 80-1; Dkt. 80-2; Dkt. 80-3.  The Court also instructed that "[f]f some requests seek information that is difficult to calculate or not easily derivable from the information kept by the Federal Defendants, they may object to those requests individually and inform the Court of why that information is difficult to obtain."  *See* Dkt. 97 ¶ 2.

[2] Interrogatories Nos. 9 and 10 ask Federal Defendants to identify the number of DACA requests that USCIS has denied and to identify from that number the number of requests denied (1) at least in part because the applicant was a suspected gang member or posed a threat to national security or public safety and (2) after the adjudicator nonetheless determined the applicant met the criteria outlined in the 2012 DACA memorandum.  Interrogatories Nos. 11 and 12 similarly ask Federal Defendants to identify the number of DACA requests USCIS has accepted and subsequently issued Requests for Evidence (RFEs), and to identify from that number the number of RFEs related to different criteria, including whether the applicant posed a threat to national security or public safety.  Request for Production No. 7(3) ask Federal Defendants to produce documents showing the number of DACA requests that were denied after the USCIS adjudicator determined the applicant met the criteria outlined in the 2012 DACA memorandum but was otherwise not a qualifying applicant.  Interrogatory No. 13 asks Federal Defendants  to identify the number of approved, initial DACA applications submitted by individuals who indicated on their I-821D, in response to Part 3. Question 4., that their immigration status on June 15, 2012 was "Status Expired" or "Parole Expired," and who answered in the affirmative in response to Part 3. Question 5.a. ("Were you EVER issued an Arrival-Departure Record").

On July 7, 2018, Federal Defendants served their responses and objections to these discovery requests and did not answer Interrogatories Nos. 9-13 or produce any documents responsive to Request for Production No. 7(3).[3]  *See* Ex. 1.  Federal Defendants objected to Interrogatories Nos. 9-13 and Request for Production No. 7(3) on the basis that the requests are "inconsistent with the limited nature of expedited discovery" and it would be burdensome and not proportionate to the needs of the case to produce this discovery, among other objections.  *Id*. at 10, 12, 14, 16, 17, 27; *see also* Ex. 2 (T. Renaud Decl.) ¶¶ 8-11.

**B.     Federal Defendants served deficient initial disclosures**

In the Joint Discovery/Case Management Plan, Federal Defendants objected that "this proceeding is exempt from initial disclosures as an action for review on an administrative record under Fed. R. Civ. P. 26(a)(1)(B)(i)."  *See* Dkt. 335 at 4.  Subsequently, in November, 2018, the Court entered a Rule 16 scheduling order that provided for a discovery deadline of August 21, 2019.  *See* 11-14-18 Minute Entry (setting Scheduling Order and Trial Settings); *see also* Dkt. 343 (noting that "a scheduling order is now in place").[4]

---

[3] Federal Defendants did briefly note, in response to Interrogatory No. 9, that:

> based on an informal inquiry of relevant USCIS service centers and the information in the 2015 Neufeld Declaration, *see, e.g.*, para. 18, Federal Defendants are aware of several initial DACA requests that were denied because the requestor either made false statements or committed fraud in other immigration or non-immigration government contexts, despite the requestor meeting the DACA guidelines outlined in the bulleted points on the first page of the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012.

*See* Ex. 1 at 11.  Federal Defendants also produced a number of charts that were nonresponsive to Defendants' requests, and that did not shed light on the use of discretion by USCIS in the adjudication and evaluation of DACA requests.  *See id*. at 11, 13, 15, 17, 28.  Finally, Federal Defendants provided a "partial" and therefore insufficient response to Interrogatory No. 13.  *Id*. at 18; *see* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

[4] The Court subsequently set a new discovery deadline of September 9, 2019, after Federal Defendants failed to participate in discovery because of the lapse in congressional appropriations.  *See* Dkt. 367.  Approximately four months of discovery remain under that extended deadline.

After Federal Defendants failed to provide their initial disclosures following the Court's Rule 16 scheduling order, Defendant-Intervenors wrote a letter to Federal Defendants asking them to provide initial disclosures.  *See* Ex. 5.  On December 17, 2018, Federal Defendants served "initial disclosures" on Defendant-Intervenors "subject to their general objection to any discovery taking place in this litigation" and their objection that initial disclosures are not necessary in this case because this proceeding "is a matter subject to review of an administrative record."  *See* Ex. 6 at 1 (citing Fed. R. Civ. P. 26(a)(1)(B)(i)).  These "initial disclosures" were, however, deficient.  In particular, Federal Defendants did not identify any persons likely to have discoverable information except for individuals already identified by Plaintiffs and Defendant-Intervenors and revealed in preliminary injunction phase discovery.  *Id*. at 2.  Federal Defendants did not identify any government officials or employees with relevant knowledge.  *See id.*[5]

### C. Federal Defendants continue to refuse to answer Interrogatories Nos. 9-13 or produce any paper discovery responsive to Request for Production No. 7(3)

Although Federal Defendants were obligated to supplement their responses to Defendant-Intervenors' expedited discovery requests, Federal Defendants have not answered Interrogatories Nos. 9-13, nor have they produced documents responsive to Request for Production No. 7(3).

On December 19, 2018, Defendant-Intervenors wrote a letter to Federal Defendants, outlining the deficiencies in Federal Defendants' objections and responses to Defendant-Intervenors' discovery requests and asking Federal Defendants to answer Interrogatories Nos. 9-13 and produce discovery responsive to Request for Production No. 7(3).  *See* Ex. 7.  On December 26, 2018, Federal Defendants acknowledged receipt of the letter but did not respond

---

[5] Federal Defendants did not produce the administrative record until May 13, 2019—five months after this Court's entry of a Rule 16 scheduling order and nine months after this Court denied Plaintiffs' motion for a preliminary injunction.  *See* Ex. 14.  In the Joint Discovery/Case Management Plan, Federal Defendants represented to the Court that they would produce the administrative on December 14, 2018.  *See* Dkt. 335 at 4 (Federal Defendants "anticipate serving an administrative record on the parties within 30-days of entry of a scheduling order.").  Federal Defendants also promised to Defendant-Intervenors that they would produce the administrative record on multiple occasions, since December 14, 2018 and most recently on April 24, 2019.  *See* Exs. 3-4, 18 ¶ 4.

to Defendant-Intervenors' concerns, noting instead that any response from the government would be "unfortunately delayed due to the current lapse in appropriations." *See* Ex. 8.

On February 20, 2019—two months after Defendant-Intervenors sent their deficiency letter to Federal Defendants and almost one full month after the end of the government shutdown—counsel for Federal Defendants sent supplemental responses to some of Defendant-Intervenors' discovery requests. *See* Ex. 10. However, Federal Defendants did not answer Interrogatories Nos. 9-13.[6] Federal Defendants also did not address Request for Production No. 7(3) in any way, or produce documents responsive to this request. *Id*.

> **D.    In a good faith effort to resolve this discovery dispute without court intervention, Defendant-Intervenors negotiated in an attempt to narrow the scope of the requests, but Federal Defendants refuse to provide the narrowed discovery**

On April 10, 2019, Defendant-Intervenors wrote an email to counsel for Federal Defendants, noting that Federal Defendants' supplemental production was incomplete and non-responsive, and asking Federal Defendants' to meet and confer in order to resolve the discovery dispute. *See* Ex. 11 at 1.

On April 24, 2019, and again on May 8, 2019, counsel for Defendant-Intervenors and Federal Defendants conferred regarding Defendant-Intervenors' deficiency letter and Federal Defendants' supplemental production. *See* Ex. 13 ¶ 3. Despite Defendant-Intervenors' efforts to negotiate in good faith, Federal Defendants continue to refuse to produce the requested discovery.

Federal Defendants object to Interrogatories Nos. 9-13 and Request for Production No. 7(3) on the grounds that responding to these requests would require a burdensome and time-

---

[6] Federal Defendants only produced the same nonresponsive set of charts it originally provided to Defendant-Intervenors in response to Interrogatories Nos. 9-13, except they added data from the state of Mississippi. *See* Ex. 10 at 3-6. Federal Defendants also produced a log outlining the documents produced during expedited discovery. *See* Ex. 9 at 2.

consuming manual review of government files, and that the requests are irrelevant.  *See* Ex. 1 at 10-18, 27.

In a good faith effort to alleviate Federal Defendants' concerns as to the burden of the requests, Defendant-Intervenors offered to narrow the scope of the request by suggesting that Federal Defendants review a sample of the necessary government files.  *See* Ex. 13 ¶ 4.  In the alternative, Defendant-Intervenors offered to conduct the necessary manual review of those samples at their own expense.  *Id.*  Defendant-Intervenors also expressed they would agree to enter into a confidentiality agreement to address any data privacy concerns.  *Id.*

Federal Defendants maintained their objections.  *Id.* ¶¶ 4-5.[7]  Defendant-Intervenors wrote again on May 8, 2019 to confirm the exact nature of Federal Defendants' objections.  *See* Ex. 12.  Federal Defendants confirmed on May 13, 2019 that they object to the discovery requests on the basis that responding would be burdensome.  *See* Ex. 14.

Because the parties have reached an impasse on these discovery requests, Defendant-Intervenors request that the Court compel Federal Defendants to answer Interrogatories Nos. 9-13 and produce documents responsive to Request for Production No. 7(3).

## IV.    LEGAL STANDARD

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Defendant-Intervenors are entitled to discovery that is relevant to their claims so long as the materials are not privileged and are proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  This Court "has broad discretion in discovery matters."  *Scott v. Monsanto Co.*, 868 F.2d 786, 793 (5th Cir. 1989).

---

[7] A week after the first conference call between the parties on this discovery dispute, on May 3, 2019, Federal Defendants represented to Defendant-Intervenors they were "waiting final word whether there is a way to find some data responsive to interrogatory 13 without manual file review, and if there is, that can be included in a supplement by Thursday 5/9."  *See* Ex. 1 at 2.  During the second conference call between the parties, on May 8, 2019, Federal Defendants stated they had not been able to obtain an answer on whether they would produce a supplemental production responsive to Interrogatory No. 13.  *See* Ex. 13 ¶ 5.  As of the filing of this motion, Federal Defendants have not produced supplemental records responsive to Interrogatory No. 13.

Discovery rules "are to be accorded a broad and liberal treatment." *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964). "'The Government as a litigant is, of course, subject to the rules of discovery.'" *Kurio v. United States*, 429 F. Supp. 42, 50 (S.D. Tex. 1970) (quoting *U.S. v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958)).[8]

A party seeking to resist discovery bears the burden of showing specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (finding conclusory recitation of burdensomeness, relevancy, and overbreadth inadequate); *see also Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 478 (N.D. Tex. 2005) (stating that the Fifth Circuit does not employ a burden shifting approach; the burden of resisting discovery remains on the party opposing discovery at all times).

If a party fails to answer an interrogatory or fails to produce documents, the aggrieved party may move for an order to compel discovery from the Court under Rule 37. *See* Fed. R. Civ. P. 37(a)(3)(B). For purposes of Rule 37, an evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond. *See* Fed. R. Civ. P. 37(a)(4). Failure to produce discovery is "not excused on the ground that discovery was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).

---

[8] *See also Chilcutt v. United States*, 4 F.3d 1313, 1326 (5th Cir. 1993) (concluding that through the Equal Access to Justice Act, Congress clearly "reveal[ed] its intent to subject the Government and its attorneys to Rule 37 [attorney's fees and discovery sanctions]"); *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1182 (Fed. Cir. 1993) ("The legislative history of [the Equal Access to Justice Act] is strewn with references to the United States and its agencies' abuse of the litigation process, and Congress expressed, through this law, the judgment that the Government may not be treated differently from other litigants.") (quoting *National Lawyers Guild v. Attorney General,* 94 F.R.D. 600, 615 n.32 (S.D.N.Y. 1982)).

## V.     ARGUMENT

### A.     Interrogatories Nos. 9-13 and Request for Production No. 7(3) are relevant and proportional to the needs of the case

Federal Defendants refuse to respond to Defendant-Intervenors' discovery requests with the erroneous argument that the requests are not relevant, too burdensome, and not proportional to the needs of the case.  Federal Defendants wrongfully withhold information on this basis, and Defendant-Intervenors are entitled to an order compelling Federal Defendants to respond.

### 1.     Relevancy

The discovery Defendant-Intervenors seek through Interrogatories Nos. 9-12 and Request for Production No. 7(3) squarely addresses Plaintiffs' claim that the federal government "rubberstamps" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action. *See, e.g.*, Dkt. 104 ¶¶ 295-300.

Defendant-Intervenors' discovery requests go directly to the question of agency discretion in DACA adjudication.  Interrogatories Nos. 9 and 10 ask Defendants to identify the number of initial and renewal DACA requests that USCIS has denied, and to identify from that number (1) the amount of requests denied at least in part because the applicant was a suspected gang member, (2) the amount of requests denied at least in part because the applicant posed a threat to national security or public safety, and (3) the amount of requests denied after the adjudicator nonetheless determined the applicant met the criteria outlined in the 2012 DACA memorandum.  *See* Ex. 1 at 9, 11.  Similarly, Interrogatories Nos. 11 and 12 ask Federal Defendants to identify the number of DACA requests USCIS has accepted, and for which the DACA adjudicator subsequently requested additional information from the applicant on the various eligibility criteria.  *Id*. at 13, 15.  Request for Production No. 7(3) asks Federal

Defendants to produce documents showing the number of DACA requests that were denied after the USCIS adjudicator determined the applicant met the criteria in the 2012 DACA memorandum but was otherwise not a qualifying applicant. *Id*. at 26. These requests all relate to the use of discretion exercised by the federal government in the evaluation and adjudication of DACA requests, and are highly relevant to the claims at issue in this proceeding.

In its opinion denying Plaintiffs' motion for a preliminary injunction, this Court expressly recognized that this issue of discretion requires further factual development. *See* Dkt. 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . [and b]ased on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion."). By refusing to respond to discovery on this topic, Federal Defendants deprive this Court of the information necessary to evaluate the parties' claims and defenses, and, ultimately, to either determine that there is no dispute of material fact or to make findings of fact and law following a trial.

Similarly, Interrogatory No. 13 is relevant to Plaintiffs' claim that "DACA has conferred United States citizenship and a pathway to citizenship on some DACA recipients" because DACA allows DACA recipients to receive advance parole, and advance parole "granted to aliens because of their receipt of DACA has resulted in some of those aliens obtaining adjustment to LPR status, for which they would otherwise be ineligible." Dkt. 104 ¶¶ 85-87. Interrogatory No. 13 asks Federal Defendants to produce discovery that shows the number of approved DACA requests submitted by individuals who indicated on their I-821D that their immigration status on June 15, 2012 was "Status Expired" or "Parole Expired," and who also reported they had been

issued an Arrival-Departure Record.  *See* Ex. 1 at 17.  This information is relevant to whether DACA recipients in the Plaintiff States who have received advance parole were eligible to adjust their status even if they had not received advance parole under DACA.

### 2. Proportionality

Federal Defendants' objection that these requests are burdensome and not proportional to the needs of the case is equally without merit.  First, the fact that review of an identified group of documents may be time-consuming or expensive does not, standing alone, relieve Federal Defendants from the obligation to respond to an otherwise appropriate request.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery); *see also Magnolia Point Minerals, LLC v. Chesapeake Louisiana, LP*, No. 11-CV-0854, 2015 WL 545988, at *1 (W.D. La. Feb. 10, 2015) (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 262 (D. Del. 1992) (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate document request); *Fagan v. D.C.*, 136 F.R.D. 5, 7 (D.D.C. 1991) ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . . Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citations omitted).

Any purported burden on Federal Defendants does not outweigh the benefit of disclosing the requested information.  This action is a complex case, with nationwide repercussions, in which all parties face the burden of investing significant resources in support of their claims and

defenses.  In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Federal Defendants. Therefore, to the extent Federal Defendants can claim any burden, it is not outweighed by the likely benefit of a complete production.

Second, Defendant-Intervenors' requests are proportional to the needs of the case, and are narrowly tailored in scope.  Defendant-Intervenors' requests only seek information related to specific categories of DACA requests, provide a limited timeframe, and are targeted to help the parties and the Court assess the issue of discretion in the DACA adjudication process and whether DACA confers a path to citizenship.  Defendant-Intervenors have also offered to narrow the scope of the requests even further by limiting the scope of the review to mere samples of government files.  Defendant-Intervenors have even offered to carry the burden of manually reviewing the files by doing so themselves.

Third, the requests seek information Federal Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, at least in part, in connection with their defense of this case.  Federal Defendants may not both claim a genuine case and controversy exists between Plaintiffs and Federal Defendants while simultaneously refusing to defend that case by alleging it is too burdensome for them to collect the information needed to defend against Plaintiffs' arguments on the merits.  *See Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 328 (D.N.J. 2015) (holding that it is unacceptable for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case) (collecting cases).

Finally, Federal Defendants have not sought a protective order from this Court, and wrongfully impose non-production as self-help.  *See* Fed. R. Civ. P. 37(d)(2) (failure to answer

and produce discovery is "not excused on the ground that discovery was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)"); *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 39 n. 4 (5th Cir. 2012) (noting that litigants are not "free to engage in 'self-help,' . . . in light of perceived failures by the opposing party in the discovery process").

### B.    Federal Defendants' additional objections are without merit

Federal Defendants also object to Interrogatories Nos. 9 through 13 and Request for Production No. 7(3) "to the extent" they are vague and ambiguous.  *See* Ex. 1 at 10, 12, 14, 16, 17, 27.  As more fully set forth in Defendant-Intervenors' deficiency letter, which Defendant-Intervenors fully incorporate herein, these objections are insufficient because the requests are not vague or ambiguous.  *See* Ex. 7 at 5, 7, 9, 19.

Federal Defendants make other boilerplate, general objections, but these objections are not connected to any one request in particular, and do not comply with the Federal Rules of Civil Procedure.  They therefore do not justify Defendants' deficient answers and production.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 578 (N.D. Tex. 2018) ("General or boilerplate objections are invalid."); *Hall v. Louisiana*, No. 12-657-BAJ-RLB, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014) ("This prohibition against general objections to discovery requests has been long established."); *see also Simon v. State Farm Lloyds*, No. 7:14-CV-251, 2015 WL 12777219, at *4 (S.D. Tex. Apr. 9, 2015) (determining that plaintiff was "flagrantly abusing the discovery process by indiscriminately levying general objections") (internal quotations omitted).

### C.       Federal Defendants have failed to produce initial disclosures

Federal Defendants offer no valid explanation for their failure to provide complete initial disclosures.[9]

To date, Federal Defendants—the only party in this litigation with control over information related to the adjudication of DACA requests—have failed to identify persons with relevant knowledge and locations and categories of relevant documents to illuminate these issues for the parties and the Court.  *See* Ex. 6 at 2.  Therefore, Defendant-Intervenors request that the Court compel Federal Defendants to amend their initial disclosures.

## VI.   CONCLUSION

Defendant-Intervenors respectfully request that the Court compel Federal Defendants to answer Interrogatories Nos. 9 through 13, and to produce documents responsive to Request for Production No. 7(3).  Defendant-Intervenors also respectfully request that the Court order Federal Defendants to amend their initial disclosures.  Pursuant to Rule 37, and particularly in light of Plaintiffs' pending Motion for Summary Judgment—which, if granted, would result in a finding that there are no disputes of material fact— Defendant-Intervenors also request that the Court extend all deadlines in the Rule 16 scheduling order for a period of time equal to the number of days between the filing of the motion and the day Federal Defendants produce the ordered discovery.  Finally, Defendant-Intervenors request that the Court order Federal Defendants to pay reasonable expenses incurred by Defendant-Intervenors in connection with this motion.  *See* Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 37(c)(1)(A).

---

[9] To the extent that Federal Defendants still claim that they are not obligated to provide initial disclosures, that claim is meritless.  *See* Ex. 6 at 1.  Indeed, this Court recognized as much during the expedited discovery period by ordering Federal Defendants to respond to Defendant-Intervenors' discovery requests.  *See* Dkt. 97 ¶ 2.

Dated: May 17, 2019

Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
Ernest I. Herrera (Tex. Bar No. 24094718);
(SD of Tex. Bar No. 2462211)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org

Denise Hulett
Mexican American Legal Defense and
Educational Fund
1512 14th Street
Sacramento, CA 95814
Phone: (916) 444-3031
Email: dhulett@maldef.org
(Admitted pro hac vice)

Priscila Orta
Mexican American Legal Defense and
Educational Fund
11 East Adams, Suite 700
Chicago, IL 60603
Tel: (312) 427-0701
Email: porta@maldef.org
(Admitted pro hac vice)

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-
Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA,**
**ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

## CERTIFICATE OF CONFERENCE

I, the undersigned, hereby certify that, on December 19, 2018, counsel for Defendant-Intervenors emailed a deficiency letter to Jeffrey Robins, counsel for Federal Defendants, on Interrogatories Nos. 9-13 and Request for Production No. 7(3). *See* Ex. 7. On February 7, 2019, counsel for Defendant-Intervenors again emailed counsel for Federal Defendants requesting a response on Defendant-Intervenors' deficiency letter. *See* Ex. 9 at 1. On April 10, 2019, Defendant-Intervenors informed Federal Defendants that they failed to answer Interrogatories Nos. 9-13 and Request for Production No. 7(3). *See* Ex. 11 at 1. The parties held two telephonic conferences on April 24, 2019 and May 8, 2019 on these discovery requests, but Federal Defendants have not produced this discovery. *See* Exs. 13-14.

The parties conferred on initial disclosures at the parties' Rule 26(f) conference on October 23, 2018. *See* Dkt. 335 at 1. Federal Defendants indicated they do not believe they need to provide initial disclosures. *Id.* at 4 Subsequently, on November 30, 2019, Defendant-Intervenors sent a letter to Federal Defendants asking Federal Defendants to provide initial disclosures. *See* Ex. 5. On December 12, 2018, Federal Defendants served "initial disclosures" on Defendant-Intervenors "subject to their general objection to any discovery taking place in this litigation." *See* Ex. 6 at 1. Federal Defendants did not identify any persons with discoverable information other than individuals identified by other parties and revealed during discovery, and they did not identify documents relevant to their claims and defenses other than the administrative record and publicly available information. *Id.* at 2.

On May 16, 2019, Defendant-Intervenors e-mailed counsel for Defendant-Intervenor New Jersey to confer on the motion. Counsel for Defendant-Intervenor New Jersey responded that New Jersey does not oppose the motion. Also on May 16, 2019, Defendant-Intervenors emailed Todd Disher, counsel for Plaintiffs, to confer on the motion. Mr. Disher responded on May 17, 2019 that Plaintiffs oppose the motion.

16

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that, on the 17th day of May, 2019, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/  Alejandra Ávila*
Alejandra Ávila

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| Defendant-Intervenor. | § | |

**DEFENDANT-INTERVENORS' APPENDIX IN SUPPORT OF THEIR MOTION TO
COMPEL DISCOVERY FROM FEDERAL DEFENDANTS**

| EXH. NO. | DOCUMENT |
|---|---|
| 1 | Federal Defendants' Objections and Responses to Defendant-Intervenors' Third Set of Discovery Requests |
| 2 | July 6, 2018 Declaration of Tracy L. Renaud |
| 3 | February 25, 2019 Letter from State of New Jersey to Federal Defendants |
| 4 | March 20, 2019 Email from Federal Defendants to Defendant-Intervenor State of New Jersey |
| 5 | November 30, 2018 Letter from Defendant-Intervenors to Federal Defendants |
| 6 | Federal Defendants' Rule 26(a)(1) Initial Disclosures |

| 7 | December 19, 2018 Letter from Defendant-Intervenors to Federal Defendants |
| 8 | December 26, 2018 Email from Federal Defendants to Defendant-Intervenors |
| 9 | February 7, 2019 Email from Federal Defendants to Defendant-Intervenors |
| 10 | Federal Defendants Supplemental Responses to Defendant-Intervenors' Third Set of Discovery Requests |
| 11 | April 10, 2019 Email from Defendant-Intervenors to Federal Defendants |
| 12 | May 8, 2019 Email from Defendant-Intervenors to Federal Defendants |
| 13 | Declaration of Nina Perales |
| 14 | May 13, 2019 Email from Federal Defendants to Defendant-Intervenors |
| 15 | Administrative Record, Production Cover Letter from Federal Defendants |

Dated: May 17, 2019

Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
Ernest I. Herrera (Tex. Bar No. 24094718);
(SD of Tex. Bar No. 2462211)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org

Denise Hulett
Mexican American Legal Defense and
Educational Fund
1512 14th Street
Sacramento, CA 95814
Phone: (916) 444-3031

Email: dhulett@maldef.org
(Admitted pro hac vice)

Priscila Orta
Mexican American Legal Defense and
Educational Fund
11 East Adams, Suite 700
Chicago, IL 60603
Tel: (312) 427-0701
Email: porta@maldef.org
(Admitted pro hac vice)

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-
Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> Defendant-Intervenors. | Case No. 18-cv-00068 |

**FEDERAL DEFENDANTS' OBJECTIONS AND RESPONSES TO
DEFENDANT-INTERVENORS' THIRD SET OF DISCOVERY REQUESTS**

TO: Defendant-Intervenors, by and through their attorneys of record, Nina Perales, Celina Moreno, Jack Salmon, Alejandra Avila, Mexican American Legal Defense and Educational Fund, 110 Broadway, Suite 300, San Antonio, Texas 78205; Carlos Moctezuma García, García & García, Attorneys at Law P.L.L.C., P.O. Box 4545 McAllen, Texas 78502.

     Federal Defendants serve these objections and responses to Defendant-Intervenors' third set of interrogatories and requests for production of documents pursuant to the Federal Rules of Civil Procedure.

**GENERAL OBJECTIONS**

     Federal Defendants state the following General Objections to Defendant-Intervenors' third set of interrogatories and requests for production of documents, which are hereby incorporated in and made part of each of the following specific responses.

1.     Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they require the production of documents

1

or things outside the narrow scope of expedited discovery, are unduly burdensome, are overly broad, or seek information that is not relevant to this phase of this case and will not lead to the discovery of such relevant information, or are equally accessible to Defendant-Intervenors through third-party discovery requests, publicly available government websites other websites, or other sources.

2.     Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they are beyond the scope of the claims in this case or they are not relevant to any party's claim or defense.  Federal Defendants further object to these interrogatories and requests for production of documents to the extent that they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

3.     Federal Defendants object to Defendant-Intervenor's "Definitions and Instructions" to the extent that they are vague and ambiguous, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion.  Federal Defendants further object to Defendant-Intervenor's "Definitions and Instructions" to the extent that they are inconsistent with the Court's order dated June 20, 2018 (Dkt. 97) or to the extent that they are confusing or unduly burdensome.

4.     Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that Defendant-Intervenors seek disclosures of information protected from disclosure by the Privacy Act of 1974, 5 U.S.C. Section 552a(b), attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement / investigatory files privilege, self-critical analysis privilege, executive privilege, and official information privilege, and other applicable privileges.

5.     Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they require the production of electronically stored information on electronic media, including any general search of email or retrieval of backup tapes of U.S. Citizenship and Immigration Services ("USCIS") that are not reasonably accessible because of the undue time, burden, and cost associated with retrieving, reviewing, and producing the information, especially in relation to the limited scope of expedited discovery at this stage of proceedings.

6.     Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they require the production of material outside of a properly designated administrative record by USCIS, insofar as this action may be construed as a suit for judicial review of agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

7.     Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent they purport to require the disclosure of information in the possession, custody or control of entities other than properly named

2

Defendants on the grounds that such production is beyond the scope of Fed. R. Civ. P. 33 and 34 and other applicable law.

8.    Federal Defendants object, in light of the Court's Order dated June 20, 2018 (Dkt. 97), to the extent Defendant-Intervenors' third set of interrogatories and requests for production of documents seek to compel Federal Defendants to search for, identify, or log drafts or non-final documents or produce documents in their native format.

9.    Federal Defendants object to Defendant-Intervenors' third set of interrogatories to the extent that they exceed the limit of 25 interrogatories, including all subparts, allowed under Fed. R. Civ. P. 33, without stipulation or leave from the court.  Defendant-Intervenors have clearly promulgated more than twenty-five interrogatories in this set alone, much less in all prior sets of interrogatories.

10.    Federal Defendants' responses to Defendant-Intervenors' third set of interrogatories and requests for production of documents are made without waiving:

(a)  The right to object to the competence, relevance, materiality, or admissibility as evidence of any information, or the subject matter thereof, in any aspect of this civil action or any other matter;

(b)  The right to object at any time and upon any grounds to any other discovery requests;

(c)  The right at any time and for any reason to revise, supplement, correct, add or to clarify these responses;

(d)  The right to amend or supplement these responses if the Federal Defendants discover additional information; and

(e)  Any applicable privilege, including but not limited to the attorney/client privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege.

11.    Discovery has not concluded in this litigation.  Accordingly, the Federal Defendants' responses to Defendant-Intervenors' third set of interrogatories and requests for production of documents is based upon the information available at this stage of the litigation.  Federal Defendants reserve the right to rely upon any facts, documents, or other evidence which may develop or come to its attention subsequent to this response.

Likewise, Federal Defendants' objections to Defendant-Intervenors' third set of interrogatories and requests for production of documents are based upon the information presently known by the Federal Defendants, and are made without prejudice to the Federal Defendants' right to assert additional objections in the event that additional grounds for objections should be discovered by the Federal Defendants subsequent to this response.

12.    Without waiving the above objections, Federal Defendants will provide responses to only relevant non-privileged matters based on information currently available to it and obtainable without undue burden.

## SPECIFIC OBJECTIONS AND RESPONSES TO
## DEFENDANT-INTERVENORS' THIRD SET OF INTERROGATORIES

**INTERROGATORY NO. 3**

Please identify the number of initial DACA applications received by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, of that number:

a. the number of initial DACA applications approved by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of initial DACA applications denied by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of initial DACA applications rejected by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

**OBJECTIONS TO INTERROGATORY NO. 3**

Defendants specifically object to Interrogatory No. 3 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants object to the following terms and phrases in Interrogatory No. 3 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common use of the terms in its agency practice regarding DACA: "initial [DACA application]," "received by the Department of Homeland Security," "approved by the Department of Homeland Security," "denied by the Department of Homeland Security," and "rejected by the Department of Homeland Security." With respect to that portion of the response to this Interrogatory provided by Defendant USCIS, the response is based on Defendant USCIS' common usage of those terms and phrases in its DACA business practices during the relevant time periods reflected in the response.

Immigration and Customs Enforcement ("ICE") specifically objects to being required to search for information responsive to Interrogatory No. 3 for the period from June 2012 through August 2012. It appears that ICE never compiled or "tracked" information responsive to Interrogatory No. 3 for this time period. Specifically, ICE has queried the Enforcement and Removal Operations ("ERO") database and found no information responsive to Interrogatory No. 3. In addition, ICE has queried several current agency employees who potentially might

have information responsive to Interrogatory No. 3 and has been advised that they possess no responsive information.  It appears likely that the only ICE individuals who may have information responsive to Interrogatory No. 3 for the period from June 2012 through August 2012 are former agency employees.

**RESPONSE TO INTERROGATORY NO. 3**

See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, August 15, 2012 – June 22, 2018." USCIS began accepting initial DACA requests on August 15, 2012, therefore USCIS is not able to provide data on DACA initial requests from June 2012 to August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 4**

Please identify the number of renewal DACA applications received by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, of that number:

a. the number of renewal DACA applications approved by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of renewal DACA applications denied by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of renewal DACA applications rejected by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

**OBJECTIONS TO INTERROGATORY NO. 4**

Defendants specifically object to Interrogatory No. 4 to the extent that it uses terms that do not apply to DACA, such as "applications."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application."  For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA.   Defendants object to the following terms and phrases in Interrogatory No. 4 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common

use of the terms in its agency practices regarding DACA:  "renewal [DACA application],"
"received by the Department of Homeland Security," "approved by the Department of Homeland
Security," "denied by the Department of Homeland Security," and "rejected by the Department
of Homeland Security."  With respect to that portion of the response to this Interrogatory
provided by Defendant USCIS, the response is based on Defendant USCIS' common usage of
those terms and phrases in its DACA business practices during the relevant time periods
reflected in the response.

**RESPONSE TO INTERROGATORY NO. 4**

See attached chart entitled, "United States Citizenship and Immigration Services
(USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Renewals,
Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, June 4, 2014
– June 22, 2018." USCIS began accepting DACA renewal requests on June 4, 2014; therefore
Federal Defendants are unable to provide data on DACA renewals from June 2012 to June 4,
2014 because it does not exist. The data provided in response to this Interrogatory is approximate
data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 5**

Please identify the average number of months it took USCIS to adjudicate an accepted
DACA initial application:

a. For the period of June 2012 to January 2017

b. For the period of February 2017 to June 2018

**OBJECTIONS TO INTERROGATORY NO. 5**

Defendants specifically object to Interrogatory No. 5 to the extent that it uses terms that
do not apply to DACA, such as "application."  A request for DACA may be submitted by certain
individuals brought to the United States as children who seek DHS' prosecutorial discretion not
to subject them to removal action for a two-year period from approval of the request.  As such, it
is not an immigration benefit "application."  For purposes of responding to this Interrogatory
only, however, Defendants will interpret "application" to mean such a request for DACA.
Defendants object to the following terms and phrases in Interrogatory No. 5 to the extent that
they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor
intends them to have meanings that do not comport with Defendant USCIS' common use of the
terms in its agency practices regarding DACA: "took [USCIS] to adjudicate," "accepted," and
"initial [application]."  The response to Interrogatory No. 5 is based on Defendant USCIS'
common usage of those terms and phrases in its DACA agency practices during the relevant time
periods reflected in the response.  Defendant USCIS further objects that the phrase "average
number of months" is vague and undefined, and therefore ambiguous. In its response, Defendant
USCIS uses a conversion of 30.4 days per month.

**RESPONSE TO INTERROGATORY NO. 5**

See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, Average Processing Time for DACA Initial Completions, August 15, 2012 - June 22, 2018." USCIS began accepting initial DACA requests on August 15, 2012; therefore the average processing time for part a. was calculated using data beginning August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 6**

Please identify the average number of months it took USCIS to adjudicate an accepted DACA renewal application:

   a. For the period of June 2014 to January 2017

   b. For the period of February 2017 to June 2018

**OBJECTIONS TO INTERROGATORY NO. 6**

Defendants specifically object to Interrogatory No. 6 to the extent that it uses terms that do not apply to DACA, such as "application." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "application" to mean such a request for DACA. Defendants object to the following terms and phrases in Interrogatory No. 6 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "took [USCIS] to adjudicate," "accepted," and "renewal". The response to Interrogatory No. 6 is based on Defendant USCIS' common usage of those terms and phrases in its DACA business practices during the relevant time periods reflected in the response. Defendant USCIS further objects that the phrase "average number of months" is vague and undefined, and therefore ambiguous. In its response, Defendant USCIS uses a conversion of 30.4 days per month.

**RESPONSE TO INTERROGATORY NO. 6**

See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, Average Processing Time for DACA Renewal Completions, June 4, 2014 - June 22, 2018. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 7**

Please identify the offices within USCIS that evaluate and adjudicate DACA applications.

**OBJECTIONS TO INTERROGATORY NO. 7**

Defendants specifically object to Interrogatory No. 7 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants object to the following terms and phrases in Interrogatory No. 7 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "evaluate" and "adjudicate." Defendant USCIS' response is based on its common usage of those terms and phrases in its DACA agency practices during the relevant time periods reflected in the response. Defendants further object that "offices" do not "evaluate and adjudicate" DACA requests within USCIS, but rather USCIS officers employed at specific USCIS locations adjudicate DACA requests and other USCIS personnel may also be involved in evaluating DACA requests. Defendants also object that Interrogatory No. 7 is vague and ambiguous as to the time period it covers. Defendant USCIS' response will cover the period from August 1, 2012 through May 31, 2018, the period for which data is readily available.

**RESPONSE TO INTERROGATORY NO. 7**

Subject to this qualification and objection, Defendant DHS responds that only officers at USCIS Service Centers render final adjudicative decisions for DACA requests. However, individuals at other USCIS offices that may be or may have been involved in evaluation or review of DACA requests are or were employed at: Headquarters Service Center Operations, the Field Operations Directorate, the Office of Policy and Strategy, the Fraud Detection and National Security Directorate, the Office of Intake and Data Production, and the Office of the Chief Counsel.

See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, USCIS Service Centers and Offices that Evaluate and Adjudicate DACA Requests, August 1, 2012 - May 31, 2018", which provides the name of each USCIS service center and USCIS field office that has transferred in or adjudicated at least one Form I-821D since August 1, 2012. The data provided in response to this Interrogatory reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 8**

Please identify the number of DACA applications adjudicated at each of the five service centers within the USCIS Service Center Operations Directorate (SCOPS) each year for the period of June 2012 to June 2018.

## OBJECTIONS TO INTERROGATORY NO. 8

Defendants specifically object to Interrogatory No. 8 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants object to the following term in Interrogatory No. 8 to the extent that it may be vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends it to have meaning that does not comport with Defendant USCIS' common use of the term in its agency practices regarding DACA: "adjudicated."

## RESPONSE TO INTERROGATORY NO. 8

Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, Count of Adjudications by Service Center and Fiscal Year of Adjudication, August 15, 2012 - June 22, 2018." USCIS began accepting DACA requests on August 15, 2012; therefore USCIS service centers did not adjudicate any DACA requests between June 2012 and August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

## INTERROGATORY NO. 9

Please identify the number of DACA initial applications USCIS has accepted and denied from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of DACA applications denied at least in part because the applicant was a suspected gang member, from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of DACA applications denied at least in part because the applicant posed a threat to national security or public safety, from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of DACA applications denied after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

## OBJECTION TO INTERROGATORY NO. 9:

Defendants specifically object to Interrogatory No. 9 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants further object to the following terms in Interrogatory No. 9 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the term in its agency practices regarding DACA: "initial [application]," "accepted," "denied," "suspected gang member," and "posed a threat to public safety or national security." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices. Defendants object that "the five criteria outlined in the 2012 DACA memo" is vague and ambiguous, and Defendants do not have sufficient knowledge to know exactly which criteria Defendant-Intervenor is referencing with this phrase.

Federal Defendants object to subparts a., b., and c., of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests even though they were probative of the issues to be addressed at the preliminary injunction hearing because they were overly broad and not reasonably tailored to the specific issues to be addressed at the hearing).

 Federal Defendants further object to subparts a., b., and c., of this Interrogatory on the grounds that they are vague, overbroad, burdensome, not relevant and/or proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not electronically capture, in a readily retrievable, systematic manner, information regarding subparts a., b., and c., of Interrogatory 9 in the ordinary course of business. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of the electronic and/or paper files of every denial of an initial DACA request for requestors from each Plaintiff State (over 17,000 cases), as set forth in the

attached declaration.  *See* Dkt. 97.  Case-by-case review may also require further consultation with the adjudicator who rendered the decision.

Federal Defendants will provide a response to the main question within Interrogatory 9, the number of denials of initial DACA requests from Plaintiff States by month, but notes that this information is already provided in the response to Interrogatory 3 and is therefore duplicative.

**RESPONSE TO INTERROGATORY NO. 9**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Denials by Month and Selected State, August 15, 2012 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.  In response to subpart c. of Interrogatory No. 9, Federal Defendants respond that based on an informal inquiry of relevant USCIS service centers and the information in the 2015 Neufeld Declaration, *see, e.g.*, para. 18,[1] Federal Defendants are aware of several initial DACA requests that were denied because the requestor either made false statements or committed fraud in other immigration or non-immigration government contexts, despite the requestor meeting the DACA guidelines outlined in the bulleted points on the first page of the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012.

**INTERROGATORY NO. 10**

Please identify the number of DACA renewal applications USCIS has accepted and denied from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of DACA applications denied at least in part because the applicant was a suspected gang member, from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of DACA applications denied at least in part because the applicant posed a threat to national security or public safety, from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of DACA applications denied after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

**OBJECTION TO INTERROGATORY NO. 10**

---

[1] Defs.' Sur-reply in Opp'n to Pls.' Mot. for Prelim. Inj., Ex. 44, *Texas v. U.S.*, 86 F.Supp.3d 591 (2015) (No. 1:14-cv-254), ECF No. 130-11.

Defendants specifically object to Interrogatory No. 10 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application," nor are requestors considered "applicants." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA. Defendants further object to the following terms in Interrogatory No. 10 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "renewal [application]," "accepted," "denied," "suspected gang member," and "posed a threat to public safety or national security." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices. Defendants object that "the five criteria outlined in the 2012 DACA memo" is vague and ambiguous, and Defendants do not have sufficient knowledge to know exactly which criteria Defendant-Intervenor is referencing with this phrase.

Federal Defendants object to subparts a., b., and c. of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

 Federal Defendants further object to this Interrogatory on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not electronically capture, in a readily retrievable, systematic manner, information regarding subparts a., b., and c., of this Interrogatory in the ordinary course of business. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of electronic and/or paper files of every denial of a DACA renewal request for the requestors from each Plaintiff State (over 2,000 cases), as set forth in the attached

declaration.  *See* Dkt. 97.  Case-by-case review may also require further consultation with the adjudicator who rendered the decision.

Federal Defendants will provide a response to the main question within Interrogatory 10, the number of denials of DACA renewal requests from Plaintiff States by month, but notes that this information is already provided in the response to Interrogatory 4 and is therefore duplicative.

**RESPONSE TO INTERROGATORY NO. 10**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Renewals, Denials by Month and Selected State, June 4, 2014 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 11**

Please identify the number of initial DACA applications USCIS has accepted and subsequently issued Requests for Evidence ("RFEs") from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of RFEs related to whether the applicant was under the age of 31 as of June 15, 2012;

b. the number of RFEs related to whether the applicant came to the United States before reaching his or her 16th birthday;

c. the number of RFEs related to whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application;

d. the number of RFEs related to whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action;

e. the number of RFEs related to whether the applicant had no lawful status on June 15, 2012;

f. the number of RFEs related to whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

g. the number of RFEs related to whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

13

**OBJECTION TO INTERROGATORY NO. 11**

Defendants specifically object to Interrogatory No. 11 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application," nor are requestors considered "applicants."  For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA.  Defendants further object to the following terms in Interrogatory No. 11 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "initial [DACA applications]," "accepted," "and subsequently issued Requests for Evidence ("RFE")." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices.

Federal Defendants object to subparts a. through g. of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97).   This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

Federal Defendants further object to subparts a. through g. of this Interrogatory on the grounds that they are overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not reliably electronically capture, in a readily retrievable, systematic manner, information regarding subparts a. through g. in the ordinary course of business.  This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of electronic and/or paper copies of the Request for Evidence (RFEs) sent for every initial DACA request from each Plaintiff State (more than 50,000), as set

forth in the attached declaration.  *See* Dkt. 97.  This number does not even include multiple RFEs sent for the same request, which would need to be manually reviewed as well.

Federal Defendants will provide a response to the main question within Interrogatory 11, the number of initial DACA requests for which USCIS has accepted and subsequently issued a RFE from Plaintiff States by month.

**RESPONSE TO INTERROGATORY NO. 11**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Request for Evidence (RFE) by Month and Selected State, August 15, 2012 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 12**

Please identify the number of renewal DACA applications USCIS has accepted and subsequently issued Requests for Evidence ("RFEs") from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of RFEs related to whether the applicant was under the age of 31 as of June 15, 2012;

b. the number of RFEs related to whether the applicant came to the United States before reaching his or her 16th birthday;
c. the number of RFEs related to whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application;

d. the number of RFEs related to whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action;

e. the number of RFEs related to whether the applicant had no lawful status on June 15, 2012;

f. the number of RFEs related to whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

g. the number of RFEs related to whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

**OBJECTION TO INTERROGATORY NO. 12**

Defendants specifically object to Interrogatory No. 12 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant." DACA may be requested by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application," nor are requestors considered "applicants." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA. Defendants further object to the following terms in Interrogatory No. 12 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "renewal [DACA applications]," "accepted," and "and subsequently issued Requests for Evidence ("RFE")." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices.

Federal Defendants object to subparts a. through g. of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

Federal Defendants further object to subparts a. through g. of Interrogatory on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g.*, *Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not reliably electronically capture, in a readily retrievable, systematic manner, information regarding subparts a. through g. in the ordinary course of business. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of electronic and/or paper copies of the Request for Evidence (RFEs) sent for every DACA renewal request from each Plaintiff State (more than 9,000), as set

forth in the attached declaration. *See* Dkt. 97. This number does not even include multiple RFEs sent for the same request, which would need to be manually reviewed as well.

Federal Defendants will provide a response to the main question within Interrogatory 12, the number of DACA renewal requests for which USCIS has accepted and subsequently issued a RFE from Plaintiff States by month.

**RESPONSE TO INTERROGATORY NO. 12**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Renewals, Request for Evidence (RFE) by Month and Selected State, June 4, 2014 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 13**

Please identify the number of approved, initial DACA applications submitted by individuals who indicated on their I-821D, in response to Part 3. Question 4., that their immigration status on June 15, 2012 was "Status Expired" or "Parole Expired," and who answered in the affirmative in response to Part 3. Question 5.a. ("Were you EVER issued an Arrival-Departure Record"), for each Plaintiff State for each month during the period of June 2012 to June 2018.

**OBJECTION INTERROGATORY NO. 13**

Defendants specifically object to Interrogatory No. 13 to the extent that it uses terms that do not apply to DACA, such as "applications." DACA may be requested by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants further object to the following terms in Interrogatory No. 13 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "approved," and "initial [DACA applications]." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices.

Federal Defendants object to this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See*, *e.g*., *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter

17

related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

Federal Defendants further object to this Interrogatory on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not electronically capture, in a reliable, readily retrievable, systematic and complete manner, the responses to Part 3, Question 4 on the Form I-821D, in the ordinary course of business. USCIS databases also do not electronically capture, in a readily retrievable, systematic manner, responses to Part 3, Question 5a on the Form I-821D for DACA requests that were processed in USCIS' Computer Linked Application Information Management System (CLAIMS 3), in the ordinary course of business. CLAIMS 3 is an electronic case management system. See the publicly available Privacy Impact Assessment for CLAIMS 3 (DHS/USCIS/PIS-06(a)), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-claims3appendixaupdate-may2018.pdf. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of ELIS records, an electronic copy of the Form I-821D, or the original paper version of the Form I-821D if an electronic copy is not available, for every approved initial DACA request for each Plaintiff State (more than 150,000), as set forth in the attached declaration. *See* Dkt. 97.

Federal Defendants will provide a partial response regarding the number of approved initial DACA requests where "Yes" was marked in Part 3, Question 5a. on the Form I-821D, for cases processed in USCIS' Electronic Immigration System (ELIS). ELIS is an online, electronic account and immigration case management system that stores information submitted or integrated into the system for the processing of specific applications, petitions, or requests. *See* the publicly available Privacy Impact Assessment for ELIS (DHS/USCIS/PIA-056 ELIS), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-elisappendixaupdate-may2018.pdf.

**RESPONSE TO INTERROGATORY NO. 13**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Requests with 'Yes' marked in Part 3 Question 5a 'Were you EVER issued an Arrival-Departure Record' by Month and Selected State, November 1, 2015 - June 22, 2018," which provides information only from ELIS. The data

provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

## INTERROGATORY NO. 14

Please identify the number of DACA recipients who adjusted their status to lawful permanent resident, for each Plaintiff State for each month during the period of June 2012 to June 2018, and identify among that number:

> a. the number of DACA recipients who adjusted under 8 U.S.C. 1255(i)

> b. the number of DACA recipients who adjusted under 8 U.S.C. 1255(a)

## OBJECTION TO INTERROGATORY NO. 14

Federal Defendants object to this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97).   This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

Federal Defendants further object to this Interrogatory on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not electronically capture, in a readily retrievable, systematic manner, whether an individual adjusted status to lawful permanent residence under 8 U.S.C. 1255(a), (i), or another basis, in the ordinary course of business.  This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of electronic and/or paper files of every DACA recipient who adjusted status to lawful permanent residence during the specified period for each Plaintiff State (more than 7,000), as set forth in the attached declaration.  *See* Dkt. 97.

## RESPONSE TO INTERROGATORY NO. 14

        Subject to these objections, Federal Defendants refer to the attached chart entitled,
"United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of
Deferred Action for Childhood Arrivals, I-485, Application to Register Permanent Residence or
Adjust Status, DACA Recipients who Adjusted Status by Date of Adjustment and Selected State,
August 15, 2012 - June 22, 2018." The data provided in response to this Interrogatory is
approximate data and reflects best available information to USCIS at the time the data report was
run.

## VERIFICATION OF ANSWERS TO INTERROGATORIES

I am Tracy Renaud, Acting Deputy Director of USCIS. I believe, based on inquiry, that the foregoing USCIS answers are true and correct to the best of my knowledge, information and belief.

I verify, under penalty of perjury, that the foregoing is true and correct.

Executed July 6, 2018.

_____ (Signature)
Tracy Renaud
Acting Deputy Director, USCIS

## SPECIFIC OBJECTIONS AND RESPONSES TO
## DEFENDANT-INTERVENORS' THIRD SET OF REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 5:**

Produce all documents relating to guidelines followed by DHS, and any of its subsidiary agencies, departments, agents, and employees, to evaluate, process, and adjudicate Deferred Action for Childhood Arrivals ("DACA") applications, including, but not limited to: (1) internal agency documents, memoranda, and communications that set forth any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications; (2) training materials provided to agents or employees related to DACA evaluations and adjudications; and (3) changes following January 20, 2017 in any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 5:**

Defendants specifically object to Request for Production (RFP) No. 5 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants further object to the following terms in RFP No. 5 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "relating to guidelines," "to evaluate, process and adjudicate," "guidance, rules or procedures," "training materials," and "changes following January 20, 2017 in any guidance, rules, or procedures." Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices. Federal Defendants object to RFP No. 5 to the extent that the request is beyond the scope of the claims in this case or they are not relevant to any party's claim or defense and not likely to lead to the discovery of relevant information.

Federal Defendants further object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018, and its subsequent order that same day (Dkt. 97). This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests even though they were probative of the issues to be addressed at the preliminary injunction

hearing because they were overly broad and not reasonably tailored to the specific issues to be addressed at the hearing); *Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477, 2006 WL 1373055, at *4-5 (D. N.J. May 17, 2006) (denying the plaintiff's request for expedited discovery in part because it "would lead to the parties conducting all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery"); *compare with Par. of Jefferson v. S. Recovery Mgmt., Inc.*, No. CIV. A. 95-2290, 1995 WL 542475, at *2 (E.D. La. Sept. 12, 1995) (granting motion for expedited discovery because it was limited to five request for documents which defendants should routinely maintain and have readily accessible). More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS is prepared to provide readily available, final versions of non-case specific responsive documents containing guidelines followed to evaluate, process, and adjudicate DACA requests maintained by custodians who are currently employed by USCIS, but not to conduct a comprehensive search for all emails or other documents "relating to guidelines followed by DHS . . . to evaluate, process, and adjudicate" DACA requests, or to conduct a comprehensive search for records that were maintained by former USCIS employees.

Due to the breadth of RFP No. 5, including the six years it covers, Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents and emails "relating to" guidelines followed by DHS to evaluate, process, and adjudicate DACA requests that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges. Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of the email and other electronic records of all potential custodians and to review all of the resulting documents. It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and other DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

ICE specifically objects to being required to search for and/or produce documents responsive to Request No. 5 for the period of time from June 2012 through August 2012. ICE has contacted several individuals currently employed by ICE and determined that they have no

documents responsive to Request No. 5.  To the extent that responsive documents do exist, they would be among the emails of former ICE employees.  ICE objects to being required to conduct an electronic search of such emails for the period of June 2012 through August 2012 on the grounds that such a requirement would be overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  It is unclear what search terms could be used to locate responsive emails, especially because it is unknown whether there were any responsive emails were ever created, transmitted, and/or retained.


**REQUEST FOR PRODUCTION NO. 6:**

Produce all documents relating to the process by which DHS, and any of its subsidiary agencies, departments, agents, and employees, evaluates, processes, and adjudicates DACA applications, including but not limited to: (1) under what circumstances a DACA application is rejected, denied, or approved; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of DACA applications; (3) the procedure(s) employed by agents and employees who work in the evaluation and adjudication of DACA applications; and (4) changes in the process for evaluating, processing, and adjudicating DACA applications following January 20, 2017.

**OBJECTION TO REQUEST NO. 6:**

Defendants specifically object to Request for Production (RFP) No. 6 to the extent that it uses terms that do not apply to DACA, such as "applications."  DACA may be requested by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA.  Federal Defendants object to RFP No. 6 to the extent that the request seeks documents that are beyond the scope of the claims in this case or they are not relevant to any party's claim or defense and not likely to lead to the discovery of relevant information.

Defendants further object to the following terms in RFP No. 6 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "relating to the process by which … evaluates, processes, adjudicates DACA [applications]," "rejected, denied, or approved," "evaluation and adjudication," and "changes in the process for evaluating, processing, and adjudicating DACA [applications] following January 20, 2017." Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices. Defendants also object to RFP 6 to the extent that it is unclear what documents Defendant-Intervenor seeks that are different from documents sought in RFP 5, and to the extent that RFPs overlap, or that RFP 6 seeks documents that are duplicative of those sought in RFP 5. Such apparently duplicative and overlapping requests are overly burdensome and confusing for Defendants to interpret and understand how to respond. Defendants further object that the use of the word "and" in "who work in the evaluation and adjudication of DACA applications" is

ambiguous and creates confusion.  Defendants do not know whether each such employee noted must do *both* actions, "evaluation *and* adjudication," or whether each employee must be involved at least in either "evaluation" or "adjudication" of DACA requests.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).  This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing); *Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477, 2006 WL 1373055, at *4-5 (D. N.J. May 17, 2006) (denying the plaintiff's request for expedited discovery in part because it "would lead to the parties conducting all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery"); *compare with Par. of Jefferson v. S. Recovery Mgmt., Inc.*, No. CIV. A. 95-2290, 1995 WL 542475, at *2 (E.D. La. Sept. 12, 1995) (granting motion for expedited discovery because it was limited to five request for documents which defendants should routinely maintain and have readily accessible).  More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to subparts (1), (3) and (4), because they are duplicative of RFP No. 5.

USCIS is prepared to provide readily available final versions of non-case specific documents describing the process by which DHS evaluates, processes, and adjudicates DACA requests maintained by custodians who are currently employed by USCIS, but not to conduct a comprehensive search for all email and other documents "relating to the process by which DHS . . . evaluates, processes, and adjudicates DACA" requests, or to conduct a comprehensive search for records that were maintained by former USCIS employees.

Due to the breadth of Request for Production No. 6, which covers six years, Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents and emails "relating to" the process by which DHS evaluates, processes, and adjudicates DACA requests that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges.  It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians.  Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

ICE specifically objects to being required to search for and/or produce documents responsive to Request No. 6 for the period of time from June 2012 through August 2012.  ICE has contacted several individuals currently employed by ICE and determined that they have no documents responsive to Request No. 6.  To the extent that responsive documents do exist, they would be among the emails of former ICE employees.  ICE objects to being required to conduct an electronic search of such emails for the period of June 2012 through August 2012 on the grounds that such a requirement would be overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  It is unclear what search terms could be used to locate responsive emails, especially because it is unknown whether there were any responsive emails were ever created, transmitted, and/or retained.

**REQUEST FOR PRODUCTION NO. 7:**

Produce documents showing the number of DACA applications received, rejected, denied, and approved, including but not limited to: (1) the number of initial DACA applications received, rejected, denied, and approved by each Plaintiff state, for each month during the period of June 2012 to June 2018; (2) the number of renewal DACA applications received, rejected, denied, and approved by each Plaintiff state, for each month during the period of June 2012 to June 2018; and (3) the number of DACA applications accepted but denied, during the period of June 2012 to June 2018, after the adjudicator determined the applicant met the five criteria in the June 15, 2012 DACA memorandum but was otherwise not a qualifying applicant, including because the applicant posed a threat to national security or public safety, by each Plaintiff state, for each month.

**OBJECTION TO REQUEST NO. 7:**

Defendants specifically object to Request for Production (RFP) No. 7 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period

from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA. Defendants further object to the following terms in RFP No. 7 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "initial DACA [applications]," "renewal DACA [applications]," "received," "rejected," "denied," and "approved." Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices. Defendant also objects that the phrase "met the five criteria in the June 15, 2012 DACA memorandum," is ambiguous, and Defendant is without sufficient knowledge to know exactly which "five criteria" Defendant-Intervenor is referencing with this phrase. The reference to the "June 15, 2012 DACA memorandum" lacks specificity, and thus is ambiguous, but Defendants will interpret it to mean the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018, and its subsequent order that same day (Dkt. 97). This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing). More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to this Request to the extent it seeks statistics that are duplicative of information that is being provided in response to the Interrogatories. Federal Defendants also object to the Request as vague and ambiguous as to the time period for which it requests documents.

Due to the breadth of this Request Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians.  Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In lieu of providing responsive documents, USCIS respectfully refers Defendant-Intervenors to the responses to Interrogatories and the following pages of the USCIS website:

- DACA Quarterly Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data/data-set-form-i-821d-deferred-action-childhood-arrivals
- Other DACA Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data
- USCIS Electronic Reading Room, which includes responses to Congressional inquiries, among other documents, that contain statistics and other information that may pertain to this RFP and is electronically searchable: https://www.uscis.gov/about-us/electronic-reading-room

**REQUEST FOR PRODUCTION NO. 8:**

Produce all documents relating to process by which DHS, and any of its subsidiary agencies, departments, agents, and employees, evaluates and adjudicates applications or requests for deferred action other than DACA, including but not limited to: (1) under what circumstances an application or request is rejected, denied, or accepted; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of deferred action applications or requests; (3) and the procedure(s) employed by agents and employees who work in the evaluation and adjudication of deferred action applications or requests; and (4) any changes in the process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA since January 20, 2017.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 8:**

Defendants specifically object to Request for Production (RFP) No. 8 to the extent that it uses terms that do not apply to DACA or to deferred action generally, such as "applications."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  Non-DACA deferred action is also made by written request, not an application, to DHS.  As such, neither DACA, nor non-DACA deferred action is

obtained through an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications…for deferred action other than DACA" to mean written requests for non-DACA deferred action.  Defendants further object to the following terms in RFP No. 8 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendants common use of the terms in its agency practices regarding deferred action: "evaluates," "adjudicates," "rejected,", "denied," "accepted," "evaluation and adjudication of deferred action applications or requests," "procedures(s) employed by…who work in the evaluation and adjudication of deferred action," and "any changes in the process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA since January 20, 2017."  Defendants' response is based on Defendants' common usage of such terms in its agency practices. Federal Defendants object to RFP No. 8 to the extent that the request is beyond the scope of the claims in this case or they are not relevant to any party's claim or defense and not likely to lead to the discovery of relevant information.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).   This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).  More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

 Federal Defendants further object to this Request on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case and is outside the scope of the relief sought in this action.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to this Request to the extent that it seeks every deferred action request that was ever denied. Federal Defendants also object to the Request as vague and ambiguous as to the time period for which it requests documents.

USCIS is prepared to provide readily available, final versions of non-case specific documents regarding the process by which USCIS evaluates, processes, and adjudicates requests for deferred action other than DACA, that were in existence and in use at any time between January 1, 2016 and June 22, 2018, and that are maintained by custodians who are currently employed by USCIS. USCIS will not conduct a comprehensive search for all emails or other documents "relating to [the] process by which DHS . . . evaluates and adjudicates" non-DACA deferred action requests, or conduct a comprehensive search for records that were maintained by former USCIS employees.  Due to the breadth of this Request, Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents and emails relating to the process by which DHS evaluates and adjudicates requests for deferred action other than DACA that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges, or risk being under-inclusive in scope. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of the email and other electronic records of all potential custodians.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS, and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS or DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In addition to the responsive documents being produced, USCIS respectfully refers Defendant-Intervenors to the following publicly available information:

- Memorandum from Stuart Anderson, Executive Associate Commissioner, Office of Policy and Planning, INS, "Deferred Action for Aliens with Bona Fide Applications for T Nonimmigrant Status," May 8, 2002, 81 FR 92266 at 92279 (https://www.regulations.gov/document?D=USCIS-2011-0010-0004)
- "New Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for 'T' Nonimmigrant Status," 67 Fed. Reg. 4784, 4790 (Jan. 31, 2002)
- "New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status," 72 FR 53014-01 (Sept. 17, 2007)

**REQUEST FOR PRODUCTION NO. 9:**

Produce all documents relating to the number of DACA applications received, rejected, denied, and approved at each of the five USCIS Service Centers, including but not limited to: (1) the number of initial DACA applications received, rejected, denied, and approved from each Plaintiff state, every month, during the period of June 2012 to June 2018; and (2) the number of renewal DACA applications received, rejected, denied, and approved from each Plaintiff state, every month, during the period of June 2012 to June 2018.

**OBJECTION TO REQUEST NO. 9:**

Defendants specifically object to Request for Production (RFP) No. 9 to the extent that it uses terms that do not apply to DACA, such as "applications."  A request for DACA may be

submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA.  Defendants further object to the following terms in RFP No. 9 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "initial DACA [applications]," "renewal DACA [applications]," "received," "rejected," "denied," and "approved."  Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).  This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).  More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to this RFP to the extent it seeks statistics that are duplicative of information that is being provided in response to the Interrogatories. Federal Defendants also object to this RFP as vague and ambiguous as to the time period for which it requests documents.

Due to the breadth of this Request Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges. It would be unduly burdensome and not proportional to the needs of this case for

USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians.  Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In lieu of providing responsive documents, USCIS respectfully refers Defendants-Intervenors to the pages of the USCIS website:

- DACA Quarterly Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data/data-set-form-i-821d-deferred-action-childhood-arrivals
- Other DACA Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data
- USCIS Electronic Reading Room, which includes responses  to Congressional inquiries, among other documents, that contain statistics and other information that may pertain to this RFP and is electronically searchable: https://www.uscis.gov/about-us/electronic-reading-room

## REQUEST FOR PRODUCTION NO. 10:

Produce all documents relating to the USCIS processing time of accepted and approved DACA applications, including but not limited to: (1) the amount of time that elapses between the date USCIS accepts an application and the time the application is approved; (2) the amount of time that elapses between the date USCIS approves an application and an applicant receives an employment authorization document; and (3) any changes in the processing time described above since January 20, 2017.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 10:

Defendants specifically object to Request for Production (RFP) No. 10 to the extent that it uses terms that do not apply to DACA, such as "applications."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA.  Defendants further object to the following terms in RFP No. 10 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "processing time," "accepted," "approved," and "any changes in the processing time described above since January 20, 2017."  Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices   Defendants also object that "amount of time that elapses" is vague and undefined, and therefore ambiguous.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).   This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, \*4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at \* 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing). More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, \*5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to the extent this Request seeks documents duplicative of information provided in response to the Interrogatories. Federal Defendants also object to the Request as vague and ambiguous as to the time period for which it requests documents.

Due to the breadth of this Request Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians.  Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In lieu of providing responsive documents, USCIS respectfully refers Defendants-Intervenors to its responses to the Interrogatories and publicly available documents on the following pages of the USCIS website:

- Website for checking current case processing times: https://egov.uscis.gov/processing-times/
- USCIS Electronic Reading Room, which includes responses to Congressional inquiries, among other documents, that contain statistics and other information that may pertain to this RFP and is electronically searchable: https://www.uscis.gov/about-us/electronic-reading-room

Dated: July 6, 2018                    Respectfully submitted,

                                       CHAD A. READLER
                                       Acting Assistant Attorney General
                                       Civil Division
                                       BRETT A. SHUMATE
                                       Deputy Assistant Attorney General
                                       WILLIAM C. PEACHEY
                                       Director, Office of Immigration Litigation
                                       District Court Section

                                       /s/ *Jeffrey S. Robins*
                                       JEFFREY S. ROBINS
                                       Attorney-in-Charge
                                       Assistant Director
                                       U.S. Department of Justice, Civil Division
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Washington, DC 20044
                                       Telephone: (202) 616-1246
                                       Facsimile: (202) 305-7000
Attorneys for Federal Defendants       jeffrey.robins@usdoj.gov

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| |
|---|
| STATE OF TEXAS, *et al.*, |
| Plaintiffs, |
| v. |
| KIRSTJEN M. NIELSEN, *et al.*, |
| Defendants, |
| *and* |
| KARLA PEREZ, *et al.*, |
| Defendant-Intervenors. |

Case No. 18-cv-00068

### <u>DECLARATION OF TRACY L. RENAUD</u>

I, Tracy L. Renaud, hereby make the following declaration with respect to the above captioned matter.

1. I am the Acting Deputy Director of U.S. Citizenship and Immigration Services ("USCIS"), Department of Homeland Security. I began serving as the Acting Deputy Director on March 5, 2018. I also formerly served as the Acting Deputy Director of USCIS between January and October 2017.

2. As the Acting Deputy Director of USCIS, I am responsible, along with the Director, for overseeing approximately 19,000 federal employees and contractors, handling approximately 26,000 immigration benefit applications, petitions, and other requests on an average day.

1

3. Prior to March 2018, I served as the Associate Director of the Management Directorate within USCIS.

4. I make this declaration on the basis of my personal knowledge and information made available to me at this time during the course of my official duties.

**<u>Limitations on Information Captured in USCIS Databases</u>**

5. USCIS began accepting initial DACA requests on August 15, 2012, and began accepting DACA renewal requests on June 4, 2014.

6. The Computer Linked Application Information Management System (CLAIMS 3) and the Electronic Immigration System (ELIS) are electronic case management systems that USCIS uses to process certain immigration requests. From the inception of the DACA policy in 2012 until November 2015, all DACA requests were manually data entered into and processed in CLAIMS 3. See the publicly available Privacy Impact Assessment for CLAIMS 3 (DHS/USCIS/PIS-06(a)), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-claims3appendixupdate-may2018.pdf.   On November 1, 2015, USCIS began ingesting some DACA requests in ELIS.  In February 2016, USCIS transitioned to ELIS for the ingesting and processing of all newly filed DACA requests.  *See* the publicly available Privacy Impact Assessment for ELIS (DHS/USCIS/PIA-056 ELIS), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-elisappendixupdate-may2018.pdf.

7. Based on its ordinary business practices, USCIS maintains electronic and/or paper copies of its initial and renewal DACA decisions and its Requests for Evidence (RFEs) in DACA cases.  However, USCIS' case management systems do not electronically capture the underlying basis (bases) for denial of an initial or renewal DACA request or the basis (bases)

on which a Request for Evidence (RFE) was sent, in a manner that can be systematically and reliably obtained.

8. Individual case-by-case review of the electronic and/or paper files for over approximately 19,000 DACA requests (approximately 17,000 denied initial requests and approximately 2,000 denied renewal requests from Plaintiff States) to determine the underlying basis (bases) for the denials would be a highly burdensome undertaking.  Case-by-case review may also require further consultation with the adjudicator who rendered the decision. For each case requiring paper A-file review, many variables would impact the time it would take for the A-file to be transferred to an officer for review, including the current location of the A-file and whether it is in use by another DHS component or another USCIS office. Assuming most paper A-files that would be needed for this review are located at USCIS' National Records Center (NRC) and not otherwise currently needed by another DHS component or USCIS office, USCIS estimates that it would take approximately 15 business days from the date the A-file is requested, to the date it is received by an officer for review. USCIS further estimates that manual review of a paper A-file or electronic record to determine the underlying basis for denial, including an assessment of the evidence upon which the officer made the denial determination, would take approximately 20 minutes per case.   Therefore, USCIS estimates that individual case-by-case review of the electronic and/or paper files for over approximately 19,000 DACA requests would take more than approximately 6,300 hours to complete.

9. Individual case-by-case review of the electronic and/or paper copies of the Requests for Evidence (RFEs) sent for over approximately 60,100 initial and renewal DACA requests (approximately 50,600 initial requests received RFEs and approximately 9,500 renewal

requests received RFEs) to determine the basis (bases) for sending the RFE would also be an unduly burdensome undertaking.  USCIS estimates that it would take approximately five minutes per case to retrieve and review an electronic copy of the RFE, in order to determine the basis (bases) on which the RFE was sent.  To conduct this case-by-case electronic review for approximately 60,100 requests would take more than approximately 5,008 hours to complete.  Not all RFEs are available for review electronically, therefore the time required to complete this task would increase significantly depending on the number of physical A-files that would need to be retrieved and reviewed.

10. A response to Part 3, Question 4 on the Form I-821D is not required in order for USCIS to accept and process the Form I-821D.  USCIS officers review the evidence submitted with the request to determine the requestor's status on June 15, 2012.  A DACA requestor may have left the response to Part 3, Question 4 blank, handwritten a response to the question, or selected one of three standard responses available in a dropdown box that is available when completing the electronic PDF version of the Form I-821D.  The three standard responses that a DACA requestor may select in the dropdown box for Part 3, Question 4 are: "Status Expired," "Parole Expired," or "No Lawful Status".  Therefore, an electronic Form I-821D record in either CLAIMS 3 or ELIS may have a blank response for this question, or the response entered by the requestor on the Form I-821D may not have been in a format that was recordable electronically given USCIS electronic formatting limitations.  Additionally, CLAIMS 3 does not electronically capture the standard, dropdown, responses to Part 3, Question 4, on the Form I-821D, and ELIS does not capture this information in a complete manner.  Accordingly, individual, case-by-case review would be necessary to obtain this information.

11. Individual case-by-case review of ELIS records, an electronic copy of the Form I-821D, or the original paper version of the Form I-821D if an electronic copy is not available, for over approximately 156,000 requests to determine which of the three standard dropdown responses to Part 3, Question 4 is applicable to the requestor for ELIS and CLAIMS 3 cases, and the response to Part 3, Question 5a for CLAIMS 3 cases, would take approximately 10 minutes per case, for a total of approximately 26,000 hours.  For any cases that require paper review of the original Form I-821D, USCIS estimates that it would take approximately 15 days for an officer to receive the A-file for review after it is requested, assuming the A-file is located at the NRC and not otherwise currently needed by another DHS component or USCIS office.

12. USCIS databases do not electronically capture the underlying statutory basis for which an individual is eligible for adjustment of status to lawful permanent residence in a manner that can be systematically obtained.

13. USCIS estimates that individual case-by-case review of the electronic and/or paper records of more than approximately 7,000 individuals to determine the underlying statutory eligibility basis for adjustment of status to lawful permanent residence would take approximately five minutes per case, for a total of approximately 583 hours to complete.  While it is possible some of the records for these cases have been digitized and therefore the records could be requested and obtained electronically for review quickly, additional time would be required to obtain the paper A-file for cases that have not been digitized. For paper A-files that need to be transferred to an officer for review, USCIS estimates that it would take approximately 15 days for an officer to receive the A-file after it is requested, assuming the A-file is located at the NRC and not otherwise currently needed by another DHS component or USCIS office.

14. Individual case-by-case review of electronic or paper records would require the diversion of officers and employees from other mission critical work. To the extent officers would need to review certain paper records, the files would need to be located and transferred, if even possible in every case, to the officer, which may take considerable time as such files are frequently in use by other DHS officers, such as U.S. Immigration and Customs Enforcement (ICE) trial attorneys in removal proceedings.

15. Many of the officers who would have to manually review the electronic and paper records on each case to determine the reasons for denial, RFE, or the responses selected on the Form I-821D to Part 3, Question 4 and 5a, would likely need to be diverted from reviewing, processing, and adjudicating DACA requests or immigration benefit requests, including potentially the review and resolution of background check hits and/or other security vetting procedures. Those ongoing operations would be significantly and detrimentally affected if adjudicators were diverted to work on this burdensome discovery.

**Burden of Document Collection**

16. USCIS has identified more than approximately 65 potential non-attorney custodians throughout the agency in numerous components and directorates, including Service Center Operations (SCOPS), the Office of Intake and Document Production (OIDP), the Fraud Detection and National Security Directorate (FDNS), the Field Office Directorate (FOD), the Office of Policy & Strategy (OP&S), the Office of Public Affairs (OPA), the Office of Management Executive Secretariat (Exec Sec), the External Affairs Directorate (EXA), and the Office of Legislative and Intergovernmental Affairs (OLIA). USCIS has identified an additional approximately 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel. USCIS has also identified at least 12 potential

custodians who are no longer employees of USCIS, approximately 8 of whom were former agency counsel.

17. Due to multiple unknown variables involved, the USCIS Office of Information Technology (OIT) is unable to provide a reliable estimate of the number of hours it would take to conduct a comprehensive search and collection of potentially responsive email records of current and former USCIS employees.  This type of comprehensive collection requires, at a minimum, the following steps:

Step 1:  Searching of user archives using search terms and six-year data range.  In order to search from 2012 to 2018 requires OIT to query every user archive for base searches to ensure the most complete results;

Step 2:  Accepting the results;

Step 3:  Deduplication and exporting the results to a server;

Step 4:  Transferring the files from the initial server to a forensic server;

Step 5:  Replicating the files to a second forensic server;

Step 6:  Replicating the files onto an encrypted DOJ hard drive.

18. OIT estimates that Step 1 could take approximately 6 to 8 hours per custodian to complete, due to the number of archives that would need to be searched to cover the six year time frame.  In order not to inadvertently exclude potentially responsive documents, the keywords selected for searching emails would be so broad, *e.g.,* "DACA" or "deferred action," that they would likely result in an enormous volume in the hundreds of thousands of documents. Due to server limitations, OIT can run no more than 4 custodian searches simultaneously. Accordingly, OIT estimates that it would take approximately 204 to 272 hours to complete Step 1 for 136 custodians.

19. The time estimate for completing Step 2 is impossible to reliably determine due to the unknown volume of results.  At a minimum, OIT estimates that accepting the results could take approximately an hour per search, or approximately 136 hours for 136 custodians.

20. Likewise, the time estimate for completing Step 3 is impossible to reliably determine.   Due to software limitations, OIT can export no more than four sets of files at a time across the entire application.  Files are queued for export on a first in, first out basis, so if exports are already being run for other cases, the files for this case would be placed at the end of the queue, and therefore the exporting process for this case would be slowed significantly depending on the volume of files queued for export in other cases. A high volume of exports for this case would likewise significantly negatively impact OIT's ability to effectively comply with discovery requests in other USCIS litigation. Due to the large potential archive list, broad date range, and possible number of duplicates, OIT estimates that Step 3 would take approximately 1.5 hours per custodian to complete, or approximately 204 hours for 136 custodians.

21. It is also impossible to reliably estimate the time burden for completing Steps 4 through 6 as the burden entirely depends on the number of file results that remain after deduplication. Each transfer and replication step takes approximately 15 minutes per 1.5 GB to complete. If only 1.5 GB of email data per custodian remained after deduplication, it would take approximately 45 minutes per custodian to complete Steps 4 through 6, or approximately 102 hours for 136 custodians.  However, in light of the six year date range of the discovery requests and the broad search terms that would need to be used to conduct the search, 1.5GB is a very low benchmark for this calculation. It is likely that many custodians would have three to four times as much data to be transferred.

22. This overall estimate of approximately 493 to 561 hours to complete email searches and data transfers for 136 custodians is an exceedingly low estimate that assumes near perfect technological processing at every step. Due to the high likelihood that custodians would have significantly more data to be transferred than the 1.5GB benchmark used above, as well as the high likelihood that data transfer speed would not be perfect, it is likely that the total time required to complete a search, collection, and transfer of this magnitude and complexity would be at least three to four times the number of hours indicated above.

23. Additionally, USCIS is not able to recover with 100% accuracy all emails that were sent or received prior to August 16, 2014. Prior to this date, emails were maintained in individual user records, rather than through journaling on a server. Therefore, emails sent or received prior to August 16, 2014, which were deleted by an individual user, may be unrecoverable. In limited circumstances, deleted emails sent or received prior to August 16, 2016, may be recoverable if captured in the individual's archive or in another user's archive, but it can be very burdensome and time consuming to retrieve emails from individual user archives depending on where the archives are located. Deleted emails sent or received prior to August 16, 2016, may also be recoverable if captured on USCIS email backup tapes before the email was deleted, however the process to restore back-up tapes is unduly burdensome, expensive, and would take information technology staff resources away from their core mission. Accessing these emails would require approximately 250 to 575 hours of active work per email account, plus additional time in transit from the storage site to the work site.

24. Documents only maintained locally on a former employee's hard drive cannot be recovered if the computer has been reimaged and reissued to another user. Documents maintained on a former employee's share drive may be recovered if the share drive data was maintained on

the local office's server.  The burden of retrieving data from both current and former

employees' personal share drive and/or local drive, and transferring this data to the

Department of Justice (DOJ), and the burden of reviewing these records for responsiveness

and privileges, depends entirely on the amount of data obtained.  Due to limitations in OIT's

ability to search within all types of data files for keywords, entire contents of folders

containing any files with relevant keywords would generally need to be extracted.  This

method typically results in significantly large amounts of data to be obtained, transferred to

DOJ, and reviewed for responsiveness and privileges.  OIT estimates that it would take a

minimum of 2 hours to complete each data transfer per custodian to USCIS' forensic server,

another 2 hours per custodian to transfer the data to the second forensic server, and an

additional 2 hours per custodian to transfer the data to an encrypted DOJ hard drive.  Four

searches and collections of this non-email data can be run simultaneously, therefore, OIT

estimates that it would take a minimum of approximately 204 hours to complete this

collection and transfer for 136 custodians.  This estimate would increase if custodians stored

potentially responsive records in multiple locations, such that OIT would need to extract

folders from both a personal share drive and a local drive.

25. If each of the approximately 65 non-agency counsel custodians were to individually attempt

to conduct comprehensive searches of his or her own emails and non-email records to locate

all responsive records, USCIS estimates that it would take more than approximately 6,000

hours combined just to locate and segregate the responsive records, not including the time for

transferring large amounts of data to the Department of Justice (DOJ), and the time for

review of the documents for responsiveness and privileges by agency counsel.  This time

burden would increase significantly if an additional approximately 59 agency counsel

custodians were to individually attempt to conduct comprehensive email searches of his or her own emails and non-email records to locate all responsive records.  Individual searches by each custodian would require the diversion of officers and employees from other mission critical work.

26. All the time burden estimates regarding email and non-email record collection would increase if additional custodians are identified.

I certify, to the best of my knowledge and belief that content in this declaration is true and correct.

Executed this 6th day of July of 2018.


_Tracy Renaud_

Tracy L. Renaud

# EXHIBIT 3



### *State of New Jersey*

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 45029
Newark, NJ 07101

GURBIR S. GREWAL
*Attorney General*

MICHELLE L. MILLER
*Acting Director*

February 25, 2019

**<u>Via Email and First Class Mail</u>**
Jeffrey S. Robins
Deputy Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

      Re:    *Texas, et al. v. USA, et al.*, Index No. 1:18-cv-00068
           United States District Court, Southern District of Texas:
           <u>Federal Defendants' Production of the Administrative Record</u>

Dear Mr. Robins:

      We write to inquire about the Federal Defendants' promised production of the "administrative record."

      In the Joint Discovery filing dated October 31, 2018 (Dkt. 335), the Federal Defendants repeatedly stated: "Federal Defendants anticipate serving an administrative record on the parties within 30-days of entry of a scheduling order." (<u>Id</u>. at 4, 10.)  The Court entered the scheduling order on November 14, 2018 (Dkt. 337 and minute order[1]).  Thus, the Federal Defendants should have provided the administrative record to the parties by December 14, 2018.

      On December 14, 2018, you wrote an email to counsel: "Unfortunately Federal Defendants will not be serving initial disclosures today. I intend to send them out on Monday [December 17, 2018] followed by production of an administrative record soon thereafter."  On December 17, 2018, the Federal Defendants served their initial disclosures, which referenced a future production

---

[1] The minute order for Dkt. 337 states: "Minute Entry for proceedings held before Magistrate Judge Frances H Stacy. SCHEDULING CONFERENCE held on 11/14/2018. Scheduling/ Docket Control Order issued." The following minute order on November 14, 2018 on the docket states the deadlines.



124 Halsey Street, 5th Floor, Newark, New Jersey 07101 • TELEPHONE: (973) 648-7453 • jeremy.hollander@law.njoag.gov
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

February 25, 2019
Page 2

of "the administrative record regarding the creation of DACA." (Federal Defendants' Initial Disclosures at 2). But the Federal Defendants have yet to produce that promised administrative record.

The partial shutdown of the federal government began on December 22, 2018. On December 26, 2018, in response to a deficiency letter from counsel for the Perez Defendant-Intervenors regarding the third set of discovery requests, you wrote to counsel in an email: "Federal Defendants are in receipt of this letter. Please note that any response will unfortunately be delayed due to the current lapse in appropriations, as will Federal Defendants production of an administrative record."

The government shut down ended on January 25, 2019. But the promised administrative record still has yet to be provided. Please promptly advise us of the status of that production.

Notwithstanding the above, the State of New Jersey and the Perez Defendant-Intervenors continue to dispute Federal Defendants' claim that discovery should be limited to review of a purported administrative record. Nothing herein should be construed to limit any of their rights to seek additional discovery, to challenge the sufficiency of any purported administrative record produced by the Federal Defendants, or to challenge whether the information produced amounts to an administrative record.

Sincerely,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: _____
    Jeremy E. Hollander
    Assistant Attorney General

cc (via email):  All lead counsel of record

# EXHIBIT 4

**Isabel Pina**

| | |
|---|---|
| **From:** | Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov> |
| **Sent:** | Wednesday, March 20, 2019 3:45 PM |
| **To:** | Jeremy Hollander |
| **Cc:** | Glenn Moramarco; Kenneth Levine; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs; Walker, James (CIV); Alejandra Avila; Shumate, Brett A. (CIV) |
| **Subject:** | RE: Letter in Texas et al. v. United States et al., No. 1:18-cv-00068 |

Jeremy,

Federal Defendants are in receipt of your February 25, 2019, letter regarding the production of an administrative record. As an initial matter, there is no Court-ordered deadline regarding Federal Defendants' production of an administrative record. While Federal Defendants previously identified a timeline for production of that record, as you are aware, Federal Defendants' efforts to compile and serve the administrative record were hampered by the lapse in appropriations. Since the restoration of funding in late-January 2019, Federal Defendants' efforts to complete production of an administrative record have been hampered by: (1) competing taskings resulting from efforts to return to operations, (2) new deadlines in other matters that arose during the lapse in appropriations, (3) technical difficulties that impacted Federal Defendants' access to our document review platform, and (4) recognition that an additional line of documents not previously identified as appropriate for inclusion in the administrative record required further scrutiny and a re-review of documents. That said, Federal Defendants now anticipate production of an administrative record on or before April 5, 2019.

Sincerely,

Jeff Robins

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>
**Sent:** Monday, February 25, 2019 4:21 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Alejandra Avila <Aavila@MALDEF.org>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>
**Subject:** Letter in Texas et al. v. United States et al., No. 1:18-cv-00068

Jeff:  Please see the attached letter, a hard copy of which has also been sent to you today.

Sincerely,

Jeremy

Jeremy E. Hollander | Assistant Attorney General
Office of the Attorney General | State of New Jersey
Division of Law | Affirmative Civil Enforcement
124 Halsey St.  | Newark, NJ 07101
T: 973.648.7453 | jeremy.hollander@law.njoag.gov

PRIVILEGED  CONFIDENTIAL

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

# EXHIBIT 5



**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta
Program Office**
500 W. Lanier Ave.
Suite 908
Fayetteville, GA 30215
*Tel:* 470.878.0785

**Chicago
Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*Tel:* 312.427.0701
*Fax:* 312.427.0691

**Los Angeles
Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento
Program Office**
1512 14th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio
Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*Tel:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.
Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

November 30, 2018

Jeffrey S. Robins
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, DC  20044

   RE:  *State of Texas, et al. v. USA, et al.,*
       Civil Action No. 1:18-cv-00068

Dear Mr. Robins:

  I write on behalf of Defendant-Intervenors Karla Perez, *et al*. ("Perez Defendant-Intervenors") regarding outstanding initial disclosures by the Federal Defendants in the above-captioned matter.

  At the November 14, 2018 initial conference, the Court entered a Rule 16 schedule, noting that given the Court's denial of Plaintiff States' motion for a preliminary injunction, the case should proceed to trial with a regular discovery schedule.  *See* 11-14-18 Tr. at 6:4-7, 7:11-12 ("[T]he 31st of August 2018, Judge Hanen declined to issue preliminary injunctive relief. And so I have visited with him and he's asked that I enter a schedule for your trial . . . trial date about 18 months from now seemed reasonable to Judge Hanen").

  Despite the Court's scheduling order, Federal Defendants have not provided initial disclosures, which were due to all parties more than three weeks ago, on November 6, 2018.  *See* Fed. R. Civ. P. 26(a)(1)(C).  Federal Defendants therefore have failed to identify basic information about their claims and defenses, including persons likely to have discoverable information and documents in its possession, and have prevented Perez Defendant-Intervenors from having a fair and full opportunity to engage in discovery as ordered by the Court.

  Perez Defendant-Intervenors request that Federal Defendants immediately provide their outstanding initial disclosures in compliance with the Federal Rules.

Sincerely,

*Alejandra Avila*

Alejandra Avila
Staff Attorney

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al*., | |
| Plaintiffs, | |
| v. | Case No. 18-cv-00068 |
| UNITED STATES OF AMERICA, *et al*., | |
| Defendants, | |
| KARLA PEREZ, *et al*., | |
| Defendant-Intervenors, | |
| and | |
| STATE OF NEW JERSEY, | |
| Defendant-Intervenor. | |

## FEDERAL DEFENDANTS' RULE 26(a)(1) INITIAL DISCLOSURES

TO:   Plaintiffs, c/o Todd L. Disher, Special Counsel for Civil Litigation, Texas Attorney General's Office, P.O. Box 12548, Austin, TX 78711-2548, todd.disher@oag.texas.gov;

Defendant-Intervenors Karla Perez, et al., by and through their attorney of record, Nina Perales, Mexican American Legal Defense and Educational Fund, 110 Broadway, Suite 300, San Antonio, Texas 78205; and

Defendant-Intervenor the State of New Jersey, by and through its attorney of record, Glenn Moramarco, New Jersey Attorney General's Office, Division of Law, Richard J. Hughes Justice Complex, 25 Market Street, 8th Floor, Trenton, New Jersey 08625-0116, glenn.moramarco@law.njoag.gov.

Federal Defendants provide the following initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. Federal Defendants provide these disclosures subject to their general objection to any discovery taking place in this litigation, as it is a matter subject to review of an administrative record. *See* Fed. R. Civ. P. 26(a)(1)(B)(i). These disclosures are based on information reasonably available to Federal Defendants at the current time. Federal

1

Defendants reserve their rights to supplement these disclosures pursuant to Federal Rule of Civil Procedure 26(e).

**1. Rule 26(a)(1)(A)(i):**

The following individuals are likely to have discoverable information that Federal Defendants may use to support their defenses, unless solely for impeachment. Defendants will supplement these disclosures as appropriate.

    a.   All individuals identified in Plaintiffs' and Defendant Intervenors' initial disclosures.

    b.   Any individuals revealed and/or yet to be revealed in discovery.

**2. Rule 26(a)(1)(A)(ii):**

The following documents, electronically stored information, and tangible things in Defendants' possession, custody, or control may be used to support their defenses, unless solely for impeachment.

    a. Documents included in the administrative record regarding the creation of DACA.

    b. Documents that are publicly available on DHS, USCIS, ICE and/or CBP websites.

    c. Correspondence with, testimony before, and responses to any questions for the record from Congress regarding DACA

    d. Documents identified, produced, or filed in court by Plaintiffs or Defendant Intervenors.

**3. Rule 26(a)(1)(A)(iii):**

Defendants have no claimed damages.

**4. Rule 26(a)(1)(A)(iv):**

Not applicable.

Dated: December 17, 2018

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

Attorneys for Federal Defendants

Respectfully submitted,

*/s/ Jeffrey S. Robins*
JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington, DC 20044
Telephone: (202) 616-1246
Facsimile: (202) 305-7000
jeffrey.robins@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2018, the foregoing document is being served on all counsel of record by electronic mail.

/s/ Jeffrey S. Robins

JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director

Attorneys for Federal Defendants

# EXHIBIT 7



MALDEF
The Latino Legal Voice for Civil Rights in America.

**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta
Program Office**
500 W. Lanier Ave.
Suite 908
Fayetteville, GA 30215
*Tel:* 470.878.0785

**Chicago
Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*Tel:* 312.427.0701
*Fax:* 312.427.0691

**Los Angeles
Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento
Program Office**
1512 14th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio
Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*Tel:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.
Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

December 19, 2018

Jeffrey S. Robins
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, DC  20044

RE:  *Texas, et al. v. USA, et al.*, No. 1:18-cv-00068

Dear Mr. Robins:

I write on behalf of Defendant-Intervenors Karla Perez, *et al*. ("Defendant-Intervenors") regarding Defendants' Objections and Responses to Defendant-Intervenors' Third Set of Discovery Requests and accompanying declaration of Tracy L. Renaud, dated July 6, 2018.

Based on our review of Defendants' objections and responses and Ms. Renaud's declaration, and in light of the Court's denial of Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, Defendants' objections and responses to Interrogatories Nos. 3, 4, and 9 through 14 and Requests for Production Nos. 5 through 9 are insufficient, and Defendants' production requires supplementation.  *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party . . . who has responded to an interrogatory[ or] request for production . . . must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect.").

Attached please find Defendant-Intervenors' detailed description of the deficiencies of each response and objection offered by Defendants as to these discovery requests.  *See* Attachments A and B.  Please provide amended answers to Interrogatories Nos. 3, 4, and 9 through 14.  As more fully explained in Attachment B, Defendant-Intervenors also request that Defendants provide a list of suggested search terms and potential custodians in connection with Requests for Production Nos. 5 through 9 so the parties may engage in a good faith attempt to narrow the scope of Defendants' review and Defendants can supplement their production.

Sincerely,

*Alejandra Ávila*

Alejandra Ávila
Staff Attorney

December 19, 2018
Page 2 of 23

## ATTACHMENT A
## DEFICIENCIES IN DEFENDANTS' OBJECTIONS AND RESPONSES TO DEFENDANT-INTERVENORS' INTERROGATORIES

INTERROGATORIES NOS. 3 & 4:

- These interrogatories asked Defendants to identify the number of initial and renewal DACA applications (also known as requests) received by Defendants from each Plaintiff for each month during the period of June 2012 to June 2018, and to identify, of those numbers, the number of DACA applications approved, denied, and rejected by Defendants.

- Defendants sufficiently responded to these interrogatories as to some Plaintiffs; however, Defendants answers are incomplete and require supplementation. Specifically, Defendants only provided information related to the states of Texas, Alabama, Arkansas, Louisiana, Nebraska, South Carolina, and West Virginia, but did not provide any information related to the states of Mississippi and Maine.

- Defendant-Intervenors served their Third Set of Discovery Requests to Defendants on June 10, 2018. At the time, the only plaintiffs in the case were the states of Texas, Alabama, Arkansas, Louisiana, Nebraska, South Carolina, and West Virginia. *See* ECF 1. However, Mississippi Governor Phil Bryant and Maine Governor Paul R. LePage joined the case on June 25, 2018, *see* ECF 104, well before Defendants served their answers to Defendant-Intervenors' interrogatories on July 6, 2018. Defendant-Intervenors' discovery requests refer to "Plaintiff States" broadly, and define the term as "each of the named Plaintiff states in this case, and any other persons acting or purporting to act on its behalf." *See* Def.-Int. Third Set of Discovery Requests to Defendants at 3. Nonetheless, Defendants responded to Defendant-Intervenors' Third Set of Discovery Requests by interpreting the requests as applicable only to Texas, Alabama, Arkansas, Louisiana, Nebraska, South Carolina, and West Virginia. *See* Defendants' Answers to Interrogatories Nos. 3 & 4 (not providing an answer as to Mississippi or Maine). Defendant-Intervenors request that Defendants supplement their answers to Interrogatories 3 & 4 to include responsive information about Mississippi and Maine. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party . . . who has responded to an interrogatory[ or] request for production . . . must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect.").

INTERROGATORIES NOS. 9 & 10:

- These interrogatories asked Defendants to identify the number of initial and renewal DACA applications USCIS has denied from each Plaintiff during the period of June 2012 to June 2018 and to identify from that number (1) the amount of DACA applications denied at least in part because the applicant was a suspected gang member, (2) the amount of DACA applications denied at least in part because the applicant posed a threat

to national security or public safety, and (3) the amount of DACA applications denied after the adjudicator nonetheless determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

- Defendants provided an incomplete answer to Interrogatory No. 9 by stating that based on "an informal inquiry," Defendants "are aware of several initial DACA requests that were denied because the requestor either made false statements or committed fraud in other immigration or non-immigration government contexts, despite the requestor meeting the DACA guidelines . . . ." *See* Defendants' Objections and Responses, p. 11. Defendants did not answer Interrogatory No. 10; instead, Defendants provided charts with the number of initial and renewal DACA requests denied by month by each Plaintiff.  These evasive and incomplete answers amount to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to these interrogatories on the basis that they are inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See* Defendants' Objections and Responses, pp. 10, 12.  In light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that these interrogatories are "not relevant."  *See* Defendants' Objections and Responses, pp. 10, 12.  However, Defendants do not explain why the requests are irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  These requests squarely address Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action.  *See, e.g.,* ECF 104 ¶¶ 295-300.  In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development.  *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . [and b]ased on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also objected to these interrogatories on the basis that they are burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 10, 12.  Specifically, Defendants allege that although "USCIS maintains electronic and/or paper copies of its initial and renewal DACA decisions . . . USCIS's case management systems do not electronically capture the underlying basis (bases) for denial of an initial or renewal DACA request . . . in a manner that can be systemically and reliable obtained."  7-6-18 Renaud Declaration ¶ 7.  Therefore, Defendants would have to "conduct a manual, case-by-case review of the electronic and/or paper files" of

December 19, 2018
Page 4 of 23

every initial and renewal DACA request from each Plaintiff, a total of approximately 19,000 DACA requests (17,000 initial requests and 2,000 renewal requests).  Defendants' Objections and Responses pp. 10-13; 7-6-18 Renaud Declaration ¶ 8.  Defendants calculate that it would take approximately 20 minutes to conduct a "manual review of [each] paper A-file or electronic record" and, therefore, it would take approximately 6,300 hours to complete the review of 19,000 DACA requests.  7-6-18 Renaud Declaration ¶ 8.  Finally, Defendants claim the "[c]ase-by-case review may also require further consultation with the adjudicator who rendered the decision."  *Id*.

- Defendants' objection as to any purported burden does not justify their nonresponsiveness.  ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues"); *see also Magnolia Point Minerals, LLC v. Chesapeake Louisiana, LP*, No. 11-CV-0854, 2015 WL 545988, at *1 (W.D. La. Feb. 10, 2015) (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 262 (D. Del. 1992) (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate request); *Fagan v. D.C.*, 136 F.R.D. 5, 7 (D.D.C. 1991) ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . . Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citations omitted).  This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses.  In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants.  Therefore, to the extent Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case.  ***Second***, Defendant-Intervenors' interrogatories are narrowly tailored in scope; they only seek information from named Plaintiffs, provide a limited timeframe, and address the core issue of discretion in the DACA adjudication process.  ***Third***, the interrogatories seek information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case.  Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments.  *See Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 328 (D.N.J. 2015) (holding that it is unacceptable

for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case) (collecting cases).

- Defendants also object to the interrogatories "to the extent" they are vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation.  *See* Defendants' Objections and Responses, p. 10, 12.  Defendants specifically object that the term "the five criteria outlined in the 2012 DACA memo" is vague, but this phrase is not ambiguous, and Defendants correctly interpret the term as "the DACA guidelines outlined in the bulleted points on the first page of the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012."  *Id.*, p. 11.

## INTERROGATORIES NOS. 11 & 12:

- These interrogatories asked Defendants to identify the number of initial and renewal DACA applications USCIS has accepted and subsequently issued Requests for Evidence (RFEs) from each Plaintiff for each month during the period of June 2012 to June 2018, and to identify from that number the number of RFEs related to (1) whether the applicant was under the age of 31 as of June 15, 2012; (2) whether the applicant came to the United States before reaching his or her 16th birthday; (3) whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application; (4) whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action; (5) whether the applicant had no lawful status on June 15, 2012; (6) whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and (6) whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

- Defendants did not answer Interrogatories Nos. 11 and 12.  Defendants only provided charts showing the number of RFEs issued by USCIS by month by Plaintiff for the period of August 15, 2012 through June 22, 2018.  These evasive and incomplete answers amount to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to these interrogatories on the basis that they are inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See* Defendants' Objections and Responses, pp. 14, 16.  In light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that these interrogatories are "not relevant."  *See*

Defendants' Objections and Responses, pp. 14, 16.  However, Defendants do not explain why the interrogatories are irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  These interrogatories squarely address Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action.  *See, e.g.,* ECF 104 ¶¶ 295-300.  In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development.  *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . [and b]ased on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also objected to these interrogatories on the basis that they are burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, pp. 14, 16.  Specifically, Defendants allege that although "USCIS maintains electronic and/or paper copies of its initial and renewal DACA decisions . . . USCIS's case management systems do not electronically capture . . . the basis (bases) on which a Request for Evidence (RFE) was sent, in a manner that can be systemically and reliable obtained."  7-6-18 Renaud Declaration ¶ 7.  Therefore, Defendants would have to "conduct a manual, case-by-case review of the electronic and/or paper files" of the RFEs sent for every initial and renewal DACA request from each Plaintiff, a total of approximately 60,100 DACA requests (50,600 initial requests and 9,500 renewal requests).  Defendants' Objections and Responses, pp. 14-17; 7-6-18 Renaud Declaration ¶ 9.  Defendants calculate that it would take approximately 5 minutes to retrieve and review an electronic copy of an RFE and, therefore, it would take approximately 5,008 hours to complete the review.  7-6-18 Renaud Declaration ¶ 9.  Defendants claim "the time required to complete this task would increase significantly depending on the number of physical A-files that would need to be retrieved and reviewed."  *Id.*

- Defendants' objection as to any purported burden does not justify their nonresponsiveness.  ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery); *see also Magnolia Point Minerals, LLC,* 2015 WL 545988, at *1 (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Sinibaldi*, 821 F. Supp. at 262 (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate document request); *Fagan*, 136 F.R.D. at 7 ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . .

Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citations omitted).  This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses.  In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants.  Therefore, to the extent Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case.  ***Second***, Defendant-Intervenors' interrogatories are narrowly tailored in scope; they only seek information from named Plaintiffs, provide a limited timeframe, and address the core issue of discretion in the DACA adjudication process.  ***Third***, the interrogatories seek information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case.  Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments.  *See Costantino*, 152 F. Supp. 3d at 328 (holding that it is unacceptable for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case).

- Defendants also object to the interrogatories "to the extent" they are vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, the requests are not vague or ambiguous.  Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree this interpretation is proper.  *See* Defendants' Objections and Responses, p. 14, 16.

## INTERROGATORY NO. 13:

- This interrogatory asked Defendants to identify "the number of approved, initial DACA applications submitted by individuals who indicated on their I-821D, in response to Part 3. Question 4., that their immigration status on June 15, 2012 was 'Status Expired' or 'Parole Expired,' and who answered in the affirmative in response to Part 3. Question 5.a. ('Were you EVER issued an Arrival-Departure Record'), for each Plaintiff State for each month during the period of June 2012 to June 2018."

- Defendants provided the following incomplete answer to Interrogatory No. 13:  "Federal Defendants will provide a partial response regarding the number of approved initial DACA requests where 'Yes' was marked in Part 3, Question 5a. on the Form I-821D, for cases processed in USCIS' Electronic Immigration System (ELIS) . . . ."  *See* Defendants' Objections and Responses, p. 18.  Otherwise, Defendants did not answer Interrogatory No. 13.  This evasive and incomplete answer amounts to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to this interrogatory on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See*

Defendants' Objections and Responses, p. 18.  In light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that the interrogatory is "not relevant."  *See* Defendants' Objections and Responses, p. 18.  However, Defendants do not explain why the interrogatory is irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  This interrogatory is relevant to Plaintiffs' claim that DACA confers "a path to citizenship on some DACA recipients" by granting DACA recipients eligibility for advance parole, which in turn "has resulted in some of those [DACA recipients] obtaining adjustment to [lawful permanent resident (LPR)] status, for which they would otherwise be ineligible."  *See* ECF 104 ¶¶ 84-122.

- Defendants also objected to this interrogatory on the ground that it is burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 18.  Specifically, Defendants allege that "USCIS databases do not electronically capture, in a reliable, readily retrievable, systematic and complete manner . . . in the ordinary course of business" the responses to Part 3, Question 4 on the Form I-821D or the responses to Part 3, Question 5a on the Form I-821D for DACA requests "that were processed in USCIS' Computer Linked Application Information Management System (CLAIMS 3) . . . an electronic case management system."  *See* Defendants' Objections and Responses, p. 18; 7-6-18 Renaud Declaration ¶¶ 10-11.  Therefore, USCIS would have to "conduct a manual, case-by-case review" of ELIS records, an electronic copy of the Form I-821D, or the original paper version of the Form I-821D if an electronic copy is not available, for every approved initial DACA request for each Plaintiff (approximately 156,000 requests).  *Id*.  Defendants calculate that it would take approximately 10 minutes to review each request, for a total of approximately 26,000 hours.  7-6-18 Renaud Declaration ¶ 11.

- Defendants' objection as to any purported burden does not justify their nonresponsiveness.  ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery); *see also Magnolia Point Minerals, LLC,* 2015 WL 545988, at *1 (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Sinibaldi*, 821 F. Supp. at 262 (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate document request); *Fagan*, 136 F.R.D. at 7 ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . . Plaintiffs should not suffer if the information is not easily accessible because defendants

have an inefficient filing system.") (citations omitted).  This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses.  In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants.  Therefore, to the extent Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case.  ***Second***, Defendant-Intervenors' interrogatory is narrowly tailored in scope; it only seeks information from named Plaintiffs, provides a limited timeframe, and addresses the core issue of advance parole and its purported conferral of a "path to citizenship" on DACA recipients.  ***Third***, the interrogatory seeks information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case.  Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments.  *See Costantino*, 152 F. Supp. 3d at 328 (holding that it is unacceptable for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case) (collecting cases).

- Defendants also object to this interrogatory "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree this interpretation is proper.  *See* Defendants' Objections and Responses, p. 17.

<u>INTERROGATORY NO. 14:</u>

- This interrogatory asked Defendants to identify the number of DACA recipients who adjusted their status to lawful permanent resident, for each Plaintiff for each month during the period of June 2012 to June 2018, and identify among that number (a) the number of DACA recipients who adjusted under 8 U.S.C. 1255(i); and (b) the number of DACA recipients who adjusted under 8 U.S.C. 1255(a).

- Defendants provided an incomplete answer to Interrogatory No. 14 by producing a chart showing the number of DACA recipients who adjusted their status by date of adjustment and by Plaintiff, for the period of August 15, 2012 through June 22, 2018.  *See* Defendants' Objections and Responses, p. 20.  This evasive and incomplete answer amounts to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to this interrogatory on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See* Defendants' Objections and Responses, p. 19.  However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that this interrogatory is "not relevant." *See* Defendants' Objections and Responses, p. 19.  However, Defendants do not explain why the interrogatory is not irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  This interrogatory is relevant to Plaintiffs' claim that DACA confers "a path to citizenship on some DACA recipients" by granting DACA recipients eligibility for advance parole, which in turn "has resulted in some of those [DACA recipients] obtaining adjustment to LPR status, for which they would otherwise be ineligible." *See* ECF 104 ¶¶ 84-122.

- Defendants also objected on the basis that this interrogatory is burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 19.  Specifically, Defendants claim that "USCIS databases do not electronically capture, in a readily retrievable, systematic manner," whether an individual adjusted his or her status to lawful permanent resident under 8 U.S.C. §§ 1255(a), (i) in the ordinary course of business; therefore, USCIS would have to conduct "a manual, case-by-case review of electronic and/or paper files of every DACA recipient who adjusted status to lawful permanent residence during the specified period for each Plaintiff State." *See* Defendants Objections and Responses, p. 19; 7-6-18 Renaud Declaration ¶¶ 12-13.  Defendants estimate there are approximately 7,000 DACA recipients who have adjusted status to lawful permanent resident during the specified period for each Plaintiff, and it would take approximately 5 minutes to review each case, for a total of approximately 583 hours.  7-6-18 Renaud Declaration ¶ 13.  Defendants specify that "it is possible some of the records for these cases have been digitized and therefore the records could be requested and obtained electronically for review quickly." *Id.*

- Defendants' objection as to any purported burden does not justify their nonresponsiveness.  ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery); *see also Magnolia Point Minerals, LLC,* 2015 WL 545988, at *1 (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Sinibaldi*, 821 F. Supp. at 262 (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate document request); *Fagan*, 136 F.R.D. at 7 ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . . Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citations omitted).  This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses.  In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants.  Therefore, to the extent

December 19, 2018
Page 11 of 23

Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case.  **Second**, Defendant-Intervenors' interrogatory is narrowly tailored in scope; it only seeks information from named Plaintiffs, provides a limited timeframe, and addresses the core issue of advance parole and its purported conferral of a "path to citizenship" on DACA recipients.  **Third**, the interrogatory seeks information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case.  Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments.  *See Costantino*, 152 F. Supp. 3d at 328 (holding that it is unacceptable for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case) (collecting cases).

December 19, 2018
Page 12 of 23

**ATTACHMENT B**
**DEFICIENCIES IN DEFENDANTS' OBJECTIONS AND RESPONSES TO**
**DEFENDANT-INTERVENORS' REQUESTS FOR PRODUCTION**

<u>REQUEST FOR PRODUCTION NO. 5:</u>

- This request asked Defendants to produce documents relating to guidelines followed by DHS to evaluate, process, and adjudicate DACA applications, including, but not limited to: (1) internal agency documents, memoranda, and communications that set forth any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications; (2) training materials provided to agents or employees related to DACA evaluations and adjudications; and (3) changes following January 20, 2017 in any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications.

- Defendant-Intervenors cannot discern whether Defendants have provided a full and complete production responsive to this request.  In their production cover letters dated July 6, 2018 and July 13, 2018, Defendants represented that they were enclosing a three-volume production with bates numbers DEF-00000001-00008159.  Defendants also provided privilege logs for each volume.  However, Defendants did not label the documents as responsive to each request for production.  In their objections and responses, Defendants do broadly reference that "USCIS is prepared to provide [certain documents]."  *See* Defendants' Objections and Responses, p. 23.  However, they do not indicate whether any documents responsive to Request for Production No. 5 were indeed produced or withheld.  Therefore, Defendant-Intervenors are unable to confirm whether Defendants produced a complete production responsive to Request for Production No. 5. Defendant-Intervenors request that Defendants amend their response to indicate whether any documents were produced in response to this request, whether responsive documents were withheld and the basis for withholding them, and whether additional records will be produced.  *See Alcala v. Texas Webb Cty*., No. CV L-08-0128, 2009 WL 10694159, at *4 (S.D. Tex. Dec. 7, 2009) (general reference to "all documents produced" is an insufficient response); *see also Doe ex rel. Doe v. White*, No. 08-CV-1287, 2009 WL 3098724, at *2 n. 4 (C.D. Ill. Sept. 22, 2009) ("Plaintiffs' blanket reference to everything previously produced would not satisfy Rule 34"); *F.D.I.C. v. Appleton*, No. CV 11-476-JAK PLAX, 2012 WL 10245383, at *4 (C.D. Cal. Nov. 29, 2012) (holding it is not requestor's obligation to identify documents they believe are missing; rather, it is the producing party's duty to represent that all documents have been produced).  In the absence of an amendment to the response by Defendants, Defendant-Intervenors assume no responsive documents have been produced, particularly in light of Defendants' claim that conducting a search of responsive records is burdensome, as noted below.

- Defendants objected to this request on the basis that it is burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 23. Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges."

*Id.* However, Defendants do not identify or propose any search terms in connection with this request. *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action"). Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS." *See* Defendants' Objections and Responses, p. 23. Defendants also object to having to conduct a search for records "of DHS and other DHS component counsel . . . as such documents contain advice and other information that is privileged." *Id.* In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS. 7-6-18 Renaud Declaration ¶ 16. However, Defendants do not identify potential custodians specific to Request for Production No. 5. Defendants also represent that ICE "contacted several individuals currently employed by ICE and determined that they have no documents responsive to Request No. 5" and "[t]o the extent that responsive documents do exist, they would be among the emails of former ICE employees." *See* Defendants' Objections and Responses, pp. 23-24. A non-exhaustive inquiry of current ICE employees does not allow Defendant-Intervenors to confirm whether there are any potential custodians at ICE who are current government employees, and Defendants do not identify the scope of potential custodians from ICE who are former ICE employees. Defendants also object "to the extent" that the request seeks drafts or documents in their native form. *Id.*, p. 23.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness. *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues"). This request is proportional to the needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court. *Id.* However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians. Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review. Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants also objected to this request on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *See* Defendants' Objections and Responses, p. 22. However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant."  *See* Defendants' Objections and Responses, p. 23.  However, Defendants do not explain why this request is irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  The request is relevant to Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action.  *See, e.g.,* ECF 104 ¶¶ 295-300.  In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development.  *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . Based on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also objected to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree this is a proper interpretation.  *See* Defendants' Objections and Responses, p. 22.

REQUEST FOR PRODUCTION NO. 6:

- This request asked Defendants to produce documents relating to the process by which DHS evaluates, processes, and adjudicates DACA applications, including but not limited to: (1) under what circumstances a DACA application is rejected, denied, or approved; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of DACA applications; (3) the procedure(s) employed by agents and employees who work in the evaluation and adjudication of DACA applications; and (4) changes in the process for evaluating, processing, and adjudicating DACA applications following January 20, 2017.

- Defendant-Intervenors cannot discern whether Defendants have provided a full and complete production responsive to this request.  In their production cover letters dated July 6, 2018 and July 13, 2018, Defendants represented that they were enclosing a three-volume production with bates numbers DEF-00000001-00008159.  Defendants also provided privilege logs for each volume.  However, Defendants did not label the documents as responsive to each request for production.  In their objections and responses, Defendants also broadly reference that "USCIS is prepared to provide [certain documents]."  *See* Defendants' Objections and Responses, p. 25.  However, they do not indicate whether any documents responsive to Request for Production No. 6 were indeed produced or withheld.  Therefore, Defendant-Intervenors are unable to confirm whether Defendants produced a complete production responsive to Request for Production No. 6.  Defendant-Intervenors request that Defendants amend their response to indicate whether

December 19, 2018
Page 15 of 23

any documents were produced in response to this request, whether responsive documents were withheld and the basis for withholding them, and whether additional records will be produced. *See Alcala*, 2009 WL 10694159, at *4 (general reference to "all documents produced" is an insufficient response); *see also White*, 2009 WL 3098724, at *2 n. 4 ("Plaintiffs' blanket reference to everything previously produced would not satisfy Rule 34"); *Appleton*, 2012 WL 10245383, at *4 (holding it is not requestor's obligation to identify documents they believe are missing; rather, it is the producing party's duty to represent that all documents have been produced). In the absence of a response by Defendants, Defendant-Intervenors assume no responsive documents have been produced, particularly in light of Defendants' claim that conducting a search of responsive records is burdensome, as noted below.

- Defendants objected on the basis that this request is burdensome, overbroad, and not proportional to the needs of the case. *See* Defendants' Objections and Responses, p. 25. Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges." *Id.*, p. 26. However, Defendants do not identify or propose any search terms in connection with this request. *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action"). Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS." *See* Defendants' Objections and Responses, p. 26. Defendants also object to having to conduct a search for records "of DHS and DHS component counsel . . . as such documents contain advice and other information that is privileged." *Id.* In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS. 7-6-18 Renaud Declaration ¶ 16. However, Defendants do not identify potential custodians specific to Request for Production No. 6. Defendants also represent that "ICE contacted several individuals currently employed by ICE and determined that they have no documents responsive to Request No. 6" and "[t]o the extent that responsive documents do exist, they would be among the emails of former ICE employees." *See* Defendants' Objections and Responses, p. 26. A non-exhaustive inquiry of current ICE employees does not allow Defendant-Intervenors to confirm whether there are any potential custodians at ICE who are current government employees, and Defendants do not identify the scope of potential custodians from ICE who are former ICE employees. Defendants also object "to the extent" that the request seeks drafts or documents in their native form. *Id.*, p. 25.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness. *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the

December 19, 2018
Page 16 of 23

importance of the discovery in resolving the issues"). This request is proportional to the needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court. *Id.* However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians. Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review. Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants objected on the basis that the request is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *See* Defendants' Objections and Responses, p. 25. However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant." *See* Defendants' Objections and Responses, p. 25. However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient. *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted). The request is relevant to Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action. *See, e.g.,* ECF 104 ¶¶ 295-300. In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development. *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . Based on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation. *See* Defendants' Objections and Responses, p. 24. Defendants specifically object that the use of the word "and" in the phrase "who work in the evaluation and adjudication of DACA applications" is ambiguous and confusing because Defendants do not know whether the phrase means an employee or agent must do both actions (evaluation *and* adjudication) or be involved in only one action. *Id.*, pp. 24-25. However, Defendant-Intervenors' request provides a specific definition and instructs that the word "and" must be "construed either conjunctively or disjunctively as required by the context to bring

within the scope of the request any document that might be deemed outside its scope by another construction." *See Def-Int. Third Set of Discovery Requests to Defendants at 3.* Thus, there is no ambiguity and the phrase must be interpreted to mean an agent or employee must be involved in at least one of the two actions, evaluation or adjudication.

- Finally, Defendants object "to the extent that it is unclear what documents Defendant-Intervenor seeks that are different from documents sought in RFP 5, and to the extent that RFPs overlap, or that RFP 6 seeks documents that are duplicative of those sought in RFP 5." *See* Defendants' Objections and Responses, p. 24. Defendants do not specify to what extent they believe each request is duplicative of each other request, and Defendant-Intervenors cannot discern whether responsive records to either request have been produced; therefore, this objection is improper. *See Ruiz v. U.S. Protect*, No. 6:07-CV-56, 2008 WL 11395490, at *4 (S.D. Tex. Aug. 29, 2008) (holding that defendant may not argue two requests are duplicative when defendant has failed to respond to either request).

REQUEST FOR PRODUCTION NO. 7(3):

- This request asked Defendants to produce documents showing the number of DACA applications accepted but denied, during the period of June 2012 to June 2018, after the adjudicator determined the applicant met the five criteria in the June 15, 2012 DACA memorandum but was otherwise not a qualifying applicant, including because the applicant posed a threat to national security or public safety, by each Plaintiff, for each month.[1]

- Defendants did not respond to this request. Instead, Defendants generally referred Defendant-Intervenors to three links to USCIS's website "[i]n lieu of providing responsive documents." *See* Defendants' Objections and Responses, p. 28.

- Defendants objected to this request on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *Id.*, p. 27. However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant." *See* Defendants' Objections and Responses, p. 27. However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient. *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted). The request is relevant to Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests,

---

[1] Defendant-Intervenors represent that Defendants will have sufficiently responded to Request for Production No. 7(1)-(2) with their responses to Interrogatories Nos. 3 & 4 when and if Defendants supplement their answers to Interrogatories 3 & 4 with information related to Mississippi and Maine, as requested in this letter.

December 19, 2018
Page 18 of 23

an issue that is relevant to Plaintiffs' statutory and constitutional causes of action.  *See,
e.g.,* ECF 104 ¶¶ 295-300.  In addition, the Court noted in its opinion denying Plaintiffs'
motion for preliminary injunction that this issue requires further factual development.
*See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the
evidence of discretion by the individuals processing DACA applications to be compelling
either way . . . Based on the evidence in the preliminary injunction record, the Court
holds the Plaintiff States have not made a 'clear showing' that those processing DACA
applications are not free to exercise discretion.").

- Defendants objected on the basis that this request is burdensome, overbroad, and not
  proportional to the needs of the case.  Specifically, Defendants claim they are "unable to
  identify search terms sufficiently tailored to capture all responsive documents . . . that
  would not be overly broad and result in hundreds of thousands of materials to be
  reviewed for responsiveness and privileges."  *See* Defendants' Objections and Responses,
  p. 28.  However, Defendants do not identify or propose any search terms in connection
  with this request.  *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the
  search terms "DACA" and "deferred action").  Defendants also claim it would be
  burdensome to search all electronic records of "all potential custodians" and to search
  and review responsive documents "from potential custodians who are no longer
  employed by USCIS."  *See* Defendants' Objections and Responses, p. 28.  Defendants
  also object to having to conduct a search for records "of DHS and DHS component
  counsel . . . as such documents contain advice and other information that is privileged."
  *Id*.  In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential
  non-attorney custodians throughout USCIS, 59 potential custodians who are current
  agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians
  who are no longer employees of USCIS.  7-6-18 Renaud Declaration ¶ 16.  However,
  Defendants do not identify potential custodians specific to Request for Production No.
  7(3).  Defendants also object "to the extent" that the request seeks drafts or documents in
  their native form.  *See* Defendants' Objections and Responses, p. 27.

- Defendants' objection as to any purported burden, standing alone, does not justify their
  nonresponsiveness.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely
  benefit of proposed discovery, and burden to producing party is one of several other
  considerations in determining whether discovery is proportional to the needs of the case,
  including "the importance of the issues at stake in the action, the amount in controversy,
  the parties' relative access to relevant information, the parties' resources, [and] the
  importance of the discovery in resolving the issues").  This request is proportional to the
  needs of the case, particularly considering the nationwide implications of the issues at
  stake, Defendant-Intervenors' inability to access this information through other sources
  or parties, and the importance of discovery responsive to this request in resolving the
  issues before the Court.  *Id*.  However, in an effort to accommodate Defendants' concerns
  about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope
  of the review through the use of targeted search terms and custodians.  Defendant-
  Intervenors request that Defendants provide a list of suggested search terms in connection
  with this request so the parties may engage in a good faith attempt to narrow the scope of
  Defendants' review.  Defendant-Intervenors also request that Defendants identify

December 19, 2018
Page 19 of 23

potential custodians specific to this request.

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation. *See* Defendants' Objections and Responses, p. 27. Defendants specifically object that the phrase "the five criteria in the June 15, 2012 DACA memorandum" and the reference to the "June 15, 2012 DACA memorandum" lack specificity. *Id*. Defendants cannot credibly argue references to the memorandum at issue in this case and the guidelines contained therein are ambiguous or vague. Indeed, Defendants interpret the reference to the June 15, 2012 DACA memorandum to mean "the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012," which is the correct interpretation. *Id*. Defendants also claim the request is vague as to the time period for which it requests documents. *Id*. However, the request specifies a period from June 2012 to June 2018.

- Finally, Defendants object "to the extent" this request seeks information duplicative of any information responsive to Defendant-Intervenors' interrogatories. *Id*. Defendants do not specify which interrogatory they believe is duplicative of this request, and this is not a proper objection. *See Ruiz*, 2008 WL 11395490, at *4 (holding that defendant may not argue a request for production and interrogatory are duplicative when defendant has failed to respond to either request).

REQUEST FOR PRODUCTION NO. 8:

- This request asked Defendants to produce documents relating to process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA, including but not limited to: (1) under what circumstances an application or request is rejected, denied, or accepted; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of deferred action applications or requests; (3) the procedure(s) employed by agents and employees who work in the evaluation and adjudication of deferred action applications or requests; and (4) any changes in the process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA since January 20, 2017.

- Defendant-Intervenors cannot discern whether Defendants have provided a full and complete production responsive to this request. In their production cover letters dated July 6, 2018 and July 13, 2018, Defendants represented that they were enclosing a three-volume production with bates numbers DEF-00000001-00008159. Defendants also provided privilege logs for each volume. However, Defendants did not label the documents as responsive to each request for production. In their objections and responses, Defendants also broadly reference "USCIS is prepared to provide [certain documents]" and "[i]n addition to the responsive documents being produced, USCIS respectfully refers Defendant-Intervenors to the following publicly available information

. . . ." *See* Defendants' Objections and Responses, p. 30.  However, Defendants do not indicate whether any documents responsive to Request for Production No. 8 were indeed produced or withheld in their bates-stamped production.  Therefore, Defendant-Intervenors are unable to confirm whether Defendants produced a complete production responsive to Request for Production No. 6.  Defendant-Intervenors request that Defendants amend their response to indicate whether any bates-stamped documents were produced in response to this request, whether responsive documents were withheld and the basis for withholding them, and whether additional records will be produced.  *See Alcala*, 2009 WL 10694159, at *4 (general reference to "all documents produced" is an insufficient response); *see also White*, 2009 WL 3098724, at *2 n. 4 ("Plaintiffs' blanket reference to everything previously produced would not satisfy Rule 34"); *Appleton*, 2012 WL 10245383, at *4 (holding it is not requestor's obligation to identify documents they believe are missing; rather, it is the producing party's duty to represent that all documents have been produced).  In the absence of a response by Defendants, Defendant-Intervenors assume no responsive documents have been produced, particularly in light of Defendants' claim that conducting a search of responsive records is burdensome, as noted below.

- Defendants objected on the basis that this request is burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 29.  Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges, or risk being over-inclusive in scope."  *Id.*, p. 30.  However, Defendants do not identify or propose any search terms in connection with this request.  *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action").  Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS."  *See* Defendants' Objections and Responses, p. 30.  Defendants also object to having to conduct a search for records "of DHS or DHS component counsel . . . as such documents contain advice and other information that is privileged."  *Id*.  In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS.  7-6-18 Renaud Declaration ¶ 16.  However, Defendants do not identify potential custodians specific to Request for Production No. 8.  Defendants also object "to the extent" that the request seeks drafts or documents in their native form.  *See* Defendants' Objections and Responses, p. 29.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues").  This request is proportional to the

December 19, 2018
Page 21 of 23

needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court.  *Id.*  However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians.  Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review.  Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants objected on the basis that the request is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See* Defendants' Objections and Responses, p. 29.  However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant."  *See* Defendants' Objections and Responses, p. 29.  However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  The request is relevant to establishing similarities between DACA and other grants of deferred action pursuant to the Secretary's authority under the INA, which is relevant to Plaintiffs' statutory claims under the APA.

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded based on "Defendants' common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation.  *See* Defendants' Objections and Responses, p. 29.  Defendants also claim the request is vague as to the time period for which it requests documents.  *Id*.  Defendant-Intervenors are amenable to engaging in good faith negotiations as to the timeframe for this request.

REQUEST FOR PRODUCTION NO. 9:

- This request asked Defendants to produce documents relating to the number of DACA applications received, rejected, denied, and approved at each of the five USCIS Service Centers, including but not limited to: (1) the number of initial DACA applications received, rejected, denied, and approved from each Plaintiff, every month, during the period of June 2012 to June 2018; and (2) the number of renewal DACA applications received, rejected, denied, and approved from each Plaintiff, every month, during the period of June 2012 to June 2018.

December 19, 2018
Page 22 of 23

- Defendants did not respond to this request.  Instead, Defendants generally referred Defendant-Intervenors to three links to USCIS's website "[i]n lieu of providing responsive documents."  *See* Defendants' Objections and Responses, p. 32.

- Defendants objected on the basis that the request is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *Id*., p.31.  However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant."  *See* Defendants' Objections and Responses, p. 31.  However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  The request is relevant to Plaintiffs' claims that DACA is a large-scale policy change that incurs "considerable administrative cost," ECF 104 ¶¶ 277, 283, and that few DACA applications have been denied, *see id.* ¶¶ 293-95.

- Defendants objected on the basis that this request is burdensome, overboard, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 31.  Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges."  *Id.*  However, Defendants do not identify or propose any search terms in connection with this request.  *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action").  Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS."  *See* Defendants' Objections and Responses, p. 32.  Defendants also object to having to conduct a search for records "of DHS and DHS component counsel . . . as such documents contain advice and other information that is privileged."  *Id.*  In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS.  7-6-18 Renaud Declaration ¶ 16.  However, Defendants do not identify potential custodians specific to Request for Production No. 9.  Defendants also object "to the extent" that the request seeks drafts or documents in their native form.  *See* Defendants' Objections and Responses, p. 31.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy,

December 19, 2018
Page 23 of 23

the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues"). This request is proportional to the needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court. *Id*. However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians. Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review. Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on Defendant USCIS' common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation. *See* Defendants' Objections and Responses, p. 31. Defendants also claim the request is vague as to the time period for which it requests documents. *Id*. However, the request pertains to adjudication of requests under DACA, which has been in place since June 2012, and the request specifies a period from June 2012 to June 2018. Therefore, the request is not ambiguous as to timeframe.

- Finally, Defendants object "to the extent" this request seeks information duplicative of any information responsive to Defendant-Intervenors' interrogatories. *Id*. Defendants do not specify which interrogatory they believe is duplicative of this request, and this is not a proper objection. *See Ruiz*, 2008 WL 11395490, at *4 (holding that defendant may not argue a request for production and interrogatory are duplicative when defendant has failed to respond to either request).

# EXHIBIT 8

**Alejandra Avila**

| | |
|---|---|
| **From:** | Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov> |
| **Sent:** | Wednesday, December 26, 2018 11:24 AM |
| **To:** | Alejandra Avila |
| **Cc:** | Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs |
| **Subject:** | RE: Texas et al. v. United States et al., No. 1:18-cv-00068 |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Federal Defendants are in receipt of this letter. Please note that any response will unfortunately be delayed due to the current lapse in appropriations, as will Federal Defendants production of an administrative record.

Sincerely,

Jeff Robins

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Wednesday, December 19, 2018 4:48 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Jeffrey,

Attached please find Perez Defendant-Intervenors' deficiency letter related to our third set of discovery requests.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382

# EXHIBIT 9

**Alejandra Avila**

| | |
|---|---|
| **From:** | Walker, James (CIV) <James.Walker3@usdoj.gov> |
| **Sent:** | Thursday, February 7, 2019 9:49 PM |
| **To:** | Alejandra Avila; Robins, Jeffrey (CIV) |
| **Cc:** | Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs |
| **Subject:** | RE: Texas et al. v. United States et al., No. 1:18-cv-00068 |

Hi Alejandra,

We are working on providing the material as quickly as possible. The order dismissing the governor of Maine today of course changes the data production we intended to provide, so we have to go back and make adjustments for that. We should be able to get back to you soon.

Best,
James

**James Walker**
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868 | Ben Franklin Station | Washington, DC 20044
Direct: (202) 532-4468 | Fax: (202) 305-7000 | Email: james.walker3@usdoj.gov

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Thursday, February 07, 2019 6:35 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Alejandra Avila <Aavila@MALDEF.org>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Mr. Robins,

Please confirm when Federal Defendants intend to provide the supplemental production mentioned in your email below.  As you know, it has been more than 7 weeks since Perez Defendant-Intervenors emailed their deficiency letter to you.

In addition, please advise whether Federal Defendants will address the remaining deficiencies noted in our letter.  If Federal Defendants do not provide amended answers and a supplemental production pursuant to the deficiency letter, Perez Defendant-Intervenors will seek court intervention on this matter.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense

1

and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382



**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Monday, February 4, 2019 3:19 PM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Counsel,

I write to advise that Federal Defendants will be supplementing the prior responses with data for the newly added states and a chart reflecting the documents that correspond with each request for production.

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Wednesday, December 19, 2018 4:48 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Jeffrey,

Attached please find Perez Defendant-Intervenors' deficiency letter related to our third set of discovery requests.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204

# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>KIRSTJEN M. NIELSEN, *et al.*,<br><br>        Defendants,<br><br>*and*<br><br>KARLA PEREZ, *et al.*,<br><br>        Defendant-Intervenors. | Case No. 18-cv-00068 |

**FEDERAL DEFENDANTS' SUPPLEMENTAL RESPONSES TO**
**DEFENDANT-INTERVENORS' THIRD SET OF DISCOVERY REQUESTS**

TO: Defendant-Intervenors, by and through their attorneys of record, Nina Perales, Celina Moreno, Jack Salmon, Alejandra Avila, Mexican American Legal Defense and Educational Fund, 110 Broadway, Suite 300, San Antonio, Texas 78205; Carlos Moctezuma García, García & García, Attorneys at Law P.L.L.C., P.O. Box 4545 McAllen, Texas 78502.

        Federal Defendants serve these supplemental and responses to Defendant-Intervenors' third set of interrogatories and requests for production of documents pursuant to the Federal Rules of Civil Procedure. Federal Defendants maintain and incorporate by reference Federal Defendants' previous objections to Defendant-Intervenors' Third Set of Discovery Requests except those based on the scope of expedited discovery ordered by the Court for purposes of litigating Plaintiffs' motion for preliminary injunction.

<u>**SUPPLEMENTAL RESPONSES TO DEFENDANT-INTERVENORS'**</u>
<u>**THIRD SET OF INTERROGATORIES**</u>

**INTERROGATORY NO. 3**

Please identify the number of initial DACA applications received by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, of that number:

a. the number of initial DACA applications approved by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of initial DACA applications denied by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of initial DACA applications rejected by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

Subject to previously raised objections, see revised attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, August 15, 2012 – June 22, 2018," which now includes data for the state of Mississippi. USCIS began accepting initial DACA requests on August 15, 2012, therefore USCIS is not able to provide data on DACA initial requests from June 2012 to August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 4**

Please identify the number of renewal DACA applications received by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, of that number:

a. the number of renewal DACA applications approved by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of renewal DACA applications denied by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of renewal DACA applications rejected by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**

Subject to previously raised objections, see revised attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, August 15, 2012 – June 22, 2018," which now includes data for the state of Mississippi. USCIS began accepting initial DACA requests on August 15, 2012, therefore USCIS is not able to provide data on DACA initial requests from June 2012 to August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 9**

Please identify the number of DACA initial applications USCIS has accepted and denied from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of DACA applications denied at least in part because the applicant was a suspected gang member, from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of DACA applications denied at least in part because the applicant posed a threat to national security or public safety, from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of DACA applications denied after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9**

Subject to previously raised objections, Federal Defendants refer to Federal Defendants' original response, and the attached revised chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Denials by Month and Selected State, August 15, 2012 - June 22, 2018," which now includes the state of Mississippi. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 10**

Please identify the number of DACA renewal applications USCIS has accepted and denied from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of DACA applications denied at least in part because the applicant was a suspected gang member, from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of DACA applications denied at least in part because the applicant posed a threat to national security or public safety, from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of DACA applications denied after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10**

Subject to previously raised objections, see revised attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, August 15, 2012 – June 22, 2018," which now includes data for the state of Mississippi. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 11**

Please identify the number of initial DACA applications USCIS has accepted and subsequently issued Requests for Evidence ("RFEs") from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of RFEs related to whether the applicant was under the age of 31 as of June 15, 2012;

b. the number of RFEs related to whether the applicant came to the United States before reaching his or her 16th birthday;

c. the number of RFEs related to whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application;

d. the number of RFEs related to whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action;

e. the number of RFEs related to whether the applicant had no lawful status on June 15,

2012;

f. the number of RFEs related to whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

g. the number of RFEs related to whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11

Subject to previously raised objections, see revised attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, August 15, 2012 – June 22, 2018," which now includes data for the state of Mississippi. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

## INTERROGATORY NO. 12

Please identify the number of renewal DACA applications USCIS has accepted and subsequently issued Requests for Evidence ("RFEs") from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of RFEs related to whether the applicant was under the age of 31 as of June 15, 2012;

b. the number of RFEs related to whether the applicant came to the United States before reaching his or her 16th birthday;
c. the number of RFEs related to whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application;

d. the number of RFEs related to whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action;

e. the number of RFEs related to whether the applicant had no lawful status on June 15, 2012;

f. the number of RFEs related to whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

g. the number of RFEs related to whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12**

Subject to previously raised objections, see revised attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, August 15, 2012 – June 22, 2018," which now includes data for the state of Mississippi. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 13**

Please identify the number of approved, initial DACA applications submitted by individuals who indicated on their I-821D, in response to Part 3. Question 4., that their immigration status on June 15, 2012 was "Status Expired" or "Parole Expired," and who answered in the affirmative in response to Part 3. Question 5.a. ("Were you EVER issued an Arrival-Departure Record"), for each Plaintiff State for each month during the period of June 2012 to June 2018.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13**

Subject to previously raised objections, Federal Defendants refer to the attached revised chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Requests with "Yes" marked in Part 3 Question 5a "Were you EVER issued an Arrival-Departure Record" by Month and Selected State, November 1, 2015 - June 22, 2018," which provides information only from ELIS, and now includes data for the state of Mississippi. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 14**

Please identify the number of DACA recipients who adjusted their status to lawful permanent resident, for each Plaintiff State for each month during the period of June 2012 to June 2018, and identify among that number:

a. the number of DACA recipients who adjusted under 8 U.S.C. 1255(i)

b. the number of DACA recipients who adjusted under 8 U.S.C. 1255(a)

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14**

Subject to previously raised objections, Federal Defendants refer to the attached revised chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D,

Consideration of Deferred Action for Childhood Arrivals, I-485, Application to Register Permanent Residence of Adjust Status, DACA Recipients who Adjusted Status by Date of Adjustment and Selected State, August 15, 2012 - June 22, 2018," which now includes data for the state of Mississippi. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

<u>**SUPPLEMENTAL RESPONSES TO DEFENDANT-INTERVENORS'**</u>
<u>**THIRD SET OF REQUESTS FOR PRODUCTION**</u>

**REQUEST FOR PRODUCTION NO. 5:**

Produce all documents relating to guidelines followed by DHS, and any of its subsidiary agencies, departments, agents, and employees, to evaluate, process, and adjudicate Deferred Action for Childhood Arrivals ("DACA") applications, including, but not limited to: (1) internal agency documents, memoranda, and communications that set forth any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications; (2) training materials provided to agents or employees related to DACA evaluations and adjudications; and (3) changes following January 20, 2017 in any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Subject to previously raised objections, Federal Defendants previously produced documents Bates numbered DEF00000001 – DEF00008159. Federal Defendants now produce a chart to identify which documents are responsive to this request for production.

**REQUEST FOR PRODUCTION NO. 6:**

Produce all documents relating to the process by which DHS, and any of its subsidiary agencies, departments, agents, and employees, evaluates, processes, and adjudicates DACA applications, including but not limited to: (1) under what circumstances a DACA application is rejected, denied, or approved; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of DACA applications; (3) the procedure(s) employed by agents and employees who work in the evaluation and adjudication of DACA applications; and (4) changes in the process for evaluating, processing, and adjudicating DACA applications following January 20, 2017.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Subject to previously raised objections, Federal Defendants previously produced documents Bates numbered DEF00000001 – DEF00008159. Federal Defendants now produce a chart to identify which documents are responsive to this request for production.

**REQUEST FOR PRODUCTION NO. 8:**

Produce all documents relating to process by which DHS, and any of its subsidiary agencies, departments, agents, and employees, evaluates and adjudicates applications or requests for deferred action other than DACA, including but not limited to: (1) under what circumstances an application or request is rejected, denied, or accepted; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of deferred action applications or requests; (3) and the procedure(s) employed by agents and employees who work in the

evaluation and adjudication of deferred action applications or requests; and (4) any changes in the process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA since January 20, 2017.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Subject to previously raised objections, Federal Defendants previously produced documents Bates numbered DEF00000001 – DEF00008159. Federal Defendants now produce a chart to identify which documents are responsive to this request for production.

Dated: February 20, 2019                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General
                                            Civil Division
                                            BRETT A. SHUMATE
                                            Deputy Assistant Attorney General
                                            WILLIAM C. PEACHEY
                                            Director, Office of Immigration Litigation
                                            District Court Section

                                            /s/ Jeffrey S. Robins
                                            JEFFREY S. ROBINS
                                            Attorney-in-Charge
                                            Deputy Director
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            District Court Section
                                            P.O. Box 868, Washington, DC 20044
                                            Telephone: (202) 616-1246
                                            Facsimile: (202) 305-7000
Attorneys for Federal Defendants            jeffrey.robins@usdoj.gov

# EXHIBIT 11

**Isabel Pina**

| | |
|---|---|
| **From:** | Alejandra Avila |
| **Sent:** | Wednesday, April 10, 2019 10:39 AM |
| **To:** | Robins, Jeffrey (CIV) |
| **Cc:** | Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Douglas H. Hallward-Driemeier; Raishay Lin; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Walker, James (CIV) |
| **Subject:** | RE: Texas et al. v. United States et al., No. 1:18-cv-00068 |

Jeff,

Thank you for this supplemental production.  We now have had an opportunity to review your responses, and Defendant-Intervenors continue to believe the production is incomplete and non-responsive.

Defendants continue to fail to answer our interrogatories 9-12 and have only provided partial responses to interrogatories 13 and 14.  Defendants have also not fully responded to our requests for production numbers 5, 6, 7(3), 8, and 9, and have failed to identify any search terms and custodians as suggested by Defendant-Intervenors in our December 19, 2018 deficiency letter to you or propose any means to narrow the scope of the review.  Defendant-Intervenors still cannot discern the scope of Defendants' previous production, whether Defendants have provided all responsive documents to our requests, and whether Defendants need to conduct additional searches.  In your supplemental responses, you also do not address requests for production 7(3) and 9 at all and the deficiencies outlined in our letter in connection with these requests.

In an effort to avoid court intervention, we would like to confer with you over the phone to see if there is a way to resolve this discovery dispute.

We are available tomorrow any time from 11 am-2 pm Central or Monday any time from 10 am-4 pm Central.  Please let us know what time works for you.

Thank you.

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382



**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Wednesday, February 20, 2019 9:16 AM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam

Biggs; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Counsel,

Attached are Federal Defendants' supplemental responses to Perez Defendant-Intervenors' third set of discovery requests.

Please let me know if you have any questions.

Thank you,

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Thursday, February 07, 2019 6:35 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Alejandra Avila <Aavila@MALDEF.org>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Mr. Robins,

Please confirm when Federal Defendants intend to provide the supplemental production mentioned in your email below.  As you know, it has been more than 7 weeks since Perez Defendant-Intervenors emailed their deficiency letter to you.

In addition, please advise whether Federal Defendants will address the remaining deficiencies noted in our letter.  If Federal Defendants do not provide amended answers and a supplemental production pursuant to the deficiency letter, Perez Defendant-Intervenors will seek court intervention on this matter.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382



**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Monday, February 4, 2019 3:19 PM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Counsel,

I write to advise that Federal Defendants will be supplementing the prior responses with data for the newly added states and a chart reflecting the documents that correspond with each request for production.

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Wednesday, December 19, 2018 4:48 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Jeffrey,

Attached please find Perez Defendant-Intervenors' deficiency letter related to our third set of discovery requests.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382



Exhibit 12

## Isabel Pina

| | |
|---|---|
| **From:** | Nina Perales |
| **Sent:** | Wednesday, May 8, 2019 11:33 AM |
| **To:** | Robins, Jeffrey (CIV); Alejandra Avila |
| **Cc:** | Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Douglas H. Hallward-Driemeier; Raishay Lin; Emerson Siegle; Walker, James (CIV) |
| **Subject:** | RE: Texas et al. v. United States et al., No. 1:18-cv-00068 |

Jeffrey,

Thank you for speaking with us today on the phone and explaining your position with respect to our interrogatories 9 through 12, and request for production 7(3).

We have offered to conduct our own review of a sample of files of DACA applications that were denied in order to obtain the information we seek with these discovery requests. Our understanding from today's conversation is that Defendants will not produce a sample and believe that producing a sample would prove more burdensome than is proportional to the needs of the case. This is because you estimate that it would take one hour to review each denied application and perform the necessary redactions for statutory and regulatory reasons, as well as redactions for privilege. In addition, you maintain that it will take time to get the files into a format for review.

I expressed our position that Defendant Intervenors require this information in order to address Plaintiffs' arguments that DACA adjudicators do not exercise discretion when they review DACA applications and make the decision whether to grant deferred action. You responded that Defendants fundamentally disagree that the information we seek, including information about RFEs, evaluation of gang membership and evaluation of whether an applicant is an threat to public safety, is relevant to the question of discretion.

Please confirm whether this is an accurate summary of our conversation, and of your position. Thank you,

Nina Perales
Vice President of Litigation
Mexican American Legal Defense
   and Educational Fund, Inc. (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205
Ph (210) 224-5476 ext. 206
FAX (210 224-5382



CONFIDENTIALITY NOTICE: The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, covers this electronic message. This message and any attachment thereto contains CONFIDENTIAL INFORMATION intended for the exclusive use of the named recipient(s) and may further be PRIVILEGED and CONFIDENTIAL attorney client communication, attorney work product or proprietary information. If you are not an intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution, other than to return this message to the addressee(s), notification of its unintended disclosure, and the deletion of all copies is strictly prohibited and may be illegal. If you receive this communication in error, please notify the sender or the person who transmitted the communication immediately by telephone at 210-224-5476 and/or by reply to this communication and delete this message. Persons responsible for delivering this communication to the intended recipient are admonished that this communication not be copied or disseminated except as directed by the intended recipient.

**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Friday, May 03, 2019 10:11 PM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Douglas H. Hallward-Driemeier; Raishay Lin; Emerson Siegle; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Alejandra and all,

After several discussions with agency counsel, operations, statistics, and information technology folks, I am pleased to say that Defendants will be able to further supplement their discovery responses following our call from last week. I am available for a further meet and confer on Monday before 2pm eastern or on Wednesday through Friday depending on availability.  I will be travelling for a hearing on Tuesday.

As for the record, we are in the final stages of review for production, but are coordinating review of certain White House communications and confirming privilege assertions by several DHS components. We are on track for production on Wednesday 5/8, and will advise if there's a need to deviate from that.

The two additional data runs that Defendants should be able to complete would be responsive to request for production 9 (a breakdown similar to the response to interrogatories 3 and 4, but organized by service center) and interrogatory 14 (with the exclusion of 245i adjustments by those who were exempt from the $1,000 fee – i.e., under the age of 17) , and we should be prepared to send these to you by Thursday 5/9. I am also awaiting final word whether there is a way to find some data responsive to interrogatory 13 without manual file review, and if there is, that can be included in a supplement by Thursday 5/9.

With regard to any possible manual file review of a sample of files to provide responses to the information sought in interrogatories 9 through 12, and request for production 7(3), in short, Defendants maintain that this will prove more burdensome than is proportional to the needs of the case.

Finally, with regard to the manner in which the search was conducted to respond to requests for production --- USCIS applied custodian questionnaires that were sent to a comprehensive list of anyone who was then employed by USCIS who might have had potentially responsive documents pertaining specific RFPs. These individuals were then sent emails, asking them to comply with the discovery order. These individuals were also asked to forward the discovery order to anyone in their department/service center who may have potentially responsive documents. They were also asked to identify other offices and former employees who may have had responsive documents. USCIS collected questionnaires from over 150 USCIS employees. The questionnaires themselves required the custodians to search their own hard drives, email archives, personal folders and paper materials, etc. for DACA documents related to the discovery order. Individuals were asked to describe the process they used for finding potentially responsive documents and to estimate the time spent performing their search for said documents, with responsive documents moved into individual network drives for pulls by the USCIS office of information technology to preserve meta data.

Please let me know if you have any questions and I look forward to conferring further.

Regards,

Jeff


Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

**From:** Robins, Jeffrey (CIV)
**Sent:** Thursday, May 02, 2019 4:08 PM
**To:** Alejandra Avila <Aavila@MALDEF.org>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Emerson Siegle <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Thank you for the explanation and apologies for the delay in our response. I will respond tomorrow addressing your additional questions, which have required some back in forth internally to make sure I give you a complete response.

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Tuesday, April 30, 2019 5:43 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Emerson Siegle <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Alejandra Avila <Aavila@MALDEF.org>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Hi Jeffrey,

I'm writing to follow up on our meet and confer from last Wednesday.

You asked for further explanation on the relevance of Interrogatory 14, which asks Federal Defendants to identify the number of DACA recipients who adjusted their status to lawful permanent resident under 8 U.S.C. § 1255(i) and 8 U.S.C. § 1255(a).

This information is relevant to Plaintiffs' claim that DACA confers a path to citizenship to DACA recipients by allowing them to obtain advance parole, because it shows the number of DACA recipients who qualified to adjust their status to lawful permanent residence irrespective of whether they obtained advance parole through DACA. The requirements for adjustment of status under 8 U.S.C. §§ 1255(a) include, among other things, lawful admission or parole, maintenance of lawful status, and an approved visa petition under the family or employment based categories and a current visa number. By contrast, under § 1255(i), a person may adjust his or her status without lawful admission or parole and without maintenance of lawful status. Although § 1255(i) has been repealed, some DACA holders are "grandfathered" under this provision and may use this mechanism to adjust their status without advance parole or lawful admission.

You had also mentioned you would be able to provide a response to our questions about your production by Friday of last week, but we have not heard from your office yet. Please advise when you will provide that information to us.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382



**From:** Alejandra Avila
**Sent:** Thursday, April 18, 2019 10:32 AM
**To:** Robins, Jeffrey (CIV)
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Douglas H. Hallward-Driemeier; Raishay Lin;
Emerson Siegle; James Walker (CIV)
**Subject:** Re: Texas et al. v. United States et al., No. 1:18-cv-00068

That works for us.

We can use the MALDEF conference call number.

Dial-in: ████████████
Participant's Code: ██████████


On Apr 18, 2019, at 9:52 AM, Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov> wrote:

Thank you.  How is 11am eastern?

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Thursday, April 18, 2019 12:16 AM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy
Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier
<Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Siegle, Emerson
(Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Subject:** Re: Texas et al. v. United States et al., No. 1:18-cv-00068

Hi Jeff,

We are generally available on Wednesday morning of next week.

Let us know what time works for you.

On Apr 17, 2019, at 4:28 PM, Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov> wrote:

Alejandra,

I was unfortunately returning from travel last week when I received this email. I also have not been able to fully confer with agency counsel, many of whom are out of the office this week. Can we find a time for further discussion on Tuesday or Wednesday of next week?

Thank you,

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Wednesday, April 10, 2019 11:39 AM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Jeff,

Thank you for this supplemental production.  We now have had an opportunity to review your responses, and Defendant-Intervenors continue to believe the production is incomplete and non-responsive.

Defendants continue to fail to answer our interrogatories 9-12 and have only provided partial responses to interrogatories 13 and 14.  Defendants have also not fully responded to our requests for production numbers 5, 6, 7(3), 8, and 9, and have failed to identify any search terms and custodians as suggested by Defendant-Intervenors in our December 19, 2018 deficiency letter to you or propose any means to narrow the scope of the review.  Defendant-Intervenors still cannot discern the scope of Defendants' previous production, whether Defendants have provided all responsive documents to our requests, and whether Defendants need to conduct additional searches.  In your supplemental responses, you also do not address requests for production 7(3) and 9 at all and the deficiencies outlined in our letter in connection with these requests.

In an effort to avoid court intervention, we would like to confer with you over the phone to see if there is a way to resolve this discovery dispute.

We are available tomorrow any time from 11 am-2 pm Central or Monday any time from 10 am-4 pm Central.  Please let us know what time works for you.

Thank you.

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382
<image001.jpg>

---

**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Wednesday, February 20, 2019 9:16 AM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Counsel,

Attached are Federal Defendants' supplemental responses to Perez Defendant-Intervenors' third set of discovery requests.

Please let me know if you have any questions.

Thank you,

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Thursday, February 07, 2019 6:35 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Alejandra Avila <Aavila@MALDEF.org>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Mr. Robins,

Please confirm when Federal Defendants intend to provide the supplemental production mentioned in your email below.  As you know, it has been more than 7 weeks since Perez Defendant-Intervenors emailed their deficiency letter to you.

In addition, please advise whether Federal Defendants will address the remaining deficiencies noted in our letter.  If Federal Defendants do not provide amended answers and a supplemental production pursuant to the deficiency letter, Perez Defendant-Intervenors will seek court intervention on this matter.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382
<image001.jpg>

---

**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Monday, February 4, 2019 3:19 PM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Counsel,

I write to advise that Federal Defendants will be supplementing the prior responses with data for the newly added states and a chart reflecting the documents that correspond with each request for production.

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Wednesday, December 19, 2018 4:48 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson

([Emerson.Siegle@ropesgray.com](mailto:Emerson.Siegle@ropesgray.com)) <[Emerson.Siegle@ropesgray.com](mailto:Emerson.Siegle@ropesgray.com)>; Adam Biggs
<[Adam.Biggs@oag.texas.gov](mailto:Adam.Biggs@oag.texas.gov)>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Jeffrey,

Attached please find Perez Defendant-Intervenors' deficiency letter related to our third set of discovery requests.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382

# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY | § | |
| | § | |
| Defendant-Intervenor. | § | |

## <u>DECLARATION OF NINA PERALES</u>

I, Nina Perales, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Vice President of Litigation of the Mexican American Legal Defense and Educational Fund (MALDEF) and lead counsel for Defendant-Intervenors, Karla Perez, *et al.* ("Perez Defendant-Intervenors") in this action.  I submit this declaration in support of Perez Defendant-Intervenors' Motion to Compel Discovery from Federal Defendants in the above-referenced case.

2.      I am thoroughly familiar with the facts and arguments in this proceeding.  I have personal knowledge of the statements contained in this declaration and am fully competent to testify to the matters set forth herein.

1

3.     Counsel for Perez Defendant-Intervenors, Defendant-Intervenor State of New Jersey, and Federal Defendants have held two conferences on Defendant-Intervenors' Interrogatories Nos. 9-13 and Request for Production No. 7(3).  The first conference was a telephone call that took place on April 24, 2019.  The second conference was a telephone call that took place on May 8, 2019.  I participated on both calls on behalf of Perez Defendant-Intervenors.

4.     During the April 24, 2019 conference call, Jeffrey Robins, counsel for Federal Defendants, explained that Federal Defendants object to Interrogatories Nos. 9-13 and Request for Production No. 7(3) because responding to these requests would require a burdensome and time-consuming manual review of government files.  Federal Defendants also objected to the requests as irrelevant.  Defendant-Intervenors explained that Interrogatories Nos. 9-12 and Request for Production No. 7(3) are relevant to the issue of whether USCIS exercises discretion in the adjudication and evaluation of DACA requests.  Defendant-Intervenors further explained that Interrogatory No. 13 is relevant to Texas' argument that DACA confers a pathway to citizenship to DACA recipients.  In a good faith effort to alleviate Federal Defendants' concerns as to the burden of responding the requests, Defendant-Intervenors offered to narrow the scope of the request by suggesting that Federal Defendants review a random sample comprised of 3% of the files Federal Defendants identified required a manual review.  In the alternative, Defendant-Intervenors offered to conduct the necessary manual review of those samples.  Mr. Robins explained Federal Defendants did not believe production of the files was proportional to the needs of the case, and expressed that Federal Defendants had privacy concerns about disclosing the files, since the files have personal information about individuals who requested DACA.  Defendant-Intervenors expressed they are amenable to entering into a confidentiality

agreement to address any data privacy concerns Federal Defendants may have.  Mr. Robins agreed to confer with his clients and to inform Defendant-Intervenors about the possibility of supplementing Federal Defendants' production.  Mr. Robins also promised to produce the administrative record in the next few days.

5.     On May 8, 2019, counsel for Perez Defendant-Intervenors, the State of New Jersey, and Federal Defendants again conferred by telephone about Defendant-Intervenors' Interrogatories Nos. 9-13 and Request for Production No. 7(3).  As to Interrogatory No. 13, Mr. Robins represented that he had inquired with his client about producing data responsive to this request without the need for a manual file review but had not been able to get an answer.  As to Interrogatories Nos. 9-13 and Request for Production No. 7(3), Defendant-Intervenors again offered to review samples of the files, but Federal Defendants refused to produce such samples. Mr. Robins explained Federal Defendants continue to believe producing the samples would prove more burdensome than is proportional to the needs of the case because Federal Defendants estimate that it would take one hour to review each file and perform the necessary redactions for statutory and regulatory reasons, as well as redactions for privilege.  Mr. Robins also explained it may take time to get the files into a format suitable for review.  Federal Defendants also continued to object to the requests on relevancy grounds.  Mr. Robins explained the information Defendant-Intervenors seek, including information about Requests for Evidence, evaluation of gang membership, and evaluation of whether an applicant is a threat to public safety, is not relevant to the issue of whether USCIS uses discretion in DACA adjudication.  Counsel for Defendant-Intervenors explained again that the requests are relevant to whether USCIS adjudicators exercise discretion when evaluating DACA requests.

I verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 17th day of May, 2019.

_Nina Perales_

Nina Perales

Exhibit 14

**Alejandra Avila**

| | |
|---|---|
| **From:** | Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov> |
| **Sent:** | Monday, May 13, 2019 8:43 PM |
| **To:** | Nina Perales; Alejandra Avila |
| **Cc:** | Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Douglas H. Hallward-Driemeier; Raishay Lin; Emerson Siegle; Walker, James (CIV) |
| **Subject:** | RE: Texas et al. v. United States et al., No. 1:18-cv-00068 |
| **Attachments:** | TexasII Second Supplemental Responses to Third Set of Discovery.pdf; Texas II Second Supplemental Discovery Response RPD 9.xlsx; Texas II Second Supplemental Discovery Response ROG14.xlsx |

Nina and all,

Pursuant to our two recent conversations, please find attached Federal Defendants' Second Supplemental Responses to Request for Production 9 and Interrogatory 14. Defendants note that we have also twice met and conferred regarding the sufficiency of Federal Defendants responses to Requests for Production 5, 6, and 8, and that you have raised no further concerns to date – but may be continuing to discuss those responses.

Your May 8, 2019, email specifically addresses Federal Defendants' ongoing objections to Interrogatories 9 through 12 and request for production 7(3). Federal Defendants generally agree with your summary below, although the burden I discussed is broader than what you discuss here. Because the many of the A-files that could be responsive to your requests are paper files and have been archived, the process of getting the files out of storage and imaging the files for review is an exceptional burden unto itself that would take weeks, if not months to complete. Then, the individual file review necessary to review and redact A-files for privilege, even without a substantive review to answer your inquiries, would take approximately and hour or more each – which even for the 3% sample you have proposed would require thousands of hours to complete. These burdens would not only impact USCIS, but because adjudicatory resources would need to be reallocated in order to complete such a massive document review project, USCIS's current adjudications would be effected – including the adjudication of DACA requests. Additionally, DHS is not authorized to share information about individual DACA requestors with third parties without a waiver or a signed G-28, there is no protective order in this matter, and even a protective order would not permit DHS to disclose certain information.

Finally, Federal Defendants noted that they would contemplate a cross motion for a protective order in response to a motion to compel to the extent the substantive legality of DACA is a legal issue, the resolution of which does not require further burdensome discovery.

Sincerely,

Jeff Robins


Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Robins, Jeffrey (CIV)
**Sent:** Friday, May 10, 2019 9:39 PM

**To:** Nina Perales <nperales@MALDEF.org>; Alejandra Avila <Aavila@MALDEF.org>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Emerson Siegle <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Nina,

Defendants will respond to your email on Monday, as we want to be certain to reflect the entirety of the discussions to date. Defendants will also produce our supplemental responses on Monday, as one of the data scrapes is proving more challenging than expected.

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Nina Perales <nperales@MALDEF.org>
**Sent:** Wednesday, May 08, 2019 12:33 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>; Alejandra Avila <Aavila@MALDEF.org>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Emerson Siegle <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Jeffrey,

Thank you for speaking with us today on the phone and explaining your position with respect to our interrogatories 9 through 12, and request for production 7(3).

We have offered to conduct our own review of a sample of files of DACA applications that were denied in order to obtain the information we seek with these discovery requests. Our understanding from today's conversation is that Defendants will not produce a sample and believe that producing a sample would prove more burdensome than is proportional to the needs of the case. This is because you estimate that it would take one hour to review each denied application and perform the necessary redactions for statutory and regulatory reasons, as well as redactions for privilege. In addition, you maintain that it will take time to get the files into a format for review.

I expressed our position that Defendant Intervenors require this information in order to address Plaintiffs' arguments that DACA adjudicators do not exercise discretion when they review DACA applications and make the decision whether to grant deferred action. You responded that Defendants fundamentally disagree that the information we seek, including information about RFEs, evaluation of gang membership and evaluation of whether an applicant is an threat to public safety, is relevant to the question of discretion.

Please confirm whether this is an accurate summary of our conversation, and of your position. Thank you,

Nina Perales

Vice President of Litigation
Mexican American Legal Defense
    and Educational Fund, Inc. (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205
Ph (210) 224-5476 ext. 206
FAX (210 224-5382



CONFIDENTIALITY NOTICE: The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, covers this electronic message.  This message and any attachment thereto contains CONFIDENTIAL INFORMATION intended for the exclusive use of the named recipient(s) and may further be PRIVILEGED and CONFIDENTIAL attorney client communication, attorney work product or proprietary information.  If you are not an intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution, other than to return this message to the addressee(s), notification of its unintended disclosure, and the deletion of all copies is strictly prohibited and may be illegal.  If you receive this communication in error, please notify the sender or the person who transmitted the communication immediately by telephone at 210-224-5476 and/or by reply to this communication and delete this message. Persons responsible for delivering this communication to the intended recipient are admonished that this communication not be copied or disseminated except as directed by the intended recipient.

**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Friday, May 03, 2019 10:11 PM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Douglas H. Hallward-Driemeier; Raishay Lin; Emerson Siegle; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Alejandra and all,

After several discussions with agency counsel, operations, statistics, and information technology folks, I am pleased to say that Defendants will be able to further supplement their discovery responses following our call from last week. I am available for a further meet and confer on Monday before 2pm eastern or on Wednesday through Friday depending on availability.  I will be travelling for a hearing on Tuesday.

As for the record, we are in the final stages of review for production, but are coordinating review of certain White House communications and confirming privilege assertions by several DHS components. We are on track for production on Wednesday 5/8, and will advise if there's a need to deviate from that.

The two additional data runs that Defendants should be able to complete would be responsive to request for production 9 (a breakdown similar to the response to interrogatories 3 and 4, but organized by service center) and interrogatory 14 (with the exclusion of 245i adjustments by those who were exempt from the $1,000 fee – i.e., under the age of 17) , and we should be prepared to send these to you by Thursday 5/9. I am also awaiting final word whether there is a way to find some data responsive to interrogatory 13 without manual file review, and if there is, that can be included in a supplement by Thursday 5/9.

With regard to any possible manual file review of a sample of files to provide responses to the information sought in interrogatories 9 through 12, and request for production 7(3), in short, Defendants maintain that this will prove more burdensome than is proportional to the needs of the case.

Finally, with regard to the manner in which the search was conducted to respond to requests for production --- USCIS applied custodian questionnaires that were sent to a comprehensive list of anyone who was then employed by USCIS who might have had potentially responsive documents pertaining specific RFPs. These individuals were then sent emails, asking them to comply with the discovery order. These individuals were also asked to forward the discovery order to

anyone in their department/service center who may have potentially responsive documents. They were also asked to identify other offices and former employees who may have had responsive documents. USCIS collected questionnaires from over 150 USCIS employees. The questionnaires themselves required the custodians to search their own hard drives, email archives, personal folders and paper materials, etc. for DACA documents related to the discovery order. Individuals were asked to describe the process they used for finding potentially responsive documents and to estimate the time spent performing their search for said documents, with responsive documents moved into individual network drives for pulls by the USCIS office of information technology to preserve meta data.

Please let me know if you have any questions and I look forward to conferring further.

Regards,

Jeff


Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Robins, Jeffrey (CIV)
**Sent:** Thursday, May 02, 2019 4:08 PM
**To:** Alejandra Avila <Aavila@MALDEF.org>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Emerson Siegle <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Thank you for the explanation and apologies for the delay in our response. I will respond tomorrow addressing your additional questions, which have required some back in forth internally to make sure I give you a complete response.

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Tuesday, April 30, 2019 5:43 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Emerson Siegle <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Alejandra Avila <Aavila@MALDEF.org>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Hi Jeffrey,

I'm writing to follow up on our meet and confer from last Wednesday.

You asked for further explanation on the relevance of Interrogatory 14, which asks Federal Defendants to identify the number of DACA recipients who adjusted their status to lawful permanent resident under 8 U.S.C. § 1255(i) and 8 U.S.C. § 1255(a).

This information is relevant to Plaintiffs' claim that DACA confers a path to citizenship to DACA recipients by allowing them to obtain advance parole, because it shows the number of DACA recipients who qualified to adjust their status to lawful permanent residence irrespective of whether they obtained advance parole through DACA.  The requirements for adjustment of status under 8 U.S.C. §§ 1255(a) include, among other things, lawful admission or parole, maintenance of lawful status, and an approved visa petition under the family or employment based categories and a current visa number.  By contrast, under § 1255(i), a person may adjust his or her status without lawful admission or parole and without maintenance of lawful status. Although § 1255(i) has been repealed, some DACA holders are "grandfathered" under this provision and may use this mechanism to adjust their status without advance parole or lawful admission.

You had also mentioned you would be able to provide a response to our questions about your production by Friday of last week, but we have not heard from your office yet.  Please advise when you will provide that information to us.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382



---

**From:** Alejandra Avila
**Sent:** Thursday, April 18, 2019 10:32 AM
**To:** Robins, Jeffrey (CIV)
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Douglas H. Hallward-Driemeier; Raishay Lin; Emerson Siegle; James Walker (CIV)
**Subject:** Re: Texas et al. v. United States et al., No. 1:18-cv-00068

That works for us.

We can use the MALDEF conference call number.

Dial-in: ███████████
Participant's Code: █████████


On Apr 18, 2019, at 9:52 AM, Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov> wrote:

Thank you.  How is 11am eastern?

Jeffrey S. Robins

Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Thursday, April 18, 2019 12:16 AM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
**Subject:** Re: Texas et al. v. United States et al., No. 1:18-cv-00068

Hi Jeff,

We are generally available on Wednesday morning of next week.

Let us know what time works for you.

On Apr 17, 2019, at 4:28 PM, Robins, Jeffrey (CIV) <Jeffrey.Robins@usdoj.gov> wrote:

> Alejandra,
>
> I was unfortunately returning from travel last week when I received this email. I also have not been able to fully confer with agency counsel, many of whom are out of the office this week. Can we find a time for further discussion on Tuesday or Wednesday of next week?
>
> Thank you,
>
> Jeff
>
> Jeffrey S. Robins
> Deputy Director
> Office of Immigration Litigation
> District Court Section
> (202) 616-1246
>
> ---
>
> **From:** Alejandra Avila <Aavila@MALDEF.org>
> **Sent:** Wednesday, April 10, 2019 11:39 AM
> **To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
> **Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>
> **Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068
>
> Jeff,

6

Thank you for this supplemental production.  We now have had an opportunity to review your responses, and Defendant-Intervenors continue to believe the production is incomplete and non-responsive.

Defendants continue to fail to answer our interrogatories 9-12 and have only provided partial responses to interrogatories 13 and 14.  Defendants have also not fully responded to our requests for production numbers 5, 6, 7(3), 8, and 9, and have failed to identify any search terms and custodians as suggested by Defendant-Intervenors in our December 19, 2018 deficiency letter to you or propose any means to narrow the scope of the review.  Defendant-Intervenors still cannot discern the scope of Defendants' previous production, whether Defendants have provided all responsive documents to our requests, and whether Defendants need to conduct additional searches.  In your supplemental responses, you also do not address requests for production 7(3) and 9 at all and the deficiencies outlined in our letter in connection with these requests.

In an effort to avoid court intervention, we would like to confer with you over the phone to see if there is a way to resolve this discovery dispute.

We are available tomorrow any time from 11 am-2 pm Central or Monday any time from 10 am-4 pm Central.  Please let us know what time works for you.

Thank you.

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382
<image001.jpg>

---

**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Wednesday, February 20, 2019 9:16 AM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H. Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson (Emerson.Siegle@ropesgray.com); Adam Biggs; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Counsel,

Attached are Federal Defendants' supplemental responses to Perez Defendant-Intervenors' third set of discovery requests.

Please let me know if you have any questions.

Thank you,

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Thursday, February 07, 2019 6:35 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine
<Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales
<nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier
<Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd
<Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson
(Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs
<Adam.Biggs@oag.texas.gov>; Walker, James (CIV) <jwalker2@CIV.USDOJ.GOV>; Alejandra Avila
<Aavila@MALDEF.org>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Mr. Robins,

Please confirm when Federal Defendants intend to provide the supplemental production mentioned in
your email below.  As you know, it has been more than 7 weeks since Perez Defendant-Intervenors
emailed their deficiency letter to you.

In addition, please advise whether Federal Defendants will address the remaining deficiencies noted in
our letter.  If Federal Defendants do not provide amended answers and a supplemental production
pursuant to the deficiency letter, Perez Defendant-Intervenors will seek court intervention on this
matter.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382
<image001.jpg>

---

**From:** Robins, Jeffrey (CIV) [mailto:Jeffrey.Robins@usdoj.gov]
**Sent:** Monday, February 4, 2019 3:19 PM
**To:** Alejandra Avila
**Cc:** Glenn Moramarco; Kenneth Levine; Jeremy Hollander; Nina Perales; Jack Salmon; Douglas H.
Hallward-Driemeier; Raishay Lin; Todd <Todd. Disher@oag. texas. gov> Disher; Siegle, Emerson
(Emerson.Siegle@ropesgray.com); Adam Biggs; Walker, James (CIV)
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Counsel,

I write to advise that Federal Defendants will be supplementing the prior responses with data for the newly added states and a chart reflecting the documents that correspond with each request for production.

Jeff

Jeffrey S. Robins
Deputy Director
Office of Immigration Litigation
District Court Section
(202) 616-1246

---

**From:** Alejandra Avila <Aavila@MALDEF.org>
**Sent:** Wednesday, December 19, 2018 4:48 PM
**To:** Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Cc:** Glenn Moramarco <Glenn.Moramarco@law.njoag.gov>; Kenneth Levine <Kenneth.Levine@law.njoag.gov>; Jeremy Hollander <Jeremy.Hollander@law.njoag.gov>; Nina Perales <nperales@MALDEF.org>; Jack Salmon <jsalmon@MALDEF.org>; Douglas H. Hallward-Driemeier <Douglas.Hallward-Driemeier@ropesgray.com>; Raishay Lin <Raishay.Lin@ropesgray.com>; Todd <Todd. Disher@oag. texas. gov> Disher <Todd.Disher@oag.texas.gov>; Siegle, Emerson (Emerson.Siegle@ropesgray.com) <Emerson.Siegle@ropesgray.com>; Adam Biggs <Adam.Biggs@oag.texas.gov>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Jeffrey,

Attached please find Perez Defendant-Intervenors' deficiency letter related to our third set of discovery requests.

Thank you,

**Alejandra Ávila**
*Staff Attorney*
The Mexican American Legal Defense
and Educational Fund, Inc.
110 Broadway, Suite 300
San Antonio, TX 78205
P: (210) 224-5476 ext. 204
F: (210) 224-5382

Exhibit 15



WCP:JSR:JW
DJ 39-74-6079

**U.S. Department of Justice**

Civil Division
Office of Immigration Litigation
District Court Section

*P.O. Box 868, Ben Franklin Station Washington, DC 20044*
(202) 532-4468; (202) 305-7000 (facsimile)
*james.walker3@usdoj.gov*

May 10, 2019

**VIA FEDERAL EXPRESS**

Nina Perales
Vice President of Litigation
Mexican American Legal Defense
and Educational Fund, Inc. (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205

RECEIVED MAY 1 3 2019

Dear Ms. Perales:

Enclosed is a CD containing the certified administrative record for the litigation *Texas v. United States*, Case No. 1:18-CV-68 (S.D. TX). We will provide a record certification and index early next week.

Sincerely,

*/s/ James J. Walker*

JAMES J. WALKER
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| Defendant-Intervenor. | § | |

## ORDER

On this date, the Court considered Defendant-Intervenors' Motion to Compel Discovery from Federal Defendants.  After reviewing the Motion and arguments, the motion is **GRANTED**.

It is hereby **ORDERED** that Federal Defendants answer Defendant-Intervenors' Interrogatories Nos. 9 through 13 and produce documents responsive to Request for Production No 7(3).

It is **FURTHER ORDERED** that Federal Defendants amend their initial disclosures.

It is **FURTHER ORDERED** that discovery and all other deadlines in the Court's Rule 16 Scheduling Order are **EXTENDED** for a period of time equal to the number of days between

the filing of Defendant-Intervenors' Motion and the day Federal Defendants produce a complete production to Defendant-Intervenors pursuant to this Order.  The parties must file a status report with the Court informing the Court of Federal Defendants' compliance within 30 days of entry of this Order.

It is **FURTHER ORDERED** that Federal Defendants pay reasonable expenses incurred by Defendant-Intervenors in connection to this motion.  Defendant-Intervenors must file an application for reasonable expenses and supporting documentation within 90 days of entry of this order.

SO ORDERED this _____ day of _____, 2019.


_____
HON. ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE