# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

STATE OF TEXAS, *et al.*,

            Plaintiffs,

        v.

KIRSTJEN M. NIELSEN, *et al.*,

            Defendants,

*and*

KARLA PEREZ, *et al.*,

            Defendant-Intervenors.

Case No. 18-cv-00068

## FEDERAL DEFENDANTS' OBJECTIONS AND RESPONSES TO
## DEFENDANT-INTERVENORS' THIRD SET OF DISCOVERY REQUESTS

TO: Defendant-Intervenors, by and through their attorneys of record, Nina Perales, Celina Moreno, Jack Salmon, Alejandra Avila, Mexican American Legal Defense and Educational Fund, 110 Broadway, Suite 300, San Antonio, Texas 78205; Carlos Moctezuma García, García & García, Attorneys at Law P.L.L.C., P.O. Box 4545 McAllen, Texas 78502.

        Federal Defendants serve these objections and responses to Defendant-Intervenors' third set of interrogatories and requests for production of documents pursuant to the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

        Federal Defendants state the following General Objections to Defendant-Intervenors' third set of interrogatories and requests for production of documents, which are hereby incorporated in and made part of each of the following specific responses.

1.      Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they require the production of documents

or things outside the narrow scope of expedited discovery, are unduly burdensome, are overly broad, or seek information that is not relevant to this phase of this case and will not lead to the discovery of such relevant information, or are equally accessible to Defendant-Intervenors through third-party discovery requests, publicly available government websites other websites, or other sources.

2.      Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they are beyond the scope of the claims in this case or they are not relevant to any party's claim or defense.  Federal Defendants further object to these interrogatories and requests for production of documents to the extent that they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

3.      Federal Defendants object to Defendant-Intervenor's "Definitions and Instructions" to the extent that they are vague and ambiguous, and therefore may lead to differing interpretations among the parties to this litigation as well as the Court, resulting in confusion.  Federal Defendants further object to Defendant-Intervenor's "Definitions and Instructions" to the extent that they are inconsistent with the Court's order dated June 20, 2018 (Dkt. 97) or to the extent that they are confusing or unduly burdensome.

4.      Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that Defendant-Intervenors seek disclosures of information protected from disclosure by the Privacy Act of 1974, 5 U.S.C. Section 552a(b), attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement / investigatory files privilege, self-critical analysis privilege, executive privilege, and official information privilege, and other applicable privileges.

5.      Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they require the production of electronically stored information on electronic media, including any general search of email or retrieval of backup tapes of U.S. Citizenship and Immigration Services ("USCIS") that are not reasonably accessible because of the undue time, burden, and cost associated with retrieving, reviewing, and producing the information, especially in relation to the limited scope of expedited discovery at this stage of proceedings.

6.      Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent that they require the production of material outside of a properly designated administrative record by USCIS, insofar as this action may be construed as a suit for judicial review of agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

7.      Federal Defendants object to Defendant-Intervenors' third set of interrogatories and requests for production of documents to the extent they purport to require the disclosure of information in the possession, custody or control of entities other than properly named

Defendants on the grounds that such production is beyond the scope of Fed. R. Civ. P. 33 and 34 and other applicable law.

8.      Federal Defendants object, in light of the Court's Order dated June 20, 2018 (Dkt. 97), to the extent Defendant-Intervenors' third set of interrogatories and requests for production of documents seek to compel Federal Defendants to search for, identify, or log drafts or non-final documents or produce documents in their native format.

9.      Federal Defendants object to Defendant-Intervenors' third set of interrogatories to the extent that they exceed the limit of 25 interrogatories, including all subparts, allowed under Fed. R. Civ. P. 33, without stipulation or leave from the court.  Defendant-Intervenors have clearly promulgated more than twenty-five interrogatories in this set alone, much less in all prior sets of interrogatories.

10.     Federal Defendants' responses to Defendant-Intervenors' third set of interrogatories and requests for production of documents are made without waiving:

        (a)  The right to object to the competence, relevance, materiality, or admissibility as evidence of any information, or the subject matter thereof, in any aspect of this civil action or any other matter;

        (b)  The right to object at any time and upon any grounds to any other discovery requests;

        (c)  The right at any time and for any reason to revise, supplement, correct, add or to clarify these responses;

        (d)  The right to amend or supplement these responses if the Federal Defendants discover additional information; and

        (e)  Any applicable privilege, including but not limited to the attorney/client privilege, the law enforcement privilege, the investigation files privilege, executive privilege, and the official information privilege.

11.     Discovery has not concluded in this litigation.  Accordingly, the Federal Defendants' responses to Defendant-Intervenors' third set of interrogatories and requests for production of documents is based upon the information available at this stage of the litigation.  Federal Defendants reserve the right to rely upon any facts, documents, or other evidence which may develop or come to its attention subsequent to this response.

        Likewise, Federal Defendants' objections to Defendant-Intervenors' third set of interrogatories and requests for production of documents are based upon the information presently known by the Federal Defendants, and are made without prejudice to the Federal Defendants' right to assert additional objections in the event that additional grounds for objections should be discovered by the Federal Defendants subsequent to this response.

12.     Without waiving the above objections, Federal Defendants will provide responses to only relevant non-privileged matters based on information currently available to it and obtainable without undue burden.

## SPECIFIC OBJECTIONS AND RESPONSES TO
## DEFENDANT-INTERVENORS' THIRD SET OF INTERROGATORIES

**INTERROGATORY NO. 3**

Please identify the number of initial DACA applications received by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, of that number:

a. the number of initial DACA applications approved by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of initial DACA applications denied by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of initial DACA applications rejected by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

**OBJECTIONS TO INTERROGATORY NO. 3**

Defendants specifically object to Interrogatory No. 3 to the extent that it uses terms that do not apply to DACA, such as "applications."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application."  For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA.   Defendants object to the following terms and phrases in Interrogatory No. 3 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common use of the terms in its agency practice regarding DACA:  "initial [DACA application]," "received by the Department of Homeland Security," "approved by the Department of Homeland Security," "denied by the Department of Homeland Security," and "rejected by the Department of Homeland Security."  With respect to that portion of the response to this Interrogatory provided by Defendant USCIS, the response is based on Defendant USCIS' common usage of those terms and phrases in its DACA business practices during the relevant time periods reflected in the response.

Immigration and Customs Enforcement ("ICE") specifically objects to being required to search for information responsive to Interrogatory No. 3 for the period from June 2012 through August 2012.  It appears that ICE never compiled or "tracked" information responsive to Interrogatory No. 3 for this time period.  Specifically, ICE has queried the Enforcement and Removal Operations ("ERO") database and found no information responsive to Interrogatory No. 3.  In addition, ICE has queried several current agency employees who potentially might

4

have information responsive to Interrogatory No. 3 and has been advised that they possess no responsive information.  It appears likely that the only ICE individuals who may have information responsive to Interrogatory No. 3 for the period from June 2012 through August 2012 are former agency employees.

**RESPONSE TO INTERROGATORY NO. 3**

See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, August 15, 2012 – June 22, 2018." USCIS began accepting initial DACA requests on August 15, 2012, therefore USCIS is not able to provide data on DACA initial requests from June 2012 to August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 4**

Please identify the number of renewal DACA applications received by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, of that number:

a. the number of renewal DACA applications approved by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of renewal DACA applications denied by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of renewal DACA applications rejected by the Department of Homeland Security from each Plaintiff State for each month during the period of June 2012 to June 2018.

**OBJECTIONS TO INTERROGATORY NO. 4**

Defendants specifically object to Interrogatory No. 4 to the extent that it uses terms that do not apply to DACA, such as "applications."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application."  For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA.   Defendants object to the following terms and phrases in Interrogatory No. 4 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common

use of the terms in its agency practices regarding DACA: "renewal [DACA application]," "received by the Department of Homeland Security," "approved by the Department of Homeland Security," "denied by the Department of Homeland Security," and "rejected by the Department of Homeland Security." With respect to that portion of the response to this Interrogatory provided by Defendant USCIS, the response is based on Defendant USCIS' common usage of those terms and phrases in its DACA business practices during the relevant time periods reflected in the response.

**RESPONSE TO INTERROGATORY NO. 4**

See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Renewals, Accepted Filings, Rejections, Approvals, and Denials by Month and Selected State, June 4, 2014 – June 22, 2018." USCIS began accepting DACA renewal requests on June 4, 2014; therefore Federal Defendants are unable to provide data on DACA renewals from June 2012 to June 4, 2014 because it does not exist. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 5**

Please identify the average number of months it took USCIS to adjudicate an accepted DACA initial application:

      a. For the period of June 2012 to January 2017

      b. For the period of February 2017 to June 2018

**OBJECTIONS TO INTERROGATORY NO. 5**

Defendants specifically object to Interrogatory No. 5 to the extent that it uses terms that do not apply to DACA, such as "application." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "application" to mean such a request for DACA. Defendants object to the following terms and phrases in Interrogatory No. 5 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "took [USCIS] to adjudicate," "accepted," and "initial [application]." The response to Interrogatory No. 5 is based on Defendant USCIS' common usage of those terms and phrases in its DACA agency practices during the relevant time periods reflected in the response. Defendant USCIS further objects that the phrase "average number of months" is vague and undefined, and therefore ambiguous. In its response, Defendant USCIS uses a conversion of 30.4 days per month.

**RESPONSE TO INTERROGATORY NO. 5**

      See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, Average Processing Time for DACA Initial Completions, August 15, 2012 - June 22, 2018." USCIS began accepting initial DACA requests on August 15, 2012; therefore the average processing time for part a. was calculated using data beginning August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 6**

Please identify the average number of months it took USCIS to adjudicate an accepted DACA renewal application:

      a. For the period of June 2014 to January 2017

      b. For the period of February 2017 to June 2018

**OBJECTIONS TO INTERROGATORY NO. 6**

      Defendants specifically object to Interrogatory No. 6 to the extent that it uses terms that do not apply to DACA, such as "application." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "application" to mean such a request for DACA. Defendants object to the following terms and phrases in Interrogatory No. 6 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "took [USCIS] to adjudicate," "accepted," and "renewal". The response to Interrogatory No. 6 is based on Defendant USCIS' common usage of those terms and phrases in its DACA business practices during the relevant time periods reflected in the response. Defendant USCIS further objects that the phrase "average number of months" is vague and undefined, and therefore ambiguous. In its response, Defendant USCIS uses a conversion of 30.4 days per month.

**RESPONSE TO INTERROGATORY NO. 6**

      See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, Average Processing Time for DACA Renewal Completions, June 4, 2014 - June 22, 2018. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 7**

Please identify the offices within USCIS that evaluate and adjudicate DACA applications.

**OBJECTIONS TO INTERROGATORY NO. 7**

Defendants specifically object to Interrogatory No. 7 to the extent that it uses terms that do not apply to DACA, such as "applications."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application."  For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA.   Defendants object to the following terms and phrases in Interrogatory No. 7 to the extent that they are vague, undefined, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meanings that do not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "evaluate" and "adjudicate." Defendant USCIS' response is based on its common usage of those terms and phrases in its DACA agency practices during the relevant time periods reflected in the response. Defendants further object that "offices" do not "evaluate and adjudicate" DACA requests within USCIS, but rather USCIS officers employed at specific USCIS locations adjudicate DACA requests and other USCIS personnel may also be involved in evaluating DACA requests. Defendants also object that Interrogatory No. 7 is vague and ambiguous as to the time period it covers.  Defendant USCIS' response will cover the period from August 1, 2012 through May 31, 2018, the period for which data is readily available.

**RESPONSE TO INTERROGATORY NO. 7**

Subject to this qualification and objection, Defendant DHS responds that only officers at USCIS Service Centers render final adjudicative decisions for DACA requests.  However, individuals at other USCIS offices that may be or may have been involved in evaluation or review of DACA requests are or were employed at: Headquarters Service Center Operations, the Field Operations Directorate, the Office of Policy and Strategy, the Fraud Detection and National Security Directorate, the Office of Intake and Data Production, and the Office of the Chief Counsel.

See attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, USCIS Service Centers and Offices that Evaluate and Adjudicate DACA Requests, August 1, 2012 - May 31, 2018", which provides the name of each USCIS service center and USCIS field office that has transferred in or adjudicated at least one Form I-821D since August 1, 2012. The data provided in response to this Interrogatory reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 8**

8

Please identify the number of DACA applications adjudicated at each of the five service centers within the USCIS Service Center Operations Directorate (SCOPS) each year for the period of June 2012 to June 2018.

**OBJECTIONS TO INTERROGATORY NO. 8**

Defendants specifically object to Interrogatory No. 8 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants object to the following term in Interrogatory No. 8 to the extent that it may be vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends it to have meaning that does not comport with Defendant USCIS' common use of the term in its agency practices regarding DACA: "adjudicated."

**RESPONSE TO INTERROGATORY NO. 8**

Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, Count of Adjudications by Service Center and Fiscal Year of Adjudication, August 15, 2012 - June 22, 2018." USCIS began accepting DACA requests on August 15, 2012; therefore USCIS service centers did not adjudicate any DACA requests between June 2012 and August 15, 2012. The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 9**

Please identify the number of DACA initial applications USCIS has accepted and denied from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of DACA applications denied at least in part because the applicant was a suspected gang member, from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of DACA applications denied at least in part because the applicant posed a threat to national security or public safety, from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of DACA applications denied after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

**OBJECTION TO INTERROGATORY NO. 9:**

Defendants specifically object to Interrogatory No. 9 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants further object to the following terms in Interrogatory No. 9 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the term in its agency practices regarding DACA: "initial [application]," "accepted," "denied," "suspected gang member," and "posed a threat to public safety or national security." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices. Defendants object that "the five criteria outlined in the 2012 DACA memo" is vague and ambiguous, and Defendants do not have sufficient knowledge to know exactly which criteria Defendant-Intervenor is referencing with this phrase.

Federal Defendants object to subparts a., b., and c., of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests even though they were probative of the issues to be addressed at the preliminary injunction hearing because they were overly broad and not reasonably tailored to the specific issues to be addressed at the hearing).

Federal Defendants further object to subparts a., b., and c., of this Interrogatory on the grounds that they are vague, overbroad, burdensome, not relevant and/or proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not electronically capture, in a readily retrievable, systematic manner, information regarding subparts a., b., and c., of Interrogatory 9 in the ordinary course of business. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of the electronic and/or paper files of every denial of an initial DACA request for requestors from each Plaintiff State (over 17,000 cases), as set forth in the

attached declaration.  *See* Dkt. 97.  Case-by-case review may also require further consultation with the adjudicator who rendered the decision.

Federal Defendants will provide a response to the main question within Interrogatory 9, the number of denials of initial DACA requests from Plaintiff States by month, but notes that this information is already provided in the response to Interrogatory 3 and is therefore duplicative.

**RESPONSE TO INTERROGATORY NO. 9**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Denials by Month and Selected State, August 15, 2012 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.  In response to subpart c. of Interrogatory No. 9, Federal Defendants respond that based on an informal inquiry of relevant USCIS service centers and the information in the 2015 Neufeld Declaration, *see, e.g.*, para. 18,[1] Federal Defendants are aware of several initial DACA requests that were denied because the requestor either made false statements or committed fraud in other immigration or non-immigration government contexts, despite the requestor meeting the DACA guidelines outlined in the bulleted points on the first page of the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012.

**INTERROGATORY NO. 10**

Please identify the number of DACA renewal applications USCIS has accepted and denied from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of DACA applications denied at least in part because the applicant was a suspected gang member, from each Plaintiff State for each month during the period of June 2012 to June 2018.

b. the number of DACA applications denied at least in part because the applicant posed a threat to national security or public safety, from each Plaintiff State for each month during the period of June 2012 to June 2018.

c. the number of DACA applications denied after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

**OBJECTION TO INTERROGATORY NO. 10**

---

[1] Defs.' Sur-reply in Opp'n to Pls.' Mot. for Prelim. Inj., Ex. 44, *Texas v. U.S.*, 86 F.Supp.3d 591 (2015) (No. 1:14-cv-254), ECF No. 130-11.

Defendants specifically object to Interrogatory No. 10 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application," nor are requestors considered "applicants." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA. Defendants further object to the following terms in Interrogatory No. 10 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "renewal [application]," "accepted," "denied," "suspected gang member," and "posed a threat to public safety or national security." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices. Defendants object that "the five criteria outlined in the 2012 DACA memo" is vague and ambiguous, and Defendants do not have sufficient knowledge to know exactly which criteria Defendant-Intervenor is referencing with this phrase.

Federal Defendants object to subparts a., b., and c. of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

Federal Defendants further object to this Interrogatory on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not electronically capture, in a readily retrievable, systematic manner, information regarding subparts a., b., and c., of this Interrogatory in the ordinary course of business. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of electronic and/or paper files of every denial of a DACA renewal request for the requestors from each Plaintiff State (over 2,000 cases), as set forth in the attached

declaration. *See* Dkt. 97. Case-by-case review may also require further consultation with the adjudicator who rendered the decision.

Federal Defendants will provide a response to the main question within Interrogatory 10, the number of denials of DACA renewal requests from Plaintiff States by month, but notes that this information is already provided in the response to Interrogatory 4 and is therefore duplicative.

**RESPONSE TO INTERROGATORY NO. 10**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Renewals, Denials by Month and Selected State, June 4, 2014 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 11**

Please identify the number of initial DACA applications USCIS has accepted and subsequently issued Requests for Evidence ("RFEs") from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of RFEs related to whether the applicant was under the age of 31 as of June 15, 2012;

b. the number of RFEs related to whether the applicant came to the United States before reaching his or her 16th birthday;

c. the number of RFEs related to whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application;

d. the number of RFEs related to whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action;

e. the number of RFEs related to whether the applicant had no lawful status on June 15, 2012;

f. the number of RFEs related to whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

g. the number of RFEs related to whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

**OBJECTION TO INTERROGATORY NO. 11**

Defendants specifically object to Interrogatory No. 11 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application," nor are requestors considered "applicants." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA. Defendants further object to the following terms in Interrogatory No. 11 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "initial [DACA applications]," "accepted," "and subsequently issued Requests for Evidence ("RFE")." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices.

Federal Defendants object to subparts a. through g. of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

Federal Defendants further object to subparts a. through g. of this Interrogatory on the grounds that they are overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not reliably electronically capture, in a readily retrievable, systematic manner, information regarding subparts a. through g. in the ordinary course of business. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of electronic and/or paper copies of the Request for Evidence (RFEs) sent for every initial DACA request from each Plaintiff State (more than 50,000), as set

forth in the attached declaration. *See* Dkt. 97. This number does not even include multiple RFEs sent for the same request, which would need to be manually reviewed as well.

Federal Defendants will provide a response to the main question within Interrogatory 11, the number of initial DACA requests for which USCIS has accepted and subsequently issued a RFE from Plaintiff States by month.

**RESPONSE TO INTERROGATORY NO. 11**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Request for Evidence (RFE) by Month and Selected State, August 15, 2012 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

**INTERROGATORY NO. 12**

Please identify the number of renewal DACA applications USCIS has accepted and subsequently issued Requests for Evidence ("RFEs") from each Plaintiff State for each month during the period of June 2012 to June 2018, and identify, from among that number:

a. the number of RFEs related to whether the applicant was under the age of 31 as of June 15, 2012;

b. the number of RFEs related to whether the applicant came to the United States before reaching his or her 16th birthday;
c. the number of RFEs related to whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application;

d. the number of RFEs related to whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action;

e. the number of RFEs related to whether the applicant had no lawful status on June 15, 2012;

f. the number of RFEs related to whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

g. the number of RFEs related to whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

**OBJECTION TO INTERROGATORY NO. 12**

Defendants specifically object to Interrogatory No. 12 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant." DACA may be requested by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application," nor are requestors considered "applicants." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA. Defendants further object to the following terms in Interrogatory No. 12 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "renewal [DACA applications]," "accepted," and "and subsequently issued Requests for Evidence ("RFE")." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices.

Federal Defendants object to subparts a. through g. of this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

Federal Defendants further object to subparts a. through g. of Interrogatory on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not reliably electronically capture, in a readily retrievable, systematic manner, information regarding subparts a. through g. in the ordinary course of business. This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of electronic and/or paper copies of the Request for Evidence (RFEs) sent for every DACA renewal request from each Plaintiff State (more than 9,000), as set

forth in the attached declaration. *See* Dkt. 97. This number does not even include multiple RFEs sent for the same request, which would need to be manually reviewed as well.

Federal Defendants will provide a response to the main question within Interrogatory 12, the number of DACA renewal requests for which USCIS has accepted and subsequently issued a RFE from Plaintiff States by month.

## RESPONSE TO INTERROGATORY NO. 12

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Renewals, Request for Evidence (RFE) by Month and Selected State, June 4, 2014 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

## INTERROGATORY NO. 13

Please identify the number of approved, initial DACA applications submitted by individuals who indicated on their I-821D, in response to Part 3. Question 4., that their immigration status on June 15, 2012 was "Status Expired" or "Parole Expired," and who answered in the affirmative in response to Part 3. Question 5.a. ("Were you EVER issued an Arrival-Departure Record"), for each Plaintiff State for each month during the period of June 2012 to June 2018.

## OBJECTION INTERROGATORY NO. 13

Defendants specifically object to Interrogatory No. 13 to the extent that it uses terms that do not apply to DACA, such as "applications." DACA may be requested by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this Interrogatory only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants further object to the following terms in Interrogatory No. 13 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "approved," and "initial [DACA applications]." Defendant USCIS' response is based on its common usage of such terms in its DACA agency practices.

Federal Defendants object to this Interrogatory pursuant to this Court's order dated June 20, 2018 (Dkt. 97). This Interrogatory is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter

related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

 Federal Defendants further object to this Interrogatory on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

 USCIS databases do not electronically capture, in a reliable, readily retrievable, systematic and complete manner, the responses to Part 3, Question 4 on the Form I-821D, in the ordinary course of business. USCIS databases also do not electronically capture, in a readily retrievable, systematic manner, responses to Part 3, Question 5a on the Form I-821D for DACA requests that were processed in USCIS' Computer Linked Application Information Management System (CLAIMS 3), in the ordinary course of business.  CLAIMS 3 is an electronic case management system. See the publicly available Privacy Impact Assessment for CLAIMS 3 (DHS/USCIS/PIS-06(a)), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-claims3appendixaupdate-may2018.pdf.  This information "is difficult to calculate" and "not easily derivable from the information kept by the Federal Defendants" because it would require USCIS to conduct a manual, case-by-case review of ELIS records, an electronic copy of the Form I-821D, or the original paper version of the Form I-821D if an electronic copy is not available, for every approved initial DACA request for each Plaintiff State (more than 150,000), as set forth in the attached declaration.  *See* Dkt. 97.

 Federal Defendants will provide a partial response regarding the number of approved initial DACA requests where "Yes" was marked in Part 3, Question 5a. on the Form I-821D, for cases processed in USCIS' Electronic Immigration System (ELIS).  ELIS is an online, electronic account and immigration case management system that stores information submitted or integrated into the system for the processing of specific applications, petitions, or requests.  *See* the publicly available Privacy Impact Assessment for ELIS (DHS/USCIS/PIA-056 ELIS), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-elisappendixaupdate-may2018.pdf.

## RESPONSE TO INTERROGATORY NO. 13

 Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, DACA Initials, Requests with 'Yes' marked in Part 3 Question 5a 'Were you EVER issued an Arrival-Departure Record' by Month and Selected State, November 1, 2015 - June 22, 2018," which provides information only from ELIS. The data

provided in response to this Interrogatory is approximate data and reflects best available
information to USCIS at the time the data report was run.

**INTERROGATORY NO. 14**

Please identify the number of DACA recipients who adjusted their status to lawful permanent
resident, for each Plaintiff State for each month during the period of June 2012 to
June 2018, and identify among that number:

      a. the number of DACA recipients who adjusted under 8 U.S.C. 1255(i)

      b. the number of DACA recipients who adjusted under 8 U.S.C. 1255(a)

**OBJECTION TO INTERROGATORY NO. 14**

Federal Defendants object to this Interrogatory pursuant to this Court's order dated June
20, 2018 (Dkt. 97).   This Interrogatory is inconsistent with the limited nature of expedited
discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See, e.g., OrthoAccel Technologies, Inc. v.
Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The
Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary
for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp.,
Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter
related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia
Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL
404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's
discovery requests were overly broad and not reasonably tailored to the specific issues to be
addressed at the preliminary injunction hearing).

Federal Defendants further object to this Interrogatory on the grounds that it is
overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ.
P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to
any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g.,
Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D.
Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal
culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS databases do not electronically capture, in a readily retrievable, systematic
manner, whether an individual adjusted status to lawful permanent residence under 8 U.S.C.
1255(a), (i), or another basis, in the ordinary course of business.  This information "is difficult to
calculate" and "not easily derivable from the information kept by the Federal Defendants"
because it would require USCIS to conduct a manual, case-by-case review of electronic and/or
paper files of every DACA recipient who adjusted status to lawful permanent residence during
the specified period for each Plaintiff State (more than 7,000), as set forth in the attached
declaration.  *See* Dkt. 97.

**RESPONSE TO INTERROGATORY NO. 14**

Subject to these objections, Federal Defendants refer to the attached chart entitled, "United States Citizenship and Immigration Services (USCIS), I-821D, Consideration of Deferred Action for Childhood Arrivals, I-485, Application to Register Permanent Residence or Adjust Status, DACA Recipients who Adjusted Status by Date of Adjustment and Selected State, August 15, 2012 - June 22, 2018." The data provided in response to this Interrogatory is approximate data and reflects best available information to USCIS at the time the data report was run.

## VERIFICATION OF ANSWERS TO INTERROGATORIES

I am Tracy Renaud, Acting Deputy Director of USCIS.  I believe, based on inquiry, that the foregoing USCIS answers are true and correct to the best of my knowledge, information and belief.

I verify, under penalty of perjury, that the foregoing is true and correct. Executed July 6, 2018.

_(Signature)_
Tracy Renaud
Acting Deputy Director, USCIS

## SPECIFIC OBJECTIONS AND RESPONSES TO
## DEFENDANT-INTERVENORS' THIRD SET OF REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 5:**

Produce all documents relating to guidelines followed by DHS, and any of its subsidiary agencies, departments, agents, and employees, to evaluate, process, and adjudicate Deferred Action for Childhood Arrivals ("DACA") applications, including, but not limited to: (1) internal agency documents, memoranda, and communications that set forth any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications; (2) training materials provided to agents or employees related to DACA evaluations and adjudications; and (3) changes following January 20, 2017 in any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications.

**OBJECTION TO REQUEST FOR PRODUCTION NO. 5:**

Defendants specifically object to Request for Production (RFP) No. 5 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants further object to the following terms in RFP No. 5 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "relating to guidelines," "to evaluate, process and adjudicate," "guidance, rules or procedures," "training materials," and "changes following January 20, 2017 in any guidance, rules, or procedures." Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices. Federal Defendants object to RFP No. 5 to the extent that the request is beyond the scope of the claims in this case or they are not relevant to any party's claim or defense and not likely to lead to the discovery of relevant information.

Federal Defendants further object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018, and its subsequent order that same day (Dkt. 97). This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests even though they were probative of the issues to be addressed at the preliminary injunction

hearing because they were overly broad and not reasonably tailored to the specific issues to be addressed at the hearing); *Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477, 2006 WL 1373055, at *4-5 (D. N.J. May 17, 2006) (denying the plaintiff's request for expedited discovery in part because it "would lead to the parties conducting all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery"); *compare with Par. of Jefferson v. S. Recovery Mgmt., Inc.*, No. CIV. A. 95-2290, 1995 WL 542475, at *2 (E.D. La. Sept. 12, 1995) (granting motion for expedited discovery because it was limited to five request for documents which defendants should routinely maintain and have readily accessible). More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

USCIS is prepared to provide readily available, final versions of non-case specific responsive documents containing guidelines followed to evaluate, process, and adjudicate DACA requests maintained by custodians who are currently employed by USCIS, but not to conduct a comprehensive search for all emails or other documents "relating to guidelines followed by DHS . . . to evaluate, process, and adjudicate" DACA requests, or to conduct a comprehensive search for records that were maintained by former USCIS employees.

Due to the breadth of RFP No. 5, including the six years it covers, Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents and emails "relating to" guidelines followed by DHS to evaluate, process, and adjudicate DACA requests that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges. Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of the email and other electronic records of all potential custodians and to review all of the resulting documents. It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and other DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

ICE specifically objects to being required to search for and/or produce documents responsive to Request No. 5 for the period of time from June 2012 through August 2012. ICE has contacted several individuals currently employed by ICE and determined that they have no

documents responsive to Request No. 5.  To the extent that responsive documents do exist, they
would be among the emails of former ICE employees.  ICE objects to being required to conduct
an electronic search of such emails for the period of June 2012 through August 2012 on the
grounds that such a requirement would be overbroad, burdensome, not relevant and
proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  It is unclear what search
terms could be used to locate responsive emails, especially because it is unknown whether there
were any responsive emails were ever created, transmitted, and/or retained.


**REQUEST FOR PRODUCTION NO. 6:**

Produce all documents relating to the process by which DHS, and any of its subsidiary agencies,
departments, agents, and employees, evaluates, processes, and adjudicates DACA applications,
including but not limited to: (1) under what circumstances a DACA application is rejected,
denied, or approved; (2) the number and location of agents and employees whose work relates to
the evaluation and adjudication of DACA applications; (3) the procedure(s) employed by agents
and employees who work in the evaluation and adjudication of DACA applications; and (4)
changes in the process for evaluating, processing, and adjudicating DACA applications
following January 20, 2017.

**OBJECTION TO REQUEST NO. 6:**

        Defendants specifically object to Request for Production (RFP) No. 6 to the extent that it
uses terms that do not apply to DACA, such as "applications."  DACA may be requested by
certain individuals brought to the United States as children who seek DHS' prosecutorial
discretion not to subject them to removal action for a two-year period from approval of the
request.  As such, it is not an immigration benefit "application." For purposes of responding to
this RFP only, however, Defendants will interpret "applications" to mean such requests for
DACA.  Federal Defendants object to RFP No. 6 to the extent that the request seeks documents
that are beyond the scope of the claims in this case or they are not relevant to any party's claim
or defense and not likely to lead to the discovery of relevant information.

         Defendants further object to the following terms in RFP No. 6 to the extent that they are
vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that
Defendant-Intervenor intends them to have meaning that does not comport with Defendant
USCIS' common use of the terms in its agency practices regarding DACA: "relating to the
process by which … evaluates, processes, adjudicates DACA [applications]," "rejected, denied,
or approved," "evaluation and adjudication," and "changes in the process for evaluating,
processing, and adjudicating DACA [applications] following January 20, 2017." Defendants'
response is based on Defendant USCIS' common usage of such terms in its DACA agency
practices. Defendants also object to RFP 6 to the extent that it is unclear what documents
Defendant-Intervenor seeks that are different from documents sought in RFP 5, and to the extent
that RFPs overlap, or that RFP 6 seeks documents that are duplicative of those sought in RFP 5.
Such apparently duplicative and overlapping requests are overly burdensome and confusing for
Defendants to interpret and understand how to respond. Defendants further object that the use of
the word "and" in "who work in the evaluation and adjudication of DACA applications" is

ambiguous and creates confusion.  Defendants do not know whether each such employee noted must do *both* actions, "evaluation *and* adjudication," or whether each employee must be involved at least in either "evaluation" or "adjudication" of DACA requests.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).  This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See, e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing); *Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477, 2006 WL 1373055, at *4-5 (D. N.J. May 17, 2006) (denying the plaintiff's request for expedited discovery in part because it "would lead to the parties conducting all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery"); *compare with Par. of Jefferson v. S. Recovery Mgmt., Inc*., No. CIV. A. 95-2290, 1995 WL 542475, at *2 (E.D. La. Sept. 12, 1995) (granting motion for expedited discovery because it was limited to five request for documents which defendants should routinely maintain and have readily accessible).  More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to subparts (1), (3) and (4), because they are duplicative of RFP No. 5.

USCIS is prepared to provide readily available final versions of non-case specific documents describing the process by which DHS evaluates, processes, and adjudicates DACA requests maintained by custodians who are currently employed by USCIS, but not to conduct a comprehensive search for all email and other documents "relating to the process by which DHS . . . evaluates, processes, and adjudicates DACA" requests, or to conduct a comprehensive search for records that were maintained by former USCIS employees.

Due to the breadth of Request for Production No. 6, which covers six years, Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents and emails "relating to" the process by which DHS evaluates, processes, and adjudicates DACA requests that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges.  It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians.  Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

ICE specifically objects to being required to search for and/or produce documents responsive to Request No. 6 for the period of time from June 2012 through August 2012.  ICE has contacted several individuals currently employed by ICE and determined that they have no documents responsive to Request No. 6.  To the extent that responsive documents do exist, they would be among the emails of former ICE employees.  ICE objects to being required to conduct an electronic search of such emails for the period of June 2012 through August 2012 on the grounds that such a requirement would be overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  It is unclear what search terms could be used to locate responsive emails, especially because it is unknown whether there were any responsive emails were ever created, transmitted, and/or retained.


**REQUEST FOR PRODUCTION NO. 7:**

Produce documents showing the number of DACA applications received, rejected, denied, and approved, including but not limited to: (1) the number of initial DACA applications received, rejected, denied, and approved by each Plaintiff state, for each month during the period of June 2012 to June 2018; (2) the number of renewal DACA applications received, rejected, denied, and approved by each Plaintiff state, for each month during the period of June 2012 to June 2018; and (3) the number of DACA applications accepted but denied, during the period of June 2012 to June 2018, after the adjudicator determined the applicant met the five criteria in the June 15, 2012 DACA memorandum but was otherwise not a qualifying applicant, including because the applicant posed a threat to national security or public safety, by each Plaintiff state, for each month.


**OBJECTION TO REQUEST NO. 7:**

Defendants specifically object to Request for Production (RFP) No. 7 to the extent that it uses terms that do not apply to DACA, such as "applications" and "applicant."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period

from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA and "applicant" to mean a requestor of DACA. Defendants further object to the following terms in RFP No. 7 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "initial DACA [applications]," "renewal DACA [applications]," "received," "rejected," "denied," and "approved." Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices. Defendant also objects that the phrase "met the five criteria in the June 15, 2012 DACA memorandum," is ambiguous, and Defendant is without sufficient knowledge to know exactly which "five criteria" Defendant-Intervenor is referencing with this phrase. The reference to the "June 15, 2012 DACA memorandum" lacks specificity, and thus is ambiguous, but Defendants will interpret it to mean the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018, and its subsequent order that same day (Dkt. 97). This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1). *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing). More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to this Request to the extent it seeks statistics that are duplicative of information that is being provided in response to the Interrogatories. Federal Defendants also object to the Request as vague and ambiguous as to the time period for which it requests documents.

Due to the breadth of this Request Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians.  Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In lieu of providing responsive documents, USCIS respectfully refers Defendant-Intervenors to the responses to Interrogatories and the following pages of the USCIS website:

- DACA Quarterly Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data/data-set-form-i-821d-deferred-action-childhood-arrivals
- Other DACA Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data
- USCIS Electronic Reading Room, which includes responses to Congressional inquiries, among other documents, that contain statistics and other information that may pertain to this RFP and is electronically searchable: https://www.uscis.gov/about-us/electronic-reading-room

## REQUEST FOR PRODUCTION NO. 8:

Produce all documents relating to process by which DHS, and any of its subsidiary agencies, departments, agents, and employees, evaluates and adjudicates applications or requests for deferred action other than DACA, including but not limited to: (1) under what circumstances an application or request is rejected, denied, or accepted; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of deferred action applications or requests; (3) and the procedure(s) employed by agents and employees who work in the evaluation and adjudication of deferred action applications or requests; and (4) any changes in the process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA since January 20, 2017.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 8:

Defendants specifically object to Request for Production (RFP) No. 8 to the extent that it uses terms that do not apply to DACA or to deferred action generally, such as "applications."  A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  Non-DACA deferred action is also made by written request, not an application, to DHS.  As such, neither DACA, nor non-DACA deferred action is

obtained through an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications…for deferred action other than DACA" to mean written requests for non-DACA deferred action.  Defendants further object to the following terms in RFP No. 8 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendants common use of the terms in its agency practices regarding deferred action: "evaluates," "adjudicates," "rejected,", "denied," "accepted," "evaluation and adjudication of deferred action applications or requests," "procedures(s) employed by…who work in the evaluation and adjudication of deferred action," and "any changes in the process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA since January 20, 2017."  Defendants' response is based on Defendants' common usage of such terms in its agency practices. Federal Defendants object to RFP No. 8 to the extent that the request is beyond the scope of the claims in this case or they are not relevant to any party's claim or defense and not likely to lead to the discovery of relevant information.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).   This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See*, *e.g*., *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).  More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

 Federal Defendants further object to this Request on the grounds that it is vague, overbroad, burdensome, not relevant and proportionate to the needs of the case and is outside the scope of the relief sought in this action.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to this Request to the extent that it seeks every deferred action request that was ever denied. Federal Defendants also object to the Request as vague and ambiguous as to the time period for which it requests documents.

USCIS is prepared to provide readily available, final versions of non-case specific documents regarding the process by which USCIS evaluates, processes, and adjudicates requests for deferred action other than DACA, that were in existence and in use at any time between January 1, 2016 and June 22, 2018, and that are maintained by custodians who are currently employed by USCIS. USCIS will not conduct a comprehensive search for all emails or other documents "relating to [the] process by which DHS . . . evaluates and adjudicates" non-DACA deferred action requests, or conduct a comprehensive search for records that were maintained by former USCIS employees.  Due to the breadth of this Request, Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents and emails relating to the process by which DHS evaluates and adjudicates requests for deferred action other than DACA that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges, or risk being under-inclusive in scope. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of the email and other electronic records of all potential custodians.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS, and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS or DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In addition to the responsive documents being produced, USCIS respectfully refers Defendant-Intervenors to the following publicly available information:

- Memorandum from Stuart Anderson, Executive Associate Commissioner, Office of Policy and Planning, INS, "Deferred Action for Aliens with Bona Fide Applications for T Nonimmigrant Status," May 8, 2002, 81 FR 92266 at 92279 (https://www.regulations.gov/document?D=USCIS-2011-0010-0004)
- "New Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for 'T' Nonimmigrant Status," 67 Fed. Reg. 4784, 4790 (Jan. 31, 2002)
- "New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status," 72 FR 53014-01 (Sept. 17, 2007)

**REQUEST FOR PRODUCTION NO. 9:**

Produce all documents relating to the number of DACA applications received, rejected, denied, and approved at each of the five USCIS Service Centers, including but not limited to: (1) the number of initial DACA applications received, rejected, denied, and approved from each Plaintiff state, every month, during the period of June 2012 to June 2018; and (2) the number of renewal DACA applications received, rejected, denied, and approved from each Plaintiff state, every month, during the period of June 2012 to June 2018.

**OBJECTION TO REQUEST NO. 9:**

Defendants specifically object to Request for Production (RFP) No. 9 to the extent that it uses terms that do not apply to DACA, such as "applications."  A request for DACA may be

submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request.  As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA.  Defendants further object to the following terms in RFP No. 9 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "initial DACA [applications]," "renewal DACA [applications]," "received," "rejected," "denied," and "approved."  Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).  This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See*, *e.g.*, *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).  More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

Federal Defendants further object to this Request on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to this RFP to the extent it seeks statistics that are duplicative of information that is being provided in response to the Interrogatories. Federal Defendants also object to this RFP as vague and ambiguous as to the time period for which it requests documents.

Due to the breadth of this Request Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges. It would be unduly burdensome and not proportional to the needs of this case for

USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians. Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms. It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In lieu of providing responsive documents, USCIS respectfully refers Defendants-Intervenors to the pages of the USCIS website:

- DACA Quarterly Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data/data-set-form-i-821d-deferred-action-childhood-arrivals
- Other DACA Statistics: https://www.uscis.gov/tools/reports-studies/immigration-forms-data
- USCIS Electronic Reading Room, which includes responses to Congressional inquiries, among other documents, that contain statistics and other information that may pertain to this RFP and is electronically searchable: https://www.uscis.gov/about-us/electronic-reading-room

## REQUEST FOR PRODUCTION NO. 10:

Produce all documents relating to the USCIS processing time of accepted and approved DACA applications, including but not limited to: (1) the amount of time that elapses between the date USCIS accepts an application and the time the application is approved; (2) the amount of time that elapses between the date USCIS approves an application and an applicant receives an employment authorization document; and (3) any changes in the processing time described above since January 20, 2017.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 10:

Defendants specifically object to Request for Production (RFP) No. 10 to the extent that it uses terms that do not apply to DACA, such as "applications." A request for DACA may be submitted by certain individuals brought to the United States as children who seek DHS' prosecutorial discretion not to subject them to removal action for a two-year period from approval of the request. As such, it is not an immigration benefit "application." For purposes of responding to this RFP only, however, Defendants will interpret "applications" to mean such requests for DACA. Defendants further object to the following terms in RFP No. 10 to the extent that they are vague, undefined by Defendant-Intervenor, and therefore ambiguous, and to the extent that Defendant-Intervenor intends them to have meaning that does not comport with Defendant USCIS' common use of the terms in its agency practices regarding DACA: "processing time," "accepted," "approved," and "any changes in the processing time described above since January 20, 2017." Defendants' response is based on Defendant USCIS' common usage of such terms in its DACA agency practices   Defendants also object that "amount of time that elapses" is vague and undefined, and therefore ambiguous.

Federal Defendants object to this Request on the grounds that it is inconsistent with the Court's guidance on June 20, 2018 and its subsequent order that same day (Dkt. 97).   This Request is inconsistent with the limited nature of expedited discovery contemplated by Fed. R. Civ. P. 26(d)(1).  *See*, *e.g*., *OrthoAccel Technologies, Inc. v. Propel Orthodontics, LLC*, Case No. 4:16-cv-350, 2016 WL 3747222, *4 (S.D. Tex. 2016) ("The Court agrees that Plaintiff's discovery requests 'broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper.'"); *St. Louis Grp., Inc. v. Metals & Additives Corp*., 275 F.R.D. 236, 240 (S.D. Tex. 2011) ("[T]he subject matter related to request for expedited discovery should be narrowly tailored in scope"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc*., Case No. 98-cv-2782, 1998 WL 404820, at * 2-3 (E.D. Pa. 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing). More specifically, Federal Defendants object to this Request to the extent that it seeks to compel them to search for non-final, draft documents, to search for documents maintained by custodians who are former USCIS employees, or compel the production of documents in their native form.

 Federal Defendants further object to this Request on the grounds that it is overbroad, burdensome, not relevant and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see, e.g., Medicinova, Inc. v. Genzyme Corp*., Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to being about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation omitted).

Federal Defendants further object to the extent this Request seeks documents duplicative of information provided in response to the Interrogatories. Federal Defendants also object to the Request as vague and ambiguous as to the time period for which it requests documents.

Due to the breadth of this Request Federal Defendants are unable to identify search terms sufficiently tailored to capture all responsive documents that would not be overly broad and result in potentially hundreds of thousands of materials to be reviewed for responsiveness and privileges. It would be unduly burdensome and not proportional to the needs of this case for USCIS to conduct broad keyword searches of email and other electronic records of all potential custodians.  Using search terms would also necessarily run the risk of excluding responsive documents that do not happen to contain the search terms.  It is additionally unduly burdensome for USCIS to collect potentially responsive documents from potential custodians who are no longer employed by USCIS and to review and produce such documents. See attached declaration. USCIS specifically objects to having to conduct a search for and log the emails and other records of DHS and DHS component counsel for documents responsive to this Request, as such documents contain advice and other information that is privileged.

In lieu of providing responsive documents, USCIS respectfully refers Defendants-Intervenors to its responses to the Interrogatories and publicly available documents on the following pages of the USCIS website:

- Website for checking current case processing times: https://egov.uscis.gov/processing-times/
- USCIS Electronic Reading Room, which includes responses to Congressional inquiries, among other documents, that contain statistics and other information that may pertain to this RFP and is electronically searchable: https://www.uscis.gov/about-us/electronic-reading-room

Dated: July 6, 2018                        Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General
                                           Civil Division
                                           BRETT A. SHUMATE
                                           Deputy Assistant Attorney General
                                           WILLIAM C. PEACHEY
                                           Director, Office of Immigration Litigation
                                           District Court Section

                                           /s/ *Jeffrey S. Robins*
                                           JEFFREY S. ROBINS
                                           Attorney-in-Charge
                                           Assistant Director
                                           U.S. Department of Justice, Civil Division
                                           Office of Immigration Litigation
                                           District Court Section
                                           P.O. Box 868, Washington, DC 20044
                                           Telephone: (202) 616-1246
                                           Facsimile: (202) 305-7000
Attorneys for Federal Defendants            jeffrey.robins@usdoj.gov