# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> Defendant-Intervenors. | Case No. 18-cv-00068 |

## DECLARATION OF TRACY L. RENAUD

I, Tracy L. Renaud, hereby make the following declaration with respect to the above captioned matter.

1. I am the Acting Deputy Director of U.S. Citizenship and Immigration Services ("USCIS"), Department of Homeland Security. I began serving as the Acting Deputy Director on March 5, 2018. I also formerly served as the Acting Deputy Director of USCIS between January and October 2017.

2. As the Acting Deputy Director of USCIS, I am responsible, along with the Director, for overseeing approximately 19,000 federal employees and contractors, handling approximately 26,000 immigration benefit applications, petitions, and other requests on an average day.

1

3. Prior to March 2018, I served as the Associate Director of the Management Directorate within USCIS.

4. I make this declaration on the basis of my personal knowledge and information made available to me at this time during the course of my official duties.

**Limitations on Information Captured in USCIS Databases**

5. USCIS began accepting initial DACA requests on August 15, 2012, and began accepting DACA renewal requests on June 4, 2014.

6. The Computer Linked Application Information Management System (CLAIMS 3) and the Electronic Immigration System (ELIS) are electronic case management systems that USCIS uses to process certain immigration requests. From the inception of the DACA policy in 2012 until November 2015, all DACA requests were manually data entered into and processed in CLAIMS 3. See the publicly available Privacy Impact Assessment for CLAIMS 3 (DHS/USCIS/PIS-06(a)), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-claims3appendixaupdate-may2018.pdf.  On November 1, 2015, USCIS began ingesting some DACA requests in ELIS.  In February 2016, USCIS transitioned to ELIS for the ingesting and processing of all newly filed DACA requests.  *See* the publicly available Privacy Impact Assessment for ELIS (DHS/USCIS/PIA-056 ELIS), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-elisappendixaupdate-may2018.pdf.

7. Based on its ordinary business practices, USCIS maintains electronic and/or paper copies of its initial and renewal DACA decisions and its Requests for Evidence (RFEs) in DACA cases.  However, USCIS' case management systems do not electronically capture the underlying basis (bases) for denial of an initial or renewal DACA request or the basis (bases)

2

on which a Request for Evidence (RFE) was sent, in a manner that can be systematically and reliably obtained.

8. Individual case-by-case review of the electronic and/or paper files for over approximately 19,000 DACA requests (approximately 17,000 denied initial requests and approximately 2,000 denied renewal requests from Plaintiff States) to determine the underlying basis (bases) for the denials would be a highly burdensome undertaking.  Case-by-case review may also require further consultation with the adjudicator who rendered the decision. For each case requiring paper A-file review, many variables would impact the time it would take for the A-file to be transferred to an officer for review, including the current location of the A-file and whether it is in use by another DHS component or another USCIS office. Assuming most paper A-files that would be needed for this review are located at USCIS' National Records Center (NRC) and not otherwise currently needed by another DHS component or USCIS office, USCIS estimates that it would take approximately 15 business days from the date the A-file is requested, to the date it is received by an officer for review. USCIS further estimates that manual review of a paper A-file or electronic record to determine the underlying basis for denial, including an assessment of the evidence upon which the officer made the denial determination, would take approximately 20 minutes per case.   Therefore, USCIS estimates that individual case-by-case review of the electronic and/or paper files for over approximately 19,000 DACA requests would take more than approximately 6,300 hours to complete.

9. Individual case-by-case review of the electronic and/or paper copies of the Requests for Evidence (RFEs) sent for over approximately 60,100 initial and renewal DACA requests (approximately 50,600 initial requests received RFEs and approximately 9,500 renewal

requests received RFEs) to determine the basis (bases) for sending the RFE would also be an unduly burdensome undertaking. USCIS estimates that it would take approximately five minutes per case to retrieve and review an electronic copy of the RFE, in order to determine the basis (bases) on which the RFE was sent. To conduct this case-by-case electronic review for approximately 60,100 requests would take more than approximately 5,008 hours to complete. Not all RFEs are available for review electronically, therefore the time required to complete this task would increase significantly depending on the number of physical A-files that would need to be retrieved and reviewed.

10. A response to Part 3, Question 4 on the Form I-821D is not required in order for USCIS to accept and process the Form I-821D. USCIS officers review the evidence submitted with the request to determine the requestor's status on June 15, 2012. A DACA requestor may have left the response to Part 3, Question 4 blank, handwritten a response to the question, or selected one of three standard responses available in a dropdown box that is available when completing the electronic PDF version of the Form I-821D. The three standard responses that a DACA requestor may select in the dropdown box for Part 3, Question 4 are: "Status Expired," "Parole Expired," or "No Lawful Status". Therefore, an electronic Form I-821D record in either CLAIMS 3 or ELIS may have a blank response for this question, or the response entered by the requestor on the Form I-821D may not have been in a format that was recordable electronically given USCIS electronic formatting limitations. Additionally, CLAIMS 3 does not electronically capture the standard, dropdown, responses to Part 3, Question 4, on the Form I-821D, and ELIS does not capture this information in a complete manner. Accordingly, individual, case-by-case review would be necessary to obtain this information.

11. Individual case-by-case review of ELIS records, an electronic copy of the Form I-821D, or the original paper version of the Form I-821D if an electronic copy is not available, for over approximately 156,000 requests to determine which of the three standard dropdown responses to Part 3, Question 4 is applicable to the requestor for ELIS and CLAIMS 3 cases, and the response to Part 3, Question 5a for CLAIMS 3 cases, would take approximately 10 minutes per case, for a total of approximately 26,000 hours. For any cases that require paper review of the original Form I-821D, USCIS estimates that it would take approximately 15 days for an officer to receive the A-file for review after it is requested, assuming the A-file is located at the NRC and not otherwise currently needed by another DHS component or USCIS office.

12. USCIS databases do not electronically capture the underlying statutory basis for which an individual is eligible for adjustment of status to lawful permanent residence in a manner that can be systematically obtained.

13. USCIS estimates that individual case-by-case review of the electronic and/or paper records of more than approximately 7,000 individuals to determine the underlying statutory eligibility basis for adjustment of status to lawful permanent residence would take approximately five minutes per case, for a total of approximately 583 hours to complete. While it is possible some of the records for these cases have been digitized and therefore the records could be requested and obtained electronically for review quickly, additional time would be required to obtain the paper A-file for cases that have not been digitized. For paper A-files that need to be transferred to an officer for review, USCIS estimates that it would take approximately 15 days for an officer to receive the A-file after it is requested, assuming the A-file is located at the NRC and not otherwise currently needed by another DHS component or USCIS office.

14. Individual case-by-case review of electronic or paper records would require the diversion of officers and employees from other mission critical work. To the extent officers would need to review certain paper records, the files would need to be located and transferred, if even possible in every case, to the officer, which may take considerable time as such files are frequently in use by other DHS officers, such as U.S. Immigration and Customs Enforcement (ICE) trial attorneys in removal proceedings.

15. Many of the officers who would have to manually review the electronic and paper records on each case to determine the reasons for denial, RFE, or the responses selected on the Form I-821D to Part 3, Question 4 and 5a, would likely need to be diverted from reviewing, processing, and adjudicating DACA requests or immigration benefit requests, including potentially the review and resolution of background check hits and/or other security vetting procedures. Those ongoing operations would be significantly and detrimentally affected if adjudicators were diverted to work on this burdensome discovery.

**Burden of Document Collection**

16. USCIS has identified more than approximately 65 potential non-attorney custodians throughout the agency in numerous components and directorates, including Service Center Operations (SCOPS), the Office of Intake and Document Production (OIDP), the Fraud Detection and National Security Directorate (FDNS), the Field Office Directorate (FOD), the Office of Policy & Strategy (OP&S), the Office of Public Affairs (OPA),  the Office of Management Executive Secretariat (Exec Sec), the External Affairs Directorate (EXA), and the Office of Legislative and Intergovernmental Affairs (OLIA).  USCIS has identified an additional approximately 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel.  USCIS has also identified at least 12 potential

custodians who are no longer employees of USCIS, approximately 8 of whom were former agency counsel.

17. Due to multiple unknown variables involved, the USCIS Office of Information Technology (OIT) is unable to provide a reliable estimate of the number of hours it would take to conduct a comprehensive search and collection of potentially responsive email records of current and former USCIS employees. This type of comprehensive collection requires, at a minimum, the following steps:

   Step 1: Searching of user archives using search terms and six-year data range. In order to search from 2012 to 2018 requires OIT to query every user archive for base searches to ensure the most complete results;

   Step 2: Accepting the results;

   Step 3: Deduplication and exporting the results to a server;

   Step 4: Transferring the files from the initial server to a forensic server;

   Step 5: Replicating the files to a second forensic server;

   Step 6: Replicating the files onto an encrypted DOJ hard drive.

18. OIT estimates that Step 1 could take approximately 6 to 8 hours per custodian to complete, due to the number of archives that would need to be searched to cover the six year time frame. In order not to inadvertently exclude potentially responsive documents, the keywords selected for searching emails would be so broad, *e.g.,* "DACA" or "deferred action," that they would likely result in an enormous volume in the hundreds of thousands of documents. Due to server limitations, OIT can run no more than 4 custodian searches simultaneously. Accordingly, OIT estimates that it would take approximately 204 to 272 hours to complete Step 1 for 136 custodians.

7

19. The time estimate for completing Step 2 is impossible to reliably determine due to the unknown volume of results.  At a minimum, OIT estimates that accepting the results could take approximately an hour per search, or approximately 136 hours for 136 custodians.

20. Likewise, the time estimate for completing Step 3 is impossible to reliably determine.   Due to software limitations, OIT can export no more than four sets of files at a time across the entire application.  Files are queued for export on a first in, first out basis, so if exports are already being run for other cases, the files for this case would be placed at the end of the queue, and therefore the exporting process for this case would be slowed significantly depending on the volume of files queued for export in other cases. A high volume of exports for this case would likewise significantly negatively impact OIT's ability to effectively comply with discovery requests in other USCIS litigation. Due to the large potential archive list, broad date range, and possible number of duplicates, OIT estimates that Step 3 would take approximately 1.5 hours per custodian to complete, or approximately 204 hours for 136 custodians.

21. It is also impossible to reliably estimate the time burden for completing Steps 4 through 6 as the burden entirely depends on the number of file results that remain after deduplication. Each transfer and replication step takes approximately 15 minutes per 1.5 GB to complete. If only 1.5 GB of email data per custodian remained after deduplication, it would take approximately 45 minutes per custodian to complete Steps 4 through 6, or approximately 102 hours for 136 custodians.  However, in light of the six year date range of the discovery requests and the broad search terms that would need to be used to conduct the search, 1.5GB is a very low benchmark for this calculation. It is likely that many custodians would have three to four times as much data to be transferred.

22. This overall estimate of approximately 493 to 561 hours to complete email searches and data transfers for 136 custodians is an exceedingly low estimate that assumes near perfect technological processing at every step. Due to the high likelihood that custodians would have significantly more data to be transferred than the 1.5GB benchmark used above, as well as the high likelihood that data transfer speed would not be perfect, it is likely that the total time required to complete a search, collection, and transfer of this magnitude and complexity would be at least three to four times the number of hours indicated above.

23. Additionally, USCIS is not able to recover with 100% accuracy all emails that were sent or received prior to August 16, 2014. Prior to this date, emails were maintained in individual user records, rather than through journaling on a server. Therefore, emails sent or received prior to August 16, 2014, which were deleted by an individual user, may be unrecoverable. In limited circumstances, deleted emails sent or received prior to August 16, 2016, may be recoverable if captured in the individual's archive or in another user's archive, but it can be very burdensome and time consuming to retrieve emails from individual user archives depending on where the archives are located. Deleted emails sent or received prior to August 16, 2016, may also be recoverable if captured on USCIS email backup tapes before the email was deleted, however the process to restore back-up tapes is unduly burdensome, expensive, and would take information technology staff resources away from their core mission. Accessing these emails would require approximately 250 to 575 hours of active work per email account, plus additional time in transit from the storage site to the work site.

24. Documents only maintained locally on a former employee's hard drive cannot be recovered if the computer has been reimaged and reissued to another user. Documents maintained on a former employee's share drive may be recovered if the share drive data was maintained on

9

the local office's server.  The burden of retrieving data from both current and former employees' personal share drive and/or local drive, and transferring this data to the Department of Justice (DOJ), and the burden of reviewing these records for responsiveness and privileges, depends entirely on the amount of data obtained.  Due to limitations in OIT's ability to search within all types of data files for keywords, entire contents of folders containing any files with relevant keywords would generally need to be extracted.  This method typically results in significantly large amounts of data to be obtained, transferred to DOJ, and reviewed for responsiveness and privileges.  OIT estimates that it would take a minimum of 2 hours to complete each data transfer per custodian to USCIS' forensic server, another 2 hours per custodian to transfer the data to the second forensic server, and an additional 2 hours per custodian to transfer the data to an encrypted DOJ hard drive.  Four searches and collections of this non-email data can be run simultaneously, therefore, OIT estimates that it would take a minimum of approximately 204 hours to complete this collection and transfer for 136 custodians.  This estimate would increase if custodians stored potentially responsive records in multiple locations, such that OIT would need to extract folders from both a personal share drive and a local drive.

25. If each of the approximately 65 non-agency counsel custodians were to individually attempt to conduct comprehensive searches of his or her own emails and non-email records to locate all responsive records, USCIS estimates that it would take more than approximately 6,000 hours combined just to locate and segregate the responsive records, not including the time for transferring large amounts of data to the Department of Justice (DOJ), and the time for review of the documents for responsiveness and privileges by agency counsel.  This time burden would increase significantly if an additional approximately 59 agency counsel

custodians were to individually attempt to conduct comprehensive email searches of his or her own emails and non-email records to locate all responsive records. Individual searches by each custodian would require the diversion of officers and employees from other mission critical work.

26. All the time burden estimates regarding email and non-email record collection would increase if additional custodians are identified.

I certify, to the best of my knowledge and belief that content in this declaration is true and correct.

Executed this 6th day of July of 2018.

_____
Tracy L. Renaud