# EXHIBIT 7



The Latino Legal Voice for Civil Rights in America.

**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta**
**Program Office**
500 W. Lanier Ave.
Suite 908
Fayetteville, GA 30215
*Tel:* 470.878.0785

**Chicago**
**Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*Tel:* 312.427.0701
*Fax:* 312.427.0691

**Los Angeles**
**Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento**
**Program Office**
1512 14th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio**
**Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*Tel:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.**
**Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

December 19, 2018

Jeffrey S. Robins
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, DC  20044

   RE: *Texas, et al. v. USA, et al.*, No. 1:18-cv-00068

Dear Mr. Robins:

   I write on behalf of Defendant-Intervenors Karla Perez, *et al*. ("Defendant-Intervenors") regarding Defendants' Objections and Responses to Defendant-Intervenors' Third Set of Discovery Requests and accompanying declaration of Tracy L. Renaud, dated July 6, 2018.

   Based on our review of Defendants' objections and responses and Ms. Renaud's declaration, and in light of the Court's denial of Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, Defendants' objections and responses to Interrogatories Nos. 3, 4, and 9 through 14 and Requests for Production Nos. 5 through 9 are insufficient, and Defendants' production requires supplementation. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party . . . who has responded to an interrogatory[ or] request for production . . . must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect.").

   Attached please find Defendant-Intervenors' detailed description of the deficiencies of each response and objection offered by Defendants as to these discovery requests. *See* Attachments A and B. Please provide amended answers to Interrogatories Nos. 3, 4, and 9 through 14. As more fully explained in Attachment B, Defendant-Intervenors also request that Defendants provide a list of suggested search terms and potential custodians in connection with Requests for Production Nos. 5 through 9 so the parties may engage in a good faith attempt to narrow the scope of Defendants' review and Defendants can supplement their production.

Sincerely,

*Alejandra Ávila*

Alejandra Ávila
Staff Attorney

December 19, 2018
Page 2 of 23

## ATTACHMENT A
### DEFICIENCIES IN DEFENDANTS' OBJECTIONS AND RESPONSES TO DEFENDANT-INTERVENORS' INTERROGATORIES

INTERROGATORIES NOS. 3 & 4:

- These interrogatories asked Defendants to identify the number of initial and renewal DACA applications (also known as requests) received by Defendants from each Plaintiff for each month during the period of June 2012 to June 2018, and to identify, of those numbers, the number of DACA applications approved, denied, and rejected by Defendants.

- Defendants sufficiently responded to these interrogatories as to some Plaintiffs; however, Defendants answers are incomplete and require supplementation. Specifically, Defendants only provided information related to the states of Texas, Alabama, Arkansas, Louisiana, Nebraska, South Carolina, and West Virginia, but did not provide any information related to the states of Mississippi and Maine.

- Defendant-Intervenors served their Third Set of Discovery Requests to Defendants on June 10, 2018. At the time, the only plaintiffs in the case were the states of Texas, Alabama, Arkansas, Louisiana, Nebraska, South Carolina, and West Virginia. *See* ECF 1. However, Mississippi Governor Phil Bryant and Maine Governor Paul R. LePage joined the case on June 25, 2018, *see* ECF 104, well before Defendants served their answers to Defendant-Intervenors' interrogatories on July 6, 2018. Defendant-Intervenors' discovery requests refer to "Plaintiff States" broadly, and define the term as "each of the named Plaintiff states in this case, and any other persons acting or purporting to act on its behalf." *See* Def.-Int. Third Set of Discovery Requests to Defendants at 3. Nonetheless, Defendants responded to Defendant-Intervenors' Third Set of Discovery Requests by interpreting the requests as applicable only to Texas, Alabama, Arkansas, Louisiana, Nebraska, South Carolina, and West Virginia. *See* Defendants' Answers to Interrogatories Nos. 3 & 4 (not providing an answer as to Mississippi or Maine). Defendant-Intervenors request that Defendants supplement their answers to Interrogatories 3 & 4 to include responsive information about Mississippi and Maine. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party . . . who has responded to an interrogatory[ or] request for production  . . . must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect.").

INTERROGATORIES NOS. 9 & 10:

- These interrogatories asked Defendants to identify the number of initial and renewal DACA applications USCIS has denied from each Plaintiff during the period of June 2012 to June 2018 and to identify from that number (1) the amount of DACA applications denied at least in part because the applicant was a suspected gang member, (2) the amount of DACA applications denied at least in part because the applicant posed a threat

to national security or public safety, and (3) the amount of DACA applications denied after the adjudicator nonetheless determined the applicant met the five criteria outlined in the 2012 DACA memorandum.

- Defendants provided an incomplete answer to Interrogatory No. 9 by stating that based on "an informal inquiry," Defendants "are aware of several initial DACA requests that were denied because the requestor either made false statements or committed fraud in other immigration or non-immigration government contexts, despite the requestor meeting the DACA guidelines . . . ." *See* Defendants' Objections and Responses, p. 11. Defendants did not answer Interrogatory No. 10; instead, Defendants provided charts with the number of initial and renewal DACA requests denied by month by each Plaintiff. These evasive and incomplete answers amount to a failure to respond. *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to these interrogatories on the basis that they are inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *See* Defendants' Objections and Responses, pp. 10, 12. In light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

- Defendants further objected on the basis that these interrogatories are "not relevant." *See* Defendants' Objections and Responses, pp. 10, 12. However, Defendants do not explain why the requests are irrelevant, and this conclusory objection is insufficient. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted). These requests squarely address Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action. *See, e.g.*, ECF 104 ¶¶ 295-300. In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development. *See, e.g.*, ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . [and b]ased on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also objected to these interrogatories on the basis that they are burdensome, overbroad, and not proportional to the needs of the case. *See* Defendants' Objections and Responses, p. 10, 12. Specifically, Defendants allege that although "USCIS maintains electronic and/or paper copies of its initial and renewal DACA decisions . . . USCIS's case management systems do not electronically capture the underlying basis (bases) for denial of an initial or renewal DACA request . . . in a manner that can be systemically and reliable obtained." 7-6-18 Renaud Declaration ¶ 7. Therefore, Defendants would have to "conduct a manual, case-by-case review of the electronic and/or paper files" of

every initial and renewal DACA request from each Plaintiff, a total of approximately 19,000 DACA requests (17,000 initial requests and 2,000 renewal requests). Defendants' Objections and Responses pp. 10-13; 7-6-18 Renaud Declaration ¶ 8. Defendants calculate that it would take approximately 20 minutes to conduct a "manual review of [each] paper A-file or electronic record" and, therefore, it would take approximately 6,300 hours to complete the review of 19,000 DACA requests. 7-6-18 Renaud Declaration ¶ 8. Finally, Defendants claim the "[c]ase-by-case review may also require further consultation with the adjudicator who rendered the decision." *Id.*

- Defendants' objection as to any purported burden does not justify their nonresponsiveness. ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request. *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues"); *see also Magnolia Point Minerals, LLC v. Chesapeake Louisiana, LP*, No. 11-CV-0854, 2015 WL 545988, at *1 (W.D. La. Feb. 10, 2015) (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 262 (D. Del. 1992) (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate request); *Fagan v. D.C.*, 136 F.R.D. 5, 7 (D.D.C. 1991) ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . . Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citations omitted). This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses. In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants. Therefore, to the extent Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case. ***Second***, Defendant-Intervenors' interrogatories are narrowly tailored in scope; they only seek information from named Plaintiffs, provide a limited timeframe, and address the core issue of discretion in the DACA adjudication process. ***Third***, the interrogatories seek information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case. Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments. *See Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 328 (D.N.J. 2015) (holding that it is unacceptable

December 19, 2018
Page 5 of 23

for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case) (collecting cases).

- Defendants also object to the interrogatories "to the extent" they are vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation.  *See* Defendants' Objections and Responses, p. 10, 12.  Defendants specifically object that the term "the five criteria outlined in the 2012 DACA memo" is vague, but this phrase is not ambiguous, and Defendants correctly interpret the term as "the DACA guidelines outlined in the bulleted points on the first page of the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012."  *Id.*, p. 11.

## INTERROGATORIES NOS. 11 & 12:

- These interrogatories asked Defendants to identify the number of initial and renewal DACA applications USCIS has accepted and subsequently issued Requests for Evidence (RFEs) from each Plaintiff for each month during the period of June 2012 to June 2018, and to identify from that number the number of RFEs related to (1) whether the applicant was under the age of 31 as of June 15, 2012; (2) whether the applicant came to the United States before reaching his or her 16th birthday; (3) whether the applicant has continuously resided in the United States since June 15, 2007, up to the time of application; (4) whether the applicant was physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action; (5) whether the applicant had no lawful status on June 15, 2012; (6) whether the applicant was currently in school, graduated or obtained a certificate of completion from high school, obtained a general education development (GED) certificate, or was an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and (6) whether the applicant had not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and did not otherwise pose a threat to national security or public safety.

- Defendants did not answer Interrogatories Nos. 11 and 12.  Defendants only provided charts showing the number of RFEs issued by USCIS by month by Plaintiff for the period of August 15, 2012 through June 22, 2018.  These evasive and incomplete answers amount to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to these interrogatories on the basis that they are inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See* Defendants' Objections and Responses, pp. 14, 16.  In light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that these interrogatories are "not relevant."  *See*

December 19, 2018
Page 6 of 23

Defendants' Objections and Responses, pp. 14, 16.  However, Defendants do not explain why the interrogatories are irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  These interrogatories squarely address Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action.  *See, e.g.,* ECF 104 ¶¶ 295-300.  In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development.  *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . [and b]ased on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also objected to these interrogatories on the basis that they are burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, pp. 14, 16.  Specifically, Defendants allege that although "USCIS maintains electronic and/or paper copies of its initial and renewal DACA decisions . . . USCIS's case management systems do not electronically capture . . . the basis (bases) on which a Request for Evidence (RFE) was sent, in a manner that can be systemically and reliable obtained."  7-6-18 Renaud Declaration ¶ 7.  Therefore, Defendants would have to "conduct a manual, case-by-case review of the electronic and/or paper files" of the RFEs sent for every initial and renewal DACA request from each Plaintiff, a total of approximately 60,100 DACA requests (50,600 initial requests and 9,500 renewal requests).  Defendants' Objections and Responses, pp. 14-17; 7-6-18 Renaud Declaration ¶ 9.  Defendants calculate that it would take approximately 5 minutes to retrieve and review an electronic copy of an RFE and, therefore, it would take approximately 5,008 hours to complete the review.  7-6-18 Renaud Declaration ¶ 9.  Defendants claim "the time required to complete this task would increase significantly depending on the number of physical A-files that would need to be retrieved and reviewed."  *Id.*

- Defendants' objection as to any purported burden does not justify their nonresponsiveness.  ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery); *see also Magnolia Point Minerals, LLC,* 2015 WL 545988, at *1 (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Sinibaldi*, 821 F. Supp. at 262 (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate document request); *Fagan*, 136 F.R.D. at 7 ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . .

December 19, 2018
Page 7 of 23

Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citations omitted).  This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses.  In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants.  Therefore, to the extent Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case.  ***Second***, Defendant-Intervenors' interrogatories are narrowly tailored in scope; they only seek information from named Plaintiffs, provide a limited timeframe, and address the core issue of discretion in the DACA adjudication process.  ***Third***, the interrogatories seek information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case.  Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments.  *See Costantino*, 152 F. Supp. 3d at 328 (holding that it is unacceptable for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case).

- Defendants also object to the interrogatories "to the extent" they are vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, the requests are not vague or ambiguous.  Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree this interpretation is proper.  *See* Defendants' Objections and Responses, p. 14, 16.

INTERROGATORY NO. 13:

- This interrogatory asked Defendants to identify "the number of approved, initial DACA applications submitted by individuals who indicated on their I-821D, in response to Part 3. Question 4., that their immigration status on June 15, 2012 was 'Status Expired' or 'Parole Expired,' and who answered in the affirmative in response to Part 3. Question 5.a. ('Were you EVER issued an Arrival-Departure Record'), for each Plaintiff State for each month during the period of June 2012 to June 2018."

- Defendants provided the following incomplete answer to Interrogatory No. 13:  "Federal Defendants will provide a partial response regarding the number of approved initial DACA requests where 'Yes' was marked in Part 3, Question 5a. on the Form I-821D, for cases processed in USCIS' Electronic Immigration System (ELIS) . . . ."  *See* Defendants' Objections and Responses, p. 18.  Otherwise, Defendants did not answer Interrogatory No. 13.  This evasive and incomplete answer amounts to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to this interrogatory on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See*

December 19, 2018
Page 8 of 23

Defendants' Objections and Responses, p. 18.  In light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that the interrogatory is "not relevant."  *See* Defendants' Objections and Responses, p. 18.  However, Defendants do not explain why the interrogatory is irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  This interrogatory is relevant to Plaintiffs' claim that DACA confers "a path to citizenship on some DACA recipients" by granting DACA recipients eligibility for advance parole, which in turn "has resulted in some of those [DACA recipients] obtaining adjustment to [lawful permanent resident (LPR)] status, for which they would otherwise be ineligible."  *See* ECF 104 ¶¶ 84-122.

- Defendants also objected to this interrogatory on the ground that it is burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 18.  Specifically, Defendants allege that "USCIS databases do not electronically capture, in a reliable, readily retrievable, systematic and complete manner . . . in the ordinary course of business" the responses to Part 3, Question 4 on the Form I-821D or the responses to Part 3, Question 5a on the Form I-821D for DACA requests "that were processed in USCIS' Computer Linked Application Information Management System (CLAIMS 3) . . . an electronic case management system."  *See* Defendants' Objections and Responses, p. 18; 7-6-18 Renaud Declaration ¶¶ 10-11.  Therefore, USCIS would have to "conduct a manual, case-by-case review" of ELIS records, an electronic copy of the Form I-821D, or the original paper version of the Form I-821D if an electronic copy is not available, for every approved initial DACA request for each Plaintiff (approximately 156,000 requests).  *Id.*  Defendants calculate that it would take approximately 10 minutes to review each request, for a total of approximately 26,000 hours.  7-6-18 Renaud Declaration ¶ 11.

- Defendants' objection as to any purported burden does not justify their nonresponsiveness.  ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery); *see also Magnolia Point Minerals, LLC,* 2015 WL 545988, at *1 (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Sinibaldi*, 821 F. Supp. at 262 (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate document request); *Fagan*, 136 F.R.D. at 7 ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . . Plaintiffs should not suffer if the information is not easily accessible because defendants

December 19, 2018
Page 9 of 23

have an inefficient filing system.") (citations omitted).  This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses.  In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants.  Therefore, to the extent Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case.  ***Second***, Defendant-Intervenors' interrogatory is narrowly tailored in scope; it only seeks information from named Plaintiffs, provides a limited timeframe, and addresses the core issue of advance parole and its purported conferral of a "path to citizenship" on DACA recipients.  ***Third***, the interrogatory seeks information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case.  Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments.  *See Costantino*, 152 F. Supp. 3d at 328 (holding that it is unacceptable for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case) (collecting cases).

- Defendants also object to this interrogatory "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree this interpretation is proper.  *See* Defendants' Objections and Responses, p. 17.

INTERROGATORY NO. 14:

- This interrogatory asked Defendants to identify the number of DACA recipients who adjusted their status to lawful permanent resident, for each Plaintiff for each month during the period of June 2012 to June 2018, and identify among that number (a) the number of DACA recipients who adjusted under 8 U.S.C. 1255(i); and (b) the number of DACA recipients who adjusted under 8 U.S.C. 1255(a).

- Defendants provided an incomplete answer to Interrogatory No. 14 by producing a chart showing the number of DACA recipients who adjusted their status by date of adjustment and by Plaintiff, for the period of August 15, 2012 through June 22, 2018.  *See* Defendants' Objections and Responses, p. 20.  This evasive and incomplete answer amounts to a failure to respond.  *See* Fed. R. Civ. P. 37(a)(4).

- Defendants objected to this interrogatory on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *See* Defendants' Objections and Responses, p. 19.  However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that this interrogatory is "not relevant." *See* Defendants' Objections and Responses, p. 19. However, Defendants do not explain why the interrogatory is not irrelevant, and this conclusory objection is insufficient. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted). This interrogatory is relevant to Plaintiffs' claim that DACA confers "a path to citizenship on some DACA recipients" by granting DACA recipients eligibility for advance parole, which in turn "has resulted in some of those [DACA recipients] obtaining adjustment to LPR status, for which they would otherwise be ineligible." *See* ECF 104 ¶¶ 84-122.

- Defendants also objected on the basis that this interrogatory is burdensome, overbroad, and not proportional to the needs of the case. *See* Defendants' Objections and Responses, p. 19. Specifically, Defendants claim that "USCIS databases do not electronically capture, in a readily retrievable, systematic manner," whether an individual adjusted his or her status to lawful permanent resident under 8 U.S.C. §§ 1255(a), (i) in the ordinary course of business; therefore, USCIS would have to conduct "a manual, case-by-case review of electronic and/or paper files of every DACA recipient who adjusted status to lawful permanent residence during the specified period for each Plaintiff State." *See* Defendants Objections and Responses, p. 19; 7-6-18 Renaud Declaration ¶¶ 12-13. Defendants estimate there are approximately 7,000 DACA recipients who have adjusted status to lawful permanent resident during the specified period for each Plaintiff, and it would take approximately 5 minutes to review each case, for a total of approximately 583 hours. 7-6-18 Renaud Declaration ¶ 13. Defendants specify that "it is possible some of the records for these cases have been digitized and therefore the records could be requested and obtained electronically for review quickly." *Id.*

- Defendants' objection as to any purported burden does not justify their nonresponsiveness. ***First***, that review of an identified group of documents may be time-consuming or expensive does not, standing alone, absolve Defendants from producing responsive documents to an otherwise appropriate request. *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery); *see also Magnolia Point Minerals, LLC,* 2015 WL 545988, at *1 (not an undue burden to require producing party to identify leases containing certain provisions at issue, holding that "[i]t may be time consuming to search [the producing party's] databases, but [it] is not an undue burden under the circumstances of this case"); *Sinibaldi*, 821 F. Supp. at 262 (in complex civil matter, finding that argument that production would entail significant expenses was not a proper basis for refusing to comply with an otherwise appropriate document request); *Fagan*, 136 F.R.D. at 7 ("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden . . . Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system.") (citations omitted). This action is a complex case with potential nationwide repercussions where all parties face the burden of investing significant resources in support of their claims and defenses. In addition, the information Defendant-Intervenors seek, which is necessary to resolve the factual disputes in this case, is in the sole custody and control of Defendants. Therefore, to the extent

December 19, 2018
Page 11 of 23

Defendants can claim any undue burden, it is not outweighed by the likely benefit of a complete production, and the requests are proportional to the needs of the case.  **Second**, Defendant-Intervenors' interrogatory is narrowly tailored in scope; it only seeks information from named Plaintiffs, provides a limited timeframe, and addresses the core issue of advance parole and its purported conferral of a "path to citizenship" on DACA recipients.  **Third**, the interrogatory seeks information Defendants presumably already gathered, organized, or reviewed, or will need to gather, organize, and review, in connection with their defense of this case.  Defendants cannot have it both ways by claiming a genuine case and controversy exists between Plaintiffs and Defendants while simultaneously alleging it is burdensome to collect the information needed to defend against Plaintiffs' arguments.  *See Costantino*, 152 F. Supp. 3d at 328 (holding that it is unacceptable for a defendant to avoid legitimate discovery by claiming unreasonable burden because it does not devote reasonable resources to defending a case) (collecting cases).

December 19, 2018
Page 12 of 23

## ATTACHMENT B
## DEFICIENCIES IN DEFENDANTS' OBJECTIONS AND RESPONSES TO
## DEFENDANT-INTERVENORS' REQUESTS FOR PRODUCTION

<u>REQUEST FOR PRODUCTION NO. 5:</u>

- This request asked Defendants to produce documents relating to guidelines followed by DHS to evaluate, process, and adjudicate DACA applications, including, but not limited to: (1) internal agency documents, memoranda, and communications that set forth any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications; (2) training materials provided to agents or employees related to DACA evaluations and adjudications; and (3) changes following January 20, 2017 in any guidance, rules, or procedures that agents and employees follow when they evaluate, process, and adjudicate DACA applications.

- Defendant-Intervenors cannot discern whether Defendants have provided a full and complete production responsive to this request.  In their production cover letters dated July 6, 2018 and July 13, 2018, Defendants represented that they were enclosing a three-volume production with bates numbers DEF-00000001-00008159.  Defendants also provided privilege logs for each volume.  However, Defendants did not label the documents as responsive to each request for production.  In their objections and responses, Defendants also broadly reference that "USCIS is prepared to provide [certain documents]."  *See* Defendants' Objections and Responses, p. 23.  However, they do not indicate whether any documents responsive to Request for Production No. 5 were indeed produced or withheld.  Therefore, Defendant-Intervenors are unable to confirm whether Defendants produced a complete production responsive to Request for Production No. 5.  Defendant-Intervenors request that Defendants amend their response to indicate whether any documents were produced in response to this request, whether responsive documents were withheld and the basis for withholding them, and whether additional records will be produced.  *See Alcala v. Texas Webb Cty.*, No. CV L-08-0128, 2009 WL 10694159, at *4 (S.D. Tex. Dec. 7, 2009) (general reference to "all documents produced" is an insufficient response); *see also Doe ex rel. Doe v. White*, No. 08-CV-1287, 2009 WL 3098724, at *2 n. 4 (C.D. Ill. Sept. 22, 2009) ("Plaintiffs' blanket reference to everything previously produced would not satisfy Rule 34"); *F.D.I.C. v. Appleton*, No. CV 11-476-JAK PLAX, 2012 WL 10245383, at *4 (C.D. Cal. Nov. 29, 2012) (holding it is not requestor's obligation to identify documents they believe are missing; rather, it is the producing party's duty to represent that all documents have been produced).  In the absence of an amendment to the response by Defendants, Defendant-Intervenors assume no responsive documents have been produced, particularly in light of Defendants' claim that conducting a search of responsive records is burdensome, as noted below.

- Defendants objected to this request on the basis that it is burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 23.  Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges."

December 19, 2018
Page 13 of 23

*Id*. However, Defendants do not identify or propose any search terms in connection with this request. *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action"). Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS." *See* Defendants' Objections and Responses, p. 23. Defendants also object to having to conduct a search for records "of DHS and other DHS component counsel . . . as such documents contain advice and other information that is privileged." *Id*. In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS. 7-6-18 Renaud Declaration ¶ 16. However, Defendants do not identify potential custodians specific to Request for Production No. 5. Defendants also represent that ICE "contacted several individuals currently employed by ICE and determined that they have no documents responsive to Request No. 5" and "[t]o the extent that responsive documents do exist, they would be among the emails of former ICE employees." *See* Defendants' Objections and Responses, pp. 23-24. A non-exhaustive inquiry of current ICE employees does not allow Defendant-Intervenors to confirm whether there are any potential custodians at ICE who are current government employees, and Defendants do not identify the scope of potential custodians from ICE who are former ICE employees. Defendants also object "to the extent" that the request seeks drafts or documents in their native form. *Id.*, p. 23.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness. *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues"). This request is proportional to the needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court. *Id*. However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians. Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review. Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants also objected to this request on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *See* Defendants' Objections and Responses, p. 22. However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

December 19, 2018
Page 14 of 23

- Defendants further objected on the basis that this request is "not relevant." *See* Defendants' Objections and Responses, p. 23.  However, Defendants do not explain why this request is irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  The request is relevant to Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action.  *See, e.g.,* ECF 104 ¶¶ 295-300.  In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development. *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . Based on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also objected to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree this is a proper interpretation.  *See* Defendants' Objections and Responses, p. 22.

REQUEST FOR PRODUCTION NO. 6:

- This request asked Defendants to produce documents relating to the process by which DHS evaluates, processes, and adjudicates DACA applications, including but not limited to: (1) under what circumstances a DACA application is rejected, denied, or approved; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of DACA applications; (3) the procedure(s) employed by agents and employees who work in the evaluation and adjudication of DACA applications; and (4) changes in the process for evaluating, processing, and adjudicating DACA applications following January 20, 2017.

- Defendant-Intervenors cannot discern whether Defendants have provided a full and complete production responsive to this request.  In their production cover letters dated July 6, 2018 and July 13, 2018, Defendants represented that they were enclosing a three-volume production with bates numbers DEF-00000001-00008159.  Defendants also provided privilege logs for each volume.  However, Defendants did not label the documents as responsive to each request for production.  In their objections and responses, Defendants also broadly reference that "USCIS is prepared to provide [certain documents]."  *See* Defendants' Objections and Responses, p. 25.  However, they do not indicate whether any documents responsive to Request for Production No. 6 were indeed produced or withheld.  Therefore, Defendant-Intervenors are unable to confirm whether Defendants produced a complete production responsive to Request for Production No. 6. Defendant-Intervenors request that Defendants amend their response to indicate whether

any documents were produced in response to this request, whether responsive documents were withheld and the basis for withholding them, and whether additional records will be produced.  *See Alcala*, 2009 WL 10694159, at *4 (general reference to "all documents produced" is an insufficient response); *see also White*, 2009 WL 3098724, at *2 n. 4 ("Plaintiffs' blanket reference to everything previously produced would not satisfy Rule 34"); *Appleton*, 2012 WL 10245383, at *4 (holding it is not requestor's obligation to identify documents they believe are missing; rather, it is the producing party's duty to represent that all documents have been produced).  In the absence of a response by Defendants, Defendant-Intervenors assume no responsive documents have been produced, particularly in light of Defendants' claim that conducting a search of responsive records is burdensome, as noted below.

- Defendants objected on the basis that this request is burdensome, overbroad, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 25. Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges." *Id.*, p. 26.  However, Defendants do not identify or propose any search terms in connection with this request.  *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action").  Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS."  *See* Defendants' Objections and Responses, p. 26.  Defendants also object to having to conduct a search for records "of DHS and DHS component counsel . . . as such documents contain advice and other information that is privileged." *Id.*  In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS.  7-6-18 Renaud Declaration ¶ 16.  However, Defendants do not identify potential custodians specific to Request for Production No. 6. Defendants also represent that "ICE contacted several individuals currently employed by ICE and determined that they have no documents responsive to Request No. 6" and "[t]o the extent that responsive documents do exist, they would be among the emails of former ICE employees."  *See* Defendants' Objections and Responses, p. 26.  A non-exhaustive inquiry of current ICE employees does not allow Defendant-Intervenors to confirm whether there are any potential custodians at ICE who are current government employees, and Defendants do not identify the scope of potential custodians from ICE who are former ICE employees.  Defendants also object "to the extent" that the request seeks drafts or documents in their native form.  *Id.*, p. 25.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the

importance of the discovery in resolving the issues"). This request is proportional to the needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court. *Id.* However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians. Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review. Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants objected on the basis that the request is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *See* Defendants' Objections and Responses, p. 25. However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant." *See* Defendants' Objections and Responses, p. 25. However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient. *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted). The request is relevant to Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests, an issue that is relevant to Plaintiffs' statutory and constitutional causes of action. *See, e.g.,* ECF 104 ¶¶ 295-300. In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development. *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . Based on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation. *See* Defendants' Objections and Responses, p. 24. Defendants specifically object that the use of the word "and" in the phrase "who work in the evaluation and adjudication of DACA applications" is ambiguous and confusing because Defendants do not know whether the phrase means an employee or agent must do both actions (evaluation *and* adjudication) or be involved in only one action. *Id.*, pp. 24-25. However, Defendant-Intervenors' request provides a specific definition and instructs that the word "and" must be "construed either conjunctively or disjunctively as required by the context to bring

December 19, 2018
Page 17 of 23

within the scope of the request any document that might be deemed outside its scope by another construction." *See* Def-Int. Third Set of Discovery Requests to Defendants at 3. Thus, there is no ambiguity and the phrase must be interpreted to mean an agent or employee must be involved in at least one of the two actions, evaluation or adjudication.

- Finally, Defendants object "to the extent that it is unclear what documents Defendant-Intervenor seeks that are different from documents sought in RFP 5, and to the extent that RFPs overlap, or that RFP 6 seeks documents that are duplicative of those sought in RFP 5." *See* Defendants' Objections and Responses, p. 24. Defendants do not specify to what extent they believe each request is duplicative of each other request, and Defendant-Intervenors cannot discern whether responsive records to either request have been produced; therefore, this objection is improper. *See Ruiz v. U.S. Protect*, No. 6:07-CV-56, 2008 WL 11395490, at *4 (S.D. Tex. Aug. 29, 2008) (holding that defendant may not argue two requests are duplicative when defendant has failed to respond to either request).

REQUEST FOR PRODUCTION NO. 7(3):

- This request asked Defendants to produce documents showing the number of DACA applications accepted but denied, during the period of June 2012 to June 2018, after the adjudicator determined the applicant met the five criteria in the June 15, 2012 DACA memorandum but was otherwise not a qualifying applicant, including because the applicant posed a threat to national security or public safety, by each Plaintiff, for each month.[1]

- Defendants did not respond to this request. Instead, Defendants generally referred Defendant-Intervenors to three links to USCIS's website "[i]n lieu of providing responsive documents." *See* Defendants' Objections and Responses, p. 28.

- Defendants objected to this request on the basis that it is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *Id*., p. 27. However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant." *See* Defendants' Objections and Responses, p. 27. However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient. *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted). The request is relevant to Plaintiffs' claim that Defendants "rubberstamp" DACA requests and USCIS adjudicators do not exercise discretion when they review and adjudicate DACA requests,

---

[1] Defendant-Intervenors represent that Defendants will have sufficiently responded to Request for Production No. 7(1)-(2) with their responses to Interrogatories Nos. 3 & 4 when and if Defendants supplement their answers to Interrogatories 3 & 4 with information related to Mississippi and Maine, as requested in this letter.

December 19, 2018
Page 18 of 23

an issue that is relevant to Plaintiffs' statutory and constitutional causes of action. *See, e.g.,* ECF 104 ¶¶ 295-300. In addition, the Court noted in its opinion denying Plaintiffs' motion for preliminary injunction that this issue requires further factual development. *See, e.g.,* ECF 319 at 98-102 ("On the record before it, this Court does not find the evidence of discretion by the individuals processing DACA applications to be compelling either way . . . Based on the evidence in the preliminary injunction record, the Court holds the Plaintiff States have not made a 'clear showing' that those processing DACA applications are not free to exercise discretion.").

- Defendants objected on the basis that this request is burdensome, overbroad, and not proportional to the needs of the case. Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges." *See* Defendants' Objections and Responses, p. 28. However, Defendants do not identify or propose any search terms in connection with this request. *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action"). Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS." *See* Defendants' Objections and Responses, p. 28. Defendants also object to having to conduct a search for records "of DHS and DHS component counsel . . . as such documents contain advice and other information that is privileged." *Id.* In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS. 7-6-18 Renaud Declaration ¶ 16. However, Defendants do not identify potential custodians specific to Request for Production No. 7(3). Defendants also object "to the extent" that the request seeks drafts or documents in their native form. *See* Defendants' Objections and Responses, p. 27.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness. *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues"). This request is proportional to the needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court. *Id.* However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians. Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review. Defendant-Intervenors also request that Defendants identify

December 19, 2018
Page 19 of 23

potential custodians specific to this request.

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on [USCIS] common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation. *See* Defendants' Objections and Responses, p. 27. Defendants specifically object that the phrase "the five criteria in the June 15, 2012 DACA memorandum" and the reference to the "June 15, 2012 DACA memorandum" lack specificity. *Id.* Defendants cannot credibly argue references to the memorandum at issue in this case and the guidelines contained therein are ambiguous or vague. Indeed, Defendants interpret the reference to the June 15, 2012 DACA memorandum to mean "the memorandum entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* from former Secretary of Homeland Security, Janet Napolitano, dated June 15, 2012," which is the correct interpretation. *Id.* Defendants also claim the request is vague as to the time period for which it requests documents. *Id.* However, the request specifies a period from June 2012 to June 2018.

- Finally, Defendants object "to the extent" this request seeks information duplicative of any information responsive to Defendant-Intervenors' interrogatories. *Id.* Defendants do not specify which interrogatory they believe is duplicative of this request, and this is not a proper objection. *See Ruiz*, 2008 WL 11395490, at *4 (holding that defendant may not argue a request for production and interrogatory are duplicative when defendant has failed to respond to either request).

REQUEST FOR PRODUCTION NO. 8:

- This request asked Defendants to produce documents relating to process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA, including but not limited to: (1) under what circumstances an application or request is rejected, denied, or accepted; (2) the number and location of agents and employees whose work relates to the evaluation and adjudication of deferred action applications or requests; (3) the procedure(s) employed by agents and employees who work in the evaluation and adjudication of deferred action applications or requests; and (4) any changes in the process by which DHS evaluates and adjudicates applications or requests for deferred action other than DACA since January 20, 2017.

- Defendant-Intervenors cannot discern whether Defendants have provided a full and complete production responsive to this request. In their production cover letters dated July 6, 2018 and July 13, 2018, Defendants represented that they were enclosing a three-volume production with bates numbers DEF-00000001-00008159. Defendants also provided privilege logs for each volume. However, Defendants did not label the documents as responsive to each request for production. In their objections and responses, Defendants also broadly reference "USCIS is prepared to provide [certain documents]" and "[i]n addition to the responsive documents being produced, USCIS respectfully refers Defendant-Intervenors to the following publicly available information

December 19, 2018
Page 20 of 23

. . . ." *See* Defendants' Objections and Responses, p. 30. However, Defendants do not indicate whether any documents responsive to Request for Production No. 8 were indeed produced or withheld in their bates-stamped production. Therefore, Defendant-Intervenors are unable to confirm whether Defendants produced a complete production responsive to Request for Production No. 6. Defendant-Intervenors request that Defendants amend their response to indicate whether any bates-stamped documents were produced in response to this request, whether responsive documents were withheld and the basis for withholding them, and whether additional records will be produced. *See Alcala*, 2009 WL 10694159, at *4 (general reference to "all documents produced" is an insufficient response); *see also White*, 2009 WL 3098724, at *2 n. 4 ("Plaintiffs' blanket reference to everything previously produced would not satisfy Rule 34"); *Appleton*, 2012 WL 10245383, at *4 (holding it is not requestor's obligation to identify documents they believe are missing; rather, it is the producing party's duty to represent that all documents have been produced). In the absence of a response by Defendants, Defendant-Intervenors assume no responsive documents have been produced, particularly in light of Defendants' claim that conducting a search of responsive records is burdensome, as noted below.

- Defendants objected on the basis that this request is burdensome, overbroad, and not proportional to the needs of the case. *See* Defendants' Objections and Responses, p. 29. Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges, or risk being over-inclusive in scope." *Id.*, p. 30. However, Defendants do not identify or propose any search terms in connection with this request. *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action"). Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS." *See* Defendants' Objections and Responses, p. 30. Defendants also object to having to conduct a search for records "of DHS or DHS component counsel . . . as such documents contain advice and other information that is privileged." *Id.* In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS. 7-6-18 Renaud Declaration ¶ 16. However, Defendants do not identify potential custodians specific to Request for Production No. 8. Defendants also object "to the extent" that the request seeks drafts or documents in their native form. *See* Defendants' Objections and Responses, p. 29.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness. *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues"). This request is proportional to the

December 19, 2018
Page 21 of 23

needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court. *Id.* However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians. Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review. Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants objected on the basis that the request is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage. *See* Defendants' Objections and Responses, p. 29. However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection. *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant." *See* Defendants' Objections and Responses, p. 29. However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient. *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted). The request is relevant to establishing similarities between DACA and other grants of deferred action pursuant to the Secretary's authority under the INA, which is relevant to Plaintiffs' statutory claims under the APA.

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded based on "Defendants' common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation. *See* Defendants' Objections and Responses, p. 29. Defendants also claim the request is vague as to the time period for which it requests documents. *Id.* Defendant-Intervenors are amenable to engaging in good faith negotiations as to the timeframe for this request.

REQUEST FOR PRODUCTION NO. 9:

- This request asked Defendants to produce documents relating to the number of DACA applications received, rejected, denied, and approved at each of the five USCIS Service Centers, including but not limited to: (1) the number of initial DACA applications received, rejected, denied, and approved from each Plaintiff, every month, during the period of June 2012 to June 2018; and (2) the number of renewal DACA applications received, rejected, denied, and approved from each Plaintiff, every month, during the period of June 2012 to June 2018.

- Defendants did not respond to this request.  Instead, Defendants generally referred Defendant-Intervenors to three links to USCIS's website "[i]n lieu of providing responsive documents."  *See* Defendants' Objections and Responses, p. 32.

- Defendants objected on the basis that the request is inconsistent with the limited nature of expedited discovery at the preliminary injunction stage.  *Id*., p.31.  However, in light of the Court's order denying Plaintiffs' motion for preliminary injunction and entry of a Rule 16 scheduling order, this objection is no longer a proper objection.  *See* ECF 319, 337.

- Defendants further objected on the basis that this request is "not relevant."  *See* Defendants' Objections and Responses, p. 31.  However, Defendants do not explain why the request is irrelevant, and this conclusory objection is insufficient.  *See* Fed. R. Civ. P. 34(b)(2)(B) (producing party must "state with specificity the grounds for objecting to each request"); *Quarles*, 894 F.2d at 1485 (party resisting discovery bears the burden of showing how each interrogatory is not relevant) (citation omitted).  The request is relevant to Plaintiffs' claims that DACA is a large-scale policy change that incurs "considerable administrative cost," ECF 104 ¶¶ 277, 283, and that few DACA applications have been denied, *see id*. ¶¶ 293-95.

- Defendants objected on the basis that this request is burdensome, overboard, and not proportional to the needs of the case.  *See* Defendants' Objections and Responses, p. 31.  Specifically, Defendants claim they are "unable to identify search terms sufficiently tailored to capture all responsive documents . . . that would not be overly broad and result in hundreds of thousands of materials to be reviewed for responsiveness and privileges."  *Id.*  However, Defendants do not identify or propose any search terms in connection with this request.  *See* 7-6-18 Renaud Declaration ¶ 18 (only identifying generally the search terms "DACA" and "deferred action").  Defendants also claim it would be burdensome to search all electronic records of "all potential custodians" and to search and review responsive documents "from potential custodians who are no longer employed by USCIS."  *See* Defendants' Objections and Responses, p. 32.  Defendants also object to having to conduct a search for records "of DHS and DHS component counsel . . . as such documents contain advice and other information that is privileged."  *Id.*  In Ms. Renaud's declaration, Defendants represent there are a total of 65 potential non-attorney custodians throughout USCIS, 59 potential custodians who are current agency counsel in the USCIS Office of the Chief Counsel, and 12 potential custodians who are no longer employees of USCIS.  7-6-18 Renaud Declaration ¶ 16.  However, Defendants do not identify potential custodians specific to Request for Production No. 9.  Defendants also object "to the extent" that the request seeks drafts or documents in their native form.  *See* Defendants' Objections and Responses, p. 31.

- Defendants' objection as to any purported burden, standing alone, does not justify their nonresponsiveness.  *See* Fed. R. Civ. P. 26(b)(1) (burden or expense must outweigh likely benefit of proposed discovery, and burden to producing party is one of several other considerations in determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy,

December 19, 2018
Page 23 of 23

the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues").  This request is proportional to the needs of the case, particularly considering the nationwide implications of the issues at stake, Defendant-Intervenors' inability to access this information through other sources or parties, and the importance of discovery responsive to this request in resolving the issues before the Court.  *Id*.  However, in an effort to accommodate Defendants' concerns about burden and expenses, Defendant-Intervenors are amenable to narrowing the scope of the review through the use of targeted search terms and custodians.  Defendant-Intervenors request that Defendants provide a list of suggested search terms in connection with this request so the parties may engage in a good faith attempt to narrow the scope of Defendants' review.  Defendant-Intervenors also request that Defendants identify potential custodians specific to this request.

- Defendants also object to this request "to the extent" it is vague, undefined by Defendant-Intervenors, ambiguous, or contrary to USCIS's common use of the terms in its agency practices; however, Defendants responded "based on Defendant USCIS' common usage of terms in its DACA agency practices" and Defendant-Intervenors agree with this interpretation.  *See* Defendants' Objections and Responses, p. 31.  Defendants also claim the request is vague as to the time period for which it requests documents.  *Id*.  However, the request pertains to adjudication of requests under DACA, which has been in place since June 2012, and the request specifies a period from June 2012 to June 2018.  Therefore, the request is not ambiguous as to timeframe.

- Finally, Defendants object "to the extent" this request seeks information duplicative of any information responsive to Defendant-Intervenors' interrogatories.  *Id*.  Defendants do not specify which interrogatory they believe is duplicative of this request, and this is not a proper objection.  *See Ruiz*, 2008 WL 11395490, at *4 (holding that defendant may not argue a request for production and interrogatory are duplicative when defendant has failed to respond to either request).