**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, ET AL.; | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| *v.* | )  Case No. 1:18-cv-00068 |
| | ) |
| UNITED STATES OF AMERICA, ET AL.; | ) |
| | ) |
| *Defendants,* | ) |
| | ) |
| *and* | ) |
| | ) |
| KARLA PEREZ, ET AL.; | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| *Defendants-Intervenors.* | ) |
| | ) |

**PLAINTIFF STATES' RESPONSE TO DEFENDANT-INTERVENORS'
MOTION TO COMPEL DISCOVERY FROM PLAINTIFF STATE OF TEXAS
AND TO DISMISS ALL OTHER PLAINTIFF STATES**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... ii

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............... 2

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT .............. 5

SUMMARY OF THE ARGUMENT ............................................................... 5

ARGUMENT .............................................................................................. 6

    I.    Defendant-Intervenors do not need discovery related to the proper scope of remedy required in this case. ........................................ 6

        A.    The APA requires that an unlawful agency action is set aside. ................................................................................. 7

        B.    Permanent injunctive relief is unnecessary. ................................ 8

        C.    A set aside is necessary to preserve a uniform immigration policy. ................................................................................. 11

        D.    Remanding DACA for further agency process is unwarranted. ............................................................................. 13

    II.    Plaintiff States have established standing, and they have properly responded to Defendant-Intervenors' discovery requests as they relate to those harms. ................................................................ 14

    III.    Plaintiff States other than Texas have produced evidence of their harm to support their claims and have never violated a discovery order of this Court. ................................................................................ 18

CONCLUSION ........................................................................................... 20

CERTIFICATE OF SERVICE ...................................................................... 22

## TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*A.L. Pharma, Inc. v. Shalala,*
   62 F.3d 1484 (D.C. Cir. 1995) ............................................................. 14

*Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
   988 F.2d 146 (D.C. Cir. 1993) ............................................................. 13

*Batalla Vidal v. Nielsen,*
   279 F. Supp. 3d 401 (E.D.N.Y. 2018) ............................................. 12, 13

*Casa De Maryland v. U.S. Dep't of Homeland Sec.,*
   No. 18-1521, 2019 WL 2147204 (4th Cir. May 17, 2019) ................... 1, 8

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971), *abrogated on other grounds by Califano v.*
   *Sanders,* 430 U.S. 99 (1977) .............................................................. 1, 7

*Dine Citizens Against Ruining Our Environment v. Bernhardt,*
   No. 18-2089, 2019 WL 1999298 (10th Cir. May 7, 2019) ...................... 9

*Hanson v. Veterans Admin.,*
   800 F.2d 1381 (5th Cir. 1986) ............................................................. 10

*Harmon v. Thornburgh,*
   878 F.2d 484 (D.C. Cir. 1989) ..................................................... 8, 9, 11

*Lewis v. Casey,*
   518 U.S. 343 (1996) ............................................................................ 13

*Medicinova, Inc. v. Genzyme Corp.,*
   Case No. 14-cv-2513-L(KSC), 2017 WL 2829691 (S.D. Cal. June 29,
   2017).................................................................................................. 18

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010) .............................................................................. 9

*Myers v. United States,*
   272 U.S. 52, 85 (1926) ........................................................................ 11

*NAACP v. Trump,*
   298 F. Supp. 3d 209 (D.D.C. 2018) .............................................. 1, 8, 13

*Radio–TV News Directors Ass'n v. FCC,*
   184 F.3d 872 (D.C. Cir. 1999) ............................................................. 13

*Rodway v. USDA,*
514 F.2d 809 (D.C. Cir. 1975) ...................................................................... 14

*Rumsfeld* v. *Forum for Acad. & Institutional Rights, Inc.,*
547 U.S. 47 (2006) ........................................................................................ 19

*SEC v. Chenery Corp.,*
318 U.S. 80 (1943) .......................................................................................... 7

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016) ................................................................................... 15

*Texas v. United States,*
809 F.3d 134 (5th Cir. 2015) (*Texas I*) ......................................... 11, 13, 19

*Texas v. United States,*
86 F. Supp. 3d 591 (S.D. Tex. 2015)............................................................. 20

*Youngstown Sheet & Tube Co. v. Sawyer,*
343 U.S. 579 (1952) (Frankfurter, J., concurring) ...................................... 11

## Constitutional Provisions, Statutes, and Rules

U.S. Const. art. I, § 8, cl. 4.......................................................................... 12

5 U.S.C.
§ 706(2).................................................................................................... 1, 5, 7
§ 706(2)(A)...................................................................................................... 8
§ 706(2)(B)...................................................................................................... 7

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment............................ 18

Fed. R. Civ. P. 26(b)(1)................................................................................... 5

## Other Authorities

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933
(2018) ............................................................................................................. 7

Lomi Kriel, *DACA's Fate in Court's Hands*, HOUSTON CHRONICLE, Apr.
16, 2016.......................................................................................................... 10

Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117
COLUM. L. REV. 253 (2017) ........................................................................... 8

Ronald M. Levin, Judicial Remedies, *in* A Guide to Judicial and
Political Review of Federal Agencies 251 (2d ed. 2015)........................... 7

Thomas W. Merrill, *Article II, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 COLUM. L. REV. 939 ............................................................................................... 8

## INTRODUCTION

Not once in their motion to compel do Defendant-Intervenors explain how their requests for additional discovery are proportional to the needs of this case. And they spend only a single page attempting to show why the discovery they seek is even relevant.

First, they claim it relates to the scope of remedy that this Court should grant. *See* Def.-Intervenors' Mot. to Compel 12–13, ECF No. 383. But that suggests an improper and illogical result: that the Court can rule that the Deferred Action for Childhood Arrivals program ("DACA") is unlawful and yet order relief other than a complete vacatur of the 2012 memorandum that implemented the program.

The remedy required by Section 706 of the Administrative Procedures Act ("APA") is clear. DACA is unlawful, so it must be set aside. 5 U.S.C. § 706(2). That is the remedy required by Supreme Court precedent. *See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("In all cases agency action must be set aside if the action was [unlawful]."). And that is the remedy imposed by courts reviewing Federal Defendants' attempt to rescind DACA. *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, No. 18-1521, 2019 WL 2147204, at *14 (4th Cir. May 17, 2019) ("[W]e hold that the Department's decision to rescind DACA was arbitrary and capricious and must be set aside."); *NAACP v. Trump*, 298 F. Supp. 3d 209, 216 (D.D.C. 2018) ("[T]he decision to rescind DACA will be vacated and remanded to DHS."). Because this case requires nothing less, discovery pertaining to the scope of the remedy is not relevant, let alone proportional to the needs of the case.

1

Second, Defendant-Intervenors argue that their sought-after discovery relates to Plaintiff States' standing. But they make no attempt to explain why they need to pursue their overly broad requests. Nor could they. To do so, they would have to argue that their requests are targeted to uncover information showing that not a single employer has hired a DACA recipient, that States incur no costs to provide social services to DACA recipients, or that no DACA recipients would leave Plaintiff States should DACA end. Defendant-Intervenors have never made those arguments, and Defendant-Intervenors cannot make those arguments due to the testimony of their own witnesses. Instead—only after the Court set a hearing on Plaintiff States' motion for summary judgment and without attempting to limit their discovery requests in any way—Defendant-Intervenors move to compel discovery on harms not relied upon by Plaintiff States to establish their standing. The harms actually relied upon have been proven by testimony from Plaintiff States' (not just Texas's) witnesses and Defendant-Intervenors' own experts. The Court has ruled that those harms provide a basis for standing. And Plaintiff States have responded to Defendant-Intervenors' discovery requests as they relate to those harms.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This case is a judicial review of an agency action. The only information Plaintiff States have relevant to the Court's determination relates to the harms they have suffered as a result of DACA. The parties have already conducted 29 depositions of both fact and expert witnesses, exchanged over 12,000 pages of document production, and filed over 400 pages of briefing with more than 7,000 pages of attached exhibits. Plaintiff States (not just Texas) have provided initial disclosures identifying the

witnesses and evidence they rely on to establish their standing, and Plaintiff States have produced hundreds of pages of documents related to those harms in response to Defendant-Intervenors' discovery requests. *See* Def.-Intervenors' Mot. to Compel Ex. 18, at ¶¶ 3–5, ECF No. 383-19.

The factual bases of those harms have been corroborated by Defendant-Intervenors' own witnesses. *See* Mem. Op. and Order 39, ECF No. 319 (finding that Defendant-Intervenors' expert agreed that DACA increases competition for low-skilled jobs); *id.* at 51 (finding that, as to increased social services costs because of DACA, "perhaps most importantly for this topic, Defendant-Intervenors' own witness directly connected the dots for Plaintiff States"). And the Court has ruled that such harms establish Plaintiff States' standing to challenge DACA. *Id.* at 55 n.51 ("The Court notes that even without a finding of special solicitude under *Massachusetts v. EPA*, it still would have found the Plaintiff States had standing."); *see also id.* at 47 n.46 ("As stated earlier, two of the four DACA rescission cases included states as plaintiffs. It is difficult to conceive how states could have standing to challenge the rescission of the DACA program but not have standing to challenge its enactment.").

From their first filing after the Court's Order on the preliminary injunction, Plaintiff States have made clear that this case is ripe for resolution on the merits. Pl. States' Mot. to Lift Stay, ECF No. 324. In the parties' joint discovery and case management plan filed nearly seven months ago, Plaintiff States argued that no additional discovery is needed, and Federal Defendants agreed. *See* ECF No. 335. In response, Defendant-Intervenors listed a litany of discovery they intended to pursue,

including third-party discovery and additional discovery from Federal Defendants. *Id.* at 8–9. In the intervening seven months, Defendant-Intervenors sent a single letter to Plaintiff States almost four months ago requesting that they withdraw their valid objections to the overly broad discovery requests. *See* Def.-Intervenors' Mot. to Compel Ex. 14, ECF No. 383-15. Then, more than three months ago, Defendant-Intervenors filed a motion to deny or defer consideration of Plaintiff States' motion for summary judgment, claiming they needed additional discovery to respond. *See* Def.-Intervenors' Rule 56(d) Motion, ECF No. 363. The Court effectively granted that motion by waiting ten weeks to set a hearing on the motion for summary judgment. Order, ECF No. 378. During those ten weeks, Defendant-Intervenors did nothing to pursue discovery from Plaintiff States.

Now, only after the Court set a response deadline and hearing date for Plaintiff States' motion for summary judgment, Defendant-Intervenors have moved to compel responses to their discovery requests. As with almost every other request made by Defendant-Intervenors, they again ask the Court to delay this proceeding. And they request that the Court take the extraordinary step of dismissing the Plaintiff States other than Texas from this case—despite this Court's prior rulings and the established evidence of their standing, and despite those States having never violated a discovery order from this Court.

What's more, they move to compel discovery on harms not disputed by their own experts and harms not relied upon by Plaintiff States. Prior to the Defendant-Intervenors' filing, Plaintiff States offered three times to discuss whether there was

any additional information Defendant-Intervenors needed to respond to the harms actually relied upon by Plaintiff States to support their claims. Ex. A. Defendant-Intervenors' only response was to insist that Plaintiff States fully respond to their overly broad discovery requests seeking information that is not proportional to the needs of this case. *Id.*

## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

1. Whether Defendant-Intervenors are entitled to additional discovery related to the proper remedy despite the APA's clear mandate that the 2012 DACA memorandum must be set aside.

2. Whether the Court should allow additional discovery on harms that are not in dispute and harms that Plaintiff States do not rely on to prove their standing.

3. Whether the Court should dismiss the Plaintiff States other than Texas even though they have presented evidence of the harms they suffer because of DACA and have not violated any discovery order from this Court.

## SUMMARY OF THE ARGUMENT

The scope of discovery is defined by relevance and proportionality. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Here, the APA dictates the remedy required. 5 U.S.C. § 706(2) (requiring that reviewing courts shall "set aside" unlawful agency actions). At this stage, it would be improper for the Court to do any type of injunctive balancing test or somehow fashion a State-specific remedy as Defendant-Intervenors suggest.

Accordingly, discovery on those points is outside the scope of discovery because it is not relevant and not proportional to the needs of the case.

Further, it is Plaintiff States' burden to establish that they have been harmed by DACA. Plaintiff States (not just Texas) already met that burden in the preliminary injunction context and have continued to meet it through the evidence attached to their motion for summary judgment. In response to Defendant-Intervenors' discovery requests, Plaintiff States have produced hundreds of pages of documents related to that evidence. Defendant-Intervenors are free to argue that such evidence is insufficient to support Plaintiff States' claims. But Defendant-Intervenors cannot compel Plaintiff States to respond to discovery requests that seek information regarding undisputed harms and harms upon which Plaintiff States do not rely. *See* Mem. Op. and Order 51, ECF No. 319 ("For standing purposes, Texas need not plead damages from a particular individual when it pleads and has proof that it is being damaged by the entire program.").

## ARGUMENT

## I.   Defendant-Intervenors do not need discovery related to the proper scope of remedy required in this case.

In the only section of their motion to compel explaining why they need the requested information, Defendant-Intervenors claim it is necessary to conduct the permanent-injunction balancing test and determine the geographic scope of relief that this Court should grant. *See* Def.-Intervenors' Mot. to Compel 12–13, ECF No. 383. Neither of those rationales support their requests. The APA requires that the

Court set aside the 2012 DACA memorandum, and that relief does not depend on the Court granting a permanent injunction or any State-specific analysis. [1]

A.    The APA requires that an unlawful agency action is set aside.

Federal courts must "set aside" agency actions that violate the Constitution or federal statutory law. 5 U.S.C. § 706(2). Beginning in *SEC v. Chenery Corp.*, prior to the adoption of the APA, the Supreme Court recognized that an unlawful agency action subject to judicial review must be stricken. 318 U.S. 80, 94 (1943) ("[I]f the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order *may not stand* if the agency has misconceived the law." (emphasis added)). After the enactment of the APA, the Supreme Court held that the same principle applies in the statute empowering courts to set aside unlawful agency action. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14 (1971) ("In all cases agency action *must be set aside* if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements") (quoting 5 U.S.C. § 706(2) (emphasis added)).[2]

---

[1] To be clear, while Plaintiffs move for summary judgment on all counts raised in their complaint, the set-aside remedy afforded under 5 U.S.C. § 706(2) would be appropriate should Plaintiff States prevail on any one of those claims, including claims that the DACA violates the U.S. Constitution. *See* 5 U.S.C. § 706(2)(B) (requiring that agency action be set aside if it is "contrary to constitutional right, power, privilege, or immunity").

[2] *See also* Ronald M. Levin, Judicial Remedies, *in* A Guide to Judicial and Political Review of Federal Agencies 251, 251 (2d ed. 2015) (noting that with rare exceptions, "when an agency action fails the standards of judicial review, the court is expected to set the action aside and remand it to the agency for further consideration"). The APA authorizes federal courts to set aside unlawful agency action "in the same way that an appellate court formally revokes an erroneous trial-court judgment." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 1012 (2018). The "appellate review model" governing judicial review of agency rules dates back at least to the Hepburn Act of 1906. *Id.* at 1013 n.320. When the APA was enacted in 1946, the instruction to set aside unlawful action "reflected

Courts have continued to hold that when an agency action is deemed unlawful, the normal result is that the action is vacated. *See, e.g.*, *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). Indeed, reviewing courts have set aside Federal Defendants' 2017 memorandum attempting to rescind DACA upon determining that it was unlawful. *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, No. 18-1521, 2019 WL 2147204, at *12 (4th Cir. May 17, 2019); *NAACP v. Trump*, 298 F. Supp. 3d 209, 216 (D.D.C. 2018). As the Fourth Circuit Court of Appeals recently noted in its opinion vacating the 2017 DACA rescission memorandum: "The APA requires a reviewing court to 'hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Casa De Maryland*, 2019 WL 2147204, at *12 (quoting 5 U.S.C. § 706(2)(A)). And the Fourth Circuit was unequivocal about the remedy that it granted. *Id.* at *14 ("Accordingly, we hold that the Department's decision to rescind DACA was arbitrary and capricious and must be set aside.").

This case must be resolved through that same remedy. Consistent with the text of Section 706 and well-established practice, the proper relief in this case is to set aside the 2012 memorandum that established DACA.

### B.   Permanent injunctive relief is unnecessary.

Further, courts have held that permanent injunctive relief is not needed to

---

a consensus that judicial review of agency action should be modeled on appellate review of trial court judgments." Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 COLUM. L. REV. 253, 258 (2017); *see generally* Thomas W. Merrill, *Article II, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 COLUM. L. REV. 939 (detailing the emergence of the appellate review model over the course of the nineteenth and early twentieth centuries).

remedy unlawful agency action. In *Monsanto Co. v. Geertson Seed Farms*, the Supreme Court admonished that a district court vacating agency action under the APA should not grant an injunction if doing so would "not have any meaningful practical effect independent of its vacatur." *Monsanto,* 561 U.S. 139, 165 (2010). The Court explained that an injunction "is a drastic and extraordinary remedy" and should not issue "[i]f a less drastic remedy," such as a vacatur is sufficient to redress the plaintiff's injuries. *Id.* at 165-66. Similarly, the Tenth Circuit Court of Appeals recently determined that an injunction was unwarranted in a successful APA challenge to drilling permits because the "set aside" remedy provided sufficient relief. *Dine Citizens Against Ruining Our Environment v. Bernhardt*, No. 18-2089, 2019 WL 1999298, at *22 (10th Cir. May 7, 2019). And the D.C. Circuit has held that an injunction is unnecessary in cases where the court can vacate an unlawful agency action. *Harmon*, 878 F.2d at 495 n.21.

Here, Plaintiff States have demonstrated that the appropriate remedy is to set aside the 2012 DACA memo. Although Plaintiff States requested a preliminary injunction preventing the federal government from issuing new DACA permits during the pendency of this lawsuit, Plaintiff States have explained that the Court can grant a final judgment providing for the "less drastic remedy" of setting aside the DACA memorandum. *See Monsanto,* 561 U.S. at 165. In their complaint, Plaintiff States request declaratory relief that DACA is unconstitutional and substantively and procedurally unlawful. ECF No. 104 at 73. In their motion for summary judgment, Plaintiffs requested a vacatur on the grounds that DACA is unlawful

agency action: "Under the APA, an agency action that a court holds unlawful is set aside. Thus, because the Executive unlawfully created DACA through its 2012 memorandum, that 2012 memorandum must be set aside." ECF No. 357 at 45 (internal quotations and citations omitted).

Moreover, this Court has recognized on several occasions that injunctive relief is not required to remedy the injuries suffered by Plaintiff States. Rather, a vacatur of the DACA memorandum through a declaratory judgment is sufficient. In its Order on the preliminary injunction, the Court indicated that "an injunction of DACA *or a favorable declaratory ruling* 'might permit' the States to have redress of their injuries." *See* Mem. Op. and Order 47, ECF No. 319 (emphasis added) (quoting *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986)). Further, it noted that the "*dissolution* or the enjoining of the ongoing DACA program would have immediate effects": ending the lawful status and attendant benefits that DACA conferred on its recipients in violation of federal law. *Id.* at 113 (emphasis added). And in considering the ultimate outcome of the case, the Court suggested that DACA may be vacated: "DACA and DAPA are basically identical, and there is no legal ground for '*striking* DAPA that wouldn't apply to DACA' (and certainly no legal ground for *striking* Expanded DACA that does not apply to DACA itself)." *Id.* at 117 (emphasis added) (quoting Lomi Kriel, *DACA's Fate in Court's Hands*, HOUSTON CHRONICLE, Apr. 16, 2016 [ECF No. 284, Ex. 1, at App. 1485]).

Because injunctive relief is not necessary, discovery related to the four injunctive factors is not needed.[3]

## C.   A set aside is necessary to preserve a uniform immigration policy.

Similarly, the Court does not need to consider the geographic scope of its ordered relief or try to craft a remedy applicable to only the Plaintiff States. The *scope* of injunctive relief is immaterial to this case because that *form* of relief is unnecessary under the APA and unnecessary to remedy Plaintiff States' injuries.[4] The proper remedy in this case is a "set aside" of the DACA memo, not an injunction. *See also Harmon*, 878 F.2d at 495 n.21 ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.")

Setting aside the 2012 DACA memorandum—as opposed to some type of geographically limited relief—is consistent with the "strong federal interest in the

---

[3] Even if injunctive relief were necessary to remedy Plaintiffs' injuries, Defendant-Intervenors' discovery requests are still unwarranted because of the Court's prior rulings and comprehensive record relevant to each of the four injunctive relief factors. With respect to the merits, the binding precedent and this Court's rulings already establish that DACA is procedurally and substantively unlawful. *See Texas v. United States*, 809 F.3d 134, 171–78, 186 (5th Cir. 2015) (*Texas I*). With respect to irreparable harm, this Court has already held that the evidence of ongoing damages supports "a finding of injury that is irreparable." Mem. Op. and Order 107, ECF No. 319. With respect to the balance of hardships between the parties, Plaintiff States are not seeking immediate termination of existing grants of deferred action status but would be agreeable to a judicial stay to allow for an orderly wind-down of the program. Pl. States' Br. in Supp. of Mot. for Summ. J. 45, ECF No. 357. Finally, given that the record demonstrates that DACA is unlawful, further discovery on public interest is unnecessary. Protecting the rule of law by giving effect to Congress's comprehensive statutory scheme for immigration—rather than a program that overrode these laws without even allowing for the public to be heard through the notice and comment process—clearly evidences the public benefit manifest in bringing an orderly end to this example of executive overreach and restoring proper principles of separation of powers. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 613 (1952) (Frankfurter, J., concurring) (quoting *Myers v. United States*, 272 U.S. 52, 85 (1926) ("The doctrine of the separation of powers was adopted by the Convention of 1787, not to promote efficiency but to preclude the exercise of arbitrary power.").

[4] Similarly, the Court need not consider the arguments for and against the issuance of a nationwide injunction, referenced in its preliminary injunction order.

11

uniformity of federal immigration law." *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 438 (E.D.N.Y. 2018) (citing U.S. Const. art. I, § 8, cl. 4). Numerous courts have recognized that unlawful agency actions concerning immigration cannot be addressed in a piecemeal fashion. For example, in one of the cases challenging the 2017 rescission of DACA, the U.S. District Court for the Eastern District of New York explained why tailored relief was unworkable in the immigration context. *Id.* The court noted that "it is hard to conceive of how the court would craft a narrower injunction that would adequately protect Plaintiffs' interests" where "Plaintiffs include not only several individuals and a nonprofit organization, but also sixteen states and the District of Columbia." *Id.* at 437–38. The court further reasoned that to protect the plaintiffs' interests, it needed to enjoin the defendants from rescinding the DACA program with respect to the residents and employees of the plaintiff States. But "[s]uch an injunction would be unworkable, partly in light of the simple fact that people move from state to state and job to job, and would likely create administrative problems for Defendants." *Id.* at 438.

Apart from the impracticality of a geographically limited rescission of DACA, the New York court further maintained that such narrow relief would frustrate the imperative for uniform federal immigration law recognized by the Fifth Circuit Court of Appeals and this Court in the DAPA litigation. *Id.* As the Fifth Circuit explained: "the Constitution requires 'an *uniform* Rule of Naturalization;' Congress has instructed that 'the immigration laws of the United States should be enforced vigorously and *uniformly*;' and the Supreme Court has described immigration policy

as 'a comprehensive and *unified* system.'" *Texas I*, 809 F.3d at 187–88 (footnotes omitted).

As this Court has already stated, the "requirement that immigration policy be uniform" must inform the remedial analysis. *See* Mem. Op. and Order 17, ECF No. 319. A vacatur of DACA is a "systemwide remedy" appropriate for the "systemwide impact" that the DACA program caused. *See Batalla Vidal*, 279 F. Supp. 3d at 438 (quoting *Lewis v. Casey*, 518 U.S. 343, 359 (1996).

D.    Remanding DACA for further agency process is unwarranted.

While some courts have found limited discretion to remand an agency action without vacatur in narrow circumstances, that is not the case here, and no party has pleaded for such relief. Remand without vacatur is appropriate only where "there is at least a serious possibility that the [agency] will be able to substantiate its decision" and "vacating would be disruptive." *Radio–TV News Directors Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999) (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993)). Practically speaking, that test is met only when the agency action is defective because it is unsupported and further agency process is necessary "to cure the defects that the court has identified." *NAACP v. Trump*, 298 F. Supp. 3d 209, 244 (D.D.C. 2018).

Here, the defect of DACA is its unlawfulness. The program violates the Constitution's Take Care Clause and is contrary to Congress's carefully crafted plan for determining the lawful status and work authorization of immigrants. Thus,

without a change in the law, there is no possibility that any federal agency can "cure the defects" in DACA.

Moreover, a remand order would not result in the repair of DACA's procedural unlawfulness. The purpose of remand is to provide the agency with a limited period of time to adjust and reissue an action. *See, e.g., A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1492 (D.C. Cir. 1995) (remanding and providing for "automatic[]" vacatur unless the agency justified its decision within 90 days); *Rodway v. USDA*, 514 F.2d 809, 817–18 (D.C. Cir. 1975) (remanding and giving the agency 120 days to complete the rulemaking process). Here, Federal Defendants have attempted to rescind DACA and have been enjoined from doing so. Thus, there is no reason to believe that they would reissue DACA through the normal notice-and-comment process to cure the procedural defect in some limited time period.

DACA's substantive and procedural defects, in sum, cannot be cured with more time for agency action. Because the only exception to complete vacatur is inapplicable in this case, the remedy is clear and does not support additional discovery.

## II.    Plaintiff States have established standing, and they have properly responded to Defendant-Intervenors' discovery requests as they relate to those harms.

Defendant-Intervenors do not attempt to explain how their requests are proportional to their need for information about Plaintiff States' standing.[5] It is Plaintiff States' burden to establish that they suffer harm because of DACA. *See*

---

[5] Defendant-Intervenors incorporate their Rule 56(d) motion into their motion to compel. To the extent that such arguments are incorporated into the motion to compel, Plaintiff States likewise incorporate into this response their response to the Rule 56(d) motion. ECF No. 372.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiff States have met that burden through the evidence attached to their motion for summary judgment, and the factual bases for Plaintiff States' standing are not disputed. To the extent that discovery is proper related to those harms, Plaintiff States have produced the information responsive to Defendant-Intervenors' discovery requests.

Plaintiff States offer four reasons for why they have standing to bring this suit: (1) the special solicitude due to States in the standing analysis; (2) their *parens patriae* interest in protecting the health and well-being of their citizens; (3) the increased social services costs due to DACA; and (4) the Executive's complete abdication of duly-enacted immigration laws. *See* Pl. States' Br. in Supp. Mot. for Summ. J., ECF No. 357. Determining whether Plaintiff States are due special solicitude and whether the Executive abdicated immigration laws does not depend on resolving any factual disputes, so no discovery is needed on those points.

As for Plaintiff States' *parens patriae* standing, the factual basis of that claim is not in dispute. Defendant-Intervenors do not dispute that DACA grants work authorization or that DACA recipients are not subject to the Affordable Care Act. Indeed, when asked whether DACA recipients would increase competition for citizens and other lawfully present workers, "Defendant-Intervenors' expert . . . replied that they would." *See* Mem. Op. and Order 39, ECF No. 319.

Likewise, Defendant-Intervenors cannot dispute that Plaintiff States incur costs to provide social services to DACA recipients. As the Court acknowledged, their own expert estimated that Texas alone spends $250,000,000 in direct costs to provide

15

such services to DACA recipients every year. *Id.* at 49. And Defendant-Intervenors cannot claim that every DACA recipient would remain in the Plaintiff States should DACA end. Again, their own expert presented a study demonstrating that over 22% of surveyed DACA recipients would leave the country if they did not have work authorization. *Id.* ("This claim is supported by the empirical findings of the Defendant-Intervenors' expert . . . .").

Not only are the factual bases for Plaintiff States' standing undisputed by Defendant-Intervenors' own witnesses, Plaintiff States have produced the information responsive to Defendant-Intervenors' discovery requests as they relate to the costs actually relied upon by Plaintiff States to support those harms. In their motion to compel, Defendant-Intervenors admit that Plaintiff States have provided hundreds of pages of supporting documents related to the evidence relied upon by Plaintiff States. *See* Decl. of A. Ávila ¶¶ 3–5, ECF No. 383-19. For example, Texas spends hundreds of millions of dollars every year on providing Emergency Medicaid services to unlawfully present aliens. *See* Pl. States' App. in Supp. Mot. for Summ. J., Ex. 26 [Decl. of M. Smoot], ECF No. 358-26. Defendant-Intervenors deposed the witness who testified to such damages. Ex. B. And Texas produced the information that went into the reports attached to the witness's declaration, including hundreds of thousands of lines of data proving the claims made on Emergency Medicaid in Texas. *See* Ex. C (the first and last page of an Excel spreadsheet that runs over 8,000 pages and contains nearly 60,000 lines of data related to Emergency Medicaid outpatient claims in Texas in Fiscal Year 2015).

Likewise, Plaintiff States rely in part on the cost to provide public education to unlawfully present aliens, some of whom are DACA recipients. *See* Pl. States' App. in Supp. Mot. for Summ. J.*,* Ex. 27 [Decl. of L. Lopez], ECF No. 358-27. Plaintiff States provided a declaration detailing those costs. *Id.* Defendant-Intervenors deposed that witness, Ex. D, and Plaintiff States produced all of the information the witness relied upon to draft his testimony, *see, e.g.,* Ex. E (detailing the witness's calculations for the cost to educate students during the 2015-2016 school year).

Plaintiff States have offered multiple times to provide additional information should Defendant-Intervenors believe that they need something else to fully respond to the damages upon which Plaintiff States actually rely. Ex. A. But Defendant-Intervenors have not attempted to narrow the scope of their discovery requests. They waited until after the Court set the hearing on Plaintiff States' motion for summary judgment to move to compel such broad requests as: "Identify *all* costs that Plaintiffs, by state and year, have incurred since June 2012 or expect to incur in the future, with respect to providing goods, support and/or services to DACA recipients living in Plaintiff States." Def.-Intervenors' Mot. to Compel, Ex. 11, at 6, ECF No. 383-12 (emphasis added).

Plaintiff States do not need to prove every cost they have incurred as a result of DACA. *See* Mem. Op. and Order 51, ECF No. 319 ("For standing purposes, Texas need not plead damages from a particular individual when it pleads and has proof that it is being damaged by the entire program."). Plaintiff States have supported their claims with evidence of DACA's harm, and Plaintiff States have produced the

17

responsive documents related to those harms. Defendant-Intervenors can argue that such evidence is insufficient to meet Plaintiff States' burden. But Defendant-Intervenors are not entitled to compel overly broad discovery requests that seek information about damages upon which Plaintiff States do not rely to support their claim. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (intending to restore the function of the 1983 amendment "to deal with the problem of over-discovery. The objective is to guard against redundant or disproportionate discovery . . . ."); *Medicinova, Inc. v. Genzyme Corp.*, Case No. 14-cv-2513-L(KSC), 2017 WL 2829691, *5 (S.D. Cal. June 29, 2017) ("The intent of the recent amendments is to bring about a change in the legal culture that embraces the leave no stone unturned . . . approach to discovery") (citation and internal quotation omitted).

## III.  Plaintiff States other than Texas have produced evidence of their harm to support their claims and have never violated a discovery order of this Court.

Defendant-Intervenors seek for a third time to dismiss Plaintiff States, excluding Texas, based on an alleged lack of standing. *See* Def.-Intervenors' Mot. to Compel 15–17, ECF No. 383; Def.-Intervenors' Mot. to Dismiss, ECF No. 118; Def.-Intervenors' Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 224. As an alternative to outright dismissal, Defendant-Intervenors ask this Court to rule that the non-Texas Plaintiff States are prohibited from "offering evidence or argument" on Texas's behalf. Def.-Intervenors' Mot. to Compel 17, ECF No. 383. If Defendant-Intervenors intended this extreme relief to serve as a discovery sanction under Rule 37 of the Federal Rules of Civil Procedure, their request is not yet ripe because the Plaintiff States have not violated any discovery order from this Court.

18

If their request is to dismiss the other States on the merits, the Court has already held that multiple theories of standing exist, and Defendant-Intervenors' attempts to continually relitigate standing does not change that. *See* Mem. Op. and Order 30–55, ECF No. 319 ("The Plaintiff States Have Standing"); *see also id.* at 47 n.46 ("As stated earlier, two of the four DACA rescission cases included states as plaintiffs. It is difficult to conceive how states could have standing to challenge the rescission of the DACA program but not have standing to challenge its enactment.").

The record evidence, much of it supplied by Defendant-Intervenors' witnesses, easily establishes Texas's standing. Because Texas has standing, Article III is satisfied for the remainder of the Plaintiff States. *See* ECF No. 319 at 31 ("A single Plaintiff with standing satisfies the case-or-controversy requirement of Article III"); *Rumsfeld* v. *Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement"); *see also Texas v. United States*, 809 F.3d 134, 151 (5th Cir. 2015). That alone is enough to deny the motion.

Even independent of Texas's standing, the evidence proves that each Plaintiff State suffers an injury—a fact that is unaddressed in Defendant-Intervenors' motion. For instance, each possesses *parens patriae* standing to protect their citizens against labor market distortion. Plaintiff States' expert on that point did not confine his opinion to the Texas labor market. Pl. States' App. in Supp. of Mot. for Summ. J., Ex. 21 [Suppl. Decl. of D. Deere], ECF No. 358-21. And neither did Defendant-Intervenors' expert when he confirmed that reality. *See* Mem. Op. and Order 39, ECF

No. 319 Likewise, Defendant-Intervenors' expert did not limit his discussion of providing Emergency Medicaid only to Texas, *id.* at 51, and the demographers from both sides opined that some DACA recipients are likely to leave the United States (not just Texas) should DACA end, *id.* at 49. Each State is also due special solicitude in the standing analysis and has abdication standing because DACA completely abdicates the Executive's duty to enforce Congress's duly enacted immigration laws. *Texas v. United States*, 86 F. Supp. 3d 591, 643 (S.D. Tex. 2015).

## CONCLUSION

This case is controlled by questions of law. Those legal issues are ripe for resolution through the Court's ruling on Plaintiff States' motion for summary judgment. Defendant-Intervenors are not allowed far-reaching discovery on harms that are not disputed and harms upon which Plaintiff States do not rely. Thus, Plaintiff States respectfully request that the Court deny the motion to compel.

May 29, 2019                              Respectfully submitted.

STEVE MARSHALL                           KEN PAXTON
Attorney General of Alabama              Attorney General of Texas

LESLIE RUTLEDGE                          JEFFREY C. MATEER
Attorney General of Arkansas             First Assistant Attorney General

DEREK SCHMIDT                            RYAN L. BANGERT
Attorney General of Kansas               Deputy Attorney General for Legal Counsel

JEFF LANDRY                              */s/ Todd Lawrence Disher*
Attorney General of Louisiana            TODD LAWRENCE DISHER
                                         Attorney-in-Charge
DOUGLAS J. PETERSON                      Trial Counsel for Civil Litigation
Attorney General of Nebraska             Tx. State Bar No. 24081854
                                         Southern District of Texas No. 2985472
ALAN WILSON                              Tel.: (512) 463-2100; Fax: (512) 936-0545
Attorney General of South Carolina       todd.disher@oag.texas.gov
                                         P.O. Box 12548
PATRICK MORRISEY                         Austin, Texas 78711-2548
Attorney General of West Virginia
                                         MICHAEL TOTH
                                         Special Counsel for Civil Litigation

                                         ADAM ARTHUR BIGGS
                                         Assistant Attorney General

                                         **COUNSEL FOR PLAINTIFF STATES**

21

## CERTIFICATE OF SERVICE

I certify that on May 29, 2019, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Trial Counsel for Civil Litigation

**COUNSEL FOR PLAINTIFF STATES**

# Exhibit A

| | |
|---|---|
| **From:** | Disher, Todd |
| **To:** | Nina Perales |
| **Cc:** | Biggs, Adam; Toth, Michael; Alejandra Avila |
| **Subject:** | RE: Texas et al. v. United States et al., No. 1:18-cv-00068 |
| **Date:** | Monday, May 13, 2019 1:10:00 PM |
| **Attachments:** | image001.png |

Nina,

Your February 1 letter does not explain why the additional discovery you seek is proportional to the needs of the case, particularly given that it is the Plaintiff States' burden to establish standing. Again, if the Intervenors believe that there is specific information they require in order to respond to the evidence cited in the motion for summary judgment, we are happy to discuss that with you.

Todd

**Todd Lawrence Disher**
Trial Counsel for Civil Litigation
Office of the Attorney General of Texas
P.O. Box 12548 (MC 001)
Austin, TX 78711-2548
(512) 936-2266
Todd.Disher@oag.texas.gov

**From:** Nina Perales [mailto:nperales@MALDEF.org]
**Sent:** Monday, May 13, 2019 12:08 PM
**To:** Disher, Todd <Todd.Disher@oag.texas.gov>
**Cc:** Biggs, Adam <Adam.Biggs@oag.texas.gov>; Toth, Michael <Michael.Toth@oag.texas.gov>; Alejandra Avila <Aavila@MALDEF.org>
**Subject:** Re: Texas et al. v. United States et al., No. 1:18-cv-00068

Todd,

The specific information that we believe we are lacking is set out in our deficiency letter of February 1. You have already responded to that letter and indicated that you would not provide any additional information. Plaintiffs also did not provide any information in response to our fifth set of discovery requests.

After these attempts to secure discovery, we believe that unfortunately the court's involvement is necessary.

Thank you,

Nina Perales
Vice President of Litigation
Mexican American Legal Defense
    and Educational Fund, Inc. (MALDEF)
110 Broadway, Suite 300

San Antonio, TX 78205
Ph (210) 224-5476 ext. 206
FAX (210 224-5382



CONFIDENTIALITY NOTICE: The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, covers this electronic message.  This message and any attachment thereto contains CONFIDENTIAL INFORMATION intended for the exclusive use of the named recipient(s) and may further be PRIVILEGED and CONFIDENTIAL attorney client communication, attorney work product or proprietary information.  If you are not an intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution, other than to return this message to the addressee(s), notification of its unintended disclosure, and the deletion of all copies is strictly prohibited and may be illegal.  If you receive this communication in error, please notify the sender or the person who transmitted the communication immediately by telephone at 210-224-5476 and/or by reply to this communication and delete this message. Persons responsible for delivering this communication to the intended recipient are admonished that this communication not be copied or disseminated except as directed by the intended recipient.


On May 10, 2019, at 5:16 PM, Disher, Todd <Todd.Disher@oag.texas.gov> wrote:

> Nina,
>
> Moving to compel on the entirety of your discovery requests is of course your prerogative, and we will stand on our over-breath and other objections. However, if there is specific information that you believe you are lacking in order to file a complete response to the cited evidence, we can discuss whether we can provide that information without the Court's involvement.
>
> Todd
>
> **Todd Lawrence Disher**
> Trial Counsel for Civil Litigation
> Office of the Attorney General of Texas
> P.O. Box 12548 (MC 001)
> Austin, TX 78711-2548
> (512) 936-2266
> Todd.Disher@oag.texas.gov
>
> On May 10, 2019, at 4:53 PM, Nina Perales <nperales@MALDEF.org> wrote:
>
>> Todd,

Thank you for your response.  Although we do plan to respond to your cited evidence, we also need responses to our discovery requests.  We understand that you disagree with this position and will inform the court that you oppose the motion to compel unless you advise us otherwise.

Thanks again and have a good weekend,

Nina Perales
Vice President of Litigation
Mexican American Legal Defense
    and Educational Fund, Inc. (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205
Ph (210) 224-5476 ext. 206
FAX (210 224-5382

<image001.png>

CONFIDENTIALITY NOTICE: The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521, covers this electronic message.  This message and any attachment thereto contains CONFIDENTIAL INFORMATION intended for the exclusive use of the named recipient(s) and may further be PRIVILEGED and CONFIDENTIAL attorney client communication, attorney work product or proprietary information.  If you are not an intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution, other than to return this message to the addressee(s), notification of its unintended disclosure, and the deletion of all copies is strictly prohibited and may be illegal.  If you receive this communication in error, please notify the sender or the person who transmitted the communication immediately by telephone at 210-224-5476 and/or by reply to this communication and delete this message. Persons responsible for delivering this communication to the intended recipient are admonished that this communication not be copied or disseminated except as directed by the intended recipient.

**From:** Disher, Todd [mailto:Todd.Disher@oag.texas.gov]
**Sent:** Friday, May 10, 2019 4:42 PM
**To:** Nina Perales
**Cc:** Biggs, Adam; Toth, Michael; Alejandra Avila
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Nina,

The discovery requests referenced below appear to seek information related to potential injuries suffered by the Plaintiff States. The evidence that the Plaintiffs States rely on to establish their standing at this stage is cited in their motion for summary judgment. Is there a reason why Intervenors cannot fully respond to that cited evidence (or argue that such cited evidence is insufficient) rather than attempt to seek discovery related to potential injuries not cited in the motion for summary judgment?

Todd

**Todd Lawrence Disher**
Trial Counsel for Civil Litigation
Office of the Attorney General of Texas
P.O. Box 12548 (MC 001)
Austin, TX 78711-2548
(512) 936-2266
Todd.Disher@oag.texas.gov

**From:** Nina Perales [mailto:nperales@MALDEF.org]
**Sent:** Friday, May 10, 2019 3:22 PM
**To:** Disher, Todd <Todd.Disher@oag.texas.gov>
**Cc:** Biggs, Adam <Adam.Biggs@oag.texas.gov>; Toth, Michael
<Michael.Toth@oag.texas.gov>; Alejandra Avila <Aavila@MALDEF.org>
**Subject:** RE: Texas et al. v. United States et al., No. 1:18-cv-00068

Dear Todd,

Defendant Intervenors Karla Perez, et al. plan to move to compel
Plaintiffs' answers to Interrogatories Nos. 4-15 and 18-21 and production
in response to Requests for Production Nos. 2 and 8.  We also plan to
request that the Court dismiss the non-Texas Plaintiffs in the case and
enter a stay.

Please advise whether Plaintiffs oppose the motion.  Thank you very
much,

Nina Perales
Vice President of Litigation
Mexican American Legal Defense
    and Educational Fund, Inc. (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205
Ph (210) 224-5476 ext. 206
FAX (210 224-5382

<image001.png>

CONFIDENTIALITY NOTICE: The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521,
covers this electronic message.  This message and any attachment thereto contains CONFIDENTIAL
INFORMATION intended for the exclusive use of the named recipient(s) and may further be
PRIVILEGED and CONFIDENTIAL attorney client communication, attorney work product or proprietary
information.  If you are not an intended recipient, you are hereby notified that any use, disclosure,
dissemination, distribution, other than to return this message to the addressee(s), notification of its
unintended disclosure, and the deletion of all copies is strictly prohibited and may be illegal.  If you
receive this communication in error, please notify the sender or the person who transmitted the
communication immediately by telephone at 210-224-5476 and/or by reply to this communication

and delete this message. Persons responsible for delivering this communication to the intended recipient are admonished that this communication not be copied or disseminated except as directed by the intended recipient.

# Exhibit B

Transcript of the Testimony of

# Monica Smoot

## Date:

June 19, 2018

## Case:

STATE OF TEXAS vs UNITED STATES OF AMERICAN

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3  STATE OF TEXAS, et al.,    )
                               )
 4       Plaintiffs,           )
                               )
 5  vs.                        )    CASE NO. 1:18:CV-68
                               )
 6  UNITED STATES OF AMERICA,  )
    et al.,                    )
 7                             )
         Defendants,           )
 8                             )
    and                        )
 9                             )
    KARLA PEREZ, MARIA ROCHA,  )
10  JOSE MAGAÑA-SALGADO, NANCI )
    J. PALACIOS GODINEZ, ELLY  )
11  MARISOL ESTRADA, KARINA    )
    RUIZ DE DIAZ, CARLOS       )
12  AGUILAR GONZALEZ, KARLA    )
    LOPEZ, LUIS A. RAFAEL,     )
13  DARWIN VELASQUEZ, JIN      )
    PARK, OSCAR ALVAREZ, NANCY )
14  ADOSSI, DENISE ROMERO,     )
    PRATHISHTHA KHANNA, JUNG   )
15  WOO KIM, ANGEL SILVA,      )
    MOSES KAMAU CHEGE, HYO-WON )
16  JEON, ELIZABETH DIAZ,      )
    MARIA DIAZ, and BLANCA     )
17  GONZALEZ,                  )
                               )
18       Defendant-Intervenors.)

19

20

21

22

23

24

25
```

Monica Smoot

June 19, 2018
Pages 2 to 5

## Page 2

```
1
2                    ORAL DEPOSITION OF
3                      MONICA SMOOT
4                     June 19, 2018
5
6      ORAL DEPOSITION OF MONICA SMOOT, produced as a
7  witness at the instance of the Proposed
8  Defendant-Intervenors and duly sworn, was taken in the
9  above-styled and numbered cause on the 19th day of
10 June, 2018, from 9:14 a.m. to 12:05 p.m., before
11 Amy M. Clark, Certified Shorthand Reporter in and for
12 the State of Texas, reported by computerized stenotype
13 machine at the offices of the Texas Attorney General,
14 300 West 15th Street, Austin, Texas 78701, pursuant to
15 the Federal Rules of Civil Procedure and the provisions
16 stated on the record or attached hereto.
17
18
19
20
21
22
23
24
25
```

## Page 4

```
1  ALSO PRESENT:
2      Ms. Leslea Pickle, Staff Attorney,
           Texas Health and Human Services Commission
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
1                    APPEARANCES
2  FOR PLAINTIFF:
3     Mr. Todd Disher
       Mr. Trent Peroyea
4      Office of the Texas Attorney General
       P.O. Box 12548
5      Austin, Texas 78711
       Phone: (512)936-2266
6      Fax: (512)474-2697
       Email: todd.disher@oag.texas.gov
7
   FOR DEFENDANT:
8
       Mr. Keith Edward Wyatt
9      United States Department of Justice
       1000 Louisiana Street
10     Suite 2300
       Houston, Texas 77002
11     Phone: (713)567-9713
       Fax: (713)718-3303
12     Email: keith.wyatt@usdoj.gov
13 FOR PROPOSED INTERVENOR-DEFENDANTS:
14     Mr. Ernest Herrera
       Ms. Celina Moreno
15     Mexican American Legal Education and Education Fund
       110 Broadway
16     Suite 300
       San Antonio, Texas 78205
17     Phone: (210)224-5476
       Fax: (219)224-5382
18     Email: eherrera@maldef.org
19 FOR PROPOSED INTERVENOR-DEFENDANT STATE OF NEW JERSEY:
20     Ms. Katherine A. Gregory
       New Jersey Office of the Attorney General
21     124 Halsey Street
       P.O. Box 45029-5029
22     Newark, New Jersey 07101
       Phone: (973)648-4846
23     Fax: (973)648-3956
       Email: katherine.gregory@dol.lps.state.nj.us
24
25
```

## Page 5

```
1                      INDEX
2                                              PAGE
3  Appearances ......................................3
4  MONICA SMOOT
5  Examination by Mr. Herrera .......................6
       Examination by Ms. Gregory ...................77
6  Examination by Mr. Disher .......................93
       Court Reporter's Certificate .................96
7
8                     EXHIBITS
9  EXHIBIT           DESCRIPTION               PAGE
10 Exhibit 1    Declaration                     11
11 Exhibit 2    Report to the U.S. Congress on  13
                services and benefits provided
12              to undocumented immigrants
13 Exhibit 3    Report on services and benefits 29
                provided to undocumented
14              immigrants, 2010 update
15 Exhibit 4    Report on Texas HHSC services   30
                and benefits provided to
16              undocumented immigrants, 2/2013
17              update
   Exhibit 5    Report on Texas HHSC services   30
18              and benefits provided to
                undocumented immigrants, 12/14
19              update
20 Exhibit 6    Report on Texas HHSC services   30
                and benefits provided to
21              undocumented immigrants,
                update, 80th legislature,
22              regular session, 2007
23 Exhibit 7    Plaintiffs' Motion for          67
                Preliminary Injunction and
24              Memorandum in Support
25
```

# Exhibit C

This item has been produced in native format.

STATES000054

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Complete | Submitted | Dtl From D | Dtl To Date | Dtl Paid Ar | Claim Type | Submitted | Dtl Diagno | Submitted | Submit Cla | Claim Curr | Claim Type | Cd from D |
| 2 | x | x | x | x | 0 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 3 | x | x | x | x | 56.17 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 4 | x | x | x | x | 4.5 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 5 | x | x | x | x | 10.18 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 6 | x | x | x | x | 7.6 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 7 | x | x | x | x | 40.21 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 8 | x | x | x | x | 40.21 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 9 | x | x | x | x | 3.63 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 10 | x | x | x | x | 62.25 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 11 | x | x | x | x | 20.2 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 12 | x | x | x | x | 19.71 | 23 | 23 | x | 30 | 2 | P | 23 | |
| 13 | x | x | x | x | 1.81 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 14 | x | x | x | x | 4.23 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 15 | x | x | x | x | 1.66 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 16 | x | x | x | x | 12.1 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 17 | x | x | x | x | 7.9 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 18 | x | x | x | x | 8.91 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 19 | x | x | x | x | 4.51 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 20 | x | x | x | x | 6.88 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 21 | x | x | x | x | 2.57 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 22 | x | x | x | x | 0 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 23 | x | x | x | x | 96.28 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 24 | x | x | x | x | 51.36 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 25 | x | x | x | x | 604.8 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 26 | x | x | x | x | 49.44 | 23 | 38 | x | 30 | 2 | P | 23 | |
| 27 | x | x | x | x | 0.17 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 28 | x | x | x | x | 0.86 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 29 | x | x | x | x | 2.59 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 30 | x | x | x | x | 1.56 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 31 | x | x | x | x | 1.73 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 32 | x | x | x | x | 3.63 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 33 | x | x | x | x | 0.86 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 34 | x | x | x | x | 5.18 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 35 | x | x | x | x | 2.59 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 36 | x | x | x | x | 1.56 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 37 | x | x | x | x | 1.73 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 38 | x | x | x | x | 1.38 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 39 | x | x | x | x | 4.06 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 40 | x | x | x | x | 0 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 41 | x | x | x | x | 9.69 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 42 | x | x | x | x | 0 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 43 | x | x | x | x | 9.95 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 44 | x | x | x | x | 0 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 45 | x | x | x | x | 8.91 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 46 | x | x | x | x | 8.91 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 47 | x | x | x | x | 0 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 48 | x | x | x | x | 29.64 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 49 | x | x | x | x | 194.4 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 50 | x | x | x | x | 0 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 51 | x | x | x | x | 0 | 23 | 66 | x | 30 | 1 | P | 23 | |
| 52 | x | x | x | x | 0.14 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 53 | x | x | x | x | 9.86 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 54 | x | x | x | x | 1.37 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 55 | x | x | x | x | 2.17 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 56 | x | x | x | x | 13.95 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 57 | x | x | x | x | 0 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 58 | x | x | x | x | 0 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 59 | x | x | x | x | 9.25 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 60 | x | x | x | x | 9.91 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 61 | x | x | x | x | 3.63 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 62 | x | x | x | x | 51.36 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 63 | x | x | x | x | 47.59 | 23 | 29 | x | 30 | 2 | P | 23 | |
| 64 | x | x | x | x | 1.08 | 23 | 13 | x | 30 | 2 | P | 23 | |
| 65 | x | x | x | x | 30.94 | 23 | 13 | x | 30 | 2 | P | 23 | |
| 66 | x | x | x | x | 26.4 | 23 | 13 | x | 30 | 2 | P | 23 | |
| 67 | x | x | x | x | 32.41 | 23 | 13 | x | 30 | 2 | P | 23 | |

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 599919 | x | x | x | x | 42.12 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599920 | x | x | x | x | 279.3 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599921 | x | x | x | x | 0 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599922 | x | x | x | x | 0 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599923 | x | x | x | x | 0 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599924 | x | x | x | x | 12.07 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599925 | x | x | x | x | 3.62 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599926 | x | x | x | x | 38.8 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599927 | x | x | x | x | 30.62 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599928 | x | x | x | x | 11.25 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599929 | x | x | x | x | 8.89 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599930 | x | x | x | x | 4.49 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599931 | x | x | x | x | 6.86 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599932 | x | x | x | x | 96.6 | 23 | 77 | x | | 30 | 1 | P | 23 | |
| 599933 | x | x | x | x | 51.36 | 23 | 29 | x | | 30 | 2 | P | 23 | |
| 599934 | x | x | x | x | 378 | 23 | 29 | x | | 30 | 2 | P | 23 | |
| 599935 | x | x | x | x | 1.59 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599936 | x | x | x | x | 48.84 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599937 | x | x | x | x | 1.51 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599938 | x | x | x | x | 4.54 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599939 | x | x | x | x | 7.41 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599940 | x | x | x | x | 7.41 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599941 | x | x | x | x | 22.53 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599942 | x | x | x | x | 67.59 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599943 | x | x | x | x | 12.07 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599944 | x | x | x | x | 7.41 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599945 | x | x | x | x | 7.88 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599946 | x | x | x | x | 7.98 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599947 | x | x | x | x | 8.89 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599948 | x | x | x | x | 11.8 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599949 | x | x | x | x | 2.57 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599950 | x | x | x | x | 299.81 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599951 | x | x | x | x | 51.36 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599952 | x | x | x | x | 378 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599953 | x | x | x | x | 51.36 | 23 | 16 | x | | 30 | 2 | P | 23 | |
| 599954 | x | x | x | x | 10.01 | 23 | 30 | x | | 30 | 2 | P | 23 | |
| 599955 | x | x | x | x | 4.89 | 23 | 30 | x | | 30 | 2 | P | 23 | |
| 599956 | x | x | x | x | 80.44 | 23 | 30 | x | | 30 | 2 | P | 23 | |
| 599957 | x | x | x | x | 2.93 | 23 | 30 | x | | 30 | 2 | P | 23 | |
| 599958 | x | x | x | x | 7.25 | 23 | 30 | x | | 30 | 2 | P | 23 | |
| 599959 | x | x | x | x | 62.25 | 23 | 30 | x | | 30 | 2 | P | 23 | |
| 599960 | x | x | x | x | 239.29 | 23 | 30 | x | | 30 | 2 | P | 23 | |
| 599961 | x | x | x | x | 0 | 23 | 17 | x | | 30 | 2 | P | 23 | |
| 599962 | x | x | x | x | 9.25 | 23 | 17 | x | | 30 | 2 | P | 23 | |
| 599963 | x | x | x | x | 3.63 | 23 | 17 | x | | 30 | 2 | P | 23 | |
| 599964 | x | x | x | x | 0 | 23 | 17 | x | | 30 | 2 | P | 23 | |
| 599965 | x | x | x | x | 51.36 | 23 | 17 | x | | 30 | 2 | P | 23 | |
| 599966 | x | x | x | x | 0 | 23 | 17 | x | | 30 | 2 | P | 23 | |
| 599967 | x | x | x | x | 62.53 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599968 | x | x | x | x | 14.26 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599969 | x | x | x | x | 4.03 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599970 | x | x | x | x | 70.34 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599971 | x | x | x | x | 34.45 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599972 | x | x | x | x | 94.12 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599973 | x | x | x | x | 34.45 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599974 | x | x | x | x | 72.86 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599975 | x | x | x | x | 0 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599976 | x | x | x | x | 0 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599977 | x | x | x | x | 0 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599978 | x | x | x | x | 12.1 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599979 | x | x | x | x | 7.9 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599980 | x | x | x | x | 11.27 | 23 | 71 | x | | 30 | 1 | P | 23 | |
| 599981 | x | x | x | x | 343.75 | 23 | 50 | x | | 30 | 4 | P | 23 | |
| 599982 | x | x | x | x | 343.75 | 23 | 50 | x | | 30 | 4 | P | 23 | |
| 599983 | x | x | x | x | 5.04 | 23 | 45 | x | | 30 | 2 | P | 23 | |
| 599984 | x | x | x | x | 4.46 | 23 | 45 | x | | 30 | 2 | P | 23 | |
| 599985 | x | x | x | x | 4.25 | 23 | 45 | x | | 30 | 2 | P | 23 | |

# Exhibit D

Transcript of the Testimony of

# Leo Lopez

## Date:

June 14, 2018

## Case:

STATE OF TEXAS vs UNITED STATES OF AMERICA

```
 1            IN THE UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF TEXAS

 3                    BROWNSVILLE DIVISION

 4   STATE OF TEXAS, et al.,      )
                                  )
 5            Plaintiffs,         )
                                  )
 6       v.                       ) Case No. 1:18-CV-68
                                  )
 7   UNITED STATES OF AMERICA, et )
     al.,                         )
 8                                )
              Defendants,         )
 9                                )
     and                          )
10                                )
     KARLA PEREZ, MARIA ROCHA,    )
11   JOSE MAGAÑA-SALGADO,         )
     NANCI J. PALACIOS GODINEZ,   )
12   ELLY MARISOL ESTRADA, KARINA )
     RUIZ DE DIAZ, CARLOS AGUILAR )
13   GONZALEZ, KARLA LOPEZ, LUIS  )
     A. RAFAEL, DARWIN VELASQUEZ, )
14   JIN PARK, OSCAR ALVAREZ,     )
     NANCY ADOSSI, DENISE ROMERO, )
15   PRATISHTHA KHANNA, JUNG WOO  )
     KIM, ANGEL SILVA, MOSES      )
16   KAMAU CHEGE, HYO-WON JEON,   )
     ELIZABETH DIAZ, MARIA DIAZ,  )
17   and BLANCA GONZALEZ,         )
                                  )
18                                )
          Defendant-Intervenors. )
19
              _____

20
              ORAL AND VIDEOTAPED DEPOSITION OF
21
                         LEO LOPEZ
22
                      JUNE 14, 2018
23
              _____

24

25
```

Leo Lopez

June 14, 2018
Pages 2 to 5

## Page 2

```
 1        ORAL DEPOSITION OF LEO LOPEZ, produced as a witness
 2   at the instance of the Defendant-Intervenors, and duly
 3   sworn, was taken in the above-styled and numbered cause
 4   on June 14, 2018, from 9:05 a.m. to 12:19 p.m., before
 5   Candice Andino, Certified Shorthand Reporter in and for
 6   the State of Texas, reported by machine shorthand, at
 7   the office of the Attorney General for the State of
 8   Texas, 300 W. 15th Street, 11th Floor, Austin, Texas,
 9   pursuant to notice and in accordance with the Federal
10   Rules of Civil Procedure.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1   APPEARANCES CONTINUED:
 2        FOR THE DEFENDANT-INTERVENORS:
 3           MEXICAN AMERICAN LEGAL DEFENSE AND
                 EDUCATIONAL FUND
 4           BY:  CELINA MORENO
                 NINA PERALES
 5           110 Broadway, Suite 300
                 San Antonio, Texas 78205
 6           (210) 224-5476  (210) 224-5382 FAX
                 cmoreno@maldef.org
 7           nperales@maldef.org
 8   ALSO PRESENT:
 9           AMANDA BROWNSON, Ph.D.
10           ERIC MARIN, Texas Education Agency
11           CHELSEA RANGEL
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1           A P P E A R A N C E S
 2   FOR THE PLAINTIFF STATE OF TEXAS AND THE WITNESS:
 3        ATTORNEY GENERAL KEN PAXTON
          BY:  ADAM BITTER
 4             TODD DISHER
               TRENT PEROYEA
 5        P.O. Box 12548
          Austin, Texas 78711-2548
 6        (512) 936-1288  (512) 370-9362 FAX
          adam.bitter@oag.texas.gov
 7        todd.disher@oag.texas.gov
          trent.peroyea@oag.texas.gov
 8
          FOR THE STATE OF NEW JERSEY:
 9
          DEPUTY ATTORNEY GENERAL
10        SECURITIES FRAUD PROSECUTION
          NEW JERSEY DIVISION OF LAW
11        BY:  NICHOLAS DOLINSKY,
          Appearing Telephonically
12        124 Halsey Street, 5th Floor
          P.O. Box 45029
13        Newark, New Jersey 07101
          (973) 693-5055
14        nicholas.dolinsky@law.njoag.gov
15   FOR THE DEFENDANT THE UNITED STATES OF AMERICA:
16        U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
          OFFICE OF IMMIGRATION LITIGATION
17        LIBERTY SQUARE BUILDING
          BY:  JEFFREY S. ROBINS
18        450 5th Street, N.W., Room LL111B
          Washington, D.C. 20001
19        (202) 616-4900
          jeffrey.robins@usdoj.gov
20
21
22
23
24
25
```

## Page 5

```
 1              I N D E X
 2
 3                                          PAGE
 4   Appearances.........................................3
 5   WITNESS:  LEO LOPEZ
 6   Examination by:
 7        MS. MORENO................................7, 112
 8        MR. DISHER...............................100, 111
 9        MR. DOLINSKY.................................101
10   Changes and Signature.............................114
11   Reporter's Certificate............................116
12
13                 EXHIBITS
14   NO.            DESCRIPTION              PAGE
15   Exhibit 1   Notice of Intention to Take Oral      9
                 Deposition of Leo Lopez
16
     Exhibit 2   Declaration of Leonardo R. Lopez     16
17
     Exhibit 3   Document entitled "Education Code     19
18               Chapter 25. Admission, Transfer, and
                 Attendance"
19
     Exhibit 4   USCIS Website Guidelines for DACA     27
20
     Exhibit 5   Printout from the Office of Refugee   33
21               Resettlement
22   Exhibit 6   Printout from the Office of Refugee   47
                 Resettlement entitled "Unaccompanied
23               Alien Children Released to Sponsors
                 By State"
24               (STATE000005 - 000006)
25
```

# Exhibit E

This item has been produced in native format.

STATES000001

**2015-2016 Statewide Summary of Finances**

Last Update: **MAR 14, 2018**
Payment Cycle: Final
Run ID: 22943

**Funding Elements**

| Students | | LPE | Final |
|---|---|---|---|
| 1. | Refined Average Daily Attendance (ADA) | 4,945,112.789 | 4,924,906.137 |
| 2. | Regular Program ADA (Ref ADA - Spec Ed FTEs - CT FTEs) | 4,580,674.826 | 4,544,721.045 |
| 3. | Special Education FTEs | 117,375.010 | 118,964.479 |
| 4. | Career & Technology FTEs | 247,062.953 | 261,220.613 |
| 5. | Advanced Career & Technical Eduction FTEs | 0.000 | 46,452.685 |
| 6. | High School ADA | 1,356,732.363 | 1,384,275.030 |
| 7. | Weighted ADA (WADA) | 6,668,676.771 | 6,672,664.450 |
| 8. | Prior Year Refined ADA | 4,841,017.623 | 4,841,017.623 |
| 9. | Texas School for the Blind and Visually Impaired ADA | 142.700 | 149.558 |
| 10. | Texas School for the Deaf ADA | 1,073.665 | 539.392 |

| Staff | | LPE | Final |
|---|---|---|---|
| 11. | Full-Time Staff (not MSS) | 254,600.42 | 276,054.57 |
| 12. | Part-Time Staff (not MSS) | 20,296.82 | 21,301.33 |

| Property Values | | LPE | Final |
|---|---|---|---|
| 13. | 2015 (current tax year) Locally Certified Property Value | $2,129,035,039,762 | $2,129,035,039,762 |
| 14. | 2014 (prior tax year) Adjusted State Certified Property Value | $1,988,798,246,155 | $1,975,364,055,574 |

| Tax Rates and Collections | | LPE | Final |
|---|---|---|---|
| 15. | 2005 Adopted M&O Tax Rate | 1.4555 | 1.4555 |
| 16. | 2015 (current tax year) Compressed M&O Tax Rate | 0.9807 | 0.9817 |
| 17. | Average Tax Collection Rate | 98.0% | 98.0% |
| 18. | 2015 (current tax year) M&O Tax Rate | 1.0812 | 1.0812 |
| 19. | 2015-2016 (current school year) M&O Tax Collections(2015 DPE collections * 1.0571) | $21,349,705,139 | $22,050,557,324 |
| 20. | 2015-2016 (current school year) I&S Tax Collections | $5,347,393,054 | $5,707,476,193 |
| 21. | 2015-2016 (current school year) Total Tax Collections | $26,697,098,193 | $27,758,033,517 |
| 22. | 2015-2016 (current school year) Total Tax Levy | $27,446,236,147 | $28,038,532,616 |

| Funding Components | | LPE | Final |
|---|---|---|---|
| 23. | Adjusted Allotment | $6,461 | $6,470 |
| 24. | Revenue at Compressed Rate (RACR) per WADA | $5,491 | $5,548 |
| 25. | Cost of Education (CEI) Index | 1.079 | 1.079 |
| 26. | Adjusted CEI | 1.068 | 1.068 |
| 27. | Per Capita Rate | $180.320 | $180.320 |

| Tier I Allotments | | LPE | Final |
|---|---|---|---|

| Program Intent Codes - Allotments | | | |
|---|---|---|---|
| 28. | 11-Regular Program Allotment | $26,186,251,019 | $26,019,813,130 |
| 29. | 23-Special Education Adjusted Allotment (spend 52% of amount) | $2,819,006,026 | $2,914,869,158 |
| 30. | 22-Career and Technology Allotment (spend 58% of amount) | $1,910,338,808 | $2,024,766,682 |
| 31. | 21-Gifted & Talented Adjusted Allotment (spend 55% of amount) | $158,460,762 | $158,528,504 |
| 32. | 24-Compensatory Education Allotment (spend 52% of amount) | $3,767,851,315 | $3,771,634,112 |
| 33. | 25-Bilingual Education Allotment (spend 52% of amount) | $466,817,494 | $486,295,879 |
| 34. | 11-Public Education Grant | $0 | $2,316,798 |
| 35. | 99-New Instructional Facility Allotment | $9,728,755 | $9,884,111 |
| 36. | 99-Transportation Allotment | $371,787,971 | $371,639,740 |
| 37. | 31-High School Allotment (spend 100% of amount) | $372,938,394 | $380,390,905 |
| 38. | Total Cost of Tier I | $36,062,715,172 | $36,139,673,647 |
| 39. | Less Local Fund Assignment | ($19,565,939,392) | ($19,456,366,483) |
| 40. | State Share of Tier I | $18,016,404,986 | $18,183,214,000 |
| 41. | Per Capita Distribution from Available School Fund (ASF) | $873,163,821 | $873,163,821 |

| Foundation School Program (FSP) State Funding | | | |
|---|---|---|---|
| 42. | Greater of State Share of Tier I or (ASF+NIFA+HS) | $18,115,422,865 | $18,282,268,233 |
| 43. | Tier II | $1,874,706,168 | $1,965,497,871 |
| 44. | Other Programs | $562,942,546 | $614,458,471 |
| 45. | Less Total Available School Fund ($180.320 * Prior Yr ADA) | ($873,163,821) | ($873,163,821) |
| 46. | Total FSP Operations Funding | $19,680,373,130 | $19,989,526,146 |

| State Aid by Funding Source | | LPE | Final |
|---|---|---|---|

| Fund Code / Object Code - Funding Source | | | |
|---|---|---|---|
| 47. | 199/5812 - Foundation School Fund | $19,680,373,130 | $19,989,526,146 |
| 48. | 199/5811 - Available School Fund | $873,163,821 | $873,163,821 |
| 49. | 599/5829 - EDA | $328,623,591 | $328,047,639 |
| 50. | 599/5829 - Instructional Facilities Allotment (Bond) | $232,911,084 | $237,065,735 |
| 51. | 199/5829 - Instructional Facilities Allotment (Lease Purchase) | $6,380,753 | $6,339,808 |
| 52. | Additional State Aid for Homestead Exemption (ASAHE) for Facilities | $80,642,164 | $88,864,269 |
| 53. | **TOTAL FSP/ASF STATE AID** | $21,202,094,543 | $21,523,122,957 |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 76 | | | | | | | | | | | | | | |
| 77 | | | | | | | | | | | | | | |
| 78 | | | | | | | | | | | | | $20,862,689,967 | M&O FSP |
| 79 | | | | | | | | | | | | | ($4,257,929,991) | LESS SCE BIL |
| 80 | | | | | | | | | | | | | $22,050,557,324 | M&O COLL |
| 81 | | | | | | | | | | | | | | |
| 82 | | | | | | | | | | | | | | |
| 83 | | | | | | | | | | | | | $38,655,317,300 | FSP (without BIL/SCE) |
| 84 | | | | | | | | | | | | | | |
| 85 | | | | | | | | | | | | | $4,924,906.14 | Total Refined Ada |
| 86 | | | | | | | | | | | | | | |
| 87 | | | | | | | | | | | | | $7,849 | Per ADA |
| 88 | | | | | | | | | | | | | | |
| 89 | | | | | | | | | | | | | $3,771,634,112 | SCE Allotment |
| 90 | | | | | | | | | | | | | $486,295,879 | Bilingual Allotment |
| 91 | | | | | | | | | | | | | | |
| 92 | | | | | | | | | | | | | 3,273,665.77 | SCE FTE |
| 93 | | | | | | | | | | | | | 850,604.96 | BIL ADA |
| 94 | | | | | | | | | | | | | | |
| 95 | | | | | | | | | | | | | $1,152 | Per SCE $$$ |
| 96 | | | | | | | | | | | | | $572 | Per Bil $$$ |
| 97 | | | | | | | | | | | | | | |
| 98 | | | | | | | | | | | | | $9,573 | Total Assuming Bil/SCE |
| 99 | | | | | | | | | | | | | | |
| 100 | | | | | | | | | | | | | | |
| 101 | | | | | | | | | | | | | 3,272 | UAC COUNT |
| 102 | | | | | | | | | | | | | | |
| 103 | | | | | | | | | | | | | | |
| 104 | | | | | | | | | | | | | $31,322,085 | Total COST |
| 105 | | | | | | | | | | | | | | |
| 106 | | | | | | | | | | | | | $31.32 | (in millions) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, ET AL.; | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| *v.* | ) Case No. 1:18-cv-00068 |
| | ) |
| UNITED STATES OF AMERICA, ET AL.; | ) |
| | ) |
| *Defendants,* | ) |
| | ) |
| *and* | ) |
| | ) |
| KARLA PEREZ, ET AL.; | ) |
| | ) |
| STATE OF NEW JERSEY, | ) |
| | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

## ORDER DENYING DEFENDANT-INTERVENORS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFF STATE OF TEXAS AND TO DISMISS ALL OTHER PLAINTIFF STATES

On this date, the Court considered Defendant-Intervenors' Motion to Compel Discovery from Plaintiff State of Texas and to Dismiss All Other Plaintiff States. After considering the motion, any responses thereto, and all other matters properly before the Court, the Court believes the motion is without merit and should be DENIED.

IT IS THEREFORE ORDERED that Defendant-Intervenors' Motion to Compel Discovery from Plaintiff State of Texas and to Dismiss All Other Plaintiff States is DENIED.

SIGNED on this the _____ day of _____, 2019.

_____
Andrew S. Hanen,
U.S. District Court Judge