# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KIRSTJEN M. NIELSEN, *et al.*,<br><br>Defendants,<br><br>*and*<br><br>KARLA PEREZ, *et al.*,<br><br>Defendant-Intervenors. | Case No. 18-cv-00068 |

## DECLARATION OF DONALD J. MONICA

I, Donald J. Monica, hereby make the following declaration with respect to the above captioned matter.

1. I am employed by the Department of Homeland Security ("DHS") as the Adjudications Branch Division Chief for the Service Center Operations Directorate (SCOPS) within U.S. Citizenship and Immigration Services (USCIS). I have been in the Division Chief position since March 31, 2019. I have been employed by USCIS and its predecessor agency, the Immigration and Naturalization Service, since May 1980. As the Adjudications Branch Division Chief, I oversee all planning, management, and operational functions of the Division, including providing guidance for the review and decision making process for Form I-821D, Consideration of Deferred Action for Childhood Arrivals.

1

2. I make this declaration on the basis of my personal knowledge and information made available to me at this time during the course of my official duties.

3. I understand that on June 13, 2018, Defendant-Intervenors propounded their Third set of Discovery Requests for Defendants. Defendant-Intervenors' Third Set of Disc. Req. to Def., Dkt. 80-3.

4. I understand that on July 7, 2018 Defendants served a response on Defendant-Intervenors, which responded in part to Interrogatories Nos. 9-12 and objected to responding to the subparts of those interrogatories, as well as part of Interrogatory No. 13, as burdensome, among other objections. I further understand that Defendants' discovery response objected to Request for Production No. 7 as overbroad and burdensome, among other objections.

5. I understand that on February 20, 2019, Defendants served a supplemental response on Defendant-Intervenors providing data in response to Interrogatories Nos. 3, 4, and 9 – 14 with respect to Plaintiff-State Mississippi.

6. I also understand that on May 17, 2019, Defendant-Intervenors filed a Motion to Compel Defendants to respond to Interrogatories Nos. 9 -13 and produce documents responsive to Request for Production No. 7(3).

7. All estimates provided below are based on best-case scenarios, assuming no unusual situations or circumstances arise.

**Burdens of Collecting and Manually Reviewing Records to Obtain Data Sought in Interrogatories Nos. 9-13 and Documents Sought in Request for Production 7(3)**

8. Paragraphs 5-7 of the Declaration of Tracy Renaud, dated July 6, 2018, ("Renaud Decl.") explain the manual file review that would be required for USCIS to respond to the subparts of Interrogatories Nos. 9-12 and to Interrogatory No. 13 (except for responses to Part 3, Question 5a for cases processed in the USCIS Electronic Immigration System (ELIS)),

2

because USCIS' case management systems do not electronically capture the data Defendant-Intervenors seek in the normal course of business in a manner that can be reliably provided. Paragraphs 8-11 of the Renaud Decl. further detail the extraordinary time burden that would be necessary to conduct a manual file review of hundreds of thousands of records, and Paragraphs 16-26 detail the significant burden involved to conduct a comprehensive search for documents responsive to Request for Production No. 7(3), as the request is not conducive to a narrowly tailored keyword search. The approximate total number of requests to be reviewed and total estimated time burdens have been updated below to include the addition of Plaintiff State Mississippi.

9. For purposes of determining the basis (bases) for initial or renewal DACA denial (Interrogatories Nos. 9-10) from each Plaintiff State between June 2012 and June 2018, USCIS would need to gather records from the Alien File (A-file), the ELIS database, and/or any relevant systems information, including but not limited to emails on adjudicative guidance in Outlook, notices and correspondence in the Enterprise Correspondence Handling Online (ECHO) system, and records from TECS, EARM, and/or EAGLE. USCIS would then need to identify whether any of the A-files for the selected individuals are in electronic format and accessible in agency systems, such as the Enterprise Document Management System A-file repository (EDMS), and determine the location of the paper A-file for all others, because they will reside at different locations throughout the country. Not all A-files will be immediately available to USCIS for purposes of this review as they may be in use by other DHS components or other USCIS offices. Individual, manual case-by-case review of the electronic and/or paper records for approximately 19,730 denied DACA requests (approximately 17,582 denied initial requests and approximately 2,148 denied renewal

3

requests for Plaintiff States from June 2012 to June 2018) to determine the underlying basis (bases) for the denials and whether the request was denied "at least in part because the applicant was a suspected gang member[,] . . . posed a threat to national security or public safety[,]" or was denied "after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum[,]" would be a highly burdensome undertaking.

10. Furthermore, the bases for denial identified in Interrogatories Nos. 9-10 are not necessarily mutually exclusive and/or conducive to clear categorization. For example, generally an individual who is a suspected gang member may also be considered to pose a threat to public safety. Additionally, a suspected gang member with disqualifying convictions may have been issued a denial notice referencing the disqualifying convictions. Accordingly, it will likely be difficult to reconstruct and consistently determine all the applicable reasons an officer denied a request a year or more after the adjudication. Case-by-case review to answer these questions may also require further consultation with the adjudicator who rendered the decision, who may not be available for consultation and/or may not recall the specific adjudication.

11. For each case requiring paper A-file review, USCIS would need to first determine the location of the paper A-file, because A-files will reside at different locations throughout the country and each A-file would need to be manually requested for transfer. Many variables would impact the time it would take for the A-file to be transferred to an officer for review, including the current location of the A-file and whether it is in use by another DHS component or another USCIS office. If the A-file is in use by another USCIS or DHS office and cannot be released immediately, USCIS would need to wait for the physical A-file to be released to an officer/employee for purposes of this review, which could be months.

Assuming most paper A-files that would be needed for this review are located at USCIS' National Records Center (NRC) and not otherwise currently needed by another DHS component or USCIS office, USCIS estimates that it would take approximately 15 business days from the date the A-file is requested, to the date it is received by a USCIS officer for review.

12. USCIS further estimates that once all relevant information is gathered, electronically and/or physically, including from relevant systems, and the record is before the officer conducting the review, manual review of the paper A-file and/or electronic record to determine the underlying basis (bases) for denial, including an assessment of the evidence upon which the officer made the denial determination, would take anywhere from approximately 20 to 90 minutes per case, depending on the complexity of the case and the volume of the record. Therefore, USCIS estimates that individual case-by-case review of the electronic and/or paper files for over approximately 19,730 DACA requests could take anywhere between approximately 6,577 hours and 9,866 hours to complete.

13. For purposes of determining the basis (bases) for an initial or renewal Request for Evidence (RFE) (Interrogatories Nos. 11-12), USCIS would need to access a copy of the RFE. If the RFE was created in ECHO, an officer would access an electronic copy and confirm in ELIS or CLAIMS 3 that the notice was issued and mailed. Individual case-by-case review of the electronic and/or paper copies of the RFEs sent for approximately 60,853 initial and renewal DACA requests (approximately 51,283 initial requests received RFEs and approximately 9,570 renewal requests received RFEs for Plaintiff States from June 2012 to June 2018) to determine the basis (bases) for sending the RFE would also be an unduly burdensome undertaking. USCIS estimates that it would take approximately five minutes per case to

retrieve and review an electronic copy of the RFE, in order to determine the basis (bases) on which the RFE was sent. To conduct this case-by-case electronic review for approximately 60,853 requests would take more than approximately 5,071 hours to complete. However, not all RFEs are available for review electronically, therefore the time required to complete this task would increase significantly depending on the number of physical A-files that would need to be retrieved and reviewed. USCIS is not able to estimate the number of RFEs that are not electronically available and therefore is not able to estimate the number of physical A-files that would need to be retrieved and reviewed, however the steps and time burden described in Paragraph 11 above regarding locating and requesting individual A-files for transfer to an officer for review would still apply.

14. As explained in Paragraph 10 of the Renaud Decl., a response to Part 3, Question 4 on the Form I-821D (Interrogatory 13) is not required in order for USCIS to accept and process the Form I-821D. USCIS officers review the evidence submitted with the request to determine the requestor's status on June 15, 2012. A DACA requestor may have left the response to Part 3, Question 4 blank, handwritten a response to the question, or selected one of three standard responses available in a dropdown box that is available when completing the electronic PDF version of the Form I-821D. The three standard responses that a DACA requestor may select in the dropdown box for Part 3, Question 4 are: "Status Expired," "Parole Expired," or "No Lawful Status". Therefore, an electronic Form I-821D record in either CLAIMS 3 or ELIS may have a blank response for this question, or the response entered by the requestor on the Form I-821D may not have been in a format that was recordable electronically given USCIS electronic formatting limitations. CLAIMS 3 does not electronically capture the standard, dropdown responses to Part 3, Question 4, on the

Form I-821D, and ELIS does not systematically capture this data in a manner that can be reliably provided. Additionally, as explained in Note 2 of the Chart previously provided in response to Interrogatory No. 13, CLAIMS 3 does not electronically record the response to Part 3, Question 5a; only cases processed in ELIS contain this information electronically. Accordingly, manual, individual, case-by-case review would be necessary to obtain this information.

15. For purposes of determining the response provided on approved initial DACA requests to Part 3, Question 4 for approvals processed in ELIS and CLAIMS 3, and Part 3, Question 5a for approvals processed in CLAIMS 3, USCIS would need to review the individual case in ELIS, access a copy of the Form I-821D retained in the EDMS database, or locate and review the paper Form I-821D in the A-file if not available elsewhere. Individual case-by-case review of ELIS records, a digitized version of the Form I-821D, or the original paper version of the Form I-821D, for approximately 157,763 approved requests to determine which of the three standard dropdown responses to Part 3, Question 4 is applicable to the requestor for ELIS and CLAIMS 3 cases, and the response to Part 3, Question 5a for CLAIMS 3 cases, would take approximately 10 minutes per case, for a total of approximately 26,294 hours. For any cases that require paper review of the original Form I-821D, USCIS would need to first determine the location of the paper A-file, because A-files will reside at different locations throughout the country and each A-file would need to be manually requested for transfer. USCIS estimates that it would take approximately 15 days for an officer to receive the A-file for review after it is requested, assuming the A-file is located at the NRC and not otherwise currently needed by another DHS component or USCIS office. USCIS is not able

to estimate the number of cases for which an electronic copy of the Form I-821D would not be available.

16. Individual case-by-case review of electronic and/or paper records to extract the data sought in Interrogatories Nos. 9-13 would require the diversion of officers and employees from other mission critical work. To the extent officers/employees would need to review certain paper records, the files would need to be located and transferred, if even possible in every case, to the officer/employee, which may take considerable time as such files are frequently in use by other DHS offices, such as U.S. Immigration and Customs Enforcement (ICE) trial attorneys in removal proceedings. USCIS may not be able to obtain certain A-files if they are actively in use by another office, which may make the review necessary to determine the basis (bases) for denial or RFE nearly impossible.

17. Many of the officers/employees who would have to manually review the electronic and/or paper records on each case to determine the reasons for denial, RFE, or the responses selected on the Form I-821D to Part 3, Questions 4 and 5a, would likely need to be diverted from reviewing, processing, and adjudicating DACA requests or immigration benefit requests, including potentially the review and resolution of background check hits and/or other security vetting procedures, as these individuals are most familiar with the Form I-821D and the DACA adjudications process. Those ongoing operations would be significantly and detrimentally affected if adjudicators were diverted to work on this burdensome discovery, with the potential to significantly negatively impact and delay the adjudication of DACA requests, which could lead to other burdensome litigation against USCIS.

### **Burdens of Identifying, Collecting, Converting, Reviewing, and Redacting a Sample of Denials, RFEs, and Approvals for Production to Defendant-Intervenors**

18. As explained in the Declaration of Michael Hoefer (Hoefer Decl.), dated June 7, 2019, in order to obtain a sample of DACA denials, RFEs, and approvals for purposes of responding to Interrogatories Nos. 9-13, USCIS' Office of Performance and Quality ("OPQ") would first identify a sample of 1,960 receipt numbers across the five Interrogatory categories.

19. As explained in Paragraphs 9-12 above, for purposes of determining the basis (bases) for denial of a sampling of initial and renewal DACA denials and whether the request was denied "at least in part because the applicant was a suspected gang member[,] . . . posed a threat to national security or public safety[,]" or was denied "after the adjudicator determined the applicant met the five criteria outlined in the 2012 DACA memorandum[,]" (Interrogatories Nos. 9-10), USCIS would need to gather records from the A-file, the ELIS database, and/or any relevant systems information, including but not limited to emails on adjudicative guidance in Outlook, notices and correspondence in ECHO, and records from TECS, EARM, and/or EAGLE. USCIS would then need to identify whether any of the A-files for the selected individuals are in electronic format and accessible in agency systems, such as the EDMS A-file repository, and determine the location of the paper A-file for all others, because they will reside at different locations throughout the country. Not all A-files will be immediately available to USCIS for purposes of this review as they may be in use by other DHS components or other USCIS offices. USCIS would either need to wait for the physical A-file to be released to an officer/employee for purposes of this review, which could be months, or would need to replace the receipt number in the sample with a new randomly selected receipt number. As explained in the Hoefer Decl., replacing the receipt number has the potential to impact the overall randomness of the sample. As explained in the Declaration

9

of Tracy A. Bellisime (Bellisime Decl.), dated June 7, 2019, available physical A-Files and Temporary A-Files (T-files) that are not digitized will need to be shipped to a central location where they can be scanned and saved electronically. ELIS records and relevant systems information would also need to be accessed, exported, and saved electronically.

20. As explained in Paragraph 13 above, for purposes of determining the basis (bases) for an initial or renewal RFE (Interrogatories Nos. 11-12), for each receipt number selected for the sampling, USCIS would need to access a copy of the RFE. If the RFE was created in ECHO, an officer would need to access an electronic copy and confirm in ELIS or CLAIMS 3 that the notice was issued and mailed. If USCIS systems confirm the notice was mailed, USCIS would need to save an electronic copy of the RFE from ECHO into a central location. However, not all RFEs are available for review electronically, therefore the time required to complete this task would increase significantly depending on the number of physical A-files that would need to be retrieved and reviewed. As explained in the Bellisime Decl., available physical A-Files and Temporary A-Files (T-Files) that are not digitized will need to be shipped to a central location where they can be scanned and saved electronically.

21. As explained in Paragraph 14 above, for purposes of determining the response provided on approved initial DACA requests to Part 3, Question 4 for cases processed in ELIS and CLAIMS 3, and Part 3, Question 5a for cases processed in CLAIMS 3, for each receipt number selected for the sampling (Interrogatory 13), USCIS would need to export information on the individual case from ELIS or access a copy of the Form I-821D in EDMS and save an electronic copy of the records into a central location, or locate the A-file and transfer the A-file to the NRC to scan the paper copy of the Form I-821D (if available).

10

22. As explained in the Bellisime Decl., the scanned version of the A-files and/or Form I-821D, will need to be electronically saved to a central location in order to be transferred to the Department of Justice (DOJ) on an encrypted drive for loading into DOJ's document review platform. Additionally, a copy of all other relevant electronic records from ELIS, EDMS, ECHO, TECS, EARM, EAGLE and/or other relevant systems will need to be electronically saved to a central location and transferred to DOJ.

23. Because USCIS will need to redact law enforcement sensitive, law enforcement privileged, and other privileged or protected information before providing any records to Defendant-Intervenors, *see* Bellisime Decl., in many cases Defendant-Intervenors will likely be unable to determine whether an initial or renewal DACA request was denied at least in part because the requestor was a suspected gang member or at least in part because the requestor posed a threat to national security or public safety. The denial notice generally will not explicitly state that the individual is a suspected gang member or poses a threat to national security or public safety due to the relevant information being law enforcement sensitive and/or law enforcement privileged. Accordingly, providing a sampling of cases to Defendant-Intervenors to review would not necessarily enable them to extract the information they seek regarding denials.

### Burdens of Identifying and Reviewing a Sample of Denials, RFEs, and Approvals for USCIS to Obtain Data Sought in Interrogatories Nos. 9-13

24. The burden and process for identifying the sample would be the same as described in the Hoefer Decl., without the added step of replacing any cases covered by 8 U.S.C. 1367.

25. The process and per case time burden for collection and review of the relevant A-files and other records for the sample would be the same as described in Paragraphs 9-16 above for

11

purposes of identifying and reviewing a sample of cases to obtain the data sought in Interrogatories Nos. 9-13.

26. For purposes of determining the basis (bases) for denial for a sampling of initial and renewal DACA denials (Interrogatories Nos. 9-10), USCIS estimates that once all relevant information is gathered, electronically and/or physically, including from relevant systems, and the record is before the officer conducting the review, manual review of the paper A-file or electronic record to determine the underlying basis (bases) for denial, including an assessment of the evidence upon which the officer made the denial determination, would take anywhere from approximately 20 to 90 minutes per case, depending on the complexity of the case and the volume of the record. Therefore, USCIS estimates that individual case-by-case review of the electronic and/or paper files for a sample size of 750 cases (400 initial denials (2.3%) and 350 renewal denials (16.3%)), *see* Hoefer Decl., could take anywhere between approximately 250 hours and 1,125 hours to complete. These approximately 250 to 1,125 hours would be in addition to the estimated approximately 15 business days it would take from the date an A-file is requested to the date it is received by an officer for review, assuming the file is located at the NRC and not in use by another DHS component or USCIS office. If the A-file is in use by another USCIS or DHS office and cannot be released immediately, USCIS would need to wait for the physical A-file to be released to an officer/employee for purposes of this review, which could be months, or would need to replace the receipt number in the sample with a new randomly selected receipt number. As explained in the Hoefer Decl., replacing the receipt number has the potential to impact the overall randomness of the sample.

27. For purposes of determining the basis (bases) on which the RFE was sent for a sampling of initial and renewal RFEs (Interrogatories Nos. 11-12), USCIS estimates that it would take approximately five minutes per case to retrieve and review an electronic copy of the RFE. To conduct this case-by-case electronic review for a sample size of 800 cases (410 initial RFEs (0.8%) and 390 renewal RFEs (4.1%), *see* Hoefer Decl., would take more than approximately 66 hours to complete. As noted in Paragraph 13 above, however, not all RFEs are available for review electronically, therefore the time required to complete this task would increase significantly depending on the number of physical A-files that would need to be retrieved and reviewed. USCIS is not able to estimate the number of RFEs that are not electronically available and therefore is not able to estimate the number of physical A-files that would need to be retrieved and reviewed, however the steps and time burden described in Paragraph 11 above regarding locating and requesting individual A-files for transfer to an officer for review would still apply.

28. For purposes of determining the response provided on approved initial DACA requests to Part 3, Question 4 for approvals processed in ELIS and CLAIMS 3, and Part 3, Question 5a for approvals processed in CLAIMS 3 for a sampling of approvals (Interrogatory 13), USCIS estimates that individual case-by-case review of ELIS records, an electronic copy of the Form I-821D, or the original paper version of the Form I-821D would take approximately 10 minutes per case. To conduct this case-by-case electronic review for a sample size of 410 cases (0.03%), *see* Hoefer Decl., would take more than approximately 68 hours to complete. As described in Paragraph 15 above, for any cases that require paper review of the original Form I-821D, USCIS estimates that it would take approximately 15 days for an officer to receive the A-file for review after it is requested, assuming the A-file is located at the NRC

and not otherwise currently needed by another DHS component or USCIS office. If the A-file is in use by another USCIS or DHS office and cannot be released immediately, USCIS would need to wait for the physical A-file to be released to an officer/employee for purposes of this review, which could be months, or would need to replace the receipt number in the sample with a new randomly selected receipt number. As explained in the Hoefer Decl., replacing the receipt number has the potential to impact the overall randomness of the sample. USCIS is not able to estimate the number of cases for which an electronic copy of the Form I-821D would not be available.

29. As described in Paragraphs 11-12 above, this type of manual file review, even for a sample of cases, would likely require the diversion of significant resources from other mission critical work, with the potential to significantly negatively impact and delay the adjudication of DACA requests, which could lead to other burdensome litigation against USCIS.

I certify, to the best of my knowledge and belief that content in this declaration is true and correct.

Executed this 7th day of JUNE of 2019.

*[signature]*
Donald J. Monica