**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant-Intervenors, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| Defendant-Intervenor. | § | |

**EXHIBITS IN SUPPORT OF DEFENDANT-INTERVENORS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# Volume 5

# Exhibits 30 - 34

# DEF-INTERV.
# EX. 30

2006 WL 1228846
Only the Westlaw citation is currently available.
United States District Court, W.D. Louisiana,
Monroe Division.

Normal PARM Jr., et al

v.

Mark W. SHUMATE, in his U.S. Official
Capacity as Sheriff of East Carroll Parish.

Civil Action No. 3-01-2624.
|
May 1, 2006.

**Attorneys and Law Firms**

Paul L. Hurd, Law Office of Paul L. Hurd, Monroe, LA,
for Plaintiff.

Freeman R. Matthews, Ana T. Fuentes, Craig E. Frosch,
Usry Weeks & Matthews, New Orleans, LA, John V.
Quaglino, Juge Napolitano et al ., Metairie, LA, for
Defendant.

MEMORANDUM ORDER

JAMES D. KIRK, Magistrate Judge.

 **\*1** Before the court is a motion by Walker Lands, Inc.
(Walker) for leave to participate in pending motions for
summary judgment as amicus curiae [Doc. # 84]. In the
motion Walker, who was allowed to file a brief amicus
curiae in connection with motions # 5 and 11, seeks
permission to "file pleadings as may be appropriate" with
respect to the district judge's action on Report
and Recommendation, Doc. # 82. Walker also seeks
permission to file an appeal [1] of my order of April 21st
striking the exhibits attached to Walker's amicus brief as
not allowed.

The motion is granted in part and denied in part.

Walker was permitted to file only a brief to assist the court
with respect to the undersigned's consideration of motions
for summary judgment 5 and 11. Despite Walker's counsel

suggesting at a hearing on the motions [2] that Walker
might seek leave to intervene or file an amicus brief, only
amicus status was sought by Walker. Walker now seeks to
participate with regard to the district judge's consideration
of my Report and Recommendation.

Because Walker appears only amicus curiae, it has
no standing in this case and it may not raise issues
or file an appeal of an order such as the order to
strike evidence it attempted to file in connection with
the motions for summary judgment. [3] See *Resident
Council of Allen parkway v. United States,* 980 F.2d 1043
(5th Cir.1993); *Exxon Corp. v. Board of Education,* 849
FSupp. 479 (S.D.Miss.1994). See also *United States
v. Hooker Chemicals & Plastics, Corp.,* 749 F.2d 968
(2nd Cir.1984); *Manago v. Rosario,* 91 Fed. Appx. 9
(9th Cir.2004). "The bright line between an amicus and
a named party centers around control of the litigation.
The named parties should always remain in control, with
the amicus merely responding to the issues presented by
the parties. An amicus cannot initiate, create, extend, or
enlarge issues. Further, an amicus has no right to expand
or dismiss issues." *Wyatt v. Hanan,* 868 F.Supp. 1356
(M .D.Alabama, 1994). A person appearing amicus curiae
does not have party status and does not have all the
rights of a party, including the right of full participation
in the proceedings as well as the right of appeal or
further participation in the proceedings. *United States v.
Microsoft Corporation,* 1995 WL 121107 (D.D.C., 1995);
*Waste Management of Pennsylvania v. City of York,* 162
F.R .D. 34 (M.D.Penn, 1995).

For these reasons, IT IS ORDERED that Walker is
allowed to file an amicus brief, within the page limits set
by local rules, regarding any objections to the Report
and Recommendation which are filed by the parties to
this suit; however, because it is not a party to this suit,
it will not be permitted to file an Objection itself and
will be limited to briefing only those issues raised by the
parties pursuant to their Objections. Further Walker may
not submit evidence and may not attach documents to
its amicus brief. Walker's sole status in this proceeding is
to assist the court with regard to the issues raised by the
parties to the suit based on the evidence submitted by them
in the suit. To permit further participation would be, in
effect, to grant Walker intervenor status, which will not be

**Rybak, Grace 6/14/2019**
**For Educational Use Only**

**Parm v. Shumate, Not Reported in F.Supp.2d (2006)**

done at this late stage in this proceeding which has been pending since 2001.

**\*2** IT IS FURTHER ORDERED that Walker's motion for leave to appeal the Order Striking its exhibits is DENIED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1228846

Footnotes

1 Erroneously termed "objection" by Walker in its memorandum and proposed order.
2 Although at that time Walker had not been granted any status in the case, its attorney, who appeared in the "audience" at the hearing was allowed to address the court.
3 Summary judgment evidence may not be submitted by a non-party.

**End of Document**　　　　　　　　© 2019 Thomson Reuters. No claim to original U.S. Government Works.

# DEF-INTERV.
# EX. 31

46 FR 25079-03, 1981 WL 119909(F.R.)
RULES and REGULATIONS
DEPARTMENT OF JUSTICE
Immigration and Naturalization Service
8 CFR Part 109

Employment Authorization to Aliens in the United States

Tuesday, May 5, 1981

**\*25079**  AGENCY: Immigration and Naturalization Service, Justice.

ACTION: Final rule.

**\*25080**  SUMMARY: This final rule adds a new Part 109 to Chapter I of Title 8 of the Code of Federal Regulations to codify procedures and criteria for the grant of employment authorization to aliens in the United States. The new rules are necessary to codify the various Service Operations Instructions and policy statements in one place in the regulations so that the public may conveniently locate the rules on employment authorization for aliens and the standards which are applicable.

EFFECTIVE DATE: June 4, 1981.

FOR FURTHER INFORMATION CONTACT:

For General Information: Stanley J. Kieszkiel, Acting Instructions Officer, Immigration and Naturalization Service, 425 Eye Street, NW., Washington, D.C. 20536. Telephone: (202) 633-3048.

For Specific Information: Richard R. Spurlock, Immigration Examiner, Immigration and Naturalization Service, 425 Eye Street, NW., Washington, D.C. 20536. Telephone: (202) 633-2361.

SUPPLEMENTARY INFORMATION: On March 26, 1980, a proposed rule was published in the Federal Register (45 FR 19563) to add a new part 109 to Chapter I of existing regulations to codify procedures and criteria for the grant of employment authorization to aliens in the United States. Section 109.1(a) Classes of aliens eligible, identifies the classes of aliens who are authorized to be employed in the United States as a condition of their admission without specific authorization from the Service. "Employment authorization" in § 109.1(a) means that the aliens may engage in activities solely related to the status in which they were admitted. For example, an "A" diplomat may engage in activities related to his diplomatic functions; and an "L-1" intra-company transferee may engage in activities solely related to the purposes set forth in the visa petition. Paragraph (b) of § 109.1 describes the classes of aliens who may apply for discretionary work authorization based upon their financial need and that of their families. Section 109.2 sets forth the criteria under which a district director may revoke previously granted work authorization. It also sets forth notification requirements to the alien and allows submission of rebuttal evidence by the alien.

In response to the publication of the proposed rule in the Federal Register, approximately 30 responses were received from various commenters including immigration reform federations, attorneys, community service groups, and Service employees. All responses were given careful consideration. Most commenters fully supported the codification of criteria

and procedures for work authorization of aliens in the United States. However, there was wide diversity of opinion as to whether the Service should be strict or permissive when granting work authorization.

Several commenters expressed concern that § 109.1(a) did not adequately cover all categories for nonimmigrants who are permitted to work while in the United States. Five additional classes of nonimmigrant aliens who are authorized to work in the United States have been added to this part.

In addition, the wording has been revised for certain categories to conform to the provisions of the Refugee Act of 1980.

There was opposition expressed by several commenters for the showing of economic need as a pre-requisite to work authorization; they contend that such a requirement will unduly burden the alien and Service. To alleviate this burden the regulation has been amended to provide for a simple statement to be submitted by the alien attesting to his/her assets, income and expenses to be used by the district director in granting work permission.

Title 45 Public Welfare, Part 1060, Attachment A, Community Services Administration (CSA) Income Poverty Guidelines, apply to all financially assisted grants under the Economic Opportunity Act. It is provided that agencies may use these guidelines for other administrative or statistical purposes as appropriate. The Service has incorporated the CSA poverty guidelines by reference in § 109.1(b) of the regulations. The acceptance of the alien's statement as to financial status and the use of the income poverty guidelines should overcome objections to the absence of articulated standards or guidelines.

A number of commenters labeled as unfair the requirement that the alien's application for asylum under section 208 of the Act be "prima facie approvable" before his/her employment would be authorized. The wording has been changed to read "non-frivolous application" so as to include any application for asylum where a substantive claim of persecution is made.

It was also suggested that the proposed rule be amended to include nunc-pro-tunc employment authorization for asylum applicants.

Section 209 of the I. & N. Act provides that an alien granted asylum pursuant to section 208 may be adjusted to the status of permanent resident alien notwithstanding the exclusionary provisions of section 245(c) of the Act. Therefore, the alien granted asylum is not prejudiced by the absence of a nunc-pro-tunc employment authorization provision in Part 109.

Several writers claimed that the principle of due process will be violated because the district director's authority to revoke employment authorization under § 109.2 is not reviewed by someone other than the person who made the initial decision. The Service's position is that the review by a district director is at an appropriate level of responsibility to insure due process.

Section 109.2 provides for the district director to notify the alien of his intent to revoke employment authorization when it appears that one or more of the conditions on which it was granted no longer exist. The alien is given an opportunity to present countervailing evidence within 15 days of the notice as to why his/her permission to work should not be revoked. Employment in the United States is not an inherent right of the aliens described in § 109.1(b). Their employment authorization is a matter of administrative discretion because humanitarian or economic needs warrant administrative action. The Service has authority to withdraw the work authorization when one or more of the factors for eligibility cease to exist, or for good cause shown.

After carefully evaluating the comments received as discussed above, Chapter I of Title 8 of the Code of Federal Regulations is amended by adding a new Part 109 to read as follows:

**PART 109—EMPLOYMENT AUTHORIZATION**

Sec.109.1 Classes of aliens eligible.109.2 Revocation of employment authorization.

Authority: Sec. 103, 245(c); (8 U.S.C. 1103, 1255(c))

 8 CFR § 109.1

**§ 109.1 Classes of aliens eligible.**

(a) Aliens authorized employment incident to status. The following classes of aliens are authorized to be employed in the United States as a condition of their admission or subsequent change to one of the indicated classes, and specific authorization need not be requested:


(a)(1) A lawful permanent resident alien.

(a)(2) An alien admitted to the United States as a refugee under section 207 of the Act.

(a)(3) An alien paroled into the United States as a refugee.

(a)(4) An alien granted asylum under section 208 of the Act.

 **\*25081**  (a)(5) An alien admitted to the United States as a nonimmigrant fiance or fiancee.

(a)(6) An alien admitted in one of the following classifications, or whose status has been changed to such classification under section 247, 248 of the Act:

(a)(6)(i) A foreign government official (A-1), or (A-2).


(a)(6)(ii) An employee of a foreign government official (A-3).

(a)(6)(iii) A nonimmigrant visitor for business (B-1).

(a)(6)(iv) A nonimmigrant crewman (D-1).

(a)(6)(v) A nonimmigrant treaty trader or investor (E-1), or (E-2).


(a)(6)(vi) A representative of an international organization (G-1), (G-2), (G-3), or (G-4).

(a)(6)(vii) A personal servant of an employee or representative of an international organization (G-5).

(a)(6)(viii) A temporary worker or trainee (H-1), or (H-2), or (H-3).

(a)(6)(ix) An information media representative (I).

(a)(6)(x) An exchange visitor (J-1).


(a)(6)(xi) An intra-company transferee (L-1).

The employment authorization is limited solely to the extent and conditions described for the corresponding classifications in section 101(a)(15) of the Act, 8 CFR Part 214, and 22 CFR 63.24.

(b) Aliens who must apply for work authorization. Any alien within a class of aliens described in this section may apply for work authorization to the district director in whose district the alien resides:

(b)(1) Any alien maintaining a lawful nonimmigrant status in one of the following classes may be granted permission to be employed:

(b)(1)(i) Alien spouse or unmarried dependent son or daughter of a foreign government official (A-1), or (A-2) as provided in § 214.2(a) of this chapter.

(b)(1)(ii) Alien nonimmigrant student (F-1) as provided in § 214.2(f) of this chapter.

(b)(1)(iii) Alien spouse or an unmarried dependent son or daughter of an officer or employee of an international organization (G-4) as provided in § 214.2(g) of this chapter.

(b)(1)(iv) Alien spouse of an exchange visitor (J-2) as provided in § 214.2(j) of this chapter.

(b)(2) Any Alien who has filed a non-frivolous application for asylum pursuant to Part 208 of this chapter may be granted permission to be employed for the period of time necessary to decide the case.

(b)(3) Any alien who has properly filed an application for adjustment of status pursuant to section 245 of the Act may be granted permission to be employed for the period of time necessary to decide the case.

(b)(4) Any alien who has applied to an immigration judge under § 242.17 of this chapter for suspension of deportation pursuant to section 244(a) of the Act may be granted permission to be employed for the period of time necessary to decide the case: Provided, The applicant can establish an economic need to work.

(b)(5) Any deportable alien granted voluntary departure prior to commencement of a hearing under § 242.5(a)(v), (vi), or (viii) of this chapter may be granted permission to be employed for the period of time prior to voluntary departure: Provided, The alien establishes to the satisfaction of the district director that he/she is financially unable to maintain himself/herself and family without employment. Factors which may be considered in granting employment authorization to an alien who has been granted voluntary departure:
(b)(5)(i) Length of voluntary departure granted;

(b)(5)(ii) Dependent spouse and/or children in the United States who rely on the alien for support;

(b)(5)(iii) Reasonable chance that legal status may ensue in the near future; and

(b)(5)(iv) Reasonable basis for consideration of discretionary relief.

(b)(6) Any alien in whose case the district director recommends consideration of deferred action, an act of administrative convenience to the government which gives some cases lower priority: Provided, The alien establishes to the satisfaction of the district director that he/she is financially unable to maintain himself/herself and family without employment.

The Community Service Administration Income Poverty Guidelines, Appendix 22 CFR 42.91(a)(iii) shall be used as the basic criteria to establish economic necessity for employment authorization requests where the alien's need to work is a factor. The applicant shall submit a signed statement listing his/her assets, income, and expenses as evidence of his/her economic need to work. Permission to work granted on the basis of the applicant's statement may be revoked under § 109.2 upon a showing that the information contained in the statement was not true and correct.

8 CFR § 109.2

**§ 109.2 Revocation of employment authorization.**

(a) Basis for revocation of employment authorization. Employment authorization granted under § 109.1(b) of this part may be revoked by the district director when it appears that one or more of the conditions upon which it was granted no longer exist, or for good cause shown.

(b) Notice of intent to revoke employment authorization. When a district director determines that employment authorization should be revoked, he/she shall serve notice of the reasons and the intention to revoke on the alien. The alien will be granted a period of fifteen days from the date of service of notice in which to submit evidence why the authorization should not be revoked. The decision by the district director shall be final and no appeal shall lie from the decision to revoke the authorization.

**Certification**

In accordance with 5 U.S.C. 605(b), this rule will not have a significant economic impact on a substantial number of small entities nor is it a major rule as defined in E.O. 12291. The rule codifies, under one part of the regulations, existing Service practice and procedures relating to employment authorization for aliens. This codification will enable the public to find all the rules on employment authorization in one convenient part.

Dated: April 20, 1981.

David Crosland,

Acting Commissioner of Immigration and Naturalization.

[FR Doc. 81-13460 Filed 5-4-81; 8:45 am]

BILLING CODE 4410-10-M

---

   © 20 9 Thomson Reuters. No c a m to or g na  U.S. Government Works.

---

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# DEF-INTERV.
# EX. 32

52 FR 16216-01, 1987 WL 142272(F.R.)
RULES and REGULATIONS
DEPARTMENT OF JUSTICE
8 CFR Parts 109 and 274a
[INS No. 1023-87]

Control of Employment of Aliens

Friday, May 1, 1987

**\*16216**  AGENCY: Immigration and Naturalization Service, Justice.

ACTION: Final rule.

SUMMARY: This rule adds Part 274a and redesignates Part 109 with amendments as Part 274a, Subpart B, by: (1) Defining terms to clarify the regulations; (2) adding new sections to establish procedures for the verification of employment eligibility for workers in the United States; (3) delineating new sections to establish enforcement and process procedures for violations; (4) redesignating Part 109 (Employment Authorization) as Subpart B of Part 274a to consolidate into one part what would otherwise be dispersed regulations. The rule is necessitated by the Immigration Reform and Control Act of 1986, Pub. L. 99-603, which amended the Immigration and Nationality Act (Act) by adding provisions prohibiting the unlawful employment of aliens. These provisions make it unlawful to hire, recruit or refer for a fee for employment, unauthorized aliens in the United States. The rule provides for an employment eligibility verification system designed to prevent the employment of unauthorized aliens. The statute mandates the Attorney General to issue regulations implementing these provisions not later than June 1, 1987.

EFFECTIVE DATE: June 1, 1987.

FOR FURTHER INFORMATION CONTACT:Walter D. Cadman, Deputy Assistant Commissioner, Investigations Division, Immigration and Naturalization Service, 425 I Street, NW., Washington, DC 20536, Telephone: (202) 633-2997.

SUPPLEMENTARY INFORMATION: Since 1972 numerous attempts have been made by Congress and recent Administrations to pass immigration reform legislation. The imposition of sanctions on employers has been a central element of nearly all such attempts with the view that curbing illegal immigration would not be effective without such sanctions. The Select Commission on Immigration and Refugee Policy was established by Congress in October 1978. It was created to review immigration policy issues, assess the impact of legal and illegal immigrants on the nation, and recommend changes in policy and practice. The Commission made a series of over 70 recommendations concerning these issues in its final report in May 1981. Those recommendations included the imposition of employer sanctions to control illegal immigration. Thereafter a Cabinet level task force reviewed the Select Commission Report and other recommendations on immigration reform. In 1981 and 1982 alone some 28 hearings were conducted by House and **\*16217**  Senate immigration subcommittees on proposed immigration reform.

Since 1975 INS has vigorously worked in the spirit of cooperation with employers on an ad hoc basis to encourage a policy of employing only U.S. citizens and aliens lawfully authorized to work in the United States. The success of this effort, called Operation Cooperation, has been encouraging, but with the limits of INS resources and lack of statutory backing such programs have been of limited effectiveness. Mandatory compliance is the only effective mechanism that reduces "pull" factors that encourage rather than discourage illegal immigration.

On November 6, 1986, the President signed into law the Immigration Reform and Control Act of 1986, Pub. L. 99-603, (IRCA). This legislation is the most comprehensive reform of our immigration laws in 35 years. The employer sanctions provisions of IRCA constitute one of three cornerstones on which immigration reform is based. The other two are increased enforcement measures and legalization.

Section 101 of IRCA is designed to control the unlawful employment of aliens in the United States by imposing civil and criminal penalties on those persons and entities that hire, or that recruit or refer for a fee unauthorized aliens. Section 101 of IRCA amends the Act by adding section 274A which closes a large gap in the enforcement of our immigration laws by: (1) Making it unlawful to hire, recruit or refer for a fee unauthorized aliens; (2) requiring those who hire, or who recruit or refer for a fee individuals for employment, to verify both the identity and employment eligibility of such individuals and (3) making it unlawful to continue to employ unauthorized aliens hired after November 6, 1986. While section 112 of IRCA amends section 274(a) of the Act (which sets forth criminal penalties for individuals who harbor illegal aliens), employment of illegal aliens in and of itself does not constitute harboring under section 274(a) of the Act as amended.

Since enactment of IRCA, INS has been working to develop these rules along with a balanced enforcement policy. On January 20, 1987, INS published a notice in the Federal Register to solicit comments from the public and other interested parties concerning draft rules implementing the employer provisions of IRCA. Interested parties were also provided with preliminary working drafts for review and comment. Numerous comments were received from a wide cross-section of society.

These comments were reviewed and evaluated in the development of a proposed rule, published in the Federal Register on March 19, 1987. The proposed rule invited comment on all issues, particularly those concerning: the nature of verification; the mandatory and universal aspect of the requirements for employers to complete and maintain the designated form; the range of documents which should be accepted under the regulation to establish identity; the guidelines relating to the role of state employment agencies in the issuance of verification certificates; the application of penalties to procedural as well as substantive violations of the Act; and the necessary changes to prior Part 109 of the regulations, redesignated as Subpart B of Part 274a in the proposed rule.

**Public Comments**

*General Information*

Approximately 4,000 comments were received from the public during the comment period. Additionally, hundreds of telephone calls were received. Commentors represented a very broad spectrum of American society and included private citizens; agricultural, business, industrial and labor organizations; Congressional sources and governmental entities at the federal, state, and local levels; educational institutions; voluntary agencies; interest groups and organizations; and law firms. Because many of these commentors provided their views on several different sections of the proposed rules within one response, the figures provided below are approximate as to the number of comments received in each area of concern. INS is appreciative of the number of responses and instructive comments, which clearly reflect the broad public interest in this statute.

The comments received in many instances enlightened Service officials concerning prevailing buisness and industry practices, and the problems which employers face in verification and the other responsibilities imposed by IRCA. As a result, there are some significant refinements in the rule, which INS believes are in the public interest and that represent a logical outgrowth of the comments. While the final rule may not satisfy the concerns of everyone who commented, INS believes that most issues have been addressed in the spirit of mutual dialogue. Every effort has been made to minimize

the impact of our requirements on the affected parties, consistent with the statute; and to ensure continuity with other agencies' guidelines and definitions, to the extent possible. Furthermore, INS expects that these guidelines will prove sufficiently flexible so that employers and others required to comply with statutory and regulatory procedures will be able to do so in ways that suit current personnel hiring, recruiting and referring practices with minimal disruption.

INS will continue to encourage voluntary cooperation and compliance along with traditional enforcement in achieving the goal of this legislation. INS has established a new office for Employer and Labor Relations to administer a program of education and cooperation with employers and other affected entities. Many public appearances have been made by INS officials in the last few months to inform and solicit comments from interested parties. INS envisions a balanced approach between education and cooperation, and strict enforcement of penalties for egregious and persistent violators. INS will continue to develop agency guidelines and policies which further the goals of education, information, and employer awareness as effective methods of ensuring public support and voluntary compliance.

Consistent with this intent, INS wishes to remind the public that IRCA and Title VII of the Civil Rights Act prohibit discrimination in employment, or recruitment or referral for a fee for employment, on the basis of national origin. Additionally, IRCA generally prohibits discrimination on the basis of citizenship status in the case of a citizen or intending citizen. There are serious penalties which may be applied to those who violate the anti-discrimination laws of the United States. It is important to recognize that the purpose of the employer verification provisions of IRCA is not to discriminate against those with the right to work in the United States, regardless of their alienage or citizenship status. Rather, the purpose is to halt unlawful employment of those not entitled to work, and thus to have an ameliorative effect on illegal immigration to the United States. Application of the verification laws and voluntary compliance by employers will enhance job opportunities for lawfully authorized workers.

*Comments Received*

**1. Recruiters and Referrers**
By far the vast majority of comments (over 3,100), and the most contentious, related to the Service's proposed regulations in regard to recruiters and referrers. Many professionals in this industry were concerned that: (1) They would have to retroactively verify the **\*16218** status of individuals whom they had recruited or referred since enactment of IRCA; (2) they would be prospectively required to perform verifications on all individuals recruited or referred, despite the fact that many of these individuals would either express no interest in the recruitment, or would not be hired as the result of referral; and (3) they would have to perform face-to-face verifications, despite prevailing industry practices relating to telephonic recruitments over long distances where there is no opportunity for such verifications.

INS carefully scrutinized the public comments received relating to this issue and performed an analysis of the extent of regulatory flexibility which was permitted by statute. Although it was determined that an absolute waiver of requirements for recruiters and referrers was beyond the permissible statutory scope, the Service has significantly modified the terms under which such entities may comply. Under the final rule: (1) Recruiters and referrers will not be required to retroactively verify individuals recruited or referred during the period, given the impossibility of this task; (2) the regulations have been amended so that referrers and recruiters need to verify within three business days of hiring only those individuals actually hired as the result of the referral; and (3) the verification procedures for recruiters and referrers have been amended to permit completion of the process by those who act as agents in their interest. This includes, but is not limited to affiliates, notaries, attorneys, national organizations, and even employers who hire the referred individuals. In this way, verifications used not be performed in person by the recruiter or referrer. These modifications to the proposed rule will greatly alleviate the concerns expressed by recruiters and referrers over the verification process. By statute, however, liability still rests with the recruiter or referrer.

**2. Use of Agents**

A similar concern expressed in the comments received from some employers and others indicated misunderstanding regarding their ability to use commonly accepted legal principles to delegate verification responsibilities through contractual or business arrangements. Approximately 75 responses were received on this concern. The definition of the term "employer" found in 8 CFR 274a.1(g) and the verification procedures outlined for recruiters and referrers in 8 CFR 274a.2(b)(1)(iv) specifically permit these arrangements. These provisions of the regulations incorporate the concepts found in the Fair Labor Standards Act. They provide great flexibility in the use of intermediaries for verification, because, rather than establish a restrictive definition of agent, they permit verification by anyone "acting in [the employer's recruiter's or referrer's] interest." Employers, recruiters, and referrers may use central clearing houses or similar organizations to satisfy the document verification requirements of the Act. However, liability remains with the employer, the recruiter, or the referrer for any failure of the third party to satisfy the requirements of law.

**3. Retroactive Verification**

Another similar concern was expressed by employers concerning their responsibility to retroactively verify employees who were hired subsequent to enactment but prior to June 1, 1987. Approximately 50 responses were received on this issue. Recognizing these concerns, INS has taken the following steps in the final rule: (1) Employees who were hired but quit or were terminated within this period need not be verified; (2) employees who were hired within this period and continue to be employed, must be verified on or before September 1, 1987; and (3) as stated above, recruiters and referrers need not verify individuals recruited or referred within the period. Many concerns were expressed to INS about the lack of availability of a final Form I-9 during the public education period prior to June 1. INS recognizes that some employers took the step, in good faith, of commencing retroactive verification of employees using the version of the form which was published for comment with the proposed rule on March 19, 1987. In such instances, INS will accept verifications which were performed using this form as satisfying the requirements of the law and regulations. However, only the finalized Form I-9 should be used for verifications performed on or after June 1.

**4. Union Hiring Halls**

Approximately 60 comments were received on the issue of whether union hiring halls constituted a form of recruitment or referral for a fee based upon union dues paid. Opinions were divided on this matter. The final rule excludes union hiring halls from such definition. INS does not believe inclusion of these entities was within Congressional intent. However, such arrangements may be included in contractual or collective bargaining agreements between unions and employers where they are in the interests of both parties.

**5. Definition of Hire**

The Service in its proposed rules defined "hire" as the "actual commencement of employment of an employee . . ." This aroused public concern as to the appropriate time for completion of the verification process. Approximately 20 comments were received in this regard. INS realizes that employers with decentralized operations may actually hire an individual well in advance of the time that the employee commences work. While the regulations state that the Service wishes to stress that verification may be completed either at the time of an individual's acceptance of an offer of employment or at the time employment actually commences.

**6. State Employment Agency Verification**

Control of Employment of Aliens, 52 FR 16216-01

The rule provides for procedures relating to verification by a state employment agency. These procedures were developed on the basis of discussions with state employment agencies. INS also attended several open forums at which state employment agencies were well represented. INS anticipates that future modifications to this rule will be forthcoming in order to further develop standardized certification forms and procedures for all state agencies which choose to exercise the option to issue certifications which is granted them under the statute.

### 7. Pre-enactment ("Grandfather") Status

The proposed rule specified that a pre-enactment employment status is retained by an individual even though termporarily interrupted because of leave for study, illness, pregnancy, or transfer from one location to another with the same company. It provided that status would be lost by termination, exclusion, or deportation. Approximately 15 comments were received from the public, including labor law attorneys familiar with other agencies' definitions and procedures. The commentors recommended that the rule address other temporary employment interruptions. INS has considered these suggestions, and adopted several of them, including: Strikes and layoffs where there is a reasonable basis for believing that the individual will be reemployed by the same employer; promotions or demotions within the same company and intracompany transfers; and other temporary leaves which have been  **\*16219**  approved by the employer. The public is directed to the regulations for other examples of interruptions which do not cause loss of the pre-enactment status of the individual.

The public should be aware that pre-enactment status pertains to the continued employment of individuals hired, recruited, or referred prior to November 7, 1986 only. It does not accord an illegal alien the right to remain in the United States.

### 8. Independent Contractor

Several business entities (approximately 25) provided their views on this aspect of the proposed regulations. They recommended that INS include the term "independent contractor" among the definitions in the regulations. The final rule specifies criteria and factors that are to be considered in determining whether a particular business arrangement constitutes an agreement with an independent contractor as opposed to an employee. The criteria and factors which have been enumerated are consistent with current Internal Revenue Service guidelines. Those who engage the labor services of an independent contractor are not responsible for verification of the employment eligibility of the employees of the independent contractor. However, contracts may not be used for the purposes of circumventing the employment eligibility verification requirements of employees.

### 9. Three-day Period for Completion of Verification

Approximately 30 comments were received on this proposed rule from various sources, including governmental employing entities. Commentors generally believed that the three-day period for completion of verification is sufficient. However, it was recommended that an exception be made for an individual who does not possess an acceptable document and needs to secure one for verification. It was noted that even large numbers of United States citizens are not in possession of certain documents and may need additional time to obtain them. Commentors were concerned that failure to provide an exception to the three-day requirement might result in unemployment of authorized workers who are awaiting replacement or initial issuance of documents.

The final rule allows an exception in cases where an individual has lost a document or has not yet obtained a document necessary for either identity or work authorization purposes. In such a case, the individual is required to present a receipt for the application of the document within three days, and present the required document itself within twenty-one days.

Control of Employment of Aliens, 52 FR 16216-01

**10. Identification Documents**

The proposed rule required employees to present an employer with a document or documents that establish identity and employment eligibility. With regard to documents that establish identity alone, the proposed rule required presentation of a state-issued driver's license or state-issued identification card except where the individual is under sixteen years old or lives or works in one of the eight states that does not issue an identification card. The statute allows the Attorney General to designate alternative identity documents for individuals covered by the two exceptions.

Approximately 60 responses concerned this issue. Public comment was received from a variety of sources, including private individuals, several colleges, and some agricultural enterprises such as produce farmers. Many strongly opposed these restrictions on the use of alternative documents. Commentors noted that the requirement would be extremely confusing for employers and unnecessarily burdensome for individuals who do not have a driver's license or identification card, yet might have one of the designated alternative documents.

The final rule establishes an expanded list of identity documents and permits parents or guardians to sign the Form I-9 on behalf of minors under sixteen years of age. Documents from this expanded list can be used by anyone in any state for the purpose of establishing identity.

In terms of number and variety, the list contains a wide range of identity documents and is based upon recommendations received in response to the proposed rule. The list has been defined in consideration of the recency of the legislation and in recognition of the fact that a comprehensive but reasonable list is in the interest of the public at this time.

The statute mandates that any alternative identity document provide a "reliable means of identification." The Congress, both in the statute and in its legislative history, expressed a particular concern with fraud in the verification system. For these reasons, INS will closely monitor the reliability and integrity of the list of alternative identity documents. After a sufficient period of time has elapsed to enable the public to become accustomed to and familiar with the law, and based upon information acquired from system monitoring, INS may propose amendments to this list.

**11. I-9 Retention**

In response to public comment, the one-year period of validity of the I-9 for rehiring purposes has been expanded to three years in the final rule. This period coincides with the minimum retention period required for the Form I-9. Also, INS believes that this three year rehire provision adequately deals with the concerns of temporary help companies. Such temporary help companies can rehire the same individual without limit during a three year period (beginning on the date the Form I-9 was initially completed) as long as the individual remains authorized to work.

**12. Authority to Inspect I-9**

There were numerous public comments on the proposed rule regarding inspection of the Form I-9. The Service believes that the final rule requiring employers to produce the Form I-9 for inspection upon request of an INS officer after three days notice is well within our statutory authority. IRCA provides at section 274A(B)(3) that "the person or entity must retain the form (Form I-9) and make it available for inspection by officers of the Service or the Department of Labor beginning on the date . . ." The final regulations specify that INS will provide employers or others with three days advance notice of an inspectional visit, in order that they may comply with a request for production of the Form I-9. IRCA does not require Service officers to present a subpoena or warrant prior to a request to inspect. Furthermore, they will be permitted to produce the forms to the Service office which is located closest to the place where the forms have been

retained, if different from where the demand was made. However, this does not preclude INS from obtaining warrants based on probable cause, for entry onto the premises of suspected violators without advance notice. The past experience of many agencies with similar responsibilities has proven the occasional necessity of such actions, where serious, repeated violators are concerned.

### 13. Good Faith Defense

An employer, recruiter, or referrer who establishes that he or she has acted in good faith to comply with the verification requirements of the regulations will have established an affirmative yet rebuttable defense that he or she has in fact complied with the law with respect to such hiring, recruiting, or referral. An employer, **\*16220** recruiter, or referrer must attest on Form I-9 that he or she has verified the employment eligibility and identity of an individual hired, recruited, or referred. This attestation may be made if the document or combination of documents examined in the verification process reasonably appears on its face to be geniune.

### 14. Organization of Subpart B: Employment Authorization

The rule redesignates Part 109, with amendments, as Part 274a, Subpart B, employment authorization. In response to public comments, § 274a.12, classes of aliens authorized to accept employment, has been expanded to identify aliens not previously identified in Part 109, and has also been subdivided to clarify and articulate classes of aliens who are or may be authorized to accept employment in the United States. The section contains three paragraphs generally categorizing these classes, which include: (1) Aliens authorized employment incident to status, whose employment authorization is not restricted in terms of location or type of employment and who need not seek employment authorization from INS; (2) aliens authorized employment with a specific employer incident to status, whose employment is subject to the restrictions imposed upon the particular nonimmigrant classification; and (3) aliens who must apply to INS for employment authorization. Within these paragraphs, the rule contains a comprehensive listing of employment authorization classifications.

### 15. Nonimmigrant Student Employment Authorization

In response to the proposed rule, numerous institutions of higher learning urged INS to retain the procedure concerning on-campus employment for full-time students, and for students in a work-study program which is part of the regular curriculum available within the student's program of study. The final regulations incorporate these recommendations by classifying on-campus employment as employment which is incident to the student's status. Academic institutions will need to comply with the employment verification requirements of IRCA with respect to these nonimmigrant students.

### 16. Employment Authorization for Temporary Workers, Exchange Visitors, and Intra-company Transferrees

In response to public comments, the final rule provides for an automatic extension of employment authorization for a period of 120 days for H, J, and L nonimmigrants who have filed timely applications for extensions of stay. The automatic extension of employment authorization is valid only for an alien who continues employment with the same employer. In the event that INS is unable to adjudicate such an application for extension of status within the 120 day period, the alien may apply for employment authorization pursuant to the application procedure defined in the rule. Thus the regulations address continued employment authorization for employment-related classifications of nonimmigrant aliens during periods when extensions of stay are pending. They also recognize the possibility of delays in the processing of applications for extensions of stay, and provide an application procedure in the event of any unusual delay. These provisions were added in direct response to the recommendations of commentors.

**17. Interim Employment Authorization**

The final rule requires INS to adjudicate an application for employment authorization within sixty days from the date of the receipt by INS of the application or the date of the receipt of a returned application. Any application for employment authorization not adjudicated within sixty days will result in an automatic grant to the applicant of interim employment authorization for a period of up to 120 days. In promulgating this rule, INS recognizes the importance of expeditious processing of employment authorization applications. As in the case of the rule regarding employment authorizations for certain nonimmigrant extension applicants, this regulation was developed in response to public comment.

**18. Automatic Termination of Temporary Employment Authorization**

In the past, Service practice was not uniform in the grant of temporary work authorization to certain aliens such as nonimmigrants and parolees. These individuals were sometimes granted work authorization for indefinite periods of time despite its "temporary" nature, on Service Form I-94 or other documents. In order to reconcile this inconsistency with the terms of IRCA, INS has specified in the regulations that any temporary employment authorization granted prior to June 1, 1987, pursuant to 8 CFR 109.1(b) or its redesignation as § 274a.12(c), shall automatically terminate on the date specified by the Service on the document issued to the alien, or on June 1, 1988, whichever is earlier. Any document issued by the Service prior to June 1, 1987 that authorizes temporary employment for an indefinite period beyond June 1, 1988 will become null and void on June 1, 1988, and must be surrendered to the Service on the date of the document's expiration or on June 1, 1988, whichever is earlier. The public is advised that no notice of intent to revoke or other Service advisory is necessary under this rule.

Automatic termination of such employment authorization does not preclude a subsequent application for employment authorization. The rule requires the issuance of a new employment authorization provided that the alien remains eligible for employment in the United States. This regulation is not applicable to an alien whose employment authorization is inherent in his or her status, such as a lawful permanent resident.

This rule is promulgated for the sole purpose of enabling INS to replace the multiplicity of outstanding employment authorization documents with a standard, uniform document. INS is taking this step because it believes this transition to a new uniform document is in the interest of employers and those aliens authorized to work in the United States.

This rule is a major rule within the context of E.O. 12291 in terms of the effect it will have on the national economy. A Regulatory Impact Analysis in conjunction with a Regulatory Flexibility Analysis as required by 5 U.S.C. 603 and 604, is available for review by the public upon request.

The information collection requirements contained in this regulation have been submitted to and cleared by OMB under the Paperwork Reduction Act.

**List of Subjects**

*8 CFR Part 109*

Aliens, Employment.

**8 CFR Part 274a**

Administrative practice and procedure, Aliens, Employment.

Control of Employment of Aliens, 52 FR 16216-01

For the reasons set out in the preamble, INS amends Chapter I of Title 8 of the Code of Federal Regulations as follows:

## PART 109—EMPLOYMENT AUTHORIZATION
1. Part 109 is removed and reserved.

2. A new Part 274a is added to read as follows:


**\*16221   PART 274a—CONTROL OF EMPLOYMENT OF ALIENS**

**Subpart A—Employer Requirements**

Secs.

274a.1 Definitions.

274a.2 Verification of employment eligibility.

274a.3 Continuing employment of unauthorized aliens.

274a.4 Good faith defense.

274a.5 Use of labor through contract.

274a.6 State employment agencies.

274a.7 Pre-enactment provisions for employees hired prior to November 7, 1986.

274a.8 Prohibition of indemnity bonds.

274a.9 Enforcement procedures.

274a.10 Penalties.

274a.11 Special rule for legalization, special agricultural worker and Cuban/Haitian entrant adjustment applicants.

**Subpart B—Employment Authorization**

274a.12 Classes of aliens authorized to accept employment.

274a.13 Application for employment authorization.

274a.14 Termination of employment authorization.
Authority: Secs. 101, 1103, 274A of the Immigration and Nationality Act, 8 U.S.C. 1101, 1103, 1324A.


**Subpart A—Employer Requirements**
8 CFR § 274a.1

**§ 274a.1 Definitions.**
For the purpose of this chapter—

**Control of Employment of Aliens, 52 FR 16216-01**

(a) The term "unauthorized alien" means, with respect to employment of an alien at a particular time, that the alien is not at that time either: (1) Lawfully admitted for permanent residence, or (2) authorized to be so employed by this Act or by the Attorney General;

(b) The term "entity" means any legal entity, including but not limited to, a corporation, partnership, joint venture, governmental body, agency, proprietorship, or association;

(c) The term "hire" means the actual commencement of employment of an employee for wages or other remuneration;

(d) The term "refer for a fee" means the act of sending or directing a person or transmitting documentation or information to another, directly or indirectly, with the intent of obtaining employment in the United States for such person, for remuneration whether on a retainer or contingency basis; however, this term does not include union hiring halls that refer union members or non-union individuals who pay union membership dues;

(e) The term "recruit for a fee" means the act of soliciting a person, directly or indirectly, and referring that person to another with the intent of obtaining employment for that person, for remuneration whether on a retainer or contingency basis; however, this term does not include union hiring halls that refer union members or non-union individuals who pay union membership dues;

(f) The term "employee" means an individual who provides services or labor for an employer for wages or other remuneration but does not mean independent contractors as defined in paragraph (j) of this section or those engaged in casual domestic employment as stated in paragraph (h) of this section;

(g) The term "employer" means a person or entity, including an agent or anyone acting directly or indirectly in the interest thereof, who engages the services or labor of an employee to be performed in the United States for wages or other remuneration. In the case of an independent contractor or contract labor or services, the term "employer" shall mean the independent contractor or contractor and not the person or entity using the contract labor;

(h) The term "employment" means any service or labor performed by an employee for an employer within the United States, including service or labor performed on a U.S. vessel or U.S. aircraft which touches at a port in the United States, but does not include casual employment by individuals who provide domestic service in a private home that is sporadic, irregular, or intermittent;

(i) The term "State employment agency" means any State government unit designated to cooperate with the United States Employment Service in the operation of the public employment service system;

(j) The term "independent contractor" includes individuals or entities who carry on independent business, contract to do a piece of work according to their own means and methods, and are subject to control only as to results. Whether an individual or entity is an independent contractor, regardless of what the individual or entity calls itself, will be determined on a case-by-case basis. Factors to be considered in that determination include, but are not limited to, whether the individual or entity: Supplies the tools or materials; makes services available to the general public; works for a number of clients at the same time; directs the order or sequence in which the work is to be done and determines the hours during which the work is to be done. The use of labor or services of an independent contractor are subject to the restrictions in section 274A(a)(4) of the Act and § 274a.5 of this part;

(k) The term "pattern or practice" means regular, repeated, and intentional activities, but does not include isolated, sporadic, or accidental acts.

8 CFR § 274a.2

**§ 274a.2 Verification of employment eligibility.**

A. General. This section states the requirements and procedures persons or entities must comply with when hiring, or when recruiting or referring for a fee, individuals in the United States, or continuing to employ aliens knowing that the aliens are (or have become) unauthorized aliens. The Form I-9, Employment Eligibility Verification Form, has been designated by the Service as the form to be used in complying with the requirements of this section. The Form I-9 may be obtained in limited quantities at INS District Offices, or ordered from the Superintendent of Documents, Washington, DC 20402. The Form I-9 may be photocopied or printed without regard to the restrictions set forth in § 299.4 of this Chapter. Employers need only complete the Form I-9 for individuals who are hired after November 6, 1986 and continue to be employed after May 31, 1987. Employers shall have until September 1, 1987 to complete the Form I-9 for individuals hired from November 7, 1986 through May 31, 1987. Recruiters and referrers for a fee need complete the Form I-9 only for those individuals who are recruited or referred after May 31, 1987. In conjunction with completing the Form I-9, an employer or recruiter or referrer for a fee must examine documents that evidence the identity and employment eligibility of the individual. The employer or recruiter or referrer for a fee and the individual must each complete an attestation on the Form I-9 under penalty of perjury. However, if an individual attests to an employer or recruiter or referrer for a fee, that he or she is an alien who intends to apply or has applied for benefits under the provisions of section 245A or 210 of the Act or section 202 of the Immigration Reform and Control Act of 1986, then the individual is authorized to work in the United States until September 1, 1987 without providing the employer or the recruiter or referrer for a fee with documentary evidence of work authorization. In this case, the employer, or the recruiter or referrer for a fee, should follow the procedures set forth in § 274a.11 of this part. Employers and recruiters and referrers for a fee who fail to comply with the employment verification requirements set forth in paragraph (b) of this section shall be subject to penalties as stated in § 274a.10 of this part.

 **\*16222** (b) Employment verification requirements—(1) Examination of documents and completion of Form I-9.

(i) An individual who is hired or is recruited or referred for a fee for employment must:

(A) Complete Section 1—"Employee Information and Verification" on the Form I-9 at the time of hiring; or if an individual is unable to complete the Form I-9 or needs it translated, someone may assist him or her. The preparer or translator must read the Form to the individual, assist him or her in completing Section 1—"Employee Information and Verification," and have the individual sign or mark the Form in the appropriate place. The preparer or translator should then complete the "Preparer/Translator Certification" portion of the Form I-9; and

(B) Present to the employer or the recruiter or referrer for a fee documentation as set forth in paragraph (b)(1)(v) of this section establishing his or her identity and employment eligibility within the time limits set forth in paragraphs (b)(1) (ii) through (v) of this section. However, pursuant to the "Special Rule" set forth in § 274a.11 of this part, legalization, special agricultural worker, and Cuban/Haitian entrant adjustment applicants are authorized to work without presenting documentation establishing work authorization until September 1, 1987.

(ii) except as provided in paragraph (b)(viii) of this section, an employer, his or her agent, or anyone acting directly or indirectly in the interest thereof, must within three business days of the hire:

(A) Physically examine the documentation presented by the individual establishing identity and employment eligibility as set forth in paragraph (b)(1)(v) of this section; and

(B) Complete Section 2—"Employer Review and Verification" on the Form I-9.

(iii) An employer, his or her agent, or anyone acting directly or indirectly in the interest thereof, who hires an individual for employment for a duration of less than three business days must comply with paragraphs (b)(1)(ii)(A)-(B) of this section before the end of the employee's first working day.

(iv) A recruiter or referrer for a fee for employment must comply with paragraphs (b)(1)(ii)(A)-(B) of this section within three business days of the date the referred individual was hired by the employer. Recruiters and referrers may designate agents to complete the employment verification procedures on their behalf including but not limited to notaries, national associations, or employers. If a recruiter or referrer designates an employer to complete the employment verification procedures, the employer need only provide the recruiter or referrer with a photocopy of the Form I-9.

(v) The individual may present either an original document that establishes both employment authorization and identity, or an original document that establishes employment authorization and a separate original document that establishes identity. The document identification number and expiration date (if any) should be noted in the appropriate space provided on the Form I-9. An employer or a recruiter or referrer for a fee may not specify which document or documents an individual is to present.

(A) The following documents are acceptable to evidence both identity and employment eligibility:

(1) United States passport;

(2) Certificate of United States Citizenship, INS Form N-560 or N-561;

(3) Certificate of Naturalization, INS Form N-550 or N-570;

(4) An unexpired foreign passport which:

(i) contains an unexpired stamp therein which reads, "Processed for I-551. Temporary Evidence of Lawful Admission for permanent residence. Valid until ———. Employment authorized." or

(ii) has attached thereto a Form I-94 bearing the same name as the passport and contains an employment authorization stamp, so long as the period of endorsement has not yet expired and the proposed employment is not in conflict with any restrictions or limitations identified on the Form I-94.

(5) Alien Registration Receipt Card, INS Form I-151 or Resident Alien INS Form I-551, provided that it contains a photograph of the bearer;

(6) Temporary Resident Card, INS Form I-688;

(7) Employment Authorization Card, INS Form I-688A.

(B) The following documents are acceptable to establish identity only:

(1) For individuals 16 years of age or older:

Control of Employment of Aliens, 52 FR 16216-01

(i) a state-issued drivers's license or state-issued identification card containing a photograph. If the drivers's license or identification card does not contain a photograph, identifying information should be included such as: Name, date of birth, sex, height, color of eyes, and address;

(ii) School identification card with a photograph;

(iii) Voter's registration card;

(iv) U.S. military card or draft record;

(v) Identification card issued by federal, state, or local government agencies or entities;

(vi) Military dependent's identification card;

(vii) Native American tribal documents;

(viii) United States Coast Guard Merchant Mariner Card;

(ix) Driver's license issued by a Canadian government authority;

(2) For individuals under age 16 who are unable to produce a document listed in paragraph (b)(1)(v)(B)(1) of this section, the following documents are acceptable to establish identity only:

(i) School record or report card;

(ii) Clinic doctor or hospital record;

(iii) Daycare or nursery school record.

(3) Minors under the age of 16 who are unable to produce one of the identity documents listed in paragraph (b)(1)(v)(B) (1) or (2) of this section are exempt from producing one of the following procedures are followed:

(i) The minor's parent or legal guardian completes on the Form I-9 Section 1—"Employee Information and Verification" and in the space for the minor's signature, the parent or legal guardian writes the words, "minor under age 16."

(ii) The minor's parent or legal guardian completes on the Form I-9 the "Preparer/Translator certification."

(iii) The employer or the recruiter or referrer for a fee writes in Section 2—"Employer Review and Verification" under List B in the space after the words "Document Identification ›" the words, "minor under age 16."

(C) The following are acceptable documents to establish employment authorization only:

(1) A social security number card other than one which has printed on its face "not valid for employment purposes";

(2) An unexpired reentry permit, INS Form I-327;

(3) An unexpired Refugee Travel document, INS Form I-571;

(4) A Certification of Birth issued by the Department of State, Form FS-545;

(5) A Certification of Birth Abroad issued by the Department of State, Form DS-1350;

(6) An original or certified copy of a birth certificate issued by a State, county, or municipal authority bearing a seal;

(7) An employment authorization document issued by the Immigration and Naturalization Service;

(8) Native American tribal document;

(9) United States Citizen Identification Card, INS Form I-197;

(10) Identification card for use of resident citizen in the United States, INS Form I-179.

 **\*16223**  (vi) If an individual is unable to provide the required document or documents within the time periods specified in paragraphs (b)(1)(ii) and (iv) of this section, the individual must present a receipt for the application of the document or documents within three days of the hire and present the required document or documents within 21 days of the hire.

(vii) If an individual's employment eligibility document expires, the employer or the recruiter or referrer for a fee must update the Form I-9 to reflect that the individual is still authorized to work in the United States; otherwise the individual may no longer be employed, recruited, or referred. In order to update the Form I-9, the employee or referred individual must present a document that either shows continuing employment eligibility or is a new grant of work authorization. The employer or the recruiter or referrer for a fee should review this document, and if it appears to be genuine and to relate to the individual, update the form by noting the document's identification number and expiration date of the Form I-9.

(viii) An employer is not required to reverify an employee's employment eligibility as set forth in paragraphs (b)(1)(i)—(v) of this section if the employee is continuing his or her employment and at all times has a reasonable expectation of employment. "Continuing employment" includes but is not limited to situations where:

(A) The employee takes approved paid or unpaid leave on account of study, illness or disability of a family member, illness or pregnancy, maternity or paternity leave, vacation, union business, or other temporary leave approved by the employer;

(B) The employee is promoted, demoted, or gets a pay raise;

(C) The employee is laid off for lack of work;

(D) The employee is on strike or in a labor dispute;

(E) The employee is reinstated after disciplinary suspension for wrongful termination, found unjustified by any court, arbitrator, or administrative body, or otherwise resolved through reinstatement or settlement;

(F) The employee transfers from one distinct unit of an employer to another distinct unit of the same employer; the employer may transfer the employee's Form I-9 to the receiving unit; or

(G) The employee continues his or her employment with a related, successor, or reorganized employer, provided that the employer obtains and maintains from the previous records and Forms I-9 where applicable. For this purpose, a related, successor, or reorganized employer includes:

(1) The same employer at another location;

(2) An employer who continues to employ some or all of a previous employer's workforce in cases involving a corporate reorganization, merger, or sale of stock or assets; or

(3) An employer who continues to employ some or all of another employer's workforce where both employers belong to the same multi-employer association and employees continue to work in the same bargaining unit under the same collective bargaining agreement.

(2) Retention and Inspection of Form I-9. (i) Form I-9 must be retained by an employer or a recruiter or referrer for a fee for the following time periods:

(A) In the case of an employer, three years after the date of the hire or one year after the date the individual's employment is terminated, whichever is later; or

(B) In the case of a recruiter or referrer for a fee, three years after the date of the referral.

(ii) Any person or entity required to retain Forms I-9 in accordance with this section shall be provided with at least three days notice prior to an inspection of the Forms by an authorized Service officer. At the time of inspection, the Forms I-9 must be made available at the location where the request for production was made, or if the Forms I-9 are kept at another location, at the nearest Service office to that location. No subpoena or warrant shall be required for such inspection. Any refusal or delay in presentation of the Forms I-9 for inspection is a violation of the retention requirements as set forth in section 274A(b)(3) of the Act. In addition, if the person or entity has not complied with a request to present the Forms I-9, any Service officer listed in section 242.1 of this chapter may compel production of the Forms I-9 by issuing a subpoena.

(3) Copying of documentation. An employer or a recruiter or referrer for a fee may, but is not required to, copy a document presented by an individual solely for the purpose of complying with the verification requirements of this section. If such copy is made, it must be retained with the Form I-9. The retention requirements in paragraph (b)(2) of this section do not apply to the photocopies.

(4) Limitation on use of Form I-9. Any information contained in or appended to the Form I-9, including copies of documents listed in paragraph (c) of this section used to verify an individual's identity or employment eligibility, may be used only for enforcement of the Act and Sections 1001, 1028, 1546, or 1621 of Title 18, United States Code.

(c) Employment verification requirements in the case of hiring an individual who was previously employed. (1) When an employer hires an individual whom he or she has previously employed, if the employer has previously completed the Form I-9 and complied with the verification requirements set forth in paragraph (b) of this section with regard to the individual, the employer may (in lieu of completing a new Form I-9) inspect the previously completed Form I-9 and:

(i) If upon inspection of the Form I-9 relating to the individual, the employer determines that the Form I-9 relates to the individual and that the individual is eligible to work, no additional verification or new Form I-9 need be completed if the individual is hired within three years of the initial execution of the Form I-9; or

(ii) If upon inspection of the Form I-9, the employer determines that the individual is no longer eligible to work in the United States, the employer shall not rehire the individual unless he or she follows the updating procedures in paragraph (b)(1)(vii) of this section.

(2) For purposes of retention of the Form I-9 by an employer for a previously employed individual hired pursuant to paragraph (c)(1) of this section, the employer shall retain the Form I-9 for a period of three years commencing from the date of the initial execution of the Form I-9 or one year after the individual's employment is terminated, whichever is later.

(d) Employment verification requirements in the case of recruiting or referring for a fee an individual who was previously recruited or referred. (1) When a recruiter or referrer for a fee refers an individual for whom he or she has previously completed a Form I-9, and the recruiter or referrer has completed the Form I-9 and complied with the verification requirements set forth in paragraph (b) of this section with regard to the individual, the recruiter or referrer may (in lieu of completing a new Form I-9) inspect the previously completed Form I-9 and:

(i) If upon inspection of the Form I-9 relating to the individual, the recruiter or referrer determines that the Form I-9 relates to the individual and that the individual is authorized to work, no additional verification or new Form I-9 need be completed if the individual is referred within three years of the initial execution of the Form I-9: or

(ii) If upon inspection of the Form I-9, the recruiter or referrer determines that  **\*16224**  the individual is no longer authorized to work in the United States, the recruiter or referrer shall not refer the individual for employment unless he or she follows the updating procedures in paragraph (b)(1)(vii) of this section.

(2) For purposes of retention of the Form I-9 by a recruiter or referrer for a previously referred individual pursuant to paragraph (d)(1) of this section, the recruiter or referrer shall retain the Form I-9 for a period of three years commencing from the date of the initial execution of the Form I-9.

8 CFR § 274a.3

## § 274a.3 Continuing employment of unauthorized aliens.

An employer who continues the employment of an employee hired after November 6, 1986, knowing that the employee is or has become an unauthorized alien with respect to that employment, is in violation of section 274(a)(2) of the Act.

8 CFR § 274a.4

## § 274a.4 Good faith defense.

An employer or a recruiter or referrer for a fee for employment who shows good faith compliance with the employment verification requirements of § 274a.2(b) of this part shall have established a rebuttable affirmative defense that the person or entity has not violated section 274A(a)(1)(A) of the Act with respect to such hiring, recruiting, or referral.

8 CFR § 274a.5

## § 274a.5 Use of labor through contract.

Any person or entity who knowingly uses a contract, subcontract, or exchange entered into, renegotiated, or extended after the date of enactment, to obtain labor or services of an unauthorized alien shall be considered to have hired the alien for employment in the United States in violation of section 274A(a)(1)(A) of the Act.

8 CFR § 274a.6

## § 274a.6 State employment agencies.

(a) General. A state employment agency as defined in § 274a.1 of this part may, but is not required to, verify employment eligibility pursuant to section 274A(b) of the Act. However, should a state employment agency choose to do so, it must:

Control of Employment of Aliens, 52 FR 16216-01

(1) Complete the verification process for all individuals referred;

(2) Complete the verification process in accordance with the requirements of § 274a.2(b) of this part;

(3) Issue to an individual it refers a certification as set forth in paragraph (c) of this section, in which case an employer who hires the individual shall be deemed to have complied with the verification requirements of § 274a.2(b)(1) of this part, provided that the certification is retained by the employer in the same manner prescribed for Form I-9 in § 274a.2(b)(2) of this part; and

(4) Require the surrender of the certification back to the agency by the individual referred, if he or she is not hired as a result of the referral.

(b) Compliance with the provisions of section 274A of the Act. State employment agencies which choose to verify employment eligibility of individuals pursuant to § 274a.2(b) of this part shall comply with all provisions of section 274A of the Act and the regulations issued thereunder, and are subject to the penalties provided in § 274a.10 of this part for failure to comply.

(c) Procedures for state employment agency certification. All certifications issued by a state employment agency pursuant to paragraph (a)(3) of this section shall conform to the following standards. They must:

(1) Be issued on official agency letterhead, signed by an appropriately designated official, and contain the embossed seal of the agency;

(2) Be addressed to the particular employing entity to which the individual is referred, and contain identifying data concerning the individual being referred;

(3) Certify that the state agency has complied with the requirements of section 274A(b) of the Act concerning verification of the identity and employment eligibility of the individual referred, and determined that the individual is authorized to work in the United States;

(4) Clearly stipulate any restrictions, conditions, or other limitations which relate to the individual's employment eligibility in the United States; and

(5) State that the employer is not required to reverify the individual's identity or employment eligibility, but must retain the certification letter in lieu of Form I-9.

(d) Procedures for individuals who are certified by state employment agencies. Any individual referred to a potential employer by a state employment agency pursuant to this section shall present the original certification to that employer. If the referred individual is hired, the certification shall be provided by the individual to the employer for retention. If the referred individual is not hired, the original cetification shall be surrendered by the individual to the state employment agency which issued the certificate. No copies shall be made of this certification, except as provided in paragraph (e) of this section.

(e) Retention of state employment agency certifications. Certifications issued by state employment agencies pursuant to this section shall be retained in the same manner and for the same period as Form I-9:

(1) In original form by the state employment agency, upon surrender by the individual referred if he or she is not hired; or

Control of Employment of Aliens, 52 FR 16216-01

(2) In duplicate form by the state employment agency if the individual referred is hired; and

(3) In original form by the employer if the individual referred is hired.

8 CFR § 274a.7

**§ 274a.7 Pre-enactment provisions for employees hired prior to November 7, 1986.**

(a) The penalties provisions as set forth in section 274A (e) and (f) of the Act for violations of section 274A (a)(2) and (b) of the Act shall not apply to the "continuing employment" of an employee who was hired prior to November 7, 1986. For purposes of this section, "continuing employment" is defined in § 274a.2(b)(vi) of this part.

(b) For purposes of this section, an employee who was hired prior to November 7, 1986 shall lose his or her pre-enactment status if the employee:

(1) Quits; or

(2) Is terminated by the employer; the term termination shall include, but is not limited to, situations in which an employee is subject to seasonal employment; or

(3) Is excluded or deported from the United States or departs the United States under an order of voluntary departure.

8 CFR § 274a.8

**§ 274a.8 Prohibition of indemnity bonds.**

(a) General. It is unlawful for a person or other entity, in hiring or recruiting or referring for a fee for employment of an individual, to require the individual to post a bond or security, to pay or agree to pay an amount, or otherwise to provide a financial guarantee or indemnity, against any potential liability arising under this part relating to such hiring, recruiting, or referring of the individual. However, this prohibition does not apply to performance clauses which are stipulated by agreement between contracting parties.

(b) Penalty. Any person or other entity who requires any individual to post a bond or security as stated in this section shall, after notice and opportunity for an administrative hearing in accordance with section 274A(e)(3)(B) of the Act, be subject to a civil fine of $1,000 for each violation and to an administrative order requiring the return to the individual of any amounts received in violation of this section or, if the individual cannot be located, to the general fund of the Treasury.

8 CFR § 274a.9

**\*16225 § 274a.9 Enforcement procedures.**

(a) Procedures for the filing of complaints. Any person or entity having knowledge of a violation or potential violation of section 274A of the Act may submit a signed, written complaint in person or by mail to the Service office having jurisdiction over the business or residence of the potential violator. The signed, written complaint must contain sufficient information to identify both the complainant and the potential violator, including their names and addresses. The complaint should also contain detailed factual allegations relating to the potential violation including the date, time and place that the alleged violation occurred and the specific act or conduct of the employer alleged to constitute a violation of the Act. Written complaints may be delivered either by mail to the appropriate Service office or by personally appearing before any immigration officer at a Service office.

Control of Employment of Aliens, 52 FR 16216-01

(b) Investigation. The Service may conduct investigations for violations on its own initiative and without having received a written complaint. When the Service receives a complaint from a third party, it shall investigate only those complaints which have a reasonable probability of validity. If it is determined after investigation that the person or entity has violated section 274A of the Act, the Service shall issue and serve upon the alleged violator a citation or a Notice of Intent to Fine. Service officers shall have reasonable access to examine any relevant evidence of any person or entity being investigated.

(c) Citation and notice of intent to fine. If after investigation the Service determines that a person or entity has violated section 274A of the Act for the first time during the citation period (June 1, 1987 through May 31, 1988) the Service shall issue a citation. If after investigation the Service determines that a person or entity has violated section 274A of the Act for the second time during the citation period or for the first time after May 31, 1988, the proceeding to assess administrative penalties under section 274A of the Act is commenced by the Service by issuing a Notice of Intent to Fine on Form I-762. Service of this Notice shall be accomplished pursuant to Part 103 of this chapter. The person or entity identified in the Notice of Intent to Fine shall be known as the respondent. The Notice of Intent to Fine may be issued by an officer defined in § 242.1 of this chapter with concurrence of the District Counsel or his or her designee.

(1) Contents of the notice of intent to fine. (i) The Notice of Intent to Fine will contain a concise statement of factual allegations informing the respondent of the act or conduct alleged to be in violation of law, a designation of the charge(s) against the respondent, the statutory provisions alleged to have been violated, and the penalty that will be imposed.

(ii) The Notice of Intent to Fine will provide the following advisals to the respondent:

(A) That the person or entity has the right to representation by counsel of his or her own choice at no expense to the government;

(B) That any statement given may be used against the person or entity;

(C) That the person or entity has the right to request a hearing before an Administrative Law Judge pursuant to 5 U.S.C. 554-557, and that such request must be made within 30 days from the service of the Notice of Intent to Fine ;

(D) That the Service will issue a final order in 45 days if a written request for a hearing is not timely received and that there will be no appeal of the final order.

(d) Answer to notice of intent to fine. (1) If a respondent contests the issuance of a Notice of Intent to Fine, he or she must, by mail, serve a written answer responding to each allegation listed in the Notice and request a hearing within thirty days from the issuance of the Notice.

(2) If the respondent does not file an answer within thirty days, the Service shall issue a final order to which there is no appeal.

8 CFR § 274a.10

## §274a.10 Penalties.

(a) Criminal penalties. An employer or a recruiter or referrer for a fee who engages in a pattern and practice of violating section 274A(a)(1)(A) or (a)(2) of the Act, may be fined not more than $3,000 for each unauthorized alien, imprisoned for not more than six months for the entire pattern or practice, or both, notwithstanding the provisions of any other Federal law relating to fine levels.

(b) Civil penalties. An employer or a recruiter or referrer for a fee may face civil penalties for a violation of section 274A of the Act. Civil penalties may be imposed by the Service or an Administrative Law Judge for violations under section 274A of the Act. In determining the level of the penalties that will be imposed, a finding of more than one violation in the course of a single proceeding or determination will be counted as a single violation. However, a single violation will include penalties for each unauthorized alien who is determined to have been knowingly hired or recruited or referred for a fee.

(1) A respondent found by the Service (if the respondent fails to request a hearing) or an Administrative Law Judge (at a hearing) to have knowingly hired or to have knowingly recruited or referred for a fee unauthorized alien for employment in the United States or to have knowingly continued to employ an unauthorized alien, shall be subject to the following order:

(i) To cease and desist from such behavior;

(ii) To pay a civil fine according to the following schedule:

(A) First violation—not less than $250 and not more than $2,000 for each unauthorized alien; or

(B) Second violation—not less than $2,000 and not more than $5,000 for each unauthorized alien; or

(C) More than two violations—not less than $3,000 and not more than $10,000 for each unauthorized alien; and

(iii) To comply with the requirements of section 274a.2(b) of this part, and to take such other remedial action as is appropriate.

(2) A respondent determined by the Service (if a respondent fails to request a hearing) or by an Administrative Law Judge to have failed to comply with the employment verification requirements as set forth in § 274a.2(b) of this part, shall be subject to a civil penalty in an amount of not less than $100 and not more than $1,000 for each individual with respect to whom such violation occurred. In determining the amount of the penalty, consideration shall be given to:

(i) The size of the business of the employer being charged;

(ii) The good faith of the employer;

(iii) The seriousness of the violation;

(iv) Whether or not the individual was an unauthorized alien; and

(v) The history of previous violations of the employer.

(3) Where an order is issued with respect to a respondent composed of a distinct, physically separate subdivision which does its own hiring or its own recruiting or referring for a fee for employment (without reference to the practices of, or under the control of or common control with, another subdivision) the subdivision shall be considered a separate person or entity.

(c) Enjoining pattern or practice violations. If the Attorney General has reasonable cause to believe that a person or entity is engaged in a pattern or practice of employment, recruitment or referral in violation of section 274A(a)(1)(A)

or (2) of the Act, the **\*16226** Attorney General may bring civil action in the appropriate United States District Court requesting relief, including a permanent or temporary injunction, restraining order, or other order against the person or entity, as the Attorney General deems necessary.

8 CFR § 274a.11

**§274a.11** **Special rule for legalization, special agricultural worker, and Cuban/Haitian entrant adjustment applicants.**
An individual who claims to be eligible, and who intends to apply or has applied, for benefits pursuant to section 245A or 210 of the Act or section 202 of the Immigration and Reform and Control Act of 1986, is authorized to work without presenting an employer or a recruiter or referrer for a fee with documentary evidence of work authorization. When an individual indicates to an employer or a recruiter or referrer for a fee that he or she claims to qualify for such benefits and that he or she intends to apply or has applied for such benefits, he or she shall attest to that fact by checking on the Form I-9, the third box of Part 1 (Employee Information and Verification) and noting "Special Rule" in the space after "Alien Number A " and "September 1, 1987" in the space after "expiration of employment authorization." The individual must also provide a document listed in § 274a.2(b)(1)(v)(B) of this part that establishes identity. The employer shall follow all of the employment verification procedures set forth in § 274a.2(b) of this part except that the employer or the recruiter or referrer for a fee shall note on the Form I-9 that the individual has stated his or her intention to seek such benefits by writing on the Form I-9 in Section 2—"Employer Review and Verification" under List C ("Documents that Establish Employment Eligibility) in the space after "Document Identification" the words "Special Rule" and in the space after "Expiration Date," "September 1, 1987". After September 1, 1987, such individuals, employers and recruiters and referrers for a fee will be required to fully comply with all provisions of § 274a.2(b) of this part. Employers, recruiters, and referrers, however, may update the Form I-9 if they follow the procedures set forth in § 274a.2(b)(2) of this part.


**Subpart B—Employment Authorization**
8 CFR § 274a.12

**§ 274a.12** **Classes of aliens authorized to accept employment.**
(a) Aliens authorized employment incident to status. Pursuant to the statutory or regulatory reference cited, the following classes of aliens are authorized to be employed in the United States without restrictions as to location or type of employment as a condition of their admission or subsequent change to one of the indicated classes, and specific employment authorization need not be requested:

(1) An alien who is a lawful permanent resident (with or without conditions pursuant to section 216 of the Act), as evidenced by Form I-151 or Form I-551 issued by the Service;

(2) An alien admitted to the United States as a lawful temporary resident pursuant to section 245A or 210 of the Act, as evidenced by an employment authorization document issued by the Service;

(3) An alien admitted to the United States as a refugee pursuant to section 207 of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(4) An alien paroled into the United States as a refugee for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(5) An alien granted asylum under section 208 of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(6) An alien admitted to the United States as a nonimmigrant fiance or fiancee pursuant to section 101(a)(15)(K) of the Act, or an alien admitted as the child of such alien, for the period of admission of the United States, as evidenced by an employment authorization document issued by the Service;

(7) An alien admitted as a parent (N-8) or dependent child (N-9) of an alien granted permanent residence under section 101(a)(27)(I) of the Act, as evidenced by an employment authorization document issued by the Service;

(8) An alien admitted to the United States as a citizen of the Federated States of Micronesia (CFA/FSM) or of the Marshall Islands (CFA/MIS) pursuant to agreements between the United States and the former trust territories, as evidenced by an employment authorization document issued by the Service;

(9) An alien granted suspension of deportation under section 244(a) of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(10) An alien granted withholding of deportation under section 243(h) of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service; or

(11) An alien who has been granted extended voluntary departure by the Attorney General as a member of a nationality group pursuant to a request by the Secretary of State. Employment is authorized for the period of time in that status as evidenced by Form I- issued by the Service.

(b) Aliens authorized for employment with a specific employer incident to status. The following classes of nonimmigrant aliens are authorized to be employed in the United States by the specific employer and subject to the restrictions described in the section(s) of this chapter indicated as a condition of their admission in, or subsequent change to, such classification. An alien in one of these classes is not issued an employment authorization document by the Service:

(1) A foreign government official (A-1 or A-2), pursuant to § 214.2(a) of this chapter. An alien in this status may be employed only by the foreign government entity;

(2) An employee of a foreign government official (A-3), pursuant to § 214.2(a) of this chapter. An alien in this status may be employed only by the foreign government official;

(3) A foreign government official in transit (C-2 or C-3), pursuant to § 214.2(c) of this chapter. An alien in this status may be employed only by the foreign government entity;

(4) A nonimmigrant crewman (D-1 or D-2) pursuant to § 214.2(d), and Parts 252 and 253, of this chapter. An alien in this status may be employed only in a crewman capacity on the vessel or aircraft of arrival, or on a vessel or aircraft of the same transportation company, and may not be employed in connection with domestic flights or movements of a vessel or aircraft;

(5) A nonimmigrant treaty trader (E-1) or treaty investor (E-2), pursuant to § 214.2(e) of this chapter. An alien in this status may be employed only by the treaty-qualifying company through which the alien attained the status. Employment authorization does not extend to the dependents of the principal treaty trader or treaty investor (also designated "E'1" or "E-2"), other than those specified in paragraph (c)(2) of this section;

(6) A nonimmigrant student (F-1) pursuant to § 214.2(f)(9) of this chapter. An alien in this status may be employed only in accordance with the following conditions:

(i) On campus for not more than twenty hours a week while school is in session; or

 **\*16227**  (ii) On campus full time when school is not in session if the student is eligible and intends to register for the next term or session. In addition, a nonimmigrant student (F-1) may engage in a work-study program as part of the regular curriculum available within the student's program of study in accordance with the conditions specified in § 214.2(f)(10) of this chapter;

(7) A representative of an international organization (G-1, G-2, G-3, or G-4), pursuant to § 214.2(g) of this chapter. An alien in this status may be employed only by the foreign government entity or the international organization;

(8) A personal employee of an official or representative of an international organization (G-5), pursuant to § 214.2(g) of this chapter. An alien in this status may be employed only by the official or representative of the international organization;

(9) A temporary worker or trainee (H-1, H-2A, H-2B, or H-3), pursuant to § 214.2(h) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(10) An information media representative (I), pursuant to § 214.2(i) of this chapter. An alien in this status may be employed only for the sponsoring foreign news agency or bureau. Employment authorization does not extent to the dependents of an information media representative (also designated "I");

(11) An exchange visitor (J-1), pursuant to § 214.2(j) of this chapter. An alien in this status may be employed only by the exchange visitor program sponsor or appropriate designee and within the guidelines of the program approved by the United States Information Agency;

(12) An intra-company transferee (L-1), pursuant to § 214.2(1) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(13) Officers and personnel of the armed services of nations of the North Atlantic Treaty Organization, and representatives, officials, and staff employees of NATO (NATO-1, NATO-2, NATO-3, NATO-4, NATO-5 and NATO-6), pursuant to § 214.2(o) of this chapter. An alien in this status may be employed only by NATO;

(14) An attendant, servant or personal employee (NATO-7) of an alien admitted as a NATO-1, NATO-2, NATO-3, NATO-4, NATO-5, or NATO-6, pursuant to § 214.2(o) of this chapter. An alien admitted under this classification may be employed only by the NATO alien through whom the status was obtained; or

(15) A nonimmigrant alien within the class of aliens described in paragraphs (b)(9), (11), and (12) of this section whose status has expired but who has filed a timely application for an extension of such status pursuant to §214.2 of this chapter. These aliens are authorized to continue employment with the same employer for a period not to exceed 120 days beginning on the date of the expiration of the authorized period of stay. If the alien's application for extension of stay has not been adjudicated within this period, the alien may apply to the district director for employment authorization pursuant to paragraph (c)(15) of this section.

(c) Aliens who must apply for employment authorization. Any alien within a class of aliens described in this section must apply for work authorization. If authorized, such an alien may accept employment subject to any restrictions indicated in the regulations or cited on the employment authorization document:

(1) An alien spouse or unmarried dependent son or daughter of a foreign government official (A-1 or A-2) pursuant to § 214.2(a)(2) of this chapter, or the dependent of an employee of a foreign government official (A-3) pursuant to § 214.2(a)(3) of this chapter;

(2) An alien spouse or unmarried dependent son or daughter of an alien employee of the Coordination Council for North American Affairs (E-1) pursuant to § 214.2(e) of this chapter;

(3) A nonimmigrant (F-1) student who:

(i) Is seeking off-campus employment authorization due to economic necessity pursuant to § 214.2(f) of this Chapter;

(ii) Is seeking employment for purposes of practical training pursuant to § 214.2(f) of this chapter. The alien may be employed only in an occupation which is directly related to his or her course of studies; or

(iii) Has been offered employment under the sponsorship of an international organization within the meaning of the International Organization Immunities Act (59 Stat. 669), if such international organization provides written certification to the district director having jurisdiction over the intended place of employment that the proposed employment is within the scope of the organization's sponsorship;

(4) An alien spouse or unmarried dependent son or daughter of an officer or employee of an international organization (G-4) pursuant to § 214.2(g) of this chapter;

(5) An alien spouse or minor child of an exchange visitor (J-2) pursuant to § 214.2(j) of this chapter;

(6) A nonimmigrant (M-1) student seeking employment for practical training pursuant to § 214.2(m) of this chapter following completion of studies if such employment is directly related to the student's course of study;

(7) A dependent of an alien classified as NATO-1 through NATO-7 pursuant to § 214.2(n) of this chapter;

(8) Any alien who has filed a non-frivolous application for asylum pursuant to Part 208 of this chapter. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specified date;

(9) Any alien who has filed an application for adjustment of status to lawful permanent resident pursuant to Part 245 of this chapter. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specified date;

(10) Any alien who has filed an application for suspension of deportation pursuant to Part 244 of this chapter, if the alien establishes an economic need to work. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specified date;

(11) Any alien paroled into the United States temporarily for emergent reasons or reasons deemed strictly in the public interest pursuant to § 212.5 of this chapter;

(12) Any deportable alien granted voluntary departure, either prior to or after hearing, for reasons set forth in §242.5(a)(2) (v), (vi), or (viii) of this chapter may be granted permission to be employed for that period of time prior to the date set for voluntary departure including any extension granted beyond such date. Factors which may be considered in adjudicating the employment application of an alien who has been granted voluntary departure are the following:

(i) The length of voluntary departure granted;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support;

(iii) Whether there is a reasonable chance that legal status may ensue in the near future; and

 **\*16228**  (iv) Whether there is a reasonable basis for consideration of discretionary relief.

(13) Any alien against whom exclusion or deportation proceedings have been instituted, who does not have a final order of deportation or exclusion, and who is not detained may be granted temporary employment authorization if the district director determines that employment is appropriate. Factors which may be considered by the district director in adjudicating the employment application of such an alien are the following:

(i) The existence of the economic necessity to be employed;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support;

(iii) Whether there is a reasonable chance that legal status may ensue in the near future; and

(iv) Whether there is a reasonable basis for consideration of discretionary relief;

(14) An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment;

(15) A nonimmigrant alien within the class of aliens described in paragraphs (b)(9), (11), and (12) of this section whose application for extension of stay has not been adjudicated within the 120-day period as set forth in paragraph (b)(15) of this section.

(d) Basic criteria to establish economic necessity. Title 45—Public Welfare, Poverty Guidelines, 45 CFR 1060.2 should be used as the basic criteria to establish eligibility for employment authorization when the alien's economic necessity is identified as a factor. The alien shall submit an application for employment authorization listing his or her assets, income, and expenses as evidence of his or her economic need to work. Permission to work granted on the basis of the alien's application for employment authorization may be revoked under §274a.14 of this chapter upon a showing that the information contained in the statement was not true and correct.General. An application (in the form of a written request) for employment authorization by an alien under § 274.12(c) of this chapter shall be filed with the district director having jurisdiction over the applicant's residence. Except for paragraph (c)(8) of this section, the approval of an application for employment authorization shall be within the discretion of the district director. Where economic necessity is identified as a factor, the alien must provide information regarding his or her assets, income, and expenses on the application for employment authorization.1I11(b) Approval of application. If the application is granted, the alien shall be notified of the decision and issued employment authorization for a specific period of time. Such authorization shall be subject to any conditions noted on the employment authorization document.1I11(c) Denial of application. If the application is denied, the applicant shall be notified in writing of the decision and the reasons for the denial.

There shall be no appeal from the denial of the application.1I11(d) Interim employment authorization. The district director shall adjudicate the application for employment authorization within 60 days from the date of receipt of the application by the Service or the date of receipt of a returned application by the Service. Failure to complete the adjudication within 60 days will result in the grant of interim employment authorization for a period not to exceed 120 days. Such authorization shall be subject to any conditions noted on the employment authorization document. However, if the district director adjudicates the application prior to the expiration date of the interim employment authorization and denies the individual's employment authorization application, the employment authorization granted under this section shall automatically terminate.1I80§ 274a.141I89Termination of employment authorization.1I11(a) Automatic termination of employment authorization.1I11(1) Employment authorization granted under § 274a.12(c) of this chapter shall automatically terminate upon the occurrence of one of the following events:1I11(i) The expiration date specified by the Service on the employment authorization document is reached;1I11(ii) Exclusion or deportation proceedings are instituted (however, this shall not preclude the authorization of employment pursuant to § 274a.12(c) of this part where appropriate); or1I11(iii) The alien is granted voluntary departure.1I11(2) Termination of employment authorization pursuant to this paragraph does not require the service of a notice of intent to revoke; employment authorization terminates upon the occurrence of any event enumerated in paragraph (a)(1) of this section.

However, automatic revocation under this section does not preclude reapplication for employment authorization under § 274.12(c) of this part.

(b) Revocation of employment authorization— (1) Basis for revocation of employment authorization. Employment authorization granted under § 274a.12(c) of this chapter may be revoked by the district director:

(i) Prior to the expiration date, when it appears that any condition upon which it was granted has not been met or no longer exists, or for good cause shown, or

(ii) Upon a showing that the information contained in the application is not true and correct.

(2) Notice of intent to revoke employment authorization. When a district director determines that employment authorization should be revoked prior to the expiration date specified by the Service, he or she shall serve written notice of intent to revoke the employment authorization. The notice will cite the reasons indicating that revocation is warranted. The alien will be granted a period of fifteen days from the date of service of the notice within which to submit countervailing evidence. The decision by the district director shall be final and no appeal shall lie from the decision to revoke the authorization.

(c) Automatic termination of temporary employment authorization granted prior to June 1, 1987. (1) Temporary employment authorization granted prior to June 1, 1987, pursuant to 8 CFR 109.1(b), or its redesignation as § 274a.12(c) of this part, shall automatically terminate on the date specified by the Service on the document issued to the alien, or on June 1, 1988, whichever is earlier. Automatic termination of temporary employment authorization does not preclude a subsequent application for temporary employment authorization.

(2) A document issued by the Service prior to June 1, 1987, that authorizes temporary employment authorization for any period beyond June 1, 1988, is null and void pursuant to paragraph (c)(1) of this section, and must be surrendered to the Service on the date that the temporary employment authorization terminates or on June 1, 1988, whichever is earlier. The alien shall be issued a new employment authorization document at the time the document is surrendered to the Service if the alien is eligible for temporary employment authorization pursuant to § 274a.12(c) of this chapter.

(3) No notice of intent to revoke is necessary for the automatic termination of temporary employment authorization pursuant to this part.

Dated: April 28, 1987.

Alan C. Nelson,

Commissioner, Immigration and Naturalization Service.

[FR Doc. 87-9896 Filed 4-30-87; 8:45 am]

BILLING CODE 4410-10-M

---

**End of Document**                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# DEF-INTERV.
# EX. 33

61 FR 47039-01, 1996 WL 500956(F.R.)

RULES and REGULATIONS

DEPARTMENT OF JUSTICE

Immigration and Naturalization Service

8 CFR Part 103

[AG Order No. 2054-96; INS No. 1792-96]

RIN 1115-AE51

Definition of the Term Lawfully Present in the United States for Purposes of
Applying for Title II Benefits Under Section 401(b)(2) of Public Law 104-193

Friday, September 6, 1996

**\*47039**  AGENCY: Immigration and Naturalization Service, Justice.

ACTION: Interim rule with request for comments.

SUMMARY: This interim rule amends the Immigration and Naturalization Service (Service) regulations to define the term "an alien who is lawfully present in the United States" so that the Social Security Administration may determine which aliens in the United States are eligible for benefits under title II of the Social Security Act. Aliens who are considered "lawfully present in the United States," however, must otherwise satisfy the requirements for benefits under title II of the Social Security Act in order to receive social security benefits.

DATES: This rule is effective September 6, 1996. Written comments must be received on or before November 5, 1996.

ADDRESSES: Please submit written comments, in triplicate, to the Director, Policy Directives and Instructions Branch, Immigration and Naturalization Service, 425 I Street, NW., Room 5307, Washington, DC 20536. To ensure proper handling, please reference INS number 1792-96 on your correspondence. Comments are available for public inspection at this location by calling (202) 514-3048 to arrange an appointment.

FOR FURTHER INFORMATION CONTACT:

Derek C. Smith, Assistant General Counsel, Office of the General Counsel; or Sophia Cox, Adjudications Officers, Adjudications Division; Immigration and Naturalization Service, 425 I Street, NW., Room 3214, Washington, DC 20536, telephone (202) 514-2895 or (202) 514-5014.

SUPPLEMENTARY INFORMATION: On August 22, 1996, the President signed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Personal Responsibility Act), Pub. L. 104-193. Section 401(a) of the Personal Responsibility Act provides that, subject to limited exceptions, only "qualified aliens," as defined under section 431, may receive Federal public benefits,  **\*47040** including retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, and unemployment benefits, among others.

Section 431(b) of the Personal Responsibility Act defines the term "qualified alien" to mean the following six groups of aliens:

(1) Aliens who are lawfully admitted for permanent residence under the Immigration and Nationality Act (Act);

(2) Aliens who are granted asylum under section 208 of the Act;

(3) Refugees admitted into the United States under section 207 of the Act;

(4) Aliens who are paroled into the United States under section 212(d)(5) of the Act for a period of at least 1 year;

(5) Aliens whose deportation is being withheld under section 243(h) of the Act; and

(6) Aliens who are granted conditional entry pursuant to section 203(a)(7) of the Act as in effect prior to April 1, 1980.

Section 401(b)(2) of the Personal Responsibility Act, however, provides an exception, which allows aliens who are "lawfully present in the United States," as determined by the Attorney General, to receive benefits under title II of the Social Security Act. (Title II benefits include, for example, retirement benefits.) The purpose of this regulation, therefore, is to define the term "an alien who is lawfully present in the United States," as required under section 401(b)(2) of the Personal Responsibility Act, thereby enabling the Social Security Administration to determine whether aliens who are not "qualified aliens" are eligible to receive title II benefits, if they are lawfully present in this country. This definition is made solely for the purpose of determining an alien's eligibility for payment of title II social security benefits, as required under section 401(b)(2) of the Personal Responsibility Act, and is not intended to confer any immigration status or benefit under the Immigration and Nationality Act.

In determining which aliens are lawfully present for the purposes of section 401(b)(2) of Public Law 104-193, the Service had to distinguish among many classes of aliens in the United States. The characteristic common to all the classes of aliens defined as "lawfully present in the United States" is that their presence in the United States has been sanctioned by a policy determination that a particular class of aliens should be allowed to remain in the United States, and that policy determination has almost always been implemented by an official act having the force of law. Each of the five categories defined as lawfully present fits within this rationale. First, the Service has concluded that Congress intended for qualified aliens, as defined in section 431(b) of the Personal Responsibility Act, to be included in the definition of lawfully present. Second, aliens who have been inspected and admitted to the United States and have not violated their status are lawfully present under the terms of the Immigration and Nationality Act. Third, an alien who has been paroled into the United States is lawfully present pursuant to section 212(d)(5) of the Act. However, persons who are paroled in order to determine whether or not they must be excluded under the Act are not lawfully present because no determination has been made as to the lawfulness of their presence, and they are allowed into the United States to avoid having to keep them in detention while they wait proceedings. Fourth, aliens who belong to one of the seven classes of aliens listed in section 103.12(a)(4) of this rule have been permitted to remain in the United States either by an act of Congress or through some other policy determination affecting that class of aliens. Aliens in temporary resident status pursuant to section 210 or 245A of the Act, aliens under Temporary Protected Status (TPS) pursuant to section 244A of the Act, and Family Unity beneficiaries pursuant to section 301 of Pub. L. 101-649 are all in lawful status under the Act. Cuban-Haitian entrants, aliens in deferred action status, aliens under Deferred Enforced Departure, and aliens who are the spouses and children of a United States citizen with an approved visa petition all remain in the United States under a Presidential or administrative policy that permits them to do so. Finally, applicants for asylum and withholding of deportation are permitted to remain in the United States because section 208(a) of the Act requires the Attorney General to create a procedure for adjudicating claims for asylum made by aliens physically present in the United States. Section 208(a) of the Act was passed to implement the obligations of the United States under the Convention Relating to the Status of Refugees, of July 28, 1951, as incorporated into the Protocol Relating to the Status of Refugees, of January 31, 1967.

**Good Cause Exception**

This interim rule is effective upon publication in the Federal Register although the Service invites post-promulgation comments and will address any such comments in a final rule. For the following reasons, the Service finds that good cause exists for adopting this rule without the prior notice and comment period ordinarily required by 5 U.S.C. 553(b). Section 401(b)(2) of Pub. L. 104-193 requires the Attorney General to define the term "an alien lawfully present in the United States" so that the Social Security Administration can determine which aliens are eligible for payment of title II social security benefits under the terms of the Social Security Act. Absent a definition of "an alien lawfully present in the United States," section 401(a) of Pub. L. 104-193 requires the Social Security Administration to suspend payments under title II for aliens who are not "qualified aliens" (as defined under section 431(b)) and who file applications on or after September 1, 1996. It is therefore impracticable to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b).

## Regulatory Flexibility Act

The Attorney General, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this regulation and, by approving it, certifies that this rule will not have a significant economic impact on a substantial number of small entities, because this regulation affects individuals, not small entities.

## Executive Order 12866

This interim rule is considered by the Department of Justice, Immigration and Naturalization Service, to be a "significant regulatory action" under E.O. 12866, section 3(f), Regulatory Planning Review, and it has been submitted to the Office of Management and Budget for review under E.O. 12866.

## Executive Order 12988

This interim rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of E.O. 12988.

## Executive Order 12612

This regulation will not have a substantial direct effect on the States, on the relationships between the National government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with E.O. 12612, it is determined that this rule does not have sufficient Federalism implications to warrant the preparation of a Federalism Assessment.

## List of Subjects in 8 CFR Part 103

Administrative practice and procedure, Authority delegations **\*47041** (Government agencies), Freedom of Information, Privacy, Reporting and recordkeeping requirements, Surety bonds.

Accordingly, part 103 of chapter I of title 8 of the Code of Federal Regulations is amended as follows:

## PART 103—POWERS AND DUTIES OF SERVICE OFFICERS; AVAILABILITY OF SERVICE RECORDS

1. The authority citation for part 103 continues to read as follows:

Authority: 5 U.S.C. 552, 552(a); 8 U.S.C. 1101, 1103, 1201, 1252 note, 1252b, 1304, 1356; 31 U.S.C. 9701; L E.O. 12356; 47 FR 14874, 15557; 3 CFR 1982 Comp., p. 166; 8 CFR part 2.
  8 CFR § 103.12

Definition of the Term Lawfully Present in the United States for..., 61 FR 47039-01

2. A new §103.12 is added to read as follows:

 8 CFR § 103.12

**§103.12 Definition of the term "lawfully present" aliens for purposes of applying for Title II social security benefits under Public Law 104-193.**

(a) Definition of the term an "alien who is lawfully present in the United States." For the purposes of section 401(b)(2) of Pub. L. 104-193 only, an "alien who is lawfully present in the United States" means:

(1) A qualified alien as defined in section 431(b) of Pub. L. 104-193;

(2) An alien who has been inspected and admitted to the United States and who has not violated the terms of the status under which he or she was admitted or to which he or she has changed after admission;

(3) An alien who has been paroled into the United States pursuant to section 212(d)(5) of the Act for less than 1 year, except:

(i) Aliens paroled for deferred inspection or pending exclusion proceedings under 236(a) of the Act; and

(ii) Aliens paroled into the United States for prosecution pursuant to 8 CFR 212.5(a)(3);

(4) An alien who belongs to one of the following classes of aliens permitted to remain in the United States because the Attorney General has decided for humanitarian or other public policy reasons not to initiate deportation or exclusion proceedings or enforce departure:

(i) Aliens currently in temporary resident status pursuant to section 210 or 245A of the Act;

(ii) Aliens currently under Temporary Protected Status (TPS) pursuant to section 244A of the Act;

(iii) Cuban-Haitian entrants, as defined in section 202(b) Pub. L. 99-603, as amended;

(iv) Family Unity beneficiaries pursuant to section 301 of Pub. L. 101-649, as amended;

(v) Aliens currently under Deferred Enforced Departure (DED) pursuant to a decision made by the President;

(vi) Aliens currently in deferred action status pursuant to Service Operations Instructions at OI 242.1(a)(22);

(vii) Aliens who are the spouse or child of a United States citizen whose visa petition has been approved and who have a pending application for adjustment of status;

(5) Applicants for asylum under section 208(a) of the Act and applicants for withholding of deportation under section 243(h) of the Act who have been granted employment authorization, and such applicants under the age of 14 who have had an application pending for at least 180 days.

(b) Non-issuance of an Order to Show Cause and non-enforcement of deportation and exclusion orders. An alien may not be deemed to be lawfully present solely on the basis of the Service's decision not to, or failure to, issue an Order to Show Cause or solely on the basis of the Service's decision not to, or failure to, enforce an outstanding order of deportation or exclusion.

Definition of the Term Lawfully Present in the United States for..., 61 FR 47039-01

Dated: September 4, 1996.

Janet Reno,

Attorney General.

[FR Doc. 96-22963 Filed 9-4-96; 3:10 pm]

BILLING CODE 4410-10-M

End of Document                                    © 20 9 Thomson Reuters. No c a m to or g na  U.S. Government Works.

# DEF-INTERV.
# EX. 34

76 FR 53764-01, 2011 WL 3793637(F.R.)
RULES and REGULATIONS
DEPARTMENT OF HOMELAND SECURITY
8 CFR Parts 1, 100, 103, 204, 207, 208, 209, 211, 212, 213a, 214, 223, 235, 236, 238, 240, 241, 244, 245, 245a, 248, 264, 265, 270, 274a, 287, 292, 299, 301, 310, 312, 316, 319, 320, 322, 324, 325, 328, 329, 330, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 343a, 343b, 343c, 392, and 499
[CIS No. 2481-09; DHS Docket No. USCIS-2009-0022]
RIN 1615-AB83

Immigration Benefits Business Transformation, Increment I

Monday, August 29, 2011

AGENCY: U.S. Citizenship and Immigration Services, DHS.

**\*53764**  ACTION: Final rule; request for comments.

SUMMARY: The Department of Homeland Security (DHS) is amending its regulations to enable U.S. Citizenship and Immigration Services (USCIS) to migrate from a paper file-based, non-integrated systems environment to an electronic customer-focused, centralized case management environment for benefit processing. This transformation process will allow USCIS to streamline benefit processing, eliminate the capture and processing of redundant data, and reduce the number of and automate its forms. This transformation process will be a phased multi-year initiative to restructure USCIS business processes and related information technology systems. DHS is removing references to form numbers, form titles, expired regulatory provisions, and descriptions of internal procedures, many of which will change during transformation. DHS is also finalizing interim rules that permitted submission of benefit requests with an electronic signature when such requests are submitted in an electronic format rather than on a paper form and that removed references to filing locations for immigration benefits. In addition, in this rule DHS is publishing the final rule for six other interim rules published during the past several years, most of which received no public comments.

DATES: Effective date: This rule is effective November 28, 2011.

Comment date: Written comments must be submitted on or before October 28, 2011.

ADDRESSES: You may submit comments, identified by DHS docket number USCIS-2009-0022 by one of the following methods:

• Federal eRulemaking Portal: http://www.regulations.gov. Follow the instructions for submitting comments.

• E-mail: You may submit comments directly to USCIS by e-mail at uscisfrcomment@dhs.gov. Include DHS docket number USCIS-2009-0022 in the subject line of the message.

• Mail: Sunday Aigbe, Chief, Regulatory Products Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue, NW., Suite 5012, Washington, DC 20529-2020. To ensure proper handling, please reference DHS docket number USCIS-2009-0022 on your correspondence. This mailing address may be used for paper, disk, or CD-ROM submissions.

Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01

• Hand Delivery/Courier: Sunday Aigbe, Chief, Regulatory Products Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue, NW., Suite 5012, Washington, DC 20529-2020. Contact Telephone Number is (202) 272-8377.

FOR FURTHER INFORMATION CONTACT: Dan Konnerth, Policy Chief, Office of Transformation Coordination, U.S. Citizenship and Immigration Services, Department of Homeland Security, 633 Third St., NW., Washington, DC 20529-2210. Contact Telephone Number is (202) 233-2381.

SUPPLEMENTARY INFORMATION:

**Table of Contents**

I. Public Participation

II. Background

A. Introduction

B. Authority

C. USCIS Transformation Initiative

D. How Transformation Will Work

E. Other Regulatory Changes Necessary for the Transformation Initiative

III. The Changes Made by This Rule

A. Removing References to Form Numbers and Form Titles

B. Removing References to Position Titles Within USCIS

C. Replacing "Service" With More Specific Component Names and Removing References to Particular USCIS Offices

D. Removing Information About Procedures for Filing and Internal Processing of Benefit Requests

E. Removing Obsolete and Expired Regulatory Provisions; Correcting and Updating Provisions Affected by Statutory Changes

F. Revising or Reorganizing Sections or Paragraphs for Clarity and Consistency and To Remove Duplicative Information

IV. Discussion of Comments Received in Response to the April 29, 2003, Interim Rule

V. Discussion of Other Interim Final Rules Being Finalized

A. Application for Refugee Status; Acceptable Sponsorship Agreement Guaranty of Transportation, RIN 1615-AA24

B. Adjustment of Status for Certain Syrian Nationals Granted Asylum in the United States, RIN 1615-AA57

C. Eliminating the Numerical Cap on Mexican TN Nonimmigrants, RIN 1615-AA96

D. Allocation of Additional H-1B Visas Created by the H-1B Visa Reform Act of 2004, RIN 1615-AB32

E. Classification of Certain Scientists of the Commonwealth of Independent States of the Former Soviet Union and the Baltic States as Employment-Based Immigrants, RIN 1615-AB14

F. Revoking Grants of Naturalization, RIN 1615-AA30

VI. Discussion of Comments Received in Response to the June 5, 2009, Interim Rule

VII. Regulatory Requirements

A. Administrative Procedure Act

B. Unfunded Mandates Reform Act of 1995

C. Small Business Regulatory Enforcement Fairness Act of 1996

D. Executive Order 12866

E. Executive Order 13132

F. Executive Order 12988 Civil Justice Reform

G. Paperwork Reduction Act

H. Regulatory Flexibility Act

**I. Public Participation**
Interested persons are invited to submit written data, views, or arguments on all aspects of this rule. Comments that will provide the most assistance to USCIS in developing these procedures will reference a specific portion of this rule, explain the reason for any recommended change, and include data, information, or authority that support the recommended change.

Instructions: All submissions must include the component name and DHS docket number USCIS-2009-0022. All comments received will be posted without change to http://www.regulations.gov, including any personal information provided.

Docket: For access to the docket to read background documents or comments received go to http://www.regulations.gov. Submitted comments may also be inspected at the Regulatory Products Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue, NW., Suite 5012, Washington, DC 20529-2020.

**II. Background**

*A. Introduction*
U.S. Citizenship and Immigration Services (USCIS) receives approximately six million immigration benefit requests each year, comprised of more than fifty types of applications and petitions. USCIS historically accepted paper applications and depended on paper files. These applications and  **\*53765**  paper files were the only means for USCIS to adjudicate applications and petitions and that paper-based process, by contemporary standards, was inefficient. Until recently,

USCIS processed on paper all immigration benefits, verified the identity of applicants, and provided other government agencies with the information required to quickly identify criminals and possible terrorists.

USCIS is modernizing its processes and systems in light of the development of technology to accommodate and encourage greater use of electronic data submission, to include e-filing and electronic interaction. USCIS will not eliminate paper filing at this time but will convert the data from paper filing to an electronic medium when the completed form is received. USCIS will then operate in an electronic environment fostering greater operational efficiency, provide transparency, and improve access to information through online accounts for those who do business with USCIS.

The Department of Homeland Security (DHS) and USCIS began the transformation of USCIS operations by eliminating regulatory references to filing locations for immigration benefits, thereby permitting USCIS to more rapidly adjust filing locations to meet demand and operational needs and to provide that information on petition and application forms and through other means, such as on the USCIS Web site. See Removing References to Filing Locations and Obsolete References to Legacy Immigration and Naturalization Service; Adding a Provision to Facilitate the Expansion of the Use of Approved Electronic Equivalents of Paper Forms, 74 FR 26933 (June 5, 2009) ("Filing Location Rule").

DHS is expanding on the Filing Location Rule by affording additional flexibility for applicants and petitioners to file, and for USCIS to receive and process, benefit requests, biometrics, and supporting documentation in an electronic environment. For example, amendments in this rule to 8 CFR 103.2(a)(1) (relating to filing), 8 CFR 103.2(a)(7) (relating to receipt dates), and 8 CFR 103.8 (relating to delivery of notices) each replace language geared solely to paper files and benefit requests with language that is equally applicable in a paper or electronic environment.

### B. Authority

The Government Paperwork Elimination Act (GPEA), Public Law 105-277, tit. XVII, section 1703, 112 Stat. 2681, 2681-749 (Oct. 21, 1998), 44 U.S.C. 3504 note, provides that, when possible, Federal agencies use electronic forms, electronic filing, and electronic submissions to conduct agency business with the public. GPEA establishes the means for the use and acceptance of electronic signatures. This rule will significantly enhance the ability of USCIS to fully implement GPEA. The Homeland Security Act of 2002, Public Law 107-296, section 102, 116 Stat. 2135 (Nov. 25, 2002), 6 U.S.C. 112, and the Immigration and Nationality Act of 1952, as amended (INA or Act), section 103, 8 U.S.C. 1103, charge the Secretary of Homeland Security with administration and enforcement of the immigration and naturalization laws. DHS implemented an electronic signature provision for immigration benefit filings with USCIS in 2003. Electronic Signature on Applications for Immigration and Naturalization Benefits, 68 FR 23010 (April 29, 2003). The Secretary promulgates this final rule under the broad authority to administer the Department of Homeland Security, and the authorities provided under the Homeland Security Act of 2002, the immigration and nationality laws, and other delegated authority.

DHS is also adding new fees to the USCIS fee regulations as required by recent legislation. Effective August 13, 2010, Public Law 111-230 imposes additional fees on certain H-1B and L-1 nonimmigrants. 124 Stat. 2485 (Aug. 13, 2010); New 8 CFR 103.7(b)(1)(v).

### C. USCIS Transformation Initiative

USCIS is engaged in an enterprise-wide transformation effort to implement new business processes and to improve service, operational efficiency, and national security. USCIS's new operational environment will employ online accounts, such as those used by many private sector organizations.

Applicants and petitioners will be able to access individualized accounts that will provide electronic access to information on how to apply for benefits, allow easier filing, and permit applicants and petitioners, and their representatives, to track the status of open applications and petitions. Applicants and petitioners will be able to use a secure USCIS Internet Web site to access accounts "on-demand" in an electronic service environment available at all times.

USCIS will develop new automated case management tools to access data electronically, prevent the loss of information, and provide adjudicators with a comprehensive view of an alien's immigration history. USCIS's electronic environment will facilitate and expedite information collection, reduce benefit fraud and result in more consistent and efficient decisions. USCIS is supplementing existing paper filing options by adding more user-friendly electronic filing options.

USCIS will improve many of its internal security, operational efficiency, and public service capabilities as transformation proceeds. USCIS will first allow the creation of accounts for various applicants, followed by enhanced e-filing and case management capabilities, and then improve reporting and Freedom of Information Act (FOIA), 5 U.S.C. 552, tools. Once deployed, these tools will be applied and made available to the immigrant, humanitarian, and nonimmigrant applicant populations.

USCIS's transformation to an electronic environment is based on three objectives and long-term benefits: enhanced national security and integrity of filings, public service, and operational efficiency. USCIS's transformation will use modern electronic audit and investigative methods to improve national security and integrity by identifying potential fraud and other risks by effectively collecting, analyzing and sharing information used to verify an alien's or other individual's identity and eligibility for various immigration benefits. USCIS will use a more complete picture of an alien's immigration history by analyzing information across benefit applications, thus exposing those attempting to perpetrate fraud or who are otherwise ineligible for immigration benefits. For example, an applicant's or beneficiary's marital or employment history in an existing agency file or in another pending application may provide relevant information that differs from the information in the application or petition being adjudicated. A responsible and transparent approach toward the handling of such personal information protects the rights of individuals and organizations interacting with USCIS and thereby fosters their trust and cooperation. At the same time, this approach facilitates authorized sharing of information with partner components of DHS   such as U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE)   in a secure environment that better protects against unauthorized disclosures. This approach will facilitate authorized sharing of information with partner agencies   such as the Department of State (DOS) and the Department of Justice (DOJ). In addition, electronic transmission and storage of information is faster, less costly and more secure than the physical movement of paper files.

 **\*53766**  USCIS will improve public service by adjudicating requests for benefits more accurately and quickly, and by providing more timely and accurate information about immigration benefits and the status of benefit requests. Applicants, petitioners, and their representatives will have access to relevant forms, instructions, case status, and other actions and information through online accounts that organize information and transactions to meet their needs. DHS will continue to ensure the confidentiality of its immigration records in accordance with the requirements of the law, including the Privacy Act, 5 U.S.C. 552a,[FN1] and 8 CFR 208.6. USCIS's transformation to an electronic environment will enable it to become an innovative and agile organization that better understands its workload and best uses all available resources, investing in its people and infrastructure to ensure cost-effective and consistent results.

### D. How Transformation Will Work

USCIS adopted a "person-centric" business approach to transformation based on establishing various types of individual and organizational accounts. The key to this approach is encouraging individual applicants, petitioners, beneficiaries, organizations, legal representatives, and others who interact with USCIS to access their own online accounts. Applicants,

petitioners, and others will be able to electronically submit benefit requests with supporting documentation, access status information regarding pending benefit requests, change their addresses and contact information, obtain FOIA-related materials, and comply with some registration requirements of the Immigration and Nationality Act.

USCIS's transformation will create an end-to-end electronic adjudicative process encompassing an alien's entire immigration lifecycle, unlike the current process that uses multiple systems and focuses on each individual benefit request. Data initially provided by account holders will be reused, if appropriate, to reduce data entry required for subsequent benefit requests. Additional and revised data will be used to update and enhance account information. Account data submitted to support various immigration benefit transactions will be verified, where feasible and appropriate, through links to other internal and external data systems, potentially reducing the need for applicants and petitioners to provide certain forms of supporting evidence and reducing potential requests for evidence from USCIS.

USCIS's transformation will eventually affect all aspects of USCIS benefit processing operations and technology. This operational concept is intended to standardize processes across USCIS operations relating to case intake, biometrics, background checks, adjudication, scheduling, and notifications. USCIS benefit adjudication operations will be changed incrementally from a paper- and hard copy file-based process to an electronic process, making it possible to process benefit requests more efficiently. With the implementation of these improvements, USCIS will enhance the overall process.

### E. Other Regulatory Changes Necessary for the Transformation Initiative

DHS anticipates that additional regulatory changes will be required over the next several years as the transformation of USCIS to an electronic environment progresses. DHS expects, for example, to revise regulations pertaining to filing and handling of immigrant benefit requests to lead to computer system enhancements applied to immigrant applications and benefits. DHS will not make transformation-related changes to 8 CFR part 214 at this time, but will publish a separate rulemaking to address business transformation as well as reorganizing and simplifying that part.

### III. The Changes Made by This Rule

DHS is amending those parts of chapter I of 8 CFR that regulate affidavits of support, citizenship and naturalization, employment authorization, nonimmigrant benefits (other than part 214) and related waivers, permanent resident documents, refugee and asylum processing, Temporary Protected Status, and travel documents. These amendments are best understood by the changes effected, rather than as individual amendments to the regulations.

### A. Removing Form Title and Number References, and Adding Filing Definitions

DHS is removing references to form numbers and form titles. At this time, USCIS will continue to accept paper submission of most applications, petitions, and benefit requests, although it will phase out references to mandatory use of specific forms for specific purposes in the regulations. Mandating in regulations specific form numbers reduces USCIS's ability to modify its business processes to reflect filing procedures in an electronic environment. Form names and numbers will continue to exist for reference purposes but will not be specifically referenced in the regulations. This rule is an early step in the transformation process and purposely does not remove all form references from all regulations affecting USCIS procedures at this time. Forms identified by number will continue to appear until other parts of DHS regulations are amended to address transformation requirements. The list of prescribed forms will be removed from 8 CFR parts 299 and 499, although USCIS will continue to refer to form numbers on its Internet Web site, at http://www.uscis.gov, and public information telephone scripts. DHS components ICE, and CBP will likewise continue to refer to form numbers on their Internet Web sites, http://www.ice.gov, and http://www.cbp.gov.

In most instances, DHS is removing form names and numbers by replacing the form reference with a generic statement, such as "the form designated by USCIS." Removal of these references from a paragraph or section in some instances, however, requires changes which cannot be achieved through replacement of a term or phrase. In those instances, the entire paragraph is revised.

DHS is removing references to the specific forms known by form numbers: AR-11, G-28, G-325, I-90, I-94, I-102, I-129, I-130, I-131, I-191, I-192, I-193, I-212, I-290B, I-407, I-512, I-539, I-551, I-566, I-589, I-590, I-601, I-602, I-607, I-644, I-688, I-730, I-765, I-797, I-797A, I-797B, I-821, I-854, I-864, I-864A, I-864P, I-865, I-907, I-914, I-917, I-918, N-300, N-400, N-426, N-565, N-600, and N-643. This list is not intended to be exhaustive, nor are all references to the listed forms removed by this final rule. Additional references to these and other USCIS forms will be phased out in subsequent rules. DHS is not removing references to forms that primarily affect the functions of DHS components other than USCIS.

Enumerating OMB control numbers for USCIS information collection requirements in regulations is no longer necessary and, therefore, 8 CFR 100.7 is being removed. OMB control numbers continue to be displayed on USCIS forms pursuant to the Paperwork  *53767  Reduction Act, 44 U.S.C. 3512, and on the USCIS Internet Web site.

DHS is adding new definitions for "application," "petition," and "benefit request" to transition from "forms" to either paper or electronic instruments used to seek various immigration benefits. The terms "application" and "petition" are used together, separately, and interchangeably in many sections of chapter I of the 8 CFR and this rule does not affect every reference to those terms. The term "benefit request" is often used in the sections amended by this rule in place of application or petition in the interest of economy of words, to reduce the ambiguity and confusion resulting from the constant use of both terms, improve readability, and to add flexibility for describing what a particular capability may be called when it is converted to an electronic interaction. No substantive change results from defining these terms in this rule.

As the USCIS transformation initiative progresses, electronic versions of forms and digital images of supporting documents will largely replace paper forms and documents for adjudication and records retention purposes. USCIS will specify the process and standards for the transmission of electronic benefit requests and supporting documents on its Internet Web site, but it is intended that these standards will accommodate the technology in most home and public computers so as to be widely accessible.

DHS is adding a definition of "form instructions" to establish that the term refers to the most recent, approved version of such instructions available through the USCIS Internet Web site, regardless of the fact that other editions of these instructions may exist and be in circulation through other sources. Whether published in paper form or on the USCIS web site, all form and form instructions will continue to comply with Paperwork Reduction Act requirements, including public notice and comment periods. 44 U.S.C. 3507. In addition to traditional instructions appended to a USCIS form, the term as defined by this rule encompasses the process information (e.g., filing locations, instructions on the process for submission of supporting documents) that USCIS publishes on its Internet Web site in addition to those traditional instructions, and may also include non-form and non-substantive guidance such as appendices, exhibits, guidebooks, or manuals.

USCIS does not publish its Registration for Classification as Refugee, Form I-590, with instructions for the U.S. Refugee Admissions Program (USRAP), for general public use. Access to the USRAP is managed by DOS, and implemented by its overseas processing entities (OPEs). OPEs assist targeted populations of refugee applicants with preparation of the Registration for Classification as Refugee. As such, the term "form instructions" includes process information that USCIS publishes about the USRAP.

DHS is adding a definition for the terms "execute" or "executed" when referring to completion of an application or petition to request a benefit to ensure consistency across paper and electronic media.

### B. Removing References to Position Titles Within USCIS

Wherever possible, DHS is removing references to official position titles used within DHS or used in the past by the former Immigration and Naturalization Service (INS). These titles include director, district director, and commissioner as well as position descriptions such as examiner or adjudicator. Both position titles and delegated authority to perform specific duties assigned to USCIS employees are subject to change, potentially rendering regulatory references inaccurate or delaying implementation of planned operational changes. DHS is revising those titles and position descriptions with USCIS, DHS, or other component names, as appropriate and necessary to provide DHS with the operational flexibility required to facilitate adjudication in an electronic environment. DHS is also replacing obsolete references to the Attorney General, substituting the Secretary where appropriate.

DHS is, for example, amending 8 CFR 103.7(d) by removing the specific titles of USCIS employees who are designated to certify official immigration records. DHS and USCIS will delegate authority to appropriate officials who may be required to fulfill this responsibility.

### C. Replacing "Service" With More Specific Component Names and Removing References to Particular USCIS Offices

The definition of "Service" in newly designated 8 CFR 1.2 is amended to provide flexibility and promote the goals of transformation. The regulations in chapter I of the 8 CFR contain provisions that, to varying degrees, govern facets of all of the immigration components of DHS—CBP, ICE, and USCIS. Where DHS has determined that the section being amended by this rule applies only to USCIS, that defined acronym is inserted to replace the previously named office, position, title, or component. Where the section pertains to an action that may have been taken by INS, or a function that is the purview of or shared with another component, the term "the Service" is retained or inserted. Thus, "the Service" in 8 CFR may refer to any immigration-related component of DHS, including USCIS, ICE, or CBP. As DHS does not purport to revise every paragraph within 8 CFR, the absence of a change to an existing usage of "Service" in a particular context does not necessarily indicate a position with respect to component authority in that context. Similarly, remaining references to the former Immigration and Naturalization Service and the acronym INS are replaced by more accurate terms.

### D. Removing Information About Procedures for Filing and Internal Processing of Benefit Requests

Some parts of the regulations include details of the internal processing and handling of benefit requests or descriptions relating to submission of paper versions of benefit request forms. Administrative filing requirements, locations, and procedures will not be prescribed in regulations but will be outlined in more flexible methods of conveying instructions. This modification will not change eligibility criteria or evidentiary standards. See, e.g., 8 CFR 212.7(a)(3) ("* * * If the application is approved the director shall complete Form I-607 for inclusion in the alien's file."). See also 8 CFR 214.2(l) (5)(ii)(E), ("* * * The consular officer shall also endorse all copies of the alien's Form I-129S with the blanket L-1 visa classification and return the original and one copy to the alien. When the alien is inspected for entry into the United States, both copies of the Form I-129S shall be stamped to show a validity period not to exceed three years and the second copy collected and sent to the appropriate Regional Service Center for control purposes.") These details are not essential to the regulations, do not add substantive requirements or impose limitations, and unnecessarily burden the text of the regulations. To the extent that this information is required to be published, 5 U.S.C. 552(a)(1)(A), (B), DHS will publish an organization and functions rule in part 2 of 8 CFR. DHS is removing these types of provisions because

they are subject to change during transformation and because such information is more appropriately included within field manuals and other instructional materials that USCIS can readily revise and describe in more detail.

**\*53768**   Terms such as "in writing," "written decision," and "written notice" have not been removed because an electronic transmission constitutes a valid writing. GPEA provides: "Electronic records submitted or maintained in accordance with procedures developed under this title, or electronic signatures or other forms of electronic authentication used in accordance with such procedures, shall not be denied legal effect, validity, or enforceability because such records are in electronic form." Public Law 105-277, tit. XVII, section 1707, 112 Stat. at 2681-751 (Oct. 21, 1998) . GPEA defines electronic signature as "* * * a method of signing an electronic message that identifies and authenticates a particular person as the source of the electronic message; and indicates such person's approval of the information contained in the electronic message." Id. Thus, as provided in GPEA, a notice on the status of a request for benefits, a request for additional evidence, and a notice of approval or denial of a request for benefits may be effected by electronic communication if that method is requested by the person who has requested the benefit, notwithstanding a regulatory provision that requires such notice to be "in writing." Nonetheless, for clarity's sake, 8 CFR 103.8 provides that electronic delivery of notices suffices in appropriate circumstances. See new 8 CFR 103.8.

*E. Removing Obsolete and Expired Regulatory Provisions; Correcting and Updating Provisions Affected by Statutory Changes*

DHS is also removing regulatory provisions that have expired because of statutory lapses or self-executing time limits, or that are obsolete, and to make non-discretionary corrections to provisions affected by statutory amendments or extensions of time. In addition, DHS revises obsolete statutory and regulatory citations.

DHS is adding three paragraphs to USCIS fee regulations to reflect statutory fees which are already collected but which were not previously included in regulations. See new 8 CFR 103.7(b)(1)(i)(CCC)-(EEE). The additions provide the $1500 or $750 fee for filing certain H-1B petitions required by the American Competitiveness and Workforce Improvement Act (ACWIA), the additional fee of $500 for filing certain H-1B and L petitions established by Section 426 of the Visa Reform Act of 2004, and the additional $150 fee for H-2B petitions required by the Real ID Act of 2005. See, respectively, INA section 214(c)(9)(B), 8 U.S.C. 1184(c)(9)(B); INA section 214(c)(12)(C), 8 U.S.C. 1184(c)(12)(C); INA section 214(c)(13)(C), 8 U.S.C. 1184(c)(13)(B). These fees are used, generally, for training, scholarships, and fraud detection and prevention. INA sections 286(s), (v), 8 U.S.C. 1356(s), (v). USCIS determines liability for both of these fees and calculates the amount due through a series of questions on the H and L petition form. The determination process is unchanged by this rulemaking. Provisions are also added to prescribe a fee of $2000 for certain H-1B nonimmigrants or $2250 for certain L-1 nonimmigrants as required by recent legislation. Public Law 111-230, section 402, 124 Stat. 2488 (Aug. 13, 2010). Fees collected pursuant to these sections are deposited in the General Fund of the Treasury. Id, at section 402(c). DHS is not required to publish these fees in the CFR since the statute is clear in requiring their collection and use. Nevertheless, most USCIS stakeholders know to refer to 8 CFR 103.7 for the proper USCIS fees, and DHS believes it is a better practice to make sure that these statutorily mandated fees are also clearly delineated along with the fees established administratively by DHS through rulemaking.

Section 209.1(f) is a companion provision to match the existing provision in 8 CFR 209.2(b), which sets out the process and standards for asylees seeking adjustment of status who require a waiver of inadmissibility. Since both refugees and asylees applying for adjustment of status are subject to identical standards for waivers of inadmissibility these standards are now reflected in this section addressing both types of applicants. INA section 209(c), 8 U.S.C. 1159(c).

Since the statutory cap on adjustment by asylees has been removed, the text referencing that cap   at 8 CFR 209.1(a)(1)(vi) and the sentence that follows   are removed. For the same reason, 8 CFR 209.2(a)(2) is revised by removing the

last three sentences of the paragraph. See Public Law 109-13, tit. I, section 101(g), 119 Stat. 302 (May 11, 2005), 8 U.S.C. 1101 note.

DHS is revising 8 CFR 209.2(d) to clarify that a medical examination, including compliance with vaccination requirements, is required of asylees applying for adjustment of status. The vaccination supplement no longer exists as a stand-alone document but rather is incorporated into the medical examination. Form instructions provide detailed guidance regarding the medical examination requirement.

DHS is removing 8 CFR 212.8 and 212.9, relating to nonpreference investor visas and to former third and sixth preference employment-based visas, because the provisions are obsolete. The provisions of the Act that provided for these visas were repealed by section 111 of the Immigration Act of 1990, Pub. L. 101-649, 104 Stat. 4978 (Nov. 29, 1990).

DHS is removing 8 CFR 212.11, which regards the admissibility of an alien who has been convicted of a violation of a law relating to a controlled substance because it is redundant. This section provided that in determining the admissibility of an alien who has been convicted of a violation of any law relating to a controlled substance, the term controlled substance as used in section 212(a)(23) of the Act shall mean the same as that referenced in the Controlled Substances Act, 21 U.S.C. 801, et seq. Section 212(a)(2) of the Act governs inadmissibility for criminal acts and Section 212(a)(2)(A)(i)(I) specifically includes violations of the Controlled Substance Act. INA section 212(a)(2)(A)(i)(II), 8 U.S.C. 1182(a)(2)(A)(i)(II).

DHS revised Section 244.17 to reflect current policies and procedures for re-registration of TPS beneficiaries.

DHS is removing 8 CFR 245.1(e)(2) as obsolete. This section provided for the adjustment of status of certain nonimmigrant registered nurses in accordance with the Immigration Nursing Relief Act of 1989, Public Law 101-238, 103 Stat. 2099 (Dec. 18, 1989), 8 U.S.C. 1182 note. The application period for this provision ended on March 20, 1995, and USCIS no longer has pending applications related to this provision. This regulation also makes related conforming changes to 8 CFR 245.1(g)(1) and 245.2(a)(5)(ii).

Section 245.9 is removed. This section provided for adjustment of status for certain Chinese nationals pursuant to the Chinese Student Protection Act, Pub. L. 102-404, 106 Stat. 1969 (Oct. 9, 1992). The application period for this provision ended June 30, 1994, and USCIS no longer has pending applications related to this provision. Id.

Section 245.12 is removed. This section provided for adjustment of status for certain Polish and Hungarian parolees pursuant to section 646 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Public Law 104-208, 110 Stat. 3009 (Sep. 30, 1996). Persons eligible for benefits under this provision must have been paroled into the U.S. prior to December 31, 1991. USCIS has not received applications pursuant to this section for several years and is unlikely to receive any in the future. Public Law 104-208, 110 Stat. 3009 (Sep. 30, 1996).

**\*53769**  Section 245.13 is removed. This section provided for adjustment of status for certain nationals of Nicaragua and Cuba pursuant to section 202 of the Nicaragua Adjustment and Central American Relief Act, Public Law 105-100, 111 Stat. 2160, 2193 (Nov. 19, 1997). The application period for benefits under this provision ended April 1, 2000. USCIS no longer has pending applications pursuant to this provision. Id.

Section 245.20 is removed . This section provided for adjustment of status of Syrians granted asylum under the Syrian Adjustment Act, Public Law 106-378, 114 Stat. 1442 (Oct. 27, 2000). Eligibility under this provision required entry prior to Dec. 31, 1991. USCIS no longer has pending applications pursuant to this provision and is unlikely to receive any in the future.

Section 245.21 is revised because the Consolidated Appropriations Act of 2005 amended the Indochinese Parolee Act to eliminate the 3-year filing window and 5,000 visa limit.

Parts 264 and 265 are revised to encompass management of fingerprinting, registration, and address reporting requirements in an electronic environment and to remove obsolete references.

This rule adds 8 CFR 316.6 and revises 8 CFR 316.5, 8 CFR 322.2, and 8 CFR 341.5 to conform to the amendments to the Act by the National Defense Authorization Act (NDAA 2008), Public Law 110-181, 122 Stat. 3 (Jan. 28, 2008). The NDAA 2008 provides certain immigration benefits for any qualifying spouse or child of a member of the Armed Forces. Specifically, the NDAA 2008 amended section 319(e) of the Act; 8 U.S.C. 1430(e), to allow certain spouses of members of the Armed Forces to count any qualifying time abroad as continuous residence and physical presence in the United States for purposes of naturalization and to permit such naturalization to occur outside the United States. INA section 319(e), 8 U.S.C. 1430(e); INA section 322(d), 8 U.S.C. 1433(d); 8 U.S.C. 1443a.

This rule revises 8 CFR 319.3 to conform to the amendments to the INA by the National Defense Authorization Act (NDAA 2004), Public Law 108-136, 117 Stat. 1565 (Nov. 24, 2003), which provides certain immigration benefits relating to the naturalization of any qualifying surviving child or parent of a member of the Armed Forces. Specifically, NDAA 2004 provides for the naturalization of any qualifying surviving child or parent of a member of the Armed Forces who dies during a period of honorable service, a benefit only previously afforded to surviving spouses. INA section 319(d), 8 U.S.C. 1430(d).

This rule revises 8 CFR 322.3 to conform to the various legislative amendments to the Act. Specifically, 8 CFR 322.3(a) was revised to conform to the 21st Century Department of Justice Appropriations Authorization Act, Public Law 107-273, enacted on November 2, 2002, which amended section 322 of the Act to allow U.S. citizen grandparents and U.S. citizen legal guardians to apply for naturalization on behalf of a child born and residing outside of the United States. Public Law 107-273, 116 Stat. 1758 (Nov. 2, 2002); see INA section 322, 8 U.S.C. 1433(a). Such an application by the U.S. citizen grandparent or U.S. citizen legal guardian can be made within 5 years of the death of a U.S. citizen parent of a child who could otherwise have been the beneficiary of an application for naturalization under section 322 of the Act. See Id. This change will conform the regulations to legislation and current practice.

In addition, current 8 CFR 322.3(a) requires the citizen parent (or, as appropriate, grandparent or guardian) to include with the application a request concerning when the applicant would like to have the child's naturalization interview scheduled. The form instructions elicit the information needed to schedule the interview. Therefore, there is no need for a separate provision on this point in 8 CFR 322.3(a).

This rule revises 8 CFR 322.3(b) to conform to the amendments to the Act made by the Intercountry Adoption Act of 2000, Public Law 106-279, which added a definition of certain adoptees to section 101(b)(1)(G) of the Act on October 6, 2000. 114 Stat. 825 (Oct. 6, 2000). The new definition describes children adopted in a foreign state that is a party to the Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption of May 22, 1993. INA section 101(b)(1)(G), 8 U.S.C. 1101(b)(1)(G). That definition under section 101(b)(1)(G) of the Act corresponds to the visa categories IH-3 and IH-4 and became effective when the Hague Adoption Convention entered into force in the United States on April 1, 2008. See id. USCIS implemented the Intercountry Adoption Act by publishing an interim rule, "Classification of Aliens as Children of United States Citizens Based on Intercountry Adoptions Under the Hague Convention," on October 4, 2007. See 72 FR 56831 (Oct. 4, 2007). The additional changes in this rule conform to the requirements codified on that date and which have been followed since April 1, 2008.

In addition, several expired and obsolete naturalization-related regulatory provisions have been removed, including 8 CFR: 312.3(a) (standardized citizenship testing), 329.5 (natives of the Philippines with active duty service during World War II), 332.2 (establishment of photographic studios), 334.16-334.18 (naturalization petitions), 335.11-335.13 (naturalization petitions), 338.11 and 338.12 (naturalization court processes), 339.2(c) (reports relating to petitions filed prior to October 1, 1991), and 340.1 (reopening of a naturalization application by a district director pursuant to section 340(h) of the Act).

In 8 CFR 312.3, paragraph (a) is removed because the "standardized citizenship testing" for applicants for naturalization ended on August 30, 1998. See 63 FR 25080 (May 6, 1998).

Section 329.5 is removed because the filing period for submitting an application for naturalization under section 405 of the Immigration Act of 1990, the corresponding statutory naturalization authority, expired on February 3, 1995. See 8 CFR 329.5(e).

Sections 334.16-334.18, 335.11-335.13, and 339.2(c) are removed because they relate to any "petition for naturalization" filed prior to October 1, 1991. Such petitions were under the jurisdiction of the naturalization court until that date. See 8 CFR 310.4; INA section 310, 8 U.S.C. 1421.

**F. Revising or Reorganizing Sections or Paragraphs for Clarity and Consistency, and To Remove Duplicative Information**

DHS is reorganizing 8 CFR part 1 (Definitions) and 8 CFR part 103 (Immigration Benefits, Biometric Requirements, Availability of Records), without substantive change. The reorganization of these sections does not introduce new obligations, requirements, or procedures. The reorganization is designed to simplify and rearrange existing regulatory requirements in a manner which is easier for the public to identify and understand. This rulemaking also removes regulatory provisions which repeat statutory or other regulatory information or which restate filing information that USCIS routinely includes in its form instructions. None of the changes made effect a substantive change in the law. DHS is also reorganizing certain parts of 8 CFR without substantive change. DHS intends, in the recodification of these regulations, to conform to the understood policy, intent, and purpose of the original regulations, with such **\*53770** amendments and corrections as will remove ambiguities, contradictions, and other imperfections.

The regulations pertaining to filing and adjudication of immigration benefits are contained in 8 CFR 103.2. That section also incorporates the specific requirements contained in USCIS form instructions. See 8 CFR 103.2(a)(1). Repeating or paraphrasing parts of this information within other regulations that relate to specific benefits is unnecessary, possibly confusing, and may be inaccurate. Such repetition can lead the reader to conclude that a provision is somehow uniquely applicable to that particular benefit type. For example, "* * * The director shall consider all the evidence submitted and such other evidence as he or she may independently require to assist his or her adjudication" is repetitive information found within another regulation. See 8 CFR 214.2(h)(9)(i). Or, "* * * A copy of a document submitted in support of a visa petition filed pursuant to section 214(d) of the Act and this paragraph may be accepted, though unaccompanied by the original, if the copy bears a certification by an attorney, typed or rubber-stamped, in the language set forth in § 204.2(j) of this chapter. However, the original document shall be submitted if requested by the Service" is both repetitive and inaccurate because the referenced paragraph and procedure no longer exist. See also 8 CFR 214.2(k)(1).

This rule organizes 8 CFR part 103 into four subparts: subpart A Applying for Benefits, Surety Bonds, Fees; subpart B Biometric Requirements; subpart C Reserved; and subpart D Availability of Records.

Section 103.1 is removed. The delegation of authority, formerly found in 8 CFR 103.1(a), was redundant of authority specified in 8 CFR 2.1. Section 103.2(a) is revised, primarily to describe alternate procedures for electronic submission

of benefit requests with digital images of supporting documentation. With the definition of "benefit request" added in 8 CFR part 1, the terms "application" and "petition" are being replaced by the term "benefit request" to reduce possible confusion regarding the use of specific paper versions of forms traditionally required to apply for benefits. As stated earlier, the terms "petition" and "application" are not being replaced throughout the rest of this chapter I and will be accorded the meaning now ascribed to them in 8 CFR part 1. Although this paragraph was recently revised, the additional changes made by this rule will clarify filing procedures for both the current environment and the electronic environment.

Section 103.2, paragraph (a)(7) is revised to describe establishment and recordation of filing dates for benefit requests in an electronic environment. That paragraph had previously described procedures that reflected regular mail, hand delivery, and internal actions of USCIS for physically handling paper, such as stamping files with dates by hand. Specific internal procedures for determining how receipt dates and times are to be associated with a particular benefit request for which date and time are appropriate, or even essential, will be established for requests that will be received electronically, in paper format, or both. USCIS realizes that the date of filing is very important when a benefit request has a deadline or a date-specific impact on eligibility. Such benefit requests are not affected by this rule because the date the benefit request is received by USCIS will still be recorded in the system. While the internal process for recording the date when a request is received or complete will not be promulgated, the ability of filers of a benefit request to obtain a definitive receipt date will not be affected by removing the requirement for USCIS to stamp receipt dates.

In addition, 8 CFR 103.2(a)(7) is revised to eliminate possible inconsistency with 8 CFR 103.2(a)(1), clarifying that USCIS may reject a benefit request if data have not been entered in required fields. Further, 8 CFR 103.2(a)(7)(iii) is added to codify the current policy that there is no appeal when a case is rejected in accordance with this section. In USCIS parlance, the term "rejected" means that the benefit request and fee payment are returned for failure to comply with all filing requirements without being fully considered, and can be re-filed when properly completed, while "denied" means that the request is fully adjudicated and considered, and the applicant is determined ineligible for the benefit sought. Appeals of rejections are generally returned without consideration. Therefore, this change is only clarifying and has no substantive effect.

Section 103.2(b)(1) is revised to update terminology and to clarify that every applicant or petitioner must remain eligible for the benefit request at the time of adjudication and that every benefit request must be submitted with all prescribed supporting documentation. USCIS longstanding policy and practice, as well as a basic tenet of administrative law, is that the decision in a particular case is based on the administrative record that exists at the time the decision is rendered. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1972). Thus, the granting of any benefit request by DHS is not based solely on what is provided at the time of the initial request and is contingent on the fact that circumstances will not change during the processing of a benefit request in such a way so as to render the applicant ineligible. This change will reduce any confusion that may exist for those who believe that eligibility is based solely on what is provided at the time of the initial request and instead will clarify that eligibility is subject to change if circumstances change while processing occurs. This clarification may be especially important in the transformed electronic environment. This revision is not a substantive change in eligibility criteria and is thus appropriate for this final rule.

Sections 103.2, paragraphs (b)(4) and (b)(5) are revised to refer applicants and petitioners to form instructions and other sources for information on the format in which supporting documentation must be submitted. It is generally unnecessary to specify the form that an evidentiary document must be in unless a higher degree of authenticity is required than a photocopy or reasonably legible facsimile. The form instructions for a benefit request will clearly spell out when a copy, original, certified, notarized, or other specific type of document is required to meet the applicable evidentiary standard. In its transformation initiative, DHS wants to accept and use scanned or electronic documents whenever possible and believes that this approach will also be the most convenient method for the public. As stated, regulatory provisions that

reflect a paper application process impede that goal. Allowing a digital format instead of a copy would not affect a person's eligibility for a benefit. Thus, this change is made without prior public comment.

This rule also eliminates express reference to Form G-884, currently used to request the return of original documents, and advises the public to follow USCIS instructions for requesting such documents. Eliminating reference to a specific form promotes greater regulatory flexibility and better accommodates future processing efficiencies. USCIS anticipates using the current form for several years during the transformation process and will continue to provide instructions for requesting the return of paper documents retained in DHS files through its Internet Web site, the USCIS  **\*53771** Customer Service Center, or other methods. See new 8 CFR 103.2(b)(4).

Section 103.3 is amended by revising the term "shall file" to read "must submit" and revising the phrase "with the office where the unfavorable decision was made" to read "as indicated in the applicable form instructions" in the last sentence in paragraph (a)(2)(i). This change will make this section more consistent with the changes made and terminology used in the Filing Location Rule. The word "shall" is less clear than "must" so substituting "must" clarifies the provision without changing the clear meaning. While the terms "file" and "filing" are not changed throughout 8 CFR by this rule, the amendment is apt in this instance for clarity because the term "file" seems to imply a paper environment, as opposed to "submit," which lends itself more clearly to both paper and electronic submissions. The provision requiring submission to a certain office location is removed in favor of form instructions which, as defined in this rule, will provide the flexibility to centralize or otherwise shift appeals based on future needs and developments. No substantive change is made to eligibility requirements.

As transformation progresses, USCIS develops system interfaces with other government information systems, reducing reliance on various forms of documentation currently supplied by benefit applicants. For example, proof of military service is more readily obtained by USCIS directly from the Department of Defense than from the applicant. Section 103.2, paragraph (b)(5) has been amended to clarify that USCIS may waive submission of documentation that it may obtain through direct interfaces.

Section 103.5a is redesignated as 103.8 and revised. This revision provides for electronic delivery of notices instead of paper notices in appropriate circumstances at the petitioner's or applicant's request. Absent such a request, a mailed paper notice remains the default option at this time. Amendments to the descriptions of routine and personal service used for delivery of notices now include a specific provision for the use of electronic media for such purposes. For consistency of process, this rule amends other sections to remove specific requirements of notice and instead cross references the notice and service provisions in 8 CFR 103.8.

Section 103.5b is redesignated as 103.9 and revised. References to Form I-824, currently used to request further action on an approved benefit request, are removed. As transformation progresses, it is envisioned that the need for this form will diminish because account holders will request the services currently provided by the form by accessing their own accounts.

Section 103.7, paragraph (d) is amended to remove specific references to officials authorized to certify immigration records. This change will give USCIS flexibility to delegate authority for this activity to various officials as necessary for efficiency.

Section 103.2, paragraph (e), relating to fingerprint requirements, is revised and redesignated as sections 103.16 and 103.17. These sections have been reorganized and revised to reflect that most USCIS biometric collection is now accomplished digitally at USCIS offices. Paragraph (c) of 8 CFR 103.2, explaining the consequences of failure to provide biometric information, must be read in conjunction with 8 CFR 103.2(b)(13), which provides standard exceptions for

such failure. This regulation removes references to specific offices where applicants must report for biometrics collection to allow USCIS greater flexibility for handling such matters. USCIS will continue to provide such information through other means.

Newly designated 8 CFR 103.17 describes biometric service fee collection requirements formerly described in 8 CFR 103.2(e). Revisions to this section more clearly reflect existing regulatory requirements regarding the authorized collection of biometrics.

Sections 103.8 through 103.11 and sections 103.21 through 103.36, which pertain to Freedom of Information and Privacy Act requests, are removed because they are outdated. Current DHS policies and procedures on these subjects are contained in 6 CFR part 5. New 8 CFR 103.42 has been added to direct readers to the DHS regulations.

Regulations relating to submission and consideration of benefit requests are located at 8 CFR 103.2(a)(1) (general filing instructions), 8 CFR 103.2(b)(1) (demonstrating eligibility for the benefit), 8 CFR 103.2(b)(16)(ii) (consideration of evidence in discretionary decisions), and in the form instructions such as for Form I-129 "* * * By signing this form you have stated, under penalty of perjury (28 U.S.C. 1746) that all information and documentation submitted with this form are true and correct. You have also authorized the release of any information from your records that USCIS may need to determine eligibility for the benefit you are seeking and consented to USCIS verification of such information." Accordingly, because processing and handling information which is broadly applicable to all USCIS benefit types is set forth in both 8 CFR 103.2 and in the instructions to various forms, USCIS is removing such information from regulations governing consideration of specific benefits.

Section 207.1(a) is revised to instruct prospective applicants to "submi[t] an application, including biometric information, in accordance with form instructions." The term "form instructions" is in turn defined in 8 CFR 1.2 as those prescribed by USCIS on its official Internet Web site currently, notwithstanding other versions in circulation, and may also include non-form guidance such as appendices, exhibits, guidebooks, or manuals. In the context of the U.S. Refugee Admissions Program (USRAP), USCIS does not publish its Form I-590, with instructions, for general public use. Instead, access to the USRAP is managed by the DOS, and implemented by its contracted overseas processing entities (OPEs). OPEs assist targeted populations of refugee applicants with preparation of the Form I-590. As such, the term "form instructions," as defined in 8 CFR 1.2 and used in 8 CFR 207.1(a), does not refer to traditional instructions appended to a USCIS form, but rather the process information that USCIS publishes about the USRAP.

Sections 207.1, paragraphs (b) and (c) are revised by consolidating the existing firm resettlement rule in paragraph (b) and removing paragraph (c). To emphasize the legal relevance of the firm resettlement analysis, this revision moves the third sentence of original paragraph (b) to the forefront. This consolidated provision more clearly articulates that the "considerations" enumerated in new paragraphs (b)(1) through (b)(3) apply to the firm resettlement analysis generally and not, as may be misconstrued from the existing, bifurcated structure, only to an analysis of whether an applicant is "not firmly resettled." No substantive changes are made by these structural modifications of the firm resettlement rule.

Re-numbered paragraph 207.2(a) has also been re-titled from "hearing" to "interview," to better reflect the nature of USCIS interaction with refugee applicants. No substantive change is intended.

Section 207.7(d) is amended by eliminating an outdated, transitional, alternative date (February 28, 2000) for measuring the 2-year deadline by which such petitions must be filed; there is no change to the discretionary extension for humanitarian reasons. Lastly, in anticipation of future processing efficiencies afforded by transformation, this rule eliminates an express **53772** requirement that "separate" petitions be filed for each qualifying family member, in favor of guidance that petitioners file "in accordance with the form instructions." USCIS contemplates retaining in the "form

instructions" the requirement that "separate" petitions be filed for each qualifying family member, until such time that USCIS has in place transformed systems to promote additional processing efficiencies such as consolidating petitions for qualifying family members. This change will accommodate the adoption of such efficiencies without need for a future rulemaking.

Section 207.7(f)(3) is amended by adding an opening phrase to the last sentence, "[f]or a derivative inside or arriving in the United States." While this section, entitled "Benefits," applies to both paragraphs (f)(1) (derivative in the United States) and (f)(2) (derivative outside the United States), the last sentence was added to clarify that the benefit of employment authorization, incident to refugee status, becomes available to overseas beneficiaries, not upon approval of the family petition, but upon travel and their admission into the United States as refugees.

Section 208.1(b) is revised by replacing "The Director of International Affairs" with "The Associate Director of USCIS Refugee, Asylum, and International Operations (RAIO)" where it first appears and with "Associate Director of RAIO" in later references. Similarly, section 208.2(a) is revised by replacing "Office of International Affairs" in the title with "Refugee, Asylum, and International Operations (RAIO)," and by replacing "the Office of International Affairs" wherever it appears with "RAIO." As stated earlier this rule removes specific officers' titles, functions, and authorities where possible, and employee authorities are generally established pursuant to 8 CFR section 2.1. However, DHS has determined that the roles, functions, and authorities of asylum officers and who they report to are sufficiently distinct as provided in the INA so as to preclude substitution of USCIS for those titles where they appear in the Code of Federal Regulations. For example, INA section 235(b)(1)(E), 8 U.S.C. 1225(b)(1)(E), under the expedited removal statute, defines "asylum officer" as an "* * * immigration officer who (i) has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 208, and (ii) is supervised by an officer who meets the conditions described in clause (i) and has had substantial experience adjudicating asylum applications." Retaining these titles is not expected to impair USRAP and RAIO from applying the principles of transformation to their operations in the future.

Section 208.5(b)(1)(ii) is revised to perfect an amendment made in the Filing Location Rule. In that rule, 8 CFR 208.4(b) was revised by referring applicants to the instructions on the Form I-589 for specific filing information and thereafter by eliminating specific instructions contained in former sections 208.4(b)(1)-(5). This rule implements a conforming amendment to that earlier revision by removing the phrase "pursuant to § 208.4(b)" in the last sentence of 8 CFR 208.5(b)(1)(ii).

Moreover, the Filing Location Rule replaced the term "district director" with "DHS office" in two locations. With the elimination of the reference to the "district director" in former 8 CFR 208.4(b)(5) (relating to asylum applications filed with the district director), the remaining reference to "the DHS office" in new 8 CFR 208.5(b)(1)(ii) lacks an anchor to an earlier reference. To avoid confusion as to whether a specific DHS office is empowered under this provision, 8 CFR 208.5(b)(1)(ii) is revised by replacing "the DHS office" with simply "DHS" wherever it appears.

Section 208.7(c) is amended by replacing a mandatory requirement (if applicable) to submit "proof that he or she has continued to pursue his or her asylum application before an immigration judge or sought administrative or judicial review." In anticipation of future system efficiencies afforded by transformation that may allow USCIS to gather the data directly from the Executive Office for Immigration Review (EOIR) within the Department of Justice and federal courts, USCIS is modifying this provision by replacing the mandatory production requirement with more flexible text: "* * * USCIS may require that an alien establish * * *". Until such time that system improvements are in place, USCIS will continue to require production of such evidence and will communicate such requirements through form instructions, as defined in 8 CFR 1.2.

Section 208.21(c) is amended by removing an outdated, transitional, alternative date (February 28, 2000) for measuring the 2-year deadline by which such petitions must be filed; there is no change to the discretionary extension for humanitarian reasons. Lastly, in anticipation of future processing efficiencies afforded by transformation, this rule eliminates an express requirement that "separate" petitions be filed for each qualifying family member, in favor of "in accordance with the form instructions." USCIS contemplates retaining in the "form instructions" the requirement that "separate" petitions be filed for each qualifying family member, until such time that USCIS has in place transformed systems to promote additional processing efficiencies such as consolidating petitions for qualifying family members.

Section 208.21(d) is revised similar to section 208.21(c) and for the same reasons.

Section 209.1(c) is amended by removing the last clause relating to a vaccination supplement completed by a designated civil surgeon. USCIS recently consolidated the separate vaccination supplement and record of the medical examination into one form, Report of Medical Examination and Vaccination Record. Thus the language referring to a separate supplement is outdated. Relevant guidance will continue to be available in form instructions. This language is also deleted in anticipation of future processing efficiencies wherein civil surgeons may have online accounts through which they may submit reports directly to USCIS instead of completing paper forms.

Section 209.2(e) is revised by removing the first two sentences of the original paragraph, retaining only the last sentence. In the original paragraph, there was an internal inconsistency between the first sentence (requiring interview of all applicants) and the third sentence (allowing USCIS to determine whether an interview was warranted). This revision retains only the sentence that allows USCIS to determine on a case-by-case basis whether an interview is warranted. This result is consistent with the companion paragraph at existing 8 CFR 209.1(d) (refugee adjustment interviews) and current USCIS practice.

Section 209.2(f) is revised for purposes of plain language. To align with the companion paragraph at 8 CFR 209.1(e), text was added stating that USCIS will notify a denied applicant of the right to renew an adjustment request in removal proceedings before EOIR. Otherwise, no substantive change is intended.

Section 223.2 is reorganized and revised for clarity in addition to removing references to forms. The revision also clarifies existing authority to accept and process requests for refugee travel documents overseas.

Several paragraphs within 8 CFR part 264 are revised and reorganized for **53773** clarity. Section 264.1 (registration and fingerprinting requirements) is revised and reorganized, removing obsolete instructions, general information duplicated in 8 CFR 103.2, and fingerprinting requirements now described in 8 CFR 103.16. Section 264.5, paragraph (d) (replacement of permanent resident cards for conditional residents) is revised to remove information included on the form instructions for Form I-90. New 8 CFR 264.5(h) is added to replace information previously located in 8 CFR 264.1(h). Section 264.6 is revised to remove obsolete instructions and for clarity.

### IV. Discussion of Comments Received in Response to the April 29, 2003, Interim Rule

DHS published an interim rule with request for comments revising 8 CFR 103.2(a)(2) to permit submission of benefit requests with an electronic signature when such requests are submitted in an electronic format rather than on a paper form. Electronic Signature on Applications and Petitions for Immigration and Naturalization Benefits, 68 FR 23010 (April 29, 2003). That rule implemented the electronic filing and the acceptance of electronic signatures requirement of GPEA and meet the requirements of section 461 of the Homeland Security Act of 2002 for a study of the feasibility of online filing and to establish an electronic tracking system for applications in order to provide applicants with access

to the status of their applications. Public Law 107-296 title IV, subtitle E, section 461, 118 Stat. 2202 (Nov. 22, 2002), 6 U.S.C. 278.

USCIS received 13 public comments relating to the interim rule. Virtually all commenters supported the use of electronic signatures and urged USCIS to do more to promote a more robust and user-friendly electronic filing environment. Several of the commenters made specific proposals recommending enhancements to the current limited electronic filing procedures available to applicants and petitioners. Various commenters suggested enhancements to the electronic filing process, such as acceptance of credit cards for electronic payment, re-use of data for subsequent transactions, interfaces and compatibility with commercial immigration software, standards for electronic submission of supporting documents, provisions for attorney-client electronic collaboration in the preparation of benefit requests, improvements to current biometric collection procedures, and protection of the privacy of data. DHS encourages these types of comments in response to this rulemaking. The comments will not be addressed here individually because they exceed the scope of the interim rule, which was limited to the electronic signature process. The broad subject of the comments, electronic filing of USCIS benefit requests, will be more fully addressed as the USCIS transformation progresses.

Several commenters raised concerns about the security of electronic signatures and described the pros and cons of various existing technologies. The interim rule did not specify the technology which will be employed by USCIS for the capture and verification of electronic signatures. As the transformation initiative is implemented, USCIS will explore alternatives and adopt an appropriate solution which is fully compliant with DHS security standards and ensures privacy. Therefore, no changes are made to the interim rule as a result of the comments received and the interim rule is adopted as final without change.

## V. Discussion of Other Interim Final Rules Being Finalized

USCIS conducted a review of current and past agency regulatory activities and identified six interim rules for which no public comments were received and which were never completed as final rulemakings. Because some of the provisions of these interim rules are now either expired or further modified by this rulemaking, DHS is adopting them as final and, where appropriate, removing or revising the regulatory language. The interim rules that are adopted as final include:

• Application for Refugee Status; Acceptable Sponsorship Agreement Guaranty of Transportation, 64 FR 27660 (May 21, 1999);

• Adjustment of Status for Certain Syrian Nationals Granted Asylum in the United States, 66 FR 27445 (May 17, 2001);

• Eliminating the Numerical Cap on Mexican TN Nonimmigrants, 69 FR 11287 (March 10, 2004);

• Allocation of H-1B Visas Created by the H-1B Visa Reform Act of 2004, 70 FR 23775 (May 5, 2005);

• Classification of Certain Scientists of the Commonwealth of Independent States of the Former Soviet Union and Baltic States as Employment-Based Immigrants, 70 FR 21129 (April 25, 2005); and

• Revoking Grants of Naturalization, 65 FR 17127 (March 31, 2000).

A summary of, the legal authority for, the public comments received on, and the changes made to each of these interim rules is as follows:

*A. Application for Refugee Status; Acceptable Sponsorship Agreement Guaranty of Transportation, RIN 1615-AA24*
This interim rule required that all sponsorship agreements be secured before an applicant is granted admission as a refugee at a U.S. port-of-entry (POE). This is a separate decision from whether or not such persons can be admitted to the U.S. in refugee status. This rule permits advantageous treatment for applicants for refugee status who have their eligibility interviews with a DHS officer scheduled before a sponsorship agreement has been secured.

This rule implemented section 702 of the Immigration Act of 1990 (IMMACT 90), Public Law 101-649, 104 Stat. 4978 (Nov. 29, 1990). It allowed a U.S. citizen, a lawful permanent resident petitioner, or an alien applicant for permanent resident status to seek an exemption from the general prohibition against approval of immigration benefits based upon a marriage entered into while the beneficiary or applicant was under deportation, exclusion or related judicial proceedings. The rule established procedures to allow persons with bona fide marriages to obtain immigration benefits without complying with the two year foreign residency requirements instituted by the Immigration Marriage Fraud Amendments of 1988 (IMFA). This rule amended 8 CFR 204.2 and 245.1. USCIS is not modifying these provisions in the current rule.

The Act authorized the Attorney General to admit refugees to the United States under certain conditions. INA section 207, 8 U.S.C. 1157. There is no requirement for an applicant to have secured sponsorship in advance of a determination that he or she meets the Act's definition of refugee. INA section 101(a)(42), 8 U.S.C. 1101(a)(42). This rule clarified that sponsorship is a requirement separate and apart from the determination that an applicant is classified as a refugee.

USCIS received no comments on this interim final rule.

The interim rule amended 8 CFR 207.2. That section is revised further by this rule to accommodate transformation by removing form numbers, job titles, extraneous provisions, and internal procedure. USCIS has not changed the substance of the provisions added by the interim rule.


*B. Adjustment of Status for Certain Syrian Nationals Granted Asylum in the United States, RIN 1615-AA57*
This rule provided adjustment of status to lawful permanent residents for **\*53774** certain nationals of Syria. The interim rule discusses the eligibility requirements and sets forth procedures for the application of persons wanting to adjust their status.

The Act provides that all aliens granted asylum are eligible to apply for adjustment of status 1 year after being granted asylum, subject to a maximum of 10,000 per year. INA section 209, 8 U.S.C. 1159. Pub. L. 106-378, 114 Stat. 825 (Oct. 27, 2000), waived the annual limit for a group of Jewish Syrian nationals who were allowed to depart Syria and enter the United States after December 31, 1991, and who were subsequently granted asylum in the United States.

No public comments were received.

This final rule removes 8 CFR 245.20 which was added by the interim rule. That provision is obsolete because no eligible applicants remain.


*C. Eliminating the Numerical Cap on Mexican TN Nonimmigrants, RIN 1615-AA96*
This interim rule eliminated the annual numerical cap on Mexican Professionals under the North American Free Trade Agreement (NAFTA). It also eliminated the petition for a Mexican-based NAFTA professional and the corresponding labor condition application (LCA) requirement. Mexican citizens who come to the U.S. under a TN classification must

apply directly to DOS for a visa. DOS will then adjudicate the alien's eligibility for TN classification. Upon approval and issuance of a visa, the alien may then apply for admission to the United States. These changes to the regulations are consistent with NAFTA's requirement that the annual numerical cap and petition provisions for Mexican professionals sunset by January 1, 2004.

On December 17, 1992, the United States, Canada and Mexico signed the North American Free Trade Agreement (NAFTA), which entered into force on January 1, 1994. Public Law 103-182, title I, section 101, 107 Stat. 2061 (1993), 19 U.S.C. 3311. NAFTA allows for the temporary entry of qualified businesspersons from each of the parties to the agreement. See Public Law 103-182, title III, section 341(a), 107 Stat. 2116 (1993), 19 U.S.C. 3401. Professionals under the NAFTA are admitted to the United States as Trade NAFTA (TN) nonimmigrant aliens. INA section 214(e), 8 U.S.C. 1184(e). In Appendix 1603.D.4 of NAFTA, NAFTA established an annual numerical ceiling of 5,500 on Mexican TN admissions for a period of 10 years. NAFTA Appendix 1603.D.4, INA section 214(e)(4), (5), 8 U.S.C. 1184(e)(4), (5). The interim rule eliminated the annual numerical cap for citizens of Mexico seeking a TN visa as required by expiration of the 10-year period. Id.

No public comments were received.

This rule finalizes the interim rule without change.

### D. Allocation of Additional H-1B Visas Created by the H-1B Visa Reform Act of 2004, RIN 1615-AB32

This interim rule implemented changes made by the Omnibus Appropriations Act for Fiscal Year 2005 to the numerical limits of H-1B nonimmigrant visa category and the fees for filing of H-1B petitions. It also: (1) Informed the public of procedures USCIS used to allocate in fiscal year 2005, as well as for the future fiscal years starting with fiscal year 2006; (2) amended and clarified the process that USCIS will use in the future in allocating all petitions subject to numerical limitations under the Act; and (3) alerted the public about additional fees that must accompany certain H-1B petitions.

An H-1B nonimmigrant is an alien employed in a specialty occupation or a fashion model of distinguished merit and ability. INA section 101(a)(15)(H), 8 U.S.C. 1101(a)(15)(H); 8 CFR 214.2(h)(4). A specialty occupation requires theoretical and practical application of a body of specialized knowledge and attainment of a bachelor's or higher degree in the specific specialty as a minimum qualification for entry into the United States. Id. The Act provides that the number of nonimmigrants who may be issued H-1B visas or granted H-1B status may not exceed 65,000 per fiscal year. INA section 214(g), 8 U.S.C. 1184(g). The 65,000 cap does not include H-1B employees of institutions of higher education, nonprofit research organizations, or governmental research organizations. The H-1B Visa Reform Act of 2004 added a third exception to the 65,000 limit, by providing that an additional 20,000 visas would be available for an alien who has earned a master's or higher degree from a United States institution of higher education. Omnibus Appropriations Act for Fiscal Year 2005, Public Law 108-447, div. J, title IV, 118 Stat. 2809 (Dec. 8, 2004); INA section 214(g)(5)(C), 8 U.S.C. 1184(g)(5)(C). This law also raised the American Competitiveness and Workforce Improvement Act of 1998 fee (ACWIA) to $1,500 or $750, depending on the size of the employer, and imposed a $500 fraud prevention and detection fee (fraud fee) on certain employers filing H-1B petitions. Id; INA section 214(c)(9), 8 U.S.C. 1184(c)(9). These fees are required in addition to the base USCIS filing fee.

No public comments were received.

This rule finalizes the interim rule without change.

*E. Classification of Certain Scientists of the Commonwealth of Independent States of the Former Soviet Union and the Baltic States as Employment-Based Immigrants, RIN 1615-AB14*

This interim rule codified the new sunset date of September 30, 2006, for the Soviet Scientists Immigration Act of 1992 (SSIA). The SSIA allowed USCIS to allot visas to eligible scientists or engineers of the independent states of the former Soviet Union and the Baltic states with expertise in nuclear, chemical, biological, or other high-technology field or defense projects. The rule also codified a new numerical limit of 950 visas (excluding spouses and children if accompanying or following to join).

The SSIA provided that up to 950 immigrant visas may be allotted to eligible scientists or engineers of the independent states of the former Soviet Union and the Baltic states if the scientists or engineers had expertise in nuclear, chemical, biological or other high technology fields or were working on such high technology defense projects, as defined by the Attorney General. Public Law 102-395, title VI, section 610, 106 Stat. 1874 (Oct. 6, 1992); INA section 203(b)(2)(A), 8 U.S.C. 1153(b)(2)(A). This program expired on October 24, 1996. The Foreign Relations Authorization Act, Fiscal Year 2003 reinstated the program and, among other changes not applicable to this interim rule, provided that it would expire 4 years from the date of enactment. Public Law 107-228, div. B, title XIII, section 1304(d), 116 Stat. 1437 (Sept. 30, 2002); INA section 203(b)(2)(A), 8 U.S.C. 1153(b)(2)(A).

No public comments were received.

This rule removes provisions pertaining to the SSIA because they have expired. 8 CFR 204.10.

*F. Revoking Grants of Naturalization, RIN 1615-AA30*

This rule amended the process by which the Service would administratively reopen and revoke a grant of naturalization. This interim rule changed the burden of proof that the Service would use in revocation proceedings and made other changes to the administrative process. 65 FR 17127 (March 31, 2000).

The Secretary has sole authority to grant a person naturalization as a United States citizen. INA section 310(a), 8 U.S.C. 1421(a). The Act also provides **\*53775** DHS with the authority "to correct, reopen, alter, modify, or vacate an order naturalizing [a] person" as a United States citizen. INA section 340(h), 8 U.S.C. 1451(h). The interim rule was promulgated under this authority.

No public comments were received.

This rule removes regulations that were invalidated on July 20, 2000, by the Ninth Circuit Court of Appeals in a nationwide class action lawsuit. Gorbach v. Reno, 219 F.3d 1087 (9th Cir. 2000) (en banc). That decision held that the Attorney General lacked the statutory authority to promulgate regulations permitting revocation of citizenship of a naturalized citizen through administrative proceedings. Id. See also INA sections 310(a), 340(a), (h), 8 U.S.C. 1421(a), 1451(a), (h). The government did not seek Supreme Court review of that decision, thus USCIS is precluded from using those regulations to revoke naturalization. This rule removes the applicable regulations from 8 CFR 340.10.

**VI. Discussion of Comments Received in Response to the June 5, 2009, Interim Rule**

On June 5, 2009, DHS published an interim rule in the Federal Register "Removing References to Filing Locations and Obsolete References to Legacy Immigration and Naturalization Service; Adding a Provision To Facilitate the Expansion

of the Use of Approved Electronic Equivalents of Paper Forms." The rule revised many sections of the 8 CFR, many of which are further revised by this rulemaking.

USCIS received only three comments in response to this rulemaking: one from an immigration practitioner, one from an organization of immigration practitioners, and one from an organization representing businesses which frequently rely on international personnel. A discussion of those comments follows.

One commenter noted that the revision to 8 CFR 214.2(l)(2)(i) apparently unintentionally added to the petitioner's burden by requiring that "the petitioner shall advise * * * whether a previous petition has been filed for the same beneficiary * * *" whereas the original language stated "the petitioner shall advise * * * whether it has filed a petition for the same beneficiary." (Emphasis in original). Although this change was inadvertent and not intended to affect any right, the requirement as revised is entirely consistent with both the INA and the current form instructions. The Act limits the amount of time an alien can spend in the United States as an L-1 or H nonimmigrant (not just for a particular petitioner). See section 214(c)(2)((D) of the Act, 8 U.S.C. 1184.2(c)(2)(D). The current Form I-129, Supplement L, question 2 requires submission of copies of USCIS-issued documents relating to periods of H or L stay in the United States during the past seven years. It does not limit such submission to documents relating to the current petitioner. Accordingly, USCIS has not adopted the commenter's suggestion that we revert to the prior language.

The commenter made an additional comment regarding the omission of the word "of" from the first sentence in 8 CFR 214.2(l)(2)(ii). USCIS appreciates notification by the commenter of the typographical error which will be corrected in this rule. As previously discussed, 8 CFR part 214 will be reorganized in a future transformation-related rulemaking.

Another commenter suggests that USCIS avail itself of the opportunity to revise 8 CFR 212.7 to reflect the fact that K nonimmigrants may apply for a waiver only pursuant to section 212(d)(3) of the Act and that such persons may only apply for a waiver under section 212(h) or 212(i) of the Act at the time of application for adjustment of status. The commenter noted that both the regulation and form instruction for Form I-601, Application for Waiver of Ground of Inadmissibility, are incorrect. USCIS appreciates the comment and the commenter's suggestions may be addressed in a future rulemaking or with a form revision. However, the interim rule was limited to removing filing jurisdiction limitations from regulations. Thus the commenter's suggestion exceeds the scope of the changes made and will not be adopted in this rulemaking.

The final commenter addressed the removal of filing jurisdictions from regulations. The commenter expresses its concern that an accelerated process for changing filing locations could have an adverse impact on the public. The commenter was especially concerned about situations involving statutory or regulatory deadlines for filing where the public may have insufficient notice of the proposed change.

The same commenter, while supportive of USCIS' transformation efforts, offered several suggestions to minimize the potential adverse impacts of this rulemaking. The commenter recommended that, at each place the regulations are amended, to direct the public to "instructions on the form," and that USCIS add a phrase to explain that form instructions will be available on line, that any change to the filing instructions will be provided to the public by formal announcement no less than 30 days in advance of the change, and that when a filing jurisdiction changes, USCIS offices formerly designated to receive such filings continue to accept them for at least 180 days after the effective date of the change.

USCIS understands and appreciates the commenter's concerns. We realize that numerous changes in filing instructions and locations may be confusing. It is our intent to reduce filing locations and complexity, and change them less often,

not more. In the case of time-sensitive benefit requests, USCIS will keep such factors in mind when making changes and make adjustments to the change schedule so as to not result in missing a deadline because of the filing location change.

The commenter suggested that the preamble language describing the USCIS National Customer Service Center (NCSC) as a source of information regarding filing locations be removed because its membership has not gotten consistently reliable information from this source. The commenter recommended that USCIS customer service representatives be directed to consult the online form instructions before offering any advice to applicants regarding filing location. USCIS regrets any incorrect information that may be provided and always endeavors to provide the NCSC staff with information regarding filing requirements so questions may be answered. USCIS encourages the public to report possible erroneous or outdated messages so that they may be corrected. No change to the interim rule is made as a result of this comment.

The commenter also suggests that information about changes to form and filing instructions be posted in a consistent and prominent location on USCIS Web site along with a chronological list of all changes to form instructions, including filing location changes. As the interim rule stated, filing locations are provided on USCIS form instructions. The current official version of the form and instructions are the versions on the USCIS Internet Web site for forms, http://www.uscis.gov/forms. Also, the USCIS home page will alert the public and stakeholders of any recent or planned filing location changes. In addition, USCIS will continue to publicize filing location changes with press releases. Additional suggestions for improving the Web site and information sharing are welcome.

The commenter also suggested that regulations mandate a 180-day transition period for filing location changes, during which USCIS would **\*53776** accept such benefit requests at both the prior and new filing location. USCIS works to ensure that benefit requests are not rejected as a result of abrupt changes in filing location. USCIS announces filing changes well in advance and generally includes a transition period considering all factors and circumstances surrounding the change. However, forwarding mail from offices that formerly handled requests to the new office is very expensive and an inefficient use of USCIS fee revenue. USCIS will provide as much lead time as possible before making filing changes and will implement the changes in such a way so as to minimize the impacts of the change. However, a 180 day implementation period for each filing change is impracticable and will not be adopted.

The commenter also expressed a concern that USCIS intends to stop producing and distributing a paper version of its form instructions. As transformation continues, the filing of paper forms is expected to decrease substantially as USCIS expects electronic means to become the preferred filing method. As was the goal of GPEA and has been the experience of other Federal agencies that provide electronic filing options, in the future certain forms or requests may lend themselves to a totally electronic submission with no paper option. Nevertheless, at this time, as stated elsewhere in this preamble, USCIS will continue to provide paper versions of most forms and instructions as well as portable document format or other electronic versions through its Internet Web site. Further, the electronic versions of form instructions will parallel the written form instructions precisely, so the method chosen should cause no inconsistencies in benefit eligibility or adjudication.

The commenter also suggested that USCIS provide access to earlier versions of forms and instructions. Following a form's revisions, USCIS often provides that previous version of the form are acceptable until further notice or for a prescribed period. However, when changes are made to a form because eligibility criteria are changed by law or regulation, the previous version of a form may be outdated, incomplete, and unacceptable. Further, for ease of administration and consistency in adjudication, USCIS prefers to receive the most current version so the employee reviewing the form knows where to look for the required data elements. Thus USCIS sees little value in providing previous versions of forms as a general policy or requirement, and the commenter's suggestion has not been adopted.

The commenter also suggested that any elimination of geographically-based jurisdiction should be coupled with a new model for determining such jurisdiction. The interim rule gave USCIS greater flexibility to alter filing locations, but it does not change how internal responsibilities for adjudicating benefit requests are prescribed. For many benefit requests, notwithstanding their removal from the CFR, filing locations will seldom or not change. USCIS will continue to make changes in filing, appearance or jurisdictional requirements with the convenience of and service to applicants, petitioners, and beneficiaries as a primary concern. Thus, in response to this comment, methods of determining jurisdiction are not revised in this rule.

## VII. Regulatory Requirements

### A. Administrative Procedure Act

The Administrative Procedure Act (APA) requires DHS to provide public notice and seek public comment on substantive regulations. See 5 U.S.C. 553. The APA, however, excludes certain types of regulations and permits exceptions for other types of regulations from the public notice and comment requirement. DHS issues this rule without providing the opportunity for prior notice and comment for the reasons described below. DHS nevertheless invites comments on this rule and will consider all timely comments submitted during the public comment period as described in the "Public Participation" section.

Removal of form numbers and titles, position titles, and procedural guidance, and reorganization and clarification of 8 CFR. The Administrative Procedure Act (APA) excepts from the prior notice and opportunity for comment requirements "* * * rules of agency organization, procedure or practice." 5 U.S.C. 553(b)(A). This rule removes form numbers and titles, position titles, and procedural guidance, reorganizes and clarifies parts of 8 CFR, and makes changes such as removing Form I-129, district director, instructions for retaining copies of documents, and instructions for forwarding of files. Accordingly, to the extent that this rule adopts rules of agency organization, procedure or practice, those portions of the rule are excepted from the notice-and-comment requirements under 5 U.S.C. 553(b)(A).

Remove and update outdated provisions. This rule removes provisions of 8 CFR where statutory authorization has expired, corrects provisions required by statutory amendments or extensions, removes extraneous or outdated provisions, and corrects erroneous references. For example, this rule removes references to the Irish Peace Process Cultural and Training Program Act because that law was repealed in 2005 and removes nonpreference investor visas and third and sixth preference employment-based visas because authorization for these visas was repealed in 1990. This rule is a ministerial action necessary to conform regulations with law. Therefore, advance public notice and an opportunity for public comment is unnecessary and not in the public interest. See 5 U.S.C. 553(b)(3)(B).

### B. Unfunded Mandates Reform Act of 1995

This rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

### C. Small Business Regulatory Enforcement Fairness Act of 1996

This rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Act of 1996. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

### D. *Executive Orders 13563 and 12866*

Executive Orders 13563 and 12866 direct agencies to assess the costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. This rule is not a "significant regulatory action" under section 3(f) of Executive Order 12866, Regulatory Planning and Review, and does not require an assessment of potential costs and benefits under section 6(a)(3) of that Order. The Office **\*53777** of Management and Budget has not reviewed it under Executive Order 12866.

There will be no additional costs incurred by any individual or business as a result of the changes in this rule. The rule will clarify and revise existing regulations and does not alter the regulations in a significant manner. Once transformation is complete, USCIS applicants, petitioners, representatives, and others will realize a significant savings in time and effort when submitting immigration benefit requests, seeking case status information, and communicating with USCIS.

### E. *Executive Order 13132*

This rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

### F. *Executive Order 12988 Civil Justice Reform*

Section 3(c) of Executive Order 12988 requires Executive agencies to review regulations in light of applicable standards in section 3(a) and section 3(b) to determine whether they are met or it is unreasonable to meet one or more of them. DHS has completed the required review and determined that, to the extent permitted by law, this final rule meets the relevant standards of Executive Order 12988.

### G. *Paperwork Reduction Act*

Under the Paperwork Reduction Act of 1995, Public Law 104-13, all Departments are required to submit to the Office of Management and Budget (OMB), for review and approval, any reporting and recordkeeping requirements inherent in a rule. Public Law 104-13, 109 Stat. 163 (May 22, 1995). This rule does not impose any new reporting or recordkeeping requirements under the Paperwork Reduction Act.

### H. *Regulatory Flexibility Act*

The Regulatory Flexibility Act of 1980 (RFA), 5 U.S.C. 601-612, as amended by the Small Business Regulatory Enforcement Fairness Act of 1996, Public Law 104-121 (March 29, 1996), requires Federal agencies to consider the potential impact of regulations on small businesses, small governmental jurisdictions, and small organizations during the development of their rules. When an agency makes changes effective through a final rule for which notice and comment are not necessary, the RFA does not require an agency to prepare a regulatory flexibility analysis. Accordingly, USCIS has not prepared a regulatory flexibility analysis.

### List of Subjects

*8 CFR Part 1*

Administrative practice and procedure, Immigration.

***8 CFR Part 100***
Organization and functions (Government agencies).

***8 CFR Part 103***
Administrative practice and procedure, Authority delegations (Government agencies), Freedom of information, Privacy, Reporting and recordkeeping requirements, Surety bonds.

***8 CFR Part 204***
Administrative practice and procedure, Immigration, Reporting and recordkeeping requirements.

***8 CFR Part 207***
Immigration, Refugees, Reporting and recordkeeping requirements.

***8 CFR Part 208***
Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

***8 CFR Part 209***
Aliens, Immigration, Refugees.

***8 CFR Part 211***
Immigration, Passports and visas, Reporting and recordkeeping requirements.

***8 CFR Part 212***
Administrative practice and procedure, Aliens, Immigration, Passports and visas, Reporting and recordkeeping requirements.

***8 CFR Part 213a***
Administrative practice and procedure, Aliens, Immigrants.

***8 CFR Part 223***
Immigration, Refugees, Reporting and recordkeeping requirements.

***8 CFR Part 235***
Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

***8 CFR Part 236***

Administrative practice and procedure, Aliens, Immigration.

### 8 CFR Part 238
Air Carriers, Aliens, Government contracts, Maritime carriers.

### 8 CFR Part 240
Administrative practice and procedure, Immigration.

### 8 CFR Part 241
Administrative practice and procedure, Aliens, Immigration.

### 8 CFR Part 244
Aliens, Reporting and recordkeeping requirements.

### 8 CFR Part 245
Aliens, Immigration, Reporting and recordkeeping requirements.

### 8 CFR Part 245a
Aliens, Immigration, Reporting and recordkeeping requirements.

### 8 CFR Part 248
Aliens, Reporting and recordkeeping requirements.

### 8 CFR Part 264
Reporting and recordkeeping requirements.

### 8 CFR Part 265
Aliens, Reporting and recordkeeping requirements.

### 8 CFR Part 270
Administrative practice and procedure, Aliens, Employment, Fraud; Penalties.

### 8 CFR Part 274a
Administrative practice and procedure, Aliens, Employment, Penalties, Reporting and recordkeeping requirements.

### 8 CFR Part 287
Immigration, Law enforcement officers.

*8 CFR Part 292*

Administrative practice and procedure, Immigration, Lawyers, Reporting and recordkeeping requirements.


*8 CFR Part 299*

Immigration, Reporting and recordkeeping requirements.


*8 CFR Part 301*

Citizenship and naturalization, Reporting and recordkeeping requirements.


 **\*53778** *8 CFR Part 310*

Citizenship and naturalization, Courts.


*8 CFR Part 312*

Citizenship and naturalization, Education.


*8 CFR Part 316*

Citizenship and naturalization, Reporting and recordkeeping requirements.


*8 CFR Part 319*

Citizenship and naturalization, Reporting and recordkeeping requirements.


*8 CFR Part 320*

Citizenship and naturalization, Infants and children, Reporting and recordkeeping requirements.


*8 CFR Part 322*

Citizenship and naturalization, Infants and children, Reporting and recordkeeping requirements.


*8 CFR Part 324*

Citizenship and naturalization, Reporting and recordkeeping requirements.


*8 CFR Part 325*

Citizenship and naturalization, Reporting and recordkeeping requirements.


*8 CFR Part 328*

Citizenship and naturalization, Military personnel, Reporting and recordkeeping requirements.


*8 CFR Part 329*

Citizenship and naturalization, Military personnel, Veterans.


*8 CFR Part 330*
Reporting and recordkeeping requirements, Seamen.


*8 CFR Part 332*
Citizenship and naturalization, Education, Reporting and recordkeeping requirements.


*8 CFR Part 333*
Citizenship and naturalization.


*8 CFR Part 334*
Administrative practice and procedure, Citizenship and naturalization, Courts, Reporting and recordkeeping requirements.


*8 CFR Part 335*
Administrative practice and procedures, Citizenship and naturalization, Courts, Reporting and recordkeeping requirements.


*8 CFR Part 336*
Administrative practice and procedure, Citizenship and naturalization, Courts, Reporting and recordkeeping requirements.


*8 CFR Part 337*
Citizenship and naturalization, Courts.


*8 CFR Part 338*
Citizenship and naturalization, Reporting and recordkeeping requirements.


*8 CFR Part 339*
Citizenship and naturalization, Courts.


*8 CFR Part 340*
Citizenship and naturalization, Law enforcement.


*8 CFR Part 341*
Citizenship and naturalization, Reporting and recordkeeping requirements.

*8 CFR Part 342*

Administrative practice and procedure, Citizenship and naturalization.

*8 CFR Part 343*

Citizenship and naturalization.

*8 CFR Part 343a*

Citizenship and naturalization, Reporting and recordkeeping requirements.

*8 CFR Part 343b*

Citizenship and naturalization, Reporting and recordkeeping requirements.

*8 CFR Part 343c*

Archives and records, Citizenship and naturalization, Courts.

*8 CFR Part 392*

Citizenship and naturalization, Reporting and recordkeeping requirements.

*8 CFR Part 499*

Citizenship and naturalization.

Accordingly, the interim rules published at 68 FR 23010, on April 29, 2003; 64 FR 27660 on May 21, 1999; 66 FR 27445 on May 17, 2001; 69 FR 11287 on March 10, 2004; 70 FR 23775 on May 5, 2005; 70 FR 21129 on April 25, 2005; and 65 FR 17127 on March 31, 2000 are adopted as final without change, and chapter I of title 8 of the Code of Federal Regulations is amended as follows:

1. Part 1 is revised to read as follows:

**PART 1—DEFINITIONS**

Sec.

1.1 Applicability.

1.2 Definitions.

1.3 Lawfully present aliens for purposes of applying for Social Security benefits.
Authority: 8 U.S.C. 1101; 8 U.S.C. 1103; 5 U.S.C. 301; Pub. L. 107-296, 116 Stat. 2135; 6 U.S.C. 1 et seq.
 8 CFR § 1.1

**§ 1.1 Applicability.**

This part further defines some of the terms already described in section 101 and other sections of the Immigration and Nationality Act (66 Stat. 163), as amended, and such other enactments as pertain to immigration and nationality. These terms are used consistently by components within the Department of Homeland Security including U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and U.S. Citizenship and Immigration Services.

8 CFR § 1.2

### § 1.2 Definitions.

As used in this chapter I, the term:

Act or INA means the Immigration and Nationality Act, as amended.

Aggravated felony means a crime (or a conspiracy or attempt to commit a crime) described in section 101(a)(43) of the Act. This definition applies to any proceeding, application, custody determination, or adjudication pending on or after September 30, 1996, but shall apply under section 276(b) of the Act only to violations of section 276(a) of the Act occurring on or after that date.

Application means benefit request.

Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked. However, an arriving alien who was paroled into the United States before April 1, 1997, or who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not be treated, solely by reason of that grant of parole, as an arriving alien under section 235(b)(1)(A)(i) of the Act.

Attorney means any person who is eligible to practice law in, and is a member in good standing of the bar of,  **53779**  the highest court of any State, possession, territory, or Commonwealth of the United States, or of the District of Columbia, and is not under any order suspending, enjoining, restraining, disbarring, or otherwise restricting him or her in the practice of law.

Benefit request means any application, petition, motion, appeal, or other request relating to an immigration or naturalization benefit, whether such request is filed on a paper form or submitted in an electronic format, provided such request is submitted in a manner prescribed by DHS for such purpose.

Board means the Board of Immigration Appeals within the Executive Office for Immigration Review, Department of Justice, as defined in 8 CFR 1001.1(e).

Case, unless the context otherwise requires, means any proceeding arising under any immigration or naturalization law, Executive Order, or Presidential proclamation, or preparation for or incident to such proceeding, including preliminary steps by any private person or corporation preliminary to the filing of the application or petition by which any proceeding under the jurisdiction of the Service or the Board is initiated.

CBP means U.S. Customs and Border Protection.

Commissioner means the Commissioner of the Immigration and Naturalization Service prior to March 1, 2003. Unless otherwise specified, references after that date mean the Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears.

Day, when computing the period of time for taking any action provided in this chapter I including the taking of an appeal, shall include Saturdays, Sundays, and legal holidays, except that when the last day of the period computed falls on a Saturday, Sunday, or a legal holiday, the period shall run until the end of the next day which is not a Saturday, Sunday, or a legal holiday.

Department or DHS, unless otherwise noted, means the Department of Homeland Security.

Director or district director prior to March 1, 2003, means the district director or regional service center director, unless otherwise specified. On or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, the terms mean, to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge. The terms also mean such other official, including an official in an acting capacity, within U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security who is delegated the function or authority above for a particular geographic district, region, or area.

EOIR means the Executive Office for Immigration Review within the Department of Justice.

Executed or execute means fully completed.

Form when used in connection with a benefit or other request to be filed with DHS to request an immigration benefit, means a device for the collection of information in a standard format that may be submitted in paper format or in an electronic format as prescribed by USCIS on its official Internet Web site. The term Form followed by an immigration form number includes an approved electronic equivalent of such form as may be prescribed by the appropriate component on its official Internet Web site.

Form instructions means instructions on how to complete and where to file a benefit request, supporting evidence or fees, or any other required or preferred document or instrument with a DHS immigration component. Form instructions prescribed by USCIS or other DHS immigration components on their official Internet Web sites will be considered the currently applicable version, notwithstanding paper or other versions that may be in circulation, and may be issued through non-form guidance such as appendices, exhibits, guidebooks, or manuals.

ICE means U.S. Immigration and Customs Enforcement.

Immigration judge means an immigration judge as defined in 8 CFR 1001.1(l).

Immigration officer means the following employees of the Department of Homeland Security, including senior or supervisory officers of such employees, designated as immigration officers authorized to exercise the powers and duties of such officer as specified by the Act and this chapter I: aircraft pilot, airplane pilot, asylum officer, refugee corps officer, Border Patrol agent, contact representative, deportation officer, detention enforcement officer, detention officer, fingerprint specialist, forensic document analyst, general attorney (except with respect to CBP, only to the extent that the attorney is performing any immigration function), helicopter pilot, immigration agent (investigations), immigration

enforcement agent, immigration information officer, immigration inspector, immigration officer, immigration services officer, investigator, intelligence agent, intelligence officer, investigative assistant, special agent, other officer or employee of the Department of Homeland Security or of the United States as designated by the Secretary of Homeland Security as provided in 8 CFR 2.1.

Lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal.

Petition. See Benefit request.

Practice means the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with DHS.

Preparation, constituting practice, means the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers, but does not include the lawful functions of a notary public or service consisting solely of assistance in the completion of blank spaces on printed DHS forms, by one whose remuneration, if any, is nominal and who does not hold himself or herself out as qualified in legal matters or in immigration and naturalization procedure.

Representation before DHS includes practice and preparation as defined in this section.

Representative refers to a person who is entitled to represent others as provided in 8 CFR 292.1(a)(2) through (6) and 8 CFR 292.1(b).

Respondent means an alien named in a Notice to Appear issued in accordance with section 239(a) of the Act, or in an Order to Show Cause issued in accordance with 8 CFR 242.1 (1997) as it existed prior to April 1, 1997.

Secretary, unless otherwise noted, means the Secretary of Homeland Security.

**53780** Service means U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and/or U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears.

Service counsel means any immigration officer assigned to represent the Service in any proceeding before an immigration judge or the Board of Immigration Appeals.

Transition program effective date as used with respect to extending the immigration laws to the Commonwealth of the Northern Mariana Islands means November 28, 2009.

USCIS means U.S. Citizenship and Immigration Services.
 8 CFR § 1.3

### § 1.3 Lawfully present aliens for purposes of applying for Social Security benefits.
(a) Definition of the term an "alien who is lawfully present in the United States." For the purposes of 8 U.S.C. 1611(b)(2) only, an "alien who is lawfully present in the United States" means:

(1) A qualified alien as defined in 8 U.S.C. 1641(b);

(2) An alien who has been inspected and admitted to the United States and who has not violated the terms of the status under which he or she was admitted or to which he or she has changed after admission;

(3) An alien who has been paroled into the United States pursuant to section 212(d)(5) of the Act for less than 1 year, except:

(i) Aliens paroled for deferred inspection or pending removal proceedings under section 240 of the Act; and

(ii) Aliens paroled into the United States for prosecution pursuant to 8 CFR 212.5(b)(3);

(4) An alien who belongs to one of the following classes of aliens permitted to remain in the United States because DHS has decided for humanitarian or other public policy reasons not to initiate removal proceedings or enforce departure:

(i) Aliens currently in temporary resident status pursuant to section 210 or 245A of the Act;

(ii) Aliens currently under Temporary Protected Status (TPS) pursuant to section 244 of the Act;

(iii) Cuban-Haitian entrants, as defined in section 202(b) of Pub. L. 99-603, as amended;

(iv) Family Unity beneficiaries pursuant to section 301 of Pub. L. 101-649, as amended;

(v) Aliens currently under Deferred Enforced Departure (DED) pursuant to a decision made by the President;

(vi) Aliens currently in deferred action status;

(vii) Aliens who are the spouse or child of a United States citizen whose visa petition has been approved and who have a pending application for adjustment of status;

(5) Applicants for asylum under section 208(a) of the Act and applicants for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture who have been granted employment authorization, and such applicants under the age of 14 who have had an application pending for at least 180 days.

(b) Non-issuance of a Notice to Appear and non-enforcement of deportation, exclusion, or removal orders. An alien may not be deemed to be lawfully present solely on the basis of DHS's decision not to, or failure to:

(1) Issue a Notice to Appear; or

(2) Enforce an outstanding order of deportation, exclusion or removal.


## PART 100—STATEMENT OF ORGANIZATION

2. The authority citation for part 100 continues to read as follows:

Authority: 8 U.S.C. 1103; 8 CFR part 2.

 8 CFR § 100.7

**§ 100.7 [Removed]**

8 CFR § 100.7

3. Section 100.7 is removed.


**PART 103—IMMIGRATION BENEFITS; BIOMETRIC REQUIREMENTS; AVAILABILITY OF RECORDS**

4. The authority citation for part 103 continues to read as follows:

Authority: 5 U.S.C. 301, 552, 552a; 8 U.S.C. 1101, 1103, 1304, 1356; 31 U.S.C. 9701; Pub. L. 107-296, 116 Stat. 2135; 6 U.S.C. 1 et seq.; E.O. 12356, 47 FR 14874, 15557, 3 CFR, 1982 Comp., p. 166; 8 CFR part 2.

5. The heading for part 103 is revised as set forth above.

6. In part 103, §§ 103.1 through 103.10 are designated under the following subpart A heading:


**Subpart A—Applying for Benefits, Surety Bonds, Fees**

8 CFR § 103.1

**§ 103.1 [Removed and Reserved]**

8 CFR § 103.1

7. Section 103.1 is removed and reserved.

 8 CFR § 103.2

8. Section 103.2 is amended by:

a. Removing the phrases "petition or application" and "application or petition" and adding in its place the phrase "benefit request"; and by removing the phrase "petitions and applications" and adding in its place the phrase "benefit requests" whenever they appear in the following places:

i. Paragraph (a)(2);

ii. Paragraph (a)(3);

iii. Paragraph (a)(7)(ii);

iv. Paragraph (b)(6);

v. Paragraph (b)(7);

vi. Paragraph (b)(8)(i);

vii. Paragraph (b)(8)(ii);

viii. Paragraph (b)(8)(iii);

ix. Paragraph (b)(9) introductory text;

x. Paragraph (b)(9)(ii);

xi. Paragraph (b)(10)(i);

xii. Paragraph (b)(10)(ii);

xiii. Paragraph (b)(11);

xiv. Paragraph (b)(12);

xv. Paragraph (b)(13)(i);

xvi. Paragraph (b)(13)(ii);

xvii. Paragraph (b)(14);

xviii. Paragraph (b)(15); and

xix. Paragraph (b)(18); and

b. Revising the section heading;

c. Revising paragraph (a)(1);

d. Revising the term "BCIS" to read "USCIS" in paragraph (a)(2) last sentence;

e. Revising the term "§ 1.1(f)" to read "§ 1.2" in paragraph (a)(3) first sentence;

f. Revising paragraph (a)(6);

g. Revising paragraph (a)(7)(i) and adding paragraph (a)(7)(iii);

h. Revising paragraph (b)(1);

i. Revising paragraph (b)(4);

j. Revising the phrase "by submitting a properly completed and signed Form G-884 to the adjudicating USCIS office" to read "in accordance with instructions provided by USCIS" in paragraph (b)(5) last sentence;

k. Revising the term "application, petition" to read "benefit request" in paragraph (b)(7) last sentence;

l. Revising the term "in writing" to read "communicated by regular or electronic mail" in paragraph (b)(8)(iv) first sentence;

m. Revising the second sentence in paragraph (b)(17)(i);

n. Revising paragraph (b)(19); and

o. Removing paragraph (e).

The revisions and addition read as follows:

8 CFR § 103.2

**§ 103.2** **Submission and adjudication of benefit requests.**
(a) Filing. (1) Preparation and submission. Every benefit request or other document submitted to DHS must be executed and filed in accordance with the form instructions, notwithstanding any provision of 8 CFR chapter 1 to the contrary, and such instructions are incorporated into the regulations requiring its submission. Each benefit request or other document must be filed with fee(s) as required by regulation. Benefit requests which require a person to submit biometric information must also be filed with the biometric service fee in 8 CFR 103.7(b)(1), for each individual who is required to provide biometrics. Filing fees and biometric service fees are non-refundable and, except as otherwise **\*53781** provided in this chapter I, must be paid when the benefit request is filed.
\* \* \* \* \*
(6) Where to file. All benefit requests must be filed in accordance with the form instructions.

(7) Receipt date. (i) Benefit requests submitted. A benefit request which is not signed and submitted with the correct fee(s) will be rejected. A benefit request that is not executed may be rejected. Except as provided in 8 CFR parts 204, 245, or 245a, a benefit request will be considered received by USCIS as of the actual date of receipt at the location designated for filing such benefit request whether electronically or in paper format. The receipt date shall be recorded upon receipt by USCIS.
\* \* \* \* \*
(iii) Rejected benefit requests. A benefit request which is rejected will not retain a filing date. There is no appeal from such rejection.

(b) Evidence and processing. (1) Demonstrating eligibility. An applicant or petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication. Each benefit request must be properly completed and filed with all initial evidence required by applicable regulations and other USCIS instructions. Any evidence submitted in connection with a benefit request is incorporated into and considered part of the request.
\* \* \* \* \*
(4) Supporting documents. Original or photocopied documents which are required to support any benefit request must be submitted in accordance with the form instructions.
\* \* \* \* \*
(17) \* \* \*

(i) \* \* \* These records include alien and other files, arrival manifests, arrival records, Department index cards, Immigrant Identification Cards, Certificates of Registry, Declarations of Intention issued after July 1, 1929, Permanent Resident Cards, or other registration receipt forms (provided that such forms were issued or endorsed to show admission for permanent residence), passports, and reentry permits. \* \* \*
\* \* \* \* \*
(19) Notification of decision. The Service will notify applicants, petitioners, and their representatives as defined in 8 CFR part 1 in writing of a decision made on a benefit request. Documents issued based on the approval of a request for benefits will be sent to the applicant or beneficiary.
\* \* \* \* \*8 CFR § 103.3

**§ 103.3 [Amended]**

8 CFR § 103.3

9. Section 103.3 is amended by:

a. Revising the term "shall file" to read "must submit" and revising the phrase "with the office where the unfavorable decision was made" to read "as indicated in the applicable form instructions" in the last sentence in paragraph (a)(2)(i); and

b. Revising the term "§ 103.9(a) of this part" to read "8 CFR 103.10(e)" in paragraph (c) last sentence.

**§§ 103.8 through 103.11 [Removed]**

8 CFR § 103.8 8 CFR § 103.9 8 CFR § 103.10 8 CFR § 103.11

10. Sections 103.8 through 103.11 are removed.

8 CFR § 103.5a

**§ 103.5a [Redesignated as § 103.8]**

8 CFR § 103.5a 8 CFR § 103.8

11. Section 103.5a is redesignated as § 103.8.

8 CFR § 103.8

12. Newly redesignated § 103.8 is amended by:

a. Revising the section heading;

b. Revising the paragraph (a) heading;

c. Revising paragraphs (a)(1);

d. Removing the "." at the end of paragraph (a)(2)(iv), and adding a "; or" in its place; and by

e. Adding paragraph (a)(2)(v).

The revisions and addition read as follows:

8 CFR § 103.8

**§ 103.8 Service of decisions and other notices.**

* * * * *

(a) Types of service  (1) Routine service. (i) Routine service consists of mailing the notice by ordinary mail addressed to the affected party and his or her attorney or representative of record at his or her last known address, or

(ii) If so requested by a party, advising the party of such notice by electronic mail and posting the decision to the party's USCIS account.

(2) * * *

(v) If so requested by a party, advising the party by electronic mail and posting the decision to the party's USCIS account.

* * * * *8 CFR § 103.5b

**§ 103.5b [Redesignated as § 103.9]**

8 CFR § 103.5b 8 CFR § 103.9

13. Section 103.5b is redesignated as § 103.9.

8 CFR § 103.7

14. Section 103.7 is amended by:

a. Revising the term "BCIS" to read "USCIS" wherever that term appears in paragraph (a)(1);

b. Adding new paragraphs (b)(1)(i)(CCC), (DDD), and (EEE).

The revisions and addition read as follows:

8 CFR § 103.7

**§ 103.7 Fees.**

* * * * *

(b) * * *

(1) * * *

(i) * * *

(CCC) American Competitiveness and Workforce Improvement Act (ACWIA) fee. $1500 or $750 for filing certain H-1B petitions as described in 8 CFR 214.2(h)(19) and USCIS form instructions.

(DDD) Fraud detection and prevention fee. $500 for filing certain H-1B and L petitions, and $150 for H-2B petitions as described in 8 CFR 214.2(h)(19).

(EEE) Public Law 111-230 fee. Petitioners who are required to submit the Fraud Detection and Prevention Fee described in paragraph (b)(1)(i)(DDD) of this section are also required to submit an additional $2000 for an H-1B petition or an additional $2250 for an L-1 petition if:

(1) The petitioner employs 50 or more persons in the United States;

(2) More than 50 percent of those employees are in H-1B or L-1 status; and

(3) The petition is filed prior to the expiration of section 402 of Public Law 111-230.

* * * * *8 CFR § 103.9

15. Newly redesignated § 103.9 is revised to read as follows:

8 CFR § 103.9

**§ 103.9 Request for further action on an approved benefit request.**

(a) Filing a request. A person may request further action on an approved benefit request as prescribed by the form instructions. Requests for further action may be submitted with the original benefit request or following the approval of such benefit.

(b) Processing. The request will be approved if the requester has demonstrated eligibility for the requested action. There is no appeal from the denial of such request.

8 CFR § 103.12

**§ 103.12 [Removed]**

8 CFR § 103.12

16. Section 103.12 is removed.

8 CFR § 103.37

**§ 103.37 [Redesignated as § 103.10]**

8 CFR § 103.37 8 CFR § 103.10

17. Section 103.37 is redesignated as § 103.10.

8 CFR § 103.10

18. Newly redesignated § 103.10 is amended by:

a. Redesignating paragraphs (g), (h), and (i) as paragraphs (b), (c), and (d) respectively;

b. Revising the term "paragraph (f) of this section" to read "paragraph (c) of this section or 8 CFR 1003.1(h)(2)" in newly redesignated paragraph (c)(2); and by

c. Adding paragraph (e).

The addition reads as follows:

8 CFR § 103.10

**§ 103.10 Precedent decisions.**

* * * * *

(e) Precedent decisions. Bound volumes of designated precedent **\*53782** decisions, entitled "Administrative Decisions under Immigration and Nationality Laws of the United States," may be purchased from the Superintendent of Documents, U.S. Government Printing Office. Prior to publication in volume form, current precedent decisions are available from the Department of Justice, Executive Office for Immigration Review's Virtual Law Library at: http://www.justice.gov/eoir/vll/libindex.html.

8 CFR § 103.16

19. Section 103.16 is added under an added subpart B heading to read as follows:

**Subpart B—Biometric Requirements**

8 CFR § 103.16

**§ 103.16 Collection, use and storage of biometric information.**

(a) Use of biometric information. Any individual may be required to submit biometric information if the regulations or form instructions require such information or if requested in accordance with 8 CFR 103.2(b)(9). DHS may collect and store for present or future use, by electronic or other means, the biometric information submitted by an individual. DHS may use this biometric information to conduct background and security checks, adjudicate immigration and naturalization benefits, and perform other functions related to administering and enforcing the immigration and naturalization laws.

**Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01**

(b) Individuals residing abroad. An individual who is required to provide biometric information and who is residing outside of the United States must report to a DHS-designated location to have his or her biometric information collected, whether by electronic or non-electronic means.

8 CFR § 103.17

20. Section 103.17 is added under subpart B to read as follows:

8 CFR § 103.17

**§ 103.17** Biometric service fee.

(a) Required fees. DHS will charge a fee, as prescribed in 8 CFR 103.7(b)(1), for collecting biometric information at a DHS office, other designated collection site overseas, or a registered State or local law enforcement agency designated by a cooperative agreement with DHS to provide biometric collection services, to conduct required law enforcement checks, and to maintain this biometric information for reuse to support other benefit requests. Requests for benefits must be submitted with the biometric service fee for all individuals who are required to submit biometric information and a biometric services fee and who reside in the United States at the time of filing for the benefit.

(b) Non-payment of biometric service fee. (1) If a benefit request is received by DHS without the correct biometric service fee, DHS will notify the applicant, petitioner, and, when appropriate, the applicant or petitioner's representative, of the deficiency, and no further action will be taken on the benefit request until payment is received. Failure to submit the correct biometric service fee in response to a notice of deficiency within the time allotted in the notice will result in denial of the benefit request. There is no appeal from the denial of a benefit request for failure to submit the correct biometric service fee. A motion to reopen a benefit request denied for failure to submit the correct biometric service fee will be granted only on proof that:

(i) The correct biometric service fee was submitted at the time of filing the benefit request;

(ii) The correct biometric service fee was submitted in response to the notice of deficiency within the time allotted in the notice; or

(iii) The notice of deficiency was sent to an address other than the address on the benefit request or the notice of representation, or the applicant or petitioner notified DHS, in writing, of a change of address or change of representation subsequent to filing and before the notice of deficiency was sent and the DHS notice of deficiency was not sent to the new address.

(2) If the reason for the deficiency in the biometric service fee is that a check or financial instrument used to pay the biometric service fee is returned as not payable, the remitter must be allowed 14 calendar days to pay the fee and any associated service charges. If the fee and charges are not paid within 14 calendar days, the benefit request will be denied.

**§§ 103.20-103.36 [Removed and Reserved]**

8 CFR § 103.20 8 CFR § 103.21 8 CFR § 103.22 8 CFR § 103.23 8 CFR § 103.24 8 CFR § 103.25 8 CFR § 103.26 8 CFR § 103.27 8 CFR § 103.28 8 CFR § 103.29 8 CFR § 103.30 8 CFR § 103.31 8 CFR § 103.32 8 CFR § 103.33 8 CFR § 103.34 8 CFR § 103.35 8 CFR § 103.36

21. Sections 103.20 through 103.36 are removed.

**Subpart C—[Reserved]**

22. Add reserved subpart C.

23. Sections 103.38 through 103.41 are designated under the following subpart D heading:

**Subpart D—Availability of Records**
* * * * *8 CFR § 103.41
24. In § 103.41, paragraph (c) is revised to read as follows:
 8 CFR § 103.41

**§ 103.41 Genealogy request fees.**
* * * * *

(c) Manner of submission. The application and fee must be submitted in accordance with form instructions.
 8 CFR § 103.42
25. Section 103.42 is added under subpart D to read as follows:
 8 CFR § 103.42

**§ 103.42 Rules relating to the Freedom of Information Act (FOIA) and the Privacy Act.**
Immigration-related regulations relating to FOIA and the Privacy Act are located in 6 CFR part 5.


**PART 204—IMMIGRANT PETITIONS**
26. The authority citation for part 204 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1151, 1153, 1154, 1182, 1186a, 1255, 1641; 8 CFR part 2.
 8 CFR § 204.3

**§ 204.3 [Amended]**
8 CFR § 204.3
27. Section 204.3 is amended by:

a. Revising the term "§ 103.2(e) of this chapter" to read "8 CFR 103.16" and the terms "the Service" and "The Service" to read "USCIS" wherever the terms appear in paragraph (c)(3); and by

b. Revising the term "BCIS" to read "USCIS", the term "Form I-600" to read "petition", and the term "I-600A" to read "advance processing request" wherever the terms appear in paragraph (h)(3)(ii).
 8 CFR § 204.4

**§ 204.4 [Amended]**
8 CFR § 204.4
28. Section 204.4 is amended by:

a. Revising the term "§ 103.2(e) of this chapter to read "8 CFR 103.16" in the second sentence in paragraph (d)(1); and by

b. Removing the phrase ", Form I-360," in the last sentence in paragraph (d)(1).
 8 CFR § 204.6

**§ 204.6 [Amended]**
8 CFR § 204.6
29. In § 204.6, paragraph (l) is removed and reserved.

8 CFR § 204.10

**§ 204.10 [Removed and Reserved]**

8 CFR § 204.10

30. Section 204.10 is removed and reserved.

8 CFR § 204.302

**§ 204.302 [Amended]**

8 CFR § 204.302

31. In § 204.302, paragraph (b), first sentence, is amended by revising the term "8 CFR 1.1(i), (j) and (m)," to read "8 CFR 1.2".

8 CFR § 204.310

**§ 204.310 [Amended]**

8 CFR § 204.310

32. In § 204.310, paragraph (b), first sentence, is amended by revising the term "8 CFR 103.2(e)" to read "8 CFR 103.16".


**PART 207—ADMISSION OF REFUGEES**

33. The authority citation for part 207 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1151, 1157, 1159, 1182; 8 CFR part 2.

8 CFR § 207.1

34. Section 207.1 is revised to read as follows:

8 CFR § 207.1

**§ 207.1 Eligibility.**

 **\*53783**  (a) Filing. Any alien who believes he or she is a refugee as defined in section 101(a)(42) of the Act, and is included in a refugee group identified in section 207(a) of the Act, may apply for admission to the United States by submitting an application, including biometric information, in accordance with the form instructions, as defined in 8 CFR 1.2.


(b) Firmly resettled. Any applicant (other than an applicant for derivative refugee status under 8 CFR 207.7) who has become firmly resettled in a foreign country is not eligible for refugee status under this chapter I. A refugee is considered to be "firmly resettled" if he or she has been offered resident status, citizenship, or some other type of permanent resettlement by a country other than the United States and has traveled to and entered that country as a consequence of his or her flight from persecution. Any applicant who claims not to be firmly resettled in a foreign country must establish that the conditions of his or her residence in that country are so restrictive as to deny resettlement. In determining whether or not an applicant is firmly resettled in a foreign country, the officer reviewing the matter shall consider the conditions under which other residents of the country live:


(1) Whether permanent or temporary housing is available to the refugee in the foreign country;


(2) Nature of employment available to the refugee in the foreign country; and


(3) Other benefits offered or denied to the refugee by the foreign country which are available to other residents, such as right to property ownership, travel documentation, education, public welfare, and citizenship.

(c) Immediate relatives and special immigrants. Any applicant for refugee status who qualifies as an immediate relative or as a special immigrant shall not be processed as a refugee unless it is in the public interest. The alien shall be advised to obtain an immediate relative or special immigrant visa and shall be provided with the proper petition forms to send to any prospective petitioners. An applicant who may be eligible for classification under sections 203(a) or 203(b) of the Act, and for whom a visa number is now available, shall be advised of such eligibility but is not required to apply.

8 CFR § 207.2

35. Section 207.2 is revised to read as follows:

8 CFR § 207.2

## § 207.2 Applicant processing.

(a) Interview. Each applicant 14 years old or older shall appear in person before an immigration officer for inquiry under oath to determine his or her eligibility for admission as a refugee.

(b) Medical examination. Each applicant shall submit to a medical examination as required by sections 221(d) and 232(b) of the Act.

(c) Sponsorship. Each applicant must be sponsored by a responsible person or organization. Transportation for the applicant from his or her present abode to the place of resettlement in the United States must be guaranteed by the sponsor.

8 CFR § 207.3

36. Section 207.3 is revised to read as follows:

8 CFR § 207.3

## § 207.3 Waivers of inadmissibility.

(a) Authority. Section 207(c)(3) of the Act sets forth grounds of inadmissibility under section 212(a) of the Act which are not applicable and those which may be waived in the case of an otherwise qualified refugee and the conditions under which such waivers may be approved.

(b) Filing requirements. An applicant may request a waiver by submitting an application for a waiver in accordance with the form instructions. The burden is on the applicant to show that the waiver should be granted based upon humanitarian grounds, family unity, or the public interest. The applicant shall be notified in writing of the decision, including the reasons for denial if the application is denied. There is no appeal from such decision.

8 CFR § 207.4

37. Section 207.4 is revised to read as follows:

8 CFR § 207.4

## § 207.4 Approved application.

Approval of a refugee application by USCIS outside the United States authorizes CBP to admit the applicant conditionally as a refugee upon arrival at the port within four months of the date the refugee application was approved. There is no appeal from a denial of refugee status under this chapter.

8 CFR § 207.5

38. Section 207.5 is revised to read as follows:

8 CFR § 207.5

## § 207.5 Waiting lists and priority handling.

Waiting lists are maintained for each designated refugee group of special humanitarian concern. Each applicant whose application is accepted for filing by USCIS shall be registered as of the date of filing. The date of filing is the priority date for purposes of case control. Refugees or groups of refugees may be selected from these lists in a manner that will best

support the policies and interests of the United States. The Secretary may adopt appropriate criteria for selecting the refugees and assignment of processing priorities for each designated group based upon such considerations as reuniting families, close association with the United States, compelling humanitarian concerns, and public interest factors.

8 CFR § 207.7

39. Section 207.7 is amended by:

a. Revising the term "U.S. Attorney General" to read "Secretary" in paragraph (b)(5);

b. Revising paragraph (d);

c. Removing the last two sentences in paragraph (e); and

d. Revising paragraph (f).

The revisions read as follows:

8 CFR § 207.7

## § 207.7 Derivatives of refugees.

* * * * *

(d) Filing. A refugee may request accompanying or following-to-join benefits for his or her spouse and unmarried, minor child(ren) (whether the spouse and children are inside or outside the United States) by filing a petition in accordance with the form instructions. The petition may only be filed by the principal refugee. Family members who derived their refugee status are not eligible to request derivative benefits on behalf of their spouses and child(ren). A petition must be filed for each qualifying family member within 2 years of the refugee's admission to the United States, unless USCIS determines that the filing period should be extended for humanitarian reasons. There is no time limit imposed on a family member's travel to the United States once the petition has been approved, provided that the relationship of spouse or child continues to exist and approval of the petition has not been subsequently revoked. There is no fee for this petition.

* * * * *

(f) Approvals. (1) Spouse or child in the United States. When a spouse or child of a refugee is in the United States and the petition is approved, USCIS will notify the refugee of such approval. Employment will be authorized incident to status.

(2) Spouse or child outside the United States. When a spouse or child of a refugee is outside the United States and the petition is approved, USCIS will notify the refugee of such approval. USCIS will send the approved petition to the Department of State for transmission to the U.S. Embassy or Consulate having jurisdiction over the area in which the refugee's spouse or child is located.

(3) Benefits. The approval of the petition shall remain valid for the duration of the relationship to the refugee and, in the case of a child, while the child is under 21 years of age and unmarried, provided also that the **\*53784** principal's status has not been revoked. However, the approved petition will cease to confer immigration benefits after it has been used by the beneficiary for admission to the United States as a derivative of a refugee. For a derivative inside or arriving in the United States, USCIS will issue a document reflecting the derivative's current status as a refugee to demonstrate employment authorization, or the derivative may apply, under 8 CFR 274a.12(a), for evidence of employment authorization.

* * * * * 8 CFR § 207.9

40. Section 207.9 is revised to read as follows:

8 CFR § 207.9

## § 207.9 Termination of refugee status.

The refugee status of any alien (and of the spouse or child of the alien) admitted to the United States under section 207 of the Act will be terminated by USCIS if the alien was not a refugee within the meaning of section 101(a)(42) of the Act at the time of admission. USCIS will notify the alien in writing of its intent to terminate the alien's refugee status. The alien will have 30 days from the date notice is served upon him or her in accordance with 8 CFR 103.8, to present written or oral evidence to show why the alien's refugee status should not be terminated. There is no appeal under this chapter I from the termination of refugee status by USCIS. Upon termination of refugee status, USCIS will process the alien under sections 235, 240, and 241 of the Act.

## PART 208—PROCEDURES FOR ASYLUM AND WITHHOLDING OF REMOVAL

41. The authority citation for part 208 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1158, 1226, 1252, 1282; Pub. L. 110-229, tit. VII, 122 Stat. 754; 8 CFR part 2.
 8 CFR § 208.1

**§ 208.1 [Amended]**
8 CFR § 208.1
42. Section 208.1 is amended by:

a. Revising in the last sentence of paragraph (a)(1) the term "8 CFR parts 3 and 103, where applicable" to read "8 CFR parts 103 and 1003, as applicable"; and

b. Revising in paragraph (b) the term "The Director of International Affairs" to read "The Associate Director of USCIS Refugee, Asylum, and International Operations (RAIO)".
 8 CFR § 208.2

**§ 208.2 [Amended]**
8 CFR § 208.2
43. Section 208.2 is amended in paragraph (a) by revising the paragraph heading to read: "Refugee, Asylum, and International Operations (RAIO)" and by revising the terms "the Office of International Affairs" and "The Office of International Affairs" to read: "RAIO" wherever they appear.
 8 CFR § 208.5

**§ 208.5 [Amended]**
8 CFR § 208.5
44. Section 208.5 is amended by:

a. Removing the phrase ", pursuant to § 208.4(b)," in the last sentence of paragraph (b)(1)(ii);

b. Revising the phrase "The DHS office" to read "DHS" and by revising the phrase "the DHS office" to read "DHS" in paragraph (b)(1)(ii); and

c. Revising the term "Attorney General" to read "Secretary" in paragraph (b)(2).
 8 CFR § 208.7

45. Section 208.7 is amended by:

a. Revising the phrase "submit a Form I-765, Application for Employment Authorization" to read "request employment authorization" in paragraph (a)(1), first sentence;

b. Revising the term "Form I-765" to read "employment authorization request" in paragraph (a)(1), last sentence;

c. Revising the phrase "the Service" to read "USCIS" in paragraph (a)(2), first sentence;

d. Revising the phrase "the Commissioner" to read "USCIS" in paragraph (b), introductory text; and

e. Revising paragraph (c), introductory text.

The revision reads as follows:

8 CFR § 208.7

**§ 208.7 Employment authorization.**

* * * * *

(c) *Supporting evidence for renewal of employment authorization.* In order for employment authorization to be renewed under this section, the alien must request employment authorization in accordance with the form instructions. USCIS may require that an alien establish that he or she has continued to pursue an asylum application before an immigration judge or sought administrative or judicial review. For purposes of employment authorization, pursuit of an asylum application is established by presenting one of the following, depending on the stage of the alien's immigration proceedings:

* * * * * 8 CFR § 208.9

**§ 208.9 [Amended]**

8 CFR § 208.9

46. In § 208.9, paragraph (b) is amended by removing the phrase "electronically or through any other means designated by the Attorney General".

8 CFR § 208.10

**§ 208.10 [Amended]**

8 CFR § 208.10

47. Section 208.10 is amended by revising the term "the Office of International Affairs" to read "USCIS" in the third sentence.

8 CFR § 208.12

**§ 208.12 [Amended]**

8 CFR § 208.12

48. In § 208.12, paragraph (a) is amended by revising the term "the Office of International Affairs, other Service offices," to read "other USCIS offices".

8 CFR § 208.14

**§ 208.14 [Amended]**

8 CFR § 208.14

49. In § 208.14, paragraph (b) is amended by revising the term "Office of International Affairs" to read "RAIO".

8 CFR § 208.21

50. Section 208.21 is amended by revising paragraphs (c) and (d) to read as follows:

8 CFR § 208.21

**§ 208.21 Admission of the asylee's spouse and children.**

(c) Spouse or child in the United States. When a spouse or child of an alien granted asylum is in the United States, but was not included in the asylee's application, the asylee may request accompanying or following-to-join benefits for his or her spouse or child, regardless of the status of that spouse or child in the United States, in accordance with the form instructions. The petition must be filed by the asylee for each qualifying family member within 2 years of the date in which he or she was granted asylum status, unless it is determined by USCIS that this period should be extended for humanitarian reasons. Upon approval of the petition, USCIS will notify the asylee of such approval. Employment will be authorized incident to status. To demonstrate employment authorization, USCIS will issue a document reflecting the derivative's current status as an asylee, or the derivative may apply, under 8 CFR 274a.12(a), for evidence of employment authorization. The approval of the derivative benefits petition shall remain valid for the duration of the relationship to the asylee and, in the case of a child, while the child is under 21 years of age and unmarried, provided also that the principal's status has not been revoked. However, the approved petition will cease to confer immigration benefits after it has been used by the beneficiary for admission to the United States as a derivative of an asylee.

(d) Spouse or child outside the United States. When a spouse or child of an alien granted asylum is outside the United States, the asylee may request accompanying or following-to-join benefits for his or her spouse or child(ren) by filing a separate petition for each qualifying family member in accordance with the form instructions. A petition for each qualifying family member must be filed within 2 years of the date in which the asylee was granted asylum, unless USCIS determines that the filing period should be extended for **53785 humanitarian reasons. When a petition is approved, USCIS will notify the asylee of such approval. USCIS will also send the approved petition to the Department of State for transmission to the U.S. Embassy or Consulate having jurisdiction over the area in which the asylee's spouse or child is located. The approval of the petition shall remain valid for the duration of the relationship to the asylee and, in the case of a child, while the child is under 21 years of age and unmarried, provided also that the principal's status has not been revoked. However, the approved petition will cease to confer immigration benefits after it has been used by the beneficiary for admission to the United States as a derivative of an asylee.

* * * * *8 CFR § 208.24

51. Section 208.24 is amended by:

a. Revising paragraph (a) introductory text;

b. Revising paragraph (b) introductory text; and by

c. Revising the term "§ 3.2 or § 3.23 of this chapter" to read 8 CFR 1003.2 and 8 CFR 1003.23" and by revising the term "the Service" to read "USCIS", wherever the term appears in paragraph (f).

The revisions read as follows:

8 CFR § 208.24

**§ 208.24 Termination of asylum or withholding of removal or deportation.**
(a) Termination of asylum by USCIS. Except as provided in paragraph (e) of this section, an asylum officer may terminate a grant of asylum made under the jurisdiction of USCIS if, following an interview, the asylum officer determines that:
* * * * *

(b) Termination of withholding of deportation or removal by USCIS. Except as provided in paragraph (e) of this section, an asylum officer may terminate a grant of withholding of deportation or removal made under the jurisdiction of USCIS if the asylum officer determines, following an interview, that:
* * * * *8 CFR § 208.30

52. Section 208.30 is amended by revising paragraph (d)(3) to read as follows:

8 CFR § 208.30

**§ 208.30 Credible fear determinations involving stowaways and applicants for admission found inadmissible pursuant to section 212(a)(6)(C) or 212(a)(7) of the Act.**

* * * * *

(d) * * *

(3) The alien may be required to register his or her identity.

* * * * *8 CFR § 208.31

**§ 208.31 [Amended]**

8 CFR § 208.31

53. In § 208.31, paragraph (a) is amended by revising the term "The Service" to read "USCIS" in the last sentence.

**PART 209—ADJUSTMENT OF STATUS OF REFUGEES AND ALIENS GRANTED ASYLUM**

54. The authority citation for part 209 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1157, 1158, 1159, 1228, 1252, 1282; Pub. L. 110-229, tit. VII, 122 Stat. 754; 8 CFR part 2.

8 CFR § 209.1

55. Section 209.1 is amended by:

a. Revising paragraph (a)(1);

b. Revising paragraph (b);

c. Removing from paragraph (c) last sentence the phrase ", by submitting with the adjustment of status application a vaccination supplement, completed by a designated civil surgeon in the United States";

d. Revising paragraphs (d) and (e); and

e. Adding paragraph (f).

The revisions read as follows:

8 CFR § 209.1

**§ 209.1 Adjustment of status of refugees.**

* * * * *

(a) Eligibility. (1) Every alien in the United States who is classified as a refugee under 8 CFR part 207, whose status has not been terminated, is required to apply to USCIS one year after entry in order for USCIS to determine his or her admissibility under section 212 of the Act, without regard to paragraphs (4), (5), and (7)(A) of section 212(a) of the Act.

* * * * *

(b) Application. Upon admission to the United States, every refugee entrant will be notified of the requirement to submit an application for permanent residence one year after entry. An application for the benefits of section 209(a) of the Act must be submitted along with the biometrics required by 8 CFR 103.16 and in accordance with the applicable form instructions.

* * * * *

(d) Interview. USCIS will determine, on a case-by-case basis, whether an interview by an immigration officer is necessary to determine the applicant's admissibility for permanent resident status under this part.

(e) Decision. USCIS will notify the applicant in writing of the decision on his or her application. There is no appeal of a denial, but USCIS will notify an applicant of the right to renew the request for permanent residence in removal proceedings under section 240 of the Act. If the applicant is found to be admissible for permanent residence under section 209(a) of the Act, USCIS will approve the application, admit the applicant for lawful permanent residence as of the date of the alien's arrival in the United States, and issue proof of such status.

(f) Inadmissible Alien. An applicant who is inadmissible to the United States as described in 8 CFR 209.1(a)(1), may, under section 209(c) of the Act, have the grounds of inadmissibility waived by USCIS except for those grounds under sections 212(a)(2)(C) and 212(a)(3)(A), (B), (C), or (E) of the Act for humanitarian purposes, to ensure family unity, or when it is otherwise in the public interest. An application for the waiver may be requested with the application for adjustment, in accordance with the form instructions.

8 CFR § 209.2

56. Section 209.2 is amended by:

a. Revising the term "the director" to read "USCIS" whenever that term appears in paragraph (a)(2);

b. Removing the undesignated paragraph at the end of paragraph (a)(1);

c. Removing the second, third, and last sentences in paragraph (a)(2); and

d. Revising paragraphs (b) through (f).

The revisions read as follows:

8 CFR § 209.2

**§ 209.2 Adjustment of status of aliens granted asylum.**

* * * * *

(b) Inadmissible Alien. An applicant who is not admissible to the United States as described in 8 CFR 209.2(a)(1)(v), may, under section 209(c) of the Act, have the grounds of inadmissibility waived by USCIS except for those grounds under sections 212(a)(2)(C) and 212(a)(3)(A), (B), (C), or (E) of the Act for humanitarian purposes, to ensure family unity, or when it is otherwise in the public interest. An application for the waiver may be requested with the application for adjustment, in accordance with the form instructions. An applicant for adjustment under this part who has had the status of an exchange alien nonimmigrant under section 101(a)(15)(J) of the Act, and who is subject to the foreign resident requirement of section 212(e) of the Act, shall be eligible for adjustment without regard to the foreign residence requirement if otherwise eligible for adjustment.

(c) Application. An application for the benefits of section 209(b) of the Act may be filed in accordance with the form instructions. If an alien has been placed in removal, deportation, or exclusion proceedings, the application can be filed and considered only in proceedings under section 240 of the Act.

(d) Medical examination. For an alien seeking adjustment of status under section 209(b) of the Act, the alien shall **\*53786** submit a medical examination to determine whether any grounds of inadmissibility described under section 212(a)(1)(A) of the Act apply. The asylee is also required to establish compliance with the vaccination requirements described under section 212(a)(1)(A)(ii) of the Act.

(e) Interview. USCIS will determine, on a case-by-case basis, whether an interview by an immigration officer is necessary to determine the applicant's admissibility for permanent resident status under this part.

(f) Decision. USCIS will notify the applicant in writing of the decision on his or her application. There is no appeal of a denial, but USCIS will notify an applicant of the right to renew the request in removal proceedings under section 240 of the Act. If the application is approved, USCIS will record the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application, but not earlier than the date of the approval for asylum in the case of an applicant approved under paragraph (a)(2) of this section.

## PART 211—DOCUMENTARY REQUIREMENTS: IMMIGRANTS; WAIVERS

57. The authority citation for part 211 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1181, 1182, 1203, 1225, 1257; 8 CFR part 2.

8 CFR § 211.1

58. Section 211.1 is amended by:

a. Revising paragraph (b)(3); and

b. Removing paragraph (d).

The revision reads as follows:

8 CFR § 211.1

### § 211.1 Visas.

(b) * * *

(3) If an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad believes that good cause exists for his or her failure to present an unexpired immigrant visa, permanent resident card, or reentry permit, the alien may file an application for a waiver of this requirement with the DHS officer with jurisdiction over the port of entry where the alien arrives. To apply for this waiver, the alien must file the designated form with the fee prescribed in 8 CFR 103.7(b)(1). If the alien's permanent resident card was lost or stolen and the alien has been absent for less than one year, rather than the waiver application the alien must apply for a replacement card as described in 8 CFR 264.5. In the exercise of discretion, the DHS officer who has jurisdiction over the port of entry where the alien arrives may waive the alien's lack of an immigrant visa, permanent resident card, or reentry permit and admit the alien as a returning resident if DHS is satisfied that the alien has established good cause for the alien's failure to present an immigrant visa, permanent resident card, or reentry permit. Filing a request to replace a lost or stolen card will serve as both application for replacement and as application for waiver of passport and visa, without the obligation to file a separate waiver application.

* * * * *8 CFR § 211.2

### § 211.2 [Amended]

8 CFR § 211.2

59. In § 211.2, paragraph (b) is amended in the second sentence by revising the phrase "file Form I-193, Application for Waiver of Passport and/or Visa", to read "apply on the form specified by USCIS".

8 CFR § 211.3

60. Section 211.3 is amended by:

a. Revising the section heading; and

b. Revising the term "Form I-551" to read "a permanent resident card" whenever the term appears in the first sentence.

The revision reads as follows:
 8 CFR § 211.3

**§ 211.3 Expiration of immigrant visa or other travel document.**
\* \* \* \* \*8 CFR § 211.5

**§ 211.5 [Amended]**
8 CFR § 211.5
61. Section 211.5 is amended by:

a. Revising the phrase "Form I-551 or I-688 shall become" to read "the alien's permanent resident card becomes" in the last sentence in paragraph (b); and

b. Revising the term "on Form I-90" to read "in accordance with 8 CFR 264.5" in the last sentence of paragraph (c).


**PART 212—DOCUMENTARY REQUIREMENTS: NONIMMIGRANTS; WAIVERS; ADMISSION OF CERTAIN INADMISSIBLE ALIENS; PAROLE**
62. The authority citation for part 212 continues to read as follows:

Authority: 8 U.S.C. 1101 and note, 1102, 1103, 1182 and note, 1184, 1187, 1223, 1225, 1226, 1227, 1255; 8 U.S.C. 1185 note (Pub. L. 108-458, § 7209, 118 Stat. 3638; Public Law 110-229, tit. VII, 122 Stat. 754; 8 CFR part 2.
 8 CFR § 212.1

**§ 212.1 [Amended]**
8 CFR § 212.1
63. In § 212.1, paragraph (n) is removed and reserved.
 8 CFR § 212.2

**§ 212.2 [Amended]**
8 CFR § 212.2
64. Section 212.2 is amended by revising the term "the Form I-212" or "Form I-212" to read "the application" wherever it appears in the following places:

a. Paragraph (b)(1);

b. Paragraph (b)(2);

c. Paragraph (e), in the last sentence;

d. Paragraph (f);

e. Paragraph (i)(1) introductory text; and

f. Paragraph (i)(2).

8 CFR § 212.2

65. Section 212.2 is further amended by:

a. Revising the term "sections 212(a)(17) and 212(d)(3)(A) of the Act and § 212.4 of this part" to read "sections 212(a)(9)(A) and 212(d)(3)(A) of the Act and 8 CFR 212.4" in the second sentence of paragraph (b)(1);

b. Revising the phrase "Form I-212, Application for Permission to Reapply for Admission into the United States after Deportation or Removal," to read "an application on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1), in accordance with the form instructions," in the last sentence of paragraph (b)(1);

c. Revising the phrase "an application on Form I-212" to read "the application on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1), in accordance with the form instructions" in paragraph (c)(1)(ii);

d. Revising the phrase "the Form I-212 to the Service office with jurisdiction over the area within which the consular officer is located" to read "the application to the designated USCIS office" in paragraph (c)(2);

e. Revising the phrase "Form I-212" to read "the waiver request on the form designated by USCIS" in the first sentence in paragraph (d);

f. Revising the phrase "Form I-601, Application for Waiver of Grounds of Excludability, must be filed simultaneously with the Form I-212" to read "he or she must file both waiver requests simultaneously on the forms designated by USCIS with the fees prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions" in the last sentence in paragraph (d).

g. Revising the phrase "Form I-212, Application for Permission to Reapply" to read "the application on the form designated by USCIS" in the second sentence in paragraph (e);

h. Revising the phrase "file Form I-212" to read "apply on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions" in the first sentence in paragraph (g)(1) introductory text;

i. Removing the last sentence in paragraph (g)(1) introductory text;

j. Removing paragraphs (g)(1)(i) and (ii);

k. Revising the term "8 CFR 245.15(t)(2)" to read "8 CFR 245.15(t)(2) or 8 CFR 245.13(k)(2)" in the first sentence of paragraph (g)(2);

 *53787  l. Revising the phrase "Form I-212 or Form I-601 concurrently with the Form I-131, Application for Travel Document" to read "waiver form concurrently with the parole request" in the first sentence in paragraph (g)(2);

m. Removing the last sentence in paragraph (g)(2); and by

n. Revising the phrase "section 212(a)(16) or (17) of the Act" to read "section 212(a)(9)(A) of the Act" in the second sentence of paragraph (j).

8 CFR § 212.3

### § 212.3 [Amended]

8 CFR § 212.3

66. In § 212.3, paragraph (a) is amended by revising the phrase "Form I-191, Application for Advance Permission to Return to Unrelinquished Domicile" to read "the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions".

8 CFR § 212.4

### § 212.4 [Amended]

8 CFR § 212.4

67. Section 212.4 is amended by:

a. Revising the term "Form I-192 to the district director in charge of the applicant's intended port of entry prior to the applicant's arrival in the United States", to read "the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1), and in accordance with the form instructions" in the first sentence in paragraph (b);

b. Removing the term "of Form I-854, Inter-Agency Alien Witness and Informant Record," in the first sentence of paragraph (j)(1); and

c. Revising the phrase "the Commissioner shall" to read "USCIS will" in the first sentence in paragraph (j)(1);

d. Revising the phrase "The Commissioner" or "the Commissioner" to read "USCIS" wherever the term appears in the second and third sentences in paragraph (j)(1); and

e. Revising the phrase "the Commissioner" to read "USCIS" in the second sentence in paragraph (j)(2).

8 CFR § 212.5

### § 212.5 [Amended]

8 CFR § 212.5

68. In § 212.5, paragraph (f) is amended by revising the term "Form I-512" to read "an appropriate document authorizing travel".

8 CFR § 212.7

69. Section 212.7 is amended by:

a. Revising the section heading;

b. Revising the paragraph (a)(1);

c. Revising paragraph (a)(3);

d. Revising in paragraph (a)(4), fourth sentence, the phrase "deportable in a deportation proceeding" to read "deportable in deportation proceedings or removable in removal proceedings";

e. Revising the paragraph (b)(1);

f. Removing paragraph (b)(3);

g. Revising in the first sentence in paragraph (b)(4)(i) the phrase "section 212(a) (1) or (3) (because of mental retardation or because of a past history of mental illness)" to read "section 212(a)(1)(A)(iii) of the Act" and the phrase "an executed Form I-601 to the consular or Service office" to read "a waiver request";

h. Removing the last sentence in paragraph (b)(4)(i);

i. Redesignating paragraphs (b)(4) and (5) as paragraphs (b)(2) and (3), respectively;

j. Revising the term "Form I-612" to read "the form designated by USCIS" in paragraph (c)(5);

k. Revising the term "the Service" to read "USCIS" in the last sentence in paragraph (c)(9)(vi) introductory text;

l. Removing the phrase "with the Service" in the first sentence in paragraph (c)(9)(vi)(B); and

m. Revising the term "Form I-797 (and/or I-797A and I-797B)" to read "the USCIS approval notice" in paragraph (c)(9)(vi)(B)(1).

The revisions read as follows:

8 CFR § 212.7

**§ 212.7 Waiver of certain grounds of inadmissibility.**

(a) Filing and adjudication of waivers under sections 212(g), (h), or (i) of the Act. (1) Application procedures. Any alien who is inadmissible under sections 212(g), (h), or (i) of the Act who is eligible for a waiver of such inadmissibility may file on the form designated by USCIS, with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions. When filed at the consular section of an embassy or consulate, the Department of State will forward the application to USCIS for a decision after the consular official concludes that the alien is otherwise admissible.
* * * * *
(3) Decision. USCIS will provide a written decision and, if denied, advise the applicant of appeal procedures in accordance with 8 CFR 103.3.
* * * * *
(b) Section 212(g) waivers for certain medical conditions. (1) Application. Any alien who is inadmissible under section 212(a)(1)(A)(i), (ii), or (iii) of the Act and who is eligible for a waiver under section 212(g) of the Act may file an application as described in paragraph (a)(1) of this section. The family member specified in section 212(g) of the Act may file the waiver application for the applicant if the applicant is incompetent to file the waiver personally.
* * * * *8 CFR § 212.8

**§ 212.8 [Removed and Reserved]**
8 CFR § 212.8
70. Section 212.8 is removed and reserved.
8 CFR § 212.9

**§ 212.9 [Removed and Reserved]**
8 CFR § 212.9
71. Section 212.9 is removed and reserved.
8 CFR § 212.10
72. Section 212.10 is revised to read as follows:
8 CFR § 212.10

**§ 212.10** **Section 212(k) waiver.**

Any applicant for admission who is in possession of an immigrant visa, and who is inadmissible under section 212(a)(5)(A) or 212(a)(7)(A)(i) of the Act, may apply at the port of entry for a waiver under section 212(k) of the Act. If the application for waiver is denied, the application may be renewed in removal proceedings before an immigration judge as provided in 8 CFR part 1240.

 8 CFR § 212.11

**§ 212.11** **[Removed and Reserved]**

8 CFR § 212.11

73. Section 212.11 is removed and reserved.

 8 CFR § 212.14

**§ 212.14** **[Amended]**

8 CFR § 212.14

74. Section 212.14 is amended by:

a. Revising the phrase "a completed Form I-854, Inter-Agency Alien Witness and Informant Record," to read "an application for S nonimmigrant status on the form designated for such purposes" in paragraph (a)(1)(i);

b. Revising the phrase "a completed Form I-854" to read "the completed application" in the first sentence of paragraph (a)(2)(iii);

c. Revising the phrase "Form I-854 requesting" to read "completed application for" in the second sentence of paragraph (a)(2)(iii); and

d. Revising the phrase "a Form I-854" to read "the application" in paragraph (a)(2)(iii), last sentence.

 8 CFR § 212.15

**§ 212.15** **[Amended]**

8 CFR § 212.15

75. Section 212.15 is amended by:

a. Revising the phrase "shall submit Form I-905, Application for Authorization to Issue Certification for Health Care Workers" to read "must apply on the form designated by USCIS in accordance with the form instructions" in the first sentence of paragraph (j)(1) introductory text;

b. Revising the phrase "As required on Form I-905, the" to read "The" in the last sentence of paragraph (j)(1), introductory text;

c. Revising the term "shall submit Form I-905" to read "must apply" in the first sentence of paragraph (j)(2)(i);

d. Revising the phrase "shall submit Form I-905, Application for Authorization to Issue Certification for Health Care Workers with the appropriate fee contained in 8 CFR 103.7(b)(1)" to read "must apply on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in  **\*53788**  accordance with the form instructions" in the first sentence in paragraph (j)(2)(ii);

e. Revising the phrase "After receipt of Form I-905, USCIS shall, in all cases," to read "USCIS will" in paragraph (j)(3)(i);

**Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01**

f. Removing the phrase "to the Associate Commissioner for Examinations" from paragraph (j)(3)(iii);

g. Revising the phrase "a Form I-905 requesting," to read "a request for" in the second sentence of paragraph (l); and

h. Revising the term "Form I-905" to read "the request" in the second sentence of paragraph (m)(2) introductory text.
 8 CFR § 212.16

**§ 212.16 [Amended]**
8 CFR § 212.16
76. Section 212.16 is amended by

a. Revising the term "Form I-192" to read "the request on the form designated by USCIS", by revising the term "the Service" to read "USCIS", and by revising the phrase "completed Form I-914 application package" to read "application" in paragraph (a);

b. Revising the terms "the Commissioner", "The Service", and "the Service" to read "USCIS" wherever those terms appear in paragraph (b); and by

c. Revising the term "The Commissioner" to read "USCIS" in paragraph (d).
 8 CFR § 212.17
77. Section 212.17 is amended by:

a. Revising paragraph (a); and by

b. Revising the term "Form I-192" to read "the waiver" wherever the term appears in paragraph (b).

The revision reads as follows:
 8 CFR § 212.17

**§ 212.17 Applications for the exercise of discretion relating to U nonimmigrant status.**
(a) Filing the waiver application. An alien applying for a waiver of inadmissibility under section 212(d)(3)(B) or (d)(14) of the Act (waivers of inadmissibility), 8 U.S.C. 1182(d)(3)(B) or (d)(14), in connection with a petition for U nonimmigrant status being filed pursuant to 8 CFR 214.14, must submit the waiver request and the petition for U nonimmigrant status on the forms designated by USCIS in accordance with the form instructions. An alien in U nonimmigrant status who is seeking a waiver of section 212(a)(9)(B) of the Act, 8 U.S.C. 1182(a)(9)(B) (unlawful presence ground of inadmissibility triggered by departure from the United States), must file the waiver request prior to his or her application for reentry to the United States in accordance with the form instructions.
* * * * *

**PART 213A—AFFIDAVITS OF SUPPORT ON BEHALF OF ALIENS**
78. The authority citation for part 213a continues to read as follows:

Authority: 8 U.S.C. 1183a; 8 CFR part 2.
 8 CFR § 213a.1

**§ 213a.1 [Amended]**
8 CFR § 213a.1

79. Section 213a.1 is amended by:

a. Revising in the definition of household income the phrase "signed a U.S. Citizenship and Immigration Services (USCIS) Form I-864A, Affidavit of Support Contract Between Sponsor and Household Member" to read "signed the form designated by USCIS for this purpose";

b. Revising in the definition of household size, in the second sentence in paragraph (1), the term "Form I-864" to read "affidavit of support", wherever the term appears;

c. Revising in the definition of joint sponsor the term "a Form I-864" to read "an affidavit of support";

d. Revising in the definition of sponsor the term "a Form I-864" to read "an affidavit of support"; and

e. Revising in the definition of substitute sponsor the term "a Form I-864" to read "the affidavit of support" and the term "the Form I-130 or I-129F" to read "a relative or fianc E(e) petition".

 8 CFR § 213a.2

80-82. Section 213a.2 is amended by:

a. Revising paragraphs (a)(1)(i) through (a)(1)(v)(A);

b. Revising the phrase "Form I-864 or Form I-864A" to read "affidavit of support or required affidavit of support attachment form" in the first sentence of paragraph (a)(1)(v)(B);

c. Revising the phrase "Form I-864 and any Form I-864A" to read "affidavit of support and any required affidavit of support attachment" in the last sentence of paragraph (a)(1)(v)(B);

d. Revising the phrase "the Form I-130 or Form I-600 immigrant visa petition (or the Form I-129F petition, for a K nonimmigrant seeking adjustment)" to read "relative, orphan or fianc E(e) petition" in the first sentence of paragraph (b)(1);

e. Revising the phrase "in Form I-864P Poverty Guidelines" to read "the Poverty Guidelines" in paragraph (c)(2)(i)(A);

f. Revising the term "Form I-864" to read "affidavit of support" in paragraph (c)(2)(iii)(A)(2);

g. Revising paragraph (c)(2)(iii)(C);

h. Revising the phrase "filed USCIS Form I-407, Abandonment of Lawful Permanent Resident Status" to read "abandoned permanent resident status, executing the form designated by USCIS for recording such action" in paragraph (e)(2)(i)(C);

i. Revising the phrase "Form I-864 or Form I-864A" to read " affidavit of support and any required attachments" wherever the term appears in paragraph (f);

j. Revising the phrase "the signed Form(s) I-864 (and any Form(s) I-864A)" to read "any relevant affidavit(s) and attachments" in paragraph (g)(1); and

k. Revising paragraphs (g)(2)(i) and (ii).

l. Section 213a.2 is further amended by revising the terms "Form I-864", "the Form I-864", and "a Form I-864" to read "an affidavit of support" wherever those terms or phrases appear in the following places:

i. Paragraph (b), introductory text;

ii. Paragraph (b)(1);

iii. Paragraph (b)(2);

iv. Paragraph (c)(1)(ii)(B);

v. Paragraph (c)(2)(i)(A);

vi. Paragraph (c)(2)(i)(B);

vii. Paragraph (c)(2)(i)(C)(2);

viii. Paragraph (c)(2)(i)(C)(4);

ix. Paragraph (c)(2)(i)(D);

x. Paragraph (c)(2)(ii)(C);

xi. Paragraph (c)(2)(iii)(D);

xii. Paragraph (c)(2)(v);

xiii. Paragraph (c)(2)(vi);

xiv. Paragraph (d);

xv. Paragraph (e)(1);

xvi. Paragraph (e)(2)(i) introductory text;

xvii. Paragraph (e)(2)(i)(D);

xviii. Paragraph (e)(2)(ii);

xix. Paragraph (e)(3); and

xx. Paragraph (f) heading.

m. Section 213a.2 is further amended by revising the terms "Form I-864A", "the Form I-864A", or "a Form I-864A" to read "an affidavit of support attachment" wherever those terms or phrases appear in the following places:

i. Paragraph (c)(2)(i)(C)(1);

ii. Paragraph (c)(2)(i)(C)(2);

iii. Paragraph (c)(2)(i)(C)(3);

iv. Paragraph (c)(2)(i)(C)(4);

v. Paragraph (c)(2)(i)(C)(5);

vi. Paragraph (c)(2)(i)(D);

vii. Paragraph (c)(2)(iii)(B) introductory text;

viii. Paragraph (c)(2)(v);

ix. Paragraph (c)(2)(vi);

x. Paragraph (e)(1);

xi. Paragraph (e)(2)(i) introductory text;

xii. Paragraph (e)(2)(i)(D);

xiii. Paragraph (e)(2)(ii);

xiv. Paragraph (e)(3); and

xv. Paragraph (f) heading.

The revisions read as follows:
 8 CFR § 213a.2

## § 213a.2 Use of affidavit of support.

(a) Applicability of section 213a affidavit of support. (1)(i)(A) In any case specified in paragraph (a)(2) of this section, an intending immigrant is **\*53789** inadmissible as an alien likely to become a public charge, unless the qualified sponsor specified in paragraph (b) of this section or a substitute sponsor and, if necessary, a joint sponsor, has executed on behalf of the intending immigrant an affidavit of support on the applicable form designated by USCIS in accordance with the requirements of section 213A of the Act and the form instructions. Each reference in this section to the affidavit of support or the form is deemed to be a reference to all such forms designated by USCIS for use by a sponsor for compliance with section 213A of the Act.

(B) If the intending immigrant claims that, under paragraph (a)(2)(ii)(A), (C), or (E) of this section, the intending immigrant is exempt from the requirement to file an affidavit of support, the intending immigrant must include with his or her application for an immigrant visa or adjustment of status an exemption request on the form designated by USCIS for this purpose.

(ii) An affidavit of support is executed when a sponsor signs and submits the appropriate forms in accordance with the form instructions to USCIS or the Department of State, as appropriate.

(iii) A separate affidavit of support is required for each principal beneficiary.

(iv) Each immigrant who will accompany the principal intending immigrant must be included on the affidavit. See paragraph (f) of this section for further information concerning immigrants who intend to accompany or follow the principal intending immigrant to the United States.

(v)(A) Except as provided for under paragraph (a)(1)(v)(B) of this section, the Department of State consular officer, immigration officer, or immigration judge will determine the sufficiency of the affidavit of support based on the sponsor's, substitute sponsor's, or joint sponsor's reasonably expected household income in the year in which the intending immigrant filed the application for an immigrant visa or for adjustment of status, and based on the evidence submitted with the affidavit of support and the Poverty Guidelines in effect when the intending immigrant filed the application for an immigrant visa or adjustment of status.

 * * * * *

(c) * * *

(2) * * *

(iii) * * *

(C) Joint sponsor. A joint sponsor must execute a separate affidavit of support on behalf of the intending immigrant(s) and be willing to accept joint and several liabilities with the sponsor or substitute sponsor. A joint sponsor must meet all the eligibility requirements under paragraph (c)(1) of this section, except that the joint sponsor is not required to file a visa petition on behalf of the intending immigrant. The joint sponsor must demonstrate his or her ability to support the intending immigrant in the manner specified in paragraph (c)(2) of this section. A joint sponsor's household income must meet or exceed the income requirement in paragraph (c)(2)(iii) of this section unless the joint sponsor can demonstrate significant assets as provided in paragraph (c)(2)(iv)(A) of this section. The joint sponsor's household income must equal at least 125 percent of the Poverty Guidelines for the joint sponsor's household size, unless the joint sponsor is on active duty in the Armed Forces and the intending immigrant is the joint sponsor's spouse or child, in which case the joint sponsor's household income is sufficient if it equals at least 100 percent of the Poverty Guidelines for the joint sponsor's household size. An intending immigrant may not have more than one joint sponsor, but, if the joint sponsor's household income is not sufficient to meet the income requirement with respect to the principal intending immigrant, any spouse and all the children who, under section 203(d) of the Act, seek to accompany the principal intending immigrant, then the joint sponsor may specify on the affidavit that it is submitted only on behalf of the principal intending immigrant and those accompanying family members specifically listed on the affidavit. The remaining accompanying family members will then be inadmissible under section 212(a)(4) of the Act unless a second joint sponsor submits an affidavit(s) on behalf of all the remaining family members who seek to accompany the principal intending immigrant and who are not included in the first joint sponsor's affidavit. There may not be more than two joint sponsors for the family group consisting of the principal intending immigrant and the accompanying spouse and children.

 * * * * *

(g) * * *

(2)(i) To avoid inadmissibility under section 212(a)(4) of the Act, an alien who applies for an immigrant visa, admission, or adjustment of status as an alien who is following-to-join a principal intending immigrant must submit a new affidavit(s)

of support, together with all documents or other evidence necessary to prove that the new affidavits comply with the requirements of section 213A of the Act and 8 CFR part 213a.

(ii) When paragraph (g)(2)(i) of this section requires the filing of a new affidavit for an alien who seeks to follow-to-join a principal sponsored immigrant, the same sponsor who filed the visa petition and affidavit of support for the principal sponsored immigrant must file the new affidavit on behalf of the alien seeking to follow-to-join. If that person has died, then the alien seeking to follow-to-join is inadmissible unless a substitute sponsor, as defined by 8 CFR 213a.1, signs a new affidavit that meets the requirements of this section. Persons other than the person or persons who signed the original joint affidavits on behalf of the principal sponsored immigrant may sign a new joint affidavit on behalf of an alien who seeks to follow-to-join a principal sponsored immigrant.

* * * * *8 CFR § 213a.3

83. Section 213a.3 is revised to read as follows:

8 CFR § 213a.3

### § 213a.3 Change of address.

(a) Submission of address change. (1) Filing requirements. If the address of a sponsor (including a substitute sponsor or joint sponsor) changes while the sponsor's support obligation is in effect, the sponsor shall file a change of address notice within 30 days, in a manner as prescribed by USCIS on its address change form instructions.

(2) Proof of mailing. USCIS will accept a photocopy of the change of address form together with proof of the form's delivery to USCIS as evidence that the sponsor has complied with this requirement.

(3) Electronic notices. USCIS will provide the sponsor with a receipt notice for an address change.

(4) Alien sponsors. If the sponsor is an alien, the sponsor must still comply with the requirements of 8 CFR 265.1 to notify USCIS of his or her change of address.

(b) Civil penalty. If the sponsor fails to give notice in accordance with paragraph (a) of this section, DHS may impose on the sponsor a civil penalty in an amount within the penalty range established in section 213A(d)(2)(A) of the Act. Except, if the sponsor, knowing that the sponsored immigrant has received any means-tested public benefit, fails to give notice in accordance with paragraph (a) of this section, DHS may impose on the sponsor a civil penalty in an amount within the penalty range established in section 213A(d)(2)(B) of the Act. The procedure for imposing a civil penalty is established at 8 CFR part 280.

8 CFR § 213a.4

### § 213a.4 [Amended]

8 CFR § 213a.4

**\*53790** 84. Section 213a.4 is amended by:

a. Revising the term "8 CFR 103.5a(a)(2)" to read "8 CFR 103.8(a)(2)" in paragraph (a)(1)(i); and

b. Revising the phrases "a Form I-864 or Form I-864A" and "the Form I-864 or Form I-864A" to read "an affidavit of support" in the first sentence in paragraph (a)(3).

8 CFR § 213a.5

85. Section 213a.5 is revised to read as follows:

8 CFR § 213a.5

**§ 213a.5 Relationship of this part to other affidavits of support.**

Nothing in this part precludes the continued use of other affidavits of support provided by USCIS in a case other than a case described in § 213a.2(a)(2). The obligations of section 213A of the Act do not bind a person who executes such other USCIS affidavits of support. Persons sponsoring an Amerasian alien described in section 204(f)(2) of the Act remain subject to the provisions of section 204(f)(4)(B) of the Act and 8 CFR 204.4(i), as appropriate.

## PART 223—REENTRY PERMITS, REFUGEE TRAVEL DOCUMENTS, AND ADVANCE PAROLE DOCUMENTS

86. The authority citation for part 223 continues to read as follows:

Authority: 8 U.S.C. 1103, 1181, 1182, 1186a, 1203, 1225, 1226, 1227, 1251; Protocol Relating to the Status of Refugees, Nov. 1, 1968, 19 U.S.T. 6223 (TIAS) 6577; 8 CFR part 2.

8 CFR § 223.2

87. Section 223.2 is revised to read as follows:

8 CFR § 223.2

**§ 223.2 Application and processing.**

(a) Application. An applicant must submit an application for a reentry permit, refugee travel document, or advance parole on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.

(b) Filing eligibility. (1) Reentry permit. An applicant for a reentry permit must file such application while in the United States and in status as a lawful permanent resident or conditional permanent resident.

(2) Refugee travel document. (i) Except as provided in paragraph (b)(2)(ii) of this section, an applicant for a refugee travel document must submit the application while in the United States and in valid refugee status under section 207 of the Act, valid asylum status under section 208 of the Act or is a permanent resident who received such status as a direct result of his or her asylum or refugee status.

(ii) Discretionary authority to accept a refugee travel document application from an alien not within the United States. As a matter of discretion, the Service office with jurisdiction over a port-of-entry or pre-flight inspection location where the alien is seeking admission, or the overseas Service office where the alien is physically present, may accept and adjudicate an application for a refugee travel document from an alien who previously had been admitted to the United States as a refugee, or who previously had been granted asylum status in the United States, and who departed from the United States without having applied for such refugee travel document, provided the officer:

(A) Is satisfied that the alien did not intend to abandon his or her refugee or asylum status at the time of departure from the United States;

(B) The alien did not engage in any activities while outside the United States that would be inconsistent with continued refugee or asylum status; and

(C) The alien has been outside the United States for less than 1 year since his or her last departure.

(c) Ineligibility. (1) Prior document still valid. An application for a reentry permit or refugee travel document will be denied if the applicant was previously issued a reentry permit or refugee travel document which is still valid, unless it was returned to USCIS or it is demonstrated that it was lost.

(2) Extended absences. A reentry permit issued to a person who, since becoming a permanent resident or during the last five years, whichever is less, has been outside the United States for more than four years in the aggregate, shall be limited to a validity of one year, except that a permit with a validity of two years may be issued to:

(i) A permanent resident described in 8 CFR 211.1(a)(6) or (a)(7);

(ii) A permanent resident employed by a public international organization of which the United States is a member by treaty or statute, and his or her permanent resident spouse and children; or

(iii) A permanent resident who is a professional athlete who regularly competes in the United States and worldwide.

(3) Permanent resident entitled to nonimmigrant diplomatic or treaty status. A permanent resident entitled to nonimmigrant status under section 101(a)(15)(A), (E), or (G) of the Act because of occupational status may only be issued a reentry permit if the applicant executes and submits with the application, or has previously executed and submitted, a written waiver as required by 8 CFR part 247.

(d) Effect of travel before a decision is made. Departure from the United States before a decision is made on an application for a reentry permit or refugee travel document will not affect the application.

(e) Processing. USCIS may approve or deny a request for a reentry permit or refugee travel document as an exercise of discretion. If it approves the application, USCIS will issue an appropriate document.

(f) Effect on proceedings. Issuance of a reentry permit or refugee travel document to a person in exclusion, deportation, or removal proceedings shall not affect those proceedings.

(g) Appeal. Denial of an application for a reentry permit or refugee travel document may be appealed in accordance with 8 CFR 103.3.


**PART 235—INSPECTION OF PERSONS APPLYING FOR ADMISSION**

88. The authority citation for part 235 is revised to read as follows:

Authority: 8 U.S.C. 1101 and note, 1103, 1183, 1185 (pursuant to E.O. 13323, published January 2, 2004), 1201, 1224, 1225, 1226, 1228, 1365a note, 1379, 1731-32; Pub. L. 110-229, tit. VII, 122 Stat. 754; 8 U.S.C. 1185 note (Pub. L. 108-458, § 7209, 118 Stat. 3638).

 8 CFR § 235.3

**§ 235.3 [Amended]**

8 CFR § 235.3

89. In § 235.3, paragraph (b)(1)(i) is amended by revising the term "§ 1.1(q) of this chapter" to read "8 CFR 1.2".

 8 CFR § 235.8

**§ 235.8 [Amended]**

8 CFR § 235.8

90. In § 235.8, paragraph (e) is amended by revising the term "§ 1.1(q) of this chapter" to read "8 CFR 1.2".

## PART 236—APPREHENSION AND DETENTION OF INADMISSIBLE AND DEPORTABLE ALIENS; REMOVAL OF ALIENS ORDERED REMOVED

91. The authority citation for part 236 continues to read as follows:

Authority: 5 U.S.C. 301, 552, 552a; 8 U.S.C. 1103, 1182, 1224, 1225, 1226, 1227, 1231, 1362; 18 U.S.C. 4002, 4013(c)(4); 8 CFR part 2.

8 CFR § 236.2

### § 236.2 [Amended]

8 CFR § 236.2

92. In § 236.2, paragraph (a) is amended by revising the term "§ 103.5a(c) of this chapter" to read "8 CFR 103.8(c)".

8 CFR § 236.16

### § 236.16 [Amended]

8 CFR § 236.16

93. Section 236.16 is amended by revising the phrase "using Form I-131, Application for Travel Document" to read "in accordance with 8 CFR  *53791  223.2(a)"in the first sentence and revising the phrase "the district director" to read "USCIS" in the second sentence.

8 CFR § 236.18

### § 236.18 [Amended]

8 CFR § 236.18

94. In § 236.18, paragraph (b) is amended by revising the term "§ 103.5a of this chapter" to read "8 CFR 103.8(a)(2) wherever that term appears.

## PART 238—EXPEDITED REMOVAL OF AGGRAVATED FELONS

95. The authority citation for part 238 continues to read as follows:

Authority: 8 U.S.C. 1228; 8 CFR part 2.

8 CFR § 238.1

96. In § 238.1, paragraph (b)(2)(i) is amended by revising the term "§§ 103.5a(a)(2) and 103.5a(c)(2) of this chapter" to read "8 CFR 103.8".

## PART 240—VOLUNTARY DEPARTURE, SUSPENSION OF DEPORTATION AND SPECIAL RULE CANCELLATION OF REMOVAL

97. The heading for part 240 is revised as set forth above.

98. The authority citation for part 240 continues to read as follows:

Authority: 8 U.S.C. 1103, 1182, 1186a, 1224, 1225, 1226, 1227, 1251, 1252 note, 1252a, 1252b, 1362; sections 202 and 203, Pub. L. 105-100, 111 Stat. 2160, 2193; section 902, Pub. L. 105-277, 112 Stat. 2681; 8 CFR part 2.

8 CFR § 240.67

99. Section 240.67 is amended by revising paragraph (a) introductory text to read as follows:

8 CFR § 240.67

**§ 240.67 Procedure for interview before an asylum officer.**

(a) Fingerprinting requirements. USCIS will notify each applicant 14 years of age or older to appear for an interview only after the applicant has complied with fingerprinting requirements pursuant to 8 CFR 103.16, and USCIS has received a definitive response from the FBI that a full criminal background check has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:

* * * * *

**PART 241—APPREHENSION AND DETENTION OF ALIENS ORDERED REMOVED**

100. The authority citation for part 241 continues to read as follows:

Authority: 5 U.S.C. 301, 552, 552a; 8 U.S.C. 1103, 1182, 1223, 1224, 1225, 1226, 1227, 1228, 1231, 1251, 1253, 1255, 1330, 1362; 18 U.S.C. 4002, 4013(c)(4); Pub. L. 107-296, 116 Stat. 2135 (6 U.S.C. 101, et seq.); 8 CFR part 2.

8 CFR § 241.4

**§ 241.4 [Amended]**

8 CFR § 241.4

101. In § 241.4, paragraph (d)(2), first sentence is amended by revising the term "8 CFR 103.5a" to read "8 CFR 103.8".

8 CFR § 241.5

102. Section 241.5 is amended by revising paragraph (a)(5) to read as follows:

8 CFR § 241.5

**§ 241.5 Conditions of release after removal period.**

(a) * * *

(5) A requirement that the alien provide DHS with written notice of any change of address in the prescribed manner.

* * * * *

**PART 244—TEMPORARY PROTECTED STATUS FOR NATIONALS OF DESIGNATED STATES**

103. The authority citation for part 244 continues to read as follows:

Authority: 8 U.S.C. 1103, 1254, 1254a note, 8 CFR part 2.

8 CFR § 244.3

**§ 244.3 [Amended]**

8 CFR § 244.3

104. Section 244.3 is amended by:

a. Revising the term "the Service" to read "USCIS" in the first sentence in paragraph (b);

b. Removing the phrase "of grounds of inadmissibility on Form I-601 (Application for waiver of grounds of excludability)" in the second sentence in paragraph (b);

c. Revising the term "The Service" to read "USCIS" in paragraph (c) introductory text.

8 CFR § 244.4

**§ 244.4 [Amended]**

8 CFR § 244.4

105. In § 244.4, paragraph (b) is amended by revising the term "section 243(h)(2) of the Act" to read "section 208(b)(2)(A) of the Act".

8 CFR § 244.5

## § 244.5 [Amended]

8 CFR § 244.5

106. In § 244.5, paragraph (a) is amended by revising the term "the Attorney General" to read "DHS" wherever the term appears.

8 CFR § 244.6

107. Section 244.6 is revised to read as follows:

8 CFR § 244.6

## § 244.6 Application.

(a) An application for Temporary Protected Status must be submitted in accordance with the form instructions, the applicable country-specific Federal Register notice that announces the procedures for TPS registration or re-registration, and 8 CFR 103.2, except as otherwise provided in this section, with the appropriate fees and biometric information as described in 8 CFR 103.7(b)(1), 103.16, and 103.17.

(b) An applicant for TPS may also request employment authorization pursuant to 8 CFR 274a. Those applicants between the ages of 14 and 65 who are not requesting authorization to work will not be charged a fee for an application for employment authorization.

8 CFR § 244.7

## § 244.7 [Amended]

8 CFR § 244.7

108. Section 244.7 is amended by:

a. Revising the phrase "Form I-821, Application for Temporary Protected Status" to read "the form designated by USCIS with any prescribed fees and in accordance with the form instructions" in paragraph (a); and

b. Revising the term "Attorney General" to read "DHS" in paragraph (b).

8 CFR § 244.9

## § 244.9 [Amended]

8 CFR § 244.9

109. In § 244.9, paragraph (a)(4) is amended by revising the phrase "Form I-551 or Form I-94" to read "evidence of admission for lawful permanent residence or nonimmigrant status".

8 CFR § 244.10

110. Section 244.10 is amended by:

a. Revising the section heading; and

b. Revising paragraphs (a), (b) (c) and (d).

The revisions read as follows:

8 CFR § 244.10

**§ 244.10 Decision and appeal.**

(a) Temporary treatment benefits. USCIS will grant temporary treatment benefits to the applicant if the applicant establishes prima facie eligibility for Temporary Protected Status in accordance with 8 CFR 244.5.

(b) Temporary Protected Status. Upon review of the evidence presented, USCIS may approve or deny the application for Temporary Protected Status in the exercise of discretion, consistent with the standards for eligibility in 8 CFR 244.2, 244.3, and 244.4.

(c) Denial. The initial decision to deny Temporary Protected Status, a waiver of inadmissibility, or temporary treatment benefits shall be in writing served in person or by mail to the alien's most recent address provided to the Service and shall state the reason(s) for the denial. Except as otherwise provided in this section, the alien will be given written notice of his or her right to appeal. If an appeal is filed, the administrative record shall be forwarded to the USCIS AAO for review and decision, except as otherwise provided in this section.

(1) If the basis for the denial of the Temporary Protected Status constitutes a ground for deportability or inadmissibility which renders the alien ineligible for Temporary Protected Status under § 244.4 or inadmissible under § 244.3(c), the decision shall **\*53792** include a charging document which sets forth such ground(s).

(2) If such a charging document is issued, the alien shall not have the right to appeal the USCIS decision denying Temporary Protected Status as provided in 8 CFR 103.3. However, the decision will also apprise the alien of his or her right to a de novo determination of his or her eligibility for Temporary Protected Status in removal proceedings pursuant to section 240 of the Act and 8 CFR 1244.18.

(d) Administrative appeal. The appellate decision will be served in accordance with 8 CFR 103.8. If the appeal is dismissed, the decision must state the reasons for dismissal.

(1) If the appeal is dismissed on appeal under 8 CFR 244.18(b), the decision shall also apprise the alien of his or her right to a de novo determination of eligibility for Temporary Protected Status in removal proceedings pursuant to section 240 of the Act and 8 CFR 1244.18.

(2) If the appeal is dismissed, USCIS may issue a charging document if no charging document is presently filed with the Immigration Court.

(3) If a charging document has previously been filed or is pending before the Immigration Court, either party may move to re-calendar the case after the administrative appeal is dismissed.

 * * * * *8 CFR § 244.11

**§ 244.11 [Amended]**
8 CFR § 244.11
111. Section 244.11 is amended by revising the term "§ 3.3 of this chapter" to read "8 CFR 1003".
 8 CFR § 244.12

**§ 244.12 [Amended]**
8 CFR § 244.12
112. Section 244.12, is amended by:

a. Revising the term "the INS" to read "USCIS" in paragraphs (a) and (c); and

b. Revising the phrase "appealed to the Administrative Appeals Unit" to read "pending administrative appeal" in paragraph (d).

8 CFR § 244.14

**§ 244.14 [Amended]**
8 CFR § 244.14

113. Section 244.14 is amended by:

a. Revising the term "director" to read "USCIS" in paragraph (a) heading;

b. Revising the term "The director" to read "USCIS" in paragraph (a) introductory text;

c. Revising the term "the district director" to read "USCIS" in paragraph (a)(2) last sentence;

d. Revising the term "Attorney General" to read "DHS" in paragraph (a)(3);

e. Revising the term "director" to read "USCIS" in paragraph (b) heading; and by

f. Revising the term "§ 240.14(a)(3)" to read "8 CFR 244.14(a)(3)" and the term "§ 103.5a of this chapter" to read "8 CFR 103.8(a)(2)" in paragraph (b)(1).

8 CFR § 244.16

**§ 244.16 [Amended]**
8 CFR § 244.16

114. In § 244.16, the term "the Department of Justice" is revised to read "DHS".

8 CFR § 244.17

115. Section 244.17 is revised to read as follows:

8 CFR § 244.17

**§ 244.17 Periodic registration.**
(a) Aliens granted Temporary Protected Status must re-register periodically in accordance with USCIS instructions. Such registration applies to nationals of those foreign states designated or redesignated for more than one year by DHS. Applicants for periodic re-registration must apply during the registration period provided by USCIS. Re-registering applicants will not need to re-pay the TPS application fee that was required for initial registration except that aliens requesting employment authorization must submit the application fee for employment authorization. The biometric service fee described in 103.7(b), or an approved fee waiver, will be required of applicants age 14 and over. By completing the application, applicants attest to their continuing eligibility. Such applicants do not need to submit additional supporting documents unless USCIS requests them to do so.

(b) If an alien fails to register without good cause, USCIS will withdraw Temporary Protected Status. USCIS may, for good cause, accept and approve an untimely registration request.

8 CFR § 244.18

116. Section 244.18 is amended by revising paragraphs (b) and (d) to read as follows:

8 CFR § 244.18

**§ 244.18 Issuance of charging documents; detention.**

* * * * *

(b) The filing of the charging document by DHS with the Immigration Court renders inapplicable any other administrative, adjudication or review of eligibility for Temporary Protected Status. The alien shall have the right to a de novo determination of his or her eligibility for Temporary Protected Status in removal proceedings pursuant to section 240 of the Act and 8 CFR 1244.18. Review by the Board of Immigration Appeals shall be the exclusive administrative appellate review procedure. If an appeal is already pending before the Administrative Appeals Office (AAO), USCIS will notify the AAO of the filing of the charging document, in which case the pending appeal shall be dismissed and the record of proceeding returned to the jurisdiction where the charging document was filed.

* * * * *

(d) An alien who is determined by USCIS deportable or inadmissible upon grounds which would have rendered the alien ineligible for such status as provided in 8 CFR 244.3(c) and 8 CFR 244.4 may be detained under the provisions of this chapter pending removal proceedings. Such alien may be removed from the United States upon entry of a final order of removal.


**PART 245—ADJUSTMENT OF STATUS TO THAT OF PERSON ADMITTED FOR PERMANENT RESIDENCE**

117. The authority citation for part 245 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1182, 1255; Pub. L. 105-100, section 202, 111 Stat. 2160, 2193; Pub. L. 105-277, section 902, 112 Stat. 2681; Pub. L. 110-229, tit. VII, 122 Stat. 754; 8 CFR part 2.

8 CFR § 245.1

118. Section 245.1 is amended by:

a. Revising the term to "section 214(k)" to read: "section 214(l)" in the last sentence in paragraph (c)(2);

b. Removing and reserving paragraph (e)(2);

c. Revising the third sentence in paragraph (g)(1); and by

d. Removing the fourth sentence in paragraph (g)(1).

The revision reads as follows:

8 CFR § 245.1

**§ 245.1 Eligibility.**

* * * * *

(g) * * *

(1) * * * A preference immigrant visa is considered available for accepting and processing if the applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current). * * *

* * * * * 8 CFR § 245.2

**§ 245.2 [Amended]**

8 CFR § 245.2

119. Section 245.2 is amended by removing the phrase ", except when the applicant has established eligibility for the benefits of Public Law 101-238" in the second sentence in paragraph (a)(5)(ii).

8 CFR § 245.7

120. In § 245.7, paragraph (a) is revised to read as follows:

§ 245.7 Adjustment of status of certain Soviet and Indochinese parolees under the Foreign Operations Appropriations Act for Fiscal Year 1990 (Pub. L. 101-167). (a) Application. Each person applying for benefits under section 599E of Public Law 101-167, 103 Stat. 1195, 1263, must file an application on the form prescribed by **53793** USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.
* * * * *8 CFR § 245.9

§ 245.9 [Removed and Reserved]
8 CFR § 245.9
121. Section 245.9 is removed and reserved.
8 CFR § 245.10
122. In § 245.10, paragraph (n)(2) is revised to read as follows:
8 CFR § 245.10

§ 245.10 Adjustment of status upon payment of additional sum under Public Law 103-317.
* * * * *
(n) * * *

(2) To demonstrate physical presence on December 21, 2000, the alien may submit copies of documents issued by the former INS or EOIR such as arrival-departure forms or notices to appear in immigration court.
* * * * *8 CFR § 245.11
123. In § 245.11, remove the last two sentences in paragraph (f) and add a new sentence to read as follows:
8 CFR § 245.11

§ 245.11 Adjustment of aliens in S nonimmigrant classification.
* * * * *
(f) * * * The applicant may request employment authorization or permission to travel outside the United States while the application is pending by filing an application pursuant to 8 CFR 274a.13 or 8 CFR 223.2.
* * * * *8 CFR § 245.12

§ 245.12 [Removed and Reserved]
8 CFR § 245.12
124. Section 245.12 is removed and reserved.
8 CFR § 245.13

§ 245.13 [Removed and Reserved]
8 CFR § 245.13
125. Section 245.13 is removed and reserved.
8 CFR § 245.15
126. Section 245.15 is amended by:

a. Revising the phrase "Advance Authorization for Parole (Form I-512)" to read "advance parole authorization" and revising the phrase "Advance Authorization for Parole" to read "authorization" in paragraph (c)(4)(ii);

b. Revising paragraph (g)(1);

c. Revising paragraph (n)(1);

d. Revising the phrase "the Director of the Nebraska Service Center verifies that Service" to read "USCIS verifies that DHS" and by revising the term "the Director may approve" to read "USCIS may approve" in the first sentence in paragraph (n)(2);

e. Revising the term "the Service" to read "USCIS" in the second sentence in paragraph (n)(2);

f. Revising paragraph (s)(1);

g. Revising paragraph (t)(1);

h. Revising the phrase "an Application for Travel Document (Form I-131) with the Nebraska Service Center, at P.O. Box 87245, Lincoln, NE 68501-7245" to read "a request on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions" in the first sentence of paragraph (t)(2)(i); and

i. Revising the term "Form I-485" to read "application for adjustment of status" in the second sentence in paragraph (t)(2)(i).

The revisions read as follows:

8 CFR § 245.15

**§ 245.15** Adjustment of Status of Certain Haitian Nationals under the Haitian Refugee Immigrant Fairness Act of 1998 (HRIFA).
* * * * *
(g) * * *

(1) Filing of applications with USCIS. USCIS has jurisdiction over all applications for the benefits of section 902 of HRIFA as a principal applicant or as a dependent under this section, except for applications filed by aliens who are in pending immigration proceedings as provided in paragraph (g)(2) of this section. All applications filed with USCIS for the benefits of section 902 of HRIFA must be submitted on the form designated by USCIS with the fees prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions. After proper filing of the application, USCIS will instruct the applicant to appear for biometrics collection as prescribed in 8 CFR 103.16.
* * * * *
(n) * * *

(1) Application for employment authorization. An applicant for adjustment of status under section 902 of HRIFA who wishes to obtain initial or continued employment authorization during the pendency of the adjustment application must file an application on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions. The applicant may submit the application either concurrently with or subsequent to the filing of the application for HRIFA benefits.
* * * * *
(s) Action of immigration judge upon referral of decision by a notice of certification. (1) General. Upon the referral by a notice of certification of a decision to deny the application, in accordance with paragraph (r)(3) of this section, the immigration judge will conduct a hearing to determine whether the alien is eligible for adjustment of status under section 902 of HRIFA in accordance with this paragraph (s)(1).
* * * * *

(t) * * *

(1) Travel from and return to the United States while the application for adjustment of status is pending. If an applicant for benefits under section 902 of HRIFA desires to travel outside, and return to, the United States while the application for adjustment of status is pending, he or she must file a request for advance parole authorization on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions. Unless the applicant files an advance parole request prior to departing from the United States and USCIS approves such request, his or her application for adjustment of status under section 902 of HRIFA is deemed to be abandoned as of the moment of departure. Parole may only be authorized pursuant to the authority contained in, and the standards prescribed in, section 212(d)(5) of the Act.

* * * * *8 CFR § 245.18

127. Section 245.18 is amended by:

a. Revising the section heading;

b. Revising paragraph (d)(1);

c. Revising the term "the Service" to read "USCIS" in paragraph (d)(2); and

d. Revising the last sentence in paragraph (k).

The revisions read as follows:

8 CFR § 245.18

**§ 245.18 Physicians with approved employment-based petitions serving in a medically underserved area or a Veterans Affairs facility.**

* * * * *

(d) Employment authorization. (1) Once USCIS has approved a petition described in paragraph (a) of this section, the alien physician may apply for permanent residence and employment authorization on the forms designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.

* * * * *

(k) * * * Such physicians may apply for advance parole on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.

* * * * *8 CFR § 245.20

**§ 245.20 [Removed and Reserved]**

8 CFR § 245.20

128. Section 245.20 is removed and reserved.

8 CFR § 245.21

129-130. Section 245.21 is amended by:

a. Adding the word "and" at the end of paragraph (a)(3);

b. Removing paragraph (a)(4);

c. Redesignating paragraph (a)(5) as paragraph (a)(4);

Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01

d. Revising paragraph (b);

e. Revising the second sentence in paragraph (d)(1);

 **\*53794**  f. Revising paragraph (d)(2);

g. Revising the last sentence in paragraph (f);

h. Revising paragraph (h);

i. Revising paragraph (i);

j. Revising the terms, "Service" and "Service's to read "USCIS'" in paragraph (j);

k. Removing paragraph (m); and

l. By revising the terms "The Service" and "the Service" to read "USCIS" wherever the terms appear in the following paragraphs:

i. Paragraph (a) introductory text;

ii. Paragraph (c);

iii. Paragraph (d) introductory text;

iv. Paragraph (d)(4);

v. Paragraph (g)(3);

vi. Paragraph (j);

vii. Paragraph (k); and

viii. Paragraph (l).

The revisions read as follows:
 8 CFR § 245.21

**§ 245.21 Adjustment of status of certain nationals of Vietnam, Cambodia, and Laos.**
\* \* \* \* \*
(b) Application. An applicant must submit an application on the form designated by USCIS with the fee specified in 8 CFR 103.7(b)(1) and in accordance with the form instructions. Applicants who are 14 through 79 years of age must also submit the biometrics service fee described in 8 CFR 103.17.
 \* \* \* \* \*
(d) \* \* \*

(1) * * * An alien who is eligible for adjustment of status under section 586 of Public Law 106-429 may request a stay of removal during the pendency of the application. * * *

(2) DHS will exercise its discretion not to grant a stay of removal, deportation, or exclusion with respect to an alien who is inadmissible on any of the grounds specified in paragraph (m)(3) of this section, unless there is substantial reason to believe that USCIS will grant the necessary waivers of inadmissibility.
* * * * *

(f) * * * In order to obtain a waiver for any of these grounds, the applicant must submit an application on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.
* * * * *

(h)  Employment  authorization.  Applicants  who  want  to  obtain  employment  authorization  based  on  a  pending application for adjustment of status under this section may apply on the form specified by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.

(i) Travel while an application to adjust status is pending. An applicant who wishes to travel outside the United States while the application is pending must obtain advance permission by filing the application specified by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.
* * * * * 8 CFR § 245.22

131. In § 245.22, paragraph (c) is revised to read as follows:
 8 CFR § 245.22

**§ 245.22** Evidence to demonstrate an alien's physical presence in the United States on a specific date.
* * * * *

(c) DHS-issued documentation. An applicant for permanent residence may demonstrate physical presence by submitting DHS-issued (or predecessor agency-issued) documentation such as an arrival-departure form or notice to appear in immigration proceedings.
* * * * *

**PART 245a—ADJUSTMENT OF STATUS TO THAT OF PERSONS ADMITTED FOR TEMPORARY OR PERMANENT RESIDENT STATUS UNDER SECTION 245A OF THE IMMIGRATION AND NATIONALITY ACT**

132. The authority citation for part 245a continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1255a, and 1255a note.

133. The heading for part 245a is revised as set forth above.
 8 CFR § 245a.4

**§ 245a.4** [Amended]
8 CFR § 245a.4

134. In § 245a.4, paragraph (b)(16), third sentence is amended by revising the term "§ 103.5a(b) of this Act" to read "8 CFR 103.8(b)".
 8 CFR § 245a.12

**§ 245a.12** [Amended]
8 CFR § 245a.12

135. In § 245a.12, paragraph (b) introductory text, third sentence is amended by revising the term "fingerprinting as prescribed in § 103.2(e) of this chapter" to read "fingerprinting as prescribed in 8 CFR 103.16".

8 CFR § 245a.37

§ 245a.37 [Amended]
8 CFR § 245a.37
136. In § 245a.37, paragraph (b) is amended by revising the term "§ 103.5a of this chapter" to read "8 CFR 103.8" wherever that term appears.

## PART 248—CHANGE OF NONIMMIGRANT CLASSIFICATION
137. The authority citation for part 248 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1184, 1258; 8 CFR part 2.
8 CFR § 248.1

§ 248.1 [Amended]
8 CFR § 248.1
138. Section 248.1 is amended by:

a. Revising the term "the Service" to read "USCIS" in paragraph (b) introductory text;

b. Revising the term "the Service" to read "USCIS" in paragraph (b)(1);

c. Revising the phrase "The district director or service center director shall" to read "USCIS will" in the second sentence in paragraph (c)(1);

d. Revising the phrase "The district director or service center director" to read "USCIS" in the last sentence in paragraph (c)(3); and

e. Removing the phrase "before the Service" in the last sentence in paragraph (c)(3).
8 CFR § 248.3
139. Section 248.3 is amended by:

a. Adding introductory text;

b. Revising paragraph (a);

c. Revising paragraph (b);

d. Revising the phrase "Form I-539 and be accompanied by a Form I-566, completed and endorsed in accordance with the instructions on that form" to read "the prescribed application accompanied by the appropriate endorsement from the Department of State recommending the change of status" in the second sentence in paragraph (c);

e. Removing and reserving paragraph (d);

f. Revising the term "sections 101(a)(15)(E), (H), (I), (J), (L), or (Q)(ii) of the Act" to read "sections 101(a)(15)(E), (H), (I), (J), or (L) of the Act" in paragraph (e)(2);

g. Revising the term "the district director" to read "USCIS" in the last sentence in paragraph (f); and

h. Revising the phrase "Form I-539, Application to Extend/Change Nonimmigrant Status, with the appropriate fee, and Form I-854, Inter-Agency Alien Witness and Informant Record, with attachments" to read "the forms designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions" in paragraph (h) introductory text.

The revisions read as follows:
8 CFR § 248.3

§ 248.3 Petition and application.
Requests for a change of status must be filed on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b) and in accordance with the form instructions.

(a) Petition by employer. An employer must submit a petition for a change of status to E-1 treaty trader, E-2 treaty investor, H-1C, H-1B, H-2A, H-2B, H-3, L-1, O-1, O-2, P-1, P-2, P-3, Q-1, R-1, or TN nonimmigrant.

(b) Application by nonimmigrant. (1) Individual applicant. Any nonimmigrant who seeks to change status to:

(i) A dependent nonimmigrant classification as the spouse or child of **\*53795** a principal whose nonimmigrant classification is listed in paragraph (a) of this section, or

(ii) Any other nonimmigrant classification not listed in paragraph (a) of this section must apply for a change of status on his or her own behalf.

(2) Multiple applicants. More than one person may be included in an application where the co-applicants are all members of a single family group and either all hold the same nonimmigrant status or one holds a nonimmigrant status and the co-applicants are his or her spouse and/or children who hold derivative nonimmigrant status based on the principal's nonimmigrant status.
\* \* \* \* \*

## PART 264—REGISTRATION AND FINGERPRINTING OF ALIENS IN THE UNITED STATES
140. The authority citation for part 264 continues to read as follows:

Authority: 8 U.S.C. 1103, 1201, 1201a, 1301-1305; 8 CFR part 2.
8 CFR § 264.1
141. Section 264.1 is amended by:

a. Removing the entry for Form "I-485A" from the table in paragraph (a);

b. Removing the entries for Forms "I-688", "I-688A" and "I-688B" from the table in paragraph (b);

c. Adding the entries for "Form I-862" and "Form I-863" in proper numerical sequence in the table in paragraph (b);

d. Revising paragraph (c);

e. Revising the term "Service" to read "USCIS" in paragraph (d);

f. Revising paragraph (g); and

g. Removing paragraphs (h) and (i).

The revisions read as follows:

8 CFR § 264.1

**§ 264.1 Registration and fingerprinting.**

* * * * *

(b) * * *


**Form No. and Class**

* * * * *

Form I-862, Notice to Appear    Aliens against whom removal proceedings are being instituted.

Form I-863, Notice of Referral to Immigration Judge    Aliens against whom removal proceedings are being instituted.

* * * * *

(c) Replacement of alien registration. Any alien whose registration document is not available for any reason must immediately apply for a replacement document in the manner prescribed by USCIS.

* * * * *

(g) Registration and fingerprinting of children who reach age 14. Within 30 days after reaching the age of 14, any alien in the United States not exempt from alien registration under the Act and this chapter must apply for registration and fingerprinting, unless fingerprinting is waived under paragraph (e) of this section, in accordance with applicable form instructions.

(1) Permanent residents. If such alien is a lawful permanent resident of the United States and is temporarily absent from the United States when he reaches the age of 14, he must apply for registration and provide a photograph within 30 days of his or her return to the United States in accordance with applicable form instructions. The alien, if a lawful permanent resident of the United States, must surrender any prior evidence of alien registration. USCIS will issue the alien new evidence of alien registration.

(2) Others. In the case of an alien who is not a lawful permanent resident, the alien's previously issued registration document will be noted to show that he or she has been registered and the date of registration.

8 CFR § 264.2

**§ 264.2 [Amended]**

8 CFR § 264.2

142. In § 264.2, paragraph (d) is amended by revising the term "be fingerprinted on Form FD-258, Applicant Card, as prescribed in § 103.2(e) of this chapter" to read "be fingerprinted as prescribed in 8 CFR 103.16."

8 CFR § 264.5

143. Section 264.5 is amended by:

a. Revising paragraph (a);

b. Revising the term "Form I-90" to read "the designated form" wherever the term appears in paragraphs (c)(1) and (2);

**Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01**

c. Revising paragraph (d) introductory text;

d. Revising paragraph (e);

e. Revising paragraph (g) and by

f. Adding paragraphs (h) and (i).

The revisions read as follows:

 8 CFR § 264.5

**§ 264.5** **Application for replacement Permanent Resident Card.**

(a) Filing instructions. A request to replace a Permanent Resident Card must be filed in accordance with the appropriate form instructions and with the fee specified in 8 CFR 103.7(b)(1); except that no fee is required for an application filed pursuant to paragraphs (b)(7) through (9) of this section, or paragraphs (d)(2) or (4) of this section.

* * * * *

(d) Conditional permanent residents required to file. A conditional permanent resident whose card is expiring may apply to have the conditions on residence removed in accordance with 8 CFR 216.4 or 8 CFR 216.6. A conditional resident who seeks to replace a permanent resident card that is not expiring within 90 days may apply for a replacement card on the form prescribed by USCIS:

* * * * *

(e) Supporting documentation. (1) The prior Permanent Resident Card must be surrendered to USCIS if a new card is being requested in accordance with paragraphs (b)(2) through (5) and (b)(8) and (9) of this section.

(2) A request to replace a Permanent Resident Card filed pursuant to paragraph (b)(4) of this section must include evidence of the name change such as a court order or marriage certificate.

(3) A request to replace a Permanent Resident Card in order to change any other biographic data on the card must include documentary evidence verifying the new data.

* * * * *

(g) Eligibility for evidence of permanent residence while in deportation, exclusion, or removal proceedings. A person in deportation, exclusion, or removal proceedings is entitled to evidence of permanent resident status until ordered excluded, deported, or removed. USCIS will issue such evidence in the form of a temporary permanent resident document that will remain valid until the proceedings are concluded. Issuance of evidence of permanent residence to an alien who had permanent resident status when the proceedings commenced shall not affect those proceedings.

(h) Temporary evidence of registration. USCIS may issue temporary evidence of registration and lawful permanent resident status to a lawful permanent resident alien who is departing temporarily from the United States and has applied for issuance of a replacement permanent resident card if USCIS is unable to issue and deliver such card prior to the alien's contemplated return to the United States. The alien must surrender such temporary evidence upon receipt of his or her permanent resident card.

(i) Waiver of requirements. USCIS may waive the photograph, in person filing, and fingerprinting requirements of this section in cases of confinement due to advanced age or physical infirmity.

 8 CFR § 264.6

144. Section 264.6 is revised to read as follows:

8 CFR § 264.6

**§ 264.6 Application for a nonimmigrant arrival-departure record.**

(a) Eligibility. USCIS may issue a new or replacement arrival-departure record to a nonimmigrant who seeks:

 **\*53796**  (1) To replace a lost or stolen record;

(2) To replace a mutilated record; or

(3) Was not issued an arrival-departure record pursuant to 8 CFR 235.1(h)(1)(i), (iii), (iv), (v), or (vi) when last admitted as a nonimmigrant, and has not since been issued such record but now requires one.

(b) Application. A nonimmigrant may request issuance or replacement of a nonimmigrant arrival-departure record by applying on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions.

(c) Processing. A pending application filed under paragraph (a) of this section is temporary evidence of registration. If the application is approved, USCIS will issue an arrival-departure document. There is no appeal from the denial of this application.


**PART 265—NOTICES OF ADDRESS**

145. The authority citation for part 265 is revised to read as follows:

Authority: 8 U.S.C. 1103 and 1305.

 8 CFR § 265.1

146. Section 265.1 is revised to read as follows:

 8 CFR § 265.1

**§ 265.1 Reporting change of address.**

Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register under section 262 of the Act must report each change of address and new address within 10 days of such change in accordance with instructions provided by USCIS.


**PART 270—PENALTIES FOR DOCUMENT FRAUD**

147. The authority citation for part 270 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, and 1324c; Pub. L. 101-410, 104 Stat. 890, as amended by Pub. L. 104-134, 110 Stat. 1321.

 8 CFR § 270.2

**§ 270.2 [Amended]**

8 CFR § 270.2

148. Section 270.2 is amended by revising the term "§ 103.5a(a)(2) of this chapter" to read "8 CFR 103.8(a)(2)" wherever that term appears in the following places:

a. Paragraph (d) and

b. Paragraph (i).

**PART 274a—CONTROL OF EMPLOYMENT OF ALIENS**

149. The authority citation for part 274a continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1324a; 8 CFR part 2.

 8 CFR § 274a.12

150. Section 274a.12 is amended by:

a. Revising the term "BCIS" to read "USCIS" wherever that term appears in paragraph (a)(5);

b. Revising paragraph (b)(6)(iv);

c. Revising the term "BCIS" to read "USCIS" in paragraph (c) introductory text;

d. Revising paragraph (c)(1);

e. Revising paragraph (c)(4); and

f. Removing and reserving paragraph (c)(23).

The revisions read as follows:

 8 CFR § 274a.12

**§ 274a.12 Classes of aliens authorized to accept employment.**

* * * * *

(b) * * *

(6) * * *

(iv) An employment authorization document under paragraph (c)(3)(i)(C) of this section based on a 17-month STEM Optional Practical Training extension, and whose timely filed employment authorization request is pending and employment authorization issued under paragraph (c)(3)(i)(B) of this section has expired. Employment is authorized beginning on the expiration date of the authorization issued under paragraph (c)(3)(i)(B) of this section and ending on the date of USCIS' written decision on the current employment authorization request, but not to exceed 180 days; or

* * * * *

(c) * * *

(1) An alien spouse or unmarried dependent child; son or daughter of a foreign government official (A-1 or A-2) pursuant to 8 CFR 214.2(a)(2) and who presents an endorsement from an authorized representative of the Department of State;

* * * * *

(4) An alien spouse or unmarried dependent child; son or daughter of a foreign government official (G-1, G-3 or G-4) pursuant to 8 CFR 214.2(g) and who presents an endorsement from an authorized representative of the Department of State;

* * * * *8 CFR § 274a.13

151. Section 274a.13 is amended by:

a. Revising paragraph (a);

b. Removing the term "INS" in paragraph (b); and

c. Revising paragraph (d).

The revision reads as follows:
   8 CFR § 274a.13

§ 274a.13 **Application for employment authorization.**
(a) Application. Aliens authorized to be employed under sections 274a.12(a)(3), (4), (6) through (8), (a)(10) through (15), and (a)(20) must file an application in order to obtain documentation evidencing this fact.

(1) Aliens who may apply for employment authorization under 8 CFR 274a.12(c), except for those who may apply under 8 CFR 274a.12(c)(8), must apply on the form designated by USCIS with the fee prescribed in 8 CFR 103.7(b)(1) and in accordance with the form instructions. The approval of applications filed under 8 CFR 274a.12(c), except for 8 CFR 274a.12(c)(8), are within the discretion of USCIS. Where economic necessity has been identified as a factor, the alien must provide information regarding his or her assets, income, and expenses.

(2) An initial employment authorization request for asylum applicants under 8 CFR 274a.12(c)(8) must be filed on the form designated by USCIS in accordance with the form instructions. The applicant also must submit a copy of the underlying application for asylum or withholding of deportation, together with evidence that the application has been filed in accordance with 8 CFR 208.3 and 208.4. An application for an initial employment authorization or for a renewal of employment authorization filed in relation to a pending claim for asylum shall be adjudicated in accordance with 8 CFR 208.7. An application for renewal or replacement of employment authorization submitted in relation to a pending claim for asylum, as provided in 8 CFR 208.7, must be filed, with fee or application for waiver of such fee.
   * * * * *
(d) Interim employment authorization. USCIS will adjudicate the application within 90 days from the date of receipt of the application, except in the case of an initial application for employment authorization under 8 CFR 274a.12(c)(8), which is governed by paragraph (a)(2) of this section, and 8 CFR 274a.12(c)(9) in so far as it is governed by 8 CFR 245.13(j) and 245.15(n). Failure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days. Such authorization will be subject to any conditions noted on the employment authorization document. However, if USCIS adjudicates the application prior to the expiration date of the interim employment authorization and denies the individual's employment authorization application, the interim employment authorization granted under this section will automatically terminate as of the date of the adjudication and denial.

**PART 287—FIELD OFFICERS; POWERS AND DUTIES**
152. The authority citation for part 287 continues to read as follows:

Authority: 8 U.S.C. 1103, 1182, 1225, 1226, 1251, 1252, 1357; Homeland Security Act of **\*53797** 2002, Pub. L. 107-296 (6 U.S.C. 1, et seq.); 8 CFR part 2.
   8 CFR § 287.5

§ 287.5 **[Amended]**

Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01

8 CFR § 287.5

153. Section 287.5 is amended by:

a. Removing the phrase "as defined in 8 CFR 103.1(b)" in paragraph (a) introductory text;

b. Revising the term "the BCIS" to read "USCIS" in paragraph (c)(1)(viii); and

c. Revising the term "the BCIS" to read "USCIS" in paragraph (c)(2)(viii).

8 CFR § 287.7

**§ 287.7 [Amended]**

8 CFR § 287.7

154. In § 287.7, paragraph (b)(8) is amended by revising the term "the BCIS" to read "USCIS".

## PART 292—REPRESENTATION AND APPEARANCES

155. The authority citation for part 292 continues to read as follows:

Authority: 8 U.S.C. 1103, 1252b, 1362.

8 CFR § 292.1

**§ 292.1 [Amended]**

8 CFR § 292.1

156. Section 292.1 is amended by revising the terms "§ 1.1(f) of this chapter" and "8 CFR 1.1(f)" to read "8 CFR 1.2" wherever the term appears in the following places:

a. Paragraph (a)(1); and

b. Paragraph (a)(6) first sentence.

8 CFR § 292.3

**§ 292.3 [Amended]**

8 CFR § 292.3

157. Section 292.3 is amended by revising the terms "8 CFR 1.1(f)" and "8 CFR 1.1(j)", to read "8 CFR 1.2" in paragraph (a)(2);

8 CFR § 292.4

158. Section 292.4 is amended by revising paragraph (b) to read as follows:

8 CFR § 292.4

**§ 292.4 Appearances.**

* * * * *

(b) A party to a proceeding and his or her attorney or representative will be permitted to examine the record of proceeding in accordance with 6 CFR part 5.

## PART 299—IMMIGRATION FORMS

159. The authority citation for part 299 continues to read as follows:

Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01

Authority: 8 U.S.C. 1101 and note, 1103; 8 CFR Part 2.

8 CFR § 299.1

160. Section 299.1 is revised to read as follows:

8 CFR § 299.1

## § 299.1 Prescribed forms.

A listing of USCIS, ICE, and CBP approved forms referenced in chapter I can be viewed on the Office of Management and Budget Web site at http://www.reginfo.gov. A listing of approved USCIS forms can also be viewed on its Internet Web site.

8 CFR § 299.3

## § 299.3 [Removed and Reserved]

8 CFR § 299.3

161. Section 299.3 is removed and reserved.

8 CFR § 299.5

## § 299.5 [Removed and Reserved]

8 CFR § 299.5

162. Section 299.5 is removed and reserved.


## PART 301—NATIONALS AND CITIZENS OF THE UNITED STATES AT BIRTH

163. The authority citation for part 301 continues to read as follows:

Authority: 8 U.S.C. 1103, 1401; 8 CFR part 2.

8 CFR § 301.1

164. Section 301.1 is amended by revising paragraph (a)(1) to read as follows:

8 CFR § 301.1

## § 301.1 Procedures.

(a) * * *

(1) As provided in 8 CFR part 341, a person residing in the United States who desires to be documented as a United States citizen pursuant to section 301(h) of the Act may apply for a passport at a United States passport agency or may submit an application on the form specified by USCIS in accordance with the form instructions and with the fee prescribed by 8 CFR 103.7(b)(1). The applicant will be notified when and where to appear before a USCIS officer for examination on his or her application.

* * * * *


## PART 310—NATURALIZATION AUTHORITY

165. The authority citation for part 310 continues to read as follows:

Authority: 8 U.S.C. 1103, 1421, 1443, 1447, 1448; 8 CFR 2.1.

8 CFR § 310.2

## § 310.2 [Amended]

8 CFR § 310.2

166. Section 310.2, first sentence, is amended by revising the term "The Service" to read "USCIS" and the term "Service district" to read "Service district, as defined in 8 CFR 316.1,"

## PART 312—EDUCATIONAL REQUIREMENTS FOR NATURALIZATION

167. The authority citation for part 312 continues to read as follows:

Authority: 8 U.S.C. 1103, 1423, 1443, 1447, 1448.

8 CFR § 312.1

168. Section 312.1 is amended by revising paragraph (c) to read as follows:

8 CFR § 312.1

### § 312.1 Literacy requirements.

* * * * *

(c) Literacy examination. (1) Verbal skills. The ability of an applicant to speak English will be determined by a designated immigration officer from the applicant's answers to questions normally asked in the course of the examination.

(2) Reading and writing skills. Except as noted in 8 CFR 312.3, an applicant's ability to read and write English must be tested in a manner prescribed by USCIS. USCIS will provide a description of test study materials and testing procedures on the USCIS Internet Web site.

8 CFR § 312.2

169. Section 312.2 is amended by revising paragraph (c) to read as follows:

8 CFR § 312.2

### § 312.2 Knowledge of history and government of the United States.

* * * * *

(c) History and government examination. (1) Procedure. The examination of an applicant's knowledge of the history and form of government of the United States must be given orally in English by a designated immigration officer, except:

(i) If the applicant is exempt from the English literacy requirement under 8 CFR 312.1(b), the examination may be conducted in the applicant's native language with the assistance of an interpreter selected in accordance with 8 CFR 312.4 but only if the applicant's command of spoken English is insufficient to conduct a valid examination in English;

(ii) The examination may be conducted in the applicant's native language, with the assistance of an interpreter selected in accordance with 8 CFR 312.4, if the applicant is required to satisfy and has satisfied the English literacy requirement under 8 CFR 312.1(a), but the officer conducting the examination determines that an inaccurate or incomplete record of the examination would result if the examination on technical or complex issues were conducted in English, or

(iii) The applicant has met the requirements of 8 CFR 312.3.

(2) Scope and substance. The scope of the examination will be limited to subject matters prescribed by USCIS. In choosing the subject matters, in phrasing questions and in evaluating responses, due consideration must be given to the applicant's:

(i) Education,

(ii) Background,

(iii) Age,

(iv) Length of residence in the United States,

(v) Opportunities available and efforts made to acquire the requisite knowledge, and

(vi) Any other elements or factors relevant to an appraisal of the adequacy of the applicant's knowledge and understanding.

8 CFR § 312.3

**\*53798**  170. Section 312.3 is revised to read as follows:

8 CFR § 312.3

**§ 312.3 Testing of applicants who obtained permanent residence pursuant to section 245A of the Act.**

An applicant who has obtained lawful permanent resident alien status pursuant to section 245A of the Act, and who, at that time, demonstrated English language proficiency in reading and writing, and knowledge of the government and history of the United States through either an examination administered by USCIS or the INS or a standardized section 312 test authorized by the USCIS or the INS for use with Legalization applicants as provided in section 245A(b)(1)(D) (iii) of the Act, will not be reexamined on those skills at the time of the naturalization interview. However, such applicant, unless otherwise exempt, must still demonstrate his or her ability to speak and understand English in accordance with 8 CFR 312.1(c)(1) and establish eligibility for naturalization through testimony in the English language.

## PART 316—GENERAL REQUIREMENTS FOR NATURALIZATION

171. The authority citation for part 316 continues to read as follows:

Authority: 8 U.S.C. 1103, 1181, 1182, 1427, 1443, 1447; 8 CFR part 2.

8 CFR § 316.1

172. Section 316.1 is revised to read as follows:

8 CFR § 316.1

**§ 316.1 Definitions.**

As used in this part, the term:

Application means any form, as defined in 8 CFR part 1, on which an applicant requests a benefit relating to naturalization.

Residence in the Service district where the application is filed means residence in the geographical area over which a particular local field office of USCIS ordinarily has jurisdiction for purposes of naturalization, regardless of where or how USCIS may require such benefit request to be submitted, or whether jurisdiction for the purpose of adjudication is relocated or internally reassigned to another USCIS office.

Service district means the geographical area over which a particular local field office of USCIS ordinarily has jurisdiction for purposes of naturalization.

8 CFR § 316.2

**§ 316.2 [Amended]**

8 CFR § 316.2

173. In § 316.2, paragraph (a)(5) is amended by removing the end the phrase ", and in which the alien seeks to file the application".

Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01

8 CFR § 316.4

174. Section 316.4 is amended by:

a. Revising paragraph (a);

b. Removing paragraph (b); and

c. Redesignating paragraph (c) as paragraph (b).

The revision reads as follows:

8 CFR § 316.4

§ 316.4 Applications; documents.

(a) The applicant will apply for naturalization in accordance with instructions provided on the form prescribed by USCIS for that purpose.

* * * * *8 CFR § 316.5

175. Section 316.5 is amended by adding paragraph (b)(6) to read as follows:

8 CFR § 316.5

§ 316.5 Residence in the United States.

* * * * *

(b) * * *

(6) Spouse of military personnel. Pursuant to section 319(e) of the Act, any period of time the spouse of a United States citizen resides abroad will be treated as residence in any State or district of the United States for purposes of naturalization under section 316(a) or 319(a) of the Act if, during the period of time abroad, the applicant establishes that he or she was:

(i) The spouse of a member of the Armed Forces;

(ii) Authorized to accompany and reside abroad with that member of the Armed Forces pursuant to the member's official orders; and

(iii) Accompanying and residing abroad with that member of the Armed Forces in marital union in accordance with 8 CFR 319.1(b).

* * * * *8 CFR § 316.6

176. Section 316.6 is added to read as follows:

8 CFR § 316.6

§ 316.6 Physical presence for certain spouses of military personnel.

Pursuant to section 319(e) of the Act, any period of time the spouse of a United States citizen resides abroad will be treated as physical presence in any State or district of the United States for purposes of naturalization under section 316(a) or 319(a) of the Act if, during the period of time abroad, the applicant establishes that he or she was:

(a) The spouse of a member of the Armed Forces;

(b) Authorized to accompany and reside abroad with that member of the Armed Forces pursuant to the member's official orders; and

(c) Accompanying and residing abroad with that member of the Armed Forces in marital union in accordance with 8 CFR 319.1(b).

### PART 319—SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: SPOUSES OF UNITED STATES CITIZENS

177. The authority citation for part 319 continues to read as follows:

Authority: 8 U.S.C. 1103, 1430, 1443.

8 CFR § 319.1

### § 319.1 [Amended]

8 CFR § 319.1

178. In § 319.1, paragraph (a)(5) is amended by removing the phrase "and in which the alien has filed the application"

8 CFR § 319.3

179. Section 319.3 is amended by revising paragraph (a) to read as follows:

8 CFR § 319.3

### § 319.3 Surviving spouse, child, or parent of a United States citizen who died during a period of honorable service in an active duty status in the Armed Forces of the United States.

(a) Eligibility. To be eligible for naturalization under section 319(d) of the Act, the surviving spouse, child, or parent of a United States citizen must:

(1) Establish that his or her citizen spouse, child, or parent died during a period of honorable service in an active duty status in the Armed Forces of the United States and, in the case of a surviving spouse, establish that he or she was living in marital union with the citizen spouse, in accordance with 8 CFR 319.1(b), at the time of the citizen spouse's death;

(2) At the time of examination on the application for naturalization, reside in the United States pursuant to a lawful admission for permanent residence;

(3) Be a person of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States; and

(4) Comply with all other requirements for naturalization as provided in 8 CFR 316, except for those contained in 8 CFR 316.2(a)(3) through (6).

* * * * * 8 CFR § 319.11

180. Section 319.11 is amended by revising paragraph (a) introductory text to read as follows:

8 CFR § 319.11

### § 319.11 Filing of application.

(a) General. An applicant under this part must submit an application for naturalization in accordance with the form instructions with the fee required by 8 CFR 103.7(b)(1). An alien spouse applying for naturalization under section 319(b) of the Act who is described in 8 CFR 319.2 must also submit a statement of intent containing the following information about the **53799** citizen spouse's employment and future intent:

* * * * *

## PART 320—CHILD BORN OUTSIDE THE UNITED STATES AND RESIDING PERMANENTLY IN THE UNITED STATES; REQUIREMENTS FOR AUTOMATIC ACQUISITION OF CITIZENSHIP

181. The authority citation for part 320 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443; 8 CFR part 2.

 8 CFR § 320.3

182. Section 320.3 is amended by:

a. Revising paragraph (a); and

b. Revising paragraph (b)(1) introductory text.

The revisions read as follows:

 8 CFR § 320.3

### § 320.3 How, where, and what forms and other documents should be filed?

(a) Application. Individuals who are applying for a certificate of citizenship on their own behalf should submit the request in accordance with the form instructions on the form prescribed by USCIS for that purpose. An application for a certificate of citizenship under this section on behalf of a child who has not reached the age of 18 years must be submitted by that child's U.S. citizen biological or adoptive parent(s), or legal guardian.

(b) Evidence. (1) An applicant under this section must establish eligibility as described in 8 CFR 320.2. An applicant must submit the following supporting evidence unless such evidence is already contained in USCIS administrative file(s):
 * * * * *8 CFR § 320.5

183. Section 320.5 is revised to read as follows:

 8 CFR § 320.5

### § 320.5 Decision.

(a) Approval of application. If the application for the certificate of citizenship is approved, after the applicant takes the oath of allegiance prescribed in 8 CFR 337.1 (unless the oath is waived), USCIS will issue a certificate of citizenship.

(b) Denial of application. If the decision of USCIS is to deny the application for a certificate of citizenship under this section, the applicant will be advised in writing of the reasons for denial and of the right to appeal in accordance with 8 CFR 103.3(a). An applicant may file an appeal within 30 days of service of the decision in accordance with the instructions on the form prescribed by USCIS for that purpose, and with the fee required by 8 CFR 103.7(b)(1).

(c) Subsequent application. After an application for a certificate of citizenship has been denied and the time for appeal has expired, USCIS will reject a subsequent application submitted by the same individual and the applicant will be instructed to submit a motion for reopening or reconsideration in accordance with 8 CFR 103.5. The motion must be accompanied by the rejected application and the fee specified in 8 CFR 103.7(b)(1).

## PART 322—CHILD BORN OUTSIDE THE UNITED STATES; REQUIREMENTS FOR APPLICATION FOR CERTIFICATE OF CITIZENSHIP

184. The authority citation for part 322 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443; 8 CFR part 2.

8 CFR § 322.1

**§ 322.1 [Amended]**

8 CFR § 322.1

185. Section 322.1 is amended, in the definition of "adopted child" by revising "section 101(b)(1)(E) or (F)" to read "section 101(b)(1)(E), (F) or (G)".

8 CFR § 322.2

186. Section 322.2 is amended by:

a. Revising the section heading; and by

b. Adding paragraph (c) to read as follows:

8 CFR § 322.2

**§ 322.2 Eligibility.**

* * * * *

(c) Exceptions for children of military personnel. Pursuant to section 322(d) of the Act, a child of a member of the Armed Forces of the United States residing abroad is exempt from the temporary physical presence, lawful admission, and maintenance of lawful status requirements under 8 CFR 322.2(a)(5), if the child:

(1) Is authorized to accompany and reside abroad with the member of the Armed Forces pursuant to the member's official orders; and

(2) Is accompanying and residing abroad with the member of the Armed Forces.

8 CFR § 322.3

187. Section 322.3 is amended by:

a. Revising the section heading;

b. Revising paragraph (a);

c. Revising paragraph (b)(1)(viii);

d. Revising paragraph (b)(1)(xi);

e. Revising paragraph (b)(1)(xii);

f. Revising paragraph (b)(1)(xiii); and

g. Revising paragraph (b)(2), the first sentence.

The revisions read as follows:

8 CFR § 322.3

**§ 322.3 Application and supporting documents.**

(a) Application. A U.S. citizen parent of an alien child (including an adopted child) may file an application for the child to become a citizen and obtain a certificate of citizenship under section 322 of the Act by submitting an application on

the form prescribed by USCIS in accordance with the form instructions and with the fee prescribed by 8 CFR 103.7(b)(1). If the U.S. citizen parent has died, the child's U.S. citizen grandparent or U.S. citizen legal guardian may submit the application, provided the application is filed not more than 5 years after the death of the U.S. citizen parent.

(b) * * *

(1) * * *

(viii) Evidence that the child is present in the United States pursuant to a lawful admission and is maintaining such lawful status, or evidence establishing that the child qualifies for an exception to these requirements as provided in 8 CFR 322.2(c) pursuant to section 322(d) of the Act. Such evidence may be presented at the time of interview when appropriate; * * * * *

(xi) For adopted orphans applying under section 322 of the Act, a copy of notice of approval of the orphan petition and supporting documentation for such petition (except the home study) or evidence that the child has been admitted for lawful permanent residence in the United States with the immigrant classification of IR-3 (Orphan adopted abroad by a U.S. citizen) or IR-4 (Orphan to be adopted by a U.S. citizen);

(xii) For a Hague Convention adoptee applying under section 322 of the Act, a copy of the notice of approval of the Convention adoptee petition and its supporting documentation, or evidence that the child has been admitted for lawful permanent residence in the United States with the immigrant classification of IH-3 (Hague Convention Orphan adopted abroad by a U.S. citizen) or IH-4 (Hague Convention Orphan to be adopted by a U.S. citizen); and

(xiii) Evidence of all legal name changes, if applicable, for the child, U.S. citizen parent, U.S. citizen grandparent, or U.S. citizen legal guardian.

(2) If USCIS requires any additional documentation to make a decision on the application, the parents may be asked to provide that documentation under separate cover or at the time of interview. * * *
 8 CFR § 322.4
188. Section 322.4 is revised to read as follows:
 8 CFR § 322.4

### § 322.4 Interview.
The U.S. citizen parent and the child must appear in person before a USCIS officer for examination on the application under this section. If the U.S. citizen parent is deceased, the  *53800  child's U.S. citizen grandparent or U.S. citizen legal guardian who filed the application on the child's behalf must appear.
 8 CFR § 322.5
189. Section 322.5 is revised to read as follows:
 8 CFR § 322.5

### § 322.5 Decision.
(a) Approval of application. If the application for certificate of citizenship is approved, after the applicant takes the oath of allegiance prescribed in 8 CFR 337.1 (unless the oath is waived), USCIS will issue a certificate of citizenship. The child is a citizen as of the date of approval and administration of the oath of allegiance.

(b) Denial of application. If the USCIS decision is to deny the application for a certificate of citizenship under this section, the applicant will be furnished with the reasons for denial and advised of the right to appeal in accordance with

the provisions of 8 CFR 103.3(a). An applicant may file an appeal within 30 days of service of the decision in accordance with the instructions on the form prescribed by USCIS for that purpose, and with the fee required by 8 CFR 103.7(b)(1).

(c) Subsequent application. After an application for a certificate of citizenship has been denied and the time for appeal has expired, USCIS will reject a subsequent application submitted by the same individual and the applicant will be instructed to submit a motion for reopening or reconsideration in accordance with 8 CFR 103.5. The motion must be accompanied by the rejected application and the fee specified in 8 CFR 103.7(b)(1).


## PART 324—SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: WOMEN WHO HAVE LOST UNITED STATES CITIZENSHIP BY MARRIAGE AND FORMER CITIZENS WHOSE NATURALIZATION IS AUTHORIZED BY PRIVATE LAW

190. The authority citation for part 324 continues to read as follows:

Authority: 8 U.S.C. 1103, 1435, 1443, 1448, 1101 note.
 8 CFR § 324.2

### § 324.2 [Amended]
8 CFR § 324.2

191. In § 324.2, paragraph (b) is amended by revising the term "N-400, as required by § 316.4 of this chapter" to read "the form designated by USCIS in accordance with the form instructions and with the fee prescribed in 8 CFR 103.7(b)(1) as required by 8 CFR 316.4".
 8 CFR § 324.3

### § 324.3 [Amended]
8 CFR § 324.3

192. In § 324.3, paragraph (b)(1) is amended by revising the phrase "an Application for Naturalization, form N-400, to USCIS" to read "an application for naturalization on the form prescribed by USCIS".
 8 CFR § 324.5

193. Section 324.5 is revised to read as follows:
 8 CFR § 324.5

### § 324.5 Former citizen of the United States whose naturalization by taking the oath is authorized by a private law.

A former citizen of the United States whose naturalization by taking the oath before any naturalization court or office of USCIS within the United States is authorized by a private law must submit an application on the form specified by USCIS, without fee, in accordance with the form instructions.


## PART 325—NATIONALS BUT NOT CITIZENS OF THE UNITED STATES; RESIDENCE WITHIN OUTLYING POSSESSIONS

194. The authority citation for part 325 continues to read as follows:

Authority: 8 U.S.C. 1103, 1436, 1443.
 8 CFR § 325.4

### § 325.4 [Amended]
8 CFR § 325.4

195. In § 325.4, paragraph (b)(3) is amended by revising the term "Service district in the United States where the application is filed" to read "Service district, as defined in 8 CFR 316.1,".

**PART 328—SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: PERSONS WITH 1 YEAR OF SERVICE IN THE UNITED STATES ARMED FORCES**

196. The authority citation for part 328 continues to read as follows:

Authority: 8 U.S.C. 1103, 1439, 1443.

8 CFR § 328.4

197. Section 328.4 is revised to read as follows:

8 CFR § 328.4

**§ 328.4 Application and evidence.**

(a) Application. An applicant for naturalization under section 328 of the Act must submit an application on the form prescribed by USCIS in accordance with the form instructions and as provided in 8 CFR 316.4.

(b) Evidence. The applicant's eligibility for naturalization under 8 CFR 328.2(a) or (b) will be established only by the certification of honorable service by the executive department under which the applicant served or is serving.

**PART 329—SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: PERSONS WITH ACTIVE DUTY OR CERTAIN READY RESERVE SERVICE IN THE UNITED STATES ARMED FORCES DURING SPECIFIED PERIODS OF HOSTILITIES**

198. The authority citation for part 329 continues to read as follows:

Authority: 8 U.S.C. 1103, 1440, 1443; 8 CFR part 2.

8 CFR § 329.4

199. Revise § 329.4 to read as follows:

8 CFR § 329.4

**§ 329.4 Application and evidence.**

(a) Application. An applicant for naturalization under section 329 of the Act must submit an application on the form prescribed by USCIS in accordance with the form instructions and as provided in 8 CFR 316.4.

(b) Evidence. The applicant's eligibility for naturalization under 8 CFR 329.2(a), (b), or (c)(2) will be established only by a certification of honorable service by the executive department under which the applicant served or is serving.

8 CFR § 329.5

**§ 329.5 [Removed]**

8 CFR § 329.5

200. Section 329.5 is removed.

**PART 330—SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: SEAMEN**

201. The authority citation for part 330 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443.

Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01

8 CFR § 330.2

**§ 330.2 [Amended]**
8 CFR § 330.2
202. In § 330.2, paragraph (a) is amended by revising the phrase "Application for Naturalization, Form N-400." to read "application on the form designated by USCIS.".


## PART 332—NATURALIZATION ADMINISTRATION

203. The authority citation for part 332 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443, 1447.
8 CFR § 332.1
204. Section 332.1 is revised to read as follows:
8 CFR § 332.1

**§ 332.1 Designation of USCIS employees to administer oaths and conduct examinations and hearings.**
(a) Examinations. All USCIS officers are hereby designated to conduct the examination for naturalization required under section 335 of the Act, provided that each officer so designated has received appropriate training.

(b) Hearings. Section 336 of the Act authorizes USCIS officers who are designated under paragraph (a) of this   **\*53801** section to conduct hearings under that section.

(c) Depositions. All USCIS officers who are designated under paragraph (a) of this section are hereby designated to take depositions in matters relating to the administration of naturalization and citizenship laws.

(d) Oaths and affirmations. All USCIS officers who are designated under paragraph (a) of this section are hereby designated to administer oaths or affirmations except for the oath of allegiance as provided in 8 CFR 337.2.
8 CFR § 332.2 8 CFR § 332.3 8 CFR § 332.4
§§ 332.2, 332.3, and 332.4 [Removed and Reserved]
8 CFR § 332.2 8 CFR § 332.3 8 CFR § 332.4
205. Sections 332.2, 332.3, and 332.4 are removed and reserved.


## PART 333—PHOTOGRAPHS

206. The authority citation for part 333 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443.
8 CFR § 333.1
207. In § 333.1, paragraph (a) is revised to read as follows:
8 CFR § 333.1

**§ 333.1 Description of required photographs.**
(a) Every applicant who is required to provide photographs under section 333 of the Act must do so as prescribed by USCIS in its form instructions.
\* \* \* \* \*8 CFR § 333.2
208. Section 333.2 is revised to read as follows:
8 CFR § 333.2

**§ 333.2 Attachment of photographs to documents.**

A photograph of the applicant must be securely and permanently attached to each certificate of naturalization or citizenship, or to any other document that requires a photograph, in a manner prescribed by USCIS.

## PART 334—APPLICATION FOR NATURALIZATION

209. The authority citation for part 334 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443.

8 CFR § 334.2

210. In § 334.2, paragraph (a) is revised to read as follows:

8 CFR § 334.2

**§ 334.2 Application for naturalization.**

(a) An applicant may file an application for naturalization with required initial evidence in accordance with the general form instructions for naturalization. The applicant must include the fee as required in 8 CFR 103.7(b)(1).

* * * * *8 CFR § 334.11

211. Section 334.11 is amended by:

a. Revising the term "Form N-300" to read "the form specified by USCIS, in accordance with the form instructions" in paragraph (a); and by

b. Revising paragraph (b).

The revision reads as follows:

8 CFR § 334.11

**§ 334.11 Declaration of intention.**

* * * * *

(b) Approval. If approved, USCIS will retain the application in the file and advise the applicant of the action taken.

* * * * *

**§§ 334.16-334.18 [Removed]**

8 CFR § 334.16 8 CFR § 334.17 8 CFR § 334.18

212. Sections 334.16 through 334.18 are removed.

## PART 335—EXAMINATION ON APPLICATION FOR NATURALIZATION

213. The authority citation for part 335 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443, 1447.

8 CFR § 335.2

214. Section 335.2 is amended by:

a. Revising the term "Service" to read "USCIS" and the term "§ 332.1 of this chapter" to read "8 CFR 332.1" in paragraph (a);

b. Revising the terms "The Service" and "Service" to read "USCIS" wherever that term appears in paragraph (b) introductory text;

c. Revising paragraph (b)(3);

d. Revising the terms "the Service officer", "The Service officer" and "the Service" to read "USCIS" wherever the terms appear in paragraph (c);

e. Revising paragraph (d)(2);

f. Revising the term "Service" to read "USCIS" wherever the term appears in paragraph (e); and

g. Revising the term "Service" to read "USCIS" and the term "§ 312.4 of this chapter" to read "8 CFR 312.4" wherever the terms appear in paragraph (f).

The revisions read as follows:
 8 CFR § 335.2

**§ 335.2 Examination of applicant.**
* * * * *
(b) * * *

(3) Confirmation from the Federal Bureau of Investigation that the fingerprint data submitted for the criminal background check has been rejected.
 * * * * *
(d) * * *

(2) Service of subpoenas. Subpoenas will be issued on the form designated by USCIS and a record will be made of service. The subpoena may be served by any person over 18 years of age, not a party to the case, designated to make such service by USCIS.
 * * * * *8 CFR § 335.3

**§ 335.3 [Amended]**
8 CFR § 335.3
215. Section 335.3 is amended by revising the terms "The Service officer" and "the Service officer" to read "USCIS" wherever the terms appear in the following places:

a. Paragraph (a); and

b. Paragraph (b).
 8 CFR § 335.4

**§ 335.4 [Amended]**
8 CFR § 335.4
216. Section 335.4 is amended by revising the phrase "the Service officer designated in § 332.1 of this chapter" to read "the USCIS officer described in 8 CFR 332.1".
 8 CFR § 335.5

**§ 335.5 [Amended]**
8 CFR § 335.5
217. Section 335.5 is amended by revising the terms "the Service" and "The Service" to read "USCIS" wherever the terms appear.
 8 CFR § 335.6
218. Section 335.6 is amended by revising the term "the Service" to read "USCIS" wherever the term appears in the following places:

a. Paragraph (a);

b. Paragraph (b); and

c. Paragraph (c).
 8 CFR § 335.7
219. Section 335.7 is revised to read as follows:
 8 CFR § 335.7

**§ 335.7 Failure to prosecute application after initial examination.**
An applicant for naturalization who has appeared for the examination on his or her application as provided in 8 CFR 335.2 will be considered as failing to prosecute such application if he or she, without good cause being shown, either failed to excuse an absence from a subsequently required appearance, or fails to provide within a reasonable period of time such documents, information, or testimony deemed by USCIS to be necessary to establish his or her eligibility for naturalization. USCIS will deliver notice of requests for appearance or evidence as provided in 8 CFR 103.8. In the event that the applicant fails to respond within 30 days of the date of notification, USCIS will adjudicate the application on the merits pursuant to 8 CFR 336.1.
 8 CFR § 335.9

**§ 335.9 [Amended]**
8 CFR § 335.9
220. Section 335.9 is amended by:

a. Revising the phrase "Service office to the Service office" to read "USCIS office to the USCIS office" in paragraph (a); and

b. Revising the term "district director" to read "USCIS" and the term 'the Service's' to read "USCIS'" in paragraph (b).
 8 CFR § 335.10

**§ 335.10 [Amended]**
8 CFR § 335.10
221. Section 335.10 is amended by revising the terms "the Service" and "the district director" to read "USCIS" wherever the terms appear.


**§§ 335.11 through 335.13 [Removed]**
 **\*53802**  222. Sections 335.11 through 335.13 are removed.

## PART 336—HEARINGS ON DENIALS OF APPLICATIONS FOR NATURALIZATION

223. The authority citation for section 336 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443, 1447, 1448.
 8 CFR § 336.1

### § 336.1 [Amended]
8 CFR § 336.1
224. Section 336.1 is amended by:

a. Revising the phrase "the Service shall" to read "USCIS will" in the first sentence in paragraph (a); and

b. Revising the phrase "may be made in person or by certified mail to the applicant's last known address" to read "must be by personal service as described in 8 CFR 103.8" in paragraph (c).
 8 CFR § 336.2
225. Section 336.2 is revised to read as follows:
 8 CFR § 336.2

### § 336.2 USCIS hearing.
(a) The applicant, or his or her authorized representative, may request a hearing on the denial of the applicant's application for naturalization by filing a request with USCIS within thirty days after the applicant receives the notice of denial.

(b) Upon receipt of a timely request for a hearing, USCIS will schedule a review hearing, within a reasonable period of time not to exceed 180 days from the date upon which the appeal is filed. The review will be with an officer other than the officer who conducted the original examination or who rendered determination upon which the hearing is based, and who is classified at a grade level equal to or higher than the grade of the examining officer. The reviewing officer will have the authority and discretion to review the application for naturalization, to examine the applicant, and either to affirm the findings and determination of the original examining officer or to re-determine the original decision in whole or in part. The reviewing officer will also have the discretion to review any administrative record which was created as part of the examination procedures as well USCIS files and reports. He or she may receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide. Based upon the complexity of the issues to be reviewed or determined, and upon the necessity of conducting further examinations with respect to essential naturalization requirements, such as literacy or civics knowledge, the reviewing immigration officer may, in his or her discretion, conduct a full de novo hearing or may utilize a less formal review procedure, as he or she deems reasonable and in the interest of justice.

(c) Improperly filed request for hearing. (1) Request for hearing filed by a person or entity not entitled to file. (i) Rejection without refund of filing fee. A request for hearing filed by a person or entity who is not entitled to file such a request must be rejected as improperly filed. In such a case, any filing fee will not be refunded.

(ii) Request for hearing by attorney or representative without proper Form G-28. If a request for hearing is filed by an attorney or representative who has not properly filed a notice of entry of appearance as attorney or representative entitling that person to file the request for hearing, the appeal will be considered as improperly filed. In such a case, any filing fee will not be refunded regardless of the action taken. The reviewing official will ask the attorney or representative to submit a proper notice of entry within 15 days of the request. If such notice is not submitted within the time allowed,

the official may, on his or her own motion, under 8 CFR 103.5(a)(5)(i), make a new decision favorable to the affected party without notifying the attorney or representative. The request for hearing may be considered properly filed as of its original filing date if the attorney or representative submits a properly executed notice entitling that person to file the request for hearing.

(2) Untimely request for hearing. (i) Rejection without refund of filing fee. A request for hearing which is not filed within the time period allowed must be rejected as improperly filed. In such a case, any filing fee will not be refunded.

(ii) Untimely request for hearing treated as motion. If an untimely request for hearing meets the requirements of a motion to reopen as described in 8 CFR 103.5(a)(2) or a motion to reconsider as described in 8 CFR 103.5(a)(3), the request for hearing must be treated as a motion and a decision must be made on the merits of the case.

 8 CFR § 336.9

226. Section 336.9 is amended by:

a. Revising the term "the Service" to read "USCIS" in paragraph (a);

b. Revising paragraph (b); and

c. Revising the term "Service" to read "USCIS" in paragraph (d).

The revision reads as follows:

 * * * * *

(b) Filing a petition. Under these procedures, an applicant must file a petition for review in the United States District Court having jurisdiction over his or her place of residence, in accordance with Chapter 7 of Title 5, United States Code, within a period of not more than 120 days after the USCIS final determination. The petition for review must be brought against USCIS, and service of the petition for review must be made upon DHS and upon the USCIS office where the hearing was held pursuant to 8 CFR 336.2.

 * * * * *

**PART 337—OATH OF ALLEGIANCE**

227. The authority citation for part 337 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443, 1448; 8 CFR Part 2.

 8 CFR § 337.2

228. Section 337.2 is revised to read as follows:

 8 CFR § 337.2

**§ 337.2 Oath administered by USCIS or EOIR.**

(a) Public ceremony. An applicant for naturalization who has elected to have his or her oath of allegiance administered by USCIS or an immigration judge and is not subject to the exclusive oath administration authority of an eligible court pursuant to section 310(b) of the Act must appear in person in a public ceremony, unless such appearance is specifically excused under the terms and conditions set forth in this part. Such ceremony will be held at a time and place designated by USCIS or EOIR within the United States (or abroad as permitted for certain applicants in accordance with 8 U.S.C. 1443a) and within the jurisdiction where the application for naturalization was filed, or into which the application for naturalization was transferred pursuant to 8 CFR 335.9. Naturalization ceremonies will be conducted at regular intervals as frequently as necessary to ensure timely naturalization, but in all events at least once monthly where it is required to

minimize unreasonable delays. Naturalization ceremonies will be presented in such a manner as to preserve the dignity and significance of the occasion.

(b) Authority to administer oath of allegiance. The Secretary may delegate authority to administer the oath of allegiance prescribed in section 337 of the Act to such officials of DHS and to immigration judges or officials designated by the Attorney General as may be necessary for the efficient administration of the naturalization program.

(c) Execution of questionnaire. Immediately prior to being administered the oath of allegiance, each applicant must complete the questionnaire on the **\*53803** form designated by USCIS. USCIS will review each completed questionnaire and may further question the applicant regarding the responses provided. If derogatory information is revealed, USCIS will remove the applicant's name from the list of eligible persons as provided in 8 CFR 335.5 and he or she will not be administered the oath.

 8 CFR § 337.3

## § 337.3 [Amended]
8 CFR § 337.3

229. Section 337.3 is amended by revising the terms "the Service" and "the district director" to read "USCIS" whenever the terms appear in the following places:

a. Paragraph (a) introductory text;

b. Paragraph (a)(4);

c. Paragraph (b); and

d. Paragraph (c).

 8 CFR § 337.7

## § 337.7 [Amended]
8 CFR § 337.7

230. Section 337.7 is amended by revising the terms "the Service" and "Service" to read "USCIS" whenever the terms appear in the following places:

a. Paragraph (a); and

b. Paragraph (b).

 8 CFR § 337.8

231. Section 337.8 is revised to read as follows:

 8 CFR § 337.8

## § 337.8 Oath administered by the courts.

(a) Notification of election. An applicant for naturalization not subject to the exclusive jurisdiction of 8 CFR 310.2(d) must notify USCIS at the time of the filing of, or no later than at the examination on, the application of his or her election to have the oath of allegiance administered in an appropriate court having jurisdiction over the applicant's place of residence.

(b) Certificate of eligibility. (1) Exclusive jurisdiction. In those instances falling within the exclusive jurisdiction provision of section 310(b)(1)(B) of the Act, USCIS will notify the court of the applicant's eligibility for admission to United States citizenship by notifying the clerk of the court within 10 days of the approval of the application.

(2) Non-exclusive jurisdiction. In those instances in which the applicant has elected to have the oath administered in a court ceremony, USCIS will notify the clerk of the court in writing that the applicant has been determined by the USCIS to be eligible for admission to United States citizenship upon taking the requisite oath of allegiance and renunciation in a public ceremony. If a scheduled hearing date is not available at the time of notification, USCIS will notify the applicant in writing that the applicant has been approved but no ceremony date is yet available.

(c) Preparation of lists. (1) At or prior to the oath administration ceremony, the representative attending the ceremony will submit to the court, in duplicate, lists of persons to be administered the oath of allegiance and renunciation. After the ceremony, and after any required amendments and notations have been made to the lists, the clerk of the court will sign the lists.

(2) The originals of all court lists specified in this section will be filed permanently in the court, and the duplicates returned by the clerk of the court to USCIS. The same disposition will be made of any list presented to, but not approved by, the court.

(d) Personal representation of the government at oath administration ceremonies. An oath administration ceremony must be attended by a representative of USCIS who will review each completed questionnaire and may further question the applicant regarding the responses provided. If derogatory information is revealed, the USCIS representative will remove the applicant's name from the list of eligible persons as provided in 8 CFR 335.5 and the court will not administer the oath to such applicant.

(e) Written report in lieu of personal representation. If it is impractical for a USCIS representative to be present at a judicial oath administration ceremony, written notice of that fact will be given by the USCIS to the court. The list of persons to be administered the oath of allegiance and renunciation, forms, memoranda, and certificates will be transmitted to the clerk of the court, who will submit the appropriate lists to the court.

(f) Withdrawal from court. An applicant for naturalization not subject to the exclusive jurisdiction of 8 CFR 310.3(d) who has elected to have the oath administered in a court oath ceremony may, for good cause shown, request that his or her name be removed from the list of persons eligible to be administered the oath at a court oath ceremony and request that the oath be administered by an immigration judge or USCIS. Such request must be in writing to the USCIS office which granted the application and must cite the reasons for the request. USCIS will consider the good cause shown and the best interests of the applicant in making a decision. If it is determined that the applicant will be permitted to withdraw his or her name from the court ceremony, USCIS will give written notice to the court of the applicant's withdrawal, and the applicant will be scheduled for the next available oath ceremony, conducted by an Immigration Judge or USCIS, as if he or she had never elected the court ceremony.

 8 CFR § 337.9

**§ 337.9 [Amended]**
8 CFR § 337.9
232. In § 337.9, paragraph (a) is amended by removing the phrase ", administered either by the Service or an immigration judge".

**PART 338—CERTIFICATE OF NATURALIZATION**

233. The authority citation for part 338 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443; 8 CFR part 2.

 8 CFR § 338.1

234. Section 338.1 is revised to read as follows:

 8 CFR § 338.1

**§ 338.1 Execution and issuance of certificate.**

(a) Issuance. When an applicant for naturalization has taken and subscribed to the oath of allegiance in accordance with 8 CFR part 337, USCIS will issue a Certificate of Naturalization at the conclusion of the oath administration ceremony.

(b) Contents of certificate. The certificate must be issued to the applicant in accordance with section 338 of the Act in his or her true, full, and correct name as it exists at the time of the administration of the oath of allegiance. The certificate must show, under "country of former nationality," the name of the applicant's last country of citizenship, as shown in the application and USCIS records, even though the applicant may be stateless at the time of admission to citizenship.

 8 CFR § 338.3

**§ 338.3 [Amended]**

8 CFR § 338.3

235. Section 338.3 is amended by revising the terms "the Service" and the term "the district director" to read "USCIS".

 8 CFR § 338.5

236. Section 338.5 is revised to read as follows:

 8 CFR § 338.5

**§ 338.5 Correction of certificates.**

(a) Application. Whenever a Certificate of Naturalization has been delivered which does not conform to the facts shown on the application for naturalization, or a clerical error was made in preparing the certificate, an application for issuance of a corrected certificate may be filed, without fee, in accordance with the form instructions.

(b) Court-issued certificates. If the certificate was originally issued by a clerk of court under a prior statute and USCIS finds that a correction is justified and can be made without mutilating the certificate, USCIS will authorize the issuing court to make the necessary correction and to place a dated endorsement of the court on the reverse **\*53804** of the certificate explaining the correction. The authorization will be filed with the naturalization record of the court, the corrected certificate will be returned to the naturalized person, and the duplicate will be endorsed to show the date and nature of the correction and endorsement made, and then returned to USCIS. No fee will be charged the naturalized person for the correction.

(c) USCIS-issued certificates. If the certificate was originally issued by USCIS (or its predecessor agency), and USCIS finds that a correction was justified, the correction shall be made to the certificate and a dated endorsement made on the reverse of the certificate.

(d) Administrative actions. When a correction made pursuant to paragraphs (b) or (c) of this section would or does result in mutilation of a certificate, USCIS will issue a replacement Certificate of Naturalization and destroy the surrendered certificate.

(e) Data change. The correction will not be deemed to be justified where the naturalized person later alleges that the name or date of birth which the applicant stated to be his or her correct name or date of birth at the time of naturalization was not in fact his or her name or date of birth at the time of the naturalization.

### §§ 338.11 through 338.13 [Removed and Reserved]

8 CFR § 338.11 8 CFR § 338.12 8 CFR § 338.13

237. Sections 338.11 through 338.13 are removed and reserved.


## PART 339—FUNCTIONS AND DUTIES OF CLERKS OF COURT REGARDING NATURALIZATION PROCEEDINGS

238. The authority citation for part 339 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443, 1448.

 8 CFR § 339.1

### § 339.1 [Amended]

8 CFR § 339.1

239. Section 339.1 is amended by revising the phrase "the Service pursuant to § 338.1 of this chapter" to read "USCIS in accordance with 8 CFR 338.1".

 8 CFR § 339.2

240. Section 339.2 is revised to read as follows:

 8 CFR § 339.2

### § 339.2 Monthly reports.

(a) Oath administration ceremonies. Clerks of court will on the first day of each month or immediately following each oath ceremony submit to USCIS a report listing all oath administration ceremonies held and the total number of persons issued the oath at each ceremony, in accordance with USCIS instructions. The report will include a list of persons attending naturalization oath ceremonies during the month, and certified copies of any court orders granting changes of name.

(b) Petitions filed for de novo hearings. The clerk of court must submit to USCIS a monthly report of all persons who have filed de novo review petitions before the court. The report shall include each petitioner's name, alien registration number, date of filing of the petition for a de novo review, and, once an order has been entered, the disposition.

(c) Other proceedings and orders. The clerk of court must forward to USCIS copies of the records of such other proceedings and other orders instituted on or issued by the court affecting or relating to the naturalization of any person as may be required from time to time.

(d) Use of reports for accounting purposes. State and federal courts may use the reports as a monthly billing document, submitted to USCIS for reimbursement in accordance with section 344(f)(1) of the Act. USCIS will use the information submitted to calculate costs incurred by courts in performing their naturalization functions. State and federal courts will be reimbursed pursuant to terms set forth in annual agreements entered into between DHS and the Administrative Office of United States Courts.


## PART 340—REVOCATION OF NATURALIZATION

241. The authority citation for part 340 continues to read as follows:

Authority: 8 U.S.C. 1103, 1443.
 8 CFR § 340.1

**§ 340.1 [Removed and reserved]**
8 CFR § 340.1
242. Section 340.1 is removed and reserved.
 8 CFR § 340.2
243. Section 340.2 is revised to read as follows:
 8 CFR § 340.2

**§ 340.2 Revocation proceedings pursuant to section 340(a) of the Act.**
(a) Recommendations for institution of revocation proceedings. Whenever it appears that any grant of naturalization may have been illegally procured or procured by concealment of a material fact or by willful misrepresentation, and a prima facie case exists for revocation pursuant to section 340(a) of the Act, USCIS will make a recommendation regarding revocation.

(b) Recommendation for criminal prosecution. If it appears to USCIS that a case described in paragraph (a) of this section is amenable to criminal penalties under 18 U.S.C. 1425 for unlawful procurement of citizenship or naturalization, the facts will be reported to the appropriate United States Attorney for possible criminal prosecution.


**PART 341—CERTIFICATES OF CITIZENSHIP**
244. The authority citation for part 341 continues to read as follows:

Authority: Pub. L. 82-414, 66 Stat. 173, 238, 254, 264, as amended; 8 U.S.C. 1103, 1409(c), 1443, 1444, 1448, 1452, 1455; 8 CFR part 2.
 8 CFR § 341.1
245. Section 341.1 is revised to read as follows:
 8 CFR § 341.1

**§ 341.1 Application.**
An application for a certificate of citizenship by or in behalf of a person who claims to have acquired United States citizenship under section 309(c) of the Act or to have acquired or derived United States citizenship as specified in section 341 of the Act must be submitted on the form designated by USCIS with the fee specified in 8 CFR 103.7(b)(1) and in accordance with the instructions on the form.
 8 CFR § 341.2
246. Section 341.2 is amended by:

a. Revising paragraph (a)(1) introductory text;

b. Revising the phrase "at the district director's option" to read "at the discretion of USCIS" in paragraph (b)(1);

c. Revising the phrase "A district director shall assign an officer of the Service to" to read "USCIS will" in the first sentence in paragraph (d);

d. Removing the phrase "to the district director" in the last sentence in paragraph (d); and

e. Removing paragraph (g).

The revision reads as follows:

8 CFR § 341.2

**§ 341.2 Examination upon application.**
(a) * * *

(1) When testimony may be omitted. An application may be processed without interview if the USCIS officer adjudicating the case has in the administrative file(s) all the required documentation necessary to establish the applicant's eligibility for U.S. citizenship, or if the application is accompanied by one of the following:
 * * * * *8 CFR § 341.3

**§ 341.3 [Amended]**
8 CFR § 341.3
247. Section 341.3 is amended by revising the phrase "an officer of the Service or a United States consular official" to read "a DHS or Department of State official".
 8 CFR § 341.5
248. Section 341.5 is revised to read as follows:
 8 CFR § 341.5

**§ 341.5 Decision.**
(a) Adjudication. USCIS may adjudicate the application only after the **\*53805** appropriate approving official has reviewed the report, findings, recommendation, and endorsement of the USCIS officer assigned to adjudicate the application.

(b) Approval. If the application is granted, USCIS will prepare a certificate of citizenship and, unless the claimant is unable by reason of mental incapacity or young age to understand the meaning of the oath, he or she must take and subscribe to the oath of renunciation and allegiance prescribed by 8 CFR 337 before USCIS within the United States. Except as provided in paragraph (c), delivery of the certificate in accordance with 8 CFR 103.2(b)(19) and 8 CFR 103.8 must be made in the United States to the claimant or the acting parent or guardian.

(c) Approval pursuant to section 322(d) of the Act. Persons eligible for naturalization pursuant to section 322(d) of the Act may subscribe to the oath of renunciation and allegiance and may be issued a certificate of citizenship outside of the United States, in accordance with 8 U.S.C. 1443a.

(d) Denial. If USCIS denies the application, the applicant will be furnished the reasons for denial and advised of the right to appeal in accordance with 8 CFR 103.3.

(e) Subsequent application. After an application for a certificate of citizenship has been denied and the time for appeal has expired, USCIS will reject a subsequent application submitted by the same individual and the applicant will be instructed to submit a motion to reopen or reconsider in accordance with 8 CFR 103.5. The motion must be accompanied by the rejected application and the fee specified in 8 CFR 103.7.
 8 CFR § 341.6 8 CFR § 341.7

**§§ 341.6 and 341.7 [Removed]**
8 CFR § 341.6 8 CFR § 341.7

249. Sections 341.6 and 341.7 are removed.

## PART 342—ADMINISTRATIVE CANCELLATION OF CERTIFICATES, DOCUMENTS OR RECORDS

250. The authority citation for part 342 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1453.

8 CFR § 342.2

251. Section 342.2 is revised to read as follows:

8 CFR § 342.2

**§ 342.2 Service of notice.**

The notice required by 8 CFR 342.1 must be by personal service as described in 8 CFR 103.8(a)(2).

## PART 343—CERTIFICATE OF NATURALIZATION OR REPATRIATION; PERSONS WHO RESUMED CITIZENSHIP UNDER SECTION 323 OF THE NATIONALITY ACT OF 1940, AS AMENDED, OR SECTION 4 OF THE ACT OF JUNE 29, 1906

252. The authority citation for part 343 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1443, 1454, and 1455.

8 CFR § 343.1

**§ 343.1 [Amended]**

8 CFR § 343.1

253. Section 343.1 is amended in the first sentence by revising the term "therefor on Form N-580" to read: "in accordance with USCIS instructions".

## PART 343a—NATURALIZATION AND CITIZENSHIP PAPERS LOST, MUTILATED, OR DESTROYED; NEW CERTIFICATE IN CHANGED NAME; CERTIFIED COPY OF REPATRIATION PROCEEDINGS

254. The authority citation for part 343a is revised to read as follows:

Authority: 8 U.S.C. 1101 note, 1103, 1435, 1443, 1454, and 1455.

8 CFR § 343a.1

255. Section 343a.1 is amended by:

a. Revising the phrase "shall apply on Form N-565 for a new paper in lieu thereof" to read "must apply on the form designated by USCIS with the fee specified in 8 CFR 103.7(b)(1) and in accordance with the form instructions" in paragraph (a);

b. Revising the phrase "shall apply on Form N-565" to read "must apply" in paragraph (b); and

c. Revising paragraph (c).

The revision reads as follows:

8 CFR § 343a.1

**§ 343a.1** **Application for replacement of or new papers relating to naturalization, citizenship, or repatriation.**

\* \* \* \* \*

(c) Adjudication and disposition. (1) Interview. The applicant shall only be required to appear in person for interview under oath or affirmation in specific cases. Those cases which necessitate an interview enabling an officer to properly adjudicate the application at the office having jurisdiction will be determined by USCIS.

(2) Approval. If an application for a new certificate of naturalization, citizenship, or repatriation or a new declaration of intention is approved, the new certificate or declaration will be issued and delivered by personal service in accordance with 8 CFR 103.8(a)(2). If an application for a new certified copy of the proceedings under the Act of June 25, 1936, as amended, or under section 317(b) of the Nationality Act of 1940, or under section 324(c) of the Immigration and Nationality Act, or under the provisions of any private law is approved, a certified photocopy of the record of the proceedings will be issued. If, subsequent to naturalization or repatriation, the applicant's name was changed by marriage, the certification of the photocopy will show both the name in which the proceedings were conducted and the changed name. The new certified copy will be delivered to the applicant in accordance with 8 CFR 103.8(a)(2).

(3) Denial. If the application is denied, the applicant shall be notified of the reasons for the denial and of the right to appeal in accordance with 8 CFR 103.3.

8 CFR § 343a.2

**§ 343a.2** **[Amended]**

8 CFR § 343a.2

256. Section 343a.2 is amended by revising the terms "Service" and "the Service" to read "USCIS" and the term "Form N-565" to read "an application" wherever those terms appear.


**PART 343b—SPECIAL CERTIFICATE OF NATURALIZATION FOR RECOGNITION BY A FOREIGN STATE**

257. The authority citation for part 343b continues to read as follows:

Authority: 8 U.S.C. 1103, 1443, 1454, 1455.

8 CFR § 343b.1

**§ 343b.1** **[Amended]**

8 CFR § 343b.1

258. Section 343b.1 is amended by revising the term "Form N-565" to read "the form designated by USCIS with the fee specified in 8 CFR 103.7(b)(1) and in accordance with the form instructions".

8 CFR § 343b.3

259. Section 343b.3 is revised to read as follows:

8 CFR § 343b.3

**§ 343b.3** **Interview.**

When the application presents a prima facie case, USCIS may issue a certificate without first interviewing the applicant. In all other cases, the applicant must be interviewed. The interviewing officer must provide a complete written report of the interview before forwarding the application for issuance of the certificate.

8 CFR § 343b.4

260. Section 343b.4 is revised to read as follows:

8 CFR § 343b.4

**§ 343b.4 Applicant outside of United States.**

If the application is received by a DHS office outside the United States, an officer will, when practicable, interview the applicant before the application is forwarded to USCIS for issuance of the certificate. When an interview is not practicable, or is not conducted because the application is submitted directly to USCIS in the United States, the **\*53806** certificate may nevertheless be issued and the recommendation conditioned upon satisfactory interview by the Department of State. When forwarding the certificate in such a case, USCIS will inform the Secretary of State that the applicant has not been interviewed, and request to have the applicant interviewed regarding identity and possible expatriation. If identity is not established or if expatriation has occurred, the Department of State will return the certificate to USCIS for disposition.

8 CFR § 343b.11

261. Section 343b.11 is revised to read as follows:

8 CFR § 343b.11

**§ 343b.11 Disposition of application.**

(a) Approval. If the application is granted, USCIS will prepare a special certificate of naturalization and forward it to the Secretary of State for transmission to the proper authority of the foreign state in accordance with procedures agreed to between DHS and the Department of State, retain the application and a record of the disposition in the DHS file, and notify the applicant of the actions taken.

(b) Denial. If the application is denied, the applicant will be notified of the reasons for denial and of the right to appeal in accordance with 8 CFR 103.3.


**PART 343c—CERTIFICATIONS FROM RECORDS**

262. The authority citation for part 343c is revised to read as follows:

Authority: 5 U.S.C. 552; 8 U.S.C. 1103.

8 CFR § 343c.1

**§ 343c.1 [Amended]**

8 CFR § 343c.1

263. Section 343c.1 is amended by revising the term "Form G-641" to read "the form designated by USCIS in accordance with the form instructions".


**PART 392—SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: PERSONS WHO DIE WHILE SERVING ON ACTIVE DUTY WITH THE UNITED STATES ARMED FORCES DURING CERTAIN PERIODS OF HOSTILITIES**

264. The authority citation for part 392 continues to read as follows:

Authority: 8 U.S.C. 1103, 1440 and note, and 1440-1; 8 CFR part 2.

8 CFR § 392.2

265. In § 392.2, paragraph (d)(2) is revised to read as follows:

8 CFR § 392.2

**§ 392.2 Eligibility for posthumous citizenship.**

* * * * *

(d) * * *

(2) The certification required by section 329A(c)(2) of the Act to prove military service and service-connected death must be requested by the applicant on the form designated by USCIS in accordance with the form instructions. The form will also be used to verify the decedent's place of induction, enlistment, or reenlistment.

8 CFR § 392.3

266. Section 392.3 is amended by:

a. Revising the term "the Service" to read "USCIS" in the last sentence in paragraph (a)(2);

b. Revising paragraph (b); and

c. Revising paragraph (c).

The revisions read as follows:

8 CFR § 392.3

**§ 392.3 Application for posthumous citizenship.**

* * * * *

(b) Application. An application for posthumous citizenship must be submitted on the form designated by USCIS in accordance with the form instructions.

(c) Application period. An application for posthumous citizenship must be filed no later than two years after the date of the decedent's death.

* * * * *8 CFR § 392.4

267. In § 392.4, paragraphs (a) and (e) are revised to read to read as follows:

8 CFR § 392.4

**§ 392.4 Issuance of a certificate of citizenship.**

(a) Approval of application. When an application for posthumous citizenship under this part has been approved, USCIS will issue a Certificate of Citizenship to the applicant in the name of the decedent.

* * * * *

(e) Replacement certificate. An application for a replacement Certificate of Citizenship must be submitted on the form designated by USCIS with the fee specified in 8 CFR 103.7(b)(1) and in accordance with the form instructions.


**PART 499—[REMOVED]**

8 CFR § 499.1

268. Part 499 is removed.


Janet Napolitano,

Secretary.


[FR Doc. 2011-20990 Filed 8-26-11; 8:45 am]

**Immigration Benefits Business Transformation, Increment I, 76 FR 53764-01**

BILLING CODE 9111-97-P

Footnotes

1       The Privacy Act grants United States citizens and lawful permanent residents the right to access and amend their records. DHS
        policy, as a matter of discretion, permits nonimmigrant aliens equivalent ability to access and correct records. Memorandum
        for Directorate and Component Leadership from Hugo Teufel III, Chief Privacy Officer, DHS Privacy Policy Regarding
        Collection, Use, Retention, and Dissemination of Information on Non U.S. Persons, Memorandum 2007 1 (January 19,
        2007), found at http://www.dhs.gov/xlibrary/assets/privacy/privacy    policyguide   2007 1.pdf.

**End of Document**                                    © 20 9 Thomson Reuters. No c a m to or g na  U.S. Government Works.