**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL.; | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *v.* | ) | Case No. 1:18-cv-00068 |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, ET AL.; | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| KARLA PEREZ, ET AL.; | ) | |
| | ) | |
| STATE OF NEW JERSEY, | ) | |
| | ) | |
| *Defendants-Intervenors.* | ) | |
| | ) | |

**PLAINTIFF STATES' REPLY TO**
**DEFENDANT-INTERVENORS' RESPONSES AND**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................ii

TABLE OF AUTHORITIES ...........................................................................iii

SUMMARY OF THE ARGUMENT ............................................................... 1

ARGUMENT ................................................................................................... 2

     I.      Defendant-Intervenors offer no cause for the Court to reconsider its ruling that it can take up Plaintiff States' claims on their merits. ................................................................................................... 2

           A.     Federal Defendants' admission that DACA is substantively unlawful has never deprived this Court of jurisdiction. ............. 2

           B.     Two other U.S. courts of appeals have now agreed that the Federal Defendants' actions related to DACA are reviewable. ................................................................................. 5

           C.     The factual bases for Plaintiff States standing are not in dispute, and DACA Intervenors' legal arguments have already been rejected. ............................................................... 7

     II.     The Fifth Circuit ruled that DAPA exceeded Federal Defendants' statutory authority, and there is no legal ground for "striking DAPA that wouldn't apply to DACA." .................................................. 12

     III.    Regardless of discretion, DACA violated the procedural requirements of the APA because of the "overwhelming evidence" that it confers rights and imposes obligations. ..................................... 15

     IV.    As a matter of law, DACA violates the Take Care Clause because it transforms unlawful conduct into lawful conduct. ............................ 18

     V.     Because the APA requires the 2012 DACA memorandum to be set aside, no injunctive balancing test is needed. ....................................... 19

CONCLUSION............................................................................................... 20

CERTIFICATE OF SERVICE ...................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Am. Bus Ass'n v. United States,*
   627 F.2d 525 (D.C. Cir. 1980) ............................................................................. 17

*Batalla Vidal v. Nielsen,*
   279 F. Supp. 3d 401 (E.D.N.Y. 2018) .................................................................. 20

*Bob Jones Univ. v. United States,*
   461 U.S. 574 (1983) ............................................................................................... 3

*Casa de Maryland v. U.S. Dep't of Homeland Sec.,*
   924 F.3d 684 (4th Cir. 2019) ........................................................................... 6, 20

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971), *abrogated on other grounds by Califano v.*
   *Sanders,* 430 U.S. 99 (1977) ................................................................................ 19

*Dep't of Commerce v. New York,*
   No. 18-966, slip op., 588 U.S. ___ (2019) .............................................................. 9

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ................................................................................................ 5

*INS v. Chadha,*
   462 U.S. 919 (1983) ............................................................................................ 3, 4

*Kirkland v. N.Y. State Dep't of Corr. Servs.,*
   No. 82 CIV. 0295, 1988 WL 108485 (S.D.N.Y. Oct. 12, 1988) ............................. 4

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010) ........................................................................................ 19, 20

*Murphy v. NCAA,*
   138 S. Ct. 1461 (2018) ......................................................................................... 11

*NAACP v. Trump,*
   298 F. Supp. 3d 209 (D.D.C. 2018) ..................................................................... 20

*NCAA v. Governor of N.J.,*
   730 F.3d 208, 223 (3d Cir. 2013), *abrogated on other grounds by*
   *Murphy v. NCAA,* 138 S. Ct. 1461 (2018) ............................................................. 8

*Prof'ls & Patients for Customized Care v. Shalala,*
   56 F.3d 592 (5th Cir. 1995) ................................................................................. 18

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.,*
    908 F.3d 476 (9th Cir. 2018) ................................................................. 6

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
    525 U.S. 471 (1999) ............................................................................. 12

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ...........................5, 6, 8, 13, 16, 17, 18, 19

*Texas v. United States,*
    86 F. Supp. 3d 591 (S.D. Tex. 2015) ................................................... 11

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018) .......................................................................... 6

*United States v. Johnson,*
    319 U.S. 302 (1943) ............................................................................... 4

*United States v. Windsor,*
    570 U.S. 744 (2013) ........................................................................... 3, 4

*Util. Air Reg. Grp. v. EPA,*
    573 U.S. 302 (2014) ............................................................................. 12

*Windsor. Poe v. Ullman,*
    367 U.S. 497 (1961) ............................................................................... 4

## Constitutional Provisions, Statutes, and Rules

U.S. Const. art. I, § 8, cl. 4 ....................................................................... 20

5 U.S.C. § 706(2) ....................................................................................... 19

Fed. R. Civ. P. 65(a)(2) ............................................................................... 2

## SUMMARY OF THE ARGUMENT

Defendant-Intervenors offer no compelling reason for the Court to reconsider its prior ruling that DACA is unlawful. Relying on arguments that have already been rejected, DACA Intervenors spend barely one page addressing this Court's findings that DACA exceeds Federal Defendants' statutory authority. And New Jersey never once acknowledges the "overwhelming evidence" that DACA conferred rights and imposed obligations, meaning it was required to go through notice-and-comment rulemaking.

As for this case's justiciability, Federal Defendants are still granting DACA applications, so there very much remains an active case or controversy. Since the Court's ruling on the preliminary injunction, two other U.S. courts of appeals have confirmed that Federal Defendants' actions related to DACA are reviewable under the APA and the INA. As for standing, Defendant-Intervenors still have not disputed the material facts underlying Plaintiff States' claims—indeed their own witnesses confirm those facts. Nothing has changed to call into question this Court's prior ruling that injunctions from different courts related to a different executive action do not prevent this Court from setting aside the 2012 memorandum that enacted DACA. And the remedy required by the APA does not depend on any type of injunctive balancing test or consideration of geographic scope. DACA is unlawful, so the 2012 memorandum that created the program must be set aside.

# ARGUMENT[1]

## I. Defendant-Intervenors offer no cause for the Court to reconsider its ruling that it can take up Plaintiff States' claims on their merits.

1.      Defendant-Intervenors spend most of their briefing once again arguing that this Court should not rule on the merits of Plaintiff States' claims. This Court has already rejected those arguments. And Defendant-Intervenors provide no reason for it to reconsider those rulings.

### A.      Federal Defendants' admission that DACA is substantively unlawful has never deprived this Court of jurisdiction.

2.      Defendant-Intervenors complain that Federal Defendants "urge the Court to *grant* Plaintiffs' motion for summary judgment" in continuing to claim that the Court lacks jurisdiction to hear this case. *See* Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 30 [ECF No. 399 at 38]. However, from their first filing in response to Plaintiff States' motion for a preliminary injunction, Federal Defendants agreed that "DACA is unlawful because it is an open-ended circumvention of immigration laws that shares the same legal defects that DAPA (and expanded DACA) did." *See* Fed. Defs.' Resp. to Pls.' Mot. for Prelim. Inj. 14–15 [ECF No. 71 at 18–19]. Even though Plaintiff States and Federal Defendants agree that DACA is substantively unlawful, "the Supreme Court's modern pronouncement on the case-and-controversy requirement indicate that this case presents a justiciable

---

[1] The nature and stage of the proceeding and issues to be ruled upon by the Court are detailed in Plaintiff States' Brief in Support of Their Motion for Summary Judgment. ECF No. 357.

   Additionally, Plaintiff States incorporate their briefing in support of their request for a preliminary injunction as if those arguments and evidence were stated in this pleading. *See* Fed. R. Civ. P. 65(a)(2).

controversy." ECF No. 319 at 27 (citing *United States v. Windsor*, 570 U.S. 744, 753 (2013) and *INS v. Chadha*, 462 U.S. 919, 939 (1983)). Defendant-Intervenors ignore the holding of the majority in *Windsor* (and *Chadha*), and instead they cite the dissent as if it is precedent to be followed. However, "even where the Government largely agrees with the opposing party on the merits of the controversy, the Government's intent to enforce the challenged law provided sufficient adverseness to maintain jurisdiction over the suit." ECF No. 319 at 28–29 (internal citations and modification omitted).[2]

3.     Nothing substantive has changed since this Court ruled on the preliminary injunction. Federal Defendants continue to accept DACA applications and implement the 2012 memorandum. "[T]he words of *Chadha* make clear its holding that the refusal of the Executive to provide the relief sought suffices to preserve a justiciable dispute as required by Article III." *Windsor*, 570 U.S. at 759. "The fact that the Government continues DACA because of [other courts'] injunctions does not change the Article III case-or-controversy analysis." ECF No. 319 (citing *Chadha*, 462 U.S. at 940 n.12); *see also Bob Jones Univ. v. United States*, 461 U.S. 574, 585 n.9 (1983). The Supreme Court's holding is directly on point with this case. The cause of Plaintiff States' injuries continues, and Plaintiff States continue to be aggrieved by Federal Defendants' actions.

---

[2] Additionally, as the Court has acknowledged, "it is clear that the Government is vigorously guarding its own interests" by arguing that DACA is unreviewable, did not violate the procedural aspects of the APA, etc. *See* ECF No. 319 at 30.

4.     Likewise, nothing in the Court's prior ruling—nor in *Windsor* or *Chadha*, for that matter—indicate that further discovery is needed to determine that a justiciable controversy exists. Nor have the Defendant-Intervenors provided any authority that discovery should dictate this issue. In fact, despite claiming that discovery should continue on the existence of a case or controversy, New Jersey has not propounded a single discovery request to either Plaintiff States or Federal Defendants. New Jersey complains that Federal Defendants have not briefed certain issues in responding to Plaintiff States' pleadings. However, even if that were a requirement, both New Jersey and the DACA Intervenors continue to ignore their own presence as intervenors and the multitude of *amicus curie* who have vigorously argued about all facets of this controversy.[3] Thus, "the Court is assured that this case presents a justiciable, adverse controversy and that there are minimal prudential concerns with its exercise of jurisdiction." ECF No. 319 at 30.

---

[3] Defendant-Intervenors cite to three cases that predate *Windsor*. *Poe v. Ullman*, 367 U.S. 497, 505-06 (1961); *United States v. Johnson*, 319 U.S. 302, 304 (1943); *Kirkland v. N.Y. State Dep't of Corr. Servs.*, No. 82 CIV. 0295, 1988 WL 108485, at *3 (S.D.N.Y. Oct. 12, 1988). Not only are those cases out of date, they do Defendant-Intervenors no good. In *Kirkland*, the court decided that no case or controversy existed because "[t]here is no external constraint here forcing the parties to adopt adverse positions, as there was in *Chadha*." *Id.* Not so here. Likewise, the only indication of the role of the government intervenors in *Poe* and *Johnson* is that they moved to dismiss the cases due to the lack of a case or controversy. That is far from the case here:

> The Supreme Court in *Windsor* noted that one consideration that may assist in determining the appropriateness of exercising jurisdiction is "the extent to which adversarial presentation of the issues is assured by the participation of *amici curiae* prepared to defend with vigor" the legal issues at hand. *Windsor,* 570 U.S. at 760. The Defendant-Intervenors surely fill this role—perhaps even better than an amicus as suggested by *Windsor*—due to their demonstrated, concrete interest in the outcome of the litigation.

ECF No. 319 at 30.

**B.    Two other U.S. courts of appeals have now agreed that the Federal Defendants' actions related to DACA are reviewable.**

5.      DACA Intervenors once again raise the issue of reviewability and argue that the DACA memorandum is an exercise of enforcement discretion that is unreviewable under the APA. This argument was rejected by this Court in light of the Fifth Circuit's holding that DAPA and Expanded DACA's grant of deferred action is a reviewable agency action. ECF No. 319 at 58 (citing *Texas v. United States*, 809 F.3d 134, 166 (5th Cir. 2015) ("*Texas I*")). In so holding, the Fifth Circuit reasoned that the DAPA program "would affirmatively confer 'lawful presence' and associated benefits on a class of unlawfully present aliens." *Id.* And contrary to Defendant-Intervenors' claim that they need additional discovery on discretion to determine reviewability, the Fifth Circuit's analysis depended on DACA's conferral of those benefits. *Texas I*, 809 F.3d at 165–70. This Court properly applied that binding precedent to the DACA program, "which provides lawful presence and the exact same benefits" to another class of unlawfully present aliens. ECF No. 319 at 58. Defendant-Intervenors provide no compelling authority for distinguishing DAPA and DACA in this context and no reason for this Court to reach a different conclusion regarding reviewability.

6.      DACA Intervenors cite *Heckler v. Chaney* as standing for the proposition that "'an agency's decision not to take enforcement action . . . should be presumed immune from judicial review under §701(a)(2).'" Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 32 [ECF No. 399 at 40] (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). Of course, the Fifth Circuit rejected a similar argument in *Texas I*, 809

F.3d at 164 ("[T]he states' claims do not arise from the Secretary's 'decision . . . against any alien;' instead they stem from his decision to grant lawful presence to millions of illegal aliens on a class-wide basis."). But now a second and third U.S. appellate court have also rejected that argument. *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 699 (4th Cir. 2019); *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 494–504 (9th Cir. 2018). As recently explained by the Fourth Circuit in its consideration of DHS's decision to rescind DACA, "[w]here an agency expresses a broad or general enforcement policy, different considerations than those driving *Chaney*'s presumption are at play." *Casa de Maryland*, 924 F.3d at 699. By granting lawful presence to an entire class of illegal aliens, the DACA program falls outside of *Chaney*'s presumption of unreviewability.[4]  By removing a categorical bar and making an entire class of persons newly eligible for public benefits, the DACA program, like DAPA, "provides a focus for judicial review." ECF No. 319 at 58 (citing *Texas I*, 809 F.3d at 166).[5]

---

[4] DACA Intervenors attempt to distinguish the Fifth Circuit's holding on reviewability by asserting that the DACA-eligible population is "much smaller" than the DAPA-eligible population. Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 33 [ECF No. 399 at 41]. But a population size of approximately 800,000 is hardly small. And, more importantly, this distinction is immaterial for reviewability purposes. ECF No. 319 at 58.

[5] DACA Intervenors also attempt to circumvent the Fifth Circuit's binding precedent by again arguing that *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), has altered the analysis. Once again, they extract excerpts from the Supreme Court's decision in support of their argument. But, in doing so, Intervenors ignore that the Supreme Court addressed a fundamentally different inquiry in *Trump v. Hawaii*. As this court explained, the Supreme Court considered whether it could look past a facially valid presidential proclamation to determine whether the discretionary decision to exclude some classes of aliens was a pretext for constitutional violations. ECF No. 319 at 61. But "[t]here is no claim in this case that the DACA program should be scrutinized to determine whether executive discretion was used to violate an individual right guaranteed by the Constitution." *Id*. As such, the Court's analysis and holding regarding reviewability does not apply to this case.

C. **The factual bases for Plaintiff States standing are not in dispute, and DACA Intervenors' legal arguments have already been rejected.**

7.       The bulk of DACA Intervenors' response is spent retrying failed attacks on Plaintiff States' standing. Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 14–30 [ECF No. 399 at 22–38]. Yet the facts supporting Plaintiff States' standing are not in dispute, and this Court has already rejected DACA Intervenors' legal arguments. The record is replete with examples of increased job competition and costs incurred by Plaintiff States to provide social services to DACA recipients, much of it supplied by DACA Intervenors' own witnesses. *See, e.g.,* Pl. States' App. in Supp. of Their Mot. for Summ. J., Exs. 13–31 [ECF Nos. 358-13–31]. In their response, DACA Intervenors attempt to cover up that evidence while simultaneously reasserting their failed "accounting exercise" defense to Plaintiff States' standing.

8.       For example, they claim that Dr. Perryman "is not aware of any costs to the State of Texas as a result of DACA and he provides no evidence of such costs in his report or analysis." Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 15 [ECF No. 399 at 23]. That is false. In Exhibit 6 attached to their response, Dr. Perryman offers the same cost-benefit analysis that he did at the preliminary injunction stage. ECF No. 400-1 at ¶ 39. A cost-benefit analysis requires determining the cost to weigh against the benefit, and Dr. Perryman admitted that he did as much for DACA recipients in Texas. Pl. States' Second Suppl. App. in Supp. of Their Mot for Prelim. Inj., Ex. 52, at App. 1651 [ECF No. 284-10 at 17] ("Q: Okay. So when you set up the system, it did, in fact, calculate the projected costs incurred by Texas because of DACA recipients in the state? A: Yes.").

7

9.     That calculation resulted in an estimated cost of $250,000,000 each year for Texas to provide social services to DACA recipients. Pl. States' App. in Supp. of Their Mot. for Summ. J., Ex. 28 [ECF No. 358-28]; *see also* Pl. States' Second Suppl. App. in Supp. of Their Mot. for Prelim. Inj., Ex. 52, at App. 1656 [ECF No. 284-10 at 22] ("Do you remember those costs that you were trying to estimate, were those for the same types of services that are reported in Exhibit 3? A: They would be, yes. Q: So that would be health care, for example? A: Health care. Q: Education? A: Education. Q: Law enforcement? A: Law enforcement, social services. Q: And those costs would be incurred in part by the state because of DACA recipients? A. Right, that's correct.").

10.     Even while they attempt to disclaim Dr. Perryman's underlying calculations, DACA Intervenors reassert his cost-benefit analysis at page 24 of their response. ECF No. 399 at 32. But, as the Fifth Circuit has held, "'standing analysis is not an accounting exercise.'" *Texas I*, 809 F.3d at 156 (quoting *NCAA v. Governor of N.J.*, 730 F.3d 208, 223 (3d Cir. 2013), *abrogated on other grounds by Murphy v. NCAA*, 138 S. Ct. 1461 (2018)).

11.     Similar to their request that the Court consider some parts of Dr. Perryman's analysis while ignoring others, DACA Intervenors again ask this Court to selectively consider only some of the survey results of Dr. Tom Wong. As an initial matter, DACA Intervenors incorrectly refer to him as "New Jersey's expert." In fact, Dr. Wong was an expert put forth by both New Jersey and DACA Intervenors in response to Plaintiff States' motion for preliminary injunction. App. in Supp. of Def.-

8

Intervenors' Opp'n to Pls.' Mot. for Prelim. Inj. Ex. 75 [ECF No. 225-3 at 170]. And DACA Intervenors' other experts rely heavily on Dr. Wong's survey results for their analysis. *See*, *e.g.*, Exs. in Supp. of Def.-Intervenors' Opp'n to Pls.' Mot. for Summ. J. Ex. 6 [ECF No. 400.1 at 87–112] (Dr. Perryman's declaration cites to Dr. Wong's survey more than 15 times); *id.* at Ex. 4 [ECF No. 400-1 at 51] (Decl. of Leighton Ku); *id.* at Ex. 5 [ECF No. 400-1 at 69] (Decl. of Meg Wiehe and Misha Hill).

12.    The Court has already rejected DACA Intervenors' criticisms of Dr. Wong's survey. ECF No. 319 at 52–53.[6] And, critically for the purposes of the motion for summary judgment, DACA Intervenors have never argued that not a single DACA recipient will leave the United States should DACA end. *See also* Pl. States' Mot. for Prelim. Inj. Ex. 31 [ECF No. 219-11] (New Jersey's DACA-recipient witness confirming she would leave the country should DACA end). In fact, DACA Intervenors admit that "any federal policy, and any federal immigration policy, is certain to have consequences for whether there are more (or fewer) residents in a given state, with attendant changes in healthcare, education, and law enforcement costs . . . ." Def.-Intervenors' Opp'n  Def.-Intervenors' Opp'n to Pls.' Mot. for Prelim. Inj. 30 [ECF No. 224 at 41] (internal quotation omitted); *cf. Dep't of Commerce v. New York*, No. 18-966, slip op. at 11, 588 U.S. ___ (2019) ("Because Article III requires no more than *de*

---

[6] DACA Intervenors argue that the question could have been asking whether DACA recipients would take visits abroad if DACA ended with the intent to return to the United States. That is nonsensical. The only way DACA recipients could reasonably expect to leave and then return lawfully is by obtaining advance parole made available through DACA. In other words, DACA Intervenors argue that the question should be read to ask how likely it is that DACA recipients would leave the country with the intent to return even though they would have no lawful means to do so.

*facto* causality, traceability is satisfied here." (internal citations omitted)).  Thus, that fact is not in genuine dispute.

13.     As for Plaintiff States' *parens patriae* standing, the competition caused by DACA is undisputed and not limited to just Texas.[7] In addition to the declaration from Dr. Donald Deere,[8] the Court has previously cited to the deposition of DACA Intervenors' expert Ike Brannon, and DACA Intervenors again attach the declaration of Meg Wiehe and Misha Hill confirming that "the work authorizations and deferral from deportation provided by DACA allow recipients to better compete with legally present workers . . . ." Exs. in Supp. of Def.-Intervenors' Opp'n to Pls.' Mot. for Summ. J. Ex. 5 [ECF No. 400.1 at 73]. The Court has already rejected DACA Intervenors' argument that Plaintiff States' cannot sue Federal Defendants based on *parens patriae* standing. ECF No. 319 at 40. DACA Intervenors argue that the harm to some workers may be outweighed by the benefit to others. But that is the impermissible accounting exercise that the Fifth Circuit has already rejected. *Id.* at 54. And the States do not need to add up how many workers may have benefited from an unlawful program before suing to protect all of its residents' interest in the enforcement of Congress's duly enacted employment authorization scheme.

14.     As for redressability, the Court has already ruled that its power to set aside the 2012 DACA memorandum is not limited by the cases challenging the 2017

---

[7] Plaintiff States incorporate their response to DACA Intervenors' latest motion to dismiss the Plaintiff States other than Texas, ECF No. 387, as if those arguments were fully set forth here.

[8] DACA Intervenors have filed a motion to strike Plaintiff States' experts, ECF No. 390, and Plaintiff States have filed a response, ECF No. 411. Plaintiff States incorporate the arguments made in their response as if they were fully set forth here.

attempted rescission of DACA. ECF No. 319 at 13–26. And setting aside the 2012 DACA memorandum will provide Plaintiff States with their requested relief without requiring the Court to enter an injunction. ECF No. 319 at 113 (noting that the "dissolution or the enjoining of the ongoing DACA program would have immediate effects . . . ."). Even less so than in the case of granting a preliminary injunction, a "ruling herein [would] not leave the parties facing conflicting injunctions," and "a different result here certainly would not disrupt any sense of uniformity." ECF No. 319 at 17–18. The other courts on which Defendant-Intervenors rely were asked to rule on the attempted 2017 rescission of DACA. Any injunction issued by those courts should therefore prevent Federal Defendants only from implementing the 2017 rescission. Any injunction mandating that Federal Defendants continue to implement the 2012 DACA memorandum is overbroad, and Plaintiff States do not object to Federal Defendants' request for a 14-day stay in order to seek any relief they may believe is necessary in the rescission cases.

15.     Finally, the Court has already found that Plaintiff States are due special solicitude in the standing analysis, even after *Murphy v. NCAA*, 138 S. Ct. 1461 (2018). ECF No. 319 at 37; *see also* Pl. States' Post-Disc. Resp. Br. in Supp. of Their. Mot. for Prelim. Inj. 44 [ECF No. 282 at 51]. And Plaintiff States' claim of abdication standing is guided by this Court's ruling in *Texas v. United States*, 86 F. Supp. 3d 591, 636–43 (S.D. Tex. 2015).

16.     This Court has already ruled that the evidence before it proves that Plaintiff States have standing. ECF No. 319 at 55 n.51 ("The Court notes that even

11

without a finding of special solicitude under *Massachusetts v. EPA,* it still would have found the Plaintiff States had standing."). Defendant-Intervenors have not provided any compelling reason for the Court to change that ruling, or any of its other rulings that dispose of all of the other jurisdictional challenges. Thus, as with its ruling on the preliminary injunction, "the Court may proceed to address the merits." ECF No. 319 at 55.

## II. The Fifth Circuit ruled that DAPA exceeded Federal Defendants' statutory authority, and there is no legal ground for "striking DAPA that wouldn't apply to DACA."

17.    In response to Plaintiff States' substantive APA claim, DACA Intervenors make just three brief arguments—all of which the Court has previously rejected.

18.    First, they claim that deferred action is an "established practice of DHS, recognized by Congress, and supported by historical precedent." Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 38 [ECF No. 399 at 46]. For support, they have one lone citation to *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484–85 (1999), which describes a form of deferred action unrecognizable from anything conveyed by DACA, Expanded DACA, or DAPA. An alien's unlawful presence is "*an ongoing violation* of United States law," even though the Executive has discretion to forbear from removal in certain circumstances. *Id.* at 491. DACA cannot be "an exercise of [the Executive's] enforcement discretion" because "it purports to *alter* [INA] requirements" and pronounce "that otherwise-prohibited conduct will not violate the Act." *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 326 (2014).  As this Court has ruled, DACA's "closest analog is not any of the programs cited by Defendant-

Intervenors; DACA is most like DAPA and is directly analogous to Expanded DACA. As was DAPA, the DACA program is not authorized by historical precedent." ECF No. 319 at 89.

19.     Second, they claim that the "discretionary grant of work authorization is a separate issue from deferred action and has no bearing on the legality of deferred action or DACA." Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 38 [ECF No. 399 at 46]. Again, the Court has already rejected that argument based on the binding precedent from the Fifth Circuit. ECF No. 319 at 75–76 n.79 ("This argument was specifically dispatched by the Fifth Circuit in *Texas I*, 809 F.3d at 168–69. There, the court said that such a reading of the regulation—to allow the agency to issue employment authorization to any class of illegal aliens whom the DHS declines to remove—would be outside the powers authorized by the INA. *Id.*"). And Plaintiff States have challenged the application of those regulations to the DACA population. Pl. States' First Am. Compl. ¶¶ 344–46 [ECF No. 84-1 at 71]. DACA Intervenors claim that "DACA recipients would be able to work irrespective of DACA" and cite to provisions that allow work authorization in narrow circumstances. Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 16 [ECF No. 399 at 24]. There is nothing in those provisions to suggest that the Executive has the authority to grant unfettered work authorization on such a massive scale.

20.     Lastly, DACA Intervenors argue that there is no evidence that any DACA recipient has used advanced parole as a means to secure lawful entry in order to adjust status. Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 39 [ECF No.

399 at 47]. However, that is not the relevant inquiry. Through advance parole, DACA created a new pathway to citizenship for some recipients by providing a means for them to gain lawful entry into the United States. DACA Intervenors claim that advance parole "does not confer immigration status either." *Id.* But being paroled into the United States has meaningful consequences and comes with attendant benefits. DACA makes that available to a class of individuals whom Congress has determined are unlawfully present. DACA Intervenors do not dispute that, and they cannot dispute that based on the statements of their own witnesses. *See, e.g.*, Pl. States' Suppl. App. in Supp. of Their Mot. for Prelim. Inj. Ex. 24 [ECF No. 219-4]; Pl. States' App. in Supp. of Their Mot. for Summ. J. Ex. 5 [ECF No. 358-5].[9]

21.    For its part, New Jersey claims that a material fact question exists regarding the size of the DACA population. It does not. *Compare* Pl. States' App. in Supp. of Their Mot. for Summ. J. Ex. 2 [ECF No. 358-2] *with* Exs. in Supp. of Def.-Intervenors' Opp'n to Pls.' Mot. for Summ. J. Ex. 62-G [ECF No. 400-9 at 180]. To the extent that there are slight variations, that is not material to the Court's analysis. And even if there was some greater level of uncertainty, that it not relevant to whether DACA violates Congress's duly enacted immigration scheme. ECF No. 319 at 86 ("The fact that DAPA was three times the size of DACA is of no *legal* significance."); *see also id.* at 87 ("The most troubling aspect of the position of the

---

[9] Even if Plaintiff States did have to prove that DACA has allowed some number of DACA recipients to adjust their status because of advance parole, Defendant-Intervenors' own witness admits that this has happened. Pl. States' Suppl. App. in Supp. of Their Mot. for Prelim. Inj. Ex. 24 [ECF No. 219-4]; *see also* Pl. States' Post-Disc. Resp. Br. in Supp. of Their Mot. for Prelim. Inj. 42–43 [ECF No. 282 at 49–50] (discussing two of the DACA Intervenors who have applied for and been granted advance parole).

Defendant-Intervenors is that, using their logic, the DHS could just grant deferred action to smaller groups of 750,000 to 1.5 million (DACA size) more frequently and still give the entire illegal population lawful presence.").[10]

22.    Finally, New Jersey improperly attempts to interject the alleged dispute regarding the use of discretion into its analysis of the substantive unlawfulness of DACA.[11] The Court's prior ruling that DACA is foreclosed by Congress's immigration statutes did not depend on analyzing the level of purported discretion being exercised. *See generally* ECF No. 319 at 67–90. And DACA is not merely the exercise of discretion to abandon removal proceedings on an individualized basis.[12] Instead, the program violates the INA because it renders unlawful presence lawful and confers a host of benefits on that basis—all of which run counter to Congress's carefully crafted immigration plan.

## III. Regardless of discretion, DACA violated the procedural requirements of the APA because of the "overwhelming evidence" that it confers rights and imposes obligations.

23.    Defendant-Intervenors largely ignore this Court's previous ruling regarding the procedural APA claim. DACA Intervenors address the procedural claim only in the context of their failed argument that DACA is unreviewable. And New Jersey never once addresses this Court's ruling that DACA required notice-and-

---

[10] Additionally, the "Family Fairness" program New Jersey attempts to analogize to granted relief to only 1% of the country's unlawfully present aliens (about 47,000 people). Pls. Mot. for Prelim. Inj. Ex. 7 [ECF No. 6 at 405].

[11] Again, New Jersey makes this claim without ever having served a discovery request.

[12] Plaintiff States do not challenge the Executive's separate discretion to pursue or defer removal proceedings. Nor do Plaintiff States challenge the ability to defer removal proceedings to the class of aliens comprising DACA recipients.

comment rulemaking because it confers rights and imposes obligations. Instead, Defendant-Intervenors focus on the need for discovery related to whether discretion is actually exercised by agency officials.[13] But evidence of discretion would not solve their greatest problem with the procedural APA claim: that DACA is a substantive rule because it confers rights and imposes obligations. ECF No. 319 at 103.

24.     The dispute between the parties turns on whether DACA announced a substantive rule or whether it is a "general statement of policy." If DACA is a substantive rule, it should have complied with the notice-and-comment procedures in the APA. In attempting to show that DACA is a policy statement, Defendant-Intervenors raise arguments already rejected by this Court. They assert that DACA is a policy statement because Federal Defendants characterized it as such. New Jersey's Resp. to Pl. States' Mot. for Summ. J. 9–10 [ECF No. 397 at 14–15]; Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 36 [ECF No. 399 at 44]. But this Court found that "while labels are not unimportant, the true test is how the program is actually administered and whether it affects rights and obligations." ECF No. 319 at 94. The Court then articulated the relevant analysis for making this determination from the Fifth Circuit's decision in *Texas I*. To distinguish policy statements from substantive rules, courts consider: "whether the rule (1) impose[s] any rights and obligations and (2) genuinely leaves the agency and its decision-makers free to

---

[13] Plaintiff States continue to contend that the evidence attached to their motion for summary judgment and preliminary injunction briefing conclusively proves that Immigration Service Officers do not exercise discretion in adjudicating DACA applications. *See, e.g.*, Pl. States' Mot. for Summ. J. Ex. 12 ("USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion.").

exercise discretion." *Id.* at 96 (citing *Texas I*, 809 F.3d at 171). This Court specifically cautioned that these two criteria are not treated like different elements of a cause of action, both of which must be proved. *Id.* Instead, a "matter of judgment is involved in distinguishing between rules, however discretionary in form, that effectively circumscribe administrative choice." *Id.* (citing *Am. Bus Ass'n v. United States*, 627 F.2d 525, 530 (D.C. Cir. 1980)).

25.     Defendant-Intervenors overlook those words of caution and incorrectly treat the criteria identified in *Texas I* as distinct requirements. They argue that a ruling for Plaintiff States on the procedural APA claim requires more proof that the agency did not exercise discretion in reviewing DACA applications.[14] The DACA Intervenors go so far as attempting to elevate the discretion issue by claiming that it "is critical, as it bears on whether or not DACA confers rights and obligations upon recipients." Def.-Intervenors' Br. in Opp'n to Pls.' Mot. for Summ. J. 36 [ECF No. 399 at 44] (internal quotation omitted). But the exercise of discretion is not the decisive component of the analysis. Nor is it so intertwined with the consideration of the rights and obligations as to render this Court unable to rule based on the present record. Instead, as this Court noted, the exercise of discretion should be considered alongside the evidence of the conferral of rights and imposition of obligations. ECF No. 319 at 96. Given the overwhelming evidence of DACA's attendant rights and obligations,

---

[14] Again, New Jersey makes this claim without ever having served a discovery request.

DACA required notice-and-comment rulemaking regardless of the degree of discretion exercised by individual Immigration Service Officers.[15]

## IV.   As a matter of law, DACA violates the Take Care Clause because it transforms unlawful conduct into lawful conduct.

26.   Defendant-Intervenors dedicate only a single page to the Take Care Clause. Instead of explaining how the creation of a blanket amnesty program such as DACA aligns with the duty to enforce immigration law, they seek to postpone a ruling based solely on a discovery dispute related to prosecutorial discretion. This dilatory effort must fail.

27.   The Take Care Clause analysis is a question of law; thus, more discovery related to prosecutorial discretion is irrelevant. What is more, DACA is simply irreconcilable with the Take Care Clause, a reality that Defendant-Intervenors leave unaddressed in their oppositions. DACA is not an act of mere prosecutorial discretion because it transforms unlawful conduct into lawful conduct despite the explicit command of Congress. *See Texas I*, 809 F.3d at 166. Not only that, DACA rewards those who illegally entered the United States with work authorization and a pathway to citizenship. This is an "untenable" conception of Executive power, *id.* at 184, and contrary to even a most basic concept of separation of power. And Defendant-

---

[15] DACA affects the rights and obligations of DACA recipients because it provides them with lawful presence, the right to apply for work authorization, social security, Medicare, access to advance parole, forbearance from the Executive implementing enforcement proceedings, and an array of other federal and state benefits. ECF No. 319 at 97. The program also affects the obligations of the states by requiring that they spend money on various social services. *Id.* As this Court noted, "these are certainly the kinds of rights and obligations that give a program 'binding effect' such that the notice-and-comment procedures are required." *Id.* at 97 (citing *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995)). The critical factor is that, at a minimum, DACA removes obstacles to these benefits and rights for DACA recipients, and imposed obligations on the States and federal government to recognize attendant benefits for all DACA recipients.

Intervenors cannot argue otherwise. As a result, the Court should grant summary judgment on the Plaintiff States' Take Care Clause claim.

## V. Because the APA requires the 2012 DACA memorandum to be set aside, no injunctive balancing test is needed.

28.     Incredibly, Defendant-Intervenors ask this Court to rule that DACA is unlawful and yet, somehow, it should remain in effect. Not only is that argument illogical, it is unsupported by the plain text of the APA or controlling case law.[16]

29.     Section 706 of the APA is clear. DACA is unlawful, so it must be set aside. *See also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("In all cases agency action *must be set aside* if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements" (emphasis added) (quoting 5 U.S.C. § 706(2))).

30.     As such there is no need to run through the four factors applicable to a request for a permanent injunction.[17] In fact, an injunction would "not have any

---

[16] Plaintiff States extensively briefed this issue in their response to DACA Intervenors' motion to compel. ECF No. 387. Plaintiff States incorporate those arguments as if they were fully set forth here.

[17] Even if injunctive relief were necessary to remedy Plaintiffs' injuries, Plaintiff States would be entitled to such relief. With respect to the merits, the binding precedent and this Court's rulings already establish that DACA is procedurally and substantively unlawful. *See Texas I*, 809 F.3d at 171–78. With respect to irreparable harm, this Court has already held that the evidence of ongoing damages supports "a finding of injury that is irreparable." ECF No. 319 at 107. With respect to the balance of hardships between the parties, Plaintiff States are not seeking immediate termination of existing grants of deferred action status but would be agreeable to a judicial stay to allow for an orderly wind-down of the program. Pl. States' Br. in Supp. of Mot. for Summ. J. 45, ECF No. 357. Protecting the rule of law by giving effect to Congress's comprehensive statutory scheme for immigration—rather than a program that override these laws without even allowing for the public to be heard through the notice and comment process—clearly evidences the public benefit manifest in bringing an orderly end to this example of executive overreach and restoring proper principles of separation of powers.

meaningful practical effect independent of its vacatur." *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165 (2010). And "drastic and extraordinary remedy" of a permanent injunction should not issue "[i]f a less drastic remedy," such as a vacatur, is sufficient to redress the plaintiff's injuries. *Id.* at 165–66.

31.     Likewise, as this Court has already stated, the "requirement that immigration policy be uniform" must inform the remedial analysis. ECF No. 319 at 17. Setting aside the 2012 memorandum is consistent with "strong federal interest in the uniformity of federal immigration law." *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 438 (E.D.N.Y. 2018) (citing U.S. Const. art. I, § 8, cl. 4).

32.     None of the courts vacating the 2017 attempt to rescind DACA did any type of balancing test or considered limiting the geographic scope of their relief. *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 705 (4th Cir. 2019) ("[W]e hold that the Department's decision to rescind DACA was arbitrary and capricious and must be set aside."); *NAACP v. Trump*, 298 F. Supp. 3d 209, 216 (D.D.C. 2018) ("[T]he decision to rescind DACA will be vacated and remanded to DHS."). And there is no need for this Court to do so in this case.

## CONCLUSION

DACA remains just as unlawful today as it was when the Court ruled on Plaintiff State's request for a preliminary injunction. As such, Plaintiff States respectfully request that the Court declare DACA unlawful and set aside the 2012 memorandum that enacted the program.

June 28, 2019

STEVE MARSHALL
Attorney General of Alabama

LESLIE RUTLEDGE
Attorney General of Arkansas

DEREK SCHMIDT
Attorney General of Kansas

JEFF LANDRY
Attorney General of Louisiana

DOUGLAS J. PETERSON
Attorney General of Nebraska

ALAN WILSON
Attorney General of South Carolina

PATRICK MORRISEY
Attorney General of West Virginia

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Attorney-in-Charge
Trial Counsel for Civil Litigation
Tx. State Bar No. 24081854
Southern District of Texas No. 2985472
Tel.: (512) 463-2100; Fax: (512) 936-0545
todd.disher@oag.texas.gov
P.O. Box 12548
Austin, Texas 78711-2548

MICHAEL TOTH
Special Counsel for Civil Litigation

ADAM ARTHUR BIGGS
Assistant Attorney General

**COUNSEL FOR PLAINTIFF STATES**

21

## CERTIFICATE OF SERVICE

I certify that on June 28, 2019, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Trial Counsel for Civil Litigation

**COUNSEL FOR PLAINTIFF STATES**

22