FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants,<br><br>and<br><br>KARLA PEREZ, *et al.*,<br><br>    Defendant-Intervenors,<br><br>and<br><br>STATE OF NEW JERSEY,<br><br>    Defendant-Intervenor. | Case No. 1:18-CV-68 |

## REPLY IN SUPPORT OF DEFENDANT-INTERVENORS' MOTION TO STRIKE PLAINTIFF STATES' EXPERTS

**TABLE OF CONTENTS**

I. STATEMENT OF THE ISSUES TO BE RULED UPON
BY THE COURT ............................................................................................................1

II. SUMMARY OF THE ARGUMENT .............................................................................1

III. ARGUMENT ....................................................................................................................2

    A. The *Daubert* Standards Apply Here ......................................................................2

    B. Plaintiff States Fail to Rebut the Evidence That Their
       Witnesses are Unqualified and Offer Testimony that is
       Unreliable and Irrelevant ........................................................................................3

       1. *The Methodology Employed by Plaintiff States'*
          *Experts is Unreliable* ..................................................................................4

           a. Donald Deere ................................................................................5

           b. Lloyd Potter ..................................................................................6

       2. *Insufficient Facts Render Expert Testimony Unreliable*
          *and Inadmissible* ........................................................................................7

       3. *Defendant-Intervenors' Experts Criticized the*
          *Methodology and Disagreed With the Conclusions of*
          *Plaintiff States' Experts* ............................................................................9

       4. *Plaintiff States' Experts are not Qualified to Offer*
          *Their Opinions* .........................................................................................11

IV. CONCLUSION .............................................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**

*Anascape, Ltd. v. Microsoft Corp.*,
   No. CIV.A. 9:06CV158, 2008 WL 7180757 (E.D. Tex. Apr. 28, 2008) .................................. 8

*Atl. Specialty Ins. Co. v. Porter, Inc.*,
   742 Fed. Appx. 850 (5th Cir. 2018) ............................................................................... 2, 6, 8

*Carroll v. Morgan*,
   17 F.3d 787 (5th Cir. 1994) ................................................................................................ 10

*Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*,
   753 F. App'x 191 (5th Cir. 2018) ....................................................................................... 12

*CQ, Inc. v. TXU Mining Co., L.P.*,
   565 F.3d 268 (5th Cir. 2009) ................................................................................................ 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .............................................................................................................. 3

*Floyd v. Hefner*,
   556 F. Supp. 2d 617 (S.D. Tex. 2008) ................................................................................ 11

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .............................................................................................................. 6

*Gilmore v. WWL-TV, Inc.*,
   No. CIV.A. 01-3606, 2002 WL 31819135 (E.D. La. Dec. 12, 2002) ................................... 7

*Hixson v. Houston Indep. Sch. Dist.*,
   No. 4:09-CV-3949, 2011 WL 3648104 (S.D. Tex. Aug. 17, 2011) ..................................... 7

*James v. United States*,
   No. CV SA-12-CA-800-FB, 2013 WL 12106710 (W.D. Tex. June 24, 2013) .................. 10

*Johnson v. Arkema, Inc.*,
   685 F.3d 452 (5th Cir. 2012) ................................................................................................ 3

*Jonibach Mgmt. Tr. v. Wartburg Enters.*,
   750 F.3d 486 (5th Cir. 2014) ................................................................................................ 3

*Kossman Contracting, Co. v. City of Houston*,
   No. CV H-14-1203, 2016 WL 11473826- (S.D. Tex. Feb. 17, 2016) ............................ 2, 4, 6

*Michael Kors, L.L.C v. Hernandez Int'l Inc.*,
    No. 4:15-CV-0844, 2016 WL 6306129 ................................................................................ 2, 3

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) .................................................................................................. 3

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000) .................................................................................................. 2

*Nielsen v. Alcon, Inc.*,
    No. 3:08-CV-2239-B-BD, 2011 WL 4529762 (N.D. Tex. Sept. 2, 2011) ................................ 8

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) .................................................................................................. 4

*Thomas v. Deloitte Consulting LP*,
    No. 3-02-CV-0343-M, 2004 WL 5499955 (N.D. Tex. Nov. 30, 2004) ................................ 10

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*,
    80 F.3d 1074 (5th Cir. 1996) ............................................................................................ 8, 10

*United States v. Wen Chyu Liu*,
    716 F.3d 159 (5th Cir. 2013) ................................................................................................ 12

*Wilson v. Woods*,
    163 F.3d 935 (5th Cir. 1999) ................................................................................................ 11

**RULES**

Fed. R. Civ. P. 702 ........................................................................................................... 3, 7, 12

I.      STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

Whether the Court should strike Plaintiffs' proffered expert witnesses when those witnesses concede they employed no scientific methodology, possess no information about DACA recipients to support their opinions, and lack expertise in the subject area.

II.     SUMMARY OF THE ARGUMENT

Plaintiff States have failed to meet their burden of showing by a preponderance of the evidence that Dr. Deere and Dr. Potter are qualified to offer their expert opinions and that their testimony is reliable and relevant.

As to the reliability of these experts' methodology, despite Plaintiff States' vague claims that their experts "looked at data," "reviewed relevant literature," and utilized their "knowledge, skill, training, experience, training, or education," Dkt. 411 ¶ 14, the opposite is true.  Dr. Deere and Dr. Potter looked at no information related to DACA recipients.  Their complete lack of information about DACA recipients, combined with their admitted failure to apply any type of scientific methodology and lack of subject matter expertise, renders their purportedly expert testimony inadmissible.

Plaintiff States also argue that their experts' testimony is reliable because Defendant-Intervenors' experts and *amici curiae* agree with Dr. Deere's and Dr. Potter's ultimate conclusions.  *Id.* ¶ 15.  That is false.  Defendant-Intervenors' experts fundamentally disagree with Dr. Potter's and Dr. Deere's testimony and extensively criticized their methodology and unsupported assumptions.

Finally, while Plaintiff States claim that their proffered experts' lack of scientific expertise, method, and data "goes to the weight to be given, rather than the admissibility of, [their] testimony," *id.* ¶ 16, governing case law requires exclusion of the challenged testimony.

1

Because Dr. Deere and Dr. Potter are unqualified to offer expert opinions and their testimony is unreliable and irrelevant, their testimony is inadmissible, and should be excluded in its entirety.

### III. ARGUMENT

#### A. The *Daubert* Standards Apply Here

As a threshold matter, Plaintiff States are wrong to suggest that the instant motion is "nearly useless" because *Daubert* applies with less force in the context of summary judgment or a bench trial. *See* Dkt. 411 ¶¶ 2, 5-7. In fact, courts routinely exercise their gatekeeping function to ensure that expert testimony is both reliable and relevant by granting motions to exclude at the summary judgment stage and in bench trials. In bench trials in the Fifth Circuit, "[a] trial judge serves as a gatekeeper and must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 Fed. Appx. 850, 852 (5th Cir. 2018) (internal quotation marks omitted) (affirming exclusion of expert testimony in bench trial); *see also Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) ("The district court acted well within its discretion in evaluating the reliability of Dr. Benz' evidence at the summary judgment stage[.]"); *Michael Kors, L.L.C v. Hernandez Int'l Inc.*, No. 4:15-CV-0844, 2016 WL 6306129, at *18 (S.D. Tex. Oct. 27, 2016) (excluding proffered expert at summary judgment stage); *Kossman Contracting, Co. v. City of Houston*, No. CV H-14-1203, 2016 WL 11473826, at *11 (S.D. Tex. Feb. 17, 2016) (at summary judgment, rejecting proffered expert because his opinion was "theoretical" and had "no basis in objective evidence, such as data about or testimony of construction firms in the relevant market area that support his assumptions about available MWBEs or comparative studies that controlled for the factors about which he complained.").

Second, Plaintiff States are wrong to suggest that the question of their experts' admissibility has already been decided by this Court. It has not. A motion for preliminary injunction serves a "limited purpose" and thus such motion is resolved "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Jonibach Mgmt. Tr. v. Wartburg Enters.*, 750 F.3d 486, 491 (5th Cir. 2014) (internal quotation marks and citations omitted). Consequently, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* In contrast, at the motion for summary judgment stage and at trial, "[t]he party proffering expert testimony has the burden of establishing *by a preponderance of the evidence* that the challenged expert testimony is admissible." *Michael Kors, L.L.C.*, 2016 WL 6306129, at *16 (internal citation omitted) (emphasis added); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, n. 10 (1993) (citation omitted) (preliminary questions about a witness's qualifications or admissibility of evidence "should be established by a preponderance of proof"); *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)) (same). The fact that the Court referred to Dr. Potter and Dr. Deere's testimony in its denial of Plaintiff States' motion for preliminary injunction does not end the inquiry into the admissibility of those experts' testimony at this subsequent phase of the litigation.

### B. Plaintiff States Fail to Rebut the Evidence That Their Witnesses are Unqualified and Offer Testimony that is Unreliable and Irrelevant

Plaintiff States have not met their burden under Fed. R. Civ. P. 702, and their vague references to methodology and qualifications do not satisfy the preponderance of evidence test. The proffered witnesses' own testimony established that they lacked facts or data to support their

3

speculations, and showed that they neither employed reliable methods nor were qualified to render expert opinions.

### 1. The Methodology Employed by Plaintiff States' Experts is Unreliable

Without citing to any evidentiary support, Plaintiff States categorically claim that "nothing about the methodology used by Dr. Deere and Dr. Potter is unreliable" and spend the following two short sentences explaining why that is the case:

> Dr. Deere looked at data related to the DACA population, reviewed relevant literature, and applied both to the facts at hand utilizing his "knowledge, skill, experience, training, or education" and basic concepts of labor economics. Similarly, Dr. Potter reviewed the relevant literature and reached his conclusion about DACA recipients leaving the United States utilizing his "knowledge, skill, experience, training, or education" and basic concepts of demography.

Dkt. 411 ¶ 14. These unsupported and bare assertions are contrary to the evidence, and entirely fail to refute the myriad of methodological flaws addressed in Defendant-Intervenors' motion. These flaws render the expert testimony inadmissible. *See, e.g., Kossman Contracting, Co.*, 2016 WL 11473826 at *12 ("[The challenged expert] Sullivan articulates no method at all, and Plaintiff is of no help to Sullivan by describing Sullivan's method as 'the application of extensive experience.' Experience is not method.").[1]

---

[1] Relatedly, Plaintiff States mischaracterize Defendant-Intervenors' arguments and the holding of *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) when they mistakenly claim that "Defendant-Intervenors' relevance arguments relate[] to the absence of a quantitative analysis of the damage caused by DACA recipients" and that this Court already found that the standing analysis is "qualitative, not quantitative, in nature" and "does not hinge on the damage caused by any specific DACA recipient but instead on the damage caused by the entire program." Dkt. 411 ¶ 17-18 (citing *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017)). *OCA-Greater Houston* does not dispense with Plaintiff States' burden to prove: (1) an injury-in-fact that is concrete and particularized, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury be likely to be redressed by a favorable ruling by this Court. *See OCA-Greater Houston*, 867 F.3d at 610. Dr. Potter's and Dr. Deere's expert reports are irrelevant because they do not establish *any* injury caused by DACA (whether that be an injury by the entire initiative or any specific DACA recipient). *See* Dkt. 390 at 14-15, 20.

a. Donald Deere

With respect to Dr. Donald Deere, Plaintiff States do not refute with any evidence that Dr. Deere:

- Did not conduct any type of scientific or statistical analysis or rely on any studies related to the ACA and its effect on employment hiring practices;

- Made assumptions without talking to any hiring managers or human resource representatives and has zero information on how many businesses fit into his hypothetical scenario;

- Did not do any analysis of or research into businesses' knowledge of how the ACA penalty applies or employer awareness of eligibility of employees for premium subsidies;

- Did no analysis of how many U.S. citizens or lawful residents are equally inexpensive as DACA recipients in that they do not trigger the ACA penalty;

- Did not know whether employers even know of an applicant's work authorization through DACA before being hired;

- Did not consider any other variables affecting hiring decisions, such as cost of training, employee demographics, and applicants' earning potential and held all other factors in the economy constant, even though he conceded that overall market demand conditions change; and

- Made no calculations regarding the degree to which wages would be reduced because of immigration and has not studied immigration's effect on the economy.

*See* Dkt. 390 at 10-16.

Plaintiff States' response thus fails to show how Dr. Deere's testimony is reliable under a preponderance of the evidence test. Plaintiff States' reference to Dr. Deere's review of "data related to DACA population" presumably refers to footnote 2 of Dr. Deere's expert report, which is a link to publicly available data from USCIS about the number of DACA recipients as of July 31, 2018. *See* Dkt. 358-13 at 4, n. 2. This data is not a sufficient basis for Dr. Deere's opinion on hiring decisions as a result of DACA and the ACA employer mandate, or his conclusion that DACA puts downward pressure on wages. Similarly, Plaintiff States' claim that Dr. Deere

5

"reviewed relevant literature" and "applied [] the facts," Dkt. 411 ¶ 14, is an amorphous, unsupported argument that fails to establish his opinion on labor market distortion is reliable and that is wholly at odds with Dr. Deere's own deposition testimony.

Where, as here, a proffered expert lacks critical information (such as information about DACA recipients, the employers who consider them for hiring, and the hiring process), and does nothing to confirm his speculative hypothesis, his proposed causal relationship between DACA, the ACA, and employer hiring practices is "nothing more than a possibility rooted in speculation," *Atl. Specialty Ins. Co.*, 742 Fed. App'x. at 854–55, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Kossman Contracting, Co.*, 2016 WL 11473826, at *12 (rejecting proffered expert opinions that were "nothing more than untested hypotheses.").[2]

b. Lloyd Potter

With respect to Dr. Potter, Plaintiff States similarly fail to refute that he:

- Did not have any knowledge or experience on the reasons why an unauthorized immigrant might choose to return to his or her country of origin;

- Incorrectly assumed that loss of DACA would mean that DACA recipients could not work in any capacity;

- Admitted he had not thought through at all the implications of DACA recipients losing their work authorization;

- Could not identify (and did not study or rely on) any research on the possibility of return migration of DACA recipients;

- Did not conduct a study of his own into the question of DACA recipients' likelihood of return to their country of origin;

---

[2] Plaintiff States concede the speculative nature of their witnesses' testimony that an employer "may" choose to hire a DACA recipient and that DACA recipients "could" be expected to migrate out of the United States. Dkt. 411 at ¶ 4.

6

- Did not look at studies by others on characteristics within the DACA population associated with a higher probability of return; and

- Did not review scholarly articles that directly addressed DACA, did not rely on any survey research of DACA recipients, and did not speak to any individual DACA recipients.

*See* Dkt. 390 at 18-20.

Plaintiff States' boilerplate and unsubstantiated allegation that "Dr. Potter reviewed the relevant literature" and reached his conclusions by "utilizing his 'knowledge, skill, experience, training, or education' and basic concepts of demography," *see* Dkt. 411 ¶ 14, is contrary to Dr. Potter's testimony, and does not show that his testimony is reliable and admissible by a preponderance of the evidence.

### 2. Insufficient Facts Render Expert Testimony Unreliable and Inadmissible

Plaintiff States claim "the fact that [Deere and Potter] did not interview DACA recipients or hiring managers or complete a quantitative analysis" is not a basis to strike their expert testimony because "an attack on data relied on by an expert generally goes to the weight to be given, rather than the admissibility of, his testimony." *Id*. ¶ 16 (citations omitted).

Plaintiff States' argument misses the mark. Defendant-Intervenors attack the *lack of data* in Dr. Deere's and Dr. Potter's analyses, which renders their opinions nothing but mere speculation. Mere speculation offered as purported expert testimony is inadmissible. *See* Fed. R. Civ. P. 702(b) (expert opinion must be "based on sufficient facts or data"); *CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 278–79 (5th Cir. 2009) (finding expert's computation of damages not reliable where "it requires numerous speculative leaps to conclude that the parties would have negotiated an ongoing licensing agreement[.] . . . A hypothetical licensing agreement based on speculation and conjecture cannot be said to reliably measure [plaintiff's] actual loss."); *Hixson v. Houston Indep. Sch. Dist.*, No. 4:09-CV-3949, 2011 WL 3648104, at *11 (S.D. Tex.

7

Aug. 17, 2011) (excluding plaintiff's expert opinion on hiring practices due to the insufficient facts and data upon which opinion was based, including lack of relevant labor market variables, and granting summary judgment in favor of defendant); *Gilmore v. WWL-TV, Inc.*, No. CIV.A. 01-3606, 2002 WL 31819135, at *6 (E.D. La. Dec. 12, 2002) (excluding economic expert opinion as rank speculation where expert relied on possibility that plaintiff might someday dance pointe ballet with a company in New York, and noting that "[a]lthough the case law makes it clear that absolute certainty is impossible, considerations of reliability and relevance require that any economic analysis be ensconced with some resemblance to reality. The slender reed on which the economist's projection rests warrants no credence from the gatekeeper."); *see also Atl. Specialty Ins. Co.*, 742 F. App'x at 855 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

The cases on which Plaintiff States rely are inapplicable here because, in those cases, the movant disputed the validity of the underlying data on which the expert based his or her conclusions. *See* Dkt. 411 ¶ 16 (citing *Nielsen v. Alcon, Inc.*, No. 3:08-CV-2239-B-BD, 2011 WL 4529762, at *7 (N.D. Tex. Sept. 2, 2011) (where plaintiff's expert relied on defendants' own engineering data to formulate expert opinion, finding expert reliable and noting that the fact "that a different expert may have taken a contrary position" and offer a different conclusion is not a basis to strike an expert report); *Anascape, Ltd. v. Microsoft Corp.*, No. CIV.A. 9:06CV158, 2008 WL 7180757, at *2 (E.D. Tex. Apr. 28, 2008) (where expert relied on evidence in the record, including emails, deposition excerpts, marketing documents, and public press releases, to formulate his conclusions, and defendants attacked this evidence as opposed to expert's methodology, finding "[d]efendants' argument that the data relied upon was incorrect or incapable of being verified goes to the weight of [expert's] testimony"); *United States v. 14.38*

8

*Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1079 (5th Cir. 1996) (where experts relied on photographs, data, inspection of the property, discussions with appraisers, brokers and lenders, comparable sales, and own experience as appraisers and civil engineers, finding expert opinion reliable)).[3] In other words, in those cases, the movant asked the Court to choose between two competing opinions derived from one set of facts. *See id*. Here, by contrast, Defendant-Intervenors move to exclude the testimony of Plaintiff States' experts because they do not rely on sufficient facts or data to formulate a reliable expert opinion. *See supra* Section III.B.1.

### 3. *Defendant-Intervenors' Experts Criticized the Methodology and Disagreed With the Conclusions of Plaintiff States' Experts*

Plaintiff States also argue that their experts' methodology is reliable because "these methods produced opinions with which Defendant Intervenors' own experts and amici curiae agreed." Dkt. 411 ¶ 15. This statement could not be further from the truth. Not only do Defendant-Intervenors' experts fundamentally disagree with the conclusions of Dr. Deere and Dr. Potter, but they also testified at length about the methodological flaws of Dr. Deere and Dr. Potter's testimony. *See* Dkt. 400-1 at 87-112 (Perryman) ¶¶ 55, 61 (explaining Dr. Deere's hypothetical is methodologically flawed); Dkt. 400-1 at 38-65 (Ku) ¶¶ 11, 17-18, 20-21 (opining that Dr. Deere's conclusions are based on unsupported and factually incorrect assumptions, including that employers consider ACA penalties when making hiring decisions and there is a fixed number of jobs in the economy); Dkt. 400-2 at 13-34 (Smith) ¶¶ 38-40 (opining that studies and models on which Dr. Potter relies are not good predictors for DACA recipients' likelihood of return to their country of origin); *id*. ¶ 35 (opining that research shows DACA recipients are not

---

[3] Plaintiff States also rely on *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, an attorney's fees case where the court concluded "trial courts are considered experts as to the reasonableness of attorney's fees," and which is inapplicable here. 382 F.3d 546, 562 (5th Cir. 2004).

likely to leave to their countries of origin if DACA ended); Dkt. 400-2 at 116-125 (Massey) ¶¶ 18-19 (same); Dkt.400-1 at 87-112(Perryman) ¶¶ 57-60 (disagreeing that DACA and the ACA negatively affect wages and employment levels of U.S. citizens); Dkt. 400-1 at 38-65 (Ku) ¶¶ 22-30 (same).[4]

Accordingly, Plaintiff States' reference to Defendant-Intervenors' experts does not render the opinions of Dr. Deere and Dr. Potter admissible. All Plaintiff States have proven with this line of argument, based on their own case citations, is that, where there are disagreements between experts, summary judgment is inappropriate. *See* Dkt. 411 ¶ 16 (citing *Thomas v. Deloitte Consulting LP*, No. 3-02-CV-0343-M, 2004 WL 5499955, at *4 (N.D. Tex. Nov. 30, 2004) (quoting *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (expert disagreement "is 'grist for the [tier of fact].'")); *14.38 Acres of Land et al.,* 80 F.3d 1074, 1077 ("[T]he district court should approach its task "with proper deference to the [tier of fact's] role as the arbiter of disputes between conflicting opinions.")); *see also James v. United States*, No. CV SA-12-CA-800-FB, 2013 WL 12106710, at *2 (W.D. Tex. June 24, 2013) ("[I]n a battle of competing experts, it is not the role of the Court upon a motion for summary judgment to pick between these experts.").

---

[4] *Amici curiae* are not experts and did not weigh in on the methodology and reliability of Plaintiff States' experts (nor could they). It is also worth noting Plaintiff States point solely to experts introduced by the State of New Jersey. *See* Dkt. 411 ¶ 15 (citing Ike Brannon, Meg Wiehe, Misha Hill, and Tom Wong). Defendant-Intervenors dispute these experts support Plaintiff States' claims. In addition, Defendant-Intervenors' experts discredit Dr. Wong's methodology and contradict Dr. Wong's conclusion on likelihood of return. *See* Dkt. 400-2 at 3-11 (Perryman Supplemental Decl.) ¶¶ 15-16; *see also* Dkt. 400-2 at 13-34 (Smith Decl.) ¶ 35. Similarly, Meg Wiehe and Misha Hill are tax policy experts, not labor economists, and are not qualified to opine on Plaintiffs' labor market distortion claim. *See* Dkt. 400-1 at 67-74 (Wiehe and Hill Decl.) ¶ 1. Defendant-Intervenors' labor economist disagrees with the conclusion Plaintiff States suggest Dr. Brannon offers about labor market distortion. *See* Dkt. 400-2 at 3-11 (Perryman Supplemental Decl.) ¶¶ 21-26. Finally, Plaintiff States claim "Defendant-Intervenors introduced an article relied on by Dr. Deere in their briefing on the motion for preliminary injunction" to suggest Defendant-Intervenors agreed with Dr. Deere. Dkt. 411 ¶ 15. However, Defendant-Intervenors simply introduced this article *for the purpose of discrediting Dr. Deere*. *See* Dkt. 224 at 37; Dkt. 225-5 at 57.

### *4. Plaintiff States' Experts are not Qualified to Offer Their Opinions*

Last but not least, Plaintiff States argue that Dr. Deere's and Dr. Potter's lack of "narrow research specializations related to immigration . . . does not affect admissibility of the[ir] opinions, but only [their] weight." Dkt. 411 ¶ 12 (internal citations omitted). Plaintiff States base their entire argument about qualifications on the unfounded assertion that if these witnesses understand "basic concepts" in their fields, they are qualified to offer specific opinions in this case. *Id*. at ¶ 8.

To be clear, Defendant-Intervenors' position is not that Dr. Deere and Dr. Potter are not unqualified because they lack a narrow research specialization. Instead, Dr. Deere and Dr. Potter are unqualified because they do not have the "scientific, technical or other specialized knowledge" necessary to offer expert testimony on the topics on which they purport to offer an expert opinion, as is required. *See* Fed. R. Evid. 702(a).

The fact that Dr. Deere is generally experienced as a labor economist does not render him qualified to offer an expert opinion on the interaction between the ACA employer mandate, DACA recipients, and the labor market, nor does it render him qualified to opine on the effects of DACA on wages and the economy. *See Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir. 1999) (finding expert unqualified where "expertise" in accident reconstruction was no greater than that of any other individual with a general scientific background); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 642 (S.D. Tex. 2008) (finding that while expert had expertise analyzing attorney conduct in multiple-client situations that arise in complex financial transactions with their clients and had experience in matters involving the conduct of lawyers in the context of corporate governance, he was not an expert on issue of corporate governance in the case). Dr. Deere's deposition

testimony shows he does not have the necessary knowledge, training, or expertise to testify on these topics. *See generally* Dkt. 390 at 9-16.

Similarly, the fact that Dr. Potter is a demographer does not necessarily qualify him to opine on DACA recipients' likelihood of return to their country of origin. Dr. Potter testified he is an expert in youth violence prevention, *see* Dkt. 390 at 17 (citing Dkt. 390-2), and that he currently is "responsible for producing and disseminating population estimates and projections for Texas." Dkt. 411 at ¶ 11. Dr. Potter has never researched or studied the reasons that undocumented immigrants—let alone DACA recipients—come to or leave the United States. *See* Dkt. 390 at 17 (citing Dkt. 390-2). As Plaintiff States correctly note, Dr. Potter's more current research focuses on topics unrelated to DACA and unauthorized immigrants' migration patterns, including health-related demographic topics. *See* Dkt. 411 ¶ 11. His testimony unequivocally shows Dr. Potter is unqualified to testify on DACA recipients' attrition rates.

Plaintiff States' argument that their experts' lack of qualifications to testify on the subjects on which they offer an opinion amounts to a lack of "narrow research specialization" has no legal or factual basis.[5]

## IV.    CONCLUSION

For these reasons, Defendant-Intervenors respectfully request that the Court grant their Motion.

---

[5] The cases on which Plaintiff States rely are easily distinguishable. Those cases concerned challenges to lack of very narrow research specializations—a challenge that Defendant-Intervenors do not mount. *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195–96 (5th Cir. 2018) (where expert had "extensive experience in analysis and evaluation of environmental contaminants, the area in which he was offered as an expert, including experience working on sewage systems for residential neighborhood communities," "[h]is lack of specialization in sewage facilities for multi-family residential units" like those at issue in the case did not render expert unqualified); *United States v. Wen Chyu Liu*, 716 F.3d 159, 169 (5th Cir. 2013) (where expert had training and experience as a chemical engineer and had broad experience in chemical plants including polymer plants, holding expert opinion related to the manufacturing of polymer at issue was reliable).

Dated: July 8, 2019 Respectfully Submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Alejandra Ávila (Tex. Bar No. 24089252)
(SD of Tex. Bar No. 2677912)
Ernest I. Herrera (Tex. Bar No. 24094718);
(SD of Tex. Bar No. 2462211)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org

Denise Hulett
Mexican American Legal Defense and Educational Fund
1512 14th Street
Sacramento, CA 95814
Phone: (916) 444-3031
Email: dhulett@maldef.org
(Admitted pro hac vice)

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA, ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899

Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that, on the 8th day of July, 2019, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Alejandra Ávila*
Alejandra Ávila