# EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Case No. 1:18-CV-68 |
| § | |
| UNITED STATES OF AMERICA, *et al.*, § | |
| § | |
| Defendants, § | |
| § | |
| and § | |
| § | |
| KARLA PEREZ, *et al.*, § | |
| § | |
| Defendant-Intervenors, § | |
| § | |
| and § | |
| § | |
| STATE OF NEW JERSEY, § | |
| § | |
| Defendant-Intervenor. § | |

### NOTICE OF DEPOSITION UPON ORAL EXAMINATION OF
### GRETEL FELTON

TO:  Gretel Felton, c/o Todd L. Disher, Attorney-in-Charge, Trial Counsel for Civil Litigation, P.O. Box 12548, Austin, Texas 78711-2548, todd.disher@oag.texas.gov

Pursuant to Rule 30 of the Federal Rules of Civil Procedure and by agreement of the parties, Defendant-Intervenors Karla Perez, *et al.*, by and through their undersigned counsel, give notice that they will take the deposition, by oral examination and before a certified court reporter of Gretel Felton.

The deposition shall take place on Thursday, September 12, 2019 at 9:00 a.m. at the Office of the Attorney General, 501 Washington Avenue, Montgomery, AL 36130, until complete.

Said deposition, answers and documentation obtained during the same may be read and used as evidence in the above-captioned case in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Dated: August 30, 2019

Respectfully Submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**

By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Ernest I. Herrera (Tex. Bar No. 24094718);
(SD of Tex. Bar No. 2462211)
*Ramón A. Soto (NM Bar No. 149600)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org
*(Admitted pro hac vice)

Denise Hulett
Mexican American Legal Defense and Educational Fund
1512 14th Street
Sacramento, CA 95814
Phone: (916) 444-3031
Email: dhulett@maldef.org
(Admitted pro hac vice)

**ROPES & GRAY LLP**

Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA, ATTORNEYS AT LAW P.L.L.C.**

Carlos Moctezuma García

        (Tex. Bar No. 24065265)
        (SD of Tex. Bar No. 1081768)
        P.O. Box 4545
        McAllen, TX 78502
        Phone: (956) 630-3889
        Facsimile: (956) 630-3899
        Email: cgarcia@garciagarcialaw.com

        Attorneys for Defendant-Intervenors

## **CERTIFICATE OF SERVICE**

      I, the undersigned counsel, hereby certify that a true and correct copy of this notice was sent on August 30, 2019, via electronic mail to:

Todd L. Disher
Attorney-in-Charge
Trial Counsel for Civil Litigation
P.O. Box 12548
Austin, Texas 78711-2548
todd.disher@oag.texas.gov

Jeffrey S. Robins
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, D.C. 20044
Jeffrey.Robins@usdoj.gov

Glenn Moramarco
Office of the Attorney General of New Jersey
25 Market Street, 8th Floor
Trenton, NJ  08625
Glenn.Moramarco@njoag.gov

        */s/ Nina Perales*
        Nina Perales

**EXHIBIT A**

## SUBPOENA DUCES TECUM

## DEFINITIONS AND INSTRUCTIONS

A. "You" and "your" as used herein, refers to Gretel Felton, Plaintiffs State of Texas, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of West Virginia, the Alabama Medicaid Agency, and consultants, experts, investigators, agents, or other persons acting on your or their behalf and, unless privileged, your attorneys.

B. "Defendants" shall refer to the named Defendants in this case, and any other persons acting or purporting to act on their behalf.

C. "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the terms in Federal Rule of Civil Procedure 34(a), in its broadest sense, and shall mean and include all written, printed, typed, recorded or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, that are in the possession, custody or control of Defendants or in the possession, custody or control of counsel for Defendants. A draft of a non-identical copy is a separate document within the meaning of this term. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession or custody of the document, or the right to secure the document or copy thereof from any persons or public or private entity having physical control thereof.

D. The term "DACA initiative," "DACA program," or "DACA" shall refer to the guidance on exercising prosecutorial discretion with respect to individuals who came to the United States as children, as described in the June 15, 2012 memorandum by former Secretary of Homeland Security, Janet Napolitano.

E. The term "DACA recipient" shall mean a person who has been granted deferred action pursuant to the DACA initiative.

F. The term "USCIS" shall mean United States Citizenship and Immigration Services.

G. The term "DHS" or "Department of Homeland Security" shall mean the United States Department of Homeland Security, or any of its components, including USCIS, or any employees, agents, or other persons acting or purporting to act on the agency's behalf.

H. "Plaintiff State" or "Plaintiff" shall refer to each of the named Plaintiff states and state officials in this case, and any other persons acting or purporting to act on their behalf and any subdivisions, agencies, and components.

I. "Person" shall mean and include a natural person, individual, partnership, firm, corporation, school, district or any kind of business or legal entity, its agents, or employees.

J. The following requests for documents are addressed to Deena Pregno and Plaintiffs, her agents or attorneys, or any of them. If the requested documents are known by Deena Pregno or Plaintiffs to exist but are not in the possession, custody, or control of Deena Pregno or Plaintiffs, her agents, or attorneys, or any of them, it is requested that Deena Pregno or Plaintiffs so indicate, or produce such documents that show the name of the person or entity in whose possession, custody, and/or control such documents reside.

K. The term "document" is used herein with its broadest possible meaning and thus includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written, produced by hand, or by any type of electronic means, specifically including e-mail (whether or not ever reduced to a hard copy format), and whether or not claimed to be privileged or otherwise excludable from discovery, namely: notes; correspondence; communications of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversation; diaries; routing slips or memoranda; reports publications; photographs; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations, agreements and contracts, including all modifications and/or revisions thereof; reports and/or summaries of negotiations; court papers; brochures; pamphlets; press releases; drafts of, revisions of drafts of, translations of any document; tape recordings; records; and dictation belts. Any document with any marks on any sheet or side thereof, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character and not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of this request.

L. As used herein, "relating to" or "evidence" means refers to, reflects upon, concerning, relied upon, or is in any way logically or factually connected with the matters discussed.

M. If any documents responsive to any request have been lost, mutilated, or destroyed, so state and identify each such document, and state to which request(s) the document would have been responsive.

N. If any documents falling within any description contained in any of the following requests is withheld under claim of privilege, Deena Pregno or Plaintiffs shall serve upon the undersigned attorneys a written list of documents, including the following information as to each such item: (1) its date; (2) the names(s) of the person(s) or other entity(ies) who or which drafted, authored or prepared it; (3) its title; (4) the name(s) of the person(s) or other entity(ies) to whom it was addressed; (5) the name(s) of each person or entity to who the item or any copy of reproduction thereof

5

was ever directed, addressed, sent, delivered, mailed, given, or in any other manner disclosed; and (6) a statement of the ground or grounds on which each such document is considered to be privileged from production.

O. For all documents kept in electronic format, produce in hard copy format.

P. Defendant-Intervenors also request the opportunity to inspect and copy the materials brought.

Q. "Exhibit B" refers to the attached exhibit titled Second Declaration of Gretel Felton.

**[Continued below]**

## DOCUMENTS TO BE PRODUCED

1. Gretel Felton's most current curriculum vitae and resume.

2. All documents reviewed or relied upon by you as the basis for the opinions expressed in Exhibit B.

3. All documents reflecting communications between you and Plaintiffs, or any plaintiffs' representatives, including plaintiffs' counsel in order to draft Exhibit B.

4. All documents, tangible things, reports, models, or data compilations that you considered for the purpose of forming your opinion(s), mental impressions, and statements in Exhibit B.

5. All documents reflecting communications between you and Plaintiffs, or any plaintiffs' representatives, including plaintiffs' counsel related to Exhibit B.

6. Documents showing the policies and procedures of the Alabama Medicaid Agency with respect to determining citizenship and immigration status, including DACA, of Medicaid applicants or recipients.

7. Documents showing the types of services paid for or reimbursed by the Alabama Medicaid Agency for which DACA recipients are eligible, by year, for each fiscal year between September 1, 2012 and the present.

8. Documents showing the types of services that were rendered to DACA recipients and that were paid for or reimbursed by the Alabama Medicaid Agency, by year, for each fiscal year between September 1, 2012 and the present.

9. Documents showing the costs to Alabama for Medicaid services rendered to DACA recipients, by year, for each fiscal year between September 1, 2012 and the present.

10. Documents showing the costs to Alabama for Medicaid services rendered to undocumented individuals, by year, for each fiscal year between September 1, 2012 and the present.

11. Documents showing all training provided to the Alabama Medicaid Agency employees on the use of CARES to determine citizenship and immigration status, including DACA from September 1, 2012 to September 1, 2019.

12. Documents showing the types of data maintained by the Alabama Medicaid Agency evidencing immigration and citizenship status of Medicaid applicants or beneficiaries.

13. Documents showing the types of data maintained by the Alabama Medicaid Agency evidencing receipt of DACA by Medicaid applicants or beneficiaries.

14. All documents containing "figures [] reported to me by the Data Analytics unit" related to "services for recipients with a DACA designation embedded in the response received from the Hub." Second Declaration of Gretel Felton, attached as Exhibit B, at parag. 4.

15. Documents showing all the circumstances under which the Centralized Alabama Recipient Eligibility System (CARES) "captures and stores citizenship and immigration status, including DACA[.]" Declaration of Gretel Felton, attached as Exhibit B, at parag. 3.

16. Documents showing the manner in which CARES "captures and stores citizenship and immigration status, including DACA[.]" Declaration of Gretel Felton, attached as Exhibit B, at parag. 3.

17. Documents showing the manner in which CARES "captures and stores citizenship and immigration status, including DACA" information from the Federal Data Services Hub (the Hub). Declaration of Gretel Felton, attached as Exhibit B, at parag. 3.

18. Documents showing the purposes for which CARES "captures and stores citizenship and immigration status, including DACA" information from the Federal Data Services Hub (the Hub). Declaration of Gretel Felton, attached as Exhibit B, at parag. 3.

19. Documents showing the circumstances under which CARES requests information related to citizenship and immigration status, including DACA from the Federal Data Services Hub (the Hub).

20. Documents showing the circumstances under which CARES receives, and does not receive, a response containing information related to citizenship and immigration status, including DACA from the Federal Data Services Hub (the Hub).

21. Documents showing the allocation of financial responsibility between federal and state funding sources for each type of Medicaid service rendered to DACA recipients in Alabama.

22. Documents supporting the statement "approximately 70% of these expenditures represent federal funding. The remaining approximate [sic] 30% represents money from a state funding source." Declaration of Gretel Felton, attached as Exhibit B, at parag. 7.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants ) | |

## SECOND DECLARATION OF GRETEL FELTON

1.  I am the Deputy Commissioner of Beneficiary Services for the Alabama Medicaid Agency (Medicaid). I have worked for Medicaid in this capacity since 2014, having previously served in various roles within Beneficiary Services since 1991.

2.  In my current position I oversee all Medicaid eligibility offices, practices, policies, and procedures, which requires both direct and indirect supervision of over 300 Medicaid employees in the Beneficiary Services department.

3.  On July 19, 2019, I executed a Declaration related to my review of information from Alabama Medicaid Agency's Data Analytics unit regarding the amount of money expended by the state for the individuals with a DACA designation embedded in the response received from the Federal Data Services Hub. See Declaration of Gretel Felton, Exhibit A.

4.  To clarify, the figures contained in paragraph 6 of my previous Declaration are amounts expended on services for recipients with a DACA designation embedded in the response received from the Hub; as those figures were reported to me by the Data Analytics unit.

Done and Dated this 7th day of August 2019.

GRETEL FELTON

STATES000261

# EXHIBIT A

STATES000262

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, et al., )<br>)<br>Defendants ) | Civil Action No. |

### DECLARATION OF GRETEL FELTON

My name is Gretel Felton, and I am over the age of 19 and fully competent to make this declaration. I have personal knowledge of the matters herein stated.

1. I am the Deputy Commissioner of Beneficiary Services for the Alabama Medicaid Agency (Medicaid). I have worked for Medicaid in this capacity since 2014, having previously served in various roles within Beneficiary Services since 1991.

2. In my current position I oversee all Medicaid eligibility offices, practices, policies, and procedures, which requires both direct and indirect supervision of over 300 Medicaid employees in the Beneficiary Services department.

3. The Centralized Alabama Recipient Eligibility System (CARES) captures and stores citizenship and immigration status, including DACA, when a response regarding such status is received from the Federal Data Services Hub (the Hub). Medicaid does not track or otherwise utilize information regarding the DACA designation during the course of everyday operations. It is my understanding that DACA information is embedded in the response received from the Hub.

4. Medicaid's Data Analytics team determined the amount expended by the state for the individuals with DACA data embedded in the response received from the Hub.

5. I have reviewed the information from Alabama Medicaid Agency Data Analytics unit regarding the recipients with a DACA designation.

6. For services rendered in Fiscal Year 2015 Medicaid expended $13,460, for services rendered in Fiscal Year 2016 Medicaid expended $42,366, for services rendered in Fiscal Year 2017 Medicaid expended $56,190, and for services in Fiscal Year 2018 Medicaid expended $36,816. These represent services rendered in the respective fiscal year, not necessarily expenditures in that particular fiscal year.

7. According to Medicaid financial personnel, I have been informed that approximately 70% of these expenditures represent federal funding. The remaining approximate 30% represents money from a state funding source. It is also my understanding that the CHIP program, which would have been total federal dollars during this time period, is not included in the "services rendered" numbers in paragraph 6 above.

8. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above information is true and correct to the best of my knowledge and belief.

Done and Dated this 19th day of July, 2019.

_____
GRETEL FELTON