IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| Plaintiff States, | ) |
| v. | ) Case No. 1:18-CV-68 |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| Defendants, | ) |
| KARLA PEREZ, *et al.*, | ) |
| Defendant-Intervenors, and | ) |
| STATE OF NEW JERSEY, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT-INTERVENOR NEW JERSEY'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO STAY**

The United States Supreme Court's opinion in the Rescission Cases will invariably impact issues in dispute in this litigation. For this reason alone this Court should exercise its discretion to stay all activity in this case until after the Supreme Court rules, a decision that will come during the Court's upcoming term slated to begin next month.

In opposing this request (Dkt. 428), Plaintiff States attempt to distance the legal claims at issue in the Rescission Cases and this case, contending that this Court is not "bound by the precedent" from the lower court decisions to date in the Rescission Cases, that the issues raised in the Rescission Cases are "not dispositive to the questions posed in this case," and that the "focal

1

issue" of the Rescission Cases is different.  (*Id*. at ¶9).  But while existing precedent from other District and Circuit Courts is not binding here, the Supreme Court's impending decision will be.

The overlap of the legal and practical issues for this case and the Rescission Cases is also undeniable.  Several courts to date in the Rescission Cases have commented on the initial legality of DACA, the central issue in this case.  *See, e.g., Regents of Univ. of California v. United States Dep't of Homeland Sec.*, 908 F.3d 476, 510 (9th Cir. 2018) ("DACA was a permissible exercise of executive discretion, notwithstanding the Fifth Circuit's conclusion that the related DAPA program exceeded DHS's statutory authority."); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 427 (E.D.N.Y. 2018) ("[T]he court concludes that DACA is lawful and not arbitrary, capricious, or contrary to the INA."). This Court itself also identified the overlapping issues when it issued its interlocutory appeal order after denying the motion for preliminary injunction:

> This Court has considered various rulings from district courts in three different circuits that block the rescission of the DACA program and one, from a fourth circuit, that refused to block it. While this case concerns DACA's creation and implementation, ***there are many overlapping issues.***

Interlocutory Appeal Order at 6 (Dkt. 320) (emphasis added).  More recently, a seven-page section of the United States' opening brief in the Rescission Cases argues that "DHS correctly concluded that DACA is unlawful." Petitioners Opening Brief at 43-50.  And the Texas-led amicus brief to the Supreme Court in the Rescission Cases notes that its coalition of states filed the instant lawsuit "seeking a declaration that DACA was unlawful," and that the Rescission Cases "directly implicate[] the States' effort to bring about an orderly end to DACA and threatens to continue the numerous harms inflicted on the States by this lawless program." *See* Amicus Brief for the States of Texas, et al., at 2. Plaintiff States cannot plausibly contend that the legal issues raised in the Rescission Cases are wholly distinct.

Plaintiff States' claim of ongoing harm is similarly unpersuasive. Plaintiff States are no longer even asking this Court for injunctive relief, *see* Plaintiff States' Response to Motion to Compel Discovery, Dkt. 387 at 11 ("Because injunctive relief is not necessary, discovery related to the four injunctive factors is not needed."), and, even if they were, this Court could not grant Plaintiff States any practical relief while the injunctions entered in the Rescission Cases remain in place. Plaintiff States' claim of $250 million in annual "costs" from DACA (Dkt. 428 ¶ 9) is also misplaced. Plaintiff States' factual basis for that claim is a cherry-picked citation from Defendant-Intervenor's expert's analysis estimating the net annual fiscal ***benefits*** of DACA recipients in Texas. The full source from which Plaintiff States base their claim shows that when it comes to net economic impact to Texas, any purported costs borne as a result of DACA are more than offset by the positive impacts DACA recipients have on the Texas economy:

**ESTIMATED ANNUAL NET FISCAL BENEFITS OF DACA RECIPIENTS IN TEXAS**

|  | Federal | State | Local | Total |
|---|---|---|---|---|
| **Direct Benefit** | $689,550,521 | $422,701,412 | $249,455,516 | $1,361,707,450 |
| **Indirect and Induced Net** | $1,640,661,256 | $1,083,841,205 | $515,435,131 | $3,239,937,592 |
| **Direct Costs** | ($242,128,726) | ($250,007,800) | ($533,661,055) | ($1,025,797,581) |
| **Net Total** | $2,088,083,051 | $1,256,534,817 | $231,229,593 | $3,575,847,461 |

*The Indirect and Induced Net Benefit estimate includes the spillover effects associated with both the Dire the Direct Costs.

Dkt 219-1. Ex. 21, App. 1246. Thus, the source of Plaintiff States' own factual claim for purported costs actually shows that *Texas benefits from DACA grantees by an estimated $1.25 billion dollars per year* –$422 million in direct benefits, plus $1.08 billion in indirect benefits, minus $250 million in direct costs. *See* Dkt. 286 at 21 (New Jersey's Reply in Opposition to Motion for Preliminary

Injunction).  Plaintiff States' ongoing *net economic benefit* from the continuation of DACA is not a reason to deny the Motion to Stay.[1]

Lastly, Plaintiff States' argument regarding preservation of resources is misplaced.  While it is true that discovery is nearly completed, the legal and judicial work is far from finished. At this late stage, with a Supreme Court decision due in a matter of months, the potential harm faced by DACA recipients from a possible premature ending of DACA vastly outweighs the costs allegedly faced by the States from a short continuation of DACA. And with discovery largely concluded, the additional guidance likely forthcoming from the Supreme Court will put this Court in a better position to rule on any legal issues that may remain to be resolved.

For these reasons and those stated in its initial Motion to Stay, this Court should exercise its discretion to stay all further activity in this case pending resolution of the Rescission Cases by the Supreme Court.

Dated: September 26, 2019                                GURBIR S. GREWAL
                                                         ATTORNEY GENERAL OF NEW JERSEY

                                        By:     */s Glenn J. Moramarco*
                                                Glenn J. Moramarco

                                                Assistant Attorney General
                                                Attorney-in-Charge
                                                (admitted pro hac vice)
                                                Richard J. Hughes Justice Complex
                                                25 Market Street, 8th Floor
                                                Trenton, New Jersey 08625-0116
                                                Phone: (609) 376-3232
                                                Fax: (609) 777-4015
                                                Glenn.Moramarco@njoag.gov

---

[1] The fact that Plaintiffs did not challenge the legality of DACA five years ago, when they were already in Court challenging the legality of DAPA, also suggests that they themselves did not conclude that the presence of DACA recipients in their States poses a substantial economic burden.

Jeremy Hollander, Assistant Attorney General
(admitted pro hac vice)
Kenneth S. Levine, Deputy Attorney General
(admitted pro hac vice)
Nicholas Dolinsky, Deputy Attorney General
(admitted pro hac vice)
Brian DeVito, Deputy Attorney General
(admitted pro hac vice)
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101

*Attorneys for Defendant-Intervenor State of New Jersey*

5

## **CERTIFICATE OF SERVICE**

I certify that on September 26, 2019, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

>　　　　　　　　　　　　*/s Glenn J. Moramarco*
>　　　　　　　　　　　　Glenn J. Moramarco