# Exhibit B



PRACTICE ADVISORY [1]
June 2016

## DACA, ADVANCE PAROLE, AND FAMILY PETITIONS
By Lena Graber and Jose Magaña-Salgado

### Introduction

This advisory explains how Deferred Action for Childhood Arrivals (DACA) recipients who, independent of their DACA status, have a current or future immediate relative petition may be able to obtain lawful permanent resident status (also known as a "green card") within the United States. Only DACA recipients who fit certain criteria can do this; those criteria will be explained in depth below. Although the focus of this advisory is on DACA recipients, the same possibilities and considerations may apply to Temporary Protected Status (TPS) recipients.

IMPORTANT: **DACA is a form of prosecutorial discretion that does not, on its own, confer any permanent immigration benefits, including lawful permanent resident status. Similarly, advance parole is simply permission to leave and re-enter the country and, on its own, does not confer any permanent benefit.**

Undocumented immigrants—including those with DACA—who entered the country illegally cannot easily get lawful status, even if they have a family member who can sponsor them for permanent residence. They are inadmissible because of their unlawful entry. However, a person who travels abroad with permission from the government to depart and return (called advance parole) will reenter *legally* when they come back. They will be paroled into the U.S., which is considered a lawful entry. This reentry with parole allows some of those immigrants more opportunities to seek permanent residence.

Becoming a permanent resident through adjustment of status involves many different requirements. Lawful entry is just one of those requirements. However, as unlawful entry is one of the most common obstacles for undocumented immigrants seeking to adjust status within the U.S., traveling with advance parole is an important strategy to consider. This advisory will explain who can benefit from advance parole, what risks are involved, and what requirements they must meet, in order to get a green card.

---

[1] The Immigrant Legal Resource Center is a national, nonprofit resource center that provides legal trainings, educational materials, and advocacy to advance immigrant rights. The mission of the ILRC is to work with and educate immigrants, community organizations, and the legal sector to continue to build a democratic society that values diversity and the rights of all people. For the latest version of this practice advisory, please visit www.ilrc.org. For questions regarding the content of this advisory, please contact Lena Graber at lgraber@ilrc.org or Jose Magaña-Salgado at jmagana@ilrc.org.

I.  **Advance Parole for DACA Recipients**

Individuals who received deferred action under DACA may request permission to temporarily travel outside of the United States through a process known as "advance parole." Those without DACA or who are waiting for U.S. Citizenship and Immigration Services (USCIS) to process their DACA applications cannot apply for advance parole until they receive DACA.

A DACA recipient must request and receive advance parole approval before traveling outside of the United States.[2] If a DACA recipient travels outside of the United States without advance parole, USCIS may terminate her deferred action, and she will not be eligible to apply for renewal of DACA or file a new initial application.[3]

### A. What Is Advance Parole?

Advance parole is a way for certain immigrants to travel outside the United States. Advance parole allows a person inside the U.S., who seeks to depart, to receive advance authorization to re-enter the U.S. (to be "paroled") upon her return.[4] A person who has a green card or a valid multi-entry visa does not need advance parole to leave and return. A DACA recipient who leaves the country, however, has no lawful way to come back, unless DHS has granted approval for travel in advance. Leaving without advance parole will also result in termination of a DACA grant.

DACA recipients interested in traveling abroad must apply for advance parole by filing Form I-131 (Application for Travel Document)[5] along with supporting documents and pay the $360 filing fee.[6] The updated instructions to Form I-131 include information to help DACA recipients properly fill out the form. The instructions also explain what additional documents DACA recipients must submit with their application.[7]

### B. Requirements for Advance Parole for DACA Recipients

USCIS will currently only grant advance parole to DACA recipients if the travel abroad is in furtherance of one of the following categories:

- **Humanitarian purposes**, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;
- **Educational purposes**, such as semester-abroad programs and academic research, or;

---

[2] USCIS DACA FAQ Question #51 explains that a DACA recipient will be permitted to travel outside of the United States *only if* she applies for and receives advance parole from USCIS.
[3] USCIS National Standard Operating Procedures, Deferred Action for Childhood Arrival (April 4, 2013) ("DACA SOP v.2") p. 57, available at http://legalactioncenter.org/sites/default/files/DACA%20Standard%20Operating%20Procedures.pdf.
[4] USCIS Adjudicator's Field Manual, § 54.1. See also USCIS's definition of "Parolee" and "Advance Parole," stating that advance parole "may be issued to [noncitizens] residing in the United States in other than lawful permanent resident status who have an unexpected need to travel and return, and whose conditions of stay do not otherwise allow for their readmission to the United States if they depart," available at http://www.dhs.gov/definition-terms#parolee.
[5] Form I-131, Application for Travel Document, is available at www.uscis.gov/i-131.
[6] For more information about how to apply for advance parole as a DACA recipient, see Immigrant Legal Resource Center, Travel for DACA Applicants, available at http://www.ilrc.org/resources/travel-for-daca-applicants-advance-parole; Legal Action Center: American Immigration Council and the Catholic Legal Immigration Network, Inc. practice advisory, "Advance Parole for Deferred Action for Childhood Arrivals (DACA) Recipients (Aug. 28, 2013), p. 3, available at www.legalactioncenter.org/practice-advisories/advance-parole-deferred-action-childhood-arrivals-daca-recipients; and E4FC and Curran & Burger, LLP, "Got DACA Now What?..." guide, available at http://e4fc.org/gotdacanowwhat.html.
[7] USCIS Form I-131, Instructions.

- **Employment purposes** such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.[8]

USCIS has been generous with these categories. Some DACA recipients who wished to visit parents or grandparents they had not seen in many years received advance parole.[9] However, travel for purely vacation purposes is not a valid basis for advance parole for DACA recipients.[10] In contrast, USCIS is very strict with DACA recipients seeking renewal who traveled on advance parole. DACA recipients who did not travel within the exact dates of their advance parole period report being denied DACA renewal on the basis of traveling outside the country without a valid grant of advance parole. If a DACA recipient does not travel within the exact dates of their advance parole approval, USCIS will deny their renewal application.[11]

In addition, U.S. Customs and Border Protection (CBP) officers at the border may question DACA recipients about their purpose for travel and whether they did in fact travel for the reasons provided in their advance parole application, and whether those reasons were in fact true or fabricated. Therefore, it is extremely important to comply with all the terms of the advance parole approval and to be prepared to answer questions upon seeking reentry to the U.S.

**WARNING:** An advance parole authorization document (Form I-512L) authorizes reentry into the U.S., but does not guarantee that its holder will be paroled into the United States upon her return.[12] When an advance parole recipient presents herself at a U.S. port-of-entry upon her return, she will be subject to inspection by an immigration official who will make a discretionary decision as to whether she will be paroled into the United States.[13] Generally, persons traveling on advance parole are allowed to enter without problem. However, see Section II below on the risks of travel on advance parole for more information.

### C. Advance Parole for non-DACA recipients

Advance parole is not specific to DACA. A variety of individuals with pending applications or other forms of deferred action status may apply for advance parole. Individuals with TPS or pending applications for adjustment of status can seek advance parole to travel during the time they are in this temporary status. People with these other types of status do not need to meet the same criteria as DACA recipients; they can travel for purposes outside of employment, education, or humanitarian reasons. For example, TPS recipients can seek advance parole purely for vacation.

The application process and legal benefits for non-DACA advance parole are essentially the same, though less documentation is required. A person who entered unlawfully, later obtained TPS and travels with advance parole will be paroled into to the United States, curing the initial entry without inspection. Like a DACA recipient, a TPS recipient would no longer be subject to inadmissibility on the basis of his or her prior unlawful entry.

---

[8] USCIS DACA FAQs Question 57.
[9] In addition, some DACA recipients who will travel to a consulate in their country of origin for consular processing have received advance parole to provide a safeguard to allow their return and to allow them to go back to the United States while waiting for the Consulate to adjudicate waivers of inadmissibility.
[10] *Id.* Please note that advance parole is available in other contexts apart from DACA, such as for those with pending adjustment applications or those with TPS. Those with TPS or pending adjustment applications may travel for purposes outside those approved for the DACA program, such as for vacation. The requirements for advance parole are distinct for DACA.
[11] See Immigrant Legal Resource Center, DACA Renewal and Advance Parole, August 2015, available at http://www.ilrc.org/resources/daca-renewal-and-advance-parole-practice-advisory-english-spanish.
[12] USCIS Form I-131, Instructions, p. 1.
[13] *Id.*

## II. Risks of Advance Parole and Grounds of Inadmissibility

Traveling outside of the United States, even for DACA recipients with advance parole, always carries a risk of being unable to return lawfully. In most cases this risk may be small, but still must be fully evaluated in case more complicated issues arise. DACA recipients interested in traveling abroad through advance parole should consult with an expert immigration practitioner before leaving the United States to evaluate the risks and benefits of such travel.

While advance parole permits a person to enter the U.S. in spite of their lack of a visa, CBP will still screen travelers for admissibility and may question their entire immigration history upon seeking reentry. Therefore, it is essential to determine if there are any circumstances in a person's immigration history, such as a prior removal order or other grounds of inadmissibility, that could present risks to reentering successfully. Even if there are no complications, however, CBP officers retain discretion to deny entry.[14] Accordingly, there is no absolute guarantee that a person traveling with advance parole will be authorized to re-enter.

### A. What is admissibility?

Admissibility is a legal term that means a person can be admitted in lawful status to the United States. This is separate from whether the person might be physically present or physically permitted to enter the United States. Admissibility is defined largely by which categories of immigrants are not admissible, and these categories are listed in INA § 212. These rules are commonly called grounds of inadmissibility. Receiving DACA is not an admission to the United States; it is an administrative form of prosecutorial discretion. Applicants do not need to meet all the requirements for admissibility under immigration law to receive DACA. Accordingly, a person may be eligible for DACA but not otherwise "admissible" under immigration law.

Entering the U.S. with advance parole is not an *admission*. It is an entry on parole. A person does not have to be admissible under immigration law to be paroled into the country.[15] In fact, in many cases parole is an exceptional remedy to allow someone who is specifically not admissible to enter the U.S. However, as discussed above, everyone presenting themselves at a port of entry will be screened for admission, and CBP officers retain discretion to deny entry.

### B. Removal proceedings and prior removal orders

A DACA recipient who has been previously ordered removed (also known as "deported" or "excluded") may still request and obtain advance parole.[16] However, if she leaves the United States after being ordered removed, her departure from the United States will result in her executing that removal order. This execution would have potentially serious future immigration consequences, including the inability to be lawfully admitted to the United States when applying for permanent residency, if that opportunity arises.[17] This is true even if the person received deferred action from USCIS or U.S. Immigration and Customs Enforcement (ICE) and possessed a grant of advance parole. DACA recipients with prior orders of removal or who are in proceedings should consult with an immigration attorney before leaving with advance parole. It is generally not advised to travel in that situation. It is particularly important to screen a person's immigration history for possible expedited removals at the border.

---

[14] *See* USCIS Form I-131 Instructions for Application for Travel Document, p. 1, 5.
[15] *See* INA § 212(d)(5)(A); 8 CFR § 212.5.
[16] USCIS DACA FAQs Question 57.
[17] See INA § 212(a)(9)(A).

> **Example:** James came to the United States by himself when he was 15. At the border, CBP apprehended and fingerprinted him and he does not really remember what else happened. James successfully entered without inspection a few days later. James now has DACA and would like to get advance parole to see his grandfather, who is ill and may not live much longer. In order to travel safely with advance parole, James must make sure that his previous stop did not involve an expedited removal, which would have triggered grounds of inadmissibility and could prevent him from reentering on advance parole.

Likewise, a person currently in removal proceedings, but who does not have a removal order, should be cautious when traveling with advance parole. If the immigration court will agree to terminate or administratively close[18] proceedings, then advance parole may be an option. Regardless, it is very risky to travel during ongoing removal proceedings. Specifically, a person risks being ordered removed in absentia if the hearing is scheduled and held in her absence.

### C. Unlawful presence bars

In general, a person who leaves the United States after having been in the United States unlawfully for more than six months triggers the unlawful presence provisions of INA § 212(a)(9)(B) – the "unlawful presence bars."[19] These bars take effect *upon departure* from the United States. Unlawful presence is not counted against a person until she leaves. But once a person has left the U.S. after accruing more than 180 days of unlawful presence, she will be inadmissible.

However, there is an exception to the unlawful presence bars: they do not apply to a person traveling with advance parole. In 2012, the BIA ruled in *Matter of Arrabally and Yerrabelly* that travel on advance parole was not a "departure" for purposes of inadmissibility under 212(a)(9)(B)(i).[20] Therefore, the unlawful presence bars will not affect a person who departs and reenters the U.S. with advance parole. Importantly, advance parole, however, does not cure unlawful presence bars that were triggered by a previous, non-advance parole departure.

> **Example:** Marta received DACA last year, when she was 24. Marta had years of unlawful presence before she got DACA. If she leaves the United States, she is subject to a ten year bar to admissibility under INA § 212(a)(9)(B). Marta's employer would like to send her on a trip to China for work. As a DACA recipient, Marta can qualify for advance parole because her travel is for employment purposes. If she travels with advance parole, she will not trigger the unlawful presence bars when she goes to China, because her trip will not count as a "departure" for purposes of INA § 212(a)(9)(B).

---

[18] "Administrative closure" does not mean removal proceedings have ended. Rather proceedings are taken off calendar, but still viable and not terminated. The Immigration Judge still has jurisdiction over the person in proceedings, and either side may request that the proceedings be placed back on calendar at any time. According to the I-131 instructions, a person who seeks to travel with advance parole during removal proceedings, including administratively closed proceedings, must apply for advance parole from ICE, not USCIS. However, many attorneys report applying to USCIS for advance parole for clients with administratively closed proceedings, and having no trouble.

[19] INA § 212(a)(9)(B) includes two grounds of inadmissibility commonly referred to as the "three" and "ten year" bars. Generally, someone who remains more than 180 days without authorization may be subject to a three year bar to legal re-entry upon departure from the U.S., and a person who has lived in the United States unlawfully for a year or more may be subject to the 10 year bar upon departure. However, the days of unlawful presence do not count while someone is under 18 years old, and there are certain other exceptions to these "bars" in the statute.

[20] *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771 (BIA 2012). *Matter of Arrabally and Yerrabelly* has since been applied to TPS and DACA recipients who traveled on advance parole and then sought adjustment of status. They were able to adjust status because they had not triggered the unlawful presence bars when they left and returned under advance parole.

### D. Permanent bar

A person who re-enters the U.S. without authorization after being deported is subject to the "permanent bar" (which can only be waived after the individual has been outside the U.S. for 10 years) in INA § 212(a)(9)(C). In addition, a person who spent more than a year of unlawful presence who then left the country and re-entered unlawfully is subject to the same bar.[21]

If unlawful reentry after a deportation or more than a year of unlawful presence already occurred in the past, the permanent bar is already triggered and the person is inadmissible. However, the permanent bar does not make a person ineligible for DACA or advance parole. The bar simply makes travelling on advance parole very risky, because CBP could determine that the advance parole holder is inadmissible and not parole them back in.[22]

Because a departure and illegal reentry in the past could trigger the permanent bar, it is important to ask your client about all prior departures and entries. It is not advisable for a client to travel if they already triggered this bar, particularly by reentering after a removal order.

> **Example:** Manuel came to the U.S. without inspection in 1992, when he was ten years old, and lived in El Paso for nine years. When he was nineteen, he went back to Mexico for the summer, and then reentered without inspection to start college. He received DACA two years ago. Manuel is a scientist and wishes to get advance parole for a conference in Montreal. However, Manuel will still be inadmissible because he triggered the permanent bar when he went to Mexico and reentered unlawfully several years ago. As a result, he could be denied entry at the border.

### E. Other grounds of inadmissibility

As discussed above, a person seeking to reenter the U.S. with advance parole is still an applicant for admission and can be denied entry for being inadmissible under immigration law.[23] CBP may screen for inadmissibility, even though permitting entry on parole does not count as an admission.[24]

There are many ways a person might be found to be inadmissible under the immigration laws. These include grounds based on smuggling (including helping a family member cross the border illegally), lying or making a material misrepresentation to an immigration official (such as using a false U.S. passport or green card to enter the U.S.), and criminal bars (such as drug offenses and other convictions). Advocates should pay close attention to criminal history, drug use, past contact with immigration officials, and multiple entries to the United States. These are just a few examples of the many ways that a person can be found to be inadmissible, even though they were eligible for and received DACA.

> **Example:** Two years ago, Sonja, a college student, was caught with a bag of marijuana and convicted of misdemeanor possession of a controlled substance. In spite of this, Sonja was able to get DACA, because her conviction was not a bar to eligibility, and she presented evidence of her strong ties to the U.S. and excellent academic achievements. Sonja would

---

[21] *See* INA § 212(a)(9)(C). This provision, unlike the unlawful presence bars, applies to minors. Therefore, if a child or adult had unlawful presence for more than a year in the United States after April 1, 1997, then leaves and re-enters illegally, she will be inadmissible under INA § 212(a)(9)(C).
[22] USCIS does not consider parole pursuant to INA § 212(d)(5) to be an illegal reentry without admission that would trigger the permanent bar. Therefore, reentry with advance parole would not make someone inadmissible under INA § 212(a)(9)(C).
[23] *See* USCIS Form I-131, Instructions for Application for Travel Document.
[24] The returning parolee remains an applicant for admission in the context of future immigration applications or proceedings.

> like to get advance parole and participate in a study abroad program in India. Although Sonja is eligible for advance parole because she has DACA and wishes to travel for an educational purpose, it is very risky for Sonja to leave the country if she hopes to return. Even if she has advance parole, she could be found inadmissible under INA § 212(a)(2)(A)(ii) for her conviction involving a controlled substance, and prevented from re-entering.

The example with Sonja illustrates the current conundrum of advance parole. While USCIS has authorized a re-entry for someone who is otherwise inadmissible, CBP may still exercise discretion in allowing this person to re-enter. Because CBP still inspects the person granted advance parole upon return, they may deny re-entry. Criminal and fraud grounds, in particular, might cause an officer to deny entry at time of inspection. CBP does have authority to parole people in spite of inadmissibility and CBP guidance recommends some flexibility with "minor or technical violations of the INA,"[25] but nonetheless CBP has discretion and there is no appeal of a denial of entry on parole.

### III.  Advance Parole and Adjustment of Status

A DACA recipient who travels on advance parole may gain the ability to adjust status in the United States upon her return if she meets the requirements for adjustment under existing immigration law. To adjust status, a person must have been inspected and admitted or paroled into the United States, among other requirements.[26] Many DACA recipients originally entered the U.S. without inspection, and therefore are not able to apply for adjustment of status within the United States under INA § 245(a). Obtaining DACA and then travelling and re-entering the U.S. with parole, may give some of these individuals the ability to adjust status through an "immediate relative"[27] family member after their return to the U.S.

Keep in mind that advance parole is not required to adjust status to permanent residence in some cases. Any applicant who meets the requirements in INA § 245 can qualify to adjust to permanent residence. Only in the case of someone who last entered without inspection *and* who is an "immediate relative" of a U.S. citizen, does advance parole become central to qualifying for adjustment.

#### A. Requirements for Adjustment of Status.

DHS may adjust a person's status to permanent residence if they meet the requirements of INA § 245(a): 1) she must have been admitted or paroled into the U.S.; 2) she must apply for adjustment; 3) she must be eligible to receive an immigrant visa and be admissible to the United States for permanent residence, and 4) an immigrant visa must be available when they file the adjustment application.

The first requirement lies in the first clause of INA § 245(a), which provides that status can only be adjusted of a person *"who was admitted or paroled into the United States."* A person who has not been lawfully admitted or paroled into the country is therefore not eligible for adjustment of status.[28]

---

[25] *See* CBP Directive No. 3340-043, "The Exercise of Discretionary Authority" Sept. 3, 2008, available at http://nationalimmigrationproject.org/legalresources/NIPNLG_v_DHS/CBP%20Parole%20Directive%20%28Partially%20Redacted%29%20-%20Sept%203%202008.pdf.
[26] *See* INA § 245(a).
[27] "Immediate relatives" are parents of adult U.S. Citizens, spouses, and minor unmarried children of U.S. citizens. Advance parole will not ordinarily help family preference beneficiaries be able to adjust status, because most of them would still face the INA § 245(c) bars to adjustment for failing to continuously maintain lawful status, and/or working without authorization. But these family preference beneficiaries may still be able to consular process.
[28] However they may still be able to get a green card outside the U.S. through consular processing.

Traveling and reentering the country with advance parole, however, overcomes this problem, because the person has now been paroled into the United States.[29]

In addition, INA § 245 sets out several bars to eligibility for adjustment of status. In particular, INA § 245(c) creates bars to adjustment that may affect many DACA recipients and other undocumented immigrants, including if a person has ever worked unlawfully or failed to continuously maintain lawful status.[30] These are not grounds of inadmissibility. They are only bars to adjusting to permanent residence within the U.S. These bars, however, have important exceptions for immediate relatives of U.S. citizens. An immediate relative who did not continuously maintain lawful status or who has worked without authorization, can still adjust status, while other family petition beneficiaries, such as spouse of an LPR, cannot.[31] However, a person who is subject to any of these bars to adjustment of status may still be admitted to permanent residence at the Consulate abroad, through consular processing.

But in all cases, a person who is subject to any grounds of inadmissibility is not able to be admitted to permanent residence, unless they are exempt from particular grounds, or able to get a waiver for that inadmissibility.

### B. Inadmissibility

#### 1) Inadmissible for unlawful entry

One very common ground of inadmissibility is INA § 212(a)(6)(A)(i), which makes inadmissible any immigrant who is present in the United States "without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."[32] In other words, those who entered illegally are subject to this ground of inadmissibility. This is one of the reasons it is so difficult for undocumented immigrants to get legal status. Conversely, a person who entered with a visa, even if it expired many years ago, is not subject to this particular ground of inadmissibility. That is, DACA recipients who entered lawfully do not need to be paroled in, because they already have avoided this issue.

However, a person who gets advance parole, travels outside the U.S., and re-enters the country pursuant to advance parole has now been "paroled" into the country. This person is no longer subject to inadmissibility under INA § 212(a)(6)(A)(i). The fact that they previously entered without inspection does not affect this analysis.[33]

---

[29] See USCIS Policy Memorandum 602-0091, Nov. 15, 2013 available at http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2013/2013-1115_Parole_in_Place_Memo_.pdf.

[30] Additionally, some subsequent sections of INA § 245 provide for adjustment of status for particular types of applicants, such as Special Immigrant Juveniles (SIJ) or "U" victim of crime visas, where the rules and requirements may be substantially different.

[31] See INA § 245(c)(2).

[32] INA § 212(a)(6)(A)(i).

[33] In 2013, USCIS issued a memorandum describing a prosecutorial discretion option for "parole in place" which provided detailed guidance about how parole interacts with INA § 212(a)(6)(A)(i). In this memorandum, USCIS writes that: "An alien who entered the United States without inspection, but subsequently receives parole, is not inadmissible under either of the two inadmissibility grounds contained in section 212(a)(6)(A)(i)." Therefore, if a person's only bar to adjustment of status as an immediate relative was that they entered the United States without being "inspected, admitted, or paroled," then after advance parole they are no longer inadmissible on this basis, because they have now been paroled. Although the analysis and explanation is in the policy for "parole in place" for family members of U.S. military and veterans, the memo states: "This amendment to AFM chapter 40.6 applies to any paroled alien, not only to the family members of Armed Forces personnel." USCIS Policy Memorandum 602-0091, Nov. 15, 2013 available at http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2013/2013-1115_Parole_in_Place_Memo_.pdf. Furthermore, in 2014 DHS issued a memo directing DHS legal counsel to issue guidelines clarifying that this interpretation

Therefore, a person who has entered pursuant to a grant of advance parole may be admissible for permanent residence under immigration law and may qualify for adjustment of status. Remember that a person must meet all the requirements for adjustment of status under INA § 245 and must 1) not have any other basis of inadmissibility or 2) be able to seek a waiver of inadmissibility.

> **Example:** Jose came across the border without inspection as a child and has lived here ever since. He received DACA and recently married a U.S. citizen. Jose applied for advance parole to travel to Mexico for work. When he returns Jose will be able to apply to adjust status as an immediate relative of a U.S. citizen. He will not be inadmissible because he was inspected and paroled on advance parole.

A DACA recipient does not need to have a U.S. citizen (or anyone else) petitioning for her to travel on advance parole. No petitioner is needed for advance parole. The immediate relative petitioner is only required for seeking *adjustment of status* after traveling with advance parole. The requirements for advance parole for DACA recipients are described above in section I. Thus, a DACA recipient who travels on advance parole and *later* marries a U.S. citizen can apply for her green card through adjustment of status as an immediate relative.

### 2) Other grounds of inadmissibility

Other common grounds of inadmissibility for undocumented immigrants are the "unlawful presence bars," discussed in section II-C above. As explained above, advance parole provides an exception to the normal operation of these grounds of inadmissibility, which are described in INA § 212(a)(9)(B). Most undocumented immigrants who leave the U.S. will be inadmissible for lawful status for three or ten years because of their prior unlawful presence totaling more than 180 days (three year "bar") or one year (ten year bar) with certain exceptions. However, leaving the U.S. with advance parole does not make a person inadmissible under that section, because it does not count as a "departure."

Nonetheless, other grounds of inadmissibility can still prevent a person from adjusting status. For example: the "permanent bar," discussed above in section II-D, false claims to U.S. citizenship, or any criminal grounds of inadmissibility.

> **Example**: Veronica entered the U.S. without inspection in 1993 and has never left. In 1999, Veronica was convicted of misdemeanor drug possession. In 2010 she married a U.S. citizen in 2010 and in 2013 she received DACA. Veronica would like to travel on advance parole so that she can adjust status through her U.S. citizen spouse. However, Veronica's conviction is a controlled substance offense and she is inadmissible. It would be very risky for her to try to travel with advance parole, even though her conviction occurred 16 years ago. The fact that she has been granted DACA and could apply for advance parole does not change her inadmissibility resulting from the drug conviction. Even if she were successfully paroled back into the U.S., she would still be inadmissible to adjust status based on her U.S. citizen spouse's petition. Veronica will have to try to get her conviction vacated in order to pursue any further immigration benefits.

---

applies to all cases of travel with advance parole. *See* DHS Secretary Jeh Johnson, Directive to Provide Consistency Regarding Advance Parole, Nov. 20, 2014, available at http://www.dhs.gov/sites/default/files/publications/14_1120_memo_arrabally.pdf.

### C. Summary of requirements for DACA recipients to travel on advance parole and adjust status:

DACA recipients who entered without inspection, but who are not subject to any other grounds of inadmissibility (or who can get a waiver of their inadmissibility), may be able to adjust status as immediate relatives, if they successfully obtain a grant of advance parole and are paroled back into the United States after travel. As always, a person seeking to adjust status must have an immigrant visa immediately available to them, be eligible for adjustment, and must not be inadmissible.