<pre>
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3

 4   STATE OF TEXAS, ET AL        *     1:18-CV-068
                                  *     Houston, Texas
 5   VS.                          *
                                  *     1:36 p.m.
 6   UNITED STATES OF AMERICA     *     October 8, 2019

 7

 8                          MOTION HEARING


 9           BEFORE THE HONORABLE ANDREW S. HANEN
                  UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES:

12

     FOR THE STATE OF TEXAS:
13   Todd Lawrence Disher, Adam Arthur Briggs, Phillip Trent
     Peroyea
14   OFFICE OF THE ATTORNEY GENERAL OF TEXAS
     209 W. 14th St., 8th Floor
15   Austin, Texas 78701
     512.936.2266
16

17

18   FOR HOUSTON HISPANIC CHAMBER OF COMMERCE, ET AL:
     Nina Perales
19   MALDEF
     110 Broadway, Suite 300
20   San Antonio, Texas 78205
     210.224.5476
21

     And
22

     Ramon A. Soto
23   Mexican American Legal Defense & Educational Fund
     110 Broadway, Suite 300
24   San Antonio, Texas 78205
     210.224.5476
25
</pre>

1  Court Reporter:
   Johnny C. Sanchez, RPR, RMR, CRR
2  515 Rusk, #8004
   Houston, Texas 77002
3  713.250.5581

4  Proceedings recorded by mechanical stenography.   Transcript
   produced by computer-assisted transcription.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    THE COURT:  All right.  Be seated.

2                         We're here in State of Texas, et al versus

3    U.S.A., et al.

4                         Mr. Disher, you're here for the State.

5    Who else is there with you?

6                    MR. DISHER:  Yes, Your Honor.  Todd Disher

7    for the State, and with me I have Adam Biggs, and Trent

8    Peroyea.

9                    MR. BIGGS:  Good afternoon, Your Honor.

10                   MR. PEROYEA:  Good afternoon, Your Honor.

11                   THE COURT:  Ms. Perales, you're here for the

12   defendant intervenors.  Who else is with you?

13                   MS. PERALES:  Good afternoon, Your Honor.

14   In addition to me, Nina Perales, I have with me Mr. Ramon

15   Soto.

16                   THE COURT:  All right.  And who is

17   representing the great State of New Jersey?

18                   MR. MORAMARCO:  I am, Your Honor, Glenn

19   Maramarco.

20                   THE COURT:  And, Mr. Hu, little table over

21   at the side.

22                   MR. HU:  Fine by me.

23                   THE COURT:  Let me start with what may be

24   the easy one.  I have a motion to compel.  Is that

25   resolved?  Have we produced the documents?  Do you have

1    them?

2                    MR. DISHER:  Your Honor, last Tuesday, we

3    essentially -- well, a week before that, we had agreed to

4    produce all of the responsive documents that Alabama and

5    Arkansas had, and then the last Tuesday we did indeed

6    produce those documents.  So I can report to the Court

7    that based on their search, there's nothing else

8    responsive to produce to those requests.

9                    THE COURT:  Does that moot the motion, or do

10   you think there's something else there?

11                   MS. PERALES:  No, Your Honor.  I mean, we

12   didn't receive what we asked for, but if the position of

13   the plaintiffs is that there is nothing more to produce,

14   then we're happy to withdraw the motion to compel.

15                   THE COURT:  All right.  I'll just deny it as

16   moot.  You don't have to file anything.  I'll deny it as

17   moot.

18                   MS. PERALES:  Okay.  Thank you.

19                   THE COURT:  Okay.  So let's get to the real

20   business at hand, which is the great State of New Jersey's

21   motion to stay.  Let me just talk for a minute.  I mean,

22   there's no magic to this.  And, quite frankly, you know,

23   if I could predict what the Supreme Court is going to do,

24   I'd probably quit this job and go to Vegas and, you know,

25   make some real money, but -- and I guess maybe I ought to

start with you, Mr. Moramarco, because it is your motion.
But what makes us think that the Supreme Court is going to
rule on anything that helps me?  Let me be selfish for a
minute.  What's going to help me?

MR. MORAMARCO:  Sure, Your Honor.  Would you
prefer I go there?

THE COURT:  Why don't you come up here
because it's easier for the court reporter to hear.  Not
this court reporter, any court reporter.  His hearing is
fine.

MR. MORAMARCO:  Sure, Your Honor.

Our position is that there is substantial
overlap between the issues that are before the Supreme
Court and the issues that are before this Court.  If you
look at the way the case -- look at the way the case was
briefed before the Supreme Court, the United States has
raised two issues.

Really, the first one is whether or not
the recision is judicially reviewable under the APA.  So
if the Court were to rule for the government there, this
case would essentially, presumably, might not be anything
left to decide here, because the recision -- if the
recision is valid, then whether or not the initial -- the
initial grant under DACA no longer is relevant.  And
that's the reason that Texas came into this case.

1          But on the second question, the government
2  argues fairly strenuously that DACA is lawful and that
3  issue has been joined by all of the competing briefs as
4  well.  The government spent five pages of its opening
5  brief on the argument that DACA is in fact lawful.  I was
6  looking --

7          THE COURT:  Really?

8          MR. MORAMARCO:  I'm sorry.  That DACA's
9  recision is lawful.

10          THE COURT:  Okay.  I was going to say.

11          MR. MORAMARCO:  That DHS correctly concluded
12  that DACA was unlawful.  So I think that that issue has
13  been joined by all the parties there, and that's one of
14  the -- that's certainly one of the issues that's been
15  briefed.  I know that Ted Olson in the brief that he
16  filed, spent 11 pages on the argument that DACA is lawful.

17          So the issue clearly is one that the Court
18  may reach, but even if it doesn't reach that directly
19  because there are other ways the Court could end up
20  deciding this issue, I do think it will give -- it will
21  give some assistance to this Court.

22          I mean, I recall when a year ago, this
23  Court issued its preliminary injunction ruling, and it
24  certified potential questions the Fifth Circuit looking
25  for guidance on issues, and some of those issues are, in

1  fact, again briefed before the Supreme Court.

2            From Page 52 of the government's brief

3  before the Supreme Court, they argue that there's no

4  meaningful distinction between the lawfulness of DACA and

5  the lawfulness of the original DACA policy.  That was one

6  of the issues that you certified to the Court and said

7  that there was a reasonable difference of opinion on that.

8            There's also the issue of whether or not

9  there is problematic discretion sufficient to make the

10 program valid, and you noted that "Regions and Vidal

11 Batalla" both found that, saying that reasonable minds

12 could differ on that.

13            So those are some of the issues that are

14 percolating before the Supreme Court.  Now, we don't know

15 for sure that it's going to reach all of those, but there

16 is a good chance for potential if the government wins that

17 case, and we'll know I guess in about 6 to 8 months.

18            THE COURT:  Is there anything that this

19 Court can do?  I mean, obviously, I can rule.  I mean, but

20 is there anything short of that, ruling on the merits,

21 that would, for lack of a better term, help tee up the

22 issue for the supremes to go ahead and decide it?  I mean,

23 anybody given any thought to that?

24            MR. MORAMARCO:  Well, I think briefing would

25 have been done in the Supreme Court.  So I'm not sure that

1    they could react.  I guess they could file a 28(j) sort of

2    letter to sort of inform the Court of what else has been

3    happening here.  But the briefing in the Supreme Court

4    will obviously be done.  But I guess one of the

5    questions --

6                THE COURT:  Here's, I guess here's my --

7    here's my worry -- and, Mr. Disher, I'll let you weigh in

8    because I know you're opposed to this -- but here's my

9    worry about if I was to grant your motion.  The obvious

10   worry is we wait eight months and nothing happens; or they

11   rule, but they don't say anything that helps resolve this

12   case.  And what makes me worry about that is some of those

13   courts -- and I can't remember which ones because they

14   were four or five that ruled on the recision of DACA --

15   some of them basically said:  Well, no court has ever held

16   it to be illegal.  Which is technically true.  But, I

17   mean, so they dodge the issue.  And, you know, I said:  In

18   my order, on the legality part of it, based almost

19   entirely on the Fifth Circuit opinion that I have to

20   follow, said that given their opinion in DACA, it would

21   probably be the same in DACA.

22               Now, I denied the injunction for a number

23   of other reasons, but would I obviously love for the

24   Supreme Court to take this now, the answer is yes.

25               All right.  Mr. Disher, weigh in.  You

1  don't have to sit down.  Just stay right there or feel

2  more comfortable sit in that first chair.

3              MR. DISHER:  Thank you, Your Honor.  So just

4  a few points in response to some of your questions.

5                   There is very much a scenario here in

6  which the Supreme Court rules on the 2017 recision cases

7  before it, and never once addresses the legality of the

8  underlying 2012 memo, which is the heart of this case, of

9  course.

10             THE COURT:  Right.  That's what the courts

11  did of the opinion that they granted cert on.

12             MR. DISHER:  Correct.  And, so, I think

13  that, to Your Honor's point, there is very much a

14  possibility that if the stay is granted in this case,

15  we're now eight, nine, 12 months from now, and we still

16  don't have an opinion from the Supreme Court that really

17  helps this Court.  And all we have done at that point is a

18  year and a half worth of litigation that has already

19  occurred, discovery is closed, the motions are fully

20  briefed, and we have an imminent setting on our motion for

21  summary judgment that is fully teed up.

22                   Now, we would just be kicking that can

23  down the road, and there may not be anything to gain from

24  doing so.  And then also to your point of if there's

25  anything else that this Court can do to help tee up the

1    issue before the Supreme Court -- now, I know that the

2    parties in that case hotly dispute the state of rationales

3    for the recision, but the government's position is that

4    one of those reasons for pulling DACA down was because

5    they were worried about future litigation over the

6    legality of the 2012 memo.

7                      That is very much what this case is about,

8    and the fact that this case now exists proves them right,

9    and if this case gets stayed in some way, I think that

10   perhaps maybe diminishes their argument.  And if this

11   Court was to rule on the pending motion for summary

12   judgment, whether one way or the other, I think that that

13   would certainly go towards the federal government's

14   justification or stated rationale that one of the reasons

15   they rescinded DACA was a threat of future litigation.

16   That litigation is happening right now.  So if that

17   litigation was to be stopped or even to be stayed in some

18   way, that perhaps reduces some of that rationale.

19                      So I think that the continuing existence

20   of this case and a ruling from this Court would indeed

21   help the Court, the Supreme Court, in deciding the issues

22   in front of it.

23                      THE COURT:  Ms. Perales, do you want to

24   weigh in?

25                      MS. PERALES:  Thank you, Your Honor.

 1                    I think to some extent, the pending motion
 2    from New Jersey interacts with our more recently filed
 3    motion for stay at Docket Entry 432.  And the basis for
 4    our motion, which is actually a motion for leave to submit
 5    supplemental briefing is that we have had seven more
 6    months of discovery and development of the record since
 7    briefing closed on the plaintiff's motion for summary
 8    judgment.  We have developed a great deal more evidence,
 9    including expert testimony, lay witness testimony, answers
10    to interrogatories, production of documents.
11                    THE COURT:  What issues would they go to?
12                    MS. PERALES:  They go to both the issues
13    standing, as well as the issue of how DACA is implemented,
14    how it is carried out.  And that's a very central issue
15    with respect to the merits.  Even putting aside the
16    question of standing, which is very strongly joined in
17    this later part of the discovery.
18                    THE COURT:  Of course, the courts that have
19    ruled on the recision cases, I mean, basically, they
20    granted standing for anybody that had ever met a DACA
21    recipient.  I mean, their rulings on standing are
22    incredibly broad.  You don't have to comment on that.
23                    But what would show that the State would
24    not have standing?  And I just mean that hypothetically.
25    You don't have to quote evidence to me.  But

1    hypothetically, if a state says, "I'm coming in and

2    representing my citizens, and I think my citizens are

3    getting the short end of the stick here," what would I

4    have to say that's not true?

5              MS. PERALES:  I think there would have to be

6    some evidence that the citizens are getting the short end

7    of the stick.  And what we have developed through further

8    development of the record, which was under the scheduling

9    order that the Court set out for us, is a great deal more

10   evidence touching on that, as well as how DACA's

11   implemented.

12             And I wanted to mention that we are still

13   waiting for the last of the discovery to come from the

14   federal government under the Court's order granting them

15   an extension until October 14th.  We have additional

16   material.  And the last time we were here with you, Your

17   Honor, we spoke about a review of records of actual DACA

18   recipients, and the federal government is concluding that

19   sample.

20             THE COURT:  Let me ask -- Mr. Hu, you may

21   not be the one that can really address this, but the

22   government has filed pleadings that basically say this

23   discovery doesn't matter one way or the other because it

24   has to be decided on the record, the administrative

25   record.

1              Mr. Hu, do you feel qualified to join?

2              MR. HU:  We don't believe there should be

3  any further discovery at this time.  I mean, after summary

4  judgment stage, the Court has indicated there might be a

5  need for discovery.

6              THE COURT:  Well, I'm considering the

7  fact -- and, I mean, we're just sitting here, we're on the

8  record obviously, but this is -- we're not arguing the

9  merits more than we're arguing procedure here.  I mean,

10  I'm considering asking for briefing on that issue, on what

11  can I consider.  Am I -- you know, because I think it's

12  been raised in some of these other cases, and I know --

13  I'm blank, Mr. Hu, on where it was raised by the

14  government.  But they're basically saying the record was

15  the record when it got implemented, and that's all you can

16  consider.

17              MR. HU:  That's correct.  That's typically

18  how the APA review process works.

19              THE COURT:  And, you know, that was not

20  argued in our prior case.  And it wasn't argued, really,

21  in the beginning of this case.  At least I don't remember

22  it being argued.  Because if I'd been convinced of that, I

23  wouldn't have let any discovery go on because it all would

24  have been moot and a waste of time.

25              Now, I know the government, the state

1    government, the other government, their position has

2    always been that no discovery was necessary, but I think

3    your position was not -- and, Mr. Disher, you correct

4    me -- but your position was not what the United States

5    government's position is now, but if we're stuck on the

6    APA record, your position we can just win as a matter of

7    law.  I mean, am I right about that?

8                    MR. DISHER:  You are, Your Honor.  The legal

9    issues or, rather, the dispositive issues in this case are

10   purely legal issues.  Those issues have been teed up as

11   early as the challenge to extend the DACA, and certainly

12   re-teed up in this case when we filed in May of 2018, as

13   well as when we filed our motion for summary judgment in

14   February of this year.

15                   So those are legal issues which are in

16   fact dispositive to this entire case are fully briefed up

17   and they are fully in front of the Court and fully

18   developed, to the extent that the Court needs any

19   additional information.

20                   MS. PERALES:  And, of course, it's our

21   position, Your Honor, as defendant intervenors that, of

22   course, much of this is driven by the evidence that we've

23   developed since we filed our brief, and I believe briefing

24   closed sometime around February, we've had seven more

25   months of discovery.

1          THE COURT:  What would be the difference --

2     and, again, I'm not -- I'm thinking out loud here more

3     than I'm asking.  I'm really asking for advice from all

4     four of you -- between me staying the case, and me ruling,

5     and staying the effect of the ruling?

6          MR. DISHER:  I think that one of the biggest

7     differences would be if you rule, that will, in essence,

8     go to -- and have, perhaps, some effect on the 2017

9     recision cases before the Court, because if you ruled, for

10    example, hypothetically, that DACA is in fact unlawful, I

11    think that will lend credence to the stated justification

12    under the 2017 recision memo, that part of the reason the

13    government was rescinding DACA was a fear that DACA was

14    going to be ruled unlawful.

15          Well, if that fear comes to fruition, then

16    that proves them right, which means that they're stated

17    justification can be anything but arbitrary and

18    capricious.

19          THE COURT:  I guess my -- and I don't want

20    to steal the defendant's thunder here -- but if I was

21    going to answer that, I'd say, "Well, Judge, haven't you

22    already done that in your preliminary injunction hearing?"

23    I mean, you've said if you had to rule as a matter of law

24    on the likelihood of success on the merits, that Texas

25    would win.

1                Now, you know, but an injunction wasn't

2  granted because that's one of -- or two of the elements

3  they won were out of the other five, the other three they

4  lost, at least in my mind, in my ruling.  So why -- I

5  mean, isn't that enough?  I mean, isn't that enough to

6  signal to the supremes that, you know...

7                MR. DISHER:  Well, Your Honor, couple of

8  things on that point.  I think, first of all, if this

9  Court was to rule on the summary judgment, even if it

10  stayed the effect of its ruling, I imagine that the

11  parties would still be allowed to pursue appellate

12  remedies at that point.  So the case would still be in

13  existence and it would still be progressing through the

14  legal channels.

15                So, again, the threat that the DOJ was

16  concerned about would still very much exist, as opposed if

17  this case was just definitely stayed, I think that that

18  lessens their argument.  And, so, I think that a court --

19                And then my second point would be that

20  this Court, of course, ruled on a preliminary injunctive

21  basis, and I think we all recognize that the practical

22  effect of a final judgment on the merits is different than

23  a ruling on the preliminary injunction.

24                MS. SE CREST:  Your Honor, it's our position

25  that if the Court were to rule now, it would be on a very

1   partial and undeveloped record.  At the time that the

2   plaintiffs filed their motion for summary judgment, we had

3   essentially the preliminary injunction record.  We did not

4   have more.

5                    And what we have now is a soon-to-conclude

6   seven additional months of discovery that provide much

7   more of the record than what the Court had before.  And we

8   would urge the Court to proceed in this case on this

9   case's sake, and not for the sake of any other case,

10  including the cases pending before the Supreme Court,

11  which will be submitted on November 12th during argument.

12                   THE COURT:  I understand that.  I mean,

13  clearly the motion to stay and it was filed was based on

14  don't rule, please don't rule because the supremes may

15  take care of this for you, which is not an unappealing

16  argument for a judge.

17                   Go ahead.  Weigh in.

18                   MR. MORAMARCO:  Your Honor, yeah.  I'd like

19  to weigh in on that.  And I do think the way the Ninth

20  Circuit -- and I do want to emphasize, the Ninth Circuit

21  decision found that it was arbitrary and capricious, but

22  because the government concluded that DACA was unlawful,

23  that's the basis for their holding for -- and that's what

24  the Supreme Court is going to be revealing.

25                   So I do think there's a decent chance that

1    the Court will reach that issue.  And I don't see the
2    advantage.  I've seen a lot of downsides to sort of the
3    DACA population if this Court were to issue a ruling that
4    puts more apprehension in their hearts about their future
5    when I think we all believe that, ultimately, the Supreme
6    Court is going to be the decisionmaker on this.  It may
7    take longer to get there if it goes through this Court,
8    but the one part that I strenuously disagree with Texas
9    about is that there's really a downside to waiting here,
10   and I know this case has gone on for a long time.  And
11   Your Honor knows that as well a anyone.  But that's a
12   result, to a large extent, of Texas not bringing this case
13   against DACA years ago in the DACA litigation.  They made
14   a strategic decision not to challenge DACA.
15              So when we're close to the Supreme Court
16   potentially resolving this issue, the downside risk of a
17   court getting it wrong and sending, you know, or having
18   these individuals live in fear again of what the future is
19   going to hold, perhaps precipitously, is significant.  And
20   I do think, while this Court can weigh in on the issue and
21   it might be an advantage, we're getting closer to an
22   advisory opinion if there's not going to be any actual
23   remedy associated with that.
24              And I do think that was one of the
25   arguments, obviously, we made that it's hard for this

1  Court to really craft a remedy at this stage, given that

2  there are injunctions that are in existence that are

3  before the Supreme Court now if the Supreme Court is

4  allowed to continue.

5              So there's no real practical relief that

6  this Court -- at least our position -- can give to the

7  State of Texas and sister states.  But I do think that

8  there isn't a huge upside to weighing in if the Supreme

9  Court is ultimately going to decide this.  And the status

10 quo doesn't really hurt Texas, in our opinion.

11             THE COURT:  Mr. Hu, you got a feeling?

12             MR. HU:  We really take no position on, and

13 we do leave it to the discretion of the Court as to

14 whether to stay or not.

15             MR. DISHER:  Your Honor, may I?  I guess I

16 want to shift focus a little bit because we filed this

17 lawsuit as the plaintiff.  Now, New Jersey, of course,

18 came in as an intervenor and they argue that there's no --

19 there's no upside to pursuing it.  I think that that

20 actually flips the analysis on its head.  We need to look

21 at what is the downside of continuing this case?  I don't

22 think that there is a downside.

23             The lion's share of the work has been

24 done, discovery, the factor for discovery has closed, the

25 DOJ is going to produce one additional piece of

 1   information that they have agreed to, I think next week.
 2   And, again, we've had over 400 pages of briefing in this
 3   case, over 30 depositions, thousands of pages of
 4   production.  And, really, there is no benefit to setting
 5   this case.
 6              There is, of course, a cost to us because
 7   we've done all of this work, and now we are indefinitely
 8   postponing based on a decision that may not help move the
 9   ball forward in this case at all.  But I really don't see
10   any benefit to staying this case, at this point, a year
11   and a half in, after we've all been traveling around the
12   country, doing depositions, expending the money that's
13   already been expended, to tee up to what are ultimately
14   legal issues that this Court is now ready to rule on.
15              THE COURT:  Now, New Jersey has you beat on
16   that argument, because their brief points out, "Yeah, our
17   work is done, but the court is just beginning."  That's
18   very persuasive argument.
19              All right.  Here's what I'm going to do.
20   I'm not going to rule on the motion to stay, but I am
21   cancelling the October 28 hearing.  But what I want on
22   October 28th, is for y'all to file a brief on what I can
23   consider.  And I'm not ruling on your motion, Ms. Perales,
24   yet because it may be, you know, whether you want to file
25   additional stuff and want to do some additional things, if

1  I conclude, based on the briefing, that all I have is the
2  record about when it was enacted, then all of this
3  subsequent stuff is, you know, window dressing really.  I
4  mean, I know the federal government has taken that place,
5  that position, state's taken that position, albeit for a
6  different reason.  But what I really want to say, really
7  want y'all to focus on is the APA, is what can I consider
8  in whether this was lawfully enacted within the APA, and
9  am I stuck with whatever APA record is.  That's
10  number one.

11              And then number two, what do I have with
12  the APA?  Do I have anything?  I mean, because this
13  issue -- and maybe it was raised a lot earlier and I
14  didn't really focus on it.  But it's clearly the
15  government in the last couple briefs that had to do with
16  discovery, their position is, "Wait a minute.  Time out.
17  All you get to consider is this.  So why are we doing
18  discovery?"

19              So I would like y'all to each focus on
20  those two questions, number one, what can I consider; and,
21  number two, if all I can consider is the APA record, what
22  is the APA record, and what do I have of it, and where is
23  it in the file?"  Because I'm not sure -- not that I --
24  you know, I don't focus, you know, until it's time for me
25  to rule on everything that you've attached and all that

1  kind of stuff, but do I actually have any of the APA

2  records?

3                    And, so, I will then reset the hearing,

4  but probably before I reset the hearing, I'll take

5  Ms. Perales' motion based on what you guys convince me I

6  can look at.  Will that delay things?  Yes, it will.  Will

7  it delay it long enough for the Supreme Court to rule?

8  Probably not.

9                    MR. MORAMARCO:  We may need some oral

10  argument, Your Honor.

11                    THE COURT:  And I'm not saying I might not

12  eventually grant your motion to stay, but I think in order

13  to rule on Ms. Perales' current motion, it's incumbent on

14  me to know what I can consider, because if all I can

15  consider is the APA record, then why waste anymore time

16  looking at discovery?

17                    All right.  Anything else we can resolve

18  today?

19                    MR. DISHER:  Not from the state.

20                    MR. MORAMARCO:  Nothing here, Your Honor.

21                    THE COURT:  All right.  Thank y'all.

22                    Off the record.

23                    **(An off-the-record discussion was held)**

24

25

1                        **COURT REPORTER'S CERTIFICATE**

2

3    I, Johnny C. Sanchez, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6
                                    /s/_____
7                                   Johnny C. Sanchez, CRR, RMR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**/s** [1] - 23:6
**11** [1] - 6:16
**12** [1] - 9:15
**12th** [1] - 17:11
**14th** [1] - 12:15
**2012** [2] - 9:8, 10:6
**2017** [3] - 9:6, 15:8, 15:12
**2018** [1] - 14:12
**28** [1] - 20:21
**28(j** [1] - 8:1
**28th** [1] - 20:22
**30** [1] - 20:3
**400** [1] - 20:2
**432** [1] - 11:3
**52** [1] - 7:2
**6** [1] - 7:17
**8** [1] - 7:17
**above-entitled** [1] - 23:5
**actual** [2] - 12:17, 18:22
**Adam** [1] - 3:7
**addition** [1] - 3:14
**additional** [6] - 12:15, 14:19, 17:6, 19:25, 20:25
**address** [1] - 12:21
**addresses** [1] - 9:7
**administrative** [1] - 12:24
**advantage** [2] - 18:2, 18:21
**advice** [1] - 15:3
**advisory** [1] - 18:22
**afternoon** [3] - 3:9, 3:10, 3:13
**ago** [2] - 6:22, 18:13
**agreed** [2] - 4:3, 20:1
**ahead** [2] - 7:22, 17:17
**al** [2] - 3:2, 3:3
**Alabama** [1] - 4:4
**albeit** [1] - 21:5
**allowed** [2] - 16:11, 19:4
**almost** [1] - 8:18
**analysis** [1] - 19:20
**answer** [2] - 8:24, 15:21
**answers** [1] - 11:9
**APA** [11] - 5:19, 13:18, 14:6, 21:7, 21:8, 21:9, 21:12, 21:21, 21:22, 22:1, 22:15
**appellate** [1] - 16:11
**apprehension** [1] - 18:4
**arbitrary** [2] - 15:17, 17:21
**argue** [2] - 7:3, 19:18
**argued** [2] - 13:20, 13:22
**argues** [1] - 6:2
**arguing** [2] - 13:8, 13:9
**argument** [9] - 6:5, 6:16, 10:10, 16:18, 17:11, 17:16, 20:16, 20:18, 22:10
**arguments** [1] - 18:25
**Arkansas** [1] - 4:5
**aside** [1] - 11:15
**assistance** [1] - 6:21
**associated** [1] - 18:23
**attached** [1] - 21:25
**ball** [1] - 20:9
**based** [6] - 4:7, 8:18, 17:13, 20:8, 21:1, 22:5

**basis** [3] - 11:3, 16:21, 17:23
**Batalla** [1] - 7:11
**beat** [1] - 20:15
**beginning** [2] - 13:21, 20:17
**benefit** [2] - 20:4, 20:10
**better** [1] - 7:21
**between** [3] - 5:13, 7:4, 15:4
**biggest** [1] - 15:6
**Biggs** [1] - 3:7
**BIGGS** [1] - 3:9
**bit** [1] - 19:16
**blank** [1] - 13:13
**brief** [6] - 6:5, 6:15, 7:2, 14:23, 20:16, 20:22
**briefed** [5] - 5:16, 6:15, 7:1, 9:20, 14:16
**briefing** [8] - 7:24, 8:3, 11:5, 11:7, 13:10, 14:23, 20:2, 21:1
**briefs** [2] - 6:3, 21:15
**bringing** [1] - 18:12
**broad** [1] - 11:22
**business** [1] - 4:20
**cancelling** [1] - 20:21
**capricious** [2] - 15:18, 17:21
**care** [1] - 17:15
**carried** [1] - 11:14
**case** [30] - 5:15, 5:21, 5:25, 7:17, 8:12, 9:8, 9:14, 10:2, 10:7, 10:8, 10:9, 10:20, 13:20, 13:21, 14:9, 14:12, 14:16, 15:4, 16:12, 16:17, 17:8, 17:9, 18:10, 18:12, 19:21, 20:3, 20:5, 20:9, 20:10
**case's** [1] - 17:9
**cases** [5] - 9:6, 11:19, 13:12, 15:9, 17:10
**central** [1] - 11:14
**cert** [1] - 9:11
**certainly** [3] - 6:14, 10:13, 14:11
**CERTIFICATE** [1] - 23:1
**certified** [2] - 6:24, 7:6
**certify** [1] - 23:3
**chair** [1] - 9:2
**challenge** [2] - 14:11, 18:14
**chance** [2] - 7:16, 17:25
**channels** [1] - 16:14
**Circuit** [4] - 6:24, 8:19, 17:20
**citizens** [3] - 12:2, 12:6
**clearly** [3] - 6:17, 17:13, 21:14
**close** [1] - 18:15
**closed** [4] - 9:19, 11:7, 14:24, 19:24
**closer** [1] - 18:21
**comfortable** [1] - 9:2
**coming** [1] - 12:1
**comment** [1] - 11:22
**compel** [2] - 3:24, 4:14
**competing** [1] - 6:3
**concerned** [1] - 16:16
**conclude** [2] - 17:5, 21:1
**concluded** [2] - 6:11, 17:22
**concluding** [1] - 12:18
**consider** [9] - 13:11, 13:16, 20:23, 21:7, 21:17, 21:20, 21:21, 22:14, 22:15
**considering** [2] - 13:6, 13:10

**continue** [1] - 19:4
**continuing** [2] - 10:19, 19:21
**convince** [1] - 22:5
**convinced** [1] - 13:22
**correct** [4] - 9:12, 13:17, 14:3, 23:4
**correctly** [1] - 6:11
**cost** [1] - 20:6
**country** [1] - 20:12
**couple** [2] - 16:7, 21:15
**course** [7] - 9:9, 11:18, 14:20, 14:22, 16:20, 19:17, 20:6
**court** [7] - 5:8, 5:9, 8:15, 16:18, 18:17, 20:17
**COURT** [28] - 3:1, 3:11, 3:16, 3:20, 3:23, 4:9, 4:15, 4:19, 5:7, 6:7, 6:10, 7:18, 8:6, 9:10, 10:23, 11:11, 11:18, 12:20, 13:6, 13:19, 15:1, 15:19, 17:12, 19:11, 20:15, 22:11, 22:21, 23:1
**Court** [55] - 4:6, 4:23, 5:2, 5:14, 5:16, 5:20, 6:17, 6:19, 6:21, 6:23, 7:1, 7:3, 7:6, 7:14, 7:19, 7:25, 8:2, 8:3, 8:24, 9:6, 9:16, 9:17, 9:25, 10:1, 10:11, 10:20, 10:21, 12:9, 13:4, 14:17, 14:18, 15:9, 16:9, 16:20, 16:25, 17:7, 17:8, 17:10, 17:24, 18:1, 18:3, 18:6, 18:7, 18:15, 18:20, 19:1, 19:3, 19:6, 19:9, 19:13, 20:14, 22:7
**Court's** [1] - 12:14
**courts** [3] - 8:13, 9:10, 11:18
**craft** [1] - 19:1
**credence** [1] - 15:11
**CREST** [1] - 16:24
**CRR** [1] - 23:7
**current** [1] - 22:13
**DACA** [24] - 5:24, 6:2, 6:5, 6:12, 6:16, 7:4, 7:5, 8:14, 8:20, 8:21, 10:4, 10:15, 11:13, 11:20, 12:17, 14:11, 15:10, 15:13, 17:22, 18:3, 18:13, 18:14
**DACA's** [2] - 6:8, 12:10
**deal** [2] - 11:8, 12:9
**decent** [1] - 17:25
**decide** [3] - 5:22, 7:22, 19:9
**decided** [1] - 12:24
**deciding** [2] - 6:20, 10:21
**decision** [3] - 17:21, 18:14, 20:8
**decisionmaker** [1] - 18:6
**defendant** [2] - 3:12, 14:21
**defendant's** [1] - 15:20
**definitely** [1] - 16:17
**delay** [2] - 22:6, 22:7
**denied** [1] - 8:22
**deny** [2] - 4:15, 4:16
**depositions** [2] - 20:3, 20:12
**developed** [4] - 11:8, 12:7, 14:18, 14:23
**development** [2] - 11:6, 12:8
**DHS** [1] - 6:11
**differ** [1] - 7:12
**difference** [2] - 7:7, 15:1
**differences** [1] - 15:7
**different** [2] - 16:22, 21:6
**diminishes** [1] - 10:10

**directly** [1] - 6:18
**disagree** [1] - 18:8
**discovery** [16] - 9:19, 11:6, 11:17, 12:13, 12:23, 13:3, 13:5, 13:23, 14:2, 14:25, 17:6, 19:24, 21:16, 21:18, 22:16
**discretion** [2] - 7:9, 19:13
**discussion** [1] - 22:23
**Disher** [5] - 3:4, 3:6, 8:7, 8:25, 14:3
**DISHER** [9] - 3:6, 4:2, 9:3, 9:12, 14:8, 15:6, 16:7, 19:15, 22:19
**dispositive** [2] - 14:9, 14:16
**dispute** [1] - 10:2
**distinction** [1] - 7:4
**Docket** [1] - 11:3
**documents** [4] - 3:25, 4:4, 4:6, 11:10
**dodge** [1] - 8:17
**DOJ** [2] - 16:15, 19:25
**done** [7] - 7:25, 8:4, 9:17, 15:22, 19:24, 20:7, 20:17
**down** [3] - 9:1, 9:23, 10:4
**downside** [4] - 18:9, 18:16, 19:21, 19:22
**downsides** [1] - 18:2
**dressing** [1] - 21:3
**driven** [1] - 14:22
**during** [1] - 17:11
**early** [1] - 14:11
**easier** [1] - 5:8
**easy** [1] - 3:24
**effect** [4] - 15:5, 15:8, 16:10, 16:22
**eight** [2] - 8:10, 9:15
**elements** [1] - 16:2
**emphasize** [1] - 17:20
**enacted** [2] - 21:2, 21:8
**end** [3] - 6:19, 12:3, 12:6
**entire** [1] - 14:16
**entirely** [1] - 8:19
**entitled** [1] - 23:5
**Entry** [1] - 11:3
**essence** [1] - 15:7
**essentially** [3] - 4:3, 5:21, 17:3
**et** [2] - 3:2, 3:3
**eventually** [1] - 22:12
**evidence** [5] - 11:8, 11:25, 12:6, 12:10, 14:22
**example** [1] - 15:10
**exist** [1] - 16:16
**existence** [3] - 10:19, 16:13, 19:2
**exists** [1] - 10:8
**expended** [1] - 20:13
**expending** [1] - 20:12
**expert** [1] - 11:9
**extend** [1] - 14:11
**extension** [1] - 12:15
**extent** [3] - 11:1, 14:18, 18:12
**fact** [6] - 6:5, 7:1, 10:8, 13:7, 14:16, 15:10
**factor** [1] - 19:24
**fairly** [1] - 6:2
**fear** [3] - 15:13, 15:15, 18:18
**February** [2] - 14:14, 14:24
**federal** [4] - 10:13, 12:14, 12:18, 21:4

**few** [1] - 9:4
**Fifth** [2] - 6:24, 8:19
**file** [5] - 4:16, 8:1, 20:22, 20:24, 21:23
**filed** [9] - 6:16, 11:2, 12:22, 14:12, 14:13, 14:23, 17:2, 17:13, 19:16
**final** [1] - 16:22
**fine** [2] - 3:22, 5:10
**first** [3] - 5:18, 9:2, 16:8
**five** [3] - 6:4, 8:14, 16:3
**flips** [1] - 19:20
**focus** [5] - 19:16, 21:7, 21:14, 21:19, 21:24
**follow** [1] - 8:20
**foregoing** [1] - 23:3
**forward** [1] - 20:9
**four** [2] - 8:14, 15:4
**frankly** [1] - 4:22
**front** [2] - 10:22, 14:17
**fruition** [1] - 15:15
**fully** [5] - 9:19, 9:21, 14:16, 14:17
**future** [4] - 10:5, 10:15, 18:4, 18:18
**gain** [1] - 9:23
**given** [3] - 7:23, 8:20, 19:1
**Glenn** [1] - 3:18
**government** [15] - 5:20, 6:1, 6:4, 7:16, 12:14, 12:18, 12:22, 13:14, 13:25, 14:1, 15:13, 17:22, 21:4, 21:15
**government's** [4] - 7:2, 10:3, 10:13, 14:5
**grant** [3] - 5:24, 8:9, 22:12
**granted** [4] - 9:11, 9:14, 11:20, 16:2
**granting** [1] - 12:14
**great** [4] - 3:17, 4:20, 11:8, 12:9
**guess** [7] - 4:25, 7:17, 8:1, 8:4, 8:6, 15:19, 19:15
**guidance** [1] - 6:25
**guys** [1] - 22:5
**half** [2] - 9:18, 20:11
**hand** [1] - 4:20
**happy** [1] - 4:14
**hard** [1] - 18:25
**head** [1] - 19:20
**hear** [1] - 5:8
**hearing** [5] - 5:9, 15:22, 20:21, 22:3, 22:4
**heart** [1] - 9:8
**hearts** [1] - 18:4
**held** [2] - 8:15, 22:23
**help** [5] - 5:4, 7:21, 9:25, 10:21, 20:8
**helps** [3] - 5:3, 8:11, 9:17
**hold** [1] - 18:19
**holding** [1] - 17:23
**Honor** [21] - 3:6, 3:9, 3:10, 3:13, 3:18, 4:2, 4:11, 5:5, 5:11, 9:3, 10:25, 12:17, 14:8, 14:21, 16:7, 16:24, 17:18, 18:11, 19:15, 22:10, 22:20
**Honor's** [1] - 9:13
**hotly** [1] - 10:2
**hu** [2] - 12:20, 19:11
**Hu** [3] - 3:20, 13:1, 13:13
**HU** [4] - 3:22, 13:2, 13:17, 19:12
**huge** [1] - 19:8

**hurt** [1] - 19:10
**hypothetically** [3] - 11:24, 12:1, 15:10
**illegal** [1] - 8:16
**imagine** [1] - 16:10
**imminent** [1] - 9:20
**implemented** [3] - 11:13, 12:11, 13:15
**including** [1] - 11:9, 17:10
**incredibly** [1] - 11:22
**incumbent** [1] - 22:13
**indeed** [2] - 4:5, 10:20
**indefinitely** [1] - 20:7
**indicated** [1] - 13:4
**individuals** [1] - 18:18
**inform** [1] - 8:2
**information** [2] - 14:19, 20:1
**initial** [2] - 5:23, 5:24
**injunction** [6] - 6:23, 8:22, 15:22, 16:1, 16:23, 17:3
**injunctions** [1] - 19:2
**injunctive** [1] - 16:20
**interacts** [1] - 11:2
**interrogatories** [1] - 11:10
**intervenor** [1] - 19:18
**intervenors** [2] - 3:12, 14:21
**issue** [16] - 6:3, 6:12, 6:17, 6:20, 7:8, 7:22, 8:17, 10:1, 11:13, 11:14, 13:10, 18:1, 18:3, 18:16, 18:20, 21:13
**issued** [1] - 6:23
**issues** [17] - 5:13, 5:14, 5:17, 6:14, 6:25, 7:6, 7:13, 10:21, 11:11, 11:12, 14:9, 14:10, 14:15, 20:14
**Jersey** [4] - 3:17, 11:2, 19:17, 20:15
**Jersey's** [1] - 4:20
**job** [1] - 4:24
**Johnny** [2] - 23:3, 23:7
**join** [1] - 13:1
**joined** [3] - 6:3, 6:13, 11:16
**Judge** [1] - 15:21
**judge** [1] - 17:16
**judgment** [8] - 9:21, 10:12, 11:8, 13:4, 14:13, 16:9, 16:22, 17:2
**judicially** [1] - 5:19
**justification** [3] - 10:14, 15:11, 15:17
**kicking** [1] - 9:22
**kind** [1] - 22:1
**know..** [1] - 16:6
**knows** [1] - 18:11
**lack** [1] - 7:21
**large** [1] - 18:12
**last** [5] - 4:2, 4:5, 12:13, 12:16, 21:15
**law** [2] - 14:7, 15:23
**lawful** [4] - 6:2, 6:5, 6:9, 6:16
**lawfully** [1] - 21:8
**lawfulness** [2] - 7:4, 7:5
**lawsuit** [1] - 19:17
**lay** [1] - 11:9
**least** [3] - 13:21, 16:4, 19:6
**leave** [2] - 11:4, 19:13
**left** [1] - 5:22
**legal** [5] - 14:8, 14:10, 14:15, 16:14, 20:14
**legality** [3] - 8:18, 9:7, 10:6

**lend** [1] - 15:11
**lessens** [1] - 16:18
**letter** [1] - 8:2
**likelihood** [1] - 15:24
**lion's** [1] - 19:23
**litigation** [6] - 9:18, 10:5, 10:15, 10:16, 10:17, 18:13
**live** [1] - 18:18
**look** [4] - 5:15, 19:20, 22:6
**looking** [3] - 6:6, 6:24, 22:16
**lost** [1] - 16:4
**loud** [1] - 15:2
**love** [1] - 8:23
**magic** [1] - 4:22
**Maramarco** [1] - 3:19
**material** [1] - 12:16
**matter** [4] - 12:23, 14:6, 15:23, 23:5
**mean** [20] - 4:11, 4:21, 6:22, 7:19, 7:22, 8:17, 11:19, 11:21, 11:24, 13:3, 13:7, 13:9, 14:7, 15:23, 16:5, 17:12, 21:4, 21:12
**meaningful** [1] - 7:4
**means** [1] - 15:16
**memo** [3] - 9:8, 10:6, 15:12
**mention** [1] - 12:12
**merits** [5] - 7:20, 11:15, 13:9, 15:24, 16:22
**met** [1] - 11:20
**might** [4] - 5:21, 13:4, 18:21, 22:11
**mind** [1] - 16:4
**minds** [1] - 7:11
**minute** [3] - 4:21, 5:4, 21:16
**money** [2] - 4:25, 20:12
**months** [6] - 7:17, 8:10, 9:15, 11:6, 14:25, 17:6
**moot** [4] - 4:9, 4:16, 4:17, 13:24
**MORAMARCO** [9] - 3:18, 5:5, 5:11, 6:8, 6:11, 7:24, 17:18, 22:9, 22:20
**Moramarco** [1] - 5:1
**motion** [21] - 3:24, 4:9, 4:14, 4:21, 5:1, 8:9, 9:20, 10:11, 11:1, 11:3, 11:4, 11:7, 14:13, 17:2, 17:13, 20:20, 20:23, 22:5, 22:12, 22:13
**motions** [1] - 9:19
**move** [1] - 20:8
**MR** [24] - 3:6, 3:9, 3:10, 3:18, 3:22, 4:2, 5:5, 5:11, 6:8, 6:11, 7:24, 9:3, 9:12, 13:2, 13:17, 14:8, 15:6, 16:7, 17:18, 19:12, 19:15, 22:9, 22:19, 22:20
**MS** [8] - 3:13, 4:11, 4:18, 10:25, 11:12, 12:5, 14:20, 16:24
**necessary** [1] - 14:2
**need** [3] - 13:5, 19:20, 22:9
**needs** [1] - 14:18
**never** [1] - 9:7
**New** [5] - 3:17, 4:20, 11:2, 19:17, 20:15
**next** [1] - 20:1
**Nina** [1] - 3:14
**nine** [1] - 9:15
**Ninth** [2] - 17:19, 17:20
**noted** [1] - 7:10
**nothing** [4] - 4:7, 4:13, 8:10, 22:20

**November** [1] - 17:11
**number** [5] - 8:22, 21:10, 21:11, 21:20, 21:21
**obvious** [1] - 8:9
**obviously** [5] - 7:19, 8:4, 8:23, 13:8, 18:25
**occurred** [1] - 9:19
**October** [3] - 12:15, 20:21, 20:22
**off-the-record** [1] - 22:23
**Olson** [1] - 6:15
**once** [1] - 9:7
**one** [19] - 3:24, 5:18, 6:13, 6:14, 6:17, 7:5, 8:4, 10:4, 10:12, 10:14, 12:21, 12:23, 15:6, 16:2, 18:8, 18:24, 19:25, 21:10, 21:20
**ones** [1] - 8:13
**opening** [1] - 6:4
**opinion** [7] - 7:7, 8:19, 8:20, 9:11, 9:16, 18:22, 19:10
**opposed** [2] - 8:8, 16:16
**oral** [1] - 22:9
**order** [4] - 8:18, 12:9, 12:14, 22:12
**original** [1] - 7:5
**ought** [1] - 4:25
**overlap** [1] - 5:13
**Page** [1] - 7:2
**pages** [4] - 6:4, 6:16, 20:2, 20:3
**part** [4] - 8:18, 11:17, 15:12, 18:8
**partial** [1] - 17:1
**parties** [3] - 6:13, 10:2, 16:11
**pending** [3] - 10:11, 11:1, 17:10
**Perales** [4] - 3:11, 3:14, 10:23, 20:23
**PERALES** [7] - 3:13, 4:11, 4:18, 10:25, 11:12, 12:5, 14:20
**Perales'** [2] - 22:5, 22:13
**percolating** [1] - 7:14
**perhaps** [4] - 10:10, 10:18, 15:8, 18:19
**Peroyea** [1] - 3:8
**PEROYEA** [1] - 3:10
**persuasive** [1] - 20:18
**piece** [1] - 19:25
**place** [1] - 21:4
**plaintiff** [1] - 19:17
**plaintiff's** [1] - 11:7
**plaintiffs** [2] - 4:13, 17:2
**pleadings** [1] - 12:22
**point** [7] - 9:13, 9:17, 9:24, 16:8, 16:12, 16:19, 20:10
**points** [2] - 9:4, 20:16
**policy** [1] - 7:5
**population** [1] - 18:3
**position** [12] - 4:12, 5:12, 10:3, 14:1, 14:3, 14:4, 14:5, 14:6, 14:21, 16:24, 19:6, 19:12, 21:5, 21:16
**possibility** [1] - 9:14
**postponing** [1] - 20:8
**potential** [2] - 6:24, 7:16
**potentially** [1] - 18:16
**practical** [2] - 16:21, 19:5
**precipitously** [1] - 18:19
**predict** [1] - 4:23

**preliminary** [5] - 6:23, 15:22, 16:20, 16:23, 17:3
**presumably** [1] - 5:21
**problematic** [1] - 7:9
**procedure** [1] - 13:9
**proceed** [1] - 17:8
**proceedings** [1] - 23:4
**process** [1] - 13:18
**produce** [5] - 4:4, 4:6, 4:8, 4:13, 19:25
**produced** [1] - 3:25
**production** [2] - 11:10, 20:4
**program** [1] - 7:10
**progressing** [1] - 16:13
**proves** [2] - 10:8, 15:16
**provide** [1] - 17:6
**pulling** [1] - 10:4
**purely** [1] - 14:10
**pursue** [1] - 16:11
**pursuing** [1] - 19:19
**puts** [1] - 18:4
**putting** [1] - 11:15
**qualified** [1] - 13:1
**questions** [4] - 6:24, 8:5, 9:4, 21:20
**quit** [1] - 4:24
**quite** [1] - 4:22
**quo** [1] - 19:10
**quote** [1] - 11:25
**raised** [4] - 5:17, 13:12, 13:13, 21:13
**Ramon** [1] - 3:14
**rather** [1] - 14:9
**rationale** [2] - 10:14, 10:18
**rationales** [1] - 10:2
**re** [1] - 14:12
**re-teed** [1] - 14:12
**reach** [4] - 6:18, 7:15, 18:1
**react** [1] - 8:1
**ready** [1] - 20:14
**real** [3] - 4:19, 4:25, 19:5
**Really** [1] - 6:7
**really** [15] - 5:18, 9:16, 12:21, 13:20, 15:3, 18:9, 19:1, 19:10, 19:12, 20:4, 20:9, 21:3, 21:6, 21:14
**reason** [3] - 5:25, 15:12, 21:6
**reasonable** [2] - 7:7, 7:11
**reasons** [3] - 8:23, 10:4, 10:14
**receive** [1] - 4:12
**recently** [1] - 11:2
**recipient** [1] - 11:21
**recipients** [1] - 12:18
**recision** [6] - 5:19, 5:22, 5:23, 6:9, 8:14, 9:6, 10:3, 11:19, 15:9, 15:12
**recognize** [1] - 16:21
**record** [19] - 11:6, 12:8, 12:24, 12:25, 13:8, 13:14, 13:15, 14:6, 17:1, 17:3, 17:7, 21:2, 21:9, 21:21, 21:22, 22:15, 22:22, 22:23, 23:4
**records** [2] - 12:17, 22:2
**reduces** [1] - 10:18
**Regions** [1] - 7:10
**relevant** [1] - 5:24
**relief** [1] - 19:5
**remedies** [1] - 16:12

**remedy** [2] - 18:23, 19:1
**remember** [2] - 8:13, 13:21
**report** [1] - 4:6
**reporter** [3] - 5:8, 5:9
**REPORTER'S** [1] - 23:1
**representing** [2] - 3:17, 12:2
**requests** [1] - 4:8
**rescinded** [1] - 10:15
**rescinding** [1] - 15:13
**reset** [2] - 22:3, 22:4
**resolve** [2] - 8:11, 22:17
**resolved** [1] - 3:25
**resolving** [1] - 18:16
**respect** [1] - 11:15
**response** [1] - 9:4
**responsive** [2] - 4:4, 4:8
**result** [1] - 18:12
**revealing** [1] - 17:24
**review** [2] - 12:17, 13:18
**reviewable** [1] - 5:19
**risk** [1] - 18:16
**RMR** [1] - 23:7
**road** [1] - 9:23
**rule** [16] - 5:3, 5:20, 7:19, 8:11, 10:11,
15:7, 15:23, 16:9, 16:25, 17:14, 20:14,
20:20, 21:25, 22:7, 22:13
**ruled** [5] - 8:14, 11:19, 15:9, 15:14,
16:20
**rules** [1] - 9:6
**ruling** [10] - 6:23, 7:20, 10:20, 15:4,
15:5, 16:4, 16:10, 16:23, 18:3, 20:23
**rulings** [1] - 11:21
**sake** [2] - 17:9
**sample** [1] - 12:19
**Sanchez** [2] - 23:3, 23:7
**scenario** [1] - 9:5
**scheduling** [1] - 12:8
**SE** [1] - 16:24
**search** [1] - 4:7
**seated** [1] - 3:1
**second** [2] - 6:1, 16:19
**see** [2] - 18:1, 20:9
**selfish** [1] - 5:3
**sending** [1] - 18:17
**set** [1] - 12:9
**setting** [2] - 9:20, 20:4
**seven** [3] - 11:5, 14:24, 17:6
**share** [1] - 19:23
**shift** [1] - 19:16
**short** [3] - 7:20, 12:3, 12:6
**show** [1] - 11:23
**side** [1] - 3:21
**signal** [1] - 16:6
**significant** [1] - 18:19
**sister** [1] - 19:7
**sit** [2] - 9:1, 9:2
**sitting** [1] - 13:7
**sometime** [1] - 14:24
**soon** [1] - 17:5
**soon-to-conclude** [1] - 17:5
**sorry** [1] - 6:8
**sort** [3] - 8:1, 8:2, 18:2

**Soto** [1] - 3:15
**spent** [2] - 6:4, 6:16
**stage** [2] - 13:4, 19:1
**standing** [5] - 11:13, 11:16, 11:20,
11:21, 11:24
**start** [2] - 3:23, 5:1
**state** [4] - 10:2, 12:1, 13:25, 22:19
**State** [7] - 3:2, 3:4, 3:7, 3:17, 4:20,
11:23, 19:7
**state's** [1] - 21:5
**states** [1] - 19:7
**States** [2] - 5:16, 14:4
**status** [1] - 19:9
**stay** [8] - 4:21, 9:1, 9:14, 11:3, 17:13,
19:14, 20:20, 22:12
**stayed** [4] - 10:9, 10:17, 16:10, 16:17
**staying** [3] - 15:4, 15:5, 20:10
**steal** [1] - 15:20
**stick** [2] - 12:3, 12:7
**still** [6] - 9:15, 12:12, 16:11, 16:12,
16:13, 16:16
**stopped** [1] - 10:17
**strategic** [1] - 18:14
**strenuously** [2] - 6:2, 18:8
**strongly** [1] - 11:16
**stuck** [2] - 14:5, 21:9
**stuff** [3] - 20:25, 21:3, 22:1
**submit** [1] - 11:4
**submitted** [1] - 17:11
**subsequent** [1] - 21:3
**substantial** [1] - 5:12
**success** [1] - 15:24
**sufficient** [1] - 7:9
**summary** [7] - 9:21, 10:11, 11:7, 13:3,
14:13, 16:9, 17:2
**supplemental** [1] - 11:5
**Supreme** [22] - 4:23, 5:2, 5:13, 5:16,
7:1, 7:3, 7:14, 7:25, 8:3, 8:24, 9:6, 9:16,
10:1, 10:21, 17:10, 17:24, 18:5, 18:15,
19:3, 19:8, 22:7
**supremes** [3] - 7:22, 16:6, 17:14
**table** [1] - 3:20
**technically** [1] - 8:16
**Ted** [1] - 6:15
**tee** [3] - 7:21, 9:25, 20:13
**teed** [3] - 9:21, 14:10, 14:12
**term** [1] - 7:21
**testimony** [1] - 11:9
**Texas** [7] - 3:2, 5:25, 15:24, 18:8,
18:12, 19:7, 19:10
**THE** [27] - 3:1, 3:11, 3:16, 3:20, 3:23,
4:9, 4:15, 4:19, 5:7, 6:7, 6:10, 7:18, 8:6,
9:10, 10:23, 11:11, 11:18, 12:20, 13:6,
13:19, 15:1, 15:19, 17:12, 19:11, 20:15,
22:11, 22:21
**thinking** [1] - 15:2
**thousands** [1] - 20:3
**threat** [2] - 10:15, 16:15
**three** [1] - 16:3
**thunder** [1] - 15:20
**today** [1] - 22:18
**Todd** [1] - 3:6

**touching** [1] - 12:10
**towards** [1] - 10:13
**transcript** [1] - 23:4
**traveling** [1] - 20:11
**Trent** [1] - 3:7
**true** [2] - 8:16, 12:4
**Tuesday** [2] - 4:2, 4:5
**two** [5] - 5:17, 16:2, 21:11, 21:20,
21:21
**typically** [1] - 13:17
**U.S.A** [1] - 3:3
**ultimately** [3] - 18:5, 19:9, 20:13
**unappealing** [1] - 17:15
**under** [5] - 5:19, 5:24, 12:8, 12:14,
15:12
**underlying** [1] - 9:8
**undeveloped** [1] - 17:1
**United** [2] - 5:16, 14:4
**unlawful** [4] - 6:12, 15:10, 15:14,
17:22
**up** [9] - 5:7, 6:19, 7:21, 9:21, 9:25,
14:10, 14:12, 14:16, 20:13
**upside** [2] - 19:8, 19:19
**urge** [1] - 17:8
**valid** [2] - 5:23, 7:10
**Vegas** [1] - 4:24
**versus** [1] - 3:2
**Vidal** [1] - 7:10
**Wait** [1] - 21:16
**wait** [1] - 8:10
**waiting** [2] - 12:13, 18:9
**waste** [2] - 13:24, 22:15
**ways** [1] - 6:19
**week** [2] - 4:3, 20:1
**weigh** [6] - 8:7, 8:25, 10:24, 17:17,
17:19, 18:20
**weighing** [1] - 19:8
**win** [2] - 14:6, 15:25
**window** [1] - 21:3
**wins** [1] - 7:16
**withdraw** [1] - 4:14
**witness** [1] - 11:9
**won** [1] - 16:3
**works** [1] - 13:18
**worried** [1] - 10:5
**worry** [4] - 8:7, 8:9, 8:10, 8:12
**worth** [1] - 9:18
**y'all** [4] - 20:22, 21:7, 21:19, 22:21
**year** [4] - 6:22, 9:18, 14:14, 20:10
**years** [1] - 18:13