Case 1:18-cv-00068 Document 447 Filed on 11/22/19 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
November 22, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| State of Texas, *et al.*, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| The United States of America, *et al.*, | § | |
|     *Defendants*, | § | Civil Action No. 1:18-CV-00068 |
| | § | |
| Karla Perez, *et al.*, | § | |
|     *Defendant-Intervenors*, | § | |
| | § | |
| and | § | |
| | § | |
| State of New Jersey, | § | |
|     *Defendant-Intervenor*. | § | |

## ORDER

Before the Court is the Motion to Stay filed by the State of New Jersey and supported by the Defendant-Intervenors. (Doc. No. 427). Texas and the other Plaintiff-States have opposed the motions. (Doc. No. 428). New Jersey has filed a Reply in Further Support of Its Motion to Stay. (Doc. No. 430).

### I.

The proponents of the motion to stay have argued that this Court should wait to rule on the merits of the pending summary judgment motions until the Supreme Court issues its opinion in the cases involving the current attempt to rescind the Deferred Action for Childhood Arrivals ("DACA") program. *See Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018), *cert. granted*, 139 S. Ct. 2779 (2019) (No. 18-587); *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018), *cert. granted*, 139 S. Ct. 2779 (2019) (No. 18-588); & *Vidal v. Nielsen*, 279 F. Supp. 401 (E.D.N.Y. 2018), *cert. granted sub. nom.*, *McAleenan v. Vidal*, 139 S. Ct. 2773 (2019) (No. 18-589). Oral argument in those cases occurred on November 12, 2019.

1

Texas and its sister states have opposed this motion arguing that these cases do not necessarily concern the legality of the DACA program, but instead are focused on the legality of its rescission. The Plaintiffs argue that granting the motion to stay will increase their damages and will needlessly postpone a final resolution. Defendant-Intervenors dispute the damage claims but concede that an order staying the case would by definition delay the resolution.

Texas' argument here is bolstered by the fact that the Supreme Court denied its request to participate in oral argument in the cases cited above—a signal perceived by some to indicate that the Supreme Court would not reach any of the overriding issues in this case.

## II.

This Court believes that most legal maxims have some degree of truth which is the reason that certain writings or sayings become ingrained in our culture. "Justice delayed is justice denied" is one of those maxims. Most, if not all, federal courts are concerned about the delays that sometimes occur in legal proceedings—some are due to the parties or their counsel while others are due to circumstances beyond the parties' control. Nevertheless, a concern for prompt action never overrides the primary goal of correctly deciding a case.

## III.

Alacrity is required in some cases due to either the legal issues or the status of parties; however, the Court does not see an overwhelming need for it here. While this Court has never seen the benefit of outside observers trying to predict the result and content of any Supreme Court opinion based upon perceptions formed at oral argument, this Court notes that at least some of the questions voiced by the Justices during the oral argument in the DACA cases cited above touched on issues that all parties herein must concede may be important to the resolution of this case. These include the issues of reviewability of executive action and the legality of DACA. The following are samples of questions posed to counsel by the Justices—the answers to which (if the Supreme

Court actually chooses to address them) might control or at least shed light on the ultimate questions at issue herein.

> Justice Ginsburg: General Francisco, there's a strange element to your argument because you're arguing this is a discretionary matter; **it's not reviewable because it's committed to agency discretion.**
>
> But, on the other hand, you say **the agency had no discretion because this program was illegal. In other words, the law requires you to drop DACA.** So how can it be committed to your discretion when you're saying we have no discretion; this is an illegal program?

(Sup. Ct. Trans. p. 6).

\* \* \*

Chief Justice Roberts: What if the Attorney General said he, in his exercise of prosecutorial discretion, was not going to enforce any of the immigration laws?

General Francisco: Uh --

Chief Justice Roberts: **Would that still be non-reviewable?**

*Id.* at 8.

\* \* \*

Justice Kagan: Just to -- just to understand what you're saying, General, **you -- that would suggest that the original DACA is reviewable, but the rescission of DACA is not.** In other words, are you suggesting that there's an asymmetry in what's reviewable?

*Id.* at 9.

\* \* \*

Justice Breyer: And there have been two bases. The first base is a big argument between Ken Davis and Burger, you know, and is -- **is it that you can't review an agency**, does that little thing about you cannot -- commit it to agency discussion [sic] by law, does it mean that there's certain -- just mean that there are certain things an agency might do. **Don't review them even if they're totally wrong, like Panama Canal tolls.**

*Id.* at 13.

\* \* \*

Justice Breyer: And if that history, an understandable power to give to a prosecutor, is to be valid, courts, stay out of it. **Now that does not apply where what's at issue is not a prosecutor making an individualized decision but, rather, an agency's policies --**

General Francisco: Right.

Justice Breyer: -- **generalized, written down, and I can't think of a reason why in such a case you wouldn't review it in a court.**

*Id.* at 14.

* * *

Justice Kavanaugh: Wouldn't what -- **wouldn't what you just read also have made DACA itself unreviewable, to pick up on Justice Kagan's question from earlier?**

*Id.* at 16.

* * *

Justice Kagan: If -- if I understand Secretary Nielsen's memo correctly, Secretary Nielsen said that she -- she did have a -- a conclusory statement about weighing the reliance interests, but she weighs them against what she calls -- **I think it's the questionable legality of the program.**

**Now that assumes one of the things that we're all here to discuss, which is that the program was of questionable legality.** If the program turns out not to be of questionable legality, in other words, if some or many of us think that the original program was legal, how does her memo suffice to do that balancing?

*Id.* at 26.

* * *

Justice Sotomayor: -- I'm -- **I have always had some difficulty in understanding the illegality of DACA. DAPA I put aside because, in DAPA –**

General Francisco: Right.

Justice Sotomayor: -- there was actually a process for attaining a pathway to residency. **And I saw the argument that what DAPA did was contrary, directly contrary, to that path.**

*Id.* at 28.

\* \* \*

Justice Kagan: You know, the INA does give quite a lot of discretion to administrative officers, as you yourself admit and have argued on previous occasions and, indeed, in part here.

General Francisco: Right.

Justice Kagan: So are you saying that -- **are you saying that DACA was -- violated any particular provision of the INA? What are you saying it violated?**

General Francisco: Sure.

Justice Kagan: Because --

General Francisco: So I'm saying --

Justice Kagan: -- because there's a big delegation, right, that says you get to make national policy. **So what did DACA violate?**

*Id.* at 35.

\* \* \*

Justice Alito: -- I'm not sure that really responds to my question, so I'll give you an example. Let's say that a -- that there is a policy that is certain -- a certain category of drug cases will not be prosecuted in federal court. Let's say they are cases involving less than five kilos of cocaine. **So case -- cocaine cases with lesser amounts of drugs will not be prosecuted in federal court as a matter of enforcement priority. And then that is changed. So the five kilos is reduced to three.**

**Would that be reviewable?**

Mr. Olson: No, I don't think it would be.

Justice Alito: **What is -- well, what's the difference?**

*Id.* at 46.

\* \* \*

Chief Justice Roberts: But, Mr. Olson, the whole thing was about work authorization and these other benefits. Both administrations have said they're not going to deport the people. **So the deferred prosecution or deferred deportation, that's not what the focus of the policy was. Yes, the other statutes provided that, but it was triggered by -- by the memo.**

5

*Id.* at 48-49.

\* \* \*

Justice Gorsuch: Mr. Olson, I -- I think you've moved on to the merits, and I -- I guess **I'm still struggling with Justice Alito's question on -- on reviewability. Can you help me understand what is the limiting principle?**

    I -- I -- I hear a lot of facts, sympathetic facts, you put out there, and – and they speak to all of us. But what's the limiting principle between, you say, reviewability here for an enforcement, a classic kind of prosecutorial discretion that one might have thought would have fallen under Heckler versus Chaney, and the example Justice Alito gave or Heckler versus Chaney itself? What's --

Mr. Olson: Heckler --

Justice Gorsuch: -- What's the -- what's the limiting legal principle --

Mr. Olson: Well, there's a --

Justice Gorsuch: -- you'd have this Court adopt?

Mr. Olson: -- it's a composite -- in this case, it's a composite of principles, a determination that -- a categorical determination involving a substantial number of people --

*Id.* at 51-52.

\* \* \*

Justice Breyer: And imagine an SEC rule or imagine an HHS rule and what it says is we are not going to take action to give a certain category of people their benefits. **Not reviewable?** I mean, nobody would think that.

Mr. Mongan: Well --

Justice Breyer: So -- so -- so we're struggling still.

Mr. Mongan: Yes.

Justice Breyer: And I'm saying honestly I am struggling to get the right rule.

*Id.* at 73-74.[1]

---

[1] The Court has selected some of the relevant questions from all Justices (save for Justice Thomas who traditionally refrains from questioning) and put them in the order in which they were voiced. All emphasis is added.

6

## IV.

In addition to the legality of DACA and reviewability issues touched upon by the questions quoted above, the oral argument also featured questions on the topic of reliance. The facts which fall under the umbrella of reliance are quite relevant to the public and private interest factors which this Court must address if it reaches the question of whether to issue an injunction—the very relief requested by the Plaintiffs.

## V.

This Court is aware that the Supreme Court may not address the legality of the implementation of DACA or the reviewability of the decision to implement it. Obviously, this Court would welcome such guidance. Nevertheless, given the breadth of participation and the fact that these issues were frequently raised in oral argument in one form or another by almost all of the Justices and given that the adverse consequences of waiting are far outweighed by the consequences that Defendant-Intervenors might face should this Court be called upon to enjoin the operation of the program, justice is best served by granting the motion to stay.

Moreover, at the latest, the Supreme Court will decide the above referenced cases by the last day of its session—June 29, 2020. Setting aside the importance of the case and the level of legal complexity, the average wait is usually much shorter. Recent unofficial statistics indicate that the Supreme Court generally rules on cases within an average of 90 to 110 days of argument. *See* ADAM FELDMAN, FINAL STAT PACK FOR OCTOBER TERM 2018 at 27, SCOTUSBLOG, (June 28, 2019, 5:59 PM), https://www.scotusblog.com/wp-content/uploads/2019/07/StatPack_OT18-7_30_19.pdf. This Court realizes this stay may ultimately prove to be fruitless. Nevertheless, depending on which issues the Supreme Court chooses to address, it is possible that this matter could be resolved in a permanent fashion by its opinion, negating the need for an extended appellate process in this case.

The motion to stay is granted. The case is stayed until 30 days after the Supreme Court rules in the above-referenced cases. At that time, the parties are to file a joint status report setting out their respective positions given that ruling and an agreed proposed schedule to resolve this matter.

Signed this 21st day of November, 2019.

_____
Andrew S. Hanen
United States District Judge