United States District Court
Southern District of Texas
**ENTERED**
August 24, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is a motion for summary judgment filed by the Plaintiff States on February 4, 2019. (Doc. No. 356). This Court deferred ruling on that motion multiple times at the behest of Defendant-Intervenors Individuals for a number of reasons, including to allow for a period of discovery. *See* (Doc. No. 367) (Order granting motion to postpone deadlines for 19 days); (Doc. No. 410) (Notice of Resetting moving motion hearing from July 8, 2019 to October 28, 2019); Minute Entry, Oct. 8, 2019 (postponing motion hearing set for October 28, 2019 until an undetermined date). These postponements allowed the parties time to do discovery despite the fact that both the Plaintiffs and Defendant maintained none was necessary for the resolution of the motions for summary judgment. Most recently, the Court deferred ruling on the motion for summary judgment by granting (over Plaintiffs' objection) a motion to stay filed by Defendant-Intervenor State of New Jersey that stayed this case pending the Supreme Court's resolution of the consolidated cases considering the government's attempt to rescind the Deferred Action for Childhood Arrivals ("DACA") program. *See* (Doc. No. 447). On June 18, 2020, the Supreme Court issued its opinion in that case. *See Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. ___ (2020) (slip op.). After that ruling, this Court issued an order requiring the parties to submit a joint status report setting out their proposed timelines for resolving all pending motions

1

and issues. (Doc. No. 461). The parties have complied. (Doc. No. 463).

## I.

The parties disagree as to the best route forward in this case. The Plaintiff States contend that the Supreme Court's decision in *Regents* does not change the landscape and, therefore, proposed a limited briefing schedule that allowed the parties to file supplement briefs on Plaintiff States' pending motion for summary judgment, as well as responses to these supplements. They want this Court to proceed as their motion has been pending for over eighteen months. The Federal Defendants expressed no separate statement in the status report on the impact of *Regents* but agreed with the Plaintiff States' proposed schedule.

The Defendant-Intervenors Individual DACA Recipients and New Jersey argued that *Regents* has far reaching effects on this case. First, the Defendant-Intervenors contended that *Regents* set in motion events that will lead to the passage of legislation mooting this case, and therefore, this Court should continue deferral on the merits of the Plaintiff States' motion to allow the political branches to resolve the controversy. Second, the Defendant-Intervenors argued that *Regents* requires a determination of the correct scope of the administrative record. Therefore, they contended that before the Court rules on the motion for summary judgment, it should permit a period of briefing by the parties to define the scope of the administrative record and that it should issue an order informing the parties as to what the administrative record in the case is. Third, the Defendant-Intervenors recounted that *Regents* cited amicus briefs noting the economic impacts of rescinding DACA and noted that they have not been able to fully analyze discovery on the issue of state standing that was produced by Arkansas and the Federal Defendants. They requested that an additional two-month discovery period be opened on the issue of state standing. Following this period of discovery, the Defendant-Intervenors suggested that summary judgment briefing be

permitted, but only on the issue of state standing. Fourth, Defendant-Intervenors argued that *Regents* changes the legal landscape surrounding the Plaintiff States' motion for summary judgment. Therefore, the Defendant-Intervenors proposed, assuming *arguendo* that the Court finds that the Plaintiff States have standing, that the Court then permit supplemental briefing on the actual merits of Plaintiff summary judgment. Fifth, the Defendant-Intervenors contended that *Regents* (as well as the COVID-19 environment) introduces a reliance consideration that the Court must consider in crafting a remedy. Therefore, in the event summary judgment on the merits is granted in favor of the Plaintiff States, the Defendant-Intervenors requested an additional two months of discovery on the issue of reliance, followed by another set of summary judgment briefing. In sum, for this case to hypothetically be resolved in the Plaintiff States' favor, Defendant-Intervenors suggested that there must be two additional periods of discovery and four supplemental briefing periods.

These suggestions clearly complicate this consideration of the pending motion needlessly and can only be designed to postpone consideration of a motion that has been delayed too long already. Nevertheless, each of Defendant-Intervenor's arguments deserves to be discussed, and the Court will do so below.

## II.

First, the Court is not convinced that it should wait for the political process to provide a solution. It and the parties have been waiting for congressional action for years. As the Court noted in its order denying the preliminary injunction on August 31, 2018, "[b]oth houses of Congress have, time after time, considered and rejected bills that would afford lawful immigration status to the same or a similar group of individuals contemplated by DACA." (Doc. No. 319 at

81).[1] Nothing has changed in this respect. As the parties know, this Court would have welcomed legislation which would have either rendered this case moot or at least provided guidance, but nothing of value has been forthcoming. Indeed, since the Court's preliminary injunction order, both houses of Congress have considered legislation granting lawful status to those currently protected by DACA, but to no avail.[2] The Court notes that neither of the dominant political parties has consistently voted in favor of legislative protections for DACA recipients. *Contrast* American Dream and Promise Act of 2019, H.R. 6, 116th Cong. (2019) (supported by entirety of voting Democratic House Members, but by only 7 of 194 voting Republican House Members) *with* Border Security and Immigration Reform Act of 2018, H.R. 6136, 115th Cong. (2018) (supported by over half of voting Republican House Members, but rejected by every voting Democratic House Member).[3] In light of this inaction, political rhetoric such as those statements referenced in the Defendant-Intervenors' position statement do not provide much solace.

Second, no one has provided any specific reason why discovery is needed to confirm what the administrative record is. Moreover, to the extent discovery is, in fact, needed to define the scope of the administrative record, no reason has been given as to why it has not already been done. The parties have always been aware that the Plaintiff States have argued against discovery since the beginning of this case when they agreed with the United States that the issues presented

---

[1] *See, e.g.,* DREAM Act of 2003, S. 1545, 108th Cong. (2003); DREAM Act of 2005, S. 2075, 109th Cong. (2005); DREAM Act of 2007, S. 2205, 110th Cong. (2007); DREAM Act of 2009 S. 729, 111th Cong. (2009); American Dream Act, H.R. 1751, 111th Cong. (2009); DREAM Act of 2011 S. 952, 112th Cong. (2011); Border Security, Economic Opportunity, and Immigration Modernization Act, S. 744, 113th Cong. (2013); BRIDGE Act, S. 3542, 114th Cong. (2016); BRIDGE Act, H.R. 496, 115th Cong. (2017).

[2] *See, e.g.,* A bill to provide provisional protected presence status for certain aliens and to provide mandatory appropriations relating to border security, S. 166, 116th Cong. (2019); American Dream and Promise Act of 2019, H.R. 6, 116th Cong. (2019); Dream Act of 2019, S. 874, 116th Cong. (2019); Dream Act of 2019, H.R. 2820, 116th Cong. (2019).

[3] The Court recognizes that in both instances some opposition was occasioned by other sticking points in the proposed legislation. The Court only emphasizes these to point out that apparently neither side has been willing to compromise or to pass a simple "clean" bill to provide the legislative solution that the Defendant-Intervenors hope is imminent.

4

before the Court were purely legal. *See* (Doc. No. 277) (Transcript of May 30, 2018 Scheduling Conference Hearing). Indeed, Plaintiff States' Motion for Summary Judgment does not rest on the contents of the administrative record; rather, it argues, among other things, that the DACA memorandum is inconsistent with federal immigration law and that DHS violated the Administrative Procedure Act (APA) by failing to undergo the required notice-and-comment procedure. The extent to which either of these claims rely on the administrative record is at best minimal. Moreover, the Defendant-Intervenors did not cite to the administrative record in their response to the motion for summary judgment. *See* (Doc. Nos. 397 & 399). Finally, even if the contents of the administrative record were essential to the resolution of the present motion, any dispute over the scope of the record can be considered and resolved by the Court concurrently in the course of its consideration of any pending motions.

Third, the Court believes the issue of state standing has been at the center-stage of this case since it was filed. This Court raised the issue itself from the onset. *See* (Doc. No. 277) (Transcript of May 30, 2018 Scheduling Conference Hearing). Indeed, facts in support of standing were alleged extensively in the Plaintiff States' Complaint, *see* (Doc. No. 1 at 52–59), and Defendant-Intervenors Individual DACA Recipients' Answer specifically attempted to refute them. *See* (Doc. No. 23 at 49–58). Therefore, all sides have had significant time to conduct discovery on the issue. Defendant-Intervenors argue that they received discovery on the issue of standing relating to the benefits conferred by DACA on states from Arkansas and the Federal Defendants days before the discovery period ended. This, combined with the Court's stay order, prevented them appropriately analyzing and making follow-up inquiries. Defendant-Intervenors are reminded that they are the ones who asked for the stay. The Plaintiff States opposed it. (Moreover, the schedule set out below gives the Defendant-Intervenors an opportunity to follow up). Additionally, this Court has

already considered and rejected the "offsetting-benefit theory to defeat standing" in its order on the preliminary injunction. *See* (Doc. No. 319 at 54) (citing *Texas v. United States*, 809 F.3d 134, 155–56 (5th Cir. 2015)). Therefore, the need to consider any benefits conferred on Arkansas by DACA may not be relevant. The Supreme Court's discussion in *Regents* of the benefits conferred by DACA did not, in any way, touch upon the effect it may have on standing. Finally, the discovery period ended in late September 2019, and supposedly, Defendant-Intervenors received this discovery during that time. The Court did not issue a stay until months after that date. Defendant-Intervenors have submitted no reason why they did not follow-up on these fact issues during those months or ask for leave of Court,[4] especially with Texas's motion for summary judgment more than ripe for consideration.

Fourth, the Plaintiff States moved for summary judgment on the entirety of their lawsuit. This motion has been pending for eighteen months—most of the delay incurred at the request of the Defendant-Intervenors. Plaintiffs contend that they are prepared to meet their burden of proof on all counts and elements. Defendant-Intervenors do not provide any specific reason why the Court should not consider the entirety of the motion at the same time. If Defendant-Intervenors are correct that Plaintiff States do not have standing, then the court clearly need not address the Plaintiff States' arguments as to the underlying merits. If Defendant-Intervenors are wrong though, the merits issues are clearly ripe, and deferral makes little or no sense.

Fifth, the Court does not find that either the reliance interests discussed in *Regents* or the COVID-19 pandemic mandate the opening of an additional discovery period or that a separate

---

[4] Defendant-Intervenors also contend that they may need to retain an expert to conduct additional analysis. The Court notes that the deadline for Defendant-Intervenors to designate an expert witness and furnish their expert report was July 18, 2019. *See* Minute Order, November 14, 2018 & (Doc. No. 367) (extending all deadlines 19 days). Nevertheless, to the extent they have needed an expert there has been nothing to prevent them from obtaining one before this point.

briefing schedule following a ruling on the merits is necessary for the remedial issues. On the latter point, Defendant-Intervenors argue that:

> This Court will thus benefit considerably from a record that includes robust information on reliance by DACA recipients and by the State of New Jersey, including regarding the latter's reliance interests in creating or maintaining state programs that involve DACA recipient participation. That need has only been heightened by the current COVID-19 pandemic, an additional consideration that could only be addressed through additional discovery that yields a supplemental record.

(Doc. No. 463 at 16). Of course, this is all information that is in possession of the Defendant-Intervenors. Surely, counsel for the Defendant-Intervenors can obtain affidavits from their own clients without formal discovery. Perhaps more to the point, Defendant-Intervenors Individual DACA Recipients already have made the argument that an injunction would be contrary to the reliance interests of the parties considering the DACA recipients have relied upon the DACA program for the last six (now eight) years in their response to the Plaintiff States' motion for summary judgment. *See* (Doc. No. 399 at 51). The Court, in fact, accepted and adopted that very argument. The Defendant-Intervenors are welcome to expand on that argument in future briefing, but they have not made the case that additional formal discovery is needed. Nevertheless, as set forth below, the Court is allowing some time for additional discovery.

### III.

That being said, a schedule is needed to guide this matter to a final conclusion. Moreover, contrary to some of the contentions made in the parties' Joint Status Report, the Court finds that the *Regents* decision may have an impact on the issues before the Court. All parties want to re-brief the issues, and the Court agrees and finds that a clean slate, as opposed to a patch work of briefing, is the best way to proceed. The Court has already issued an order requiring the federal government to file the certified administrative record by August 25, 2020. (Doc. No. 467). As a

means of encouraging the parties to focus their arguments on the issues presented in this case and on how these issues may have narrowed following the Supreme Court's ruling in *Regents*, the Court hereby denies the Plaintiff States' current motion for summary judgment without prejudice. (Doc. No. 356). Plaintiff States are hereby given leave to re-file the motion for summary judgment, incorporating any additional arguments drawn from the *Regents* decision that they deem fit, provided they do so by October 2, 2020. The Federal Defendants and the Defendant-Intervenors may respond provided they do so by October 30, 2020. The Plaintiff States may file a reply if they do so by November 6, 2020. If the Defendant or any of the Intervenors feel the need to respond to each other's briefs, they may do so by the same November 6th deadline. During this briefing period, the parties may conduct additional discovery until September 30, 2020.

Signed this 21st day of August, 2020.

Andrew S. Hanen
United States District Judge