**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Case No. 1:18-CV-68 |
| § | |
| UNITED STATES OF AMERICA, *et al.*, § | |
| § | |
| Defendants, § | |
| § | |
| and § | |
| § | |
| KARLA PEREZ, *et al.*, § | |
| § | |
| Defendant-Intervenors, § | |
| and § | |
| § | |
| STATE OF NEW JERSEY § | |
| § | |
| Defendant-Intervenor. § | |

**REPLY IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO COMPEL AND
EXTEND DISCOVERY PERIOD, OR IN THE ALTERNATIVE,
TO EXCLUDE EVIDENCE**

In response to the motion to compel, Plaintiffs do not dispute that their witnesses failed to

testify on Defendant-Intervenors' noticed topics in the Rule 30(b)(6) deposition.  Instead of

offering to provide witnesses who can testify, or withdrawing their unsupported testimony that

Arkansas spends state funds on DACA recipients, Plaintiffs double down and insist they should

not have to respond to discovery.  Because Plaintiffs do not get to choose the discovery to which

they will respond, Defendant-Intervenors are entitled *either* to the discovery they seek *or* an

order excluding Plaintiffs' unsupported testimony related to Arkansas expenditures on DACA

recipients.

I.      **Plaintiffs do not Dispute that Their Witnesses Failed to Testify on the Noticed Topics**

Plaintiffs do not dispute that their deposition witnesses failed to testify on Defendant-Intervenors' noticed topics. *See* Dkt. 493 ("Response"). Nor could they dispute this fact. In response to Defendant-Intervenors' Rule 30(b)(6) deposition notice and attached schedule (Dkt. 484-3), Plaintiffs provided two witnesses on October 5, 2020 who were unable to testify on Defendant-Intervenors' noticed topics: 1, 3, 4, 5, 6, 8 and 16. *See* Exhibits 1 and 2.

Because Plaintiffs' witnesses could not testify on topics listed in Defendant-Intervenors' Rule 30(b)(6) deposition notice, Defendant-Intervenors could not obtain the discovery they sought before the close of discovery two days later. *See* Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

Plaintiffs' supplemental declaration, produced to Defendant-Intervenors two days ago, does not respond to Defendant-Intervenors' discovery requests. It simply asserts that Arkansas "is unable to identify the specific dollar amount of state Medicaid expenditures on individuals who were DACA recipients at the time they received their specific health services *beyond what Arkansas has already provided in this case*." Dkt. 493-3 at 2 (emphasis added). Arkansas has provided *no* dollar amount of state spending on DACA recipients in this case and did not provide a witness who could testify on this topic. For that reason, the unsupported testimony must be excluded or Arkansas must provide a witness who can testify on this subject.

**II.     The Information Sought by Defendant-Intervenors is Relevant and Plaintiffs Neither Objected to the Discovery nor Moved for a Protective Order**

The discovery sought by Defendant-Intervenors relates to Arkansas's claim that it spends state funds to provide health care services to DACA recipients.[1]  This claim by Arkansas, unsupported by any specific testimony or documents, goes to Plaintiffs' standing – a critical issue in the case.

Plaintiffs neither objected to nor sought protection from Defendant-Intervenors' 30 (b)(6) deposition notice and schedule of topics.  In their Response, Plaintiffs make no argument that the information Defendant-Intervenors seek is irrelevant or otherwise inappropriate.  However, the party seeking to resist discovery has the burden to show that the information sought is not relevant or how each question is overly broad, burdensome or oppressive.  *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Instead, Plaintiffs offer a red herring.  They argue that Defendant-Intervenors' discovery requests are unnecessary because Plaintiffs chose not to offer evidence of Arkansas's standing in their motion for summary judgment.  But Plaintiffs' summary judgment motion does not define the scope of the issues in this case and does not define what is relevant information.   Simply because "Plaintiff States' motion for summary judgment does not include the evidence at the center of this dispute" does not mean that "there is nothing left for the Court to rule on." Response at 2.

Defendant-Intervenors are entitled to take discovery on all relevant issues.  Whether or not Plaintiffs chose to address those issues in their summary judgment motion is beside the point.

---

[1] In Plaintiffs' Second Amended Responses to Defendant-Intervenors' Second Set of Discovery Requests (which asked for specific information about Plaintiffs' claimed expenditures on DACA recipients), Plaintiffs disclosed a declaration from an Arkansas health official claiming that Arkansas expended state funds for emergency Medicaid benefits and pregnancy benefits DACA recipients.  This discovery dispute arises from Defendant-Intervenors' efforts to discover the facts supporting this claim.

Notwithstanding Plaintiffs' argument that the pending motion is a "waste [of] this Court's resources" (Response at 3), Defendant-Intervenors are entitled to discover information supporting Plaintiffs' claims that they spend state funds on social services for DACA recipients.

## III.    Defendant-Intervenors Followed This Court's Procedures

Finally, Plaintiffs cannot credibly claim that Defendant-Intervenors departed from this Court's procedures.  Resp. at 1-2.  Defendant-Intervenors followed this Court's procedures in moving to compel.  After having agreed to Plaintiffs' request for additional time to produce witnesses, only to have those witnesses testify that they could not provide the requested information, Defendant-Intervenors were left with no choice but to move to compel in order to preserve their ability to obtain discovery.  *See Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 661 (S.D. Tex. 2009) ("In determining whether a motion to compel has been timely filed, most courts look to the discovery deadline and not the motion-filing deadline." (Citing *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 397–98 (N.D.Tex.2006)).

Plaintiffs were at the October 5 depositions and are well aware that their witnesses could not testify to the noticed topics in Defendant-Intervenors' Schedule A.  *See* Ex. 1 and 2. Defendant-Intervenors subsequently offered several alternative resolutions of the discovery dispute but Plaintiffs agreed to none of the proposed resolutions.  Plaintiffs neither offered to provide responsive witnesses, nor agreed to exclude their previous unsupported statements of injury, nor agreed to provide a supplemental declaration clarifying that they could not identify any specific Arkansas expenditures on DACA recipients.

Plaintiffs' failure to cooperate in discovery, and recalcitrance in the effort to resolve the dispute, created the need for the Court's intervention.   Defendant-Intervenors acted properly under this Court's procedures and are entitled to relief.

Dated: October 30, 2020

Respectfully submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Email: nperales@maldef.org
Ramon A. Soto (Tex. Bar No. 24118927)
(SD of Tex. Bar No. 3440787)
Email: rsoto@maldef.org
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA, ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
 (SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Interveno

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on October 30, 2020, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nina Perales*
Nina Perales

# EXHIBIT 1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3   STATE OF TEXAS, et al.,      *
          Plaintiffs             *
 4   VS.                          *
                                  *
 5   UNITED STATES OF AMERICA,    *
     et al.,                      *   Case No. 1:18-CV-68
 6        Defendants,             *
                                  *
 7   and                          *
                                  *
 8   KARLA PEREZ, et al.,         *
          Defendant-Intervenors   *
 9

10   ********************************************************

11            ORAL AND VIDEOTAPED DEPOSITION OF
                        JANET MANN
12                   OCTOBER 5, 2020
                   (Reported Remotely)
13
     ********************************************************
14

15          ORAL AND VIDEOTAPED DEPOSITION of JANET MANN,
     produced as a witness at the instance of the Defendant-
16   Intervenors, and duly sworn, was taken remotely in the
     above-styled and numbered cause on the 5th day of
17   October, 2020, between the hours of 9:11 a.m. and
     11:25 a.m., before TRICIA FOX WILLIAMS, CSR, in and for
18   the State of Texas, reported by machine shorthand, at
     700 Main Street, Little Rock, Arkansas, in accordance
19   with the Federal Rules of Civil Procedure, the State of
     Texas 26th Emergency Order Regarding the COVID-19 State
20   of Disaster, and the provisions stated on the record or
     attached hereto.

21

22

23

24

25
```

 1  to hit enter or something?

 2              MR. DISHER:  No, no.  Yeah, we got them.

 3  So it is the -- yes, the 30(b)(6) notice and deposition

 4  subpoena.

 5              MS. PERALES:  Yes, okay, all right.

 6      Q.   (By Ms. Perales)  And I'm also going to share

 7  my screen so we can look at specific pages.  As I drop

 8  and drag them, you're going to see, like, some possibly

 9  funky document titles, because I was just naming them

10  whatever it was that I could remember to distinguish

11  between the documents.  So these are not too funky, but

12  they might get funky later.  Okay.  I'm now going to

13  share my screen so that we can look at this together.

14  Can y'all see this document now?

15              (Exhibit 1 marked for identification.)

16      A.   Yes, I can see it.

17      Q.   (By Ms. Perales)  Thank you.  So I'm going to

18  mark this as Exhibit 1.  Ms. Mann, do you recognize this

19  as the notice of deposition of the State of Arkansas

20  pursuant to Federal Rule Civil Procedure 30(b)(6)?

21      A.   Yes.

22      Q.   Is this a document that you've seen before?

23      A.   Yeah.  I'd like to scroll down and see the rest

24  of the document before I say yes.

25      Q.   Of course, of course.  So this might be

 1  familiar as well.

 2      A.   Yes, I've seen the document.

 3      Q.   Okay.  You understand that you're giving your

 4  deposition today pursuant to this notice?

 5      A.   Yes.

 6      Q.   And I'm scrolling right now in Schedule A,

 7  which was attached to the notice of deposition.  And

 8  have you seen the -- this document that was attached

 9  called Schedule A?

10      A.   Yes.

11      Q.   Okay.  Let me get down to topic nine.  Let's

12  see if we can make this yellow.  Well, maybe we can, or

13  maybe my Acrobat will stop working.  Okay.  I'm going to

14  put you back in the regular room so that I can restart

15  my Acrobat.  Okay?

16           MR. DISHER:  Take your time, no problem.

17      Q.   (By Ms. Perales)  It doesn't like the highlight

18  function.  So I've got it open again, and before I share

19  my screen, I'm going to see if I can highlight topic

20  nine for you.  Yeah, there we go, it was just a

21  momentary glitch.  Okay.  Okey-dokey.  I think we're

22  just going to keep this over here.  All right.  Can you

23  see where I've highlighted topic nine, Ms. Mann?

24      A.   Yes, I can see it.

25      Q.   Okay.  Now, is it correct to say that you're

1  going to testify on topic nine in Schedule A?

2      A.   Yes.

3      Q.   Okay.  And so you're going to give Arkansas's

4  testimony on the Medicaid Management Information System,

5  MMIS, including but not limited to the federal

6  reimbursement rate for each MMIS category code,

7  including but not limited to the CHIP category; is that

8  correct?

9      A.   Correct, yes.

10     Q.   Okay.  All right.  Now I'm going to go back

11 to -- I'm going to go back to you now, if I can figure

12 out how to do that.  Okay.  So I'd like to spend a

13 little bit of time talking with you about what you do in

14 your job so I can ask you the right questions, and not

15 ask you a bunch of questions that don't relate to your

16 topic or your area of expertise.  So I'd like to cover a

17 little bit about who you are, and then move into what

18 your job responsibilities are.  So can you tell me where

19 you grew up.

20     A.   I grew up in Brandon, Mississippi.

21     Q.   Okay.  And tell me about your educational

22 background.

23     A.   I am currently a certified public accountant

24 licensed in the state of Mississippi.  I graduated from

25 the University of Alabama with an accounting degree in

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.*, | § | |
| | § | |
| Defendant- | § | |
| Intervenors. | § | |

**<u>NOTICE OF DEPOSITION OF ARKANSAS PURSUANT TO F.R.C.P. 30(b)(6) BY</u>**
**<u>PEREZ DEFENDANT-INTERVENORS, ET AL.</u>**

TO:  Plaintiffs State of Texas, *et al.*, through their attorney of record: Todd Disher, Special
Counsel for Civil Litigation, P.O. Box 12548, Austin, Texas 78711-2548, Tel.: (512)
463-2100; Fax: (512) 936-0545, todd.disher@oag.texas.gov.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant-Intervenors

Karla Perez, et al. (Perez Defendant-Intervenors), by and through their undersigned counsel, give

notice that they will take the deposition, by oral examination and before a certified court reporter,

of the State of Arkansas.

On September 18, 2019, Perez Defendant-Intervenors took the deposition of Mary Elizabeth

Franklin, Division Director of County Operations for the Arkansas Department of Human Services

(Arkansas DHS). During the deposition, Ms. Franklin lacked personal knowledge regarding:  the

process of verifying the lawful presence of individuals applying for social services in  Arkansas;

the process followed by Arkansas DHS to determine whether an individual is a DACA recipient or

1

EXHIBIT

1

has another immigration status in the United States, and; the amount of state funds that Arkansas alleges to have expended on DACA recipients.

Arkansas has a duty under Rule 30(b)(6) to designate one or more employees of Arkansas DHS, or other persons who consent to testify on its behalf, and such person(s) shall testify as to the matters known or reasonably available to Arkansas, on the topics specified in the attached Schedule A.

As a result of the current COVID-19 pandemic, and if there are no objections from the parties involved, the deposition shall take place on October 5, 2020 at 9:00 A.M. CDT, via internet video conference through the Zoom web application pursuant to Fed.R.Civ.P. 30(b)(4).  Perez Defendant-Intervenors will provide a link for the video conference prior to the deposition. Requests for reasonable accommodations for persons with disabilities must be made at least three judicial days in advance of the deposition.

Said deposition, answers, and documentation obtained during the same may be read and used as evidence in the above-captioned case in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Dated: September 29, 2020

Respectfully submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
Email: nperales@maldef.org
Ramon A. Soto (Tex. Bar No. 24118927)
(SD of Tex. Bar No. 3440787)
Email: rsoto@maldef.org
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476

2

Facsimile:  (210) 224-5382

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-
Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
 (SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 29th day of September 2020, I served by first

class mail and by electronic mail the foregoing document to:

Todd L. Disher
Attorney-in-Charge
Trial Counsel for Civil Litigation
P.O. Box 12548
Austin, Texas 78711-2548
todd.disher@oag.texas.gov

Jeffrey S. Robins
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Washington, D.C. 20044
Jeffrey.Robins@usdoj.gov

3

Mayur P. Saxena
New Jersey Office of Attorney General
124 Halsey St.
Newark, NJ 07101
Mayur.Saxena@law.njoag.gov

_/s/ Nina Perales_____
Nina Perales

<u>SCHEDULE A</u>

Pursuant to Fed. R. Civ. P. 30(b)(6), Defendant-Intervenors Karla Perez, *et al.* set forth

below the following subject matter areas for the deposition of the Arkansas Department of

Human Services ("Arkansas DHS"):

1. Arkansas DHS use of information from the United States Department of Health and
   Human Services' Centers for Medicare & Medicaid Services Office of Information
   Services' Federal Data Services Hub ("Hub") to make eligibility determinations for
   social services, including but not limited to:

   a. the procedures employed by Arkansas DHS authorized users to access and obtain
      immigration-related information about social services applicants or recipients
      from the Hub;
   b. the information provided to Arkansas DHS by the Hub related to immigration
      status, including but not limited to whether or not an individual lacks formal
      immigration status or received a grant of DACA;
   c. the immigration-related information provided by the Hub to Arkansas DHS and
      upon which Arkansas DHS relies to determine whether a recipient or applicant's
      immigration status renders them eligible for various categories of social services;
   d. Arkansas DHS understanding and use of the codes provided in the document
      "Centers for Medicare & Medicaid  Services, Center for Consumer Information &
      Insurance Oversight, Hub Verify Lawful Presence (VLP) v37 Business Service
      Definition, August 2019" in determining the categories of social services for
      which non-U.S. citizens are eligible, including but not limited to DACA
      recipients.
   e. the social services program categories for which Arkansas DHS deems eligible
      individuals with a category code 188 returned by the Hub.
   f. how the Arkansas DHS project team programs eligibility for program categories
      of applicants or recipients who have a code 188 returned by the Hub.
   g. the process by which Arkansas DHS interprets immigration-related information,
      including but not limited to codes, from the Hub to determine whether a recipient
      or applicant is eligible for social services program categories, including any
      computerized or automated processes and the specific keys or codes used by those
      processes;
   h. the immigration-related information provided by the Hub to Arkansas DHS and
      upon which Arkansas DHS relies to determine whether a recipient of or applicant
      for social services is a DACA recipient;
   i. the process by which Arkansas DHS interprets immigration-related information,
      including but not limited to codes, from the Hub to determine whether a recipient

5

of or applicant for social services is a DACA recipient, including any computerized or automated processes and the specific keys or codes used by those processes;

j. the point in time at which immigration-related information is captured by the Hub for reporting to Arkansas DHS and upon which Arkansas DHS relies to determine whether a recipient or applicant is eligible for social services program categories;

k. the length of time Arkansas DHS relies on immigration-related information provided by the Hub to Arkansas DHS and which Arkansas DHS uses to determine whether a recipient or applicant is eligible for social services program categories;

l. the immigration- or citizenship-related information provided by Arkansas DHS to the Hub as part of the process by which Arkansas DHS determines eligibility for non-U.S. citizens who apply for or receive social services in Arkansas;

m. the nature of the immigration-related information maintained or provided by the Hub, including but not limited to immigration status, receipt of DACA and pending applications for immigration benefits;

n. the source or sources of information provided by the Hub related to immigration status, including whether or not an individual lacks formal immigration status or has DACA; and

2. the relationship between the Medicaid Services Policy Manual, the Medicaid eligibility rules, and the rules of the Arkansas DHS eligibility system that determine social services program category eligibility of non-U.S. citizens, including but not limited to DACA recipients.

3. the period time for which Arkansas DHS maintains information showing non-U.S. citizenship, including but not limited to receipt of DACA, and uses that information to make program category eligibility determinations for applicants for and recipients of social services.

4. The specific immigration- and citizenship-related information collected by Arkansas DHS on its application form for social services and upon which Arkansas DHS relies to make eligibility determinations.

5. The Arkansas social services program categories in which DACA recipients participate and the corresponding level of match from the federal government, if any, for each program category.

6. For each DACA recipient who received services reimbursed by Arkansas DHS: whether the service recipient was identified as a DACA recipient on the date of the reimbursed service; the program category under which the service was reimbursed and the

expenditures by Arkansas alone in reimbursing services rendered to that participant by year from 2012 to the present.

7. Training provided to Arkansas DHS caseworkers related to providing immigration-related information to the eligibility system for the purpose of determining eligibility for social services program categories.

8. The specific information an Arkansas DHS caseworker inputs into the automated eligibility system to determine the category eligibility of a Medicaid applicant.

9. The Medicaid Management Information System ("MMIS"), including but not limited to the federal reimbursement rate for each MMIS category code, including but not limited to the CHIP category.

10. The program categorization, whether under CHIP or Medicaid or another program, of a 16-year-old recipient of ARKids A who meets the other eligibility factors and is a DACA recipient.

11. Whether Arkansas includes DACA recipients in the list of exempted individuals on page 2 of Policy D-224 (in the Medical Services Policy Manual, Section D, Exh. 7 to the Deposition of Mary Franklin).

12. If Arkansas includes DACA recipients in the list of exempted individuals on page 2 of Policy D-224 (in the Medical Services Policy Manual, Section D, Exh. 7 to the Deposition of Mary Franklin), whether Arkansas receives 100 percent match from the federal government as part of the CHIP program.

13. With respect to an individual whose services were initially reimbursed under Full Medicaid Pregnant Woman, whom Arkansas DHS learns is a DACA recipient, whether and how Arkansas DHS seek federal matching funds or federal reimbursement under CHIP and the amount of the match under CHIP.

14. The procedures and information used by Arkansas DHS to update the immigration classification of social services recipients, including but not limited to updating the classification of a DACA recipient who is receiving social services.

15. The percent of Medicaid applications submitted to Arkansas DHS online versus in person.

16. Of the dollar amount reimbursed by Arkansas DHS in Medicaid and CHIP claims for emergency Medicaid benefits and pregnancy benefits on behalf of DACA recipients since January 1, 2018, the dollar amount that represents expenditures by the federal government and the dollar amount that represents expenditures by Arkansas alone.

17. The existence of written material, including but not limited to memoranda, and regulations that advise or guide Arkansas DHS on the topics listed above.

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     BROWNSVILLE DIVISION

 3  STATE OF TEXAS, et al.,      *
          Plaintiffs             *
 4  VS.                          *
                                 *
 5  UNITED STATES OF AMERICA,    *
    et al.,                      *    Case No. 1:18-CV-68
 6       Defendants,             *
                                 *
 7  and                          *
                                 *
 8  KARLA PEREZ, et al.,         *
         Defendant-Intervenors   *
 9
    *********************************************************
10
                    REPORTER'S CERTIFICATION
11                 DEPOSITION OF JANET MANN
                      OCTOBER 5, 2020
12                  (Reported Remotely)

13  *********************************************************

14       I, TRICIA FOX WILLIAMS, Certified Shorthand
    Reporter in and for the State of Texas, hereby certify
15  to the following:

16       That the witness, JANET MANN, was duly sworn by
    the officer and that the transcript of the oral
17  deposition is a true record of the testimony given by
    the witness;
18
         That the deposition transcript was submitted on
19  _____ to the witness or to the attorney for the
    witness for examination, signature and return to me by
20  _____;

21       That the amount of time used by each party at
    the deposition is as follows:
22
         MS. NINA PERALES - 01 HOURS:42 MINUTE(S)
23       MR. TODD DISHER - 00 HOURS:03 MINUTE(S)

24


25
```

Janet Mann                                                    October 05, 2020
                                                                     Page 68

```
 1          That pursuant to information given to the
        deposition officer at the time said testimony was taken,
 2      the following includes counsel for all parties of
        record:
 3
            MR. TODD DISHER, Attorney for Plaintiffs
 4          MS. NINA PERALES, Attorney for
                        Defendant-Intervenors
 5          MR. JEFFREY ROBINS, Attorney for Defendants
            MR. DYLAN JACOBS, Attorney for State of Arkansas
 6          MR. DAVID STERLING, Attorney for State of Arkansas

 7
            I further certify that I am neither counsel
 8      for, related to, nor employed by any of the parties or
        attorneys in the action in which this proceeding was
 9      taken, and further that I am not financially or
        otherwise interested in the outcome of the action.
10
            Further certification requirements pursuant to
11      Rule 203 of TRCP will be certified to after they have
        occurred.
12
            Certified to by me this _____ of
13
        _____, 2020.
14

15

16

17      _____
            TRICIA FOX WILLIAMS
18          Certified Court Reporter

19

20

21
        Certification Number: 8273
22      Date of Expiration: 10/31/2022
        Firm Registration Number: 631
23      Business Address:
            Kim Tindall & Associates
24          16416 San Pedro Ave., Suite 900
            San Antonio, Texas 78232
25          (210)697-3400
```

# EXHIBIT 2

1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
2                    BROWNSVILLE DIVISION

3    STATE OF TEXAS, et al.,      *
          Plaintiffs             *
4    VS.                          *
                                  *
5    UNITED STATES OF AMERICA,    *
     et al.,                      *    Case No. 1:18-CV-68
6         Defendants,            *
                                  *
7    and                          *
                                  *
8    KARLA PEREZ, et al.,         *
          Defendant-Intervenors *

9

10   ********************************************************

11            ORAL AND VIDEOTAPED DEPOSITION OF
                     MARY FRANKLIN
12                   OCTOBER 5, 2020
                  (Reported Remotely)
13
     ********************************************************
14

15           ORAL AND VIDEOTAPED DEPOSITION of MARY
     FRANKLIN, produced as a witness at the instance of the
16   Defendant-Intervenors, and duly sworn, was taken
     remotely in the above-styled and numbered cause on the
17   5th day of October, 2020, between the hours of
     11:40 a.m. and 2:12 p.m., before TRICIA FOX WILLIAMS,
18   CSR, in and for the State of Texas, reported by machine
     shorthand, at 700 Main Street, Little Rock, Arkansas, in
19   accordance with the Federal Rules of Civil Procedure,
     the State of Texas 26th Emergency Order Regarding the
20   COVID-19 State of Disaster, and the provisions stated on
     the record or attached hereto.

21

22

23

24

25

1      Q.    Okay.   And have you seen this document before

2    today?

3      A.    Yes.

4      Q.    Okay.   Now, do you understand that you've been

5    designated to testify as Arkansas's representative with

6    respect to the topics; one, and it has subtopics, two,

7    three, four, five, six, seven, eight, and then also

8    topics 10 through 17?

9      A.    I understand that I have been designated

10   beginning with No. 2.

11     Q.    Okay, let's go back up.   Okay.   Are you

12   prepared to answer questions today on topic one?

13     A.    No, I am not, that expert is a contractor with

14   DHS.

15     Q.    Okay.   Understood.   So I will just ask you what

16   you do know about the contractor with DHS and the

17   functions, I'm just going to make a note.   All right.

18   Before we get to that, I'd like to know if there's any

19   testimony that you gave me when I took your deposition

20   last year that you would like to change today.

21     A.    Not that I'm aware of at this moment, no.

22     Q.    And so when you testified last year in your

23   deposition, you gave me information that was accurate to

24   the best of your knowledge; is that correct?

25     A.    Yes.

 1  the "vague."  Go ahead.

 2      Q.   (By Ms. Perales)  Do you happen -- well, okay.

 3  Ms. Franklin, do you know what this document is used for

 4  by Arkansas DHS?

 5      A.   The document is used -- the purpose of the

 6  document, I believe, is to document how a process works

 7  in the eligibility system, and it's updated if a change

 8  is made to it.

 9      Q.   Okay.  Do you know if this document sets forth

10  all of the information that is maintained in the

11  Arkansas eligibility system about immigration status of

12  beneficiaries?

13           MR. DISHER:  Objection, vague.

14      A.   I do not.

15      Q.   (By Ms. Perales)  Okay.  Let's see, I'm going

16  to go to a specific page, I just have to find it.  I

17  think it might actually help me to make this a little

18  bit smaller so I can see what I'm doing here.  Okay.

19  I'm going to go to the page numbered Bates STATES 838.

20  Okay.  So here we have page 838, and on this page it

21  talks about people who are exempt from the individual --

22  individuals who are exempt from the Medicaid five year

23  bar, and then it has a list of categories.  Is this list

24  something that you're familiar with?

25      A.   Yes, there is a similar list in the Medicaid

1  question.  Do you happen to know what the eligibility

2  system says about a person in terms of their eligibility

3  if they have an I-797?

4             MR. DISHER:  Objection, vague.

5     A.   It depends on -- it depends on what that

6  specific information is, and whether or not it's enough

7  information to determine eligibility.

8     Q.   (By Ms. Perales)  Do you happen to know if

9  someone has an I-797, whether the eligibility system

10  records them as having deferred action?

11             MR. DISHER:  Objection, vague.

12     A.   Again, we're getting too deep in the details of

13  exactly what comes back from the hub, and exactly how

14  the eligibility system is updated.

15     Q.   (By Ms. Perales)  Okay.  So are you able to

16  testify about how the eligibility system interprets

17  information that's coming back from the hub and makes an

18  eligibility determination?

19             MR. DISHER:  Objection, vague.

20     A.   So this document -- I feel like this document

21  details a lot of that process, and also the eligibility

22  policy also drives those rules that are built into the

23  eligibility system.  But, again, for that specific

24  document type, what happens next in the process, that's

25  beyond my day-to-day expertise.

1     Q.   (By Ms. Perales)  Okay.  And with respect to

2  all of these bullets on Bates 935, 936, would it be fair

3  to say that you cannot testify how the eligibility

4  system is taking this information that's coming from the

5  hub and making eligibility determinations; is that

6  right?

7            MR. DISHER:  Objection, vague.  Go ahead

8  and answer.

9     Q.   (By Ms. Perales)  You may answer.

10    A.   So, again, the eligibility system has been

11 designed to follow the rules in the medical policy

12 manual, and use the information from the hub based on

13 the guidance about how the information is received and

14 what different codes stand for, and then does whatever

15 is next appropriate in the process.

16    Q.   Understood.  And would it be fair to say that

17 you cannot provide additional detail about how that

18 information from the hub is interpreted and applied

19 within the eligibility system, other than what you've

20 said?

21    A.   Other than what I've said.  Again, this would

22 take detailed knowledge about exactly how the

23 information is received, what it relates to in the

24 policy manual, and what the system does next.

25    Q.   Okay.  And that -- you aren't able to give us

1  that detailed information today; is that right?

2      A.    That's right.

3      Q.    Do you know if this document, which is Exhibit

4  2, describes all of the immigration-related information

5  that Arkansas would maintain about an individual

6  beneficiary for Medicaid?

7      A.    I don't know that this document would be the

8  only document, we have a Medicaid eligibility policy

9  manual as well.

10     Q.    But in terms of what the eligibility system

11 would maintain in terms of data about an individual, as

12 opposed to policies, in terms of data about an

13 individual, does this exhibit describe all of the

14 immigration-related data that Arkansas would maintain

15 about an individual beneficiary?

16     A.    I'm not certain of that.  Again, because I'm

17 not familiar with the codes that the data service hub

18 sends, and all the exact definitions of those codes.  So

19 I do not believe that just looking at this document

20 would be enough information to make that determination

21 from.

22     Q.    Are you aware of the extent to which this

23 document discusses DACA?

24     A.    No.

25     Q.    Okay.  I'm not going to torment you anymore

1  with this document.  Unless you say something that makes

2  me have to pull it back up again, I won't ask you about

3  it.  Okay.  We're going to go back to a document that

4  you and I discussed in your earlier deposition, let me

5  drop and drag it into the chat.  We're going to talk

6  about this chart that you and I talked about before.

7  It's very small, I'm going to make it a little bit

8  bigger, but I don't know what size screen you're working

9  on.  So I don't know if it's easier for you to look --

10  well, I can get the whole thing on my screen like this.

11  Do you recognize -- and I'd like to mark this as Exhibit

12  3.  Do you recognize this chart as the chart that you

13  and I reviewed in your deposition of last year?

14            (Exhibit 3 marked for identification.)

15      A.    Yes.

16      Q.    (By Ms. Perales)  And this is the chart that's

17  associated with your declaration in the case; is that

18  correct?

19      A.    Yes.

20      Q.    Okay.  I would like to talk with you a little

21  bit more about how these individuals were selected for

22  inclusion in this chart.  And we talked in your last

23  deposition about your request to some people to create

24  this list for you, and they created it for you, and then

25  we talked about it some more.  I'd like to know if you

 1  know any more specifically about the information that

 2  the eligibility system maintains that would cause

 3  somebody to have been included on this list.

 4      A.   No, I don't know any additional information

 5  other than what went into the query for this report.

 6      Q.   Okay.  And I know that you mentioned that you

 7  requested a report on people who were identified as DACA

 8  within your eligibility system, correct?

 9      A.   Yes.

10      Q.   And do you have any details about how somebody

11  is associated with DACA in your eligibility system, or

12  how somebody is indicated as DACA within your

13  eligibility system?

14      A.   My understanding is there's a specific code in

15  the information that comes from the Federal Data

16  Services Hub that identifies an individual as a DACA

17  individual, and then that information is put into the

18  eligibility system.

19      Q.   Do you know -- do you happen to know what the

20  codes are that come from the hub that identifies someone

21  as DACA?

22      A.   Again, not specifically.  I know there are

23  codes, and I know that there -- my understanding is

24  there is a specific code for DACA.

25      Q.   Okay.  Now I want to talk with you for a minute

```
 1      Q.   But are you aware of the communication between
 2  Arkansas DHS and eSystems, in which Arkansas DHS asks
 3  eSystems to take that information and put it into the
 4  eligibility framework so that somebody can come and look
 5  it up on an individual case participant's records?
 6                MR. DISHER:  Objection, lack of
 7  foundation.
 8      A.   So I am not aware, beyond the design documents,
 9  if there are additional details not included in the
10  design documents that identify specific codes and what
11  those codes mean.  I am not aware beyond the design
12  documents, so I don't know how to give you more
13  information than that.
14      Q.   (By Ms. Perales)  No, that's a perfectly good
15  answer.  Are you aware of any design documents that
16  mention DACA?
17                MR. DISHER:  Objection, vague.  Go ahead.
18      A.   I -- no.  I mean, I don't know anything beyond
19  what's been provided already.
20      Q.   (By Ms. Perales)  Okay.  Let me pull up the
21  other chart.  Let me see if I have any other questions
22  about this.  Actually, I do.  I just want to stay on
23  here for another second.  Did you generate this Exhibit
24  A yourself?
25      A.   No.
```

 1  what I requested.

 2      Q.    Okay.  Do you have any understanding of the

 3  relationship of people who are coded DACA in your

 4  eligibility system, and the people described as deferred

 5  action status in this eSystems Eligibility and

 6  Enrollment Framework document?

 7      A.    Would you restate the question?

 8      Q.    Sure.

 9            MS. PERALES:  I'd like to have the court

10  reporter read it back, if you could, so it's the same

11  question.

12            (Requested portion read back.)

13      A.    I feel like I would need to read this framework

14  document to fully answer that question.

15      Q.    (By Ms. Perales)  Okay.  And if you assume with

16  me that the eligibility framework document for Arkansas

17  does not include the term "DACA," or "deferred action

18  for childhood arrivals," do you have an understanding of

19  the relationship between people described as deferred

20  action status in the eligibility and enrollment

21  framework document, and those people who are coded as

22  DACA in your eligibility system?

23      A.    So I see in the document, on this page that you

24  have highlighted, deferred action status is an exemption

25  to the specific five year ban.  That document's

1   relationship to this report -- there's more into pulling

2   a report than looking -- this document is about the

3   eligibility system, but again, I do not see in that

4   document, or the page that you had highlighted, the

5   specific codes that come back from the Federal Data

6   Services Hub, that then the eligibility system puts

7   information specific to those codes onto -- into the

8   eligibility system.

9       Q.   I have the same questions, Ms. Franklin.   If

10  the document that I've been provided by Arkansas, which

11  is the Eligibility and Enrollment Framework Project

12  document, does not mention deferred action for childhood

13  arrivals, or DACA, I don't have an understanding of the

14  relationship between your project, and how it captures

15  information from the hub, and these people who appear in

16  your eligibility system as being associated with DACA.

17  And because of that, I'm asking if you have that

18  information.

19      A.   As I mentioned earlier, I am not the expert in

20  exactly how the system works, and how it takes files

21  from one location and assimilates them and uses them in

22  the eligibility system.   I mentioned earlier that the

23  expert is a contractor, eSystems.

24      Q.   Okay.

25      A.   And you're asking questions that are too deep

1  into the details for me to have specific knowledge

2  about.

3      Q.   Okay.  Thank you.  So let's just look at the --

4  let's just look at Exhibit 3, Total Dollar Amount Paid

5  for Members in the List for Specific Dates of Coverage,

6  that's the title of the document.  Can you tell me how

7  much of the total paid amount was paid by Arkansas as

8  opposed to the federal government?

9      A.   You cannot see that from this document.  This

10  document has total paid amount, and is not split by

11  federal and state.

12      Q.   Okay.  And sitting here today, can you tell me

13  how much of this amount was paid by the federal

14  government and how much --

15      A.   Not from this specific document.

16      Q.   No, not from this document, but sitting here

17  today, can you tell me how much of the $911,418.88 was

18  paid by Arkansas, and how much was paid by the federal

19  government?

20      A.   I cannot give you a specific amount.  I can

21  tell you it depends on whether or not it was a Medicaid

22  claim or a CHIP claim, when the claim occurred, and what

23  the match rate was when that happened.  But, again, I

24  can't give -- tell you that from this document.

25      Q.   Okay.  Is it also correct to say that the

1  document that we're looking at here, Exhibit 3, does not

2  provide the date of service?

3      A.   Scroll back to the top and let me make sure.  I

4  do not think it does, but let me make sure.  No, these

5  are just dates of coverage, these are not specific dates

6  of claims.

7      Q.   And is it also correct to say that this

8  document does not include the date on which the hub

9  returned information that Arkansas has used to conclude

10 the person is a DACA recipient?

11     A.   That is correct.

12     Q.   I have a couple of very small questions about

13 the document.  And if you were there in the deposition

14 of Ms. Mann, I asked her what is a Parent or Caretaker

15 Relative, and she said she didn't know, but I kind of

16 figured you might know.

17     A.   A Parent or Caretaker Relative is a Medicaid

18 eligibility category, and, again, it is Medicaid,

19 everyone in that category is a Medicaid recipient.  And

20 it is for parents who have a dependent child under the

21 age of 18, and who also meet -- they have low income for

22 people who meet the criteria for that category.

23     Q.   Okay.  And that also sounds a little bit like

24 the category Arkansas Works, which my understanding is

25 covers adults age 19 to 64; is that right?

1  from the five year bar, does that mean that when they

2  apply for Medicaid, that Arkansas would then deem them

3  ineligible?

4           MR. DISHER:  Objection, vague.

5       A.   No, because -- no.  This is just one section of

6  the manual.  They may qualify in the Unborn Child

7  category, if you see B 250, Unborn Child category, where

8  it says, "Lawfully admitted aliens who do not meet the

9  five year residency requirement or undocumented aliens."

10  So individuals who have status of DACA can be covered in

11  Unborn Child, and they can also be covered in emergency

12  Medicaid, if they meet the emergency Medicaid criteria,

13  and that could be in multiple different Medicaid

14  categories.  But as a general rule, no, they're not

15  eligible for Medicaid, they're eligible in limited

16  circumstances.

17      Q.   (By Ms. Perales)  Okay.  I'm going to shrink

18  these documents back down.  Okay, we're back to this

19  table again.  So with respect to each individual who's

20  listed in Exhibit 3, can you tell me information about

21  these individuals as they are listed on this

22  spreadsheet?  So, for example, for the person who's on

23  the top line of this spreadsheet, category code 06,

24  description Arkansas Works, we have some dates of

25  coverage, and then we have an amount, $3,186.69.  Are

1   you able to tell me for this person whether they were a

2   DACA recipient on the date of the reimbursed service?

3        A.   No.

4        Q.   Okay.  And is that answer the same for every

5   person on this spreadsheet?

6        A.   So -- yes.

7        Q.   Okay.

8        A.   This spreadsheet does not have the date that

9   the person was determined to be a DACA recipient.

10       Q.   Okay.  And then in terms of the program

11  category under which the service was reimbursed, for the

12  individuals on this spreadsheet, I understand that

13  you're not able to tell me for that specific individual,

14  for example, whether the service might have been

15  reimbursed under CHIP or Medicaid for some of these

16  folks; is that right?

17       A.   For some, but not all.

18       Q.   Okay.  I'm just -- I'm going through the topics

19  on the Schedule A.  And so topic six does say, "For each

20  DACA recipient who received services reimbursed by

21  Arkansas DHS," and then it asks a series of questions.

22  Are you able to testify today -- putting aside this

23  chart.  Are you able to testify today about individual

24  DACA recipients who received services from Arkansas DHS,

25  and answer some questions about them?

    1      A.    Do you mean in general, or specific to

    2  particular individuals?

    3      Q.    Specific to particular individuals.

    4      A.    No, I cannot speak specific to particular

    5  individuals today.

    6      Q.    In our last discussion, you didn't have an

    7  exact number for me, so I did put it on the topics,

    8  whether you know the percent of Medicaid applications

    9  that are submitted to Arkansas DHS online versus in

   10  person; do you happen to know that?

   11      A.    I looked at a report that was from January of

   12  2020, and it was about 42 percent online.

   13      Q.    Do you happen to know whether, if someone is

   14  applying for Medicaid online, whether the application

   15  will go through if it's missing information?

   16      A.    It depends on if the missing information is

   17  necessary to determine eligibility.

   18      Q.    Do you happen to know whether the online

   19  application asks for immigration-related information?

   20      A.    I know that it does, even though I can't give

   21  you the specific questions, because citizenship and

   22  status factor into Medicaid eligibility.  So I know

   23  there are questions, even though I don't know the

   24  specific questions, and I know that if it's not

   25  provided, the application would not be immediately

```
 1  denied, but if additional information is needed, the
 2  client would get a notice requesting additional
 3  information.
 4      Q.   Do you know if somebody who failed to put their
 5  immigration status information on the online application
 6  would get contacted and told, "Hey, we need this
 7  information from you before we can make an eligibility
 8  determination"?
 9      A.   They could if we needed additional information.
10      Q.   Okay.  And I guess you had mentioned you hadn't
11  seen the paper application lately for Medicaid, would
12  that answer be the same for the online application for
13  Medicaid?
14      A.   Yes.  I know they're similar, but I have not
15  seen it recently.
16      Q.   Okay.
17      A.   I don't have it in front of me.
18      Q.   Would it also be fair to say that you don't
19  know what specific information would be requested for
20  immigration status, whether it's an identifying number
21  or some other such thing?
22      A.   Yeah, I know that they're asked about
23  citizenship, if they're a citizen or not.  And if
24  they're not a citizen, to provide information about
25  their status.  I just can't give you the specific
```

 1  verbiage without looking at it.

 2      Q.   Okay.  I think I pass the witness.  No, I am

 3  definitely passing the witness.

 4           MR. DISHER:  Jeff, do you have any

 5  questions?

 6           MR. ROBINS:  I don't.

 7                    EXAMINATION

 8  BY MR. DISHER:

 9      Q.   Okay.  I just have one question, I believe,

10  just so the record is clear, Ms. Franklin.  DACA

11  recipients are eligible for what type of services

12  provided by your agency?

13      A.   They are eligible for the Unborn Child category

14  if they are pregnant and otherwise meet the eligibility

15  requirements for that category.  And they are eligible

16  for emergency Medicaid if they meet criteria for that

17  and it can be delivered, and it is not limited to any

18  particular Medicaid category.

19      Q.   Okay.  Thank you.  I pass the witness.

20                    RE-EXAMINATION

21  BY MS. PERALES:

22      Q.   I just have a follow up for that for emergency

23  Medicaid.  If I understand correctly, there could be

24  various program categories for an emergency Medicaid; is

25  that correct?

Mary Franklin                                          October 05, 2020
                                                            Page 69

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3   STATE OF TEXAS, et al.,    *
          Plaintiffs            *
 4   VS.                        *
                                *
 5   UNITED STATES OF AMERICA,  *
     et al.,                    *   Case No. 1:18-CV-68
 6        Defendants,           *
                                *
 7   and                        *
                                *
 8   KARLA PEREZ, et al.,       *
          Defendant-Intervenors *
 9
     ************************************************************
10
                    REPORTER'S CERTIFICATION
11               DEPOSITION OF MARY FRANKLIN
                      OCTOBER 5, 2020
12                  (Reported Remotely)

13   ************************************************************

14        I, TRICIA FOX WILLIAMS, Certified Shorthand
     Reporter in and for the State of Texas, hereby certify
15   to the following:

16            That the witness, MARY FRANKLIN, was duly sworn
     by the officer and that the transcript of the oral
17   deposition is a true record of the testimony given by
     the witness;

18
              That the deposition transcript was submitted on
19   _____ to the witness or to the attorney for the
     witness for examination, signature and return to me by
20   _____;

21            That the amount of time used by each party at
     the deposition is as follows:
22
          MS. NINA PERALES - 01 HOURS:53 MINUTE(S)
23        MR. TODD DISHER - 00 HOURS:01 MINUTE(S)

24


25
```

Mary Franklin                                                     October 05, 2020
                                                                          Page 70

```
 1          That pursuant to information given to the
    deposition officer at the time said testimony was taken,
 2  the following includes counsel for all parties of
    record:
 3
            MR. TODD DISHER, Attorney for Plaintiffs
 4          MS. NINA PERALES, Attorney for
                        Defendant-Intervenors
 5          MR. JEFFREY ROBINS, Attorney for Defendants
            MR. DYLAN JACOBS, Attorney for State of Arkansas
 6          MR. DAVID STERLING, Attorney for State of Arkansas

 7          I further certify that I am neither counsel
    for, related to, nor employed by any of the parties or
 8  attorneys in the action in which this proceeding was
    taken, and further that I am not financially or
 9  otherwise interested in the outcome of the action.

10          Further certification requirements pursuant to
    Rule 203 of TRCP will be certified to after they have
11  occurred.

12          Certified to by me this _____ of

13  _____, 2020.

14

15

16                                    Tricia Williams
                                   _____
17                                    TRICIA FOX WILLIAMS
                                      Certified Court Reporter
18

19

20

21  Certification Number: 8273
    Date of Expiration: 10/31/2022
22  Firm Registration Number: 631
    Business Address:
23      Kim Tindall & Associates
        16416 San Pedro Ave., Suite 900
24      San Antonio, Texas 78232
        (210)697-3400
25
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                       210-697-3408