UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> Defendant-Intervenors. | Case No. 18-cv-00068 |

## FEDERAL DEFENDANTS' NOTICE OF ERRATA

Undersigned counsel submits this errata to Federal Defendants' Response to Plaintiffs' Motion for Summary Judgment, which was filed on November 6, 2020, at Docket No. 501. Federal Defendants inadvertently omitted from that filing an Appendix of Unpublished Authorities, pursuant to this Court's Civil Procedures Rule 9.

Federal Defendants' Appendix of Unpublished Authorities is attached here.

1

Dated: November 10, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director

Respectfully submitted,

*/s/ James J. Walker*
JAMES J. WALKER
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ James J. Walker*
JAMES J. WALKER

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> Defendant-Intervenors. | Case No. 18-cv-00068 |

## APPENDIX OF UNPUBLISHED AUTHORITIES

Pursuant to this Court's Civil Procedure, Rule 7, Federal Defendants hereby provide the Court with the following appendix of unpublished authorities cited in its response to Plaintiffs' motion for summary judgment [ECF 501]:

| TAB | AUTHORITY | PAGE |
|---|---|---|
| 1 | *German Language Ctr. v. U.S*, No. CIV. A. H-09-3950, 2010 WL 3824636 (S.D. Tex. Sept. 27, 2010) (unpublished) | Fed. Defs. 001 |
| 2 | *Atchafalaya Basinkeeper v. Mallard Basin Inc.*, No. 6:10-CV-1085, 2012 WL 13041531 (W.D. La. Mar. 15, 2012) (unpublished) | Fed. Defs. 007 |

# Tab 1

Fed. Defs. 001

2010 WL 3824636
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. Texas,
Houston Division.

GERMAN LANGUAGE CENTER, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civil Action No. H–09–3950.
|
Sept. 27, 2010.

**Attorneys and Law Firms**

Kenneth James Harder, Amy Donnelly Ashby, Dunbar Harder Et Al, Leslie Garcia Ashby, Ashby LLP, Houston, TX, for Plaintiffs.

Kathryn Louise Moore, US Department of Justice, Office of Immigration Litigation, Washington, DC, for Defendants.

*MEMORANDUM AND ORDER*

NANCY F. ATLAS, District Judge.

*1 The plaintiffs have filed a complaint to challenge an adverse administrative decision by the United States Citizenship and Immigration Service ("USCIS") in connection with a non-immigrant visa petition. The defendants have filed a motion to dismiss the complaint for failure to state a claim [Doc. # 25]. [1] This Court converted the motion into one for summary judgment [Doc. # 30], and both parties have filed additional briefing [Docs. # 31–# 35]. After reviewing all of the pleadings, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons set forth below.

**I. *BACKGROUND***
The facts underlying the complaint in this case have been set forth previously in the Court's order dated June 10, 2010 [Doc. # 24], and will not be repeated at length here. It is sufficient to note that the complaint concerns an administrative decision by USCIS to deny a nonimmigrant visa requested by the plaintiff, German Language Center ("GLC"), on behalf of a German national, Jana Marie Unter Ecker ("Unter Ecker"). GLC is a privately owned business that offers a variety of German language courses to adults and children in Houston. One particular program featured at GLC, known as "Kinderspiel," is described as a "German–English dual language immersion and cultural program" designed specifically for pre-school children ages 2.5 through 6 years.

On April 14, 2009, GLC filed a Form I–129 Nonimmigrant Petition for Alien Worker ("Form I–129 petition") to obtain a Q–1 visa for Unter Ecker to work as a "Teacher's Aid of German for the German language portions" of its Kinderspiel pre-school program. USCIS denied that petition on May 14, 2009, on the grounds that Kinderspiel "was not open to the public," but was in the manner of a "private cultural exchange."

On May 29, 2009, GLC filed a new Form I–129 petition for a Q–1 visa on Unter Ecker's behalf, along with additional documentation about its programs. USCIS denied that petition on July 21, 2009. In the notice of denial, USCIS found that GLC did not qualify as an international cultural exchange program or meet the criteria for a Q–1 visa because the general public would not have access to Unter Ecker's teachings and, furthermore, Unter Ecker "would not be engaging in employment of which the essential element is the sharing of the culture of ... [her] country of nationality."

GLC complains that, in denying the requested Q–1 visa for Unter–Ecker, the defendants wrongfully refused to recognize GLC as an "international cultural exchange program." GLC alleges that it has been "irreparably harmed" by the defendants' decision to deny a Q–1 visa. GLC insists that, by denying a Q–1 visa, USCIS arbitrarily and capriciously disregarded facts that support its "continued eligibility as an international cultural exchange program." GLC maintains further that USCIS also arbitrarily and capriciously disregarded facts demonstrating that Unter Ecker "would be working in a capacity that specifically explains and conveys her nationality's culture to a segment of the American public," namely, "young children." Arguing that USCIS has abused its discretion, GLC invokes the Administrative Procedures Act and asks this Court to reverse the adverse decision entered by USCIS on July 21, 2009, and to order USCIS to approve a Form I–129 petition for a Q–1 visa on behalf of Unter Ecker.

**\*2** The defendants filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the complaint fails to state a claim at this time. In support of that motion, the defendants advise that the adverse decision entered on July 21, 2009 was "reopened" for consideration on June 11, 2010. [2] Because the defendants included exhibits outside of the pleadings, the plaintiffs cried foul. Therefore, the Court converted the defendants' motion to one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and gave the parties an opportunity to provide additional briefing. The parties' contentions are discussed below under the governing legal standard.

## II. *STANDARD OF REVIEW*

The defendants' motion is governed by Rule 56 of the Federal Rules of Civil Procedure, which mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir.2002). In that respect, a reviewing court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.,* 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir.2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005). The moving party, however, need not negate the elements of the non-movant's case. *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005). The moving party may meet its burden by pointing out " 'the absence of evidence supporting the nonmoving party's case.' " *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir.2001) (internal citation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECTV Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir.2006) (internal citations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 478 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir.2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.' " *Alexander v. Eeds,* 392 F.3d 138, 142 (5th Cir.2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999)).

### III. *DISCUSSION*

**\*3** GLC has filed suit under the Administrative Procedures Act (the "APA"), which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Where an agency action is not made reviewable by a specific statute, the APA authorizes judicial review for "final agency actions for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. When considering actions taken by an administrative agency, a reviewing court may "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Medina County Environmental Action Ass'n v. Surface Transp. Bd.,* 602 F.3d 687, 699 (5th Cir.2010).

In their pending motion, the defendants report that the decision at issue in this case, regarding GLC's nonimmigrant visa petition for Unter Ecker, has been re-opened. In particular, correspondence provided by the defendants shows that USCIS has reopened the matter "in light of recent reevaluation and clarification on analysis of Q [visa] petitions, to reconsider the evidence submitted and request additional evidence to support [the] petition." [3] [Doc. # 25, Exh.]. The defendants maintain that, by reopening the proceedings, the prior agency action in dispute has been nullified. The defendants insist, therefore, that the adverse decision at issue is no longer "final" for purposes of judicial review under 5 U.S.C. § 704. Because there is no final agency action for this Court to consider, the defendants maintain "[r]eview under the APA is not permissible at this point."

For an agency action to be "final," and therefore reviewable under the APA, it must satisfy two conditions: (1) the "action must mark the 'consummation' of the agency's decision-making process," meaning that "it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal citation and quotations omitted); *see also Exxon Chemicals America v. Chao,* 298 F.3d 464, 466–67 (5th Cir.2002) (same). In contrast, a non-final agency action is one that "does not itself adversely affect [the] complainant but only affects his rights adversely on the contingency of future administrative action." *Exxon,* 298 F.3d at 467 (quoting *American Airlines, Inc. v. Herman,* 176 F.3d 283, 288 (5th Cir.1999) (citation omitted)).

It is undisputed by GLC that the administrative decision at issue has been set aside by USCIS, that the proceedings have been reopened, and that GLC has been invited to provide additional evidence in support of its request for a Q–1 visa. As a result, the agency action at issue remains open for consideration and the adverse effect of USCIS's decision is contingent on further administrative review. Thus, the decision to deny GLC's petition for a Q–1 visa, now withdrawn and reopened for consideration, is no longer final under the governing criteria.

**\*4** GLC complains that USCIS lacks authority to reopen or nullify a final agency action. The Fifth Circuit has recognized, however, that "[e]mbedded in an agency's power to make a decision is its power to reconsider that decision." *ConocoPhillips Co. v. United States Environmental Protection Agency,* 612 F.3d 822, 832 (5th Cir.2010). "The reasonableness of an agency's reconsideration implicates two opposing policies: 'the desirability of finality on one hand and the public's interest in reaching

what, ultimately, appears to be the right result on the other.' " *Macktal v. Chao,* 286 F.3d 822, 826 (5th Cir.2002) (quoting *Civil Aeronautics Board v. Delta Air Lines, Inc.,* 367 U.S. 316, 321, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961)). Reconsideration is allowed as long as that decision is not arbitrary, capricious, or an abuse of discretion. *See Macktal,* 286 F.3d at 826 (citing 5 U.S.C. § 706(2)(A)).

In support of its decision to reopen or reconsider GLC's Q-visa petition, the defendants have provided an affidavit from a supervisor at the Vermont Service Center (Lynn A. Boudreau). [Doc. # 31, Exh.]. According to this affidavit, the decision to re-open was made "in light of a recent unpublished opinion issued by the Administrative Appeals Office (AAO) of USCIS in an unrelated Q–1 case." [*Id.*]. Under these circumstances, the decision to reopen was not arbitrarily made or unreasonable. Nor can this Court say that it was an abuse of discretion to reopen the matter for additional consideration in light of recent intraagency authority. Based on this record, it does not appear that the decision to reopen GLC's Q-visa petition for additional consideration was unauthorized.

GLC insists further that dismissal would be improper because the adverse decision at issue was final when the complaint was filed. Even assuming that this is true, lack of present finality means that the issues raised in the complaint are not ripe for review.[4] As the Supreme Court has counseled, the ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also Texas v. United States,* 497 F.3d 491, 498 (5th Cir.2007) (discussing the question of ripeness); JACOB E. STEIN, ET AL., 5 ADMINISTRATIVE LAW § 48.01 (2010) ("Since it is not the function of the courts to become involved in matters involving administrative technical expertise or intra-agency policies, agency decisions are reviewable only when they have been 'formalized' and affect the parties 'in a concrete way.' ").

The complaint in this case concerns whether the plaintiffs are entitled, as a matter of law, to a Q–1 visa under standards promulgated by USCIS. The standard of review ultimately applied under the APA is "highly deferential to the administrative agency whose decision is being reviewed[.]" *Texas Clinical Labs, Inc. v. Sebelius,* 612 F.3d 771, 775 (5th Cir.2010) (citing *F.C.C. v. Fox Television Stations, Inc.,* ––– U.S. ––––, 129 S.Ct. 1800, 1810, 173 L.Ed.2d 738 (2009)). There is a presumption that an agency decision is valid unless the plaintiffs show that the decision was erroneous. *Id.* (citing *Delta Foundation Inc. v. United States,* 303 F.3d 551, 564 (5th Cir.2002)). Because there is no longer a final decision to review, any decision by this Court would pose a risk of interfering with an agency determination that has not yet reached a concrete, formal resolution. Requiring the plaintiffs to complete administrative review by submitting the additional information requested by USCIS may result in the visa being granted and a favorable resolution; if not, having a final agency action will benefit any future analysis of the claim by virtue of having a record that includes additional consideration by USCIS in light of the above-referenced unpublished opinion issued recently by the AAO in another Q–1 case. [Doc. # 31, Exh.]. Because judicial intervention ould be premature, the Court concludes that the complaint must be dismissed, without prejudice, pending the completion of administrative review.

IV. CONCLUSION AND ORDER

**\*5** Based on the foregoing, it is ORDERED that the defendants' motion for summary judgment [Doc. # 25] is GRANTED and that this case is DISMISSED without prejudice as premature. The Clerk will provide a *copy of this order to* the parties.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3824636

**Footnotes**

| | |
|---|---|
| 1 | The primary defendants in this case are the United States of America and the USCIS, which is responsible for implementing regulations and adjudicating applications for non-immigrant visa petitions. The plaintiffs also sue Secretary Janet Napolitano of the Department of Homeland Security, Director Alejandro Mayorkas of the USCIS, and Daniel Renaud, who is Director of the USCIS Vermont Service Center, in their official capacity. |
| 2 | The defendants explain that they do not address the adverse decision rendered initially on May 14, 2009, because the first Q–1 visa petition filed by the plaintiffs "is considered to have been superseded by the second petition." [Doc. # 31, Exh. at ¶ 12]. |
| 3 | According to the correspondence provided by the defendants, USCIS has asked for evidence that Unter Ecker will be offered "wages and working conditions comparable to those accorded local domestic workers similarly employed." [Doc. # 25, Exh.]. USCIS has also requested information regarding the duration of the cultural exchange program in which Unter Ecker will participate. [*Id.*]. |
| 4 | The Supreme Court has stated that the "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *[Reno v. Catholic Social Servs., Inc.,](https://...)* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (citing *[Buckley v. Valeo,](https://...)* 424 U.S. 1, 114, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam)). Because the question of ripeness is related to jurisdiction, a court may raise the issue on its own motion. *See [Roark & Hardee LP v. City of Austin,](https://...)* 522 F.3d 533, 544 (5th Cir.2008) (citations and quotations omitted). |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# Tab 2

Fed. Defs. 007

Case 1:18-cv-00068 Document 508-1 Filed on 11/10/20 in TXSD Page 9 of 15

Atchafalaya Basinkeeper v. Mallard Basin Inc., Not Reported in Fed. Supp. (2012)

2012 WL 13041531
Only the Westlaw citation is currently available.
United States District Court, W.D. Louisiana,
Lafayette Division.

ATCHAFALAYA BASINKEEPER and Louisiana Crawfish Producers Association-West

v.

MALLARD BASIN INC. and Whiskey Bay Island, LLC

and

Louisiana Crawfish Producers Association-West, et al.

v.

Lt. General Robert L. Van Antwerp, et al.

CIVIL ACTION NO. 6:10-cv-1085, CIVIL ACTION NO. 6:11-cv-0461
|
Signed 03/15/2012

**Attorneys and Law Firms**

Joseph R. Joy, III, Joseph Joy & Assoc., Lafayette, LA, Lisa Westenberger Jordan, Adam L. Babich, Tulane Environmental Law Clinic, New Orleans, LA, Misha Leigh Mitchell, Atchafalaya Basin Keeper, Plaquemine, LA, for Atchafalaya Basinkeeper and Louisiana Crawfish Producers Association-West.

Carmen M. Rodriguez, Donald W. Washington, Gary J. Russo, Nadia De La Houssaye, Jones Walker et al., Lafayette, LA, Stanley A. Millan, Jones Walker et al., New Orleans, LA, Eileen T. McDonough, Mark Arthur Brown, Barbara M. R. Marvin, Kenneth Dean Rooney, U.S. Dept. of Justice, Washington, DC, for Mallard Basin Inc. and Whiskey Bay Island, LLC.

**MEMORANDUM RULING AND ORDER**

Patrick J. Hanna, United States Magistrate Judge

\*1 Before the undersigned, on referral from the District Judge for ruling, is the Federal Defendants' Motion for Voluntary Remand and Temporary Stay of the Litigation. [Rec. Doc. 50, 53] After considering the record, the oral arguments presented on February 29, 2012, and the briefs of the parties filed before and since the arguments, the undersigned finds that the motion should be GRANTED.

*Factual and Procedural Background:*
In 2010, Louisiana Crawfish Producers Association—West and Atchafalaya Basinkeeper sued Whiskey Bay Island, LLC and Mallard Basin, Inc., alleging the defendants violated the Clean Water Act by filling wetlands and other alleged wrongful and environmentally harmful activities. A counterclaim has been filed by Whiskey Bay Island, LLC and Mallard Basin, Inc. against the Plaintiffs for litigation costs pursuant to 33 U.S.C. § 1365(d). [Rec. Doc. 1 and 13] In 2011, by a separate proceeding, Louisiana Crawfish Producers Association—West, Atchafalaya Basinkeeper, and the Louisiana Environmental Action Network sued the United States Army Corps of Engineers concerning the issuance of 'after-the-fact' permits to Whiskey Bay Island, LLC and Mallard Basin, Inc. for activities that had been conducted in and around Fisher Lake. [Rec. Doc. 1, Civil Action No. 11-cv-461] The factual basis for both the 2010 and 2011 lawsuits is the same—activities in and around Fisher Lake [1] in the Atchafalaya Basin. The 2010 lawsuit alleges the defendants' activities were conducted without a valid permit; the 2011 lawsuit

Case 1:18-cv-00068 Document 508-1 Filed on 11/10/20 in TXSD Page 10 of 15

Atchafalaya Basinkeeper v. Mallard Basin Inc., Not Reported in Fed. Supp. (2012)

alleges the Corps of Engineers violated the Endangered Species Act and other laws when it issued the after-the-fact permits to the defendants.

On June 29, 2011, the parties filed a Joint Motion to Stay Proceedings, pending resolution of permit issues in the 2011 suit:

> "Plaintiffs and Defendants in this lawsuit are in agreement that the resolution of the "2011 lawsuit" will have a bearing on the "2010 lawsuit." A stay could save the court and the parties both time and resources since the resolution of the 2011 lawsuit may moot or clarify issues." [Rec. Doc. 28]

The motion was denied September 7, 2011; the two suits were consolidated the same day. [Rec. Doc. 34, 35] During a conference among the parties on September 7, 2011, the parties were informed of a transfer of ownership of all or some of the property at issue in the litigation. On July 25, 2011, Mallard Basin transferred its interest in the property at issue to Atchafalaya Investments, LLC. [Rec. Doc. 52-1, p. 1] The new owner sought new permits or alternatively transfer of the old permits to the new owner. Additionally, the new owner sought to add a use to the permits for recreational duck/deer hunting, frogging, crawfishing, fishing, bird watching, alligator hunting, and general wildlife enjoyment.

With the ownership change and the request for transfer of permits, on November 10, 2011, the Corps of Engineers communicated with the new owner by certified letter. [Rec. Doc. 50-2, p. 2] In the letter, the Corps summarized the scope of the permits issued to Mallard Basin and also notified the new owner of the litigation underway in this court relative to the permits. Per the Corps:

> *2 In light of (I) the alleged violations of environmental law advanced by the plaintiffs in the litigation mentioned above, (ii) the new ownership of Fisher Bottoms and the potential for new project uses, and (iii) the agency's absence of knowledge about the present condition of the property, in particular the permittee's activities and water management practices since we issued these permits more than a year ago, we believe a reevaluation of permit conditions is appropriate before we respond to your transfer request. [Rec. Doc. 50-2, pp.2-3]

Also in the letter, the Corps declared its intention to review its original findings, modifying them, if warranted, per its authority derived through 33 C.F.R. 325.7. The letter also indicated that after its review, the Corp may call for modification of permit terms prior to transfer to the new landowner. It may also require suspension of the permits pending acceptance of modifications, or revocation of the permits altogether if the Corps determined such action to be in the best public interest. The reevaluation process was described in detail in the letter, including possible actions to be taken based on evidence gathered. The required time period for completion of the Corps' review was estimated to be between 90-120 days. [Rec. Doc. 50-2, p. 3-4].

The movants seek a voluntary remand without *vacatur* of the two permits challenged in this action. They also seek a stay of the litigation pending re-evaluation of the permitted activities. The Corps represented that it has already commenced a full review of the permits at issue in this litigation, which it will continue regardless of the court's ruling on the motion at issue. In beginning the review process, the Corps has determined that the originally anticipated 120 day time window referenced in communications with the new landowner is not a practical estimate, and at oral argument, Corps representatives indicated that the review is now expected to be completed by the end of August, 2012. The Corps has urged that it would be practical to stay this litigation to allow that process to be completed, since the end result may result in (a) revocation of the permits altogether, (2) modification of the permits on transfer to the new owner, or (3) ratification of the permits as originally granted, reissuing them to the new owner. According to the Corps, revocation would provide the plaintiffs with the relief they are seeking in this litigation, mooting the matter, without the expense in time and money of continuing the litigation process during the evaluation period.

The opposing plaintiffs urge that the proposed remand should not be allowed unless the permits at issue are vacated during the Corps review period. They express concern that allowing the permits to stand during the review period would result in

further harm to the environment, including the continued authorization of draining of Fisher Lake, which the plaintiffs contend is harmful to the environment and the wildlife inhabiting the Fisher Lake area. Per the plaintiffs, a stay would allow dams, ditches and other water control structures to remain in place, continuing to harm crawfishermen by preventing their access to fishing grounds. [Rec. Doc. 52]

As the permits/property ownership currently stands, the permits at issue were issued to the previous owners of Fisher Lake who no longer own the land and the new owner of the property presently has no permit, however, the activities authorized to the prior permit holder, which are challenged by the plaintiffs in both of these consolidated cases, may continue. The new owner has sought to have the permits reissued or transferred, which effort has provoked the review by the Corps. The plaintiffs' concern over a stay without *vacatur* arises out of what they perceive will happen to the Atchafalaya Basin between the present time and the Corps' arrival at a final decision, if the contested activities are allowed to continue.

## APPLICABLE LAW AND DISCUSSION

### *The Corps' Authority to Review its Permits:*

**\*3** Provisions of 33 C.F.R. § 325.7 allow the district engineer of the Corps to reevaluate the circumstances and conditions of any permit and initiate action to modify, suspend, or revoke a permit as may be made necessary by considerations of the public interest. 33 C.F.R. § 325.7(a). The general rule is that, even without such statutory authority, an administrative agency has the inherent authority to reconsider its decisions. *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002). The authority is not unlimited, however, and an agency may not reconsider its own decision if to do so would be arbitrary, capricious, or an abuse of discretion. The reasonableness of an agency's reconsideration implicates two opposing policies: "the desirability of finality on one hand and the public's interest in reaching what, ultimately, appears to be the right result on the other." *Id.*, quoting *Civil Aeronautics Board v. Delta Air Lines, Inc.*, 367 U.S. 316, 321, 81 S.Ct. 1611, 1617, 6 L.Ed 2d 869 (1961).

### *Standard for Granting a Voluntary Remand and Stay:*

When there is ongoing litigation related to the actions of an agency, which are to be reconsidered, a motion to remand or hold the case in abeyance pending reconsideration has been found to be appropriate. *See Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962) (stating that an agency wishing to reconsider its action, should move the court to remand or hold the case in abeyance pending the agency's reconsideration). Such motions are often granted to allow an agency to consider new evidence that became available after the agency's original decision. *See, e.g., Ethyl Corp. v. Browner*, 989 F.2d 522, 523-24 & n. 3 (D.C. Cir. 1993). Such decisions "allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Lamprecht v. FCC*, 958 F.2d 382, 385 (D.C. Cir. 1992). In the case where an intervening event may affect the validity of the agency action at issue, a remand is generally required. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028-29 (Fed. Cir. 2001) (citing *Ethyl*, 989 F.2d at 524); *see also Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (noting that it can be "an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action"). Even in the absence of intervening events, upon an agency's remand request, the reviewing court still has discretion over whether to remand. *See, e.g., id.* at 417 (citing *SKF USA*, 254 F.3d at 1029). In that situation, as long as the agency's concern is substantial and legitimate, a remand is usually appropriate. An agency's remand request may be refused if the request is frivolous or in bad faith. *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998). The undersigned has considered the recent transfer of ownership of the property at issue, the proposed new uses and the agency action to review the permits in light of the new uses sought by the new owners. On that record, the court cannot say and does not find that the agency's remand request is frivolous or in bad faith.

Case 1:18-cv-00068   Document 508-1   Filed on 11/10/20 in TXSD   Page 12 of 15

Atchafalaya Basinkeeper v. Mallard Basin Inc., Not Reported in Fed. Supp. (2012)

Additionally, the Court has considered the potential results of agency review and the effects of possible results on this litigation. After completion of the agency review process as described by the Corps, the permits at issue in this litigation will either be (a) reinstated in their current form and transferred to the new owners, (b) modified by limitation or expansion, or (c) revoked altogether, all options contemplated and authorized by 33 C.F.R. § 325.7. If the permits are revoked, then the legal issues presented in both cases in this litigation will be moot, and Plaintiffs will have 'won the day.' If the permits are modified and transferred, then this litigation *may* continue depending on the modifications, but the new owners will be made parties going forward. If the permits are ratified and transferred, then this litigation will proceed as it started.

**\*4** The parties agree that the burden is upon the Corps to establish the need for a stay of the captioned proceedings-to make a case of hardship or inequity in being required to go forward with the litigation if there is a fair possibility that the stay would work damage to someone else. In its analysis, a court should take into account the plaintiff's interest in bringing the case to trial. *Clinton v. Jones*, 520 U.S. 681, 707-08, 117 S.Ct. 1636, 137 L.Ed.2d 945(1997). "Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed.2d 153 (1936) The court must also carefully consider the time reasonably expected for resolution of the 'other case,' and stay orders should be reversed when they are found to be immoderate or of an indefinite duration. *Landis*, 299 U.S. at 257, 57 S.Ct. At 167.

Given the current posture of the case, combined with the three possible outcomes of the agency review, there is little to be gained by pressing on with this litigation during the reconsideration/review process. The new owner Atchafalaya Investments, LLC., and Mallard Basin, Inc., the current permittee and owners of a small portion of the property at issue, have agreed that "if the Court orders the stay, the owners of the property and the permittee have agreed to suspend all water management activities and the application of herbicides ... so as to assure the Court that no such activities by the Defendants will affect the environmental condition of the property." [Rec. Doc. 66, p. 1] Specifically, the defendants, together with the new owner have proposed a voluntary cessation of property management activities for the next four months (through the end of June, 2012), following which they would request an opportunity to advise the Court of the then-current environmental condition of the property and to request any adjustment that might be necessary at that point in time. [Rec. Doc. 66, p. 2-4] By that agreement, the Fisher Lake will not be drained during the Spring months described as critical by Plaintiffs, and there will be no application of herbicides in the area, avoiding the damaging environmental impact alleged and feared by Plaintiffs in that regard. These conditions, agreed upon by the new owner (who is not a party to this litigation), the defendants, and approved by the Corps (though opposed by Plaintiffs), combined with the Corps' declaration that its review process will be complete in August, 2012, allow for the establishment of a reasonable duration for any stay of proceedings, which, in fact, reduces the plaintiffs' exposure to alleged environmental harms from the conditions which would be present had the Corps review not been undertaken. Such a limited stay also serves the interests of the parties in avoiding unnecessary time and expense of litigation. Further, the Court will be kept apprised of the progress of the review by the Corps during the interim and encourages the process to proceed as expeditiously as reasonably possible.

## CONCLUSION

Based upon the undersigned's review of the record and consideration of the arguments and positions of the parties:

IT IS HEREBY ORDERED that the Motion for Voluntary Remand without *vacatur* is GRANTED;

IT IS FURTHER ORDERED that both of the consolidated cases are STAYED pending further order of the Court;

IT IS FURTHER ORDERED THAT:

Case 1:18-cv-00068   Document 508-1   Filed on 11/10/20 in TXSD   Page 13 of 15

Atchafalaya Basinkeeper v. Mallard Basin Inc., Not Reported in Fed. Supp. (2012)

A. The landowners and the current permittee shall cease property management activities at Fisher Lake for the next four months, through the end of June, 2012. Such cessation shall include and encompass the seasonal draining of Fisher Lake and the application of herbicides in the area;

B. No action shall be taken by any party or the landowner participant in the standstill agreement in contravention of the agreement during the referenced four month period, through the end of June, 2012. Further, after the expiration of the four month period, no property management activities shall be undertaken on the subject property without at least 21 days prior notification to the Court and the plaintiffs in both consolidated cases of the intention to so act, the reason for the action and the details of any proposed action.

 **\*5**  IT IS FURTHER ORDERED that the Corps will apprise the Court and counsel of its progress in the permit review process at the beginning of each month by letter to the undersigned with copies to all counsel.

**All Citations**

Not Reported in Fed. Supp., 2012 WL 13041531

### Footnotes

| | |
|---|---|
| 1 | In the submissions of the parties the area at issue has been called Fisher Lake and Fisher Bottoms. The use of 'Fisher Lake' in this document is intended to apply to the property at issue. |

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Dated: November 10, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director

Respectfully submitted,

*/s/ James J. Walker*
JAMES J. WALKER
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I certify that on November 10, 2020, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ James J. Walker*
JAMES J. WALKER