UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> Defendant-Intervenors. | Case No. 18-cv-00068 |

**FEDERAL DEFENDANTS' RESPONSE
TO DEFENDANT-INTERVENORS'
<u>CROSS MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

    1.    The Wolf Memo does not modify the Court's prior findings of standing .................................................................................................1

    2.    This case presents an Article III controversy .......................................2

CONCLUSION .....................................................................................................5

**INTRODUCTION**

Defendant-Intervenors move for summary judgment in their favor on the grounds that "Plaintiffs have failed to carry their burden to show that they have standing and that this case continues to present an Article III controversy." ECF Dkt. 504, Defendant-Intervenors' Motion for Summary Judgment, at 3. Defendant-Intervenors do not appear to seek summary judgment with respects to the merits of DACA. *Id*. In their brief, Defendant-Intervenors reiterate their prior arguments that the State Plaintiffs lack standing, argue that standing is harder to establish given the Wolf Memorandum, and argue that there is "no actual case or controversy within the meaning of Article III of the Constitution here," because Plaintiffs and Federal Defendants "desire precisely the same result," and because Federal Defendants are no longer implementing the same DACA policy that Plaintiffs challenge in their Complaint. *Id*. at 33; *id*. at 34 ("Federal Defendants have . . . abandoned 2012 DACA," and "are no longer enforcing the 2012 DACA policy"). We respond to these arguments below.

**I.     The Wolf Memo does not modify the Court's prior findings of standing**

As we have explained in prior briefing, the Federal Defendants agree that Plaintiffs likely lack standing, but recognize that the Court has ruled otherwise on grounds that are unaffected by the Acting Secretary's changes to the 2012 DACA policy. *See* ECF Dkt. 501, Federal Defendants Response to Plaintiffs' Motion for Summary Judgement, at 13 n.8.[1] The Wolf Memo

---

[1] Federal Defendants note for the Court that on November 14, 2020, another district court ruled that Chad Wolf was not lawfully serving as Acting Secretary of Homeland Security when he issued the Wolf Memo, and that the Wolf Memo was therefore not an exercise of legal authority. *See* [Supplemental Appendix,] *Batalla Vidal v. Wolf*, Civ. No. 16-4756 (E.D.N.Y.) (Garaufis, J.), *State of New York v. Trump*, Civ. No. 17-5228 (E.D.N.Y.) (Garaufis, J.), Dkt. No. 342 at 17, 31. That court has not yet entered a remedial order, but has ordered briefing on an appropriate remedy to be completed by December 1, 2020. If this Court believes this appointment issue is relevant to standing, the government can provide supplemental briefing addressing it.

1

altered the DACA policy in certain limited ways: it eliminated first-time DACA grants in a manner that effectively maintained the status quo that existed after court injunctions had limited the prior DACA rescission; it precluded grants of advance parole absent exceptional circumstances; and it reduced the length of future DACA grants to one year. We do not think these changes substantially impact this Court's prior standing analysis under the *parens patriae* doctrine or based on the increase in social-services costs, *see Texas v. United States* (*Texas II*), 328 F. Supp. 3d 662, 694-705 (S.D. Tex. 2018), although we reiterate that the United States disagrees with that analysis. *See* ECF Dkt. 501 at 13 n.8.

## II.     This case presents an Article III controversy

The Court has already determined that this case presents a justiciable controversy. The Court held that, even when the Federal Defendants were arguing that DACA was illegal, the Defendant-Intervenors "surely fill [the] role" of "*amici curiae* prepared to defend with vigor" the legal issues in this case. *Texas II*, 328 F. Supp. 3d at 689-90 (citing *United States v. Windsor,* 570 U.S. 744, 760 (2013)). The Wolf Memorandum does not alter that conclusion or the reasoning that led to it, nor does the position of the United States—that the Wolf Memo is an appropriate placeholder while the United States considers next steps on DACA, as the Supreme Court envisioned.

The Government's intent to administer the challenged policy continues to provide sufficient adverseness to maintain jurisdiction over the suit. *Texas II*, 328 F. Supp. 3d at 688-89 (citing *Windsor,* 570 U.S. at 759). Plaintiffs challenge the 2012 DACA policy and, while the Wolf Memo made changes to that policy, it also made clear that the Government intends to continue to implement the 2012 DACA policy in the future, to the alleged detriment of the Plaintiff States. As this Court reasoned previously, "this case presents an Article III controversy between adverse parties under *Windsor*." *Id.* at 689; *see* Wolf Memo at 7 ("Accordingly,

effective immediately, DHS shall: . . . Adjudicate all pending and future properly submitted DACA renewal requests."). Defendant-Intervenors' claim that there is no longer a controversy here because Federal Defendants have "abandoned 2012 DACA," and "no longer intend to enforce the challenged [DACA] policy," ECF Dkt. 504 at 34, is incorrect.

The Court should also reject Defendant-Intervenors' claim that, even if there is a controversy, it is "ambiguous whether this case presents the requisite adverseness," and so "prudential considerations favor dismissal for lack of an actual case or controversy." ECF Dkt. 504 at 36. At present, and following years of litigation, Federal Defendants continue to maintain DACA. *See* ECF Dkt. 504-2. The Wolf and Edlow Memos directly contradict the relief Plaintiffs' seek and, together with the legal arguments submitted by the Defendant-Intervenors, provides the "concrete adverseness which sharpens the presentation of issues" for this Court. *See* ECF No. 486 at 47 ("Plaintiff States respectfully request that the Court declare DACA unlawful and prevent Federal Defendants from issuing any new DACA permits or renewing any existing DACA permits . . .").

Finally, Defendant-Intervenors overstate the nature of the Wolf Memo and its effect on DACA policy. While the Wolf Memo alters 2012 DACA in certain ways, it does not discard it. *See* ECF Dkt. 504 at 13-15, 34. Rather, the Wolf Memo lays out the ways in which DHS has modified *how* it administers the 2012 DACA policy for a period of time to maintain the core of DACA for existing DACA recipients—those whom the Supreme Court recognized as potentially having protected reliance interests—while the Acting Secretary considers "whether the DACA policy should be maintained, rescinded, or modified." Wolf Mem. at 7. The Edlow Memo further makes clear that "USCIS shall continue to adjudicate all pending DACA renewal requests and renewal requests received after the Wolf Memorandum, as well as certain initial requests as

3

discussed above, *under the general adjudicative guidelines in place for DACA*." ECF Dkt. 504-2 at 26 (emphasis added).

And while the Wolf Memorandum modifies DACA in certain respects, that itself is an *application* of a critical aspect of the original Napolitano Memorandum: namely, that any policy like DACA is, by its nature, *always* subject to change. *See* Wolf Mem. 7 ("Nothing in the Napolitano Memo purports to preclude me from exercising my enforcement discretion to make these changes on an interim basis while I consider whether to make more substantial changes on a permanent basis."). The Wolf Memo does not attempt or purport to constitute the agency's final assessment of the costs and benefits of DACA, and instead expressly operates to maintain a modified DACA policy, pending further assessment by DHS, as contemplated by the Supreme Court. *See Regents*, 140 S. Ct. at 1916 ("[t]he appropriate recourse is . . . to remand to DHS so that it may consider the problem anew").

The Wolf Memo therefore, even as a new agency action, does not fully replace the existing DACA policy such that Plaintiffs no longer have standing to challenge the alleged harms arising out of DACA as it has been maintained since 2012. Rather, the Wolf Memo is a new decision implementing DACA, and the modifications that the Wolf Memo implements are justified by the 2012 record and the 2012 DACA memo issued by Secretary Napolitano. *See Natl. Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 141 (D.C. Cir. 1998) (a later agency action reopens a prior decision for court review under the "reopener rule" when the "later proceeding explicitly or implicitly shows that the agency actually reconsidered the rule"); *cf. Regents*, 140 S. Ct. at 1908 (noting that "the Nielsen Memorandum was by its own terms not a new rule implementing a new policy" and considering it according to those terms).

4

Any final decision about the future of the 2012 DACA policy will be undertaken in a different administrative action.

## CONCLUSION

For the reasons expressed in Federal Defendants' response to Plaintiffs' Motion for Summary Judgement (ECF Dkt. 501), and for the foregoing reasons, the Court should permit DHS to continue its policy deliberations regarding the future of DACA as envisioned by the Supreme Court in *Regents*.

Dated: November 20, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director

Respectfully submitted,

*/s/ James J. Walker*
JAMES J. WALKER
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 20, 2020, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ James J. Walker*
JAMES J. WALKER