IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL., <br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, ET AL., <br> *Defendants*, <br><br> and <br><br> KARLA PEREZ, ET AL.; <br><br> STATE OF NEW JERSEY, <br> *Defendant-Intervenors*. | § § § § § § § § § § § § § § § § | Civil Action No. 1:18-CV-00068 |

## ORDER

Before the Court is Defendant-Intervenors'[1] Motion to Strike Plaintiffs' Experts (Doc. No. 390). Plaintiff States[2] have responded (Doc. No. 411), and Defendant-Intervenors have replied. (Doc. No. 415). After careful consideration, the Court hereby **DENIES** Defendant-Intervenors' Motion to Strike.

### I. Legal Standard

Under Rule 702, a qualified expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

---

[1] Defendant-Intervenors here are 22 individual DACA recipients, although New Jersey is also a Defendant-Intervenor in this case.

[2] At the time of filing, Plaintiff States were comprised of Alabama, Arkansas, Kansas, Louisiana, Nebraska, South Carolina, Texas, and West Virginia.

An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id.* In short, expert testimony must be both "reliable and relevant." *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotations and citations omitted). The reliable prong mandates that the "expert opinion be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Id.* (cleaned up). The relevance prong requires the proponent to demonstrate that the expert's "reasoning or methodology can be properly applied to the facts in issue." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).

A proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Supreme Court has clarified in *Daubert* and *Kumho Tire* that it is the gatekeeping role of district courts to determine whether an expert's proffered testimony conforms with Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Court is to "ensure the reliability and relevancy of expert testimony," *Kumho Tire*, 526 U.S. at 152, and is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## II. Analysis

Broadly speaking, Defendant-Intervenors argue that the expert opinions of Dr. Donald Deere and Dr. Lloyd Potter are unreliable because they are based on flawed assumptions and insufficient data, and are not the product of reliable principles and methodology. They also argue the expert reports are irrelevant. Defendant-Intervenors additionally assert that as a threshold

matter, neither Dr. Deere nor Dr. Potter is qualified to offer an opinion about the subject matter at hand. (*See* Doc. No. 390 at 7–8).

A. Relevancy

The Court finds that the opinions of Dr. Deere and Dr. Potter are relevant to the Court's standing analysis despite Defendant-Intervenors' argument that neither expert can "quantify the harm to Plaintiffs . . . ." (Doc. No. 390 at 8). Defendant-Intervenors argue that Dr. Deere's testimony is not relevant to the injury element of standing because he was unable to offer exact *numerical* estimates regarding the harm. For standing purposes, however, while damage may be a requirement, the exact extent of the damages is not. The Article III injury requirement "is qualitative, not quantitative, in nature." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357–58 (5th Cir. 1999). In other words, a plaintiff must show only some, not substantial, injury—a standard Dr. Deere's opinion meets. *Id.*

Similarly, Defendant-Intervenors' challenge to the relevancy of Dr. Potter's testimony concerns his failure to state with numerical accuracy how many DACA recipients might leave the country if DACA ends. While this testimony goes to the redressability, not the injury, prong of standing, the law compels the same result. Courts do not resolve factual disputes when determining standing, *Ass'n of Comty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999), and Dr. Potter's opinions raise a genuine dispute of fact in response to Defendant-Intervenors' Motion for Summary Judgment. (Doc. No. 504). Thus, his testimony is clearly relevant to the standing inquiry.

As this Court has previously found, Article III standing does not necessarily hinge on the damage caused by any specific DACA recipient; instead, it can be based on the damage caused by

the entire program. Any deficiency in quantitative analysis by the experts, therefore, does not render their opinions irrelevant to the standing analysis this Court must undertake.

B. <u>Qualifications and Reliability</u>

*1. Dr. Donald Deere*

In his report, Dr. Deere seeks to offer two main opinions, which broadly summarized are: (1) the interaction between the Affordable Care Act (ACA) and DACA results in more workplace competition, lower wages, and less hiring of United States citizens, and (2) immigration puts downward pressure on wages, which makes it more difficult for some United States citizens to find employment.

Dr. Deere is a labor economist with over 30 years of experience in the field. He holds a Ph.D. in economics from the Massachusetts Institute of Technology (MIT) and has taught labor economics, economic principles, and public finance at Texas A&M University, MIT, and the University of California Santa Barbara. He additionally has served as the Associate Director of the George Bush School of Government and Public Service. His research focuses on labor markets and public policy that affects wages and employment, and he has published in numerous peer-reviewed journals. (*See* Doc. No. 411, Ex. A). Despite this, Defendant-Intervenors argue that he is unqualified to offer an opinion about the effect of DACA recipients on the labor market in Texas. (Doc. No. 390 at 9). Given his education, training, and experience, all within the general field of economics, Dr. Deere is qualified to provide the limited opinions related to labor economics contained in his report. *See* Fed. R. Evid. 702; *see also Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002) ("As long as some reasonable indication of

qualification is adduced, the court may admit the evidence without abdicating its gate-keeping function."). Dr. Deere exceeds this standard by a wide margin.

Defendant-Intervenors argue that Dr. Deere "created a mountain of unsupported assumptions, and concluded from these assumptions that employers, applicants, the ACA, and DACA interact to cause U.S. citizens to suffer from a loss of employment as a result of DACA." (Doc. No. 390 at 13). They also argue that his testimony about downward pressure on wages is based upon unreliable assumptions. (Doc. No. 390 at 16).

In reality, these complaints would be described more accurately as Dr. Deere relied on facts and offered conclusions with which the individual Defendant-Interveners disagree. As the Fifth Circuit has noted: "There are areas of expertise, such as the 'social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies.'" *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)). Dr. Deere studied data related to the DACA population, reviewed relevant literature, and applied both to the facts at hand using his "knowledge, skill, experience, training, or education" as well as basic concepts of labor economics. Fed. R. Evid. 702. These are the typical tools one in the field of labor economics would use.

In addition, Defendant-Intervenors' argument that Dr. Deere failed to interview any human resource representatives or complete qualitative analysis to support his conclusions about the DACA population goes to the weight of the evidence. An attack on data relied upon (or not relied upon) by an expert generally goes to the credibility, not the admissibility, of testimony. *See Primrose Operating Co. v. Nat'l Am. Ins., Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.")

(citing *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County, State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

Further, experts from other parties (and even some amici curiae) have drawn the same conclusions as Dr. Deere, implicitly confirming his conclusions. For example, one of the Defendant-Intervenors' (New Jersey) own experts, Dr. Ike Brannon, agreed that DACA increases competition with legal residents also competing for low skilled jobs. (Doc. No. 289-3 at 141). Similarly, Meg Wiehe and Misha Hill, tax policy experts hired by New Jersey, confirmed that "the work authorizations and deferral from deportation provided by DACA allow recipients to better compete with legally present workers." (Doc. No. 400-1 at 73). As can be seen by a review of the entirety of the record, Dr. Deere's opinions are not by any means outside the mainstream of labor economics thinking. Moreover, his opinions are supported by a wealth of common sense. Even Defendant-Intervenors' own experts agree with many of his conclusions. To the extent that the movants consider Dr. Deere's analysis and opinions to be flawed, the Supreme Court has held that "[v]igorous cross-examination" is the "appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Court concludes Dr. Deere's expert opinions are admissible.

*2. Dr. Lloyd Potter*

In Dr. Potter's report, he opines that some DACA recipients may migrate back to their country of origin if they lose their permission to work in the United States. Dr. Potter is the Texas State Demographer. As the state demographer, he is responsible for producing and disseminating population estimates and projections for Texas. (*See* Doc. No. 410, Ex. B). He is also currently a professor in the Department of Demography at the University of Texas at San Antonio, where he serves as the director of the Institute for Demographic and Socioeconomic Research. (Doc. No.

411-2 at 3). He holds a Ph.D. in Demography and Sociology from The University of Texas at Austin, in addition to an M.P.H. in Epidemiology from Emory University and an M.S. in Education from University of Houston Clear Lake. (*See id.*). He has also been a post-doctoral fellow at the Centers for Disease Control and Prevention. Defendant-Intervenors argue that he is not qualified because he lacks the proper research specialization in immigrant populations or emigration patterns of undocumented immigrants to offer an opinion on DACA recipients' likelihood of return to their country of origin. (Doc. No. 390 at 18). Considering Dr. Potter's education, training, and experience—particularly as the Texas State Demographer—Dr. Potter is qualified to opine about the concepts within his field contained in his expert report. *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018) ("A lack of specialization should generally go to the weight of the evidence rather than its admissibility," and "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications.") (first quoting *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013); then quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

Defendant-Intervenors argue that Dr. Potter's conclusion that some DACA recipients will return to their country of origin when faced with the loss of work authorization is based upon "flawed assumptions that doomed his analysis and render his conclusion untrue." (Doc. No. 390 at 18). Like economics, demography and sociology fall within the soft sciences that the Fifth Circuit has noted require diminished methodological precision. *See Simmons*, 470 F.3d at 1123. Nevertheless, in addition to his education, training, and experience, Dr. Potter relied upon peer-reviewed articles to support his conclusion, including one focusing on young immigrants to the United States, which confirmed that "immigrants with college degrees [which would include DACA recipients] were more likely to return to their country of origin than those without." (Doc.

No. 411-2 at 5). *See* Reagan, P.B., Olsen, R.J., *You can go home again: Evidence from longitudinal data.* 37(3). Demography, 339. Aug. 2000; *see also* Van Hook J., Zhang W., *Who Stays? Who Goes? Selective Emigration Among the Foreign-Born.* 30(1). Population Rsch. Pol'y Rev., 1. Feb. 2011. Insofar as Defendant-Intervenors disagree with the facts or assumptions that are based upon Dr. Potter's training, education, research, or peer-reviewed publications and led to Dr. Potter's conclusions, these arguments go to the weight to be given to, rather than the admissibility of, the expert's testimony. *See Anascape, Ltd. v. Microsoft Corp.*, 9:06CV158, 2008 WL 7180757, at *2 (E.D. Tex. Apr. 28, 2008) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1221 (Fed. Cir. 2006).

Critically, just as Dr. Deere's conclusions were supported by opposing experts, Dr. Potter's conclusions about migratory patterns were also echoed by other experts in this case. For example, Defendant-Intervenor New Jersey's expert Dr. Tom Wong, an Associate Professor at the University of California, San Diego, is an expert in immigration politics and policy: he received a Ph.D. in political science, served as an advisor to the White House on immigration related issues, and has published several reports and peer-reviewed journal articles on DACA. (Doc. No. 487-26). He conducted a national survey of 3,063 DACA recipients in August 2017 and carefully described the methodology used and how it accounted for bias. The study confirmed that 22.3% of DACA recipients were "likely/very likely" to "leave the country if DACA ends." (Doc. No. 219-2 at 4).[3] Thus, Dr. Potter's conclusions are not anomalies and are in fact bolstered by empirical findings from New Jersey's own expert. *See* Fed. R. Evid. 702(b); *see also* Fed. R. Evid. 702

---

[3] In the same vein, Defendant-Intervenors' own evidence highlights that the factor most critical to DACA recipients staying in the United States is, of course, their DACA status. For example, the declaration of one DACA recipient, Jin Park, expressed that DACA status was the critical factor to her ability to remain in the United States: "I wish to remain in the U.S . . . . Receiving deferred action is critical to my ability to live, work, and study in the United States." (Doc. No. 504-2, Ex. 18 ¶ 8 Decl. of Jin Park). Several declarations from other DACA recipients express the same sentiment. (*See id.*, Ex. 20, Ex. 21 & Ex. 22).

advisory committee's note to 2000 amendments ("Rule 702 . . . requires that expert testimony be based on sufficient underlying 'facts or data.' The term 'data' is intended to encompass the reliable opinions of other experts.").

Finally, Defendant-Intervenors want Dr. Potter's testimony stricken based on their belief that he should base his testimony on the fact that DACA recipients would remain in the United States in violation of the law if they lost their status. In essence, Defendant-Intervenors want Dr. Potter to assume that all DACA-eligible individuals would remain in the United States illegally. While some of Defendant-Intervenors' own experts may rely on certain data to support such a hypothesis, their reliance upon that data does not render Dr. Potter's conclusions, based on different assumptions, studies, or data, unreliable. Moreover, if Defendant-Intervenors want to probe how his conclusions might change based upon their assumptions, counsel may certainly incorporate such assumptions in a hypothetical question to Dr. Potter during cross-examination. *See Daubert*, 509 U.S. at 596. The Court finds that Dr. Potter's opinions are admissible.

### III. Conclusion

The Court hereby **DENIES** Defendant-Intervenors' Motion to Strike Plaintiffs' Experts. (Doc. 390).

Signed at Houston, Texas, this \_16th\_ day of July 2021.

Andrew S. Hanen
United States District Judge