**EXHIBIT D**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

MARTÍN JONATHAN BATALLA VIDAL, ANTONIO ALARCÓN, ELIANA FERNANDEZ, CARLOS VARGAS, CAROLINA FUNG FENG, M.B.F., by her next friend LUCIA FELIZ, XIMENA ZAMORA, SONIA MOLINA and JOHANA LARIOS SAINZ,

On behalf of themselves and all other similarly situated individuals,

and MAKE THE ROAD NEW YORK,

On behalf of itself, its members, and its clients,

*Plaintiffs*,

v.

ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, et al.,

*Defendants*.

Case No. 1:16-cv-04756 (NGG)(VMS)

June 6, 2022

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR MODIFICATION**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. THIS COURT'S REMEDIAL AUTHORITY TO MODIFY ITS ORDER IS UNDISPUTED. ..... 3

II. PLAINTIFFS' PROPOSED MODIFICATIONS DO NOT CONFLICT WITH THE TEXAS II ORDER. ..... 5

A. The Proposed Interim Relief Is Distinct from DACA. ..... 5

B. Processing Initial Applicants Up To, But Not Including, Adjudication Would Provide Meaningful Relief and Not Conflict with Texas II. ..... 7

C. Defendants Fail To Explain Why They Cannot Adjudicate Extended Renewal Applications. ..... 9

CONCLUSION ..... 10


## TABLE OF AUTHORITIES

### CASES


*Brown v. Plata*, 563 U.S. 493 (2011) ..... 5, 7

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ..... 5

*Cooper v. U.S. Postal Service*, 577 F.3d 479 (2d Cir. 2009) ..... 5

*King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F.2d 31 (2d Cir. 1969) ..... 6

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ..... 5

*Texas v. United States*, 549 F. Supp. 3d 572 (S.D. Tex. 2021) ..... 8, 11

*Texas v. United States*, No. 1:18-CV-00068, 2021 WL 3022434 (S.D. Tex. July 16, 2021) ..... 10


### STATUTES


8 U.S.C. § 1324a(h)(3)(B) ..... 4


### RULES


8 C.F.R. § 223.2(a) ..... 8

8 C.F.R. § 274a.14(b)(2) ..... 7

8 C.F.R. § 103.2 ..... 8

## INTRODUCTION

Plaintiffs seek relief for class members currently harmed by Defendants' failure to fully implement this Court's December 2020 order. Defendants concede that this Court has broad authority to modify its own order, and they do not dispute that they have the legal authority, under existing immigration statutes and regulations, to grant interim relief and the other modifications Plaintiffs have requested. The only dispute is whether this Court *should* revise its prior order in a manner that provides meaningful relief to thousands of class members while avoiding any conflicts with the *Texas II* order.

The three forms of relief Plaintiffs request—establishing interim relief, processing Pending First-Time applications, and adjudicating Extended Renewal applications—are necessary to effectuate this Court's order and do so without violating the *Texas II* order. But instead of engaging with Plaintiffs' proposals, offering other suggestions, or agreeing to mediate, Defendants' only proposal is to seek an advisory opinion from a different district court. Defendants should not be so dismissive of this Court's previous determinations to certify a class and grant class-wide relief, nor should Defendants strain to conjure obstacles to relief. The government's contention that "case-by-case fact-finding would be necessary" to grant interim relief, Opp. at 11, for instance, and its refusal to proffer *any* action whatsoever to protect class member interests under this Court's order, belie its claimed commitment "to preserving and fortifying" DACA. *Id.* at 23.

Defendants' first argument, that any relief ordered must be cabined to violations of the Homeland Security Act (HSA), fails to account for class members' reasonable expectations following this Court's 2020 order and takes an overly narrow view of this litigation. This Court's order was issued only after the Supreme Court reinstated the 2012 DACA memorandum and the Trump Administration promptly attempted to rewrite it; the purpose and effect of this Court's order

was to reinstate the 2012 memorandum in full. The approximately 80,000 class members who submitted initial DACA requests in reliance on this Court's order and before the *Texas II* order, like Ms. Larios Sainz, had the reasonable understanding that their applications would be processed under the full terms of the 2012 DACA memorandum. Further, the reasonable expectation of Extended Renewal Applicants under longstanding agency practice and this Court's order was that their renewals would be adjudicated, even though they would have to submit additional evidence to be renewed. An amended complaint is not required, because the class has not yet received complete relief and the requested modification would effectuate such relief. Given the harms caused by Defendants' inaction, this Court should use its uncontested authority to modify its order.

Defendants' overbroad reading of the effect of *Texas II* on this Court's order is also erroneous. Defendants may take meaningful steps for a subset of the class consistent with this Court's order and *Texas II.* Defendants speculate that the prospect of relief for a portion of the class certified by this Court—which the *Texas II* order on its face allows—will result in the loss of renewals for class members who currently have DACA. But none of the three relief measures Plaintiffs request conflict with the *Texas II* order, which by its terms only forbids the United States Citizenship and Immigration Services (USCIS) from granting DACA to new applicants.

For the reasons set forth in Plaintiffs' briefing and that of the States, the Court should grant Plaintiffs' Motion and order Defendants to: (1) implement interim relief for Pending First-Time Applicants; (2) process Pending First-Time Applications up to final adjudication; and (3) adjudicate Extended Renewal Applications. The Court should either invite Defendants to propose a plan for implementing interim relief or, alternatively, refer the parties to mediation to work out the details of implementation.

## ARGUMENT

### I. THIS COURT'S REMEDIAL AUTHORITY TO MODIFY ITS ORDER IS UNDISPUTED.

Defendants concede that the Court has the broad authority to modify its previous order under its equitable powers and Federal Rule of Civil Procedure 60, as discussed in Plaintiffs' motion, and Defendants do not dispute that they have the authority to grant the requested relief. Opp. at 11, 17-18; *see, e.g.*, 8 U.S.C. § 1324a(h)(3)(B) (allowing Attorney General, now DHS, to grant employment authorization). Instead, they argue that Plaintiffs should have amended their complaint, and that *any* modification of this Court's December 2020 order would reach beyond "the scope of the violation on which it entered judgment." Opp. at 1, 7-11. Yet the government fails to address the changed circumstances now warranting modification.

This Court's December 2020 order created reasonable expectations among class members that the 2012 DACA memorandum would be fully reinstated. It was issued after the Supreme Court reinstated the 2012 DACA Memorandum and the Trump Administration promptly attempted to rewrite it. At that time, neither the Court nor the parties anticipated that a different district court would enjoin certain aspects of the 2012 DACA memorandum and frustrate this Court's order. Pls.' Mot. at 3-4, 8. As such, the later-issued *Texas II* order and stay did not change class members' reasonable expectations.

Plaintiffs are not required to file an amended complaint, as Defendants argue,[1] because Ms. Larios Sainz and other members of the certified subclass have not received complete relief upon

[1] Defendants cherry-pick quotes from case law relating to the scope of remedial injunctions in inapplicable legal and factual contexts. Opp. at 7. None of the cases support Defendants' position. *Cooper v. U.S. Postal Service*, 577 F.3d 479, 496 (2d Cir. 2009), and *Brown v. Plata*, 563 U.S. 493, 531 (2011), concerned the need for narrow tailoring of remedies in the special contexts of Establishment Clause claims and Eighth Amendment claims under the Prison Litigation Reform Act, respectively. The unique concerns regarding the scope of remedy in those cases are absent in

their claims in the Fourth Amended Complaint. *See, e.g.*, Prayer for Relief, ECF No. 308 at 61 ¶ 13 ("Enjoin Defendants to adjudicate first-time DACA applications from any applicant who can establish that they are eligible for DACA under the terms of the Napolitano Memorandum . . . and who files such application within a reasonable period of time following the date of decision in this case, notwithstanding any future efforts by Defendants to again terminate the program"); *id.* at 61 ¶¶ 11-12. Defendants have not fulfilled their obligations under this Court's prior order, which was entered to remedy the harms alleged in Plaintiffs' Fourth Amended Complaint. Thus, modification is necessary and appropriate to fully effectuate this Court's prior order and can be done so as to avoid any conflict with *Texas II*. Even if Plaintiffs were to amend their complaint, Plaintiffs would still face the same harms stemming from Defendants' failure to effectuate the terms of this Court's 2020 order and would still request the same relief. In other words, regardless of whether an amended complaint is filed, class members are entitled to complete relief by the terms of this Court's 2020 order.

Defendants' reliance on *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), to argue that the Court need not have done anything more than vacate the Wolf Memorandum, is also misplaced. Opp. at 7, 9-10. First, unlike in *Monsanto*, here the Court did not find that vacatur alone was "sufficient to redress [Plaintiffs'] injur[ies] . . . ." 561 U.S. at 166. Rather, the Court ordered that the full terms of the 2012 DACA Memorandum be reinstated and that Defendants clearly communicate as much to class members, ECF No. 354 at 4-5, steps which Defendants never previously argued were beyond the permissible scope of relief for Plaintiffs' claims. Second, Plaintiffs' request for relief is limited to remedies necessary to effectuate this Court's December

the present case, where the issue is effectuation of the Court's prior order. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011), is inapplicable because it analyzed injunctions that were challenged for being unconstitutionally vague and violating Federal Rule of Civil Procedure 65(d), *id.* at 143.

2020 order in light of changed factual circumstances. *Monsanto* does not preclude courts from modifying previous orders especially where, as here, "a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F.2d 31, 35 (2d Cir. 1969) (Friendly, J.). Accordingly, the Court should use its uncontested authority to modify its order.

## II. PLAINTIFFS' PROPOSED MODIFICATIONS DO NOT CONFLICT WITH THE *TEXAS II* ORDER.

This Court ordered the government to *accept* new DACA applications, and the *Texas II* order bars USCIS from *granting* those applications. Plaintiffs now move this Court to clarify the government's obligations in the space between the two orders, and in particular to order three forms of relief that avoid any conflict with the *Texas II* prohibition on *granting* new DACA applications. As representatives of a nationwide class that includes both current DACA recipients, who can renew under the *Texas II* order's stay, and DACA-eligible individuals who cannot currently access the program, Plaintiffs are well-situated to weigh any risk of a potential conflict. But more importantly, Defendants are simply incorrect that interim relief and the other measures requested by Plaintiffs would create a conflict—especially given Defendants' latitude in fashioning the details of any further relief to avoid a conflict with the *Texas II* order.[2]

### A. The Proposed Interim Relief Is Distinct from DACA.

As discussed in Plaintiffs' Motion, this Court should order Defendants to establish a program of interim relief. The Court could then invite Defendants to propose the specifics of an

[2] Should this Court be inclined to order further relief, Defendants "request that the Court first permit them to seek clarification in the Southern District of Texas as to whether providing the relief in question would violate that Court's injunction." Opp. at 23-24. This Court need not rely solely on the government lawyers to determine how best to avoid a conflicting injunction. *See, e.g.*, Transcript of Civil Cause for Status Conference at 30:2-3, *Batalla Vidal v. Baran*, No. 16 CV 4756 (NGG-JO) (Sept. 26, 2017) ("MAGISTRATE JUDGE ORENSTEIN: . . . We have been in touch with the court in California[]" regarding Judge Orenstein's attendance at Judge Alsup's hearing).

interim relief plan, subject to briefing by all parties and the Court's approval. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 510 (2011). This familiar approach to shaping an institutional remedy would afford the Court an opportunity to ensure no conflict arises with the *Texas II* order. Alternatively, the Court could refer the parties to mediation to develop the details of an interim relief program.[3] The Court should reject Defendants' arguments that concerns about privilege will necessarily frustrate mediation.

Defendants' objections notwithstanding, the temporary, non-renewable nature of the proposed interim relief differentiates it from DACA, and any interim protection would conclude upon final resolution of Pending First-Time Applications. Opp. at 15. Final resolution of the Pending First-Time Applications could happen at any time over the coming months via final rule, an appellate decision in the Texas litigation, or congressional action. If DACA were permanently ended, the government could revoke interim relief, while allowing work authorization for DACA recipients to remain valid until their individual expiration dates. *See* 8 C.F.R. § 274a.14(b)(2) (employment authorization under 8 C.F.R. § 274a.12(c) may be revoked if "any condition upon which it was granted has not been met or no longer exists").

Defendants also minimize ineligibility for advance parole as distinguishing interim relief from DACA. Opp. at 16. Yet, the *Texas II* court paid special attention to advance parole and grounded its ruling on the legality of DACA in part on the availability of advance parole. *See Texas v. United States*, 549 F. Supp. 3d 572, 612-14 (S.D. Tex. 2021). Excluding interim relief recipients from advance parole eligibility would be a major restriction on the scope and substance of such relief by precluding some recipients from adjusting their immigration status following an advance parole entry; it would thus mark a substantive departure from DACA.

[3] *See* Pl. States' Mot. at 8 ("The Court likewise should order defendants to explain in mediation any categories of interim relief that DHS has the authority to provide without running afoul of the *Texas* injunction.").

Defendants next argue that the U.S. government is unable to prevent interim relief recipients from accessing advance parole, Opp. at 16, but Defendants are incorrect. Applicants for advance parole must file "in accordance with the form instructions," 8 C.F.R. § 223.2(a), which include a list of classes of noncitizens who are eligible that is updated when new eligible classes are created.[4] For example, DACA recipients were added to the instructions as such a class on November 30, 2012.[5] Without inclusion in the form instructions, interim relief recipients would not have an expectation that they would be eligible to apply for advance parole.

Finally, Defendants argue that any exclusion from advance parole they could create for interim relief recipients would be subject to litigation. Opp. at 16. But potential litigation risk is not grounds for refusing to modify this Court's order and clarify its interaction with the *Texas II* order. There is litigation risk whether Defendants act or not. *See, e.g.*, ECF No. 254 at 5-6 (rejecting Defendants' litigation risk reasoning for decision to end the DACA program).[6]

### B. Processing Initial Applicants Up To, But Not Including, Adjudication Would Provide Meaningful Relief and Not Conflict with *Texas II.*

To give full effect to this Court's December 2020 order, in light of the changed conditions resulting from the interplay of this Court's order and the *Texas II* order, this Court should require Defendants to resume processing Pending First-Time Applications and requests for Employment Authorization Documents, up until the point of adjudication. *See* Pls.' Mot. at 12-14. This

---

[4] Form I-131, OMB No. 1615-0013, *Instructions for Application for Travel Document*, U.S. Citizenship & Immigr. Servs. (Apr. 24, 2019), https://www.uscis.gov/sites/default/files/document/forms/i-131instr.pdf; *see also* 8 C.F.R. § 103.2 ("The form's instructions are hereby incorporated into the regulations requiring its submission.").

[5] *See* Agency Information Collection Activities: Application for Travel Document, Form Number I–131, 77 Fed. Reg. 71287, 71432 (Nov. 30, 2012) ("USCIS is revising the form's instructions to include clear guidance regarding [DACA recipients'] ability to request advance parole documents under certain circumstances as provided under the memorandum issued by the Secretary of the Department of Homeland Security on June 15, 2012, and the implementation guidance that derives from it.").

[6] That the U.S. government decided to target DACA recipients as the only deferred action population carved out of the Affordable Care Act (ACA) is not a fair rationale for outright refusing to provide interim relief here. *But cf.* Opp. at 17. While Plaintiffs disagree with this exclusion of DACA recipients from the ACA, Defendants retain a similar power to exclude interim relief recipients.

Case 1:16-cv-04756-NGG-VMS Document 385-8 Filed 06/06/22 Page 12 of 13 PageID #: 13551

processing would move First-Time Applicants to a more advanced stage of adjudication should DACA be reopened for them in the future—an issue that has proven determinative as to whether class members received a grant of DACA between December 4, 2020 and July 16, 2021.

Defendants argue perfunctorily that the *Texas II* order "may be read" as preventing them from processing initial DACA requests, Opp. at 21, but the *Texas II* order by its terms bars a *grant* of DACA; it does not preclude other processing steps. *Id*.[7] Defendants next suggest that USCIS should not spend any resources on First-Time Applicants because USCIS is "for the indefinite future, powerless to grant" First-Time Applications and because the agency faces backlogs. Opp. at 21-22. Defendants unlawfully rescinded DACA in 2017, then unlawfully issued the Wolf Memorandum in 2020; in light of these actions, their weak policy objections do not justify a failure to process First-Time Applicants to the point of decision. Any administrative inconveniences to USCIS in processing Pending First-Time Applications are outweighed by the harm caused to those applicants by not processing their applications to the fullest extent possible.[8]

Finally, Defendants argue that processing would be futile because the agency would have to re-do such steps if DACA were reopened for initial applicants in the future. *Id*. But the validity period of background checks is a USCIS policy matter and not required by statute; Defendants have the authority to modify or update those requirements. Further, Plaintiffs' experiences show that having processing steps completed ahead of time makes a meaningful difference. For instance, class members who previously had their biometrics captured as part of other applications for immigration relief, such as Plaintiff M.B.F., did not have to appear for a second appointment and

---

[7] *See also* Pl. States' Mot. at 6 (noting that "there are at least two intermediate processing steps described in the *Batalla Vidal* plaintiffs' motion which do not appear to conflict with the *Texas* injunction") (citation omitted).

[8] *See* Pl. States' Mot. at 6 ("[T]he equities weigh sharply in favor of modifying the December 4, 2020, order to afford some form of relief to the 80,000 individuals who submitted first-time DACA applications in reliance on the Court's order and for whom the grant of DACA is currently forestalled.").

received faster adjudications of their initial DACA applications, Pls.' Mot. at 4.[9] Even if USCIS re-runs background checks periodically, the agency can do so from existing fingerprints, and the time saved from capturing biometrics is considerable. This difference in processing time determined whether class members received DACA before July 16, 2021, like M.B.F., or continue to await an adjudication, like Ms. Larios Sainz. *Id.* at 4-5, 18-19.

**C. Defendants Fail To Explain Why They Cannot Adjudicate Extended Renewal Applications.**

Finally, Defendants' only argument for not adjudicating Extended Renewal Applications is because of so-called "longstanding policy and practice," which Defendants admit was not in place after February 2018. Opp. at 20. Defendants justify their previous departures from "longstanding policy and practice" by pointing to language in this Court's and the Northern District of California's 2018 orders directing Defendants to maintain DACA except for individuals who "have never before" received DACA, *id.* (citing orders). But the *Texas II* order says nothing that contradicts this aspect of the 2018 orders; indeed, it explicitly allows for Defendants to adjudicate renewal applications "regardless of when [they] are submitted," *Texas v. United States*, No. 1:18-CV-00068, 2021 WL 3022434, at *2 (S.D. Tex. July 16, 2021), and credits the reliance interests of those like Extended Renewal Applicants who have previously held DACA. *See, e.g.*, *Texas*, 549 F. Supp. 3d at 624. Moreover, Defendants have provided no reasoning, legal or otherwise, as to why any practice of treating Extended Renewal Applicants as initial applicants is

[9] In another example, when the USCIS support centers that capture biometrics were closed due to the pandemic, USCIS used previously captured biometrics to expedite processing and deal with backlogs. *See USCIS to Continue Processing Applications for Employment Authorization Extension Requests Despite Application Support Center Closures*, U.S. Citizenship & Immigr. Servs. (Mar. 30, 2020), https://tinyurl.com/277ckbkv.

required.[10] For these reasons, Defendants should be ordered to adjudicate Extended Renewal Applications.

**CONCLUSION**

For the reasons discussed herein and in Plaintiffs' Motion, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Modification.

Respectfully submitted,

/s/ Michael J. Wishnie
Kevin Cheng, Law Student Intern
Aaron Bryce Lee, Law Student Intern
Daniel Ocampo, Law Student Intern
Aasha Shaik, Law Student Intern
Jennifer Sturman, Law Student Intern*
Medha Swaminathan, Law Student Intern
Chloe Truong-Jones, Law Student Intern*
Muneer I. Ahmad, Esq. (MA 9360)
Marisol Orihuela, Esq. (*pro hac vice*)
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SERVICES ORG.
P.O. Box 209090
New Haven, CT 06520
(203) 432-4800

Karen C. Tumlin, Esq. (*pro hac vice*)
Cooperating Attorney
JEROME N. FRANK LEGAL SERVICES ORG.
New Haven, CT 06520
(323) 316-0944

*Law student appearances forthcoming

Araceli Martínez-Olguín, Esq. (AM 2927)
Jessica R. Hanson, Esq. (*pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900

Paige Austin, Esq. (PA 9075)
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
(718) 418-7690

Jessica Young, Esq.
MAKE THE ROAD NEW YORK
9210 Roosevelt Avenue
Jackson Heights, NY 11372
(917) 821-0292

*Attorneys for Plaintiffs*

[10] Nor are Plaintiffs suggesting that USCIS must cease requiring additional evidence from Extended Renewal Applicants so long as those applications are adjudicated.