

**Count of Active DACA Recipients**
**By Country of Birth**
**As of Dec. 31, 2020**

**U.S. Citizenship and Immigration Services**

| Country of Birth | Count (rounded) | Country of Birth | Count (rounded) |
|---|---|---|---|
| Azerbaijan | 10 | Burma | D |
| Burundi | 10 | Cuba | D |
| Laos | 10 | Eritrea | D |
| Niger | 10 | Finland | D |
| Benin | 10 | French Polynesia | D |
| Croatia | 10 | Germany, West | D |
| Georgia | 10 | Malta | D |
| Oman | 10 | New Caledonia | D |
| USSR | 10 | Palestine | D |
| Belarus | 10 | Swaziland | D |
| Burkina Faso | 10 | Tajikistan | D |
| Kazakhstan | 10 | Not available | 230 |

**Note(s):**

1) The report reflects the most up-to-date estimate available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

3) This report reflects the number of individuals with DACA expiration on or after Dec. 31, 2020 as of Dec. 31, 2020.

4) Individuals who have obtained Lawful Permanent Resident status or U.S. citizenship are excluded.

5) Totals may not sum due to rounding.

6) Counts less than 10 are notated with the letter "D".

7) Country of birth reflects the country of birth reported on the form I-821D.

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
ELIS & C3 Consolidated, queried 01/2021, TRK 6801.

**Count of Active DACA Recipients**
**By State or Territory**
**As of Dec. 31, 2020**



U.S. Citizenship
and Immigration
Services

| State or Territory of Residence | Count (rounded) | State or Territory of Residence | Count (rounded) |
|---|---|---|---|
| Grand Total | 636,390 | Missouri | 2,950 |
| California | 181,660 | Nebraska | 2,870 |
| Texas | 104,820 | Idaho | 2,710 |
| Illinois | 33,740 | Kentucky | 2,670 |
| New York | 27,550 | Iowa | 2,420 |
| Florida | 24,530 | Louisiana | 1,690 |
| Arizona | 23,800 | Mississippi | 1,300 |
| North Carolina | 23,790 | Delaware | 1,290 |
| Georgia | 20,380 | Rhode Island | 880 |
| New Jersey | 16,110 | District Of Columbia | 600 |
| Washington | 16,020 | Wyoming | 500 |
| Colorado | 14,380 | Hawaii | 350 |
| Nevada | 12,030 | New Hampshire | 250 |
| Oregon | 9,590 | South Dakota | 200 |
| Virginia | 9,230 | North Dakota | 120 |
| Indiana | 8,800 | West Virginia | 100 |
| Utah | 8,440 | Montana | 70 |
| Maryland | 7,810 | Alaska | 70 |
| Tennessee | 7,570 | Puerto Rico | 70 |
| Wisconsin | 6,490 | Maine | 50 |
| Oklahoma | 6,010 | Virgin Islands | 40 |
| South Carolina | 5,660 | Vermont | 30 |
| New Mexico | 5,510 | Armed Forces Americas (except Canada) | 10 |
| Kansas | 5,410 | Guam | 10 |
| Massachusetts | 5,370 | Northern Mariana Islands | D |
| Michigan | 5,200 | American Samoa | D |
| Minnesota | 5,110 | Federated States Of Micronesia | D |
| Pennsylvania | 4,500 | Armed Forces Pacific | D |
| Arkansas | 4,400 | Marshall Islands | D |
| Alabama | 3,930 | Palau | D |
| Ohio | 3,810 | Not available | D |
| Connecticut | 3,510 | | |

**Note(s):**

1) The report reflects the most up-to-date estimate available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

3) This report reflects the number of individuals with DACA expiration on or after Dec. 31, 2020 as of Dec. 31, 2020.

4) Individuals who have obtained Lawful Permanent Resident status or U.S. citizenship are excluded.

5) Totals may not sum due to rounding.

6) Counts less than 10 are notated with the letter "D".

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality

ELIS & C3 Consolidated, queried 01/2021, TRK 6801.

Count of Active DACA Recipients
By Core Based Statistical Area
As of Dec. 31, 2020



**U.S. Citizenship and Immigration Services**

| Core-Based Statistical Area | Count (rounded) | Core-Based Statistical Area | Count (rounded) |
|---|---|---|---|
| Grand Total | 636,390 | Santa Maria-Santa Barbara, CA | 2,850 |
| Los Angeles-Long Beach-Anaheim, CA | 78,900 | Oklahoma City, OK | 2,770 |
| New York-Newark-Jersey City, NY-NJ-PA | 40,420 | Albuquerque, NM | 2,620 |
| Dallas-Fort Worth-Arlington, TX | 34,290 | Milwaukee-Waukesha-West Allis, WI | 2,620 |
| Chicago-Naperville-Elgin, IL-IN-WI | 32,180 | Orlando-Kissimmee-Sanford, FL | 2,610 |
| Houston-The Woodlands-Sugar Land, TX | 32,120 | Santa Rosa, CA | 2,380 |
| Riverside-San Bernardino-Ontario, CA | 22,790 | Detroit-Warren-Dearborn, MI | 2,280 |
| Phoenix-Mesa-Scottsdale, AZ | 20,740 | Baltimore-Columbia-Towson, MD | 2,170 |
| Atlanta-Sandy Springs-Roswell, GA | 14,410 | Winston-Salem, NC | 2,170 |
| San Francisco-Oakland-Hayward, CA | 13,290 | Brownsville-Harlingen, TX | 2,030 |
| Washington-Arlington-Alexandria, DC-VA-MD-WV | 11,830 | Salem, OR | 2,010 |
| San Diego-Carlsbad, CA | 10,330 | Yakima, WA | 1,950 |
| Las Vegas-Henderson-Paradise, NV | 9,630 | Greensboro-High Point, NC | 1,920 |
| Miami-Fort Lauderdale-West Palm Beach, FL | 9,430 | Merced, CA | 1,850 |
| Denver-Aurora-Lakewood, CO | 9,090 | Tulsa, OK | 1,820 |
| San Jose-Sunnyvale-Santa Clara, CA | 8,290 | Tucson, AZ | 1,810 |
| Seattle-Tacoma-Bellevue, WA | 7,210 | Kennewick-Richland, WA | 1,810 |
| Austin-Round Rock, TX | 7,180 | Memphis, TN-MS-AR | 1,800 |
| McAllen-Edinburg-Mission, TX | 6,850 | Columbus, OH | 1,790 |
| Sacramento--Roseville--Arden-Arcade, CA | 5,670 | Bridgeport-Stamford-Norwalk, CT | 1,760 |
| Charlotte-Concord-Gastonia, NC-SC | 5,650 | Durham-Chapel Hill, NC | 1,720 |
| Portland-Vancouver-Hillsboro, OR-WA | 5,630 | Provo-Orem, UT | 1,680 |
| San Antonio-New Braunfels, TX | 5,040 | Reno, NV | 1,670 |
| Bakersfield, CA | 4,890 | Fayetteville-Springdale-Rogers, AR-MO | 1,660 |
| Fresno, CA | 4,820 | El Paso, TX | 1,520 |
| Salt Lake City, UT | 4,420 | Vallejo-Fairfield, CA | 1,500 |
| Philadelphia-Camden-Wilmington, PA-NJ-DE-MD | 4,190 | North Port-Sarasota-Bradenton, FL | 1,480 |
| Boston-Cambridge-Newton, MA-NH | 4,090 | Omaha-Council Bluffs, NE-IA | 1,440 |
| Minneapolis-St. Paul-Bloomington, MN-WI | 4,030 | Cape Coral-Fort Myers, FL | 1,420 |
| Oxnard-Thousand Oaks-Ventura, CA | 3,790 | Grand Rapids-Wyoming, MI | 1,380 |
| Indianapolis-Carmel-Anderson, IN | 3,790 | Birmingham-Hoover, AL | 1,340 |
| Raleigh, NC | 3,610 | Greenville-Anderson-Mauldin, SC | 1,340 |
| Visalia-Porterville, CA | 3,410 | Gainesville, GA | 1,320 |
| Kansas City, MO-KS | 3,360 | Santa Cruz-Watsonville, CA | 1,280 |
| Stockton-Lodi, CA | 3,330 | Ogden-Clearfield, UT | 1,270 |
| Nashville-Davidson--Murfreesboro--Franklin, TN | 3,140 | Providence-Warwick, RI-MA | 1,210 |
| Tampa-St. Petersburg-Clearwater, FL | 3,090 | Laredo, TX | 1,200 |
| Modesto, CA | 2,910 | Lakeland-Winter Haven, FL | 1,200 |
| Salinas, CA | 2,870 | Wichita, KS | 1,190 |
| Boise City, ID | 1,160 | Louisville/Jefferson County, KY-IN | 1,010 |
| Elkhart-Goshen, IN | 1,140 | Other CBSA | 94,170 |
| Richmond, VA | 1,090 | Not available | 1,320 |
| Greeley, CO | 1,020 | Non CBSA | 13,950 |
| Des Moines-West Des Moines, IA | 1,020 | | |

**Note(s):**

1) The report reflects the most up-to-date estimate available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

3) This report reflects the number of individuals with DACA expiration on or after Dec. 31, 2020 as of Dec. 31, 2020.

4) Individuals who have obtained Lawful Permanent Resident status or U.S. citizenship are excluded.

5) Core-Based Statistical Areas (CBSA) at the time of most recent adjudication. CBSAs are defined by the Office of Management and Budget.

6) Totals may not sum due to rounding.

7) Counts less than 10 are notated with the letter "D".

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality

ELIS & C3 Consolidated, queried 01/2021, TRK 6801.

 

Count of Active DACA Recipients
By Gender
As of Dec. 31, 2020



U.S. Citizenship
and Immigration
Services

| Gender | Count (rounded) |
|--------|-----------------|
| Grand Total | 636,390 |
| Female | 339,600 |
| Male | 296,710 |
| Not available | 90 |

**Note(s):**

1) The report reflects the most up-to-date estimate available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

3) This report reflects the number of individuals with DACA expiration on or after Dec. 31, 2020 as of Dec. 31, 2020.

4) Individuals who have obtained Lawful Permanent Resident status or U.S. citizenship are excluded.

5) Totals may not sum due to rounding.

6) Counts less than 10 are notated with the letter "D".

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
ELIS & C3 Consolidated, queried 01/2021, TRK 6801.

AR2022_300696



Count of Active DACA Recipients
By Marital Status
As of December 31, 2020

U.S. Citizenship
and Immigration
Services

| Marital Status | Count (rounded) |
|---|---|
| Grand Total | 636,390 |
| Single | 464,300 |
| Married | 155,760 |
| Divorced | 11,360 |
| Widowed | 460 |
| Not available | 4,510 |

**Note(s):**

1) The report reflects the most up-to-date estimate available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

3) This report reflects the number of individuals with DACA expiration on or after Dec. 31, 2020 as of Dec. 31, 2020.

4) Individuals who have obtained Lawful Permanent Resident status or U.S. citizenship are excluded.

5) Marital status reflects the DACA recipient's marital status as of the most recent adjudication.

6) Totals may not sum due to rounding.

7) Counts less than 10 are notated with the letter "D".

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
ELIS & C3 Consolidated, queried 01/2021, TRK 6801.




**Count of Active DACA Recipients**
**By Age on December 31, 2020**
**As of December 31, 2020**

**U.S. Citizenship and Immigration Services**

| Age | Count (rounded) |
|---|---|
| Grand Total | 636,390 |
| Under 16 | 20 |
| 16-20 | 44,820 |
| 21-25 | 230,400 |
| 26-30 | 202,090 |
| 31-35 | 120,300 |
| 36-39 | 38,750 |
| Not available | D |
| Average Age | 27 |
| Median Age | 26 |
| Interquartile Range | 23 to 30 |

**Note(s):**

1) The report reflects the most up-to-date estimate available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

3) This report reflects the number of individuals with DACA expiration on or after Dec. 31, 2020 as of Dec. 31, 2020.

4) Individuals who have obtained Lawful Permanent Resident status or U.S. citizenship are excluded.

5) Totals may not sum due to rounding.

6) Counts less than 10 are notated with the letter "D".

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality

ELIS & C3 Consolidated, queried 01/2021, TRK 6801.

**DACA Requestors with an IDENT Response**

The following tables provide information on DACA requestors who received an IDENT[1] response. USCIS administrative data and IDENT data were analyzed to determine if a DACA requestor received an IDENT response, when the IDENT response occurred in relation to an approval or denial of the DACA request, and the number and types of offenses associated with an arrest or apprehension of a DACA requestor.  An IDENT response indicates that an individual, in this case a DACA requestor, was arrested or apprehended for a criminal offense or an immigration-related civil offense. These tables only analyze arrests and apprehensions, as not all IDENT responses include disposition of the arrest or apprehension such as conviction, acquittal, dismissal or lessening of charges.[2]  These tables present data on DACA requestors from 2012 to 2018.[3]

---

[1] The Automated Biometric Identification System (IDENT) is the central DHS-wide system for storage and processing of biometric and associated biographic information for national security; law enforcement; immigration and border management; intelligence; background investigations for national security positions and certain positions of public trust; and associated testing, training, management reporting, planning and analysis, or other administrative uses.  For the purposes of this analysis, IDENT provided electronic information from the requestor's Record of Arrest and Prosecutions (RAP) sheet, where one was available.

[2] Under long-standing DACA guidelines, not all convictions or arrests will necessarily result in a denial or termination, unless, as a matter of its discretion, USCIS determines that DACA is not warranted due to public safety, national security, or other discretionary factors on a case-by-case basis.  However, pursuant to the DACA guidelines, an individual may request consideration for DACA if, among other things, he or she has not been convicted of a felony, a significant misdemeanor, or three or more non-significant misdemeanors. Please see the DACA guidelines archived on the USCIS website at https://www.uscis.gov/archive/consideration-deferred-action-childhood-arrivals-daca.

[3] USCIS analyzed of data from the Computer Linked Application Information Management System (CLAIMS 3), Electronic Immigration System (ELIS), and Customer Profile Management Service (CPMS) databases. CPMS data are as of November 30, 2017; CLAIMS 3 and ELIS data are as of January 31, 2018 and February 1, 2018, respectively.

AR2022_300699

**Table 1: Number and Percent of Approved and Denied DACA Requestors with an Arrest**

| Number of Individual DACA Requestors | DACA Requestors Approved | | | DACA Requestors Denied | | |
|---|---|---|---|---|---|---|
| | Number of DACA Requestors Approved | Number of DACA Requestors Approved with an Arrest | Percent of DACA Requestors Approved with an Arrest | Number of DACA Requestors Denied | Number of DACA Requestors Denied with an Arrest | Percent of DACA Requestors Denied with an Arrest |
| 888,765 | 770,628 | 59,786 | 7.76% | 66,863 | 20,993 | 31.40% |

Source:  USCIS. Analysis of data from the Computer Linked Application Information Management System (CLAIMS 3), Electronic Immigration System (ELIS), and Customer Profile Management Service (CPMS) databases. CPMS data are as of November 30, 2017; CLAIMS 3 and ELIS data are as of January 31, 2018 and February 1, 2018, respectively.

*Notes:  "Arrests" includes apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, or their renewal request may have been denied. Approved DACA requestors include those whose most recent DACA case status, as of the date the systems were queried, was an approval which will include individuals whose DACA expired and who did not request renewal. The number of denied requestors includes those whose most recent DACA case status, as of the date the systems were queried, was a denial or a termination. The number of approved and denied requestors will not sum to the total number of individual DACA requestors because some cases have another case status not shown in this table, such as pending or administratively closed. An arrest indicates the individual was arrested or apprehended only and does not mean the individual was convicted of a crime. Further, individuals may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Errors may result from the mining of complex text files.*

AR2022_300700

**Table 2: Number and Percent of Approved and Denied DACA Requestors with Prior or Later Arrests** [a]

| Number of Individual DACA Requestors | Approved DACA Requestors | | | Denied DACA Requestors | | |
|---|---|---|---|---|---|---|
| | Number of DACA Requestors Approved with an Arrest | Number of DACA Requestors Approved with a Prior Arrest | Number of DACA Requestors Approved with a Later Arrest | Number of DACA Requestors Denied with an Arrest | Number of DACA Requestors Denied with a Prior Arrest | Number of DACA Requestors Denied with a Later Arrest |
| 888,765 | 59,786 | 53,792 | 7,814 | 20,993 | 20,694 | 1,010 |

Source:  USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CPMS data are as of Nov. 30, 2017; CLAIMS 3 and ELIS data are as of Jan. 31, 2018 and Feb.1, 2018, respectively.

*Notes:  "Arrests" includes apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approval or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, or their renewal request may have been denied. The number of approved DACA requestors includes those whose most recent DACA case status, as of the date the systems were queried, was an approval, which will include individuals whose DACA expired and who did not request renewal. The number of denied requestors includes those whose most recent DACA case status, as of the date the systems were queried, was a denial or a termination. The number of approved and denied requestors will not sum to the total number of individual DACA requestors because some cases have another case status not shown in this table such as pending or administratively closed. The number of requestors with a prior arrest and a later arrest do not sum to the total with an arrest because some individuals have had an arrest both before and after an approval or denial.*

[a] *An arrest before an approval or denial compares the earliest arrest date to the latest approval or denial date. An arrest after an approval or denial compares the latest arrest date to the latest approval or denial date.*

*Since 2012, about one percent of approved DACA requestors have an arrest in any given year. An arrest indicates the individual was arrested or apprehended only and does not mean the individual was convicted of a crime. Further, individuals may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Errors may result from the mining of complex text files.*

**Table 3: Approved DACA Requestors with a Prior Arrest, by Type of Offense**

| Type of Offense | Number of DACA Requestors Approved with a Prior Arrest | Percent of DACA Requestors Approved with a Prior Arrest |
|---|---|---|
| Driving-related (excl. DUI) | 20,926 | 38.90% |
| Immigration-related (incl. civil and criminal offenses) | 11,861 | 22.05% |
| Theft, larceny, etc. | 6,629 | 12.32% |
| Drug-related (excl. DUI) | 4,611 | 8.57% |
| Obstruction, fabrication, false claim, etc. | 2,576 | 4.79% |
| Battery | 2,503 | 4.65% |
| Driving under the influence | 2,378 | 4.42% |
| Assault | 2,007 | 3.73% |
| Disorderly conduct | 1,667 | 3.10% |
| Vandalism | 1,558 | 2.90% |
| Liquor-related (excl. DUI) | 1,490 | 2.77% |
| Failure to appear (incl. civil and criminal offenses) | 1,303 | 2.42% |
| Burglary | 1,173 | 2.18% |
| Trespass, unlawful entry, etc. | 1,007 | 1.87% |
| Weapon-related | 979 | 1.82% |
| Resisting/interfering/evading police, etc. | 977 | 1.82% |
| Offenses against family and children | 816 | 1.52% |
| Fraud, money-laundering, corruption, etc. | 713 | 1.33% |
| Contempt, bench warrant, bail, etc. | 702 | 1.31% |
| Undefined threats, attempted crime/conspiracy, etc. | 629 | 1.17% |
| Forgery, counterfeiting, etc. | 615 | 1.14% |
| Undefined juvenile | 561 | 1.04% |
| Undefined ordinance | 497 | 0.92% |
| Stolen property | 454 | 0.84% |
| Hit and Run | 425 | 0.79% |
| Illegal sex-related acts | 308 | 0.57% |
| Probation/parole/curfew violation, etc. | 290 | 0.54% |
| Fail to comply/obey, etc. | 226 | 0.42% |
| Robbery | 187 | 0.35% |
| Sexual abuse, statutory rape, etc. | 174 | 0.32% |
| Indecent exposure, lewd/lascivious acts, etc. | 160 | 0.30% |
| Contributing to the delinquency of a minor | 157 | 0.29% |
| Harassment, restraining order violation, etc. | 140 | 0.26% |
| Reckless conduct/endangerment, etc. | 119 | 0.22% |
| Loitering | 115 | 0.21% |
| Embezzlement | 95 | 0.18% |
| Kidnapping, trafficking, false imprisonment | 95 | 0.18% |

AR2022_300702

| Type of Offense | Number of DACA Requestors Approved with a Prior Arrest | Percent of DACA Requestors Approved with a Prior Arrest |
|---|---:|---:|
| Riot, unlawful assembly, etc. | 66 | 0.12% |
| Accessory, accomplice, hindering, etc. | 43 | 0.08% |
| Motor vehicle theft | 40 | 0.07% |
| Organized criminal activity | 38 | 0.07% |
| Rape | 31 | 0.06% |
| Gambling | 30 | 0.06% |
| Arson | 23 | 0.04% |
| Cruelty to Animals / Dog Fighting | 22 | 0.04% |
| Gang | 15 | 0.03% |
| Murder | 10 | 0.02% |
| Child pornography | 2 | 0.00% |
| Manslaughter / negligent homicide | 1 | 0.00% |
| *Total Number of DACA Requestors Approved with a Prior Arrest* | 53,792 [(a)] | -- [(b)] |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CPMS data are as of Nov. 30, 2017; CLAIMS 3 and ELIS data are as of Jan. 31, 2018 and Feb.1, 2018, respectively.

*Notes: This table summarizes offenses for those DACA requestors approved with a prior arrest (53,792) as of the date of the system queries. This table only includes offenses where the arrest date is prior to the date of the individual's most recent DACA approval as of the system query date. The number of approved DACA requestors includes those whose most recent DACA case status, as of the date the systems were queried, was an approval, which will include individuals whose DACA expired and who did not request renewal.*

[(a)] *53,792 is the total number of approved DACA requestors with a prior arrest, not the sum of offenses (71,444). An individual is counted in more than one offense type if he or she was arrested for multiple offenses. Because some requestors were arrested for more than one offense, the total number of offenses is higher than the number of individuals. Where an individual was arrested for multiple counts within one of the offense categories in the table, then only one count for that category is included per individual. As such, the total number of individual alleged offenses may be higher than 71,444.*

[(b)] *Percentages are calculated by dividing the value in each offense type row by 53,792. The percentages do not sum to 100 because some individuals have been arrested for multiple offenses.*

*There were no specific offenses extracted from some individuals' IDENT reports (3,281 individuals) due to limitations in the data. Some offenses were extracted from the IDENT report but not clearly defined (3,297 individuals), though these individuals may have other offenses reflected in the table.*

*Offenses were categorized based, to the extent possible, on FBI guidelines. Offense type categories include attempted crimes of that type (e.g., attempted rape is categorized in the "Rape" offense type), except for murder. Attempted murder is categorized in the "Assault" offense type. "Driving-related (excl. DUI)" offenses include driving without a valid license, moving and non-moving violations, and speeding, among others. "Immigration-related" offenses include visa overstays, immigration holds, and removal and deportation proceedings, among others. An arrest indicates the individual was arrested or apprehended only and does not mean the individual was convicted of a crime. Further, individuals may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Errors may result from the mining of complex text files.*

AR2022_300703

**Table 4: Number and Percent of DACA Requestors Approved or Denied, by Number of Arrests**

| Number of Arrests or Apprehensions | Number of Individual DACA Requestors | Number of DACA Requestors Approved | Percent of DACA Requestors Approved | Number of DACA Requestors Denied | Percent of DACA Requestors Denied |
|---|---|---|---|---|---|
| 0 | 797,297 | 710,842 | 89.2% | 45,870 | 5.8% |
| 1 | 60,286 | 42,707 | 70.8% | 10,542 | 17.5% |
| More than 1 | 31,182 | 17,079 | 54.8% | 10,451 | 33.5% |

Source:  USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CPMS data are as of Nov. 30, 2017; CLAIMS 3 and ELIS data are as of Jan. 31, 2018 and Feb.1, 2018, respectively.

*Notes:  "Arrests" includes apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients as some recipients may have obtained lawful immigration status, failed to request renewal, or their renewal request may have been denied. Approved DACA requestors include those whose most recent DACA case status, as of the date the systems were queried, was an approval, which will include individuals whose DACA expired and who did not request renewal. The number of denied requestors includes those whose most recent DACA case status, as of the date the systems were queried, was a denial or a termination. The number of approved and denied requestors will not sum to the total number of individual DACA requestors because some cases have another DACA case status not shown in this table such as pending or administratively closed. An arrest indicates the individual was arrested or apprehended only and does not mean the individual was convicted of a crime. Further, individuals may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Errors may result from the mining of complex text files.*

**Table 4a: Number and Percent of DACA Requestors Approved and Denied, by Number of Arrests (detailed)**

| Number of Arrests | Number of Individual DACA Requestors | Number of DACA Requestors Approved | Percent of DACA Requestors Approved | Number of DACA Requestors Denied | Percent of DACA Requestors Denied |
|---|---|---|---|---|---|
| 0 | 797,297 | 710,842 | 89.2% | 45,870 | 5.8% |
| 1 | 60,286 | 42,707 | 70.8% | 10,542 | 17.5% |
| 2 | 18,025 | 10,803 | 59.9% | 5,022 | 27.9% |
| 3 | 6,956 | 3,598 | 51.7% | 2,559 | 36.8% |
| 4 | 2,996 | 1,420 | 47.4% | 1,250 | 41.7% |
| 5 | 1,459 | 639 | 43.8% | 679 | 46.5% |
| 6 | 774 | 292 | 37.7% | 404 | 52.2% |
| 7 | 386 | 147 | 38.1% | 196 | 50.8% |
| 8 | 230 | 76 | 33.0% | 116 | 50.4% |
| 9 | 157 | 53 | 33.8% | 88 | 56.1% |
| 10 | 71 | 27 | 38.0% | 38 | 53.5% |
| More than 10 | 128 | 24 | 18.8% | 99 | 77.3% |

Source:  USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CPMS data are as of Nov. 30, 2017; CLAIMS 3 and ELIS data are as of Jan. 31, 2018 and Feb.1, 2018, respectively.

*Notes: "Arrests" includes apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, or their renewal request may have been denied. Approved DACA requestors include those whose most recent DACA case status, as of the date the systems were queried, was an approval, which will include individuals whose DACA expired and who did not request renewal. The number of denied requestors includes those whose most recent DACA case status as of the date the systems were queried was a denial or a termination. The number of approved and denied requestors will not sum to the total number of individual DACA requestors because some cases have another DACA case status not shown in this table such as pending or administratively closed. An arrest indicates the individual was arrested or apprehended only and does not mean the individual was convicted of a crime. Further, individuals may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges.  Errors may result from the mining of complex text files.*

AR2022_300705



# DACA Requestors with an IDENT Response

November 2019 Update



U.S. Citizenship and
Immigration Services

**Office of Policy & Strategy | Research & Evaluation Division**

AR2022_300706

# DACA Requestors with an IDENT Response  (2019 Update)

## Introduction

The following tables provide information on DACA requestors from 2012 to October 2019 who received an IDENT[1] response.[2] USCIS administrative data and IDENT data were analyzed to determine:

- if a DACA requestor received an IDENT response;
- when the IDENT response occurred in relation to an approval or denial of the DACA request;
- the types of offenses associated with an arrest or apprehension of a DACA requestor;
- the age group of a DACA requestor at the time of arrest;
- the region and country of birth of arrested DACA requestors;
- the last known state of residence of arrested DACA requestors; and
- the state where the arrest of DACA requestors occurred.

An IDENT response indicates that an alien, in this case a DACA requestor, was arrested or apprehended for a criminal offense or an immigration-related civil offense. These tables only analyze arrests and apprehensions, as not all IDENT responses include disposition of the arrest or apprehension such as conviction, acquittal, dismissal or lessening of charges.[3]  These tables provide updates to the previous *DACA Requestors with an IDENT Response* report published on June 5, 2018.[4] However, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. New tables and maps are added to provide additional information where possible.

---

[1] The Automated Biometric Identification System (IDENT) is the central DHS-wide system for storage and processing of biometric and associated biographic information for national security; law enforcement; immigration and border management; intelligence; background investigations for national security positions and certain positions of public trust; and associated testing, training, management reporting, planning and analysis, or other administrative uses. For the purposes of this analysis, IDENT provided electronic information from the requestor's Record of Arrest and Prosecutions (RAP) sheet, where one was available.

[2] USCIS analyzed of data from the Computer Linked Application Information Management System (CLAIMS 3), Electronic Immigration System (ELIS), and Customer Profile Management Service (CPMS) databases. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

[3] Under long-standing DACA guidelines, not all convictions or arrests will necessarily result in a denial or termination, unless, as a matter of its discretion, USCIS determines that DACA is not warranted due to public safety, national security, or other discretionary factors on a case-by-case basis. However, pursuant to the DACA guidelines, an alien may request consideration for DACA if, among other things, he or she has not been convicted of a felony, a significant misdemeanor, or three or more non-significant misdemeanors. Please see the DACA guidelines archived on the USCIS website at https://www.uscis.gov/archive/consideration-deferred-action-childhood-arrivals-daca.

[4] For more information, see *DACA Requestors with an IDENT Response, 2018*: https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/DATA_DACA_CRIM.PDF.

AR2022_300707

# TABLE OF CONTENTS

DACA Requestors with an IDENT Response ............................................................................ ii

    Introduction ..................................................................................................................ii

Approved and Denied/Terminated DACA Requestors with an Arrest ........................................... 1

    Table 1: Number and Percent of Approved and Denied/Terminated DACA Requestors with an Arrest ......................1

Approved and Denied/Terminated DACA Requestors with Prior or Later Arrests ........................ 2

    Table 2: Number and Percent of Approved and Denied/Terminated DACA Requestors with Prior or Later Arrests [a] .2

Approved and Denied/Terminated DACA Requestors by Types of Charges.................................. 3

    Table 3: Types of Charges Incurred by Approved and Denied/Terminated DACA Requestors ....................................3

DACA Requestors Approved or Denied/Terminated, by Number of Arrests ................................. 5

    Table 4: Number and Percent of DACA Requestors Approved or Denied/Terminated, by Number of Arrests ............5

    Table 5: Number and Percent of DACA Requestors Approved and Denied/Terminated, by Number of Arrests (detailed)............................................................................................................................6

DACA Requestors Arrested by Age Group at Time of Arrest ...................................................... 7

    Table 6: Number of DACA Requestors Arrested by Age Group at Time of Arrest.........................................................7

DACA Requestors Arrested by Region and Country of Birth ...................................................... 8

    Table 7: Number of DACA Requestors Arrested by Region of Birth ...........................................................................8

    Table 8: Number of DACA Requestors Arrested by Country of Birth...........................................................................9

DACA Requestors Arrested by Last Known State of Residence................................................. 11

    Figure 1: Number of DACA Requestors Arrested by Last Known State of Residence ...................................................11

DACA Requestors Arrested by State of Arrest.......................................................................112

    Figure 2: Number of DACA Requestors Arrested by State of Arrest ..........................................................................12

AR2022_300708

# Approved and Denied/Terminated DACA Requestors with an Arrest

## Table 1: Number and Percent of Approved and Denied/Terminated DACA Requestors with an Arrest

| Number of Individual DACA Requestors | DACA Requestors Approved | | | DACA Requestors Denied/Terminated | | |
|---|---|---|---|---|---|---|
| | Number of DACA Requestors Approved | Number of DACA Requestors Approved with an Arrest | Percent of DACA Requestors Approved with an Arrest | Number of DACA Requestors Denied or Terminated | Number of DACA Requestors Denied or Terminated with an Arrest | Percent of DACA Requestors Denied or Terminated with an Arrest |
| 888,818 | 765,166 | 79,398 | 10.38% | 77,833 | 30,132 | 38.71% |

Source: USCIS. Analysis of data from the Computer Linked Application Information Management System (CLAIMS 3), Electronic Immigration System (ELIS), and Customer Profile Management Service (CPMS) databases. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: "Arrests" include apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, have had their renewal request denied, or may have had their DACA terminated. The number of approved DACA requestors includes those whose most recent DACA case status, as of the date the systems were queried, was an approval which will include aliens whose DACA expired and who did not request renewal. The number of denied/terminated requestors includes those whose most recent DACA case status, as of the date the systems were queried, was a denial/termination. The number of approved and denied/terminated requestors will not sum to the total number of individual DACA requestors because cases in a pending status are not shown in this table.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. Errors may result from the mining of complex text files.*

DACA Requestors with an IDENT Response

# Approved and Denied/Terminated DACA Requestors with Prior or Later Arrests

## Table 2: Number of Approved and Denied/Terminated DACA Requestors with Prior or Later Arrests [a]

| Number of Individual DACA Requestors | DACA Requestors Approved | | | DACA Requestors Denied/Terminated | | |
|---|---|---|---|---|---|---|
| | Number of DACA Requestors Approved with an Arrest | Number of DACA Requestors Approved with a Prior Arrest | Number of DACA Requestors Approved with a Later Arrest | Number of DACA Requestors Denied with an Arrest | Number of DACA Requestors Denied or Terminated with a Prior Arrest | Number of DACA Requestors Denied or Terminated with a Later Arrest |
| 888,818 | 79,398 | 67,861 | 15,903 | 30,132 | 28,093 | 5,017 |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: "Arrests" include apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approval or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, have had their renewal request denied, or may have had their DACA terminated. The number of approved DACA requestors includes those whose most recent DACA case status, as of the date the systems were queried, was an approval, which will include aliens whose DACA expired and who did not request renewal. The number of denied/terminated requestors includes those whose most recent DACA case status, as of the date the systems were queried, was a denial/termination. The number of approved and denied/terminated requestors will not sum to the total number of individual DACA requestors because some cases have another case status not shown in this table such as pending or administratively closed.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. Errors may result from the mining of complex text files.*

*[a] An arrest before an approval or denial compares the earliest arrest date to the latest approval or denial date. An arrest after an approval or denial compares the latest arrest date to the latest approval or denial date. The number of requestors with a prior arrest and a later arrest do not sum to the total with an arrest because some aliens have had an arrest both before and after an approval or denial. Since 2012, about one percent of approved DACA requestors have an arrest in any given year.*

AR2022_300710

# Approved and Denied/Terminated DACA Requestors by Types of Charges

## Table 3: Types of Offenses Incurred by Approved and Denied/Terminated DACA Requestors

| Type of Offense | Number of DACA Requestors Approved with a Prior Arrest[a] | Number of DACA Requestors Denied or Terminated with a Prior Arrest[a] |
|---|---|---|
| Driving-related (excl. DUI) | 25,305 | 10,160 |
| Immigration-related (incl. civil and criminal offenses) | 12,968 | 10,063 |
| Theft, larceny, etc. | 7,926 | 2,720 |
| Drug-related (excl. DUI) | 6,892 | 3,752 |
| Driving under the influence | 4,210 | 4,459 |
| Battery | 3,421 | 1,841 |
| Assault | 3,308 | 2,254 |
| Obstruction, fabrication, false claim, etc. | 3,053 | 1,708 |
| Disorderly conduct | 2,223 | 1,129 |
| Contempt, bench warrant, bail, etc. | 2,112 | 1,335 |
| Liquor-related (excl. DUI) | 2,094 | 1,102 |
| Vandalism | 1,956 | 1,112 |
| Failure to appear (incl. civil and criminal offenses) | 1,816 | 1,064 |
| Burglary, breaking and entering, etc. | 1,471 | 1,145 |
| Trespass, unlawful entry, etc. | 1,410 | 693 |
| Offenses against family and children | 1,360 | 902 |
| Resisting/interfering/evading police, etc. | 1,278 | 885 |
| Weapon-related | 974 | 849 |
| Fraud, money-laundering, corruption, etc. | 869 | 566 |
| Undefined threats, attempted crime/conspiracy, etc. | 810 | 581 |
| Forgery, counterfeiting, etc. | 712 | 379 |
| Undefined juvenile offense | 631 | 217 |
| Stolen property | 616 | 438 |
| Undefined ordinance | 596 | 252 |
| Hit and Run | 587 | 382 |
| Probation/parole violation, remanded, etc. | 445 | 478 |
| Other illegal sex-related acts | 428 | 203 |
| Robbery | 269 | 361 |
| Fail to comply/obey, etc. | 267 | 208 |
| Sexual abuse, statutory rape, etc. | 259 | 332 |
| Contributing to the delinquency of a minor | 243 | 135 |
| Harassment, restraining order violation, etc. | 243 | 149 |
| Indecent exposure, lewd/lascivious acts, etc. | 227 | 227 |
| Reckless conduct/endangerment, etc. | 188 | 120 |
| Kidnapping, trafficking, false imprisonment | 173 | 205 |
| Embezzlement | 154 | 45 |
| Loitering, vagrant, etc. | 143 | 90 |

| | | |
|---|---:|---:|
| Riot, unlawful assembly, etc. | 73 | 55 |
| Motor vehicle theft | 71 | 56 |
| Accessory, accomplice, hindering, etc. | 66 | 45 |
| Rape | 62 | 98 |
| Organized criminal activity | 45 | 30 |
| Curfew violation | 43 | 13 |
| Gambling | 33 | 7 |
| Cruelty to animals | 31 | 10 |
| Arson | 24 | 38 |
| Murder | 15 | 50 |
| Street gang | 15 | 92 |
| Smuggling | 13 | 7 |
| Bribery, influence public servant, etc. | 10 | 7 |
| Manslaughter, negligent/reckless homicide, etc. | 5 | 14 |
| Child pornography | 2 | 11 |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: Offenses were categorized based, to the extent possible, on FBI guidelines: https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/cius-2016. Offense type categories include attempted crimes of that type (e.g., attempted rape is categorized in the "Rape" offense type), except for murder. Attempted murder is categorized in the "Assault" offense type. "Driving-related (excl. DUI)" offenses include driving without a valid license, moving and non-moving violations, and speeding, among others. "Immigration-related" offenses include visa overstays, immigration holds, and removal and deportation proceedings, among others. There were no specific offenses extracted from some aliens' IDENT reports due to limitations in the data. Some offenses were extracted from the IDENT report but not clearly defined, though these aliens may have other offenses reflected in the table.*

*(a) Total number of charges in this table will NOT equal the sum of all arrests or apprehensions (202,025) or the number of DACA requestors with an arrest (118,371). Requestors can incur multiple charges in different categories and/or multiple charges in the same category. When a requestor incurs multiple charges for the same offense (e.g., three traffic violations), that offense (e.g., traffic violation) is only counted once.*

*"Arrests" include apprehensions. Approved or denied/terminated DACA requestors with a prior arrest includes those whose most recent DACA case status was approved or denied/terminated, whose earliest arrest date precedes the most recent approval or denial/termination. Approved DACA requestors will include aliens whose DACA expired and who did not request renewal.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. Errors may result from the mining of complex text files.*

# DACA Requestors Approved or Denied/Terminated, by Number of Arrests

### Table 4: Number and Percent of DACA Requestors Approved or Denied/Terminated, by Number of Arrests

| Number of Arrests or Apprehensions | Number of Individual DACA Requestors | Number of DACA Requestors Approved | Percent of DACA Requestors Approved | Number of DACA Requestors Denied or Terminated | Percent of DACA Requestors Denied or Terminated |
|---|---|---|---|---|---|
| 0 | 770,503 | 685,768 | 89.00% | 47,701 | 6.19% |
| 1 | 74,653 | 54,500 | 73.00% | 14,094 | 18.88% |
| More than 1 | 43,662 | 24,898 | 57.02% | 16,038 | 36.73% |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: "Arrests" include apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, have had their renewal request denied, or may have had their DACA terminated. The number of approved DACA requestors includes those whose most recent DACA case status, as of the date the systems were queried, was an approval which will include aliens whose DACA expired and who did not request renewal. The number of denied/terminated requestors includes those whose most recent DACA case status, as of the date the systems were queried, was a denial/ termination. The number of approved and denied/terminated requestors will not sum to the total number of individual DACA requestors because some cases have another case status not shown in this table, such as pending or administratively closed.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. Errors may result from the mining of complex text files.*

**Table 5: Number and Percent of DACA Requestors Approved and Denied/Terminated, by Number of Arrests (detailed)**

| Number[a] of Arrests or Apprehensions | Number of Individual DACA Requestors | Number of DACA Requestors Approved | Percent of DACA Requestors Approved | Number of DACA Requestors Denied or Terminated | Percent of DACA Requestors Denied or Terminated |
|---|---|---|---|---|---|
| 0 | 770,503 | 685,768 | 89.00% | 47,701 | 6.19% |
| 1 | 74,653 | 54,500 | 73.00% | 14,094 | 18.88% |
| 2 | 24,640 | 15,482 | 62.83% | 7,408 | 30.06% |
| 3 | 9,799 | 5,279 | 53.87% | 3,942 | 40.23% |
| 4 | 4,411 | 2,148 | 48.70% | 2,044 | 46.34% |
| 5 | 2,121 | 963 | 45.40% | 1,067 | 50.31% |
| 6 | 1,104 | 456 | 41.30% | 609 | 55.16% |
| 7 | 643 | 260 | 40.44% | 365 | 56.77% |
| 8 | 360 | 134 | 37.22% | 212 | 58.89% |
| 9 | 238 | 81 | 34.03% | 149 | 62.61% |
| 10 | 128 | 41 | 32.03% | 83 | 64.84% |
| More than 10 | 218 | 54 | 24.77% | 159 | 72.94% |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: "Arrests" include apprehensions. The number of individual DACA requestors is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, have had their renewal request denied, or may have had their DACA terminated. The number of approved DACA requestors includes those whose most recent DACA case status, as of the date the systems were queried, was an approval which will include aliens whose DACA expired and who did not request renewal. The number of denied requestors includes those whose most recent DACA case status, as of the date the systems were queried, was a denial or a termination. The number of approved and denied/terminated requestors will not sum to the total number of individual DACA requestors because some cases have another case status not shown in this table, such as pending or administratively closed.*

*[a]Number of arrests or apprehensions can have multiple charges per arrest.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. Errors may result from the mining of complex text files.*

AR2022_300714

# DACA Requestors Arrested by Age Group at Time of Arrest

### Table 6: Number of DACA Requestors Arrested by Age Group at Time of Arrest

| Age Group of DACA Requestors at Time of Arrest[a] | Number of Arrests or Apprehensions |
|---|---|
| Total | 202,025 |
| 14 and under | 5,076 |
| 15-18 | 42,377 |
| 19-22 | 87,059 |
| 23-26 | 46,147 |
| 27-30 | 16,872 |
| 31-34 | 3,967 |
| 35 and over | 387 |
| Unknown | 140 |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

Notes: "Arrests" include apprehensions. The number of arrests or apprehensions reflects (by age group at the time of arrest) the number of arrests and apprehensions involving DACA requestors whose most recent DACA case status, as of the date the systems were queried, was an approval, denial, termination, or pending. It does not include arrests or apprehensions involving DACA requestors whose case status was administratively close on the date the systems were queried. The number of approved DACA requestors include aliens whose DACA expired and who did not request renewal.

[a] DACA requestors with multiple arrests may fall into multiple age groups (e.g. if a DACA requestor was arrested at age 17 and then again at 20, the first arrest would fall into the "15-18" age group and the latter would fall into the "19-22" age group).

An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. Errors may result from the mining of complex text files.

# DACA Requestors Arrested by Region and Country of Birth

## Table 7: Number of Individual DACA Requestors Arrested by Region of Birth

| DACA Requestor Region of Birth[a] | Number of Individual DACA Requestors Arrested or Apprehended |
|---|---|
| Total | 118,371 |
| North America | 107,669 |
| South America | 5,776 |
| Asia | 2,350 |
| Africa | 1,100 |
| Europe | 977 |
| Oceania | 88 |
| Unknown | 411 |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: "Arrests" include apprehensions. The number of individual DACA requestors arrested or apprehended is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, have had their renewal request denied, or may have had their DACA terminated. The number of individual DACA requestors arrested or apprehended reflects (by age group at the time of arrest) the number of arrests and apprehensions involving DACA requestors whose most recent DACA case status, as of the date the systems were queried, was an approval, denial, termination, or pending. It does not include arrests or apprehensions involving DACA requestors whose case status was administratively close on the date the systems were queried. The number of approved DACA requestors include aliens whose DACA expired and who did not request renewal.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series.  Errors may result from the mining of complex text files.*

*[a] Regions, countries, and territories are grouped according to the CIA World Factbook: https://www.cia.gov/library/publications/the-world-factbook/index.html.*

AR2022_300716

DACA Requestors with an IDENT Response

## Table 8: Number of Individual DACA Requestors Arrested by Country of Birth

| DACA Requestor Country of Birth[a] | Number of Individual DACA Requestors Arrested or Apprehended | DACA Requestor Country of Birth[a] | Number of Individual DACA Requestors Arrested or Apprehended |
|---|---|---|---|
| **Total** | **118,371** | Ghana | 65 |
| Mexico | 91,272 | Albania | 64 |
| El Salvador | 4,998 | Liberia | 55 |
| Honduras | 4,597 | Egypt | 53 |
| Guatemala | 4,304 | Armenia | 52 |
| Brazil | 1,064 | Guinea | 49 |
| Peru | 1,015 | Italy | 48 |
| Ecuador | 948 | Portugal | 48 |
| Colombia | 942 | Morocco | 47 |
| Korea, South | 586 | Russia | 43 |
| Jamaica | 572 | Zimbabwe | 43 |
| Argentina | 500 | Zambia | 42 |
| Venezuela | 446 | South Africa | 40 |
| Dominican Republic | 369 | France | 37 |
| India | 354 | Gambia | 37 |
| Nicaragua | 296 | Sierra Leone | 35 |
| Philippines | 293 | Ukraine | 35 |
| Bolivia | 282 | Germany | 34 |
| Costa Rica | 266 | Lithuania | 34 |
| Trinidad and Tobago | 250 | Saint Lucia | 34 |
| Pakistan | 242 | Senegal | 33 |
| Poland | 236 | Turkey | 33 |
| Uruguay | 235 | Saudi Arabia | 32 |
| Chile | 209 | Lebanon | 31 |
| Nigeria | 209 | Cote d'Ivoire | 27 |
| Kenya | 182 | Cameroon | 26 |
| Haiti | 135 | Czechia | 26 |
| United Kingdom | 133 | Netherlands | 26 |
| Belize | 132 | Romania | 25 |
| Bahamas | 122 | Thailand | 24 |
| Canada | 110 | Dominica | 22 |
| Mongolia | 100 | Fiji | 22 |
| Guyana | 96 | Serbia and Montenegro (former) | 22 |
| Indonesia | 95 | United Arab Emirates | 22 |
| China, People's Republic | 92 | Mali | 21 |
| Jordan | 77 | New Zealand | 21 |
| Bangladesh | 76 | Taiwan | 21 |
| Panama | 74 | All Others | 602 |
| Israel | 67 | Unknown | 464 |

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

AR2022_300717

DACA Requestors with an IDENT Response

*Notes: "Arrests" include apprehensions. The number of individual DACA requestors arrested or apprehended is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, have had their renewal request denied, or may have had their DACA terminated. The number of individual DACA requestors arrested or apprehended reflects the number of arrests and apprehensions involving DACA requestors whose most recent DACA case status, as of the date the systems were queried, was an approval, denial, termination, or pending. It does not include arrests or apprehensions involving DACA requestors whose case status was administratively close on the date the systems were queried. The number of approved DACA requestors include aliens whose DACA expired and who did not request renewal.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series.  Errors may result from the mining of complex text files.*

*(a)Countries, and territories are grouped according to the CIA World Factbook: https://www.cia.gov/library/publications/the-world-factbook/index.html.*

**AR2022_300718**

DACA Requestors with an IDENT Response

# DACA Requestors Arrested by Last Known State of Residence

**Figure 1: Number of Individual DACA Requestors Arrested by Last Known State of Residence**



Number of Individual
DACA Requestors Arrested

- under 1,000
- 1,001 - 2,500
- 2,501 - 10,000
- 10,000 and above

Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: "Arrests" include apprehensions. The number of Individual DACA requestors arrested is the number of unique Alien Numbers associated with DACA requests and does not represent the number of receipts, current approvals, or the number of current DACA recipients, as some recipients may have obtained lawful immigration status, failed to request renewal, have had their renewal request denied, or may have had their DACA terminated. The number of individual DACA requestors arrested or apprehended reflects (by age group at the time of arrest) the number of arrests and apprehensions involving DACA requestors whose most recent DACA case status, as of the date the systems were queried, was an approval, denial, termination, or pending. It does not include arrests or apprehensions involving DACA requestors whose case status was administratively close on the date the systems were queried. The number of approved DACA requestors include aliens whose DACA expired and who did not request renewal.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series. Errors may result from the mining of complex text files.*

AR2022_300719

# DACA Requestors Arrested by State of Arrest

### Figure 2: Number of DACA Requestors Arrested by State of Arrest



Source: USCIS. Analysis of CLAIMS 3, ELIS and CPMS data. CLAIMS 3 and ELIS data are as of October 9, 2019; CPMS data are as of October 1, 2019.

*Notes: "Arrests" include apprehensions. The number of arrests or apprehensions reflects the number of arrests and apprehensions involving DACA requestors whose most recent DACA case status, as of the date the systems were queried, was an approval, denial, termination, or pending. It does not include arrests or apprehensions involving DACA requestors whose case status was administratively close on the date the systems were queried. The number of approved DACA requestors include aliens whose DACA expired and who did not request renewal.*

*An arrest indicates the alien was arrested or apprehended only and does not mean the alien was convicted of a crime. Further, aliens may not have been charged with a crime resulting from the arrest, may have had their charges reduced or dismissed entirely, or may have been acquitted of any charges. Additionally, due to updates in reporting and extraction procedures, arrest information reflects a snapshot in time based on available data and is not part of a time series.  Errors may result from the mining of complex text files.*

AR2022_300720

Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals
Requests by Intake and Case Status, by Fiscal Year
Aug. 15, 2012 - Dec. 31, 2020



U.S. Citizenship
and Immigration
Services

| Period | Requests by Intake and Case Status | | | | | |
|---|---|---|---|---|---|---|
| | Requests Accepted[1] | Requests Rejected[2] | Total Requests Received[3] | Approved[4] | Denied[5] | Pending[6] |
| **Fiscal Year - Total** | | | | | | |
| 2012 Initial | 152,430 | 5,396 | 157,826 | 1,684 | - | 150,746 |
| 2013 Initial | 427,612 | 16,355 | 443,967 | 470,598 | 11,019 | 96,728 |
| **2014** | **238,898** | **24,889** | **263,787** | **158,155** | **21,071** | **156,338** |
| 2014 Initial | 122,474 | 19,064 | 141,538 | 135,921 | 21,068 | 62,153 |
| 2014 Renewal | 116,424 | 5,825 | 122,249 | 22,234 | D | 94,185 |
| **2015** | **448,846** | **35,502** | **484,348** | **510,329** | **21,439** | **73,318** |
| 2015 Initial | 85,300 | 7,170 | 92,470 | 90,827 | 19,088 | 37,466 |
| 2015 Renewal | 363,546 | 28,332 | 391,878 | 419,502 | 2,351 | 35,852 |
| **2016** | **260,701** | **12,317** | **273,018** | **198,813** | **14,553** | **119,777** |
| 2016 Initial | 73,347 | 1,151 | 74,498 | 52,992 | 11,527 | 45,445 |
| 2016 Renewal | 187,354 | 11,166 | 198,520 | 145,821 | 3,026 | 74,332 |
| **2017** | **472,850** | **43,455** | **516,305** | **461,909** | **13,196** | **117,434** |
| 2017 Initial | 45,593 | 44 | 45,637 | 47,132 | 9,165 | 34,688 |
| 2017 Renewal | 427,257 | 43,411 | 470,668 | 414,777 | 4,031 | 82,746 |
| **2018** | **260,120** | **29,651** | **289,771** | **319,341** | **12,536** | **45,642** |
| 2018 Initial | 2,060 | D | 2,062 | 24,381 | 8,249 | 4,106 |
| 2018 Renewal | 258,060 | 29,649 | 287,709 | 294,960 | 4,287 | 41,536 |
| **2019** | **386,158** | **22,004** | **408,162** | **387,495** | **4,948** | **39,326** |
| 2019 Initial | 1,570 | D | 1,574 | 1,779 | 1,605 | 2,286 |
| 2019 Renewal | 384,588 | 22,000 | 406,588 | 385,716 | 3,343 | 37,040 |
| **2020** | **313,941** | **29,992** | **343,933** | **294,775** | **4,007** | **54,468** |
| 2020 Initial | 4,295 | D | 4,301 | 1,803 | 718 | 4,055 |
| 2020 Renewal | 309,646 | 29,986 | 339,632 | 292,972 | 3,289 | 50,413 |

| Period | Requests by Intake and Case Status | | | | | |
|---|---|---|---|---|---|---|
| | Requests Accepted[1] | Requests Rejected[2] | Total Requests Received[3] | Approved[4] | Denied[5] | Pending[6] |
| **2021** | **69,256** | **7,668** | **76,924** | **90,351** | **975** | **32,395** |
| 2021 Initial | 3,243 | D | 3,249 | 401 | 337 | 6,560 |
| 2021 Renewal | 66,013 | 7,662 | 73,675 | 89,950 | 638 | 25,835 |
| **Total Cumulative** | **3,030,812** | **227,229** | **3,258,041** | **2,893,450** | **103,744** | **32,395** |
| Total Cumulative Initial | 917,924 | 49,198 | 967,122 | 827,518 | 82,776 | 6,560 |
| Total Cumulative Renewal | 2,112,888 | 178,031 | 2,290,919 | 2,065,932 | 20,968 | 25,835 |

AR2022_300722

Number of Form I-821D,Consideration of Deferred Action for Childhood Arrivals
Requests by Intake and Case Status, Current Fiscal Year by Quarter
Oct. 1, 2020 - Dec. 31, 2020



**U.S. Citizenship and Immigration Services**

| Period | Requests by Intake and Case Status | | | | | |
|---|---|---|---|---|---|---|
| | Requests Accepted[1] | Requests Rejected[2] | Total Requests Received[3] | Approved[4] | Denied[5] | Pending[6] |
| **Fiscal Year 2021 by Quarter** | | | | | | |
| Q1. October - December | 69,256 | 7,668 | 76,924 | 90,351 | 975 | 32,395 |
| Q1. October - December Initial | 3,243 | D | 3,249 | 401 | 337 | 6,560 |
| Q1. October - December Renewal | 66,013 | 7,662 | 73,675 | 89,950 | 638 | 25,835 |
| **Total** | 69,256 | 7,668 | 76,924 | 90,351 | 975 | 32,395 |

**Table Key**

D  Data withheld to protect requestors' privacy.

- Represents zero.

**Reference(s)**

[1] The number of new requests accepted at a Lockbox during the reporting period.

[2] The number of requests rejected at a Lockbox during the reporting period.

[3] The number of requests received and entered into a case-tracking system during the reporting period.

[4] The number of requests approved during the reporting period.

[5] The number of requests that were denied, terminated, or withdrawn during the reporting period.

[6] The number of requests awaiting a decision as of the end of the reporting period.

**Note(s):**

1) Some requests approved or denied may have been received in previous reporting periods.

2) The report reflects the most up-to-date estimate available at the time the report is generated.

3) The Quarterly Report totals may not match the totals provided within the Demographics Reports due to differences in how the data is generated.

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, CLAIMS3 & ELIS, accessed December 2020, TRK 6800

AR2022_300723

Number of Form I-821D,Consideration of Deferred Action for Childhood Arrivals
Accepted and Approved Requests by Country of Birth
Aug. 15, 2012 - Dec. 31, 2020



U.S. Citizenship
and Immigration
Services

| Top Countries of Birth | Accepted to Date[1] | | | Approved to Date[2] | | |
|---|---|---|---|---|---|---|
| | Initials | Renewals | Total | Initials | Renewals | Total |
| | | | | | | |
| **Country** | | | | | | |
| Mexico | 714,646 | 1,675,337 | 2,389,983 | 651,670 | 1,638,409 | 2,290,079 |
| El Salvador | 34,785 | 81,038 | 115,823 | 29,806 | 79,015 | 108,821 |
| Guatemala | 25,157 | 53,903 | 79,060 | 21,007 | 52,533 | 73,540 |
| Honduras | 22,913 | 50,174 | 73,087 | 19,200 | 48,794 | 67,994 |
| South Korea | 9,638 | 24,241 | 33,879 | 9,030 | 23,808 | 32,838 |
| Peru | 9,902 | 23,457 | 33,359 | 9,312 | 22,978 | 32,290 |
| Brazil | 8,738 | 17,925 | 26,663 | 7,672 | 17,571 | 25,243 |
| Ecuador | 7,840 | 17,049 | 24,889 | 6,901 | 16,626 | 23,527 |
| Colombia | 7,343 | 16,068 | 23,411 | 6,759 | 15,769 | 22,528 |
| Philippines | 5,162 | 12,265 | 17,427 | 4,811 | 12,088 | 16,899 |
| Argentina | 5,289 | 11,667 | 16,956 | 4,957 | 11,493 | 16,450 |
| India | 3,818 | 8,662 | 12,480 | 3,268 | 8,451 | 11,719 |
| Jamaica | 4,513 | 7,824 | 12,337 | 3,561 | 7,663 | 11,224 |
| Venezuela | 3,523 | 7,663 | 11,186 | 3,204 | 7,531 | 10,735 |
| Dominican Republic | 3,889 | 6,800 | 10,689 | 3,289 | 6,670 | 9,959 |
| Trinidad And Tobago | 3,121 | 5,728 | 8,849 | 2,653 | 5,624 | 8,277 |
| Uruguay | 2,669 | 5,676 | 8,345 | 2,491 | 5,556 | 8,047 |
| Bolivia | 2,255 | 5,284 | 7,539 | 2,123 | 5,176 | 7,299 |
| Costa Rica | 2,309 | 5,021 | 7,330 | 2,110 | 4,922 | 7,032 |
| Chile | 1,923 | 4,334 | 6,257 | 1,802 | 4,254 | 6,056 |
| Poland | 2,030 | 4,243 | 6,273 | 1,876 | 4,173 | 6,049 |
| Pakistan | 1,968 | 4,216 | 6,184 | 1,740 | 4,128 | 5,868 |
| Nicaragua | 1,931 | 4,145 | 6,076 | 1,675 | 4,054 | 5,729 |
| Nigeria | 1,601 | 3,214 | 4,815 | 1,340 | 3,143 | 4,483 |
| Guyana | 1,509 | 3,090 | 4,599 | 1,309 | 3,037 | 4,346 |
| All Others[3] | 29,452 | 53,864 | 83,316 | 23,952 | 52,466 | 76,418 |
| **Total** | **917,924** | **2,112,888** | **3,030,812** | **827,518** | **2,065,932** | **2,893,450** |

**Table Key**

D  Data withheld to protect requestors' privacy.

- Represents zero.

**Reference(s)**

[1] The number of requests that were accepted to date of the reporting period.

[2] The number of requests that were approved to date of the reporting period.

[3] All fields with a blank in the country of birth field are included in the field "All Others."

**Note(s):**

1) Some requests approved or denied may have been received in previous reporting periods.

2) The report reflects the most up-to-date estimate data available at the time the report is generated.

3) Ranked by total approvals.

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, CLAIMS3 & ELIS, accessed December 2020, TRK 6800

Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals
Accepted and Approved Requests by State/Territory of Residence
Aug. 15, 2012 - Dec. 31, 2020



**U.S. Citizenship and Immigration Services**

| Residence | Accepted to Date[1] | | | Approved to Date[2] | | |
|---|---|---|---|---|---|---|
| | Initials | Renewals | Total | Initials | Renewals | Total |
| | | | | | | |
| **Residence** | | | | | | |
| California | 258,364 | 607,809 | 866,173 | 238,932 | 593,916 | 832,848 |
| Texas | 151,065 | 341,563 | 492,628 | 134,315 | 335,239 | 469,554 |
| Illinois | 48,577 | 111,177 | 159,754 | 45,108 | 108,796 | 153,904 |
| New York | 47,020 | 95,772 | 142,792 | 40,854 | 93,695 | 134,549 |
| Florida | 38,587 | 81,886 | 120,473 | 32,694 | 80,282 | 112,976 |
| Arizona | 33,660 | 79,454 | 113,114 | 30,415 | 77,403 | 107,818 |
| North Carolina | 32,248 | 78,838 | 111,086 | 29,698 | 77,064 | 106,762 |
| Georgia | 30,705 | 68,328 | 99,033 | 25,767 | 66,436 | 92,203 |
| New Jersey | 25,423 | 55,455 | 80,878 | 22,185 | 54,157 | 76,342 |
| Washington | 21,225 | 50,722 | 71,947 | 19,383 | 49,570 | 68,953 |
| Colorado | 20,630 | 47,777 | 68,407 | 18,595 | 46,541 | 65,136 |
| Nevada | 15,420 | 39,297 | 54,717 | 14,305 | 38,506 | 52,811 |
| Oregon | 12,910 | 32,041 | 44,951 | 12,082 | 31,325 | 43,407 |
| Virginia | 13,971 | 31,856 | 45,827 | 12,369 | 31,036 | 43,405 |
| Indiana | 11,822 | 28,970 | 40,792 | 10,802 | 28,268 | 39,070 |
| Utah | 11,661 | 27,570 | 39,231 | 10,710 | 26,947 | 37,657 |
| Maryland | 11,562 | 26,261 | 37,823 | 9,941 | 25,694 | 35,635 |
| Tennessee | 10,195 | 23,983 | 34,178 | 9,146 | 23,408 | 32,554 |
| Wisconsin | 8,857 | 21,112 | 29,969 | 8,227 | 20,635 | 28,862 |
| Oklahoma | 8,154 | 19,760 | 27,914 | 7,502 | 19,330 | 26,832 |
| Massachusetts | 8,934 | 18,704 | 27,638 | 7,697 | 18,236 | 25,933 |
| Kansas | 7,811 | 18,224 | 26,035 | 7,319 | 17,848 | 25,167 |
| South Carolina | 7,842 | 18,546 | 26,388 | 6,943 | 18,083 | 25,026 |
| New Mexico | 8,286 | 17,384 | 25,670 | 7,627 | 17,047 | 24,674 |
| Minnesota | 7,122 | 17,198 | 24,320 | 6,503 | 16,754 | 23,257 |
| Michigan | 7,163 | 17,216 | 24,379 | 6,448 | 16,797 | 23,245 |
| Pennsylvania | 6,706 | 14,866 | 21,572 | 5,710 | 14,543 | 20,253 |
| Arkansas | 6,030 | 14,740 | 20,770 | 5,480 | 14,427 | 19,907 |
| Alabama | 5,302 | 12,317 | 17,619 | 4,711 | 12,081 | 16,792 |

| Residence | Accepted to Date[1] | | | Approved to Date[2] | | |
|---|---|---|---|---|---|---|
| | Initials | Renewals | Total | Initials | Renewals | Total |
| Connecticut | 5,531 | 12,064 | 17,595 | 4,905 | 11,823 | 16,728 |
| Ohio | 5,366 | 12,287 | 17,653 | 4,633 | 11,923 | 16,556 |
| Missouri | 4,068 | 9,674 | 13,742 | 3,761 | 9,504 | 13,265 |
| Nebraska | 4,011 | 9,435 | 13,446 | 3,641 | 9,226 | 12,867 |
| Idaho | 3,677 | 8,817 | 12,494 | 3,398 | 8,566 | 11,964 |
| Kentucky | 3,709 | 8,640 | 12,349 | 3,287 | 8,421 | 11,708 |
| Iowa | 3,241 | 8,236 | 11,477 | 2,931 | 8,043 | 10,974 |
| Louisiana | 2,471 | 5,394 | 7,865 | 2,149 | 5,266 | 7,415 |
| Mississippi | 1,857 | 4,089 | 5,946 | 1,611 | 4,029 | 5,640 |
| Delaware | 1,691 | 4,127 | 5,818 | 1,536 | 4,053 | 5,589 |
| Rhode Island | 1,340 | 3,005 | 4,345 | 1,169 | 2,929 | 4,098 |
| District Of Columbia | 889 | 1,972 | 2,861 | 747 | 1,922 | 2,669 |
| Wyoming | 748 | 1,641 | 2,389 | 663 | 1,605 | 2,268 |
| Hawaii | 450 | 1,124 | 1,574 | 368 | 1,100 | 1,468 |
| New Hampshire | 391 | 871 | 1,262 | 331 | 850 | 1,181 |
| South Dakota | 278 | 690 | 968 | 242 | 665 | 907 |
| North Dakota | 98 | 410 | 508 | 73 | 406 | 479 |
| West Virginia | 148 | 336 | 484 | 122 | 324 | 446 |
| Puerto Rico | 273 | 257 | 530 | 165 | 252 | 417 |
| Alaska | 96 | 260 | 356 | 87 | 252 | 339 |
| Montana | 76 | 235 | 311 | 64 | 227 | 291 |
| Maine | 50 | 137 | 187 | 44 | 135 | 179 |
| Virgin Islands | 126 | 111 | 237 | 66 | 109 | 175 |
| Vermont | 17 | 68 | 85 | 12 | 65 | 77 |
| Guam | 23 | 49 | 72 | 21 | 47 | 68 |
| Armed Forces Americas (except Canada) | 11 | 44 | 55 | 10 | 41 | 51 |
| Northern Mariana Islands | 27 | 16 | 43 | D | 14 | 21 |
| Armed Forces Pacific | D | 18 | 19 | D | 18 | 19 |
| American Samoa | D | 10 | 11 | D | 10 | 11 |
| Federated States Of Micronesia | D | D | 11 | D | 9 | 11 |
| Armed Forces Africa, Canada, Europe, Middle East | - | D | D | - | D | D |
| Marshall Islands | - | D | D | - | D | D |
| Palau | - | D | D | - | D | D |
| Not Reported[3] | D | D | D | D | D | D |
| **Total** | **917,924** | **2,112,888** | **3,030,812** | **827,518** | **2,065,932** | **2,893,450** |

AR2022_300727

**Table Key**

D  Data withheld to protect requestors' privacy.

- Represents zero.

**Reference(s)**

[1] The number of requests that were accepted to date of the reporting period.

[2] The number of requests that were approved to date of the reporting period.

[3] All fields with a blank in the State field are included in the field "not reported."

**Note(s):**

1) Some requests approved or denied may have been received in previous reporting periods.

2) The report reflects the most up-to-date estimate data available at the time the report is generated.

3) Ranked by total approvals.

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, CLAIMS3 & ELIS, accessed December 2020, TRK 6800

Number of Form I 821D, Consideration of Deferred Action for Childhood Arrivals
Requests by Intake and Case Status, by Fiscal Year
August 15, 2012 - December 31, 2021



U.S. Citizenship
and Immigration
Services

| Period | Requests by Intake and Case Status | | | | | |
|---|---|---|---|---|---|---|
| | Requests Accepted[1] | Requests Rejected[2] | Total Requests Received[3] | Approved[4] | Denied[5] | Pending[6] |
| **Fiscal Year - Total** | | | | | | |
| 2012 Initial | 152,430 | 5,396 | 157,826 | 1,684 | - | 150,746 |
| 2013 Initial | 427,612 | 16,355 | 443,967 | 470,598 | 11,019 | 96,728 |
| **2014** | **238,898** | **24,889** | **263,787** | **158,155** | **21,071** | **156,338** |
| 2014 Initial | 122,474 | 19,064 | 141,538 | 135,921 | 21,068 | 62,153 |
| 2014 Renewal | 116,424 | 5,825 | 122,249 | 22,234 | 3 | 94,185 |
| **2015** | **448,846** | **35,502** | **484,348** | **510,329** | **21,439** | **73,318** |
| 2015 Initial | 85,300 | 7,170 | 92,470 | 90,827 | 19,088 | 37,466 |
| 2015 Renewal | 363,546 | 28,332 | 391,878 | 419,502 | 2,351 | 35,852 |
| **2016** | **260,701** | **12,317** | **273,018** | **198,813** | **14,552** | **119,778** |
| 2016 Initial | 73,347 | 1,151 | 74,498 | 52,992 | 11,526 | 45,446 |
| 2016 Renewal | 187,354 | 11,166 | 198,520 | 145,821 | 3,026 | 74,332 |
| **2017** | **472,850** | **43,455** | **516,305** | **461,909** | **13,196** | **117,435** |
| 2017 Initial | 45,593 | 44 | 45,637 | 47,132 | 9,165 | 34,689 |
| 2017 Renewal | 427,257 | 43,411 | 470,668 | 414,777 | 4,031 | 82,746 |
| **2018** | **260,120** | **29,651** | **289,771** | **319,341** | **12,534** | **45,645** |
| 2018 Initial | 2,060 | 2 | 2,062 | 24,381 | 8,248 | 4,108 |
| 2018 Renewal | 258,060 | 29,649 | 287,709 | 294,960 | 4,286 | 41,537 |
| **2019** | **386,155** | **22,007** | **408,162** | **387,439** | **4,947** | **39,383** |
| 2019 Initial | 1,570 | 4 | 1,574 | 1,774 | 1,604 | 2,294 |
| 2019 Renewal | 384,585 | 22,003 | 406,588 | 385,665 | 3,343 | 37,089 |
| **2020** | **313,940** | **29,993** | **343,933** | **294,680** | **3,999** | **54,627** |
| 2020 Initial | 4,295 | 6 | 4,301 | 1,792 | 715 | 4,077 |
| 2020 Renewal | 309,645 | 29,987 | 339,632 | 292,888 | 3,284 | 50,550 |
| **2021** | **438,939** | **31,697** | **470,636** | **359,344** | **3,848** | **130,361** |
| 2021 Initial | 94,388 | 109 | 94,497 | 7,996 | 1,122 | 89,346 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2021 Renewal | 344,551 | 31,588 | 376,139 | 351,348 | 2,726 | 41,015 |
| **2022** | **67,258** | **4,411** | **71,669** | **77,725** | **640** | **119,249** |
| 2022 Initial | 1,907 | 6 | 1,913 | - | 1 | 91,251 |
| 2022 Renewal | 65,351 | 4,405 | 69,756 | 77,725 | 639 | 27,998 |
| **Total Cumulative** | **3,467,749** | **255,673** | **3,723,422** | **3,240,017** | **107,245** | **119,249** |
| Total Cumulative Initial | 1,010,976 | 49,307 | 1,060,283 | 835,097 | 83,556 | 91,251 |
| Total Cumulative Renewal | 2,456,773 | 206,366 | 2,663,139 | 2,404,920 | 23,689 | 27,998 |

Number of Form I 821D, Consideration of Deferred Action for Childhood Arrivals
Requests by Intake and Case Status, Current Fiscal Year by Quarter
August 15, 2012 - December 31, 2021



**U.S. Citizenship and Immigration Services**

| | Requests by Intake and Case Status | | | | | |
|---|---|---|---|---|---|---|
| **Period** | Requests Accepted[1] | Requests Rejected[2] | Total Requests Received[3] | Approved[4] | Denied[5] | Pending[6] |
| **Fiscal Year 2022 by Quarter** | | | | | | |
| Q1 October - December | 67,258 | 4,411 | 71,669 | 77,725 | 640 | 119,249 |
| Q1 October - December Initial | 1,907 | 6 | 1,913 | - | 1 | 91,251 |
| Q1 October - December Renewal | 65,351 | 4,405 | 69,756 | 77,725 | 639 | 27,998 |
| **TOTAL** | **67,258** | **4,411** | **71,669** | **77,725** | **640** | **119,249** |

**Table Key**

D  Disclosure standards not met

-  Represents zero or rounds to 0.0

**References:**

[1]The number of new requests accepted at a Lockbox during the reporting period.

[2]The number of requests rejected at a Lockbox during the reporting period.

[3]The number of requests received and entered into a case-tracking system during the reporting period..

[4]The number of requests approved during the reporting period.

[5]The number of requests denied during the reporting period.

[6]The number of requests awaiting a decision as of the end of the reporting period.

**Notes:**

1) Some requests approved, denied, or pending a decision may have been received in previous reporting periods.

2) The report reflects the most up-to-date estimate available at the time the report is generated.

3) The Quarterly Report totals may not match the totals provided within the Demographics Reports due to differences in how the data is generated.

4) For a complete list of USCIS forms and descriptions, visit: https://www.uscis.gov/forms

**Source:**

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC  20529-2000

November 23, 2016                                    **PM-602-0114**

# Policy Memorandum

SUBJECT:    Discretionary Options for Designated Spouses, Parents, and Sons and Daughters
of Certain Military Personnel, Veterans, and Enlistees

**Purpose**

This policy memorandum (PM) clarifies and supplements guidance issued by U.S. Citizenship and Immigration Services (USCIS) in 2013 ("the 2013 PM")[1] with respect to designated family members of certain military personnel and veterans.  Specifically, this PM provides additional guidance on discretionary options for:  (a) certain alien family members of individuals serving on active duty in the U.S. Armed Forces or in the Selected Reserve of the Ready Reserve; (b) certain alien family members of those who previously served on active duty or in the Selected Reserve of the Ready Reserve (whether living or deceased) and were not dishonorably discharged; and (c) enlistees in the Department of Defense (DoD) Delayed Entry Program (DEP).  This PM amends Chapter 21.1(c) of the Adjudicator's Field Manual (AFM) to:

- Clarify that individuals who previously served in the military include those who are now deceased but do not include those who were dishonorably discharged;

- Change all references to "children" to "sons and daughters";

- Provide guidance on deferred action for certain nonimmigrant and other alien recruits (including enlistees in the Military Accessions Vital to the National Interest (MAVNI) program) whose authorized periods of stay expire during the enlistment process, including the time they are in the DEP;

- Provide guidance on deferred action for certain MAVNI and other DEP enlistees' family members who are present in the United States without authorized periods of stay; and

- Provide guidance on deferred action for certain military family members who would be eligible for parole under the guidelines in the 2013 PM but for the fact that they have already been admitted.

---

[1] See USCIS Memorandum, *Parole of Spouses, Children and Parents of Active Duty Members of the U.S. Armed Forces, the Selected Reserve of the Ready Reserve, and Former Members of the U.S. Armed Forces or Selected Reserve of the Ready Reserve and the Effect of Parole on Inadmissibility under Immigration and Nationality Act 212(a)(6)(A)(i)* (Nov. 15, 2013), http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2013/2013-1115_Parole_in_Place_Memo_.pdf.

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 2

## Scope

This PM applies to all U.S. Citizenship and Immigration Services (USCIS) employees.

## Authority

Immigration and Nationality Act (INA) §§ 103(a)(1), 103(a)(3), 212(d)(5)(A), 235(a), and 245(a), (c);
8 U.S.C. §§ 1103(a)(1), 1103(a)(3), 1182(d)(5)(A), 1225(a), and 1255(a), (c); 6 U.S.C. § 202(5).

## Background

On November 15, 2013, pursuant to the authority conferred upon the Secretary of Homeland
Security by INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), USCIS issued a PM guiding the exercise
of discretion with respect to applications for parole by designated family members of certain U.S.
military personnel and veterans. On November 20, 2014, the Secretary directed USCIS to expand on
these policies, including by issuing new policies on the use of both parole and deferred action for
certain family members of military personnel, veterans, and DEP enlistees.[2] These new policies are
intended to support the DoD in several ways, including by:

- Elaborating on general USCIS deferred action policies by identifying factors that are of
  particular relevance to discretionary determinations involving military personnel, veterans,
  DEP enlistees, and their families;

- Building on existing USCIS and DoD initiatives and policies designed to assist military
  personnel, veterans, DEP enlistees, and their families in navigating our immigration
  system;

- Facilitating military morale and readiness and supporting DoD recruitment policies by
  considering temporarily deferring the removal of certain military family members;

- Furthering the goal of the MAVNI program to recruit certain foreign nationals whose skills
  are considered vital to the national interest and critical to military services; and

- Ensuring consistent support for our military personnel and veterans who have served and
  sacrificed for our nation, and their families.

*DoD Delayed Entry Program (DEP)*

The DoD receives approximately 250,000 individuals into the all-volunteer force each year. To
effectively sustain this large volunteer force, DoD uses the DEP to manage and predictably meet the
accession requirements of the military services. Individuals who have no previous military
experience and are seeking to enlist in the U.S. military must sign a contract by which they enter into
the DEP for a period of up to 365 days while awaiting Basic Training. This waiting period allows
DoD to better anticipate and meet the needs of the various service components. The DEP is a
cornerstone of the U.S. military enlistment process.

Individuals who enlist in the military through the MAVNI program may also enter the DEP. The
MAVNI program allows certain nonimmigrants and other aliens to enlist in the military to fill

---

[2] Secretary of Homeland Security Memorandum, *Families of U.S. Armed Forces Members and Enlistees* (Nov. 20,
2014), http://www.dhs.gov/sites/default/files/publications/14_1120_memo_parole_in_place.pdf.

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 3

positions requiring skills for which there are critical shortages of enlistees.[3] The program is currently
open to individuals with certain health care skills and individuals fluent in certain foreign languages.

**Policy**

I.  Parole in Place for Families of Certain Military Personnel and Veterans

USCIS has authority to grant parole to noncitizen applicants for admission, including those residing
in the United States (through "parole in place"),[4] on a case-by-case basis for urgent humanitarian
reasons or significant public benefit.  INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).  The 2013 PM
provides guidance on granting parole, on a discretionary case-by-case basis, for certain spouses,
children, and parents of, among others, individuals who "previously" served on active duty or in the
Selected Reserve of the Ready Reserve.  This PM clarifies that such language in the 2013 PM is
meant to include former designated military personnel (who were not dishonorably discharged)
whether they are living or deceased.  The close family members of such individuals, who served and
sacrificed for our Nation, are deserving of consideration for a favorable exercise of discretion on a
case-by-case basis in accordance with the 2013 PM.  This is true regardless of whether the former
military service members are living or deceased.

In addition, the 2013 PM contains multiple references to the "children" of current or former military
personnel.  Under the INA, the term "child" is limited to individuals who are unmarried and under
the age of 21.  *See* INA § 101(b)(1), 8 U.S.C. § 1101(b)(1).  This PM seeks to expand on the
provisions in the 2013 PM by replacing all references to "children" in the 2013 PM (and the
corresponding provisions in the AFM) with the term "sons and daughters."  This change would
further expand the provisions in the 2013 PM to the adult and married sons and daughters of covered
military personnel and veterans.  Because covered military personnel and veterans generally will be
U.S. citizens or lawful permanent residents (or, in the case of MAVNI, soon-to-be U.S. citizens or
lawful permanent residents), their sons and daughters will often be on paths to lawful permanent
resident status and eventual citizenship.  *See* INA § 203(a), 8 U.S.C. § 1153(a).  Parole in place or
deferred action would therefore serve as a temporary bridge for such sons and daughters while they
apply for and await adjudication of their applications for lawful permanent resident status.
Moreover, important family relationships continue to exist even after children turn 21 or marry.  The
same morale, deservedness, and preparedness rationales articulated in the 2013 PM with respect to
military personnel and their children continue to apply when such children turn 21 or marry.

II.  Deferred Action Requests by DEP Enlistees and the Families of Military Personnel, Veterans,
and DEP Enlistees

As in all deferred action determinations, USCIS will make case-by-case, discretionary judgments
based on the totality of the evidence.  In doing so, USCIS will weigh and balance all relevant
considerations, both positive and negative.  Certain factors are of particular relevance to the exercise
of that discretion when deferred action requests are submitted by DEP enlistees or by the family

---

[3] The MAVNI program is authorized by 10 U.S.C. § 504(b)(2).  For further details, see DoD Instruction 1304.26.
"Qualifications for Enlistment, Appointment and Induction." For information about the DoD MAVNI program, see the
DoD MAVNI fact sheet, http://www.defense.gov/news/mavni-fact-sheet.pdf.
[4] The parole authority is most frequently used to permit aliens who are outside the United States to come into U.S.
territory, but aliens who are already physically present in the United States without having been admitted are also
eligible for parole.  See INA §§ 212(d)(5)(A), 235(a)(1). This latter use of parole is called "parole in place."

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 4

members of military personnel, veterans, or DEP enlistees.  Particularly strong positive factors
specific to such requests include, but are not limited to:

- Being a DEP enlistee, including through the MAVNI program (even if the enlistee's
  authorized period of stay expires or terminates while in the DEP);

- Being the spouse, parent, son, or daughter of a MAVNI or other DEP enlistee (even if
  present in the United States without an authorized status); and

- Being an individual who would be eligible for parole under the 2013 PM, as clarified and
  amended by the present PM, but for the fact that such individual has already been admitted.

The presence of one or more of the preceding factors does not guarantee a grant of deferred action,
which constitutes only a favorable exercise of immigration enforcement discretion, but may be
considered a strong positive factor weighing in favor of granting deferred action as a matter of
discretion.  The ultimate decision rests on whether, based on the totality of the facts of the individual
case, USCIS finds that the positive factors outweigh any negative factors that may be present and
that a favorable exercise of enforcement discretion is warranted.

If an individual described in any of the three bullets above is approved for deferred action in the
exercise of discretion, the period of deferred action should be authorized in two-year increments;
USCIS may consider requests for renewal of deferred action as appropriate.

III. Petition for Alien Relative and Work Authorization

USCIS encourages applicants to continue on a path toward lawful permanent resident status
whenever applicable.  In cases where it is applicable, USCIS encourages the filing of a Form I-130,
Petition for Alien Relative, or Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant.
In some cases where subsequent parole in place or a renewal of deferred action is requested, such
filing may be required (see AFM 21.1(c)(3)(A) below).  In addition, individuals who have obtained
parole in place or deferred action are eligible to apply for work authorization for the period of parole
or deferred action if they can demonstrate economic necessity.[5]

**Implementation**

The Adjudicator's Field Manual (AFM) Chapter 21.1, General Information About Relative Visa
Petitions, is amended as follows:

**1.  Section 21.1(c) is revised by:**

- Redesignating current section "(c)" as subsection "(1)";

- Inserting new section "(c)" heading "Special Parole and Deferred Action Considerations.";

- Inserting, at the beginning of section (c):

On November 15, 2013, USCIS, pursuant to the authority conferred upon the Secretary of
Homeland Security by INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), issued a Policy
Memorandum guiding the exercise of discretion with respect to applications for parole by

---

[5] See 8 CFR 274a.12(c)(11), (14).  See Form I-765, Application for Employment Authorization.

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 5

designated family members of U.S. military personnel and veterans.  On November 20,
2014, the Secretary directed USCIS to issue new policies on the use of both parole in place
and deferred action for certain family members of certain military personnel, veterans, and
individuals who are seeking to enlist in the U.S. military.  See Secretary of Homeland
Security Memorandum, "Families of U.S. Armed Forces Members and Enlistees" (Nov. 20,
2014),
http://www.dhs.gov/sites/default/files/publications/14_1120_memo_parole_in_place.pdf

These new policies support the Department of Defense (DoD) in several ways, including
by:

- Elaborating on general USCIS deferred action policies by identifying factors that
  are of particular relevance to discretionary determinations involving military
  personnel, veterans, and their families;

- Building on existing USCIS and DoD initiatives and policies designed to assist
  military members, veterans, and their families in navigating our complex
  immigration system;

- Facilitating military morale and readiness and supporting DoD recruitment policies
  by considering temporarily deferring the removal of certain military family
  members;

- Furthering the goal of the Military Accessions Vital to the National Interest (MAVNI)
  program to recruit certain foreign nationals whose skills are considered vital to the
  national interest and critical to military services; and

- Ensuring consistent support for our military personnel and veterans, who have
  served and sacrificed for our nation, and their families.

For guidance on parole in place for certain family members of military personnel and
veterans, see AFM Chapter 21.1(c)(1).  For guidance on deferred action for certain
enlistees and certain family members of military personnel and veterans, see AFM Chapter
21.1(c)(2).

- Revising new subsection 21.1(c)(1) by:

  - Striking "Spouses, Children and Parents" and inserting "Spouses, Parents, Sons, and
    Daughters" in the heading;

  - Striking "spouse, child or parent" and inserting "spouse, parent, son, or daughter" in
    the sentence that begins with "The fact that the individual";

  - Inserting "(whether still living or deceased)" in the following places: in the heading,
    after the word "who"; and in the bullet point that begins with "Evidence that the
    alien's family member", after the word "who";

  - Inserting "on active duty" in the following places: in the heading, after the word
    "served"; in the sentence that begins with "The fact that the individual", after the

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 6

> word "served"; and in the bullet point that begins with "Evidence that the alien's
> family member", after the word "served";
>
> o Inserting "and Were Not Dishonorably Discharged" at the end of the heading;
>
> o Inserting "(if the former service member was not dishonorably discharged and either
>   is living or died while the family member was residing in the United States)" in the
>   sentence that begins with "The fact that the individual", after the second instance of
>   the word "Ready Reserve";
>
> o Inserting "(this may include proof of filing a petition in certain cases – see AFM
>   21.1(c)(3) below);" at the end of the bullet point that begins with "Evidence of the
>   family relationship";
>
> o Inserting "(in the case of family members of veterans (whether still living or
>   deceased), the service member must not have received a dishonorable discharge upon
>   separation from the military)" after "(DD Form 1173)" in the bullet point that begins
>   with "Evidence that the alien's family member";
>
> o Inserting "In the case of surviving family members, proof of residence in the United
>   States at the time of the service member's death;" in a new bullet point after the bullet
>   point that begins with "Evidence that the alien's family member"; and
>
> o Inserting the following new paragraphs after the bullet points: "Individuals who have
>   obtained parole in place are eligible to apply for work authorization for the period of
>   parole if they can demonstrate economic necessity.  See 8 CFR 274a.12(c)(11), (14).
>   See Form I-765, Application for Employment Authorization.
>
>   Parole in place may be granted only to individuals who are present without admission
>   and are therefore applicants for admission.  Individuals who were admitted to the
>   United States but are currently present in the United States beyond their periods of
>   authorized stay are not eligible for parole in place, as they are no longer applicants for
>   admission."

**2.  A new subsection (2) is added to Chapter 21.1(c) to read as follows:**

(2) Deferred Action Consideration for Spouses, Parents, and Sons and Daughters of Active
Duty Military Personnel, Individuals in the Selected Reserve of the Ready Reserve, and
Individuals Who (Whether Still Living or Deceased) Previously Served on Active Duty in the
U.S. Military or the Selected Reserve of the Ready Reserve and Were Not Dishonorably
Discharged; and for MAVNI and other Enlistees in the Delayed Entry Program and their
Spouses, Parents, and Sons and Daughters.

(A) Deferred Action for DoD Delayed Entry Program Enlistees (Including MAVNI Recruits)
and Certain Family Members.

Individuals who have no previous military experience and are seeking to enlist in the U.S.
Armed Forces must sign a contract by which they enter into the Delayed Entry Program
(DEP) for a maximum of 365 days while awaiting Basic Training.  While in the DEP, there
can be delays in starting active duty for the Active Components or initial active duty for
training for the Reserve Components.

AR2022_300737

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 7

Individuals who enlist in the military through the Military Accessions Vital to the National
Interest (MAVNI) program may also enter the DEP.  The MAVNI program allows certain
foreign nationals to enlist in the military to fill positions where there are critical shortages in
health care and foreign language skills.  See the DoD MAVNI program fact sheet for further
details: http://www.defense.gov/news/mavni-fact-sheet.pdf.

Most MAVNI recruits are in a lawful nonimmigrant status at the time that they enlist.  For
example, it is common for a J-1 foreign exchange visitor or F-1 foreign student to enlist in
the U.S. military through MAVNI.  Through no fault of their own, MAVNI recruits in the DEP
may fall out of their lawful status while waiting to enter Basic Training.  This may occur, for
example, in cases where an F-1 foreign student completes his or her program of study
while waiting to enter Basic Training in the DEP.  In the same way, the family members of
such recruits often lose their lawful statuses because their statuses depend on those of the
recruits.  In addition, family members might lack status either because they are present
without being admitted or paroled, or because they were admitted or paroled but
overstayed their authorized periods of stay even before their MAVNI or other DEP family
member entered the DEP.

As in all deferred action determinations, USCIS will make case-by-case, discretionary
judgments based on the totality of the evidence.  In doing so, USCIS will weigh and
balance all relevant considerations, both positive and negative.  Certain factors, however,
are of particular relevance to the exercise of that discretion when deferred action requests
are submitted by individuals in DEP and their family members.  Particularly strong positive
factors specific to such requests include, but are not limited to:

- Being a DEP enlistee, including through the MAVNI program (even if the enlistee's
  authorized period of stay expires while in the DEP); and

- Being the spouse, parent, son, or daughter of a MAVNI recruit or other individual in
  the DEP (even if present in the United States without an authorized status).

The presence of one or more of the preceding factors does not guarantee a grant of
deferred action but may be considered a strong positive factor weighing in favor of granting
deferred action.  The ultimate decision rests on whether, based on the totality of the facts of
the individual case, USCIS finds that the positive factors outweigh any negative factors that
may be present.

If an individual described in either of the two bullets above is granted deferred action in the
exercise of discretion, the period of deferred action should be authorized in two-year
increments; USCIS may consider requests for renewal of deferred action as appropriate.  If
the individual withdraws from the DEP or becomes disqualified from joining the military, any
period of deferred action for the family member may be terminated.

See AFM Chapter 21.1(c)(2)(C) for guidance on filing requests for deferred action.  See
AFM Chapter 21.1(c)(1) for guidance on parole in place.

(B) Deferred Action for Certain Family Members of Active Duty Members of the U.S.
Military, Individuals in the Selected Reserve of the Ready Reserve, or Individuals Who

AR2022_300738

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 8

<u>(Whether Still Living or Deceased) Previously Served on Active Duty in the U.S. Military
or in the Selected Reserve of the Ready Reserve and Were Not Dishonorably
Discharged</u>.

As in all deferred action determinations, USCIS will make case-by-case, discretionary
judgments based on the totality of the evidence.  In doing so, USCIS will weigh and
balance all relevant considerations, both positive and negative.  Certain factors, however,
are of particular relevance to the exercise of that discretion when deferred action requests
are submitted by the family members of military personnel and veterans.  One particularly
strong positive factor specific to such requests is that the person has been admitted and
is the spouse, parent, son, or daughter of an individual who is serving, or has previously
served on active duty in the U.S. military or in the Selected Reserve of the Ready
Reserve (if the former service member was not dishonorably discharged and either is
living or died while the family member was residing in the United States).  Such an
individual ordinarily fits the guidelines for parole under section 21.1(c)(1) above, except
for being statutorily ineligible solely because of his or her prior admission.  See INA §§
212(d)(5)(A), 235(a)(1), 8 U.S.C. §§ 1182(d)(5)(A), 1225(a)(1).

The presence of the preceding factor does not guarantee a grant of deferred action but
may be considered a strong positive factor weighing in favor of granting deferred action.
The ultimate decision rests on whether, based on the totality of the facts of the individual
case, USCIS finds that the positive factors outweigh any negative factors that may be
present.  If USCIS grants deferred action in the exercise of discretion, the period of
deferred action should be authorized in two-year increments; USCIS may consider
requests for renewal of deferred action as appropriate.

(C) <u>Filing Request for Deferred Action.</u>

To request deferred action, one must submit the following to the director of the USCIS
office with jurisdiction over the requestor's place of residence:

- Letter stating basis for the deferred action request [See AFM 21.1(c)(2)(A) and
  (c)(2)(B)];

- Evidence supporting a favorable exercise of discretion in the form of deferred
  action as elaborated in AFM 21.1(c)(2)(A) and (c)(2)(B) – (e.g., evidence of family
  member's current or previous military service, or alien's or family member's
  enlistment in the DEP; note that in the case of family members of veterans,
  whether still living or deceased, the service member must not have received a
  dishonorable discharge upon separation from the military);

- Proof of family relationship, if applying based on family relationship to military
  member, veteran, or enlistee (this may include proof of filing a petition in certain
  cases - see section below);

- In the case of surviving family members, proof of residence in the United States at
  the time of the service member's death;

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 9

- Proof of identity and nationality (including a birth certificate, a passport and/or identification card, driver's license, notarized affidavit(s), etc.);

- If applicable, any document the alien used to lawfully enter the United States (including, but not limited to, Form I-94, Arrival/Departure Record, passport with visa and/or admission stamp, and any other documents issued by other components of DHS or legacy INS);

- Form G-325A, Biographic Information;

- Two identical, color, passport style photographs; and

- Evidence of any additional discretionary factors that the requestor would like USCIS to consider.

Individuals who have obtained deferred action are eligible to apply for work authorization for the period of deferred action if they can demonstrate economic necessity. See 8 CFR 274a.12(c)(11), (14). See Form I-765, Application for Employment Authorization.

A requestor who has legal representation must submit a properly completed Form G-28, Notice of Entry as Attorney or Accredited Representative.

**3. A new subsection (3) is added to Chapter 21.1(c) to read as follows:**

(3) <u>Petition Filing Requirement for Certain Parole or Deferred Action Requests</u>.

USCIS encourages applicants to continue on a path toward lawful permanent resident status whenever applicable. In cases where it is applicable, USCIS encourages the filing of a Form I-130, Petition for Alien Relative (or Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant) to allow USCIS to use an established process in evaluating the bona fides of the pertinent family relationship. In some cases where subsequent parole in place or renewal of deferred action is requested, such filing may be required (see AFM 21.1(c)(3)(A) below). USCIS checks the bona fides of the qualifying family relationship in all parole in place and deferred action requests regardless of whether the Form I-130 (or Form I-360) has been filed.

In all cases where a Form I-130 or Form I-360 has been filed, USCIS may grant either parole in place, as provided in AFM 21.1(c)(1), or deferred action, as provided in AFM 21.1.(c)(2), as long as the applicant's Form I-130 (or Form I-360) is pending or approved (and still valid). Even in cases where the Form I-130 or Form I-360 is required, it does not need to be approved prior to a grant of either parole in place or deferred action. Upon receiving the receipt notice for the Form I-130 or Form I-360, the alien may file the request for either parole in place or deferred action with the USCIS office with jurisdiction over the alien's place of residence. The request for either parole in place or deferred action must include documentation to establish an eligible family relationship. Such evidence may include a previously approved petition.

<u>Note</u>: Proof of filing the Form I-130 or Form I-360 is not required, even in applicable cases,

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 10

for initial requests for parole in place or deferred action as provided under AFM 21.1(c)(1)
and AFM 21.1(c)(2).  See AFM 21.1(c)(3)(B).

(A) <u>Petition Required for Request for Subsequent Parole in Place or Renewal of  Deferred
Action</u>.

Active Duty military members, individuals in the Selected Reserve of the Ready Reserve,
individuals who have previously served on active duty in the U.S. military or in the Selected
Reserve of the Ready Reserve, and DEP enlistees, if eligible to file a Form I-130 on behalf
of a family member requesting subsequent parole in place or renewal of deferred action as
provided under AFM 21.1(c)(1) or (c)(2), <u>must</u> submit a completed Form I-130 for the family
member, with fee and according to the instructions on the form, prior to filing the request for
subsequent parole in place or renewal of deferred action, as applicable. (See Form I-130
instructions for more information on who may file.)

Surviving spouses, parents, sons, and daughters of deceased service members and
veterans (described above) who were residing in the United States at the time of the
service member's death and who are eligible to file Form I-360 on their own behalf must
submit a completed Form I-360, with fee and according to the instructions on the form, prior
to filing the request for subsequent parole in place or renewal of deferred action, as
applicable. (See Form I-360 instructions for more information on who may file. See also the
USCIS web site at: http://www.uscis.gov/military/family-based-survivor-benefits/survivor-
benefits-relatives-us-citizen-military-members.)

The Form I-130 (or Form I-360) filing requirement for requests for subsequent parole in
place or renewal of deferred action as provided under AFM 21.1(c)(1) and AFM 21.1(c)(2)
applies only to requests that are submitted  on or after November 23, 2017 (one year after
publication of this memorandum).

(B) <u>Cases where Petition is Not Required at Any Time</u>.

Individuals who are ineligible to file a Form I-130 or a Form I-360 are not required to do so;
they may still request parole in place or deferred action, as applicable.  In particular, MAVNI
recruits in the DEP are not eligible to file Form I-130 and therefore not required to do so.
MAVNI recruits may, however, become eligible for naturalization under INA § 329(a) upon
entering active duty. Recruits typically must wait until they naturalize before filing a Form I-
130 for any eligible family members.

Proof of filing the Form I-130 (or Form I-360) also is not required, even in applicable cases,
for initial requests for parole in place or deferred action as provided under AFM 21.1(c)(1)
and AFM 21.1(c)(2).

**4.  The AFM Transmittal Memorandum button is revised by adding a new entry, in numerical
order, to read:**

| AFM Update (11/23/2016) | Chapter 21.1 | This PM amends AFM Chapter 21.1(c) to address discretionary options for designated spouses, parents, and sons and daughters of certain military personnel, veterans, and enlistees. |
|---|---|---|

PM-602-0114: Discretionary Options for Designated Spouses, Parents, and Sons and
Daughters of Certain Military Personnel, Veterans, and Enlistees
Page 11

**Use**

This PM is intended solely for the guidance of USCIS personnel in the performance of their official
duties.  It is not intended to, does not, and may not be relied upon to create any right or benefit,
substantive or procedural, enforceable at law or by any individual or other party in removal
proceedings, in litigation with the United States, or in any other form or manner.

**Contact Information**

Questions or suggestions regarding this PM should be addressed through appropriate channels to the
Field Operations Directorate or Office of Policy & Strategy.



USCIS Response to Coronavirus (COVID-19)

Home > Military > Discretionary Options for Military Members, Enlistees and Their Families

# Discretionary Options for Military Members, Enlistees and Their Families

We recognize the important sacrifices made by U.S. service members, veterans, enlistees, and their families. To support these individuals, we provide discretionary options such as parole in place or deferred action on a case-by-case basis.

  Close All   Open All

## Parole in Place

We may grant parole in place on a case-by-case basis for urgent humanitarian reasons or significant public benefit under section 212(d)(5)(A) of the INA. You may be eligible for parole in place in one-year increments if you are the spouse, widow(er), parent, son or daughter of an:

- Active-duty member of the U.S. armed forces;
- Individual in the Selected Reserve of the Ready Reserve; or
- Individual who (whether still living or deceased) previously served on active duty or in the Selected Reserve of the Ready Reserve and was not dishonorably discharged.

If you entered the U.S. lawfully but overstayed your visa (or are otherwise in the U.S. past your period of authorized stay), you are not eligible for parole in place because you are not an applicant for admission. However, you may qualify for deferred action. See the Deferred Action section below for more information.

To request parole in place, you must submit the following to the USCIS office with jurisdiction over your place of residence (military families on assignment in an area different from their permanent place of residence may submit their request to the office with jurisdiction over either location):

- Completed Form I-131, Application for Travel Document (without fee). You must handwrite "Military PIP" in Part 2 instead of checking a box;
- Evidence of the family relationship, such as:
  - Marriage certificate
  - Documentation of termination of previous marriage

**AR2022_300743**

- ○ Son or daughter's birth certificate
- ○ Military member's birth certificate with parent's name
- ○ Proof of enrollment in the Defense Enrollment Eligibility Reporting System (DEERS);
- Evidence that your family member is a current or former member of the U.S. armed forces, such as a photocopy of the front and back of the service member's military identification card or DD Form 214;
- Two identical, color passport-style photographs; and
- Evidence of any additional favorable discretionary factors that you would like us to consider.

For information about parole in place and how to apply, see the Adjudicator's Field Manual Chapter 21.1(c)(1) (PDF, 2.86 MB).

---

## Deferred Action 

Deferred action is a form of prosecutorial discretion to defer removal action (deportation) against an individual for a certain period of time. If we grant you deferred action, the Department of Homeland Security (DHS) considers you to be lawfully present in the U.S. for the period deferred action is in effect. Deferred action does not give you lawful status, nor does it excuse any past or future periods of unlawful presence.

Under existing regulations, if you are granted deferred action, you are eligible to apply for employment authorization for the period of deferred action if you can demonstrate "an economic necessity for employment." DHS can terminate deferred action at any time, at its discretion.

You may be eligible for deferred action for up to two years if you are the spouse, widow(er), parent, son or daughter of an:

- Active-duty member of the U.S. armed forces;
- Individual in the Selected Reserve of the Ready Reserve; or
- Individual who (whether still living or deceased) previously served on active duty or in the Selected Reserve of the Ready Reserve and was not dishonorably discharged.

In addition, Military Accessions Vital to the National Interest program enlistees in the Department of Defense Delayed Entry Program (DEP) may be eligible for deferred action. Spouses, parents, sons and daughters of enlistees in the DEP may also be eligible for deferred action.

To request deferred action, you must submit the following to the director of the USCIS office with jurisdiction over your place of residence (military families on assignment in an area different from their permanent place of residence may submit their request to the office with jurisdiction over either location):

- A letter stating the basis for your deferred action request;
- A copy of DD Form 4, Enlistment/Reenlistment Document;

AR2022_300744

Case 1:18-cv-00068   Document 607-5   Filed on 11/03/22 in TXSD   Page 54 of 200

- Evidence of any additional factors supporting a favorable exercise of discretion in the form of deferred action;

- Proof of family relationship, if applying based on family relationship to military member, veteran or enlistee, such as:

  - Marriage certificate

  - Documentation of termination of previous marriage

  - Son or daughter's birth certificate

  - Military member's birth certificate with parent's name

  - Proof of enrollment in the Defense Enrollment Eligibility Reporting System (DEERS);

- Proof of residence in the U.S. at the time of the service member's death (If you are a surviving family member);

- Proof of identity and nationality;

- If applicable, any document you used to lawfully enter the U.S.;

- Form G-325A, Biographic Information; and

- Two identical, color, passport-style photographs.

For information about deferred action and how to apply, see the Adjudicator's Field Manual Chapter 21.1(c)(2) (PDF, 2.86 MB).

## Filipino World War II Veterans Parole Program   ⌄

Effective June 8, 2016, certain Filipino World War II veterans and their spouses who are U.S. citizens or lawful permanent residents (LPRs) may request parole for certain family members. For more information, see our Filipino World War II Veterans Parole Program page.

## Contact Us   ⌄

If you or your family members have questions about discretionary options, please contact our toll-free Military Help Line at 877-CIS-4MIL (877-247-4645, TTY 800-877-8339). For more information, see our Military Help Line page. You can also schedule an appointment online with a USCIS immigration officer.

 Close All     Open All

Last Reviewed/Updated: 04/12/2021

AR2022_300745

AR2022_300746

U.S. **Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000



**U.S. Citizenship
and Immigration
Services**

August 21, 2020

## Memorandum

TO:          Associate Directors and Program Office Chiefs

FROM:        Joseph Edlow
             Deputy Director for Policy

SUBJECT:     Implementing Acting Secretary Chad Wolf's July 28, 2020 Memorandum,
             "Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial
             Discretion with Respect to Individuals Who Came to the United States as
             Children'"

On July 28, 2020, Acting Secretary of Homeland Security Chad Wolf issued a memorandum
entitled, "Reconsideration of the June 15, 2012 Memorandum Entitled 'Exercising Prosecutorial
Discretion with Respect to Individuals Who Came to the United States as Children.'" In light of
the U.S. Supreme Court's decision in *Department of Homeland Security (DHS), et al. v. Regents
of the University of California, et al.* Nos. 18-587, 18-588, 18-589, Acting Secretary Wolf
rescinded memoranda issued by former Acting Secretary Elaine Duke in 2017 and former
Secretary Kirstjen Nielsen in 2018 that had concluded that the Deferred Action for Childhood
Arrivals (DACA) policy established on June 15, 2012 by former Secretary Janet Napolitano[1]
(hereafter "the Napolitano memorandum") should be rescinded after an orderly wind-down
process.

Acting Secretary Wolf's memorandum (hereafter "the Wolf Memorandum") also set forth
departmental action to effect certain immediate changes to limit the scope of the DACA policy
pending a full and careful reconsideration of the DACA policy. Through this memorandum, I am
providing additional guidance to facilitate implementation of the specific changes to the DACA
policy that are within the purview of USCIS.

The Wolf Memorandum directed the following actions, effective immediately:

- Reject all initial DACA requests and associated applications for Employment
  Authorization Documents, and refund all associated fees, without prejudice to re-filing

---

[1] Memorandum for David Aguilar, Acting Commissioner, CBP, et al., from Janet Napolitano, Secretary, DHS, Re:
Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children (June
15, 2012) ("Napolitano memorandum").

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 2

> such requests should DHS determine to begin accepting initial requests again in the future;

- Adjudicate all pending and future properly submitted DACA renewal requests and associated applications for Employment Authorization Documents from current beneficiaries;

- Limit the period of any deferred action granted pursuant to the DACA policy after the issuance of this memorandum (and thereby limit the period of any associated work authorization) to one year;

- Refrain from terminating any grants of previously issued deferred action or revoking any Employment Authorization Documents based solely on the directives in this memorandum for the remaining duration of their validity periods;

- Reject all pending and future Form I-131 applications for advance parole from beneficiaries of the DACA policy and refund all associated fees, absent exceptional circumstances;

- Refrain from terminating any grants of previously approved advance parole based solely on the directives in this memorandum for the remaining duration of their validity periods;

- Exercise its discretionary authority to terminate or deny deferred action at any time when immigration officials determine termination or denial of deferred action is appropriate; and

- Continue to comply with the information-sharing policy as reflected in the DACA Frequently Asked Questions issued alongside the Napolitano memorandum, and as set forth in USCIS's Form I-821D instructions. Nothing in this memorandum changes that policy.

To facilitate implementation of the Wolf Memorandum, I am providing additional guidance to USCIS personnel as follows:

> ➢ **Reject all initial DACA requests and associated applications for Employment Authorization Documents, and return all associated fees, without prejudice to re-filing such requests should DHS determine to begin accepting initial requests again in the future.**

The Wolf Memorandum makes clear that these changes should apply to all initial DACA requests submitted by aliens who have never before received DACA, whether submitted after the issuance of his memorandum or pending before USCIS at the time his memorandum was issued. In accordance with the Wolf Memorandum, USCIS shall reject and return the fees for any DACA requests and associated applications for employment authorization submitted by aliens *who have never before received a grant of DACA.* Since the Supreme Court's decision in

AR2022_300748

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 3

*Regents*, these requests, if properly filed, have generally been on hold at the USCIS filing location pending further action by USCIS.[2]

Historically, USCIS policy on DACA renewals has permitted DACA recipients to request renewal of DACA for up to one year after their underlying DACA grant has expired.  DACA recipients who failed to submit their renewal requests within the one-year time period following expiration have generally been permitted to request DACA anew.  Given the lapse of time between these aliens' last DACA period and their subsequent request to again receive DACA, however, USCIS has treated such requests as requests for "initial" DACA for required evidence, processing, and adjudication purposes.  Likewise, DACA recipients whose most recent period of DACA has been terminated by USCIS (rather than expired on its own terms) have also been permitted to request DACA anew, but such requests are treated as requests for "initial" DACA (even if the lapse of time between the termination of their most recent period of DACA and their subsequent request to receive DACA again is less than one year).

Under the preliminary injunctions issued in January and February of 2018,[3] USCIS has accepted and adjudicated DACA requests from aliens who have previously received grants of DACA *at any time*—including requests that are treated as "initial" requests for the reasons described above.  Given the Acting Secretary's desire to maintain the status quo of the past few years, USCIS will continue to accept and adjudicate such requests notwithstanding any language in the Wolf Memorandum about rejecting "all" requests for initial DACA.

> ➤ **Adjudicate all pending and future DACA renewal requests and associated applications for Employment Authorization Documents from DACA recipients.**

USCIS shall continue to adjudicate all pending DACA renewal requests and renewal requests received after the Wolf Memorandum, as well as certain initial requests as discussed above, under the general adjudicative guidelines in place for DACA. USCIS will continue to reject, without prejudice to re-submission, DACA renewal requests that are not properly filed in accordance with form instructions and USCIS filing guidance, as it has done since USCIS first started accepting DACA renewal requests.  While USCIS will continue to adjudicate DACA requests under the same general adjudicative guidelines, USCIS is implementing certain immediate changes to DACA processing consistent with and in furtherance of the Wolf Memorandum.

Since June 2014 when DHS and USCIS announced the DACA renewal process, USCIS has consistently instructed DACA recipients to file renewal requests between 150 days and 120 days

---

[2] Initial DACA requests that were properly filed prior to September 5, 2017, should be adjudicated to completion in the event that any of these requests still remain pending with USCIS.  This guidance to reject and return the fees for pending initial DACA requests does not apply to initial DACA requests properly filed prior to September 5, 2017.

[3] See https://www.uscis.gov/humanitarian/deferred-action-for-childhood-arrivals-response-to-january-2018-preliminary-injunction

AR2022_300749

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 4

prior to their DACA expiration.[4]  Previously, USCIS has accepted renewal requests filed in advance of that period.  In furtherance of the directives in the Wolf Memorandum, USCIS will generally reject DACA renewal requests received more than 150 days prior to the expiration of the DACA recipient's current DACA validity period.  The Wolf Memorandum expressed concerns with the scope of the DACA policy during the interim period the policy is under review.  Exercising discretion to generally reject DACA renewal requests received more than 150 days prior to the expiration of the alien's current period of DACA is more consistent with our long-existing guidance to DACA recipients and serves other important operational interests to improve USCIS's processing and operational efficiencies as a whole.  Additionally, implementing these case intake procedures recognizes that the DACA policy is under comprehensive legal and policy review and may be modified or entirely rescinded by the Acting Secretary once DHS's review of the DACA policy is complete.  Therefore, USCIS believes that it is more prudent to generally reject DACA renewal requests received more than 150 days prior to the expiration of the DACA recipient's current DACA validity period as the DACA policy may be revised or rescinded before USCIS would normally take final adjudicative action on these early filed renewal requests.

USCIS understands that applicants, petitioners, and requestors have an interest in timely adjudications.  This is particularly true for aliens granted temporary authorization to work in the United States who then apply to USCIS to renew their employment authorization documents before their temporary employment authorization expires.  The interim adjustment discussed in this memorandum with respect to early filed DACA renewals balances concerns with the scope of the DACA policy during this interim period with the interests DACA recipients have in preventing gaps in DACA and associated employment authorization.  Further, this guidance reflects an understanding that USCIS processes millions of requests for immigration benefits every year in addition to DACA requests, and therefore USCIS must also balance the interests of all other individuals requesting immigration benefits from the agency.  Of course, this balancing of interests must be done with consideration given to available resources.

USCIS has seen thousands of instances of current DACA recipients filing for DACA renewal when they still have more than 150 days remaining in their current DACA validity.  USCIS data shows that as of June 30, 2020, there were over 11,000 active DACA recipients with DACA renewals pending before USCIS whose current DACA was not set to expire until after January 1, 2021; further, there were nearly 400 active DACA recipients with pending renewal requests whose DACA was not set to expire until the year 2022.

In an effort to minimize overlapping validity periods between an alien's renewed DACA validity period and an alien's current DACA validity period, USCIS has generally withheld issuing final approval of a DACA renewal request until the alien's remaining DACA validity period is closer to the expiration date.  USCIS will continue to manage DACA renewal processing to limit significant overlaps in the renewal validity period and the alien's current DACA validity period.  However, permitting and accepting DACA renewal requests filed many months in advance of

---

[4] See DACA FAQ 50; https://www.uscis.gov/archive/frequently-asked-questions#renewal; See also: https://www.dhs.gov/news/2014/06/05/secretary-johnson-announces-process-daca-renewal

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 5

DACA expiration only to be preliminarily processed by USCIS and placed on hold is not an efficient use of agency resources.

In assessing whether USCIS should exercise its discretion to begin generally rejecting DACA renewal requests filed more than 150 days prior to expiration, I considered the interests DACA renewal requestors may have in being permitted to file for renewal more than 150 days prior to DACA expiration. In consideration of these potential interests, I examined DACA renewal processing times. USCIS data shows that from August 1, 2019 to August 1, 2020, approximately ninety-six percent of DACA renewal requests processed were completed in 120 or fewer days.

The data demonstrate that in the overwhelming majority of DACA renewal cases, it is not necessary to accept DACA renewal requests more than 150 days before the alien's current DACA period expires in order to facilitate timely processing and minimize gaps in DACA and associated employment authorization. For those aliens, the only effect of this change will be for those early requesters either to wait until the specified period to request renewal or to re-file an early-filed renewal request at the appropriate time. In cases where the requestor may not continue to meet the DACA guidelines, including concerns that arise from background check results, renewal processing may require more time, but these outliers do not reasonably justify permitting routine acceptance of early filings during this interim period while the DACA policy is under review given USCIS's other policy and operational concerns.

Lastly, nothing precludes USCIS from exercising its discretion to accept a DACA renewal request filed 150 days or more in advance of expiration if there are legitimate reasons for doing so, and nothing precludes USCIS from again modifying recommended filing timelines either during this interim period or should DHS announce changes to the DACA policy in the future.

> **Limit the period of any deferred action granted pursuant to the DACA policy after the issuance of this memorandum (and thereby limit the period of any associated work authorization) to one year.**

As described in the Wolf Memorandum, all requests for DACA and associated employment authorization granted after July 28, 2020 will be for a validity period of no more than one year.[5]

The one-year validity period shall begin on the date the DACA request receives final approval, consistent with past practices, and have an ending validity date that is no more than one year minus one day from the date of approval. Also consistent with past practices, the associated employment authorization validity period shall end on the same date that the DACA validity period ends.

The Wolf Memorandum acknowledged that shortening validity periods to one year during this interim period will have the effect of increasing the total amount of fees DACA requestors would pay over a multi-year period and asked USCIS to consider whether it is possible to reduce renewal fees during this time. USCIS is currently considering the merits and feasibility of

---

[5] 8 CFR 274a.12(c) states in pertinent part that "USCIS, in its discretion, may establish a specific validity period for an employment authorization document . . ."

AR2022_300751

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 6

reducing DACA-related fees during the interim period the DACA policy is under review. Pursuant to INA Section 286(m), DHS may set fees at a level that will "ensure recovery of full costs" of providing adjudication services.  While USCIS has never charged a fee for Form I-821D, Consideration of Deferred Action for Childhood Arrivals, all DACA requestors are required to file Form I-765, Application for Employment Authorization, which does require a fee with very limited exemptions. DACA requestors are also required to pay a biometrics fee.

USCIS notes that the new fee rule, which becomes effective on Oct. 2, 2020, includes a fee increase for the Form I-765, Application for Employment Authorization, for all categories of employment authorization **except** for the DACA category. The fee for DACA-based applications for employment authorization will remain at $410, plus an $85 biometrics fee, for the time being. Lastly, as noted above, USCIS will continue to manage DACA renewal processing to limit significant overlaps in the renewal validity period and the alien's current DACA validity period, which may lessen some of the economic impact from shortened DACA renewal validity periods.

> ➢ **Refrain from terminating any grants of previously issued deferred action or revoking any Employment Authorization Documents based solely on the directives in this memorandum for the remaining duration of their validity periods.**

Notwithstanding the prospective changes made by the Wolf Memorandum, USCIS will allow previous two-year grants of DACA and associated employment authorization to remain undisturbed during their existing two-year validity periods (unless USCIS terminates an alien's DACA and associated employment authorization for other reasons).  Consistent with this guidance, two-year DACA recipients who apply for a replacement EAD due to loss, theft, or the mutilation of their prior EAD will receive a replacement EAD with the same expiration date based on the original two-year validity period, assuming the application is otherwise approvable.

> ➢ **Reject all pending and future Form I-131 applications for advance parole from DACA recipients and refund all associated fees, absent exceptional circumstances.**

Acting Secretary Wolf states the following in his memorandum with respect to advance parole:

> "In light of my concerns about the policy as a whole, I do not believe that, at least absent exceptional circumstances, DHS should continue to make the benefit of advance parole available while I reconsider whether the DACA policy itself should exist."

Because USCIS will not be able to determine whether Form I-131 applications already received at the DACA-specific filing location fit within Secretary Wolf's stated parole policy without adjudicating the applications, and applicants who filed their Form I-131 before the Wolf Memorandum was issued did not have prior knowledge of the guidance in the memorandum, USCIS has determined that it would be more efficient and fair if applicants refile their applications under the new guidance.  Therefore, USCIS shall reject and return the fees for all Form I-131 applications received at the DACA specific filing location that have been held since July 24, 2020.

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 7

If those DACA recipients still wish to submit a request for advance parole, they may submit their Form I-131 applications consistent with filing instructions that will be announced on the USCIS website. The Form I-131 rejection notice shall inform applicants that they may re-apply for advance parole consistent with the Wolf Memorandum and filing instructions that will be announced on the USCIS website.

Regarding Form I-131 applications filed by DACA recipients at non-DACA filing locations before the Wolf Memorandum was issued and therefore accepted, USCIS will treat these applications similarly to those that have been on hold at the DACA-specific filing location. USCIS will administratively close these cases and refund the fees. USCIS will issue notices informing these applicants that their application has been administratively closed consistent with the Wolf Memorandum. The notice shall inform applicants that they may re-apply for advance parole consistent with the Wolf Memorandum and filing instructions that will be announced on the USCIS website.

USCIS will continue to maintain the current policy for DACA recipients who apply for advance parole in association with other non-DACA immigration requests. For instance, if a DACA recipient has a pending Form I-485 Application to Register Permanent Residence or Adjust Status and requests advance parole on the basis of his or her pending Form I-485, USCIS will adjudicate the advance parole request under the existing policies for Form I-485-based advance parole requests. USCIS will not apply this memorandum to a parole request by a DACA recipient if the request is associated with another underlying immigration benefit (i.e., other than DACA) as described in the instructions to Form I-131 or in USCIS policy guidance.

DACA recipients who have no separate basis for requesting advance parole as described in the instructions to Form I-131 may request advance parole if they have valid DACA and can demonstrate that they warrant the extraordinary privilege of being permitted to return to the United States after traveling abroad, even without a lawful immigration status, pursuant to a valid advance parole travel document.

The Wolf Memorandum sets forth new agency guidance with respect to management of the adjudication of advance parole applications submitted by DACA recipients who do not have a non-DACA basis for advance parole. For nearly three years, advance parole applications submitted by DACA recipients were rejected or denied by USCIS (the applications that were accepted and then denied were accepted solely because they were submitted to an incorrect filing location).

The Wolf Memorandum does not revive the prior DACA-based advance parole standards[6] or add a supplementary exceptional circumstances test to those standards. Rather, the Wolf

---

[6] The prior policy for granting advance parole based on DACA stated that USCIS would generally only grant advance parole if the DACA recipient's travel abroad would be in the furtherance of:

- Humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;
- Educational purposes, such as semester-abroad programs and academic research, or;

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 8

Memorandum institutes a new general hold on granting advance parole to DACA recipients based on prior DACA-based advance parole standards during an interim period while DHS conducts a full review of the DACA policy. As Acting Secretary Wolf noted, it makes sense to continue this approach while he reconsiders whether to rescind or revise the prior policy. The only difference is that the Wolf Memorandum permits USCIS to process advance parole applications submitted by DACA recipients consistent with INA Section 212(d)(5) and based on a full consideration of all the discretionary factors presented in the alien's application.

Such grants of advance parole should, as a threshold matter, be consistent with the statutory description of parole under INA Section 212(d)(5), 8 U.S.C. § 1182(d)(5)(A), which mandates a case-by-case assessment and a determination that parole of the alien is for urgent humanitarian reasons or significant public benefit. Accordingly, I am directing USCIS officers to ensure that any grants of advance parole to DACA recipients are consistent with the statute and take into consideration all other discretionary factors present in the case under the totality of circumstances.

Secretary Wolf's memorandum providing for "exceptional circumstances" should be understood in the context of this existing high statutory standard for parole found in INA Section 212(d)(5). Therefore, in most instances, traveling abroad for educational purposes, employment related purposes, or to visit family members living abroad will not warrant advance parole under Secretary Wolf's interim policy regarding the discretionary exercise of parole for urgent humanitarian reasons or significant public benefit. Additionally, as USCIS has noted since DACA recipients were first permitted to apply for advance parole, travel for vacation is not a valid basis for advance parole.

While the determination of whether to grant advance parole to a DACA recipient based on exceptional circumstances is a case-by-case assessment involving the assessment of the totality of factors presented, some examples of travel that may fit within the statutory standard for parole include, but are not limited to the following:

- Travel to support the national security interests of the United States including U.S. military interests;

- Travel in furtherance of U.S. federal law enforcement interests;

- Travel to obtain life-sustaining medical treatment that is not otherwise available to the alien in the United States;

- Travel needed to support the immediate safety, well-being, or care of an *immediate* relative, particularly minor children of the alien.

The burden shall be on the alien to establish eligibility for parole pursuant to INA section 212(d)(5).

---

- Employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

AR2022_300754

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 9

USCIS will consider all discretionary factors presented in the application before making a decision on the advance parole request. The advance permission to travel abroad and return to the United States pursuant to an advance parole travel document is an extraordinary privilege. It is a particularly extraordinary privilege when conferred to an alien who has resided in the United States contrary to our immigration laws (irrespective of when the alien arrived in the United States). The June 15, 2012 Napolitano memorandum itself contained no directive to provide this extraordinary benefit to DACA recipients, and USCIS has not granted this benefit to DACA recipients since the issuance of the September 5, 2017, Duke memorandum.

To ensure compliance with this interim policy, I am directing that any applications for advance parole preliminarily assessed to be approvable by the Service Center(s) designated to adjudicate such applications, receive concurrence from no lower than the Deputy Associate Director for Service Center Operations Directorate (SCOPS) prior to final approval. SCOPS will develop a process to facilitate this review in a timely manner.

SCOPS shall immediately work with the Office of Intake and Document Production (OIDP) and the External Affairs Directorate (EXA) to develop public guidance consistent with this memorandum. The public guidance shall make clear that any applications for advance parole submitted by DACA recipients and received at the designated filing location will be considered a DACA-based application for advance parole based on the Wolf Memorandum.

The public guidance shall make clear that USCIS will accept the application if properly completed and process the fee prior to making an adjudicative determination on whether advance parole should be granted. The public guidance shall also make clear that any applications denied by USCIS because USCIS finds that the application does not merit approval, in the exercise of its discretion, under INA Section 212(d)(5), are not appealable and shall not receive a refund of application fees.

As noted above, INA Section 286(m) gives USCIS authority to collect application fees that "ensure recovery of the full costs of providing [adjudication services]." The determination of whether to grant advance parole under INA Section 212(d)(5) must be made by a trained Immigration Officer after required background checks and other processing requirements are completed. Those services cost money which USCIS recoups from the application fee. As those services must be completed prior to a final determination on whether the alien merits a grant of advance parole USCIS will not refund the application fees on advance parole applications that USCIS denies, consistent with USCIS standard practice.

SCOPS will work with the Office of Policy and Strategy (OP&S) and the Office of the Chief Counsel (OCC) to develop additional training or guidance materials to assist officers in the adjudication of these applications consistent with this memorandum.

> ➤ **Refrain from terminating any grants of previously approved advance parole based solely on the directives in this memorandum for the remaining duration of their validity periods.**

USCIS shall not terminate any previously approved advance parole documents issued to DACA recipients during the stated validity period of the existing advance parole document, absent a

Implementation of Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children' Memorandum
Page 10

valid, separate legal basis distinct from the directives in the Wolf Memorandum for terminating advance parole.[7]

> **Exercise its discretionary authority to terminate or deny deferred action at any time when immigration officials determine termination or denial of deferred action is appropriate.**

Based on the immediate review of the DACA policy, including the immediate interim changes to the policy discussed in the Wolf Memorandum and this memorandum, I am directing SCOPS to immediately review the internal guidance document referred to as the DACA SOP last revised on August 28, 2013. SCOPS should work with OCC and OP&S to immediately update the DACA SOP consistent with the Wolf Memorandum and this memorandum. The updated DACA SOP shall make clear that it is intended solely for the instruction of USCIS personnel in the performance of their official duties, and that the SOP is not legally binding, does not confer any substantive rights to removable aliens, and does not otherwise constrain DHS' authority to enforce the immigration laws passed by Congress.

SCOPS should also review other internal DACA operational guidance and training materials currently in use to ensure that they are consistent with the Wolf Memorandum and this memorandum.

USCIS must continue to follow the DACA termination procedures required by all relevant court orders as long as they remain in effect.

> **Continue to comply with the information-sharing policy as reflected in the DACA Frequently Asked Questions issued alongside the Napolitano memorandum, and as set forth in USCIS's Form I-821D instructions. Nothing in this memorandum makes any change to that policy.**

USCIS shall continue to operate under the DACA information sharing policy described above. Nothing in this memorandum or the Wolf Memorandum makes any change to that policy.

**Use**

This memorandum is intended solely for the instruction of USCIS personnel in the performance of their official duties. It is not intended to, does not, and may not be relied upon to, create any right or benefit, substantive or procedural, enforceable at law, or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

---

[7] USCIS has not granted advance parole based on the standards associated with DACA since September 5, 2017.

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

 **Homeland Security** | **Environmental Planning and Historic Preservation Decision Support System**

## Deferred Action for Childhood Arrivals (DACA) Rulemaking  - Project Approved

## Status

- In Preparation (04/11/2022)
- Environmental Review (04/12/2022)
- Senior Environmental Review (04/12/2022)
- Proponent Review (04/12/2022)
- Project Approved (04/12/2022)

## Project Information

### General

**Name:** Deferred Action for Childhood Arrivals (DACA) Rulemaking

**DSS ID:** DSS-USCIS-2022-14393

**Security:** Unclassified

**Description:** On June 15, 2012, the U.S. Department of Homeland Security (DHS) established the Deferred Action for Childhood Arrivals (DACA) policy. The policy— which describes the Secretary of Homeland Security's (Secretary's) exercise of her prosecutorial discretion in light of the limited resources that DHS has for removal of undocumented noncitizens—directed U.S. Citizenship and Immigration Services (USCIS) to create a process to defer removal of certain noncitizens who years earlier came to the United States as children, meet other criteria, and do not present other circumstances that would warrant removal. Since that time, more than 825,000 people have successfully requested deferred action under this policy. On January 20, 2021, President Biden directed DHS, in consultation with the Attorney General, to take all appropriate actions to preserve and fortify DACA, consistent with applicable law.  The Secretary is now exercising his broad authorities to administer and enforce the immigration laws and proposed a rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA

For the purpose of this analysis, the direct effects of the Proposed Action are the administrative actions of executing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. There are no anticipated indirect effects.  No change in population is anticipated.  Independent actions taken by requestors or by third parties are not federal actions and are outside the scope of this analysis.

This action is covered under CATEX A3(c) as is limited to the promulgation of a rule which is strictly administrative or procedural in nature which implements, without substantive change, procedures,manuals, and other guidance documents.

**AR2022_300757**

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

**Critical Infrastructure?:** No
**Adopting Another Agency Catex Determination?:** No
**Project Types:**

· Administrative & Regulatory Activities - Promulgation of rules, issuance of rulings or interpretations, and the development and publication of policies, orders, directives, notices, procedures, manuals, advisory circulars, and other guidance documents of the following nature:(a) Those of a strictly administrative or procedural nature;(b) Those that implement, without substantive change, statutory or regulatory requirements;(c) Those that implement, without substantive change, procedures, manuals, and other guidance documents;(d) Those that interpret or amend an existing regulation without changing its environmental effect;(e) Technical guidance on safety and security matters; or,(f) Guidance for the preparation of security plans. (A3)

· Administrative & Regulatory Activities - Other, Administrative & Regulatory Activities - A3 CATEX Application with full Record of Environmental Consideration

**Existing EA/EIS?:** No
**Requires EA/EIS?:** No
**Project Priority:** Normal
**Federal Assistance:** No
**Estimated Project Cost:**  (not entered)


## Component

**Component:** USCIS - U.S. Citizenship and Immigration Services
**Tracking Number:** USCIS-2021-0006


## Dates

**FY Funding:** 2022
**Proposed Project Start:** 11/01/2022
**Proposed Project End:** On-going
**Review Start:** 04/04/2022

## Project Location

• Nationwide

## Team

• Document Preparer, Jennifer Hass, jennifer.hass@hq.dhs.gov

• Environmental Reviewer, Jennifer Hass, jennifer.hass@hq.dhs.gov

• Senior Environmental Reviewer, Teresa Pohlman, teresa.pohlman@hq.dhs.gov

• Proponent, Mark Boivin, mark.r.boivin@uscis.dhs.gov


## Categorical Exclusions

• A3 - Promulgation of rules, issuance of rulings or interpretations, and the development and publication of policies, orders, directives, notices, procedures, manuals, advisory circulars, and other

**AR2022_300758**

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

guidance documents of the following nature:

(a) Those of a strictly administrative or procedural nature;

(b) Those that implement, without substantive change, statutory or regulatory requirements;

(c) Those that implement, without substantive change, procedures, manuals, and other guidance documents;

(d) Those that interpret or amend an existing regulation without changing its environmental effect;

(e) Technical guidance on safety and security matters; or,

(f) Guidance for the preparation of security plans.

## Required Conditions

1. Any change to the Proposed Action that may cause a physical interaction with the human environment will require re-evaluation for compliance with NEPA and other EP&HP requirements before the action can proceed.

2. This review addresses NEPA and other EP&HP requirements as described in DHS Directive 023-01. This review may identify the need for additional federal, state, and/or local permits, approvals, etc. required for the Proposed Action. However, this review may not satisfy those requirements and the Proponent is responsible for ensuring that all other appropriate federal, state, and/or local permits, approvals, etc. have been obtained.

## Decision Documents

- Memorandum For Record (MFR), 6.56kB

## Attachments

- There are no attachments.

## Comments

- There are no comments.

## EPHP Review

### Environmental Resources

- Is the Proposed Action a piece of a larger action or connected to another action? -- No
  Please explain how you came to this determination. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  While this rulemaking complements other USCIS

**AR2022_300759**

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

immigration efforts, it is not dependent on any other action nor does it trigger any subsequent action. The action is not part of a larger or connected action.

- Will the Proposed Action have a potentially significant effect on public health or safety? Areas to consider include, but are not limited to: environmental justice considerations; air quality; noise impacts; hazardous wastes and/or contamination; wastewater; potable water; and changes in modes or safety of transportation. -- No
  Explain how the proposed action would not have a potentially significant effect on public health or safety. : There are no anticipated direct or indirect effects to public health or safety associated with the regulatory action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. The Proposed Action does not include any construction or ground disturbing activities and is not anticipated to have a potentially significant effect on environmental justice communities, air quality, noise levels, hazardous wastes and/or contamination, wastewater, potable water, or changes in modes or safety of transportation in any particular municipality, metropolitan statistical area, or region of the United States.

- Would the proposed action place a disproportionately high and adverse human health or environmental effect on minority populations and low-income populations? -- No

- Will the Proposed Action have a potentially significant effect on species or habitats protected by the Endangered Species Act, Marine Mammal Protection Act, Migratory Bird Treaty Act, Bald and Golden Eagle Protection Act, or Magnuson-Stevens Fishery Conservation and Management Act? -- No
  Provide a conclusion under which statute the determination was made (e.g., no effect, NLAA, LAA, for ESA, etc.), how the determination was made, why it is considered significant, and copies of any consultation (informal and/or formal). : The Proposed Action is a regulatory action and is not anticipated to result in a potentially significant effect on species or habitats protected under ESA, MMPA, MBTA, BGEPA, or MSFCMA. The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  There are no direct or indirect effects anticipated to protected species or their habitat as a result of the Proposed Action.
  Attachments:  FWS, NMFS, or Wildife Agency Consultation:  (No files uploaded yet.)

- What is your Endangered Species Act (ESA) finding and determination? -- No effect
  Explain how the determination was made (e.g., are species present in the area but your proposed action will have no effect? why?). Although not required, recommend attaching any consultation or correspondence conducted.: The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. This final rule does not expand eligibility criteria, meaning only those who meet the threshold

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA. The Proposed Action is not anticipated to result in a change in U.S. Population.   The Proposed Action is not anticipated to result in potential direct or indirect impacts on species or habitats protected under the Endangered Species Act (ESA).  We have determined a "no effect" determination is appropriate for this action.

Attachments:  ESA consultation:  (No files uploaded yet.)

- What is your Marine Mammal Protection Act (MMPA) finding and determination? -- No effect or negligible effect

Explain how the determination was made (e.g., are species present in the area but your proposed action will have no effect or negligible effects? why?). Although not required, recommend attaching any consultation or correspondence conducted.: The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA. The Proposed Action is not anticipated to result in a change in U.S. Population.   The Proposed Action is not anticipated to result in potential direct or indirect impacts on species or habitats protected under the Marine Mammal Protection Act (MMPA).

As this action is administrative and regulatory in nature and would not result in direct or indirect impacts on MMPA listed species or habitat, we have determined a "no effect" determination is appropriate for this action.

Attachments:  MMPA consultation:  (No files uploaded yet.)

- Would the proposed action adversely affect a species protected under the Bald and Golden Eagle Protection Act or Migratory Bird Treaty Act or habitat for such species?  -- No

Explain how the determination was made (e.g., are species present in the area but your proposed action will have no adverse effect or no significant effect? why?). Although not required, recommend attaching any consultation or correspondence conducted.: Proposed Action is a regulatory action and is not anticipated to adversely affect Bald or Golden Eagles, Migratory Birds, or their habitats as defined in Bald and Golden Eagle Protection Act (BGEPA) or Migratory Bird Treaty Act (MBTA). The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  There are no direct or indirect effects anticipated to species protected under the BGEPA or MBTA.  Because this action is administrative and regulatory in nature and is not anticipated to result in impacts on species or habitat protected under BGEPA or MBTA, we have determined a "no effect" determination is

appropriate for this action.

Attachments:  BGEPA MBTA consultation:  (No files uploaded yet.)

- What is your Magnuson-Stevens Fishery Conservation and Management Act (essential fish habitat) finding and determination? -- No effect

Attachments:  EFH consultation:  (No files uploaded yet.)

- Will the Proposed Action have a potentially significant effect on an environmentally sensitive area? Examples include, but are not limited to: areas having special designation or recognition such as prime or unique agricultural lands, coastal zones, designated wilderness study areas, wild and scenic rivers, 100-year floodplains, wetlands, sole source aquifers, Marine Sanctuaries, National Wildlife Refuges, National Parks, National Monuments, etc.  -- No resources present

Please explain how you came to this determination. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  No ground disturbance or impacts to prime or unique agricultural lands, coastal zones, designated wilderness study areas, wild and scenic rivers, 100-year floodplains, wetlands, sole source aquifers, Marine Sanctuaries, National Wildlife Refuges, National Parks, National Monuments, or other protected lands or resources are anticipated as a result of this rulemaking.  No significant direct or indirect impacts to environmentally sensitive areas are anticipated as a result of the Proposed Action.  DHS has no reason to believe that any persons present in the United States as an indirect result of the Proposed Action would impact an environmentally sensitive area.

- Will the Proposed Action result in the potential violation of a Federal, State, or local law or requirement imposed to protect the environment? -- No

Please summarize determination. : The Proposed Action will not result in a direct violation of Federal, State, or local law or requirement imposed for the protection of the environment. The Proposed Action is an administrative action with no construction or ground disturbing activities. The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  DHS has no reason to believe that any person present in the United States as an indirect result of the Proposed Action would violate any Federal, State, or local law or requirement imposed to protect the environment. Independent actions taken by requestors or by third parties are not Federal actions and are not federal actions and outside the scope of this analysis.

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

- Will the Proposed Action have an effect on the quality of the human environment that is likely to be highly controversial in terms of scientific validity, likely to be highly uncertain, or likely to involve unique or unknown environmental risks?  -- No

Required: Please explain. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA. The Proposed Action does not include Federal activities that are highly controversial in terms of scientific validity, actions that are highly uncertain, or involve unique or unknown environmental risk.

- Will the Proposed Action employ new or unproven technology that is likely to involve unique or unknown environmental risks, where the effect on the human environment is likely to be highly uncertain, or where the effect on the human environment is likely to be highly controversial in terms of scientific validity?  -- No

Required: Please explain.: The Proposed Action is administrative and regulatory in nature and will not employ new or unproven technology.  The Proposed Action is not anticipated to affect the quality of the human environment in a way that is likely to be highly controversial in terms of scientific validity, be highly uncertain, or involve unknown environmental risk.

- Will the Proposed Action establish a precedent for future actions that have significant effects? -- No

Please explain how you came to this determination. : The Proposed Action is an independent action that will not establish precedent for future action with significant effects. Additionally, future DHS major federal actions will be evaluated in accordance with Directive 023-01 rev 01 and Instruction 023-01-001-01 rev 01 for compliance with the National Environmental Policy Act.

- Is the Proposed Action significantly greater in scope or size than normally experienced for its particular category of action? -- No

Required: Please summarize determination.: The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  This action is consistent in scope and size to previous USCIS regulatory actions.

- Will the Proposed Action have the potential to result in the significant degradation of existing poor environmental conditions? Will the Proposed Action initiate a potentially significant environmentally degrading influence, activity, or effect in areas not already significantly modified from their natural condition? -- No

Please explain how you came to this determination. : The Proposed Action is not anticipated to result in any direct or indirect impacts that would have a significant degradation of existing poor environmental conditions.  Additionally, the Proposed Action will not initiate a potentially

AR2022_300763

significant environmentally degrading influence, activity, or effect in areas not already significantly modified from their natural condition. The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  The Proposed Action does not include any construction or ground disturbing activities.

- Is the Proposed Action related to other actions with individually insignificant but cumulatively significant impacts?  -- No

    Please explain how you came to this determination. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  There are no anticipated direct or indirect environmental impacts associated with the Proposed Action.  While the action falls within the agency's statutory authority to administer the nation's lawful immigration system, the Proposed Action is independent in nature and not dependent upon or triggered by any other action with individually insignificant but cumulatively significant impacts.

- Are there any other requirements for the protection of the environment that need to be considered for this proposed action?  -- No

## Historic Preservation & Cultural Resources

- Is the Proposed Action a piece of a larger action or connected to another action? -- No

    Please explain how you came to this determination. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  While this rulemaking complements other USCIS immigration efforts, it is not dependent on any other action nor does it trigger any subsequent action. The action is not part of a larger or connected action.

- Will the Proposed Action have a potentially significant effect on public health or safety? Areas to consider include, but are not limited to: environmental justice considerations; air quality; noise impacts; hazardous wastes and/or contamination; wastewater; potable water; and changes in modes or safety of transportation. -- No

    Explain how the proposed action would not have a potentially significant effect on public health or safety. : There are no anticipated direct or indirect effects to public health or safety associated with the regulatory action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. The Proposed Action does not include any construction or

AR2022_300764

ground disturbing activities and is not anticipated to have a potentially significant effect on environmental justice communities, air quality, noise levels, hazardous wastes and/or contamination, wastewater, potable water, or changes in modes or safety of transportation in any particular municipality, metropolitan statistical area, or region of the United States.

- Would the proposed action place a disproportionately high and adverse human health or environmental effect on minority populations and low-income populations? -- No
- Will the Proposed Action have a potentially significant effect on species or habitats protected by the Endangered Species Act, Marine Mammal Protection Act, Migratory Bird Treaty Act, Bald and Golden Eagle Protection Act, or Magnuson-Stevens Fishery Conservation and Management Act?  -- No

  Provide a conclusion under which statute the determination was made (e.g., no effect, NLAA, LAA, for ESA, etc.), how the determination was made, why it is considered significant, and copies of any consultation (informal and/or formal). : The Proposed Action is a regulatory action and is not anticipated to result in a potentially significant effect on species or habitats protected under ESA, MMPA, MBTA, BGEPA, or MSFCMA. The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  There are no direct or indirect effects anticipated to protected species or their habitat as a result of the Proposed Action.

  Attachments:  FWS, NMFS, or Wildife Agency Consultation:  (No files uploaded yet.)

- What is your Endangered Species Act (ESA) finding and determination? -- No effect

  Explain how the determination was made (e.g., are species present in the area but your proposed action will have no effect? why?). Although not required, recommend attaching any consultation or correspondence conducted.: The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.   The Proposed Action is not anticipated to result in potential direct or indirect impacts on species or habitats protected under the Endangered Species Act (ESA).  We have determined a "no effect" determination is appropriate for this action.

  Attachments:  ESA consultation:  (No files uploaded yet.)

- What is your Marine Mammal Protection Act (MMPA) finding and determination? -- No effect or negligible effect

  Explain how the determination was made (e.g., are species present in the area but your proposed action will have no effect or negligible effects? why?). Although not required, recommend attaching

any consultation or correspondence conducted.: The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA. The Proposed Action is not anticipated to result in a change in U.S. Population.   The Proposed Action is not anticipated to result in potential direct or indirect impacts on species or habitats protected under the Marine Mammal Protection Act (MMPA).

As this action is administrative and regulatory in nature and would not result in direct or indirect impacts on MMPA listed species or habitat, we have determined a "no effect" determination is appropriate for this action.

Attachments:  MMPA consultation:  (No files uploaded yet.)
• Would the proposed action adversely affect a species protected under the Bald and Golden Eagle Protection Act or Migratory Bird Treaty Act or habitat for such species?  -- No
Explain how the determination was made (e.g., are species present in the area but your proposed action will have no adverse effect or no significant effect? why?). Although not required, recommend attaching any consultation or correspondence conducted.: Proposed Action is a regulatory action and is not anticipated to adversely affect Bald or Golden Eagles, Migratory Birds, or their habitats as defined in Bald and Golden Eagle Protection Act (BGEPA) or Migratory Bird Treaty Act (MBTA). The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  There are no direct or indirect effects anticipated to species protected under the BGEPA or MBTA.  Because this action is administrative and regulatory in nature and is not anticipated to result in impacts on species or habitat protected under BGEPA or MBTA, we have determined a "no effect" determination is appropriate for this action.
Attachments:  BGEPA MBTA consultation:  (No files uploaded yet.)
• What is your Magnuson-Stevens Fishery Conservation and Management Act (essential fish habitat) finding and determination? -- No effect
Attachments:  EFH consultation:  (No files uploaded yet.)
• Will the Proposed Action have a potentially significant effect on an environmentally sensitive area? Examples include, but are not limited to: areas having special designation or recognition such as prime or unique agricultural lands, coastal zones, designated wilderness study areas, wild and scenic rivers, 100-year floodplains, wetlands, sole source aquifers, Marine Sanctuaries, National Wildlife Refuges, National Parks, National Monuments, etc.  -- No resources present

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

Please explain how you came to this determination. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  No ground disturbance or impacts to prime or unique agricultural lands, coastal zones, designated wilderness study areas, wild and scenic rivers, 100-year floodplains, wetlands, sole source aquifers, Marine Sanctuaries, National Wildlife Refuges, National Parks, National Monuments, or other protected lands or resources are anticipated as a result of this rulemaking.  No significant direct or indirect impacts to environmentally sensitive areas are anticipated as a result of the Proposed Action.  DHS has no reason to believe that any persons present in the United States as an indirect result of the Proposed Action would impact an environmentally sensitive area.

- Will the Proposed Action result in the potential violation of a Federal, State, or local law or requirement imposed to protect the environment? -- No
  Please summarize determination. : The Proposed Action will not result in a direct violation of Federal, State, or local law or requirement imposed for the protection of the environment. The Proposed Action is an administrative action with no construction or ground disturbing activities. The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  DHS has no reason to believe that any person present in the United States as an indirect result of the Proposed Action would violate any Federal, State, or local law or requirement imposed to protect the environment. Independent actions taken by requestors or by third parties are not Federal actions and are not federal actions and outside the scope of this analysis.

- Will the Proposed Action have an effect on the quality of the human environment that is likely to be highly controversial in terms of scientific validity, likely to be highly uncertain, or likely to involve unique or unknown environmental risks?  -- No
  Required: Please explain. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA. The Proposed Action does not include Federal activities that are highly controversial in terms of scientific validity, actions that are highly uncertain, or involve unique or unknown environmental risk.

AR2022_300767

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

- Will the Proposed Action employ new or unproven technology that is likely to involve unique or unknown environmental risks, where the effect on the human environment is likely to be highly uncertain, or where the effect on the human environment is likely to be highly controversial in terms of scientific validity?  -- No
  Required: Please explain.: The Proposed Action is administrative and regulatory in nature and will not employ new or unproven technology.  The Proposed Action is not anticipated to affect the quality of the human environment in a way that is likely to be highly controversial in terms of scientific validity, be highly uncertain, or involve unknown environmental risk.

- Will the Proposed Action establish a precedent for future actions that have significant effects? -- No
  Please explain how you came to this determination. : The Proposed Action is an independent action that will not establish precedent for future action with significant effects. Additionally, future DHS major federal actions will be evaluated in accordance with Directive 023-01 rev 01 and Instruction 023-01-001-01 rev 01 for compliance with the National Environmental Policy Act.

- Is the Proposed Action significantly greater in scope or size than normally experienced for its particular category of action? -- No
  Required: Please summarize determination.: The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  This action is consistent in scope and size to previous USCIS regulatory actions.

- Will the Proposed Action have the potential to result in the significant degradation of existing poor environmental conditions? Will the Proposed Action initiate a potentially significant environmentally degrading influence, activity, or effect in areas not already significantly modified from their natural condition? -- No
  Please explain how you came to this determination. : The Proposed Action is not anticipated to result in any direct or indirect impacts that would have a significant degradation of existing poor environmental conditions.  Additionally, the Proposed Action will not initiate a potentially significant environmentally degrading influence, activity, or effect in areas not already significantly modified from their natural condition. The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  The Proposed Action does not include any construction or ground disturbing activities.

- Is the Proposed Action related to other actions with individually insignificant but cumulatively significant impacts?  -- No
  Please explain how you came to this determination. : The Proposed Action is limited to the

independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA.  The Proposed Action is not anticipated to result in a change in U.S. Population.  There are no anticipated direct or indirect environmental impacts associated with the Proposed Action.  While the action falls within the agency's statutory authority to administer the nation's lawful immigration system, the Proposed Action is independent in nature and not dependent upon or triggered by any other action with individually insignificant but cumulatively significant impacts.

- Are there any other requirements for the protection of the environment that need to be considered for this proposed action?  -- No
- Will the proposed action have a potentially significant effect on a district, highway, structure, or object that is listed, or eligible for listing, on the National Register of Historic Places, a historic or cultural resource, traditional or sacred site, or result in the destruction of a significant scientific, cultural, or historic resource? -- No

  Attachments:  HR - Consultation:  (No files uploaded yet.)

- What is the National Historic Preservation Act Section 106 effect determination? -- No potential to effect

  This determination is not used often. Please explain. : The Proposed Action is limited to the independent action of issuing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA. The Proposed Action is not anticipated to result in a change in U.S. Population. The Proposed Action does not include any construction or ground disturbing activities. The Federal action has no potential to affect historic properties listed or eligible for listing under the National Historic Preservation Act.

  ** This question should be carefully checked by the Environmental Reviewer.

- Does the proposed action limit access to, and ceremonial use of, Indian sacred sites on federal lands, by Indian religious practitioners, and/or adversely affect the physical integrity of such sites. -- No

AR2022_300769

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

# DHS National Environmental Policy Act
# Memorandum For Record
# for Categorically Excluded Actions that do not require a REC

## INTRODUCTION

The purpose of this Memorandum for Record is to provide a record that the potential for impacts to the quality of the human environment has been considered in the decision to implement the Proposed Action described below, in compliance with the National Environmental Policy Act of 1969 (NEPA) and DHS Directive 023-01 and Instruction 023-01-001-01, Implementation of NEPA. DHS has previously analyzed actions of this type and concluded that there is no potential for significant impact on the human environment, that a DHS Categorical Exclusion applies, and that a more detailed review and documentation in a Record of Environmental Consideration is not necessary.

## SECTION I - Description of Proposed Action

1. **Title of Proposed Action:**  Deferred Action for Childhood Arrivals (DACA) Rulemaking

2. **Identifying Number of Proposed Action (if available):**  DSS-USCIS-2022-14393, USCIS-2021-0006

3. **Project Security Type:**  Unclassified

4. **Estimated Start Date:**  11/01/2022

5. **Location of Proposed Action (e.g., Nationwide, Regional, Site-Specific.  If site-specific, provide street address, city, county and state):**
   Nationwide

6. **Project Type:**
· Administrative & Regulatory Activities - Promulgation of rules, issuance of rulings or interpretations, and the development and publication of policies, orders, directives, notices, procedures, manuals, advisory circulars, and other guidance documents of the following nature:(a) Those of a strictly administrative or procedural nature;(b) Those that implement, without substantive change, statutory or regulatory requirements;(c) Those that implement, without substantive change, procedures, manuals, and other guidance documents;(d) Those that interpret or amend an existing regulation without changing its environmental effect;(e) Technical guidance on safety and security matters; or,(f) Guidance for the preparation of security plans. (A3)
· Administrative & Regulatory Activities - Other, Administrative & Regulatory Activities - A3 CATEX Application with full Record of Environmental Consideration

**AR2022_300770**

**7.  Description of Proposed Action.**

On June 15, 2012, the U.S. Department of Homeland Security (DHS) established the Deferred Action for Childhood Arrivals (DACA) policy. The policy— which describes the Secretary of Homeland Security's (Secretary's) exercise of her prosecutorial discretion in light of the limited resources that DHS has for removal of undocumented noncitizens—directed U.S. Citizenship and Immigration Services (USCIS) to create a process to defer removal of certain noncitizens who years earlier came to the United States as children, meet other criteria, and do not present other circumstances that would warrant removal. Since that time, more than 825,000 people have successfully requested deferred action under this policy. On January 20, 2021, President Biden directed DHS, in consultation with the Attorney General, to take all appropriate actions to preserve and fortify DACA, consistent with applicable law.  The Secretary is now exercising his broad authorities to administer and enforce the immigration laws and proposed a rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive.  This final rule does not expand eligibility criteria, meaning only those who meet the threshold criteria set forth in the 2012 Napolitano Memo are or will be eligible for consideration for DACA

For the purpose of this analysis, the direct effects of the Proposed Action are the administrative actions of executing a final rule to preserve and fortify the 2012 DACA policy in accordance with the President's directive. There are no anticipated indirect effects.  No change in population is anticipated.  Independent actions taken by requestors or by third parties are not federal actions and are outside the scope of this analysis.

This action is covered under CATEX A3(c) as is limited to the promulgation of a rule which is strictly administrative or procedural in nature which implements, without substantive change, procedures,manuals, and other guidance documents.

**8.  Document Preparer:**  Jennifer Hass

**9.  Senior Environmental Reviewer:**  Teresa Pohlman

**10.  Project Proponent:**  Mark Boivin

## SECTION II - Finding

This action is not expected to result in any significant adverse environmental impacts as described in the National Environmental Policy Act of 1969 (NEPA). The proposed action has been thoroughly reviewed by the U.S. Citizenship and Immigration Services and it has been determined, by the undersigned, that this action is categorically excluded under current DHS by the undersigned, that this action is categorically excluded under current DHS CATEX(A3) from further environmental documentation, in accordance with DHS Directive 023-01 and Instruction 023-01-001-01, Implementation of NEPA, since implementation of this action:

1. Clearly fits within one or more of the categories of excludable actions listed in Appendix A of DHS Instruction 023-01-001-01;
2. Has not been segmented into smaller parts in order to avoid a more extensive evaluation of the potential for significant environmental impacts; and
3. Does not involve any extraordinary circumstances, as defined in DHS Instruction 023-01-001-01, Section V(B)(2), that would create the potential for a normally excluded action to have a significant environmental effect.

04/11/2022                     *Jennifer Hass*

Date                              Document Preparer

04/12/2022                     *Teresa Pohlman*

Date                              Senior Environmental Reviewer

In reaching my decision/recommendation on the U.S. Citizenship and Immigration Services component's proposed action, I have considered the information contained in this MFR on the potential for environmental impacts.

Deferred Action for Childhood Arrivals (DACA) Rulemaking  (Unclassified)

04/12/2022                *Mark Boivin*

Date                      Proponent

Printed 3:22 AM

**AR2022_300772**

Deferred Action for Childhood Arrivals (DACA) Rulemaking

## Preview of Attachments

The following pages will display this project's attachments that are of these file types:

- .jpg / .jpeg

- .png

- .gif

- .txt

- .pdf

The attachments of compatible file types from this project are:

**Note:**

All project attachments can be downloaded at the 'Manage Attachments' page.

Printed on 12/30/22 3:22 AM

**AR2022_300773**



**Notice of Appeal or Motion**

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-290B**

OMB No. 1615-0095
Expires 05/31/2020

| For USCIS Use Only | Returned | Reloc Sent | Receipt | Remarks |
|---|---|---|---|---|
| | Date___/___/___ | Date___/___/___ | | |
| | Date___/___/___ | Date___/___/___ | | |
| | Resubmitted | Reloc Rec'd | | |
| | Date___/___/___ | Date___/___/___ | | |
| | Date___/___/___ | Date___/___/___ | | |

| To be completed by an attorney or accredited representative (if any). | ☐ Select this box if Form G-28 is attached. | Attorney State Bar Number (if applicable) | Attorney or Accredited Representative USCIS Online Account Number (if any) |
|---|---|---|---|
| | | | |

Please visit **www.uscis.gov/i-290b/jurisdiction** for information on the immigration benefit types that are eligible for an appeal or motion using this form.

▶ **START HERE** - Type or print in black ink.

## Part 1. Information About the Applicant or Petitioner

If you are an individual filing this appeal or motion, complete **Item Number 1.** If you are a business or organization, complete **Item Number 2.**

**1.a.** Family Name (Last Name)

**1.b.** Given Name (First Name)

**1.c.** Middle Name

**2.** Business or Organization (if applicable)

**3.** Alien Registration Number (A-Number, if any)
▶ **A-**

**4.** USCIS Online Account Number (if any)
▶

## *Mailing Address* (or Military APO/FPO Address, if applicable)

**5.a.** In Care Of Name (if any)

**5.b.** Street Number and Name

**5.c.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**5.d.** City or Town

**5.e.** State      **5.f.** ZIP Code

**5.g.** Province

**5.h.** Postal Code

**5.i.** Country

## Part 2. Information About the Appeal or Motion

Please indicate whether you are filing an appeal to the Administrative Appeals Office (AAO) or a motion. You are not allowed to file both an appeal and a motion on a single form. **If you select more than one box, your filing may be rejected.**

**NOTE: DO NOT use this form if you are filing an appeal relating to a Form I-130, Petition for Alien Relative, or a Form I-360, Self-Petition for a Widow(er) of a U.S. Citizen. You must file those appeals with the Board of Immigration Appeals using Form EOIR-29.**

## Part 2.  Information About the Appeal or Motion (continued)

**1.a.** ☐ I am filing an **appeal** to the AAO.  My brief and/or additional evidence is attached.

**1.b.** ☐ I am filing an **appeal** to the AAO.  I will submit my brief and/or additional evidence to the AAO within 30 calendar days of filing the appeal.

**1.c.** ☐ I am filing an **appeal** to the AAO.  I will not be submitting a brief and/or additional evidence.

**1.d.** ☐ I am filing a **motion to reopen**.  My brief and/or additional evidence is attached.

**1.e.** ☐ I am filing a **motion to reconsider**.  My brief is attached.

**1.f.** ☐ I am filing a **motion to reopen** and a **motion to reconsider**.  My brief and/or additional evidence is attached.

**2.** USCIS Form for the Application or Petition That is the Subject of This Appeal or Motion (for example, Form I-140, I-360, I-129, I-485, I-601)

**3.** Receipt Number for the Application or Petition

**4.** Requested Nonimmigrant or Immigrant Classification (for example, H-1B, R-1, O-1, EB-1, EB-2, if applicable)

**5.** Date of the Adverse Decision (mm/dd/yyyy)

**6.** Office That Issued the Adverse Decision

## Part 3.  Basis for the Appeal or Motion

In **Part 7. Additional Information**, or on a separate sheet of paper, **you must provide a statement regarding the basis for the appeal or motion**.  If you attach a separate sheet of paper, type or print your name and A-Number (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**Appeal:**  Provide a statement that specifically identifies an erroneous conclusion of law or fact in the decision being appealed.  **You must provide this information with your Form I-290B even if you intend to submit a brief later.**

**Motion to Reopen:**  A motion to reopen must state new facts and be supported by documentary evidence demonstrating eligibility for the requested immigration benefit at the time you filed the application or petition.

**Motion to Reconsider:**  A motion to reconsider must demonstrate that the decision was based on an incorrect application of law or policy, and that the decision was incorrect based on the evidence in the case record at the time of the decision.  The motion must be supported by citations to appropriate statutes, regulations, precedent decisions, or statements of USCIS policy.

## Part 4.  Applicant's or Petitioner's Statement, Contact Information, Certification, and Signature

**NOTE:**  Read the **Penalties** section of the Form I-290B Instructions before completing this part.

### Section A

If you are filing an appeal or motion based on an **APPLICATION OR PETITION FILED BY AN INDIVIDUAL (NOT A BUSINESS OR ORGANIZATION)**, complete this section:

### Applicant's or Petitioner's Statement

**NOTE:**  Select the box for either **Item Number 1.a.** or **1.b.**  If applicable, select the box for **Item Number 2.**

**1.a.** ☐ I can read and understand English, and I have read and understand every question and instruction on this form and my answer to every question.

**1.b.** ☐ The interpreter named in **Part 5.** has read to me every question and instruction on this form, and my answer to every question, in

a language in which I am fluent.  I understood all of this information as interpreted.

**2.** ☐ At my request, the preparer named in **Part 6.** prepared this form for me based only upon information I provided or authorized.

### Applicant's or Petitioner's Contact Information

**3.** Applicant's or Petitioner's Daytime Telephone Number

**4.** Applicant's or Petitioner's Mobile Telephone Number (if any)

**5.** Applicant's or Petitioner's Email Address (if any)

## Part 4.  Applicant's or Petitioner's Statement, Contact Information, Certification, and Signature (continued)

### Applicant's or Petitioner's Certification

Copies of any documents I have submitted are exact photocopies of unaltered, original documents, and I understand that USCIS may require that I submit original documents to USCIS at a later date.  Furthermore, I authorize the release of any information from any of my records that USCIS may need to determine my eligibility for the immigration benefit that I seek.

I further authorize release of information contained in this form, in supporting documents, and in my USCIS records, to other entities and persons where necessary for the administration and enforcement of U.S. immigration law.

I certify, under penalty of perjury, that all of the information in my form and any document submitted with it were provided or authorized by me, that I reviewed and understand all of the information contained in, and submitted with, my form, and that all of this information is complete, true, and correct.

### Applicant's or Petitioner's Signature

**6.a.**  Applicant's or Petitioner's Signature

**6.b.**  Date of Signature (mm/dd/yyyy)

### Section B

If you are filing an appeal or motion based on a **PETITION FILED BY A BUSINESS OR ORGANIZATION (NOT AN INDIVIDUAL)**, complete this section:

### Petitioner's Statement

**NOTE:**  Select the box for either **Item Number 1.a.** or **1.b.**  If applicable, select the box for **Item Number 2.**

**1.a.**  ☐  I can read and understand English, and I have read and understand every question and instruction on this form and my answer to every question.

**1.b.**  ☐  The interpreter named in **Part 5.** has read to me every question and instruction on this form, and my answer to every question, in

a language in which I am fluent.  I understood all of this information as interpreted.

**2.**  ☐  At my request, the preparer named in **Part 6.** prepared this form for me based only upon information I provided or authorized.

### Petitioner's Contact Information

Provide the following information about the petitioner's authorized signatory.

**3.a.**  Family Name (Last Name)

**3.b.**  Given Name (First Name)

**3.c.**  Middle Name

**4.**  Title

**5.**  Daytime Telephone Number

**6.**  Mobile Telephone Number (if any)

**7.**  Email Address (if any)

### Petitioner's Certification

Copies of any documents submitted are exact photocopies of unaltered, original documents, and I understand that, as the petitioner, I may be required to submit original documents to USCIS at a later date.

I authorize the release of any information from my records, or from the petitioning organization's records, to USCIS or other entities and persons where necessary to determine eligibility for the immigration benefit sought or where authorized by law.  I recognize the authority of USCIS to conduct audits of this form using publicly available open source information.  I also recognize that any supporting evidence submitted in support of this form may be verified by USCIS through any means determined appropriate by USCIS, including but not limited to, on-site compliance reviews.

If filing this form on behalf of an organization, I certify that I am authorized to do so by the organization.

I certify, under penalty of perjury, that I have reviewed this form, I understand all of the information contained in, and submitted with, my appeal or motion, and all of this information is complete, true, and correct.

### Petitioner's Signature

**8.a.**  Petitioner's Signature

**8.b.**  Date of Signature (mm/dd/yyyy)

**NOTE TO ALL APPLICANTS AND PETITIONERS:**  If you do not completely fill out this form or fail to submit required documents listed in the Instructions, USCIS may dismiss, deny, or reject your appeal or motion.

## Part 5.  Interpreter's Contact Information, Certification, and Signature

Provide the following information about the interpreter.

### *Interpreter's Full Name*

**1.a.**  Interpreter's Family Name (Last Name)

**1.b.**  Interpreter's Given Name (First Name)

**2.**  Interpreter's Business or Organization Name (if any)

### *Interpreter's Mailing Address*

**3.a.**  Street Number and Name

**3.b.**  ☐ Apt.  ☐ Ste.  ☐ Flr.

**3.c.**  City or Town

**3.d.**  State          **3.e.**  ZIP Code

**3.f.**  Province

**3.g.**  Postal Code

**3.h.**  Country

### *Interpreter's Contact Information*

**4.**  Interpreter's Daytime Telephone Number

**5.**  Interpreter's Mobile Telephone Number (if any)

**6.**  Interpreter's Email Address (if any)

### *Interpreter's Certification*

I certify, under penalty of perjury, that:

I am fluent in English and _____,

which is the same language specified in **Part 4.**, **Item Number 1.b.** in **Section A** or **Section B**, and I have read to this applicant or petitioner in the identified language every question and instruction on this form and his or her answer to every question. The applicant or petitioner informed me that he or she understands every instruction, question, and answer on the form, including the **Applicant's or Petitioner's Certification**, and has verified the accuracy of every answer.

### *Interpreter's Signature*

**7.a.**  Interpreter's Signature

**7.b.**  Date of Signature (mm/dd/yyyy)

## Part 6.  Contact Information, Declaration, and Signature of the Person Preparing this Form, if Other Than the Applicant or Petitioner

Provide the following information about the preparer.

### *Preparer's Full Name*

**1.a.**  Preparer's Family Name (Last Name)

**1.b.**  Preparer's Given Name (First Name)

**2.**  Preparer's Business or Organization Name (if any)

### *Preparer's Mailing Address*

**3.a.**  Street Number and Name

**3.b.**  ☐ Apt.  ☐ Ste.  ☐ Flr.

**3.c.**  City or Town

**3.d.**  State          **3.e.**  ZIP Code

**3.f.**  Province

**3.g.**  Postal Code

**3.h.**  Country

### *Preparer's Contact Information*

**4.**  Preparer's Daytime Telephone Number

**5.**  Preparer's Mobile Telephone Number (if any)

**6.**  Preparer's Email Address (if any)

### Part 6.  Contact Information, Declaration, and Signature of the Person Preparing this Form, if Other Than the Applicant or Petitioner (continued)

#### Preparer's Statement

**7.a.** ☐ I am not an attorney or accredited representative but have prepared this form on behalf of the applicant or petitioner and with the applicant's or petitioner's consent.

**7.b.** ☐ I am an attorney or accredited representative and have prepared this form on behalf of the applicant or petitioner and with the applicant's or petitioner's consent.

#### Preparer's Certification

By my signature, I certify, under penalty of perjury, that I prepared this form at the request of the applicant or petitioner. The applicant or petitioner then reviewed this completed form and informed me that he or she understands all of the information contained in, and submitted with, his or her form, including the **Applicant's or Petitioner's Certification**, and that all of this information is complete, true, and correct.  I completed this form based only on information that the applicant or petitioner provided to me or authorized me to obtain or use.

#### Preparer's Signature

**8.a.** Preparer's Signature

[                                        ]

**8.b.** Date of Signature (mm/dd/yyyy) [                    ]

## Part 7.  Additional Information

If you need extra space to provide any additional information within this form, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper.  Type or print your name and A-Number at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a.**  Family Name (Last Name)

**1.b.**  Given Name (First Name)

**1.c.**  Middle Name

**2.**  A-Number (if any)  ▶ A-

**3.a.**  Page Number

**3.b.**  Part Number

**3.c.**  Item Number

**3.d.**

**4.a.**  Page Number

**4.b.**  Part Number

**4.c.**  Item Number

**4.d.**

**5.a.**  Page Number

**5.b.**  Part Number

**5.c.**  Item Number

**5.d.**

**6.a.**  Page Number

**6.b.**  Part Number

**6.c.**  Item Number

**6.d.**

**7.a.**  Page Number

**7.b.**  Part Number

**7.c.**  Item Number

**7.d.**

**NOTE:**  Make sure your appeal or motion is complete before filing.

**SUPPORTING STATEMENT FOR**
**Application for Employment Authorization**
**OMB Control No.: 1615-0040**
**COLLECTION INSTRUMENT(S): I-765, I-765WS**

**A. Justification**

1.    **Explain the circumstances that make the collection of information necessary. Identify any legal or administrative requirements that necessitate the collection. Attach a copy of the appropriate section of each statute and regulation mandating or authorizing the collection of information.**

An alien who seeks to be employed in the United States must apply to U.S. Citizenship and Immigration Services (USCIS) for a document evidencing such employment authorization. Aliens authorized to work in the United States must file an Application for Employment Authorization, Form I-765, to request an Employment Authorization Document (EAD), under 8 CFR 274a.13. Employers are required to verify a person's identity and authorization to work in the United States, and the employee is required to provide evidence of his or her authorization to work in the United States. See 8 U.S.C. 1324a(a)(1)(B); 8 CFR 274a.2(b)(1). This evidence, the EAD (Form I-766), establishes identity and employment authorization.

Any individual may be required to submit biometric information if the regulations or form instructions require such information or if requested in accordance with 8 CFR 103.2(b)(9). DHS may collect and store for present or future use, by electronic or other means, the biometric information submitted by an individual. DHS may use this biometric information to conduct background and security checks, adjudicate immigration and naturalization benefits, and perform other functions related to administering and enforcing the immigration and naturalization laws. See 8 CFR 103.16; 8 U.S.C. 1103.

An alien may use Form I-765 to simultaneously apply for a Social Security Number and/or Social Security card when applying for employment authorization. USCIS shares information collected on the form with the Social Security Administration (SSA). This information sharing initiative is conducted pursuant to the Social Security Act 205(c)(2)(B)(I) and 702; the Immigration and Nationality Act, 8 U.S.C. sections 1103, 1158, 1225, 1228, and Title II of Public Law 105-100;  and 20 CFR 422.104; and the Interagency Agreement reached between USCIS and SSA in December 2015 and a Memorandum of Understanding (MOU) between USCIS and SSA, the Addendum to the MOU, USCIS's FMS Forms 7600 A/B.

2.    **Indicate how, by whom, and for what purpose the information is to be used. Except for a new collection, indicate the actual use the agency has made of the information received from the current collection.**

1

AR2022_300780

Form I-765 collects information needed to determine if an alien is eligible for an initial EAD, a replacement EAD, or a subsequent EAD upon the expiration of a previous EAD under the same eligibility category. Aliens in many immigration statuses are required to possess an EAD as evidence of work authorization. To be authorized for employment, an alien must be lawfully admitted for permanent residence or authorized to be so employed by the Immigration and Nationality Act (INA) or under regulations issued by DHS. Pursuant to statutory or regulatory authorization, certain classes of aliens are authorized to be employed in the United States without restrictions as to location or type of employment as a condition of their admission or subsequent change to one of the indicated classes. USCIS may determine the validity period assigned to any document issued evidencing an alien's authorization to work in the United States. These classes of aliens authorized to accept employment are listed in 8 CFR 274a.12.

USCIS also collects biometric information from certain EAD applicants, from whom USCIS has not previously collected biometrics in connection with an underlying application or petition, to verify the applicant's identity, check or update their background information, and produce the EAD card.

Instead of going to a Social Security Office, an applicant for employment authorization can apply for a Social Security Number (SSN) and Social Security card using Form I-765. If the relevant data elements on Form I-765 are filled out, USCIS will send the applicant's information to the Social Security Administration (SSA) upon approval of the employment authorization request. If the applicant already has an SSN and requested a Social Security card on Form I-765, SSA will issue a replacement SSN card.

3. **Describe whether, and to what extent, the collection of information involves the use of automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses, and the basis for the decision for adopting this means of collection. Also describe any consideration of using information technology to reduce burden.**

Forms I-765 and I-765WS are available on the USCIS website at www.uscis.gov/i-765. The application can be filed on paper for all eligibility categories. Certain I-765 eligibility categories can file online. The burden for setting up a USCIS online account is covered under the USCIS Identity, Credential, and Access Management (ICAM) information collection (OMB control number 1615-0122).

4. **Describe efforts to identify duplication. Show specifically why any similar information already available cannot be used or modified for use for the purposes described in Item 2 above.**

This collection of information imposes no duplication of effort because no other instrument, form or program can be used to determine employment authorization.

USCIS has also investigated the information that may be obtained from other Federal

2

programs and agencies and has determined that the information necessary to determine if the alien is eligible to work in the United States is not available through other Federal sources.

5.    **If the collection of information impacts small businesses or other small entities (Item 5 of OMB Form 83-I), describe any methods used to minimize burden.**

This collection of information does not have an impact on small businesses or other small entities.

6.    **Describe the consequence to Federal program or policy activities if the collection is not conducted or is conducted less frequently, as well as any technical or legal obstacles to reducing burden.**

If the information is not collected, USCIS will not be able to fulfill its core mission of providing effective immigration and information services while ensuring the integrity of the immigration system. The adjudicating officer will not be able to determine whether the applicant is eligible for employment authorization. In addition, if the information is not collected, USCIS will have no basis for issuing a secure identity and employment authorization document to applicants who request EADs. The information provided on this form is not available by any other means. These forms collect data that makes the adjudication of a request for an EAD possible. EADs provide recipients with secure identification documents, acceptable evidence of employment authorization, and facilitate an employer's verification of identity and employment authorization.

7.    **Explain any special circumstances that would cause an information collection to be conducted in a manner:**

- **Requiring respondents to report information to the agency more often than quarterly;**

- **Requiring respondents to prepare a written response to a collection of information in fewer than 30 days after receipt of it;**

- **Requiring respondents to submit more than an original and two copies of any document;**

- **Requiring respondents to retain records, other than health, medical, government contract, grant-in-aid, or tax records for more than three years;**

- **In connection with a statistical survey, that is not designed to produce valid and reliable results that can be generalized to the universe of study;**

- **Requiring the use of a statistical data classification that has not been reviewed and approved by OMB;**

3

- **That includes a pledge of confidentiality that is not supported by authority established in statute or regulation, that is not supported by disclosure and data security policies that are consistent with the pledge, or which unnecessarily impedes sharing of data with other agencies for compatible confidential use; or**

- **Requiring respondents to submit proprietary trade secret, or other confidential information unless the agency can demonstrate that it has instituted procedures to protect the information's confidentiality to the extent permitted by law.**

This information collection is conducted in a manner consistent with the guidelines in 5 CFR 1320.5(d)(2).

8. **If applicable, provide a copy and identify the data and page number of publication in the Federal Register of the agency's notice, required by 5 CFR 1320.8(d), soliciting comments on the information collection prior to submission to OMB. Summarize public comments received in response to that notice and describe actions taken by the agency in response to these comments. Specifically address comments received on cost and hour burden.**

   **Describe efforts to consult with persons outside the agency to obtain their views on the availability of data, frequency of collection, the clarity of instructions and recordkeeping, disclosure, or reporting format (if any), and on the data elements to be recorded, disclosed, or reported.**

   **Consultation with representatives of those from whom information is to be obtained or those who must compile records should occur at least once every 3 years - even if the collection of information activity is the same as in prior periods. There may be circumstances that may preclude consultation in a specific situation. These circumstances should be explained.**

   USCIS did not publish a notice in the Federal Register. This submission is made under 5 CFR 1320.13.

9. **Explain any decision to provide any payment or gift to respondents, other than remuneration of contractors or grantees.**

   USCIS does not provide any payment for benefit sought.

10. **Describe any assurance of confidentiality provided to respondents and the basis for the assurance in statute, regulation or agency policy.**

    There is no assurance of confidentiality.

    This collection is covered under the following Privacy Impact Assessment:

4

- DHS/USCIS/PIA-016(a) Computer Linked Application Information Management System (CLAIMS 3) and Associated Systems; and,
- DHS/USCIS/PIA-056 USCIS Electronic Immigration System;
- DHS/USCIS/PIA-061 Benefit Request Intake Process; and
- DHS/USCIS/PIA-071 myUSCIS Account Experience;

The collection is covered under the following System of Records Notices:
- DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, September 22, 2013, 78 FR 69983;
- DHS/USCIS-007 Benefits Information System, October 19, 2016 81 FR 72069; and
- DHS/USCIS-018 Immigration Biometric and Background Check (IBBC) System of Records, July 31, 2018, 83 FR 36950.

Applicants are informed that USCIS may provide this information to other government agencies and failure to provide this information, and any requested evidence, may delay a final decision or result in denial of their request.

11. **Provide additional justification for any questions of a sensitive nature, such as sexual behavior and attitudes, religious beliefs, and other matters that are commonly considered private. This justification should include the reasons why the agency considers the questions necessary, the specific uses to be made of the information, the explanation to be given to persons from whom the information is requested, and any steps to be taken to obtain their consent.**

There are no questions of a sensitive nature in this collection.

12. **Provide estimates of the hour burden of the collection of information. The statement should:**

- **Indicate the number of respondents, frequency of response, annual hour burden, and an explanation of how the burden was estimated. Unless directed to do so, agencies should not conduct special surveys to obtain information on which to base hour burden estimates. Consultation with a sample (fewer than 10) of potential respondents is desirable. If the hour burden on respondents is expected to vary widely because of differences in activity, size, or complexity, show the range of estimated hour burden, and explain the reasons for the variance. Generally, estimates should not include burden hours for customary and usual business practices.**

- **If this request for approval covers more than one form, provide separate hour burden estimates for each form and aggregate the hour burdens in Item 13 of OMB Form 83-I.**

5

- **Provide estimates of annualized cost to respondents for the hour burdens for collections of information, identifying and using appropriate wage rate categories. The cost of contracting out or paying outside parties for information collection activities should not be included here. Instead, this cost should be included in Item 14.**

| Type of Respondent | Form Name / Form Number | A<br>#. of Respondents | B<br>#. of Responses per Respondent | C (=AxB)<br># of Responses | D<br>Avg. Burden per Response (in hours) | E (=CxD)<br>Total Annual Burden (in hours) | F<br>Avg. Hourly Wage Rate* | (=ExF)<br>Total Annual Respondent Cost |
|---|---|---|---|---|---|---|---|---|
| Individuals or Households | Form I-765 (paper filed) | 2,178,820 | 1 | 2,178,820 | 4.50 | 9,804,690 | $40.89 | $400,913,774 |
| Individuals or Households | Form I-765 (online filing)^ | 107,180 | 1 | 107,180 | 4.00 | 428,720 | $40.89 | $17,530,361 |
| Individuals or Households | I-765 Worksheet** | 302,000 | 1 | 302,000 | 0.50 | 151,000 | $40.89 | $6,174,390 |
| Individuals or Households | Biometrics Submission*** | 302,535 | 1 | 302,535 | 1.17 | 353,966 | $40.89 | $14,473,668 |
| Individuals or Households | Passport-Style Photos | 2,286,000 | 1 | 2,286,000 | 0.50 | 1,143,000 | $40.89 | $46,737,270 |
| **Total** | | | | 5,176,535 | | 11,881,376 | | $485,829,463 |

*\* The above Average Hourly Wage Rate is the May 2021 Bureau of Labor Statistics average wage for All Occupations of $28.01 times the wage rate benefit multiplier of 1.46 (to account for benefits provided) equaling $40.89. The selection of "All Occupations" was chosen because respondents to this collection could be expected from any occupation.*

*\*\* Not all Form I-765 respondents must provide biometrics. The following eligibility categories are required to submit biometrics to this collection of information:*

- *Deferred Action for Childhood Arrivals (DACA) requestors-- (c)(33);*
- *Principal Applicant - Compelling Circumstances-- (c)(35);*
- *Dependent applicant of a (c)(35)-- (c)(36); and*
- *Applicant for Commonwealth of the Northern Mariana Islands (CNMI) Long-Term Resident Status-- (c)(37).*

*\*\*\* All DACA requestors, as well as individuals whose cases are deferred but who are not childhood arrivals, will complete Form I-765WS.*

*^ Currently, only a subset of I-765 eligibility categories can file online:*

- *Temporary Protective Status Granted-- (a)(12);*
- *Temporary Protective Status Pending-- (c)(19);*
- *F-1 Pre-completion Optional Practical Training-- (c)(3)(A);*
- *F-1 Post Optional Practical Training-- (c)(3)(B); and*
- *F-1 STEM Students-- (c)(3)(C).*

13. **Provide an estimate of the total annual cost burden to respondents or record keepers resulting from the collection of information. (Do not include the cost of any hour burden shown in Items 12 and 14).**

AR2022_300785

- **The cost estimate should be split into two components:  (a) a total capital and start-up cost component (annualized over its expected useful life); and (b) a total operation and maintenance and purchase of services component. The estimates should take into account costs associated with generating, maintaining, and disclosing or providing the information. Include descriptions of methods used to estimate major cost factors including system and technology acquisition, expected useful life of capital equipment, the discount rate(s), and the time period over which costs will be incurred. Capital and start-up costs include, among other items, preparations for collecting information such as purchasing computers and software; monitoring, sampling, drilling and testing equipment; and record storage facilities.**

- **If cost estimates are expected to vary widely, agencies should present ranges of cost burdens and explain the reasons for the variance. The cost of purchasing or contracting out information collection services should be a part of this cost burden estimate. In developing cost burden estimates, agencies may consult with a sample of respondents (fewer than 10), utilize the 60-day pre-OMB submission public comment process and use existing economic or regulatory impact analysis associated with the rulemaking containing the information collection, as appropriate.**

- **Generally, estimates should not include purchases of equipment or services, or portions thereof, made: (1) prior to October 1, 1995; (2) to achieve regulatory compliance with requirements not associated with the information collection; (3) for reasons other than to provide information or keep records for the government; or, (4) as part of customary and usual business or private practices.**

This information collection may impose some out-of-pocket costs on respondents in addition to the time burden for the form's preparation.  Costs may include payments for document translation and preparation services, attorney and legal fees, postage, and costs associated with gathering documentation. Form I-765 is filed concurrently with a number of forms, and many of the costs associated with filing the I-765 would be covered under the primary form being filed by the respondent. Costs associated with the filing of the I-765 may include legal services, translator costs, document and record copy fees, and mailing costs.  USCIS estimates that respondents may pay an estimated $165.37 to cover these additional costs. The estimated annual cost to respondents is calculated by multiplying the estimated number of respondents (2,286,000) by the estimated cost ($165.37).  The estimated out-of-pocket costs to respondents is $378,035,820.  USCIS estimates that all respondents will pay approximately $10 to obtain the required passport-style photographs, which equals a total of $22,860,000 (2,286,000 respondents x $10).

The total estimated annual cost to respondents is **$400,895,820**.

14.    **Provide estimates of annualized cost to the Federal government. Also, provide a**

7

**description of the method used to estimate cost, which should include quantification of hours, operational expenses (such as equipment, overhead, printing, and support staff), and any other expense that would not have been incurred without this collection of information. Agencies also may aggregate cost estimates from Items 12, 13, and 14 in a single table.**

USCIS establishes its fees using an activity-based costing model to assign costs to an adjudication based on its relative adjudication burden and use of USCIS resources. Fees are established at an amount that is necessary to recover these assigned costs, plus an amount to recover unassigned overhead (which includes the suggested average hourly rate for clerical, officer, and managerial time with benefits) and immigration benefits provided for free. USCIS uses the fee associated with an information collection as a reasonable measure of the collection's costs to USCIS, since these fees are based on resource expenditures related to the benefit in question. In addition, this figure includes the estimated overhead cost for printing, stocking, distributing and processing of this form.

The estimated cost of the program to the Government is calculated by using the estimated number of respondents (2,286,000) x filing fee charge ($410) plus the estimated number of respondents for biometrics (302,535) x the biometric services fee ($85). The total cost to the Federal government is **$1,039,235,475**.

**15.   Explain the reasons for any program changes or adjustments reporting in Items 13 or 14 of the OMB Form 83-I.**

On June 26, 2020, after going through notice and comment rulemaking, the Department of Homeland Security (DHS) issued the final rule Asylum Application, Interview, and Employment Authorization for Applicants, 85 FR 28532 (June 26, 2020) (RIN 1615-AC27). On February 7, 2022, in *Asylumworks et al. v. Mayorkas et al.*, the U.S. District Court for the District of Columbia vacated the Asylum Application, Interview, and Employment Authorization for Applicants rule. DHS did not appeal the decision and allowed the 60-day period in which to note an appeal expire. The ruling vacated the Asylum Application, Interview, and Employment Authorization for Applicants rule and any associated form changes. USCIS is submitting this revision action in association with the final rule titled *Asylumwork Vacatur* (RIN 1615-ACXX), which will publish in the Federal Register.  USCIS is submitting the forms in advance of the rule publication to fully comply with the court's decision vacating the Asylum Application, Interview, and Employment Authorization for Applicants rule. The continued use of the form with the invalid requirements would confuse the regulated public regarding the information collection requirements for applications for employment authorization from asylum applicants.

As a result of final rule Asylum Application, Interview, and Employment Authorization for Applicants being vacated, applicants for employment authorization in the (c)(8) category are no longer required to appear at a USCIS Application Support Center (ASC)

8

for biometrics submission, nor are applicants required to submit the $85 biometric services fee. Additionally, with the vacatur of the Asylum Application, Interview, and Employment Authorization for Applicants final rule applicants for asylum must no longer wait 365 days to apply for employment authorization, and can now apply for employment authorization 150 days after filing their asylum application.

Following RIN 1615-AC27 becoming effective, USCIS submitted additional changes to the I-765 associated with the U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements rule (RIN 1615-AC18). However, prior to the U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements rule becoming effective, the rule was enjoined. During the associated submissions for the I-765, USCIS inadvertently removed the biometric respondents and time burden increase associated with RIN 1615-AC27. The 339,410 respondents required to submit biometrics and pay the biometrics fee were removed and the time burden was reduced from 4.75 to 4.5 hours. With the vacatur of the Asylum Application, Interview, and Employment Authorization for Applicants final rule, this population is no longer required to submit biometrics and no longer need to be accounted for. USCIS is now updating the form and instructions in accordance with the vacatur of the Asylum Application, Interview, and Employment Authorization for Applicants final rule.

16.     **For collections of information whose results will be published, outline plans for tabulation, and publication. Address any complex analytical techniques that will be used. Provide the time schedule for the entire project, including beginning and ending dates of the collection of information, completion of report, publication dates, and other actions.**

This information collection will not be published for statistical purposes.

17.     **If seeking approval to not display the expiration date for OMB approval of the information collection, explain the reasons that display would be inappropriate.**

USCIS will display the expiration date for OMB approval of this information collection.

18.     **Explain each exception to the certification statement identified in Item 19, "Certification for Paperwork Reduction Act Submission," of OMB 83-I.**

USCIS does not request an exception to the certification of this information collection.

## B. Collections of Information Employing Statistical Methods.

There is no statistical methodology involved with this collection.

AR2022_300788



# Instructions for Consideration of Deferred Action
## for Childhood Arrivals

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-821D**
OMB No. 1615-0124
Expires 04/30/2021

---

### What is the Purpose of this Form?

An individual may file Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to request that U.S. Citizenship and Immigration Services (USCIS) exercise prosecutorial discretion in his or her favor under the Deferred Action for Childhood Arrivals (DACA) process, including consideration for Renewal of deferred action. USCIS considers deferring action (including Renewal of deferred action) on a case-by-case basis, based on the guidelines in the **What is a Childhood Arrival for Purposes of This Form** section of these instructions. Deferred action is a discretionary determination to defer removal of an individual as an act of prosecutorial discretion. Individuals who receive deferred action will not be placed into removal proceedings or removed from the United States for a specified period of time, unless the Department of Homeland Security (DHS) chooses to terminate the deferral. See the Secretary of Homeland Security's memorandum issued on June 15, 2012 (Secretary's memorandum), upon which the DACA process is based, at **www.uscis.gov/childhoodarrivals**.

### When Should I Use Form I-821D?

Use this form to request consideration of Initial DACA or Renewal of DACA. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. All individuals filing Form I-821D, whether for an Initial or a Renewal of deferred action, must also file Form I-765, Application for Employment Authorization, and Form I-765 Worksheet, Form I-765WS. See the **Evidence for Initial Requests Only** and **Evidence for Renewal Requests Only** sections of these instructions for more information.

**CAUTION:** If you file this request more than 150 days prior to the expiration of your current period of deferred action, USCIS may reject your submission and return it to you with instructions to resubmit your request closer to the expiration date. **USCIS encourages renewal requestors to file as early in the 150-day period as possible - ideally, at least 120 days prior to the DACA expiration date.**

**NOTE:** If you have received DACA and you are filing within one year after your last period of deferred action expired, please follow the instructions provided below for renewal requestors.

**NOTE:** If U.S. Immigration and Customs Enforcement (ICE) initially deferred action in your case and you are seeking a Renewal, you must file Form I-821D and select and complete **Item Number 2.** in **Part 1.** of Form I-821D. You must also respond to ALL subsequent questions on the form. You must also submit documentation to establish how you satisfy the guidelines as if you were filing an Initial request for consideration of deferred action.

If you are currently in immigration detention, you may not request consideration of DACA or Renewal of DACA from USCIS. If you think you meet the guidelines of this process, you should identify yourself to your deportation officer.

### What is a Childhood Arrival for Purposes of This Form?

An individual may be considered for Initial DACA if he or she:

1. Was under 31 years of age as of June 15, 2012;

2. Came to the United States before reaching his or her 16th birthday;

3. Has continuously resided in the United States since June 15, 2007, up to the present time;

---

AR2022_300789

4. Was present in the United States on June 15, 2012 and at the time of making his or her request for consideration of deferred action with USCIS;

5. Had no lawful status on June 15, 2012;

   **NOTE:** No lawful status on June 15, 2012 means that:

   A. You never had a lawful immigration status on or before June 15, 2012; or

   B. Any lawful immigration status or parole that you obtained prior to June 15, 2012 had expired as of June 15, 2012.

6. Is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general educational development (GED) certificate, or is an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard; and

7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

An individual may be considered for **Renewal** of DACA if he or she met the guidelines for consideration of Initial DACA (see above) AND he or she:

1. Did not depart the United States on or after August 15, 2012 without advance parole;

2. Has continuously resided in the United States since he or she submitted his or her most recent request for DACA that was approved up to the present time; and

3. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

## Who May File Form I-821D?

1. **Childhood Arrivals Who Have Never Been in Removal Proceedings.** If you have never been in removal proceedings, submit this form to request that USCIS consider deferring action in your case. You must be 15 years of age or older at the time of filing and meet the guidelines described in the Secretary's memorandum to be considered for deferred action.

2. **Childhood Arrivals Whose Removal Proceedings Were Terminated.** If you were in removal proceedings which have been terminated by the immigration judge prior to this request, you may use this form to request that USCIS consider deferring action in your case. You must be 15 years of age or older at the time of filing and meet the guidelines described in the Secretary's memorandum to be considered for deferred action.

3. **Childhood Arrivals In Removal Proceedings, With a Final Removal Order, or With Voluntary Departure.** If you are in removal proceedings, have a final order of removal, exclusion, or deportation issued in any other context, have a voluntary departure order, or if your proceedings have been administratively closed, you may use this form to request that USCIS consider deferring action in your case, even if you are under 15 years of age at the time of filing. For the purpose of this form, "removal proceedings" includes exclusion or deportation proceedings initiated before April 1, 1997, an Immigration and Nationality Act (INA) section 240 removal proceeding, expedited removal, reinstatement of a final order of exclusion, deportation, or removal, an INA section 217 removal after admission under the Visa Waiver Program, removal as a criminal alien under INA section 238, or any other kind of removal proceeding under U.S. immigration law in any other context (e.g., at the border or within the United States by an immigration agent).

4. **Childhood Arrivals Whose Case Was Deferred and Who Are Seeking Renewal of DACA.** If USCIS or ICE deferred action in your case under DACA, you may use this form to request consideration of Renewal of DACA from USCIS.

## General Instructions

USCIS provides forms free of charge through the USCIS website. In order to view, print, or fill out our forms, you should use the latest version of Adobe Reader, which can be downloaded for free at **http://get.adobe.com/reader/**.

Each request must be properly signed and accompanied by Form I-765 with fees and Form I-765WS. If you are under 14 years of age, your parent or legal guardian may sign the request on your behalf. A designated representative may sign if the requestor is unable to sign due to a physical or developmental disability or mental impairment. A photocopy of a signed request or typewritten name in place of a signature is not acceptable. This request is not considered properly filed until accepted by USCIS.

**Evidence.** You must submit all required evidence and supporting documentation with your request at the time of filing. See the **Evidence for Initial Requests Only** and **Evidence for Renewal Requests Only** sections of these instructions for more details.

You should keep all documents that support how you meet the DACA guidelines so you can provide them if they are requested by USCIS.

**NOTE:** If you are submitting a **Renewal Request** for consideration of DACA to USCIS, you do not need to re-submit documents you already submitted with your previous DACA requests.

**Biometric Services Appointment.** Individuals requesting DACA must provide fingerprints, photographs, and signatures (biometrics). You may receive a notice scheduling you to appear at an Application Support Center (ASC) for biometrics collection. Failure to comply with the notice may result in the denial of your deferred action request. USCIS may, in its discretion, waive the collection of certain biometrics.

**Copies.** You may submit a legible photocopy of any document, unless you are specifically required to file an original document with this request. Original documents submitted when not required may remain a part of the record, and USCIS will not automatically return them to you.

**Translations.** Any document you submit to USCIS that contains a foreign language must have a full English translation. The translator must certify that the English translation is complete and accurate, and that he or she is competent to translate from the foreign language into English.

An example of a certification would read, "I [typed name], certify that I am fluent (conversant) in the English and [insert other language] languages, and that the above/attached document is an accurate translation of the document attached entitled [name of document]." The certification should also include the date, the translator's signature and typed name, and the translator's address.

**Advance Parole.** If you wish to file a request for Advance Parole, please follow the instructions for filing Form I-131, Application for Travel Document. You can get the most current information on how to apply for advance parole by visiting the USCIS website at **www.uscis.gov/i-131** or calling the National Customer Service Line at **1-800-375-5283** or **1-800-767-1833** (TTY for the hearing impaired). Customer service officers are available Monday - Friday from 8 a.m. - 6 p.m. in each U.S. time zone.

**Travel Warning.** On or after August 15, 2012, if you travel outside of the United States before USCIS has determined whether to defer action in your case, you will not be considered for deferred action. Even after USCIS has deferred action in your case under DACA, you should not travel outside the United States unless you have been issued an Advance Parole Document by USCIS. Deferred action will terminate automatically if you travel outside the United States without obtaining an Advance Parole Document from USCIS. In addition, leaving the United States, even with an Advance Parole Document, may impact your ability to return to the United States.

AR2022_300791

**How To Fill Out Form I-821D**

1.   This form consists of eight parts. Requestors for Initial DACA and those requestors seeking Renewal of DACA should fill out most parts. However, only requestors for Initial DACA should complete **Part 3.**  See below for greater detail.

**Part 1. Information About You.**  All requestors must complete this part.

**Part 2. Residence and Travel Information.**  All requestors must complete this part. Please be aware that Initial requestors must provide more extensive information than Renewal requestors.

**Part 3. For Initial Requests Only.**  Renewal requestors should skip this part.

**Part 4. Criminal, National Security, and Public Safety Information.**  All requestors must complete this part.

**Part 5. Statement, Certification, Signature, and Contact Information of the Requestor.**  All requestors must complete this part.

**Part 6. Contact Information, Certification, and Signature of the Interpreter.**  Any requestor using an interpreter must complete this part.

**Part 7. Contact Information, Declaration, and Signature of the Person Preparing this Request, If Other than the Requestor.**  If you had someone else prepare your request, he or she must complete this part.

**Part 8. Additional Information.**  Any requestor may complete this part if additional space is needed.

2.   Further Information on filling out Form I-821D:

**A.**   Type or print legibly in black ink.

**B.**   If you need extra space to complete any item within this request, use **Part 8. Additional Information** and make additional copies of this sheet as needed.  Type or print your name and Alien Registration Number (A-Number) (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**C.**   Answer all questions fully and accurately.  If an item is not applicable or the answer is "none," type or print "N/ A," unless otherwise directed.

**D.**   All dates must be entered as mm/dd/yyyy.  You may provide approximate dates if you do not know the exact date. Do not leave a date response blank.

**E.**   **Processing Information.**  You must provide the biometrics information requested in **Part 1.**, **Item Numbers 15. - 20.**  Providing this information as part of your request may reduce the time you spend at your USCIS ASC appointment.

**F.**   **Part 5. Statement, Certification, Signature, and Contact Information of the Requestor.**  Select the box that indicates whether someone interpreted this form for you.  If applicable, the attorney, accredited representative, or other individual who helped prepare this form for you must complete **Part 7.** and sign and date the form.  Every request must contain the requestor's original signature.  A photocopy of a signed request or a typewritten name in place of a signature is **not** acceptable.  Sign and date the form and provide your daytime telephone number, mobile telephone number, and email address.  If you are under 14 years of age, your parent or legal guardian may sign the request on your behalf.  A designated representative may sign if the requestor is unable to sign due to a physical or developmental disability or mental impairment.

**G.**   **Part 6. Contact Information, Certification, and Signature of the Interpreter.**  If you used an interpreter to read the instructions and complete the questions on this form, the interpreter must fill out **Part 6.**  The interpreter must provide his or her full name, the name of his or her business or organization, an address, a daytime telephone number, and an email address.  He or she must also sign and date the form.

AR2022_300792

**H. Part 7. Contact Information, Declaration, and Signature of the Person Preparing this Request, If Other Than the Requestor.** If the person who completed this request, is someone other than the person named in **Part 1.**, he or she must complete this section of the request, provide his or her name, the address of his or her business or organization (if any), and his or her contact information. If the person completing this request is an attorney or accredited representative, he or she must submit a completed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, along with this request. Further, the attorney or accredited representative, and anyone who assisted in preparing your request, must sign and date the request. This section of the request **MUST** contain the original signature of the attorney or accredited representative, and anyone who assisted in preparing your request. A typewritten name in place of a signature is not acceptable.

## Evidence for Initial Requests Only

**NOTE:** If you are submitting an **Initial Request** for consideration of DACA to USCIS, you will need to submit documents showing how you believe you have satisfied each DACA guideline.

1. What documents should you submit with your Form I-821D?

   A. You do not need to submit original documents unless USCIS requests them.

   B. Evidence and supporting documents that you file with your Form I-821D should show that you are at least 15 years of age at the time of filing, if required (see the **Who May File Form I-821D** section of these instructions for more information), and that you meet all of the following:

      (1) Were born after June 15, 1981 (i.e., You were not age 31 or older on June 15, 2012);

      (2) Arrived in the United States before 16 years of age;

      (3) Have continuously resided in the United States since June 15, 2007, up to the present time;

      (4) Were present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;

      (5) Had no lawful status on June 15, 2012; and

      (6) Are currently in school, graduated or received a certificate of completion from high school, obtained a GED certificate or other equivalent state-authorized exam in the United States, or that you are an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard.

2. What documents do you need to provide to prove identity?

   Submit copies of any of the following:

   A. Passport;

   B. Birth certificate accompanied by photo identification;

   C. Any national identity document from your country of origin bearing your photo and/or fingerprint;

   D. Any U.S. government immigration or other document bearing your name and photograph (e.g., EADs, visas, driver's licenses, non-driver cards);

   E. Any school-issued form of identification with photo;

   F. Military identification document with photo;

   G. State-issued photo ID showing date of birth; or

   H. Any other document with photo that you believe is relevant.

   **NOTE:** Expired documents are acceptable.

AR2022_300793

**3.   What documents may show that you came to the United States before your 16th birthday?**

Submit copies of any of the following documents:

**A.**   Passport with an admission stamp indicating when you entered the United States;

**B.**   Form I-94, I-94W, or I-95 Arrival-Departure Record;

**C.**   Any Immigration and Naturalization Service (INS) or DHS document stating your date of entry (e.g., Form I-862, Notice to Appear);

**D.**   Travel records, such as transportation tickets showing your dates of travel to the United States;

**E.**   School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

**F.**   Hospital or medical records concerning treatment or hospitalization, showing the names of the medical facilities or physicians and the dates of the treatment or hospitalization;

**G.**   Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding); or

**H.**   Any other document that you believe is relevant.

**4.   If you left the United States for some period of time before your 16th birthday and returned on or after your 16th birthday to begin your current period of continuous residence, what documents may show that you established residence before your 16th birthday?**

Submit copies of any of the following documents:

**A.**   School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

**B.**   Employment records (e.g., pay stubs, W-2 Forms, certification of the filing of Federal income tax returns, state verification of the filing of state income tax returns, letters from employers, or, if you are self employed, letters from banks and other firms with whom you have done business);

**C.**   Documents evidencing that you were physically present in the United States for multiple years prior to your 16th birthday; or

**D.**   Any other relevant document.

**5.   What documents may show that you continuously resided in the United States since June 15, 2007, up to the present date?**

Submit copies of any relevant documents such as:

**A.**   Rent receipts, utility bills (e.g., gas, electric, phone), or receipts or letters from companies showing the dates during which you received service.  You may submit this documentation even if it only has the name of your parents or legal guardians, as long as you also submit other evidence (e.g., third party documentation) that connects you to your residence at that address;

**B.**   Employment records (e.g., pay stubs, W-2 Forms, certification of the filing of Federal income tax returns, state verification of the filing of state income tax returns, letters from employers, or, if you are self employed, letters from banks and other firms with whom you have done business);

**NOTE:**  In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates.  Letters must include: your address at the time of employment, exact periods of employment, periods of layoff, and duties with the employer.  Letters must also be signed by the employer and include the employer's contact information.

**C.**   School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

**AR2022_300794**

**D.** Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

**E.** Hospital or medical records concerning treatment or hospitalization, showing the names of the medical facilities or physicians and the dates of the treatment or hospitalization;

**F.** Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding);

**G.** Money order receipts for money sent in or out of the country; passport entries; birth certificates of children born in the United States; dated records of bank transactions; correspondence between you and another person or organization; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

**H.** Any other relevant document.

**6. Do brief departures interrupt continuous residence?**

A brief, casual, and innocent absence from the United States will not interrupt your continuous residence.  If you were absent from the United States for any period of time, your absence will be considered brief, casual, and innocent, if it was on or after June 15, 2007, and before August 15, 2012, and:

**A.** The absence was short and reasonably calculated to accomplish the purpose for the absence;

**B.** The absence was not because of an order of exclusion, deportation, or removal;

**C.** The absence was not because of an order of voluntary departure or an administrative grant of voluntary departure before you were placed in exclusion, deportation, or removal proceedings; and

**D.** The purpose of the absence and/or your actions while outside of the United States were not contrary to law.

**In Part 3. Arrival/Residence Information,** list all your absences from the United States since June 15, 2007.  Include information about all your departure and return dates, and the reason for your departures.  Documents you can submit that may show your absence was brief, casual, and innocent include, but are not limited to:

**A.** Plane or other transportation tickets or itinerary showing the travel dates;

**B.** Passport entries;

**C.** Hotel receipts showing the dates you were abroad;

**D.** Evidence of the purpose of the travel (e.g., you attended a wedding or funeral);

**E.** Copy of Advance Parole Document issued by USCIS; and

**F.** Any other evidence that could support a brief, casual, and innocent absence.

**7. What documents may demonstrate that you were present in the United States on June 15, 2012?**

Submit copies of any relevant documents such as:

**A.** Rent receipts, utility bills (e.g., gas, electric, phone), or receipts or letters from companies showing the dates during which you received service You may submit this documentation even if it only has the name of your parents or legal guardians, as long as you also submit other evidence (e.g., third party documentation) that connects you to your residence at that address;

**B.** Employment records (e.g., pay stubs, W-2 Forms, certification of the filing of Federal income tax returns, state verification of the filing of state income tax returns, letters from employers, or, if you are self employed, letters from banks and other firms with whom you have done business);

**NOTE:**  In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates.  Letters must include: your address at the time of employment, exact periods of employment, periods of layoff, and duties with the employer.  Letters must also be signed by the employer and include the employer's contact information.

**C.** School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

**D.** Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

**E.** Hospital or medical records concerning treatment or hospitalization, showing the names of the medical facilities or physicians and the dates of the treatment or hospitalization;

**F.** Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding);

**G.** Money order receipts for money sent in or out of the country; passport entries; birth certificates of children born in the United States; dated records of bank transactions; correspondence between you and another person or organization; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

**H.** Any other relevant document.

**8. What documents may show you had no lawful status on June 15, 2012?** (Submit documents if you were admitted or paroled, or otherwise obtained a lawful immigration status, on or before June 15, 2012, or you were or are in removal proceedings.)

Submit copies of any of the following documents:

**A.** Form I-94, I-94W, or I-95 Arrival/Departure Record showing the date your authorized stay expired;

**B.** If you have a final order of exclusion, deportation, or removal issued as of June 15, 2012, submit a copy of that order and related charging documents, if available;

**C.** An INS or DHS charging document placing you into removal proceedings, if available; or

**D.** Any other document that you believe is relevant to show that on June 15, 2012, you had no lawful status.

**9. What documents may demonstrate that you:  a) are currently in school in the United States at the time of filing; b) have graduated or received a certificate of completion or a certificate of attendance from a U.S. high school, a U.S. public or private college or university, including community college; or c) have obtained a GED certificate or other equivalent state-authorized exam in the United States?** (If applicable)

USCIS recognizes that schools, educational programs, school districts, and state education agencies around the country issue educational records in a variety of formats.  USCIS does not require educational records to be presented in any particular format.

**A.** To be considered "currently in school," you are to demonstrate that you are currently enrolled in one of the following:

**(1)** A U.S. public, private, or charter elementary school, junior high or middle school, high school, secondary school, alternative program, or home school program meeting state requirements;

**(2)** An education, literacy, or career training program (including vocational training) that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in post-secondary education, job training, or employment, and where you are working toward such placement, and that the program:

**(a)** Is administered by a non-profit entity; or

**(b)** Is funded in whole or in part by Federal, state, local, or municipal funds; or

**(c)** Is of demonstrated effectiveness;

**(3)** An education program in the U.S. assisting students in obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other equivalent state-authorized exam, and that the program:

    **(a)** Is administered by a non-profit entity; or

    **(b)** Is funded in whole or in part by Federal, state, local, or municipal funds; or

    **(c)** Is of demonstrated effectiveness;

**(4)** A U.S. public or private college or university including community college.

Evidence of enrollment may include, but is not limited to: school registration cards, acceptance or other letters demonstrating enrollment or attendance, current transcripts, report cards, progress reports, or other documents issued by a school district, state education agency, school, or program.  These documents should show your name; the name of the school district, or state educational agency, school, or program issuing the record; the dates or time periods of enrollment you are seeking to establish; and your current educational or grade level.

If you have been accepted for enrollment and your classes have not yet begun, you may submit an acceptance letter with evidence that you have registered for classes or any other relevant evidence showing you have committed to starting classes on a certain date, including, for example, a copy of your tuition bill, your class schedule, or your Individualized Educational Program.

If you are enrolled in an educational, literacy, or career training program (including vocational training or an ESL course), evidence that the program is funded in whole or in part by Federal, state, local, or municipal funds includes a letter or other documentation from an authorized representative of the program that includes information such as: your name and date of enrollment, the duration of the program and expected completion date, the program's source of public funding, and the program's authorized representative's contact information.

If you are enrolled in an education, literacy, or career training program that is not publicly funded, evidence that the program is of demonstrated effectiveness may include information from an authorized school representative relating to: the duration of the program's existence; the program's track record in placing students in employment, job training, or post-secondary education; receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or any other information indicating the program's overall quality.

**B.** Evidence to show that you meet the educational guideline because you have "graduated from school" or "obtained a GED certificate" or other equivalent state-authorized exam in the United States includes, but is not limited to:

**(1)** A high school diploma from a U.S. public or private high school or secondary school;

**(2)** A recognized equivalent of a U.S. high school diploma under state law, including a GED certificate or other equivalent state-authorized exam, a certificate of completion, or a certificate of attendance;

**(3)** A transcript that identifies the date of graduation or program completion;

**(4)** An enrollment history that shows the date of graduation or program completion;

**(5)** A degree from a public or private college or university or a community college; or

**(6)** An alternate award from a U.S. public or private high school or secondary school.

These documents should show your name; the name of the U.S. school district, educational agency, school, or program issuing the record; the dates or time periods of enrollment you are seeking to establish; and your date of graduation or completion.

**10. What documents may demonstrate that you are an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard?** (If applicable)

Submit copies of the following documents:

**A.** Form DD-214, Certificate of Release or Discharge from Active Duty;

**B.** NGB Form 22, National Guard Report of Separation and Record of Service;

AR2022_300797

**C.** Military personnel records;

**D.** Military health records; or

**E.** Any other relevant document.

**11. What additional documents should you submit if you are currently or have been in removal proceedings?**

Submit a copy of the removal order, any document issued by the immigration judge, or the final decision of the Board of Immigration Appeals (BIA), if available.  If you have not been in removal proceedings, this question does not apply to you.

**12. What evidence should I submit to demonstrate my criminal history?**

If you have been arrested for or charged with any felony (i.e., a Federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year) or misdemeanor (i.e., a Federal, state, or local criminal offense for which the maximum term of imprisonment authorized is one year or less but greater than five days) in the United States, or a crime in any country other than the United States, you must submit evidence demonstrating the results of the arrest or charges brought against you.  If the charges against you were handled in juvenile court, and the records are from a state with laws prohibiting their disclosure, this evidence is not required.

**A.** If you have ever been arrested for any felony or misdemeanor in the United States, or a crime in any country other than the United States, and no charges were filed, submit an original official statement by the arresting agency or applicable court order confirming that no charges were filed for each arrest.  If you are unable to provide such documentation or if it is not available, you must provide an explanation, including a description of your efforts to obtain such evidence, in **Part 8. Additional Information.**

**B.** If you have ever been charged with or convicted of a felony or misdemeanor in the United States, or a crime in any country other than the United States, submit an original or court-certified copy of the complete arrest record and disposition for each incident (e.g., dismissal order, conviction and sentencing record, acquittal order).  If you are unable to provide such documentation or if it is not available, you must provide an explanation, including a description of your efforts to obtain such evidence, in **Part 8. Additional Information.**

**C.** If you have ever had any arrest or conviction vacated, set aside, sealed, expunged, or otherwise removed from your record, submit:

**(1)** An original or court-certified copy of the court order vacating, setting aside, sealing, expunging, or otherwise removing the arrest or conviction; or

**(2)** An original statement from the court that no record exists of your arrest or conviction.

If you are unable to provide such documentation or if it is not available, you must provide an explanation, including a description of your efforts to obtain such evidence, in **Part 8. Additional Information.**

**NOTE:  You do not need to submit documentation concerning minor traffic violations such as driving without a license unless they were alcohol - or drug-related.**

## Evidence for Renewal Requests Only

**NOTE:** If you are submitting a **Renewal Request** for consideration of DACA to USCIS, you do not need to re-submit documents you already submitted with your previous DACA requests.

If you are seeking a **Renewal** of DACA, respond to all questions, except where the section or question indicates "For Initial Requests Only."

If you are currently in exclusion, deportation, or removal proceedings, see **Item Number 11.** (above) for additional guidance.

If you have any criminal history, see **Item Number 12.** (above) for additional guidance.

With your Renewal request, you only need to submit any new documents pertaining to removal proceedings or criminal history that you have not already submitted to USCIS. If USCIS needs more documentation from you, USCIS will send a Request for Evidence to you explaining the needed information. However, you should submit new documents if any of the following situations apply to you:

1. You are currently in exclusion, deportation, or removal proceedings (please note, you do not need to submit these documents if your case was administratively closed); or

2. You have been charged with, or convicted of, a felony or misdemeanor (please note, you do not need to submit these documents if you already submitted them with a previous DACA request).

**NOTE:** You should keep all documents that support how you meet the DACA guidelines so you can provide them if they are requested by USCIS.

If ICE initially deferred action in your case and you are seeking a Renewal, you must select and complete **Item Number 2.** in **Part 1.** of Form I-821D. You must also respond to **ALL** subsequent questions on the form. You must also submit documentation to establish how you satisfy the guidelines as if you were filing an Initial request for consideration of deferred action.

**NOTE:** You do not need to submit documentation concerning minor traffic violations such as driving without a license unless they were alcohol-or drug- related.

---

### Additional Information Relevant to ALL Requests for DACA

1. **What other factors will USCIS consider when making a determination on deferred action?**

   USCIS will also conduct a background check. USCIS may consider deferring action in your case even if you have been arrested or detained by any law enforcement officer and charges were filed, or if charges were filed against you without an arrest. USCIS will evaluate the totality of the circumstances in reaching a decision on deferred action.

   In accordance with the Secretary's memorandum, if USCIS determines that you have been convicted of a felony, a significant misdemeanor, or three or more misdemeanors not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, or that you otherwise pose a threat to national security or public safety, USCIS is unlikely to defer action in your case. See the Frequently Asked Questions at www.uscis.gov/childhoodarrivals.

   Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case.

2. **What else should you submit with Form I-821D?**

   USCIS will not consider deferring action in your case unless your Form I-821D is accompanied by Form I-765, with fees, and Form I-765WS. If you do not include Form I-765 with all applicable fees with your Form I-821D, your entire submission will be rejected.

   **Optional E-Notification of Request Acceptance.** You may submit Form G-1145, Notification of Application/ Petition Acceptance, an optional form, which will notify you electronically when USCIS accepts your request for DACA.

---

### What is the Filing Fee?

There is no filing fee for Form I-821D. However, you must submit both filing and biometric services fees with Form I-765. Read Form I-765 filing instructions for complete information at www.uscis.gov/I-765.

---

AR2022_300799

## Where to File?

Please see our USCIS website at **www.uscis.gov/I-821D** or call the USCIS National Customer Service Center at **1-800-375-5283** for the most current information about where to file this form.  For TTY (deaf or hard of hearing) call: **1-800-767-1833**.

## Address Changes

You must inform USCIS if you change your address.  For information on filing a change of address, go to the USCIS website at **www.uscis.gov/addresschange** or contact the USCIS National Customer Service Center at **1-800-375-5283**. For TTY (deaf or hard of hearing) call:  **1-800-767-1833**.

**NOTE:**  Do not submit a change of address request to USCIS Lockbox facilities because these facilities do not process change of address requests.

## Processing Information

**Initial Processing.**  Once your request has been received by USCIS, USCIS will check the request for completeness.  If you do not completely fill out the form, USCIS may deny or reject your request.

**Requests for More Information, Including Biometrics or Interview.**  We may request more information or evidence, or we may request that you appear at a USCIS office for an interview.  We may also request that you provide the originals of any copies you submit.  We will return these originals when they are no longer needed.

If the same documents are required for both Form I-821D and Form I-765 that are filed together, the documents only have to be submitted once.

At the time of any interview or other appearance at a USCIS office, USCIS may require that you provide biometric information (e.g., photograph, fingerprints, signature) to verify your identity and update your background information.

**Decision.**  USCIS will review your request to determine whether the exercise of prosecutorial discretion is appropriate in your case.  Each case will be considered on an individual, case-by-case basis.  Even if you satisfy the threshold criteria for consideration of DACA, USCIS may determine, in its unreviewable discretion, that deferred action is not warranted in your case.  You will be notified of the decision in writing.  There is no motion to reopen/reconsider the decision and there is no right to appeal.

## USCIS Forms and Information

To ensure you are using the latest version of this request, visit the USCIS website at **www.uscis.gov** where you can obtain the latest USCIS forms and immigration-related information.  If you do not have internet access, you may order USCIS forms by calling the USCIS Contact Center at **1-800-375-5283**.  The USCIS Contact Center provides information in English and Spanish.  For TTY (deaf or hard of hearing) call:  **1-800-767-1833**.

Instead of waiting in line for assistance at your local USCIS office, you can schedule an appointment online at **www.uscis.gov**. Select "Tools," then under "Self Service Tools," select "Appointments" and follow the screen prompts to set up your appointment.  Once you finish scheduling an appointment, the system will generate an appointment notice for you.

## Penalties

If you knowingly and willfully provide materially false information on Form I-821D, you will be committing a Federal felony punishable by a fine, or imprisonment up to five years, or both, under 18 U.S.C. Section 1001.  In addition, individuals may be placed into removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

## DHS Privacy Notice

**AUTHORITIES:**  The information requested on this form, and the associated evidence, is collected under the Immigration and Nationality Act, section 101, et seq.

**PURPOSE:**  The primary purpose for providing the requested information on this form is to determine if you should be considered for deferred action as a childhood arrival.  The information you provide will be used in making a decision whether to defer removal action in your case as an exercise of prosecutorial discretion.

**DISCLOSURE:**  The information you provide is voluntary.  However, failure to provide the requested information, and any requested evidence, may delay a final decision in your case or result in denial of your form.

**ROUTINE USES:**  The information you provide on this form may be shared with other Federal, state, local, and foreign government agencies and authorized organizations following approved routine uses described in the associated published system of records notices [DHS/USCIS-001 - Alien File, Index, and National File Tracking System and DHS/USCIS-007 - Benefits Information System] and the published privacy impact assessments [DHS/USCIS/PIA-003(a) Integrated Digitization Document Management Program (IDDMP), DHS/USCIS/PIA-016a Computer Linked Application Information Management System and Associated Systems, and DHS/USCIS/PIA-056 USCIS Electronic Immigration System] which can be found at **www.dhs.gov/privacy**].

**OTHER DISCLOSURE INFORMATION:**  Information provided in this request is protected from disclosure to ICE and U.S. Customs and Border Protection (CBP) for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' 2011 Notice to Appear guidance (**www.uscis.gov/NTA**).  The information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of deferred action for childhood arrivals request itself, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense.  The above information sharing clause covers family members and guardians, in addition to the requestor.

This policy is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

## Paperwork Reduction Act

An agency may not conduct or sponsor an information collection, and a person is not required to respond to a collection of information, unless it displays a currently valid OMB control number.  The public reporting burden for this collection of information is estimated at 3 hours per response, including the time for reviewing instructions and completing and submitting the form.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to:  U.S. Citizenship and Immigration Services, Regulatory Coordination Division, Office of Policy and Strategy, 20 Massachusetts Ave NW, Washington, DC 20529-2140; OMB No. 1615-0124.  **Do not mail your completed Form I-821D to this address.**

**Reminder**

*For Initial and Renewal Request*

☐ Did you submit Form I-765 along with the filing and biometric services fees ($495) required for the application or employment authorization, and did you also submit a completed Form I-765WS?

☐ Did you answer every relevant **Item Number**?

☐ Did you provide an original, handwritten signature and date your request?

☐ Did you submit the necessary documents? For Initial requests, did you submit documents to meet each guideline? For Renewal requests, see the section titled Evidence for Renewal Requests Only.

☐ If you were issued a final order of exclusion, deportation, or removal, did you include a copy of that final order (if available and if you had not already submitted it to USCIS)?

☐ If your exclusion, deportation, or removal proceedings were terminated by an immigration judge, did you include a copy of the immigration judge's termination order (if available and if you had not already submitted it to USCIS)?

☐ If you have ever been arrested for, charged with, or convicted of any felony or misdemeanor in the United States or any crime in any country other than the United States, did you submit an original, official, or court-certified document that shows your complete arrest record and final disposition for each incident (if available and if you had not already submitted it to USCIS)?

*For Initial Requests Only*

☐ Did you submit evidence to show that you came to the United States while under 16 years of age?

☐ Did you submit evidence to prove your identity, date of initial entry, and continuous residence from June 15, 2007 (or earlier) up to the present time?

☐ Did you submit evidence that you are currently in school, have a GED certificate, have graduated or received a certificate of completion from high school, or are an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard?

☐ Did you provide evidence showing that you had no lawful status as of June 15, 2012?

AR2022_300802

# Immigration Examinations Fee Account

**Fee Review Supporting Documentation**

April 2019

**FY 2019**





U.S. Citizenship and Immigration Services

AR2022_300803

# TABLE OF CONTENTS

Executive Summary ................................................................................................................ 4

Fee Review Basis .................................................................................................................... 5

   Purpose ................................................................................................................................. 5

   Summary Basis for Fee Adjustments ................................................................................ 5

Methodology for the 2019/2020 Fee Review ....................................................................... 6

   Activity-Based Cost (ABC) Model .................................................................................... 6

      Resources ......................................................................................................................... 7

      Resource Drivers and Resource Assignment .............................................................. 7

      Activities .......................................................................................................................... 8

      Activity Drivers and Activity Assignment ................................................................... 9

      Cost Objects .................................................................................................................. 10

   Changes Implemented in the FY 2019/2020 Fee Review ............................................. 10

      Additional Immigration Benefit Requests and Other Workloads in the FY 2019/2020 Fee
Review ................................................................................................................................ 11

Special Topics ...................................................................................................................... 12

   IEFA Non-Premium Budget Scenarios Considered ..................................................... 12

   IEFA Non-Premium Carryover Projections & Targets ................................................ 12

   Imputed Benefits Cost Estimate – OMB Circular A-25 Compliance .......................... 15

   FASAB Compliance Justification .................................................................................. 15

      Direct Trace .................................................................................................................. 16

      Cause-and-Effect .......................................................................................................... 16

      Reasonable and Consistent Allocation ...................................................................... 17

Appendices ........................................................................................................................... 18

   Appendix I - USCIS Offices ............................................................................................ 18

      Appendix Figure 1: USCIS Organizational Chart .................................................... 18

   Appendix II - USCIS Funding and Account Structure .................................................. 19

      Appendix Table 1: FY 2019 Revised Enacted IEFA by Program/Activity ................ 20

   Appendix III - USCIS Activity-Based Costing Terminology ........................................ 21

AR2022_300804

Appendix IV - Costs by Activity..................................................................................22

  Appendix Table 2: Projected IEFA Costs by Activity (Dollars in Millions).......................22

Appendix V – Proposed Fees by Immigration Benefit Request ..............................................23

  Appendix Table 3: Proposed Fees by Immigration Benefit Request ...................................23

Appendix VI - Activity Unit Costs by Immigration Benefit Request.....................................25

  Appendix Table 4: Activity Unit Costs by Immigration Benefit Request Before Cost
  Reallocation.......................................................................................................................25
  Appendix Table 5: Activity Unit Costs by Immigration Benefit Request After Cost
  Reallocation.......................................................................................................................28

Appendix VII - Authorized IEFA Positions by USCIS Office ................................................31

  Appendix Table 6: IEFA Positions by Office ....................................................................31

Appendix VIII - IEFA History ................................................................................................32

  Appendix Table 7: USCIS IEFA Fee History ...................................................................34

AR2022_300805

# EXECUTIVE SUMMARY

U.S. Citizenship and Immigration Services (USCIS) is primarily funded by immigration and naturalization benefit fees charged to applicants and petitioners. Fees collected from applicants and petitioners are deposited into the Immigration Examinations Fee Account (IEFA) and used to fund the cost of processing immigration benefit requests. USCIS reviews its fees biennially and adjusts them to recover the full operating costs associated with its role in administering the nation's lawful immigration system, safeguarding its integrity, as well as efficiently and fairly adjudicating immigration benefit requests, while protecting Americans, securing the homeland, and honoring our values.

In accordance with the principles and guidance of the Chief Financial Officers Act of 1990 (CFO Act) and the Office of Management and Budget's (OMB) Circular A-25, USCIS completed a biennial fee review for Fiscal Years (FY) 2019/2020. The results indicate that current fee levels are insufficient to recover the full cost of activities funded by the IEFA. The Department of Homeland Security (DHS) is adjusting USCIS' current fee schedule to recover full cost.

USCIS calculates its fees to cover the full cost of adjudication.[1] DHS works with OMB and follows the guidance provided by OMB Circular A-25, which establishes Federal policy guidance regarding fees assessed by Federal agencies for government services.[2] USCIS projects fee-paying receipt volume to be approximately 60 percent higher for FY 2019/2020 than FY 2016/2017 fee rule levels. The large increase is because of proposed policy changes described in the notice of proposed rulemaking (NPRM). While these policy changes alone would increase revenue, USCIS anticipates that the current fee structure will yield an average annual deficit of approximately $1,264.1 million in the IEFA.[3] To ensure full cost recovery, DHS proposes adjusting USCIS' fee schedule by a weighted average increase of 21 percent.

---

[1] The Immigration and Nationality Act (INA) section 286(m), 8 U.S.C. 1356(m), provides broader fee-setting authority and is an exception from the stricter costs-for-services-rendered requirements of the Independent Offices Appropriations Act, 1952, 31 U.S.C. 9701(c) (IOAA); *See Seafarers Intern. Union of N. Am. v. U.S. Coast Guard*, 81 F.3d 179 (D.C. Cir. 1996) (IOAA provides that expenses incurred by the agency to serve some independent public interest cannot be included in the cost basis for a user fee, although the agency is not prohibited from charging the applicant full cost of services rendered to applicant, which also results in some incidental public benefits). Congress initially enacted immigration fee authority under the IOAA. *See Ayuda, Inc. v. Att'y General*, 848 F.2d 1298 (D.C. Cir. 1988). Congress thereafter amended the relevant provision of law to require deposit of the receipts into a separate Immigration Examinations Fee Account of the Treasury as offsetting receipts to fund operations and broadened the fee setting authority. Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1991, Pub. L. 101-515, sec. 210(d), 104 Stat. 2101, 2111 (Nov. 5, 1990). Additional values are considered in setting Immigration Examinations Fee Account fees that would not be considered in setting fees under the IOAA. *See* 72 FR at 29866-7.
[2] OMB Circular A-25, Uses Charges (Revised), par. 6, 58 FR 38142 (July 15, 1993).
[3] Excluding Premium Processing and Temporary Protected Status (TPS) revenue and budget forecasts.

AR2022_300806

# FEE REVIEW BASIS

This document provides an overview of the FY 2019/2020 fee review results and corresponding NPRM. Consistent with section 205(a)(8) of the CFO Act, USCIS conducts a biennial fee review to evaluate projected costs and revenue to determine whether the current fee structure is sufficient to recover full cost. As a result of this fee review, DHS proposes to adjust the current fee structure to recover the full operating costs associated with USCIS' role in administering the nation's lawful immigration system.

## PURPOSE

The primary objective of a fee review is to ensure immigration and naturalization benefit fees provide sufficient funding to recover costs. The focus of this fee review is the IEFA, which comprised approximately 95 percent of USCIS' total budget authority in FY 2018.

In addition to the requirements of the CFO Act, there are several important reasons for conducting the FY 2019/2020 fee review. It:

- Allows for an assessment of USCIS policies, staffing levels, costs, revenue, and performance measures. USCIS evaluates its performance and makes informed decisions concerning program scaling, resource planning, and staffing allocations.
- Provides USCIS stakeholders with an opportunity to review and evaluate anticipated costs and revenue as well as assess the impact of changes to fees.
- Provides an opportunity for USCIS to account for the latest operational changes including efficiencies, workload trends, information technology improvements, and other factors.

## SUMMARY BASIS FOR FEE ADJUSTMENTS

Per Table 1, the IEFA non-premium cost baseline has increased since the FY 2016/2017 fee rule. It is projected to increase further in FY 2019/2020. USCIS anticipates an average annual deficit of $1,262.3 million over the FY 2019/2020 biennial period. DHS proposes to adjust fees by a weighted average increase of 21 percent to address the anticipated deficit. This fee adjustment reflects the following changes:

- Proposed changes to fee waivers, fee exemptions, and other fee-related policies;
- Proposed new fees for Forms I-129, I-589, I-600A/600 supplement 3, and I-821D;
- Sustain current operating levels while allowing for limited strategic investments necessary to strengthen and mature the USCIS enterprise.

AR2022_300807

Figure 1: IEFA Non-Premium Cost Baseline (Dollars in Millions)



## METHODOLOGY FOR THE 2019/2020 FEE REVIEW

When conducting the fee review, USCIS examines its recent cost history, operating environment, and current service levels to determine the appropriate method to assign costs to particular immigration benefit requests.

### ACTIVITY-BASED COST (ABC) MODEL

USCIS uses activity-based costing (ABC) to determine the full cost of processing immigration benefit requests and biometric services. This is the same methodology used in the last five fee reviews and the basis for the current fee structure. ABC is a business management tool that assigns resource costs to operational activities and then to products and/or services. These assignments provide an accurate cost assessment of each major step towards producing the individual outputs of an organization.

USCIS uses commercially available ABC software[4] to create financial models used to calculate immigration benefit request and biometric service fees. USCIS continues to refine these models with the most current information available to ensure they accurately depict USCIS operations.

USCIS assigns costs (resources) to immigration benefit and biometric service processing activities (activities) and then to individual immigration benefit requests (cost objects). ABC integrates these three components using a two-step cost assignment process. The first step assigns resources to processing activities using resource drivers. The second step assigns activities to cost objects using activity cost drivers. USCIS determines resource drivers by

---

[4] SAP Business Objects Profitability and Cost Management.

AR2022_300808

analyzing which offices and job titles perform which activities. USCIS determines activity drivers by analyzing which activity costs contribute to each cost object. Figure 1 illustrates the ABC cost assignment methodology.

Figure 2: Activity-Based Costing Diagram



### Resources

Resources equal the projected FY 2019/2020 average annual cost baseline of $4,670.5 million. USCIS designed the ABC model structure for FY 2019/2020 to resemble the structure of the FY 2018 annual operating plan (AOP). The AOP is the detailed budget execution plan USCIS establishes at the beginning of the fiscal year. It is consistent with the annual spending authority enacted by Congress.

### Resource Drivers and Resource Assignment

ABC uses resource drivers to assign resources to activities (see the Activities section below for more information). All resource costs are assigned to activities so the total resources in the ABC model equal the total cost of activities.

A common resource driver in ABC is the number of employees in an organization and the percentage of time they spend performing various activities. The FY 2019/2020 ABC model uses employee counts and activity information to assign resources to activities. USCIS refers to this process as the payroll title analysis. The payroll title analysis determines how employees contribute to the eleven activities in the fee review. When an office engages in more than one activity, USCIS uses operational information to prorate that office to multiple activities. Historical activity information is applied to projected staffing levels in FY 2019/2020. The ABC model assigns resources to activities using anticipated staffing levels and historical activity information detailing the percentage of time spent performing specific activities from the payroll title analysis for each office.

USCIS assigns some costs directly to activities. For example, the contract awarded to support USCIS Application Support Center operations only pertains to the "Capture Biometric Data" activity. Therefore, USCIS assigns the costs of this contract to that activity only. Other overhead costs, including the Office of Information Technology, service-level agreements, and the DHS working capital fund contributions are prorated to each office based on the number of authorized positions in those offices so that each office pays a proportionate share.

The allocation methods in the FY 2019/2020 review are in alignment with the Federal Accounting Standards Advisory Board's (FASAB's) Statement of Federal Financial Accounting

AR2022_300809

Standards (SFFAS) Number 4 on managerial cost accounting concepts. This fulfills the guideline for agencies to directly trace costs when feasible and to either assign costs on a cause-and-effect basis or allocate them in a reasonable and consistent way.

**Activities**

In ABC, activities are the critical link between resources and cost objects. Activities represent work performed by an organization. USCIS allocates projected FY 2019/2020 operating costs (resources) to the following 12 activities:

1. **Conduct TECS[5] Check** involves the process of comparing information on applicants, petitioners, requestors, beneficiaries, derivatives, and household members who apply for an immigration benefit against various Federal Government lookup systems.
2. **Direct Costs** support a specific immigration benefit type. For instance, USCIS applies costs specific to naturalization, including conducting naturalization ceremonies and naturalization benefits processing.
3. **Fraud Detection and Prevention** involves activities performed by the Fraud Detection and National Security Directorate in detecting, combating, and deterring immigration benefit fraud, as well as addressing national security and intelligence concerns.
4. **Inform the Public** involves receiving and responding to inquiries through telephone calls, written correspondence, and walk-in inquiries. It also involves public engagement and stakeholder outreach activities.
5. **Intake** involves mailroom operations, data entry and collection, file assembly, fee receipting, adjudication of fee waiver requests, and file room operations.
6. **Issue Document** involves producing and distributing secure cards that identify the holder as foreign national and also identifies his or her immigration status and/or employment authorization.
7. **Make Determination** involves adjudicating immigration benefit requests; making and recording adjudicative decisions; requesting and reviewing additional evidence; interviewing applicants, petitioners, or requestors; consulting with supervisors or legal counsel; and researching applicable laws and decisions on non-routine adjudications.
8. **Management and Oversight** involves activities in all offices that provide broad, high-level operational support and leadership necessary to deliver on the USCIS mission and achieve its strategic goals.
9. **Records Management** involves searching for and requesting files; creating temporary and/or permanent individual files; consolidating files; appending evidence submitted by applicants, petitioners, and requestors to existing immigration files; retrieving, storing, and moving files upon request; auditing and updating systems that track the location of files; and archiving inactive files.
10. **Systematic Alien Verification for Entitlements** (SAVE) represents the cost of an intergovernmental information-sharing program that helps Federal, state, and local benefit-issuing agencies, institutions, and licensing agencies (such as an individual state's department of motor vehicles) determine the immigration status of applicants. SAVE

---

[5] In previous reviews, USCIS called the "Conduct TECS Check" activity by different names, such as "Conduct Interagency Border Inspection System Checks (IBIS)" or "Conduct Treasury Enforcement Communication System (TECS) Check." The system has changed names. The ABC model and the fee review were updated to reflect this change.

8

helps these agencies ensure that only those eligible for benefits and licenses receive them. USCIS enters into reimbursable agreements with Federal, state, and local government agencies under the authority of the Economy Act and the Intergovernmental Cooperation Act of 1968. These reimbursable agreements recover only a portion of the total program cost.

Since the FY 2016/2017 fee rule, USCIS separated one activity into several subactivities and added one new activity to this fee review:

11. **Research Genealogy** provides researchers with access to historical immigration and naturalization records of deceased immigrants.
    a) In the previous fee rule, we did not track this workload distinctly from the rest of the Records Management activity.
12. **Perform Biometric Services** involves the management of electronic biometric information, background checks performed by the Federal Bureau of Investigation (FBI), and the collection, use, and reuse of biometric information to verify the identity of individuals seeking an immigration benefit. USCIS aggregates the following subactivities into this activity:
    a) **Capture Biometric Data**: Application Support Center (ASC) contractual support for collection of fingerprints, photographs, and signature information.
    b) **Check Fingerprints**: Send fingerprints to the FBI for identity confirmation, background, and security checks.
    c) **Check Name**: Send information to the FBI for personnel, administrative, applicant, and criminal files compiled for law enforcement purposes. Generally, USCIS requests this additional service for naturalization and adjustment of status applicants.
    d) **Manage Biometric Services**: Biometric service management overall, including federal employees at the ASC locations and the Biometrics Division.

**Activity Drivers and Activity Assignment**

The fourth stage in the ABC process assigns activity costs to immigration benefit requests (cost objects). For most activities, USCIS assigns activity costs to cost objects based on the percentage of total projected workload volume, because, for these activities, similar time and effort are involved for each benefit request. Unique activity drivers are used for two activities: Make Determination and Research Genealogy.

USCIS allocates the Make Determination activity across immigration benefit requests by projected adjudication hours. USCIS calculates projected adjudication hours by multiplying projected volumes by completion rates for most benefit types. Completion rates are the average time that ISOs require to adjudicate immigration benefit requests.[6] In general, the more time spent adjudicating a request, the more cost that gets assigned to that request and, therefore, the higher the fee.

---

[6] Time here means the amount of time a USCIS immigration service officer spends on an adjudication. This is different than cycle time, the amount of time an applicant, petitioner, or requestor spends waiting for an output.

9

AR2022_300811

The Research Genealogy activity uses estimated production hours for genealogy searches and records requests. All costs associated with this activity are assigned to the genealogy fees (Forms G-1041 and G-1041A).

The ABC model allocates activity costs to immigration benefit requests by the locations (Service Centers, Field Offices, etc.) that process them. USCIS uses data from the USCIS Performance Reporting Tool (including volumes and hours by various activities) and assumptions or data points from other systems. For the FY 2019/2020 fee review, USCIS aligned its fee review metrics with the Performance Reporting Tool metrics used in the FY 2018 Staffing Allocation Model (SAM) to ensure organizational alignment and consistency.

**Cost Objects**

Cost objects are the immigration benefit requests that USCIS processes. USCIS determines costs for most immigration benefit requests, including those for asylum and refugee protection. The IEFA cost of immigration benefit requests for which no revenue is recovered is redistributed to other immigration benefit requests that generate revenue.

## CHANGES IMPLEMENTED IN THE FY 2019/2020 FEE REVIEW

The preamble to this proposed rule discusses all major policy changes. This section describes key methodology changes in the FY 2019/2020 fee review that were not reflected in the FY 2016/2017 fee rule. For example, in some instances, USCIS used new data, varying levels of detail, or changed assignments in the ABC model. Examples include, but are not limited to the following:

- Created the Research Genealogy activity and split the Perform Biometric Services activities into several activities, as described in the Activities section.
- Used estimated genealogy hours to allocate the Research Genealogy activity costs to each genealogy request.
  - o The previous fee rule used completions to allocate the Records Management activity to all immigration benefit requests (including genealogy workload) and calculated a single genealogy fee.
  - o The proposed fees may better represent the level of effort required for each genealogy form.
- Used estimated completion rates for asylum workloads to estimate adjudication hours. Used these estimated adjudication hours as an activity driver for the Make Determination activity, similar to most other cost objects in the ABC model.
  - o Previous fee rules used completions to drive the Make Determination activity to asylum workloads. The previous fee review ABC models included asylum cost objects for Forms I-589 and I-881 even though DHS did not propose or change these fees.
- Estimated a Form I-90 online filing volume that does not receive the Intake activity.
- Allocated estimated costs of the Office of Citizenship to all naturalization forms.

- o   The previous fee rule ABC model allocated these costs to Form N-400 only.

**Additional Immigration Benefit Requests and Other Workloads in the FY 2019/2020 Fee Review**

There are several new immigration benefit requests that USCIS included in the proposed fee structure that were not fully considered in the previous fee rule. To refine the ABC model, USCIS incorporated cost and operational metrics for the following immigration benefit requests:

- Separated Form I-129, Petition for a Nonimmigrant Worker, into several different fees based on the visa class requested and whether the beneficiaries are named or unnamed workers.
- Incorporated cost and fee-paying volume from U.S. Customs and Border Protection (CBP) for the following workloads that USCIS and CBP share:
  - o   I-192 Application for Advance Permission to Enter as Nonimmigrant
  - o   I-193 Application for Waiver of Passport and/or Visa
  - o   I-212 Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal
  - o   I-824 Application for Action on an Approved Application or Petition
- Incorporated volume estimates from the interagency agreement with Department of State (DOS) Bureau of Consular Affairs to allocate the estimated cost for the following workloads that USCIS and DOS share:
  - o   I-130, Petition for Alien Relative
  - o   I-131, Application for Travel Document
  - o   I-131A, Application for Travel Document (Carrier Documentation)
  - o   I-360, Petition for Amerasian Widow(er) or Special Immigrant
  - o   I-407, Abandonment of Lawful Permanent Resident Status
  - o   I-600/600A/800/800A Adoption Petitions and Applications
  - o   I-604, Determination on Child for Adoption
  - o   I-730, Refugee/Asylee Relative Position
  - o   DNA Collection
  - o   Overseas Verifications
- Proposed Form I-600A/I-600 Supplement 3 Request for Action on Approved Form I-600A/I-600.
- Proposed renewal fees for Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA) and DACA associated Form I-765.
  - o   Added cost objects for Form I-821D and DACA-related Form I-765. The proposed Form I-765 fee is based on the sum of DACA and non-DACA Form I-765 projected costs.
- Added other cost objects to the ABC model, enabling USCIS to estimate the total cost of the following workloads, although DHS does not propose fees for these workloads:
  - o   Automatic certificate of citizenship for certain adopted children
  - o   DNA collection abroad
  - o   I-914 Supplement A, Application for Family Member of T-1 Recipient
  - o   I-918 Supplement A, Petition for Qualifying Family Member of U-1 Recipient

11

## SPECIAL TOPICS

This section addresses specific topics not discussed elsewhere in the supporting document.

## IEFA Non-PREMIUM Budget Scenarios Considered

USCIS considered six different budget scenarios when developing this fee rule. As described in section VII. Other Possible Fee Scenarios of the preamble, USCIS lacks full control over two of the decisions that may affect the budget estimates used to calculate the proposed fees. These two items include the current injunctions and overall future of the DACA program, as well as the the Administration's request to transfer $207.6 million of IEFA funds to ICE for expenses associated with adjudication and naturalization services. If Congress rejects the Administration's request, or if DHS does not ultimately shift these costs from annual appropriations to the IEFA, USCIS will not include this use of funds in its fee model for the final rule. The average annual budget amount used in the calculations and throughout this rule reflects scenario A from Table 2. It assumes current DACA policy and an annual IEFA transfer of $207.6 million to ICE.

Table 1: IEFA Budget Scenarios (Dollars in Millions)

| Scenario | Description | FY 2019 | FY 2020 | FY 2019/2020 Average |
|---|---|---|---|---|
| A | Includes DACA Renewals and ICE Transfer | $4,558.1 | $4,782.9 | $4,670.5 |
| B | Includes DACA Renewals and No ICE Transfer | $4,350.5 | $4,575.3 | $4,462.9 |
| C | Includes ICE Transfer and No DACA (Initials or Renewals) | $4,539.5 | $4,763.9 | $4,651.7 |
| D | No DACA (Initials or Renewals) and No ICE Transfer | $4,332.0 | $4,556.4 | $4,444.2 |
| E | Includes ICE Transfer and DACA (Initials & Renewals) | $4,560.0 | $4,784.8 | $4,672.4 |
| F | Includes DACA (Initials & Renewals) and No ICE Transfer | $4,352.4 | $4,577.2 | $4,464.8 |

## IEFA NON-PREMIUM CARRYOVER PROJECTIONS

Carryover is unobligated/unexpended fee revenue accumulated from prior fiscal years. For federal entities such as USCIS that rely almost entirely on fee revenue, it is important that a sufficient carryover balance be maintained. USCIS' IEFA requires a positive carryover balance to ensure sufficient funds are available to maintain operations at the start of each new fiscal year until it collects and deposits current year fee revenue. Unlike most federal programs financed by

12

discretionary appropriations that receive an annual Treasury warrant to establish a cash balance in their accounts after enactment of appropriations, USCIS' IEFA possesses permanent/indefinite warrant authority that allows for immediate access to carryover balances and revenue collections subject to the annual spending limits established by Congress.

Applicants and petitioners pay IEFA fees when filing immigration benefit requests. USCIS rejects immigration benefit requests that do not include the appropriate filing fee (unless an exemption applies or USCIS approves a fee waiver request). For accounting purposes, USCIS cannot recognize revenue as earned until completing work, i.e., when it has rendered a decision to an applicant or petitioner on an immigration benefit request.[7] A carryover balance that accounts for pending applications and petitions is also necessary to cover the cost of processing workload that is incomplete. In the event that actual revenue is below forecast, the carryover balance ensures continuity of operations until USCIS reduces costs or adjusts fees.

As previously mentioned, USCIS evaluated FY 2019-2020 IEFA non-premium year-end carryover balance projections for the six different budget scenarios described in section VII. Other Possible Fee Scenarios of the preamble. Each scenario forecasts a negative FY 2019-2020 IEFA non-premium year-end carryover balance, which poses a significant fiscal risk and may further increase USCIS backlogs unless DHS adjusts the fee schedule.

Figure 3 depicts historical (FY 2016-2018) actual and FY 2019-2020 year-end carryover projections.

---

[7] Deferred revenue is revenue that USCIS has received for work that has not been completed and constitutes an outstanding liability for USCIS.

AR2022_300815

Figure 3: IEFA Non-Premium Year-End Carryover Balances



A minimum carryover balance threshold enables USCIS to effectively monitor the fiscal health of the IEFA. By comparing planned spending to projected revenue, USCIS evaluates potential surpluses and/or deficits to determine whether the IEFA will maintain an appropriate level of funding to ensure continuity of operations from the end of the current FY into the following FY. The IEFA minimum carryover balance threshold is determined by evaluating prior year actual carryover financial activity and planned financial activity for the next FY. This includes the recovery of prior year obligations, revenue, obligations, and other collections.

It is critical that USCIS maintain adequate available funds to meet daily obligation and outlay requirements, thereby mitigating the risk of Anti-Deficiency Act (ADA) violations. USCIS establishes a minimum carryover balance threshold that, when combined with new fee receipts, ensures IEFA obligations will not exceed available funding. USCIS considers historical obligation patterns and revenue trends to determine the minimum carryover threshold needed to sustain agency operations. Revenue collections do not necessarily cover obligations at any given time during the biennial period. Thus, USCIS may experience cashflow deficits at certain times during the FY. USCIS calculates its minimum carryover threshold as the average of the greatest continuous cashflow deficits sustained over the last three FYs. Ensuring that USCIS maintains cash reserves no less than this amount enables the agency to sustain equivalent levels of obligations during periods of cashflow deficits over the biennial period. USCIS estimates its FY 2019-2020 IEFA non-premium minimum carryover threshold to be $347.1 million.

The FY 2019-2020 IEFA non-premium year-end carryover balance projections reflected in Figure 2 are significantly below USCIS' minimum carryover threshold of $347.1 million. Therefore, USCIS must adjust fees as explained in the preamble.

AR2022_300816

## IMPUTED BENEFITS COST ESTIMATE – OMB CIRCULAR A-25 COMPLIANCE

OMB Circular A-25 establishes Federal policy regarding fees assessed for government services and for sale or use of government services, products, and facilities. It also establishes the underlying policy that user fees should recover the full cost to the Federal Government including direct and indirect costs. However, Circular A-25 provides exceptions for including certain costs if, in the opinion of the agency head or their designee, the costs justify an exception. The OMB Director can approve exceptions. OMB approved two USCIS exemption requests:

1. Retirement, health, and life insurance costs paid by OPM for USCIS employees and retirees. The cost is approximately $86 million in both FY 2019 and FY 2020. USCIS leveraged guidance from the OPM Benefits Administration Letter 18-303, Fiscal Year 2018 Cost Factors for Calculating Imputed Costs to estimate the imputed cost.
2. Lockbox costs paid for by the Department of the Treasury's Financial Management Service other than those for which USCIS reimburses Treasury. USCIS pays for part, but not all, of the Lockbox cost. USCIS estimates Treasury's costs to be $130 million in FY 2019 and $137 million in FY 2020. The USCIS portion of the lockbox service costs for which it reimburses Treasury is included in the fee structure.

Table 2: Imputed Cost Estimate (Dollars in Millions)

| Imputed Cost Description | FY 2019 | FY 2020 | FY 2019/2020 Estimated Cost |
|---|---|---|---|
| Treasury's portion of Lockbox contract | $86 | $86 | $86.0 |
| OPM retirement, health, and life insurance | $130 | $137 | $133.5 |
| **Grand Total** | **$216** | **$223** | **$219.5** |

USCIS believes that adding these costs to the fee structure would be overly burdensome to fee-paying applicants and petitioners. In December 2018, OMB approved USCIS' request to exclude these imputed costs from its proposed fee schedule. The OMB approval is valid for up to 4 years.

## FASAB COMPLIANCE JUSTIFICATION

The cost methodology section of FASAB's SFFAS recommends performing cost assignments using the following order of preference:

1. Directly tracing costs wherever feasible and economically practicable;
2. Assigning costs on a cause-and-effect basis; or
3. Allocating costs on a reasonable and consistent basis.

According to FASAB SFFAS Number. 4, "an activity is considered a linkage between the cause and the effect." USCIS uses ABC to assign resources to outputs (immigration benefit requests). Most immigration benefit requests require multiple activities to complete a request. USCIS distributes costs to requests by cause-and-effect with some exceptions. USCIS assigns costs

15

dedicated to particular outputs directly to those outputs. USCIS allocates overhead on a reasonable and consistent basis using staffing by activity. Cost assignments are summarized by FASAB preference below. The lists are not comprehensive. Instead, we list some of the notable examples.

**Direct Trace**

USCIS directly distributes about $732.4 million, or approximately 16 percent, of the $4,670.5 million average annual fee review budget. The following costs are examples of direct trace:

- $207.6 million for the ICE transfer, which we assign to the Management and Oversight activity.
- $169.5 million to various biometric activities:
  - $95.4 million for ASC contractual services and biometric software,
  - $39.2 million for FBI fingerprints, and
  - $34.9 million for FBI name checks.
- $65.2 million to the Issue Document activity for USCIS card production services, supplies, and secure mailing services.
- $59.3 million to the Intake activity for the USCIS lockbox provider and related supplies.
- $31.1 million to the Records Management activity for records systems, scanning, and other contractual services.
- $139.7 million for other direct costs to various activities.
- $18.5 million for secure card consumables for permanent residence cards and employment authorization documents.
- $17.4 million for services from the Department of State Bureau of Consular Affairs. USCIS uses Consular Affairs cost estimates by immigration benefit request in the fee review. These costs are added to the immigration benefit requests that Consular Affairs processes on behalf of USCIS.
- $6.3 million for naturalization ceremonies and certificates.
- $5.4 million for international cables.
- $5.4 million for Administrative Site Visit and Verification Program (ASVVP) payroll and travel.
- $3.4 million for the CLAIMS 4 case management system costs to naturalization benefits.
- Approximately $3.7 million of information technology system costs directly attributable to specific benefit types.

**Cause-and-Effect**

A cause-and-effect relationship assigns approximately $3,009.5 million, or approximately 64 percent, of the $4,670.5 million average annual cost projection. USCIS assigns resources to each fee review activity based on operational data or other assumptions. It then assigns activity costs to outputs by a prorated share of immigration benefit request volume or immigration benefit request volume weighted by adjudication processing time.

16

AR2022_300818

**Reasonable and Consistent Allocation**

Over the biennial period, USCIS uses reasonable and consistent allocation to assign approximately $928.6 million, or 20 percent, of the $4,670.5 million average annual cost projection. These costs are mostly service-wide information technology, rent, and guard service costs. These costs include the following:

- $392.9 million for information technology costs, which we reassign to other fee review activities across USCIS;
- $274.9 million in rent and guard services; and
- $260.8 million for mission support costs, which we reassign to other activities in the same office as the costs originate.

AR2022_300819

# APPENDICES

## APPENDIX I – USCIS OFFICES

Below is USCIS' organizational chart as of August 6, 2018. For additional information on the offices within USCIS, visit http://www.uscis.gov/about-us.

**Appendix Figure 1: USCIS Organizational Chart**



18

## APPENDIX II – USCIS FUNDING AND ACCOUNT STRUCTURE

Per the FY 2019 enacted DHS budget authority, USCIS receives funding authority through four accounts as identified below.

1. Discretionary Appropriations (discretionary appropriated)[8]
2. Immigration Examinations Fee Account (mandatory fees)[9]
3. Fraud Prevention and Detection Account (mandatory fees)
4. H-1B Nonimmigrant Petitioner Account (mandatory fees)

**Discretionary Appropriations**

USCIS' Discretionary Appropriations include the Operations and Support (O&S) and the Procurement, Construction, and Improvements (PC&I) accounts. The O&S appropriation provides funding for ongoing mission operations, mission support, and associated management and administration (M&A) costs for the E-Verify program. The PC&I appropriation funds the planning and acquisition costs for the E-Verify program.

**Immigration Examinations Fee Account (IEFA)**

The IEFA is the primary funding source for USCIS. It accounts for approximately 96 percent of the FY 2019 total budget authority. Fees collected from the filing of immigration benefit requests are deposited into the IEFA and used to fund the cost of processing immigration benefit requests, the cost of providing similar benefits to asylum and refugee applicants, and the cost of providing similar benefits to other immigrants whose fees are waived or to whom a fee exemption applies.

Certain IEFA fees are set by statute:

- The filing fee for TPS is limited to $50[10] upon initial registration; renewals are free of charge.
- Premium processing service is available for certain employment-based petitions. Congress originally set the fee at $1,000 and authorized USCIS to adjust it by inflation as measured by the CPI. The current premium processing fee is $1,410. Employers requesting premium processing of their petitions pay this fee in addition to the regular petition fee. USCIS currently only offers premium processing service to filers of Forms I-129 and I-140.
- CNMI education funding fee of $200. DHS has the authority to adjust this by inflation, similar to the premium processing service fee, starting in 2020.[11]
- LIFE Act penalty fee of $1,000.

---

[8] Discretionary spending is the budget authority provided by annual appropriations acts and the outlays that result from that budget authority. For example, the budget authority and outlays for the salaries and other operating expenses of Government agencies are usually provided by annual appropriations acts and, therefore, are often discretionary.
[9] Mandatory spending is budget authority and outlays provided by permanent laws. For example, permanent laws authorize payments for Medicare and Medicaid, unemployment insurance benefits, and farm price supports. Therefore, the budget authority and outlays for these programs are mandatory. In addition, budget authority provided in annual appropriations acts for certain programs is treated as mandatory because the authorizing legislation directs that the Government make or beneficiaries receive payment.
[10] Section 244(c)(1)(B) of the INA, 8 U.S.C. 1254a(c)(1)(b)
[11] The Northern Mariana Islands U.S. Workforce Act of 2018, Pub. L. No. 115-218, Sec. 3, 132 Stat. 1547 (2018) codified at 48 USC 1806(a)(6)(A)(ii) (2018).

AR2022_300821

**Appendix Table 1: FY 2019 Revised Enacted IEFA by Program/Activity**

| Program, Project, and Activity | FY 2019 Revised Enacted |
|---|---|
| **Adjudication Services** | |
| District Operations | $1,883,816,000 |
| Service Center Operations | $731,654,000 |
| Asylum, Refugee and International Ops | $337,544,000 |
| Records Operations | $152,649,000 |
| Premium Processing (including Transformation) | $648,007,000 |
| **Subtotal** | **$3,753,670,000** |
| **Information and Customer Services** | **$119,450,000** |
| **Administration** | **$616,622,000** |
| **SAVE** | **$35,112,000** |
| **Grand Total** | **$4,524,854,000** |

**Fraud Prevention and Detection Account**

The Fraud Prevention and Detection Fees charged to certain employers petitioning for nonimmigrant workers in the H-1B, H-2B, and L-1 visa classifications are set by statute. Revenue generated by the fee is used for activities related to preventing and detecting fraud in immigration benefit requests as stipulated in the H-1B Visa Reform Act of 2004, and later amended by Public Law 109-13, Section 403. Revenue from these statutory fees is shared equally among USCIS, DOS, and DOL. USCIS receives one-third of these funds, as well as the entire base-processing fee. Effective July 25, 2018, USCIS also collects and retains the $50 CNMI fraud fee, as stipulated in the Northern Mariana Island U.S. Workforce Act of 2018.

**H-1B Nonimmigrant Petitioner Account**

H-1B fees are set by statute as a result of the ACWIA of 1998, as amended by the H-1B Visa Reform Act of 2004. Revenue from the H-1B fee is shared among USCIS, DOL, and NSF. USCIS receives 5 percent of these funds, as well as the entire base-processing fee.

AR2022_300822

## APPENDIX III – USCIS ACTIVITY-BASED COSTING TERMINOLOGY

The various terms used throughout this document to discuss ABC are defined as follows:

- **Resource** – An economic element applied or used to perform activities (e.g. labor, equipment, supplies, and facilities). Resources include direct and indirect costs. Typically the term "indirect" includes overhead items or costs requiring a resource driver to spread them to activities. USCIS resources for the FY 2019/2020 fee review are outlined in section IV.A.1 Cost Projections of the preamble.

- **Resource Driver** – A measure of the amount of resources consumed by an activity. For example, the amount of time spent on an activity.

- **Activity** – The work performed within an organization. For example, accepting and adjudicating immigration benefit requests, entering data, updating records, etc. These activities consume resources. They ultimately produce outputs (cost objects).

- **Activity Driver** – A measure of the frequency and intensity of the demands for activities by cost object. For the FY 2019/2020 fee review, these activity drivers are projected immigration benefit request volumes, projected adjudication hours, completion rates, and other information. These link activities to cost objects.

- **Cost Object** – The primary output of an activity or series of activities. A cost object may be a product, service, or project. For the purposes of the FY 2019/2020 fee review, USCIS cost objects are the various immigration benefit requests that USCIS adjudicates.

AR2022_300823

**APPENDIX IV – COSTS BY ACTIVITY**

This appendix summarizes the ABC model activity costs. See the Activities section for definitions of these activities.

**Appendix Table 2: Projected IEFA Costs by Activity (Dollars in Millions)**

| Activity | FY 2019 | FY 2020 | FY 2019/2020 Average |
|---|---|---|---|
| Conduct TECS Check | $139.7 | $148.6 | $144.2 |
| Direct Costs | $59.6 | $60.7 | $60.1 |
| Fraud Detection and Prevention | $335.8 | $378.7 | $357.3 |
| Inform the Public | $402.0 | $422.8 | $412.4 |
| Intake | $135.5 | $138.6 | $137.1 |
| Issue Document | $71.1 | $72.6 | $71.9 |
| Make Determination | $1,644.3 | $1,753.5 | $1,698.9 |
| Management and Oversight | $1,148.7 | $1,169.8 | $1,159.2 |
| Perform Biometrics Services subtotal | $222.8 | $228.3 | $225.6 |
|    Manage Biometric Services | $67.8 | $70.4 | $69.1 |
|    Capture Biometric Data | $81.6 | $83.1 | $82.4 |
|    Check Fingerprints | $34.6 | $35.3 | $34.9 |
|    Check Name | $38.8 | $39.6 | $39.2 |
| Records Management | $349.6 | $358.8 | $354.2 |
| Research Genealogy | $2.0 | $2.0 | $2.0 |
| Systematic Alien Verification for Entitlements | $47.0 | $48.3 | $47.7 |
| **Total IEFA Costs** | **$4,558.1** | **$4,782.9** | **$4,670.5** |

22

# APPENDIX V – PROPOSED FEES BY IMMIGRATION BENEFIT REQUEST

## Appendix Table 3: Proposed Fees by Immigration Benefit Request

| Immigration Benefit Request | Current Fees | Model Output[12] | Cost Reallocation[13] | Proposed Fees[14] | Proposed Change in Fees | Percent Change in Proposed Fees |
|---|---|---|---|---|---|---|
| I-90 Application to Replace Permanent Resident Card | $455 | $347 | $68 | $415 | -$40 | -9% |
| I-102 Application for Replacement/Initial Nonimmigrant Arrival-Departure Document | $445 | $411 | $79 | $490 | $45 | 10% |
| I-129 Petition for a Nonimmigrant Worker Subtotal | $460 | $593 | N/A | N/A | N/A | N/A |
| I-129CW, I-129E&TN, and  I-129MISC | $460 | $593 | $112 | $705 | $245 | 53% |
| I-129H1 - Named Beneficiaries | $460 | $472 | $88 | $560 | $100 | 22% |
| I-129H2A - Named Beneficiaries | $460 | $723 | $137 | $860 | $400 | 87% |
| I-129H2B - Named Beneficiaries | $460 | $608 | $117 | $725 | $265 | 58% |
| I-129L - Named Beneficiaries | $460 | $686 | $129 | $815 | $355 | 77% |
| I-129O | $460 | $600 | $115 | $715 | $255 | 55% |
| I-129H2A - Unnamed Beneficiaries | $460 | $357 | $68 | $425 | -$35 | -8% |
| I-129H2B - Unnamed Beneficiaries | $460 | $333 | $62 | $395 | -$65 | -14% |
| I-129F Petition for Alien Fiance(e) | $535 | $438 | $82 | $520 | -$15 | -3% |
| I-130 Petition for Alien Relative | $535 | $468 | $87 | $555 | $20 | 4% |
| I-131 Application for Travel Document | $575 | $493 | $92 | $585 | $10 | 2% |
| I-131 Refugee Travel Document for an individual age 16 or older | $135 | $327 | -$182 | $145 | $10 | 7% |
| I-131 Refugee Travel Document for a child under the age of 16 | $105 | $251 | -$136 | $115 | $10 | 10% |
| I-131A Application for Travel Document (Carrier Documentation) | $575 | $851 | $159 | $1,010 | $435 | 76% |
| I-140 Immigrant Petition for Alien Worker | $700 | $458 | $87 | $545 | -$155 | -22% |
| I-191 Application for Relief Under Former Section 212(c) of the Immigration and Nationality Act (INA) | $930 | $673 | $127 | $800 | -$130 | -14% |
| I-192 Application for Advance Permission to Enter as Nonimmigrant | $930 | $1,192 | $223 | $1,415 | $485 | 52% |
| I-193 Application for Waiver of Passport and/or Visa | $585 | $2,344 | $446 | $2,790 | $2,205 | 377% |
| I-212 Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | $930 | $876 | $164 | $1,040 | $110 | 12% |
| I-290B Notice of Appeal or Motion | $675 | $1,966 | -$1,261 | $705 | $30 | 4% |
| I-360 Petition for Amerasian Widow(er) or Special Immigrant | $435 | $5,572 | -$5,117 | $455 | $20 | 5% |
| I-485 Application to Register Permanent Residence or Adjust Status | $1,140 | $942 | $178 | $1,120 | -$20 | -2% |
| I-526 Immigrant Petition by Alien Entrepreneur | $3,675 | $3,375 | $640 | $4,015 | $340 | 9% |
| I-539 Application to Extend/Change Nonimmigrant Status | $370 | $335 | $65 | $400 | $30 | 8% |
| I-589 Application for Asylum and for Withholding of Removal | $0 | $366 | -$316 | $50 | $50 | N/A |
| I-600/600A/800/800A Adoption Petitions and Applications | $775 | $1,423 | -$613 | $810 | $35 | 5% |
| I-600A Supplement 3 Request for Action on Approved Form I-600A | $385 | $1,214 | -$809 | $405 | $20 | 5% |
| I-601 Application for Waiver of Ground of Excludability | $930 | $828 | $157 | $985 | $55 | 6% |
| I-601A Provisional Unlawful Presence Waiver | $630 | $807 | $153 | $960 | $330 | 52% |

[12] Model Output is the projected total cost from the ABC model divided by projected fee-paying volume. It is only a forecast unit cost (using a budget) and not the actual unit cost (using spending from prior years). USCIS does not track actual costs by immigration benefit request.

[13] The final step in the USCIS fee-setting methodology is Cost Reallocation which determines the additional cost that USCIS adds to each fee to ensure full cost recovery. Cost Reallocation proportionally assigns costs incurred from services from which USCIS does not receive revenue (e.g., workloads without fees) and from forms for which the fees are held below projected cost (e.g. to the 5% weighted average increase) or other policy decisions (e.g., limited increases for adoption fees and the proposed $50 fee for Form I-589 are below projected cost).

[14] The sum of the Model Output and the Cost Reallocation columns may not equal the proposed fee because of rounding. Amounts shown in the table are rounded to the nearest dollar. DHS rounds all fees to the nearest $5 increment.

23

| Immigration Benefit Request | Current Fees | Model Output[12] | Cost Reallocation[13] | Proposed Fees[14] | Proposed Change in Fees | Percent Change in Proposed Fees |
|---|---|---|---|---|---|---|
| I-612 Application for Waiver of the Foreign Residence Requirement (Under Section 212(e) of the INA, as Amended) | $930 | $443 | $82 | $525 | -$405 | -44% |
| I-687 Application for Status as a Temporary Resident | $1,130 | $0 | $1,130 | $1,130 | $0 | 0% |
| I-690 Application for Waiver of Grounds of Inadmissibility | $715 | $649 | $121 | $770 | $55 | 8% |
| I-694 Notice of Appeal of Decision | $890 | $609 | $116 | $725 | -$165 | -19% |
| I-698 Application to Adjust Status from Temporary to Permanent Resident (Under Section 245A of the INA) | $1,670 | $1,359 | $256 | $1,615 | -$55 | -3% |
| I-751 Petition to Remove Conditions on Residence | $595 | $639 | $121 | $760 | $165 | 28% |
| I-765 Application for Employment Authorization | $410 | $417 | $73 | $490 | $80 | 20% |
| I-800A Supplement 3 Request for Action on Approved Form I-800A | $385 | $1,221 | -$816 | $405 | $20 | 5% |
| I-817 Application for Family Unity Benefits | $600 | $496 | $94 | $590 | -$10 | -2% |
| I-824 Application for Action on an Approved Application or Petition | $465 | $421 | $79 | $500 | $35 | 8% |
| I-829 Petition by Entrepreneur to Remove Conditions | $3,750 | $3,278 | $622 | $3,900 | $150 | 4% |
| I-881 Application for Suspension of Deportation or Special Rule Cancellation of Removal | $285 | $1,515 | $285 | $1,800 | $1,515 | 532% |
| I-910 Application for Civil Surgeon Designation | $785 | $546 | $104 | $650 | -$135 | -17% |
| I-924 Application For Regional Center Designation Under the Immigrant Investor Program | $17,795 | $11,020 | $6,775 | $17,795 | $0 | 0% |
| I-924A Annual Certification of Regional Center | $3,035 | $3,757 | $713 | $4,470 | $1,435 | 47% |
| I-929 Petition for Qualifying Family Member of a U-1 Nonimmigrant | $230 | $1,273 | $242 | $1,515 | $1,285 | 559% |
| N-300 Application to File Declaration of Intention | $270 | $1,111 | $209 | $1,320 | $1,050 | 389% |
| N-336 Request for Hearing on a Decision in Naturalization Proceedings | $700 | $1,474 | $281 | $1,755 | $1,055 | 151% |
| N-400 Application for Naturalization | $640 | $985 | $185 | $1,170 | $530 | 83% |
| N-470 Application to Preserve Residence for Naturalization Purposes | $355 | $1,347 | $253 | $1,600 | $1,245 | 351% |
| N-565 Application for Replacement Naturalization/Citizenship Document | $555 | $458 | $87 | $545 | -$10 | -2% |
| N-600/N-600K Application for Certificate of Citizenship Subtotal | $1,170 | $806 | N/A | N/A | N/A | N/A |
|   N-600 Application for Certificate of Citizenship | $1,170 | $853 | $162 | $1,015 | -$155 | -13% |
|   N-600K Application for Citizenship and Issuance of Certificate | $1,170 | $806 | $154 | $960 | -$210 | -18% |
| USCIS Immigrant Fee | $220 | $169 | $31 | $200 | -$20 | -9% |
| Biometric Services (Other Programs such as TPS and EOIR) | $85 | N/A | N/A | $30 | -$55 | -65% |
| G-1041 Genealogy Index Search Request | $65 | $241 | -$1 | $240 | $175 | 269% |
| G-1041A Genealogy Records Request | $65 | $385 | $0 | $385 | $320 | 492% |
| I-821D Consideration of Deferred Action for Childhood Arrivals (Renewal) | $0 | $273 | $2 | $275 | $275 | N/A |
| SAVE Initial Electronic Queries | $1 | $2 | N/A | N/A | N/A | N/A |

24

# APPENDIX VI – ACTIVITY UNIT COSTS BY IMMIGRATION BENEFIT REQUEST

Amounts shown in these appendix tables are rounded to the nearest dollar. DHS rounds all fees to the nearest $5 increment.

### Appendix Table 4: Activity Unit Costs by Immigration Benefit Request Before Cost Reallocation

| Immigration Benefit Request | Total Activity Cost | Conduct TECS Check | Direct Costs | Fraud Detection & Prevention | Inform the Public | Intake | Issue Document | Make Determination | Management & Oversight | Records Management | Research Genealogy | Perform Biometric Services |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Biometric Services (Other Programs such as TPS and EOIR) | N/A | | | | | | | | | | | $0 |
| G-1041 Genealogy Index Search Request | $241 | $0 | $1 | $0 | $0 | $11 | $0 | $0 | $0 | $0 | $229 | $0 |
| G-1041A Genealogy Records Request | $385 | $0 | $1 | $0 | $0 | $11 | $0 | $0 | $0 | $0 | $372 | $0 |
| I-90 Application to Replace Permanent Resident Card | $347 | $6 | $5 | $43 | $26 | $10 | $16 | $52 | $108 | $24 | $0 | $59 |
| I-102 Application for Replacement/Initial Nonimmigrant Arrival-Departure Document | $411 | $16 | $0 | $41 | $31 | $18 | $0 | $156 | $109 | $39 | $0 | $0 |
| I-129 Petition for a Nonimmigrant worker | $503 | $13 | $10 | $38 | $34 | $8 | $0 | $248 | $113 | $39 | $0 | $0 |
| I-129CW, I-129E&TN, and I-129MISC | $593 | $13 | $24 | $38 | $31 | $9 | $0 | $346 | $96 | $36 | $0 | $0 |
| I-129H2A - Unnamed Beneficiaries | $357 | $10 | $0 | $38 | $33 | $11 | $0 | $128 | $96 | $40 | $0 | $0 |
| I-129H2B - Unnamed Beneficiaries | $333 | $14 | $0 | $38 | $29 | $8 | $0 | $112 | $96 | $34 | $0 | $0 |
| I-129H1B | $472 | $13 | $9 | $38 | $35 | $8 | $0 | $211 | $118 | $40 | $0 | $0 |
| I-129H2A - Named Beneficiaries | $723 | $11 | $0 | $39 | $33 | $11 | $0 | $493 | $96 | $40 | $0 | $0 |
| I-129H2B - Named Beneficiaries | $608 | $14 | $0 | $38 | $29 | $9 | $0 | $387 | $96 | $34 | $0 | $0 |
| I-129L - Named Beneficiaries | $687 | $13 | $16 | $38 | $30 | $9 | $0 | $450 | $96 | $35 | $0 | $0 |
| I-129O | $600 | $13 | $0 | $38 | $30 | $9 | $0 | $379 | $96 | $35 | $0 | $0 |
| I -129F Petition for Alien Fiancé(e) | $438 | $12 | $0 | $41 | $35 | $23 | $0 | $180 | $105 | $42 | $0 | $0 |
| I-130 Petition for Alien Relative | $468 | $10 | $2 | $39 | $49 | $16 | $0 | $212 | $107 | $32 | $0 | $0 |
| I-131 Application for Travel Document | $493 | $25 | $2 | $60 | $39 | $23 | $3 | $100 | $165 | $63 | $0 | $11 |
| I-131 Refugee Travel Document for a child under the age of 16 | $251 | $13 | $0 | $38 | $20 | $14 | $14 | $35 | $96 | $22 | $0 | $0 |
| I-131 Refugee Travel Document for an individual age 16 or older | $327 | $13 | $0 | $39 | $21 | $14 | $14 | $53 | $100 | $22 | $0 | $52 |
| I-131A Application for Travel Document (Carrier Documentation) | $851 | $0 | $319 | $35 | $39 | $0 | $0 | $307 | $142 | $9 | $0 | $0 |
| I-140 Immigrant Petition for Alien Worker | $458 | $14 | $0 | $38 | $21 | $14 | $0 | $253 | $96 | $22 | $0 | $0 |
| I-191 Application for Relief Under Former Section 212(c) of the Immigration and Nationality Act (INA) | $673 | $0 | $0 | $0 | $36 | $4 | $0 | $418 | $120 | $66 | $0 | $29 |
| I-192 Application for Advance Permission to Enter as Nonimmigrant | $1,192 | $43 | $95 | $105 | $76 | $20 | $0 | $421 | $266 | $86 | $0 | $4 |
| I-193 Application for Waiver of Passport and/or Visa | $2,344 | $0 | $2,340 | $0 | $1 | $0 | $0 | $1 | $2 | $1 | $0 | $0 |
| I-212 Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | $876 | $9 | $0 | $38 | $70 | $13 | $0 | $605 | $111 | $30 | $0 | $0 |
| I-290B Notice of Appeal or Motion | $1,966 | $29 | $0 | $103 | $42 | $21 | $0 | $1,099 | $627 | $45 | $0 | $0 |
| I-360 Petition for Amerasian, Widow(er) or Special Immigrant | $5,572 | $182 | $46 | $399 | $267 | $165 | $0 | $2,891 | $1,111 | $510 | $0 | $3 |
| I-485 Application to Register Permanent Residence or Adjust Status | $942 | $11 | $5 | $49 | $94 | $16 | $17 | $475 | $143 | $40 | $0 | $69 |
| I-526 Immigrant Petition by Alien Entrepreneur | $3,375 | $1 | $118 | $246 | $16 | $22 | $0 | $2,518 | $413 | $40 | $0 | $0 |

AR2022_300827

| Immigration Benefit Request | Total Activity Cost | Conduct TECS Check | Direct Costs | Fraud Detection & Prevention | Inform the Public | Intake | Issue Document | Make Determination | Management & Oversight | Records Management | Research Genealogy | Perform Biometric Services |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| I-539 Application to Extend/Change Nonimmigrant Status | $335 | $14 | $0 | $39 | $29 | $19 | $0 | $100 | $100 | $34 | $0 | $0 |
| I-589 Application for Asylum and for Withholding of Removal | $1,758 | $186 | $1 | $96 | $79 | $75 | $0 | $423 | $572 | $178 | $0 | $101 |
| I-600/600A/800/800A Adoption Petitions and Applications | $1,423 | $39 | $82 | $74 | $46 | $27 | $0 | $726 | $227 | $128 | $0 | $73 |
| I-600A/I-600 Supplement 3 Request for Action on Approved Form I-600A/I-600 | $1,214 | $44 | $0 | $79 | $48 | $9 | $0 | $652 | $239 | $143 | $0 | $0 |
| I-601 Application for Waiver of Ground of Excludability | $828 | $10 | $0 | $39 | $52 | $15 | $0 | $574 | $109 | $28 | $0 | $0 |
| I-601A Provisional Unlawful Presence Waiver | $807 | $23 | $0 | $40 | $24 | $15 | $0 | $454 | $121 | $73 | $0 | $56 |
| I-612 Application for Waiver of the Foreign Residence Requirement (Under Section 212(e) of the INA, as Amended) | $443 | $20 | $0 | $50 | $37 | $12 | $0 | $155 | $127 | $42 | $0 | $0 |
| I-690 Application for Waiver of Grounds of Inadmissibility | $649 | $23 | $0 | $48 | $48 | $18 | $0 | $283 | $147 | $79 | $0 | $2 |
| I-687 Application for Status as a Temporary Resident | $609 | $5 | $0 | $40 | $81 | $15 | $0 | $314 | $118 | $36 | $0 | $0 |
| I-698 Application to Adjust Status from Temporary to Permanent Resident (Under Section 245A of the INA) | $1,359 | $13 | $4 | $40 | $75 | $15 | $14 | $946 | $123 | $50 | $0 | $56 |
| I-751 Petition to Remove Conditions on Residence | $639 | $12 | $4 | $40 | $40 | $10 | $15 | $318 | $104 | $38 | $0 | $57 |
| I-765 Application for Employment Authorization | $468 | $25 | $6 | $61 | $38 | $25 | $22 | $64 | $163 | $64 | $0 | $0 |
| I-800A Supplement 3 Request for Action on Approved Form I-800A | $1,221 | $44 | $0 | $79 | $47 | $30 | $0 | $640 | $237 | $143 | $0 | $0 |
| I-817 Application for Family Unity Benefits | $496 | $16 | $4 | $39 | $25 | $15 | $14 | $197 | $101 | $29 | $0 | $55 |
| I-821D Consideration of Deferred Action for Childhood Arrivals (Renewal) | $273 | $13 | $0 | $38 | $19 | $14 | $0 | $16 | $96 | $22 | $0 | $55 |
| I-824 Application for Action on an Approved Application or Petition | $421 | $17 | $0 | $40 | $31 | $17 | $0 | $153 | $111 | $52 | $0 | $0 |
| I-829 Petition by Entrepreneur to Remove Conditions | $3,278 | $1 | $122 | $246 | $16 | $11 | $14 | $2,373 | $413 | $40 | $0 | $42 |
| I-881 Application for Suspension of Deportation or Special Rule Cancellation of Removal | $1,515 | $186 | $0 | $96 | $79 | $75 | $0 | $206 | $572 | $178 | $0 | $97 |
| I-910 Application for Civil Surgeon Designation | $546 | $0 | $0 | $0 | $24 | $15 | $0 | $311 | $121 | $73 | $0 | $0 |
| I-924 Application For Regional Center Designation Under the Immigrant Investor Program | $11,020 | $1 | $118 | $246 | $16 | $11 | $0 | $10,175 | $413 | $40 | $0 | $0 |
| I-924A Annual Certification of Regional Center | $3,757 | $1 | $118 | $246 | $16 | $11 | $0 | $2,911 | $413 | $40 | $0 | $0 |
| I-929 Petition for Qualifying Family Member of a U-1 Nonimmigrant | $1,273 | $0 | $0 | $0 | $60 | $16 | $0 | $921 | $209 | $68 | $0 | $0 |
| N-300 Application to File Declaration of Intention | $1,111 | $6 | $3 | $41 | $132 | $11 | $0 | $672 | $127 | $36 | $0 | $83 |
| N-336 Request for Hearing on a Decision in Naturalization Proceedings | $1,474 | $7 | $4 | $49 | $157 | $14 | $0 | $1,040 | $154 | $45 | $0 | $4 |

26

| Immigration Benefit Request | Total Activity Cost | Conduct TECS Check | Direct Costs | Fraud Detection & Prevention | Inform the Public | Intake | Issue Document | Make Determination | Management & Oversight | Records Management | Research Genealogy | Perform Biometric Services |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N-400 Application for Naturalization | $985 | $6 | $12 | $46 | $144 | $13 | $0 | $497 | $143 | $41 | $0 | $61 |
| N-470 Application to Preserve Residence for Naturalization Purposes | $1,347 | $6 | $3 | $42 | $130 | $12 | $0 | $987 | $131 | $37 | $0 | $0 |
| N-565 Application for Replacement Naturalization/Citizenship Document | $458 | $17 | $4 | $45 | $50 | $17 | $0 | $184 | $114 | $26 | $0 | $0 |
| N-600 Application for Certificate of Citizenship | $853 | $8 | $4 | $53 | $166 | $15 | $0 | $393 | $165 | $48 | $0 | $0 |
| N-600K Application for Citizenship and Issuance of Certificate | $806 | $5 | $3 | $41 | $124 | $12 | $0 | $457 | $129 | $37 | $0 | $0 |
| I-602 Application By Refugee For Waiver of Grounds of Excludability | $169 | $0 | $4 | $0 | $24 | $4 | $15 | $0 | $99 | $23 | $0 | $0 |
| SAVE Initial Electronic Queries | $2 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

27

AR2022_300829

**Appendix Table 5: Activity Unit Costs by Immigration Benefit Request After Cost Reallocation**

| Immigration Benefit Request | Proposed Fee | Conduct TECS Check | Direct Costs | Fraud Detection & Prevention | Inform the Public | Intake | Issue Document | Make Determination | Management & Oversight | Records Management | Research Genealogy | Perform Biometric Services |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Biometric Services (Other Programs such as TPS and EOIR) | $30 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | $30 |
| G-1041 Genealogy Index Search Request | $240 | $0 | $1 | $0 | $0 | $11 | $0 | $0 | $0 | $0 | $228 | $0 |
| G-1041A Genealogy Records Request | $385 | $0 | $1 | $0 | $0 | $11 | $0 | $0 | $0 | $0 | $373 | $0 |
| I-90 Application to Replace Permanent Resident Card | $415 | $7 | $6 | $51 | $32 | $12 | $19 | $62 | $129 | $29 | $0 | $70 |
| I-102 Application for Replacement/Initial Nonimmigrant Arrival-Departure Document | $490 | $20 | $0 | $49 | $37 | $22 | $0 | $186 | $130 | $47 | $0 | $0 |
| I-129 Petition for a Nonimmigrant Worker | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| I-129CW, I-129E&TN, and I-129MISC | $705 | $15 | $28 | $45 | $36 | $11 | $0 | $411 | $114 | $43 | $0 | $0 |
| I-129H2A - Unnamed Beneficiaries | $425 | $12 | $0 | $45 | $40 | $13 | $0 | $152 | $115 | $47 | $0 | $0 |
| I-129H2B - Unnamed Beneficiaries | $395 | $16 | $0 | $45 | $35 | $10 | $0 | $134 | $114 | $40 | $0 | $0 |
| I-129H1B | $560 | $15 | $10 | $45 | $41 | $9 | $0 | $250 | $141 | $48 | $0 | $0 |
| I-129H2A - Named Beneficiaries | $860 | $12 | $0 | $46 | $40 | $13 | $0 | $586 | $115 | $48 | $0 | $0 |
| I-129H2B - Named Beneficiaries | $725 | $17 | $0 | $46 | $35 | $10 | $0 | $462 | $115 | $41 | $0 | $0 |
| I-129L - Named Beneficiaries | $815 | $16 | $19 | $45 | $36 | $11 | $0 | $534 | $114 | $41 | $0 | $0 |
| I-129O | $715 | $16 | $0 | $45 | $36 | $10 | $0 | $452 | $115 | $41 | $0 | $0 |
| I-129F Petition for Alien Fiancé(e) | $520 | $14 | $0 | $49 | $42 | $28 | $0 | $214 | $124 | $49 | $0 | $0 |
| I-130 Petition for Alien Relative | $555 | $12 | $3 | $47 | $58 | $19 | $0 | $251 | $127 | $37 | $0 | $0 |
| I-131 Application for Travel Document | $585 | $30 | $3 | $72 | $46 | $27 | $4 | $119 | $196 | $75 | $0 | $13 |
| I-131 Refugee Travel Document for a child under the age of 16 | $115 | $6 | $0 | $17 | $9 | $6 | $6 | $16 | $44 | $10 | $0 | $0 |
| I-131 Refugee Travel Document for an individual age 16 or older | $145 | $6 | $0 | $17 | $9 | $6 | $6 | $23 | $44 | $10 | $0 | $23 |
| I-131A Application for Travel Document (Carrier Documentation) | $1,010 | $0 | $379 | $41 | $46 | $0 | $0 | $365 | $169 | $10 | $0 | $0 |
| I-140 Immigrant Petition for Alien Worker | $545 | $17 | $0 | $45 | $26 | $17 | $0 | $301 | $114 | $26 | $0 | $0 |
| I-191 Application for Relief Under Former Section 212(c) of the Immigration and Nationality Act (INA) | $800 | $0 | $0 | $0 | $43 | $4 | $0 | $497 | $143 | $78 | $0 | $35 |
| I-192 Application for Advance Permission to Enter as Nonimmigrant | $1,415 | $51 | $112 | $125 | $90 | $23 | $0 | $499 | $316 | $102 | $0 | $97 |
| I-193 Application for Waiver of Passport and/or Visa | $2,790 | $0 | $2,785 | $0 | $1 | $0 | $0 | $1 | $2 | $1 | $0 | $0 |
| I-290B Notice of Appeal or Motion | $705 | $11 | $0 | $37 | $15 | $8 | $0 | $394 | $225 | $16 | $0 | $0 |
| I-212 Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | $1,040 | $10 | $0 | $45 | $83 | $16 | $0 | $718 | $131 | $36 | $0 | $1 |
| I-360 Petition for Amerasian, Widow(er) or Special Immigrant | $455 | $15 | $4 | $33 | $22 | $13 | $0 | $236 | $91 | $42 | $0 | $0 |
| I-485 Application to Register Permanent Residence or Adjust Status | $1,120 | $13 | $6 | $58 | $112 | $19 | $21 | $564 | $170 | $47 | $0 | $110 |
| I-526 Immigrant Petition by Alien Entrepreneur | $4,015 | $1 | $140 | $293 | $19 | $26 | $0 | $2,996 | $492 | $47 | $0 | $0 |
| I-539 Application to Extend/Change Nonimmigrant Status | $400 | $16 | $0 | $47 | $35 | $23 | $0 | $119 | $119 | $41 | $0 | $0 |
| I-589 Application for Asylum and for Withholding of Removal | $50 | $5 | $0 | $3 | $2 | $2 | $0 | $12 | $16 | $5 | $0 | $4 |

AR2022_300830

| Immigration Benefit Request | Proposed Fee | Conduct TECS Check | Direct Costs | Fraud Detection & Prevention | Inform the Public | Intake | Issue Document | Make Determination | Management & Oversight | Records Management | Research Genealogy | Perform Biometric Services |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| I-600/600A/800/800A Adoption Petitions and Applications | $810 | $22 | $47 | $42 | $26 | $16 | $0 | $413 | $129 | $73 | $0 | $41 |
| I-600A/I-600 Supplement 3 Request for Action on Approved Form I-600A/I-600 | $405 | $15 | $0 | $26 | $16 | $3 | $0 | $217 | $80 | $48 | $0 | $0 |
| I-601 Application for Waiver of Ground of Excludability | $985 | $12 | $0 | $47 | $62 | $17 | $0 | $683 | $129 | $33 | $0 | $0 |
| I-601A Provisional Unlawful Presence Waiver | $960 | $27 | $0 | $48 | $29 | $18 | $0 | $540 | $144 | $87 | $0 | $66 |
| I-612 Application for Waiver of the Foreign Residence Requirement (Under Section 212(e) of the INA, as Amended) | $525 | $24 | $0 | $60 | $44 | $14 | $0 | $183 | $151 | $50 | $0 | $0 |
| I-690 Application for Waiver of Grounds of Inadmissibility | $770 | $28 | $0 | $57 | $57 | $22 | $0 | $336 | $174 | $94 | $0 | $3 |
| I-694 Notice of Appeal of Decision | $725 | $6 | $0 | $47 | $97 | $18 | $0 | $374 | $141 | $42 | $0 | $0 |
| I-698 Application to Adjust Status from Temporary to Permanent Resident (Under Section 245A of the INA) | $1,615 | $15 | $4 | $48 | $89 | $18 | $17 | $1,124 | $147 | $59 | $0 | $94 |
| I-751 Petition to Remove Conditions on Residence | $760 | $15 | $5 | $48 | $48 | $12 | $17 | $379 | $124 | $45 | $0 | $68 |
| I-765 Application for Employment Authorization | $490 | $27 | $6 | $64 | $40 | $26 | $23 | $67 | $171 | $67 | $0 | $0 |
| I-800A Supplement 3 Request for Action on Approved Form I-800A | $405 | $15 | $0 | $26 | $16 | $10 | $0 | $212 | $79 | $48 | $0 | $0 |
| I-817 Application for Family Unity Benefits | $590 | $19 | $4 | $47 | $30 | $18 | $17 | $235 | $121 | $34 | $0 | $65 |
| I-821D Consideration of Deferred Action for Childhood Arrivals (Renewal) | $275 | $13 | $0 | $38 | $20 | $14 | $0 | $16 | $96 | $22 | $0 | $55 |
| I-824 Application for Action on an Approved Application or Petition | $500 | $21 | $0 | $47 | $37 | $20 | $0 | $182 | $132 | $62 | $0 | $0 |
| I-829 Petition by Entrepreneur to Remove Conditions | $3,900 | $1 | $145 | $293 | $19 | $13 | $17 | $2,823 | $492 | $47 | $0 | $50 |
| I-881 Application for Suspension of Deportation or Special Rule Cancellation of Removal | $1,800 | $221 | $0 | $114 | $94 | $89 | $0 | $245 | $680 | $212 | $0 | $145 |
| I-910 Application for Civil Surgeon Designation | $650 | $0 | $0 | $0 | $29 | $18 | $0 | $371 | $144 | $87 | $0 | $0 |
| I-924 Application For Regional Center Designation Under the Immigrant Investor Program | $17,795 | $2 | $191 | $397 | $26 | $18 | $0 | $16,429 | $668 | $64 | $0 | $0 |
| I-924A Annual Certification of Regional Center | $4,470 | $1 | $140 | $293 | $19 | $13 | $0 | $3,464 | $492 | $47 | $0 | $0 |
| I-929 Petition for Qualifying Family Member of a U-1 Nonimmigrant | $1,515 | $0 | $0 | $0 | $71 | $19 | $0 | $1,096 | $249 | $81 | $0 | $0 |
| N-300 Application to File Declaration of Intention | $1,320 | $7 | $4 | $48 | $157 | $13 | $0 | $798 | $151 | $43 | $0 | $99 |
| N-336 Request for Hearing on a Decision in Naturalization Proceedings | $1,755 | $9 | $5 | $58 | $186 | $17 | $0 | $1,238 | $184 | $53 | $0 | $5 |
| N-400 Application for Naturalization | $1,170 | $8 | $14 | $54 | $171 | $15 | $0 | $590 | $170 | $49 | $0 | $98 |
| N-470 Application to Preserve Residence for Naturalization Purposes | $1,600 | $7 | $4 | $49 | $155 | $14 | $0 | $1,172 | $155 | $44 | $0 | $0 |
| N-565 Application for Replacement Naturalization/Citizenship Document | $545 | $20 | $5 | $54 | $60 | $20 | $0 | $219 | $136 | $31 | $0 | $0 |
| N-600 Application for Certificate of Citizenship | $1,015 | $10 | $5 | $63 | $198 | $18 | $0 | $468 | $197 | $57 | $0 | $0 |
| N-600K Application for Citizenship and Issuance of Certificate | $960 | $5 | $4 | $49 | $147 | $14 | $0 | $544 | $153 | $44 | $0 | $0 |
| USCIS Immigrant Fee | $200 | $0 | $5 | $0 | $29 | $4 | $17 | $0 | $118 | $27 | $0 | $0 |
| SAVE Initial Electronic Queries | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | $0 |

29

30

AR2022_300832

# APPENDIX VII – AUTHORIZED IEFA POSITIONS BY USCIS OFFICE

USCIS forecasts staffing and costs based on projected workload and the existing cost baseline. The table below compared FY 2016/2017 fee rule staffing to the staffing levels in the FY 2019/2020 fee review.

**Appendix Table 6: IEFA Positions by Office**

| Directorate | FY 2016/2017 Positions | FY 2019/2020 Positions | Difference | % Difference |
|---|---|---|---|---|
| Field Operations Directorate | 5,946 | 7,305 | 1,359 | 23% |
| Fraud Detection and National Security Directorate | 920 | 1,918 | 998 | 108% |
| Refugee Asylum and International Operations Directorate | 1,648 | 2,147 | 499 | 30% |
| Service Center Operations Directorate | 2,866 | 5,579 | 2,713 | 95% |
| Other Offices (External Affairs, Immigration Records and Identity Services, Management, etc.) | 3,163 | 4,009 | 846 | 27% |
| **USCIS Total** | **14,543** | **20,958** | **6,415** | **44%** |

31

AR2022_300833

## APPENDIX VIII – IEFA HISTORY

USCIS, a component of DHS, is the Federal entity responsible for granting or denying immigration benefits to individuals seeking to reside in, work in, or become citizens of the U.S., as well as for U.S. citizens, permanent residents, and employers seeking to sponsor individuals for immigrant or nonimmigrant benefits. As of March 2019, there were approximately 17,053 USCIS Federal employees onboard. As one of the largest fee-funded agencies in the Federal Government, USCIS processes a multitude of immigrant and nonimmigrant benefit requests, including:

- **Family-based requests** - facilitating the process for close relatives to immigrate, gain permanent residency, travel, and work;
- **Employment-based requests** - facilitating the process for current and prospective employees to immigrate or work in the U.S. temporarily;
- **Asylum and refugee processing** - adjudicating requests for asylum and refugee status;
- **Naturalization** - approving naturalization of eligible persons who wish to become U.S. citizens;
- **Special status programs** - adjudicating eligibility for U.S. immigration status as a form of humanitarian aid to foreign nationals; and
- **Document issuance and renewal** - verifying eligibility and producing and issuing immigration documents.

Prior to the creation of the DHS on March 1, 2003, the Immigration and Naturalization Service (INS) performed the duties of USCIS. The sections below will refer to USCIS even when it was INS at the time.

Prior to the establishment of the IEFA, immigration application and petition fees were deposited into the General Fund of the Treasury and were available to fund general government expenditures made in consequence of appropriations made by Congress; they were not available exclusively to USCIS. In 1988, Congress established the IEFA. Fees collected from persons filing immigration benefit requests are deposited into the IEFA and are used to 1) fund the full cost of processing immigration and naturalization applications and petitions, 2) fund the cost of providing similar benefits to asylum and refugee applicants for which a fee is not charged, and 3) fund the cost of providing similar benefits to others at no charge (i.e. waivers and exemptions).

On April 4, 1989, USCIS published a final rule in the Federal Register establishing the IEFA fee schedule for the first time since enactment of legislation authorizing use of fee revenues to fund immigration benefit processing activities. The rule instituted fees that "more nearly reflect the current cost of providing the benefits and services…" The changes were "necessary to place the financial burden of providing special services and benefits, which do not accrue to the public at large, on the recipients." Since 1989, fees deposited into the IEFA have been the primary source of funding for the processing of immigration and naturalization benefits.

On March 27, 1991, USCIS revised the IEFA fee schedule. Fees were increased by as much as 100 percent for several immigration benefits. USCIS stated several reasons for this increase:

- Increased workloads, data and communications costs, and computer hardware costs;
- Absorption of asylum and refugee processing costs, previously funded with discretionary appropriations, into the IEFA;
- Costs of an enhanced asylum review process;
- Costs of fingerprint and name checks which the Federal Bureau of Investigation (FBI) began billing USCIS; and
- Costs of acquiring larger facilities and increased staffing for increased benefit requests.

AR2022_300834

In 1994, USCIS revised the fee schedule again. USCIS explained that these increases were necessary to reflect "inflation since the last general fee increase in April 1991, the assignment of certain additional costs to the IEFA for services that support adjudications and naturalization functions, and the costs of investments to improve services to users." While preparing the proposed rule which revised fees in 1994, USCIS recognized the need for improving its "management of the finances of the fee accounts and the development of fee schedules."

USCIS adjusted the fee schedule again on October 13, 1998. This was the result of a comprehensive cost study conducted in FY 1997 based on FY 1996 processes and the FY 1998 budget. USCIS conducted a thorough review of the resources, activities, and costs of processing immigration benefits and biometric services funded through the IEFA. This review introduced ABC as the methodology for determining costs associated with services for which fees are charged.

The FY 2008/2009 review followed nearly a decade without a comprehensive review of IEFA fees. On July 30, 2007, fees increased by a weighted average of 86% to recover base costs and additional costs for improving operations and service-wide performance needs. Following the FY 2008/2009 fee review, USCIS committed to reviewing the IEFA every 2 years consistent with the biennial review standard of the CFO Act of 1990 and OMB Circular A-25.

In November 2010, USCIS adjusted the fee schedule based on its comprehensive fee review for the FY 2010/2011 biennial period. Overall, USCIS kept base costs steady and adjusted for inflation, thereby minimizing program changes that would increase costs. Fees increased by a weighted average of 10 percent. However, the fees did not recover the full cost of RAIO, SAVE, and the Office of Citizenship in anticipation of congressional appropriations to fund these programs. USCIS did not receive the appropriations that they anticipated when DHS set the fees.  USCIS has not received any substantial appropriations for these programs since FY 2011.

USCIS subsequently completed two fee reviews without pursuing notice and comment rulemaking to revise the fee schedule. These were the FY 2012/2013 and FY 2014/2015 fee reviews. Both fee reviews indicated that fee levels were not sufficient to recover the full cost of activities funded by the IEFA; however, USCIS was able to mitigate the projected shortfall by moving funds within its budget and postponing planned improvements.

DHS published a proposed rule for the FY 2016/2017 fee review in May 2016. DHS published a final rule in October 2016. The new fees became effective in December 2016. The weighted average fee increase was 21%. The fees recover the full cost of RAIO, SAVE, and the Office of Citizenship. The FY 2016/2017 fee rule established a new $3,035 fee for Form I-924A, Annual Certification of Regional Center. It established a $320 fee for some applicants filing Form N-400, Application for Naturalization. The reduced N-400 fee is for naturalization applicants with family income greater than 150 percent and not more than 200 percent of the Federal Poverty Guidelines. The final rule also removed regulatory provisions that prevented USCIS from rejecting an immigration or naturalization benefit request paid with a dishonored check or lacking the required biometric services fee.

To review historical fees, see Appendix Table 7.

AR2022_300835

**Appendix Table 7: USCIS IEFA Fee History**

| Form | Title or Description | Oct. 2005 | July 2007 | Nov. 2010[15] | Dec. 2016 | Other Recent Changes |
|------|---------------------|-----------|-----------|----------------|-----------|----------------------|
| G-1041 | Genealogy Index Search Request | | | $20 | $65 | |
| G-1041A | Genealogy Records Request (Microfilm Copy) | | | $20 | $65 | |
| G-1041A | Genealogy Records Request (Textual Record Copy) | | | $35 | $65 | |
| I-90 | Application to Replace Permanent Resident Card | $190 | $290 | $365 | $455 | |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival-Departure Document | $160 | $320 | $330 | $445 | |
| I-129/ I-129CW | Petition for a Nonimmigrant Worker | $190 | $320 | $325 | $460 | |
| I-129F | Petition for Alien Fiancé(e) | $170 | $455 | $340 | $535 | |
| I-130 | Petition for Alien Relative | $190 | $355 | $420 | $535 | |
| I-131 | Application for Travel Document | $170 | $305 | $360 | $575 | |
| I-131 | Application for Refugee Travel Document (16 or older) | | | $135 | $135 | |
| I-131 | Application for Refugee Travel Document (under 16) | | | $105 | $105 | |
| I-131A | Application for Travel Document (Carrier Documentation) | | | | $575 | |
| I-140 | Immigrant Petition for Alien Worker | $195 | $475 | $580 | $700 | |
| I-191 | Application for Relief Under Former Section 212(c) of the Immigration and Nationality Act (INA) | $265 | $545 | $585 | $930 | |
| I-192 | Application for Advance Permission to Enter as a Nonimmigrant | $265 | $545 | $585 | $930 | |
| I-193 | Application for Waiver of Passport and/or Visa | $265 | $545 | $585 | $585 | |
| I-212 | Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | $265 | $545 | $585 | $930 | |
| I-290B | Notice of Appeal or Motion | $385 | $585 | $630 | $675 | |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | $190 | $375 | $405 | $435 | |
| I-485 | Application to Register Permanent Residence or Adjust Status | $325 | $930 | $985 | $1,140 | |
| I-485 (Child) | Application to Register Permanent Residence or Adjust Status (under the age of 14 years) | $225 | $600 | $635 | $750 | |
| I-526 | Immigrant Petition by Alien Entrepreneur | $480 | $1,435 | $1,500 | $3,675 | |
| I-539 | Application to Extend/Change Nonimmigrant Status | $200 | $300 | $290 | $370 | |
| I-600/ I-800 | Petition to Classify Orphan as an Immediate Relative | $545 | $670 | $720 | $775 | |
| I-600A/ I-800A | Application for Advance Processing of an Orphan Petition | $545 | $670 | $720 | $775 | |

[15] Genealogy fees (Forms G-1041 and G-1041A) became effective in Aug. 2008 without changing any other IEFA fees. See 73 FR 28026. These fees did not change until the FY 2016/2017 fee rule.

AR2022_300836

| Form | Title or Description | Oct. 2005 | July 2007 | Nov. 2010[15] | Dec. 2016 | Other Recent Changes |
|------|----------------------|-----------|-----------|---------------|-----------|----------------------|
| I-601 | Application for Waiver of Grounds of Inadmissibility | $265 | $545 | $585 | $930 | |
| I-601A | Application for Provisional Unlawful Presence Waiver | | | $585 | $630 | |
| I-612 | Application for Waiver of the Foreign Residence Requirement | $265 | $545 | $585 | $930 | |
| I-687 | Application for Status as a Temporary Resident under Section 245A of the INA | $255 | $710 | $1,130 | $1,130 | |
| I-690 | Application for Waiver of Grounds of Inadmissibility | $95 | $185 | $200 | $715 | |
| I-694 | Notice of Appeal of Decision under Section 210 or 245A of the Immigration and Nationality Act | $110 | $545 | $755 | $890 | |
| I-695 | Application for Replacement Employment Authorization or Temporary Residence Card | $65 | $130 | N/A | N/A | |
| I-698 | Application to Adjust Status From Temporary to Permanent Resident (Under Section 245A of the INA) | $180 | $1,370 | $1,020 | $1,670 | |
| I-751 | Petition to Remove the Conditions on Residence | $205 | $465 | $505 | $595 | |
| I-765 | Application for Employment Authorization | $180 | $340 | $380 | $410 | |
| I-800A | Supplement 3, Request for Action on Approved Form I-800A | | | $360 | $385 | |
| I-817 | Application for Family Unity Benefits | $200 | $440 | $435 | $600 | |
| I-821 | Application for Temporary Protected Status | $50 | $50 | $50 | $50 | |
| I-824 | Application for Action on an Approved Application or Petition | $200 | $340 | $405 | $465 | |
| I-829 | Petition by Entrepreneur to Remove Conditions on Permanent Resident Status | $475 | $2,850 | $3,750 | $3,750 | |
| I-881 | Application for Suspension of Deportation or Special Rule Cancellation of Removal (Pursuant to Section 203 of Public Law 105-100 (NACARA)) | $285 | $285 | $285 | $285 | |
| I-905 | Application for Authorization to Issue Certification for Health Care Workers | $230 | $230 | $230 | $230 | |
| I-907 | Request for Premium Processing Service[16] | $1,000 | $1,000 | $1,225 | $1,225 | $1,410 |
| I-910 | Application for Civil Surgeon Designation | | | $615 | $785 | |
| I-924 | Application for Regional Designation Center Under the Immigrant Investor Program | | | $6,230 | $17,795 | |
| I-924A | Annual Certification of Regional Center | | | | $3,035 | |
| I-929 | Petition for Qualifying Family Member of a U-1 Nonimmigrant | | | $215 | $230 | |
| I-941 | Application for Entrepreneur Parole[17] | | | | | $1,200 |
| N-300 | Application to File Declaration of Intention | $120 | $235 | $250 | $270 | |
| N-336 | Request for Hearing on a Decision in Naturalization Proceedings Under Section 336 | $265 | $605 | $650 | $700 | |
| N-400 | Application for Naturalization | $330 | $595 | $595 | $640 | |
| N-400 | Application for Naturalization with Form I-942, Request for Reduced Fee | | | | $320 | |

[16] DHS increased Form I-907, Request for Premium Processing Service, by inflation effective Oct. 1, 2018. See 83 FR 44449.

[17] DHS published a final rule for establishing Form I-941, International Entrepreneur Parole Program, in January 2017. See 82 FR 5238. DHS proposed to terminate the program in May 2018. See 83 FR 24415. DHS does not propose a change to the fee in this proposed rule.

AR2022_300837

| Form | Title or Description | Oct. 2005 | July 2007 | Nov. 2010[15] | Dec. 2016 | Other Recent Changes |
|---|---|---|---|---|---|---|
| N-470 | Application to Preserve Residence for Naturalization Purposes | $155 | $305 | $330 | $355 | |
| N-565 | Application for Replacement Naturalization/Citizenship Document | $220 | $380 | $345 | $555 | |
| N-600 | Application for Certificate of Citizenship | $255 | $460 | $600 | $1,170 | |
| N-600K | Application for Citizenship and Issuance of Certificate Under Section 322 | $255 | $460 | $600 | $1,170 | |
| | Biometrics Fee | $70 | $80 | $85 | $85 | |
| | USCIS Immigrant Fee (Formerly Immigrant Visa) | | | $165 | $220 | |

36

AR2022_300838





U.S. Citizenship and
Immigration Services

AR2022_300839

USCIS Response to Coronavirus (COVID-19) (https://www.uscis.gov/about-us/uscis-response-to-covid-19)

Para tener acceso a este sitio en Español, presione aquí (./historic-pt-es)

# Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year

## Fiscal Year 2017 to 2022 (up to April 30, 2022)

Next Page (./historic-pt-2)

## Median Processing Times (in Months)

The number of months shown is the median. It represents the time it took to complete half of the cases in a given time period.

| Form | Form Description | Classification or Basis for Filing | FY 2017 | FY 2018 | FY 2019 | FY 2020 | FY 2021 | FY 2022[5] |
|------|------------------|-----------------------------------|---------|---------|---------|---------|---------|---------|
| I-90 | Application to Replace Permanent Resident Card | Initial issuance, replacement or renewal | 6.8 | 8.0 | 7.8 | 8.3 | 5.2 | 1.1 |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record | Initial issuance or replacement of a Form I-94 | 4.9 | 3.9 | 3.3 | 3.9 | 4.0 | 1.9 |
| I-129 | Petition for a Nonimmigrant Worker | Nonimmigrant Petition (Premium filed) | 0.4 | 0.4 | 0.4 | 0.4 | 0.3 | 0.3 |
| I-129 | Petition for a Nonimmigrant Worker | Nonimmigrant Petition (non Premium filed) | 3.4 | 3.8 | 4.7 | 2.3 | 1.8 | 3.0 |
| I-129F | Petition for Alien Fiancé(e) | All Classifications | 3.6 | 6.5 | 5.2 | 4.6 | 8.0 | 10.3 |
| I-130 | Petition for Alien Relative | Immediate Relative | 6.5 | 7.6 | 8.6 | 8.3 | 10.2 | 9.6 |
| I-131 | Application for Travel Document | Advance Parole Document | 3.0 | 3.6 | 4.5 | 4.6 | 7.7 | 7.2 |
| I-131 | Application for Travel Document | Parole in Place | 2.5 | 3.3 | 3.3 | 4.8 | 4.9 | 4.8 |

| Form | Form Description | Classification or Basis for Filing | FY 2017 | FY 2018 | FY 2019 | FY 2020 | FY 2021 | FY 2022[5] |
|------|------------------|-----------------------------------|---------|---------|---------|---------|---------|---------|
| I-131 | Application for Travel Document | Travel Document | 4.2 | 2.9 | 2.8 | 4.0 | 7.2 | 9.6 |
| I-140 | Immigrant Petition for Alien Workers | Immigrant Petition (Premium filed) | 0.4 | 0.3 | 0.3 | 0.3 | 0.4 | 0.4 |
| I-140 | Immigrant Petition for Alien Workers | Immigrant Petition (non Premium filed) | 7.3 | 8.9 | 5.8 | 4.9 | 8.2 | 10.9 |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | Immigrant Petition (All Classifications) | 6.3 | 13.3 | 16.8 | 11.4 | 5.5 | 8.7 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on grant of asylum more than 1 year ago | 5.5 | 6.2 | 6.7 | 6.9 | 12.9 | 22.9 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on refugee admission more than 1 year ago | 4.6 | 6.4 | 9.4 | 9.3 | 7.1 | 12.8 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Employment-based adjustment applications | 7.0 | 10.6 | 10.0 | 8.8 | 9.9 | 10.3 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Family-based adjustment applications | 7.9 | 10.2 | 10.9 | 9.3 | 12.9 | 10.3 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on Cuban Adjustment Act of 1966 (CAA) | 6.2 | 7.6 | 11.3 | 7.1 | 8.5 | 8.1 |
| I-485[1] | Application to Register Permanent Residence or to Adjust Status | All Other Adjustment of Status | 7.4 | 11.7 | 24.0 | 32.7 | 8.7 | 15.0 |
| I-526 | Immigrant Petition By Alien Entrepreneur | For use by an investor who wishes to immigrate to the United States | 16.6 | 17.9 | 19.0 | 31.1 | 32.5 | 37.7 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All Extend/Change Applications | 2.8 | 3.4 | 4.4 | 4.8 | 9.6 | 7.3 |
| I-600 | Petition to Classify Orphan as an Immediate Relative | U.S. citizen filing to adopt an orphan | N/A | N/A | N/A | N/A | N/A | N/A |

| Form | Form Description | Classification or Basis for Filing | FY 2017 | FY 2018 | FY 2019 | FY 2020 | FY 2021 | FY 2022[5] |
|------|------------------|-----------------------------------|---------|---------|---------|---------|---------|---------|
| I-600A | Application for Advance Processing of Orphan Petition | U.S. citizen who plans to adopt a foreign-born child | N/A | N/A | N/A | N/A | N/A | N/A |
| I-601A | Application for Provisional Unlawful Presence Waiver | Provisional Waiver of INA 212(a)(9)(B) | 4.6 | 4.5 | 8.7 | 11.2 | 17.1 | 28.1 |
| I-730 | Refugee/Asylee Relative Petition | Petition for accompanying family members of a refugee or an asylee | 7.9 | 10.1 | 12.4 | 15.2 | 20.1 | 25.2 |
| I-751 | Petition to Remove the Conditions on Residence | Removal of conditions on lawful permanent resident status (spouses and children of U.S. citizens and lawful permanent residents) | 11.8 | 15.9 | 14.9 | 13.8 | 13.6 | 17.4 |
| I-765 | Application for Employment Authorization | All other applications for employment authorization | 2.6 | 3.0 | 3.4 | 3.2 | 3.9 | 4.2 |
| I-765 | Application for Employment Authorization | Based on an approved, concurrently filed, I-821D, Consideration of Deferred Action for Childhood Arrivals (c)(33). | 1.8 | 1.2 | 1.1 | 1.1 | 1.9 | 0.5 |
| I-765 | Application for Employment Authorization | Based on a pending asylum application | 1.7 | 0.9 | 2.0 | 2.5 | 3.2 | 8.3 |
| I-765 | Application for Employment Authorization | Based on a pending I-485 adjustment application | 3.0 | 4.1 | 5.1 | 4.8 | 7.1 | 7.0 |
| I-817 | Application for Family Unity Benefits | Voluntary departure under the family unity program and LIFE Act family unity | 8.1 | 12.0 | 9.5 | 5.3 | 5.9 | 5.7 |
| I-821 | Application for Temporary Protected Status | To request or reregister for TPS | 3.4 | 2.9 | 6.4 | 2.2 | 4.1 | 8.9 |

| Form | Form Description | Classification or Basis for Filing | FY 2017 | FY 2018 | FY 2019 | FY 2020 | FY 2021 | FY 2022[5] |
|------|------------------|-----------------------------------|---------|---------|---------|---------|---------|---------|
| I-821D | Consideration of Deferred Action for Childhood Arrivals | Request for Initial Deferred Action | 6.7 | 10.4 | 8.9 | 5.5 | 5.9 | N/A |
| I-821D | Consideration of Deferred Action for Childhood Arrivals | Request for Renewal of Deferred Action | 1.6 | 1.2 | 1.1 | 1.1 | 1.8 | 0.5 |
| I-824 | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | 3.3 | 5.9 | 7.1 | 6.0 | 4.4 | 8.4 |
| I-829 | Petition by Investor to Remove Conditions on Permanent Resident Status | Removal of conditions on lawful permanent resident status (immigrant investors) | 18.2 | 21.8 | 25.9 | 24.8 | 34.5 | 41.9 |
| I-914[2] | Application for T Non-immigrant Status | Provide temporary immigration benefits to an alien who is a victim of trafficking in persons, and immediate family | 9.6 | 12.1 | 16.2 | 18.6 | 18.0 | 13.9 |
| I-918[3] | Petition for U Non-immigrant Status | Provide temporary immigration benefits to an alien who is a victim of qualifying criminal activity, and their qualifying family | 31.5 | 41.8 | 48.7 | 54.3 | 53.6 | 59.8 |
| I-924 | Application For Regional Center Designation Under the Immigrant Investor Program | I-924 - Application For Regional Center Designation Under the Immigrant Investor Program | 19.5 | 19.0 | 18.8 | 19.1 | 22.1 | N/A |
| N-400 | Application for Naturalization | Application for Naturalization | 7.9 | 9.7 | 10.0 | 9.1 | 11.5 | 11.0 |
| N-565 | Application for Replacement Naturalization/Citizenship Document | U.S. citizen applying for a replacement of naturalization or citizenship certificate | 5.1 | 3.9 | 2.4 | 3.6 | 6.7 | 10.4 |

AR2022_300843

| Form | Form Description | Classification or Basis for Filing | FY 2017 | FY 2018 | FY 2019 | FY 2020 | FY 2021 | FY 2022[5] |
|---|---|---|---|---|---|---|---|---|
| N-600 | Application for Certificate of Citizenship | Application for recognition of U.S. citizenship | 7.8 | 9.2 | 7.1 | 5.1 | 5.8 | 6.4 |
| N-600K | Application for Certificate of Citizenship and Issuance of Certificate Under Section 322 | Application for Citizenship and Issuance of Certificate | 5.9 | 7.6 | 6.4 | 5.7 | 9.6 | 5.5 |
| Waivers[4] | Waivers | Excluding I-601A | 9.4 | 12.8 | 10.3 | 7.3 | 7.6 | 8.9 |

Next Page (./historic-pt-2)

Table Key:

N/A Not available.

References:

[1] Excludes EOIR Adjustment applications.

[2] Includes I-914A, Application for Family Member of T-1 Recipient.

[3] Includes I-918A, Petition for Qualifying Family Member of U-1 Recipient.

[4] Includes the following applications filed to waive exclusionary grounds: Forms I-191, I-192, I-212, I-601, I-602, and I-612.

[5] FY2022 uses data from October 1, 2021 to April 30, 2022.

Note(s):

1) The report reflects the most up-to-date estimate available at the time the database is queried.

2) Processing times may differ from previously published reports due to system updates and post-adjudicative outcomes.

3) Discrepancies from past historical processing time reports may exist due to differences in reporting procedures.

4) Some of the forms have been aggregated.

5) Processing times are defined as the number of months it took for an application, petition, or request to be processed from receipt to completion in a given time period. Visa regressed I-485s and revoked petitions or applications are excluded. Additional information on visa retrogression can be found on our website (https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression) (https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression).

6) Historical processing times are not comparable to the processing times posted on the USCIS processing times webpage (https://egov.uscis.gov/processing-times/) for certain form types due to different methodologies (for example, cycle time methodology versus processing time methodology).

For more information, visit the Case Processing Times webpage (https://egov.uscis.gov/processing-times/more-info).

7) From FY2017 through FY2021, the processing time for the I-918/I-918A is calculated using the receipt date to waitlist determination date. Beginning in FY 2022, the processing time is calculated using the receipt date to Bona Fide Determination (BFD) review.

8) Consistent with the July 16, 2021 order (https://www.uscis.gov/DACADecisionStateofTexas) from the Southern District of Texas that prohibits DHS from granting initial DACA requests, USCIS has suspended calculations of processing times for initial DACA requests. The 5.9 months historical processing time listed for initial DACA requests was current as of June 30, 2021.

9) Statutory authorization related to the EB-5 Immigrant Investor Regional Center Program expired at midnight on June 30, 2021. For information regarding Form I-526 petition processing, and the impact of the lapse in statutory authorization related to the EB-5 Immigrant Investor Regional Center Program, please see: https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program (https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program)

10) The federal fiscal year is from October 1st through September 30th.

**Source(s):**

1) Department of Homeland Security, U.S. Citizenship and Immigration Services, USCIS Electronic Immigration System (ELIS), C3 Consolidated, C4 Consolidated, INFACT, queried May 2022.


## Other case processing times resources

Reducing Processing Backlogs (./reducing-processing-backlogs)

Frequently Asked Questions About Processing Times (./processing-times-faqs)

When to expect to receive your Green Card (./expect-green-card)

Check current processing times (./home)

Processing information for the I-765 (./i765)

Affirmative Asylum Interview Scheduling (http://www.uscis.gov/humanitarian/refugees-asylum/asylum/affirmative-asylum-scheduling-bulletin)

Administrative Appeals Office (https://www.uscis.gov/about-us/directorates-and-program-offices/administrative-appeals-office-aao/aao-processing-times)

International Offices (./international-operations-office)

Parole Processing (https://www.uscis.gov/humanitarian/humanitarian-parole/parole-processing)

## Case management tools

Inquire about a case outside normal processing time (https://egov.uscis.gov/e-request/displayONPTForm.do?entryPoint=init&sroPageType=onpt)

Check your case status (https://egov.uscis.gov/casestatus/landing.do)

Update your mailing address (https://egov.uscis.gov/coa/)

Ask about missing mail (https://egov.uscis.gov/e-Request/Intro.do)

Correct a typographical error (https://egov.uscis.gov/e-request/displayTypoForm.do?entryPoint=init&sroPageType=typoError)

Request appointment accommodations (https://egov.uscis.gov/e-request/displayAccomForm.do?entryPoint=init&sroPageType=accommodations)

Return to top

**Topics (https://www.uscis.gov/topics)**

**Forms (https://www.uscis.gov/forms)**

**Newsroom (https://www.uscis.gov/newsro**

**Citizenship (https://www.uscis.gov/citizenship)**

**Green Card (https://www.uscis.gov/green-card)**

**Laws (https://www.uscis.gov/laws-and-policy)**

**Tools (https://www.uscis.gov/tools)**

(https://www.facebook.com/uscis) (https://twitter.com/uscis) (https://www.youtube.com/uscis) (https://www.instagram.com/uscis)

**Contact USCIS (https://www.uscis.gov/about-us/contact-us)**

(https://www.dhs.gov)

USCIS.gov

**An official website of the U.S. Department of Homeland Security (https://www.dhs.gov)**

About USCIS (https://www.uscis.gov/about-us)

Accessibility (https://www.uscis.gov/website-policies/accessibility)

**National Terrorism Advisory System**

AR2022_300846

Budget and Performance (https://www.uscis.gov/about-us/budget-planning-and-performance)

DHS Components (https://www.uscis.gov/website-policies/dhs-component-websites)

Freedom of Information Act (https://www.uscis.gov/records/request-records-through-the-freedom-of-information-act-or-privacy-act)

No FEAR Act Data (https://www.uscis.gov/about-us/equal-employment-opportunity/equal-employment-opportunity-data-posted-pursuant-to-the-no-fear-act)

Privacy and Legal Disclaimers (https://www.uscis.gov/website-policies/privacy-and-legal-disclaimers)

Site Map (https://www.uscis.gov/sitemap)

Office of the Inspector General (https://www.oig.dhs.gov/)

The White House (https://www.whitehouse.gov/)

USA.gov (https://www.usa.gov/)

OMB No. 1615-0040; Expires 04/30/2016

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Instructions for I-765, Application for Employment Authorization

## What Is the Purpose of This Form?

Certain aliens who are temporarily in the United States may file Form I-765, Application for Employment Authorization, to request an Employment Authorization Document (EAD). Other aliens who are authorized to work in the United States without restrictions must also use this form to apply to USCIS for a document that shows such authorization. Review **Eligibility Categories** to determine whether you should use this form.

If you are a lawful permanent resident, a conditional resident, or a nonimmigrant authorized to be employed with a specific employer under 8 CFR 274a.12(b), do **not** use this form.

### Definitions

**Employment Authorization Document (EAD):** Form I-688, Form I-688A, Form I-688B, Form I-766, or any successor document issued by USCIS as evidence that the holder is authorized to work in the United States.

**Renewal EAD:** An EAD issued to an eligible applicant upon the expiration of a previous EAD issued under the same category.

**Replacement EAD:** An EAD issued to an eligible applicant when the previously issued EAD has been lost, stolen, mutilated, or contains erroneous information, such as a misspelled name.

**Interim EAD:** An EAD issued to an eligible applicant when USCIS has failed to adjudicate an application within 90 days of a properly filed EAD application, or within 30 days of a properly filed initial EAD application based on an asylum application filed on or after January 4, 1995. The interim EAD will be granted for a period not to exceed 240 days and is subject to the conditions noted on the document. *The Interim EAD provisions apply to individuals filing Form I-765 based on Consideration of Deferred Action for Childhood Arrivals only after a determination on deferred action is reached.*

## Who May File Form I-765?

USCIS adjudicates a request for employment authorization by determining whether an applicant has submitted the required information and documentation, and whether the applicant is eligible. In order to determine your eligibility, you must identify the category in which you are eligible and fill in that category in **Question 16** on Form I-765. Enter only **one** of the following category numbers on the application form. For example, if you are a refugee applying for an EAD, write **"(a)(3)"** at **Question 16**.

For easier reference, the categories are subdivided as follows:

|  | Page |
|---|---|
| Asylee/Refugee and Their Spouses and Children | **1** |
| Nationality Categories | **2** |
| Foreign Students | **2** |
| Eligible Dependents of Employees of Diplomatic Missions, International Organization, or NATO | **3** |
| Employment-Based Nonimmigrants | **3** |
| Family-Based Nonimmigrants | **4** |
| Adjustment-of-Status Categories | **4** |
| Other Categories | **4** |

1. **Asylee/Refugee Categories (and their Spouse and Children**

   A. **Refugee--(a)(3).** File Form I-765 with either a copy of your Form I-590, Registration for Classification as Refugee, approval letter, or a copy of a Form I-730, Refugee/Asylee Relative Petition, approval notice.

   B. **Paroled as a Refugee--(a)(4).** File Form I-765 with a copy of your Form I-94, Arrival-Departure Record.

   C. **Asylee (Granted Asylum)--(a)(5).** File Form I-765 with a copy of the USCIS letter, or judge's decision, granting you asylum. It is not necessary to apply for an EAD as an asylee until 90 days before the expiration of your current EAD.

   D. **Asylum Applicant (With a Pending Asylum Application) Who Filed for Asylum on or After January 4, 1995--(c)(8).** For specific instructions for applicants with pending asylum claims, see section entitled "Special Filing Instructions for Those with Pending Asylum Applications ((c)(8))."

2. **Nationality Categories**

   A. **Citizen of Micronesia, the Marshall Islands, or Palau--(a)(8).** File Form I-765 if you were admitted to the United States as a citizen of the Federated States of Micronesia (CFA/FSM), the Marshall Islands (CFA/MIS), or Palau under agreements between the United States and the former trust territories.

   B. **Deferred Enforced Departure (DED) / Extended Voluntary Departure--(a)(11).** File Form I-765 with evidence of your identity and nationality.

AR2022-300848

**C. Temporary Protected Status (TPS)--(a)(12) and (c) (19).** A category (a)(12) EAD is issued to an individual granted TPS under 8 CFR 244.  A category (c)(19) EAD is a temporary treatment benefit under TPS pursuant to 8 CFR 244.5.

To request an EAD based on TPS, file Form I-765 with Form I-821, or with evidence that your initial Form I-821 was accepted or approved.  Include evidence of nationality and identity as required by the Form I-821 instructions.  If you are requesting extension of TPS status, also include a copy (front and back) of your last available TPS document: EAD, Form I-94, or approval notice.

To register for TPS, you must file a Form I-765 with From I-821, Application for Temporary Protected Status, for each applicant, regardless of age, even if you are not requesting employment authorization.  No fee is required for Form I-765 filed as part of TPS registration.  (Form I-821 has separate fee requirements.)

If you have been granted TPS by an immigration judge (IJ) or the Board of Immigration Appeals (BIA) and are requesting your first EAD, you must submit evidence of your IJ or BIA grant of TPS with your application for an EAD along with  a copy of your I-821 application that the IJ or BIA approved.  You must also follow the instructions for filing your application as described in the most recent TPS *Federal Register* notice regarding a TPS designation or extension for your country.  As further instructed in those notices, once you receive your I-797 application receipt notice, you must also send an e-mail to tpsijgrant.vsc@dhs.gov with the following information:  Your name; your A number; your date of birth; the receipt number for your application; and the date you were granted TPS.

**D. NACARA Section 203 Applicants Who Are Eligible to Apply for NACARA Relief With USCIS--(c)(10).** See the instructions to Form I-881, Application for Suspension of Deportation or Special Rule Cancellation of Removal, to determine if you are eligible to apply to USCIS for NACARA 203 relief.

If you are eligible, you may file a Form I-765 with the Form I-881.  See Instructions to Form I-881 for filing location.  If you file the Form I-765 separately from the Form I-881 see "Where to File?" instructions. Your response to Question 16 on the Form I-765 must be "(c)(10)."

**E. Dependent of TECRO E-1 Nonimmigrant--(c)(2).** File Form I-765 with the required certification from the American Institute in Taiwan if you are the spouse or unmarried dependent son or daughter of an E-1 employee of the Taipei Economic and Cultural Representative Office.

**3. Foreign Students**

**A. F-1 Student Seeking Optional Practical Training in an Occupation Directly Related to Studies: (c)(3)(A) - Pre-completion Optional Practical Training; (c)(3)(B) - Post-completion Optional Practical Training; (c)(3)(C) - 17-month extension for STEM Students (Students With a degree in Science, Technology, Engineering, or Mathematics).** File Form I-765 with a Certificate of Eligibility of Nonimmigrant (F-1) Student Status (Form I-20 A-B/ I-20 ID) endorsed by a Designated School Official within the past 30 days.  If you are a STEM student requesting a 17-month extension under the eligibility code (c)(3)(C), you must also submit a copy of your degree and the employer name as listed in E-Verify, along with the E-Verify Company Identification Number, or a valid E-Verify Client Company Identification Number for the employer with whom you are seeking the 17-month OPT extension. This information must be provided in question 17 of the form.

**B. F-1 Student Offered Off-Campus Employment Under the Sponsorship of a Qualifying  International Organization--(c)(3)(ii).**  File Form I-765 with the international organization's letter of certification that the proposed employment is within the scope of its sponsorship, and a Certificate of Eligibility of Nonimmigrant (F-1) Student Status -- For Academic and Language Students (Form I-20 A-B/ -20 ID) endorsed by the Designated School Official within the past 30 days.

**C. F-1 Student Seeking Off-Campus Employment Due to Severe Economic Hardship--(c)(3)(iii).**  File Form I-765 with Form I-20 A-B/I-20 ID, Certificate of Eligibility of Nonimmigrant (F-1) Student Status -- For Academic and Language Students, and any evidence you wish to submit, such as affidavits, that detail the unforeseen economic circumstances that cause your request, and evidence that you have tried to find off-campus employment with an employer who has filed a labor and wage attestation.

**D. J-2 Spouse or Minor Child of an Exchange Visitor-- (c)(5).** File Form I-765 with a copy of your J-1 (principal alien's) Certificate of Eligibility for Exchange Visitor (J-1) Status (Form IAP-66). You must submit a written statement with any supporting evidence showing that your employment is not necessary to support the J-1 but is for other purposes.

E. **M-1 Student Seeking Practical Training After Completing Studies--(c)(6).** File Form I-765 with a completed Form I-539, Application to Change/Extend Nonimmigrant Status, according to the filing instructions for Form I-539. You must also include Form I-20 M-N, Certificate of Eligibility for Nonimmigrant (M-1) Student Status -- For Vocational Students endorsed by the Designated School Official within the past 30 days, with your application.

4. **Eligible Dependents of Employees of Diplomatic Missions, International Organizations, or NATO**

A. **Dependent of A-1 or A-2 Foreign Government Officials--(c)(1).** Submit Form I-765 with Form I-566, Interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/Adjustment to/from A, G, or NATO Status, Dependent Employment Authorization, through your diplomatic mission to the Department of State (DOS).  The DOS will forward all favorably endorsed applications directly to the Nebraska Service Center for adjudication.

B. **Dependent of G-1, G-3 or G-4 Nonimmigrant--(c)(4).** Submit Form I-765 with Form I-566, Interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/Adjustment to/from A, G, or NATO Status, Dependent Employment Authorization, through your international organization to the Department of State (DOS). (In New York City, the United Nations (UN) and UN missions should submit such applications to the United States Mission to the UN (USUN).)  The DOS or USUN will forward all favorably endorsed applications directly to the Nebraska Service Center for adjudication.

C. **Dependent of NATO-1 Through NATO-6--(c)(7).** Submit Form I-765 with Form I-566, Interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/Adjustment to/from A, G, or NATO Status, Dependent Employment Authorization, to NATO  SACLANT, 7857 Blandy Road, C-027, Suite 100, Norfolk, VA 23551-2490. NATO/SACLANT will forward all favorably endorsed applications directly to the Nebraska Service Center for adjudication.

5. **Employment-Based Nonimmigrant Categories**

A. **B-1 Nonimmigrant Who Is the Personal or Domestic Servant of a Nonimmigrant Employer--(c)(17)(i).** File Form I-765 with:

1. Evidence from your employer that he or she is a B, E, F, H, I, J, L, M, O, P, R, or TN nonimmigrant and you were employed for at least 1 year by the employer before the employer entered the United States, or your employer regularly employs personal and domestic servants and has done so for a period of years before coming to the United States; and

2. Evidence that you have either worked for this employer as a personal or domestic servant for at least 1 year, or evidence that you have at least 1 year's experience as a personal or domestic servant; and

3. Evidence establishing that you have a residence abroad that you have no intention of abandoning.

B. **B-1 Nonimmigrant Domestic Servant of a U.S. Citizen--(c)(17)(ii).**  File Form I-765 with:

1. Evidence from your employer that he or she is a U.S. citizen; and

2. Evidence that your employer has a permanent home abroad or is stationed outside the United States and is temporarily visiting the United States or the citizen's current assignment in the United States  will not be longer than 4 years; and

3. Evidence that he or she has employed you as a domestic servant abroad for at least 6 months  prior to your admission to the United States.

C. **B-1 Nonimmigrant Employed by a Foreign Airline--(c)(17)(iii).** File Form I-765 with a letter from the airline fully describing your duties and stating that your position would entitle you to E nonimmigrant status except for the fact that you are not a national of the same country as the airline or because there is no treaty of commerce and navigation in effect between the United States and that country.

D. **Spouse of an E-1/E-2 Treaty Trader or Investor--(a)(17) or Spouse of an E-3 Certain Specialty of Occupation Professional from Australia.**  File Form I-765 with evidence of your lawful status and evidence you are a **spouse** of a principal E-1/E-2, such as your Form I-94, and a copy of the principal's visa, and your marriage certificate. (Other relatives or dependents of E-1/E-2 aliens who are in E status are not eligible for employment authorization and may not file under this category.)

E. **Spouse of an L-1 Intracompany Transferee--(a)(18).** File Form I-765 with evidence of your lawful status and evidence you are a **spouse** of a principal L-1, such as your Form I-94, and a copy of the principal's visa and your marriage certificate.  (Other relatives or dependents of L-1 aliens who are in L status are not eligible for employment authorization and may not file under this category.)

**F. Spouse of an E-2 CNMI Investor--(c)(12).** File Form I-765 with evidence of your lawful status and evidence you are a **spouse** of a principal E-2 CNMI Investor, and a copy of the principal E-2 CNMI Investors long-term business certificate or Foreign Investment Certificate. (Please note that spouse of a principal E-2 CNMI Investor who obtained status on the basis of a Foreign Retiree Investment Certification is not eligible for employment authorization and may not file under this category.)

**6. Family-Based Nonimmigrant Categories**

**A. K-1 Nonimmigrant Fiance(e) of U.S. Citizen or K-2 Dependent--(a)(6).** File Form I-765 if you are filing within 90 days from the date of entry. This EAD cannot be renewed. Any EAD application other than for a replacement must be based on your pending application for adjustment under (c)(9).

**B. K-3 Nonimmigrant Spouse of U.S. Citizen or K-4 Dependent--(a)(9).** File Form I-765 along with evidence of your admission such as copies of your Form I-94, passport, and K visa.

**C. Family Unity Program--(a)(13).** If you are filing for initial or extension of Family Unity benefits, complete and submit Form I-817, Application for Family Unity Benefits, according to the filing instructions on Form I-817. An EAD will be issued if your Form I-817 is approved; you do not need to submit Form I-765.

If your non-expired Family Unity EAD is lost or stolen, file Form I-765 with proper fee(s), along with a copy of your approval notice for Family Unity benefits, to request a replacement.

**D. LIFE Family Unity--(a)(14).** If you are applying for initial employment authorization under Family Unity provisions of section 1504 of the LIFE Act Amendments, or an extension of such authorization, you should not use this form. Obtain and complete Form I-817, Application for Family Unity Benefits. If you are applying for a replacement EAD that was issued under LIFE Act Amendments Family Unity provisions, file Form I-765 with the required evidence listed in the "Required Documentation" section of these instructions.

**E. V-1, V-2, or V-3 Nonimmigrant--(a)(15).** If you have been inspected and admitted to the United States with a valid V visa, file this application along with evidence of your admission, such as copies of your Form I-94, passport, and K visa. If you have been granted V status while in the United States, file this application along with evidence of your V status, such as an approval notice. If you are in the United States but you have not yet filed an application for V status, you may file this application at the same time as you file your application for V status. USCIS will adjudicate this application after adjudicating your application for V status.

**7. EAD Applicants Who Have Filed for Adjustment of Status**

**A. Adjustment Applicant--(c)(9).** File Form I-765 with a copy of the receipt notice or other evidence that your Form I-485, Application for Permanent Residence or Adjust Status, is pending. You may file Form I-765 together with your Form I-485.

**B. Adjustment Applicant Based on Continuous Residence Since January 1, 1972--(c)(16).** File Form I-765 with your Form I-485, Application to Register for Permanent Residence or Adjust Status; a copy of your receipt notice; or other evidence that the Form I-485 is pending.

**C. Renewal EAD for National Interest Waiver Physicians:** If you are filing for a renewal EAD based on your pending adjustment status and an approved National Interest Waiver Physician petition, you must also include evidence of your meaningful progress toward completing the national interest waiver obligation. Such evidence includes documentation of employment in any period during the previous 12 months (e.g., copies of W-2 forms). If you did not work as a national interest waiver physician during any period of the previous 12 months, you must explain and provide a statement of future intent to work in the national interest waiver employment program.

**8. Other Categories**

**A. N-8 or N-9 Nonimmigrant--(a)(7).** File Form I-765 with the required evidence listed in the "Required Documentation" section of these instructions.

**B. Granted Withholding of Deportation or Removal (a)(10).** File Form I-765 with a copy of the Immigration Judge's order. It is not necessary to apply for a new EAD until 90 days before the expiration of your current EAD.

**C. Applicant for Suspension of Deportation--(c)(10).** File Form I-765 with evidence that your Form I-881, Application for Suspension of Deportation or Special Rule Cancellation of Removal (Pursuant to Section 203 of Public Law 105-100 (NACARA)), or Form EOIR-40, is pending.

**D. Paroled in the Public Interest--(c)(11).** File Form I-765 if you were paroled into the United States for emergent reasons or reasons strictly in the public interest.

**E. Deferred Action--(c)(14).** File Form I-765 with a copy of the order, notice, or document reflecting the exercise of deferred action. To determine your eligibility for work authorization, you must establish economic necessity. USCIS will consider whether you have an economic need to work by reviewing your current annual income, your current annual expenses, and the total current value of your assets. Provide this financial information on Form I-765WS, Form I-765 Worksheet. If you would like to provide an explanation, complete **Part 3, Explanation**, of the worksheet. It is not necessary to submit supporting documentation, though it will be accepted and reviewed if you choose to submit it.

**F. Consideration of Deferred Action for Childhood Arrivals--(c)(33).**

1. You must file Form I-765 with Form I-821D if you meet the guidelines described in the Form I-821D Filing Instructions. Enter (c)(33) in **Question 16** as the letter and number of the category for which you are applying.

   a. To determine your eligibility for work authorization, you must establish economic necessity. USCIS will consider whether you have an economic need to work by reviewing your current annual income, your current annual expenses, and the total current value of your assets. Provide this financial information on Form I-765WS, Form I-765 Worksheet. If you would like to provide an explanation, complete **Part 3, Explanation**, of the worksheet. It is not necessary to submit supporting documentation, though it will be accepted and reviewed if you choose to submit it. You do not need to include other household member's financial information to establish your own economic necessity.

   b. The 90-day period for adjudicating Form I-765 filed together with Form I-821D does not begin until DHS has decided whether to defer action in your case.

   c. The fee for Form I-765 filed based on the Consideration of Deferred Action for Childhood Arrivals category cannot be waived. Biometric collection and the biometric services fee for Form I-765 based on the Consideration of Deferred Action for Childhood Arrivals category is also required and cannot be waived.

2. If U.S. Immigration and Customs Enforcement (ICE) deferred action on your case, file a stand-alone Form I-765 with a copy of the order, notice, or document reflecting the exercise of deferred action. To determine your eligibility for work authorization, you must establish economic necessity. USCIS will consider whether you have an economic need to work by reviewing your current annual income, your current annual expenses, and the total current value of your assets. Provide this financial information on Form I-765WS, Form I-765 Worksheet. If you would like to provide an explanation, complete **Part 3, Explanation**, of the worksheet. It is not necessary to submit supporting documentation, though it will be accepted and reviewed if you choose to submit it. You do not need to include other household member's financial information to establish your own economic necessity.

   When completing the Form I-765:

   a. Enter "Unlawful Status: Deferred Action for Childhood Arrivals by ICE" for **Question 15**.

   b. Enter (c)(33) in **Question 16** as the letter and number of the category for which you are applying.

**G. Final Order of Deportation--(c)(18).** File Form I-765 with a copy of the order of supervision and a request for employment authorization that may be based on but not limited to the following:

1. Existence of a dependent spouse and/or children in the United States who rely on you for support;

2. Existence of economic necessity to be employed; and

3. Anticipated length of time before you can be removed from the United States.

**H. LIFE Legalization Applicant--(c)(24).** We encourage you to File Form I-765 together with your Form I-485, Application to Register Permanent Residence or Adjust Status, to facilitate processing. However, you may file Form I-765 at a later date with evidence that you were a CSS, LULAC, or Zambrano class member applicant before October 1, 2000, and with a copy of the receipt notice or other evidence that your Form I-485 is pending.

**I. T-1 Nonimmigrant--(a)(16).** If you are applying for initial employment authorization as a T-1 nonimmigrant, file Form I-765 only if you did not request an employment authorization document when you applied for T nonimmigrant status. If you have been granted T nonimmigrant status and this is a request for a renewal or replacement of an employment authorization document, file Form I-765 along with evidence of your T nonimmigrant status, such as an approval notice.

**J.  T-2, T-3, or T-4 Nonimmigrant--(c)(25).** File Form I-765 with a copy of your T-1 (principal alien's) approval notice and proof of your relationship to the T-1 principal.

**K.  U-1 Nonimmigrant--(a)(19).** If you are applying for initial employment authorization as a U-1 nonimmigrant, file Form I-765 only if you did not request an employment authorization document when you applied for U nonimmigrant status. If you have been granted U nonimmigrant status and this is a request for a renewal or replacement of an employment authorization document, file Form I-765 along with evidence of your U nonimmigrant status, such as an approval notice.

**L.  U-2, U-3, U-4, or U-5--(a)(20).** If you obtained U nonimmigrant status while in the United States, you must submit a copy of the approval notice for your U nonimmigrant status. If you were admitted to the United States as a U nonimmigrant, you must submit a copy of your passport with your U nonimmigrant visa.

**M.  VAWA Self-Petitioners--(c)(31).** If you are the principal beneficiary or qualified child of an approved VAWA self-petition, you are eligible for work authorization. File Form I-765 with evidence of your status, such as a copy of Form I-360 approved notice. Additionally, you may file Form I-765 together with your initial VAWA self-petition.

## General Instructions

Each application must be properly signed and filed. A photocopy of a signed application or a typewritten name in place of a signature is not acceptable.

Each application must be accompanied by the appropriate filing fee.

If you are under 14 years of age, your parent or legal guardian may sign the application on your behalf.

**Evidence.** You must submit all required initial evidence along with all the supporting documentation with your application at the time of filing. If you are electronically filing this application, you must follow the instructions provided on the USCIS Web site, **www.uscis.gov**.

**Biometrics Services Appointment.** After receiving your application and ensuring completeness, USCIS will inform you in writing when to go to your local USCIS Application Support Center (ASC) for your biometrics services appointment. Failure to attend the biometrics services appointment may result in denial of your application.

**Copies.** Unless specifically required that an original document be filed with an application or petition, a legible photocopy may be submitted. Original documents submitted when not required may remain a part of the record and will not be automatically returned to you.

**Translations.** Any document containing foreign language submitted to USCIS must be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English.

**How To Fill Out Form I-765**

1. Type or print legibly in black ink.

2. If extra space is needed to complete any item, attach a continuation sheet, write your name and Alien Registration Number (A-Number) (if any), at the top of each sheet of paper, indicate the Part and item number to which your answer refers, and date and sign each sheet.

3. Answer all questions fully and accurately. State that an item is not applicable with "N/A." If the answer is none, write "None."

## Required Documentation

**All** applications must be filed with the documents required below in addition to the particular evidence required for the category listed in "Who May File Form I-765?" with fee, if required.

If you are required to show economic necessity for your category, submit a list of your assets, income, and expenses.

Assemble the documents in the following order:

1. Your application with the filing fee. See **"What Is the Filing Fee?"** for details.

2. If you are mailing your application to USCIS, you must also submit:

   **A.** A copy of Form I-94, Arrival-Departure Record (front and back), if available. If you are filing Form I-765 under the (c)(9) category, Form I-94 is not required.

   **B.** A copy of your last EAD (front and back). If no prior EAD has been issued, you must submit a copy of a government-issued identity document, such as a passport showing your picture, name, and date of birth; a birth certificate with photo ID; a visa issued by a foreign consulate; or a national ID document with photo and/or fingerprint. The identity document photocopy must clearly show the facial features of the applicant and the biographical information. If you are filing under the (c)(33) category, additional documentation beyond what you submit under "**3. What Documents Do You Need to Provide to Prove Identity?**" of the filing instructions for Form I-821D, Consideration of Deferred Action for Childhood Arrivals, is not required.

**C.** You **must** submit two identical color photographs of yourself taken within 30 days of filing your application. The photos must have a white to off-white background, be printed on thin paper with a glossy finish, and be unmounted and unretouched.

The passport-style photos must be 2" by 2". The photos must be in color with full face, frontal view on a white to off-white background. Head height should measure 1" to 1 3/8" from top to bottom of chin, and eye height is between 1 1/8" to 1 3/8" from bottom of photo. Your head must be bare unless you are wearing headwear as required by a religious order of which you are a member. Using pencil or felt pen, lightly print your name and Alien Receipt Number on the back of the photo.

## Special Filing Instructions for Those With Pending Asylum Applications ((c)(8))

**Asylum Applicant (with a pending asylum application) who filed for asylum on or after January 4, 1995.** You must wait at least 150 days following the filling of your asylum claim before you are eligible to apply for an EAD.

Any delay in processing the asylum application that is caused by you, including unexcused failure to appear for fingerprinting and other biometrics capture, will not be counted as part of that 150 days. If you fail to appear for your asylum interview or for a hearing before an immigration judge, you will be ineligible for an EAD. If you have received a recommended approval for a grant of asylum, you do not need to wait the 150 days and may apply for an EAD immediately upon receipt of your recommended approval. If you file Form I-765 early, it will be denied. File Form I-765 with:

1. A copy of the USCIS acknowledgement mailer which was mailed to you;

2. Other evidence that your Form I-589 was filed with USCIS;

3. Evidence that your Form I-589 was filed with an Immigration Judge at the Executive Office for Immigration Review (EOIR); or

4. Evidence that your asylum application remains under administrative or judicial review.

**Asylum applicant (with a pending asylum application) who filed for asylum and for withholding of deportation prior to January 4, 1995, and is *NOT* in exclusion or deportation proceedings.**

You may file Form I-765 at any time; however, it will only be granted if USCIS finds that your asylum application is not frivolous. File Form I-765 with:

1. A complete copy of your previously filed Form I-589;

2. A copy of your USCIS receipt notice;

3. A copy of the USCIS acknowledgement mailer;

4. Evidence that your Form I-589 was filed with EOIR;

5. Evidence that your asylum application remains under administrative or judicial review; or

6. A copy of the USCIS acknowledgement mailer.

**Asylum applicant (with a pending asylum application) who filed an initial request for asylum prior to January 4, 1995, and is IN exclusion or deportation proceedings.** If you filed your Request for Asylum and Withholding of Deportation (Form I-589) prior to January 4, 1995, and you are IN exclusion or deportation proceedings, file your EAD application with:

1. A date-stamped copy of your previously filed Form I-589;

2. A copy of Form I-221, Order to Show Cause and Notice of Hearing, or Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge;

3. A copy of EOIR-26, Notice of Appeal, date stamped by the Office of the Immigration Judge;

4. A date-stamped copy of a petition for judicial review or for *habeas corpus* issued to the asylum applicant; or

5. Other evidence that you filed an asylum application with EOIR.

**Asylum application under the ABC Settlement Agreement--(c)(8).** If you are a Salvadoran or Guatemalan national eligible for benefits under the ABC settlement agreement, American Baptist Churches v. Thornburgh **,** 760 F. Supp. 976 (N.D. Cal. 1991), follow the instructions contained in this section when filing your Form I-765.

You must have an asylum application (Form I-589) on file either with USCIS or with an Immigration Judge in order to receive work authorization. Therefore, submit evidence that you have previously filed an asylum application when you submit Form I-765. You are not required to submit this evidence when you apply, but it will help USCIS process your request efficiently.

If you are renewing or replacing your EAD, you must pay the filing fee.

Mark your application as follows:

1. Write "ABC" in the top right corner of your EAD application. You must identify yourself as an ABC class member if you are applying for an EAD under the ABC settlement agreement.

2. Write "(c)(8)" in **Question 16** of the application.

You are entitled to an EAD without regard to the merits of your asylum claim. Your application for an EAD will be decided within 60 days if: (1) you pay the filing fee, (2) you have a complete pending asylum application on file, and (3) you write "ABC" in the top right corner of your EAD application. If you do not pay the filing fee for an initial EAD request, your request may be denied if USCIS finds that your asylum application is frivolous. However, if you cannot pay the filing fee for an EAD, you may qualify for a fee waiver under 8 CFR 103.7(c).

**Special Filing Instructions for Spouses of E-2 CNMI Investors ((c)(12)).**

Spouses of certain principal E-2 CNMI Investors (E-2C) are eligible to seek employment in the CNMI. An EAD issued under this category is only valid for employment in the Commonwealth of Northern Mariana Islands (the CNMI).

To determine if you are eligible for an EAD under this section, you must determine what type of investor certificate was issued by the CNMI to your spouse, the principal E-2 CNMI Investor. If your spouse was issued a Long-Term Business Certificate or Foreign Investment Certificate, you may be eligible for an EAD under this category. If your spouse, the principal E-2 CNMI Investor, was issued a Foreign Retiree Investment Certification, you are not eligible to receive an EAD under this category.

File Form I-765 with:

1. Documentation, such as a marriage certificate establishing a legal marriage between you and the principal E-2C. Additionally, documentation such as divorce or death certificates establishing the termination of any prior marriages of you and your spouse.

2. Documentation establishing that you reside in the Commonwealth of the Northern Mariana Islands.

3. Documentation establishing that you have obtained E-2C status as a dependent.

4. Evidence that your spouse has obtained E-2C status.

5. A copy of your spouse's CNMI issued Long-Term Business Certificate or Foreign Investment Certificate.

| What Is the Filing Fee? |
| --- |

**The filing fee for Form I-765 is $380.**

**Exceptions:**

**Initial EAD:** If this is your initial application and you are applying under one of the following categories, a filing fee is **not** required:

1. (a)(3) Refugee;

2. (a)(4) Paroled as Refugee;

3. (a)(5) Asylee;

4. (a)(7) N-8 or N-9 nonimmigrant;

5. (a)(8) Citizen of Micronesia, Marshall Islands, or Palau;

6. (a)(10) Granted Withholding of Deportation;

7. (a)(16) Victim of Severe Form of Trafficking (T-1);

8. (a)(19) U-1 Nonimmigrant;

9. (c)(1), (c)(4), or (c)(7) Dependent of certain foreign government, international organization, or NATO personnel;

10. (c)(8) Applicant for asylum (an applicant filing under the special ABC procedures must pay the fee); or

11. (c)(31) VAWA Self-Petitioner.

**Special Instructions for Childhood Arrivals ((c)(33)).** All requestors under this category must submit biometrics. The biometrics services fee of $85 is required for all requestors. *The biometrics services fee and the filing fee for this form cannot be waived.*

**Renewal EAD:** If this is a renewal application and you are applying under one of the following categories, a filing fee is **not** required:

1. (a)(8) Citizen of Micronesia, Marshall Islands, or Palau;

2. (a)(10) Granted Withholding of Deportation;

3. (c)(l), (c)(4), or (c)(7) Dependent of certain foreign government, international organization, or NATO personnel;

4. (c)(9) or (c)(16) Adjustment applicant who applied after July 30, 2007.

**Replacement EAD:** If this is your replacement application, and you are applying under one of the following categories, a filing fee is **not** required:

1. (c)(l), (c)(4), or (c)(7) Dependent of certain foreign government, international organization, or NATO personnel.

**NOTE:** If you are requesting a replacement EAD under the (c)(9) or (c)(16) Adjustment applicant who applied after July 30, 2007 category, then the full filing fee will be required; however, no biometrics fee is required.

**Card Error:**

1. If the card issued to you contains incorrect information that is not attributed to USCIS error, a new Form I-765 and filing fee are required. Form I-765 must be accompanied by the card containing the error.

2. If the card issued to you contains incorrect information that is attributed to a USCIS error, a new Form I-765 and filing fee are not required. Instead, you must submit a letter, accompanied by the card containing the error to the Service Center or National Benefit Center that approved your last employment authorization request.

You may be eligible for a fee waiver under 8 CFR 103.7(c) if you are filing for an EAD related to your application or grant of TPS.

**Use the following guidelines when you prepare your check or money order for the Form I-765 fee:**

**1.** The check or money order must be drawn on a bank or other financial institution located in the United States and must be payable in U.S. currency; and

**2.** Make the check or money order payable to **U.S. Department of Homeland Security**.

   **NOTE:** Spell out U.S. Department of Homeland Security; do not use the initials "USDHS" or "DHS."

**NOTE**: If you filed Form I-485, Application to Register Permanent Residence or Adjust Status, as of July 30, 2007, *and you paid the Form I-485 filing fee*, no fee is required to also file a request for employment authorization on Form I-765. You may file the Form I-765 with your Form I-485, or you may submit the Form I-765 at a later date. If you file Form I-765 separately, you must also submit a copy of your Form I-797C, Notice of Action, receipt as evidence of the filing of Form I-485 as of July 30, 2007.

**Notice to Those Making Payment by Check.** If you send us a check, it will be converted into an electronic funds transfer (EFT). This means we will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account will usually take 24 hours and will be shown on your regular account statement.

You will not receive your original check back. We will destroy your original check, but we will keep a copy of it. If the EFT cannot be processed for technical reasons, you authorize us to process the copy in place of your original check. If the EFT cannot be completed because of insufficient funds, we may try to make the transfer up to two times.

**How to Check If the Fees Are Correct**

The fee on this form is current as of the edition date appearing in the lower right corner of this page. However, because USCIS fees change periodically, you can verify if the fees are correct by following one of the steps below:

**1.** Visit our Web site at **www.uscis.gov**, select "Forms Filing Fees" and check the appropriate fee; **or**

**2.** Telephone our National Customer Service Center at **1-800-375-5283** and ask for the fee information. For TDD (hearing impaired) call: **1-800-767-1833**.

## Where to File?

Please visit the USCIS Web site at www.uscis.gov/I-765 or contact the USCIS National Customer Service Center at **1-800-375-5283** for the most current information about where to file this benefit request. For TDD (hearing impaired) call: **1-800-767-1833**.

## Address Change

If you have changed your address, you must inform USCIS of your new address. For information on filing a change of address go to the USCIS Web site at **www.uscis.gov/addresschange** or contact the USCIS National Customer Service Center at **1-800-375-5283**. For TDD (hearing impaired) call: **1-800-767-1833**.

**NOTE:** Do not submit a change of address request to USCIS Lockbox facilities because USCIS Lockbox facilities do not process change of address requests.

## Processing  Information

**Any Form I-765 that is not signed or accompanied by the correct fee will be rejected with a notice that Form I-765 is deficient.** You may correct the deficiency and resubmit Form I-765. An application or petition is not considered properly filed until accepted by USCIS.

**Initial processing.** Once Form I-765 has been accepted, it will be checked for completeness, including submission of the required initial evidence. If you do not completely fill out the form, or file it without required initial evidence, you will not establish a basis for eligibility, and we may deny your Form I-765.

**Biometric collection, interview, and requests for more information.** We may request more information or evidence, or we may request that you appear at a USCIS office for an interview, which may include collection of biometrics (fingerprints, photograph, and signature). We may also request that you submit the originals of any copy. We will return these originals when they are no longer required.

You may be required to provide biometrics at a USCIS Application Support Center (ASC) in order for your EAD application to be adjudicated and your card to be produced. If necessary, USCIS will send you a notice scheduling you for an ASC appointment for the electronic collection of your biometrics. The ASC notice will inform you of the documents that you must bring with you to the appointment. If you fail to attend your ASC appointment, your EAD application may be denied.

**Approval.** If approved, your EAD will either be mailed to you or you may be required to visit your local USCIS office to pick it up.

**Denial.** If your application cannot be granted, you will receive a written notice explaining the basis of your denial.

**Interim EAD.** If you have not received a decision within 90 days of receipt by USCIS of a properly filed EAD application or within 30 days of a properly filed initial EAD application based on an asylum application filed on or after January 4, 1995, you may request interim work authorization by calling the USCIS National Customer Service Center at **1-800-375-5283** or by appearing in person at your local USCIS Field Office by making an **InfoPass** appointment. For TDD (hearing impaired) call: **1-800-767-1833**. For further processing at a USCIS Field Office, you must bring proof of identity and any notices that you have received from USCIS in connection with your application for employment authorization. *The Interim EAD provisions apply to individuals filing Form I-765 based on Consideration of Deferred Action for Childhood Arrivals only after a determination on deferred action is reached.*

## USCIS Forms and Information

To ensure you are using the latest version of this form, visit the USCIS Web site at www.uscis.gov where you can get USCIS forms and immigration-related information. If you do not have internet access, you may order USCIS forms by calling our toll-free number at **1-800-870-3676.** You may also obtain forms and information by calling our USCIS National Customer Service Center at **1-800-375-5283**. For TDD (hearing impaired) call: **1-800-767-1833**.

As an alternative to waiting in line for assistance at your local USCIS office, you can now schedule an appointment through the USCIS Internet-based system, **InfoPass**. To access the system, visit the USCIS Web site. Use the **InfoPass** appointment scheduler and follow the screen prompts to set up your appointment. **InfoPass** generates an electronic appointment notice that appears on the screen.

## Penalties

If you knowingly and willfully falsify or conceal a material fact or submit a false document with your Form I-765, we will deny your Form I-765 and may deny any other immigration benefit.

In addition, you will face severe penalties provided by law and may be subject to criminal prosecution.

## USCIS Privacy Act Statement

**AUTHORITIES:** The information requested on this form, and the associated evidence, is collected under the Immigration and Nationality Act, section 101, et seq.

**PURPOSE:** The primary purpose for providing the requested information on this form is to determine if you have established eligibility for the immigration benefit for which you are filing. The information you provide will be used to grant or deny the benefit sought.

**DISCLOSURE:** The information you provide is voluntary. However, failure to provide the requested information, and any requested evidence, may delay a final decision or result in denial of your form.

**ROUTINE USES:** The information you provide on this form may be shared with other Federal, State, local, and foreign government agencies and authorized organizations following approved routine uses described in the associated published system of records notices [DHS-USCIS-007  - Benefits Information System and DHS-USCIS-001  -  - Alien File, Index, and National File Tracking System of Records, which can be found at **www.dhs.gov/privacy**]. The information may also be made available, as appropriate, for law enforcement purposes or in the interest of national security.

## Paperwork Reduction Act

An agency may not conduct or sponsor an information collection and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. The public reporting burden for this collection of information is estimated as follows: 3.42 hours for reviewing instructions and completing and submitting Form I-765; 1.17 hours associated with biometrics processing; .50 hours for reviewing instructions and completing Form I-765WS; and .50 hours associated with providing passport-style photographs. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: U.S. Citizenship and Immigration Services, Regulatory Coordination Division, Office of Policy and Strategy, 20 Massachusetts Ave NW, Washington, DC 20529-2140. OMB No. 1615-0040. **Do not mail your completed Form I-765 to this address.**



**Instructions for Application for Employment Authorization**

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

USCIS
**Form I-765**
OMB No. 1615-0040
Expires 07/31/2022

## What Is the Purpose of Form I-765?

Certain foreign nationals who are in the United States may file Form I-765, Application for Employment Authorization, to request employment authorization and an Employment Authorization Document (EAD). Other foreign nationals whose immigration status authorizes them to work in the United States without restrictions may also use Form I-765 to apply to U.S. Citizenship and Immigration Services (USCIS) for an EAD that shows such authorization. Review the **Who May File Form I-765** section of these Instructions to determine whether you should use Form I-765.

Foreign nationals may also apply for a Social Security number and card on Form I-765 following the guidelines in the **Specific Instructions** section of these Instructions, **Part 2. Information About You, Item Numbers 13.a.** - **17.b.**

If you are a lawful permanent resident, a conditional permanent resident, or a nonimmigrant only authorized for employment with a specific employer under 8 CFR 274a.12(b), do **not** use Form I-765.

**Definitions**

**Employment Authorization Document (EAD):** The EAD is the card (also known as Form I-688A, Form I-688B, Form I-766, or any successor document) issued as evidence that the holder is authorized to work in the United States.

**Initial EAD:** An EAD issued to an eligible applicant for the first time under a specific eligibility category.

**Renewal EAD:** An EAD issued to an eligible applicant after the expiration of a previous EAD issued under the same category.

**Replacement EAD:** An EAD issued to an eligible applicant when the previously issued EAD was lost, stolen, damaged, or contains errors, such as a misspelled name.

**NOTE:** For more information regarding employment authorization documents, visit **www.uscis.gov/greencard/ employment-authorization-document**.

## Who May File Form I-765?

You may file Form I-765 if you fall within one of the eligibility categories below. For some categories, employment authorization is granted with your underlying immigration status (called "incident to status" employment authorization). For example, asylees and refugees have employment authorization as soon as they obtain such status. In these cases, your EAD is issued upon approval of your Form I-765, and the EAD is evidence of your employment authorization. For other categories such as parolees or individuals with deferred action, USCIS must first approve your Form I-765 before you are eligible to accept employment in the United States. Once your Form I-765 is approved, USCIS will issue your EAD. You must type or print your eligibility category in **Part 2.**, **Item Number 27.**, on Form I-765. Enter only one category number on the application. For example, if you are a refugee applying for an EAD, type or print "(a)(3)" in **Item Number 27.**

**Please note that a person with a pending application for an immigration benefit or request might have a different category number than the person who was already granted the benefit or request. For example certain pending asylum applicants are category "(c)(8)," but a person already granted asylum is category "(a)(5)."**

**Asylee/Refugee Categories (and their Spouses and Children)**

1. **Refugee--(a)(3).** If an initial Form I-765 was not already prepared for you before your arrival as a refugee in the United States, or if you are requesting to renew your EAD, file Form I-765 with a copy of one of the following:  your stamped Form I-94, Arrival-Departure Record; your Final Notice of Eligibility for Resettlement (approval letter); or your Form I-797 Notice approving your derivative refugee status based on a Form I-730, Refugee/Asylee Relative Petition (if approved while in the United States).

   **NOTE:**  If you were admitted as a refugee and have applied under the Immigration and Nationality Act (INA) section 209 to adjust to lawful permanent resident status using Form I-485, Application to Register Permanent Residence or Adjust Status, file Form I-765 under category (a)(3) as a refugee.  Do not file Form I-765 under eligibility category (c)(9) as an INA section 245 adjustment applicant.

2. **Paroled as a Refugee--(a)(4).** File Form I-765 with a copy of your Form I-94, passport, or travel document. Commonwealth of the Northern Mariana Islands (CNMI), and other humanitarian or significant public benefit parolees (such as Cuban Family and Haitian Family Reunification Parole programs), should file under the category (c)(11), not as a refugee under (a)(4).

3. **Asylee (Granted Asylum)--(a)(5).** File Form I-765 with a copy of one of the following:  your stamped Form I-94 indicating asylee status; a USCIS Asylum approval letter; an order granting asylum signed by an Executive Office for Immigration Review (EOIR) immigration judge (IJ); or a Form I-797 Notice approving your derivative asylee status based on a Form I-730 (if approved while in the United States).

   **NOTE:**  If you are an asylee and have applied under INA section 209 to adjust to lawful permanent resident status using Form I-485, file Form I-765 under category (a)(5) as an asylee.  Do not file Form I-765 under eligibility category (c)(9) as an INA section 245 adjustment applicant.

4. **Granted Withholding of Deportation or Removal--(a)(10).** File Form I-765 with a copy of the EOIR IJ's signed order granting withholding of deportation or removal.

5. **Pending Asylum and Withholding of Removal Applicants and Applicants for Asylum under the ABC Settlement Agreement--(c)(8).** If you have a pending Form I-589, Application for Asylum and for Withholding of Removal, refer to the Instructions below.

**Special Filing Instructions for Those With Pending Asylum Applications--(c)(8)**

**Applicants requesting employment authorization under (c)(8) must:**

1. Wait 365 calendar days from the date you properly file and USCIS or the Immigration Court accepts your asylum application before you file your application for employment authorization;

2. Appear for your asylum biometric services appointment;

3. Appear for your interview with a USCIS asylum officer, or your hearing before an Immigration Judge (IJ), if requested or scheduled; and

4. Appear for your biometric services appointment for your application for employment authorization.

For further information see 8 CFR sections 208.7, 208.9, and 208.10.

**Special information about biometric services fee and appointments.**  All applicants for initial and renewal EADs under the (c)(8) eligibility category must submit biometrics at a scheduled biometric services appointment and pay the biometric services fee.  If you fail to appear for your biometric services appointment, you may be ineligible for employment authorization.

**Special information about the one-year deadline to file for asylum.**  If you file your asylum application on or after August 25, 2020 and file it more than one year after your most recent arrival in the United States, you will not be granted employment authorization under this eligibility category **unless and until** a USCIS asylum officer or an Immigration Judge determines that you meet an exception for late filing, as provided in section 208(a)(2)(D) of the Immigration and Nationality Act (INA).  This one-year filing deadline does not apply to an alien who is an unaccompanied alien child, as defined by section 462(g) of the Homeland Security Act of 2002, 6 U.S.C. 279(g), INA section 208(a)(2)(E), 8 U.S.C. 1158(a)(2)(E).

**Special information about lawful entry into the United States through a port of entry.**  Eligibility for an EAD under category (c)(8) requires that your last entry into the United States was lawful.  If you entered or attempted to enter the United States unlawfully on or after August 25, 2020, you are ineligible for employment authorization based on a pending asylum application, unless you demonstrate that: (1) you presented yourself to the Secretary of Homeland Security or his or her delegate within 48 hours of your arrival; (2) you indicated a fear of persecution or torture or an intent to apply for asylum; and (3) you establish good cause for failing to enter lawfully through a port of entry.  USCIS will determine whether you meet the exception to the illegal entry bar based on your responses to **Item Numbers 30.b. - 30.g.** of Form I-765.

**Special information about arrests, charges, and convictions.**  You cannot receive employment authorization under this eligibility category if:

- You have been convicted at any time in the United States or abroad of any aggravated felony as described in section 101(a)(43) of the Act;

- You have been convicted on or after August 25, 2020 of a particularly serious crime in the United States;

- You have been convicted on or after August 25, 2020 of any serious non-political crime outside the United States;

- There are serious reasons for believing that you on or after August 25, 2020 have committed a serious non-political crime outside the United States; or

- You are subject to a mandatory denial of your asylum application based on the criminal grounds described in 8 CFR 208.13(c)(6).

**Special information about the impact of applicant-caused delays.**  Any delays you have caused in the adjudication of your asylum application that are still in effect at the time your initial application for employment authorization is filed will result in USCIS denying your application for employment authorization.

Examples of applicant-caused delays include, but are not limited to:

1. A request to amend or supplement an asylum application that causes a delay in its adjudication or in proceedings as described in 8 CFR section 208.4(c);

2. Failure to appear to receive and acknowledge receipt of the decision as specified in 8 CFR section 208.9(d);

3. A request for extension to submit additional evidence fewer than 14 days before the interview date as described in 8 CFR section 208.9(e);

4. Failure to appear for an asylum interview or biometric services appointment, unless excused by USCIS as described in 8 CFR section 208.10(b)(1) for the failure to appear;

5. A request to reschedule an interview for a later date;

6. A request to transfer a case to a new asylum office or interview location, including when the transfer is based on a new address;

7. A request to provide additional evidence after interview;

8. Failure to provide a competent interpreter at interview; and

9. Failure to comply with any other request needed to determine asylum eligibility.

**Special Information About Availability of (c)(8) Employment Authorization During the Asylum Process.**  If you are granted employment authorization while your asylum application is pending with USCIS or the Immigration Court, you may seek renewal of your EAD as long as the asylum application remains pending (unless your EAD is revoked or terminated).

If you have an EAD based on a pending asylum application and your asylum application is denied by the Immigration Court, your EAD will automatically terminate after 30 days unless you file a timely appeal with the Board of Immigration Appeals (BIA).  If you file a timely appeal with the BIA, your current employment authorization will continue while your asylum application is on review at the BIA (unless revoked or terminated).  There is no need to file another Form I-765, unless your EAD is about to expire or will expire during the time your case is on appeal.  If the BIA affirms the denial of your asylum application, your employment authorization terminates automatically on the date of the BIA's denial.

**NOTE:**  Employment authorization **is not permitted during any period of judicial review of EOIR's decision on your asylum application**.  However, if a federal court remands your asylum case back to the BIA, you may reapply for employment authorization once your case is again pending with the BIA.

**Additional Evidence requirements for category (c)(8) applicants:**

If you are a category (c)(8) applicant who has met the requisite 365 calendar-day waiting period to file Form I-765, you may file your application with the following evidence, where applicable.

1.  If you filed your Form I-589 with USCIS, a copy of the following:  the USCIS Acknowledgement of Receipt that was mailed to you and your USCIS Asylum Interview Notice (scheduling, re-scheduling, or cancelling your asylum interview); your Form I-797C Notice (ASC appointment notice) (for the biometrics appointment for your Form I-589); or other evidence that you filed your Form I-589 with USCIS.

2.  If you lodged or filed your Form I-589 with the Executive Office for Immigration Review (EOIR), a copy of acknowledgement of receipt of your application or other available evidence.

3.  If you were granted employment authorization under the (c)(8) category and an Immigration Judge (IJ) subsequently denied your asylum application, and you are now seeking renewal of your EAD, evidence that you timely appealed the EOIR IJ's decision on your Form I-589 to the BIA and the appeal remains pending.

4.  If the BIA remanded your Form I-589 to an EOIR IJ for further adjudication of your underlying asylum claim:

    **A.**  A copy of the BIA decision and order remanding your case to the EOIR IJ; and

    **B.**  Evidence that your asylum claim remains under review by the EOIR IJ.

5.  If a federal court remanded your asylum claim to the BIA for further action and your claim is still pending with the BIA, you must submit a copy of the Federal Court's remand order.

6.  **Evidence of Arrests and Convictions.**  You must submit certified police and court records for any criminal charges, arrests, or convictions you may have.

    **A.**  If you were **EVER** arrested or detained by a law enforcement officer for **any** reason in any country, including the United States, and no criminal charges were filed, you must submit:

       **(1)**  An original or certified copy of the complete arrest report; and

       **(2)**  Either an official statement by the arresting or detaining agency or prosecutor's office **OR** an applicable court order that indicates the final disposition of your arrest or detention;

    **B.**  If you were **EVER** charged for any reason (even if you were not arrested) in **any** country, including the United States, you must submit:

       **(1)**  An original or certified copy of the complete arrest report; and

       **(2)**  Certified copies of **BOTH** the indictment, information, or other formal charging document **AND** the final disposition of each charge (for example, a dismissal order or acquittal order);

**C.** If you were **EVER** convicted or placed in an alternative sentencing or rehabilitative program (such as probation, drug treatment, deferred adjudication, or community service program) in **any** country, including the United States, you must submit:

    **(1)** An original or certified copy of the complete arrest report;

    **(2)** Certified copies of the following: the indictment, information, or other formal charging document; any plea agreement, whether in the form of a court filing or recording in a hearing transcript; and the final disposition for each incident (for example, conviction record, deferred adjudication order, probation order); and

    **(3)** Either an original or certified copy of your probation or parole record showing that you completed the mandated sentence, conditions set for the deferred adjudication, or rehabilitative program OR documentation showing that you completed the alternative sentencing or rehabilitative program; or

**D.** If you **EVER** had any arrest or conviction vacated, set aside, sealed, expunged, or otherwise removed from your record in **any** country, you must submit:

    **(1)** An original or certified copy of the complete arrest report; the indictment, information, or other formal charging document; any plea agreement, whether in the form of a court filing or recording in a hearing transcript; and the final disposition for each incident (for example, conviction record, deferred adjudication order, probation order); and

    **(2)** A certified copy of the court order vacating, setting aside, sealing, expunging, or otherwise removing the arrest or conviction.

You must disclose all arrests and charges, even if the arrest occurred when you were a minor. An adjudication of juvenile delinquency is not a "conviction" under U.S. immigration law, but a juvenile can be charged as an adult for an offense committed while a juvenile. If you were convicted as an adult, there is a conviction, regardless of whether you were tried before a criminal court or a juvenile court. An adjudication of juvenile delinquency could also be relevant to the exercise of discretion. If you claim that an arrest resulted in adjudication of delinquency, and not in a conviction, you must submit a copy of the court document that establishes this fact.

In general, you do **not** need to submit documentation relating to traffic fines and incidents that did not involve an actual physical arrest if the penalty was only a fine of less than **$500** or points on your driver's license. However, you must submit such documentation if the traffic incident resulted in criminal charges or involved alcohol, drugs, or injury to a person or property.

If you are not able to obtain certified copies of any court disposition relating to **Items A. - D.**, please submit:

**1.** An explanation of why the documents are not available, including (if possible) a certificate from the custodian of the documents explaining why the documents are not available;

**2.** Any secondary evidence that shows the disposition of the case; or

**3.** If secondary evidence is also not available, one or more written statements, signed under penalty of perjury under 28 U.S.C. section 1746, by someone who has personal knowledge of the disposition.

**Asylum and Withholding of Deportation Applicants (with a pending Form I-589) Who Filed Before January 4, 1995**

You may file Form I-765 at any time; however, we will only grant your employment authorization if we find that your asylum application is not frivolous. File Form I-765 with a copy of the following documents, where applicable:

**1.** Your date-stamped previously filed Form I-589;

**2.** If you filed your Form I-589 with the former Immigration and Naturalization Service (INS), an INS Acknowledgment of Receipt;

**3.** A USCIS Asylum Interview Notice (scheduling, re-scheduling, or cancelling your asylum interview);

**4.** Form I-797 Notice, Fingerprint Notification (for a fingerprint appointment for your Form I-589);

**AR2022_300862**

5. If you filed your Form I-589 in exclusion or deportation proceedings, evidence that your Form I-589 was filed with EOIR;

6. If you are currently in exclusion or deportation proceedings, a copy of Form I-221, Order to Show Cause and Notice of Hearing, or Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge; or

7. Evidence that your Form I-589 remains under administrative or judicial review.

**Asylum application under the ABC Settlement Agreement--(c)(8).**  If you are a Salvadoran or Guatemalan national eligible for benefits under the ABC settlement agreement, *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991), you are entitled to an EAD under the ABC settlement agreement.  Follow the instructions contained in this section when filing your Form I-765.

You must have filed your asylum application (Form I-589) with us (the former INS or USCIS) or with an EOIR IJ to receive an EAD.  Therefore, submit evidence that you have previously filed a complete asylum application when you submit Form I-765.  You are not required to submit this evidence when you apply, but it will help us process your request more efficiently.

If you are requesting an EAD under this category, you must pay the filing fee.  Mark your application as follows:

1. Type or print "ABC" in the top right corner of your EAD application.  You must identify yourself as an ABC class member if you are applying for an EAD under the ABC settlement agreement.

2. Type or print "(c)(8)" in **Part 2.**, **Item Number 27.**, of the application.

3. Select the box in **Part 3.**, **Item Number 6.**, of this application.

You are entitled to an EAD without regard to the merits of your asylum claim.

Your Form I-765 will be decided within 60 days if:

1. You pay the applicable filing fee and biometric services fee, or you apply for and USCIS approves a waiver of either fee;

2. You have a complete pending asylum application on file; and

3. You correctly mark your application as described above.

**Nationality Categories**

1. **Citizen of Micronesia, the Marshall Islands, or Palau--(a)(8).**  File Form I-765 with evidence you were admitted to the United States as a citizen of the Federated States of Micronesia (CFA/FSM), the Marshall Islands (CFA/MIS), or Palau under agreements between the United States and the former trust territories.

2. **Deferred Enforced Departure (DED)--(a)(11).**  File Form I-765 with evidence of your identity and nationality.  If you are without nationality, submit evidence of your residence in the last country in which you habitually resided.  You should also state your basis for claiming that you are covered by DED and provide evidence (if available) for your claim.

3. **Temporary Protected Status (TPS)--(a)(12) and (c)(19).**  File Form I-765 with your Form I-821, Application for Temporary Protected Status, or evidence that we accepted or approved your initial Form I-821.  Include evidence of your nationality and identity as required by the Form I-821 Instructions.  If an EOIR IJ or the Board of Immigration Appeals (BIA) granted TPS, and you are requesting your first EAD or are re-registering for the first time, you must submit a copy of the EOIR IJ or BIA order that granted TPS with your Form I-765 (such as a copy of your Form I-821 that the EOIR IJ or BIA approved).  You must also follow the instructions for filing your application as described in the most recent TPS Federal Register notice regarding a TPS designation, re-designation, or extension for your country.  Please check the USCIS website at **www.uscis.gov/tps** for procedures to register or re-register for TPS, including obtaining an EAD, if your country has been designated for TPS.

**AR2022_300863**

If your non-expired TPS EAD is lost, stolen, or damaged, file Form I-765 with required fees to request a replacement. Include a copy of your approval notice for TPS (if you have been approved) or a copy of your previous Form I-797 Notice for Form I-821 if your TPS application is still pending.

**A. Category (a)(12) EAD:** We may issue you a category (a)(12) EAD if your TPS application was approved, you requested an EAD, and you were not previously issued a category (c)(19) EAD that runs through the current TPS designation, re-designation, or extension period for your country.

**Re-registration for TPS:** File your Form I-765, Form I-821, and a letter indicating that this application is for TPS re-registration. Include a copy (front and back) of your last available TPS document (for example, an EAD, Form I-94, passport, or travel document, or a Form I-797 Notice).

**NOTE:** To re-register for TPS, you must file Form I-821; however, you do not need to file Form I-765 if you do not want an EAD.

**B. Category (c)(19) EAD:** A category (c)(19) EAD is a temporary benefit under TPS under 8 CFR Part 244. We may issue you a category (c)(19) EAD if you have a pending Form I-821, and you are *prima facie* eligible for TPS.

4. **Nicaraguan Adjustment and Central American Relief Act (NACARA) Section 203 Applicants Who Are Eligible to Apply for NACARA Relief With USCIS--(c)(10).** See the Instructions to Form I-881, Application for Suspension of Deportation or Special Rule Cancellation of Removal (Pursuant to Section 203 of Public Law 105-100 (NACARA)), to determine if you are eligible to apply for NACARA 203 relief.

If you are eligible to apply for NACARA 203 relief with USCIS, you may file Form I-765 together with your Form I-881. See our website at **www.uscis.gov/I-881** for the most current information on where to file Form I-881. If you are eligible to file Form I-881 with EOIR, or if you have already filed Form I-881 with USCIS or EOIR, see the **Where to File** section of these Instructions.

If you are filing for an EAD related to your NACARA application, you may be eligible for a fee waiver under 8 CFR 103.7(c)(3)(xi).

5. **Dependent of TECRO E-1 Nonimmigrant--(c)(2).** File Form I-765 with the required certification from the American Institute in Taiwan if you are the spouse or unmarried dependent son or daughter of an E-1 employee of the Taipei Economic and Cultural Representative Office.

**Foreign Students Categories**

1. **F-1 Student Seeking Optional Practical Training (OPT) in a Position Directly Related to Major Area of Study**

**NOTE:** If you are an F-1 student filing for initial or extension of OPT, please note that your OPT and your employment authorization will be automatically terminated if you change educational program levels or transfer to another school. Working in the United States without authorization may result in your removal from the United States or denial of re-entry. Consult your Designated School Official (DSO) for additional details.

**A. Pre-Completion OPT--(c)(3)(A).** File Form I-765 up to 90 days before being enrolled for one full academic year, provided that the period of employment will not start before you have completed one full academic year. The one full academic year need not necessarily be completed while you were in F-1 status; if you completed the one-year requirement while in another valid nonimmigrant status and you are now in valid F-1 status, you are eligible to apply for OPT. Include evidence of having been lawfully enrolled on a full-time basis for one full academic year at a college, university, conservatory, or seminary approved by the U.S. Immigration and Customs Enforcement (ICE) Student and Exchange Visitor Program (SEVP) for attendance by F-1 foreign students. Also, include all previously used Student and Exchange Visitor Information System (SEVIS) numbers and evidence of any previously authorized curricular practical training (CPT) or OPT and academic level at which each was authorized. You must include a Certificate of Eligibility of Nonimmigrant (F-1) Student Status (Form I-20) endorsed by the DSO before filing Form I-765.

**B. Post-Completion OPT--(c)(3)(B).** File Form I-765 up to 90 days before, but no later than 60 days after, your program end date. Use **Part 6. Additional Information** to provide all previously used SEVIS numbers and evidence of any previously authorized CPT or OPT and the academic level at which it was authorized.

**NOTE:** You **must** file your Form I-765 within 30 days of the date that your DSO enters the recommendation for OPT into your SEVIS record. If you fail to do so, we will deny your OPT request.

**C. 24-Month Extension for STEM Students (Students With a Degree in Science, Technology, Engineering, or Mathematics)--(c)(3)(C).** File Form I-765 up to 90 days before the expiration of your current OPT, if you are requesting a 24-month STEM extension. Include evidence the degree that is the basis for the STEM OPT extension is in one of the degree programs currently listed on the STEM Designated Degree Program List. Additionally, submit the employer's name as listed in E-Verify, along with the E-Verify Company Identification Number, or a valid E-Verify Client Company Identification Number for the employer with whom you are seeking the 24-month STEM OPT extension. You must provide this information in **Part 2., Item Numbers 28.a. - 28.c.,** of Form I-765. You must include a copy of the Form I-20 endorsed by the DSO within 60 days before filing Form I-765.

**NOTE:** If you are applying for a STEM OPT extension based on a previously earned STEM degree, you must also include a copy of your prior STEM degree and evidence that the institution is currently accredited by the U.S. Department of Education and certified by the SEVP.

**D. F-1 Student Offered Off-Campus Employment Under the Sponsorship of a Qualifying International Organization--(c)(3)(ii).** File Form I-765 with the international organization's letter of certification that the proposed employment is within the scope of its sponsorship and a copy of the Form I-20 with the employment page completed by the DSO certifying eligibility for employment.

**E. F-1 Student Seeking Off-Campus Employment Due to Severe Economic Hardship--(c)(3)(iii).** File Form I-765 with a copy of the Form I-20 that includes the employment page completed by the DSO certifying eligibility for off-campus employment due to severe economic hardship caused by unforeseen circumstances beyond your control. Include evidence that:

**(1)** You have been in F-1 status for one full academic year;

**(2)** You are in good standing as a student;

**(3)** You are carrying a full course of study;

**(4)** Acceptance of employment will not interfere with your carrying a full course of study;

**(5)** The employment is necessary to avoid severe economic hardship due to unforeseen circumstances beyond your control; and

**(6)** On-campus employment is unavailable or is not sufficient to meet the needs that have arisen due to the unforeseen circumstances.

**F. J-2 Spouse or Minor Child of an Exchange Visitor--(c)(5).** File Form I-765 with a copy of Form DS-2019, evidence the J-1 principal foreign national is currently maintaining status, and evidence any income from this employment authorization will not be used to support the J-1 principal foreign national. Also, provide evidence you are currently maintaining status and include evidence of all previously authorized periods of J-2 employment.

**G. M-1 Student Seeking Post-Completion OPT After Completing Studies--(c)(6).** File Form I-765 with a copy of the Form I-20 endorsed by the DSO certifying eligibility for employment together with Form I-539, Application to Change/Extend Nonimmigrant Status, if applicable, completed according to the Form I-539 Instructions. We must receive the completed forms before, but not more than 90 days before, your program end date. If applicable, your Form I-539 must request an extension of stay that covers the requested period of post-completion OPT and a 30-day departure period.

**NOTE:** You may request one month of OPT for every four months of full-time study you have completed as an M-1 student.

**Categories for Eligible Dependents of Employees of Diplomatic Missions, International Organizations, or NATO**

1. **Dependent of A-1 or A-2 Foreign Government Officials--(c)(1).** Submit Form I-765 with Form I-566, Interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/Adjustment to/from A, G, or NATO Status, Dependent Employment Authorization, through your diplomatic mission to the Department of State (DOS). DOS will forward all favorably endorsed applications directly to USCIS for adjudication.

2. **Dependent of G-1, G-3, or G-4 Nonimmigrant--(c)(4).** Submit Form I-765 together with Form I-566 through your international organization to DOS. The United Nations (UN) and UN missions located in New York City should submit such applications to the U.S. Mission to the UN (USUN). DOS or USUN will forward all favorably endorsed applications directly to USCIS for adjudication.

3. **Dependent of NATO-1 Through NATO-6--(c)(7).** If you are a dependent of a North Atlantic Treaty Organization (NATO) nonimmigrant who is stationed at Supreme Allied Command Transformation (SACT), NATO/HQ, submit Form I-765 with Form I-566 to:

   **USLO to NATO/HQ SACT**
   **7857 Blandy Road, Suite 200**
   **Norfolk, VA 23551-2491**

   If you are a dependent of a NATO nonimmigrant who is stationed outside of NATO/HQ SACT, submit Form I-765 with Form I-566 to the Defense Attaché's Office at the embassy of the NATO member that employs the foreign national. For more details on NATO member embassy contacts and on documents required, visit the DOS website **www.state.gov/ofm** under the topic "Dependent Work Authorization."

   If you have questions regarding the process or document requirements, email **OFM-EAD@state.gov**.

**Employment-Based Nonimmigrant Categories**

1. **B-1 Nonimmigrant Who Is the Personal or Domestic Servant of a Nonimmigrant Employer--(c)(17)(i).** File Form I-765 with:

   A. Evidence of your lawful B nonimmigrant status (for example, your Form I-94, passport, or other travel document);

   B. Evidence that your employer is a B, E, F, H, I, J, L, M, O, P, Q, or TN nonimmigrant;

   C. Evidence you worked for the employer for at least one year before the employer entered the United States, or your employer regularly employs personal and domestic servants and has done so for a period of years before coming to the United States;

   D. Evidence you have either worked for this employer as a personal or domestic servant for at least one year, or evidence you have at least one year of experience as a personal or domestic servant; and

   E. Evidence establishing you have a residence abroad that you have no intention of abandoning.

2. **B-1 Nonimmigrant Domestic Servant of a U.S. Citizen--(c)(17)(ii).** File Form I-765 with:

   A. Evidence of your lawful B nonimmigrant status (for example, your Form I-94, passport, or other travel document);

   B. Evidence that your employer is a U.S. citizen;

   C. Evidence that your employer has a permanent home abroad or is stationed outside the United States and is temporarily visiting the United States, OR evidence that your employer's current assignment in the United States will not be longer than four years; and

   D. Evidence that your employer has employed you as a domestic servant abroad for at least six months before your admission to the United States.

3. **B-1 Nonimmigrant Employed by a Foreign Airline--(c)(17)(iii).** File Form I-765 with:

**AR2022_300866**

    **A.** Evidence of your lawful B nonimmigrant status (for example, your Form I-94, passport, or other travel document); and

    **B.** A letter from the airline fully describing your duties and stating your position would entitle you to E nonimmigrant status except for the fact that you are not a national of the same country as the airline, or because there is no treaty of commerce and navigation in effect between the United States and that country.

**4.** **Spouse of an E-1 Treaty Trader, E-2 Treaty Investor, or E-3 Specialty Occupation Professional from Australia--(a)(17).** File Form I-765 with:

    **A.** Evidence of your lawful E nonimmigrant status (for example, your Form I-94, passport, or other travel document); and

    **B.** Evidence of your spouse's lawful E nonimmigrant status (for example, a copy of your spouse's Form I-94, passport, or other travel document) and your marriage certificate.

    **NOTE:** Other relatives or dependents of E nonimmigrants in E status are not eligible for employment authorization and cannot file under this category.

**5.** **Spouse of an L-1 Intracompany Transferee--(a)(18).** File Form I-765 with:

    **A.** Evidence of your lawful L nonimmigrant status (for example, your Form I-94, passport, or other travel document); and

    **B.** Evidence of your spouse's lawful L nonimmigrant status (for example, a copy of your spouse's Form I-94, passport, or other travel document) and your marriage certificate.

    **NOTE:** Other relatives or dependents of L nonimmigrants in L status are not eligible for employment authorization and cannot file under this category.

**6.** **Spouse of an E-2 Commonwealth of Northern Mariana Islands (CNMI) Investor--(c)(12).** File Form I-765 with the required evidence listed under **Special Filing Instructions for Spouses of E-2 CNMI Investors** in the **Required Documentation** section of these Instructions.

Spouses of certain principal E-2 CNMI investors (E-2C) are eligible to seek employment in the CNMI. An EAD issued under this category is only valid for employment in the CNMI.

To determine if you are eligible for an EAD under this section, you must determine what type of investor certificate was issued by the CNMI to your spouse, the principal E-2 CNMI investor. If your spouse was issued either a Long-Term Business Certificate or Foreign Investment Certificate, you may be eligible for an EAD under this category. If your spouse was issued a Foreign Retiree Investment Certification, you are not eligible to receive an EAD under this category.

File Form I-765 with:

    **A.** Documentation (such as a marriage certificate) establishing a legal marriage;

    **B.** Documentation (such as divorce or death certificates) establishing the termination of any prior marriages of you and your spouse (if applicable);

    **C.** Documentation establishing that you reside in the CNMI;

    **D.** Documentation establishing that your spouse has obtained E-2C status;

    **E.** Documentation establishing that you have obtained E-2C status as a dependent; and

    **F.** A copy of your spouse's CNMI issued Long-Term Business Certificate or Foreign Investment Certificate.

**NOTE:** If you are the spouse of a principal E-2 CNMI investor who obtained status on the basis of a Foreign Retiree Investment Certification, you are not eligible for employment authorization and cannot file under this category.

7. **Spouse of an H-1B Nonimmigrant--(c)(26).** File Form I-765 along with documentation of your current H-4 admission or extension of stay. You must also submit documentation establishing either your spouse is the beneficiary of an approved Form I-140, Immigrant Petition for Alien Worker, or your spouse received H-1B status based on the American Competitiveness in the Twenty-First Century Act (AC21) sections 106(a) and (b). For your convenience, you may file Form I-765 with Form I-539. However, we will not process your Form I-765 (except filing fees), until after we have adjudicated your Form I-539. You may also file Form I-765 at the same time as your Form I-539 and your H1-B spouse's Form I-129, Petition for a Nonimmigrant Worker. Please see the USCIS website at **www.uscis.gov/I-765** for the most current information on where to file this benefit request.

   A. **Proof of Your Status.** Submit a copy of your current Form I-797 Notice for Form I-539, or Form I-94 showing your admission as an H-4 nonimmigrant or your most recent approved extension of stay; and

   B. **Proof of Relationship to the Principal H-1B.** Submit a copy of your marriage certificate. If you cannot submit a copy of your current Form I-797 Notice, Form I-94, or marriage certificate, we will consider secondary evidence of your relationship.

   C. **Basis for Work Authorization.** Acceptable documentation includes:

      (1) **Approved Form I-140.** Submit evidence the H-1B principal is the beneficiary of an approved Form I-140. You may show this by submitting a copy of your spouse's Form I-797 Notice for Form I-140; or

      (2) **H-1B Principal Received AC21 106(a) and (b) Extension.** Submit evidence that your spouse has been admitted or granted an extension of stay under AC21 sections 106(a) and (b). You may show this by submitting copies of your spouse's passports, prior Form I-94s, and current and prior Form I-797 Notices for Form I-129. In addition, submit evidence to establish one of the following bases for the H-1B extension of stay.

         (a) **Based on Filing of a Permanent Labor Certification Application.** Submit evidence your spouse is the beneficiary of a Permanent Labor Certification Application that was filed at least 365 days prior to the date the period of admission authorized under AC21 sections 106(a) and (b) took effect. You may show this by submitting a print out from the Department of Labor's (DOL) website or other correspondence from DOL showing the status of your spouse's Permanent Labor Certification Application. If DOL certified the Permanent Labor Certification, you must also submit a copy of Form I-797 Notice for Form I-140 establishing the Form I-140 was filed within 180 days of DOL certifying the Permanent Labor Certification; or

         (b) **Based on a Pending Form I-140.** If the preference category sought for the principal H-1B spouse does not require a Permanent Labor Certification Application with DOL, submit evidence your spouse's Form I-140 was filed at least 365 days prior to the date the period of admission authorized under AC21 sections 106(a) and (b) took effect. You may show this by submitting a copy of the Form I-797 Notice for Form I-140.

         (c) **Secondary Evidence.** If you do not have the evidence listed in **Items (a) or (b)** above, you may ask us to consider secondary evidence in support of your application for employment authorization as an H-4 spouse. For example, in establishing the Basis for Employment Authorization as described in **Items (1)** and **(2)**, you may submit the receipt number of your spouse's most current Form I-129 extension of stay or Form I-140 approved on your spouse's behalf.

         Failure to provide the evidence listed above or secondary evidence may result in the delay or denial of your Form I-765. For additional information on secondary evidence, see **Evidence** in the **General Instructions** section of these Instructions.

8. **Principal Beneficiary of an Approved Employment-Based Immigrant Petition Facing Compelling Circumstances--(c)(35).** File Form I-765 with documents showing that you are eligible for an initial grant or a renewal of employment authorization under the (c)(35) eligibility category.

**A.  Initial Application:**  If this is your first application for compelling circumstances employment authorization under the (c)(35) eligibility category, **and** an immigrant visa number is not yet available to you, you may be eligible if:

**(1)**  You have NOT filed Form I-485;

**(2)**  You have a Form I-140 approved on your behalf;

**(3)**  You are in the United States in a valid E-3, H-1B, H-1B1, O-1, or L-1 nonimmigrant status; and

**(4)**  You face compelling circumstances.

**See Item C. Supporting Evidence by Principal below for more information regarding what documents to submit with your application, including additional requirements where you have been convicted of certain crimes.**

**B.  Renewal Application:**  If you already have employment authorization under the (c)(35) eligibility category, you may be eligible for renewal if:

**(1)**  You have a Form I-140 approved on your behalf;

**(2)**  You face compelling circumstances **and** an immigrant visa is not authorized for issuance based on your priority date according to the relevant Final Action Date in the Department of State Visa Bulletin in effect on the date the application for a renewal of employment authorization is filed; **OR**

The difference between your priority date and the Final Action Date for your preference category and country of chargeability is one year or less according to the Department of State Visa Bulletin in effect on the date your renewal application is filed.  This means that your priority date cannot be more than one year earlier or one year later than the Department of State cut-off date in the Visa Bulletin applicable to your preference category and country of chargeability in effect on the date your renewal application is filed.  If this is the basis for your renewal application, you are not required to show compelling circumstances; **AND**

**(3)**  You file your renewal application on Form I-765 with USCIS before your current employment authorization expires.  You are not required to be in a valid nonimmigrant status when you file your renewal application.

**See Item C. Supporting Evidence by Principal below for more information regarding what documents to submit with your application, including additional requirements where you have been convicted of certain crimes.**

**C.  Supporting Evidence by Principal**

**(1)  Proof You Are in the United States in a E-3, H-1B, H-1B1, O-1, or L-1 Nonimmigrant Status.**  For initial applications, submit a copy of your Arrival-Departure Record (Form I-94) showing your admission as an E-3, H-1B, H-1B1, O-1, or L-1 nonimmigrant, or a copy of your current Form I-797 Notice for Form I-129.

**(2)  Proof of Your Approved Form I-140.**  For initial and renewal applications, submit a copy of a Form I-797 Notice for Form I-140 showing the Immigrant Petition has been approved on your behalf.

**(3)  Evidence You Are Facing Compelling Circumstances While You Wait for Your Immigrant Visa to Become Available.**  For initial and, if applicable, renewal applications based on compelling circumstances, USCIS will review the documents you provide to determine, in its discretion, whether you have established compelling circumstances.  USCIS makes this discretionary determination on a case-by-case basis according to the documents submitted and the totality of the record.  You should submit any credible evidence you believe supports your claim of compelling circumstances.

**(4)  Secondary Evidence.**  If you do not have the evidence listed in **Items (1)** or **(2)** above, you may ask us to consider secondary evidence in support of your application for employment authorization.  For additional information on secondary evidence, see **Evidence** in the **General Instructions** section of these Instructions.

AR2022_300869

**(5) Proof of Arrests and Conviction.** For initial and renewal applications, you must submit documentation of any arrests and/or convictions. If you were ever convicted of a felony or two or more misdemeanors, you cannot be granted employment authorization under this eligibility category. USCIS will make the determination as to whether your crimes fall into either of these categories. You must, however, provide information and any supporting documentation on all crimes which you were convicted of so USCIS can make an appropriate decision. Provide certified copies of all arrest reports, court dispositions, sentencing documents, and any other relevant documents.

**NOTE:** USCIS may, in its discretion, deny your application if you have been arrested and/or convicted of any crime.

**D. Traffic Violations and Arrests**

Do not select the "Yes" box for **Part 2.**, **Item Number 31.b.**, on the application or submit documentation if you only have had minor traffic violations. Minor traffic violations do NOTinclude violations that are alcohol- or drug-related. If you were **ARRESTED** for any traffic offense, select the "Yes" box for **Item Number 31.b.** on the application and provide arrest and disposition documentation so USCIS can properly assess whether your arrest and/or conviction may impact your employment authorization eligibility.

**NOTE: Provide the conviction and disposition documentation even if your records were sealed, expunged, or otherwise cleared.** You must provide the documentation even if anyone, including a judge, law enforcement officer, or attorney told you that you no longer have a record or that you do not have to disclose the information.

Failure to provide the evidence listed above or secondary evidence may result in the delay or denial of your application for employment authorization.

**9. Spouse or Unmarried Child of a Principal Beneficiary of an Approved Employment-Based Immigrant Petition--(c)(36).** File Form I-765 along with supporting documentation for an initial grant or a renewal of employment authorization under the (c)(36) eligibility category. You may file your application **WITH** your spouse's or parent's application under (c)(35). You may file your application while your spouse's or parent's application under (c)(35) is **PENDING** or **AFTER** your spouse's or parent's application has been approved by USCIS. If filing with your spouse's or parent's application, USCIS will not adjudicate your Form I-765 until after USCIS has adjudicated your spouse's or parent's Form I-765 first.

**A. Initial Application:** If this is your first application for employment authorization under the (c)(36) eligibility category, you may be eligible if:

**(1)** You are the spouse or unmarried child of an individual who is filing or who has been approved for compelling circumstances employment authorization under (c)(35) (See **Proof of Relationship to the Principal Beneficiary of the Approved Form I-140** section below);

**(2)** Your spouse's or parent's application for compelling circumstances employment authorization under (c)(35) has been approved or is pending with USCIS (not required if you are filing your application at the same time as your spouse's or parent's application under (c)(35)); and

**(3)** You were in a valid nonimmigrant status when your spouse or parent applies for initial employment authorization under the (c)(35) eligibility category.

**See Item C. Supporting Evidence by Spouse or Unmarried Child below for more information regarding what documents to submit with your application, including additional requirements if you have been arrested or convicted.**

**B. Renewal Application:** You may be eligible to renew your application under the (c)(36) eligibility category if:

**(1)** You file Form I-765 before your current employment authorization expires;

**(2)** You are the spouse or unmarried child of an individual who is filing or who has been approved for compelling circumstances employment authorization under (c)(35) (See **Proof of Relationship to the Principal Beneficiary of the Approved Form I-140** below); and

AR2022_300870

**(3)** Your spouse's or parent's application for compelling circumstances employment authorization under (c)(35) has been approved or is pending with USCIS (not required if you are filing your application at the same time as your spouse's or parent's renewal application under (c)(35)).

You are not required to be in a valid nonimmigrant status when you file your renewal application.

**See Item C. Supporting Evidence by Spouse or Unmarried Child below for more information regarding what documents to submit with your application, including additional requirements if you have been arrested or convicted.**

**C. Supporting Evidence by Spouse or Unmarried Child**

**(1) Proof of Your Nonimmigrant Status.** For initial applications only, submit a copy of your Arrival-Departure Record (Form I-94) showing your admission as a nonimmigrant, a copy of your current Form I-797 Notice for Form I-129, or a copy of your current Form I-797 Notice for Form I-539.

**(2) Proof of Relationship to the Principal Beneficiary of the Approved Form I-140.** For initial and renewal applications, if you are applying as the spouse of a principal beneficiary of an approved Form I-140, submit a copy of the marriage certificate and if applicable, copies of documents showing the legal termination of all other marriages by you or your spouse. If you are applying as the child of a principal beneficiary of an approved Form I-140, submit a copy of your birth certificate or other documents to demonstrate you qualify as the principal beneficiary's child. If you cannot submit a copy of your marriage certificate or birth certificate, USCIS will consider secondary evidence.

**(3) Proof the Spouse or Parent Principal Beneficiary was Granted or has Applied for Employment Authorization Under Eligibility Category (c)(35).** For initial and renewal applications, if you submit your Form I-765 after your spouse or parent receives employment authorization under eligibility category (c)(35), submit a copy of your spouse's or parent's employment authorization document or submit a copy of your spouse's or parent's Form I-797 Notice for Form I-765.

If your spouse's or parent's application under (c)(35) is **pending** when you file your Form I-765, submit a copy of your spouse's or parent's Form I-797 Notice for the pending Form I-765. USCIS will not adjudicate your Form I-765 until USCIS has adjudicated your spouse's or parent's Form I-765.

**(4) Secondary Evidence.** If you do not have the evidence listed in **Items (1)**, **(2)**, or **(3)** above, you may ask us to consider secondary evidence in support of your application for employment authorization. For additional information on secondary evidence, see **Evidence** in the **General Instructions** section of these Instructions.

**(5) Proof of Arrests and Convictions.** For initial and renewal applications, you must submit documentation of any arrests and/or convictions. If you were ever convicted of a felony or two or more misdemeanors committed, you cannot be granted employment authorization under this eligibility category. USCIS will make the determination as to whether your crimes fall into either of these categories. You must, however, provide information and any supporting documentation on all crimes which you were convicted of so USCIS can make an appropriate decision. Provide certified copies of all arrest reports, court dispositions, sentencing documents, and any other relevant documents.

**NOTE:** USCIS may, in its discretion, deny your application if you have been arrested and/or convicted of any crime.

**D. Traffic Violations and Arrests**

Do not select the "Yes" box for **Part 2.**, **Item Number 31.b.**, on the application or submit documentation if you only have had minor traffic violations. Minor traffic violations do NOT include violations that are alcohol- or drug-related. If you were **ARRESTED** for any traffic offense, select the "Yes" box for **Item Number 31.b.** on the application and provide arrest and disposition documentation so USCIS can properly assess whether your arrest and/or conviction may impact your employment authorization eligibility.

AR2022_300871

**NOTE:  Provide the conviction and disposition documentation even if your records were sealed, expunged, or otherwise cleared.**  You must provide the documentation even if anyone, including a judge, law enforcement officer, or attorney, told you that you no longer have a record or that you do not have to disclose the information.

Failure to provide the evidence listed above or secondary evidence may result in the delay or denial of your application for employment authorization.

**Department of State Visa Bulletin**.  USCIS will adjudicate all applications for initial or renewal employment authorization according to the Visa Bulletin in effect on the date the application is filed.  To see the current Visa Bulletin, please go to **www.state.gov/travel** and click the link to the Visa Bulletin.

**Priority Dates.**  For more information about priority dates, please visit our Visa Availability and Priority Date website at **www.uscis.gov**.

**Filing Location.**  Please see the USCIS website at **www.uscis.gov/i-765** for the most current information on where to file your application for initial or renewal employment authorization under the (c)(35) or (c)(36) eligibility categories.

**Family-Based Nonimmigrant Categories**

1.  **K-1 Nonimmigrant Fiancé(e) of U.S. Citizen or K-2 Dependent--(a)(6).**  File Form I-765 along with evidence of your admission (for example, copies of your Form I-94, passport, or other travel document) and your K visa.  You are only authorized to work under this category during your 90 days in K-1 or K-2 status.  You cannot renew this EAD.  If you submit subsequent EAD applications, other than for replacement of a lost, stolen, or damaged card or a card that contains incorrect data, you must apply on a different basis.  If you have a pending application for adjustment of status, you should file under category (c)(9).

2.  **K-3 Nonimmigrant Spouse of U.S. Citizen or K-4 Dependent--(a)(9).**  File Form I-765 along with evidence of your admission (for example, copies of your Form I-94, passport, or other travel document) and your K visa.

3.  **Family Unity Program--(a)(13).**  If you are filing for initial or extension of family unity benefits, complete and submit Form I-817, Application for Family Unity benefits, according to the filing instructions on Form I-817.  We will issue an EAD if we approve your Form I-817.  No Form I-765 is necessary, unless you are filing for replacement of a non-expired lost, stolen, damaged, or incorrect card.

4.  **LIFE Family Unity--(a)(14).**  If you are applying for initial employment authorization under section 1504 of the LIFE Act Amendments, complete and submit Form I-817.  We will issue an EAD if we approve your Form I-817; no Form I-765 is necessary unless you are filing for replacement of a non-expired lost, stolen, damaged, or incorrect card.

5.  **V-1, V-2, or V-3 Nonimmigrant--(a)(15).**  If you were granted V status or an extension of V status while in the United States, file Form I-765 with evidence of your V status (for example, an approval notice, your Form I-94, passport, or other travel document).  If you are in the United States but you have not yet filed an application for V status, you may file Form I-765 at the same time as you file your application for V status.  We will adjudicate this application after adjudicating your application for V status.

**Adjustment of Status Categories**

1.  **Adjustment Applicant under Section 245--(c)(9).**  File Form I-765 together with Form I-485, Application to Register Permanent Residence or Adjust Status, or if filing separately, submit a copy of your I-485 receipt notice or other evidence that your Form I-485 is pending.

    **NOTE:**  If you are an asylee or refugee and have applied to adjust to lawful permanent resident status on Form I-485, file Form I-765 under category (a)(5) as an asylee or (a)(3) as a refugee.  Do not file under eligibility category (c)(9).  You will need to pay the filing fee or obtain a fee waiver for Form I-765 if your Form I-485 is still pending with USCIS and this is not your first EAD as a refugee or asylee and you did not pay the Form I-485 filing fee for any reason.

2.  **Registry Applicant Based on Continuous Residence Since January 1, 1972--(c)(16).**  File Form I-765 together with your Form I-485 or, if filing separately, submit a copy of your Form I-485 receipt notice or other evidence that your Form I-485 is pending.

AR2022_300872

3. **Renewal EAD for National Interest Waiver Physicians:** If you are requesting a renewal EAD based on your pending adjustment of status application and an approved National Interest Waiver Physician petition, you must also include evidence of your meaningful progress toward completing the National Interest Waiver obligation (for example, documentation of employment in any period during the previous year, such as copies of W-2 forms). If you did not work as a National Interest Waiver Physician during any period of the previous year, you must explain why and provide a statement of future intent to work as a physician in a qualifying location.

## Other Categories

1. **Legalization Temporary Resident Pursuant to INA Sections 245A or 210--(a)(2).** File Form I-765 with a copy of your approval notice for Form I-687, Application for Status as a Temporary Resident Under Section 245A of the INA, or other evidence that your Form I-687 is approved; OR File Form I-765 with a copy of your approval notice for Form I-700, Application for Status as a Special Agricultural Worker, or other evidence that your Form I-700 is approved.

2. **N-8 or N-9 Nonimmigrant--(a)(7).** File Form I-765 with evidence of your lawful N nonimmigrant status (for example, your Form I-94, passport, or other travel document).

3. **Applicant for Cancellation of Removal--(c)(10).** File Form I-765 with evidence one of the following forms is pending with EOIR: EOIR-42A or EOIR-42B.

4. **Applicant for Legalization Pursuant to INA Section 210--(c)(20).** File Form I-765 with a copy of your receipt notice for Form I-700, Application for Status as a Temporary Resident Under Section 210 of the INA, or other evidence that your Form I-700 is pending.

5. **Applicant for Legalization Pursuant to INA Section 245A--(c)(22).** File Form I-765 with a copy of your receipt notice for Form I-687, Application for Status as a Temporary Resident Under Section 245A of the INA, or Form I-698, Application to Adjust Status from Temporary to Permanent Resident Under Section 245A of the INA, or other evidence that your Form I-687 or I-698 is pending.

6. **Parole--(c)(11).** File Form I-765 with a copy of your Form I-94, passport, or other travel document showing you were paroled into the United States for urgent humanitarian reasons or reasons of significant public benefit pursuant to INA 212(d)(5) (such as Cuban Family and Haitian Family Reunification Parole programs).

   **NOTE:** If you were paroled into the United States after having established a credible fear of persecution or torture pursuant to INA 235(b)(1)(A), you **are not eligible** for either an initial or renewal EAD under the (c)(11) eligibility category. You must wait 365 calendar days from the date you properly file and USCIS or the Immigration Court accepts your asylum application before you can request employment authorization under the (c)(8) eligibility category.

7. **Deferred Action--(c)(14).** File Form I-765 with a copy of the order, notice, or other document reflecting the grant of deferred action and proof that you have an economic necessity to work. We will consider whether you have an economic necessity to work by reviewing your current annual income, your current annual expenses, and the total current value of your assets. Provide this financial information on Form I-765WS, Form I-765 Worksheet. If you would like to provide an explanation, complete **Part 3. Explanation** of the worksheet. Supporting evidence is not required, but USCIS will accept and review any documentation that you submit. You do not need to include other household members' financial information to establish your own economic necessity.

8. **Consideration of Deferred Action for Childhood Arrivals--(c)(33).**

   A. You must file Form I-765 with Form I-821D, Consideration of Deferred Action for Childhood Arrivals, if you meet the guidelines described in the Form I-821D Instructions. Enter (c)(33) in **Part 2.**, **Item Number 27.**, as the eligibility category under which you are applying.

**(1)** You must file Form I-765 Worksheet to demonstrate that you have an economic necessity to work. We will consider whether you have an economic necessity to work by reviewing your current annual income, your current annual expenses, and the total current value of your assets. Provide this financial information on Form I-765WS. If you would like to provide an explanation, complete **Part 3. Explanation** of the worksheet. Supporting evidence is not required, but USCIS will accept and review any documentation that you submit. You do not need to include other household members' financial information to establish your own economic necessity.

**(2)** The filing fee for Form I-765 is based on the Consideration of Deferred Action for Childhood Arrivals category and the associated biometric services fee **cannot** be waived. However, we may waive the collection of certain biometrics.

9. **Final Order of Deportation or Removal, including Deferral of Removal under the Convention Against Torture--(c)(18).** File Form I-765 with a copy of the EOIR IJ's Order of Removal and Form I-220B, Order of Supervision (if any). Additional factors that may be considered include, but are not limited to, the following:

   **A.** Existence of a dependent spouse and/or children in the United States who rely on you for support;

   **B.** Existence of economic necessity to be employed; and

   **C.** Anticipated length of time before you can be removed from the United States.

10. **LIFE Legalization Applicant--(c)(24).** File Form I-765 with evidence that you were a Catholic Social Services (CSS), League of United Latin American Citizens (LULAC), or Zambrano class member applicant before October 1, 2000 and a copy of the Form I-797 Notice or other evidence that your Form I-485 is pending.

11. **T-1 Nonimmigrant--(a)(16).** If you are filing Form I-914, Application for T Nonimmigrant Status, and request an EAD as part of that application, you do not need to file Form I-765. If you are currently in T-1 nonimmigrant status and did not request an EAD when you filed your Form I-914, you may file Form I-765 to request an EAD. If you were granted T-1 nonimmigrant status and want to request a replacement of an EAD, file Form I-765 along with evidence of your T-1 nonimmigrant status (for example, an approval notice).

    If you have filed Form I-539 to extend your T-1 nonimmigrant status, you may file Form I-765 to request a renewal of your EAD, along with evidence of your T nonimmigrant status (for example, an approval notice). You may file Form I-765 together with Form I-539 or after we approve your Form I-539. If you file Form I-765 after we approve your Form I-539, submit a copy of your I-539 approval notice.

12. **T-2, T-3, T-4, T-5, or T-6 Nonimmigrant--(c)(25).** File Form I-765 along with proof of your derivative T nonimmigrant status. If you obtained derivative T nonimmigrant status while in the United States, you must submit a copy of the approval notice for your T nonimmigrant status. If you were admitted to the United States as a T nonimmigrant, you must submit a copy of your passport with your T nonimmigrant visa. If you were granted derivative T nonimmigrant status and want to request replacement of an EAD, file Form I-765 along with evidence of your derivative T nonimmigrant status (for example, an approval notice).

    If you (or the T-1 principal foreign national) filed Form I-539 to extend your T-2, T-3, T-4, T-5, or T-6 nonimmigrant status in conjunction with an extension of the principal T-1 nonimmigrant's status, you may file Form I-765 to request an initial or renewal EAD, along with evidence of your nonimmigrant status (for example, an approval notice or copy of your passport with your T nonimmigrant visa). You may also file Form I-765 together with Form I-539 or after we approve your Form I-539. If you file Form I-765 after we approve your Form I-539, submit a copy of your Form I-539 approval notice.

**NOTE:** Derivative family members of T-1 nonimmigrants living outside the United States are not eligible to receive an EAD until they lawfully enter the United States. If you are a derivative family member who is outside the United States, do not file Form I-765.

13. **T Nonimmigrant Adjustment of Status--(c)(9).**  If you filed Form I-485 to adjust your status from a T-1, T-2, T-3, T-4, T-5, or T-6 nonimmigrant to a lawful permanent resident, you may file Form I-765 together with Form I-485 if you are seeking an EAD.  You should also include evidence of your T nonimmigrant status (for example, an approval notice or copy of your passport with your T nonimmigrant visa).  If you file Form I-765 after filing Form I-485, submit a copy of your Form I-485 receipt notice.  While your Form I-485 is pending, we will extend T nonimmigrant status until a decision is made on your Form I-485.

14. **U-1 Nonimmigrant--(a)(19).**  If you are currently residing in the United States and your Form I-918, Petition for U Nonimmigrant Status, is approved, you will receive employment authorization incident to status and USCIS will send you an EAD as evidence of that authorization.  You do not need to file Form I-765.  If you resided outside the United States when your Form I-918 was approved, you must file Form I-765 with USCIS when you enter the United States. You must submit a copy of your passport with your U nonimmigrant visa.

If we granted your U nonimmigrant status and you want to request a replacement of an EAD, file Form I-765 along with evidence of your U nonimmigrant status (for example, an approval notice).

If you have filed Form I-539 to extend your U-1 nonimmigrant status, you may file Form I-765 to request a renewal of your EAD, along with evidence of your U-1 nonimmigrant status (for example, an approval notice).  You may file Form I-765 together with Form I-539, or after we approve your Form I-539.  If you file Form I-765 after we approve your Form I-539, submit a copy of your I-539 approval notice.

**NOTE:**  U-1 nonimmigrants living outside the United States are not eligible to receive an EAD until they lawfully enter the United States.  If you have an approved Form I-918 but are outside the United States, do not file Form I-765 until you have entered the United States.

**NOTE:**  If the statutory cap is reached within a fiscal year and USCIS uses the waiting list process described at 8 CFR 214.14(d)(2), U-1 petitioners for U nonimmigrant status in the United States can file Form I-765 to apply for an EAD based on deferred action ((c)(14)).  An application for employment authorization based on deferred action can only be approved after DHS has issued deferred action in your case, regardless of when Form I-765 is filed.

15. **U-2, U-3, U-4, or U-5--(a)(20).**  You may file Form I-765 at the same time as Form 918, Supplement A, Petition for Qualifying Family Member of U-1 Recipient, or you may file Form I-765 at a later time.  If USCIS has granted you derivative U nonimmigrant status, file Form I-765 along with proof of your derivative U nonimmigrant status.  If you obtained derivative U nonimmigrant status while in the United States, you must submit a copy of the approval notice for that status.  If you were admitted to the United States as a U nonimmigrant, you must submit a copy of your passport with your U nonimmigrant visa.

If you (or the principal U-1 nonimmigrant) filed Form I-539 to extend your U-2, U-3, U-4, or U-5 nonimmigrant status, you may file Form I-765 to request an initial or renewal EAD, along with evidence of your nonimmigrant status (for example, an approval notice or copy of your passport with your U nonimmigrant visa).  You may file Form I-765 together with Form I-539 or after we approve your Form I-539.  If you file Form I-765 after we approve your Form I-539, submit a copy of your Form I-539 approval notice.

**NOTE:**  Derivative family members of U-1 nonimmigrants living outside the United States are not eligible to receive an EAD until they lawfully enter the United States.  If you are a derivative family member who is outside the United States, do not file Form I-765.

**NOTE:**  If the statutory cap is reached within a fiscal year and USCIS uses the waiting list process described at 8 CFR 214.14(d)(2), derivative family members of U-1 petitioners for U nonimmigrant status in the United States can file Form I-765 to apply for an EAD based on deferred action ((c)(14)).  An application for employment authorization based on deferred action can only be approved after DHS has issued deferred action in your case, regardless of when Form I-765 is filed.

16. **U Nonimmigrant Adjustment of Status--(c)(9).** If you filed Form I-485 to adjust your status from a U-1, U-2, U-3, U-4 or U-5 Nonimmigrant to a lawful permanent resident, you may file Form I-765 along with Form I-485 if you are seeking an EAD. You should also include evidence of your U nonimmigrant status (for example, an approval notice or copy of your passport with your U nonimmigrant visa). If you file Form I-765 after filing your Form I-485, submit a copy of your Form I-485 receipt notice. While your Form I-485 is pending, we will extend your U nonimmigrant status until we make a decision on your Form I-485.

17. **VAWA Self-Petitioners--(c)(31).** If you are the principal beneficiary or derivative child of an approved VAWA self-petition, you are eligible for work authorization. If you are filing a Form I-360 VAWA self-petition, and request an initial EAD as the principal beneficiary of the self-petition, you do not need to file Form I-765. Principal beneficiaries of an approved VAWA self-petition seeking a renewal or replacement EAD and derivative children seeking an EAD must use Form I-765. File Form I-765 with evidence of the principal beneficiary's approved Form I-360 VAWA self-petition (for example, a copy of the VAWA self-petition approval notice).

18. **A-3 or G-5 Nonimmigrant--(c)(14).** If you have filed a pending civil action against your employer because your employer violated the terms of your employment contract or conditions of your employment, you may file Form I-765 to request deferred action and receive work authorization. File Form I-765 with a copy of the civil complaint filed in court and proof of lawful admission into the United States in A-3 or G-5 status (for example, a copy of your passport with your A-3 or G-5 nonimmigrant visa). If you are requesting renewal after your initial employment authorization is granted, file Form I-765 with evidence that the civil case is still pending (for example, a recent court docket update).

19. **Applicant for Commonwealth of the Northern Mariana Islands (CNMI) Long-Term Resident Status-- (c)(37).** You must file Form I-765 together with your Form I-955, Application for CNMI Long-Term Resident Status. If you do not submit your Form I-765 with all applicable fees together with your Form I-955, the entire submission will be rejected. A fee waiver is not available. If your Form I-955 is approved, you will receive an employment authorization document as evidence of your CNMI Long-Term Resident Status and evidence that you are authorized for employment in the CNMI incident to status.

---

## General Instructions

USCIS provides forms free of charge through the USCIS website. To view, print, or fill out our forms, you should use the latest version of Adobe Reader, which you can download for free at **http://get.adobe.com/reader/**. The USCIS Contact Center provides information in English and Spanish. For TTY (deaf or hard of hearing) call: **1-800-767-1833**.

**Signature.** Each application must be properly signed and filed. For all signatures on this application, USCIS will not accept a stamped or typewritten name in place of a signature. If you are under 14 years of age, your parent or legal guardian may sign the application on your behalf. A legal guardian may also sign for a mentally incompetent person.

**Validity of Signatures.** USCIS will consider a photocopied, faxed, or scanned copy of the original, handwritten signature valid for filing purposes. The photocopy, fax, or scan must be of the original document containing the handwritten, ink signature.

**Filing Fee.** Each application must be accompanied by the appropriate filing fee. (See the **What Is the Filing Fee** section of these Instructions.)

**Evidence.** At the time of filing, you must submit all evidence and supporting documents listed in these Instructions. If you do not have and cannot get a required document, you must demonstrate this and provide secondary evidence. If secondary evidence does not exist or is unavailable, you must demonstrate both the unavailability of the required document and the relevant secondary evidence and submit two or more sworn affidavits by people not named on this application who have direct knowledge of the event and circumstances.

**Biometric Services Appointment.** USCIS may require that you appear for an interview or provide biometrics (fingerprints, photograph, and/or signature) at any time to verify your identity, obtain additional information, and conduct background and security checks, including a check of criminal history records maintained by the Federal Bureau of Investigation (FBI), before making a decision on your application or petition. After USCIS receives your application and ensures it is complete, we will inform you in writing if you need to attend a biometric services appointment. If an appointment is necessary, the notice will provide you the location of your local or designated USCIS Application Support Center (ASC) and the date and time of your appointment or, if you are currently overseas, instruct you to contact a U.S. Embassy, U.S. Consulate, or USCIS office outside the United States to set up an appointment.

If you are required to provide biometrics, at your appointment you must sign an oath reaffirming that:

1.   You provided or authorized all information in the application;

2.   You reviewed and understood all of the information contained in, and submitted with, your application; and

3.   All of this information was complete, true, and correct at the time of filing.

If you fail to attend your biometric services appointment, USCIS may deny your application.

**Copies.** You should submit legible photocopies of documents requested, unless the Instructions specifically state that you must submit an original document. USCIS may request an original document at the time of filing or at any time during processing of an application or petition. If USCIS requests an original document from you, it will be returned to you after USCIS determines it no longer needs your original.

**NOTE:** If you submit original documents when not required or requested by USCIS, **your original documents may be immediately destroyed after we receive them.**

**Translations.** If you submit a document with information in a foreign language, you must also submit a full English translation. The translator must sign a certification that the English language translation is complete and accurate, and that he or she is competent to translate from the foreign language into English. The certification must include the translator's signature. DHS recommends the certification contain the translator's printed name, the signature date, and the translator's contact information.

**How To Fill Out Form I-765**

1.   Type or print legibly in black ink.

2.   If you need extra space to complete any item within this application, use the space provided in **Part 6. Additional Information** or attach a separate sheet of paper. Type or print your name and Alien Registration Number (A-Number) (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

3.   Answer all questions fully and accurately. If a question does not apply to you (for example, if you have never been married and the question asks, "Provide the name of your current spouse"), type or print "N/A" unless otherwise directed. If your answer to a question which requires a numeric response is zero or none (for example, "How many children do you have" or "How many times have you departed the United States"), type or print "None" unless otherwise directed.

| Specific Instructions |
| --- |

**Part 1.  Reason for Applying.**

You must select one **Item Number** that best describes your reason for applying:

**Item Number 1.a.**  Initial permission to accept employment.

**Item Number 1.b.**  Replacement of a lost, stolen, or damaged EAD, or correction of your EAD not due to USCIS error.

**NOTE:**  Replacement (correction) of an employment authorization document due to USCIS error does not require a new Form I-765 and filing fee.  Refer to **Replacement for Card Error** in the **What Is the Filing Fee** section of these Instructions for further details.

**Item Number 1.c.  Renewal of your permission to accept employment.**  If you select **Item Number 1.c.**, attach a copy of your previous EAD.

**Part 2.  Information About You**

**Item Numbers 1.a. - 1.c.  Your Full Legal Name.**  Provide your full legal name as shown on your birth certificate or legal change of name document in the spaces provided.

**Item Numbers 2.a. - 4.c.  Other Names Used.**  Provide all other names you have ever used, including aliases, maiden name, and nicknames.  If you need extra space to complete this section, use the space provided in **Part 6. Additional Information**.

**Item Numbers 5.a. - 5.f.  Your U.S. Mailing Address.**  You must provide a valid mailing address in the United States. You may list a valid U.S. residence, APO, or commercial address.  You may also list a U.S. Post Office address (PO Box) if that is how you receive your mail.  If your mail is sent to someone other than yourself, please include an "In Care Of Name" as part of your mailing address.  If your U.S. mailing address is in a U.S. territory and it contains an urbanization name, list the urbanization name in the "In Care Of Name" space provided.  We will send your EAD to this address.  Do not use the attorney's or other legal representative's address.

**NOTE:**  If you have a pending or approved Form I-360 VAWA self-petition, Form I-914, Application for T Nonimmigrant Status, or Form I-918, Petition for U Nonimmigrant Status, and do not feel safe receiving correspondence regarding this application at your residential address, provide a safe mailing address.  You may provide a post office box (PO Box) or the address of a friend, your attorney, a community-based organization that is helping you, or any other address where you can safely and punctually receive mail.  If an alternate or safe mailing address is not provided, USCIS may use the address of your attorney or preparer, if any.  If your safe mailing address is not the same as the address where you currently reside, provide your U.S. physical address in **Item Numbers 6.a. - 6.e.**

**Item Numbers 6. - 7.e.  U.S. Physical Address.**  Type or print your physical address in the spaces provided.

**Item Number 8.  Alien Registration Number (A-Number)** (if any).  An Alien Registration Number, otherwise known as an "A-Number," is typically issued to people who apply for, or are granted, certain immigration benefits.  In addition to USCIS; ICE, U.S. Customs and Border Protection (CBP), EOIR, and the DOS may also issue an A-Number to certain foreign nationals.  If you were issued an A-Number, type or print it in the spaces provided.  If you are renewing your EAD, this number may be listed as the USCIS Number on the front of the card.  If you have more than one A-Number, use the space provided in **Part 6. Additional Information** to provide the information.  If you do not have an A-Number or if you cannot remember it, leave this space blank.

**Item Number 9.  USCIS Online Account Number** (if any).  If you have previously filed an application or petition using the USCIS online filing system (previously called USCIS Electronic Immigration System (USCIS ELIS)), provide the USCIS Online Account Number you were issued by the system.  You can find your USCIS Online Account Number by logging in to your account and going to the profile page.  If you previously filed certain applications or petitions on a paper form through a USCIS Lockbox facility, you may have received a USCIS Online Account Access Notice issuing you a USCIS Online Account Number.  You may find your USCIS Online Account Number at the top of the notice.  The USCIS Online Account Number is not the same as an A-Number.  If you were issued a USCIS Online Account Number, enter it in the space provided.

**Item Number 10.  Gender.**  Select the box that indicates whether you are male or female.

**Item Number 11.  Marital Status.**  Select the box that describes the marital status you have on the date you file Form I-765.

**Item Numbers 12.  Previous Application for Employment Authorization from USCIS.**  If you have applied for employment authorization in the past, select "Yes" for **Item Number 12.**  Provide copies of your previous EADs, if available.

**Item Numbers 13.a. - 17.b.  Questions regarding Social Security Number (SSN).  Item Number 13.a.** asks you if the Social Security Administration (SSA) has ever officially issued you a Social Security card.  If the SSA ever issued a Social Security card to you in your name or a previously used name such as your maiden name, then you must enter the SSN from your card in **Item Number 13.b.**

If your request for employment authorization is approved, the SSA may assign you an SSN and issue you a Social Security card, or issue you a replacement card.  If you want the SSA to assign you a Social Security number and issue you a Social Security card, or issue you a new or replacement Social Security card, then answer "Yes" to both **Item Number 14.** and **Item Number 15.**  You must also provide your father's and mother's family and given names at birth in **Item Numbers 16.a. - 17.b.**  SSA will use **Item Numbers 16.a. -17.b.** in issuing you a Social Security card.

You are not required to request an SSN using this application.  Completing **Item Numbers 14. - 17.b.** is optional.  However, you must have an SSN properly assigned in your name to work in the United States.

**NOTE:**  If your employer uses E-Verify to confirm new employees' eligibility to legally work in the United States, the information you provide on Form I-9, Employment Eligibility Verification, will be compared to data in SSA and DHS databases.  Employees must have an SSN in order for E-Verify to confirm their eligibility to legally work in the United States.

**Item Number 18.a. - 18.b.  Country or Countries of Citizenship or Nationality.**  Type or print the name of the country or countries where you are currently a citizen or national.

1.  If you are stateless, type or print the name of the country where you were last a citizen or national.

2.  If you are a citizen or national of more than one country, type or print the name of the foreign country that issued your last passport.

**Item Numbers 19.a. - 19.c.  Place of Birth.**  Enter the name of the city, town, or village; state or province; and country where you were born.  Type or print the name of the country as it was named when you were born, even if the country's name has changed or the country no longer exists.

**Item Number 20.  Date of Birth.**  Enter your date of birth in mm/dd/yyyy format in the space provided.  For example, type or print October 5, 1967 as 10/05/1967.

**Item Numbers 21.a. - 21.e.  Form I-94 Arrival-Departure Record.**  If CBP or USCIS issued you a Form I-94, Arrival-Departure Record, provide your Form I-94 number.  The Form I-94 number also is known as the Departure Number on some versions of Form I-94.

**NOTE:**  If you were admitted to the United States by CBP at an airport or seaport after April 30, 2013, CBP may have issued you an electronic Form I-94 instead of a paper Form I-94.  You may visit the CBP website at **www.cbp.gov/i94** to obtain a paper version of an electronic Form I-94.  CBP does not charge a fee for this service.  Some travelers admitted to the United States at a land border, airport, or seaport, after April 30, 2013, with a passport or travel document, who were issued a paper Form I-94 by CBP, may also be able to obtain a replacement Form I-94 from the CBP website without charge.  If your Form I-94 cannot be obtained from the CBP website, it may be obtained by filing Form I-102, Application for Replacement/Initial Nonimmigrant Arrival-Departure Record, with USCIS.  USCIS **does** charge a fee for this service.

**Passport and Travel Document Numbers.**  If you used a passport or travel document to travel to the United States, enter either the passport or travel document information in the appropriate space on the application, even if the passport or travel document is currently expired.

AR2022_300879

**Item Number 22.  Date of Your Last Arrival Into the United States, On or About.**  Provide the date on which you last entered the United States in mm/dd/yyyy format.

**Item Number 23.  Place of Your Last Arrival Into the United States.**  Provide the location where you last entered the United States.

**Item Number 24.  Immigration Status at Your Last Arrival.**  Provide the letter and number that correlates with your status when you last entered the United States.  For example, if you last entered the United States as a **temporary visitor for pleasure**, **B-2**, type or print "B-2 visitor" in the space provided.

**Item Number 25.  Your Current Immigration Status or Category.**  Provide your current immigration status.  For example, if your current status is **student academic**, **F-1**, type or print "F-1 student" in the space provided.

**Item Number 26.  Student and Exchange Visitor Information System (SEVIS) Number** (if any).  If you were issued a SEVIS number, enter it in the space provided.

**Item Number 27.  Eligibility Category.**  Refer to the list of the eligibility categories in the **Who May File Form I-765** section of these Instructions.  Find your eligibility category, and enter it in the space provided.

**Item Numbers 28.a. - 28.c.  (c)(3)(C) STEM OPT Eligibility Category.**  If you entered eligibility category **(c)(3)(C)** in **Item Number 27.**, provide your degree level and major (for example, Bachelor's degree in English), your employer's name as listed in E-Verify, your employer's E-Verify Company Identification Number, or a valid E-Verify Client Company Identification Number in the spaces provided.

**Item Number 29.  (c)(26) Eligibility Category.**  If you entered eligibility category (c)(26) in **Item Number 27.**, provide the receipt number of your spouse's most recent Form I-797 Notice for Form I-129, Petition for a Nonimmigrant Worker, in the space provided.

**Item Number 30.  (c)(8) Eligibility Category.**  If you entered the eligibility category (c)(8) in **Item Number 27.**, provide an answer to the questions:

**Item Number 30.a.**  "Have you have **EVER** been arrested for and/or convicted of any crime?"  If you answered "Yes" to **Item Number 30.a.**, refer to **Special Filing Instructions for Those With Pending Asylum Applications (c)(8) in the Required Documentation** section of the Instructions for information about providing court dispositions.

**Item Number 30.b.  Lawful Entry.**  Select "Yes" if you entered the United States lawfully through a port of entry.  You **must** provide evidence of your lawful entry such as a Form I-94 or passport with entry stamp.

Select "No" if you **did not** enter the United States lawfully through a port of entry.  Complete **Item Numbers 30.c.** and **30.d. - 30.g.**

**NOTE:**  Your eligibility for an EAD under category (c)(8) requires that, after August 25, 2020 any entry into the United States was lawful and through a port of entry.  However, in limited circumstances, you may qualify for an exception to this requirement under 8 CFR 208.7(a)(1)(iii)(F).  In order for USCIS to determine whether you qualify for an exception, you must complete **Item Numbers 30.c.** and **30.d. - 30.g.**

**Item Number 30.c.  Presenting yourself to the Department of Homeland Security.**  Select "Yes" if you presented yourself to an officer or agent from the Department of Homeland Security (DHS) within 48 hours of your unlawful entry into the United States **and** expressed an intention to apply for asylum or expressed a fear of persecution or torture.  Presenting yourself to DHS includes presenting yourself to an officer or an agent from:  U.S. Customs and Border Protection, U.S. Border Patrol, U.S. Immigration and Customs Enforcement, U.S. Coast Guard, or U.S. Citizenship and Immigration Services.

Select "No" if you did not present yourself to an officer or agent from DHS within 48 hours of your unlawful entry into the United States **and** express an intention to apply for asylum or express a fear of persecution or torture.

**Item Number 30.d.  Date you presented yourself to DHS.**  Provide the date that you presented yourself to DHS.

**Item Number 30.e.  Location where you presented yourself to DHS.**  Provide the location where you presented yourself to DHS.

**Item Number 30.f.  Country of claimed persecution.**  Provide the name of the country from which you fear persecution or torture.

**Item Number 30.g.  Explanation of why you did not enter the United States lawfully through a port of entry.**  You must show good cause for failing to enter the United States lawfully at a port of entry.  See 8 CFR 208.7(a)(1)(iii)(F).  Examples of good cause include, but are not limited to, needing immediate medical attention or fleeing imminent serious harm.  Examples that do not constitute good cause include, but are not limited to, evasion of U.S. immigration officers, circumvention of the orderly processing of asylum seekers at a U.S. port of entry, or convenience.

**Item Number 31.a. - 31.b.  (c)(35) and (c)(36) Eligibility Category.**  If you entered the eligibility category **(c)(35)** or **(c)(36)** in **Item Number 27.**, please provide the receipt number of your Form I-797 Notice for Form I-140 or the receipt number of your spouse's or parent's Form I-797 Notice for Form I-140.  Provide an answer to the question "Have you **EVER** been arrested for and/or convicted of any crime?"

**NOTE:**  If you answered "Yes" to **Item Number 31.b.**, refer to **Employment-Based Nonimmigrant Categories**, **Items 8. - 9.** in the **Who May File Form I-765** section of the Instructions for information about providing court dispositions.

**Part 3.  Applicant's Statement, Contact Information, Declaration, Certification, and Signature**

**Item Numbers 1.a. - 7.b.**  Select the appropriate box to indicate whether you read this application yourself or whether you had an interpreter assist you.  If someone assisted you in completing the application, select the box indicating that you used a preparer.  Further, you must sign and date your application and provide your daytime telephone number, mobile telephone number (if any), and email address (if any).  Every application **MUST** contain the signature of the applicant (or parent or legal guardian, if applicable).  A stamped or typewritten name in place of a signature is not acceptable.

**Part 4.  Interpreter's Contact Information, Certification, and Signature**

**Item Numbers 1.a. - 7.b.**  If you used anyone as an interpreter to read the Instructions and questions on this application to you in a language in which you are fluent, the interpreter must fill out this section; provide his or her name, the name and address of his or her business or organization (if any), his or her daytime telephone number, his or her mobile telephone number (if any), and his or her email address (if any).  The interpreter must sign and date the application.

**Part 5.  Contact Information, Declaration, and Signature of the Person Preparing this Application, if Other Than the Applicant**

**Item Numbers 1.a. - 8.b.**  This section must contain the signature of the person who completed your application, if other than you, the applicant.  If the same individual acted as your interpreter **and** your preparer, that person should complete both **Part 4.** and **Part 5.**  If the person who completed this application is associated with a business or organization, that person should complete the business or organization name and address information.  Anyone who helped you complete this application **MUST** sign and date the application.  A stamped or typewritten name in place of a signature is not acceptable.  If the person who helped you prepare your application is an attorney or accredited representative, he or she may also need to submit a completed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, along with your application.

AR2022_300881

## Part 6. Additional Information

**Item Numbers 1.a. - 7.d.**  If you need extra space to provide any additional information within this application, use the space provided in **Part 6. Additional Information**.  If you need more space than what is provided in **Part 6.**, you may make copies of **Part 6.** to complete and file with your application, or attach a separate sheet of paper.  Type or print your name and A-Number (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

> **We recommend that you print or save a copy of your completed application to review in the future and for your records.**

## Required Documentation

You must submit all evidence requested in these Instructions with your application.  If you fail to submit required evidence, USCIS may reject or deny your application for failure to submit requested evidence or supporting documents in accordance with 8 CFR 103.2(b)(1) and these Instructions.

You must file all applications with the documents required below, the particular evidence required for each category listed in the **Who May File Form I-765** section of these Instructions, and the appropriate filing fee, if required.

If you are required to show economic necessity for your category, submit a list of your assets, income, and expenses.  Provide this financial information on Form I-765WS, Form I-765 Worksheet.  If you would like to provide an explanation, complete **Part 3. Explanation** of the worksheet.

Assemble the documents in the following order.

**1.**  The appropriate filing fee, if applicable.  See the **What Is the Filing Fee** section of these Instructions for details.

**2.**  Your properly signed application.

**3.**  You must submit the following documents.

   **A.**  A copy of at least one of the following documents:  Form I-94, Arrival-Departure Record (front and back), a printout of your electronic Form I-94 from **www.cbp.gov/i94**, passport, or other travel document.  If you are filing Form I-765 under the (c)(9) category, copies of any of the above are not required.

   **B.**  A copy of your last EAD (front and back).  If you were not previously issued an EAD, you must submit a copy of a government-issued identity document (such as a passport) showing your picture, name, and date of birth; a birth certificate with photo ID; a visa issued by a foreign consulate; or a national ID document with photo and/or fingerprint.  The identity document photocopy must clearly show your facial features and contain your biographical information.

   **NOTE:**  If you are filing under the (c)(33) category, you are not required to submit additional documentation beyond what you submit with Form I-821D under **2. What documents do you need to provide to prove identity** in the **Evidence for Initial Requests Only** section of the Form I-821D Instructions.

   **C.**  Photographs

   You **must** submit two identical color passport-style photographs of yourself taken recently.  The photos must have a white to off-white background, be printed on thin paper with a glossy finish, and be unmounted and unretouched.

The two identical passport-style photos must be 2 by 2 inches. The photos must be in color with a full face, frontal view, on a white to off-white background. Head height should measure 1 to 1 3/8 inches from the top of your hair to the bottom of your chin, and eye height is between 1 1/8 to 1 3/8 inches from the top of your eyes to the bottom of photo. Your head must be bare unless you are wearing headwear as required by a religious denomination of which you are a member. Using a pencil or felt pen, lightly print your name and A-Number (if any) on the back of the photo.

## What Is the Filing Fee?

The filing fee for Form I-765 is **$410**.

**NOTE:** The filing fee is not refundable, regardless of any action USCIS takes on this application. **DO NOT MAIL CASH.** You must submit all fees in the exact amounts.

**Special Instructions for TPS Applicants.** If you are requesting an EAD as an initial TPS applicant, you must pay the Form I-765 filing fee, unless you are under 14 years of age or over 65 years of age. If you are a TPS beneficiary requesting an EAD when filing for TPS re-registration, you must pay the Form I-765 filing fee, regardless of your age.

**Special Instructions for Those With Pending Asylum Applications--(c)(8).** All applicants for an initial or renewal EAD under the (c)(8) eligibility category must submit biometrics and pay the **$85** biometric services fee. If you fail to appear for your biometric services appointment, you may be ineligible for employment authorization.

**Special Instructions for Deferred Action for Childhood Arrivals--(c)(33).** All requestors under this category must pay the biometric services fee of **$85**. The biometric services fee and the filing fee for this application cannot be waived.

**Special Instructions for Beneficiaries of an Approved Employment-Based Immigrant Petition--(c)(35) and Spouses or Children of a Principal Beneficiary of an Approved Immigrant Petition--(c)(36).** All applicants under these categories must submit biometrics. An additional biometric services fee of **$85** is required for applicants 14 to 79 years of age, unless waived.

**Special Instructions for Applicants for Commonwealth of the Northern Mariana Islands (CNMI) Long-Term Resident Status--(c)(37).** All applicants under this category must pay the biometric services fee of $85. The biometric services fee and the filing fee for the I-765 application cannot be waived.

**Exceptions**

**Initial EAD.** If this is your initial application and you are applying under one of the following categories, a filing fee is **not** required for:

1.  (a)(3) Refugee;

2.  (a)(4) Paroled as Refugee;

3.  (a)(5) Asylee;

4.  (a)(7) N-8 or N-9 nonimmigrant;

5.  (a)(8) Citizen of Micronesia, Marshall Islands, or Palau;

6.  (a)(10) Granted Withholding of Deportation;

7.  (a)(16) Victim of Severe Form of Trafficking (T-1 Nonimmigrant);

8.  (a)(12) or (c)(19) Temporary Protected Status if you are filing an initial TPS application and you are under 14 years of age or over 65 years of age. All applicants for TPS re-registration who want an EAD must pay the filing fee, unless granted a fee waiver;

9.  (a)(19) Victim of Qualifying Criminal Activity (U-1 Nonimmigrant);

10. (c)(1), (c)(4), or (c)(7) Dependent of certain foreign government, international organization, or NATO personnel;

**AR2022_300883**

**11.** (c)(8) Applicant for Asylum and Withholding of Deportation and Removal (an applicant filing under the special ABC procedures must pay the filing fee);

**12.** (c)(9) or (c)(16) Any current Adjustment of Status or Registry applicant who filed Form I-485 on or after July 30, 2007, and paid the appropriate Form I-485 filing fee.  If you file Form I-765 separately from your Form I-485, you must also submit a copy of your Form I-797C Notice for Form I-485, as evidence of filing Form I-485 on or after July 30, 2007, and payment of the appropriate filing fee.  If you did not pay the appropriate Form I-485 filing fee because your filing fee was waived or you are exempt from paying it, you must pay the Form I-765 filing fee or request that the filing fee be waived; and

**13.** (c)(31) VAWA Self-Petitioner.

**Renewal EAD.**  If this is a renewal application and you are applying under one of the following categories, a filing fee is **not** required for:

**1.** (a)(8) Citizen of Micronesia, Marshall Islands, or Palau;

**2.** (a)(10) Granted Withholding of Deportation;

**3.** (c)(l), (c)(4), or (c)(7) Dependent of certain foreign government, international organization, or NATO personnel; and

**4.** (c)(9) or (c)(16) Any current Adjustment of Status or Registry applicant who filed for adjustment of status on or after July 30, 2007, and paid the appropriate Form I-485 filing fee.  If you file Form I-765 separately from your Form I-485, you must also submit a copy of your Form I-797C Notice for Form I-485, as evidence of filing Form I-485 on or after July 30, 2007, and payment of the appropriate form filing fee.  If you did not pay the appropriate Form I-485 filing fee because your filing fee was waived or you are exempt from paying it, you must pay the Form I-765 filing fee or request that the filing fee be waived.

**Replacement for Lost, Stolen, or Damaged EAD.**  If you are requesting a replacement EAD because your previously issued card was lost, stolen, or damaged, but has not expired, you must pay the filing fee unless you have filed for adjustment of status on or after July 30, 2007 and paid the Form I-485 filing fee.  If you did not pay the Form I-485 filing fee because your filing fee was waived or you are exempt from paying it, you must pay the Form I-765 filing fee or request that the filing fee be waived.  See Form I-912 at **www.uscis.gov/i-912**.

**Replacement for Card Error**

**1.** If the card we issued to you contains incorrect information that is not attributed to our error, you must submit a new Form I-765 and filing fee, unless you have a pending Form I-485 and paid the Form I-485 filing fee.  If you did not pay the appropriate Form I-485 filing fee because your filing fee was waived or you are exempt from paying it, you must pay the Form I-765 filing fee or request that the filing fee be waived.  You must include the card containing the error when you submit the new Form I-765.

**2.** If the card we issued to you contains incorrect information that is attributed to our error, you do not need to file a new Form I-765 and filing fee.  Instead, you must submit a letter explaining the error, along with the card containing the error to the service center or National Benefits Center that approved your last Form I-765.

**Payments by Check or Money Order**

**Use the following guidelines when you prepare your check or money order for the Form I-765 filing fee:**

**1.** The check or money order must be drawn on a bank or other financial institution located in the United States and must be payable in U.S. currency; **and**

**2.** Make the check or money order payable to **U.S. Department of Homeland Security.**

**NOTE:**  Spell out U.S. Department of Homeland Security; do not use the initials "USDHS" or "DHS."

**NOTE:**  If you filed Form I-485 on or after July 30, 2007, and you paid the appropriate Form I-485 filing fee, no filing fee is required to request employment authorization on Form I-765.  You may file Form I-765 with Form I-485, or you may submit Form I-765 at a later date.  If you file Form I-765 separately, you must also submit a copy of your Form I-797C Notice as evidence of filing Form I-485 on or after July 30, 2007 and paying the filing fee.

If you did not pay the appropriate Form I-485 filing fee because your filing fee was waived or you are exempt from paying it, you must pay the Form I-765 filing fee or request that the filing fee be waived.

**Notice to Those Paying by Check.**  If you send USCIS a check, we will convert it into an electronic funds transfer (EFT).  This means we will copy your check and use the account information on it to electronically debit your account for the amount of the check.  The debit from your account will usually take 24 hours and your bank will show it on your regular account statement.

You will not receive your original check back.  We will destroy your original check, but will keep a copy of it.  If USCIS cannot process the EFT for technical reasons, you authorize us to process the copy in place of your original check.  If your check is returned as unpayable, we will re-submit the payment to the financial institution one time.  If the check is returned as unpayable a second time, we will reject your application and charge you a returned check fee.

**Payments by Credit Card**

If you are filing your form at a USCIS Lockbox facility, you can pay your filing fee and biometric services fee (if applicable) using a credit card.  Please see Form G-1450, Authorization for Credit Card Transactions, at **www.uscis.gov/G-1450** for more information.

**How To Check If the Fees Are Correct**

Form I-765's filing fee is current as of the edition date in the lower left corner of this page.  However, because USCIS fees change periodically, you can verify that the fee is correct by following one of the steps below.

1.  Visit the USCIS website at **www.uscis.gov**, select "FORMS," and check the appropriate fee; or

2.  Call the USCIS National Customer Service Center at **1-800-375-5283** and ask for fee information.  For TTY (deaf or hard of hearing) call:  **1-800-767-1833**.

**Fee Waiver**

You may be eligible for a fee waiver under 8 CFR 103.7(c).  If you believe you are eligible for a fee waiver, complete Form I-912, Request for Fee Waiver (or a written request), and submit it and any required evidence of your inability to pay the filing fee with this application.  You can review the fee waiver guidance at **www.uscis.gov/feewaiver**.

| Where to File? |
| --- |

Please see our website at **www.uscis.gov/I-765** or call our National Customer Service Center at **1-800-375-5283** for the most current information about where to file this application.  For TTY (deaf or hard of hearing) call:  **1-800-767-1833**.

If you are requesting an EAD as an initial TPS applicant or a TPS beneficiary, see the Form I-821 Instructions and the most recent Federal Register notice regarding a TPS designation, re-designation, or extension for your country for additional guidance and filing location.  You can find information on countries designated for TPS on our website at **www.uscis.gov/tps**.

## Address Change

An applicant who is not a U.S. citizen must notify USCIS of his or her new address within 10 days of moving from his or her previous residence.  For information on filing a change of address, go to the USCIS website at **www.uscis.gov/addresschange** or contact the USCIS National Customer Service Center at **1-800-375-5283**.  For TTY (deaf or hard of hearing) call: **1-800-767-1833**.

**NOTE:**  Do not submit a change of address request to the USCIS Lockbox facilities because the Lockbox does not process change of address requests.

## Processing  Information

You must have a United States address to file this application.

**Initial processing.**  Once USCIS accepts your application, we will check it for completeness.  If you do not completely fill out this application, you will not establish a basis for your eligibility and USCIS may reject or deny your application.

**Requests for More Information.**  USCIS may request that you provide more information or evidence to support your application.  We may also request that you provide the originals of any copies you submit.  If we request an original document from you, it will be returned to you after USCIS determines it no longer needs your original.

**Requests for Interview.**  We may request that you appear at a USCIS office for an interview based on your application.  At the time of any interview or other appearance at a USCIS office, we may require that you provide your biometrics to verify your identity and/or update background and security checks.

**Decision.**  The decision on Form I-765 involves a determination of whether you have established eligibility for the immigration benefit you are seeking.  USCIS will notify you of the decision in writing.

**Approval.**  If your application is approved, we will either mail your EAD to you or we may require you to visit your local USCIS office to pick it up.

**Denial.**  If USCIS cannot approve your application, you will receive a written notice explaining the basis of your denial.

AR2022_300886

## USCIS Forms and Information

To ensure you are using the latest version of this application, visit the USCIS website at **www.uscis.gov** where you can obtain the latest USCIS forms and immigration-related information.  The USCIS Contact Center provides information in English and Spanish.  For TTY (deaf or hard of hearing) call:  **1-800-767-1833**.

Instead of waiting in line for assistance at your local USCIS office, you can schedule an appointment online at **www.uscis.gov**.  Select "Make an Appointment" and follow the screen prompts to set up your appointment.  Once you finish scheduling an appointment, the system will generate an appointment notice for you.

## Penalties

If you knowingly and willfully falsify or conceal a material fact or submit a false document with your Form I-765, we will deny your Form I-765 and may deny any other immigration benefit.  In addition, you will face severe penalties provided by law and may be subject to criminal prosecution.

## SSA Privacy Act Statement

Sections 205(c) and 702 of the Social Security Act authorizes SSA to collect information to assign you an SSN and issue a Social Security card.  The information you furnish on this application is voluntary.  However, failure to provide the requested information may prevent SSA from issuing you an SSN and Social Security card.  SSA will maintain the information used to assign you an SSN and issue you a Social Security card in SSA's system of records [Master Files of Social Security Number (SSN) Holders and SSN Applications, 60-0058].  Complete lists of approved routine uses for the information used to assign you an SSN and issue you a Social Security card are available in the System of Records Notice 60-0058, available at **www.ssa.gov**.

## DHS Privacy Notice

**AUTHORITIES:**  The information requested on this application, and the associated evidence, is collected under the Immigration and Nationality Act, 8 U.S.C. section 1324a, and 8 CFR 274a.13.

**PURPOSE:**  The primary purpose for providing the requested information on this application is to determine eligibility for certain aliens who are temporarily in the United States requesting an Employment Authorization Document.  DHS uses the information you provide to grant or deny the benefit you are seeking.

**DISCLOSURE:**  The information you provide is voluntary.  However, failure to provide the requested information, including your Social Security number, and any requested evidence may delay a final decision or result in the denial of your application.

**ROUTINE USES:**  DHS may, where allowable under relevant confidentiality provisions, share the information you provide on this application and any additional requested evidence with other Federal, state, local, and foreign government agencies and authorized organizations.  DHS follows approved routine uses, as described in the associated published system of records notices [DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System; DHS/USCIS-007 Benefit Information System; DHS/USCIS-010 Asylum Information and Pre-Screening; and, DHS/ USCIS-017 Refugee Case Processing and Security Screening Information System; DHS/USCIS-018 Immigration Biometric and Background Check] and the published privacy impact assessments [DHS/USCIS/PIA-016(a) Computer Linked Application Information Management System and Associated Systems; DHS/USCIS/PIA-027 Asylum Division; DHS/USCIS/PIA-056 USCIS Electronic Immigration System; and DHS/USCIS/PIA-068 Refugee Case Processing and Security Vetting], which can be found at **www.dhs.gov/privacy**.  DHS may also share this information as appropriate for law enforcement purposes or in the interest of national security.

---

| Paperwork Reduction Act |
| --- |

An agency may not conduct or sponsor an information collection, and a person is not required to respond to a collection of information, unless it displays a currently valid Office of Management and Budget (OMB) control number.  The public reporting burden for this collection of information is estimated at 4 hours and 45 minutes per response, including the time for reviewing instructions, gathering the required documentation and information, completing the application, preparing statements, attaching necessary documentation, and submitting the application.  The collection of biometrics is estimated to require 1 hour and 10 minutes.  The public reporting burden for the collection of information for Form I-765WS is estimated at 30 minutes per response, including the time for reviewing instructions, gathering the required documentation and information, completing the application, preparing statements, attaching necessary documentation, and submitting the application.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to:  U.S. Citizenship and Immigration Services, Regulatory Coordination Division, Office of Policy and Strategy, 20 Massachusetts Ave NW, Washington, DC 20529-2140; OMB No. 1615-0040.  **Do not mail your completed Form I-765 to this address.**

OMB No. 1615-0040

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Instructions for I-765, Application for Employment Authorization

## Instructions

Read these instructions carefully to properly complete this form. If you need more space to complete an answer, use a separate sheet of paper. Write your name and Alien Registration Number (A-Number), if any, at the top of each sheet of paper and indicate the part and number of the item to which the answer refers.

The filing addresses provided on this form reflect the most current information as of the date this form was last printed. If you are filing Form I-765 more than 30 days after the latest edition date shown in the lower right-hand corner, visit our Web site at www.uscis.gov before you file, and check the "FORMS" page to confirm the correct filing address and version currently in use. Check the edition date located in the lower right-hand corner of the form. If the edition date on your Form I-765 matches the edition date listed for Form I-765 on the online Forms page, your version is current and will be accepted by USCIS. If the edition date on the online version is later, download a copy and use the online version. If you do not have Internet access, call the National Customer Service Center at 1-800-375-5283 to verify the current filing address and edition date. **Improperly filed forms will be rejected and the fee returned, with instructions to resubmit the entire filing using the current form instructions.**

### Index

|  | Page No. |
|---|---|
| What Is the Purpose of This Form? | 1 |
| Who May File This Form I-765? | 1 |
| Required Documentation | 6 |
| What Is the Filing Fee? | 7 |
| Where to File? | 8 |
| Processing Information | 11 |

### What Is the Purpose of This Form?

Certain aliens who are temporarily in the United States may file Form I-765, Application for Employment Authorization, to request an Employment Authorization Document (EAD). Other aliens who are authorized to work in the United States without restrictions must also use this form to apply to USCIS for a document that shows such authorization. Review **Eligibility Categories** to determine whether you should use this form.

If you are a lawful permanent resident, a conditional resident, or a nonimmigrant authorized to be employed with a specific employer under 8 CFR 274a.12(b), do **not** use this form.

### Definitions

**Employment Authorization Document (EAD):** Form I-688, Form I-688A, Form I-688B, Form I-766, or any successor document issued by USCIS as evidence that the holder is authorized to work in the United States.

**Renewal EAD:** An EAD issued to an eligible applicant upon the expiration of a previous EAD issued under the same category.

**Replacement EAD:** An EAD issued to an eligible applicant when the previously issued EAD has been lost, stolen, mutilated, or contains erroneous information, such as a misspelled name.

**Interim EAD:** An EAD issued to an eligible applicant when USCIS has failed to adjudicate an application within 90 days of a properly filed EAD application, or within 30 days of a properly filed initial EAD application based on an asylum application filed on or after January 4, 1995. The interim EAD will be granted for a period not to exceed 240 days and is subject to the conditions noted on the document.

### Who May File This Form I-765?

USCIS adjudicates a request for employment authorization by determining whether an applicant has submitted the required information and documentation, and whether the applicant is eligible. In order to determine your eligibility, you must identify the category in which you are eligible and fill in that category in **Question 16** on Form I-765. Enter only **one** of the following category numbers on the application form. For example, if you are a refugee applying for an EAD, write **"(a) (3)"** at **Question 16**.

For easier reference, the categories are subdivided as follows:

|  | Page No. |
|---|---|
| Asylee/Refugee and Their Spouses and Children | 2 |
| Nationality Categories | 2 |
| Foreign Students | 3 |

Eligible Dependents of Employees of Diplomatic
Missions, International Organization, or NATO ......... 3

Employment-Based Nonimmigrants ........................... 3

Family-Based Nonimmigrants  ..................................... 4

Adjustment-of-Status Categories.................................. 4

Other Categories        ................................................. 5

## 1.  Asylee/Refugee Categories

**A. Refugee--(a)(3).** File Form I-765 with either a copy
of your Form I-590, Registration for Classification as
Refugee, approval letter, or a copy of a Form I-730,
Refugee/Asylee Relative Petition, approval notice.

**B. Paroled as a Refugee--(a)(4).** File Form I-765 with
a copy of your Form I-94, Arrival-Departure Record.

**C. Asylee (Granted Asylum)--(a)(5).** File Form
I-765 with a copy of the USCIS letter, or judge's
decision, granting you asylum. It is not necessary to
apply for an EAD as an asylee until 90 days before the
expiration of your current EAD.

**D. Asylum Applicant (With a Pending Asylum
Application) Who Filed for Asylum on or
After January 4, 1995--(c)(8).** For specific
instructions for applicants with pending asylum
claims, see Page 6.

## 2.  Nationality Categories

**A. Citizen of Micronesia, the Marshall Islands, or
Palau--(a)(8).** File Form I-765 if you were admitted
to the United States as a citizen of the Federated States
of Micronesia (CFA/FSM), the Marshall Islands
(CFA/MIS), or Palau under agreements between the
United States and the former trust territories.

**B. Deferred Enforced Departure (DED) /
Extended Voluntary Departure--(a)(11).** File
Form I-765 with evidence of your identity and
nationality.

**C. Temporary Protected Status (TPS)--(a)(12).**
You **must** file a Form I-765 with Form I-821,
**Application for Temporary Protected Status,** for
each applicant, regardless of age, even if you are not
requesting employment authorization. (Only those
applicants requesting employment authorization must
pay the fee for Form I-765.)  If you are filing for an
initial EAD based on your TPS status, include
evidence of identity and nationality as required by the
Form I-821 instructions.  Read the Form I-821
instructions for additional guidance and filing location.

If you have been granted TPS by an immigration
judge (IJ) or the Board of Immigration Appeals
(BIA) and are requesting your first EAD, you must
submit evidence of your IJ or BIA grant of TPS with
your application for an EAD along with  a copy of
your I-821 application that the IJ or BIA approved.
You must also follow the instructions for filing your
application as described in the most recent TPS
*Federal Register* notice regarding a TPS designation
or extension for your country.  As further instructed
in those notices, once you receive your I-797
application receipt notice, you must also send an e-
mail to tpsijgrant.vsc@dhs.gov with the following
information:   Your name; your A number; your date
of birth; the receipt number for your application;
and the date you were granted TPS.

**D. Temporary Treatment Benefits--(c)(19).**  For an
EAD based on 8 CFR 244.5, include evidence of
nationality and identity as required by the Form I-821
instructions.

1. Extension of TPS status: Include a copy (front and
back) of your last available TPS document: EAD,
Form I-94, or approval notice.

2. Registration for TPS only without employment
authorization: File Form I-765, Form I-821, and a
letter indicating that this form is for registration
purposes only. No fee is required for Form I-765
filed as part of TPS registration. (Form I-821 has
separate fee requirements.)

**E. NACARA Section 203 Applicants Who Are
Eligible to Apply for NACARA Relief With
USCIS--(c)(10).**   See the instructions to Form I-881,
Application for Suspension of Deportation or Special
Rule Cancellation of Removal, to determine if you are
eligible to apply to USCIS for NACARA 203 relief.

If you are eligible, you may file a Form I-765 with the
Form I-881.  See Instructions to Form I-881 for filing
location.  If you file the Form I-765 separately from the
Form I-881 see "Where to File?" instructions.
Your response to Question 16 on the Form I-765 must
be "(c)(10)."

You may be eligible for a fee waiver under 8 CFR
103.7(c) if you are filing for an EAD related to your
application or grant of TPS.

**F. Dependent of TECRO E-1 Nonimmigrant--(c)
(2).**  File Form I-765 with the required certification
from the American Institute in Taiwan if you are the
spouse or unmarried dependent son or daughter of an
E-1 employee of the Taipei Economic and Cultural
Representative Office.

### 3. Foreign Students

**A. F-1 Student Seeking Optional Practical Training in an Occupation Directly Related to Studies:  (c)(3)(A)  - Pre-completion Optional Practical Training; (c)(3)(B) - Post-completion Optional Practical Training; (c)(3)(C)  - 17-month extension for STEM Students (Students With a degree in Science, Technology, Engineering, or Mathematics).** File Form I-765 with a Certificate of Eligibility of Nonimmigrant (F-1) Student Status (Form I-20 A-B/I-20 ID) endorsed by a Designated School Official within the past 30 days.  If you are a STEM student requesting a 17-month extension under the eligibility code (c)(3)(C), you must also submit a copy of your degree and the employer name as listed in E-Verify, along with the E-Verify Company Identification Number, or a valid E-Verify Client Company Identification Number for the employer with whom you are seeking the 17-month OPT extension. This information must be provided in Item 17 of the form.

**B. F-1 Student Offered Off-Campus Employment Under the Sponsorship of a Qualifying International Organization--(c)(3)(ii).**  File Form I-765 with the international organization's letter of certification that the proposed employment is within the scope of its sponsorship, and a Certificate of Eligibility of Nonimmigrant (F-1) Student Status -- For Academic and Language Students (Form I-20 A-B/ -20 ID) endorsed by the Designated School Official within the past 30 days.

**C. F-1 Student Seeking Off-Campus Employment Due to Severe Economic Hardship--(c)(3)(iii).**  File Form I-765 with Form I-20 A-B/I-20 ID, Certificate of Eligibility of Nonimmigrant (F-1) Student Status -- For Academic and Language Students, and any evidence you wish to submit, such as affidavits, that detail the unforeseen economic circumstances that cause your request, and evidence that you have tried to find off-campus employment with an employer who has filed a labor and wage attestation.

**D. J-2 Spouse or Minor Child of an Exchange Visitor--(c)(5).** File Form I-765 with a copy of your J-1 (principal alien's) Certificate of Eligibility for Exchange Visitor (J-1) Status (Form IAP-66). You must submit a written statement with any supporting evidence showing that your employment is not necessary to support the J-1 but is for other purposes.

**E. M-1 Student Seeking Practical Training After Completing Studies--(c)(6).**  File Form I-765 with a completed Form I-539, Application to Change/ Extend Nonimmigrant Status, according to the filing instructions for Form I-539. You must also include Form I-20 M-N, Certificate of Eligibility for Nonimmigrant (M-1) Student Status -- For Vocational Students endorsed by the Designated School Official within the past 30 days, with your application.

### 4. Eligible Dependents of Employees of Diplomatic Missions, International Organizations, or NATO

**A. Dependent of A-1 or A-2 Foreign Government Officials--(c)(1).** Submit Form I-765 with Form I-566, Interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/ Adjustment to/from A, G, or NATO Status, Dependent Employment Authorization, through your diplomatic mission to the Department of State (DOS).  The DOS will forward all favorably endorsed applications directly to the Nebraska Service Center for adjudication.

**B. Dependent of G-1, G-3 or G-4 Nonimmigrant-- (c)(4).** Submit Form I-765 with Form I-566, Interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/ Adjustment to/from A, G, or NATO Status, Dependent Employment Authorization, through your international organization to the Department of State (DOS). (In New York City, the United Nations (UN) and UN missions should submit such applications to the United States Mission to the UN (USUN).)  The DOS or USUN will forward all favorably endorsed applications directly to the Nebraska Service Center for adjudication.

**C. Dependent of NATO-1 Through NATO-6--(c) (7).**  Submit Form I-765 with Form I-566, Interagency Record of Request-A, G, or NATO Dependent Employment Authorization or Change/Adjustment to/ from A, G, or NATO Status, Dependent Employment Authorization, to NATO  SACLANT, 7857 Blandy Road, C-027, Suite 100, Norfolk, VA 23551-2490. NATO/SACLANT will forward all favorably endorsed applications directly to the Nebraska Service Center for adjudication.

### 5. Employment-Based Nonimmigrant Categories

**A. B-1 Nonimmigrant Who Is the Personal or Domestic Servant of a Nonimmigrant Employer--(c)(17)(i).**  File Form I-765 with:

1. Evidence from your employer that he or she is a B, E, F, H, I, J, L, M, O, P, R, or TN nonimmigrant and you were employed for at least one year by the employer before the employer entered the United States, or your employer regularly employs personal and domestic servants and has done so for a period of years before coming to the United States; and

2. Evidence that you have either worked for this employer as a personal or domestic servant for at least one year, or evidence that you have at least one year's experience as a personal or domestic servant; and