## Narcotics Enforcement

### FY 2021 Total

| | |
|---|---|
| Cases Initiated | 11,230 |
| Criminal Arrests | 12,920 |
| Indictments | 7,914 |
| Convictions | 4,925 |
| Opioids Seized (lbs.) | 23,632 |
| Fentanyl Seized (lbs.) | 14,530 |
| Heroin Seized (lbs.) | 8,793 |
| Cocaine Seized (lbs.) | 855,780 |
| Methamphetamine Seized (lbs.) | 234,623 |
| Total Pounds of Narcotics Seized (lbs.) | 2,458,989 |
| Currency & Assets Seized - Narcotics Investigations | $188,528,949 |

## Identity and Benefit Fraud - 35 Document and Benefit Fraud Task Forces Nationwide

### FY 2021 Total

| | |
|---|---|
| Cases Initiated | 1,616 |
| Criminal Arrests | 888 |
| Indictments | 669 |
| Convictions | 470 |

## Human Trafficking

### FY 2021 Total

| | |
|---|---|
| Cases Initiated | 1,111 |
| Criminal Arrests | 2,360 |
| Indictments | 891 |
| Convictions | 349 |
| Human Trafficking Victims Assisted | 728 |

## Border Enforcement Security Task Forces (BESTs) - 79 BESTs Nationwide

### FY 2021 Total

| | |
|---|---|
| Cases Initiated | 5,671 |
| Criminal Arrests | 6,431 |
| Indictments | 3,323 |
| Convictions | 2,014 |
| Currency and Assets Seized - BEST Investigations | $205,728,533 |
| Admin Arrests | 3,189 |

19

| Labor Exploitation | |
|---|---|
| FY 2021 Total | |
| Cases Initiated | 625 |
| Criminal Arrests | 311 |
| Admin Arrests | 147 |
| Management Indictments | 31 |
| Management Convictions | 23 |
| Form I-9 Inspections | 203 |

| Human Smuggling | |
|---|---|
| FY 2021 Total | |
| Cases Initiated | 2,266 |
| Criminal Arrests | 4,264 |
| Indictments | 1,495 |
| Convictions | 1,334 |
| Admin Arrests | 6,556 |

| Cybercrimes | |
|---|---|
| FY 2021 Total | |
| Cases Initiated | 996 |
| Criminal Arrests | 496 |
| Indictments | 337 |
| Convictions | 131 |
| Personnel Trained | 8,007 |

| Victim Assistance | |
|---|---|
| FY 2021 Total | |
| Victims Assisted | 2,380 |

Note: The HSI data in this document is a "snapshot" of information available at the time the report was compiled. HSI enforcement and program data is continuously updated, which may result in changes to HSI data previously reported. Each enforcement category records the activity under its investigative discipline. Some data may be included under several categories due to the multidisciplinary nature of many HSI investigations. The General Enforcement Statistics section represents all of HSI and records cumulative totals. Statistics recorded as "N/A" were not included in the FY 2020 year-end statistics snapshot.

AR2022_301592



**OFFICE OF THE PRINCIPAL LEGAL ADVISOR**

## Mission

The ICE Office of the Principal Legal Advisor (OPLA) protects the homeland by diligently litigating cases while adhering to the highest standards of professional conduct, providing timely and accurate legal advice, and optimizing resources to advance the DHS and ICE mission.

## FY 2021 In Review

OPLA is the largest legal component within DHS, with close to 1,400 attorneys and 300 support staff working in 83 locations throughout the United States and at ICE Headquarters. OPLA attorneys represent DHS in administrative immigration proceedings before the DOJ Executive Office for Immigration Review (EOIR), provide legal advice, prudential counsel, and training on a wide range of operational and administrative law topics and cases, and partner with DOJ as agency counsel in federal litigation implicating ICE equities and through a Special Assistant United States Attorney (SAUSA) program.

While facing continued resource challenges in FY 2021 due to further increases in the number of immigration judges and cases pending before EOIR, OPLA continued to discharge its responsibility under 6 U.S.C. § 252(c) to serve as DHS's representative in removal proceedings before EOIR. In FY 2021, OPLA attorneys reviewed 47,338 Notices to Appear issued by DHS immigration officers, while representing DHS in more than 247,452 removal hearings before EOIR and supporting the completion of more than 58,965 cases. OPLA's appellate advocacy efforts were also instrumental in securing important Board of Immigration Appeals precedent, dealing with such issues as the removal of human rights violators, the proper use of expert testimony before

21

the immigration courts, and whether certain crimes subject noncitizens to removal from the United States.

To promote efficient docket management in partnership with EOIR and to advance DHS and ICE civil immigration enforcement priorities, OPLA implemented updated prosecutorial discretion (PD) guidance during FY 2021. As part of this implementation, OPLA attorneys reviewed more than 25,972 requests for PD in the forms of dismissal or administrative closure of removal proceedings. OPLA exercised PD by agreeing to dismissal or administrative closure in approximately 18,809 cases, and by the end of FY 2021, more than 8,500 of those cases had been ordered dismissed or administratively closed by EOIR.

At the end of FY 2021, OPLA had six full-time SAUSAs assigned on detail to DOJ to prosecute criminal immigration violations in federal court. OPLA SAUSAs processed more than 557 cases received by the U.S. Attorney's Offices for potential prosecution, many involving complex HSI prosecutions, including for child pornography, drug trafficking, counterfeit identity documents, and a death penalty-eligible human smuggling case. In the course of their efforts, OPLA SAUSAs also secured approximately 244 criminal convictions in federal district court.

In addition, OPLA supported DOJ's defense of more than 700 habeas petitions and 430 federal court lawsuits involving declaratory, injunctive, or tort relief, many of which were complex class action cases. OPLA attorneys also reviewed 1,115 contract formation-related actions and 330 contract administration-related actions and collected more than $8.2 million in delinquent debt, including more than $6.7 million for breached immigration bonds. Moreover, OPLA provided written advice in response to more than 3,440 ethics questions, adjudicated 334 appeals.

In FY 2022, OPLA aims to continue to refine its PD practices to best advance DHS and ICE immigration enforcement priorities, while deepening its partnership with EOIR in promoting the just, fair, and efficient completion of removal proceedings and securing the resources necessary to achieve its mission.

Note: The OPLA data in this document is the product of a compilation of data manually entered in internal case management systems. OPLA litigation data is continuously updated, which may result in changes to data previously reported. Moreover, like any data set based on manual entry by a large number of users, some possibility of human data entry error is inevitable.

22

AR2022_301594



# MANAGEMENT AND ADMINISTRATION

## Mission

Management and Administration (M&A) empowers the ICE mission through a diverse workforce dedicated to a culture of customer service and exemplary management operations.

## FY 2021 In Review

M&A coordinates and implements ICE administrative and managerial functions to support and advance every aspect of the ICE mission. With federal law and policy; the ICE Strategic Plan; M&A Strategic Plan; and the 2010 and 2014 Quadrennial Homeland Security Reviews as backdrops, M&A provides ICE front-line personnel with the critical support they need to protect our country from the cross-border crime that threatens national security and public safety.

## Human Capital Efforts to Support the ICE Workforce

Throughout FY 2021, ICE remained focused on recruiting and retaining the workforce necessary to carry out its mission. ICE ended the fiscal year with a total workforce of 20,796 employees, resulting in an agency onboard fill rate of 94 percent. This success resulted from persistent recruitment efforts and ongoing work to streamline the hiring process.

- As of September 30, 2021, through Office of Human Capital (OHC) efforts, ICE opened 779 job announcements, processed 125,405 applications in USA Staffing, and issued more than 4,971 certificates.
- Additionally, 185,618 personnel/payroll actions were processed, and 16,120 Electronic Official Personnel File (eOPF) documents were uploaded.

23

- Using the Bona Fide Occupational Qualification (BFOQ) hiring authority, female-only recruiting events and an aggressive marketing campaign, ICE received and processed 7,283 law enforcement applicants for HSI and ERO via female-only events and announcements.
- In FY 2021, ICE hired a total of 391 veterans and the ICE workforce is now comprised of 29 percent (5,961) veterans.
- By streamlining procedures and enhancing functionality within ICE's Employee Personnel System (ESP), OHC drastically improved the process for submission of non-performance awards and added the capability to submit Student Loan Repayment Program (SLRP) requests into the system. As a result, OHC processors submitted approximately 3,500 non-performance awards to the National Finance Center and 85 employees received SLRP benefits, totaling nearly $900,000 of the funds appropriated to ICE from the Congressional Budget. In addition, 53 requests totaling $500,000 were processed and were in line to be funded at the start of FY 2022.
- In FY 2021, the Office of Leadership and Career Development (OLCD) executed the 2021 Tuition Assistance Program (TAP), which was the most successful TAP program in recent years. To accomplish this, OLCD expeditiously updated the ICE TAP Policy in partnership with the Office of Regulatory Affairs and Policy, which increased the amount an employee could request through the TAP program from $2,500 to $5,000 and created the first ever TAP marketing effort educating the ICE workforce on this program. Efforts resulted in 117 applications from ICE employees and a reimbursement of $183,259 to cover tuition costs in support of employee development.

## Streamlining and Documenting Processes to Increase Strength and Efficiency

The Office of Financial Management (OFM) successfully automated portions of what were previously manually intensive processes by implementing two major system enhancements to gain process efficiencies: automated employee portal user access and improved internal controls.

The Approver Portal is a web-based system where program offices now manage the funding of authorizations for their transferees as well as track the approval process. Program Office Permanent Change of Station (PCS) managers now can view all phases of the PCS process. The Employee Portal enables the transferees to manage their relocation and submit their reimbursements online directly with their PCS Coordinator and monitor their vouchers as they move through the workflow process in real-time. Additionally, a PCS Working Group was established to review the end-to-end process and identify process improvements such as the ability for transferees to choose their own realtor when selling a home under the Buyer Value Option.

With assistance from the Fleet Management Unit (FMU), ICE established the Fleet Management Investment Review Board (FMIRB) with representation from all ICE programs and developed the FMIRB Charter in Q1 of FY 2021. The FMIRB meets quarterly to prioritize, manage and allocate resources effectively and within budgetary guidelines.

24

## Strengthening ICE's Cyber Foundation and Enhancing Cybersecurity Posture

The ICE cybersecurity program is a DHS accredited Center of Excellence (COE) and DHS accredited Security Operations Center (SOC) Cybersecurity Service Provider (CSP). Recognized as one of DHS's leading Cyber Security programs, in FY 2021, the ICE CSP program exceeded the minimum threshold requirement metrics by 28 percent from the prior year. ICE began providing support services for external components and has become a provider of choice for SOC services.

Internally, the Office of the Chief Information Officer (OCIO) supported ICE in advancing cyber defense and incident response capabilities through innovative improvements in multiple technologies, as well as new or improved programs and processes to further enable our mission and the workforce.

During the federal government wide "SolarWinds Supply Chain Incident," OCIO responded within 48 hours of ICE being notified. The ICE SOC identified all OCIO managed SolarWinds systems and shutdown and/or isolated all systems. Additionally, OCIO assisted other federal partners with their response, while learning from the incident and evaluating approaches to further evolve our cyber security posture.

## Engagement with External Partners and Stakeholders

Throughout FY 2021, M&A also engaged with external partners and stakeholders, benefiting the ICE mission:

- As noted above, OCIO, in conjunction with ICE programs and DHS partners, identified an opportunity and delivered technology solutions that directly impacted operations on the Southwest Border and across the enterprise. This included the Case Acceptance System, which went live in El Paso approximately five weeks after development. CAS automates the request for ICE to accept jurisdiction and review the A-File for noncitizen cases. Integrating multiple systems in an unprecedented short time frame, CAS reduced the time for ICE to provide a response to CBP from eight hours to approximately three hours when initially released.
- Collaborating with ICE program offices and DHS components, a new purchase card transaction reallocation tool was integrated into ICE's financial system. The tool is now used by more than 1,500 personnel to include external partners at U.S. Citizenship and Immigration Services (USCIS), the DHS Science and Technology Directorate (S&T), the DHS Management Directorate (MGMT), and Cybersecurity and Infrastructure Security Agency (CISA). Prior to deployment, the ICE purchase card management team implemented hands-on training for more than 900 users and ensured each user was set up properly in the financial system. This significant enhancement now means that Purchase and Fleet Card reallocation functionality is housed in the core financial system, eliminates 100,000 manual transactions annually across ICE and component customers, and lays the groundwork for a direct interconnection with the card vendor.
- Demonstrating the benefits of partnership with interagency and external components, the Office of Acquisitions (OAQ), Investigations and Operations Support Dallas (IOSD) worked closely with the Office of Professional Responsibility/Personnel Security Unit to successfully award a DHS-wide Strategic Solutions Background Investigation Services contract vehicle that enhances the background investigation process for all of DHS's Component Personnel Security Programs. A great deal of work was done to engage with DHS, CBP, USCIS and CISA to ensure OAQ put a vehicle in place that would meet the needs of many DHS components for background investigations. The effort established multiple Blanket Purchase Agreements valued at approximately $500 million in less than 120 days and positively impacts the financial and

25

operational operations of DHS Personnel Security and on ICE's missions.

- Supporting the Department's 60-day Cybersecurity Workforce Sprint, OHC focused on building a more diverse cybersecurity workforce, resulting in the most successful hiring initiative in DHS history. The Secretary also asked for candidates to be appointed for the first ever Cyber Honors Program. At the onset of the sprint, ICE committed to issuing 19 tentative job offers (TJOs), two of which were for the Secretary's Cyber Honors Program (SHP). OHC's efforts contributed to ICE's achievement of exceeding its goal by more than 50 percent with a total of 40 TJOs issued, while also achieving the goal for the SHP, and directly contributing to ICE's ability to secure its infrastructure and protect the public safety and national security of the United States.

## Providing Support and Enhancing Employee Engagement Across the ICE Workforce

ICE has no greater resource than its talented and dedicated workforce. In support of that workforce, M&A continued a range of programs and initiatives, including:

- OHC expanded ICE's employee and family readiness programs with the support of ICE leadership and in support of DHS's FY 2020 Human Capital Operational Plan, leading to the hiring of 10 additional full-time positions, including five licensed mental health professionals, stationed throughout the country, as part of the Peer Support and Employee Assistance Programs. These mental health professionals specialize in law enforcement mental health and provide confidential services such as operational readiness and tactical mindset training, resilience training and specialized response for employees exposed to secondary traumatic stress, and clinical oversight of local peer support teams.

- In FY 2021, OHC launched ICE's Suicide Awareness and Prevention Campaign to promote awareness around the topic of suicide and creating the tools necessary to prevent suicide to the maximum extent possible. The subsequent campaign and related materials were developed around the theme of "Stronger Together... You Are Not Alone." In addition to printed materials, OHC oversaw the production of a series of five videos specifically developed to appeal to a broad audience of both LEO and non-LEO employees and their families. Following the initial broadcast message from the Acting Director, messages from the Acting Deputy Director, Executive Associate Directors and other personnel will be released throughout FY 2022. Finally, OHC rolled out training which may be delivered upon request to individual offices that provides practical guidance and tools employees can use in their work and personal lives to prevent suicide and to provide individuals in distress the help and support they need.

## Building Resilience and Future Leadership by Providing Opportunity

M&A also furthered its efforts in training and succession planning, working to develop the agency's leaders in the years to come:

- In FY 2021, ICE's training office, OLCD, published the first ever OLCD Strategic Plan for FY 2022-2024. The strategic plan laid out the vision and strategic goals to support OLCD and all of ICE through leadership and career development training, course design, accreditation, and training systems management.

- With an increase of more than 3,720 participants from FY 2020, OLCD delivered instructor-led leadership and career development training for 9,313 participants in FY 2021 – mostly virtual due to the COVID-19 restrictions. This includes delivering 14 Supervisory Leadership Training courses to 280 supervisors, 13 Advanced Supervisory Leadership Training courses to 172 supervisors, and seven Instructor Development Courses to 53 ICE instructors. OLCD partnered with 14 offices in FY 2021 (M&A, ERO, OPR, and HSI) to

26

deliver customized leadership development programs for supervisory and non-supervisory employees for more than 2,400 participants with a total of 364 hours of training. These programs incorporated 12 core development competencies through delivery of Conflict Management, Leading at the Speed of Trust, Leadership is Everyone's Business, Resume Writing and Interview Skills Workshop, Leader-Leader Model, Leadership Assessments, Mentoring Forums, Coaching Services, and Emotional Intelligence.

- OLCD led ICE's Mentoring Program in another successful year with enrollment increasing by 650 percent from 550 participants in FY 2020 to 3,600 participants in FY 2021.
- OLCD delivered Team Member Leadership Development training that resulted in 58 graduates and certified 28 new coaches leading to more than 1,400 hours of coaching services provided across the agency.

## Optimizing Operations

Finally, M&A focused on making ICE operations more efficient:

- The Freedom of Information Act (FOIA) Unit successfully reduced the FOIA backlog from 40,424 cases at the end of FY 2020 to less than 3,600 at the end of FY 2021, resulting in a backlog reduction of more than 91 percent. By the end of the fiscal year, the team had reviewed more than 1.5 million pages of ICE records during FY 2021.
- OCIO continues to modernize our technology infrastructure to strengthen the foundation and expand to support emerging technologies. Specific accomplishments include fully deploying more than 16,500 devices across the ICE enterprise. Laptops and workstations were upgraded to ensure ICE personnel have the equipment needed to perform our mission, while also addressing long-standing security vulnerabilities and reducing the amount of downtime due to equipment failure. Initiating the Mobile Ready-21 program, the team ensured more than 15,000 ICE personnel received devices capable of working in mobile operating environments, increasing ICE's ability to adapt and respond when necessary.
- Upgrades within ICE facilities and to Tactical Communications (TACCOM) infrastructure brought a refresh of 4,528 handheld (APX-8000) and 1,680 mobile (APX- 8500) multiband radios, providing new capabilities to use state and local radio networks when needed. OCIO completed more than 500 projects; installed or upgraded more than 250 voice and data circuits; and provided technology support to multiple reconfigured or new facilities.
- M&A furthered mobility by implementing solutions to ensure the ICE workforce continued operating in various environments to include at home, within an ICE office, and in the field. For instance, OCIO established a baseline of existing Video Teleconferencing Capabilities (VTC), deployed an eFax capability for HSI and ERO to electronically transmit faxes such as summons and subpoenas, and secured the ability to digitally sign legally binding documents via mobile phone.

27

AR2022_301599



**OFFICE OF PROFESSIONAL RESPONSIBILITY**

## Mission

The ICE Office of Professional Responsibility (OPR) is responsible for upholding ICE's professional standards through a multi-disciplinary approach of security, inspections, and investigations. OPR promotes organizational integrity by vigilantly managing ICE's security programs, conducting independent reviews of ICE programs and operations, and by impartially investigations allegations of serious employee and contractor misconduct and internal and external threats against ICE personnel and facilities.

In support of the ICE mission, OPR is responsible for assessing pre-employment suitability and continuously evaluating background investigations for ICE's employees and contractors. OPR also manages physical security and classified national security information for ICE, which includes administering clearance levels and access to classified information, systems, and equipment. OPR provides ICE senior leadership with an independent assessment of their programmatic compliance with the requirements of applicable agency policies, procedures, and detention standards. OPR's role in safeguarding the organization ensures that ICE's workforce remains focused on promoting homeland security and public safety.

## OPR Security Division

The Security Division (SEC) is responsible for all internal security operations at ICE which protect our people, information, and facilities. SEC is responsible for managing the personnel security and suitability program at ICE, which includes managing background investigations, reinvestigations, and the continuous evaluation program for ICE employees and contractors. SEC is also responsible for overseeing the agency's security

28

AR2022_301600

requirements and protecting ICE facilities, as well as managing security operations necessary to safeguard the ICE workforce and information. This includes detecting, deterring, and mitigating threats against ICE leadership, as well as insider threats.

*SEC Key Statistics*
- Processed and adjudicated 10,422 background investigations and made 15,796 suitability/security clearance determinations.
- Processed 84 percent of all non-actionable entry-on-duty determinations within 10 days of receiving a complete and accurate security packet.
- Conducted 223 polygraph examinations of entry-level law enforcement officers.
- Oversaw and managed 21 accredited SCIFs and 8 new SCIF construction projects.
- Oversaw 17,281 clearance holders worldwide, including 3,323 ICE personnel with SCI access.
- Conducted 50 Insider Threat assessments.

## OPR Inspections and Detention Oversight Division

The Inspections and Detention Oversight Division (IDO) is primarily responsible for conducting and overseeing internal inspections, audits, and reviews of each ICE component, program, and office, both domestically and internationally. This internal oversight provides ICE executive management with an independent and objective review of the performance of ICE offices and programs by assessing their compliance with federal law, applicable policies and procedures, and the agency's own detention standards.

*IDO Key Statistics*
- Conducted 211 compliance inspections at detention facilities (202 contingency inspections and 9 on-site inspections).
- Published 23 detainee death reviews.
- Facilitated the completion of 30 Prison Rape Elimination Act audits at various long-term ICE detention facilities.
- Conducted 19 financial audits of investigative programs to assess the state of performance of ICE's Certified Undercover Operations program.
- Conducted 33 inspections of 287(g) programs to ensure compliance with the requirements of their Memorandum of Agreement.
- Conducted 58 on-site field office inspections and administered the biennial Self-Inspection to 285 offices covering four major ICE programs – HSI International Operations; M&A Directorate; the Office of the Director; and ERO – to provide leadership with greater information regarding best practices and opportunities to improve the execution of their respective missions.

## OPR Investigations Division

The Investigations Division (INV) acts as the agency's internal investigative arm, conducting criminal and administrative investigations of alleged serious employee misconduct, and other matters impacting the safety, security, and integrity of ICE. In addition, INV has oversight of key ICE programs – the Giglio/Henthorn program, the Management Inquiry program, and the Critical Incident program – for the agency.

29

*INV Division Key Statistics*

- Received and assessed 3,027 misconduct allegations and complaints.
- Opened 909 cases as potential misconduct (employee or contractor) resulting in 315 cases being substantiated/referred to program management or contractor; 386 cases being unsubstantiated, unfounded or not referred (208 still open).
- Criminal investigations involving non-employees: Executed 13 arrests, obtained 13 indictments, and 17 convictions.
- Criminal investigations involving employees: Executed 7 arrests, obtained 7 indictments, and obtained 6 convictions.
- Conducted 10 Critical Incident/Use of Deadly Force incident reviews.
- Reduced aged Management Inquiry cases by 70 percent and reduced total open cases by 45 percent.
- Completed 725 Giglio/Henthorn requests covering 1,749 employees.

OPR's objective and impartial work is critical to ensuring integrity and accountability at ICE.

30



**OFFICE OF DIVERSITY AND CIVIL RIGHTS**

## Mission

ICE's Office of Diversity and Civil Rights (ODCR) is responsible for directing and integrating the application of the Civil Rights Act of 1964, as amended, as well as other applicable non-discrimination complaint systems and affirmative employment programs. The mission of ODCR is to ensure that the rights of employees and applicants are protected, and that the agency promotes a proactive equal employment opportunity program, to ensure that the goal of an ethnically diverse workplace is achieved.

31

## FY 2021 Office of Diversity and Civil Rights Statistics

**Diversity Management Division Summary:**

- FY 2021 Training Completed:
- Unconscious Bias and Cultural Sensitivity Training (2,840 or 82 percent)
- Implicit Bias for SES (~87 percent)
- Reasonable Accommodation (2,527 or 83 percent)
- Preventing Workplace Harassment (19,556 or 95 percent)

| Anti-Harassment ODCR Claims | | | | | |
|---|---|---|---|---|---|
| | ERO | HSI | M&A | OPR | OPLA |
| FY 2021 | 24 | 7 | 4 | 0 | 1 |

| FY 2021 Non-COVID Reasonable Accommodations | | | |
|---|---|---|---|
| Directorate | Total Request | # Closed | # Pending |
| ERO | 60 | 43 | 17 |
| HSI | 86 | 80 | 6 |
| M&A | 60 | 57 | 3 |
| OPLA | 17 | 13 | 4 |
| OPR | 10 | 10 | 0 |
| Director | 17 | 14 | 3 |
| Applicants | 2 | 1 | 1 |
| Total | 252 | 218 | 34 |

**COVID-19 Exemption Requests: (2,048)**

- Religious (81 percent)
- Medical (19 percent)
- Employees seeking both Medical and Religious (<1 percent)



32





**Complaints and Resolution Division Summary**

- ICE received 236 informal pre-complaints in FY21, a 10.6 percent decrease from the 264 pre-complaints received in FY 2020.

- In FY 2021, ICE received 136 formal complaints of discrimination, 26.1 percent fewer than the 184 received in FY 2020.

- The top three bases and issues in the overall ICE caseload (pre-complaints and formal complaints) were reprisal (75), race (59) and sex (58); and harassment (non-sexual, 53), promotion/non-selection (22), and assignment of duties (15).

- During the pre-complaint stage, ICE offered ADR to 215 aggrieved individuals of which 144 pre-complaints were accepted into the ADR program in FY 2021.
    - In FY 2020 ICE offered ADR to 249 aggrieved individuals of which 169 pre-complaints were accepted.
    - This represents a decrease of 25 in the number of pre-complaints accepted into ADR, a 14.8 percent decrease over the previous FY.

**Civil Liberties Division Summary**

- Processed 635 request for assistance from internal and external stakeholders.

- Developed COVID-19 informational videos presented in seven indigenous languages for detainee populations.

- Translated the Family Reunification Task Force website information into three indigenous languages.

- Partnered with DHS Office for Civil Rights and Civil Liberties and the ICE Office of Public Engagement and conducted external stakeholder engagement sessions.

- Coordinated ICE participation in DHS Working Groups that were established to respond to the Executive Orders issued to ensure equity in government operations, encourage voter participation in the federal workforce, and ensure protections for LGBTQI+ persons.

AR2022_301605

# ICE Guidance
# to Offenses and Penalties

### Guidelines and Instructions on Use
### of the Table of Offenses and Penalties

This guide to offenses and penalties provides U.S. Immigration & Customs Enforcement (ICE) managers, supervisors, and employee relations practitioners assistance in assessing the appropriate penalty in disciplinary and adverse actions.  Additionally, this guide covers performance deficiencies.

This guide does not cover the entire range of possible offenses that employees may commit.  However, it covers the more common types of misconduct occurring on or off-duty, for which ICE management may take action.  Offenses not covered in the guide can be separately identified and may become a basis for disciplinary or adverse action.

Where appropriate, at the Agency's discretion, the Agency may consider non-disciplinary actions, such as oral and written counseling.  Such non-disciplinary actions may be utilized by management to show that an employee was informed that his or her conduct or performance was less than acceptable.

In keeping with the principles of progressive and corrective action, the table provides a higher range of penalties for second and subsequent incidents of employee misconduct or performance deficiencies.  Higher ranges of penalties eliminate the overlap of penalties in cases where subsequent actions are taken.  In addition, second and third offenses do not need to be of the same type to be considered subsequent offenses.  Management has the authority to exceed the penalties listed in this guide if circumstances warrant.

Because management bears the burden of proving the action by the "preponderance of the evidence," the relevant evidence considered in each action must be that which a reasonable person finds to be more likely true than untrue.  Moreover, when management decides which penalty to impose, it must consider aggravating and mitigating factors.  Discipline will be administered in a consistent manner for just and sufficient cause as shall promote the efficiency of the service.

Removals, reductions in pay, demotions, and suspensions of 15 days or more are adverse actions that may be appealed to the Merit Systems Protection Board.  Non-disciplinary actions, such as counseling, may be utilized by management to show that an employee was informed that his or her conduct or performance was less than acceptable.  For purposes of this table of offenses and penalties, suspensions refer to calendar days.  Management has sole discretion on when to schedule the days of suspension.  The days need to be consecutive calendar days and must include workdays in order to have a corrective effect.

This guide is intended to improve the internal management of the disciplinary and adverse action program within ICE.  It is not intended to and does not create any rights, administrative or judicial, substantive or procedural, which can be enforced against ICE.

AR2022_301607

11

# ICE Table of Offenses and Penalties

## Table of Contents

**Section**                                                                      **Page**

A: Attendance and Leave............................................................................................................ 1

B: Discriminatory Behavior....................................................................................................... 3

C: Disruptive Behavior.............................................................................................................. 5

D: Drugs and Alcohol................................................................................................................ 6

E: Failure/Refusal to Follow Orders......................................................................................... 8

F: Falsification/Dishonesty/Misstatement................................................................................ 9

G: Inquiries and Investigations................................................................................................ 11

H: Integrity and Ethics............................................................................................................. 12

I: Neglect of Duty.................................................................................................................... 18

J: Personal Appearance and Hygiene/Uniform Requirements................................................ 20

K: Property Misuse/Loss/Damage........................................................................................... 21

L: Reporting Responsibilities.................................................................................................. 23

M: Safety/Security/Health....................................................................................................... 24

N: Unauthorized Takings or Possession.................................................................................. 26

O: Weapons Related................................................................................................................. 27

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **A** | **Attendance and Leave** | | | | |
| 1 | Unexcused tardiness | These are brief periods of unauthorized absence for which AWOL is not charged against pay; for example, taking excessively long breaks (coffee, cigarette, or lunch break, for example), overdue return after absence from worksite for official business, early departure at the end of the workday, or leaving worksite during the workday without authorization. | Written reprimand | 1-day suspension to 5-day suspension | 6-day suspension to removal |
| 2 | Absence without leave (AWOL) for one workday or less | Number of hours in a workday may vary due to Alternative Work Schedules. | Written reprimand to 3-day suspension | 4-day suspension to 14-day suspension | 15-day suspension to removal |
| 3 | Absence without leave (AWOL) greater than 1 workday and less than 5 workdays | Days or hours may or may not be consecutive. | Written reprimand to 5-day suspension | 6-day suspension to removal | Removal |
| 4 | Absence without leave (AWOL) of more than 5 workdays | Days or hours may or may not be consecutive. | 14-day suspension to removal | Removal | |
| 5 | Any unauthorized absence resulting in any impairment of mission accomplishment | | 1-day suspension to 5-day suspension | 6-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| A | Attendance and Leave – cont'd | | | | |
|---|---|---|---|---|---|
| 6 | Failure to follow established leave procedures | When on leave restriction, penalties may be increased. | Written reprimand to 5-day suspension | 6-day suspension to 14-day suspension | 15-day suspension to removal |
| 7 | Improper use of sick leave or other leave programs | For example, calling in "sick" when you are in fact not "sick," or engaging in outside employment while on approved sick leave. | Written reprimand to 5-day suspension | 6-day suspension to removal | Removal |
| 8 | Excessive unscheduled absences | "Excessive" is defined as the average number of unscheduled absences equal to at least 1 absence per pay period in a calendar quarter or other period of time determined by management. | Written reprimand to 5-day suspension | 6-day suspension to 14-day suspension | 15-day suspension to removal |
| 9 | Failing to report to, unexcused delay in reporting for, or unauthorized absence during, an overtime assignment | Includes both involuntary and voluntary overtime assignments. | 1-day suspension to 5-day suspension | 6-day suspension to removal | 15-day suspension to removal |

## ICE Table of Offenses and Penalties

|  | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **B** | **Discriminatory Behavior** |  |  |  |  |
| 1 | Using offensive, demeaning, or degrading remarks, comments, observations, statements, or actions based on another's race, color, religion, national origin, sex, age, disability, sexual orientation, parental status; includes creating a hostile work environment | On or off-duty.  Determination in an EO/EEO forum need not be a determining factor to take action. | Written reprimand to removal | 14-day suspension to removal | Removal |
| 2 | (a) Acting or failing to act on an official matter in a manner which improperly takes into consideration an individual's protected group; (b) taking retaliatory action against an individual involved in the EEO complaint process; (c) failing to take appropriate action to prevent or curtail prohibited discrimination or harassment of a subordinate when the supervisory employee knew or should have known the conduct was discriminatory | On or off-duty.  For example, in employment, appraisal, advancement or treatment of employees (present and former) and applicants. Determination in an EO/EEO forum need not be a determining factor to take action. | 5-day suspension to removal | Removal |  |
| 3 | Inappropriate and/or unwelcome verbal or physical behavior of a sexual nature | On or off-duty.  Examples include touching, teasing, gestures, phone calls, notes, emails, jokes, display of visual material, pressure for dates, requests for sexual favors (in extremely egregious cases removal may be warranted on the first offense). | Written reprimand to removal | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| B | **Discriminatory Behavior – cont'd** | | | | |
| 4 | Taking, threatening to take, or inferring that official action will be taken as a result of rejection or submission to a request for sexual favors | On or off-duty.  Includes behavior or actions directed to employees and non-employees (such as customers, contractors, vendors, passengers, or members of a regulated industry), both favorable or unfavorable, based on granting or withholding a sexual favor. | 30-day suspension to removal | Removal | |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **C** | **Disruptive Behavior** | | | | |
| 1 | Using abusive, slanderous, libelous, malicious, or similarly inappropriate language, gestures, or conduct to or about other employees or members of the public | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 2 | Using rude, impolite, discourteous, disrespectful, unprofessional, obscene, or sexually explicit, derogatory, or similarly inappropriate language, gestures, or conduct to or about other employees or members of the public | | Written reprimand to 5-day suspension | 6-day suspension to 14-day suspension | 15-day suspension to removal |
| 3 | Fighting, threatening, intimidating, attempting to inflict or inflicting bodily harm on another; harassing or provoking quarrel; engaging in dangerous horseplay; any violent, reckless or disorderly act, language, gestures, or conduct toward other employees or members of the public | | 5-day suspension to removal | 30-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **D** | **Drugs and Alcohol** | NOTE:  Refer to applicable directive(s) for information about: (1) any requirement to provide the employee an opportunity to enter a rehabilitation program or other reasonable accommodation, or (2) the DHS or ICE Drug-Free Workplace Program. | | | |
| 1 | Unauthorized possession, transfer, storage or consumption of alcoholic beverages while on duty or on government-owned or leased property (including vehicles); drinking alcohol when carrying a weapon on or off-duty | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 2 | Refusing or failing to submit to, or interfering with, a properly ordered or authorized drug or sobriety test | Includes substituting, adulterating, or otherwise tampering with a test sample. | 14-day suspension to removal | Removal | |
| 3 | Reporting for or being on duty under the influence of alcohol or other impairing legal substance to a degree that would interfere with proper performance of duty, be a risk to safety, or be prejudicial to the maintenance of discipline | In addition to any disciplinary action, the employee must be immediately removed from duties that put safety or security at risk.  Employee should not be allowed to drive.  If armed, employee must relinquish weapon.  Transportation should be arranged for employee. | Written reprimand to removal | 5-day suspension to removal | 14-day suspension to removal |
| 4 | Consuming alcoholic beverages within a designated abstinence period prior to reporting for duty; reporting for or being on duty with a blood alcohol level exceeding established limits | In addition to any disciplinary action, the employee must be immediately removed from duties that put safety or security at risk. | 14-day suspension to removal | Removal | |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **D** | **Drugs and Alcohol** | NOTE:  Refer to applicable directive(s) for information about: (1) any requirement to provide the employee an opportunity to enter a rehabilitation program or other reasonable accommodation, or (2) the DHS or ICE Drug-Free Workplace Program. | | | |
| 5 | Operating a Government owned or leased equipment or vehicle, on or off-duty, or a privately owned vehicle, on duty, while under the influence of alcohol, drugs, or other intoxicant. | Includes automobiles, trucks, seagoing vessels, aircraft, or other equipment, 31 U.S.C. § 1349.  Under the influence is defined as the legal limit in the state in which it takes place. | 30-day suspension to removal | Removal | |
| 6 | Possession, use, sale, or distribution of illegal drugs; unauthorized possession, use, sale, or distribution of controlled substances | On or off-duty.  May include violations of 21 U.S.C. § 844. | 60-day suspension to removal | Removal | |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **E** | **Failure/Refusal to Follow Orders** | | | | |
| 1 | Insolence, flagrant and/or contemptuous disrespect towards a supervisor[1] or other management official | Written, verbal, or gesture. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 2 | Failure to promptly and fully comply with directions, instructions, or assignments of a supervisor or other management official; failure to follow a regulation, policy, procedure, practice, protocol, or rule | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 3 | Willful or intentional delay or refusal to comply with an order, direction, instruction, or assignment of a supervisor or other management official; willful or intentional delay or refusal to follow regulation, policy, procedure, or rules | Includes insubordination and failure to report for required training or for duty as detailed, transferred, or reassigned. | 5-day suspension to removal | 14-day suspension to removal | 30-day suspension to removal |
| 4 | Willful or intentional failure to carry, display, or present required government identification, badge or credentials on duty or on government controlled premises | | Written reprimand to 5-day suspension | 6-day suspension to 14-day suspension | 15-day suspension to removal |

[1] All references to "supervisor" include acting supervisors and team leaders.

## ICE Table of Offenses and Penalties

|  | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| F | **Falsification/Dishonesty/ Misstatement** | | | | |
| 1 | Making misstatements or misrepresentations; failing to provide honest and complete information or displaying lack of candor in any official inquiry or proceeding, including background investigations; failure to provide material fact or pertinent information | Includes (but not limited to) statements or documents related to travel, employment, promotion, leave forms, attendance logs or records, workers' compensation claims, EEO investigations, OPR, administrative and judicial hearings, transactions with the public, or any other official record. Investigations, inquiries, or proceedings applies to internal (DHS or ICE) and external (any other state or federal agency, police investigator, court, etc.). Law Enforcement Officers may be removed for a first offense based upon Giglio/Henthorn considerations. | Written reprimand to removal | 14-day suspension to removal | Removal |
| 2 | Material and intentional falsification, concealment; omission of fact to mislead; forgery | May include violation of 18 U.S.C. § 1001; includes perjury, providing false testimony, and knowingly making a false statement or accusation. For employees in positions with the potential to testify in court, this violation often jeopardizes their ability to serve as federal witnesses. | Removal | | |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **F** | **Falsification/Dishonesty/ Misstatement – cont'd** | | | | |
| 3 | Unauthorized recording or monitoring of telephone calls, conversations, meetings, electronic communications, etc. | Includes all forms of electronic surveillance. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 4 | Concealing or covering up an act that violates law, regulation, or DHS or ICE policy | | Written reprimand to removal | 14-day suspension to removal | Removal |
| 5 | Failure to complete background investigation forms in the prescribed time frame | | Written reprimand to 5-day suspension | 6-day suspension to 14-day suspension | 15-day suspension to removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| G | **Inquiries and Investigations** | | | | |
| 1 | Failing or refusing to give oral or written statements or testimony or otherwise cooperate in connection with any official inquiry (including internal inquiry), investigation (including EEO) or proceeding; interfering with an official inquiry, investigation, or administrative or adjudicatory proceeding | May include violations of 18 U.S.C. §§ 1621, 1622; includes attempting to influence others involved in an inquiry, releasing information regarding an official inquiry, or proceeding when one knows or should know not to do so. | Written reprimand to removal | 14-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **H** | **Integrity and Ethics** | | | | |
| 1 | Accepting or soliciting a bribe; agreeing to accept or solicit a bribe | May include violations of 18 U.S.C. § 201; A bribe may include anything of value, loans, or personal gain to the employee or the employee's family or others. | Removal | | |
| 2 | Failing to promptly report an offer of a bribe or attempted bribe to OPR | Regardless of personal involvement. | 14-day suspension to removal | Removal | |
| 3 | Use of position or authority for other than official purposes | On or off-duty. May include reprisal against an employee for whistleblowing and/or providing information or testimony, or otherwise participating in an official investigation or inquiry; directing subordinates to perform work not related to official duties; attempting to use one's position to avoid a legal citation or arrest. | 5-day suspension to removal | 14-day suspension to removal | Removal |
| 4 | Using government identification including badges and/or credentials, for other than official purposes | On or off-duty. May include violations of 18 U.S.C. § 701; for example, to attempt to coerce, intimidate, or deceive, or for private gain or advantage. | 5-day suspension to removal | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **H** | **Integrity and Ethics – cont'd** | | | | |
| 5 | Use of public office for private gain | May include a violation of 5 CFR 2635.702 (Subpart G). | 14-day suspension to removal | 15-day suspension to removal | Removal |
| 6 | Using government property, property under government custody, or the property of others for other than official purposes | Includes querying confidential or sensitive databases for other than official purposes. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 7 | Using government-sponsored travel card for other than official travel | Using any government-sponsored credit card for other than official and authorized purposes. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 8 | Directly or indirectly soliciting a gift or accepting a gift from a prohibited source | May include a violation of 5 CFR 2635 (Subpart B); prohibited source includes any person who does, or seeks to do, business with ICE. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 9 | Knowingly and inappropriately associating with sources of information, illegal aliens, or persons connected with criminal activities | On or off-duty.  May include social, romantic, sexual, financial (including acceptance of gifts), or business relationship. | 14-day suspension to removal | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **H** | **Integrity and Ethics – cont'd** | | | | |
| 10 | Knowingly and inappropriately assisting or participating in activities that jeopardize DHS' or ICE's mission | | 14-day suspension to removal | 30-day suspension to removal | Removal |
| 11 | Conflict of interest with the mission of ICE | May include violations of 5 CFR 2635 (Subparts D and E), 18 U.S.C. § 205; for example, serving as an officer with or without pay in an organization whose interests conflict with ICE's mission, certain financial interests. | Written reprimand to removal | 30-day suspension to removal | Removal |
| 12 | Giving the appearance of a conflict of interest; violating law; or violating the ethical standards of conduct | May include a violation of 5 CFR 2635, 5 CFR 3101. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 13 | Direct or indirect bidding, or purchase at auction or sale, of Government property under direction or incident to the function of ICE | | Written reprimand to 14-day suspension | 15-day suspension to removal | 30-day suspension to removal |
| 14 | Borrowing substantial sum(s) of money from a subordinate employee, securing a subordinate's endorsement on a loan, or otherwise having a subordinate assume the financial responsibility of a superior | May include a violation of 5 CFR 2635.702(a); does not prohibit loans of a small amount, for example, to pay for lunch or cab fare, for a brief period when there is no actual or implied coercion. | Written reprimand to removal | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **H** | **Integrity and Ethics – cont'd** | | | | |
| 15 | Direct or indirect solicitation, or acceptance, of a gift from a subordinate | May include a violation of 5 USC § 7351, 5 CFR 2635 (Subpart C). | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 16 | Soliciting for, or giving, a gift or donation, to an official superior | May include a violation of 5 CFR 2635.302. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 17 | Failure to report the employment of family members who hold positions that DHS or ICE employees themselves are prohibited from holding in outside employment | May include a violation of 5 CFR 2635.502; family members are: spouse, child, or other relative, by marriage or blood, who is dependent upon the employee and/or resides in the employee's household. | Written reprimand to 3-day suspension | 5-day suspension to removal | Removal |
| 18 | Failure to obtain required approval before engaging in outside employment | May include a violation of 5 CFR 2635 (Subpart H). | Written reprimand to 3-day suspension | 5-day suspension to removal | 14-day suspension to removal |
| 19 | Seeking employment with persons or businesses affected by the performance or non-performance of the employee's official duties | May include a violation of 5 CFR 2635 (Subpart F). | Written reprimand to removal | 14-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **H** | **Integrity and Ethics – cont'd** | | | | |
| 20 | Entering into an unauthorized procurement commitment or personal services contract | Whether or not an employee is authorized to conduct procurement actions or decisions. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 21 | Unauthorized canvassing, soliciting, or peddling at DHS or ICE worksite or while on duty | Includes canvassing or fundraising for charitable causes or organizations. Currently, the Combined Federal Campaign is the only authorized charity, unless otherwise notified. | Written reprimand to 1-day suspension | 2-day suspension to 14-day suspension | Removal |
| 22 | Failure to honor just debts or legal obligations in a timely manner | May include a violation of 5 CFR 2635; includes untimely payment of government-sponsored travel card bills (unless employee is awaiting pending reimbursement). | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **H** | **Integrity and Ethics – cont'd** | | | | |
| 23 | Engaging in political activity that violates the Hatch Act | May include a violation of 5 U.S.C. §§ 7323, 7324.<br><br>NOTE: Alleged Hatch Act violations are referred to the Office of Special Counsel for investigation and if warranted prosecution before the MSPB; if a violation is found, the MSPB will order removal or, by unanimous decision, may order a suspension of not less than 30 days. | 30-day suspension to removal (See NOTE at left) | 30-day suspension to removal (See NOTE at left) | 30-day suspension to removal (See NOTE at left) |
| 24 | Interfering with employees' rights, or taking reprisal against employees for exercising their rights, to file or participate in a grievance or appeal, or for their affiliation or non-affiliation in labor unions | On or off-duty. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 25 | Ethics violation (5 CFR 2635) not elsewhere covered in this Table | | Written reprimand to removal | 5-day suspension to removal | 14-day suspension to removal |
| 26 | Committing a prohibited personnel practice (5 U.S.C. § 2302) not elsewhere covered in this Table | | Written reprimand to removal | 5-day suspension to removal | 14-day suspension to removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **I** | **Neglect of Duty** | | | | |
| 1 | Delay in carrying out orders, work assignments, instructions of superiors, policies, or procedures | See also TOP E2. | Written reprimand to 3-day suspension | 5-day suspension to removal | 14-day suspension to removal |
| 2 | Failure to follow applicable laws, rules, regulations, or policies in the performance of duties | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 3 | Interference with other employees in the performance of official duties | Includes deliberate as well as reckless or negligent conduct. | Written reprimand to 30-day suspension | 31-day suspension to removal | Removal |
| 4 | Engaging in or encouraging a strike, work stoppage/slowdown, or sick out | | Removal | | |
| 5 | Sleeping on the job or inattention to duty where there is no potential danger to life or property or potential loss of revenue | | Written reprimand to 3-day suspension | 5-day suspension to removal | 14-day suspension to removal |
| 6 | Sleeping on the job or inattention to duty where human life, property, or revenue, is jeopardized or damage/injury/loss actually occur | | 14-day suspension to removal | Removal | |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **I** | **Neglect of Duty – cont'd** | | | | |
| 7 | Failure to comply with policy or delegated authority in administering disciplinary action | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 8 | Negligent or careless performance of assigned duties where an inspection, investigation, or other enforcement function is substantially and negatively impacted | In circumstances where life or safety was placed in jeopardy, removal may be warranted on the first offense. | 5-day suspension to 14-day suspension | 15-day suspension to removal | Removal |
| 9 | Failure to observe established policies or procedures in the apprehension or detention of suspects, violators, or illegal aliens | Transportation of prisoners and leaving post while on guard or protective duty. | 5-day suspension to 14-day suspension | 15-day suspension to removal | Removal |
| 10 | Failure to follow applicable personal search and/or detention policies and/or procedures | Includes failing to obtain proper authorization to conduct search, improperly authorizing a personal search, making improper comments during the search, etc. | 5-day suspension to removal | 14-day suspension to removal | Removal |
| 11 | Intentional or reckless disregard of rules governing arrests, searches, or seizures | May include a violation of Rule 41-Federal Rules of Criminal Procedure. | 30-day suspension to removal | Removal | |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **J** | **Personal Appearance and Hygiene/Uniform Requirements** | | | | |
| 1 | Failure to maintain a neat, clean, and businesslike appearance, or to comply with uniform or dress standards while on duty | | Written reprimand to 3-day suspension | 5-day suspension to 14-day suspension | 15-day suspension to removal |
| 2 | Failure to maintain proper hygiene to the extent that it is either a health and safety consideration or disruptive in the workplace | | Written reprimand to 3-day suspension | 5-day suspension to 14-day suspension | 15-day suspension to removal |

## ICE Table of Offenses and Penalties

| | **NATURE OF OFFENSES** | **REFERENCES/ EXPLANATORY NOTES** | **FIRST OFFENSE** | **SECOND OFFENSE** | **THIRD OFFENSE** |
|---|---|---|---|---|---|
| **K** | **Property Misuse/Loss/Damage** | | | | |
| 1 | When willfulness or intent is not a factor, improper or negligent operation of government owned or leased property | Includes automobiles, seagoing vessels, aircraft, and other equipment. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 2 | Losing or damaging government property, equipment, records, etc.; concealing, removing, mutilating, altering, or destroying government records, prior to expiration of retention guidelines | May include a violation of 18 U.S.C. § 2071; penalty depends on value of property, extent of damage, and degree of fault. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 3 | Unauthorized use of law enforcement equipment, resources, and application of techniques | Includes the use of electronic sensing devices; this charge carries a higher penalty than misuse of other government property as it could potentially jeopardize a law enforcement operation. | 14-day suspension to removal | 30-day suspension to removal | Removal |
| 4 | Willful misuse of (or authorizing the use of) any government-owned or -leased passenger vehicle (including aircraft and seagoing vessel); authorizing the use of government vehicle for other than official purposes | 31 U.S.C. § 1349(b). | 30-day suspension to removal | 60-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|---|
| K | | Property Misuse/Loss/Damage – cont'd | | | | |
| | 5 | Unauthorized personal use of government computers, software systems, fax machines, telephones, copiers, etc. | Unauthorized includes use that interferes with one's work or the work of others, excessive personal use of such equipment or systems, accessing or transmitting sexually explicit material. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| | 6 | Unauthorized use of TECS or other Law Enforcement computer programs or resources | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **L** | **Reporting Responsibilities** | | | | |
| 1 | Failure to immediately report one's own arrest to superiors and Office of Professional Responsibility | | Written reprimand to 4-day suspension | 5-day suspension to removal | 14-day suspension to removal |
| 2 | Concealing or failing to report missing, lost, or damaged government property or funds, or property or funds in the government's custody or care | | Written reprimand to 5-day suspension | 14-day suspension to removal | Removal |
| 3 | Failure to report an accident or injury to a person, including oneself, or damage to property, arising from acts committed on-duty or occurring within the scope of employment | | Written reprimand to 5-day suspension | 14-day suspension to removal | Removal |
| 4 | Failure to promptly report violations of laws enforced by ICE | | 14-day suspension to removal | 30-day suspension to removal | 30-day suspension to removal |
| 5 | Failure to timely complete or submit required financial disclosure forms | | Written reprimand to 5-day suspension | 6-day suspension to 14-day suspension | 15-day suspension to removal |
| 6 | Failure to report misconduct.  Failure to report information concerning violation of any law, policy, or procedure by an ICE employee | This includes failure to self-report misconduct and/or violations. | Written reprimand to removal | 5-day suspension to removal | 30-day suspension to removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **M** | **Safety/Security/Health** | | | | |
| 1 | Failure to observe and/or enforce safety and health regulations, rules, signs, and instructions, or to perform duties in a safe manner; failure to wear protective clothing and equipment, including vehicle safety restraints; failure to observe rules, posted signs, emergency alarms, oral safety instructions | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 2 | Endangering the safety of, or causing injury to, any person through carelessness or failure to follow instructions | | 5-day suspension to removal | 14-day suspension to removal | Removal |
| 3 | Willful or reckless disregard for the safety of others | Includes piloting aircraft too low or acrobatically. | 30-day suspension to removal | Removal | |
| 4 | Violation of local traffic laws of any state or political subdivision while operating a government-owned or leased vehicle | With the exception of authorized surveillance or other law enforcement operations. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 5 | Violation of traffic regulations, reckless driving, or improper operation of a vehicle on government controlled premises | This includes POVs or GOVs. Disciplinary action may be taken in addition to any applicable traffic fine or penalty (with exceptions noted in M.4). | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| M | Safety/Security/Health - Cont'd | | | | |
| 6 | Violation of security procedures covering information, documents, records, or other material classified or sensitive to the government, including Privacy Act protected records | | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |
| 7 | Unauthorized disclosure of information, documents, records, or other material classified or sensitive to the government, including Privacy Act protected records and Grand Jury information | May include violations of 5 U.S.C. § 552a, 18 U.S.C. § 1030; Rule 6(e) of the Federal Rules of Criminal Procedure. | Written reprimand to removal | 15-day suspension to removal | Removal |
| 8 | Unauthorized access, or providing unauthorized access, to classified or Law Enforcement sensitive systems or information | Includes either personal access or providing someone access without authorization. | Written reprimand to 14-day suspension | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| N | **Unauthorized Takings or Possession** | | | | |
| 1 | Unauthorized use, removal, or possession of a thing of value belonging to another employee or private citizen; colluding with others to commit such acts | Conversion of seized property to one's own use or sale may result in removal for the first offense. | Written reprimand to removal | 15-day suspension to removal | Removal |
| 2 | Actual or attempted theft, or other unauthorized taking, diversion, or possession of funds or property, owned or controlled by the Government; colluding with others to commit such acts | May include a violation of 18 U.S.C. § 641. | Written reprimand to removal | 15-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| O | **Weapons Related** | | | | |
| 1 | Failure to report the discharge of a firearm or inappropriate use of a weapon | For all items in section O: "weapon" refers to, but is not limited to, authorized firearms, batons, and chemical spray. | Written reprimand to 5-day suspension | 6-day suspension to removal | 14-day suspension to removal |
| 2 | Inappropriate storage, care, loss, damage, or misplacement of a weapon or ammunition | Includes damage caused by carelessness. | 5-day suspension to 14-day suspension | 15-day suspension to removal | Removal |
| 3 | Inappropriate display or brandishment of a weapon or ammunition | On or off-duty. | 5-day suspension to removal | 15-day suspension to removal | Removal |
| 4 | Unauthorized or illegal possession of a weapon or ammunition | | 14-day suspension to removal | 30-day suspension to removal | Removal |

## ICE Table of Offenses and Penalties

| | NATURE OF OFFENSES | REFERENCES/ EXPLANATORY NOTES | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|---|---|
| **O** | **Weapons Related – cont'd** | | | | |
| 5 | Unnecessary discharge of a weapon:<br>(a) Where there is apparent danger to human life: | | | | |
| | (1) Intentional | | Removal | | |
| | (2) Unintentional | | 14-day suspension to removal | Removal | |
| | (b) Where there is no apparent danger to human life: | | | | |
| | (1) Intentional | | 14-day suspension to removal | 30-day suspension to removal | Removal |
| | (2) Unintentional | | Written reprimand to 3-day suspension | 5-day suspension to removal | 14-day suspension to removal |

**NOTE**: Conduct that results in a felony or misdemeanor indictment or warrant for arrest pending further court proceedings will usually result in an indefinite suspension until the matter is resolved.

Nothing in this table should be interpreted as prohibiting: (1) the reporting of suspected fraud, waste, abuse, corruption, misconduct, or a substantial and specific danger to public health or safety to appropriate agency officials (see 5 U.S.C. § 2302); or (2) the free expression of an employee's opinions on matters of public concern in his or her private capacity, consistent with reasonable and necessary limitations on disclosures (see Part M).  Managers with questions about the limits of protected and prohibited speech should contact their servicing agency legal counsel; employees should contact their ethics counselors for guidance.

Policy Number: 10075.1
FEA Number: 306-112-0026

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

June 17, 2011

MEMORANDUM FOR:      All Field Office Directors
                     All Special Agents in Charge
                     All Chief Counsel

FROM:                John Morton
                     Director

SUBJECT:             Exercising Prosecutorial Discretion Consistent with the Civil
                     Immigration Enforcement Priorities of the Agency for the
                     Apprehension, Detention, and Removal of Aliens

Purpose

This memorandum provides U.S. Immigration and Customs Enforcement (ICE) personnel
guidance on the exercise of prosecutorial discretion to ensure that the agency's immigration
enforcement resources are focused on the agency's enforcement priorities. The memorandum
also serves to make clear which agency employees may exercise prosecutorial discretion and
what factors should be considered.

This memorandum builds on several existing memoranda related to prosecutorial discretion with
special emphasis on the following:

- Sam Bernsen, Immigration and Naturalization Service (INS) General Counsel, Legal
  Opinion Regarding Service Exercise of Prosecutorial Discretion (July 15, 1976);
- Bo Cooper, INS General Counsel, INS Exercise of Prosecutorial Discretion (July 11,
  2000);
- Doris Meissner, INS Commissioner, Exercising Prosecutorial Discretion (November 17,
  2000);
- Bo Cooper, INS General Counsel, Motions to Reopen for Considerations of Adjustment
  of Status (May 17, 2001);
- William J. Howard, Principal Legal Advisor, Prosecutorial Discretion (October 24,
  2005);
- Julie L. Myers, Assistant Secretary, Prosecutorial and Custody Discretion (November 7,
  2007);
- John Morton, Director, Civil Immigration Enforcement Priorities for the Apprehension,
  Detention, and Removal of Aliens (March 2, 2011); and
- John Morton, Director, Prosecutorial Discretion: Certain Victims, Witnesses, and
  Plaintiffs (June 17, 2011).

www.ice.gov

AR2022_301637

*Exercising Prosecutorial Discretion Consistent with the Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*

The following memoranda related to prosecutorial discretion are rescinded:

- Johnny N. Williams, Executive Associate Commissioner (EAC) for Field Operations, Supplemental Guidance Regarding Discretionary Referrals for Special Registration (October 31, 2002); and
- Johnny N. Williams, EAC for Field Operations, Supplemental NSEERS Guidance for Call-In Registrants (January 8, 2003).

Background

One of ICE's central responsibilities is to enforce the nation's civil immigration laws in coordination with U.S. Customs and Border Protection (CBP) and U.S. Citizenship and Immigration Services (USCIS). ICE, however, has limited resources to remove those illegally in the United States. ICE must prioritize the use of its enforcement personnel, detention space, and removal assets to ensure that the aliens it removes represent, as much as reasonably possible, the agency's enforcement priorities, namely the promotion of national security, border security, public safety, and the integrity of the immigration system. These priorities are outlined in the ICE Civil Immigration Enforcement Priorities memorandum of March 2, 2011, which this memorandum is intended to support.

Because the agency is confronted with more administrative violations than its resources can address, the agency must regularly exercise "prosecutorial discretion" if it is to prioritize its efforts. In basic terms, prosecutorial discretion is the authority of an agency charged with enforcing a law to decide to what degree to enforce the law against a particular individual. ICE, like any other law enforcement agency, has prosecutorial discretion and may exercise it in the ordinary course of enforcement[1]. When ICE favorably exercises prosecutorial discretion, it essentially decides not to assert the full scope of the enforcement authority available to the agency in a given case.

In the civil immigration enforcement context, the term "prosecutorial discretion" applies to a broad range of discretionary enforcement decisions, including but not limited to the following:

- deciding to issue or cancel a notice of detainer;
- deciding to issue, reissue, serve, file, or cancel a Notice to Appear (NTA);
- focusing enforcement resources on particular administrative violations or conduct;
- deciding whom to stop, question, or arrest for an administrative violation;
- deciding whom to detain or to release on bond, supervision, personal recognizance, or other condition;
- seeking expedited removal or other forms of removal by means other than a formal removal proceeding in immigration court;

---

[1] The Meissner memorandum's standard for prosecutorial discretion in a given case turned principally on whether a substantial federal interest was present. Under this memorandum, the standard is principally one of pursuing those cases that meet the agency's priorities for federal immigration enforcement generally.

AR2022_301638

*Exercising Prosecutorial Discretion Consistent with the Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*

- settling or dismissing a proceeding;
- granting deferred action, granting parole, or staying a final order of removal;
- agreeing to voluntary departure, the withdrawal of an application for admission, or other action in lieu of obtaining a formal order of removal;
- pursuing an appeal;
- executing a removal order; and
- responding to or joining in a motion to reopen removal proceedings and to consider joining in a motion to grant relief or a benefit.

Authorized ICE Personnel

Prosecutorial discretion in civil immigration enforcement matters is held by the Director[2] and may be exercised, with appropriate supervisory oversight, by the following ICE employees according to their specific responsibilities and authorities:

- officers, agents, and their respective supervisors within Enforcement and Removal Operations (ERO) who have authority to institute immigration removal proceedings or to otherwise engage in civil immigration enforcement;

- officers, special agents, and their respective supervisors within Homeland Security Investigations (HSI) who have authority to institute immigration removal proceedings or to otherwise engage in civil immigration enforcement;

- attorneys and their respective supervisors within the Office of the Principal Legal Advisor (OPLA) who have authority to represent ICE in immigration removal proceedings before the Executive Office for Immigration Review (EOIR); and

- the Director, the Deputy Director, and their senior staff.

ICE attorneys may exercise prosecutorial discretion in any immigration removal proceeding before EOIR, on referral of the case from EOIR to the Attorney General, or during the pendency of an appeal to the federal courts, including a proceeding proposed or initiated by CBP or USCIS. If an ICE attorney decides to exercise prosecutorial discretion to dismiss, suspend, or close a particular case or matter, the attorney should notify the relevant ERO, HSI, CBP, or USCIS charging official about the decision. In the event there is a dispute between the charging official and the ICE attorney regarding the attorney's decision to exercise prosecutorial discretion, the ICE Chief Counsel should attempt to resolve the dispute with the local supervisors of the charging official. If local resolution is not possible, the matter should be elevated to the Deputy Director of ICE for resolution.

---

[2] Delegation of Authority to the Assistant Secretary, Immigration and Customs Enforcement, Delegation No. 7030.2 (November 13, 2004), delegating among other authorities, the authority to exercise prosecutorial discretion in immigration enforcement matters (as defined in 8 U.S.C. § 1101(a)(17)).

AR2022_301639

*Exercising Prosecutorial Discretion Consistent with the Priorities of the Agency for the
Apprehension, Detention, and Removal of Aliens*

Factors to Consider When Exercising Prosecutorial Discretion

When weighing whether an exercise of prosecutorial discretion may be warranted for a given
alien, ICE officers, agents, and attorneys should consider all relevant factors, including, but not
limited to—

- the agency's civil immigration enforcement priorities;
- the person's length of presence in the United States, with particular consideration given
  to presence while in lawful status;
- the circumstances of the person's arrival in the United States and the manner of his or her
  entry, particularly if the alien came to the United States as a young child;
- the person's pursuit of education in the United States, with particular consideration given
  to those who have graduated from a U.S. high school or have successfully pursued or are
  pursuing a college or advanced degrees at a legitimate institution of higher education in
  the United States;
- whether the person, or the person's immediate relative, has served in the U.S. military,
  reserves, or national guard, with particular consideration given to those who served in
  combat;
- the person's criminal history, including arrests, prior convictions, or outstanding arrest
  warrants;
- the person's immigration history, including any prior removal, outstanding order of
  removal, prior denial of status, or evidence of fraud;
- whether the person poses a national security or public safety concern;
- the person's ties and contributions to the community, including family relationships;
- the person's ties to the home country and conditions in the country;
- the person's age, with particular consideration given to minors and the elderly;
- whether the person has a U.S. citizen or permanent resident spouse, child, or parent;
- whether the person is the primary caretaker of a person with a mental or physical
  disability, minor, or seriously ill relative;
- whether the person or the person's spouse is pregnant or nursing;
- whether the person or the person's spouse suffers from severe mental or physical illness;
- whether the person's nationality renders removal unlikely;
- whether the person is likely to be granted temporary or permanent status or other relief
  from removal, including as a relative of a U.S. citizen or permanent resident;
- whether the person is likely to be granted temporary or permanent status or other relief
  from removal, including as an asylum seeker, or a victim of domestic violence, human
  trafficking, or other crime; and
- whether the person is currently cooperating or has cooperated with federal, state or local
  law enforcement authorities, such as ICE, the U.S Attorneys or Department of Justice, the
  Department of Labor, or National Labor Relations Board, among others.

This list is not exhaustive and no one factor is determinative. ICE officers, agents, and attorneys
should always consider prosecutorial discretion on a case-by-case basis. The decisions should be
based on the totality of the circumstances, with the goal of conforming to ICE's enforcement
priorities.

4

AR2022_301640

*Exercising Prosecutorial Discretion Consistent with the Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*

That said, there are certain classes of individuals that warrant particular care. As was stated in the Meissner memorandum on Exercising Prosecutorial Discretion, there are factors that can help ICE officers, agents, and attorneys identify these cases so that they can be reviewed as early as possible in the process.

The following positive factors should prompt particular care and consideration:

- veterans and members of the U.S. armed forces;
- long-time lawful permanent residents;
- minors and elderly individuals;
- individuals present in the United States since childhood;
- pregnant or nursing women;
- victims of domestic violence, trafficking, or other serious crimes;
- individuals who suffer from a serious mental or physical disability; and
- individuals with serious health conditions.

In exercising prosecutorial discretion in furtherance of ICE's enforcement priorities, the following negative factors should also prompt particular care and consideration by ICE officers, agents, and attorneys:

- individuals who pose a clear risk to national security;
- serious felons, repeat offenders, or individuals with a lengthy criminal record of any kind;
- known gang members or other individuals who pose a clear danger to public safety; and
- individuals with an egregious record of immigration violations, including those with a record of illegal re-entry and those who have engaged in immigration fraud.

<u>Timing</u>

While ICE may exercise prosecutorial discretion at any stage of an enforcement proceeding, it is generally preferable to exercise such discretion as early in the case or proceeding as possible in order to preserve government resources that would otherwise be expended in pursuing the enforcement proceeding. As was more extensively elaborated on in the Howard Memorandum on Prosecutorial Discretion, the universe of opportunities to exercise prosecutorial discretion is large. It may be exercised at any stage of the proceedings. It is also preferable for ICE officers, agents, and attorneys to consider prosecutorial discretion in cases without waiting for an alien or alien's advocate or counsel to request a favorable exercise of discretion. Although affirmative requests from an alien or his or her representative may prompt an evaluation of whether a favorable exercise of discretion is appropriate in a given case, ICE officers, agents, and attorneys should examine each such case independently to determine whether a favorable exercise of discretion may be appropriate.

In cases where, based upon an officer's, agent's, or attorney's initial examination, an exercise of prosecutorial discretion may be warranted but additional information would assist in reaching a final decision, additional information may be requested from the alien or his or her representative. Such requests should be made in conformity with ethics rules governing

AR2022_301641

*Exercising Prosecutorial Discretion Consistent with the Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*

communication with represented individuals[3] and should always emphasize that, while ICE may be considering whether to exercise discretion in the case, there is no guarantee that the agency will ultimately exercise discretion favorably. Responsive information from the alien or his or her representative need not take any particular form and can range from a simple letter or e-mail message to a memorandum with supporting attachments.

Disclaimer

As there is no right to the favorable exercise of discretion by the agency, nothing in this memorandum should be construed to prohibit the apprehension, detention, or removal of any alien unlawfully in the United States or to limit the legal authority of ICE or any of its personnel to enforce federal immigration law. Similarly, this memorandum, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

---

[3] For questions concerning such rules, officers or agents should consult their local Office of Chief Counsel.

6

AR2022_301642

Policy Number: 11090.1
FEA Number: 306-112-002b

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

February 18, 2021

MEMORANDUM FOR:          All ICE Employees

FROM:                    Tae D. Johnson
                         Acting Director

SUBJECT:                 Interim Guidance: Civil Immigration Enforcement and
                         Removal Priorities

Purpose

This memorandum establishes interim guidance in support of the interim civil immigration
enforcement and removal priorities that Acting Secretary Pekoske issued on January 20, 2021.
Acting Secretary Pekoske issued the interim priorities in his memorandum titled, *Review of and
Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities* (Interim
Memo).

This interim guidance is effective immediately. It applies to all U.S. Immigration and Customs
Enforcement (ICE) Directorates and Program Offices, and it covers enforcement actions, custody
decisions, the execution of final orders of removal, financial expenditures, and strategic
planning.

This interim guidance will remain in effect until Secretary Mayorkas issues new enforcement
guidelines. The Secretary has informed me that he will issue new guidelines only after
consultation with the leadership and workforce of ICE, U.S. Customs and Border Protection, and
other Department of Homeland Security (Department) agencies and offices. He anticipates
issuing these guidelines in less than 90 days.

I have requested approval of certain revisions to the Interim Memo until the Secretary issues new
enforcement guidelines. My requested revisions have been approved, and they are incorporated
into this guidance. To the extent this guidance conflicts with the Interim Memo, this guidance
controls. As you will read below, the revisions include, but are not limited to: (1) authorization to
apprehend presumed priority noncitizens[1] in at-large enforcement actions without advance
approval; (2) the inclusion of current qualifying members of criminal gangs and transnational
criminal organizations as presumed enforcement priorities; (3) authorization to apprehend

---

[1] For purposes of this memorandum, "noncitizen" means any person as defined in section 101(a)(3) of the
Immigration and Nationality Act (INA).

without prior approval other presumed priority noncitizens who are encountered during enforcement operations; (4) how to evaluate whether a noncitizen who is not a presumed priority nevertheless poses a public safety threat and should be apprehended; (5) the further delegation of approval authority; and (6) the importance of providing advance notice of at-large enforcement actions to state and local law enforcement.

Section C of the Interim Memo has been enjoined. This memorandum does not implement, nor take into account, Section C. This memorandum implements Section B (Interim Civil Enforcement Guidelines).

Background

On January 20, 2021, President Biden issued Executive Order (EO) 13993, Revision of Civil Immigration Enforcement Policies and Priorities, 86 Fed. Reg. 7051 (Jan. 25, 2021), which articulated the Administration's baseline values and priorities for the enforcement of the civil immigration laws.

On the same day, Acting Secretary Pekoske issued the Interim Memo. The Interim Memo did four things. First, it directed a comprehensive Department-wide review of civil immigration enforcement policies. Second, it established interim civil immigration enforcement priorities for the Department. Third, it instituted a 100-day pause on certain removals pending the review. Fourth, it rescinded several existing policy memoranda, including two ICE-related memoranda, as inconsistent with EO 13993.[2] The Interim Memo further directed that ICE issue interim guidance implementing the revised enforcement priorities and the removal pause.

On January 26, 2021, the U.S. District Court for the Southern District of Texas issued a temporary restraining order (TRO) enjoining the Department from enforcing and implementing the 100-day removal pause in Section C.

Like other national security and public safety agencies, ICE operates in an environment of limited resources. Due to these limited resources, ICE has always prioritized, and necessarily must prioritize, certain enforcement and removal actions over others.

In addition to resource constraints, several other factors render ICE's mission particularly complex. These factors include ongoing litigation in various fora; the health and safety of the ICE workforce and those in its custody, particularly during the current COVID-19 pandemic; the responsibility to ensure that eligible noncitizens are able to pursue relief from removal under the immigration laws; and the requirements of, and, relationships with, sovereign nations, whose laws and expectations can place additional constraints on ICE's ability to execute final orders of removal.

---

[2] Memorandum from Matthew T. Albence, Exec. Assoc. Dir., ICE, to All ERO Employees, *Implementing the President's Border Security and Interior Immigration Enforcement Policies* (Feb. 21, 2017); Memorandum from Tracy Short, Principal Legal Advisor, ICE, to All OPLA Attorneys, *Guidance to OPLA Attorneys Regarding Implementation of the President's Executive Orders and the Secretary's Directives on Immigration Enforcement* (Aug. 15, 2017).

Interim Guidance: Civil Immigration Enforcement and Removal Priorities
Page 3 of 7

Accordingly, in executing its critical national security, border security, and public safety mission, the Department must exercise its well-established prosecutorial discretion and prioritize its limited resources to most effectively achieve that mission.

<u>Civil Immigration Enforcement and Removal Priorities</u>

In support of the interim priorities, the guidance established in this memorandum shall be applied to all civil immigration enforcement and removal decisions made after the issuance of this memorandum. The civil immigration enforcement and removal decisions include, but are not limited to, the following:[3]

- Deciding whether to issue a detainer, or whether to assume custody of a noncitizen subject to a previously issued detainer;
- Deciding whether to issue, reissue, serve, file, or cancel a Notice to Appear;
- Deciding whether to focus resources only on administrative violations or conduct;
- Deciding whether to stop, question, or arrest a noncitizen for an administrative violation of the civil immigration laws;
- Deciding whether to detain or release from custody subject to conditions;
- Deciding whether to grant deferred action or parole; and
- Deciding when and under what circumstances to execute final orders of removal.

For ease of reference, the interim priorities identified in the Interim Memo, and as revised by this guidance, are set forth below along with further explanation.

As a preliminary matter, it is vitally important to note that the interim priorities do not require or prohibit the arrest, detention, or removal of any noncitizen. Rather, officers and agents are expected to exercise their discretion thoughtfully, consistent with ICE's important national security, border security, and public safety mission. Enforcement and removal actions that meet the criteria described below are presumed to be a justified allocation of ICE's limited resources. Actions not reflected in the criteria described below may also be justified, but they are subject to advance review as outlined further below.

In determining whether to pursue an action that falls outside the criteria described below, all relevant facts and circumstances regarding the noncitizen should be considered. For instance, officers and agents should consider: whether there are criminal convictions; the seriousness and recency of such convictions, and the sentences imposed; the law enforcement resources that have been spent; whether a threat can be addressed through other means, such as through recourse to criminal law enforcement authorities at the federal, state, or local level, or to public health and other civil authorities at the state or local level; and, other relevant factors (including, for example, the mitigating factors identified on page 5).

---

[3] As discussed above, the Department is enjoined from enforcing the Immediate 100-Day Pause on Removals in the Interim Memo. This following interim guidance should not be read to permit implementation of Section C of the Interim Memo.

Interim Guidance: Civil Immigration Enforcement and Removal Priorities
Page 4 of 7

*Criteria Defining Cases That Are Presumed to be Priorities*

**Priority Category 1: National Security**. A noncitizen is *presumed* to be a national security enforcement and removal priority if:

1)   he or she has engaged in or is suspected of engaging in terrorism or terrorism-related activities;

2)   he or she has engaged in or is suspected of engaging in espionage or espionage-related activities;[4] or

3)   his or her apprehension, arrest, or custody is otherwise necessary to protect the national security of the United States.

In evaluating whether a noncitizen's "apprehension, arrest, or custody is otherwise necessary to protect" national security, officers and agents should determine whether a noncitizen poses a threat to United States sovereignty, territorial integrity, national interests, or institutions. General criminal activity does not amount to a national security threat (as distinguished from a public safety threat) and is discussed below.

**Priority Category 2: Border Security**. A noncitizen is *presumed* to be a border security enforcement and removal priority if:

1)   he or she was apprehended at the border or a port of entry while attempting to unlawfully enter the United States on or after November 1, 2020[5]; or

2)   he or she was not physically present in the United States before November 1, 2020.

To be clear, the border security priority includes any noncitizen who unlawfully entered the United States on or after November 1, 2020.

**Priority Category 3: Public Safety**. A noncitizen is *presumed* to be a public safety enforcement and removal priority if he or she poses a threat to public safety and:

1)   he or she has been convicted of an aggravated felony as defined in section 101(a)(43) of the INA[6]; or

---

[4] For purposes of the national security enforcement priority, the terms "terrorism or terrorism-related activities" and "espionage or espionage-related activities" should be applied consistent with (1) the definitions of "terrorist activity" and "engage in terrorist activity" in section 212(a)(3)(B)(iii)-(iv) of the INA, and (2) the manner in which the term "espionage" is generally applied in the immigration laws.

[5] The statutory mandates in Section 235 of the INA (regarding asylum seekers) continue to apply to noncitizens.

[6] This criterion tracks Congress's prioritization of aggravated felonies for immigration enforcement actions. Whether an individual has been convicted of an aggravated felony is a complex question that may involve securing and analyzing a host of conviction documents, many of which may not be immediately available to officers and agents. Even when all conviction documents are available, whether a conviction is for an aggravated felony may be a novel question under applicable law. Accordingly, in deciding whether a noncitizen has been convicted of an

AR2022_301646

2)    he or she has been convicted of an offense for which an element was active
participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or is not
younger than 16 years of age and intentionally participated in an organized criminal
gang or transnational criminal organization to further the illegal activity of the gang or
transnational criminal organization.

In evaluating whether a noncitizen currently "pose[s] a threat to public safety," officers and
agents are to consider the extensiveness, seriousness, and recency of the criminal activity.
Officers and agents are to also consider mitigating factors, including, but not limited to, personal
and family circumstances, health and medical factors, ties to the community, evidence of
rehabilitation, and whether the individual has potential immigration relief available.

Officers are to base their conclusions about intentional participation in an organized criminal
gang or transnational criminal organization on reliable evidence and consult with the Field
Office Director (FOD) or Special Agent in Charge (SAC) in reaching this conclusion.

Particular attention is to be exercised in cases involving noncitizens who are elderly or are
known to be suffering from serious physical or mental illness. Similarly, particular attention is to
be exercised with respect to noncitizens who have pending petitions for review on direct appeal
from an order of removal; have filed only one motion to reopen removal proceedings, and such a
motion either remains pending or is on direct appeal via a petition for review; or have pending
applications for immigration relief and are prima facie eligible for such relief. In such cases,
execution of removal orders should have a compelling reason and are to have approval from the
FOD.

A civil enforcement or removal action that does not meet the above criteria for presumed priority
cases will require preapproval as described below.

<u>Enforcement and Removal Actions: Approval, Coordination, and Data Collection</u>

To ensure compliance with this guidance and consistency across geographic areas of
responsibility, and to facilitate a dialogue between headquarters and field leadership about the
effectiveness of the interim guidance, ICE will require that field offices collect data on the nature
and type of enforcement and removal actions they perform. In addition, ICE will require field
offices to coordinate their operations and obtain preapproval for enforcement and removal
actions that do not meet the above criteria for presumed priority cases. The data and coordination
will inform the development of the Secretary's new enforcement guidance.

*No Preapproval Required for Presumed Priority Cases*

Officers and agents need not obtain preapproval for enforcement or removal actions that meet the
above criteria for presumed priority cases, beyond what existing policy requires and what a
supervisor instructs.

---

aggravated felony for purposes of this memorandum, officers and agents must have a good-faith belief based on
either a final administrative determination, available conviction records, or the advice of agency legal counsel.

*Preapproval for Other Priority Cases*

Any civil immigration enforcement or removal actions that do not meet the above criteria for presumed priority cases will require preapproval from the FOD or SAC. In deciding to undertake an enforcement action or removal, the agent or officer must consider, in consultation with his or her leadership, the nature and recency of the noncitizen's convictions, the type and length of sentences imposed, whether the enforcement action is otherwise an appropriate use of ICE's limited resources, and other relevant factors. In requesting this preapproval, the officer or agent must raise a written justification through the chain of command, explaining why the action otherwise constitutes a justified allocation of limited resources, and identify the date, time, and location the enforcement action or removal is expected to take place.

The approval to carry out an enforcement action against a particular noncitizen will not authorize enforcement actions against other noncitizens encountered during an operation if those noncitizens fall outside the presumption criteria identified above. An approval to take an enforcement action against any other noncitizen encountered who is not a presumed priority must be separately secured as described above.

In some cases, exigent circumstances and the demands of public safety will make it impracticable to obtain preapproval for an at-large enforcement action. While it is impossible to preconceive all such circumstances, they generally will be limited to situations where a noncitizen poses an imminent threat to life or an imminent substantial threat to property. If preapproval is impracticable, an officer or agent should conduct the enforcement action and then request approval as described above within 24 hours following the action.[7]

As always, it is important that ICE endeavor to remove noncitizens with final removal orders who have remained in post-order detention for more than 90 days. ICE will continue to review such noncitizens' cases on a regular basis, consistent with existing law and policy. ICE will endeavor to remove such noncitizens consistent with legal requirements and national, border security, and public safety priorities.

Periodically, ICE receives requests to exercise some form of individualized discretion in the interests of law and justice. ICE will create and maintain a system by which personnel can evaluate these individualized requests.

*Notice of At-Large Enforcement Actions*

The execution of an at-large enforcement action should be preceded by notification to the relevant state and local law enforcement agency or agencies. This notification will advance

---

[7] Where approval is sought following the enforcement action due to exigent circumstances, the request shall explain the exigency, where and when the enforcement activity took place, and whether the noncitizen is currently detained. Additionally, when the location of a proposed or completed enforcement action is a courthouse, as defined in ICE Directive 11072.1: Civil Immigration Enforcement Actions Inside Courthouses (Jan. 10, 2018, or as superseded), or a sensitive location, as defined in ICE Directive No. 10029.2, Enforcement Actions at or Focused on Sensitive Locations (Oct. 24, 2011, or as superseded), that should be explicitly highlighted in the request.

public safety and help ensure that planned immigration enforcement actions do not improperly interfere with state and local law enforcement investigations and actions.

*Weekly Reporting of All Enforcement and Removal Actions*

The Director will review all enforcement actions to ensure compliance with this guidance and consistency across geographic areas of responsibility and to facilitate a dialogue between headquarters and field leadership about the effectiveness of the interim priorities.

Each Friday, the Executive Associate Directors for Enforcement and Removal Operations and Homeland Security Investigations will compile and provide to the Office of the Director, the Office of the Deputy Director, and the Office of Policy and Planning (OPP), a written report: (1) identifying each enforcement action taken in the prior week, including the applicable priority criterion, if any; (2) providing a narrative justification of the action; and (3) identifying the date, time, and location of the action.

In addition, each Friday the Executive Associate Director for Enforcement and Removal Operations will provide to the Office of the Director, the Office of the Deputy Director, and OPP, a written report: (1) identifying each removal in the prior week, including the applicable priority criterion, if any; (2) providing a narrative justification of the removal; and (3) identifying the date, time, and location of the removal.

These reporting requirements will be assessed periodically during this interim period to ensure that they are both productive and manageable.

The weekly reports will be made available to the Office of the Secretary.

Questions

Questions regarding this interim guidance or the Interim Memo should be directed to OPP through the chain of command and Directorate or Program Office leadership. Answers to frequently asked policy questions will be published on OPP's inSight page on an ongoing basis. Please note, however, that case-specific questions should generally be addressed by Directorate or Program Office leadership.

No Private Right Statement

These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.