```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                        BROWNSVILLE DIVISION

STATE OF TEXAS, ET AL          )      NO. 1:18-CV-68
                               )
                               )
VS.                            )      Houston, Texas
                               )      10:00 a.m.
                               )
UNITED STATES OF AMERICA, ET   )      OCTOBER 14, 2022
AL                             )


    ************************************************************

                                HEARING

                BEFORE THE HONORABLE ANDREW S. HANEN

                     UNITED STATES DISTRICT JUDGE

                             VOLUME 1 OF 1

    ************************************************************

APPEARANCES:

FOR THE PLAINTIFFS:

      Mr. William Thomas Thompson
      Mr. Ryan Walters
      Office of the Attorney General of Texas
      209 W 14th Street
      8th Floor
      Austin, TX 78701
      Tel: 512-936-2266
      Email: Will.thompson@oag.texas.gov
             Ryan.walters@oag.texas.gov

FOR THE MOVANT, STATE OF NEW JERSEY:

      Mr. Mayur P. Saxena
      New Jersey Office of the Attorney General
      25 Market Street, 8th Floor
      Trenton, NJ 08625
      Tel: 609-376-2702
      Email: Mayur.saxena@njoag.gov
```

```
 1  FOR THE INTERVENOR-DEFENDANTS:

 2       Ms. Nina Perales
         Ms. Samantha Serna
 3       MALDEF
         110 Broadway
 4       Suite 300
         San Antonio, TX 78205
 5       Tel:  210-224-5476
         Email: Nperales@maldef.org
 6              Sserna@maldef.org

 7  FOR THE DEFENDANT THE UNITED STATES OF AMERICA:

 8       Mr. James Joseph Walker
         U.S. Department of Justice
 9       Office of Immigration Litigation
         PO Box 868
10       Washington, DC 20044
         Tel:  202-616-1246
11       Email: James.walker@usdoj.gov

12       Mr. Daniel David Hu
         Office of the US Attorney's Office
13       1000 Louisiana
         Suite 2300
14       Houston, TX 77002
         Tel:  713-567-9518
15       Email: Daniel.hu@usdoj.gov

16  COURT REPORTER:

17       Ms. Kathleen K. Miller, CSR, RMR, CRR
         515 Rusk, Room 8004
18       Houston, Texas  77002
         Tel:  713-250-5087
19

20  Proceedings recorded by mechanical stenography.

21  Transcript produced by computer-assisted transcription.

22

23

24

25
```

1  (Court called to order.)

2           THE COURT:  Be seated.  All right.  We are here
3  in 18-CV-68, Texas vs. The United States.  Who do I have
4  representing the plaintiffs?

10:01:47  5           MR. THOMPSON:  Will Thompson from the office of
6  the Attorney General, Your Honor.  With me is my colleague
7  Ryan Walters.

8           THE COURT:  All right.  Ms. Perales, welcome
9  back.  Who is at your table?

10:01:58  10          MS. PERALES:  Good morning, Your Honor.  Nina
11  Perales for the DACA recipient defendant-intervenors.  With
12  me today is my colleague Samantha Serna from MALDEF.  And
13  also in the courtroom today, Your Honor, are several of the
14  DACA recipient defendant-intervenors themselves:  Esther
10:02:21  15  Joen, Jung Woo Kim, Karina Ruiz de Diaz, other affected
16  individuals, as well as some parents and members of the
17  public.

18          THE COURT:  Okay.  And representing New Jersey
19  there?

10:02:34  20          MR. SAXENA:  Good morning, Your Honor.  Mayur
21  Saxena, Assistant Attorney General, representing New
22  Jersey.

23          THE COURT:  All right.  Thank you.  And,
24  Mr. Hu, at your table?

10:02:43  25          MR. HU:  Good morning, Your Honor.  I have

1 James Walker from Department of Justice, Washington.

2             THE COURT:  All right.  I mean, y'all may have,
3 because you're involved in the appeal, have anticipated the
4 Fifth Circuit opinion coming out.  I didn't.  I mean, you
5 know, I had no idea when it comes out and, you know, I get
6 this order that says, Oh, by the way, you need to decide
7 something really quickly.

8             And so I really am soliciting everyone's
9 input here on how we do what we need to do, which I guess I
10 need to do in the next two weeks.

11             Mr. Thompson, why don't I start with you.
12 What is it you think I need to do to follow the Fifth
13 Circuit's directives, and from your standpoint how should I
14 go about it?

15             MR. THOMPSON:  Thank you, Your Honor.  Would
16 you prefer me at the podium?

17             THE COURT:  Sure.

18             MR. THOMPSON:  Your Honor, I think there's a
19 threshold question that can kind of control whether we're
20 in an emergency posture or not.  As I understand this
21 Court's existing injunction, it enjoins the United
22 States -- it enjoins the United States from granting new
23 DACA applications, and that is true under the memo, and
24 it's equally true under the rule.

25             So at least as I understand the United

1 States's position, they would not be granting new DACA
2 applications even after the effective date of this new rule
3 because of the current injunction.  So long as that is
4 true, then I think we're maintaining the status quo.  There
5 are no new reliance interests being potentially created or
6 anything like that, and we can proceed at a kind of normal
7 pace.  If that is not accurate, then the Plaintiff States
8 believe we would need to act much more expeditiously.
9         THE COURT:  All right.  Mr. Hu, Mr. Walker, you
10 want to weigh in on that topic?  I hate to make y'all come
11 up here, but if you are not near a microphone, it's really
12 hard for us to hear you.
13         MR. WALKER:  Sure.  Good morning, Your Honor.
14         The government has expressed its agreement
15 in the Fifth Circuit and before this Court that the
16 injunction would apply equally to the new rule.  But in
17 that event, the government also would take the position
18 that it would be appropriate to move expeditiously as the
19 Fifth Circuit has asked us to.
20         THE COURT:  And I don't mind doing that.  I
21 mean, I -- really, I have done nothing but read the *Federal*
22 *Register* here for the last week.  But it's the government's
23 position that you're not going to be granting on October
24 31st, or November 1st, any new DACA applications?
25         MR. WALKER:  That is correct, Your Honor.  DHS

```
10:05:59
```

1  has expressed that publicly and we have expressed it to the
2  Court here.  As long as the Court's understanding is the
3  same, that the injunction does apply to the new rule, then
4  DHS will continue to move forward with not granting new
5  DACA requests.
6              THE COURT:  All right.  Well, that takes some
7  of the time pressure off.
8              Let's go to the next topic, and that
9  again, Mr. Thompson, I am going to put the ball in your

```
10:06:12
```

10 court.  The government at least, I don't know if we are
11 going to call it new DACA, DACA 2, whatever, we're -- has
12 gone through a notice and comment procedure.  Is that off
13 the table now?
14             MR. THOMPSON:  Right, Your Honor.  So the Fifth

```
10:06:34
```

15 Circuit decided the notice and comment issue as to the 2012
16 memo.  We belive that's, you know, correct and there is no
17 reason to disturb any of that part of the judgment.  But as
18 to the notice and comment rule-making procedure that has
19 been completed, I don't anticipate making a notice and

```
10:06:48
```

20 comment argument about that.
21             I believe the substantive argument, on the
22 other hand, remains equally valid.  I actually think my
23 friend on the other side agrees with me about that, that
24 the new rule expressly says that it is preserving and

```
10:07:04
```

25 fortifying DACA.  It is not rescinding DACA.  It is not

1  materially changing the substance of DACA.

2            The Fifth Circuit explained the DOJ had
3  represented that, "None of the changes in the final rule
4  are material."  DOJ explained that in the 28(j) letter that
5  they filed in that court.  So I believe Your Honor's
6  rulings continue to apply, and the Fifth Circuit's
7  affirmance continues to apply.  So, I think that's -- there
8  is not as much to do on remand as there could have been.

9            THE COURT:  Okay.  Mr. Walker, what's your
10 position on that?

11           MR. WALKER:  Yes, Your Honor.  We do think the
12 question of notice and comment is resolved with the rule
13 having been put through that process now.  I don't think I
14 agree, or we would agree that the new rule doesn't rescind
15 the 2012 memo.  I believe it does expressly rescind that
16 memo.  We're treating it as of October 31st that that memo
17 is rescinded, and so it's strictly the regulation that
18 would control DACA moving forward.

19           THE COURT:  Well, I think what Mr. Thompson --
20 the way I read Mr. Thompson is that the Fifth Circuit ruled
21 that old DACA, the 2012 memo, violated the substantive
22 portions of the APA.  And since the new DACA, the rule
23 that's been promulgated is the same rule and, I mean, I
24 read the proposed rule and the final rule in the *Federal*
25 *Register* where I read DHS saying, yes, this is the same

1 rule. I mean, they tweaked it a little bit here and there.
2          The way I hear Mr. Thompson argue is
3 that -- I mean, it's not quite a law, the case argument,
4 but it is close to that, saying the Fifth Circuit's ruled,
5 so you got to follow the Fifth Circuit Judge. You know,
6 he's basically saying, I am bound almost by law, you know,
7 by precedent to hold it substantively fatal, right?
8          MR. WALKER: I wouldn't be prepared to agree
9 with that statement today, Your Honor. We do agree that
10 we're in a spot with this ruling from the Fifth Circuit.
11 The government continues to disagree with this Court's
12 holdings on DACA's lawfulness, on the Fifth Circuit's
13 holdings on DACA's lawfulness. And so --
14          THE COURT: Oh, I understand that. But,
15 Ms. Perales, you want to weigh in on this or if the state
16 of New Jersey wants to weigh in, let's talk about what it
17 is I need to decide and how I need to go about it.
18          MS. PERALES: Thank you, Your Honor.
19 Defendant-intervenor DACA recipients are generally in
20 agreement with the position set out by the plaintiffs and
21 the defendants. The DACA rule rescinds and replaces the
22 2012 DACA memo that's in the rule itself, and we believe
23 that the procedural APA claims are no longer live as a
24 result, and that the Fifth Circuit has asked this Court to
25 evaluate the lawfulness of the new DACA rule.

```
                   1              Unlike defendants, defendant-intervenor
                   2  DACA recipients have not taken the position that they are
                   3  so substantively similar that the outcome is foretold.  We
                   4  certainly want the opportunity to do, as the Court has been
10:11:06           5  doing, a careful review of the new rule and the
                   6  administrative record before taking a position on the
                   7  merits here.
                   8              THE COURT:  Okay.  Let me -- you bring up a
                   9  point that is on my things-to-do list here.  I don't have
10:11:22          10  an administrative record.  Is someone going to file that
                  11  with the Court?
                  12              MS. PERALES:  Perhaps I could step aside for
                  13  Mr. Walker.
                  14              THE COURT:  In fact, I had Rhonda check this
10:11:39          15  morning to make sure, and I still don't have it.
                  16              MR. WALKER:  Yes, Your Honor.  The
                  17  administrative record is fairly voluminous in this case.
                  18  Of course, the agency was anticipating this, and so it's
                  19  more or less collected.  We are working through getting it
10:11:52          20  together.  We would expect within the next three, maybe
                  21  four weeks to have it ready for the parties.
                  22              THE COURT:  Okay.  And what -- give me an idea
                  23  when you say voluminous.  Make my day here.
                  24              MR. WALKER:  I apologize.  I haven't seen the
10:12:07          25  record.  I couldn't speak directly to how large it is.  I
```

      1 am waiting for more information from the agency itself on
      2 what they have gathered.  So we should hopefully know that
      3 early next week.
      4            THE COURT:  What all would be in it?  I would
10:12:21    5 guess all the comments.
      6            MR. WALKER:  We discussed -- given the size of
      7 the comments, we thought it better to reference those since
      8 they're still publicly available.  I think it's more of
      9 there are eleven internal documents that were considered
10:12:38   10 the previous administrative record, the previous versions
     11 of DACA.
     12            THE COURT:  Okay.  Now, that, I have read.  So,
     13 I mean, I have read the prior administrative record.
     14            MR. WALKER:  Right.  And so I couldn't speak
10:12:48   15 more specifically to everything that they included.  I
     16 don't want to misspeak here and represent that there will
     17 be something in there that won't be.  But it's sort of a
     18 gathering of the information that the agency, you know,
     19 considered in its course of putting the rule together.
10:13:03   20            THE COURT:  Okay.  I think -- well, let me --
     21 let me let New Jersey weigh in before -- don't go anywhere,
     22 Mr. Walker.
     23            MR. WALKER:  Sure.
     24            THE COURT:  Stay right here.  You're fine from
10:13:22   25 there as long as you speak into the mic.

1                MR. SAXENA:  Your Honor, I will speak from
2 here.
3                THE COURT:  Yeah.
4                MR. SAXENA:  I think you asked about steps
5 going forward.  I think you're right that we're all
6 operating in a bit of a position of ignorance.  We don't
7 have the administrative record.  It may be that, you know,
8 depending on what is in the administrative record, this
9 matter could proceed quite expeditiously, but we're just
10 not in a position to say today, you know, to commit to that
11 kind of course.
12                We do think that it's -- a potential next
13 step could be that the parties could meet and confer
14 regarding a potential schedule, should this matter proceed
15 on a summary judgment track once the administrative record
16 is filed.
17                We also would just query the necessity of
18 either amending the complaint or having a pleading in this
19 case that actually references the final rule.  It may be
20 that it's not necessary, given the position that the
21 Department of Justice has taken.  But that is something
22 that should just be resolved so that the process is
23 orderly.
24                THE COURT:  Okay.  Well, it sounds to me like
25 whatever schedule -- and I am fine with y'all coming up

```
10:15:04
```

1 with it. But, it's -- it's going to be dependent on when
2 everybody gets the record. So you need -- so we ought to
3 do it from -- the schedule ought to, like, kick off from
4 when the record is produced. So maybe, Mr. Walker, what we
5 need to do, and I am thinking out loud, and y'all can weigh
6 in on this, is you produce the record to the -- you know,
7 not only to me but to the interested parties, and once it's
8 produced, then y'all meet and confer and come up with a
9 schedule.

10            Mr. Thompson, you may want to consider
11 amending your complaint, given the new program. I guess
12 the other issue that we ought to mention, and I am, again,
13 soliciting your input, is that so far in the eight years I
14 have been involved in this, I have steadfastly not ruled on
15 the constitutional issue. If I find for the defendants on
16 the substantive part, do I have to do that?

17            MR. THOMPSON: Well, Your Honor, I think -- I
18 think the answer to that hypothetical is a yes, just
19 because it would be a live claim, and if we do not get the
20 relief for which we are asking on the other claims, then
21 that claim would be before Your Honor.

22            THE COURT: Okay. I was afraid you were going
23 to say that because that actually appears to me to be
24 almost an evidentiary-type-hearing problem.

25            My thought is that even though if -- if

1 you amend your complaint, Mr. Thompson, that you would want
2 to keep that in there, if you so desire, but that I may
3 stage this and take that up if I have to.  So let's just
4 concentrate, then, on the substantive APA issues.  I am
10:17:36  5 hearing, Mr. Walker, you say that you're not sure how soon
6 you can produce the record.
7             MR. WALKER:  We're aiming for the end of the
8 month, Your Honor.  It could be the first week of November,
9 so roughly between three and four weeks.
10:17:49  10             THE COURT:  Well, why don't we do this?  Why
11 don't we -- you produce the record to the parties the same
12 time you file it with the Court.  I should warn you that
13 under my local rules that you have -- it's -- you have to
14 file paper with me when it's over a certain length, and it
10:18:18  15 certainly sounds like this one is, so you may have to file
16 a disk and paper as a courtesy copy to the Court.
17             Once the record is produced, the attorneys
18 get together, come up with you -- what you think is a
19 reasonable briefing schedule and propose it to me, and
10:18:46  20 unless I see something, you know, fatally wrong with it,
21 and then once the briefing is done, I'll probably hold
22 another hearing, and -- and we will argue on the merits,
23 and then I'll try to decide it as quickly as I can.
24             Mr. Thompson, why don't I give you
10:19:17  25 until --

1              Where is my calendar?

2              -- November 4th to file whatever amended

3 complaint that you desire.  I am not ordering you to amend,

4 but I am allowing you to amend.  And then the

5 intervenor-defendants and the government can have to the

6 end of the month to file whatever answer you want to file

7 to that amended complaint.

8              MR. THOMPSON:  If I may, Your Honor, there may

9 be one procedural complication with that.  I certainly

10 don't have any objection, but I believe the date the Fifth

11 Circuit mandate will issue is after the date that you would

12 like me to file my amended complaint.  If I am recalling

13 Fifth Circuit precedent correctly, it may be an error for

14 me to attempt to amend a complaint before the mandate has

15 issued after an appeal.

16              Now, if the parties are so inclined, I

17 would be happy to move the Fifth Circuit to issue the

18 mandate more quickly, or resolve it in some other way.  I

19 just wanted to flag that issue for Your Honor.

20              THE COURT:  Okay.  One more moving piece.  I

21 had not considered that.  Thank you for bringing it to my

22 attention.

23              Well, let's do this.  Let's wait for the

24 record.  Once the record is filed, by then we will know if

25 the mandate is issued, and I'll get notice of that, and

```
            1  then I will issue an order setting out a -- you know,
            2  deadlines for you guys to either amend your complaint if
            3  you want to, and the defendants and intervenors to amend
            4  their answers if they want to.  And at the same time, you
10:21:31    5  can meet and confer and decide your briefing schedule.  And
            6  as I said, I'll be open to almost anything y'all agree on,
            7  unless you have me holding a hearing on Christmas or
            8  something.
            9                  All right.  Anything else we can
10:21:52   10  accomplish today?  I didn't anticipate the other moving
           11  part being the mandate.
           12                  Mr. Hu?
           13                  MR. HU:  Your Honor, I think it is going to
           14  fall on my office to file the paper record with the Court.
10:22:08   15  The question is, do you want it in binders?  Holes punched?
           16  I have no idea how large this record is but --
           17                  THE COURT:  Probably in binders.  I hesitate to
           18  say that, because I have -- we can't give away those
           19  binders once the case is over.  We tried giving them to
10:22:28   20  schools and schools don't want them.  They send them back.
           21                  MR. HU:  We will take them back.
           22                  THE COURT:  I'll -- yes.  I think binders.
           23  It's probably the best way to do it.  Otherwise, it's just
           24  going to be boxes and boxes of paper without any kind of
10:22:46   25  organization.
```

```
                1            I am hoping Mr. Walker goes back and finds
                2  the record is only a couple hundred pages, but I am
                3  doubting that.
                4            MR. WALKER:  I'll do my best.
10:22:58        5            THE COURT:  All right.  Anything from the
                6  intervenor standpoint?
                7            MR. WALKER:  I just have one more question,
                8  Your Honor, from the government side.
                9            THE COURT:  Go ahead, Mr. Walker.
10:23:06       10            MR. WALKER:  We raised the question here --
               11  Texas raised the question.  We spoke to whether the Court
               12  also understands the injunction to apply to the new rule as
               13  it did to the memo.  We have expressed our opinion, but
               14  wanted to make sure that the Court shares its opinion.
10:23:19       15            THE COURT:  Yes.  I am enjoining the new memo,
               16  you know, the new DACA as opposed -- and the old DACA.
               17            MR. WALKER:  Thank you.
               18            THE COURT:  Again, though, anybody that is in
               19  the process -- here is my concern about this.  The way I
10:23:44       20  read the new rule, old DACA expires at the end of the
               21  month.  There may be people that need to renew during that
               22  time period, and so are y'all going to continue to renew?
               23  You have my permission to do that.
               24            MR. WALKER:  Yes, Your Honor.  We will just
10:24:10       25  continue basically operating the same way.
```

```
                 1              THE COURT:  I mean, I don't want anybody dumped
                 2   in the -- in the soup while we're arguing over this.
                 3              MR. WALKER:  Right.
                 4              THE COURT:  Okay.  Ms. Perales, you were about
10:24:22         5   to say something.
                 6              MS. PERALES:  My apologies, Your Honor, I was
                 7   hopping up and down a little bit.
                 8              We wanted to make sure that if the Court
                 9   had announced today that the injunction as to the 2012 DACA
10:24:33        10   memo continues as to the new rule, and that seems to be the
                11   understanding of the plaintiffs and defendants, we just
                12   wanted to make sure that the Court also mentioned that it
                13   has stayed that portion of the injunction that applies to
                14   current DACA recipients.
10:24:51        15              THE COURT:  Yes.  I am not changing anything
                16   with regard to that, and I would hope that the government
                17   would continue to provisionally continue the old DACA
                18   program as to the people that are already in it.
                19              MS. PERALES:  Thank you, Your Honor.
10:25:06        20              THE COURT:  Because that -- I mean, you're
                21   shaking your head yes, Mr. Walker, I mean y'all are going
                22   to do that, right?
                23              MR. WALKER:  Yes, Your Honor.  We will continue
                24   operating just the way that it has been.
10:25:16        25              THE COURT:  All right.  Okay.  All right.  I
```

10:25:36

1  think that's everything we can accomplish today.  We are
2  waiting on the record and the mandate; and once the mandate
3  issues, I'll issue an order.  Once the record comes out,
4  y'all get together with a briefing -- and propose a
5  briefing schedule.  All right.  Thank y'all.
6            THE MARSHAL:  All rise.
7  (Concluded at 10:25 a.m.)
8            COURT REPORTER'S CERTIFICATE
9
10     I, Kathleen K. Miller, certify that the foregoing is a
11 correct transcript from the record of proceedings in the
12 above-entitled matter.
13
14 DATE:  Oct. 16, 2022      /s/     _Kathleen K Miller
15                           Kathleen K. Miller, RPR, RMR, CRR
16
17
18
19
20
21
22
23
24
25