**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL.; | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Case No. 1:18-cv-00068 |
| | § | |
| UNITED STATES OF AMERICA, ET AL.; | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, ET AL.; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| *Defendants-Intervenors.* | § | |

**APPENDIX IN SUPPORT OF PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT**

**VOLUME 1 OF 3**

**EXHIBITS 1 THROUGH 5**

**PAGES APP. 001 THROUGH APP. 262**

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023, I electronically filed the foregoing document through the Court's ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ Leif A. Olson*
LEIF A. OLSON

# Exhibit 1



Secretary

**U.S. Department of Homeland Security**
Washington, DC 20528

# Homeland Security

June 15, 2012

MEMORANDUM FOR:     David V. Aguilar
                    Acting Commissioner, U.S. Customs and Border Protection

                    Alejandro Mayorkas
                    Director, U.S. Citizenship and Immigration Services

                    John Morton
                    Director, U.S. Immigration and Customs Enforcement

FROM:               Janet Napolitano
                    Secretary of Homeland Security

SUBJECT:            Exercising Prosecutorial Discretion with Respect to Individuals
                    Who Came to the United States as Children

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the
Department of Homeland Security (DHS) should enforce the Nation's immigration laws against
certain young people who were brought to this country as children and know only this country as
home. As a general matter, these individuals lacked the intent to violate the law and our ongoing
review of pending removal cases is already offering administrative closure to many of them.
However, additional measures are necessary to ensure that our enforcement resources are not
expended on these low priority cases but are instead appropriately focused on people who meet
our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of
prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for a least five years preceding the date of
  this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education
  development certificate, or is an honorably discharged veteran of the Coast Guard or
  Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple
  misdemeanor offenses, or otherwise poses a threat to national security or public safety;
  and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the

2

**App. 003**

above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.

- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here.

Janet Napolitano

3

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-68 |
| | ) | |
| UNITED STATES OF AMERICA, *et at.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KARLA PEREZ, *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF NEW JERSEY, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

---

**FEDERAL DEFENDANTS' REVISED RESPONSE TO**
**DEFENDANT-INTERVENORS' REVISED DISCOVERY REQUEST**

TO: Defendant-Intervenors, by and through their attorneys of record, Nina Perales, Celina Moreno, Jack Salmon, Alejandra Avila, Mexican American Legal Defense and Educational Fund, 110 Broadway, Suite 300, San Antonio, Texas 78205; Carlos Moctezuma García, García & García, Attorneys at Law P.L.L.C., P.O. Box 4545 McAllen, Texas 78502.

Federal Defendants served the response to Defendant-Intervenors' revised interrogatory pursuant to the Federal Rules of Civil Procedure on October 14, 2019. Federal Defendants responded to this interrogatory pursuant to the Court's June 26, 2019 Order, ECF Dkt. 412, requiring that Federal Defendants respond to Defendants-Intervenors' Interrogatory No. 13 – notwithstanding Federal Defendants' objections, and the Court's August 2, 2019 Order, ECF Dkt. 421, granting the parties' joint motion to modify the interrogatory to which Federal Defendants were ordered to respond, by reviewing a random sampling of 500 responsive records. Following discussions with counsel for Defendants-Intervenors, Federal Defendants now serve this revised response that clarifies the scope of the sample.

**App. 006**

## RESPONSE TO DEFENDANT-INTERVENORS' REVISED INTERROGATORY

**REVISED INTERROGATORY**

Please identify the total number of requestors approved for DACA between June 2012 and June 2018:

- With an approved Form I-485 (Application to Register Permanent Residence or Adjust Status), based on 8 U.S.C. § 1255(a), and

- Who received a Class of Admission code (COA) following approval of the Form I-485 indicating they adjusted to Lawful Permanent Resident (LPR) status as an immediate relative (*i.e.,* qualified spouse, child or parent of a United States citizen), and

- With an approved Form I-131 application for an advance parole document based on the standards associated with the DACA policy where the Form I-131 was approved before the Form I-485 filing date; and

- Who was paroled into the United States by U.S. Customs and Border Protection on the basis of the DACA-based advance parole document (Form I-512L) that was issued to the DACA recipient and where such parole occurred before the Form I-485 was filed; and

- Where the DACA recipient/adjustment applicant could not have met the requirement in 8 U.S.C. § 1255(a) to have been "inspected and admitted, or paroled" but for his or her entry to the United States on the DACA-based advance parole document.

**RESPONSE**

USCIS determined from computer searches of all approved DACA requestors, that 14,600 approved requestors met the first three criteria of the interrogatory. Out of a random sampling of 500 individuals from those 14,600 requestors, 484 individuals met all the criteria in the Interrogatory. Based on the population of 14,600 requestors that met the first three criteria of the interrogatory before sampling, USCIS estimates with a +/- 1.5% margin of error, that between 13,908 and 14,358 requestors approved for DACA between June 2012 and June 2018 meet all the criteria as specified in this revised interrogatory above.

**App. 007**

## VERIFICATION OF RESPONSE TO REVISED INTERROGATORY

I, _____Alexander King_____ , Senior Advisor, U.S. Citizenship and
Immigration Services' (USCIS) Service Center Operations (SCOPS), certify that, based on my
knowledge, information made available to me in the course of my official duties, and belief, the
foregoing response is true and correct regarding the manual review of the records related to the
five hundred (500) individuals selected for the random sample provided to SCOPS and the
conclusion that four hundred eighty-four (484) individuals in the sample met all of the terms of
the revised interrogatory approved by the Court on August 2, 2019.

DATED: October 10, 2019.

Alexander King
Senior Advisor, SCOPS, USCIS

**App. 008**

**VERIFICATION OF RESPONSE TO REVISED INTERROGATORY**

I, __Mike Hoefer__ , Chief of U.S. Citizenship and Immigration Services' (USCIS) Office of Performance and Quality (OPQ), certify that, based on my knowledge, information made available to me in the course of my official duties, and belief, the foregoing is true and correct regarding: 1) the total population of requestors that met the first three criteria of the interrogatory before sampling and 2) within the stated margin of error, the estimated number of requestors approved for DACA between June 2012 and June 2018 that met the all criteria as specified in the interrogatory.

DATED: October 10, 2019.

Michael Hoefer
Chief, OPQ, USCIS

**App. 009**

Dated: November 8, 2019               Respectfully submitted,

                                      JOSEPH H. HUNT
                                      Assistant Attorney General
                                      Civil Division
                                      WILLIAM C. PEACHEY
                                      Director, Office of Immigration Litigation
                                      District Court Section

                                      /s/ *Jeffrey S. Robins*
                                      JEFFREY S. ROBINS
                                      Attorney-in-Charge
                                      Deputy Director
                                      U.S. Department of Justice, Civil Division
                                      Office of Immigration Litigation
                                      District Court Section
                                      P.O. Box 868, Washington, DC 20044
                                      Telephone: (202) 616-1246
                                      Facsimile: (202) 305-7000
*Attorneys for Federal Defendants*     jeffrey.robins@usdoj.gov

**App. 010**

# Exhibit 3

**U.S. Citizenship and Immigration Services**

**Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals,
by Fiscal Year, Quarter, Intake, Biometrics and Case Status
Fiscal Year 2012-2017 (September 30)**

| Period | Intake[1] | | | | Biometrics[6] | Requests Under Review[9] | Case Review[8] | | |
|---|---|---|---|---|---|---|---|---|---|
| | Requests Accepted[2] | Requests Rejected[3] | Total Requests Received[4] | Average Accepted/Day[5] | Biometrics Scheduled[7] | | Approved[10] | Denied[11] | Pending[12] |
| **Fiscal Year - Total[6]** | | | | | | | | | |
| 2012 | 152,431 | 5,395 | 157,826 | 3,629 | 124,055 | 38,024 | 1,680 | | 150,751 |
| 2013 | 427,616 | 16,351 | 443,967 | 1,697 | 445,013 | 77,747 | 470,352 | 10,975 | 97,040 |
| 2014 | 238,900 | 24,887 | 263,787 | 952 | 209,670 | 101,568 | 158,336 | 20,992 | 156,612 |
| 2014 Initial | 122,424 | 19,127 | 141,551 | 488 | | - | 136,101 | 20,989 | 62,374 |
| 2014 Renewal | 116,476 | 5,760 | 122,236 | 1,370 | | - | 22,235 | D | 94,238 |
| 2015 | 448,856 | 35,474 | 484,330 | 1,781 | 525,499 | 48,355 | 510,007 | 21,355 | 74,106 |
| 2015 Initial | 85,303 | 7,477 | 92,780 | 338 | | - | 90,613 | 19,070 | 37,994 |
| 2015 Renewal | 363,553 | 27,997 | 391,550 | 1,443 | | - | 419,394 | 2,285 | 36,112 |
| 2016 | 260,701 | 12,317 | 273,018 | 1,035 | 68,140 | - | 198,702 | 14,427 | 121,678 |
| 2016 Initial | 73,362 | 1,204 | 74,566 | 291 | | - | 52,789 | 11,398 | 47,169 |
| 2016 Renewal | 187,339 | 11,113 | 198,452 | 744 | | - | 145,913 | 3,029 | 74,509 |
| 2017 | 472,873 | 43,429 | 516,302 | 1,884 | | - | 462,713 | 13,193 | 118,645 |
| 2017 Initial | 45,557 | 42 | 45,599 | 194 | | - | 47,445 | 9,248 | 36,033 |
| 2017 Renewal | 427,316 | 43,387 | 470,703 | 1,602 | | - | 415,268 | 3,945 | 82,612 |
| Total Cumulative | 2,001,377 | 137,853 | 2,139,230 | 1,541 | 1,372,377 | - | 1,801,790 | 80,942 | 118,645 |
| Total Cumulative Initial | 906,693 | 49,596 | 956,289 | 698 | | - | 798,980 | 71,680 | 36,033 |
| Total Cumulative Renewal | 1,094,684 | 88,257 | 1,182,941 | 1,305 | | - | 1,002,810 | 9,262 | 82,612 |
| **Fiscal Year 2017 by Quarter[13]** | | | | | | | | | |
| Q1. October - December | 110,186 | 4,141 | 114,327 | 1,777 | | - | 121,919 | 2,720 | 107,225 |
| Q1. October - December Initial | 15,326 | 15 | 15,341 | 247 | | - | 18,239 | 2,091 | 42,165 |
| Q1. October - December Renewal | 94,860 | 4,126 | 98,986 | 1,530 | | - | 103,680 | 629 | 65,060 |
| Q2. January - March | 132,784 | 19,266 | 152,050 | 2,142 | | - | 124,700 | 4,137 | 111,172 |
| Q2. January - March Initial | 10,419 | 8 | 10,427 | 168 | | - | 17,220 | 3,024 | 32,340 |
| Q2. January - March Renewal | 122,365 | 19,258 | 141,623 | 1,974 | | - | 107,480 | 1,113 | 78,832 |
| Q3. April - June | 94,562 | 8,590 | 103,152 | 1,525 | | - | 102,509 | 3,705 | 99,520 |
| Q3. April - June Initial | 10,977 | 8 | 10,985 | 177 | | - | 5,827 | 2,719 | 34,771 |
| Q3. April - June Renewal | 83,585 | 8,582 | 92,167 | 1,348 | | - | 96,682 | 986 | 64,749 |
| Q4. July - September | 135,341 | 11,432 | 146,773 | 2,115 | | - | 113,585 | 2,631 | 118,645 |
| Q4. July - September Initial | 8,835 | 11 | 8,846 | 138 | | - | 6,159 | 1,414 | 36,033 |
| Q4. July - September Renewal | 126,506 | 11,421 | 137,927 | 1,977 | | - | 107,426 | 1,217 | 82,612 |

D - Data withheld to protect requestors' privacy.

- Represents zero.

[1] Refers to a request for USCIS to consider deferred removal action for an individual based on guidelines described in the Secretary of Homeland Security's memorandum issued June 15, 2012.
  Each request is considered on a case-by-case basis.
  See http://www.uscis.gov/childhoodarrivals.

[2] The number of new requests accepted at a Lockbox during the reporting period.

[3] The number of requests rejected at a Lockbox during the reporting period.

[4] The number of requests that were received at a Lockbox during the reporting period.

[5] The number of requests accepted per day at a Lockbox as of the end of the reporting period. Also note the average accepted per day for initial plus renewal will not equal the total average.

[6] Refers to capture of requestors' biometrics.

[7] The number of appointments scheduled to capture requestors' biometrics during the reporting period.

[8] Refers to consideration of deferring action on a case-by-case basis during the reporting period.

[9] The number of new requests received and entered into a case-tracking system during the reporting period.

[10] The number of requests approved during the reporting period.

[11] The number of requests that were denied, terminated, or withdrawn during the reporting period.

[12] The number of requests awaiting a decision as of the end of the reporting period.

[13] Data on biometrics scheduled is not available past January 31, 2016. Totals reflect up to January 31, 2016.

NOTE: 1. Some requests approved or denied may have been received in previous reporting periods.
  2. The report reflects the most up-to-date estimate available at the time the report is generated.

Source:  Department of Homeland Security, U.S. Citizenship and Immigration Services, Biometrics Capture Systems, CIS Consolidated Operational Repository (CISCOR), September 30th, 2017

**App. 012**

**U.S. Citizenship and Immigration Services**

**Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by Fiscal Year, Quarter, Intake, Biometrics and Case Status**
**Fiscal Year 2012-2017 (September 30)**

Requests by Intake, Biometrics and Case Status

| Top Countries of Origin / Period | Requests Accepted | Requests Received | Total Requests Received | Average Accepted/Day | Biometrics Scheduled | Requests Under Review | Denied | Pending | Residence | Initials | Renewals | Total | Approved to Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mexico | | | | | | | | | California | | | | |
| El Salvador | | | | | | | | | Texas | | | | |
| Guatemala | | | | | | | | | Arizona | | | | |
| Honduras | | | | | | | | | Florida | | | | |
| Peru | | | | | | | | | Illinois | | | | |
| Brazil | | | | | | | | | New York | | | | |
| South Korea | | | | | | | | | New Jersey | | | | |
| Ecuador | | | | | | | | | Idaho | | | | |
| Colombia | | | | | | | | | North Carolina | | | | |
| Philippines | | | | | | | | | Georgia | | | | |
| Argentina | | | | | | | | | Washington | | | | |
| India | | | | | | | | | Colorado | | | | |
| Jamaica | | | | | | | | | Virginia | | | | |
| Venezuela | | | | | | | | | Maryland | | | | |
| Dominican Republic | | | | | | | | | Massachusetts | | | | |
| Uruguay | | | | | | | | | Oregon | | | | |
| Bolivia | | | | | | | | | Indiana | | | | |
| Unknown | | | | | | | | | Nevada | | | | |
| Costa Rica | | | | | | | | | Pennsylvania | | | | |
| Poland | | | | | | | | | Utah | | | | |
| Chile | | | | | | | | | Michigan | | | | |
| Pakistan | | | | | | | | | Wisconsin | | | | |
| Tobago | | | | | | | | | Minnesota | | | | |
| Nicaragua | | | | | | | | | Oklahoma | | | | |
| Guyana | | | | | | | | | Kansas | | | | |

D: Data withheld to protect requestors' privacy.
- Represents zero.
a The number of requests that were accepted to date of the reporting period.
b The number of requests that were accepted to date of the reporting period.
c All fields with less than 10 or a blank in the state field are included in the field "not reported."
NOTE: 1) Some requests approved or denied may have been received in previous reporting periods.
2) The report reflects the most up-to-date estimate data available at the time the report is generated.
Source: Department of Homeland Security, U.S. Citizenship and Immigration Services, Biometrics Capture Systems, CIS Consolidated Operational Repository (CISCOR), September 2017

# Exhibit 4



**U.S. Citizenship and
Immigration Services**

---

**Archived Content**

**This page contains information that is no longer current but remains on our site for reference
purposes.**

---

# Frequently Asked Questions

---

**Important information about DACA requests:** Due to federal court orders, USCIS has resumed
accepting requests to renew a grant of deferred action under DACA. USCIS is not accepting requests
from individuals who have never before been granted deferred action under DACA. Until further
notice, and unless otherwise provided in this guidance, the DACA policy will be operated on the terms
in place before it was rescinded on Sept. 5, 2017. For more information, visit Deferred Action for
Childhood Arrivals: Response to January 2018 Preliminary Injunction.

---

### *DHS DACA FAQs*

- **DACA Process**
- **What is Deferred Action for Childhood Arrivals?**
- **General Information for All Requestors**
- **Background Checks**
- **After USCIS Makes a Decision**
- **Initial Requests for DACA**
- **Renewal of DACA**
- **Travel**
- **Criminal Convictions**
- **Miscellaneous**

## I. General Information for All Requestors

**A. What is Deferred Action for Childhood Arrivals?**

 As the Department of Homeland Security (DHS) continues to focus its enforcement resources on the
removal of individuals who pose a danger to national security or a risk to public safety, DHS will exercise
prosecutorial discretion as appropriate to ensure that enforcement resources are not expended on low
priority cases, such as individuals who came to the United States as children and meet other key
guidelines. Individuals who demonstrate that they meet the guidelines below may request consideration
of deferred action for childhood arrivals (DACA) for a period of two years, subject to renewal for a period
of two years, and may be eligible for employment authorization.

**App. 015**

Frequently Asked Questions

You may request consideration of DACA if you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Had no lawful status on June 15, 2012, meaning that:

   - You never had a lawful immigration status on or before June 15, 2012, or
   - Any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired as of June 15, 2012;

6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and
7. Have not been convicted of a felony, a significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

**Individuals can call U.S. Citizenship and Immigration Services (USCIS) at 800-375-5283 with questions or to request more information on DACA.** Those with pending requests can also use a number of online self-help tools which include the ability to check case status and processing times, change your address, and send an inquiry about a case pending longer than posted processing times or non-delivery of a card or document.

**Q1: What is deferred action?**
A1: Deferred action is a discretionary determination to defer a removal action of an individual as an act of prosecutorial discretion. For purposes of future inadmissibility based upon **unlawful presence**, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect. An individual who has received deferred action is authorized by DHS to be present in the United States, and is therefore considered by DHS to be lawfully present during the period deferred action is in effect. However, deferred action does not confer **lawful status** upon an individual, nor does it excuse any previous or subsequent periods of unlawful presence.

Under existing regulations, an individual whose case has been deferred is eligible to receive employment authorization for the period of deferred action, provided he or she can demonstrate "an economic necessity for employment." DHS can terminate or renew deferred action at any time, at the agency's discretion.

**Q2: What is DACA?**
A2: On June 15, 2012, the Secretary of Homeland Security announced that certain people who came to the United States as children and meet several key guidelines may request consideration of deferred action for a period of two years, subject to renewal, and would then be eligible for work authorization.

Individuals who can demonstrate through verifiable documentation that they meet these guidelines will be considered for deferred action. Determinations will be made on a case-by-case basis under the DACA guidelines.

**Q3: Is there any difference between "deferred action" and DACA under this process?**
A3: DACA is one form of deferred action. The relief an individual receives under DACA is identical for immigration purposes to the relief obtained by any person who receives deferred action as an act of prosecutorial discretion.

**Q4: If my removal is deferred under the consideration of DACA, am I eligible for employment authorization?**

A4: Yes. Under existing regulations, if your case is deferred, you may obtain employment authorization from USCIS provided you can demonstrate an economic necessity for employment.

**Q5: If my case is deferred, am I in lawful status for the period of deferral?**

A5: No. Although action on your case has been deferred and you do not accrue unlawful presence (for admissibility purposes) during the period of deferred action, deferred action does not confer any lawful status.

The fact that you are not accruing unlawful presence does not change whether you are in lawful status while you remain in the United States. However, although deferred action does not confer a lawful immigration status, your period of stay is authorized by the Department of Homeland Security while your deferred action is in effect and, for admissibility purposes, you are considered to be lawfully present in the United States during that time. **Individuals granted deferred action are not precluded by federal law from establishing domicile in the U.S.**

Apart from the immigration laws, "lawful presence," "lawful status" and similar terms are used in various other federal and state laws. For information on how those laws affect individuals who receive a favorable exercise of prosecutorial discretion under DACA, please contact the appropriate federal, state or local authorities.

**Q6: Can I renew my period of deferred action and employment authorization under DACA?**

A6: Yes. You may request consideration for a renewal of your DACA. Your request for a renewal will be considered on a case-by-case basis. If USCIS renews its exercise of discretion under DACA for your case, you will receive deferred action for another two years, and if you demonstrate an economic necessity for employment, you may receive employment authorization throughout that period.

Return to top.

**B. DACA Process**

**Q7: How do I request consideration of DACA?**

A7: To request consideration of DACA (either as an initial request or to request a renewal), you must submit Form I-821, Consideration of Deferred Action for Childhood Arrivals to USCIS. Please visit uscis.gov/i-821d before you begin the process to make sure you are using the most current version of the form available. This form must be completed, properly signed and accompanied by a Form I-765, Application for Employment Authorization, and a Form I-765WS, Worksheet (PDF, 241 KB), establishing your economic need for employment. If you fail to submit a completed Form I-765 (along with the accompanying filing fees for that form, please see the Form I-821D page for more information), USCIS will not consider your request for deferred action. Please read the form instructions to ensure that you answer the appropriate questions (determined by whether you are submitting an initial or renewal request) and that you submit all the required documentation to support your initial request.

You must file your request for consideration of DACA at the USCIS Lockbox. You can find the mailing address and instructions at www.uscis.gov/i-821d. As of June 5, 2014, requestors must use the new version of the form.  After your Form I-821D, Form I-765, and Form I-765 Worksheet have been received, USCIS will review them for completeness, including submission of the required fee, initial evidence and supporting documents (for initial filings).

If it is determined that the request is complete, USCIS will send you a receipt notice. USCIS will then send you an appointment notice to visit an Application Support Center (ASC) for biometric services, if an appointment is required. Please make sure you read and follow the directions in the notice. Failure to attend your biometrics appointment may delay processing of your request for consideration of deferred action, or may result in a denial of your request. You may also choose to receive an email and/or text message notifying you that your form has been accepted by completing a Form G-1145, E-Notification of Application/Petition Acceptance.

**App. 017**

Each request for consideration of DACA will be reviewed on an individual, case-by-case basis. USCIS may request more information or evidence from you, or request that you appear at a USCIS office. USCIS will notify you of its determination in writing.

**Note:** All individuals who believe they meet the guidelines, including those in removal proceedings, with a final removal order, or with a voluntary departure order (and not in immigration detention), may affirmatively request consideration of DACA from USCIS through this process. Individuals who are currently in immigration detention and believe they meet the guidelines may not request consideration of deferred action from USCIS but may identify themselves to their deportation officer or Jail Liaison. You may also contact the ICE Field Office Director. For more information visit ICE's website at www.ice.gov/daca.

**Q8: Can I obtain a fee waiver or fee exemption for this process?**
A8: There are no fee waivers available for employment authorization applications connected to DACA. There are very limited fee exemptions available. Requests for fee exemptions must be filed and favorably adjudicated before an individual files his/her request for consideration of DACA without a fee. In order to be considered for a fee exemption, you must submit a letter and supporting documentation to USCIS demonstrating that you meet one of the following conditions:

- You are under 18 years of age, have an income that is less than 150 percent of the U.S. poverty level, and are in foster care or otherwise lacking any parental or other familial support; or

- You are under 18 years of age and homeless; or

- You cannot care for yourself because you suffer from a serious, chronic disability and your income is less than 150 percent of the U.S. poverty level; or,

- You have, at the time of the request, accumulated **$10,000** or more in debt in the past 12 months as a result of unreimbursed medical expenses for yourself or an immediate family member, and your income is less than 150 percent of the U.S. poverty level.

You can find additional information on our Fee Exemption Guidance Web page. Your request must be submitted and decided before you submit a request for consideration of DACA without a fee. In order to be considered for a fee exemption, you must provide documentary evidence to demonstrate that you meet any of the above conditions at the time that you make the request. For evidence, USCIS will:

- Accept affidavits from community-based or religious organizations to establish a requestor's homelessness or lack of parental or other familial financial support.

- Accept copies of tax returns, bank statement, pay stubs, or other reliable evidence of income level. Evidence can also include an affidavit from the applicant or a responsible third party attesting that the applicant does not file tax returns, has no bank accounts, and/or has no income to prove income level.

- Accept copies of medical records, insurance records, bank statements, or other reliable evidence of unreimbursed medical expenses of at least $**10,000**.

- Address factual questions through Requests for Evidence (RFEs).

**Q9: If individuals meet the guidelines for consideration of DACA and are encountered by U.S. Customs and Border Protection (CBP) or U.S. Immigration and Customs Enforcement (ICE), will they be placed into removal proceedings?**
A9: DACA is intended, in part, to allow CBP and ICE to focus on priority cases. Under the direction of the Secretary of Homeland Security, if an individual meets the guidelines for DACA, CBP or ICE should exercise their discretion on a case-by-case basis to prevent qualifying individuals from being apprehended, placed into removal proceedings, or removed. If individuals believe that, in light of this policy, they should not have been apprehended or placed into removal proceedings, contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q10: Does this process apply to me if I am currently in removal proceedings, have a final removal order, or have a voluntary departure order?**

A10: This process is open to any individual who can demonstrate he or she meets the guidelines for consideration, including those who have never been in removal proceedings as well as those in removal proceedings, with a final order, or with a voluntary departure order (as long as they are not in immigration detention).

**Q11: If I am not in removal proceedings but believe I meet the guidelines for consideration of DACA, should I seek to place myself into removal proceedings through encounters with CBP or ICE?**
A11: No. If you are not in removal proceedings but believe that you meet the guidelines, you should submit your DACA request to USCIS under the process outlined below.

**Q12: Can I request consideration of DACA from USCIS if I am in immigration detention under the custody of ICE?**
A12: No. If you are currently in immigration detention, you may not request consideration of DACA from USCIS. If you think you may meet the guidelines of this process, you should identify yourself to your deportation officer or Jail Liaison. You may also contact the ICE Field Office Director. For more information, visit ICE's website at www.ice.gov/daca.

**Q13: If I am about to be removed by ICE and believe that I meet the guidelines for consideration of DACA, what steps should I take to seek review of my case before removal?**
A13: If you believe you can demonstrate that you meet the guidelines and are about to be removed, you should immediately contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q14: What should I do if I meet the guidelines of this process and have been issued an ICE detainer following an arrest by a state or local law enforcement officer?**
A14: If you meet the guidelines and have been served a detainer, you should immediately contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q15: If I accepted an offer of administrative closure under the case-by-case review process or my case was terminated as part of the case-by-case review process, can I be considered for deferred action under this process?**
A15: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you have accepted an offer of administrative closure or termination under the case-by-case review process.

**Q16: If I declined an offer of administrative closure under the case-by-case review process, can I be considered for deferred action under this process?**
A16: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you declined an offer of administrative closure under the case-by-case review process.

**Q17: If my case was reviewed as part of the case-by-case review process but I was not offered administrative closure, can I be considered for deferred action under this process?**
A17: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you were not offered administrative closure following review of your case as part of the case-by-case review process.

**Q18: Can I request consideration of DACA under this process if I am currently in a nonimmigrant status (e.g. F-1, E-2, H-4) or have Temporary Protected Status (TPS)?**
A18: No. You can only request consideration of DACA under this process if you currently have no immigration status and were not in any lawful status on June 15, 2012.

**Q19: Will the information I share in my request for consideration of DACA be used for immigration enforcement purposes?**
A19: Information provided in this request is protected from disclosure to ICE and CBP for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance (www.uscis.gov/NTA). Individuals whose cases are deferred pursuant to DACA will not be referred to ICE. The information may be shared with national security and law enforcement agencies, including ICE and

CBP, for purposes other than removal, including for assistance in the consideration of DACA, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense. The above information sharing policy covers family members and guardians, in addition to the requestor. This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

**Q20: If my case is referred to ICE for immigration enforcement purposes or if I receive an NTA, will information related to my family members and guardians also be referred to ICE for immigration enforcement purposes?**
A20: If your case is referred to ICE for purposes of immigration enforcement or you receive an NTA, information related to your family members or guardians that is contained in your request will not be referred to ICE for purposes of immigration enforcement against family members or guardians. However, that information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of DACA, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense.

This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

**Q21: Will USCIS verify documents or statements that I provide in support of a request for DACA?**

A21: USCIS has the authority to verify documents, facts, and statements that are provided in support of requests for DACA. USCIS may contact education institutions, other government agencies, employers, or other entities in order to verify information.

<div align="right"><em>Return to top.</em></div>

**C. Background Checks**

**Q22: Will USCIS conduct a background check when reviewing my request for consideration of DACA?**
A22: Yes. You must undergo biographic and biometric background checks before USCIS will consider your DACA request.

**Q23: What do background checks involve?**
A23: Background checks involve checking biographic and biometric information provided by the individuals against a variety of databases maintained by DHS and other federal government agencies.

**Q24: What steps will USCIS and ICE take if I engage in fraud through the new process?**
A24: If you knowingly make a misrepresentation, or knowingly fail to disclose facts, in an effort to obtain DACA or work authorization through this process, you will be treated as an immigration enforcement priority to the fullest extent permitted by law, and be subject to criminal prosecution and/or removal from the United States.

<div align="right"><em>Return to top.</em></div>

**D. After USCIS Makes a Decision**

**Q25: Can I appeal USCIS' determination?**
A25: No. You cannot file a motion to reopen or reconsider, and cannot appeal the decision if USCIS denies your request for consideration of DACA.

You may request a review of your I-821D denial by contacting the USCIS Contact Center at 800-375-5283. For people who are deaf, hard of hearing or have a speech disability: TTY 800-767-1833.

at 1-800-375-5283 to have a service request created if you believe that you actually did meet all of the DACA guidelines and you believe that your request was denied because USCIS:

**App. 020**

- Denied the request based on abandonment, when you actually responded to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) within the prescribed time;

- Mailed the RFE or NOID to the wrong address although you had changed your address online at www.uscis.gov **or** with a customer service representative on the phone and submitted a Form AR-11, Change of Address, before USCIS issued the RFE or NOID.
  - To ensure the address is updated on a pending case as quickly as possible, we recommend that customers submit a change of address request at www.uscis.gov/addresschange.  Please note that only an online change of address or a Form AR-11 submission will satisfy the legal requirements for notifying the agency of an address change. Therefore, if you called a customer service representative to change your address, please be sure you have also submitted your address change online or with a Form AR-11.

- Denied the request on the grounds that you did not come to the United States prior to your 16th birthday, but the evidence submitted at the time of filing shows that you did arrive before reaching that age.

- Denied the request on the grounds that you were under age 15 at the time of filing but not in removal proceedings, while the evidence submitted at the time of filing show that you indeed were in removal proceedings when the request was filed;

- Denied the request on the grounds that you were 31 or older as of June 15, 2012, but the evidence submitted at the time of filing shows that you were under the age of 31 as of June 15, 2012;

- Denied the request on the grounds that you had lawful status on June 15, 2012, but the evidence submitted at the time of filing shows that you indeed were in an unlawful immigration status on that date;

- Denied the request on the grounds that you were not physically present in the United States on June 15, 2012, and up through the date of filing, but the evidence submitted at the time of filing shows that you were, in fact, present;

- Denied the request due to your failure to appear at a USCIS Application Support Center (ASC) to have your biometrics collected, when you in fact either did appear at a USCIS ASC to have this done or requested prior to the scheduled date of your biometrics appointment to have the appointment rescheduled; or

- Denied the request because you did not pay the filing fees for Form I-765, Application for Employment Authorization, when you actually did pay these fees

If you believe your request was denied due to any of these administrative errors, you may contact our USCIS Contact Center at 800-375-5283. For people who are deaf, hard of hearing or have a speech disability: TTY 800-767-1833. Customer service officers are available Monday – Friday from 8 a.m. – 6 p.m. in each U.S. time zone.

**Q26: If USCIS does not exercise deferred action in my case, will I be placed in removal proceedings?**
A26: If you have submitted a request for consideration of DACA and USCIS decides not to defer action in your case, USCIS will apply its policy guidance governing the referral of cases to ICE and the issuance of Notices to Appear (NTA). If your case does not involve a criminal offense, fraud, or a threat to national security or public safety, your case will not be referred to ICE for purposes of removal proceedings except where DHS determines there are exceptional circumstances. For more detailed information on the applicable NTA policy, visit www.uscis.gov/NTA. If after a review of the totality of circumstances USCIS determines to defer action in your case, USCIS will likewise exercise its discretion and will not issue you an NTA.

**Q27: Can my deferred action under the DACA process be terminated  before it expires?**

A27: Yes.

 DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion.

**App. 021**

Return to top.

## II. Initial Requests for DACA

**Q28: What guidelines must I meet to be considered for deferred action for childhood arrivals (DACA)?**
A28: Under the Secretary of Homeland Security's June 15, 2012 memorandum, in order to be considered for DACA, you must submit evidence, including supporting documents, showing that you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Had no lawful status on June 15, 2012;
6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and
7. Have not been convicted of a felony, significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

These guidelines must be met for consideration of DACA. U.S. Citizenship and Immigration Services (USCIS) retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met.

**Q29: How old must I be in order to be considered for deferred action under this process?**
A29:

- If you have never been in removal proceedings, or your proceedings have been terminated before your request for consideration of DACA, you must be at least 15 years of age or older at the time of filing and meet the other guidelines.
- If you are in removal proceedings, have a final removal order, or have a voluntary departure order, and are not in immigration detention, you can request consideration of DACA even if you are under the age of 15 at the time of filing and meet the other guidelines.
- In all instances, you must have been under the age of 31 as of June 15, 2012, to be considered for DACA.

**Q30: I first came to the United States before I turned 16 years old and have been continuously residing in the United States since at least June 15, 2007. Before I turned 16 years old, however, I left the United States for some period of time before returning and beginning my current period of continuous residence. May I be considered for deferred action under this process?**
A30: Yes, but only if you established residence in the United States during the period before you turned 16 years old, as evidenced, for example, by records showing you attended school or worked in the United States during that time, or that you lived in the United States for multiple years during that time. In addition to establishing that you initially resided in the United States before you turned 16 years old, you must also have maintained continuous residence in the United States from June 15, 2007, until the present time to be considered for deferred action under this process.

**Q31: To prove my continuous residence in the United States since June 15, 2007, must I provide evidence documenting my presence for every day, or every month, of that period?**
A31: To meet the continuous residence guideline, you must submit documentation that shows you have been living in the United States from June 15, 2007, up until the time of your request. You should provide

**App. 022**

documentation to account for as much of the period as reasonably possible, but there is no requirement that every day or month of that period be specifically accounted for through direct evidence.

It is helpful to USCIS if you can submit evidence of your residence during at least each year of the period. USCIS will review the documentation in its totality to determine whether it is more likely than not that you were continuously residing in the United States for the period since June 15, 2007. Gaps in the documentation as to certain periods may raise doubts as to your continued residence if, for example, the gaps are lengthy or the record otherwise indicates that you may have been outside the United States for a period of time that was not brief, casual or innocent.

If gaps in your documentation raise questions, USCIS may issue a Request for Evidence to allow you to submit additional documentation that supports your claimed continuous residence.

Affidavits may be submitted to explain a gap in the documentation demonstrating that you meet the five-year continuous residence requirement. If you submit affidavits related to the continuous residence requirement, you must submit two or more affidavits, sworn to or affirmed by people other than yourself who have direct personal knowledge of the events and circumstances during the period as to which there is a gap in the documentation. Affidavits may only be used to explain gaps in your continuous residence; they cannot be used as evidence that you meet the entire five-year continuous residence requirement.

**Q32: Does "currently in school" refer to the date on which the request for consideration of deferred action is filed?**
A32: To be considered "currently in school" under the guidelines, you must be enrolled in school on the date you submit a request for consideration of deferred action under this process.

**Q33: Who is considered to be "currently in school" under the guidelines?**
A33: To be considered "currently in school" under the guidelines, you must be enrolled in:

- a public, private, or charter elementary school, junior high or middle school, high school, secondary school, alternative program, or homeschool program that meets state requirements;

- an education, literacy, or career training program (including vocational training) that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; or

- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other state-authorized exam (e.g., HiSet or TASC) in the United States.

Such education, literacy, career training programs (including vocational training), or education programs assisting students in obtaining a regular high school diploma or its recognized equivalent under state law, or in passing a GED exam or other state-authorized exam in the United States, include, but are not limited to, programs funded, in whole or in part, by federal, state, county or municipal grants or administered by non-profit organizations. Programs funded by other sources may qualify if they are programs of demonstrated effectiveness.

In assessing whether such programs not funded in whole or in part by federal, state, county or municipal grants or administered by non-profit organizations are of demonstrated effectiveness, USCIS will consider the duration of the program's existence; the program's track record in assisting students in obtaining a regular high school diploma or its recognized equivalent, in passing a GED or other state-authorized exam (e.g., HiSet or TASC), or in placing students in postsecondary education, job training, or employment; and other indicators of the program's overall quality. For individuals seeking to demonstrate that they are "currently in school" through enrollment in such a program, the burden is on the requestor to show the program's demonstrated effectiveness.

**Q34: How do I establish that I am currently in school?**

A34: Documentation sufficient for you to demonstrate that you are currently in school may include, but is not limited to:

- evidence that you are enrolled in a public, private, or charter elementary school, junior high or middle school, high school or secondary school; alternative program, or homeschool program that meets state requirements; or
- evidence that you are enrolled in an education, literacy, or career training program (including vocational training) that:
  - has a purpose of improving literacy, mathematics, or English, or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement; and
  - is funded, in whole or in part, by federal, state, county or municipal grants or is administered by non-profit organizations, or if funded by other sources, is a program of demonstrated effectiveness; or
- evidence that you are enrolled in an education program assisting students in obtaining a high school equivalency diploma or certificate recognized under state law (such as by passing a GED exam or other such state-authorized exam [for example, HiSet or TASC]), and that the program is funded in whole or in part by federal, state, county or municipal grants or is administered by non-profit organizations or if funded by other sources, is of demonstrated effectiveness.

Such evidence of enrollment may include: acceptance letters, school registration cards, letters from a school or program, transcripts, report cards, or progress reports which may show the name of the school or program, date of enrollment, and current educational or grade level, if relevant.

**Q35: What documentation may be sufficient to demonstrate that I have graduated from high school?**
A35: Documentation sufficient for you to demonstrate that you have graduated from high school may include, but is not limited to, a high school diploma from a public or private high school or secondary school, a certificate of completion, a certificate of attendance, or an alternate award from a public or private high school or secondary school, or a recognized equivalent of a high school diploma under state law, or a GED certificate or certificate from passing another such state authorized exam (e.g., HiSet or TASC) in the United States.

**Q36: What documentation may be sufficient to demonstrate that I have obtained a GED certificate or certificate from passing another such state authorized exam (e.g., HiSet or TASC)?**
A36: Documentation may include, but is not limited to, evidence that you have passed a GED exam, or other state-authorized exam (e.g., HiSet or TASC), and, as a result, have received the recognized equivalent of a regular high school diploma under state law.

**Q37: If I am enrolled in a literacy or career training program, can I meet the guidelines?**
A37: Yes, in certain circumstances. You may meet the guidelines if you are enrolled in an education, literacy, or career training program that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment and where you are working toward such placement. Such programs include, but are not limited to, programs funded, in whole or in part, by federal, state, county or municipal grants or administered by non-profit organizations, or if funded by other sources, are programs of demonstrated effectiveness.

**Q38: If I am enrolled in an English as a Second Language (ESL) program, can I meet the guidelines?**
A38: Yes, in certain circumstances. Enrollment in an ESL program may be used to meet the guidelines if the ESL program is funded in whole or in part by federal, state, county or municipal grants, or administered by non-profit organizations, or if funded by other sources is a program of demonstrated effectiveness. You must submit direct documentary evidence that the program is funded in whole or part by federal, state, county or municipal grants, administered by a non-profit organization, or of demonstrated effectiveness.

**Q39: Will USCIS consider evidence other than that listed in Chart #1 to show that I have met the education guidelines?**

A39: No. Evidence not listed in Chart #1 will not be accepted to establish that you are currently in school, have graduated or obtained a certificate of completion from high school, or have obtained a GED or passed another state-authorized exam (e.g., HiSet or TASC). You must submit any of the documentary evidence listed in Chart #1 to show that you meet the education guidelines.

**Q40: Will USCIS consider evidence other than that listed in Chart #1 to show that I have met certain initial guidelines?**

A40: Evidence other than those documents listed in Chart #1 may be used to establish the following guidelines and factual showings if available documentary evidence is insufficient or lacking and shows that:

- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You satisfy the continuous residence requirement, as long as you present direct evidence of your continued residence in the United States for a portion of the required period and the circumstantial evidence is used only to fill in gaps in the length of continuous residence demonstrated by the direct evidence; and
- Any travel outside the United States during the period of required continuous presence was brief, casual, and innocent.

However, USCIS will not accept evidence other than the documents listed in Chart #1 as proof of any of the following guidelines to demonstrate that you:

- Were under the age of 31 on June 15, 2012; and
- Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a GED certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

For example, even if you do not have documentary proof of your presence in the United States on June 15, 2012, you may still be able to satisfy the guideline. You may do so by submitting credible documentary evidence that you were present in the United States shortly before and shortly after June 15, 2012, which, under the facts presented, may give rise to an inference of your presence on June 15, 2012 as well. However, evidence other than that listed in Chart #1 will not be accepted to establish that you have graduated high school. You must submit the designated documentary evidence to satisfy that you meet this guideline.

Chart #1 provides examples of documentation you may submit to demonstrate you meet the initial guidelines for consideration of deferred action under this process. Please see the instructions of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for additional details of acceptable documentation.

| Chart #1 Examples of Documents to Submit to Demonstrate You Meet the Guidelines | |
|---|---|
| Proof of identity | • Passport or national identity document from your country of origin<br>• Birth certificate with photo identification<br>• School or military ID with photo<br>• Any U.S. government immigration or other document bearing your name and photo |

**App. 025**

**Chart #1 Examples of Documents to Submit to Demonstrate You Meet the Guidelines**

| | |
|---|---|
| Proof you came to U.S. before your 16th birthday | • Passport with admission stamp<br>• Form I-94/I-95/I-94W<br>• School records from the U.S. schools you have attended<br>• Any Immigration and Naturalization Service or DHS document stating your date of entry (Form I-862, Notice to Appear)<br>• Travel records<br>• Hospital or medical records<br>• Rent receipts or utility bills<br>• Employment records (pay stubs, W-2 Forms, etc.)<br>• Official records from a religious entity confirming participation in a religious ceremony<br>• Copies of money order receipts for money sent in or out of the country<br>• Birth certificates of children born in the U.S.<br>• Dated bank transactions<br>• Automobile license receipts or registration<br>• Deeds, mortgages, rental agreement contracts<br>• Tax receipts, insurance policies |
| Proof of immigration status | • Form I-94/I-95/I-94W with authorized stay expiration date<br>• Final order of exclusion, deportation, or removal issued as of June 15, 2012<br>• A charging document placing you into removal proceedings |
| Proof of presence in U.S. on June 15, 2012 | • Rent receipts or utility bills<br>• Employment records (pay stubs, W-2 Forms, etc.)<br>• School records (letters, report cards, etc.)<br>• Military records (Form DD-214 or NGB Form 22) |
| Proof you continuously resided in U.S. since June 15, 2007 | • Official records from a religious entity confirming participation in a religious ceremony<br>• Copies of money order receipts for money sent in or out of the country<br>• Passport entries<br>• Birth certificates of children born in the U.S.<br>• Dated bank transactions<br><br>• Automobile license receipts or registration<br>• Deeds, mortgages, rental agreement contracts<br>• Tax receipts, insurance policies |
| Proof of your education | • School records (transcripts, report cards, etc.) from the school that you are currently attending in the United States showing the |

| status at the time of requesting DACA | you are currently attending in the United States showing the name(s) of the school(s) and periods of school attendance and the current educational or grade level |
|---|---|
| **Chart #1: Examples of Documents to Submit to Demonstrate You Meet the Guidelines** | • U.S. high school diploma, certificate of completion, or other alternate award<br>• High school equivalency diploma or certificate recognized under state law<br>• Evidence that you passed a state-authorized exam, including the GED or other state-authorized exam (for example, HiSet or TASC) in the United States |
| Proof you are an honorably discharged veteran of the U.S. Armed Forces or the U.S. Coast Guard | • Form DD-214, Certificate of Release or Discharge from Active Duty<br>• NGB Form 22, National Guard Report of Separation and Record of Service<br>• Military personnel records<br>• Military health records |

**Q41: May I file affidavits as proof that I meet the initial guidelines for consideration of DACA?**

A41: Affidavits generally will not be sufficient on their own to demonstrate that you meet the guidelines for USCIS to consider you for DACA. However, affidavits may be used to support meeting the following guidelines only if the documentary evidence available to you is insufficient or lacking:

- Demonstrating that you meet the five year continuous residence requirement; and
- Establishing that departures during the required period of continuous residence were brief, casual and innocent.

If you submit affidavits related to the above criteria, you must submit two or more affidavits, sworn to or affirmed by people other than yourself, who have direct personal knowledge of the events and circumstances. Should USCIS determine that the affidavits are insufficient to overcome the unavailability or the lack of documentary evidence with respect to either of these guidelines, it will issue a Request for Evidence, indicating that further evidence must be submitted to demonstrate that you meet these guidelines.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- You are currently in school, have graduated or obtained a certificate of completion or other alternate award from high school, have obtained a high school equivalency diploma or certificate (such as by passing the GED exam or other state-authorized exam [for example, HiSet or TASC]), or are an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- You were physically present in the United States on June 15, 2012;
- You came to the United States before reaching your 16th birthday;
- You were under the age of 31 on June 15, 2012; and
- Your criminal history, if applicable.

If the only evidence you submit to demonstrate you meet any of the above guidelines is an affidavit, USCIS will issue a Request for Evidence, indicating that you have not demonstrated that you meet these guidelines and that you must do so in order to demonstrate that you meet that guideline.

**Q42: Will I be considered to be in unlawful status if I had an application for asylum or cancellation of removal pending before either USCIS or the Executive Office for Immigration Review (EOIR) on June 15, 2012?**

**App. 027**

A42: Yes. If you had an application for asylum or cancellation of removal, or similar relief, pending before either USCIS or EOIR as of June 15, 2012, but had no lawful status, you may request consideration of DACA.

**Q43: I was admitted for "duration of status" or for a period of time that extended past June 14, 2012, but violated my immigration status (e.g., by engaging in unauthorized employment, failing to report to my employer, or failing to pursue a full course of study) before June 15, 2012. May I be considered for deferred action under this process?**
A43: No, unless the Executive Office for Immigration Review terminated your status by issuing a final order of removal against you before June 15, 2012.

**Q44: I was admitted for "duration of status" or for a period of time that extended past June 14, 2012 but "aged out" of my dependent nonimmigrant status as of June 15, 2012.  May I be considered for deferred action under this process?**

A44: Yes.  For purposes of satisfying the "had no lawful status on June 15, 2012," guideline alone, if you were admitted for "duration of status" or for a period of time that extended past June 14, 2012 but "aged out" of your dependent nonimmigrant status, on or before June 15, 2012, (meaning you turned 21 years old on or before June 15, 2012), you may be considered for deferred action under this process.

**Q45: I was admitted for "duration of status" but my status in SEVIS is listed as terminated on or before June 15, 2012. May I be considered for deferred action under this process?**

A45: Yes. For the purposes of satisfying the ""had no lawful status on June 15, 2012," guideline alone, if your status as of June 15, 2012, is listed as "terminated" in SEVIS, you may be considered for deferred action under this process.

**Q46: I am a Canadian citizen who was inspected by CBP but was not issued an I-94 at the time of admission. May I be considered for deferred action under this process?**

A46: In general, a Canadian citizen who was admitted as a visitor for business or pleasure and not issued an I-94, Arrival/Departure Record, (also known as a "non-controlled" Canadian nonimmigrant) is lawfully admitted for a period of six months. For that reason, unless there is evidence, including verifiable evidence provided by the individual, that he or she was specifically advised that his or her admission would be for a different length of time, the Department of Homeland Security (DHS) will consider for DACA purposes only, that the alien was lawfully admitted for a period of six months.  Therefore, if DHS is able to verify from its records that your last non-controlled entry occurred on or before Dec. 14, 2011, DHS will consider your nonimmigrant visitor status to have expired as of June 15, 2012 and you may be considered for deferred action under this process.

**Q47: I used my Border Crossing Card (BCC) to obtain admission to the United States and was not issued an I-94 at the time of admission. May I be considered for deferred action under this process?**

A47: Because the limitations on entry for a BCC holder vary based on location of admission and travel, DHS will assume that the BCC holder who was not provided an I-94 was admitted for the longest period legally possible—30 days—unless the individual can demonstrate, through verifiable evidence, that he or she was specifically advised that his or her admission would be for a different length of time. Accordingly, if DHS is able to verify from its records that your last admission was using a BCC, you were not issued an I-94 at the time of admission, and it occurred on or before May 14, 2012, DHS will consider your nonimmigrant visitor status to have expired as of June 15, 2012, and you may be considered for deferred action under this process.

**Q48: Do I accrue unlawful presence if I have a pending initial request for consideration of DACA?**
A48: You will continue to accrue unlawful presence while the request for consideration of DACA is pending unless you are under 18 years of age at the time of the request. If you are under 18 years of age at the time you submit your request, you will not accrue unlawful presence while the request is pending, even if you turn 18 while your request is pending with USCIS. If action on your case is deferred, you will not accrue

unlawful presence during the period of deferred action. However, having action deferred on your case will not excuse previously accrued unlawful presence.

Return to top.

## III. Renewal of DACA

### Q49: When should I file my renewal request with U.S. Citizenship and Immigration Services (USCIS)?

A49: USCIS strongly encourages you to submit your Deferred Action for Childhood Arrivals (DACA) renewal request between 150 days and 120 days before the expiration date located on your current Form I-797 DACA approval notice and Employment Authorization Document (EAD). Filing during this window will minimize the possibility that your current period of DACA will expire before you receive a decision on your renewal request.

USCIS' current goal is to process DACA renewal requests within 120 days. You may submit an inquiry about the status of your renewal request after it has been pending more than 105 days. To submit an inquiry online, please visit egov.uscis.gov/e-request.

- **Please Note:** Factors that may affect the timely processing of your DACA renewal request include, but are not limited to:
  - Failure to appear at an Application Support Center (ASC) for a scheduled biometrics appointment to obtain fingerprints and photographs. No-shows or rescheduling appointments will require additional processing time.
  - Issues of national security, criminality or public safety discovered during the background check process that require further vetting.
  - Issues of travel abroad that need additional evidence/clarification.
  - Name/date of birth discrepancies that may require additional evidence/clarification.
  - The renewal submission was incomplete or contained evidence that suggests a requestor may not satisfy the DACA renewal guidelines and USCIS must send a request for additional evidence or explanation

### Q50: Can I file a renewal request outside the recommended filing period of 150 days to 120 days before my current DACA expires?

A50: USCIS strongly encourages you to file your renewal request within the recommended 150-120 day filing period to minimize the possibility that your current period of DACA will expire before you receive a decision on your renewal request. Requests received earlier than 150 days in advance will be accepted; however, this could result in an overlap between your current DACA and your renewal. This means your renewal period may extend for less than a full two years from the date that your current DACA period expires..

If you file after the recommended filing period (meaning less than 120 days before your current period of DACA expires), there is an increased possibility that your current period of DACA and employment authorization will expire before you receive a decision on your renewal request. If you file after your most recent DACA period expired, but within one year of its expiration, you may submit a request to renew your DACA. If you are filing beyond one year after your most recent period of DACA expired, you may still request DACA by submitting a new initial request.

### Q51: How will USCIS evaluate my request for renewal of DACA:
A51: You may be considered for renewal of DACA if you met the guidelines for consideration of Initial DACA (see above) AND you:

- Did not depart the United States on or after Aug. 15, 2012, without advance parole;
- Have continuously resided in the United States since you submitted your most recent request for DACA that was approved up to the present time; and

**App. 029**

- Have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and do not otherwise pose a threat to national security or public safety.

These guidelines must be met for consideration of DACA renewal. USCIS retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met.

**Q52 Do I accrue unlawful presence if I am seeking renewal and my previous period of DACA expires before I receive a renewal of deferred action under DACA? Similarly, what would happen to my work authorization?**

A52: Yes, if your previous period of DACA expires before you receive a renewal of deferred action under DACA, you will accrue unlawful presence for any time between the periods of deferred action unless you are under 18 years of age at the time you submit your renewal request.

Similarly, if your previous period of DACA expires before you receive a renewal of deferred action under DACA, you will not be authorized to work in the United States regardless of your age at time of filing until and unless you receive a new employment authorization document from USCIS.

**Q53. Do I need to provide additional documents when I request renewal of deferred action under DACA?**

A53.  No, unless you have *new* documents pertaining to removal proceedings or criminal history that you have not already submitted to USCIS in a previously approved DACA request. USCIS, however, reserves the authority to request at its discretion additional documents, information or statements relating to a DACA renewal request determination.

CAUTION: If you knowingly and willfully provide materially false information on Form I-821D, you will be committing a federal felony punishable by a fine, or imprisonment up to five years, or both, under 18 U.S.C. Section 1001. In addition, individuals may be placed into removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

**Q54.  If I am no longer in school, can I still request to renew my DACA?**
A54.  Yes. Neither Form I-821D nor the instructions ask renewal requestors for information about continued school enrollment or graduation. The instructions for renewal requests specify that you may be considered for DACA renewal if you met the guidelines for consideration of initial DACA, including the educational guidelines and:

1. Did not depart the United States on or after August 15, 2012, without advance parole;
2. Have continuously resided in the United States, up to the present time, since you submitted your most recent request for DACA that was approved; and
3. Have not been convicted of a felony, a significant misdemeanor or three or more misdemeanors, and are not a threat to national security or public safety.

**Q55.  If I initially received DACA and was under the age of 31 on June 15, 2012, but have since become 31 or older, can I still request a DACA renewal?**
A55. Yes. You may request consideration for a renewal of DACA as long as you were under the age of 31 as of June 15, 2012.

## IV. Travel

**Q56: May I travel outside of the United States before I submit an initial Deferred Action for Childhood Arrivals (DACA) request or while my initial DACA request remains pending with the Department of Homeland Security (DHS)?**
A56: Any unauthorized travel outside of the United States on or after Aug. 15, 2012, will interrupt your continuous residence and you will not be considered for deferred action under this process. Any travel

**App. 030**

outside of the United States that occurred on or after June 15, 2007, but before Aug. 15, 2012, will be assessed by U.S. Citizenship and Immigration Services (USCIS) to determine whether the travel qualifies as brief, casual and innocent. (See Chart #2.)

CAUTION: You should be aware that if you have been ordered deported or removed, and you then leave the United States, your departure will likely result in your being considered deported or removed, with potentially serious future immigration consequences.

**Q57: If my case is deferred under DACA, will I be able to travel outside of the United States?**
A57: Not automatically. If USCIS has decided to defer action in your case and you want to travel outside the United States, you must apply for advance parole by filing a Form I-131, Application for Travel Document and paying the applicable fee ($575). USCIS will determine whether your purpose for international travel is justifiable based on the circumstances you describe in your request. Generally, USCIS will only grant advance parole if your travel abroad will be in furtherance of:

- humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;
- educational purposes, such as semester-abroad programs and academic research, or;
- employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

Travel for vacation is not a valid basis for advance parole.

You may not apply for advance parole unless and until USCIS defers action in your case under the consideration of DACA. You cannot apply for advance parole at the same time as you submit your request for consideration of DACA. All advance parole requests will be considered on a case-by-case basis.

If USCIS has deferred action in your case under the DACA process after you have been ordered deported or removed, you may still request advance parole if you meet the guidelines for advance parole described above.

**CAUTION:** However, for those individuals who have been ordered deported or removed, before you actually leave the United States, you should seek to reopen your case before the Executive Office for Immigration Review (EOIR) and obtain administrative closure or termination of your removal proceeding. Even after you have asked EOIR to reopen your case, you should not leave the United States until after EOIR has granted your request. If you depart after being ordered deported or removed, and your removal proceeding has not been reopened and administratively closed or terminated, your departure may result in your being considered deported or removed, with potentially serious future immigration consequences. If you have any questions about this process, you may contact U.S. Immigration and Customs Enforcement (ICE) through the local ICE Office of the Chief Counsel with jurisdiction over your case.

**CAUTION:** If you travel outside the United States on or after Aug. 15, 2012, without first receiving advance parole, your departure automatically terminates your deferred action under DACA.

**Q58: Do brief departures from the United States interrupt the continuous residence requirement?**
A58: A brief, casual and innocent absence from the United States will not interrupt your continuous residence. If you were absent from the United States, your absence will be considered brief, casual and innocent if it was on or after June 15, 2007, and before Aug. 15, 2012, and:

1. The absence was short and reasonably calculated to accomplish the purpose for the absence;
2. The absence was not because of an order of exclusion, deportation or removal;
3. The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before you were placed in exclusion, deportation or removal proceedings; and
4. The purpose of the absence and/or your actions while outside the United States were not contrary to law.

**App. 031**

Once USCIS has approved your request for DACA, you may file Form I-131, Application for Travel Document, to request advance parole to travel outside of the United States.

CAUTION: If you travel outside the United States on or after Aug. 15, 2012, without first receiving advance parole, your departure automatically terminates your deferred action under DACA.

**Travel Guidelines (Chart #2)**

| Travel Dates | Type of Travel | Does It Affect Continuous Residence |
|---|---|---|
| On or after June 15, 2007, but before Aug. 15, 2012 | Brief, casual and innocent | No |
| | For an extended time<br><br>Because of an order of exclusion, deportation, voluntary departure, or removal<br><br>To participate in criminal activity | Yes |
| On or after Aug. 15, 2012, and before you have requested deferred action | Any | Yes. You cannot apply for advance parole unless and until DHS has determined whether to defer action in your case and you cannot travel until you receive advance parole.<br><br>In addition, if you have previously been ordered deported and removed and you depart the United States without taking additional steps to address your removal proceedings, your departure will likely result in your being considered deported or removed, with potentially serious future immigration consequences. |

**App. 032**

| Travel Dates | Type of Travel | Does It Affect Continuous Residence |
|---|---|---|
| On or after Aug. 15, 2012, and after you have requested deferred action | Any | |
| On or after Aug. 15, 2012 and after receiving DACA | Any | It depends. If you travel after receiving advance parole, the travel will not interrupt your continuous residence. However, if you travel *without* receiving advance parole, the travel *will* interrupt your continuous residence. |

**Q59: May I file a request for advance parole concurrently with my DACA package?**

A59: Concurrent filing of advance parole is not an option at this time.  DHS is, however, reviewing its policy on concurrent filing of advance parole with a DACA request.  In addition, DHS is also reviewing eligibility criteria for advance parole.  If any changes to this policy are made, USCIS will update this FAQ and inform the public accordingly.

<div align="right">

Return to top.

</div>

## V. Criminal Convictions

**Q60: If I have a conviction for a felony offense, a significant misdemeanor offense, or multiple misdemeanors, can I receive an exercise of prosecutorial discretion under this new process?**

A60: No. If you have been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, you will not be considered for Deferred Action for Childhood Arrivals (DACA) except where the Department of Homeland Security (DHS) determines there are exceptional circumstances.

**Q61: What offenses qualify as a felony?**

A61: A felony is a federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year.

**Q62: What offenses constitute a significant misdemeanor?**

A62: For the purposes of this process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less.

### Q63: What offenses constitute a non-significant misdemeanor?

A63: For purposes of this process, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

2. Is one for which the individual was sentenced to time in custody of 90 days or less. The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE.

Notwithstanding the above, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion.

### Q64: If I have a minor traffic offense, such as driving without a license, will it be considered a non-significant misdemeanor that counts towards the "three or more non-significant misdemeanors" making me unable to receive consideration for an exercise of prosecutorial discretion under this new process?

A64: A minor traffic offense will not be considered a misdemeanor for purposes of this process. However, your entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, you warrant an exercise of prosecutorial discretion.

It is important to emphasize that driving under the influence is a significant misdemeanor regardless of the sentence imposed.

### Q65: What qualifies as a national security or public safety threat?

A65: If the background check or other information uncovered during the review of your request for deferred action indicates that your presence in the United States threatens public safety or national security, you will not be able to receive consideration for an exercise of prosecutorial discretion except where DHS determines there are exceptional circumstances. Indicators that you pose such a threat include, but are not limited to, gang membership, participation in criminal activities, or participation in activities that threaten the United States.

### Q66: Will offenses criminalized as felonies or misdemeanors by state immigration laws be considered felonies or misdemeanors for purpose of this process?

A66: No. Immigration-related offenses characterized as felonies or misdemeanors by state immigration

**App. 034**

laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action under this process.

**Q67: Will DHS consider my expunged or juvenile conviction as an offense making me unable to receive an exercise of prosecutorial discretion?**
A67: Expunged convictions and juvenile convictions will not automatically disqualify you. Your request will be assessed on a case-by-case basis to determine whether, under the particular circumstances, a favorable exercise of prosecutorial discretion is warranted. If you were a juvenile, but tried and convicted as an adult, you will be treated as an adult for purposes of the DACA process.

Return to top.

## VI. Miscellaneous

**Q68: Does deferred action provide me with a path to permanent resident status or citizenship?**
A68: No. Deferred action is a form of prosecutorial discretion that does not confer lawful permanent resident status or a path to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.

**Q69: Can I be considered for deferred action even if I do not meet the guidelines to be considered for DACA?**
A69: This process is only for individuals who meet the specific guidelines for DACA. Other individuals may, on a case-by-case basis, request deferred action from U.S. Citizenship and Immigration Services (USCIS) or U.S. Immigration and Customs Enforcement (ICE) in certain circumstances, consistent with longstanding practice.

**Q70: How will ICE and USCIS handle cases involving individuals who do not satisfy the guidelines of this process but believe they may warrant an exercise of prosecutorial discretion under the June 2011 Prosecutorial Discretion Memoranda?**
A70: If USCIS determines that you do not satisfy the guidelines or otherwise determines you do not warrant an exercise of prosecutorial discretion, then it will decline to defer action in your case. If you are currently in removal proceedings, have a final order, or have a voluntary departure order, you may then request ICE consider whether to exercise prosecutorial discretion.

**Q71: How should I fill out question 9 on Form I-765, Application for Employment Authorization?**
A71. When you are filing a Form I-765 as part of a DACA request, question 9 is asking you to list those Social Security numbers that were officially issued to you by the Social Security Administration.

**Q72: Will there be supervisory review of decisions by USCIS under this process?**
A72: Yes. USCIS has implemented a successful supervisory review process to ensure a consistent process for considering requests for DACA.

**Q73: Will USCIS personnel responsible for reviewing requests for DACA receive special training?**
A73: Yes. USCIS personnel responsible for considering requests for consideration of DACA have received special training.

**Q74: Must attorneys and accredited representatives who provide pro bono services to deferred action requestors at group assistance events file a Form G-28 with USCIS?**

A74: Under 8 C.F.R. §§ 292.3 and 1003.102, practitioners are required to file a Notice of Entry of Appearance as Attorney or Accredited Representative when they engage in practice in immigration matters before DHS, either in person or through the preparation or filing of any brief, application, petition, or other document. Under these rules, a practitioner who consistently violates the requirement to file a Form G-28 may be subject to disciplinary sanctions; however on Feb. 28, 2011, USCIS issued a statement indicating that it does not intend to initiate disciplinary proceedings against practitioners (attorneys and accredited representatives) based solely on the failure to submit a Notice of Entry of Appearance as Attorney or Accredited Representative (Form G-28) in relation to pro bono services provided at group

**App. 035**

assistance events. DHS is in the process of issuing a final rule at which time this matter will be reevaluated.

**Q75: When must an individual sign a Form I-821D as a preparer?**
A75: Anytime someone other than the requestor prepares or helps fill out the Form I-821D, that individual must complete Part 5 of the form.

**Q76: If I provide my employee with information regarding his or her employment to support a request for consideration of DACA, will that information be used for immigration enforcement purposes against me and/or my company?**
A76: You may, as you determine appropriate, provide individuals requesting DACA with documentation which verifies their employment. This information will not be shared with ICE for civil immigration enforcement purposes under section 274A of the Immigration and Nationality Act (relating to unlawful employment) unless there is evidence of egregious violations of criminal statutes or widespread abuses.

**Q77: Can I request consideration for deferred action under this process if I live in the Commonwealth of the Northern Mariana Islands (CNMI)?**
A77: Yes, in certain circumstances. The CNMI is part of the United States for immigration purposes and is not excluded from this process. However, because of the specific guidelines for consideration of DACA, individuals who have been residents of the CNMI are in most cases unlikely to qualify for the program. You must, among other things, have come to the United States before your 16th birthday and have resided continuously in the United States since June 15, 2007.

Under the Consolidated Natural Resources Act of 2008, the CNMI became part of the United States for purposes of immigration law only on Nov. 28, 2009. Therefore entry into, or residence in, the CNMI before that date is not entry into, or residence in, the United States for purposes of the DACA process.

USCIS has used parole authority in a variety of situations in the CNMI to address particular humanitarian needs on a case-by-case basis since Nov. 28, 2009. If you live in the CNMI and believe that you meet the guidelines for consideration of deferred action under this process, except that your entry and/or residence to the CNMI took place entirely or in part before Nov. 28, 2009, USCIS is willing to consider your situation on a case-by-case basis for a grant of parole. If this situation applies to you, you should make an appointment through INFOPASS with the USCIS ASC in Saipan to discuss your case with an immigration officer.

**Q78: Someone told me if I pay them a fee, they can expedite my DACA request. Is this true?**
A78: No. There is no expedited processing for deferred action. Dishonest practitioners may promise to provide you with faster services if you pay them a fee. These people are trying to scam you and take your money. Visit our Avoid Scams page to learn how you can protect yourself from immigration scams.

Make sure you seek information about requests for consideration of DACA from official government sources such as USCIS or the DHS. If you are seeking legal advice, visit our Find Legal Services page to learn how to choose a licensed attorney or accredited representative.

**Q79: Am I required to register with the Selective Service?**

A79:  Most male persons residing in the U.S., who are ages 18 through 25, are required to register with Selective Service. Please see link for more information. [Selective Service].

**Q80: How can I tell if an employer is discriminating against me because I am a DACA recipient?**

A80: An employer may be engaging in discrimination if the employer:

- Demands that an employee show specific documents or asks for more or different documents than are required to complete Form I-9, Employment Eligibility Verification, or create an E-Verify case; or
- Rejects documents from the Lists of Acceptable Documents that reasonably appear to be genuine and relate to the employee, including a work authorization document because it has a future expiration date or because of an employee's prior unauthorized status.

The Civil Rights Division of the U.S. Department of Justice has an office dedicated to ensuring that employers do not discriminate against individuals who are permitted to work in the U.S. These include DACA recipients who have been granted work authorization. If you think your employer may be discriminating against you, contact the Immigrant and Employee Rights Section (IER) at 1-800-255-7688 (TDD for the deaf and hard of hearing: 1-800-237-2515).

For more information about unfair employment practices against DACA recipients, please read IER's factsheet in English (PDF) or Spanish (PDF).

For additional resources and information about workers' rights, visit www.justice.gov/crt/worker-information.

Return to top.

Last Reviewed/Updated: 03/08/2018

**App. 037**

# Exhibit 5



**National Standard Operating Procedures (SOP)**


# Deferred Action for Childhood Arrivals (DACA)
### (Form I-821D and Form I-765)


Prepared by:  Service Center Operations Directorate


**August 28, 2013**
**Version 2.0**


**App. 039**

## 1.0   REVISION HISTORY

| | Revision History | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Version** | **V02** | | **Date Released** | 8/28/2013 | | **Changes Made By** | **SCOPS** |

| | **Reason for SOP Update** | | |
|---|---|---|---|

| | **Reason** | **Chapter/Section** | **Page No(s).** |
|---|---|---|---|
| 1 | New Guidance | Chapter 5, Incoming Files | 25 |
| 2 | New Guidance | Chapter 5, Homebound Biometrics Capturing | 27 |
| 3 | New Guidance | Chapter 8, CITRIX/EOIR I-485 | 47 |
| 4 | New Guidance | Chapter 8, Duplicate Filings | 48 |
| 5 | New Guidance | Chapter 8, Graduated from School | 69 |
| 6 | New Guidance | Chapter 8, Economic Necessity | 72 |
| 7 | New Subtitle | Chapter 8, Issues of Criminality | 82 |
| 8 | New Guidance | Chapter 8, Issues of Criminality | 82 |
| 9 | New Subtitle | Chapter 8, DACA Requestors in Immigration Detention at the Time of Filing Form I-821D | 90-91 |
| 10 | New Guidance | Chapter 8, DACA Requestors in Immigration Detention after Filing Form I-821D | 91-92 |
| 11 | New Guidance | Chapter 8, Social Security Number | 94 |
| 12 | New Guidance | Chapter 8, Denials – Supervisory Review | 110 |
| 13 | New Subtitle | Chapter 14, Removal Deferred Under DACA – Requestor did not Satisfy the Guidelines | 136 |
| 14 | New Guidance | Chapter 14, Enforcement Priority – DACA Not Automatically Terminated | 138 |
| 15 | New Guidance | Chapter 14, System Updates | 138 |

**Note:  SOP revisions listed are reflected in blue font.**

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 040**

Confidential                    DEF - 00006851

# Table of Contents

| Chapter | Page # |
|---|---|
| 1: Definitions and Applicability to DACA | 6-15 |
| 2: Introduction | 16-20 |
| 3: Summary of the Overall Process Flow for DACA Filings | 20-22 |
| 4: Lockbox Intake | 23-24 |
| 5: Service Center Intake | 25-32 |
| 6: Background and Security Checks | 33-41 |
| 7: DACA Overview | 42-44 |
| 8: Adjudication of the DACA Request | |
|    A. Procedural Overview | 45-48 |
|    B. System Searches | 49 |
|    C. Determining if Guidelines are Met | 50-71 |
|    D. Economic Necessity | 72 |
|    E. Removal Proceedings | 73-78 |
|    F. Fingerprints and RAP Sheets | 79-81 |
|    G. Evaluating Issues of Criminality, Public Safety, and National Security | 82-97 |
|       • Court Dispositions | 86-88 |
|       • Arrests and Convictions | 89 |
|       • Public Safety Concerns | 90 |
|       • National Security Concerns | 90 |
|       • Immigration Detention | 90-92 |
|       • Handling Procedures | 93-97 |
|    H. Adjudicating Form I-821D, Part 3, Criminal, National Security and Public Safety Information | 98-100 |
|    I. Fraud Review and Fraud Referrals | 101-104 |
| 9: Decisions | |
|    A. Request for Evidence | 105 |
|    B. Notice of Intent to Deny | 106 |
|    C. Approvals | 107-108 |
|    D. Denials | 109-113 |
|       • Supervisory Review | 110 |
| 10: Post Denial Process | 114 |
| 11: Returned Mail | 115 |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**     3

**App. 041**

Confidential         DEF - 00006852

Case 1:18-cv-00068 Document 225-6 Filed in TXSD on 07/21/18 Page 101 of 525

# Table of Contents


| Chapter | Page # |
|---|---|
| 12: Employment Authorization | |
| A. General Information | 116-117 |
| B. Adjudication | 118-123 |
| C. Replacement Cards | 124 |
| 13: Customer Service - Use of Service Request Management Tool (SRMT) to Respond to Requests to Review Certain Denials | 125-135 |
| 14: DACA Termination | 136-138 |
| 15: Processing Form I-131, Application for Travel Document, for Individuals With Approved Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA) | 139-142 |


FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

# Appendices

**Appendix A:** June 15, 2012, Secretary of Homeland Security memorandum entitled, <u>Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children</u>.

**Appendix B**: November 7, 2011, memorandum entitled, Revised <u>Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens.</u>

**Appendix C**: Overview of the Background Check Process

**Appendix D**: DACA RFE Call Ups

**Appendix E**: Notice of Intent to Deny Call-Ups

**Appendix F**: DACA Denial Template

**Appendix G**: SRMT Responses

**Appendix H**: SRMT Denial Template

**Appendix I**: Notice of Intent to Terminate Deferred Action for Childhood Arrivals and Termination Notice

**Appendix J**: Notice of Intent to Deny Review Policy

**Appendix K**: DACA Denial Call-Ups

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**App. 043**

Confidential                              DEF - 00006854

# Chapter 1: Definitions and Applicability to DACA

**Absconder**

An alien who failed to surrender to DHS for removal after receiving a final order of deportation, exclusion, or removal.

**Aggravated Felon**

Any alien who has been convicted of a criminal offense within the definition of 101(a)(43) of the Immigration and Nationality Act (Act).

**Alias**

An additional name (e.g., nickname, maiden name, or married name) or an assumed name.

**Ancillary Application**

Applications for travel, employment authorization, or applications that do not convey an immigrant or nonimmigrant status, and are filed in connection with a primary or an underlying application or petition.

**ASC**

Application Support Center. The ASCs, which are located throughout the United States and its outlying territories, facilitate the capture of fingerprints and biometric data.

**BCU**

Background Check Unit. A work unit located at each of the Service Centers and the National Benefits Center. The BCU is responsible for reviewing and resolving [LE] hits and other criminal, national security, and public safety concerns in accordance with Agency policy.

**BCU DACA Team**

A specialized team within the BCU that specifically reviews and adjudicates issues of criminality arising from DACA requests. The team may consist of Immigration Services Officers, as well as officers assigned to CARRP, NTA issuance, and Triage duties, and the analysts who support them.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

## Definitions and Applicability to DACA, Continued

**Brief, Casual, and Innocent Absence**

A brief, casual, and innocent absence from the United States before August 15, 2012 will not interrupt continuous residence for purposes of DACA. An absence will be considered brief, casual, and innocent, if:

(1) The absence was short and reasonably calculated to accomplish the purpose of the absence;

(2) The absence was not the result of an order of exclusion, deportation, or removal;

(3) The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and

(4) The purpose of the absence from the United States or actions while outside of the United States were not contrary to law.

This definition of a brief, casual, and innocent absence has its basis in case law and was codified into the regulations for the Temporary Protected Status (TPS) program. Elements of this definition of brief, casual, and innocent will be used for individuals requesting DACA. See 8 C.F.R. §244.1. See also "Continuous Residence" below for additional circumstances that will not break continuous residence.

**CFDO**

The Center Fraud Detection Operations (CFDO) is the Fraud Detection and National Security (FDNS) organization within Service Centers. The CFDO is comprised of FDNS officers under the direction of an FDNS supervisor who reports directly to the CFDO Assistant Center Director (ACD). While most CFDO work occurs in an office environment, some Service Centers conduct administrative investigations in support of FDNS's field operations.

**CLAIMS (C3)**

Computer - Linked Application Information Management System Version 3. A case management application system to track and process the adjudication of applications, petitions, and other requests for immigration benefits and services.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 045**

Confidential                                                                    DEF - 00006856

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Continuous Residence** | The DACA requestor is to reside in the United States for the entire period specified in the guidelines for DACA to be considered. An alien shall not be considered to have failed to maintain continuous residence in the United States by reason of a brief, casual, and innocent absence as defined within this section. |
| **CARRP** | Controlled Application Review and Resolution Program. This program outlines the process to identify, record, and adjudicate applications/petitions/requests where a National Security concern is identified. |
| **DACA** | Deferred Action for Childhood Arrivals |
| **Deferred Action** | Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. Deferred action does not confer any lawful status. |
| **DNR** | Does Not Relate. A determination by USCIS personnel of whether a security check result relates to a DACA requestor. |
| **Egregious Public Safety (EPS) Concern** | Any case where routine systems and background checks indicate that an individual is under investigation for, has been arrested for (without disposition), or has been convicted of, a specified crime, including but not limited to, murder, rape, sexual abuse of a minor, trafficking in firearms or explosives, or other crimes listed in the November 7, 2011, memorandum entitled Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 046**

Confidential DEF - 00006857


# Definitions and Applicability to DACA, Continued

**Evidence**

**Affidavits**

Affidavits generally will not be sufficient on their own to demonstrate that a requestor meets the DACA guidelines. However, affidavits may be used to support the following guidelines when primary and secondary evidence are unavailable:

- A gap in the documentation demonstrating that the requestor meets the five year continuous residence requirement; and
- A shortcoming in documentation with respect to the brief, casual and innocent departures during the five years of required continuous presence.

Two or more affidavits, sworn to or affirmed by people other than the requestor, who have direct personal knowledge of the events and circumstances, can be submitted. If the affidavits are not sufficient to establish that the guideline is met, issue an RFE using RFE DACA 302 call up in Appendix D.

USCIS will not accept affidavits as proof of satisfying the following guidelines:

- The requestor is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general education development certificate, or is an honorably discharged veteran from the Coast Guard or Armed Forces of the United States;
- The requestor was physically present in the United States on June 15, 2012;
- The requestor came to the United States before reaching his/her 16th birthday;
- The requestor was under the age of 31 on June 15, 2012; and
- The requestor's criminal history, if applicable.

Weigh the assertions in the affidavit in light of the totality of all the evidence presented. When evaluating what weight to give an affidavit, take the following into consideration:

- An affidavit needs to be signed and dated;
- The identity of the affiant needs to be readily ascertainable from the information in the affidavit;
- The affidavit should state the relationship between the affiant and the DACA requestor and contain facts that are relevant to the guideline the requestor seeks to meet;
- The affidavit should state the basis of the affiant's knowledge and exhibit first-hand knowledge of the fact asserted.

*Continued on next page*

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 047**

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Evidence**<br>(Continued) | **Preponderance of the Evidence**<br>A DACA requestor is to establish by a preponderance of the evidence that he/she meets the guidelines for the exercise of prosecutorial discretion in the form of deferred action. Under this standard, the requestor must demonstrate that it is more likely than not that he or she meets those guidelines. The preponderance of the evidence standard is a lower standard of proof than both the "clear and convincing evidence" standard and the "beyond a reasonable doubt" standard applicable to criminal cases. |
| | **Primary Evidence**<br>Primary evidence is evidence which, on its face, proves a fact. In the DACA context, an example of primary evidence that could be submitted to satisfy the age guideline would be a birth certificate. An example of primary evidence that could be submitted to satisfy all or part of the continuous residence guideline would be rental agreements or school records in the DACA requestor's name. |
| | **Secondary Evidence**<br>Secondary evidence must lead the officer to conclude that it is more likely than not (in other words, probable) that the fact sought to be proven is true. For example, if an individual is unable to obtain a copy of his birth certificate to establish his date of birth, baptismal records issued by a church showing that an individual was born at a certain time would be acceptable secondary evidence of the birth for purposes of satisfying the DACA age guideline. Similarly, to satisfy the continuous residence guideline under DACA, rental agreements in the name of the DACA requestor's parent could be acceptable secondary evidence demonstrating periods of the requestor's residence in the United States, if corroborating evidence in the file (for example, school or medical records) points to the DACA requestor's residence at that address. |
| | **Sufficiency of the Evidence**<br>The sufficiency of all evidence is judged according to its relevance, consistency, and credibility. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 048**

Confidential

DEF - 00006859

# Definitions and Applicability to DACA, Continued

**Evidence**
(Continued)

**Totality of the Evidence**

For DACA, the totality of the documentary evidence should be reviewed to determine whether the facts needed to establish a specific guideline have been demonstrated. In many instances, an adjudicator may be satisfied based upon the review of all the documentary evidence, that it is more likely than not that a specific guideline has been meet even if the record does not contain one specific document that, in fact, satisfies the guideline. For example, if a DACA requestor is unable to submit a specific document evidencing his/her presence in the United States on June 15, 2012, he/she may be able to satisfy this guideline by submitting various forms of credible documentation evidencing that he/she was present in the United States shortly before and shortly after June 15, 2012 from which the officer could infer, based on the totality of the evidence, that the individual was present in the United States on June 15, 2012. (Note: evidence upon which one may infer that a fact has been demonstrated is also known as "circumstantial evidence," a term that appears in many DACA public information documents).

Officers must see documentary evidence (either primary or secondary) in order to determine if the following guidelines have been met:
- Requestor was under the age of 31 on June 15, 2012; and
- Requestor is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States

Officers may not infer from other sources that either of these two guidelines have been met.

Officers should look to the totality of the evidence (meaning that facts can be inferred from one or more sources) to determine if the following guidelines have been met:
- The requestor was physically present in the United States on June 15, 2012;
- The requestor came to the United States before reaching his/her 16th birthday;
- The requestor satisfies the continuous residence requirement, (as long as he or she presented clear documentation of continuous residence in the United States for a portion of the required five-year period and any other evidence submitted supports a finding that the requestor was actually residing in the U.S. during the period for which he has not provided clear documentary evidence of such residence); and
- Any travel outside the United States during the five years of required continuous presence was brief, casual, and innocent.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 049**

Confidential                    DEF - 00006860

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Evidence** (Continued) | For the remaining guidelines, i.e., the requestor was in unlawful status on June 15, 2012, has no disqualifying criminal convictions, and does not otherwise pose a threat to public safety or national security, the information presented by the DACA requestor on his/her Form I-821D in combination with background and security checks, routine systems checks, supporting evidence submitted by the requestor, and any other information on file, may establish that these guidelines have been met. |
| **Front End Check** | Security and systems checks performed upon the receipt of an application or petition or other requests to screen for national security, EPS, fraud, or other criminal concerns. |
| **HQ FDNS** | Headquarters Office of the Fraud Detection and National Security Directorate of USCIS. |
| **Hit** | A record returned by a security or background check system in response to a query that may relate to the subject being queried. |
| **Interpol** | International Criminal Police Organization, the world's largest international police organization. This organization facilitates cross-border police cooperation and supports and assists all organizations, authorities, and services whose mission is to prevent or combat international crime. |
| **JTTF** | Joint Terrorism Task Force. The JTTF is run by the Federal Bureau of Investigation (FBI). The JTTF is comprised of small groups of highly trained, locally based members from U.S. law enforcement and intelligence agencies. JTTF is responsible for all domestic and international terrorism matters. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 050**

Confidential

DEF - 00006861

# Definitions and Applicability to DACA, Continued

| KST | Known or Suspected Terrorist. | LE |



| National Security (NS) Concern | An NS Concern exists when an individual or organization has been determined to have an articulable link to prior, current, or planned involvement in, or association with, an activity, individual, or organization described in §§ 212(a)(3)(A), (B), or (F), or 237(a)(4)(A) or (B) of the Act. This determination requires that the case be handled according to the CARRP policy outlined in the memorandum issued on April 11, 2008. |

| NCIC | The National Crime Information Center (NCIC) is a database maintained by the FBI. NCIC includes the Interstate Identification Index (NCIC III) that allows authorized users to access criminal history information. Access to NCIC III is limited to FDNS personnel only. FDNS personnel may only access NCIC III when an individual has been determined to have, or is likely to have, a link to a current or planned criminal activity and the case is referred to FDNS for further investigation with the appropriate law enforcement agency, when a reasonable suspicion of fraud is identified that may be referred to ICE for criminal investigation or when an individual has been determined to be involved in current or planned terrorist activity. Prior to accessing NCIC III information, USCIS personnel who are TECS users must first complete the NCIC Certification Course. |

| NCTC | National Counterterrorism Center. In August 2004, the President established NCTC, a multi-agency organization, to serve as the primary organization for the U.S. Government for integrating and analyzing all intelligence pertaining to terrorism and counterterrorism (CT) and to conduct strategic operational planning by integrating all instruments of national power. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**Version August 28, 2013** 13

**App. 051**

Confidential                                                                DEF - 00006862

## Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **No Match** | This annotation is used on the Record of IBIS Query (ROIQ) if a TECS query results in no TECS hit. |
| **Non-KST** | A Non-KST NS concern includes all other NS concerns, regardless of the source, including but not limited to: associates of KSTs, unindicted coconspirators, terrorist organization members, persons involved with providing material support to terrorists or terrorist organizations, and agents of foreign governments. |
| **Primary Name and DOB** | The name and date of birth provided by an applicant, petitioner, or requestor as his/her given name and date of birth. This is generally listed in the first part of the application/petition/request. |
| **Relates** | This annotation is used on the ROIQ if a TECS query results in a hit that closely corresponds to the subject queried. |
| **Resolution** | A determination of the effect or relevance of the available information on the eligibility of the applicant, requestor, petitioner, beneficiary, or derivative for the benefit or request sought. |
| **ROIQ** | Record of IBIS Query. This form is used to record the search criteria queried and the results of those queries. The ROIQ was revised on March 5, 2013 to include checkbox "R" for requestors. |
| **SNAP** | Scheduling and Notification of Applicants For Processing. An automated system that schedules appointments for individuals to submit biometric information to ASCs. |
| **Secretary's Memorandum** | The June 15, 2012, memorandum entitled, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children, issued by the Secretary of Homeland Security. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 14

**App. 052**

DEF - 00006863

# Definitions and Applicability to DACA, Continued

| | |
|---|---|
| **Security Check** | A specific check or a combination of checks required for each application, petition, or request conducted in accordance with Agency policy. |
| **System Match** | A record returned by TECS in response to a query, the subject of which may or may not relate to the subject being queried. This is the same as a TECS Hit. |
| **TECS** | TECS is formerly known as the Treasury Enforcement Communications System/Interagency Border Inspection System. TECS is an automated enforcement and inspection lookout system that combines information from multiple agencies, databases, and system interfaces to compile data relating to national security risks, public safety issues, current or past targets of investigations, and other law enforcement concerns. The system is maintained by U.S. Customs and Border Protection. |
| **VGTOF** | Violent Gang and Terrorist Organization File. The VGTOF file has been designed to provide identifying information about violent criminal gangs and terrorist organizations and members of those gangs and organizations to law enforcement personnel. This information serves to warn law enforcement officers of the potential danger posed by violent individuals and to promote the exchange of information about these organizations and members to facilitate criminal investigations. USCIS has access to VGTOF through NCIC. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 053**

Confidential

DEF - 00006864

# Chapter 2: Introduction

**Purpose**       This SOP describes the procedures Service Centers are to follow when adjudicating DACA requests. This SOP includes the procedures for processing Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and Form I-765, Application for Employment Authorization. It also describes the procedures for adjudicating advance parole requests for individuals whose removal has been deferred under DACA and who need to travel outside of the United States for educational, employment, or humanitarian purposes.

**References**       **For DACA:** Memorandum issued June 15, 2012, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children, by Secretary of Homeland Security Janet Napolitano to U.S. Customs and Border Protection; U.S. Citizenship and Immigration Services; and Immigration and Customs Enforcement. See Appendix A for a copy of the Secretary's memorandum.

**For Employment Authorization:** 8 C.F.R. § 274a.12(c)(14) is the legal authority for employment authorization based on a grant of deferred action. The (c)(33) code will be used to distinguish EAD grants under DACA from EAD grants under other forms of deferred action. See also the Secretary's memorandum, which provides that USCIS shall accept applications to determine whether individuals whose removal has been deferred under DACA qualify for work authorization during the period of deferred action.

**Fraud Cases**       All officers are required to review cases for the possibility of fraud. All officers should review the case based on the standard fraud referral protocols and the additional guidance provided in Chapter 8, Section K of this SOP.

**Applicability**       This SOP is applicable to all Service Center personnel performing adjudicative and clerical functions or review of those functions. Personnel outside of Service Centers performing duties related to DACA processing will be similarly bound by the provisions of this SOP.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 054**

## **Introduction**, Continued

| | |
|---|---|
| **Conflict Resolution** | Any provision of the Act or 8 C.F.R. found by Headquarters Service Center Operations Directorate (SCOPS) to be in conflict with this SOP will take precedence over the SOP; any individual who identifies such an apparent conflict will report the matter immediately to the DACA SISO POC, who will in turn report the conflict to SCOPS.

If any apparent conflict is noted between this SOP and policy or guidance documents, the matter should be reported to SCOPS through the supervisory chain of command. |
| **Revisions** | SCOPS will issue numbered revisions to this SOP. No other document will be considered a valid modification.

***Version Control***
All personnel who maintain a hard copy of the SOP will ensure that it is the latest version. An electronic copy of the latest version will be posted per local procedures. The training unit will archive all prior electronic versions of this SOP. |
| **Additional Resources** | For additional resources on DACA, please see a supervisor or training coordinator for DACA training presentations and modules. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 055**

Confidential                                                    DEF - 00006866

## Introduction, Continued

| | |
|---|---|
| **DACA Overview** | On June 15, 2012, the Secretary of Homeland Security issued a memorandum entitled, <u>Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children</u>. In this memorandum, the Secretary provides guidelines for exercising prosecutorial discretion on a case-by-case basis to defer removal action of individuals who were brought to the United States as children. By issuing this memorandum, the Secretary recognized that, as a general matter, these individuals lacked the requisite intent to violate the law when they entered the United States as children. Therefore, the Secretary determined that additional measures are necessary to ensure that enforcement resources are not expended on these low priority cases, but rather, on those who meet DHS's enforcement priorities. |
| **Childhood Arrival** | For purposes of considering an individual for DACA under the Secretary's memorandum, an individual may be favorably considered for DACA if he/she: |

1. Entered without inspection before June 15, 2012, or his or her lawful immigration status expired as of June 15, 2012. For DACA purposes, the phrase "in unlawful status as of June 15, 2012" means that he/she never had a lawful immigration status on or before June 15, 2012, or any lawful status or parole that he/she obtained prior to June 15, 2012 had expired before June 15, 2012;
2. Was under the age of 31 as of June 15, 2012;
3. Came to the United States prior to reaching his/her 16th birthday;
4. Has continuously resided in the United States since June 15, 2007, up to the date of filing;
5. Was present in the United States on June 15, 2012, and at the time of making his/her request for consideration of deferred action with USCIS;
6. Is currently in school at the time of filing, has graduated or obtained a certificate of completion from a U.S. high school, has obtained a GED certificate or other equivalent State authorized exam in the United States, or is an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces; and
7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 18

**App. 056**

DEF - 00006867

# Introduction, Continued

| | |
|---|---|
| **DACA Requests Filed with USCIS** | USCIS will process all DACA requests, regardless of whether the individual is in removal proceedings (unless the individual is in immigration detention under the custody of ICE) or subject to a final order of removal. Depending on when the order was issued, this could be an order of deportation, exclusion or removal. A complete DACA package consists of concurrently filed Forms I-821D, Consideration of Deferred Action for Childhood Arrivals and I-765, Application for Employment Authorization, with the worksheet, Form I-765WS. Forms I-821D and I-765 must be filed concurrently. DACA requests will be adjudicated by all four Service Centers. |
| **DACA Requestors in Immigration Detention** | USCIS lacks the authority to consider requests from individuals who are in immigration detention under the custody of ICE at the time of filing Form I-821D and remain in immigration detention as of the date Form I-821D is adjudicated. Since the Lockbox is currently unable to reject these cases, the Center may receive a Form I-821D when the requestor was in immigration detention under the custody of ICE at the time of filing. Whenever this occurs, the Center should follow the procedures in Chapter 8, Section G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**   19

**App. 057**

Confidential                                    DEF - 00006868

# Introduction, Continued

**Lockbox**     All DACA requests are filed, with applicable fees, and with the appropriate
USCIS Lockbox. DACA filings mistakenly mailed to a Service Center will
be forwarded to the appropriate Lockbox for processing. Requests received at
a Lockbox Facility will be electronically scanned into OnBase (the Lockbox
intake system) and all pertinent fields will be populated in CLAIMS 3 (C3)
into the Form I-821 screen, but with a new category "3" as the basis for
requesting DACA. While Forms I-821for TPS, and I-821D for DACA are
very similar, when Form I-821 appears in CLAIMS with category "3" (to
denote that it is actually an I-821D for DACA), only those fields pertaining to
the DACA request will be active.



The file containing the Form I-821D and Form I-765 will be forwarded to the
appropriate Service Center for adjudication, based on the agreed upon routing
logic between Service Centers and Lockbox.

The Lockbox will screen DACA requests to determine whether they have
been filed correctly with USCIS.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 058**

Confidential                                         DEF - 00006869

# Chapter 3: Summary of Overall Process Flow For DACA Filings

**Introduction**    This section summarizes the general process flow for an initial DACA request, from intake at the Lockbox, to the point of a final decision.

**Process Flow**    Step 1:
Intake occurs at the Lockbox per the agreed upon Lockbox/SCOPS business rules.

Step 2:
Service Center Records performs the A-number look-up and validation process.

Step 3:
Data is populated into C3 via the Lockbox-Service Center interface.

Step 4:
Lockbox creates and ships A-Files/T-Files to the appropriate Service Center based on the agreed upon routing.

Step 5:
Service Centers receive the files and perform file intake functions.

Step 6:
ASC appointments are scheduled via SNAP by the Service Center pursuant to local procedures.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 059**

Confidential    DEF - 00006870

# Summary of Overall Process Flow For DACA Filings, Continued

**Process Flow**
(Continued)

Step 7:
In parallel to the SNAP scheduling process, background and security checks are initiated via TECS.

Step 8:
The Service Center must look for the following to determine the next steps:
- Whether the DACA requestor appeared at the ASC for biometrics capture and whether the FBI returned the fingerprint results (fingerprint results are required only for those 14 years and older); and
- Whether TECS and/or the FBI fingerprint results returned derogatory information impacting the exercise of discretion for DACA.

Step 9:
The Service Center will take adjudicative action.

Step 10:
The process flow splits off here, depending on the results from the FBI, the TECS check, on whether an adjudication hold should be placed on the request. A DACA request will be routed based on these results, as laid out in the chart below:

| If the TECS check has... | The I-821D and I-765... |
|---|---|
| No hit | are routed to an officer for adjudication. |
| A hit | is routed to adjudications from BCU with the annotation Does Not Relate (DNR); or |
| | is routed to BCU for confirmation and vetting of the related hit. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 060**

 DEF - 00006871

# Chapter 4: Lockbox Intake

**Rejection Criteria**

The Lockbox will use the following rejection criteria for DACA filings:

Rejection of Form I-821D:
- Missing Signature on either Form I-821D or Form I-765;
- Missing or wrong fee for Form I-765 (Expecting $465 total, which includes the biometrics fee, unless the individual fits within certain fee exemptions established for DACA requestors and an exemption has been previously approved);
- Missing Required Fields – needed for ingestion to C3:
  - Family Name
  - Address; or
  - Date of Birth;
- Form I-821D received without Form I-765;
- Filed from a foreign address;
- Form I-131 for advance parole received with Form I-821D (If the Form I-131 is filed with a separate check, only the Form I-131 will be rejected and the Form I-821D and Form I-765 will be accepted);
- The requestor was 31 years or older on June 15, 2012;
- The requestor is under 15 at time of filing and does not indicate that he/she is in removal proceedings in Question 3.b. of Form I-821D.

Rejection of Form I-765 (based on DACA grant):
- Missing or wrong fee (Expecting $465 total, including the biometrics fee, unless the individual fits within certain fee exemptions established for DACA requestors and an exemption has been previously approved); or
- Missing Signature.

*The "stand-alone" Form I-765s filed by those whose removal has been deferred under DACA by ICE will be processed at the National Benefit Center. Prior to the decision that USCIS will process all DACA requests to include those in removal proceedings, ICE did defer removal for some DACA requestors.*

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 061**

Confidential DEF - 00006872

# Lockbox Intake, Continued

**A# Validation/ Assignment**

The Lockbox will perform the following:
- A# validation is triggered by the Form I-821D;
- If the requestor provides an A# that matches the Central Index System (CIS) based upon the same name and date of birth, the A# is retained and cloned to the Form I-765;
- If the A# provided by the requestor is incorrect, the transaction goes to the queue for research. If the correct A# is found in USCIS systems, it is inserted into the Form I-821D record and cloned to the Form I-765. If no A# is found in USCIS systems, then an A# is assigned to Form I-821D and cloned to the Form I-765;
- If there is no A# on the Form I-821D, the transaction goes to the queue for research. If the correct A# is found, it will be inserted into the Form I-821D record and cloned to the Form I-765. If no A# is found in USCIS records (manual search), then the A# is assigned to Form I-821D and cloned to the Form I-765.

Research is completed by Service Center staff remotely accessing the Lockbox intake system. DACA requests with a missing or invalid A# are routed to USCIS to review. USCIS may correct the A# or assign a new A#.

**Record of Proceeding (ROP)**

The Lockbox will assemble the DACA files in the following order:

| Records Side | Non-Records Side |
|---|---|
| Valid Form G-28 | Form G-28 (not-valid) face down |
| Form I-821D | Property Envelope (facing backward and upside down) |
| Form I-765WS | |
| Form G-1145 | |
| Attorney's Letter (if applicable) | |
| Passport | |
| Birth Certificate | |
| Form I-94 | |
| Other Supporting Documentation (e.g., school transcripts and relating envelope) | |
| Form I-765 (2 requestor's photos will be placed in a ziplock bag and stapled to the Form I-765) | |
| Address Side of Envelope | |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 062**

Confidential    DEF - 00006873

# Chapter 5: Service Center Intake

**Incoming Files**

The contractor will perform the following actions:
- Open the boxes from the Lockbox;
- Date stamp and check the manifest against the files in the boxes;
- Separate A-file and T-files;
- Perform "new add" for the receipt files, A-files, and T-files, as well as consolidate Forms I-821D and I-765 into the A-file/T-file in the National File Tracking System (NFTS);
- T-files – locate the A-file(s) using the NFTS inquiry screen and if the A-file(s) are located outside the Service Center, initiate the A-file request;
- EOIR I-485 Receipt files – do not request an EOIR I-485 receipt file;
- A-files – Perform "new add the A-file" into the Central Index System (CIS); and
- Deliver DACA files to work distribution. Responsible Party Codes (RPCs) are used to track the location of files at the Service Center. An NFTS barcode is placed on each shelf, box, or drawer in which DACA files are stored.

The Service Center will perform the following actions:
- Perform a Quality Assurance review on a random sample of incoming DACA files. ROP order, proper acceptance, and correct matching data on the form compared with the CLAIMS record, will all be reviewed. Any errors will be recorded and reported back to the Lockbox service provider for process improvement steps. Corrections will be made at the Service Center.
- Initiate an automated **LE** check of the DACA requestor's name(s) and date(s) of birth; and
- Review and resolve any identified hit (performed by BCU officers).

See Chapter 6 for more detailed information relating to background checks.

**Biometric Capture**

The Service Center will perform the following actions:
- Compile **daily bulk scheduling** requests and send them to the ASC for SNAP scheduling; and
- Fill officer work orders, as biometric and fingerprint results post for DACA requestors.

*Continued next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 063**

# Service Center Intake, Continued

**Biometric Rescheduling**

All reschedule requests will go through the centralized rescheduling facility. The centers will be notified via a spreadsheet from the centralized rescheduling facility upon rescheduling of an original ASC appointment.

The requestor can reschedule multiple times within 87 days of the initial ASC appointment date. If the requestor fails to appear at the ASC within the 87 days, the DACA request will be denied for abandonment.

If the requestor asks for an appointment beyond 30 days into the future, the centralized rescheduling facility will send a scanned request to the Service Center for processing. The rescheduled ASC appointment date is not to exceed the 87-day window.

**Biometric No Shows**

If a requestor is originally scheduled for an ASC appointment and does not appear, the center should issue RFE DACA 130. The RFE should include other deficiencies identified during the review of the request. A written response to the RFE is not required, provided that the requestor goes to the rescheduled ASC appointment and no other evidence is requested.

The centers will be notified via a spreadsheet from the centralized rescheduling facility upon rescheduling of an original ASC appointment. The center will then hold the case for the new appointment, and if the requestor fails to appear again, or if the requestor fails to reschedule a second appointment within 87 days based on that RFE, the case will be denied for abandonment.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 064**

Confidential

DEF - 00006875

# Service Center Intake, Continued

**Homebound Biometrics Capturing**

The ASC appointment notice directs the requestor to call the National Customer Service Center (NCSC) telephone line if they are unable to attend their biometrics appointment due to medical limitations. When contacted, the NCSC representative will ask the requestor to provide information found on his or her appointment notice. The requestor will also be asked questions about his or her request for special accommodations. If evidence is required to support the special accommodations request, the NCSC representative will explain to the requestor how to submit evidence. The NCSC will contact the designated POC at the ASC regarding the request. If the POC determines the requestor qualifies for special accommodations, the POC will then obtain information about the requestor's situation and make arrangements for the requestor's biometrics capturing.

When a requestor contacts the Centers directly for information about special accommodations, the Centers should issue DACA Call up 150C from Appendix D to inform him or her about how to request special accommodations.

**Officer Work Orders**

The contractor will perform the following actions:
- In accordance with local procedures, screen prints may be provided to officers to reduce the need to search systems at the point of adjudication; and
- Adjudication ready DACA files will be delivered to officers.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 065**

Confidential

DEF - 00006876

# Service Center Intake, Continued

**Non-Sufficient Funds (NSF)**

*Background*

This section addresses the procedures to be used for completing the non-sufficient funds (NSF) cases. The NSF cases are identified by the Burlington Finance Center (BFC) and are listed in the NSF "New Bill Report" in the Federal Finance Management Service (FFMS) system.

For DACA, Forms I-821D and I-765 must be filed concurrently. There is no fee for Form I-821D. The $380 fee is required for Form I-765. The $85 biometrics fee is also required. Lockbox will be looking for $465, either in one check or in two checks. The I-765 fee and the biometrics fee will be bundled in C3 and listed as one fee -- $465. If the DACA requestor does not remit $465, Lockbox will reject the entire filing. Even when the proper fee has been remitted, it is possible that payment may be returned due to NSF. The NSF can occur in a combination of scenarios: the fees are paid in one check and the entire check is returned as NSF; or the fee is paid in two checks and either or both checks are returned as NSF. Failure of either fee or both fees to clear the bank, or being made good within the 14 calendar days allowed, will result in denial of Form I-821D and rejection of Form I-765. See Chapter 9 for more information on the denial.

*Retrieving the New Bill Listing Report in FFMS*

Fee payments in the form of personal checks, cashier checks, or money orders are submitted along with a DACA request. When a discrepancy is found in a payment, such as stale, dated, or without sufficient funds, etc., the bank will notify the Burlington Finance Center (BFC) in Vermont. These non-payment checks or money orders are referred to as bounced checks. The BFC will compile all the bounced checks and enter the data into the FFMS system, create an invoice number for each bounced check case, and place them on the bounced check "New Bill Report." The Service Center Records Divisions, on a daily basis, access this data via the FFMS website to download a bounced check "New Bill Report."

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 066**

Confidential                                    DEF - 00006877

# Service Center Intake, Continued

**Non-Sufficient Funds (NSF)** (continued)

*Invoicing the Payee*

Along with listing the case in FFMS, the BFC will also mail an invoice to the payee of the fee, requesting that the new payment be sent to them and that a $30 NSF charge also be paid. The $30 NSF charge is assessed on <u>each</u> bounced check.

*Notifying the DACA Requestor*

The Service Center will mail an informational notice on the I-797C to the DACA requestor regarding the specific NSF payment. In this case, the DACA requestor will receive the NSF notice, regardless of whether they are the payee or not. In this manner, both the payee and the DACA requestor receive notification if they are different parties.

*Placing Case in Hold Status*

To reflect the hold status of the case, the action codes will be recorded in C3, are as follows:

 CHECK BOUNCED, CASE NOT YET COMPLETED and CHECK DEFICIENCY NOTICE 1 SENT

Place file on a hold shelf.

*Completion procedure when case is paid*

The bounced check paid cases are identified by Burlington Finance Center and are listed in the bounced check "Paid Activity Report" in the FFMS system. The Service Center Records Divisions access this data daily via the FFMS website to download the bounced check Paid Activity Report.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**App. 067**

Confidential

DEF - 00006878

# Service Center Intake, Continued

| | |
|---|---|
| **Non-Sufficient Funds (NSF)** (continued) | *System Update Steps*<br><br>The CLAIMS GUI I-765 record will be accessed. The new paid date from the Paid Activity Report will become the new Received Date in the record.<br><br>The remittance screen will be updated with the action code:<br>**LE** FEE COLLLECTED ELSEWHERE<br><br>A modified receipt notice will be printed and mailed reflecting the new Received Date. The action code recording this is: **LE** MODIFIED RECEIPT NOTICE 1 SENT<br><br>The hold status will be removed from the record. The action code recording this is: **LE** BOUNCED CHECK CORRECTED ON CASE NOT YET COMPLETED<br><br>The case is now ready to proceed again through the pre-adjudication process. Schedule the biometrics appointment in SNAP and place the file on the biometrics hold shelf.<br><br>*Mailing the Receipt notice*<br><br>The receipt notice states:<br>"This is to notify you that we have received full payment for the above referenced application or petition and processing has resumed. Your filing date has been adjusted to reflect the receipt of payment. We will notify you separately of our decision on the application or petition."<br><br>*Completion procedure when case remains unpaid*<br><br>Unless fee exempt, the DACA requestor has 14 calendar days from the invoice date to submit proper payment by credit card, money order or cashier's check to the BFC. The proper payment is $465 -- $380 for the Form I-765 and $85 for the biometrics fee. If the $465 was paid in two checks, either check exceeding the 14 calendar days allowed to correct NSF status will result in rejection of Form I-765.<br><br>• Pull the files that have been staged on the bounced check hold shelf for over 14 days and verify the case in the CLAIMS system and determine the bounced check "paid" status in FFMS. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 30

**App. 068**

Confidential

DEF - 00006879

## Service Center Intake, Continued

**Non-Sufficient Funds (NSF)**
(continued)

The FFMS "Status" box indicates "OPEN"

The "Open" status means the BFC has not received the bounced check payment in full from the debtor. After the 14-day hold on the bounced check hold shelf, a C3/GUI application/petition shall be pulled from the hold shelf for review. If it has been over 14 days past due and the case status shows "Open" in FFMS and there is no indication of a "Change of the Due Date" made by the BFC in the in the Customer Log (RM043) screen, reject the Form I-765 as "untimely paid."

Recording the Rejection

The case is accessed in C3 and the action code recorded is: **LE** BOUNCED CHECK NOT CORRECTED, REJECTED

Form I-765 form will be closed by the Records Analyst in this manner:
In the "Action Block" of the application, stamp in red or black ink **"REJECTED Bounced Check."**

A memorandum is printed from a template in MS Word recording the following data:

- Today's Date
- Form Type
- A# (if available)
- Receipt #
- Date Rejected
- Invoice #
- Amount
- Debtor's Name (Optional)

Place this memo on the top of the right side of the DACA A-file.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 069**

Confidential

DEF - 00006880

# **Service Center Intake**, Continued

| | |
|---|---|
| **Non-Sufficient Funds (NSF)** (continued) | *Mailing the Rejection*<br><br>A rejection notice printed on I-797 is generated from C3 and mailed to the requestor. It reads:<br><br>We previously notified you that the payment for the filing fee in the above case was returned. The Burlington Finance Center did not receive payment within 14 days of the invoice.<br><br>Your application or petition has been rejected as improperly filed. Any previously assigned priority or processing date is no longer applicable. A new application or petition must be filed, and a new fee is required, if you wish to pursue the benefit. Personal Checks will not be accepted.<br><br>*Disposition of the I-821D*<br><br>After processing the rejection for Form I-765 due to the NSF, on **the same day**, route the A-file to a DACA Supervisory Immigration Services Officer for issuance of a denial for the Form I-821D.<br><br>The denial should be issued per the instructions in Chapter 9 of this SOP. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 070**

Confidential

DEF - 00006881

# Chapter 6: Background and Security Checks

**Introduction**   Background and security checks will be conducted for all DACA requests. As part of the background check, USCIS requires that specific security checks or a combination of checks are completed for Forms I-821D and I-765. The background checks refer to the analysis of the results of the security checks or any other identified concern relating to national security or public safety and the actions required to resolve the concern. The resolution must be conducted in accordance with current NaBISCOP and CARRP policies.

Fraud related concerns that arise during the course of background and security checks should be addressed according to the March 2011 SOP, 2008 ICE/USCIS MOA and Chapter 8, Section K of this SOP. Fraud related issues will be referred to CFDO.

The following specific background and security checks apply to DACA requestors:

- 
- **LE** (requestors aged 14 and older).
- 

**Responsibility**   All DACA requestors with national security issues, **LE** hits, or other criminality concerns will be processed by the BCU DACA team per the following guidance:

- **National Security:** All **LE** with national security issues will be resolved through the established CARRP process. <u>All cases with National Security concerns will be resolved and adjudicated by the CARRP officer attached to the BCU DACA Team.</u>

- 

- 

*Continued on next page*

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**   33

**App. 071**

Confidential

DEF - 00006882

## Background and Security Checks, Continued

**Responsibility** (continued)



**System Updates for DACA File Movement Into and Out of BCU**

For reporting purposes, DACA file movement into and out of the BCU will require the following updates in C3:

- "Sent to Background Check Unit (BCU) for Resolution" **LE** when sending a DACA request to the BCU; and
- "Received from Background Check Unit (BCU) with Resolution" **LE** when receiving a DACA request from the BCU for final processing.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 072**

Confidential

DEF - 00006883

## Background and Security Checks, Continued

**Overview of Background Check Process**

Appendix C illustrates a high level overview of the background check process once potentially derogatory information has been identified as a result of the security checks, or from other sources.



### A. Procedures for confirming a match

USCIS personnel must:

- Determine if the subject of the derogatory information relates to the requestor; and
- Compare the information from the security check or other source to the biographic, biometric information, and physical descriptors about the individual.

USCIS personnel may use any combination of available identifiers, to assist in the determination. While USCIS officers primarily rely on best judgment and experience in determining whether the information relates to the individual, USCIS personnel should consult with a supervisor if there is any uncertainty as to whether the information relates to the DACA requestor. If there continues to be any uncertainty about the match, supervisors may work through their chain of command and with HQ, if necessary.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 073**

Confidential

DEF - 00006884

## Background and Security Checks, Continued

**Overview of**
**Background**
**Check Process**
(continued)

**B. Triage Information**

1. *Conclusive Match*
   Once it is determined that the information relates to the individual,
   USCIS personnel must determine if the results fall into the following
   categories, which require special processing:

   - National Security;
   - EPS or other criminal cases; or
   - Articulated immigration Fraud.

   Criminal hits, which involve a violation of U.S., state, or local
   criminal law, but do not rise to the level of an EPS concern, as defined
   in the November 7, 2011, NTA memorandum, impact each case
   differently and should be considered during the adjudication process to
   determine if such activity is germane to the request for consideration
   of deferred action for childhood arrivals. Criminal activity occurring
   outside of the United States (including foreign convictions) that may
   be revealed during routine background checks or which the requestor
   may have disclosed on the deferred action request, factor into the
   evaluation of whether the requestor poses a public safety concern,
   under the totality of the circumstances.

2. *Inconclusive Match*
   When USCIS officers are unable to confirm the match after
   exhausting available electronic systems searches and other resources,
   personnel must consult their chain of command to determine the
   appropriate follow-up action. In some instances, [ **LE** ] an RFE to
   confirm the match, or other appropriate action may be required.
   USCIS personnel must then document the hit, include a statement in
   the Resolution Memorandum or other memoranda, as required,
   explaining the inconclusive nature of the match determination, the
   actions taken to resolve the hit, and refer the case to the appropriate
   unit or field office to confirm the match. If USCIS personnel are still
   unable to confirm the match, refer the case through the chain of
   command.

**C. Resolve Concern**
   Resolution may require a variety of activities to be completed by the BCU
   which include, but are not limited to: [ **LE** ]

   **LE**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 074**

Confidential                                                    DEF - 00006885

# Background and Security Checks, Continued

| | |
|---|---|
| **Overview of Background Check Process** (continued) | Deconfliction is the coordination between USCIS and another governmental agency or record owner to ensure that planned adjudicative activities (e.g., interview, request for evidence, site visit, decision to grant or deny, issue an NTA, and the timing of such) do not compromise or impede an ongoing investigation or other record owner interest. |
| | **D. Document the Resolution**<br>Each hit requires documentation by the BCU DACA Team member of any resolution. Review the specific information for each background and security check for more information on documenting the resolution. |
| | **E. Adjudication**<br>Once the NS/EPS/other criminal concern has been resolved, the BCU DACA ISO should proceed with adjudication. |
| **TECS** | USCIS will conduct TECS batch queries on the primary names and DOBs on all DACA requests within 15 calendar days of initial receipt. The objective of the batch query is to query a large number of records at the same time and confirm the existence or non-existence of information that relates to the search criteria entered. Currently, USCIS has access to all wants, warrants, and lookouts listed in TECS and certain files within the NCIC (National Crime Information Center) database through TECS.<br><br>In addition, USCIS has access to other types of records, referred to as "hot files." The following records are "hot files":<br><br>    &bull; Wants/Warrants;<br>    &bull; Foreign Fugitives;<br>    &bull; Missing Persons;<br>    &bull; Registered Sex Offenders;<br>    &bull; Deported Felons;<br>    &bull; Supervised Release;<br>    &bull; Protection Orders;<br>    &bull; Terrorist Organization Members; and<br>    &bull; Violent Gang Members. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 075**

DEF - 00006886

# Background and Security Checks, Continued

**TECS**
(continued)

Officers must determine whether the result of a security check relates to the subject or does not relate (DNR). Officers review and resolve security checks and complete the background checks. For **LE** procedures, search criteria and best practices, refer to the current NaBISCOP policy.



The following items, if present, must be reviewed in the DACA A-file for name and DOB combinations and aliases, and require a TECS query:

- Form I-821D;
- Form I-765;
- All supporting documents; and
- Any other documents in the A-file relating to the DACA request including, but not limited to the following:

    - Passports;
    - Visas;
    - Border Crossing Cards (BCC);
    - Forms I-94;
    - Birth Certificates;
    - Marriage Certificates;
    - Divorce Decrees;
    - Diplomas/Academic Transcripts;
    - Student Identification Cards;
    - Military Identification Cards;
    - Driver's Licenses;
    - Social Security Cards; or
    - Business/Membership Cards.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 076**

Confidential                                                                                              DEF - 00006887

# Background and Security Checks, Continued

**Types of
Results from
TECS Queries**



*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 077**

Confidential

DEF - 00006888

## Background and Security Checks, Continued

**Resolution Memorandum**

The resolution memorandum is the formal documentation of the reconciliation of a related hit. This is a mandatory action that must be completed before rendering a final adjudicative decision. Before completing the adjudication, the officer should ensure that each resolution memorandum completely resolves the hit. For a related hit, a separate resolution memorandum must be completed for each subject with a related hit and each file containing a related hit. For procedures and formats for the resolution of related hits, refer to the current NaBISCOP policy.

**FBI Fingerprint Check**

The FBI Fingerprint Check provides summary information of an individual's administrative or criminal record within the United States. The FBI Fingerprint Check is conducted through the Integrated Automated Fingerprint Identification System (IAFIS). The IAFIS is a national fingerprint and criminal history system maintained by the FBI's Criminal Justice Information System (CJIS) Division. State, local, and Federal law enforcement agencies submit fingerprints and corresponding administrative or criminal history information to IAFIS. Participation by state and local agencies is not mandatory, so the FBI Fingerprint check does not contain records from every jurisdiction. The information contained in the record is obtained using prior fingerprint submissions to the FBI related to arrests and, in some instances, Federal employment, naturalization, or military service.



Issues of criminality arising from an IDENT, IDENT handling procedures, and adjudication of the case based on the IDENT, are addressed more fully in Chapter 8, Section G of this SOP.

*Continued on next page*

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 40

**App. 078**

Confidential                                                                                                    DEF - 00006889

## Background and Security Checks, Continued

| | |
|---|---|
| **FBI Fingerprint Check Procedures** | All individuals filing a DACA request will be scheduled for biometrics capture (photo, fingerprints, and signature) at an ASC regardless of whether biometrics were captured for the requestor from a previous filing with USCIS within the last 15 months. DACA requestors under the age of 14 will have the press print captured instead of full fingerprints. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 079**

Confidential

DEF - 00006890

# Chapter 7: DACA Overview

| | |
|---|---|
| **Filing** | All individuals requesting DACA must file their request individually and satisfy the DACA guidelines in their own right; USCIS will not consider deferring removal action of an individual under DACA based on their familial relationship to someone who has received DACA. There is no derivative DACA. |

| | |
|---|---|
| **Commonwealth of the Northern Mariana Islands (CNMI) Not Eligible** | The CNMI is part of the United States and is not excluded from this process. However, because of the specific guidelines for DACA, individuals who have been residents of the CNMI are in most cases unlikely to qualify for the program because they must, among other things, have come to the United States before their 16th birthday and have resided continuously in the United States since June 15, 2007.

Under the Consolidated Natural Resources Act of 2008, the CNMI became part of the United States for purposes of immigration law only on November 28, 2009. Therefore, entry into, or residence in, the CNMI before that date is not entry into, or residence in, the United States for purposes of DACA.

USCIS has used parole authority in a variety of situation in the CNMI to address particular humanitarian needs on a case-by-case basis since November 28, 2009. If an individual lives in the CNMI and believes that he or she meets the guidelines for DACA except that his or her entry and/or residence to the CNMI took place entirely or in part before November 28, 2009, USCIS will consider the situation on a case-by-case basis for a grant of parole. Individuals who believe this situation applies to them are instructed to make an appointment through INFOPASS with the USCIS Application Support Center in Saipan to discuss their case with an immigration officer. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential DEF - 00006891

## DACA Overview, Continued

| | |
|---|---|
| **Initial DACA Package** | A complete DACA package must include the following items: |

1. Form **I-821D**, Consideration of Deferred Action for Childhood Arrivals, properly filed with proper signature.
2. Form **I-765**, Application for Employment Authorization with **I-765 WS**, properly filed with proper signature, the base filing fee, and the biometric services fee. The fees for Form I-765, and the biometric services fee are not eligible for fee waiver consideration.*
3. Evidence of identity to include date of birth, which would establish compliance with the upper and lower age limits.
4. Evidence of entry prior to the requestor's 16th birthday.
5. Evidence of continuous residence since June 15, 2007, up to the date of filing.
6. Evidence of unlawful status on June 15, 2012, if admitted or paroled.
7. Evidence of presence in the United States on June 15, 2012.
8. Evidence that any absences from the United States during the required period of continuous residence were brief, casual, and innocent absences.
9. Evidence that the requestor is currently in school at the time of filing, graduated or obtained a certificate of completion from a U.S. high school, public or private college, or university or community college, obtained a general educational certificate (GED) or other equivalent State-authorized exam in the United States, or is an honorably discharged veteran of the Coast Guard or U.S. Armed Forces.

*If the requestor has been determined exempt from the fee. The DACA package must be accompanied by the exemption approval letter from USCIS Headquarters.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   43

**App. 081**

Confidential                                    DEF - 00006892

# DACA Overview, Continued

| DACA Guidelines | An individual meeting the following guidelines may be favorably considered for DACA if, under the totality of the circumstances, he/she: |
|---|---|

       1. Entered without inspection before June 15, 2012, or his or her lawful immigration status expired as of June 15, 2012. For DACA purposes, the phrase "in unlawful status as of June 15, 2012" means that he/she never had a lawful immigration status on or before June 15, 2012, or any lawful status or parole that he/she obtained prior to June 15, 2012 had expired before June 15, 2012;

      2. Was under the age of 31 as of June 15, 2012 (Born after June 15, 1981 so was not age 31 or older on June 15, 2012);

      3. Came to the United States prior to reaching his/her 16th birthday;

      4. Has continuously resided in the United States since June 15, 2007, up to the date of filing;

      5. Was present in the United States on June 15, 2012, and at the time of making his/her request for consideration of deferred action with USCIS;

      6. Is currently in school at the time of filing, has graduated or obtained a certificate of completion from a U.S. high school, has obtained a GED certificate or other equivalent State authorized exam in the United States, or is an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces; and

      7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 082**

# Chapter 8: Adjudication of The DACA Request

## A. Procedural Overview

**Evaluating the Evidence**

When evaluating the evidence submitted in support of a request for DACA consideration, refer to the discussion of the different types of evidence, the weight to be given to such evidence, and the standards of proof, all of which are discussed in Chapter 1.

**Request for Evidence (RFE) versus Notice of Intent to Deny (NOID)**

Officers will **NOT** deny a DACA request solely because the DACA requestor failed to submit sufficient evidence with the request (unless there is sufficient evidence in our records to support a denial). As a matter of policy, officers will issue an RFE or a Notice of Intent to Deny (NOID).

If additional evidence is needed, issue an RFE whenever possible.

When an RFE is issued, the response time given shall be 87 days. A list of DACA RFE call-ups and the actual templates can be found in Appendix D.

When a NOID is issued, the response time given shall be 33 days.

**Unobtainable A-files**

After requesting an A-file from the FCO, there may be occasions when there is no response or the file cannot be released (e.g., pending interview, etc.). After three unsuccessful attempts to obtain the file from a field office via CIS or from ICE, adjudicate the DACA filing from the T-file.

If the A-file is with ICE, the center should send three requests via CIS using standard procedures. However, if the A-file is not received from ICE within the 30 days allowed after the initial request, the center's Records Section should also send a manifest containing a list of the A-files requested from ICE to the designated ICE e-mail box, which has been created specifically for the DACA workload. The center's Records Section has this e-mail box and will designate a primary and an alternate Point of Contact who will send the manifest.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 083**

DEF - 00006894

**A-File Requests from USCIS Field/Asylum Office**

Centers may release an A-file to a USCIS Field Office or Asylum Office without SCOPS approval whenever the A-file request is based upon adjudication of a pending of a pending Form I-589, Form I-485 (or motion to reopen/reconsider I-485), or Form N-600 located within the requesting office unless the requestor's case contains novel, complex, or sensitive information (i.e., national security concern, currently in detention, etc.).

In these instances, Centers are instructed to notify SCOPS of the novel, complex, or sensitive information within the case and wait for approval to release the A-file.

Whenever the A-file is released to a USCIS Field Office or Asylum Office, Centers will hold adjudication of the Form I-821D and I-765 and send the A-file with the DACA forms pending. Prior to release, Centers should coordinate with their Records Division to identify a POC within the requesting office to inform the POC that the A-file must be returned as soon as final adjudication is rendered so that appropriate action can be taken on the DACA forms.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 084**

Confidential

DEF - 00006895

**CITRIX/ EOIR
I-485**

Eligible individuals in removal proceedings can apply for various immigration benefits. In order to file their applications with the Immigration Court, these individuals must file a copy of the Form I-485 with the corresponding fee with the Texas Service Center. These forms look like regular filings; however the EOIR I-485 appears in CLAIMS with an "X" in the current status field as shown in the Image A below. The Texas Service Center will issue a receipt notice to the applicant and retain the copy of the form for a period of six months. Centers should not attempt to request this copy. Once an EOIR I-485 has been identified, Centers should check the Central Index System (CIS) to verify if the Immigration Judge rendered a decision. See Image B. If Lawful Permanent Status was not granted, a pending Form I-821D should be adjudicated on its merits even if the case remains open in CITRIX. If status was granted, Centers will deny the case using DACA 501 from Appendix K.

Image A.



Image B.



FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**App. 085**

| | |
|---|---|
| **Duplicate Filings** | If the first request was approved before the second request was filed, please send a Request for Adjudicative Guidance to the HQSCOPSDACA mailbox. |

If the first request was denied before the second request was filed, consider the second request on its merits.

If the first request was still pending when the second request was filed, the ISO should review both requests and supporting documentation. If it is the same requestor and there are no articulable elements of fraud, then the ISO should take the following action:

    a) If after reviewing both requests, only one request is approvable and there is no derogatory information in the other request that would otherwise disqualify the requestor:

        1. Approve the request that is approvable.

        2. Deny the other request using the denial template entitled "USCIS Already Deferred Action."

    b) If after reviewing both requests, both requests are approvable:

        1. Approve the request that was received first.

        2. Deny the other request using the denial template entitled "USCIS Already Deferred Action."

    c) If after reviewing both requests, neither request is approvable:

        1. Take action on each case as separate requests based on the merits of each case (i.e., RFE if insufficient evidence, NOID if clearly does not meet guidelines, etc.).

        2. If one or both requests become approvable after the RFE/NOID response is received, follow the guidance listed in a) or b) above for those scenarios.

        3. If neither request becomes approvable, deny both requests using the appropriate checkbox or paragraph within Appendix F or Appendix K.

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 086**

## B. System Searches



FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**App. 087**

Confidential                                    DEF - 00006898

## C. Determining if Guidelines are Met

**Introduction**

Individuals may be considered for DACA upon showing that they meet the prescribed guidelines by a preponderance of the evidence. The evidentiary standards are discussed in Chapter 1. If additional information is needed for DACA consideration, issue an RFE. Appendix D has a list of DACA RFE call ups.

**Identity**

Acceptable evidence may consist of, but is not limited to:
- A passport,
- A birth certificate accompanied by some type of photo identification,
- Any national identity document from the requestor's country of origin bearing the requestor's photo and/or fingerprint;
- Any U.S.-government immigration or other document bearing the requestor's name and photograph (e.g., Employment Authorization Documents (EADs), expired visas, driver's licenses, non-driver cards);
- Any school-issued form of identification with photo;
- Military identification document with photo
- State-issued Photo ID showing date of birth; or
- Any document that the requestor believes is relevant.

The Matricular Consular or other form of consular identification issued by a consulate or embassy in the United States will be accepted as proof of identity.

Expired documents are acceptable.

If identity is not established, then issue RFE DACA 100 call up from Appendix D.

**Age at Time of Filing**

If the DACA requestor is not in removal proceedings, does not have a final removal order, or does not have voluntary departure, he/she is to be age 15 or older to file the DACA request. To determine the requestor's age at the time of filing, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.

If the DACA requestor is in removal proceedings (including cases that have been administratively closed), which includes having an order of voluntary departure after proceedings were initiated or a final order, he/she may be under age 15 at the time of filing the DACA request.

Regardless of whether the DACA requestor is in removal proceedings or not, he/she was born after June 15, 1981 and meets the remaining guidelines in the Secretary's memorandum.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 088**

DEF - 00006899

## C. Determining if Guidelines are Met, Continued

**Arrived in the United States Prior to 16th Birthday**

The Secretary's memorandum states as one of the guidelines to be met before an individual is considered for DACA is that he/she arrived in the United States prior to reaching his/her 16th birthday. To determine the date of arrival, review the response to Part 1, questions 13 through 17 of Form I-821D for the date and place of initial entry into the United States and status at entry. In addition, review question 6 in Part 1 and the requestor's birth certificate or other acceptable evidence establishing the requestor's date of birth.

If the requestor indicates a status in response to question 15 of Form I-821D, but does not provide the I-94# or a copy of the I-94 or any other document, such as a copy of his/her passport showing the date of initial entry, perform a systems check (SQ94/Arrival Departure Information System (ADIS)) to validate the date of entry, if needed.

If the requestor entered "no status" in response to question 15 of Form I-821D, or if the requestor indicates that he/she arrived with a status or was paroled into the United States, but this cannot be validated through a systems check, review the totality of the evidence submitted to establish whether the individual entered before age 16.

If the totality of the evidence does not establish that the requestor arrived in the United States before his/her 16th birthday, issue RFE DACA 103 call up from Appendix D for evidence of the date of arrival.

**Present in the United States on June 15, 2012**

The Secretary's memorandum states as one of the guidelines to be met before an individual may be considered for DACA that the individual was present in the United States on June 15, 2012. To determine if the requestor was present in the United States on June 15, 2012, review the responses to Part 1 regarding the date of entry, status at entry and date authorized stay expired, and the responses to the questions in Part 2 regarding all absences from the United States since June 15, 2007. Review the totality of the evidence submitted. The evidentiary standards are discussed in Chapter 1. If the requestor arrived before June 15, 2007, and there is no indication of any departure and the evidence submitted establishing his/her presence in the United States on June 15, 2012 is credible, then this guideline has been met.

If a given document does not specifically refer to June 15, 2012, review the dates on all the documentation submitted in its totality to establish presence in the United States on that date.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 089**

Confidential DEF - 00006900

## C. Determining if Guidelines are Met, Continued

**Present in the United States on June 15, 2012 (continued)**

The following are examples of acceptable evidence to establish presence in the United States on June 15, 2012. This list of examples is not exhaustive.

| Evidence | Acceptable Documentation |
|---|---|
| Employment Records | • Pay stubs;<br>• W-2 Forms;<br>• Federal, State, or local income tax returns; or<br>• Letters from employer(s) or, if the DACA requestor has been self-employed, letters from banks, and other firms with whom he/she has done business.<br><br>In all of these documents, the employee's name and the name of the requestor's employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.<br><br>Such letters must include: **(1)** the requestor's address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** a brief summary of the requestor's duties with the company. |
| Receipts, Bills, Letters | • Rent receipts;<br>• Utility bills (gas, electric, telephone, etc.) bearing the requestor's name (or family name if residing at same address) and address; or<br>• Receipts or letters from companies showing the dates during which the requestor received service. |
| School Records | Transcripts, letters, report cards, etc., from the school(s) that the requestor attended in the United States showing the name of school(s) and the period(s) of school attendance. |
| Medical Records | Hospital or medical records showing medical treatment or hospitalization of the requestor. Such records should show the name of the medical facility or physician, as well as the date(s) of the treatment or hospitalization. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid 'need-to-know' basis without prior approval from the originator.

**App. 090**

Confidential — DEF - 00006901

## C. Determining if Guidelines are Met, Continued

Present in the
United States on
June 15, 2012
(continued)

| Evidence | Acceptable Documentation |
|---|---|
| Memberships | • Official records from a religious entity in the United States confirming the requestor's membership or attendance in the entity, attendance at entity events, or participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).<br>• Documentation showing membership in community organizations (e.g. Scouts). |
| Military Records | Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records). |
| Additional Documents | Additional documents to support the requestor's claim may include:<br>• Money order receipts for money sent in or out of the country;<br>• Passport entries;<br>• Birth certificates of children born in the United States;<br>• Dated bank transactions;<br>• Correspondence between the DACA requestor and other persons or organizations;<br>• U.S. Social Security card;<br>• Selective Service card;<br>• Automobile license receipts, title, vehicle registration, etc.;<br>• Deeds, mortgages, contracts to which the DACA requestor has been a party;<br>• Tax receipts;<br>• Insurance policies, receipts, or postmarked letters; and/or<br>• Any other relevant document. |

If the totality of the evidence does not establish that the requestor was present in the United States on June 15, 2012, issue RFE DACA 105 call up from Appendix D for additional evidence.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   53

**App. 091**

## C. Determining if Guidelines are Met, Continued

**Unlawful Immigration Status on June 15, 2012**

To be considered for DACA, the requestor is to demonstrate that he/she was in an unlawful status on June 15, 2012. For DACA purposes, the phrase "in unlawful status" means that the requestor never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that he/she obtained prior to June 15, 2012, had expired before June 15, 2012.

To determine whether the requestor was in an unlawful status on June 15, 2012, review the responses to Part 1 of Form I-821D regarding date of entry, status at entry, and any date that authorized stay or parole expired, if such authorized stay or parole existed. If the requestor was admitted for duration of status or for a period of time that extended past June 14, 2012, but violated his/her immigration status (e.g., by engaging in unauthorized employment, failing to report to his/her employer, or failing to pursue a full course of study) before June 15, 2012, USCIS will not consider his/her case for DACA unless the Executive Office for Immigration Review terminated his/her status by issuing a final order of removal against him/her before June 15, 2012.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Version August 28, 2013     54

**App. 092**

Confidential                                    DEF - 00006903

## D. Determining if Guidelines are Met, Continued

Examples of documents that may show the requestor's immigration status on June 15, 2012 include, but are not limited to the following:

- I-94/I-95/I-94W Arrival/Departure Record showing the date the requestor's authorized stay expired;
- If the requestor has a final order of exclusion, deportation, or removal issued on or before June 15, 2012, a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing the requestor into deportation, exclusion, or removal proceedings;
- Any other document that is relevant to show that the requestor lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

If needed, officers should conduct a systems check (i.e., to determine if a record exists) for the DACA requestor that will help in establishing his/her unlawful status on June 15, 2012.

If the evidence submitted does not establish that the requestor was in an unlawful status on June 15, 2012, issue RFE DACA 104 call up from Appendix D for additional evidence.
An individual who had Temporary Protected Status (TPS) on June 15, 2012, will not be considered for deferred action for childhood arrivals.

**Not Age 31 or Older on June 15, 2012**

The Secretary's memorandum provides that one of the guidelines to be met before an individual is considered for DACA is that the individual was not age 31 or older on June 15, 2012. In other words, the DACA requestor was born after June 15, 1981. To determine whether the requestor was born after June 15, 1981, review the requestor's birth certificate or other acceptable secondary evidence establishing the requestor's date of birth.

If there is no evidence establishing the requestor's date of birth, issue DACA RFE 140 call up from Appendix D.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 093**

Confidential　　　　　　　　　　　DEF - 00006904

## C. Determining if Guidelines are Met, Continued

**Continuous Residence (CR)**

The individual requesting DACA is to submit evidence that he/she has resided continuously in the United States since June 15, 2007, or earlier, and up to the present time. Present time means the date of filing.

If the answers to any of the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D are blank or if page 3 of the form is missing and no documentation was submitted, or the documentation submitted does not reasonably show when the requestor arrived and that the requestor meets the continuous residence (CR) guideline, issue an RFE. Include a copy of the original Form I-821D (if page 3 is missing, also include a blank page 3) with the RFE asking the requestor to provide the missing answers and to provide documentation that may establish CR.

The following are examples of acceptable evidence of (CR). This list of examples is not exhaustive.

| Evidence | Acceptable Documentation |
|---|---|
| Employment Records | • Pay stubs;<br>• W-2 Forms;<br>• Federal, State, or local income tax returns; or<br>• Letters from employer(s) or, if the DACA requestor has been self-employed, letters from banks, and other firms with whom he/she has done business.<br><br>In all of these documents, the employee's name and the name of the requestor's employer or other interested organization is to appear on the form or letter, as well as relevant dates. Letters from employers are to be signed by the employer and are to include the employer's contact information.<br><br>• Such letters are to include: **(1)** the requestor's address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; **(4)** and a brief summary of the requestor's duties with the company |
| Receipts, Bills, Letters | • Rent receipts;<br>• Utility bills (gas, electric, telephone, etc.) bearing the requestor's name (or family name if residing at same address) and address; or<br>• Receipts or letters from companies showing the dates during which the requestor received service. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 094**

Confidential                                    DEF - 00006905

## C. Determining if Guidelines are Met, Continued

**Continuous Residence (CR)** (continued)

| Evidence | Acceptable Documentation |
|---|---|
| School Records | • Transcripts, letters, report cards, etc., from the school(s) that the requestor attended in the United States showing the name(s) of the school(s) and periods of school attendance. |
| Medical Records | Hospital or medical records showing medical treatment or hospitalization of the requestor. Such records are to show the name of the medical facility or physician, as well as the date(s) of the treatment or hospitalization. |
| Memberships | • Official records from a religious entity in the United States confirming the requestor's membership or attendance in the entity, attendance at entity events, or participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.). <br> • Documentation showing membership in community organizations (e.g. Scouts). |
| Military Records | Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records). |
| Additional Documents | Additional documents to support the requestor's claim may include: <br> • Money order receipts for money sent in or out of the country; <br> • Passport entries; <br> • Birth certificates of children born in the United States; <br> • Dated bank transactions; <br> • Correspondence between the DACA requestor and other persons or organizations; <br> • U.S. Social Security card; <br> • Selective Service card; <br> • Automobile license receipts, title, vehicle registration, etc.; <br> • Deeds, mortgages, contracts to which the DACA requestor has been a party; <br> • Tax receipts; <br> • Insurance policies, receipts, or postmarked letters; and/or <br> • Any other relevant document. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**

**App. 095**

Confidential

DEF - 00006906

# C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| **Brief, Casual and Innocent (BCI) Absence on CR** | A brief, casual, and innocent absence from the United States will not interrupt the DACA requestor's continuous residence. A departure made before August 15, 2012, will not be disqualifying if the departure was "brief, casual, and innocent." Travel occurring after August 15, 2012, will not be considered brief, casual, and innocent, unless removal has been deferred under DACA and advance parole have been granted. |

If the requestor indicated in Part 2 of the Form I-821D that he/she has been absent before August 15, 2012, review the reason for the absence and any evidence submitted to show that it was brief, casual, and innocent.

Examples of evidence establishing that an absence was brief, casual, and innocent and therefore did not interrupt the requestor's continuous residence include, but are not limited to:
- Plane or other transportation tickets or itinerary showing the travel dates;
- Passport entries;
- Hotel receipts showing the dates the requestor was abroad;
- Evidence of the purpose of the travel (e.g., the requestor attended a wedding or funeral);
- Copy of any advance parole documents; or
- Any other relevant/probative evidence that could support a brief, casual, and innocent absence, as that term is defined in the definitions section of this SOP.

**Note that a departure made while under an order of voluntary departure or deportation, exclusion, or removal is not brief, casual, and innocent.**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 096**

Confidential

DEF - 00006907

## C. Determining if Guidelines are Met, Continued

**Effect of Travel Outside of the United States After August 15, 2012**

- Travel outside the United States after August 15, 2012 and before the DACA request is filed:
  - ○ The departure interrupts a requestor's continuous residence in the United States. The requestor cannot meet the continuous residence guideline for DACA and removal action should not be deferred.
- Travel outside the United States while the DACA request is pending:
  - ○ The departure shall be deemed an abandonment of the DACA request; therefore, the request will be denied for abandonment.
- Travel outside the United States after removal action has been deferred under DACA, but without advance parole:
  - ○ Deferred action under DACA is terminated automatically.

**CR/BCI Not Met**

If CR is not met, issue the following RFE DACA 101 call up from Appendix D.

If no documentation is submitted to show that a departure was brief, casual, and innocent, or the documentation is not sufficient, issue the following RFE DACA 102 call up from Appendix D.

If routine systems checks, documentation submitted with the DACA request, or evidence in the A-file indicate that a departure was made while under an order of voluntary departure or deportation, exclusion, or removal, issue a Notice of Intent to Deny (NOID) with the opportunity for the requestor to rebut the derogatory information. See Appendix E for NOID Template.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 097**

Confidential                    DEF - 00006908

## C. Determining if Guidelines are Met, Continued

**Education**

To meet the educational guideline for DACA consideration, a DACA requestor may show that he/she is currently in school, has graduated or obtained a certificate of completion from a U.S. high school or has a recognized equivalent of a high school diploma under State law, public or private college, or university or community college, or has obtained a General Educational Development (GED) certificate or equivalent State-authorized exam in the United States. Note that evidence of enrollment in on-line courses is acceptable. When reviewing such evidence, the completeness, credibility, relevance, and sufficiency are germane and take precedence over the electronic medium over which the education was received.

Each component of this guideline is discussed in more detail below.

**Currently In School**

To be considered "currently in school," a requestor is to be enrolled, at the time of filing, in:
- a public or private elementary school, junior high or middle school, high school, or secondary school;
- an education, literacy, or career training program (including vocational training or an English as a Second Language (ESL) course) that is designed to lead to placement in post-secondary education, job training, or employment;
- an education program assisting students either in obtaining a regular high school diploma or its recognized equivalent under State law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other equivalent State-authorized exam; or
- a public or private college or university or a community college;

For ease of reading, education, literacy, and career training programs will be referenced collectively as "alternative educational programs." When the DACA requestor seeks to meet the "currently in school" component of the educational guideline based on enrollment in an alternative educational program, the requestor's current enrollment in that program is to be in preparation for the requestor's anticipated subsequent placement in post-secondary education, job training, or employment (new employment or advancement within existing employment). Evidence of such subsequent placement is not required.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 098**

Confidential                                                    DEF - 00006909

## C. Determining if Guidelines are Met, Continued

**Currently In School**
(continued)

A DACA requestor who is enrolled in a personal enrichment class (such as arts and crafts) or who is enrolled in a recreational class (such as canoeing) is not in an alternative educational program and thus not considered to be "currently in school" for DACA purposes.

In determining whether enrollment in an alternative educational program meets the "currently in school" component of the educational guideline for DACA consideration, first, review the documentary evidence provided to see whether the alternative educational program is an education, literacy, or career training program (including vocational training and ESL) and whether it is publicly funded in whole or in part (State, Federal, county, or municipal funds.) If it is an alternative educational program and it receives public funding, no further evaluation is required. As long as the information is provided by the school/program, it is not necessary to RFE for copies of the actual funding documents. If this information is not provided, the RFE should request the information, but not require copies of the actual funding documents. If it is a literacy program that is run by a non-profit entity, no further evaluation is required with respect to the first part of the analysis. If, however, it is an alternative educational program that does not receive any public funding and it is not a non-profit literacy program, then officers are also to assess whether the program is of demonstrated effectiveness and are to look for such evidence, as described in more detail below.

Some of the ways a DACA requestor can meet the "currently in school" component of the educational guideline for DACA consideration and the different types of evidence that can be submitted, depending on the type of program in which he/she is enrolled, are discussed separately below. The examples and types of evidence listed here are illustrative, and not exhaustive.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 099**

Confidential

DEF - 00006910

| Public or Private Elementary, Junior High/Middle School, or High School/Secondary School | **Currently in School**<br>**Public or Private Elementary, Junior High/Middle School, or High School/Secondary School**<br>Evidence of enrollment in a public or private elementary, junior high/middle school, or high school/secondary school may include, but are not limited to, copies of: |
|---|---|

- **Accepted for Enrollment:** Evidence of acceptance for enrollment may include, but is not limited to:
  - An acceptance letter on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance letter is to include the name and address of the school, the requestor's grade level, and the date that the classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
  - A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability, would also be acceptable evidence of enrollment;
  - A copy of the current tuition bill;
  - A current class schedule containing the student's name, the list of courses, and the day and time of each class; or
  - Any other relevant evidence.

- **Already Attending Classes:** For DACA requestors already enrolled and attending classes, evidence may include, but is not limited to, current school registration cards, current transcripts, report cards, and progress reports. The document(s) presented are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level. A current IEP showing the student's progress to date would also be acceptable evidence that the DACA requestor has been accepted for enrollment and is attending classes.

A claim of homeschooling is not necessarily an indicator of fraud; however, because homeschool programs and their requirements vary widely from state to state, refer the case to CFDO for further research and evaluation. Even if the file contains documents including transcripts, a diploma or a certificate of completion as a result of homeschooling, the case must be referred to CFDO for further research and evaluation prior to final adjudication. CFDO referrals on "homeschooling" are only mandatory prior to adjudication if the homeschooling is the basis for meeting the education guideline; if not, then the case can be processed normally and is then referred to the CFDO after final adjudication for tracking purposes.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   62

Confidential

## C. Determining if Guidelines are Met, Continued

**Public or Private College or University, or Community College**

**Currently in School**
**Public or Private College or University, or Community College**
Evidence of enrollment in a public or private college or university or a community college may include, but is not limited to, copies of:

- **Accepted for Enrollment:** Evidence of acceptance for enrollment may include, but is not limited to:
  - o An acceptance package or other related material on school letterhead from the school's authorized representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance package or other related material is to include the name and address of the school, the requestor's grade level or class year, and the date or term when the classes are scheduled to commence, and is to be accompanied by evidence that the student has registered for class. In addition, the acceptance package or other related material is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
  - o A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, for a student with a disability, would also be acceptable evidence of enrollment;
  - o A copy of the student's current tuition bill;
  - o The student's current class schedule containing the list of courses, and the day and time of each class; or
  - o Any other relevant evidence.

- **Already Attending Classes:** For DACA requestors already enrolled and attending classes, evidence may include, but is not limited to, current school registration cards, current transcripts, report cards, and progress reports. The submitted document(s) are to show the name of the student, the name of the school, the time period or semester covered by the document, and the current grade level or class year. A current IEP showing the student's progress to date would also be acceptable evidence that the DACA requestor has been accepted for enrollment and is attending classes.

It is not necessary to RFE for a copy of the high school diploma or GED, unless there are articulable reasons to question the evidence of acceptance and enrollment or attendance in a public or private college or university, or community college.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 101**

Confidential

DEF - 00006912

## C. Determining if Guidelines are Met, Continued

**General Education Development (GED)**

### Currently in School
**GED**

If a DACA requestor claims that he/she is enrolled in a course of study to pass a GED exam or other equivalent State-authorized exam, the DACA request is to include a letter or other documentation from an authorized representative of the program, that includes information such as:

- The requestor's name and date of enrollment;
- The duration of the program and expected completion date;
- Whether the course of study is for a GED exam or other equivalent State-authorized exam;
- The program's source of public funding (Federal, State, county, or municipal), if any; and
- The program's authorized representative's contact information.

If the GED/Equivalency program is <u>not</u> publicly funded in whole or in part, documentation from the program should is also to provide information about the program's demonstrated effectiveness  Such information could include, but is not limited to, information relating to:

- The duration of the program's existence;
- The program's track record in assisting students in obtaining a GED, or a recognized equivalent certificate;
- Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
- Any other information indicating the program's overall quality.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 102**

Confidential

DEF - 00006913

## C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| Educational or Career Training Program (Including Vocational Training) | **Currently in School** |
| | **Educational or Career Training Program (Including Vocational Training)** |
| | The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in an educational or career training program (including vocational training) may include, but is not limited to: |

- **Accepted for Enrollment:** An acceptance letter on school letterhead from the school registrar/authorized school representative, if the requestor was accepted for enrollment, but the classes have not yet commenced. Such acceptance letter is to include the name and address of the program, a brief description of the program, the duration of the program, and state the date the classes are scheduled to commence, and is to be accompanied by evidence that the student has registered for the program. Evidence of the requestor's acceptance for enrollment may also include a copy of his/her current year registration (intake form/enrollment form), or any other relevant documentation. The DACA request is also to be supported by evidence of the school or program's public funding or its demonstrated effectiveness, as described below.

- **Already Attending Classes:**
  - Current attendance records, transcripts, report cards, test reports, progress reports showing the name of the school, the name of the requestor, the time period or semester covered by the document, and, if relevant, the current educational or grade level;
  - A letter from the school registrar/authorized school representative, with contact information, providing information related to the program's public funding or its demonstrated excellence.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 103**

Confidential

DEF - 00006914

## C. Determining if Guidelines are Met, Continued

**Educational or Career Training Program (Including Vocational Training)** (continued)

**Public Funding:** If the educational or career training program is publicly funded in whole, or in part, the above-referenced letter from the school registrar/authorized school representative is to provide basic details about the funding, such as the source(s) of the funding; or,

**Demonstrated Effectiveness:** If the educational or career training program is not publicly funded in whole, or in part, the school registrar/authorized school representative is to provide information about the program's demonstrated effectiveness, with supporting documentation, if available. Such information could include, but is not limited to: information relating to:

> ➢ The duration of the program's existence;
> ➢ The program's track record in placing students in employment, job training, or post-secondary education; Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
> ➢ Any other information indicating the program's overall quality.

**Literacy Training**

### Currently in School

The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in a literacy program is to include, but is not limited to:

- A letter from the literacy program administrator or authorized representative providing information such as:
  - o The requestor's name;
  - o The date of the requestor's enrollment;
  - o The duration of the literacy program and the expected completion date;
  - o The program administrator or authorized representative's contact information;
  - o Information about the literacy program's non-profit status, if applicable, and evidence of such status:
    - ▪ Evidence of the literacy program's non-profit status is to include a copy of a valid letter from the Internal Revenue Service confirming exemption from taxation under section 501(c)(3) of the Internal Revenue Service Code of 1986, as amended, or equivalent section of prior code; or
- If the literacy program is not administered by a non-profit organization, information related to the literacy program's source of public funding or its demonstrated effectiveness:

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 104**

Confidential

DEF - 00006915

# C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| **Literacy Training** (continued) | ○ **Public Funding:** If the literacy program is publicly funded in whole, or in part, the letter from the literacy program administrator or authorized representative is to provide basic details about the funding, such as the source(s) of the funding. ; or |
| | ○ **Demonstrated Effectiveness:** If the literacy program is not publicly funded in whole or in part, or not administered by a non-profit entity, the literacy program administrator or authorized representative is to provide information about the program's demonstrated effectiveness. Such information could include, but is not limited to: |

- The duration of the program's existence;
- The program's track record in placing students in employment, job training, or post-secondary education;
- Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or
- Any other information indicating the program's overall quality.

It should be noted that many literacy programs may not track statistics on placement rates following completion of the program. Therefore, the lack of such data, standing alone, does not diminish the literacy program's record. Evaluate all of the information and evidence provided in its totality for credibility and sufficiency.

A claim of enrollment in a literacy class run by a for-profit entity that does not receive any public funding is not necessarily an indicator of fraud; however, a vast number of literacy programs are offered for free or at a minimal cost. Therefore, if the literacy program is a **for-profit** entity and does not receive any public funds, refer the case to CFDO for further research and evaluation.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006916

# C. Determining if Guidelines are Met, Continued

| | |
|---|---|
| **English as a Second Language (ESL)** | **Currently in School**<br>**English as a Second Language (ESL)**<br>The documentary evidence submitted in support of the "currently in school" guideline based on enrollment in an ESL class is to include, but is not limited to:<br><br>• A letter from the ESL program administrator or authorized representative providing information such as:<br>   ○ The requestor's name;<br>   ○ The date of the requestor's enrollment;<br>   ○ The duration of the ESL program and the expected completion date;<br>   ○ The program administrator or authorized representative's contact information;<br>   ○ Information/documentation related to the ESL program's public funding or its demonstrated effectiveness:<br>     ▪ **Public Funding:** If the ESL program is publicly funded in whole, or in part, the letter from the ESL program administrator or authorized representative is also to provide specific details about the funding, such as the source(s) of the funding;<br>     ▪ **Non-Profit Status:** If the ESL program non-profit status, the ESL program administrator or authorized representative is to provide evidence that the ESL program has non-profit status; or<br>     ▪ **Demonstrated Effectiveness:** If the ESL program is not publicly funded in whole or in part, the ESL program administrator or authorized representative is to provide information about the program's demonstrated effectiveness. Such information could include, but is not limited to:<br>       ▪ The duration of the program's existence;<br>       ➢ The program's track record in placing students in post-secondary education, job training, or employment; Receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or<br>       ➢ Any other information indicating the program's overall quality.<br><br>It should be noted that many ESL programs may not track statistics on placement rates following completion of the program. Therefore, the lack of such data, standing alone, does not diminish the school's record. Evaluate all of the information and evidence provided in its totality for credibility and sufficiency. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013** 68

**App. 106**

Confidential

DEF - 00006917

## C. Determining if Guidelines are Met, Continued

**School Breaks and Medical Leave**

At the time of filing, it is possible that school may not be in session due to a holiday or a semester (or quarter or trimester) break. A break may occur during a course, for example spring break, or it may occur between semesters, for example summer break. If a DACA request is filed between semesters, the requestor is considered to be currently in school if he/she is enrolled for the next semester and submits evidence of such enrollment. Note that a requestor on temporary medical leave from school is considered to be currently in school. Evidence of the medical leave and the expected return date to school are to be provided.

**Graduated From School**

A DACA requestor can also meet the educational guideline if he/she has graduated from school. To meet the "graduated from school" component of the educational guideline, the DACA requestor may show that he/she has graduated or obtained a certificate of completion from a U.S. high school or has a recognized equivalent of a high school diploma under State law, public or private college or university or community college, or has obtained a GED certificate or other equivalent State-authorized exam in the United States. For the purpose of considering an initial DACA request, the phrase "graduated from school" does not include graduation from an education, literacy or career training program (including vocational training or an ESL course). Evidence of graduation may include verifiable copies of:

- A diploma;
- A recognized equivalent of high school diploma under State law;
- Transcripts showing the date of graduation;
- A GED Certificate
    - Documentation sufficient to demonstrate that the DACA requestor obtained a GED includes, but is not limited to, evidence the he/she passed a GED exam, or other comparable State-authorized exam, and, as a result, he/she received the recognized equivalent of a regular high school diploma under State law;
- A certificate of completion or certificate of attendance from a U.S. high school;

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

Confidential

DEF - 00006918

**Graduated
From
School**
*(continued)*

- An alternate award from a public or private high school or secondary school.

A claim of homeschooling is not necessarily an indicator of fraud; however, because homeschool programs and their requirements vary widely from state to state, refer the case to CFDO for further research and evaluation. Even if the file contains documents including transcripts, a diploma or a certificate of completion as a result of homeschooling, the case must be referred to CFDO for further research and evaluation prior to final adjudication. CFDO referrals on "homeschooling" are only mandatory prior to adjudication if the homeschooling is the basis for meeting the education guideline; if not, then the case can be processed normally and is then referred to the CFDO after final adjudication for tracking purposes.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 108**

Confidential                                    DEF - 00006919

**Military Service**    The Secretary's memorandum states that, in lieu of being currently in school, or having graduated from school (including a GED), the requestor may be an honorably discharged veteran of the U.S. Coast Guard or U.S. Armed Forces. This may include reservists who were honorably discharged.

Examples of acceptable evidence include, but is not limited to the following:
- Form DD-214, Certificate of Release or Discharge from Active Duty;
- NGB Form 22, National Guard Report of Separation and Record of Service;
- Military personnel records;
- Military health records; or
- Any other relevant document.

If the requestor indicated in question 24 of Part 1 that he/she was a member of the U. S. Armed Forces or Coast Guard, but did not submit evidence of an honorable discharge and does not otherwise meet the educational guidelines, issue RFE DACA 107 call up from Appendix D.

The Form DD-214 and NGB Form 22 both contain a section, "Character of Service" listing the type of discharge a service member obtained. The main types of discharges include the following:

    (1) Honorable;
    (2) General (Under Honorable Conditions);
    (3) Under Other Than Honorable Conditions;
    (4) Bad Conduct;
    (5) Dishonorable; or
    (6) Uncharacterized.

For purposes of DACA, if Character of Service is Honorable or General (Under Honorable Conditions) the requestor has satisfied the military service guideline.

<u>Currently</u> serving in the U.S. Coast Guard or U.S. Armed Forces does not qualify.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 109**

Confidential                                    DEF - 00006920

# D. Economic Necessity

**Reviewing Economic Necessity**

An EAD based on a grant of deferred action requires a showing of economic necessity. To facilitate this economic necessity review, a separate worksheet was created, Form I-765WS. To streamline adjudication of the DACA request and the I-765, officers will review the I-765WS during the adjudication of Form I-821D. During file set-up, the I-765WS will be put in ROP order immediately behind the Form I-821D.

If Form I-765WS is completely blank or is missing, issue an RFE on the I-765 (not the Form I-821D) using DACA 180 call up from Appendix D, but only if the requestor does not include evidence that a fee exemption was granted. The fee exemption will be indicated in C3 as "Fee Waiver Granted." If an officer issues an RFE on the I-765, he/she should proceed with adjudication of the I-821D. When the response to the I-765 RFE is received and the I-765 is approved, the expiration date of the EAD should not exceed the end date of the deferred removal under DACA.

If the requestor does not respond to the I-765 RFE, the I-765 should be denied for abandonment; however, the Form I-821D can be approved for DACA if the guidelines have been met. When denying the Form I-765 for abandonment, officers should use the DACA Form I-765 Abandonment Denial template.

If the requestor's response to the I-765 RFE does not include the Form I-765WS, a completed I-765WS, or the signature on the I-765, officers should use the DACA Form I-765 Denial Based on the Record template.

If/when Form I-765WS has been completed, review the information provided regarding current income, assets, and expenses to determine whether economic necessity has been established. The requestor may, but need not, include supporting documents with Form I-765WS.

There is a general presumption that DACA requestors will need to work given their undocumented circumstances and the fact that they are not generally anticipated to have independent means. Absent evidence of sufficient independent financial resources, the Form I-765WS is sufficient to establish economic need, without any further economic analysis.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 110**

# E. Removal Proceedings

**Removal Proceedings**

Individuals in removal proceedings may file a DACA request, even if they are under age 15, as long as they were born after June 15, 1981. As explained more fully below, removal proceedings commence with the filing of Form I-862, Notice to Appear, with the Immigration Court and terminate in one of several ways. See 8 C.F.R. §245.1(c)(8)

If a DACA requestor has been or is currently in deportation, exclusion, or removal proceedings, he/she may have another A-file, which should have been discovered by the officer during the initial review of the I-821D and/or Record of Arrest and Prosecution (RAP) sheet (if any). Please see the "A-File" section.

There are several ways to determine if the DACA requestor:
- Was or is in proceedings;
- What the outcome of the proceeding was; and
- If he/she was previously removed.



**LE**

See the charts below for an overview of the electronic systems to check.

**LE**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 111**

Confidential

DEF - 00006922

## Removal Proceedings, Continued

**Removal Proceedings** (continued)



**Effects of Deportation or Removal Proceedings**

The existence of deportation, exclusion, or removal proceedings may have an effect on the exercise of prosecutorial discretion for DACA. If the DACA requestor is in proceedings, the A-file is likely with the ICE office. Before a DACA request may be adjudicated by the Center, the Center should make every attempt to obtain all A-File(s).

**Determining Whether an Individual is in Removal Proceedings**

Deportation, exclusion, and removal proceedings begin with the filing of the charging document with the Immigration Court. Currently, the charging document used is Form I-862, Notice to Appear. Over the years, proceedings commenced in other ways, including:

1. With the issuance of Form I-221, Order to Show Cause and Notice of Hearing, prior to June 20, 1991;
2. With the filing of Form I-221, Order to Show Cause and Notice of Hearing, issued on or after June 20, 1991, with the immigration court;
3. With the issuance of Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, prior to April 1, 1997; and
4. With the issuance and service of Form I-860, Notice and Order of Expedited Removal.

It is possible for an individual to have voluntary departure and be in removal proceedings. See Voluntary Departure section below for more information.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 112**

Confidential                    DEF - 00006923

# E. Removal Proceedings, Continued

**Determining Removal Proceedings have been Terminated**

Deportation, exclusion, or removal proceedings terminate when one of the following occurs:

1. The individual leaves the United States under an outstanding order of deportation, exclusion, or removal;
2. The individual is found not to be inadmissible or deportable from the United States;
3. The individual leaves the United States before the expiration of his/her voluntary departure, which was granted in connection with an alternate order of deportation or removal;
4. The charging document is canceled (Form I-122, I-221, I-860, or I-862);
5. The immigration judge or the Board of Immigration Appeals terminates the proceedings; or
6. A Federal court grants a petition for review or an action for habeas corpus.

See 8 C.F.R. §245.1(c)(8)

**Voluntary Departure**

An individual with voluntary departure may or may not be in removal proceedings. Voluntary departure may be issued before the commencement of proceedings, during proceedings, or at the conclusion of proceedings. When voluntary departure is issued during or at the conclusion of proceedings, it is normally issued as an alternate order of voluntary departure/removal or deportation. An alternate order of voluntary departure converts automatically to an order of removal/deportation when the individual does not leave the United States voluntarily by the specified date.

**Administratively Closed**

Administratively closed proceedings means that proceedings have commenced, but the parties subsequently agreed to remove the matter from the immigration court's docket. Administratively closed does not mean terminated, and thus the individual remains in proceedings. Either party may file a motion to place the case on the court's active docket at any time.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 113**

Confidential

DEF - 00006924

## E. Removal Proceedings, Continued

Use the chart below to assist in determining if a DACA requestor is in removal proceedings:



**Note:** The guideline that the individual is under age 31 on June 15, 2012 applies to all DACA requestors regardless of whether they are in deportation, exclusion, or removal proceedings. If the individual was age 31 or older on June 15, 2012, issue a NOID.

| | |
|---|---|
| **Individuals With Final Removal Orders (FRO)** | An individual with an unexecuted final removal order is still in removal proceedings. See 8 C.F.R. § 245.1(c)(8). Although the final removal order may have been issued before, on, or after June 15, 2012, the volume of individuals that could be considered for DACA with a post-June 15th final removal order should be small, because ICE began applying the DACA guidelines upon publication of the Secretary's memorandum. Final removal orders issued after June 15, 2012 should be reviewed carefully to examine the underlying grounds for removal.

If the requestor is the subject of an FRO, then determine the requestor's age on June 15, 2012. Review the answer provided to question #9 in Part 1 of Form I-821D and review the requestor's birth certificate or other acceptable secondary evidence submitted to show the date of birth. If the evidence submitted does not show that the requestor satisfies the upper age limit, issue RFE DACA 140 call up from Appendix D. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 76

**App. 114**

Confidential                                    DEF - 00006925

# E. Removal Proceedings, Continued

**Subject to the Reinstatement of a Prior Removal Order**

When an individual reenters the United States illegally after having been removed or after leaving voluntarily under an order of removal, the individual is subject to reinstatement of the prior removal order from its original date. See INA § 241 (a)(5).

An individual who is subject to reinstatement of their prior removal order under the provisions of § 241 (a)(5) of the Act may file a DACA request; however, the removal **and** the illegal reentry must have occurred before June 15, 2007. This is because a DACA requestor must have resided continuously in the United States for at least five years before June 15, 2012, the date of Secretary's memorandum. Additionally, a removal is not deemed to be a brief, casual, and innocent departure and, therefore, it interrupts the period of continuous residence.

**Underlying Removal Ground Adversely Impacts Prosecutorial Discretion**

If the DACA requestor indicates in Question #3.a. in Part 1 of Form I-821D that he/she has been in removal proceedings, and/or routine systems, background, and fingerprint checks indicate that the requestor is in removal proceedings, proceed as follows:
- Review the underlying removal charges; and
- Review the derogatory information obtained through routine checks.

Do not rely solely on the grounds listed in the charging document and/or EARM, as not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.

**Underlying Removal Ground Does Not Adversely Impact Prosecutorial Discretion**

If a DACA requestor has been placed in proceedings on a ground that does not adversely impact the exercise of prosecutorial discretion, review the results of all routine systems, background, and fingerprint checks. If those routine checks did not reveal any additional derogatory information that impacts the exercise of prosecutorial discretion, the case may proceed for adjudication.

Do not rely solely on the grounds listed in the charging document and/or EARM, as not all issues may have necessarily been captured, or new issues may have arisen since the charging document was issued. It is necessary to review all derogatory information in its totality and then make an informed assessment regarding the appropriate exercise of prosecutorial discretion for DACA.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 115**

Confidential

DEF - 00006926

## E. Removal Proceedings, Continued

**Removal During Continuous Residence Period**

A departure from the United States pursuant to an order of deportation, exclusion, or removal that occurred during the required continuous residence period is not "brief, casual, and innocent." Therefore any absence caused by such a departure meaningfully interrupts such continuous residence. This also includes a departure made "voluntarily," for example, the individual leaves the United States on his/her own volition while under an order of deportation, exclusion, or removal.

In these instances, issue a NOID.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

# F. Fingerprints and RAP Sheets

**Fingerprint Requirements**

Fingerprints (ten print) are required for every DACA requestor 14 years of age and older to determine if they have a criminal history. Submissions of prior fingerprint results will not be accepted.

**FBI Fingerprint Response**

At the time of adjudication, the file should contain a [____ LE ____]



A definitive response from the FBI regarding fingerprint clearances is required before any DACA request for an individual 14 years of age and older may be approved.

Fingerprint results for the requestor obtained as a result of a previous filing with USCIS within the last 15 months are not valid for DACA purposes. Each DACA requestor must obtain a new fingerprint check upon the filing of a DACA request. Officers should utilize FD-258 to verify that the fingerprint check was completed for the DACA request.

**Performing an FBI Query**

The fingerprint clearance should be complete before the case is sent for adjudication. If there is no fingerprint result printout in the file, officers must perform a query of FBI Fingerprint Tracking in CLAIMS Mainframe and also check SNAP to see if the requestor has been scheduled for an appointment at an ASC.

**LE**

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   79

**App. 117**

Confidential

DEF - 00006928

## F. Fingerprints and RAP Sheets, Continued

**Introduction**     There are four possible results of a fingerprint query:



This section instructs officers on how to proceed based on the fingerprint results.



*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 118**

Confidential                                    DEF - 00006929

## F. Fingerprints and RAP Sheets, Continued

**LE**

| | |
|---|---|
| **A-numbers Found on the RAP Sheet** | If any other A-numbers are found on the RAP sheet, the files must be requested, reviewed, and consolidated prior to any final action. |

**Updated RAP Sheets**  Although biometrics will not be cloned from other filings, if the requestor has a criminal history **LE** the file, request updated **LE** sheets through the **LE** **LE**

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 119**

Confidential                                                    DEF - 00006930

# G. Evaluating Issues of Criminality, Public Safety, and National Security

**Issues of Criminality**

The Secretary's memorandum provides as one of the guidelines that should be met before an individual is considered for DACA that the individual not have been convicted of a felony offense, a significant misdemeanor offense, three or more non-significant misdemeanor offenses, or otherwise pose a threat to national security or public safety. If the evidence establishes that an individual has a conviction for one of the above or may be a national security or public safety threat, USCIS will deny the request for deferred action, unless exceptional circumstances are found. The requestor must specifically ask to be evaluated under this exception and must fully document the exceptional circumstances.

The decision whether to defer action in a particular case is individualized and discretionary, taking into account the nature and severity of the underlying criminal, national security, or public safety concerns. By their very nature, felonies, significant misdemeanors, a history of other misdemeanors, and activities compromising national security and public safety are particularly serious and carry considerable weight in the totality of the circumstances analysis. As a result, it would take a truly exceptional circumstance to overcome the underlying criminal, national security, and public safety grounds that would otherwise result in not considering an individual for DACA, which would be rare. Deferring removal under DACA shall not be considered under this very limited exception without concurrence from HQSCOPS. The Service Center Director must have appropriate visibility before sending the case with exceptional circumstances to HQSCOPS. The Center must copy the Service Center Director on the email when sending it to HQSCOPS for review.

**Felony**

A felony is a federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   82

**App. 120**

Confidential                                                                DEF - 00006931

## G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued

| Misdemeanors | **Significant Misdemeanor:** |
|---|---|
| | For DACA only, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria: |

For DACA only, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,
2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days.

The sentence must involve time to be served in custody, and therefore does not include a suspended sentence. The time to be served in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). Notwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence or presence of a criminal history, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion. DHS retains the discretion to determine that an individual does not warrant deferred action on the basis of a single criminal offense for which the individual was sentenced to time in custody of 90 days or less.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   83

**App. 121**

Confidential                                                     DEF - 00006932

**Misdemeanors**
(continued)

**Non-Significant Misdemeanor:**

For DACA only, a non-significant misdemeanor is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and
2. Is one for which the individual was sentenced to time in custody of 90 days or less.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by ICE. Notwithstanding whether the offense is categorized as a significant or non-significant misdemeanor, the decision whether to defer action in a particular case is an individualized, discretionary one that is made taking into account the totality of the circumstances. Therefore, the absence of the criminal history outlined above, or its presence, is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion.

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**Version August 28, 2013**    84

# G. Evaluating Issues of Criminality, Public Safety, and National Security, Continued

**Misdemeanors**
(continued)

> ### Multiple Misdemeanors:
>
> Absent exceptional circumstances, a person is not eligible for consideration of DACA if he/she has been convicted of three or more non-significant misdemeanors that did not occur on the same day and did not arise out of the same act, omission, or scheme of misconduct.
>
> When evaluating a request for consideration for deferred action for childhood arrivals, a minor traffic offense, such as driving without a license, will not be considered a misdemeanor that counts towards the "three or more non-significant misdemeanors." However, the requestor's entire offense history can be considered along with other facts to determine whether, under the totality of the circumstances, he/she warrants an exercise of prosecutorial discretion.

**State Law Immigration Offenses**

Immigration-related offenses characterized as felonies or misdemeanors by state immigration laws will not be treated as disqualifying felonies or misdemeanors for the purpose of considering a request for consideration of deferred action pursuant to this process.

**Foreign Convictions**

When evaluating a request for consideration of deferred action for childhood arrival, a foreign conviction, standing alone, will generally not be treated as a disqualifying felony or misdemeanor. Such convictions, however, may be considered when addressing whether the person poses a threat to public safety and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted. Cases involving foreign convictions should be elevated for supervisory review.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                    DEF - 00006934

# Court Dispositions

**Requesting Certified Court Dispositions**

Using RFE DACA 151 call up from Appendix D, request a certified court disposition a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure if prohibited under state law.

If the requestor is unable to provide such records because the case was expunged or sealed, RFE DACA 151 informs the requestor that he or she must provide information about his or her arrest and evidence demonstrating that such records are unavailable under the law of the particular jurisdiction. It is not necessary for the officer to issue an RFE if he/she is able to readily obtain the dispositions on line.

**Free Online Court Dispositions**

There are many online sites that can be searched and the disposition printed for a file copy. These sites are open to the public; therefore, USCIS can gain the final disposition without doing an RFE or ITD if all the charges in question are found, or if enough evidence can be gathered to deny without the remaining charges.

The AAO has upheld prior decisions made using these court dispositions, even though these dispositions are not "certified" by the court, since the information is made available to the public.

**Reading Court Dispositions**

Court dispositions take as many different forms as there are courts in the United States. There is no way to give specific instructions on how to read such dispositions. Usually the state criminal statutes cite is used to indicate which charge the applicant was actually convicted of. Adjudicators should consult with their supervisor if they have any questions about how to read a court disposition.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 124**

Confidential                                    DEF - 00006935

| **Convictions** | Pursuant to INA § 101(a)(48)(A), a conviction is a formal judgment of guilt entered by a court or, if adjudication of guilt has been withheld, where:
1) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; and
2) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Nolo contendere means the individual is unwilling to contend. This subjects the individual to some form of punishment, penalty, or restraint as if he/she was found guilty.

An adjudication of juvenile delinquency is not a conviction. |

| **Formal Adjudication of Guilt Withheld** | Court orders in criminal proceedings sometimes include, as part of the disposition, terms such as: Continued without a finding (CWOF); adjudication withheld; deferred adjudication, etc. Different jurisdictions use different terminology.

Where there is no formal adjudication of guilt, officers must determine whether:

1. A judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; AND

2. the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty, such as jail, a fine, parole, probation, community service, etc.

The officer must dissect the law, the statute, court order, and conviction, and put all the pieces together to determine whether these requirements for a conviction are met in the absence of a formal adjudication of guilt. |

| **Imposition of Costs as Punishment** | Imposition of costs (such as fines, court costs, etc.) in a criminal case constitutes a form of punishment, and therefore satisfies the second prong of the conviction definition. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**App. 125**

Confidential

DEF - 00006936

# Court Dispositions, Continued

| | |
|---|---|
| **Deferred Prosecution** | Deferred prosecution or pretrial diversion programs that do not require the defendant to plead guilty or nolo contendere or require the court to make any finding of guilt do not constitute a conviction for immigration purposes. |
| **Dismissals, Dropped, Set Aside** | In many cases, the charges may be dropped or set aside in exchange for the DACA requestor agreeing to attend various self-help courses and programs, or if the person who filed the complaint against him/her fails to appear or chooses to drop the case.<br><br>These are not considered convictions for immigration purposes. |
| **Nolle Prosequi** | A decision of "nolle prosequi" is a Latin legal term for "declined to prosecute".<br><br>This is not considered a conviction for immigration purposes. |
| **Convictions on Appeal** | A conviction is effective for immigration purposes, including DACA, while it is on direct appeal.  See Plane v. Holder, 652 F.3d 991 (9th Cir. 2011), rehearing en banc denied, 2012 WL 1994862 (2012).  If the conviction is ultimately reversed on appeal, the DACA requestor is free to file a new request for DACA if otherwise eligible. |
| **Expunged or Vacated Convictions** | For DACA purposes only, expunged convictions will not be treated as disqualifying felonies or misdemeanors.  Expunged convictions, however, will be assessed on a case-by-case basis to determine whether the person poses a threat to public safety and whether, under the particular circumstances, the exercise of prosecutorial discretion is warranted. Cases involving expunged convictions should be elevated for supervisory review.<br><br>Sealed and expunged records will be evaluated according to the nature and severity of the criminal offense. |
| **STET** | The entry of "STET" in a criminal case simply means that the state (Maryland and West Virginia) will NOT proceed against an accused on that indictment at that time.  As long as the STET order is still in place and the individual is in compliance, the STET is not a conviction for immigration purposes.<br><br>NOTE:  Carefully review the file for J&Cs, orders, etc., to determine if a subsequent decision on the offense has been made. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY.  It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**App. 126**

Confidential

DEF - 00006937

# Arrests and Convictions

**Criminal Arrests**

When a DACA requestor's RAP sheet indicates an arrest, it is necessary to determine whether the DACA requestor has been convicted of the crime.

The only way to know if the DACA requestor has been convicted of the charge for which he/she was arrested is to obtain the certified court disposition. Occasionally the disposition of the arrest is shown on the RAP sheet. **However, in all cases, the officer must review the court disposition. This may be done by obtaining the disposition online or by issuing an RFE.**

**Juvenile Delinquency**

Juvenile delinquency will not automatically disqualify a DACA requestor. Such criminal history will be evaluated on a case-by-case basis to determine whether, under the particular circumstances, discretion is warranted to defer removal under DACA.

If a requestor was a juvenile, but tried and convicted as an adult he/she will be treated as an adult for purposes of the DACA process. Individuals must provide a certified court disposition, arrest record, charging document, sentencing record, etc. for each arrest, unless disclosure is prohibited under state law.

Sealed and expunged records will be evaluated according to the nature and severity of the criminal offense.

**Pardons**

A full and unconditional pardon by the President of the United States or by the Governor of a U.S. State eliminates a conviction for purposes of DACA.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES):
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

# Public Safety Concerns

**Evaluating Public Safety Concerns**

The scope of criminal offenses deemed to be EPS are described in the November 7, 2011, NTA memorandum and the accompanying MOA between USCIS and ICE.

A DACA requestor's criminal record may give rise to significant public safety concerns even where there is not a disposition of conviction. Therefore, when the disposition is pending, it is not necessary to hold the case. For example, an individual with multiple DUI arrests, but no convictions, could pose a significant public safety concern. Similarly, an individual arrested for multiple assaults or other violent crimes could be deemed a public safety risk even if he/she was never convicted for those crimes. Arrests and/or convictions that took place outside of the United States are also significant unfavorable factors in evaluating public safety concerns, under the totality of the circumstances.

# National Security Concerns

**Evaluating National Security Concerns**

A case posing national security concerns is handled through the CARRP process according to existing protocols.

# DACA Requestors in Immigration Detention

**DACA Requestors in Immigration Detention at the Time of Filing Form I-821D**

USCIS lacks the authority to consider requests from individuals who are in immigration detention under the custody of ICE at the time of filing Form I-821D and remain in immigration detention as of the date Form I-821D is adjudicated. If upon receipt of Form I-821D, a review of DHS electronic systems or information received from ICE identifies the requestor as detained, the Center should follow the below procedures.

The BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days.

1. If ICE indicates that it does not intend to physically release the requestor within 30 days, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   90

Confidential

you remain in immigration detention as of the date of this notice."
USCIS will notify ICE once the denial notice is issued.

2. If ICE indicates that the requestor is an ICE enforcement priority but ICE intends on physically releasing the requestor, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "…exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities." USCIS will notify ICE once the denial notice is issued

3. If ICE indicates that the case is not an ICE enforcement priority and ICE intends to physically release the requestor, the case will be adjudicated on its merits. **A review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.**

If the BCU disagrees with ICE's determination of whether or not the requestor is an enforcement priority, the BCU should ask local counsel for assistance in contacting local ICE counsel to discuss the reasons why USCIS disagrees with ICE's determination. The Service Center's local counsel can seek assistance from USCIS Headquarters' Office of the Chief Counsel to contact ICE, if necessary.

| | |
|---|---|
| **DACA Requestors in Immigration Detention after Filing Form I-821D** | If DHS electronic systems or information received from ICE identifies the requestor as having been placed in immigration detention after filing his/her Form I-821D, the Center should follow the below procedures.

The BCU will contact local ICE operations having jurisdiction over the requestor to determine if the requestor is an ICE enforcement priority or if ICE intends on administratively closing the proceedings and/or physically releasing the requestor within 30 days. |

1. If ICE indicates that the requestor is an ICE enforcement priority but ICE intends on physically releasing the requestor, USCIS will deny the DACA request using the checkbox within Appendix F (Denial Template) that states "…exercising prosecutorial discretion in your case would not be consistent with the Department of Homeland Security's enforcement priorities." USCIS will notify ICE once the denial notice is issued

2. If ICE indicates that the case is not an ICE enforcement priority and ICE intends to physically release the requestor, the case will be adjudicated on its merits. A review of DHS electronic systems must be performed to ensure the requestor is physically released before the case is adjudicated on its merits.

If the BCU disagrees with ICE's determination of whether or not the requestor is an enforcement priority, the BCU should ask local counsel for assistance in contacting local ICE counsel to discuss the reasons why USCIS disagrees

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential                                                   DEF - 00006940

with ICE's determination. The Service Center's local counsel can seek assistance from USCIS Headquarters' Office of the Chief Counsel to contact ICE, if necessary.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**App. 130**

                                                                          DEF - 00006941

# Handling Procedures

**General**     The evaluation of criminal issues with respect to a DACA request is done after BCU vetting of the TECS check and the FD 258 fingerprint results from the FBI. If the up-front TECS check reveals a hit, the DACA request goes to BCU/Triage. If the hit relates, BCU triage routes the DACA request to the BCU. BCU documents the TECS hit and the resolution in the ROIQ. While the DACA request is undergoing the up-front TECS check, the DACA requestor is placed in the scheduling queue for an ASC appointment to have his/her biometrics captured. If the FD 258 fingerprint results return an   **LE**  , the BCU reviews the results to determine whether they are germane to the DACA request and the exercise of prosecutorial discretion. The officer may issue an RFE at any point along the way, if necessary to establish whether the issues of criminality relate to a misdemeanor, a significant misdemeanor, a felony, or whether the criminal issues pose a public safety threat. When a DACA request is denied, the denial shall be issued using the standard denial template, which provides a list of checkboxes. The standard denial template is found at Appendix F. Select the box or boxes that apply. For guidance on when to seek supervisory review of a denial involving issues of criminality, see Chapter 9, Section D.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**App. 131**

Confidential                                                   DEF - 00006942

| | |
|---|---|
| **Social Security Number** | If there is evidence that the requestor, in order to gain employment for himself or herself, used someone else's social security number with knowledge that the social security number belonged to someone else and without that person's consent, the requestor should receive a Notice of Intent to Deny. **Unless a complete file review demonstrates that all of the 4 points below have been met, the ISO shall adjudicate the DACA request based upon the merits of the case.**<br><br>**What this means:** Service Centers should not consider evidence of a social security number (SSN) within a DACA filing as derogatory information unless such evidence within the file meets all the elements listed below.<br><br>The requestor should receive a Notice of Intent to Deny (NOID), if upon review of the A-file there is evidence contained within the file that demonstrates all of the following:<br>• The requestor used a SSN that did not belong to the requestor, and<br>• The requestor used the SSN in order to gain employment, and<br>• The requestor knew the SSN belonged to someone else (as opposed to thinking it was a fake SSN), and<br>• The requestor did not have the person's consent to use the SSN.<br><br>Evidence in the file to support issuing such a NOID includes:<br>• An admission by the requestor as to all four points above and/or<br>• A statement from the SSN holder that s/he did not consent to the requestor's use of his/her SSN.<br><br>DACA filings that contain BCU or FDNS findings:<br>• In light of this guidance, if a statement of findings (SOF) is not supported or confirmed by evidence submitted by the requestor, the case will be adjudicated on its merits.<br><br>ISOs may rely on the evidence contained in the A-file at the time of adjudication to determine whether the requestor used a SSN in the manner noted above. ISOs should consult with their supervisors if they believe additional information or research is needed prior to adjudication. If the requestor's response to the NOID does not rebut the evidence contained therein, a final denial should be issued. |
| **Categorization** | If the BCU determines that the case presents issues of criminality, processing of the DACA request must be categorized as either EPS or non-EPS, as defined in the November 7, 2011 NTA memorandum. |

**FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)**
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013** 94

**Non-EPS Cases**

A DACA request posing issues of criminality that are based on **LE** non-EPS, as per the NTA policy memorandum, is handled by the BCU DACA Team as follows:

- The BCU DACA Team will adjudicate Form I-821D, taking into account all issues of criminality.
- If the case is approvable, the BCU DACA Team will approve the I-821D for DACA and adjudicate the I-765 for employment authorization.
- If an approval is not warranted, a denial for Form I-821D and Form I-765 will be issued, pending supervisory review.
- After the decisions have been rendered on Forms I-821D and I-765, the A-file shall be routed to the NRC.

In non-EPS cases where the requestor has been arrested for a potentially disqualifying criminal offense, but the court disposition is currently unavailable because the criminal proceedings are pending, the BCU DACA Team will issue RFE DACA 151 call up from Appendix D. The BCU DACA Team will withhold adjudication until the requestor submits the court disposition or receives SCOPS authorization to deny the case absent the court disposition. The BCU DACA Team will initially provide 87 days for the requestor to respond, but may issue a second RFE DACA 151 call up if the requestor fails to provide the final court disposition within 87 days because the criminal proceedings have not concluded.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 133**

Confidential                DEF - 00006944

## Handling Procedures, Continued

**EPS Cases**    A DACA request presenting issues of criminality that are deemed to be EPS, as per the NTA policy memorandum, is handled by the BCU DACA Team. The BCU DACA Team shall refer the case to ICE prior to adjudicating the case, even if USCIS can deny the DACA request on its merits. The BCU DACA Team will refer the DACA request to ICE using the RTI process. The BCU DACA Team will suspend adjudication of the DACA request for 60 days, or until ICE provides notification of its action on the case, whichever is earlier.

- **ICE Takes No Action or Does Not Respond:** If ICE does not accept the referral request or otherwise provide any notification of its action within 60 days of the RTI:
  - The BCU DACA Team will adjudicate Form I-821D, taking into account all issues of criminality, and in particular, the issues presenting an EPS concern.
  - If the disposition of the criminal charges against the DACA requestor is **pending**, the BCU DACA Team will deny the DACA request on public safety grounds, because the underlying issues of criminality are deemed to pose an EPS concern, pursuant to the November 7, 2011 NTA memorandum. The BCU DACA Team will also deny Form I-765, requesting employment authorization.
  - If the disposition of the criminal charges against the DACA requestor are **final**, the BCU DACA Team will deny Form I-821D based on the issues of criminality and the conviction. The BCU DACA Team will also deny Form I-765, requesting employment authorization.
  - Upon denial, the BCU DACA Team shall refer the DACA request to ERO, in accordance with the agreed upon method, and update FDNS-DS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

25 of 264

# Handling Procedures, Continued

**EPS Cases**
(continued)

- **ICE Accepts the Referral:** If ICE accepts the case, the BCU DACA Team will follow the standard protocols outlined in the November 7, 2011 NTA memorandum.

**Note:** Requests involving issues of criminality that normally would not meet the guidelines for consideration of deferred action will be denied, unless the requestor is claiming that consideration is warranted due to exceptional circumstances and fully documents such claim. Removal shall not be deferred under DACA pursuant to this very limited exception without concurrence from HQSCOPS. In these instances the case shall come to HQSCOPS from the Service Center Director, through the appropriate chain of command.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006946

# H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information

**Introduction**

When adjudicating Part 3 of Form I-821D, it is necessary to ensure that clear information and evidence are present to make a final determination. Refer to Chapter 6 for Background and Security Checks and Chapter 8, Section H, for evaluating and handling criminality, public safety, and national security issues.

**Questions 1 and 2: Arrested for, charged with, or convicted of a felony or misdemeanor, or significant misdemeanor in the United States (includes drug offenses and driving under the influence of drugs or alcohol)**

**OR**

**arrested for, charged with, or convicted of a crime in any country other than the United States**

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), **LE** **LE** etc., | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s) **LE** **LE** etc., | The derogatory information clearly shows that the requestor does not meet the DACA guidelines, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File(s), **LE** **LE** etc., | The derogatory information is unclear, | |
| There is derogatory information in the A-File(s) **LE** **LE** etc., | There are clear charges or clear derogatory information, but no clear judgment or conviction, | |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear, and the requestor did not provide any additional information or documentation, | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**Version August 28, 2013**    98

**App. 136**

# H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information, Continued

**Questions 3 and 5: Security and Related Issues – Engaging in Terrorist Activities; or Engaging in Ordering, Inciting, Assisting, or Otherwise Participating in Genocide, Human Trafficking, and Other Violent Crimes Involving the persecution of Others**

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), LE, LE etc., | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s), LE, LE etc., | The derogatory information clearly shows that the requestor did or may have engaged in terrorist activities or human rights violations, | Put the case through the CARRP process per standard protocols. |
| There is derogatory information in the A-File(s), LE, LE etc., | The derogatory information is unclear, | **LE** |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Put the case through the CARRP process per standard protocols. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential    DEF - 00006948

# H. Adjudicating Form I-821D, Part 3, Criminal, National Security, and Public Safety Information, Continued

**Question 4:**
**Current and**
**Past Gang**
**Membership**

**If the requestor answers "No":**

| If... | And... | Then... |
|---|---|---|
| There is no derogatory information in the A-File(s), IDENT, TECS, EARM, etc., | | Case stays in regular workflow. Continue to adjudicate. |
| There is derogatory information in the A-File(s), LE LE etc., | The derogatory information clearly shows that the requestor is or may be a gang member, | Case is handled by the BCU DACA Team. |
| There is derogatory information in the A-File(s), LE LE etc., | The derogatory information is unclear, | |

**If the requestor answers "Yes":**

| If... | Then... |
|---|---|
| There is clear derogatory information provided by the requestor and/or in our records, | Case is handled by the BCU DACA Team. |
| No derogatory information can be found in our records or it is unclear and the requestor did not provide information, | |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

# I. Fraud Review and Fraud Referrals

**Immigration Fraud**

In the normal course of adjudication, officers should be aware of fraud indicators. Fraud related concerns that arise during the course of background and security checks should be addressed according to the March 2011 Fraud Detection SOP and the 2008 ICE/USCIS Investigation of Immigration Benefit Fraud MOA.

Fraud encompasses any material representation or omission, accompanied by an intent to deceive. Establishing the elements of fraud is at the core of the work performed during a fraud investigation. In the immigration context, fraud is a willful misrepresentation of a material fact. An omission of a material fact can also constitute a willful misrepresentation, rising to the level of fraud. When reviewing an immigration request, a finding of fraud is generally supported by the presence of the following three elements.

- There must have been a **misrepresentation** or concealment of a fact;
- The misrepresentation or concealment must have been **willful**; and
- The fact must be **material**. See Kungys v. U.S., 485 U.S. 759 (1988) which indicates that a fact is considered material if it had a tendency to influence the decision for the application or petition or shut off a relevant line of inquiry.

A finding of fraud is also supported when the immigration filing contains fraudulent documents that are germane.

The Fraud Detection and National Security (FDNS) Directorate administratively investigates allegations of immigration benefit fraud and produces a Statement of Findings (SOF) that adjudicators use to render their decisions. Most fraud investigations are conducted under the authority of § 212(a)(6)(C)(i) of the Act. In the DACA context, the SOF will document all fraud findings and underlying issues impacting the favorable exercise of prosecutorial discretion.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**App. 139**

Confidential      DEF - 00006950

# I. Fraud Review and Fraud Referrals, Continued

**Immigration Fraud** (continued)

Individuals requesting DACA are not subject to the 212 inadmissibility grounds, because they are neither applying for a visa nor seeking admission to the United States. They are, instead, seeking the administrative exercise of prosecutorial discretion. Nevertheless, the presence of confirmed or suspected fraud issues are germane in deciding whether the DACA requestor merits the exercise of prosecutorial discretion. As a result, when an individual is found to have committed fraud in connection with a DACA request, the DACA request is denied not because the individual is inadmissible due to fraud, but rather, because the fraud negates the exercise of prosecutorial discretion to defer removal. Denials based on confirmed fraud findings will be supported by a properly documented SOF generated by CFDO. FDNS-DS must be updated to show that the DACA request was actually denied for confirmed fraud. The officer must provide information on the final outcome of a DACA request (e.g., approved, denied, NTA) to the BCU/CFDO so they may update FDNS-DS, accordingly.

When adjudicating Forms I-821D and I-765 for DACA, officers will complete a fraud referral sheet when there are articulable elements of fraud found within the filing. When articulable fraud indicators exist, the officer should refer the filing with a fraud referral sheet prior to taking any adjudication action even if there are other issues which negate the exercise of prosecutorial discretion to defer removal.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 140**

Confidential                DEF - 00006951

# I. Fraud Review and Fraud Referrals, Continued

**Immigration Fraud** (continued)



If the CFDO is to resolve the articulated fraud after exhausting all reasonable efforts and resources, the CFDO may refer the cases to appropriate field office for interview, if an interview may resolve outstanding concerns.

The findings of the administrative or criminal investigation will be recorded in FDNS-DS and reported in an SOF and placed in the A-file to enable officers to make accurate and informed decisions on the DACA requests.

The CFDO will adhere to the Fraud Detection Standard Operating Procedures for referring fraud cases filed under the DACA program to ICE.

DACA cases denied due to a confirmed finding of fraud shall be updated in C3 as "Denial Notice with a Finding of Fraud Ordered" [EC] for tracking purposes. In addition, DACA cases denied due to a confirmed finding of fraud shall be referred for NTA issuance in accordance with the NTA memorandum dated November 7, 2011. The appropriate NTA charge will be determined on a case-by-case basis in consultation with local counsel.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**App. 141**

Confidential                                    DEF - 00006952

# I. Fraud Review and Fraud Referrals, Continued

**System Updates for DACA File Movement Into and Out of CFDO**

For reporting purposes, DACA file movement into and out of the CFDO will require the following updates in C3:

- "Sent to the Fraud Detection Unit (FDU) for Analysis" **LE** when sending a DACA request to the CFDO; and
- "Return from Fraud Detection Unit (FDU) with Results" **LE** when receiving a DACA request from CFDO for final processing.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 142**

Confidential

DEF - 00006953

# Chapter 9: Decisions

## A. Requests for Evidence

**Request for Evidence (RFE)**      For DACA requests, when requesting additional evidence, an RFE will be used.  A NOID will rarely be used.  Appendix D has a list of DACA RFE call ups to be used when processing a  DACA request.

Follow the steps below to process an RFE.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 |  |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006954

# B. Notice of Intent to Deny

**Notice of Intent to Deny (NOID)**

Follow the steps below to process a NOID:

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 |  |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

**Notice of Intent to Deny (NOID) –Local Counsel and HQ SCOPS Review**

See Appendix J for current Notice of Intent to Deny review policy.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

DEF - 00006955

## C. Approvals

**Approvals: CLAIMS Verification**

Follow the steps below to verify information in C3 prior to processing an approval.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 4 | |
| 5 | |
| 6 |  |
| 7 | |
| 8 | |
| 9 | Check the fee payment information for Form I-765. <u>See</u> Chapter 5 regarding NSF processing and handling procedures. |
| 10 | **LE** |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

Confidential

## C. Approvals, Continued

**Approval Processing for Initial I-821D**    Follow the steps below to process an approval for a DACA request.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 |  |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Put in ROP order and place a pink coversheet on the left-hand side of the file. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

**App. 146**

Confidential                DEF - 00006957

# D. Denials –

| | |
|---|---|
| **Denials – After RFE or NOID** | In general, the officer shall issue a denial whenever the requestor's response to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) is insufficient to establish eligibility. There may be exceptions when a NOID or second RFE is appropriate after an initial RFE. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**Version August 28, 2013** 109

**App. 147**

Confidential                                                                DEF - 00006958

| Denials –<br>Supervisory<br>Review | When the denial involves one of the grounds listed below, obtain supervisory review before issuing the denial when the requestor: |
|---|---|

- Has a conviction for any crime committed before reaching age 18, and was tried as an adult; or
- Has been convicted of a "significant misdemeanor;" or
- Has no criminal convictions and outwardly appears to meet the guidelines in the Secretary's June 15, 2012 memorandum; however, based on other derogatory information obtained through routine systems and background/security checks, there are credible reasons to believe that the requestor poses a threat to national security or public safety. If the requestor poses a threat to national security, the officer should refer the proposed denial for supervisory review after the case has been processed through the CARRP process; or
- Has one or more departures which he/she claims were "brief, casual, and innocent" and therefore are not disruptive of the continuous residence requirement; or
- Has not met the educational guideline; or
- Is in immigration detention at the time of filing Form I-821D and remains in immigration detention; or
- Cannot receive prosecutorial discretion because it is not consistent with the Department of Homeland Security's enforcement priorities.

If the convictions and/or arrests occurred before the requestor filed the Form I-821D and the requestor did not disclose this derogatory information, include the withholding of the material fact(s) as one of the reasons for not exercising prosecutorial discretion in the case.

When a DACA request is denied, the denial shall be issued using the Appendix F. In instances where an individual is unable to establish he or she warrants a favorable exercise of prosecutorial discretion under this process, and no other checkbox applies except "You have not established that you warrant a favorable exercise of prosecutorial discretion," supervisors must refer the case to HQSCOPS through the normal chain of command.

Before routing the A-file to a supervisor, the officer should place a supervisory hold on the case in C3. After the supervisor concurs with the issuance of a denial, the officer shall check the appropriate box on the denial template and process the cases in the system for denial. See Appendix F for the DACA Denial Template. If the supervisor determines that the case should be approved, process for approval and document the file as appropriate.

In novel, complex, or sensitive cases, or cases that require a paragraph denial that are not included in Appendix K, supervisors will refer the case to HQSCOPS, through the normal chain of command.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 110

**App. 148**

DEF - 00006959

## D. Denials, Continued

**Denial**
(continued)

When the denial falls under one of the categories that requires supervisory review, ensure that concurrence has been obtained before processing the DACA request for denial.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 |  |
| 6 | |
| 7 | |
| 8 | Prepare and send the denial. |
| 9 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 10 | Process Form I-765 for denial. See Chapter 12. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 149**

## D. Denials, Continued

**Abandonment
Denial Letters**

Abandonment denials do not require supervisory review. Abandonment denials are initiated on Form I-821D in the following:

- The requestor fails to respond to an RFE or NOID;
- The requestor fails to appear at an ASC for biometrics collection within the specified time frame, after failure to respond to an RFE. Refer to Chapter 5 of this SOP.

**Abandonment
Denials**

After **ALL** A-files have been retrieved when processing an I-821D (unless adjudicating in a T-file if unable to obtain the A-file), follow the steps below to process an abandonment denial.

| Step | Action |
|------|--------|
| 1 | Ensure that no other addresses exist: |
|  | 1. Review the file for any correspondence received; |
|  | 2. Review the returned envelope for any changes from the post office; |
|  | 3. Check C3, National Claims, and AR11 for an alternate address or an address change; |
|  | 4. Check the systems to see if a more recent DACA request was submitted with updated address; and |
|  | 5. Check Forms I-821D and I-765 to ensure that there is no different address provided between the two forms. |
| 2 | |
| 3 | |
| 4 | **LE** |
| 5 | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 150**

Confidential

DEF - 00006961

## D. Denials, Continued

**Abandonment Denials**
(continued)

| Step | Action |
|------|--------|
| 6 | |
| 7 | **LE** |
| 8 | |
| 9 | Prepare and send the denial. |
| 10 | Put in ROP order and place a pink coversheet on the left-hand side of the file over the denial letter. |
| 11 | Process the Form I-765 for denial. See Chapter 12. |

**NOTE:** If the RFE/NOID was not stamped as a "No Response," the officer should write it on the document. A "No Response" will **ALWAYS** remain on top of the application for proper ROP and the officer will place the denial/withdrawal letter on top of the "No Response."

**Denial for NSF**

When Form I-765 has been "rejected" for NSF, for the $380 I-765 fee and/or the $85 biometrics fee, Form I-821D shall be denied as the DACA filing did not include a concurrently filed I-765 and I-821D. The officer shall select the appropriate denial box on the denial template and update C3 to reflect the denial. After processing the case for denial and updating the system, hold the A-file for 45 days and then forward to the NRC, if a request to review is not received through SRMT.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013** 113

**App. 151**

Confidential

DEF - 00006962

# Chapter 10: Post Denial Process

**Determining
Appropriate
Action After
Denial**

1. Review the grounds for denial.

2. If the denial grounds do not involve criminal, national security, or public safety issues, hold the A-file for 45 days and then forward to the NRC, if a request to review is not received through SRMT.

3. If the denial involves criminal, national security, or public safety issues, refer to the November 7, 2011, memorandum entitled, <u>Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens.</u> Confirmed fraud denials also warrant NTA issuance. <u>See</u> Appendix B.

4. The NTA unit will determine whether NTA issuance is appropriate under the NTA memorandum referenced above.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**App. 152**

Confidential

DEF - 00006963

# Chapter 11: Returned Mail

**Check for Address Changes**

When notices are returned as undeliverable, the officer should:
1. Review the file for any correspondence received;
2. Review the returned envelope for any changes from the post office, Check C3, National Claims, and AR11 for an alternate address or an address change;
3. Check the systems to see if a more recent DACA request was submitted with an updated address; and
4. Check both Form I-821D and the I-765 to ensure that there is no different address provided between the two forms.

**RFE, NOID, Intent to Terminate**

When an RFE, NOID, or Intent to Terminate is returned to the Service Center as undeliverable, follow all procedures above to locate a new address and re-mail the RFE, NOIT or Intent to Terminate after updating C3.

If there is no other address to use and the response time indicated has not passed, the file should be placed on hold in accordance with local procedures for the remainder of the response time.

| If there is no other address found and the response time has passed on the... | Then... |
|---|---|
| RFE | Deny as an abandonment denial. |
| NOID (with NO criminal content), | Deny for cause. |
| Intent to Terminate, | Terminate DACA. |

**Denial Notice**

When a denial is returned to the Service Center as undeliverable, follow all procedures above to locate a new address and re-mail the denial.

| If there is no new address and the 45 days... | Then... |
|---|---|
| Have **NOT** passed, | Hold file |
| Have passed, | Send to the NRC if no further communication is received. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 153**

Confidential DEF - 00006964

# Chapter 12: Employment Authorization

## A. General Information

| | |
|---|---|
| **(c)(33) Eligibility Category** | The eligibility category for employment authorization based on a grant of deferred action is 8 C.F.R. § 274a.12(c)(14). To distinguish DACA-related EADs from other deferred action EADs, the (c)(33) code will be used. |
| **Evidentiary Requirements** | For a (c)(33) EAD, the individual must be approved for DACA.<br><br>The information needed to assess economic necessity is collected on the Form I-765WS. This worksheet should have been reviewed during the adjudication of Form I-821D.<br><br>Before proceeding with the adjudication of the Form I-765, review C3 to ensure that there is no outstanding RFE, as the RFE would have been issued during the adjudication of Form I-821D. |
| **Validity Period of (c)(33) EAD** | The "valid from" date is the date of approval and the "valid to" date is 2 years minus one day from the date of approval or to the end date of the deferred removal date under DACA, whichever is earlier. |
| **8 C.F.R. § 274a.13(d) – 90 Day Time Period to Issue an EAD** | Pursuant to 8 C.F.R. § 274.12(c)(14), the EAD is predicated on a grant of deferred action. Since Forms I-821D and I-765 are filed concurrently for DACA, Form I-821D will be adjudicated first. If Form I-821D is approved, then Form I-765 would be approved under the (c)(33) code to distinguish the DACA related EADs from other deferred action EADs. Since approval of the Form I-821D is a prerequisite, and since the EAD is based upon a grant of DACA, the 90-day EAD clock begins after Form I-821D is approved for DACA. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator.

**App. 154**

Confidential

DEF - 00006965

Case 1:18-cv-00068   Document 526-6   Filed on 04/31/23 07/EXSB   Page 157 of 264

## A. General Information, Continued

**Reasons for Filing**

The DACA requestor should indicate one of the following reasons for filing:

- Permission to accept employment: The initial request for employment authorization under an eligibility category; or
- Replacement (of lost or stolen employment authorization document): A request to replace a lost, stolen, mutilated, or incorrect EAD.

If neither of these boxes is checked, verify the Form I-821D approval in C3 to ensure that removal has been deferred under DACA and then check the Form I-765 history in C3 to see if a prior EAD has been issued under the (c)(33) eligibility category. If yes, process the Form I-765 EAD as a replacement. If no, process the Form I-765 EAD as an initial EAD. If a prior replacement EAD under the (c)(33) eligibility category has been issued, refer the case to CFDO.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**Version August 28, 2013**   117

**App. 155**

Confidential                        DEF - 00006966

## B. Adjudication

**Verification of Forms I-821D and I-765**

Access C3 and follow the steps below to verify the information:

| Step | Action |
|------|--------|
| 1 | Verify that the requestor has a pending or an approved initial I-821D on file. (If no, see the denial section for processing instructions.) |
| 3 | • Check the signatures on Form I-765. <br> • Verify that the biometrics are present. |

**Biometrics**

Officers must check the [ LE ] to determine if the requestor's biometrics (photograph, fingerprints, signature) have been received. [ LE ]

[ LE ]

| If ... | Then ... |
|--------|----------|
| **LE** | the biometrics have been received. |
| | the biometric(s) have been waived. |
| | then the data was not captured and a card will not print. |

If the requestor is a child less than 14 years of age, there should be a **Waiver (W)** for fingerprint and signature.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES):
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 156**

Confidential                                        DEF - 00006967

# B. Adjudication, Continued

**Approvals**        All corrections made to the information contained on Form I-765 must be made on the face of the application in **red**.

**Application Annotations**        When approving Form I-765, follow the steps below for proper annotation of the form:

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| |  |
| 3 | |
| 4 | |
| 5 | |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 157**

Confidential                                                    DEF - 00006968

## B. Adjudication, Continued

**CLAIMS Updating for Approvals**

Follow the steps below to update C3 for I-765 approval.

| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | **LE** |
| 6 | |
| 7 | |
| 8 | |
| 9 | Place a pink coversheet on the left-hand side of the file. |
| 10 | In the alternative, the approval may be updated using I-765 Express per existing protocols. |

**NOTE:** If you go back into the approval screen to view the data before exiting the form after approving, then you must press the "save" button again to retain the approval. If the information is not saved, then a card will not be generated.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 158**

Confidential

# B. Adjudication, Continued

**Notice of Intent to Deny (NOID)**  Officers will prepare the intent to deny letter, annotate the worksheet, and update CLAIMS as follows:

| Step | Action |
|------|--------|
| 1 | |
| 2 | **LE** |
| 3 | |
| 4 | |
| 5 | |
| 6 | Prepare and send the NOID. <br><br> **NOTE:** Make certain all letters are spell checked and previewed prior to sending. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 159**

Confidential

DEF - 00006970

## B. Adjudication, Continued

**Denials**          Follow the steps below when denying a case.



| Step | Action |
|------|--------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| | **NOTE:** The date on the denial stamp should be date of adjudication. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 160**

Confidential

DEF - 00006971

# B. Adjudication, Continued

**Denials**
(continued)

| Step | Action |
|------|--------|
| 10 | For cases NOT going to the NTA team: <br><br> • The denial for the Form I-765 is included in the DACA Denial Template. _See_ Appendix F. <br> • Place a pink coversheet on the left-hand side of the file over the denial letter. <br><br> **NOTE:** When denying only the Form I-765 for abandonment, an officer should use the DACA Form I-765 Abandonment Denial. |
| 11 | Charge out the file using local procedure. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**Version August 28, 2013** 123

# C. Replacement Cards

**Evidence Required**

The following evidence is required for replacement cards:

- Biometrics from the applicant's most recent ASC visit.
- Original signature. All applicants age 14 and over must sign their own application. The contractor can obtain the signature from Form I-765 and waive the fingerprint when scanning and producing an EAD.
- Current card issued with validity dates that have NOT expired.
- Valid fingerprints are not required in order to issue a replacement EAD.

**Validity Dates**

When issuing a replacement card the validity period should mirror the dates authorized under the previous card.

**Biometrics**

Upon receipt, the contractor will clone from biometrics from the applicant's most recent ASC visit.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 162**

Confidential                                                    DEF - 00006973

# Chapter 13: Use of Service Request Management Tool (SRMT) to

**Introduction**

USCIS will accept SRMTs from DACA denials based on a claim that the denial is incorrect <u>and</u> the denial is based on an <u>administrative error</u>. Specifically, USCIS will accept SRMTs where the requestor believes that USCIS incorrectly denied his/her DACA request for one or more of the reasons listed in this chapter of the DACA SOP.

**History Action Codes (HAC)**

When responding to a request to review a denied DACA request, C3 must be updated with the appropriate History Action Code (HAC) created to track the specific action taken and to denote that the SRMT involved a denied DACA request. The following HACs will be used:



**Templates**

When providing an interim response to review a denied DACA request, standard response templates must be used for the interim response and when the denial is affirmed. When the denied DACA request is approved on Service Motion, the standard approval notice will be generated from C3. Appendix G contains the following templates:

- DACA SRMT call-ups for interim SRMT responses.
- DACA SRMT call-ups to respond that the denial was correct and is affirmed.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 163**

Confidential

DEF - 00006974

# Use of SRMT to Respond to Request to Review Certain Denials

**Administrative Errors related to Material Facts**

Follow the steps below when an SRMT is filed due to a **claimed** administrative error related to:

- The denial of the DACA request on the grounds that the requestor did not come to the United States prior to reaching his/her 16th birthday, but the evidence submitted at the time of filing shows that the requestor did, in fact, arrive before the required age; or
- The denial of the DACA request on the grounds that the requestor was under age 15 at the time of filing, but not in removal proceedings, but the evidence submitted at the time of filing and/or systems checks show that the requestor was, in fact, in removal proceedings when the DACA request was filed; or
- The denial of the DACA request on the grounds that the requestor was not under the age of 31 on June 15, 2012, but the evidence submitted at the time of filing shows that the requestor did not exceed the upper age limit on June 15, 2012; or
- The denial of the DACA request on the grounds that the requestor was not in an unlawful immigration status on June 15, 2012, but the evidence submitted at the time of filing shows that the requestor was, in fact, in a lawful status on June 15, 2012; or
- The denial of the DACA request on the grounds that the requestor was not physically present in the United States on June 15, 2012, up through the date of filing, but the evidence submitted at the time of filing establishes that the requestor was, in fact, present.

| Step | Action |
|------|--------|
| 1 | Request the file. |
| 2 | Respond to the SRMT with an interim response. |
| 3 | Update C3 (with HAC code) **LE** |
| 4 | **LE** |
| 5 | Route the file to the reviewing ISO. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 164**

 DEF - 00006975

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Administrative Errors Related to Material Facts** (continued)

| Step | Action |
|------|--------|
| 6 | The ISO will review the claimed administrative error. |

| If the denial... | Then... |
|------------------|---------|
| Was correct, | • The ISO will route the filing to the SISO for concurrence. <br> • The SISO will concur or not concur and route back to the ISO for appropriate systems updating. <br> • If SISO concurs, the ISO updates C3 with HAC code *SRMT DACA Denial Affirmed* and respond to the DACA requestor using the appropriate DACA SRMT call-up found in Appendix G. <br> • If SISO does not concur, follow the instructions below (Was Not Correct). |
| Was not correct, | • The SISO routes the filing to the ISO for review. <br> • The ISO approves Forms I-821D and I-765. <br> • The ISO updates C3 with the HAC code LE __ LE __ for each form to show that the case to show that the case was approved on Service Motion. |
| Was not correct, but other reasons for denial still exist, | • The ISO will route the filing to the SISO for concurrence. <br> • If the SISO concurs, the ISO will re-deny the case. <br> • The ISO updates C3 with the HAC code LE __ DACA Denial Affirmed for each form. <br> • The ISO produces a new denial using the LE __ denial template found in Appendix H. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 165**

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's biometrics collection.

| Step | Action |
|------|--------|
| 1 | Review the electronic systems to see whether the requestor had his/her biometrics taken. Request the A-file (if needed). |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC codes **LE** **LE** for both forms. |
| 4 | Send an interim **LE** response using **LE** |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 166**

Confidential                    DEF - 00006977

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC (continued)**

| If the requestor... | Then... |
|---|---|
| Did not have his/her biometrics taken, | The reviewing officer should check: <br> • Returned Mail <br> • Address Changes <br> • Rescheduling Requests <br> • The BPU ASC Reschedule Spreadsheet |

| If you... | Then... |
|---|---|
| Locate returned mail, an address change, or a rescheduling request, | • Initiate ASC appointment rescheduling. <br> • After the biometrics results are received, adjudicate the case. <br> • If Form I-821D is approved, approve Form I-765. <br> • Update C3 with HAC  **LE**  **LE**  **LE** for each form. <br> • If denied, issue a denial using the **LE** denial template. <br> • Update C3 with HAC  **LE** Denial Affirmed for each form. |
| Do not locate any returned mail, address change, or rescheduling request, | • Respond to the SRMT that the denial stands, using the SRMT denial template. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 167**

Confidential

DEF - 00006978

## Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor did Appear to Have Biometrics Collected at a USCIS ASC (continued)**

| If the requestor... | Then... |
|---|---|
| Did have his/her biometrics taken, | • The ISO will adjudicate Forms I-821D and I-765.<br>• If Form I-821D is approved, ISO approves Form I-765.<br>• ISO updates C3 with HAC   **LE**   **LE**   for each form.<br>• If denied, ISO issues a denial using the **LE** T denial template.<br>• ISO updates C3 with HAC   **LE**   for each form. |

**Requestor requested that His/Her Biometrics Appointment at a USCIS ASC be Rescheduled Prior to the Scheduled Date**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the request to reschedule the ASC appointment.

| Step | Action |
|---|---|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC code **LE** DACA Reopened on Service Motion for both forms. |
| 4 | Send an interim **LE** response using    **LE** |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 168**

Confidential

DEF - 00006979

## Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor requested that His/Her Biometrics Appointment at a USCIS ASC be Rescheduled Prior to the Scheduled Date** (continued)

| Step | Action |
|---|---|
| 5 | Review the filing and SRMT to determine if a request was received to reschedule the ASC Appointment. |

| If the requestor... | Then... |
|---|---|
| Requested to have his/her biometrics appointment rescheduled, prior to the scheduled date. | <ul><li>The ISO will schedule a new ASC appointment and route the A-file to the appropriate holding shelf to await the biometrics results.</li><li>Adjudicate the case after the biometrics results are received.</li><li>If Form I-821D is approved, approve Form I-765.</li><li>Update C3 with HAC [ **LE** ] Approved on Service Motion for each form.</li><li>If denied, issue a denial using the [ **LE** ] denial template.</li><li>Update C3 with HAC [ **LE** ] **LE**</li></ul> |
| Did not request to have his/ her biometrics appointment rescheduled, prior to the scheduled date. | <ul><li>Respond to the SRMT that the denial stands, using the SRMT denial template.</li></ul> |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator

**App. 169**

Confidential

DEF - 00006980

## Use of SRMT to Respond to Request to Review Certain Denials, Continued

**Requestor Paid the Filing and Biometric fees for the I-765**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to Non-Sufficient Funds.

Review the electronic systems to see whether the requestor paid the associated fees with the filing.

| Step | Action |
|------|--------|
| 1 | Records Division reviews electronic systems to determine if the fee was paid timely and properly (if necessary, Request the A-file) |
| 2 | Reopen Forms I-821D and I-765 on Service motion. |
| 3 | Update C3 with HAC code **LE** **LE** for both forms. |
| 4 | Send an interim **LE** response using **LE** |

| If the Records Division determines… | Then… |
|-------------------------------------|-------|
| The appropriate fees were not paid, | • Respond to the SRMT that the denial stands, using the SRMT denial template. |
| The appropriate fees were paid, | • The ISO obtains the file and schedules a new ASC appointment and routes the A-file to the appropriate holding shelf to await the biometrics results.<br>• Adjudicate the case after the biometrics results are received.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code **LE** **LE** for each form.<br>• If denied, issue a denial using the **LE** denial template.<br>• Update C3 with HAC code **LE** **LE** for each form. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 170**

Confidential                                                    DEF - 00006981

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Denied the Request for DACA Based on Abandonment and the Requestor Claims He/She did Respond to a RFE Within the Prescribed Time**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's response to a RFE.

| Step | Action |
|------|--------|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service motion. |
| 3 | Update C3 with HAC code **LE**     **LE**  for both forms. |
| 4 | Send an interim **LE** response using **LE** |
| 5 | Review A-file and local systems to determine if a response to the RFE was received before the due date. |

|  |  |
|---|---|

| If the requestor… | Then… |
|-------------------|-------|
| Responded to the RFE within the prescribed time, | • Route the filing to the reviewing officer.<br>• Adjudicate based on the evidence submitted initially and the RFE response.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code **LE**    **LE**  for each form.<br>• If denied, issue a denial using the **LE** denial template.<br>• Route to SISO for denial concurrence<br>• Update C3 with HAC code **LE**    **LE**  for each form. |
| Did not respond within the required time, or no response was received. | • Respond to the SRMT that the denial stands, using the SRMT denial template. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)<br>This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt<br>from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,<br>and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or<br>other personnel who do not have a valid "need-to-know" basis without prior approval from the<br>originator

**App. 171**

Confidential      DEF - 00006982

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Mailed the RFE to the Wrong Address and the Requestor Submitted a COA Prior to the RFE Issuance**

Follow the steps below when an SRMT is filed due to a claimed administrative error related to the requestor's change of address.

| Step | Action |
|------|--------|
| 1 | Request the A-file. |
| 2 | Reopen Forms I-821D and I-765 on Service Motion. |
| 3 | Update C3 with HAC code **LE** for both forms. |
| 4 | Send an interim **LE** response using **LE** |
| 5 | Verify the requestor's address. |

| If the requestor... | Then... |
|---------------------|---------|
| Filed a change of address, prior to the issuance of an RFE, | • Re-issue the RFE with a new 87-day response time to the correct address and route the A-file to the RFE hold shelf. <br> • After the RFE response is received, adjudicate Forms I-821D and I-765 based on the evidence submitted initially and the RFE response. <br> • If Form I-821D is approved, approve Form I-765. <br> • Update C3 with HAC code **LE** for each form. <br> • If denied, issue a denial using the **LE** denial template. <br> • Update C3 with HAC code **LE** for each form. |

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 172**

Confidential

DEF - 00006983

# Use of SRMT to Respond to Request to Review Certain Denials, Continued

**USCIS Mailed the RFE to the Wrong address and the Requestor Submitted a COA Prior to the RFE Issuance** (continued)

| If the requestor... | Then... | |
|---|---|---|
| Did not file a COA prior to the issuance of an RFE. | Review that the RFE was sent to the correct address. | |
| | **If the RFE was sent to,** | **Then,** |
| | The correct address. | • Respond to the SRMT stating that the denial stands, using the SRMT denial template. |
| | An incorrect address. | • Route the filing to the SISO.<br>• The ISO shall re-issue the RFE with a new 87-day response time to the correct address and route the A-file to the RFE hold shelf.<br>• After the RFE response is received, adjudicate Forms I-821D and I-765 based on the evidence submitted initially and the RFE response.<br>• If Form I-821D is approved, approve Form I-765.<br>• Update C3 with HAC code **LE** **LE** for each form.<br>• If denied, issue a denial using the SRMT denial template.<br>• Update C3 with HAC code **LE** **LE** for each form. |

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 173**

Confidential

# Chapter 14: DACA Termination

**Removal Deferred Under DACA - Requestor did not Satisfy the Guidelines**

If it comes to the attention of an officer that removal was deferred under DACA in error, the officer should reopen the case on Service motion and issue a Notice of Intent to Terminate, unless there are criminal, national security, or public safety concerns (see below). The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice, prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice.

**Fraud**

If it comes to the attention of an officer that an individual committed fraud in seeking deferral of removal under DACA, the officer should reopen the case on Service motion and issue a Notice of Intent to Terminate. The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice.

The decision to issue a Notice of Intent to Terminate based on fraud should be supported by a fully documented SOF and any other relevant documents/information. The terminated DACA case must also be appropriately recorded in FDNS-DS.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 174**

Confidential

# DACA Termination, Continued

**Criminal, National Security, or Public Safety Issues**

If disqualifying criminal offenses or public safety concerns, which are deemed to be EPS, arise after removal has been deferred under DACA, the officer should forward the case to the BCU DACA Team who, in turn, will refer the case to ICE and follow the handling procedures outlined in the November 7, 2011 NTA memorandum for EPS cases. If ICE accepts the case, the issuance of the NTA will result in the termination of DACA. Upon the filing of the NTA with EOIR, the individual's employment authorization terminates automatically.

If ICE does not accept the case or if the disqualifying criminal offense is non-EPS per the November 7, 2011 NTA memorandum, the BCU DACA Team should reopen the case on Service motion and issue a Notice of Intent to Terminate. The individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate. The Notice of Intent to Terminate should include a statement that if deferred action for childhood arrivals is terminated, any associated employment authorization granted during the period of deferred action will be terminated for cause.

If the adverse grounds are not overcome, or no response is received to the Notice of Intent to Terminate, the officer should prepare a Termination Notice and seek supervisory review of the draft Termination Notice prior to issuance. The Termination Notice should indicate that the individual's employment authorization is terminated for cause as of the date of the notice. Consequently, the Class of Admission (COA) code in CIS should be changed to DAT (Deferred Action Terminated) for employment verification purposes. Additionally, the BCU DACA Team should forward the individual's name to ERO.

If national security concerns arise after removal has been deferred under DACA, the case should go through the CARRP process, per established CARRP protocols.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 175**

 DEF - 00006986

## DACA Termination, Continued

| | |
|---|---|
| **Enforcement Priority – DACA Not Automatically Terminated** | If after consulting with ICE, USCIS determines that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with the Department of Homeland Security's enforcement priorities, and ICE does not plan to issue an NTA,the officer should refer the case to HQSCOPS, though the normal chain of command, to determine whether or not a NOIT is appropriate. If it is determined that the case warrants final termination, the officer will issue DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated] from the Appendix I. |
| **System Updates** | The following new HACs must be used as appropriate when updating a Notice of Intent to Terminate DACA and a DACA Termination Notice in C3: |



After terminating DACA, the Class of Admission (COA) code in CIS should be changed to DAT (Deferred Action Terminated) for employment verification purposes.

See Appendix I for Notice of Intent to Terminate and Termination Notice.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

Confidential

DEF - 00006987

# Chapter 15: Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Consideration of Deferred Action for Childhood Arrivals (DACA)

| | |
|---|---|
| **Introduction** | Parole is the authorization to allow an otherwise inadmissible person to physically proceed into the United States under certain safeguards and controls. Parole is not an admission. The legal authority for parole is found in § 212(d)(5)(A) of the Act. Under this statutory authority, DHS may, as a matter of discretion, parole an individual into the United States under prescribed conditions. Parole is granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Advance parole is generally granted prior to the individual's departure from the United States. Form I-512L evidencing such a grant is generally the document accepted by a transportation company to allow individuals travelling without a visa to return to the United States. |
| **Prescribed Conditions for Advance Parole** | In accordance with the discretionary authority provided in § 212(d)(5)(A) of the Act, USCIS will determine whether a DACA recipient's purpose for international travel is justifiable based on the circumstances he or she describes in his or her request. Generally, USCIS will only grant advance parole if the applicant's travel abroad will be in furtherance of: |

- humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative;

- educational purposes, such as semester-abroad programs and academic research, or;

- employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas.

Travel for vacation is not a valid basis for advance parole.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid "need-to-know" basis without prior approval from the
originator

**App. 177**

Confidential

DEF - 00006988

**Advance Parole Requested for Humanitarian Purposes**

For humanitarian purposes the applicant must show that the travel is for the purpose of:

- Obtaining medical treatment;
- Attending funeral services for a family member; or
- Visiting an ailing relative.

Evidence to demonstrate this purpose includes, but is not limited to:

- A letter from the applicant's physician explaining the nature of his or her medical condition, the specific medical treatment to be sought outside of the United States, and a brief explanation why travel outside the U.S. is medically necessary; or
- Documentation of a family member's serious illness or death.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt
from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed,
and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or
other personnel who do not have a valid 'need-to-know' basis without prior approval from the
originator

**App. 178**

DEF - 00006989

# Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Continued

**Advance Parole Requested for Educational Purposes**

For educational purposes the applicant must show that the travel will be undertaken for educational pursuits.

- Examples include semester abroad programs or travel necessary to conduct academic research.
- Travel during an academic year unrelated to academics (e.g., a vacation) is insufficient to qualify as an educational purpose.
- Evidence to demonstrate this purpose includes, but is not limited to:

  - A letter from a school employee acting in an official capacity describing the purpose of the travel and explaining why travel is required or beneficial; or
  - A document showing enrollment in an educational program requiring travel.

**Advance Parole Requested for Employment Purposes**

For employment purposes the applicant must show that the travel relates to fulfilling job requirements.

- These purposes will also include the pursuit of a position in the United States with a foreign employer.
- Examples include an overseas assignment, an interview, a conference, training, or a meeting with overseas clients.
- Evidence to demonstrate employment purposes includes, but is not limited to:

  - A letter from the applicant's employer or conference host describing the need for travel; or
  - A document showing a specific employment need, such as a conference program, that also shows the applicant's participation.

**Expedites**

As a general matter of course, expedite requests will not be granted, because USCIS will make every effort to process the advance parole request quickly; however, in a dire emergency, and if properly documented, if an individual were to appear at a local office and the local office were to deem the need for an expedite to be compelling such that an expedite would be warranted, the local office has the option of processing the advance parole or working through established POCs at the Service Center under normal protocols.

*Continued on next page*

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)
This document is FOR OFFICIAL USE ONLY. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. § 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information, and is not to be released to the public or other personnel who do not have a valid "need-to-know" basis without prior approval from the originator.

**App. 179**

Confidential

DEF - 00006990

# Processing Form I-131, Application for Travel Document for Individuals With Approved Form I-821D, Continued

**Filing Location**  A DACA recipient seeking advance parole files Form I-131 with the USICS Lockbox Facility according to the instruction on the form. The Lockbox Facility will forward the application to the appropriate Service Center according to the agreed upon routing.

**DACA Recipients in Removal Proceedings**  Individuals in removal proceedings, including those with a final removal order, may seek advance parole if the request meets the guidelines for advance parole consideration under DACA. Notwithstanding the advance parole, a departure made while under a final order of removal (including a voluntary departure that converted automatically to a final removal order) renders that individual inadmissible under § 212(a)(9)(A) of the Act.

**Processing Steps**

**Step 1:** Determine whether the applicant is in removal proceedings and/or has a final removal order.

**Step 2:** Captured digital photos from the recent ASC visit should be used in creating the travel document within the I-512L program.

**Step 3:** Review the results of the initial **LE** checks.
- If there is no **LE** hit, or the **LE** shows the hit does not relate (DNR), or the hit has already been resolved, go to step 4.
- If there is an unresolved **LE** hit, follow the instructions in the NaBISCOP.

**Step 4:** Adjudicate the I-131.
- If the criteria have been met, issue the advance parole valid for the duration of the event, as documented in the advance parole application. For multiple events, issue the advance parole valid for the duration of all the documented events, not to exceed the duration of the deferral of removal under DACA.
- Update the I-131 in C3 for approval and issuance of an I-512L Advance Parole Document.
- If the criteria have not been met, issue a denial and update C3.

Update RFEs, approvals and denials in C3 using current procedures.

FOR OFFICIAL USE ONLY (FOUO) - LAW ENFORCEMENT SENSITIVE (LES)

**App. 180**

Confidential                    DEF - 00006991



June 15, 2012

*Secretary*
U.S. Department of Homeland Security
Washington, DC 20528

# Homeland Security

MEMORANDUM FOR:    David V. Aguilar
Acting Commissioner, U.S. Customs and Border Protection

Alejandro Mayorkas
Director, U.S. Citizenship and Immigration Services

FROM:    Janet Napolitano
Secretary of Homeland Security

SUBJECT:    Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children

FROM: SUBJECT:
John Morton
Director, U.S. Immigration and Customs Enforcement

**App. 181**

DEF - 00002601

Janet Napolitano
Secretary of Homeland Security

Exercising Prosecutorial Discretion with Respect to Individuals
Who Came to the United States as Children

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the Department of Homeland Security (DHS) should enforce the Nation's immigration laws against certain young people who were brought to this country as children and know only this country as home. As a general matter, these individuals lacked the intent to violate the law and our ongoing review of pending removal cases is already offering administrative closure to many of them. However, additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead appropriately focused on people who meet our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for at least five years preceding the date of this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs

**App. 182**

Confidential

DEF - 00002602

Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum
.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the

**App. 183**

DEF - 00002603

framework of the existing law. I have done so here.

Janet Napolitano

Confidential

# **Appendix B**



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship
and Immigration
Services**

**November 7, 2011**                                              **PM-602-0050**

## Policy Memorandum

SUBJECT:  Revised Guidance for the Referral of Cases and Issuance of Notices to Appear
(NTAs) in Cases Involving Inadmissible and Removable Aliens

**Purpose**
This Policy Memorandum (PM) establishes new USCIS guidelines for referring cases and
issuing Notices to Appear (NTAs) in a manner that promotes the sound use of the resources of
the Department of Homeland Security and the Department of Justice to enhance national
security, public safety, and the integrity of the immigration system. This PM supersedes Policy
Memorandum No. 110, *Disposition of Cases Involving Removable Aliens*, dated July 11, 2006.

**Scope**
This PM applies to and is binding on all USCIS employees unless otherwise specifically
provided in this PM.

**Authority**
Immigration and Nationality Act (INA) sections 101(a)(43), 103(a), 239, 240 and 318; Title 8,
Code of Federal Regulations (8 CFR) parts/sections 2.1, 103, 204, 207.9, 208, 216.3(a),
216.6(a)(5), 236.14(c), and 239; Adjudicator's Field Manual Chapter 10.11(a).

**Background**
U.S. Citizenship and Immigration Services (USCIS) has authority, under the immigration laws,
*see, e.g.,* INA §§ 103(a), 239; 8 CFR §§ 2.1, 239.1, to issue Form I-862, Notice to Appear, to
initiate removal proceedings.[1] U.S. Immigration and Customs Enforcement (ICE) and U.S.
Customs and Border Protection (CBP) also have authority to issue NTAs. Accordingly, USCIS
must ensure that its issuance of NTAs fits within and supports the Government's overall removal
priorities, while also ensuring that its NTA policies promote national security and the integrity of
the nation's immigration system.

To those ends, this PM identifies the circumstances under which USCIS will issue an NTA, or
will refer the case to ICE for NTA issuance, in order to effectively handle cases that involve
public safety threats, criminals, and aliens engaged in fraud.

---

[1] *Delegation by the Secretary of the Department of Homeland Security to the Bureau of Citizenship and Immigration
Services,* Delegation Number 0150.1; Paragraph 2(N). However, international District Directors and officers are not
authorized to issue NTAs.

www.uscis.gov
**App. 185**

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 2

**Policy**

I.   <u>National Security Cases</u>

This PM does not affect the handling of cases involving national security concerns.[2]
Guidance from the Fraud Detection and National Security Directorate (FDNS)[3] will continue
to govern the definition of these cases and the procedures for resolution and NTA issuance.

II.   NTA Issuance Required by Statute or Regulation

USCIS will issue an NTA in the following circumstances:[4]

A.   Termination of Conditional Permanent Resident Status and Denials of Form I-751,
Petition to Remove the Conditions of Residence (8 CFR 216.3, 216.4, 216.5)[5]
B.   Denials of Form I-829, Petition by Entrepreneur to Remove Conditions (8 CFR 216.6)
C.   Termination of refugee status by the District Director (8 CFR 207.9)
D.   Denials of NACARA 202 and HRIFA adjustments
1.   NACARA 202 adjustment denials (8 CFR 245.13(m));
2.   HRIFA adjustment denials (8 CFR 245.15(r)(2)(i)).
E.   Asylum[6], NACARA 203, and Credible Fear cases:[7]
1.   Asylum referrals (8 CFR 208.14(c)(1));
2.   Termination of asylum or termination of withholding of removal or deportation
(8 CFR 208.24(e));[8]
3.   Positive credible fear findings (8 CFR 208.30(f));
4.   NACARA 203 cases where suspension of deportation or cancellation of removal
is not granted, and the applicant does not have asylum status, or lawful immigrant
or non-immigrant status (8 CFR 240.70(d)).

This PM does not apply to, or change, NTA or notification procedures for Temporary
Protected Status cases.[9]   Further, Form I-360, Petition for Amerasian, Widow(er), or Special
Immigrant, processed under the Violence Against Women Act (VAWA), should continue to

---

[2] National Security Cases include cases involving Terrorist Related Grounds of Inadmissibility (TRIG) pursuant to
sections 212(a)(3)(B) and 212(a)(3)(F) of the INA.
[3] See, e.g., *Policy for Vetting and Adjudicating Cases with National Security Concerns* (April 11, 2008).
[4] If any Form I-751 or I-829 cases are also Egregious Public Safety cases, they will be referred to ICE in accordance
with Section IV.A.1 of this PM.
[5] See the October 9, 2009 internal memo, *Adjudication of Form I-751, Petition to Remove Conditions on Residence
Where the CPR Has a Final Order of Removal, Is in Removal Proceedings, or Has Filed an Unexcused Untimely
Petition or Multiple Petitions.*  See also the April 3, 2009 memo, *I-751 Filed Prior to Termination of Marriage.*
[6] USCIS may issue an NTA when an asylum applicant withdraws his or her asylum application.
[7] This memo does not apply to the Asylum Division's issuance of Form I-863, Notice of Referral to Immigration
Judge, to certain stowaways, crewmembers, and VWP individuals who are requesting asylum or withholding of
removal; reasonable fear screenings and negative credible fear screenings.
[8] See also section 208(c)(3) of the INA describing removal when asylum is terminated.
[9] See the September 12, 2003 internal memo, *Service Center Issuance of Notice to Appear (Form I-862).*

**App. 186**

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 3

be processed under existing protocols.  If the VAWA applicant's Form I-485 is denied, this memorandum is applicable in terms of NTA issuance.[10]

III. Fraud Cases with a Statement of Findings Substantiating Fraud

To protect the integrity of the immigration system and address fraud, USCIS will issue NTAs when a Statement of Findings (SOF) substantiating fraud is part of the record.[11]  An NTA will be issued upon final adjudicative action on the petition and/or application or other appropriate eligibility determination.[12]  NTAs will be issued even if the petition and/or application is denied for a ground other than fraud, such as lack of prosecution or abandonment, is terminated based on a withdrawal by the petitioner/applicant, or where an approval is revoked, so long as an SOF substantiating fraud is in the record.

The NTA should include the charge of fraud or misrepresentation, if possible.  The appropriate charge(s) will be determined on a case-by-case basis.  Consultation with local USCIS counsel to determine the appropriate charge(s) is recommended.

IV. Cases to be Referred to ICE for a Decision on NTA Issuance

A. Criminal Cases:  Criminal aliens are a top immigration enforcement priority for the government.  The following guidance recognizes the prioritization and requires USCIS to refer criminals to ICE for action or issue an NTA in accordance with this PM.

1. Egregious Public Safety (EPS) Cases

USCIS will refer all EPS cases, including cases with pending N-400s, to ICE prior to adjudicating the case even if USCIS can deny the petition and/or application on its merits.  An EPS case is defined by USCIS and ICE as a case where information indicates the alien is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:
a. Murder, rape, or sexual abuse of a minor as defined in section 101(a)(43)(A) of the INA.
b. Illicit trafficking in firearms or destructive devices as defined in section 101(a)(43)(C) of the INA.
c. Offenses relating to explosive materials or firearms as defined in section 101(a)(43)(E) of the INA.

---

[10] When making determinations, employees must keep in mind USCIS's obligations under 8 USC § 1367, which prohibits the release of any information, outside of DHS, relating to aliens who are seeking or have been approved for immigration benefit(s) under the provisions for battered spouses, children, and parents in the Violence Against Women Act.
[11] Alternatively, ICE will determine whether to issue the NTA if a criminal investigation is conducted, fraud is found, and the investigation results in criminal prosecution.
[12] This includes, but is not limited to, aliens that were granted asylum status by USCIS, adjusted to Lawful Permanent Resident status, presented fraud indicators, were subject to the Post Adjustment Eligibility Review (PAER) process in an Asylum Office, and met the PAER criteria for NTA issuance.

**App. 187**

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 4

    d. Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.

    e. An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.

    f. An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.

    g. An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.

    h. An offense relating to alien smuggling as described in section 101(a)(43)(N) of the INA

    i. Human Rights Violators, known or suspected street gang members, or Interpol hits.

    j. Re-entry after an order of exclusion, deportation or removal subsequent to conviction for a felony where a Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

All EPS cases must be referred to ICE using the procedures outlined below. The case will be referred as soon as it is identified. ICE will have an opportunity to decide if, when, and how to issue an NTA and/or detain the alien. USCIS will not issue an NTA in these cases if ICE declines to issue an NTA. If some other basis unrelated to the EPS concern becomes apparent during the course of adjudication, an NTA may be issued in accordance with this memo.

Referral Process

This referral process is utilized in order to give ICE the opportunity to determine the appropriate course of action before USCIS adjudicates the case. A decision to issue an NTA may directly affect the processing of the pending petition and/or application. Upon issuing the Referral to Immigration and Customs Enforcement (RTI), USCIS will suspend adjudication for 60 days, or until ICE provides notification of its action on the case, whichever is earlier.

In response to the RTI –

    1. ICE may issue an NTA. ICE's issuance of an NTA allows USCIS to proceed with adjudication (unless jurisdiction transfers to EOIR or the pending application is an N-400), taking into account the basis for the NTA.

    2. If ICE does not issue an NTA or otherwise provide notification of its action on the case within 60 days of the RTI, USCIS may resume its adjudication of the case, taking into account the referral grounds.

**App. 188**

Case 1:18-cv-00068   Document 226-6   Filed on 04/31/23 in TXSD   Page 191 of 264

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 5

    a.  If the case is approvable, USCIS will consult with ICE prior to
        adjudication.

    b.  Once adjudicated, regardless of the decision, USCIS will notify
        ICE of the result by sending a copy of the original RTI to ICE with
        a cover memorandum advising of the outcome of the case.

EPS cases referred to ICE prior to adjudication should be called up and reviewed
no later than 60 days after referral. Normally, the case should be adjudicated by
USCIS. However, USCIS retains discretion to place the case on hold for more
than 60 days if ICE requests additional time to conduct an investigation.[13]

Office-Specific Processes

1. Cases to be adjudicated by Service Centers and the National Benefits
   Center. Adjudication will be suspended and the case will immediately be
   sent to the appropriate Service Center Background Check Unit (BCU).
   The BCU will refer the case to the ICE Benefit Fraud Unit (BFU) via an
   RTI. A hard copy of the RTI will be placed in the A-file and/or receipt
   file. The BCU will retain the file unless ICE requests it or the 60 days
   expire.

2. Cases to be adjudicated by Field Offices. The Immigration Services
   Officer (ISO) will suspend adjudication and the case will immediately be
   referred to the local ICE Special Agent in Charge (SAC) via an RTI. A
   hard copy of the RTI will be placed in the A-file and/or receipt file. A
   copy of the RTI must also be sent to the ICE BFU. USCIS will retain the
   file unless ICE requests the file for their review.

An RTI should include any relevant attachments that USCIS has at the time, such
as a copy of the RAP sheet and a copy of the petition and/or application.

2. Non-Egregious Public Safety Criminal Cases

If it appears that the alien is inadmissible or removable for a criminal offense not
included on the EPS list, USCIS will complete the adjudication and then refer the
case to ICE. This section applies to N-400 cases if the N-400 has been denied on
good moral character (GMC) grounds based on the criminal offense.[14] ICE will
decide if, and how, it will institute removal proceedings and whether or not it will
detain the alien. USCIS will not issue an NTA if ICE declines to issue an NTA.

---

[13] Pursuant to 8 CFR 274a.13(d), USCIS must complete processing of an Employment Authorization Document
(EAD) within 90 days or issue an interim EAD card valid up to 240 days. Officers should be mindful of this
regulatory timeframe when cases with a pending Form I-765, Application for Employment Authorization, are
referred to ICE.
[14] See Section V of this memo addressing N-400 cases.

Confidential

If some other basis unrelated to the criminal offense becomes apparent upon
return of the case to USCIS, an NTA may be issued in accordance with this
memo.

Referral Process

The referral process is used to allow ICE to make a determination whether to
issue an NTA, based on the totality of circumstances and its priorities. ICE will
determine the appropriate grounds for removal if an NTA is issued.

Once adjudication is complete, USCIS will send an RTI to ICE. USCIS will
concurrently transmit a copy of the RTI to ICE Headquarters (HQ) Enforcement
and Removal Operations (ERO) Criminal Alien Division for statistical monitoring
purposes. If there is any confusion or uncertainty about classifying a case as
egregious versus non-egregious, the USCIS ISO should refer the matter as an EPS
case using the process described above.

The accompanying A-file will be referred to ICE with the RTI, if the file is in the
possession of the referring USCIS office or center. If the file is not at the
referring USCIS office or center, the RTI should include any relevant attachments
that USCIS has, such as a copy of the RAP sheet and a copy of the petition and/or
application. Where USCIS obtained certified conviction records through normal
processing of the case, USCIS will include the records with the RTI, but it will
not hold the RTI on a completed case solely to obtain disposition records. Instead
ICE will decide whether, and how, it will obtain such records as part of its
decision to issue an NTA.

Office-Specific Processes

1. Cases adjudicated by Service Centers and the National Benefits Center.
   Once adjudication is completed, if the alien is removable on a criminal
   charge, regardless of the reason for the denial, the file will be referred to
   the BCU. The BCU will refer the case, along with the A-file and/or receipt
   file, to the appropriate ERO Field Office Director (FOD) via an RTI.

2. Cases adjudicated by Field Offices. Once adjudication is completed, if the
   alien is removable on a criminal charge, regardless of the reason for the
   denial, USCIS will prepare an RTI and refer the case, along with the
   A-file and/or receipt file, to the local ERO FOD.

B. National Security Entry Exit Registration System (NSEERS) Violator Cases

USCIS will refer all cases in which an application is denied based on an NSEERS
violation to ICE for possible NTA issuance.

**App. 190**

DEF - 00002610

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases
Involving Inadmissible and Removable Aliens
Page 7

V. Cases Involving Form N-400, Application for Naturalization

The following guidance applies to the issuance of NTAs in cases in which applicants for naturalization are removable.  There are two primary situations in which NTAs may be issued in connection with a filed Form N-400.  If the N-400 case involves fraud (documented in the SOF) the procedures found in this section must be followed, rather than the procedures found in Section III (Fraud Cases with a Statement of Findings Substantiating Fraud).  However, the below guidance does not apply to EPS cases.  EPS cases must be referred in accordance with Section IV.A.1 (Egregious Public Safety Cases) of this memo.  Additionally, the below guidance does not apply to non-EPS criminal cases when the N-400 can be denied on GMC grounds based on the criminal act.  These cases must be denied and referred in accordance with Section IV.A.2 (Non-Egregious Public Safety Criminal Cases).

A. The first situation occurs when the applicant may be eligible to naturalize but is also deportable under section 237 of the INA.  Examples include applicants convicted of aggravated felonies prior to November 29, 1990, or applicants convicted of deportable offenses after obtaining Lawful Permanent Resident (LPR) status that do not fall within the GMC period.  The ISO should:

   1. Make a written recommendation on the issuance of an NTA through a review of the totality of the circumstances to include factors such as: severity of crime, time since crime committed, other criminal conduct, reformation, immigration history including method of entry, length of presence in the U.S., and prior immigration violations, and contributions to society to include the pursuit of education and military service.[15]

   2. Once the ISO has made a recommendation on whether or not to issue an NTA, the case should be forwarded to the N-400 NTA Review Panel (Review Panel), along with the written recommendation.  A Review Panel must be formed in each Field Office and include a local Supervisory Immigration Services Officer (SISO), a local USCIS Office of Chief Counsel attorney, and a district representative.  An attorney from ICE's local Office of Chief Counsel will be invited to participate and will have an advisory role on the panel.  The Review Panel will make the final determination on NTA issuance.  If consensus cannot be reached by the Review Panel, the case will be elevated to the District Director, through the district representative, for a final decision.

   3. If the Review Panel decides to issue an NTA, place the N-400 on hold until removal proceedings have concluded.  Once proceedings have concluded, or if the Review Panel declines to issue an NTA, adjudicate the case appropriately.

---

[15] Additional factors to be taken under consideration can be found in the June 17, 2011 ICE memo, *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens.*

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 8

B. The second situation occurs when it is determined that the applicant was inadmissible at the time of adjustment or admission to the United States, thus deportable under section 237 of the INA and not eligible for naturalization under section 318 of the INA.[16] The ISO should:

1. Make a written recommendation on the issuance of an NTA through a review of the totality of the circumstances to include factors such as: willfulness of actions, fraud factors, length of LPR status, criminal history, and officer error at time of adjustment.

2. Once the ISO has made a recommendation on the issuance of the NTA, the case should be forwarded to the Review Panel (see Section V.A.2), along with the written recommendation. The Review Panel will make the final determination on NTA issuance. If consensus cannot be reached by the Review Panel, the case will be elevated to the District Director, through the district representative, for a final decision.

3. If the Review Panel decides to issue an NTA, place the N-400 on hold until removal proceedings have concluded. Once removal proceedings have concluded, adjudicate the case appropriately. If the Review Panel declines to issue an NTA, deny the case under section 318 of the INA.

VI. Other Cases

A. An alien may request NTA issuance to renew an application for adjustment or in certain cases with a denied N-400. The request must be made in writing.[17]

B. An asylum applicant issued an NTA may request NTA issuance for family members not included on the asylum application as dependents for family unification purposes. The request must be made in writing.[18]

VII. Exceptions

Exceptions to the guidance in this PM require concurrence from Regional or Center Directors, who will consult with ICE before issuing an NTA.

---

[16] In the Third Circuit *only* (Pennsylvania, New Jersey, Delaware, and the U.S. Virgin Islands), based on the holding in *Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009), if the alien has been an LPR for at least five years, the alien cannot be placed in removal proceedings for fraud or willful misrepresentation of a material fact at time of adjustment, if USCIS could have learned of the fraud or misrepresentation through reasonable diligence before the five year rescission period expired. Please consult with USCIS counsel if there are questions regarding the applicability of this precedent.

[17] USCIS retains discretion to deny a request. USCIS should consider ICE actions and determinations when making an NTA issuance decision under this section.

[18] USCIS retains discretion to deny a request.

**App. 192**

DEF - 00002612

PM-602-0050: Revised Guidance for the Referral of Cases and Issuance of NTAs in Cases Involving Inadmissible and Removable Aliens
Page 9

VIII. <u>Coordination with ICE</u>

According to the June 2011 ICE memo regarding the exercise of prosecutorial discretion consistent with priorities,[19] USCIS will receive notice before an ICE attorney exercises prosecutorial discretion and dismisses, suspends, or closes a case. The local N-400 NTA Review Panel will work with ICE to come to a resolution if USCIS does not agree with ICE's use of prosecutorial discretion in a particular case. If concurrence cannot be reached, the case should be elevated to the USCIS Office of Chief Counsel in headquarters.

**Implementation**
Each field office must form an N-400 NTA Review Panel and create a process to complete RTIs and refer EPS and non-EPS criminal cases to ICE. A written list enumerating the members of the Review Panel and a document outlining the process of referral must be sent to the appropriate district office within 30 days of the issuance of this memorandum.

**Use**
This PM is intended solely for the guidance of USCIS personnel in the performance of their official duties. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law, or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

**Contact Information**
Questions or suggestions regarding this PM should be addressed through appropriate channels to the Field Operations Directorate, Service Center Operations Directorate, or the Refugee, Asylum, and International Operations Directorate.

---

[19] *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*, signed June 17, 2011.

**App. 193**

Confidential

DEF - 00002613

# __Appendix C__

## **Overview of the Background Check Process**



Confidential

# Appendix D

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS RFE CALL-UPS

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed **[Text]** and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply. Text only highlighted in **YELLOW** and not bracketed is directive in nature and should not be printed in the letter being sent but should be deleted. Please mix call-ups into a single RFE as needed.

NOTE: Please add call-ups **DACA 300 – FOREIGN LANGUAGE DOCUMENT MUST BE ACCOMPANIED BY AN ENGLISH TRANSLATION** and **DACA 301 – YOU MAY SUBMIT PHOTOCOPIES** to any other call-ups below as needed.

## DACA 100 – IDENTITY

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to prove your identity is insufficient (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- Passport;
- Birth certificate accompanied by photo identification:
- Any national identity documents from your country of origin bearing your photo and/or fingerprint;
- Any U.S.-government immigration or other document bearing your name and photograph (e.g., Employment Authorization Documents (EADs), expired visas, driver's licenses, non-driver cards, etc.);
- Any school-issued form of identification with photo;
- Military identification document with photo; or
- Any other document that you believe is relevant.

## DACA 101 – CONTINUOUS RESIDENCE

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you have continuously resided in the United States during the 5-year period immediately before June 15, 2012 and up to the time of filing is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

a. Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business);

   **NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

   Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

**App. 195**

DEF - 00004044

b.  Rent receipts, utility bills (gas, electric, phone, etc.), receipts or letters from companies showing the dates during which you received service;

c.  School records (transcripts, letters, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and periods of school attendance;

d.  Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

e.  Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;

f.  Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.);

g.  Money order receipts for money sent into or out of the country; passport entries; birth certificates of children born in the United States; dated bank transactions; correspondence between you and another person or organization; U.S. Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

h.  Any other relevant document.

(ISO: Add the appropriate language below to the RFE if any of the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D are blank **OR** if page 3 of the Form I-821D is missing.)

In addition, you did not answer question(s) (ISO should list the questions on page 3 (Part 2, Arrival/Residence Information) of the Form I-821D that were not answered) in Part 2, Arrival/Residence Information, of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to answer these question(s) on the enclosed copy of your original Form I-821D.

Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D with the RFE)

**OR**

In addition, you did not submit page three (3) with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to complete the enclosed page three (3) of the form.

Also enclosed is a copy of your original Form I-821D. Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D and a blank page 3 of the form with the RFE)

**App. 196**

## DACA 102 – BRIEF, CASUAL, AND INNOCENT ABSENCE

To be considered for deferred action as a childhood arrival, you must have continuously resided in the United States during the 5 years period immediately before June 15, 2012 and up to the date you filed your request for deferred action. A brief, casual, and innocent absence from the United States will not interrupt your continuous residence.

An absence will be considered brief, casual, and innocent, if:

  (1)  The absence was short and reasonably calculated to accomplish the purpose of the absence;
  (2)  The absence was not the result of an order of exclusion, deportation, or removal;
  (3)  The absence was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
  (4)  The purpose of the absence from the United States or actions while outside of the United States were not contrary to law.

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for each departure you made from the United States since June 15, 2007 to show that each departure you made from the United States since June 15, 2012 were brief, casual, and innocent is insufficient. (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

  • Plane or other transportation tickets or itinerary showing the travel dates;
  • Passport entries;
  • Hotel receipts showing the dates you were abroad;
  • Evidence of the purpose of the travel (e.g., you attended a wedding or funeral);
  • Advance parole document; or
  • Any other evidence that could support a brief, casual, and innocent absence.

## DACA 103 – ARRIVED IN THE UNITED STATES BEFORE AGE 16

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you came to the United States prior to your 16th birthday is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

  • Passport with an admission stamp indicating when you entered the United States;
  • I-94/I-95/I-94W Arrival/Departure Record;
  • Any INS or DHS document stating your date of entry (e.g., Form I-862, Notice to Appear);
  • Travel records, such as transportation tickets showing your dates of travel to the United States;
  • School records (transcripts, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and the periods of school attendance;
  • Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization;
  • Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.); or
  • Any other document that you believe is relevant.

**App. 197**

DEF - 00004046

## DACA 104 – IN UNLAWFUL STATUS AS OF JUNE 15, 2012

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were in unlawful status as of June 15, 2012 is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- I-94/I-95/I-94W Arrival/Departure Record showing the date your authorized stay expired;
- If you have a final order of exclusion, deportation, or removal issued on or before June 15, 2012, submit a copy of that order and related charging documents, if available;
- An INS or DHS charging document placing you into removal proceedings;
- Any other document that you believe is relevant to show that you lacked lawful immigration status on June 15, 2012; or
- Any document relating to parole.

## DACA 105 – PROOF OF PRESENCE IN THE UNITED STATES ON JUNE 15, 2012

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you were present in the United States on June 15, 2012 is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

a. Employment records (e.g., pay stubs, W-2 Forms, Federal and State income tax returns, letters from employer(s), or, if you are self employed, letters from banks and other firms with whom you have done business).

   **NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters from employers must be signed by the employer and must include the employer's contact information.

   Such letters must include: **(1)** your address(es) at the time of employment; **(2)** the exact period(s) of employment; **(3)** period(s) of layoff; and **(4)** duties with the company.

b. Rent receipts, utility bills (gas, electric, phone, etc.), receipts or letters from companies showing the dates during which you received service.

c. School records (transcripts, letters, report cards, etc.) from the schools that you have attended in the United States, showing the name(s) of the schools and periods of school attendance.

d. Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records).

e. Hospital or medical records concerning treatment or hospitalization, showing the name of the medical facility or physician and the date(s) of the treatment or hospitalization.

f. Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding, etc.).

g. Money order receipts for money sent into or out of the country; passport entries; birth certificates of children born in the United States; dated bank transactions; correspondence between you and another person or organization; U.S. Social Security card; Selective Service card; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

h. Any other relevant document.

**App. 198**

DEF - 00004047

## DACA 106 – CURRENTLY ENROLLED IN SCHOOL

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, showing that you have been accepted for enrollment or are already attending classes in one of the following is insufficient:

- A public or private elementary, junior high/middle school or high school/secondary school;
- A public or private college or university, or community college;
- A course of study to pass a General Education Development (GED) Certificate exam or other State-authorized exam;
- An educational or career training program (including vocational training);
- Literacy training; or
- An English as a Second Language (ESL) program.

(ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the documents provided by the requestor are incomplete (i.e. no identifying information) or illegible, the ISO should note this in the RFE. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly)

You may still submit evidence, which may include the following: (ISO should delete any of the following that were already provided by the requestor.

- **A public or private elementary, junior high/middle school or high school/secondary school;**
  Such evidence may include, but is not limited to:
  - If accepted for enrollment, but classes have not yet commenced:
    - An acceptance letter on school letterhead from the school's authorized representative. Such acceptance letter is to include the name and address of the school, your grade level, and the date that classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
    - A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, if you have a disability;
    - A current class schedule containing the student's name, the list of courses, and the day and time of each class; or
    - Any other relevant evidence.
  - If already enrolled – Current school registration cards; current transcripts; report cards; progress reports showing the name of the school, the time period or semester covered by the document, and the current grade; or a current IEP showing your process to date.
- **A public or private college or university, or community college;**
  Such evidence may include, but is not limited to:
  - If accepted for enrollment, but classes have not yet commenced:
    - An acceptance package or related material on school letterhead from the school's authorized representative. Such acceptance package or related material is to include the name and address of the school, your grade level or class year, and the date or term when classes are scheduled to commence. In addition, the acceptance package or related material is to be accompanied by evidence that the student has registered for classes, or other evidence showing the student has accepted the offer and has committed to start classes on a certain date;
    - A current individualized education program (IEP), as required under the Individuals with Disabilities Education Act, if you have a disability;
    - A copy of your current tuition bill;
    - A current class schedule containing your name, the list of courses, and the day and time of each class; or
    - Any other relevant evidence.

**App. 199**

DEF - 00004048

- If already enrolled – Current school registration cards; current transcripts; report cards; progress reports showing the name of the school, the time period or semester covered by the document, and the current grade or class year; or a current IEP showing your process to date.

- **A course of study to pass a General Education Development (GED) Certificate exam or other equivalent State-authorized exam;**

  Such evidence is to include a letter from the authorized representative of the program that includes information such as:
  - Your name and date of enrollment;
  - The duration of the program and expected completion date;
  - Whether the course of study is for a regular high school diploma or recognized equivalent under State law or a GED exam or other equivalent State-authorized exam;
  - The program's source and amount of funding; and
  - The program's authorized representative's contact information.

- **An educational or career training program (including vocational training);**

  Such evidence may include, but is not limited to:
  - If accepted for enrollment, but classes have not yet commenced:
    o An acceptance letter on school letterhead from the school registrar/authorized school representative. Such acceptance letter is to include the name and address of the program, a brief description of the program, the duration of the program, and state when the classes are scheduled to commence. The letter is to be accompanied by evidence that the student has registered for the program;
    o A copy of your current year registration (intake form/enrollment form); or
    o Any other relevant documentation.
  - If already attending classes– Current transcripts, report cards, or progress reports showing the name of the school, the time period or semester covered by the document, and if relevant, the current educational or grade level.

- **Literacy training; or**

  Such evidence is to include a letter from the literary program administrator or authorized representative providing information such as:
  - Your name;
  - The date of your enrollment;
  - The duration of the literacy program and the expected completion date; and
  - The program administrator or authorized representative's contact information.

- **An English as a Second Language (ESL) program.**

  Such evidence is to include a letter from the ESL program administrator or authorized representative. This letter is to include the following:
  - Your name;
  - The date of your enrollment;
  - The duration of the ESL program and the expected completion date;
  - The program administrator or authorized representative's contact information.

## DACA 106A – EVIDENCE OF ACCEPTANCE BUT NO EVIDENCE OF REGISTERING FOR CLASSES:

You have provided an acceptance letter or other related material indicating that you have been accepted at [ISO should list the name of the private elementary/junior high/middle school/high school/secondary school or public or private college/university/community college]. However, you did not include evidence that you have enrolled in that school. Therefore, you are requested to submit such evidence which is to include, but is not limited to paid tuition bills or evidence that you have registered for class at that school.

## DACA 106B – LITERACY PROGRAM'S NON-PROFIT STATUS

If the literacy program in which you are enrolled has non-profit status, please provide evidence of such status. Evidence of the literacy program's non-profit status is to include a copy of a valid letter from the Internal Revenue Service confirming exemption from taxation under section 501(c)(3) of the Internal Revenue Service Code of 1986, as amended, or equivalent section of prior code.

**App. 200**

DEF - 00004049

**DACA 106C –PUBLIC FUNDING (GED; Educational or Career Training Program (Including Vocational Training); ESL)**

If the [ISO should insert GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; or English as a Second Language] in which you are enrolled is funded in whole or in part by public funds (Federal, State, county or municipal), you are requested to submit a letter from the [ISO should insert GED program administrator/authorized representative; school registrar/authorized school representative if requestor is enrolled in Career Training Program (Including Vocational Training); literacy program administrator/authorized representative; or ESL program administrator/authorized representative] providing basic details about the funding, such as the source(s) of the funding.

**DACA 106D – PUBLIC FUNDING – (Literacy Program)**

If the literacy program in which you are enrolled is not funded in whole or in part by public funds (Federal, State, county, or municipal) or not administered by a non-profit entity you are requested to submit a letter from the program administrator or authorized representative providing basic details about the funding, such as the amount and the source(s) of the funding.

**DACA 106E – DEMONSTRATED EFFECTIVENESS (GED; Educational or Career Training Program (Including Vocational Training); Literacy Program; ESL)**

(ISO SHOULD SELECT THE CORRECT RFE PARAGRAPH BELOW DEPENDING UPON THE PROGRAM IN WHICH THE REQUESTOR IS ENROLLED)

Your record shows that the **GED/Equivalency program,** in which you are enrolled, is not publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information from the GED program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in assisting students in obtaining a regular high school diploma, GED, or a recognized equivalent certificate, or passing a GED or recognized equivalent exam;
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

Your record shows that the **educational or career training program (including vocational training), in** which you are enrolled, is not publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information, with supporting documentation, if available, from the school registrar/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in placing students in employment, job training, or post-secondary education; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

Your record shows that the **literacy program** in which you are enrolled, is not publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information from the literary program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The duration of the program's existence;
- The program's track record in placing students in post-secondary education, job training programs, or employment; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

**App. 201**

DEF - 00004050

Your record shows that the **English as a Second Language (ESL)** program in which you are enrolled is <u>not</u> publicly funded (Federal, State, county, or municipal) in whole or in part. Therefore, you are requested to submit information from the ESL program administrator/authorized representative relating to the program's demonstrated effectiveness. Such information can include, but is not limited to:

- The length of the program's existence;
- The program's track record in assisting students in obtaining placement in postsecondary schools, job training programs, or employment; and
- Receipt of awards or special achievement or recognition, that indicate the program's overall quality; and/or
- Any other relevant information indicating the program's overall quality.

### DACA 106F– GRADUATED FROM SCHOOL
The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you graduated from school is insufficient (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the documents provided by the requestor are incomplete (i.e. no identifying information) or illegible, the ISO should note this in the RFE. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- A diploma;
- Transcripts showing the date of graduation; or
- A GED certificate, certificate of completion, certificate of attendance, or alternate award from a public or private high school or secondary school.

Documentation sufficient to demonstrate that you obtained a GED includes, but is not limited to, evidence you passed a GED exam, or other comparable State-authorized exam, and, as a result, you received the recognized equivalent of a regular high school diploma under State law.

### DACA 107G – MEDICAL LEAVE
You indicate in your filing that you are currently on medical leave from school. Therefore, you are requested to submit evidence of your medical leave and indicate the date you expect to return to school. Evidence of your medical leave may include, but is not limited to, an explanation from a medical doctor on official letterhead stating the diagnosis and prognosis, and how long your treatment is expected to last.

### DACA 107 - MILITARY
The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to show that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States is insufficient. (ISO should list what evidence was submitted for this guideline and briefly state why the evidence is insufficient. If the requestor did not submit any evidence for this guideline, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- Form DD-214, Certificate of Release or Discharge from Active Duty;
- NGB Form 22, National Guard Report of Separation and Record of Service;
- Military personnel records; or
- Military health records.

### DACA 108- REMOVAL PROCEEDINGS
Submit documents that you have been issued an order of exclusion, deportation or removal. Such documentation could include copies of:

- Any removal, deportation, or exclusion order issued by an Immigration Judge;
- Final decision from the Board of Immigration Appeals (BIA); or
- Final decision from a U.S. Court of Appeals in your case.

**App. 202**

DEF - 00004051

## APPLICATION SUPPORT CENTER (ASC) RELATED

### DACA 130 – SCHEDULE ASC APPOINTMENT
Your request cannot be processed until you have appeared at an Application Support Center (ASC) for the collection of a digital photograph, signature, and fingerprint(s). Our records indicate that you have not yet appeared at an ASC for this purpose. Please schedule an appointment at the ASC nearest you by calling the USCIS National Customer Service Center at 1-800-375-5283 (TTY 1-800-767-1833). You also can find the location of the ASC nearest you on the USCIS web site at www.USCIS.gov.

Once you have scheduled an appointment, or if you have a scheduled appointment, please return this notice to the address below with the appointment information.

Date of Appointment: _____

Location of Appointment: _____

### DACA 131– RESCHEDULE ASC APPOINTMENT (TECHNICAL DIFFICULTIES)
On [**DATE**], USCIS asked you to schedule an appointment at an Application Support Center (ASC) for the collection of a digital photograph, signature and fingerprint(s). In response to that request, you indicated that you already appeared at an ASC as required. However, due to technical problems, your previously-acquired biometrics from the ASC cannot be used.

USCIS will mail a separate notice to you containing information for a new appointment for biometrics capture at the ASC nearest you and listing identity documents that you must bring with you to your ASC appointment. Once you receive that notice, additional information regarding the location of the ASC can be found on the USCIS web site at www.USCIS.gov. Please bring this notice with you to your appointment.

Once you have provided your biometrics to the ASC, respond to this request with evidence of your attendance of the ASC appointment. Such evidence typically consists of a copy of your appointment notice, bearing a stamp from the ASC technician. Along with the evidence of your appointment, please include all other evidence requested in this notice.

We sincerely regret any inconvenience this has caused you.

## NAME, DATE OF BIRTH DISCREPANCY

### DACA 140 – DATE OF BIRTH DISCREPANCY
USCIS records indicate that you were born on [**DATE**]. You indicated on your request for consideration of deferred action for childhood arrivals that you were born on [**DATE**]. Submit documentary evidence to establish your true date of birth. Such evidence may include your birth certificate and/or passport. If you submit a copy of your birth certificate, you must submit copies of the front and back (if there is information on the back).

### DACA 142 – NAME CHANGE/DISCREPANCY
USCIS records and/or evidence you submitted indicate that your name is [**NAME**]. You indicated on your request for consideration of deferred action for childhood arrivals that your name is [**NAME**]. Submit documentary evidence to establish your true name. Such evidence may include a birth certificate, adoption records, marriage certificate, passport, or government documentation showing that you have officially changed your name.

### DACA143 – SUBMIT EVIDENCE OF NAME CHANGE
Submit proof of your name change. Such proof would normally be a marriage certificate, termination of marriage (divorce or annulment decree), adoption decree, or court order.

**App. 203**

DEF - 00004052

# FINGERPRINTING / CRIMINALITY

### DACA 150 – 2 UNCLASSIFIABLE PRINTS – SUBMIT LOCAL POLICE CLEARANCES

To date, you have been fingerprinted twice and USCIS has been unable to get a required clearance for you because both sets of fingerprints were rejected as unclassifiable by the Federal Bureau of Investigation. Instead of a fingerprint clearance, you must submit a local police clearance certificate for each jurisdiction (city, town, county, or municipality) in which you have lived for six months or more within the past five years.

**Please note**: The police clearance certificate(s) must be researched by name and date of birth. You must supply the law enforcement agency with all aliases you have used, including maiden name, if applicable. Fingerprint cards are not acceptable evidence of a police clearance certificate.

If any record indicates that you have been arrested, you must provide documentation of each of the following:

    a. The final disposition (your sentence, probation, dismissal, etc.) of **every** charge against you. The charge and disposition must be specifically identified (not merely numeric citations or codes).

    b. If you were convicted of **any** charge, you must also provide evidence showing whether the charge for which you were convicted was classified as a **felony or misdemeanor**. You may submit a copy of the pertinent statute, sentencing guidelines, and/or statement from the court clerk or police department for this purpose.

Along with the above information, you must also answer the following questions. You should respond on this notice and sign your name where it asks for your signature. If more space is needed, you may respond to the following questions on separate sheet(s) of paper. Please sign every separate sheet of paper.

    1) Have you ever been arrested or detained by a law enforcement officer? If yes, please explain.

        Answer: _____

        _____

    2) Have you had your fingerprints taken for any reason by a law enforcement officer for a criminal offense? If yes, please explain.

        Answer: _____

        _____

    3) Have you been issued a ticket or been taken into custody by a law enforcement officer? If yes, please explain.

        Answer: _____

        _____

    4) Have you ever been ordered by a court to: pay a fine; serve a probationary sentence; perform community service; make restitution; or have your wages garnished (e.g., for failure to make child support payments)? If yes, please explain.

        Answer: _____

        _____

**App. 204**

DEF - 00004053

5) Have you ever received an expungement, parole, pardon, or successfully completed a diversion or rehabilitation program? If yes, please explain.

Answer: _____

_____

I certify, under penalties of perjury under the laws of the United States of America, that the foregoing is true and correct. Furthermore, I authorize the release from my records that USCIS needs to determine my eligibility for deferred action of childhood arrivals.

Signature of Requestor: _____

## DACA 151– SUBMIT JUDGMENT AND CONVICTION DOCUMENTS

A criminal history check has been conducted based upon the fingerprints you provided at the Application Support Center. Your criminal history check has revealed that you were arrested on [**DATE**], in [**JURISDICTION**] and charged with [**CHARGES**].
**(WHERE APPROPRIATE, SERVICE CENTER MAY ALSO NEED TO INCLUDE THE NAME UNDER WHICH THE ARREST TOOK PLACE IF DIFFERENT FROM NAME BEING USED BY REQUESTOR ON FORM I-821D. IF THERE ARE MULTIPLE CHARGES, YOU MAY BULLET EACH CHARGE.)**

You must provide certified judgment and conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above. The certified judgment and conviction documents must address the following:

    a. The final disposition (e.g., your sentence, probation, dismissal, etc.) of every charge against you. The charge and disposition must be specifically identified (not just numeric citations or codes).

    b. If you were convicted, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony, misdemeanor or other type of offense. Please submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

## I-821D PART 3 INCOMPLETE

### DACA 155 – FORM I-821D INCOMPLETE

You did not answer question(s) (ISO should list the question numbers in Part 3 of the Form I-821D that the requestor did not answer) in Part 3 of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to answer these question(s) on the enclosed copy of your original Form I-821D.

As stated in the instructions on Part 3 of the Form I-821D, if any of the questions apply to you, please describe the circumstances and include a full explanation in Part 7 of the Form I-821D. Re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D with the RFE)

**App. 205**

# I-821D PART 3, CRIMINAL, NATIONAL SECURITY
## AND PUBLIC SAFETY INFORMATION
## AFFIRMATIVE RESPONSES
## POSSIBLE INELIGIBILITY ISSUES

**DACA 160 – ANSWERED "YES" to QUESTION 1 AND 2 IN PART 3 –DOCUMENTS NEEDED AND EXPLANATION**

On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question(s) in Part 3, Criminal, National Security and Public Safety Information: **DELETE THOSE THAT DON'T APPLY**

> **1. Have you been arrested for, charged with, or convicted of a felony or misdemeanor in the United States?**

> **2. Have you been arrested for, charged with, or convicted of any crime in any country other than the United States?**

You did not provide a full explanation in Part 7 of your Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D. Therefore, please provide a full explanation describing the circumstances. **DELETE IF AN EXPLANATION WAS PROVIDED**

You must provide certified judgment and conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above. The certified judgment and conviction documents must address the following:

> a. The final disposition (*e.g.*, your sentence, probation, dismissal, etc.) of every charge against you. The charge and disposition must be specifically identified (not just numeric citations or codes).

> b. If you were convicted, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony, misdemeanor, or some other type of offense. You may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

**DACA 161 – ANSWERED "YES" TO QUESTION 3 IN PART 3 – SUBMIT EXPLANATION**

On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question in Part 3, Criminal, National Security and Public Safety Information:

> **3. Have you ever engaged in or do you continue to engage in or plan to engage in terrorist activities?**

You did not provide a full explanation in Part 7 of your Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D.

Please provide a full and complete explanation of the terrorist activities you have ever engaged in, continue to engage in, or plan to engage in. Your explanation should include:

> Whether other people were engaged in terrorist activities with you;
> The names of the other people with whom you engaged in terrorists activities;
> The role you played in terrorist activities;
> The role that others played in terrorist activities;
> Whether you planned or actually carried out the terrorist activities;
> Whether you engaged in, continued to engage, or planned to engage in terrorist activities in the United States or abroad; and
> Describe the type of terrorist activities you engaged in, continue to engage in, or plan to engage in.

**App. 206**

DEF - 00004055

**DACA 162 – ANSWERED "YES" TO QUESTION 4 IN PART 3 – SUBMIT EXPLANATION**
On your Consideration of Deferred Action for Childhood Arrivals (Form I-821D), you checked "Yes" to the following question in Part 3, Criminal, National Security and Public Safety Information:

**4. Are you now or have you ever been a member of a gang?**

You did not provide a full explanation in Part 7 of the Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D.

Please provide a full and complete explanation of your gang membership, including:

When you joined the gang(s);
How long you were a member of the gang(s);
The name of the gang(s); and
The criminal activities you participated in with the gang(s).

**DACA163 – ANSWERED "YES" TO QUESTIONS 5a. 5b, 5c, AND 5d IN PART 3– SUBMIT EXPLANATION**
On your Request for Deferred Action for Childhood Arrivals (Form I-821D) you checked "Yes" to the following question(s) in Part 3, Criminal, National Security and Public Safety Information: **DELETE THOSE THAT DON'T APPLY**

**5. Have you EVER engaged in, ordered, incited, assisted, or otherwise participated in any of the following:**
**a. acts involving torture, genocide, or human trafficking?**
**b. killing any person?**
**c. severely injuring a person?**
**d. any kind of sexual contact or relations with any person who was being forced or threatened?**

You did not provide a full explanation in Part 7 of the Form I-821D describing the circumstances, as requested in the instructions on Part 3 of the Form I-821D.

Please provide a full and complete explanation describing your participation in activities involving torture, genocide, human trafficking, killing any person, severely injuring any person, or any sexual contact or relations with any person who was being forced or threatened.

# I-821D PART 3, CRIMINAL, NATIONAL SECURITY AND PUBLIC SAFETY INFORMATION

**DACA 170– ANSWERED "NO" TO QUESTIONS 1 AND 2 IN PART 3– USCIS FOUND CLEAR CHARGES OR OTHER DEROGATORY INFORMATION, SUBMIT JUDGMENT AND CONVICTION DOCUMENTS**
A background check has been conducted based upon the fingerprints you provided at the Application Support Center. Your background check revealed that you were arrested on [**DATE**], in [**JURISDICTION**] and charged with [**CHARGES**].
**(WHERE APPROPRIATE, YOU MAY ALSO NEED TO INCLUDE THE NAME UNDER WHICH THE ARREST TOOK PLACE IF DIFFERENT FROM NAME BEING USED BY THE REQUESTOR ON FORM I-821D. IF THERE ARE MULTIPLE CHARGES, YOU MAY BULLET EACH CHARGE.)**

You must provide certified judgment and/or conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above. The certified judgment and conviction documents must address the following:

   a. The final disposition (your sentence, probation, dismissal, etc.) of every charge against you.
      The charge and disposition must be specifically identified (not just numeric citations or codes).

**App. 207**

b. If you were convicted, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony or misdemeanor. You may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

### DACA 171– ANSWERED "NO" TO QUESTIONS 1 AND 2 IN PART 3 - CRIMINAL ACTIVITY UNCLEAR TO USCIS, SUBMIT JUDGMENT AND CONVICTION DOCUMENTS

Based on a review of your case, it appears that you have some type of criminal record/interaction with law enforcement authorities. It appears that on [**DATE**] the following occurred:

[**PROVIDE EXPLANATION OF FINDINGS, TO INCLUDE NAME OF POLICE DEPT. IF APPLICABLE, CHARGES IF APPLICABLE, ETC. NOTE:** LE

LE

**(WHERE APPROPRIATE, YOU MAY ALSO NEED TO INCLUDE THE NAME UNDER WHICH THE ARREST TOOK PLACE IF DIFFERENT FROM NAME BEING USED BY THE REQUESTOR ON FORM I-821D. IF THERE ARE MULTIPLE INTERACTIONS, YOU MAY BULLET EACH INTERACTION.)**

Submit a statement explaining the results of this interaction with law enforcement authorities. You must provide certified judgment and conviction documents from the court(s) for all of your arrests, including but not limited to, the charges listed above. The certified judgment and conviction documents must address the following:

a. The final disposition (your sentence, probation, dismissal, etc.) of every charge against you. The charge and disposition must be specifically identified (not just numeric citations or codes).

b. If you were convicted of any charge, you must also provide evidence showing whether the charge for which you were convicted was classified as a felony or misdemeanor. You may submit a copy of the pertinent statute, sentencing guide, or statement from the court clerk or police department for this purpose.

If you fail to submit such evidence, USCIS may deny your request for consideration of deferred action for childhood arrivals.

### DACA 172– ANSWERED "NO" TO QUESTIONS 3, 4, 5a. 5b, 5c, AND 5d IN PART 3 – USCIS DISCOVERED UNCLEAR INFORMATION, SUBMIT EXPLANATION

Based on a review of your case, the following was discovered: **DELETE THOSE THAT DON'T APPLY**

3. you engaged in or do you continue to engage or plan to engage in terrorist activities?

4. you are now or have been a member of gang?

5. you engaged in, ordered, incited, assisted, or otherwise participated in any of the following:
   a. acts involving torture, genocide, or human trafficking?
   b. killing any person?
   c. severely injuring a person?
   d. any kind of sexual contact or relations with any person who was being forced or threatened?

[**PROVIDE EXPLANATION OF FINDINGS. THIS CAN INCLUDE WHERE THE INFORMATION WAS FOUND IF IT IS KNOWLEDGE THAT CAN BE SHARED WITH THE REQUESTOR. NOTE: DO NOT INFORM THE REQUESTOR WHERE THE INFORMATION CAME FROM SYSTEMS THAT ARE NOT OUR RECORDS (EX. IBIS).]**

**App. 208**

DEF - 00004057

Therefore, you must submit a statement explaining and/or refuting the information/circumstances found in USCIS records. Please note that if you refute the above information, and USCIS later receives information that the above does relate to you, USCIS may terminate deferred action and you may be barred from other immigration benefits.

## FORM I-765

### DACA 180 – FAILURE TO SUBMIT OR COMPLETE FORM I-765WS
USCIS is unable to complete your Form I-765, Application for Employment Authorization because you failed to submit or complete the Form I-765WS. Please complete the worksheet and return it to the address provided within the specified time.

### DACA 190 – SUBMIT PASSPORT PHOTOS
Please submit **two (2)** passport-style **color** photo(s) of [**NAME**] taken within 30 days of the date of this notice, which conform(s) to the specifications below. Using a pencil or felt pen, lightly print name (and Alien Registration Number, if known) on the back of each photograph.

Please do not staple through any part of the photo(s). Enclose the photo(s) in a plastic or paper envelope and staple the envelope to this notice when returning it to this office.

Passport-style photos must be 2 inches by 2 inches:
- Frame subject with full face, front view, eyes open.
- Make sure photo presents full head from top of hair to bottom of chin; height of head should measure 1 inch to 1 3/8 inch (25 mm to 35 mm).
- Center head within frame.
- Make sure eye level is between 1 1/8 inch and 1 3/8 inch (28 mm and 35 mm) from bottom of photo.
- Photograph subject against a plain white or off-white background.
- Position subject and lighting so that there are no distracting shadows on the face or background.
- Encourage subject to have a natural expression.
- Include headpieces if worn daily for religious purposes; they should not obscure or cast shadows on the eyes or any other part of the face.

For more information on photo requirements, please see the Department of State website at: http://www.travel.state.gov/passport/pptphotos/index.html, or contact the USCIS National Customer Service Center at 1-800-375-5283.

## FORM 131

### DACA 200 – PROOF OF DACA
To be considered for advance parole you must submit evidence to establish that you have been granted deferred action for childhood arrivals. Submit a copy of the approval notice issued by USCIS for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals.

### DACA 201 – PROOF OF EDUCATIONAL NEED
In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individuals granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes. You claim that you need to travel abroad for education purposes. Examples of travel abroad for education purposes include study abroad programs, school-sponsored trips abroad, or travel necessary to conduct academic research.

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for education purposes is insufficient. (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support

**App. 209**

DEF - 00004058

his/her need to travel abroad for educational purposes, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- A letter from the educational institution, or from an employee of the institution acting in his or her official capacity, describing the purpose of the travel, or documentation showing enrollment in a specific program or class coupled with documentary evidence showing that you will benefit from, or are required to travel for the specific program or class; or

**NOTE**: Travel during an academic year unrelated to academics (i.e., a vacation) is insufficient to qualify as an educational purpose.

(ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events)

## DACA 202 – PROOF OF HUMANITARIAN NEED
In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individuals granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes.  You claim that you need to travel abroad for humanitarian reasons.  Examples of travel abroad for humanitarian reasons include medical reasons, to visit a family member, or to attend funeral services for a family member.

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for humanitarian purposes is insufficient. (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support his/her need to travel abroad for humanitarian, modify RFE call up accordingly).  You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- An explanation from a medical doctor on official letterhead stating the diagnosis and prognosis, and how long the treatment is expected to last;
- Information on the reasons why you cannot obtain treatment in the United States;
- An explanation from a medical doctor on official letterhead stating the diagnosis and prognosis of the family member's condition; or
- A death certificate or newspaper obituary of the family member or other document evidencing the death of the family member.

(ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events)

## DACA 203 – PROOF OF EMPLOYMENT NEED
In accordance with the discretionary authority provided in section 212(d)(5)(A) of the Act, grants of advance parole to individual granted deferred action for childhood arrivals may be made based on the need to travel abroad for educational, employment, or humanitarian purposes. You claim that you need to travel abroad for employment purposes.  Examples of travel abroad for employment purposes include: pursuit of a position in the United States with a foreign employer;
an overseas assignment, interview, conference, or training; a meeting with overseas clients or others with whom you interact professionally; or a trip to cultivate business or sales overseas  or any other overseas trip taken in furtherance of the applicant's professional responsibilities.

**App. 210**

DEF - 00004059

The evidence you submitted with your Form I-131, Application for Travel Document, to establish your need to travel abroad for employment purposes is insufficient.  (ISO should list what evidence was submitted and briefly state why the evidence is insufficient. If the requestor did not submit any evidence to support his/her need to travel abroad for employment purposes, modify RFE call up accordingly). You may still submit evidence, which may include, but is not limited to, copies of: (ISO should delete any of the following that were already provided by the requestor)

- A letter on official letterhead from your employer describing the need for your travel; or
- A document showing a specific employment need, such as a conference program, that also shows your participation.

(ISO: If the applicant did not establish the dates of travel, please include in the RFE as advance parole is valid for the duration of the event, as documented in the advance parole application.  For multiple events, the advance parole is valid for the duration of all the documented events)


## ASSORTED OTHERS

### DACA 300 – FOREIGN LANGUAGE DOCUMENT MUST BE ACCOMPANIED BY AN ENGLISH TRANSLATION
If you submit a document in any language other than English, it must be **completely** translated word-for-word.  The translator must certify that the translation is accurate and that he or she is competent to translate.  Note:  You must submit the requested foreign language document along with the translation.

### DACA 301– YOU MAY SUBMIT PHOTOCOPIES
You may submit either the original documents or legible photocopies of the originals, including copies of the front and back of each document.  If you choose to submit original documents, they will not be returned to you. [**NOT FOR USE WHEN USCIS IS REQUESTING ORIGINAL DOCUMENTS**.]

### DACA 302– AFFIDAVITS
Affidavits can support two of the DACA guidelines:
- Brief, casual, and innocent departures during the five years of required continuous presence in the United States: and
- Any minor gap in the five year continuous residence requirement.

In support of your DACA request, you submitted affidavits, but you did not indicate that:
- primary and secondary evidence cannot be obtained; and
- what effort you undertook to obtain that evidence.

Therefore, you are requested to provide the following:
- A written statement from the appropriate issuing authority attesting to the fact that no record exists or can be located, or that the record sought was part of some segment of records which were lost or destroyed; or
- Evidence (such as an affidavit) "that repeated good faith attempts were made to obtain the required document or record."

**App. 211**

DEF - 00004060

**DACA 303 – SIGNATURE ON FORM I-821D**

As stated in the Form I-821D instructions, each request must be properly signed. Part 4 of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals is not properly signed because (ISO should indicate why the form was incorrectly signed. For example, the preparer signed Part 4 instead of Part 5 of the form or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 4) Therefore, your original Form I-821D is enclosed so that you can sign and date Part 4, 2.a. and 2.b. of your Form I-821D. Please note that a photocopy of a signed request or a typewritten name in place of a signature is not acceptable. Please attach your properly signed Form I-821D to this Request for Evidence and return to the address listed on this notice.

(Include a copy of the requestor's Form I-821D with the RFE)

**DACA 304 – Form I-821D Missing Page(s)**

You did not submit page (ISO should list the missing page number(s)) with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Therefore, you are requested to complete the enclosed page (ISO should list the missing page number(s)) of the form.

Also enclosed is a copy of your original Form I-821D. Please re-sign and date page four (4) of the completed form; the completed form must contain a new original signature. Attach your completed Form I-821D to this Request for Evidence and send to the address as listed on this notice.

(Include a copy of the requestor's Form I-821D and the blank missing page(s) of the form with the RFE)

# ACKNOWLEDGEMENT OF WITHDRAWAL

**DACA Acknowledgement of Withdrawal**

On **[DATE]** you filed a request for deferred action under the Secretary of Homeland Security's June 15, 2012, directive concerning Deferred Action for Childhood Arrivals. The complete DACA package included Form I-821D, Consideration of Deferred Action for Childhood Arrivals, a Form I-765, Application for Employment Authorization, and a Form I-765WS, Form I-765 Worksheet, together with the required filing fee ("DACA Package").

On **[DATE]**, you withdrew your DACA Package. This withdrawal applies equally to the Form I-821D, the Form I-765, and the Form I-765WS.

USCIS hereby acknowledges your withdrawal of your DACA Package. Your withdrawal terminates each separate request that is part of your DACA Package. USCIS will not take any further action on your Form I-821D or the related Form I-765. The filing fee is not refundable.

This acknowledgement of your withdrawal of your DACA Package is not a "decision" that is subject to administrative appeal or to the filing of a motion to reopen/reconsider. However, if you later believe you are eligible and wish to request Consideration of Deferred Action for Childhood Arrivals, you may file a new Form I-821D concurrently with a new Form I-765 and Form I-765WS, with a new fee.

**App. 212**

DEF - 00004061

# Appendix E

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS
# NOIDs

NOTE 1: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input. The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or choose the appropriate information from choices and delete the information that does not apply.

NOTE 2: Each NOID call-up is labeled as follows:

- INITIAL DACA ONLY or;
- RENEWAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the NOID call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

**DACA 400A -NOTICE OF INTENT TO DENY – DEPARTURE NOT BCI – UNDER VOLUNTARY DEPARTURE OR FINAL EXCLUSION, DEPORTATION, OR REMOVAL ORDER (INITIAL DACA ONLY)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007. A brief, casual, and innocent departure from the United States does not meaningfully disrupt the period of continuous residence. A departure is deemed to be brief, casual, and innocent if it occurred before August 15, 2012 and:

(1) It was short and reasonably calculated to accomplish the purpose of the absence;
(2) It was not the result of an order of exclusion, deportation, or removal;
(3) It was not because of an order of voluntary departure, or an administrative grant of voluntary departure before the requestor was placed in exclusion, deportation, or removal proceedings; and
(4) Its purpose or the actions taken while outside of the United States were not contrary to law.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date; this date should be before 8/15/2012]*. It also appears that, at the time of your departure,
*[INSERT WHICHEVER IS APPROPRIATE: you departed under an order of voluntary departure; you departed under an administrative grant of voluntary departure prior to the commencement of removal proceedings; your departure was the result of an order of exclusion, deportation, or removal (including an order of voluntary departure that converted automatically to a*

Page 1  5/27/2015

**App. 213**

DEF - 00004948

*final order of exclusion, deportation or removal; your departure was not short and reasonably calculated to accomplish the purpose of the absence; your departure was for a purpose or the actions taken while outside of the United States were contrary to law ).]* Because such a departure is not brief, casual, or innocent, you have not established that you have resided continuously in the United States since at least June 15, 2007.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

### DACA 400B -NOTICE OF INTENT TO DENY – DISQUALIFYING INTERNATIONAL TRAVEL ON OR AFTER 8/15/2012 AND BEFORE USCIS HAS MADE A DACA DETERMINATION (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since June 15, 2007. Continuous residence is disrupted if you travelled outside the United States on or after August 15, 2012 and before USCIS has determined whether to defer action in your case.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12].* Because your departure occurred on or after August 15, 2012, but before USCIS had determined whether to defer action in your case, you have not established that you may be considered for deferred action under this process.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

### DACA 400C -NOTICE OF INTENT TO DENY – DISQUALIFYING INTERNATIONAL TRAVEL ON OR AFTER 8/15/2012 WITHOUT ADVANCE PAROLE AND BEFORE USCIS HAS MADE A DACA RENEWAL DETERMINATION (RENEWAL DACA ONLY)

USCIS has reviewed your renewal request for consideration of deferred action for childhood arrivals.

In order to be considered for a renewal of deferred action as a childhood arrival, you are to demonstrate that you have been residing continuously in the United States since the date you submitted your most recent, *approved* request for DACA until the date of filing your Renewal request. Continuous residence is disrupted if you travelled outside the United States on or after August 15, 2012 without advance parole.

According to the information provided with your renewal request, and/or based on information obtained during routine systems checks, it appears that you departed the United States on or about *[insert date – this date should be on or after 8/15/12].* Your departure occurred on or after August 15, 2012. USCIS

Page 2  5/27/2015

**App. 214**

records do not show that you were issued advance parole for the period of time you were outside the United States. [*ISO should list what evidence was submitted or provide the dates in which travel was not covered under the approved advance parole, and briefly state why the evidence is insufficient.*] Therefore, you have not established that you may be considered for a renewal of deferred action under this process.

Accordingly, USCIS intends to deny your request for consideration of a renewal of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your renewal request for consideration of deferred action for childhood arrivals.

## DACA 401 NOTICE OF INTENT TO DENY – DRIVING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

Driving under the influence of alcohol or drugs constitutes a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

Page 3  5/27/2015

**App. 215**

DEF - 00004950

## DACA 402 NOTICE OF INTENT TO DENY – DOMESTIC VIOLENCE (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

An offense of domestic violence constitutes a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 403 NOTICE OF INTENT TO DENY – BURGLARY (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

Page 4   5/27/2015

**App. 216**

DEF - 00004951

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

Burglary constitutes a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 404 NOTICE OF INTENT TO DENY –NO ENTRY BEFORE 16 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you came to the United States before reaching your 16th birthday.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially entered the United States when you were [*insert age*] years old. On [*insert date Form I-821D received*], you submitted Form I-821D, Consideration of Deferred Action for Childhood Arrivals. You indicated on your Form I-821D that you were born on [*insert date of birth*], and that your initial entry into the United States was on [*insert date of entry*]. Your date of birth is supported by your [*identify the document (e.g. birth certificate, passport, etc.) that establishes the requestor's DOB*], and you did not submit evidence that you entered the United States before reaching the age of 16.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to

**App. 217**

Confidential

DEF - 00004952

submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 405 NOTICE OF INTENT TO DENY –STUDENT IN LAWFUL STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and based on information obtained during routine systems checks, your current F-1 nonimmigrant status is active in Student & Exchange Visitor Information System (SEVIS). [*Identify other facts e.g., Employment Authorization Card validity date*]. Based on these facts, USCIS has determined that you were not in an unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 406 NOTICE OF INTENT TO DENY –ARRIVED AFTER JUNE 15, 2007 (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have continuously resided in the United States since June 15, 2007.

According to the information you provided with your request, and/or based on information obtained during routine systems checks, it appears that you initially arrived in the United States on or about [*insert date of initial entry*].

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

Confidential

DEF - 00004953

**DACA 407 NOTICE OF INTENT TO DENY – NOT IN SCHOOL (INITIAL DACA ONLY)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

On your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, you indicated that you are currently in school. However, according to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you are not currently enrolled in school. [*Insert specific information; e.g., official transcripts showing enrollment status as "Removed for Lack of Attendance" or school enrollment history listing requestor as a "No Show".*]

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 408 NOTICE OF INTENT TO DENY – NONIMMIGRANT STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you entered the United States on [*Date*] as [*insert nonimmigrant classification. For example,* "an E-2 Nonimmigrant Treaty Investor or as the spouse or child of a Nonimmigrant Treaty Investor"]. It appears that your lawful immigration status [*insert "is" or "was" depending if still in status*] valid until [*Date*], and therefore had not expired before June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

Confidential

**DACA 409 NOTICE OF INTENT TO DENY – TEMPORARY PROTECTED STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you were in unlawful immigration status as of June 15, 2012. For deferred action for childhood arrivals, the phrase "in unlawful immigration status as of June 15, 2012" means that you never had a lawful immigration status on or before June 15, 2012, or any lawful immigration status or parole that you obtained prior to June 15, 2012, had expired before June 15, 2012.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you had Temporary Protected Status (TPS) on June 15, 2012. USCIS has no record that your status as a TPS beneficiary was withdrawn or terminated before June 15, 2012, therefore it appears you were not in unlawful status on June 15, 2012.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**DACA 410 NOTICE OF INTENT TO DENY – MULTIPLE MISDEMEANORS (BOTH INITIAL AND RENEWAL DACA)**

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.
According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have multiple criminal convictions.

The court dispositions that you submitted indicate that you were convicted on:

- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]
- [Insert date of conviction, court name, city/state, crime, and statute]

You have been convicted of three or more non-significant misdemeanors. For the purposes of the DACA process, a "non-significant misdemeanor" is any misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and that meets the following criteria:

- Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and

- Is one for which the individual was sentenced to time in custody of 90 days or less.

Page 8   5/27/2015

**App. 220**

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 411 NOTICE OF INTENT TO DENY – FELONY CONVICTION (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a criminal conviction.

The court disposition indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

[*Explain why the offense is a felony under federal law. For example,* "Possession of drug paraphernalia is classified as a Class 6 felony under Arizona law, with a maximum term of imprisonment of 1.5 years. *See* A.R.S. §§ 13-702(D), 13-3415."]

For the purposes of the DACA process, a felony is a federal, state, or local criminal offense for which the maximum term of imprisonment authorized is for a period of more than one year. See www.uscis.gov/childhoodarrivals. Therefore, the offense is a felony for purposes of deferred action for childhood arrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

**App. 221**

Confidential

DEF - 00004956

## DACA 412 NOTICE OF INTENT TO DENY – JUVENILE DELINQUENCY (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you warrant the favorable exercise of prosecutorial discretion.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have a record of juvenile delinquency.

The record indicates that you committed the following offense(s) as a minor.

- On [*date offense committed*], at the age of [*age at time of offense*] you committed [*charge*], in violation of [*statute*]. Your case was adjudicated as a juvenile delinquency at [*juvenile court, city/state*].

While a finding of juvenile delinquency is not considered a criminal conviction for purposes of deferred action, given the seriousness of your offense, USCIS has determined that you do not merit a favorable exercise of discretion. Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 413 NOTICE OF INTENT TO DENY – SIGNIFICANT MISDEMEANOR (BOTH INITIAL AND RENEWAL DACA)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, you are to demonstrate that you have not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and you do not otherwise pose a threat to national security or public safety.

According to the information provided with your request, and/or based on information obtained during routine systems checks, it appears that you have [a criminal conviction/multiple criminal convictions].

The court disposition that you submitted indicates that you were convicted on:

[*Insert date of conviction, court name, city/state, crime, and statute*]

Your conviction(s) for [*Insert crime*] constitute(s) a significant misdemeanor. For the purposes of the DACA process, a significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five

Page 10   5/27/2015

**App. 222**

days) and that meets the following criteria:

- Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or,

- If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence.

The time in custody does not include any time served beyond the sentence for the criminal offense based on a state or local law enforcement agency honoring a detainer issued by U.S. Immigration and Customs Enforcement (ICE). See www.uscis.gov/childhoodarrivals.

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You are afforded thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

## DACA 414 NOTICE OF INTENT TO DENY – SUSPECTED FRAUD IN MEETING THE DACA GUIDELINES (INITIAL DACA ONLY)

USCIS has reviewed your request for consideration of deferred action for childhood arrivals.

In order to be considered for deferred action as a childhood arrival, among other guidelines, you must also demonstrate that you **[INSERT WHICHEVER IS APPROPRIATE FROM THE LIST BELOW; MORE THAN ONE GUIDELINE MAY BE INSERTED]**

*(1) were under the age of 31 as of June 15, 2012;*
*(2) came to the United States before reaching your 16th birthday;*
*(3) have been residing continuously in the United States since June 15, 2007, up to the present time.;*
*(4) were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;*
*(5) are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;*

The evidence you submitted with your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to establish that you **[INSERT ALL APPROPRIATE GUIDELINES FROM THE LIST BELOW]** is insufficient.

*(1) were under the age of 31 as of June 15, 2012;*
*(2) came to the United States and established residence before reaching your 16th birthday;*
*(3) have been residing continuously in the United States during the 5-year period immediately before June 15, 2012, and up to the time of filing;*
*(4) were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;*

Page 11   5/27/2015

**App. 223**

Confidential   DEF - 00004958

(5) Select one of the following:
- are currently in school;
- have graduated or obtained a certificate of completion from high school;
- have obtained a General Educational Development (GED) certificate;
- are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States

USCIS finds that the evidence you provided to demonstrate **[INSERT ALL APPROPRIATE CRITERIA FROM THE LIST BELOW]** is not credible.

(1) that you were under the age of 31 as of June 15, 2012;
(2) that you came to the United States and established residence before reaching your 16th birthday;
(3) continuous residency for the year(s) XXXX
(4) that you were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;
(5) Select one of the following:
- that you are currently in school;
- that you have graduated or obtained a certificate of completion from high school;
- that you have obtained a General Educational Development (GED) certificate;
- that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States

*[ISO should insert the appropriate facts of the case to include the documentation in question, any irregularities discovered, and finally how this information was vetted and determined to be factually inaccurate or lacking in credibility (e.g. USCIS contacted the company/owner of the document to verify the correct information, etc.)]*

Therefore, USCIS finds that the record lacks sufficient evidence to demonstrate **[INSERT WHICHEVER GUIDELINE(S) IS/ARE APPROPRIATE FROM THE LIST BELOW]**

(1) that you were under the age of 31 as of June 15, 2012.;
(2) that you came to the United States before reaching your 16th birthday.;
(3) your presence in the United States during the year(s) XXXX;
(4) that you were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS.;
(5) Select one of the following:
- that you are currently in school;
- that you have graduated or obtained a certificate of completion from high school;
- that you have obtained a General Educational Development (GED) certificate;
- that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States

You may still submit evidence to address these irregularities and to establish that the **[INSERT DOCUMENTATION IN QUESTION** *(e.g. utility bill, rent receipt, diploma, etc.* is/are *)]* legitimate.

**App. 224**

Confidential                    DEF - 00004959

Accordingly, USCIS intends to deny your request for consideration of deferred action for childhood arrivals. You have thirty-three (33) days from the date of this notice of intent to deny to submit additional information, evidence, or arguments overcoming the grounds for the intended denial. Failure to respond to this notice of intent to deny will result in the denial of your request for consideration of deferred action for childhood arrivals.

In addition, USCIS reminds you that it is a violation of federal law (18 U.S.C. sec. 1001) if you knowingly and willingly submit materially false information in support of your request for DACA, and you may be fined, imprisoned up to five years, or both. In addition, you may be placed in removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

Page 13   5/27/2015

**App. 225**

# APPENDIX F

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS DENIAL CALL-UPS

NOTE: Each denial call-up is labeled as follows:

- INITIAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the denial call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

## DACA 500 -NOTICE OF DENIAL –AGE (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

At the time of filing your request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 502 -NOTICE OF DENIAL – ENTRY AT 16 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you came to the United States before you turned sixteen (16) years old and established residence at that time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Page 1   12/1/2014

**App. 226**

**DACA 503 -NOTICE OF DENIAL – UNDER 31 ON JUNE 15, 2012 (INITIAL DACA)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were under age 31 on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**DACA 504 -NOTICE OF DENIAL – CONTINUOUS RESIDENCE (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you have continuously resided in the Unites States since June 15, 2007, until the date of filing your request.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**DACA 505 -NOTICE OF DENIAL – BCI (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

During your period of residence in the United States, you had one or more absences that did not qualify as "brief, casual, and innocent."

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**App. 227**

Confidential

DEF - 00004979

## DACA 506 -NOTICE OF DENIAL – PHYSICAL PRESENCE ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were present in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 507 -NOTICE OF DENIAL – NO LAWFUL IMMIGRATION STATUS ON JUNE 15, 2012 (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you were in an unlawful immigration status in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 508 -NOTICE OF DENIAL –EDUCATIONAL GUIDELINE (INITIAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that, at the time of filing your request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an

**App. 228**

Confidential                              DEF - 00004980

act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 509 -NOTICE OF DENIAL – FELONY OR SIGNIFICANT MISDEMEANOR (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have been convicted of a felony or a significant misdemeanor.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 510 -NOTICE OF DENIAL – THREE OR MORE MISDEMEANORS (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have been convicted of three or more misdemeanors.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 511 -NOTICE OF DENIAL – DISCRETIONARY (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you warrant a favorable exercise of prosecutorial discretion.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an

**App. 229**

Confidential                    DEF - 00004981

act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 512 -NOTICE OF DENIAL – NON-PAYMENT OF FEES (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 513 -NOTICE OF DENIAL – NO SHOW (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 514 -NOTICE OF DENIAL – NO RESPONSE TO RFE OR NOID (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

Page 5   12/1/2014

**App. 230**

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 515 -NOTICE OF DENIAL – ABANDONMENT (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have abandoned your Form I-821D, Consideration of Deferred Action for Childhood Arrivals because you departed the United States while the form was pending.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 516 -NOTICE OF DENIAL – DISQUALIFYING INTERNATIONAL TRAVEL – TRAVEL WITHOUT ADVANCE PAROLE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You departed the United States on or after August 15, 2012 without advance parole.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 517 -NOTICE OF DENIAL – DISQUALIFYING INTERNATIONAL TRAVEL – REMAINED OUTSIDE OF THE US BEYOND THE VALIDITY PERIOD OF ADVANCE PAROLE DOCUMENT (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

Page 6    12/1/2014

**App. 231**

Confidential                    DEF - 00004983

USCIS records show you remained outside of the United States beyond the validity period of your advance parole document.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

### DACA 518 -NOTICE OF DENIAL – CONTINUOUS RESIDENCE SINCE THE MOST RECENT DACA REQUEST (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

You have not established that you have continuously resided in the United States since you submitted your most recent request for DACA that was approved.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

### DACA 519 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR - AGE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. At the time of filing your initial/most recent request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**App. 232**

Confidential

DEF - 00004984

## DACA 520 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – ENTRY AT 16 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.  You did not establish that you came to the United States before you turned sixteen (16) years old and established residence at that time.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 521 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – UNDER 31 ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.  You did not establish that you were under age 31 on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 522 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – CONTINUOUS RESIDENCE SINCE JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error.  You did not establish that you continuously resided in the United States since June 15, 2007, until the date of filing your initial/most recent request.

**App. 233**

Confidential                    DEF - 00004985

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 523 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR –BCI (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. During your period of residence in the United States, you had one or more absences before August 15, 2012 that did not qualify as "brief, casual, and innocent."

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 524 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – PHYSICAL PRESENCE ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were present in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**App. 234**

Confidential                    DEF - 00004986

## DACA 525 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – NO LAWFUL IMMIGRATION STATUS ON JUNE 15, 2012 (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 526 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – EDUCATIONAL GUIDELINE (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that, at the time of filing your initial request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**App. 235**

Confidential

DEF - 00004987

## DACA 527 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – FELONY OR SIGNIFICANT MISDEMEANOR (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012. You had been convicted of a felony or a significant misdemeanor.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 528 -NOTICE OF DENIAL – USCIS INITIAL DACA ERROR – THREE OR MORE MISDEMEANORS (RENEWAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. You had been convicted of three or more misdemeanors.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 529 -NOTICE OF DENIAL – REQUESTOR IS DECEASED (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated the Form I-821D, Consideration of Deferred Action for Childhood Arrivals, filed by [*insert name*] ("the requestor") on [*insert date*].

On [*insert date*], USCIS received notification that the requestor is now deceased. Please accept our deepest sympathies for your loss.

Confidential

USCIS is hereby denying the requestor's Form I-821D. Accordingly, the requestor's Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 530 -NOTICE OF DENIAL – ACQUIRED LAWFUL STATUS AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that Form [*insert USCIS form number and title*] that [Select the appropriate phrase: you filed / was filed on your behalf] was approved on [*insert date*]. Your status as [*insert status acquired after 6/16/2012*] is valid since [*insert period of validity*].

In view of the fact that you are currently in a lawful immigration status, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 531 - NOTICE OF DENIAL – ACQUIRED PAROLE AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that the [*insert name of Office/DHS Component*] approved your request for parole on [*insert date*]. Your parole authorization is valid through [*insert period of validity*].

In view of the fact that your parole request was approved, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**App. 237**

Confidential

DEF - 00004989

**DACA 532 -NOTICE OF DENIAL – ICE ALREADY DEFERRED ACTION (INITIAL DACA ONLY)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date ICE deferred action*], U.S. Immigration and Customs Enforcement (ICE) deferred action in your case as a childhood arrival until [*insert date deferred action expires*]. ICE notified you that action was deferred on your case and instructed you to request employment authorization from USCIS. On [*insert date I-821D filed*], you submitted Form I-821D to USCIS, together with Form I-765, Application for Employment Authorization.

It was not necessary for you to file Form I-821D with USCIS because ICE has already deferred action on your case. Therefore, USCIS has denied your Form I-821D. The denial of your Form I-821D does not affect the determination that ICE made on your case.

If granted, you will receive your Employment Authorization Document separately by mail.

**DACA 533 –NOTICE OF DENIAL - USCIS ALREADY DEFERRED ACTION UNDER DACA (BOTH INITIAL AND RENEWAL DACA)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX). On [*insert date*], USCIS determined that you meet the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*]. USCIS notified you that action was deferred on your case and mailed to you an Employment Authorization Document valid until [*insert date*].

On [*insert filing date for pending case*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX). In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

**DACA 534 -NOTICE OF DENIAL – INSUFFICIENT RFE RESPONSE FOR CRIMINAL RECORDS (BOTH INITIAL AND RENEWAL DACA)**

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that you have been arrested or detained by law enforcement officials. On [*insert date RFE issued*], USCIS sent you a notice requesting you to submit certified court dispositions for all of your arrests, including an arrest(s) specifically identified on the request. In response to the request

**App. 238**

Confidential

DEF - 00004990

for evidence, you submitted [*indicate what was submitted*]. However, the response was insufficient because [*indicate why it was insufficient. For example: "the document was not certified by the court"*].

USCIS was unable to conduct a sufficient background check on you because you did not provide the requested certified court dispositions. Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 535 -NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION UNDER ANOTHER (NON-DACA) PROGRAM, FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date*], you submitted a [*insert USCIS form number and title*] (Receipt number XXXXX) to USCIS for deferred action under another non-DACA program [*insert the program name, ex. VAWA*]. On [*insert date*], USCIS approved your [*insert USCIS form number*]. On [*insert notice date*], USCIS notified you that action was deferred on your case under [*insert the program name, ex. VAWA*] until [*insert date deferred action expires*].

On [*insert date*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX). In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case.

## DACA 536 -NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION (SEEKING REPLACEMENT EAD) (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX). On [*insert date*], USCIS determined that you met the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*]. USCIS also notified you that action was deferred on your case and mailed to you an Employment Authorization Document (EAD) valid until [*insert date*].

On [*insert filing date for pending case*], you submitted another Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX). You indicated on the

**App. 239**

Confidential

DEF - 00004991

instant Form I-765 that you are seeking to replace a lost Employment Authorization Document. It was not necessary to file a new Form I-821D. You only needed to file the Form I-765.

In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your newly submitted Form I-821D (Receipt number XXXXX). The denial of the instant Form I-821D does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

If your Form I-765 (Receipt number XXXXX) is granted, you will receive your replacement Employment Authorization Document separately by mail.

## DACA 537 -NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (INITIAL DACA ONLY)

On [*insert date*] you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit Form I-765WS [*insert other requested evidence if applicable*] in support of your Form I-765.

Title 8, Code of Federal Regulations (8 C.F.R.), Section 103.2(b)(13), states in part:

> If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, . . . .

As of the date of this notice, there is no record that you submitted the requested Form I-765WS. Accordingly, your application for employment authorization is denied as abandoned pursuant to 8 C.F.R § 103.2(b)(13). Please note that this decision will not affect the approval of your Form I-821D.

A denial due to abandonment may not be appealed. However, there are limited motion rights. In accordance with 8 C.F.R. § 103.5, you may, if you wish, file a motion to reopen an application or petition denied due to abandonment with evidence that the decision was in error because:

- The requested evidence was not material to the issue of eligibility;
- The required initial evidence was submitted with the application or petition, or the request for initial evidence or additional information or appearance was complied with during the allotted period; or
- The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

**App. 240**

Confidential                    DEF - 00004992

A motion to reopen must be filed on Form I-290B, Notice of Appeal or Motion, with the appropriate fee within 33 days from the date of this decision. For more information about filing motions, fees, forms, and filing locations, please visit the USCIS website at www.uscis.gov.

## DACA 538 -NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (BOTH INITIAL AND RENEWAL DACA)

On [*insert I-821D filing date*], you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date I-821D was approved*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date the I-765 RFE was sent*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit [*insert Form I-765WS and/or list other requested evidence*] in support of your Form I-765.

USCIS received your response to the request on [*insert date the RFE response was received*]. Your response did not include [*insert the missing evidence, e.g. Form I-765WS, signature on the I-765, completed I-765WS*] as we requested.

Title 8, Code of Federal Regulations, Section 274a.12(c)(14) provides the basis for granting employment authorization to individuals whose removal from the United States has been deferred:

> An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment

SELECT A PARAGRAPH (A) OR (B) BELOW, AS APPLICABLE:

A.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765WS:

Because you failed to provide [*insert the missing evidence; e.g., Form I-765WS; completed I-765WS*]**,** you have not established an economic necessity for employment. Accordingly, your application for employment authorization is denied. Please note that this decision will not affect the approval of your Form I-821D.

[*Proceed to the closing paragraph.*]

### *OR*

B.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765:

Because your I-765 was not properly signed, you have failed to comply with 8 C.F.R. 103.2(a)(2) and your application is hereby denied. Please note that this decision will not affect the approval of your Form I-821D.

Page 16   12/1/2014

**App. 241**

Confidential

<mark>[CLOSING PARAGRAPH]</mark>

This denial may not be appealed. However, you may file a motion to reopen or reconsider the decision. Your motion to reopen or reconsider must be filed on Form I-290B, Notice of Appeal or Motion within 30 days of the date of this notice (33 days if this notice is received by mail). You must mail your Form I-290B, along with the appropriate filing fee and other documentation in support of the motion, to the correct address. Do not mail your completed Form I-290B directly to this Service Center.

To obtain the filing locations, the required filing fee amount, and more information about the Form I-290B filing requirements, please refer to the USCIS website at **http://www.uscis.gov/forms**. You may also contact the National Customer Service Center (NCSC) at 800-375-5283.

This decision does not prevent you from filing a new application in the future.

### DACA 539 -NOTICE OF DENIAL – THE REQUESTOR WAS IN IMMIGRATION DETENTION AT THE TIME OF FILING FORM I-821D AND REMAINS IN IMMIGRATION DETENTION (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**App. 242**

Confidential                                        DEF - 00004994

## DACA 540 -NOTICE OF DENIAL – SIGNATURE ON FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS records indicate that:

On [*insert date*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization, (Receipt number XXXXX). As stated in the Form I-821D instructions, each request must be properly signed. Part [*insert the corresponding part: Part 4 (old Form I-821D) or Part 5 (current Form I-821D)*] is not properly signed (*indicate why the form was incorrectly signed. For example, the preparer signed Part 4 /5 instead of Part 5/6 or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 4/5*).

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) sent you a Request for Evidence (RFE) because your original Form I-821D was not properly signed. USCIS enclosed a copy of your original Form I-821D so that you could sign and date [*insert the corresponding part: Part 4.2.a. and 2.b./ Part 5.2.a. and 2.b.*] of your Form I-821D.

As of the date of this notice, there is no record that you submitted the requested signed and dated Form I-821D. In view of this fact, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765 has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 541 - NOTICE OF DENIAL – LPR STATUS ON JUNE 15, 2012

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

[*Summarize the requestor's immigration history, including how and when the requestor obtained LPR status and that such status had not changed as of 6/15/2012*].

Accordingly, you have not established that you were in an unlawful immigration status in the United States on June 15, 2012. Therefore, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

[*If the requestor is still in LPR status, please add:* If you are not in possession of your Form I-551, Permanent Resident Card, you may consider filing Form I-90, Application to Replace Permanent Resident Card, to obtain a new card. For information about obtaining a Form I-90, visit the USCIS website at www.uscis.gov or call toll-free (800) 870-3676 to request the form by mail.]

**App. 243**

Confidential

# Appendix G

### SRMT Call Ups Pertaining to Denied Form I-821D,
### Consideration of Deferred Action for Childhood Arrivals

**Administrative Errors**

1. **Denial of Form I-821D on the grounds that the requestor did not come to the United States prior to reaching his/her 16th birthday.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

2. **Denial of Form I-821D on the grounds that the requestor was under the age of 15 at the time of filing, but not in removal proceedings.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

**App. 244**

3. **Denial of Form I-821D on the grounds that the requestor was not under the age of 31 on June 15, 2012.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

4. **Denial of Form I-821D on the grounds that the requestor was not in an unlawful immigration status as of June 15, 2012.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment Authorization is approved, you will receive an Employment Authorization Document.

5. **Denial of Form I-821D on the grounds that the requestor was not physically present in the United States on June 15, 2012.**

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and if your Form I-765, Application for Employment is approved, you will receive an Employment Authorization Document.

**App. 245**

6. **Denial of Form I-821D on the grounds that the requestor did not appear to have biometrics collected at a USCIS ASC**

   *SRMT DACA 1 Interim Response:*
   We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to appear for the collection of biometrics at an Application Support Center. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

   *Final response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

7. **Denial of Form I-821D on the grounds that the requestor did not request to have his/her biometrics appointment at a USCIS ASC rescheduled prior to the scheduled date**

   *SRMT DACA 2 Interim Response:*
   We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to appear for the collection of biometrics at an Application Support Center nor did you request to have your biometrics appointment rescheduled prior to the date you were scheduled to appear. We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

   *Final Response if denial was correct:*
   Use SRMT Denial Template

   *Final response if denial was incorrect:*
   Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case. Upon review, it has been determined that the denial was issued in error.

   We have corrected the error in our records. Your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment have resumed processing. Once adjudication is complete, you will receive a decision.

**App. 246**

DEF - 00002619

8. **Denial of Form I-821D on the grounds that the requestor failed to pay the filing and biometric fees for the Form I-765**

*SRMT DACA 3 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to pay the fee for your concurrently filed Form I-765, Application for Employment Authorization, and/or your biometrics fee because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time. We have reopened your case on a service motion and will review your file.  You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

9. **Denial of Form I-821D due to abandonment and the requestor claims he/she did respond to RFE within the prescribed time**

*SRMT DACA 4 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to respond to a Request for Evidence within the time prescribed.   We reopened your case on a service motion and will review your file.  You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

**App. 247**

**10. Denial of Form I-821D due to abandonment – USCIS mailed the RFE to the wrong address and the requestor submitted a change of address prior to the issuance of RFE.**

*SRMT DACA 5 Interim Response:*
We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals on the grounds that you failed to respond to a Request for Evidence (RFE) within the time prescribed. In your request to review the denial of your Form I-821D, you indicated that the RFE was mailed to the wrong address and you had submitted a Change of Address prior to the RFE issuance.  We have reopened your case on a service motion and will review your file. You will receive a notice that your case is reopened on a service motion and a response once our review is complete.

*Final Response if denial was correct:*
Use SRMT Denial Template

*Final response if denial was incorrect:*
Since the date we received your request, we have reopened your case on a service motion and reviewed the decision made on your case.  Upon review, it has been determined that the denial was issued in error.

We have corrected the error in our records and have routed your file for adjudication. You will receive an approval notice for your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and your Form I-765, Application for Employment after adjudication is complete.

**App. 248**

DEF - 00002621

# Appendix H

## SRMT Denial Template

We have received your request to review the denial of your Form I-821D, Consideration of Deferred Action for Childhood Arrivals and the accompanying Form I-765, Application for Employment Authorization.  Your request was based on your belief that the denial involved one or more of the administrative errors, as indicated below:

☐  You claimed that your DACA request was denied on the grounds that you did not come to the United States prior to reaching your 16th birthday and that the evidence you submitted at the time of filing shows that you did, in fact, arrive before the required age.

☐  You claimed that your DACA request was denied on the grounds that you were under the age of 15 at the time of filing, but not in removal proceedings, or did not have a final removal order or a voluntary departure order, and that the evidence submitted at the time of filing shows that you were, in fact, in removal proceedings or had a final removal order or a voluntary departure order.

☐  You claimed that your DACA request was denied on the grounds that you were over the age of 31 on June 15, 2012 and that the evidence you submitted at the time of filing shows that you were, in fact, under age 31 on June 15, 2012.

☐  You claimed that your DACA request was denied on the grounds that you were in a lawful immigration status as of June 15, 2012, and that the evidence you submitted at the time of filing shows that you were, in fact, in an unlawful status on June 15, 2012.

☐  You claimed that your DACA request was denied on the grounds that you were not physically present in the United States on June 15, 2012, up through the date of filing, and that the evidence you submitted at the time of filing establishes that you were, in fact, present.

☐  You claimed that your DACA request was denied because you did not appear for biometrics collection at an Application Support Center, but you did appear.

☐  You claimed that your DACA request was denied because you did not appear for biometrics collection at an Application Support Center, but you asked for the appointment to be rescheduled before the originally scheduled date.

☐  You claimed that your DACA request was denied because you did not pay the required fees, but you have evidence that you paid (including evidence that you remitted payment to rectify any Nonsufficient Funds notice on the initial payment).

☐  You claimed that your DACA request was denied because you did not respond to a request for evidence (RFE) within the prescribed time (includes a request to submit additional evidence or appear at an ASC for biometrics collection following a prior failure to appear) and that you did, in fact respond timely.

☐  You claimed that your DACA request was denied because USCIS mailed the RFE to the wrong address even though you filed a change of address request before the RFE was issued.

Upon review of your request, the evidence in the file at the time of filing, and upon performing all relevant records and systems checks, it has been determined that your Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and the accompanying Form I-765, Application for Employment Authorization, were properly denied and that the denial did not involve an administrative error.

**App. 249**

# **Appendix I**

NOTE: Text highlighted in **YELLOW** and bracketed by [ ] is hidden text that requires ISO input.
The ISO should delete the highlighted bracketed [*Text*] and type in the necessary information, or
choose the appropriate information from choices and delete the information that does not apply.

## **DACA 600 – Notice of Intent to Terminate**

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals.
USCIS approved your Form I-821D on [Date] deferring your removal from the United States. A
review of your records reveals that [ISO should thoroughly explain why the removal was
deferred under DACA in error or that it has come to the attention of USCIS that the individual
committed fraud in seeking deferral of removal under DACA. If the decision to issue a Notice of
Intent to Terminate is based on fraud, it should be supported by a fully documented SOF and any
other relevant documents/information.]

Based on the information outlined above, USCIS is notifying you of its intent to terminate your
deferred action for childhood arrivals. A final decision to terminate your deferred action for
childhood arrivals will not be made for 33 days.  During that time, you may submit any evidence
that you feel will overcome the grounds for termination.  If your response is not received within
the allotted time or if your response to this notice does not overcome the grounds for termination,
USCIS will terminate your deferred action for childhood arrivals.  If your deferred action for
childhood arrivals is terminated, any associated employment authorization granted during the
period of your deferred action will be terminated for cause.

## **DACA 601 – Termination Notice [After NOIT]**

On [Date], you were notified that it was the intent of USCIS to terminate your deferred action for
childhood arrivals.  In response to the Intent to Terminate, you [ISO should summarize the
individual's response to the Intent to Terminate or indicate that the individual did not respond
within the allotted time].

Your response does not overcome the grounds for termination. [If the individual's response does
not overcome the reason for the termination as outlined in the Notice of Intent to Terminate, the
ISO should explain why]. Therefore, your deferred action for childhood arrivals is terminated as
of the date of this notice. In addition, your employment authorization is terminated for cause as
of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately.
Continued use of your EAD after authorization for employment has been terminated is
considered fraudulent use of your EAD.  Such fraudulent use of your EAD could result in a
referral to law enforcement.  Send a copy of this notice and your EAD to:

> [Insert Service Center
> Address]

Page 1  6/2/2014

**App. 250**

DEF - 00001420

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 602 – Notice of Action [NTA Issuance]

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

On [Date NTA served on alien], [U.S. Citizenship & Immigration Services (USCIS)/Immigration & Customs Enforcement (ICE)] issued you a Notice to Appear (NTA).

USCIS is notifying you that your deferred action as a childhood arrival and your employment authorization terminated automatically as of the date your NTA was issued. You must return your Employment Authorization Document (EAD) to USCIS immediately. Continued use of your EAD after authorization for employment has been terminated is considered fraudulent use of your EAD. Such fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

> [Insert Service Center Address]

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this notice of action may not be filed on behalf of the requestor.

## DACA 603 – Termination Notice [Enforcement Priority; Not Automatically Terminated]

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

After consulting with U.S. Immigration & Customs Enforcement, USCIS has determined that exercising prosecutorial discretion in your case is not consistent with the Department of Homeland Security's enforcement priorities. Therefore, your deferred action for childhood arrivals is terminated as of the date of this notice. In addition, your employment authorization is terminated for cause as of the date of this notice.

You must return your Employment Authorization Document (EAD) to USCIS immediately. Continued use of your EAD after authorization for employment has been terminated is considered fraudulent use of your EAD. Such fraudulent use of your EAD could result in a referral to law enforcement. Send a copy of this notice and your EAD to:

**App. 251**

Confidential

[Insert Service Center
Address]

Deferred action is a discretionary determination to defer removal action of an individual as an act
of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be
filed on behalf of the requestor.

## DACA 604 – Notice of Action [Travel outside U.S. without Advance Parole]

On [Date], you filed Form I-821D, Consideration of Deferred Action for Childhood Arrivals.
USCIS approved your Form I-821D on [Date] deferring your removal from the United States.

DHS records show on [Date the DACA recipient departed the U.S.] you departed the United
States without advance parole.  Travel outside the United States without first receiving advance
parole results in automatic termination of deferred action.

USCIS is notifying you that your deferred action as a childhood arrival and your employment
authorization terminated automatically as of the date of your departure from the United States.
You must return your Employment Authorization Document (EAD) to USCIS immediately.
Continued use of your EAD after authorization for employment has been terminated is
considered fraudulent use of your EAD.  Such fraudulent use of your EAD could result in a
referral to law enforcement.  Send a copy of this notice and your EAD to:

[Insert Service Center
Address]

Deferred action is a discretionary determination to defer removal action of an individual as an act
of prosecutorial discretion. An appeal or motion to reopen/reconsider this notice of action may
not be filed on behalf of the requestor.

Confidential

# APPENDIX J

## NOTICE OF INTENT TO DENY POLICY

1. NOIDs for the following guideline must be sent to HQSCOPSDACA for SPB review, but no longer require local counsel review:
   - Under 31 on 6/15/12

2. Local OCC Legal Review: NOIDS for the following guidelines must be sent to HQSCOPSDACA for SPB review, but no longer require local counsel review **unless** the Center encounters a novel, complex, or sensitive case:
   - CR Since 06/15/2007
   - Physically Present on 6/15/2012
   - Out of Status as of 06/15/2012

3. NOIDs for the following guidelines require local counsel review *prior* to being sent to HQSCOPSDACA for SPB review:
   - Education
   - Criminal, Public Safety & National Security
   - Fraud Concerns
   - All other NOIDs not categorized in Appendix J

4. NOIDs issued on the following templates *do not require* local counsel or SPB review prior to issuance. The SPB will institute a random sampling of casework as a quality assurance measure in the near future on the following templates:
   - Appendix E (NOID Templates) Published 4/4/2013
   - *Appendix E when combined with language in Appendix D (RFE Templates) Published 4/4/2013

   ***Note:** When an Appendix E NOID is combined with language in Appendix D and it creates a complicated NOID decision, Centers should issue the NOID decision without the Appendix D language. Once the response to the NOID is received and if the reason for the intended denial is overcome, Centers may issue an RFE with the Appendix D call-ups to establish the requestor's eligibility.

**App. 253**

Confidential                                    DEF - 00001637

# APPENDIX K

# DEFERRED ACTION FOR CHILDHOOD ARRIVALS DENIAL CALL-UPS

NOTE: Each denial call-up is labeled as follows:

- INITIAL DACA ONLY or;
- BOTH INITIAL AND RENEWAL DACA

ISOs should use the denial call-ups below as appropriate based on whether they are reviewing an initial or renewal DACA request.

## DACA 500 -NOTICE OF DENIAL – REQUESTOR IS DECEASED (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated the Form I-821D, Consideration of Deferred Action for Childhood Arrivals, filed by [*insert name*] ("the requestor") on [*insert date*].

On [*insert date*], USCIS received notification that the requestor is now deceased. Please accept our deepest sympathies for your loss.

USCIS is hereby denying the requestor's Form I-821D. Accordingly, the requestor's Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. An appeal or motion to reopen/reconsider this decision may not be filed on behalf of the requestor.

## DACA 501A -NOTICE OF DENIAL – ACQUIRED LAWFUL STATUS AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that Form [*insert USCIS form number and title*] that [you filed / was filed on your behalf] was approved on [insert date]. Your status as [*insert status acquired after 6/16/2012*] is valid since [*insert period of validity*].

In view of the fact that you are currently in a lawful immigration status, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

Confidential

## DACA 501B - NOTICE OF DENIAL – ACQUIRED PAROLE AFTER JUNE 15, 2012 (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

On [*insert date*] you filed Form I-821D. According to information obtained during routine systems checks, it appears that the [*insert name of Office/DHS Component*] approved your request for parole on [*insert date*]. Your parole authorization is valid through [*insert period of validity*].

In view of the fact that your parole request was approved, USCIS has, in its unreviewable discretion, determined that deferred action is not appropriate under these circumstances and is hereby denying your Form I-821D. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 502A -NOTICE OF DENIAL – ICE ALREADY DEFERRED ACTION (INITIAL DACA ONLY)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date ICE deferred action*], U.S. Immigration and Customs Enforcement (ICE) deferred action in your case as a childhood arrival until [*insert date deferred action expires*]. ICE notified you that action was deferred on your case and instructed you to request employment authorization from USCIS. On [*insert date I-821D filed*], you submitted Form I-821D to USCIS, together with Form I-765, Application for Employment Authorization.

It was not necessary for you to file Form I-821D with USCIS because ICE has already deferred action on your case. Therefore, USCIS has denied your Form I-821D. The denial of your Form I-821D does not affect the determination that ICE made on your case.

If granted, you will receive your Employment Authorization Document separately by mail.

## DACA 502B – NOTICE OF DENIAL - USCIS ALREADY DEFERRED ACTION UNDER DACA (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment

**App. 255**

Confidential                                        DEF - 00001426

Authorization (Receipt number XXXXX).  On [*insert date*], USCIS determined that you meet the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*].  USCIS notified you that action was deferred on your case and mailed to you an Employment Authorization Document valid until [*insert date*].

On [*insert filing date for pending case*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX) and I-765 (Receipt number XXXXX).  The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

## DACA 503 -NOTICE OF DENIAL – INSUFFICIENT RFE RESPONSE FOR CRIMINAL RECORDS (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that you have been arrested or detained by law enforcement officials.  On [*insert date RFE issued*], USCIS sent you a notice requesting you to submit certified court dispositions for all of your arrests, including an arrest(s) specifically identified on the request.  In response to the request for evidence, you submitted [*indicate what was submitted*].  However, the response was insufficient because [*indicate why it was insufficient. For example: "the document was not certified by the court"*].

USCIS was unable to conduct a sufficient background check on you because you did not provide the requested certified court dispositions.  Accordingly, USCIS has determined, in its unreviewable discretion, that you have not demonstrated that you warrant a favorable exercise of prosecutorial discretion and it will not defer action in your matter.  Accordingly, your Form I-765, Application for Employment Authorization, has also been denied.  Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion.  You may not file an appeal or motion to reopen/reconsider this decision.

## DACA 504 NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION UNDER ANOTHER (NON-DACA) PROGRAM, FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert date*], you submitted a [*insert USCIS form number and title*] (Receipt number XXXXX) to USCIS for deferred action under another non-DACA program [*insert the program name, ex. VAWA*].  On [*insert date*], USCIS approved your [*insert USCIS form number*].  On [*insert notice date*], USCIS notified you that action was deferred on your case under [insert the program name, ex. VAWA] until [insert date deferred action expires].

On [*insert date*], you submitted the instant Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX).  In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your Forms I-821D (Receipt number XXXXX)

Page 3  11/10/2014

**App. 256**

Confidential

and I-765 (Receipt number XXXXX). The denial of the instant Forms I-821D and I-765 does not affect the previous determination that USCIS made to defer action on your case.

## DACA 505 NOTICE OF DENIAL – USCIS ALREADY DEFERRED ACTION (SEEKING REPLACEMENT EAD) (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. Based on a review of your case, it appears that the following occurred:

The record reveals that on [*insert filing date for approved case*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization (Receipt number XXXXX). On [*insert date*], USCIS determined that you met the guidelines for deferred action for childhood arrivals and deferred action on your case until [*insert date*]. USCIS also notified you that action was deferred on your case and mailed to you an Employment Authorization Document (EAD) valid until [*insert date*].

On [*insert filing date for pending case*], you submitted another Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765 (Receipt number XXXXX). You indicated on the instant Form I-765 that you are seeking to replace a lost Employment Authorization Document. It was not necessary to file a new Form I-821D. You only needed to file the Form I-765.

In view of the fact that USCIS has already deferred action on your case, USCIS is hereby denying your newly submitted Form I-821D (Receipt number XXXXX). The denial of the instant Form I-821D does not affect the previous determination that USCIS made to defer action on your case until [*insert date*].

If your Form I-765 (Receipt number XXXXX) is granted, you will receive your replacement Employment Authorization Document separately by mail.

## DACA 506 NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (INITIAL DACA ONLY)

On [*insert date*] you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit Form I-765WS [*insert other requested evidence if applicable*] in support of your Form I-765.

Title 8, Code of Federal Regulations (8 C.F.R.), Section 103.2(b)(13), states in part:

> If the petitioner or applicant fails to respond to a request for evidence or to a notice of intent to deny by the required date, the benefit request may be summarily denied as abandoned, . . . .

Confidential

DEF - 00001428

As of the date of this notice, there is no record that you submitted the requested Form I-765WS. Accordingly, your application for employment authorization is denied as abandoned pursuant to 8 C.F.R § 103.2(b)(13). Please note that this decision will not affect the approval of your Form I-821D.

A denial due to abandonment may not be appealed. However, there are limited motion rights. In accordance with 8 C.F.R. § 103.5, you may, if you wish, file a motion to reopen an application or petition denied due to abandonment with evidence that the decision was in error because:

- The requested evidence was not material to the issue of eligibility;
- The required initial evidence was submitted with the application or petition, or the request for initial evidence or additional information or appearance was complied with during the allotted period; or
- The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address.

A motion to reopen must be filed on Form I-290B, Notice of Appeal or Motion, with the appropriate fee within 33 days from the date of this decision. For more information about filing motions, fees, forms, and filing locations, please visit the USCIS website at www.uscis.gov.

## DACA 507 NOTICE OF DENIAL OF APPLICATION FOR EMPLOYMENT AUTHORIZATION, FORM I-765 (BOTH INITIAL AND RENEWAL DACA)

On [*insert I-821D filing date*], you filed a request for consideration of deferred action as a childhood arrival. Your filing included a Form I-821D, Consideration of Deferred Action for Childhood Arrivals, and a Form I-765, Application for Employment Authorization, together with the required filing fee. On [*insert date I-821D was approved*], your Form I-821D was approved and your removal from the United States was deferred.

On [*insert date the I-765 RFE was sent*], U.S. Citizenship and Immigration Services (USCIS) requested that you submit [*insert Form I-765WS and/or list other requested evidence*] in support of your Form I-765.

USCIS received your response to the request on [*insert date the RFE response was received*]. Your response did not include [*insert the missing evidence, e.g. Form I-765WS, signature on the I-765, completed I-765WS*] as we requested.

Title 8, Code of Federal Regulations, Section 274a.12(c)(14) provides the basis for granting employment authorization to individuals whose removal from the United States has been deferred:

> An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment

**App. 258**

DEF - 00001429

SELECT A PARAGRAPH (A) OR (B) BELOW, AS APPLICABLE:

A.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765WS:

Because you failed to provide [*insert the missing evidence; e.g., Form I-765WS; completed I-765WS*]**,** you have not established an economic necessity for employment. Accordingly, your application for employment authorization is denied. Please note that this decision will not affect the approval of your Form I-821D.

[***Proceed to the closing paragraph.***]

### *OR*

B.      USE THIS PARAGRAPH IF THE DEFICIENCY IS WITH THE I-765:

Because your I-765 was not properly signed, you have failed to comply with 8 CFR 103.2(a)(2) and your application is hereby denied. Please note that this decision will not affect the approval of your Form I-821D.

[*CLOSING PARAGRAPH*]

This denial may not be appealed. However, you may file a motion to reopen or reconsider the decision. Your motion to reopen or reconsider must be filed on Form I-290B, Notice of Appeal or Motion within 30 days of the date of this notice (33 days if this notice is received by mail). You must mail your Form I-290B, along with the appropriate filing fee and other documentation in support of the motion, to the correct address. Do not mail your completed Form I-290B directly to this Service Center.

To obtain the filing locations, the required filing fee amount, and more information about the Form I-290B filing requirements, please refer to the USCIS website at **http://www.uscis.gov/forms**. You may also contact the National Customer Service Center (NCSC) at 800-375-5283.

This decision does not prevent you from filing a new application in the future.

DACA 508 – NOTICE OF DENIAL – SIGNATURE ON FORM I-821D (BOTH INITIAL AND RENEWAL DACA)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. USCIS records indicate that:

On [*insert date*], you submitted a Form I-821D (Receipt number XXXXX) to USCIS, together with a Form I-765, Application for Employment Authorization, (Receipt number XXXXX). As stated in the Form I-821D instructions, each request must be properly signed. Part [*insert the corresponding part: Part 4 (old Form I-821D) or Part 5 (current Form I-821D)*] is not properly signed (*indicate why the form was incorrectly signed. For example, the preparer signed Part 4/5 instead of Part 5/6 or the requestor is over the age of 14, but the requestor's parent or legal guardian signed Part 4/5*).

**App. 259**

Confidential                                                    DEF - 00001430

On [*insert date*], U.S. Citizenship and Immigration Services (USCIS) sent you a Request for Evidence (RFE) because your original Form I-821D was not properly signed. USCIS enclosed a copy of your original Form I-821D so that you could sign and date [*insert the corresponding part: Part 4.2.a. and 2.b./ Part 5.2.a. and 2.b.*] of your Form I-821D.

As of the date of this notice, there is no record that you submitted the requested signed and dated Form I-821D. In view of this fact, USCIS has, in its unreviewable discretion, determined that it will not defer action in your matter. Accordingly, your Form I-765 has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

**App. 260**

Confidential                                    DEF - 00001431

## NOTICE OF DENIAL OF CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD ARRIVALS, FORM I-821D (RENEWAL REQUEST)

USCIS has evaluated your Form I-821D, Consideration of Deferred Action for Childhood Arrivals. For the reason(s) indicated below, USCIS has, in its unreviewable discretion, determined that it will not renew deferred action in your matter. Accordingly, your Form I-765, Application for Employment Authorization, has also been denied. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. You may not file an appeal or motion to reopen/reconsider this decision.

☐ You departed the United States on or after August 15, 2012 without advance parole.

☐ USCIS records show you remained outside of the United States beyond the validity period of your advance parole document.

☐ You have not established that you have continuously resided in the United States since you submitted your most recent request for DACA that was approved.

☐ You have been convicted of a felony or a significant misdemeanor.

☐ You have been convicted of three or more misdemeanors.

☐ You have not established that you warrant a favorable exercise of prosecutorial discretion.

☐ You have not paid the fee for your concurrently filed Application for Employment Authorization, Form I-765, and/or your biometrics fee, because your payment has been rejected for insufficient funds and you have failed to correct the fee deficiency within the allotted time.

☐ USCIS was unable to conduct a background check on you because you did not appear for your scheduled appointment at an Application Support Center for the collection of biometrics, or your fingerprints were rejected as unclassifiable and you did not submit a local police clearance certificate for each jurisdiction in which you have lived for six months or more within the past five years.

☐ You did not respond to a Request for Evidence or Notice of Intent to Deny within the time prescribed.

☐ USCIS lacks the authority to consider your request because you were in immigration detention at the time you filed your Form I-821D and you remain in immigration detention as of the date of this notice.

☐ In order to be considered for renewal of DACA, you must have met the guidelines for consideration of initial DACA. However, your initial/most recent request for DACA was approved in error. [Select appropriate checkbox]

    ☐ At the time of filing your initial/most recent request, you were under the age of fifteen (15) and were not in removal proceedings, did not have a final removal order, or did not have a voluntary departure order.

    ☐ You did not establish that you came to the United States before you turned sixteen (16) years old and established residence at that time.

    ☐ You did not establish that you were under age 31 on June 15, 2012.

    ☐ You did not establish that you continuously resided in the United States since June 15, 2007, until the date of filing your initial/most recent request.

    ☐ During your period of residence in the United States, you had one or more absences before August 15, 2012 that did not qualify as "brief, casual, and innocent."

7/22/2014

**App. 261**

Case 1:18-cv-00068 Document 225 Filed in TXSD on 05/02/18 Page 324 of 525

☐ You did not establish that you were in an unlawful immigration status in the United States on June 15, 2012.

☐ You did not establish that, at the time of filing your initial request, you were currently in school, had graduated or obtained a certificate of completion from a U.S. high school, or had obtained a general educational development (GED) certificate or other equivalent State-authorized exam in the United States, or that you are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States.

☐ You had been convicted of a felony or a significant misdemeanor.

☐ You had been convicted of three or more misdemeanors.

7/22/2014

**App. 262**

DEF - 00001642