# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants, <br><br> and <br><br> KARLA PEREZ, et al.; <br><br> STATE OF NEW JERSEY, <br><br> Defendants-Intervenors. | Civil Action No. 1:18-cv-00068 |

**MEMORANDUM OF LAW OF IMMIGRATION REFORM LAW INSTITUTE
AS *AMICUS CURIAE* IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

CHRISTOPHER J. HAJEC
MATT A. CRAPO
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
litigation@irli.org

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.      The Immigration and Nationality Act does not confer upon DHS the authority to grant immigration benefits through the Final Rule. .................................................. 1

II.     The Final Rule violates the Executive's obligations under the Take Care Clause. .. 7

CONCLUSION ...................................................................................................................... 11

## **TABLE OF AUTHORITIES**
Page(s)

## **CASES**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ................................................................................................ 5

*Arizona v. United States*,
    567 U.S. 387 (2012) ....................................................................................... 7, 10

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ............................................................................................ 2

*City of Los Angeles v. Adams*,
    556 F.2d 40 (D.C. Cir. 1977) .............................................................................. 9

*Gene & Gene, L.L.C. v. Biopay, L.L.C.*,
    624 F.3d 698 (5th Cir. 2010) ........................................................................... 6, 7

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) .......................................................................................... 3

*Kendall v. United States ex rel. Stokes*,
    37 U.S. 524 (1838) .............................................................................................. 8

*Manhattan Gen. Equip. Co. v. Comm'r*,
    297 U.S. 129 (1936) ............................................................................................ 2

*Mistretta v. United States*,
    488 U.S. 361 (1989) ............................................................................................ 5

*Texas v. Biden (MPP)*,
    20 F.4th 928 (5th Cir. 2021) ...................................................................... 4, 8, 10

*Texas v. United States (DACA)*,
    50 F.4th 498 (5th Cir. 2022) ............................................................................ 4, 6

*Texas v. United States (DAPA)*,
    809 F.3d 134 (5th Cir. 2015) .............................................................................. 6

*Texas v. United States*,
  549 F. Supp. 3d 572 (S.D. Tex. 2021) ............................................................... 2, 8, 10

*United States v. CITGO Petroleum Corp.*,
  801 F.3d 477 (5th Cir. 2015) .................................................................................... 5

*United States v. Texas*,
  577 U.S. 1101 (2016) ................................................................................................ 7

*United States v. U.S. Smelting Refining & Mining Co.*,
  339 U.S. 186 (1950) .................................................................................................. 6

*Univ. of the D.C. Faculty Ass'n v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 163 F.3d 616 (D.C. Cir. 1998) ....................................................................... 2

*West Virginia v. EPA*,
  142 S. Ct. 2587 (2022) .............................................................................................. 6

## **CONSTITUTION & STATUTES**

6 U.S.C. § 202(3) ............................................................................................................ 4

6 U.S.C. § 202(5) .................................................................................................... 4, 5, 6

8 U.S.C. § 1103(a) .......................................................................................................... 6

8 U.S.C. § 1103(a)(1) ..................................................................................................... 4

8 U.S.C. § 1103(a)(3) ..................................................................................................... 4

8 U.S.C. § 1225(a)(1) ..................................................................................................... 3

8 U.S.C. § 1225(b)(2)(A) ........................................................................................... 3, 5

8 U.S.C. § 1226(c) .......................................................................................................... 5

8 U.S.C. § 1229a ............................................................................................................. 5

U.S. Const. art. II, § 3 .................................................................................................... 8

## **MISCELLANEOUS**

Deferred Action for Childhood Arrivals,
   87 Fed. Reg. 53152 (Aug. 30, 2022) .......................................................................... 2, 3

## INTRODUCTION

This Court should grant Plaintiffs' motion for summary judgment and vacate the Final Rule implementing the Deferred Action for Childhood Arrivals ("DACA") program first established in the 2012 memorandum by then-Secretary of Department of Homeland Security Janet Napolitano (the "DACA memorandum"). The Fifth Circuit has already held that the DACA program is substantively unlawful under the APA. Because the Final Rule merely codifies and is substantively identical to the DACA program, this Court should apply the law-of-the-case doctrine and grant Plaintiffs' motion for summary judgment.

In addition, the Court should consider ruling on whether the Final Rule violates the Take Care Clause. The Fifth Circuit has provided guidance on the applicability of the Take Care Clause since this Court previously declined to address the question, and the deferred action contemplated by the Final Rule constitutes a clear instance of a generalized and prospective dispensation from the law. Well over a million DACA recipients are given permission to reside in the United States even though the law deems their presence unlawful. This dispensation is impermissible under the Take Care Clause, and the Final Rule should be struck down on that basis, as well.

## ARGUMENT

**I.    The Immigration and Nationality Act does not confer upon DHS the authority to grant immigration benefits through the Final Rule.**

An agency is powerless to create rules that exceed the authority conferred by Congress, much less rules that run contrary to Congress's statutory scheme. Any such

1

regulation would be *ultra vires* and a nullity. *See Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134 (1936) (holding that a "regulation [that] … operates to create a rule out of harmony with the statute, is a mere nullity" because an agency's "power … to prescribe rules and regulations … is not the power to make law" but rather "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute").

In reviewing an *ultra vires* claim, courts examine statutory language to determine whether Congress intended the agency to have the power that it exercised when it acted. *Univ. of the D.C. Faculty Ass'n v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 163 F.3d 616, 620 (D.C. Cir. 1998). A reviewing court must reasonably be able to conclude that the regulations issued were contemplated in Congress's grant of authority. *Chrysler Corp. v. Brown*, 441 U.S. 281, 308 (1979).

As this Court has already held, the Immigration and Nationality Act ("INA") does not provide statutory authority for the DACA program. *See Texas v. United States*, 549 F. Supp. 3d 572, 604-14 (S.D. Tex. 2021). The Court's prior judgment (and the Fifth Circuit's affirmance of that judgment) with respect to the DACA program leaves no room for upholding the Final Rule, which is materially indistinguishable from and merely codifies the pre-existing DACA program. *See*, *e.g.*, Deferred Action for Childhood Arrivals, 87 Fed. Reg. 53152, 53163 (Aug. 30, 2022) ("This rule does not authorize new entrants to the United States; indeed, *it codifies, but does not expand*, the threshold criteria for consideration for deferred action under the DACA policy that have existed since 2012."); *id.* at 53177 ("The final rule *codifies without material change* the threshold criteria that have been in place for a decade . . . ."); *id.* at 53183 ("DHS acknowledges

2

that *this rule codifies DACA*, which reduces the agency's flexibility with regard to terminating or changing certain aspects of the policy, but reiterates the purpose of the rule is to preserve and fortify DACA, a policy that has been in place for 10 years."); *id.* at 53202 ("This rule again *codifies an exercise of DHS's authority to grant employment authorization to DACA recipients* and thereby serves to preserve and fortify DACA."); *id.* at 53208 ("DHS agrees that the rule properly *codifies DHS's decade-long policy* that DACA recipients are similarly situated to other individuals with deferred action who have, since at least 2002, not accrued unlawful presence for purposes of INA sec. 212(a)(9), 8 U.S.C. 1182(a)(9) inadmissibility while action is deferred in their case."); *id.* at 53243 ("DHS notes that the proposed 8 CFR 236.23(c)(2) *codifies and clarifies longstanding DACA policy* . . . ."); *id.* at 53297 ("DHS does not believe the rule triggers NEPA obligations in the first instance because *it simply codifies existing policy* toward a population already in the United States and thus does not alter the environmental status quo.") (emphases added throughout).

Like the decade-long DACA program that preceded it, the Final Rule is a programmatic refusal by DHS to enforce Congress's clear statutory scheme. For example, under the INA, any alien who entered the country illegally is deemed an applicant for admission. 8 U.S.C. § 1225(a)(1). And 8 U.S.C. § 1225(b)(2)(A) mandates that if an applicant for admission "is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" for removal proceedings (emphasis added). *See also Jennings v. Rodriguez,* 138 S. Ct. 830, 842 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings

3

have concluded."); *Texas v. Biden (MPP)*, 20 F.4th 928, 978 (5th Cir. 2021) (describing § 1225(b)(2)(A) as "obviously a mandatory statutory command—not a commitment to agency discretion"), *rev'd on other grounds*, 142 S. Ct. 2528 (2022). But, contrary to such statutory directives, the Final Rule, like the DACA memorandum before it, is based on the belief that DHS has the inherent prosecutorial discretion[1] or sufficient delegated authority[2] to except certain illegal aliens from "an intricate statutory scheme for determining which classes of aliens may receive lawful presence, discretionary relief from removal, deferred action, and work authorization." *Texas v. United States (DACA)*, 50 F.4th 498, 525 (5th Cir. 2022) (internal footnotes omitted).

To be sure, the two provisions of the INA relied upon by DHS provide broad, general grants of authority to DHS: 8 U.S.C. § 1103(a)(3) ("[The Secretary] . . . shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter."); and 6 U.S.C. § 202(5) ("The Secretary . . . shall be responsible for . . . [e]stablishing national immigration enforcement policies and priorities."). The first of these, 8 U.S.C. § 1103(a)(3), clearly fails to authorize DACA, which is not "necessary for carrying out" any part of the INA.

---

[1] *See* 87 Fed. Reg. at 53180 (DHS asserting that "[d]eferred action under the DACA policy is a form of prosecutorial discretion well within the Executive's authority to efficiently allocate limited enforcement resources").

[2] *See id.* at 53186 (DHS claiming that "the authority for the rule lies in a range of statutory authorities, including DHS's general rulemaking authority under section 103 of the INA as well as DHS's power to exercise enforcement discretion, which is inherent in the delegation of authority over enforcement of the INA") (citing, *inter alia*, 6 U.S.C. § 202(3), (5); 8 U.S.C. § 1103(a)(1), (3)).

Only if the authority of DHS to "deem[]" that an action is "necessary" were unlimited and unreviewable could this provision confer authority to implement DACA; but in that case, this provision would grant DHS a limitless authority over how it carries out its duties, making the innumerable other provisions of the INA that detail how it is to carry out those duties meaningless. *See*, e.g., 8 U.S.C. §§ 1225(b)(2)(A) (providing that inadmissible aliens "shall be" detained for removal proceedings), 1226(c) (requiring the detention of certain criminal aliens pending removal), 1229a (providing procedural requirements for removal proceedings).

Section 202(5)'s grant of authority to "[e]stablish[] national immigration enforcement policies and priorities" also fails to authorize DACA. This authorization to set "priorities" does not authorize DHS to implement DACA, which goes far beyond making removable aliens that meet its criteria low priorities for removal. Thus, this provision could only authorize DACA based on its apparently open-ended authorization to DHS to establish enforcement "policies." But if the meaning of this language were as open-ended as DHS suggests, it would violate the nondelegation doctrine, which requires "an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). No such principle has been provided. Under the doctrine of constitutional avoidance, then, this Court should avoid the constitutional nondelegation issue by reading the statute not to delegate the sweeping authority DHS needs for this program. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17-18 (2013); *United States v. CITGO Petroleum Corp.*, 801 F.3d 477, 483 n.6 (5th Cir. 2015).

Furthermore, as the Fifth Circuit has already recognized, "DACA 'undoubtedly implicates question[s] of deep economic and political significance that [are] central to this statutory scheme; had Congress wished to assign that decision to an agency, it surely would have done so expressly.'" *DACA*, 50 F.4th at 526 (quoting *Texas v. United States (DAPA)*, 809 F.3d 134, 167 (5th Cir. 2015) (internal quotations omitted)). The broad delegations of authority found at 6 U.S.C. § 202(5) and 8 U.S.C. § 1103(a) are insufficient to demonstrate the "clear congressional authorization" necessary to support the Final Rule. *DACA*, 50 F.4th at 526 (quoting *West Virginia v. EPA*, 142 S. Ct. 2587, 2614 (2022)). Instead, "these 'broad grants of authority . . . cannot reasonably be construed as assigning decisions of vast economic and political significance . . . to an agency.'" *Id.* at 527 (quoting *DAPA*, 809 F.3d at 183 (internal quotations and citations omitted)).

This Court should apply the law-of-the-case doctrine[3] because the Fifth Circuit has ruled that the INA does not confer upon DHS the authority to implement the DACA program, and the Final Rule, which is materially identical to the decade-long DACA program, falls under that ruling. *See DACA*, 50 F.4th at 528 ("DACA 'is foreclosed by Congress's careful plan; the program is manifestly contrary to the statute.'") (quoting *DAPA*, 809 F.3d at 186 (internal quotations omitted)). Further, none of the exceptions to

---

[3] "The law of the case doctrine provides that an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Gene & Gene, L.L.C. v. Biopay, L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010) (internal quotation omitted). The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950).

6

the law-of-the-case doctrine applies. Exceptions to the law-of-the-case doctrine allow reexamination of issues decided on appeal "only if (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Gene & Gene*, 624 F.3d at 702 (internal quotation omitted). Inasmuch as the Final Rule is a mere codification of the pre-existing DACA program, no material change in evidence or controlling law suggest a different outcome here. Indeed, Defendants appear to have conceded that the law-of-the-case doctrine applies by asserting that the outcome in this Court regarding the validity of Final Rule "is certain." Plaintiffs' motion for summary judgment, ECF Doc. 625-1 at 12-13 (quoting Defendants' supplemental brief before the Fifth Circuit). Accordingly, the Court should apply the law-of-the-case doctrine and grant Plaintiffs' motion for summary judgment.

## II. The Final Rule violates the Executive's obligations under the Take Care Clause.

Additionally, this Court should consider ruling on the deferred action aspect of the Final Rule under the Take Care Clause. A mere ten days after the DACA memorandum was published, the late Justice Scalia recognized that the DACA program amounted to a "dispensation" from the law. *Arizona v. United States*, 567 U.S. 387, 435 (2012) (Scalia, J., dissenting) (referring to applications to be enrolled in DACA as "biennial requests for dispensation"). Further, in granting review in the *DAPA* case, the Supreme Court ordered "the parties … to brief and argue '[w]hether [DAPA] violates the Take Care Clause of the Constitution.'" *United States v. Texas*, 577 U.S. 1101 (2016).

7

This Court previously declined to reach the question of whether the DACA program violates the Take Care Clause under the doctrine of constitutional avoidance as well as "a dearth of precedent on the Take Care Clause." *Texas*, 549 F. Supp. 3d at 622. But, since then, the Fifth Circuit has provided guidance on the applicability of the Take Care Clause. *See MPP*, 20 F.4th at 978-83 (discussing how the Take Care Clause incorporates the common law prohibition against suspending and dispensing powers and concluding that "the Constitution[] explicitly forb[ids] the executive from nullifying whole statutes by refusing to enforce them on a *generalized* and *prospective* basis") (emphasis in original); *see also Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 613 (1838) (rejecting suggestion that the Take Care Clause vested the President with the power to dispense with laws and that recognizing such a power "would be clothing the President with a power entirely to control the legislation of [C]ongress"). To be sure, this Court need not resolve this constitutional issue to conclude that the Final Rule is unlawful, but the Take Care violation is both ripe for adjudication and provides a clear basis for an alternative holding.

The Take Care Clause provides that the President "shall take care that the laws be faithfully executed." U.S. Const. art. II, § 3. The Fifth Circuit has explained how the Take Care Clause is a limit on executive powers and precludes the executive branch from suspending or dispensing with the law. *See MPP*, 20 F.4th at 978-82; *id.* at 979 (describing the power to dispense with a law as "the power to grant permission to an individual or a corporation to disobey a statute" or alternatively as the power to make it lawful for an individual to violate a statutory prohibition so long as that person has

8

"dispensation"). By affording DACA recipients deferred action, the Final Rule gives them permission to disobey a statute, and gives them a dispensation from the immigration laws that deem them removable. As such, the Final Rule runs afoul of the Take Care Clause as explicated by the Fifth Circuit, and should be struck down on that basis.

Defendants cannot avoid this result by attempting to justify the DACA program either as a legitimate attempt to prioritize the allocation of limited resources or as a permissible exercise of prosecutorial discretion. Faced with limited resources, an agency has the discretion to implement the mandate of Congress as best it can, by setting priorities for action. *See City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C. Cir. 1977) (holding that when a statutory mandate is not fully funded, "the agency administering the statute is required to effectuate the original statutory scheme as much as possible, within the limits of the added constraint."). With DACA, however, DHS does not "effectuate the original statutory scheme as much as possible" within the limits set by underfunding. DACA was not created because of lack of resources; the aliens protected by it were already rarely removed. *See* ECF Doc. 487-8 at 4 (Memorandum from Jeh Charles Johnson, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are Parents of U.S. Citizens or Permanent Residents at 3 (Nov. 20, 2014) (explaining that DACA applies to individuals who "are extremely unlikely to be deported given [the] Department's limited enforcement resources") (available at: https://www.dhs.gov/sites/default/files/publications/14_1120_memo_deferred_action_0.pdf) (last visited Feb. 14, 2023)). Furthermore, as Justice Scalia observed, "[t]he husbanding of scarce enforcement

resources can hardly be the justification for [DACA], since the considerable administrative cost of conducting as many as 1.4 million background checks, and ruling on the biennial requests for dispensation that the nonenforcement program envisions, will necessarily be *deducted* from immigration enforcement." *Arizona*, 567 U.S. at 435 (Scalia, J., dissenting) (emphasis in original). Thus, rather than a mere marshalling and focusing of scant resources, DACA simply reflects the current administration's policy judgment that these aliens should be free to live and work in the United States without fear of deportation, or in other words, that these aliens should be granted a dispensation from the law.

      Defendants' attempt to justify the DACA program as a valid form of prosecutorial discretion fairs no better. As the Fifth Circuit explained in *MPP*, the Executive may exercise prosecutorial discretion "in *particular* instances and at *particular moments* in time," but may not nullify "whole statutes by refusing to enforce them on a *generalized* and *prospective* basis." 20 F.4th at 983 (emphasis in original). Here, the Final Rule programmatically dispenses with the law on a generalized and prospective basis and therefore cannot be shielded from judicial review as a valid exercise of prosecutorial discretion. Indeed, as this Court has already determined, the Final Rule defines a class of aliens numbering approximately 1.5 million—a population "too numerous to fit into the individualized notion of deferred action that courts have found permissible in other contexts." *Texas*, 549 F. Supp. 3d at 620-21.

Simply put, the Final Rule constitutes a generalized and prospective dispensation of the law applying to well over a million people, and as such clearly runs afoul of the Take Care Clause. This Court accordingly should strike it down on that alternative basis.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for summary judgment.

Respectfully submitted on February 20, 2023,

<u>Matt Crapo</u>
MATT A. CRAPO
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
mcrapo@irli.org
litigation@irli.org

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2023, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

<u>/s/ Matt Crapo</u>