**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | |
| Plaintiffs, | Case No. 1:18-cv-00068-ASH |
| v. | |
| UNITED STATES OF AMERICA, *et al*., | |
| Defendants, | |
| KARLA PEREZ, *et al*., | |
| Defendants-Intervenors, | |
| and | |
| STATE OF NEW JERSEY, | |
| Defendant-Intervenor. | |

**BRIEF OF AMICI CURIAE 43 LOCAL GOVERNMENTS AND LOCAL
GOVERNMENT OFFICIALS AND ADVOCACY ORGANIZATIONS IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' AND DEFENDANTS-INTERVENORS' MOTIONS FOR
SUMMARY JUDGMENT**

Hydee Feldstein Soto
 City Attorney
Michael J. Dundas (*pro hac vice*)
200 North Main Street
City Hall East Suite 800
Los Angeles, California 90012
Telephone:  213.978.8130
Facsimile:  213.978.8222


Attorneys for Amicus Curiae City of Los
Angeles

Nicholas Whilt (CA S.B. #247738)
 Attorney in Charge
 S.D. Tex. No. CA247738
James A. Bowman*
Daniel R. Suvor (*pro hac vice*)
Kelsey A. Chandrasoma*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:  213.430.6000
Facsimile:  213.430.6407


Attorneys for Amicus Curiae County
of Los Angeles

*pro hac vice* pending

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST AND SUMMARY OF THE ARGUMENT .................................1

ARGUMENT ...................................................................................................................................3

I.      DACA Recipients Make Amici's Communities More Prosperous And Safe ....................3

        A.      DACA Recipients Make Amici's Communities Stronger ......................................4

        B.      DACA Makes Amici's Communities Safer ............................................................9

II.     The 2022 DACA Rule Is Not Arbitrary and Capricious...................................................11

        A.      DHS Adequately Considered Alternatives to Forbearance Without Benefits......11

        B.      DHS Considered Relevant Reliance Interests .....................................................13

CONCLUSION..............................................................................................................................14

LIST OF AMICI CURIAE .............................................................................................................16

LIST OF COUNSEL FOR ADDITIONAL AMICI CURIAE .......................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*,
  51 F.4th 616 (5th Cir. 2022) ......................................................................... 11, 14

*Dep't of Homeland Sec'y v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ..................................................................................... 3, 4

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021) ......................................................................................... 11

*Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*,
  2 F.4th 421 (5th Cir. 2021) ................................................................................. 14

*Michigan v. Env't Prot. Agency*,
  576 U.S. 743 (2015) .............................................................................................. 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................................................. 11

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
  No. 3:17-cv-05211-WHA (N.D. Cal. July 1, 2020) .............................................. 2

**Other Authorities**

Adolfo Flores, *This Paramedic Who Rescued Hurricane Harvey Victims May Be Deported If Trump Ends DACA*, BuzzFeed (Sept. 1, 2017) ...................................... 4

Andis Robeznieks, *Doctor Shortages Are Here—and They'll Get Worse if We Don't Act Fast*, Am. Medical Ass'n (Apr. 13, 2022) ................................................ 6

Anita Khashu, *The Role of Local Police: Striking a Balance Between Immigration Enforcement and Civil Liberties*, Police Found. (Apr. 2009) ................................... 9

Ash-har Quraishi, *Legal Decision Could Impact Thousands of Undocumented Medical Workers*, ABC (Apr. 24, 2020) ................................................................. 6

Bridget Balch, *DACA Physicians Serve on COVID-19 Front Lines*, Ass'n of Am. Medical Colleges (June 18, 2020) ......................................................................... 6

*Deferred Action for Childhood Arrivals (DACA): An Overview*, Am. Immigration Council (Sept. 30, 2021) ................................................................................ 7, 8, 9

*Dr. Manuel Bernal Mejia*, U.S. News ...................................................................... 6

*Dr. Jirayut Latthivongskorn, MD*, Healthgrades ..................................................... 6

Gregory Korte et al., *Trump Administration Struggles with Fate of 900 DREAMers Serving in the Military*, USA Today (Sept. 7, 2017) .............................. 5

Guadalupe, *Stories in Defense of Deferred Action for Childhood Arrivals*, Nat'l Immigration Law Ctr. ...................................................................................... 7

Jacqueline Varas, *The Fiscal Implications of the DACA Program*, Am. Action Forum (Jan. 18, 2018) ......................................................................................... 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

John Burnett, *New Immigration Crackdowns Creating 'Chilling Effect' on Crime Reporting*, NPR (May 25, 2017) ................................................................................ 9

John-Mark Hart, *Oklahoma Pastor: Continued Inaction on DACA Recipients is a Moral Failure*, The Oklahoman (Dec. 11, 2022) ............................................... 5

Julia Wick, *L.A.-Area DACA Recipients Contribute Approximately $5.5 Billion Annually to Economy, Chamber Estimates*, LAist (Sept. 21, 2017) ........................ 7

Julie Zauzmer, *Atlanta Priest, a Dreamer, Leads Stressed Flock of Them*, Northwest Ark. Democrat Gazette (Jan. 27, 2018) ................................................. 5

Kathy L. Gilbert, *DACA Decision Brings Joy, but Battle Not Over*, UM News (June 22, 2020) ............................................................................................................ 5

KVUE News Staff, *Austin ISD Teacher Joins Fellow DACA Recipients for Discussion with President Biden*, KVUE (May 14, 2021) ....................................... 7

Lilly Fowler, *These Firefighters Face a Different Kind of Battle: Immigration*, Crosscut (Mar. 7, 2018) ........................................................................................... 4, 5

Marcella Lee, *New California Law Allows Non-U.S. Citizens to Become Police Officers*, CBS8 (Jan. 12, 2023) ................................................................................. 4

Meg Wiehe & Misha Hill, *State & Local Tax Contributions of Young Undocumented Immigrants*, Inst. on Taxation & Econ. Policy (Apr. 30, 2018) ...................... 9

*News Release*, U.S. Dep't of Commerce, Bureau of Econ. Analysis (Dec. 23, 2022) ......................................................................................................................... 8

Nicole Prchal Svajlenka & Trinh Q. Truong, *The Demographics and Economic Impacts of DACA Recipients: Fall 2021 Edition*, Ctr. for Am. Progress (Nov. 24, 2021) ........................................................................................................ 5, 6, 9

Nicole Prchal Svajlenka, *What We Know About DACA Recipients, by Metropolitan Area*, Ctr. for Am. Progress (Apr. 30, 2020) ................................. 2, 9

Nik Theodore, *Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement*, Dep't of Urban Planning & Policy, Univ. of Ill. at Chi. (May 2013) ................................................................................................... 10

*Our Hope*, Aliento ............................................................................................................ 6

Phillip Connor, *DACA Decade: From Students to Careers and Families*, FWD.us (June 14, 2022) ........................................................................................................... 2

Randy Capps et al., *Delegation and Divergence: A Study of 287(g) State and Local Immigration Enforcement*, Migration Policy Inst. (Jan. 2011) ..................... 10

Raquel Torres, *Facing Deportation: East Texas Teacher Awaits Fate of American Dream and Promise Act*, Tyler Morning Telegraph (July 29, 2021) ........................ 7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Roberto G. Gonzales, Ph.D. & Angie M. Bautista-Chavez, *Two Years and Counting: Assessing the Growing Power of DACA*, Am. Immigration Council (June 16, 2014)..................................................................................... 10

Sarah Calams, *Immigration and DACA: The Impact on First Responder Hiring*, FireRescue1 (Sept. 26, 2017) ............................................................ 4, 5

Scott R. Baker, Econ. Dep't, Stanford Univ., *Effects of Immigrant Legalization on Crime: The 1986 Immigration Reform and Control Act* (Apr. 20, 2013)............................... 10

Silva Mathema, *Ending DACA Will Cost States Billions of Dollars*, Ctr. for Am. Progress (Jan. 9, 2017) ........................................................................ 7

Stephanie Griffith & Claudia Flores, *Dreamers Help Keep the Country Running During the Coronavirus Pandemic*, Ctr. for Am. Progress (Apr. 3, 2020)............................. 8

Tahmina Watson, *DACA Entrepreneurs Must Have a Path to Citizenship*, Above the Law (June 7, 2022)................................................................................. 8

*Texas Business Leaders Urge Congress to Provide Permanent Protections for Dreamers*, FWD.us (Oct. 6, 2022) ............................................................... 7

*The Team*, Aliento................................................................................................ 6

Tom K. Wong et al., *DACA Recipients' Economic and Educational Gains Continue to Grow*, Ctr. for Am. Progress (Aug. 28, 2017)............................................... 8

U.S. Dep't of Justice, NCJ 253043, *Criminal Victimization, 2018* (Sept. 2019) ........................ 10

Yadira Bribiesca, *Op-Ed: Protect the Dreamers. The U.S. Needs Doctors-in-Training Like Me*, L.A. Times (Oct. 3, 2022) ................................................... 6

Zenén Jaimes Pérez, *A Portrait of Deferred Action for Childhood Arrivals Recipients: Challenges and Opportunities Three-Years Later*, United We Dream (Oct. 2015) ..................................................................................... 10

**Rules**

Fed. R. App. P. 29(a)(4).......................................................................................... 1

## STATEMENT OF INTEREST AND SUMMARY OF THE ARGUMENT[1]

Amici curiae are 43 local governments and local government officials and advocacy organizations from every corner of the country, including within the Plaintiff States.[2]  Amici are economically, politically, and socially diverse, and they share a common interest in building communities where all residents, regardless of immigration status, feel safe and empowered to participate in civic life.  At their core, local governments exist to protect the health, safety, and welfare of their residents.  The Deferred Action for Childhood Arrivals (DACA) program and the current rule (2022 DACA Rule) directly benefit all of amici's residents by encouraging DACA recipients to openly participate in their communities and interact with local governments.

Before DACA was first instituted in 2012, many DACA recipients feared the basic tasks of everyday life, like going to work, attending school and church, or simply buying groceries.  Mothers and fathers with American citizen children often left in the morning uncertain if they would come home and see their children again.  DACA was created and exists to ameliorate fears like these:  DACA both focuses limited immigration enforcement resources on those with significant criminal history, and enables young people — who often know no country other than this one — to contribute to their communities.

---

[1] The parties do not oppose the filing of this brief.  No party's counsel authored this brief in whole or in part, and no person or entity other than amici or their counsel made a monetary contribution intended to fund the preparation or submission of this brief.  *See* Fed. R. App. P. 29(a)(4).

[2] Amici include:  City of Alexandria, Virginia; City of Baltimore, Maryland; City of Boston, Massachusetts; County of Boulder, Colorado; County of Cameron, Texas; Town of Carrboro, North Carolina; City of Central Falls, Rhode Island; Town of Chapel Hill, North Carolina; City of Chicago, Illinois; County of Contra Costa, California; County of Cook, Illinois; City of Culver City, California; City and County of Denver, Colorado; City of Durham, North Carolina; City of Gaithersburg, Maryland; City of Hartford, Connecticut; County of King, Washington; City of Lansing, Michigan; City of Long Beach, California; City of Los Angeles, California; County of Los Angeles, California; County of Marin, California; County of Milwaukee, Wisconsin; City of Minneapolis, Minnesota; County of Monterey, California; City of New Rochelle, New York; City of Oakland, California; City of Philadelphia, Pennsylvania; City of Rochester, New York; City of Sacramento, California; City of Saint Paul, Minnesota; City of San Diego, California; City and County of San Francisco, California; City of San Jose, California; County of Santa Clara, California; County of Santa Cruz, California; City of South Bend, Indiana; City of Tacoma, Washington; City of Tucson, Arizona; International Municipal Lawyers Association; National League of Cities; The United States Conference of Mayors; and Travis County Judge Andy Brown, in his official capacity as Travis County Judge.  A complete list of amici is provided at the end of this brief.

Amici will suffer substantial harm if the 2022 DACA Rule is set aside. DACA recipients live and work throughout this nation.[3] Just as an example, in Brownsville, the division in which this Court is located, over 2,000 DACA recipients call the metropolitan area home.[4] On average, DACA recipients have lived in the United States since they were six years old,[5] and they are no different than the tens of millions of people who live and work alongside them in amici's cities and counties. DACA recipients have become even more integrated into amici's communities over the decade since the policy began: In 2012, 45% of DACA recipients were in school, 60% were in the work force, and 22% had children.[6] Today, 15% are in school, 85% are in the work force, and 42% have children.[7]

DACA recipients contribute significantly to our communities and country. They are the firefighters, paramedics, and police officers who keep us safe. They are faith leaders serving as spiritual guides for our congregations. They are the entrepreneurs who build businesses and revitalize our local economies. They are the teachers and civil servants who transform our communities. And they are the students training to become our newest doctors, nurses, and lawyers. They inspire their families and our future generations. Without deferred action, these contributions would not be possible. Amici are stronger and safer because of DACA.

Amici submit this brief to inform the Court of the profound impact that DACA has had on recipients and communities like amici, and to highlight the consequences that setting aside the 2022 DACA Rule would have on amici and our residents. Any order of this Court on Plaintiffs' and Defendants' and Defendants-Intervenors' Motions for Summary Judgment should consider these significant reliance interests of DACA recipients and those who love and rely on them, as

---

[3] Nicole Prchal Svajlenka, *What We Know About DACA Recipients, by Metropolitan Area*, Ctr. for Am. Progress (Apr. 30, 2020), https://www.americanprogress.org/article/know-daca-recipients-metropolitan-area-2/.
[4] Figure is based on recipients' residency in a Core Based Statistical Area, as defined by the U.S. Office of Management and Budget, at the time of their most recent DACA application. *See* Notice of Filing of Quarterly Summary Reports, *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211-WHA (N.D. Cal. July 1, 2020), ECF No. 299.
[5] Phillip Connor, *DACA Decade: From Students to Careers and Families*, FWD.us (June 14, 2022), https://www.fwd.us/news/dacas-beneficiaries-after-10-years/#:~:text=Ten%20years%20on%2C%20DACA%20recipients,and%20establish%20their%20own%20families.
[6] *Id.*
[7] *Id.*

well as the interests of the communities to which they contribute. *Dep't of Homeland Sec'y v. Regents of the Univ. of Cal.*, 140 S.Ct. 1891, 1913-15 (2020).

Amici also address one of Plaintiffs' substantive claims and underscore how DHS's promulgation of the 2022 DACA Rule was not arbitrary and capricious. This Court directed DHS to reasonably consider forbearance without benefits and reliance interests in promulgating the 2022 DACA Rule, and DHS did exactly that. This Court should not substitute its judgment for DHS's.

Plaintiffs' efforts to set aside the 2022 DACA Rule jeopardize amici's interests by irreparably harming hundreds of thousands of DACA recipients and their families, coworkers, employers, and neighbors, as well as the local governments in amici's communities. If the 2022 DACA Rule is set aside, American citizen children will be separated from their DACA-recipient parents, critical public service sectors will face labor shortages, and local communities will suffer. The Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' and Defendants-Intervenors' Motions for Summary Judgment.

## ARGUMENT

### I.   <u>DACA Recipients Make Amici's Communities More Prosperous And Safe</u>

Since its inception in 2012, DACA has advanced amici's best interests by allowing recipients to live without fear in the communities they call home. Amici have witnessed firsthand how deferred action of immigration enforcement and employment authorization have changed hundreds of thousands of young people's lives. DACA recipients invested in their futures by going to college; they pursued careers, including skilled professions with the benefit of higher education; they reinvested in our communities by starting businesses, buying homes, and paying taxes; and they contributed to the social and civic life in our communities.

Day in and day out, amici reap the benefits that DACA recipients sow. DACA recipients are key contributors to amici's economies. They support the local labor force and invest their purchasing power in local businesses, yielding financial benefits to all residents. With protection from removal, DACA recipients interact with local governments and law enforcement without

fear, which enhances amici's public safety efforts to the benefit of all residents.  The Court should consider the positive effects that DACA has had on recipients, their families, and amici's communities and the substantial individual and community reliance interests at stake in ruling on Plaintiffs', Defendants', and Defendants-Intervenors' Motions for Summary Judgment.  *Regents of the Univ. of Cal.*, 140 S. Ct. at 1913-15.

### A. DACA Recipients Make Amici's Communities Stronger

DACA has dramatically improved recipients' lives and livelihoods.  Buoyed by the protection afforded by DACA and its pathway to lawful employment, countless recipients pursued higher education and meaningful careers, enriching their futures and enhancing both their own and amici's economic productivity.  Amici directly benefit from the myriad roles DACA recipients play in the workforce and our communities.

DACA recipients fill critical public safety roles and keep our communities safe.  For example, Houston-area paramedic Jesus Contreras, who came to the United States when he was just six years old,[8] worked six straight days during Hurricane Harvey to rescue people from the storm.[9]  Noe Vazquez and Christian Garcia Herrera are wildland firefighters in Washington who combat wildfires and prevent future fires.[10]  Many DACA recipients serve as police officers, too; California recently passed legislation permitting the state's police departments to hire DACA recipients.[11]  California-based DACA recipient Ernesto Moron — who attended the police academy and passed a comprehensive background check — said the bill will allow him "the opportunity to fulfill my dream to serve the communities where I was raised."[12]  In addition to working on the front lines as first responders, fire fighters, and police officers, hundreds of

---

[8] Sarah Calams, *Immigration and DACA: The Impact on First Responder Hiring*, FireRescue1 (Sept. 26, 2017), https://www.firerescue1.com/politics/articles/immigration-and-daca-the-impact-on-first-responder-hiring-Xc2EEblmPsHXdiGx/.

[9] Adolfo Flores, *This Paramedic Who Rescued Hurricane Harvey Victims May Be Deported If Trump Ends DACA*, BuzzFeed (Sept. 1, 2017), https://www.buzzfeednews.com/article/adolfoflores/daca-rescuer-hurricane-harvey.

[10] Lilly Fowler, *These Firefighters Face a Different Kind of Battle: Immigration*, Crosscut (Mar. 7, 2018), https://crosscut.com/2018/03/DACA-washington-firefighters-immigration-trump-dreamer.

[11] Marcella Lee, *New California Law Allows Non-U.S. Citizens to Become Police Officers*, CBS8 (Jan. 12, 2023), https://www.cbs8.com/article/news/local/california-law-allows-non-us-citizens-to-become-police-officers/509-c10419f3-12b1-475e-a6cf-eba00c5337f7#:~:text=SAN%20DIEGO%20%E2%80%94%20With%20the%20new,police%20officer%2C%20regardless%20of%20citizenship.

[12] *Id.*

DACA recipients protect our country by serving in the military as part of a Pentagon pilot program.[13]

Ending DACA will put an undue strain on our already stretched thin first responders. The Cleburne Fire Department in Cleburne, Texas, which employs DACA recipients, is severely short staffed.[14]  If DACA recipients lose the protection afforded by DACA, the fire department will lose key members of its brigade and bear the time and cost of finding, hiring, and training replacement workers.[15]  Likewise, the Washington fire department where Mr. Vazquez and Mr. Herrera work will lose four firefighters if DACA is set aside.[16]  As their supervisor put it, "that shuts a whole truck down.  I've got four people on a truck.  If I lose these four people we'll lose a resource, plain and simple."[17]

Other DACA recipients serve in fundamental roles as faith leaders.  Father Rey Pineda — a Catholic priest at Atlanta's Cathedral of Christ the King — helps people in times of spiritual need.[18]  Reverend Orlando Gallardo Parra, a pastor at United Methodist Church in Drexel, Missouri, said that DACA made it possible for him to be ordained and get a job as a pastor.[19] And Reverend John-Mark Hart, an evangelical pastor from Oklahoma City and advocate for Dreamers, notes that 80% of evangelical Christians support establishing a pathway to citizenship for Dreamers.[20]

DACA recipients, nearly 34,000 of whom are healthcare workers, also protect the health of residents in amici's communities.[21]  These include Dr. Manuel Bernal, an emergency

---

[13] Gregory Korte et al., *Trump Administration Struggles with Fate of 900 DREAMers Serving in the Military*, USA Today (Sept. 7, 2017), https://perma.cc/EH4W-2DSL.

[14] Calams, *supra* n.8.

[15] *Id.*

[16] Fowler, *supra* n.10.

[17] *Id.*

[18] Julie Zauzmer, *Atlanta Priest, a Dreamer, Leads Stressed Flock of Them*, Northwest Ark. Democrat Gazette (Jan. 27, 2018), https://www.nwaonline.com/news/2018/jan/27/atlanta-priest-a-dreamer-leads-stressed/.

[19] Kathy L. Gilbert, *DACA Decision Brings Joy, but Battle Not Over*, UM News (June 22, 2020), https://www.umnews.org/en/news/daca-decision-brings-joy-but-battle-not-over.

[20] John-Mark Hart, *Oklahoma Pastor: Continued Inaction on DACA Recipients is a Moral Failure*, The Oklahoman (Dec. 11, 2022), https://www.oklahoman.com/story/opinion/2022/12/11/oklahoma-pastor-continued-inaction-on-daca-recipients-is-moral-failure/69702322007/.

[21] Nicole Prchal Svajlenka & Trinh Q. Truong, *The Demographics and Economic Impacts of DACA Recipients: Fall 2021 Edition*, Ctr. for Am. Progress (Nov. 24, 2021), https://www.americanprogress.org/article/the-demographic-and-economic-impacts-of-daca-recipients-fall-2021-edition/#:~:text=Nov%2024%2C%202021-

medicine physician serving the Chicago area;[22] Dr. Jirayut New Latthivongskorn, a family medicine specialist in San Francisco;[23] and Ever Arias, an internal medicine resident in Southern California[24]—all of whom put their own health at risk to treat their neighbors infected with COVID-19.  Experts estimate that the United States will experience a physician shortage of as many as 124,000 people by 2034.[25]  Given these projections, ending legal protection and work authorization for DACA recipients who are physicians or in medical school will devastate the healthcare industry and endanger the welfare of Americans nationwide.  As one example, Yadira Bribiesca is a DACA recipient and medical student at UCLA School of Medicine who will graduate this year as an obstetrician and gynecologist.[26]  Absent the protections of DACA, Ms. Bribiesca will not be able to become a physician and practice in the United States, where she intends to fight against health inequities and engage in research and mentorship to empower immigrant communities.[27]  Health staffing shortages resulting from the loss of DACA will have a reverberating negative impact on amici, who need doctors, nurses, and other medical professions to staff our public hospitals and EMS services.

Similarly, the many DACA recipients in the teaching profession shape the future of amici's communities.  Some 20,000 recipients are teachers,[28] like Reyna Montoya, who was named in "Forbes: 30 Under 30" and who founded an organization that helps families transform trauma into hope and action.[29]  Bitia Saravia, who arrived in the United States at the age of 2,

---

,The%20Demographic%20and%20Economic%20Impacts%20of%20DACA%20Recipients%3A%20Fall%202021,billion%20in%20taxes%20each%20year.

[22] Bridget Balch, *DACA Physicians Serve on COVID-19 Front Lines*, Ass'n of Am. Medical Colleges (June 18, 2020), https://www.aamc.org/news-insights/daca-physicians-serve-covid-19-front-lines; *Dr. Manuel Bernal Mejia*, U.S. News, https://health.usnews.com/doctors/manuel-bernal-mejia-1422848.

[23] Balch, *supra* n.22; *Dr. Jirayut Latthivongskorn, MD*, Healthgrades, https://www.healthgrades.com/physician/dr-jirayut-latthivongskorn-du9thcj630.

[24] Ash-har Quraishi, *Legal Decision Could Impact Thousands of Undocumented Medical Workers*, ABC (Apr. 24, 2020), https://www.abcactionnews.com/news/national/coronavirus/legal-decision-could-impact-thousands-of-undocumented-medical-workers.

[25] Andis Robeznieks, *Doctor Shortages Are Here—and They'll Get Worse if We Don't Act Fast*, Am. Medical Ass'n (Apr. 13, 2022), https://www.ama-assn.org/practice-management/sustainability/doctor-shortages-are-here-and-they-ll-get-worse-if-we-don-t-act.

[26] Yadira Bribiesca, *Op-Ed: Protect the Dreamers. The U.S. Needs Doctors-in-Training Like Me*, L.A. Times (Oct. 3, 2022), https://www.latimes.com/opinion/story/2022-09-24/daca-healthcare-system-physician-shortage.

[27] *Id.*

[28] Svajlenka & Truong, *supra* n.21.

[29] *Our Hope*, Aliento, https://www.alientoaz.org/about-1; *The Team*, Aliento, https://www.alientoaz.org/team.

grew up in Houston; due to DACA, she is now a fifth grade teacher at J.L. Everhart Magnet Elementary in Longview, Texas.[30]  Karen Reyes, a DACA recipient who also arrived in the United States at the age of 2, teaches students who are deaf or hard of hearing at Galindo Elementary in Austin, Texas.[31]

A significant portion of DACA recipients continue to excel academically and stand to become leaders in their communities.  At least 46% of DACA recipients have a bachelor's degree or higher, and 83% of all currently enrolled DACA recipient students are pursuing the same.[32]  DACA recipients' educational accomplishments inspire younger generations, too: Guadalupe, who lives in Harris County, Texas, is studying mechanical engineering at Texas A&M University, and her little sisters, inspired by her achievement, now light up when they say, "I wanna be a doctor!"[33]

These stories show how DACA recipients add to the economic and social strength of their communities.  DACA recipients annually contribute at least $11 billion to California's GDP, with those residing in Los Angeles County responsible for approximately $5.5 billion of that amount.[34]  In Texas, DACA recipients annually contribute $8 billion in GDP.[35]  And in New York and Illinois, DACA recipients annually contribute over $2 billion to each state's GDP.[36]

---

[30] Raquel Torres, *Facing Deportation: East Texas Teacher Awaits Fate of American Dream and Promise Act*, Tyler Morning Telegraph (July 29, 2021), https://tylerpaper.com/news/local/facing-deportation-east-texas-teacher-awaits-fate-of-american-dream-and-promise-act/article_10d87bae-d543-11eb-870a-8bd15a4ff36d.html.
[31] KVUE News Staff, *Austin ISD Teacher Joins Fellow DACA Recipients for Discussion with President Biden*, KVUE (May 14, 2021), https://www.kvue.com/article/news/local/austin-isd-teacher-joins-fellow-daca-recipients-for-discussion-with-president-biden/269-21efa8fc-a37b-4255-b58c-01a509c66e41.
[32] *Deferred Action for Childhood Arrivals (DACA): An Overview*, Am. Immigration Council (Sept. 30, 2021), https://www.americanimmigrationcouncil.org/research/deferred-action-childhood-arrivals-daca-overview.
[33] Guadalupe, *Stories in Defense of Deferred Action for Childhood Arrivals*, Nat'l Immigration Law Ctr., https://www.nilc.org/issues/daca/daca-fifth-anniversary-stories/.
[34] Julia Wick, *L.A.-Area DACA Recipients Contribute Approximately $5.5 Billion Annually to Economy, Chamber Estimates*, LAist (Sept. 21, 2017), https://perma.cc/9VDJ-HEDB.
[35] *Texas Business Leaders Urge Congress to Provide Permanent Protections for Dreamers*, FWD.us (Oct. 6, 2022), https://www.fwd.us/news/texas-business-leaders-urge-congress-to-provide-permanent-protections-for-dreamers/.
[36] Silva Mathema, *Ending DACA Will Cost States Billions of Dollars*, Ctr. for Am. Progress (Jan. 9, 2017), https://perma.cc/7NSZ-Y2L7.

Nationwide, DACA recipients annually contribute $42 billion to the nation's GDP,[37] which is more than the 2021 GDP contributions of Vermont or Wyoming.[38]

Many DACA recipients are also entrepreneurs who drive local economies by starting businesses and creating jobs.  Alejandro Flores-Muñoz owns a food truck and catering enterprise serving individual customers and corporate clients in Denver.[39]  Andrew founded a trucking company employing 20 full-time workers and several contractors, and helps local farmers distribute their crops to major retailers.[40]  Stories like these are common among DACA recipients:  one study found that 8% of DACA recipients age 25 and older start new businesses, a rate of entrepreneurship more than double that of the general population.[41]

Given these statistics, DACA has a proven track record of improving recipients' earnings.  One survey found that the average hourly wages of DACA recipients increased by 86% after receiving DACA's protection and employment authorization, 79% of survey respondents reported that their increased earnings enabled their financial independence, and 53% of survey respondents moved to a job that better matches their education and training after receiving DACA.[42]  All told, DACA recipients and their households hold $24 billion in spending power.[43]

Local communities like amici directly benefit from the economic growth associated with DACA recipients' increased purchasing power.  Sixty percent of DACA recipients bought a car since receiving deferred action, translating to increased sales tax revenue and additional local revenue from registration and title fees.[44]  And 14% of DACA recipients bought their first home

---

[37] Jacqueline Varas, *The Fiscal Implications of the DACA Program*, Am. Action Forum (Jan. 18, 2018), https://www.americanactionforum.org/research/fiscal-implications-daca-program/.
[38] *News Release*, U.S. Dep't of Commerce, Bureau of Econ. Analysis 8 (Dec. 23, 2022), https://www.bea.gov/sites/default/files/2022-12/stgdppi3q22.pdf.
[39] Stephanie Griffith & Claudia Flores, *Dreamers Help Keep the Country Running During the Coronavirus Pandemic*, Ctr. for Am. Progress (Apr. 3, 2020), https://americanprogress.org/article/dreamers-help-keep-country-running-coronavirus-pandemic/.
[40] Tahmina Watson, *DACA Entrepreneurs Must Have a Path to Citizenship*, Above the Law (June 7, 2022), https://abovethelaw.com/2022/06/daca-entrepreneurs-must-have-a-path-to-citizenship/.
[41] Tom K. Wong et al., *DACA Recipients' Economic and Educational Gains Continue to Grow*, Ctr. for Am. Progress (Aug. 28, 2017), https://perma.cc/JT3D-6TVR.
[42] Deferred Action for Childhood Arrivals (DACA): An Overview, *supra* n.32.
[43] *Id.*
[44] *Id.*

since receiving DACA.[45]  Nationwide, DACA recipients are directly responsible for $566.9 million in annual mortgage payments and pay $2.3 billion in rent to their landlords each year.[46]

DACA also generates tax revenue fundamental to federal, state, and local government programs and services.  In the Los Angeles metropolitan area, DACA recipients annually pay nearly $785 million in federal taxes and close to $400 million in state and local taxes.[47]  In the Dallas and Houston metropolitan areas combined, DACA recipients annually pay approximately $493 million in federal taxes and nearly $276 million in state and local taxes.[48]  And in the San Francisco metropolitan area, DACA recipients annually pay $231.6 million in federal taxes and $103.4 million in state and local taxes.[49]  Nationwide, DACA recipient households pay an estimated $5.6 billion in federal taxes and $3.1 billion in state and local taxes every year.[50] Amici rely on these contributions to fund critical programs benefitting all of amici's residents.[51]

### B.   DACA Makes Amici's Communities Safer

In addition to making amici's communities more prosperous and vibrant, DACA also has made them safer because recipients can cooperate freely and effectively with law enforcement. Amici's community policing strategies call for trust and engagement between law enforcement and the people they protect.[52]  As police agencies themselves report, that trust is undermined when immigration enforcement and the threat of removal increases.[53]

Extensive evidence confirms that undocumented immigrants are less likely to report crimes, including violent crimes, when they fear that police contact will bring adverse

---

[45] *Id.*
[46] *Id.*
[47] Svajlenka, *supra* n.3.
[48] *Id.*
[49] *Id.*
[50] Deferred Action for Childhood Arrivals (DACA): An Overview, *supra* n.32.
[51] Svajlenka & Truong, *supra* n.21; *see also* Meg Wiehe & Misha Hill, *State & Local Tax Contributions of Young Undocumented Immigrants*, Inst. on Taxation & Econ. Policy (Apr. 30, 2018), https://perma.cc/WKL6-U2HJ.
[52] *See e.g.*, Hr'g Before the S. Comm. on the Judiciary, 114th Cong. 2 (2015) (statement of Tom Manger, Chief, Montgomery Cty., Md., Police Dep't, & President, Major Cities Chiefs Ass'n), https://perma.cc/SKM2-QKV9; Anita Khashu, *The Role of Local Police: Striking a Balance Between Immigration Enforcement and Civil Liberties*, Police Found. (Apr. 2009), https://perma.cc/KL5A-EQWR.
[53] John Burnett, *New Immigration Crackdowns Creating 'Chilling Effect' on Crime Reporting*, NPR (May 25, 2017), https://perma.cc/3VJ3-Q8NK.

immigration consequences.[54]  One study found that, due to fears that law enforcement officers will ask about immigration status, 67% of undocumented individuals are less likely to offer information to law enforcement as a witness and 70% are less likely to contact law enforcement even if they were victims of a crime.[55]  The consequences of this fear permeate well beyond unreported crimes:  when undocumented immigrants fear police presence, they are less likely to venture into public places, they interact less with schools and other public institutions, they patronize businesses less frequently, and they even change their driving patterns.[56]

When immigrants do not fear removal, they cooperate with law enforcement and make their communities safer.[57]  DACA directly supports amici's public safety efforts by decreasing fear of removal, strengthening community trust, and encouraging immigrant cooperation with law enforcement.  Nearly 80% of DACA recipients reported that they were less afraid of removal because of DACA,[58] and 60% reported that they were less afraid of law enforcement and more willing to report a crime than they would have been without DACA.[59]

Trust and cooperation with local law enforcement is particularly important for young people.  A study by the Bureau of Justice Statistics noted that young people aged 18 to 34 — a population encompassing most current DACA recipients — have a higher prevalence rate of victimization than that for older individuals.[60]  A strong rapport between immigrants in this age group and law enforcement is critical to protecting these young people and solving crime.  By

---

[54] *See, e.g.*, Nik Theodore, *Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement*, Dep't of Urban Planning & Policy, Univ. of Ill. at Chi. 5-6 (May 2013), https://perma.cc/4B5R-7JL4; Randy Capps et al., *Delegation and Divergence: A Study of 287(g) State and Local Immigration Enforcement*, Migration Policy Inst. 43 (Jan. 2011), https://perma.cc/T3PR-X4LG.
[55] Theodore, *supra* n.54.
[56] Capps et al., *supra* n.54.
[57] *See, e.g.*, Scott R. Baker, Econ. Dep't, Stanford Univ., *Effects of Immigrant Legalization on Crime: The 1986 Immigration Reform and Control Act* 1 (Apr. 20, 2013), https://perma.cc/G5WH-4EX3 (estimating that granting legal status to 1% of undocumented immigrants can lower crime rates by 2 to 6%).
[58] Zenén Jaimes Pérez, *A Portrait of Deferred Action for Childhood Arrivals Recipients: Challenges and Opportunities Three-Years Later*, United We Dream 23 (Oct. 2015), https://perma.cc/AGE7-X5UH.
[59] Roberto G. Gonzales, Ph.D. & Angie M. Bautista-Chavez, *Two Years and Counting: Assessing the Growing Power of DACA*, Am. Immigration Council (June 16, 2014), https://perma.cc/6UBEZ9AK.
[60] U.S. Dep't of Justice, NCJ 253043, *Criminal Victimization, 2018*, 16, 19, 31 (Sept. 2019), https://www.bjs.gov/content/pub/pdf/cv18.pdf.

increasing trust in law enforcement, DACA bolsters amici's public safety initiatives and makes entire communities safer.

## II.   The 2022 DACA Rule Is Not Arbitrary and Capricious

"Federal administrative agencies are required to engage in reasoned decisionmaking," *Michigan v. Env't Prot. Agency*, 576 U.S. 743, 750 (2015) (internal quotations omitted), and so the APA "requires that agency action be reasonable and reasonably explained," rather than "arbitrary and capricious." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 629 (5th Cir. 2022) (citing *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)).  Judicial review under the arbitrary and capricious standard is "deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* (citing *Prometheus Radio Project*, 141 S. Ct. at 1158).  An agency action is arbitrary and capricious where the agency has relied on irrelevant factors, entirely failed to consider an important aspect of the issue, offered an explanation for its decision that runs counter to the evidence, or acts in a way that is so implausible that it cannot be attributed to a difference in view.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  DHS engaged in none of these hallmarks of arbitrary and capricious decisionmaking in promulgating the 2022 DACA Rule.  To the contrary, DHS specifically considered the "important aspect[s] of the issue" raised by this Court in prior proceedings—namely, (i) an alternative to forbearance without the benefits of work authorization and lawful presence, and (ii) relevant reliance interests.  *See* Dkt. 575 at 74.

### A.   DHS Adequately Considered Alternatives to Forbearance Without Benefits

DHS sufficiently considered a rule that would provide forbearance without benefits.  In the proposed rule, DHS considered and preliminarily rejected an alternative rule that granted forbearance, but not work authorization, because such a rule would result in "substantially lower net benefits" for states and communities in which DACA recipients reside, like amici.  Dkt. 607-1, AR2022_100075-76.  As DHS explained, forbearance without work authorization would deprive the reliance interests of families, employers, and communities of DACA recipients,

11

including by causing "substantial economic losses" and "a great deal of human suffering."  *Id.* at AR2022_100076.  DHS also considered a rule that granted forbearance and work authorization, but withheld the status of lawful presence.  *Id.*  But DHS preliminarily rejected that proposal because: (i) such an approach would single out DACA recipients for differential treatment since other deferred action recipients maintain lawful presence, and (ii) some states tie benefits eligibility to lawful presence, leaving DACA recipients to experience unintended indirect impacts if DHS adopted this alternative.  *Id.*

Nevertheless, DHS solicited public comments about the viability of these and other alternatives.  *Id.*  DHS then received and considered over 16,000 public comments on the proposed rule, including comments submitted by amici like the County of Los Angeles that discussed the viability of DHS's proposed alternatives.[61]  Dkt. 611-4, AR2022_700001.  In the final rule, DHS noted that it received comments both in support of and against the proposed alternatives.  Dkt. 607-1, AR2022_100235-55.  The comments in opposition to a rule that granted work authorization centered on the argument that DHS lacks the authority to grant work authorization.  *Id.* at AR2022_100241.  But DHS reasonably explained that it interprets the law differently, in light of historical context.  Since at least the 1970s, DHS issued employment authorization to noncitizens without lawful immigration status, as long as the noncitizen received deferred action or another form of forbearance.  *Id.*  Therefore, in DHS's reasoned view, the argument against a rule that granted work authorization was insufficient to eliminate work authorization from the final rule.  *See* Dkt. 524-1 at 13-15.

Likewise, DHS received comments on whether it should withhold the tolling of unlawful presence in the final rule.  Public comments overwhelming supported including lawful presence in the final rule.  Dkt. 607-1, AR2022_100249-50.  Some comments opposed this provision because it would allow DACA recipients to access public benefits and avoid accrual of unlawful presence for inadmissibility purposes.  *Id.* at AR2022_100251.  In response, DHS reasonably

---

[61] Other amici also submitted public comments in support of the 2022 DACA Rule, including the City of Chicago, Illinois; the City and County of Denver, Colorado; the City of Los Angeles, California; the City of San Diego, California; the County of Santa Clara, California; and the United States Conference of Mayors.

explained that it disagreed with the comments expressing opposition because other beneficiaries of deferred action are in lawful presence, and there is no reason to treat DACA recipients differently. *Id.* at AR2022_100252. Additionally, as DHS explained, lawful presence is different from lawful status, and does not provide the benefits of lawful status. *Id.* So yet again, in DHS's well-informed view, the arguments against a final rule that withheld lawful presence were inadequate to eliminate it as a component of the final rule.

       **B.**     **DHS Considered Relevant Reliance Interests**

      DHS also sufficiently considered reliance interests, including of the Plaintiff States, in adopting the 2022 DACA Rule. In the proposed rule, DHS noted that there are reliance interests by states on both sides of the coin—some states have come to rely on DACA and its attendant benefits to communities, while other states rely on the pre-DACA status quo. *Id.* at AR2022_100068. DHS reasoned that, though it is aware of certain states' reliance interests on the pre-DACA status quo, the agency "does not believe they are sufficient to outweigh the many considerations . . . that support the proposed rule." *Id.* Nevertheless, DHS actively solicited comments on "potential reliance interests of all kind, including any reliance interests established prior to the issuance of the Napolitano Memorandum, and how DHS should accommodate such asserted reliance interests in the final rule." *Id.*

      DHS received and considered many comments regarding various reliance interests. Among the comments DHS considered was one from the Attorney General of Texas — the only comment from a state expressing general opposition to the proposed rule — that stated Texas's reliance interests on the pre-DACA status quo. *Id.* at AR2022_100215. That one comment from a single state expressing generalized opposition to the rule contrasted starkly to a joint comment submitted by the Attorneys General of 14 other states, who expressed those states' reliance interests on DACA. *Id.* After considering the comments from these State Attorneys General and others, DHS provided a reasoned explanation for why Texas's reliance interests did not outweigh the benefits of DACA or the reliance interests of the 14 other states. As DHS explained, a "comprehensive quantified accounting of local and State fiscal impacts specifically due to

DACA is not possible due to the lack of individual-level data on DACA recipients," yet nevertheless there is "scant evidence" that Texas suffers financial harm because of DACA, despite DHS's specific request for data and commentary on this issue. *Id.* at AR2022_100216. On the other hand, DHS noted the vast amount of evidence that DACA is beneficial to states: DACA does not increase, and even lowers, states' costs associated with law enforcement, healthcare, and education; DACA yields federal, state, and local tax revenue; and DACA provides an opportunity for recipients to make economic, educational, and civic contributions to their communities across the nation. *Id.* at AR2022_100216-17.

DHS's well-stated rationales for the 2022 DACA Rule establish a "rational connection between the facts found and the choice made" and are the exact types of reasonable explanations that courts find sufficient to satisfy the APA. *See Cmty. Fin. Servs. Ass'n of Am.*, 51 F.4th at 630-31; *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 449-52 (5th Cir. 2021) (holding that the FCC did not fail to consider important aspects of the rule where it "weighed the evidence differently" and "reached contrary but reasonable policy conclusions"). This Court should not superimpose its own policy judgment for DHS's reasoned judgment. *Cmty. Fin. Servs. Ass'n of Am.*, 51 F.4th at 629. Given DHS's thorough consideration of the important reliance interests at stake, including those of amici and DACA recipients in amici's communities, this Court should find that DHS's adoption of the 2022 DACA Rule is not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the Court should reject Plaintiffs' attempt to set aside the 2022 DACA Rule, deny Plaintiffs' Motion for Summary Judgment, and grant Defendants' and Defendants-Intervenors' Motions for Summary Judgment.

Dated:  March 9, 2023                           Respectfully Submitted,


By: /s/ *Michael J. Dundas*                     By: /s/ *Nicholas Whilt*

   Hydee Feldstein Soto                          Nicholas Whilt
    City Attorney                                 Attorney-in-Charge
   Michael J. Dundas (*pro hac vice*)             S.D. Tex. No. CA247738
   200 North Main Street                         James A. Bowman*
   City Hall East Suite 800                      Daniel R. Suvor (*pro hac vice*)
   Los Angeles, California 90012                 Kelsey A. Chandrasoma*
   Telephone:  (213) 978-8130                    O'Melveny & Myers LLP
   mike.dundas@lacity.org                        400 South Hope Street
                                                   Los Angeles, California 90071
   Attorneys for Amicus Curiae City of           Telephone:  (213) 430-6000
   Los Angeles, California                       Facsimile:  (213) 430-6407
                                                   nwhilt@omm.com

                                                   **pro hac vice* pending

                                                   Attorneys for Amicus Curiae County
                                                   of Los Angeles

*Additional Counsel for Amici Curiae Listed Below*

## LIST OF AMICI CURIAE

City of Alexandria, Virginia
City of Baltimore, Maryland
City of Boston, Massachusetts
County of Boulder, Colorado
County of Cameron, Texas
Town of Carrboro, North Carolina
City of Central Falls, Rhode Island
Town of Chapel Hill, North Carolina
City of Chicago, Illinois
County of Contra Costa, California
County of Cook, Illinois
City of Culver City, California
City and County of Denver, Colorado
City of Durham, North Carolina
City of Gaithersburg, Maryland
City of Hartford, Connecticut
County of King, Washington
City of Lansing, Michigan
City of Long Beach, California
City of Los Angeles, California
County of Los Angeles, California
County of Marin, California
County of Milwaukee, Wisconsin
City of Minneapolis, Minnesota
County of Monterey, California
City of New Rochelle, New York
City of Oakland, California
City of Philadelphia, Pennsylvania
City of Rochester, New York
City of Sacramento, California
City of Saint Paul, Minnesota
City of San Diego, California
City and County of San Francisco, California
City of San Jose, California
County of Santa Clara, California
County of Santa Cruz, California
City of South Bend, Indiana
City of Tacoma, Washington
City of Tucson, Arizona
International Municipal Lawyers Association
National League of Cities
The United States Conference of Mayors
Travis County Judge Andy Brown, in his official capacity as Travis County Judge

## LIST OF COUNSEL FOR ADDITIONAL AMICI CURIAE

Joanna C. Anderson
City Attorney
301 King Street
Alexandria, VA 22314

*Attorney for the City of Alexandria,*
*Virginia*

Kristyn Anderson
City Attorney
City Hall, Room 210
350 South Fifth Street
Minneapolis, MN 55415

*Attorney for the City of Minneapolis,*
*Minnesota*

Ebony M. Thompson
Acting City Solicitor
100 N. Holliday St., Suite 101
Baltimore, MD 21146

*Attorney for the Mayor and City Council of*
*Baltimore, Maryland*

Leslie J. Girard
County Counsel
168 West Alisal Street, 3rd Floor
Salinas, CA 93901

*Attorney for the County of Monterey,*
*California*

Adam Cederbaum
Corporation Counsel
City Hall, Room 615
Boston, MA 02201

*Attorney for the City of Boston,*
*Massachusetts*

Dawn Warren
Acting Corporation Counsel
515 North Avenue
New Rochelle, NY 10801

*Attorney for the City of New Rochelle,*
*New York*

Ben Pearlman
County Attorney
P.O. Box 471
Boulder, CO 80306

*Attorney for the County of Boulder,*
*Colorado*

Barbara J. Parker
City Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612

*Attorney for the City of Oakland,*
*California*

Juan A. Gonzalez
Attorney in Charge
Commissioners Court - Civil Legal Division
1100 E. Monroe Street
Brownsville, TX 78520

*Attorney for the County of Cameron, Texas*

Diana P. Cortes
City Solicitor
1515 Arch Street, 17th Floor
Philadelphia, PA 19102

*Attorney for the City of Philadelphia,*
*Pennsylvania*

Nicholas Herman
General Counsel
1526 E. Franklin St., Suite 200
Chapel Hill, NC 27514

*Attorney for the Town of Carrboro,*
*North Carolina*

Linda S. Kingsley
Corporation Counsel
30 Church Street, Room 400A
Rochester, NY 14614

*Attorney for the City of Rochester,*
*New York*

17

Matthew Jerzyk
City Solicitor
580 Broad Street
Central Falls, RI 02863

*Attorney for the City of Central Falls,*
*Rhode Island*

Ann Anderson
Town Attorney
405 Martin Luther King Jr. Boulevard
Chapel Hill, NC 27514

*Attorney for the Town of Chapel Hill,*
*North Carolina*

Celia Meza
Corporation Counsel
121 North LaSalle Street, Room 600
Chicago, IL 60602

*Attorney for the City of Chicago,*
*Illinois*

Thomas L. Geiger
Chief Assistant County Counsel
Administration Building
1025 Escobar St., 3rd Fl.
Martinez, CA 94553

*Attorney for the County of Contra Costa,*
*California*

Jessica M. Scheller
Chief; Advice, Business & Complex
Litigation Division - Civil Actions Bureau
Cook County State's Attorney
500 Richard J. Daley Center Place, 5th Floor
Chicago, IL 60602

*Attorney for the County of Cook, Illinois*

Heather S. Baker
City Attorney
9770 Culver Boulevard
Culver City, CA 90232

*Attorney for the City of Culver City,*
*California*

Susana Alcala Wood
City Attorney
915 I Street, Fourth Floor
Sacramento, CA 95814

*Attorney for City of Sacramento,*
*California*

Lyndsey M. Olson
City Attorney
15 West Kellogg Boulevard, Suite 400
Saint Paul, MN 55102

*Attorney for the City of Saint Paul,*
*Minnesota*

Mara W. Elliott
City Attorney
1200 Third Avenue, Suite 1620
San Diego, CA 92101

*Attorney for the City of San Diego,*
*California*

David Chiu
City Attorney
City Hall Room 234
One Dr. Carlton B. Goodlett Pl.
San Francisco, CA 94102

*Attorney for the City and County of*
*San Francisco, California*

Nora Frimann
City Attorney
200 E. Santa Clara St.
San Jose, CA 95113

*Attorney for the City of San Jose,*
*California*

James R. Williams
County Counsel
70 W. Hedding Street
East Wing, 9th Floor
San José, CA 95110

*Attorney for County of Santa Clara,*
*California*

18

Kerry Tipper
City Attorney
1437 Bannock Street, Room 353
Denver, CO 80202

*Attorney for the City and County of
Denver, Colorado*

Kimberly M. Rehberg
City Attorney
101 City Hall Plaza
Durham, NC 27701

*Attorney for the City of Durham,
North Carolina*

N. Lynn Board
City Attorney
31 S. Summit Avenue
Gaithersburg, MD 20877

*Attorney for the City of Gaithersburg,
Maryland*

Howard G. Rifkin
Corporation Counsel
550 Main Street, Room 210
Hartford, CT 06103

*Attorney for the City of Hartford, Connecticut*

Leesa Manion
Prosecuting Attorney
1191 Second Avenue, Suite 1700
Seattle, WA 98101

*Attorney for the County of King,
Washington*

Jim Smiertka
City Attorney
124 W. Michigan Ave.
Lansing, MI 48933

*Attorney for the City of Lansing, Michigan*

Jason M. Heath
County Counsel
701 Ocean Street, Room 505
Santa Cruz, CA 95060

*Attorney for the County of Santa Cruz,
California*

Sandra Kennedy
Corporation Counsel
227 W. Jefferson Blvd. Suite 1200S
South Bend, IN 46601

*Attorney for the City of South Bend,
Indiana*

William Fosbre
City Attorney
747 Market Street, Room 1120
Tacoma, WA 98402

*Attorney for the City of Tacoma,
Washington*

Mike Rankin
City Attorney
P.O. Box 27210
Tucson, AZ 85726

*Attorney for the City of Tucson,
Arizona*

Amanda Karras
General Counsel
51 Monroe Street, Suite 404
Rockville, MD 20850

*Attorney for the International Municipal
Lawyers Association*

National League of Cities
660 North Capitol Street NW
Washington, DC 20001

19

Dawn McIntosh
City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

*Attorney for the City of Long Beach,
California*

Brian E. Washington
County Counsel
3501 Civic Center Drive, Suite 275
San Rafael, CA 94903

*Attorney for the County of Marin, California*

Margaret C. Daun
Corporation Counsel
901 N. 9th Street, Room 303
Milwaukee, WI 53233

*Attorney for the County of Milwaukee,
Wisconsin*

The United States Conference of Mayors
1620 Eye Street, Northwest
Washington, DC 20006

Delia Garza
County Attorney
P.O. Box 1748
Austin, TX 78767

*Attorney for Travis County Judge Andy
Brown, in his official capacity as Travis
County Judge*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing document was automatically accomplished on all known filing users through the Court's CM/ECF system and/or in accordance with the Federal Rules of Civil Procedure on this 9th day of March, 2023.

/s/ *Nicholas Whilt*
Nicholas Whilt

21