**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-68 |
| | § | |
| UNITED STATES OF AMERICA, *et al.,* | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| KARLA PEREZ, *et al.,* | § | |
| | § | |
| Defendant-Intervenors. | § | |

**REPLY BRIEF OF DEFENDANT-INTERVENORS ELIZABETH DIAZ, ET AL.
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF THE ISSUES ...................................................................................1

INTRODUCTION .........................................................................................................1

ARGUMENT .................................................................................................................2

  I.  **Plaintiffs Still Fail to Demonstrate Standing.** ..............................................**2**

    A.  Plaintiffs Have Not Shown Any Direct, Redressable Injury from DACA. .....................3

    B.  Law of the Case and the Mandate Rule Do Not Save Plaintiffs' Claims. .......................6

    C.  The Fifth Circuit's Recent Decision in *Louisiana v. Biden* Confirms that Plaintiffs Are Not Entitled to Special Solicitude. ..................................8

    D.  Plaintiffs Long Ago Waived Any Reliance on Driver's License Costs. .........................9

  II.  **The 2022 Rule Is a Lawful Exercise of Executive Power.** .................................**10**

    A.  The Rule Is Consistent with the INA. ...............................................11

    B.  The Rule Is Not Arbitrary and Capricious. .....................................12

    C.  The Court Should Reject Plaintiffs' Constitutional Challenge to the 2022 Rule Based on Their Novel Interpretation of the Take Care Clause. ..................................13

  III.  **Plaintiffs Are Not Entitled to Vacatur or a Permanent, Nationwide Injunction.**........**13**

    A.  This Court Lacks Jurisdiction to Vacate and Enjoin DACA. ..........................14

    B.  Plaintiffs Fail to Justify a Nationwide Injunction. .........................16

    C.  Plaintiffs' Proposed Wind-down Is Arbitrary, Disruptive to DACA Recipients' Reliance Interests, and Foreclosed by Supreme Court Precedent. ...............................17

  **CONCLUSION** ..........................................................................................................**20**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alemite Mfg. Corp. v. Staff,*
  42 F.2d 832 (2d Cir. 1930) ................................................................................. 16

*Arizona v. United States,*
  567 U.S. 387 (2012) ............................................................................................ 11

*Avitia v. Metro. Club of Chi.,*
  49 F.3d 1219 (7th Cir. 1995) .............................................................................. 20

*Brackeen v. Haaland,*
  994 F.3d 249 (5th Cir. 2021) (en banc) ............................................................... 6

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) ............................................................................................ 19

*Ctr. for Bio. Diversity v. EPA,*
  937 F.3d 533 (5th Cir. 2019) ................................................................................ 2

*Culwell v. City of Fort Worth,*
  468 F.3d 868 (5th Cir. 2006) .............................................................................. 10

*Dep't of Homeland Sec. v. New York,*
  140 S. Ct. 599 (2020) .......................................................................................... 16

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020) .................................................................................. 18, 19

*Doe ex rel. Doe v. Dallas Independent School District,*
  220 F.3d 380 (5th Cir. 2000) ................................................................................ 4

*El Paso Cnty. v. Trump,*
  982 F.3d 332 (5th Cir. 2020) ............................................................................ 6, 7

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016) ............................................................................................ 19

*Feds for Medical Freedom v. Biden,*
  63 F.4th 366 (5th Cir. 2023) (en banc) .............................................................. 17

*Garland v. Aleman Gonzalez,*
  142 S. Ct. 2057 (2022) ................................................................................... 14, 15

*Gollust v. Mendell*,
501 U.S. 115 (1991) ................................................................................................7

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) ..............................................................................................20

*Judulang v. Holder*,
565 U.S. 42 (2011) ................................................................................................13

*Las Americas Immigr. Advoc. Ctr. v. Biden*,
571 F. Supp. 3d 1173 (D. Or. 2021) .....................................................................13

*Louisiana v. Biden*,
— F.4th —, 2023 WL 2780821 (5th Cir. Apr. 5, 2023) ...............................5, 8, 9

*Louisiana v. Biden*,
585 F. Supp. 3d 840 (W.D. La. 2022), *vacated and appeal dismissed*,
— F.4th —, 2023 WL 2780821 (5th Cir. Apr. 5, 2023) ........................................8

*Love v. Motiva Enterprises, LLC*
349 F. App'x 900 (5th Cir. 2009) ...........................................................................4

*Patterson v. Houston Indep. Sch. Dist.*,
570 F. App'x 367 (5th Cir. 2014) ...........................................................................9

*Payne v. Tennessee*,
501 U.S. 808 (1991) ..............................................................................................19

*Smiley v. Citibank (S. Dakota), N.A.*,
517 U.S. 735 (1996) ..............................................................................................19

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..................................................................................................7

*Texas v. Biden* (*MPP*),
20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022) ...............3, 4, 5

*Texas v. United States* (*DAPA*),
809 F.3d 134 (5th Cir. 2015) ..........................................................................10, 11

*Texas v. United States* (*DAPA*),
86 F. Supp. 3d 591 (S.D. Tex. 2015) ....................................................................11

*Texas v. United States* (*Texas (Memo)*),
50 F.4th 498 (5th Cir. 2022) ................................................................2, 7, 11, 15

*Texas v. United States* (*Texas (Memo)*),
549 F. Supp. 3d 572 (S.D. Tex. 2021) ................................................2, 11, 13

*Texas v. United States (Texas (Memo))*,
  2021 WL 3022434 (S.D. Tex. July 16, 2021) ........................................................ 19

*Texas v. United States (Texas (Memo))*,
  328 F. Supp. 3d 662 (S.D. Tex. 2018) ............................................................ 13, 17

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .............................................................................. 7

**Statutes**

6 U.S.C. § 202(5) ..................................................................................... 14

8 U.S.C. § 1103(a)(1) ................................................................................ 14

8 U.S.C. § 1252(f)(1) ............................................................................. 1, 14

8 U.S.C. § 1255(i) .................................................................................... 12

8 U.S.C. § 1255(l) .................................................................................... 12

8 U.S.C. § 1255(m) ................................................................................... 12

8 U.S.C. § 1324a(h)(3) ................................................................................ 13

**Rules & Regulations**

8 C.F.R. § 212.7(e) ................................................................................... 12

8 C.F.R. § 236.22(b)(2) ................................................................................ 5

8 C.F.R. § 274a.12(c)(14) ............................................................................. 13

Fed. R. Civ. P. 56(c)(2) ............................................................................... 9

Fed. R. Civ. P. 56(d) ................................................................................. 10

**Other Authorities**

Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747 (1982) ......................... 17

## STATEMENT OF THE ISSUES

Defendant-Intervenors Elizabeth Diaz, *et al.* submit this Reply in support of their Motion for Summary Judgment, Dkt. 641, which they respectfully request that the Court grant.

## INTRODUCTION

In their Response, Plaintiffs accuse Defendant-Intervenors of "fighting the last war," Resp. at 29, but it is Plaintiffs who fail to grapple with how the facts and the law have changed.[1]  As Defendant-Intervenors explained, the 2022 Rule is not the 2012 Memorandum: the Rule unambiguously requires DHS to exercise discretion before granting DACA, and it explicitly allows DHS to terminate a grant of DACA at any time in its discretion.  *See* Br. at 10–14.  Nor are DACA recipients now the same as they were in 2012 (when DHS issued the Memorandum) or even in 2018 (when Plaintiffs finally challenged it).  Rather, today's narrower group of potential DACA recipients are older, more likely to be employed in higher-wage jobs, and more likely to be married and to have U.S. citizen children.  Those factual changes undermine each component of Plaintiffs' case.  *See id.* at 10–16.  The law has also changed.  Since this Court ruled on the Memorandum, recent Fifth Circuit decisions have undermined Plaintiffs' already tenuous theories of standing; the Supreme Court has held that 8 U.S.C. § 1252(f)(1) prohibits this Court from enjoining the Rule; and cases now pending before the Supreme Court may further erode Plaintiffs' already-insufficient arguments for standing, vacatur, and a nationwide remedy.  *See id.* at 19–24, 30–32, 41–49.

Plaintiffs fail to meaningfully address these changes.  Instead, Plaintiffs continue to rely

---

[1] Citations to "Resp." or "Response" refer to Plaintiffs' Reply in Support of Their Motion for Summary Judgment and Memorandum in Opposition to All Cross-Motions for Summary Judgment, Dkt. 673.  Citations to "Br." or "Brief" refer to the Brief of Defendant-Intervenors in Support of Their Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, Dkt. 642.  Capitalized terms used but not defined in this Reply have the meanings ascribed to them in the Brief.

heavily on supposedly implicit holdings in this Court's and the Fifth Circuit's decisions in *Texas (Memo)*, 549 F. Supp. 3d 572 (S.D. Tex. 2021); 50 F.4th 498 (5th Cir. 2022), combined with the discretionary doctrine of law-of-the-case and the inapplicable mandate rule to argue that the Court need not consider the 2022 Rule afresh. *See, e.g.*, Resp. at 1, 19, 33–40. Yet, while arguing that nothing has changed and that *Texas (Memo)* controls this case, Plaintiffs also simultaneously argue—for the first time—that they have standing based on Texas's purported costs of issuing driver's licenses to DACA recipients. *See id.* at 40–44. Plaintiffs make this eleventh-hour argument despite explicitly and repeatedly disavowing any driver's license injury during the past five years of litigation. *See* Dkt. 105 at 2–3, Dkt. 302 at 36:5–21, 71:21–72:19 (Texas responding to the Court's question about the lack of driver's license evidence by arguing that "we don't need driver's license costs in this case to support our standing"); *see also* Dkt. 318 (granting motion to exclude declarations from undisclosed Plaintiff witnesses, including a declaration from the Assistant Director of Texas's Department of Public Safety Driver License Division discussing driver's license costs); Ex. A at 2 (Plaintiffs reaffirming that they "do not intend to rely on [the excluded driver's license] declarations at this time"). Plaintiffs waived their reliance on driver's license costs years ago, and they are not entitled to an eleventh-hour change in position, without *any* discovery on this issue. For that reason, as well as the reasons explained below and in Defendant-Intervenors' Brief, Defendant-Intervenors request that the Court deny Plaintiffs' motion for summary judgment and grant summary judgment for Defendant-Intervenors.

## ARGUMENT

## I.   PLAINTIFFS STILL FAIL TO DEMONSTRATE STANDING.

At summary judgment, standing requires more than probabilities and possibilities—it requires Plaintiffs to demonstrate a concrete connection between the complained-of conduct and the alleged injury. *See, e.g.*, *Ctr. for Bio. Diversity v. EPA*, 937 F.3d 533, 545 (5th Cir. 2019).

Yet, after more than five years of litigation, Plaintiffs still cannot tie any of their asserted harms to DACA, let alone demonstrate that those harms would be redressed by DACA's termination.  Br. at 16–30.  It was Plaintiffs' burden to identify such evidence, *id.* at 16–17 (collecting cases), and they have failed to do so.  The Response does nothing to address these fundamental flaws.

### A.    Plaintiffs Have Not Shown Any Direct, Redressable Injury from DACA.

Plaintiffs attempt to escape their heavy burden by suggesting that what Defendant-Intervenors are demanding—evidence connecting Plaintiffs' supposed injuries to any DACA recipients, *see* Resp. at 35–36—is impossible.  While adducing such evidence may not be possible for Plaintiffs in this case, Defendant-Intervenors demand nothing more than what Article III requires: a traceable, redressable connection between the Rule and Plaintiffs' asserted harm.  *See* Br. at 19–29.  That connection is wholly missing here, and Plaintiffs' heavy reliance (Resp. at 35–36) on *Texas v. Biden* (*MPP*), 20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022), only underscores the deficiencies in Plaintiffs' evidence.  In *MPP*, the states challenging the Migrant Protection Protocols' termination presented "*past and present* facts" showing that the number of undocumented immigrants paroled into those states had *actually* increased when DHS ended the policy.  *Id.* at 972–73.  Thus, in *MPP*, neither the district court nor the Fifth Circuit needed to "prognosticate" about "the *future* choices of third parties"—speculation that the Fifth Circuit noted would be wholly insufficient to confer standing.  *Id.*

Here, by contrast, Texas—the only Plaintiff that has even *attempted* to show standing, *see* Br. at 19—can only speculate.  Texas has not identified even a single cent spent on healthcare, policing, or education specifically for DACA recipients.  *See* Br. at 19–22.  Texas and the other Plaintiff states also concede they must provide social services to DACA recipients "regardless of legal status," Resp. at 34, meaning that Texas's standing argument is premised entirely on injuries

allegedly caused by DACA recipients' *presence—not* their receipt of DACA.[2]  Indeed, as Dr. Perryman explained, Texas incurs social services costs "not because [of] DACA," but "because [the DACA recipients] are here."  Dkt. 400-2, Ex. 7 ¶ 14.[3]  Texas's supposed injuries would thus be traceable to DACA, and redressed by DACA's termination, *only* if (i) DACA caused more DACA recipients to remain in Texas and (ii) DACA's termination would cause DACA recipients to leave Texas.  But on those critical points, Plaintiffs offer only "speculation about the *future* choices of third parties." *MPP*, 20 F.4th at 972–73.  The record is wholly devoid of—and Plaintiffs have repeatedly failed to identify—*any* historical evidence showing that DACA's termination would cause (or not cause) DACA recipients to leave Texas.  *See* Br. at 26–29.  And the only "prognostications" on which Plaintiffs purport to rely, Dr. Wong's stale survey and Dr. Potter's uninformed guess, address the 2012 Memorandum, *not* the 2022 Rule and are wholly insufficient. *See id.*  Plaintiffs do not even try to rehabilitate that supposed evidence in their Response.

Plaintiffs also misunderstand the relevant counterfactual for the purposes of traceability and redressability, rendering their reliance on *MPP* even more inapt.  *See* Resp. at 35–36.  In *MPP*, the Fifth Circuit dismissed as irrelevant the remote, theoretical "possibility that *any given parolee* would have been paroled even under MPP" because in a counterfactual, no-MPP world, nearly all

---

[2] Plaintiffs' focus on education and healthcare costs, Resp. at 35 nn.10–11, only reinforces that Plaintiffs would incur any (as yet unidentified) costs because of DACA recipients' *presence* and not their receipt of DACA.

[3] Plaintiffs argue that the Court and the Fifth Circuit have already and should continue to ignore Dr. Perryman's affidavit under the "sham affidavit" doctrine.  Resp. at 41 n.12.  Yet Plaintiffs' own case law is inapposite.  *See, e.g.*, *Love v. Motiva Enterprises, LLC* 349 F. App'x 900, 903–04 (5th Cir. 2009) (discrediting a subsequent affidavit due to inconsistency and appearance of personal animus); *Doe ex rel. Doe v. Dallas Independent School District*, 220 F.3d 380, 386 (5th Cir. 2000) (discredited affidavit provided no explanation).  Here, Plaintiffs tellingly do not question Dr. Perryman's perspective or knowledge, and Dr. Perryman explained that he wanted to *clarify* that he had done no analysis of costs imposed on Texas by DACA recipients and could not reliably opine on them.  *See* Dkt. 400-2, Ex. 7.  Dr. Perryman's declaration is thus distinct from the "sham affidavits" in Plaintiffs' cited cases, making this rule wholly inapplicable.

parolees would have been forced to remain outside the United States.  *See* 20 F.4th at 971.  Here, by contrast, the counterfactual is exactly reversed: every DACA recipient was, by definition, already in the United States *before* DACA's implementation.  *See* 8 C.F.R. § 236.22(b)(2); *see also* Br. at 19–22.  Thus, DACA did not cause (and its termination would not redress) Plaintiffs' social services expenditures; "it's not because they have DACA, it's because they are here."  Dkt. 400-2, Ex. 7 ¶ 14; *see also* Resp. at 34 (conceding that Plaintiffs are "required to provide [social] services regardless of legal status").  The appropriate comparison is thus whether DACA recipients would have been, and will remain, in Texas without DACA.  And, on that point, Plaintiffs have introduced only Dr. Wong's outdated survey and Dr. Potter's rank speculation, Br. at 26–29—exactly the type of "conjectural or hypothetical" evidence that *MPP* demonstrates is insufficient.  20 F.4th at 971 (cleaned up).

Plaintiffs' failure to prove traceability and redressability is further underscored by the Fifth Circuit's recent decision in *Louisiana v. Biden*, — F.4th —, 2023 WL 2780821 (5th Cir. Apr. 5, 2023).  In *Louisiana*, states challenged the reestablishment of a federal interagency environmental working group and the group's "Interim Estimates" as to certain greenhouse gases.  The states asserted standing based on "financial harm related to their oil and gas leasing projects" but "fail[ed] to allege any specific lease or project that was rejected due to the Interim Estimates."  *Id.* at *1, 5.  As a result, the Fifth Circuit rejected the states' claim to standing, holding that under the states' theory of harm—which relied on a "highly attenuated chain of possibilities"—the alleged harms "would have occurred *with or without* the Interim Estimates."  *Id.* at *4 (emphasis added).

Just like in *Louisiana*, Plaintiffs' standing arguments fail to demonstrate traceability and redressability.  Texas has not identified any specific expenditures on DACA recipients, and even if it had, Texas would have incurred those (unidentified) costs regardless of DACA.  As a result,

Plaintiffs cannot connect any still-unproven harm to DACA itself, and cannot prove that DACA's termination would redress their alleged injuries.[4]  That is especially true with respect to the 2022 Rule, for which Plaintiffs' evidence is particularly insufficient.  *See* Br. at 21–22.  Because Plaintiffs lack standing, the Court should enter summary judgment for Defendant-Intervenors.[5]

### B.    Law of the Case and the Mandate Rule Do Not Save Plaintiffs' Claims.

In their Response (at 36–40), Plaintiffs again urge the Court to rely on the doctrine of law of the case and the mandate rule to overlook changes in the facts and the law.  But "[s]tanding must exist at all stages of the litigation."  *El Paso Cnty. v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020); *see also* Br. at 16–19, 28–29.  The discretionary law of the case doctrine and this Court's and the Fifth Circuit's supposed "implicit" holdings in *Texas (Memo)*, Resp. at 38–39, thus do not control the outcome here.  Simply put, Plaintiffs cannot rely on evidence related to the 2012 Memorandum to demonstrate their standing to challenge the 2022 Rule.  *See* Br. at 16–19, 28–29.

To start, Plaintiffs are incorrect that Defendant-Intervenors mistake standing for mootness. Resp. 37.  Plaintiffs hasten to explain that their Supplemental Complaint (Dkt. 623) does not amend or supersede their Amended Complaint (Dkt. 104), asserting that it *supplements* it by adding new claims challenging the 2022 Rule.  *See* Resp. 37 (the Amended Complaint "is still the

---

[4] Because Plaintiffs argue (Resp. at 16–18) that vacatur would not actually require DHS to refrain from implementing DACA, Plaintiffs themselves apparently believe that vacatur would not even necessarily redress their alleged injuries.  *See* Br. at 43; Part III, *infra*.

[5] Plaintiffs devote just a sentence and a footnote to defending their novel theory of *parens patriae* standing—and for good reason.  As Defendants-Intervenors explained (Br. at 23–26), states cannot sue the federal government as *parens patriae*.  Although Texas makes much of Defendant-Intervenors' citation to *Brackeen v. Haaland*, 994 F.3d 249 (5th Cir. 2021) (en banc), Texas cannot dispute that half of the Fifth Circuit's judges agree that basic federalism principles entirely foreclose Texas's theory of *parens patriae* standing.  *See* Resp. at 34 n.9.  And the Fifth Circuit in *Texas (Memo)* did not rule otherwise.  Particularly because the Supreme Court is considering *parens patriae* in three pending cases, *see* Br. at 24, this Court should not adopt Texas's unsupported theory without further guidance from the Fifth Circuit and the Supreme Court.

live pleading"). However, because "[s]tanding is not dispensed in gross," Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Plaintiffs thus must prove they have standing to bring their new claims against the 2022 Rule in the Supplemental Complaint. To require less would absolve Plaintiffs of their Article III standing burden.

In any event, whether viewed through the lens of standing or mootness, Article III requires "the plaintiff [to] maintain a personal stake in the outcome of the litigation throughout its course." *Gollust v. Mendell*, 501 U.S. 115, 126 (1991) (cleaned up). Accordingly, Plaintiffs cannot recycle stale evidence about the 2012 Memorandum to establish standing to challenge the 2022 Rule. Plaintiffs have offered *no* competent evidence that the 2022 Rule is likely to cause them concrete injury, or that such an injury would be redressed by vacating the 2022 Rule. To meet their basic constitutional obligations, Plaintiffs must submit evidence to support their standing to challenge the 2022 Rule; they cannot rely on mere assumptions and unsupported extrapolations, let alone outdated evidence. *See, e.g.*, *El Paso*, 982 F.3d 332 at 341; *see also* Br. at 16–19, 28–29. That is especially true because the 2022 Rule differs from the 2012 Memorandum in ways that strike at the core of Plaintiffs' standing arguments, *see* Br. at 10–19, and Plaintiffs make no effort to address those changes.

The mandate rule is also inapplicable. In *Texas (Memo)*, the Fifth Circuit explicitly declined to decide whether it had jurisdiction to review the 2022 Rule. 50 F.4th at 512 ("*Assuming without deciding that we . . . have jurisdiction* to review the 2022 Rule, we decline to do so at this juncture") (emphasis added). Ignoring this clear statement would ignore the entire reason for remand, and give precedential effect to a drive-by jurisdictional ruling, which the Supreme Court has declared inappropriate. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91

(1998).  The Fifth Circuit's mandate simply does not prevent this Court from considering standing

on remand, and Plaintiffs have failed to produce evidence to carry their Article III burden.

> **C.**      **The Fifth Circuit's Recent Decision in *Louisiana v. Biden* Confirms that Plaintiffs Are Not Entitled to Special Solicitude.**

Plaintiffs continue to rely heavily on special solicitude to fill in the gaps in their shaky

standing arguments.  Resp. at 34.  Yet *Louisiana v. Biden*, decided just this month, not only

forecloses Plaintiffs' theories of traceability and redressability, *see* Part I.A, but also wholly

undermines Plaintiffs' purported entitlement to special solicitude.  In *Louisiana*, the state plaintiffs

argued that the federal interagency environmental working group interfered with their sovereign

interests "by imposing substantial pressure on [the plaintiff states] to change their practices and

laws to remain in compliance with federal standards."  *Louisiana v. Biden*, 585 F. Supp. 3d 840,

859 (W.D. La. 2022) (cleaned up), *vacated and appeal dismissed*, — F.4th —, 2023 WL 2780821

(5th Cir. Apr. 5, 2023).  The Fifth Circuit flatly rejected the district court's reliance on special

solicitude, reasoning that there was no "direct effect on Plaintiffs' law or policy."  *Louisiana*, 2023

WL 2780821 at *5.  Because the working group's estimates affected only "federal executive

departments and agencies," the alleged injury lacked the "hallmarks" of "special solicitude"—any

impact on the plaintiff states' sovereign interests.  *Id.*

As in *Louisiana*, the 2022 Rule merely channels the federal government's discretion with

respect to immigration.  It does not interfere with Plaintiffs' laws or policies precisely because, as

Plaintiffs concede, "classif[ying] aliens and their status [ ] is a power only the federal government

can exercise."  Pls.' Mot. for Summary J. ("Pls.' Mot."), Dkt. 625, at 29.  Nor have Plaintiffs

offered *any* evidence that the 2022 Rule placed them under any "substantial pressure" to "change

*their* laws," as *Louisiana* requires.  2023 WL 2780821 at *5.  Finally, even if Plaintiffs could

somehow invoke special solicitude, summary judgment for Defendant-Intervenors would still be

required.   As *Louisiana* confirms, "[r]egardless of the applicability of the special solicitude, Plaintiffs must still satisfy the basic requirements of standing." *Id.*  Plaintiffs have not and cannot, so they lack standing regardless of whether special solicitude lowers their burden.

###### D.  Plaintiffs Long Ago Waived Any Reliance on Driver's License Costs.

Plaintiffs audaciously attempt to salvage their failed claim to standing by introducing—for the first time in their summary judgment Response—purported evidence of driver's license costs. But Plaintiffs have expressly and emphatically disclaimed this theory, multiple times and over the course of years. *See, e.g.*, Dkt. 105 at 2-3; Dkt. 302 at 71:21–72:19.  Plaintiffs even went so far as to tell the Court, in response to the Court's question why Plaintiffs chose not to rely on driver's license costs,  that they "don't need driver's license costs in this case to support [ ] standing."  Dkt. 302 at 71:21–72:19.   In fact, Plaintiffs suggested to the Court that Texas's supposed driver's license costs would not support standing in this case because "with DACA, the DACA recipients largely already have driver's licenses, and they pay a $24 fee to renew their licenses" *Id.*  Texas's belated driver's license arguments and the affidavit submitted in support are thus egregiously untimely and inappropriate, and are not properly before the Court.  *See* Fed. R. Civ. P. 56(c)(2); *see also Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 369–70 (5th Cir. 2014) (district court did not abuse its discretion in striking summary judgment evidence where, unlike in this case, plaintiff merely failed to disclose, and did not explicitly waive reliance on, evidence).

Anticipating objections to their improper, belated introduction of and reliance on waived evidence and novel theories that they have explicitly disclaimed in the past, Plaintiffs misleadingly cite their Supplemental Complaint to argue that Defendants were somehow on notice that driver's license costs were a live issue.  *See* Resp. at 43 (citing Supp. Compl. ¶ 135).  Yet this citation merely quotes a reference to "social services . . . costs" from the Fifth Circuit's decision in *Texas (Memo)*—in which Plaintiffs *intentionally declined* to rely on driver's license costs.  *See* Supp.

Compl. ¶ 135 (DACA recipients' "departure would reduce the State's Medicaid, social services and education costs for those individuals and their families who depart with them.").

Plaintiffs have had five years to develop their standing evidence.  And *DAPA*, 809 F.3d 134 (5th Cir. 2015)—in which Texas *did* invoke costs associated with driver's licenses—was decided two-and-a-half years before Plaintiffs filed their initial complaint, and more than *seven* years before Plaintiffs filed the operative complaint.  Plaintiffs plainly were aware of this issue and repeatedly chose not to raise any driver's license–related evidence.  *See*, *e.g.*, Dkt. 302 at 71:21–72:19; Ex. B at 29:11–22 (addressing lack of driver's license evidence in Fifth Circuit argument).  It is improper, after five years of litigation; extensive discovery; multiple rounds of summary judgment briefing; and an appeal to the Fifth Circuit, for Plaintiffs now, for the first time, in a reply brief on competing motions for summary judgment, to introduce new evidence regarding which Defendant-Intervenors have had no opportunity for discovery.  Plaintiffs should be held to the theories of standing upon which they have relied; their driver's license affidavit is not properly in the record, and this Court should not consider it.  Should the Court decide to consider the affidavit, it should reopen discovery under Federal Rule of Civil Procedure 56(d) so that Defendant-Intervenors are afforded the necessary opportunity to test the evidence in support of Plaintiffs' previously disclaimed theory of standing.  *See* Rule 56(d) Decl. of N. Perales; *see also Culwell v. City of Fort Worth*, 468 F.3d 868, 871–72 (5th Cir. 2006) (Rule 56 motions for further discovery "are broadly favored and should be liberally granted" to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose").

## II.    THE 2022 RULE IS A LAWFUL EXERCISE OF EXECUTIVE POWER.

Plaintiffs do not seriously dispute that the 2022 Rule requires DHS to exercise individualized, case-by-case discretion, *see* Resp. at 29; that the Take Care Clause does not create an implied right of action, *see* Resp. at 30; or that DHS adequately weighed DACA's costs and

benefits, *see* Resp. at 32.  Rather, Plaintiffs boldly assert that these key concessions on their part do not affect DACA's lawfulness.  Plaintiffs are wrong on each front.

### A.    The Rule Is Consistent with the INA.

As Defendant-Intervenors explained, *see* Br. at 11–13, 34–35, the 2022 Rule is a far cry from the "class-wide" grant of legal presence and work authorization that this Court and the Fifth Circuit determined existed with respect to DAPA and the 2012 Memorandum.  *See, e.g.*, *DAPA*, 809 F.3d at 170, 184 (rejecting DAPA's attempt to "change the immigration classification of millions of illegal aliens on a class-wide basis"); *Texas (Memo)*, 50 F.4th at 526 (similar); *Texas (Memo)*, 549 F. Supp. 3d at 611 (similar).  By requiring individualized, case-by-case determinations, the 2022 Rule is consistent with DHS's historical practice, *see* Br. at 36–37, and with the "broad discretion exercised by immigration officials" that is a "principal feature" of the INA.  *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see also* Br. at 11–13, 33.

Plaintiffs do not explicitly disagree.  *See* Resp. at 28–29.  Instead, Plaintiffs merely assert that "the amount of discretion granted to agents *simply has no bearing* on the Final Rule's substantive compliance with the INA, the Constitution, or the requirements of reasoned decisionmaking under the APA."  *Id.* at 29 (emphasis added).  Plaintiffs are wrong.  "[A]s a general principle, the decision to prosecute or not prosecute an individual is, with narrow exceptions, a decision that is left to the Executive Branch's discretion."  *DAPA*, 86 F. Supp. 3d 591, 644–45 (S.D. Tex. 2015).  Thus, even under *DAPA* and *Texas (Memo)*, so long as DACA merely guides individualized, case-by-case discretion, rather than granting class-wide relief, it is entirely consistent with the INA.  *See, e.g.*, *id.*; *see also Arizona*, 567 U.S. at 396 (immigration officials exercise "broad discretion" in deciding "whether it makes sense to pursue removal at all").  Defendant-Intervenors cited specific provisions in the Rule and portions of the administrative record to demonstrate that the Rule requires DHS to exercise discretion in an individualized, case-

11

by-case manner with respect to a diminishing population of potential DACA recipients. *See* Br. at 11–14. In response, Plaintiffs offer only a naked and unsupported assertion to the contrary. *See* Resp. at 29. By failing to muster any evidence or argument in opposition, Plaintiffs have conceded the point, and Defendant-Intervenors are entitled to summary judgment as to DACA's lawfulness.[6] At the very least, the Court should deny Plaintiffs' motion. *See* Resp. at 28–29 (arguing discretion is not a material fact but not disagreeing that it is at least in genuine dispute).

### B.   The Rule Is Not Arbitrary and Capricious.

Plaintiffs concede that DHS "adequately assess[ed] the costs and benefits of employment authorization for DACA recipients relating to American workers." Resp. at 32. That concession alone defeats Plaintiffs' claim that the Rule is arbitrary and capricious. *See* Br. at 37–40 (collecting cases). Nonetheless, Plaintiffs argue that DHS "is not licensed to second-guess [Congress's determination] based on economic studies." Resp. at 32. But what, exactly, Congress is purported to have already determined, Plaintiffs do not say. *See id.* If Plaintiffs mean to suggest that Congress has determined that DHS should avoid harming American citizen workers, *see* Mot. at 24, then DHS's cost-benefit analysis—which found that DACA would generate significant economic *benefits*, *see, e.g.*, Br. at 8—is entirely *consistent* with Congress's determination. If, instead, Plaintiffs mean to argue that Congress has determined that DACA recipients should not be granted work authorization, then Plaintiffs' arbitrary-and-capricious claim merely repackages

---

[6] Plaintiffs' arguments regarding supposed "benefits" granted by DACA are also unavailing. Plaintiffs have asserted that advanced parole is a "benefit" that allowed 14,000 DACA recipients "who otherwise would not be able to adjust their status" to secure a green card. Mot. at 18; *see also* Resp. at 25–26, 28. But Plaintiffs fail to provide any evidence or otherwise respond to Defendant-Intervenors' argument (Br. at 32–35, 46–47) that DACA recipients do not need DACA to apply for advanced parole or to obtain their green cards. *See, e.g.*, 8 U.S.C. § 1255(i), (*l*), (m); 8 C.F.R. § 212.7(e). Nor do Plaintiffs convincingly respond to Defendant-Intervenors' argument that lawful presence and work authorization flow not from DACA but from long-standing (and unchallenged) policies and regulations. *See* Br. at 32–35 (collecting authority).

their argument that the Rule is contrary to the INA—and it fails for the same reasons as does that challenge: the INA recognizes DHS's authority to grant work authorization. *See* 8 U.S.C. § 1324a(h)(3). The Rule is also consistent with other unchallenged regulations, *see* 8 C.F.R. § 274a.12(c)(14), and with historical practice, including Family Fairness. *See* Br. at 32–37.[7]

### C. The Court Should Reject Plaintiffs' Constitutional Challenge to the 2022 Rule Based on Their Novel Interpretation of the Take Care Clause.

Plaintiffs still offer no compelling justification for this Court to entertain Plaintiffs' novel claim under the Take Care Clause, a widely misunderstood provision with a "dearth of precedent." *See Texas (Memo)*, 549 F. Supp. 3d at 621–22; 328 F. Supp. 3d 662, 710–12 (S.D. Tex. 2018). Plaintiffs now argue (Resp. at 30) that Defendant-Intervenors misunderstand their claim, which is not "an implied cause of action arising from that constitutional provision," but instead "an explicit cause of action under the APA." But Plaintiffs pleaded their Take Care Clause claim as a separate cause of action arising under the Constitution, *not* the APA. *See* Suppl. Compl., Dkt. 623 ¶¶ 159– 60. Plaintiffs should not be permitted to run from their pleading, and the standalone Take Care Clause claim Plaintiffs alleged fails. *See* Br. at 40–41. Moreover, if this Court entertains Plaintiffs' efforts to use the APA to open a back door to invoke the Take Care Clause, it should dismiss this theory as inappropriate. *See, e.g.*, *Las Americas Immigr. Advoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021) (dismissing a Take Care Clause claim in a similar APA challenge).

### III. PLAINTIFFS ARE NOT ENTITLED TO VACATUR OR A PERMANENT, NATIONWIDE INJUNCTION.

The INA, basic principles of equity jurisprudence, and Supreme Court precedent prevent

---

[7] Plaintiffs' reliance (Resp. at 32) on *Judulang v. Holder*, 565 U.S. 42 (2011), only underscores the weakness of their arbitrary-and-capricious challenge. In *Judulang*, a unanimous Court could not "discern a reason for" the challenged policy, which was "unmoored from the purposes and concerns of the immigration laws." *Id.* at 64. Not so here. *See, e.g.*, Br. at 37–40.

this Court from granting Plaintiffs' requested relief—a nationwide vacatur, an injunction, and an arbitrary termination of 2022 Rule.  Plaintiffs' Response fails to overcome these fundamental flaws.  Rather, Plaintiffs' internally inconsistent requests only underscore why, even if the Court were to find DACA unlawful, it should remand to DHS, not enter a nationwide injunction.

### A.    This Court Lacks Jurisdiction to Vacate and Enjoin DACA.

Section 1252(f)(1) divests this Court of "jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–32.  That provision prohibits this Court from enjoining DACA. Plaintiffs' arguments ignore § 1252(f)(1)'s plain language and Congress's clear intent.

As a textual matter, § 1252(f)(1) prevents this Court from enjoining the "operation of" the INA's provisions related to inspection, apprehension, examination, exclusion, or removal.  In *Garland v. Aleman Gonzalez*, the Supreme Court held that the "operation of the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them."  142 S. Ct. 2057, 2064 (2022) (cleaned up).  Plaintiffs argue that DACA somehow does not represent DHS's "efforts to enforce or implement" the specified provisions, both because other sections of the INA grant DHS discretion as to how those provisions are enforced or implemented, and because this Court and the Fifth Circuit supposedly have already enjoined DACA, despite *Aleman Gonzalez* and § 1252(f)(1).  *See* Resp. at 18–20.  Neither argument persuades.

*First*, Plaintiffs misunderstand the relationship between DACA, the INA, and § 1252(f)(1). Although the portions of the INA giving DHS authority to *implement* DACA (*e.g.*, 6 U.S.C. § 202(5) and 8 U.S.C. § 1103(a)(1), *see* Br. at 33) fall outside the specified provisions, DACA plainly establishes policies that guide DHS's "efforts to enforce or implement" §§ 1221–1232.  *See* Br. at 43–44.  Indeed, in their Response (at 28), Plaintiffs cite their opening brief (at 13–14) to assert that DACA is contrary to the INA's "provisions on eligibility for removal," *many of which are contained in* §§ 1221–1232.  *See* Pls.' Mot. at 13–14 (citing 8 U.S.C. §§ 1225, 1227, 1229a).

14

An injunction prohibiting DHS from implementing DACA thus would "order federal officials to . . . refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions"—which is exactly what § 1252(f)(1) prohibits. *Aleman Gonzalez*, 142 S. Ct. at 2065.

*Second*, when this Court initially enjoined the 2012 Memorandum, the Supreme Court had not yet decided *Aleman Gonzalez*, which was decided after briefing in the Fifth Circuit concluded. Once issued, *Aleman Gonzalez* expressly rejected Plaintiffs' position that § 1252(f)(1) permits the relief they now seek. *Id.* at 2065. The fact that this Court's current injunction "already applies to the Final Rule," Resp. at 19, does not diminish Defendant-Intervenors' argument. As it did with the Memorandum, this Court stayed its injunction as to "DACA recipients who obtained that status on or before" July 16, 2021. Order, Dkt. 603 at 1. As to those current DACA recipients, the injunction thus does not "order[] DHS or any other governmental entity to cancel or otherwise terminate DACA status for any individual that currently is . . . a DACA recipient." *Id.* Plaintiffs' current requested injunction would, by contrast, apply directly to current DACA recipients such as Defendant-Intervenors. *See* Pls.' Mot. at 5. Plaintiffs thus ask the Court to order DHS to refrain from issuing more than one renewal of removal forbearance to current DACA recipients. Resp. at 9. Under *Aleman Gonzalez*, this is precisely what § 1252(f)(1) proscribes. *See* 142 S. Ct. at 2065.[8]

Nor do Plaintiffs rebut that § 1252(f)(1) also prohibits vacatur. Plaintiffs confusingly argue

---

[8] Plaintiffs assert that the Fifth Circuit already addressed Defendant-Intervenors' concern by noting that § 1252(f)(1) does not "apply to the injunction in this case." Resp. at 20 (cleaned up). But Plaintiffs concede that the Fifth Circuit was taking into consideration that the injunction was stayed as to current DACA recipients. *Id.* (quoting 50 F.4th at 529). Although Plaintiffs argue that the stay was just one of several reasons that the Fifth Circuit believed § 1252(f)(1) does not apply, *id.*, the Fifth Circuit's opinion demonstrates that the opposite is true: as to current DACA recipients, the stay was vital to avoiding § 1252(f)(1)'s proscription against injunctive relief. Indeed, the Fifth Circuit carefully delineated its reasoning with respect to current DACA recipients on the one hand and "those seeking admission to the DACA program" on the other. 50 F.4th at 529. Thus, the Fifth Circuit has *not* addressed whether § 1252(f)(1) bars Plaintiffs' requested relief now—DACA's termination as to current DACA recipients without a stay.

that, although vacatur would "nullif[y] the agency action," Resp. at 5, § 1252(f)(1) somehow permits vacatur because vacatur "does not involve coercion." Resp. at 17. Plaintiffs cannot have it both ways: vacatur cannot be simultaneously a mere friendly suggestion permitted under § 1252(f)(1), *yet also* sufficiently coercive of DHS to foreclose remand without vacatur. *Cf.* Resp. at 6–7 (arguing against remand because it would permit "blatant agency indifference" and "remedial sidestepping"). Moreover, if, as Plaintiffs argue to avoid § 1252(f)(1), vacatur is not sufficiently coercive to "enjoin or restrain" DHS from implementing DACA, then Plaintiffs cannot meet their burden to establish that vacatur would redress their claimed injuries. *See* Br. at 43 (citing Ex. 4 at 46:23–47:4, 81:17–24). Finally, even if this Court is inclined to ignore the effect of § 1252(f)(1) and overlook that Plaintiffs' requested remedy—by their own admission—will not redress their purported harm, the Court should at the very least not issue an injunction or vacate DACA until the Supreme Court decides *United States v. Texas*, No. 22-58, in which Justices have raised these same concerns, *see* Br. at 43, all of which Plaintiffs wholly fail to address.

> **B.**      **Plaintiffs Fail to Justify a Nationwide Injunction.**

Despite their tenuous and geographically limited theory of standing, Plaintiffs also seek *nationwide* relief, even contending that "relief applying to Texas alone would not provide even Texas *any* relief." Resp. 15 (emphasis added). This concession makes clear that Plaintiffs' true concern is merely a political difference, not an actual injury to Texas (or any other Plaintiff state). But a nationwide injunction covering 49 states that have not even attempted to demonstrate an injury is inconsistent with general principles of equity. *See* Br. at 44–45; *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (nationwide injunctions are "flaw[ed]" because they dictate "how the defendant must act towards persons who are not parties to the case"); *see also Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (L. Hand, J.) ("a court of equity. . . cannot lawfully enjoin the world at large, no matter how broadly it words its

decree.").[9]  That is particularly true because the equities strongly counsel against any injunction at all, let alone a nationwide one.  *See* Part III.C, *infra*.[10]

Plaintiffs invoke *Feds for Medical Freedom v. Biden*, 63 F.4th 366, 393 (5th Cir. 2023) (en banc), to claim that the extraordinarily sweeping relief sought is proper.  *See* Resp. 15.  But in *Feds for Medical Freedom*, "the lead plaintiff . . . ha[d] over 6,000 members spread across every State in the Nation and nearly every federal agency in the entire Government."  63 F.4th at 388. And even still, the en banc Fifth Circuit "hasten[ed] to emphasize" that it awarded only a "*preliminary* injunction."  *Id.* at 389.  "When the parties proceed to the merits," the Fifth Circuit reiterated, "the plaintiffs will have to *prove* that whatever injunction they request is broad enough to protect against their proven injuries and no broader."  *Id.*  In this case, where only one Plaintiff state has even attempted to offer evidence of injury, Plaintiffs have not *proven* that a nationwide injunction is necessary.  Therefore, even if the Court determines DACA should be enjoined (and it should not), the Court should tailor its remedy much more narrowly, and apply it only to states that have demonstrated specific spending on DACA recipients.

### C.    Plaintiffs' Proposed Wind-down Is Arbitrary, Disruptive to DACA Recipients' Reliance Interests, and Foreclosed by Supreme Court Precedent.

After waiting for over six years to vindicate their purported interests through litigation,[11]

---

[9] *See also* Dkt. 642-2, Brief for Samuel L. Bray & William Baude as Amici Curiae in Support of Petitioners, *Biden v. Nebraska*, Nos. 22-506 & 22-535 (U.S., Jan. 11, 2023) ("The lesson is that standing and remedy can and should be brought into equilibrium: either by denying standing to obtain an excessively broad remedy, or else by narrowing the remedy to match the standing.").

[10] "A situation different from but closely related to the grant or denial of preliminary injunctions is the discretion of the trial court to withhold a permanent injunction as unnecessary even when the plaintiff has made out all other elements of his case."  Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 784 n.116 (1982).

[11] Plaintiffs attempt to explain away their delay, *see* Resp. at 10–12, but ignore that this Court *has already held* that Plaintiffs' six-year delay counseled against injunctive relief.  *Texas (Memo)*, 328 F. Supp. 3d at 738 ("A delay in seeking an injunction has been viewed as a concession or an

Plaintiffs now assert that their "requested injunctive relief accounts for the public interest, as well as the reliance interests of current DACA recipients," and they contend (without support, and contrary to what both this Court and the Supreme Court have held) that DACA recipients' "reliance interests are weak." Resp. at 12–13. But Plaintiffs' position on reliance runs contrary to Supreme Court precedent, and is belied by the factual record and the history of this litigation. Because it does "not writ[e] on a blank slate," the Court must "assess whether there [are] reliance interests, determine whether they [are] significant, and weigh any such interests against competing policy concerns." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020). Here, the reliance interests are profound, and they strongly cut against Plaintiffs' requested relief.

As *Regents* recognized, "DACA recipients have 'enrolled in degree programs, embarked on careers, started businesses, purchased homes, and even married and had children, all in reliance' on the DACA program." *Id.* at 1914 (cleaned up). Indeed, it is difficult to imagine more significant reliance interests than those held by the more than 250,000 U.S. citizen children whose parents are DACA recipients. Dkt. 607-1, AR2022_100197 (87 Fed. Reg. 53154). Plaintiffs' cruel and casual claim that those reliance interests are "weak" aside, Resp. at 13, Plaintiffs' proposed two-year renewal wind-down inadequately addresses the weighty concerns implicated by the forced separation of American families. Nor does Plaintiffs' wind-down proposal address the labor shortfalls in critical public safety functions, highlighted by the local government *amici*, that would ensue should the Court issue an injunction. *See* Dkt. 654, Br. of Amici Curiae 43 Local Gov'ts and Local Gov't Offs. and Advoc. Orgs. ("Local Gov't Br.") at 5.

Plaintiffs protest that they *have* "account[ed] for such interests by including a two-year

---

indication that the alleged harm does not rise to a level that merits an injunction."). Plaintiffs offer no belated excuse that would justify a different result now.

transition period." Resp. at 14. But while Plaintiffs' proposed two-year renewal wind-down mirrors DACA's renewal period, *see id.*, it remains arbitrary, as *Regents* recognized. A DACA recipient who renews his or her grant just before an order enjoining the 2022 Rule could receive up to four years of deferred action, whereas someone with a renewal just after an order would receive only two years of deferred action, even if the second DACA recipient's "time-bounded commitments" were longer and his or her reliance interests stronger. That is exactly the type of arbitrary wind-down and termination that *Regents* prohibits. *See* 140 S. Ct. at 1914–15 ("But nothing about that determination foreclosed or even addressed . . . accommodating particular reliance interests . . . . That failure was arbitrary and capricious in violation of the APA."). At the very least, to avoid arbitrariness, Defendant-Intervenors respectfully request that any disruption of DACA be stayed pending appeal.[12]

Although Plaintiffs do not attempt to engage seriously with DACA recipients' profound reliance interests, this Court must—while also taking into consideration that "the settled practices and expectations of a democratic society should generally not be disturbed by the courts." *Payne v. Tennessee*, 501 U.S. 808, 835 (1991) (Scalia, J., concurring.). Indeed, the Supreme Court has consistently held that courts must honor the reliance interests of parties and industries in a variety of contexts where agencies' policies change because of litigation, rulemaking, or changes to enforcement policy.[13] The reliance considerations are even weightier here, where DHS

---

[12] Although Plaintiffs apparently disagree, they have pointed to no authority supporting their position that DACA must wind down *now*. *See Texas (Memo)*, 2021 WL 3022434, at *2–3 (S.D. Tex. July 16, 2021) ("Given [reliance] interests, it is not equitable for a government program that has engendered such significant reliance to terminate suddenly.").

[13] *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016) (agency arbitrarily failed to account for automobile dealership industry's reliance interests); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012) (crediting justified reliance of pharmaceutical sales representatives on long period of agency enforcement inaction); *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 737 (1996) (reliance interests of out-of-state credit card holders).

enforcement policies have engendered reliance interests that are fundamental to human life and to communities nationwide. *See, e.g.*, Local Gov't Br. at 4–7 (DACA recipients are paramedics, first responders, faith leaders, healthcare workers, teachers, and students); *see also* Dkt. 504-2, Exs. 17–22; Dkt. 504-3, Exs. 25–26 (Defendant-Intervenors are medical-school students, community advocates, parents, and spouses).

Nor, as Plaintiffs contend (Resp. at 9, 14) are Plaintiffs automatically entitled to an injunction if the Court finds DACA unlawful, particularly after waiting six years to bring suit. This Court's equitable powers are characterized by "[f]lexibility rather than rigidity" and the capacity for "adjustment and reconciliation between the public interest and private needs." *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944). Where, as in this case, the reliance interests are profound and the stakes are high, unlawful actions may go unremedied. *See* Br. at 45–49 (collecting cases). That is especially so because individual DACA recipients have ordered their lives in reliance on DACA, and Plaintiffs cannot show that those individuals would not have obtained immigration status without it. *See id.* (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021)). "The effect of equitable remedies on third parties . . . is the practical reason why there is no 'right' to an equitable remedy [and] why the plaintiff's claim to such a remedy may have to yield to competing considerations." *Avitia v. Metro. Club of Chi.*, 49 F.3d 1219, 1231 (7th Cir. 1995). Here, the competing considerations—the reliance interests of DACA recipients, their families, and their communities—are profound, and any remedy this Court fashions should adequately account for those significant interests.

## CONCLUSION

Defendant-Intervenors respectfully request that the Court grant Defendant-Intervenors' motion for summary judgment and deny Plaintiffs' motion for summary judgment or, in the alternative, deny both motions and set a schedule for further proceedings.

Dated:  April 27, 2023                    Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By:  /s/ *Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382
Email:  nperales@maldef.org

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC  20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX  78502
Phone:  (956) 630-3889
Facsimile:  (956) 630-3899
Email:  cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that, on the 27th day of April, 2023, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

<u>*/s/ Nina Perales*                          </u>
Nina Perales