**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL.; | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Case No. 1:18-cv-00068 |
| | § | |
| UNITED STATES OF AMERICA, ET AL.; | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, ET AL.; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| *Defendants-Intervenors.* | § | |

**PLAINTIFF STATES' SUR-REPLY TO DEFENDANTS' REPLY BRIEFS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................................... iii

INTRODUCTION ........................................................................................................................... 1

       I.      Plaintiff States did not forfeit or waive the driver's license argument and Defendants were on notice of the possibility of it being placed in issue. ....................... 2

            A.  Defendants agreed to a briefing schedule that did not include disclosures or discovery. .................................................................................................. 2

            B.  Defendants' actions forfeited or waived their arguments against submission of new evidence in this case. ...................................................... 4

            C.  Defendants were on notice that driver's license costs remained a live issue in this case. ............................................................................................. 6

       II.     Defendants' arguments against the specific driver's license evidence fail. ..................... 8

CONCLUSION ............................................................................................................................. 11

CERTIFICATE OF SERVICE ..................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fam. Life Assur. Co. of Columbus v. Biles*,
714 F.3d 887 (5th Cir. 2013) (per curiam) .............................................................................9

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) (en banc) ...................................................................................5

*Est. of Salas v. Bicette*,
No. 4:21-cv-484, 2022 WL 1121036 (S.D. Tex. Apr. 14, 2022) (Hanen, J.) ................2, 3

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
939 F.2d 1257 (5th Cir. 1991) .......................................................................................... 4, 8, 9

*King v. Dogan*,
31 F.3d 344 (5th Cir. 1994) ......................................................................................................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................................................................2

*Martinez v. Target Corp.*,
No. CV H- 20-3481, 2021 WL 3813361 (S.D. Tex. Aug. 26, 2021) ................................3, 9

*MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*,
25 F.4th 360 (5th Cir. 2022) ....................................................................................................3

*Smith v. Reg'l Transit Auth.*,
827 F.3d 412 (5th Cir. 2016) ...................................................................................................9

*Texas v. Biden (MPP)*,
20 F.4th 928 (5th Cir. 2021), *rev'd on other grounds,* 142 S. Ct. 2528 (2022) .......................10

*Texas v. United States (DACA)*,
50 F.4th 498 (5th Cir. 2022) ................................................................................................2, 6

*Texas v. United States (DAPA)*,
809 F.3d 134 (5th Cir. 2015) ........................................................................................ 8, 10, 11

*United States v. Ledesma*,
33 F. Supp. 3d 734 (S.D. Tex. 2012) (Hanen, J.) ................................................................9

*United States v. Olano*,
507 U.S. 725 (1993) ...................................................................................................................4

*Uzuegbunam v. Preczewski,*
   141 S. Ct. 792 (2021)................................................................................................................11

*Webb v. Davis,*
   940 F.3d 892 (5th Cir. 2019)......................................................................................................2

*Wichita Falls Off. Assocs. v. Banc One Corp.,*
   978 F.2d 915 (5th Cir. 1992)......................................................................................................3

## Other Authorities

Fed. R. Civ. P. 56(e).....................................................................................................................2

Fed. R. Civ. P. 56(d) .............................................................................................................. 3, 8, 9

## INTRODUCTION

Plaintiffs the States of Texas, Alabama, Arkansas, Louisiana, Nebraska, South Carolina, West Virginia, Kansas, and Mississippi file this sur-reply to counter new arguments and declarations in the two reply briefs of the Defendants United States of America, *et al.* ("Federal Defendants") and Defendant-Intervenors Elizabeth Diaz, *et al.* ("Private Intervenors"). *See* ECF No. 681, Federal Defendants' Reply in Support of Cross-Motion for Summary Judgment ("Fed. Reply"); ECF No. 680, Reply Brief of Defendant-Intervenors Elizabeth Diaz, et al. in Support of their Motion for Summary Judgment ("Pvt. Intvn'rs' Reply").

Federal Defendants and Private Intervenors object to Plaintiff States' evidence of their standing based on driver's license costs submitted in their responses to Defendants' cross-motions for summary judgment.[1] Defendants claim that the driver's license evidence:

- has been forfeited or waived by Plaintiff States because they did not raise it in previous motions in this case, or in the active pleadings (Fed. Reply at 5–6; Pvt. Intvn'rs' Reply at 9–10);

- should be subject to discovery by Defendants, if it permitted to be considered for summary judgment (Fed. Reply at 6; Pvt. Intvn'rs' Reply at 10);

- does not show Article III injury to Plaintiff States because of offsetting benefits of driver's license application fees and faulty calculations as to costs (Fed. Reply at 8–10).

Defendants are wrong on all counts.

---

[1] Both sets of Defendants assert that Plaintiff States included that argument and evidence in the form of a declaration in their "reply brief," but that is false—Plaintiff States filed a response in opposition to Defendants' cross-motions for summary judgment combined with a reply in support of their own motion for summary judgment. *See* ECF No. 673 at 43 ("Texas's evidence for its driver's license costs is submitted to counter the arguments against standing in the cross-motions for summary judgment…"); *id.* (noting that the Court may also consider the declaration for purposes of Plaintiff States' own motion because "an affidavit submitted [regarding] another motion may be taken into account on a motion for summary judgment.") (quoting Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2722 (4th ed.), among other authorities).

I.   **Plaintiff States did not forfeit or waive the driver's license argument and Defendants were on notice of the possibility of it being placed in issue.**

On October 5, 2022, the Fifth Circuit "remand[ed] to the district court for further proceedings that the parties may pursue regarding the Final Rule." *Texas v. United States (DACA)*, 50 F.4th 498, 512 (5th Cir. 2022). The mandate rule expressly contemplates trial courts "consider[ing] new evidence" after remand. *Webb v. Davis*, 940 F.3d 892, 897 (5th Cir. 2019). And when a Defendant files a motion for summary judgment (here, a cross-motion) challenging a plaintiff's standing, the standard operation is that the plaintiff's response to that motion includes evidence such as declarations. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that when a plaintiff's standing is challenged in a motion for summary judgment, the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken as true.")

A.   **Defendants agreed to a briefing schedule that did not include disclosures or discovery.**

After remand, this Court held a hearing with all parties on October 14, 2022. The Federal Defendants had yet to produce the administrative record for the Final Rule that would soon become effective. At the hearing, the Court tasked the parties to submit—after Federal Defendants produced the administrative record—a proposed schedule to litigate the Final Rule expeditiously. *See* 10/14/2022 Tr. 11:24–12:9; 13:10–23; 14:23–15:8.

The parties all agreed on a proposed schedule for further proceedings and filed it with the Court, ECF No. 619, which adopted it on December 15, 2022. ECF No. 621. This schedule—approved by Federal Defendants and Private Intervenors—did not impose any disclosure requirements for witnesses, exhibits, or evidence. Nor did it provide for any discovery period—"Rule 56 does not require that *any* discovery take place before summary judgment can be granted." *Est. of Salas v. Bicette*, No. 4:21-cv-484, 2022 WL 1121036, at *2 (S.D. Tex. Apr. 14, 2022) (Hanen, J.) (quoting

2

*Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005)) (emphasis in original); *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (same).

These parties knew how to demand such provisions. *See* ECF No. 335, 10/31/2018 Joint Discovery Case Management Plan (Private Intervenors repeatedly demanding discovery period prior to cross-motions for summary judgment). The parties' decision to forgo periods of disclosure and discovery reflected their desire to "move expeditiously as the Fifth Circuit ha[d] asked [them] to." 10/14/2022 Tr. 5:16–5:19 (statement of counsel for Federal Defendants).

All parties took the risk that the others would introduce new evidence that would not be subject to disclosure or tested by discovery. Defendants could have demanded disclosures and a discovery period prior to the scheduled summary judgment briefing—and their subsequent regret of that decision is not a sufficient basis for a continuance. *Cf. Bicette*, 2022 WL 1121036, at *2 (denying Rule 56(d) motion because "Plaintiffs do not explain why they did not request these depositions previously."). Defendants claim that they were "not afforded the necessary opportunity to test the evidence," Pvt. Intvn'rs' Reply at 10, "never "had an opportunity to take discovery on the issue," Fed. Reply at 6, and that they should be "afford[ed] …an opportunity for discovery," *id.*

But Defendants always had that *opportunity* when negotiating the agreed scheduling order. Their regrets do not justify blowing up the schedule for resolving this case or limiting evidence for standing when Defendants challenge it. Courts are not lenient in granting continuances under Rule 56(d) if the non-moving party has not diligently pursued discovery. *See Wichita Falls Off. Assocs. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir. 1992). In this context, "the trial court need not aid non-movants who have occasioned their own predicament through sloth." *Id.* at 919. Where a "plaintiff did not diligently seek discovery and now wishes to rely on Rule 56(d) to expand the discovery time period … [it exceeds] the purpose of Rule 56(d), which allows for continuances when facts are *unavailable* to the nonmovant." *Martinez v. Target Corp.*, No. CV H- 20-3481, 2021 WL 3813361, at *2 (S.D. Tex. Aug. 26, 2021)

3

(emphasis in original) (citing Fed. R. Civ. P. 56(d)); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) ("If … the nonmoving party has not diligently pursued discovery of that evidence, the court need not accommodate the nonmoving party's belated request."). Defendants waived any need for a discovery period when they agreed to the scheduling order that omitted any.

**B. Defendants' actions forfeited or waived their arguments against submission of new evidence in this case.**

These omissions of disclosures and discovery were no mere oversight. The parties acted consistently with the belief that the briefing could include new exhibits, including declarations by new witnesses.

*First*, no Defendant objected to Plaintiff States including in their motion for summary judgment—on January 31, 2023—two new declarations in support of their standing, from witnesses who had never been disclosed or subject to discovery. *See* ECF No. 626-3 at App.654–672 (Exhibit 35, Declaration of Susan Bricker); *id.* at App.673–681 (Exhibit 36, Declaration of James Terry); ECF No. 625-1 at 32–33 (Plaintiff States relying on these declarations to support their standing). Defendants therefore forfeited any such objection at subsequent stages of briefing.

*Second*, Private Intervenors *themselves* introduced nine new exhibits, including a new declaration, in support of their briefing on March 2, 2023. *See* ECF No. 642-2 at Exhibits 1–6, 8–9; *id.* at Exhibit 7 (Declaration of Karla Quetzalli Perez Ramirez, dated March 1, 2023). Plaintiff States had no opportunity to take discovery from that declarant (who testified about events that occurred after the previous proceedings in this Court), and Private Intervenors relied on that declaration in support of their arguments about reliance interests. *See* ECF No. 642 at 47–48 (twice citing Exhibit 7). Beyond mere forfeiture, such contrary conduct constitutes a waiver of any argument regarding disclosure or discovery relating to evidence in the subsequent briefing in this case. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right waiver is the

intentional relinquishment or abandonment of a known right.") (quotation omitted)); *Cargill v. Garland*, 57 F.4th 447, 465 (5th Cir. 2023) (en banc) (noting that, unlike a forfeited argument, courts generally cannot pursue a waived argument).

*Third*, in their opening briefing on March 2, 2023, Private Intervenors displayed the exact opposite beliefs about the propriety of new evidence at this stage of this case—not only did they not find *new* evidence objectionable, Private Intervenors argued that reliance on *existing* evidence for Plaintiff States' standing was not allowed:

- "Plaintiffs offer no new relevant evidence regarding the application or effect of the 2022 Rule on their State interests. Rather, Plaintiffs rely on declarations, affidavits, and exhibits that are now nearly five years old and relate to a now-superseded memorandum and different political context." ECF No. 642 at 2.

- "[T]he presumptions underlying Plaintiffs' earlier challenge and evidence [on standing] no longer hold." *Id.* at 3; *see also id.* (referring to "Plaintiffs' dated evidence").

- "Plaintiffs have failed to bring forward *any* new evidence to demonstrate that they are entitled to relief with respect to the [2022 Final] Rule. To start, Plaintiffs have not met their evidentiary burden to prove that they have standing to challenge the *Rule*. Instead, they rely on the record *as it existed in 2018*, entirely ignoring that five years have passed and that both DACA and the affected population have changed." *Id.* at 9 (emphases in original); *see also id.* (dismissing "stale" evidence); *id.* at 14 (complaining that "[j]ust 5 of the 39 substantive exhibits Plaintiffs attach to their Motion postdate the 2022 Rule's NPRM; the other 34 exhibits are identical to what Plaintiffs submitted in connection with the Memorandum motion."); *id.* (complaining that "Plaintiffs urge the Court to grant summary judgment based on a nearly identical evidentiary record" as that against the 2012 DACA Memorandum).

- "Plaintiffs' citations to stale declarations and testimony about the Memorandum fail to demonstrate injury-in-fact, traceability, and redressability. Not only is Plaintiffs' purported evidence outdated, Plaintiffs rely almost exclusively on analyses of DACA under the [2012 DACA] Memorandum." *Id.* at 14–15.

- "[T]he law of the case … should rarely if ever be applied to matters of standing … [and] that is particularly true here because the issues have changed on remand … The 2022 [Final] Rule is *not* the [2012 DACA] Memorandum, and it differs in ways that are important to standing." *Id.* at 17 (emphasis in original).

- "Plainly, the Fifth Circuit did not, through its mandate, foreclose this Court from considering issues, including standing, afresh—indeed the purpose of remand was for this Court to do so." *Id.* at 18.

- "Plaintiffs fail to introduce specific facts demonstrating that the *2022 [Final] Rule* is likely to cause them *any* concrete injury. Nor have Plaintiffs introduced any specific facts showing that any purported injuries are traceable to the *2022 [Final] Rule*, or would be redressed by the *2022 [Final] Rule's* elimination." *Id.* (emphases in original); *id.* at 19 (criticizing the "same half-decade-old declarations and testimony that Plaintiffs now invoke to challenge the 2022 [Final] Rule.").

Indeed, not only did Private Intervenors *not object* to the two new declarations Plaintiff States submitted in their motion for summary judgment on January 31, 2023, they made the opposite criticism: that the declarations "add[ed] no new substantive facts." *Id.* at 14. They criticized these as "Plaintiffs' only two attempts to update the record on standing." *Id.* at 21. So, when Private Intervenors' cross-moved for summary judgment on the basis that Plaintiffs had only "stale" evidence of standing, they teed this issue up for Plaintiff States to respond—they cannot now complain they got what they demanded. After seeing Plaintiff States' driver's license evidence for standing, Private Intervenors apparently had second thoughts about looking at standing "afresh." But their contrary arguments in their earlier briefing constitute an affirmative waiver of any argument against bringing in new evidence for standing. Plaintiff States' evidence of driver's license costs is therefore properly before the Court.

## C. Defendants were on notice that driver's license costs remained a live issue in this case.

At the October 14, 2022, hearing, Private Intervenors stated that they wanted to undertake "a careful review of the new rule and the administrative record." 10/14/2022 Tr. 9:3–9:7. The administrative record was produced on November 3, 2022. ECF No. 607.

While the 2012 DACA Memorandum consisted of "a three-page memorandum" that made no mention of state policies regarding driver's licenses, *DACA*, 50 F.4th at 508, the Final Rule challenged here repeatedly refers to them. *See* AR2022_100197 ("Approximately two-thirds of

recipients purchased their first car after receiving DACA."); AR2022_100206 ("DACA recipients can obtain driver's licenses."); AR 2022_100327 ("In certain States, depending on policy choices made by the State, an [Employment Authorization Document] also could be used to obtain a driver's license or other government-issued identification."); AR2022_100331 ("[S]ome States may allow DACA recipients to apply for subsidized driver's licenses." ); AR2022_100331 ("Under the final rule, [DACA recipients] …depending on the choices made by a State, may be abler to secure driver's licenses and other identification."); AR2022_100332 ("Some States have relied on the existence of DACA in setting policies regarding eligibility for driver's licenses."). It is baseless to argue now that no reasonable person could realize the possibility that this could be a basis for standing.

This Court's preliminary injunction ruling regarding the 2012 DACA Memorandum also put Defendants on notice. ECF No. 319 at 8 ("Further, DACA recipients are also eligible for certain state benefits, such as a Texas driver's license.") (citing Tex. Transp. Code § 521.142(a)).

Defendants were also on notice when they agreed to a briefing schedule indicating that Plaintiff States would file a supplemental—rather than amended—complaint to challenge the Final Rule, *see* ECF NO. 621. This meant that the allegations in the existing Amended Complaint would remain live. While "[a]n amended complaint supersedes the original complaint and renders it of no legal effect," *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), a supplemental complaint, unlike an amended one, does not supersede the earlier operative pleading.

The still-active Amended Complaint filed on June 14, 2018, ECF No. 104, repeatedly mentions costs to States of issuing driver's licenses to DACA recipients as an injury. *See id.* at ¶ 76 ("DACA's conferral of lawful presence also creates eligibility for various State benefits—including a driver's license in most States."); *id.* at ¶ 197 ("DACA grantees are eligible to receive …in certain states, benefits such as driver's licenses."); *id.* at ¶ 225 ("DACA's conferral of lawful presence triggers eligibility for benefits—some of which are paid for by Plaintiff States [citing driver's licenses in

7

particular].""); *id.* at ¶¶ 273–274 ("The Defendants unilaterally deem DACA recipients 'lawfully present.' The congressional[ly]-created classification of 'lawful presence' confers eligibility for … a driver's license.").[2] While failing to insist on a discovery period when proposing a scheduling order may have precluded Defendants from taking discovery on the driver's license issue, that is their own fault. All parties accepted this risk for the sake of moving this case along expeditiously, and driver's license costs were alleged as injury to Plaintiff States in the live Amended Complaint. The Court should consider the driver's license evidence in determining Plaintiff States' standing.

## II.   Defendants' arguments against the specific driver's license evidence fail.

In seeking a Rule 56(d) continuance, the "party must show how the additional discovery will defeat the summary judgment motion, that is, will create a genuine dispute as to a material fact, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (cleaned up)[3]. Given the

---

[2] While the same now-active Amended Complaint was in effect, Private Intervenors noted that Federal Defendants conceded that if "Plaintiffs assert a financial injury from driver's licenses … then Plaintiffs would have standing." ECF No. 335 at 3 (citing ECF No. 71 at 19–20). Private Intervenors mischaracterize the statements of Texas's counsel in previous proceedings as somehow denying that Texas could show standing based on driver's licenses—they did no such thing. *See* ECF No. 302, 08/08/2018 PI Hr'ing Tr. at 72:7–72:19 (Plaintiff States' counsel noting only that "we don't need driver's license costs in this case to support our standing" due to other bases for standing, but keeping option open: "that is certainly something we could potentially look at," just not "at this point"); ECF No. 680-2, Fifth Circuit argument Tr. at 29:18–29:22 (Plaintiff States' counsel stating that "as a factual matter, undoubtedly the driver's license expenditures still exist," but noting it was not necessary because Private Intervenors' own expert provided evidence of "hundreds of millions of dollars of costs.").

[3] Private Intervenors' Rule 56(d) declaration fails this standard, seeking "discovery to explore the apparent inconsistencies in Plaintiffs' statements and Texas's evidence, to understand how the costs in Texas's declaration change for renewals, and to analyze whether there are net costs when DACA recipients, most of whom have driver's licenses, pay a $24 renewal fee." ECF No. 682 at ¶ 8. Such an "explor[ation]" is insufficient, especially where the evidence is clear that Texas suffers a net cost for each driver's license it issues, including renewals. *See Texas v. United States (DAPA)*, 809 F.3d 134, 155 (5th Cir. 2015) (because "Texas subsidizes its licenses," it "would lose" money "on each one it issued to" an alien present because of a change in federal immigration policy). "Non-moving parties

other bases for standing (health care and public education costs and *parens patriae*) that have already

been upheld by the Fifth Circuit and this Court—and constitute the law of the case—there is no

evidence against the driver's license rationale that could possibly "*defeat* the summary judgment

motion." *Int'l Shortstop, Inc.,* 939 F.2d at 1267 (emphasis added) *see also Smith v. Reg'l Transit Auth.*, 827

F.3d 412, 423 (5th Cir. 2016) ("In evaluating district courts' rulings on Rule 56(d) motions, we

generally assess whether the evidence requested would affect the outcome of a summary judgment

motion.").

     This Court is not required to delay resolution of this case for an exercise in futility. *See Am.*

*Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) ("This court has long

recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary

judgment is not unlimited, and may be cut off when the record shows that the requested discovery is

not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.")

(quoting *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir. 1990)).

---

requesting continuance of summary judgment may not simply rely on vague assertions that additional
discovery will produce needed, but unspecified facts. The party seeking additional time must set forth
a plausible basis for believing that specified facts, susceptible of collection within a reasonable time
frame, probably exist. Further, the party must indicate how the emergent facts will influence the
outcome of the pending summary judgment motion." *Martinez v. Target Corp.*, No. CV H- 20-3481,
2021 WL 3813361, at *2 (S.D. Tex. Aug. 26, 2021) (citing *Am. Fam. Life Assur. Co. of Columbus v. Biles*,
714 F.3d 887, 894 (5th Cir. 2013) (per curiam)).
     This Court has faced similar 56(d) declarations and found them wanting. *See United States v.*
*Ledesma*, 33 F. Supp. 3d 734, 739–40 (S.D. Tex. 2012) (Hanen, J.) ("Here, the alleged bases for
additional discovery provided by Ledesma are not sufficiently specified, nor would they influence the
outcome of the Government's motion for summary judgment. In his sometimes incoherent, amended
response, Ledesma identifies a few discernable examples of matters warranting additional discovery.
Initially, Ledesma requests the opportunity to depose Laura E. Aleman–Gasca 'on the subject,'—
presumably the circumstances surrounding Ledesma's application for naturalization, which is the
subject of her declaration. This vague request does not sufficiently specify the facts that he hopes will
emerge from such additional discovery, nor how those facts will influence the pending motion for
summary judgment.").

Finally, Federal Defendants attempt to pick apart the same driver's license evidence that has consistently been found to support Texas' s standing in immigration cases. *See Texas v. United States (DAPA)*, 809 F.3d 134, 150 (5th Cir. 2015); *Texas v. Biden (MPP)*, 20 F.4th 928, 972 (5th Cir. 2021), *rev'd on other grounds,* 142 S. Ct. 2528 (2022).

Federal Defendants first argue that Texas provides no data to support its claim that it subsidizes its driver's licenses, pointing to the $33 fee it collects from each applicant. Fed. Reply at 8. But the declaration sets forth that Texas spends over $200 for each license, which dwarfs the $33 fee. *See* ECF No. 674-1, App.724–25 at ¶ 8 (table showing costs broken down by each 10,000 licenses issued).[4]

Federal Defendants then attempt to overcome precedent that the small fees that Texas must pay the federal government to access its verification systems are offset by the "benefit" of receiving the $33 fee from the applicant.  Given the $33 fee does not cover the overall cost exceeding $200 per license, it is a mystery how an additional fee paid to the federal government (not to the applicant, so not within the exception for offsetting benefits recognized in *DAPA*, 809 F.3d at 155) could suffice

---

[4] Federal Defendants also attempt to undermine the driver's license declaration by raising doubts that the volume of DACA recipients applying for licenses would require new infrastructure. Fed. Reply at 8–9. As an initial matter, this point implausibly assumes that the volume of new applicants will be equally spread across the State, *see id.* at 9 (assuming "one new driver's license applicant per Texas driver's license office every three weeks")—DACA recipients in one of Texas's large cities cannot be expected to obtain their licenses in remote rural parts of the State. The Final Rule itself estimates "a remaining DACA-eligible population of up to roughly 700,000 people," AR2022_100315, and it applies to this new population which has yet to obtain DACA status and therefore is ineligible for driver's licenses now but will be once that status is obtained. And because DACA status lasts for two-year periods, each existing recipient with a driver's license—and there are around 100,000 DACA recipients in Texas now, even with no new initial applications available due to this Court's injunction—will have to renew his driver's license every two years. ECF No. 674-1, App.725 at ¶ 9. Each renewal requires "verification of lawful presence status" the State must pay to the federal government. *Id.*

to alleviate any injury to Texas. The Fifth Circuit has held that the fees for verification are a cost to

Texas sufficient to show standing:

> Some of those costs are directly attributable to the United States. Under the REAL ID
> Act of 2005, Pub. L. No. 109–13, div. B, 119 Stat. 302 (codified as amended in
> scattered sections of Titles 8 and 49 U.S.C.), Texas must verify each applicant's
> immigration status through DHS, *see* 6 C.F.R. § 37.11(g), .13(b)(1), or the state's
> licenses will no longer be valid for a number of purposes, including commercial air
> travel without a secondary form of identification, *REAL ID Enforcement in Brief,* U.S.
> Department of Homeland Security (July 27, 2015), http://www.dhs.gov/real-id-
> enforcement-brief. Texas pays an average of 75¢ per applicant to comply with that
> mandate. *See* Dist. Ct. Op., 86 F.Supp.3d at 617.

*DAPA*, 809 F.3d at 155 n.58. Without even considering needs to expand infrastructure, the

verification fees paid to the federal government, ECF No. 674-1. App.724 at ¶¶ 6–7, alone satisfy the

requirements of standing. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) ($1 damages

sufficient). Defendants point to no discovery that could change that—once even a small amount of

cost is shown, no further evidence of the actual amounts are relevant to the standing inquiry.

Defendants' Rule 56(d) requests should therefore be denied.

## CONCLUSION

When Plaintiff States' standing was challenged by Defendants by way of cross-motions for

summary judgment, Plaintiff States properly responded with evidence of the Final Rule's costs relating

to driver's licenses. Defendants had notice of multiple allegations of this basis in Plaintiff States' still-

active Amended Complaint from 2018. Defendants agreed to a schedule after remand that did not

include disclosures or a discovery period and their actions reflected the understanding that new

evidence could be submitted. Defendants' Rule 56(d) requests for a continuance—and for discovery—

should be denied, and the Court should consider Plaintiff States' driver's license evidence.

Date: May 27, 2023

Respectfully submitted.

STEVE MARSHALL
Attorney General of Alabama

KEN PAXTON
Attorney General of Texas

TIM GRIFFIN
Attorney General of Arkansas

BRENT WEBSTER
First Assistant Attorney General

KRIS KOBACH
Attorney General of Kansas

RALPH MOLINA
Deputy Attorney General for Legal Strategy

JEFF LANDRY
Attorney General of Louisiana

LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801
Southern District of Texas Bar No. 33695

LYNN FITCH
Attorney General of Mississippi

MICHAEL T. HILGERS
Attorney General of Nebraska

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Deputy Chief, Special Litigation Division
*Attorney-in-Charge*
Texas Bar No. 24105085
Southern District of Texas Bar No. 3369185

ALAN WILSON
Attorney General of South Carolina

PATRICK MORRISEY
Attorney General of West Virginia

ETHAN SZUMANSKI
Assistant Attorney General
Texas Bar No. 24123966
Southern District of Texas Bar No. 3836010

Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-2714
Fax: (512) 457-4410
leif.olson@oag.texas.gov
ryan.walters@oag.texas.gov
ethan.szumanski@oag.texas.gov

*Counsel for Plaintiff States*

12

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF) on May 27, 2023.

/s/ Ryan D. Walters
RYAN D. WALTERS