**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> and <br><br> NEW JERSEY, <br><br> Defendant-Intervenors. | Case No. 1:18-cv-00068 |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

On June 15, 2023, the Supreme Court issued a decision in *Haaland v. Brackeen*, 599 U.S. ____, No. 21-376, 2023 WL 4002951 (U.S. June 15, 2023), a case involving various constitutional challenges to the Indian Child Welfare Act (ICWA). Individual plaintiffs and the State of Texas ("the plaintiffs") argued that ICWA exceeds Congress's Article I authority, violates the anticommandeering doctrine, violates equal protection, and violates the nondelegation doctrine. *Id.* at *5. The Supreme Court rejected the plaintiffs' Article I and anticommandeering challenges on the merits, and rejected the plaintiffs' equal protection and nondelegation challenges for lack of standing. *Id.*

1

In *Brackeen*, the Supreme Court held that the plaintiffs had failed to establish standing for several independent reasons. First, the Court found that the individual plaintiffs had not satisfied their Article III burden to show redressability. The individual plaintiffs had sought "an injunction preventing the federal parties from enforcing ICWA and a declaratory judgment that the challenged provisions are unconstitutional." *Id.* at *18. But the Supreme Court explained that an injunction or declaration against the federal government "would not remedy the alleged injury, because state courts apply the placement preferences, and state agencies carry out the court-ordered placements." *Id.* Nor, the Court continued, could the plaintiffs meet their burden by "insist[ing] that state courts are likely to defer to a federal court's interpretation of federal law, thus giving rise to a substantial likelihood that a favorable judgment will redress their injury." *Id.* at *18. "Redressability," the Court stated, "requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Id.* at *19 (quoting *Franklin* v. *Massachusetts*, 505 U. S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment) (emphasis in original)). The Court further explained that, "[o]therwise, redressability would be satisfied whenever a decision might persuade actors who are not before the court—contrary to Article III's strict prohibition on 'issuing advisory opinions.'" *Id.* (quoting *Carney* v. *Adams*, 141 S. Ct. 493, 498 (2020)).

Second, the Supreme Court decisively rejected Texas's claim to *parens patriae* standing. *Id.* at *19 & n.11. The Court noted that it is a "settled rule" that "Texas . . . cannot assert equal protection claims on behalf of its citizens because '[a] State does not have standing as *parens patriae* to bring an action against the Federal Government.'" *Id.* at *19 (citing *Alfred*

2

*L. Snapp & Son*, *Inc.* v. *Puerto Rico ex rel. Barez*, 458 U. S. 592, 610, n. 16 (1982)); *id*. ("That should make the issue open and shut.").

The Supreme Court rejected Texas's "creative arguments for why it ha[d] standing despite these settled rules." *Id*. For example, Texas claimed that ICWA "forces Texas to violate its own constitutional obligations" by directing the State on how to conduct child-custody proceedings. The Supreme Court held that such a claim "is not the kind of 'concrete' and 'particularized' 'invasion of a legally protected interest' necessary to demonstrate an 'injury in fact.'" *Id*. (citing *Lujan*, 504 U. S., at 560); *id*. ("Were it otherwise, a State would always have standing to bring constitutional challenges when it is complicit in enforcing federal law.").

The Supreme Court similarly rejected Texas's argument that the challenged provisions "forc[ed] it to discriminate against its citizens or lose federal funds." *Id*. The Court noted that ICWA is not a spending clause statute and that Texas instead based its argument on a different statute that it did not challenge. *Id*. Moreover, "Texas ha[d] not established that those funds, which the State has accepted for years, are conditioned on compliance" with the challenged provision. *Id.*

Finally, the Supreme Court rejected Texas's asserted "pocketbook injury associated with the costs" of compliance. *Id.* Texas claimed standing based on expenditures it would make in connection with child-custody proceedings, but that were not directly related to the specific provisions of ICWA that Texas was challenging. *Id.* The Supreme Court rejected this claim, finding that "these alleged costs are not 'fairly traceable' to the placement preferences, which 'operate independently' of the provisions Texas identifies." *Id.*

3

Here, Plaintiffs repeat many of the same arguments for standing that the Supreme Court rejected in *Brackeen*. First, *Brackeen* forecloses Texas's *parens patriae* theory (Pls' Mot. 29-32). *See Brackeen*, 2023 WL 4002951, at *19 & n.11.

Likewise foreclosed is Texas's reliance on an asserted increase in expenditures it may make due to the State's obligation to provide certain social services to all undocumented immigrants. Pls' Mot. 32-33. As in *Brackeen*, such social service expenditures are made independent of DACA (and in some instances are required by state rather than federal laws), and an order from this Court ending DACA would not relieve Texas of those obligations. *See* 2023 WL 4002951, at *19.

Moreover, under Plaintiffs' framing, nearly 80% of DACA recipients would remain in Texas even if DACA ended. *See* Pls' Mot. at 34. And Plaintiffs agree that many of those would likely *become* dependent on State social services after losing access to employment and health insurance. *Id.* at 33 ("[C]ertain financial injuries may increase at the termination of the Final Rule or be 'offset' at its continuation."). Thus, these expenditures by the State are independent of DACA and will not be alleviated by a court order ending DACA. *See Brackeen*, 2023 WL 4002951, at *19 ("Texas would continue to incur the complained-of costs even if it were relieved of the duty to apply the placement preferences. The former, then, cannot justify a challenge to the latter.").

The Court should find that, under the Supreme Court's analysis in *Brackeen* and for the reasons asserted in Federal Defendants' summary judgment briefing, Plaintiffs have failed to establish standing.

Dated: June 20, 2023                                                  Respectfully submitted,

BRIAN M. BOYNTON                                              */s/ James J. Walker*
Principal Deputy Assistant Attorney General      JAMES J. WALKER
Civil Division                                                             Senior Litigation Counsel

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Attorneys for Federal Defendants*