# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:18-CV-68 |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| Defendants, | ) |
| and | ) |
| KARLA PEREZ, *et al.*, | ) |
| Defendant-Intervenors, | ) |

NOTICE OF SUPPLEMENTAL AUTHORITY
OF DEFENDANT-INTERVENORS ELIZABETH DIAZ, ET AL.

Defendant-Intervenors Elizabeth Diaz, *et al.* ("Defendant-Intervenors") respectfully provide Notice of the U.S. Supreme Court's decision in *U.S., et al. v. Texas, et al.*, No. 22-58 (June 23, 2023) (attached as Exhibit 1) ("slip op." or "*Texas Immigration Priorities*").

In *Texas Immigration Priorities*, a case with obvious parallels to this one, eight Justices agreed that Texas lacked standing to challenge the U.S. government's exercise of enforcement discretion in the immigration context and reversed the U.S. District Court for the Southern District of Texas's opinion that had upheld Texas's standing. The majority and concurring opinions adopted the very arguments that Defendant-Intervenors have consistently advanced in this case to explain why Texas's generalized policy disagreements with the federal government, no matter how strongly held, do not give Texas standing to challenge the United States' exercise of authority over immigration—a power expressly

1

granted to the federal government under our constitutional system. More particularly, the eight justices explained that: (1) standing "prevent[s] the judicial process from being used to usurp the powers of the political branches" as Texas seeks to do, slip op. at 3 (cleaned up); *see id.* at 18–19 (Gorsuch, J., concurring)[1] (standing "filter[s] out [plaintiffs] with generalized grievances that belong to a legislature to address" and prevents "government by lawsuit") (cleaned up); (2) "bedrock Article III constraints" apply to states and that courts, rather than applying some lesser standard that invites states to litigate policy disagreements with the federal government, must carefully scrutinize state claims of standing based on "attenuated" interests, such as the "indirect effects on state revenues or state spending" that are frequently generated by federal policies, *id.* at 8–9 n.3; *see id.* at 2 (Gorsuch, J., concurring) ("[n]othing in [Article III] suggests a State may have standing when a similarly situated private party does not"); and (3) any "asserted injury [must be] traditionally redressable in federal court," *id.* at 4, a limitation that is particularly apposite in the immigration context, where Congress has expressly prohibited courts from enjoining federal policies, *id.* at 4–5 (Gorsuch, J., concurring) (describing Texas's redressability problems in light of 8 U.S.C. § 1252(f)(1)). *Texas Immigration Priorities* thus validates Defendant-Intervenors' arguments and "further erode[s] Plaintiffs' already-insufficient arguments for standing, vacatur, and a nationwide remedy," as Defendant-Intervenors predicted it would in prior briefing. Dkt. 680 at 1. In short, the *Texas Immigration Priorities* decision forecloses Plaintiffs' theories of standing, makes clear that any of Texas's purported injuries are not redressable, and raises serious concerns around the scope and breadth of the nationwide relief Plaintiffs are pursuing.

---

[1] Citations to "slip op. at __" refer to the page number printed in the slip opinion's margin. Thus, citations to "slip op. at 18 (Gorsuch, J., concurring)" refer to the 18th page of Justice Gorsuch's concurrence.

If there were any doubt that the Court should grant Defendant-Intervenors' motion for summary judgment as to Plaintiffs' lack of standing, *Texas Immigration Priorities* puts it to rest. Like the guidelines challenged in *Texas Immigration Priorities* (the "Guidelines"), DACA reflects an exercise of enforcement discretion in the immigration context. As the Supreme Court explained in *Texas Immigration Priorities*, states typically lack standing to challenge the Executive Branch's exercise of discretion, because "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." Slip op. at 8. That is particularly true in the immigration context, where—as the Supreme Court found with respect to the Guidelines, and as Defendant-Intervenors have argued with respect to DACA—"the Executive Branch does not possess the resources necessary to arrest or remove all of the noncitizens" in the United States, and so "the Executive Branch *must* prioritize its enforcement efforts" and exercise the discretion afforded to it under the nation's immigration laws. *Id.* at 7–8. DACA, like the Guidelines, is a necessary exercise of the Department of Homeland Security's ("DHS") enforcement discretion. *See* Dkt. 642 at 3-4. Just as Texas and Louisiana disagreed with DHS's exercise of discretion as embodied in the Guidelines, Texas and the other Plaintiffs disagree with DHS's necessary exercise of discretion through DACA. But that disagreement is insufficient to overcome the requirements of Article III, and Plaintiffs lack standing to challenge DACA for the same reasons the Supreme Court, in an 8-1 decision, found that Texas and Louisiana lacked standing to challenge the Guidelines.

Plaintiffs have long argued that they—as state litigants—have a lesser standing burden. However, the *Texas Immigration Priorities* decision underscores that the federal courts must "remain mindful of bedrock Article III constraints in cases brought by States

against an executive agency or officer," noting that "when a State asserts, for example, that a federal law has produced only [ ] indirect effects, the State's claim for standing can become more attenuated."  Slip op. at 8–9 n. 3.  The Supreme Court reiterated that, "[w]hen a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else," as is true here, "much more is needed to establish standing." *Id.* at 6 (cleaned up).  The "absence of coercive power over the plaintiff makes a difference"—and, as the Supreme Court clarified, makes it substantially more difficult for a state (or other bystander) to prove standing. *Id.*  DACA perfectly fits this description: DACA does not act directly on the states, and instead merely channels DHS's exercise of enforcement discretion with respect to individual immigrants *living in* the states.  As such, Plaintiffs have a particularly difficult challenge to establish actual injury—one that they cannot meet on this record, which includes no evidence that any Plaintiff incurred even a penny of loss due to DACA.  *See, e.g.*, Dkt. 642 at 19–22; *see also* Dkt. 702 (explaining why Texas's repeatedly waived driver's license costs are not properly before the Court).

Similarly, while Plaintiffs have long relied on *Massachusetts v. EPA*, the *Texas Immigration Priorities* Court emphasized that *Massachusetts* "does not control" challenges "to an exercise of the Executive's enforcement discretion." *Id.* at 13 n. 6.  After this clear refutation, Plaintiffs cannot rely on *Massachusetts* to shore up the evidentiary weaknesses in their assertion of standing.

Plaintiffs will undoubtedly note that the Supreme Court majority opinion took care to say that it was not deciding the standing issue in this case, observing that "a challenge to an Executive Branch policy that involves both the Executive Branch's arrest or prosecution priorities and the Executive Branch's provision of legal benefits or legal status *could* lead to

4

a different standing analysis," slip op. at 11 (citing *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), aff'd by an equally divided Court, 579 U.S. 547 (2016)) (emphasis altered) ("*Texas (Parents)*"). But that language does not help Plaintiffs, who challenge only DACA, which is itself merely an exercise of deferred action, *i.e.*, "a form of enforcement discretion not to pursue [ ] removal." 8 C.F.R. § 236.21(c)(1). As Defendant-Intervenors have explained, *see* Dkt. 642 at 32–35 (collecting authority), work authorization, lawful presence, and the like flow from entirely separate regulations, which Plaintiffs have not challenged. Moreover, in the DAPA case, the Fifth Circuit based its standing analysis on a declaration offered by Texas that purported to show Texas would incur driver's license expenditures, *Texas (Parents)*, 809 F.3d at 155, which Plaintiffs repeatedly declined to do in this case, *see* Dkt. 702. And, even if Plaintiffs had attempted to make out such costs here, the decision in *Texas Immigration Priorities* would require this Court to depart from the DAPA analysis by assessing whether such "indirect effects on state revenues or state spending" generated by federal policies that regulate third parties (evaluated without the lens of "special solicitude" applied by the Fifth Circuit) are too "attenuated" to support standing. Slip op. at 6, 8–9 n.3.

In addition to the majority opinion, Justice Gorsuch's concurring opinion in *Texas Immigration Priorities*, joined by Justices Thomas and Barrett, further confirms another crucial flaw in Plaintiffs' theory of standing: redressability. Justice Gorsuch specifically refuted Plaintiffs' argument here (which was also adopted by the Fifth Circuit in *Texas (Memo)*, 50 F.4th 498, 529 (5th Cir. 2022)) that, despite the Supreme Court's holding in *Aleman Gonzalez*, this Court can issue injunctive relief to address Plaintiffs' purported injuries:

> Ordinarily, to remedy harms like those the States demonstrated in this suit, they would seek an injunction. The injunction would direct federal officials to detain

5

> aliens consistent with what the States say the immigration laws demand. But even assuming an injunction like that would redress the States' injuries, that form of relief is not available to them. It is not available because of 8 U. S. C. § 1252(f)(1). There, Congress provided that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" certain immigration laws, including the very laws the States seek to have enforced in this case. If there were any doubt about how to construe this command, we resolved it in *Garland v. Aleman Gonzalez*, 596 U. S. __ (2022). In that case, we held that § 1252(f)(1) "prohibits lower courts from . . . order[ing] federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Id.*, at __ ([*Aleman Gonzalez*] slip op., at 5). Put simply, the remedy that would ordinarily have the best chance of redressing the States' harms is a forbidden one in this case.

*Id.* at 4–5 (Gorsuch, J., concurring). So too here—Section 1252(f)(1) bars Plaintiffs from obtaining injunctive relief that they say could redress their purported injuries, and Defendant-Intervenors' motion for summary judgment should be granted on that basis as well.

Justice Gorsuch's concurrence also undermines Plaintiffs' attempt to avoid Section 1252(f)(1) by requesting vacatur rather than an injunction. Just as Plaintiffs do here, Texas and Louisiana in *Texas Immigration Priorities* attempted to overcome the bar imposed by Section 1252(f)(1) by asserting that vacatur was a "distinct form of relief," not subject to the prohibitions of Section 1252(f)(1). *Id.* at 5 (Gorsuch, J., concurring). As Justice Gorsuch observed, however, that is "a clever workaround, but it doesn't succeed." *Id.* Among other points, the concurrence in *Texas* observes that if vacatur does not, indeed, prohibit DHS from taking or refraining from taking actions, it "does nothing to redress the State's injuries." *Id.* at 6. This is so because "[a] judicial decree rendering the Guidelines a nullity does nothing to change the fact that federal officials possess the same underlying prosecutorial discretion," "[n]or does such a decree require federal officials to change how they exercise that discretion in the Guidelines' absence." *Id*. So too with DACA. As Defendant-Intervenors have argued, "[e]ither vacatur prevents DHS from implementing the Rule, and vacatur is precluded in this Court under Section 1252(f)(1), or vacatur does *not* prevent DHS from implementing the

6

Rule, and vacatur would not redress Plaintiffs' supposed injuries." Dkt. 642 at 43; compare *id.* at 42–44 *with* slip op. at 5–7 (Gorsuch, J., concurring). In either case, the *Texas Immigration Priorities* concurrence underscores that Plaintiffs cannot obtain redress for their purported injuries.

Finally, Justice Gorsuch's concurrence confirms that—even if Plaintiffs had proved a cognizable injury, and vacatur *were* available as a remedy—there are sound reasons for denying Plaintiffs' request for broad, nationwide relief. As Justice Gorsuch explained, granting nationwide vacatur could "stymie the orderly review of important questions, lead to forum shopping, render meaningless rules about joinder and class actions, [ ] facilitate efforts to evade the APA's normal rulemaking processes, . . . sweep up nonparties who may not wish to receive the benefit of the court's decision" and "strain[] our separation of powers." *Id.* at 18–19 (Gorsuch, J., concurring).

As Defendant-Intervenors have explained on numerous occasions, this litigation is nothing more than a policy disagreement between the elected officials of certain states and the elected officials of the federal government—a fact demonstrated by the frequent changes of position among various states and the federal defendants as elected officials come and go. As the Supreme Court warned in *Texas Immigration Priorities*, courts should not countenance efforts to misuse the "important but limited" role of federal courts through a persistent strategy of "'government by lawsuit.' R. Jackson, The Struggle for Judicial Supremacy 286–287 (1941)." *Id.* at 19 (Gorsuch, J., concurring). Nationwide vacatur of a critical federal policy, in any area of exclusive federal control, when only one State—Texas—even attempted (albeit feebly) to establish standing and made no affirmative effort to demonstrate actual injury, would be an overbroad and inappropriate remedy that would

7

only further encourage the type of policy-driven litigation that *Texas Immigration Priorities* says is inappropriate.

In each of these respects, the *Texas Immigration Priorities* decision supports Defendant-Intervenors' arguments. Defendant Intervenors respectfully urge that this Court must rule based on a materially different legal landscape than when it (or the Fifth Circuit) issued prior opinions in this case.

Dated: June 29, 2023                                  Respectfully Submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**

By:  */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
Attorney-in-Charge
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382
Email: nperales@maldef.org

**ROPES & GRAY LLP**

Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC 20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
(Admitted pro hac vice)

**GARCÍA & GARCÍA, ATTORNEYS AT LAW P.L.L.C.**

Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX 78502
Phone: (956) 630-3889
Facsimile: (956) 630-3899
Email: cgarcia@garciagarcialaw.com

Attorneys for Defendant-Intervenors