**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants, <br> *and* <br><br> KARLA PEREZ, *et al.*, <br> and <br><br> NEW JERSEY, <br><br> Defendant-Intervenors. | Case No. 1:18-cv-00068 |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

On June 23, 2023, the Supreme Court issued a decision in *United States v. Texas*, 599 U.S. ___, No. 22-58, 2023 WL 4139000 (U.S. June 23, 2023) (*Texas EP*). In that case, the states of Texas and Louisiana (hereafter, "the plaintiff-states") sued the Department of Homeland Security (DHS), seeking to have the courts vacate new immigration enforcement policy (EP) guidelines as inconsistent with 8 U.S.C. §§ 1226(c) and 1231(a)(2), asserting those provisions "require the Department to arrest *more* criminal noncitizens pending their removal." *Id*. at *2 (Court's emphasis). The Supreme Court rejected the plaintiff-states' challenges to the guidelines for lack of standing. *Id*. at *5. In light of the Supreme Court's intervening analysis, this Court can and should reexamine its prior determination that Plaintiffs here have standing.

1

*See, e.g., United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (explaining that the law-of-the-case doctrine has an exception where "there has been an intervening change of law by a controlling authority").

First, the Supreme Court in *Texas EP* rejected the plaintiff-states' argument that they were entitled to special solicitude under *Massachusetts v. EPA*, 549 U.S. 497 (2007), explaining that "that decision does not control this case," which involved "a challenge to an exercise of the Executive's enforcement discretion" rather than "a challenge to the denial of a statutorily authorized petition for rulemaking." *Texas EP*, 2023 WL 4139000, at *8 n.6. The Court thus rejected the plaintiff-states' argument that they were "entitled to special solicitude in th[e] Court's standing analysis" because they had a procedural right to challenge the enforcement priorities "under the APA," and because those priorities purportedly implicated what the plaintiff-states asserted was the Federal Government's "failure to protect certain formerly sovereign prerogatives [of the states] that are now lodged in the Federal Government," including the "power to admit or exclude aliens" and the states' "quasi-sovereign interests in the health and well-being . . . of their residents in general." Brief for Respondents 16-17, *Texas EP*, No. 22-58 (U.S.) (alterations and quotation marks omitted).

Plaintiffs' standing arguments here mirror those the Supreme Court rejected in *Texas EP*. *See* ECF No. 673 at 34 (arguing that Plaintiffs "are entitled to special solicitude, which lessens their burden to establish causation, redressability, and immediacy," because "they have a procedural right under the APA to challenge the Final Rule, which affects their quasi-sovereign interests in the economic well-being of their residents and in classifying aliens"). And the extension of such solicitude to Texas was a prominent feature of the Fifth Circuit's and this Court's prior conclusion that Plaintiffs here have standing. *See Texas v. United States*, 50 F.4th 498, 514-

517 (5th Cir. 2022) (holding that Texas was entitled to special solicitude "because of its procedural right under the APA to challenge DACA and Texas' quasi-sovereign interest in alien classification"); *id.* at 520 (concluding that "[e]specially with the benefit of special solicitude, Texas has established that rescinding DACA would redress its [social-service-costs] harm"); ECF No. 575 at 16 ("Applying the law set out in *Massachusetts v. EPA* and *Texas I*, the Court finds that Texas is entitled to special solicitude."); *id.* at 24 (affording Plaintiffs "the benefit of a relaxed standard" in the standing analysis due to special solicitude). Given the Supreme Court's intervening decision in *Texas EP*, this Court should revisit its standing analysis without affording such solicitude to Plaintiffs and conclude they lack standing here.

Next, the Supreme Court's recent ruling abrogates this Court's and the Fifth Circuit's previous reliance on Plaintiffs' asserted social-services expenditures to conclude that at least Texas had established a cognizable injury. *See Texas*, 50 F.4th 498, 517-520; ECF No. 575 at 28-33. The *Texas EP* plaintiff-states had argued that they would make additional expenditures because the challenged enforcement priorities meant they "must continue to . . . supply social services such as health care and education to noncitizens who should be (but are not being) arrested by the Federal Government." *Texas EP*, 2023 WL 4139000, at *3. Despite those assertions, the Court concluded that the plaintiff-states had not "overcome[] the fundamental Article III problem with [their] lawsuit" challenging the Executive's administration of the immigration laws, observing that "in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending. And when a State asserts, for example, that a federal law has produced only those kinds of indirect effects, the State's claim for standing can become more attenuated." *Id.* at *6 n.3.

3

Plaintiffs claim standing in this case based upon nearly identical allegations of injury—contending that, in light of the Final Rule, Texas will make increased expenditures for healthcare and education because of certain noncitizens' continued presence in the state. *See* ECF No. 625-1 at 32-33; ECF 673 at 34.[1] And this Court and the Fifth Circuit both relied on such indirect and incidental effects on social-service expenditures in previously concluding that Plaintiffs have standing. *See Texas*, 50 F.4th at 517-520; ECF No. 575 at 28-33. But as the Supreme Court has now explained, a state's claim for standing is "more attenuated" when seeking to overcome an "Article III problem" that "has produced only th[e] kinds of indirect effects" claimed by the plaintiffs in *Texas EP* and this case—an instruction not limited to suits challenging enforcement policies. *Texas EP*, 2023 WL 4139000, at *6 n.3. Notably, the Court made clear that this principle extends beyond the context of nonenforcement policies, citing *Florida v. Mellon*, 273 U.S. 12 (1927), and *Massachusetts v. Laird*, 400 U.S. 886 (1970)—neither of which involved challenges to nonenforcement policies—as additional support. *Id.*

Thus, even to the extent that Plaintiffs contend that the Final Rule is more than a "passive non-enforcement policy," *Regents*, 140 S. Ct. at 1906, this Court should revisit Plaintiffs' standing arguments to address *Texas EP*'s recognition of the attenuated nature of the indirect effects of a federal policy on expenditures by a state, under our constitutional framework of dual sovereignty.[2]

---

[1] As the United States has explained, the Court should not consider Plaintiffs' untimely theory of standing based on the expenditures it may make in providing subsidized driver's licenses to DACA recipients. *See* ECF No. 681 at 5-10. But even if it did, those expenditures are of the same type as the healthcare and education expenditures that the plaintiff-states in *Texas EP* claimed entitled them to standing—an "indirect effect[] on state revenues or state spending" of the variety that the Supreme Court warned in *Texas EP* "attenuate[s]" any claims of standing. 2023 WL 4139000, at *6 n.3.

[2] The indirect social-services expenditures the plaintiff-states allegedly will make in light of the federal policies challenged in *Texas EP* and this case stand in contrast to the direct injury to Missouri the Supreme Court found in *Biden v. Nebraska*, No. 22-506 (U.S. June 30, 2023). There,

4

Finally, in holding that the plaintiff-states lacked standing, the Court in *Texas EP* further clarified the limits on a plaintiff's standing to challenge the Executive Branch's exercise of enforcement discretion over whether to arrest or prosecute where the plaintiff is itself neither prosecuted nor threated with prosecution. *See* 2023 WL 4139000, at *4. The Court reiterated its conclusion in *Linda R. S. v. Richard D.*, 410 U.S. 614 (1973)), that in American jurisprudence, a party "lacks a judicially cognizable interest in the prosecution . . . of another." *Id*. at 619. The Court pointed to the lack of historical precedent for allowing such suits, and noted the importance of "history and tradition" in determining the types of cases an Article III court can entertain. *Id*. at *4-5. The Court also relied on its holding in *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984), that the petitioners there had "no judicially cognizable interest in procuring enforcement of the immigration laws" by the Executive Branch. *Id*. at *4. The Supreme Court thus confirmed that the "principle of enforcement discretion over arrests and prosecutions extends to the immigration context, where the Court has stressed that the Executive's enforcement discretion implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives.'" *Id.* at *5 (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490–491 (1991)); *see also id.* (citing *Arizona v. United States*, 567 U.S. 387, 396 (2012)).

Plaintiffs' claims here likewise implicate Article II's assignment to the Executive Branch, not the judiciary, of the "authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" *Texas EP*, 2023 WL 4139000, at *5 (citation omitted). Here, as in *Texas EP*, the Executive Branch has identified circumstances where

---

the Supreme Court explained that the Secretary of Education's plans to discharge certain student loan debt would directly harm a public instrumentality of the state—which had entered contracts with the Department of Education and was set up to service student loans—by causing the closure of accounts and the loss of approximately $44 million in revenue. *Id.*, slip op. 8. Plaintiffs here do not allege that the DACA Final Rule will have any comparable direct loss of state revenue.

it "elects *not* to arrest or prosecute," and thus "does not exercise coercive power over an individual's liberty or property" or "infringe upon interests that courts often are called upon to protect. *Id*. And DACA, like the policy at issue in *Texas EP*, rests on the reality that the Executive Branch "invariably lacks the resources to arrest and prosecute every violator of every law" and must "constantly react and adjust to the ever-shifting public-safety and public-welfare needs of the American people." *Id.* at \*6.

This Court should thus reexamine its earlier jurisdictional analysis in light of *Texas EP*. *See In re Bonvillian Marine Service, Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (explaining that "there is no hard-and-fast requirement" before finding a prior panel decision overruled "that a Supreme Court decision explicitly overrule the circuit precedent"). Although the Supreme Court made clear that it was not "resolv[ing] the Article III consequences of" a policy "that involves both the Executive Branch's arrest or prosecution priorities *and* the Executive Branch's provision of legal benefits or legal status," *Texas EP*, 2023 WL 4139000, at \*8, its reasoning illustrates that federal courts lack meaningful standards for assessing the propriety of Executive Branch decisions regarding the allocation of scarce enforcement resources and should not enter orders directing "the Executive Branch to change its arrest or prosecution policies so that the Executive Branch makes more arrests or initiates more prosecutions." *Id.* at \*4; *see id.* at \*6.

The fact that a person accorded deferred action in the exercise of enforcement discretion may be accorded benefits under other provisions of law as a result does not alter that conclusion. Indeed, a party likewise ordinarily has no judicially cognizable interest in preventing the provision of government benefits to someone else. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342-46 (2006). And, as with Plaintiffs' challenge to the exercise of enforcement discretion, Plaintiffs' reliance on the indirect and incidental effects the availability of such federal benefits may have on

expenditures the state may make is too attenuated to accord them standing in these circumstances. *See Department of Education v. Brown*, No. 22-535, slip op. 14 (June 30, 2023) (holding that plaintiffs lacked standing to challenge the provision of benefits to some borrowers based on the theory that eliminating that benefit "might have some incidental effect" on the plaintiffs).

At a minimum, this Court should decline to enter any relief in this case that would interfere with the severable forbearance policy within the Final Rule. *See* ECF No. 639 at 25-26 (explaining that even if Plaintiffs have standing to challenge the provision of certain benefits to DACA recipients, and this Courts holds that the provision of those benefits is unlawful, it should sever and hold unlawful only those provisions of the Final Rule). But the Supreme Court's reasoning in *Texas EP* also undermines this Court's earlier redressability analysis. While the Fifth Circuit previously noted that this Court's prior judgment "does not require DHS to remove anyone," *Texas*, 50 F.4th at 529, the redress upon which the court of appeals relied was the rescission of the DACA policy writ large, including its forbearance policy with respect to certain noncitizens. *See id.* at 520 (deciding that "rescinding DACA would redress [Texas's] harm"); ECF No. 575 at 31 (examining redressability "should DACA end"); *see also id.* at 52 (faulting DACA for "prevent[ing] the removal of its recipients, despite Congress having dictated their eligibility for removal"). Any possible redress here should not include an order constraining the Executive Branch's enforcement discretion, and Plaintiffs' standing must be reexamined in light of *Texas EP*.

For the reasons stated herein, as well as Federal Defendants' summary judgment briefing and first notice of supplemental authority, the Court should deny Plaintiffs' motion for summary judgment for lack of standing and grant Federal Defendants' motion for summary judgment.[3]

Dated: July 5, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director

Respectfully submitted,

*/s/ James J. Walker*
JAMES J. WALKER
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Attorneys for Federal Defendants*

---

[3] The Supreme Court in *Texas EP* did not address the plaintiff-states' contention that they had *parens patriae* standing. *See* Brief for Respondents 23, *Texas EP*, No. 22-58 (U.S.). The Court's holding makes clear, however, that this argument was insufficient to establish the plaintiff-states' standing. As the United States previously explained, the Supreme Court recently held that states do not have standing as *parens patriae* to bring an action against the Federal Government. *See* ECF 704-1, at 2-3 (citing *Haaland v. Brackeen*, 599 U.S. __, No. 21-376, 2023 WL 4002951, at *19 (U.S. June 15, 2023)).