## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants, <br><br> *and* <br><br> KARLA PEREZ, *et al.*, <br><br> STATE OF NEW JERSEY, <br><br> Defendant-Intervenors. | Case No. 18-cv-00068 |

**FEDERAL DEFENDANTS' RESPONSE**
**TO THE COURT'S JULY 22, 2025 ORDER (ECF No. 760)**

On July 22, 2025, this Court issued an Order (ECF No. 760) granting leave to the parties to file additional briefing on any or all of six enumerated issues after *Texas v. United States*, 126 F.4th 392, 422 (5th Cir. 2025) (*Texas III*). Federal Defendants respectfully submit this memorandum in response to Issues 1, 2, 3, 4, and 5.

1. Non-Texas Plaintiff-States should not be given yet another opportunity to attempt to show an injury. Federal Defendants have long maintained that any relief the Court awards must be limited in scope to redress the injury to a plaintiff that has demonstrated a particularized cognizable injury. *See, e.g.*, ECF No. 71 at 16-17 (Federal Defendants' June 8, 2018, Response to Plaintiff-States' Motion for Preliminary Injunction, arguing Plaintiff-States must allege a cognizable injury and provide "evidentiary support" of that injury, and any injunction must be limited to redressing the particular cognizable injury shown); ECF No. 302 at 91 (Transcript of Aug. 8, 2018, hearing on Plaintiff-States' request for preliminary injunction, arguing the same); ECF No. 639 at 9-10, 28-29 (Federal Defendants' March 2, 2023, Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment, arguing each Plaintiff-State must show a concrete injury, no State besides Texas has even attempted to establish an injury caused by DACA, and any injunction must be limited to the harm allegedly shown to Texas); ECF No. 681 at 5-6, 19 (Federal Defendants' April 27, 2023, Reply in Support of Cross-Motion for Summary Judgment, asserting similar arguments, including, "The Court should decline Plaintiffs' request for a nationwide remedy, particularly because only Texas has attempted to show harm."); *Texas, et al.* v. *United States of America, et al.*, No. 21-40680 (5th Cir.), Dec. 8, 2021, Brief for Federal Appellants at 13, 54 (same); *Texas, et al.* v. *United States of America, et al.*, No. 23-40653 (5th Cir.), Jan. 25, 2024, Brief for Federal Appellants at 50-51. Despite having the burden of proof, Non-Texas Plaintiff-States chose not to present evidence of

any cognizable injury during this protracted litigation. More than seven years in, and after full briefing and hearings on a preliminary injunction motion, several summary judgment motions, and two trips to the Fifth Circuit, Non-Texas Plaintiff-States have forfeited any further chance to show injury.

Federal Defendants further respectfully submit that the Fifth Circuit's decision in *Texas III* did not constitute a "*de facto* change in the standing doctrine." ECF No. 760, at 2. The Supreme Court and the Fifth Circuit have long recognized that so long as "at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023). But they have never suggested that the remaining plaintiffs can establish standing without demonstrating injury-in-fact or the other prerequisites for standing. Nor have the courts held that plaintiffs that have not established their standing are entitled to equitable relief. To the contrary, the Supreme Court has long recognized that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). And, of course, a district court can no more assume a plaintiff's injury when crafting appropriate relief than it can assume such injury when determining standing. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *Lewis v. Casey*, 518 U.S. 343, 360 n.7 (1996) ("Courts have no power to presume and remediate harm that has not been established."). Thus, it has long been established that although only one plaintiff needs to demonstrate injury (and causation and traceability) for a federal court to have jurisdiction over a case, each plaintiff must demonstrate its injury in order to obtain equitable relief. Although these principles were recently confirmed in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), they are not new. *Texas III* relied on well-established principles concerning standing and equitable remedies, *see Texas III*, 126 F.4th at 420-21 & n.47; there has

3

been no change in the standing doctrine; and Non-Texas Plaintiff States should not be given an opportunity to establish facts that they have long forfeited.

2. Beyond confirming the propriety of the Fifth Circuit's decision to limit injunctive relief to Texas, *Trump v. CASA, In*c*.*, 606 U.S. 831 (2025), does not affect the Fifth Circuit's instructions to this Court. In *CASA, Inc.*, the Supreme Court held that a court's equitable powers do not allow it to grant an injunction "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id*. at 861. First, *CASA, Inc*. reaffirmed that, as relevant here, each State plaintiff's showing of standing is crucial to the availability and scope of injunctive relief. Equitable relief is available only to remedy the injuries of a "plaintiff with standing to sue." *Id*. Second, *CASA, Inc*. emphasized that "complete relief to the plaintiffs before the court" is the outer limit of the equitable relief that a court can provide. *Id.* at 852-53. To assess what sort of injunction is necessary to provide "complete relief," a court necessarily focuses on the injury the plaintiff alleges and shows*. Id*. Thus, as the Supreme Court explained, a plaintiff who asserts harm from an Executive Order receives "complete relief" from an order "prohibiting enforcement" as to her; "[e]xtending the injunction to cover all other similarly situated individuals would not render her relief any more complete." *Id.* As the parties seeking an injunction, each plaintiff must demonstrate that an injunction is necessary to remedy the specific harms it claims.

Here, the Fifth Circuit held, "[b]ecause Texas is the only plaintiff that has demonstrated or even attempted to demonstrate an actual injury, and because that injury is fully redressable by a geographically limited injunction, we narrow the scope of injunction to Texas." *Texas III*, 126 F.4th at 421. The Fifth Circuit's decision thus reflects the same fundamental remedial principles the Supreme Court applied in *CASA, Inc.*

4

3. DHS has informed DOJ of the following. After issuance of the Court's order modifying its injunction, and while the existing DACA regulations, issued in 2022, remain in effect, USCIS proposes to take the following measures to implement the existing DACA regulations consistent with this Court's injunction as modified by the Fifth Circuit. These proposals do not limit DHS from undertaking any future lawful changes to DACA.

USCIS proposes that the geographic limitation for initial DACA requestors be based on the individual's state of residence (not based on state of employment), as reflected by the most recent physical address on record with USCIS. Because initial DACA requests have been pending for as long as four years, the address provided on the requestor's Form I-821D, Request for Consideration of Deferred Action for Childhood Arrivals might not reflect the individual's current state of residence. Generally, aliens in the United States who are required to register with USCIS are required report a change of address to USCIS within 10 days of moving (except A and G visa holders and visa waiver visitors), *see* 8 U.S.C. § 1305; 8 C.F.R. § 265.1, so USCIS might already have an updated address on record for individuals who have moved. USCIS proposes to put out public communications reminding DACA requestors/DACA recipients of this continuing obligation, requesting that DACA recipients and individuals with pending DACA requests (initial and renewal) ensure their address on record with USCIS is current, by a certain deadline, and informing them of the effect of moving to or out of Texas due to the court order. USCIS also proposes to require DACA requestors to submit evidence of their state of residency when requesting an employment authorization document (EAD) in order to ensure compliance with the Court's order. Employment authorization is not state-specific, therefore a DACA

recipient residing outside of Texas who receives a DACA-based EAD would be employment authorized everywhere in the United States, including in Texas.

Initial DACA Requests

Individuals who receive initial DACA while residing outside of Texas, or who request initial DACA while residing outside of Texas, but who subsequently move to Texas are obligated to report their change of address to USCIS within 10 days.  *See* 8 U.S.C. § 1305; 8 C.F.R. § 265.1.  After USCIS becomes aware through an official change of address that such an individual has moved to Texas, USCIS intends to issue a Notice of Intent to Revoke the individual's EAD and provide 15 days to respond, consistent with 8 C.F.R. § 274a.14(b), citing the individual's Texas residence and the court orders as the intended bases for revocation.  If the individual is unable to overcome the intended grounds for revocation, USCIS will revoke the individual's DACA-based EAD.  Moving to Texas would not itself trigger termination of deferred action due to implementation of the rule's severability provision.

Individuals whose initial DACA request is approved, but who are not issued a related EAD due to their residence in Texas at the time of DACA approval, but who subsequently move outside of Texas and report their change of address to USCIS, may file a Form I-765, Application for Employment Authorization, to request a DACA-based EAD for the duration of their approved DACA validity period.

DACA Renewal Requests

For the duration of the partial stay, USCIS will continue to adjudicate all DACA renewal requests, and if approved, may approve related applications for employment authorization, regardless of the requestor's state of residence.  However, if the partial stay as to existing DACA recipients (*i.e.*, "all DACA recipients who received their initial DACA status prior to July 16,

2021") is lifted, USCIS proposes to apply the same approach described above for identifying state of residence initially when the stay is lifted (based on current address on record, with public communications to remind this population of their obligation to report a change of address within 10 days), and to identify when such an individual moves in or out of Texas. Additionally, if a renewal recipient or requestor moves to or from Texas, USCIS would apply the above-described approach for revoking employment authorization or adjudicating a Form I-765, as applicable.

      4. DHS has informed DOJ of the following. After issuance of the Court's order modifying its injunction, and while the existing DACA regulations, issued in 2022, remain in effect, USCIS proposes to take the following measures to implement the existing DACA regulations consistent with this Court's injunction as modified by the Fifth Circuit. These proposals do not limit DHS from undertaking any future lawful changes to DACA.

      <u>Employment authorization</u>

      USCIS will adjudicate all initial DACA requests and related applications for employment authorization. USCIS emphasizes that any grant of deferred action remains an act of the Secretary's discretion. *See* 8 C.F.R. § 236.22(b) ("[A] request for deferred action under this section may be granted only if USCIS determines in its sole discretion that the requestor . . . merits a favorable exercise of discretion."). If USCIS approves the initial DACA request, USCIS may only approve the related application for employment authorization for requestors whose most recent address on record with USCIS is outside of Texas. For initial DACA requestors whose most recent address on record with USCIS is in Texas, USCIS may approve the initial DACA request, but proposes to reject and refund the filing fee for a related application

for employment authorization if a Form I-765 is filed requesting a DACA-based EAD.[1]  For initial DACA requestors residing in Texas, USCIS proposes to accept Form I-821D without a Form I-765 and the Form I-765 filing fee.[2]  For pending initial DACA requestors whose residence on record with USCIS is in Texas, USCIS will refund the Form I-765 filing fee.

If the partial stay is lifted, USCIS proposes to follow procedures to revoke DACA-based EADs for DACA recipients residing in Texas (based on their current address on record with USCIS), in accordance with 8 C.F.R. § 274a.14(b).

The proposed adjudicative approach to renewals if the partial stay is lifted would be the same as with initial requests: if the DACA renewal request is approved and the current address of record with USCIS is outside of Texas, USCIS may approve the related EAD application, but if the current address of record with USCIS is in Texas, USCIS proposes to reject and refund the filing fee for a related EAD application if a Form I-765 is filed requesting a DACA-based EAD. For renewal DACA requestors residing in Texas, USCIS proposes to accept Form I-821D without a Form I-765 and the Form I-765 filing fee.

<u>Lawful presence under 8 C.F.R. § 1.3(a)(4)(vi) and 8 U.S.C. § 1182(a)(9)</u>

USCIS proposes that DACA recipients residing in Texas will have deferred action but will not be considered lawfully present under 8 C.F.R. § 1.3(a)(4)(vi) and 8 U.S.C. § 1182(a)(9). USCIS proposes to create a new Class of Admission code ("COA") that will only be applied to DACA recipients whose most recent address on record with USCIS is in Texas to aid in

---

[1] Individuals residing in Texas who receive initial DACA after July 16, 2021, and who subsequently request renewal of DACA will still be unable to receive a DACA-based EAD, despite filing as a renewal requestor, because they are not subject to the partial stay.

[2] Although 8 C.F.R. § 236.23(a)(1) requires that a request for DACA contain a request for employment authorization filed pursuant to 8 C.F.R. §§ 274a.12(c)(33) and 274a.13, USCIS proposes that this part of the regulation be severed, only as to individuals residing in Texas, since it relates to the benefit of employment authorization.

8

identifying DACA recipients in DHS systems who are not considered lawfully present under 8 C.F.R. § 1.3(a)(4)(vi) and 8 U.S.C. § 1182(a)(9).

When USCIS is notified through an official change of address that a DACA recipient has moved to Texas, following revocation of their EAD as described above, their COA would be updated to reflect this new COA for Texas DACA recipients. Likewise, if USCIS is notified through a change of address that a DACA recipient has moved out of Texas, this Texas-specific COA would be removed.

While the partial stay is in effect, this separate COA would only apply to initial DACA recipients residing in Texas. If the partial stay is lifted, this COA would also apply to renewal DACA recipients residing in Texas.

<u>Proposed language for court order implementing geographically limited injunction and severability clause</u>:

The July 16, 2021, injunction and vacatur, supplemented on September 13, 2023, to include the DACA Final Rule, issued in 2022, is limited to individuals residing in Texas. The following provisions of the DACA Final Rule are severed and vacated only as to individuals residing in Texas:

- 8 C.F.R. § 236.21(c)(2) ("During this period of forbearance, on the basis of this subpart only, USCIS may grant employment authorization pursuant to 8 C.F.R. §§ 274a.13 and 274a.12(c)(33) to DACA recipients who have demonstrated an economic need.")

- 8 C.F.R. § 236.21(c)(3) ("During this period of forbearance, on the basis of this subpart only, a DACA recipient is considered 'lawfully present' under the provisions of 8 C.F.R. § 1.3(a)(4)(vi).")

- 8 C.F.R. § 236.21(c)(4) ("During this period of forbearance, on the basis of this subpart only, a DACA recipient is not considered 'unlawfully present' for the purpose of inadmissibility under section 212(a)(9) of the Act[,] [8 U.S.C. § 1182(a)(9)].")

- 8 C.F.R. § 236.23(a)(1), second sentence only ("A request for Deferred Action for Childhood Arrivals must also contain a request for employment authorization filed pursuant to 8 C.F.R. §§ 274a.12(c)(33) and 274a.13.")

- 8 C.F.R. § 274a.12(c)(14), first clause only ("Except as provided for in paragraph (c)(33) of this section,")

- 8 C.F.R. § 274a.12(c)(33) ("An alien who has been granted deferred action pursuant to 8 C.F.R. §§ 236.21 through 236.23, Deferred Action for Childhood Arrivals, if the alien establishes an economic necessity for employment.")

Accordingly, subject to the partial stay currently in effect, DHS is enjoined from implementing the vacated provisions of the DACA Final Rule, issued in 2022, as to individuals residing in Texas, while they are residing in Texas.

5. The modified injunction, as instructed by the Fifth Circuit, does not pose any Equal Protection concerns. Under the modified injunction, aliens who choose to live in Texas are ineligible for DACA-related benefits (other than a forbearance-only form of deferred action) that similarly situated aliens who choose to live in other states are eligible for. The Fifth Circuit did not order the injunction modified based on any improper discriminatory motive. The court's actions are facially neutral. Furthermore, a distinction drawn based on whether an individual resides in a state that obtained relief in an equitable action is not a suspect classification; otherwise, the Supreme Court's admonition in *CASA, Inc.* that an injunction should be no broader than necessary to provide plaintiffs complete relief would have little import where the

plaintiffs are states. *Cf. CASA, Inc.*, 606 U.S. at 853-54 (suggesting that a district court could limit an injunction to plaintiff states if that would remedy plaintiffs' injury). Absent proof of a discriminatory purpose, the rational basis test applies. *United States v. Hernandez-Lopez*, 583 F. Supp. 3d 815, 818 (S.D. Tex. Feb 2, 2022) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977)). The modified injunction "must be upheld if it is 'rationally related to a legitimate government purpose.'" *Hernandez-Lopez*, 583 F. Supp. 3d at 824 (quoting *United States v. Ramos*, 858 F. App'x 759, 761 (5th Cir. 2021)). Here, the modified injunction is rationally related to the legitimate interest of courts acting within their authority to provide complete relief only to each plaintiff that has demonstrated a cognizable injury and standing. There are no Equal Protection concerns.

Similarly, the modified injunction, as instructed by the Fifth Circuit, does not pose any due process concerns. While aliens in the United States may not be deprived of liberty or property without due process, they first must possess a liberty or property interest. *See Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) ("The first inquiry in every due process challenge . . . is whether the plaintiff has been deprived of a protected interest in property or liberty."). Aliens have no liberty or property interest in an opportunity to apply for DACA-related employment authorization or other benefits. Such discretionary benefits do not give rise to a constitutionally protected interest as is required to support a due process claim. *See, e.g., Mejia-Alvarenga v. Garland*, 95 F.4th 319, 326 (5th Cir. 2024); *Alkotof v. United States Att'y Gen.*, 106 F.4th 1289, 1298 (11th Cir. 2024). DACA-related employment authorization is a discretionary benefit, which this Court, as affirmed by the Fifth Circuit, has found unlawful. "The lack of a protected interest is fatal for a due process claim, whether substantive or procedural." *Palacios v. Dep't of Homeland Sec.*, 434 F. Supp. 3d 500, 508 (S.D. Tex. 2020). And finally, even assuming that any

11

such interest exists, as described above and consistent with 8 C.F.R. § 274a.14(b), DHS intends to afford individual DACA recipients notice and an opportunity to be heard regarding their residential status before making any changes to DACA-related benefits on that basis, thereby satisfying any due process obligations.  *See, e.g.*, *United States v. Villanueva-Diaz*, 634 F.3d 844, 850 (5th Cir. 2011) ("The essence of 'due process' is notice and a fair opportunity to be heard.").

Dated: September 29, 2025

DANIEL HU
Assistant U.S. Attorney
Office of the U.S. Attorney
for the Southern District of Texas
1000 Louisiana, Ste 2300
Houston, TX 77002
Phone: 713-567-9518
Fax: 713-718-3303
Email: daniel.hu@usdoj.gov

*Local Counsel for Federal Defendants*

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

AUGUST E. FLENTJE
Senior Counsel

ANTHONY P. NICASTRO
Acting Director

GLENN GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah Maloney*
SARAH MALONEY
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation & Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 451-7467
Fax: (202) 305-7000
E-mail: sarah.e.maloney@usdoj.gov

*Counsel for Federal Defendants*

**CERTIFICATE OF SERVICE**

    I certify that on September 29, 2025, this document was filed electronically with the Clerk of the Court using the CM/ECF system, which should automatically send notification of this filing to all counsel of record.

                                              */s/ Sarah Maloney*
                                              SARAH MALONEY