IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> UNITED STATES OF AMERICA, *et al.*, § <br> § <br> *Defendants*, § <br> § <br> and § <br> § <br> MARIA ROCHA, *et al.*; § <br> § <br> STATE OF NEW JERSEY, § <br> § <br> *Defendant-Intervenors*. § | Case No. 1:18-CV-00068 |

**DEFENDANT-INTERVENORS' BRIEF IN RESPONSE TO
THE COURT'S ORDER DATED JULY 22, 2025**

Defendant-Intervenors Maria Rocha, *et al.* ("Defendant-Intervenors") submit the following in response to the Court's July 22, 2025 Order granting leave to all parties to file additional briefing on six issues outlined in the Order. *See* Dkt. 760.

\* \* \*

**Question #1:** It is well-established that "[i]f at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska,* 600 U.S. 477, 490 (2023) (citing *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.,* 547 U.S. 47, 52, n.2 (2006)); *see also General Land Office v. Biden,* 71 F.4th 264, 271 (5th Cir. 2023) ("Each State asserts it has standing. But only one needs standing for the action to proceed."). Perhaps relying on that doctrine, here, Texas—but only Texas—has attempted to demonstrate standing under a pocketbook-

**injury theory.** *Texas,* **126 F.4th at 403, 405. Notwithstanding that compliance with existing standing doctrine, the Fifth Circuit has instructed this Court to limit the injunctive relief to only Texas "[b]ecause Texas is the only plaintiff that has demonstrated or even attempted to demonstrate an actual injury."** *Id.* **at 421. Given this apparent** *de facto* **change in the standing doctrine, should non-Texas Plaintiff-States be given a chance to demonstrate their injury? Do non-Texas Plaintiff-States even wish to demonstrate their injury?**

In its ruling on summary judgment, this Court found that only one plaintiff in this action had established its standing: Texas. *See* Dkt. 575 at 33 ("Texas has standing."). Based on that finding—combined with the "well-established" principle that "if at least one plaintiff has standing, the suit may proceed," Dkt. 760—this Court allowed this action to proceed to the merits, and to ultimate judgment. *See* Dkt. 575 (denying Defendant-Intervenors' motion for summary judgment for lack of standing, and granting Plaintiffs' motion for summary judgment). The Fifth Circuit, considering the standing question *de novo*, agreed with this Court's determination that only one Plaintiff State had established its standing to sue: Texas. *See Texas v. United States*, 50 F.4th 498, 513-14, 520 (5th Cir. 2022) ("*Texas II*"). Indeed, the Fifth Circuit observed that of the Plaintiff States only Texas had even "attempted to demonstrate standing." *Id.* ("Before considering the merits of the appeals from the district court's judgment, we must resolve whether any Plaintiff has standing to assert the claims at issue. . . . Texas is the only state that has attempted to demonstrate standing. . . . Texas has demonstrated standing based on its direct injury."). Nothing had prevented any other State from offering evidence of their standing; Defendant-Intervenors had sought discovery of evidence related to the other States' purported standing, but they admitted that they had none. *See* Dkt. 504 at 19 n. 5 (compiling

Plaintiff States' admissions that they had no such evidence). Defendant-Intervenors thus argued, before this Court and on appeal, that the non-Texas Plaintiffs were not entitled to any relief. *See id.* at 49; Br. of Intervenor Defs.-Appellants at 52, *Texas III*, 2024 WL 406153; *see also* Br. of Intervenor Defs.-Appellants at 54, *Texas II*, 2021 WL 6197832 ("There is . . . no credible argument that a nationwide injunction is necessary to cover multiple parties across the country with standing to assert claims"). While this Court rejected Defendant-Intervenors' argument to limit the scope of relief to the one State that had established standing, the Fifth Circuit agreed with Defendant-Intervenors. *See Texas v. United States*, 126 F.4th 392, 421 (5th Cir. 2025) ("*Texas III*") (narrowing the scope of the injunction "[b]ecause Texas is the only plaintiff that has demonstrated or even attempted to demonstrate an actual injury, and because the injury is fully redressable by a geographically limited injunction").

The question of whether <u>one</u> plaintiff has demonstrated standing—such that a suit can proceed to the merits—is a separate and distinct inquiry from the scope of relief that is necessary to give relief to the parties properly before the Court—*i.e.*, those plaintiffs who have demonstrated standing. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 344 (1996) (Scalia, J.) (reversing application of injunctive relief beyond the plaintiffs that had demonstrated that they had personally been injured). As the Supreme Court has explained, the "doctrine of standing" requires courts to "provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm"; consequently, "any remedy must be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Id.* at 349. "If

once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration," the Supreme Court warned, then the "actual-injury requirement would hardly serve [its] purpose." *Id*.

Applying this black letter legal principle, the Fifth Circuit affirmed this Court's determination that Texas had demonstrated standing, but then reversed the Court on the scope of relief, holding that "[b]ecause Texas is the only plaintiff [in the instant case] that has demonstrated or even attempted to demonstrate an actual injury[, . . . ] for remedial purposes, [the] focus should be on Texas, and remedying its harm does not require nationwide relief." *Texas III*, 126 F.4th at 421 & n.47. Because Texas's "injury is fully redressable by a geographically limited injunction," the Fifth Circuit "narrow[ed] the scope of the injunction to Texas." *Id.* By limiting the geographic scope of the injunction, the Fifth Circuit recognized that this Court is "not authorized to remedy *all* inadequacies" that *may* exist, *see Lewis*, 518 U.S. at 349, and sought to ensure that the remedy ordered by this Court is "limited to the inadequacy that produced the injury in fact that the plaintiff"—*i.e.*, Texas, and *only* Texas— "has established." *Id.* at 344.

There is no inconsistency or new legal principle in the Fifth Circuit's affirmation that this litigation could proceed to the merits but that the Court's grant of relief should be limited only to the party (Texas) that had demonstrated an injury. Nor did the Fifth Circuit's decision change the law, *de facto* or otherwise. To the contrary, as the Supreme Court recently

reaffirmed in *Trump v. CASA, Inc.*, 606 U.S. ___, 145 S. Ct. 2540 (2025), "principles of equity" have always generally required courts to ensure that injunctions are no "broader than necessary to provide complete relief to each plaintiff *with standing to sue*." *Id.*, at 2562-63 (emphasis added).  Now that the Fifth Circuit has agreed with Defendants-Intervenors that "[a]n injunction limited to Texas alone is better tailored to Texas's asserted injury," *Texas III*, 126 F.4th at 421, "*this Court must give effect to that interpretation, as it is binding precedent.*" Dkt. 319 at 32 (recognizing controlling effect of previous Fifth Circuit decisions in ruling on Plaintiff States' motion for preliminary injunction) (emphasis added); *see id.* at 83 ("[T]he Fifth Circuit's decision . . . controls this case; it is *binding case law for this Court, and the result here is inescapable*.") (emphasis added).

The Court should not reopen its summary judgment holding on standing, should any non-Texas Plaintiff State request that this Court do so.  As the Fifth Circuit has held, "[r]econsideration of a judgment after its entry is an *extraordinary* remedy[.]" *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (emphasis added).  That is particularly true where a request for reconsideration comes from parties like the non-Texas Plaintiff States, who had opportunity after opportunity to present evidence of injury, and opted for *years* not to do so.  A "party's 'unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration.'" *Anderson v. Martco, LLC*, 852 F. App'x. 858, 860 (5th Cir. 2021) (quoting *Templet*, 367 F.3d at 479).

Indeed, the non-Texas Plaintiff States not only never separately established standing—they time and again intentionally declined to do so before both this Court *and* the Fifth Circuit. *See, e.g.*, Dkt. 575 at 14 ("all parties have focused their standing arguments on DACA's impact in Texas"); *Texas III*, 126 F.4th at 405 ("As before, Texas is the only state that has attempted to demonstrate standing.") (cleaned up). In advance of the Court's ruling on summary judgment, Defendant-Intervenors pointed to ample evidence that the non-Texas Plaintiff States had either been unable or had refused "to provide any quantitative analysis identifying the economic harm they suffer from the DACA recipients' presence." Dkt. 504 at 19.[1] This remains as true today as it was nearly five years ago.[2] Defendant-Intervenors specifically argued that the non-Texas Plaintiffs' refusal to provide evidence of standing meant that any relief the Court might order should be limited to Texas. *See* Dkt. 504 at 49; *see also* Br. of Intervenor Defs.-Appellants at 52, *Texas III*, 2024 WL 406153 ("If the Court determines that DACA should be enjoined . . . it should . . . limit the injunction's application to Texas, the only state that even attempted to

---

[1] Citing Ex. 27 at ¶ 5 (Alabama "cannot calculate the expenditure of [law enforcement] agency funds on statewide law enforcement activity for specific DACA individuals"); Ex. 28 at ¶ 8; Ex. 29 at ¶ 3 (Arkansas "cannot determine the amount of state or federal funds spent on any student by immigration status"); Ex. 30 at ¶¶ 2–3; Ex. 31 at ¶ 4; Ex. 32 at ¶ 2–3 (Kansas "cannot calculate the specific past or future education costs spent on children without lawful immigration status, including DACA recipients"); Ex. 33 at ¶ 4; Ex. 34 at ¶ 4 (Louisiana "does not track the costs of services or benefits provided by law enforcement) to undocumented immigrants"); Ex. 35 (failing to account for DACA specifically); Ex. 36 at ¶¶ 4–5 (Mississippi Division of Medicaid "cannot calculate specific past or future costs spent on specific individuals"); Ex. 37 at ¶¶ 4–5; Ex. 38 at ¶¶ 3–4; Ex. 39 at ¶ 4 (Nebraska "cannot calculate specific past or future costs spent on specific students" without additional information); Ex. 40 at ¶¶ 4–5; Ex. 41 at ¶ 4; Ex. 42 at ¶ 4; Ex. 43 at ¶¶ 3–4; Ex. 44 at ¶ 4; Ex. 45 at ¶ 2; Ex. 46 at ¶¶ 3–4; Ex. 47 at ¶¶ 4–5; Ex. 48 at ¶ 3; Ex. 49 at ¶¶ 4– 5; Ex. 50 at ¶¶ 4–5; Ex. 51 at ¶¶ 4–5; Ex. 52 at ¶ 3; Ex. 53 at 60:17–62:5; Ex. 54 at 77:1–79:10.
[2] Further cementing non-Texas Plaintiff-States' lack of interest in asserting any form of injury arising from the effects of DACA, DHS received 16,361 public comments on the Notice of Proposed Rulemaking and Texas was the only state to submit a comment expressing any opposition.

demonstrate an actual injury."). The Fifth Circuit has, on appeal, vindicated Defendant-Intervenors' position, and the non-Texas Plaintiffs are bound by their choices.

The Non-Texas Plaintiff States' failure to establish standing before summary judgment—despite ample opportunity to do so—is a consequence of their own litigation decision, with which they must now live. The Non-Texas Plaintiff States cannot now get the "proverbial 'second bite at the apple' by attempting to re-litigate [their] case with new theories, arguments, and purported evidence that [they] never raised before [this Court] in [their] Response in Opposition to [Defendant-Intervenors'] Motion for Summary Judgment or previous briefings. [] This is not permitted." *Reuter v. XTO Energy, Inc.*, 2022 WL 2712860, at *1 (S.D. Tex. July 13, 2022). That is especially true because, "in equity, the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be." *CASA*, 145 S. Ct. at 2558 (cleaned up). Here, the Court recognized as early as August 2018 that the Plaintiff States' "nearly six-year wait" in challenging DACA precluded preliminary equitable relief. Dkt. 319 at 110-11. More than seven years—and two trips to and from the Fifth Circuit—after that, the Court should not re-open the evidence and allow the non-Texas Plaintiff States another opportunity to attempt to introduce evidence of injury. The "essence of equity jurisdiction" is "the power . . . to do equity," *CASA*, 145 S. Ct. at 2558, and it would be inequitable to revisit the question of the non-Texas Plaintiff States' standing and injury now. Defendants-Intervenors put the Plaintiff States on notice that if they wished to benefit from any injunctive relief, they had to produce evidence of their own injury. *See Texas III*, 126 F.4th at

421, 421 n.47 (because "Texas is the only plaintiff that has demonstrated or even attempted to demonstrate an actual injury . . . for remedial purposes, [t]he focus should be on Texas"). Apart from Texas, the Plaintiff States chose not to do so. They cannot now claim surprise when Defendants-Intervenors had already alerted them to what the law, as affirmed by the Fifth Circuit, required.

The Supreme Court's decision in *CASA* confirmed that equitable relief has always been limited to plaintiffs with standing; thus, there has been no change in law that would warrant departing from the law-of-the-case and rule of orderliness principles under which this Court cannot now revisit its prior holdings on standing. *See, e.g.*, *D'Arbonne Bend LLC v. Pierce*, 2021 WL 3660764, at *3 (S.D. Tex. Jan. 6, 2021) (Hanen, J.) (quoting *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006) ("Under the law-of-the-case principle, this Court shall not reexamine such an argument")); *Texas III*, 126 F.4th at 406 ("Jurisdictional questions, such as a panel's understanding of Article III standing remain binding under the rule of orderliness.").

**Question #2: In the intervening period between the Fifth Circuit's opinion and this Order, the United States Supreme Court decided *Trump v. CASA, Inc.*, 606 U.S. _ (2025). What effect, if any, does that decision have the Circuit's instructions to this Court?**

The ruling in *Trump v. CASA, Inc.*, 606 U.S. ___, 145 S.Ct. 2540 (2025), is wholly in accord with the Fifth Circuit's instructions to this Court, and therefore merely reinforces the Fifth Circuit's determination to narrow the scope of the injunction in this case to Texas (and Texas alone). The Fifth Circuit's instructions to this Court were specifically tailored to give

relief only to the plaintiffs with standing before them—*i.e.*, Texas, and <u>only</u> Texas. *See Texas III*, 126 F.4th at 422. In so doing, the Fifth Circuit narrowed this Court's nationwide injunction on the basis that it was "overly broad." *Id.* at 420. In geographically limiting the injunction to Texas, the Fifth Circuit noted that "'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Id.* at 421 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Notably, the Fifth Circuit acknowledged that it had in some prior cases "upheld nationwide injunctions because of the interest of uniformity in immigration laws," but the Fifth Circuit found that, in this case, "the balance of equities outweighs that interest" and warranted a Texas-specific injunction to address Texas-specific injury. *Id.* By narrowing this Court's nationwide injunction, the Fifth Circuit's mandate was fully consistent with the longstanding law that the Supreme Court's decision in *CASA* reiterated—that nationwide injunctions are appropriate only in those circumstances in which nationwide relief is essential in order to give complete relief to the demonstrated injuries of those plaintiffs with standing before the Court. *CASA*, 145 S.Ct. at 2562-63.

Here, the Fifth Circuit has already applied that same standard and directed that relief should be limited in this case to Texas, the same result that the Supreme Court's decision in *CASA* would require. In *CASA*, the Supreme Court explained that "the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief to the plaintiffs before the court."

*CASA*, 145 S.Ct. at 2558 (citing *Califano*, 442 U.S. at 702 ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs.*") (emphasis added by the Supreme Court in *CASA*)). This is precisely the same reasoning that the Fifth Circuit utilized to narrow the injunction in this case. *See Texas III*, 126 F.4th at 421 (quoting *Califano*, 442 U.S. at 702). The Fifth Circuit's analysis is thus fully consistent with *CASA*. By limiting relief to Texas—the only Plaintiff that has demonstrated injury—the Fifth Circuit ensured that the injunction here was not "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at 422 (quoting *Hernandez v. Reno*, 91 F.3d 776, 781 & n.16 (5th Cir. 1996)).

Because *CASA* is fully consistent with the Fifth Circuit's decision, *CASA* simply underscores that this Court may not expand the scope of the injunction that the Fifth Circuit already narrowed to Texas.

**Question #3: The Court's injunction originally enjoined the United States and its departments, agencies, officers, agents, and employees from "administrating the DACA program." (Doc. No. 576 at 3-4). Now, the Fifth Circuit has limited the injunctive relief to Texas. *Texas*, 126 F.4th at 422. How would the narrowed scope of the injunction be implemented? Participating parties are to specifically address, among others, how those individuals included or excluded from the scope of the injunction will initially be identified (e.g., application address, permanent address, etc.) and how they will continue to be identified (e.g., when they leave the state or when an existing DACA recipient enters the state).**

Defendant-Intervenors believe it is appropriate for the Federal Government Defendants to provide an initial proposal on how the narrowed scope of the injunction should be implemented. Defendant-Intervenors appreciate the briefing schedule provided by this Court,

including the generous leave to respond to other Parties' briefing, and Defendant-Intervenors look forward to the opportunity to respond to the Federal Government Defendants' proposal.

Of course, any proposal must adequately consider the "immense reliance interests that DACA has created," *Texas III,* 126 F.4th at 422, which this Court has already recognized "weigh heavily in [DACA recipients'] favor." Dkt. 728 at 32. At a minimum—and regardless of how the narrowed injunction is ultimately implemented—the "immense reliance interests" here require that all DACA recipients be afforded a sufficient *status quo* period in order to have a meaningful opportunity to "reorder their affairs" as needed. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 590 U.S. 1, 32 (2020) (noting that DACA recipients' reliance interests may call, *inter alia*, for "a broader renewal period based on the need for DACA recipients to reorder their affairs" and/or "more accommodating termination dates for recipients caught in the middle of a time-bounded commitment, to allow them to, say, graduate from their course of study, complete their military service, or finish a medical treatment regimen.").

Defendant-Intervenors note that Texas has proposed one full renewal period after the litigation was ultimately resolved, allowing DACA recipients a wind-down period of up to four years, depending on the date of their most recent renewal. *See, e.g.*, Dkt. 625-1 at 5 ("Defendants should be prevented from approving[, . . . ] after two years from the date of judgment, any DACA renewal applications."); Dkt. 673 at 9 ("Plaintiffs tailored their requested relief so that current DACA recipients have *at least* two years (and potentially up to four years) to find alternative means and file renewals within this two-year period.") (emphasis in original)

Defendant-Intervenors submit that this should be the absolute minimum effort to accommodate the reliance interests of DACA recipients subject to the narrower injunction.

Moreover, Defendant-Intervenors note that, consistent with the Fifth Circuit's mandate, the application of any injunctive relief must be limited to Texas, and must not extend outside Texas. This "geographically limited injunction," *Texas III* 126 F.4th at 392, is mandated by the Fifth Circuit's binding decision. A Texas-specific injunction is necessarily tied to an individual's residency in Texas. Throughout this litigation, Texas has alleged that DACA increases the State's expenditures associated with education, healthcare, and law enforcement by bearing the cost of these social services to DACA recipients. *See e.g.*, Dkt. 486 at 27-29. Texas further argued, and this Court agreed, that Texas's injury would be remedied by the departure of DACA residents from Texas. *See, e.g.*, Dkt. 486 at 28; Dkt. 575 at 29-30 ("If DACA recipients leave, Texas would no longer be obligated to pay for those costs associated with DACA recipients' entitlement to social services. Necessarily, this would reduce some of the state's financial expenditures."). The Fifth Circuit affirmed on that point, tying these alleged expenditures of social services to a DACA recipient's residency in Texas, and which would not be true of non-residents. *See Texas III*, 126 F.4th at 412 (citing *Texas II*, 50 F.4th at 518) ("if DACA were no longer in effect, at least some recipients would leave, and their departure would reduce [Texas's] costs for those individuals and their families who depart with them."). Thus, any proposal should therefore not extend to or implicate, in any way, DACA applicants and recipients who are not resident in Texas.

**Question #4**: **The Fifth Circuit instructed this Court to "heed DACA's severability provision."** *Texas*, **126 F.4th at 422. Given this instruction and that this Court has always held that the DHS "always ha[s] the right to forebear from prosecution any person illegally present in this country" even without DACA, (Doc. No. 728 at 30), how would this aspect of the Fifth Circuit's ruling be implemented? The Court welcomes any proposed language participating parties may submit.**

As this Court acknowledges, the Fifth Circuit deferred to the severability provision contained within the final DACA rule. *See* 87 Fed. Reg. 53,152 (the "Rule"); *Texas III*, 126 F.4th at 422. The Rule distinguishes forbearance from work authorization, and expressly notes that this distinction is by design. *See* 87 Fed. Reg. at 53,248-49 ("[F]orbearance remains workable and desirable without work authorization, and DHS would have adopted the forbearance portion of the policy even if it did not believe that the work authorization portion of the rule were legally authorized."). Out of deference to regulatory intent, the Supreme Court has maintained this distinction between the two elements of DACA. *See Regents*, 590 U.S. at 30 ("[F]orbearance and benefits are legally distinct and can be decoupled.").

Defendant-Intervenors look forward to the Federal Government Defendants' proposal, and will respond accordingly. However, the Fifth Circuit's ruling already makes at least two points clear in this regard: that (a) the "nationwide scope of the injunction" was reduced to solely apply to Texas, *see Texas III*, 126 F.4th at 420-21; and (b) the forbearance component of the Rule is to be severed from its work authorization component, *see id.* at 420. As such, Defendant-Intervenors respectfully submit that the Fifth Circuit's ruling mandates that (i) DACA recipients who do not reside in Texas will remain entitled to both DACA's forbearance and work authorization provisions; (ii) DACA recipients who do reside in Texas

will remain entitled to DACA's forbearance provision; and (iii) new applicants would be entitled to seek forbearance and work authorization (outside of Texas) or forbearance alone (in Texas). Beyond these already fixed principles, Defendant-Intervenors emphasize to this Court and the Federal Government Defendants that, as this Court, the Fifth Circuit, and the Supreme Court have all recognized, current DACA recipients who reside in Texas have "immense reliance interests" with respect to both forbearance and their existing grants of work authorization. *See id.* at 422; *see also* Dkt. 728 at 32 (recognizing that the reliance interests "weigh heavily in [DACA recipients'] favor"); *Regents*, 591 U.S. at 32 (suggesting accommodations to individuals "caught in the middle of a time-bounded commitment").

**Question #5:** **The new scope of the contemplated injunction, as instructed by the Fifth Circuit, would impose a differential treatment between would-be DACA recipients in Texas and DACA recipients outside of Texas. Would that pose any Equal Protection or Due Process concerns?**

In *CASA*, the Supreme Court held that federal courts lack the authority to issue a universal injunction in any case where nationwide relief is not required to address the injury to the plaintiffs properly before the court. *See CASA*, 145 S. Ct. at 2550–52 (citing *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund*, 527 U.S. 308, 319 (1999); *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 123 (1940)). Because injunctions should not be universal or nationwide, a lawful injunction will *by design* impact those litigants who have established standing and entitlement to relief differently from others. This is, as they say "a feature, not a bug" of this long-standing doctrine, rooted in the limitations of Article III.

In *CASA*, the plaintiffs—individuals, organizations, and states—sought an injunction barring the implementation and enforcement of Executive Order No. 14160 for violating the Citizenship Clause of the Fourteenth Amendment and Section 201 of the Nationality Act of 1940. *Id.* at 2548. The Supreme Court concluded that the relief issued by the district courts in those cases was broader than necessary to give full relief to the private plaintiffs, and it instructed the district courts, on remand, not to issue any injunctions that were "broader than necessary to provide complete relief *to each plaintiff with standing to sue*." *Id.* at 2562–63 (emphasis added). Had the Supreme Court perceived any due process, equal protection, or other concern with the plaintiffs in *CASA* being treated differently than those who had not established standing and injury, the Supreme Court's decision would necessarily have been different. To alter the already-narrowed geographic scope of the Fifth Circuit's injunction to avoid a hypothetical due process or equal protection violation would directly contradict *CASA*.

**Question #6:** The Fifth Circuit "impos[ed] no restriction on the matters that the district court, in its wisdom, may address on remand." *Texas*, 126 F.4th at 422. What other matters, if any, should the Court address? The parties are free to raise any additional points they find pertinent.

First, Defendant-Intervenors respectfully request that the Court clarify that, as a result of the Fifth Circuit's mandate, this Court's injunction no longer prohibits the Federal Government Defendants from accepting, adjudicating, and approving initial DACA applications, regardless of the applicant's state of residence. Defendant-Intervenors request this clarification because, based on the latest publicly available data, since January 2025, the

Federal Government Defendants have not approved a single new initial DACA application and they have denied only one new initial DACA application.[3] *See* DACA Performance Data FY 2025 Q2 (available at https://www.uscis.gov/tools/reports-and-studies/immigration-and-citizenship-data). The remaining 101,849 initial applications remain pending. It would appear that the reason that the initial applications remain pending is that the Federal Government Defendants take the view that they are empowered to act only on the "category of renewal requests" covered by the "Court of Appeals' stay allowing grants of renewal requests for individuals previously granted DACA." Dkt. 755, ¶¶ 4-5. As described above, however, the Fifth Circuit narrowed the geographic scope of the Court's previous injunction and ordered this Court to "heed DACA's severability provision." *Texas III*, 126 F.4th at 422. As a result, the Court's previous injunction no longer prevents the Federal Government Defendants from adjudicating the new initial applications.

Second, although Defendant-Intervenors reference this important point in response to other questions, *supra*, Defendant-Intervenors respectfully submit that this Court must remain guided by the reliance interests of the hundreds of thousands of DACA recipients who "know only this country as home." ROA.18762. For over a decade, "DACA recipients have 'enrolled in degree programs, embarked on careers, started businesses, purchased homes, and even married and had children, all in reliance' on the DACA program." *See Regents*, 590 U.S. at 31

---

[3] Based on the data, that single denial is either a termination, reaffirmation of a previous denial, or an administrative action taken to close the case, rather than an adjudication of the application's merits.

(cleaned up); *see also* Dkt. 575 at 76-77 (acknowledging the "hundreds of thousands of DACA recipients and others who have relied upon this program" whose "reliance has not diminished and may, in fact, have increased over time"). These recipients bolster the economies and livelihoods of the Non-Texas Plaintiff States through tax contributions, business ownership, labor, and volunteerism. *See* Br. of Intervenor Defs.-Appellants at 55, *Texas III*, 2024 WL 406153. Some recipients even embark on professional careers and engage in advocacy efforts for minority communities in the United States. *See id.*

At nearly thirteen years since its initiation, it is unfathomable for DACA recipients to conceive a world different from what they have grown to know and love in the United States. And, given the financial and social support that these recipients provide to their respective states and the country, the Court should be cognizant as well of the harm to those beyond individual DACA recipients if DACA were hastily undone. For these reasons, these reliance interests—which this Court has already recognized "weigh heavily in [DACA recipients'] favor," Dkt. 728 at 32—must remain at the forefront of this Court's decision-making.

Dated:  September 29, 2025                        Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By:  /s/ Nina Perales
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
110 Broadway, Suite 300
San Antonio, TX 78205
Phone:  (210) 224-5476
Email: NPerales@maldef.org
*Attorney-in-Charge*

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC  20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
*(Admitted pro hac vice)*

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX  78502
Phone:  (956) 630-3889
Facsimile:  (956) 630-3899
Email:  cgarcia@garciagarcialaw.com

*Attorneys for Defendant-Intervenors*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that, on the 29th day of September, 2025, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

                                                                           */s/* Nina Perales

                                                                           Nina Perales