IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-00068 |
| | § | |
| UNITED STATES OF AMERICA, *et al.,* | § | |
| | § | |
| *Defendants*, | § | |
| | § | |
| *and* | § | |
| | § | |
| MARIA ROCHA, *et al.*; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| *Defendant-Intervenors*. | § | |

**DEFENDANT-INTERVENORS' RESPONSE TO THE PARTIES'
<u>SUPPLEMENTAL FILINGS</u>**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE NATURE & STAGE OF THE PROCEEDINGS ................................1

INTRODUCTION ........................................................................................................................1

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ...........................4

ARGUMENT................................................................................................................................4

I.   The Court Should Not Issue Any Relief Outside Texas.......................................................4

    A.   The Court Should Not Grant A Declaratory Judgment Outside Texas. .............5

    B.   The Court Should Not Universally Vacate DACA. ...........................................9

        1.   The Fifth Circuit Explicitly Limited Vacatur to Texas; Under the Law of the Case and the Mandate Rule, that Limitation Is Binding......................9

        2.   Plaintiffs Cannot Sidestep the Fifth Circuit's Explicit Holding By Attempting Now, for the First Time, to Challenge Forbearance. ............11

    C.   This Court's Injunction Should Apply Only to Texas Residents. ....................15

II.  The Stay Should Remain In Place Through a Wind-down Period of at Least Two Renewals, as Previously Proposed by Plaintiffs. ................................................................18

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Garland*,
    730 F. Supp. 3d 258 (W.D. La. 2024)....................................................................14

*Baldwin Metals Co., Inc. v. Donovan*,
    642 F.2d 768 (5th Cir. 1981) ................................................................................6

*CEATS, Inc. v. TicketNetwork, Inc.*,
    2025 WL 2945804 (5th Cir. Oct. 17, 2025)...........................................................9

*Crane v. Johnson*,
    783 F.3d 244 (5th Cir. 2015) ..............................................................................16

*D'Arbonne Bend LLC v. Pierce*,
    2021 WL 3660764 (S.D. Tex. Jan. 6, 2021).........................................................9

*Department of Homeland Security. v. Regents of the University of California*,
    591 U.S. 1 (2020)...........................................................................................12, 13

*Fed. Ins. Co. v. Northfield Ins. Co.*,
    2017 WL 11633133 (S.D. Tex. Nov. 15, 2017) ...................................................10

*Franklin v. Regions Bank*,
    125 F.4th 613 (5th Cir. 2025) ...............................................................................9

*IAS Services Grp., LLC v. Jim Buckley & Assocs.*,
    2023 WL 4235553 (5th Cir. June 28, 2023) ........................................................10

*Koog v. United States*,
    79 F.3d 452 (5th Cir. 1996) ................................................................................12

*Nicklaw v. Citimortgage, Inc.*,
    839 F.3d 998 (11th Cir. 2016) ..............................................................................8

*Reuter v. XTO Energy, Inc.*,
    2022 WL 2712860 (S.D. Tex. July 13, 2022)........................................................8

*Robbins v. Reagan*,
    616 F.Supp. 1259 1269 (D.D.C. 1985), *aff'd*, 780 F.2d 37 (D.C. Cir. 1985)....................14

*Steffel v. Thompson*,
    415 U.S. 452 (1974).............................................................................................6

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021), *rev'd*, 597 U.S. 785 (2022) ................................................ 14

*Texas v. United States*,
   599 U.S. 670 (2023) ................................................................................................ 13, 14, 15

*Texas v. United States*,
   126 F.4th 392 (5th Cir. 2025) ................................................................................*passim*

*Texas v. United States*,
   50 F.4th 498 (5th Cir. 2022) ......................................................................... 5, 11, 16

*Texas v. United States*,
   945 F.3d 355 (5th Cir. 2019), *as revised* (Dec. 20, 2019), *as revised* (Jan. 9,
   2020), *rev'd and remanded sub nom. California v. Texas*, 593 U.S. 659 (2021) ............. 12

*Texas v. United States*,
   549 F. Supp. 3d 572 (S.D. Tex. 2021) ............................................................... 11

*Texas v. United States*,
   328 F. Supp. 3d 662 (S.D. Tex. 2018) .................................................................. 5

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ............................................................................................*passim*

*U.S. v. Alcantar*,
   733 F.3d 143 (5th Cir. 2013) ........................................................................... 11

*U.S. v. Lee*,
   358 F.3d 315 (5th Cir. 2004) ........................................................................... 10

*U.S. v. Teel*,
   691 F.3d 578 (5th Cir. 2012) ............................................................................. 9

*Washington v. Trump*,
   764 F. Supp. 3d 1050 (W.D. Wash. 2025) ....................................................... 16

*Wells v. Johnson*,
   150 F.4th 289 (4th Cir. 2025) ............................................................................ 6

*White Glove Staffing, Inc. v. Methodist Hosp. of Dallas*,
   947 F.3d 301 (5th Cir. 2020) ............................................................................. 7

**Statutes**

8 U.S.C. § 1182 .................................................................................................... 15, 17

8 U.S.C. § 1255 .............................................................................................................. 17

iii

**Other Authorities**

8 C.F.R. § 212.7 ................................................................................................................. 17

42 C.F.R. § 431.52 .............................................................................................................. 16

42 C.F.R. § 435.403 ............................................................................................................ 16

## STATEMENT OF THE NATURE & STAGE OF THE PROCEEDINGS

Pursuant to the Court's Orders on July 22, 2025, and October 20, 2025, *see* Dkts. 760, 793, Defendant-Intervenors Maria Rocha, *et al.* ("Defendant-Intervenors"), respectfully submit this Response to the supplemental briefs filed on September 29, 2025, by Plaintiffs, Dkt. 786 ("Pl. Br."); the Federal Defendants, Dkt. 781 ("DOJ Br."); and Defendant-Intervenor State of New Jersey, Dkt. 784 ("NJ Br."), and in further support of the supplemental brief filed by Defendant-Intervenors, Dkt. 783 ("DACA Recipients Br.").

## INTRODUCTION

In their 53-page brief, Plaintiffs ***still*** do not contend that any state other than Texas has even attempted to introduce evidence that DACA causes them any injury.  Nor, outside of an underdeveloped, in-the-alternative footnote, *see* Pl. Br. at 19 n.5, do Plaintiffs suggest that the Court should reopen the evidence and give them the chance to do so now.  And for good reason: as the Federal Defendants explain, "[m]ore than seven years in [to this case], and after full briefing and hearings on a preliminary injunction motion, several summary judgment motions, and two trips to the Fifth Circuit, Non-Texas Plaintiff-States have forfeited any further chance to show injury."  DOJ Br. at 3; *see also* DACA Recipients Br. at 5-8 (emphasizing that Plaintiffs are bound by their litigation choices).  Plaintiffs instead assert, relying on a convoluted combination of declaratory relief, severability "in the opposite direction," Pl. Br. at 47, and the Take Care Clause, that the Court should vacate DACA nationwide and prohibit DHS from implementing it—notwithstanding a clear and express mandate from the Fifth Circuit that

1

limits relief to Texas. *Texas v. United States*, 126 F.4th 392, 422 (5th Cir. 2025) ("*Texas III*").

Plaintiffs' overreaching argument is squarely and unambiguously foreclosed by the Fifth Circuit's ruling. In *Texas III*, the Fifth Circuit ***explicitly*** "limit[ed] injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas." *Id.* at 422. Plaintiffs cannot escape that clear holding. And because Plaintiffs did not petition for rehearing, rehearing en banc, or certiorari—yet another litigation choice that they must now live with— this Court is bound to follow the Fifth Circuit under the law of the case and the mandate rule. Plaintiffs concede as much. *See* Pl. Br. at 29 ("[T]he mandate rule, a corollary of the law of the case doctrine, compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or ***impliedly*** decided by the appellate court.") (citation omitted, emphasis added in Plaintiffs' brief).

There have been no intervening changes in the law that would require a different result. To the contrary, in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), the Supreme Court ***reiterated*** that it has ***long*** refused to grant "declaratory [or] injunctive relief" to nonparties, *id.* at 844 (cleaned up); emphasized (consistent with the Fifth Circuit's ruling in *Texas III*) that injunctions should be no "broader than necessary to provide complete relief to each plaintiff with standing to sue," *id.* at 861; and reserved judgment on whether vacatur under the Administrative Procedure Act must always stretch nationwide, *id.* at 847 n.10—a question that the Fifth Circuit answered in the negative in this case, *Texas III*, 126 F.4th at 420-21. The Fifth Circuit and the Supreme Court have now instructed that, whether through declaratory judgment,

injunctive relief, or vacatur under the APA, this Court's remedy ***cannot*** reach beyond the only

Plaintiff that has even attempted to demonstrate standing: Texas. The Court is bound by the

Fifth Circuit's decision, and for that reason alone, it should reject Plaintiffs' contrary arguments.

Plaintiffs' efforts to expand the reach of *Texas III*'s remedy on its own terms are equally

unsuccessful. Plaintiffs assert that this Court should modify its injunction so that it prohibits

DACA recipients from receiving advance parole, and so that it applies not just to Texas

residents, but to anyone "working or residing in Texas." Pl. Br. at 7-11. But DACA itself does

not make anyone eligible for advance parole, so there is nothing for this Court to modify. And

rewriting the injunction to apply to DACA recipients who do not even live in Texas would be

inconsistent with Texas's theory of standing, administratively unworkable, and inconsistent

with the Fifth Circuit's mandate to limit relief to Texas.

More troublingly, despite devoting just a handful of paragraphs to the issue, Plaintiffs

now insist that this Court lift its stay of the injunction for current DACA recipients, whose

reliance interests Plaintiffs argue are no longer valid. *Id.* at 50-52. Plaintiffs' argument is not

only factually incorrect—DACA recipients (including DACA recipients in Texas) have built

their lives in the United States, including in Texas, and their reliance interests remain deeply

relevant—but it is also plainly contrary to the Fifth Circuit's express recognition: that DACA

has created "immense reliance interests"; that there was continued "uncertainty of final

disposition" in this case, even after the Fifth Circuit ruled; and that a "lack of continuity and

stability" in DACA would cause "inevitable disruption." *Texas III*, 126 F.4th at 422. What

the Fifth Circuit said in January is no less true now, no matter how much Plaintiffs would like to minimize the human impact of rescission. Thus, the Court should maintain its stay to allow for the orderly winding down of DACA's benefits provisions for Texas residents and clarify the lack of effect on DACA as regards non-Texas residents.

### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT[1]

Plaintiffs' supplemental brief raises the following issues: (1) can this Court grant declaratory relief to the non-Texas Plaintiff states that have not even attempted to demonstrate standing; (2) can this Court vacate DACA nationwide, even though the Fifth Circuit "limit[ed] . . . the effectiveness of the vacatur of the Final Rule[] to Texas," *id.* at 422; (3) should this Court follow the Fifth Circuit's clear command and limit its injunction to Texas residents, or should the injunction apply to non-Texas residents and preclude DACA recipients from eligibility for advance parole; and (4) should this Court lift its stay, despite the "immense reliance interests that DACA has created," *id.*[2]

### ARGUMENT

## I.    THE COURT SHOULD NOT ISSUE ANY RELIEF OUTSIDE TEXAS.

The parties agree that the Fifth Circuit's decision in *Texas III* did not change the basic principle that at least one plaintiff must have Article III standing for a court to reach a case's

---

[1] To the extent the Court "finds it appropriate and necessary" to treat Plaintiffs' brief as a motion for summary judgment, Pl. Br. at 2, Defendant-Intervenors respectfully request a separate briefing schedule to respond to Plaintiffs' brief under the summary-judgment framework.

[2] Federal Defendants and Defendant-Intervenor New Jersey agree that limiting this Court's injunction to Texas does not violate the Equal Protection Clause, and Texas has not argued to the contrary. *See* DOJ Br. at 10-11; NJ Br. at 7-8; *see generally* Pl. Br.

merits.  *See* Pl. Br. at 12; DOJ Br. at 3; DACA Recipients Br. at 4-5; *see also* NJ Br. at 6-7.

The parties also agree that, at least with respect to an ***injunction***, a plaintiff without standing

is not entitled to broader relief than that obtained by a plaintiff that has demonstrated a traceable,

redressable injury.  *See* Pl. Br. at 7, 13; DOJ Br. at 3; DACA Recipients Br. at 3-4.  Plaintiffs

do not suggest that any state other than Texas has even tried to satisfy that standard.[3]  They

nonetheless attempt to bootstrap the Fifth Circuit's decision that Texas has standing into a

broad declaratory judgment and universal vacatur.  Both efforts fail.

### A.      The Court Should Not Grant A Declaratory Judgment Outside Texas.

Although Plaintiffs attempt to minimize *CASA*—Plaintiffs cite it just twice in their 53-

page brief—Plaintiffs cannot dispute that *CASA* reaffirmed the "party-specific principles that

permeate our understanding of equity."  606 U.S. at 844.  According to those "party-specific

principles," a court's chosen remedy must be no "broader than necessary to provide complete

relief to each plaintiff with standing to sue."  *Id.* at 844, 861.  Plaintiffs incorrectly assert that,

when it comes to declaratory relief, different rules apply.  So long as ***any*** plaintiff has Article

III standing, Plaintiffs say, ***every*** plaintiff is eligible for declaratory relief—"regardless of [that

---

[3] Plaintiffs assert that "[t]his Court found on at least three occasions that Plaintiffs established standing," Pl. Br. at 16, and that "every Plaintiff State suffers ongoing and future injuries as a result of DACA," *id.* at 19.  To the extent that, through those assertions, Plaintiffs intend to emphasize that Texas was found to have standing, no one is disputing that point; to the extent that Plaintiffs intend to imply that this Court or the Fifth Circuit have already ruled that any state other than Texas has standing, Plaintiffs are squarely incorrect.  This Court's and the Fifth Circuit's standing analysis has always focused only on Texas. *See Texas v. United States*, 328 F. Supp. 3d 662, 690 (S.D. Tex. 2018) ("*Texas I*") ("As the States have centered their standing arguments around DACA's impact in Texas, the Court's analysis focuses on whether Texas has standing to sue."); *Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022) ("*Texas II*") ("Texas is the only state that has attempted to demonstrate standing."); *Texas III*, 126 F.4th at 421 (same).  This case proceeded because Texas was found to have standing, but that did not mean that any other Plaintiffs had demonstrated standing.  *See* DACA Recipients Br. at 1-8.

plaintiff's] entitlement to an injunction or order of vacatur." Pl. Br. at 16. In other words, according to Plaintiffs, because the Fifth Circuit held that ***Texas*** has "demonstrated . . . an actual injury," *Texas III*, 126 F.4th at 421, this Court can now award declaratory relief to the other Plaintiff States—even though the Fifth Circuit identified that only Texas had demonstrated standing, and thus limited ***all*** remedies to Texas.

To support their cramped understanding of *CASA*, Plaintiffs assert that courts have never required parties to satisfy "all of the traditional equitable prerequisites to the issuance of an injunction . . . before the issuance of a declaratory judgment is considered." Pl. Br. at 14 (cleaned up). But in the cases Plaintiffs cite (at 14) for support, courts held only that a plaintiff seeking declaratory relief need not demonstrate irreparable injury. *See Steffel v. Thompson*, 415 U.S. 452, 471-72 (1974) ("irreparable injury" has "no equivalent in the law of declaratory judgments"); *Baldwin Metals Co., Inc. v. Donovan*, 642 F.2d 768, 775 n.17 (5th Cir. 1981) ("irreparable injury need not be shown in order to justify declaratory relief"). Plaintiffs cite ***no*** case in which a court held that a plaintiff need not have standing to secure a declaratory judgment. There is a good reason Plaintiffs cannot support that novel argument: As even Plaintiffs' own cited authority makes clear, "***a declaration is not a get-out-of-standing-free card***." *Wells v. Johnson*, 150 F.4th 289, 301 (4th Cir. 2025) (emphasis added).

Plaintiffs' declaratory-judgment-without-standing theory is also foreclosed by *CASA* itself. There, the Supreme Court surveyed the "equitable remedies traditionally accorded by courts of equity at our country's inception." 606 U.S. at 841 (cleaned up). The Court

concluded that its "early refusals to grant relief to nonparties" continued in the "party-specific principles that permeate [its] understanding of equity." *Id.* at 844. As a specific illustration, the Court emphasized that it has long held that "neither ***declaratory*** nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs." *Id.* (cleaned up, emphasis added). In other words, the Court instructed that the same principles that require injunctions to be no "broader than necessary to provide complete relief to each plaintiff with standing" apply equally to (and arise equally from) declaratory judgments. *Id.* at 681. Thus, because the other Plaintiffs lack standing to secure a declaratory judgment on their own, the Supreme Court's decision in *CASA* forecloses this Court from awarding them declaratory relief merely because Texas also appears in the case's caption.

That should end Plaintiffs' argument. Despite ample opportunities to do so, the Non-Texas Plaintiffs have never "even attempted to demonstrate an actual injury." *Texas III*, 126 F.4th at 421 & n.47. And it is far too late for them to do so now, as Plaintiffs themselves appear to recognize. Plaintiffs do not seriously suggest that the Court re-open the evidence to permit the non-Texas Plaintiffs to attempt to demonstrate standing; instead, Plaintiffs request the "opportunity to demonstrate their ongoing and future injuries" only in the alternative—and only in a footnote. Pl. Br. at 19 n.5. As the Fifth Circuit has said, however, "[a]rguments subordinated in a footnote are insufficiently addressed . . . and are thus waived." *White Glove Staffing, Inc. v. Methodist Hosp. of Dallas*, 947 F.3d 301, 308 (5th Cir. 2020) (cleaned up). Because Plaintiffs waived their opportunity to establish standing over the course of "[m]ore

7

than seven years," DOJ Br. at 3, and again here waived any argument that the Court should give them another chance, the Court should prevent Plaintiffs from "attempting to re-litigate [their] case with new theories, arguments, and purported evidence that [they] never raised" before. *Reuter v. XTO Energy, Inc.*, 2022 WL 2712860, at \*1 (S.D. Tex. July 13, 2022).

Plaintiffs nonetheless protest that, even if the non-Texas states did not demonstrate standing, because declaratory judgment is a "passive remedy" and a "much milder form of relief," it would "promote[] judicial efficiency" for this Court to issue broad declaratory judgment, rather than require the non-Texas states to file their own declaratory judgment suits. Pl. Br. at 13-14, 19 (cleaned up). But there is no "judicial efficiency" exception to Article III; to the contrary, it is Article III's standing requirements that "serve[] judicial efficiency by 'prevent[ing] the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001-02 (11th Cir. 2016) (quoting *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 687 (1973)). Plaintiffs' invocation of "efficiency" is, moreover, entirely misplaced. "Efficiency" called for the non-Texas Plaintiffs to introduce evidence to establish their standing when the parties were developing facts and briefing motions for summary judgment, consistent with universally applicable rules of procedure. It would frustrate, rather than encourage, efficiency for the Court to adopt a rule that allows parties to withhold evidence when it is required, and then later demand a remedy without making a timely showing of the Court's jurisdiction under Article III. The Court should reject Plaintiffs'

attempted end-run around *Texas III* and Article III and refuse their request for declaratory relief.

    **B.**    **The Court Should Not Universally Vacate DACA.**

    Although Plaintiffs contend in this Court that DACA "should be universally vacated," Pl. Br. at 36-50, *Texas III* squarely forecloses Plaintiffs' argument. And Plaintiffs' efforts to avoid *Texas III*'s unequivocal directive to limit vacatur to Texas fall flat.

    1.    <u>The Fifth Circuit Explicitly Limited Vacatur to Texas; Under the Law of the Case and the Mandate Rule, that Limitation Is Binding.</u>

    Plaintiffs reluctantly concede (at 36) that, in *Texas III*, the Fifth Circuit "limit[ed] injunctive relief, ***including the effectiveness of the vacatur of the Final Rule***, to Texas." 126 F.4th at 422 (emphasis added). That clear holding is now law of the case, and, under the mandate rule, this Court is bound to follow it on remand. *See, e.g.*, *U.S. v. Teel*, 691 F.3d 578, 582-83 (5th Cir. 2012); *D'Arbonne Bend LLC v. Pierce*, 2021 WL 3660764, at *3 (S.D. Tex. Jan. 6, 2021) (Hanen, J.) ("Under the law-of-the-case principle, this Court shall not reexamine such an argument"); *CEATS, Inc. v. TicketNetwork, Inc.*, 2025 WL 2945804, at *5 (5th Cir. Oct. 17, 2025) ("[T]he mandate rule, which is a corollary of the law-of-of-the-case doctrine, provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.") (cleaned up); *Franklin v. Regions Bank*, 125 F.4th 613, 630 (5th Cir. 2025) ("The mandate rule requires a district court on remand to effect our mandate and to do nothing else."). Because this Court "must implement both the letter and the spirit of the [Fifth Circuit's] mandate and may not disregard the explicit directives of that court," *Teel*, 691 F.3d at 583, DACA's vacatur must

therefore be limited to Texas—and only Texas.

Having extensively and enthusiastically invoked the doctrine of law-of-the-case and the mandate rule before (*see, e.g.* Dkts. 625-1 at 25-27; Dkt. 673 at 2-3, 36-40; Dkt. 690-1 at 8-9), Plaintiffs now seek to avoid them. *See* Pl. Br. at 36-37. Plaintiffs criticize the Fifth Circuit for purportedly "conflat[ing] vacatur with injunctive relief," and they deride the Fifth Circuit for its "passing reference" to vacatur in an "unconsidered aside." *Id.* at 36, 39. But if Plaintiffs disagreed with the Fifth Circuit's holding, Plaintiffs should have petitioned for rehearing, rehearing en banc, or certiorari. *IAS Services Grp., LLC v. Jim Buckley & Assocs.*, 2023 WL 4235553, at *5 (5th Cir. June 28, 2023) ("The waiver doctrine holds that an issue that could have been but was ***not*** raised on appeal is forfeited and may not be revisited by the district court on remand.'") (cleaned up); *see also* NJ Br. at 7 n.1. Plaintiffs made an affirmative litigation choice not to contest a ruling they disagreed with, and as with other litigation choices made by Plaintiffs, they must live with the consequences of those decisions; Plaintiffs cannot now ask this Court to undo a binding decision of the Fifth Circuit. *Texas III* governs—full stop—and Plaintiffs are barred from relitigating the Fifth Circuit's decision in this Court now. *See, e.g.*, *Fed. Ins. Co. v. Northfield Ins. Co.*, 2017 WL 11633133, at *13 (S.D. Tex. Nov. 15, 2017) (rejecting defendant's "attempt to relitigate" issue that "directly contravene[d] the spirit" of the Fifth Circuit's mandate and was therefore foreclosed by the mandate rule). Nor can Plaintiffs argue that there has been any change in controlling law that would cast the Fifth Circuit's decision into doubt. *Cf. U.S. v. Lee*, 358 F.3d 315, 320 n.3 (5th Cir. 2004). Plaintiffs

suggest that they "expect" the en banc Fifth Circuit to address the controversy over universal

vacatur "soon." Pl. Br. at 36-37. But a hypothetical future decision by the en banc court is not

a change in controlling law. *U.S. v. Alcantar*, 733 F.3d 143, 145-46 (5th Cir. 2013) ("Such an

intervening change in the law must be unequivocal, not a mere 'hint' of how the Court might

rule in the future."). And in *CASA*, the Supreme Court did not decide whether vacatur under

the APA can ever be geographically limited, which does not contradict or overcome the Fifth

Circuit's binding ruling on that issue in *Texas III*. *See* 606 U.S. at 847 n.10.

2.    <u>Plaintiffs Cannot Sidestep the Fifth Circuit's Explicit Holding By Attempting Now, for the First Time, to Challenge Forbearance.</u>

The Fifth Circuit's holding restricting to Texas the vacatur of DACA's "benefits"

provisions did ***not*** leave open the possibility of the nationwide vacatur of DACA's

"forbearance" provisions, despite Plaintiffs' claims. *See* Pl. Br. at 22-23, 37. To begin,

Plaintiffs have never challenged forbearance alone in this litigation, much less has any court

ruled forbearance alone to be unlawful. To the contrary, Plaintiffs argued that it was DACA's

conferral of ***benefits*** that distinguished it from prior presidential exercises of enforcement

discretion to forbear from deporting categories of immigrants. *See, e.g.*, Dkt. 486 at 43-44.

Nor have this Court or the Fifth Circuit ever suggested, let alone held, that forbearance

alone would be unlawful. *See*, *e.g.*, *Texas II*, 50 F.4th at 529-30 ("We . . . do not decide . . .

what the bounds of DHS's discretion with regard to 'forbearance without benefits might be.'");

*Texas v. United States*, 549 F. Supp. 3d 572, 622 (S.D. Tex. 2021) (highlighting "a policy of

forbearance without the award of benefits" as a consideration for DHS on remand). In fact, the

11

Fifth Circuit decided that a forbearance-only policy ***would be lawful*** when it held that DACA's forbearance provisions are severable.  In reaching that conclusion, the Fifth Circuit held that forbearance could "function sensibly" without benefits.  *Texas III*, 126 F.4th at 419 (cleaned up).  Implicit in that holding is the idea that, when severed from benefits, forbearance would be "fully operative."  *See Koog v. United States*, 79 F.3d 452, 462 (5th Cir. 1996) ("Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.") (cleaned up); *Texas v. United States*, 945 F.3d 355, 394 (5th Cir. 2019), *as revised* (Dec. 20, 2019), *as revised* (Jan. 9, 2020), *rev'd and remanded sub nom. California v. Texas*, 593 U.S. 659 (2021) ("This first step asks whether the constitutional provisions—standing on their own, without the unconstitutional provisions—are fully operative as a law[.]" ) (cleaned up).  If forbearance were unlawful after severance from DACA's benefits, it would not be "fully operative"—and so the Fifth Circuit would not have severed it.

But even if the Fifth Circuit had not already endorsed the lawfulness of a forbearance-only policy, invalidating the forbearance features of DACA would also be squarely foreclosed by the Supreme Court's decision in *Department of Homeland Security. v. Regents of the University of California*, 591 U.S. 1, 26-27 (2020).  The Supreme Court in *Regents* endorsed DACA's forbearance provisions as a lawful exercise of the Executive Branch's prosecutorial discretion "not to enforce the immigration laws as to a class of what [it] deemed to be low-

priority illegal aliens." *Regents*, 591 U.S. at 27-30 (finding that rescission of the DACA program was arbitrary and capricious because it did not consider the option of retaining forbearance without benefits). Indeed, when this Court previously examined the forbearance provisions of the Final Rule earlier in this very case, it expressly noted—consistent with *Regents*—that the Executive Branch "has always had the inherent power—on a case-by-case basis—to exercise prosecutorial discretion with or without a regulation." Dkt. 728 at 36 (noting that "neither this Court nor the Fifth Circuit has encroached on the Executive Branch's role" in the decision to exercise "prosecutorial discretion" and elect to "not prosecute someone"). And in its most recent ruling, the Fifth Circuit likewise—again consistent with *Regents*—went out of its way "not [to] disturb DACA's policy of forbearance." *Texas III*, at 419-20 (rejecting theory that "a policy of forbearance without the other aspects of DACA would be superfluous"). In short, this Court, the Fifth Circuit, and the Supreme Court have all already addressed—and implicitly *rejected*—Plaintiffs' current arguments that DACA's forbearance provisions standing alone violate the APA. Plaintiffs cannot interpose redundant claims and resurrect failed arguments to attempt to obtain a different scope of relief now.[4]

As a result, Plaintiffs pivot. *See* Pl. Br. at 29-34. They argue that a forbearance-only policy somehow violates the Take Care Clause. In *Texas v. United States*, 599 U.S. 670 (2023) ("*Immigration Priorities*"), however, the Supreme Court reiterated that, under both Article III

---

[4] As Defendant-Intervenors explained in the Fifth Circuit, *see* Reply Br., Case No. 23-40653, at 24-25, Plaintiffs' argument that the "work authorization provisions are arbitrary and capricious" fails on the merits because DHS adequately assessed costs and benefits.

and the APA, "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." *Id.* at 680. Like Plaintiffs here, the plaintiffs in *Immigration Priorities* had pleaded a claim under the Take Care Clause. *See id.* at 689 (Gorsuch, J., concurring). The Supreme Court nonetheless held the plaintiffs lacked Article III standing to challenge the Executive Branch's exercise of discretion. *Id.* at 681; *id.* at 689 (Gorsuch, J., concurring). Plaintiffs do not and cannot explain why *Immigration Priorities* does not similarly foreclose their standing to challenge a forbearance-only policy under the Take Care Clause. Nor does the Take Care Clause provide a private right of action that Plaintiffs could even invoke. *Arizona v. Garland*, 730 F. Supp. 3d 258, 283-284 (W.D. La. 2024) (collecting cases); *see also Robbins v. Reagan*, 616 F.Supp. 1259 1269 (D.D.C. 1985), *aff'd*, 780 F.2d 37 (D.C. Cir. 1985). Indeed, even after Judge Oldham's "thorough evaluat[ion] [of the] Take Care Clause's requirements" in *Texas v. Biden*, 20 F.4th 928, 980-82 (5th Cir. 2021) ("*MPP*"), *rev'd*, 597 U.S. 785 (2022)—which Plaintiffs say (at 33) newly provides a roadmap for this Court to address Plaintiffs' Take Care Clause claim—a Take Care Clause claim cannot revive a failed suit under the APA. *Arizona*, 730 F. Supp. 3d at 283-84.

Forbearance is also entirely consistent with the Take Care Clause. As the Supreme Court has repeatedly recognized, the Take Care Clause grants the Executive Branch—not the Judiciary—the "authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *Immigration Priorities*, 599 U.S. at 678 (cleaned up). That "principle of enforcement discretion . . . extends to the immigration context,"

14

giving the Executive Branch "discretion over whether to remove a noncitizen from the United States" and how to "balance [ ] factors when devising arrest and prosecution policies." *Id.* at 679-80. As this Court, the Fifth Circuit, and the Supreme Court have impliedly held, DACA's forbearance-only provisions are an appropriate exercise of that discretion.

### C.     This Court's Injunction Should Apply Only to Texas Residents.

Because this Court's injunction cannot be "more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Texas III*, 126 F.4th at 421 (cleaned up), Plaintiffs acknowledge that the Fifth Circuit's mandate contains geographic limitations. *See* Pl. Br. at 7. However, Plaintiffs' proposed implementation of the Fifth Circuit's mandate— which would apply not just to Texas residents, but also to anyone "employed for work that takes place in Texas" and who "possessed [DACA] during any period residing in Texas," *e.g.*, Dkt. 786-1 ¶¶ 4, 13—is inconsistent with Texas's theory of standing, does precisely what the Fifth Circuit prohibited, and would be unworkable to enforce. Additionally, although Plaintiffs suggest that DHS should be required "to apply the same criteria to [advance parole applicants that] it does to others without" DACA, Pl. Br. at 11, DACA recipients are ***already*** treated the same as everyone else who applies for advance parole. *See* 8 U.S.C. § 1182(d)(5)(A) (allowing DHS to "parole into the United States" "***any*** [individual] applying for admission") (emphasis added). Plaintiffs' proposal (not DACA itself) would result in differential treatment.

To start, reading the Fifth Circuit's mandate to apply to DACA recipients "employed for work that takes place in Texas" would be inconsistent with Plaintiffs' theory of standing.

The Fifth Circuit concluded that Texas had standing because it spent money providing social services to DACA recipients residing in Texas. *Texas II*, 50 F.4th at 517 ("DACA inflicts pocketbook injuries on the State in the form of healthcare, education, and social services costs."). State residency has long been a key prong for purposes of establishing this type of injury. *See, e.g., Washington v. Trump*, 764 F. Supp. 3d 1050, 1053 (W.D. Wash. 2025) (discussing impact of executive order on costs for "States' residents"); *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) ("Mississippi submitted no evidence that any DACA eligible immigrants ***resided in the state***.") (emphasis added). Indeed, Plaintiffs have proffered ***no*** evidence to suggest a link between costs and non-Texas residents. In fact, although Plaintiffs argue that "federal law requires [a state] to provide emergency Medicaid to noncitizens" to suggest that the "requirement to provide certain public benefits to DACA recipients who traverse the State's borders also imposes a pocketbook injury on Texas," Pl. Br. at 8 (cleaned up), regulations require states to pay only for their ***residents'*** emergency Medicaid—even if they receive treatment in another state. *See* 42 C.F.R. §§ 431.52(b), 435.403.

Plaintiffs' proposal would also be impossible to implement and enforce. It would require DHS to determine, for example, whether a business trip to Texas, or remote work performed by a DACA recipient living out-of-state for Texas customers, constitutes "work that takes place in Texas." Dkt. No. 786-1 ¶¶ 5, 7, 9. It would seemingly require DHS to track whether DACA recipients ever so much as "traverse the State's borders." Pl. Br. at 8. At the very least, it would require DHS to maintain records of whether DACA recipients ever resided

in Texas—and adjust their Social Security, Medicare, and lawful presence eligibility accordingly, even if they currently live outside of Texas. *See* Dkt. 786-1 ¶¶ 13-15. Plaintiffs do not (and cannot) establish any legal authority to suggest that line-drawing based on location of work or past residency is permissible. Plaintiffs' proposal also wholly ignores the Fifth Circuit's mandate for the injunction to be "geographically limited," not work- or travel-oriented. *Texas III*, 126 F.4th at 421; *see also* DOJ Br. at 5 (proposing "that the geographic limitation for initial DACA requestors be based on the individual's state of residence (not based on state of employment), as reflected by the most recent physical address on record with USCIS.").

Separately, Plaintiffs' insistence that advance parole is an "unlawful backdoor to lawful status" is wholly inaccurate. Pl. Br. at 10. DACA recipients are afforded no more protections or guarantees than other non-U.S. citizens; the advance parole provision is applied equally to all. See 8 U.S.C. § 1182(d)(5)(A) (authorizing DHS to grant "any" non-U.S. citizen advance parole). In fact, when considering requests to "ease or eliminate advance parole for DACA recipients," DHS remained firm in its equal application of "urgent humanitarian reasons or significant public benefits" to all non-U.S. citizens. See Dkt. No. 607-1 at 316. And DACA recipients' eligibility for advance parole is wholly divorced from their receipt of DACA, as Congress codified advance parole in the INA—separate from the DACA Rule. See 8 U.S.C. § 1255(i), (*l*), (m); 8 C.F.R. § 212.7(e). In contrast, Plaintiffs' proposal would provide a "back door" for states to supplant congressional authority and create a unique exception to the INA for DACA recipients (or, at least, for DACA recipients residing in Texas) without a clear

enforcement plan or mechanism.  The Court should reject Plaintiffs' invitation.[5]

## II.    THE STAY SHOULD REMAIN IN PLACE THROUGH A WIND-DOWN PERIOD OF AT LEAST TWO RENEWALS, AS PREVIOUSLY PROPOSED BY PLAINTIFFS.

As it limited this Court's "injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas," the Fifth Circuit also expressly recognized the continued "uncertainty of final disposition" in this case, even upon issuance of its opinion.  *Texas III*, 126 F.4th at 422.  Indeed, DACA recipients who received their initial DACA grants prior to July 16, 2021 ( "Current DACA Recipients") still do not know how this Court's vacatur in Texas will be implemented or whether or how that vacatur may impact their and their families' lives. As a result, the Fifth Circuit preserved its stay of the effective date of its vacatur order as to the Current DACA Recipients.  *Id.*[6]  This Court's own stay should also remain in place until (i) there is a final disposition confirming how the Court will vacate the Final Rule as to Texas, and (ii) all Current DACA Recipients who are affected by this final disposition have had a meaningful opportunity thereafter to rearrange their lives in response.

When it first stayed its vacatur of the Final Rule in 2023, this Court did so in recognition of the Current DACA Recipients' deep reliance interests.  The Court has always, to its great credit, understood the depth of "the reliance interests that DACA recipients have in the

---

[5] The Court should also reject the portion of Plaintiffs' proposed order that (1) improperly and retroactively invalidates credit for lawful work performed by DACA recipients in Texas before the Court modifies its injunction (Dkt. 786-1 at ¶ 14), and (2)  purports to bind non-parties.  *See* Dkt. 786-1 at ¶ 5 (purporting to restrain employers "from accepting the I-766 (c)(33) as valid proof of work authorization for any employee or candidate who is either a Texas resident or employed for work that occurs in Texas.").

[6] Plaintiffs agree that this Court's and the Fifth Circuit's stays are separate.  *See* Pl. Br. at 51 n.12.

continuation of this program," and has also "acknowledged the many benefits, both financial and otherwise, that DACA recipients bestow on their communities and this country," as supported by "vast portions of the record." Dkt. 728 at 36. And these reliance interests have not diminished—if anything, they have strengthened. In preserving its own stay, the Fifth Circuit also explicitly highlighted the "immense reliance interests that DACA has created," and emphasized that "DACA has had profound significance to recipients and many others in the now-[*thirteen*] years since its adoption." *Texas III*, 126 F.4th at 422.[7]

Under the existing stay, this Court confirmed that "Defendants may continue to administer the program as to [the Current DACA Recipients], and that administration may include processing and granting DACA renewal applications for those individuals." Dkt. 729 at 1-2. In its most recent filing, Defendants have already confirmed they are prepared to continue administering the program in this manner. DOJ Br. at 6-7. A continuation of this Court's stay would allow the Defendants to do so in line with the "continuity and stability" that the Fifth Circuit sought with its preservation of the stay. *Texas III*, 126 F.4th at 422.

In recognition of the strong reliance interests of DACA recipients, even Plaintiffs previously proposed that DACA's termination for Current DACA Recipients be stayed one full renewal period after this litigation was ultimately resolved, allowing DACA recipients a wind-down period of up to four years, depending on the date of their most recent renewal. *See, e.g.*, Dkt. 625-1 at 5 ("Defendants should be prevented from approving[, . . . ] after two years from

---

[7] This Court has noted that the first six of these years were due to Plaintiffs' ***own delay***. Dkt. 318 at 108.

the date of judgment, any DACA renewal applications."); Dkt. 673 at 9 ("Plaintiffs tailored their requested relief so that current DACA recipients have *at least* two years (and potentially up to four years) to find alternative means and file renewals within this two-year period.") (emphasis in original).  Despite Plaintiffs' new claims to the contrary, the Current DACA Recipients who may be affected by the Texas-only vacatur of the Final Rule have not had the up to the four years even Plaintiffs previously recognized were necessary—let alone "ample time to adjust their affairs" or "seek alternative paths."  Pl. Br. at 51.  Until this Court implements the Fifth Circuit's mandate, Current DACA Recipients do not know whether their particular affairs will require adjusting, or what alternative paths might be available.  This Court's stay should thus remain in place pending a final disposition to avoid "the inevitable disruption that would arise from a lack of continuity and stability" in the meantime.  *Texas III*, 126 F.4th at 422.  And even once final disposition has been entered, the Current DACA Recipients who are affected should be afforded a meaningful opportunity to rearrange their lives accordingly before this Court lifts its stay and the vacatur takes effect in Texas.

## CONCLUSION

Defendant-Intervenors respectfully request that the Court reject Plaintiffs' attempts to disregard the Fifth Circuit's legally binding ruling and mandate.  Rather than issue broad declaratory judgment or vacate DACA nationwide, this Court should modify its existing injunction so that it applies only to Texas residents, as directed.  This Court should also keep its stay in place to allow for the orderly winddown of DACA in Texas.

Dated:  November 10, 2025

Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By:  /s/ Nina Perales
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
110 Broadway, Suite 300
San Antonio, TX 78205
Phone:  (210) 224-5476
Email: NPerales@maldef.org
*Attorney-in-Charge*

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC  20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
*(Admitted pro hac vice)*

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX  78502
Phone:  (956) 630-3889
Facsimile:  (956) 630-3899
Email:  cgarcia@garciagarcialaw.com

*Attorneys for Defendant-Intervenors*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that, on the 10th day of November, 2025, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/* Nina Perales

Nina Perales
