**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

STATE OF TEXAS, *et al.*,    )
                            )
        Plaintiffs,         )
                            )
    v.                      )    Case No. 1:18-CV-68
                            )
UNITED STATES OF AMERICA, *et al.*,    )
                            )    Hon. Andrew S. Hanen
        Defendants,         )
                            )
KARLA PEREZ, *et al.*,      )
                            )
        Defendant-Intervenors,    )
    and                     )
                            )
STATE OF NEW JERSEY,        )
                            )
        Defendant-Intervenor.    )

**DEFENDANT-INTERVENOR STATE OF NEW JERSEY'S RESPONSE**
**BRIEF TO PLAINTIFF STATES' SUPPLEMENTAL BRIEF**
**RESPONDING TO THE COURT'S JULY 22, 2025 ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

COUNTER-STATEMENT OF ISSUES TO BE RULED UPON ................................................. 2

SUMMARY OF THE ARGUMENT ........................................................................................... 2

ARGUMENT ........................................................................................................................... 4

   I.   PLAINTIFFS' CHALLENGES TO DACA'S FORBEARANCE PROVISIONS
      ARE PROCEDURALLY AND SUBSTANTIVELY BARRED. ...................................... 4

      A.   Plaintiffs Forfeited Any New Challenges To The Forbearance Provisions,
          And The Mandate Rule Forecloses Relitigation Of Such Forfeited Claims. ................ 5

      B.   The Fifth Circuit Necessarily Determined That Forbearance Is Lawful. ...................... 8

      C.   The Fifth Circuit Correctly Determined That Forbearance Is Lawful. ......................... 10

  II.   EVEN ASSUMING PLAINTIFFS CAN ATTACK FORBEARANCE ON
      REMAND, PLAINTIFFS CANNOT OBTAIN NATIONWIDE RELIEF. ..................... 12

  III.   PLAINTIFFS BEYOND TEXAS MAY NOT OBTAIN A DECLARATORY
      ORDER IMPACTING IMPLEMENTATION OF THE BENEFITS PROVISIONS. ...... 16

CONCLUSION ...................................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**

*Arizona v. United States*, 567 U.S. 387 (2012)............................................................ 11

*Collins v. Dep't of the Treasury*, 83 F.4th 970 (5th Cir. 2023) .............................. 17, 18

*Crowe v. Smith*, 261 F.3d 558 (5th Cir. 2001)................................................... 8, 13, 16

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020) ............................ 3, 7, 11

*Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633 (5th Cir. 2014) ...................................... 8

*Franklin v. Regions Bank*, 125 F.4th 613 (5th Cir. 2025) ....................................... 3, 8, 13, 16, 19

*Gene & Gene, LLC v. BioPay, LLC*, 624 F.3d 698 (5th Cir. 2010)....................................... 10, 20

*Gill v. Whitford*, 585 U.S. 48 (2018)........................................................................ 19

*Hernandez v. Garcia Pena*, 820 F.3d 782 (5th Cir. 2016)............................................. 5, 6

*Lyons v. Fisher*, 888 F.2d 1071 (5th Cir. 1989)......................................................... 19

*Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830 (5th Cir. 2011) ........................................... 3, 5, 7, 8

*Michigan v. EPA*, 576 U.S. 743 (2015) .................................................................. 16

*Nkihtaqmikon v. Impson*, 585 F.3d 495 (1st Cir. 2009)................................................. 15

*ODonnell v. Goodhart* (*ODonnell II*), 900 F.3d 220 (5th Cir. 2018) ....................................... 6, 8

*ODonnell v. Harris County* (*ODonnell I*), 892 F.3d 147 (5th Cir. 2018)...................................... 6

*ODonnell v. Harris County*, 321 F. Supp. 3d 763 (S.D. Tex. 2018) ........................................... 6

*Ruele v. Jackson*, 114 F.4th 360 (5th Cir. 2024)........................................................ 18

*Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) ................................................ 18, 19

*Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ........................................... 5

*Texas v. Biden* (*MPP*), 20 F. 4th 928 (5th Cir. 2021), *rev'd*, 597 U.S. 785 (2022)...................... 12

*Texas v. United States (DACA CA5 2022)*, 50 F.4th 498 (5th Cir. 2022)................................. 8, 10

*Texas v. United States (DACA CA5 2025)*, 126 F.4th 392 (5th Cir. 2025)........................... *passim*

*Texas v. United States* (DACA D.Ct. 2021), 549 F. Supp. 3d 572 (S.D. Tex. 2021) .............. 8, 10

*Texas v. United States* (DACA D.Ct. 2023), 691 F. Supp. 3d 763 (S.D. Tex. 2023) ......... 8, 13, 17

*Texas v. United States* (DAPA), 809 F.3d 134 (5th Cir. 2015); .............................................. 8, 11

*Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017) .................................................... 18

*United States v. Arellano-Banuelos*, 912 F.3d 862 (5th Cir. 2019) ......................................... 6

*United States v. Armstrong*, 517 U.S. 456 (1996) .................................................................. 12

*United States v. Becerra*, 155 F.3d 740 (5th Cir. 1998) ................................................... 14, 15

*United States v. Bell*, 988 F.2d 247 (1st Cir.1993) .................................................................. 5

*United States v. Griffith*, 522 F.3d 607 (5th Cir. 2008) ........................................................ 5, 7

*United States v. Guillen-Cruz*, 853 F.3d 768 (5th Cir. 2017) .................................................. 6

*United States v. Lavergne*, 785 F. App'x 213 (5th Cir. 2019) ............................................... 14

*United States v. Lee*, 358 F.3d 315 (5th Cir. 2004) ................................................................. 5

*United States v. Texas* (*Immigration Priorities*), 599 U.S. 670 (2023) ................................ 12

*Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019) .................................................................... 18

*Wells v. Johnson*, 150 F.4th 289 (4th Cir. 2025) .................................................................... 18

*Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861 (11th Cir. 2023) ...................................... 15

## STATUTES

6 U.S.C. § 202(5) ............................................................................................................... 11, 12

8 U.S.C. § 1103(a) ............................................................................................................. 11, 12

## OTHER AUTHORITIES

Jon O. Newman, *Decretal Language: Last Words of an Appellate Opinion*,
    70 Brook. L. Rev. 727 (2005) ......................................................................................... 14

U.S. Const., Art. II, § 1, cl. 1 ................................................................................................ 12

U.S. Const., Art. II, § 3 ......................................................................................................... 12

**REGULATIONS**

*Deferred Action for Childhood Arrivals*, 87 Fed. Reg. 53,152 (Aug. 30, 2022) .................... 11, 16

## INTRODUCTION

Plaintiffs return to this Court with an extraordinary demand: to issue a *second* order that eliminates DACA on a nationwide basis, in the wake of the Fifth Circuit's 2025 decision reversing the prior nationwide remedies. Plaintiffs' barely-disguised attempt to relitigate the correctness of the Fifth Circuit's holding and mandate violates bedrock rules that govern this Court's authority on remand. Plaintiffs could have sought rehearing en banc of the Fifth Circuit's remedial ruling or petitioned the U.S. Supreme Court for certiorari. But they did not. As every other party to this suit—including the Federal Government—recognizes, that has consequences: Plaintiffs may not relitigate in the district court the relief that the Fifth Circuit already denied them.

Plaintiffs seek to get around the obvious import of the Fifth Circuit's decision with a two-step maneuver, but both steps fail, and for multiple independently-sufficient reasons at that. First, Plaintiffs argue that the district court can consider the validity of DACA's forbearance provisions as distinct from the validity of its benefits provisions, and then issue additional judicial relief based on the illegality of forbearance. Second, Plaintiffs argue that this additional relief should come in the form of a nationwide order invalidating DACA in toto. But neither argument holds. The former fails for three reasons: Plaintiffs forfeited any challenge to the DACA Final Rule's forbearance provisions by failing to raise it to the Fifth Circuit; the Fifth Circuit necessarily held that forbearance alone is lawful by agreeing to sever those provisions from the unlawful portions of the DACA Final Rule; and the Fifth Circuit was correct to do so, because (as the U.S. Supreme Court has recognized in a binding majority opinion) forbearance alone is plainly lawful. But even if Plaintiffs could somehow attack forbearance in these remand proceedings, Plaintiffs still could not justify any relief beyond Texas, as the Fifth Circuit already reasoned in its opinion and instructed in its mandate. Instead, the Fifth Circuit's decision is clear and this Court is bound to

follow it: DACA's forbearance provisions are to be preserved nationwide, and its benefits provisions are to be effective outside Texas. This Court should reject Plaintiffs' invitation to reach a contrary result from the Fifth Circuit.

## COUNTER-STATEMENT OF ISSUES TO BE RULED UPON

Plaintiffs' remand brief implicates the following issues: (1) whether Plaintiffs' challenge to the DACA Final Rule's forbearance provisions fails because the challenge was forfeited, and/or because the challenge is barred by the mandate rule, and/or because the forbearance provisions are lawful; (2) whether, even if Plaintiffs can challenge the forbearance provisions on remand, the demand for nationwide relief fails in light of the Fifth Circuit's decision and mandate; and (3) whether Plaintiffs' demand for declaratory relief contravenes the Fifth Circuit's standing and remedial holdings.

## SUMMARY OF THE ARGUMENT

This Court is bound to effectuate the Fifth Circuit's mandate. The Fifth Circuit reversed a nationwide order bringing the DACA Final Rule to an end, and instead mandated two central changes at the remedial stage: (1) that vacatur and injunction of the DACA Final Rule extend only to its benefits provisions, leaving DACA's forbearance provisions intact; and (2) that even the injunction of DACA's benefits provisions, including the effectiveness of vacatur, extend only to Texas. On remand from that decision, Plaintiffs ask this Court to reissue the very remedial order that the Fifth Circuit held was overbroad: relief barring implementation of the entire DACA Final Rule, all across the Nation. For multiple independent reasons, this Court must reject that request.

I.     Plaintiffs' entire theory for additional judicial relief on remand rests on a threshold error: that they can successfully challenge the DACA Final Rule's forbearance provisions on remand. But Plaintiffs' challenge to the forbearance provisions fails on three independent bases— two procedural and one substantive: (1) Plaintiffs forfeited this very challenge on appeal; (2) their

2

remand theory is inconsistent with the Fifth Circuit's holdings in this lawsuit; and (3) forbearance alone is actually lawful. First, Plaintiffs' decision on remand to challenge anew the lawfulness of forbearance comes much too late in this litigation, and Plaintiffs forfeited the argument by failing to raise it to the Fifth Circuit. *See Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011). After all, before the Fifth Circuit, the Federal Government specifically sought to sever the forbearance provisions on the basis that forbearance was lawful, and Plaintiffs chose not to dispute that argument. Second, by holding that the DACA Final Rule's forbearance provisions could be severed from those provisions that the Fifth Circuit determined were unlawful, the Fifth Circuit necessarily found that the DACA Final Rule's forbearance provisions *are* lawful. Third, the Fifth Circuit's determination was correct: "forbearance remain[s] squarely within the discretion of" the Department of Homeland Security (DHS), separate and apart from the legality of DACA's benefits provisions. *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 28 (2020).

II.    Even if Plaintiffs have *some* ability to challenge forbearance on remand (and they do not, for the three independent reasons given above), they have no right to a *nationwide* remedy for a fourth reason: the Fifth Circuit's decision and mandate. The Fifth Circuit held definitively that Plaintiffs could justify relief within Texas alone; pursuant to its instructions, the entire DACA Final Rule is effective outside of Texas. This Court may not issue any orders to the contrary without violating the mandate rule. *Franklin v. Regions Bank*, 125 F.4th 613, 629-30 (5th Cir. 2025). While Plaintiffs disagree with the Fifth Circuit's remedial decisions, they could have sought panel rehearing, en banc review, or certiorari to air these disagreements. They did not, leaving the Fifth Circuit's 2025 ruling as the final, authoritative word on the remedies in this litigation. While questions remain before this Court concerning how to effectuate the Fifth Circuit's mandate *within Texas*, there is no legal basis for this Court to reconsider the propriety of that geographic mandate.

III.    Finally, this Court must reject Plaintiffs' demand for a declaratory order restricting implementation of the DACA Final Rule's benefits provisions in the eight remaining Plaintiff States. This request contravenes the Fifth Circuit's holding that Plaintiff States other than Texas failed to establish any independent Article III injury, which necessarily means that they failed to establish any harm sufficient to warrant any equitable relief. And it further contravenes the reasoning underlying the Fifth Circuit's mandate limiting relief to Texas.

## ARGUMENT

Plaintiffs' challenge to the forbearance provisions on remand fails. Even if Plaintiffs could challenge forbearance, they could not obtain nationwide relief. And Plaintiffs' separate request for declaratory relief in the eight non-Texas States is likewise barred by the Fifth Circuit's decision.

## I.    PLAINTIFFS' CHALLENGES TO DACA'S FORBEARANCE PROVISIONS ARE PROCEDURALLY AND SUBSTANTIVELY BARRED.

In the wake of a Fifth Circuit opinion and mandate holding that Texas alone is entitled to relief from the DACA Final Rule, Plaintiffs swing for the fences: they argue that the Fifth Circuit actually missed an entire separate challenge to the DACA Final Rule's forbearance provisions; that this is a winning legal challenge; and that this challenge merits the *very same* nationwide scope of relief that the Fifth Circuit reversed earlier this year. But Plaintiffs are entitled to *no* relief on remand as to the belated forbearance arguments for three reasons. First, Plaintiffs' arguments fail out of the gate: they have no right to challenge forbearance on remand at all, because they forfeited this challenge by failing to raise it to the Fifth Circuit. Second, the Fifth Circuit necessarily determined that the DACA Final Rule's forbearance provisions are lawful when the Fifth Circuit agreed these provisions could be severed from the benefits provisions. And third, the Fifth Circuit's necessary holding was right: the forbearance provisions are indeed lawful and supply no basis for further judicial relief.

4

## A.    Plaintiffs Forfeited Any New Challenges To The Forbearance Provisions, And The Mandate Rule Forecloses Relitigation Of Such Forfeited Claims.

Forfeiture doctrine bars Plaintiffs' efforts, Dkt. 786 at 22, to have this Court vacate the DACA Final Rule's forbearance provisions for reasons they did not present to the Fifth Circuit.

"[A]n issue that could have been but was *not* raised on appeal is forfeited and may not be revisited by the district court on remand." *Holder*, 634 F.3d at 834. In this way, forfeiture doctrine interacts with the mandate rule, such that the latter not only "forecloses relitigation of issues expressly or impliedly decided by the appellate court," but also "bars litigation of issues … foregone on appeal." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (citing *United States v. Bell*, 988 F.2d 247, 251 (1st Cir.1993)). That makes sense: "On remand, the only issues properly before the district court [a]re those that ar[i]se from the remand." *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008). All other issues—including those that "could have been brought in the original appeal" but were not actually raised—"are not proper for reconsideration by the district court." *Id.* (quoting *Lee*, 358 F.3d at 323). This rule "serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals." *Holder*, 634 F.3d at 834 (citation omitted).[1] After all, "all litigation must sometime come to an end." *Bell*, 988 F.2d at 252.

---

[1] Although the Fifth Circuit construes forfeiture doctrine "more leniently when the party who fails to brief an issue is the appellee," *Hernandez v. Garcia Pena*, 820 F.3d 782, 786 n.3 (5th Cir. 2016), this is because "[a]ppellees neither select the issues for the appeal nor file reply briefs," *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020). But because this rationale does not excuse an appellee's failure to respond to arguments in an appellant's opening brief, the Fifth Circuit does not hesitate to decline consideration of arguments not briefed (or inadequately briefed) by appellees who had every reason and opportunity to do so. *See, e.g.*, *United States v. Arellano-Banuelos*, 912 F.3d 862, 866 n.2 (5th Cir. 2019); *United States v. Guillen-Cruz*, 853 F.3d 768, 777 (5th Cir. 2017); *Hernandez*, 820 F.3d at 786 n.3.

The Fifth Circuit's opinion in *ODonnell v. Goodhart* (*ODonnell II*), 900 F.3d 220 (5th Cir. 2018), illustrates these principles. There, arrestees challenged a county's system for setting bail as unconstitutional, and the district court granted their motion for a preliminary injunction. *Id.* at 221-22. On an initial appeal, the Fifth Circuit "largely affirmed the district court's determinations that constitutional violations occurred," but held that "the injunction it ultimately crafted [wa]s … overbroad." *ODonnell v. Harris County* (*ODonnell I*), 892 F.3d 147, 163 (5th Cir. 2018). The Fifth Circuit panel found that the injunction went beyond securing "a case-by-case evaluation of a given arrestee's circumstances," and "amount[ed] to the outright elimination of secured bail for indigent misdemeanor arrestees," therefore "vacat[ing] the injunction and remand[ing] to allow the court to craft a remedy more finely tuned to address the harm." *Id.* at 163-64. On remand, the district court again entered an injunction that effectively eliminated secured bail for the plaintiff class, accepting plaintiffs' argument that doing so was needed to "address[] a problem that arose after the Fifth Circuit proceedings." *ODonnell v. Harris County*, 321 F. Supp. 3d 763, 769 (S.D. Tex. 2018). On the subsequent appeal, the Fifth Circuit held that the district court "plainly violate[d] the mandate rule" because the injunction was effectively the same as the one the appellate court had previously vacated, and the problem that plaintiffs identified to justify this result on remand could have been addressed earlier. *ODonnell II*, 900 F.3d at 225. After all, as the Fifth Circuit chastened, "[r]emand is not the time to bring new issues that could have been raised initially." *Id.*

Plaintiffs invite this Court to commit the same error: to re-issue the very injunction that the Fifth Circuit just held to be overbroad, based on a rationale that Plaintiffs could have offered, but failed to offer, the Fifth Circuit. Plaintiffs ask this Court to once more vacate the entire DACA Final Rule, including its forbearance provisions, Dkt. 786 at 36-37, reasoning that forbearance is independently unlawful, Dkt. 786 at 22-34. But Plaintiffs have forfeited this argument by failing

to raise it to the Fifth Circuit. *See Holder*, 634 F.3d at 834. Initially, there is no serious question that Plaintiffs "could have" challenged these forbearance provisions "in the original appeal." *Griffith*, 522 F.3d at 610 (citation omitted). Indeed, they bore directly on a central question before the Fifth Circuit: the Federal Government's request that the appellate court sever the forbearance provisions from the benefits provisions and preserve them. The Federal Government explicitly argued that preserving the forbearance provisions was appropriate because a forbearance-only "policy … would have 'remained squarely within the discretion of' the [DHS] Secretary." *Texas v. United States*, No. 23-40653, Dkt. 66 (U.S. Opening Br.) at 45 (quoting *Regents*, 591 U.S. at 28). In other words, the Federal Government argued both that forbearance alone was lawful, and that forbearance was sufficiently distinct from the benefits provisions that it could be severed. Plaintiffs' response to the Federal Government addressed only the latter argument, contending that "given how each part of DACA hangs together," DACA could not "be more narrowly tailored by severing any part of DACA from the rest." *Texas v. United States*, No. 23-40653, Dkt. 127 (Pls. Response Br.) at 46; *see Texas v. United States*, No. 23-40653, Dkt. 147 (U.S. Reply Br.) at 22 (noting Plaintiffs' "half-sentence" response to the Federal Government's request to sever the forbearance provisions). Plaintiffs did not argue that the forbearance provisions were unlawful.

That mattered to the ultimate decision. The Fifth Circuit unequivocally held that this Court "erred when it vacated the entire Rule instead of severing the Rule's forbearance provisions from the work authorization provisions and vacating only the latter." *Texas v. United States (DACA CA5 2025)*, 126 F.4th 392, 419 (5th Cir. 2025).[2] In other words, the Fifth Circuit declined to "disturb

---

[2] This brief uses the below short form naming conventions in citations:
*DAPA - Texas v. United States*, 809 F.3d 134 (5th Cir. 2015);
*DACA D.Ct. 2021 - Texas v. United States*, 549 F. Supp. 3d 572 (S.D. Tex. 2021);

DACA's policy of forbearance." *Id.* at 402. The Fifth Circuit underscored this holding in its decretal language, emphasizing the need for the remedy "to heed DACA's severability provision." *Id.* at 422. So any belated effort to now contravene those "explicit directives" based upon arguments that could have been raised but were forfeited before the Fifth Circuit contravenes the mandate rule and forfeiture principles alike. *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001). Said another way, because the Fifth Circuit accepted the Federal Government's argument and ordered the forbearance provisions preserved, Plaintiffs cannot argue on remand that this decision was error for reasons that they never provided on appeal. *See Holder*, 634 F.3d at 834; *ODonnell II*, 900 F.3d at 225.

### B.      The Fifth Circuit Necessarily Determined That Forbearance Is Lawful.

Even if Plaintiffs had not forfeited the challenge to the DACA Final Rule's forbearance provisions, the Fifth Circuit's decision and mandate independently foreclose this attack on remand. The Fifth Circuit's mandate rule requires district courts "to abstain from reexamining an issue of fact or law that has already been decided on appeal." *Franklin*, 125 F.4th at 629; *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 639-40 (5th Cir. 2014) (explaining that "the mandate rule … forecloses relitigation of issues expressly or impliedly decided by the appellate court"), *aff'd*, 579 U.S. 365 (2016). Here, that includes the lawfulness of DACA's forbearance provisions. *See DACA CA5 2025*, 126 F.4th at 419-20, 422.

The history of this case makes clear that this issue has already been resolved. As noted above, the Federal Government squarely presented the issue of forbearance to the Fifth Circuit: it urged the appellate panel in its briefing to sever DACA's forbearance provisions on the basis that

---

*DACA CA5 2022 - Texas v. United States*, 50 F.4th 498 (5th Cir. 2022);
*DACA D.Ct. 2023 - Texas v. United States*, 691 F. Supp. 3d 763 (S.D. Tex. 2023);
*DACA CA5 2025 - Texas v. United States*, 126 F.4th 392 (5th Cir. 2025).

such provisions are lawful regardless of the lawfulness of the benefits provisions. *Texas v. United States*, No. 23-40653, Dkt. 66 at 45. In electing to sever forbearance from benefits, the Fifth Circuit necessarily agreed: the Fifth Circuit itself explained that severance requires separating out "the offending portions of a regulation" from the lawful portions, and ensuring only the former are "stricken." *DACA CA5 2025*, 126 F.4th at 419. The Fifth Circuit could scarcely have been clearer on this, as it specifically and unanimously declined to "disturb DACA's policy of forbearance." *Id.* at 402. So by separating forbearance from the benefits provisions and expressly ordering that forbearance be preserved everywhere, the Fifth Circuit was necessarily acknowledging that forbearance was not "offending" the law as Plaintiffs had presented it. *Id.* at 419 (holding "that the district court erred when it vacated the entire Rule instead of severing the Rule's forbearance provisions"); *id.* at 422 ("requir[ing] [any] relief to heed DACA's severability provision").

The Fifth Circuit's holding, which rests upon its acceptance of the Federal Government's argument that forbearance alone is itself lawful, binds this Court on remand. Plaintiffs obviously disagree with the Fifth Circuit's decision to preserve forbearance because they think forbearance is also unlawful. But it is not for this Court to scrutinize whether the Fifth Circuit was *correct* to consider the forbearance provisions to be lawful and order them preserved. Had Plaintiffs wanted to contest this aspect of the Fifth Circuit's decision, they should have sought rehearing en banc or certiorari. And while the Fifth Circuit "impose[d] no restriction on the matters that [this Court] … may address on remand," *id.* at 422, that does not permit "a renewed foray into the same issue[s]" that were decided on appeal, *Gene & Gene, LLC v. BioPay, LLC*, 624 F.3d 698, 704 (5th Cir. 2010). The Fifth Circuit ordered that the forbearance provisions be severed, necessarily rejecting a challenge to those provisions in this case. And so the mandate rule precludes reconsideration of that command in this same case. *See Gene & Gene*, 624 F.3d at 704.

### C.     The Fifth Circuit Correctly Determined That Forbearance Is Lawful.

Not only did Plaintiffs forfeit this theory, and not only did the Fifth Circuit's decision and mandate necessarily confirm the validity of forbearance in this case, but the Fifth Circuit's order is also correct: forbearance from removal falls within DHS's prosecutorial discretion and violates neither the Immigration and Nationality Act (INA) nor the Constitution. In other words, although it is beyond this Court's power to reconsider the correctness of the Fifth Circuit's forbearance holding on remand given dispositive procedural flaws, the panel's holding is also right on the substance.

Initially, Plaintiffs are incorrect to contend that both this Court and the Fifth Circuit panel that decided the 2022 DACA appeal have held DACA's forbearance provisions unlawful. Dkt. 786 at 23-24. To the contrary, the 2022 panel expressly *declined* to "decide … what the bounds of DHS's discretion with regard to 'forbearance without benefits' might be." *DACA CA5 2022*, 50 F.4th at 530. And this Court acknowledged in its summary judgment decision that "forbearance without benefits" was a viable option for DHS to consider on remand to the agency—a conclusion it could hardly have reached if it was holding forbearance alone to be unlawful. *Texas v. United States (DACA D.Ct. 2021)*, 549 F. Supp. 3d 572, 622-24 (S.D. Tex. 2021); *see also id.* at 622 (recognizing that forbearance "f[alls] within the realm of [DHS's] prosecutorial discretion"). Even the Supreme Court, reviewing the Fifth Circuit's precedent in this area, specifically concluded that any legal shortcomings the Fifth Circuit identified as flowing from deferred action policies come from the attendant "eligibility for benefits"—not from forbearance itself. *Regents*, 591 U.S. at 30 (citing *Texas v. United States (DAPA)*, 809 F.3d 134, 168 & n.108 (5th Cir. 2015)). In short, every relevant Fifth Circuit opinion has left DHS's "forbearance authority … unimpaired." *Id.* at 27.

Instead, forbearance alone (specifically when distinguished from forbearance-plus-benefits, as Texas must accept for this remand) is clearly lawful. As a majority of the Supreme

10

Court found explicitly: "forbearance remain[s] squarely within the discretion of" DHS. *Regents*, 591 U.S. at 28. After all, the Secretary's exercise of this statutorily conferred discretion, *see* 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(1), is unavoidable. Although over 11 million undocumented immigrants are present in the United States, DHS historically has had the resources to remove only several hundred thousand a year—a small fraction of the undocumented population. *See Deferred Action for Childhood Arrivals*, 87 Fed. Reg. 53,152, 53,185 (Aug. 30, 2022). That means a "principal feature of the removal system" is DHS's "broad discretion" to determine whose removal to seek. *Arizona v. United States*, 567 U.S. 387, 296 (2012). Plaintiffs concede that the Executive may exercise discretion in choosing whom to remove, and yet argue DHS may not use generalized criteria to do so. Dkt. 786 at 25-26, 33. But this would leave the DHS Secretary herself unable to make policy decisions about which *types* of immigrants the agency will use its limited resources to remove, leaving discretionary calls to be made only on *ad hoc* bases by individual immigration officers. Congress did not hamstring the Secretary in this way; to the contrary, Congress expressly conferred upon the DHS Secretary the authority to "[e]stablish national immigration enforcement policies and priorities." 6 U.S.C. § 202(5). These include the Secretary's determination of which types of immigrants DHS will use its limited resources to remove, and concomitantly, those for which it will forbear removal. With the legal dispute over benefits out of the picture, there is zero basis—especially in light of *Regents*—to claim that forbearance alone violates the INA.

Nor does forbearance violate the Take Care Clause of Article II. *See* U.S. Const., Art. II, § 1, cl. 1; § 3. To the contrary, the Take Care Clause is the very source of "the Executive Branch['s] … authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law," including in "the immigration context." *United States v. Texas* (*Immigration Priorities*), 599 U.S. 670, 678-79 (2023); *see United States v. Armstrong*, 517 U.S.

456, 464 (1996) (under Article II, "the decision whether or not to prosecute … generally rests entirely in [the Executive's] discretion"). Far from offending the Take Care Clause, the decision to forbear removal falls within—and indeed is a quintessential feature of—the authority the Clause grants the Executive. *Immigration Priorities*, 599 U.S. at 678-79. And while the Executive may not declare a wholesale suspension of the laws, *Texas v. Biden* (*MPP*), 20 F.4th 928, 981 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022), where resource constraints necessitate that only a small subset of all offenders be prosecuted, the Executive does not act unconstitutionally by making general policy decisions about whom to prosecute—consistent with his congressionally delegated authority to do so, *see* 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a). Forbearance reflects that legal authority and tradition. So for three independent reasons—forfeiture; the Fifth Circuit opinion; and the lawfulness of forbearance itself—Plaintiffs are entitled to *no* relief on remand based on a challenge to forbearance.

## II.   EVEN ASSUMING PLAINTIFFS CAN ATTACK FORBEARANCE ON REMAND, PLAINTIFFS CANNOT OBTAIN NATIONWIDE RELIEF.

But even assuming Plaintiffs could continue challenging forbearance on remand—and for the three reasons given above, they cannot—Plaintiffs still cannot justify obtaining any nationwide remedy for a fourth reason: the mandate rule. As explained above, and as this Court has recognized, the strict mandate rule within the Fifth Circuit requires district courts to "abstain from reexamining an issue of fact or law that has already been decided on appeal," *Franklin*, 125 F.4th at 629; *i.e.*, parties may not "relitigate previously established issues," *Texas v. United States (DACA D.Ct. 2023)*, 691 F. Supp. 3d 763, 778 (S.D. Tex. 2023). So this Court cannot contravene the Fifth Circuit's "explicit directives." *Crowe*, 261 F.3d at 562. And those directives are clear with respect to the scope of remedies: the Fifth Circuit unequivocally held that this Court erred in issuing nationwide relief and mandated that such relief, including vacatur, must be limited to Texas. The

Fifth Circuit could hardly have been clearer on this holding that *all* relief is to be limited "to Texas, the only state that has demonstrated injury." *DACA CA5 2025*, 126 F.4th at 420. And its decretal language makes the extent of this holding even more obvious, unmistakably providing that the Fifth Circuit was "limit[ing] injunctive relief, *including the effectiveness of the vacatur of the Final Rule*, to Texas." *Id.* at 422 (emphasis added). By urging this Court to grant any nationwide relief, Dkt. 786 at 42-50, Plaintiffs run headlong into the mandate. Plaintiffs' justifications for inviting this Court to re-issue the nationwide scope of remedies that the Fifth Circuit held unlawful and reversed in its mandate are unpersuasive.

*First*, Plaintiffs' argument that this Court should ignore the Fifth Circuit's limitation of *all* relief to Texas as a mere "unconsidered aside" or "passing reference," Dkt. 786 at 36-37, 39, is untenable. The Fifth Circuit dedicated an entire section of its opinion to the propriety of the nationwide remedy, concluding that nationwide relief was unnecessary to remedy Texas's harms and was far outweighed by the balance of equities and harms to the other States, *DACA CA5 2025*, 126 F.4th at 420-21, so it is obvious that the Fifth Circuit gave direct and serious attention to this issue. And the Fifth Circuit's decision that vacatur would be limited geographically alongside the other forms of relief was no aside either: that language appears in the *decretal language* of the opinion, where the panel ended by instructing that "[t]he injunction is AFFIRMED in part and MODIFIED in part. We limit injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas, and require such relief to heed DACA's severability provision." *Id.* at 422. Far from being a place for an "unconsidered aside," the decretal language is the "portion of a court's judgment or order that officially states ('decrees') what the court is ordering." Jon O. Newman, *Decretal Language: Last Words of an Appellate Opinion*, 70 Brook. L. Rev. 727, 727 (2005). This "language … tell[s] the district judge what the appellate court wants done." *Id.*; *United*

13

*States v. Lavergne*, 785 F. App'x 213, 216 (5th Cir. 2019) (Oldham, J., concurring) (recognizing that appellate courts "write opinions to explain our reasons …[b]ut at the end of the day, it is the judgment"—made up of the words used "in the decretal language"—"that really matters"). This final paragraph is thus the most carefully crafted and most obviously binding part of the opinion.

*Second*, Plaintiffs' characterization of the Fifth Circuit's limitation of *all* relief (including vacatur) to Texas as inconsistent with prior Fifth Circuit precedent, *see* Dkt. 786 at 36-41, is beyond this Court's power to address. "When an appellate court issues a specific mandate it is not subject to interpretation; the district court has an obligation to carry out the order. A different result would encourage and invite district courts to engage in *ad hoc* analysis of the propriety of appellate court rulings"—the very reconsideration of the dictates of an appellate court barred by the mandate rule. *United States v. Becerra*, 155 F.3d 740, 753 n.15 (5th Cir. 1998). After all, all district courts who see a decision reversed presumably believed that their prior decision better followed circuit precedent, but that provides no basis to dispute a "REVERSE" judgment either. Instead, litigants who disagree with a panel's decision have multiple avenues for redress: they can always seek panel rehearing or petition for rehearing en banc, and they can also seek certiorari. But those who forego these options must accept the mandate as issued; it is not for a district court to assess whether the appellate panel ruled correctly. *Id.* (rejecting argument, "whatever strength it may have," that panel should have reached different result where prior panel's mandate was clear—and explaining that any contrary argument "should have been presented to the prior panel in … [a] petition for panel rehearing or a motion to stay the mandate"); *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 878 (11th Cir. 2023) (rejecting argument on second appeal that prior panel had overlooked one of appellant's claims where appellant had failed to "file[] a petition for panel rehearing noting his objection to our characterization of his arguments," and thus "our mandate in *Young I* is the law

14

of the case"); *Nkihtaqmikon v. Impson*, 585 F.3d 495, 498 (1st Cir. 2009) (adding that where "remand order was quite clear … any request that it be reconsidered should have been made by a timely petition for rehearing in this court," and observing that when party failed to so petition and "our mandate issued, it established the law of the case").

Here, the Fifth Circuit limited all relief, including the effectiveness of vacatur, to Texas. *See supra* at 13-14; *DACA CA5 2025*, 126 F.4th at 420, 422. To the extent Plaintiffs believe that "binding Fifth Circuit precedent forecloses" this outcome, Dkt. 786 at 40-41, this would have been a good reason for Plaintiffs to seek panel rehearing and/or en banc Fifth Circuit review. They chose not to seek either form of further review before the Fifth Circuit. That is their right, but of course the consequence of their choice is that the Fifth Circuit's 2025 judgment is the final, authoritative word on the scope of relief in this litigation. *See Becerra*, 155 F.3d at 753 n.15. Said simply, even if Plaintiffs could have presented their arguments that this ruling on the scope of relief is erroneous to the panel that issued the ruling, the en banc Fifth Circuit, or the Supreme Court, having declined to do so, they must accept the Fifth Circuit's mandate on scope of relief as law of the case. Their entreaties to *this* Court to reconsider the propriety of that clear instruction are plainly barred by the mandate rule. *See id.*; *Franklin*, 125 F.4th at 629; *Crowe*, 261 F.3d at 562.

*Third*, Plaintiffs' resurrected argument that the DACA Final Rule's benefits provisions are not only substantively unlawful but also arbitrary and capricious, Dkt. 786 at 42-45, is irrelevant to the scope of relief available on remand. The Fifth Circuit already held that the DACA Final Rule's benefits provisions violate the INA. *DACA CA5 2025*, 126 F.4th at 417-18. A further reason for which the DACA Final Rule's benefits provisions are unlawful would not change the Fifth Circuit's holding that nationwide relief was an overbroad remedy to address these already-held-to-be-unlawful provisions. *Id.* at 421-22. The Fifth Circuit ordered the relief narrowed because

15

Plaintiffs had not shown any injury flowing from the unlawful benefits provisions outside of Texas, not because of anything about the nature of the substantive INA claim it was accepting. *Id.* Plaintiffs' injury would remain "fully redressable by a geographically limited injunction" even if the benefits provisions were considered arbitrary and capricious in addition to being found substantively unlawful. *Id.* at 421.[3]

*Finally*, any link between forbearance and benefits is no reason for this Court to expand the scope of relief beyond Texas. Plaintiffs' contorted argument that this Court should terminate the *benefits* provisions nationwide because the separate *forbearance* provisions are unlawful nationwide, Dkt. 786 at 47-50, fails. As explained above, the Fifth Circuit already correctly determined that the forbearance provisions are lawful and explicitly ordered that those provisions *not* be vacated, but rather, preserved nationwide. *See supra* at 8-12. So because the forbearance provisions cannot be vacated consistent with the Fifth Circuit's 2025 ruling, whether the benefits provisions can stand without forbearance is irrelevant to the remedial analysis.

## III.    PLAINTIFFS BEYOND TEXAS MAY NOT OBTAIN A DECLARATORY ORDER IMPACTING IMPLEMENTATION OF THE BENEFITS PROVISIONS.

This Court should also reject Plaintiffs' remaining request—namely, for "declaratory relief on the [DACA] Final Rule's benefits provisions" to "Plaintiff States other than Texas." Dkt. 786

---

[3] In any event, as New Jersey argued at length in its summary judgment briefing, *see* Dkt. 636 at 11-21, and Fifth Circuit reply brief, *see Texas v. United States*, No. 23-40653, Dkt. 148 at 16-21, the DACA Final Rule is not arbitrary and capricious. DHS's conclusion that "it is not generally the best use of [its] limited resources to remove from the United States those who arrived here as young people, have received or are pursuing an education or served in the military, have no significant criminal history, do not pose a threat to national security or public safety, and are valued members of our communities," 87 Fed. Reg. 53,155, and that the overall public would be better served by a DHS policy that "focus[es] its enforcement resources on the removal of dangerous criminal offenders and other noncitizens who threaten public safety and national security," *id.* at 53,186, amounts to "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015).

at 11. Initially, this request is puzzling when this Court has already held that those provisions are unlawful, *see DACA D.Ct. 2023*, 691 F. Supp. 3d at 788, a holding that the Fifth Circuit has affirmed, *see DACA CA5 2025*, 126 F.4th at 417-18. Instead, it appears that what Plaintiffs on remand effectively seek is a specific declaratory judgment, tantamount to an injunction, ordering "federal officials" to "reform[] their practices to conform to the law" in "Plaintiff States other than Texas" by "declar[ing]" that the Federal Government cannot implement the DACA Final Rule's benefits provisions in the remaining Plaintiff States. Dkt. 786 at 18. Because that demand is irreconcilable with both the Fifth Circuit's opinion and its mandate, this Court cannot entertain it.

Begin with the Fifth Circuit's mandate. *See Collins v. Dep't of the Treasury*, 83 F.4th 970, 979 (5th Cir. 2023) ("a lower court on remand must implement both the letter and the spirit of the appellate court's mandate"). In their original complaint, Plaintiffs already contended that the DACA Final Rule's benefits provisions were unlawful, and already sought to "*enjoin* Defendants from renewing or issuing any new DACA permits that confer lawful presence or work authorization in the future," Dkt. 623 at 40 (emphasis added), including within the Plaintiff States. Now, under the guise of a declaratory judgment, they ask for exactly the same thing: a declaration that prevents Defendants from renewing or issuing new DACA permits that confer lawful presence or work authorization in the future within the Plaintiff States. Dkt. 786 at 18. In other words, this specific declaratory judgment request is just a repackaged request for injunctive relief. And however labeled, granting that request would plainly contravene the Fifth Circuit's mandate "limit[ing] relief to Texas." *DACA CA5 2025*, 126 F.4th at 420. Without *any* new evidence or intervening precedent, Plaintiffs would improperly circumvent the Fifth Circuit's mandate narrowing relief to Texas, by taking the Fifth Circuit's reversal of an order "enjoining" DACA's benefits provisions in those States, and turning it into a declaration to "reform[]" DACA by

terminating benefits in those States. That coheres with neither the "letter" nor the "spirit" of the Fifth Circuit's mandate, and must be rejected. *Collins*, 83 F.4th at 979.

Even if granting the declaratory relief that Plaintiffs now seek would not run afoul of the Fifth Circuit's mandate narrowing relief to Texas, it is nonetheless precluded by the Fifth Circuit's *holdings* that Plaintiffs other than Texas have not demonstrated Article III injury. *See id.* at 405, 420-21. A party seeking a prospective remedy, including either "injunctive" or "declaratory" relief, must have some Article III injury that would be redressed by the judicial order. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019); *see also Waller v. Hanlon*, 922 F.3d 590, 602-03 (5th Cir. 2019) (ordering dismissal of declaratory judgment claim for lack of standing). It could hardly be otherwise: standing rules apply to "each form of relief that is sought." *Ruele v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)), and "a declaration is not a get-out-of-standing-free card," *Wells v. Johnson*, 150 F.4th 289, 301 (4th Cir. 2025). But the need to have an Article III injury to justify declaratory relief proves fatal, because the Fifth Circuit already held that no Plaintiff State other than Texas has shown Article III injury. *DACA CA5 2025*, 126 F.4th at 405, 420-21 ("Just one state, Texas, demonstrated an actual injury caused by the Final Rule.").[4] Because the Fifth Circuit's holding that only Texas has Article III injury is "an issue of fact or law that has already been decided on appeal," it may not be reexamined on remand. *Franklin*, 125 F.4th at 629-30. And although *Texas* enjoys standing, that offers no basis to grant declaratory relief to the *other* Plaintiffs, because "standing is not dispensed in gross." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Instead, the Fifth Circuit's Article III holding

---

[4] To be clear, New Jersey never took a position on whether any Plaintiff State has standing in this litigation, but the Fifth Circuit has decided that Texas alone has standing, and that has indisputable consequences on remand for the available relief. *See Franklin*, 125 F.4th at 629-30.

as to *these* non-Texas Plaintiffs is dispositive: their lack of standing precludes granting them declaratory relief, just as it precludes other forms of judicial relief. *See Stringer*, 942 F.3d at 720.

Finally, this Court should not entertain Plaintiffs' unsupported request for an opportunity to present new evidence of their injuries on remand. Dkt. 786 at 19 n.5. As New Jersey already explained in its initial filing in response to this Court's July 22, 2025 Order, *see* Dkt. 784 at 1-6, Plaintiffs had "every opportunity" over the course of this protracted litigation to demonstrate their injuries, and they had "every … incentive" to do so, given arguments from the Federal Government and the Individual Defendant-Intervenors that any relief could be no broader than necessary to remedy injuries demonstrated by Plaintiffs. *See* Dkt. 784 at 4 (citing *Lyons v. Fisher*, 888 F.2d 1071, 1075 (5th Cir. 1989)). This case proceeded to final judgment, and the factual record as to Plaintiffs' injuries is now fixed. Especially absent any intervening precedent, and given the years and multiple rounds of litigation that Plaintiffs have already had in which to present their case under Article III, Plaintiffs do not get "a second bite at the … apple" to produce evidence of injury that they now wish they had produced earlier. *Gene & Gene*, 624 F.3d at 701; *see* Dkt. 784 at 4-6. The Fifth Circuit's holding that Texas alone is entitled to relief from the DACA Final Rule binds this Court on remand.

## CONCLUSION

Pursuant to the Fifth Circuit's opinion and mandate, the DACA Final Rule applies in full outside of Texas, and this Court should not issue any orders to the contrary.[5]

---

[5] If this Court disagrees and orders relief on remand that would impact implementation of the DACA Final Rule nationwide, this Court should grant a stay pending appeal. A stay would be equitable for all the reasons this Court identified in repeatedly granting stays in this litigation. *See, e.g.*, Dkt. 576. And New Jersey would be likely to succeed on appeal given its arguments here.

Dated: November 10, 2025

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By: */s/ Mayur P. Saxena*
MAYUR P. SAXENA
Attorney-in-Charge
Assistant Attorney General
(admitted pro hac vice)
124 Halsey St., 5th Floor
Newark, New Jersey 07101
PO Box 45029-5029
Phone: (609) 696-5365
Fax: (973) 648-4887
Mayur.Saxena@law.njoag.gov

Jeremy M. Feigenbaum, Solicitor General
(admitted pro hac vice)
Viviana M. Hanley, Deputy Attorney General
Bryce K. Hurst, Deputy Attorney General
Amanda I. Morejón, Deputy Attorney General
(admitted pro hac vice)
Estefania Pugliese-Saville, Deputy Attorney General

*Attorneys for Defendant-Intervenor State of New Jersey*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 10, 2025, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Mayur P. Saxena*
Mayur P. Saxena
