**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**



| | | |
|---|---|---|
| STATE OF TEXAS, ET AL.; | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Case No. 1:18-cv-68 |
| | § | |
| UNITED STATES OF AMERICA, ET AL.; | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, ET AL.; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| *Defendant-Intervenors.* | § | |

**Plaintiff States' Supplemental Brief in Response to Defendants' Briefs**

## TABLE OF CONTENTS

Table of Contents ....................................................................................................................... ii

Table of Authorities .................................................................................................................. iii

Introduction ................................................................................................................................1

Argument ....................................................................................................................................1

    I.    The mandate rule does not limit this Court's power to consider still pending substantive challenges and unresolved requests for relief. ................................................................1

        A.    The mandate rule does not bar further adjudication of Plaintiff States' remaining legal claims. ................................................................................................................ 2

        B.    The Court can rule on Plaintiffs' pending substantive claims. ...................................... 4

        C.    The Court can properly issue new relief on remand.......................................................7

    II.    Effective relief for Texas requires an injunction that precludes DACA status for recipients who either live or work in Texas. ................................................................12

    III.    Lifting the stay and ordering a prompt wind down of the program is appropriate. .......14

    IV.    The Court should avoid needlessly creating reliance interests by deferring modification of its current injunction until issuance of a final judgment. .......................................16

Conclusion ................................................................................................................................17

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azar v. Allina Health Servs.*,
   587 U.S. 566 (2019) ................................................................................................10

*Ballenger v. Mobil Oil Corp.*,
   138 F. App'x 615 (5th Cir. 2005) ...........................................................................4

*Barrett v. Thomas*,
   809 F.2d 1151 (5th Cir. 1987) ...........................................................................6, 8

*Cornerstone Credit Union League v. Consumer Fin. Prot. Bureau*,
   791 F. Supp. 3d 720 (E.D. Tex. 2025) (Jordan, J.) ............................................6

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) .................................................................................12

*Janvey v. GMAG, L.L.C.*,
   No. 21-10483, 2022 WL 4102067 (5th Cir. Sept. 7, 2022) ................................4

*Mozilla Corp. v. FCC*,
   940 F.3d 1 (D.C. Cir. 2019) ..................................................................................14

*Muskrat v. United States*,
   219 U.S. 346 (1911) ..................................................................................................8

*Newball v. Offshore Logistics Intern.*,
   803 F.2d 821 (5th Cir. 1986) ..................................................................................3

*ODonnell v. Goodhart*,
   900 F.3d 220 (5th Cir. 2018) ..................................................................................3

*Plaut v. Spendthrift Farm, Inc.*,
   514 U.S. 211 (1995) ..................................................................................................8

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ..................................................................................................9

*Texas v. Biden* (*MPP*),
   20 F.4th 928 (5th Cir. 2021) .................................................................................11

*Texas v. United States*,
  328 F. Supp. 3d 662 (S.D. Tex. 2018) ........................................................................9

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) .................................................................................. 15

*Texas v. United States* (*DACA 5th Cir. 2022*),
  50 F.4th 498 ................................................................................................. *passim*

*Texas v. United States* (*DACA 5th Cir. 2025*),
  126 F.4th 392 (5th Cir. 2025) .......................................................................... *passim*

*Texas. v. United States* (*DACA SDTX 2021*),
  549 F. Supp. 3d 572 (S.D. Tex. 2021) ...................................................... 5, 7, 9, 12

*Texas v. United States* (*DACA SDTX 2023*),
  691 F.Supp.3d 763 ..............................................................................7, 9, 10, 12

*Texas v. United States* (*DAPA 5th Cir.*),
  809 F.3d 134 (5th Cir. 2015) ................................................................................ 11

*Texas v. United States*,
  No. 1:18-CV-68, 2023 WL 5950808 (S.D. Tex. Sept. 13, 2023) (ECF No. 729) ................. 1, 3

*Texas v. United States*,
  No. 23-40653, ECF No. 222-2 (5th Cir. Mar. 11, 2025) ...........................................2

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................9

## INTRODUCTION

The Court should rule on the lawfulness of forbearance and the propriety of declaratory relief and vacatur. The Fifth Circuit's decision addresses a few discrete issues, while the scope of its remand to this Court is broad. Accordingly, nothing in the Fifth Circuit's mandate precludes this Court from deciding the pending issues highlighted in Plaintiff States' Supplemental Brief. *See* ECF No. 786. Separately, the Court should ensure that its modified injunction offers complete relief to Texas by halting benefits for DACA recipients either residing or working in Texas. Federal Defendants—the only defendants to submit concrete suggestions for a modified injunction—fall short by neglecting to remedy the harm imposed by DACA recipients who commute to Texas while living outside its borders.

Plaintiff States respectfully reiterate their request that the Court deem their earlier Supplemental Brief, ECF No. 786, as an appropriate motion for judgment on Plaintiff States' claims for vacatur and declaratory relief to the extent the Court finds it necessary. These claims were already properly raised and fully briefed when the Court's September 2023 ruling was appealed. *See Texas v. United States*, No. 1:18-CV-68, 2023 WL 5950808 (S.D. Tex. Sept. 13, 2023) (ECF No. 729). They are ripe for judgment now and the Court need not provide further opportunity for adversarial briefing in addition to that given by the December 2022 briefing schedule and July 2025 order. *See* ECF Nos. 621, 760.

## ARGUMENT

### I.    The mandate rule does not limit this Court's power to consider still pending substantive challenges and unresolved requests for relief.

The Fifth Circuit's remand instructions impose just three limitations on the Court's authority over this case: (1) injunctive relief must be limited to Texas; (2) the effectiveness of the Court's *existing* order of vacatur is limited to Texas; and (3) this Court must heed the Final Rule's severability clause when granting relief. *Texas v. United States* (*DACA 5th Cir. 2025*), 126 F.4th 392, 422 (5th Cir. 2025). But these limitations leave the litany of matters still pending before this Court untouched. Indeed, the 2025 Fifth Circuit panel made clear that its remand returned broad

jurisdiction to the Court "for further proceedings as the district court may find appropriate." *Id.* Leaving no doubt as to the breadth of this Court's authority, the panel unambiguously chose to "impose no restriction on the matters that the district court, in its wisdom, may address on remand" and to "express no view on what decisions it should make." *Id.* The mandate rule cannot limit what the Fifth Circuit itself left open. Thus, this Court should address the remaining substantive claims as well as the availability and propriety of the remedies sought beyond injunctive relief.

### A. The mandate rule does not bar further adjudication of Plaintiff States' remaining legal claims.

The 2025 Fifth Circuit panel's remand neither restricts this Court's authority to address unadjudicated matters nor indicates the decisions it should reach. *DACA 5th Cir. 2025*, 126 F.4th at 422; *see also Texas v. United States*, No. 23-40653, ECF No. 222-2 (5th Cir. Mar. 11, 2025). Indeed, the panel appears to have anticipated further adjudication on remand, basing the preservation of its stay in part on "the uncertainty of final disposition." *DACA 5th Cir. 2025*, 126 F.4th at 422. This Court thus correctly recognized the "wide discretion" afforded to both it and the parties on remand. ECF No. 760 at 1. Undeterred, other parties to this litigation seek to use the panel's mandate to limit the matters before this Court. *See, e.g.*, ECF No. 783 at 15 [1] (requesting "that the Court clarify that, as a result of the Fifth Circuit's mandate, this Court's injunction no longer prohibits the Federal Government Defendants from accepting, adjudicating, and approving initial DACA applications, regardless of the applicant's state of residence"); ECF No. 784 at 2 (Defendant-Intervenor State of New Jersey contending that "[t]he mandate rule thus compels the conclusion that DACA now again exists in full outside of Texas, and this Court should not order otherwise."). But the mandate rule does not limit consideration of issues pending before this Court that have not been—and indeed, given the procedural posture, that could not have been— considered by the panel.

---

[1] References to pagination for documents filed on this Court's electronic docket are to the stamped page numbers in the header of those filings.

Plaintiff States timely raised several challenges to the Final Rule that have yet to be adjudicated. *See e.g.*, Amended Compl., ECF No. 104 at 50–51, 73; ECF No. 623 at 19, 42; ECF No. 625-1 at 21–22, 39. In briefing this Court on those remaining issues, Plaintiff States narrowly tailored its discussion to honor the 2025 Fifth Circuit panel's guidance. *See generally* ECF No. 786. Plaintiff States made no argument to expand injunctive relief beyond Texas. *Id.* at 17–21. In light of that injunction, Plaintiff States declined to seek duplicative relief, choosing instead to limit the requested declaration of the benefits provisions' unlawfulness to Plaintiff States *besides* Texas. *Id.* at 21–31. And Plaintiff States sought relief against the forbearance provisions based only on their independent unlawfulness rather than their inseverability from other unlawful provisions. *Id.* at 32–44, 47–51. Plaintiff States' re-urging of these claims, long ago raised in this litigation and consistently pursued throughout, in no way unfairly complicates remand with new or novel issues. *Cf. ODonnell v. Goodhart*, 900 F.3d 220, 225 (5th Cir. 2018) (holding that "[r]emand is [generally] not the time to bring new issues that could have been raised initially"). Nor are Plaintiff States attempting to relitigate matters already settled. *See Texas v. United States*, No. 1:18-CV-68, 2023 WL 5950808 (S.D. Tex. Sept. 13, 2023) (ECF No. 729) (Supplemental Order of Injunction) (stating that "[a] Final Judgment has not been entered in this case, so all matters not being addressed by an appellate court are still pending in this Court"). These unaddressed issues are unaffected by the Fifth Circuit's mandate and thus still await this Court's judgment.

Defendant-Intervenor New Jersey's treatment of the mandate rule cannot change this state of affairs. *See generally* ECF No. 784 at 4–8. That discussion revolves around the inapplicability of the "few exceptions to this rule" in the instant litigation. *Id.* at 4; *see also id.* at 7 ("Nor does any exception apply that would allow this question to be relitigated."). As New Jersey itself explains, such exceptions allow for "reexamination of issues decided on appeal." *Id.* But where, as here, the issues implicated were not considered by the court above, the mandate rule simply does not apply in the first place. *Newball v. Offshore Logistics Intern.*, 803 F.2d 821, 826 (5th Cir. 1986) ("A mandate controls on all matters within its scope, but a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal."). Accordingly, while the

"mandate rule requires a lower court to . . . not disregard the explicit directives of [an appellate] court, . . . [t]he reach of the mandate rule [] is limited to issues *actually decided* by the appellate court." *Ballenger v. Mobil Oil Corp.*, 138 F. App'x 615, 618 (5th Cir. 2005) (emphasis in original). And, conversely, "when [the] mandate does not extend to a matter still at issue in a case, the district court remains free to act." *Janvey v. GMAG, L.L.C.*, No. 21-10483, 2022 WL 4102067, *3 (5th Cir. Sept. 7, 2022) (citing *Barrett v. Thomas*, 809 F.2d 1151, 1154 (5th Cir. 1987) ("A district court is not precluded from acting on a matter neither before nor acted upon by the appeals court."). Plaintiff States do not seek to relitigate matters already decided—they merely request this Court give unaddressed matters the full consideration they are due.

### B. The Court can rule on Plaintiffs' pending substantive claims.

Plaintiff States have challenged the forbearance provisions as substantively unlawful under both the INA and Take Care Clause. *See* ECF No. 786 at 32–44. The Fifth Circuit recognized that Plaintiff States have challenged forbearance throughout this litigation, noting that "[d]eferring removal for DACA recipients, that is, special treatment under the immigration laws governing removal, is an integral part of the causation of the States' injuries, according to their Amended Complaint and briefing," explaining that "the States . . . seek to end both forbearance of removal and the conferral of benefits to existing DACA recipients as existing permits expire," and recognizing that "[t]he States make clear in their filings and briefing that once the DACA program has ended, former DACA recipients should be removable on the same basis as any other similarly situated illegal alien." *DACA 5th Cir. 2022*, 50 F.4th at 513. In the summary-judgment briefing in 2023, Plaintiff States repeatedly emphasized that the Court need not address severability because each of the three provisions of the Final Rule—forbearance, lawful presence, and work authorization—were independently unlawful. ECF No. 625-1 at 21–22 (discussing illegality of forbearance provisions of the Final Rule); ECF No. 673 at 36 (recognizing that "even if this Court finds that the Final Rule is severable, it should still vacate and enjoin it in its entirety because each

provision is independently unlawful") (citing, *inter alia*, ECF No. 625-1 at 10–25,[2] and *DACA 5th Cir. 2022*, 50 F.4th at 521–31); ECF No. 673 at 37 (stating "the DACA program—whether in its original form of the DACA Memorandum or the substantively identical Final Rule—is contrary to the INA's provisions on *eligibility for removal*, lawful presence, work authorization, and limitations on advance parole") (cleaned up and emphasis added).

This Court also expressly held the forbearance portion of the 2012 DACA Memorandum was substantively unlawful in itself because "[a]n award of deferred action is not a subject for prosecutorial discretion," as "[w]hile Congress has allowed the Executive Branch to create regulations and to selectively grant deferred action in some specific instances, it has reserved for itself the broad authority to regulate immigration." *DACA SDTX 2021*, 549 F. Supp. 3d at 606 (cleaned up). That classwide forbearance was unlawful because "all DACA applicants and recipients fall into a category for removal regardless of their mode of entry" and the DACA program "prevents immigration officials from enforcing these provisions of the INA"—"[i]n other words, DACA prevents the removal of its recipients, despite Congress having dictated their eligibility for removal." *Id.* at 608. This Court therefore held that the classwide forbearance in the 2012 DACA Memorandum violated "Congress's clear articulation of laws for removal." *Id.* at 614.

Plaintiff States have further highlighted the still pending arbitrary-and-capricious claim against the Final Rule's work authorization provisions. *Id.* at 52–56. The Fifth Circuit's remand instructions do not hinder this Court's authority to decide the merits of those challenges. Having found the Final Rule unlawful in toto, this Court had no need of addressing Plaintiff States' alternative theories under the Take Care Clause or arbitrary–and–capricious framework, and thus the 2025 Fifth Circuit panel had no occasion to review those claims on appeal. Given the Fifth Circuit's severing of the forbearance provisions from the existing relief as well as its narrowing of the geographic scope of injunctive relief for work authorization pursuant to equitable factors, these alternative claims are no longer duplicative and must now be addressed.

---

[2] This cite is to the page numbers in the footer of the cited document.

The 2025 Fifth Circuit panel did not decide the legality of the Final Rule's forbearance provisions, and its ruling on severability does not resolve Plaintiff States' still pending challenge to those provisions. Indeed, that ruling merely concluded that "DHS intended the aspects of DACA to be severable and to function independently" without comment on the lawfulness of forbearance. *DACA 5th Cir. 2025*, 126 F.4th at 420. On remand, the Court must not afford relief on the forbearance provisions based solely on their relationship with the Final Rule's other unlawful provisions. But nothing precludes this Court from addressing whether the forbearance provisions are themselves independently unlawful. *Cf. Cornerstone Credit Union League v. Consumer Fin. Prot. Bureau*, 791 F. Supp. 3d 720, 741–43 (E.D. Tex. 2025) (Jordan, J.) (setting aside entire rulemaking despite severability clause because the Court found every substantive provision unlawful). The Court may do so on the basis of the INA, the Take Care Clause, or both.

In the Fifth Circuit, it is well established that "[a] district court is not precluded from acting on a matter neither before nor acted upon by the appeals court." *Barrett*, 809 F.2d at 1154. In *Barrett*, for example, the district court initially found county officials liable for back pay as compensation for the plaintiff's politically inspired demotion. *Id.* at 1153. The county itself intervened into the case after that determination, and thus neither the district court nor the Fifth Circuit addressed its liability for back pay. Following further proceedings before the district court, the county was found jointly and severally liable for the previous back-pay award judgment. *Id.* at 1154. In the case's second trip to the Fifth Circuit, the court rejected the argument "that the district court lacked authority to enter judgment against [the county] for the back-pay award because our mandate in *Barrett I*, by affirming the district court, conclusively resolved the case and therefore precluded the district court from amending the judgment." *Id.* Since the county's liability "was not raised before the court in the prior appeal, nor did the court consider the issue," that issue was "left open" such that the district court remained "at liberty to decide whether the [c]ounty was jointly liable for the back pay award." *Id.* The Fifth Circuit's approach in *Barrett* should inform this Court's treatment of unresolved issues in the present litigation.

Moreover, to the extent that forbearance has been addressed, those prior rulings of this Court and the Fifth Circuit found it unlawful under the INA. This Court's 2021 summary judgment and the Fifth Circuit's 2022 affirmance established that "the DACA Memorandum contravenes comprehensive statutory schemes for removal." *Texas v. United States* (*DACA 5th Cir. 2022*), 50 F.4th 498, 526; *see also Texas. v. United States (DACA SDTX 2021)*, 549 F. Supp. 3d 572, 608, 614 (S.D. Tex. 2021). Later, the Court found that the Memorandum and the Final Rule are substantively identical. *Texas v. United States (DACA SDTX 2023)*, 691 F.Supp.3d 763, 793 n.90; *see also DACA 5th Cir. 2025*, 126 F.4th at 417 (stating that "the Final Rule is materially identical to the 2012 Memorandum"). These earlier decisions are no less binding law of the case than the most recent appeal and, taken together, necessarily mean that the Final Rule's forbearance provisions contravene the INA's removal framework. Accordingly, fidelity to the law of the case requires rather than forecloses the conclusion that the Final Rule's forbearance provisions are unlawful.

### C. The Court can properly issue new relief on remand.

Plaintiff States have consistently sought relief beyond an injunction. And given that the 2025 Fifth Circuit panel's narrowed injunction falls short of affording complete relief, those other remedial measures warrant especially careful consideration. The panel's instructions on remedies only touch on the scope of injunctive relief for the benefits provisions pursuant to the particular legal theories addressed by this Court. Accordingly, Plaintiff States other than Texas may still receive declaratory relief regarding the benefits provisions of the Final Rule. The forbearance provisions may still be universally vacated as unlawful under the INA or Take Care Clause. The work authorization provisions may still be universally vacated as arbitrary and capricious. And the benefits provisions—both work authorization and lawful presence—may still be universally vacated as inseverable from the unlawful "heart" of DACA, the forbearance provisions. Plaintiff States' renewed prayer for vacatur and declaratory judgment invites no conflict with the Fifth Circuit's mandate.

District courts may resolve issues "left open by the mandate," and thus necessarily may afford additional relief on remand to redress those still-open issues. *Barrett*, 809 F.2d at 1154. Indeed, the authority to render decisions on remand would be illusory absent the means to carry judgments into effect. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) (stating that "a judicial power is one to render dispositive judgments"); *Muskrat v. United States*, 219 U.S. 346, 356 (1911) (holding Article III grants federal courts "the power of a court to decide and pronounce a judgment *and carry it into effect*") (emphasis added). Obviously, a district court's post-remand jurisdiction is not so toothless—the court possesses unquestioned authority to fashion suitable remedies for those pending claims it deems meritorious. This Court should exercise that authority by universally vacating the forbearance provisions as unlawful under the INA and Take Care Clause and the work authorization provisions as arbitrary and capricious.[3]

All Defendants spill much ink arguing that the Court should not permit non-Texas Plaintiff States to introduce any evidence of injury on remand. *See* ECF No. 781 at 2–4; ECF No. 783 at 2–8; ECF No. 784 at 5–7. But as Plaintiff States explained in their opening supplemental brief, they have elected to avoid further delay by relying on existing evidence in the record to support their pending request for declaratory relief for the remaining Plaintiff States that does not require the introduction of new evidence. ECF No. 786 at 29–30. But if the Court is not receptive to the declaratory-relief route, Plaintiff States request that they be allowed to introduce additional evidence to obtain injunctive relief.

Nor should the 2025 Fifth Circuit panel's treatment of injunctive relief have any effect on the Plaintiff States' entitlement to declaratory relief. That limitation did not result from the panel's merits determination but instead rested on equitable concerns unique to injunctive relief. *See*

---

[3] New Jersey argues that *CASA* does not constitute an "intervening decision" addressing "whether vacatur is a nationwide or geographically-limited remedy." ECF No. 784 at 8 n.1. To be clear, Plaintiff States place no reliance on *CASA* for such purposes. Instead, Plaintiff States merely highlight that vacatur of the forbearance provisions based on independent unlawfulness, the work authorization provisions as arbitrary and capricious, and the benefits provisions as inseverable from forbearance all remain pending and subject to the Fifth Circuit's well-established jurisprudence on universal vacatur. *See* ECF No. 786 at 46–60.

*DACA 5th Cir. 2025*, 126 F.4th at 420-21 (limiting the injunction's scope to Texas because "'*injunctive relief* should be no more burdensome to the defendant than necessary to provide complete relief'") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)) (emphasis added); *see also id.* at 421 (adding that "the balance of equities outweighs" "the interest of uniformity in immigration laws"). As "a matter of equitable discretion," an injunction "does not follow from success on the merits as a matter of course" but requires a showing on the other three traditional factors. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). Not so with declaratory relief. *Steffel v. Thompson*, 415 U.S. 452, 471–72 (1974). That the panel found the balance of equities and public interest to disfavor broad injunctive relief does not imply a similar conclusion for other forms of relief untrammeled by equity-driven considerations, such as declaratory relief. Accordingly, the panel's ruling on the scope of injunctive relief does not supply reasons to deny a declaratory judgment.

These remedial considerations are separate and distinct from standing. Both this Court and the Fifth Circuit have established Article III jurisdiction, empowering them to decide the present case or controversy between all parties to this litigation. *See DACA 5th Cir. 2025*, 126 F.4th at 405–15; *DACA 5th Cir. 2022*, 50 F.4th at 513–20; *DACA SDTX 2023*, 691 F. Supp. 3d at 778–81; *DACA SDTX 2021*, 549 F. Supp. 3d at 584–96; *Texas v. United States*, 328 F. Supp. 3d 662, 690–705 (S.D. Tex. 2018) ("*DACA SDTX 2018*"). In affirming this Court's 2021 universal injunction, the Fifth Circuit recited the long-established rule that "[t]he presence of one party with standing is sufficient" and concluded that "Texas has demonstrated standing based on its direct injury." *DACA 5th Cir. 2022*, 50 F.4th at 514, 520. Following consideration of the merits, the Fifth Circuit affirmed this Court's grant of a universal injunction under the following rationale:

> Our decision to uphold the nationwide injunction, rather than more narrowly tailored relief, is based on our reading of circuit precedent. In the context of immigration law, broad relief is appropriate to ensure uniformity and consistency in enforcement. A more limited remedy would detract from the integrated scheme of regulation created by Congress.

*Id.* at 531 (cleaned up). This Court subsequently recognized the Fifth Circuit's "remand was not a general remand of the entire case, but was instead a very specific, limited remand" that "clearly does not permit the parties to relitigate previously established issues." *DACA SDTX 2023*, 691 F. Supp. 3d at 778.

As this Court itself recognized, Plaintiff States relied on these well-established precedents—that only one plaintiff need demonstrate a concrete injury for the Court's authority to decide a case to attach and that broad relief is warranted to ensure uniformity and consistency in the enforcement of immigration law—in electing to neither highlight evidence of injury to other Plaintiff States already in the record nor to enter new evidence demonstrating such harm. *See* ECF No. 760 at 2. But the 2025 Fifth Circuit panel "pulled a surprise switcheroo," *Azar v. Allina Health Servs.*, 587 U.S. 566, 571 (2019) (cleaned up), by reversing course from the 2022 Fifth Circuit panel's prior determinations in the case—as Plaintiff States were justified in relying on the 2022 Fifth Circuit panel's rulings on these issues, they would be well-justified in seeking to introduce additional evidence of injury in light of this change. However, contrary to Private Defendant-Intervenors' assertions, the record already contains sufficient evidence of harm to States other than Texas.

Private Defendant-Intervenors' recounting of the non-Texas Plaintiff States' conduct in earlier stages of this litigation regarding injury also misses the mark, as they claim to have "pointed to ample evidence that the non-Texas Plaintiff States had either been unable or had refused 'to provide any quantitative analysis identifying the economic harm they suffer from the DACA recipients' presence.'" ECF No. 783 at 6 (quoting ECF No. 504 at 19[4]). A footnote then cites a litany of exhibits that merely reference the non-Texas Plaintiff States' responses that they do not track costs from DACA recipients specifically, ECF No. 783 at 6 n.1—a factor that the Fifth Circuit has held (as described below) is not adequate to render an injury insufficient for standing. The Private Defendant-Intervenors made these same flawed arguments about Texas's evidence of

---

[4] This cite is to the page number in the footer of the cited document.

injury, which like the other Plaintiff States did not include tracking DACA recipients in particular. *See* ECF No. 504 at 24 ("Plaintiffs offer *zero* evidence connecting Texas' purported expenditures to DACA recipients"); *id.* at 25 (claiming "Texas is "[u]nable to prove its standing through its own evidence"); *id.* ("Even if Texas *were* able to identify a DACA recipient that creates costs for Texas (and Texas cannot and has not) . . . *No Plaintiff* has been able to provide any quantitative analysis identifying the economic harm they suffer from the DACA recipients' presence."); ECF No. 288 at 9 ("To the extent Texas spends any state funds on DACA recipients (Texas identifies none)"); *id.* at 11 (dismissing Texas's evidence of injury based on public education expenses— later upheld by the Fifth Circuit—because it was not specifically about DACA recipients).

Unfortunately, Private Defendant-Intervenors' attempt to relitigate matters already decided in prior proceedings is nothing new. In the 2023 round of summary-judgment briefing concerning the Final Rule, they ignored the 2022 Fifth Circuit panel's rejection of this argument and made it again. *See* ECF No. 642 at 28 ("Plaintiffs point to no specific facts showing that Texas has spent a cent on healthcare, education, or social services for a DACA recipient. Instead, Plaintiffs rely almost exclusively on the same years-old speculation about Texas's *aggregate* expenditures on social services for immigrants generally that they used to support their previous summary-judgment motion. Plaintiffs argue, without any factual support, that because DACA recipients are immigrants, at least some of those aggregate expenditures must have been directed to DACA recipients.").

The Fifth Circuit has repeatedly upheld a State's standing in immigration cases even where the evidence was not specifically tied to the particular category of aliens. *See DACA 5th Cir. 2022*, 50 F.4th at 517–18 (finding sufficient for standing a record that "does not indicate precisely what portion of all costs [to Texas] for illegal aliens is spent on DACA recipients" because "no one disputes that some are"); *Texas v. United States (DAPA 5th Cir.)*, 809 F.3d 134, 155 (5th Cir. 2015) (holding that Texas established injury in fact without precisely quantifying the costs of issuing driver's licenses to DAPA beneficiaries); *Texas v. Biden* (*MPP*), 20 F.4th 928, 972–73 (5th Cir. 2021) (noting that despite no evidence of the MPP-eligible aliens specifically imposing costs on Texas,

standing was satisfied because it was "easy to see" that "at least some MPP-termination-caused immigrants will certainly seek healthcare services from the State," with this "simple causal inference based on a simple change in incentives" rendering the injury nonspeculative). Continuing to push this rejected argument here with regard to the non-Texas Plaintiff States demonstrates the Private Defendant-Intervenors' refusal to accept contrary authority.

Regardless, such an absence does not negate the clear existence of ongoing and future harm to each Plaintiff State. As explained in Plaintiff States' opening Supplemental Brief, the fiscal effect resulting from DACA recipients' presence in Plaintiff States inflicts ongoing injuries, which will only be exacerbated by additional recipients relocating from Texas into these States as a result of the state-specific injunction. *See* ECF No. 786 at 29–30. Ample evidence exists—in the administrative record, pursuant to U.S. Citizenship and Immigration Services official reports for which this Court may take judicial notice,[5] and as an acknowledged result of the Fifth Circuit's limitation of injunctive relief to Texas—to support declaratory relief. This obviates the need to condition new relief on fresh evidence of injury, leaving this Court free to remedy the remaining Plaintiff States' injuries while also affording Texas complete relief.

## II.    Effective relief for Texas requires an injunction that precludes DACA status for recipients who either live or work in Texas.

As this Court and the Fifth Circuit have recognized, the Final Rule incentivizes DACA recipients to remain in-state to Texas's detriment. *DACA SDTX 2023* 691 F.Supp.3d at 780–81; *DACA 5th Cir. 2025*, 126 F.4th at 411 n.22. Lawful presence qualifies recipients for a variety of public benefits that Texas must then expend scarce resources to satisfy. *DACA 5th Cir. 2025*, 126 F.4th at 411 n.22. Further, advance parole remains "a troubling aspect of DACA," *DACA SDTX 2023*, 691 F. Supp. 3d at 785, providing a loophole around Congress's careful statutory scheme by allowing recipients to circumvent unlawful presence bars, *DACA SDTX 2021,* 549 F.Supp.3d at

---

[5] *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (courts may take "judicial notice of publicly-available documents and transcripts produced by the [a federal agency], which were matters of public record directly relevant to the issue at hand").

612–13. Consequently, effective relief must deny advance parole as well as impel "recipients [to] leave, [whose] departure would reduce the State's Medicaid, social services and education costs for those individuals and their families who depart with them." *DACA 5th Cir. 2022*, 50 F.4th at 520.

This Court must also provide Texas relief from the application of the Final Rule's work authorization provisions. For their part, Federal Defendants acknowledge that "a DACA recipient residing outside of Texas who receives a DACA-based EAD would be employment authorized everywhere in the United States, including Texas," because work authorization, at least as currently implemented, "is not state-specific." ECF No. 781 at 6–7. But identifying the problem is cold comfort without also advancing a solution. Federal Defendants fall short in this respect, as their proposals would afford relief solely based on residence without regard to in-state employment. Since the State's pocketbook injury traces to DACA recipients' consumption of in-state benefits, remedying that harm must additionally extend to those whose employment regularly brings them within the State's borders.

Additionally, Texas's proposals for EADs are carefully crafted to curtail DACA recipients' access to the State's labor market without placing undue burdens on Federal Defendants. DHS only issues EADs to DACA recipients pursuant to category 33, allowing relief to be finely honed to enjoin only this unlawful facet of the Final Rule without affecting others with legitimate claims for work authorization. Thus, building upon the consensus between Texas and Federal Defendants that no new EADs should flow to DACA recipients residing within the State, the Court should also order DHS to reject Form I-766(c)(33) as valid work authorization for employment in Texas. This directive should extend to the E-Verify system, which is relied upon by myriad employers to confirm the eligibility of their hires. And to fortify Texas further, the Court should order the inclusion of a disclaimer on newly issued I-766(c)(33) cards proclaiming their ineffectiveness within Texas. These straightforward solutions effectively dissolve the Final Rule's unauthorized work privileges for DACA beneficiaries employed in Texas while residing elsewhere. Moreover,

rendering these DACA-based EADs void across Texas furnishes an extra safeguard against those recipients who relocate to Texas but neglect to notify DHS on their whereabouts.

Notwithstanding these shortcomings, Texas agrees with several of the suggestions advanced by Federal Defendants for the implementation of state-specific injunctive relief. Halting work authorization for recipients residing in Texas is essential for affording Texas the requisite relief. Federal Defendants' proposal to "put out public communications reminding DACA requestors/DACA recipients of" their "continuing obligation" to update their current residential address and to "inform[] them of the effect of moving to or out of Texas" would support cessation of work authorization for beneficiaries in Texas. *See* ECF No. 781 at 5. Likewise, creating "a new Class of Admission code ('COA') that will only be applied to DACA recipients whose most recent address on record with USCIS is in Texas" is a promising aid to monitoring in-state recipients. *Id.* at 8–9. While Texas appreciates and agrees with these proposals, the additional relief outlined in Plaintiff States' proposed order remains crucial for adequately remedying the injuries caused by the Final Rule's benefits provisions. *See* ECF No. 786-1.

### III.    Lifting the stay and ordering a prompt wind down of the program is appropriate.

Over the course of four years, this Court and the Fifth Circuit have consistently held the DACA program unlawful. To be sure, reliance interests justified a stay of relief at the outset of this litigation. But the long train of decisions that followed have provided DACA beneficiaries ample notice of the program's illegality and impending termination. Recipients can no longer plausibly claim ignorance of the program's legal failings or a consequent lack of opportunity to prepare for its cessation. *See Mozilla Corp. v. FCC*, 940 F.3d 1, 64 (D.C. Cir. 2019) (holding that reliance on agency determination was not reasonable partly because the underlying regulation had been subject to serious legal challenge).

Plaintiff States first proposed prohibiting DACA renewal applications two years from the date of judgment, providing up to four years (the remainder of a recipient's current DACA term plus a single two-year renewal) for current recipients to arrange their affairs in response to the

program's unlawfulness. ECF No. 625-1 at 13, 17. Defendant-Intervenors responded by characterizing the proposal at "an arbitrary two-year period leading to wind-down [that] falls far short of complying with *Regents*." ECF No. 642 at 51. But two-and-a-half years later, they now tentatively embrace this proposal, insisting however that "allowing DACA recipients a wind-down period of up to four years" represents "the absolute minimum effort to accommodate the reliance interests of DACA recipients." ECF No. 783 at 11–12. At this advanced stage of the proceedings, such a proposal instead constitutes the *maximum* wind-down period this Court should entertain. *See* ECF No. 786 at 62. The Court can adequately protect any remaining reliance interests by instead allowing a 90- or 180-day grace period for current recipients to continue enjoying deferred action while they finalize alternative arrangements.

Delaying state-specific equitable relief for Texas would be especially inappropriate. The Court should avoid compounding Texas's now universally recognized injuries by allowing a protracted stay of such relief. Indeed, its judgment that DACA's benefits provisions are substantively unlawful is binding law in this Circuit following affirmance—as the time for en banc review or certiorari has elapsed, that judgment will never be subject to revision. Recipients in Texas cannot reasonably rely on the availability of future benefits held unlawful, and the Court should not reward misplaced reliance that ignores its own ruling as well as that of the Fifth Circuit. Further, compared to emigration abroad that may eventually result from this Court's consideration of universal vacatur, the burdens flowing from domestic relocation in response to state-specific injunctive relief are relatively mild and cannot justify a lengthy stay. The other matters pending before this Court may warrant more careful treatment in light of the potential for further appeals. No such concerns present themselves with regard to injunctive relief.

An overlong wind-down period disserves the public interest. Plaintiff States will continue to suffer pocketbook injuries as long as the DACA program remains in place. And "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). On the other

side of the ledger, DACA recipients have already benefitted from the program for an additional two years since the wind-down was initially proposed. This Court should take that intervening period into account. While certainly within its discretion, the Court need not add two years of renewals and an additional two years of DACA status on top of the two years this prolonged litigation has granted recipients to arrange their affairs. The time has come to end this agency-concocted exception to the statutory provisions Congress intended to govern removability and lawful presence.

## IV.    The Court should avoid needlessly creating reliance interests by deferring modification of its current injunction until issuance of a final judgment.

Finally, Plaintiff States respectfully suggest the Court modify the scope of its current injunction simultaneously with its rendering final judgment on all other pending claims. Restricting injunctive relief to Texas while Plaintiff States' other claims remain pending would temporarily resume processing of new applicants, thereby unnecessarily creating additional reliance interests should this Court later enter further relief. The Court should avoid that potential whipsawing by maintaining the current state of affairs until those claims can be fully adjudicated. Only then should the order modifying injunctive relief issue.

The same principles that militate in favor of staying relief for existing recipients also support deferring the modification of injunctive relief until final judgment is entered. Postponement protects Plaintiff States against suffering additional fiscal injuries. It serves the public interest by limiting the application of DHS's unlawful ad hoc exception to the INS's statutory mandates to the current fixed number of recipients. And it avoids the widespread confusion that would result from reopening the DACA program to new applicants before subsequently shutting it off again. Given "the uncertainty of final disposition and the inevitable disruption that would arise from a lack of continuity and stability," *DACA 5th Cir. 2025*, 126 F.4th at 422, the Court should decide all aspects of DACA's fate at the same time by modifying its injunction and issuing its final judgment simultaneously.

**CONCLUSION**

For the foregoing reasons, the Court should craft Texas-specific injunctive relief regarding DACA's benefits provisions that includes recipients residing or working in Texas, declare unlawful and universally vacate the Final Rule in its entirety, terminate the Court's own stay, and implement a brief wind-down period for all provisions it determines to be unlawful.

Dated: November 10, 2025

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105085
Southern Dist. No. 3369185

Respectfully submitted,

**RYAN G. KERCHER**
Chief, Special Litigation Division

**DAVID BRYANT**
Senior Special Counsel
*Attorney-in-Charge*
Texas Bar No. 03281500
Southern Dist. No. 808332

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501
Southern Dist. No. 3379673

**J. AARON BARNES**
Special Counsel
Texas Bar No. 24099014
Southern Dist. No. 3697248

**KYLE S. TEBO**
Special Counsel
Texas Bar No. 24137691
Southern Dist. No. 3893370

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 936-2714
Fax: (512) 457-4410
ryan.walters@oag.texas.gov
david.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
aaron.barnes@oag.texas.gov
kyle.tebo@oag.texas.gov

*Counsel for Plaintiff State of Texas*

**TIM GRIFFIN**
Attorney General of Arkansas

*/s/ Autumn Hamit Patterson*
**AUTUMN HAMIT PATTERSON**
Solicitor General
AR Bar Number 2025095
TX Bar Number 24092947

OFFICE OF THE ARKANSAS ATTORNEY
GENERAL
101 W. Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-2007
autumn.patterson@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*


**STEVE MARSHALL**
Attorney General of Alabama

*/s/ Robert M. Overing*
**ROBERT M. OVERING**
Deputy Solicitor General

OFFICE OF THE ALABAMA ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
AL/8736M14Q
Telephone: (334) 353-8931
robert.overing@alabamaag.gov

*Counsel for Plaintiff State of Alabama*


**KRIS W. KOBACH**
Attorney General of Kansas

*/s/ James Rodriguez*
**JAMES RODRIGUEZ** (KS Bar #29172)
OFFICE OF KANSAS ATTORNEY GENERAL
KRIS W. KOBACH
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephoneeophone: (785) 368-8197
jay.rodriguez@ag.ks.gov

*Counsel for Plaintiff State of Kansas*


**ELIZABETH B. MURRILL**
Attorney General of Louisiana

**J. BENJAMIN AGUIÑAGA**
Solicitor General

*/s/ Zachary Faircloth*
**ZACHARY FAIRCLOTH***
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL OF
LOUISIANA
1885 N. 3rd St.
Baton Rouge, LA 70802
Telephone: (225) 421-4088
aguinagaj@ag.louisiana.gov
fairclothz@ag.louisiana.gov

**PHV Application pending*
*Counsel for Plaintiff State of Louisiana*

**LYNN FITCH**
Attorney General of Mississippi

*/s/ Justin L. Matheny*
**JUSTIN L. MATHENY**
Deputy Solicitor General

OFFICE OF THE MISSISSIPPI ATTORNEY
GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
Fax: (601) 359-2003
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

**MICHAEL T. HILGERS**
Attorney General of Nebraska

*/s/ Cody S. Barnett*
**CODY S. BARNETT**
Solicitor General
NEBRASKA DEPARTMENT OF JUSTICE
Telephone: (531) 350-4932
cody.barnett@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

**ALAN WILSON**
Attorney General of South Carolina

*/s/ James Emory Smith, Jr.*
**JAMES EMORY SMITH, JR.**
General Counsel
OFFICE OF THE SOUTH CAROLINA ATTORNEY
GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: 803-734-3680
Fax: 803-734-3677
esmith@scag.gov

*Counsel for Plaintiff State of South Carolina*

**JOHN B. MCCUSKEY**
Attorney General of West Virginia

*/s/ Michael R. Williams*
**MICHAEL R. WILLIAMS**
Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF WEST
VIRGINIA
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, WV 25301
Telephone: (304) 558-2021
michael.r.williams@wvago.gov

*Counsel for Plaintiff State of West Virginia*

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF) on November 10, 2025.

*/s/ Ryan D. Walters*
RYAN D. WALTERS