UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants,<br><br>*and*<br><br>KARLA PEREZ, *et al.*,<br><br>STATE OF NEW JERSEY,<br><br>Defendant-Intervenors. | Case No. 18-cv-00068 |

**FEDERAL DEFENDANTS' RESPONSE
TO PLAINTIFF STATES' SUPPLEMENTAL BRIEF [ECF No. 786]**

Federal Defendants respectfully submit this memorandum in response to Plaintiff States' Supplemental Brief (ECF No. 786).

*Texas III*

In *Texas III*, the Fifth Circuit acknowledged, "[a]s before, Texas is the only state that has attempted to demonstrate standing[,]" and reaffirmed that Texas—having demonstrated a cognizable, redressable injury—has standing. *Texas, et al., v. United States, et al.*, 126 F.4th 392, 405-15 (5th Cir. 2025) (*Texas III*) (citing *Texas, et al. v. United States, et al.,* 50 F.4th 498, 514 (5th Cir. 2022) (*Texas II*)). The Fifth Circuit then found that because the 2022 DACA Final Rule is materially identical to the 2012 DACA Memorandum, and absent a relevant change in law since *Texas II*, the Final Rule substantively violates the Immigration and Nationality Act ("INA"). *Texas* III, 126 F.4th at 417-18 (5th Cir. 2025) (citing *Texas II,* 50 F.4th at 526). Continuing, the Fifth Circuit considered the Final Rule's severability provision,[1] and found that "the district court erred when it vacated the entire Rule instead of severing the Rule's forbearance provisions from the work authorization provisions and vacating only the latter." *Id*. at 419-20. Accordingly, the Fifth Circuit "limit[ed] injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas, and require[d] such relief to heed DACA's severability provision." *Texas, et al. v. United States, et al*. 126 F.4th 392, 422 (5th Cir. 2025) (*Texas III*). Thus, the Fifth Circuit narrowed the injunction and vacatur in two respects: (1) it applies only inside of Texas (because Texas was the only litigant that showed injury), *id*. at 405-15, 421-22;

---

[1] The Final Rule's severability clause provides that if any provision of the Rule is held "invalid and unenforceable in all circumstances," then that "provision shall be severable from the remainder of this subpart and shall not affect the remainder thereof." 8 C.F.R. § 236.24(a). In addition, the Rule provides, "[t]he provisions in § 236.21(c)(2) through (4) and § 274a.12(c)(14) and 274a.12(c)(33) [conferring benefits] are intended to be severable from . . . any grant of forbearance from removal resulting from this subpart." 8 C.F.R. § 236.24(b).

2

and (2) even within Texas, it only covers the DACA Final Rule's benefits provisions (instead of the forbearance elements of DACA), due to the severability clause in the Final Rule that the Fifth Circuit respected, *id*. at 419-20, 422.

Part I

In Part I of their Supplemental Brief, Plaintiff Texas argues that the injunction "should preclude work authorization and lawful presence that encourages DACA recipients to be present in Texas." ECF No. 786 at 7; *see generally id*. at 7-11 & Ex. A. Federal Defendants agree with Texas in part. As explained in Federal Defendants' September 29, 2025, Memorandum (ECF No. 781), the injunction should be limited to individuals residing in Texas, and the work authorization and lawful presence provisions of the Final Rule—8 C.F.R. § 236.21(c)(2) through (4) and 8 C.F.R. § 274a.12(c)(14) (first clause only) and 274a.12(c)(33)—should be severed and vacated as to individuals residing in Texas. Here, Texas's and Federal Defendants' positions align. Federal Defendants submit that the contours of this proposed injunction and vacatur provides complete relief to Texas's established cognizable injuries. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[].").

Texas seeks an order that would "enjoin Federal Defendants from granting [benefits] eligibility . . . on the basis of any DACA status possessed during any period residing in Texas," ECF No. 786 at 9. Federal Defendants read this language to impose only a prospective injunction, and not to require the calculations of periods where people may have resided previously in Texas. A forward-facing injunction provides Texas all the relief it seeks in discouraging DACA recipients from living in Texas. Eligibility for federal benefits will be based on a DACA recipient residing outside of Texas, and any such benefit a DACA recipient may

obtain in the future, even if based on having worked lawfully in Texas in the past, would bear no cost on Texas. Furthermore, given this Court's grant of a complete stay as to existing DACA recipients over the past 4 years, this language cannot be read to apply retroactively. As a practical matter, unwinding the lawfulness of DACA recipients' various activities during periods of time they may have resided in Texas over the past 13 years would be difficult, if not impossible. We therefore read this provision to apply only to prospective periods of residence in Texas after entry of this Court's order.

Texas further asks that the injunction limit DACA recipients who reside outside of Texas from using their DACA work authorization to commute to and work in Texas. ECF No. 786 at 8. Texas contends this relief is necessary because it otherwise might be required under federal law to provide emergency Medicaid to an out-of-state commuter DACA recipient who requires emergency medical care in Texas and does not have medical insurance. *Id*. Under 42 C.F.R. § 431.52(b)(1), (b)(2), however, the state where a DACA recipient resides is responsible for paying for out-of-state, covered medical expenses, provided that the DACA recipient meets their home state's income and any other relevant requirements. Accordingly, Texas's argument does not support an injunction restricting out-of-state employed DACA recipients from working in Texas.

Plaintiffs also misunderstand the functionality of E-Verify and other USCIS systems, and thus several aspects of their proposed order exceed the Department of Homeland Security's (DHS) operational capabilities. *See* Plaintiffs' Proposed Order Modifying Injunction and Granting Further Relief on Other Pending Matters, ECF 786-1, at ¶¶ 1, 2, 4, 5, 7-10. For example, E-Verify is not designed to take into consideration what state an employee will perform work in or where they reside. Accordingly, if an employee presents an unexpired DACA-based

4

employment authorization document (EAD) for verification, E-Verify would confirm the individual is employment authorized, regardless of their place of employment or state of residence. Additionally, while the Fifth Circuit's stay remains in effect such that initial and renewal DACA recipients are in different postures, E-Verify would be unable to distinguish between a DACA renewal recipient residing in Texas who could work in Texas due to the stay, and an initial DACA recipient residing outside of Texas who could not work in Texas under Plaintiffs' proposal: both would be verified as employment authorized if their EAD is unexpired. Further, to the extent the proposed order would require DHS to identify when a non-Texas resident DACA recipient is physically present in Texas for purposes of calculating lawful presence, that is not operationally possible since DHS does not have a record of a DACA recipient's movement in and out of Texas. Plaintiffs also propose that DHS print restricted text in red lettering on EADs, which is not functionally possible because EADs are individualized by laser engraving, not printed ink. This level of operational detail should be left to Federal Defendants to determine. The Court should reject Texas's request and adopt Federal Defendants' proposed order.

Texas also asks that the Court to enjoin Federal Defendants from both granting advance parole to DACA recipients on the basis of any DACA possessed during any period residing in Texas, and enrolling or facilitating the enrollment of DACA recipients in Social Security or Medicare on the basis of any DACA status possessed during any period residing in Texas. ECF No. 786 at Ex. A (paragraphs 14-15). . To the extent the Court entertains these requests for relief, Federal Defendants construe them prospectively. Regarding DACA recipients' eligibility for Medicare, under section 71201 of Public Law 119-21 (a.k.a., the "One Big Beautiful Bill Act"), which added section 1899C to the Social Security Act (the "Act") (42 U.S.C. 1395mmm),

as of July 4, 2025, only (1) U.S. citizens or nationals, (2) lawful permanent residents, (3) Cuban-Haitian entrants, and (4) COFA migrants may be eligible for Medicare. Accordingly, if the order is prospective only, Federal Defendants do not object to language agreeing to not enroll DACA recipients in Medicare on the basis of their status as a DACA recipient.

With respect to Social Security benefits, Section 202(y) of the Social Security Act provides that, "no monthly benefit [Old Age, Survivor or Disability Insurance Benefits under Title II] shall be payable to any alien in the United States for any month during which such alien is not lawfully present in the United States as determined by the Attorney General." 42 U.S.C. § 402(y). As such, assuming a DACA recipient otherwise meets all criteria to receive Social Security benefits, including insured status based on qualifying employment, the Social Security Administration (SSA) relies on DHS's determination that the person is lawfully present to determine whether it can pay benefits. On a prospective basis, Federal Defendants understand that SSA can conduct initial and periodic verification through DHS to confirm an individual is lawfully present, based on the individual reporting their residence outside of Texas to DHS.

Part II

In Part II of their Supplemental Brief, Non-Texas Plaintiff States seek declaratory relief on the Final Rule's benefit provisions. ECF No. 786 at 11-21. They are not entitled to this relief.

As Federal Defendants demonstrated in their September 29, 2025 Memorandum, Non-Texas Plaintiff States lack the standing necessary to obtain relief. *See* ECF No. 781 at 2-4. *Texas III* relied on well-established principles concerning standing and equitable remedies, *see Texas III*, 126 F.4th at 420-21 & n.47; there has been no change in the standing doctrine; and

6

Non-Texas Plaintiff States should not be given an opportunity to establish facts that they have long forfeited. The Court should deny Non-Texas Plaintiff States' request.

Part III

In Part III of their Supplemental Brief, Plaintiff States argue that the Final Rule's forbearance provisions are unlawful independent of the benefits provisions. ECF No. 786 at 22-36. Specifically, Plaintiffs' argument that this Court or the Fifth Circuit found forbearance-only unlawful is belied foremost by the fact that the Fifth Circuit, despite Plaintiffs' arguments to the contrary, severed forbearance policy from the remainder of DACA, preserving it as a lawful policy. *See Texas III*, 126 F.4th ("In sum, the States seek . . . to end both forbearance of removal and the conferral of benefits to existing DACA recipients as existing permits expire."); *id*. at 402 ("We heed the Final Rule's severability clause and do not disturb DACA's policy of forbearance."). Nor did this Court find forbearance unlawful. Rather, the Court held that a forbearance policy was unnecessary because DHS's forbearance authority is clear:

> [T]he DHS does not need the Final Rule to exercise forbearance as to the DACA recipient population. The DHS has always had the right and the power to prosecute or forbear from prosecution any person illegally present in the country, even without an administrative rule or memorandum. Thus, forbearance with no benefits would be superfluous.

Memorandum and Order, ECF No. 728, at 30. But the Fifth Circuit not only rejected this Court's finding, *Texas III*, 126 F.4th at 420 ("So, *contra* the district court, we cannot conclude that a policy of forbearance without the other aspects of DACA would be superfluous."), it noted explicitly that "[t]hough the Supreme Court has referred to forbearance as 'the heart of DACA,' it also recognized that 'forbearance and benefits are *legally distinct and can be decoupled*.'" *Id*. (citing *Regents*, 591 U.S. at 28, 30) (emphasis added). Plaintiffs also cite to this Court's 2021 Memorandum and Order for this Court's determination that "DACA prevents the removal of its recipients, despite Congress having dictated their eligibility for removal." ECF No. 575 at 52.

7

But that broad statement applies to any form of deferred action; and it is clearly contradicted by the Court's more recent determination that "DHS has always had the right and the power to prosecute or forbear from prosecution any person illegally present in the country." ECF No. 728 at 30.

     Plaintiffs otherwise point mostly to their own arguments as recounted by the Fifth Circuit, rather than any Fifth Circuit finding as to the unlawfulness of forbearance.[2] *See, e.g.*, ECF no. 786 at 23-24, citing *Texas III*, 126 F.4th at 512 ("Throughout the Amended Complaint and briefing, the States contend . . ."). The closest Plaintiffs are able to come to asserting a direct finding is a broad statement from the Fifth Circuit's 2022 decision that the panel "agree[d] with the district court's reasoning and its conclusions that the DACA Memorandum contravenes comprehensive statutory schemes for removal." *Id*. at 24 (citing *Texas II,* 50 F.4th at 526). This general sense of agreement simply does not overcome the Fifth Circuit's 2025 determination to specifically sever the forbearance policy from the unlawful portions of the Final Rule, despite Plaintiffs' efforts to vacate that policy as well. And as Plaintiffs' point out, the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id*. at 29 (citing *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 639–40 (5th Cir. 2014)).

     Plaintiff States also misunderstand the forbearance provisions of the Final Rule, which do not themselves authorize forbearance as to any particular alien but require a separate favorable exercise of enforcement discretion.  Forbearance from enforcement, including when formally framed as "deferred action," is a practice that long pre-dated the Final Rule. *See* 87 Fed. Reg. at

---

[2] Nor is Plaintiffs heavy reliance on a partial concurrence in *Regents* helpful. *See id*. at 25-27. Plaintiffs note first that "*Regents* did not address whether a stand-alone forbearance policy would be substantively lawful." *Id*. at 25. Justice Thomas' partial concurrence places no mandate on this Court to find otherwise. *Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (statements contained in a concurrence do not constitute binding precedent).

53,185 ("[T]he Supreme Court [has] long recognized the fundamental role that prosecutorial discretion plays with respect to immigration enforcement."); *id.* at 53,186 ("Deferred action thus is a well-established form of prosecutorial discretion."). And the Final Rule does not itself authorize deferred action for any individual. To the contrary, it makes clear that forbearance should only be granted if the alien meets all criteria in the Final Rule *and* the alien "merits a favorable exercise of discretion." 8 C.F.R. § 236.22(b). Similarly, the Final Rule reserves to DHS "discretion to assess the individual's circumstances and to determine that any factor specific to that individual makes deferred action inappropriate." *Id.* § 236.22(c).

To be sure, the last Administration had a strong preference for forbearance with respect to this population, and that preference is reflected in the non-binding preamble text of the rule. For that reason, the Fifth Circuit observed that DHS intended for the Rule also to function as a forbearance policy. *Texas III*, 126 F.4th at 420 & n.43 (citing 87 Fed. Reg. at 53,248-49). But it was the benefits provisions that necessitated rulemaking, not announcement of a "non-enforcement policy." *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 18 (2020).

Even putting aside that the Final Rule does not itself authorize non-enforcement as to any individual, non-enforcement is a lawful exercise of both the Secretary's expansive statutory authority to administer and enforce the Nation's immigration laws, 8 U.S.C. § 1103(a)(1), (3), and the Secretary's responsibility to set national immigration-enforcement policies and priorities, 6 U.S.C. § 202(5).

When a statute like the INA gives an agency discretion "to decide how and when" its enforcement provisions "should be exercised," the statute generally empowers the agency not "to

9

institute . . . enforcement proceedings." *Heckler v. Chaney*, 470 U.S. 821, 835, 838 (1985). Such prosecutorial discretion is the norm across law-enforcement agencies.

As such, the Supreme Court has long approved of the Secretary's use of deferred action. For instance, it has recognized the Secretary's "regular practice" of affording forbearance "for humanitarian reasons or simply for its own convenience," explaining that deferred action is part of the Secretary's "discretion to abandon the endeavor" of enforcement "[a]t each stage" of the process. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999).

The Final Rule's forbearance provisions also are consistent with the Take Care Clause. First, the Take Care Clause is addressed to the President; it does not create a judicially enforceable interest or support an Administrative Procedure Act ("APA") suit. *See Franklin v. Massachusetts*, 505 U.S. 788, 802-803 (1992); *Mississippi v. Johnson*, 71 U.S. 475, 498-99 (1866). Second, Plaintiffs' "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 473 (1994).

Like other deferred-action policies, the Final Rule's forbearance provisions establish guidelines to help agency employees identify individuals who *may* warrant temporary forbearance from removal because they are low priorities for enforcement. That temporary forbearance is not unlawful.

Part IV

In Part IV of their Supplemental Brief, Plaintiffs argue that the Final Rule's forbearance provisions should be universally vacated. ECF No. 786 at 36-41. They also seek universal vacatur of the benefits provisions. *Id*. at 36-37, 41-50. They contend that the *Texas III* court wrongly "conflated vacatur with injunctive relief" by ordering party-specific vacatur as to Texas only, rather than universal vacatur. *Id*. at 36-37.

10

First, vacatur of the forbearance-only provisions is not warranted because, as discussed above in Part III, they are lawful. Second, the *Texas III* court's Texas-specific vacatur of the benefits provisions is proper. The limits in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), apply to vacatur.

As the Supreme Court recognized in *CASA, Inc.*, "[t]raditionally, courts issued injunctions prohibiting executive officials from enforcing a challenged law or policy only against the plaintiffs in the lawsuit." *CASA, Inc.*, 606 U.S. at 837. Thus, in *CASA, Inc.* the Supreme Court held that the "more recent development" of "universal injunctions"—through which district courts "assert [] the power to prohibit enforcement of a law or policy against anyone"—"lacks a historical pedigree" and "falls outside the bounds of a federal court's equitable authority under the Judiciary Act" of 1789. *Id.* at 837, 847 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)). A court sitting in equity must tailor relief to "'be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Id.* at 852 (quoting *Califano*, 442 U.S. at 702). That principle also "ensures that federal courts respect the limits of their Article III authority," *United States v. Texas*, 599 U.S. 670, 693-94 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment), which likewise requires that "a plaintiff's remedy" "be limited to the inadequacy that produced his injury," *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (alterations and quotation marks omitted).

Despite these principles, Plaintiffs, in this case under the APA, seek universal vacatur of the Final Rule's benefits provisions—universal relief intended to render the challenged action "inoperable with respect to any person anywhere." *See Texas*, 599 U.S. at 695 (Gorsuch, J., concurring). But courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinbeger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and

11

ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *accord Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) ("When Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity."). Nothing in the APA authorizes courts to depart from traditional equitable principles and grant universal relief as a matter of course. And even if vacatur were a permissible remedy under the APA, it is an equitable remedy subject to ordinary equitable principles. Accordingly, the *Texas III* court correctly tailored the vacatur remedy to Texas, rather than universal.[3]

In any event, the mandate rule prevents the court from vacating the entirety of the Final Rule or applying that vacatur outside of Texas. "The mandate rule 'provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" *Collins v. Department of the Treasury*, 83 F.4th 970, 979 (5th Cir. 2023). The mandate rule thus prohibits this Court from issuing an order that the court of appeals has already rejected or modified. This Court's prior injunction granted exactly the vacatur relief that plaintiffs now seek—vacating the entire Final Rule nationwide. *See* Dkt. No. 729 (providing that "the original injunction and order of vacatur is hereby expanded to cover Final Rule DACA" and "[t]hat program is vacated"). On appeal, the Fifth Circuit narrowed the vacatur. The Court "limit[ed] injunctive relief, *including the effectiveness of the*

---

[3] As Plaintiffs note in their Supplemental Brief, ECF No. 786 at 36-37, the issue of universal vacatur after *CASA, Inc.* is currently before the Fifth Circuit and is expected to be resolved soon. *See Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 138 F.4th 961, 963 (5th Cir. 2025) (granting *en banc* review to decide whether universal vacatur, rather than party-specific vacatur, is available and proper). The Court can hold this issue in abeyance pending resolution of the *en banc* proceedings on this issue.

*vacatur of the Final Rule*, to Texas, and require[d] such relief to heed DACA's severability provision." Op. 38 (emphasis added). To the extent that the Fifth Circuit and other courts have assumed the availability of universal vacatur, they have not held that such universal vacatur is mandatory. And in this case, the Fifth Circuit has already held that nationwide vacatur of the entire Final Rule would be inappropriate. This Court cannot now issue the same vacatur order that the Fifth Circuit already reversed.

    Part V

In Part V of the Supplemental Brief, Plaintiffs urge the Court to dissolve the stay of the order of vacatur and permanent injunction it issued on July 16, 2021, as well as the stay that the Court applied to its supplemental vacatur and permanent injunction order it extended to the Final Rule. ECF No. 786 at 50. In Plaintiffs' view the stays served as a "sensible precaution" while the Court's decisions were pending appellate review, but now that the Fifth Circuit has twice affirmed the Court's orders, Plaintiffs argue that the Court should dissolve the stays. *Id.* at 51. But as Plaintiffs acknowledge, ECF No. 786 at 51-52 n.12, the Fifth Circuit has imposed its own stay regarding existing DACA recipients. In its most recent decision, the Fifth Circuit "preserve[d] the stay as to existing recipients," making clear the stay remained in place "pending a further order of this court or the Supreme Court." *Texas III*, 126 F.4th at 422. Accordingly, any ruling this Court makes regarding a stay will not affect the stay in place by virtue of the Fifth Circuit's order.

    Conclusion

For the reasons in Federal Defendants' September 29, 2025, Memorandum (ECF No. 781) and the reasons above, the Court should modify the injunction as explained in that Memorandum rather than as proposed by Plaintiffs and decline to broaden the vacatur order.

13

Dated: November 10, 2025

DANIEL HU
Assistant U.S. Attorney
Office of the U.S. Attorney
for the Southern District of Texas
1000 Louisiana, Ste 2300
Houston, TX 77002
Phone: 713-567-9518
Fax: 713-718-3303
Email: daniel.hu@usdoj.gov

*Local Counsel for Federal Defendants*

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

AUGUST E. FLENTJE
Senior Counsel

ANTHONY P. NICASTRO
Acting Director

GLENN GIRDHARRY
Acting Deputy Director

JAMES J. WALKER
Senior Litigation Counsel

SARAH MALONEY
Trial Attorney

<u>*/s/ William C. Silvis* (*by permission DDH*)</u>
WILLIAM C. SILVIS
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation & Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 307-4693
Fax: (202) 305-7000
E-mail: william.silvis@usdoj.gov

*Counsel for Federal Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 10, 2025, this document was filed electronically with the Clerk of the Court using the CM/ECF system, which should automatically send notification of this filing to all counsel of record.

Dated:   November 10, 2025                                  */s/ Daniel Hu*
                                                            DANIEL HU