IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al.,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.<br>    Defendants,<br><br>and<br><br>KARLA PEREZ, STATE OF NEW JERSEY, et al.<br>    Defendant-Intervenors. | Case No. 1:18-cv-00068 |

MEMORANDUM OF LAW OF PROPOSED AMICUS CURIAE
THE TEXAS CATHOLIC CONFERENCE OF BISHOPS AND
THE CATHOLIC LEGAL IMMIGRATION NETWORK, INC.
<u>IN SUPPORT OF DEFENDANT-INTERVENORS' SUPPLEMENTAL BRIEFING</u>

*Of counsel:*

Devon C. Beane*
**ALSTON & BIRD LLP**
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Telephone: (312) 702-8700
devon.beane@alston.com
* Motion to appear pro hac vice forthcoming

Christopher J. Frisina*
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3300
christopher.frisina@alston.com
* Motion to appear pro hac vice forthcoming

Michael J. Newton (TX Bar No. 24003844)
(Attorney-in-Charge)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
mike.newton@alston.com

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A. A Stay Or Delay In Implementation Of Any Injunction Is Necessary ................................................................................................. 2

        1. The Court Has Authority To Craft A Remedy Or Delay Implementation Of Any Injunction To Prevent Harm ......................... 2

        2. Texas DACA-Recipients Will Face Significant And Irrecoverable Hardship If The Injunction Is Not Stayed ..................... 4

        3. Any Prejudice To Texas Is Significantly Outweighed By The Benefits It Will Receive From Delayed Implementation ....................................................................................... 6

            a) A stay of the injunction is necessary to reduce economic and social harm to Texas communities ................... 6

            b) An abrupt implementation of the injunction will overburden faith-based and community-based organizations' ability to serve their communities. ................... 8

        4. A Stayed Implementation Of Injunctive Relief Will Conserve Judicial And Governmental Resources ............................. 10

    B. Alternatively, The Court Could Phase In The Implementation Of Its Order ............................................................................................... 11

III. CONCLUSION ....................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aurelius Inv., LLC v. Puerto Rico*,
  915 F.3d 838 (1st Cir. 2019) ................................................................................................... 3

*Buckley v. Valeo*,
  424 U.S. 1, 143 (1976) ............................................................................................................ 3

*Clinton v. Jones*,
  520 U.S. 681 (1997) ................................................................................................................ 4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) .................................................................................................................... 5

*EEOC v. CBS, Inc.*,
  743 F.2d 969 (2d Cir. 1984) .................................................................................................... 3

*Friends of Earth, Inc. v. EPA*,
  446 F.3d 140 (D.C. Cir. 2006) ................................................................................................ 3

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ................................................................................................................ 3

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................................................ 4

*Moore v. Madigan*,
  702 F.3d 933 (7th Cir. 2012) ................................................................................................... 3

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  459 U.S. 813 (1982) ................................................................................................................ 3

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) (plurality opinion) .................................................................................... 3

*Plastipak Packaging, Inc. v. CG Roxane, LLC*,
  No. 4:20-cv-356, 2022 U.S. Dist. LEXIS 142360 (S.D. Tex. July 21, 2022) .......................... 4

*Texas v. United States*,
  No. 1:18-cv-00068, 2021 U.S. Dist. LEXIS 133117 (S.D. Tex. July 16, 2021) ...................... 2

*Weinberger v. Romero-Barcelo*,
  456 U.S. 306 (1982) ................................................................................................................ 2

**Other Authorities**

American Immigration Council, A Texas-Only DACA? Why This Imminent Ruling Could Upend National Policy (Oct. 9, 2025), https://www.americanimmigrationcouncil.org/blog/texas-only-daca-ruling-could-upend-national-policy ...................................................................................................7

Justo Robles, *Daca recipients in Texas await judge's ruling that could upend their lives*, The Guardian (Nov. 1, 2025), https://www.theguardian.com/us-news/2025/nov/01/daca-texas-ruling-immigration ........................................................4, 5, 7, 11

Texas Catholic Conference of Bishops, Texas Catholic bishops respond to court's decision on status of DACA recipients in Texas (Nov. 4, 2025), *available at* https://txcatholic.org/texas-catholic-bishops-respond-to-courts-decision-status-daca-recipients/ ...............................................................................................................................1

Texas Comptroller, *Texas GDP on the World Stage – Climbing Global Economic Ranks* (June 2024), https://comptroller.texas.gov/economy/fiscal-notes/economics/2024/big-map/#:~:text=If%20Texas%20were%20a%20country,and%20services%20%E2%80%94%20totaled%20$2.4%20trillion (noting that Texas's GDP grew from the twelfth largest economy in the world in 2012 (when DACA was implemented) to the eighth largest economy in 2024)...........................................................................................................7

Texas Higher Educ. Coordinating Board, Governor's Task Force on Health Care Workforce Shortages (last visited Nov. 14, 2025), https://www.highered.texas.gov/workforce-education-overview/governors-task-force-on-health-care-workforce-shortages/. ................................................................................8

United We Dream, The Cost of Ending DACA – Families Torn, Futures Stalled, Billions Lost (Sept. 2, 2025), https://unitedwedream.org/resources/the-cost-of-ending-daca-families-torn-futures-stalled-billions-lost/ ..................................................................................7

Uriel García, *Texas DACA recipients ponder leaving the state amid push to revoke their work permits*, The Texas Tribune (Oct. 31, 2025), https://www.texastribune.org/2025/10/31/texas-daca-lawsuit-work-permit-immigrants-departures/ .........................................................................................................8

In this Court's July 22, 2025, Order (Dkt. 760), the Court allowed the Parties to raise any additional points that may be pertinent to the Court's consideration. *Amici* write in response to that Order to urge the Court to exercise its discretion and restraint in issuing the injunction requested by Texas.

**I.    INTRODUCTION**

Implementation of Texas's requested injunction within mere weeks will immediately and inhumanely upend the lives of nearly 90,000 individuals and their families living in Texas who have benefited from the Deferred Action for Childhood Arrivals ("DACA") program for the last thirteen years. Many of these individuals have lived and worked in Texas for more than a decade, creating deep roots within our communities. These are our neighbors who worship in and support Texas Catholic parishes, work next to us, provide our health care, build our homes, run the businesses and restaurants we patronize, and whose children (who are U.S. citizens) go to school with our children, among innumerable other activities in our communities. "[T]his kind of unprecedented and disruptive action by our government will harm our communities by fomenting fear, severing relationships, disrupting business and removing some of the most upstanding individuals from our community."[1]

The Court has broad discretion in how to implement any injunction. That discretion includes staying its implementation to allow the tens of thousands of DACA recipients residing in Texas to sell their homes and businesses, find new jobs, move themselves and their families to another state, and enroll their U.S. citizen children in new schools. Delaying the injunction's implementation not only benefits these individuals and their children, but will also allow Texas to

---

[1] Texas Catholic Conference of Bishops, Texas Catholic bishops respond to court's decision on status of DACA recipients in Texas (Nov. 4, 2025), *available at* https://txcatholic.org/texas-catholic-bishops-respond-to-courts-decision-status-daca-recipients/.

prepare for the loss of thousands of workforce members, their tax revenue, and the part they play in enriching Texas's communities and its growing economy. This Court previously recognized the need to account for the significant reliance interests of DACA recipients, their families, their communities, and their employers/employees, stating: "it is not equitable for a government program that has engendered such significant reliance to terminate suddenly." *Texas v. United States*, No. 1:18-cv-00068, 2021 U.S. Dist. LEXIS 133117, at *13 (S.D. Tex. July 16, 2021). In short, even if the Court concludes that certain aspects of DACA exceed executive authority, it should delay implementation of any remedy to avoid catastrophic and unnecessary harm to DACA recipients and their Texas families, employers, employees, communities, and U.S. citizen children. Therefore, *Amici* strongly urge the Court to impose a stay in implementing the injunction for at least one DACA renewal period.

## II. ARGUMENT

### A. A Stay Or Delay In Implementation Of Any Injunction Is Necessary

#### 1. The Court Has Authority To Craft A Remedy Or Delay Implementation Of Any Injunction To Prevent Harm

This Court has broad authority to adopt a remedy that minimizes the disruptions that flow from abruptly ending policies that have engendered significant reliance interests. When both parties to a lawsuit present claims of injury, "the traditional function of equity has been to arrive at a 'nice adjustment and reconciliation' between the competing claims." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* In crafting a remedy, courts balance the interests of the parties and the possible harm that may result from granting or withholding the requested relief. *See id.* Equitable remedies are distinguished by their "[f]lexibility rather than rigidity," which affords the judiciary the power to "mould each decree to the necessities

2

of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). The D.C. Circuit has recognized that district courts "retain[] some remedial discretion" to stay orders and give the parties a "reasonable opportunity" to formulate a plan that complies with federal law. *See Friends of the Earth, Inc. v. EPA*, 446 F.3d 140, 148 (D.C. Cir. 2006).

Courts have taken care to minimize harm to significant reliance interests even when holding laws or governmental actions unconstitutional. In *Buckley v. Valeo*, for example, the Supreme Court held the process for selecting the commissioners of the Federal Election Commission violated the Appointments Clause. 424 U.S. 1, 143 (1976). The Court nevertheless stayed its judgment for 30 days to give Congress "an opportunity to reconstitute the Commission" without interrupting enforcement of the country's campaign-finance laws. *Id.*

The Supreme Court took a similar approach several years later in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 54, 87 (1982) (plurality opinion). There, the Court held Article III prohibited Congress from vesting non-Article III judges with jurisdiction over all Chapter 11 bankruptcy proceedings. *Id.* But the Court made clear that its decision applied only prospectively, as retroactive application of the decision would "surely" have "visit[ed] substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts." *Id.* at 88. The Court also stayed its judgment for about three months to "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws," *id.*, and later extended its stay for about another three months at the federal government's request, *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 459 U.S. 813, 813 (1982). *See also, e.g.*, *Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838, 862–63 (1st Cir. 2019) (90 day stay); *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (180 day stay); *EEOC v. CBS, Inc.*, 743 F.2d 969,

3

975–76 (2d Cir. 1984) (approx. 4 month stay). Consistent with these principles, a remedy that delays or stays implementation of any injunction for at least one additional DACA renewal period will minimize harm and account for the immeasurable adverse impact of invalidating DACA.

A stay of the Court's injunction is also within the Court's inherent powers. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "This power stems from the court's authority 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants' and involves the 'exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Plastipak Packaging, Inc. v. CG Roxane, LLC*, No. 4:20-cv-356, 2022 U.S. Dist. LEXIS 142360, at *5 (S.D. Tex. July 21, 2022) (quoting *Landis*, 299 U.S. at 254–55). District courts in the Fifth Circuit consider three factors to determine whether to issue a stay: (1) the hardship and inequity to the moving party if the action is not stayed; (2) the potential prejudice to the non-moving party; and (3) judicial resources that would be saved by avoiding duplicative litigation. *See id.* Even so, the court's decision to issue a stay is within its broad discretion. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). As discussed below, each of these factors favors a stay.

### 2. Texas DACA-Recipients Will Face Significant And Irrecoverable Hardship If The Injunction Is Not Stayed

The nearly 90,000 DACA recipients residing in Texas have built lives and careers in reliance on their enrollment in DACA. The average age of a DACA recipient is thirty-one.[2] These individuals have started families, purchased homes, established businesses, maintained professional licensing specific to Texas, and are students enrolled in Texas schools, colleges, and

---

[2] Justo Robles, *Daca recipients in Texas await judge's ruling that could upend their lives*, The Guardian (Nov. 1, 2025), https://www.theguardian.com/us-news/2025/nov/01/daca-texas-ruling-immigration.

universities.³ *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 31 (2020) ("DACA recipients have 'enrolled in degree programs, embarked on careers, started businesses, purchased homes, and even married and had children, all in reliance' on the DACA program" (quoting Br. of Regents of the Univ. of Cal.)). These aspects of DACA recipients' lives cannot be easily transferred, moved, or relocated to another state where they will continue to be protected under DACA.

Even the Plaintiff States' now proposed 90 or 180-day stay, *see* Pl. States' Suppl. Br. (ECF No. 786) at 52 (Sept. 29, 2025), will not provide sufficient time for these individuals to upend the lives they have built. *But see* Pls.' Mot. for Summ. J. ( Dkt. 625-1) at 5 (Jan. 31, 2023) (detailing Texas's proposal to prevent Defendants "from approving[, . . . ] after two years from the date of judgment, any DACA renewal applications."); Pls.' Reply in Supp. of Their Mots. for Summ. J and Mem. in Opp'n to All Cross-Mots. for Summ. J. (Dkt. 673) at 9 (Apr. 6, 2023) ("Plaintiffs tailored their requested relief so that current DACA recipients have *at least* two years (and potentially up to four years) to find alternative means and file renewals within this two-year period.") (emphasis in original)).  Without work permits, these individuals will be unable to afford their mortgages and rent, food for themselves and their families, and other necessities.⁴ Without the ability to work in Texas and earn an income, most of the individuals directly affected by the injunction will face additional, unnecessary hardships in relocating themselves and their families out of the State. Staying the injunction will prevent these significant harms and allow these individuals sufficient time to uproot their lives, sell their homes and businesses, quit their employment, transition volunteer obligations, withdraw their children from school, and move without additional burden.

---

3   *See id.*

4   *See id. Daca recipients in Texas await judge's ruling*, *supra* n. 2.

5

The injunction's impact is not limited to DACA recipients but also impacts the U.S. citizen spouses, children, and immediate family of these individuals. DACA permitted its enrollees to build lives, establish families, and have children in the United States. These spouses and their U.S. citizen children are not immune from the results of this lawsuit and will suffer great harm from its implementation. The children of DACA recipients are also enrolled in Texas schools and have come to rely on the stability that DACA provided. Without a stay, these children will most likely be removed from their schools, delaying or impeding their educational progress and career aspirations. Moreover, if these U.S. citizen children's parents are forced to immediately look elsewhere for work and income to provide for their families, these children will likely experience their most formative years without one or both of their parents, at least temporarily, and may be forced to suffer food and home insecurity that often comes with lost jobs and income. This outcome is contrary to the teaching of the Catholic Church, the faiths practiced by Texans state-wide, and the priorities of the State of Texas.[5]

Because of the catastrophic impact that the Court's injunction will have on the lives of these individuals, including the lives of U.S. citizen children, *Amici* urge the Court to temporarily stay the injunction to allow a humane and orderly transition to a post-DACA Texas.

### 3. Any Prejudice To Texas Is Significantly Outweighed By The Benefits It Will Receive From Delayed Implementation

#### a) A stay of the injunction is necessary to reduce economic and social harm to Texas communities

Any prejudice that Texas would experience is offset by the benefits it will receive. When the injunction is implemented, Texas will lose thousands of workforce members and the taxes

---

[5] *See e.g.*, Tex. Dep't of Fam. & Prot. Servs., Texas Family First (TFF) (last visited Nov. 14, 2025) (detailing a Texas program to keep family units together as an alternative to foster care).

these individuals pay into the State treasury. A stay for at least one additional renewal period allows Texas to prepare for this economic transition while these individuals continue to contribute to the Texas economy. Without this transitionary period, Texas will likely imperil the tremendous economic growth it has experienced in the last thirteen years.[6]

Rather than benefit from the injunction, Texas is likely to experience significant economic harm if the injunction is immediately effective. An immediate implementation of the injunction will detrimentally impact State and local economies. The nearly 221,000 DACA-eligible individuals residing in Texas contribute $8.2 billion in household income to the State's economy and pay nearly $2 billion in federal, state, and local income taxes annually.[7] These individuals are fathers, mothers, family members, ministers, professionals, teachers, health care workers, small business owners, restaurant employees, contractors, laborers, mentors, volunteers, and friends who are integrated into the economies of the State, our cities, and our local communities.[8]

---

[6] Texas Comptroller, *Texas GDP on the World Stage – Climbing Global Economic Ranks* (June 2024), https://comptroller.texas.gov/economy/fiscal-notes/economics/2024/big-map/#:~:text=If%20Texas%20were%20a%20country,and%20services%20%E2%80%94%20totaled%20$2.4%20trillion (noting that Texas's GDP grew from the twelfth largest economy in the world in 2012 (when DACA was implemented) to the eighth largest economy in 2024).

[7] American Immigration Council, A Texas-Only DACA? Why This Imminent Ruling Could Upend National Policy (Oct. 9, 2025), https://www.americanimmigrationcouncil.org/blog/texas-only-daca-ruling-could-upend-national-policy/; *see also Daca recipients in Texas await judge's ruling*, *supra* n.4 (noting that DACA recipients pay more than $830 million in state and local taxes).

[8] *Daca recipients in Texas await judge's ruling*, *supra* n. 2 ("'Texas would suffer because all their highly qualified Daca recipients would choose to move elsewhere . . . But those are the consequences of Texas deciding to entertain a challenge to Daca when, in reality, it benefits from it.'" (quoting Thomas Saenz, President, Mex. Am. Legal Def. & Educ. Fund)); *see also* United We Dream, The Cost of Ending DACA – Families Torn, Futures Stalled, Billions Lost (Sept. 2, 2025), https://unitedwedream.org/resources/the-cost-of-ending-daca-families-torn-futures-stalled-billions-lost/ ("[DACA recipients] are teachers in our classrooms, nurses in our hospitals, small business owners and restaurant workers on our main streets, and students across our campuses.").

7

An immediate removal of work authorization for these individuals would punch a hole in the State's social fabric and its available workforce and leave employers and communities scrambling to fill sudden vacancies. Without a smooth transition afforded by a stay, the near-immediate loss of thousands of workers would imperil businesses, reduce the availability of essential services, impact harvests and food growth (at a national level), and remove teachers from Texas public schools, colleges, and universities. For example, an estimated 4,300 DACA-recipients in Texas are health care workers.[9] The immediate removal of these individuals' work authorizations will not only adversely affect the health and safety of Texas residents; it will also exacerbate the State's noted health care workforce shortages without a plan to quickly replace these critical members of Texas.[10]

In short, the immediate impact of removing work authorization for DACA enrollees will not only imperil their lives, but it will deeply and negatively affect every Texas community. These immediate and immeasurable adverse effects to Texas's economic and social interests and the interests of Texas communities necessitate a delayed, measured approach to implementing the injunction.

> b) **An abrupt implementation of the injunction will overburden faith-based and community-based organizations' ability to serve their communities.**

Local churches, non-profit organizations, and other faith-based and community-based organizations, like the *Amici*, will bear the burden of losing DACA recipient members and

---

[9] Uriel García, *Texas DACA recipients ponder leaving the state amid push to revoke their work permits*, The Texas Tribune (Oct. 31, 2025), https://www.texastribune.org/2025/10/31/texas-daca-lawsuit-work-permit-immigrants-departures/.

[10] *See* Texas Higher Educ. Coordinating Board, Governor's Task Force on Health Care Workforce Shortages (last visited Nov. 14, 2025), https://www.highered.texas.gov/workforce-education-overview/governors-task-force-on-health-care-workforce-shortages/.

8

volunteers and also having to provide for these same individuals and their families directly impacted by the injunction absent a stay. If implemented rashly, the injunction will immediately force thousands of individuals and families into financial, housing, and medical instability and uncertainty. The burden of providing for these families will fall to community-based and faith-based organizations. These organizations will seek to provide these individuals and families with the food they can no longer afford, housing assistance, healthcare for which they are now denied access, and the other myriad of services that will be necessary to those affected by the injunction. The burden will expend these organizations' resources and impede their ability to provide access to food, housing, and healthcare to individuals who had need before the injunction. That is, again, the injunction will not just impact DACA recipients residing in Texas, but each and every community in the State.

Texas Catholic Churches, represented by *Amicus* the Texas Catholic Conference of Bishops, will be doubly impacted by an immediate implementation of the injunction. These churches offer faith-based and community services, such as pregnancy support services and food and clothing pantries, across Texas. These programs are largely operated by volunteers in the community, some of which are and have been DACA recipients. If these individuals are forced to immediately relocate, the Church's ability to provide these services to Texas citizens will be impacted. Additionally, these volunteers—who have fed and clothed the neediest Texans and supported Texas mothers and fathers during their most vulnerable moments—will not only be compelled to cease their participation in these programs, but may also, regrettably, become recipients of the Church's food, clothing, and housing assistance due to their resulting inability to work.

Additionally, the impact on nonprofit legal service providers in Texas would be swift and

substantial. *Amicus* CLINIC's network includes thirty-three Texas-based organizations that would face a sudden surge of urgent requests for legal consultations if thousands of their clients were to lose work authorization in a short period of time. These providers would be compelled to undertake rapid-response legal screenings to assess whether affected individuals may qualify for alternative forms of immigration relief such as family-based adjustment of status or humanitarian visas, work that is both time-consuming and resource-intensive. As a result, organizations would be forced to divert staff from ongoing programs to emergency triage, straining limited budgets and significantly reducing their capacity to serve. Accordingly, the injunction will not only affect DACA recipients, but also have a significant negative impact on communities, churches, and organizations statewide.

### 4. A Stayed Implementation Of Injunctive Relief Will Conserve Judicial And Governmental Resources

A stay would also save scarce judicial and governmental resources. For instance, a quick implementation of the injunction will likely result in numerous unlawful employment claims. On the other hand, if the injunction is stayed to allow a reasoned transition to a post-DACA Texas, the Court's resources will only be expended to the extent that Texas attempts to implement the injunction before the stay's expiration.

An immediate implementation of the injunction would be disruptive at the federal, state (not just Texas), and local levels. The implementation would require the United States Citizens & Immigration Services ("USCIS") to notify tens of thousands of DACA recipients of the revocation of their work permits in short order. Even if USCIS *could* promptly notify each of the thousands of the current DACA recipients in Texas, the piecemeal approach to notification will sow confusion amongst Texas employers who have lawfully employed these individuals for more than a decade. The confusion will undoubtedly result in incorrect termination decisions and inadvertent

10

unlawful employment claims, sapping the courts' resources. USCIS *may* be able to alleviate potential confusion through additional guidance to Texas employers, but this requires a tempered, restrained approach to implementing the injunction not currently envisioned by the State or Federal Government. Delaying the injunction will also free up USCIS resources to timely process these individuals' change of address requests as they move out of the State.

A delayed implementation will similarly benefit state licensing boards both in and out of Texas. As noted above, DACA recipients residing in Texas have applied for and received licenses to practice medicine, teach, and perform other professional tasks by the various professional boards of the State of Texas.[11] To set up their lives in other states, these individuals will need to apply for these same licenses in other states, forcing a volume of previously unforeseen coordination between the professional boards of the various states with Texas. Staying the injunction will allow times for these state boards to coordinate and communicate, allowing these individuals to be able to apply for jobs or start new businesses in the professions they trained for and have already practiced. Removing these individuals' work authorizations and requiring them to wait for new licensure in other states will cause additional and unnecessary economic hardships and significant challenges in acquiring housing and other necessities in the communities they choose to relocate in.

### B. Alternatively, The Court Could Phase In The Implementation Of Its Order

If the Court is disinclined to entirely stay the injunction, *Amici* urge the court to phase in the requirements rather than withdrawing DACA's protections all at once. If the Court were to opt for a phased-in approach, *Amici* recommend the following:

---

[11] *See, e.g.*, *Daca recipients in Texas await judge's ruling*, *supra* n. 2 (providing the example of a licensed cosmetologist who opened her own salon).

11

1. Prohibit USCIS from revoking these individuals' current work authorizations. Instead, the Court should allow the authorizations to continue until their natural expiration. This would allow individuals and families to accumulate the resources necessary to move and restart their lives with minimal disruption.

2. Prohibit Texas state licensing boards from withdrawing or revoking current licenses for reasons related to immigration status for DACA recipients currently residing and licensed in Texas. This would allow these individuals to more quickly apply for licensure in other states and ease their transition out of Texas.

3. Prohibit Texas from withdrawing driver's licenses for reasons related to immigration status for DACA recipients currently residing and licensed within Texas. Maintaining these licenses will make it easier for these individuals to lawfully move and travel to other states to seek work and rebuild their lives.

4. Protect these individuals' eligibility to seek renewal of their DACA enrollment, affording them the security and safety they and their families have enjoyed and relied on for the last thirteen years.

The Court's injunction will have an irrecoverable impact on the lives of DACA recipients who have resided in Texas for more than a decade. Phasing in the injunction, if not it is not entirely stayed, will provide these individuals with the opportunity to maintain the lives and career opportunities that they have spent their lives building outside of Texas. Without such relief, the injunction will immediately imperil these human lives.

### III. CONCLUSION

*Amici* thank the Court for the opportunity to detail the avoidable harms the injunction will cause if it is not stayed and implemented thoughtfully. Pursuant to the above, the Court should stay the effective date of the injunction for a period encompassing at least one DACA renewal

period for each individual currently residing in Texas to allow DACA-recipients, the State of Texas, and the Federal Government to prepare for the removal of this benefit. Alternatively, if the Court decides against a stay, the Court should consider phasing in the injunction to limit the harm caused by the injunction.

Date: November 20, 2025                    Respectfully submitted,

                                        By:    /s/ Michael J. Newton
                                                     Michael J. Newton (TX Bar No. 24003844)
                                                     (Attorney-in-Charge)
                                                     **ALSTON & BIRD LLP**
                                                     Chase Tower
                                                     2200 Ross Avenue, Suite 2300
                                                     Dallas, TX 75201
                                                     Telephone: (214) 922-3400
                                                     Facsimile: (214) 922-3899
                                                     mike.newton@alston.com

                                                     *Of counsel:*

                                                     Devon C. Beane*
                                                     **ALSTON & BIRD LLP**
                                                     227 West Monroe Street, Suite 3900
                                                     Chicago, IL 60606
                                                     Telephone: (312) 702-8700
                                                     devon.beane@alston.com
                                                     * *Motion to appear pro hac vice forthcoming*

                                                     Christopher J. Frisina*
                                                     **ALSTON & BIRD LLP**
                                                     950 F Street NW
                                                     Washington, DC 20004
                                                     Telephone: (202) 239-3300
                                                     christopher.frisina@alston.com
                                                     * *Motion to appear pro hac vice forthcoming*

                                                     *Counsel for Proposed Amicus Curiae the Texas Catholic Conference of Bishops and the Catholic Legal Immigration Network, Inc.*