# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 1:18-CV-00068 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| *Defendants*, | § | |
| | § | |
| *and* | § | |
| | § | |
| MARIA ROCHA, *et al.*; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| *Defendant-Intervenors*. | § | |

## DEFENDANT-INTERVENORS' REPLY TO THE PARTIES' SUPPLEMENTAL RESPONSE BRIEFS

**<u>TABLE OF CONTENTS</u>**

**Page**

STATEMENT OF THE NATURE & STAGE OF THE PROCEEDINGS ................................... 1

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.  This Court Should Reject Plaintiffs' Invitation to Ignore the Fifth Circuit and the Supreme Court ............................................................................................................................ 2

   A. The Mandate Rule and *Texas III* Foreclose Plaintiffs' Request for Nationwide Vacatur.............................................................................................................................. 2

   B. *CASA* and Plaintiffs' Previous Litigation Strategies Foreclose Plaintiffs' Request for Broad Declaratory Relief. ........................................................................................ 4

   C. Plaintiffs' Already-Rejected Claims Independently Fail on Their Merits. .......................... 7

II.  Plaintiffs Fail to Justify Why This Court's Injunction Should Reach Beyond Texas. .............. 8

III. This Court Should Maintain Its Stay And Reject Plaintiffs' Request to Delay The Fifth Circuit's Modification of the Injunction. ................................................................................ 9

CONCLUSION....................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Columbia/HCA of New Orleans,*
    2025 WL 1937294 (5th Cir. July 15, 2025)................................................................4

*Ballenger v. Mobil Oil Corp.,*
    138 F. App'x 615 (5th Cir. 2005) ..................................................................2, 3

*Bethesda Lutheran Homes & Servs., Inc. v. Leean,*
    122 F.3d 443 (7th Cir. 1997) ........................................................................8

*Cornerstone Credit Union League v. Consumer Fin. Prot. Bureau,*
    791 F. Supp. 3d 720 (E.D. Tex. 2025)..............................................................3

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020)................................................................................7, 11

*Janvey v. GMAG, L.L.C.,*
    2022 WL 4102067 (5th Cir. Sept. 7, 2022) ......................................................2

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venezuela,*
    850 F. App'x 218 (5th Cir. 2021) ....................................................................4

*Texas v. United States,*
    126 F.4th 392 (5th Cir. 2025) .............................................................. *passim*

*Texas v. United States,*
    549 F. Supp. 3d 572 (S.D. Tex. 2021) ............................................................3

*Town of Chester v. Laroe Estates, Inc.,*
    581 U.S. 433 (2017)....................................................................................5

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025)..........................................................................1, 4, 5, 6

*United States v. Texas,*
    599 U.S. 670 (2023)....................................................................................7

*Wells v. Johnson,*
    150 F.4th 289 (4th Cir. 2025) ........................................................................5

**Statutes**

8 U.S.C. § 1182(d)(5)(A) ................................................................................................9

## STATEMENT OF THE NATURE & STAGE OF THE PROCEEDINGS

Pursuant to the Court's scheduling orders, *see* ECF No. 760, 793, Defendant-Intervenors Maria Rocha, *et al.* ("Defendant-Intervenors"), respectfully submit this Reply to the supplemental response briefs filed on November 10, 2025, by Plaintiffs, ECF No. 800 ("Pl. Resp."); the Federal Defendants, ECF No. 801 ("DOJ Resp."); and Defendant-Intervenor State of New Jersey, ECF No. 799 ("NJ Resp."), and in further support of the supplemental response brief filed by Defendant-Intervenors, ECF No. 798 ("DACA Recipients Resp.").

## INTRODUCTION

Although Plaintiffs accuse Defendant-Intervenors of "attempt[ing] to relitigate matters already decided in prior proceedings," Pl. Resp. at 11, it is Plaintiffs who pretend that the Fifth Circuit has not already determined the appropriate scope of relief in this case. In *Texas v. United States*, 126 F.4th 392, 422 (5th Cir. 2025) ("*Texas III*"), the Fifth Circuit "limit[ed] injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas, and require[d] such relief to heed DACA's severability provision," while also "preserv[ing] the stay as to existing [DACA] recipients." Despite those clear holdings, Plaintiffs encourage this Court to ignore the Fifth Circuit. Plaintiffs suggest that, because the Fifth Circuit "impose[d] no restrictions on the matters that the district court, in its wisdom, may address on remand," Pl. Resp. at 2 (cleaned up), the Fifth Circuit must have somehow intended for this Court to revisit the court of appeals' remedial holdings and granted it license to disregard the Supreme Court's subsequent controlling decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). While this Court does have discretion in how to implement the Fifth Circuit's holding and craft an appropriate remedy, it may not and should not accept Plaintiffs' invitation to ignore and override what is now binding precedent.

Indeed, the Fifth Circuit's clear remedial instructions foreclose each of Plaintiffs' arguments. By severing DACA's benefits provisions from forbearance, the Fifth Circuit held that

1

forbearance alone is lawful.  By narrowing the injunction and vacatur to Texas, the Fifth Circuit held that any remedy outside of Texas would be broader than necessary to provide complete relief to Texas, the only plaintiff with standing to sue.  And by preserving the stay, the Fifth Circuit reaffirmed the importance of the "immense reliance interests that DACA has created" for recipients, their families, and the communities where they live and work.  *Texas III*, 126 F.4th at 422.  Under the mandate rule, Plaintiffs cannot relitigate any of those issues, particularly as the Fifth Circuit already considered and rejected Plaintiffs' arguments for nationwide relief.  Yet, in their Response, Plaintiffs ask this Court to lift the stay on the Court's previously issued nationwide injunction, *see* Pl. Resp. at 14-16, which would effectively end DACA in all forms for everyone, everywhere, in direct contravention of the Fifth Circuit's decision, and in disregard for the reliance interests of DACA recipients and their families and communities.  This Court must reject Plaintiffs' invitation to violate the limited relief allowed by the Fifth Circuit's mandate.

## ARGUMENT

I.  **THIS COURT SHOULD REJECT PLAINTIFFS' INVITATION TO IGNORE THE FIFTH CIRCUIT AND THE SUPREME COURT**

A.  **The Mandate Rule and *Texas III* Foreclose Plaintiffs' Request for Nationwide Vacatur.**

Although Plaintiffs try to escape *Texas III*, *see* Pl. Resp. at 1-12, even Plaintiffs' cited authorities make clear that this Court's "discretion is constrained [ ] by [the Fifth Circuit's] mandate, which [this Court] must—of course—obey to a tee."  *Janvey v. GMAG, L.L.C.*, 2022 WL 4102067, at *3 (5th Cir. Sept. 7, 2022) (cited in Pl. Resp. at 4).  If an issue was "expressly *or impliedly* disposed of on appeal," the mandate rule requires this Court to adhere to "both the letter *and the spirit*" of the Fifth Circuit's ruling.  *Ballenger v. Mobil Oil Corp.*, 138 F. App'x 615, 618 (5th Cir. 2005) (emphasis added) (cited in Pl. Resp. at 4).  Plaintiffs attempt to avoid that rule by insisting that *Texas III* did not decide whether forbearance alone violates the Take Care Clause or

the Administrate Procedure Act ("APA") or whether the Final Rule's work authorization provisions are arbitrary and capricious.  *See* Pl. Resp. at 4-5.  Thus, according to Plaintiffs, this Court can still vacate the Final Rule nationwide—even though the Fifth Circuit "limit[ed] . . . the effectiveness of the vacatur of the Final Rule[] to Texas."  *Texas III*, 126 F.4th at 422.  Plaintiffs are plainly wrong.

To start, the Fifth Circuit already held that forbearance is lawful.[1]  The *Texas III* decision severed the Final Rule's benefits provisions from forbearance, and held that forbearance could "function sensibly in the absence of the benefits provisions."  *Id.* at 420 (cleaned up).  Implicit in that holding was the idea that a forbearance-only Rule would not violate the APA or the Take Care Clause; otherwise, the Fifth Circuit never would have severed it, or determined it could "function sensibly."  *Id.*; *see also* DACA Recipients Resp. at 11-12 (collecting cases); NJ Resp. at 8-9; DOJ Resp. at 7-8; *cf. Cornerstone Credit Union League v. Consumer Fin. Prot. Bureau*, 791 F. Supp. 3d 720, 742 (E.D. Tex. 2025) (cited in Pl. Resp. at 6) ("the Court need not engage in severability analysis when it has concluded that each of [a] Rule's substantive provisions is unlawful").  Because the mandate rule applies to issues actually or impliedly decided, *see, e.g.*, *Ballenger*, 138 F. App'x at 618, this Court is bound by the Fifth Circuit's implicit holding that a forbearance-only Rule is lawful.  Applying that principle, this Court cannot vacate forbearance alone—in Texas or anywhere else.

Nor are Plaintiffs' supposedly "unaddressed" Take Care Clause and arbitrary and capricious arguments new or any reason to second guess the Fifth Circuit's binding decision.  In

---

[1] Plaintiffs selectively quote (at 5) this Court's 2021 decision to suggest that this Court previously reached a contrary holding.  But the words Plaintiffs omit from their quotation (without indicating their elision) are critical:  This Court held that an "award of deferred action, ***lawful presence, work authorization, and the other benefits attendant to DACA status*** 'is not a subject for prosecutorial discretion.'" *Texas v. United States*, 549 F. Supp. 3d 572, 606 (S.D. Tex. 2021) ("*Texas I*") (emphasis added to words elided from Plaintiffs' Response).  This Court has never held that forbearance standing alone is unlawful.  In fact, this Court specifically highlighted "a policy of forbearance without the award of benefits" as a potential alternative for DHS on remand.  *Id.* at 622.

fact, Plaintiffs devoted an entire section of their Fifth Circuit brief in *Texas III* to those issues, *see Texas v. United States*, No. 23-40653, Br. for Pls.-Appellees at 41-44, and they reminded the Fifth Circuit that it could affirm this Court's judgment and grant of nationwide relief for any reason in the record, *see id.* at 41-42.[2]  Plaintiffs also raised their Take Care Clause argument with the Fifth Circuit in *Texas II*.  *See Texas v. United States*, No. 21-40680, Br. for Appellees at 47-48.  If the Fifth Circuit believed that the entire Final Rule should be vacated nationwide or that DACA's benefits provisions should be vacated outside of Texas, it could have accepted Plaintiffs' arguments.  Because it refused to do so, the mandate rule prevents this Court from accepting them now.  *See, e.g.*, *Adams v. Columbia/HCA of New Orleans*, 2025 WL 1937294, at *4 (5th Cir. July 15, 2025) (mandate rule barred party from relitigating issues briefed in prior appeal even though Fifth Circuit "did not address" them; Fifth Circuit's silence "suggest[ed] that both arguments were rejected"); *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venezuela*, 850 F. App'x 218, 226 (5th Cir. 2021) (mandate rule prevented party from relitigating severability because "the first panel opinion implicitly decided" the issue by saying "nothing about" it, despite party "ask[ing] the panel to address severability multiple times in its briefs").

    **B.**    ***CASA* and Plaintiffs' Previous Litigation Strategies Foreclose Plaintiffs' Request for Broad Declaratory Relief.**

In *CASA*, the Supreme Court held that, because of longstanding "party-specific principles that permeate our understanding of equity," courts cannot issue remedies "broader than necessary to provide complete relief to each plaintiff with standing to sue."  606 U.S. at 844, 862.  While the Supreme Court focused on the scope of an injunction in *CASA*, the Court emphasized that those

---

[2] To be sure, Plaintiffs' Take Care Clause and arbitrary and capricious arguments in *Texas III* addressed the entire Final Rule; Plaintiffs **never** argued in the Fifth Circuit that forbearance alone would be unlawful.  *See* NJ Resp. at 5-8.  Thus, Plaintiffs' attempt to challenge forbearance alone fails for the opposite reason that their Take Care Clause and arbitrary and capricious arguments fail:  Plaintiffs forfeited their opportunity to challenge forbearance alone by declining to do so in *Texas III*.  *See id.*

"party-specific principles" apply equally to injunctive *and* declaratory relief. *Id.* at 844 ("Neither declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs.") (cleaned up). *CASA* thus directly controls the available scope of declaratory relief. Nevertheless, despite its clear application (and this Court's initial order requesting input on the impact of *CASA*, *see* Dkt. 760 at 2), Plaintiffs all but ignore it. *See* Pl. Resp. at 8 n.3 (Plaintiffs' only references to *CASA*).

Rather than addressing *CASA*, Plaintiffs repeat (at 8-9) the obvious: that declaratory judgments are not identical to injunctions. But Plaintiffs still cite no case holding that a declaratory judgment allows a plaintiff to evade the requirements of Article III. Nor can they do so: A plaintiff must have standing for each form of relief it seeks, *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017), and a "declaration is not a get-out-of-standing-free card." *Wells v. Johnson*, 150 F.4th 289, 301 (4th Cir. 2025). Thus, because none of the Plaintiffs other than Texas has even attempted to demonstrate standing, none of the Plaintiffs other than Texas is eligible for declaratory relief in their favor, *as the Fifth Circuit has already determined*. *See Texas III*, 126 F.4th at 405.

The geographical narrowness of the available declaratory relief in this case is a direct result of Plaintiffs' litigation strategies. *See, e.g.*, DACA Recipients Br. (Dkt. 783) at 5-8 (recounting Plaintiffs' choices); DOJ Br. (Dkt. 781) at 2-3 (similar). Plaintiffs now strive mightily to escape the consequences of their previous choices. They baldly assert that "the record already contains sufficient evidence of harm to States other than Texas," including the "existence of ongoing and future harm to each Plaintiff State." Pl. Resp. at 10-12. But this Court and the Fifth Circuit have repeatedly held the opposite, recognizing that no state other than Texas even attempted to prove standing. *See, e.g.*, *Texas III*, 126 F.4th at 405 ("As before, Texas is the only state that has

attempted to demonstrate standing.") (cleaned up); DACA Recipients Resp. at 5 n.3 (collecting citations).  Thus, it is Plaintiffs, not Defendant-Intervenors, who are "attempt[ing] to relitigate matters already decided in prior proceedings."  Pl. Resp. at 11.

Nor can Plaintiffs brush away the consequences their previous choices by accusing the Fifth Circuit in *Texas III* of "pull[ing] a surprise switcheroo" and rejecting nationwide relief.  Pl. Resp. at 10 (cleaned up).  There was nothing surprising about the Fifth Circuit's decision.  *CASA* emphasizes that "the universal injunction was conspicuously nonexistent for most of our Nation's history" and that its continued absence in the 20th century "renders any claim of historical pedigree still more implausible."  606 U.S. at 845-46.  This Court questioned the propriety of a nationwide injunction in this case as early as August 2018.  *See* Dkt. 319 at 14-15.  The Federal Defendants and Defendant-Intervenors have also informed Plaintiffs of the unavailability of nationwide relief and need for each State to demonstrate standing since at least 2019.  *See, e.g.*, Dkt. 399 at 40-41.  And the Fifth Circuit's rejection of Plaintiffs' arguments was hardly a sea-change in the law; it cited the same well-established principles and precedent that Defendant-Intervenors had been citing for years.  *Compare Texas III*, 126 F.4th at 420-21 (citing *Gill v. Whitford*, 585 U.S. 48 (2018) and *Califano v. Yamasaki*, 442 U.S. 682 (1979)) *with* Dkt. 288 at 10 (citing *Gill*), Dkt. 642 at 41, 44 (citing *Gill*); Dkt. 568 at 20 (citing *Califano*).  The non-Texas Plaintiffs consciously chose for years, in the face of their awareness of this precedent, not to even attempt to prove any harm to their individual States; they must now live with those litigation choices.  While Plaintiffs "request that they be allowed to introduce additional evidence to obtain injunctive relief" "if the Court is not receptive to the declaratory-relief route," Pl. Resp. at 8, it is too late now to undo their previous choices.  Because no state other than Texas has ever even attempted to demonstrate injury, this Court's relief—in any form—must, as the Fifth Circuit explicitly held, be limited to Texas.

### C.    Plaintiffs' Already-Rejected Claims Independently Fail on Their Merits.

Even if the Fifth Circuit had not already held that a forbearance-only policy is entirely lawful and that DHS can implement the Rule's benefits provisions everywhere but Texas, Plaintiffs' APA and Take Care Clause arguments would still fail on their merits.  Plaintiffs argue that the Rule's forbearance provisions violate the INA and the Take Care Clause because they grant "classwide" relief.  Pl. Resp. at 5.  But the Final Rule "does not itself authorize non-enforcement as to any individual"; instead, it merely establishes enforcement priorities while still "requir[ing] a separate favorable exercise of enforcement discretion."  DOJ Resp. at 8-9.  As the Supreme Court has explained, that enforcement prioritization is firmly within DHS's discretion. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 27-30 (2020).  Nor does that prioritization violate the Take Care Clause, which authorizes the executive branch to set enforcement priorities.  *See United States v. Texas*, 599 U.S. 670, 678-81 (2023); *see also* NJ Resp. at 11-12 (making similar argument).  And even if the Rule did somehow violate the Take Care Clause, the Take Care Clause does not create a private right of action, and Plaintiffs lack standing to enforce it.  *See* DACA Recipients Resp. at 13-15 (collecting cases).  Plaintiffs' argument (at 5) that the Final Rule's benefits provisions are arbitrary and capricious is equally misguided—and also irrelevant.  As Defendant-Intervenors have explained, DHS adequately justified the Final Rule's benefits provisions, easily satisfying the deferential standard of review for an arbitrary-and-capricious claim.  *See* Dkt. 642 at 37-40.  And even if the Court disagrees, that would not affect Plaintiffs' entitlement to relief:  The Fifth Circuit already limited relief with respect to the Final Rule's work authorization and lawful presence provisions to Texas.  *See Texas III*, 126 F.4th at 422.  That ruling with respect to the scope of relief was independent of the legal basis for ruling the benefits provisions unlawful.

II.    **PLAINTIFFS FAIL TO JUSTIFY WHY THIS COURT'S INJUNCTION SHOULD REACH BEYOND TEXAS.**

Plaintiffs again ask the Court to enter an injunction that stretches far beyond Texas and the Final Rule.  But Plaintiffs cannot justify their requests.

*First*, Defendant-Intervenors and Federal Defendants agree that this Court's injunction should apply only to Texas residents, not DACA recipients who reside in other states but work in or travel to Texas.  Plaintiffs argue otherwise only by asserting without evidence or citation that "those whose employment regularly brings them within [Texas's] borders" necessarily "consum[e] [ ] in-state benefits" and cause Texas "pocketbook injury."  Pl. Resp. at 13.  But Plaintiffs fail to identify any "pocketbook" costs imposed by non-residents.  *See, e.g.*, DACA Recipients Resp. at 16 (Texas need not pay for emergency Medicaid provided to nonresidents); DOJ Resp. at 4 (same); *see also Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 122 F.3d 443, 447 (7th Cir. 1997) (Medicaid "does not require a state that participates in it to provide assistance under it to nonresidents.").  Plaintiffs' attempt to extend the Fifth Circuit's ruling to non-residents of Texas also exceeds DHS's functional capabilities.  *See* DOJ Resp. at 4-5.[3]  Nor do Plaintiffs explain how to determine at what point activities in Texas would trigger their rule—such as driving from one state to another or changing planes in Dallas while traveling for work.  DACA Recipients Resp. at 16.  Plaintiffs' proposal is thus not only unsupported, it is unworkable.

*Second*, although Plaintiffs assert that this Court's injunction should "impel [Current DACA Recipients] to leave" Texas, Pl. Resp. at 13 (cleaned up), Defendant-Intervenors and Federal Defendants agree that preventing DHS from enforcing the Rule's work authorization and lawful presence provisions in Texas provides complete relief for Texas's injury.  Plaintiffs'

---

[3] Plaintiffs fault the other parties for not "submit[ting] concrete suggestions for a modified injunction."  Pl. Resp. at 1. But as Federal Defendants' brief shows, "operational detail[s] should be left to Federal Defendants."  DOJ Resp. at 5.

insistence on further relief seeks in effect to undo even the Final Rule's forbearance provisions, which the Fifth Circuit upheld as lawful. *See Texas III*, 126 F.4th at 420 ("[W]e cannot conclude that a policy of forbearance without the other aspects of DACA would be superfluous."). Under *Texas III*, this Court should not and cannot apply any additional restrictions, including enjoining non-parties. *See id.* at 421 ("the injury that Texas asserts . . . can be redressed by a more limited injunction").

**Third**, Defendant-Intervenors and Federal Defendants agree that any ineligibility for work authorization and lawful presence based on Texas residency must apply only prospectively. *See* DOJ Resp. at 3; DACA Recipients Resp. at 18 n.5. Nor should any injunction require DHS to calculate, and exclude for the purposes of benefits, time spent in Texas by DACA recipients.

**Fourth**, this Court's injunction should not address advance parole. Advance parole is not "a troubling aspect of DACA," Pl. Resp. at 12 (cleaned up), because it is not an aspect of DACA at all. Congress created advance parole, *see* 8 U.S.C. § 1182(d)(5)(A) (allowing DHS to "parole into the United States" "**any** [individual] applying for admission") (emphasis added), and nothing in *Texas III* or this Court's previous injunctions disturbed it. This Court should not do so now.

In short, enjoining the Final Rule's work authorization and lawful presence provisions for Texas residents provides Texas complete relief. Under *Texas III* and *CASA*, this Court's injunction can go no farther.

## III.    THIS COURT SHOULD MAINTAIN ITS STAY AND REJECT PLAINTIFFS' REQUEST TO DELAY THE FIFTH CIRCUIT'S MODIFICATION OF THE INJUNCTION.

Plaintiffs conclude their Response with two troublingly discordant requests. First, Plaintiffs argue that, because the Fifth Circuit has now conclusively ruled that DACA is unlawful, this Court should lift its stay. *See* Pl. Resp. at 14-16. The public interest in DHS immediately doing so, Plaintiffs say, somehow outweighs DACA recipients' intense reliance interests. *See id.*

at 15-16. Second, Plaintiffs argue that, to avoid causing Plaintiffs to "suffer[] additional fiscal injuries," this Court should not modify its injunction until it "render[s] final judgment on all other pending claims," *id.* at 16, even though the Fifth Circuit has already explicitly ordered the injunction to be modified. The combined effect of Plaintiffs' requests would be to end DACA in all forms for everyone, everywhere, in direct contravention of the binding mandate in *Texas III* (as confirmed by *CASA*). The Court should reject Plaintiffs' blatant disregard for the Fifth Circuit, and for the reliance interests of DACA recipients, their families, and the communities where they live and work.

The stay should remain in place, including in Texas. The weighty reliance interests of the approximately 90,000 DACA recipients in Texas who have only ever known the United States as home have only become stronger since the outset of this litigation in 2018. Those DACA recipients have strengthened their communities by running businesses that employ U.S. citizens and lawful workers, and they fill vitally important positions such as EMTs, teachers, and medical doctors. Dkt. 400-1, Ex. 4 ¶ 32; *see also* Dkt. 504-2, Ex. 17 ¶ 3; Ex. 18 ¶ 2; Ex. 19 ¶¶ 5-6; Ex. 20 ¶ 3; *cf.* Dkt. 504-2, Ex. 10. DACA has also enabled hundreds of thousands of young people, including in Texas, "to enroll in colleges and universities, complete their education, start businesses that help improve our economy, and give back to our communities as teachers, medical professionals, engineers, and entrepreneurs." *See* Dkt. 504-2, Ex. 5 ¶ 43 (quoting Letter from Secretary Jeh Charles Johnson to Rep. Judy Chu, Dec. 30, 2016). Immediately lifting the stay (or doing so after a mere 90- or 180-day grace period) and ending work authorization for these Texas DACA recipients would be disruptive not only for DACA recipients and their families, but also for the companies, schools, hospitals and other organizations that employ them. *See* Dkt. 504-2, Ex. 10. Plaintiffs entirely disregard the reliance interests of Texas's employers and their customers,

patients, students, and communities.

As they have throughout this litigation, Plaintiffs assert that those reliance interests are not real, or do not matter. *See* Pl. Resp. at 14-16. Plaintiffs suggest, for example, that state-specific injunctive relief need not be delayed by more than 90 or 180 days because "the burdens flowing from domestic relocation . . . are relatively mild." *Id.* at 15. But Plaintiffs distort reality: No one, including DACA recipients, can leave their homes, their families, their schools, their doctors, their jobs, and their communities at the drop of a hat, nor can Texas's employers immediately fill the significant hole that will be left in their workforces if that occurs. As the Supreme Court instructed in *Regents*, 591 U.S. at 31, as the Fifth Circuit instructed in *Texas III*, 126 F.4th at 421-22, and as this Court has done throughout the litigation, this Court should continue to respect DACA recipients' reliance interests and reject Plaintiffs' requests to ignore them. The stay should remain.

The Court should also reject Plaintiffs' demand to "defer[] the modification of injunctive relief until final judgment is entered." Pl. Resp. at 16. In *Texas III*, the Fifth Circuit spoke clearly. It "MODIFIED" this Court's injunction in part, limiting it to Texas and to the Final Rule's work authorization and lawful presence provisions, and it remanded for this Court to enact its mandate. 126 F.4th at 422. Plaintiffs encourage this Court to ignore the Fifth Circuit merely because this Court has not yet ruled on Plaintiffs' other supposedly "pending" theories for nationwide relief. Pl. Resp. at 16. But if there is a delay in entering final judgment, that is the fault of Plaintiffs, whose supplemental filings repackage and resurrect already-rejected arguments. Current DACA recipients in Texas, and current and future DACA recipients in every other state, should not suffer because of Plaintiffs' litigation choices.

**CONCLUSION**

Defendant-Intervenors respectfully request that the Court reject Plaintiffs' attempts to disregard the Fifth Circuit's legally binding ruling and mandate. To the contrary, this Court should

follow *Texas III* and (1) limit all forms of relief to Texas; (2) effectuate DACA's severability provision and enjoin and vacate only the work authorization and lawful presence provisions of the Final Rule (and only in Texas); (3) maintain the stay for DACA recipients in Texas who received their initial DACA grants prior to July 16, 2021; and (4) implement the Fifth Circuit's modification of the injunction to allow DHS to carry out DACA's forbearance provisions in Texas and its forbearance ***and*** benefits provisions everywhere else.

Dated:  November 24, 2025

Respectfully Submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**

By:  /s/ Nina Perales
Nina Perales (Tex. Bar No. 24005046);
(SD of Tex. Bar No. 21127)
110 Broadway, Suite 300
San Antonio, TX 78205
Phone:  (210) 224-5476
Email: NPerales@maldef.org
*Attorney-in-Charge*

**ROPES & GRAY LLP**
Douglas H. Hallward-Driemeier
2099 Pennsylvania Ave NW
Washington, DC  20006-6807
(202) 508-4600
(202) 508-4776 (direct dial)
Douglas.Hallward-Driemeier@ropesgray.com
*(Admitted pro hac vice)*

**GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.**
Carlos Moctezuma García
(Tex. Bar No. 24065265)
(SD of Tex. Bar No. 1081768)
P.O. Box 4545
McAllen, TX  78502
Phone:  (956) 630-3889
Facsimile:  (956) 630-3899
Email:  cgarcia@garciagarcialaw.com

*Attorneys for Defendant-Intervenors*

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, hereby certify that, on the 24th day of November, 2025, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

<u>*/s/* Nina Perales</u>

Nina Perales