**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-68 |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | Hon. Andrew S. Hanen |
| | ) | |
| Defendants, | ) | |
| | ) | |
| KARLA PEREZ, *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors, | ) | |
| and | ) | |
| | ) | |
| STATE OF NEW JERSEY, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

**DEFENDANT-INTERVENOR STATE OF NEW JERSEY'S REPLY TO**
**PLAINTIFF STATES' SUPPLEMENTAL RESPONSE BRIEF**
**PURSUANT TO THE COURT'S JULY 22, 2025 ORDER**

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    I.    PLAINTIFFS ARE NOT ENTITLED TO ANY RELIEF WITH RESPECT TO
    FORBEARANCE. ................................................................................................................ 2

    II.    PLAINTIFFS ARE NOT ENTITLED TO NATIONWIDE RELIEF. ............................... 6

    III.    PLAINTIFFS BEYOND TEXAS ARE NOT ENTITLED TO DECLARATORY
    RELIEF, LET ALONE THEIR PROPOSED DECLARATORY RELIEF............................ 11

    IV.    THE COURT SHOULD REJECT PLAINTIFFS' ARGUMENTS CONCERNING THE
    STAY PENDING APPEAL. ............................................................................................... 14

CONCLUSION......................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Barrett v. Thomas*,
  809 F.2d 1151 (5th Cir. 1987) ................................................................... 3

*California v. Texas*,
  593 U.S. 659 (2021) ................................................................................... 13

*Cornerstone Credit Union League v. CFPB*,
  791 F. Supp. 3d 720 (E.D. Tex. 2025) ....................................................... 4

*Crowe v. Smith*,
  261 F.3d 558 (5th Cir. 2001) ............................................................... 6, 16

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
  591 U.S. 1 (2020) .................................................................................... 2, 5

*Fisher v. Univ. of Tex. at Austin*,
  758 F.3d 633 (5th Cir. 2014) ..................................................................... 2

*Franklin v. Regions Bank*,
  125 F.4th 613 (5th Cir. 2025) .................................................................... 6

*Gene & Gene, LLC v. BioPay, LLC*,
  624 F.3d 698 (5th Cir. 2010) ..................................................................... 1

*Gill v. Whitford*,
  585 U.S. 48 (2018) .................................................................................... 13

*MD/DC/DE Broads. Ass'n v. FCC*,
  236 F.3d 13 (D.C. Cir. 2001) ..................................................................... 4

*Med. Ctr. Pharmacy v. Holder*,
  634 F.3d 830 (5th Cir. 2011) ......................................................... 2, 3, 11

*Nkihtaqmikon v. Impson*,
  585 F.3d 495 (1st Cir. 2009) ..................................................................... 1

*Perez v. Region 20 Educ. Serv. Ctr.*,
  307 F.3d 318 (5th Cir. 2002) ................................................................... 11

*Stringer v. Whitley*,
  942 F.3d 715 (5th Cir. 2019) ............................................................. 12, 13

*Texas v. United States (DACA CA5 2022)*,
  50 F.4th 498 (5th Cir. 2022) ............................................... 4, 5, 10, 15

*Texas v. United States (DACA CA5 2025)*,
  126 F.4th 392 (5th Cir. 2025) ................................. 4, 5, 6, 7, 8, 9, 11, 12, 14, 15, 16

*Texas v. United States* (*DACA D. Ct. 2018)*,
  328 F. Supp. 3d 662 (S.D. Tex. 2018) .................................................. 4, 15

*Texas v. United States (DACA D.Ct. 2021)*,
  549 F. Supp. 3d 572 (S.D. Tex. 2021) ............................................. 4, 5, 15

*Texas v. United States (DACA D.Ct. 2023)*,
  691 F. Supp. 3d 763 (S.D. Tex. 2023) .................................................. 4, 15

*United States v. Becerra*,
  155 F.3d 740 (5th Cir. 1998) ......................................................... 1, 8, 9, 10

*United States v. Kelley*,
  40 F.4th 276 (5th Cir. 2022) ................................................................... 11

*Waller v. Hanlon*,
  922 F.3d 590 (5th Cir. 2019) ............................................................. 12, 13

*Young v. Grand Canyon Univ., Inc.*,
  57 F.4th 861 (11th Cir. 2023) ....................................................... 1, 8, 10

## INTRODUCTION

Plaintiffs' second brief arguing for a nationwide termination of DACA fares no better than its first because it runs into the same fundamental problem: it asks this Court to grant relief that is flatly contrary to the Fifth Circuit's 2025 decision and mandate. The Fifth Circuit made clear (1) that the DACA Final Rule's forbearance provisions must not be vacated because they could stand separate from the unlawful portions of the DACA Final Rule, and (2) that any relief as to the DACA Final Rule, including the effectiveness of vacatur, could extend only to Texas, the only State to show harm. Yet Plaintiffs ask this Court to issue an order that would contravene each of these holdings, requesting vacatur of the DACA Final Rule's forbearance provisions and another nationwide termination of the entire DACA Final Rule. This unfortunately is not the first time that dissatisfied litigants have sought relief on remand that is contrary to an appellate mandate. But courts repeatedly reject such invitations, recognizing that in our judicial system, district courts are bound by appellate mandates, and unhappy litigants must take their complaints with a panel decision to the en banc court or the Supreme Court instead. *See, e.g.*, *Gene & Gene, LLC v. BioPay, LLC*, 624 F.3d 698, 703-04 (5th Cir. 2010); *United States v. Becerra*, 155 F.3d 740, 753 n.15 (5th Cir. 1998); *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 878 (11th Cir. 2023); *Nkihtaqmikon v. Impson*, 585 F.3d 495, 498 (1st Cir. 2009). That is all this Court needs to say to resolve Plaintiffs' second bite at the nationwide apple, and to instead proceed to the true task at hand—addressing the appropriate next steps in Texas alone.

## ARGUMENT

This Court should reject each of Plaintiffs' four arguments as inconsistent with the Fifth Circuit's decision. First, it should reject Plaintiffs' effort to circumvent the Fifth Circuit's mandate by asking this Court to review a challenge to the DACA Final Rule's forbearance provisions.

1

Second, even if Plaintiffs can challenge forbearance now, this Court should deny their demand for nationwide relief. Third, this Court should reject Plaintiffs' separate request for declaratory relief for the eight States the Fifth Circuit found did not establish Article III standing. Fourth, this Court should deny Plaintiffs' arguments as to the propriety of a further stay pending appeal.

## I.    PLAINTIFFS ARE NOT ENTITLED TO ANY RELIEF WITH RESPECT TO FORBEARANCE.

In its Response Brief, Dkt. 799 at 5-12, New Jersey identified three independent reasons why this Court cannot consider Plaintiffs' challenge to the lawfulness of the DACA Final Rule's forbearance provisions: (1) Plaintiffs forfeited this challenge on appeal; (2) the Fifth Circuit necessarily decided forbearance is lawful; and (3) forbearance alone is lawful. First, Plaintiffs forfeited their challenge to the lawfulness of DACA's forbearance provisions by failing to present it to the Fifth Circuit in the most recent appeal, when the lawfulness of forbearance came up in addressing whether the forbearance provisions should be preserved even if DACA's benefits provisions are unlawful. *See Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011); Dkt. 799 at 5-8. Second, by holding that the DACA Final Rule's forbearance provisions could be severed from the provisions the Fifth Circuit deemed unlawful, the Fifth Circuit necessarily decided that the forbearance provisions *are* lawful, *see* Dkt. 799 at 8-9, and "the mandate rule ... forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 639-40 (5th Cir. 2014), *aff'd*, 579 U.S. 365 (2016) (citation omitted). Finally, the Fifth Circuit was correct: forbearance from removal falls within the Department of Homeland Security's (DHS) prosecutorial discretion and is lawful. *See Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 28 (2020); Dkt. 799 at 10-12. Nothing in Plaintiffs' opposition overcomes these flaws, each of which is fatal to their argument.

2

Begin with the first problem: forfeiture. Plaintiffs' responsive brief repeatedly argues that they "timely raised" their challenge to the DACA Final Rule's forbearance provisions by pressing it before *this* Court. *See* Dkt. 800 at 3-5 (discussing their challenge to forbearance in their 2023 summary judgment briefing before this Court). But that misunderstands the problem: although Plaintiffs may have included a challenge to forbearance before this Court, Plaintiffs failed to press it to the Fifth Circuit in the most recent appeal, when the issue was squarely put to the panel. Indeed, before the Fifth Circuit, the Federal Government sought to sever the forbearance provisions on the specific basis that forbearance was lawful and that it could stand independently of the benefits provisions. *See Texas v. United States*, No. 23-40653, Dkt. 66 (U.S. Opening Br.) at 45. Although Plaintiffs disputed whether it was practicable to "sever[] any part of DACA from the rest" of the DACA Final Rule and thus have the forbearance provisions operate alone, Plaintiffs specifically chose not to dispute that forbearance alone would still be *lawful*. See *Texas v. United States*, No. 23-40653, Dkt. 127 (Pls. Response Br.) at 46. That is forfeiture, as New Jersey's Response Brief shows. *See* Dkt. 799 at 6-8. Said differently, while "[a] district court is not precluded from acting on a matter neither before nor acted upon by the appeals court," *Barrett v. Thomas*, 809 F.2d 1151, 1154 (5th Cir. 1987), it cannot consider arguments that were intertwined with the appeal but nevertheless "not raised on appeal"—since the latter has been forfeited under blackletter principles, *Holder*, 634 F.3d at 834. In short, that Plaintiffs believe they "timely raised" forbearance in the summary judgment briefing fails to overcome the true problem—forfeiture on appeal, when the legality of forbearance arrived to the Fifth Circuit inextricably intertwined with the severability dispute.

Second, Plaintiffs err again in claiming that forbearance was "not considered" by the Fifth Circuit, Dkt. 800 at 3—to the contrary, the Fifth Circuit necessarily considered and decided that

3

very issue as an integral component of its severability holding. *See* Dkt. 799 at 8-9. As explained

just above, the Federal Government presented the lawfulness of DACA's forbearance provisions

to the Fifth Circuit when it urged the appellate panel to sever those provisions specifically because

they are lawful and stand apart from the benefits provisions. *Texas v. United States*, No. 23-40653,

Dkt. 66 (U.S. Opening Br.) at 45. In assessing whether to sever the forbearance provisions, the

Fifth Circuit necessarily decided whether those provisions standing alone were lawful. After all,

the Fifth Circuit itself explained that severance requires separating "'the offending portions of a

regulation'" from the lawful parts, and ensuring that only the former are "'stricken.'" *Texas v.*

*United States (DACA CA5 2025)*, 126 F.4th 392, 419 (5th Cir. 2025) (quoting *MD/DC/DE Broads.*

*Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) (observing that severability analysis requires

evaluating "the balance of the rule" after it is "shorn of its unconstitutional aspects")).[1] Other

courts have likewise recognized that "the Court need not engage in severability analysis" when

"each of the [rule's] substantive provisions is unlawful." *E.g.*, *Cornerstone Credit Union League*

*v. CFPB*, 791 F. Supp. 3d 720, 742 (E.D. Tex. 2025). And Plaintiffs' own briefing recognizes the

same principle. *See* Dkt. 800 at 4-5 (invoking Plaintiffs' prior argument that "'even if this Court

finds that the [DACA] Final Rule is severable, it should still vacate and enjoin it in its entirety

because each provision is independently unlawful'" (quoting Dkt. 673 at 36)); Dkt. 800 at 6 (again

arguing that the DACA Final Rule's severability clause has no effect if a court finds "every

---

[1] This brief uses the below short form naming conventions in citations:
*DACA D.Ct. 2018* - Texas v. United States, 328 F. Supp. 3d 662 (S.D. Tex. 2018);
*DACA D.Ct. 2021* - Texas v. United States, 549 F. Supp. 3d 572 (S.D. Tex. 2021);
*DACA CA5 2022* - Texas v. United States, 50 F.4th 498 (5th Cir. 2022);
*DACA D.Ct. 2023* - Texas v. United States, 691 F. Supp. 3d 763 (S.D. Tex. 2023);
*DACA CA5 2025* - Texas v. United States, 126 F.4th 392 (5th Cir. 2025).

substantive provision unlawful"). So in electing to sever forbearance from benefits—that is, in holding that the appellate court would "not disturb DACA's policy of forbearance," *DACA CA5 2025*, 126 F.4th at 402—the Fifth Circuit was necessarily accepting that those forbearance provisions, standing apart from the benefits provisions, were independently lawful.

Finally, not only did the Fifth Circuit necessarily decide that forbearance alone is lawful, but that is the correct decision—and nothing Plaintiffs say to the contrary persuades. Plaintiffs rely on this Court's 2021 decision and the Fifth Circuit's 2022 decision to argue that forbearance alone is unlawful, but it badly misreads both decisions. Each decision analyzed forbearance *in connection with* the benefits provisions, and found the combination unlawful, *see Texas v. United States (DACA D.Ct. 2021)*, 549 F. Supp. 3d 572, 606, 614 (S.D. Tex. 2021); *Texas v. United States (DACA CA5 2022)*, 50 F.4th 498, 512-13, 523 (5th Cir. 2022), but neither this Court nor the Fifth Circuit addressed whether forbearance standing alone is unlawful, and instead specifically reserved that question for a future case. *See DACA D.Ct. 2021*, 549 F. Supp. at 622-24 (acknowledging "forbearance without benefits" remained a viable option for DHS to consider on remand to the agency); *DACA CA5 2022*, 50 F.4th at 530 (declining to "decide ... what the bounds of DHS's discretion with regard to 'forbearance without benefits' might be"). The Supreme Court, by contrast, expressly addressed this issue, observing that even where the Attorney General had opined that the benefits provisions were unlawful, DHS still "squarely" had "the discretion" to "continu[e] forebearance" alone while "removing" only DACA recipients' "benefits eligibility." *Regents*, 591 U.S. at 28 (observing invalidation of DACA's benefits provisions "did not cast doubt on the legality of forbearance or upon DHS's original reasons for extending forbearance to childhood arrivals" (citation omitted)). Plaintiffs do not confront this binding language in their

Response Brief, but it confirms what New Jersey has already argued: any challenge to forbearance alone must fail.

## II.    PLAINTIFFS ARE NOT ENTITLED TO NATIONWIDE RELIEF.

Even if Plaintiffs could challenge forbearance alone notwithstanding the three independent fatal defects laid out above, Plaintiffs still could not obtain the relief they seek: vacatur of the entire DACA Final Rule nationwide. *See* Dkt. 800 at 17. After all, the nationwide order of vacatur that Plaintiffs demand would still be foreclosed by the Fifth Circuit's clear opinion and mandate. The Fifth Circuit's mandate rule requires that district courts "abstain from reexamining an issue of fact or law that has already been decided on appeal," *Franklin v. Regions Bank*, 125 F.4th 613, 629 (5th Cir. 2025) (citation omitted), and abide by the appellate court's "explicit directives," *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001). This Court is therefore bound to "limit injunctive relief, *including the effectiveness of the vacatur of the Final Rule*, to Texas," *DACA CA5 2025*, 126 F.4th at 422 (emphasis added). The Fifth Circuit's instruction could hardly be clearer that any vacatur of the DACA Final Rule must be limited only to Texas. And none of Plaintiffs' justifications for asking this Court to reissue the very remedy the Fifth Circuit just reversed in January 2025 can withstand any serious scrutiny.

First, while Plaintiffs argue that the Fifth Circuit's command to limit the effect of vacatur to Texas applies only to this Court's *previous* vacatur order and does not dictate the scope of any *future* vacatur order it imposes, *see* Dkt. 800 at 1, that argument badly misreads the Fifth Circuit's opinion. In its 2025 decision, the Fifth Circuit considered an order vacating the DACA Final Rule in toto nationwide, and held that such an order was improper because only Texas had demonstrated injury, and that its "injury is fully redressable by a geographically limited injunction," *DACA CA5 2025*, 126 F.4th at 421, "including the effectiveness of the vacatur of the Final Rule," *id.* at 422.

By asking for an additional order vacating the DACA Final Rule in toto nationwide, Plaintiffs run headlong into this mandate. The only basis Plaintiffs offer for suggesting that a future vacatur order should operate nationwide is that the future and previous vacatur orders would be tied to different legal infirmities: the future vacatur order would be based on the illegality of the DACA Final Rule's *forbearance* provisions, whereas the previous vacatur order was based on the illegality of the DACA Final Rule's *benefits* provisions. *See* Dkt. 800 at 4-8. But that distinction is a red herring, because the Fifth Circuit's decision to limit the scope of the remedy was that a nationwide order was broader than necessary to redress Texas's harm, not that the remedy was overbroad compared to the legal error identified. Indeed, Part VI of the Fifth Circuit's opinion ("Remedy") takes as a given that the DACA Final Rule is unlawful—whatever the reason—and addresses what remedies can appropriately follow. *See DACA CA5 2025*, 126 F.4th at 418–21. The reason the Fifth Circuit then limited vacatur to Texas turned on the record of Plaintiffs' injuries, not on the reasons for which the DACA Final Rule was unlawful. *Id.* at 420–21. And that factual record of injuries remains the very same, no matter whether the legal error Plaintiffs are pressing is one based on the presence of forbearance from removal or the provision of benefits.

Plaintiffs' own brief admits as much. Right before claiming that the Fifth Circuit's mandate should only apply to the previous vacatur order and not to future orders, Plaintiffs (to their credit) actually concede that "injunctive relief"—in contrast to vacatur—"must be limited to Texas." Dkt. 800 at 1–2. In other words, Plaintiffs admit that the Fifth Circuit's opinion is best read to take any future nationwide injunction off the table, even if Plaintiffs successfully challenge the forbearance provisions on remand. *See id.* at 1, 3 (noting that the Fifth Circuit's "instructions" included broadly the "limitation[]" that "injunctive relief must be limited to Texas" and so "Plaintiff States ma[k]e no argument to expand injunctive relief beyond Texas."). It follows, however, that future orders

7

of vacatur cannot operate nationwide in this case either, because the Fifth Circuit's mandate treated the two together, "limit[ing] injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas." *DACA CA5 2025*, 126 F.4th at 422. Plaintiffs give no explanation for why this precise sentence somehow removes nationwide injunctive relief as an available remedy on remand, yet at the same time allows any subsequent vacatur order with nationwide effectiveness to issue in the same case involving the same DACA Final Rule. Plaintiffs' brief thereby undermines their invitation to vacate DACA in toto, nationwide, once again. The Fifth Circuit's mandate was not some good-for-one-vacatur-only ruling.

Second, Plaintiffs' series of complaints about the mandate itself likewise offer no leeway to deviate from its binding terms. For one, while Plaintiffs complain that "the 2025 Fifth Circuit panel's narrowed injunction falls short of affording complete relief," Dkt. 800 at 7, the Fifth Circuit panel held to the contrary on the record amassed by the parties, noting that "[j]ust one state, Texas, demonstrated an actual injury caused by the Final Rule," an injury that was "fully redressable" by relief within Texas alone. *DACA CA5 2025*, 126 F.4th at 421. The Fifth Circuit gave the scope of the geographic remedy considerable attention, assessing the factual record and explaining that any geographically broader remedy would improperly harm New Jersey, which "intervened to defend DACA," as well as the "22 states and the District of Columbia [that] also urge[d] th[e] court to preserve the program." *Id*. at 420-21 & nn.48-49 (summarizing benefits of DACA to the intervenor and amici States). If Plaintiffs disagreed with the Fifth Circuit's conclusion that relief within Texas alone fully redressed their injuries, they should have sought panel rehearing, en banc review, or certiorari. *See Becerra*, 155 F.3d at 753 n.15; *Young,* 57 F.4th at 878; *Impson*, 585 F.3d at 498. But, having declined those options, they cannot ask this Court on remand to reject the Fifth Circuit's conclusions as to complete relief and defy its mandate.

8

For another, just as this Court cannot disobey the Fifth Circuit's mandate by issuing a future nationwide order based on Plaintiffs' fact complaints, this Court likewise cannot flout the mandate based on complaints that it erred as a matter of vacatur law. Indeed, Plaintiffs' insistence that "the Fifth Circuit's well-established jurisprudence on universal vacatur" requires a nationwide remedy on remand, Dkt. 800 at 8 n.3, simply disputes the correctness of the Fifth Circuit's own mandate "limit[ing] injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas." *DACA CA5 2025*, 126 F.4th at 422.[2] Plaintiffs could have raised their argument that this mandate is improper because vacatur is never subject to geographic tailoring in a petition for rehearing, en banc, or certiorari, but they did not. Having declined that opportunity, the 2025 mandate governs these proceedings, and the necessity of limiting the effect of vacatur to Texas given the summary judgment record on injury is plainly law of the case. *See Becerra*, 155 F.3d at 753 n.15; *Young*, 57 F.4th at 878; *Impson*, 585 F.3d at 498. Plaintiffs doubtless believe vacatur of the DACA Final Rule should always have nationwide effectiveness, but the Fifth Circuit disagreed, and this Court may

---

[2] To be clear, there were reasons for the Fifth Circuit's approach notwithstanding prior decisions on vacatur, as New Jersey explained in its appellate briefing to the Fifth Circuit. *See, e.g.*, *Texas v. United States*, No. 23-40653, Dkt. 68 (N.J. Opening Br.) at 3. Even though universal vacatur traditionally follows from a holding that an agency decision is unlawful in order to automatically restore the status quo ante, such restoration of a prior status quo is impossible here given Plaintiffs' lengthy and unjustified delay in challenging DACA. *See id.* at 21–41; *id.* at 32 (explaining that no "case answer[s] what remedy follows from finding a policy invalid after 600,000 individuals relied on it" to structure their lives "for over a decade"). Nor did the 2022 Fifth Circuit decision block the 2025 Fifth Circuit panel from considering these questions: when the 2022 panel "vacated the DACA Memorandum, the Final Rule was still in place," so the 2022 panel had no occasion to grapple with these novel remedial questions. *Id.*, Dkt. 148 (N.J. Reply Br.) at 1, 4–8. The 2025 Fifth Circuit panel had to do so for the first time. But in all events, no matter whether this Court believes that the 2025 panel's mandate coheres with prior Fifth Circuit vacatur caselaw, the central point is that the mandate governs these proceedings regardless.

not "analy[ze] … the propriety of appellate court rulings," *Becerra*, 155 F.3d at 753 n.15, simply by choosing to follow *its* view of "well-established jurisprudence" in a subsequent order.

Third and finally, there is no basis to grant Plaintiffs another bite at the apple to develop a new factual record—*seven years* into this litigation, after two rounds of summary judgment—to support a nationwide vacatur order. Plaintiffs argue that because the Fifth Circuit's 2022 decision led them to think they could win nationwide relief, regardless of their injuries, to ensure uniformity in immigration law, Dkt. 800 at 9–10 (citing *DACA CA5 2022*, 50 F.4th at 531), they should have another chance to "to introduce additional evidence of injury" now that the 2025 panel made those injuries paramount instead, Dkt. 800 at 8. But Plaintiffs have declined to establish such a record from the beginning, well before the 2022 decision, so that decision cannot excuse their refusal to build an adequate record on injury since the initial summary judgment proceedings, during which private intervenors contested the propriety of nationwide relief given the record on Plaintiffs' injury. *See* Dkt. 504 at 49 (arguing that a "nationwide injunction is particularly inappropriate, because only one Plaintiff, Texas, has *even seriously attempted* to demonstrate injury from DACA").

And more fundamentally, Plaintiffs' request to reopen discovery on injury introduces a new forfeiture problem: they did not ask for such relief from the Fifth Circuit. Before the 2025 panel, the United States and Intervenors repeatedly argued that relief was appropriate on this record only to Texas—not nationwide. *See, e.g.*, *Texas v. United States*, No. 23-40653, Dkt. 66 (U.S. Opening Br.) at 49–51 (arguing that "[a]ny relief … should be limited to Texas—the only State that even attempted to show harm caused by DACA"); *id.*, Dkt. 70 (MALDEF Opening Br.) at 50–56 (arguing this Court erred by assuming "a nationwide remedy was a foregone conclusion" because "remedies must be 'tailored to redress' a plaintiff's injury"); *id.*, Dkt. 148 (N.J. Reply Br.)

at 4 n.2 ("nationwide relief … is particularly inappropriate here, where … only one state even sought to demonstrate an Article III injury."). In response, Plaintiffs never argued that they must be given an opportunity on remand to demonstrate injury should the Fifth Circuit accept these remedial arguments. *Compare id.*, Dkt. 127 (Pls. Response Br.) at 46–47. Having failed to advance this request to the Fifth Circuit, they forfeited it. *See Holder*, 634 F.3d at 834; Dkt. 799 at 5. *Cf. Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) (refusing to consider forfeited argument, even where relevant Supreme Court decision was decided after the forfeiture); *United States v. Kelley*, 40 F.4th 276, 289 (5th Cir. 2022) (Oldham, J., concurring) ("[A] litigant ordinarily can't *fail to preserve an issue* at trial and then undo that forfeiture by pointing out that the law later changed."). Now that the Fifth Circuit accepted these arguments and mandated all relief be limited to Texas, instructing that "injunctive relief, including the effectiveness of the vacatur of the Final Rule" be limited "to Texas" with no carveout for new proceedings to show Article III injury, *DACA CA5 2025*, 126 F.4th at 422, it is too late to request an opportunity to produce evidence of injury Plaintiffs never even hinted at before.

## III. PLAINTIFFS BEYOND TEXAS ARE NOT ENTITLED TO DECLARATORY RELIEF, LET ALONE THEIR PROPOSED DECLARATORY RELIEF.

Plaintiffs' request for declaratory relief as to the States other than Texas fails for the reasons explained in New Jersey's Response Brief. *See* Dkt. 799 at 16-19. Any party seeking declaratory relief must establish Article III injury, and the Fifth Circuit has already held that no Plaintiff other than Texas has shown such injury. *See DACA CA5 2025*, 126 F.4th at 405, 420-21. Not only does this mean non-Texas States are barred from obtaining *any* declaratory relief, but they are especially barred from obtaining the unusual declaration they seek here: an order requiring "federal officials" to "reform[] their practices to conform to the law" in all the "Plaintiff States other than Texas" by

"declar[ing]" that the Federal Government cannot implement the DACA Final Rule's benefits provisions in such States. Dkt. 786 at 18. This request bears little resemblance to the declaration requested in Plaintiffs' Supplemental Complaint, *see* Dkt. 623 at 42 (seeking "[a] declaratory judgment that the Final Rule is … unlawful"), and instead more closely resembles Plaintiffs' request for injunctive relief, *see id.* (seeking "[a]n order permanently enjoining Defendants from issuing or renewing any DACA permits in the future under the Final Rule"). Granting such declaratory relief, which is little more than injunctive relief in disguise, would thereby yet again violate the Fifth Circuit's mandate "narrow[ing] the scope of" the remedies "to Texas." *DACA CA5 2025*, 126 F.4th at 421.

Plaintiffs' responses are passing strange. Plaintiffs claim that the reasons the panel gave for limiting "the scope of injunctive relief" do "not supply reasons to deny a declaratory judgment." Dkt. 800 at 9; *id.* at 8-9 (discussing "equitable concerns unique to injunctive relief," including the "balance of equities" and "equitable discretion"). Indeed, many such equitable considerations have no bearing on the availability of traditional declaratory relief. But one of the panel's holdings does, and it is fatal: the Fifth Circuit's holding that "[j]ust one state, Texas, demonstrated an actual injury caused by the [DACA] Final Rule." *DACA CA5 2025*, 126 F.4th at 421; *see id.* at 405 ("Texas is the only state that has attempted to demonstrate standing"). That lack of standing, as New Jersey explained, leaves the other Plaintiffs ineligible for any relief in an Article III court, injunctive *or* declaratory. *See* Dkt. 799 at 16-19; *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019); *Waller v. Hanlon*, 922 F.3d 590, 602-03 (5th Cir. 2019). Plaintiffs' sole response is that so long as Texas maintains standing, every party should get at least declaratory relief. *See* Dkt. 800 at 9 (arguing that if there is Article III jurisdiction in light of Texas's harms, Article III courts can "decide the present case or controversy between all parties to this litigation"). But that conflates the rule that

one party with standing is enough to reach the *merits* with the separate question of which parties are entitled to a *remedy* once the merits are decided. On that question, the law is clear: "standing is not dispensed in gross" in multi-plaintiff cases. *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (ruling that each voter plaintiff in gerrymandering action seeking declaratory and injunctive relief must "prove concrete and particularized injuries … that would tend to demonstrate a burden on their individual votes," as "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury"); *California v. Texas*, 593 U.S. 659, 671-72 (2021) (observing that remedies ordinarily "operate with respect to specific parties" and "just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement"). Plaintiffs have no answer.

Plaintiffs' only other response is to complain about a "switcheroo" from the 2022 ruling to the 2025 ruling, Dkt. 800 at 10, but that does not help them. As an initial matter, this is simply incorrect: as explained in New Jersey's Response Brief, Dkt. 799 at 18-19, blackletter remedies law has always required a party to show injury to obtain relief, including declaratory relief. *See Stringer*, 942 F.3d at 720; *Waller*, 922 F.3d at 602-03. But in any event, even if Plaintiffs were actually "surprise[d]" by the 2025 mandate, Dkt. 800 at 10, that does not help them, because they are not actually asking for a chance to develop further record evidence on their declaratory-judgment claim. *See* Dkt. 800 at 8 ("as Plaintiff States explained in their opening supplemental brief, they have elected to avoid further delay by relying on existing evidence in the record to support their pending request for declaratory relief for the remaining Plaintiff States that does not

require the introduction of new evidence").[3] Instead, Plaintiffs argue that this "record already contains sufficient evidence of harm to States other than Texas." *Id.* at 10. But that argument is contrary to the Fifth Circuit's factual conclusion, looking at this same record, that Texas is "the only state that has demonstrated injury." *DACA CA5 2025*, 126 F.4th at 420. That holding is binding on this Court on this record—no matter whether Texas found it surprising or thought that it fit well with precedent. Plaintiffs could have argued that any perceived disagreement between the 2022 and 2025 panels, whether on facts or on the law, required en banc review at the Fifth Circuit. But Plaintiffs cannot urge *this Court* to find that non-Texas Plaintiffs have standing in an Article III court to obtain Article III remedies on the very same record on which the Fifth Circuit specifically held that they do not.

## IV. THE COURT SHOULD REJECT PLAINTIFFS' ARGUMENTS CONCERNING THE STAY PENDING APPEAL.

This Court should decline Plaintiffs' invitation to issue interim relief that would render the DACA Final Rule ineffective, in whole or in part, outside of Texas. Plaintiffs make two arguments: that if they prevail in seeking additional relief on remand, no stay should issue, Dkt. 800 at 14-16,

---

[3] Although Plaintiff States separately ask for an opportunity "to introduce additional evidence to obtain injunctive relief" as distinct from declaratory relief, Dkt. 800 at 8, that request fails for the reasons laid out above: they never sought to introduce such evidence across seven years and two rounds of summary-judgment briefing, and they forfeited it on appeal. *See supra* at 2-3. In any event, this request runs headlong into their own concession, highlighted above, that that the Fifth Circuit's specific limitations include that "injunctive relief" in this case "must be limited to Texas." Dkt. 800 at 1–2.

and that this Court should "defer[]" implementation of the Fifth Circuit mandate so that it can first issue another nationwide order, *id.* at 16. Both fail.

On the one hand, if this Court disagrees with all of the points made above and decides to grant Plaintiffs relief beyond Texas, it should issue a stay pending appeal. For the reasons given across its three briefs, New Jersey has at least a serious likelihood of success in appealing such a nationwide or otherwise-expanded remedial order given the Fifth Circuit's decision and mandate limiting the geographic scope of remedies. Furthermore, re-imposing a nationwide or otherwise-expanded remedial order would threaten the same equitable considerations and profound reliance interests that this Court and the Fifth Circuit have consistently recognized—including the reliance interests of current DACA recipients, as well as their families, employers, and States and local governments, all of which have supported a continued stay of relief throughout this litigation. *See Texas v. United States (DACA D.Ct. 2018)*, 328 F. Supp. 3d 662, 741-43 (S.D. Tex. 2018); *DACA D.Ct. 2021*, 549 F. Supp. 3d at 624; *DACA CA5 2022*, 50 F.4th at 531; *Texas v. United States (DACA D.Ct. 2023)*, 691 F. Supp. 3d 763, 796 (S.D. Tex. 2023); *DACA CA5 2025*, 126 F.4th at 422. Under such circumstances, and especially "[g]iven the uncertainty of final disposition and the inevitable disruption that would arise from a lack of continuity and stability" that the Fifth Circuit so recently noted, *DACA CA5 2025*, 126 F.4th at 422, this Court should preserve the stay pending appeal of any renewed nationwide or otherwise-expanded remedial order.

On the other hand, if this Court *denies* any further nationwide order and thus denies relief as to States other than Texas, thus leaving in place the very geographic limits the Fifth Circuit has already ordered, there is no basis to stay that decision with respect to the imposition of those geographic limits. For one, as to those limits, there is nothing to "stay": the Court would be denying relief, not granting it, and so there is no judicial order that could be stayed pending the appeal. For

15

another, despite Plaintiffs' pleas that new DACA applicants cannot have their applications adjudicated, Dkt. 800 at 16, the Fifth Circuit's order is self-executing and *already* allows DHS to adjudicate those applications. The Fifth Circuit itself modified the prior injunction, as its opinion and mandate say clearly. *See DACA CA5 2025*, 126 F.4th at 421 ("Because Texas is the only plaintiff that has demonstrated or even attempted to demonstrate an actual injury, and because that injury is fully redressable by a geographically limited injunction, *we narrow* the scope of injunction to Texas."); *id.* ("An injunction limited to Texas alone is better tailored to Texas's asserted injury. *We accordingly narrow* the scope of the injunction to Texas."); *id.* at 422 ("The injunction is AFFIRMED in part and MODIFIED in part. *We limit* injunctive relief, including the effectiveness of the vacatur of the Final Rule, to Texas….") (emphases added). Plaintiffs' request that this Court now "defer[] the modification of injunctive relief" on remand, Dkt. 800 at 16, thus makes no sense: as to DACA outside of Texas, there is nothing to implement on remand.

In short, the Fifth Circuit's mandate only left additional steps for this Court to take *within* Texas, but there is nothing further to do *outside* of Texas. *See Crowe*, 261 F.3d at 562 (on remand, a district court must "implement both the letter and spirit of the [appellate court's] mandate"). This Court's remaining responsibility is to consider the future of DACA within Texas and no further. Anything else, even temporarily, flouts the Fifth Circuit's decision.

## CONCLUSION

Pursuant to the Fifth Circuit's opinion and mandate, the DACA Final Rule applies in full outside of Texas, and this Court should not issue any orders to the contrary.


Dated: November 24, 2025                    MATTHEW J. PLATKIN
                                            ATTORNEY GENERAL OF NEW JERSEY

By: */s/ Amanda I. Morejón*
AMANDA I. MOREJÓN*
 *Deputy Attorney General*
124 Halsey St., 5th Floor
Newark, New Jersey 07101
PO Box 45029-5029
Phone: (609) 696-5279
Fax: (973) 648-4887
Amanda.Morejon@law.njoag.gov

Jeremy M. Feigenbaum*
 *Solicitor General*
Mayur P. Saxena*
 *Assistant Attorney General*
Viviana M. Hanley
Bryce K. Hurst
Estefania Pugliese-Saville
 *Deputy Attorneys General*

*Attorneys for Defendant-Intervenor State of New Jersey*

* admitted pro hac vice

17

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 24, 2025, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Amanda I. Morejón*
Amanda I. Morejón

18