# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL.; | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | Case No. 1:18-cv-68 |
| | § | |
| UNITED STATES OF AMERICA, ET AL.; | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, ET AL.; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| | § | |
| *Defendant-Intervenors.* | § | |

# Reply in Support of Plaintiff States' Supplemental Brief

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................... ii

Table of Authorities ...................................................................................................... iii

I.    A declaratory judgment would efficiently afford non-Texas Plaintiff States relief from the unlawful benefits provisions without unnecessarily delaying resolution. ...................................1

II.   This Court should rule that DACA's forbearance provisions are unlawful. .......................5

    A.    The forbearance provisions' unlawfulness remains pending before this Court. ............ 6

    B.    The Fifth Circuit's severability analysis provides no indication that the forbearance provisions are lawful. .................................................................................. 9

    C.    Prior decisions in this litigation universally demonstrate that the forbearance provisions are unlawful. ...................................................................................................12

III.   The Fifth Circuit's limitation of relief for the substantive illegality of the benefits provisions does not foreclose this Court from universally vacating DACA's forbearance provisions. ...................................................................................................15

IV.   The scope of this Court's injunction should encompass both DACA recipients residing in Texas and those employed in Texas. ...................................................................18

V.    Any wind-down should reflect the gradual diminution of reasonable reliance interests following repeated, clear notice that the benefits provisions are unlawful. .............................19

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Quarles,*
  92 F.2d 321 (4th Cir. 1937)...................................................................................3

*Braidwood Mgmt., Inc. v. Becerra,*
  104 F.4th 930 (5th Cir. 2024), *cert. granted sub nom. Xavier Becerra, Sec'y of*
  *Health & Human Services v. Braidwood Mgmt., Inc.*, 145 S. Ct. 1038 (2025) ...........................17

*Career Colleges & Sch. of Tex. v. United States Dep't of Educ.,*
  98 F.4th 220 (5th Cir. 2024) ...............................................................................17

*DHS v. Regents of the Univ. of Cal.,*
  591 U.S. 1 (2020).................................................................................9, 13, 14

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
  561 U.S. 477 (2010) ...........................................................................................11

*Indigenous Peoples of Coastal Bend v. United States Army Corps of Engineers,*
  132 F.4th 872 (5th Cir. 2025) ...............................................................................7

*Newball v. Offshore Logistics Intern.,*
  803 F.2d 821 (5th Cir. 1986) ...............................................................................16

*Norris v. Causey,*
  869 F.3d 360 (5th Cir. 2017) .................................................................................8

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
  591 U.S. 197 (2020)...........................................................................................11

*Tex. Democratic Party v. Abbott,*
  978 F.3d 168 (5th Cir. 2020) .................................................................................8

*Texas v. DHS,*
  756 F. Supp. 3d 310 (E.D. Tex. 2024) (Barker, J.)................................................4

*Texas v. United States* (*DACA 5th Cir. 2025*),
  126 F.4th 392 (5th Cir. 2025)............................................................... *passim*

*Texas v. United States* (*DACA SDTX 2021*),
  549 F. Supp. 3d 572 (S.D. Tex. 2021) .......................................................10, 15, 16

*Texas v. United States* (*DACA SDTX 2023*),
    691 F. Supp. 3d 763 ...................................................................................................10

*Texas v. United States* (*DAPA*),
    809 F.3d 134 (5th Cir. 2015) ............................................................... 13, 14

*Texas v. United States*,
    No. 23-40653, ECF No. 68-1 (NJ Opening Br.)............................. 1, 7, 8, 9

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ......................................................................... 3, 17

*United States v. Bell Petroleum Services, Inc.*,
    64 F.3d 202 (5th Cir. 1995) ....................................................................5

*United States v. Charles*,
    469 F.3d 402 (5th Cir. 2006) ..................................................................7

*United States v. Luna*,
    264 F.3d 1142 (5th Cir. 2001) ................................................................8

*United States v. Texas* (*Immigration Priorities*),
    599 U.S. 670 (2023) ....................................................................... 14, 15

*Vernon Smith, etc. v. Sch. Bd. of Concordia Par.*,
    88 F.4th 588 (5th Cir. 2023) ...................................................................7

I.    **A declaratory judgment would efficiently afford non-Texas Plaintiff States relief from the unlawful benefits provisions without unnecessarily delaying resolution.**

All Defendants contend that declaratory relief for Plaintiff States other than Texas would be improper. *See* ECF Nos. 798 at 10; 799 at 21; 801 at 6.[1] Defendant-Intervenor New Jersey goes so far as to call Plaintiff States' request for declaratory relief "puzzling." ECF No. 799 at 22. But the only thing that is puzzling is New Jersey's newfound interest in resisting declaratory relief for *other* States. In briefing the Fifth Circuit, New Jersey exhaustively listed all the benefits that accrue from DACA recipients' presence and the harms that would befall it were the program to fall.[2] *Texas v. United States*, No. 23-40653, ECF No. 68-1 (NJ Opening Br.) at 27–28, 41–42. Heeding New Jersey's concerns, the Fifth Circuit blessed "a more limited injunction that does not trigger the costs that New Jersey and the other *amici* states aver they would incur if the nationwide injunction were upheld." *Texas v. United States* (*DACA 5th Cir. 2025*), 126 F.4th 392, 421 (5th Cir. 2025). Returning to this Court, New Jersey now seeks to reach beyond its own borders to deny other States relief, despite the 2025 Fifth Circuit panel's observation that a narrowed injunction "provid[es] an incentive for DACA recipients to move to other [S]tates not subject to the injunction." *Id.* at 421 n.49. Indeed, extending relief to additional States would incentivize the relocation of still more DACA recipients to New Jersey, presumably bestowing on that State an even greater proportion of the very benefits it purports to value. In any event, declaratory relief is by no means precluded by the Fifth Circuit's limitation of other remedies to Texas.

New Jersey makes two fundamental errors regarding declaratory relief. First, it misunderstands such a declaration to be "tantamount to an injunction" by "ordering 'federal officials'" to take certain actions. ECF No. 799 at 22 (quoting ECF No. 786 at 28). Of course, the

---

[1] As with Plaintiff States' other filings, references to pagination for documents filed on this Court's electronic docket are to the stamped page numbers in the header of those filings.

[2] Far from a passing aside, this narrative was repeatedly advanced. *See, e.g.*, *Texas v. United States*, No. 23-40653, ECF No. 68-1 (NJ Opening Br.) at 46–47 (averring that "terminating DACA for current recipients would profoundly harm New Jersey and the other States that have relied on them for over a decade"); *Texas v. United States*, No. 23-40653, ECF No. 148 (NJ Reply Br.) at 8–9 ("The States and their residents benefit tremendously from the policy . . .").

partially quoted portion of Plaintiff States' brief features no suggestion of this Court "ordering" officials to undertake any action. Instead, it clearly explains how a declaration would provide DHS the opportunity to craft its own reforms in the affected States in response to the unlawfulness of DACA's benefits provisions. ECF No. 786 at 28 (quoting *Caliste v. Cantrell*, 937 F.3d 525, 532 (5th Cir. 2019)). Indeed, Plaintiff States thoroughly explained the noncoercive nature of declaratory relief, quoting and citing four circuit courts (including the Fifth Circuit) for that uncontroversial proposition. *Id.* at 23–24. Undeterred, New Jersey repeats that Plaintiff States advance "a repackaged request for injunctive relief," only "under the guise of a declaratory judgment." ECF No. 799 at 22. But verbigeration is not verification. Plaintiff States' position on injunctive relief is well developed, thoroughly briefed, and completely separate from its longstanding request for declaratory relief. *Compare* ECF No. 786 at 17–21, *with id.* at 21–31.

New Jersey's second error is to contend that declaratory relief is "precluded by the Fifth Circuit's *holdings* that Plaintiffs other than Texas have not demonstrated Article III injury." ECF No. 799 at 23; *see also* ECF No. 798 at 11. The Fifth Circuit's remand to this Court featured no instructions to dismiss the other Plaintiff States for lack of standing. *See DACA 5th Cir. 2025*, 126 F.4th at 422; *accord* ECF No. 786 at 23 ("Rather than directing dismissal of any party to this litigation, [the Fifth Circuit] instead exercised jurisdiction over each and every Plaintiff State."). To be sure, the Fifth Circuit's review of this Court's order on cross-motions for summary judgment observed that "Texas is the only plaintiff that has demonstrated or even attempted to demonstrate an actual injury." *DACA 5th Cir. 2025*, 126 F.4th at 421. But Plaintiff States' decision to neither rely on record evidence nor request judicial notice of other States' injuries does not foreclose such an approach here for remedial purposes. Had Plaintiff States failed to demonstrate *standing*—activating this Court's (and the Fifth Circuit's) power to decide the case before it—

there would be no going back. But having established Article III jurisdiction, the injuries recited in Plaintiff States' Supplemental Brief, ECF No. 786 at 29–30, warrant remediation.[3]

Private Intervenors' attack on declaratory relief also falls short. They first rely on *CASA*— a case primarily about universal injunctions—for the proposition that declaratory relief cannot "directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs." *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025); *see also* ECF No. 798 at 12. To their credit, Private Intervenors correctly relate the context for this quote, which is the Supreme Court's discussion of "early refusals to grant relief to nonparties." ECF No. 798 at 12 (quoting *CASA*, 606 U.S. at 844); *see also id.* at 2 (again citing *CASA* for the proposition that "the Supreme Court reiterated that it has long refused to grant 'declaratory [or] injunctive relief' to nonparties"). However, the import Defendant-Intervenors attach to these quotations is mystifying. Non-Texas Plaintiff States are, as the name would suggest, "particular . . . plaintiffs" in this litigation rather than "nonparties." Thus, reliance on *CASA* here is completely inapposite.

Private Intervenors further falter with their argument that "there is no 'judicial efficiency' exception to Article III." ECF No. 798 at 13. Again, that is both correct and irrelevant. Article III jurisdiction has been established. Judicial economy is a widely recognized factor in the separate legal inquiry of whether a court should exercise its discretion to issue declaratory relief. ECF No. 786 at 29 (citing *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 605 (5th Cir. 2022)); *see also Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (recognizing declaratory relief "afford[s] a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies"). Faced with the option of allowing new evidence—with the time-consuming adversarial scrutiny sure to follow—versus issuance of declaratory relief on the record already before it, the Court should have no difficulty determining which option better serves judicial economy. Accordingly, the Court need not further extend these

---

[3] Any further factual development of non-Texas Plaintiff States' harm may be left for the pursuit of additional relief under Section 2202 of the Declaratory Judgment Act should such a need arise. *See generally* ECF No. 786 at 30–31.

already-protracted proceedings with squabbles about extraneous evidence that is unnecessary for declaratory relief.

Plaintiff States provide three examples of harm from the benefits provisions to States besides Texas. First, DHS acknowledged DACA's fiscal effects on States in the administrative record, AR2022_100331–AR2022_100332; 87 Fed. Reg. 53,288–89, based on a 2017 report showing negative impacts from first-generation immigrants, *see* AR2022_502085–AR2022_502086. This proves injury through the agency's own statements. *See Texas v. DHS*, 756 F. Supp. 3d 310, 341 (E.D. Tex. 2024) (Barker, J.). Second, the harm persists, as each Plaintiff State has active DACA recipients as of the second quarter of 2025. *See* Deferred Action for Childhood Arrivals (DACA) Quarterly Report (Fiscal Year 2025, Quarter 2), https://www.uscis.gov/sites/default/files/document/data/active_daca_recipients_fy2025_q2. xlsx. Third, the harm will continue and worsen: the Fifth Circuit noted that limiting injunctive relief to Texas "provid[es] an incentive for DACA recipients to move to other [S]tates not subject to the injunction." *Texas v. United States* (*DACA 5th Cir. 2025*), 126 F.4th at 421 n.49. That includes the other Plaintiff States, thus increasing their financial burdens. *Cf. DACA 5th Cir. 2022*, 50 F.4th at 520 (recognizing the inverse, that ending DACA would redress harm to States by "providing incentives for some if not many to leave," which "would reduce the State's Medicaid, social services and education costs"). Tellingly, no opposing party has even attempted to refute these clear examples of harm. Each of these injuries, standing alone, would suffice for a declaratory judgment; taken collectively, they compel the issuance of declaratory relief to redress the harm to other Plaintiff States.

Plaintiff States' preference for the comparative efficiency of declaratory relief should not be read as agreement with opposing parties' contention that admitting new evidence would somehow be inappropriate.[4] *See* ECF Nos. 798 at 12; 799 at 24; 801 at 7. Private Intervenors

---

[4] Private Intervenors also claim Plaintiff States somehow waived this issue by placing it in a footnote in their Supplemental Brief. ECF No. 798 at 12–13. Fortunately, this Court need not

speculate that Plaintiff States "themselves appear to recognize" that "it is far too late for them to" demonstrate injury at this juncture. ECF No. 798 at 12. To clarify, Plaintiff States do indeed "seriously suggest that the Court re-open the evidence to permit the non-Texas Plaintiffs to attempt to demonstrate" ongoing and future harm in the event the Court believes it necessary. *Contra id.* Indeed, binding Fifth Circuit precedent unequivocally supports this Court's authority to do so: "Where further proceedings are contemplated by an appellate opinion, the district court retains the discretion to admit additional evidence." *United States v. Bell Petroleum Services, Inc.*, 64 F.3d 202, 204 (5th Cir. 1995).

Plaintiff States' reasoning in support of new evidence is set forth in their response. *See* ECF No. 800 at 14. Briefly, the Fifth Circuit in 2022 affirmed universal vacatur and a nationwide injunction and remanded for this Court to make the narrow determination of whether the Final Rule was substantively identical to the DACA Memo. *DACA 5th Cir. 2022)*, 50 F.4th at 531–32. That posture precluded any need for additional evidence of injury—what could it have accomplished beyond such universal relief already granted? By contrast, the Fifth Circuit's recent remand narrowed the scope of the relief previously ordered by this Court but "impose[d] no restriction on the matters that the district court, in its wisdom, may address on remand." *DACA 5th Cir. 2025*, 126 F.4th at 422. That inversion—narrowed relief with a broad remand rather than broad relief with a narrow remand—warrants granting Plaintiff States an opportunity to present new evidence if this Court declines to issue declaratory relief on the record before it.

## II.    This Court should rule that DACA's forbearance provisions are unlawful.

Plaintiff States' claim that forbearance is independently unlawful is ripe for adjudication before this Court. They have challenged forbearance itself—not solely based on inseverability from the benefits provisions—throughout this litigation, and the recent appellate litigation did not result in any forfeiture that precludes consideration on remand. The 2025 Fifth Circuit panel's ruling on

---

linger on the inapplicability of the sources cited for that proposition since Plaintiff States also prominently advanced this alternative approach in their Response Brief. *See* ECF No. 800 at 12, 14.

severability is not an implicit endorsement of the independent legality of forbearance. And no prior rulings in this litigation—whether in this Court, the Fifth Circuit, or the Supreme Court—determined that forbearance was itself lawful under the INA.

**A. The forbearance provisions' unlawfulness remains pending before this Court.**

Plaintiff States previously explained that they have consistently challenged forbearance as independently unlawful throughout this litigation. *See* ECF Nos. 786 at 33–35; 800 at 7–9. This Court's 2023 holding that forbearance was inseverable from the benefits provisions eliminated any need for it to rule on forbearance's independent lawfulness. ECF No. 786 at 786 at 32–33, 35. In turn, the Fifth Circuit limited its own decision to reviewing this Court's approach, forgoing a ruling on the lawfulness of forbearance and leaving the issue ripe for review on remand. *Id.* at 32–33.

New Jersey alone makes the argument that Plaintiff States forfeited any claim that the forbearance provisions are independently unlawful because it was inadequately briefed on appeal. ECF No. 799 at 10–13. New Jersey avers that Federal Defendants argued in their opening brief that the forbearance provisions were independently lawful, not just severable from the benefits provisions. ECF No. 799 at 12. And it contends that Plaintiffs States failed to address this argument in their response brief. *Id.* New Jersey is wrong on both points.

As an initial matter, one may question why New Jersey relies on the Federal Defendants' Fifth Circuit brief rather than its own. New Jersey's opening brief in the Fifth Circuit does not even address the legality of the forbearance provisions. To the extent it addresses the lawfulness of DACA at all, New Jersey relegates the matter to the following footnote:

> As New Jersey has consistently argued, the DACA policy is lawful under the INA and is consistent with a long history of deferred action policies. Although this Court previously held the DACA Memorandum substantively unlawful, *see Texas II*, 50 F.4th at 528-29, DHS's conclusions as to the history of deferred action and as to the scope of DACA as part of the Final Rule further demonstrate the errors inherent in that conclusion. That said, given Fifth Circuit panel precedent, New Jersey focuses in this brief on the remedial issues, while reserving its right to challenge this Court's conclusions on the merits en banc or to the U.S. Supreme Court.

*Texas v. United States*, No. 23-40653, ECF No. 68-1 (NJ Opening Br.) at 20–21. This is little more than "[a] single conclusory sentence in a footnote," and thus wholly "insufficient to raise an issue for review." *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006). That error was only compounded by New Jersey's failure to include legality of forbearance in its brief's "Statement of Issues."[5] Again, where an appellant "didn't include this argument in its 'Statement of the Issue' or in the body of its opening brief," but instead "relegated it to a footnote," the argument has been "'insufficiently addressed in the body of the brief' and [is] thus forfeited." *See Vernon Smith, etc. v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 596 (5th Cir. 2023).

Having failed to preserve its own argument, New Jersey attempts to raise the Federal Defendants' potential forfeiture argument instead. But that too fails, especially given that Federal Defendants themselves have elected not to proceed in that direction. Indeed, Federal Defendants have "forfeited the forfeiture issue" by failing to raise "forfeiture . . . in their opening brief" to this Court. *See Indigenous Peoples of Coastal Bend v. United States Army Corps of Engineers*, 132 F.4th 872, 884 (5th Cir. 2025). Regardless, New Jersey's argument of forfeiture fails on its own terms for two reasons: (1) the Federal Defendants' opening brief in the Fifth Circuit did not adequately raise the issue of forbearance itself being lawful (arguing only that it was severable from the benefits provisions); and (2) Plaintiff States in fact did argue in their response brief that forbearance was independently unlawful.

New Jersey cites a single page of Federal Defendants' opening brief in support of its proposition that the brief "argued that forbearance alone was lawful." ECF No. 799 at 12. That argument, such as it is, is cursory enough to be quoted here in full:

> The Secretary engaged in this careful policy analysis, moreover, after the Supreme Court held it unlawful *not* to consider DACA's various features independently. In *Regents*, the Court explained that, insofar as the receipt of deferred action under

---

[5] The Statement of Issues is limited to the following non-merits issues: "I. Whether the district court erred by failing to consider the equities when crafting a remedial order as to current DACA recipients" and "II. Whether the district court erred in declining to remand to DHS for the agency to determine the proper next steps in the first instance." *Texas v. United States*, No. 23-40653, ECF No. 68-1 (NJ Opening Br.) at 5.

> DACA makes recipients eligible for certain "benefits" such as "work authorization," those "benefits" do not "flow inexorably from forbearance." 140 S. Ct. at 1911 & n.5. Thus, because DACA's "forbearance and benefits" aspects "are legally distinct and can be decoupled," the Supreme Court concluded that the then-Secretary acted unlawfully by failing to consider "the option of retaining forbearance without benefits"—a policy that would have "remained squarely within the discretion of" the Secretary. *Id.* at 1912-1913.
>
> The district court disregarded the Secretary's plainly stated intent to use that discretion and maintain a forbearance-only policy if the rest of the rule were deemed unlawful. Instead, the court replaced the Secretary's clear statement of intent with its own surmise that if the non-forbearance aspects of the rule were deemed unlawful, the Secretary actually meant to have no DACA policy *at all*. ROA.36389-36394.

*Texas v. United States*, No. 23-40653, ECF No. 66 (Federal Defendants' Opening Br.) at 45. This passage is merely part of the severability argument. It purports to show the agency intended to retain forbearance even if other provisions of the Final Rule were unlawful. It does not argue that forbearance is independently lawful under the INA. Even if it did, such a brief, indirect remark cannot prevent forfeiture. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 177 (5th Cir. 2020) ("An appellant can intentionally waive or inadvertently forfeit the right to present an argument by failure to press it on appeal, a higher threshold than simply mentioning the issue.") (citation omitted); *Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting that a party forfeits an argument by failing to adequately brief it).

As the appellee, Plaintiff States were not required to raise issues in defense of the appealed judgment not raised in Appellants' briefs.[6] Yet with regard to forbearance being independently unlawful, Plaintiff States did just that. Nor was that discussion relegated to inseverability. In their

---

[6] *See United States v. Luna*, 264 F.3d 1142 (5th Cir. 2001) ("As a general rule, the appellee is entitled to rely on the favorable ruling of the court from which the appeal has been taken; appellees 'do not select the issues to be appealed[,] . . . [and] are at a procedural disadvantage in appeals because they can neither file reply briefs nor choose when to appeal.'") (citation omitted); *Tex. Democratic Party*, 978 F.3d at 177 ("[E]ven an appellee's failure to file a brief does not cause an automatic reversal of the judgment being appealed. By appellate rule, so extreme a lapse does cause the appellee to lose the right to appear at oral argument. Fed. R. App. P. 31(c). We also know that if we disagree with the grounds relied upon by a district court to enter judgment but discover another fully supported by the record, we can affirm on that alternative basis.") (citation omitted).

response brief, Plaintiff States argued that "[t]he DACA Rule, which is substantively identical to the DACA Memorandum, still contravenes Congress's rigorous and comprehensive statutory schemes for . . . removal." *Texas v. United States*, No. 23-40653, ECF No. 127 (Plaintiff States' Response Br.) at 18 (citing *DACA 2022 5th Cir.* at 525–26). Under the heading "The DACA Rule is substantively unlawful," Plaintiff States explained that "Congress has not authorized DHS . . . to categorically exempt aliens from statutory removal provisions." *Texas v. United States*, No. 23-40653, ECF No. 127 (Plaintiff States' Response Br.) at 31 (quoting *Regents*, 140 S. Ct. at 1922 (Thomas, J., concurring in part and dissenting in part). Plaintiff States cited this Court's reasoning that "Congress has already determined that the DACA-eligible population is removable through a variety of provisions of the INA," so "the entire DACA-eligible population is removable under portions of the INA" and "DHS cannot simply choose to ignore this congressional scheme." *Texas v. United States*, No. 23-40653, ECF No. 127 (Plaintiff States' Response Br.) at 35. And Plaintiff States also cited *Regents* in support: "Because '[d]eferred action . . . [is] much more than nonenforcement,' a bright line separates the legality of the DACA Rule from any individual enforcement decision DHS may decide to undertake." *Texas v. United States*, No. 23-40653, ECF No. 127 (Plaintiff States' Response Br.) at 37–38 (quoting *Regents*, 140 S.Ct. at 1902). Given their response to an argument no appellant even made, New Jersey's forfeiture argument falters and the independent unlawfulness of the forbearance provisions remains squarely before this Court.

### B.   The Fifth Circuit's severability analysis provides no indication that the forbearance provisions are lawful.

All Defendants' contention that the 2025 Fifth Circuit panel "necessarily determined that the DACA Final Rule's forbearance provisions are lawful when [it] agreed these provisions could be severed from the benefits provisions" also lacks merit. ECF No. 799 at 9; *see also* ECF No. 798 at 16–17. Though the panel perhaps could have been clearer on this point, a brief review of the winding course of this litigation unmistakably demonstrates that it read this Court's decision to only reach the merits of the benefits provisions. In reviewing that determination, the panel rendered no decision on the forbearance provisions' independent unlawfulness.

In 2021, this Court individually addressed (regarding the 2012 DACA memorandum) the substantive illegality of removal, lawful presence, work authorization, and advance parole. *Texas v. United States* (*DACA SDTX 2021*), 549 F. Supp. 3d 572, 607–14 (S.D. Tex. 2021). Two years later, the Court relied heavily on that previous analysis when addressing the merits of the Final Rule.[7] *Texas v. United States* (*DACA SDTX 2023*), 691 F. Supp. 3d 763, 783 n.44, 785 n.53 (S.D. Tex. 2023) (citing *DACA SDTX 2021*, 549 F. Supp. 3d at 603–21). But the Court's 2023 decision also placed particular emphasis on "two examples" said to "demonstrate some of the ongoing problems with the Final Rule." *Id.* at 785. It first addressed advance parole, which was itself a "privilege" and led to other benefits, including "a shortened pathway to citizenship" and the ability for DACA recipients "to adjust illegal status" and avoid "unlawful presence bars." *Id.* Second, in addressing the Rule's "lack of temporal limits," the Court specifically noted that "DHS views DACA employment authorizations to go on indefinitely." *Id.* at 787. Unlike its 2021 merits determination, the legal merits of forbearance from removal were not specifically addressed by this Court in its 2023 ruling. Then, in treating severability for the first time, the Court found that "[t]he most obvious approach to apply the severability clause would be to separate forbearance from the benefits" and thus sought to "determine whether DHS would have adopted DACA without the benefits provisions." *Id.* at 789. Ultimately, this Court concluded that "DHS would not have adopted DACA without the benefits provisions," *id.*, and that "[t]he Final Rule would not function sensibly as a forbearance only policy," *id.* at 793.

On appeal, the 2025 Fifth Circuit panel treated this Court's merits decision as having only reached the benefits provisions. Indeed, the panel's brief merits section explicitly mentioned lawful presence without any reference to forbearance. *DACA 5th Cir. 2025*, 126 F.4th at 417. This

---

[7] Federal Defendants assert that this Court's statement that "DACA prevents the removal of its recipients, despite Congress having dictated their eligibility for removal" in 2021 "is clearly contradicted by the Court's more recent determination" in 2023. ECF No. 801 at 7–8. But this Court expressly "incorporate[d] its earlier analysis" from, and directly cited to, that very 2021 reasoning, thus rendering Federal Defendants' reading untenable. *See DACA SDTX 2023*, 691 F. Supp. 3d at 784–85 & n.53.

treatment cannot be read to hold forbearance lawful, as it explicitly states the 2022 Fifth Circuit panel's holding that each aspect of the 2012 DACA memorandum was unlawful "control[led]," which "foreclosed" any arguments to the contrary.[8] *Id.* at 418 (quoting *DACA 5th Cir. 2022*, 50 F.4th at 528). Nor can the 2025 Fifth Circuit panel's decision be construed to render a determination that the entire Final Rule was unlawful on the merits. Were that the case, the panel's subsequent severance analysis would have been completely unnecessary—there is no need to determine whether a provision will survive that has already been ruled unlawful. Further, courts lack the power to rewrite unconstitutional statutes to render them lawful. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 237–38 (2020) (stating that courts have only "the negative power to disregard an unconstitutional enactment" and thus "cannot re-write Congress's work" under the guise of severability); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509–10 (2010) (holding that "such editorial freedom . . . belongs to the Legislature, not the Judiciary").

The 2025 Fifth Circuit panel's treatment of severability further bolsters this conclusion. The panel recognized that "a two-prong inquiry guides [its] severability analysis:" (1) the intent of the agency; and (2) whether the surviving provisions could "function sensibly" without the stricken ones. *DACA 5th Cir. 2025*, 126 F.4th at 419. It addressed agency intent by referencing both subsections of the Final Rule's severability clause. *Id.* at 419–20. That clause first provides that if any "provision of this subpart is invalid and unenforceable in all circumstances," then that "provision shall be severable from the remainder of this subpart and shall not affect the remainder thereof." 8 C.F.R. § 236.24(a). The clause further focuses on the Final Rule's benefits provisions,

---

[8] Federal Defendants again stumble by asserting the 2022 Fifth Circuit panel's statement that it "agree[d] with the district court's reasoning and its conclusions that the DACA Memorandum contravenes comprehensive statutory schemes for removal" "simply does not overcome the Fifth Circuit's 2025 determination to specifically sever the forbearance policy from the unlawful portions of the Final Rule." ECF No. 801 at 8. On the contrary, due to the rule of orderliness that binds a subsequent panel to the rulings of earlier panels, the 2025 Fifth Circuit panel's analysis of severability cannot be read to negate its express incorporation of the 2022 Fifth Circuit panel's merits determination.

providing that they "are intended to be severable from one another, from this subpart and any grant of forbearance from removal resulting from this subpart, and from any provision referenced in those paragraphs." *Id.* § 236.24(b). This focus on the interplay between individual provisions accords with the severability analysis employed by courts. *Seila Law*, 591 U.S. at 233–34 (2020) (stating that "one section of a statute may be repugnant to the Constitution without rendering the whole act void") (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Had the panel been treating the Final Rule as a unified whole, severability of individual provisions would be unnecessary.

The 2025 Fifth Circuit panel's application of the second severability prong is even more telling. In determining whether the forbearance provisions could function sensibly apart from the lawful presence and work authorization provisions, the sum total of the panel's analysis involved the purported benefits a forbearance-only policy would afford the government and particular groups of individuals. *DACA 5th Cir. 2025*, 126 F.4th at 420. Specifically, it recited the benefits to DHS of "streamlining higher-priority cases through busy immigration courts and avoiding the costs of enforcement actions against low-priority noncitizens" and to DACA recipients and their families of "increased security, reduced fear and anxiety, and associated values." *Id.* Completely absent was any discussion or legal analysis of such a program's substantive legality with regard to the INA. Clearly, deciding that a policy is "beneficial" for some says nothing about whether it is "legal." None of this is unusual or surprising. Courts are unlikely to hide a merits determination in a remedial discussion, and the 2025 Fifth Circuit panel's severability analysis provides no indication of such an unusual approach in this instance.

**C. Prior decisions in this litigation universally demonstrate that the forbearance provisions are unlawful.**

Plaintiff States have explained at length how previous decisions of this Court and the Fifth Circuit held unlawful the forbearance portion of the 2012 DACA memorandum, making the substantively identical forbearance provisions of the Final Rule independently unlawful as well. *See* ECF No. 786 at 32–39; ECF No. 800 at 8–9, 11. Federal Defendants merely reference that

"Plaintiffs note first that '*Regents* did not address whether a stand-alone forbearance policy would be substantively lawful'" without countering that contention. *See* ECF No. 801 at 8 n.2 (referencing). But Private Intervenors and New Jersey attempt to frame *Regents* as a ruling that forbearance is substantively lawful.[9] *See* ECF Nos. 798 at 17–18, 799 at 15–16. They are wrong.

The *Regents* majority did not address whether forbearance in the 2012 DACA Memorandum was itself lawful. Indeed, the Court explicitly declined to "evaluate the claims challenging the explanation and correctness of the illegality conclusion" made by the agency, instead addressing whether the agency "failed to consider important aspect[s] of the problem" before it. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 25 (2020) (citation omitted). Because the agency had relied on the Attorney General's finding that the 2012 DACA memorandum had the same legal defects as the DAPA program "regarding the illegality of benefits" even though "the Attorney General neither addressed the forbearance policy at the heart of DACA nor compelled DHS to abandon that policy," the Court found the agency had acted arbitrarily and capriciously when it failed to evaluate the forbearance policy separately from benefits. *Regents*, 591 U.S. at 28.

New Jersey and Private Intervenors make the same mistake that DHS made in attempting to terminate DACA, but in the opposite direction. The agency had relied on the Fifth Circuit's ruling to determine that forbearance in the 2012 DACA memorandum was unlawful, even though the Fifth Circuit's ruling in *DAPA* never ruled on the legality of forbearance, only benefits. New Jersey relies on the *Regents* Court's elaboration of the Fifth Circuit's *DAPA* ruling to argue that that forbearance without benefits is necessarily lawful, even though the *Regents* Court noted that the parties in *DAPA* never contested forbearance without benefits. It was wrong for DHS to find forbearance unlawful based on the *DAPA* ruling that never ruled on forbearance, just as it is wrong for New Jersey and Private Intervenors to argue that forbearance is lawful based on the *Regents*

---

[9] Private Intervenors additionally argue that Plaintiff States cannot challenge a "forbearance-only policy." ECF No. 798 at 17. But of course, that is not what we have here. After the 2025 Fifth Circuit panel's limitation of all relief to the State of Texas, the benefits provisions will remain operative in 49 States absent further developments. And the stays imposed by this Court and the Fifth Circuit mean that the benefits provisions are currently active even in Texas.

Court's use of the *DAPA* ruling that never ruled on forbearance. *See Regents*, 591 U.S. at 27 ("As [the Fifth Circuit in *DAPA*] explained, the 'challenged portion of DAPA's deferred-action program' was the decision to make DAPA recipients eligible for benefits.") (quoting *Texas v. United States* (*DAPA*), 809 F.3d 134, 168 & n.108 (5th Cir. 2015)).

New Jersey also says that "the 2022 [Fifth Circuit] panel expressly declined to 'decide . . . what the bounds of DHS's discretion with regard to forbearance without benefits' might be," arguing this indicates that panel did not find forbearance unlawful. ECF No. 799 at 15 (quoting *DACA 5th Cir. 2022,* 50 F.4th at 530); *see also* ECF No. 798 at 16. But that quote is torn from context. The Fifth Circuit was responding to New Jersey's argument that "some form of forbearance explicitly remain[s] squarely within [DHS's] discretion." *DACA 5th Cir. 2022*, 50 F.4th at 530. New Jersey made that statement to "suggest[] DACA's deficiencies are not severe and remand without vacatur is appropriate." *Id*. Thus, New Jersey was discussing—and the 2022 Fifth Circuit panel was responding to—some hypothetical form of forbearance in a future rule not then before the court. One could imagine a forbearance policy that is not "affirmative immigration relief" because it does not "solicit[] applications from eligible aliens, institute[] a standardized review process, and sen[d] formal notices" granting such relief that are "effectively adjudications," where "the result of these adjudications—DHS's decision to 'grant deferred action'—is an 'affirmative act of approval,' the very opposite of a refusal to act." *Regents*, 591 U.S. at 18. For example, the Final Rule refers to the immigration enforcement priorities memorandum that was challenged in *United States v. Texas* (*Immigration Priorities*), 599 U.S. 670 (2023), as applicable to DACA-eligible aliens, AR2022_100228 & n. 139, and notes that "DACA recipients would be at very low priority for removal even absent DACA," AR2022_100340. That memorandum "prioritize[d] the arrest and removal from the United States of noncitizens who are suspected terrorists or dangerous criminals, or who have unlawfully entered the country only recently," *Immigration Priorities,* 599 U.S. at 673, but did not establish an application process resulting in adjudications that are "affirmative acts of approval." Such enforcement guidance is an

example of a forbearance policy that, consistent with executive enforcement discretion, the 2022 Fifth Circuit panel could have had in mind as something hypothetically lawful.

The 2022 Fifth Circuit panel was clear about the illegality of the forbearance policy it actually reviewed. "We agree with the district court's reasoning and its conclusions that the DACA Memorandum contravenes comprehensive statutory schemes for removal . . ." *DACA 5th Cir. 2022*, 50 F.4th at 526. "DHS asserts that the program set forth in the DACA Memorandum is an exercise of its inherent prosecutorial discretion. The district court cogently and thoroughly analyzed this argument and rejected it. We agree with the district court." *Id.* This Court's 2021 ruling on forbearance was similarly clear that this type of forbearance was unlawful potential lawful alternatives remained. "While the law certainly grants some discretionary authority to the agency, it does not extend to include the power to institute a program that gives deferred action . . ." *DACA SDTX 2021*, 549 F. Supp. 3d at 605. "Mere administrative closure, which according to the administrative record is the 'preferred mechanism' for exercising discretion on a case-by-case basis, would have been within the purview of prosecutorial discretion." *Id.* at 605–06.

## III.    The Fifth Circuit's limitation of relief for the substantive illegality of the benefits provisions does not foreclose this Court from universally vacating DACA's forbearance provisions.

All Defendants further contend that "the mandate rule prevents the court from vacating the entirety of the Final Rule or applying that vacatur outside of Texas." ECF No. 801 at 12; *see also* ECF No. 798 at 14–15; ECF No. 799 at 17. But that contention is belied by what the 2025 Fifth Circuit panel actually did in its section on remedies. As explained *supra*, the panel held the benefits provisions unlawful on the merits. *DACA 5th Cir. 2025*, 126 F.4th at 417–18. After quickly dispensing with three preliminary remedial matters,[10] *id.* at 418–19, the panel concluded that the forbearance provisions were intended to be severable and could function sensibly without the unlawful benefits provisions, *id.* at 419–20. It then scaled back this Court's injunction against the

---

[10] Among these matters was whether vacatur is a valid remedy under the APA, an issue about which Federal Defendants still feign uncertainty. *See* ECF No. 801 at 12 ("And even if vacatur were a permissible remedy under the APA . . .").

benefits provisions from nationwide to Texas-specific relief. *Id.* at 420–21. Like the decision from this Court under review, the panel neither addressed whether the forbearance provisions, considered in isolation, were substantively unlawful nor whether the benefits provisions could function sensibly alone. Because those issues were never addressed by the 2025 Fifth Circuit panel, the mandate rule imposes no limitation on the scope of relief available to remedy these independent legal deficiencies.[11] *See Newball v. Offshore Logistics Intern.*, 803 F.2d 821, 826 (5th Cir. 1986) ("A mandate controls on all matters within its scope, but a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.").

In resisting this conclusion, New Jersey places particular emphasis on Plaintiff States' characterization of the 2025 Fifth Circuit panel's party-specific vacatur as an "unconsidered aside" or "passing reference." ECF No. 799 at 18. Because Plaintiff States chose not to petition for panel rehearing, en banc rehearing, or certiorari on this point, New Jersey avers that any argument that party-specific vacatur was "inconsistent with prior Fifth Circuit precedent . . . is beyond this Court's power to address." *Id.* at 19. Of course, that is true as far as it goes, which is why Plaintiff States carefully limited the proposed scope of injunctive relief resulting from the benefits provisions' unlawfulness to align with the panel's mandate that it be limited to Texas. *See* ECF No. 786 at 17–21. But it also fundamentally misunderstands Plaintiff States' arguments on remand, including that "the geographically limited vacatur apparently granted by the Fifth Circuit in this instance *only implicates Plaintiff States' claim that the benefits provisions are substantively unlawful.*" *Id.* at 47 (emphasis added). Plaintiff States do not seek to exceed the remedial scope imposed on substantive claims the panel actually reviewed, but rather for this Court to apply

---

[11] For the same reasons, Plaintiff States' arbitrary-and-capricious claim against the work authorization provisions is not barred. The only treatment of APA's requirement of reasoned decisionmaking during this litigation came during the review of the 2012 DACA memorandum, before Plaintiff States filed a supplemental complaint to include such an arbitrary-and-capricious claim against the Final Rule, with this Court observing that the concept nonetheless was "clearly a consideration for DHS should it elect to proceed on remand." *DACA SDTX 2021*, 549 F. Supp. 3d at 622. Accordingly, this remains a live claim for which this Court can fashion new relief, including universal vacatur. *See* ECF No. 623 at ¶¶ 88–99, p. 42.

universal vacatur toward the as-of-yet unreviewed—by this Court or by the Fifth Circuit—claim that the forbearance provisions in the Final Rule are independently unlawful.

Finally, two arguments from Federal Defendants warrant a brief rejoinder. First, Federal Defendants claim that vacatur "is an equitable remedy subject to ordinary equitable principles," going so far as to insist that "[t]he limits in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), apply to vacatur." ECF No. 801 at 11–12. The *CASA* decision's own footnote expressly refutes that latter point. *See CASA*, 606 U.S. at 847 n.10 ("Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."). As for the former, it is well established that Fifth Circuit precedent does not "require consideration of the various equities at stake before determining whether a party is entitled to vacatur" because that was not "a remedy familiar to courts sitting in equity." *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 952 (5th Cir. 2024), *cert. granted sub nom. Xavier Becerra, Sec'y of Health & Human Services v. Braidwood Mgmt., Inc.*, 145 S. Ct. 1038 (2025) and *cert. denied*, 145 S. Ct. 1053 (2025) and *rev'd and remanded on other grounds sub nom. Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025).

Federal Defendants' second error is its contention that the Fifth Circuit and unnamed "other courts . . . have not held that such universal vacatur is mandatory."[12] ECF No. 801 at 13. That would perhaps come as a surprise to not only the *Braidwood* panel, 104 F.4th at 951, but also the many highly respected federal judges in Texas who have recently held just that, *see* ECF No. 786 at 50–51 (collecting cases). In this circuit, "the ordinary result" when courts hold agency rules unlawful under the APA is "not that their application to the individual petitioners is proscribed," but rather "universal vacatur." *Career Colleges & Sch. of Tex. v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir.

---

[12] Federal Defendants do agree, however, that any doubt on this point is likely to be resolved before the en banc Fifth Circuit. ECF No. 801 at 12 n.3. They thus suggest that this Court may hold the issue in abeyance pending resolution of those proceedings. *Id.* Plaintiff States are not opposed to such an approach, so long as any modification of the existing injunction is made simultaneous with any decision on this issue.

1989)). This Court remains free to follow that ordinary course when remedying the forbearance provisions' independent illegality.

## IV.    The scope of this Court's injunction should encompass both DACA recipients residing in Texas and those employed in Texas.

Texas is pleased to find considerable agreement between DHS's proposals and its own regarding the scope of a modified injunction. Both proposals would deny program benefits to Texas residents. Neither would apply to recipients on the basis of having formerly worked or resided in Texas, instead enjoining DACA benefits for those who currently reside in Texas or arrive in the future. Recipients who have departed Texas and do not regularly commute into the State for work would no longer impose a sufficient injury to fall within the injunction's reach. Still, important distinctions between the two proposals remain.

The main point of disagreement centers on whether the injunction should include recipients' place of employment in addition to their residence. Federal Defendants, along with Private Intervenors, argue that non-resident DACA recipients working in Texas do not harm the State. ECF No. 801 at 3–4; ECF No. 801 at 20–22. On the contrary, the consumption of public benefits by such commuters imposes fiscal injuries on Texas. Defendants attempt to undermine this commonsense point by noting that emergency Medicaid costs are borne by the State in which the recipient resides. ECF Nos. 798 at 21, 801 at 4. However, as the Fifth Circuit acknowledged in 2022, Texas public hospitals "incurred approximately $596.8 million in uncompensated care for undocumented immigrants in fiscal year 2006 and $716.8 million in fiscal year 2008," some of which was "spent on DACA recipients." *DACA 5th Cir. 2022*, 50 F.4th at 517. In any case, Texas's pocketbook injuries are not limited to any specific program, but the "variety of state and federal benefits" that "DACA makes recipients eligible for." *DACA 5th Cir. 2025*, 126 F.4th at 411 n.22. Accordingly, a modified injunction that terminates program benefits for nonresidents who work in Texas is essential to afford the State complete relief.

Federal Defendants also rely on the purported difficulty of implementation to argue against two specific aspects of Texas's proposal. ECF No. 801 at 4–5. First, they explain that the current

configuration of E-Verify does not base verification determinations on an applicant's place of employment. *Id.* But Texas's proposed injunction merely requires DHS to notify employers that a prospective employee lacks valid work authorization upon submission of a DACA-specific EAD and application to work in Texas. ECF No. 786-1 at ¶ 9. Such notice may be provided by simply appending a message informing all E-Verify users that DACA EADs are invalid in Texas and may not be relied upon for work that takes place within the State. Second, DHS claims that Texas's proposal to "imprint" DACA-specific EADs with a disclaimer message in red text, *see* ECF No. 786-1 at ¶ 8, "is not functionally possible because EADs are individualized by laser engraving, not printed ink," ECF No. 801 at 5. Texas's proposal to "imprint" is meant to include "engrave," and the message may be displayed in all caps or bold to the extent that engraving does not allow for red lettering.

Texas's proposal attempts to balance its own need for protection against the application of the benefits provisions with Federal Defendants' legitimate concerns about disruption from significant alterations to its current operations. In light of the explanations and clarifications above, Plaintiff States' proposal strikes just such a balance. Accordingly, the Court should modify the scope of injunctive relief by incorporating the substance of Texas's proposed order. *See* ECF No. 786-1.

## V. Any wind-down should reflect the gradual diminution of reasonable reliance interests following repeated, clear notice that the benefits provisions are unlawful.

A stay protects reliance on government programs from "sudden[]" termination. *See Texas v. United States*, No. 1:18-CV-00068, 2021 WL 3022434, at *2 (S.D. Tex. July 16, 2021) (ECF No. 576). But four years have passed since this Court first held DACA unlawful. *See DACA SDTX 2021*, 549 F.Supp.3d at 624. Three more decisions by this Court and the Fifth Circuit confirmed that initial holding. Ending an agency program does not upset reasonable reliance interests when legality was always disputed. *See Bell Atl. Tel. Companies v. F.C.C.*, 79 F.3d 1195, 1207 (D.C. Cir. 1996); *Mozilla Corp. v. Fed. Communications Comm'n*, 940 F.3d 1, 64 (D.C. Cir. 2019). That is obviously the case with DACA, as the Supreme Court noted five years ago that DHS "might

conclude that reliance interests in benefits that it views as unlawful are entitled to no or diminished weight." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 32 (2020). This Court should consider recipients' four-year notice of likely termination.

All current recipients have renewed their two-year status at least once, receiving Plaintiff States' proposed one-renewal stay. *See* ECF No. 673 at 9. Recipients knew termination was imminent and had time to plan. Private Intervenors demand four more years for adjustment but cannot deny the rulings put recipients on notice that "their particular affairs will require adjusting." *See* ECF No. 798 at 24–25. Recipients who continued to rely on DACA benefits thus assumed the risk of revocation. Private Intervenors' suggestion that reliance interests "have strengthened" during the pendency of this case is misguided. ECF No. 798 at 24. Reliance while on notice is unreasonable and unprotected. *Mozilla Corp.*, 940 F.3d at 64.

Furthermore, if this Court declines to enter universal relief, a lengthy wind down period would be especially unnecessary. The current stay paused a universal injunction that would have required recipients to depart the country or become unlawfully present. With Texas-only relief, recipients need only leave one State and may continue to enjoy DACA benefits elsewhere. Interstate moves do not require years of preparation, which recipients may yet have given the extra time provided by the Fifth Circuit's own stay. Indeed, both Federal Defendants and Private Intervenors acknowledge that "this Court's and the Fifth Circuit's stays are separate," ECF No. 798 at 23 n.6, and thus "any ruling this Court makes regarding a stay will not affect the stay in place by virtue of the Fifth Circuit's order," ECF No. 801 at 13. Thus, the Fifth Circuit's separate stay already provides additional time for recipients to arrange their affairs.

Finally, Plaintiffs respectfully reiterate their request that the Court time its modification of injunctive relief to coincide with its final ruling on all pending claims. Any interval between these two actions would resume the program outside Texas while the future of DACA remains unsettled. To avoid creating new reliance interests, the Court should preserve the status quo until deciding all issues.

Dated: November 24, 2025

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

*/s/ Ryan D. Walters*
**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105085
Southern Dist. No. 3369185

Respectfully submitted,

**RYAN G. KERCHER**
Chief, Special Litigation Division

**DAVID BRYANT**
Senior Special Counsel
*Attorney-in-Charge*
Texas Bar No. 03281500
Southern Dist. No. 808332

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501
Southern Dist. No. 3379673

**J. AARON BARNES**
Special Counsel
Texas Bar No. 24099014
Southern Dist. No. 3697248

**KYLE S. TEBO**
Special Counsel
Texas Bar No. 24137691
Southern Dist. No. 3893370

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 936-2714
Fax: (512) 457-4410
ryan.walters@oag.texas.gov
david.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
aaron.barnes@oag.texas.gov
kyle.tebo@oag.texas.gov

*Counsel for Plaintiff State of Texas*

**TIM GRIFFIN**
Attorney General of Arkansas

*/s/ Autumn Hamit Patterson*
**AUTUMN HAMIT PATTERSON**
Solicitor General
AR Bar Number 2025095
TX Bar Number 24092947

OFFICE OF THE ARKANSAS ATTORNEY
GENERAL
101 W. Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-2007
autumn.patterson@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*


**STEVE MARSHALL**
Attorney General of Alabama

*/s/ Robert M. Overing*
**ROBERT M. OVERING**
Deputy Solicitor General

OFFICE OF THE ALABAMA ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
AL/8736M14Q
Telephone: (334) 353-8931
robert.overing@alabamaag.gov

*Counsel for Plaintiff State of Alabama*


**KRIS W. KOBACH**
Attorney General of Kansas

*/s/ James Rodriguez*
**JAMES RODRIGUEZ** (KS Bar #29172)
OFFICE OF KANSAS ATTORNEY GENERAL
KRIS W. KOBACH
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephoneophone: (785) 368-8197
jay.rodriguez@ag.ks.gov

*Counsel for Plaintiff State of Kansas*


**ELIZABETH B. MURRILL**
Attorney General of Louisiana

**J. BENJAMIN AGUIÑAGA**
Solicitor General

*/s/ Zachary Faircloth*
**ZACHARY FAIRCLOTH**
Principal Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL OF
LOUISIANA
1885 N. 3rd St.
Baton Rouge, LA 70802
Telephone: (225) 421-4088
aguinagaj@ag.louisiana.gov
fairclothz@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*


**LYNN FITCH**
Attorney General of Mississippi

*/s/ Justin L. Matheny*
**JUSTIN L. MATHENY**
Deputy Solicitor General

OFFICE OF THE MISSISSIPPI ATTORNEY
GENERAL
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
Fax: (601) 359-2003
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*


**MICHAEL T. HILGERS**
Attorney General of Nebraska

*/s/ Cody S. Barnett*
**CODY S. BARNETT**
Solicitor General
NEBRASKA DEPARTMENT OF JUSTICE
Telephone: (531) 350-4932
cody.barnett@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

22

**ALAN WILSON**
Attorney General of South Carolina

*/s/ James Emory Smith, Jr.*
**JAMES EMORY SMITH, JR.**
General Counsel
OFFICE OF THE SOUTH CAROLINA ATTORNEY
GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: 803-734-3680
Fax: 803-734-3677
esmith@scag.gov

*Counsel for Plaintiff State of South Carolina*

**JOHN B. MCCUSKEY**
Attorney General of West Virginia

*/s/ Michael R. Williams*
**MICHAEL R. WILLIAMS**
Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF WEST
VIRGINIA
State Capitol Complex
Building 1, Room E-26
1900 Kanawha Blvd. E
Charleston, WV 25301
Telephone: (304) 558-2021
michael.r.williams@wvago.gov

*Counsel for Plaintiff State of West Virginia*

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF) on November 24, 2025.

*/s/ Ryan D. Walters*
RYAN D. WALTERS